IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, § | | |
| § | | |
| Plaintiff, § | | CIVIL ACTION NO. |
| § | | |
| vs. § | | 3:17-cv-02278-B |
| § | | |
| TRANSPORT WORKERS UNION OF § | | JURY DEMANDED |
| AMERICA, LOCAL 556, § | | |
| § | | |
| Defendant. § | | |

### DEFENDANT LOCAL 556'S BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

Defendant TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556 ("TWU 556", "Local 556" or "Defendant") asserts that, despite Plaintiff's attempt to cure its pleading defects, its First Amended Complaint lacks factual allegations necessary to support an actionable claim, as required by Rule 8, F.R.C.P. Because Plaintiff has again failed to state a claim upon which relief can be granted, Defendant Local 556 moves that the First Amended Complaint be dismissed pursuant to Rule 12(b)(6), F.R.C.P.

### I. INTRODUCTION

Plaintiff has alleged two distinct claims against Local 556 in this matter: (1) the Union retaliated against Plaintiff for exercising her protected rights, and (2) the Union breached their duty of fair representation on behalf of Plaintiff after Southwest Airlines notified Plaintiff of her pending termination.

Plaintiff's first cause of action is fatally flawed because it does not, and cannot, allege that Local 556 took any adverse employment action against her, as required under well-established retaliation case law. Simply put, the Union cannot take any adverse employment

action against Plaintiff, including the termination of Plaintiff's employment because it is not her employer.  Only Plaintiff's employer, Southwest Airlines, has that authority.  To the extent Plaintiff claims to be alleging "Retaliation" in the LMRDA context, such a claim is not supported by any facts alleging that the Union took any against her.  The fact that the complaints—and the investigation into co-worker harassment that those complaints necessitated—were made by a co-worker of Plaintiff's, who also happens to be a Union Officer, does not demonstrate any "action" taken by Local 556.

Plaintiff's second cause of action fails to meet the pleading requirements, as it asks the Court to accept as true a "bare-thread legal conclusion" couched as a factual allegation. Specifically, Plaintiff has failed to plead any facts demonstrating how the Union failed to fulfill its duty of fair representation.

## II. LEGAL STANDARD

Rule 12(b)(6) motions seek to foreclose judicial review without reaching the merits of the case. The motion should be granted if the pleadings show that the non-moving party is unable to prevail as a matter of law.[1]

To survive a motion to dismiss, the complaint must contain direct factual allegations on every material point necessary to sustain recovery, or facts from which an inference may be drawn that evidence on these material points will be introduced at trial.[2] This standard requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.[3] Factual allegations must be sufficient to "raise a right to relief above the speculative level."[4]

---

[1] *Clontz v. Life Insurance Co. of North America*, 2009 WL 1491203 *1, (N.D. Tex. May 28, 2009)(Slip Copy);
[2] *See Campbell v. City of San Antonio*, 43 F.3d 973,975 (5th Cir. 1995).
[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007).
[4] *Id.*

The standards set forth under *Twombly* and *Iqbal* clarify the analysis by requiring facial plausibility, and are clear that the plaintiff is obligated to provide the grounds of entitlement to the relief sought. In *Iqbal*, the Supreme Court clarified that, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[5] This "plausibility" standard asks, "for when more than a sheer possibility that a defendant has acted unlawfully." Most significantly, *Iqbal* states that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[6] Only "When there are well pleaded factual allegations" should a court "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[7] As shown below, Plaintiff has failed to meet their burden and her claims should be dismissed.

### III. ARGUMENTS AND AUTHORITY

**A. PLAINTIFF IS NOT AN EMPLOYEE OF THE UNION AND THUS CANNOT ASSERT RETALIATION CLAIMS—RETALIATION CLAIMS REQUIRE AN ADVERSE EMPLOYMENT ACTION BY THE EMPLOYER—SOUTHWEST AIRLINES.**

Plaintiff has failed to plead facts to support that any official action taken by the Union had the effect of suppressing her protected speech rights. As such, her retaliation claims should be dismissed. An essential element of a protected speech based retaliation claim is that an "*employee* must suffer an adverse employment decision … and [] the employee's speech must have motivated the *employer's* adverse action."[8] (emphasis added). Plaintiff is not an employee of the Union. Further, Plaintiff's Complaint, if taken as true, repeatedly asserts that Southwest, not the Union, took steps to terminate her employment:

"<u>Southwest Terminates Carter</u>" (p.13—16)"

---

[5] *Id.*
[6] *Iqbal* at 1949-50.
[7] *Id.*
[8] Oscar Renda Contracting, Inc. v. City of Lubbock, 463 F.3d 378, 382 (5th Cir. 2006) (citing *Kinney v. Weaver*, 367 F. 3d 337, 356 (5th Cir. 2004)).

"48. … Southwest manager Megan Jones left Carter a voicemail saying they needed to talk to her as soon as possible."

"49. … Southwest Inflight Base Manager Ed Schneider left Carter a voicemail saying that he wanted to set up a mandatory meeting…"

"55. At the March 7 "fact finding" meeting, Southwest questioned Carter…"

"61. A week after the meeting, on March 14, 2017, Southwest sent Carter a letter informing her that it was terminating her employment… Southwest's letter also stated that [] she was identifiable as a Southwest Airlines Employee and represented the company in a manner that is disparaging to Southwest Flight Attendants as well as to all Southwest Employees. Southwest characterized Carter's Facebook posts as "highly offensive in nature" and the private messages sent to Local 556 president Audrey Stone as "harassing and inappropriate.""

"62. Southwest informed Carter that it was terminating her employment …"

"63. Southwest terminated Carter…"

Insofar as Plaintiff's Amended Complaint attempts to allege that Ms. Stone's complaints of harassment against Plaintiff were "pre-textual," such allegations fail to support that such action is in anyway legally attributable to Local 556. Furthermore, such allegations of pretext are without legal consequence when the alleged pre-textual conduct was not undertaken by the party responsible for the "adverse employment action" taken against the Plaintiff. Because Plaintiff has not, and cannot as a matter of law, establish a retaliation claim against the Union, Plaintiff's retaliation claim should be dismissed.

## B. PLAINTIFF FAILS TO PLEAD ANY FACTS SUGGESTING THAT LOCAL 556 FAILED TO MEET ITS DUTY OF FAIR REPRESENTATION

Plaintiff's second cause of action fails to meet the pleading requirements as it improperly asks the court to accept as true a legal conclusion couched as a factual allegation.[9] Plaintiff's specific shortcoming is that she has failed to plead how the Union failed to fulfill its duty of fair representation to her. A breach of a union's duty of fair representation occurs only when the

---

[9] *Iqbal* at 1949-50.

union's conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith."[10]

Plaintiff asserts that the Union and its agents owe a duty of fair representation to all of those employees that it represents, members and nonmembers alike. Defendant does not dispute this point. Defendant further does not dispute that Union President Stone made complaints to Southwest regarding Plaintiff's harassment and verbal abuse from a co-worker via Facebook. For example, Plaintiff's Complaint acknowledges that on February 14, 2017, Plaintiff sent Stone four harassing private messages including, in her own words, "GRAFIC" material showing images of an aborted fetus. Certainly, Stone's position as Union President does not strip her right as an employee of Southwest to file complaints of bullying and harassment from a co-worker.

Paragraph 55 of Plaintiff's Complaint sets forth that after being summoned by Southwest for a "fact finding" meeting, she was promptly notified of her right to union representation. Plaintiff took advantage of this right—despite her status as a union objector—and was represented by Chris Sullivan at her "fact-finding". Local 556 successfully negotiated with Southwest to reduce its discipline of Plaintiff from termination to a thirty "30" day suspension with a guaranteed return to work. Plaintiff rejected the negotiated terms and was subsequently terminated. Plaintiff's Amended Complaint makes no allegation that Sullivan's representation was "arbitrary, discriminatory, or in bad faith," nor does it allege facts that any other agent of Local 556 represented her in such a way. Rather, Plaintiff's analysis-free assertions of a DFR violation are exactly the type of "legal conclusions" that the Supreme Court held need not be accepted as true in *Iqbal*.

When considering the language from *Iqbal*—specifically it's distinction between "factual allegations" and "legal conclusions"—a look at that decision makes clear that Plaintiff's

---

[10] *Vaca v. Sipes*, 386 U.S. 171, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967).

assertions regarding her DFR claim are "bare legal conclusions"—rather than "factual allegations—thus, need not be accepted as true. In *Iqbal*, a *Bivens* action accusing a Federal Agent of invidious discrimination, the Court cited statements from the Complaint that exemplified the type of "legal conclusions" that did not need to be accepted as true because they were not "factual allegations." As discussed above, this distinction makes all the difference because factual allegations <u>must</u> be taken as true, while legal conclusions need not be. The examples were taken from portions of the Complaint that simply recited the legal standard for proving unconstitutional discrimination and attributed such actions to the Defendant. *See Iqbal,* 129 S. Ct. at 1951 ("Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'"). This statement was denied the "assumption of truth" because it alleged no fact, only a legal conclusion. The analogous situation in the case at bar is found in the Plaintiff's conclusory assertions targeted above by Defendant. These assertions are not entitled to such deference or presumption of truth because they simply assert the Plaintiff's desired legal consequence without an allegation of any underlying facts that could arguably give rise to those legal conclusions. Because such "factual allegations" are categorically different than the "bare thread recitals" that Plaintiffs now point the Court to, no presumption of truth should be afforded to these conclusions.

Lastly, because the pleaded "harm" is not yet final, Plaintiff's claims in the case are premature. After rejecting the return to work agreement negotiated by the Union, Plaintiff has appealed her termination and is represented by the same counsel that she has chosen to represent her in the case at bar. Significantly, this appeal renders her termination "pending," rather than

"final," thus making her claims in this case premature. Because her termination is not "final," Plaintiff has not yet suffered an "adverse employment action" under the law.

### IV. CONCLUSION

Wherefore, for the above and foregoing reasons, under the requirements of *Iqbal* and *Twombly*, Plaintiffs have failed to plead sufficient facts to withstand Defendant's Motion.

    /s/ Edward B. Cloutman, III_____
Edward B. Cloutman, IV
State Bar No. 24074045
Email: edwardcloutman@gmail.com
Adam S. Greenfield
State Bar No. 24075494
Email: agreenfield@candglegal.com

**LAW OFFICE OF CLOUTMAN
& GREENFIELD, P.L.L.C.**

3301 Elm Street
Dallas, TX 75226-1637
Phone 214.939.9222
Fascimile 214.939.9229

OF COUNSEL:

Edward B. Cloutman, III
State Bar No. 04411000
Email: ecloutman@lawoffices.email
**Cloutman & Cloutman, L.L.P.**
3301 Elm Street
Dallas, Texas  75226-1637
214.939.9222
214.939.9229 Fascimile

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon counsel for Plaintiff via the U.S. District Court, Northern District's CM/ECF system on October 10, 2017:

>Mr. Jason E. Winford (via e-mail:  jwinford@jenkinswatkins.com)
>Mr. David E. Watkins (via e-mail:  dwatkins@jenkinswatkins.com)
>Jenkins & Watkins, P.C.
>4300 MacArthur Avenue, Suite 165
>Dallas, Texas  75209
>
>Mr. Matthew B. Gilliam (via e-mail:  mbg@nrtw.org)
>Mr. Jeffrey D. Jennings (via e-mail:  jdj@nrtw.org)
>National Right to Work Legal Defense Foundation, Inc.
>8001 Braddock Road, Suite 600
>Springfield, Virginia  22160

                                              /s/ Adam S. Greenfield_____
                                              Edward B. Cloutman, IV
                                              Edward B. Cloutman, III
                                              Adam S. Greenfield