# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>           Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br>           Defendant. | Civil Case No. 3:17-cv-02278-S<br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT SOUTHWEST AIRLINES CO.'S SECOND MOTION TO DISMISS** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

LEGAL STANDARD.......................................................................................... 1

ARGUMENT ....................................................................................................... 4

    I.    This Court has subject matter jurisdiction over Carter's claims arising under the  U.S. Constitution, the RLA, and Title VII. (Counts I, II, IV, and V). ........................................ 4

        A. Federal claims that are separate and independent from the CBA are not subject to arbitration. ............................................................................................................. 4

        B.  The RLA guarantees employee rights beyond union certification............................... 7

    II.    Carter states a Title VII religious discrimination claim (Count V). .................................. 9

    III.    Carter's allegations plead protected speech, activity, and union-related animus in support of her RLA claims (Counts I and II). .................................................................................. 13

        A.  The RLA guarantees employee speech and association rights. ................................. 13

        B.   Carter's speech did not lose its protection (Counts I, II, and IV). ........................... 14

    IV.    Carter alleges facts showing the causal nexus between her protected activity and Southwest's decision to fire her (Counts I, II, and IV). ................................................... 16

    V.    Southwest acted under color of federal law when the company terminated Carter's employment (Count IV). ............................................................................................. 17

    VI.    Factual determinations made in a CBA-arbitration hearing cannot be given  issue preclusive effect but should instead be weighed with Carter's evidence after she conducts discovery on her statutory and constitutional claims. ...................................................... 19

        A. The Court should not give the arbitrator's findings preclusive effect to any allegations in Counts I, II, IV, and V. ...................................................................................... 21

        B. The "just cause" issues were not identical to Carter's constitutional and statutory claims. ................................................................................................................ 22

        C.  Southwest's purported "findings" were legal conclusions and not necessary to the arbitrator's decision. .............................................................................................. 23

CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

Cases

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991) ............................................................................................. 11

*Alexander v. Gardner-Denver Co.*,
415 U.S. 36 (1974) ...................................................................................... 20, 21

*Antoine v. First Student, Inc.*,
713 F.3d 824 (5th Cir 2013) ........................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 2

*Atl. Steel Co.*,
245 NLRB 814 (1979) ..................................................................................... 16

*Ballew v. Cont'l Airlines, Inc.*,
668 F.3d 777 (5th Cir. 2012) ............................................................................ 5

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
450 U.S. 728 (1981) ........................................................................................ 23

*Bhd. of R. R. Trainmen v. Howard*,
343 U.S. 768 (1952) .......................................................................................... 6

*Bradberry v. Jefferson Cty.*,
732 F.3d 540 (5th Cir. 2013) ...................................................................... 3, 22

*Brady v. Trans World Airlines, Inc.*,
401 F.2d 87 (3d Cir. 1968) ............................................................................ 8, 9

*Brener v. Diagnostic Ctr. Hosp.*,
671 F.2d 141 (5th Cir. 1982) ..................................................................... 10, 11

*CareFlite v. Office And Prof'l Employees Int'l Union, AFL-CIO*,
612 F.3d 314 (5th Cir. 2010) ............................................................................ 5

*Carmona v. Sw. Airlines Co.*,
536 F.3d 344 (5th Cir. 2008) .................................................................... 5, 6, 7

*Coleman v. Anco Insulations, Inc.*,
  196 F. Supp. 3d 608 (M.D. La. July 22, 2016) ......................................................... 3

*Copeland v. Merrill Lynch & Co., Inc.*,
  47 F.3d 1415 (5th Cir. 1995)................................................................................... 22

*Crawford v. Air Line Pilots*,
  992 F.2d 1295 (4th Cir. 1993)................................................................................. 18

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ................................................................................................ 20

*Dreis & Krump Mfg., Inc.*,
  221 NLRB 309 (1975).............................................................................................. 16

*Dunn v. Air Line Pilots Ass'n*,
  193 F.3d 1185 (11th Cir. 1999)................................................................... 12, 14, 15

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  135 S. Ct. 2028 (2015) .................................................................................. 9, 10, 13

*Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*,
  466 U.S. 435 (1984) .................................................................................. 6, 12, 19, 23

*Ellis v. W. Airlines, Inc.*,
  652 F. Supp. 938 (S.D. Cal. Dec. 22, 1986)............................................................ 18

*Fennessy v. Southwest Airlines*,
  91 F.3d 1359 (9th Cir. 1996)..................................................................................... 8

*Ford Motor Co. v. Huffman*,
  345 U.S. 330 (1953) ................................................................................................ 11

*Gonzalez v. S. Pac. Transp. Co.*,
  773 F.2d 637 (5th Cir. 1985)................................................................................... 20

*Grappe v. Kansas City S. Ry. Co.*,
  71 F. App'x. 302 (5th Cir. 2003) ............................................................................. 20

*Graves v. Tubb*,
  281 F. Supp. 2d 886 (N.D. Miss. 2003) .................................................................... 2

*Grimes v. BNSF Ry. Co.*,
  746 F.3d 184 (5th Cir. 2014).................................................................. 5, 20, 21, 23

iv

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994) ............................................................................ 5, 6, 7, 8

*Held v. Am. Airlines, Inc.*,
    13 F. Supp. 2d 20 (D.D.C. 1998) ................................................................ 8, 14

*In re Cont'l Airlines Corp.*,
    901 F.2d 1259 (5th Cir. 1990)............................................................................ 7

*Int'l Ass'n of Machinists v. Street*,
    367 U.S. 740 (1961) ........................................................................................ 19

*Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*,
    847 F.2d 186 (5th Cir. 1988)............................................................................ 3

*Janus v. AFSCME Council 31*,
    138 S. Ct. 2448 (2018) .................................................................................... 19

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002)............................................................................ 6

*Lafayette Park Hotel*,
    326 NLRB 824 (1998).......................................................................................7

*Linn v. United Plant Guard Workers of America*, Local 114,
    383 U.S. 53 (1966) .......................................................................................... 15

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010)............................................................................ 2

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009)............................................................................ 2

*Lutz v. Machinists*,
    121 F. Supp. 2d 498 (E.D. Va. Nov. 22, 2000) .............................................. 18

*Masiello v. U.S. Airways, Inc.*,
    113 F. Supp. 2d 870 (W.D.N.C. Sept. 14, 2000) .......................................... 18

*McDonald v. City of West Branch, Mich.*,
    466 U.S. 284 (1984) ........................................................................................ 20

*Montez v. Dep't of Navy*,
    392 F.3d 147 (5th Cir. 2004).............................................................................. 1

*N.L.R.B. v. Brookwood Furniture, Div. of U.S. Indus.*,
701 F.2d 452 (5th Cir. 1983) ............................................................................. 17

*N.L.R.B. v. Transp. Mgmt. Corp.*,
462 U.S. 393 (1983) ........................................................................................... 16

*N.L.R.B. v. Vanguard Tours, Inc.*,
981 F.2d 62 (2d Cir. 1992) ................................................................................... 7

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974) ........................................................... 6, 7, 11, 12, 14, 15

*Oncale v. Sundowner Offshore Services*,
523 U.S. 75 (1998) ............................................................................................ 13

*Paris Foods Corp. v. SFI Holdings, Inc.*,
No. 3:12-CV-3261-B, 2012 WL 12937155 (N.D. Tex. Dec. 31, 2012) ..................... 3

*Providence St. Peter*,
123 LA 473 (2006) ............................................................................................. 23

*Raj v. Louisiana State University*,
714 F.3d 322 (5th Cir. 2013) ............................................................................. 13

*Reed v. Norfolk*,
740 F.3d 420 (7th Cir. 2014) ............................................................................... 6

*Renneisen v. Am. Airlines, Inc.*,
990 F.2d 918 (7th Cir. 1993) ........................................................................... 8, 9

*Republic Aviation Corp. v. N.L.R.B.*,
324 U.S. 793 (1945) ............................................................................................. 7

*Roscello v. Sw. Airlines Co.*,
726 F.2d 217 (5th Cir. 1984) ......................................................... 5, 6, 7, 8, 14, 16

*Ross v. U.S. Capitol Police*,
195 F. Supp. 3d 180 (D.C. Cir. 2016) .................................................................. 4

*Ry. Clerks v. Allen*,
373 U.S. 113 (1963) ........................................................................................... 19

*Ry. Emps.' Dep't v. Hanson*,
351 U.S. 225, 232 (1956) ............................................................... 12, 17, 18, 19

*Shea v. Int'l Ass'n of Machinists & Aerospace Workers*,
    154 F.3d 508 (5th Cir. 1998) ........................................................................ 17

*Stanford New York, LLC*,
    344 NLRB 558 (2005) .................................................................................. 15

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944) .............................................................................. 11, 17

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) ..................................................................................... 13

*Thor Power Tool Co.*,
    148 NLRB 1379 (1964) ................................................................................ 16

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*,
    489 U.S. 426 (1989) ....................................................................................... 8

Statutes

42 U.S.C. § 1983 .................................................................................................. 20

42 U.S.C. § 2000e ................................................................................................. 1

42 USC § 2000e(j) .............................................................................................. 10

45 U.S.C. § 151 ..................................................................................................... 1

45 U.S.C. § 151a ................................................................................................... 5

45 U.S.C. § 152 ......................................................................................... 1, 13, 18

Other Authorities

5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969) ....................................... 3

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby submits this Brief in Support of her Response to Defendant Southwest Airlines Co.'s ("Southwest") Motion to Dismiss (ECF Nos. 48-50).

**INTRODUCTION**

The Court should deny Southwest's Rule 12(b) motions. Southwest's Rule 12(b)(1) motion to dismiss should be denied because Carter's constitutional and statutory claims are separate and independent from any claim under the collective bargaining agreement ("CBA"), and are predicated on allegations of the Defendants' retaliatory and discriminatory animus for her exercise of protected rights. Therefore, this Court has jurisdiction. Southwest's Rule 12(b)(6) motion should be denied because (1) Carter states a claim for religious discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., ("Title VII"); (2) Carter's speech and association rights under the Railway Labor Act, 45 U.S.C. § 152, Third and Fourth, were violated by Southwest, and her speech did not lose its protection; (3) Carter alleged that her exercise of protected rights was the substantial and motivating factor behind Southwest's decision to terminate her employment (i.e., "the requisite causal nexus" for her retaliation claims); (4) Southwest, even as a private employer, is considered a government actor under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"); and (5) the arbitrator's finding that Southwest had "just cause" under the CBA to terminate Carter has no preclusive effect whatsoever to her claims here.

**LEGAL STANDARD**

In a motion under Rule 12(b)(1), a court may consider supporting affidavits, testimony, or other evidentiary materials in determining challenges to subject matter jurisdiction. *Montez v.*

1

*Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). However, in evaluating a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Southwest's declaration should be disregarded because it cannot be considered in a Rule 12(b)(6) motion. *Graves v. Tubb*, 281 F. Supp. 2d 886, 890 (N.D. Miss. 2003). "[T]he court's review is limited to the complaint, and any documents attached to the complaint." *Lone Star Fund V*, 594 F.3d at 387. Documents attached to a Rule 12(b)(6) motion are "matters outside the pleadings" unless they are central to the plaintiff's claims and referenced by the complaint. *Id*. Carter's Complaint never references the arbitration, and it is not "central" to her *prima facie* case that Southwest violated her rights under the RLA and Title VII.

Carter therefore objects to the Court's considering these documents for Southwest's Motion to Dismiss and moves that they be stricken from Southwest's Motion.[1] These exhibits are unrelated to this Court's subject matter jurisdiction. Rather, they are intended to support Southwest's argument that the Court should give preclusive effect to some of the arbitrator's findings based on issue preclusion. Southwest's issue preclusion defense questions whether Carter's Complaint contains sufficient factual allegations to support a claim for which relief can be granted under Rule 12(b)(6), not whether the court has subject matter jurisdiction under Rule 12(b)(1). *See* ECF No. 48, at 1, ¶1 ("Plaintiff's claims … are subject to dismissal without

---

[1] Carter hereby incorporates her prior objections to the Court considering the extra-pleading materials for the Rule 12(b)(6) portion in its First Motion to Dismiss. *See* ECF No. 34 at 1-4.

prejudice based on failure to state a claim due to the preclusive effect of the arbitrator's findings under the doctrine of issue preclusion."). The court may not look at "matters outside the pleadings" without converting the motion to dismiss into a motion for summary judgment. *Isquith for & on Behalf of Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 194 (5th Cir. 1988). The district court has complete discretion to determine whether or not to accept material beyond the pleadings, but if it does accept the materials, it must convert the motion to dismiss into a summary judgment motion and give the parties notice. *Isquith*, 847 F.2d at 193 n.3.

Considering Southwest's extra-pleading materials as part of a Rule 12(b)(6) motion on whether issue preclusion applies would be improper at this early stage. First, a court should not convert a motion to dismiss into a summary judgment motion when the "extra-pleading material" is "scanty, incomplete, or inconclusive" and not "likely to facilitate the disposition of the action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)). Southwest's Exhibits 1 and A (*i.e.*, the declaration of Michele Haydel Gehrke (App. 1-2), and the Opinion and Award of Arbitrator (App. 3-22)), were filed in support of the company's Rule 12(b)(6) motion (ECF No. 50).[2] However, these extra-pleading materials fail to show all the characteristics of this arbitration, leaving the Court without a sufficient basis to consider issue preclusion. *See Bradberry v. Jefferson Cty.*, 732 F.3d 540, 548 (5th Cir. 2013).

Second, summary judgment is not appropriate before discovery has even started. *See, e.g., Coleman v. Anco Insulations, Inc.*, 196 F. Supp. 3d 608, 611 (M.D. La. July 22, 2016); *Paris Foods Corp. v. SFI Holdings, Inc.*, No. 3:12-CV-3261-B, 2012 WL 12937155, at *1 (N.D. Tex. Dec. 31, 2012) (declining to convert a motion to dismiss into a motion for summary judgment because summary judgment was not "appropriate" before the discovery stage). This is

---

[2] The Opinion and Award of Arbitrator, ECF No. 50 (App. 3-22) shall be cited to herein as "App. ___."

especially true in "employment-discrimination cases," where plaintiffs usually can only proffer evidence after going through discovery regarding the illegality of an employer's motives or the pretext of its asserted justifications for the adverse action. *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 192-93 (D.C. Cir. 2016).

The Court should ignore Southwest's appended documents, and instead treat the motion as a motion to dismiss and evaluate the allegations in the complaint according to the Rule 12(b)(6) legal standards. If the Court decides to convert the motion to dismiss, Carter asks the Court for reasonable notice of its intent to do so and an opportunity to conduct discovery and present evidence to oppose a summary judgment motion. *See* Fed. R. Civ. P. 12(d). In sum, Southwest's Motion to Dismiss should be evaluated under the standards for Rule 12(b)(6) without relying on Southwest's extraneous evidence, and not as a summary judgment motion.

## ARGUMENT

I.    **This Court has subject matter jurisdiction over Carter's claims arising under the U.S. Constitution, the RLA, and Title VII. (Counts I, II, IV, and V).**

Contrary to Southwest's arguments, this Court has subject matter jurisdiction over Carter's claims, which arise under the RLA Section 2, Third, and Fourth, Title VII, the First and Fifth Amendments to the U.S. Constitution, and federal labor policies (Counts I, II, IV, and V). SAC ¶¶ 1-4, 76-83, 84-90, 101-111, 112-31; SWA Br. 10-15.[3]

A.    **Federal claims that are separate and independent from the CBA are not subject to arbitration.**

This Court has subject matter jurisdiction over Carter's claims because they arise from *statutory* rights separate and independent from the CBA. Claims are not subject to arbitration

---

[3] Carter's Second Amended Complaint, ECF No. 47 (June 25, 2018), will be cited to herein as "SAC ¶__". Southwest's Brief in Support of its Second Motion to Dismiss, ECF No. 49, shall be cited to as "SWA Br. __".

when they seek to enforce constitutional and statutory rights independent from the CBA. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 191 (5th Cir. 2014); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777 (5th Cir. 2012) ("[T]he assertion of any right that is not created by a CBA is … not subject to binding arbitration under the statute.") (quoting *CareFlite v. Office And Prof'l Employees Int'l Union, AFL-CIO*, 612 F.3d 314, 320–21 (5th Cir. 2010)); *Roscello v. Sw. Airlines Co.*, 726 F.2d 217 (5th Cir. 1984).

Southwest argues that Carter's claims are subject to mandatory arbitration because employee discharges are "minor disputes" arising under the CBA. SWA Br. 10-15. However, U.S. Supreme Court and Fifth Circuit precedent reject Southwest's sweeping assertion:

> [T]he RLA's mandatory arbitration mechanism does ***not*** apply to all disputes between an employer and its employees, or even to all non-major disputes between an employer and its employees, but ***only*** to those rights which arise from the provisions of a CBA. ***The assertion of any right that is not created by a CBA is therefore not subject to binding arbitration under the statute***.

*Hawaiian Airlines, Inc.*, 512 U.S. at 258 (emphasis added); *CareFlite*, 612 F.3d at 320-21.

The U.S. Supreme Court held that the scope of the RLA's mandatory arbitration mechanism in 45 U.S.C. § 151a controls ***only*** disputes over the interpretation or application of CBAs, such as disagreements over how to give effect to the bargained-for agreement. *Hawaiian Airlines, Inc.*, 512 U.S. at 255. Federal statutory rights are independent of the CBA, and the Supreme Court rejects the argument that, simply because an alleged injury results from conduct that is *also* subject to a CBA (*e.g.*, termination), the employee's sole remedy must be through arbitration. "Notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute

designed to provide minimum substantive guarantees to individual workers.'" *Hawaiian Airlines, Inc.*, 512 U.S. at 258.

In *Grimes*, the Fifth Circuit distinguished the plaintiff's arbitration, which enforced CBA protections, and federal actions seeking protection under the RLA, which "is entirely agnostic as to the content of any collective bargaining agreement." *Grimes*, 746. F.3d at 191 (citing and quoting *Reed v. Norfolk*, 740 F.3d 420, 425 (7th Cir. 2014). The Fifth Circuit acknowledged that "CBA protections for *contractual* claims" are separate and independent from claims under the RLA, observing that "even though [the employee's] contract is *enforceable* by the RLA, the RLA is not itself the source of law under which he seeks protection." *Id. See also Roscello*, 726 F.2d at 220 n.2 (citing *Bhd. of R. R. Trainmen v. Howard*, 343 U.S. 768 (1952)).

Carter's Complaint alleges that Southwest violated **the RLA and Title VII** when it terminated her. SAC ¶¶1-4, 76-83, 84-90, 101-111, 112-31. Carter's allegations show that she was exercising RLA-protected speech and association rights for which she was terminated. *See, e.g.*, *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273-74 (1974); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) *Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees*, 466 U.S. 435, 447 (1984).

Southwest contends that Carter's claims here are minor disputes because they require the Court to interpret the CBA. Not so. There is no difference between Southwest's argument that Carter's RLA claims are minor disputes and the argument it lost in *Carmona*. 536 F.3d at 345; SWA Br. 17. Rejecting Southwest's arguments, the Fifth Circuit concluded that the flight attendant's case was not a minor dispute because it only required a court to "*refer to,*" rather than interpret, the CBA. *Carmona*, 536 F.3d at 349 (no emphasis added). The court concluded that the employee's Title VII discrimination claims did not dispute the meaning of any CBA provisions

and did not preclude federal jurisdiction. *Id.* at 349-50. Likewise, Carter's allegations here do not require CBA interpretation and do not dispute the meaning of any CBA provisions. SAC ¶¶1-4, 76-83, 84-90, 101-111, 112-31.

Southwest's Social Media Policies are not part of the CBA. Carter's claim regarding these Social Media Policies is that they interfere, influence, and coerce employees' RLA speech rights under Section 152, Third and Fourth, which is irrelevant to the CBA. SAC ¶¶84-90. Thus, Carter's claims that Southwest enforced these policies to restrict her RLA-protected rights are independent statutory claims.[4]

### B.    The RLA guarantees employee rights beyond union certification.

Contrary to Southwest's arguments, RLA Section 152 Third and Fourth guarantee employee speech and association rights beyond precertification. SWA Br. 12-13, 14-15. Federal labor law guarantees protection for individuals' speech and association rights whether there is an existing dispute between labor and management, whether organizing efforts occur during the course of a representation election campaign, or whether organizing efforts are directed toward achieving recognition. *Old Dominion*, 418 U.S. at 278-79. ("We see no reason to limit this protection to statements made during representation election campaigns. The protection … is much broader.").

---

[4] Despite Southwest's attempt to brush off National Labor Relations Act ("NLRA") precedent, it is persuasive authority frequently employed by federal courts in applying the RLA's provisions, as the company recognizes. SWA Br. 13 n.5 & 19 n.8 (relying on NLRA precedent regarding Carter's RLA speech protections and citing *In re Cont'l Airlines Corp.*, 901 F.2d 1259, 1264 (5th Cir. 1990)); *see also Hawaiian Airlines, Inc.*, 512 U.S. at 262–63; *Roscello*, 726 F.2d at 222. The NLRA establishes causes of action for employer's policies that coerce, chill, and restrict employees' substantive rights to refrain from union activity and to oppose a union. *See Republic Aviation Corp. v. N.L.R.B.*, 324 U.S. 793, 797–98, 803 (1945); *N.L.R.B. v. Vanguard Tours, Inc.*, 981 F.2d 62, 67 (2d Cir. 1992); *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998). RLA, Section 2, Three and Fourth reflect similar concerns with employee coercion as the NLRA.

Federal jurisdiction is proper when an employer's conduct has been motivated by union-related animus or an attempt to interfere with employees' union-related speech and association rights; when the employer's conduct constitutes discrimination or coercion; or when its conduct involves acts of intimidation that cannot be remedied by administrative means. *Roscello*, 726 F.2d at 222–23; *Held v. Am. Airlines, Inc.*, 13 F. Supp. 2d 20, 24, 26 (D.D.C. 1998) (noting that the U.S. Supreme Court did not create a "heightened jurisdictional barrier" in postcertification cases); *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1361-63 (9th Cir. 1996) (holding that RLA Section 2, Fourth protected employees during a re-organizing campaign despite the union's certification); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102 (3d Cir. 1968).

Federal jurisdiction is required to safeguard federal rights such as Carter's RLA-protected speech and association rights.[5] Even when an incumbent union is already certified, federal courts have subject matter jurisdiction in instances when "'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress [wrote] into the [RLA].'" *Held*, 13 F. Supp. 2d at 25; *Fennessy*, 91 F.3d at 1363 (quoting *TWA*, 489 U.S. at 441); *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 923 (7th Cir. 1993).

In *Brady*, the Third Circuit reasoned that the arbitration process is designed for unions and employers as opposed to an employee's dispute with both the union and employer, and that arbitration boards are composed of the union's and employer's designated representatives. *Id.* The court then observed that: "in such a dispute, which pits an employee against his union and

---

[5] Southwest relies on *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989), which makes a general observation that RLA Section 2, Third and Fourth "primarily"—***but not exclusively***—address "the precertification rights and freedoms of unorganized employees." SWA Br. 10. As demonstrated herein, protecting individuals' RLA speech and association rights is an exception. Even the arbitrator deciding whether Southwest had just cause to fire Carter under the CBA recognized that he did not have jurisdiction to consider Carter's RLA speech and association rights. App. 9, p6 n.2; *See also Hawaiian Airlines, Inc.*, 512 U.S. at 255 (arbitration decisions quoted therein).

his employer, the very parties whose power he challenged would have the additional power of deciding whether they had exercised it in a proper manner." *Id.* at 96. The court then concluded that federal jurisdiction was necessary in order to give the employee a meaningful forum. *Id.*

Just like the employee in *Brady* challenging both his union and employer, Carter alleges that Local 556 and Southwest jointly violated her RLA rights to engage in protected activities, and, thus, she challenges both. SAC ¶¶109, 101-111, 1-4, 76-83, 84-90, 91-100, 101-111. The RLA's substantive protections reach Carter's case because arbitration ***cannot*** remedy her statutory claims. Therefore, this Court has subject matter jurisdiction to hear Carter's RLA claims, and Southwest's motion to dismiss should be denied.

## II.    Carter states a Title VII religious discrimination claim (Count V).

Carter states a claim for Title VII religious discrimination, having alleged that Southwest terminated her because of her religious beliefs and practices. SAC ¶¶112-131. Under Title VII, an employee's religious beliefs and practices cannot be a motivating factor in the employer's termination decision. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032-33 (2015). To prevail, Carter must ultimately show that her need for an accommodation was a motivating factor in Southwest's decision to fire her, ***not that the company had knowledge of the need***. *Id.* at 2033 (emphasis added).

Contrary to Southwest's characterizations, there is no requirement that employees provide specific notice of their need for an accommodation or that the employer have actual knowledge of the employee's religious beliefs.[6] A "request for accommodation" "is not a necessary condition of liability." *Abercrombie*, 135 S. Ct. at 2032-33. "[A]n employer who acts

---

[6] Southwest relies on bad law. SWA Br. 22-23 (case citations therein).

with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation [is] needed." *Id.* at 2033.

Carter explained her religious beliefs and practices to Southwest prior to her termination. At the March 7, 2017, fact-finding meeting where Southwest managers questioned Carter about the pro-life videos, she told them "she posted and sent the videos depicting the aborted infant because she is a Christian and pro-life." SAC ¶58. It was in that context in which Carter told Southwest managers the videos were intended to show that unborn infants are human life, and she hoped the videos would dissuade viewers from supporting abortion. *Id.* Carter explained further that she wanted to prevent others from going through abortion and experiencing the pain that one can suffer. *Id*. Carter also explained that she sent the videos to President Stone because Transport Workers Union of America, Local 556 ("Local 556") members, led by President Audrey Stone ("President Stone"), participated in the Women's March in support of Planned Parenthood and abortion. *Id.* at ¶59. These facts show that Southwest knew, suspected, or reasonably should have known about Carter's religious beliefs and practices in sharing the pro-life message. SWA Br. 22. Southwest cannot hide behind its Social Media Policies. SWA Br. 23-24. "Title VII requires otherwise-neutral policies to give way to the need for an accommodation." *Abercrombie*, 135 S. Ct. at 2034. Contrary to Southwest's suggestions,[7] Title VII requires employers to give religious practices "favored treatment" (not mere neutral treatment). *Id.*

Southwest makes several baseless undue hardship arguments. Southwest has the burden of proof when it comes to showing undue hardship "on the conduct of [its] business." 42 USC § 2000e(j); *Antoine v. First Student, Inc.*, 713 F.3d 824 (5th Cir 2013); *Brener v. Diagnostic Ctr.*

---

[7] SWA Br. 23, 24.

*Hosp.*, 671 F.2d 141, 144 (5th Cir. 1982). This by its nature is a fact intensive inquiry. Southwest cannot prove undue hardship based on the complaint alone. All of the cases Southwest cites for its undue burden argument are not on point here at the motion to dismiss stage because they were all decided at either the summary judgment stage or after a trial. SWA Br. 23.

Southwest also relies on inapposite cases that involved individuals trying to proselytize mere coworkers. *Id.* This case is different because Carter directed her messages to Audrey Stone, President of Local 556. SAC ¶44-48. Carter sent her messages after Local 556 and President Stone attended the Women's March as Southwest employees' bargaining representative. SAC ¶44-48, 35-39, 41. Carter voiced her religious objections to having her union fees spent on abortion to the union president. SAC ¶44-48. She never aimed her messages at Southwest or the workplace. *Id.* This is important for at least two reasons.

First, as president of Local 556, Audrey Stone is not merely a coworker, and Carter's communications with the president are entitled to robust protection under the law. *Old Dominion*, 418 U.S. at 273-74. And a union acting as the exclusive representative of a craft/class of employees owes a fiduciary duty of fair representation to all of those employees that it represents, members and nonmembers alike. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198–99, 204 (1944). The duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries," such as the "duty a trustee owes to trust beneficiaries," or the duty an "attorney" owes to a "client." *O'Neill*, 499 U.S. at 74. Like any other fiduciary, Local 556, and its agents—including President Stone— owe a duty of "complete loyalty" to "all whom it represents." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). Carter had a right to communicate her grievances to her exclusive bargaining representative, Local 556, through its chief officer, President Stone. Indeed, President

11

Stone ran for and won the position of union president. SAC ¶14-17. Union officials, including the President, receive "unsolicited" complaints all of the time from employees they represent. Carter's messages to President Stone on her TWU page were directed at Local 556 and its Executive Board, not to Stone in some personal, private capacity. SAC ¶46, 44-48. Thus, any alleged "burden" from allowing Carter to criticize her union president on Facebook is not "undue," because it is one the law imposes on Southwest.

Second, it is not an undue burden on Southwest's business for it to refrain from disciplining an employee who exercises her federal rights. The U.S. Constitution and the RLA prohibit unions from spending objecting nonmembers' fees on activities unrelated to collective bargaining. *Ellis*, 466 U.S. at 443-44; *Ry. Emps.' Dep't v. Hanson*, 351 U.S. 225, 232 (1956). Promoting abortion is not a permissible use of nonmembers' fees. Carter had a right to inform Local 556 of her religious and other objections to her fees being used to support the Women's March, while the union purported to represent her views as a Southwest employee there. Southwest has no legitimate business interest in preventing Carter from exercising these statutory and constitutional rights in the labor context, especially when Carter's actions occurred away from work and not on work time.

Southwest's argument that it might be held liable by President Stone if it granted Carter an accommodation is highly dubious. SWA Br. 24. President Stone and Carter engaged in an exchange that is given wide latitude under labor law. *Old Dominion* demonstrates that Southwest could not have been held liable for robust communications between the union and an employee. 418 U.S. at 273-74; *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191-92 (11th Cir. 1999). Southwest's fear of liability is also speculative because "harassment" must be "severe or pervasive" before it is actionable under Title VII and this is a fact intensive inquiry that cannot

12

be resolved at the motion to dismiss stage. *See Oncale v. Sundowner Offshore Services*, 523 U.S. 75, 78 (1998).

Finally, Southwest's argument that Carter had to plead the specific religions of employees who received preferential treatment misunderstands Carter's requirements at the pleading stage. SWA Br. 24-25. To state a claim of disparate treatment on the basis of religion under Title VII, Carter only needed to allege sufficient facts showing that her religious practice motivated Southwest to terminate her. *Abercrombie*, 135 S. Ct. at 2033; *Raj v. Louisiana State Universi*ty, 714 F.3d 322, 331 (5th Cir. 2013) ("[T]he 'ultimate question' in a Title VII disparate treatment claim remains "whether a defendant took the adverse employment action against a plaintiff because of her protected status."). Comparator evidence is relevant, but it is not an essential element to her claim. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 (2002); *Raj*, 714 F.3d at 331 ("[A] plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

In any event, Carter alleged several policy violations by employees on social media that Southwest treated differently than hers. SAC ¶72, 73, 125. These violations show that Southwest treated non-religious violations (e.g., "sexual harassment," "threats of violence," and "offensive behavior") more favorably than Carter's religious communications to the union. *Id.*

## III.   Carter's allegations plead protected speech, activity, and union-related animus in support of her RLA claims (Counts I and II).

### A.   The RLA guarantees employee speech and association rights.

Southwest argues that Carter fails to plead union-related animus and protected activity necessary to support her RLA claims. SWA Br. 16-17. This is false. Carter's Count I and II claims do not require a showing of union animus to prevail. Rather, she only needs to show that Southwest interfered with or coerced her rights. *See* 45 U.S.C. § 152 (Fourth).

13

Carter's Complaint alleges that she engaged in RLA-protected activity when she engaged in speech and activities opposing Local 556. RLA Section 2, Third and Fourth's right to join, organize, or assist a union or refrain from any of those activities guarantees employees' rights to engage in "uninhibited, robust, and wide-open" free speech concerning union and collective bargaining matters and the freedom to persuade other employees to join their cause. *Cf. Old Dominion,* 418 U.S. at 273-74; *Dunn,* 193 F.3d at 1191-92. Carter's speech and activities were made in the context of a campaign to oppose Local 556's policies and expenditures, and to reorganize the union via a recall election. SAC ¶¶80-83, 87-90; SAC ¶¶32-34, 41, 44-48; SAC ¶¶14-29. By firing Carter for her Facebook messages to President Stone and for related posts, Southwest violated Carter's rights under the RLA, to vigorously exercise "uninhibited, robust, and wide-open" free speech related to flight attendants' efforts to reorganize Local 556, to collectively bargain with Southwest, and to oppose the union's leadership and spending. SAC ¶77-83, 85-90.

Southwest argues that Carter must allege "extreme" union animus. SWA Br. 16. Carter alleges that Southwest and Local 556 retaliated against her for protected activity. SAC ¶¶101-111. It is difficult to imagine animus against an employee more "extreme" than firing her for her ideological opposition to the union. However, the RLA protects employee speech from retribution, and there is ***no*** heightened requirement that employees suffer "extreme" union animus. *See e.g., Roscello,* 726 F.2d at 220; *Held*, 13 F. Supp. 2d at 25-26.

### B.   Carter's speech did not lose its protection (Counts I, II, and IV).

Carter's speech did not lose its protection, because the RLA protects employees' rights to engage in "uninhibited, robust, and wide-open" free speech concerning union and collective bargaining matters, and to use all lawful propaganda to advance their cause. *Cf. Old Dominion*

14

*Branch,* 418 U.S. at 273-74; *Dunn,* 193 F.3d at 1191-92. This includes speech that others might

deem "intemperate, abusive, or insulting," *Old Dominion*, 418 U.S. at 283, and "vehement,

caustic, and sometimes unpleasantly sharp attacks." *Linn v. United Plant Guard Workers of*

*America*, Local 114, 383 U.S. 53, 62 (1966). In *Old Dominion*, the U.S. Supreme Court

explained:

> "Labor disputes are ordinarily heated affairs; the language that is commonplace
> there might well be deemed actionable per se in some state jurisdictions. Indeed,
> representation campaigns are frequently characterized by bitter and extreme
> charges, countercharges, unfounded rumors, vituperations, personal accusations,
> misrepresentations, and distortions. Both labor and management often speak
> bluntly and recklessly, embellishing their respective positions with imprecatory
> language … This freewheeling use of the written and spoken word, we found, has
> been expressly fostered by Congress and approved by the NLRB."

418 U.S. at 272 (quoting *Linn*, 383 U.S. at 58, 62). Vigorous exercise of this right 'to persuade

other employees to join' must not be stifled by the threat of liability for the overenthusiastic use

of rhetoric or the innocent mistake of fact." 418 U.S. at 277. Statements of fact or opinion

relevant to union organizing are protected, even if they are defamatory and prove to be

erroneous. *Id*. at 277-78. Federal law protects this speech to ensure that employees are free to

persuade others to support their cause without inhibition or restraint. *Old Dominion*, 418 U.S. at

279.

Even assuming *arguendo* that Carter's anti-union speech was offensive to Local 556, the

Supreme Court affords robust protection to ideological speech that opposes the union and its

activities under *Old Dominion*. Southwest is mistaken that the purported offensiveness of her

pro-life speech strips it of protection. SWA Br. 18-20. Even extremely offensive, vulgar,

defamatory or opprobrious remarks uttered during the course of protected activities will ***not***

remove activities from protection unless they are so flagrant, violent, or extreme as to render the

individual unfit for further service. *See Stanford New York, LLC*, 344 NLRB 558, 564 (2005)

15

(emphasis added) (citing *Dreis & Krump Mfg., Inc.*, 221 NLRB 309, 315 (1975)). "Vulgar and offensive" speech only loses its protection when such speech is directed at the employer or affects its ability to maintain discipline in the workplace. "[I]f the activity or the statement enjoys statutory protection, neither a 'rule' nor a low level of managerial tolerance of such statements can curtail the reach of the statute." *Thor Power Tool Co.*, 148 NLRB 1379, 1388 (1964).[8] Southwest relies on cases where speech was directed at the employer (not the union) and diminished the employer's ability to maintain workplace discipline. SWA Br. 19-20. Carter's speech was **not** directed at the company, **not** made at work or during work hours, and had **no** detrimental effect on supervisors or the workplace. SAC ¶¶41, 13, 19-25, 29, 110.

## IV.    Carter alleges facts showing the causal nexus between her protected activity and Southwest's decision to fire her (Counts I, II, and IV).

Carter alleges that Southwest fired her for engaging in protected activities. Beginning with Counts I and II, Carter shows that Southwest terminated her for sending Facebook messages to President Stone, and that its Social Media Policies prohibited the messages. Those facts alone establish the causal nexus for those claims. SAC ¶¶76-83, 84-90. Turning to Count IV, employees demonstrate the causal nexus in a retaliation claim by showing that their protected activity "was a substantial or motivating factor" for their termination. *Roscello*, 726 F.2d at 222 (quoting *N.L.R.B. v. Transp. Mgmt. Corp.*, 462 U.S. 393 (1983)). Circumstantial evidence may be used because "[o]vert direct evidence of anti-union animus, [is] a rarity at best." *Roscello*, 726

---

[8] To determine whether an employee engaged in protected speech and activity loses protection by her conduct, courts applying the NLRA examine (A) the place of the discussion; (B) the subject matter of the discussion; (C) the nature of the employee's outburst; and (D) whether the outburst was, in any way, provoked by an employer's unfair labor practice. *See Atl. Steel Co.*, 245 NLRB 814 (1979). Each of these factors weighs in Carter's favor here. SAC ¶¶41, 13, 19-25, 29, 110.

F.2d at 223 (quoting *N.L.R.B. v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 465 (5th Cir. 1983)).

Carter alleges that her protected speech and activity was a substantial and motivating factor behind Southwest's decision to fire her. SAC ¶¶109, 49-68, 69-71, 74-75 and Ex. D. Carter's detailed factual allegations show a strong "casual nexus" between her protected activities and her termination. *Id*. Southwest's decision to terminate Carter ***within one month*** of her Facebook messages and ***only a week*** after her fact-finding is one of many factors alleged in support of the causal nexus. SAC ¶¶109, 49-53, 55-68. In the month preceding Carter's termination, Southwest learned about Carter's opposition to Local 556's Executive Board and its policies, her support for the campaign to recall and re-organize union leadership, and her other protected activity. SAC ¶¶ 49-68, 44-48, 66. Carter has satisfied her burden at the motion to dismiss stage by making detailed factual allegations to support numerous different factors evincing the company's retaliatory motive, including her showing that she was terminated within weeks of her heightened speech and activity. SAC ¶¶44-48, 41, 109. In sum, Carter alleged facts that create inferences that Southwest was motivated by Carter's protected activities. *Id*.

## V.    Southwest acted under color of federal law when the company terminated Carter's employment (Count IV).

Contrary to Southwest's assertions, Carter alleges that the company acted ***under color of federal law***, and violated her constitutional and statutory rights, when it retaliated against her for exercising protected rights. SAC at ¶1, 3, 101-107, 109-111. State action arises under the RLA, which "authorizes agency shops … and therefore puts a federal imprimatur on a collective bargaining agreement, forcing an unwilling employee to pay a union agency fee." *Hanson*, 351 U.S. at 232 n.4; *Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 513, 513 n.2, 516–17 (5th Cir. 1998); *see also Hanson*, 351 U.S. at 232 (citing *Steele*, 323 U.S. at 198–99,

204). Carter exercised her First and Fifth Amendment rights when she resigned from union membership and objected to Local 556's political expenditures. SAC at ¶13, 20.

The RLA transforms Southwest and Local 556 into government actors. "The enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates, though it takes a private agreement to invoke the federal sanction." *Hanson*, 351 U.S. at 232. First Amendment scrutiny is likewise necessary to protect employees from retaliation for exercising their First Amendment resignation and objection rights. *See Lutz v. Machinists*, 121 F. Supp. 2d 498, 505 (E.D. Va. Nov. 22, 2000) (finding that state action that forces an employee to pay a union agency fee also warrants "First Amendment scrutiny of the procedures for asserting the objection …because these procedures have the potential for abridging the First Amendment objection right."); *Ellis v. W. Airlines, Inc.*, 652 F. Supp. 938 (S.D. Cal. Dec. 22, 1986); *Crawford v. Air Line Pilots*, 992 F.2d 1295, 1301 (4th Cir. 1993) (en banc), cert. denied, 510 U.S. 869 (1993).

Pursuant to their authority under the RLA, Southwest and Local 556—acting in concert—enforce and subject Carter to a "union security clause" in their collective bargaining agreement. *See Masiello v. U.S. Airways, Inc.*, 113 F. Supp. 2d 870, 875 (W.D.N.C. Sept. 14, 2000) ("The enforcement of a 'union security agreement' under the Railway Labor Act, Section 2 Eleventh, 45 U.S.C. § 152 Eleventh, is governed not only by the RLA, but also by the United States Constitution, since it is considered to be governmental action."). SAC ¶¶11-13, 103, 105. Vested with governmental authority by the RLA, Southwest engaged in "state action" and "acted under color of federal law" when it interfered with and violated Carter's rights to resign and to object by retaliating against her for exercising those rights. SAC ¶¶101-111. Carter's Complaint alleges that Southwest terminated Carter in part for her political activities as a union nonmember

18

and objector, having invoked her rights with respect to the enforcement of the "union security" clause, and thus implicating the company's federally-conferred authority and obligations under the RLA. SAC ¶¶44-48, 61, 64-66, 74-75, 105, 106, 109.

It is not "immaterial" that Carter is compelled "to pay statutorily and CBA-authorized agency fees." SWA Br. 21. On the contrary, the U.S. Supreme Court recognizes that this requirement is a federally-sanctioned impingement on employees' constitutional rights. Southwest misses the point when it asserts, "[T]he requirement for financial support of the [union] … by all who receive the benefits of its work … does not violate either the First or the Fifth Amendments." SWA Br. 21 (quoting *Hanson*, 351 U.S. at 238). Southwest fails to recognize that the U.S. Supreme Court subsequently held that coercing nonmember objectors, like Carter, to support a union's political activities or ideological causes ***does*** violate the First Amendment. Paying for collective bargaining costs infringes the individual's First Amendment rights. *See Ellis*, 466 U.S. at 447; *Ry. Clerks v. Allen*, 373 U.S. 113 (1963); *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961). *See also Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018) (compelling union nonmembers to pay fees as a condition of employment violates their First Amendment rights). Firing an employee for exercising her constitutional rights to refrain from union membership and objecting to its political expenditures is coercion in violation of *Hanson*'s First Amendment principles.

**VI.    Factual determinations made in a CBA-arbitration hearing cannot be given   issue preclusive effect but should instead be weighed with Carter's evidence after she conducts discovery on her statutory and constitutional claims.**

Issue preclusion does not apply to Carter's claims under the RLA, Title VII, and the U.S. Constitution. Courts may consider and give evidentiary weight to findings of fact from arbitral

proceedings in subsequent federal claims. *Grimes*, 746 F.3d at 188.[9] But issue preclusion is ***not*** automatic, and courts have "discretion" as to the weight it will give an arbitration relative to the weight of the plaintiff's evidence. *Id.*

*Grimes* requires courts to consider "federal interests warranting protection." 746 F.3d at 188 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)). Federal courts should independently review relevant factual issues when a plaintiff seeks to vindicate her constitutional and statutory rights in a judicial forum. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56, 60 n.21 (1974), (Title VII decision recognizing that a court may afford weight to the arbitral decision "where the issue is solely one of fact"); *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 292 (1984) (holding in a 42 U.S.C. § 1983 civil rights action that "a federal court should not afford *res judicata* or collateral-estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement"); *Grappe v. Kansas City S. Ry. Co.*, 71 F. App'x. 302, 303 (5th Cir. 2003) (holding that issue preclusion is unavailable in a Title VII action "because different policies underlie the proceedings before the [arbitrator] and the Title VII action…").

Issue preclusion is improper here because arbitral proceedings cannot provide an adequate substitute to a judicial proceeding in safeguarding Carter's due process rights; thus, giving automatic preclusive effect to the arbitrator's findings would prejudice Carter's federal rights. *See McDonald*, 466 U.S. at 290."The record of the arbitration proceedings is not as complete … the usual rules of evidence do not apply; and the rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath

---

[9] *But see Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 643 (5th Cir. 1985) ("Even if the same claim and factual allegations were determined by binding arbitration, [a] plaintiff is entitled to *de novo* review in a federal court [on his federal discrimination claims] and doctrines of *res judicata* or collateral estoppel are inapplicable.").

are often severely limited or unavailable." *Alexander*, 415 U.S. at 57-58. Even where a plaintiff is allowed to call and cross-examine witnesses and submit evidence in arbitration proceedings, fact finding procedures have been deemed inadequate to protect federal rights. *See Grimes*, 746 F.3d at 189. For these reasons, the Court should not give the arbitrator's findings preclusive weight here, especially at this early, pre-discovery stage in the proceedings before Carter can present her post-discovery supportive evidence. Given the discretion the court must exercise, it would be inappropriate to make such a determination at this stage. *See Grimes*, 746 F.3d at 186. (deciding the question of issue preclusion at the summary judgment stage).

### A.     The Court should not give the arbitrator's findings preclusive effect to any allegations in Counts I, II, IV, and V.

The Court should not give the arbitrator's findings preclusive effect to any of the Count V allegations. SAC ¶112-131. Carter's religious beliefs and practices were irrelevant to finding "just cause" under the contract. Southwest contends that the arbitrator found "no improper motive," but that is an abstract and conclusory observation made only in the context of the contractual terms of the bargaining agreement. SWA Br. 10. The arbitrator did not address the religious beliefs of similarly situated flight attendants, and if he had, those findings would have been beyond the scope of determining "just cause." SWA Br. 10; SAC ¶125.

Nor should the Court give the arbitrator's findings preclusive effect to any of the Count I and II allegations. Count I alleges that Carter engaged in speech, and that Southwest violated Carter's rights by firing her for such speech. SAC ¶76-83. The arbitrator acknowledges that his findings are unrelated to her speech and association rights.[10] App. 9 n.2; SAC ¶80-81. Counts I

---

[10] The arbitrator mentions Carter's "personal beliefs on abortion, her distaste for current union leadership, and her right to refrain from compulsory union activity such as paying the union's compelled fees for its political, ideological, and other nonbargaining spending." He states, "that the Grievant holds very strong personal views on such subjects, or that she has exercised her

and II allege that Southwest applied the Workplace Bullying and Hazing Policy, Social Media Policy, and other company rules, policies, or mission statements ("Social Media Policies") to Carter's Facebook messages and other union-related activities in violation of her constitutional and statutory rights. App. 14; SAC ¶82. Whether Southwest maintains and enforces overbroad and vague Social Media Policies that chill employees' constitutional and statutory rights involves legal and factual assessments distinct from a legal decision that the company had "just cause" under the contract to fire her. Resolving such questions was not necessary to the arbitrator's limited scope and judgment. SAC ¶89.

The Court should not give the arbitrator's "findings" preclusive effect for any of the Count IV allegations either. Nothing in the arbitrator's opinion controverts Carter's allegations that she engaged in protected rights and activity or suffered an adverse action. SAC ¶¶105, 107. Southwest's "findings" address only one element of Carter's retaliation claims and fail to address all the ways in which Carter's choice to exercise her rights was a substantial and motivating factor in the company's decision to fire her. SAC ¶108. Nevertheless, these findings do not have preclusive effect, because issue preclusion only applies to findings when the ***identical*** issue was previously adjudicated and the finding was ***necessary*** to the arbitrator's decision. *Bradberry v. Jefferson Cty.*, 732 F.3d 540, 548 (5th Cir. 2013). Neither condition was met.

### B.   The "just cause" issues were not identical to Carter's constitutional and statutory claims.

Issue preclusion does not apply because the issues adjudicated were not "identical." For issue preclusion to apply *both* the facts and the legal standard used to assess them must be the same in both proceedings. *See Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1422 (5th

---

Railway Labor Act and First Amendment rights, ***are not germane to my determination of just cause for her termination***." App. 9, p6 n.2 (emphasis added).

Cir. 1995). The "just cause" standard used in the arbitration put the burden on the employer to prove the employee engaged in misconduct under the bargaining agreement, and that the "severity of the disciplinary action is reasonably related to the seriousness of the proven offense and the employee's prior record." *Providence St. Peter*, 123 LA 473, 476 (2006) (Gaba). Whether the employer had just cause depends on factors such as whether it obtained proof of the employee's guilt, applied its rules and penalties even-handedly, without discriminating against the employee; and whether the degree of discipline was reasonably related to the seriousness of the proven offense and the employee's service record. *Id*. at 477 & n.4. Simply put, this standard is a separate and distinct from what Carter must demonstrate to prove Count I, II, IV, and V.[11]

### C.   Southwest's purported "findings" were legal conclusions and not necessary to the arbitrator's decision.

Southwest's preclusion argument is based on "findings" that are legal conclusions and not necessary to the arbitrator's decision. SWA Br. 6, 9-10. "[A]n arbitrator may be competent to resolve many preliminary factual questions, such as whether the employee 'punched in' when he said he did," but cannot decide ultimate legal issues. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Many of the findings have no preclusive effect because they are legal conclusions (e.g., the arbitrator's conclusion that Southwest had "just cause" and that Carter violated the Social Media Policies). SWA Br. 6, 9.

Southwest also submits findings related to President Stone's subjective reasons for reporting Carter. SWA Br. 6, 9. President Stone's motive for reporting Carter was not necessary to determining whether *Southwest* had "just cause." Therefore, this finding cannot be given

---

[11] The arbitrator's opinion never defined the elements of "just cause," making the scope extremely unclear and demonstrating further why the findings are not entitled to preclusive effect. *Grimes*, 746 F.3d at 188 (recognizing that arbitral pleadings must state issues clearly to warrant preclusive effect).

preclusive effect. Southwest submits statements regarding Carter's twenty-year employment record without discipline. SWA Br. 6, 9. That opinion only shows that Southwest may have been justified under the contract; but it does not refute or preclude Carter's allegations of Southwest's improper motive, which can be demonstrated with circumstantial evidence. The finding does not diminish the underlying fact that she had never been disciplined, and that this, when examined in light of the surrounding facts and circumstances after discovery, can rebut the company's ostensible motives, leaving only improper ones. SAC ¶¶70-71.

Southwest relies on arbitrator statements regarding disparate treatment. SWA Br. 6, 9. The arbitrator concluded that Carter did not satisfy her legal burden of demonstrating that the circumstances surrounding her offenses were substantively like those of individuals who received more moderate penalties. This is a legal conclusion devoid of specific facts to guide this Court. Without reference to evidence or facts, the arbitrator concludes that the Ricky Spand situation "is not a sufficiently similar situation." App. 16. That statement is a legal conclusion and has no evidentiary weight. The fact remains that Southwest did not terminate Spand's employment when he posted the video threatening recall supporters to his Facebook page. SAC ¶72(a). Moreover, it is for this Court to decide whether Spand's situation is similar for the purposes of her federal retaliation claims. The arbitrator characterized testimony regarding another employee's circumstances as "speculative." Not only is that a legal conclusion, there is no factual context to inform the Court as to how or why the arbitrator reached that conclusion. The arbitrator objects only to the form in which the evidence was presented. This does not contradict Carter's factual allegations. SAC ¶72(c). The arbitrator makes no specific findings of fact regarding the other alleged incidents of disparate treatment raised in Carter's Complaint. SAC ¶¶ 40, 57-60, 64-65, 72(b), (d), and (e), 73.

Southwest next submits the arbitrator's conclusion that the company "does not have a policy or practice of disciplining, or not disciplining employees based upon their view of TWU Local 556 generally, or of Audrey Stone in particular." SWA Br. 9. Not only is that a legal conclusion, but it was not necessary to determining whether Southwest had just cause for terminating Carter under the collective bargaining agreement. The arbitrator's opinion does not show what facts, if any, he considered in reaching that conclusion. Rather, it is a conclusory statement devoid of facts to guide the Court. By contrast, Carter alleges that Southwest subjected other recall supporters and union nonmember objectors to termination, suspension, repeated fact-findings, and other disciplinary measures, all in the twelve months prior to filing her original complaint, many times at the request of Local 556 members and officials. SAC ¶74, 75. These allegations are never addressed in the arbitrator's findings.

Even assuming *arguendo* that all of Southwest's proffered "findings" are preclusive—and they are not—Carter alleges other evidence demonstrating Southwest's retaliatory motive, none of which are implicated in the company's argument. SAC ¶¶109, 32-35, 41, 44-46, 48-49, 61-62, 66, 70-71. Therefore, those "findings" do not require dismissing Carter's Count IV retaliation claim. Carter met her burden to plead sufficient facts on her claims. Thus, Southwest's arguments should be rejected.

## CONCLUSION

For the foregoing reasons, Southwest's Motion to Dismiss should be DENIED.


Dated: July 30, 2018                    Respectfully submitted,


                                        s/ Jason E. Winford (*with permission*)
                                        David E. Watkins
                                        Texas Bar No. 20922000
                                        *dwatkins@jenkinswatkins.com*
                                        Jason E. Winford

Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings (*admitted pro hac vice*)
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

*Attorneys for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

On the 30th day of July, 2018, I electronically submitted the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the electronic case files system ("ECF") of the Court, in compliance with this Court's Standing Order Designating Case for Enrollment in the Electronic Case Filing System "CM/ECF." Delivery of the notice of electronic filing that is automatically generated by ECF constitutes service under Fed. R. Civ. P. 5(b)(2)(D) on each party who is a registered user of ECF. Local Rule 5.1(d). I hereby certify that I have served all counsel electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

s/ Matthew B. Gilliam

27