# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>　　　　　Defendant. | Civil Case No. 3:17-cv-02278-S<br><br><br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF HER RESPONSE TO DEFENDANT LOCAL 556'S RULE 12(b)(6) MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 2

ARGUMENT ........................................................................................................................... 3

I.  Carter's allegations support her retaliation claims against Local 556. ............................. 3

  A.  Carter alleges that Local 556 caused her to suffer an adverse action ..................... 3

  B.  Carter's allegations support her claim that President Stone acted as an officer of Local 556. ................................................................................................ 7

II. Carter alleges that Local 556 violated its duty of fair representation by seeking and causing her termination arbitrarily, in bad faith, and based on its discrimination against her protected activities and nonmember objector status......................................... 9

CONCLUSION...................................................................................................................... 11

# TABLE OF AUTHORITIES

Cases

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
    499 U.S. 65 (1991) ................................................................................................ 9

*Am. Comm'ns Ass'n v. Douds*,
    339 U.S. 382 (1950) ............................................................................................ 5-6

*Amalgamated Transit Union, Local Union No. 1433 (Veolia Transp. Servs., Inc.)*,
    360 NLRB 261 (2017) ............................................................................................ 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 2

*Brady v. Trans World Airlines, Inc.*,
    401 F.2d 87 (3d Cir. 1968) ................................................................................. 3, 5

*Breaux v. City of Garland*,
    205 F.3d 150 (5th Cir. 2000) ................................................................................. 3

*Connick v. Myers*,
    461 U.S. 138 (1983) ............................................................................................... 4

*Del Casal v. Eastern Airlines, Inc.*,
    634 F.2d 295 (5th Cir. 1981) ................................................................................. 9

*Dixon v. Int'l Bhd. of Police Officers,*
    504 F.3d 73 (1st Cir. 2007) ................................................................................... 6

*Dunn v. Air Line Pilots Ass'n,*
    193 F.3d 1185 (11th Cir. 1999) ............................................................................. 4

*Ford Motor Co. v. Huffman*,
    345 U.S. 330 (1953) ............................................................................................... 9

*Int'l Union of Operating Eng'rs, Local 406 v. N.L.R.B*,
    701 F.2d 504 (5th Cir. 1983) ............................................................................. 6, 9

*James v. Texas Collin Cty.*,
    535 F.3d 365 (5th Cir. 2008) .................................................................................. 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.L.R.B*,
    735 F.2d 1384 (D.C. Cir. 1984) ............................................................................. 7

*Local 357, Int'l Bhd. of Teamsters v. N.L.R.B.*,
    365 U.S. 667 (1961) ............................................................................................... 9

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ................................................................................ 11

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) .................................................................................. 2

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1977) ............................................................................................... 3

*Mullett v. N.L.R.B.*,
    571 F.2d 1292 (4th Cir. 1978) ................................................................................ 7

*N.L.R.B. v. Allis-Chalmers Mfg. Co.*,
    388 U.S. 175 (1967) ............................................................................................... 5

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ............................................................................................... 4

*Oscar Renda Contracting, Inc. v. City of Lubbock*,
    463 F.3d 378 (5th Cir. 2006) .................................................................................. 6

*Roscello v. Southwest Airlines*,
    726 F.2d 217 (5th Cir. 1984) .................................................................................. 3

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944) ............................................................................................ 5, 9

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) .................................................................................. 2

*Thorn v. Amalgamated Transit Union*,
    305 F.3d 826 (8th Cir. 2002) .................................................................................. 6

*Urichuck v. Clark*,
    689 F.2d 40 (3d Cir. 1982) ..................................................................................... 7

*Vaca v. Sipes*,
  386 U.S. 171 (1967) .................................................................................................... 9

Statutes

42 U.S.C. § 2000e .................................................................................................................. 1

42 U.S.C. § 2000e-3(a) ......................................................................................................... 6

45 U.S.C. § 151 ...................................................................................................................... 1

45 U.S.C. § 152 (Third) ........................................................................................................ 4

45 U.S.C. § 152 (Fourth) ................................................................................................... 4,5

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby submits this brief in support of her Response to Defendant Local 556's ("Local 556") Motion to Dismiss (ECF Nos. 51-52).[1]

## INTRODUCTION

Local 556's Motion to Dismiss should be denied. Local 556 moves to dismiss Carter's claims on two grounds: (1) that Carter cannot assert a retaliation claim against the union because it is not her employer; and (2) that Carter fails to plead facts supporting her allegation that Local 556 breached its duty of fair representation. Union Mot. 2. Local 556's motion is misguided. Carter sets forth detailed factual allegations showing that Local 556 retaliated against Carter for exercising her protected rights under the U.S. Constitution and the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), by initiating and causing Carter's termination from her employment with Southwest Airlines. Carter also sets forth detailed factual allegations sufficient to state a claim that Local 556, by and through its agents (namely, President Audrey Stone), breached its duty of fair representation by invidiously discriminating against Carter and causing her termination.

Local 556 makes the puzzling statement that Carter's religious discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, "are not asserted against Local 556." Union Mot. 1. However, Carter's Complaint and Exhibits B-C make it perfectly clear that her religious discrimination claims are asserted against Local 556. SAC ¶¶127, 112-131, Prayer for Relief; ECF Nos. 47-3, 47-4.[2] Local 556 waived any right to argue these claims in a Rule 12(b)(6) motion to dismiss, having failed to raise them in its instant

---

[1] Def. Local 556's Mot. to Dismiss, ECF No. 51 (July 11, 2018) ("Union's Mot."); Def. Local 556's Br. in Supp. of Mot. to Dismiss, ECF No. 52 (July 11, 2018) ("Union's Br.").
[2] Carter's Second Amended Complaint, ECF No. 47 (June 25, 2018), will be cited to herein as "SAC ¶__".

1

motion. Finally, Carter objects to Local 556's Motion to Dismiss on the grounds that it was untimely filed.

## LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). A complaint must give fair notice of the plaintiff's claim and the grounds upon which it rests, and must allege a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007). To allege a plausible entitlement to relief, a "plaintiff must plead sufficient 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Yet, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. In evaluating a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true" and "draw all reasonable inferences in the plaintiff's favor." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Accepting as true all facts alleged in the Complaint and drawing all reasonable inferences in Plaintiff's favor, Carter alleged a plausible entitlement to relief on all counts in her Complaint. As demonstrated herein, the Complaint clearly gives Local 556 fair notice of Carter's claims and the grounds upon which each claim rests. Carter has pled factual content allowing the Court to draw the reasonable inference that Local 556 is liable for both retaliation and breach of its duty of fair representation for the reasons set forth below. Local 556's Motion to Dismiss should be denied in its entirety.

**ARGUMENT**

I. **Carter's allegations support her retaliation claims against Local 556.**

   A. **Carter alleges that Local 556 caused her to suffer an adverse action.**

Carter's allegations support her claim that Local 556 coerced and suppressed her speech and association rights under the U.S. Constitution and the RLA. The U.S. Constitution and the RLA prohibit retaliation against an employee for her protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Roscello v. Southwest Airlines*, 726 F.2d 217, 222 (5th Cir. 1984) (holding that the RLA prohibits retaliation for protected activity); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102 (3d Cir. 1968) (affirming union's joint liability with an employer based on employee's statutory protections under the RLA).

To prevail on her retaliation claim, Carter must show that Local 556 caused her to suffer an adverse action. *See, e.g.*, *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (finding that employees suffer adverse actions when defendants cause their "discharges, demotions, refusals to hire, refusals to promote, and reprimands"); *Roscello*, 726 F.2d at 222 (holding that retaliation "consists of a discharge or other adverse action").

Carter alleged that she engaged in protected speech—and precisely because of that protected speech—Local 556 caused her discharge, setting forth facts to show how Local 556 took steps to cause her termination. SAC ¶¶107, 55-68, 98-98, 106-108. Carter alleges that on January 21, 2017, Local 556 and President Stone participated in the "Women's March on Washington D.C.," advocating for various political causes, including pro-abortion policies and opposition to national right-to-work legislation. SAC ¶¶35-36, 39. After learning that Local 556—her exclusive bargaining representative—attended the Women's March using employees' forced fees and supported these causes, Carter sent Facebook messages to President Stone,

3

objecting to Local 556's policies and spending, all in the midst of an employee campaign to reorganize the union via a recall election. The RLA Section 2 (Third) and (Fourth) protect Carter's speech and association rights. *Cf. Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273-74 (1974); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191-92 (11th Cir. 1999); 45 U.S.C. § 152 (Third) and (Fourth); SAC ¶¶44-48, 38, 41. Carter alleges that Local 556 and President Stone complained to Southwest about Carter's communications, characterizing Carter's protected speech and activity as "bullying and harassment" Union Br. 2, 5;[3] SAC ¶¶68-69, Ex. D. Carter alleges that Local 556 caused her termination because she was a nonmember objector engaging in RLA-protected speech and activities. SAC ¶¶96-98, 106(a)-108, 101-111, 44-48, 80-83, 13, 41-43, 68-69, Ex. D; SAC ¶¶14-35.

Local 556 argues that Carter failed to plead facts showing how the Union's actions "had the effect of suppressing her rights." Union Br. 3. But Carter pled a myriad of facts showing that Local 556's actions coerced and suppressed her protected speech rights. *Id.*; SAC ¶¶79, 102, 103, 86. Discharge and the fear of discharge clearly prevent and chill employees' protected activity. *See Connick v. Myers*, 461 U.S. 138, 144-45 (1983). When Local 556, by and through President Stone, reported Carter to Southwest for alleged harassment, it knew that the company could terminate her; and, in fact, the company did terminate her. SAC ¶¶31, 27, 28, 72-75, 96-98, 106-108, 68, Ex. D. Thus, Local 556's actions caused Carter's discharge and "had the effect" of coercing and suppressing Carter's protected speech and association rights.

---

[3] Local 556's Brief in Support of its Second Motion to Dismiss, ECF No. 52, shall be cited to as "Union Br. __".

Carter alleges that Local 556 intended to cause her termination through its complaints, setting forth facts to show how protected speech and other activities were a substantial and motivating factor for Local 556's retaliation against Carter:

- The timing of Carter's termination in relation to her protected activity (SAC ¶¶44-48, 49-56, 68, 108).

- The disparate treatment of Carter in contrast with Local 556's own members (SAC ¶¶72-75, 28, 108).

- Local 556's history of retaliatory threats and other discriminatory conduct against Carter and other nonmember objectors (SAC ¶¶18, 19, 74, 75, 20-27, 108).

- The inconsistency between Local 556's approach to employee discipline depending on their speech and activities, including discipline under Southwest's social media policy and other company policies (SAC ¶¶31, 28, 72-75, 108).

Thus, Carter's allegations support a reasonable inference that President Stone's reporting to Southwest was motivated by Stone's desire to remove a vocal opponent of the union.

Local 556 is mistaken that only an employer can cause an adverse action. Union Br. 1-2, 3. Under the RLA Section 2 (Fourth), unions are "liable for their actions in procuring a discharge which violates the employee's statutory rights." *Brady*, 401 F.2d at 102. *See also James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (constitutional retaliation claims are cognizable against defendants that are "either personally involved in the deprivation or [when their] wrongful actions were causally connected to the deprivation").

The holding in *Brady* makes sense under familiar principles of the RLA and federal labor law. Although a union may not directly "employ" the employees that it represents, it enjoys "extraordinary" powers over those employees' terms and conditions of employment as the result of federal law empowering it to govern employees' relations with their employers as their exclusive bargaining representative. *See, e.g., N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 200 (1944); *Am. Commc'ns Ass'n v.*

5

*Douds*, 339 U.S. 382, 401 (1950) ("The loss of individual rights for the greater benefit of the group results in a tremendous increase in the power of the representative of the group—the union.").

Further, it is well-established under federal law that retaliation claims are cognizable against unions in the employment context. *See Dixon v. Int'l Bhd. of Police Officers,* 504 F.3d 73 (1st Cir. 2007) (finding, in a case arising under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a), that a union can effectively retaliate against an employee "in any context including *within* the workplace") (emphasis in original); *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 830–31 (8th Cir. 2002) (holding in a Title VII case that any adverse action is sufficient to establish a retaliation claim against a union, including but not limited to adverse employment actions); *Int'l Union of Operating Eng'rs, Local 406 v. N.L.R.B*, 701 F.2d 504, 508 (5th Cir. 1983) (finding that the National Labor Relations Act prohibits a union from causing an employer to discriminate against an employee in order to encourage or to discourage union membership).

Although Local 556 cites *Oscar Renda Contracting, Inc. v. City of Lubbock* for the sweeping proposition that retaliation claims can never be brought against unions, Local 556 stretches that case too far. Union Br. 8 & n.8 (citing *Oscar Renda*, 463 F.3d 378, 382 (5th Cir. 2006)). Local 556 cites the case to argue—rather absurdly—that because a retaliation claim was brought against an employer in *Oscar Renda*, that retaliation claims can *only* be brought against employers. 463 F.3d at 382. That case did not hold or even suggest that retaliation claims against unions are not cognizable. *Id*. Carter suffered an adverse employment action when Local 556 caused her termination; therefore, she alleged a cognizable legal claim.

> **B.  Carter's allegations support her claim that President Stone acted as an officer of Local 556 when she reported Carter's speech activities to Southwest.**

Carter's allegations support more than a reasonable inference that President Stone's efforts to silence Carter were official actions attributable to Local 556. Union Br. 3-4. To determine whether a person acts as an agent of the union, the test is "whether the putative agent's position and duties, and the context of the conduct, would create the reasonable belief that the individual was reflecting union policy and speaking and acting for the union." *Amalgamated Transit Union, Local Union No. 1433 (Veolia Transp. Servs., Inc.)*, 360 NLRB 261, 269 (2017); *see also Local 1814, Int'l Longshoremen's Ass'n v. N.L.R.B*, 735 F.2d 1384, 1397 (D.C. Cir. 1984) ("[W]here [union officials'] actions can be understood to further the union's interests, the union is responsible for the officials' unlawful acts."); *Urichuck v. Clark*, 689 F.2d 40 (3d Cir. 1982) (holding that unions may be held liable for the actions of their officers under common law theories of agency); *Mullett v. N.L.R.B.*, 571 F.2d 1292, 1294 (4th Cir. 1978) ("Responsibility of a union for the acts of its officers or members may be established by common law rules of agency. Express authorization or ratification is not required; authority may be implied or apparent.").

Carter alleges that she directed the messages criticizing President Stone and Local 556 to the "Audrey Stone Twu" page, not to a personal page of Ms. Stone. SAC ¶46. The messages were directed to President Stone, Local 556, and its Executive Board in their official capacity, not to Stone in some personal capacity. SAC ¶¶46-48. Carter was not messaging Stone as a co-worker about some personal gripe between the two, but about Local 556 activity in its capacity as employees' exclusive bargaining representative. *Id*.

Local 556 also argues that Stone's "position as Union President does not strip her right as an employee of Southwest to file complaints of bullying and harassment from a co-worker." Union Br. 5. Certainly Southwest employees who legitimately confront bullying and harassment can report their concerns to their employer. But President Stone is more than just an ordinary Southwest employee. As President of Local 556, Stone wields extraordinary influence in the collective bargaining unit. She negotiates with Southwest Airlines and influences employees' wages, benefits, and other terms and conditions of employment. SAC ¶¶10, 92-94.

President Stone acted as an agent of the Local 556 organization to silence and suppress a union opponent, not as an employee concerned with bullying and harassment. Carter's Complaint alleges that President Stone was not acting as an ordinary co-worker with a grievance. Rather, Carter's Complaint alleges that President Stone's reporting of Carter to Southwest for her social media activity was a pretext for getting Carter fired. SAC ¶¶108, 18, 19, 74, 75, 20-28, 56, 72-75, 68, 44-48, 101-111. Before Carter sent President Stone Facebook messages criticizing Local 556's support for pro-abortion groups and policies, President Stone implored employees not to turn each other in for social media activity, and she vigorously defended pro-union employees accused of violating the same social media policies. SAC ¶¶31, 27-28, 72-75.

Carter sets forth her allegations that President Stone's complaints were merely a pretext, and her true motive for reporting Carter to Southwest was based on discriminatory animus. Factual disputes must be resolved through discovery and at trial. At the motion to dismiss stage, it is sufficient that Carter adequately alleged facts supporting a reasonable inference that President Stone was acting in her official capacity as Local 556 President and retaliated against Carter with discriminatory animus.

**II.   Carter alleges that Local 556 violated its duty of fair representation by seeking and causing her termination arbitrarily, in bad faith, and based on its discrimination against her protected activities and nonmember objector status.**

Carter alleges sufficient facts to show that Local 556 breached its duty of fair representation. Union Br. 2, 6. Under the RLA, a union acting as the exclusive representative of a craft/class of employees owes a fiduciary duty of fair representation to all of the employees that it represents, members and nonmembers alike. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74-75 (1991); *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 202 (1944).

The duty of fair representation requires unions to represent all employees in the craft/class "without hostility or discrimination toward any." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). It is "akin to the duty owed by other fiduciaries to their beneficiaries," such as the "duty a trustee owes to trust beneficiaries," or the duty an "attorney" owes to a "client." *O'Neill*, 499 U.S. at 74. Like any other fiduciary, unions owe a duty of "complete loyalty" to "all whom it represents." *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). As such, the duty "guarantees employees the right to be represented without invidious treatment … in matters affecting their employment." *Int'l Union of Operating Eng'rs, Local 406*, 701 F.2d at 508 (quoting *Vaca*, 386 U.S. at 177–178; *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295, 300-01 (5th Cir. 1981) (holding that a union breaches its duty of fair representation by discrimination between members of a bargaining unit on the basis of the person's status as a nonmember of the union)); *see also Int'l Union of Operating Eng'rs, Local 406*, 701 F.2d at 508 (citing *Local 357, Int'l Bhd. of Teamsters v. N.L.R.B.*, 365 U.S. 667, 675 (1961)) ("In instances where . . . a union is alleged to have singled out one employee for disparate treatment, an inquiry into the union's motives is essential.").

9

Local 556's assertion that Carter failed to plead how the union breached the duty of fair representation owed to her is wrong. Union Br 4-5. As the Complaint alleges, Local 556 breached the duty of trust and loyalty it owed to Carter when:

> [T]hrough the actions of President Stone and/or other agents, it arbitrarily, discriminatorily, and in bad faith, complained to Southwest management of Carter's Facebook messages and posts, and sought to discipline Carter for her speech and other activity opposing the union, President Stone, and their political and ideological views, and for supporting the recall of the Local 556 Executive Board.

SAC ¶99. The Complaint also alleges that President Stone and Local 556 shielded pro-union employees from discipline for social media violations, and encouraged them not to report co-workers for their social media activity. SAC ¶¶31, 27-28, 72-75. Yet Local 556 and President Stone reversed course when Carter—a nonmember of the union who objected to paying for the organization's political, ideological, and nonbargaining spending, supported right to work principles, and opposed the union and its leadership—voiced her opposition to Local 556's support for pro-abortion groups and the Women's March. SAC ¶¶13, 16-25, 29, 32-34, 44-48, 35-36, 39. And Carter alleges that many of the thirteen supporters of the recall effort were subjected to termination of employment, suspension, repeated fact-findings, and/or other disciplinary measures in the twelve months prior to filing her original complaint, at the request of Local 556 members and officials. SAC ¶¶74-75. Despite her prior admonitions that employees should not report each other for social media violations, President Stone reported Carter, to silence and suppress a nonmember objector who supported removing the union's executive leadership. SAC ¶¶108, 56-68, 96-98, 106, 107.

Although Local 566 boasts that "it successfully negotiated with Southwest to reduce its discipline of Plaintiff from termination to a thirty "30" day suspension with a guaranteed return to work," this exceeds the scope of analysis in a motion to dismiss, interjecting facts and

allegations that are beyond the pleadings, and are not proper for consideration at this stage. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). *See also* Union Br. 5.

In any event, this extraneous pleading is irrelevant. The union's representation of Carter during grievance proceedings for termination is not the basis for her claim that Local 556 breached its duty of fair representation, which is apparent from the face of the Complaint. Union Br. 5. Rather, the heart of Carter's claim is that Local 556 caused her termination ***in the first place***. Local 556's arrangement of a Last Chance Agreement that is entirely one-sided in favor of Southwest and waives legal rights, does nothing to absolve the union from causing her termination. In sum, Carter pled sufficient facts to support her claim that Local 556 breached its duty of fair representation to Carter.

## CONCLUSION

For the foregoing reasons, Local 556's Motion to Dismiss should be denied in its entirety.

Dated: August 1, 2018                                   Respectfully submitted,


                                        s/ Jason E. Winford (*with permission*)
                                        David E. Watkins
                                        Texas Bar No. 20922000
                                        *dwatkins@jenkinswatkins.com*
                                        Jason E. Winford
                                        Texas Bar No. 00788693
                                        *jwinford@jenkinswatkins.com*
                                        JENKINS & WATKINS, P.C.
                                        4300 MacArthur Avenue, Suite 165
                                        Dallas, Texas 75209
                                        Tel: 214-378-6675
                                        Fax: 214-378-6680

                                        s/ Matthew B. Gilliam
                                        Mathew B. Gilliam (*admitted pro hac vice*)
                                        New York Bar No. 5005996
                                        *mbg@nrtw.org*

                                  Jeffrey D. Jennings (*admitted pro hac vice*)
                                  Virginia Bar No. 87667
                                  *jdj@nrtw.org*
                                  c/o National Right to Work Legal Defense Foundation, Inc.
                                  8001 Braddock Road, Suite 600
                                  Springfield, Virginia 22160
                                  Tel: 703-321-8510
                                  Fax: 703-321-9319

                                  *Attorneys for the Plaintiff*

**CERTIFICATE OF SERVICE**

      On the 1st day of August, 2018, I electronically submitted the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the electronic case files system ("ECF") of the Court, in compliance with this Court's Standing Order Designating Case for Enrollment in the Electronic Case Filing System "CM/ECF." Delivery of the notice of electronic filing that is automatically generated by ECF constitutes service under Fed. R. Civ. P. 5(b)(2)(D) on each party who is a registered user of ECF. Local Rule 5.1(d). I hereby certify that I have served all counsel electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

                                                                                          s/ Matthew B. Gilliam