UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | |
| TRANSPORT WORKERS UNION OF | ) | **3:17-cv-02278-B** |
| AMERICA LOCAL 556, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**

## I.   INTRODUCTION

At its essence, Carter's response to Southwest's motion articulates three central arguments. First, Carter contends that this Court has subject matter jurisdiction over her Railway Labor Act claims ("RLA") because she alleges an independent statutory violation (*i.e.*, interference with alleged speech rights under the RLA). Second, Carter insists that it is inappropriate for the Court to do what the Fifth Circuit permits – to deem the arbitrator's findings preclusive. Finally, Carter argues that her after-the-fact reference to her religious beliefs exempts her from discipline for distributing unsolicited aborted fetus images and other graphic materials to co-workers. Each of these arguments is unavailing.

Preliminarily, the Court should reject Carter's call for it to ignore Southwest policies in evaluating her arguments. Doing so would be to disregard the fact that RLA preemption turns not only on the four corners of the CBA, but also on related employment policies and practices.

Substantively, Carter makes general references to her allegedly protected RLA speech rights. However, she fails to identify any case concluding that communications like those at issue here are protected under the RLA. In fact, graphic communications like Carter's lose any protection they arguably otherwise had. With respect to preclusion, the Court should ignore Carter's call for it to ignore the arbitration award. The arbitration proceedings afforded Carter necessary procedural protections (*e.g.*, cross examination, attorney representation, etc.) and nevertheless resulted in a number of adverse findings that refute critical elements of Carter's claims. In such a circumstance, the Court should apply issue preclusion. Finally, contrary to Carter's suggestion, Title VII does not protect employees who insist on a religious accommodation only after violating company policies. Carter's after-the-fact reference to her religious beliefs did not exempt her from termination for distributing unwanted graphic images.

For the reasons Southwest set forth in its initial motion and as discussed herein, the Court should dismiss each of Plaintiff's claims with prejudice.

## II. ARGUMENT

### A. The Court Can Consider Southwest's Policies and the Arbitration Award

Carter objects to Southwest's submission of the workplace policies she references in her SAC. (*See* Dkt. No. 54, pp. 8-11). This objection is misplaced. RLA preemption turns not only on the four corners of the CBA, but also on "practices, procedures, implied authority, or codes of conduct that are part of the working relationship." *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996). And where a plaintiff's claims derive from or require interpretation of such policies or codes of conduct, RLA preemption applies. *See Knox v. Am. Airlines, Inc.*, 2016 WL 5794450, *1 (N.D. Tex. Oct. 3, 2016). Thus, the Court must consider Southwest's policies to evaluate the applicability of RLA preemption.

Carter also contends that the Court cannot consider the arbitration award in ruling on Southwest's motion. (*See* Dkt. No. 54, p. 10 ["Considering … materials as part of a [] 12(b)(6) motion on [] preclusion [] would be improper at this early stage."]). Carter is incorrect. Courts routinely consider arbitration awards in evaluating a Rule 12(b)(6) motion. *See Cox v. Perfect Bldg. Maint. Corp.*, 2017 WL 3049547, *3 (S.D.N.Y. July 18, 2017) ("[C]ourts have regularly taken judicial notice of arbitration awards and [CBAs] in considering a motion to dismiss"); *Stacks v. S.W. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1326 n. 3 (8th Cir.1994) (taking "judicial notice of an arbitration decision finding that [employee] had been dismissed for just cause").

Carter's self-serving failure to reference the award does not preclude the Court from considering it. *See Charles Schwab & Co., Inc. v. Retrophin, Inc.*, 2015 WL 5729498, *7 (S.D.N.Y. Sept. 30, 2015) (rejecting argument that because plaintiff "makes no mention of the …

arbitration in his pleadings … the Court may not consider the arbitration award"). Such a rule "if accepted … would prohibit the Court from ever determining the preclusive effect of an arbitration award on a motion to dismiss, so long as the plaintiff purposely ignores mention of the arbitration in his or her pleadings." *Id.* "That is plainly not the law." *Id.*

This Court can and should consider all of the policies and the arbitration award Southwest submitted in connection with its motion to dismiss. Doing so is necessary to evaluate the Court's subject matter jurisdiction and the preclusive effect of the arbitration award.

**B.     Carter Has Not Alleged a Violation of an Independent Statutory Right**

Carter argues that the RLA does not preempt her claims because she is asserting "RLA-protected speech and association rights." (Dkt. No. 54, pp. 13, 15). But Carter does not discuss any case law recognizing the broad speech and association rights that she claims the RLA protects. Rather, Carter makes general references to cases interpreting the scope of protected activity under the NLRA. (*See* Dkt. No. 54, pp. 13, 18).

RLA protections are substantially narrower than those under the NLRA. *See Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 252 (5th Cir. 1991) ("We find no indication that the RLA seeks to preserve employees' rights to act in concert for mutual aid or protection."). Generally, the RLA only protects the right to select, organize, and join a union. *See Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 789 F.2d 139, 141 (2d Cir. 1986); *Stewart v. Spirit Airlines, Inc.*, 503 Fed. Appx. 814, 818 (11th Cir. 2013) (RLA protects right to "'join, organize, or assist in organizing [a] labor organization," or to exercise the right to "organize and bargain collectively.'"). Additionally, courts hesitate to involve themselves in post-certification disputes absent extreme anti-union animus that the RLA dispute resolution process cannot remedy. *See, e.g.*, *Int'l Bhd. of Teamsters v. United Parcel Serv. Co.*, 447 F.3d 491, 502 (6th Cir. 2006).

The only allegation in the SAC that could relate to Carter's right to "join or organize" a union is her 2013 resignation of membership. (*See* SAC ¶¶ 13, 105). However, Carter does not allege that Southwest took any adverse action based on her resignation until her termination four years later. Thus, this allegation cannot be the predicate for Carter's RLA claims against Southwest. *See, e.g.*, *Johnson v. McDonald*, 623 Fed. Appx. 701, 704 (5th Cir. 2015).

Carter's remaining allegations concern her dissatisfaction with the conduct of union officers going back to 2012; her personal distaste for the assumed political views of union members who attended the Women's March; and her insistence on distributing unwanted photographs of female genitalia headdresses and graphic videos of aborted fetuses to fellow employees. Carter does not discuss any case where a court found that the RLA confers post-certification protection on such activities. That is likely because such case law does not exist, as these are internal union matters to which the RLA scantly relates. *See Renneisen v. Am. Airlines*, 990 F.2d 918, 924 (7th Cir. 1993) (the RLA was "not designed to give minority groups … a cause of action against their employer when they cannot persuade their own union to take actions they deem to be in the union's best interest"); *Held v. Am. Airlines, Inc.*, 2007 WL 433107, *1, *4 (N.D. Ill. Jan. 31, 2007) ("off-duty, off-premises speech" which was "made in the context of an internal union political debate" not protected by the RLA).

In any event, citing *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87 (3d Cir. 1968), Carter suggests judicial intervention is necessary because the dispute resolution procedure is insufficient to vindicate her alleged RLA rights. In *Brady*, the court permitted plaintiff's claims against his union for violation of 45 U.S.C. § 152, Eleventh regarding the improper collection of dues to proceed in court. However, it did so not based on the inherent unsuitability of the arbitration forum to resolve disputes where the employee is at odds with his or her union.

Rather, it did so because "the [RLA] does not authorize adjustment boards to hear an employee's dispute against his union." *Brady*, 401 F.2d at 93; *see also Verville v. Int'l Ass'n of Machinists and Aerospace Workers*, 520 F.2d 615 (6th Cir. 1975) ("An airline System Board … does not have jurisdiction of a dispute between a union and a union member."). But that does not apply to Carter's claims against Southwest. Indeed, Carter has already utilized the opportunity to participate in a two-day arbitration contesting her separation. *See Held*, 2007 WL 433107, *6 (RLA claims failed where "plaintiff … ha[d] a remedy in the form of the System Board and opted to pursue resolution of his grievance in this manner.").

Carter also cites *Roscello v. Sw. Airlines Co.*, 726 F.2d 217 (5th Cir. 1984) in support of her "independent statutory right" theory. However, *Roscello* does not do the heavy lifting Carter's claims demand. In *Roscello*, the court exercised jurisdiction over a claim predicated on the employer's alleged retaliation in response to the plaintiff's union organizing efforts. Critically, the plaintiff in *Roscello* "had no collective bargaining representative at the time" he was organizing on behalf of the Teamsters union (*i.e.*, his organizing efforts were *pre-certification*). *See id.* at 219. While the employer recognized a non-Teamsters' union by the date of termination, the plaintiff was not subject to a CBA and thus could not avail himself of the RLA-mandated grievance process. *Id.* at 219 n.1. This is critical, as courts are much more inclined to exercise jurisdiction pre-contract than they are with respect to claims like Carter's, which arose *after* a CBA was ratified. *See Pinnacle Airlines, Inc. v. Nat'l Mediation Bd.*, 2003 WL 23281961, *3 (D.D.C. Nov. 5, 2003) ("[J]udicial intervention is more often appropriate before a [CBA] is in place[.]."). Finally, the *Roscello* court noted that "[t]he parties d[id] not question whether the plaintiff ha[d] a private right of action for wrongful discharge under the [RLA]." *Roscello*, 726 F.2d at 220 n.2. Thus, the court made no broad pronouncements

regarding alleged independent free speech rights under the RLA. Rather, it simply "assume[d] without deciding that plaintiff [] properly stated a claim." *Id.* No such facts are present here.[1]

Carter's claims all arise post-certification, and after Carter and her attorneys unsuccessfully arbitrated her claim that Southwest terminated her without just cause. Moreover, resolving Carter's claims turns on interpretation and application of multiple provisions of the CBA and related policies.[2] Accordingly, the Court lacks jurisdiction over Carter's claims. Additionally, because Carter has not adequately alleged a violation of any RLA-protected right, Carter cannot state a RLA cause of action.

### C.  The Arbitrator's Preclusive Findings Refute Essential Elements of Carter's Claims

Carter contends that the Court should ignore the arbitrator's findings because "arbitral proceedings *cannot* provide an adequate substitute to a judicial proceeding" in the context of federal claims. (*See* dkt. no. 54, p. 27). But that is a negation of the principle articulated by the Fifth Circuit – *i.e.*, arbitral proceedings can be preclusive "even in litigation involving statutory and constitutional rights[.]" *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014).

Carter cites a number of dated U.S. Supreme Court decisions that she contends prohibit or substantially limit the application issue preclusion to an arbitration award. (*See* Dkt. No 54, p. 27). However, the Fifth Circuit expressly rejected Carter's interpretation of these cases, holding that they "counsel against only claim preclusion, *not issue preclusion*." *Grimes*, 746 F.3d at 187 (emphasis added). Carter also makes various arguments citing pre-*Grimes* authorities suggesting that issue preclusion cannot apply in the context of Title VII claims. But as courts have

---

[1] The fact that Carter is merely battling with rather than seeking to replace her union distinguishes this case from *Fennessy v. Sw. Airlines*, 91 F. 3d 1359 (9th Cir. 1996) (alleging termination "in retaliation for his having engaged in activities to replace ROPA with a Teamsters representative").

[2] For example, evaluating whether Southwest had a non-discriminatory basis for terminating Carter's employment requires interpretation of the various employment policies governing Carter's misconduct. *See Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (discrimination claims preempted because "[employer] will [] rely on the CBA as its legitimate, non-discriminatory reason for [Plaintiff's] treatment. When [Plaintiff] [] attempts to show that [Defendant's] stated reason is pretextual, the CBA would have to be interpreted[.]").

recognized, under *Grimes*, a court can give preclusive effect to the findings of a labor arbitrator in a subsequent Title VII case. *See Gautier v. Celanese*, 143 F. Supp. 3d 429, 433 (W.D. Va. 2015). Indeed, so long as the arbitration provides basic procedural protections (*e.g.*, opportunity to present witnesses and evidence, neutral arbitrator, representation by counsel, etc.) "the determination of issues in [the] arbitration proceeding ***should generally be treated as conclusive in subsequent proceedings***[.]'" *Grimes*, 746 F.3d at 188 (emphasis added).[3]

The key allegation suggesting that Southwest had an improper motive in terminating Carter's employment is that the Company treated her less favorably than other employees. (SAC ¶ 125,). However, the arbitrator conclusively rejected Carter's allegation of disparate treatment. (*See* Dkt. No. 49, pp. 13, 16-17). The arbitrator also concluded that Southwest "does not have a policy or practice of disciplining, or not disciplining employees based upon their view of TWU Local 556 generally, or of Audrey Stone in particular." (Dkt. No.54, p. 13). Thus, Carter cannot plausibly assert that Southwest terminated her based on the various union-related activities she alleges in the SAC. With these facts conclusively resolved and Carter's contrary assertions set aside, she cannot plausibly allege that Southwest violated the RLA or Title VII.

### D.     Carter Fails to Allege Sufficient Facts to State a Religious Discrimination Claim

Carter contends that Southwest's lack of knowledge regarding her alleged need for an accommodation is immaterial to her Title VII claims under *EEOC v. Abercrombie & Fitch Stores, Inc.,* 135 S.Ct. 2028 (2015). Fifth Circuit authority demonstrates the contrary.

In *Nobach v. Woodland Village Nursing Ctr., Inc.*, 799 F.3d 374 (5th Cir. 2015), the employer terminated a nurse, who was a Jehovah's Witness, because she "refused to pray Rosary

---

[3] Carter, citing *Grimes*, notes that inadequate fact finding procedures can render the application of issue preclusion inappropriate. However, in *Grimes*, a number of facts called into the question the adequacy of the arbitration proceedings, such as: (1) the hearing was conducted by the employer; (2) the employee was not represented by an attorney; and (3) the decision was made by an employee of the company rather than an impartial fact finder. *See Grimes*, 746 F.3d at 188-89. None of these factors were present in Carter's arbitration.

with a patient." The employer did not dispute that it terminated the plaintiff for not praying with the resident. The plaintiff's supervisor also acknowledged that "she did not care if performing the Rosary was against [the plaintiff's] religion … because refusing to perform the Rosary constituted insubordination." *Id.* at 378. The employee brought a Title VII claim, alleging that the employer "unlawfully discharg[ed] her for exercising her religious beliefs." *Id.* at 375.

The court, applying *Abercrombie*, rejected the plaintiff's discrimination claim because she did not advise her employer that "praying the Rosary was against her religion," and the employer did not know that the plaintiff's refusal to pray "was motivated by a religious belief." *Id.* at 378. It also rejected the plaintiff's failure to accommodate claim because she "fail[ed] to advise [the employer] of her religious belief and the conflict with her job duties and [the employer's] lack of knowledge or suspicion of any such conflict." *Id.* at 379 n.8.

In reaching this conclusion, the *Nobach* court cited with approval *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012 (4th Cir. 1996) and *Johnson v. Angelica Uniform Group, Inc.*, 762 F.2d 671 (8th Cir.1985). *See Nobach*, 799 F. 3d at 378 n.8. Critically, these courts recognized that "nothing in Title VII [] requires employers to give lesser punishments to employees who claim, ***after they violate company rules*** … , that their religion caused them to transgress the rules." *Chalmers*, 101 F.3d at 1020 (emphasis added); *see also Johnson*, 762 F.2d at 673 (claim failed where plaintiff made reference to need for time off for religious purpose because she did not inform supervisor of need until "after the absences have begun").[4]

Carter does not allege that *prior* to violating various policies, she informed Southwest she needed a religious exemption from any rule that would limit her right to distribute graphic abortion content to co-workers. Instead, Carter only raised her religious beliefs *after* distributing

---

[4] *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 935-36 (7th Cir. 2003) ("Title VII imposes a duty on the … employee to give fair warning of the [] practices that will interfere with his religion" prior to violating policy).

the graphic material and the commencement of disciplinary proceedings, when she knew her job was in jeopardy. (*See* SAC ¶¶ 57, 59). Given Carter's failure to request an accommodation prior to sending graphic images to a co-worker, the law did not require Southwest to jettison its normal disciplinary practices based on Carter's after-the-fact invocation of her religious beliefs. *See Nobach*, 799 F. 3d at 378; *Chalmers*, 101 F.3d at 1020.[5]

Separately, as Southwest noted in its motion, courts have repeatedly held that Title VII does not "require an employer to accommodate an employee's desire to impose his religious beliefs upon his co-workers." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 607 (9th Cir. 2004); *see also Chalmers*, 101 F.3d at 1021; *Stolley v. Lockheed Martin Aeronautics Co.*, 228 Fed. Appx. 379, 382 (5th Cir. 2007) ("Title VII does not require … religious accommodations that infringe on the rights of fellow employees.").[6] Carter seeks to avoid the import of these decisions by contending that the court cannot consider them at the motion to dismiss stage because they relate to an affirmative defense. *See Davis v. Fort Bend Cty.*, 765 F.3d 480, 487 (5th Cir. 2014) ("Undue hardship" in the context of a Title VII religious discrimination claim is an affirmative defense.). However, Courts have repeatedly held that "an affirmative defense … may be raised by a motion to dismiss for failure to state a claim … pursuant to Fed. R. Civ.P. 12(b)(6)." *Neel v. Rehberg*, 577 F.2d 262, 264 (5th Cir. 1978). Thus, the Court can determine, as it should, that Southwest could do precisely what Carter alleges: prohibit the distribution of unwanted graphic abortion videos and images to co-workers, even if based on a legitimate religious belief. *See Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1342 (8th Cir.1995) (employer permitted to restrict display of two inch button with image of fetus).

---

[5] Carter also suggests that this law is inapplicable because Audrey Stone – a fellow flight attendant – holds a Union position. (*See* Dkt. No. 54, pp. 11-12). However, Carter cites no Title VII authorities embracing this distinction.
[6] *Averett v. Honda of Am. Mfg., Inc.*, 2010 WL 522826, *9 (S.D. Ohio Feb. 9, 2010) (not entitled to accommodation for "express[ing] [] belief that [] coworkers were sinful and evil persons whom God would … punish.").

### E.  Plaintiff's First and Fifth Amendment Claims Are Not Cognizable Against Southwest

In support of her First and Fifth Amendment claims, Carter cites numerous cases discussing her Constitutional right to pay reduced dues as a non-member objector. From this basic proposition, Carter leaps forward to claim that Southwest is a government actor that interfered with her right to resign from the Union. (*See* SAC ¶ 105). But Carter resigned her membership in Local 556 in 2013 without incident and remained a non-member until her termination. (*Id.* at ¶ 13).

While an employee can bring a claim against a union based on its charging of improper expenses or related deficiencies, it remains the case that the requirement to pay agency fees does not – standing alone – violate an employee's rights under the First and Fifth Amendments. *See Ry. Employees v. Hanson*, 351 U.S. 225, 238 (1956). Finally, while Carter appears to object to certain Union political activities, she fails to articulate a basis for liability against Southwest based on those activities. Carter fails to identify a recognized legal theory for the proposition she puts forward; namely, that Carter – a non-union member – has unlimited First Amendment rights vis-à-vis Southwest simply because it is a party to a CBA. Thus, the Court should dismiss Carter's Constitutional Claims against Southwest.

### III.  CONCLUSION

Based on the arbitrator's binding factual determinations, Carter cannot state a viable cause of action against Southwest. However, even if the Court declines to treat the arbitrator's conclusions as binding, the RLA preempts Carter's claims, thereby divesting this Court of jurisdiction. Finally, Carter has failed to plead adequate facts to support her causes of action. Thus, the Court should dismiss all of Carter's claims with prejudice.

REPLY IN SUPPORT OF SOUTHWEST'S MOTION TO DISMISS SAC                                        Page 11
64784763.4
64784763.5


### E.  Plaintiff's First and Fifth Amendment Claims Are Not Cognizable Against Southwest

In support of her First and Fifth Amendment claims, Carter cites numerous cases discussing her Constitutional right to pay reduced dues as a non-member objector. From this basic proposition, Carter leaps forward to claim that Southwest is a government actor that interfered with her right to resign from the Union. (*See* SAC ¶ 105). But Carter resigned her membership in Local 556 in 2013 without incident and remained a non-member until her termination. (*Id.* at ¶ 13).

While an employee can bring a claim against a union based on its charging of improper expenses or related deficiencies, it remains the case that the requirement to pay agency fees does not – standing alone – violate an employee's rights under the First and Fifth Amendments. *See Ry. Employees v. Hanson*, 351 U.S. 225, 238 (1956). Finally, while Carter appears to object to certain Union political activities, she fails to articulate a basis for liability against Southwest based on those activities. Carter fails to identify a recognized legal theory for the proposition she puts forward; namely, that Carter – a non-union member – has unlimited First Amendment rights vis-à-vis Southwest simply because it is a party to a CBA. Thus, the Court should dismiss Carter's Constitutional Claims against Southwest.

### III.  CONCLUSION

Based on the arbitrator's binding factual determinations, Carter cannot state a viable cause of action against Southwest. However, even if the Court declines to treat the arbitrator's conclusions as binding, the RLA preempts Carter's claims, thereby divesting this Court of jurisdiction. Finally, Carter has failed to plead adequate facts to support her causes of action. Thus, the Court should dismiss all of Carter's claims with prejudice.

Dated:  August 13, 2018          Respectfully submitted,

By: */s/ Thomas E. Reddin*
Thomas E. Reddin
Texas Bar No. 1660950
TReddin@Polsinelli.com
2950 N. Harwood Street, Suite 2100
Dallas, Texas  75201
Telephone:  214.397.0030
Facsimile:  214.397.0033

Michele Haydel Gehrke *Admitted Pro Hac Vice*
California State Bar No. 215647
mgehrke@polsinelli.com
Three Embarcadero, Suite 2400
San Francisco, CA 94111
Telephone:  415-248.2100
Facsimile:  415.248.2101

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon counsel for Plaintiff via the U.S. District Court, Northern District's CM/ECF system on August 13, 2018.


By:  /s/ *Thomas E. Reddin*
      Thomas E. Reddin