IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | 3:17-cv-02278-B |
| | § | |
| TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, | § § | JURY DEMANDED |
| | § | |
| Defendant. | § § § | |

**DEFENDANT LOCAL 556'S REPLY BRIEF IN
SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Defendant TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556 ("TWU 556", "Local 556" or "Defendant") files this, its Reply, in support of its Motion to Dismiss Plaintiff's First Amended Complaint because it lacks factual allegations necessary to support an actionable claim, as required by Rule 8, F.R.C.P. By way of their Joint Defense Agreement, Local 556 also incorporates the arguments and briefing of Southwest Airlines ("SWA").

**I. INTRODUCTION**

The procedural posture of this case now includes three attempts by Plaintiff to cure its pleading infirmities. First, Plaintiff amended its Original Complaint—less than three weeks after filing it—on its own volition before any challenge to its sufficiency had been asserted. More recently, Plaintiff's Second Amended Complaint—and subject of this Reply—took a third shot at saving this lawsuit by way just under twenty (20)—paired down from the just under thirty (30)— during the of briefing. Despite the low bar of "notice pleading" set forth in Rule 8 and having pled only three (3) quite common causes of action with well established governing law behind

them, Plaintiff's Response spends page after page conflating causes of action, misstating facts and misapplying law. Plaintiff's briefing "Hail Mary" falls short, not because of a deficiency in persuasive legal advocacy, but because no brief can create facts or change law. With regard to Plaintiff's claims challenged here—that Local 556 somehow caused SWA to unlawfully retaliate against her and that it failed to fulfill its duty of fair representation in the face of SWA's discharge—Carter's claims continue to fall flat, as will be discussed further below. Doctrinally, they should fail because no legal avenue exists allowing for Plaintiff's application of Retaliation law against a Union for discharge by the employer, or the implicit suggestion that Plaintiff gets to decide the scope and nature of what the words "Duty of Fair Representation."

### a. THE CONTEXTUAL FACTS OF PLAINTIFF'S DISCHARGE UNDERMINE HER LEGAL THEORIES

The factual essence of Carter's lawsuit asks this Court to believe that her Union: 1) actively and continuously conspired with SWA to get her fired in retaliation for her exercise of alleged "protected speech," by having the Local's President pretend to be bothered by Plaintiff's undisputed harassment; then 2) agreed to fight to undo the effect of that conspiracy by getting her job back for her; 3) did get her job back; and, 4) knew, all the while, that she would inexplicably reject the deal and the effect of its "retaliation"—that the Union itself had defeated—would once again take effect. This unique factual backdrop provides helpful context when considering the parties' opposing legal positions. This factual backdrop is the underlying basis for Plaintiff's claims of Retaliation and breach of Duty of Fair Representation against the Union.

Fundamentally, Carter's Response completely ignores that even if such Retaliation law did exist against the Union, one simply cannot say and do whatever they please in the workplace and demand that they be free from any and all repercussions. They have created a scenario in

which either an employee, President Stone, must abdicate her rights to be free from workplace harassment or the Union is liable when the harasser is punished by their employer.

Also contextually significant, is the undisputed fact that despite the Company's finding that the Plaintiff's expression was clearly aimed at harassing a co-worker—Audrey Stone, former President of Local 556—Plaintiff's Local Union fought to get her discharge reduced to a suspension, which she rejected.

**b. EVEN IF PLAINTIFF'S LEGAL THEORIES WERE SUPPORTED BY LAW OR STATUTE, THEY WOULDN'T BE VIABLE HERE AS PLAINTIFF'S OFFENSIVE AND HARASSING EMAILS ARE NOT "PROTECTED FREE SPEECH"**

Despite the Defendant's efforts on her behalf, it is clear that even otherwise protected "speech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing."[1] In addition, an employee's protected activity "may give way when 'special circumstances' override the employees' [] interests[.]"[2] Special circumstances may include, *inter alia*, situations in which the protected activity is "vulgar or obscene[,] [] may 'exacerbate employee dissension' or situations in which restriction … 'is necessary to maintain decorum and discipline among employees.'"[3] "Where an employee engages in indefensible or abusive misconduct during otherwise protected activity, the employee forfeits the [NLRA's] protection."[4]

Here, Plaintiff repeatedly sent a co-worker, who also happened to be the Union President, material that in Plaintiff's own words is "GRAFIC (sic)" in nature. Ms. Carter's actions were reported to her employer, who then made the decision to terminate her. Plaintiff's contention that both the Union and the Company retaliated against her because she was engaging in alleged "protected speech" (by repeatedly sending unsolicited messages containing photos and video of

---

[1] *Held v. Am. Airlines, Inc.*, 2007 WL 433107, *7 (N.D. Ill. Jan. 31, 2007) (*citing TWA*, 489 U.S. at 440).
[2] *Leiser Constr., LLC*, 349 NLRB 413, 415 (2007).
[3] *Id.*
[4] *DaimlerChrysler Corp.*, 344 NLRB 1324, 1329 (2005).

aborted fetuses to a coworker.)[5] and, is thereby completely insulated from liability is nothing short of absurd. Indeed, had the Company taken the Plaintiff's position that her speech was unconditionally protected, it would be directly exposing itself to liability by knowingly disregarding Plaintiff's co-workers' federally protected rights to be free from a hostile work environment created by other co-workers. Even if one assumes the communications generally concerned protected topics and the RLA protects certain types of speech post-certification (it does not), the communications lost protection due to their graphic and harassing nature and Carter's inflammatory commentary (*e.g.*, referring to Stone as a murderer).

The NLRB has repeatedly withdrawn statutory protection from images and commentary that are far less inflammatory than what Carter sent to Stone.[6] For example, in *Leiser Constr., LLC*[7], the Board held that the employer could prohibit the wearing of union insignia that showed a person urinating on a rat, characterizing it as "unquestionably vulgar and obscene."[8] Similarly, in *Honda of Am. Mfg., Inc.*[9], the Board held that use of phrases "out of the closet" and "bone us" in a union newsletter was "so offensive as to render the otherwise protected newsletters unprotected."[10]

These cases demonstrate that even if one has a legal right to send unsolicited private messages to one's co-workers discussing abortion, doing so by sending knowingly graphic images and videos, and referring to the recipient as a murderer, is not protected. As Carter's five-year history of participation in public debates demonstrates, Carter was and is generally free to comment on abortion and internal Union matters without Southwest's or Local 556's

---

[5] *See* FAC ¶¶ 54, 89-91.
[6] *See generally Media Gen. Ops., Inc. v. NLRB*, 394 F.3d 207, 209, 212 (4th Cir. 2005) (Employee forfeited protections by use of terms "bastard," "son of a bitch," and calling supervisor a "racist.").
[7] *Leiser Constr., LLC*[7], 349 NLRB 413 (2007).
[8] *Id.* at 415.
[9] *Honda of Am. Mfg., Inc.*[9], 334 NLRB 746 (2001).
[10] *Id.* at 748-49.

interference.[11] However, Carter does not have a legal right to create a harassing environment by distributing graphic images and hurling inflammatory slurs to undesiring recipients.[12]

## II. ARGUMENTS AND AUTHORITY IN REPLY TO ISSUES RAISED IN PLAINTIFF'S REPONSE

### A. PLAINTIFF'S ASSERTION THAT COURTS HAVE RECOGNIZED THE VIABILITY OF FACTUALLY ANALOGOUS RETALIATION CLAIMS AGAINST A UNION IS PATENTLY FALSE.

In its Motion to Dismiss, Defendant 556 argues that because "Plaintiff had failed to plead facts to support that any official action taken by the Union had the effect of suppressing her protected speech rights," her retaliation claims should be dismissed.[13] Defendant's Motion further states that, "insofar as Plaintiff's Amended Complaint attempts to allege that Ms. Stone's complaints of harassment against Plaintiff were "pre-textual," such allegations fail to support that such action is in anyway legally attributable to Local 556.  Such allegations of pretext are without legal consequence when the alleged pre-textual conduct was not undertaken by the party responsible for the "adverse employment action" taken against the Plaintiff."[14]

Defendant 556 anticipated, correctly, that Plaintiff would respond by using the lack of precision in her pleading to falsely analogize the instant matter with the type of fact pattern found in the cases cited in the "Retaliation" section of Plaintiff's Response brief. In an attempt to circumvent these inescapable legal consequences, Plaintiff's Response misrepresents the out-of-circuit case law it cites—specifically and most egregiously, through its reliance on the Third Circuit's 1968 affirming opinion in *Brady v. Trans World Airlines, Inc.*[15]

---

[11] *See Sacred Heart Med. Ctr.*, 347 NLRB 531, 534 (2006) (tolerance of other similar protected activities militates against a finding that any particular restriction is unlawful).
[12] *See generally Sw. Bell Tel. Co.*, 200 NLRB 667 (1972) ("In view of the controversial nature of the language used and its admitted susceptibility to derisive and profane construction, Respondent could legitimately ban the use of the provocative slogan").
[13] *See* Doc 24 at p.3.
[14] *Id* at p.4.
[15] *Brady v. Trans World Airlines, Inc.*[15], 401 F.2d 87, 102 (3d Cir. 1968). *See* Doc. 32 at pg. 4.

1. **Plaintiff's Reliance on *Brady v. Trans World Airlines, Inc.* is Misleading as it is not Factually Analogous to this Case**

Plaintiff's reliance on *Brady* is misplaced, and most importantly, Plaintiff's Response incorrectly asserts that the opinion in *Brady* "has already rejected" Defendant's argument that "only Carter's employer can be held liable for her retaliatory termination." In the context of this case, Plaintiff's characterization of the *Brady* holding is incorrect for two categorically distinct reasons: 1) The facts in *Brady* involved proof that the Union was responsible for "causing a discharge in violation of section 2," a provision prohibiting discharges that are meant to coerce employees into associating with the Union; and, 2) additional facts demonstrating that, separate and apart from its efforts to cause the Plaintiff's discharge by the employer, the Union applied its own internal policies and procedures (imposing a reinstatement fee on a Union member who had recently complained about a raise in dues) as a means to retaliate against the employee engaging in protected speech.

The second of these two factual categories has already been held as potentially giving rise to an actionable retaliation claim against a Union under the First Amendment and the LMRDA. Plaintiff Carter has neither pleaded this type of Retaliation nor any factual allegations that the Union took official action to directly retaliate against her. The fact that the Union used its exclusive power to impose membership reinstatement fees as a vehicle to unlawfully retaliate against protected speech was essential to the *Brady* Court's finding because such conduct, in addition to likely being independently actionable, lent strong credence to the Plaintiff's claim that his Union had conspired with the company to cause his discharge.

Returning now, to the first category of fact (in the order discussed above) that was essential to the *Brady* holding, but ignored completely by the Plaintiff's Response—the Plaintiff has not alleged any facts to support her "conclusory assertion" (as used in *Iqbal*) that the Union

"caused" her discharge by the Company in order to coerce employees' association with the Union. Even assuming, *arguendo*, that Plaintiff's retaliation claims can extend to the Union, the employee "must show by a preponderance of evidence that [] 'protected conduct was a 'substantial' or 'motivating' factor prompting the discharge.'"[16] To make this demonstration, the employee must show (a) she was engaged in protected activity; (b) the employer was aware of that activity; (c) defendant harbored animus toward the protected activity (*i.e.*, extreme antiunion bias or animus); and (d) the animus ***was a causal factor*** in plaintiff's termination.[17]

Here, Carter does not allege facts to suggest a causal nexus between protected activity and her termination. In particular, Carter alleges that she first engaged in anti-Union protected speech as early as 2012 – more than ***five years before her termination***, which she claims was retaliation for her long history of opposing the Union. But such a gap in time refutes Carter's claim of retaliation. In fact, it shows Southwest's decision to terminate her had nothing to do with her years of anti-Union speech, but rather her targeted, inappropriate harassment of Stone. Otherwise, Southwest would have terminated Carter in 2012 (or at some time prior to 2017).

Lacking solid doctrinal footing, Plaintiff's most recent briefing goes to great lengths to either: 1) prove the existence of legal concepts not in dispute; or 2) misleadingly analogize unique factual scenarios wholly inapplicable to the case at bar.[18]

Courts have repeatedly dismissed such retaliation claims, concluding that the lapse of time refutes the requisite causal nexus.[19] Such delays between the protected activity and adverse

---

[16] *Amarsingh v. Jetblue Airways Corp.*, 409 Fed. Appx. 459, 460-61 (2d Cir. 2011).
[17] *Id.* at 461; *Beckett v. Atlas Air, Inc.*, 968 F. Supp. 814, 817 (E.D.N.Y. 1997).
[18] *See Dixon v. Int'l Bhd. of Police Officers,* 504 F.3d 73 (1st Cir. 2007), *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 830–31 (8th Cir. 2002), and *Int'l Union of Operating Eng'rs, Local 406 v. N.L.R.B*, 701 F.2d 504, 508 (5th Cir. 1983)
[19] *See Johnson v. McDonald*, 623 Fed. Appx. 701, 704 (5th Cir. 2015) (dismissing Title VII retaliation claim where "the nearly two-year gap between the[protected activity] and alleged retaliation [] refutes any causal link between the two events."); *Chhim v. Univ. of Texas*, 2016 WL 154142, *5 (W.D. Tex. Jan. 11, 2016) (dismissing Title VII

employment action refutes any causal link between the two events.[20] Accordingly, even if the Court concludes that Plaintiff's retaliation claims extend to the Union, the Court should dismiss her retaliation claims for failure to state that factual allegation. Simply put, Local 556 cannot and did not take any adverse employment action against Carter, nor did it *cause* any such action to be taken.

### B. Plaintiff Seemingly Fails To Understand What is Required of the Union Under the Duty of Fair Representation

Plaintiff's Response seems to demonstrate a fundamental misunderstanding regarding the evidence to be considered in the context of a "DFR" claim. Carter's defense of this claim in her Response is predicated upon two flawed presumptions regarding an employee who holds a union position (i.e. Union President Stone): 1) Ms. Stone is precluded from complaining to her employer about co-worker harassment, and any such complaint necessarily breach the Local's duty of fair representation to its members; and, 2) That any such action taken by Ms. Stone is the same, in terms of legal effect, as official conduct of Local 556. Plaintiff has not cited any law or statute asserting an employee must renounce their federally protected right to be free from harassment in the workplace in order to hold a union position. Neither Southwest nor the Union is aware of said proposition. Nor has she cited any authority supporting the idea that any action taken by a union official has the force and effect of officially sanctioned action on the part of the Union—like, for instance, when the Union decided to assign Ms. Carter an advocate to challenge

---

retaliation claim because adverse action "occurred almost two years after he alleges he filed his first complaint … and three months after the alleged [second] complaint.

[20] *Phillips v. United Parcel Serv.*, 2011 WL 2680725, *8 (N.D. Tex. June 21, 2011) (dismissing Title VII retaliation claim where "[t]he timing between the two actions and the protected activity (between nine months and two years)" did not establish a requisite causal connection).

her discharge. No part of that undeniably official Union action has been advanced by the Plaintiff as falling below the Union's Duty of Fair Representation. As such, Plaintiff's DFR claim is completely without any supporting factual allegations t sufficient to "raise a right to relief above the speculative level."[21] .

## IV. CONCLUSION

Wherefore, for the above and foregoing reasons, under the requirements of *Iqbal* and *Twombly*, Plaintiffs have failed to plead sufficient facts to withstand Defendant's Motion to Dismiss.

     /s/ Edward B. Cloutman, III_____
Edward B. Cloutman, IV
State Bar No. 24074045
Email: edwardcloutman@gmail.com
Adam S. Greenfield
State Bar No. 24075494
Email: agreenfield@candglegal.com

**LAW OFFICE OF CLOUTMAN
& GREENFIELD, P.L.L.C.**

3301 Elm Street
Dallas, TX 75226-1637
Phone 214.939.9222
Fascimile 214.939.9229

OF COUNSEL:

Edward B. Cloutman, III
State Bar No. 04411000
Email: ecloutman@lawoffices.email
**Cloutman & Cloutman, L.L.P.**
3301 Elm Street
Dallas, Texas  75226-1637
214.939.9222
214.939.9229 Fascimile

---

[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007).

COUNSEL FOR DEFENDANT

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon counsel for Plaintiff via the U.S. District Court, Northern District's CM/ECF system on August 14, 2018:

> Mr. Jason E. Winford (via e-mail: jwinford@jenkinswatkins.com)
> Mr. David E. Watkins (via e-mail: dwatkins@jenkinswatkins.com)
> Jenkins & Watkins, P.C.
> 4300 MacArthur Avenue, Suite 165
> Dallas, Texas  75209
>
> Mr. Matthew B. Gilliam (via e-mail: mbg@nrtw.org)
> Mr. Jeffrey D. Jennings (via e-mail: jdj@nrtw.org)
> National Right to Work Legal Defense Foundation, Inc.
> 8001 Braddock Road, Suite 600
> Springfield, Virginia  22160

        /s/ Adam S. Greenfield_____
       Edward B. Cloutman, IV
       Edward B. Cloutman, III
       Adam S. Greenfield