# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:17-CV-2278-S |
| | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA LOCAL 556 and SOUTHWEST | § | |
| AIRLINES CO., | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charlene Carter ("Plaintiff") is a former flight attendant for Southwest Airlines Company ("Southwest" or the "Company"). Plaintiff filed suit against Southwest and her union, Transport Workers Union of America Local 556 ("Local 556" or the "Union"), following her termination by Southwest for violations of the Company's policies related to social media, harassment, and bullying. Plaintiff alleges that the Union retaliated against her, and Southwest terminated her employment, for speech and activity protected by the Railway Labor Act ("RLA") and the United States Constitution. Plaintiff also alleges that Local 556 breached its duty of fair representation by causing Southwest to terminate her employment. Finally, Plaintiff alleges that both Southwest and Local 556 discriminated against her for her religious beliefs and practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

Southwest moves to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) [ECF No. 48]. Local 556 also moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6) [ECF No. 51]. For the reasons that follow, the Court grants in part and denies in part the Motions.

# I. BACKGROUND

## A. Factual History

Per Special Order 3-318, this case was transferred from the docket of Judge Jane J. Boyle to the docket of this Court on March 8, 2018.

Plaintiff worked as a Southwest flight attendant from September 1996 until March 14, 2017, when Southwest terminated her employment following its investigation of a complaint against Plaintiff filed by Local 556 President Audrey Stone ("Stone"). Second Am. Compl. ¶ 11. While at Southwest, Plaintiff was represented exclusively by Local 556 for purposes of collective bargaining. *Id.* ¶ 12. However, Plaintiff resigned from membership in Local 556 on or about September 29, 2013, and exercised her RLA and First Amendment rights to object to paying the Union's compelled fees because of its political, ideological, and other non-bargaining spending.[1] *Id.* ¶ 13. From September 29, 2013, until her termination, Plaintiff remained a nonmember objector. *Id.*

Since 2012, Plaintiff has been involved in a dispute over the leadership and Executive Board of Local 556. *Id.* ¶¶ 14-18. Beginning in 2013, Plaintiff made numerous posts in a Facebook group open to all Southwest flight attendants expressing her disagreement with Union leadership and policies. *Id.* ¶¶ 19, 22-25. The content of the posts included allegations of corruption and information regarding the process for "opting out" of the Union. *Id.* In early 2015, Plaintiff began sending private Facebook messages to Stone's Union president Facebook page—"Audrey Stone Twu"—criticizing Stone and Local 556. *Id.* ¶ 29.

---

[1] Airline unions cannot compel nonmember employees to contribute dues toward a political cause. *See Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps.*, 466 U.S. 435, 447-48 (1984). Nonmembers may object to their dues being used for anything other than those expenses directly related to bargaining and administrative costs. *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 774-75 (1961).

In January 2017, Plaintiff learned that some Local 556 members, including Stone, participated in the January 21, 2017, "Women's March on Washington, D.C." *Id.* ¶ 35. Local 556 participants posted pictures from the Women's March on social media, and the Union newsletter featured the event. *Id.* ¶ 36. The newsletter described how Local 556 brought together "more than two dozen Southwest Airlines flight attendants from around the country," and how Union members lobbied and conducted meetings with elected representatives in Washington, D.C. "in support of women's rights" and on "the dangers of national right-to-work legislation." *Id.* Plaintiff alleges that Southwest knew of Local 556 members' participation in the Women's March and helped accommodate Local 556 members' attendance at the March. *Id.* ¶¶ 37-38.

Planned Parenthood was a sponsor of the Women's March. *Id.* ¶ 39. Plaintiff states that she "is a Christian who believes that abortion is the taking of a human life contrary to the teachings of the Bible and the will of God." *Id.* ¶ 40. Plaintiff states that her "sincere religious beliefs require her to share with others that abortion is the taking of a human life." *Id.* Plaintiff opposes abortion and Planned Parenthood. *Id.* Plaintiff expressed her opposition to abortion and to Local 556's participation in the Women's March on Facebook, both on her personal page and in a Facebook group called "556 Members for Total Recall." *Id.* ¶¶ 41, 45. She also posted petitions and messages requesting signatures and donations to fund a recall campaign demanding that the Union conduct new elections for officers of the Union's Executive Board, including the office held by Stone. *Id.* ¶¶ 32, 44.

On February 14, 2017, Plaintiff sent five private Facebook messages to Stone's "Audrey Stone Twu" account. *Id.* ¶ 46. First, at 11:22 a.m., she sent a message containing a video of an aborted fetus. *Id.* Plaintiff wrote,

> This is what you supported during your Paid Leave with others at the Women's MARCH in DC....You truly are Despicable in so many ways...by the way the

RECALL is going to Happen and you are limited in the days you will be living off of all the [Southwest Airlines Flight Attendants]..cant wait to see you back on line. [sic]

*Id.* About an hour later, at 12:33 p.m., she sent another video of an aborted fetus and a message stating, "TWU-AFL-CIO and 556 are supporting this Murder . . . [sic]." *Id.* At 1:00 p.m., Plaintiff then sent a third Facebook message containing a photo of women wearing hats depicting female genitalia. *Id.* Plaintiff's message stated,

Did you all dress up like this …Wonder how this will be coded in the LM2 Financials…cause I know we paid for this along with your Despicable Party you hosted for signing the Contract….The RECALL [of the Local 556 Executive Board] is going to Happen we are even getting more signatures due to other [flight attendants] finding out what you guys do with our MONEY!!! Can't wait for you to have to be just a regular flight attendant again and not stealing from our DUES for things like this! [sic].

*Id.* Later that day, Plaintiff sent a fourth message with a link to an article discussing how one of the leaders of the Women's March was a convicted terrorist. Plaintiff wrote,

Did you know this….Hmmmm seems a little counter productive don't you think….you are nothing but a SHEEP in Wolves Clothing or you are just so uneducated that you have not clue who or what you were marching for! Either way you should not be using our DUES to have Marched in this despicable show of TRASH! [sic]

*Id.* Finally, Plaintiff sent a fifth message with an article written by the niece of Martin Luther King, Jr., "explain[ing] that Planned Parenthood hid its pro-abortion agenda from her uncle and used his status as a civil rights leader to bolster its credibility." *Id.*

Three days later, on February 17, 2017, Plaintiff received an email from Stone on behalf of Local 556 urging her to contact her legislators to stop a National Right to Work bill in Congress. *Id.* ¶ 48. Plaintiff responded by email, stating:

First off I do not want your Propaganda coming to my inbox…that being said I Support the RIGHT TO WORK Organization 100% ABOVE what I have to pay you all in DUES! YOU and TWU-AFL-CIO do not Speak For Me or over half of

our work group…We have a RECALL right now that we want adhered to with over the 50+ 1% and growing. WE WANT YOU all GONE!!!!!

....

P.S. Just sent The RIGHT TO WORK more money to fight this.....YOU all DISGUST ME!!!!! OH and by the WAY I and so many other of our FAs VOTED FOR TRUMP....so shove that in your Propaganda MACHINE! [sic]

*Id.*

On February 23, 2017, Southwest Manager Meggan Jones left Plaintiff a voicemail asking to talk to Plaintiff as soon as possible. *Id.* ¶ 49. The next day, Southwest Inflight Base Manager Ed Schneider left Plaintiff a voicemail stating that he wanted to set up a mandatory meeting to discuss the Facebook posts that Southwest had seen. *Id.* ¶ 50. A "fact-finding" meeting was held on March 7, 2017. *Id.* ¶ 56. At the fact-finding meeting, Plaintiff alleges that Southwest questioned her on why she made pro-life posts to her Facebook page and why she sent the February 14, 2017, messages to Stone's "Audrey Stone Twu" account. *Id.* Plaintiff states that she explained to Southwest that she is a Christian and pro-life, and that she sent the messages "because Local 556 members, led by President Stone, participated in the Women's March in support of Planned Parenthood and abortion." *Id.* ¶¶ 57, 59. "[Plaintiff] stated that by [participating in the March], President Stone and the Local 556 members purported to be representing all of the Southwest flight attendants as supporting abortion rights." *Id.* ¶ 59. Plaintiff states that she explained to Southwest "that the views of pro-life flight attendants, like herself, were not represented by the [U]nion at the March." *Id.* Plaintiff alleges that she "was attempting to open a dialogue with President Stone by sending her the messages and pro-life videos." *Id.* ¶ 61.

Plaintiff alleges that during the fact-finding meeting, Southwest told her that Southwest employees "cannot make a political statement while at work and cannot post ideological views on a personal Facebook page with a connection to the workplace." *Id.* ¶ 64. According to Plaintiff,

one Southwest representative told her that Stone felt "harassed by the images and the statement sent in the messages." *Id.* ¶ 67.

On March 14, 2017, one week after the fact-finding meeting, Southwest sent Plaintiff a letter informing her that it was terminating her employment effective March 16, 2017. *Id.* ¶ 68. "Southwest's letter also stated that when [Plaintiff] posted the videos and pictures on Facebook, she was identifiable as a Southwest Airlines Employee and represented the [C]ompany in a manner that is disparaging to Southwest Flight Attendants as well as to all Southwest Employees." *Id.* Southwest informed Plaintiff that the Company was terminating her because her conduct violated the Southwest Airlines Mission Statement and Company policies and rules, including but not limited to, the Workplace Bullying and Hazing Policy and the Social Media Policy. *Id.* ¶ 69. Southwest also stated that Plaintiff's conduct "could also be a violation" of Southwest's Policy Concerning Harassment, Sexual Harassment, Discrimination, and Retaliation. *Id.*

Plaintiff alleges that she was terminated by Southwest despite the fact that she had never received any prior discipline during her 20-year career at Southwest. *Id.* ¶ 70. According to Plaintiff, she was terminated without any opportunity to improve or correct her allegedly unsatisfactory behavior. *Id.* ¶ 71.

Although not mentioned in the Second Amended Complaint, Plaintiff filed a grievance in response to her termination by Southwest. Southwest's Mot. to Dismiss Br. ("SWA Br.") 5; SWA App. 4-22, Opinion and Award of the Arbitrator.[2] Local 556 represented Plaintiff in the grievance process and negotiated an offer of reinstatement from Southwest. SWA Br. 5-6. Plaintiff rejected the offer and instead proceeded to arbitration. *Id.* at 6. Plaintiff retained her own attorneys to represent her in the arbitration. *Id.* The parties participated in a two-day arbitration before William

---

[2] The Court takes judicial notice of the Opinion and Award of the Arbitrator only for its existence, not for the correctness of any facts found. *See* FED. R. EVID. 201.

Lemons on December 7 and 8, 2017. *Id.* The arbitrator issued an award in favor of Southwest on April 26, 2018. *Id.* at 1.

### B. Procedural History

Plaintiff brought this suit against Southwest and Local 556 on August 25, 2017. On September 14, 2017, Plaintiff filed the Amended Complaint. On October 10, 2017, Southwest filed its Motion to Dismiss the Amended Complaint. On October 24, 2017, Local 556 filed its Motion to Dismiss.

On April 30, 2018, the parties appeared before the Court for a status conference hearing after the case was transferred to the docket of this Court. At the status conference hearing, the Court denied the pending motions to dismiss without prejudice in light of the recent arbitration decision. Plaintiff filed the Second Amended Complaint on June 25, 2018. Southwest filed its pending Motion to Dismiss on July 9, 2018, and Local 556 filed its pending Motion on July 11, 2018. The parties appeared before the Court for oral argument on the Motions to Dismiss on December 14, 2018.

In the Second Amended Complaint, Plaintiff asserts five causes of action. In Count I, Plaintiff alleges Southwest illegally terminated her for engaging in speech protected by the RLA in violation of 45 U.S.C. § 152, Third and Fourth. In Count II, Plaintiff alleges Southwest maintained and enforced overbroad and vague policies that chill and restrict employees in the exercise of protected rights in violation of 45 U.S.C. § 152, Third and Fourth. In Count III, Plaintiff alleges Local 556 breached its duty of fair representation. In Count IV, Plaintiff alleges Southwest and Local 556 retaliated against her for the exercise of her protected rights under the RLA and U.S. Constitution. In Count V, Plaintiff alleges Southwest and Local 556 violated Title VII by discriminating against her because of her religious beliefs and practices.

## II. ANALYSIS

### A. Southwest's Motion to Dismiss

Southwest moves to dismiss all claims asserted against it by Plaintiff. Southwest seeks dismissal pursuant to Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction because Plaintiff's claims are "minor disputes" under the RLA. In the alternative to its jurisdictional challenge, Southwest also moves to dismiss all claims pursuant to Rule 12(b)(6) for failure to state a claim.

### i. Subject Matter Jurisdiction

Southwest moves to dismiss all claims asserted against it for lack of subject matter jurisdiction. According to Southwest, Plaintiff's claims are "minor disputes" subject to the RLA's dispute resolution process. Minor disputes are exclusively within the jurisdiction of RLA adjustment boards. *Carmona v. Southwest Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (citing *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322 (1972)).

Congress's intention in passing the RLA "was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987)); *see also* 45 U.S.C. § 151a. To accomplish this goal, the RLA establishes a mandatory arbitral mechanism for the "prompt and orderly settlement" of two classes of disputes. *Hawaiian Airlines*, 512 U.S. at 252 (quoting 45 U.S.C. § 151a). The first class, those concerning "rates of pay, rules or working conditions," are deemed "major" disputes. *Id.* Major disputes relate to "the formation of collective [bargaining] agreements or efforts to secure them." *Id.* (quoting *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989)). The second class of disputes, known as "minor" disputes, "gro[w] out of grievances or out of the interpretation

or application of agreements covering rates of pay, rules, or working conditions." *Id.* at 252-53 (quoting 45 U.S.C. § 151a). Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement [("CBA")] in a particular fact situation." *Id.* at 253 (quoting *Trainmen v. Chi. River & Ind. R.R. Co.*, 353 U.S. 30, 33 (1957)). The "distinguishing feature" of a minor dispute "is that the dispute may be conclusively resolved by interpreting the existing [CBA]." *Carmona*, 536 F.3d at 348 (quoting *Consol. Rail Corp.*, 491 U.S at 302). Saying a claim can be "conclusively resolved" by interpreting a CBA "is another way of saying that the dispute does not involve rights that exist independent of the CBA." *Id.* (quoting *Hawaiian Airlines*, 512 U.S. at 265).

"If the grievances are minor disputes, they 'must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions.'" *CareFlite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 612 F.3d 314, 318 (5th Cir. 2010) (quoting *Hawaiian Airlines*, 512 U.S. at 252). "The assertion of any right that is not created by a CBA is therefore not subject to binding arbitration under the statute." *Id.* at 320-21. "That is, claims that are independent of the CBA are not 'minor disputes,' and the RLA's mandatory arbitration mechanism does not preclude or preempt their being brought in federal court." *CareFlite v. Office & Prof'l Emps. Int'l Union, AFL-CIO*, 766 F. Supp. 2d 773, 777 (N.D. Tex. 2011).

According to Southwest, Plaintiff predicates her RLA-based claims on the allegations that (1) Southwest terminated her in retaliation for protected speech; and (2) Southwest maintained and applied overbroad workplace policies. SWA Br. 12. Southwest further contends that Plaintiff's Constitution-based retaliation and Title VII claims appear to be based on the same or an overlapping factual predicate. *Id.* at 12-13. Thus, Southwest argues that Plaintiff's claims are

9

minor disputes because they "rest on and require interpretation of the CBA (which contains a provision requiring just cause for any termination), directly-related work rules, and the bargaining history of the parties." *Id.* at 13.

The Court disagrees. Plaintiff's claims do not "rest on and require interpretation of the CBA" as Southwest suggests. Plaintiff is not challenging rates of pay, rules, or working conditions. *See Hawaiian Airlines*, 512 U.S. at 252. Plaintiff also is not alleging a breach of the CBA. *See CareFlite*, 766 F. Supp. 2d at 777. Rather, Plaintiff alleges that Southwest terminated her employment for speech and activity protected by the RLA and the Constitution, and that Southwest discriminated against her for her religious beliefs in violation of Title VII. *See* Second Am. Compl. ¶¶ 76-90, 101-31. The Court finds that these allegations do not bring the meaning of any CBA provisions into dispute. While it may be necessary to reference the provisions of the CBA, the case at hand cannot be resolved conclusively by the Court interpreting a disputed provision. Because provisions of the CBA are relevant to, but not dispositive of, the resolution of Plaintiff's claims, her claims do not constitute a minor dispute under the RLA. *See Carmona*, 536 F.3d at 349; *see also Bhd. of R.R. Trainmen v. Howard*, 343 U.S. 768, 774 (1952) ("The claims here cannot be resolved by interpretation of a bargaining agreement so as to give jurisdiction to the Adjustment Board[.]")

In addition, the fact that Plaintiff's claims allege constitutional, RLA, and Title VII violations, as opposed to violations of the CBA itself, further bolsters the argument that Plaintiff's claims do not require CBA interpretation. *See Carmona*, 536 F.3d at 350-51; *see also Hawaiian Airlines*, 512 U.S. at 265 ("Obviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA."). Courts have consistently held that causes of action asserting violations

of rights separate and independent of a CBA do not require interpretation of a CBA and are, therefore, not minor disputes. *See, e.g.*, *Hawaiian Airlines*, 512 U.S. at 266 (holding that plaintiff's state-law wrongful-discharge claims are independent of CBA); *Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 818 (11th Cir. 2013) ("[T]he RLA's alternative dispute resolution scheme does not preempt causes of action to enforce rights that are independent of the [CBA], including statutory rights."); *Carmona*, 536 F.3d at 351 (holding that plaintiff's Title VII and ADA claims do not require interpretation of CBA, only reference to it); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 219-20 n.2 (5th Cir. 1984) ("[T]here seems to be no doubt that this claim, which rests not upon a [CBA], but upon a charge that Southwest violated the statute, was within the jurisdiction of the district court rather than an adjustment board."); *CareFlite*, 766 F. Supp. 2d at 779 (holding that plaintiff's retaliation and discrimination claim under the RLA "does not depend on interpretation of the CBA, it is 'independent' of the CBA and is not precluded by the RLA's mandatory arbitration mechanism—even if the CBA will, at some point, have to be consulted"). Plaintiff's claims assert rights that emanate from sources outside the agreement, not contractual rights grounded in the CBA.

The Court finds that because Plaintiff's claims of constitutional, RLA, and Title VII violations cannot be conclusively resolved by interpreting the existing CBA, they do not constitute minor disputes precluded by the RLA. Therefore, the Court denies Southwest's 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction.

### ii. Failure to State a Claim

### (1) Issue Preclusion

Southwest argues that the Court should give preclusive effect to the issues resolved in arbitration. According to Southwest, "[T]he arbitrator's findings refute [Plaintiff's] alleged

circumstantial evidence of an improper motive by Southwest (disparate treatment, improper motive, misapplication of policy, progressive discipline). The arbitrator's findings also undercut the factual basis of [Plaintiff's] claims[.]" SWA Br. 10. Southwest contends that "the arbitrator has resolved the essential factual predicates of [Plaintiff's] claims," and therefore moves for dismissal pursuant to Rule 12(b)(6). *Id.*

"As a general matter, arbitral proceedings can have a preclusive effect even in litigation involving federal statutory and constitutional rights, and the decision to apply it is within the discretion of the district court." *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014). Collateral estoppel may apply in federal-court litigation to facts found in arbitral proceedings as long as the Court considers the "federal interests warranting protection." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 223 (1985)). The Court has "broad discretion" to decide whether to apply the doctrine, "at least when the arbitral pleadings state issues clearly, and the arbitrators set out and explain their findings in a detailed written opinion." *Id.* (quoting *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991)). Additionally, "[a] district court in exercising its discretion must carefully consider whether procedural differences between arbitration and the district court proceeding might prejudice the party challenging the use of offensive collateral estoppel." *Id.* If the procedural differences "might be likely to cause a different result," then collateral estoppel is inappropriate. *Id.* (quoting *Am. Barge*, 946 F.2d at 1138). The arbitrators should also be "experienced and disinterested individuals." *Id.*

In determining whether to exercise its discretion in applying issue preclusion, the Court must consider: (1) whether the "findings are within the panel's authority and expertise" and (2) whether the "arbitration procedures 'adequately protected the rights of the parties.'" *Id.* (quoting *Greenblatt v. Drexel Burnham Lambert, Inc.*, 763 F.2d 1352, 1361 (11th Cir. 1985)). As to the

second prong, "[w]hen an arbitration proceeding affords basic elements of adjudicatory procedure, such as the opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should be generally treated as conclusive in subsequent proceedings[.]" *Id.* (quoting *Greenblatt*, 763 F.2d at 1360).

To determine if issue preclusion is proper in this case, the Court would need to consider matters outside the scope of the pleadings. But in ruling on a Rule 12(b)(6) motion, the Court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the "[C]ourt may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). In the case at hand, Southwest included a copy of the Opinion and Award of the Arbitrator as Exhibit B to its appendix in support of its Motion to Dismiss. *See* Southwest App. 4-22, Opinion and Award of the Arbitrator. But as noted above, the Second Amended Complaint makes no reference to the arbitration proceedings or award.

Given that the Second Amended Complaint does not make mention of the Opinion and Award of the Arbitrator, the Court declines to consider the documents attached as exhibits to Southwest's motion. The Court also declines to *sua sponte* convert Southwest's Motion to Dismiss under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56."); *see also* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2018).

Moreover, the Court would need to consider more than just the Opinion and Award of the Arbitrator on its face to determine if issue preclusion should apply. In deciding whether to exercise its discretion to apply the doctrine, the Court should consider the experience of the arbitrator, procedural differences in the proceedings, whether the arbitration proceedings adequately protected the rights of the parties, and whether the findings were within the arbitrator's expertise and authority. *See Grimes*, 746 F.3d at 188. These considerations are outside the scope of the pleadings, and therefore inappropriate for the Court's review at the motion to dismiss stage. Therefore, the Court denies without prejudice Southwest's 12(b)(6) Motion to Dismiss based on issue preclusion.

### *(2) Violations of the RLA (Counts I and II)*

Plaintiff alleges that Southwest violated the RLA, Section 2, Third and Fourth, in two ways. First, Plaintiff contends that by firing her for her February 14, 2017, Facebook messages and related posts, Southwest violated her rights under Section 2, Third and Fourth, of the RLA to vigorously exercise "uninhibited, robust, and wide-open" free speech related to flight attendants' efforts to reorganize Local 556, to collectively bargain with Southwest, and to oppose the Union's leadership and spending. Second Am. Compl. ¶ 81 (quoting *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 273 (1974)). Second, Plaintiff alleges that Southwest's Workplace Bullying and Hazing Policy, its Social Media Policy, its Policy Concerning Harassment, Discrimination, and Retaliation, and its Mission Statement, "were all overbroad in the manner in which they were maintained by the [C]ompany and enforced against

[Plaintiff], restricting [Plaintiff's] exercise of her rights under the RLA to engage in protected speech and activities in opposition to [the Union]." *Id.* ¶ 88.

Section 2, Third, of the RLA provides, in relevant part, that representatives "shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives." 45 U.S.C. § 152, Third. Section 2, Fourth, of the RLA provides, in relevant part, that

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization[.]

*Id.* § 152, Fourth.

Southwest moves to dismiss Plaintiff's RLA claims, arguing that Plaintiff has failed to plead the anti-union animus and protected activity necessary to support her RLA claims.

Since the enactment of Section 2, Third and Fourth, as part of the 1934 amendments to the RLA, the Supreme Court has "viewed them as addressing primarily the precertification rights and freedoms of unorganized employees." *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants ("TWA")*, 489 U.S. 426, 440 (1989). "Quite plainly, the RLA protects the employees' right to establish a union." *Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 252 (5th Cir. 1991).

"The explanation for the precertification focus of the 1934 amendments is clear. The RLA provides an exhaustively detailed procedural framework 'to facilitate the voluntary settlement of major disputes.'" *TWA*, 489 U.S. at 441 (quoting *Bhd. of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 378 (1969)). The RLA contemplates dispute resolution through private

mechanisms. *Id.* "The effectiveness of these private dispute resolution procedures depends on the . . . assurance that neither party will be able to enlist the courts to further its own partisan ends." *Id.* Thus, the Supreme Court has "understood judicial intervention in RLA procedures to be limited to those cases where 'but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act.'" *Id.* (quoting *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)).

Neither party has directed the Court to Fifth Circuit precedent regarding when judicial intervention by the district court is warranted in post-certification RLA disputes.[3] In the absence of binding precedent, the Court turns to persuasive precedent from other circuits. Other circuit courts have permitted judicial intervention in post-certification RLA cases in only limited circumstances. *Spirit Airlines*, 503 F. App'x at 819. One circumstance includes "a fundamental attack on the collective bargaining process" or a "direct attempt to destroy a union." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 103 (1st Cir. 2005) (internal quotation marks omitted)); *see also Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 841 (7th Cir. 1994) ("In situations such as ours, known as 'post-certification' controversies, Section 2, Fourth has been interpreted as providing protection where the plaintiff can show that the employer's actions strike a fundamental blow to union or employer activity and the collective bargaining process itself." (internal citation and quotation marks omitted)). Another post-certification circumstance involves cases where the employer had anti-union animus and explicitly penalized an employee because of the employee's union activities. *Spirit Airlines*, 503

---

[3] While not directly on point, the Fifth Circuit has provided guidance on the limited circumstances when judicial intervention in a "minor" dispute under the RLA is appropriate. *Ass'n of Prof'l Flight Attendants v. Am. Airlines, Inc.*, 843 F.2d 209 (5th Cir. 1988). "Federal judicial intervention in minor disputes is limited to circumstances where the employer's conduct has been motivated by an anti-union animus, where there is discrimination or coercion against the representative, or where acts of intimidation cannot be remedied by administrative means." *Id.* at 211 (internal citation and quotation marks omitted). "These circumstances present situations where the essential framework for bargaining between management and the union has broken down." *Id.*

F. App'x at 819 (citing *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 234 (1st Cir. 1996); *Bd. of Locomotive Eng'rs v. Kan. City S. Ry. Co.*, 26 F.3d 787, 795 (8th Cir. 1994)); *see also Int'l Bhd. of Teamsters, AFL-CIO, Teamsters Local Union No. 2727 v. United Parcel Serv. Co.*, 447 F.3d 491, 503 (6th Cir. 2006) ("Absent more concrete allegations of anti-union animus, the union cannot show that [defendant's] conduct has been sufficiently coercive to trigger any 'extremely limited' jurisdiction under § 2, Third[.]"); *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 280 F.3d 901, 905 (9th Cir. 2002) ("Other circuits have also recognized that judicial intervention in post-certification RLA claims should ordinarily be limited to situations in which an employer's conduct has been motivated by anti-union animus or where circumstances exist that significantly undermine the functioning of the union, such as an attempt to interfere with an employee's choice of a collective bargaining representative or an act of intimidation that cannot be remedied by administrative means."); *Tello v. Soo Line R.R. Co.*, 772 F.2d 458, 462 (8th Cir. 1985) ("[Plaintiff] did not raise a cognizable claim under 45 U.S.C. § 152 (Third) because he failed to present adequate evidence that [defendant's] actions have been motivated by anti-union animus or that [defendant's] actions were an attempt to interfere with its employees' choice of their collective bargaining representative.").

Southwest moves to dismiss Plaintiff's RLA claims for failing to plead the anti-union animus and protected activity necessary to support her claims. According to Southwest, "[Plaintiff's] allegations have little, if anything, to do with the anti-union animus or threats to the collective bargaining process required to state a[n] RLA claim." SWA Br. 16-17.

The Court agrees. Plaintiff's allegations fail to establish either the anti-union animus or a fundamental attack on the collective bargaining process on the part of Southwest necessary to bring a post-certification dispute within the jurisdiction of the district court. Therefore, the Court finds

that Plaintiff has failed to state a statutory cause of action under 45 U.S.C. § 152, Third and Fourth of the RLA.

In reviewing a motion to dismiss, courts must determine whether the pleadings contain "sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the Court can draw "the reasonable inference that the defendant is liable for the misconduct alleged" from the pleaded facts. *Id.* The Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (internal quotation marks and citations omitted).

The Court finds that Plaintiff has failed to plausibly allege either anti-union animus or a fundamental attack on the collective bargaining process on the part of Southwest. At most, Plaintiff has alleged that Southwest intervened in an internal Union dispute, responded to an employee's concern about graphic and possibly harassing messages from a co-worker, and terminated an employee for violating various policies. These allegations, without more, do not establish "more than a sheer possibility that [Southwest] has acted" due to anti-union animus or in an attempt to destroy the Union. *Iqbal*, 556 U.S. at 678. "RLA Section 2 was not designed to give minority groups within a union a cause of action against their employer when they cannot persuade their own union to take actions they deem to be in the union's best interest." *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 923 (7th Cir. 1993).

Most significantly, the Court finds that Plaintiff cannot establish that Southwest's conduct rose to the level of leaving her "no remedy to enforce" her statutory rights under the RLA. *TWA*, 489 U.S. at 441 (quoting *Switchmen's Union*, 320 U.S. at 300). Even as a nonmember objector,

Plaintiff had access to, and in fact utilized, the contractual dispute resolution procedure under the CBA to address her grievances in arbitration. *See* SWA App. 4-22, Opinion and Award of the Arbitrator. "It appears that no federal court has permitted an employee to pursue a claim under §§ 2 Third and Fourth after the employee has submitted to arbitration under the [CBA]." *Held v. Am. Airlines, Inc.*, No. 06 C 4240, 2007 WL 433107, at *6 (N.D. Ill. Jan. 31, 2007).

Because Plaintiff had a remedy to enforce her rights under the RLA and because Plaintiff failed to plead sufficiently the anti-union animus necessary to support her claims, the Court finds that judicial intervention is unwarranted in Plaintiff's post-certification RLA claims. Even if Plaintiff were given the opportunity to replead, she cannot change the fact that she had access to, and in fact utilized, the contractual dispute resolution procedure under the CBA. Therefore, the Court finds that any further amendment of Plaintiff's RLA claims would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court grants Southwest's Rule 12(b)(6) Motion to Dismiss as to Counts I and II, and dismisses with prejudice Plaintiff's RLA claims.

### *(3) Retaliation Claims (Count IV)*

In Count IV, Plaintiff alleges that Southwest retaliated against her for the exercise of her rights under the First and Fifth Amendments to the Constitution and under the RLA. Second Am. Compl. ¶¶ 105-06. To establish a prima facie case of retaliation, Plaintiff must show, *inter alia*, she engaged in "protected activity [that] was a but-for cause of the alleged adverse action by the employer." *Stewart v. Int'l Ass'n of Machinists & Aerospace Workers*, 643 F. App'x 454, 457 (5th Cir. 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)); *see also Martin v. Local 556, Transp. Workers of Am.*, 708 F. App'x 171, 175 (5th Cir. 2017) ("To

make a claim for . . . statutory retaliation, a plaintiff must show, among other things, that she suffered an 'adverse action.'" (quoting *Roscello*, 726 F.2d at 222)).

According to Plaintiff,

[Plaintiff] exercised her rights under the First and Fifth Amendments to the U.S. Constitution and under the RLA to resign from membership in Local 556 and to object to the forced payment of political and other nonchargeable union expenses. [Plaintiff] engaged in protected speech and activity in opposing, challenging, and advocating against Local 556, President Stone, and the [U]nion's activities and expenditures. [Plaintiff] opposed Local 556, President Stone, and their political and ideological views, and supported the recall of the Local 556 Executive Board.

Second Am. Compl. ¶ 105. Plaintiff alleges that Southwest retaliated against her for exercising her protected rights by terminating her employment. *Id.* ¶ 106.

### a. Protected Rights under the RLA

Southwest moves to dismiss Plaintiff's RLA-based retaliation claim pursuant to Rule 12(b)(6) for failing to allege "facts to suggest a causal nexus between protected activity and her termination." SWA Br. 18. Southwest argues, "[Plaintiff] alleges that she began engaging in anti-Union protected speech as early as 2012—more than five years before her alleged retaliatory termination. Such a gap in time refutes [Plaintiff's] claim of retaliation[.]" *Id.*

Plaintiff does admit that she has been engaged in opposition to the Union since September 2013. *See* Second Am. Compl. ¶ 20. However, Plaintiff alleges that she was ultimately terminated during a recall campaign of the Executive Board of Local 556, which Plaintiff supported, and that she was terminated after expressing her opposition to the political leadership of the Union and the Union's expenditures. *See id.* ¶¶ 34, 41, 44-46, 48, 80. Plaintiff also alleges that "Southwest has subjected approximately thirteen supporters of the recall effort to termination of employment, suspension, repeated fact-findings, and/or other disciplinary measures in the last twelve months, many times at the request of Local 556 members and officials." *Id.* ¶¶ 74-75. In contrast to recall

supporters, Plaintiff alleges that other flight attendants were not terminated by Southwest or ultimately were allowed to keep their jobs despite complaints filed against them involving social media posts that were allegedly threatening or harassing. *See id.* ¶¶ 72-73.

Viewing the well-pleaded factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations are sufficient to establish "more than a sheer possibility" that Southwest was motivated by Plaintiff's RLA-protected activities in terminating her employment. *Iqbal*, 556 U.S. at 678. Therefore, the Court denies Southwest's 12(b)(6) Motion to Dismiss on this basis.

Southwest also moves to dismiss Plaintiff's retaliation claim pursuant to Rule 12(b)(6), arguing "that even otherwise protected 'speech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing.'" SWA Br. 19 (quoting *Held*, 2007 WL 433107, at *7). Southwest admits in its briefing that there is a "scarcity of RLA jurisprudence on this issue," and invites the Court to refer to decisions by the National Labor Relations Board as a helpful analogy. *See id.* at 19 n.8. The Supreme Court has observed that "carefully drawn analogies from the federal common labor law developed under the [National Labor Relations Act] may be helpful in deciding cases under the RLA." *Johnson*, 944 F.2d at 251 (quoting *TWA*, 489 U.S. at 433). Yet, the Supreme Court "has also cautioned against transplanting NLRA precedent into the railway labor arena in a wholesale fashion." *Id.* (citing *Jacksonville Terminal Co.*, 394 U.S. at 383).

Without binding caselaw on point, the Court declines Southwest's invitation to extend the existing caselaw in this manner, and denies Southwest's 12(b)(6) Motion to Dismiss on this ground.

### b. Protected Rights under the Constitution

Southwest moves to dismiss Plaintiff's retaliation claim based on constitutional violations, arguing that the First and Fifth Amendments only operate to protect individuals against government action. SWA Br. 21. Southwest is a publicly-traded company. *Id.*

The First Amendment prohibits governmental infringement on the right of free speech. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 444 (5th Cir. 1999) ("It is well established that a *state* may not discharge, discipline, or otherwise retaliate against a *public* employee for exercising his First Amendment right to free speech" (emphasis added)). Similarly, the Fifth Amendment only applies to governmental actors. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 (1987) ("The fundamental inquiry is whether the [defendant] is a governmental actor to whom the prohibitions of the Constitution apply."); *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) ("[M]ost rights secured by the Constitution are protected only against infringement by governments."). The protections of the First and Fifth Amendments do not extend to private conduct, only to government action. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988).

According to Plaintiff, "[t]he RLA transforms Southwest . . . into [a] government actor[]." Pl.'s Resp. Br. 18. "Vested with governmental authority by the RLA, Southwest engaged in 'state action' and 'acted under the color of federal law' when it interfered with and violated [Plaintiff's] rights to resign and to object by retaliating against her for exercising those rights." *Id.* Plaintiff alleges,

> Defendants are government actors, acting under color of federal law, because the RLA confers to Local 556 by federal authority, the power to act as the exclusive bargaining representative of all Southwest employees. Defendants also enforce a "union security clause" and subject employees to the "union security clause"

pursuant to the federal authority of the RLA, which "authorizes agency shops . . . and therefore puts a federal imprimatur on a [CBA], forcing an unwilling employee to pay a union agency fee." [*Ry. Emp. Dep't v.*] *Hanson*, 351 U.S. [225,] 232 n.4 (1956); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198-99, 204 (1944); *Shea v. Int'l Ass'n of Machinists*, 154 F.3d 508, 513 n.2, 516-17 (5th Cir. 1998); *Miller v. Airline Pilots Ass'n*, 108 F.3d 1415, 1420 (D.C. Cir. 1997).

Second Am. Compl. ¶ 103.

The Court disagrees with Plaintiff's analysis. It does not appear that any court has held that the RLA can "transform" a private company into a state actor, even in the cases cited by Plaintiff.

The Supreme Court ruled in *Hanson* "that because the RLA pre-empts all state laws banning union-security agreements, the negotiation and enforcement of such provisions in railroad industry contracts involves 'governmental action' and is therefore subject to constitutional limitations." *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 761 (1988). The Supreme Court discussed the possible "[w]ide-ranged problems" under the First Amendment of union shop agreements, including "forc[ing] men into ideological and political associations which violate their right to freedom of conscience, freedom of association, and freedom of thought." *Hanson*, 351 U.S. at 236. Ultimately, the Supreme Court issued a narrow ruling, holding that "the requirement for financial support of the collective-bargaining agency by all who receive the benefits of its work is within the power of Congress under the Commerce Clause and does not violate either the First or the Fifth Amendments." *Id.* at 238.

Subsequently, courts have interpreted the "constitutional limitations" of agency shop agreements under the RLA as the constitutional right of employees to object to their union and pay reduced dues as nonmember objectors. *See, e.g., Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977) (drawing line between collective-bargaining activities, for which contributions by nonmembers may be compelled, and ideological activities unrelated to collective bargaining, for

which such compulsion is prohibited), overruled by *Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2459-60 (2018); *Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508 (5th Cir. 1998) (airline employees subject to RLA brought action challenging union's procedure requiring them to annually object in writing to opt out of full union membership); *Miller v. Air Line Pilots Ass'n*, 108 F.3d 1415 (D.D.C. 1997) (nonmember pilots objected to pilot union's calculations of nonmembers' agency fees). However, the Supreme Court recently held that an Illinois law forcing public employees to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities, violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of public concern. *Janus*, 138 S. Ct. at 2459-60. The Supreme Court's decision in *Janus* overruled its prior decision in *Abood*, which held that nonmembers may be charged for the portion of union dues attributable to activities that are "germane to [the union's] duties as collective-bargaining representative," but nonmembers may not be required to fund the union's political and ideological projects. *Id.* at 2460-61 (citing *Abood*, 431 U.S. at 235-36).

Here, Plaintiff is not bringing a claim against the Union based on the charging of improper expenses or related deficiencies. Nor is Plaintiff alleging that Southwest prevented her from resigning from the Union to become a nonmember objector. In fact, Plaintiff resigned from the Union on September 29, 2013, and remained a nonmember objector without incident until her termination by Southwest on March 14, 2017. Second Am. Compl. ¶ 13. Rather, she alleges a claim of retaliation and discrimination against her employer. *See id.* ¶¶ 104, 128. Plaintiff is essentially asking the Court to hold that Southwest, a private company, is a state actor in the context of an employment dispute because Southwest is a party to a CBA. Plaintiff has failed to identify a recognized legal theory for this proposition. *Janus* also does not support Plaintiff's

argument that the RLA "transforms" Southwest into a private actor. In particular, the ruling in *Janus* applies to public-sector unions and workers, not private-sector unions and workers. *See id.* at 2478 ("[W]e conclude that *public-sector* agency-shop arrangements violate the First Amendment[.]" (emphasis added)). And as discussed above, Plaintiff is a nonmember objector of a private-sector union.

Southwest is not a state actor. Nonmember objectors in the private sector do have a First Amendment right to object to their union and pay reduced dues, which Plaintiff has elected to do. It remains to be seen if the Supreme Court's ruling in *Janus* will be extended to private-sector unions; however, this is not the issue before the Court in the instant case. Plaintiff asserts causes of action for retaliation by her employer and religious discrimination under Title VII. While she may object to paying her union dues, that is not the claim Plaintiff has brought before the Court in the instant case. Therefore, the Court grants Southwest's Motion to Dismiss on this ground and dismisses with prejudice Plaintiff's retaliation claims against Southwest based on the exercise of her rights under the First and Fifth Amendments.

### (4) Title VII (Count V)

Plaintiff asserts a Title VII claim against Southwest, alleging that Southwest discriminated against her for her religious beliefs and practices "by terminating her employment because of her religious beliefs and practices, including sharing religious views on her personal Facebook page, with her union president, while off-duty and without any impact on the workplace." Second Am. Compl. ¶ 4. Southwest argues that Plaintiff has failed to state a valid religious discrimination claim, and therefore the Court should dismiss her Title VII claim.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Thus, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but it is not required to incur undue hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

The Fifth Circuit analyzes a Title VII claim for failure to accommodate religious observances under a burden-shifting framework akin to the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014). "The employee must first establish a prima facie case of religious discrimination." *Id.* (citing *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)). "If she does, 'the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship.'" *Id.* (quoting *Antoine*, 713 F.3d at 831).

To establish a prima face case of religious discrimination under Title VII, the plaintiff must present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Id.* (quoting *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013)). Notice to the employer of a religious belief or required accommodation is not required. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015). Rather, the employer's motive is the relevant inquiry. *Id.* "[T]he rule for disparate-treatment claims based on a failure to accommodate a

religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.*

At the motion to dismiss stage, although a plaintiff does not have to submit evidence to establish a prima facie case of discrimination, she does have to plead sufficient facts on all the ultimate elements of her claim to make her case plausible. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *see also Raj. v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). "[T]he ultimate question in a Title VII disparate treatment claim remains whether a defendant took the adverse employment action against a plaintiff *because of* her protected status." *Raj*, 714 F.3d at 322 (internal citations and quotation marks omitted).

Plaintiff alleges that her "religious beliefs require her to share with others that abortion is the taking of a human life." Second Am. Compl. ¶ 117. According to Plaintiff, she "discovered that Local 556, the exclusive labor representative of all Southwest flight attendants, participated in the Women's March and supported pro-abortion activities, using Southwest logos on their signs." *Id.* ¶ 118. "In accordance with her religious beliefs and practices, [Plaintiff] posted videos to her personal Facebook page opposing abortion and sent President Stone videos opposing abortion and comments critical of Local 556's support for abortion." *Id.* Plaintiff alleges that before her termination at her fact-finding meeting, she notified Southwest of her religious beliefs and explained why she sent the Facebook messages to Stone. *Id.* ¶ 58.

Plaintiff contends, "Southwest violated Title VII's anti-discrimination provisions when the [C]ompany terminated [Plaintiff] for her religious beliefs and for engaging in the religious practice of sharing religious beliefs on abortion with the [U]nion president and on her personal Facebook page." *Id.* ¶ 128. According to Plaintiff, "Title VII required Southwest's policies to give way to the need for an accommodation of [Plaintiff's] religious beliefs and practices." *Id.* ¶ 129. Plaintiff

further alleges that Southwest violated Title VII "by failing to attempt any accommodation to [Plaintiff's] religious beliefs and practices, including when [Southwest] applied the Social Media Policies to [Plaintiff's] communications on her personal Facebook page and to the [U]nion president." *Id.* ¶ 130.

Accepting all well-pleaded facts as true and viewing them in the light most favorable to the Plaintiff, the Court finds that Plaintiff has stated a plausible Title VII claim for religious discrimination against Southwest. *See Sonnier*, 509 F.3d at 675. Plaintiff has established "more than a sheer possibility" that her religious beliefs and practice were a factor in Southwest's decision to terminate her. *Iqbal*, 556 U.S. at 678. Whether accommodating Plaintiff's religious beliefs would have imposed an undue hardship on Southwest is a fact-intensive inquiry that may be addressed at the summary judgment stage or at trial. *See, e.g., Antoine*, 713 F.3d at 834; *Stolley v. Lockheed Martin Aeronautics Co.*, 228 F. App'x 379, 382-83 (5th Cir. 2007). Therefore, the Court denies Southwest's 12(b)(6) Motion to Dismiss Plaintiff's Title VII claim.

### B. Local 556's Motion to Dismiss

Plaintiff asserts three causes of action against Local 556 in the Second Amended Complaint. In Count III, Plaintiff alleges that the Union breached its duty of fair representation. In Count IV, Plaintiff alleges that Local 556 retaliated against her for the exercise of her protected rights under the RLA and the Constitution. And in Count V, Plaintiff alleges that Local 556 violated Title VII by discriminating against her religious beliefs and practices. Local 556 moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

### i. Breach of Duty of Fair Representation (Count III)

The duty of fair representation is akin to the duty owed by other fiduciaries to their beneficiaries. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74 (1991). Under this doctrine,

a union's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. *Id.* at 76 (citing *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "[I]n order to state a claim for breach of duty of fair representation, a complainant must allege enough facts that if presumed true, permit the inference that the complainant's exclusive bargaining agent acted arbitrarily, discriminatorily, or in bad faith in its representation of the complainant." *Johnson v. E. Baton Rouge Fed'n of Teachers*, 706 F. App'x 169, 171 (5th Cir. 2017).

Under the arbitrary prong, a union's actions breach the duty of fair representation "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *McCall v. Southwest Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009) (quoting *O'Neill*, 499 U.S. at 67). The Fifth Circuit has conceded that the arbitrariness standard is difficult to define, but has stated that, to be non-arbitrary, a decision must be: "(1) based upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees." *Id.* (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)).

A union also must treat its members similarly. *Id.* (citing *Vaca*, 386 U.S. at 191). The kind of discriminatory action proscribed by the second prong is discriminatory action that is "invidious." *Id.* (quoting *O'Neill*, 499 U.S. at 81).

As to the final prong, bad faith occurs when a union acts with a "motive to harm" a particular group, and turns on the subjective motivation of the union officials. *Carr v. Air Line*

*Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017) (quoting *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1204 (5th Cir. 1991)). Bad faith is a "demanding standard" met only by "sufficiently egregious" union action. *Id.* (quoting *O'Neill*, 939 F.2d at 1203). Bad faith conduct has also been described by the Fifth Circuit as "the absence of honest purpose and judgment or the presence of hostility or discrimination" by the union. *McCall*, 661 F. Supp. 2d at 654 (quoting *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1128 n.9 (5th Cir. 1980)).

In Count III, Plaintiff alleges,

> Local 556 breached the duty of fair representation when, through the actions of President Stone and/or other agents, it arbitrarily, discriminatorily, and in bad faith, complained to Southwest management of [Plaintiff's] Facebook messages and posts, and sought to discipline [Plaintiff] for her speech and other activity opposing the [U]nion, President Stone, and their political and ideological views, and for supporting the recall of Local 556 Executive Board.

Second Am. Compl. ¶¶ 99-100.

Local 556 moves to dismiss Plaintiff's breach of the fair duty of representation claim, arguing that Plaintiff "improperly asks the [C]ourt to accept as true a legal conclusion couched as a factual allegation." Union's Mot. to Dismiss Br. ("Union Br.") 4. "Plaintiff's specific shortcoming is that she has failed to plead how the Union failed to fulfill its duty of fair representation to her." *Id.* Local 556 argues that Plaintiff offers only "bare legal conclusions" rather than factual allegations that the Union acted arbitrarily, discriminatorily, or in bad faith in its representation of Plaintiff. *Id.* at 5-6.

The Court agrees with the Union. The Court finds that Plaintiff's allegations of a breach of the duty of fair representation fail to establish "more than a sheer possibility" that Local 556's conduct was arbitrary, discriminatory, or in bad faith. *Iqbal*, 556 U.S. at 678. Plaintiff alleges that Local 556 breached its duty of fair representation when Stone "complained to Southwest management about [Plaintiff's] February 14, 2017 Facebook messages, knowing her complaint

could result in [Plaintiff's] termination." Second Am. Compl. ¶ 96. Plaintiff further alleges that Stone "requested that Southwest discipline [Plaintiff] for sending the February 14, 2017 Facebook messages opposing the [U]nion, President Stone, and their political and ideological views, and for supporting the recall of the Local 556 Executive Board." *Id.* ¶ 97. Even viewing the facts in the light most favorable to Plaintiff, the Court cannot draw the reasonable inference that the Union conduct alleged by Plaintiff is "invidious," "egregious," or "so far outside a wide range of reasonableness as to be irrational." *Carr*, 866 F.3d at 602; *McCall*, 661 F. Supp. 2d at 654.

Moreover, Plaintiff offers conclusory allegations and unwarranted deductions of fact in alleging "[o]n information and belief" that Stone complained to Southwest "knowing the complaint would likely result in [Plaintiff's] termination." Second Am. Compl. ¶¶ 96-98. Plaintiff also offers only a bare recitation of the elements in alleging that the Union "arbitrarily, discriminatorily, and in bad faith, complained to Southwest management of [Plaintiff's] Facebook messages and posts, and sought to discipline [Plaintiff] for her speech." *Id.* ¶ 99. The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

The Court finds that Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face" for a breach of the duty of fair representation. *Twombly*, 550 U.S. at 570. Therefore, the Court grants the Union's Motion to Dismiss as to Count III and dismisses the claim without prejudice. The Court also *sua sponte* grants Plaintiff leave to amend her pleading concerning the Union's alleged breach of the duty of fair representation. *See Great Plains*, 313 F.3d at 329.

### ii. Retaliation Claims (Count IV)

In Count IV, Plaintiff contends that Local 556 retaliated against her for exercising her protected rights under the RLA and the Constitution by complaining to Southwest of Plaintiff's speech and activities, knowing that it could cause her discharge. Second Am. Compl. ¶ 106.

### (1) Protected Rights under the RLA

Plaintiff alleges that the Union retaliated against her for exercising her protected rights under the RLA. Plaintiff claims, "Local 556 retaliated against [Plaintiff] for exercising her protected rights by complaining to Southwest of [Plaintiff's] speech and activities, knowing that it could cause her discharge." Second Am. Compl. ¶ 106. According to Plaintiff, she "suffered an adverse action when Local 556 complained to Southwest of [Plaintiff's] speech and activities knowing that [Plaintiff] would be terminated, and when Southwest subsequently terminated her employment." *Id.* ¶ 107.

The Union moves to dismiss Plaintiff's RLA-based retaliation claim. The Union argues, "Plaintiff's [retaliation] cause of action is fatally flawed because it does not, and cannot, allege that Local 556 took any adverse employment action against her, as required under well-established retaliation case law." Union Br. 1. "Simply put, the Union cannot take any adverse employment action against Plaintiff, including the termination of Plaintiff's employment because it is not her employer. Only Plaintiff's employer, Southwest Airlines, has that authority." *Id.* at 1-2.

The Court disagrees with the Union. Fifth Circuit precedent makes clear that retaliation claims against unions by union members are cognizable causes of action. *See, e.g., Int'l Ass'n of Machinists*, 643 F. App'x at 457 (considering union member's claim that union retaliated against him by suspending him from union office after he filed charge with EEOC); *Martin*, 708 F. App'x at 175 (considering union members' claim that Local 556 retaliated against them by requiring them

32

to pay $100 initiation fee to rejoin union). Whether Plaintiff suffered an adverse action as a result of Local 556 complaining to Southwest is an inquiry more appropriate for summary judgment or trial. At the pleading stage, the Court finds that Plaintiff has sufficiently pleaded enough facts to state a plausible claim for retaliation against Local 556. *See Twombly*, 550 U.S. at 570. Therefore, the Court denies the Union's 12(b)(6) Motion to Dismiss on this basis.

### *(2) Protected Rights under the Constitution*

Like Southwest, Plaintiff alleges that the Union retaliated against her for exercising her First and Fifth Amendment rights. Plaintiff alleges that the Union is a "government actor[], acting under color of federal law, because the RLA confers to Local 556, by federal authority, the power to act as the exclusive bargaining representative of all Southwest employees." Second Am. Compl. ¶ 103.

The First and Fifth Amendments protect citizens from conduct by the government and state actors, but not from conduct by private actors. *See Tarkanian*, 488 U.S. at 191; *S.F. Arts & Athletics, Inc.*, 483 U.S. at 543; *Rendell-Baker*, 457 U.S. at 837; *Flagg Brothers, Inc.*, 436 U.S. at 156. Unions are not state actors; they are private actors. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009), *cert. denied*, 558 U.S. 1049 (2009); *see also Garity v. APWU-AFL-CIO*, 585 F. App'x 383, 384 (9th Cir. 2014) ("The district court properly dismissed [plaintiff's] federal constitutional claim because the unions are not state actors acting under color of law."); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("Labor unions . . . generally are not state actors[.]"); *Earl v. Sheriff's Ass'n*, Civ. A. No. H-10-0696, 2010 WL 4955328, at *2 (S.D. Tex. Nov. 29, 2010) ("Unions are not state actors."). There does not appear to be binding or even persuasive caselaw standing for the proposition that the RLA "transforms" a union into a state actor. *See supra*, § II.A.3. Therefore, the Court dismisses with

prejudice Plaintiff's retaliation claims based on constitutional violations asserted against the Union.

### iii. Title VII (Count IV)

Plaintiff asserts a Title VII claim for religious discrimination against Local 556. According to Plaintiff, "Local 556 violated Title VII anti-discrimination provisions when it reported [Plaintiff's] religious activities to Southwest as part of a successful attempt to cause the company to discharge [her] and otherwise discriminate against her religious beliefs and for engaging in the religious practice of sharing her religious beliefs on abortion with others." Second Am. Compl. ¶ 127. Under Title VII, it is an unlawful employment practice, *inter alia*, for a labor organization to discriminate against any individual because of his religion, or to cause or to attempt to cause an employer to discriminate against an individual because of his religion. 42 U.S.C. §2000e-2(c).

Local 556 does not move to dismiss Plaintiff's Title VII claim in its motion. *See* Union Mot. to Dismiss 1 ("The only substantive change from Plaintiff's First Amended Complaint to their Second Amended Complaint is the addition of religious discrimination claims under Title VII of the Civil Rights Act of 1964, but these claims are not asserted against Local 556."); *see also* Union Br. 1 ("Plaintiff has alleged two distinct claims against Local 556 in this matter: (1) the Union retaliated against Plaintiff for exercising her protected rights, and (2) the Union breached their duty of fair representation on behalf of Plaintiff after Southwest notified Plaintiff of her pending termination."). At oral argument, counsel for the Union did not directly address the Title VII claim asserted against the Union. *See* Mot. Hr'g Tr. 20:7-15, 42:16-25, 43:1-10. Plaintiff argues, "Local 556 waived any right to argue these claims in a Rule 12(b)(6) motion to dismiss, having failed to raise them in its instant motion." Pl.'s Resp. 1.

Because Local 556 did not move to dismiss to dismiss Plaintiff's Title VII claim or address Plaintiff's waiver argument in its reply brief, the Court declines to reach the sufficiency of Plaintiff's Title VII claim asserted against the Union.

## III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Southwest's Motion to Dismiss and Local 556's Motion to Dismiss. The Court denies Southwest's 12(b)(1) Motion to Dismiss for lack of subject matter jurisdiction because Plaintiff's claims do not constitute a "minor dispute" under the RLA. The Court also declines to exercise its discretion to give preclusive effect to the findings of the arbitrator at the motion to dismiss stage, and thus denies without prejudice Southwest's 12(b)(6) Motion on this ground.

As to Counts I and II, the Court grants Southwest's 12(b)(6) Motion to Dismiss because Plaintiff cannot establish that judicial intervention is warranted in this post-certification dispute. The Court therefore dismisses with prejudice Plaintiff's RLA claims. As to Count III, the Court grants the Union's 12(b)(6) Motion to Dismiss Plaintiff's claim for breach of the duty of fair representation, but grants Plaintiff leave to amend. As to Count IV, the Court denies both Southwest and Local 556's 12(b)(6) Motions to Dismiss Plaintiff's retaliation claims based on RLA-protected activity. The Court, however, grants both Southwest and Local 556's 12(b)(6) Motions to Dismiss Plaintiff's retaliation claims based on constitutional violations because both Southwest and the Union are not government actors. Thus, the Court dismisses with prejudice Plaintiff's retaliation claims based on the exercise of her First and Fifth Amendment rights. Finally, as to Count V, the Court denies Southwest's 12(b)(6) Motion to Dismiss Plaintiff's Title VII claim.

Because further amendment may not be futile, the Court *sua sponte* grants Plaintiff leave to amend her pleadings as to Count III. Plaintiff shall have 30 days from the date of this Order to file an amended complaint regarding her claim for a breach of the duty of fair representation against the Union.

**SO ORDERED.**

SIGNED February 1, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**