## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>        Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>        Defendants. | Civil Case No. 3:17-cv-02278-X<br><br><br>**PLAINTIFF CHARLENE CARTER'S BRIEF SUPPORTING THE MOTION TO COMPEL DISCOVERY FROM DEFENDANT TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iv

SUMMARY ...................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 1

ARGUMENT AND AUTHORITIES ................................................................................ 7

   I.   Local 556 waived attorney client, work product and other privilege claims ...................... 7

      A.  Local 556 waived all privilege claims because it refused to comply with
          Federal Rules requirements that it provide a privilege log supporting its claims ......... 7

      B.  Local 556 waived its privilege claims because the union's "Draft Privilege Log"
          does not comply with the Federal Rules' requirements and the union continually
          ignored its privilege log obligations ................................................................. 9

      1.  *Local 556 waived attorney-client privilege claims* ....................................... 9

      2.  *Local 556 waived work product privilege claims* ....................................... 10

          (a) *RFPs 1, 2(A)(C)-(H), 3-13, 21-22, 24, and Interrogatories 1-2:*
              *Local 556 never supported its work product privilege claims* ........................... 10

          (b) *RFPs 18-20: Local 556 did not timely raise work product objections* ................. 10

          (c) *RFPs 2(B), 15(A)-(I), and 18-20: Work product privilege does not apply* ........... 11

      3.  *Local 556 waived "private and confidential information" claims* ............................ 12

  II.  Local 556 is withholding responsive documents based on meritless objections .............. 14

      A.  "Overbroad" and "unduly burdensome" objections .................................................. 14

      1.  *RFPs 9, 10, 13 and Interrogatory 3: Union response to
          nonmember employees' social media activities and discipline* ................................ 14

      2.  *RFPs 21 and 22: Local 556 treatment of employees'
          religious discrimination complaints* ........................................................... 15

      3.  *RFPs 9(C) and 11: Seeking Local 556 information,
          not Southwest information* ...................................................................... 16

## TABLE OF CONTENTS (Cont'd)

Page

4. *RFPs 18, 23 and Interrogatories 1-2: Seeking information from Local 556 and union agents, not ordinary union members* ...............................16

5. *RFP 23 and Interrogatory 2: Local 556 should produce union information in its possession, custody, and control, wherever kept* ...........................17

6. *RFP 19: Union support for Planned Parenthood-sponsored Women's March* ...............................................18

B. "Vague and ambiguous" and "time limitation" objections .........................................18

1. *RFPs 21 and 22: "Religious beliefs, views, and practices" are not vague terms and did not justify the union's withholding all responsive information* ...............................18

2. *Interrogatory 3: The definition of "Local 556" excludes ordinary union members* ...............................20

C. Local 556's "subject to and without waiving objections" waived any objections beyond those specifically set forth and explained in the union's responses ...............................20

III. Local 556's discovery responses are deficient under Fed. R. Civ. P. Rules 33 and 34 because they failed to identify responsive documents by name or bates number ...............................21

IV. Local 556 failed to produce other documents in its possession, including those subject to the November 5, 2019 Protective Order, and sign interrogatories under oath ...............................22

V. Local 556 should pay attorneys' fees and expenses ...............................23

CONCLUSION ...............................24

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Agee v. Wayne Farms, LLC*,
    No. 2:06-cv-268-KS-MTP, 2007 WL 2903208 (S.D. Miss. Oct. 1, 2007)...............................8

*Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*,
    No. 2:18-CV-166-Z-BR, 2020 WL 520608 (N.D. Tex. Jan. 13 2020)............................10, 23

*Blackard v. Hercules, Inc.*,
    No. 2:12-cv-175-KS-MTP, 2014 WL 2515197 (S.D. Miss. June 4, 2014)............................8

*Carr v. State Farm Mut. Auto. Ins., Co.*,
    312 F.R.D. 459 (N.D. Tex. 2015) ....................................................................................20, 21

*City of Colton v. Am. Promotional Events, Inc.*,
    277 F.R.D. 578 (C.D. Cal. 2011) ............................................................................................22

*Consumer Elecs.' Ass'n v. Compras & Buys Magazine, Inc.*,
    2008 WL 4327253 (S.D. Fla. Sept. 18, 2008) ................................................................19, 20

*Coughlin v. Lee*,
    946 F.2d 1152 (5th Cir. 1991) ................................................................................................15

*EEOC v. BDO USA, L.L.P.*,
    876 F.3d 690 (5th Cir. 2017) ........................................................................................7, 8, 9

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    218 F.R.D. 125 (E.D. Tex. 2003)....................................................................................11, 12

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*,
    Civ. No. 15-638, 2017 WL 2267149 (E.D. La. May 24, 2017)..............................................17

*Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*,
    No. 6:12-cv-00023, 2012 WL 6726412 (W.D. Va. Dec. 27, 2012) .......................................22

*Harper v. City of Dallas*,
    No. 3:14-cv-2647-M, 2017 WL 3674830 (N.D. Tex. Aug. 25, 2017) ...................................17

*Heller v. City of Dallas*,
    303 F.R.D. 466 (N.D. Tex. 2014) ................................................................9, 14, 19, 20, 21

*In re Santa Fe Int'l Corp.*,
    272 F.3d 705 (5th Cir. 2001) ................................................................................................11

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

*Lopez v. Don Herring Ltd.*,
    327 F.R.D. 567 (N.D. Tex. 2018) ........................................................................10

*McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins., Co.*,
    No. 3:14-cv-2498-B, 2016 WL 2997744 (N.D. Tex. May 25, 2016).....................22

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
    894 F.2d 1482 (5th Cir. 1990) .....................................................................14, 23

*Nance v. Thompson Med. Co.*,
    173 F.R.D. 178 (E.D. Tex. 1997)...........................................................................8

*Navigant Consulting, Inc. v. Wilkinson*,
    220 F.R.D. 467 (N.D. Tex. 2004) ........................................................................12

*Orchestrate HR, Inc. v. Trombetta*,
    No. 3:13-cv-2110-P, 2014 WL 884742 (N.D. Tex. Feb. 27, 2014).......................11

*Pavillion Bank v. OneBeacon Am. Ins. Co.*,
    No. 3:12-CV-05211-G-BK, 2013 WL 12126258 (N.D. Tex. Nov. 13, 2013) ........11

*Robinson v. Texas Auto. Dealers Ass'n*,
    214 F.R.D. 432 (E.D. Tex. 2003)...........................................................................8

*State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*,
    No. 3:16-cv-2255-L, 2018 WL 3548866 (N.D. Tex. July 24, 2018).....................21

*Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944)..................................................2

*United States v. Davis*,
    636 F.2d 1028 (5th Cir. 1981) .............................................................................11

*United States v. El Paso*,
    682 F.2d 530 (5th Cir. 1982) .........................................................................11, 12

*Washington v. M. Hanna Const., Inc.*,
    299 F. App'x 399 (5th Cir. 2008) ........................................................................23

## TABLE OF AUTHORITIES (Cont'd)

**Page(s)**

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(5).........................................................................................8

Fed. R. Civ. P. 26(b)(5)(A)(ii) ..........................................................................7, 9

Fed. R. Civ. P. 33...............................................................................................21

Fed. R. Civ. P. 33(b)...........................................................................................23

Fed. R. Civ. P. 33(b)(3).......................................................................................21

Fed. R. Civ. P. 34.........................................................................................17, 21

Fed. R. Civ. P. 34(b)...........................................................................................21

Fed. R. Civ. P. 37(a)(5)(A)...................................................................................23

Fed. R. Civ. P. 37(a)(3)(B)(iii) .............................................................................1

Fed. R. Civ. P. 37(a)(3)(B)(iv)..............................................................................1

42 U.S.C. § 2000e, *et seq.*.............................................................................2, 16

45 U.S.C. § 151, *et seq.*............................................................................2, 12, 15

**SUMMARY**

The Court should order Defendant Transport Workers Union of America Local 556 ("Local 556") to produce documents and respond to Plaintiff Charlene Carter's ("Carter") discovery requests in accordance with the Federal Rules. A party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to respond. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).

Local 556 waived its asserted privileges by repeatedly ignoring Federal Rules requirements to provide a valid privilege log, is withholding documents based on meritless objections that should be overruled, failed to identify responsive information with references to document names or bates numbers, and neglected to produce documents it admits are in its possession, including documents it promised to produce after Carter agreed to a protective order. For failing to comply with the Federal Rules in each of these respects and forcing Carter to bring this Motion, the Court should award her attorneys' fees and expenses.

**FACTUAL BACKGROUND**

Before Southwest Airlines Co. ("Southwest") terminated her employment, Carter was a nonmember of Local 556 who opposed the union's leadership, including President Audrey Stone. FAC ¶¶ 8, 13.[1] Carter is also a Christian who opposes abortion, and believes that abortion takes a human life and is contrary to the teachings of the Bible and the will of God. FAC ¶ 42. Carter criticized Local 556's leadership, and sent Facebook messages to President Stone that criticized her for using union fees to lead Local 556 members at the 2017 Women's March on Washington D.C., which promoted abortion on demand. FAC ¶¶ 37, 38, 41, 46-50. In response, Local 556 and President Stone caused Southwest to fire Carter by reporting her for violating various company

---

[1] Carter's Fourth Amended Complaint, ECF 80 (April 10, 2019) (hereinafter "FAC ¶__").

policies, including its social media policy. FAC ¶¶ 83, 85, 87-89, 97-99, 110, 111, 118. This gave rise to the following claims:[2]

- **Duty of fair representation.** Local 556 breached its duty of fair representation by causing Southwest to terminate Carter's employment,[3]

- **Retaliation.** Local 556 retaliated against Carter for exercising her rights under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* ("RLA"), to become a nonmember and object to paying the union's compelled fees for political, ideological, and other nonbargaining spending,

- **Title VII Religious Discrimination.** Local 556 discriminated against Carter in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, by reporting her religious activities to Southwest as part of a successful attempt to cause the company to discriminate against her religious beliefs and practices of sharing her religious views on abortion with others.

More than a year ago, on April 26, 2019, Carter served Interrogatories and Requests for Production on Local 556 (collectively, "Carter's Discovery Requests"). *See* Apps. 1-20. On May 22, Local 556 requested a 14-day extension to respond to discovery, stating, "[w]e should have responses sooner, but this request is out of an abundance of caution." (App. 50).[4] Carter's counsel agreed to the extension. On or about June 10, 2019, Local 556 contacted Carter's counsel and requested a second extension. Carter's counsel agreed to extend the deadline again.

On June 17, Local 556 served objections and responses ("Original Responses") to Carter's Discovery Requests, without producing any documents. (Apps. 21-33); (App. 51-52). Local 556 asserted attorney-client privilege, work product, and privacy/confidentiality objections for RFPs 1, 21 and 22, and "overbroad" and "vague and ambiguous" objections for RFPs 21 and 22.[5] (Apps.

---

[2] Carter's Complaint includes claims against Southwest, but this Motion to Compel only addresses Local 556's failures to comply with its discovery obligations under the Federal Rules.

[3] *See, e.g., Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944).

[4] Carter's Appendix, filed contemporaneously with this Motion, is cited to as "App. ___".

[5] This Motion to Compel does not seek documents or information for RFPs 14, 16, 17, 25, and Interrogatory 4. Therefore, this Motion will omit references to these requests.

22-23, 26-27). For twenty-two requests, Local 556 objected and gave no indication that it would ever produce any documents or information even with a protective order. (Apps. 23-27, 31).

Over the next two months, Carter's counsel worked to get Local 556 to clarify its position as to what documents it would produce and when. Carter also requested that the union provide a privilege log. (Apps. 52-54). On June 28, 2019, Carter's counsel had emailed Local 556's attorneys with questions regarding the union's discovery position. (App. 52). Despite several attempts to email and call Local 556's attorneys, the union did not offer any answers to Carter's counsel's questions until July 9, on which date the parties scheduled and conducted a call. (Apps. 55-56). During the July 9 call, counsel discussed the objections:

- Regarding RFPs 18, 19, 23, and Interrogatories 1-3, Carter's attorneys responded to union objections that certain requests seek information from Local 556 rank-and-file members. Carter's counsel explained that the Discovery Requests' definition of "Local 556" excluded rank-and-file members. Carter's counsel also questioned how Local 556 distinguished between President Audrey Stone's documents created in her official capacity (which it would produce) and those created in her individual capacity (which it would not produce).

- Regarding union objections that RFPs 9(C), 11, and 21, seek information in Southwest's custody, Carter's counsel pointed out RFP Instruction 1,[6] and explained that she only seeks information regarding how *the union* responded to and addressed particular subjects (e.g., company investigations of employee social media activities).

- Regarding RFPs 21 and 22, counsel also discussed union claims that "religious beliefs, views, and practices" are ambiguous terms, and Local 556's attorney acknowledged that the union could at least produce union information responsive to RFP 21.[7]

---

[6] RFP Instruction Number 1 and Interrogatory Instruction 2 explained that documents and information requested is that which is in Local 556's possession, custody, or control, wherever located. (App. 1, 15).

[7] Carter's attorneys emailed the union's attorney on July 12, asking that the union to confirm its position on whether it would amend its response and produce documents for RFP 21, but Local 556 never again addressed that request. (App. 55).

Local 556 agreed to amend many of its Original Responses and indicated that it might start producing documents the next day. On July 12, Carter's counsel emailed Local 556's attorney to discuss the protective order, privilege log, and other objections. (App. 55). Despite Carter's counsel's attempts to discuss these issues with Local 556, its attorney did not respond to them until July 25, at which time he confirmed that the union would amend its responses, produce documents, and provide a privilege log. (App. 56-58).

On July 31, Local 556 served "First Amended Interrogatory and Request for Production Responses" ("Amended Responses") and mailed its "first batch of documents," which included bates-stamped documents and non-bates stamped files. (Apps. 34-45, 60). Local 556's Amended Responses to RFPs 2-13, 15-20, 23, 24, and Interrogatories 1-3, superseded those answers and objections in the unions' Original Responses, but they did not amend the answers and objections in its Original Responses to RFPs 1, 21, and 22. (Apps. 22-23, 26-27).

Local 556's Amended Responses included:

- Attorney-client privilege, work product, privacy/confidentiality objections for RFPs 2-13, 15, 18-20, 24, and Interrogatories 1-2. (Apps. 35-40, 43-44);[8]

- Responses made "subject to and without waiving objections" for RFPs 2-8, 12, 15, and 24 (Apps. 35-37, 39, 40);

- Overbroad and/or unduly burdensome[9] objections to RFPs 9, 10, 11, 13, 18, 19, 23, and Interrogatories 1-3 (Apps. 37-40, 43-44);

- Promises to produce documents for RFPs 2, 9, 10, 12, 13, and 15, after the entry of a protective order. (Apps. 35-39).[10]

---

[8] Local 556's Original Responses to RFPs 1, 21, and 22, also contained these privilege objections, which were unaltered by the union's Amended Responses. *See supra* at 2-3. (Apps. 22-23; 26-37).
[9] Local 556's Original Responses to RFPs 21 and 22 contained similar objections, and included objections on "vague and ambiguous" grounds. *See supra* at 2-3. (Apps. 26-27).
[10] Local 556's Original Responses promised to produce documents for RFP 1 after the entry of a protective order. (Apps. 22-23).

Local 556's Amended Responses also failed to cite the documents it produced or otherwise identify how they corresponded to Carter's requests. (Apps. 34-45).

On August 13, Carter's counsel emailed Local 556's attorneys to discuss the union's Amended Responses, and asked the union to explain whether it was withholding documents based on its objections, to identify how documents produced corresponded to her Discovery Requests, and to inform them when it would produce a privilege log. (App. 61). On August 20, Local 556 responded and asked if the parties could discuss these matters during the following week. (App. 62). When Carter's counsel and Local 556's attorneys held a conference call to discuss discovery matters on August 27, Local 556 seemed agreeable to resolving various issues, indicating that it could produce additional documents and give Carter a privilege log within a week. (App. 64).

Despite those assurances, Local 556 did not provide a privilege log or produce any additional documents in the following weeks. Local 556 never explained whether it was withholding documents based on its objections. Nor did Local 556 explain how union documents produced on July 31 corresponded to Carter's Discovery Requests. On September 9 and 18, Carter's counsel emailed Local 556's attorneys to discuss the privilege log, production, and other discovery matters, but Carter received no response from Local 556's attorneys on those issues. (App. 64-66). Finally, on September 27, Local 556's attorneys emailed Carter's counsel a preliminary "draft" document purporting to summarize the union's claimed privileges ("Draft Privilege Log"). (Apps. 46-49, 68). But the union's "draft" was nothing more than a perfunctory document, which failed to comply with Federal Rules requirements for a valid privilege log, and omitted information required to evaluate the asserted privileges. Despite Carter's repeated requests, the union never completed a valid privilege log.

After discussing a protective order in June and July, Carter's counsel emailed Local 556 a draft protective order on July 26, 2019. (App. 59). Despite repeated attempts to discuss the protective order with Local 556 in August, the union did not respond to Carter's proposed order until September 6. (Apps. 61-63). Carter's counsel responded that same evening with another proposed order, but Local 556 delayed for several weeks, and did not approve a proposed draft until September 27. (Apps. 63-68). On October 4, 2019, the parties filed a joint motion for the entry of a stipulated protective order, which the Court entered on November 5. (ECF 85). Meanwhile, on October 3, 2019, the parties agreed to extend Scheduling Order deadlines, which the Court approved on March 4, 2020. (ECF 89).

On February 28, 2020, Carter's counsel and Local 556's attorney conducted another teleconference call to review unresolved discovery issues, at which time Carter's counsel explained that they have a firm deadline to bring closure to these issues within three weeks. (Apps. 69-70). Local 556's attorney indicated that would be reasonable. But, the union never responded to the issues Carter's counsel raised. In fact, Carter's counsel heard nothing back from Local 556's attorneys until the time came to discuss whether this motion would be opposed. Local 556's attorneys responded with requests for additional meetings to discuss Carter's discovery issues, reiterating the same old promises that the union would start producing documents within a week. Local 556 has employed these tactics since May 2019, causing substantial delay and leaving Carter without any relief for the injuries Local 556 inflicted on her. Therefore, Carter is forced to file this Motion to Compel.

## ARGUMENT AND AUTHORITIES

The Court should order Local 556 to produce documents and respond to Carter's Discovery Requests because the union (I) waived its privilege claims after repeatedly refusing Carter's requests to provide a valid privilege log, (II) withheld documents based on meritless objections that should be overruled, (III) failed to identify responsive information with references to document names or bates numbers, and (IV) neglected to produce documents it admits are in its possession, including documents it promised to produce after Carter agreed to a protective order.

## I.   Local 556 waived attorney client, work product, and other privilege claims.

### A.   Local 556 waived all privilege claims because it refused to comply with Federal Rules requirements that it provide a privilege log supporting its claims.

Local 556 waived its attorney-client, work product, and other privilege claims because the union repeatedly refused to comply with its duty to provide a valid privilege log. "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . [provide a privilege log that] describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 n.3 (5th Cir. 2017). Local 556 asserted attorney-client privilege and work product objections to RFPs 1-13, 15, 21-22, 24, and Interrogatories 1-2,[11] and objected to producing "private and confidential information" for RFPs 1, 3-6, 18-22.[12] But Local 556 never supported those claims in a valid privilege log.

---

[11] *See* Apps. 5-11, 18 (Carter's Discovery Requests); Apps. 22-23, 26-27, 35-40, 43-44 (Local 556 objections).
[12] *See* Apps. 5-7, 10, 11, 18 (Carter's Discovery Requests); Apps. 22-23, 26-27, 36, 39-40) (Local 556 objections).

"Waiver of either the attorney-client privilege or the attorney work product privilege can . . . occur when a party fails to state a privilege objection in the 'privilege log' as required under Federal Rule of Civil Procedure 26(b)(5)." *Nance v. Thompson Med. Co.*, 173 F.R.D. 178, 182 (E.D. Tex. 1997); *see also, Agee v. Wayne Farms, LLC*, No. 2:06-cv-268-KS-MTP, 2007 WL 2903208, at *3 (S.D. Miss. Oct. 1, 2007) ("[F]ailure to provide a privilege log is, on its own, sufficient to warrant a finding that any privilege, even if it had been established . . . has been waived."). Courts have regularly found that a party waives privilege claims when it fails to provide a privilege log due to its "unjustified delay, inexcusable conduct, or bad faith." *See e.g., BDO USA*, 876 F.3d at 697. "While waiver based on such conduct may seem like a harsh penalty, such a policy is necessary to prevent gamesmanship." *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 456 (E.D. Tex. 2003), *vacated on other grounds*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003).

Local 556's refusal to produce a valid privilege log for nearly 10 months waived all attorney-client and work product privilege assertions for RFPs 1-13, 15, 21-22, 24, and Interrogatories 1-2, and all privacy/confidentiality assertions for RFPs 1, 3-6, 18-22. *See Blackard v. Hercules, Inc.*, No. 2:12-cv-175-KS-MTP, 2014 WL 2515197, at **3-5 (S.D. Miss. June 4, 2014) (ruling that defendant waived all asserted privileges when it waited five months after producing documents to provide a privilege log).

Local 556's attempts to avoid its duty to support its privilege claims is nothing short of gamesmanship. Despite Carter's counsel's repeated requests, and Local 556's continuous representations since July 2019 that it would provide a privilege log, the union has done nothing to support its privilege claims or give Carter the requisite information to test those claims. (Apps. 52, 54, 56, 61, 64-66, 69-70). Local 556's whack-a-mole tactics of promising a privilege log and

then failing to provide one significantly contributed to this case's delay and forced the parties to extend discovery deadlines. This is precisely the sort of gamesmanship that the Federal Rules were designed to prohibit.

**B. Local 556 waived its privilege claims because the union's "Draft Privilege Log" does not comply with the Federal Rules' requirements and the union continually ignored its privilege log obligations.**

While Local 556 finally emailed a perfunctory draft "privilege log" document purporting to summarize privilege claims (Ex. G, "Draft Privilege Log"), the draft did not comply with Fed. R. Civ. P. 26(b)(5)(A)(ii)'s requirements. (Apps. 46-49). "When a party relies on a privilege log to assert these privileges, the log must as to each document . . . set[] forth specific facts that, if credited would suffice to establish each element of the privilege or immunity that is claimed." *BDO USA*, 876 F.3d at 697 (internal citation and punctuation omitted). Local 556 waived its privileges because the "Draft Privilege Log" did not provide information the Federal Rules require from the union to support its assertions. Nor did it excuse the union's continuing disregard for the Rules.

**1.** *Local 556 waived attorney-client privilege claims.*

Local 556 waived attorney-client privilege for RFPs 1-13, 15, 21-22, 24, and Interrogatories 1, 2.[13] Local 556's one-sentence statement in its Draft Privilege Log fell woefully short of satisfying privilege log requirements because it did not give adequate information to evaluate the union's claim. (App. 46). Rather, the "Draft Privilege Log" merely states that the union asserts attorney-client privilege to "withhold [1,216 documents/files] because legal counsel was the

---

[13] For each of these Discovery Requests (Apps. 5-11, 18), Local 556 objects that the requests seek information "protected by the attorney-client privilege and/or attorney work-product doctrine." (Apps. 22-23, 26-27, 35-40, 43-44). Local 556's assertion of its attorney-client and work product privilege objections in the dubious "and/or" fashion, suggests that the union raised these objections, impermissibly, to cover its bases without valid reasoning or support. Local 556 objected "reflexively—but not reflectively." *Heller v. City of Dallas*, 303 F.R.D. 466, 477, 487 (N.D. Tex. 2014) (citation omitted).

sender or recipient of the document/file to [Local 556's] officers/employees or because legal counsel was *one of the senders/recipients*." (emphasis added). (App. 46). Carter could not assess Local 556's privilege claims based on this information alone, particularly given the unreliability of what is nothing more than a preliminary "draft." Whether legal counsel was "one of the senders/recipients," tells Carter nothing about other authors, senders, recipients, dates, or subject matter of each document, information required under the Federal Rules. (Apps. 52, 54, 56, 61, 64, 66, 69-70).

### 2. *Local 556 waived work product privilege claims.*

(a) *RFPs 1, 2(A)(C)-(H), 3-13, 21-22, 24, and Interrogatories 1-2: Local 556 never supported its work product privilege claims.*

Local 556 waived work product objections to RFPs 1, 2(A), (C)-(H), 3-13, 21-22, and 24, and Interrogatories 1-2, because the union failed to timely raise and support its assertions in a valid privilege log. The union never offered *any* explanation or support for these objections. Notably, the union's "Draft Privilege Log" does not even mention them. (App. 46). The "Draft Privilege Log" only addresses work product privilege for RFPs 2(B), 15(A)-(I), and 18-20. (App. 47). Local 556 waived the objections because it failed to support them in the last 10 months.

(b) *RFPs 18-20: Local 556 did not timely raise work product objections.*

Local 556 waived work product objections for RFPs 18-20 because the union failed to specifically assert them in its Amended Responses.[14] "[W]ith respect to requests for production . . . any objections not stated in the timely response are waived." *See Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *3 (N.D. Tex. Jan. 13, 2020) (citing *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018)). The Court

---

[14] *See* App. 10 (Carter's RFPs 18-20); Apps. 39-40 (Local 556 Objections).

should order Local 556 to produce the four files categorized as "Board Packets from Grievance Team/Grievance Team notes/Step Two exhibits," withheld for RFPs 18-20. (App. 47).

(c) *RFPs 2(B), 15(A)-(I), and 18-20: Work product privilege does not apply.*

Even if the Court were to conclude that Local 556 did not waive work product privilege claims for RFPs 2(B), 15(A)-(I), and 18-20, for failing to provide a privilege log (*see* Section I(A), *supra*) the work product privilege would still not apply.[15] Work product privilege applies to documents or tangible things "prepared in anticipation of litigation," by or for a party's representative. *See e.g., Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 136 (E.D. Tex. 2003).[16] Local 556 is claiming work product protection for materials that were not prepared "in anticipation of litigation." Materials are not prepared "in anticipation of litigation" unless the "primary motivating purpose behind [their] creation . . . was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

Local 556's work product claims fail the "primary purpose" test for three reasons. First, Local 556 generated these materials as part of a "systematic process" for documenting calls and meetings when handling grievances. (Apps. 46-47). Materials created in the ordinary course of business are not protected "because there is always a possibility" of litigation. *Davis*, 636 F.2d at 1040; *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982); *Pavillion Bank v. OneBeacon Am. Ins. Co.*, No. 3:12-CV-05211-G-BK, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) (finding no

---

[15] Carter's RFP 2(B) seeks Local 556 documents and communications regarding Carter's religious beliefs, views, and practices. (App. 5); (App. 35-36) (Local 556 objection). Carter's RFP 15(A)-(I) seeks Local 556's documents related to union representation of employees disciplined for social media activities. (App. 9); (App. 39) (Local 556 objection). Carter's RFPs 18-20 seek Local 556 information regarding the union's participation in and support for the Women's March. (App. 10).

[16] "Like all privileges the work product doctrine must be strictly construed." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014). The party asserting the privilege "bears the burden of demonstrating its applicability." *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (footnote omitted).

work product protection where the primary purpose was merely to assist party in carrying out its day-to-day operations).

The union routinely prepared these materials in the ordinary course, regardless of whether litigation would ensue. The "Draft Privilege Log" explains these documents' possible utility in defending the union's actions in litigation as a benefit that might arise "*if need be*," which simply shows that this hypothetical attribute is an incidental benefit to having these documents, not their primary purpose. (App. 47) (emphasis added). *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (finding no work product for materials prepared during an investigation of employee misconduct even where party preparing materials considered the prospect of litigation and the investigation might have helped in future legal proceedings).

Third, Local 556 admits it created notes and reports to comply with its duty of fair representation standards under the RLA. (App. 47). But materials are not prepared "in anticipation of litigation" when made pursuant to public requirements unrelated to litigation. *See El Paso Co.*, 682 F.2d at 542-44 (observing that the primary motivating force behind the documents' analysis was to bring the company into conformance with securities laws' requirements and not to assist in litigation over the tax returns).

Finally, Local 556 failed to establish that work product protection applies because it never showed that that the materials it seeks to protect contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" concerning litigation. *See Ferko*, 218 F.R.D. at 136. The work product privilege does not apply.

### 3. *Local 556 waived "private and confidential information" claims.*

Local 556 waived its "privacy and confidentiality" objections because the union refused to provide a privilege log to support them despite repeated requests. Local 556 objected to RFPs 1, 3-6, 18-22 for "seek[ing] private and confidential information" related to: Local 556 President

Audrey Stone (RFPs 3-6);[17] union members in their individual capacities (RFPs 18-20);[18] and Southwest (RFPs 21-22).[19] Yet Local 556's "Draft "Privilege Log" never even mentioned these objections. (Apps. 46-47).

Contrary to Local 556's objections, Carter's Discovery Requests seek information from Local 556, not from non-parties or rank-and-file members. *See infra* at 17, 20. Additionally, Local 556 President Stone is responsible for union policy and decision-making and Carter's Complaint alleges that Stone acted for the union when it violated her rights. FAC, ¶¶83, 85, 87-89, 97-99, 110, 111, 118. Local 556 cannot justify withholding President Stone's information by making conclusory assertions that her documents fall within some zone of "individual" capacity, a false distinction that is not recognized under the Rules. And Local 556 declined to explain how it drew distinctions between documents created in her individual capacity and those created in her official capacity as union president. *See supra* at 3.

Local 556 also never explained its reasons for withholding "private and confidential" documents "related to Southwest." Local 556 has the duty under the Federal Rules to show why a privilege should apply. By refusing to support these claims for over 10 months, the union waived its opportunity to do so. Even if Carter's requests implicate privacy or confidentiality concerns, the protective order allows Local 556 to mark sensitive documents as confidential to protect them. *See* ECF 85, ¶¶9-10, pp.3-4.

In sum, one year has passed since Carter first served her Discovery Requests on Local 556, and the union has refused to provide a valid privilege log. Local 556's knowing delays and continual disregard for providing a privilege log exemplify the "unjustified delay, inexcusable

---

[17] *See* Apps. 6-7 (Carter's RFPs 3-6); App. 36 (Local 556 objections).
[18] *See* App. 10 (Carter's RFPs 18-20); Apps. 39-40 (Local 556 objections).
[19] *See* Apps. 10-11 (Carter's RFPs 21-22); Apps. 26-27 (Local 556 objections).

conduct, and bad faith" that waives a party's privilege assertions. Therefore, Local 556 waived its privilege claims.

## II. Local 556 is withholding responsive documents based on meritless objections.

The Court should (A) overrule Local 556's "overbroad," "unduly burdensome," and "vague and ambiguous" objections, and order the union to produce documents withheld under those pretenses; and (B) rule that Local 556's pattern of responding "subject to and without waiving objections" failed to preserve any objections not specifically set forth in its responses.

### A. "Overbroad" and "unduly burdensome" objections

The Court should overrule Local 556's "overbroad" and "unduly burdensome" objections to RFPs 9, 10, 11, 13, 18, 19, 21-23, and Interrogatories 1-3, and order Local 556 to produce responsive documents. "A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller*, 303 F.R.D. at 490 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). Local 556 cannot satisfy this burden.

#### 1. *RFPs 9, 10, 13, and Interrogatory 3: Union response to nonmember employees' social media activities and discipline*

Carter's requests in RFPs 9(A)(B)(D)(E), 10, 13, and Interrogatory 3, seek information about how Local 556 treated union member and nonmember employees subject to Southwest's social media policies. (Apps. 7-9, 18). Local 556 objected that these requests are "overbroad,"[20] and is withholding documents for "employees that are not members of Local 556," whom it characterizes as not similarly situated.[21] (Apps. 37-39).

---

[20] Notably, the union waived any objections that RFPs 9, 10, and 13, were unduly burdensome by not timely raising them in their Amended Responses. (Apps. 37-39).

[21] Local 556 never explained which employees it contends are (and are not) similarly situated to Carter. Nor has the union ever responded to Carter's definition of similarly situated employees despite invitations for it to do so. (App. 69 ¶3).

But this objection is baseless. "[C]ourts have customarily allowed a wide discovery of personnel files." *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (permitting liberal discovery of the personnel files and records of employees similarly situated to the plaintiff in cases where plaintiffs are required to demonstrate pretext) (footnote and citations omitted). Nonmember employees are similarly situated to Carter because, like her, they exercised their statutory rights under the RLA to resign from union membership and are subject to discipline for their social media activities. They are also in the same collective bargaining unit as Carter, represented by the same union as Carter, and subject to the same social media policies as Carter.

Without information concerning nonmember employees' social media activities and discipline, Carter cannot evaluate Local 556's disparate treatment of members and nonmembers, patterns of retaliation against other nonmembers, and discriminatory, arbitrary, and bad faith conduct towards nonmembers. That information directly relates to her duty of fair representation and retaliation claims. *See* FAC ¶¶ 82- 91; ¶¶ 97-101.

For RFPs 9(A)(B)(D)(E), 10, and 13, Local 556 says it will only produce documents related to individuals named by Carter in RFP 15. (Apps. 37-39). But only one of those individuals mentioned in RFP 15 is a nonmember. (App. 9); *see also, e.g.*, FAC ¶¶ 74-77. Limiting RFPs 9, 10, and 13 to these particular individuals, would unjustifiably deprive Carter of discovery to which she is entitled under the Rules. Local 556 should produce information related to nonmembers' social media activities.

2. *RFPs 21 and 22: Local 556 treatment of employees' religious discrimination complaints*

Carter's RFPs 21 and 22 request Local 556's documents and communications regarding employees' complaints concerning their religious beliefs, views, practices, and employee religious accommodation requests. (Apps. 10-11). Local 556 objects that RFPs 21 and 22 are overbroad

15

because they seek information related to employees who are not similarly situated to Carter. (Apps. 26-27). Employees making complaints concerning religious beliefs, views, and practices, or seeking religious accommodation requests are "similarly situated" to Carter because they are flight attendants in the same collective bargaining unit represented by Local 556 who raised religious discrimination complaints and for which Local 556 had the authority to respond to and address as the employees' exclusive representative. This information is relevant to proving her Title VII religious discrimination, retaliation, and duty of fair representation claims against the union.

### 3. *RFPs 9(C) and 11: Seeking Local 556 information, not Southwest information*

Carter's RFPs 9(C) and 11 seek Local 556's documents and communications responding to and addressing Southwest's investigations of Carter's (RFP 11) and other employees' (RFP 9(C)) social media activities. (Apps. 7-8). Local 556 argues that RFP 9(C) is unduly burdensome and RFP 11 is overbroad because they seek information in Southwest's custody. (Apps. 37-39). Not so. The requests seek information about how *Local 556* responded to and addressed Southwest investigations of employees accused of social media violations.[22] That information is directly relevant to Carter's retaliation, discrimination, and duty of fair representation claims against the union and is in the union's sole possession. *See* FAC ¶¶82-90, 99, 116-118, 121. If Local 556 has such responsive documents in its possession, custody, or control, it must produce them.

### 4. *RFPs 18, 23, and Interrogatories 1-2: Seeking information from Local 556 and union agents, not ordinary union members*

Carter RFPs 18, 23, and Interrogatories 1-2, seek Local 556 information related to her religious discrimination, retaliation, and duty of fair representation claims. (Apps. 10, 11, 18). Local 556 objects that RFP 18, 23 and Interrogatories 1, 2, are unduly burdensome because they seek this

---

[22] Carter's Requests explain that each question seeks documents in Local 556's possession, custody, or control. (Apps. 1 ¶1; 15 ¶2).

information from all union members. (Apps. 39-40, 43-44). But Carter's definition of "Local 556" in her Discovery Requests dispels this notion. It only includes the union and its "officers, stewards, employees, representatives, agents, [and] intermediaries." (Apps. 4 ¶7; 16 ¶9). As Carter's counsel explained to the union on July 9, these requests exclude ordinary rank-and-file members. Local 556 cannot re-classify union agents as ordinary rank-and-file members or expand the request to include every ordinary rank-and-file member, all as a pretext for withholding documents.

5. ***RFP 23 and Interrogatory 2: Local 556 should produce union information in its possession, custody, and control, wherever kept***

For RFP 23 and Interrogatory 2, the union indicates that it will only produce information physically kept "within the Local 556 executive office," information exclusively in the possession of executive officials, and information "between and amongst individuals working within Local 556's executive office." *See* Apps. 40, 44. But Federal Rule 34 requires Local 556 to produce all of the documents in the union's possession, custody, and control, *wherever located*.

"Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a non-party to the action." *Harper v. City of Dallas*, No. 3:14-cv-2647-M, 2017 WL 3674830, at *17 (N.D. Tex. Aug. 25, 2017) (citation omitted). A party has legal control over documents in the possession of its agents. *See First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, Civ. No. 15-638, 2017 WL 2267149 (E.D. La. May 24, 2017).

Accordingly, Local 556 violated the Federal Rules by refusing to produce documents located outside its "executive office," such as documents its Executive Board members or other union agents keep at another location. Local 556 also violated the rules by refusing to produce documents held by its agents who are not Executive Board Members, like its stewards, employees, and other representatives who might not technically be Executive Board officers or work within "Local 556's

17

executive office," but who likely have responsive information and documents. (e.g., Local 556 officials on the Working Women's Committee, Civil and Human Rights Committee, Committee on Political Education). Thus, the Court should overrule Local 556's objections to RFP 23 and Interrogatory 2 and order it to produce documents possessed by any union agent wherever located.

### 6. *RFP 19: Union support for Planned Parenthood-sponsored Women's March*

Carter's RFP 19 seeks Local 556 information related to the union's financial expenditures funding union participation in the January 2017 Planned Parenthood-sponsored Women's March. (App. 10). Local 556 objects that RFP 19 is overbroad and unduly burdensome because it "seeks Unions [sic] expenditures and its 'members' involvement in the 'Women's March on Washington, D.C.,'" information which the union characterizes as "related to non-parties and members in their individual capacities." (App. 40). But RFP 19 only seeks information regarding *Local 556*'s support for union participation in the Women's March, not ordinary members' independent financial support for those causes. This discovery request probes the union's purpose for attending the Women's March, its support for Planned Parenthood, and its requirement that employees support its ideological causes, which are facts directly relevant to Carter's religious discrimination and retaliation claims, and it seeks discovery of union animus towards those opposing its ideological causes. (FAC, ¶¶84-88, 94-96, 99, 103-122).

### B. "Vague and ambiguous" and "time limitation" objections

### 1. *RFPs 21 and 22: "Religious beliefs, views, and practices" are not vague terms and did not justify the union's withholding all responsive information.*

The Court should overrule Local 556's "vague and ambiguous" and other objections to RFPs 21 and 22, and Interrogatory 3. Carter's RFP 21 seeks Local 556's documents and communications regarding employees' complaints concerning religious beliefs, views, and practices, while RFP 22 seeks information related to religious accommodation requests. (Apps. 10-11). Local 556 objects

18

that RFPs 21 and 22 are "vague and ambiguous with respect to the terms 'complaint' and 'religious beliefs, views, or practices.'" (Apps. 26-27).

First, the Court should overrule Local 556's objection for RFP 22 because it does not even use these terms. (Apps. 26-27). Second, "complaint" and "religious beliefs, views, and practices" have plain meaning. Responding parties "should exercise reason and common sense to attribute ordinary definitions to terms and phrases" and "[i]f a party believes that the request is vague, that party should attempt to obtain clarification prior to objecting on this ground." *Heller*, 303 F.R.D. at 491-92 (citations and punctuation omitted). "A party objecting on [vagueness and ambiguity] grounds must explain the specific and particular way in which a request is vague." *Id.* at 491. (citation and punctuation omitted).

To the extent that Local 556 believed that RFP 21 was vague, it should have "attempt[ed] to obtain clarification prior to objecting," or responded based on reasonable definitions of those terms. *See Heller*, 303 F.R.D. at 492 (quoting *Consumer Elecs.' Ass'n v. Compras & Buys Magazine, Inc.*, 2008 WL 4327253, at *2 (S.D. Fla. Sept. 18, 2008)). During the July 9 telephone call, the union indicated that it could produce documents responsive to this request. (App. 56). But, despite the phone call, Local 556 did not alter its objections in its Amended Responses, and never responded to subsequent attempts to clarify the union's position.

For RFPs 21 and 22, Local 556 also objects that the requests are "not reasonably limited with respect to time insofar as [they seek] documents dating from 2012." (Apps. 26-27). Yet, Carter's request only seeks historical information for the five years up to her termination. That is reasonable given Carter's burden to evaluate discriminatory animus and any history of religious discrimination. Notably, Local 556 does not object to any of Carter's other requests seeking five years for other documents. (Apps. 35-36, 37-38, 40). In fact, Local 556 acknowledged that five

years is reasonable by affirmatively offering to produce documents for RFP 23 from 2012. (App. 40). Local 556's objection does not justify the extreme of withholding all information.

**2. *Interrogatory 3: The definition of "Local 556" excludes ordinary union members*.**

Carter's Interrogatory 3 asks the union to identify employees whose social media activities "Local 556" reported. (App. 18). Local 556 objects to Interrogatory 3 on vagueness grounds, arguing that the request "combine[s] Southwest employees who are simply [Local 556] members … with the Union itself as a governing body." (App. 44).

This is false. Carter specifically defined "Local 556," and excluded ordinary members. (Apps. 4 ¶7; 16 ¶9); *see also supra* at 17. Local 556's vagueness objection attempts to create confusion where there is none, and is merely a pretext for withholding information. While Local 556 responded that the union "*as an entity*, has not reported any of its members" for social media violations, this says nothing about whether the union's officers, stewards, employees, representatives, agents, or intermediaries, made such reports; or whether the union "as an entity" reported *nonmembers*' social media activities, all crucial issues in the case. (App. 44).

**C. Local 556's "subject to and without waiving objections" waived any objections beyond those specifically set forth and explained in the union's responses.**

The Court should rule that Local 556 responses made "subject to and without waiving objections," waived all objections to RFPs 1-13, 15, 18-20, 23-24, and Interrogatories 1-2, that are not specifically set forth and explained in the union's responses. The Federal Rules prohibit responding to a discovery request "subject to and without waiving objections" to preserve future or unspecified objections. *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469-70 (N.D. Tex. 2015); *Heller*, 303 F.R.D. at 487 ("[S]uch objection and answer . . . serves only to waste the time and resources of both the Parties and the Court." (quoting *Consumer Elecs.*, 2008 WL 4327253, at *3)).

20

Rules 33(b)(3) and 34(b) are "structured . . . so that . . . both the requesting party and the court may be assured that *all* responsive, non-privileged materials are being produced, except to the extent a valid objection has been made." *Heller*, 303 F.R.D. at 487. (emphasis in original). Such objections are "manifestly confusing (at best) and misleading (at worse)," and leave the "requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be." *Carr*, 312 F.R.D. at 469 (quoting *Heller*, 303 F.R.D. at 487) (internal quotation marks omitted).

Yet Local 556 uses the "[s]ubject to and without waiving objections" refrain for RFPs 1-13, 15, 18-20, 23-24, and Interrogatories 1-2. (Apps. 22-23, 35-40, 43-44). It is unclear whether and to what extent the union is withholding (or will withhold) documents and responses based on these phantom objections. Local 556 has disregarded repeated requests to explain whether and to what extent it is withholding responsive information based on its objections. (Apps. 61, 69-70).

Not only should the Court order Local 556 to produce documents withheld based on its meritless objections (*see supra* at 14-20), but it should also order the union to produce any information it is withholding (or might withhold) for any objection to RFPs 1-13, 15, 18-20, 23-25, and Interrogatories 1-2, beyond those specifically set forth and explained in its responses.

### III. Local 556's discovery responses are deficient under Fed. R. Civ. P. Rules 33 and 34 because they failed to identify responsive documents by name or bates number.

The Court should order Local 556 to supplement its responses to RFPs 1-15, 18-20, and 23-24, and Interrogatories 1-2, in order to identify by name or bates number which specific documents produced are responsive to each request. (Apps. 21-28, 34-45). Federal Rules of Civil Procedure 33 and 34 require responding parties "to point to specific documents, by name or bates number," when producing documents for a request. *See State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-cv-2255-L, 2018 WL 3548866, at *3 (N.D. Tex. July 24, 2018) (citation and internal

punctuation omitted); *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *9 (N.D. Tex. May 25, 2016) (holding that interrogatory answers specifying records must also comply).[23]

None of Local 556's responses identifies specific documents by citing document names or bates numbers. Local 556 has failed to cure this deficiency despite Carter's repeated requests. (Apps. 61, 65, 69). This omission exacerbated confusion and caused delay. Without any specific reference to which documents are responsive to her various requests, Carter cannot determine how Local 556's documents address her Interrogatories and Requests for Production (if at all). The Court should order Local 556 to supplement its responses with citations to the specific documents responsive to each of Carter's Discovery Requests by names or bates number, and to adhere to this practice for future responses and productions.

## IV. Local 556 failed to produce other documents in its possession, including those subject to the November 5, 2019 Protective Order, and sign interrogatories under oath.

The Court should order Local 556 to produce documents subject to the November 5, 2019, protective order. (ECF 85). Local 556 demanded a protective order on June 17, 2019, and withheld documents for months representing that it could not produce certain sensitive information without the order. (Apps. 51-54, 56, 60). *See also* Apps. 51, 57, 58 (indicating on June 17, July 23, and July 25, 2019, that the union will have documents ready to produce after entry of a protective order.). Nevertheless, Local 556 committed to producing additional documents for RFPs 1, 2, 9, 10, 12, 13, and 15, after the entry of a protective order. (Apps. 22-23, 35-39, 51, 60). Yet even

---

[23] "[T]he Federal Rules entitle parties to 'rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests.'" *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-cv-00023, 2012 WL 6726412, at *2 (W.D. Va. Dec. 27, 2012) (citing *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011)).

after the Court entered the parties' stipulated protective order more than six months ago (November 5, 2019 (ECF 85)), the union has not produced a single document.

Additionally, as far back as their August 27, 2019, phone call, Local 556 indicated that it had other discovery ready to produce and would begin sending additional documents within a week. (App. 64).  Subsequently, on September 23, 2019, Local 556's attorneys again promised to produce those documents within a week. (App. 67). But Local 556 never produced these documents.

Finally, Local 556's Original and Amended Responses to Interrogatories failed to comply with Fed. R. Civ. P. 33(b) because they were not made "under oath." *See* Fed. R. Civ. P. 33(b); *see also Apollo MedFlight*, No. 2:18-CV-166-Z-BR, 2020 WL 520608, at *5 n.4. (Apps. 32-33, 44-45). Carter cannot rely on these responses moving forward.

### V.  Local 556 should pay attorneys' fees and expenses

This Court should require Local 556 to pay fees and expenses for forcing Carter to file this Motion. When a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party … whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37 (a)(5)(A); *see also Washington v. M. Hanna Constr. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Local 556 should pay fees and expenses for not adhering to its obligations under the Federal Rules. "Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests." *McLeod*, 894 F.2d at 1486. Local 556 delayed the case for several months and violated the Federal Rules by:

- Not serving a valid privilege log despite repeated requests.

- Not clarifying the scope of its objections and the extent it was withholding documents, and answering other basic questions.

- Not supplementing its responses with citations to the documents that it has produced.

- Not serving documents in its possession despite repeated promises over the last nine months (since August 2019) to do so.

- Not producing documents for which it demanded a protective order despite this Court's entry of the stipulated protective order over six months ago.

These tactics exploited Carter's duty to work diligently to resolve discovery disputes without court intervention. Its failures to follow through also prevented Carter from continuing with discovery (e.g., scheduling depositions). The Court should order Local 556 to pay attorneys' fees and expenses incurred in making this motion.

## CONCLUSION

For the foregoing reasons, Carter requests that the Court grant her Motion to Compel Discovery as requested herein and in the accompanying Motion.

Dated: May 14, 2020                    Respectfully submitted,

s/ Jason E. Winford (*with permission*)
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
 Dallas, Texas 75209
Tel: 214-378-6655
Fax: 214-378-6680

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings (*admitted pro hac vice*)
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense

24

Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

*Attorneys for Plaintiff Charlene Carter*

**Certificate of Conference**

I hereby certify that Plaintiff's counsel, Matthew B. Gilliam, conferred with counsel for Defendant Transport Workers Union of America Local 556, Ed Cloutman on February 28, 2020, and Adam Greenfield on May 14, 2020, and with both attorneys on numerous prior occasions since June 2019. Due to the lack of timely response from counsel for Defendant Local 556, the issues raised herein could not be resolved. On May 14, 2020, Local 5556 counsel Adam Greenfield indicated that the motion to compel would be opposed.

s/ Matthew B. Gilliam

**Certificate of Service**

I hereby certify that on May 14, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam