IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § § § | |
| Plaintiff, | § | Civil Action No. 03:17-cv-02278-S |
| v. | § § | |
| SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA LOCAL 556, | § § § § | |
| Defendants. | § § | |

**DEFENDANT SOUTHWEST AIRLINES CO.'S APPENDIX IN SUPPORT OF REPLY IN SUPPORT OF EMERGENCY MOTION AND REQUEST FOR SANCTIONS**

## APPENDIX OF EXHIBITS

Exhibit A   Supplemental Declaration of Audrey Stone …………......……..………..   App. 1

Exhibit B   Supplemental Declaration of Michael Correll ……………………………   App. 8

Dated:  July 21, 2020                     Respectfully submitted,

*/s/ Michael A. Correll*
Michael A. Correll
State Bar No. 24069537
**REED SMITH LLP**
2501 N. Harwood Street
Suite 1700
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
Email: mcorrell@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served upon all counsel of record via the Court's ECF System on this 21st day of July, 2020.

*/s/ Michael A. Correll*
Michael A. Correll

1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 03:17-cv-02278-S |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA LOCAL 556, | § | |
| | § | |
| Defendants. | § | |

**SUPPLEMENTAL DECLARATION OF AUDREY STONE**

1. My name is Audrey Stone, I am over the age of 21, of sound mind, and capable of making this declaration. The facts stated herein are true and correct and are based on my personal knowledge.

2. I work for Southwest Airlines Co. ("Southwest"). Currently, I am a flight attendant based in Baltimore, Maryland. I reside in Tampa, Florida. I previously served as the president of Transport Workers Union of America Local 556 ("TWU 556").

3. I have reviewed the declarations submitted by Plaintiff Charlene Carter ("Carter") and Attorney Matthew Gilliam ("Gilliam") in response to Southwest's Emergency Motion and Request for Sanctions.

4. Based on my review, Carter and Gilliam's explanations cannot be true. Instead, the declarations reveal that Carter and Gilliam have engaged in a much bigger effort to invade my privacy and harass me by tracking even more of my personal data through Southwest's systems.

5. First, I was shocked by the specific dates that Gilliam contends he attempted to serve me at my home in Tampa, Florida. I travel frequently given my work. Yet Gilliam managed to

identify three specific days out of the entire month that I had notified Southwest that I could not work because I needed to use sick leave.

6. I assume that Gilliam guessed that I would be at home if I was sick. However, I used my sick time to see multiple physicians, including some out-of-state. As a result, I was not home at the times Gilliam alleged he sent the process server to my home.

7. I did not know until receiving Gilliam's declaration that anyone had attempted to serve me at my home.

8. The fact that Gilliam managed to send the process server to my home on the exact three occasions that I had elected to take sick time during this period tells me that Gilliam has been tracking my movements through Southwest systems.

9. This fact is even more alarming to me given Carter's declaration to the Court. Carter has told the Court that she first got access to my travel information after June 25, 2020. However, these attempts at service indicate that Gilliam had access to my information before Carter claims she received it.

10. I do not believe Carter's story in her declaration and neither should the Court. It defies belief that—at the exact same time that Carter's attorney was trying to serve me—she randomly received a call from a flight attendant on June 25, 2020, asked about my base, and, some days later, received a full copy of my protected travel information. This story does not make sense for a lot reasons.

11. Getting my flight information took serious effort. Carter's suggestion that travel information is printed out and left lying around the flight attendant bases is not true. I have been a flight attendant with Southwest for sixteen years. I have never observed my flight attendant travel information lying around in any Southwest location. Additionally, for the past several

years, almost all Southwest flight attendants have relied on portable apps to access their flight information while travelling. As a result, flight attendants generally have no reason today to print out—much less leave lying around—flight information.

12. Additionally, I have confirmed that neither I nor my fellow crew members printed out our travel information on this trip.

13. Despite her misstatements, Carter's declaration makes clear to me what likely happened. Carter did not just casually ask for my base information. She needed my base information to engage in deep and time-consuming tracking to find my trip information.

14. Within the Southwest system, a flight attendant can pull a copy of what is called the Crew on Flight report for daily departures ("Crew on Flight Report"). If a flight attendant selects a day and an airport in the search fields, the system will provide the name of every flight attendant travelling through the airport that day along with their flight attendant pairing number for the trip and the names of their fellow crew members.

15. Carter apparently wanted my base information so she could track the Crew on Flight Report at the airport where I was most likely to be travelling on any given day.

16. In this case, someone would have had to search the Baltimore Crew on Flight Report for June 30, 2020 to find me. Further, they would have had to run that search between June 28, 2020 and July 1, 2020 given that I only traded into that trip on June 28, 2020.

17. This fact scares me. It suggests that someone acting at Carter's behest was running the Baltimore Crew on Flight Report daily every day for some period of time.

18. Importantly, the Crew on Flight Report would not reveal the details necessary to find me at my hotel in New Mexico and serve me in the middle of the night. Getting those details would take additional, focused effort.

3

19.     With most flight attendants, a user could just pull a given flight attendant's information once the flight attendant was located on the Crew on Flight Report.  However, as I stated in my prior declaration, my information is subject to extra protections at my request because of the threats and harassment I received during my time as president of TWU 556, including the abuse I received from Carter herself.

20.     As a result, once a user found me on the Crew on Flight Report, they would have to take one of two extra steps to get my full travel itinerary and hotel information.  First, the user could attempt to access the travel information of my fellow crew members since I travel with them and stay at the same hotel.  I know for a fact that my fellow crew members on this trip did not have this information protected to the same extent as my information.

21.     Second, the user could take the flight attendant pairing number and pull the details for the entire pairing for the entire crew.

22.     Neither of these options is easy or straightforward.  I cannot imagine that a flight attendant would—as Carter suggests—go through the computer system to pull this information at great effort without even the slightest request.

23.     Carter could also have had someone who observed me in any airport run the Crew on Flight Report and go through this same complicated process to find my location.

24.     Carter and Gilliam's declarations make me even more afraid now than I was before. They clearly had access to information about my whereabouts both when they tried to serve me at home while I was out on sick call, and they clearly used extraordinary efforts to track me down and serve me in my hotel while I was working.  I have felt unable to work since Gilliam and Carter sent that armed man to my hotel room.  I am afraid to work, because once I am "on the clock" for Southwest Airlines, whoever is stalking me can continue to monitor my

4

whereabouts, both in airports and my hotel overnights. I have missed several trips as a result, because my safety and security has been violated. I do not know that I can feel safe again and able to work until I know for certain how Gilliam and Carter were able to send that armed man to my hotel room.

[INTENTIONALLY LEFT BLANK]

My name is Audrey Stone, and I was born in October 1977, and reside in Tampa, Florida. I declare under penalty of perjury that the foregoing is true and correct.

Signed on July 21, 2020.

                                                              Audrey Stone (Jul 21, 2020 10:49 PDT)
                                                              Audrey Stone

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLENE CARTER, § § § | |
| Plaintiff, § | Civil Action No. 03:17-cv-02278-S |
| v. § § | |
| SOUTHWEST AIRLINES CO., AND § TRANSPORT WORKERS UNION § OF AMERICA LOCAL 556, § § | |
| Defendants. § | |

### SUPPLEMENTAL DECLARATION OF MICHAEL CORRELL

1.  My name is Michael Correll, I am over the age of 21, of sound mind, and capable of making this declaration. The facts stated herein are true and correct and are based on my personal knowledge.

2.  I am a partner with law firm Reed Smith, LLP. I represent Southwest Airlines Co. ("Southwest") in the above-styled lawsuit.

3.  In his declaration, Matthew Gilliam ("Gilliam") states that I informed him that Southwest could identify the person who had stolen Audrey Stone's ("Stone") travel information. I did not make that representation.

4.  I represented to Gilliam that Southwest was investigating to determine *if* it could identify the person or persons who accessed Stone's travel information.

5.  Subsequent to that conversation, Southwest has engaged in detailed and thorough efforts to identify the person or persons responsible for misappropriating Southwest's data. Southwest's efforts have proven unsuccessful.

6.  Among the major obstacles, Southwest has learned, as detailed in Audrey Stone's

supplemental declaration based on Carter's response declaration, that the information may have been taken in a way to avoid detection.

7.  It is my understanding that if Gilliam and Carter are not required to disclose the information requested in Southwest's motion, then Southwest will be unable to secure its database against further intrusions by Gilliam and Carter.

[INTENTIONALLY LEFT BLANK]

**App. 010**

My name is Michael Correll, my date of birth is December 15, 1983, and my address is 421 Allison Drive, Dallas, Texas, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on the 21st day of July, 2020.

_____
Michael Correll