**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division**

| | |
|---|---|
| CHARLENE CARTER,<br><br>        Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>        Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S SUR-REPLY TO SOUTHWEST'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION AND REQUEST FOR SANCTIONS** |

    Plaintiff Charlene Carter files this brief sur-reply to correct a new misleading factual allegation that Southwest Airlines Co. raised for the first time in its Reply. The Court may consider new evidence to correct the misleading portrayal of factual information. *See Woods v. Peters*, No. 4:05-cv-724-Y, 2007 WL 2729905, at *6 n.4 (N.D. Tex. Sept. 19, 2007). Southwest acknowledges that its Reply and supporting declarations contained new evidence. SWA Reply Br. 3 n.2. Therefore, the Court should likewise permit Carter to respond to Southwest's new assertions.

    Despite Carter's and Gilliam's declarations to the contrary, Southwest doubles down on speculation that they somehow infiltrated the company's systems to obtain Stone's work schedule. SWA Reply 3. Southwest now says that Gilliam and Carter must have received information regarding Stone's work schedule before June 25, 2020, because S & W Process Service had attempted to serve Stone at her Tampa residence when she was on sick leave. SWA Reply 3.

    To the contrary, neither Gilliam nor Carter had any information regarding Stone's schedule before June 25, 2020, and did not know whether she was sick or on sick leave. (App. 4, ¶ 5); (App. 1, ¶ 4). Carter's process server, S & W Process Service, decided when to attempt service on Stone's

1

residence, and picked the dates on its own. (App. 4, ¶ 7). Gilliam did not give S & W Process Service any instructions or suggestions for the dates of service apart from saying that the subpoena must be served on or after June 19, 2020, which was the date listed on the subpoena.[1] (App. 4, ¶¶ 6, 7). Apart from knowing that S & W Process Service failed to serve Stone on June 19, Gilliam did not know the other dates when attempts were made until after the third failed attempt. (App. 4, ¶ 8).

After Carter received Stone's trip information that was used to serve Stone in Albuquerque, neither Carter nor her counsel received any new or additional information regarding Stone's schedule. (ECF 105-3, p.3 ¶ 7; ECF 105-4, p.3, ¶¶ 6-11). Thus, Southwest's and Stone's concerns about Carter and Gilliam knowing Stone's schedule in the future, as well as her purported fears of continuing "intimidation" and "harassment" are wholly unwarranted. SWA Reply 4; (ECF 107 pp.4, 7-8, ¶¶ 4, 24). Carter used information about Stone's whereabouts solely for the lawful purposes of serving Stone with a subpoena, after earlier attempts at service were unsuccessful. Carter Resp. 2, 9. Not only has Stone been served with the subpoena, but, on July 20, 2020, Stone responded and produced documents. (Apps. 6, 9-10). Indeed, Stone through her newfound counsel, responded to the subpoena, raising no objection to the manner of service, and seeking neither to quash the Subpoena nor a protective order. (Apps. 6, 8-9).

---

[1] Gilliam gave that instruction because that was the date listed on the subpoena, which was noticed to Southwest and Local 556 on June 12, 2020. (ECF 102, p.4); (ECF 105-2, p.2). June 12 was simply the day after Gilliam had completed all of the necessary paperwork for the subpoena. (App. 4, ¶ 6). Gilliam had no information about Stone's schedule prior to June 25. (App. 4, ¶ 5). Further, Carter first sought Stone's documents from TWU Local 556 and filed a motion to compel on May 14, 2020 (ECF 93). When Local 556 would not produce documents that Stone possessed in her personal capacity, the next logical step in the discovery process was to serve a non-party subpoena on Stone.

In sum, Southwest's "emergency' Motion for Sanctions attempts to gain an unfair advantage in the litigation by trying to deprive Carter of her selected counsel and by seeking unwarranted sanctions against an opposing counsel based on unsupported accusations of impropriety. Seeking sanctions and asking to remove opposing counsel from a case is a serious matter, one that should be based on concrete factual evidence of clearly improper conduct, and not on the kind of uncorroborated speculation that Southwest relies on. The Court should not countenance Southwest's attempts to gain such an unfair advantage here.

## CONCLUSION

For the foregoing reasons the Court should deny Southwest's motion, and award Carter reasonable attorneys' fees.

Dated: July 24, 2020                    Respectfully submitted,

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings (*admitted pro hac vice*)
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

s/ Jason E. Winford (*with permission*)
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
Dallas, Texas 75209
Tel: 214-378-6675

Fax: 214-378-6680

*Attorneys for Plaintiff Charlene Carter*

**Certificate of Service**

I hereby certify that on July 24, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam