# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER, <br><br>         Plaintiff, <br><br> V. <br><br> SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, <br><br>         Defendants. | Civil Case No. 3:17-cv-02278-X <br><br><br> **PLAINTIFF CHARLENE CARTER'S BRIEF SUPPORTING HER RENEWED MOTION TO COMPEL DISCOVERY FROM DEFENDANT TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556** |

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

SUMMARY OF FACTS ........................................................................................ 1

ARGUMENT .......................................................................................................... 5

I.   The Court should order Local 556 to produce all responsive information in the
     union's possession, custody, or control wherever kept for all of Carter's
     Discovery Requests ......................................................................................... 5

II.  Local 556's privilege log remains deficient .................................................... 7

    A.  Local 556's amended privilege log does not provide information for each
         document withheld ..................................................................................... 8

    B.  Local 556's amended privilege log fails to identify specific authors and recipients ......... 10

    C.  Local 556's amended privilege log does not give an adequate explanation
         of each document's contents ..................................................................... 11

    D.  Local 556's amended privilege log excludes all of the documents for which it
         asserted work product privilege ................................................................ 16

    E.  The Court should order Local 556 to cure the deficiencies in its amended privilege log
         or find that the union has waived its privileges ....................................... 17

CONCLUSION ....................................................................................................... 18

i

**TABLE OF AUTHORITIES**

Page(s)

## CASES

*Blackard v. Hercules, Inc.*,
No. 2:12-cv-175-KS-MTP, 2014 WL 2515197 (S.D. Miss. June 4, 2014) ..................................18

*Cashman Equip. Corp. v. Rozel Operating Co.*,
CA No. 08-363-C-M2, 2009 ML 2487984 (M.D. La. Aug. 11, 2009).........................................18

*Chemtech Royalty Assocs., L.P. v. United States*,
No. 06-258-RET-DLD, 2009 WL 854358 (M.D. La. Mar. 30, 2009)....................................10, 11

*Cole v. Collier*,
No. 4:14-CV-1968, 2020 WL 2813454 (S.D. Tex. May 28, 2020)........................................11, 12

*E.E.O.C. v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) ................................................................................................... *passim*

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
No. 13-373-SDD-EWD, 2018 WL 326504 (M.D. La. Jan. 8, 2018)..........................10, 11, 13, 17

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*,
Civ. No. 15-638, 2017 WL 2267149 (E.D. La. May 24, 2017)..................................................5, 6

*Grossman v. Schwarz*,
125 F.R.D. 376 (S.D.N.Y. 1989) ..................................................................................................16

*Harper v. City of Dallas*,
No. 3:14-cv-2647-M, 2017 WL 3674830 (N.D. Tex. Aug. 25, 2017) ...........................................5

*In re Gen. Instrument Corp. Sec. Litig.*,
190 F.R.D. 527 (N.D. Ill. 2000)....................................................................................................12

*Interphase Corp. v. Rockwell Int'l Corp.*,
No. 3-96-CV-0290-L, 1998 WL 664969 (N.D. Tex. Sept. 22, 1998) ...........................................13

*Mfrs. Collection Co., LLC v. Precision Airmotive, LLC*,
No. 3:12-cv-853-L, 2014 WL 2558888 (N.D. Tex. June 6, 2014) ..................................................9

*Montebello Rose Co. v. Agric. Lab. Rels. Bd.*,
119 Cal. App. 3d 1 (1981) .............................................................................................................13

*National Football League Mgmt. Council*,
309 N.L.R.B. 78 (1992) .................................................................................................................13

*NLRB v. Interbake Foods, LLC*,
637 F.3d. 492 (4th Cir. 2011) ........................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

*Orchestrate HR, Inc. v. Trombetta*,
178 F. Supp. 3d 476 (N.D. Tex. 2016) .............................................................................2

*Perez v. Mueller*,
No. 13-CV-1302-PP, 2016 WL 5372811 (E.D. Wis. Sept. 26, 2016) ............................8

*Robinson v. Texas Auto. Dealers Ass'n*,
214 F.R.D. 432 (E.D. Tex. 2003)..................................................................................18

*Spivey v. Zant*,
683 F.2d 881 (5th Cir. 1982) .......................................................................................15

*United States v. Louisiana*,
No. 11-470, 2015 WL 4619561 (M.D. La. July 31, 2015) ..........................................15

*United States v. Robinson*,
121 F.3d 971 (5th Cir. 1997) .......................................................................................12

*Wanzer v. Town of Plainville*,
No. 3:15-CV-00016 (AWT), 2016 WL 1258456 (D. Conn. Mar. 30, 2016) ...............13

*XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*,
No. 12-2071, 2014 WL 295053 (E.D. La. Jan. 27, 2014)............................................10

## RULES & STATUTES

Fed. R. Civ. P. 26(b)(5)................................................................................................11

Fed. R. Civ. P. 34 ..........................................................................................................5

iii

## INTRODUCTION

Plaintiff Charlene Carter renews her May 14, 2020 Motion to Compel (ECF 93) because

Defendant Transport Workers Union of America Local 556 has not complied with this Court's

Discovery Order (ECF 99) in two ways:

- Local 556 has not searched for responsive information in the union's possession, custody, or control, wherever located despite the Court's Order; and

- Local 556's August 3, 2020 privilege log remains deficient

## SUMMARY OF FACTS

The Court's June 23 Discovery Order (ECF 99) ordered Local 556 to serve Carter with an

amended privilege log by July 31, 2020, and provided that Carter may renew her Motion to Compel

challenging Local 556's privilege claims. Order 2-3. The Discovery Order required Local 556 to

provide responsive documents for RFP 11 and Interrogatories 1-2, in the union's possession,

custody, and control, wherever located, or state that there are no such documents. Order 4. The

Court's Order also required Carter and Local 556 to meaningfully confer by August 14, 2020,

regarding issues involving RFPs 9, 10, 13, 18, 19, 21-23, and Interrogatory 3. Order 3-4.

Following the Discovery Order, Carter and Local 556 conferred by telephone on July 1, July

28, and August 7, and discussed those discovery issues related to the Court's Order and Carter's

Motion to Compel. On July 1, 2020, Carter's counsel, Matthew B. Gilliam, and Jeffrey D.

Jennings, met with Local 556's attorney, Adam S. Greenfield via telephone. With particular

relevance to this present motion, they discussed RFP 23 and Interrogatory 2, and the union's

obligation to search and produce information in the union's possession, custody, or control,

wherever located, including union information kept outside of the union office, by union officers,

stewards, employees, representatives, and agents, from sources such as personal emails and other electronic devices. *See* Br. 17-18.[1]

Despite Carter's Motion to Compel and the Court's Order, Greenfield indicated during their July 1, 2020, call that Local 556 would not search or produce any information from outside of the executive office or internal union emails, for any Discovery Request. Local 556 never previously raised objections to producing information outside of the union office for any request apart from RFP 23 and Interrogatory 2. Br. 17-18; Resp. 7-8; (ECF 94-5) (ECF 94-6). For RFP 11 and Interrogatories 1-2, the Court had already ordered Local 556 to "either provide responsive documents in its possession, custody, and control—wherever they may be, or state that there are no such documents." Order 4. Greenfield indicated on July 1, 2020, that he had not asked Local 556 to provide information outside of the union office. He also indicated that he was not certain about the full scope of the union's search, but he said that he would investigate and advise Gilliam about the search the union had conducted.

On July 28, 2020, Gilliam, Jennings, and Greenfield, conducted another teleconference. Greenfield confirmed that the union searched for information on union email accounts and in the union office, and that they had not searched beyond those sources, such as on personal emails and devices. Greenfield also suggested that searching union officials and representatives' personal emails and devices was not appropriate because it is not in the union's possession, custody, and

---

[1] Carter's Motion to Compel opposed Local 556's objections to RFPs 23 and Interrogatory 2, and Local 556 waived them by failing to address them in its response. Reply 7-8; *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) ("[A] party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of his objection to a request, and, if he does not, he waives the objection."). Carter's Motion to Compel sought information in Local 556's possession, custody, and control, kept by union officers and representatives outside of the union's executive office by its agents *wherever located*. Br. 17-18. Carter's RFP Instruction 1 and Interrogatory Instruction 2 also explained that Local 556 should produce information in its possession, custody, and control, wherever located. *See* Br. 3 n.2. Carter had started inquiring whether Local 556 was searching and producing information from these sources by August 13, 2019. (ECF 94-8, p.13).

control. But Greenfield said that he would give Gilliam and Jennings an answer by Monday, August 3, as to whether Local 556 would search and produce information from sources outside of the office, such as people's personal email accounts and devices.

During the July 28, 2020 call, Gilliam also suggested that Local 556 had documents in its possession, custody, and control that it should have produced based on the Court's order to produce all documents for which the union asserted its "privacy and confidentiality" objection. Local 556 had asserted that objection to withhold *union* information kept by former Local 556 President Audrey Stone, claiming that such union information fell within some zone of "personal capacity." Br. 12-13; (ECF 94-5, pp.4, 7, 8). Local 556 had not even searched for union information kept by executive board members outside of the union office, but Stone's responses to a Rule 45 non-party subpoena indicated that she did have union information in her former official capacity as union president.[2] (Apps. 2-3, ¶ 4) (Apps. 3-6, Stone RFPs 1-6). Greenfield indicated that he would look into the issue and get back with Gilliam and Jennings.

On August 3, 2020, Local 556 served Carter with an amended privilege log. (Apps. 9-15). During their August 7, 2020 conversation, Gilliam talked to Greenfield about his concerns with Local 556's amended privilege log, including the failure to provide entries for each document withheld, the exclusion of work product documents, the omission of first and last names of authors

---

[2] Local 556's Amended Responses asserted that it would only produce union information falling within officers' and representatives' "official capacities," but not their "personal capacities," which meant that the union would only produce information within its executive offices and on union email accounts. Br. 3, 13, 17; (ECF 94-5, pp. 4, 7, 8); (ECF 94-6, p.4). Previously, Local 556 had asserted that it would only produce documents possessed by union officers and representatives in their "official capacity." Therefore, Carter had served a subpoena duces tecum on former Local 556 President Audrey Stone seeking various different documents that she possessed in her "personal capacity." (Apps. 1-8). On July 20, 2020, Stone served responses to a subpoena duces tecum requesting various responsive documents. *Id.* Stone stated that she "has held a union position throughout the duration of the document request period," and that "[t]o the extent the requests seek information and documents from [Stone] in her union capacity (as opposed to her individual capacity) such requests seek core union communications between union members and their union representative regarding their personal union grievances and work-related questions." (Apps. 2-3). Thus, Stone refused to "divulge private union communications." (App. 3).

3

and recipients and the bates numbered columns, and the inadequate explanations of documents' contents.

Seeking to resolve as many issues as possible before the August 14 deadline to renew her Motion to Compel over the privilege log issues, Carter sought and received an extension to August 21 to file her motion (ECF 119). Neither Greenfield nor Cloutman responded to Gilliam's August 10 or August 11 emails regarding ongoing discovery discussions until August 19—two days before the deadline for Carter to file her motion.[3] This was also after Gilliam emailed Greenfield and Cloutman, and left Greenfield a voicemail on August 18.

Gilliam and Greenfield talked again on August 20, 2020. Greenfield indicated that he had issued a formal request to Local 556 to start searching the personal devices and email accounts of its past and present executive board members. Greenfield also indicated that he would include working women's committee members, and look into adding union employees in those searches. But he did not produce any such documents, and did not indicate when they would be produced.

Greenfield also indicated that Local 556 did not have to list each individual document it claimed Work Product protection for on the amended privilege log because those documents had been submitted for in camera review. Gilliam also told Greenfield that all of the entries on the privilege log needed to provide a more detailed explanation of the documents' contents. He also reiterated his concern that entries omitted the first and last names of authors and recipients.

## ARGUMENT

Carter's Renewed Motion to Compel addresses two issues that are unresolved. First, for all of Carter's Discovery Requests, Local 556 refuses to produce responsive information in the union's

---

[3] Cloutman did respond to Gilliam's August 12, 2020 phone call and conferred with Gilliam regarding Carter's unopposed motion for extension of time to file the renewed motion to compel. (ECF 117, p.4). But Gilliam, Jennings, and Greenfield had been discussing the discovery issues.

possession, custody, or control, wherever located, including information kept by union executive board members, employees, and working women's committee members, on their personal email accounts and electronic devices. Second, Local 556's August 3, 2020 privilege log remains deficient.

## I.   The Court should order Local 556 to produce all responsive information in the union's possession, custody, or control wherever kept for all of Carter's Discovery Requests.

1.   The Court should order Local 556 to comply with the Discovery Order, and produce information responsive to RFP 11 and Interrogatories 1-2 in the possession, custody, or control of its agents wherever it may be, and further order Local 556 to produce the same for all of Carter's Discovery Requests, including information kept by union executive board members, employees, and working women's committee members on personal email accounts and electronic devices.

Federal Rule 34 requires a party to produce documents in its possession, custody, or control, including those where the party has the legal right or practical ability to obtain the materials from a non-party to the action. *Harper v. City of Dallas*, No. 3:14-cv-2647-M, 2017 WL 3674830, at *17 (N.D. Tex. Aug. 25, 2017) (citation omitted). A party has legal control over documents in the possession of its agents. *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, Civ. No. 15-638, 2017 WL 2267149, at *3 (E.D. La. May 24, 2017) ("Because a … business entity may act only through the persons connected with it, possession, custody, or control includes that exercised by the party's employees, agents, and managers."). Control includes a party's legal right to obtain a document even though it has no copy. *See e.g., id.* (citations omitted).

This Court has already ordered Local 556 to supplement its answer to RFP 11 and Interrogatories 1 and 2, and "either provide responsive documents in its possession, custody, and control—wherever they may be, or state that there are no such documents." Order 4. A party's obligation to search and produce materials in the possession, custody, or control of its employees

and agents applies to all sources reasonably likely to contain responsive documents, including electronically stored information. *See First Am. Bankcard*, 2017 WL 2267149, at \*2-3.

Not only did Local 556 fail to produce responsive information outside of the union's executive office for RFPs 11, 23, and Interrogatories 1-2, but, Carter's communications with Local 556 reveal that the union did not even ask executive board members to search personal emails and electronic devices until earlier this month, after Gilliam's and Greenfield's August 7, 2020 conference call. *See supra* at 4.

As of the date of this motion, the union has not produced responsive information "wherever located" for Carter's Discovery Requests, including for sources kept outside of union offices by former executive board members on their personal email accounts and electronic devices. Therefore, the Court should rule that this same obligation to search and produce responsive information in the union's possession, custody, and control wherever located, applies to all of Carter's Discovery Requests.

2.   The Court has also ordered Local 556 to produce information the union was withholding based on "privacy/confidentiality" objections. Order 3. The union asserted this objection to withhold responsive union information that union officers and representatives purportedly keep in their "personal capacities," (i.e., on personal emails and electronic devices) including for former Local 556 President Audrey Stone. Br. 12-13. Because Local 556 refused to produce responsive information it deemed to fall within Stone's "personal capacity," Carter served Stone with a subpoena for her "personal" documents. (Apps. 1-8). Stone responded by admitting that she had "private union communications" and "privileged union work product" in her possession. (Apps. 2-3, ¶ 4). But she claims they were mostly all kept in her "official capacity" as former union president and as a current union shop steward. *Id*. Stone's attorney has confirmed that while she

does not have information in her personal capacity, she does have information in her "official capacity." Communications with Stone's attorney and Stone's subpoena responses also show that she has information in her official capacity regarding Carter's social media activity and termination. (Apps. 2-6).

Despite the fact that Stone has official union information that would be responsive to many of the Discovery Requests that Carter served on Local 556 on April 26, 2019, Local 556 has not produced that information. (Apps. 3-6; Stone RFPs 1-6) (ECF 94-1, pp. 6-10) (RFPs 2-13), and (ECF 94-2, p.6) (Interrogatories 1-3). As recently as August 7, 2020, Local 556 even told Carter that it *had not even started searching* for documents that executive board members or other agents maintain in their personal accounts and electronic devices. *See supra* at 4. Thus, Local 556 has been withholding documents on the same substantive basis as its "privacy/confidentiality" objections and in violation of the Court's Discovery Order.

While Local 556 reported on August 20 that it finally requested this information from executive board members, Local 556 has not yet complied with its requirement to produce all responsive documents in its possession, custody, and control wherever located at the time of this filing. Given Local 556's past history of unresponsiveness and the approaching discovery deadlines, Carter seeks an order from the Court requiring that, within 30 days, Local 556 produce responsive information in its possession, custody, or control, wherever located, including information kept by current and former executive board members, union employees, and working women's committee members.

## II. Local 556's privilege log remains deficient.

The Court should order Local 556 to cure deficiencies in its amended privilege log or rule that Local 556 waived its asserted privileges. The Court's June 23, 2020 Discovery Order found that Local 556's privilege log was deficient and ordered the union to amend it. The amended version

fails to comply with this Court's order and suffers from various defects that prevent Carter and the Court from evaluating Local 556's privilege claims.

### A. Local 556's amended privilege log does not provide information for each document withheld.

Local 556's amended privilege log fails to comply with this Court's order that Local 556 "set forth sufficient information *as to each document withheld* to permit the court to test the merits of the privilege claim." Compare Order 2 (emphasis in original) (citing *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017)), *with* Apps. 9-15. Local 556's amended privilege log states that the union is withholding "1,216 documents/files because of attorney-client privilege." (App. 10). But there are only 40 attorney-client privilege entries in the amended log. (Apps. 10-13). For its work product claims, Local 556's document divides "Board Packets" for 124 individuals into 5 broad categories as it did before Carter's Motion to Compel, with no work product entries in the log.[4] (Apps. 10-15).

These omissions violate the Court's Order for Local 556 to list "*each document withheld*,"[5] and prevent Carter from evaluating the privilege for each document. *See Perez v. Mueller*, No. 13-CV-1302-PP, 2016 WL 5372811, at *3 (E.D. Wis. Sept. 26, 2016) ("[T]here is no way of knowing … the nature of each separate communication.").

Gilliam raised these concerns with Greenfield during their August 7, 2020 meeting, and he indicated that he would look into the issue. Carter even filed a motion for extension of time to file this renewed motion so that Local 556 could address these concerns and amend its log. On August

---

[4] Instead, Local 556 reported its work product privilege claims in the same format that Carter challenged in her Motion to Compel, without describing the documents, explaining their contents, or giving authors, recipients, dates, or other basic information as prescribed by the Court's June 23 Discovery Order. Order 2; Reply 3-4 (observing that Local 556's June 4, 2020 Amended Privilege Log (ECF 95-5) merely rehashed its September 27, 2019 "Draft Privilege" Log (ECF 94-7), and that both were equally deficient). Local 556 did not set forth basic information as to *each document withheld* on the basis of work product privilege as required by the Court's Order.

[5] Order 2.

20, 2020, Greenfield *guessed* that the discrepancy between the 1,216 documents/files and the 40 entries signified that there were only 40 documents totaling 1,216 pages. But even adding the number of pages listed (in lieu of bates-numbering), this would only amount to approximately 431 pages (assuming 1 page per excel tab). On August 20 and 21, Gilliam again attempted to clarify whether each document withheld was reported with an entry on the log containing dates, authors, recipients, and subject matter.

Local 556's amended privilege log still asserts that Local 556 "has not listed items that are core attorney-client-privilege documents … as the [Federal Rules] do not require disclosure of these items." (App. 9). Despite Local 556's continued argument that the Federal Rules do not require a privilege log for core attorney-client privilege and work-product documents, the union still cites no support for that proposition. (App. 9). Even when a discovery request "*on its face,* seeks wholesale production of documents that are ordinarily covered by … attorney client privilege," the privilege log must still provide dates, authors, recipients and subject matter. *Mfrs. Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-cv-853-L, 2014 WL 2558888, at *3, 5 (N.D. Tex. June 6, 2014) (emphasis added). Local 556 again proceeds to describe items withheld in the "including but not limited to" fashion prohibited by the Federal Rules. *Id.* at *5 ("[E]mploy[ing] the 'including but not limited to' device" fails the Federal Rules' standard.). Greenfield would not directly confirm whether the union was withholding 1,216 documents or only the 40 documents, and his subsequent answers offered on the day this motion was filed remained elusive. (Apps. 16-17).

The Court should order Local 556 to set forth information for each document withheld, and, to the extent that Local 556 is not withholding 1,216 documents/files as expressly stated in its

privilege log or "core attorney-client privilege documents," the union should revise its log accordingly and clearly state how many documents it is withholding.

**B.  Local 556's amended privilege log fails to identify specific authors and recipients.**

Local 556's amended privilege log is also deficient because it fails to identify authors and recipients by first and last name. Federal courts recognize that privilege logs are deficient if they fail to identify the specific persons who authored and received documents. *See Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373-SDD-EWD, 2018 WL 326504 (M.D. La. Jan. 8, 2018) (noting that privilege log entries improperly listed the author as "LA Funds" or "NOFF employee"); *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, No. 12-2071, 2014 WL 295053, at *6 (E.D. La. Jan. 27, 2014) (ordering defendant to either produce documents or provide a supplemental log as to 12 entries that identified only *entities* in the "to" and "from" column); *Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258-RET-DLD, 2009 WL 854358, at *5 (M.D. La. Mar. 30, 2009) (finding privilege log that listed the author of certain documents as "Dow Chemical Company," an entity and not an individual, was insufficient and requiring plaintiff to revise its privilege log).

Contrary to the Court's Discovery Order, most of the amended privilege log's entries fail to identify authors and recipients by first and last name. *Compare* Order to Compel 3, *with* Apps. 10-13. Carter cannot adequately evaluate the privilege claim (e.g., determine whether it was ever waived) because Local 556's vague description of authors/recipients as "Union E-Board," "Grievance Committee," and "Legal Counsel," fails to identify specific persons by name. *Id*.

Numerous entries on Local 556's privilege log show that the law firm of "Phillips, Richard, and Rind, P.C." authored many communications. (Apps. 10-11). But that information does not adequately support the union's privilege claim because it fails to identify the specific person(s)

10

from the firm who made the communication, and whether those persons were acting as attorneys or not. Courts do not presume that communications with counsel are privileged. *BDO*, 876 F.3d at 696 ("[T]he attorney-client privilege does not apply simply because documents were sent to an attorney.") (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d. 492, 502 (4th Cir. 2011). On August 20, 2020, Gilliam asked Greenfield if an attorney with the firm had authored all of the documents, but Greenfield could only say that someone at the firm had.

### C. Local 556's amended privilege log does not give an adequate explanation of each document's contents.

Local 556's amended privilege log does not give an adequate explanation of each document's contents or provide enough information and detail to enable parties and the Court to assess the union's privilege claims. Order 3. Privilege logs must provide a "substantive description regarding the withheld information" and "enough detail to determine the nature of the advice sought." *Firefighters*, 2018 WL 326504, at *6, 7. "'[G]eneral level' description is not in keeping with the intent of Rule 26." *Chemtech*, 2009 WL 854358, at *4-5.[6]

Privilege log entries are inadequate where they consist of vague or general subject matter descriptions, are repetitious, or where the party asserting privilege does not show that the type of information is inherently protected by the privilege. *See e.g., id.* at *5 ("It is not possible to tell from the entries whether these entries truly enjoy both the privilege and the protection of the work product doctrine without useless speculation.");[7] *see also Cole v. Collier*, No. 4:14-CV-1968, 2020 WL 2813454, at *2 (S.D. Tex. May 28, 2020) (finding that descriptions such as "[c]ommunication

---

[6] Fed. R. Civ. P. 26(b)(5) requires that parties relying on a privilege log must "as to each document … set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *BDO*, 876 F.3d at 697 (quoting *Interbake Foods*, 637 F.3d at 502). "Determining the applicability of the privilege is a highly fact specific inquiry, and the party asserting the privilege bears the burden of proof." *BDO*, 876 F.3d at 695 (internal punctuation and citation omitted). Ambiguities with respect to whether the elements of a privilege claim have been met are construed against the proponent of the privilege. *Id.*

[7] Furthermore, parties asserting attorney-client privilege must describe the interaction as more than just "legal" or "legal advice" to properly establish the application with the privilege. *BDO*, 876 F.3d at 696.

11

made for the purpose of obtaining and providing legal advice and assistance in *Cole v. Collier* litigation," "the Pack Unit," "inspection of the LeBlanc Unit," and "temperature" logs, were vague and boilerplate descriptions and failed to provide adequate detail to support the privilege log).

Here, Local 556's explanations do not give adequate information to show that the union is asserting the privilege for confidential communications with a lawyer for the primary purpose of securing legal services or assistance.[8] Local 556's explanations of its documents' contents consist only of perfunctory, and generalized labels such as "556 Union Campaign/Negotiation Strategy," "556 Union Contract Negotiations Update Archive," "Grievance Status Breakdown," or "Active Grievance Report," which are repeated across all of the privilege log entries. (Apps. 10-13).

1. *"556 Union Campaign/Negotiation Strategy" and "556 Union Contract Negotiations Update Archive"*

For the memos regarding the "556 Union Campaign/Negotiation Strategy" or "556 Union Contract Negotiations Update Archive," Local 556's explanations do not give enough detail or facts showing that an attorney prepared the memos for the primary purpose of giving Local 556's Executive Board legal advice about its campaign or negotiation strategy. (Apps. 10-11). Even assuming that Local 556 had merely added the words "legal advice regarding union campaigns/negotiation strategy" that is still insufficient. *See Cole*, 2020 WL 2813454, at *2.

"To be privileged, the documents must not only exhibit attorney involvement, but must involve a legal adviser acting in his capacity as such." *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 531 (N.D. Ill. 2000) (internal punctuation and citation omitted). Privilege log entries are deficient where there is "no indication that legal advice is being sought, or revealed." *Id.*; *see also*

---

[8] To assert attorney-client privilege, a party must establish "(1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *BDO*, 876 F.3d at 695 (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).

*Wanzer v. Town of Plainvill*e, No. 3:15-CV-00016 (AWT), 2016 WL 1258456, at *3 (D. Conn. Mar. 30, 2016) ("Without some indication that these documents contain legal advice or requests therefor, and without documentation with respect to the contents of the attachments, the Court cannot review the assertion of privilege.").

Communications between an attorney and union executive board members are not necessarily confidential or made for the purpose of securing legal services or assistance. Communications with an attorney who is acting solely in an advisory capacity are not privileged. *See BDO*, 876 F.3d at 696. Context is key and the entries lack those details. The privilege log must show that these communications involve legal services or assistance with the "union campaign" or "negotiation" itself. *See Montebello Rose Co. v. Agric. Lab. Rels. Bd.*, 119 Cal. App. 3d 1, 31 (1981) ("Since [employer's] labor negotiations could have been conducted by a non-attorney, it is self-evident that communications with [the attorney] relating to the conduct of those negotiations were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice."); *see also Interphase Corp. v. Rockwell Int'l Corp.*, No. 3-96-CV-0290-L, 1998 WL 664969 (N.D. Tex. Sept. 22, 1998) (applying *Montebello Rose* and other California attorney-client privilege rules in a diversity case); *National Football League Mgmt. Council*, 309 N.L.R.B. 78, 97 (1992) (general counsel's meeting notes concerned primarily business matters, did not represent collective bargaining strategy and were not protected by attorney-client or work product privilege).

Local 556's descriptions exclude necessary details about the "substantive topic of such communications or recommendations." *Firefighters*, 2018 WL 326504, at *7. Local 556's privilege log is inadequate because it does not address the substance of the memos (whether it was

13

truly legal advice or some other sort of advice), or show whether the attorney was acting as an attorney when he directed his communication to Executive Board.

Neither the "campaign" and "negotiation" characteristics nor the attorney's involvement (if established)[9] demonstrate that these communications are, inherently, legal advice. Local 556's approach of combining "union campaign" strategy with "negotiation strategy," which are completely separate types of communications involving different analyses, further suggests that this label is boilerplate. (Apps. 10-11). "556 Union Contract Negotiations Update Archive" is a cryptic term that gives no substantive detail about any document's contents. (App. 11). Therefore, the Court should order Local 556 to add substantive detail to these explanations showing that they were made for the purpose of seeking/providing legal assistance.

2. *"2018 Fact Finding Meeting by Base," "Grievance Status Breakdown," "Active Grievance Report"*

For the documents regarding "2018 Fact Finding Meeting by Base," "Grievance Status Breakdown," "Active Grievance Report," Local 556's descriptions are vague, overly-generalized, and convey insufficient information about the communications themselves. (Apps. 11-13). Those cursory descriptions do not give any substantive detail regarding the contents of the files or show that the files were sent for the primary purpose of obtaining or providing legal advice or assistance. *See BDO*, 876 F.3d at 974.

Fact-finding meetings are not inherently discussions about legal advice. Southwest Airlines attends and participates in fact-finding meetings, so a grievance committee member's discussion of those, even with an attorney, are not inherently privileged or confidential. Nor are all reports or communications about grievances inherently privileged or confidential. These entries appear to be

---

[9] *See Supra* at 10-11 (noting that Local 556's privilege log identifies a law firm without naming the specific individual who made the communication.

nothing more than factual reports. Attorney-client privilege does not extend to purely factual information that an attorney communicates via memo to other persons. *See United States v. Louisiana*, No. 11-470, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015). Therefore, the Court should order Local 556 to add substantive detail to these explanations showing that they were made for the purpose of seeking or providing legal assistance.

Carter also questioned whether privilege could be claimed for the September 29 and October 6 letters authored by Local 556's Grievance Committee Chair, Becky Parker and sent to Southwest's Director of Labor Relations, Tammy Schaffer, former Local 556 president Audrey Stone, and Local 556 Grievance Committee Chair, Brandon Hillhouse. (Apps. 12-13). Neither the author nor the recipients are attorneys. On August 20, 2020, Greenfield confirmed that attorney-client privilege cannot be claimed for these letters, and that he would be producing them. At the time of this filing, the documents had not been produced. Therefore, the Court should also order Local 556 to produce these letters.

Local 556 also claims attorney-client privilege for a September 28, 2017 letter that Parker sent to Stone and Local 556's attorney Ed Cloutman III. (App. 12). It lists the subject as "RE: C. Carter arbitration emails." *Id*. That description does not give adequate detail to support the privilege claim. Local 556's amended privilege log fails to give sufficient details about the legal advice or assistance Parker is seeking from Cloutman, the specific subject matter of her inquiry, and which legal proceedings her inquiry implicates. To the extent this email involves the grievance that Local 556 filed on behalf of Carter it is not privileged. *See Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982) ("[T]he work product doctrine pertains to materials … sought by an adversary of the attorney's client … [it] does not apply to the situation in which a client seeks access to documents

or other tangible things created or amassed by his attorney during the course of the representation.").

Repeating the same exact labels across multiple entries without giving substantive detail for each claim forces Carter and the Court to speculate regarding the contents of the listed documents and how a privilege might be applicable. These labels are uninformative, and offer no facts to support the application of the privilege to the contents of the documents. (Apps. 10-13). They do not give any substantive detail about each communications' contents that would allow Carter or the Court to determine the nature of the advice sought without having to rely on the union's conclusory characterizations. *Id.* Accordingly, Local 556 should be ordered to cure these deficiencies.

### D.  Local 556's amended privilege log excludes all of the documents for which it asserted work product privilege.

The Court should also order Local 556 to add privilege log entries for its work product privilege claims, or find that the union waived them. Local 556's amended privilege log excluded all of the documents for which it asserted the work product privilege. (Apps. 10-15). Instead, Local 556 submitted all these documents for in camera review when this Court's order only asked for disputed documents related to "RFP Nos. 18-20." *Compare* Order 4, *with* App. 14. By submitting these documents for in camera review and excluding them from its amended privilege log, Local 556 prevented Carter from evaluating the union's privilege claims and making her case as to why those documents are not protected.[10] Carter cannot address the union's work product privilege claims beyond what she had already argued in her Motion to Compel. Br. 7-12; Reply 3-7.

---

[10] *See Grossman v. Schwarz*, 125 F.R.D. 376, 390 (S.D.N.Y. 1989) (cautioning parties that in camera inspection should not shift counsels' work to the court).

Furthermore, Local 556 waived work product privilege for many of the documents submitted in camera because the union failed to timely raise work product objections. For RFPs 10(B), 18-20, Carter argued that Local 556 waived its work product objections because the union never raised them in its Amended Responses and did not adequately address them in its response to Carter's Motion to Compel. Reply 5-6. Despite having yet another opportunity to set forth its work product claims in the privilege log, Local 556 again failed to do so.[11]

Local 556 also waived any work product claim for RFP 23, which was raised for the first time in papers submitted with its amended privilege log. (App. 15); Reply 5-6; ECF 94-5, p.8. Local 556 never raised work product privilege with respect to RFP 23 it in its Amended Responses, or in its response to Carter's Motion to Compel. Reply 5-6; ECF 94-5, p.8.

Local 556's amended privilege log and papers explaining the materials it submitted for in camera review also fail to account for Local 556's assertion of work product privilege for RFPs 1, 2(A)(C)-(H), 3-9, 11-13, 21-22, 24, and Interrogatories 1-2. (App. 15); Reply 5-6. Therefore, the Court should also find that Local 556 waived work product privilege as to each of these requests.

### E.  The Court should order Local 556 to cure the deficiencies in its amended privilege log or find that the union has waived its privileges.

The Court should, at a minimum, order Local 556 to cure the deficiencies in its amended privilege log. "[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." *Firefighters*, 2018 WL 326504, at *8 (citations omitted).

---

[11] Unlike RFP 10(B), the Court ordered Local 556 to submit materials for RFPs 18-20 for in camera review. Order 4. While the Court ordered Local 556 to submit documents responsive to RFPs 18-20 for in camera inspection, the union should have also included privilege log entries for those documents in order to properly support its privilege claims.

The Court could also rule that Local 556 has waived its privilege. Courts have regularly found that a party waives privilege claims when it fails to provide a privilege log due to its "unjustified delay, inexcusable conduct, or bad faith." *See e.g., BDO*, 876 F.3d at 697. To be sure, waiver is "not required as a result of the production of a deficient log," and "a drastic remedy in response to a technically deficient log." *Cashman Equip. Corp. v. Rozel Operating Co.*, CA No. 08-363-C-M2, 2009 ML 2487984, at *2, 2 n.4 (M.D. La. Aug. 11, 2009). But this is not Local 556's first deficient privilege log. Courts have observed that, "[w]hile waiver based on such conduct may seem like a harsh penalty, such a policy is necessary to prevent gamesmanship." *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 456 (E.D. Tex. 2003), *vacated on other grounds*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003).

Carter first started asking for a privilege log over a year ago when Local 556 first started producing documents. *See Blackard v. Hercules, Inc.*, No. 2:12-cv-175-KS-MTP, 2014 WL 2515197, at **3-5 (S.D. Miss. June 4, 2014) (ruling that defendant waived all asserted privileges when it waited five months after producing documents to provide a privilege log). Despite Carter's repeated requests, her Motion to Compel, and this Court's Discovery Order, Local 556's privilege log remains deficient in both technical and substantive respects. Significantly, the union's privilege log failed to provide an entry for each document withheld and excluded entries for its work product claims. (Apps. 10-15). For more than a year, Local 556 has had repeated opportunities to correct deficiencies in its privilege log, but it has failed to do so. Thus, the Court could rule that Local 556 waived attorney-client and work product privilege assertions for RFPs 1-13, 15, 21-22, 24, and Interrogatories 1-2.

## CONCLUSION

For the foregoing reasons, Carter requests that the Court grant her renewed motion to compel and to award attorney's fees as requested in the accompanying motion and herein.

18

Dated: August 21, 2020                    Respectfully submitted,

                                          s/ Matthew B. Gilliam
                                          Mathew B. Gilliam (*admitted pro hac vice*)
                                          New York Bar No. 5005996
                                          *mbg@nrtw.org*
                                          Jeffrey D. Jennings (*admitted pro hac vice*)
                                          Virginia Bar No. 87667
                                          *jdj@nrtw.org*
                                          c/o National Right to Work Legal Defense
                                          Foundation, Inc.
                                          8001 Braddock Road, Suite 600
                                          Springfield, Virginia 22160
                                          Tel: 703-321-8510
                                          Fax: 703-321-9319

                                          s/ Jason E. Winford (*with permission*)
                                          David E. Watkins
                                          Texas Bar No. 20922000
                                          *dwatkins@jenkinswatkins.com*
                                          Jason E. Winford
                                          Texas Bar No. 00788693
                                          *jwinford@jenkinswatkins.com*
                                          JENKINS & WATKINS, P.C.
                                          4300 MacArthur Avenue, Suite 165
                                          Dallas, Texas 75209
                                          Tel: 214-378-6675
                                          Fax: 214-378-6680

                                          *Attorneys for Plaintiff Charlene Carter*

## Certificate of Conference

I hereby certify that Plaintiff's counsel, Matthew B. Gilliam, conferred with counsel for Defendant Transport Workers Union of America Local 556, Adam Greenfield, by telephone on July 1, 2020, July 28, 2020, August 7, 2020, August 20, 2020, and August 21, 2020, regarding the Court's June 23, 2020 Discovery Order, Carter's Motion to Compel, and numerous related discovery issues. On July 1, July 28, August 7, and August 20, Greenfield and I discussed Local 556's objection to producing information in the union's possession, custody, or control, wherever located, including union information kept outside of the union office, by union officers, stewards, employees, representatives, and agents, from sources such as personal emails and personal electronic devices. Greenfield was opposed to producing such information until August 20, 2020, at which point he indicated that he had issued a formal request to Local 556 to start searching the personal devices and email accounts of past and present executive board members. But, at the time of this motion, Local 556 had not produced such information.

Greenfield and I also conferred by telephone on August 7, 2020, August 20, 2020, and August 21, 2020, regarding Local 556's amended privilege log and Carter's claims that the amended log is deficient. We discussed Carter's claim that Local 556's privilege log remains deficient because it does not provide information for each document withheld, does not identify specific authors and recipients, does not give an adequate explanation of each document's contents, and excludes entries for all of the documents for which the union asserted work product privilege. Greenfield did not agree that it was deficient in any of those respects.

Also during the August 21 call, I asked Greenfield whether Carter's Renewed Motion to Compel would be opposed, but Greenfield would not definitively state whether Local 556 would oppose the motion on every issue. Greenfield did not return my subsequent call on August 21, 2020, regarding the contents of the Renewed Motion. Based on our disagreement on these issues

in our numerous conversations, I presume that Local 556 opposes Carter's Renewed Motion to Compel.

s/ Matthew B. Gilliam

### Certificate of Service

I hereby certify that on August 21, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam