# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>    Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>    Defendants. | Civil Case No. 3:17-cv-02278-X<br><br><br>**PLAINTIFF CHARLENE CARTER'S BRIEF SUPPORTING HER MOTION TO COMPEL DISCOVERY FROM DEFENDANT SOUTHWEST AIRLINES CO.** |

# TABLE OF CONTENTS

                                                                         **Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

SUMMARY .....................................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................1

ARGUMENT AND AUTHORITIES ..............................................................................................3

    I.   Southwest should produce information about other flight attendants' treatment under the Social Media Policies .........................................................................................4

        A.   RFPs 6, 7, 18, 19, 21, and Interrogatory 3 ......................................................6

        B.   RFP 17 .............................................................................................................10

    II.  Southwest should search for and produce the ACT Team's information for RFP 19, which concerns the company's treatment of flight attendants' religious accommodation requests ...............................................................................................11

CONCLUSION ..............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Abrego v. Waste Mgmt. of Tex., Inc.*,
 2012 WL 2402890 (N.D. Tex. 2012) ......................................................................................... 8

*Alkawaldeh v. Dow Chem. Co.*,
 851 F.3d 422 (5th Cir. 2017) ............................................................................................ 9-10, 12

*Brown v. Wal-Mart Stores East, L.P.*,
 969 F.3d 571 (5th Cir. 2020) ..................................................................................................... 7

*Coughlin v. Lee*,
 946 F.2d 1152 (5th Cir. 1991) ................................................................................................ 5, 8

*EEOC v. Abercrombie & Fitch*,
 135 S. Ct. 2028 (2016) ............................................................................................................. 12

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
 297 F.R.D. 99 (S.D.N.Y. 2013) ............................................................................................... 11

*Garcia v. Pro. Cont. Servs., Inc.*,
 938 F.3d 236 (5th Cir. 2019) ............................................................................................ 6, 7, 9

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
 No. 10 C 5711, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012) ................................................. 11

*Lee v. Kan. City S. Ry. Co.*,
 574 F.3d 253 (5th Cir. 2009) ................................................................................................. 7, 9

*Plemer v. Parsons-Gilbane*,
 713 F.2d 1127 (5th Cir. 1983) ................................................................................................... 9

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*,
 810 F.3d 940 (5th Cir. 2015) ..................................................................................................... 8

*Roscello v. Southwest Airlines Co.*,
 726 F.2d 217 (5th Cir. 1984) ..................................................................................................... 4

*Shackelford v. Deloitte & Touche, LLP*,
 190 F.3d 398 (5th Cir. 1999) ..................................................................................................... 8

# TABLE OF AUTHORITIES (Cont'd)

**Cases**                                                                                                 **Page(s)**

*Staub v. Proctor Hosp.*,
    562 U.S. 411 (2011)..................................................................................................5

*Valmont Indus., Inc. v. N.L.R.B.*,
    244 F.3d 454 (5th Cir. 2001) ....................................................................................5

*Zamora v. City of Houston*,
    798 F.3d 326 (5th Cir. 2015) ....................................................................................5

**Rules & Statutes**

Fed. R. Civ. P. 37(a)(3)(B)(iii) ............................................................................................1

Fed. R. Civ. P. 37(a)(3)(B)(iv)............................................................................................1

42 U.S.C. § 2000e, *et seq*....................................................................................................1

45 U.S.C. § 151, *et seq*.......................................................................................................1

**SUMMARY**

The Court should order Southwest Airlines Co. to search for and produce responsive information in accordance with Plaintiff Charlene Carter's discovery requests and the Federal Rules of Civil Procedure. A party seeking discovery may seek an order compelling production or answers against another party. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). For Request for Production Nos. 6, 7, 17-19, and 21, and Interrogatory 3, Carter seeks discovery regarding discriminatory animus and disparate treatment that is essential to proving her retaliation claims under the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.*, and her religious discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. (Fourth Amended Complaint, ECF 80) (FAC) ¶¶ 100, 116); (FAC ¶¶ 93-102) (RLA retaliation); (FAC ¶¶ 103-122) (religious discrimination). Despite the relevance of the discovery to Carter's claims, Southwest refuses to produce the requested documents and information.

**FACTUAL BACKGROUND**

Carter served Interrogatories and Requests for Production on Southwest on April 26, 2019. (Apps. 1-20) (App. 89). Southwest served its objections and responses on June 12, 2019. (Apps. 21-45) (App. 84). From May 14, 2019 through October 14, 2020, Carter's counsel worked with Southwest's attorneys to address their demand that Carter identify custodians and search terms to resolve its concerns with ESI and electronic discovery. (App. 88) (Apps. 55-87). During this time, Carter's counsel and Southwest's attorneys had many conversations by email and telephonic meeting to discuss search terms, custodians, similarly situated employees, and other discovery issues. (Apps. 55-88).

During these discussions, Southwest raised "similarly-situated employee" objections to searching for and producing responsive information for RFPs 6, 7, 17-19, 21, and Interrogatory 3,

1

which seek discovery from agreed-upon Custodians[1] about their treatment of other flight attendants' social media activities (RFP 6, Interrogatory 3), social media discipline (RFP 7), religious discrimination/accommodation issues (RFPs 18, 19, 21), and terminations in connection with "last chance agreements" (RFP 17). (Apps. 26-29, 30-33, 41-42). While Southwest agreed to produce information for flight attendants who reported to the same Base Manager as Carter (Ed Schneider), it will not produce the Custodians' information for other flight attendants in whose social media activities and religious discrimination issues they were involved, despite the fact that those Custodians had input in Carter's termination and applied their knowledge of other flight attendants' cases in the decision to fire her. (Apps. 47-50, 52, 58, 60). Carter seeks discovery from the Custodians about the disparate treatment and discriminatory animus towards other flight attendants for her RLA retaliation claims and Title VII religious discrimination claims. (FAC ¶¶ 100, 116); (FAC ¶¶ 93-102) (RLA retaliation); (FAC ¶¶ 103-122) (religious discrimination).

During this same timeframe Southwest also explained that the company's Accommodation and Career Team ("ACT") handles flight attendants' religious accommodation issues. (Apps. 46, 83). Carter requested that Southwest search and produce the ACT Team's responsive information for RFP 19, which seeks Southwest documents and communications concerning flight attendants' religious accommodation requests. (Apps. 8, 50-53, 55-56, 78). This request seeks discovery about

---

[1] After Southwest abandoned its year-and-a-half long demand for ESI search term protocols on October 14, 2020 (App. 88) (Apps. 84-87) (Apps. 55-57), Carter and Southwest also reached agreement on October 20, 2020, to include 13 document custodians for RFPs 2, 4-8, 10, 15-19, 21: Ed Schneider (Base Manager-Denver), Sonya Lacore (Vice President In-Flight), Mike Simms (Senior Director In-Flight), Edie Barnett (Human Resources Manager), Maureen Emlet (Labor Relations Manager), Denise Gutierrez (Employee Relations Manager), Meggan Jones (Assistant Base Manager-Denver), Dave Kissman (Senior Manager In-Flight), Suzanne Stephenson (Base Manager-Las Vegas), Melissa Burdine (Labor Relations Manager), Tammy Shaffer (Labor Relations Director), Audrey Stone, and Charlene Carter (Apps. 78, 82) (App. 53).

disparate treatment and discriminatory animus for Carter's Title VII claims. (FAC ¶¶ 103-122). Southwest refuses to produce the ACT Team's responsive information. (Apps. 49-50).

On October 9, 2020, Southwest suddenly reversed course, abandoned its demand for an ESI approach based on search terms, and agreed with Carter's original position that it was unnecessary and inappropriate to delay discovery with those disputes. (App. 57, ¶ 4). After Southwest's about-face, Carter and Southwest have continued discussing discovery issues, reviewing the new approach's impact on the scope of Southwest prior objections, and narrowing disputes. (Apps. 47-56). On October 27, 2020, Southwest stated that it still stands by its objection that it will not produce documents concerning religious accommodations in response to RFP 19. (Apps. 49-50). On October 29, 2020, Southwest reasserted its objection that any flight attendant social media discipline not involving Carter's Base Manager Ed Schneider is outside the scope of discovery and that those flight attendants are not similarly-situated to Carter. (Apps. 48-49).

On October 30 and 31, 2020, Southwest produced documents subject to those limitations. With the impending November 30, 2020 discovery deadline, Carter went ahead and deposed Southwest's corporate representative and several managers the following week. Carter still seeks discovery from the Custodians about the disparate treatment and discriminatory animus towards other flight attendants because of its importance to her RLA retaliation claims and religious discrimination claims. (FAC ¶¶ 100, 116); (FAC ¶¶ 93-102); (FAC ¶¶ 103-122).

## ARGUMENT AND AUTHORITIES

The Court should order Southwest to search for and produce (I) responsive documents and information for RFPs 6, 7, 17-19, 21, and Interrogatory 3, concerning other flight attendants' social

media activities, discipline under the Social Media Policies,[2] religious discrimination complaints, and "last chance agreements," and (II) responsive documents and information kept by its ACT Team for RFP 19, concerning the company's treatment of flight attendants' religious accommodation requests.

## I. Southwest should produce information about other flight attendants' treatment under the Social Media Policies.

The Court should order Southwest to produce the Custodians' responsive information for RFPs 6, 7, 17-19, 21, and Interrogatory 3, concerning other flight attendants' social media activities, discipline under the Social Media Policies, religious discrimination issues, and "last chance agreements." The Custodians' responsive documents and communications relate to Southwest's disparate treatment and discriminatory animus towards other flight attendants based on their opposition to the union (RFPs 6, 7, 17, and Interrogatory 3) or their religious views (RFPs 18, 19, 21). (Apps. 6-9, 17-18).

The Fifth Circuit recognizes that this type of circumstantial evidence can support the finding of unlawful motive: "Overt, direct evidence of [union-related] animus, a rarity at best, is not a prerequisite to a finding of improper motive." *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 223 (5th Cir. 1984) (citation omitted). "Circumstantial, as well as direct evidence may be utilized in the determination." *Id*. Factors relevant to proving animus in employee discipline cases include disparate treatment of the disciplined employee or discipline that deviates from the employer's past disciplinary practice, inconsistencies between an employer's proffered reason for the

---

[2] Southwest terminated Carter for violating Southwest's Workplace Bullying and Hazing Policy and Social Media Policy, and determined that Carter's conduct "could also be a violation of Southwest's Policy Concerning harassment, Sexual Harassment, Discrimination, and Retaliation." (ECF 80-5, p.2). Therefore, Carter seeks information about flight attendants' discipline under these separate policies which she refers to herein as "the Social Media Policies": Southwest's Social Media Policy, Southwest's Workplace Bullying and Hazing Policy, and Southwest's Policy Concerning harassment, Sexual Harassment, Discrimination, and Retaliation.

4

discipline and the employer's other actions, and the implausibility of the employer's explanation of its actions. *See Valmont Indus., Inc. v. N.L.R.B.*, 244 F.3d 454, 465 (5th Cir. 2001); (FAC ¶¶ 100); *see also Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).

The Custodians' information about disparate treatment and discriminatory animus towards other flight attendants based on their opposition to the union or their religious views is crucial to inferring the presence of any improper motive. Employers are also liable for retaliation and discrimination if a manager or supervisor causes an employment decision "through actions motivated by retaliatory animus" by "manipulating [a] decisionmaker into taking what appears … to be a non-retaliatory action." *See Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 419-22 (2011)). *See also Staub*, 562 U.S. at 421 (noting that if an independent investigation "takes [a supervisor's biased report] into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified," the supervisor's action "may remain a causal factor"). Restricting Carter's information about other flight attendants' social media complaints, investigations, and discipline, or religious discrimination issues, to only those matters in which Schneider was involved (as Southwest proposes) would deprive Carter of evidence of discriminatory animus and disparate treatment by others who were involved in and had input in Carter's termination, and that only the other Custodians possess.

Southwest is improperly restricting responsive information that it will produce for these requests based on its false assumptions about similarly-situated employees and the scope of discovery. Southwest's dispute about whether these other employees are similarly situated enough to warrant an inference of unlawful retaliation or discrimination is also an argument that is better

5

suited for trial on the merits rather than an objection to producing relevant discovery of potentially admissible and probative evidence.

### A. RFPs 6, 7, 18, 19, 21 and Interrogatory 3.

For RFPs 6, 7, 18, 19, 21, and Interrogatory 3, Southwest restricts the responsive information it will produce, arguing that flight attendants are not "similarly-situated" unless they share the same supervisor, their social media activities involve the same "communication content" and "scale of discipline," and their religious discrimination complaints involve the same "content."[3] (App 75).[4] But employees can still be similarly situated when they work in different divisions and have different supervisors. *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 245 (5th Cir. 2019) (recognizing that Fifth Circuit case law has never imposed the requirement that employees work for the same divisions of a company in order to be similarly situated).

1. Carter seeks discovery regarding flight attendants who share the same position and job responsibilities, and work within the same In-Flight Services Division. Southwest's same Social Media Policies apply to all flight attendants, and the same Custodians involved in Carter's termination apply the Social Media Policies to other flight attendants across the country and make employment decisions affecting them: Southwest's Senior VP of In-Flight Operations oversees all flight attendants, and the Employee Relations, Labor Relations, Human Resources, and In-Flight

---

[3] Carter RFPs 6, 7, and Interrogatory 3 seek the Custodians' information regarding other flight attendants' reported social media activities, complaints, investigations (RFP 6, Interrogatory 3), and discipline under the Social Media Policies (RFP 7). (Apps. 6, 7, 17-18). Southwest asserts that it will only produce information regarding "social media flight attendant discipline involving Schneider." (Apps. 48-49, 64-65). For Interrogatory 3, Carter asks that Southwest provide the names of the flight attendants whose social media activities were reported. (Apps. 17-18). Carter RFPs 18 and 19 seek the Custodians' information about flight attendants' complaints concerning their religious beliefs, views, and practices, and their accommodation requests. (App. 8). Carter RFP 21 seeks Custodians' documents and communications about abortion and reproductive freedom. (App. 9).

[4] *See also* Apps. 47, 49, 52, 58, 60, 64-65, 69, 70, 72, 78.

6

Divisions work with base managers to investigate and apply the Social Media Policies and disciplinary rules to flight attendants working at bases across the country. (ECF 30, pp.8-15) (social media policies); (ECF 30, p.4, 155-56) (declaration of labor relations manager); (ECF 30, pp. 17-258) (collective bargaining agreement); (ECF 80-5, p.2) (Carter's termination letter); (App. 83).

Even if flight attendants working for other base managers are somehow "less similarly-situated," Carter is still entitled to Southwest's responsive information concerning their social media complaints, investigations, and discipline because it is relevant and within the scope of discovery. Evidence of disparate treatment is valid evidence of pretext even when the employees have different supervisors. *See Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 580 (5th Cir. 2020) (holding that disparate treatment of less similarly situated comparators is valid evidence of pretext even if "it is less probative than evidence of a more similarly situated comparator") (citations omitted).

To be sure, "[e]mployees are similarly situated when they held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Garcia*, 938 F.3d at 244 (citation and punctuation omitted). It is also true that "[a] plaintiff who proffers the treatment of a fellow employee must show that the plaintiff's termination was taken 'under nearly identical circumstances' as those faced by the comparator." *Garcia*, 938 F.3d at 244 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)).

But Fifth Circuit precedent establishes that "nearly identical circumstances" should not be interpreted as restrictively as Southwest proposes. *See Garcia*, 938 F.3d at 244-45 (finding that Fifth Circuit case law "has never" imposed the requirement that employees can never be similarly

7

situated when they work for different supervisors or for different divisions); *See also Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 950, 950 n.45 (5th Cir. 2015) (denying summary judgment because plaintiff identified four employees treated more favorably even though all four were not similarly situated); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409, 409 n.10 (5th Cir. 1999) (reversing district court's grant of summary judgment to the employer, even though comparators had different supervisors).

While Southwest claims that there are more than 300 files regarding social media policy violations, Carter requests only that Southwest produce information about flight attendants whose social media complaints, investigations, and violations involve any of the 13 Custodians who also had input in Carter's termination. (Apps. 47-48). Courts allow liberal discovery of files and records where plaintiffs are required to demonstrate pretext. *See Coughlin*, 946 F.2d at 1159. By excluding this information, Southwest is depriving Carter of an opportunity to discover potentially admissible and probative evidence of discriminatory animus and disparate treatment. Carter's rights to exercise her rights to refrain from union membership and oppose the union under the Railway Labor Act, without fear of retaliation by the union and employer, are at stake in this action. (FAC ¶¶ 93-102). Without discovery, Carter has no access to this evidence.

2. Southwest's claims that "similarly-situated employees" should be defined by "scale of discipline" and "communication content" are inconsistent with the discovery rules, which allow liberal discovery in cases where plaintiffs demonstrate pretext. *See Coughlin*, 946 F.2d at 1159; *Abrego v. Waste Mgmt. of Tex.,* Inc., 2012 WL 2402890, *1 (N.D. Tex. 2012). "Scale of discipline" is an improper restriction on discovery because disparate treatment of flight attendants (i.e., differences in the scale of discipline and whether some flight attendants were treated more

8

favorably than others for impermissible reasons) is precisely the kind of information that is relevant to Carter's retaliation and discrimination claims. *See supra* at 4-5.

"Communication content" is also an arbitrarily narrow restriction on discovery. Southwest is restricting Carter's access to discoverable information related to her RLA retaliation claims by limiting "similarly situated flight attendants" to those disciplined for communicating religious views about the union's support for abortion. Such an overly-restrictive view is inconsistent with the liberal discovery rules and Fifth Circuit precedent. *See supra* at 7-8. The Fifth Circuit does not interpret "nearly identical" circumstances to mean "identical" as that would create an "insurmountable" hurdle for Title VII plaintiffs. *See Lee*, 574 F.3d at 260; *Garcia*, 938 F.3d at 244-45. For purposes of Carter's RLA retaliation claims, what matters is how Southwest treated union supporters in contrast to union opponents, and union members in contrast to nonmembers.

Likewise, Southwest's attempts to restrict Carter's access to information related to her Title VII religious discrimination claims by limiting "similarly situated flight attendants" to those who communicated the same exact "content" are also unavailing. Carter seeks information about Southwest's treatment of secular or different religious views and its unfavorable treatment of other flight attendants' Christian views because both are relevant evidence for her Title VII claims. *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983) (holding that plaintiff could introduce evidence of an employer's "pattern and practice of discriminatory conduct," as it "may be helpful to a determination of whether the alleged discriminatory act against plaintiff "conformed to a general pattern of discrimination against members of a protected group") (citations and punctuation omitted).

Carter can also establish pretext by showing that she was treated less favorably than a flight attendant outside of her protected class. *See, e.g. Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422,

9

428 (5th Cir. 2017). Therefore, Southwest's documents and communications about flight attendants outside of Carter's protected class—including those who did not communicate the exact same content—are relevant. Southwest's "content" restriction would exclude discovery of evidence that the company treated flight attendants' needs for religious accommodation more favorably when they did not involve Christian or Evangelical beliefs like those Carter held. For example, Southwest's more favorable treatment of religious accommodation requests made by Muslim flight attendants—who are outside Carter's protected class—asking to wear a hijab, is relevant to demonstrating whether the company gave less favorable treatment to Christians' accommodation requests. *See infra* at 11-12.

### B.  RFP 17.

The Court should also overrule Southwest's similarly-situated objections for RFP 17 because those objections have no bearing on this request, which seeks relevant information regarding disparate treatment. Carter's RFP 17 seeks information about employees who signed a settlement agreement or "last chance agreement" in lieu of termination, and were subsequently terminated. (App. 8). RFP 17 seeks information that can demonstrate whether Southwest treated union opponents less favorably than union supporters after they signed "last chance" or other settlement agreements. For example, Carter claims that Southwest treated recall supporters who signed last chance agreements less favorably than union supporters who were repeat offenders of Southwest policies.

RFP 17 also seeks information relevant to Southwest's arguments and defenses in this case, such as showing why the "last chance agreement" was nothing more than a fig leaf to give Southwest cover for firing Carter at a later date. Southwest represented to Carter that the company would reinstate her if she signed such an agreement. But Carter refused, as it forced her to waive

10

fundamental rights and protections, and subjected her to immediate termination without legal recourse. Southwest has already asserted Carter's failure to sign such an agreement as an argument against her reinstatement. (App. 43-44). Thus, RFP 17 seeks important information about Carter's claims and Southwest's defenses. For those reasons, Southwest should produce the Custodians' responsive information for RFPs 6, 7, 17-19, 21, and Interrogatory 3.

## II. Southwest should search for and produce the ACT Team's information for RFP 19, which concerns the company's treatment of flight attendants' religious accommodation requests.

The Court should also order Southwest to search and produce information kept by the ACT Team for RFP 19 because it possesses responsive information about flight attendants who confronted Southwest with religious accommodation issues, which is significant to Carter's Title VII claims. Custodian selection "must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *15 (N.D. Ill. Sept. 28, 2012) (including requested custodians that "may *possess* important, relevant information which could reasonably lead to admissible evidence) (emphasis in original). Southwest's ACT Team investigates and decides flight attendants' religious accommodation requests. (Apps. 46, 83). The ACT Team is the only custodian that handles religious accommodation requests. None of the other agreed-upon custodians handle those requests.

Carter seeks the ACT Team's responsive information related to current and former Southwest flight attendants' religious accommodation requests (RFP 19) (App. 8). This request "is reasonably calculated to lead to relevant evidence that might not be captured if [it was] excluded." *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013).

Carter needs information about Southwest's treatment of religious accommodation requests made by flight attendants with different religious views to evaluate whether they were treated more favorably than Christian flight attendants' accommodation requests. *See e.g., Alkawaldeh*, 851 F.3d at 428 (noting that plaintiff can show less favorable treatment than a similarly situated person outside of his protected class). Thus, Carter's request for the ACT Team's responsive information is reasonably calculated to produce relevant evidence, which only the ACT Team possesses, and that shows how Southwest treated different flight attendants when they confronted the company with religious accommodation issues. (Apps. 46, 83).

Although Southwest argues that the ACT Team should not be a custodian because Carter never requested a religious accommodation, the law does not turn on whether an employee overtly requests an accommodation. (Apps. 70, 75). In *EEOC v. Abercrombie & Fitch*, the Supreme Court held that a job applicant could still show that the store violated Title VII if she proved religious animus or the employee's need for an accommodation motivated its decision to reject her application. 135 S. Ct. 2028, 2032-33 (2016). This was true even though she never asked during the interview whether the store's no-hat policy allowed employees to wear religious head coverings. *Id*. at 2031-32.

Just as the job applicant in *Abercrombie & Fitch* did not need to prove that she overtly asked for an accommodation, neither does Carter. All Carter has to show is that her need for a religious accommodation was a motivating factor in Southwest's termination decision. *Id*. at 2032. Accordingly, the ACT Team's handling of other flight attendants' overt complaints and requests for religious accommodations may lead to admissible evidence.

By withholding the ACT Team's responsive information, Southwest is depriving Carter of an opportunity to discover evidence of discriminatory animus and disparate treatment. Carter's right

to exercise religious freedoms under Title VII of the Civil Rights Act, without fear of coercion or reprisal from the union and employer, is at stake in this action. (FAC ¶¶ 103-122). Carter's claims also implicate the interests of approximately 16,000 Southwest employees who share the same freedoms to exercise their rights without coercion. Carter's 20-year career as a flight attendant, and her ability to return to work as a flight attendant in the future, are also at stake. (FAC ¶¶ 11, 122). Southwest has exclusive control and access to this information, and possesses the resources to retrieve and produce it. (Apps. 46, 83). Without discovery, Carter has no access to this evidence. *Id*. Southwest has not shown that including the ACT Team for RFP 19 would be unduly burdensome. Therefore, the Court should order Southwest to search for and produce the ACT Team's responsive information for RFP 19.

## CONCLUSION

For the foregoing reasons, Carter requests that the Court grant her Motion to Compel Discovery as requested herein and in the accompanying Motion.

Dated: November 13, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　s/ Matthew B. Gilliam
　　　　　　　　　　　　　　　　　　　　Mathew B. Gilliam (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　New York Bar No. 5005996
　　　　　　　　　　　　　　　　　　　　*mbg@nrtw.org*
　　　　　　　　　　　　　　　　　　　　Jeffrey D. Jennings (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Virginia Bar No. 87667
　　　　　　　　　　　　　　　　　　　　*jdj@nrtw.org*
　　　　　　　　　　　　　　　　　　　　c/o National Right to Work Legal Defense
　　　　　　　　　　　　　　　　　　　　Foundation, Inc.
　　　　　　　　　　　　　　　　　　　　8001 Braddock Road, Suite 600
　　　　　　　　　　　　　　　　　　　　Springfield, Virginia 22160
　　　　　　　　　　　　　　　　　　　　Tel: 703-321-8510
　　　　　　　　　　　　　　　　　　　　Fax: 703-321-9319

　　　　　　　　　　　　　　　　　　　　s/ Jason E. Winford (*with permission*)
　　　　　　　　　　　　　　　　　　　　David E. Watkins
　　　　　　　　　　　　　　　　　　　　Texas Bar No. 20922000
　　　　　　　　　　　　　　　　　　　　*dwatkins@jenkinswatkins.com*
　　　　　　　　　　　　　　　　　　　　Jason E. Winford

>Texas Bar No. 00788693
>*jwinford@jenkinswatkins.com*
>JENKINS & WATKINS, P.C.
>4300 MacArthur Avenue, Suite 165
> Dallas, Texas 75209
>Tel: 214-378-6675
>Fax: 214-378-6680
>
>*Attorneys for Plaintiff Charlene Carter*

## Certificate of Service

I hereby certify that on November 13, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam