# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER, | Civil Case No. 3:17-cv-02278-X |
| Plaintiff, | |
| V. | **PLAINTIFF CHARLENE CARTER'S BRIEF SUPPORTING HER MOTION TO EXTEND TIME TO COMPLETE FACT DISCOVERY** |
| SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, | |
| Defendants. | |

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY .......................................................................................................................1

FACTUAL BACKGROUND...............................................................................................1

   I.  Carter's efforts to complete discovery with Local 556............................................2

  II.  Carter's efforts to complete discovery with Southwest .........................................5

ARGUMENT .....................................................................................................................9

   I.  Southwest's and Local 556's unwarranted objections and delays prevented Carter
      from timely receiving documents and completing discovery ..............................8

      A.  Carter seeks additional time to complete discovery with Local 556 ............9

      B.  Carter seeks additional time to complete discovery with Southwest...........11

      C.  Southwest's demands for search terms and custodians prevented Carter
         from timely obtaining written discovery and completing depositions........13

  II.  Extending the deadline to complete fact discovery is important to ensure
      that Carter can correct discovery deficiencies, and complete follow-up discovery ..........16

 III. Extending the deadline for fact discovery will not prejudice Southwest or Local 556 .....17

CONCLUSION...................................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Assured Guar. Mun. Corp. v. UBS Real Est. Secs. Inc.*,
   No. 12 Civ. 1579 (HB) (JoF), 2012 WL 5927379 (S.D.N.Y. Nov. 21, 2012) .......................15

*Cartier v. Egana of Switzerland (America) Corp.*,
   No. 3:08-CV-0001-D, 2009 WL 614820 (N.D. Tex. Mar. 11, 2009)..............................16, 17

*Coughlin v. Lee*,
   946 F.2d 1152 (5th Cir. 1991) .................................................................................16

*Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*,
   No. 3:17-CV-1816-D, 2009 WL 305994 (N.D. Tex. Feb. 9, 2009) ................................16, 17

*Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*,
   No. 1:13-cv-00582-WTL-MJD, 2014 WL 5529895 (S.D. Ind. Nov. 3, 2014)......................15

*Fams. for Freedom v. U.S. Customs and Border Prot.*,
   837 F. Supp. 2d 331 (S.D.N.Y. 2011)..........................................................................15

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005)..................................................................................17

*Jacobson v. City of W. Palm Beach*,
   2017 WL 11549935 (S.D. Fla. Feb. 3, 2017) ..................................................................9

*Klein v. Fed. Ins. Co.*,
   2015 WL 6561239 (N.D. Tex. Oct. 29, 2015)................................................................16

*Langley v. IBM*,
   NO. A-18-CV-443-LY, 2019 WL 4577115 (W.D. Tex. Sept. 20, 2019)................................9

*Valmont Indus., Inc. v. N.L.R.B.*,
   244 F.3d 454 (5th Cir. 2001) ....................................................................................16

*S&W Enters., LLC v. S. Trust Bank of Ala., NA*,
   315 F.3d 533 (5th Cir. 2003) ......................................................................................1

**Rules & Statutes**

Fed. R. Civ. 16(b)(4).......................................................................................................1

**Other Authorities**

The Case for Cooperation, 10 Sedona Conf. J. 339 (2009). ...........................................14

## SUMMARY

There is good cause for the Court to extend the November 30, 2020 discovery deadline to March 5, 2021, because Southwest's and Local 556's unwarranted objections and delays prevented Carter from completing discovery. Federal Rule of Civil Procedure 16(b)(4) allows a schedule to be modified for good cause and with the judge's consent. When deciding whether to extend discovery deadlines, the court considers the reasons for the extension, the importance of the requested relief, the prejudice to the other parties, and the availability of a continuance to cure any such prejudice. *See S&W Enters., LLC v. S. Trust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

Carter seeks an extension of the discovery deadline to complete review of documents produced during the last month of discovery, to conduct follow-up discovery (e.g., requests for admission), especially on matters involving evidence of discriminatory animus and disparate treatment towards other flight attendants, which is crucial to Carter's retaliation and religious discrimination claims. Carter also seeks time to confer with the company and union to identify possible discovery deficiencies. Granting Carter an extension is important to ensuring that she can complete the investigation of her claims, and it will not prejudice Southwest or Local 556. Nor will it require a continuance of the September 27, 2021 pretrial conference or the October 4, 2021 trial date.

## FACTUAL BACKGROUND

Before Southwest Airlines Co. terminated her employment, Carter was a nonmember of Local 556 who opposed the union's leadership, including former President Audrey Stone. (Fourth Amended Complaint, ECF 80 (FAC) ¶¶ 8, 13). Carter is also a Christian who opposes abortion, and believes that abortion takes a human life and is contrary to the teachings of the Bible and the will of God. (FAC ¶ 42). Carter sent Facebook messages to President Stone that criticized her leadership, supported the recall election campaign to remove the union president from office, and

1

for using union dues to lead Local 556 members at the 2017 Women's March on Washington D.C., which promoted abortion rights. (FAC ¶¶ 37, 38, 41, 46-50). In response, President Stone reported Carter to Southwest management claiming that Carter's Facebook messages were harassment. Southwest then terminated Carter's employment, saying that Carter's Facebook messages to President Stone opposing the union and her Facebook posts about abortion violated its social media, bullying, and harassment policies. (FAC ¶¶ 83, 85, 87-89, 97-99, 110, 111, 118).

Carter filed this case alleging that Southwest and Local 556 retaliated against her for exercising her rights under the Railway Labor Act to be a nonmember of the union, an agency fee objector, and to oppose the union's leadership. (FAC ¶¶ 93-102). Carter also alleged that Southwest and Local 556 violated Title VII by discriminating against her religious beliefs, views, and practices. (FAC ¶¶ 103-122). Lastly, Carter alleged that Local 556 breached its duty of fair representation by turning her in for criticizing the union president. (FAC ¶¶ 78-92).

**I.  Carter's efforts to complete discovery with Local 556.**

Carter first served discovery requests on Local 556 on April 26, 2019. (ECF 93, p.9) (ECF 94-1)(ECF 94-2). Prior to this Court's March 4, 2020 extension of the scheduling order deadlines, Carter's counsel Matthew Gilliam conducted a teleconference regarding Local 556's discovery deficiencies with union counsel Ed Cloutman on February 28, 2020. (ECF 94-8, pp.21-22). During the call Gilliam asked Local 556 to produce documents it was withholding based on its demand for a protective order (the Court had entered the order four months earlier on November 5, 2020) (ECF 85), provide more detail in its privilege log, and address other deficiencies with its discovery responses. *Id*. Carter's counsel did not hear from back from Local 556's counsel until May 14, 2020, when Gilliam called Greenfield asking whether Carter's motion to compel would be opposed. (ECF 93, p.12). Greenfield responded that COVID related closures in March and April

2020 and his paternity leave delayed Local 556's response. (ECF 95, pp.2-3). Local 556 failed to respond fully to Carter's discovery requests, and forced her to file two motions to compel on May 14, 2020, and August 21, 2020. (ECF 92) (ECF 120). During this time, Local 556 continued to withhold discovery.

On June 23, 2020, the Court granted Carter's motion to compel in part.[1] (ECF 99). Despite the Court's June 23 order that Local 556 provide responsive documents in its possession, custody, or control wherever located, and amend its privilege log,[2] Carter was forced to renew her motion to compel on August 21. (ECF 120). She alleged that Local 556 failed to produce documents located on the personal devices of its officers and employees, including President Stone. (ECF 121, pp.9-10). Carter alleged that Local 556 was withholding President Stone's documents and communications.[3] *Id*. at 10-11. Carter also argued that Local 556's amended privilege log remained deficient, and that the union had improperly claimed privilege for three documents on its log. *Id*. at 11-21.

On September 23, 2020, the Court agreed with Carter and ordered Local 556 to amend its privilege log again and bring it into compliance with its first order by October 5, 2020, and produce

---

[1] The Court declined to find that Local 556 had waived privilege, denied an award of attorneys' fees, and ordered Local 556 and Carter to confer regarding certain discovery requests. (ECF 99, pp.1-4).

[2] The Court granted Carter's motion to extend time to file the renewed motion to compel in hopes that she could resolve these disputes with Local 556. (ECF 117; ECF 119). But Local 556 did not respond to Carter's attempts to address these issues until August 19, two days before Carter's new deadline to file the motion, and still could not resolve their disputes. (ECF 121, p.8).

[3] On July 1, 2020, Carter served a Rule 45 non-party subpoena on President Stone requesting documents she held in her "personal capacity," given the union's refusal to produce Stone's documents that fell within Stone's "personal capacity." (ECF 121, p.7, 7 n.2). The subpoena asked for documents such as those related to Carter, to the recall campaign (*see supra* at 1), Southwest's discipline of other flight attendants for social media behavior, and her views on abortion. Stone's responses to the Rule 45 subpoena had indicated that she did have union information in her former official capacity as union president. (ECF 121, p.7, 7 n.2).

3

documents located outside its executive offices by November 13, 2020. (ECF 131, pp.2-3). The Court also ruled that the Board Packets submitted for in camera review were not protected by work product and ordered their production by October 16. (ECF 131, pp.3-4).

When Local 556 served its final amended privilege log on October 7, 2020, it reported that approximately 27 entries from its prior log were not privileged and that it would produce those documents. (App.8). Local 556 did not produce those documents until November 23, 2020. (App.1). During the September 21 hearing Local 556 further agreed to run search terms that Carter proposed on August 10 to resolve discovery disputes involving Carter's requests for information about other flight attendants' accommodation requests and religious discrimination complaints. (Apps.2, 4, 9-12).

Despite the hearing and Carter's repeated requests, Local 556 has not followed through on its agreement to run these search terms and provide Carter with feedback, and it still has not produced the union's responsive information for the underlying requests for production, which are directly relevant to Carter's Title VII religious discrimination claims. (Apps.2, 4, 9-12) (ECF 93, pp.21-22, 24-26) (ECF 99, p.4).

Pursuant to the Court's Order on Carter's first motion to compel (ECF 99, p.4), counsel for Carter and Local 556 had conferred regarding their disputes about Carter's discovery requests seeking union information about flight attendants' religious discrimination complaints and accommodation requests. *Id*. To resolve these disputes, Local 556 reported by email on August 21, 2020, that it believed it could run Carter's proposed search terms for the requests and follow up with review and production by September 8. (App. 10). Carter checked in with the union regarding this request on September 16, and the parties discussed the issue again at the September 21 hearing, and during a November 18, 2020 conference call. (App. 9). Despite all of these

4

communications, Local 556 has never confirmed whether it ran search terms or reported the results. (App. 2).

On November 16, 2020, Local 556 produced the documents located outside of its executive offices, which Carter believed were critical to the deposition of the union and its officers, including former Local 556 President Stone. (App.3). Carter deposed Stone on November 24. Carter and Local 556 also scheduled the union's Rule 30(b)(6) deposition for November 30, the last day of discovery. Carter, however, will not have any opportunity to conduct follow-up discovery related to the union's October and November document production, or on the union's deposition.

## II. Carter's efforts to complete discovery with Southwest.

Carter also served Interrogatories and Requests for Production on Southwest on April 26, 2019. (App.73). On May 14, 2019, Southwest's attorneys, Michelle Gehrke and Brian Morris, emailed Carter's attorneys, Gilliam and Jeffrey Jennings, requesting a "preliminary 60-day extension" so that the parties could reach agreement on custodians and search terms, and further demanding that Carter send a list of custodians and search terms "sufficient to address Carter's Discovery Requests." (App.72). Gilliam responded to Gehrke the next day, and questioned why Southwest could not conduct searches through self-collection and based on the requests as written. (Apps.71-72). On June 12, 2019, Southwest served objections and responses to Carter's Discovery Requests, which reiterated its refusal to search for and produce documents without an agreement on search terms and custodians. (App.68). Southwest produced no documents at that time.

From May 14, 2019 through October 14, 2020, Carter's counsel worked with Southwest's attorneys to address their demand that the parties reach agreement on custodians and search terms that would be "sufficient to address Carter's Discovery Requests." (Apps.25-72). Southwest reported that its search generated a large number of "hits" while continuing to insist that Carter

5

must narrow search terms and custodians. (App.68). Yet Southwest would never specify how it applied the search terms it used in its June 2019 search, how many hits or documents each search term generated, or what the specific burden or cost would be.[4] (Apps.61-63, 69-70).

Carter responded by proposing search terms and custodians she deemed acceptable but Southwest refused to even test how many hits the search terms generated for each custodian. (Apps.65-67). During this time, Carter's counsel and Southwest's attorneys exchanged correspondence and conducted numerous meetings regarding search terms, custodians, similarly situated employees, and other discovery issues. (Apps.25-72). The parties also extended scheduling order deadlines given their ongoing negotiations over discovery issues and a protective order. (ECF 88, 89).

After this Court extended scheduling order deadlines on March 4, 2020 (ECF 89), Carter sent Southwest a new list of search terms on May 19. (Apps.53-58). Counsel for Southwest and Carter conducted a May 20 conference call regarding discovery disputes. Southwest stated that it would send Carter a proposal to resolve their disagreements. On July 7, 2020, Southwest sent Carter a proposal, but it rejected Carter's proposed custodians for most of her discovery requests, and failed to explain why using them would be too costly or even what the cost was. (Apps.40-52). Southwest also failed to provide hit reports or information about the number of hits the search strings generated for the custodians. *Id*. The next day, Southwest filed its "emergency" motion for sanctions. (ECF 100). Given Southwest's accusations, Carter's counsel had to devote significant time and resources in July and early August briefing the motion. *See* ECF 100-112.

---

[4] On June 12, 2019, Southwest reported that it ran searches on 13 custodians, which produced "nearly 600,000 hits." (App.68). A month later, Southwest disclosed the search terms it used to generate those results. But it never identified how they were applied to the different custodians, the number of hits each search term generated, as Carter had requested and Southwest had indicated it would provide back in May. (Apps.69-70).

On August 31, 2020, Carter sent Southwest a letter urging the company to search Carter's proposed custodians and to explain its burdens.[5] (Apps.40-46). Carter and Southwest's counsel continued discovery discussions in September and October, resolving some issues and narrowing their disputes. (Apps.25-39). On October 9, Carter's counsel informed Correll that Carter would file a motion to compel on their unresolved issues by October 14, noting that Southwest had not adequately explained the costs and burdens of using Carter's proposed custodians and search terms. (Apps.29-30). That day, Correll responded that Southwest ran the searches, and, given the costs, "the much better course would be to have the custodians engage in self-collection and abandon ESI." (App.27, ¶4).

On October 9 Southwest suddenly reversed course, abandoned its demand for an ESI approach based on search terms, and finally agreed with Carter's original position that such an approach was unnecessary and inappropriate. *Id*. Carter agreed to Southwest's self-collection proposal, which was precisely her position from the very beginning before she attempted to accommodate Southwest's May 2019 demands for ESI protocols. (Apps.71-72). While Southwest's sudden shift away from ESI demands, and agreement to the self-collection methodology resolved disputes regarding search terms and custodians, it raised new questions about the scope of their production.

---

[5] On or about August 19, Gilliam left Correll a voicemail suggesting that the parties schedule a meeting to discuss discovery issues. Carter also sent Correll a letter on August 31, which addressed custodians and search term issues as well as other discovery deficiencies. After this Court denied Southwest's sanctions motion, Carter sent Southwest another email on September 9 asking to schedule a call to discuss ongoing discovery issues, deposition logistics, and related matters. Southwest's counsel responded on September 14 that a "call will not be productive." Nevertheless, Carter requested another call to try to resolve their disputes, and the parties conducted another call on September 29. Southwest's counsel indicated that it would start searching documents for the four custodians it listed in its September 18 letter regardless of whether the parties agreed on the final list of custodians.

Carter and Southwest continued discussing discovery issues, and the new approach's impact on Southwest prior objections, and narrowed their disputes. (Apps. 17-28). With the November 30, 2020 discovery deadline quickly approaching, Carter (out of an abundance of caution) noticed Southwest's Rule 30(b)(6) deposition for November 2, and the depositions for 4 managers involved in Carter's termination for November 3-6. (Apps. 15-16). On October 30 and 31, Southwest produced approximately 3,200 pages of documents in response to Carter's discovery requests. (Apps. 13-14). Carter deposed Southwest's corporate representative and several managers the following week.

Carter also conferred with Southwest on November 20, 2020, about whether the company produced all of the documents it agreed to produce, namely information about other flight attendants disciplined under Southwest's social media policies in cases where Southwest and Carter agreed on which flight attendants are similarly situated. (App.12). Carter also raised questions about whether Southwest's Custodians produced all documents in their possession, custody, and control, wherever located, including on their personal electronic devices. *Id*. Despite Southwest's contention that they did, Local 556 produced documents showing that at least one custodian did have such information. *Id*. Furthermore, Southwest has not yet provided Carter with a privilege log, so Carter cannot evaluate what information it redacted from documents or might otherwise be withholding. *Id*. Carter needs an opportunity to confer with Southwest to hopefully resolve these issues.

Additionally, on November 13, 2020, Carter filed a motion to compel discovery from Southwest seeking the company's responsive information about flight attendants disciplined under its social media policies and flight attendants' religious accommodation requests. (ECF 132-134). Carter still seeks this information about the disparate treatment and discriminatory animus towards

other flight attendants because of its importance to her RLA retaliation claims and Title VII religious discrimination claims. (FAC ¶¶ 100, 116); (FAC ¶¶ 93-102); (FAC ¶¶ 103-122). If the Court grants Carter's motion to compel against Southwest, then Carter will also need additional time to conduct follow-up discovery regarding this important information.

## ARGUMENT

**I.  Southwest's and Local 556's unwarranted objections and delays prevented Carter from timely receiving documents and completing discovery.**

Carter seeks an extension of the discovery deadline because Southwest's and Local 556's unwarranted objections and delays prevented Carter from completing discovery. When a party withholds documents and delays discovery without justification and thereby thwarts the other party's efforts to complete discovery, there is good cause to extend the court's scheduling deadlines. *See Langley v. IBM*, NO. A-18-CV-443-LY, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019); *Jacobson v. City of W. Palm Beach*, 2017 WL 11549935, at *2 (S.D. Fla. Feb. 3, 2017) (finding that discovery delays prevented a party from having sufficient time to conduct follow-up discovery and extending the discovery deadlines).

### A.  Carter seeks additional time to complete discovery with Local 556.

Carter seeks additional time to (1) conduct follow-up discovery related to Carter's November 30 Rule 30(b)(6) deposition of Local 556, and union documents produced on October 16, November 16, and November 23, involving flight attendant discipline; and (2) address Carter's requests for information concerning flight attendants' religious discrimination complaints and accommodation requests, for which Local 556 failed to run search terms.

1. Carter has diligently sought documents and information from Local 556 ever since she served her April 2019 Discovery Requests. Carter filed two motions to compel, both of which were necessary to obtaining responsive discovery. (ECF 92, 99) (ECF 120, 131). Pursuant to the Court's

order granting Carter's second motion to compel, Local 556 produced "board packets" on October 16, which contained extensive information about flight attendant discipline under Southwest policies. (App.5). Local 556 also served Carter with another revised privilege log on October 7, at which time it acknowledged that 27 entries from its prior log were not privileged. (App.8). Carter did not receive those documents, which contained more information about flight attendant discipline, until November 23. (App.1). Carter seeks more time to conduct follow-up discovery because this information—produced in the closing stages of discovery—is essential to evaluating disparate treatment and discriminatory animus in connection with Carter's RLA retaliation claims. Furthermore, this information suggests that Local 556 possesses more responsive information about flight attendants discipline for the relevant time period. Carter also raised follow-up questions regarding two additional entries on Local 556's privilege log. (App.2). Local 556 conceded that one entry was not protected, and produced the document on November 23. (App.1). Carter seeks additional time to confer further regarding the other entry.

Carter also seeks more time to conduct follow-up discovery after the union's Rule 30(b)(6) deposition, which will not be held until November 30. The Court had ordered Local 556 to produce union officials' documents on November 13, 2020, which Carter believed would be crucial to conducting a Rule 30(b)(6) deposition. (ECF 121, pp.9-10) (ECF 131, p.3). Local 556 produced those documents on November 16, 2020. (App.3). While Carter sent Local 556 examination topics on November 10 to schedule the union's Rule 30(b)(6) deposition, the Thanksgiving holiday and other depositions forced Carter and Local 556 to schedule the deposition for November 30. Given that the deposition will be held on the last day of discovery, Carter will not have any opportunity to conduct follow-up discovery (e.g., depositions, requests for admission, etc.).

2. Carter seeks more time to address Local 556's failure to run search terms for information about flight attendants' religious discrimination complaints and accommodation requests. Carter's requests for union information concerning flight attendants' religious discrimination complaints and accommodation requests were the subject of her May 2020 motion to compel. (Apps.2, 4, 9-12) (ECF 93, pp.21-22, 24-26) (ECF 99, p.4). Carter and Local 556 seemed to resolve discovery disputes regarding these requests with the union's agreement to run search terms on August 21, 2020[6] and, again, when the matter was discussed with the Court at the September 21 hearing. *See supra* at 4. Despite Carter's repeated requests, Local 556 has failed to run search terms and address the underlying discovery requests.

**B. Carter seeks additional time to complete discovery with Southwest.**

With respect to Southwest, Carter seeks additional time to (1) conduct follow-up discovery if the Court grants her pending Motion to Compel against Southwest; (2) conduct follow-up discovery related to Southwest's October 30 and 31, 2020 document production; (3) confer with Southwest regarding questions about potential deficiencies with the company's October 30-31 discovery production, and review Southwest's privilege log, which the company has not yet served on Carter, and resolve any issues related to documents that are redacted or withheld.

1. Carter seeks more time to conduct follow-up discovery concerning flight attendants' social media policy discipline and religious accommodation requests, should the Court grant her motion to compel. (ECF 132). When Southwest agreed to shift to self-collection on October 9, 2020, Carter delayed filing a motion to compel to confer about what discovery disputes remained and

---

[6] To resolve disputes involving Local 556's failure to respond to Carter's requests for union information related to flight attendants' religious discrimination complaints and accommodation requests, Carter provided the union with search terms on August 21, 2020, which the union believed that it could run by September 8. *See supra* at 4.

address new questions about what Southwest would produce and not produce. (Apps.17-30). After narrowing their disputes, Carter filed her motion to compel discovery against Southwest on November 13, 2020, seeking information regarding flight attendants' social media policy discipline and religious accommodation requests, which is crucial to showing disparate treatment and discriminatory animus. (ECF 132). The Court issued a November 17, 2020 Order expediting briefing and setting a December 11, 2020 hearing (ECF 136). But, Carter will not be able to conduct follow up discovery or depositions unless the Court extends the time to complete follow-up discovery.

2. Carter also seeks additional time to conduct follow-up discovery regarding Southwest's October 30-31, 2020 document production. (Apps.13-14). Following their September 29, 2020 discovery meeting, Southwest assured Carter that document production was forthcoming. (App.25). Despite having only a small portion of the written discovery that Carter requested, Carter noticed depositions for November 2-6 given the impending November 30 discovery deadline. (Apps.16, 15). On October 30 and 31, 2020 (the Friday and Saturday before the week of depositions) Southwest produced approximately 3,200 pages of documents. (Apps.13-14). Carter conducted depositions beginning Monday, November 2, and continuing every day that week. Carter had only 2-3 days to review the documents. Combined with the union's delays, this limited Carter's ability to review documents prior to conducting Southwest's deposition, and the depositions of managers who influenced Southwest's decision to terminate her. Furthermore, Carter did not have time to serve follow-up discovery for documents produced on October 30 and 31, as any such discovery must be served early enough to allow the responding party to respond.[7]

---

[7] Carter's discovery sought from the union and company is relevant to the claims against both. The discovery she obtains from one defendant, involves her claims against the other.

Carter also seeks an opportunity to serve requests for admission based on the depositions and Southwest's document production.

3. Carter also seeks more time to confer with Southwest about the company's October 30-31, 2020 document production. Carter asked Southwest to review whether the company produced information concerning flight attendant social media discipline involving Ed Schneider, which it previously agreed to produce. (App.12). But, the parties have not completed follow-up discussions. Southwest contends that such documents do not exist, but Carter believes that flight attendants reporting to Ed Schneider have been disciplined under the company's social media policy. *Id*. Carter also raised questions about whether Southwest's custodians produced documents on their personal electronic devices, such as personal emails. *Id*. Finally, Southwest has not produced a privilege log for documents redacted or withheld. *Id*. Carter needs an extension to examine Southwest's privilege log once it is produced, and confer with Southwest regarding any questions she may have.

### C. Southwest's demands for search terms and custodians prevented Carter from timely obtaining written discovery and completing depositions.

Contrary to Southwest's characterizations, Carter diligently sought discovery from Southwest and Local 556 to prosecute her case. But Southwest's demands for search terms and custodians unnecessarily delayed discovery and prevented Carter from timely obtaining the discovery needed to conduct complete and effective depositions. Obtaining written discovery is crucial to taking effective depositions. Thus, it was impossible to "prosecute the case" and conduct effective depositions when Southwest was withholding discovery until October 30 and 31. Nor could Carter

prosecute the case when Local 556 had still not produced all responsive information by the date of this motion, despite Carter's diligence and this Court's intervention.[8]

For a year and a half (since May 2019), Southwest claimed that traditional self-collection was too burdensome and that ESI was necessary. (Apps.25-72). From the outset, Southwest unnecessarily delayed discovery with its demand that Carter propose custodians and search terms as a condition of searching and producing documents. (App.72) (Apps.25-71). Southwest complicated these discussions by withholding information necessary to make informed decisions about search terms and custodians. (Apps.61-63, 69-70). While Southwest demanded that Carter propose a limited range of custodians and search terms before it would respond to most of her discovery requests, it never explained its organization structure in sufficient detail for Carter to understand the custodians that were most likely to possess responsive documents. (Apps.63-64). Instead it used its superior knowledge of its organization to force Carter to guess the right custodians and search terms. *Id*. That is not in accord with ESI best practices. "[C]ounsel may not use his superior information as to the location or nature of responsive documents to thwart good faith discovery requests by refusing to engage cooperatively to identify … the search terms likely to produce responsive documents." *See* The Case for Cooperation, 10 Sedona Conf. J. 339, 354 (2009).

---

[8] After this Court extended discovery deadlines on March 4, 2020 (ECF No. 89), Carter continued her efforts to resolve discovery disputes with both Local 556 and Southwest, and obtain the information necessary to conduct depositions. As Carter explained when the parties filed their joint motion to extend discovery deadlines last year, she intended to take at least ten depositions, and "believe[d] that substantial completion of written discovery and production of electronic documents is necessary in order to conduct depositions effectively and efficiently." (ECF 86, p.3). Carter believed that the parties could complete discovery even sooner if the parties worked together in good faith. *Id*.

Despite Carter's requests, Southwest never explained how or why "600,000" hits was too burdensome, or how many "hits" each search term generated for each specific custodian. *See Assured Guar. Mun. Corp. v. UBS Real Est. Secs. Inc.*, No. 12 Civ. 1579 (HB) (JoF), 2012 WL 5927379, at \*2 (S.D.N.Y. Nov. 21, 2012) ("The total number of documents 'harvested' is not a particularly compelling statistic by itself, because it says nothing about the possible significance of the documents and may in fact reflect an inefficient search protocol."); *Fams. for Freedom v. U.S. Customs and Border Prot.*, 837 F. Supp. 2d 331, 335 (S.D.N.Y. 2011) ("In order to determine adequacy, it is not enough to know the search terms. The method in which they are combined and deployed is central to the inquiry."); *Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*, No. 1:13-cv-00582-WTL-MJD, 2014 WL 5529895, at \*7 (S.D. Ind. Nov. 3, 2014) (explaining that resisting parties must "show with specificity" how discovery requests are burdensome).

But in October 2020, Southwest suddenly reversed its position the month before the discovery deadline and admitted that "self-collection was the better course." (App. 27, ¶4). Southwest's complete reversal concedes that self-collection was never too burdensome. This about-face shows that the company's demand for custodians and search terms was an improper basis to withhold key documents. Southwest should have used self-collection from the very beginning, as Carter suggested.[9] (Apps.71-72).

Extending the deadline is especially warranted because Southwest compounded its delays with its "emergency motion for sanctions." (ECF 100). Southwest's motion forced Carter to divert significant resources from discovery efforts in to order to respond to the company's accusations,

---

[9] Carter proposed her list of custodians and search terms by October 2019. (Apps.63, 65-67). Carter provided even more refined search strings to Southwest by May 2020. (Apps.53-57). Had Southwest run this analysis after October 2019 or May 2020, as Carter requested, the company would have realized that self-collection was cheaper and more efficient, just as Carter had contended from the very beginning (i.e., since May 2019).

which this Court ultimately denied. (ECF 100-112). The motion effectively froze discussions over Southwest's incomplete discovery responses for almost two months.

## II. Extending the deadline to complete fact discovery is important to ensure that Carter can correct discovery deficiencies, and complete follow-up discovery.

The Court should extend the discovery deadline to March 5, 2021, to give Carter the opportunity to correct discovery deficiencies and complete follow-up discovery on union and company documents not produced until the last month of discovery. Extending the discovery deadline is important if a party would be unable to complete discovery on her claims. *See Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, No. 3:17-CV-1816-D, 2009 WL 305994, at **2-3 (N.D. Tex. Feb. 9, 2009); *Cartier v. Egana of Switzerland (America) Corp.*, No. 3:08-CV-0001-D, 2009 WL 614820, at *5 (N.D. Tex. Mar. 11, 2009); *Klein v. Fed. Ins. Co.*, 2015 WL 6561239, at *3 (N.D. Tex. Oct. 29, 2015).

Southwest and Local 556 prevented Carter from completing discovery before November 30. Without an extension, Carter will lose her ability to conduct follow-up discovery on issues such as disparate treatment and discriminatory animus. *See Valmont Indus., Inc. v. N.L.R.B.*, 244 F.3d 454, 465 (5th Cir. 2001) (recognizing that factors relevant to proving animus in employee discipline cases include disparate treatment of the disciplined employee or discipline that deviates from the employer's past disciplinary practice); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (permitting liberal discovery of the personnel files and records of employees in cases where plaintiffs are required to demonstrate pretext).

Carter would lose the ability to conduct follow-up discovery on the documents she received and the depositions she conducted in the last month of discovery. Carter would also lose the ability to conduct follow-up discovery on documents produced if the Court grants Carter's motion to

16

compel. Southwest's and Local 556's discovery delays deprived Carter of time to thoroughly review documents produced and conduct follow-up discovery.

### III. Extending the deadline for fact discovery will not prejudice Southwest or Local 556.

The Court should extend the discovery deadline because it will not prejudice Southwest or Local 556. Costs they might incur with depositions and follow-up discovery are costs that they would have incurred anyway had they produced documents sooner. *See Cartier*, 2009 WL 614820, at *6. Furthermore, Southwest and Local 556 caused the delays requiring an extension. "Where a party has contributed to a plaintiff's confusion . . . it can hardly be heard to complain about continued discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005).

Additionally, the Court should also extend the discovery deadline because it would not require a continuance of the October 4, 2021 trial date or September 27, 2021 pretrial conference. (ECF 89). The deadline for dispositive motions is May 05, 2021. *Id*. Thus, even if the Court extends fact discovery to March 4, 2021 (the current deadline for expert discovery), that still leaves Southwest and Local 556 with two months to prepare and file dispositive motions.

Even if Southwest or Local 556 can demonstrate prejudice, extending the deadlines for dispositive motions and continuing the trial date would cure it. If a party opposing an extension of discovery demonstrates prejudice, then the court assesses whether the continuance of the trial date would cure it. *Cut-Heal*, 2009 WL 305994, at *3. The trial date is still far off and the parties have not conducted expensive trial preparations. *See id*.

### CONCLUSION

For the foregoing reasons, Carter requests that the Court grant her Motion to Extend Time to Complete Fact Discovery as requested herein and in the accompanying Motion.

Dated: November 30, 2020                          Respectfully submitted,

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings (*admitted pro hac vice*)
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

s/ Jason E. Winford (*with permission*)
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
 Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

*Attorneys for Plaintiff Charlene Carter*

18

**<u>Certificate of Service</u>**

I hereby certify that on November 30, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>s/ Matthew B. Gilliam</u>

19