**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Friday, November 20, 2020 10:03 AM |
| **To:** | Correll, Michael A.; Morris, Brian K. |
| **Cc:** | Jeff D. Jennings |
| **Subject:** | Follow up discovery questions |

Hope you all are well this morning. I know Michael will be busy with the deposition today, but I had some additional discovery questions to follow up on.

1) For RFPs 6, 7, and Interrogatory 3, I think that Southwest agreed to produce other flight attendant social media discipline involving Ed Schneider. However, I do not recall seeing documents about other flight attendants' complaints/discipline involving Ed Schneider (for the relevant timeframe while he was in either Denver or Phoenix) under the social media policy, the hazing and bullying policy, and the sexual harassment policy.
   - Does Ed Schneider or the other custodians have those documents?
   - Also, did Southwest exclude that information when it involved the other assistant base managers, supervisors, or coordinators based in Denver?

2) For RFPs that involve questions about other flight attendants (e.g., RFP 4, 5, 10, 15-16, 18, and 21) did Southwest limit what it produced to the custodians' information about flight attendants based in Denver, excluding their information about flight attendants who worked under different base managers?

3) One question that I think you all were going to check on was did Southwest withhold any documents for RFPs 1, 3, 11-14, 20, 22-25, and Interrogatories 1 and 2.

4) Did the custodians search and produce responsive information kept on personal electronic devices (e.g., text messages, personal email accounts, etc.)? For instance, the union produced some documents that were sent to Sonya Lacore's personal email address that would have also been responsive to some of our requests to Southwest.

5) Were there any requests that Southwest's Custodians did not have any responsive information for?

6) Finally, following the last production, I wanted to check what Southwest is withholding, whether on the basis of privilege or some other objection (overbroad, unduly burdensome, etc.). For any privilege objections, will Southwest be preparing a privilege log? I believe you had indicated that one would be forthcoming for the redaction on what became Ex 10.

Thanks,
Matt

_____
**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you**

**App.12**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Morris, Brian K. <BMorris@reedsmith.com> |
| **Sent:** | Saturday, October 31, 2020 4:45 AM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Stanbery, Rhonda L.; Jeff D. Jennings; Correll, Michael A. |
| **Subject:** | RE: Carter v. TWU 556 et al. |
| **Attachments:** | SWA Production - SWA007286-007463.PDF |

Hi Matthew.  Please see the attached documents.  Thank you.

-Brian

**Brian K. Morris**
469.680.4226
BMorris@reedsmith.com

Reed Smith LLP
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
+1 469 480 4200
Fax +1 469 680 4299

**App.13**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Friday, October 30, 2020 3:00 PM |
| **To:** | Morris, Brian K. |
| **Cc:** | Stanbery, Rhonda L.; Jeff D. Jennings; Correll, Michael A. |
| **Subject:** | Re: Carter v. TWU 556 et al. |

Hi Brian,

I received two separate emails from Cynthia Benavides, and I successfully accessed the files. Just to confirm: everything is contained in the one pdf SWA 4226-7285. I just wanted to make sure that I did not miss anything.

Thanks,
Matt

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Tuesday, October 20, 2020 7:51 PM |
| **To:** | 'Correll, Michael A.'; Morris, Brian K.; 'Ed Cloutman'; 'Adam Greenfield' |
| **Cc:** | 'Jason Winford'; Jeff D. Jennings |
| **Subject:** | Notices of Deposition and Subpoenas |
| **Attachments:** | Carter NOD_ES MJ.pdf; Carter NOD 30(b)(6)_SWA_10 20 20.pdf; Carter Notice of Subpoenas_ME DG_10 20 20.pdf; Carter v TWU Local 556 Subpoena_DG.pdf; Carter v TWU Local 556 Subpoena_ME.pdf |

Good evening, counsel.

Please find attached the notices of deposition for Southwest, Ed Schneider, and Meggan Jones. I have also included the notices and subpoenas for Maureen Emlet and Denise Gutierrez.

Thanks,
Matt Gilliam

_____

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.15**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Friday, October 16, 2020 4:09 PM |
| **To:** | 'Correll, Michael A.' |
| **Cc:** | Stanbery, Rhonda L.; Morris, Brian K. |
| **Subject:** | RE: Carter v. TWU 556 -- Depo Dates |
| **Attachments:** | Carter NOD 30(b)(6)_SWA_10 16 20.pdf |

Hi Michael,

Here are our proposed dates for the depositions:

11/2 30(b)(6) (topics attached), 2:30 p.m. EST
11/3 Ed Schneider, 3:30 p.m. EST
11/4 Meggan Jones, 2:30 p.m. EST
11/5 Maureen Emlet, 2:30 p.m. EST
11/6 Denise Gutierrez, 2:30 p.m. EST

Let me know if you have any questions. Once we have the times confirmed, I will set up the court reporter and prepare the notices of deposition/Rule 45 subpoenas.

Thanks,
Matt

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.16**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Correll, Michael A. <MCorrell@reedsmith.com> |
| **Sent:** | Thursday, October 29, 2020 4:00 PM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Stanbery, Rhonda L.; Morris, Brian K.; Jeff D. Jennings |
| **Subject:** | RE: Carter v. TWU 556 et al. |

Matt,

The "either" is typo. On Schneider, I'm happy to agree to the broader "sole decision maker on cases involving social media" to avoid a dispute on those requests. In so proposing, we still believe that the definition is overbroad, but it isn't worth the cost of the fight. That was the intent of my message and the point of that proposal.

On RFP 6, 7, and Interrogatory 3, I'm not sure how we limit it to the 13 custodians. All I can imagine is running a search for 300+ names on the RFPs. On the interrogatory, as I understand it, we would have to assemble a list and provide details on all of those cases. Even if we limited it to just cases involving Mike Sims, we are still talking north of 60 collateral cases (how far north I can't say yet).

Let me be clear, I have no problem producing materials that potentially speak to the two categories of animus—religious or objector animus—at issue here. Having talked to these witnesses, which you will do next week, I am quite confident their testimony is going to underscore why collateral investigations won't provide any meaningful insights, much less admissible evidence. Further, we are working exceedingly hard to roll out production today for almost all 13 custodians in an effort to let you see all of the information we possess. Those documents should provide good insight to the types of materials Southwest maintains as well as additional data to assess what actually happened here. If there is a way to avoid a dispute here in the face of the sheer volume of data we keep finding, I remain willing to work out reasonable compromises.

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX 75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Thursday, October 29, 2020 2:50 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

Thanks, Michael. I may have misunderstood part of what you said in your first email. You mention that Southwest is willing to identify all investigations into FAs concerning social media involving "either Ed Schneider, as the sole decision makers responsible for Ms. Carter's termination." Is there an "or" after the either? Meaning, is Southwest willing to identify certain investigations not involving Ed Schneider?

Regarding the burdens associated with the rest of RFPs 6, 7, and Interrogatory 3, does limiting those requests to information kept by the 13 custodians reduce the burden? I just wanted to clarify that for those requests we were only seeking responsive information from the 13.

1

**App.17**

Matt

---
**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Thursday, October 29, 2020 3:35 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

Matt,

I will review and get you an answer shortly on all of the below.  In the meantime, I had a couple of pieces of information to share.

First, on RFP 6 and 7, we have inquired of the 13 custodians and had them assist us in locating documents, if any, responsive to RFP 6(A), 6(E), and 7(E).  To the extent responsive materials are located and not privileged, they will be produced.  I do not know that any responsive materials exist concerning those topics.

Second, as to the rest of RFP 6, RFP 7, and all of Interrogatory 3, I can now quantify the burdensomeness/proportionality problem.  If we limit our inquiries to just flight attendants formally investigated from 2013 through present regarding a social media policy violation report, Southwest would have to assemble more than 300 investigations worth of files and search for all related communications.  As we have said all along, attempting to encompass all flight attendants is too broad and does not adequately narrow those demands to similarly situated flight attendants.  Further, this overwhelming amount of data does not even fully discharge your demand as you also purport to seek all communications about the social media activities regardless of whether they resulted in a formal investigation, led to discipline, involved similar activity, or were investigated by the same people responsible for Ms. Carter' termination.

Finally, we dispute that any other social media discipline involving Ed Schneider is appropriately within the scope of discovery because such flight attendants likely were not similarly situated.  Ms. Carter was terminated for violating the social media policy, the harassment policy, and the bullying/intimidation policy.  As a result, my statements below are an offer in compromise of this dispute rather than an agreement as to the appropriate scope of your request.

**Michael A. Correll**

**App.18**

ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX 75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Thursday, October 29, 2020 1:32 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

Thanks, Michael.

I just wanted to clarify a couple of questions I had about your last email. For RFPs that involve questions about other flight attendants, is Southwest only producing the custodians' information about flight attendants who worked under Ed Schneider, but excluding their information about flight attendants who worked under different base managers? I also understand from your email that Southwest is not producing responsive information for RFPs 6, 7, and Interrogatory 3.

Also, in light of self-collection, is Southwest responding to RFPs 1, 3, 11-14, 20, 22-25, and Interrogatories 1 and 2? Based on our prior emails my understanding was that Southwest's only objection to those requests was based on reaching agreement to search terms and custodians. I just wanted to verify that there are no further disputes as to those requests.

Thanks again,
Matt

_____

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Tuesday, October 27, 2020 6:43 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

**App.19**

Counsel:

I address your various discovery demands below.

First, I believe much of what you identify below as "in dispute" is actually no longer in dispute at all. Southwest has engaged in self-collection, review, and, shortly, production of documents responsive to RFP 5, 10, 15-16, 18, 21 for 13 custodians covering a period of seven years. Further, you will be taking testimony of our Rule 30(b)(6) representative next week on Topics 5 and 10. As a result, I am unsure what dispute remains on that front.

Second, I spoke to ACT Team today to better understand whether we can search their files. The ACT Team does not maintain centralized email, and it only consolidated its filing systems into a single repository in March 2020. Instead, for all prior times, the ACT Team has operated through five separate custodians who each maintained individual email boxes and files. Further, the total number of custodians will be greater than five because some of those roles have turned over in the seven-year period at issue. Accordingly, an ESI-driven search will not be workable. That said, the ACT Team did conduct a self-collection search for RFP 2, 8, 18, and 21. No responsive documents were found despite the search effort. Meanwhile, as to RFP 19, Southwest stands by its objection that it will not produce all documents concerning all religious accommodations for a seven-year period. As Southwest's Corporate Representative can confirm, Southwest has never had an employee request a religious accommodation with respect to the Social Media Policy or, for good measure, proselytization, evangelism, abortion or reproductive rights, or a request that raised any issue of member/nonmember status. Meanwhile, documents concerning accommodation of religious garb, religious holidays, and similar matters has no bearing on any issue in this case.

Third, Interrogatory No. 3 remains unworkable. You demand that we identify every flight attendant whose social media activities were "reported, reviewed, or discussed in whatever fashion." Such a demand goes well beyond disciplinary issues and similarly situated flight attendants. To be complete, such a collection would require Southwest to search through the files and/or interview every base manager, HR rep, labor relations employee, and in-flight rep for a period of seven years. Southwest remains willing to provide an identification of all investigations into FAs concerning social media involving either Ed Schneider, as the sole decision makers responsible for Ms. Carter's termination.

Finally, on RFP 17, Southwest's history of revoking last chance agreements has no relevance. Further, your request is not in any way limited to the facts of this case. In fact, it isn't even limited to the same type of misconduct. Accordingly, Southwest stands on its objection.

Again, I believe Southwest has far exceeded the requirements of discovery here and, further, I believe your motion will be premature given the topics provided for the Rule 30(b)(6) deposition. If you wish to propose any further compromise, please let me know.

Sincerely,

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX 75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

---

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Friday, October 23, 2020 4:19 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

**App.20**

EXTERNAL E-MAIL - From mbg@nrtw.org

We're asking that Southwest only include the ACT Team for RFPs 2(B), 8, 18, 19, and 21 (none of the other RFPs). To help us understand Southwest's concerns we would be interested in knowing how many separate individuals comprise the ACT Team, and whether there are ways to reduce any burden. For instance, is there a sub-group that covers religious matters? We're open to ideas that Southwest may have to reduce its burdens, especially if a search of the ACT Team would encompass a million emails as you suggest below.

**Matthew B. Gilliam**
Staff Attorney *(admitted and licensed to practice only in New York and West Virginia)*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Friday, October 23, 2020 4:59 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

Counsel:

I will confer with my client before Thursday.

I want to clarify one point.  Is your demand on the ACT Team that we run all of the searches on all of the RFPs on every member of that team?  I suspect it will be a very large number of separate individuals—which likely would encompass several million more emails.  I do not know this for a fact at this time.

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Friday, October 23, 2020 3:55 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

**App.21**

Good afternoon, Counsel.

Hope you all are well. We wanted to check whether Southwest had any updates as to when it would be producing documents. I know you've mentioned that they are working on it.

We anticipate that we will have to move forward with a motion to compel by Tuesday of next week on several issues: Southwest's similarly-situated objections to RFPs 6, 7, 15-19, 21, and Interrogatory 3, its objections to RFPs 5 and 10, and its objections to including the ACT Team for RFPs 2(B), 8, 18, 19, and 21. I assume that shifting to self-collection does not change Southwest's position on those issues. Based on our prior communications, my understanding is that for those requests where Southwest makes similarly-situated objections, it intends to produce the 13 Custodians' responsive information for flight attendants who worked under Ed Schneider, but exclude the 13 Custodians' responsive information for flight attendants who worked under a different base manager. We still take the position that the 13 Custodians should produce their responsive information for other flight attendants outside of the Denver Base.

We also assume that moving to self-collection and limiting production to the 13 custodians does not change Southwest's opposition to producing responsive information for RFPs 5 and 10.

Please let me know by Tuesday if I am incorrect that Southwest is opposed to producing that information, or if you have any changes regarding the ACT Team.

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.22**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Correll, Michael A. <MCorrell@reedsmith.com> |
| **Sent:** | Tuesday, October 20, 2020 11:09 AM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Stanbery, Rhonda L.; Morris, Brian K.; Jeff D. Jennings |
| **Subject:** | RE: Carter v. TWU 556 et al. |

It does appear that we will engage in self-collection for the other RFPs on everyone except the ACT Team.  If that changes as we progress for any reason, I will let you know.

On the ACT Team, I am still investigating because, as its name suggests, it is a distribution list consisting of numerous team members.  We are attempting to ascertain how feasible such an effort would be and the best way to go about it.

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Tuesday, October 20, 2020 10:06 AM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

Hi Michael,

I just wanted to check in and see whether you have heard back from Southwest about including the other RFPs for the 13 custodians, and including the ACT Team.

Thanks,
Matt

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.23**

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Wednesday, October 14, 2020 12:20 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings
<jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

Matt,

We are in agreement as to RFPs 2, 15, and 16 as to all 13 custodians previously agreed.

I am re-visiting the remaining RFPs with Southwest in light of the changed collection approach, but I anticipate we will include those RFPs too.  The problem with the search terms that provoked the dispute was the high probability that no or almost no responsive documents exist for most of those RFPs for most of the custodian and more than 95% of "hits" would be non-responsive.  As a result, we were going to be running complicated searches and conducting expensive reviews to demonstrate a negative when self-collection and custodian attestation could resolve those issues quickly and cheaply.  I expect that, through self-collection paired with deposition, we can work with the custodians to much more efficiently address those RFPs, which may negate those concerns.  Regardless, if we do not engage in self-collection on those RFPs for some reason, I will let you know in advance in writing so that you have a full understanding of what we undertake.

Mike

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Wednesday, October 14, 2020 12:11 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings
<jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

Thanks, Michael. I had a couple of other questions to clarify about the custodians. I had assumed that we were already in agreement about including the 13 Custodians for RFPs 2, 15, and 16, based on our prior letters and phone call. Let me know if that is correct.

Also, I wanted to verify whether Southwest will include the 13 Custodians as part of the self-collection for RFPs 4-8, 10, 17-19, and 21.

Thanks again,
Matt

**App.24**

Matthew B. Gilliam
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Wednesday, October 14, 2020 11:48 AM
**To:** Matthew B. Gilliam <mbg@nrtw.org>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

Matt,

Thank you for your correspondence below.  Based on my review the records, we dispute the characterization of how the parties have discussed this situation over the last year.  However, I do not believe pressing that dispute in either direction will be beneficial to anyone at this point.  Instead, the important thing is that I agree that proceeding through a traditional collection process rather than formalized ESI process will be more much expeditious and it is far more likely to get you the materials you seek.  I am engaging with Southwest to see how quickly we can get that process done.  I will be pushing to get you everything very fast with productions to begin as early as the beginning of next week if at all possible.

As for the ACT team, I will raise the issue again now that we are moving to a self-collection protocol to see if we can avoid a dispute.

Finally, a vendor platform would be essential here to provide the robust support required to ingest, search, review, and produce files out of such a large data set.  Generally, a vendor platform is required for more than a few thousand documents.  Native programs, such as Outlook, cannot process complex search terms like the ones we have contemplated to date.  Further, a native-system processing and review approach would generate far greater costs in terms of review and production because it lacks necessary functionality to streamline those processes.  Regardless, I am optimistic that we can bypass this issue through traditional self-collection.

Sincerely,

Michael A. Correll
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

3

**App.25**

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Tuesday, October 13, 2020 8:41 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>
**Cc:** Stanbery, Rhonda L. <RStanbery@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter v. TWU 556 et al.

EXTERNAL E-MAIL - From mbg@nrtw.org

Dear Michael and Brian:

From the outset, when Brian and Michele insisted that Carter provide search terms and custodians in May 2019, we stated our position that Southwest should conduct its own searches internally, and that trying to formulate search terms and custodians would be unnecessary and inappropriate. Southwest re-iterated the same demand in its discovery responses. For the last year or so we have engaged in search term and custodian discussions in order to accommodate Southwest's overbroad/undue burden concerns.

We still believe that it makes sense to have the custodians engage in self-collection. If Southwest agrees and wishes to abandon ESI/search terms, then please confirm that Southwest will begin the self-collection process and let us know when we might be able to expect production of responsive documents. Also, please confirm whether Southwest would include the 13 Custodians when producing responsive information for RFPs 4-8, 10, 17-19, and 21. We assume that Southwest is still unwilling to include the ACT team in its searches for RFPs 2(B), 8, 18, 19, and 21.

We also did not understand the purpose of uploading all of the files to the third party platform. Is there a reason why Southwest can't perform the searches on its own database (without uploading and storing info on the platform)?

Thanks,
Matt Gilliam

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE:** This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.

## Matthew B. Gilliam

| | |
|---|---|
| **From:** | Correll, Michael A. <MCorrell@reedsmith.com> |
| **Sent:** | Friday, October 9, 2020 3:26 PM |
| **To:** | Matthew B. Gilliam; Morris, Brian K. |
| **Cc:** | Jeff D. Jennings |
| **Subject:** | RE: Issues from 9/29 Meeting |

Sure.

You have requested that we run searches for 14 custodians for a period of more than eight years. We have agreed to run searches on 13 of those custodians (we do not agree to search the ACT custodian) for the period June 1, 2013 through the present, a duration of more than seven years. Those 13 custodians have 7,144,916 files on legal hold. The vast majority of those files are emails.

Disco, the review platform provider contracted by Southwest, charges $30,000/month to host one (1) terabyte of data. This price is actually at the lower end based on my experience with discovery vendors. I have not yet determined the full data volume here, but Southwest informs me that 600,000 mixed files usually equals one (1) terabyte. I do not know if that will be true given the higher ratio of email here. As a result, I have grossly underestimated because a $100,000 ingestion cost alone creates a disproportional burden in this case and that figure represents. In reality, I anticipate well more than three (3) terabytes of data resulting from the 7 million files. I am working with Southwest to use a preliminary screening product called Discovery Accelerator to reduce the number of files that need to be uploaded. But Discovery Accelerator has a less robust search functionality. For instance, it cannot do proximity searching. As a result, we can only narrow the 7 million emails using search terms that are un-disputably broader than the agreed final terms, such as searching "Charlene" or "Carter" without any limitations and pulling in all of those documents despite the likelihood that other employees have those names. As a result, I am not optimistic (particularly given the terms in the fee objector RFPs) that Discovery Accelerator will materially reduce the document count under your demanded searches.

The Disco cost will be re-incurred each month because we cannot purge the database until we are certain that we will not have to run additional searches on the base set, which likely means until the close of discovery given the positions you have taken. Meanwhile, many of the search terms you have provided are certain to fail because they utilize common terms, which may lead to an iterative process. As a result, I anticipate we will incur at least two months of costs and, if discovery is extended, the full extension period.

Again, to be clear, this figure above is **only** the data hosting costs. We anticipate presenting the court with substantial additional disproportionate costs, such as review costs, if a motion is filed. Given this volume, the much better course would be to have the custodians engage in self-collection and abandon ESI, but I am assuming that you are not willing to entertain that option. Candidly, I do not believe that these searches will reveal any meaningful documents that would not be gathered by self-collection by each custodian and we could make such a production much more quickly and without this cost or the need for an extension.

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns*: He/Him/His

## Matthew B. Gilliam

| | |
|---|---|
| **From:** | Morris, Brian K. <BMorris@reedsmith.com> |
| **Sent:** | Friday, October 9, 2020 3:48 PM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Jeff D. Jennings; Correll, Michael A. |
| **Subject:** | RE: Issues from 9/29 Meeting |

Matthew:

As a follow up to Mike's email below, I wanted to address the items you raised in your summary of the parties' call regarding discovery issues. As an initial matter, you have correctly summarized our positions regarding the time frame (*i.e.*, beginning June 2013); RFP No. 5; the relevance, overbroad/unduly burdensome, and vague/ambiguous objections; the interrogatory verification; and Southwest's opposition to extending the discovery deadlines. I address the other issues you raised in turn:

- **Custodians:** We did not agree to include the ACT team in the email search. Also, we will attempt to broaden search beyond what we initially proposed. However, we will not conduct a review if a search generates a number of hits that would make the review over burdensome and costly. We should have more clarity on this once we have details on the results of the search. Regarding the "similarly situated" issue, our understanding of your position is that it includes all Southwest flight attendants. We do not accept that definition and thus the issue is still in dispute.

- **Search Terms**: We will attempt to run the search using the term "Carter" and provide information regarding the results. However, we cannot commit to reviewing those materials until we understand the number of hits and the costs of conducting the review with "Carter" added to the search.

- **RFP No. 5**: This request seeks all documents and communications regarding any Southwest employee's membership status in Local 556. Southwest will not produce these materials.

- **RFP No. 10**: We have produced documents responsive to this request but will not conduct additional email searches.

- **RFP Nos. 18-19**: Southwest is not producing documents regarding non-party accommodation requests for the reasons we discussed.

- **Bates Labelling**: We have produced documents as they are ordinarily maintained and you have not provided law suggesting the contrary. Thus, we do not believe further identification is necessary. However, we will provide the bates labels that correspond to each search.

- **Privilege**: You are correct that Southwest is only withholding post-Step 2 communications based on privilege at this time. However, we may locate others privileged materials as we conduct the email search.

- **Fee Shifting Protocol**: We do not insist on the precise fee shifting protocol outlined in our initial letter. However, any electronic discovery review must be reasonable and not over burdensome given the needs of this case. We will have more information in that regard once the initial searches are complete and will provide you with information as we receive it.

- **Searches for Specified RFPs and Interrogatories**: The parties have not reached an agreement regarding Interrogatory No. 3 and did not discuss many of the other items you raise here (*e.g.*, Interrogatories 1-2, among

**App.28**

others).  We also continue to dispute the relevance of various categories of materials Carter seeks (*e.g.*, documents regarding reproductive freedom).  That said, Southwest has either already provided responses to these requests and/or will identify responsive materials in course of the electronic discovery review based on the agreed upon search terms.

Please let us know if you have questions.  Thank you.

**Brian K. Morris**
469.680.4226
BMorris@reedsmith.com

Reed Smith LLP
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
+1 469 480 4200
Fax +1 469 680 4299

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Friday, October 9, 2020 1:38 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>; Morris, Brian K. <BMorris@reedsmith.com>
**Cc:** Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Issues from 9/29 Meeting

Matt,

Your motion will be premature.  Brian is sending you our positions on your email earlier this week in the next hour or so.  As we discussed, very few of these issues require court intervention if any.

Further, you asked us to present quantifiable burdens.  At this stage, you are asking us to ingest and analyze over 7 million emails at a cost of over $100k per month (perhaps as high as $250k person month depending on the final data volume) to upload and store.  That does not include review costs.  We have been working diligently with Southwest to find a way to make searching possible without having to incur these extraordinary costs, which in turn would require us to take this issue to the court.

Again, on the extension, plaintiffs made representations to the court about deadlines in this case in December 2019.  Plaintiff has failed to diligently prosecute this case or reasonably cooperate to avoid discovery disputes.  As a result, Southwest will oppose any request for extension at this time.

Michael A. Correll
ReedSmith LLP | 2501 N. Harwood | Suite 1700 | Dallas, TX 75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Date:** Friday, Oct 09, 2020, 11:17 AM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>, Morris, Brian K. <BMorris@reedsmith.com>
**Cc:** Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Issues from 9/29 Meeting

EXTERNAL E-MAIL - From mbg@nrtw.org

Good afternoon, Michael and Brian.

**App.29**

We received your last email. Since we do not really have any more answers from Southwest at this stage, our plan is to file our motion to compel next Wednesday. Given the disputes I outlined in my last email, I assume that Southwest is still opposed to our motion to compel on those issues. We would still welcome your response to the specific items in my last email, especially if there are any changes.

We also plan on filing a motion to extend the discovery deadline soon thereafter (probably to 3/4/2021, the same date as our expert discovery deadline). Based on our last discussion, I assume that Southwest would still be opposed to that motion. However, we would welcome discussion regarding alternative dates.

We would be happy to have a call with you on Tuesday to discuss these issues if you are available.

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

---

**From:** Correll, Michael A. <MCorrell@reedsmith.com>
**Sent:** Monday, October 5, 2020 4:47 PM
**To:** Matthew B. Gilliam <mbg@nrtw.org>; Morris, Brian K. <BMorris@reedsmith.com>
**Cc:** Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Issues from 9/29 Meeting

Counsel:

I will review and circle back.  In the meantime, I can update you on the hit reports.  We are delayed in running them because the custodians you have identified have over 7 million emails from 2013 through the present.  We were unaware of this volume for the remaining custodians prior to our last call with you.  As a result, collection and digestion by the platform is taking longer than expected and I am confirming the cost of such an enormous upload as it may present a prohibitive burden.

**Michael A. Correll**
ReedSmith LLP | 2850 N. Harwood | Suite 1500 | Dallas, TX  75201
Tel: 469.680.4264 | mcorrell@reedsmith.com

*Pronouns:* He/Him/His

**App.30**

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Monday, October 5, 2020 4:11 PM
**To:** Correll, Michael A. <MCorrell@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>
**Cc:** Jeff D. Jennings <jdj@nrtw.org>
**Subject:** Issues from 9/29 Meeting

EXTERNAL E-MAIL - From mbg@nrtw.org

Michael and Brian,

I am writing to make sure that we are on the same page regarding various issues/items we discussed during last Tuesday's call. Please respond so that we can resolve any disagreement over our understanding of events, or to clarify anything else not in the list. Also, our understanding was that Michael planned to talk to Southwest last Tuesday about if/when the company would run hit reports showing the unique hits each search string generated across the custodians for the applicable requests (i.e., those using search terms and custodians), and would report back on if/when the company would provide those. Do you have any updates about the hit reports?

Disputed issues to be resolved by discovery motion:
- Custodians: Including Barnett, Stephenson, Kissman, Burdine, Lacore, Emlet, Jones, Gutierrez, and Shaffer as custodians for RFPs 4-8, 10, 17-19, and 21, and the ACT Team for RFPs 2(B), 8, 18, 19, and 21. While we did not revisit the specifics of our similarly-situated employees dispute again in our last meeting, my impression was that resolving the custodians issue would resolve this objection as well. However, we do not think that similarly situated employees are only those who worked under Ed Schneider.
- Search Terms: Using "Carter" as a search term for RFPs 2(A), (E), and (F). Our understanding is that you were going to let us know if you would run a hit report to see how many unique hits this term generated for each custodian
- RFP 5: Southwest will not produce any responsive information
- RFP 10: Southwest will not run any additional searches
- RFPs 18-19: We continue to dispute the relevance of discovery about employees who sought a religious accommodation request. Our recollection was that Michael mentioned he might chat with Southwest about searching for documents related to these requests. Please let us know if Southwest is agrees to producing documents related to these requests.
- Southwest will not identify which bates-labeled documents are responsive to each of Carter's requests. But Southwest could disclose the bates numbers corresponding to each search term used.

Other items:
- Timeframe: Southwest will produce responsive information back to June 2013
- Privilege Log: All of the documents that Southwest is withholding under a privilege claim are post-Step 2 litigation documents for which it asserts attorney-client or work product privilege
- Southwest is not withholding any documents based on relevance, overbroad/unduly burdensome, or vague/ambiguous objections apart from what it has not yet produced based on the parties' disagreement over search terms, custodians, and which employees are similarly-situated.
- Southwest is not demanding (as a condition of agreeing to search terms) the fee shifting protocol described in Michael Correll's July 7, 2020 letter whereby it refuses to review unique hits generated by search terms returning more than 300 unique hits unless Carter agrees to pay for the review
- [Not 100% sure if we reached agreement on this one] The parties are not developing/applying search terms and custodians for RFPs 1, 3, 11-14, 20, 22-25, 27, and Interrogatories 1-6. Southwest will search and produce responsive documents without selecting search terms and custodians.
- Southwest agrees to provide a verification for interrogatories once we determine who will serve as the company's Rule 30(b)(6) representative
- Depositions: Southwest will check on the weeks of Oct 19, Oct 26, and Nov 2 for deposition dates
- Southwest will oppose any request to extend the discovery deadlines

**App.31**

Thanks,
Matt

_____

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

**App.32**



**Michael A. Correll**
Direct Phone:  +1 469 680 4264
Email:  mcorrell@reedsmith.com

Reed Smith LLP
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
+1 469 680 4200
Fax +1 469 680 4299
reedsmith.com

September 18, 2020

**By Electronic Mail:  mbg@nrtw.org**

Matthew B. Gilliam
National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Ste. 600
Springfield, VA 22160

           **RE: Carter v. Southwest et al.**

Matt:

I write in response to your August 31, 2020 correspondence regarding Southwest's proposal to address the parties' ongoing discovery issues.  Candidly, we are disappointed by your letter.  It raises issues that you did not mention during our May 2020 telephone call, and makes regressive proposals that likely will obstruct the parties' ability to reach an amicable resolution.  We attempt to address the issues you raise here in the hopes of moving forward and avoiding unnecessary motions.

**Background and General Issues**

As you know, you propounded the discovery requests that form the basis for our current meet and confer efforts in April 2019.  Anticipating issues given the overbroad nature of the requests, we promptly (before even responding) suggested that the parties begin meet and confer efforts.  In particular, we noted that your requests purported to require Southwest to search for documents and communications regarding a vast range of topics from all current and former Southwest employees and other non-employee affiliated individuals and entities for an 8-year period.  You resisted our proposal, insisting that the requests were simple and straightforward.  Now, seventeen months later, it is clear that the requests are not simple and straightforward.

As we have maintained throughout discovery, we are willing to work with you to identify relevant custodians and search terms that are proportionate to the needs of the case.  Bear in mind, this case—insofar as it relates to Southwest—consists of two simple employment claims.  In this regard, we are confused by your repeated suggestion that Southwest never explained the burdens and disproportionality of complying with your overbroad discovery demands.  More than a year ago, Southwest provided you with the results of a preliminary search with limited terms.  That search returned approximately 600,000 hits.  The searches you now propose would return significantly more and necessitate a review that is overly burdensome and not tethered to the needs of this single plaintiff case.

Indeed, it is notable that in your latest correspondence, you refuse to any custodian-based limitation on numerous documents requests.  With these requests, you seek 8 years (2012 – present) of documents and

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-155444258.1-BKMORRIS

**App.33**

Matthew B. Gilliam
September 18, 2020
Page 2



correspondence related to a variety of topics to or from any and all of Southwest's "current or former officers, employees, representatives, agents, intermediaries, successors, and other persons acting on its behalf." Not only are the topics and time periods facially overbroad, complying with the requests would involve searching the records of thousands of custodians (including Southwest's more than 60,000 current employees). It is unfortunate that after seventeen months and what seemed like (but apparently were not) cooperative and constructive discussions this Spring, you have chosen to reverse your own prior positions and make demands that necessarily force motion practice.

We are also confused by your statement that Southwest indicated that it is unwilling to produce documents regarding former employees. That is not accurate. In fact, Southwest has already produced documents regarding former employees.[1] Southwest only objects to conducting the kind of search required to comply with your demands as drafted, as that would require searching and reviewing an untold number of records from thousands of distant custodians who have no connection to Carter or the facts of this case. Thus, to clarify, Southwest is willing to produce relevant and responsive documents regarding former employees.

More generally, we note that your refusal to proceed with other discovery until Southwest conducts broad searches and produces documents on a variety of topics has complicated discovery and hampered our negotiations. A corporate representative deposition on key topics would clarify and limit the scope of discovery (*e.g.*, by identifying the relevant decision makers, custodians, etc.). Because you have refused to develop a record in this case, your proposals seek to require Southwest to search for documents and information based on speculation rather than relevant testimony. For example, throughout your letter, you state that all 13 custodians you identify were "applicable decision makers." We do not know how you reached this conclusion after we have presented evidence and made representations about the true identity of the actual decision makers in this matter. To help advance the discovery, we reiterate our earlier proposal that you conduct a corporate representative deposition on key topics and that the parties revisit their discovery issues thereafter.

With these facts and background on the table, Southwest provides the following updated proposal, which we believe is generous given the needs of this single plaintiff case.

**Issue #1: Proposed Custodians**

The proposed list of custodians has no connection to the facts of this case nor is it proportional to the needs of this case. Utilizing your proposed list of custodians as broadly as you demand imposes undue costs and burdens out of proportion to the needs of this matter. In an effort at compromise, Southwest proposes searching the Southwest email accounts of the following employees as limited to the requests for production indicated. Please note that Request for Production No. 2 would include all subparts.

> Mike Sims – All
> Ed Schneider – All
> Audrey Stone – All
> Charlene Carter – All

---

[1] Note that Southwest has produced the entire personnel files of the individuals you identified in Request for Production 28 (Issue #17).

Matthew B. Gilliam
September 18, 2020
Page 3



        Edie Barnett – RFP 2, 15-16
        Suzanne Stephenson – RFP 2, 15-16
        Dave Kissman – RFP 2, 15-16
        Melissa Burdine – RFP 2, 15-16
        Sonya Lacore – RFP 2, 15-16
        Maureen Emlet – RFP 2, 15-16
        Meggan Jones – RFP 2, 15-16
        Denise Gutierrez – RFP 2, 15-16
        Tammy Shaffer – RFP 2, 15-16

Agreement to this list of custodians is contingent on the parties agreeing to the resolution of the other asserted disputes.

**Issue #2: Time Period**

We are willing to search for and produce post-termination responsive documents. However, you have not articulated any basis for requesting documents going back to January 2012, which precedes nearly every relevant allegation in the Fourth Amended Complaint. You also do not tether the time period to each particular request. We do not see a basis for reviewing 8 years of documents for all of your requests. However, in an effort to reach a compromise, we are willing to conduct the search for documents beginning in September 2013, the month Carter claims to have opted out of Local 556.

**Issue #3: RFP 6 and RFP 7**

Requests for Production 6 and 7 generally call for the production all documents concerning Southwest's social media policies and related discipline; and any and all communications regarding any Southwest employee's social media activities. You also insist on the production of nearly a decade of communication regarding any social media issues involving thousands of flight attendants (of which there are currently 17,000) irrespective of their location, the decision makers involved in any resulting discipline, or the kind of social media activity at issue.

As we previously stated, Carter's requests for information regarding employee discipline must be limited to individuals that are similarly situated. Your proposal – which includes every single flight attendant in the country over an 8-year period irrespective of the nature of the issues involved – is not reasonable.[2]

---

[2] This issue exists in many of your proposals, including those in Issue #13. Every single flight attendant (of which there are currently more than 12,000) employed with Southwest from 2012 to the present in any location are not "similarly situated" for purposes of Carter's claims and the scope of discovery. Your proposal does not have any reasonable limitation (decision makers, issues, etc.) that would reasonably limit the scope of discovery. Thus, we cannot agree to your proposal on this issue at this time. *See generally Browning v. Southwest Airlines Co.*, 2019 WL 1778628, *4 (N.D. Tex. Apr. 23, 2019) (*citing Moore v. Univ. Miss. Med. Ctr.*, 719 Fed. Appx. 381, 385 (5th Cir. 2018) (comparators must be similarly situated, which requires plaintiff to establish "nearly identical circumstances")).

Matthew B. Gilliam
September 18, 2020
Page 4



As a good faith compromise, Southwest will agree to search for and produce documents: (1) concerning social media flight attendant discipline involving Ed Schneider; and (2) concerning Step 2 reviews of social media flight attendant discipline conducted by Mike Simms.

Southwest will also agree to run the applicable search terms for these requests on the email accounts for Carter and Audrey Stone out of an abundance of caution and produce responsive materials if any.

### Issue #4: RFP 18 and RFP 19

Request for Production 18 and Request for Production 19 generally call for the production of all complaints concerning religious issues and requests for religious accommodation.  Again, these requests are generally irrelevant, overbroad, and unduly burdensome because they are not limited to similarly situated individuals (regarding the decision makers or the content of the request or complaint).  In fact, you insist that every single flight attendant over an eight-year period is similarly situated for the purposes of this request.

Southwest notes that you have repeatedly stated that it does not matter whether or not Carter requested an accommodation.  Even if that is true with respect to liability in this case, that assertion does not define the scope of permissible and reasonable discovery.  You have repeatedly refused to articulate the relevance of the fact that Southwest may have granted or denied another employee's accommodation request in another location in different circumstances having nothing to do with the sorts of behavior at issue in this case.  We remain confused as to the basis for the request and your insistence on including every single current and former flight attendant employed by the Company within it.

Absent additional clarification or authority regarding your position, Southwest stands on its initial proposal.

### Issue #5: RFP 21 and RFP 27

Request for Production 21 and Request for Production 27 generally call for documents concerning reproductive freedom and the purported relationship between Southwest and Planned Parenthood.  As we indicated, you have not tailored these requests to the relevant decision makers.  Additionally, we do not believe these documents will be probative of any material issue in this case.

You contend that these documents are relevant because Carter believes that Southwest terminated her for her opposition to abortion and related communications.  We understand that to be Carter's accusation.  However, the fact that Carter believes she was terminated for her abortion-related communications does not render every communication other Southwest employees had with Planned Parenthood or regarding reproductive freedom relevant to this case.   As indicated above, despite our belief that such communications have no relevance, Southwest has nonetheless agreed to search for such documents in the files of the actual decision makers responsible for Carter's discipline and termination.

Matthew B. Gilliam
September 18, 2020
Page 5



Given the above, Southwest reiterates its prior proposal on these requests.[3]

**Issue #6: Search Terms**

Southwest accepts your proposed search terms (subject to the search protocol previously outlined), except as follows:

> **RFP 2(E)-(F)** – We do not agree to include "Carter" in these searches.  Including such a common name in the searches is likely to return thousands of false hits.

> **RFP 10** – Southwest has produced documents to you regarding the cabin lighting per your request.  However, Southwest will not conduct additional searches for documents concerning this topic.

We understand that issues the parties did not anticipate often arise in the course of electronic discovery.  Thus, to the extent our searches return anomalous results that suggest modification of the search protocol appropriate, we will meet and confer with you in good faith in an effort to address the issue.

**Other Discovery Issues**

Your letter raises new discovery issues that the parties did not discuss during the May 2020 telephone conference.  Nevertheless, we attempt to address them here.

**Overbroad, Burdensome, Relevance, and Other Objection Issues (Issues 8-10, 12)**

Due to the overbroad nature of the requests (with respect to time period, custodians, and topics) as drafted, Southwest raised various objections including overly burdensome, relevance, and others.  These objections were necessary, as your requests purported to demand that Southwest search through the correspondence of thousands of employees over an 8-year period located throughout the country on matters that have little or nothing to do with this case.  These requests remain unchanged and thus the objections cannot be withdrawn at this time.[4]

If the requests are withdrawn, amended, or the parties agree on a scope for the search and production, these can be re-evaluated.  But Southwest cannot commit that it has or will produce all the documents you

---

[3] We can inform you that Southwest has not donated money to Planned Parenthood during the time period at issue (2012 – present), and that Southwest has no relationship with the entity.

[4] As we have stated for more than a year, we cannot clearly identify what documents exist (or that will be withheld) unless and until we agree on a search that does not include tens of thousands of individuals for an 8 year period. What Southwest does know is that the requests as drafted are overbroad, burdensome and untethered from the issues in this case.  Until the parties agree on a reasonable search and Southwest conducts an appropriate review, it cannot rescind its objections.

**App.37**

Matthew B. Gilliam
September 18, 2020
Page 6



request because it cannot reasonably search for and review them.  Thus, its objections must remain at this time.[5]

### Privilege Log (Issue #7)

In your letter, you assert that Southwest has waived the attorney-client privilege.  We are not aware of the basis for any claimed waiver and believe the assertion to be frivolous.

To address your substantive inquiry, as we explained more than a year ago, the documents we have withheld based on privilege are post-grievance/litigation communications involving Southwest's inside and outside legal team preparing to defend against Carter's claims.  At that time, we indicated that we did not believe a formal log separately identifying each of these communications was necessary or appropriate.  However, we did acknowledge that a privilege log may be necessary as the document review proceeds.

In summary, we acknowledge that future document searches may reveal privileged documents that do not fall within the category above.  We have indicated that we will appropriately identify such documents on a privileged log and remain willing to do so.  If you are taking the position that we must individually identify all of Southwest's communications with outside counsel on a privilege log, we believe that is burdensome and an unnecessary waste of resources.

### Request for Production 5 – Union Member Status of Third Parties (Issue #15)

Request for Production 5 seeks all documents and communications regarding any individual's agency-fee or non-member status with Local 556.  Southwest has not conducted a search for these documents because the request is unreasonable and you have not articulated any basis for seeking all such documents.  If there are particular individuals about whom you are concerned, we can explore the relevance of these documents vis-à-vis those individuals.    However, Southwest does not believe a general search for any communications of any sort over an 8-year period is reasonable or tethered to the legal issues in this case.

### Request for Production 10 – Cabin Lighting (Issue #16)

We have produced some information regarding cabin lighting.  However, Southwest has not searched the correspondence of every Southwest employee in the nation for documents regarding flight attendants changing the color of the cabin lights.  Such a search would be incredibly costly.  Meanwhile, such communications—unless involving an actual decision maker—have absolutely no relevance to any

---

[5] You also object to Southwest's use of the phrase "subject to and without waiving objections" in its discovery responses.  As an initial matter, to the extent Southwest has not produced documents, it is not based on that portion of its response, but rather on the unreasonable searches and review that your requests seek to compel.  Additionally, Southwest notes that Carter also responds subject to her stated objections but does so using a different formulation. Carter often makes a litany of objections and then states that she will "otherwise provide" responsive documents. By doing so, Carter has simply restated "subject to and without waiving" objections using a different phrase. Regardless, except where explicitly stated, no documents have been withheld based on the phrase "subject to and without waiving."  You may consider that phrase withdrawn anywhere asserted.

**App.38**



Matthew B. Gilliam
September 18, 2020
Page 7

material issue of fact.  As your goal appears to be to assess Southwest's view of the cabin lighting event (a fact which remains irrelevant), you can easily find out by asking questions of a corporate representative.

\*\*\*\*\*

I am hopeful that the parties will be able to reach a reasonable compromise that will obviate the need for motion practice.  We look forward to exploring these issues with you in a future call.

Sincerely,

*/s/ Michael A. Correll*

Michael A. Correll

MAC:rs



# NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC.

8001 BRADDOCK ROAD, SUITE 600, SPRINGFIELD, VIRGINIA 22160

**MATTHEW B. GILLIAM**
*Staff Attorney*
Admitted & Licensed in New York and West Virginia Only

Phone:  (703) 770-3339
Fax:       (703) 321-9319
Email:   mbg@nrtw.org

August 31, 2020

Michael A. Correll
Reed Smith LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201

Re:    *Carter v. Southwest, et al.*

Michael,

I am writing to respond to your July 7, 2020 letter regarding Southwest's discovery deficiencies, and to discuss other remaining issues with the discovery responses. We would like to schedule a telephone meeting next week to discuss these issues and whether Southwest agrees to the requests herein.

**Issue #1 Proposed Custodians**

We will agree to Southwest using the following custodians in its search and production efforts for RFPs 2, 4-8, 10, 15-19, 21. Except for the ACT Team, all of the listed custodians must be used for each of these requests:

- Mike Sims
- Ed Schneider
- Audrey Stone
- Charlene Carter
- Edie Barnett
- Suzanne Stephenson
- Dave Kissman
- Melissa Burdine
- Sonya Lacore
- Maureen Emlet
- Meggan Jones
- Denise Gutierrez
- Tammy Shaffer
- ACT Team (only RFPs 2(B), 8, 18, 19, 21)

**Defending America's working men and women against the injustices of forced unionism since 1968.**

**App.40**

We will not agree to limiting custodians any further, especially since Southwest has never explained the costs or burdens of conducting these searches with sufficient particularity (e.g., costs, number of documents generated by the searches for the various custodians). To the extent that the discovery process identifies other custodians who potentially have responsive documents, we also reserve the right under the Federal Rules to request that Southwest search and retrieve responsive information from those sources.

We do not see any reason for limiting RFPs 1, 3, 9, 11-14, 20, 22-28 or Interrogatories 1-6, to any specific group of custodians.

Also, Southwest and its custodians should produce all responsive documents wherever located.

## Issue #2 Time period

We will not agree to restrict the timeframe to March 1, 2015, through April 1, 2017. Southwest should search and produce responsive information for the original five year timeframe provided for in Carter's Discovery Requests (i.e., January 2012 to Carter's March 2017 termination). Furthermore, Southwest has a continuing obligation to produce responsive documents after the date of Carter's March 2017 termination, so there is no basis for restricting Southwest's obligations under the federal rules with an April 1, 2017 end date, as you have proposed.

For RFP 9, we are seeking responsive information related to Southwest flight attendants seeking time off or a change in their schedule in order to attend the 2017 Women's March. We do not believe that the time parameter is critical to this request, and would ask that you produce all responsive information.

## Issue #3 RFPs 6 and 7

We will agree to limit Southwest's search for information responsive to RFPs 6 and 7 to the custodians identified in Issue #1, without any further restrictions to the list of custodians or the requests themselves. Ed Schneider consulted with Labor Relations, Human Resources, In-flight, and Employee Relations as part of Southwest's termination decision, and they did so in order to maintain consistent disciplinary standards in the company's employment decisions. The applicable decision makers include the other custodians. Furthermore, each of the named custodians was involved in Carter's termination and likely has discoverable information.

For RFPs 6 and 7 we also agree to defining similarly-situated employees as flight attendants in the collective-bargaining unit. We do not agree with Southwest's definition of similarly situated employees according to communication content, or the scale of discipline. There is no basis for those restrictions, and they limit Carter's right to information that is discoverable under the federal rules and directly relevant to her claims. Therefore, we cannot agree to those restrictions.

As described above, Southwest did not provide adequate information regarding its burdens in searching for or retrieving responsive information, and we do not see how search terms would be relevant or beneficial for these requests.

**App.41**

Michael A. Correll
August 31, 2020
Page 3 of 7

## Issue #4 RFPs 18 and 19

We will agree to limit Southwest's search for responsive information to the custodians identified in Issue #1, including the ACT Team. As with RFPs 6 and 7, Ed Schneider consulted with Labor Relations, Human Resources, In-flight, and Employee Relations as part of Southwest's termination decision, and they did so in order to maintain consistent disciplinary standards in the company's employment decisions. The relevant decision makers include the other custodians. Furthermore, the named custodians were involved in Carter's termination and likely have discoverable information. Southwest has also confirmed that the ACT Team handles complaints regarding religious beliefs, views and practices, as well as religious accommodation requests.

We agree to defining similarly-situated employees as flight attendants. Southwest did not provide adequate information regarding its burdens in searching for or retrieving responsive information, and we do not see how search terms would be relevant or beneficial for these requests.

We will not agree to any further restrictions to the custodians or requests. Carter alleges that one of the reasons that Southwest fired her was for her religious beliefs, views, and practices, and its unwillingness to accommodate her beliefs. Therefore, the requests are not irrelevant. As we have said before, under *EEOC v. Abercrombie & Fitch*, 575 U.S. 768 (2016), it does not matter whether Carter specifically requested a religious accommodation. Southwest summarily fired her without offering any religious accommodation.

## Issue #5 RFPs 21 and 27

RFPs 21 and 27 are probative of disputed issues because Carter alleges that Southwest terminated her for her opposition to abortion, criticism of the union's support of Planned Parenthood, her pro-life religious beliefs, for engaging in the religious practice of sharing her religious beliefs on abortion with the union president, and for criticizing the union's position on abortion and the union's participation in the Women's March.

For RFP 21 we will agree to limit Southwest's search for responsive information to the custodians identified in Issue #1, including the ACT Team. Ed Schneider acknowledges that he consulted with Labor Relations, Human Resources, In-flight, and Employee Relations as part of Southwest's termination decision, and they did so in order to maintain consistent disciplinary standards in the company's employment decisions. The relevant decision makers include the other custodians. Furthermore, the named custodians were involved in Carter's termination and likely have discoverable information. Southwest has also confirmed that the ACT Team handles complaints regarding religious beliefs, views and practices, as well as religious accommodation requests.

For RFP 27, Southwest says that it has no "material" relationship with Planned Parenthood, and no "meaningful" documents. Please explain:

- What Southwest means when it says that it has no "meaningful" documents
- What search the company performed in reaching that determination

**App.42**

If Southwest is withholding responsive documents, or not willing to search and produce such documents for RPF 27, then Carter will file a motion to compel.

We will provide search terms for RFP 21 as specified below, but we do not see how they would be beneficial for RFP 27.

**Issue #6 Search Terms**

During our next meeting, we would like to discuss the details and functionalities of Southwest's system for performing these searches (e.g., what engine, software, etc. Southwest is using). We assume that Southwest's system can run Boolean searches, that none of the searches will be case sensitive, and that the searches will exclude any extraneous commas or periods. Regarding some of our specific search terms, whether we agree to the underscoring depends on whether Southwest's search will look specifically for underscores, or whether it will treat the underscores as a space.

A. RFP 2(A): We generally agree, but searches must include the search strings for "Carter". Search strings must also include ("post!"), ("messag!"), ("messeng!"), ("internet"), and ("web") back in for "Charlene" and "Carter". Both search strings should also include "_dm_" and "_pm_".

B. RFP 2(B): We agree.

C. RFP 2(C): Search strings must include "sign!" for "Carter"

D. RFP 2(D): Both search strings must include "due!", "fee!", "agen!", and "AFNMO". "Agency fee" is too narrow because it fails to capture information describing agency fee objector status.

E. RFPs 2(E)(F): Searches must include "Carter"

F. RFP 4: Search strings must include some variation of the strings that Southwest excluded. We have revised those strings as follows:
"recall!" and [("vot!") or ("sign!") or ("remov!") or ("petition!") or ("organiz!") or ("effort!")] and [("union!") or ("board") or ("executive board") or ("556") or ("TWU") or ("officer!")]

[("remov!") or ("recall!") or ("vot!") or ("sign!") or ("petition!")] w/3 [("union!") or ("board") or ("executive board") or ("556") or ("TWU") or ("officer!")]

G. RFP 5: Search strings should include "in" w/3 "union" and "out" w/3 "union" as described in our first request.

H. RFP 8: We agree to exclude ("women" and "march"). Searches must include the string "women or march" and ("inaugurat!" or "trump" or "Washington" or "union" or "January"), as originally provided for in our first list.

I. RFP 10: We will file a motion to compel if Southwest refuses to search.

J. RFP 21: We agree.

We agree that Southwest must provide us with a list of anything it deems to be a failed search

**App.43**

term and its respective unique *document* hit counts. We will not agree to any fee shifting for reviewing hits generated by failed search terms, especially where information is reasonably accessible, and Southwest has not demonstrated otherwise. We cannot see how reviewing 300 unique documents for responsiveness would be burdensome. However, for any instance where we can agree that searching each unique document would be unduly burdensome, we would be amenable to reviewing a statistically valid sample of documents to determine if the term is returning mostly responsive or unresponsive documents. Southwest would then provide that report along with any responsive documents. If necessary, we could make modifications to the term in dispute and run the search again.

Furthermore, Southwest will also perform a random statistically valid sample on the null set of documents (i.e., those documents that were not returned as responsive by the search process) to ensure that they are not relevant. Southwest would then provide us with that report along with any responsive documents.

## Issue # 7 Privilege Log

Despite repeated requests, Southwest has failed to provide us with a privilege log. We believe that Southwest has waived its privilege claims for RFPs 1-8, 10-21, 24-28, and Interrogatories 1-6. We request that Southwest provide us with a privilege log as soon as possible setting forth all of its privilege claims, including those for attorney-client privilege, work product privilege, and "privacy and confidentiality."

## Issue # 8 Overbroad/Unduly Burdensome Objections

Southwest asserts overbroad/unduly burdensome objections for every RFP and Interrogatory. Apart from issues such as search terms, custodians, timeframe, vague and ambiguous terms, and identifying who is similarly-situated, what specific issues form the basis for these objections? Outside of those issues, is Southwest withholding information on the basis of those objections?

## Issue # 9 Relevance Objections

Southwest asserts relevance objections for RFPs 2-28, and Interrogatories 1-3, 5. What, if anything, is Southwest withholding based on these objections? If Southwest is not withholding anything based on these objections, we would ask Southwest to amend its responses and withdraw the objections.

## Issue # 10 "Subject to and without waiving objections"

For RFPs 1-4, 8-14, 20-25, and Interrogatories 1-2, 4-5, 7, Southwest responds with a "subject to and without waiving objections" caveat. The Federal Rules prohibit responding to a discovery request "subject to and without waiving objections" to preserve future or unspecified objections. *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469-70 (N.D. Tex. 2015); *Heller v. City of Dallas*, 303 F.R.D. 466, 487 (N.D. Tex. 2014). These responses are combined with boilerplate objections, leaving us guessing as to the scope of information Southwest is providing. We ask that Southwest amend these responses and clarify what it is withholding and what it is producing for

these requests.

**Issue # 11 Citing to bates-labeled documents**

Rule 34 requires Southwest to identify by bates number which specific documents produced are responsive to each request. Rule 34(b)(2)(E)(i) requires a party to either produce documents as they are "kept in the usual course of business," or "organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Southwest has opted for the latter approach. Therefore, we ask that Southwest identify, by bates number, which specific documents produced are responsive to each request.

**Issue # 12 Vague and ambiguous objections**

Southwest objects to RFPs 2, 3, 6, 7, 10, 11, 15, 18, 19, 20, 26, 27, and Interrogatories 1-5, on the grounds that the requests (or certain terms therein) are "vague" or "ambiguous." Will Southwest be withholding any responsive information on the basis of those objections? If not, we ask that Southwest amend its responses and withdraw those objections. We do not see how any of these objections are defensible, or why you cannot attribute plain meaning to the requests/terms.

**Issue # 13 Similarly-situated objections**

In addition to its objections to RFPs 6, 7, 18, 19, discussed above, Southwest also raised "similarly situated" objections to RFPs 9, 15-17, 28, and Interrogatory 3.

For purposes of Interrogatory 3, Carter maintains that similarly-situated employees are all Southwest flight attendants whose social media activities were reported, reviewed, or discussed in whatever fashion. Carter also maintains that all of the flight attendants listed for RFPs 15-17, 28, are similarly-situated. While Crystal Reven may not have been disciplined for any social media policy violation, she is a relevant comparator as a union member and officer who was disciplined by the company.

For purposes of RFP 9, a similarly-situated employee is any flight attendant.

**Issue #14 Including former employees**

Southwest objects to RFPs 2, 3, 6, 7, 10, 18, 19, 26, and 27, for seeking information regarding current and former Southwest employees. For which of these requests (if any) is Southwest withholding responsive information on the basis of these objections?

Will reaching agreement regarding search terms, custodians, and similarly-situated employees resolve those objections for RFPs 6-7, 18-19?

To the extent Southwest maintains that producing responsive information for current and former flight attendants is unduly burdensome, please explain what that burden is.

**App.45**

**Issue #15 RFP 5 and seeking information related to employees' union membership status from Southwest, not the union**:

For RFP 5, Southwest objects that Carter should seek documents related to employees' union membership status from the union, not Southwest. However, we are seeking Southwest's communications about membership status. For this request we are seeking information in Southwest's sole possession, custody, and control. Is Southwest withholding responsive information on the basis of this objection?

**Issue #16 RFP 10 and seeking information related to employees turning the cabin lights pink**

For RFP 10, Southwest's July 7, 2020 Discovery Letter states that the company "refuses to conduct any searches for documents concerning employees turning cabin lights pink." Which of Southwest's objections forms the basis for your refusal? We will file a motion to compel production if Southwest refuses to produce responsive information.

**Issue #17 Southwest has not responded to our questions regarding RFP 28**

Southwest indicated that it will be producing documents in response to this request, but it suggested that it will not be producing the employees' entire personnel files. We asked Southwest to explain what it is producing and what it is not producing, but Southwest has never responded. Please provide Southwest's response.

*\*\*\**

We would like to schedule a meeting for next week to discuss these issues and your responses by telephone. Please respond and let me know when you will be available so that we can determine whether we will be able to resolve these issues.

Sincerely,

*/s/ Matthew B. Gilliam*
Matthew B. Gilliam

**App.46**



Reed Smith LLP
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
+1 469 680 4200
Fax +1 469 680 4299
reedsmith.com

**Michael A. Correll**
Direct Phone:  +1 469 680 4264
Email:  mcorrell@reedsmith.com

July 7, 2020

**By Electronic Mail**

Matthew B. Gilliam
National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Ste. 600
Springfield, VA 22160

   **RE: Carter v. Southwest et al.**

Matt:

I am writing to follow up regarding our conversation last month concerning Ms. Carter's deficiency contentions.  While Southwest does not concede any defect in its prior responses, it is willing to compromise on a number of points to achieve an efficient resolution of this dispute without the need for costly motion practice.  To that end, Southwest agrees to take the following steps to resolve Ms. Carter's deficiency contentions:

**Issue #1: Proposed Custodians**

Southwest continues to believe that the proposed list of custodians is overbroad and imposes undue costs and burdens out of proportion to the needs of this matter.  In an effort at compromise, Southwest proposes searching the Southwest email accounts of the following employees as limited to the requests for production indicated.  Please note that Request for Production No. 2 would include all subparts.

   Mike Sims – All
   Ed Schneider – All
   Audrey Stone – All
   Charlene Carter – All

   Edie Barnett – RFP 2
   Suzanne Stephenson – RFP 2
   Dave Kissman – RFP 2
   Melissa Burdine – RFP 2
   Sonya Lacore – RFP 2
   Maureen Emlet – RFP 2
   Meggan Jones – RFP 2
   Denise Gutierrez – RFP 2
   Tammy Shaffer – RFP 2

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON
RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON
US_ACTIVE-154155007.1-MACORREL 07/07/2020 5:17 PM

**App.47**

Matthew B. Gilliam
July 7, 2020
Page 2



Agreement to this list of custodians is contingent on the parties agreeing to the resolution of the other asserted disputes.

**Issue #2: Time Period**

Southwest will agree to search for documents during a broadened time period of March 1, 2015 through April 1, 2017.

**Issue #3:  RFP 6 and RFP 7**

Request for Production 6 and Request for Production 7 generally call for the production all Southwest documents concerning Southwest's social media policy and related discipline.  These requests are overbroad and unduly burdensome because they are not limited to similarly situated individuals with respect to the applicable decision makers, communication content, or scale of discipline.  Accordingly, Southwest will agree to search for and produce documents: (1) concerning social media flight attendant discipline involving Ed Schneider; and (2) concerning Step 2 reviews of social media flight attendant discipline conducted by Mike Simms where a termination was reversed or reduced to an outcome more favorable than a last chance letter.

Southwest will also agree to run the applicable search terms for these requests on the email accounts for Carter and Audrey Stone out of an abundance of caution and produce responsive materials if any.

**Issue #4: RFP 18 and RFP 19**

Request for Production 18 and Request for Production 19 generally call for the production of all complaints concerning religious issues and requests for religious accommodation.  Again, these requests are generally irrelevant, overbroad, and unduly burdensome because they are not limited to similarly situated individuals as to either the decision makers or similar content, and because it is undisputed that Carter never sought a religious accommodation.  Southwest will agree to conduct a search for any documents concerning a complaint by a flight attendant regarding religious issues involving Ed Schneider or Mike Simms.  Southwest represents that, more broadly, it does not have any documents concerning any complaints of religious issues or requests for religious accommodation concerning social media.

Southwest will also run the applicable search terms for these requests on the custodian files for Carter and Audrey Stone out of an abundance of caution and produce responsive materials if any.

**Issue #5: RFP 21 and RFP 27**

Request for Production 21 and Request for Production 27 generally call for documents concerning reproductive freedom and the purported relationship between Southwest and Planned Parenthood.  None of the documents sought in either request for production is probative of any disputed issue in this case. Further, the request is not properly tailored to the only individuals whose opinions on these topics could conceivably matter—the responsible decision makers.  With respect to Request for Production 21, Southwest will agree to search for responsive documents in the custodian files of Ed Schneider and Mike

Matthew B. Gilliam
July 7, 2020
Page 3



Simms. Southwest will also run the applicable search terms for these requests on the custodian files for Carter and Audrey Stone out of an abundance of caution and produce responsive materials if any.

With respect to Request for Production 27, Southwest represents that it has no material relationship with Planned Parenthood and a search has revealed no meaningful documents. Further, Southwest has no formal or informal relationship with Planned Parenthood. Accordingly, any additional effort to search for documents responsive to Request for Production 27 would be useless and a waste of resources.

## ISSUE #6: Search Terms

Southwest will agree to apply the following search terms to the listed custodians as defined in Issue #1. As a condition of resolution, the parties agree that any search term that returns more than 300 unique hits shall be deemed a "failed search term." Southwest shall not review unique hits generated by "failed search terms" unless Carter agrees to fee shifting to cover the costs of assessing responsiveness. Southwest will provide you with a list of the failed search terms and their respective unique hit counts.

Southwest proposes the following search terms based on modification of your prior proposal. Southwest states that all of the following searches would inappropriate and unduly burdensome if not limited as described above by custodian.

### RFP 2(A)

"Charlene" and: [("facebook"), ("_fb_"), ("tweet!"), ("twitter"), ("instagram"), ("snapchat"), ("_im_"), ("social media")]

### RFP 2(B)

"Charlene" and: [("women's march"), ("womens march"), ("womens' march"), ("relig!"), ("christian!"), ("evangel!"), ("gospel"), ("ideolog!"), ("church"), ("bibl!"), ("god"), ("jesus"), ("abort!"), ("pro-abortion"), ("pro abortion"), ("fetus"), ("pro life"), ("pro-life"), ("pro choice"), ("pro-choice"), or ("planned parenthood")]

"Carter" and: [("women's march"), ("womens march"), ("womens' march"), ("relig!"), ("christian!"), ("evangel!"), ("gospel"), ("ideolog!"), ("church"), ("bibl!"), ("god"), ("jesus"), ("abort!"), ("pro-abortion"), ("pro abortion"), ("fetus"), ("pro life"), ("pro-life"), ("pro choice"), ("pro-choice"), or ("planned parenthood")]

### RFP 2(C)

"Charlene" and: ("recall!"); ("sign!"); ("petit!"); ("elect!"); ("campaign!"); ("jeanna" or "jackson"); ("board" or "executive board"); "remov!" w/3 [("union!") or ("board") or ("executive board") or ("officer!")]

"Carter" and: ("recall!"); ("petit!"); ("elect!"); ("campaign!"); ("jeanna" or "jackson"); ("board" or "executive board"); "remov!" w/3 [("union!") or ("board") or ("executive board") or ("officer!")]

**App.49**

Matthew B. Gilliam
July 7, 2020
Page 4



**RFP 2(D)**

"Charlene" and: [("objector"), ("nonmember!"), ("non-member!"), ("scab!"), ("union!"), ("Local 556"), ("_556_"), ("TWU"), ("AFL-CIO"), ("union member!"), ("agency fee"), ("member!"), ("Right-to-Work"), ("Right to Work"), ("NRTW"), ("opt out"), ("opt-out")]

"Carter" and: ["objector," "nonmember!," "non-member!,"  "scab!", "union!" "union member!", "agency fee", "Right-to-Work", "Right to Work," "NRTW," "opt out," "opt-out"]

**RFP 2(E)**

"Charlene"

**RFP 2(F)**

"Charlene"

**RFP 4**

("jeanna" or "jackson") and [("remov!") or ("recall!") or ("vot!") or ("sign!") or ("elect!") or ("petition!") or ("effort!")] and ("board" or "executive board" or "union" or "556" or "TWU"]

("jeanna" or "jackson") and [("remov!") or ("recall!") or ("vot!") or ("sign!") or ("elect!") or ("petition!")] and lawsuit)

("jeanna" or "jackson") and [("petition!") or ("vot!") or ("elect!") or ("remov!") or ("organiz!") or ("collect!")]

 ("jeanna" or "jackson") and ("sign!") and ("recall!" or "remov!" or "vot!" or "elect!" or "petition!")

**RFP 5**

"objector!"
"nonmember!"
"non-member!"
"scab!"
"member!"
"dues"
"agency fee!"
"union fee!"
"Right-to-Work"

Matthew B. Gilliam
July 7, 2020
Page 5



"Right to Work"
"NRTW"
"opts out"
"opt out"
"opt-out"
"opt-outers"
"fee payer!"
"ellis"
"hudson"
"resign!"
"free rider!"
"Janus"
"Abood"
[("opt!" or "resign!" or "member!" or "fee!" or "dues" or "pay!" or "object!") and ("union!" or "_556_" or "TWU" or "AFL-CIO")]

**RFP 8**

[(women w/2 march) and ("inaugurat!" or "trump" or "Washington" or "union" or "January")]

**RFP 10**

Southwest refuses to conduct any searches for documents concerning employees turning cabin lights pink.

**RFP 21**

"abort!"
"pro-abortion"
"fetus"
"pro life"
"pro-life"
"pro choice"
"pro-choice"
"planned parenthood"
"reproductive freedom"
"reproductive rights"
[("women" or "woman") and ("choice" or "choos!" or "body" or "right!" or "free!")]
"right to choose"
"anti-choice"
"anti choice"

*****

**App.51**

Matthew B. Gilliam
July 7, 2020
Page 6

ReedSmith

Nothing in this letter is intended to assert or suggest that responsive documents exist.  Except where noted, Southwest does not know whether responsive documents will be found.  Southwest will conduct a search in good faith, but it anticipates that many, if not most, of these requests will not yield any responsive documents.

I am hopeful that this compromise will obviate the need for motion practice.  If you agree to foregoing, please let me know and we will begin the process of reviewing and producing documents per the terms set forth herein.

Sincerely,

*/s/ Michael A. Correll*

Michael A. Correll

MAC:rs

App.52

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Tuesday, May 19, 2020 2:35 PM |
| **To:** | 'Correll, Michael A.'; 'Morris, Brian K.' |
| **Cc:** | Jeff D. Jennings |
| **Subject:** | RE: Carter-SWA 5/20 Meeting: Discussion Items |
| **Attachments:** | Carter Requests Search Strings.docx |

Here are proposed search terms and search strings for various requests. Most of these are the terms we've discussed in the past, but some of them are combined into search strings in hopes of lowering the hits for the various custodians.

For RFP 2, the terms that follow the colon are the different terms to search in conjunction with "Charlene" or "Carter."

We can discuss these tomorrow during our meeting.

Matthew B. Gilliam
Staff Attorney *(admitted and licensed to practice only in New York and West Virginia)*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**RFP 2(A)**

"Charlene" and: [("facebook"), ("fb"), ("post!"), ("messag!"), ("messeng!"), ("online"), ("tweet!"), ("twitter"), ("instagram"), ("snapchat"), ("im"), ("social media"), ("internet"), or ("web")]

"Carter" and: [("facebook"), ("fb"), ("post!"), ("messag!"), ("messeng!"), ("online"), ("tweet!"), ("twitter"), ("instagram"), ("snapchat"), ("im"), ("social media"), ("internet"), or ("web")]

**RFP 2(B)**

"Charlene" and: [("women's march"), ("womens march"), ("womens' march"), ("relig!"), ("christian!"), ("evangel!"), ("gospel"), ("ideolog!"), ("church"), ("bibl!"), ("god"), ("jesus"), ("abort!"), ("pro-abortion"), ("pro abortion"), ("fetus"), ("pro life"), ("pro-life"), ("pro choice"), ("pro-choice"), ("belie!"), or ("planned parenthood")]

"Carter" and: [("women's march"), ("womens march"), ("womens' march"), ("relig!"), ("christian!"), ("evangel!"), ("gospel"), ("ideolog!"), ("church"), ("bibl!"), ("god"), ("jesus"), ("abort!"), ("pro-abortion"), ("pro abortion"), ("fetus"), ("pro life"), ("pro-life"), ("pro choice"), ("pro-choice"), ("belie!"), or ("planned parenthood")]

**RFP 2(C)**

"Charlene" and: ("recall!"); ("sign!"); ("petit!"); ("elect!"); ("campaign!"); ("jeanna" or "jackson"); ("board" or "executive board"); "remov!" w/3 [("union!") or ("board") or ("executive board") or ("officer!")]

"Carter" and: ("recall!"); ("sign!"); ("petit!"); ("elect!"); ("campaign!"); ("jeanna" or "jackson"); ("board" or "executive board"); "remov!" w/3 [("union!") or ("board") or ("executive board") or ("officer!")]

**RFP 2(D)**

"Charlene" and: [("objector"), ("nonmember!"), ("non-member!"), ("scab!"), ("union!"), ("Local 556"), ("556"), ("TWU"), ("AFL-CIO"), ("union member!"), ("due!"), ("fee!"), ("agency"), ("member!"), ("Right-to-Work"), ("Right to Work"), ("NRTW"), ("opt out"), ("opt-out")]

"Carter" and: ["objector," "nonmember!," "non-member!," "scab!", "union!" Local 556," "556," "TWU," "AFL-CIO," "union member!", "dues," "fee," "agency fee," "member!" "Right-to-Work," "Right to Work," "NRTW," "opt out," "opt-out"]

**RFP 2(E)**

"Charlene" or "Carter"

**RFP 2(F)**

"Charlene" or "Carter"

**RFP 4**

"recall!" and [("vot!") or ("sign!") or ("elect!") or ("remov!") or ("petition!") or ("organiz!") or ("effort!")] and [("union!") or ("board") or ("executive board") or ("556") or ("TWU") or ("officer!")]

[("remov!") or ("recall!") or ("vot!") or ("sign!") or ("elect!") or ("petition!")] w/3 [("union!") or ("board") or ("executive board") or ("556") or ("TWU") or ("officer!")]

("jeanna" or "jackson") and [("remov!") or ("recall!") or ("vot!") or ("sign!") or ("elect!") or ("petition!") or ("effort!")] and ("board" or "executive board" or "union" or "556" or "TWU")]

("jeanna" or "jackson") and [("remov!") or ("recall!") or ("vot!") or ("sign!") or ("elect!") or ("petition!")] and ("su!" or lawsuit)

("jeanna" or "jackson") and [("petition!") or ("vot!") or ("elect!") or ("remov!") or ("organiz!") or ("collect!") or ("gather!")]

 ("jeanna" or "jackson") and ("sign!") and ("recall!" or "remov!" or "vot!" or "elect!" or "petition!")

**RFP 5**

"objector!"

"nonmember!"

"non-member!"

"scab!"

"member!"

"dues"

"agency fee!"

"union fee!"

"Right-to-Work"

"Right to Work"

"NRTW"

"opts out"

"opt out"

"opt-out"

"opt-outers"

"fee payer!"

"ellis"

"hudson"

"resign!"

"free rider!"

"Janus"

"Abood"

[("opt!" or "resign!" or "member!" or "fee!" or "dues" or "pay!" or "object!") and ("union!" or "556" or "TWU" or "AFL-CIO")]

("in" w/3 "union")

("out" w/3 "union")

**RFP 8**

"women" and "march"

[(women or march) and ("inaugurat!" or "trump" or "Washington" or "union" or "January")]

**RFP 10**

"pink" and ("inaugurat!" or trump or Washington or march)]

"pink" w/2 "hat!"

"pink" and "light!"

"pink" and "cabin"

**RFP 21**

"abort!"

"pro-abortion"

"fetus"

"pro life"

"pro-life"

"pro choice"

"pro-choice"

"planned parenthood"

"reproductive freedom"

"reproductive rights"

**App.56**

[("women" or "woman") and ("choice" or "choos!" or "body" or "right!" or "free!")]

"right to choose"

"anti-choice"

"anti choice"

## Matthew B. Gilliam

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Monday, May 18, 2020 1:22 PM |
| **To:** | Correll, Michael A.; Morris, Brian K. |
| **Cc:** | Jeff D. Jennings |
| **Subject:** | Carter-SWA 5/20 Meeting: Discussion Items |

Hi Michael and Brian,

Here are the items that we would like to discuss on Wednesday. Let me know if you have any questions prior to the meeting. Later today I'll email you with some of the search strings we have in mind.

**1. Search Terms and Custodians**: We have developed more specific search strings for RFPs 2, 4, 5, 8, 10, and 21, and Interrogatories 1 and 2, in order to reduce the number of hits for those requests. We do not think that more specific search strings are needed for RFPs 1, 3, 11-14, 20, 24-28, or Interrogatories 3-6. Given the nature of those requests, the responsive materials would seem to be readily identifiable. Also, here is our proposed list of custodians:

- Edie Barnett
- Suzanne Stephenson
- Dave Kissman
- Melissa Burdine
- Mike Sims
- Sonya Lacore
- Maureen Emlet
- Meggan Jones
- Ed Schneider
- Denise Gutierrez
- Tammy Shaffer
- Audrey Stone
- Charlene Carter
- ACT Team (for RFPs 2(B), 8, 18, 19, 21)

**2. RFPs 6-7**: How does SWA define similarly-situated employees?

**3. RFPs 18-19**

    a. How does SWA define similarly-situated employees?

    b. Is SWA's position that it will not produce responsive information because Carter never made an accommodation request? Our position has been that Carter did not need to give specific notice of her need for an accommodation request to prevail on her Title VII claim. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032-33 (2015). Other employees' religious accommodation requests and complaints concerning religious beliefs, views, or practices, are relevant to Carter's Title VII claims (e.g., evaluating disparate treatment).

**4. RFP 21**: What is SWA's position on producing documents responsive to this request (we have also identified search strings and custodians for this request)?

**5. RFP 27**: What is SWA's position on producing documents responsive to this request?

**App.58**

**6. RFP 28**: SWA indicated that it will be producing documents in response to this request, but suggested that it would not be producing the employees' entire personnel files. We agree that some materials might not be relevant, but can you tell us what SWA is producing and what it is not producing?

**7.** For documents produced, which requests were the documents already produced responsive to?

**8.** Do you have a privilege log you can provide us?

_____
**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.59**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Morris, Brian K. <BMorris@reedsmith.com> |
| **Sent:** | Monday, October 21, 2019 11:53 AM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Gehrke, Michele Haydel; Jeff D. Jennings |
| **Subject:** | RE: Discovery Issues and Deadlines |

I left off the attachment with our thoughts on the RFPs. I have copied them below here. As a general matter, I would say that if we discover relevant documents in the course of the email search we will produce them. However, some of the requested categories of documents are overbroad so it is difficult to say that we will produce *all* documents in the abstract without having first identified / reviewed them in the course of the email searches. For example, one can conceive of an email that is related to abortion (RFP 21) that would be relevant (*e.g.*, an email from a decision maker stating that it is policy to terminate all employees with the "wrong" position on the issue). However, I cannot say at this time that we will produce all documents from 2012 to the present that in some way relates to abortion.

In any event, below are our thoughts on the RFPs you raised. We can explore these issues more during the next call.

**RFP No. 5** – This request seeks all documents related to any employee's agency-fee payer status since 2012. We have various objections to this request, as we previously stated. If there is something more specific you are looking for (*e.g.*, documents by decisions makers stating an intent to take adverse actions against Carter based on her agency fee payer status) we can discuss that during our call.

**RFP Nos. 6-7** – We will produce some documents in response to this request. However, we believe these requests should be limited to "similarly situated" employees.

**RFP No. 9** – We do not understand the theory behind this request. Also, it is our understanding that Southwest does not have a way of discerning all the flight attendants who requested time off on particular days.

**RFP No. 15-17** – We intend to produce documents in response to these requests.

**RFP No. 18-19** – Given that Carter never requested a religious accommodation we do not understand how the treatment of such requests for other employees (particularly by non-decision makers) are relevant. Perhaps you could help us during the next call by articulating the theory behind this request.

**RFP No. 21** – We do not understand the relevance of all communications related to abortion. Perhaps you could articulate the theory behind this request during our next call or perhaps narrow it to capture the information you are seeking (*see* example mentioned above).

**RFP No. 26** – We do not understand the basis for this request. In any event, there have been no such contributions.

**RFP No. 27** – We do not understand the relevance of communications with Planned Parenthood. Perhaps a topic to explore during our call.

**RFP No. 28** – We do not see the relevance of these employees' *entire* personnel files. However, we will be producing documents in response to this request that we anticipate will be satisfactory.

**Brian K. Morris**
469.680.4226

1

**App.60**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Monday, October 21, 2019 10:03 AM |
| **To:** | Morris, Brian K. |
| **Cc:** | Gehrke, Michele Haydel; Jeff D. Jennings |
| **Subject:** | RE: Discovery Issues and Deadlines |

Hi Brian,

Thanks for your email. I haven't checked with Jeff regarding his schedule, but I think I can make any day or time this week work. Would tomorrow afternoon work? I can also contact Adam and Ed if you haven't already.

Regarding custodians and search terms, I thought you were first going to look at including more custodians from our proposed list and determine who you would include, and that we would also look at the search term hits for those custodians. From there, I was going to work on tightened search terms for that broader list of custodians and forward that list to you. I vaguely remember Michele saying something along the lines of it would be better for me to do that once I have more custodian and search term information from you.

As for SWA's position on responding to RFPs Requests 5-7, 9, 15-19, 21, 26-29, and Interrogatory 3 if we can agree on custodians and search terms, did you send the right attachment? I looked through those emails but didn't see where you responded.

Thanks,
Matt

_____
**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Morris, Brian K.
**Sent:** Monday, October 21, 2019 6:21 AM
**To:** Matthew B. Gilliam
**Cc:** Gehrke, Michele Haydel ; Jeff D. Jennings
**Subject:** RE: Discovery Issues and Deadlines

Hi Matthew. We are good with the 21 day extension. During our prior call, we identified several custodians (Audrey Stone, Charlene Carter, Ed Schneider, Mikes Simms, Denise Gutierrez, Maureen Emlet, Meggan Jones) and you provided an alternative list. Based on our discussion, I understood that you were providing a narrower list of custodians for an initial search, and we would indicate our position on producing documents identified in response to the RFPs you identified in the attached email (5-7, 9, 15-19, 21, 26-29), which I have done in the attached.

**App.61**

Michele was out at deposition the end of last week so it was not a good time for a call. What days work well for you this week? Thank you.

**Brian K. Morris**
469.680.4226
BMorris@reedsmith.com

Reed Smith LLP
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
+1 469 480 4200
Fax +1 469 680 4299

---

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Thursday, October 17, 2019 12:54 PM
**To:** Gehrke, Michele Haydel <MGehrke@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>
**Cc:** Jeff D. Jennings <jdj@nrtw.org>
**Subject:** Discovery Issues and Deadlines

<mark>EXTERNAL E-MAIL</mark>

Hi Michele and Brian,

I wanted to check in regarding discovery and our various deadlines. First, we had talked about possibly scheduling a call this week to discuss extending the parties' current deadline to complete all discovery and how that would impact the rest of our schedule, including the trial date. Do you all have time tomorrow or the beginning of next week for a call? I'm also available today.

Second, as to our continuing discussions regarding search terms and custodians, my recollection was that you all were going to provide us with a list of custodians you were willing to agree to, and that we could continue our discussions from there. Do you all have any updates on that front?

Finally, we continue to work on responses to your discovery requests, and as I suspected during our last conversation, we will need more time to prepare responses, organize document production, and prepare our privilege log. While we might be able to serve discovery sooner, we would like to request an extension of 21 days, to avoid having to come back and ask for more time. Would that be agreeable?

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org   Web: www.nrtw.org

App.62

## Matthew B. Gilliam

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Monday, September 30, 2019 3:56 PM |
| **To:** | Morris, Brian K.; Gehrke, Michele Haydel |
| **Cc:** | Jeff D. Jennings; Jason Winford |
| **Subject:** | RE: Custodians and Search Terms |

Hi Brian and Michele,

We have identified a group of custodians as a starting place for searching. We still encounter the same issues we discussed before with not having sufficient information about potential custodians. To that end, we would like more information to help us have a better understanding about how personnel within HR, LR, In-Flight, and the ACT Team (managers, supervisors, and their staff) are involved in matters raised with the discovery requests. We need to have that understanding before we can fully determine custodians. You indicated that Southwest does not have any organizational charts. Can you provide us with any other information (e.g., graphs, charts, lists) breaking down how the HR, LR, In-Flight, and ACT Team departments are structured, a description of the issues/areas they manage within those departments, and the managers, supervisors, and other personnel that work in the departments? It might also be helpful for us to see a list of who received a litigation hold order. Ultimately, we're just looking for information to help us understand who would/would not have responsive information.

Also, could we schedule a call in the next few days to discuss how HR, LR, In-Flight, and ACT Team personnel are involved in the matters raised by the discovery requests? During the call I think we should be prepared to review the requests and discuss whether/how the departments mentioned above are involved in those matters. One idea is that we might be able to narrow custodians and search terms by request. In the meantime, I am providing a list of custodians that we think should be included in the searches.

1) Edie Barnett
2) Suzanne Stephenson
3) Dave Kissman
4) Melissa Burdine
5) Mike Sims
6) Sonya Lacore
7) Maureen Emlet
8) Meggan Jones
9) Ed Schneider
10) Denise Gutierrez
11) Tammy Shaffer
12) Audrey Stone
13) Charlene Carter

Finally, if we agree to search terms and custodians would SWA produce documents responsive to Requests 5-7, 9, 15-19, 21, 26-29, and Interrogatory 3? Previously you had indicated that you would not produce documents responsive to those requests even with a PO, and one of your objections involved whether employees encompassed by some requests were similarly-situated. If we agree to search terms and custodians for these requests, would SWA be willing to produce documents for those responses?

Thanks,
Matt

_____

**App.63**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Morris, Brian K. <BMorris@reedsmith.com> |
| **Sent:** | Saturday, August 31, 2019 5:19 PM |
| **To:** | Matthew B. Gilliam; Gehrke, Michele Haydel |
| **Cc:** | Jeff D. Jennings |
| **Subject:** | RE: Search terms |
| **Attachments:** | SWA_Carter_ SWA Proposed Revised Protective Order.DOCX |

Hi Matthew. I hope all is well. Attached is the protective order. I accepted your changes and then incorporated our changes in redline. Let us know if you have thoughts.

Also, I have some information regarding Southwest's organizational structure that you requested. While Southwest does not have a simple org chart, the basic structure is as follows:

**Human Resources Managers** – HR managers generally handle issues related to non-union employees, although in rare circumstances an H.R. VP may be involved in union-related matters.

**Labor Relations and In-Flight Managers** – These managers are involved in flight attendant issues.

**ACT Team Managers** – These managers handle religious accommodation issues.

Have a great weekend.

-Brian

**Brian K. Morris**
469.680.4226
BMorris@reedsmith.com

Reed Smith LLP
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
+1 469 480 4200
Fax +1 469 680 4299

**App.64**

**Matthew B. Gilliam**

**From:** Matthew B. Gilliam
**Sent:** Tuesday, August 27, 2019 3:44 PM
**To:** Morris, Brian K.; Gehrke, Michele Haydel
**Cc:** Jeff D. Jennings
**Subject:** Search terms

Hi Brian and Michele,

Given the narrowing of custodians I didn't know if search terms would be still be helpful, but we added some search terms to the list you had provided us. Let me know if you want to discuss.

- Objector
- Nonmember
- Non-member
- Nonmembership
- Non-membership
- Scabs
- Union
- Unions
- Union fees
- Local 556
- 556
- TWU
- AFL-CIO
- Political
- Nevarez
- Parrott
- Jessica Parker
- Parker
- Union member
- Dues
- Agency Fee
- Membership
- Women's March
- Womens March
- Womens' March
- Religious
- Religion
- Christian
- Christianity
- Evangelical
- Evangelist
- Gospel
- Ideology
- Church
- Bible
- God
- Jesus

**App.65**

- Abortion
- Aborted
- Pro-abortion
- Abortions
- Abort
- Aborting
- Fetus
- Pro life
- Pro-life
- Pro choice
- Pro-choice
- Murder
- Recall
- Election
- Jeanna
- Jackson
- Right-to-work
- Right to work
- NRTW
- Planned Parenthood
- Trump
- Inauguration
- Opt out
- Opt-out
- Recall
- Pink hats
- Facebook
- FB
- Posts
- Messaged
- Messenger
- Posted
- Online
- Tweet
- Tweeted
- Twitter
- Instagram
- Snapchat
- Instant Message
- Social media
- Content
- Carter
- Charlene
- Audrey
- Stone
- Board
- Bully
- Bullied
- Bullying
- Haze

**App.66**

- Hazed
- Hazing
- Obscene
- Offensive
- Harassment
- Harass
- Harassed
- Harassing
- Threat
- Threatened
- Threatening
- Lewd
- Intimidate
- Intimidation
- Intimidated
- Intimidating
- Discriminate
- Discrimination
- Discriminated
- Discriminating
- Discriminatory
- Retaliate
- Retaliation
- Retaliated
- Retaliating
- Retaliatory
- Pink lights
- Cabin lights
- Brian Talburt
- Ricky Spand
- Josh Rosenberg
- Greg Hofer
- Casey Rittner
- Chris Click
- OneLuv
- Core Team
- Kent Hand

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**App.67**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Morris, Brian K. <BMorris@reedsmith.com> |
| **Sent:** | Wednesday, June 12, 2019 12:22 AM |
| **To:** | Matthew B. Gilliam |
| **Cc:** | Gehrke, Michele Haydel |
| **Subject:** | Carter v. Southwest, et al: RFPs and Roggs |
| **Attachments:** | SWA_Cater_ Final SWA Response to Pl_s Roggs - Set One.PDF; SWA_Carter_ Final SWA Response to Pl_s RFPs - Set One.PDF |

Matthew:

Please see Southwest's objections / response to Carter's requests for production and interrogatories attached. We are finalizing the production and that will follow shortly under separate cover. Also, we ran searches to identify potentially responsive documents on the accounts of a handful of Southwest custodians identified below. As the following chart indicates, this gave us nearly 600,000 hits. Thus, as we previously indicated, we should meet and confer on search terms, custodians, and related matters to reasonably limit electronic discovery.

| Custodian | 01/01/2012-03/31/2013 | 03/31/2013 - 05/31/2019 |
|---|---|---|
| Charlene Carter | 0 | 0 |
| Mike Sims | 22565 | 178721 |
| Sonya Lacore | 20213 | 82060 |
| Maureen Emlet | 7036 | 66244 |
| Meggan Jones | 224 | 60854 |
| Ed Schneider | 340 | 29548 |
| Denise Gutierrez | 8858 | 14362 |
| Edie Barnett | 0 | 26216 |
| Tammy Shaffer | 9147 | 43326 |
| Greg Hofer | 0 | 898 |
| Jenna Jackson | 0 | 1932 |
| Chris Sullivan | 15 | 1471 |
| Dawn Wann | 2 | 1225 |
| Total | 68400 | 506857 |

**Brian K. Morris**
469.680.4226
BMorris@reedsmith.com

Reed Smith LLP
2501 N. Harwood St., Suite 1700
Dallas, TX 75201
+1 469 480 4200
Fax +1 469 680 4299

**App.68**

**Matthew B. Gilliam**

| | |
|---|---|
| **From:** | Matthew B. Gilliam |
| **Sent:** | Tuesday, May 21, 2019 5:18 PM |
| **To:** | Gehrke, Michele Haydel; Morris, Brian K.; Edward B. Cloutman IV; Adam Greenfield |
| **Cc:** | David E. Watkins; Jason Winford; Jeff D. Jennings |
| **Subject:** | RE: Carter Interrogatories and Requests for Production |

Michele,

There is still some confusion on our part. When you refer to an extension for providing the "responses and initial responsive documents," are you referring to time needed for providing all documents generated by Southwest's in-house search? In that case, I would think 14 days beyond the original 30 day deadline is a reasonable period to review all the responses generated in-house for responsiveness and privilege, and to provide responsive e-discovery. We would assume that there will be instances where you agree there is no question that the request does not impose any unreasonable e-discovery burden or require resolving issues like search parameters or custodians. Those responses could be provided even sooner.

In the next two weeks from today, let us know which specific searches you believe would be burdensome and overbroad, and identify the outcome of your preliminary search efforts in those overbroad areas, letting us know the search terms, custodians, and dates you use, the hits generated and documents pulled, so that we can then work through our issues. We would like to understand those areas and respects in which you think the e-discovery is burdensome so that we can work together to try to resolve any issues that might arise. At this stage, we do not see why that process would require a lengthy extension of time or why it would be necessary to undertake that process for all of the requests.

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Gehrke, Michele Haydel [mailto:MGehrke@reedsmith.com]
**Sent:** Friday, May 17, 2019 7:11 PM
**To:** Matthew B. Gilliam; Morris, Brian K.; Edward B. Cloutman IV; Adam Greenfield
**Cc:** David E. Watkins; Jason Winford; Jeff D. Jennings
**Subject:** RE: Carter Interrogatories and Requests for Production

Matt,
I wanted to report back based on our call and my conversation with Southwest.  Southwest will handle the e-discovery searches in-house and then provide us with the pool of documents generated by the search.  We will then need to

**App.69**

review them for responsiveness and privilege. Once I provide them with initial search terms, custodians and dates, they can give me an idea of how many hits are generated which will inform our analysis of whether the parameters are overbroad, unduly burdensome and need to be narrowed, etc. I will give Southwest a preliminary list of custodians and terms which I think will reasonably cover the relevant issues/people based on the requests/initial disclosures. Then I'll be in a better position to give you an estimate on cost (even though this is done in-house there is a cost associated with it) as well as timing. But as I stated over the phone, the broader the search terms, the more expensive and time consuming the process is and the more irrelevant hits will be generated so we need to balance those factors.

Regarding hard documents and the responses themselves, the key person at Southwest is on vacation until May 28 and Brian and I will be tied up/traveling for other matters next week as well. So we are asking that you give us a 30 day extension to provide the responses and the initial responsive documents. In about 2 weeks, I can give you an estimate on the number of the documents pulled up in the email searches and we can further discuss those search parameters and next steps for production. Is that agreeable?

**Michele Haydel Gehrke**
+1 415-659-4798
mgehrke@reedsmith.com

# Reed Smith LLP

101 Second Street
Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8700
Fax +1 415 391 8269

---

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Friday, May 17, 2019 10:49 AM
**To:** Gehrke, Michele Haydel <MGehrke@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Edward B. Cloutman IV <edwardcloutman@gmail.com>; Adam Greenfield <agreenfield@candglegal.com>
**Cc:** David E. Watkins <dwatkins@jenkinswatkins.com>; Jason Winford <jwinford@jenkinswatkins.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter Interrogatories and Requests for Production

**EXTERNAL E-MAIL**

Michele,

Do you have time for a phone call today or Monday afternoon? I want to make sure I understand your issues. Let me know when you're available to talk.

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**App.70**

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

---

**From:** Gehrke, Michele Haydel [mailto:MGehrke@reedsmith.com]
**Sent:** Wednesday, May 15, 2019 8:33 PM
**To:** Matthew B. Gilliam; Morris, Brian K.; Edward B. Cloutman IV; Adam Greenfield
**Cc:** David E. Watkins; Jason Winford; Jeff D. Jennings
**Subject:** RE: Carter Interrogatories and Requests for Production

Matt,
I think you may have misunderstood or maybe I wasn't clear.  My proposal is to identify custodians/terms for email searches for e-discovery.  We cannot possibly search every Southwest employee account and such a request would clearly be unduly burdensome and overbroad.  I'm aware of my ability to make objections to your discovery requests and will do so where appropriate.  I just thought it more efficient to meet and confer on the e-discovery issues now so that we can provide the relevant documents within the 60 day deadline extension I requested.  If you prefer to do this after the response deadline and based on our interpretation of the request, then we can do it that way.  In my experience, it is more efficient for counsel to agree on search parameters for e-discovery so the searches are just done once rather than fighting about it after the fact.  Happy to discuss over the phone if you think that helpful.

**Michele Haydel Gehrke**
+1 415-659-4798
mgehrke@reedsmith.com

## Reed Smith LLP

101 Second Street
Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8100
Fax +1 415 391 8269

---

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Wednesday, May 15, 2019 5:20 PM
**To:** Gehrke, Michele Haydel <MGehrke@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Edward B. Cloutman IV <edwardcloutman@gmail.com>; Adam Greenfield <agreenfield@candglegal.com>
**Cc:** David E. Watkins <dwatkins@jenkinswatkins.com>; Jason Winford <jwinford@jenkinswatkins.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** RE: Carter Interrogatories and Requests for Production

**EXTERNAL E-MAIL**

Hi Michele,

We do not think it is necessary or appropriate to limit our entire set of discovery requests as you have proposed. Our interrogatories and requests are clear, straightforward, and defined by specific parameters. We see no reason why Southwest would not be able to conduct its document searches based on the specific topics of each request. Also, the federal rules allow you to make proper, specific objections. To the extent you have specific objections to particular questions or requests, we can address those when we receive your responses.

Also, we cannot limit our discovery requests by attempting to identify Southwest's custodians. Neither we nor our client have sufficient knowledge of who at Southwest has possession, custody, or control of the requested documents. Details involving Southwest's internal operations, departments, and personnel, and who has possession, custody, and control of

3

**App.71**

responsive documents, are all within Southwest's personal knowledge, not ours. For all of these reasons, and given the scheduling order we have in place, it does not make sense to agree to a lengthy 60-day extension.

Thanks,
Matt

---

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

**From:** Gehrke, Michele Haydel [mailto:MGehrke@reedsmith.com]
**Sent:** Tuesday, May 14, 2019 6:24 PM
**To:** Matthew B. Gilliam; Morris, Brian K.; Edward B. Cloutman IV; Adam Greenfield
**Cc:** David E. Watkins; Jason Winford; Jeff D. Jennings
**Subject:** RE: Carter Interrogatories and Requests for Production

Hi Matthew,
We have reviewed your recent requests for production of documents and interrogatories.  The requests are extremely broad and seek documents and information that Southwest can only obtain by conducting laborious searches of its paper files and electronic resources (to the extent the documents / information exist) unless it was something relied upon in the arbitration.

In order to efficiently identify and review potentially relevant documents and information, we believe the parties should agree upon a list of custodians and search terms.  Accordingly, we request that you provide us with a proposed list of custodians and search terms that will be sufficient to adequately address your requests.  Also, we expect that it will take some time for the parties to agree upon search terms, to conduct the searches, to review the resulting documents and information, and to prepare our responses.  Thus, we request a preliminary 60-day extension to respond to your interrogatories and requests for production.  Please let us know if this is agreeable and send proposed custodians and search terms at your earliest convenience.

Feel free to give me a call if you would like to discuss.

Best,
Michele

**Michele Haydel Gehrke**
+1 415-659-4798
mgehrke@reedsmith.com

**Reed Smith** LLP
101 Second Street

**App.72**

Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8700
Fax +1 415 391 8269

**From:** Matthew B. Gilliam <mbg@nrtw.org>
**Sent:** Friday, April 26, 2019 12:29 PM
**To:** Gehrke, Michele Haydel <MGehrke@reedsmith.com>; Morris, Brian K. <BMorris@reedsmith.com>; Edward B. Cloutman IV <edwardcloutman@gmail.com>; Adam Greenfield <agreenfield@candglegal.com>
**Cc:** David E. Watkins <dwatkins@jenkinswatkins.com>; Jason Winford <jwinford@jenkinswatkins.com>; Jeff D. Jennings <jdj@nrtw.org>
**Subject:** Carter Interrogatories and Requests for Production

**EXTERNAL E-MAIL**

Good afternoon, everyone.

Please find attached Plaintiff's interrogatories and requests for production.

Have a good weekend,
Matt

**Matthew B. Gilliam**
Staff Attorney (*admitted and licensed to practice only in New York and West Virginia*)
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Ste. 600, Springfield, VA 22160
O: 703-770-3339  F: 703-321-9319
Email: mbg@nrtw.org  Web: www.nrtw.org

**NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it.**

\* \* \*

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01

**App.73**