IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 03:17-cv-02278-S |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA LOCAL 556, | § | |
| | § | |
| Defendants. | § | |

## SOUTHWEST AIRLINES CO.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. FACTUAL SUMMARY ........................................................................................ 2

    A. Summary of Carter's Pending Claims .................................................... 2

    B. Plaintiff Serves Overbroad and Burdensome Discovery Request
    Untethered to the Allegations in the Pleadings ...................................... 3

    C. Southwest Collects More than 7 Million Documents and Produces Six
    Deponents for Questioning ..................................................................... 4

III. ARGUMENT ......................................................................................................... 6

    A. Carter fails to demonstrate that the requested documents and information
    are relevant and discoverable ................................................................. 6

        1. Standard governing motions to compel ..................................... 6

        2. Interrogatory No. 3 and Requests for Production Nos. 6, 17-19
        seek irrelevant information regarding non-similarly situated
        employees. .................................................................................. 7

            a. Carter's requests are not limited to similarly situated
            employees ............................................................... 7

            b. Carter has not identified a basis for searching for materials
            from the 13 custodians. .......................................... 12

        3. Carter fails to demonstrate that information regarding third-party
        religious accommodation requests and complaints are relevant
        (RFP 19) ..................................................................................... 13

        4. Carter's request for documents about employees Southwest
        terminated after they executed an LCA does not seek relevant
        information (RFP 17) .................................................................. 16

        5. Southwest has already produced all materials concerning RFP 21. ......... 17

    B. The Requested Discovery is Unreasonable, Overly Burdensome, and Not
    Tailored to the Needs of this Straightforward Single Plaintiff Action ................. 17

IV. CONCLUSION ..................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdelwahab v. Jackson State Univ.*,
    2010 U.S. Dist. LEXIS 7729 (S.D. Miss. Jan. 27, 2010) ........................................................15

*Abraham v. Alpha Chi Omega*,
    271 F.R.D. 556 (N.D. Tex. 2010) ..............................................................................................7

*Adamov v. Pricewaterhouse Coopers LLP*,
    2017 U.S. Dist. LEXIS 211210 (E.D. Cal. Dec. 21, 2017) ......................................................19

*Bob v. Madison Sec. Grp.*,
    2016 U.S. Dist. LEXIS 163940 (S.D.N.Y. Nov. 28, 2016)......................................................16

*Brockie v. Ameripath, Inc.*,
    2007 U.S. Dist. LEXIS 29672 (N.D. Tex. Apr. 23, 2007)..................................................10, 11

*Bryant v. Compass Group USA Inc.*,
    413 F.3d 471 (5th Cir. 2005) ....................................................................................................11

*Bryant v. Miss. Div. of Medicaid*,
    2014 U.S. Dist. LEXIS 165626 (N.D. Miss. Nov. 25, 2014) ..................................................12

*Burnett v. Thompson*,
    2002 U.S. App. LEXIS 29319 (5th Cir. Feb. 6, 2002) .........................................................9, 14

*Carr v. State Farm Mut. Auto. Ins.*,
    312 F.R.D. 459 (N.D. Tex. 2015) ..............................................................................................7

*Chalmers v. Tulon Co. of Richmond*,
    101 F.3d 1012 (4th Cir. 1996) ..................................................................................................16

*Cooper v. City of Dallas*,
    2006 U.S. Dist. LEXIS 48444 (N.D. Tex. July 17, 2006) ........................................................10

*Crosby v. La. Health Serv. & Indem. Co.*,
    647 F.3d 258 (5th Cir. 2011) ....................................................................................................18

*Diloreto v. Perrin Forster & Crosby*,
    2010 U.S. Dist. LEXIS 161866 (N.D. Tex. Aug. 20, 2010)......................................................7

*Drechsel v. Liberty Mut. Ins. Co.*,
    2015 U.S. Dist. LEXIS 151409 (N.D. Tex. Nov. 9, 2015)..................................................9, 16

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    135 S.Ct. 2028 (2015)...............................................................................................................15

*Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*,
  745 F. App'x 209 (5th Cir. 2018) ...................................................................10, 13

*Garcia v. Prof'l Contract Servs.*,
  938 F.3d 236 (5th Cir. 2019) ....................................................................10

*Heggemeier v. Caldwell County*,
  826 F.3d 861 (5th Cir. 2016) ....................................................................10

*Hinga v. MIC Grp., L.L.C.*,
  609 F. App'x 823 (5th Cir. 2015) ...............................................................9

*Hussein v. Pierre Hotel*,
  2001 U.S. Dist. LEXIS 4859 (S.D.N.Y. April 20, 2001) ......................................16

*Kean v. Jack Henry & Assocs.*,
  577 F. App'x 342 (5th Cir. 2014) ........................................................8, 11, 17

*KeyCorp v. Holland*,
  2016 U.S. Dist. LEXIS 147926 (N.D. Tex. Oct. 26, 2016)....................................18

*Lawrence v. United Airlines, Inc.*,
  2002 U.S. Dist. LEXIS 12559 (N.D. Tex. July 10, 2002) ....................................10

*Nobach v. Woodland Vill. Nursing Ctr.*,
  799 F.3d 374 (5th Cir. 2015) ....................................................................15

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
  245 F.3d 507 (5th Cir. 2001) ....................................................................9

*Outley v. Luke & Assocs.*,
  840 F.3d 212 (5th Cir. 2016) ....................................................................11

*Sacchetti v. Optiv Sec.*,
  819 F. App'x 251 (5th Cir. 2020) ..........................................................10, 11

*Shackelford v. DeLoitte & Touche, LLP*,
  190 F.3d 398 (5th Cir. 1999) ....................................................................11

*Source Network Sales & Mktg., LLC v. Jiangsu Mega Motor Co.*,
  2017 U.S. Dist. LEXIS 221494 (N.D. Tex. May 15, 2017) ....................................7

*Steinberg v. Bpo Mgmt. Servs.*,
  2010 U.S. Dist. LEXIS 164507 (N.D. Tex. Nov. 8, 2010).....................................12

*Vinet v. BP Exploration & Prod.*,
  2019 U.S. Dist. LEXIS 131030 (E.D. La. Aug. 6, 2019) ......................................20

*Wallace v. Seton Family of Hosps.,*
    777 F. App'x 83 (5th Cir. 2019) ........................................................................10

*Warren v. Fannie Mae,*
    733 F. App'x 753 (5th Cir. 2018) ..................................................................9, 17

*West v. City of Houston,*
    960 F.3d 736 (5th Cir. 2020) ......................................................................1, 8, 9

*Wyvill v. United Cos. Life Ins. Co.,*
    212 F.3d 296 (5th Cir. 2000) ...........................................................................9

*Zenith Ins. Co. v. Tex. Inst. for Surgery, LLP,*
    328 F.R.D. 153 (N.D. Tex. 2018) .....................................................................7

**Other Authorities**

Fed. R. Civ. P. 26 ..............................................................................................7, 19

Fed. R. Civ. P. 26(b)(1) ......................................................................................7, 18

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................................18

Fed. R. Civ. P. 30(b)(6).............................................................................................19

I.      **INTRODUCTION**

This lawsuit concerns a very simple occurrence.   Charlene Carter ("Plaintiff" or "Carter"), a former Flight Attendant for Southwest Airlines Co. ("Southwest"), sent more than 100 explicit, bullying, and harassing private messages to another Southwest Flight Attendant. The Flight Attendant reported Carter to Southwest.   Southwest conducted an investigation, determined Carter's egregious messages warranted termination, and ended Carter's employment. Despite the simplicity of the underlying facts, Southwest already has been required to collect and sort more than 7 million pages of documents, produce 7,463 pages of documents, and present four witnesses and a corporate representative for more than 35 hours of deposition.  But none of this discovery supports Carter's claims.   So Carter now asks the Court to make Southwest undertake an expensive, pointless, and, most importantly, improper fishing expedition.

**First**, Carter improperly demands production of a wide array of documents regarding unidentified Flight Attendants who were not: (a) disciplined by the same person as Carter; (b) supervised by the same people as Carter, or (c) disciplined for egregious violations of the same nature as those that warranted Carter's termination.  This demand does not comport with the Fifth Circuit's instruction that comparator evidence is limited to "employees' situations" that are "nearly identical." *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020).

**Second**, Carter improperly demands all available data regarding religious accommodation requests and related employee complaints even though it is undisputed that: (1) Carter never requested an accommodation; (2) Southwest never offered an accommodation; and (3) Southwest has never granted a request for retroactive accommodation *after* a policy violation as Carter now demands.  Thus, the requested information is irrelevant.

In short, Carter's requests seek irrelevant information in a manner that is grossly disproportional to the needs of this case.  Accordingly, the Court should deny Carter's Motion.

## II.    FACTUAL SUMMARY

### A.    Summary of Carter's Pending Claims

Carter is a former Southwest Flight Attendant.  Between 2015 and 2017, Carter sent more than 100 unsolicited messages—including sexually explicit imagery of female genitalia, graphic videos of aborted fetuses, and a litany of insults and threats—to Audrey Stone, another Southwest Flight Attendant.  (*See* Dkt. No. 80, Fourth Amended Complaint ["FAC"] ¶¶ 30, 44-50).   In February 2017, Ms. Stone could no longer tolerate Carter's onslaught and reported Carter to Southwest management.  (*See* FAC ¶ 69). Thereafter, Carter's supervisor, Ed Schneider, conducted a fact finding meeting pursuant to the collective bargaining agreement ("CBA"), listened to Carter's side of the story, and decided that Carter should be terminated for violating Southwest's policies regarding bullying, social media, and harassment.  (*See* FAC ¶ 71).[1]  Carter grieved her termination.  Carter's grievance was denied by Mike Sims, Southwest's Senior Director of Inflight Operations.[2]  (Dkt. No. 50 p. 11).  Thereafter, Carter's termination was arbitrated pursuant to the terms of the applicable CBA and the Railway Labor Act ("RLA").  (Dkt. No. 50 pp. 6-24).  The arbitrator affirmed that Southwest had good cause to justify Carter's termination.  (*Id.*).

The live complaint in this lawsuit—which was substantially narrowed after the Court dismissed several claims with prejudice—alleges two claims against Southwest.[3]  First, Carter contends that Southwest violated the RLA by allegedly terminating her in retaliation for her decision to opt out of the Flight Attendant union.  Second, Carter contends that sending explicit

---

[1] Carter admitted at deposition that Schneider was the decision-maker responsible for her termination.  (APP000023, 260:7-9).

[2] Sims offered Carter a settlement, called a "Last Chance Agreement" ("LCA"), to resolve her grievance.  Under that LCA, Carter would have been reinstated as Southwest Flight Attendant so long as she did not engage in similar misconduct for two years.  Carter rejected that offer.  (Dkt. No. 50, p. 11).

[3] Carter initially brought this action only against her union.  Carter later added Southwest as a party and purported to state five counts against Southwest.  (Dkt. No. 47).  The Court dismissed three of the counts against Carter asserted against Southwest with prejudice.  (Dkt. No. 69 p. 25).

depictions of female genitalia, insulting and intimidating messages, and graphic videos of aborted fetuses was a part of her religious expression, and, thus, Southwest violated Title VII of the Civil Rights Act when it terminated her for and failed to accommodate that conduct.

**B.      Plaintiff Serves Overbroad and Burdensome Discovery Request Untethered to the Allegations in the Pleadings**

On April 26, 2019, Plaintiff served Southwest with written discovery.  The following requests and interrogatory are the subject of Plaintiff's Motion:

> **Interrogatory No. 3:**  IDENTIFY every SOUTHWEST employee whose social media activities were reported to SOUTHWEST from January 1, 2012, through the present.

> **Request for Production No. 6:**    Produce all DOCUMENTS and COMMUNICATIONS since January 1, 2012:

> > (A) between LOCAL 556 and SOUTHWEST related to any SOUTHWEST employee's social media activities;

> > (B) related to any report or complaint to SOUTHWEST regarding any SOUTHWEST employee's social media activities;

> > (C) related to SOUTHWEST's investigations of any employee's social media activities;

> > (D) related to the disposition of any such report or investigation;

> > (E) all other DOCUMENTS and COMMUNICATIONS related to any SOUTHWEST employee's social media activities.

> **Request for Production No. 7:**    Produce all DOCUMENTS and COMMUNICATIONS since January 1, 2012:

> > (A) related to instances where a SOUTHWEST employee was terminated or otherwise disciplined in connection with the SOCIAL MEDIA POLICIES;

> > (B) related to instances where any SOUTHWEST employee terminated in connection with the SOCIAL MEDIA POLICIES was later reinstated;

> > (C) between SOUTHWEST and LOCAL 556 related to the SOCIAL MEDIA POLICIES;

(D) related to the enforcement of the SOCIAL MEDIA POLICIES;

(E) all other DOCUMENTS and COMMUNICATIONS since January 1, 2012, related to the SOCIAL MEDIA POLICIES.

**Request for Production No. 17:**   Produce all DOCUMENTS and COMMUNICATIONS related to employees that SOUTHWEST terminated after those employees signed a "last chance agreement" or any other settlement or agreement in response to discipline that SOUTHWEST threatened to impose or did impose.

**Request for Production No. 18:**   Produce all DOCUMENTS and COMMUNICATIONS related to every complaint made by current and former SOUTHWEST employees since January 1, 2012, concerning religious beliefs, views, or practices, including all responses related thereto.

**Request for Production No. 19:**   Produce all DOCUMENTS and COMMUNICATIONS related to every request for religious accommodation made by current and former SOUTHWEST employees since January 1, 2012, including all responses related thereto.

**Request for Production No. 21:**   Produce all DOCUMENTS and COMMUNICATIONS since January 1, 2012, related to abortion or reproductive freedom.

In her written discovery, Carter defined "SOUTHWEST" to include:  "Southwest Airlines Co. and *any of its current or former officers, employees, representatives, agents, intermediaries, successors, and other persons acting on its behalf*."  (Dkt. No. 134-1 p. 6; Dkt. no. 134-2 p. 5) (emphasis added).   Thus, Carter's requests purported to require Southwest to search for documents and information from and regarding more than 60,000 unnamed current and former employees with no conceivable substantive or geographical relationship to this case.

Southwest promptly contacted Carter's counsel to meet and confer in an effort to reasonably limit the scope of this enormous requests.  (Dkt. No. 134-6 p. 43).  Despite the breadth of the requests, Carter's counsel declined to confer.  (Dkt. No. 134-6 p. 42).

### C.   Southwest Collects More than 7 Million Documents and Produces Five Deponents for Questioning

Over the next year and a half, the parties continued to negotiate the scope of Carter's

requests.   Along the way, Southwest produced more than 7,463 pages, including the comprehensive personnel files of 7 Flight Attendants who Carter identified as "similarly situated."[4]  This stalemate continued as Southwest made effort after effort to reach a reasonable agreement with Carter.  The stalemate only broke after Southwest collected more than 7 million documents from 13 different custodians and ran searches to prove, once and for all, that Carter's requests were overbroad and unduly burdensome.  At that point, for the first time, Carter agreed to allow Southwest to engage in self-collection rather than complicated Boolean searches of Electronically Stored Information ("ESI").[5]

Less than a month later, Southwest produced the remaining 3,244 pages as well as 5 deponents, including Schneider and Sims.[6]  Further, Carter deposed a corporate representative[7] on the exact issues raised in her Motion.  (APP000041-43, Topics 2-11, 14-18).  In that 6 hour and 54 minute deposition, Carter's counsel never once complained that Southwest's corporate representative was unable to answer noticed topics nor that Southwest's corporate representative failed to consult necessary individuals to relay required information.  Additionally, through the depositions, Carter deposed: (1) the decision-maker responsible for her termination; (2) the individuals who assisted the decision-maker; and (3) the second level decision-maker who reviewed Carter's grievance.   Further, Southwest has not refused any requested deponent,

---

[4] Southwest disputes that the named individuals were similarly situated.  Southwest produced those documents an effort to avoid precisely the dispute before the Court in this Motion.

[5] Southwest did not insist on ESI search term protocols.  Southwest only suggested ESI terms initially because Carter's counsel refused to confer and, hence, Southwest did not realize Carter would later insist on such broad searches.  (Dkt. No. 133 p. 6 n.1; dkt. no. 134-6 p. 42).  Carter's counsel did not agree to permit non-ESI collection until October 2020.

[6] Southwest searched for and produced documents responsive to Requests for Production 18 and 21.  (Dkt. No. 134-6 pp. 5, 20).  However, Carter did not confer with Southwest between the time it produced documents and witnesses in late-October and when she filed her Motion in November 2020.

[7] The corporate representative, Sims, was deposed in his personal and corporate capacities.

including coordinating appearance by former employees.  Thus, Carter has had a full opportunity to conduct all necessary discovery.  No more discovery is necessary or permissible in this case.

## III.   ARGUMENT

Carter's motion fails for two separate reasons.  First, all of Carter's requests advanced in her Motion seek information that is not relevant to any material fact in the case.  Instead, Carter asks to be allowed to explore Southwest's files concerning Flight Attendants who are not similarly situated to her, despite the fact that such information has no bearing on Carter's claim. Second, even if the information were relevant, these requests are grossly out of proportion to the needs of this case, which has already seen the parties expend extraordinary time and fees on discovery.  According, Carter's Motion should be denied.

### A.   Carter fails to demonstrate that the requested documents and information are relevant and discoverable

Carter's requests seek information that is irrelevant to the claims and defenses in this case.  First, Carter demands that the Court require Southwest search for and produce documents and communications concerning Flight Attendants who are not similarly situated to Carter. Second, Carter demands that the Court to require Southwest to search for and produce documents regarding unrelated grievance settlements that have nothing to do with Carter, the decision-maker responsible for her termination, or the behavior at issue in her termination. Third, Carter demands that the Court require Southwest search for and produce religious accommodation material in a case where no accommodation was requested and Southwest stipulates that none was provided.  All of these demands fail as a matter of law.

#### 1.   Standard governing motions to compel

As the moving party, it is Carter's "burden to demonstrate that the material sought is relevant and within the scope of permissible discovery."  *Source Network Sales & Mktg., LLC v.*

*Jiangsu Mega Motor Co.*, 2017 U.S. Dist. LEXIS 221494, *5 (N.D. Tex. May 15, 2017); *see also Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010) (it is moving party's burden to "show[] that the materials and information sought are relevant to the action").

Discovery is limited to matters that are "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In fact, the Federal Rules of Civil Procedure were amended in 2015 for the express purpose of replacing the broader prior standard with this proportionality requirement. *See* Fed. R. Civ. P. 26 (2015 Committee Notes); *Zenith Ins. Co. v. Tex. Inst. for Surgery, LLP*, 328 F.R.D. 153, 160 (N.D. Tex. 2018) (under amended Rule 26, "discoverable matter must be both relevant and proportional to the needs of the case"). In applying the discovery rules, courts will bar discovery from being used "to engage in [] unwieldy, burdensome, and speculative fishing expedition[s]." *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) (citation omitted). Thus, courts use their discretion to bar discovery requests that are "too broad and oppressive." *Diloreto v. Perrin Forster & Crosby*, 2010 U.S. Dist. LEXIS 161866, *5 (N.D. Tex. Aug. 20, 2010).

     2.    <u>Interrogatory No. 3 and Requests for Production Nos. 6, 17-19 seek irrelevant information regarding non-similarly situated employees.</u>

Carter's attempt to salvage her requests by identifying all Southwest Flight Attendants as "similarly situated" and her argument, albeit ambiguous, suggesting a custodian limitation do not overcome the Fifth Circuit's clear guidance limiting collateral employee discovery. Hence, Carter's Motion should be denied.

     a.    <u>Carter's requests are not limited to similarly situated employees</u>

Carter's attempt to define "similarly situated employees" as all Southwest Flight Attendants is contrary to the controlling law of this Circuit. Specifically, Carter claims that she is entitled to responsive documents concerning more than 12,000 Flight Attendants. This argument

does not even attempt to satisfy the Fifth Circuit's "nearly identical" circumstances requirement for authorizing comparator discovery.  *West v*, 960 F.3d at 740.

Carter seeks production of broad categories of information related to the conduct, complaints, and discipline of Flight Attendants throughout Southwest.  Specifically, Carter seeks:

- Identification of every employee whose social media activities were reported to Southwest.  (Interrogatory No. 3).

- All documents, communications, and investigation materials regarding any social media complaint, or any employee's social media activities.  (RFP 6).

- All documents and communications regarding any complaints regarding religious beliefs, views, or practices, and all Southwest's responses thereto. (RFP 18).

- All documents and communications regarding any employee who Southwest terminated after they executed any settlement agreement with Southwest, including a last chance agreement.  (RFP 17).

- All documents and communications regarding any employee's request for a religious accommodation and all of Southwest's responses thereto.  (RFP 19).

Carter claims that the Court should order production of responsive materials concerning *all Flight Attendants* irrespective of a given Flight Attendant's manager, work location, or disciplinary circumstances, among other absent limitations.  (Dkt. No. 133 pp. 10-14).

Courts only allow limited, targeted discovery of information regarding similarly situated comparators.  The Fifth Circuit has repeatedly made clear that plaintiffs in employment cases are not entitled to "rummage through" personnel and other records in the hopes of identifying comparators or other relevant information.  *See, e.g.*, *Kean v. Jack Henry & Assocs.*, 577 F. App'x 342, 347 (5th Cir. 2014); *see also Drechsel v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 151409, *15 (N.D. Tex. Nov. 9, 2015) ("Plaintiff is not entitled to rummage through the personnel files in hopes of discovering information that might possible be relevant to his claim.").

The Fifth Circuit has "defined 'similarly situated' narrowly, requiring the employees'

8

situations to be 'nearly identical.'"  *West v. City of Houston*, 960 F.3d at 740; *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).  Under this standard, the plaintiff must identify comparators outside of the protected class (here, union supporters and non-Christians) with the same job duties, same supervisors, and with comparable violation histories. *Hinga v. MIC Grp., L.L.C.*, 609 F. App'x 823, 827 (5th Cir. 2015).  Even where the *Hinga* factors are present, though, "[e]mployees are not similarly situated if they: (1) had different supervisors; (2) worked for different divisions within the company; (3) held different responsibilities; (4) suffered adverse actions for dissimilar conduct; or (5) suffered adverse actions too remote in time from each other."  *Warren v. Fannie Mae*, 733 F. App'x 753, 761 (5th Cir. 2018).

The Fifth Circuit has further narrowed the definition of "similarly situated" in multiple ways.  For instance, individuals whose employment actions are caused by different decision-makers are not similarly situated.  *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000) (employees not similarly situated where, "most importantly, the decision-makers who disciplined" the employees were different); *Burnett v. Thompson*, 2002 U.S. App. LEXIS 29319, *7 (5th Cir. Feb. 6, 2002) (employees were not similarly situated because "different decision-makers disciplined" plaintiff and the comparator).  Likewise, "most importantly, 'the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions.'"  *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 213 (5th Cir. 2018).

Yet Carter still improperly seeks the production of materials related to Flight Attendants without any reference to the factors that govern the similarly situated analysis (*e.g.*, same decision-makers, work locations, managers, disciplinary history, etc.).  Carter, citing *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236 (5th Cir. 2019), contends that the Fifth Circuit does not

9

require similarly situated comparators to have the same supervisors.  (Dkt. No. 133 p. 10) ("employees can still be similarly situated when they … have different supervisors").  Carter misreads *Garcia*.  *Garcia* stands for the more limited proposition that "a difference in *work divisions* [] *on its own*" does not "*singlehandedly* render[] two employees [] dissimilarly situated."  *Id.* at 245 (emphasis added).  *Garcia* did not disturb the longstanding and repeatedly stated proposition that employees "with different supervisors … are not similarly situated." *Heggemeier v. Caldwell County*, 826 F.3d 861, 868 (5th Cir. 2016); *see also Sacchetti v. Optiv Sec.*, 819 F. App'x 251, 254 (5th Cir. 2020) (proposed comparators not similarly situated because, *inter alia*, they did not have the same supervisors); *Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 87-88 (5th Cir. 2019) (comparators should share the same supervisor); *Brockie v. Ameripath, Inc.*, 2007 U.S. Dist. LEXIS 29672, *42 (N.D. Tex. Apr. 23, 2007) ("For the circumstances to be nearly identical, the comparators must have committed the same violations and must have been subject to the same supervisor."); *Cooper v. City of Dallas*, 2006 U.S. Dist. LEXIS 48444, *5 (N.D. Tex. July 17, 2006) ("Employees with different supervisors are not 'nearly identical.'"); *Lawrence v. United Airlines, Inc.*, 2002 U.S. Dist. LEXIS 12559, *9 (N.D. Tex. July 10, 2002) ("Discipline situations are not considered 'nearly identical' where the more favorably treated employees were disciplined by supervisors other than the Plaintiff's").[8]

Carter also argues that the similarly situated inquiry should be resolved without reference to the nature and severity of the social media-related misconduct at issue.  But to be comparators, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly

---

[8] Plaintiff also cites *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999) for the proposition that similarly situated comparators need not have the same supervisor.  Carter misstates this decision.  Contrary to Carter's contention, the court simply noted that plaintiff argued she was treated less favorably than a white employee who appears to have had a different supervisor.  *Id.* at 409 n.11.  However, the court did not opine on whether the white comparator plaintiff identified for purpose of her retaliation claim was similarly situated.  *See id.* at 409-10.

identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Outley v. Luke & Assocs.*, 840 F.3d 212, 218 (5th Cir. 2016); *see also Sacchetti*, 819 F. App'x at 254.  This standard is not met when there are "[v]ariations in the severity of the violation committed."  *Brockie*, 2007 U.S. Dist. LEXIS 29672, *40 n.9.  Indeed, even employees who commit similar violations of an employer's policy may not be similarly situated.  *See, e.g.*, *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (the termination of one employee who stole bat mitzvah gifts while retaining another employee who stole alcohol and party decorations was not competent comparator evidence because the thefts were of different severity).  Thus, Carter's decision to send over 100 grotesque and threatening messages must be compared to the transmittal of similar materials, in a similar way, in a similar volume.[9]

Finally, Carter contends that she is entitled to information regarding social media complaints and disciplinary issues regarding all Flight Attendants based on a cat's paw theory – *i.e.*, an employer can be liable if a manager with an improper motive causes the decision-maker to take an adverse action.  (Dkt. No. 133 p. 9).  Yet Carter fails to identify *any* evidence in support of this theory, despite the ample discovery completed to date.  Merely asserting "cat's paw" as a hypothetical mechanism of liability without pointing to any facts in the record (or even the live complaint) supporting its potential application is insufficient to render it a live issue in this litigation.  *See Bryant v. Miss. Div. of Medicaid*, 2014 U.S. Dist. LEXIS 165626, *9-10 (N.D. Miss. Nov. 25, 2014) (dismissing cat's paw theory because plaintiff failed to allege adequate facts

---

[9] Carter repeatedly mischaracterizes her own requests.  She falsely asserts that her requests only "relate to Southwest's disparate treatment and discriminatory animus toward other flight attendants based on their opposition to the union (RFPs 6, 7, 17, Interrogatory 3) or their religious views (RFPs 18, 19, 21)."  (Dkt. No. 133 p. 8).  In fact, these requests seek all documents and communications regarding the applicable Southwest policies.  Such breadth is facially improper.  *See Kean*, 577 F. App'x at 347 (plaintiff "do[es] not have an unlimited ability to delve into their employers' policy and personnel records[.]").

supporting such theory); *Steinberg v. Bpo Mgmt. Servs.*, 2010 U.S. Dist. LEXIS 164507, *7 (N.D. Tex. Nov. 8, 2010) ("Discovery is not a fishing expedition that can be used to troll for additional claims – rather, it is a tool to find material that is relevant to existing claims.").

Carter has not carried her burden to require production of any of the materials she seeks. Instead, she calls on the Court to endorse fishing expeditions into the employment and disciplinary information of third parties irrespective of their relevance to factual and legal matters at issue.  The Court should not heed Carter's call.

> b.  <u>Carter has not identified a basis for searching for materials from the 13 custodians.</u>

Faced with the authority above, Carter asks the Court to make new law by replacing the prevailing case law with a rule that identifying specific custodians whose documents she wants to searched means the "similarly situated" requirement is satisfied.  Carter's argument fails for multiple reasons.  First, the Fifth Circuit has never authorized such an expansive alteration to the limits of collateral discovery.  Second, even if Carter's argument worked in theory, her own testimony and evidence doom any claim that she should be allowed further intrusion into the files of the identified custodians.  Accordingly, on this argument also fails.

First, Carter argues that Southwest should produce documents and information responsive to the disputed requests that are in the possession of 13 identified custodians including herself and Audrey Stone, the Flight attendant to whom Carter sent the messages that led to her termination.  (Dkt. No. 133 pp. 5-6).  Carter contends that the 13 custodians were "involved in Carter's termination" and "apply the Social Media Policies to other flight attendants across the country and make employment decisions affecting them[.]"  (Dkt. No. 133, pp. 10, 12 (*citing* Dkt. No. 30, pp. 2, 4, 8-15, 17-258; dkt. no. 134-6 p. 38)).  But the Fifth Circuit guidance is absolutely clear as set out above: "[T]he plaintiff's conduct that drew the adverse employment

decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Eyob*, 745 F. App'x at 213.  No aspect of this test yields to a "custodians exception."  Collateral employee evidence is not relevant unless it concerns nearly identical circumstances.  Put simply, seeking irrelevant evidence from a subset of custodians does not make that evidence relevant or otherwise discoverable.

Second, Carter trumpets her limitation to 13 custodians, but the record establishes that further searches of those custodians has no basis.

- Carter only identified 6 of the 13 custodians—Sonya Lacore, Maureen Emlet, Dave Kissman, Ed Schneider, Mike Simms, and Meggan Jones—as individuals who discriminated and retaliated against her.  (APP000115, Interrogatory No. 12).

- Carter admitted at deposition that she cannot identify any evidence that the 6 Southwest employees listed above discriminated against her based on her religion or union-related activities.  (APP000012-14, 79:1-80:9, APP000015-17, 81:9-83:1).

- Carter already has deposed 4 of the 6 custodians and taken corporate representative testimony that encompasses all of the remaining custodians.  Yet she has failed to even attempt to tailor her requests to any identifiable, similarly situated person or persons revealed by way of this discovery.

Thus, information that these custodians possess (if any), including communications regarding their handling of disciplinary matters regarding other Flight Attendants involved in violations that are not "nearly identical" to those of Carter, is not relevant comparator information.

3.   Carter fails to demonstrate that information regarding third-party religious accommodation requests and complaints are relevant (RFP 19)

Carter is not entitled to religious accommodation discovery even if she was able to identify "similarly situated" employees as defined by the Fifth Circuit.  It is undisputed that Carter never asked Southwest to provide her with a religious accommodation.  (*See* Dkt. No. 133 p. 16).  Further, it is undisputed that Southwest never undertook to provide her with an accommodation, because she violated Southwest policies before seeking any such accommodation.  (APP000038, 165:15-22, APP000040-41, 231:25-232:10).  Nevertheless,

Carter moves to compel the production of documents regarding any Flight Attendant's request for a religious accommodation and all of Southwest's responses thereto. Carter's contention that she need this information to "evaluate if the ACT Team treated non-Christian-based accommodation requests more favorably than Christian requests" lacks any connection to the facts of this case. (Dkt. No. 133 p. 14).

In deposition, Carter testified that she never communicated with—and was not even aware of—the ACT Team's existence during her employment with Southwest. (APP000005-6, 70:2-10). Additionally, the ACT Team was not involved in Carter's termination. (APP000038, 165:15-22. Thus, the behavior and motivations of ACT Team members in handling third-party accommodation requests is not probative of anything in this case. Likewise, such information about third-party accommodation requests will not result in any relevant comparator evidence, as the ACT Team had nothing to do with Carter's employment issues, nor did they handle any accommodation request from her. *See Burnett*, 2002 U.S. App. LEXIS 29319, *7 (employees were not similarly situated because "different decision-makers disciplined" plaintiff and the comparator). To adopt Carter's argument would authorize plaintiffs in religious discrimination cases, including those who never sought an accommodation, to obtain all documents and communications regarding every accommodation request. Further, it would create innumerable mini-trials regarding every prior accommodation despite the lack of any relevance to Carter's termination. No authority cited by Carter supports this outcome.

Still, Carter contends, citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S.Ct. 2028 (2015), that she is entitled to information regarding all third-party accommodation requests and the disposition of the same even though she never requested an accommodation or even communicated with the individuals responsible for granting or denying them. (*See* Dkt. No. 133

14

p. 16).  This is a non-sequitur and demonstrates the precise opposite of what *Abercrombie* holds. In *Abercrombie*, the Court considered a claim where a job applicant brought a claim for failure to accommodate despite the fact that the applicant had never been hired.  135 S.Ct. at 2031.  Faced with such a claim, the Court held that even in the absence of an accommodation request, an employer cannot refuse to hire an applicant "to avoid accommodating a religious practice that it could accommodate without undue hardship."  *Id.*

   *Abercrombie* has nothing to do with Carter's case.  First, *Abercrombie* does not—in any way—speak to the scope of permissible discovery in a termination case.  Instead, it merely allowed a claim to proceed on the merits where an applicant was not hired to avoid providing future accommodations.  *See id.* at 2033.  Second, *Abercrombie* did not—as in this case—concern an employee who violated employer policies *before* seeking an accommodation. Employees asserting religious accommodation claims must show that they sought accommodation prior to violating an employee policy.  *See, e.g.*, *Abdelwahab v. Jackson State Univ.*, 2010 U.S. Dist. LEXIS 7729, *8 n.3 (S.D. Miss. Jan. 27, 2010) ("Obviously, an employer must be given adequate notice of an employee's religious conflict before a religious animus that the statute was designed to prevent can be found to have existed."); *Nobach v. Woodland Vill. Nursing Ctr.*, 799 F.3d 374, 378 n.7 (5th Cir. 2015); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) (an employee cannot inform employer of conflict between his religion and employment requirement at the "same time as an employee violates employment requirements"); *Bob v. Madison Sec. Grp.*, 2016 U.S. Dist. LEXIS 163940, *27 (S.D.N.Y. Nov. 28, 2016) (employer must be made aware of the employee's conflicting religious belief "before the time the conflicting employment requirement arises"); *Hussein v. Pierre Hotel*, 2001 U.S. Dist. LEXIS 4859, *10 (S.D.N.Y. April 20, 2001) (affirming judgment for employer where

15

"[Plaintiff] did not mention the purported conflict between his religion and [] [the employer's] policy until after management questioned him about his beard").

This second point is critical because, even if such discovery were permissible, it would need to be limited to retroactive grants of reasonable accommodation for prior violations. Southwest's corporate representative has already testified that, consistent with the above-cited authority, such retroactive accommodations have never been granted in any situation—much less a nearly identical social media context.  (APP000040-41, 231:25-232:10).

Accordingly, Carter is not entitled to any further discovery as to religious accommodations extended by Southwest to other employees.

4.   Carter's request for documents about employees Southwest terminated after they executed an LCA does not seek relevant information (RFP 17)

Likewise, Carter's attempt to "rummage through" other employees' personnel files on the basis that they accepted a grievance settlement and were subsequently terminated has no merit. *See Drechsel*, 2015 U.S. Dist. LEXIS 151409, *15.  Request 17 seeks all documents regarding Southwest employees who were terminated after executing an LCA or other settlement agreement with Southwest.  This request improperly seeks generalized information regarding the treatment of Flight Attendants in contexts wholly dissimilar to Carter.

Carter contends this material is relevant because it may reveal evidence that Southwest "treated union opponents less favorably than union supporters after they signed [LCAs] or other settlement agreements."  (Dkt. No. 133 p. 14).  Not only is the request unconstrained by factors relevant to similarly situated status (*e.g.*, managers, work locations, type of misconduct, circumstances of separation, etc.), the individuals in question were subject to employment terms (pursuant to a LCA or other settlement agreement) that never applied to Carter.  *See generally Warren*, 733 F. App'x at 761.  Granting Carter's Motion would endorse the proposition that by

merely raising the specter of *potential* disparate treatment in any aspect of the employment relationship (in this case, an aspect that never applied to Carter), a plaintiff in a single plaintiff discrimination case is entitled to receive all materials related to vast swaths of collateral employee information. The law does not allow for such fishing expeditions into third-party personnel information. *See Kean*, 577 F. App'x at 347.

Finally, Southwest notes that Holly Immamovic is the only individual who Carter contends Southwest terminated after executing a LCA. Importantly, Southwest already provided Carter with Immamovic's entire personnel record and produced numerous documents regarding her employment. Thus, Carter already has possession of any potentially relevant material that is responsive to this request.

5.   <u>Southwest has already produced all materials concerning RFP 21</u>.

RFP 21 seeks information about Southwest's stance abortion and reproductive rights. Southwest does not now nor has it ever taken a position on abortion. (APP000039, 201:4-14; APP000001). Further, the Southwest decision-makers, as well as several ancillary witness, have identified themselves as pro-life. (APP000025, 128:3-20; APP000028, 85:2-16; APP000033, 130:20-131:14; APP000042, 233:13-23). However, this reality does not comport with the false narrative Carter seeks to create. Accordingly, Carter asks the Court to disregard the fact that Southwest already provided information establishing the above facts and conduct another, deeper search in hopes of finding evidence that simply does not exist. Southwest has nothing else to produce from any of the 13 custodians on this topic nor does it have other documents establishing Southwest's position on abortion, reproductive rights, or Planned Parenthood.

**B.** **The Requested Discovery is Unreasonable, Overly Burdensome, and Not Tailored to the Needs of this Straightforward Single Plaintiff Action**

Even if Carter could demonstrate that some or all of the discovery she seeks is relevant,

17

the Court should still deny her motion.  "[A] district court must limit otherwise permissible discovery if … 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'"  *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (*quoting* Fed. R. Civ. P. 26(b)(2)(C)).  Accordingly, a court will disallow discovery – including of relevant material – if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  *KeyCorp v. Holland*, 2016 U.S. Dist. LEXIS 147926, *13-14 (N.D. Tex. Oct. 26, 2016) (*quoting* Fed. R. Civ. P. 26(b)(2)(C)).

Carter has had the opportunity to depose Southwest's corporate representative on the very topics on which she now seeks discovery.  Carter has also deposed four other current or former Southwest management employees, her accuser, and a union corporate representative.  These depositions provided Carter with a less intrusive means to identify key information regarding Southwest policies, and to explore the existence of similarly situated comparators. *See Adamov v. Pricewaterhouse Coopers LLP*, 2017 U.S. Dist. LEXIS 211210, *13-14 (E.D. Cal. Dec. 21, 2017) (finding that request for communications regarding job description was unduly burdensome and available by less intrusive means because, *inter alia*, "defendant has offered to produce a Fed. R. Civ. P. 30(b)(6) witness on the topic of job duties and work responsibilities.").  Rather than using this less intrusive means, Carter appears intent on driving up litigation costs by simply resting on her requests as written despite the fact that they are not tethered to any of the

limitations required under Federal Rule of Civil Procedure 26.

Additionally, Southwest has produced all of the employment policies at issue in this case, and the entire personnel file of specific individuals who Carter contends are relevant comparators. Carter does not attempt to identify evidence in *those files* as indicating that other evidence supporting her claim exists. Rather, she relies on conjecture about what categories of documents *could* hypothetically reveal. That is not surprising. When a neutral arbitrator addressed Carter's grievance contesting her termination, he concluded that Southwest did not treat Carter less favorably than similarly situated employees, and that Southwest did not engage in disparate treatment between union supporters and dissidents. (*See* Dkt. No. 50 pp. 6-24). The record thus shows that Carter leans on speculation because supporting facts are unavailable.

To produce the documents Carter requests, Southwest likely could not rely on self-collection as it did on the more targeted requests that have already been satisfied.[10] Carter's requests would require, *inter alia*, production of (a) all correspondence that mentioned or related to the workplace policies at issue in this case irrespective of context or content (RFP No. 7); (b) all correspondence that referenced or related to the social media activity of any Flight Attendant at any location irrespective of the content or the relevance of the activity to this case of the activity (RFP Nos. 6-7); and (c) all correspondence that related to any complaint, disciplinary action, or investigation related to a potential violation of the Workplace Bullying and Hazing Policy; Social Media Policy; Policy Concerning Harassment, Sexual Harassment Discrimination, and Retaliation; and Mission Statement (RFP Nos. 6-7). Conducting a meaningful search for such broad requests would require Southwest to *again* digest millions of emails from the

---

[10] Southwest further notes that the events in this case occurred more than three years ago. In that time, many of the custodians at issue have left Southwest. While Southwest was able to impose on former employees once for help with a targeted self-collection, Carter's proposed second, much more granular effort likely will not be possible.

custodians and pay the tens of thousands of dollars in storage costs associated with that process. It would then have to craft reasonable search terms, and review the results for responsiveness to the disputed requests, thereby incurring extraordinary attorneys' fee expenses. The production would be voluminous and time consuming. And such a compliance effort would not fully address what Carter seeks in her Motion.

Meanwhile, Carter's claimed economic damages in this case are limited to $15,000 per year of lost wages that Carter did not attempt mitigate. Further, Carter's representation is fully funded by non-profit anti-union organization that benefits from imposed increased costs on the litigants in this matter without regard to expense, thereby fundamentally altering the litigation calculus in this case. While Carter does raise issues regarding important statutory rights, those statutory rights are routinely litigated with far less discovery, as evidenced by the authority cited throughout this Response. Requiring Southwest to incur the costs and burden to review several years of documents from 13 custodians to identify information responsive to Carter's broad requests is unreasonable and disproportionate in light of the limited damages at issue and the volume of documents produced to date. *See Vinet v. BP Exploration & Prod.*, 2019 U.S. Dist. LEXIS 131030, *16 (E.D. La. Aug. 6, 2019) (a small amount in controversy supports finding that discovery is not proportional). The Court should deny Carter's motion in its entirety.

## IV.   <u>CONCLUSION</u>

As set forth above, the Court should deny Carter's motion to compel in its entirety.

*/s/ Michael A. Correll*
Michael A. Correll
State Bar No. 24069537
**REED SMITH LLP**
2501 N. Harwood Street
Suite 1700
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
Email: mcorrell@reedsmith.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served by electronic mail on all parties on this 2nd day of December, 2020.


*/s/ Michael A. Correll*

Michael A. Correll