

# Inflight Info on the Go

**January 20, 2017**

**Political Activities**
*From: Mike Sims, Director of Inflight Operations*

Thanks for everything you do as Southwest Crews to provide the best Customer experience possible. With so many Customers traveling to/from Washington, D.C. with varying political views, the sharing of political opinions can quickly escalate emotions.

Please keep the Safety of our Customers and yourself top of mind and remember the importance of maintaining respect, neutrality, and civility with our Customers and your Cohearts.

SWA004128
**APP000001**

156645960_1.txt

10:40:19 23   we take a break.

10:40:19 24        A.     Okay.  So Exhibit 3?

10:40:21 25        Q.     Yes, ma'am.

♀

                                                                    26


10:40:21  1        A.     Okay.

10:40:22  2        Q.     And so this is a fairly lengthy document if

10:40:25  3   you want to scroll through it you're welcome to I have

10:40:27  4   just some very simple questions once you have a chance

10:40:30  5   to familiarize yourself with it but do you recognize

10:40:32  6   this document?

10:40:33  7        A.     Yes, sir, I do.

10:40:34  8        Q.     What is this document?

10:40:35  9        A.     This is the private message that I sent to

10:40:41 10   my union president Audrey stone.

10:40:43 11        Q.     And to be clear, this document consists of

10:40:47 12   about 100 pages, right?  If you scroll down.

10:40:52 13        A.     I believe so, yes.

10:40:54 14        Q.     And there's -- and altogether of these

10:40:59 15   appear to be messages that you sent to Ms. Carter,

10:41:01 16   correct?  Excuse me.  To Ms. Stone.

10:41:02 17        A.     Yes.  But I will say the only ones that I

10:41:06 18   was called in for were of the videos that I sent her.

10:41:10 19        Q.     What do you mean when you say that?

                              Page 29

156645960_1.txt

10:41:13 20      A.      Those were the only ones that were used in

10:41:15 21  my fact-finding meeting and also in my second step

10:41:19 22  meeting.

10:41:19 23      Q.      When you say used, what do you mean?

10:41:22 24      A.      Those are the ones that I was called in

10:41:24 25  for.

                                                                27

10:41:25  1      Q.      Well no and that's what I'm trying to

10:41:27  2  understand.  Are these the ones that were shown to you,

10:41:30  3  what -- what was done with these documents at your

10:41:33  4  fact-finding?

10:41:34  5      A.      The only ones that were shown to me were

10:41:36  6  the ones of the videos, pictures that you see.  The

10:41:41  7  remaining were not -- were not a part of my

10:41:44  8  fact-finding meeting.

10:41:51  9      Q.      Now, do you acknowledge that all of these

10:41:53 10  are messages that you sent to Ms. Stone?

10:41:56 11      A.      Yes, as for being my president of the

10:41:59 12  union, it was.

10:42:05 13      Q.      And prior to sending the messages beginning

10:42:15 14  on the first page and continuing on to the second page,

10:42:19 15  did Ms. Stone report you to Southwest Airlines?

10:42:23 16      A.      No.  As a matter of fact, we never even had

APP000003

156645960_1.txt

11:47:47 14       Q.    So there was nothing for you to - quote -

11:47:51 15   not let on what I know" about?

11:47:56 16       A.    Let on -- no, I --

11:47:58 17       Q.    She -- so -- let me put it back up.  I'm

11:48:01 18   sorry.  That's a bad question.

11:48:02 19       A.    I --

11:48:03 20       Q.    So when she said she doesn't want -- when

11:48:05 21   you write here, "She doesn't want me to let on that I

11:48:08 22   know this in the meeting"?

11:48:11 23       A.    Yes the --

11:48:12 24       Q.    What is the "this"?  What is the "this" in

11:48:16 25   that sentence?

♀

69


11:48:17 1       A.    "This" would be that -- okay.  Let's see.

11:48:20 2   She doesn't want me to let on that I know that -- that

11:48:22 3   I know that she knows that it was Audrey stone who

11:48:27 4   turned -- she wanted to make that reference to Mike

11:48:31 5   Sims.  She wanted to have that meeting with Mike Sims.

11:48:35 6   But I already stated it within my meeting that it was

11:48:38 7   Audrey stone my union president that turned me in.

11:48:44 8       Q.    In the message below, Ms. Jackson says,

11:48:47 9   "I'll call you when I get in my car."  Did you guys

11:48:50 10   have a conversation about this message?

Page 77

156645960_1.txt

11:48:51 11      A.      You know what?  I don't recall.

11:49:13 12      Q.      You understand that in your lawsuit you

11:49:21 13  assert that Ed Schneider terminated you in part at

11:49:25 14  least based on your religious beliefs, correct?

11:49:27 15      A.      That is correct.

11:49:28 16      Q.      What is your basis for that assertion?

11:49:32 17      A.      I told him that I was a Christian in my

11:49:36 18  faith -- in my fact-finding meeting and that I am

11:49:42 19  against -- well, I was against the march and them

11:49:46 20  marching for Planned Parenthood due to my strong belief

11:49:51 21  against abortion.

11:49:52 22      Q.      Do you have any evidence that Mr. Schneider

11:49:57 23  would have reached a different outcome had you been

11:50:00 24  held the same views but they were not related to your

11:50:03 25  religious beliefs?

                                                         70


11:50:05  1      A.      That, I cannot speak for him.

11:50:08  2      Q.      I'm asking if you have any evidence of that

11:50:12  3  or anything would you point to for that fact.

11:50:16  4      A.      I believe that if -- I should have been

11:50:23  5  able to given, and not knowing this prior to this, that

11:50:31  6  I could have some kind of accommodation because of my

11:50:33  7  Christian religion, but when I said that within that

                            Page 78

156645960_1.txt

11:50:40  8    meeting, maybe he should have referred me to I believe

11:50:43  9    now it's called the ACT committee.  I had no idea that

11:50:48 10    that committee even existed.

11:50:50 11        Q.    Are you aware of Southwest ever giving a

11:50:54 12    religious accommodation to excuse prior conduct?

11:50:57 13              MR. GILLIAM:  Objection to the extent it

11:50:58 14    calls for a legal conclusion.

11:50:59 15        A.    I do not.  I had never known of -- I

11:51:04 16    believe that if you stated that you were a Christian,

11:51:07 17    you know, that was enough.  I mean, I don't know what

11:51:12 18    else that you know --

11:51:13 19    BY MR. CORRELL:

11:51:13 20        Q.    Well --

11:51:13 21        A.    I never even knew that we had an act

11:51:16 22    committee that you could even reach out to.

11:51:21 23        Q.    What accommodation did you want?

11:51:27 24        A.    I didn't know I had to have an

11:51:29 25    accommodation.

♀

                                                                  71

11:51:32  1        Q.    Sitting here today, you've said that you --

11:51:34  2    you didn't know about the act committee, you suggest

11:51:37  3    that Mr. Schneider should have referred you to the act

11:51:41  4    team.  What is it that you would have asked them for?

                              Page 79

156645960_1.txt

11:51:45  5        A.    I believe that I should have been protected

11:51:48  6    as a Christian no matter what of my beliefs.

11:51:51  7        Q.    So your accommodation request would have

11:51:54  8    been to be able to send whatever messages you wanted if

11:51:56  9    they were related to your Christian beliefs?

11:52:09 10        A.    When my union president decided to take 20

11:52:15 11    women in support of planned parenthood, yeah, I should

11:52:21 12    have been able to speak my mind since my money was

11:52:24 13    being used to that.

11:52:27 14        Q.    My question is different.  What specific

11:52:31 15    exception from the social media policy did you want

11:52:34 16    Southwest to give you?

11:52:36 17        A.    I should have been able to post my belief

11:52:41 18    system without retaliation on my own personal page and

11:52:45 19    that is one of the things that they got me for.

11:52:49 20        Q.    Well, let's stick with the private

11:52:51 21    messages.  Let's stick with the private messages first?

11:52:54 22        A.    The private messages were to my union

11:52:57 23    president regarding a march that she took place at so

11:53:02 24    yes, I do believe that that should have been protected

11:53:05 25    not only under my Christian value system but also due

                                                                    72


11:53:09  1    to the fact that she's my union president.  Not Audrey
                              Page 80

156645960_1.txt

11:53:17  2    stone, but being the union president.  So yes, I --

11:53:21  3        Q.     Ms. Carter I am asking you a very specific

11:53:23  4    question.  You have contended in this lawsuit that you

11:53:25  5    wanted Southwest to make an exception to the social

11:53:27  6    media and workplace bullying policies to accommodate

11:53:31  7    your religious beliefs.  Do you understand that?

11:53:33  8        A.     Yes, I do.

11:53:34  9        Q.     What exception did you want them to create

11:53:37 10    for you?  What would the rule be if you had gone to

11:53:41 11    Southwest and they'd given you what you wanted?

11:53:43 12             MR. GILLIAM:  Objection.  Calls for legal

11:53:46 13    conclusion.

11:53:47 14        A.     I don't know what kind of exception.  I

11:53:48 15    don't even know of what an exception would be.  But

11:53:52 16    they -- I clearly stated I was a Christian, I don't

11:53:58 17    believe that my union president should have gone to a

11:54:02 18    march that supported planned parenthood and who was the

11:54:07 19    main sponsor of that march when she went to represent

11:54:12 20    us she put herself and our union, our -- she

11:54:18 21    represented us at a march that supported abortion, so

11:54:24 22    in this context yes, I believe that I should have had a

11:54:32 23    somewhat at least send me to the act team, talk to me

11:54:36 24    about it, why is it that I cannot express my dislike

11:54:46 25    because that's always been the case with our union

Page 81

156645960_1.txt

♀

11:54:50  1    leadership, but for some reason in my case it's not and

11:54:54  2    yes my Christian beliefs should have been recognized

11:54:59  3    within my union fact-finding meeting, I brought it up

11:55:06  4    several times in that meeting.

11:55:07  5    BY MR. CORRELL:

11:55:07  6         Q.    Ms. Carter as you sit here today is it your

11:55:11  7    sworn testimony that you cannot tell me what

11:55:13  8    accommodation that you wanted to request from Southwest

11:55:17  9    Airlines?

11:55:17  10        A.    I don't know what the accommodations are.

11:55:20  11   I don't even know what the act team was until just

11:55:24  12   recently.

11:55:25  13        Q.    I'll give you an example --

11:55:26  14        A.    What I can't say is if I don't -- they

11:55:30  15   should have recognized my Christian beliefs within the

11:55:33  16   fact-finding meeting when I said I don't -- I -- I

11:55:38  17   don't believe in abortion and I don't believe that

11:55:42  18   our -- my union president should have taken our dues

11:55:45  19   and spent it on a march.  This -- this had everything

11:55:50  20   to do with just that march.

11:55:53  21        Q.    Ms. Carter what I'm asking you is what is

11:55:56  22   it you're saying Southwest Airlines should have done to

Page 82

156645960_1.txt

11:55:59 23   accommodate your religious beliefs as soon as you

11:56:02 24   raised them?

11:56:04 25                    MR. GILLIAM:  Objection to the extent it

♀

74


11:56:06  1   calls for a legal conclusion.  You can answer.

11:56:09  2   BY MR. CORRELL:

11:56:10  3       Q.     Are you testifying that they should have --

11:56:12  4   said never find?

11:56:13  5       A.

11:56:15  6       A.     They had they should not have fired me over

11:56:18  7   my Christian belief.

11:56:19  8       Q.     Okay.

11:56:20  9       A.     After I expressed them in the union meeting

11:56:22 10   and we could have sat down and fleece had a

11:56:24 11   conversation regarding that.

11:56:27 12       Q.     So is there any limit to what you would be

11:56:29 13   allowed to say to express your Christian beliefs to

11:56:33 14   other employees of Southwest Airlines in your personal

11:56:37 15   view?

11:56:38 16                    MR. GILLIAM:  Objection.  Incomplete

11:56:40 17   hypothetical.

11:56:45 18       A.     They should have accommodated this.

11:56:52 19   BY MR. CORRELL:

Page 83

APP000010

156645960_1.txt

12:00:13 11        Q.    Would you also have sought to be allowed to

12:00:18 12    have sent those employees to other employees again in

12:00:21 13    the future?

12:00:21 14        A.    I would have never sent those messages to

12:00:24 15    anybody.  This was in reflection -- or this was due to

12:00:28 16    the actual march that -- and I only sent it to my union

12:00:33 17    president because she is the one that led this

12:00:36 18    particular march, as in led these flight attendants to

12:00:41 19    this women's committee meeting and to the march.  I

12:00:45 20    never sent it to anyone else.  She was the leader and

12:00:48 21    this is the reason it got sent to her.  There was no

12:00:52 22    reason for me to send it to anyone else.  And it was in

12:00:59 23    her capacity as the union president, not her

12:01:14 24    personally.

12:01:29 25               MR. GILLIAM:  Counsel, whenever it's

♀
                                                                 78


12:01:31 1    convenient for you, if you want to take a break, that's

12:01:33 2    fine.  I think everybody's ready.

12:01:34 3               MR. CORRELL:  Yeah, give me just two more

12:01:36 4    minutes and I think we'll be good.

12:01:38 5               MR. GILLIAM:  Okay.

12:01:52 6               MR. CORRELL:  Yeah, let's go ahead and take

12:01:54 7    a break now.

                              Page 87

APP000011

156645960_1.txt

12:01:54  8          MR. GILLIAM:  Okay.  All right.

12:01:55  9          MR. GILLIAM:  About what --

12:01:57 10          VIDEOGRAPHER:  Hold on.  Hang on.  We are

12:01:59 11  going off the record at 11:01 a.m.

12:02:02 12          (Break from 11:01 a.m. until 12:14 p.m.)

12:14:17 13          VIDEOGRAPHER:  We are going back on the

12:14:18 14  record at 11:14 a.m.

12:14:23 15  BY MR. CORRELL:

12:14:24 16      Q.    Ms. Carter before we took the break we had

12:14:26 17  started to talk about or we had gone into and started

12:14:29 18  talking about religious accommodation issues before

12:14:32 19  that the question I put to you was essentially what

12:14:34 20  evidence do you have that Mr. Schneider sought to

12:14:37 21  discriminate you on the basis of your religious beliefs

12:14:40 22  and I believe your answer was that he did not provide

12:14:42 23  with you a religious accommodation or direct to you the

12:14:44 24  act team.  Do I have that correct?

12:14:46 25      A.    Yes.

                                                              79


12:14:47  1      Q.    Is there any other evidence that you

12:14:49  2  possess that Mr. Schneider acted against you because he

12:14:53  3  was hostile to or discriminating against your religious

12:14:57  4  beliefs?

                          Page 88

156645960_1.txt

12:14:57  5        A.    No.

12:15:00  6        Q.    Do you have any evidence that Mr. Schneider

12:15:03  7  was hostile to you or acting against you because you

12:15:07  8  were a union objector?

12:15:08  9        A.    No.

12:15:09 10        Q.    Ms. Jones, Megan Jones was the assistant

12:15:11 11  base manager at Denver, correct?

12:15:13 12        A.    Yes.

12:15:13 13        Q.    And she participated in the fact-finding,

12:15:20 14  right?

12:15:20 15        A.    Yes.

12:15:20 16        Q.    What evidence if any do you have that

12:15:23 17  Ms. Jones sought to discriminate against you on the

12:15:25 18  basis of your religious beliefs?

12:15:31 19        A.    None, except that I said I was a Christian.

12:15:35 20        Q.    And if I ask you the same question about

12:15:37 21  Ms. Gutierrez would your response be the same?

12:15:39 22        A.    Correct.

12:15:40 23        Q.    And if I ask you the same question about

12:15:42 24  Ms. I am let would your response be the same?

12:15:44 25        A.    Yes, sir.

                                                              80


12:15:45  1        Q.    With respect to Ms. Jones do you have any
                                Page 89

APP000013

156645960_1.txt

12:15:52  2   evidence that she sought to discriminate against you

12:15:55  3   based on your status as a union objector?

12:15:57  4        A.     No.

12:15:58  5        Q.     And would the same be true for

12:16:03  6   Ms. Gutierrez?

12:16:04  7        A.     Yes.

12:16:04  8        Q.     And would the same be true for Ms. Em let?

12:16:09  9        A.     Yes.

12:16:10 10        Q.     So after the fact-finding was complete,

12:16:15 11   what happened next in your recollection, after the

12:16:17 12   meeting ended?

12:16:24 13        A.     Nothing.  I mean, I went home.  I talked to

12:16:26 14   Chris Sullivan, my rep, and went home.

12:16:29 15        Q.     So Ms. Ross who we spoke about earlier was

12:16:31 16   she your rep at step 2 then?

12:16:37 17        A.     She was the actual person who did my case

12:16:39 18   through the union.

12:16:40 19        Q.     What do you mean by that?

12:16:41 20        A.     She was the one who did the grievance.  She

12:16:47 21   was the grievance person.

12:16:49 22        Q.     So she did not attend either hearing with

12:16:51 23   you?

12:16:51 24        A.     She attended the second step meeting.

12:16:54 25        Q.     So Chris Sullivan was the only union

Page 90

156645960_1.txt

♀

81

12:16:57  1    representative who attended the first step meeting with

12:16:59  2    you?

12:17:00  3           A.      That's correct.

12:17:02  4           Q.      Between the time the fact-finding ended and

12:17:05  5    when you received Exhibit 1, the termination letter,

12:17:12  6    did you have any more interaction with the company

12:17:15  7    individuals who appeared at the fact-finding meeting?

12:17:18  8           A.      No, I don't believe so.

12:17:26  9           Q.      After you received the termination letter,

12:17:31 10    you grieved that decision, correct?

12:17:34 11           A.      Correct.

12:17:34 12           Q.      And that triggered a step 2 hearing, right?

12:17:37 13           A.      Correct.

12:17:40 14           Q.      What can you tell me about the step two

12:17:42 15    hearing in your recollection?

12:17:47 16           A.      I was able to present my case to Mike Sims.

12:17:52 17           Q.      And you previously testified that you

12:17:55 18    believed that that proceeding was fair and complete,

12:17:57 19    correct?

12:17:59 20           A.      Yes.

12:18:01 21           Q.      Is that still your testimony?

12:18:03 22           A.      Yes.

Page 91

APP000015

156645960_1.txt

12:18:09 23      Q.    Do you contend that Mr. Sims discriminated

12:18:16 24   against you on the basis of your religious beliefs at

12:18:19 25   the step 2 level?

♀

                                                                82


12:18:20  1      A.    No.

12:18:20  2      Q.    Do you contend that anyone else

12:18:24  3   discriminated against you on the basis of your

12:18:25  4   religious beliefs at the step 2 level?

12:18:27  5           MR. GILLIAM:  Objection.  Calls for a legal

12:18:28  6   conclusion.  You can answer.

12:18:30  7      A.    Honestly I don't know.  I don't know.  I

12:18:33  8   mean, I don't know what's in people's minds.

12:18:35  9   BY MR. CORRELL:

12:18:36 10      Q.    Well and that's perfectly fine.  What I'm

12:18:37 11   trying to make sure I get is any evidence that you

12:18:40 12   possess that you believe shows that someone at step 2

12:18:43 13   had what we would call a discriminatory animus so a

12:18:46 14   bias against you because of your Christian beliefs and

12:18:49 15   so I'm just making sure there's no other names in there

12:18:52 16   that we need to cover.

12:18:54 17      A.    No.

12:18:56 18      Q.    Do you have any evidence or -- that

12:19:00 19   Mr. Sims discriminated against you at your step 2

                        Page 92

APP000016

156645960_1.txt

12:19:04 20   because you were a union objector?

12:19:06 21        A.     No.

12:19:07 22        Q.     And to your knowledge, do you have any

12:19:09 23   evidence of anyone else who was discriminating against

12:19:11 24   you from the company at your step 2 on the basis that

12:19:15 25   you were a union objector?

                                                              83


12:19:16 1         A.     No .

12:19:28 2         Q.     So at the step 2 you were directly

12:19:44 3    instructed again that all information that you were

12:19:46 4    provided through the hearing process you need to keep

12:19:48 5    confidential, correct?

12:19:52 6         A.     Yes.

12:19:55 7         Q.     Did you continue discussing your case with

12:19:58 8    Ms. Jackson?

12:20:01 9         A.     I believe I did, yes.  She had --

12:20:04 10        Q.     Did you continue to discuss -- oh, please

12:20:06 11   go ahead.

12:20:07 12        A.     Yes.

12:20:07 13        Q.     Did you continue discussing your case with

12:20:10 14   any other flight attendant?

12:20:16 15        A.     There may have been one or two, yes.

12:20:19 16        Q.     Who?

                              Page 93

156645960_1.txt

12:20:22 17      A.      Dawn Wann *.

12:20:27 18      Q.      Is that D-A-W-N?

12:20:31 19      A.      Mm-hmm.  She also used to be a person who

12:20:34 20   sat on the board.

12:20:37 21      Q.      Who else besides Ms. Wann?

12:20:41 22      A.      Jana Deloache * and she also used to be a

12:20:50 23   representative on the board.

12:20:51 24      Q.      So why were you communicating with Ms. Wann

12:20:53 25   about your proceedings?

♀

                                                                    84


12:20:57  1      A.      Due to the fact that she used to sit on the

12:21:00  2   board, I looked for I guess some help.

12:21:05  3      Q.      Was she still sitting on the board or

12:21:08  4   working in any union capacity when you were

12:21:10  5   communicating with her at this time?

12:21:12  6      A.      I believe she was doing fact-finding

12:21:15  7   meetings at that time, I think.  I don't -- I don't

12:21:17  8   know that for a fact.

12:21:22  9      Q.      Did you ask the company's permission to

12:21:25 10   share information with Ms. Wan?

12:21:28 11      A.      No.

12:21:29 12      Q.      Did you tell your -- Ms. Ross that you were

12:21:33 13   going to communicate with Ms. Wan?

                            Page 94

APP000018

156645960_1.txt

12:25:17   5   biggest reason is that I have known flight attendants

12:25:22   6   that have accepted this and as soon as they accepted

12:25:29   7   it, somebody had turned them in for something that they

12:25:33   8   had done in the past and then they got fired again.

12:25:40   9   Another reason I did not accept this was due to the

12:25:46  10   fact that they wanted to put a letter in my file for 24

12:25:49  11   months, which exceeded the contract it was only

12:25:54  12   supposed to be in there at the -- at the very most for

12:25:57  13   18 months, so which that meant if, you know, I sneezed

12:26:06  14   wrong on the airplane within 24 months of basically

12:26:09  15   being on probation again, I would be fired.  I would

12:26:12  16   have no recourse if somebody, you know, decided to turn

12:26:21  17   me in for past social media, and I know people were

12:26:27  18   looking for that, and I would get fired immediately

12:26:32  19   after signing this.  Another thing is is that this was

12:26:38  20   union business and the company actually got involved in

12:26:43  21   union business, which never happened in the past, and I

12:26:50  22   believe that this should have been just handled within

12:26:52  23   the union, and I would have been signing all my rights

12:26:58  24   away and on top of that I had already been speaking

12:27:06  25   regarding this, again, if I would have signed this,

88

12:27:11   1   somebody could have dredged something up from the past

Page 98

APP000019

156645960_1.txt

12:27:15 2   and had me fired over speaking about it in the past and

12:27:20 3   that has happened to other flight attendants.  So I

12:27:23 4   knew in signing this it would be pretty much my death

12:27:30 5   sentence at Southwest.

12:27:35 6        Q.     The first point you raised, who do you know

12:27:38 7   that accepted the last chance agreement and was

12:27:40 8   subsequently terminated for conduct that pre-dated the

12:27:42 9   last chance agreement?

12:27:44 10       A.     Holly Immamovic.

12:27:46 11       Q.     Now your testimony is that the behavior

12:27:48 12  that got her fired occurred before she accepted the

12:27:52 13  last chance agreement?

12:27:56 14            MR. GILLIAM:  Objection to the form.

12:27:59 15       A.     That I don't know for a fact.  I just know

12:28:02 16  something was drenched up and they immediately turned

12:28:04 17  her in again.

12:28:05 18  BY MR. CORRELL:

12:28:06 19       Q.     Would it surprise you if she was terminated

12:28:08 20  for a social media violation that occurred after she

12:28:12 21  signed the social media agreement -- excuse me -- the

12:28:16 22  last chance agreement?

12:28:18 23       A.     You know what?  I can't speculate on that.

12:28:22 24       Q.     If that were the case, would it change your

12:28:24 25  assessment of how Ms. High mono vich's or mom month

Page 99

156645960_1.txt

♀

89

12:28:30  1   Vic's outcome informed your approach to this letter?

12:28:33  2             MR. GILLIAM:  Objection.  Incomplete

12:28:35  3   hypothetical.  You can answer.

12:28:36  4        A.    No, because I -- I knew what was going on

12:28:40  5   due to people turning each other in which --

12:28:45  6   BY MR. CORRELL:

12:28:46  7        Q.    I -- sorry.  Go ahead?

12:28:47  8        A.    That was a big huge factor for me not to

12:28:51  9   sign this.  I knew that --

12:28:54  10       Q.    Other than Ms. I'm mom a Vic what person do

12:28:57  11  you know who signed a last chance agreement but was

12:29:01  12  terminated for a subsequent social media violation?

12:29:03  13       A.    At that time she was the only person that I

12:29:04  14  did know.

12:29:05  15       Q.    Since then who have you discovered?

12:29:08  16       A.    I have -- I don't know because I don't -- I

12:29:12  17  have no idea.  I don't know who has been fired and who

12:29:17  18  hasn't been fired.

12:29:18  19       Q.    Well in your complaint and in your

12:29:20  20  discovery responses you allege that Casey rittener was

12:29:24  21  terminated for a social media violation, correct?

12:29:26  22       A.    Casey rittener, yes, and that was, which

                          Page 100

156645960_1.txt

12:29:32 23   is -- yes.

12:29:33 24          Q.     So was Ms. Rittener reinstated?

12:29:41 25          A.     It's Mr. Rit ner but yes, he was

♀

                                                                    90


12:29:45 1   reinstated.

12:29:45 2          Q.     Was Mr. Rittener subsequently terminated

12:29:49 3   after that reinstatement?

12:29:50 4          A.     That, I don't know.

12:29:54 5          Q.     The 24 month issue that you raised as your

12:29:58 6   second point, what was your concern there?

12:30:01 7          A.     Well, it exceeded our contract and I'm

12:30:06 8   not -- I'm not sure why we weren't staying within the

12:30:08 9   realms of the contract, and mine seemed to be extreme

12:30:16 10  due to the fact that it was 24 months and not the 18

12:30:20 11  months.

12:30:20 12         Q.     Do you know if other people also received a

12:30:23 13  24-month period of _____?

12:30:28 14         A.     No, I believe I was the first and only at

12:30:30 15  that time.

12:30:30 16         Q.     What's your basis for making that

12:30:34 17  assertion?

12:30:36 18         A.     Talking to Beth Ross, my union

12:30:40 19  representative, she had not seen a 24 moths.

                              Page 101

APP000022

156645960_1.txt

17:21:07 17   lawsuit that the union did not represent you properly

17:21:09 18   during your step 2 hearing?

17:21:11 19        A.     They represented me properly both Becky and

17:21:15 20   Beth.

17:21:20 21        Q.     And you previously testified that the

17:21:22 22   process was fair and complete, correct?

17:21:29 23        A.     With --

17:21:31 24               MR. GILLIAM:  The.

17:21:33 25   BY MR. GREENFIELD:

♀

                                                               260


17:21:34  1        Q.     Is that correct?  Illustrate ways fair and

17:21:37  2   complete?

17:21:37  3        A.     The.

17:21:38  4               MR. GILLIAM:  Objection, vague.

17:21:39  5        A.     Within my second step meeting, yes.

17:21:40  6   BY MR. GREENFIELD:

17:21:47  7        Q.     Okay.  And then it was Southwest who made

17:21:48  8   the decision to terminate you, correct?

17:21:51  9        A.     I believe it was Ed Schneider.

17:21:54 10        Q.     Okay.  And do you have any evidence that

17:21:58 11   the union made the decision to terminate you?

17:22:03 12        A.     No.

17:22:04 13        Q.     Okay.  Are you claiming as part of this

                              Page 292

APP000023

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 1

                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
                          DALLAS DIVISION

CHARLENE CARTER                    )
                                   )  CIVIL ACTION NO.
VS.                                )  3:17-CV-02278-X
                                   )
SOUTHWEST AIRLINES CO., AND )
TRANSPORT WORKERS UNION OF  )
AMERICA, LOCAL 556                 )


            ------------------------------------
                          CONFIDENTIAL
                    VIDEOTAPED DEPOSITION OF
                          MAUREEN EMLET
                        NOVEMBER 5, 2020

            ------------------------------------




             ANSWERS AND DEPOSITION OF MAUREEN EMLET,
    produced as a witness at the instance of the
    Plaintiff, taken in the above-styled and -numbered
    cause on NOVEMBER 5, 2020, at 9:03 a.m., before
    CHARIS M. HENDRICK, a Certified Shorthand Reporter
    in and for the State of Texas, witness located in
    Aurora, Colorado, pursuant to the Federal Rules of
    Civil Procedure, the current emergency order
    regarding the COVID-19 State of Disaster, and the
    provisions stated on the record or attached hereto.

APP000024

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 128

1   religiously motivated pro-life views?

2        A.  Yes.

3        Q.  Do you personally have a position on the

4   issue of abortion as between pro-life and

5   pro-choice?

6        A.  Yes.

7        Q.  What is your position?

8        A.  I am pro-life.

9        Q.  Did you see anything in the course of the

10  termination that led you to believe that

11  Ms. Carter's termination was occasioned by the fact

12  that she harbors religiously motivated pro-life

13  beliefs?

14       A.  No.

15       Q.  Do you have any personal bias or animus

16  against individuals who have pro-life beliefs?

17       A.  No.

18       Q.  Do you have any bias or animus against

19  individuals based on their Christian faith?

20       A.  No.

21            MR. CORRELL:  I have no further

22  questions for you, Ms. Emlet.  I pass the witness.

23            MR. GREENFIELD:  Ms. Emlet, you

24  haven't heard much from me today.  This is Adam

25  Greenfield from defendants TWU Local 556.  And I

APP000025

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 132

1                   REPORTER'S CERTIFICATION

2            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
3                      DALLAS DIVISION

4    CHARLENE CARTER              )
                                  )
5                                 ) CIVIL ACTION NO.
     VS.                          ) 3:17-CV-02278-X
6                                 )
     SOUTHWEST AIRLINES CO., AND )
7    TRANSPORT WORKERS UNION OF  )
     AMERICA, LOCAL 556          )
8

9          -----------------------------------
                       CONFIDENTIAL
10            DEPOSITION OF MAUREEN EMLET
                   NOVEMBER 5, 2020
11               (REPORTED REMOTELY)
           -----------------------------------
12

13        I, CHARIS M. HENDRICK, Certified Shorthand

14   Reporter in and for the State of Texas, do hereby

15   certify to the following:

16        That the witness, MAUREEN EMLET, was by me

17   duly sworn and that the transcript of the oral

18   deposition is a true record of the testimony given

19   by the witness.

20        I further certify that pursuant to Federal

21   Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

22   as well as Rule 30(e)(2), that review of the

23   transcript and signature of the deponent:

24        __xx__ was requested by the deponent and/or a

25   party before completion of the deposition.

APP000026

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 133

1          _____ was not requested by the deponent and/or

2     a party before the completion of the deposition.

3               I further certify that I am neither

4     attorney  nor counsel for, nor related to or

5     employed by any of the parties to the action in

6     which this deposition is taken and further that I

7     am not a relative or employee of any attorney of

8     record in this cause, nor am I financially or

9     otherwise interested in the outcome of the action.

10              The amount of time used by each party at

11    the deposition is as follows:

12              Mr. Gilliam - 3:42 hours/minutes

13              Mr. Correll - 2 minutes

14

15              Subscribed and sworn to on this 12th day

16    of November, 2020.

17

18

19              _Charis M Hendrick_____

20              CHARIS M. HENDRICK, CSR # 3469
                Certification Expires: 10-31-21
                Bradford Court Reporting, LLC
21              7015 Mumford Street
                Dallas, Texas  75252
22              Telephone 972-931-2799
                Facsimile 972-931-1199
23              Firm Registration No. 38

24

25

APP000027

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER                )
                               )
                               ) CIVIL ACTION NO.
VS.                            ) 3:17-CV-02278-X
                               )
SOUTHWEST AIRLINES CO., AND )
TRANSPORT WORKERS UNION OF  )
AMERICA, LOCAL 556             )


-----------------------------------

CONFIDENTIAL
VIDEOTAPED DEPOSITION OF
MEGGAN JONES
NOVEMBER 4, 2020

-----------------------------------




        ANSWERS AND DEPOSITION OF MEGGAN JONES,

produced as a witness at the instance of the

Plaintiff, taken in the above-styled and -numbered

cause on NOVEMBER 4, 2020, at 9:05 a.m., before

CHARIS M. HENDRICK, a Certified Shorthand Reporter

in and for the State of Texas, witness located in

Golden, Colorado, pursuant to the Federal Rules of

Civil Procedure, the current emergency order

regarding the COVID-19 State of Disaster, and the

provisions stated on the record or attached hereto.

APP000028

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES

Page 85

1     A.   Yes.

2     Q.   Do you personally have a view on abortion

3  as between pro-life and pro-choice?

4     A.   Yes.

5     Q.   What is your position?

6     A.   It's complicated for me to answer that

7  because I am more pro-life; it's not a choice I

8  would make for myself, but I don't feel like I

9  should tell somebody else what they can or can't

10  do.

11     Q.   Do you have a personal bias or animus

12  against individuals who express no pro-life views?

13     A.   No.

14     Q.   Do you have a personal animus or bias

15  against individuals who profess a Christian faith?

16     A.   No.

17     Q.   To your knowledge, did the fact that

18  Ms. Carter's communications were pro-life as

19  opposed to pro-choice have any impact on the

20  decision to terminate her?

21     A.   No.

22     Q.   To your knowledge, did the fact that

23  Ms. Carter professed that her pro-life views were

24  related to her religious beliefs have any impact on

25  the decision to terminate her?

APP000029

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES

Page 89

1                    REPORTER'S CERTIFICATION

2            IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
3                         DALLAS DIVISION

4    CHARLENE CARTER                )
                                    )
5                                   ) CIVIL ACTION NO.
     VS.                            ) 3:17-CV-02278-X
6                                   )
     SOUTHWEST AIRLINES CO., AND )
7    TRANSPORT WORKERS UNION OF  )
     AMERICA, LOCAL 556          )
8

9            ------------------------------------
                         CONFIDENTIAL
10             DEPOSITION OF MEGGAN JONES
                      NOVEMBER 4, 2020
11                  (REPORTED REMOTELY)
             ------------------------------------
12

13           I, CHARIS M. HENDRICK, Certified Shorthand

14   Reporter in and for the State of Texas, do hereby

15   certify to the following:

16           That the witness, MEGGAN JONES, was by me

17   duly sworn and that the transcript of the oral

18   deposition is a true record of the testimony given

19   by the witness.

20           I further certify that pursuant to Federal

21   Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

22   as well as Rule 30(e)(2), that review of the

23   transcript and signature of the deponent:

24       __xx__ was requested by the deponent and/or a

25   party before completion of the deposition.

APP000030

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES

Page 90

1        _____ was not requested by the deponent and/or

2      a party before the completion of the deposition.

3              I further certify that I am neither

4      attorney  nor counsel for, nor related to or

5      employed by any of the parties to the action in

6      which this deposition is taken and further that I

7      am not a relative or employee of any attorney of

8      record in this cause, nor am I financially or

9      otherwise interested in the outcome of the action.

10             The amount of time used by each party at

11     the deposition is as follows:

12             Mr. Gilliam - 2:16 hours/minutes

13             Mr. Correll - 2 minutes

14

15             Subscribed and sworn to on this 12th day

16     of November, 2020.

17

18

19             _Charis M Hendrick_

20             CHARIS M. HENDRICK, CSR # 3469
               Certification Expires: 10-31-21
               Bradford Court Reporting, LLC
21             7015 Mumford Street
               Dallas, Texas  75252
22             Telephone 972-931-2799
               Facsimile 972-931-1199
23             Firm Registration No. 38

24

25

Page 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
CHARLENE CARTER,                )
        Plaintiff,             )
                               )
vs.                            )  Case No.
                               )  3:17-cv-02278-X
SOUTHWEST AIRLINES CO., AND    )
TRANSPORT WORKERS UNION OF     )
AMERICA, LOCAL 556,            )
        Defendants.            )
```

ORAL VIDEOTAPED DEPOSITION

ED SCHNEIDER

November 3, 2020

(Reported Remotely)

+++CONFIDENTIAL+++


        ORAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER,
produced as a witness at the instance of the
Plaintiff and duly sworn, was taken in the
above-styled and numbered cause on November 3, 2020,
from 10:00 a.m. to 2:55 p.m., before Cheryl Duncan,
CSR in and for the State of Texas, reported by
computerized stenotype machine in Parker, Colorado,
pursuant to the Federal Rules of Civil Procedure, the
First Emergency Order regarding the COVID-19 State of
Disaster, and the provisions stated on the record or
attached hereto.

CONFIDENTIAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER

Page 130

1    a couple of quick questions for you before we're done

2    today.

3                  First of all, do you understand that

4    one of the claims asserted in this lawsuit is that

5    Ms. Carter contends that she was treated less

6    favorably because she was a nonmember or objector to

7    the union?

8        A.    Yes.

9        Q.    Do you personally harbor any bias or animus

10   against individuals who opt out of the union?

11       A.    No.

12       Q.    Did the fact that Ms. Carter was a -- well,

13   did you know Ms. Carter was a nonmember of the union

14   at the time of the investigation?

15       A.    Not until she disclosed that in the

16   meeting.

17       Q.    Once she disclosed that to you, did it have

18   any impact on your decision-making process?

19       A.    No.

20       Q.    You also understand that Ms. Carter is

21   alleging religious discrimination in this case with

22   respect to her pro-life views, correct?

23       A.    Yes.

24       Q.    Do you personally have a position between

25   pro-life and pro-choice on the issue of abortion?

CONFIDENTIAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER

Page 131

1      A.    I am pro-life.

2      Q.    Do you harbor any animus or bias against

3  individuals who are pro-life?

4      A.    No.

5      Q.    Did you decide less favorably with respect

6  to Ms. Carter than had she been pro-choice?

7      A.    No.

8      Q.    Did the fact that Ms. Carter attributed her

9  pro-life views to her religious beliefs have any

10  impact on your decision-making process?

11      A.    No.

12      Q.    Do you harbor any animus or have any bias

13  against individuals who express Christian beliefs?

14      A.    No.

15              MR. CORRELL:  I pass the witness.

16              THE VIDEOGRAPHER:  Is there anyone

17  else?

18              MR. GREENFIELD:  Local 556 will

19  reserve their questions for the time of trial.

20              MR. GILLIAM:  Plaintiff has nothing

21  else.

22              THE VIDEOGRAPHER:  Okay.  We are off

23  record at 2:55 p.m.

24              End of deposition.  End of media.

25              (Proceedings concluded at 2:55 p.m.)

APP000034

CONFIDENTIAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER

Page 134

```
 1
                    UNITED STATES DISTRICT COURT
 2             FOR THE NORTHERN DISTRICT OF TEXAS
                         DALLAS DIVISION
 3
      CHARLENE CARTER,                )
 4          Plaintiff,                )
                                      )
 5      vs.                           )   Case No.
                                      )   3:17-cv-02278-X
 6    SOUTHWEST AIRLINES CO., AND      )
      TRANSPORT WORKERS UNION OF       )
 7    AMERICA, LOCAL 556,             )
            Defendants.               )
 8
 9                    REPORTER'S CERTIFICATE
10         ORAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER
11                     November 3, 2020
12                    (Reported Remotely)
13         I, Cheryl Duncan, CSR, in and for the State of
14    Texas, hereby certify to the following:
15         That the witness, ED SCHNEIDER, was duly sworn
16    and that the transcript of the deposition is a true
17    record of the testimony given by the witness;
18         I further certify that pursuant to FRCP Rule
19    30(f)(1) that the signature of the deponent:
20         __X___ was requested by the deponent or a party
21    before the completion of the deposition and is to be
22    returned within 30 days from date of receipt of the
23    transcript.  If returned, the attached Changes and
24    Signature Pages contain any changes and the reasons
25    therefor;
```

APP000035

CONFIDENTIAL VIDEOTAPED DEPOSITION OF ED SCHNEIDER

Page 135

1        _____ was not requested by the deponent or a

2    party before the completion of the deposition.

3        That pursuant to information given to the

4    deposition officer at the time said testimony was

5    taken, the following includes all parties of record

6    and the amount of time used by each party at the time

7    of the deposition:

8        Mr. Matthew B. Gilliam (3 hours, 41 minutes)
         Mr. Michael A. Correll (02 minutes)
9        Mr. Ed Cloutman (00 minutes)

10       That $_____ is the deposition officer's

11   charges to the Plaintiff for preparing the original

12   deposition and any copies of exhibits.

13       I further certify that I am neither counsel for,

14   related to, nor employed by any of the parties in the

15   action in which this proceeding was taken, and

16   further that I am not financially or otherwise

17   interested in the outcome of this action.

18       Certified to by me on this 12th day of

19   November, 2020.

20                    _____

21                    Cheryl Duncan, CSR
                      Texas CSR 3371
22                    Expiration:  04/30/21
                      Firm Registration Number 38
23                    Bradford Court Reporting, L.L.C.
                      7015 Mumford Street
24                    Dallas, Texas  75252
                      Telephone 972.931.2799
25                    Facsimile 972.931.1199

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER                )
                               ) CIVIL ACTION NO.
VS.                            ) 3:17-CV-02278-X
                               )
SOUTHWEST AIRLINES CO., AND )
TRANSPORT WORKERS UNION OF  )
AMERICA, LOCAL 556             )


-----------------------------------

CONFIDENTIAL 30(b)(6)
VIDEOTAPED DEPOSITION OF
MICHAEL SIMS
NOVEMBER 2, 2020

-----------------------------------


ANSWERS AND DEPOSITION OF MICHAEL SIMS,
produced as a witness at the instance of the
Plaintiff, taken in the above-styled and -numbered
cause on NOVEMBER 2, 2020, at 9:06 a.m., before
CHARIS M. HENDRICK, a Certified Shorthand Reporter
in and for the State of Texas, witness located in
Midlothian, Texas, County of Ellis, pursuant to the
Federal Rules of Civil Procedure, the current
emergency order regarding the COVID-19 State of
Disaster, and the provisions stated on the record
or attached hereto.

APP000037

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 165

1   accommodation?

2        A.   I do not know.

3        Q.   Did inflight consider whether Charlene

4   Carter needed a religious accommodation?

5        A.   I do not know.

6        Q.   And did human resources consider whether

7   Charlene Carter needed a religious accommodation?

8        A.   I do not know.

9        Q.   Okay.  And just to make sure I covered it

10  too, did human resources consider whether the

11  information she shared about being a Christian and

12  pro-life and trying to get the word out in any way,

13  whether that placed her in any protected category?

14       A.   I do not know.

15       Q.   Okay.  Do you know whether the ACT team

16  ever in- -- investigated any aspect of Charlene

17  Carter's matter?

18       A.   Not to my knowledge.

19       Q.   Okay.  As part of the investigation, did

20  anyone with Southwest have communications about

21  Charlene Carter's religious beliefs?

22       A.   Not to my knowledge.

23       Q.   Okay.  Okay.  Now, what is the standard

24  practice for, I guess, the -- the -- well, let me

25  ask the question this way:  What is the standard

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 201

1    inappropriate venue to express political views?

2        A.   Yes.   I did not know it was a political

3    view at that point.

4        Q.   Okay.   But once you realized that it was

5    an expression of a political view, you -- you

6    determined that it was an inappropriate venue to

7    express it?

8        A.   That is correct.

9        Q.   Okay.   And -- and why is that?

10       A.   Southwest Airlines does not have a

11   position on -- or did not have a position or

12   endorsement or support of the women's march or any

13   other political activities taking place in

14   Washington that day.

15       Q.   And was it an inappropriate venue because

16   it was on board a flight?

17       A.   Correct.

18       Q.   Okay.   And was -- did -- did this happen

19   on more than one flight?

20       A.   It did.

21       Q.   On how many different flights did -- did

22   it happen?

23       A.   I do not know the exact number, but I

24   believe it was four or five --

25       Q.   Okay.

APP000039

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 231

1  belief.  They thought they were just having fun

2  with customers that were boarding the aircraft

3  heading to inauguration, wearing pink hats and

4  such.  So they weren't taking any political

5  position at all.

6      Q.  Very early in the deposition today, you

7  were asked about complaints from executive board

8  members leading to disciplinary proceedings; do you

9  recall that testimony?

10     A.  Yes.

11     Q.  Have you ever done anything different in

12 an investigation because the original complaint

13 came from an executive board member of the union?

14     A.  No.  Always stayed the same course.

15     Q.  Does the fact that an executive board

16 member makes a complaint have any impact on how you

17 have made decisions in any of the cases you have

18 handled at Southwest?

19     A.  It doesn't have an impact.

20     Q.  All right.  You were also asked some

21 questions about whether religious accommodation

22 steps followed out of the fact-finding; do you

23 recall that testimony?

24     A.  I do.

25     Q.  At Southwest Airlines, when they -- when

APP000040

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 232

1   -- when the accommodations policy is applied, does

2   it apply retroactively to policy violations?

3        A.  It does not.

4        Q.  How does that work, if an employee commits

5   a policy violation and then seeks a religious

6   accommodation?

7        A.  It doesn't reset the clock or move the

8   time back, if you will.  If there is an infraction

9   and they later give an accommodation, it does not

10  change what took place with the infraction.

11       Q.  You were also asked some questions about

12  Ms. Gutierrez's summary of her findings with

13  respect to the harassment violation investigation;

14  do you recall that testimony?

15       A.  I do.

16       Q.  And, I believe, as part of that, you were

17  asked about a phrase in her email where she talked

18  about additional action should be taken, or

19  something to that effect; do you recall that

20  portion of the email?

21       A.  I do.

22       Q.  Was it Ms. Gutierrez's role to advise on

23  the level of punishment to be administered?

24       A.  It is not her role.

25       Q.  Does her conclusions with respect to the

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 233

1    harassment policy have any impact on

2    Mr. Schneider's discretion regarding other policy

3    violations?

4         A.  They do not.

5         Q.  And, Mr. Sims, you understand, in your

6    personal capacity, that this case today is about

7    religious discrimination and alleged discrimination

8    against union objectors; is that correct?

9         A.  I do understand that.

10        Q.  Do you have a personal preference between

11   union objectors and nonobjectors?

12        A.  I do not.

13        Q.  Do you have a position between pro-life

14   and pro-choice on the issue of abortion?

15        A.  I do.

16        Q.  How would you identify your position?

17        A.  I am pro-life.

18        Q.  Do you have any animus towards other

19   people who are pro-life?

20        A.  I do not.

21        Q.  Do you have any animus towards people of

22   any Christian faith?

23        A.  I do not.

24             MR. CORRELL:  I pass the witness.

25             MR. GILLIAM:  I have got no questions.

APP000042

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

```
                                                    Page 237
                        REPORTER'S CERTIFICATION

  1
                IN THE UNITED STATES DISTRICT COURT
  2               FOR THE NORTHERN DISTRICT OF TEXAS
                           DALLAS DIVISION
  3
     CHARLENE CARTER              )
  4                               ) CIVIL ACTION NO.
     VS.                          ) 3:17-CV-02278-X
  5                               )
     SOUTHWEST AIRLINES CO., AND  )
  6  TRANSPORT WORKERS UNION OF   )
     AMERICA, LOCAL 556           )
  7

  8

  9          -----------------------------------
                     CONFIDENTIAL 30(b)(6)
 10             DEPOSITION OF MICHAEL SIMS
                     NOVEMBER 2, 2020
 11          -----------------------------------

 12

 13         I, CHARIS M. HENDRICK, Certified Shorthand

 14  Reporter in and for the State of Texas, do hereby

 15  certify to the following:

 16         That the witness, MICHAEL SIMS, was by me

 17  duly sworn and that the transcript of the oral

 18  deposition is a true record of the testimony given

 19  by the witness.

 20         I further certify that pursuant to Federal

 21  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

 22  as well as Rule 30(e)(2), that review of the

 23  transcript and signature of the deponent:

 24      __xx__ was requested by the deponent and/or a

 25  party before completion of the deposition.
```

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MICHAEL SIMS

Page 238

1      _____ was not requested by the deponent and/or

2    a party before the completion of the deposition.

3          I further certify that I am neither

4    attorney  nor counsel for, nor related to or

5    employed by any of the parties to the action in

6    which this deposition is taken and further that I

7    am not a relative or employee of any attorney of

8    record in this cause, nor am I financially or

9    otherwise interested in the outcome of the action.

10         The amount of time used by each party at

11   the deposition is as follows:

12         Mr. Gilliam - 6:50 hours/minutes

13         Mr. Correll - 5 minutes

14

15         Subscribed and sworn to on this 12th day

16   of November, 2020.

17

18

19   _____
     CHARIS M. HENDRICK, CSR # 3469
20   Certification Expires: 10-31-21
     Bradford Court Reporting, LLC
21   7015 Mumford Street
     Dallas, Texas  75252
22   Telephone 972-931-2799
     Facsimile 972-931-1199
23   Firm Registration No. 38

24

25

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |
|---|---|
| CHARLENE CARTER,<br><br>               Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND<br>TRANSPORT WORKERS UNION OF AMERICA,<br>LOCAL 556,<br><br>               Defendants. | Civil Case No. 3:17-cv-02278-X |

## NOTICE OF FEDERAL RULE 30(b)(6) DEPOSITION
## OF SOUTHWEST AIRLIENS CO.

To:     Defendant Southwest Airlines Co., through its attorneys of record, Michael A. Correll, and Brian K. Morris, Reed Smith LLP, 2501 N. Harwood Street, Suite 1700, Dallas, Texas 75201.

Defendant Transport Workers Union of America, Local 556, through its attorneys of record, Edward B. Cloutman, III and Adam S. Greenfield, Law Offices of Cloutman & Greenfield, P.L.L.C., 3301 Elm Street, Dallas, Texas 75226-1637.

Please take notice that, pursuant to Federal Rule of Civil Procedure, Rule 30(b)(6), Plaintiff Charlene Carter, by and through her attorneys of record, will take the following oral deposition in the above-captioned matter, by oral examination before a court reporter/notary public, via Zoom videoconference given the circumstances and status of the COVID-19 pandemic:

| Deponent | Date | Time |
|---|---|---|
| Southwest Airlines Co. | Monday, November 2, 2020 | 2:30 p.m. EST |

The deposition will be recorded by stenographic means.

1

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff will examine Southwest Airlines Co. ("Southwest") on the matters described below.  Southwest is directed to designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, regarding the matters described below.

## DEFINITIONS

1.      **"ALL," "ANY,"** and **"EACH"** shall be construed as encompassing "any and all" and "and/or."

2.      **"ANY"** means "each and every" as well as "any one."

3.      **"CARTER'S SOCIAL MEDIA ACTIVITY"** means any of Charlene Carter's messages or posts on Facebook, or any of her other communications and activities on social media.

4.      **"CARTER'S TERMINATION," "TERMINATE,"** or **"TERMINATION,"** means the incidents, events, actions, and decisions related to the March 16, 2017 termination of Charlene Carter's employment with **SOUTHWEST**.

5.      **"COMMUNICATIONS"** and **"COMMUNICATED"** are defined by way of illustration and not by way of limitation, as any written, oral, or electronic exchange of information, words, statements, expressions, discussions, thoughts, opinions, or ideas, and includes any memorialization of information, words, statements, expressions, discussions, meetings, thoughts, opinions, or ideas of any person, including the person creating the memorialization.

6.      **"DOCUMENT"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure and is intended to be interpreted in the broadest possible sense and includes, but is not limited to, all electronically stored information and all communications which are stored or retrievable or recorded in any manner and

2

also includes, without limitation, any writing or other record of information or images, including, but not limited to, print, handwriting, photographs, recordings, memoranda, books, records, accounts, ledgers, vouchers, invoices, drafts, bills, charge slips, letters, electronic mail or "e-mail," compact discs, CD-ROM discs, magnetic tape, video tape, magnetic and optical discs, "floppy disks," "PowerPoint" and other presentation software systems, telegrams, mailgrams, correspondence, notes and minutes of meetings, conversations and telephone calls, resolutions, interoffice memoranda and other inter and intra office communication and correspondence, work papers, reports, projects, tabulations, studies, surveys, legal complaints and other pleadings, affidavits, interrogatories, legal briefs, legal motions, judgments, designs, drawings, schematics, maps, manuals, models, notebooks, contracts, agreements, diaries, telephone records, desk calendars, appointment books, circulars, charts, transcripts, news releases, teletype messages, financial statements, stenographers' notebooks, punch cards, computer printouts and data, telecopier and facsimile transmissions and printouts.

The term **"DOCUMENT"** also includes preliminary drafts, revisions, and copies of any such document if the copy is in any way different from the original, now in your possession, custody, or control or that of your advisors, agents, employees, servants, representatives, counsel, or other persons purported to act on your behalf.

7.     **"LOCAL 556"** means Transport Workers Union of America, Local 556, and any of its officers, stewards, employees, representatives, agents, intermediaries, and other persons acting on its behalf.

8.     **"MARCH 14, 2017 TERMINATION LETTER"** means the letter dated March 14, 2017, that **SOUTHWEST** sent Charlene Carter terminating her employment, and which is Exhibit A to Plaintiff Charlene Carter's Fourth Amended Complaint.

APP000047

9.    **"RECALL EFFORT"** means any and all employee activities concerning the campaign and petition started by **SOUTHWEST** flight attendants around July 2015 to hold recall elections and remove from office certain **LOCAL 556** executive board officers, including President Audrey Stone.

10.    **"RELATING TO," "RELATING THERETO," "RELATE TO," "RELATED TO," "REFLECT," "REGARDING," "REPRESENT,"** or **"CONCERNING"** mean directly or indirectly constituting, mentioning, discussing, describing, or in any way pertaining to or being connected with a stated subject matter or the existence or nonexistence of a fact, alleged fact, misinformation, supposed information, topic, or subject matter, and require you to provide any and all documents that might possibly be relevant, or that might possibly lead to the discovery of relevant evidence related to the facts, information, knowledge, opinions and bases thereof, or documents that are in any way responsive to the document request in which such terms appear.

11.    **"SOCIAL MEDIA POLICIES"** means **SOUTHWEST**'s Workplace Bullying and Hazing Policy, Social Media Policy, Policy Concerning Harassment, Sexual Harassment, Discrimination, and Retaliation, Mission Statement, and any other company policies and rules related to employees' social media activities.

12.    **"SOUTHWEST"** means Southwest Airlines Co.

13.    **"YOU"** and **"YOUR"** each mean **SOUTHWEST**, and includes every one of its officers, staff, employees, representatives, agents, intermediaries, successors, and other persons acting on its behalf.

14.    Any other words herein shall be defined according to standard American usage, as shown in a dictionary of the English language.

APP000048

15.     The use of the singular form of any word includes the plural and any plural includes the singular.

### EXAMINATION REQUESTED ON THE FOLLOWING MATTERS

1.     **SOUTHWEST**'s process and procedures for searching and collecting information responsive to Plaintiff's April 29, 2019 First Set of Interrogatories and Requests for Production.

2.     **SOUTHWEST**'s organizational structure and the interactions and communications between Human Resources, Labor Relations, and In-Flight Services, when reviewing, investigating, and deciding issues involving the **SOCIAL MEDIA POLICIES** and other flight attendant disciplinary matters.

3.     **SOUTHWEST**'s organizational structure and the interactions and communications between Human Resources, Labor Relations, In-Flight Services, and the ACT Team when reviewing, investigating, and deciding religious discrimination issues.

4.     **SOUTHWEST**'s formulation, approval, enforcement, and modification of the **SOCIAL MEDIA POLICIES** since June 1, 2013, and the departments, managers, supervisors, employees, and union representatives involved in the process.

5.     **SOUTHWEST**'s policies and procedures for monitoring flight attendants' social media activities since June 1, 2013.

APP000049

6.      From June 1, 2013, through the present, **SOUTHWEST**'s investigation and review of flight attendants' social media activities, complaints of alleged violations, discipline of flight attendants, termination of flight attendants, Step 2 disciplinary reviews, reinstatement of flight attendants who were terminated, and the termination of flight attendants who were reinstated.

7.      **SOUTHWEST**'s communications about and treatment of union members and nonmembers under the **SOCIAL MEDIA POLICIES** since June 1, 2013.

8.      **SOUTHWEST**'s communications about and treatment of religious discrimination complaints and religious accommodation requests since June 1, 2013.

9.      From June 1, 2013, through the present, **SOUTHWEST**'s communications and actions related to **CARTER'S SOCIAL MEDIA ACTIVITY**, Carter's religious beliefs, views, and practices, Carter's involvement in the **RECALL EFFORT**, Carter's membership and non-membership/agency-fee payer status with **LOCAL 556**, and Carter's **MARCH 14, 2017 TERMINATION LETTER**.

10.     **SOUTHWEST's** investigation of **CARTER'S SOCIAL MEDIA ACTIVITY**, the termination of Carter's employment, and the Step 2 review of Carter's termination.

11.     **SOUTHWEST**'s communications with **LOCAL 556** since June 1, 2013, about (a) Charlene Carter; (b) flight attendants' social media activities; (c) the formulation, approval, enforcement, and modification of the **SOCIAL MEDIA POLICIES,** and flight attendant discipline; and (d) political, ideological, and religious issues.

6

12.    **SOUTHWEST**'s communications with Audrey Stone since June 1, 2013, regarding Charlene Carter.

13.    **SOUTHWEST**'s communications and actions related to the **RECALL EFFORT**.

14.    **SOUTHWEST**'s communications and actions related to employees' membership/non-membership status or agency-fee payer objector status since June 1, 2013.

15.    **SOUTHWEST**'s communications with Planned Parenthood in an official capacity since June 1, 2013.

16.    The "Women's March on Washington, D.C." that took place in January 2017, including **LOCAL 556**'s participation in the Women's March, the process for flight attendants to request time off or a change in any time they were scheduled to work in order to attend.

17.    **SOUTHWEST**'s communications and actions related to employees turning the cabin lights pink during **SOUTHWEST** flights to and from Washington D.C. during January 2017.

18.    **SOUTHWEST**'s process, policies, and procedures for handling flight attendant complaints concerning religious beliefs, views, or practices, and requests for religious accommodation, including **LOCAL 556's**, the ACT Team's, and other **SOUTHWEST** employees' involvement in that process.

7

APP000051

19.     Carter's benefits as a **SOUTHWEST** flight attendant, including any vacation pay, insurance, uniform pay, ratification bonuses, profit-sharing, and retirement benefits, and how they accrued during the course of her employment.

20.     **SOUTHWEST**'s responses to Plaintiff's First Set of Interrogatories and Requests for Production to Defendant Southwest Airlines Co, and the identification, authentication, and explanation of documents produced to Plaintiff in response to her discovery requests.

21.     **SOUTHWEST**'s admissions and denials to the allegations in Plaintiff's Fourth Amended Complaint that are set forth in **SOUTHWEST**'s Answer to Plaintiff's Fourth Amended Complaint.

22.     All persons and resources consulted in preparation for the deposition of **SOUTHWEST** and all circumstances, details, communications and actions relating thereto.

Date: October 16, 2020                    Respectfully submitted,

                                          s/ Matthew B. Gilliam_____
                                          Mathew B. Gilliam *(admitted pro hac vice)*
                                          New York Bar No. 5005996
                                          *mbg@nrtw.org*
                                          Jeffrey D. Jennings *(admitted pro hac vice)*
                                          Virginia Bar No. 87667
                                          *jdj@nrtw.org*
                                          c/o National Right to Work Legal Defense
                                          Foundation, Inc.
                                          8001 Braddock Road, Suite 600
                                          Springfield, Virginia 22160
                                          Tel: 703-321-8510
                                          Fax: 703-321-9319

APP000052

*Counsel for the Plaintiff*

9

APP000053

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing **NOTICE OF FEDERAL RULE 30(b)(6)**

**DEPOSITION OF SOUTHWEST AIRLINES CO.** was served by electronic mail on

Defendants' counsel of record on October 16, 2020.


/s/ Matthew B. Gilliam

APP000054

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

</div>

| | |
|---|---|
| CHARLENE CARTER, <br><br>       Plaintiff, <br><br> v. <br><br><br> SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, <br><br>       Defendants. | Civil Case No. 3:17-cv-02278-X |

<div align="center">

**PLAINTIFF CHARLENE CARTER'S RESPONSES AND OBJECTIONS**
**TO DEFENDANT SOUTHWEST AIRLINES CO.'S**
**FIRST REQUEST FOR PRODCUTION OF DOCUMENTS**

</div>

   To: Defendant Southwest Airlines Co. ("Southwest"), through its attorneys of record, Michele Haydel Gehrke, Reed Smith LLP, 101 Second Street, Suite 1800, San Francisco, California, 94105-3659, and Brian K. Morris, Reed Smith LLP, 811 Main Street, Suite 1700, Houston, Texas 77002-6110.

   Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Charlene Carter ("Carter") hereby responds to Defendant Southwest Airlines Co.'s ("Southwest") First Request for Production of Documents to Plaintiff.

   Carter has not yet completed discovery and related investigation in this case. The following responses are based upon and limited by the records and information in existence, presently recollected, and thus far discovered in the course of preparing these responses. Moreover, those documents which have been retrieved in the discovery conducted thus far are being compiled, analyzed, and organized. Carter reserves the right to produce additional evidence, facts, documents, or information not yet discovered by or known to Carter's counsel. Carter also reserves

<div align="center">1</div>

APP000055

the right to alter, supplement, amend, or otherwise modify these responses as provided by the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

Carter objects to Southwest's First Request for Production of Documents to Plaintiff ("Requests for Production") on the following general grounds ("General Objections"). Each of the following General Objections is made and incorporated into each response to the Requests for Production as if fully set forth therein:

1.      Carter objects to the Requests for Production to the extent that they require her to respond in any manner other than in accordance with the Federal Rules of Civil Procedure.

2.      Carter objects to any of the Requests for Production that attempt to require Carter to generate documents, including descriptions or indices of documents that are not presently in existence; describe Carter's own unsuccessful efforts to answer the Requests for Production; provide documents not in Carter's possession, custody, or control, or identify any unknown custodian of documents not in the Carter's possession, custody, or control; provide documents otherwise publicly available; or respond to any aspect of the Requests for Production that is not described with reasonable particularity.

3.      Carter objects to the Requests for Production to the extent that they require her to disclose any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

4.      Carter objects to the Requests for Production to the extent that they seek information concerning matters not relevant or reasonably calculated to lead to the discovery of admissible evidence.

APP000056

5.     Carter objects to the Requests for Production to the extent they seek to obtain discovery that is not proportional to the needs of the case.

6.     Carter objects to the Requests for Production to the extent that they are vague, impertinent, overly broad, unduly burdensome, and oppressive.

7.     Carter objects to the Interrogatories and Requests to the extent the burden or expense of providing the information sought outweighs any likely benefit from such information.

8.     Carter objects to the Requests for Production to the extent that they seek information equally available to the propounding party.

In addition to the General Objections, Carter may state specific objections to each Request for Production where appropriate. By setting forth such specific objections, Carter does not intend to limit or restrict these General Objections.

### CARTER'S REPONSES TO SOUTHWEST'S REQUESTS FOR PRODUCTION

1.     All DOCUMENTS and COMMUNICATIONS YOU submitted to or received from the U.S. Equal Employment Opportunity Commission, including but not limited to DOCUMENTS RELATING TO Case No. 541-2017-02149.

**RESPONSE**: Carter objects insofar as this Request seeks confidential EEOC investigation documents, and withholds all such privileged documents. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 1-341**.

2.     All DOCUMENTS and COMMUNICATIONS that YOU sent to or received from LOCAL 556 from January 1, 2012 to the present.

**RESPONSE**: Carter objects insofar as this Request seeks documents and communications that are not relevant to this action, and to documents and communications not

APP000057

in her possession, custody, and control. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 342-735**.

3.      All DOCUMENTS and COMMUNICATIONS that YOU sent to or received from AUDREY STONE from January 1, 2012 to the present.

**RESPONSE**: Carter objects insofar as this Request seeks documents and communications that are not relevant to this action, and to documents and communications not in her possession, custody, and control. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 474-735**.

4.      All journals, diaries, or calendars YOU maintained during YOUR employment with SOUTHWEST from January 1, 2012 to the present.

**RESPONSE**: Carter objects insofar as this Request seeks calendar information that is not relevant to this action, unduly burdensome, and not calculated to lead to the discovery of admissible evidence, and withholds such information. Having conducted a reasonable search and inquiry for any responsive documents and communications, Carter states that she has no other information responsive to this Request.

5.      All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR membership in the UNION.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request insofar as it seeks documents and communications that are not relevant to this action, and not calculated to lead to the discovery of admissible evidence; thus, she does not produce such information. Carter also objects to the Request insofar as it seeks documents and communications that are not in her possession, custody, and control, or already in Southwest's

4

possession, custody, or control; thus, she does not produce such information. Carter further objects that this Request is unduly burdensome because it is not reasonably limited with respect to time, and withholds documents related to her membership predating January 1, 2012. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 736-768**. See also Responses to **REQUESTS NO. 2** and **3**.

6.      All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR resignation of membership in the UNION.

**RESPONSE**:  Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request insofar as it seeks documents and communications that are not in her possession, custody, and control; thus, she does not produce such information. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 736-768**. See also Response to **REQUESTS NO. 2** and **3**.

7.      All DOCUMENTS and COMMUNICATIONS that RELATE TO dues or other monies YOU paid to the UNION during YOUR employment with SOUTHWEST.

**RESPONSE**:  Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request as overly broad and unduly burdensome insofar as it seeks payment records or other documents and communications that are not relevant to this action, that are not calculated to lead to the discovery of admissible evidence, and that are already in Southwest's possession, custody, and control; thus, she does not produce such information. Carter also objects to the Request insofar as it seeks documents and communications that are in Defendant's possession, custody, and control, that are equally accessible by Defendant, and that

5

are not in her possession, custody, and control; thus, she does not produce such information. Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 358**. See also Response to **REQUESTS NO. 3, 6**.

8.    All DOCUMENTS and COMMUNICATIONS related to AUDREY STONE's and other UNION members' participation in or attendance at the WOMEN'S MARCH.

**RESPONSE**:  Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request insofar as it seeks documents and communications that are not in her possession, custody, and control; thus, she does not produce such information. Having conducted a reasonable search and inquiry, Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 769-1466**. See also Carter's Response to **REQUESTS NO. 3, 33, 69, 71**.

9.    All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR views regarding abortion.

**RESPONSE**:  Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar as it asks Carter to provide documents about her views regarding abortion that are publicly available; thus, she does not produce such information. Having conducted a reasonable search and inquiry, Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 1468-1601**. See also Carter's Response to **REQUEST NO. 3**.

10.    All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR

APP000060

religious beliefs with respect to abortion.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar as it asks Carter to provide documents about her religious views regarding abortion that are publicly available; thus, she does not produce such information. Having conducted a reasonable search and inquiry, Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 1468-1601**. See also Carter's Response to **REQUEST NO. 3**.

11.    All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR religious beliefs with respect to sharing YOUR views regarding abortion.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar as it asks Carter to provide documents regarding her religious beliefs with respect to sharing her views about abortion that are otherwise publicly available; thus, she does not produce such information. Having conducted a reasonable search and inquiry, Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 1468-1601**. See also Carter's Response to **REQUEST NO. 3**.

12.    All DOCUMENTS and COMMUNICATIONS that RELATE TO any complaints or reports, whether formal or informal, of harassment, discrimination, retaliation, or failure to accommodate that YOU made with or against SOUTHWEST.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the

7

attorney client privilege and work product doctrine, and Carter withholds all such privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as it seeks information already in Defendant's possession, custody, and control and that is otherwise publicly available. Carter also objects insofar as the Request is based on the mistaken legal premise that employees must provide specific notice of their need for an accommodation. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032-33 (2015). Having conducted a reasonable search and inquiry, Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 1602-1603**. See also Carter's Response to **REQUEST NO. 14, 77**.

13.    All DOCUMENTS and COMMUNICATIONS that RELATE TO any requests for religious accommodation YOU made to SOUTHWEST.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and Carter withholds all such privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as it seeks information already in Defendant's possession, custody, and control and that is otherwise publicly available. Carter also objects insofar as the Request is based on the mistaken legal premise that employees must provide specific notice of their need for an accommodation. *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032-33 (2015). Carter otherwise provides all documents in her possession, custody, and control that are responsive to this Request: **Carter 404, 474-735**.

14.    All DOCUMENTS and COMMUNICATIONS that RELATE TO any administrative charge, lawsuit, or other proceeding to which YOU were a party relating to YOUR employment with any employer.

APP000062

**RESPONSE**:   Carter objects insofar as this Request seeks confidential EEOC investigation documents, as well as information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar as it seeks information about "lawsuits" and "other proceedings" that is not relevant to this action, not described with reasonable particularity, or not calculated to lead to the production of admissible evidence; Carter does not produce information that is not otherwise responsive to the requests propounded herein. Carter also objects to the Request as unduly burdensome insofar as it seeks documents and communications that are already in Defendant's possession, custody, and control, that are not in Carter's possession, custody, and control, and that are otherwise publicly available; thus, she does not produce such information. Carter further states that she has no responsive documents related to any administrative charge, lawsuit, or other proceeding, to which she was a party relating to her employment with any employer apart from Southwest. Carter otherwise provides the following non-privileged documents in her possession, custody, and control regarding her EEOC charge, arbitration, and grievance in response to this Request: **Carter 1604-2212**. See also Response to **REQUEST NO. 1**.

15.    All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR efforts to seek employment or remuneration for the provision of goods or services from March 14, 2017, through the present, including but not limited to any resumes, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, independent contractor and consulting agreements, job advertisements or postings, and rejection letters.

**RESPONSE**: Carter objects to the extent that this Request seeks information protected

9

by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome to the extent it seeks documents not in Carter's possession, custody, or control; thus, Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her Response to **REQUEST NO. 16**.

16.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the result or outcome of YOUR attempt(s) to obtain employment during or after YOUR employment with SOUTHWEST.

**RESPONSE**: Carter objects to the extent that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome to the extent it seeks documents not in Carter's possession, custody, or control; thus, Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2213-2278**.

17.     All DOCUMENTS and COMMUNICATIONS that RELATE TO any and all income, money, or benefits YOU received or that is owed to YOU from any source since the termination of YOUR employment with DEFENDANT (including but not limited to paychecks, paystubs, invoices, settlement payments, statements of work, Form W-2s, Form 1099s, social security benefits, social security disability benefits, unemployment insurance benefits, workers' compensation benefits, and long-term or short-term disability benefits).

**RESPONSE**: Carter objects to the extent that this Request seeks information protected by the attorney-client privilege, work product doctrine, and spousal communications privilege, and Carter withholds all such privileged documents. Carter objects to the extent that this request

APP000064

is overbroad and unduly burdensome to the extent that it seeks information regarding her husband's income, and money and benefits flowing from her husband's employment, which are irrelevant to this case; thus, Carter does not produce such documents. Carter also objects to this Request as unduly burdensome to the extent it seeks documents regarding benefits information already in Southwest's possession, custody, and control, and insofar as it seeks information not in Carter's possession, custody, or control; thus, Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her response to **REQUEST NO. 19**.

18.     All DOCUMENTS and COMMUNICATIONS that RELATE TO any employment benefits YOU have received from any source since the termination of YOUR employment with DEFENDANT.

**RESPONSE**:  Carter objects to the extent that this Request seeks information protected by the attorney client privilege, work product doctrine, and the spousal communications privilege, and withholds all privileged documents. Carter objects to this request as overbroad and unduly burdensome to the extent that it seeks information regarding her husband's employment benefits, which is irrelevant to this action; thus, Carter does not produce such information. Carter also objects to this Request as unduly burdensome to the extent it seeks documents regarding benefits information already in Southwest's possession, custody, and control, and insofar as it seeks information not in Carter's possession, custody, or control; thus, Carter does not produce such documents. Carter states that there are no other documents responsive to this Request. See Carter's Response to **INTERROGATORY NO. 10**.

19.     All DOCUMENTS and COMMUNICATIONS that evidence, support, refer, or RELATE TO any and all jobs and employment YOU have had including but not limited to all

11

job descriptions, job applications, offers, employment documents, and wage statements) since the termination of YOUR employment with SOUTHWEST.

**RESPONSE**: Carter objects to the extent that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it requires Carter to provide documents not in Carter's possession, custody, or control; thus, Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2213-2278.**

20.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the termination of YOUR employment or other contracted services by any employer or other individual or entity, whether voluntary or involuntary, after the end of YOUR employment with SOUTHWEST.

**RESPONSE**: Carter states that there are no documents responsive to this request.

21.    All DOCUMENTS and COMMUNICATIONS (including written statements, notes, and/or tape recordings of interviews) YOU have obtained from or regarding any potential witnesses concerning any of the matters referenced in the COMPLAINT.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request insofar as it seeks premature disclosure of witnesses. Carter states that she has not yet completed discovery and related investigation in this case, and has not completed preparation for trial. Carter refers Defendant to her March 29, 2019 Initial Disclosures where, pursuant to Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, she disclosed the name, and, if known, the address and telephone number of each individual likely to

12

have discoverable information, and the subjects of the information. Based on the foregoing objection, Carter provides no documents responsive to this request. Carter does produce affidavits submitted in her Response to **REQUEST NO. 1,** and non-privileged documents responsive to Defendant's other requests for production.

22.     All DOCUMENTS and COMMUNICATIONS that RELATE TO any of the social media postings and messages referenced in the COMPLAINT, including but not limited to, postings on and messages sent through Facebook, LinkedIn, Twitter, YouTube, Instagram, Snapchat, Reddit, blogs, wikis, and other social media sites.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar that Request seeks documents and communications related to social media postings and messages not described with reasonable particularity, documents and communications not expressly referenced in the Complaint, and documents and communications not in Carter's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her responses to **REQUEST NOS. 2, 3, 8, 23, 25, 33, 39, 46, 48-58, 61, 64-65, 76, 82-84, 86, 92, 107**.

23.     All DOCUMENTS and COMMUNICATIONS that RELATE TO any correspondence, statements, interviews, or discussions YOU have had regarding the facts alleged in the COMPLAINT with any media outlet, publication, or journalist.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged

13

APP000067

documents. Carter objects to this Request as overly broad and unduly burdensome insofar as it requires her to provide documents otherwise publicly available and not in her possession, custody, and control; Carter does not produce any such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2319-2337**.

      24.     All DOCUMENTS and COMMUNICATIONS that contain or otherwise that RELATE TO facts that YOU contend refute, in any way, any of SOUTHWEST's defenses.

      **RESPONSE**: Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as asking for all documents and communications "that contain or otherwise that relate to facts … refut[ing], in any way, any of Southwest's defenses" does not describe requested information with reasonable particularity, and is not calculated to lead to the production of admissible evidence. Based on the foregoing objections Carter does not produce any documents in response to this request.

      25.     All DOCUMENTS and COMMUNICATIONS that RELATE TO SOUTHWEST employees who YOU believe were similarly situated to YOU, but treated more favorably than YOU with respect to the disciplinary actions YOU allege in the COMPLAINT.

      **RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2279-2318, 2338-2416**.

      26.     All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR

<div align="center">14</div>

injuries (whether physical, mental, or emotional) and claim for damages (monetary and nonmonetary), including but not limited to those injuries and damages YOU alleged in paragraphs 92, 102, and 122, 131 of the COMPLAINT and the Prayer for Relief.

**RESPONSE**: Carter objects to this Request insofar as it seeks information protected by the attorney client privilege, the work product doctrine, physician-patient privilege, psychotherapist-patient privilege, and withholds all such privileged documents. Carter also objects to this request as unduly burdensome insofar as it requires her to provide documents not in her possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2417-2424**.

27.     ALL DOCUMENTS and COMMUNICATIONS that RELATE TO any medical consultations YOU sought or received RELATED TO YOUR injuries or damages alleged in the COMPLAINT (including but not limited to medical records, bills, appointment notifications, letters, prescriptions, benefit claim forms, and receipts for medical, psychological, psychiatric or related treatment, diagnoses, or counseling).

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege, the work product doctrine, physician-patient privilege, psychotherapist-patient privilege, and withholds all such privileged documents. Carter also objects to this request as unduly burdensome insofar as it requires her to provide documents not in her possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request, and refers Defendant to Response to **REQUEST NO. 26**.

28.     All DOCUMENTS and COMMUNICATIONS that RELATE TO any emotional

15

injury YOU suffered as a result of SOUTHWEST's alleged misconduct set forth in the COMPLAINT.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege, the work product doctrine, physician-patient privilege, psychotherapist-patient privilege, and withholds all such privileged documents. Carter also objects to this request as unduly burdensome insofar as it requires her to provide documents not in her possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her Response to **REQUEST NO. 26**.

29.    All DOCUMENTS and COMMUNICATIONS that RELATE TO any physical injury YOU suffered as a result of SOUTHWEST's alleged misconduct set forth in the COMPLAINT.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by the attorney client privilege, the work product doctrine, physician-patient privilege, psychotherapist-patient privilege, and withholds all such privileged documents. Carter also objects to this request as unduly burdensome insofar as it requires her to provide documents not in her possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her Response to **REQUEST NO. 26**.

30.    All DOCUMENTS and COMMUNICATIONS that RELATE TO any monetary damages YOU sustained as a result of SOUTHWEST's alleged misconduct set forth in the COMPLAINT.

**RESPONSE**:  Carter objects to this Request insofar as it seeks information protected by

16

the attorney client privilege, the work product doctrine, physician-patient privilege, psychotherapist-patient privilege, and withholds all such privileged documents. Carter also objects to this Request as overly broad and unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or otherwise publicly available; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in her Response to **REQUEST NO. 26**.

31.     All DOCUMENTS and COMMUNICATIONS that RELATE TO COMMUNICATIONS that YOU had with any former or current officer, employee, or agent of SOUTHWEST regarding any of the matters referenced in the COMPLAINT.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request as overly broad and unduly burdensome insofar as it seeks "all documents and communications" "that relate to" Carter's communications with any former or current officer, employee, or agent "regarding any of the matters referenced in the complaint," which does not describe requested information with reasonable particularity. Accordingly, Carter limits her response to documents and communications Carter had with any former or current officer, employee, or agent of Southwest, regarding Southwest's termination of her employment. Carter provides the following non-privileged documents responsive to the Request: **Carter 2426-2438**.

32.     All DOCUMENTS that relate to COMMUNICATIONS that YOU had with any former or current officer, employee, or agent of LOCAL 556 regarding any of the matters referenced in the COMPLAINT.

APP000071

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney-client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request as overly broad and unduly burdensome insofar as it seeks "all documents and communications" "that relate to" Carter's communications with any former or current officer, employee, or agent, "regarding any of the matters referenced in the complaint," which does not describe requested information with reasonable particularity. Carter also objects to the Request as overly broad and unduly burdensome insofar as it seeks information already in Southwest's possession, custody, and control. Carter refers Defendant to her Responses to **REQUEST NOS. 2, 3**.

33.    All DOCUMENTS and COMMUNICATIONS that RELATE TO YOUR allegations in paragraphs 38, 61, 70, and 109 of the COMPLAINT that LOCAL 556 members displayed the SOUTHWEST logo at the Women's March.

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request insofar as it seeks information already within Defendant's possession, custody, and control, and does not re-produce all documents and communications already served by Defendant Southwest on Carter in response to Carter's Requests for Production. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request at **Carter 2457-2468**, and in her Response to **REQUEST NO. 8**.

34.    All DOCUMENTS and COMMUNICATIONS evidencing any STATEMENTS by, or written or oral COMMUNICATIONS with, any PERSON RELATING TO any of the matters alleged in the COMPLAINT.

**RESPONSE**: Carter objects insofar as this Request seeks information protected by the

18

attorney-client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as asking for all documents and communications "that contain or otherwise that relate to facts … refut[ing], in any way, any of Southwest's defenses" does not describe requested information with reasonable particularity, and is not calculated to lead to the production of admissible evidence. Based on the foregoing objections Carter does not produce any documents in response to this request.

35.   All DOCUMENTS and COMMUNICATIONS that RELATE TO any conversations, conferences, or meetings (whether in person or electronic) between YOU and SOUTHWEST related to the allegations in the COMPLAINT.

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as over broad and unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides the following non-privileged documents responsive to the Request in her Response to **REQUEST NO. 31.**

36.   All DOCUMENTS and COMMUNICATIONS that RELATE TO any conversations, conferences, or meetings (whether in person or electronic) between YOU and the UNION.

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter also objects to the Request as overly broad and unduly burdensome insofar as it fails to describe requested information with reasonable particularity. Based on the foregoing objections Carter does not produce any documents in response to this particular request, but refers Defendant to

19

the following non-privileged documents in her Responses to **REQUEST NOS. 1-3, 5-7, 14, 32, 48.**

37.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 1 of the COMPLAINT that "Local 556 acted arbitrarily, discriminatorily, and in bad faith[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request at **Carter 2425, 2442-2456, 2471-2486; 4053-4066**; and those documents provided in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 39, 46, 48-51, 53-56, 61, 64, 65, 81-86, 92, 107**.

38.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 1 of the COMPLAINT that the UNION complained "to Southwest about Carter's protected conduct[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2425, 2442-2456, 2471-2486**; and those documents provided in her Responses to **REQUEST NOS. 2, 3, 5-8, 64, 65, 76-77, 81-86, 92, 107.**

39.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 1 and 111 of the COMPLAINT that LOCAL 556 knew and intended that its report would result in Carter's termination.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney

APP000074

client privilege and work product doctrine, and withholds all such privileged documents. Carter

otherwise provides all non-privileged documents in her possession, custody, and control that are

responsive to this Request: **Carter 404; 2643-2677; 2959-2966**; and those documents provided in

her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 33, 46, 48-51, 53-56, 61, 64, 65, 81-86, 92, 107**.

40.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

in paragraph 2 of the COMPLAINT that "Defendants retaliated against Carter for her exercise

of rights under the Railway Labor Act … to become a nonmember and object to payment of

Local 556's compelled fees for its political, ideological, and other nonbargaining spending, and

to engage in other speech and activity in opposition to Local 556."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney

client privilege and work product doctrine, and withholds all such privileged documents. Carter

otherwise provides all non-privileged documents in her possession, custody, and control that are

responsive to this Request: **Carter 2487-2585; 2959-2966; 2971-2976, 2989-3031; 3037-3040;

3047-3102; 3138-3142**; and those documents provided in her Responses to **REQUEST NOS. 2,

3, 5-8, 25, 38, 39, 46, 48-51, 53-56, 61, 64, 65, 81-86, 92, 107.**

41.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

in paragraph 3 of the COMPLAINT that "Southwest discriminated against Carter for her

religious beliefs and practices[.]."

**RESPONSE**:   Carter objects that this Request seeks information protected by the

attorney client privilege and work product doctrine, and withholds all such privileged documents.

Carter otherwise provides all non-privileged documents in her possession, custody, and control

that are responsive to this Request: **Carter 404**; and those documents provided in her Responses

to **REQUEST NOS. 3, 8-11, 33, 72, 82**.

21

42.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 4 of the COMPLAINT that the UNION "discriminated and retaliated against Carter in violation of Title VII by complaining about Carter's religious beliefs and practices, and causing and attempting to cause Carter's termination."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 404**; and those documents provided in her Responses to **REQUEST NOS. 3, 8-11, 33, 72, 82**.

43.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 13 of the COMPLAINT that "Carter resigned from membership in Local 556 on or about September 29, 2013[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request in Response to **REQUEST NO. 6.**

44.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 13 of the COMPLAINT that Carter "exercised her RLA rights … to object to paying the union's compelled fees for its political, ideological, and other nonbargaining spending."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter provides non-privileged documents responsive to this Request in Response to **REQUEST NO.**

22

**6.**

45.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 14 of the COMPLAINT that "Carter supported the Martin Party and voted for its candidates."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents responsive to this Request at **Carter 2487-2585**; and in her Responses to **REQUEST NO. 2, 46, 48, 49.**

46.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 16 of the COMPLAINT that "Carter and many other flight attendants viewed the charges against [Chris] Click and [Jerry] Lindemann as dubious" and "questioned the legitimacy of removing duly elected officers from the Board and replacing them with members of the losing party, including President Stone."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information not within Carter's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control that are responsive to this Request: **Carter 2487-2585**.

47.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the LOCAL 556 meeting in Denver, Colorado and Carter's statements at said meeting referenced in paragraph 17 of the COMPLAINT.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney

APP000077

client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information not within Carter's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to this Request in Response to **REQUEST NO. 48.**

48.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 18 of the COMPLAINT that "Executive Board Members Nevarez and Thompson …threatened internal union charges against [Carter] … for saying the word 'decertify' and warned that she could lose her job for expressing her opinion and not toeing the union line."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information not within Carter's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2518-2526**.

49.     All DOCUMENTS and COMMUNICATIONS that RELATE TO Facebook postings (including but not limited to those made by YOU), that appear in the Facebook group "One Luv" referenced in paragraphs 19, 23, 24, 25, 26 of the COMPLAINT from January 1, 2012 to the present.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as it seeks information not within her possession, custody, and control, and information not relevant to Carter's action; Carter does

APP000078

not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control, responsive to the Request: **Carter 2518-2604**.

50.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 20 of the COMPLAINT that "Board Member Nevarez instructed members and/or supporters on Facebook to take screenshots and save Facebook Messages received from [Chris] Click, an Executive Board opponent, because he believed Click may 'private message his way into big troubles for himself.'"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2643-2677**.

51.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 21 of the COMPLAINT that there was "a wave of more than 90 [] Southwest employees that eventually 'opted out' of Local 556" around September 2013.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter does not produce such information. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 746-768; 2678-2704, 4133**. See Response to **REQUEST NO. 2, 3.**

52.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 22 of the COMPLAINT that "flight attendants opted out because they opposed

25

non- elected Board members replacing Martin Party candidates that had won the March 2012 election."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter does not produce such information. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 51**.

53.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 27 of the COMPLAINT that "[a]round Fall 2014 … [AUDREY STONE] formed a campaign strategy group known as the 'Core Team' that consisted of her supporters to assist her in winning an election scheduled for March 16, 2015."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2705-2957**.

54.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 28 of the COMPLAINT that the "Core Member Team" was "only open to President Stone's closest supporters and those on the Board."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within

APP000080

Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter does not produce such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2705-2957**.

55.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 28 of the COMPLAINT that the "Core Member Team's posts, which were leaked to other flight attendants, viciously attacked those opposed to President Stone."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2777-2957**.

56.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 29 of the COMPLAINT that "[i]n early 2015 President Stone sent a message to the flight attendants that apologized for the 'hurt and disappointment' caused by the Core Team's social media speech but stated that she would continue to encourage 'passionate debate.'"

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2871; 2916-2918; 2921-2927**. See Response to **REQUEST NO. 75**.

57.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 29 of the COMPLAINT that "President Stone [] defended Core Team members from being disciplined by Southwest regarding … offensive and bullying speech."

**RESPONSE**:   Carter objects that this Request seeks information protected by the

27

attorney client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 56.**

58.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 31 of the COMPLAINT that "Carter and several other flight attendants believed that procedural irregularities tainted the election results."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2877; 2929-2933**.

59.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 31 of the COMPLAINT that "Jeanna Jackson, filed a complaint with the Department of Labor on March 16, 2015[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and

28

control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **REQUEST NO. 58.**

60.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the Department of Labor investigation referenced in paragraph 31 of the COMPLAINT.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **REQUEST NO. 59.**

61.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 32 of the COMPLAINT that on "April 20, 2015, President Stone emailed the flight attendants, including Carter, that Southwest had been disciplining several flight attendants for criticizing each other via social media."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2959-2966**.

62.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

29

in paragraph 33 of the COMPLAINT that in an "April 20, 2015 message, President Stone communicated that Local 556 was 'actively fighting' flight attendants' grievances against Southwest, challenging discipline under the company's social media policies."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **REQUEST NO. 61.**

63.   All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 33 of the COMPLAINT that "Stone recognized that these grievances had resulted in employee discipline up to and including termination."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **REQUEST NO. 61.**

64.   All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 34 of the COMPLAINT that "Jackson and several other flight attendants [] started a campaign around July 2015 to recall the leadership of Local 556 … [and] started collecting

30

signatures for a petition demanding that Local 556 conduct new elections for 12 of the 17 officers of the union's executive board that won the March 2015 election, including President Stone."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 2977-2988; 3032-3036; 3041-3046; 3103-3137; 3143-3263**.

65.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 36 of the COMPLAINT that "around December 15, 2016, Jackson presented recall petitions to Local 556 signed by over 7,000 Local 556 members" and that in "January 2017, Local 556's leaders [] voted to reject the petitions."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3143-3263**. See also Responses to **REQUEST NOS. 64.**

66.    All DOCUMENTS and COMMUNICATIONS that RELATE TO LOCAL 556 members' participation in the WOMEN'S MARCH.

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney

31

client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 8**.

67.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 38 of the COMPLAINT that "Local 556 participants posted pictures of the Women's March on social media, and featured the event in the union newsletter, TWU Express."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 8**.

68.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 38 of the COMPLAINT that "video and many of the pictures posted by Southwest flight attendants who are members of Local 556 featured the Southwest logos on their signs at the march."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 8**.

69.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 39 of the COMPLAINT that "Southwest knew of Local 556 members' activities and participation in the Women's March[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter

32

otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 3122-3125; 3264-3266**; and in her Response to **REQUEST NOS. 8**.

70.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 40 of the COMPLAINT that "Southwest helped accommodate Local 556 members wishing to attend the protest by allowing them to give their work shifts to other employees not attending the protest."

**RESPONSE**:   Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as unduly burdensome insofar as it seeks information already within Defendant's possession, custody, and control, or not within Carter's possession, custody, and control; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 71**.

71.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 40 of the COMPLAINT that "Local 556 [] paid the expenses of its members that attended the protest."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3268-3273; 3292-3294**. See also Response to **REQUEST NOS. 8, 33**.

72.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

33

APP000087

in paragraphs 42 and 107 of the COMPLAINT that YOU are a Christian who believes that abortion is the taking of a human life contrary to the teachings of the Bible and the will of God.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404; 3295-3327**; and in her Response to **REQUEST NOS. 3, 9-11**.

73.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraphs 42 and 108 of the COMPLAINT that YOUR sincere religious beliefs require YOU to share with others that abortion is the taking of a human life.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her Response to **REQUEST NOS. 3, 9-11, 72**.

74.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 42 of the COMPLAINT that "Carter opposes abortion and … Planned Parenthood."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her Response to **REQUEST NOS. 3, 8-11, 72, 82**.

75.     All DOCUMENTS and COMMUNICATIONS (including but not limited to YOUR postings and responses thereto) that RELATE TO the Facebook group "556 Members

34

for Total Recall" referenced in paragraph 43 of the COMPLAINT from January 1, 2014 to the present.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as overly broad unduly burdensome insofar as it seeks information not within Carter's possession, custody, and control, and not relevant to the action; Carter produces no such documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request, in her responses to **REQUEST NOS. 64, 65**.

76.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 50 of the COMPLAINT that "on February 17, 2017, Carter received an email from President Stone and Matt Hettich on behalf of Local 556 urging her to contact her legislators to stop a National Right to Work bill in Congress."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3282-3291**.

77.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the March 7, 2017 "fact-finding" meeting referenced in paragraphs 54 and 57-69 of the COMPLAINT.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 404**. See also Response to **REQUEST NOS**. **2, 3, 8**.

78.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

APP000089

in paragraph 59 of the COMPLAINT that YOU "work[] with various groups to help prevent abortions."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her responses to **REQUEST NOS. 9-11**.

79.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 61 of the COMPLAINT that "President Stone and the Local 556 members purported to be representing all of the Southwest flight attendants as supporting abortion rights."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 8, 71**.

80.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 62 of the COMPLAINT that "Local 556 members attending the [Women's] March wore pink hats resembling female genitalia to promote their vision of women's rights."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 8**.

81.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 63 of the COMPLAINT that "[i]n making the communications on Facebook, Carter was attempting to protect her [] statutory rights."

36

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her response to **REQUEST NOS. 2, 3**.

82.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 67 of the COMPLAINT that "Southwest employees who do not share Carter's beliefs and practices are permitted to make political and ideological statements and engage in related activities in connection with the workplace."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3338-3766; 3787-3788; 3806-3813; 3826-3030; 3913-3924; 3932; 3934-3940**.

83.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 68 of the COMPLAINT that "if you post or say anything Local 556 does not like, they go after you[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3754-3786; 3788-3805; 3814-3825; 3831-3861**.

84.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 70 of the COMPLAINT that "pictures of Carter in her flight attendant's uniform were posted more than one-year earlier."

37

APP000091

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3862-3912**.

85.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraphs 70 and 109 of the COMPLAINT that LOCAL 556 members supported abortion.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her response to **REQUEST NO. 8**.

86.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 74 of the COMPLAINT that "complaints filed against other flight attendants involving social media posts that were allegedly threatening or harassing did not result in their termination or ultimately resulted in those flight attendants keeping their jobs[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 3925-3974**; and in her responses to **REQUEST NOS. 25, 83**.

87.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the social media activity referenced in paragraphs 74(a) – 74(e) of the COMPLAINT.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter

38

otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her responses to **REQUEST NOS. 25, 83, 86**.

88.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 75 of the COMPLAINT that "Spand, Rosenberg, Talburt, and Rittner, all union members and supporters of Local 556 leadership, were either not disciplined by Southwest … or were later reinstated."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 25, 83, 86**.

89.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 76 of the COMPLAINT that "Southwest subjected supporters of the recall effort, who were nonmember objectors, and/or union opponents, to termination of employment, suspension, repeated fact-findings, and/or other disciplinary measures, in multiple instances at the request of Local 556 members and officials."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 25, 83, 86**.

90.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 77 of the COMPLAINT that "Kent Hand … exercised his RLA Rights to resign his membership in Local 556 and objected to paying for the union's political, ideological, and other nonbargaining spending."

APP000093

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 83, 92**.

91.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 77 of the COMPLAINT that "Hand [] supported the recall effort and made posts in social media criticizing Local 556 and its leadership."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NOS. 92**.

92.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 77 of the COMPLAINT that "Southwest terminated Hand without offering him the opportunity to improve or correct his behavior[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects that this Request is unduly burdensome in that it seeks information not in Carter's possession, custody, control, and that Defendant already possesses responsive information in its possession, custody, and control; Carter does not produce such information. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3975-3984**.

93.      All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 83 of the COMPLAINT that "President Stone and the union caused and attempted

40

to cause Southwest to discipline and terminate Carter … based on personal animosity towards Carter's speech and activity opposing the union, her nonmember, agency fee objector status, and her support for the recall effort[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 3985-4051**; and in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

94.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 83(a) of the COMPLAINT that LOCAL 556 "support[ed] [] abortion rights and fund[ed] that support through union members and nonmembers' union dues."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Response to **REQUEST NO. 8, 71**.

95.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 83(b) of the COMPLAINT that AUDREY STONE acted "inconsisten[tly] with and sudden[ly] deviat[ed] from [] past practice of affirmatively defending union supporters' 'offensive and bullying speech' viciously attacking union opponents on social media[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-**

APP000095

**56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

96.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 83(b) of the COMPLAINT that "the union was not making decisions based on permissible factors, but on animosity towards Carter's views and favoritism towards union supporters[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

97.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 85 of the COMPLAINT that "Local 556 invidiously discriminated against Carter when President Stone and the union caused attempted to cause Southwest to discipline and terminate her (by complaining to Southwest about her Facebook messages to President Stone) based on her speech and activity opposing the union, her nonmember, agency fee objector status, and her support for the recall effort[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

98.     All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 87 of the COMPLAINT that "Local 556 acted in bad faith when President Stone

42

and the union caused and attempted to cause Southwest to discipline and terminate Carter (by complaining to Southwest about her Facebook messages to President Stone) because it did so based on Carter's speech and activity opposing the union, her nonmember, agency fee objector status, and her support for the recall effort[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

99.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 88 of the COMPLAINT that "Local 556 and President Stone acted disloyally towards Carter when they caused and attempted to cause Southwest to discipline and terminate her (by complaining to Southwest about her Facebook messages to President Stone) based on Carter's communications to President Stone on her 'Audrey Stone Twu' Facebook page that she opposed President Stone's leadership, Local 556's leadership generally, its support of abortion rights and other politically partisan viewpoints, and its use of union membership dues to advance those viewpoints in the public square."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

100.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

43

in paragraph 89 of the COMPLAINT that "Local 556 and its agents, including President Stone, acted with the knowledge that Carter's discipline and termination were likely and foreseeable consequence of their actions, based on prior Social Media Policy violations that resulted in disparate disciplinary treatment of recall supporters, nonmember objectors, and other union opponents[.]"

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

101.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 91 of the COMPLAINT that "Local 556 breached its fiduciary duty of representation owed to Carter."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

102.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 92 of the COMPLAINT that "[a]s a result of Local 556's breach of its fiduciary duty of fair representation to Carter, it caused Southwest to terminate Carter[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter

APP000098

otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

103.   All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 97(a) of the COMPLAINT that "Local 556 retaliated against Carter for exercising her protected rights by complaining to Southwest of Carter's speech and activities, knowing that it could cause her discharge[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

104.   All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 97(b) of the COMPLAINT "Southwest retaliated against Carter for exercising her protected rights[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her Responses to **REQUEST NOS. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, 107**.

105.   All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 98 of the COMPLAINT that "Local 556 complained to Southwest of Carter's speech and activities knowing that Carter could be terminated."

45

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 2916-2918; 2959-2966**; and in her responses to **REQUEST NOS**. **50, 53-56, 61, 89, 92**.

106.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 99 of the COMPLAINT that Carter received "disparate treatment … in contrast with Local 556's own members[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 2916-2918; 2959-2966**; and in her responses to **REQUEST NOS. 25, 83, 86**.

107.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 99 of the COMPLAINT that LOCAL 556 has a "history of retaliatory threats and other discriminatory conduct against Carter and other nonmember objectors[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request: **Carter 3985-4051**; and in her response to **REQUEST NOS. 47, 92, 93**.

108.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 99 of the COMPLAINT that there was "inconsistency between Local 556's

46

approach to employee discipline depending on their speech and activities, including discipline under Southwest's social media policy and other company policies."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 2916-2918; 2959-2966**; and in her responses to **REQUEST NOS. 25, 83, 86, 92, 93.**

109.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that YOUR "protected speech and other activities were a substantial and motivating factor for Southwest's termination of Carter's employment[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 2916-2918; 2959-2966**; and in her responses to **REQUEST NOS. 2, 3, 6, 8-11; 25, 38, 46, 48-51, 64, 65, 83, 86, 92, 93**.

110.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that SOUTHWEST had a "pattern of retaliatory discharge of other nonmember objectors and Local 556 opponents[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her responses to **REQUEST NOS. 83, 92**.

111.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

47

in paragraph 100 of the COMPLAINT that SOUTHWEST treated YOU and other nonmember objectors differently than "Local 556 members and supporters[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her response to **REQUEST NO. 25, 82, 83, 86**.

112.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that "Southwest[] deviat[ed] from past disciplinary practices" in its treatment of YOU and other nonmember objectors.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her response to **REQUEST NO. 25, 82, 83, 86**.

113.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that there were "inconsistencies between Southwest's justifications for terminating Carter and its other actions[.]"

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her response to **REQUEST NO. 25, 82, 83, 86**.

114.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that SOUTHWEST's justifications for terminating YOUR employment were implausible.

48

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her responses to **REQUEST NOS. 25, 82-84, 86**.

115.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 100 of the COMPLAINT that SOUTHWEST "fail[ed] to follow its own progressive disciplinary policy and other disciplinary rules" in terminating YOUR employment.

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request in her responses to **REQUEST NOS. 25, 82-84, 86**.

116.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 109 of the COMPLAINT that YOUR social media postings and messages to AUDREY STONE were "[i]n accordance with her religious beliefs and practices."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her Responses to **REQUEST NOS. 3, 8-11, 71, 72, 80, 85**.

117.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 110 of the COMPLAINT that "Local 556 and its agents complained to Southwest about Carter posting pro-life messages and videos on Facebook and sending videos and comments to the union president."

49

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her Responses to **REQUEST NOS. 3, 8-11, 72, 80, 82, 85, 94**.

118.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 116 of the COMPLAINT that "Defendants treated Carter less favorably than similarly-situated flight attendants who did not share Carter's religious beliefs and practices and who violated Southwest's Social Media Policies."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404, 4067-4093; 4101-4114**; and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82-84, 86**.

119.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 117 of the COMPLAINT that "Defendants had no valid non-discriminatory reason for terminating Carter's employment."

**RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82-84, 86**.

120.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation

50

in paragraph 117 of the COMPLAINT that "Reporting and terminating Carter based on the Social Media Policies is pretext and inconsistent with Defendants' application of Social Media Policies in other cases."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404;** and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82-84, 86**.

121.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 118 of the COMPLAINT that LOCAL 556 "attempt[ed] to cause the company to discharge and otherwise discriminate against her religious beliefs and for engaging in the religious practice of sharing her religious beliefs on abortion with others."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82, 118**.

122.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 119 of the COMPLAINT that SOUTHWEST "terminated Carter for her religious beliefs and for engaging in the religious practice of sharing religious beliefs on abortion with the union president and on her personal Facebook page."

**RESPONSE**: Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter

51

otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404;** and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82, 118**.

      123.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 121 of the COMPLAINT that SOUTHWEST "fail[ed] to attempt any accommodation to Carter's religious beliefs and practices, including when Defendants applied the Social Media Policies to Carter's communications on her personal Facebook page and to the union president."

      **RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404;** and in her responses to **REQUEST NOS. 3, 8-11, 25, 71, 72, 80, 82, 118**.

      124.    All DOCUMENTS and COMMUNICATIONS that RELATE TO the allegation in paragraph 121 of the COMPLAINT that SOUTHWEST "did not inquire into accommodation of Carter's religious beliefs[.]"

      **RESPONSE**:  Carter objects that this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter otherwise provides all non-privileged documents in her possession, custody, and control responsive to the Request at **Carter 404**; and in her Responses to **REQUEST NOS. 3, 8-11, 71, 72, 80, 82, 118**.

      125.    All DOCUMENTS YOU refer to in response to SOUTHWEST's interrogatories served contemporaneously with this request.

APP000106

**RESPONSE**:  See Response to **REQUEST NOS. 2, 3, 5-8, 16, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, and 107**.

126.  To the extent not requested above, all DOCUMENTS and COMMUNICATIONS RELATING TO the allegations in the COMPLAINT.

**RESPONSE**:  Carter objects insofar as this Request seeks information protected by the attorney client privilege and work product doctrine, and withholds all such privileged documents. Carter objects to this Request as overly broad and unduly burdensome insofar as the request for all documents and communications "relating to the allegations in the complaint" does not describe requested information with reasonable particularity, and is not calculated to lead to the production of admissible evidence. Based on the foregoing objections Carter does not produce any documents in response to this request.

DATED: November 28, 2019                    Respectfully submitted,

<div style="margin-left:40%;">

s/ Jason E. Winford *(with permission)*
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

s/ Matthew B. Gilliam
Mathew B. Gilliam *(admitted pro hac vice)*
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings *(admitted pro hac vice)*
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600

</div>

APP000107

Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

*Counsel for the Plaintiff*

54

APP000108

## CERTIFICATE OF SERVICE

I certify that, on this day, I served the foregoing by electronic mail on Counsel of Record for Southwest Airlines Co.

By: **/s/ Matthew B. Gilliam**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>     Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>     Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S RESPONSES AND OBJECTIONS
TO DEFENDANT SOUTHWEST AIRLINES CO.'S
FIRST SET OF INTERROGATORIES**

To: Defendant Southwest Airlines Co. ("Southwest"), through its attorneys of record, Michele Haydel Gehrke, Reed Smith LLP, 101 Second Street, Suite 1800, San Francisco, California, 94105-3659, and Brian K. Morris, Reed Smith LLP, 811 Main Street, Suite 1700, Houston, Texas 77002-6110.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Charlene Carter ("Carter") hereby responds to Defendant Southwest Airlines Co.'s ("Southwest") First Set of Interrogatories.

Carter has not yet completed discovery and related investigation in this case, and has not completed preparation for trial, including review of relevant material by expert witnesses, and preparation of expert witness reports. The following responses are based upon, and therefore are necessarily limited by, the records and information in existence, presently recollected, and thus far discovered in the course of preparing these responses. Moreover, those documents which have been retrieved in the discovery conducted thus far are being compiled, analyzed, and organized. Carter reserves the right to produce additional evidence, facts, documents, or information not yet

1

discovered by or known to Carter's counsel. Carter also reserves the right to alter, supplement, amend, or otherwise modify these responses as provided by the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

Carter objects to Southwest's First Set of Interrogatories ("Interrogatories") on the following general grounds ("General Objections"). Each of the following General Objections is made and incorporated into each response to Southwest's Interrogatories as if fully set forth therein:

1.      Carter objects to the Interrogatories to the extent that they require her to respond in any manner other than in accordance with the Federal Rules of Civil Procedure.

2.      Carter objects to the Interrogatories to the extent that they require her to disclose any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege.

3.      Carter objects to the Interrogatories to the extent that they seek information concerning matters not relevant or reasonably calculated to lead to the discovery of admissible evidence.

4.      Carter objects to the Interrogatories to the extent that they are vague, impertinent, overly broad, unduly burdensome, and oppressive.

5.      Carter objects to the Interrogatories to the extent that they seek information equally available to the propounding party.

6.      Without waiving said objections, Carter has responded in accordance with Southwest's Interrogatories and instructions.

APP000111

## CARTER'S OBJECTIONS AND ANSWERS TO INTERROGATORIES

1.      IDENTIFY all PERSONS with knowledge, DOCUMENTS, or information relating to any injuries, including physical, mental, and emotional injuries, YOU allegedly sustained as a result of SOUTHWEST's conduct alleged in the COMPLAINT.

**RESPONSE**: Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as Southwest has knowledge, documents, and information, relating to Carter's monetary damages and events causing her injuries sustained as a result of Southwest's conduct alleged in the complaint; Carter does not provide such information in response to this request, but refers Southwest to Carter's Responses to Interrogatory Nos. 11, 12, and 14.

Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it seeks home addresses and telephone numbers for individuals with responsive information, which information is not within Carter's knowledge, possession, custody, and control; Carter does not provide such information. Carter otherwise identifies the following persons with knowledge, documents, and information, responsive to this Interrogatory:

   Name: David L. Ragsdale
   Business Address: 10165 Quarry Hill Place, Parker, CO 80134
   Business Phone: (303) 324-6261
   Employer: Self-employed
   Title/Business: Licensed Professional Counselor/Leader Care

   Name: Dr. Colleen Ballain
   Business Address: 9998 N. Dransfeldt Rd., Parker, CO 80134
   Business Phone: (303) 841-5266
   Employer: Women's Wellness Center
   Title/Business: Doctor/Women's Wellness Center

   St. Mary's Hospital – St. Louis
   Business Address: 1145 Corporate Lake Dr., St. Louis, MO, 63132
   Business Phone: (314) 768-8000
   Employer: St. Mary's Hospital – St. Louis
   Title/Business: Doctor/SSM Health, St. Mary's Hospital – St. Louis

APP000112

2.      IDENTIFY all healthcare professionals, including but not limited to physicians, psychiatrists, psychologists, therapists, social workers, acupuncturists, chiropractors, physician assistants, nurses, occupational therapists, and other healthcare professionals with whom YOU consulted or from whom YOU received or sought treatment relating to any injuries YOU allegedly sustained as a result of SOUTHWEST's conduct alleged in the COMPLAINT.

**RESPONSE**:  Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it seeks home addresses and telephone numbers for individuals with responsive information, which information is not within Carter's knowledge, possession, custody, and control; Carter does not provide such information. Carter otherwise identifies the following persons with knowledge, documents, and information, responsive to this Interrogatory:

Name: David L. Ragsdale
Business Address: 10165 Quarry Hill Place, Parker, CO 80134
Business Phone: (303) 324-6261
Employer: Self-employed
Title/Business: Licensed Professional Counselor/Leader Care

St. Mary's Hospital – St. Louis
Business Address: 1145 Corporate Lake Dr., St. Louis, MO, 63132
Business Phone: (314) 768-8000
Employer: St. Mary's Hospital – St. Louis
Title/Business: Doctor/SSM Health, St. Mary's Hospital – St. Louis

Name: Dr. Colleen Ballain
Business Address: 9998 N. Dransfeldt Rd., Parker, CO 80134
Business Phone: (303) 841-5266
Employer: Women's Wellness Center
Title/Business: Doctor/Women's Wellness Center

3.      IDENTIFY each employee of SOUTHWEST who YOU contend was similarly situated to YOU, but who SOUTHWEST treated more favorably than YOU with respect to the disciplinary actions YOU allege in the COMPLAINT.

**RESPONSE**:  Carter objects to this Interrogatory as unduly burdensome insofar as it

4

seeks telephone, addresses, and title/position/business information, for Southwest employees, which information is within Southwest's knowledge, possession, custody, and control, and at least as equally accessible to Southwest than to Carter. Accordingly, Carter does not provide such information in response to this Interrogatory. Carter otherwise identifies the following Southwest employees who were similarly situated to her, but who Southwest treated more favorably than her with respect to disciplinary actions alleged in the complaint:

- Ricky Spand
- Josh Rosenberg
- Brian Talburt
- Casey Rittner
- Bill Holcomb
- Sam Wilkins

4.       For each employee identified in response to Interrogatory Number 3, DESCRIBE in detail how each employee was treated more favorably than YOU.

**RESPONSE**: Carter objects to this Interrogatory insofar as it seeks documents, communications, and information protected by the attorney client privilege and work product doctrine, and Carter withholds all such privileged information. Carter objects to this Interrogatory as unduly burdensome insofar as it seeks telephone, addresses, and title/position/business information, for Southwest employees, which information is within Southwest's knowledge, possession, custody, and control, and more easily accessible to Southwest than to Carter, who does not have knowledge or possession, custody, and control, of the information. Accordingly, Carter does not provide such information. Carter otherwise provides the following information:

- **Ricky Spand**

  - On August 25, 2016, Southwest flight attendant Jeanna Jackson reported Southwest flight attendant Ricky Spand to Southwest management for making social media posts, suggesting that Ms. Jackson was having an illicit relationship with a member of Southwest management. Spand is a known supporter of Local 556 leadership,

5

including President Audrey Stone. To the best of Carter's knowledge, Southwest did not discipline Spand for this incident. See Carter's **Response to Request for Production No. 25.**

- Around November 2016, Spand posted a video on his Facebook page directed at Recall supporters traveling to D.C. to turn in their petition of signatures to recall Local 556's Executive Board Officers. Spand, dressed in a costume as "death," says to recall supporters: "You're coming to D.C. to meet me … I'm death." On or about November 10, 2016, Jeanna Jackson, the flight attendant spearheading the recall effort, filed a complaint with Southwest over the video for making a death threat against her. Jackson emailed Southwest management about its video on November 17, 2016. To the best of Carter's knowledge, Southwest, however, did not terminate or otherwise discipline Spand over this incident. See Carter's **Response to Request for Production No. 25.**

- **Josh Rosenberg**

  - On February 14, 2017, flight attendant and Local 556 member Josh Rosenberg was reported to Southwest for posting a profile picture on Instagram, a social media website, of an individual holding a gun and the caption "#GarySignNow" (a reference to Southwest's CEO, Gary Kelly)." Rosenberg was reported to Southwest yet he was not fired over this posting. See Carter's **Response to Request for Production No. 25.**

- **Brian Talburt**

  - On August 25, 2016, Southwest flight attendant Jeanna Jackson reported Southwest flight attendant Brian Talburt to Southwest management for making social media posts implying that Jackson was having an illicit relationship with a member of Southwest management. Talburt is a known supporter of Local 556 leadership, including President Audrey Stone. To the best of Carter's knowledge, Southwest did not discipline Talburt for this incident. See Carter's **Response to Request for Production No. 25.**

  - On March 16, 2015, Southwest flight attendant Greg Hofer (a nonmember objector that supported the campaign to reorganize Local 556 through a recall election) reported Brian Talburt to Southwest management for a social media post where Talburt called Hofer a "fucktard" for turning him in to Southwest over his social media post where he called for a public execution of union opponents and referred to Hofer as a "puss[y]." Southwest terminated Talburt over this post, but later reinstated him. See Carter's **Response to Request for Production No. 25.**

6

- On October 10, 2014, Southwest terminated Talburt for making a Facebook post that called for the "public execution" of those opposed to Local 556's leadership. Talburt posted: "We NEED one public execution to stop [the Southwest flight attendants opposed to Local 556's leadership]. They are NOT warriors. They are pussies and certainly you have seen Hoffucker in action for example. ONE execution we will never hear from them again. This I truly believe." "Hoffucker" was a derogatory reference to Hofer. Southwest reinstated Talburt only two weeks after his termination. See Carter's **Response to Request for Production No. 25.**

- **Casey Rittner**

  - On March 22, 2016, Southwest terminated flight attendant and Local 556 member Casey Rittner for making a Facebook post that called for CEO Kelly to sign the tentative agreement. The post included a picture displaying a gun with the hashtag "#GarySignNow." Rittner is a known supporter of Local 556's leadership, including President Stone. Southwest terminated Rittner but he was later reinstated. See Carter's **Response to Request for Production No. 25.**

- **Bill Holcomb**

  - On or about February 18, 2015, Southwest flight attendant Bill Holcomb made a social media post in a thread talking about Southwest flight attendant Steven Hobbs. The comment stated: "He was in class with Boris Kurtz. they had a one night fling . . . I am sorry for the visual . . . he stalked Boris for YEARS. claimed he left his boyfriend for Boris. it got really ugly." Thus, Holcomb insinuated that Hobbs was having a sexual relationship with another Southwest flight attendant. Hobbs reported Holcomb to Southwest but Southwest did not terminate Holcomb over this post. Holcomb was a member of Local 556's negotiating team and known supporter of Local 556's leadership, including President Stone. See Carter's **Response to Request for Production No. 25.**

  - Around late 2013 or early 2014, Holcomb created a social media post where he made fun of a Southwest passenger for getting arrested for being drunk and belligerent on a Southwest flight. This passenger shaming was reported to Southwest but Holcomb remains employed with Southwest. See Carter's **Response to Request for Production No. 25.**

  - Around September 17, 2013, Holcomb posted a picture on social media of a Southwest passenger seated on a plane with an empty banana peel near her feet. The picture showed only her legs and a magazine over her legs. Holcomb added a comment to his post asking "Did she shove the banana up underneath that magazine on her lap ? …. Because that's where I would have placed it when I saw the peel …." This post was reported to Southwest management. To the best of Carter's

knowledge, Southwest did not terminate Holcomb over this incident. See Carter's **Response to Request for Production No. 25.**

- **Sam Wilkins**

    - Around 2012, Southwest flight attendant and TWU Local 556 officer Sam Wilkins sent a Facebook message, commenting that "Rick Riveria is prob giving CC head as we speak …. Oops . .." This referred to two other Southwest flight attendants, Rivera, and Chris Click. Click, a known opponent of Local 556's Executive Board and a Recall supporter, reported this comment to Southwest management. To the best of Carter's knowledge, Wilkins continues to work for Southwest. See Carter's **Response to Request for Production No. 25.**

    - Around 2012, Wilkins created a post on Facebook that said I have a ".38 and I can't stand Mitt Romney." This post was reported to Southwest as violating its social media policy in 2015 or 2016. To the best of Carter's knowledge, Wilkins continues to work for Southwest. See Carter's **Response to Request for Production No. 25.**

5.      IDENTIFY all PERSONS from whom YOU have received statements (oral or written) relating to the allegations set forth in the COMPLAINT.

**RESPONSE**: Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it fails to state a request for information with reasonable particularity. Carter further objects to providing information regarding such statements based on the attorney-client privilege and work product doctrine. Carter objects to this Interrogatory as unduly burdensome insofar as it seeks telephone, addresses, and title/position/business information, for Southwest employees, which information is within Southwest's knowledge, possession, custody, and control, was provided in Carter's Initial Disclosures, and is equally accessible to Southwest. Based on the foregoing objections, Carter states that she has received statements relating to the allegations set forth in the Complaint from:

- Chris Click
- Chris Sullivan
- Kent Hand
- Greg Hofer
- Holly Immamovic

- Jeanna Jackson

6.      IDENTIFY all PERSONS with whom YOU had any COMMUNICATION about the allegations in the COMPLAINT.

**RESPONSE**:  Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it fails to state a request for information with reasonable particularity, and is not reasonably calculated for the discovery of admissible evidence. Carter objects to this Interrogatory based on the attorney-client privilege, work product doctrine, and spousal communications privilege insofar as it seeks information regarding communications from privileged sources; Carter withholds such information. Carter objects to this Interrogatory as unduly burdensome insofar as it seeks telephone, addresses, and title/position/business information, for Southwest employees, which information is within Southwest's knowledge, possession, custody, and control, was provided in Carter's Initial Disclosures, and is equally accessible to Southwest. Based on the foregoing objections, Carter states that she has received statements relating to the allegations set forth in the Complaint from:

- TJ Barrenn
- Chris Click
- Victor Conejo
- Mary Coughlin
- Janna Dalak
- Matthew Dunn
- Bill McMorris
- Kim Monson
- Molly Voight
- Chris Sullivan
- Aimee Thompson
- Claire Ursin
- Dawn Wann
- Kent Hand
- Greg Hofer
- Holly Immamovic
- Jeanna Jackson

APP000118

- Lynn Montgomery
- Rinaldo Schiffino

Carter also refers Defendant to her Responses to her Requests for Production.

7.      DESCRIBE in detail all efforts YOU have made to find employment or other paid work after YOUR termination from SOUTHWEST and the results of those efforts.

**RESPONSE**: Carter objects to this Interrogatory insofar as it seeks documents, communications, and information protected by the attorney client privilege and work product doctrine, and Carter withholds all such privileged information. Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it seeks "[t]he identity of each and every person involved in the act, occurrence, omission, series of acts, occurrences, or omissions," including each and every person's home and business addresses and telephone numbers, titles, positions, and businesses. As such, a request for the identity of each and every person involved in the series of acts described is not stated with reasonable particularity, and Delta and United provided no such information to Carter when she was seeking employment with those companies. Accordingly, Carter does not provide such information. Carter otherwise provides the following information:

From dates prior to March 2017, continuing until on or about April or May 2017, Carter worked with Project Purpose, investing her money and resources in order to attain full time paid employment with the organization. While working for Project Purpose, Carter did fundraising and preparing literature regarding the organization's purpose and work.

Around April/May 2017, Carter left Project Purpose and started Divine Intervention Academy, working as its Executive Director of Education. Divine Intervention Academy planned to open a school in St. Louis, Missouri, by August 2018, with a K-6 curriculum and STEM program. As Executive Director of Education, Carter did public relations work, distributed

10

curriculum packets and other information, helped write and prepare grants, and developed the organization's web page. Carter worked and invested money in Divine Intervention Academy with the goal and expectation of eventually obtaining paid employment with the organization. Divine Intervention Academy's Board of Directors approved salaries for personnel sometime prior to March 2018, and it was certified as a 501(c)(3) organization in November/December 2018. Carter left Divine Intervention Academy in September 2019.

On or about September 2017, Carter resumed classes she had started years earlier to begin employment as a realtor. After a short time, Carter decided that she did not want to pursue work as a realtor.

On or about July 13, 2018, Carter submitted an online application for a position as a flight attendant with Delta Airlines. On or about August 30, 2018, Delta emailed Carter and informed her that she was selected an interview. Delta informed her that it would email her a link to conduct a recorded video interview, but it never sent the link. Despite multiple attempts by Carter to request the link from Delta, she never received the link. See Carter's **Response to Request for Production No. 16**.

On or about August 17, 2018, Carter submitted an online application for a position as a flight attendant with United Airlines. On or about August 20, 2018, United emailed Carter to schedule a video interview. Shortly thereafter, Carter interviewed with United Airlines. On or about September 12, 2018, United Airlines informed Carter that it was not hiring her at that time. See Carter's **Response to Request for Production No. 16**.

On or about November 2018 Carter registered for classes to become employed as a Pilates instructor. Carter had attended informational meetings in and around September and October 2018, and started class on or around November or December 2018. Carter attended approximately six

APP000120

(6) total classes for eight (8) hours per day continuing through July and August 2019. Carter then began a practicum. As part of my certification to become a Pilates instructor, Carter is now doing student teaching and observation for 8 hours per day Friday through Sunday, and Carter has online course work for 4-5 hours per day for 6 months. Carter will complete my classes to become certified in early 2020.

8.      IDENTIFY each PERSON or entity for whom or which YOU have performed paid work (as an employee or independent contractor), and any self-employment YOU have had, since the termination of YOUR employment with SOUTHWEST, including the dates of employment/services provided and reason for termination.

RESPONSE: Carter responds as follows:

Carter further states that from dates prior to March 2017, continuing until August or September 2019, she performed work home schooling her daughter five (5) days per week (sometimes six (6), but she was not paid for this work. From February 2017 through the present, Carter did photography work for friends, family, and the Divine Intervention Academy, but she never sought payment for this work. Occasionally, friends might pay her a small amount out of gratitude for her work.

9.      For each PERSON or entity from whom or which you have sought paid work since the termination of your employment with SOUTHWEST, state whether YOU received an offer, and if so, the position, job responsibilities, compensation (including the amount of fringe benefits), dates of employment or work, whether YOU accepted the offer, and if declined, the reasons YOU declined the offer.

RESPONSE: Carter states that she has no information responsive to this request.

10.     IDENTIFY the amount and source of all money, compensation, benefits, or

APP000121

payment of any kind YOU received from any source from the date of YOUR termination from SOUTHWEST.

**RESPONSE**: Carter objects to the extent that this Interrogatory seeks information protected by spousal communications privilege, and withholds all such privileged documents. Carter further objects as this Interrogatory seeks information that is not relevant to this action. Based on the foregoing objections, Carter does not provide the amounts of money, benefits, and household income provided to the family by her husband. Carter objects to this Interrogatory as unduly burdensome insofar as it seeks telephone, addresses, and title/position/business information, for Southwest employees, which information is within Southwest's knowledge, possession, custody, and control, and more easily accessible to Southwest than to Carter, who does not have knowledge or possession, custody, and control, of the information. Accordingly, Carter does not provide such information in response to this Interrogatory. Carter otherwise provides the following responsive information:

Name: Jhara Carter
Home address/phone: 6582 S. Queensburg, Ct., Aurora, CO 80016, (214) 457-0460.
Employer: Frontier Airlines
Position: Pilot

Name: Victor Conejo
Employer: Southwest Airlines Co.
Position: Flight Attendant
Amount: $100

Name: David Standerfield
Employer: Southwest Airlines Co.
Position: Flight Attendant
Amount: $50

11.     State the amount of damages YOU are claiming against SOUTHWEST for each cause of action alleged in the COMPLAINT, and how the amount was calculated.

**RESPONSE**: Carter objects insofar as the full amount of compensatory damages,

13

including interest, compensatory damages for emotional distress and pain and suffering, and loss of employee benefits (e.g., vacation pay, insurance, uniform pay, ratification bonuses, profit-sharing, and retirement benefits), nominal damages, attorneys' fees, and punitive damages, are unascertainable at this time, but may be determined later in the proceedings should such amounts be awarded. Carter also objects insofar as her Complaint also seeks reinstatement of employment and other declaratory and injunctive relief for Count IV (RLA Statutory Retaliation) and Count V (Title VII Religious Discrimination). Accordingly, Carter does not state amounts related to these damages and requested remedies. Carter further reserves the right to amend and supplement her computation of damages as additional information and documents become available during the course of proceedings. Carter otherwise states as follows:

The amount of compensatory damages for each of her causes of action in Count IV (RLA Statutory Retaliation) and Count V (Title VII Religious Discrimination), is the total amount of back pay from March 16, 2017, plus all interest, through the present and continuing until Carter's reinstatement. Carter calculates that her back pay from March 16, 2017, through the present, is approximately $15,000/year, plus interest, based on her average annual income in her recent years of employment at Southwest.

12.     IDENTIFY all PERSON(S) who allegedly discriminated or retaliated against YOU as alleged in the COMPLAINT.

**RESPONSE**:  Carter objects to this Interrogatory as unduly burdensome insofar as it seeks telephone, addresses, and title/position/business information, for Southwest employees, which is information within Southwest's knowledge, possession, custody, and control, and more easily accessible to Southwest than to Carter, who does not have knowledge, possession, custody, and control, of the information. Accordingly, Carter does not provide such information in

14

response to this Interrogatory. Carter otherwise identifies the following persons who discriminated and retaliated against her:

- Southwest
- Sonya Lacore
- Maureen Emlet
- Dave Kissman
- Ed Schneider
- Mike Simms
- Meggan Jones
- Local 556
- Local 556 President Audrey Stone
- Local 556 Executive Board Vice President Brent Nevarez
- Local 556 Executive Board Secretary Cuyler Thompson

13.     DESCRIBE each alleged instance of discrimination and retaliation against YOU as alleged in the COMPLAINT.

**RESPONSE**: Carter objects to this Interrogatory insofar as it seeks documents, communications, and information protected by the attorney client privilege and work product doctrine, and Carter withholds all such privileged information. Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as it seeks "[t]he identity of each and every person involved in the act, occurrence, omission, series of acts, occurrences, or omissions," including each and every person's home and business addresses and telephone numbers, titles, positions, and businesses. As such, a request for the identity of each and every person involved in the series of acts described is not stated with reasonable particularity,

On or around June or July 2013, Local 556 Executive Board Members Brett Nevarez and Cuyler Thompson discriminated against Carter when threatening her with charges against for using the word "decertify" and warned Carter that she could lose her job for expressing her opinion and not toeing the union line. See Carter's **Response to Request for Production No. 48**.

On or around February 15, 2017, Local 556 President Audrey Stone and the union

15

discriminated and retaliated against Carter when they caused and attempted to cause Southwest to discipline and terminate Carter by complaining to Southwest about her Facebook messages based on their personal animosity towards Carter's speech and activity opposing the union, her nonmember agency fee objector status, and her support for the recall effort. See Carter's **Response to Request for Production Nos. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, and 107**.

On or around February 15, 2017, Local 556 President Audrey Stone and the union discriminated against Carter by causing and attempting to cause Southwest to discipline and terminate Carter by reporting Carter to Southwest for a social media policy violation, despite its practice of affirmatively defending union members' and supporters' speech on social media. See Carter's **Response to Request for Production Nos. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, and 107**.

On or around February 15, 2017, Local 556 President Audrey Stone and the union discriminated and retaliated against Carter for her religious beliefs and practices when they caused and attempted to cause Southwest to discipline and terminate Carter by complaining to Southwest about sending President Stone pro-life Facebook messages and videos through Facebook Messenger and posting pro-life videos on her own personal Facebook page. See Carter's **Response to Request for Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

On or around February 15, 2017, Local 556 President Audrey Stone and the union discriminated against Carter's religious beliefs and practices by failing to attempt any accommodation when it applied the Social Media Policies to Carter's Facebook communications, and caused and attempted to cause Carter to be disciplined and terminated without inquiring into accommodation of her religious beliefs and practices. See Carter's **Response to Request for**

16

**Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

On or around February 15, 2017, Local 556 President Audrey Stone and the union discriminated against Carter by treating her less favorably than similarly situated flight attendants who violated Southwest's Social Media Policies and who did not share Carter's religious beliefs and practices. See Carter's **Response to Request for Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

On or about March 14, 2017, Southwest discriminated and retaliated against Carter when it terminated Carter's employment based on her speech and activity opposing Local 556, her nonmember agency fee objector status, and her support for the recall effort. See Carter's **Response to Request for Production Nos. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, and 107**.

On or about March 14, 2017, Southwest discriminated against Carter when it terminated Carter's employment based on her speech and activity opposing Local 556, her nonmember agency fee objector status, and her support for the recall effort, whereas similarly situated union members and supporters speech were not terminated or were terminated and subsequently reinstated. See Carter's **Response to Request for Production Nos. 2, 3, 5-8, 25, 38, 46, 48-51, 53-56, 61, 64, 65, 76-77, 81-86, 89, 92, and 107**.

On or about March 14, 2017, Southwest discriminated and retaliated against Carter for her religious beliefs and practices when it terminated Carter for sending President Stone pro-life Facebook messages and videos through Facebook Messenger and posting pro-life videos on her own personal Facebook page. See Carter's **Response to Request for Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

On or about March 14, 2017, Southwest discriminated against Carter's religious beliefs

17

and practices by failing to attempt any accommodation when it applied the Social Media Policies to Carter's Facebook communications, and summarily fired Carter without inquiring into accommodation of her religious beliefs and practices. See Carter's **Response to Request for Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

On or about March 14, 2017, Southwest discriminated against Carter's religious beliefs and practices by treating her less favorably than similarly situated flight attendants who violated Southwest's Social Media Policies and who did not share Carter's religious beliefs and practices. See Carter's **Response to Request for Production Nos. 3, 8-11, 77, 79, 80, 82, 85, 94, 111, 121**.

14.     State the name of all PERSONS who witnessed each alleged instance of discrimination and retaliation identified in Interrogatory No. 13.

**RESPONSE**: Carter objects to this Interrogatory as overbroad and unduly burdensome insofar as the request is not stated with reasonable particularity. Based on the foregoing objection, Carter does not attempt to state the name of persons who witnessed each alleged instance of discrimination and retaliation beyond those identified by Carter in her March 29, 2019 Initial Disclosures where, pursuant to Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure, she disclosed the name, and address and telephone number of each individual likely to have discoverable information.

15.     IDENTIFY any lawsuits that YOU have been involved in either as a plaintiff or a defendant.

**RESPONSE**: Carter states that she has not been involved in any other lawsuits as either a plaintiff or defendant apart from a divorce proceeding in *Dana Kee v. Charlene Kee*.

DATED: November 28, 2019                Respectfully submitted,

                                        s/ Jason E. Winford *(with permission)*
                                        David E. Watkins
                                        Texas Bar No. 20922000

18

*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680


s/ Matthew B. Gilliam
Mathew B. Gilliam *(admitted pro hac vice)*
New York Bar No. 5005996
*mbg@nrtw.org*
Jeffrey D. Jennings *(admitted pro hac vice)*
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319


*Counsel for the Plaintiff*

APP000128

**VERIFICATION**

*Carter v. Southwest Airlines Co.,*
*and Transport Workers Union of America, Local 556,*
United States District Court for the Northern District of Texas
Civil Case No. 3:17-cv-02278

    I, Charlene Carter, am the Plaintiff in the above-entitled matter. I have read the foregoing

**PLAINTIFF CHARLENE CARTER'S RESPONSES AND OBJECTIONS TO**

**DEFENDANT SOUTHWEST AIRLINES CO.'S FIRST SET OF INTERROGATORIES,**

and know the contents thereof. I declare under penalty of perjury that the matters stated in the

foregoing document are true of my own knowledge, except as to those matters that are stated on

information and belief, and as to those matters I believe them to be true.

Dated: 28 November 2019

**Charlene Carter**

**CERTIFICATE OF SERVICE**

I certify that, on this day, I served the foregoing by electronic mail on Counsel of Record for Southwest Airlines Co.

By**: /s/ Matthew B. Gilliam**