UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>             Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>             Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S REPLY IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY FROM DEFENDANT SOUTHWEST AIRLINES CO.** |

**INTRODUCTION**

Contrary to Southwest's objections, Carter Requests for Production Nos. 6, 7, 17-19, and 21, and Interrogatory 3, seek relevant discovery regarding discriminatory animus and disparate treatment that is essential to proving her retaliation claims under the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.*, and her religious discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. (Fourth Amended Complaint, ECF 80) (FAC) ¶¶ 100, 116); (FAC ¶¶ 93-102) (RLA retaliation); (FAC ¶¶ 103-122) (religious discrimination). Despite Southwest's assertions about the burdens and expenses associated with discovery, the company has not offered adequate evidence to support those assertions. (ECF 141, pp.22-25). Carter's Discovery Requests are proportional to the needs of the case, particularly given the important speech, association, and religious rights at stake in this action. The Court should grant Carter's motion.

**ARGUMENT**

**I. Carter seeks information relevant to her claims and Southwest's defenses.**

Carter seeks information relevant to her claims and the company's defenses, including information concerning Southwest's investigation and handling of other flight attendants' social

1

media activities (RFP 6 and Interrogatory 3), Southwest's discipline of other flight attendants under the Social Media Policies[1] (RFP 7), Southwest's handling of other flight attendants' religious discrimination complaints and religious accommodation requests (RFPs 18 and 19), and Southwest's documents and communications regarding flight attendants who signed grievance settlement agreements and were subject to later discipline (RFP 17). (ECF 134-1, pp.7,10) (ECF 134-2, pp.6-7). These documents and communications are necessary to show disparate treatment and discriminatory animus towards other flight attendants based on their opposition to the union (RFPs 6, 7, 17, and Interrogatory 3) or their religious views (RFPs 18, 19, 21). (ECF 133, pp.8-9).

**A. RFPs 6, 7, 17-19, 21, and Interrogatory No. 3 seek relevant information about similarly situated flight attendants that is essential to showing discriminatory animus and disparate treatment.**

**1. RFPs 6, 7, and Interrogatory No. 3 seek relevant information regarding similarly-situated employees.**

Contrary to Southwest's objections, Carter limits the discovery she seeks to flight attendants who are relevant comparators. (ECF 141, pp.13-14). To be sure, relevant comparators include similarly situated employees who "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (citation and punctuation omitted). But relevant comparators also include "less similarly situated" employees because evidence of disparate treatment of "less similarly situated comparators" is still valid evidence of pretext even if "it is less probative than evidence of a more similarly situated comparator." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 580 (5th Cir.

---

[1] Southwest's "Social Media Policies" collectively refers to 3 separate company policies relevant to Carter's claims, including Southwest's Social Media Policy, Southwest's Workplace Bullying and Hazing Policy, and Southwest's Policy Concerning harassment, Sexual Harassment, Discrimination, and Retaliation. (ECF 133, p.8 n.2).

2

2020).[2] Courts allow liberal discovery in cases where plaintiffs must demonstrate pretext. *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).

Carter's Discovery Requests seek information regarding flight attendants who are relevant comparators because they share the same position and job responsibilities, work within the same In-Flight Services Division, and were subject to discipline under the Social Media Policies by the same decision-makers. (ECF 133 pp.10-11). Southwest argues that Carter's requests do not seek information about "similarly situated" employees because the flight attendants have different supervisors. But employees are also similarly situated where they had their employment status determined by the same person. *See e.g., Garcia*, 938 F.3d at 244. The Custodians applied the Social Media Policies to flight attendants across the country, and made disciplinary decisions that determined Carter's and other flight attendants' employment status with the company.[3] The Custodians had input in Carter's termination and applied their knowledge of other flight attendants' cases in the decision to fire her. (ECF 133, pp.2, 6).

## 2. RFP 17 seeks information about union supporters and opponents who signed grievance settlement agreements that is relevant to her RLA retaliation claims and Southwest's defenses.

Despite Southwest's objections that RFP 17 seeks information that "ha[s] nothing to do with Carter," Carter's request seeks documents and communications regarding flight attendants who

---

[2] *See also Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 950 (5th Cir. 2015) (considering evidence of differential treatment received by four employees but noting that the plaintiff had "not demonstrated that those four employees were similarly situated"); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) (considering evidence of a "similarly situated" employee without comparing the employees' positions, supervisors, or violation histories).

[3] Contrary to Southwest's characterizations, Carter is not asking the Court to make new law or carve out a "custodians exception." (ECF 141, p.17). Rather, Carter proposes limiting her Discovery Requests to certain agreed-upon Custodians in an effort to reduce the company's discovery burdens. (ECF 133, p.2 n.2).

3

were terminated after signing grievance settlement agreements, which the company also asked Carter to sign as a condition of reinstatement. (ECF 133, p.14) (ECF 141, p.11). Carter's request is relevant to Southwest's arguments against reinstatement as well as the disparate treatment of recall supporters (who supported the removal of the union's Executive Board). (ECF 133, p.14).

Southwest argues that flight attendants who received grievance settlements "were subject to employment terms (pursuant to a ["last chance agreement"] or other settlement agreement) that never applied to Carter." (ECF 141, p.21). But one of Southwest's defenses against reinstatement is that it offered Carter reinstatement under those same terms. (ECF 133, p.15). The Court should grant Carter's request because RFP 17 seeks documents and communications that are directly relevant to Southwest's arguments and defenses, which the company placed in contention.

Carter RFP 17 also seeks information to prove her claim that Southwest treated recall supporters who signed last chance agreements less favorably than union supporters who signed these grievance settlements and were repeat offenders of Southwest policies. *Id*. at 14. This information shows whether Southwest gave some employees more favorable grievance settlements while presenting others, including union non-member objectors, with "last chance agreements" that made it easier to terminate them. *Id*. Southwest offered no evidence to support its contention that the request is overbroad or unduly burdensome, and it offered no evidence that this request involves more than a handful of employees.

3. **Southwest must produce responsive information in its possession.**

Contrary to Southwest's assertions, Carter does not need to identify any additional evidence as a precondition to Southwest's responding to her April 26, 2019 First Requests for Production and Interrogatories. (ECF 141, p.24). It is undisputed that Southwest possesses responsive information that it has not produced about other flight attendants' social media complaints, investigations,

4

discipline, grievance settlements, and accommodation requests. Southwest acknowledges that it investigated and disciplined other flight attendants for Social Media Policy violations, and that other flight attendants requested religious accommodations. (ECF 134-6, pp.2-5). Carter's motion asks the Court to order Southwest to produce the responsive information that the company has withheld for more than a year and a half while the parties have been trying to resolve numerous discovery disputes. (ECF 133, pp.5-7).

Contrary to Southwest's assertions, Carter is not using discovery to "troll for additional claims." (ECF 141, p.17). Carter's April 2019 requests seek information supporting her existing RLA retaliation claims and Title VII religious discrimination claims. (FAC ¶¶ 100, 116); (FAC ¶¶ 93-102) (RLA retaliation); (FAC ¶¶ 103-122) (religious discrimination). Carter seeks information that could support different theories of liability under her existing claims, and showing that Southwest is liable by demonstrating that one of its managers caused another decision-maker to take an adverse action (i.e., the cat's paw theory) is another way of proving her existing claims, not a new claim. (ECF 133, p.9).[4]

Southwest also argues that Carter's inability to identify specific evidence of discrimination and retaliation during her deposition should be grounds of depriving her of discovery she has been seeking since serving her April 2019 requests. (ECF 141, p.18). Carter had not completed discovery, and her inability to identify specific evidence during her deposition or show that certain

---

[4] Carter does not need to identify specific evidence showing that a Southwest manager with an improper motive caused another decision-maker to take an adverse action as a threshold condition of requesting this discovery. Carter alleges that Southwest retaliated against her because of her opposition to the union and her religious beliefs, views, and practices. (FAC ¶¶ 100, 116); (FAC ¶¶ 93-102) (RLA retaliation); (FAC ¶¶ 103-122) (religious discrimination). The Custodians were all involved in the decision-making process that culminated in Carter's termination, and their involvement shows that Carter's requested information is relevant to discriminatory animus and disparate treatment. (ECF 133, pp.2, 6).

Southwest managers discriminated or retaliated against her is no basis to deny her discovery relevant to proving disparate treatment and discriminatory animus that exists and that Southwest has withheld. (ECF 141, pp.17-18). Nor does it mean that the decision-makers do not have relevant information responsive to her discovery requests. *Id*.

Southwest also argues that Carter did not "attempt to tailor her requests to … persons revealed by way of [the November depositions]." (ECF 141, p.18). Yet, Carter had already served her Discovery Requests on Southwest a year and a half prior to the deposition. Carter should have had the opportunity to evaluate Southwest's written discovery responses, and to depose individuals based off that written discovery. With the impending November 30 discovery deadline, Carter had to conduct those depositions despite not having the information sought by this motion to compel.

While Southwest contends that Carter should not be allowed "further intrusion," the truth is that the company has withheld this critical information from the outset and never allowed Carter or her counsel access to it. (ECF 141, p.17). "Where a party has contributed to a plaintiff's confusion . . . it can hardly be heard to complain about continued discovery." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005). Southwest's delays and withholding of information has prevented her from completing discovery. (ECF 139, pp.5-12). For Southwest to use its own refusal to produce the discovery *before* depositions as an excuse to not produce it *at all* is patently absurd.

**B. RFP 19 seeks information about religious accommodation requests that is relevant to showing religious discrimination and disparate treatment of flight attendants outside of Carter's protected class.**

Despite Southwest's objections, Southwest should search for and produce the ACT Team's documents and communications about religious accommodation requests because they are relevant to showing how Southwest treated other flight attendants—inside and outside of Carter's protected

6

class—when they confronted the company with the need for accommodation of their religious beliefs, views, and practices. (ECF 141, pp.18-21). That information is significant to Carter's Title VII religious discrimination claims. (ECF 133, pp.15-16) (FAC ¶¶ 103-122).

Southwest argues that the company should not have to produce information about other flight attendants' religious accommodation requests because it never sought to provide Carter with an accommodation. (ECF 141, p.18). While Southwest refused to consider any form of religious accommodation for Carter, the company's treatment of other flight attendants' accommodation needs is relevant to showing that Southwest treated religious accommodation requests more favorably when made by flight attendants outside of Carter's protected class. *See, e.g. Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 (5th Cir. 2017). Carter's religious expression of her opposition to abortion conflicted with Southwest's enforcement of its policies. (FAC ¶¶ 58-61, 70). RFP 19 seeks information showing how Southwest responded when confronted with other flight attendants' religious discrimination issues and by conflicts between flight attendants' religious beliefs, views, and practices, and company policies.

Southwest also argues that if discovery is permissible it should be limited to "retroactive grants of reasonable accommodation" because, it says, Carter violated the Social Media Policy before obtaining a religious accommodation. (ECF 141, p.21). But Carter confronted Southwest with the need for a religious accommodation under the company's policies before the company terminated her. (FAC ¶¶ 58-61, 70).[5] Carter notified Southwest at her fact-finding hearing that she was a

---

[5] Southwest is mistaken that "[e]mployees asserting religious accommodation claims must show that they sought accommodation prior to violating an employee policy." (ECF 141, p.20). "A request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability." *EEOC v. Abercrombie & Fitch*, 135 S. Ct. 2028, 2033 (2016). *See also id*. at 2034 ("Title VII does not demand mere neutrality with regard to religious practices … Rather, it gives them favored treatment, affirmatively obligating employers not 'to fail or refuse to hire or discharge any individual … because of such individual's'

7

Christian Evangelical who communicates these messages because of her religious beliefs. Southwest knew of Carter's need for an accommodation before it fired her. (FAC ¶¶ 58-61). Therefore, Southwest's request to limit the discovery is unfounded.

## II. Carter seeks information essential to defending her rights under the Railway Labor Act and Title VII of the Civil Rights Act, and Southwest fails to demonstrate a valid burden with its production.

Carter's Discovery Requests are proportional given the speech, association, and religious rights at stake and Southwest's failure to demonstrate any real burden or expense with producing its information. The party resisting discovery bears the burden of showing that a discovery request relevant to a party's claim or defense is not proportional under Rule 26(b), considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 3:16-cv-2255-L, 2018 WL 3548866, at *6 (N.D. Tex. July 24, 2018).

Southwest ultimately concedes the importance of Carter's rights under the RLA and Title VII that are at stake in this action. *See* ECF 141, p.25. Carter's rights to refrain from union membership and oppose the union under the Railway Labor Act (FAC ¶¶ 93-102), and to exercise religious freedoms under Title VII of the Civil Rights Act, without fear of retaliation and coercion from the union and employer, are at stake. (FAC ¶¶ 103-122). *See also* ECF 133, p.17.

Despite acknowledging the importance of Carter's rights, Southwest argues that they "are routinely litigated with far less discovery." (ECF 141, p.25). Not only does Southwest fail to cite any legal authority or evidence supporting its point, but it has provided *no* discovery in response

---

'religious observance and practice.' Title VII requires otherwise-neutral policies to give way to the need for an accommodation.").

8

to the specific requests that are addressed by this motion. Moreover, the Fifth Circuit and this Court allow liberal discovery in cases where plaintiffs demonstrate pretext. *See Coughlin*, 946 F.2d at 1159; *Abrego v. Waste Mgmt. of Tex.,* Inc., 2012 WL 2402890, *1 (N.D. Tex. 2012). Carter is not propounding additional discovery requests on Southwest. Carter is seeking an order that Southwest comply with Carter's original April 26, 2019 Discovery Requests, which the parties had been meeting and conferring on as part of a larger effort to narrow discovery disputes.

Despite Southwest's assertions about the burdens and expenses associated with discovery, the company has not offered valid evidence to support its claims. (ECF 141, pp.22-25). Southwest fails to show the burden or expense associated with Carter's discovery requests. (ECF 141, p.25). A party resisting discovery must show how the requested discovery was unduly burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden in terms of time, expense, or procedure, or the objections are nothing more than boilerplate. *See Heller v. City of Dallas*, 303 F.R.D. 466, 490–91 (N.D. Tex. 2014) (citations omitted).

The Court should reject Southwest's conclusory assertions about costs and burdens. Southwest asserts that conducting a meaningful search would require Southwest to digest "millions of emails" from the custodians and pay "tens of thousands" of dollars in storage costs, but it fails to provide any evidence to support these claims. (ECF 141, pp.24-25). Southwest fails to show why self-collection or applying search terms would require Southwest to "digest millions of emails," or what that even means. *Id*. Southwest also fails to substantiate its assertion that the process would require it to pay "tens of thousands of dollars in storage costs." (ECF 141, pp.24-25). It fails to show why storage costs arise, or otherwise support the assertion with specific evidence as required under *Heller*. 303 F.R.D. at 490–91.

Having reversed itself once already on its demand for search terms and custodians, Southwest

now says that self-collection for Carter's "proposed second, much more granular effort likely will not be possible." (ECF 141, p.24, 24 n.10). Carter's April 26, 2019 Discovery Requests are her "first effort," not a "proposed second…effort." *Id*. Southwest does not explain why the company cannot produce the information Carter seeks, which is in its possession, custody, and control, and mostly kept in Southwest's computer systems.

Southwest also contends that it would "have to craft reasonable search terms, and review the results for responsiveness to the disputed requests, thereby incurring extraordinary attorneys' fee expenses." (ECF 141 p.25). But Carter supplied the company with search terms, upon which the parties had generally agreed. *See e.g.*, ECF 134-6, p.21. Southwest's delays and last minute reversal on the discovery methodology caused the purported issues it raises here.[6] Carter offered two viable options for Southwest to retrieve this information (self-collection and search terms), and Southwest has failed to carry its burden of proof to establish that neither are viable.[7]

## CONCLUSION

For the foregoing reasons, the Court should grant Carter's Motion to Compel Discovery.

Dated: December 9, 2020

Respectfully submitted,

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996

---

[6] Contrary to Southwest's characterizations, Carter never refused to confer with the company about her April 26, 2019 Discovery Requests. (ECF 141, pp.9, 10 n.5); (ECF 134-6, pp.40-44). Carter's and Southwest's correspondence shows that not only did they discuss these issues by email, but they also conducted a conference call on these matters when Southwest first raised its objections. (ECF 134-6, pp.40-41). Southwest demanded ESI search term protocols from the outset. (ECF 134-6, p.43) (Southwest requesting that Carter provide them with "a proposed list of custodians and search terms that will be sufficient to adequately address [Carter's] requests"). Furthermore, Southwest continued demanding search terms and custodians as a condition of producing documents. (ECF 133, p.5).

[7] Southwest also asserts that Carter's requests are disproportionate in light of "the volume of documents produced to date," (ECF 141, p.25), but those documents are irrelevant to what Carter seeks in this motion. Southwest's purported compliance with some discovery requests does not excuse it from failing to comply with other requests.

10

*mbg@nrtw.org*
Jeffrey D. Jennings (*admitted pro hac vice*)
Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

<u>s/ Jason E. Winford (*with permission*)</u>
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
 Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

*Attorneys for Plaintiff Charlene Carter*

## Certificate of Service

    I hereby certify that on December 9, 2020, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                    s/ Matthew B. Gilliam