UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>          Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>          Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S REPLY TO SOUTHWEST'S OPPOSITION TO EXTENDING THE TIME TO COMPLETE FACT DISCOVERY** |

## INTRODUCTION

The Court has good reason to extend the fact discovery deadline to March 5, 2021. Contrary to Southwest's characterizations, it prevented Carter from completing discovery by delaying document production until October 30, 2020, when it could have engaged in self-collection as early as May 2019. Carter seeks that Southwest produce or address other important documents and information, including:

- A privilege log for Southwest's privilege claims, which Southwest has not produced and which Carter should have the opportunity to review;

- Information about Southwest documents concerning the discipline and investigation of flight attendants under its Social Media Policies in cases involving Carter's supervisor, Ed Schneider;

- Information about Southwest documents kept on custodians' personal electronic devices; and

- Follow-up discovery, such as requests for admission

1

Southwest also failed to demonstrate any prejudice because it will not incur any expenses that it would not have already incurred but for its discovery delays. Thus, the Court should grant Carter's request to extend the time to complete fact discovery.

## REPLY STATEMENT OF FACTS

As a preliminary matter, Carter must address Southwest's attempts to spin its demands for E-discovery protocols and its last minute reversal of that position. Contrary to its representations,[1] Southwest demanded ESI search term protocols from the outset. (ECF 140-2, p.61) (requesting that Carter provide Southwest "a proposed list of custodians and search terms that will be sufficient to adequately address [Carter's] requests").

Southwest did not merely "suggest[] that Plaintiff limit the scope of [her] requests." (ECF 147, p.3). Southwest's May 2019 correspondence with Carter shows the company refusing to engage in standard self-collection procedures and demanding that Carter propose search terms and custodians for her RFPs and Interrogatories.[2] (ECF 140-2, pp.58-62). Southwest demanded that Carter agree to a "preliminary 60-day extension" to reach an agreement on search terms and custodians. (ECF 140-2, p.61). The parties' initial conversations about this included:

- Southwest asserting that "[i]n order to efficiently identify and review potentially relevant documents and information, we believe the parties should agree upon a list of custodians and search terms. Accordingly, we request that you provide us with a proposed list of custodians and search terms that will be sufficient to adequately address your requests." (ECF 140-2, p.61);

- Southwest's counsel stating: "[m]y proposal is to identify custodians/terms for email searches for e-discovery." (ECF 140-2, p.60)

- Southwest asserting that it would be "more efficient for counsel to agree on search parameters for e-discovery" and suggesting that self-collection would result in multiple searches and "fighting after the fact"); (ECF 140-2, p.60)

---

[1] (ECF 147, pp.2-3, 6).
[2] Southwest also denies that it demanded ESI search protocols, but then it contradicts itself by defending its demand for search terms and custodians. (ECF 147, pp.3, 6).

- Southwest's counsel, Michele Gehrke, proposing that she would provide the company with "initial search terms, custodians, and dates," and assuring Carter's counsel that she would obtain information about "how many hits are generated" (ECF 140-2, pp.58-59).

Also, Southwest's claim that Carter delayed in conducting discovery after her case was filed is wrong. After Carter filed her First Amended Complaint in September 2017, Southwest and Local 556 filed motions to dismiss. (ECF 9); (ECF 16, 17, 28-36). This Court dismissed those motions without prejudice on May 21, 2018, after Carter told the Court she needed to add her Title VII religious discrimination claim given that she had recently received a right to sue letter form the EEOC. (ECF 45). Southwest and Local 556 then filed another round of motions to dismiss. (ECF 48-58). This Court did not decide those motions until February 1, 2019, and issued its original scheduling order the same day. (ECF 67, 69). Shortly thereafter Carter commenced discovery, and served Southwest with discovery requests on April 26, 2019. As Carter previously demonstrated and warned back in May 2019, it was Southwest's ESI demands and other discovery delays that forced Carter to negotiate complicated ESI discovery protocols and that unnecessarily prolonged this litigation. (ECF 140-2, p.60); (ECF 139, p.8).

## ARGUMENT AND AUTHORITIES

**I. The Court has good cause to extend the deadline for Carter to complete fact discovery because of Southwest's delays and the importance of allowing Carter to complete discovery on the issues raised.**

**A. Carter could not have completed discovery by November 30 because Southwest's ESI demands and last minute shift to self-collection prevented Carter from timely receiving documents, completing follow-up discovery, and addressing discovery deficiencies.**

Contrary to Southwest's claims,[3] Carter worked diligently but Southwest's actions prevented Carter from completing discovery before the November 30, 2020 fact discovery deadline.

---

[3] (ECF 147, p.6).

3

1. Carter could not complete fact discovery before the November 30, 2020 deadline because Southwest withheld documents necessary to conducting depositions until October 30-31, 2020. (ECF 139, p.11). As Carter stated in the December 13, 2019 Motion to Extend Discovery Deadlines, substantial completion of written discovery and production of electronic discovery was necessary to conduct depositions effectively and efficiently. (ECF 86, p.3). Carter had told Southwest that she would need more time after Southwest produced documents to conduct follow-up discovery, including depositions and written discovery. *Id*. The parties' joint motion recognized: "Once the parties resolve [e-discovery issues] and produce documents, they will anticipate needing more time to schedule and take more than ten depositions." *Id*. at 2. Given that Southwest would not have permitted a second deposition after the company produced documents, it can't argue that Carter should have scheduled the company's deposition sooner.

2. Southwest prevented Carter from conducting discovery by delaying document production until October 30-31, 2020, when Southwest could have engaged in self-collection from the outset, and provided Carter's requested information a year earlier. Instead, Southwest demanded that Carter formulate search terms and reach agreement on an ESI discovery protocol. (ECF 140-2, pp.57-62). Carter made her objections to ESI discovery protocols known to Southwest from the outset. *Id*. at 60-61. But the company rejected Carter's preference for self-collection and never indicated that it would back down from its ESI demands until a month before the discovery deadline (October 2020). *Id*. at 57-60.

Contrary to Southwest's characterizations,[4] Carter could not simply file a motion to compel. "The Federal Rules expressly require counsel to meet and confer on 'any issues about disclosure,

---

[4] (ECF 147, p.6) (arguing that "[a] diligent party attempts to compel discovery through the presiding court after opposing counsel unjustly refuses to provide responses") (citation omitted).

4

discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" *Pyle v. Selective Ins. Co. of Amer.*, 2016 WL 5661749, at *2, No. 2:16-cv-335, (W.D. Pa. Sept. 30, 2016) (citing Fed. R. Civ. P. 26(f)(3)(C). "Among the items about which the court expects counsel to reach practical agreement without the court having to micromanage e-discovery are search terms, date ranges, key players and the like." *Pyle*, 2016 WL 5661749, at *2. (internal citations and punctuation omitted).

In *Pyle*, the Court granted defendant's motion seeking to compel plaintiff to confer and reach agreement on search terms. *Id*. The defendant had asked plaintiff to agree with defendant on appropriate electronic search terms to be used to locate relevant documents. *Id*. at **1-2. When plaintiff's counsel refused, the defendant filed a motion to compel, and plaintiff objected, arguing that it cannot be forced to agree to search terms. *Id*. at 2. The Court criticized the plaintiff's resistance to negotiating search terms, ruling that the plaintiff must comply with the defendant's request because "'it is well settled by now that electronic discovery should be a party-driven process.'" *Id*. (quoting *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 109 (E.D. Pa. 2010).

Despite her objections to ESI, Carter attempted to accommodate Southwest's demands for ESI, recognizing that the parties have a duty to work to resolve such disputes before seeking court intervention. Thus, when Southwest refused to engage in self-collection, it forced Carter to negotiate search terms and custodians. Carter had an obligation to negotiate ESI protocols in good faith because Southwest represented that such parameters were necessary. Carter could not simply drag the Court into refereeing her objections to Southwest's demand for ESI.

Contrary to Southwest's characterizations, Carter never refused to confer with the company about her April 26, 2019 Discovery Requests, or search terms and custodians. (ECF 147, p.3); (ECF 140-2, pp.58-62). Nor did Carter "refuse" to limit discovery requests in May 2019. (ECF

5

147, p.3). Carter objected to Southwest's insistence on adopting ESI discovery protocols without need or justification. (ECF 140-2, pp.60-61). Carter's and Southwest's correspondence shows that not only did they discuss these issues by email, but Carter also began meeting and conferring with Southwest by telephone within days after Southwest first raised its objections. (ECF 140-2, pp.58-59). Southwest also takes issue with Carter not raising her objections to its ESI demands at subsequent points, but she had already stated her position clearly in May 2019. Rather than continually objecting to Southwest's ESI demands, Carter worked in good faith as the Federal Rules required. (ECF 147, p.7).

After negotiating search terms and custodians for a year and a half, Southwest changed its position in October 2020, and produced documents on October 30-31, 2020, the Friday before Southwest's Monday, November 2 Rule 30(b)(6) deposition, and one month before the discovery deadline. Southwest left Carter with only a month to conduct follow-up discovery related to documents she first requested on April 26, 2019. (ECF 139, pp.10-11). But for Southwest's ESI demands in May 2019, Carter could have obtained document production within 30 days of her original April 26, 2019 request, leaving her with the time she needed to conduct depositions and follow-up discovery. Carter could simply not complete discovery within a month after receiving the significant portion of document production.

Southwest's last minute reversal and sudden willingness to engage in self-collection shows that its May 2019 demand for ESI protocols was ill-conceived. Southwest failed to properly evaluate whether ESI was necessary, and its insistence on dragging Carter into complicated e-discovery discussions delayed document production. This effectively penalized Carter for complying with obligations to negotiate ESI protocols in good faith, and prevented Carter from

utilizing the time available to complete discovery. Additionally, Southwest's baseless motion for sanctions stalled discovery negotiations and consumed attorney resources during this last summer.

Despite Southwest's delays and deficiencies, Carter diligently acted to schedule and complete depositions and other discovery. Rather than filing this motion in October or serving discovery requests that Southwest could not respond to before the deadline, Carter believed that the proper course was to focus her efforts on completing as much discovery in October and November as possible. Carter waited, in order to conduct November depositions to complete as much discovery as possible before asking the Court for more time. Carter filed this motion after conducting Defendants' depositions and attempting to address other discovery deficiencies given the potential impact those factors might have on the scope of this motion.

Thus, Southwest's actions prevented Carter from completing fact discovery before the November 30 deadline. Carter should not be penalized for attempting to resolve her discovery disputes with Southwest in good faith as required by the Federal Rules. The Court should grant Carter's request to extend the time to complete fact discovery.

**B. Extending the fact discovery deadline is important and necessary relief so that Carter can obtain and review Southwest's privilege log, and address other discovery deficiency issues that Carter raised after its late October 2020 document production.**

Contrary to Southwest's characterizations, [5] Carter demonstrated that a fact-discovery extension is important in this case to obtain and review Southwest's privilege log, and address other discovery deficiency issues that Carter raised with the company about its late October 2020 production. (ECF 139, pp.14-16).

Completing discovery and conducting follow-up discovery is important relief. *See Klein v. Fed. Ins. Co.*, 2015 WL 6561239, at *3 (N.D. Tex. Oct. 29, 2015) (discovery regarding the

---

[5] (ECF 147, pp.8-9).

elements of plaintiff's claims is important relief); *Cartier v. Egana of Switzerland (America) Corp.*, No. 3:08-CV-0001-D, 2009 WL 614820, at *5 (N.D. Tex. Mar. 11, 2009) (finding that follow-up discovery is important relief where it was necessary "to obtain all information that falls within the scope of permissible discovery").

1. Southwest has not produced a privilege log for documents redacted or withheld, which it said it would do. (ECF 140-2, p.1). "When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . [provide a privilege log that] describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 n.3 (5th Cir. 2017). Carter explained that the Court should grant an extension because Southwest has not produced its privilege log, and Carter needs an opportunity to review documents that are redacted or withheld once the privilege log is produced. (ECF 139, p.16). Carter asked Southwest to produce a privilege log for documents it was withholding under an assertion of privilege, but it has never done so. (ECF 140-2, p.1). Since 2019, Southwest has continually assured Carter that it would provide a privilege once privileged/redacted documents were produced. *Id*. at 27, 33. Carter again requested that Southwest produce its privilege log on November 20, 2020, but Southwest still has not produced any log. *Id*. at 1.

2. Contrary to Southwest's characterizations, Carter addressed discovery deficiency issues to the company's counsel, but the company did not fully-address the questions she raised. (ECF 147, pp.1-2, 8-9). Carter's counsel pointed out that Southwest agreed to produce other flight attendant social media discipline involving Carter supervisor, Ed Schneider, but that Southwest did not appear to produce any documents about flight attendant complaints or discipline under the Social

Media Policies. (ECF 140-2, p.1). Southwest has disciplined and investigated other employees under the company's social media policy, including Ed Schneider and other decision-makers. *Id*. But SWA has not produced those responsive documents in its possession. Without such documents, Carter cannot evaluate disparate treatment and discriminatory animus, which are issues important to Carter's Railway Labor Act Retaliation and Title VII religious discrimination claims.

3. Carter also raised questions with Southwest about whether its custodians produced documents kept on their personal electronic devices, such as personal email accounts and cell phone text messages. (ECF 139, p.16); (ECF 140-2, p.1). For example, Carter pointed out to Southwest that Local 556 had produced documents that were sent to Southwest Senior Vice President Sonya Lacore's personal email address that would have been responsive to Carter's requests. (ECF 140-2, p.1). Southwest responded that no custodian reported they were still in possession of responsive information on their personal devices, raising questions as to whether the custodians previously had responsive information, or whether they possess responsive information on their personal email accounts.

4. Despite Southwest's contentions,[6] Carter could not serve follow-up discovery (e.g., requests for admission) after Southwest's October 30 and 31 document production, because such discovery must be served early enough to allow responses and resolve objections. Southwest argues that conducting follow-up discovery is not important relief because Carter had the opportunity to depose the company. But Southwest deprived Carter of the opportunity to conduct follow-up written discovery after receiving documents and conducting depositions, which she would have had if Southwest had not delayed until October 30-31, 2020, to serve responsive documents.

---

[6] (ECF 147, p.7).

## II. Southwest fails to demonstrate any prejudice because it will not incur any expenses that it would not have already incurred but for its delays.

Contrary to Southwest's conclusory objections,[7] extending fact discovery will not prejudice Southwest. Undue expense and undue delay are two forms of potential prejudice. *Cartier*, 2009 WL 614820, at *6. Expenses that would have been incurred by the responding party if the propounding party had not been prevented from timely completing discovery is not prejudicial. *See Cartier*, 2009 WL 614820, at *6. Allowing Carter to conduct follow-up discovery during a brief extension period will not cause Southwest harm because it would have incurred those costs anyways had its delays not prevented Carter from completing her discovery before the original deadline.

Nor is there any undue delay because Carter's extension would not disturb the rest of the current schedule (e.g., the dispositive motion deadline or the trial date). *See also Cartier*, 2009 WL 614820, at *6 (finding no potential prejudice even where it was necessary to continue the trial date to enable parties to complete additional discovery and dispositive and other motions). Southwest fails to show how it would be prejudiced by granting what will likely amount to a one or two month extension.

## CONCLUSION

For the foregoing reasons, the Court should grant Carter's Motion to Extend the Deadline to Complete Fact Discovery.

Dated: January 4, 2021            Respectfully submitted,

                                             s/ Matthew B. Gilliam
                                             Mathew B. Gilliam (*admitted pro hac vice*)
                                             New York Bar No. 5005996
                                             *mbg@nrtw.org*
                                             Jeffrey D. Jennings (*admitted pro hac vice*)

---

[7] (ECF 147, pp.9-10).

Virginia Bar No. 87667
*jdj@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

<u>s/ Jason E. Winford (*with permission*)</u>
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
 Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

*Attorneys for Plaintiff Charlene Carter*

**Certificate of Service**

    I hereby certify that on January 4, 2021, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                              s/ Matthew B. Gilliam