UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>        Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>        Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S REPLY TO LOCAL 556'S OPPOSITION TO EXTENDING THE TIME TO COMPLETE FACT DISCOVERY** |

## INTRODUCTION

Contrary to Local 556's objections, the Court has good reason to extend the fact discovery deadline to March 5, 2021, because the union prevented Carter from completing discovery. Carter seeks important documents and discovery that Local 556 failed to produce, and that was not available through depositions, including:

- Union disciplinary investigation reports related to Local 556's November 23, 2020 production;

- Information related to Local 556's November 16, 2020 production of communications from union officials' personal electronic devices;

- Information related to Local 556's privilege log entry for a memo distributed to union membership; and

- Follow-up discovery, such as requests for admission

Local 556 also failed to honor its agreement to run search terms for Carter RFPs 21 and 22. Local 556's discovery delays forced Carter to file two motions to compel and seek extensions, and deprived her of crucial documents until late November 2020. Local 556 failed to demonstrate any prejudice because it will not incur any expenses that it would not have already incurred but for its

1

delays and repeated failures to comply with the federal rules. Thus, the Court should grant Carter's request to extend the time to complete fact discovery.

## REPLY STATEMENT OF FACTS

Carter must correct several false and misleading assertions made by Local 556. First, Local 556 asserts that Carter failed to provide a computation of each category of damages, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). (ECF 148, p.2). But Carter did, in fact, give Local 556 the computation of damages in her March 29, 2019 initial disclosures.

Second, Local 556 also asserts that Carter "consistently rebuk[ed] mediation overtures." *Id*. Carter has never rejected any "mediation overture." This Court has already ordered the parties to schedule and complete mediation 90 days before trial (ECF 68), but no party has ever asked Carter to mediate the case prior to the close of discovery. Local 556's assertion is also wrong because the union has never made a settlement offer.[1]

Third, Local 556 misleadingly states that Carter did not "provide [her] own document production under Fed. R. Civ. P. 26(a)(1)(A)(ii) until November 30, 2020." (ECF 148, p.2). As stated, Carter served Local 556 with her Rule 26(a)(1)(A)(ii) disclosures on March 29, 2019, giving a description of the categories of documents in her possession. But Local 556 did not serve Carter with any requests for document production until October 27, 2020, approximately one month prior to the close of discovery. Carter timely served responses and documents on November

---

[1] After Local 556 made these same false assertions in its response to Carter's Renewed Motion to Compel, Carter's counsel scheduled a call with the union's attorneys on or about October 7, 2020, and explained their confusion with the union's assertion given that the Court has ordered mediation and the union has never made any settlement offer. Carter's counsel explained Carter's settlement position and reminded Local 556's counsel that they would inform their client of any settlement offer the union wished to make.

30, 2020, after Local 556 granted her a four-day extension on account of the Thanksgiving holiday weekend.

Fourth, although Local 556 suggests that Carter is attempting to extend discovery deadlines "for a fourth time," this fails to capture the procedural background. (ECF 148, pp.4, 6). After Carter filed her August 28, 2017 Complaint, Southwest and Local 556 filed two rounds of motions to dismiss. (ECF 16, 17, 28-36, 48-58). Pursuant to the Court's request during the December 14, 2018 hearing, the parties filed a Joint Proposed Revised Scheduling order. (ECF 66). This Court decided the motions to dismiss, and issued a revised scheduling order on February 1, 2019. (ECF 67, 69). Carter then served Local 556 with discovery requests on April 26, 2019. As Carter previously demonstrated, Local 556's dilatory responses, meritless objections, and other discovery delays, necessitated Carter's two motions to compel, the March 4, 2020 Scheduling Order revisions, and this request. (ECF 93, pp.8-12); (ECF 121, pp.5-8); (ECF 139, pp.5-8).

## ARGUMENT AND AUTHORITIES

**I. The Court has good reason to extend the fact discovery deadlines because of Local 556's delays, and persistent noncompliance with the federal rules and other discovery arrangements, and because Carter seeks important relief.**

**A. Carter seeks documents and discovery that Local 556 failed to produce, and that was not available through depositions.**

1. Contrary to Local 556's objections,[2] the Court has good reason to grant Carter's request. The extension to complete fact discovery is important because additional time is necessary to obtain union disciplinary investigation reports related to Local 556's November 23, 2020 document production. Local 556's disciplinary investigation reports were responsive to Carter's April 26, 2019 discovery requests. (ECF 94-1, pp.8-9, ¶¶9, 10). But Local 556 withheld the

---

[2] (ECF 148, p.4).

information until November 23, 2020, under a meritless claim of attorney-client privilege. (ECF 139, pp.12-13). Carter never saw this evidence until November 23, 2020, after the Court ordered Local 556 to revise its privilege log for a second time, and after Carter further questioned Local 556 about its revised privilege log.[3] *Id*. at 13; (ECF 140-1, p.1).

Granting an extension of time to complete this discovery is also important because, contrary to the union's characterizations, Carter could not get the information from Local 556's 30(b)(6) deposition. (ECF 148, p.4). Carter's counsel did, in fact, depose Local 556's designated witness about these documents during the deposition, but those efforts were unsuccessful. Local 556's designated witness could not answer Carter counsel's questions about the union disciplinary investigation reports. Local 556 should have produced all of this information prior to the November 30 Discovery Deadline, as it is responsive to Carter's requests and readily accessible in the union's files.

Despite Carter's requests, neither Local 556 nor Southwest have ever identified the specific flight attendants who were subject to discipline under the Social Media Policies, and either disciplined or not disciplined. The November 23, 2020 disciplinary investigation reports identify the specific flight attendants who, like Carter, were investigated for Social Media Policy violations, and were either disciplined or not disciplined. This information is essential to Carter's Railway Labor Act retaliation claims because, without it, Carter and the Court cannot evaluate disparate treatment and discriminatory animus (e.g., whether union opponents were treated differently from union supporters).

---

[3] After Carter questioned Local 556's privilege claim on or about October 7, 2020, the union ultimately agreed that these documents were not privileged, but did not produce them until November 23. (ECF 140-1, p.1).

4

2. Carter also seeks to conduct follow-up discovery regarding responsive information that the Court ordered the union to retrieve from its officials' personal electronic devices by November 13, 2020,[4] including from former Local 556 President Audrey Stone who has admitted that she has such information in her possession. (ECF 139, p.13) (ECF 121, p.10). Contrary to Local 556's claims that Carter's counsel could have deposed the union's designated witness about its efforts to collect such information, the union's counsel asserted attorney-client privilege, and instructed the witness not to answer when Carter's counsel deposed him. Carter seeks to serve written discovery to follow up on these issues because the union would not address it during the deposition.

3. Local 556's arguments also fail to address the union's privilege entry for "Memo 022-035." Carter's counsel met with the union's counsel on or about October 7, 2020 (after the union served its revised privilege log pursuant to the Court's September 23, 2020 Order), and asked how the union could claim attorney-client privilege for a memo disseminated to the union's entire membership. When Local 556 produced the November 23, 2020 documents that it had withheld under a claim of attorney-client privilege, the union failed to address this specific privilege log entry. (ECF 140-1, pp.1-2). Carter had asked Local 556 to address the issue again on November 17, 2020, but the union did not respond prior to the close of discovery. (ECF 139, p.13); (ECF 140-1, p.2). Nor did Local 556 address this issue in its opposition to Carter's motion to extend discovery.

4. Local 556 argues that it is contradictory for Carter to ask for an extension when she previously argued that extending the discovery deadlines would unnecessarily delay proceedings. (ECF 148, p.2). But Carter had assumed that, especially with the Court's order extending time to

---

[4] Local 556 did not produce this information until November 16, 2020, after the Court's deadline. (ECF 139, p.8); (ECF 131, p.3).

complete fact discovery, that Local 556 would work in good faith to complete discovery. But Local 556 unnecessarily delayed proceedings by its actions in discovery, and failed to comply with its obligations under the federal rules. Thus, it is proper to extend the deadline to complete fact discovery. Under the circumstances, granting a brief extension to conduct follow-up discovery would not alter the dispositive motion deadline, or otherwise impact the case schedule.

**B. Local 556 failed to honor its agreement to run search terms for Carter RFPs 21 and 22.**

1. The Court also has good reason to extend fact discovery to March 5, 2021, because Local 556 refuses to honor its August 2020 agreement to run search terms to resolve disputes over RFPs 21 and 22. (ECF 139, pp.7-8, 14). Local 556 repeatedly ignored Carter's subsequent requests to address this issue and its representations to the Court that it would run search terms. *Id*. at 7, 14. Despite its objections to searching for responsive discovery now, the fact remains that Local 556 already agreed in August 2020 to run search terms to resolve these disputes. *Id*. Carter excluded that matter from her August 21, 2020 motion to compel precisely because she was relying on the union's agreement to run those search terms and produce its responsive information.

Local 556 now seeks to escape commitments it made to Carter and the Court to search for responsive information with the absurd argument that Carter's Title VII religious discrimination claims are "moot and irrelevant." (ECF 148, pp.1-2, 4-6). Local 556 incorrectly asserts that Carter's deposition testimony "confirms that the Union did not discriminate … based on her religious beliefs." *Id*. at 4.

Local 556 cites deposition testimony where Carter stated that she was "dissenting against what they were doing as the union." *Id*. at 5. But Carter's Complaint and deposition testimony clearly show that "what they were doing as a union" refers to Local 556's and President Audrey Stone's support for the Women's March and abortion. (ECF 80, ¶¶ 37-49, 104-122). Carter believed that

6

President Stone attempted to get her fired because Carter supported the recall (i.e., removal of union executive board officers, including Stone), *and* because of Carter's religious views about abortion, and the union's support for abortion at the Women's March. (ECF 80, ¶¶ 79-102, 104-122). During the deposition, Local 556's counsel simply asked Carter if she believed that Stone tried to get her fired from Southwest because she was a nonmember objector supporting the recall effort, and Carter said yes because that was indeed one of the reasons. (ECF 148, p.5). But Carter's complaint and deposition testimony also show that her nonmember objector status with the union was not the only reason that Carter believes she was fired. *Id*.; (ECF 80, ¶¶ 37-49, 104-122). Moreover, Carter's legal claim does not depend on whether Carter *thought* that the union fired her because of her religious beliefs. Thus, Local 556's argument that Carter's Title VII claims are moot and irrelevant is a red herring.

2. Local 556 also objects to honoring its agreement to run search terms based on an argument that Carter never requested a religious accommodation from the union. (ECF 148, p.5). As stated, Local 556 already agreed to run Carter's search terms to resolve this dispute. (ECF 139, pp.7-8, 14). Furthermore, whether Carter requested a religious accommodation from the union "is not a necessary condition of liability." *EEOC v. Abercrombie & Fitch*, 135 S. Ct. 2028, 2033 (2016). Carter's RFP 22 seeks Local 556's responsive information about how the union responded to employees' requests for assistance with religious accommodations. She needs this information so that she can evaluate whether the union exhibited discriminatory animus towards other flight attendants who sought the union's representation with complaints about company policies because

7

that would be probative evidence of religious discrimination in her case.[5] (ECF 94-1, p.12) (ECF 80, ¶¶ 116-118).

## II. Local 556 fails to demonstrate any prejudice because it will not incur any expenses that it would not have already incurred but for its delays and repeated failures to comply with the federal rules.

Contrary to Local 556's conclusory assertions,[6] extending fact discovery will not prejudice the union. Undue expense and undue delay are two forms of potential prejudice. *See Cartier v. Egana of Switzerland (America) Corp.*, No. 3:08-CV-0001-D, 2009 WL 614820, at *6 (N.D. Tex. Mar. 11, 2009). Expenses that would have been incurred by the responding party if the propounding party had not been prevented from timely completing discovery is not prejudicial. *Id*. at *6. Despite Local 556's assertion that it will "incur additional costs . . . related to document production, [and] responding to additional discovery requests,"[7] those costs are not incremental. Whatever limited costs Local 556 might incur in discovery conducted during the next one to two months, those costs are not incremental. Rather, they are costs that Local 556 would have incurred had the union complied with the federal rules and had its delays not prevented Carter from completing her discovery before the original deadline. Local 556 fails to identify any incremental costs to extending the time to complete discovery that would be prejudicial to its interests.

Nor is there any undue delay because Carter's extension would not disturb the rest of the current schedule (e.g., the dispositive motion deadline or the trial date). *See also Cartier*, 2009 WL 614820, at *6 (finding no potential prejudice even where it was necessary to continue the trial date to enable parties to complete additional discovery and dispositive and other motions). Local 556

---

[5] Carter's RFP 21 asks for union information about flight attendant complaints concerning their religious beliefs, views, and practices, so the union's objection about "accommodations" is irrelevant to that request. (ECF 94-1, p.11).
[6] (ECF 148, p.6).
[7] (ECF 148, p.6).

fails to show how it would be prejudiced by granting what will likely amount to one to two additional months to complete discovery.

Contrary to Local 556's characterizations,[8] it is the union's failure to respond to discovery requests and comply with the federal rules that has driven up litigation costs. Local 556's noncompliance forced Carter to file two motions to compel and to seek extensions, and it has prevented Carter from obtaining discovery she began seeking in April 2019, shortly after this Court issued its original scheduling order. Carter should not be penalized for attempting to resolve her discovery disputes with Local 556 in good faith as the federal rules require. Thus, the Court should grant Carter's request to extend the time to complete fact discovery.

## CONCLUSION

For the foregoing reasons, the Court should grant Carter's Motion to Extend the Deadline to Complete Fact Discovery.

Dated: January 4, 2021                             Respectfully submitted,

                                                    s/ Matthew B. Gilliam
                                                    Mathew B. Gilliam (*admitted pro hac vice*)
                                                    New York Bar No. 5005996
                                                    *mbg@nrtw.org*
                                                    Jeffrey D. Jennings (*admitted pro hac vice*)
                                                    Virginia Bar No. 87667
                                                    *jdj@nrtw.org*
                                                    c/o National Right to Work Legal Defense
                                                    Foundation, Inc.
                                                    8001 Braddock Road, Suite 600
                                                    Springfield, Virginia 22160
                                                    Tel: 703-321-8510
                                                    Fax: 703-321-9319

                                                    s/ Jason E. Winford (*with permission*)
                                                    David E. Watkins
                                                    Texas Bar No. 20922000
                                                    *dwatkins@jenkinswatkins.com*

---

[8] (ECF 148, p.2).

>Jason E. Winford
>Texas Bar No. 00788693
>*jwinford@jenkinswatkins.com*
>JENKINS & WATKINS, P.C.
>4300 MacArthur Avenue, Suite 165
> Dallas, Texas 75209
>Tel: 214-378-6675
>Fax: 214-378-6680
>
>*Attorneys for Plaintiff Charlene Carter*

**Certificate of Service**

I hereby certify that on January 4, 2021, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam