Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER                    )
                                   )
                                   ) CIVIL ACTION NO.
VS.                                ) 3:17-CV-02278-X
                                   )
SOUTHWEST AIRLINES CO., AND        )
TRANSPORT WORKERS UNION OF         )
AMERICA, LOCAL 556                 )

------------------------------------

CONFIDENTIAL
TWU LOCAL 556 30(b)(6)
ORAL DEPOSITION OF
JOHN PARROTT
NOVEMBER 30, 2020

------------------------------------

ANSWERS AND DEPOSITION OF JOHN PARROTT, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on NOVEMBER 30, 2020, at 1:52 p.m., before CHARIS M. HENDRICK, a Certified Shorthand Reporter in and for the State of Texas, witness located in Portland, Oregon, pursuant to the Federal Rules of Civil Procedure, the current emergency order regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto.

Page 22

1    A.  Oh, yeah, this brings up -- this is an old
2    system that we use -- this is Microsoft Access;
3    this was how we transmitted pulls back in the day
4    and it -- I might have a nightmare over it tonight.
5    Q.  Well, when you say this transmitted pulls,
6    what does that mean?
7    A.  So to have -- so to remove flight
8    attendants from their line of flying, we had a way
9    to transmit -- between the union and Southwest --
10   these are the flight attendants that we need to do
11   union business.  So this was the system that
12   repairs -- excuse me -- prepares the reports that
13   we submitted over to Southwest to pull them from
14   their flying schedule.
15   Q.  Okay.  And do you know if pages that ended
16   in 9489 through 9492 are all pulls that Local 556
17   transmitted to Southwest in January of 2017?
18   A.  So, yes, these reflect, accurately, pulls
19   that we would have submitted over to Southwest
20   Airlines, yes.
21   Q.  Okay.  And do you know if those pull
22   transmittals are automatically granted by
23   Southwest?
24   A.  They are, yes.
25   Q.  Okay.  And is that required under the

Page 23

1  collective bargaining agreement?
2       A.  There is language in the collective
3  bargaining agreement that allows the union to have
4  members perform union activities, so, yes.
5       Q.  Okay.  And do you know if any other flight
6  attendants were pulled apart from the ones that are
7  in these pull transmittals?
8       A.  I am thinking through how you asked that
9  question.  Can you -- can you ask it another way?
10      Q.  Yeah.  So do you know if any other flight
11 attendants were pulled for the January 2017 women's
12 march than the ones who are identified in one of
13 these screenshots?
14      A.  I believe this is a complete picture of
15 the flight attendants that were pulled from flying
16 to attend the working women's committee meeting in
17 January.
18      Q.  Okay.  Now, if you look at -- it's
19 probably on several of these, but on 9490, for
20 instance, the one that ends TWU 556-9490, there is
21 a -- an approved by field; do you see that?
22      A.  Yes, I do.
23      Q.  And I -- I believe it says, approved by
24 Parrott/Stone; is that correct?
25      A.  Yes, sir.

1  same thing.  Yes.

2       A.   Okay.

3       Q.   And what -- what does pull three-day
4  reserve mean?

5       A.   So that box that you are describing is
6  we're giving information to Southwest on what we're
7  actually asking for.  So in that box, we're saying
8  that we're pulling a three-day reserve block that
9  is on the flight attendant's screen; and to place
10 the union bar as indicated, which, on the left
11 side, you will see that we placed a -- so paid
12 trips is for zero.  So we pulled a reserve block
13 without pay for this flight attendant to attend the
14 working women's committee meeting.

15      Q.   Okay.  So does that mean that the flight
16 attendant is not paid by Southwest for that time?

17      A.   That's correct.  Nor TWU 556; they were
18 not paid at all.

19      Q.   Okay.  And when you say TWU 556 was not
20 paid at all, who -- who would they be paid by if a
21 flight attendant is pulled?

22      A.   I am just saying that we -- we are
23 generating no pay off of this pull.  It's a pull
24 without pay.  So there is just no pay associated
25 with this pull.  Sorry, I didn't answer that

Page 26

1  correctly.
2      Q.  Okay.  And did you say you are asking to
3  place the union bar as indicated?
4      A.  Correct.  So still staying on that
5  graphic, if you look at the top in the middle
6  portion, it says -- and I can't make it -- the top
7  line is -- I know what it is; it is date of
8  something, but 1/19/2017.  We are placing the bar
9  there and we're going for three days.  The return
10 to work is one day after the date in question.  So
11 if the bar ran January 19th, 20th and 21st, that
12 says 1/19/2017 and 1/22, that tells Southwest I
13 only want to place a three-day bar on their screen.
14     Q.  Okay.  And by bar, does that mean the
15 length of the time the flight attendant is pulled?
16     A.  Right.  How are we drawing this on their
17 flight attendant screen?  So we're placing a
18 three-day union bar on their screen for zero TFP.
19     Q.  Okay.  And what does TFP stand for?
20     A.  Trip --
21     Q.  Did you say -- I am sorry.  Did you say
22 trips for pay?
23     A.  Yes.
24     Q.  Okay.  And who from Southwest receives
25 this information when it's transmitted?

Page 27

```
 1      A.  I don't believe that changed, even since
 2  2017.  So this is sent via email to a distribution
 3  group at Southwest, which is their schedule and
 4  audit team, such as a department over in Southwest
 5  inflight operations that processes our union pulls.
 6      Q.  Okay.  All right.  Now, did you prepare
 7  each one of these individual transmittals?
 8      A.  I am going to have to say yes because I
 9  was the only one that pretty much did all of them,
10  so -- so, yes.
11      Q.  Okay.  Who told you the names of the
12  flight attendants to prepare the transmittals for?
13      A.  So I get -- well, so our current system is
14  -- so we get an email into our operational email
15  box telling us to pull so-and-so flight attendant
16  for union business.  But the system is currently
17  changed from where we are today.  So it was emailed
18  during this time frame; and then today, we get them
19  via Salesforce, which is our provider.
20      Q.  Okay.  And who emailed the flight
21  attendants who would be pulled to you?
22      A.  I would say that this came from the WISE
23  committee.
24      Q.  Okay.  All right.  And if I could refer
25  you to Document 16.
```

Page 28

1        MR. GREENFIELD:  I don't think he has
2   that, so let me email that to him.
3        MR. GILLIAM:  Okay.
4        MR. GREENFIELD:  Okay.  It's on the
5   way to you, John.
6     A.  Okay.  I have that document up.
7     Q.  (By Mr. Gilliam)  Okay.  And if you want
8   to take a moment to review it.  Once you have
9   reviewed it, let me know.
10    A.  Okay.  I have read the document.
11    Q.  Okay.  Do you recognize this?
12    A.  No.  I mean, I recognize some of the
13  numbers that -- they -- they correlate to the sheet
14  that we just looked at earlier, but I am not
15  familiar with this document.
16    Q.  Okay.  And we will skip over that one.
17  ==Now, do you know how many union members attended==
18  ==the women's march?==
19    ==A.  I believe it was somewhere close to 20.==
20    ==Q.  Okay.==
21    ==A.  I don't know the exact number.==  Hold on a
22  minute.
23    Q.  Sorry about that.  Now, were you involved
24  at all in -- in Local 556 -- well -- well, let me
25  ask it this way:  Are you familiar that Charlene

Page 41

1      I, JOHN PARROTT, have read the foregoing
deposition and hereby affix my signature that same
2  is true and correct, except as noted above.

3

4

5                          _____
                           JOHN PARROTT
6

7  THE STATE OF _____
   COUNTY OF _____
8

9  Before me, _____, on this day
   personally appeared JOHN PARROTT, known to me (or
10 proved to me under oath or through _____) to
   be the person whose name is subscribed to the
11 foregoing instrument and acknowledged to me that
   they executed the same for the purposes and
12 consideration therein expressed.

13

14 Given under my hand and seal of office this _____
   day of _____, 2020.
15

16

17 _____
   NOTARY PUBLIC IN AND FOR THE
18 STATE OF _____

19

20 MY COMMISSION EXPIRES:_____

21

22

23

24

25

```
                                                           Page 42
 1                    REPORTER'S CERTIFICATION
 2           IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
 3                      DALLAS DIVISION
 4   CHARLENE CARTER              )
                                  )
 5                                ) CIVIL ACTION NO.
     VS.                          ) 3:17-CV-02278-X
 6                                )
     SOUTHWEST AIRLINES CO., AND  )
 7   TRANSPORT WORKERS UNION OF   )
     AMERICA, LOCAL 556           )
 8
 9         ------------------------------------
10                       CONFIDENTIAL
                  TWU LOCAL 556 30(b)(6)
11                DEPOSITION OF JOHN PARROTT
                    NOVEMBER 30, 2020
12                   (REPORTED REMOTELY)
13         ------------------------------------
14
15          I, CHARIS M. HENDRICK, Certified Shorthand
16   Reporter in and for the State of Texas, do hereby
17   certify to the following:
18          That the witness, JOHN PARROTT, was by me
19   duly sworn and that the transcript of the oral
20   deposition is a true record of the testimony given
21   by the witness.
22          I further certify that pursuant to Federal
23   Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)
24   as well as Rule 30(e)(2), that review of the
25   transcript and signature of the deponent:
```

Page 43

1    __xx__ was requested by the deponent and/or a
2    party before completion of the deposition.
3    _____ was not requested by the deponent and/or
4    a party before the completion of the deposition.
5         I further certify that I am neither
6    attorney  nor counsel for, nor related to or
7    employed by any of the parties to the action in
8    which this deposition is taken and further that I
9    am not a relative or employee of any attorney of
10   record in this cause, nor am I financially or
11   otherwise interested in the outcome of the action.
12        The amount of time used by each party at
13   the deposition is as follows:
14        Mr. Gilliam - 1:04 hours/minutes
15
16        Subscribed and sworn to on this 8th day of
17   December, 2020.
18
19
20   _____
     CHARIS M. HENDRICK, CSR # 3469
21   Certification Expires: 10-31-21
     Bradford Court Reporting, LLC
22   7015 Mumford Street
     Dallas, Texas  75252
23   Telephone 972-931-2799
     Facsimile 972-931-1199
24   Firm Registration No. 38
25