Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

```
CHARLENE CARTER                )
                               )
                               ) CIVIL ACTION NO.
VS.                            ) 3:17-CV-02278-X
                               )
SOUTHWEST AIRLINES CO., AND    )
TRANSPORT WORKERS UNION OF     )
AMERICA, LOCAL 556             )
```

------------------------------------

CONFIDENTIAL
TWU LOCAL 556 30(b)(6)
ORAL DEPOSITION OF
JESSICA PARKER
NOVEMBER 30, 2020

------------------------------------

ANSWERS AND DEPOSITION OF JESSICA PARKER, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on NOVEMBER 30, 2020, at 4:13 p.m., before CHARIS M. HENDRICK, a Certified Shorthand Reporter in and for the State of Texas, witness located in Loveland, Colorado, pursuant to the Federal Rules of Civil Procedure, the current emergency order regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto.

App. 267

1    close guess, but it's --

2        Q.  Okay.  And did you decide who, I guess,
3    you would invite to attend the march?

4        A.  They were women who reached out that had
5    been involved in our union that showed -- that
6    expressed interest in going.

7        Q.  Now, of the women who expressed interest
8    in going, how did they learn that Local 556 was
9    going to participate in a women's march?

10       A.  I -- I don't recall how that all
11   transpired.

12       Q.  Okay.  But the union members reached out
13   to you personally or --

14       A.  Some of them did, I think, but others were
15   -- I -- I honestly don't remember how -- I -- I
16   knew, of people who were going, there were several
17   board members who went, so I -- I probably found
18   out through some -- through -- through board
19   members.

20       Q.  Okay.  And how -- do you know how they
21   went about getting authorization to attend?

22       A.  Well, there was no authorization to attend
23   -- to attend the march.  We had -- we had to
24   arrange lodging.  So, I guess, I don't understand
25   what you are asking.

1      Q.  Did -- did the union members who wanted to
2   attend have to, I guess, request to be pulled in
3   order to attend?
4      A.  I believe there were a handful of trip
5   pulls.  I don't know how many.  John Parrott would
6   probably know that exactly because he handles the
7   pulls.
8      Q.  Okay.  And who -- are there -- are there
9   particular forms that have to be submitted in order
10  to, I guess, to -- to be pulled?
11     A.  If memory serves, most people arrange --
12  either already were off of work or arranged to be
13  off of work.  I -- I believe I submitted a handful
14  of people to -- I am assuming JP, with their trip,
15  their pairing number and the dates if it needed to
16  be pulled.
17     Q.  Okay.  And when you say you submitted a
18  handful of people, did you submit particular forms?
19     A.  I -- at that time, our -- the way we have
20  done things, I believe, has changed since then.  I
21  think I just emailed him names, employee numbers,
22  pairing number and dates.
23     Q.  Okay.  Let's see.  If I could have you
24  look at Document 41.  We will mark this as, I
25  guess, Exhibit 28; is that where we are?

1    personal views are not for deposition -- right for
2    deposition today.
3        Q.  (By Mr. Gilliam)  Well, was the -- were --
4    were you-all there -- were the union members there
5    supporting women's reproductive rights?
6        A.  No.
7        Q.  Okay.  Then why -- why were the union
8    members attending?
9               MR. GREENFIELD:  Objection.
10   Speculation as to why individuals -- specific
11   people who attended the meeting were attending.
12   You can answer to the best of your ability,
13   Ms. Parker.
14       A.  Knowing the women who went and -- we were
15   there for -- I was there because I do not believe
16   women are equally represented in leadership
17   positions all the way from our Local to city --
18   city and state government, all the way up to
19   federal government.  And women's equality -- and
20   that includes racial equality, LGBTQ equality, but
21   the main focus was women within their -- within
22   their unions.
23       Q.  (By Mr. Gilliam)  Okay.  And Local 556 was
24   there to support women within their unions?
25       A.  We were there to support, as I said,

1   women's equality, LGBTQ, racial equality; to foster
2   and encourage women to be in leadership positions.
3        Q.   Okay.   And was Local 556 there to support
4   women's rights generally?
5        A.   Yes.
6        Q.   Okay.   And do women's rights include
7   women's reproductive rights?
8        A.   We were not there in any way, shape or
9   form to support or to not support abortion or
10  women's reproductive rights.
11       Q.   Okay.   Now, in the second column near the
12  top, it talks about the Pregnant Women Fairness
13  Act.
14       A.   Yes.
15       Q.   And was Local 556 there supporting the
16  Pregnant Woman Fairness -- or Women Fairness Act?
17       A.   We discussed this at our meeting and I
18  discussed it at other working women's meeting.  And
19  I believe the -- but, yes, that would be an aspect
20  of something that we were there for.
21       Q.   Okay.  And then further down, I guess, the
22  second full paragraph, it says -- there is a
23  sentence there that starts, before heading to
24  Capitol Hill -- do you see where I am?
25       A.   Where -- I am sorry, where -- what

1  should address.
2  Q. Okay. Now, during -- during that week,
3  did any of the Local 556 members meet with any
4  lawmakers?
5  A. No, we did not.
6  Q. Okay. That was only during the second
7  meeting?
8  A. I believe the things that -- talked about
9  -- legislation is talking about the February 28th
10 meeting.
11 Q. Okay. Now, did you participate for Local
12 556 in that how-to lobbying session they talk about
13 here?
14 A. I don't -- I don't remember.
15 Q. Okay. But you think you would have
16 attended that meeting?
17 A. I -- I think that I would have attended
18 that meeting. I am not 100 percent sure, but I
19 think I would have.
20 Q. Okay. And it -- it talks about TWU
21 members being armed with talking points and a
22 leave-behind flyer. Do you know if you received a
23 flyer?
24 A. I -- I don't recall. I don't recall that.
25 Q. Okay. Now, during that week of -- that

1   all of the Local 556 members there -- were there,
2   did anyone from Local 556 take part in activities
3   promoting the Pregnant Women Fairness Act?
4        A.   No.
5        Q.   Okay.  And was -- in that -- again, during
6   the -- that meeting that took place in January, did
7   the women's committee have any discussions about
8   national right-to-work legislation?
9        A.   No.
10       Q.   Okay.  All right.  And if I could direct
11  your attention to the second page.
12       A.   Okay.
13       Q.   And the picture in the top right-hand
14  corner.  Are there any Local 556 members in that
15  picture?
16       A.   No.  Oh, gosh, my dogs.  Hold, please.
17            MR. GREENFIELD:  I assumed that was
18  you, Ed.
19            MR. GILLIAM:  I did too.
20            MR. CLOUTMAN:  I am not the only Hound
21  of the Baskervilles harborer.
22            THE WITNESS:  No.  You be quiet.
23  Okay.  I'm -- Zoom meetings are great.  Come here,
24  buddy.  Come here.
25            (Exhibit 30 marked.)

1        REPORTER'S CERTIFICATION
2     IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF TEXAS
3              DALLAS DIVISION
4   CHARLENE CARTER            )
                               )
5                              ) CIVIL ACTION NO.
    VS.                        ) 3:17-CV-02278-X
6                              )
    SOUTHWEST AIRLINES CO., AND )
7   TRANSPORT WORKERS UNION OF )
    AMERICA, LOCAL 556         )
8
9         ------------------------------------
10                    CONFIDENTIAL
              TWU LOCAL 556 30(b)(6)
11               ORAL DEPOSITION OF
                  JESSICA PARKER
12              NOVEMBER 30, 2020
13        ------------------------------------
14
15        I, CHARIS M. HENDRICK, Certified Shorthand
16  Reporter in and for the State of Texas, do hereby
17  certify to the following:
18        That the witness, JESSICA PARKER, was by
19  me duly sworn and that the transcript of the oral
20  deposition is a true record of the testimony given
21  by the witness.
22        I further certify that pursuant to Federal
23  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)
24  as well as Rule 30(e)(2), that review of the
25  transcript and signature of the deponent:

1      __xx__ was requested by the deponent and/or a
2   party before completion of the deposition.
3      _____ was not requested by the deponent and/or
4   a party before the completion of the deposition.
5           I further certify that I am neither
6   attorney  nor counsel for, nor related to or
7   employed by any of the parties to the action in
8   which this deposition is taken and further that I
9   am not a relative or employee of any attorney of
10  record in this cause, nor am I financially or
11  otherwise interested in the outcome of the action.
12          The amount of time used by each party at
13  the deposition is as follows:
14          Mr. Gilliam - 50 minutes
15
16          Subscribed and sworn to on this 8th day of
17  December, 2020.
18
19
20          *Charis M. Hendrick*
            CHARIS M. HENDRICK, CSR # 3469
21          Certification Expires: 10-31-21
            Bradford Court Reporting, LLC
22          7015 Mumford Street
            Dallas, Texas  75252
23          Telephone 972-931-2799
            Facsimile 972-931-1199
24          Firm Registration No. 38
25