Southwest Airlines Co.
Melissa Burdine
Manager Labor Relations
Southwest Airlines Co.
2702 Love Field Drive
Dallas, TX 75235
PH:   (214) 792-2560
FAX: (214) 792-3992

**Southwest**

April 17, 2017

Beth Ross
Grievance Specialist
Transport Workers Union Local 556
8787 N. Stemmons Freeway, Suite 600
Dallas, TX  75247

**PRIVILEGED & CONFIDENTIAL REINSTATEMENT SETTLEMENT AND LAST CHANCE AGREEMENT**

Re: Grievance #24-714 (Co. # 6906) #38690 Charlene Carter

This Confidential Last Chance Agreement ("Agreement") is made and entered into by and between Ms. Charlene Carter, the Transport Workers Union Local 556 ("TWU" or the "Union"), and Southwest Airlines Co. ("Southwest" or the "Company") (collectively, the "Parties").

You were terminated effective March 16, 2017, and a related grievance is currently in the grievance process. The Company is willing to reinstate your employment as a Southwest Flight Attendant based upon your compliance with the provisions of this Privileged and Confidential Reinstatement Settlement and Last Chance Agreement ("Agreement").  Failure to meet any of these provisions will be considered a breach of this Agreement and may result in termination of your employment.

- The Company will reinstate you, the Grievant, Charlene Carter, as a Denver-based Flight Attendant with no loss of seniority.
- You will receive no back pay.
- Your termination will be reduced to a 30-day Suspension beginning March 16, 2017 through and including April 14, 2017.
- Upon your termination, you were paid 131.25 TFP of accrued 2017 vacation and 33.75 TFP of accrued 2018 vacation.  If you would like the vacation days returned to your account, you must submit a Cashier's Check for 105 TFP.
- Any record improvement will be delayed a period of time equal to the time from termination until execution of this Agreement or the end of 30-day Suspension, whichever is greater.
- In exchange for the consideration described above, you will sign the settlement agreement attached hereto as **Exhibit A**, which has the primary purpose of releasing legal and contractual claims against Southwest and related parties.
- In addition, you are required to comply with all Company policies and procedures. Any future violation of the Southwest Airlines Workplace Bullying and Hazing Policy, Social Media Policy, or Harassment, Sexual Harassment, Discrimination and Retaliation Policy will result in termination
- Prior to reinstatement, you will be required to meet with Inflight Operations Director Mike Sims or his designee at Southwest HDQ, or a location of Mr. Sims' choosing. This meeting will be uncompensated.
- This Agreement will remain in your file for 24 months from the date of the execution of the Agreement.
- As a condition of reinstatement, you may be required to complete and pass a criminal history records check as deemed necessary by Southwest Airlines.
- Upon completion of the reinstatement process and receipt of SWA Crew ID, you must contact Crew Planning within 48 hours to have a line built.
- The grievance regarding your termination will be withdrawn/dismissed.
- In consideration of the Company's agreement to these terms, Grievant  agrees to release, dismiss, and forever discharge Southwest from all existing claims, liabilities, demands, and causes of action for which she  may have a claim against Southwest arising out of the discipline issued including, but not limited to, claims arising under federal, state, or local laws prohibiting sex, race, age, national origin, disability, or

App. 1181

Exhibit
0006

any other form of discrimination or retaliation, claims under the Family Medical Leave Act (FMLA) and claims alleging any legal or equitable restrictions on Southwest's right to issue discipline in this matter.

This agreement is made to compromise, terminate, and constitute an accord and satisfaction of all the claims released by this Agreement. It is agreed that neither Southwest nor the Grievant admits any liability, fault, or wrongdoing alleged or which could be alleged by Grievant or the Union regarding discipline.

The terms of your reinstatement are made on a **non-precedent and non-referral** basis and are to be kept **confidential**. Neither you, the Union, nor designated representatives may reference or use your reinstatement or any part of this Agreement as evidence in a future proceeding.

Charlene, our goal is to assist you in succeeding at being a productive Employee with Southwest Airlines. As always, if you have any questions regarding the application of any Southwest policies or rules, please contact a Southwest Leader as soon as possible for guidance/clarification.

Respectfully,

*Melissa Burdine*
Melissa Burdine

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT AND FULLY UNDERSTAND ITS TERMS, AND THAT YOU ENTER INTO AND SIGN THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS OR COERCION OF ANY KIND, AND WITH THE INTENT OF BEING LEGALLY BOUND BY THE AGREEMENT.

ACKNOWLEDGED AND AGREED:

_____    _____
Charlene Carter                    Date


_____    _____
Becky Parker, TWU Local 556        Date

**EXHIBIT A**
**CONFIDENTIAL SETTLEMENT AGREEMENT**
**AND RELEASE OF CLAIMS**

This Confidential Settlement Agreement and Release of Claims ("Agreement") is made and entered into by and between Charlene Carter ("Claimant") and **SOUTHWEST AIRLINES CO.** (the "Company").

Claimant has asserted claims against the Company alleging wrongful termination.

Claimant and the Company have agreed to compromise and settle all claims asserted by Claimant against the Company arising out of or related to Claimant's employment with the Company and/or separation from employment with the Company.

In order to settle and finally resolve all disputes and claims, known and unknown, that have been asserted by Claimant or that could have been asserted by Claimant against the Company, Claimant and the Company agree as follows:

1. In consideration of Claimant's execution of this Agreement and agreement to be legally bound by its terms, the Company will reinstate Claimant's employment as a Denver-based Flight Attendant with no loss of seniority ten (10) days after Claimant's execution and non-revocation of this Agreement.

2. In exchange for the reinstatement provided by the Company to Claimant through this Agreement, Claimant individually and on behalf of Claimant's spouse, heirs, successors, and assigns hereby agrees not to sue and unconditionally RELEASES, DISMISSES, AND FOREVER DISCHARGES Southwest Airlines Co., AirTran Airways, Inc. (Southwest's wholly-owned subsidiary), their respective affiliates, related entities, and each of their respective directors, officers, members, partners, managers, employees, representatives, agents, predecessors, successors, benefits plans, and trustees and fiduciaries of such plans (collectively, the "Released Parties") from any and all claims, liabilities, demands, obligations, agreements, damages, debts, and causes of action arising out of or connected with Claimant's employment with or separation from the Company. This waiver and release includes, but is not limited to, all claims and causes of action arising under federal, state, or local laws prohibiting age, sex, race, religious, national origin, disability, or any other form of discrimination, retaliation, or harassment (including claims under the federal Age Discrimination in Employment Act and/or Older Workers Benefit Protection Act), whistleblower claims (including claims under the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century "AIR21"), claims under federal, state, or local leave laws (including the Family Medical Leave Act "FMLA"), wrongful discharge claims, breach of contract claims, tort claims, and all claims alleging any legal or equitable restrictions on the Company's right to separate Claimant from employment with the Company.

   Claimant represents that Claimant is the owner of the claims being released, dismissed, and discharged pursuant to this Agreement and that Claimant has not previously assigned or transferred all or any part of such claims to another entity or person.

3. Claimant agrees to take all action required to dismiss or withdraw with prejudice any outstanding claims of any kind whatsoever that Claimant has brought against the Company or any of the Released Parties, including but not limited to all Charges and Complaints filed with any federal or state Agency, all grievances filed, and all legal claims asserted with any Court. Claimant further agrees not to assert any new claims of any kind against the Company or any of the Released Parties covered by the agreed upon release of claims in Paragraph 2 of this Agreement.

4. This Agreement precludes Claimant from recovering any relief as a result of any lawsuit, grievance, or claim brought by Claimant or on Claimant's behalf against the Company or any of the Released Parties concerning or arising out of events occurring at any time up to the date of execution of this Agreement. However, nothing in this Agreement affects Claimant's ability to apply for unemployment compensation, or entitlement, if any, to workers' compensation, health insurance benefits under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), or vested benefits under a retirement plan governed by the Employee Retirement Income Security Act ("ERISA"). In addition, nothing in this Agreement prohibits Claimant from communicating with, filing a charge with, or cooperating in the investigations of any governmental agency on matters within their jurisdiction. The Agreement does prohibit Claimant from recovering any relief, including monetary relief, as a result of such activities. By signing this Agreement, Claimant represents that Claimant has already filed workers' compensation claims for any job-related illnesses or injuries that Claimant believes Claimant may have suffered while working for the Company.

5. Claimant agrees not to make, repeat, or publish any false, disparaging, or derogatory remarks or comments about the Company or any of the Released Parties. This Paragraph does not prohibit Claimant from making truthful statements while cooperating with a governmental investigation or testifying under oath.

6. Claimant has been given twenty-one (21) days after receipt of this Agreement to review and consider it before signing it. In order to accept the terms of this Agreement, Claimant must sign the Agreement and return it to the Company within twenty-one (21) days of receipt. Claimant has seven (7) days after signing the Agreement within which Claimant may revoke the Agreement by serving written notice of revocation upon the Company ("Revocation Period"). For such revocation to be effective, written notice must be actually received by the Company no later than the close of business on the seventh day after Claimant signs the Agreement. If timely revocation is not made, the Agreement shall be effective and enforceable. Claimant's acceptance of the Agreement and revocation, should Claimant decide to revoke the Agreement within the Revocation Period, should be delivered or mailed to the following address:

Melissa Burdine
2702 Love Field Dr.
Dallas, TX 75235
HDQ-4LR

7. **Claimant agrees to keep the terms and existence of this Agreement confidential.** This paragraph does not preclude Claimant from discussing the consideration being provided to Claimant with Claimant's tax advisor, attorney, or spouse, upon their agreement to keep the Agreement and terms confidential; or to taxing authorities, governmental agencies, or in response to a valid court order or subpoena.

8. Claimant agrees to pay any taxes not deducted or withheld by the Company pursuant to the terms of this Agreement without any further liability on the part of the Company or any of the Released Parties. Claimant further agrees to indemnify the Company and the Released Parties from any such taxes, penalty, or interest which may be imposed for any alleged failure to withhold taxes from the payment to Claimant.

9. This Agreement is made to compromise, terminate and constitute an accord and satisfaction of all of the claims released by this Agreement, and neither the Company nor any of the Released Parties admit any liability, fault, or wrongdoing of any kind whatsoever and expressly deny and disclaim any liability, fault, or wrongdoing that Claimant alleged or could have alleged. Claimant acknowledges that no promise, inducement or agreement not expressed within this Agreement has been made to Claimant and this Agreement constitutes the entire agreement between the Parties regarding the subject matter contained herein. No term, provision or condition of this Agreement may be modified in any respect except by a writing signed by each of the Parties.

10. The failure of any Party to enforce or require timely compliance with any term or provision of this Agreement shall not be deemed to be a waiver or relinquishment of rights or obligations arising hereunder, nor shall this failure preclude the enforcement of any term or provision or avoid the liability for any breach of this Agreement.

11. In the event of a breach by Claimant or the Company of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to recover all expenses as a result of such breach, including but not limited to, reasonable attorneys' fees and costs.

12. The Parties agree that this Agreement will be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

13. Each Party shall bear its own costs and attorneys' fees, if any, except as otherwise provided in this Agreement.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to conflict of law principles, and is performable, in whole or in part, in Dallas County, Texas, where venue shall be proper and required for the determination of any dispute regarding this Agreement.

15. Claimant is advised by the Company to consult with legal counsel prior to executing this Agreement, and has had an opportunity to consult with and to be advised by legal counsel of Claimant's choice, fully understands the terms of this Agreement, and enters into this Agreement freely, voluntarily, and intending to be legally bound. Because Claimant has had the opportunity to consult with competent legal counsel of Claimant's own choosing, has carefully read the Agreement, which was mutually negotiated, and has been fully and fairly advised as to its terms, any rule of law or decision that would require interpretation of any claimed ambiguities in this Agreement against the Party that drafted it has no application and is expressly waived.

**CLAIMANT ACKNOWLEDGES THAT CLAIMANT HAS READ THIS AGREEMENT AND FULLY UNDERSTANDS ITS TERMS, AND THAT CLAIMANT ENTERS INTO AND SIGNS THIS AGREEMENT KNOWINGLY AND VOLUNTARILY, WITHOUT DURESS OR COERCION OF ANY KIND, AND WITH THE INTENT OF BEING LEGALLY BOUND BY THE AGREEMENT.**

**Charlene Carter**

EXECUTED: _____, 2017

**SOUTHWEST AIRLINES CO.**

BY: *Melissa Burdine*

TITLE: Manager Labor Relations

EXECUTED: _____, 2017

4