# EXHIBIT BB

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER                    )
                                   ) CIVIL ACTION NO.
VS.                                ) 3:17-CV-02278-X
                                   )
SOUTHWEST AIRLINES CO., AND        )
TRANSPORT WORKERS UNION OF         )
AMERICA, LOCAL 556                 )

-------------------------------------

CONFIDENTIAL
VIDEOTAPED DEPOSITION OF
MAUREEN EMLET
NOVEMBER 5, 2020

-------------------------------------

ANSWERS AND DEPOSITION OF MAUREEN EMLET, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on NOVEMBER 5, 2020, at 9:03 a.m., before CHARIS M. HENDRICK, a Certified Shorthand Reporter in and for the State of Texas, witness located in Aurora, Colorado, pursuant to the Federal Rules of Civil Procedure, the current emergency order regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto.

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET
Case 3:17-cv-02278-X Document 702-5 Filed 09/02/24 Page 5 of 19 PageID 4401

Page 2

```
 1                A P P E A R A N C E S
 2   FOR THE PLAINTIFF:
 3       MR. MATTHEW B. GILLIAM
         NATIONAL RIGHT TO WORK LEGAL DEFENSE
 4       FOUNDATION, INC.
         8001 Braddock Road, Suite 600
 5       Springfield, Virginia  22160
         (703) 770-3339
 6       mbg@nrtw.org
 7
     FOR THE DEFENDANT, SOUTHWEST AIRLINES CO.:
 8
         MR. MICHAEL A. CORRELL
 9       REED SMITH LLP
         2850 North Harwood, Suite 1500
10       Dallas, Texas  75201
         (469) 680-4264
11       mcorrell@reedsmith.com
12
     FOR THE DEFENDANT, TRANSPORT WORKERS UNION OF
13   AMERICA, LOCAL 556:
14       MR. ADAM GREENFIELD
         LAW OFFICES OF CLOUTMAN & GREENFIELD, PLLC
15       3301 Elm Street
         Dallas, Texas  75226
16       (214) 939-9223
         agreenfield@candglegal.com
17
18       ALSO PRESENT:  MR. MACK SPURLOCK -
                                VIDEOGRAPHER
19
                         MS. CHARLENE CARTER
20                       MS. LAUREN ARMSTRONG
21
22
23
24
25
```

Case 3:17-cv-01276-X Document 71-5 Filed 09/27/21 Page 4 of 19 PageID 402
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 3

1                    INDEX
2   Appearances ..................................2
3   MAUREEN EMLET
4        Examination by Mr. Gilliam..............6
5        Examination by Mr. Correll............127
6
7   Signature and Changes......................130
8   Reporter's Certificate.....................132
9
10                   EXHIBITS
11  Exhibit 2 - ................................48
    Termination Letter, Document 7
12
    Exhibit 3 - ................................60
13  Email to Suzanne Stephensen from Audrey Stone,
    Document 1
14
    Exhibit 4 - ................................52
15  Email to Suzanne Stephensen from Dave Kissman,
    Document 2
16
    Exhibit 6 - ................................67
17  Email to Maureen Emlet from Ed Schneider,
    Document 9
18
    Exhibit 7 - ................................75
19  Email to Maureen Emlet from Ed Schneider,
    Document 6
20
    Exhibit 16 - ...............................80
21  Email to Tammy Shaffer from Maureen Emlet,
    Document 8
22
    Exhibit 17 - ...............................86
23  Email to Maureen Emlet from Bryan Smith,
    Document 10
24
25

Page 4

1                         EXHIBITS

2    Exhibit 18 - ..............................101
     Email to Inflight Labor Relations Mailbox from
3    Maureen Emlet, Document 26

4    Exhibit 19 - ..............................109
     Email to Brianna Grant from Maureen Emlet,
5    Document 23

6    Exhibit 20 - ..............................114
     Email to Tammy Shaffer from Maureen Emlet,
7    Document 24

8    Exhibit 21 - ..............................118
     Email to Employee Relations-DG from Maureen Emlet,
9    Document 25

10   Exhibit 22 - ..............................121
     Email to Maureen Emlet from Maureen Emlet,
11   Document 27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X Document 175 Filed 09/02/21 Page 6 of 19 PageID 4504
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 5

 1                     PROCEEDINGS
 2             THE VIDEOGRAPHER:  We are now on
 3   record.  Today's date is November 5th, 2020.  The
 4   time is 9:04 Central.  Will the court reporter
 5   please swear in the witness?
 6             THE REPORTER:  This is the video oral
 7   deposition of Maureen Emlet, and it is being
 8   conducted remotely in accordance with the current
 9   emergency order regarding the COVID-19 State of
10   Disaster.  The witness is located in Aurora,
11   Colorado.  And counsel has agreed that I can swear
12   in the witness.
13             My name is Charis Hendrick, Court
14   Reporter, CSR No. 3469.  I am administering the
15   oath and reporting the deposition remotely by
16   stenographic means from my home in Ellis County,
17   Texas.
18             Would counsel please state their
19   appearances and locations for the record?  And the
20   city is fine.
21             MR. GILLIAM:  Matthew B. Gilliam for
22   plaintiff Charlene Carter in Springfield, Virginia.
23             MR. CORRELL:  Michael Correll for
24   defendant Southwest Airlines in Dallas, Texas.
25             MR. GREENFIELD:  Adam Greenfield for

Page 6

1   the defendant TWU Local 556 in Dallas, Texas.
2                    MAUREEN EMLET,
3   having been first duly sworn, testified as follows:
4                     EXAMINATION
5   BY MR. GILLIAM:
6       Q.  Good morning, Ms. Emlet.
7       A.  Good morning.
8       Q.  My name is -- my name is Matt Gilliam and
9   I represent plaintiff Charlene Carter in the case
10  Carter v. Southwest Airlines Company and Transport
11  Workers Union of America Local 556.  And I am here
12  today to ask you questions about the case.  If at
13  any point you would like a break, just let me know
14  and we'll -- we'll take a break.  And do you
15  understand why you are here today?
16      A.  Yes.
17      Q.  Okay.  And do you understand you are here
18  under subpoena?
19      A.  Yes.
20      Q.  Okay.  And did you receive the subpoena to
21  testify?
22      A.  Yes.
23      Q.  Okay.  And have you had the chance to
24  review the subpoena?
25      A.  Yes.

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET
Case 3:17-cv-02278-X Document 702-5 Filed 09/02/21 Page 6 of 19 PageID 4406

Page 10

```
 1   retire?
 2        A.   December 31st of 2019.
 3        Q.   All right.  And prior to your retirement,
 4   what was the last position you held with Southwest?
 5        A.   Manager of labor relations for inflight
 6   services.
 7        Q.   Okay.  And how long did you hold that
 8   position?
 9        A.   I think it was about seven and a half
10   years.
11        Q.   Okay.  And what -- what position did you
12   hold prior to being manager of labor relations?
13        A.   Prior to that, I was manager of inflight
14   communications.  Prior to that, I was an inflight
15   base manager.  And prior to that, a recurrent
16   training supervisor.  And I started my Southwest
17   career as a flight attendant.
18        Q.   Okay.  How long did you work as a flight
19   attendant?
20        A.   10 months.
21        Q.   All right.  During that 10-month time
22   frame, were you a member of the union?
23        A.   Yes.
24        Q.   Okay.  Were you a member of TWU Local 556?
25        A.   Yes.
```

Case 3:17-cv-02278-X Document 174-5 Filed 09/02/21 Page 94 of 136 PageID 4407
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 13

 1    the moment.
 2              MR. GILLIAM:  Okay.
 3        A.  I can hear you now.
 4        Q.  (By Mr. Gilliam)  Okay.  And for that
 5    group of people you had just described, have you
 6    ever heard the term "nonmember" used to refer to
 7    them?
 8        A.  Yes.
 9        Q.  Okay.  All right.  Now, in your position
10    as manager of labor relations, what -- what were
11    your responsibilities?
12        A.  My main responsibilities were to work with
13    the base leadership and the union lead --
14    leadership to ensure that the contract was being
15    correctly applied.  I was involved with cases that
16    had the potential to result in discipline; to
17    ensure that company policies and the inflight work
18    and conduct rules were being followed and applied
19    consistently.
20        Q.  Okay.  And when you say that -- well, did
21    you say that one of your responsibilities was
22    making sure the contract was applied properly?
23        A.  Yes.
24        Q.  Okay.  And by contract, are you referring
25    to the collective bargaining agreement between the

Page 24

 1   team handle that issue?
 2              MR. CORRELL:  Objection.  Vague.
 3       A.  The ACT team and labor relations would
 4   work together.  Ultimately, it would be the labor
 5   relations' responsibility to investigate.  I just
 6   don't remember ever having any religious
 7   discrimination complaints brought forward.
 8       Q.  (By Mr. Gilliam)  Okay.
 9       A.  Other than Ms. Carter.
10       Q.  Okay.  Do you understand if -- or I am
11   sorry.  Do you know if employee relations handles
12   religious discrimination issues?
13       A.  Oh, yes.  Employee relations would handle
14   those complaints.
15       Q.  Okay.  And did -- just to make sure that I
16   understand correctly.  Did you ever work with
17   employee relations on those types of complaints?
18       A.   I may have, but, again, I don't remember
19   having any religious discrimination complaints
20   brought forward that I worked on or that I worked
21   with employee relations on.  There -- there may
22   have been one, but without going back and reviewing
23   files, I just don't remember.
24       Q.  Okay.  And, I guess, in your -- your time
25   as manager for labor relations, do you recall,

Page 62

1   and those were provided as a nexus to the
2   workplace.
3        Q.  Okay.  All right.  And, I guess, turning
4   back to the Page 4228 in that first screenshot.
5        A.  Are we going back to the last document?
6        Q.  Yes, ma'am.  Document 1.  So --
7        A.  We're still in Document 1?
8        Q.  Yes, ma'am.  Yeah.
9        A.  Okay.
10       Q.  And 4228.  It should be the first
11  screenshot.
12       A.  Okay.
13       Q.  And the -- the message -- part of the
14  message says, you truly are despicable in so many
15  ways.  By the way, the recall is going to happen.
16           What is the recall?
17       A.  If I remember correctly, there was a
18  faction of 556 members who wanted to remove Audrey
19  Stone from office.
20       Q.  Okay.  And how did you learn about the
21  recall?
22       A.  Well, it was common knowledge because
23  flight attendants were very vocal about it.  So I
24  don't know how I learned about it; probably from
25  other Facebook posts.

Case 3:20-cv-02023-N Document 17-25 Filed 09/01/21 Page 12 of 19 PageID 410
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 63

1    Q.  Okay.  All right.  Do you know when the, I
2  guess, issues with the recall started to -- well, I
3  guess, crop up?
4    A.  I don't know.  It was prior to this time.
5  I don't know how long they had been going on.
6    Q.  Okay.  Were there issues with the recall
7  when you retired?
8    A.  No.
9    Q.  Okay.  Do you know when those -- the
10 issues about the -- the recall, I guess, subsided?
11   A.  I think when the new union president was
12 voted into office.
13   Q.  Okay.  Do you know when that was?
14   A.  I think it was January -- well, actually,
15 I don't know.  I think it was the beginning of
16 2019, but I don't -- I don't remember for sure.
17   Q.  Okay.
18   A.  Might have been October of '18.
19   Q.  Okay.  All right.  And, I guess, turning
20 back to Document 2.  Well, I'll probably ask you a
21 question before we get there.  Do you know if Ed
22 Schneider eventually contacted you about the
23 investigation?
24   A.  Yes.
25   Q.  Okay.  And what -- when -- when he

Page 80

```
 1                  THE REPORTER:  Last where I left off
 2    on Monday was Exhibit 13, but --
 3                  MR. GILLIAM:  Was --
 4                  THE REPORTER:  -- I don't know if you
 5    marked anything in Mr. Schneider.
 6                  MR. GILLIAM:  I -- I think I do have
 7    it.  I think the next one would be 16.
 8                  THE REPORTER:  Okay.
 9                  (Exhibit 16 marked.)
10       Q.  (By Mr. Gilliam)  Ms. Emlet, this will be
11    Document 8 for you, if you could review it.
12       A.  Okay.
13       Q.  And once you've had a chance to review all
14    of it, let me know.
15       A.  Okay.
16       Q.  Do you recognize this?
17       A.  Yes.
18       Q.  And what is it?
19       A.  This is an email that I sent to Tammy
20    Shaffer and Brianna.  And it -- it looks like I
21    have forwarded an email from Denise Gutierrez, and
22    it has different posts from Facebook.
23       Q.  Okay.  And it's -- is it also attaching
24    images?
25       A.  Yes.
```

Page 81

1    Q.  Okay.  Do you know if the images that
2  follow on Pages 6505 through 6513 were the
3  attachments to your email?
4    A.  I think that they were.  But looking at
5  this document now, it looks to me like Denise sent
6  them to me and then I forwarded them.
7    Q.  Okay.  All right.  But you recognize the
8  pictures as well?
9    A.  Yes.
10    Q.  Okay.  And one quick question.  On the CC
11  line, you have inflight labor relations mailbox.
12    A.  Yes.
13    Q.  Who receives email there?
14    A.  Michelle Lusk and Sue Ann Chaffin.
15    Q.  Okay.  Does anyone else receive email from
16  that box?
17    A.  Do you mean is anyone on that mailbox?
18    Q.  Yeah -- yeah.  Let me ask the --
19    A.  Not --
20    Q.  -- question another -- another way.  Does
21  -- can anyone else access email from that mailbox?
22    A.  Yes.  The -- when I was there, the labor
23  relations team could view emails in that mailbox,
24  but not send anything from it.  So this was our
25  repository for the specialists to collect

Page 83

 1  involved in all of it.
 2      Q.  Okay.  So it was normal that you would
 3  send her all of the information of an -- an
 4  investigation?
 5      A.  Yes.
 6      Q.  Okay.  And, now, who made the
 7  determination that there was a nexus between
 8  Ms. Carter's posts and Southwest?
 9      A.  I don't know if any one person made that
10  determination.  Typically, in these high-profile
11  cases, our entire labor relations team would
12  discuss the case.  And then I -- I know that I had
13  some conversation about the nexus to the workplace
14  and her presenting herself in uniform on -- on her
15  Facebook page.
16      Q.  Okay.  Do you know what the dates of those
17  pictures were?
18      A.  No.
19      Q.  Okay.  And I do have a question too about
20  6505.
21      A.  Okay.
22      Q.  And what is the nexus to Southwest on that
23  page?
24      A.  Ms. Carter is standing.  She's the second
25  one from the right and she has her Southwest

Page 84

```
 1   Airlines ID around her neck.
 2       Q.  Okay.  And I -- I realize that this is
 3   another copy, but can -- can you -- could you read
 4   the -- the version of -- or read that ID in the --
 5       A.  I cannot.  Not to my -- my iPad, I can't,
 6   no.
 7       Q.  Okay.  Do you recall if, on the original
 8   version you saw, you could -- you could read what
 9   was on the ID?
10       A.  I don't know.  I -- I know that -- I don't
11   know if I could read it.  I know that the coloring
12   and the layout were definitely recognizable as a
13   Southwest ID.
14       Q.  Okay.  Now, did you have any follow-up
15   discussions with Tammy Shaffer or Brianna Grant
16   about any of these pictures?
17       A.  I am sure I did.
18       Q.  Okay.  Do you know if you talked to them
19   about whether there was a nexus between Southwest
20   and the posts?
21       A.  I probably did, yes.
22       Q.  Okay.  And did they give you any
23   conclusions about the posts themselves?
24       A.  I don't remember.  I think it would only
25   be that, yes, there was a nexus to the workplace.
```

Case 3:17-cv-02278-X Document 125 Filed 09/02/20 Page 17 of 19 PageID 4415
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 131

```
 1      I, MAUREEN EMLET, have read the foregoing
        deposition and hereby affix my signature that same
 2      is true and correct, except as noted above.

 3

 4

 5                        _____
                          MAUREEN EMLET
 6

 7      THE STATE OF _____
        COUNTY OF _____
 8

 9      Before me, _____, on this day
        personally appeared MAUREEN EMLET, known to me (or
10      proved to me under oath or through _____) to
        be the person whose name is subscribed to the
11      foregoing instrument and acknowledged to me that
        they executed the same for the purposes and
12      consideration therein expressed.

13

14      Given under my hand and seal of office this _____
        day of _____, 2020.
15

16

17      _____
        NOTARY PUBLIC IN AND FOR THE
18      STATE OF _____

19

20      MY COMMISSION EXPIRES:_____

21

22

23

24

25
```

Page 132

                    REPORTER'S CERTIFICATION

           IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

    CHARLENE CARTER                  )
                                     )
                                     ) CIVIL ACTION NO.
    VS.                              ) 3:17-CV-02278-X
                                     )
    SOUTHWEST AIRLINES CO., AND      )
    TRANSPORT WORKERS UNION OF       )
    AMERICA, LOCAL 556               )


            ------------------------------------
                         CONFIDENTIAL
                 DEPOSITION OF MAUREEN EMLET
                      NOVEMBER 5, 2020
                     (REPORTED REMOTELY)
            ------------------------------------

        I, CHARIS M. HENDRICK, Certified Shorthand Reporter in and for the State of Texas, do hereby certify to the following:
        That the witness, MAUREEN EMLET, was by me duly sworn and that the transcript of the oral deposition is a true record of the testimony given by the witness.
        I further certify that pursuant to Federal Rules of Civil Procedure, Rule 30(e)(1)(A) and (B) as well as Rule 30(e)(2), that review of the transcript and signature of the deponent:
        __xx__ was requested by the deponent and/or a party before completion of the deposition.

Case 3:L-cv-01283-X Document 17-25 Filed 09/02/21 Page 19 of 19 PageID 4417
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MAUREEN EMLET

Page 133

1      _____ was not requested by the deponent and/or
2  a party before the completion of the deposition.
3         I further certify that I am neither
4  attorney  nor counsel for, nor related to or
5  employed by any of the parties to the action in
6  which this deposition is taken and further that I
7  am not a relative or employee of any attorney of
8  record in this cause, nor am I financially or
9  otherwise interested in the outcome of the action.
10        The amount of time used by each party at
11 the deposition is as follows:
12        Mr. Gilliam - 3:42 hours/minutes
13        Mr. Correll - 2 minutes
14
15        Subscribed and sworn to on this 12th day
16 of November, 2020.
17
18
19        *Charis M. Hendrick*
          CHARIS M. HENDRICK, CSR # 3469
20        Certification Expires: 10-31-21
          Bradford Court Reporting, LLC
21        7015 Mumford Street
          Dallas, Texas  75252
22        Telephone 972-931-2799
          Facsimile 972-931-1199
23        Firm Registration No. 38
24
25