# EXHIBIT CC

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER                    )
                                   ) CIVIL ACTION NO.
VS.                                ) 3:17-CV-02278-X
                                   )
SOUTHWEST AIRLINES CO., AND        )
TRANSPORT WORKERS UNION OF         )
AMERICA, LOCAL 556                 )

-------------------------------------

CONFIDENTIAL
VIDEOTAPED DEPOSITION OF
DENISE GUTIERREZ
NOVEMBER 6, 2020

-------------------------------------

ANSWERS AND DEPOSITION OF DENISE
GUTIERREZ, produced as a witness at the instance of
the Plaintiff, taken in the above-styled and
-numbered cause on NOVEMBER 6, 2020, at 9:00 a.m.,
before CHARIS M. HENDRICK, a Certified Shorthand
Reporter in and for the State of Texas, witness
located in Dallas, Texas, County of Ellis, pursuant
to the Federal Rules of Civil Procedure, the
current emergency order regarding the COVID-19
State of Disaster, and the provisions stated on the
record or attached hereto.

1             A P P E A R A N C E S

2 FOR THE PLAINTIFF:

3     MR. MATTHEW B. GILLIAM
      NATIONAL RIGHT TO WORK LEGAL DEFENSE
4     FOUNDATION, INC.
      8001 Braddock Road, Suite 600
5     Springfield, Virginia  22160
      (703) 770-3339
6     mbg@nrtw.org

7

    FOR THE DEFENDANT, SOUTHWEST AIRLINES CO.:
8
      MR. MICHAEL A. CORRELL
9     REED SMITH LLP
      2850 North Harwood, Suite 1500
10    Dallas, Texas  75201
      (469) 680-4264
11    mcorrell@reedsmith.com

12

    FOR THE DEFENDANT, TRANSPORT WORKERS UNION OF
13 AMERICA, LOCAL 556:

14    MR. ADAM GREENFIELD
      LAW OFFICES OF CLOUTMAN & GREENFIELD, PLLC
15    3301 Elm Street
      Dallas, Texas  75226
16    (214) 939-9223
      agreenfield@candglegal.com

17

18    ALSO PRESENT:  MR. MACK SPURLOCK -
                      VIDEOGRAPHER
19
                    MS. CHARLENE CARTER
20                MS. LAUREN ARMSTRONG

21

22

23

24

25

Case 3:17-cv-02278-X Document 170-20 Filed 05/01/21 Page 4 of 18 PageID 4421
CONFIDENTIAL VIDEOTAPED DEPOSITION OF DENISE GUTIERREZ

Page 3

1                          INDEX
2    Appearances ...................................2
3    DENISE GUTIERREZ
4        Examination by Mr. Gilliam................6
5        Examination by Mr. Correll...............63
6
7    Signature and Changes.........................65
8    Reporter's Certificate........................67
9
10                        EXHIBITS
11   Exhibit 1 - ..................................14
     Southwest Airlines Policies, Document 11
12
     Exhibit 3 - ..................................36
13   Email to Suzanne Stephensen from Audrey Stone,
     Document 1
14
     Exhibit 4 - ..................................31
15   Email to Suzanne Stephensen from Dave Kissman,
     Document 2
16
     Exhibit 5 - ..................................43
17   Email to Denise Gutierrez from Ed Schneider,
     Document 5
18
     Exhibit 6 - ..................................53
19   Email to Maureen Emlet from Ed Schneider,
     Document 9
20
     Exhibit 7 - ..................................54
21   Email to Maureen Emlet from Ed Schneider,
     Document 6
22
     Exhibit 14 - .................................51
23   Email to Audrey Stone from Denise Gutierrez,
     Document 20
24
25

Case 3:17-cv-02278-X Document 470-20 Filed 09/02/21 Page 5 of 18 PageID 4442
CONFIDENTIAL VIDEOTAPED DEPOSITION OF DENISE GUTIERREZ

Page 4

1                        EXHIBITS

2   Exhibit 23 - ..................................50
    Email to Denise Gutierrez from Audrey Stone,
3   Document 16

4   Exhibit 24 - ..................................60
    Email to Jamie Dotson from Sonya Lacore,
5   Document 28

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

```
 1                    PROCEEDINGS
 2              THE VIDEOGRAPHER:  We are now on
 3   record.  Today's date is November 6th, 2020.  The
 4   time is 9:00 a.m. Central.  Will the court reporter
 5   please swear in the witness?
 6              THE REPORTER:  This is the videotaped
 7   deposition of Denise Gutierrez, and it is being
 8   conducted remotely in accordance with the current
 9   emergency order regarding the COVID-19 State of
10   Disaster.  The witness is located in Dallas, Texas.
11              My name is Charis Hendrick, Court
12   Reporter, CSR No. 3469.  I am administering the
13   oath and reporting the deposition remotely by
14   stenographic means from my home in Ellis County,
15   Texas.
16              Would counsel please state their
17   appearances and locations for the record?  And the
18   city is fine.
19              MR. GILLIAM:  Matthew B. Gilliam for
20   plaintiff Charlene Carter in Springfield, Virginia.
21              MR. CORRELL:  Michael Correll for
22   defendant Southwest Airlines in Dallas, Texas.
23              MR. GREENFIELD:  Adam Greenfield for
24   defendant TWU Local 556 in Dallas, Texas.
25                       *-*-*
```

CONFIDENTIAL VIDEOTAPED DEPOSITION OF DENISE GUTIERREZ
Case 3:17-cv-02278-X Document 170-20 Filed 05/10/21 Page 7 of 18 PageID 4424

Page 6

```
 1                    DENISE GUTIERREZ,
 2   having been first duly sworn, testified as follows:
 3                       EXAMINATION
 4   BY MR. GILLIAM:
 5       Q.  Good morning, Ms. Gutierrez.
 6       A.  Good morning.
 7       Q.  My name is Matt Gilliam, and I represent
 8   plaintiff Charlene Carter in the case of Carter v.
 9   TWU Local 556 and Southwest Airlines Company.  And
10   I am here today to ask you some questions about the
11   case.  If at any point, you need a break, just let
12   me know.
13           And do you understand why you are here
14   today?
15       A.  I do.
16       Q.  Okay.  And you understand you are here
17   under a Subpoena?
18       A.  I do.
19       Q.  Okay.  And you received the Subpoena?
20       A.  I did.
21       Q.  Okay.  And you understand that Mr. Correll
22   accepted service of the Subpoena on your behalf?
23       A.  I do.
24       Q.  Okay.  And you had the chance to read the
25   Subpoena?
```

 1     Q.  Okay.  How long have you worked at
 2  JPMorgan Chase?
 3     A.  Since December 2nd of 2019.
 4     Q.  Okay.  And when did you leave Southwest
 5  Airlines Company?
 6     A.  November the -- that -- that previous
 7  Friday.
 8     Q.  Okay.  The Friday prior to December 2nd,
 9  2019?
10     A.  That's -- that's right.
11     Q.  Okay.  And what position did you hold with
12  Southwest when you left Southwest Airlines Company
13  in 2019?
14     A.  I was an employee relations investigator,
15  senior investigator.
16     Q.  Okay.  And how long were you an employee
17  relations investigator?
18     A.  For nine and a half years.
19     Q.  Okay.  All right.  And prior to working as
20  an employee relations senior investigator, what
21  position did you hold with Southwest?
22     A.  The only position I had with Southwest
23  Airlines.
24     Q.  Okay.  Have you ever worked anywhere as a
25  flight attendant?

 1                MR. CORRELL:  Objection.  Asked and
 2     answered.  And, Ms. Gutierrez, when I make
 3     objections today, unless it's a privilege issue
 4     related to your prior employment and I instruct you
 5     not to answer, you can proceed to answer after I
 6     lodge my objection.
 7        A.   I -- I can't recall.
 8        Q.   (By Mr. Gilliam)  Okay.  And did you have
 9     any other job responsibilities apart from
10     investigating claims related to the harassment
11     policy?
12        A.   Yes, I did training, as well, related to
13     the harassment policy.
14        Q.   Okay.  What were some of your other job
15     responsibilities as an investigator?
16        A.   That was really it.  That --
17        Q.   Okay.
18        A.   -- was it.
19        Q.   And would you train flight attendants as
20     to the harassment policy?
21        A.   No.
22        Q.   Okay.  Who -- who was involved in your
23     training under the harassment policy?
24        A.   I trained the leaders.
25        Q.   Okay.  And when you say the leaders, who

1   do you mean?
2       A.  The managers at Southwest Airlines.
3       Q.  Okay.  Base managers?
4       A.  Yes.  Sometimes.
5       Q.  Okay.  Well, I guess, when you say
6   managers -- so you don't mean only base managers?
7       A.  That's correct.
8       Q.  Okay.  Which other managers would you --
9   would you train besides base managers?
10      A.  Anyone who would be considered a manage --
11  in management --
12      Q.  Okay.
13      A.  -- with Southwest Airlines.
14      Q.  And as part of your training, what -- what
15  would you -- what would you teach them?
16      A.  We would teach them about the policy
17  relating to harassment, sexual harassment,
18  discrimination and retaliation.
19      Q.  Okay.  All right.  And when you say
20  discrimination, what -- what types of
21  discrimination would you train them in?
22      A.  Related to the protected categories that
23  are listed within the policy.
24      Q.  Okay.  And what sort of, I guess,
25  retaliation concerns would you instruct them about?

CONFIDENTIAL VIDEOTAPED DEPOSITION OF DENISE GUTIERREZ
Case 3:17-cv-02278-X Document 145-20 Filed 09/02/21 Page 11 of 18 PageID #123

Page 14

1    A.  What's listed in the policy.

2    Q.  Okay.  Let's see.  If I could direct you

3 to Document 11.  And I will direct to you a page

4 number after that.

5    A.  Okay.  Give me just one moment.  I --

6    Q.  Sure.  Let me -- let me know when you are

7 ready.

8    A.  Okay.  I have Document 11 open.

9    Q.  Okay.  If you could look at, I think, the

10 fourth and fifth page at the bottom.  It should say

11 App 12 and App 13.

12    A.  Hang on one second.

13    Q.  Sure.

14    A.  Okay.

15    Q.  And let's see.  Did you -- did you review

16 App 12 and App 13?  And just once you have had a

17 chance to -- to look at it, let me know.

18    A.  I will let you know.

19    Q.  Okay.

20    A.  Okay.  I have reviewed it.

21    Q.  Okay.  Do you recognize this?

22    A.  I do.

23    Q.  And what is it?

24    A.  It is the policy -- Southwest Airlines

25 policy regarding harassment, sexual harassment,

Page 15

1   discrimination and retaliation --
2       Q.  Okay.
3       A.  -- from 24 -- from 2014.
4       Q.  Okay.  Do you know if this is the policy
5   that would have been in effect in 2017?
6       A.  I can't recall.
7       Q.  Okay.  And let's see.  If I could direct
8   your attention to, I guess, where that policy
9   begins right after -- gives the date where it's
10  revised and the second sentence.  And it says,
11  harassment or discrimination based on race, color,
12  religion, age, sex, sexual orientation, gender
13  identity, pregnancy, et cetera.
14              Are all of those the protected
15  categories that are listed in that sentence?
16      A.  Yes.
17      Q.  Okay.  And you mentioned that you would
18  train managers about retaliation in the policy.
19  Which -- where in the policy -- which -- which
20  retaliation, I guess, addressed in the policy would
21  you train management in?
22      A.  In the sentence that starts with,
23  retaliation typically involves actions --
24      Q.  Okay.
25      A.  -- against any -- against an individual

Page 16

1 engaging in protected activity.
2    Q.  Okay. Okay. All right. And if I could
3 direct you to the second page; that's App 8. If
4 you could review that quickly.
5    A.  Oh, second page -- I am sorry. Yes. I
6 will go back up. Give me just one moment.
7    Q.  Sure.
8    A.  Okay.
9    Q.  And do you recognize what that is?
10   A.  Give me just a moment.
11   Q.  Sure.
12   A.  It does not look familiar to me.
13   Q.  Okay. All right. Now, in carrying out
14 your job responsibilities, did you work with other
15 departments?
16   A.  Yes.
17   Q.  Okay. Which other departments did you
18 work with?
19   A.  Work with -- we worked with security. We
20 worked with inflight. We worked with ground ops,
21 the HR business partner community. These are some
22 of the departments that we would work with in doing
23 investigations.
24   Q.  Okay. Did you work with labor relations
25 in conducting investigations?

```
 1        A.  Yes.  Correct.  The ACT team.  Correct.
 2        Q.  Okay.  And did the ACT team ever contact
 3   employee relations about accommodation issues?
 4        A.  What do you mean by issues?
 5        Q.  Well, so if an employee had a religious
 6   accommodation request, would the ACT team ever
 7   contact employee relations for -- for their
 8   feedback?
 9        A.  I can't recall.
10        Q.  Okay.  Do you know, as -- as part of your
11   position in employee relations, would you have
12   responded to any religious accommodation requests?
13        A.  Only to refer them to the ACT team.
14        Q.  Okay.  So you wouldn't do any analysis on
15   your own of a religious accommodation request?
16        A.  I can't recall.
17        Q.  Okay.  And you don't know if that would
18   have been part of your responsibilities?
19        A.  No, it wouldn't.  I don't -- I don't
20   believe it would have.
21        Q.  Okay.  All right.  And did you ever handle
22   any complaints of religious discrimination?
23        A.  I can't recall.
24        Q.  Okay.  That -- I guess, a religious
25   discrimination complaint would fall under the
```

1  purview of the employee relations department,
2  correct?
3      A.  Yes.
4      Q.  Okay.  But you don't know if you
5  personally ever handled any religious
6  discrimination complaints?
7      A.  I can't recall.
8      Q.  Okay.  Do you know if employee relations
9  received any religious discrimination complaints at
10 all in, say, the last five years you were working
11 at Southwest?
12     A.  I can't recall.
13     Q.  Okay. All right. All right.  Now,
14 switching gears.  When did you first hear that a
15 flight attendant had reported Charlene Carter for
16 her Facebook posts and messages?
17     A.  I can't recall.
18     Q.  Okay.  Let's see.  If you could look at --
19 refer you to Document 2.
20     A.  Okay.  Give me just a moment as it loads.
21     Q.  Sure.
22     A.  Sorry.  It's taking its time.
23     Q.  Sure.  No problem.  And then once you do
24 get it up, I will send you to a particular page
25 number.

CONFIDENTIAL VIDEOTAPED DEPOSITION OF DENISE GUTIERREZ
Case 3:17-cv-02873-X Document 145-20 Filed 09/02/21 Page 16 of 18 PageID #:452

Page 66

```
 1        I, DENISE GUTIERREZ, have read the foregoing
    deposition and hereby affix my signature that same
 2  is true and correct, except as noted above.

 3

 4

 5                          _____
                            DENISE GUTIERREZ
 6

 7  THE STATE OF _____
    COUNTY OF _____
 8

 9  Before me, _____, on this day
    personally appeared DENISE GUTIERREZ, known to me
10  (or proved to me under oath or through
    _____) to be the person whose name is
11  subscribed to the foregoing instrument and
    acknowledged to me that they executed the same for
12  the purposes and consideration therein expressed.

13

14  Given under my hand and seal of office this _____
    day of _____, 2020.
15

16

17
    _____
    NOTARY PUBLIC IN AND FOR THE
18  STATE OF _____

19

20  MY COMMISSION EXPIRES:_____

21

22

23

24

25
```

Page 67

1        REPORTER'S CERTIFICATION
2    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF TEXAS
3              DALLAS DIVISION

4  CHARLENE CARTER              )
                                )
5                               ) CIVIL ACTION NO.
   VS.                          ) 3:17-CV-02278-X
6                               )
   SOUTHWEST AIRLINES CO., AND  )
7  TRANSPORT WORKERS UNION OF   )
   AMERICA, LOCAL 556           )
8

9        --------------------------------------
                      CONFIDENTIAL
10         DEPOSITION OF DENISE GUTIERREZ
                   NOVEMBER 6, 2020
11                (REPORTED REMOTELY)
         --------------------------------------
12

13       I, CHARIS M. HENDRICK, Certified Shorthand

14  Reporter in and for the State of Texas, do hereby

15  certify to the following:

16       That the witness, DENISE GUTIERREZ, was by

17  me duly sworn and that the transcript of the oral

18  deposition is a true record of the testimony given

19  by the witness.

20       I further certify that pursuant to Federal

21  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

22  as well as Rule 30(e)(2), that review of the

23  transcript and signature of the deponent:

24       __xx__ was requested by the deponent and/or a

25  party before completion of the deposition.

Page 68

1  \_\_\_\_\_ was not requested by the deponent and/or
2  a party before the completion of the deposition.
3       I further certify that I am neither
4  attorney  nor counsel for, nor related to or
5  employed by any of the parties to the action in
6  which this deposition is taken and further that I
7  am not a relative or employee of any attorney of
8  record in this cause, nor am I financially or
9  otherwise interested in the outcome of the action.
10       The amount of time used by each party at
11  the deposition is as follows:
12       Mr. Gilliam - 2:42 hours/minutes
13       Mr. Correll - 2 minutes
14
15       Subscribed and sworn to on this 12th day
16  of November, 2020.
17
18
19  *Charis M. Hendrick*
    CHARIS M. HENDRICK, CSR #
20  Certification Expires: 10-31-21
    Bradford Court Reporting, LLC
21  7015 Mumford Street
    Dallas, Texas  75252
22  Telephone 972-931-2799
    Facsimile 972-931-1199
23  Firm Registration No. 38
24
25