# EXHIBIT EE

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER            )
                           )
                           ) CIVIL ACTION NO.
VS.                        ) 3:17-CV-02278-X
                           )
SOUTHWEST AIRLINES CO., AND )
TRANSPORT WORKERS UNION OF  )
AMERICA, LOCAL 556          )

-----------------------------------

CONFIDENTIAL
VIDEOTAPED DEPOSITION OF
MEGGAN JONES
NOVEMBER 4, 2020

-----------------------------------

ANSWERS AND DEPOSITION OF MEGGAN JONES, produced as a witness at the instance of the Plaintiff, taken in the above-styled and -numbered cause on NOVEMBER 4, 2020, at 9:05 a.m., before CHARIS M. HENDRICK, a Certified Shorthand Reporter in and for the State of Texas, witness located in Golden, Colorado, pursuant to the Federal Rules of Civil Procedure, the current emergency order regarding the COVID-19 State of Disaster, and the provisions stated on the record or attached hereto.

Page 2

```
 1                    A P P E A R A N C E S
 2   FOR THE PLAINTIFF:
 3       MR. MATTHEW B. GILLIAM
         NATIONAL RIGHT TO WORK LEGAL DEFENSE
 4       FOUNDATION, INC.
         8001 Braddock Road, Suite 600
 5       Springfield, Virginia  22160
         (703) 770-3339
 6       mbg@nrtw.org
 7
     FOR THE DEFENDANT, SOUTHWEST AIRLINES CO.:
 8
         MR. MICHAEL A. CORRELL
 9       REED SMITH LLP
         2850 North Harwood, Suite 1500
10       Dallas, Texas  75201
         (469) 680-4264
11       mcorrell@reedsmith.com
12
     FOR THE DEFENDANT, TRANSPORT WORKERS UNION OF
13   AMERICA, LOCAL 556:
14       MR. ADAM GREENFIELD
         MR. EDWARD B. CLOUTMAN, III
15       LAW OFFICES OF CLOUTMAN & GREENFIELD, PLLC
         3301 Elm Street
16       Dallas, Texas  75226
         (214) 939-9223
17       agreenfield@candglegal.com
         ecloutman@lawoffices.email
18
19       ALSO PRESENT:   MR. MACK SPURLOCK -
                          VIDEOGRAPHER
20
                         MS. CHARLENE CARTER
21                       MS. LAUREN ARMSTRONG
22
23
24
25
```

Page 3

1                         INDEX

2   Appearances ................................2

3   MEGGAN JONES

4        Examination by Mr. Gilliam..............5

5        Examination by Mr. Correll.............84

6

7   Signature and Changes......................87

8   Reporter's Certificate.....................89

9

10                        EXHIBITS

11  Exhibit 3 - ...............................39
    Email to Suzanne Stephensen from Audrey Stone,
12  Document 1

13  Exhibit 4 - ...............................36
    Email to Suzanne Stephensen from Dave Kissman,
14  Document 2

15  Exhibit 6 - ...............................62
    Email to Maureen Emlet from Ed Schneider,
16  Document 9

17

18

19

20

21

22

23

24

25

1                    PROCEEDINGS
2              THE VIDEOGRAPHER:  We are now on
3    record.  Today's date is November 4th, 2020.  The
4    time is 9:05 a.m. Central.  Will the court reporter
5    please swear in the witness?
6              THE REPORTER:  This is the videotaped
7    deposition of Meggan Jones, and it is being
8    conducted remotely in accordance with the current
9    emergency order regarding the COVID-19 State of
10   Disaster.  The witness is located in Golden,
11   Colorado.  Counsel has agreed that I can swear in
12   the witness from -- in -- out of state.
13             My name is Charis Hendrick, Court
14   Reporter, CSR No. 3469.  I am administering the
15   oath and reporting the deposition remotely by
16   stenographic means from my home in Ellis County,
17   Texas.
18             Would counsel please state their
19   appearances and locations for the record?  And the
20   city is fine.
21             MR. GILLIAM:  Matthew B. Gilliam for
22   plaintiff Charlene Carter in Springfield, Virginia.
23             MR. CORRELL:  Mike Correll for
24   defendant Southwest Airlines in Dallas, Texas.
25             MR. GREENFIELD:  Adam Greenfield on

Page 5

1  behalf of defendant TWU Local 556 from Dallas,
2  Texas.
3            MR. CLOUTMAN:  And Ed Cloutman also
4  for TWU Local 556, Dallas, Texas.
5                   MEGGAN JONES,
6  having been first duly sworn, testified as follows:
7                    EXAMINATION
8  BY MR. GILLIAM:
9       Q.  Good morning, Ms. Jones.  My name is --
10      A.  Morning.
11      Q.  My name is Matt Gilliam and I'm the
12 attorney representing Charlene Carter in the matter
13 of Carter v. Southwest Airlines and Transport
14 Workers Union of America Local 556.  And I am here
15 today to ask you some questions about the case.  If
16 at any point you need a break, just let me know and
17 we can take a break.  Have you been deposed before?
18      A.  I have not.
19      Q.  Okay. So, basically, the way it works is
20 I will -- I will ask you some questions, and if you
21 could just answer to the best of your ability.
22 Since the reporter is preparing a written
23 transcript, it's important that you give clear,
24 verbal answers; no huh-uhs and uh-huhs and no head
25 nods or gestures.

Page 8

1    A.  Tammy Shaffer.
2    Q.  Okay.  And is that in Southwest labor
3  relations department?
4    A.  Yes, it is.
5    Q.  Okay.  And prior to holding your current
6  position with Southwest, what was your position
7  with the company?
8    A.  Inflight base manager at the Phoenix base.
9    Q.  Okay.  And how long were you the -- the
10 base manager at the Phoenix base?
11   A.  Officially, approximately a year and a
12 half; just over a year and a half.
13   Q.  Do you know when you started your -- your
14 job there in Phoenix as inflight base manager?
15   A.  I was formally offered the position in
16 January of 2019.
17   Q.  Okay.  Did you start in January 2019?
18   A.  I worked there as a temporary base manager
19 for four months prior.
20   Q.  Okay.  Okay.  And prior to working in
21 Phoenix, what job did you hold with the company?
22   A.  I was the assistant base manager at the
23 Denver inflight base.
24   Q.  Okay.  And how long were you assistant
25 base manager in Denver?

```
 1      A.   Approximately, three and a half to four
 2   years, approximately.
 3      Q.   And so when did you start your -- I guess,
 4   your job in that position?
 5      A.   It was in 2015.  I don't recall the exact
 6   month.
 7      Q.   Okay.  And did you leave that position in
 8   2018?
 9      A.   Officially left it in January of 2019.
10      Q.   Okay.
11      A.   My title changed.
12      Q.   Okay.  All right.  And prior to being
13   assistant base manager in Denver, what -- what job
14   did you hold with the company?
15      A.   I was an inflight supervisor at the Denver
16   base.
17      Q.   Okay.  And how long were you an inflight
18   supervisor?
19      A.   With Southwest, 2011 is when I started.
20   So, approximately, four years, give or take.
21      Q.   Okay.  And did you work with Southwest
22   prior to 2011?
23      A.   No, I did not.
24      Q.   Okay.  Have you ever worked as a flight
25   attendant?
```

Page 10

 1      A.  Yes, I have.
 2      Q.  Okay.  Which company -- for which company
 3  did you work as a flight attendant?
 4      A.  America West Airlines.
 5      Q.  Okay.  And were you a member of the union
 6  when you worked at -- as a flight attendant at
 7  American West?
 8      A.  Yes, I was.
 9      Q.  Okay.  Okay.  What was the union?
10      A.  It was the AFA.
11      Q.  Okay.  And did you hold any elected
12  offices with your union?
13      A.  I did not, no.
14      Q.  All right.  Well, so while you were
15  assistant base manager in Denver, what were your
16  job responsibilities?
17      A.  My job was to support the base staff,
18  support the flight attendants and to also support
19  the base manager.
20      Q.  Okay.  Did you have any other
21  responsibilities?
22      A.  That support included, you know,
23  recognition.  It could include investigating any,
24  like, potential work and conduct violations.  It
25  included staff development, things like that.

Page 32

1 religious accommodation requests that Southwest
2 received each year?
3      A.  No.
4      Q.  Okay.  Okay.  All right.  When did you
5 first learn that a flight attendant had reported
6 Ms. Carter for her Facebook posts and messages?
7      A.  I don't recall when that was.
8      Q.  Okay.  If I could -- do you recall
9 receiving a complaint about Ms. Carter's Facebook
10 posts and messages?
11     A.  No, I didn't receive a complaint about it.
12     Q.  Okay.  Who did?
13     A.  I don't know who received that complaint.
14     Q.  Okay.  But you are aware of a complaint?
15     A.  Yes, I am.
16     Q.  Okay.  And who made that complaint?
17     A.  It was Audrey Stone.
18     Q.  Okay.  And at the time the complaint was
19 made, did you know who Audrey Stone was?
20     A.  Yes.
21     Q.  Okay.  And how did you know Audrey Stone?
22     A.  She was the president of the union.
23     Q.  Okay.  And how did you know that she was
24 union president?
25     A.  The union puts that information out.

CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES
Case 3:17-cv-02278-X Document 278 Filed 05/02/21 Page 11 of 20 PageID 4588

Page 49

```
 1      A.   Okay.
 2      Q.   If you could just take a look at this.
 3 And when you have had the chance to review it, let
 4 me know.
 5      A.   Okay.
 6      Q.   Do you know what this is?
 7      A.   It's an email.
 8      Q.   Okay.
 9      A.   From -- from Ed.
10      Q.   And it's to employee relations DG; do you
11 know who that is?
12      A.   Yes, I do.
13      Q.   Who is that?
14      A.   It's the team that investigates any
15 potential Title 7 issue.
16      Q.   A team that invests (sic) Title 7 issues?
17      A.   Like, harassment, you know, anything like
18 that.  Harassment policy, things like that.
19      Q.   Okay.  And is that what the employee
20 relations group does?
21      A.   Yes.
22      Q.   Okay.  And who are the, I guess, members
23 of that employee relations team who would receive
24 that email?
25      A.   I don't know who is on that team.
```

```
Page 60
 1   was reported by another flight attendant.
 2       Q.  And what else did he tell you about what
 3   the meeting dealt with?
 4       A.  I don't remember.
 5       Q.  Okay.  Were you and Ed the only two in
 6   that meeting?
 7       A.  As far as -- what do you mean?
 8       Q.  Were you and Ed the only two in that
 9   meeting you had where he informed you what the --
10   the fact-finding would be about?
11       A.  Yes.
12       Q.  Okay.  Do you know if that was your first
13   conversation with Ed Schneider about what -- I
14   guess, about the Facebook messages and posts?
15       A.  I don't recall.
16       Q.  Okay.  I would like to take you back to
17   Document 1 again.
18       A.  Okay.
19       Q.  And if you could focus on 4228.
20       A.  You said this was Document 1?
21       Q.  Document 1, yeah.
22       A.  Okay.
23       Q.  And this -- this post mentions that the
24   recall is going to happen.  What is the recall?
25       A.  The recall was -- effort to recall the
```

Bradford Court Reporting, LLC    972.931.2799    www.bradfordreporting.com

App.401

Case 3:17-cv-02278-X Document 176-28 Filed 05/21 Page 13 of 20 PageID 4390
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES

Page 61

1   union officials that were holding office at that
2   time.
3       Q.  Okay.  What does that mean?
4       A.  Just -- it means that flight attendant
5   union members -- some of the members had started a
6   petition to recall the current elected officials.
7       Q.  Okay.  Do you know which members started
8   the petition?
9       A.  No.
10      Q.  Okay.  When did you first learn about the
11  recall?
12      A.  I don't know.
13      Q.  Where did you hear about it?
14      A.  At work.
15      Q.  Who talked about it at work?
16      A.  I don't remember.
17      Q.  Did Jessica Parker talk to you about the
18  recall?
19      A.  No.
20      Q.  Okay.  Did you ever talk to Jessica Parker
21  about the investigation into the Facebook posts?
22      A.  No.
23      Q.  Okay.  Did you ever communicate with
24  Jessica Parker about any aspect of the
25  investigation into Carter's Facebook post?

Page 62

1     A.  No.
2     Q.  Okay.  And do you know if the recall was
3  successful?
4     A.  I -- I don't know if it was or not.
5     Q.  Okay.  Do you know if any -- so as for the
6  recall, would -- you mentioned that it was a
7  petition to -- I think you mentioned that it was a
8  petition, more or less, to remove union officers;
9  is that right?
10    A.  Yes.
11    Q.  Okay.  And would that have been to remove
12 Audrey Stone as well?
13    A.  Yes.
14    Q.  Okay.  Do you know if Audrey Stone was
15 removed from the executive board?
16    A.  I don't know.
17    Q.  Okay.  Do you know when that recall
18 petition began?
19    A.  No.
20    Q.  Okay.  Let's see.  If I could direct you
21 to -- let's see here.  I am jumbled up.  There we
22 go.  Document 9.  And 4675 is the first page
23 number.
24    A.  I don't know that I have Document 9.
25 Okay.  I -- maybe I do in a different email.  Hang

Bradford Court Reporting, LLC    972.931.2799    www.bradfordreporting.com

**App.403**

Page 63

1  on.  Here we go.  Okay.  Let's see.  Okay.
2  Document 9.  And what was the page number?
3      Q.  4675.
4      A.  Yes.  Okay.
5      Q.  And if you could take a look at that.
6      A.  Okay.
7      Q.  And not just 4675, but all of the attached
8  pages as well.
9      A.  Okay.
10     Q.  Do you recognize this?
11     A.  Yes, I do.
12     Q.  And what is it?
13     A.  It's an email from Ed to Maureen Emlet and
14 Denise Gutierrez.
15     Q.  Okay.  And you are CC'd, correct?
16     A.  Yes.
17     Q.  Okay.  Now, what -- do you recognize the
18 pages behind that first page?
19     A.  Yes.
20     Q.  Okay.  And what are those pages?
21     A.  Those are the fact-finding notes.
22     Q.  Okay.  And did you draft those notes?
23     A.  Yes.
24     Q.  Okay.  Now, who attended that fact-finding
25 meeting?

Page 64

1  A.  Charlene Carter, Chris Sullivan, myself,
2  Ed Schneider, Denise Gutierrez and Edie Barnett.
3  But Denise and Edie were conferenced in via phone.
4  Q.  Okay.  And was there anyone else there?
5  A.  No.
6  Q.  Okay.  And I would like to direct you to
7  4679.
8  A.  Okay.
9  Q.  And midway down, Ed says, we did go
10 through it a little bit and there are some here --
11 I guess the sentence before that, sentence is talk
12 -- talk before that about -- well, Ed says, when
13 you are posting on your Facebook page, are you
14 aware of other posts on there that would connect
15 you to Southwest Airlines?  Possibly pictures of
16 you in your uniform?
17        And then it goes on and Ed says, we
18 did go through a little bit and there are some
19 here; shows pictures of Charlene at work in her
20 uniform.
21        Do -- do you know who obtained those
22 pictures?
23        MR. CORRELL:  Objection.
24 Mischaracterizes the document.  You can answer,
25 Ms. Jones.

Case 3:17-cv-02278-X Document 276-3 Filed 05/03/21 Page 17 of 20 PageID 4394
CONFIDENTIAL VIDEOTAPED DEPOSITION OF MEGGAN JONES

Page 65

```
 1      A.  I did.
 2      Q.  (By Mr. Gilliam)  Okay.  And when did you
 3  obtain those pictures?
 4      A.  I don't remember when.
 5      Q.  Where did you obtain those pictures from?
 6      A.  Charlene's Facebook page.
 7      Q.  Okay.  And do you remember the dates of
 8  those pictures?
 9      A.  I don't.
10      Q.  Okay.  And let's see if I can direct you
11  to 4680.
12      A.  Okay.
13      Q.  It says -- let see.  Midway down -- about
14  midway down, there is a comment from Ed that says,
15  with your Facebook post, there is a connection to
16  the workplace and you can't have your political
17  views with Southwest as part of your depiction
18  there.
19          Do you know if Southwest has ever
20  fired another employee for posting their political
21  views on social media?
22      A.  Yes.
23      Q.  Okay.  And what happened in that case?
24      A.  The employee posted political views that
25  were offensive to other individuals, and they were
```

Page 88

```
 1        I, MEGGAN JONES, have read the foregoing
   deposition and hereby affix my signature that same
 2 is true and correct, except as noted above.

 3

 4

 5                      _____
                            MEGGAN JONES
 6

 7 THE STATE OF _____
   COUNTY OF _____
 8

 9 Before me, _____, on this day
   personally appeared MEGGAN JONES, known to me (or
10 proved to me under oath or through _____) to
   be the person whose name is subscribed to the
11 foregoing instrument and acknowledged to me that
   they executed the same for the purposes and
12 consideration therein expressed.

13

14 Given under my hand and seal of office this _____
   day of _____, 2020.
15

16

17 _____
   NOTARY PUBLIC IN AND FOR THE
18 STATE OF _____

19

20 MY COMMISSION EXPIRES:_____

21

22

23

24

25
```

Page 89

1  REPORTER'S CERTIFICATION

2  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF TEXAS
3  DALLAS DIVISION

4  CHARLENE CARTER              )
                                )
5                               ) CIVIL ACTION NO.
   VS.                          ) 3:17-CV-02278-X
6                               )
   SOUTHWEST AIRLINES CO., AND  )
7  TRANSPORT WORKERS UNION OF   )
   AMERICA, LOCAL 556           )
8

9         -------------------------------------
                        CONFIDENTIAL
10              DEPOSITION OF MEGGAN JONES
                     NOVEMBER 4, 2020
11                  (REPORTED REMOTELY)
          -------------------------------------
12

13        I, CHARIS M. HENDRICK, Certified Shorthand

14  Reporter in and for the State of Texas, do hereby

15  certify to the following:

16        That the witness, MEGGAN JONES, was by me

17  duly sworn and that the transcript of the oral

18  deposition is a true record of the testimony given

19  by the witness.

20        I further certify that pursuant to Federal

21  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)

22  as well as Rule 30(e)(2), that review of the

23  transcript and signature of the deponent:

24     __xx__ was requested by the deponent and/or a

25  party before completion of the deposition.

Page 90

1    \_\_\_\_\_ was not requested by the deponent and/or
2    a party before the completion of the deposition.
3           I further certify that I am neither
4    attorney  nor counsel for, nor related to or
5    employed by any of the parties to the action in
6    which this deposition is taken and further that I
7    am not a relative or employee of any attorney of
8    record in this cause, nor am I financially or
9    otherwise interested in the outcome of the action.
10          The amount of time used by each party at
11   the deposition is as follows:
12          Mr. Gilliam - 2:16 hours/minutes
13          Mr. Correll - 2 minutes
14
15          Subscribed and sworn to on this 12th day
16   of November, 2020.
17
18
19          *Charis M Hendrick*
            CHARIS M. HENDRICK, CSR # 3469
20          Certification Expires: 10-31-21
            Bradford Court Reporting, LLC
21          7015 Mumford Street
            Dallas, Texas  75252
22          Telephone 972-931-2799
            Facsimile 972-931-1199
23          Firm Registration No. 38
24
25