# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | | |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## SOUTHWEST AIRLINES CO.'S RESPONSE IN OPPOSITION TO CHARLENE CARTER'S MOTION TO COMPEL DISCOVERY

**TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF FACTS ................................................................................ 2

  A.  The Court Allows Carter to Engage In Fact Discovery But Only on Limited Subjects ................................................................................................ 2

  B.  The Court Denies Carter's Motion to Compel the Same Categories of Documents and Information She Requests Here ................................................ 3

  C.  Carter Informally Requests Additional Documents and Propounds Five Total Requests to Southwest ................................................................................ 4

  D.  Carter Propounds the Additional Written Discovery ........................................ 4

  E.  Carter Raises Assorted Discovery Issues and Moves to Compel Additional Responses to Interrogatory 1 and RFPs 1, 3 .................................................. 5

II.    ARGUMENT .............................................................................................. 6

  A.  The Court Should Deny Carter's Motion Because It Is Untimely ...................... 6

  B.  Carter Cannot Satisfy Her Buren to Demonstrate the Discovery Is Appropriate ............. 9

    1.  The Court Should Deny the Motion Because Carter Already Unsuccessfully Sought the Information at Issue .................................................................. 10

    2.  Carter's Requests are Beyond the Scope of the Limited Follow Up Discovery Authorized By the Court ........................................................................... 13

    3.  The Documents and Information Carter Seeks Are Immaterial to Her DFR and RLA Claims .......................................................................................... 16

  C.  Carter Can More Efficiently Obtain Information Responsive to Interrogatory 1 and RFPs 1 and 3 From Other Parties Southwest Would Be Unduly Burdensome ............... 18

  D.  Southwest Did Not Waive Objections to RFP 3 ............................................. 20

  E.  Southwest Privilege Log Adequately Supports the Claimed Privileges .......................... 21

III.   CONCLUSION .......................................................................................... 22

US_ACTIVE-163025400.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aid for Woman v. Foulston*,
  2005 U.S. Dist. LEXIS 8420 (D. Kan. May 6, 2005) .............................................................11

*Am. Airlines, Inc. v. Travelport Ltd.*,
  2012 U.S. Dist. LEXIS 198417 (N.D. Tex. July 16, 2012) ....................................................21

*Bhd. of Locomotive Eng'rs v. Kan. City S. Ry.*,
  26 F.3d 787 (8th Cir. 1994) ...................................................................................................17

*Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of
  La., Inc.*,
  2016 U.S. Dist. LEXIS 140686 (M.D. La. Sept. 27, 2016) ....................................................13

*Carr v. State Farm Mut. Auto. Ins.*,
  312 F.R.D. 459 (N.D. Tex. 2015) ...........................................................................................10

*Crosby v. La. Health Serv. & Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011) ..................................................................................................18

*Days Inn Worldwide, Inc. v. Sonia Invs.*,
  237 F.R.D. 395 (N.D. Tex. 2006) .........................................................................................7, 8

*Diloreto v. Perrin Forster & Crosby*,
  2010 U.S. Dist. LEXIS 161866 (N.D. Tex. Aug. 20, 2010) ...................................................10

*Duncan v. Nunez*,
  2019 U.S. Dist. LEXIS 194200 (W.D. La. Nov. 7, 2019) ......................................................21

*Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*,
  258 F.R.D. 149 (S.D. Tex. 2009) ...........................................................................................20

*Grey v. Dallas Indep. Sch. Dist.*,
  265 Fed. Appx. 342 (5th Cir. 2008) .........................................................................................9

*Holmes v. Reddoch*,
  2020 U.S. Dist. LEXIS 251460 (E.D. La. July 30, 2020) ........................................................7

*Hunter Douglas Metals, Inc. v. New Bay Fin. Shipping Co.*,
  1988 U.S. Dist. LEXIS 12086 (E.D. La. Oct. 27, 1988) ........................................................13

*Jones v. Wireless*,
  2010 U.S. Dist. LEXIS 162757 (N.D. Tex. May 25, 2010) ....................................................12

ii

*KeyCorp v. Holland*,
   2016 U.S. Dist. LEXIS 147926 (N.D. Tex. Oct. 26, 2016) ....................................................18

*Leath v. Tracer Constr. Co.*,
   2009 U.S. Dist. LEXIS 147937 (E.D. Tex. Apr. 8, 2009) .....................................................20

*Miniex v. Hous. Hous. Auth.*,
   2019 U.S. Dist. LEXIS 106217 (S.D. Tex. Mar. 1, 2019)......................................................22

*Murillo Modular Grp., Ltd. v. Sullivan*,
   2016 U.S. Dist. LEXIS 145308 (N.D. Tex. Oct. 20, 2016) ....................................................18

*Neel v. Mae*,
   2013 U.S. Dist. LEXIS 195964 (S.D. Miss. Nov. 14, 2013) ....................................................7

*NLRB v. Int'l Bhd. of Boilermakers*,
   321 F.2d 807 (8th Cir. 1963) ...............................................................................................17

*NLRB v. Local 815, Int'l Bhd. of Teamsters*,
   290 F.2d 99 (2d Cir. 1961).....................................................................................................17

*Olivas v. United States Steel Corp.*,
   2012 U.S. Dist. LEXIS 152526 (E.D. Tex. Oct. 24, 2012) .....................................................7

*Pac. Marine Propellers, Inc. v. Wartsila Defense, Inc.*,
   2018 U.S. Dist. LEXIS 56973 (S.D. Cal. Apr. 3, 2018).........................................................10

*RE/Max Int'l, Inc. v. Trendsetter Realty, LLC*,
   2008 U.S. Dist. LEXIS 38101 (S.D. Tex. May 9, 2008) ........................................................20

*Russell v. Choicepoint Servs., Inc.*,
   302 F. Supp. 2d 654 (E.D. La. 2003) ....................................................................................18

*S. Scrap Material Co. v. Fleming*,
   No. 01-2554, 2003 U.S. Dist. LEXIS 13558 (E.D. La. July 29, 2003) ...................................22

*Santander Consumer United States, Inc. v. Maywood Motors, Inc.*,
   2017 U.S. Dist. LEXIS 223443 (N.D. Tex. Aug. 9, 2017)......................................................8

*SEC v. Brady*,
   238 F.R.D. 429 (N.D. Tex. 2006) ..........................................................................................21

*Siegel v. Compass Bank*,
   2020 U.S. Dist. LEXIS 242423 (N.D. Tex. Dec. 24, 2020) .....................................................7

*Smith v. City of Philadelphia*,
   285 F. Supp. 3d 846 (E.D. Pa. 2018) .....................................................................................12

US_ACTIVE-163025400.2

*Solorzano v. Shell Chem. Co.*,
  2001 U.S. App. LEXIS 30166 (5th Cir. May 18, 2001) ........................................................20

*Source Network Sales & Mktg., LLC v. Jiangsu Mega Motor Co.*,
  2017 U.S. Dist. LEXIS 221494 (N.D. Tex. May 15, 2017) ........................................................9

*Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*,
  2018 U.S. Dist. LEXIS 58405 (S.D. Tex. Apr. 5, 2008) ........................................................8

*Turnage v. General Elec. Co.*,
  953 F.2d 206 (5th Cir. 1992) ........................................................9

*United States Bank, N.A. v. Viola*,
  2017 U.S. Dist. LEXIS 194395 (N.D. Ohio Nov. 27, 2017) ........................................................11

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ........................................................21

*Williams-Pyro, Inc. v. Warren Watts Tech., LLC*,
  2015 U.S. Dist. LEXIS 174592 (N.D. Tex. Aug. 6, 2015) ........................................................8

*Zubarik v. Rubloff Dev. Group*,
  2007 U.S. Dist. LEXIS 112271 (N.D. Tex. June 14, 2007) ........................................................7

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................9, 18

US_ACTIVE-163025400.2

Charlene Carter ("Carter" or "Plaintiff") initiated this action more than four years ago. Despite multiple extensions of the discovery deadline, Carter has again filed a motion to compel just days before the close of discovery. The motion seeks to compel Southwest Airlines Co. ("Southwest") to produce documents that she could have sought long ago. Carter purportedly seeks these documents not to bolster her claims against Southwest, but instead to support her claims against the Transport Workers Union of America, Local 556 ("Local 556" or "Union"). The Court should deny Carter's motion for three key reasons.

First, as with her prior motions to compel and to extend the fact discovery deadline, Carter filed her current motion just days before the close of the discovery, thereby ensuring that it will not be fully briefed or heard until well after discovery has ended and shortly before the scheduled trial date. Thus, Carter's motion would render a nullity the Court's order requiring that she "**complete** discovery by August 5, 2021."

Second, the documents and information Carter seeks are not within the narrow categories on which the Court authorized discovery in its order extending the fact discovery deadline. Specifically, that order only permitted Carter to conduct follow up discovery regarding the following discrete subjects: (a) the November 30, 2020 deposition of the Union's 30(b)(6) witness; and (b) Southwest's October 30-31, 2020 document production. Rather than seeking information limited to these two categories, Carter attempts to evade the Court's ruling on her prior motion to compel, which denied her request for comparator information regarding social media complaints and investigations involving other Southwest Flight Attendants, by seeking similar information through new requests.

Third, the documents and information Carter seeks – specifically regarding social media reports by Union representatives – are irrelevant to Carter's duty of fair representation ("DFR") or

US_ACTIVE-163025400.2

Railway Labor Act ("RLA") claims against the Union. And even if the materials were relevant to Carter's claims, the information and documents at issue should be obtained from Local 556 or Union deponents, as Southwest does not maintain the records Carter seeks.

Finally, Carter's arguments regarding alleged technical defects in certain privilege log entries and Southwest's alleged waiver of objections to request for production ("RFP") 3 have no merit. Southwest adequately supported its assertions of privilege and did not waive any objections to Carter's discovery requests.

As set forth in more detail blow, the Court should deny Carter's motion in its entirety.

## I.     SUMMARY OF FACTS

### A.     The Court Allows Carter to Engage In Fact Discovery But Only on Limited Subjects

On November 30, 2020, the prior discovery cutoff date, Carter requested an extension of the fact discovery deadline. Dkt. Nos. 138-139. Carter described her alleged need for additional time as follows:

**A. Carter seeks additional time to complete discovery with Local 556.**

Carter seeks additional time to (1) conduct follow-up discovery related to Carter's November 30 Rule 30(b)(6) deposition of Local 556, and union documents produced on October 16, November 16, and November 23, involving flight attendant discipline; and (2) address Carter's requests for information concerning flight attendants' religious discrimination complaints and accommodation requests, for which Local 556 failed to run search terms. …

**B. Carter seeks additional time to complete discovery with Southwest.**

With respect to Southwest, Carter seeks additional time to (1) conduct follow-up discovery if the Court grants her pending Motion to Compel against Southwest; (2) conduct follow-up discovery related to Southwest's October 30 and 31, 2020 document production; (3) confer with Southwest regarding questions about potential deficiencies with the company's October 30-31 discovery production, and review Southwest's privilege log.

US_ACTIVE-163025400.2

Dkt. No. 139 at 12-13 (emphasis in original). Notably, this detailed summary of the reasons for Carter's alleged need for additional time did not discuss seeking discovery *from Southwest* related to the testimony of the Union's 30(b)(6) deponent.

On May 5, 2021, the Court granted Carter's motion to extend the fact discovery deadline *but only* on limited topics. Specifically, the Court stated:

> The new deadline for fact discovery is **August 5, 2021**. During this extension [] plaintiff may only conduct (1) follow-up discovery regarding Local 556's November 30th deposition and (2) follow-up discovery and conferences with Southwest regarding their October 30-31 document production. *Because the Court has granted several past extensions of the discovery deadline, future requests to extend time for discovery are highly disfavored.*

Dkt. No. 155 at 3 (emphasis added). The Court's order did not mention any privilege issues.

While the Court gave Carter additional time to engage in limited discovery, it made clear that it would "not relitigate the issues that the Magistrate Judge already decided in the order on the plaintiff's motion to compel." *Id.* Additionally, the Court's new scheduling order states that "[a]ll discovery procedures shall be initiated in time *to complete discovery by August 5, 2021*." Dkt. No. 154, ¶ 4 (emphasis added).

### B.   <u>The Court Denies Carter's Motion to Compel the Same Categories of Documents and Information She Requests Here</u>

On November 13, 2020 – just a few weeks prior to the discovery cutoff – Carter moved to compel Southwest to provide additional responses to her initial Requests for Production 6-7, 17-19, 21 and Interrogatory 3. Dkt. Nos. 132-133. It is unclear why Carter waited until the 11th hour to bring her motion; Southwest had stated its objections to her requests approximately 18 months before she filed her motion to compel. Pl's App. 49. The Court heard Carter's motion to compel on an "expedited basis … [due to] the timeline for discovery completion." SWA App. 4-5.

In her motion, Carter sought (among other things) information regarding complaints, investigations, disciplinary matters, and social media reports involving other employees. Dkt. No.

US_ACTIVE-163025400.2

133. For example, Carter requested documents and communications "between LOCAL 556 and SOUTHWEST" related to any Southwest employee's social media activity; investigations into those activities; and the resolution of any complaints regarding the activity. Pl's App. 6, RFP 6(B)-(D). Carter also insisted that Southwest identify every "employee whose social media activities were reported" to it. Pl's App. 15, Interrogatory 3. The Court ultimately denied Carter's motion in its entirety because she failed to limit her requests to specific employees who she could demonstrate were "similarly situated" to Carter. SWA App. 12-13, 15-18.

### C.  Carter Informally Requests Additional Documents and Propounds Five Total Requests to Southwest

On May 17, 2021, Plaintiff's counsel contacted Southwest's counsel and requested that it produce additional documents in response to Carter's RFPs 6-7 and Interrogatory No. 3. Pl's App. 103. Carter's counsel represented that Southwest had agreed to conduct a broad search and document production regarding investigations at the Denver terminal. *Id.* Mike Correll, then-counsel for Southwest, responded that he did "not recall agreeing to that broad of a production" and invited Carter's counsel provide evidence to the contrary, which he did not do. *Id.* While Southwest had no obligation to produce these documents based on the Court's order denying Carter's motion to compel, in the interest of avoiding additional delay and motion practice, Correll stated that he would work with Southwest to produce documents related to certain social media cases at the terminals that reported through the Denver manager to whom Carter reported. Accordingly, Southwest eventually produced a spreadsheet that summarized the circumstances regarding various social media cases at those terminals. Pl's App. 77-86.

### D.  Carter Propounds the Additional Written Discovery

More than three weeks after the Court's order authorizing Carter to conduct limited discovery, she served Southwest with three requests for production, two requests for admission,

US_ACTIVE-163025400.2

and one interrogatory. Southwest served its objections and responses on June 25, 2021. Pl's App. 50-54.

The parties met and conferred regarding Southwest's responses shortly thereafter. During the meet and confer process, Plaintiff's counsel stated that the final request (RFP 3) was not included in Southwest's responses. Southwest's counsel determined that, when Plaintiff's combined requests for requests for admission, interrogatory, and requests for production were copied from the format in which they were received (PDF) to "Word", the final request was unintentionally cutoff. Upon discovering this administrative error, Southwest responded to RFP 3. SWA App. 23-25.

### E.   Carter Raises Assorted Discovery Issues and Moves to Compel Additional Responses to Interrogatory 1 and RFPs 1, 3

Carter seeks to compel Southwest to provide further responses to the following requests for production and interrogatory:

**Interrogatory No. 1**: Given LOCAL 556's inability to identify which persons turned in Southwest flight attendants for their social media activities (Hillhouse Deposition Tr. 29:6-9), (a) IDENTIFY every person holding a position as a LOCAL 556 officer, steward, employee, or representative, who reported a Southwest Airlines flight attendant's social media activities to SOUTHWEST between January 1, 2013, and the present; (b) IDENTIFY every Southwest Airlines flight attendant whose social media activities were reported to SOUTHWEST by each person identified in (a); and (c) IDENTIFY all the social media activities that were reported to SOUTHWEST by each person identified in (a).

**Request for Production No. 1**: Given LOCAL 556's inability to identify which persons turned in Southwest flight attendants for their social media activities (Hillhouse Deposition Tr. 29:6-9), produce all reports or complaints made to SOUTHWEST from January 1, 2013, through the present, by any person holding a position as a LOCAL 556 officer, steward, employee, or representative, regarding another Southwest Airlines flight attendant's social media activities.

**Request for Production No. 3**: Produce all DOCUMENTS and COMMUNICATIONS related to the communications in the document discussed in Request for Production No. 2 above.

US_ACTIVE-163025400.2

Pl's App. 51-53.[1]

More simply, RFP 1 and Interrogatory 1 request that Southwest provide documents and information regarding instances in which a Local 556 "officer, steward, employee, or representative" reported another employee for social media activities over a nearly nine year period (January 1, 2013 – present). RFP 3 requests a broad review and production of documents related to[2] a specific post-termination email that Carter received in redacted form from the Union and that Southwest subsequently produced. The email indicates that certain employees had been reported for their social media activity and that one of the reported posts could constitute retaliation against former Local 556 President Audrey Stone for her protected complaints. Pl's App. 58. In Carter's telling, these requests seek "information identifying the Local 556 officials who reported flight attendants' social media activities and the names and social media activities they reported[.]" Pl's Brief at 7.

## II.   ARGUMENT

### A.   The Court Should Deny Carter's Motion Because It Is Untimely

---

[1] As she did with her initial discovery requests, Carter defined "SOUTHWEST" to include: "Southwest Airlines Co. and *any of its current or former officers, employees, representatives, agents, intermediaries, successors, and other persons acting on its behalf*." Pl's App. 5, 14, 22, 29 (emphasis added). Thus, as drafted, Carter's requests purport to require Southwest to determine whether any of the more than 60,000 unnamed current and former employees (including those with no conceivable substantive or geographical relationship to this case) ever received a social media complaint over a nearly 9 year period (January 1, 2013-present).

[2] It is unclear what categories of documents "relate to" the email given Carter's broad definition of the term as: "directly or indirectly constituting, mentioning, discussing, describing, or in any way pertaining to or being connected with a stated subject matter or the existence or nonexistence of a fact, alleged fact, misinformation, supposed information, topic, or subject matter, and require you to fully discuss, fully describe, list, and provide any and all facts, information, opinions, bases of such opinions, and documents which might possibly be relevant, or which might possibly lead to the discovery of relevant evidence related to the facts, information, knowledge, opinions, and bases thereof, and documents which are in any way responsive to the specific interrogatory in which such terms appear." Pl's App. 22.

US_ACTIVE-163025400.2

When the Court granted Carter additional time to conduct limited discovery, it issued a scheduling order stating that "[a]ll discovery procedures shall be initiated in time *to complete discovery by August 5, 2021*." Dkt. No. 154, ¶ 4 (emphasis added). "Where a scheduling order establishes a date for the completion of discovery, a party is required to *obtain* all necessary discovery by that date." *Siegel v. Compass Bank*, 2020 U.S. Dist. LEXIS 242423, *4 (N.D. Tex. Dec. 24, 2020) (emphasis added). Accordingly, a "motion to compel … [must] be filed sufficiently *in advance of the discovery deadline* … in order to *allow it to be heard by a court*, and if granted, to *allow the compelled discovery to be produced prior to the deadline*." *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 398 (N.D. Tex. 2006) (emphasis added); *see also Olivas v. United States Steel Corp.*, 2012 U.S. Dist. LEXIS 152526, *2-3 (E.D. Tex. Oct. 24, 2012) ("A motion to compel must be filed sufficiently in advance of the Court's discovery deadline to permit the Court *to hear the motion* and, if granted, for discovery to complete by the deadline.") (emphasis added); *Zubarik v. Rubloff Dev. Group*, 2007 U.S. Dist. LEXIS 112271, *5 (N.D. Tex. June 14, 2007) (motion to compel filed on discovery cutoff date would be untimely because it does not provide sufficient time for the court to hear the motion and for production to occur before the discovery deadline).

Applying this rule, courts regularly reject as untimely motions to compel that cannot be heard until after the close of discovery. *See, e.g.*, *Holmes v. Reddoch*, 2020 U.S. Dist. LEXIS 251460, *2-3 (E.D. La. July 30, 2020) (motion to compel untimely because it would not be heard until 3 days after close of discovery deadline); *Neel v. Mae*, 2013 U.S. Dist. LEXIS 195964, *3 (S.D. Miss. Nov. 14, 2013) ("Absent good cause, this Court is reluctant to grant discovery motions filed on the eve of the discovery deadline."). Courts will deny an untimely motion to compel irrespective of the import of the disputed documents to the moving party's case. *Siegel*, 2020 U.S.

US_ACTIVE-163025400.2

Dist. LEXIS 242423, *5; *Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, 2018 U.S. Dist. LEXIS 58405, *2-3 (S.D. Tex. Apr. 5, 2008) (the court does not consider the party's alleged compelling need for the documents in determine whether a motion to compel is timely).

In deciding whether to allow an otherwise untimely motion to compel, the Court considers (1) the length of time since expiration of the discovery deadline; (2) how long the moving party has known about the discovery; (3) whether the discovery deadline has previously been extended; (4) the explanation for the tardy filing; (5) whether dispositive motions have been scheduled or filed; (6) the age of the case; (7) any prejudice to the party from whom late discovery was sought; and (8) whether the court's schedule would be disrupted. *Days Inn Worldwide, Inc.*, 237 F.R.D. at 398.

Several factors support denying Carter's motion as untimely:

- The Court has already extended the fact discovery deadline twice in this case. Dkt. Nos. 87, 89, 138, 155; *Santander Consumer United States, Inc. v. Maywood Motors, Inc.*, 2017 U.S. Dist. LEXIS 223443, *2-3 (N.D. Tex. Aug. 9, 2017) (motion to compel untimely because, *inter alia*, "the discovery deadline already has been extended"). (**Factor 3**).

- The hearing on Carter's motion to compel is not set until November 18, 2021. Dkt. No. 200. By the time the Court hears the motion and issues a ruling, the trial (set to commence on January 18, 2022) will likely be less than two months away. Dkt. No. 154, ¶ 1; *Williams-Pyro, Inc. v. Warren Watts Tech., LLC*, 2015 U.S. Dist. LEXIS 174592, *6 (N.D. Tex. Aug. 6, 2015) (court can deny motion to compel "even when the documents at issue are potentially dispositive of the case and the discovery deadline has not yet passed … on the basis of an imminent trial"). This may result in additional changes to the trial date. (**Factor 8**).

- All of the parties have moved for summary judgment. *Santander Consumer United States, Inc.*, 2017 U.S. Dist. LEXIS 223443, *2-3 ("Defendant already has filed its summary judgment motion and, thus, undoubtedly would be prejudiced" by granting late motion to compel). (**Factors 7-8**).

- Based on the initial filing date, Carter's motion would not be fully briefed until a full month after the close of discovery. (**Factor 1**).

US_ACTIVE-163025400.2

- While Carter recently propounded the specific requests at issue, she has known about these discovery issues and her claimed need for these documents since she first propounded written discovery. (**Factors 2, 4**).

- This case has been pending since 2017. Under the Court's current scheduling order, the trial will not commence until nearly five years after filing. (**Factor 5**).

Carter has now filed three motions (two motions to compel and a motion to extend the fact discovery deadline) shortly before the close of discovery. By this motion, Carter implicitly asks the Court to again jettison its scheduling order and compel the production of documents and information well after dispositive motions have been filed and shortly before trial is set to commence. Carter has had several years to obtain necessary discovery in this action and the Court should deny Carter's request for even more time. *See Grey v. Dallas Indep. Sch. Dist.*, 265 Fed. Appx. 342 (5th Cir. 2008) ("Even if we accept … that additional discovery would have enabled him to prove his Title VII race discrimination claim" the district court did not abuse its discretion when it denied motion compel "because it was filed on the day of the discovery deadline after an extensive discovery period."); *Turnage v. General Elec. Co.*, 953 F.2d 206, 209 (5th Cir. 1992) ("No matter how much we might believe that allowing the inspection might have been helpful – perhaps decisively so – or that such an allowance would not have adversely affected the imminent trial, we cannot find that the district court abused its discretion in denying the request.")

## B.   <u>Carter Cannot Satisfy Her Buren to Demonstrate the Discovery Is Appropriate</u>

As the moving party, it is Carter's "burden to demonstrate that the material sought is relevant and within the scope of permissible discovery." *Source Network Sales & Mktg., LLC v. Jiangsu Mega Motor Co.*, 2017 U.S. Dist. LEXIS 221494, *5 (N.D. Tex. May 15, 2017). Discovery is limited to matters that are relevant to a party's claim or defense and that are proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In applying the discovery rules,

US_ACTIVE-163025400.2

courts do not allow parties to "to engage in [] unwieldy, burdensome, and speculative fishing expedition[s]." *Carr v. State Farm Mut. Auto. Ins.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) (citation omitted); *see also Diloreto v. Perrin Forster & Crosby*, 2010 U.S. Dist. LEXIS 161866, *5 (N.D. Tex. Aug. 20, 2010) (courts use their discretion to bar discovery requests that are "too broad and oppressive."). As set forth below, Carter has not satisfied her burden and the Court should deny her motion to compel.

1.    The Court Should Deny the Motion Because Carter Already
      Unsuccessfully Sought the Information at Issue

In November 2020, Carter moved to compel Southwest to produce additional documents in response to RFPs 6-7, 17-19, 21 and Interrogatory 3. Dkt. Nos. 132-133. Of particular note here are RFP 6 and Interrogatory 3, which sought documents and information regarding (a) complaints to Southwest about employees' social media activities and investigations into the same (RFP 6); and (b) employees whose social media activities were reported to Southwest (Interrogatory 3). Pl's App. 6, 15. The Court denied Carter's motion to compel Southwest to provide further responses to these requests because they were not limited to "similarly situated" employees. SWA App. 12-13, 15-18.

Despite this Court's prior order, Carter now requests information that was covered by her prior requests and this Court's order denying discovery as to comparator employees. In fact, Carter implicitly concedes this point, noting that the information she now seeks (both in her written requests and in her correspondence with Correll) "was responsive to her First Set of Discovery Requests (RFP 6(B) and Interrogatory 3)" – *i.e.*, the **very requests that were the predicate for her unsuccessful motion to compel**. Pl's Brief at 19. Carter thus is attempting to use her current requests and this motion to compel to obtain documents and information that this Court already concluded was beyond the scope of permissible discovery. *See, e.g., Pac. Marine Propellers, Inc.*

10

*v. Wartsila Defense, Inc.*, 2018 U.S. Dist. LEXIS 56973, *8-9 (S.D. Cal. Apr. 3, 2018) (denying motion to compel responses to document request that sought "substantially similar" information as earlier-served discovery, and collecting cases concluding the same); *United States Bank, N.A. v. Viola*, 2017 U.S. Dist. LEXIS 194395, *4 (N.D. Ohio Nov. 27, 2017) (denying motion to compel because defendant "has previously sought this and other similar information in a previous motion to compel."); *Aid for Woman v. Foulston*, 2005 U.S. Dist. LEXIS 8420, *12-13 (D. Kan. May 6, 2005) ("[I]f the court rules on a motion to compel and denies discovery of a particular topic or subject, the requesting party should not be entitled to seek that same information by means of another method of discovery.").

Carter contends that this Court's ruling on her previous motion to compel is of no import because her current request are "far narrower" than the prior ones. Pl's Brief at 19. To the extent they are narrowed, they are narrowed along an irrelevant dimension that does not cure the issues that caused this Court to deny Carter's prior motion.[3] Carter does not dispute this point. Instead, she simply articulates a different argument – one that was available to her at the time of her earlier motion – that she claims renders the similarly situated status of other Flight Attendants irrelevant. Pl's Brief at 17-18. Specifically, Carter claims that, unlike her prior requests which sought information supporting her Title VII claims, she now seeks that information to support her RLA and DFR claims against the Union. Pl's Brief at 18. And according to Carter the "scope of

---

[3] Carter's requests are, in one sense, "narrower" than her prior ones but they are not narrowed with an eye toward resolving the concerns this Court articulated when it denied her prior motion to compel. With her latest discovery, Carter has done the legal equivalent of propounding the same requests that the Court previously rejected but limiting them by only seeking information on employees who are left handed. That hypothetical revised request is "narrowed" but the issue that caused the Court to deny the motion to compel remains.

US_ACTIVE-163025400.2

discovery relevant to Carter's RLA and Duty of Fair Representation claims is broader and not limited to 'similarly-situated employees[.]" Pl's Brief 18.[4]

The legal distinction Carter attempts to draw between her Title VII and her RLA claims is inaccurate. Contrary to Carter's contention, comparator information relating to other employees is not essential in all Title VII cases. *Jones v. Wireless*, 2010 U.S. Dist. LEXIS 162757, *9-10 (N.D. Tex. May 25, 2010); *Smith v. City of Philadelphia*, 285 F. Supp. 3d 846, 852 (E.D. Pa. 2018) ("the test for Title VII claims based upon religious discrimination is … [that] [a] plaintiff may … show[] either that a similarly situated person outside of the protected class was treated more favorably, ***or*** that the circumstances of the adverse action give rise to the inference of discrimination"). Rather, a plaintiff's ultimate obligation in Title VII and RLA cases is to demonstrate an unlawful motive, which he or she may seek to do by pointing to the treatment of similarly situated comparators.[5] The key point here is that Carter's RLA claim does not expand the scope of discovery. The mere assertion of a new basis for discovery – particularly one that existed at the time of the ruling on Carter's previous motion to compel – does not make this Court's ruling on her prior requests a nullity.

Finally, the fact that Correll suggested in a single email that he would produce certain documents does not support Carter's motion. In the email at issue, Carter specifically identified

---

[4] Comparator information is not essential in all Title VII cases. Instead, it is a method of showing discriminatory intent via circumstantial evidence. While disparate treatment of similarly situated is perhaps the most common method of satisfying this legal burden, the actual evidence required is simply to proffer evidence of the employer's motivation. The same is true with respect to Carter's RLA and DFR claims.

[5] Southwest notes that despite Carter's statement that showing disparate treatment of similarly situated comparators is an essential component of all Title VII claims (*see* Pl's Brief at 18), she takes precisely the opposite position in her pending motion for summary judgment. There, Carter expressly states that comparator evidence is wholly unnecessary to *both her Title VII and RLA claim*.

US_ACTIVE-163025400.2

the RFP 6(B) and Interrogatory 3 as the predicate for her informal request even though the Court had already denied her motion to compel on these items. Pl's App. 103-104. While Carter was free to seek voluntary production of documents that were not the subject of any pending request, she cannot enlist the Court in enforcing remarks from counsel made in an effort to avoid additional court entanglement in the discovery process. The Court's job is to compel responses to specific discovery requests, not to interpret and manage the informal arrangements between counsel. *See, e.g.*, *Hunter Douglas Metals, Inc. v. New Bay Fin. Shipping Co.*, 1988 U.S. Dist. LEXIS 12086, *6 n.2 (E.D. La. Oct. 27, 1988) (noting that the court "cannot enforce and informal agreement" regarding the production of deponents); *Cardiovascular Specialty Care Ctr. of Baton Rouge, LLC v. United Healthcare of La., Inc.*, 2016 U.S. Dist. LEXIS 140686, *3 (M.D. La. Sept. 27, 2016) ("While the parties are free to agree to conduct unopposed discovery after the deadlines to do so, those informal agreements will not be enforced by the Court.").

In sum, Carter's latest discovery requests are – like the similar ones that came before them – improper. Thus, the Court should deny Carter's motion to compel.

### 2.   Carter's Requests are Beyond the Scope of the Limited Follow Up Discovery Authorized By the Court

As discussed above, the Court authorized Carter to engage in discovery only for limited purposes – to follow up regarding (a) Southwest's October 30-31, 2021 document production; and (b) the deposition of the Union's 30(b)(6) representative. None of the discovery at issue in Carter's motion is in these categories.

***Privilege Log*** – While Carter discussed privilege issues in her motion seeking additional time to conduct discovery, the Court's order setting the scope of permissible discovery does not authorize additional discovery or meet and confer on privilege log issues. *See* Dkt. No. 155.

US_ACTIVE-163025400.2

*Responses to RFP 6 and Interrogatory 3* – The Court's order did not entitle Carter to continue seeking documents in response to requests the Court had already addressed. To the contrary, the Court made clear that it would not permit Carter to relitigate the prior motion to compel. Thus, Carter's request to compel Southwest to produce documents in response to First RPF 6 and Interrogatory 3 – both of which the Court has already addressed – does not fall within the narrow parameters the Court identified.

*RFP 1 and Interrogatory I* – Carter claims that the Court's order authorized her to propound RFP 1 and Interrogatory 1 because they relate to the Union's deposition testimony. Pl's Brief at 15, 19. As stated above, Carter did not specifically request more time to propound discovery *to Southwest* regarding the November 30, 2021 deposition of the Union's representative. Rather, Carter asked the Court for additional time to conduct follow up discovery regarding documents produced in response to the then-pending motion to compel (which the Court denied in its entirety); and to follow up regarding Southwest's October document production. Dkt. No. 139 at 11-13. Thus, the context in which the Court's previous order was rendered suggests that it allowed Carter to conduct limited additional discovery from *the Union* regarding the Union's deponent. This reading alone would necessitate denying Carter's motion to compel responses to Interrogatory 1 and RFP 1.

Even if the Court disagrees with Southwest's reading of the Order, Carter's suggestion that Interrogatory 1 and RFP 1 constitute "follow-up discovery regarding Local 556's November 30th deposition" lacks merit. Carter articulates the entire predicate for this assertion in the prefatory statement to her requests: "Given LOCAL 556's inability to identify which persons turned in Southwest flight attendants for their social media activities (Hillhouse Deposition Tr. 29:6-9) …" Pl's App. 23-24. Not only is this insufficient to shoehorn requests into the subjects of permissible

14

discovery the Court authorized, the cited testimony does not even stand for the proposition asserted. The entirety of the referenced testimony is as follows:

> Q: Okay. Mr. Hillhouse, does the grievance committee keep records of who turns in flight attendants?
>
> A: No.

Pl's App. 97 (Hillhouse 29:6-9).

This testimony does not demonstrate that Local 556 is unable to identify "which persons turned in Southwest flight attendants for their social media activities," but merely speaks to information maintained by the grievance committee, not Local 556 in general. Moreover, the single word of testimony does not demonstrate that Local 556 (or even the grievance committee) is unable to identify who turned in Southwest flight attendants for social media activity.[6] Stated simply, Carter's basis for connecting her discovery requests and the Court's Order on permissible discovery topics is in fact no connection at all.

Finally, the mere fact that a Local 556 representative commented on a topic during her deposition cannot be enough to render it a permissible subject of discovery under the Court's order. The deponent testified about all manner of topics during her deposition. The Court's order cannot be read to authorize all discovery that relates to any matter discussed the deposition as that would nullify the Court's subject matter limitation entirely. The most appropriate way to give effect to the Court's order is to, at a minimum, understand it was authorizing *Cater* to take follow up discovery from *the Union* regarding new issues that arose during the deposition. It should not be

---

[6] Southwest communicated to Carter that it also does not "keep records" of who turns in employees for social media activities. Pl's App. 100. Does Carter take that to mean that Southwest is *incapable* of providing her with the information she now seeks and that her motion should be denied? Apparently not.

US_ACTIVE-163025400.2

read to allow Carter to seek discovery against any party on every topic that arose during the deposition.

   ***RFP 3*** – Carter contends that the Court's order authorizes this request because it relates to alleged deficiencies with Southwest's prior production. Pl's Brief at 23-24. That is not the nature of the request. Indeed, in Carter's own telling, RFP 3 seeks information regarding "reports about other flight attendants' social media activities and [] various Facebook posts." Pl's Brief at 20. The collection and production of documents and communications regarding third party social media complaints is not "follow-up discovery and conferences … regarding [Southwest's] October 30-31 document production", it is a restatement of a previously rejected line of discovery seeking information about the social media activities of non-similarly situated employees. This request has nothing to do with Southwest's October 30-31 production.

   3.   <u>The Documents and Information Carter Seeks Are Immaterial to Her DFR and RLA Claims</u>

   The three specific discovery requests that are the subject of Carter's motion seek documents and information regarding social media complaints made by Local 556 "representatives." As discussed above, Carter unsuccessfully sought these records from Southwest in connection with her initial discovery requests and first motion to compel. Carter now claims that these documents are not relevant to her claims against Southwest, but instead support her DFR and RLA claims against the Union. Pl's Brief at 13-19. However, the documents and information Carter seeks cannot advance these claims.

   Based on the theory Carter articulates in her motion, that fact that any Union representative reports any Flight Attendant for misconduct is somehow relevant to Carter's claim against Local 556. For example, in Carter's telling, if in 2013 a New York-based Flight Attendant who periodically represented co-workers at investigatory meetings reported a Florida-based Flight

16

Attendant for making violent threats on social media, that would support the contention that Audrey Stone's 2017 report of Carter's harassing social media messages suggests Local 556 violated the DFR and RLA. There is no support for this proposition.

Carter also contends that the information she requests will demonstrate that Local 556 engaged in discriminatory conduct towards *other* nonmembers and union opponents, which will support her DFR and RLA claims. It will do no such thing. The mere fact of a complaint regarding social media activity – whether it involves an objector or otherwise – does not demonstrate or even suggest that the report was unlawful. All Southwest employees are entitled to the protections of federal and state employment laws and Southwest policies. The fact that they may have utilized these policies to report potential misconduct does not suggest a breach of the DFR or RLA. Moreover, even if Carter could prove that a Local 556 representative employee reported an objector because of his or her membership status (something that the documents and information requested cannot show), that would not support a finding of liability against Local 556 in that specific case and certainly not with respect to Carter. The Union is only liable for the conduct of its officials when they act in their official capacity as agents of Local 556. *See NLRB v. Local 815, Int'l Bhd. of Teamsters*, 290 F.2d 99, 104 (2d Cir. 1961) (where union representative acts in individual rather than as union's agent, the union is not liable for the conduct); *NLRB v. Int'l Bhd. of Boilermakers*, 321 F.2d 807, 810 (8th Cir. 1963) (same). A Southwest employee utilizing company policies to make a complaint is not acting as Local 556 representatives. Thus, contrary to Carter's suggestion, "*every* instance when a Local 556 official turned in a flight attendant" is not somehow a presumptive breach of the DFR.[7] Pl's. Brief 18.

---

[7] The only authority Carter cites in support of this proposition (which she only includes in a footnote) are administrative decisions from the NLRB. Not only are these cases factually distinguishable, they do not address the claims at issue in this case. Rather, they relate to the

US_ACTIVE-163025400.2

While Carter points to the potential existence of a pattern or practice of reporting union objectors, she cites no actual evidence suggesting the existence of any such thing. Carter's statements in this regard are mere speculative musings that cannot support her discovery requests. *See, e.g.*, *Murillo Modular Grp., Ltd. v. Sullivan*, 2016 U.S. Dist. LEXIS 145308, *25-26 (N.D. Tex. Oct. 20, 2016) ("speculation that discovery could be relevant" is insufficient to support a request); *Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 671 (E.D. La. 2003) (party must have some non-speculative factual basis to obtain discovery).[8]

The information Carter seeks is not relevant to her claims and is predicated on speculation that unsupported by any record evidence. The Court should deny Carter's motion.

### C.    Carter Can More Efficiently Obtain Information Responsive to Interrogatory 1 and RFPs 1 and 3 From Other Parties Southwest Would Be Unduly Burdensome

Even if Carter could demonstrate that some or all of the discovery she seeks is relevant, the Court should still deny her motion. "[A] district court must limit otherwise permissible discovery if … 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (*quoting* Fed. R. Civ. P. 26(b)(2)(C)). Similarly, the court will disallow discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

---

circumstances in which a union can violate section 8(b)(2) of the NLRA. While in some cases the NLRB uses the DFR framework in analyzing a potential 8(b)(2) violation, the underlying claim is nevertheless is a statutory one. Additionally, the RLA has no provision that is comparable to section 8(b). *See Bhd. of Locomotive Eng'rs v. Kan. City S. Ry.*, 26 F.3d 787, 795 (8th Cir. 1994).

[8] Carter is effectively asserting that, because she believes the Union breached the DFR with respect to her, she is entitled to investigate all conceivable conduct by any union official that she believes could reflect a breach of the DFR against others.

18

is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." *KeyCorp v. Holland*, 2016 U.S. Dist. LEXIS 147926, *13-14 (N.D. Tex. Oct. 26, 2016) (*quoting* Fed. R. Civ. P. 26(b)(2)(C)).

Carter has deposed has deposed the Union's 30(b)(6) representative and former Union President. Contrary to Carter's suggestion, she cites no evidence indicating that these deponents were unable to provide her with the information she seeks. Rather, Carter cites a single word of testimony indicating that the Local 556 "grievance committee" does not maintain a list of Flight Attendants who report others. As counsel indicated to Carter, Southwest also does not maintain such a record. Pl's App. 100-101.

Additionally, as Southwest indicated to Carter, unlike the Union, it does not know all of Local 556's representatives over the nearly nine year period over which Carter requests documents and information. Thus, Southwest cannot ascertain whether a particular report was generated by a Local 556 representative. While Carter claims that she can provide Southwest a list of Local 556's representatives, she has not done so. Rather, Carter identified 12 individuals "for now." Pl's App. 101. If Carter could provide a complete list of Local 556 representatives from 2013-present, she should have provided it rather than providing a "starter" list subject to endless subsequent additions. To further complicate matters, even if Carter provided a list, Southwest has no mechanism of verifying her representations regarding who served as a Union representative.

Carter could have made this request to the Union in 2017. Instead, Carter waited until the near expiration of the discovery deadline and then, based on a single word of testimony, seeks to require Southwest to conduct a manual review of its records to identify social media complainants and their Union representative status. Southwest should not be required to undertake this

US_ACTIVE-163025400.2

burdensome task, particularly given that, as discussed above, the documents and information are sought based on speculative assertions of relevance.

### D.   Southwest Did Not Waive Objections to RFP 3

Carter contends that, because Southwest initially failed to respond to RFP 3, it waived objections to that request. However, a minor error in converting Plaintiff's PDF requests that was promptly corrected when raised does not support a waiver finding.

It is true that a court can find that untimely objections to written discovery are waived. However, "[w]aiver is not automatic," and this Court "has discretion to determine whether good cause exists to preclude waiver." *Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 156 (S.D. Tex. 2009). In assessing whether a finding of waiver is appropriate, courts consider the circumstances behind the delayed response "to determine 'whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance'; consider subsequent actions by the party to ascertain whether 'it was acting in good faith, as opposed to acting in a disinterested, obstructionist or bad faith manner'; and take into account any resulting prejudice and the need to preserve the integrity of the rules; and may consider any lesser appropriate sanction." *RE/Max Int'l, Inc. v. Trendsetter Realty, LLC*, 2008 U.S. Dist. LEXIS 38101, *16 (S.D. Tex. May 9, 2008); *see also Leath v. Tracer Constr. Co.*, 2009 U.S. Dist. LEXIS 147937, *10-12 (E.D. Tex. Apr. 8, 2009). In this regard, "[m]inor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Enron Corp. Savings Plan*, 258 F.R.D. at 156.

Southwest did not intentionally fail or refuse to respond to RFP 3. The inadvertent and brief delay in serving its response was the result of a simple administrative error that occurred when converting Carter's PDF requests into a usable "Word" format. During this process, Carter's final request (RFP 3) was unintentionally left off the page. Once Plaintiff's counsel noted the issue,

US_ACTIVE-163025400.2

Southwest promptly served its response to RFP 3. Additionally, Carter does not claim that the brief delay was prejudicial. In sum, there is no basis for finding waiver. *See, e.g.*, *Solorzano v. Shell Chem. Co.*, 2001 U.S. App. LEXIS 30166, *15-17 (5th Cir. May 18, 2001) (upholding court order sustaining objection to interrogatory and refusing to find waiver where "failure to respond to the interrogatories was an oversight"); *Duncan v. Nunez*, 2019 U.S. Dist. LEXIS 194200, *2-3 (W.D. La. Nov. 7, 2019) (untimely objections were not waived where defendant "overlook[ed] the Third RFP" and thus served untimely objection).

### E.      <u>Southwest Privilege Log Adequately Supports the Claimed Privileges</u>

Carter objects to Southwest's assertion of privilege with respect to six documents on its privilege log. Carter's highly-technical objections lack merit and serve to unnecessarily delay the progress of these proceedings.

The attorney-client privilege protects confidential communications made to counsel for the purpose of obtaining legal advice; and communication from an attorney to his or her client that is made in the course of giving legal advice. *Am. Airlines, Inc. v. Travelport Ltd.*, 2012 U.S. Dist. LEXIS 198417, *11 (N.D. Tex. July 16, 2012). Privilege communications include those providing "an opinion on law" or "assistance in some legal proceeding." *SEC v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006). *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (communications that involve "giving of information to the lawyer to enable him to give sound and informed advice" are privileged)

Each of the privilege log entries are communications between Southwest management and in-house legal counsel. *See Airlines, Inc. v. Travelport Ltd.*, 2012 U.S. Dist. LEXIS 198417, *12. These communications principally relate to in-house counsel's provision of advice regarding the application of the RLA to specific legal issues and discussions of internal investigations regarding potential improper conduct and/or contractual issues. Courts have found similar materials

21

privileged and should do the same here.[9] *See, e.g.*, *Miniex v. Hous. Hous. Auth.*, 2019 U.S. Dist. LEXIS 106217, *11 (S.D. Tex. Mar. 1, 2019) (communication regarding internal investigation conducted pursuant to company policy was privilege); *S. Scrap Material Co. v. Fleming*, No. 01-2554, 2003 U.S. Dist. LEXIS 13558, at *9 (E.D. La. July 29, 2003) (communication regarding investigations are often privileged because they are "an important part of an attorney's legal services to a client").

## III.   CONCLUSION

As set forth above, the Court should deny Carter's motion to compel in its entirety.

Dated:  October 12, 2021                    Respectfully submitted,

/s/ Paulo B. McKeeby
Paulo B. McKeeby
State Bar No. 00784571
Brian K. Morris
State Bar No. 24108707
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
bmorris@reedsmith.com

**ATTORNEYS FOR DEFENDANT**
**SOUTHWEST AIRLINES CO.**

---

[9] Plaintiff states that Southwest's privilege log entries do not demonstrate that the subject matter of the communications concerned legal advice. Pl. Brief at 26. Carter apparently surmises that, for example, correspondence with in-house counsel regarding RLA issues – the statute that governs labor relations in the industry in which Southwest operates – was merely a personal musing proffered for his own edification. But if that were true the correspondence would have no potential relevance to the case and would not even need to logged

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was filed via the Court's ECF filing system which caused a copy of same to be served on all parties on this 12th day of October, 2021.

*/s/ Paulo McKeeby*
Paulo B. McKeeby

23