# EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF TEXAS
 2                          DALLAS DIVISION

 3     ************************************************************

 4     CHARLENE CARTER,

 5          Plaintiff,

 6
       VS.
 7                                CASE NO.  3:17-cv-2278-X

 8     SOUTHWEST AIRLINES CO., AND
       TRANSPORT WORKERS UNION OF
 9     AMERICA, LOCAL 556,

10          Defendants.

11
       ************************************************************
12
                      TRANSCRIPT OF MOTION TO COMPEL
13          HEARD BEFORE THE HONORABLE REBECCA RUTHERFORD
                    UNITED STATES MAGISTRATE JUDGE
14
                        DECEMBER 11, 2020
15                        VIDEOCONFERENCE

16     ************************************************************

17

       APPEARANCES:
18
       FOR THE PLAINTIFF:          Mr. Matthew B. Gilliam
19                                 NATIONAL RIGHT TO WORK
                                   LEGAL DEFENSE FOUNDATION, INC.
20                                 8001 Braddock Road, Suite 600
                                   Springfield, Virginia 22160
21                                 mbg@nrtw.org

22                                 Mr. Jeffrey Daniel Jennings
                                   LIBERTY JUSTICE CENTER
23                                 208 South LaSalle Street
                                   Suite 1690
24                                 Chicago, Illinois 60604

25
```

APP. 1

1                        A P P E A R A N C E S
                              (Continued)
2

3    FOR THE DEFENDANT
     SOUTHWEST AIRLINES CO.:          Mr. Michael Arthur Correll
4                                     Reed Smith, LLP
                                      2850 North Harwood Street
5                                     Suite 1500
                                      Dallas, Texas 75201
6                                     mcorrell@reedsmith.com

7
     Official Court Reporter:         Thu Bui, CSR, RMR, CRR
8                                     1100 Commerce Street, #1654
                                      Dallas, Texas 75242
9                                     (214) 753-2354

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24          Proceedings recorded by mechanical stenography,

25   transcript produced via computer.

1                        I N D E X

2                                                    PAGE

3     Appearances...........................         1

4     Proceedings...........................         4

5     Adjournment...........................        21

6     Reporter's Certificate................        22

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2        (Call to order of the court.)

3        THE COURT:  This Carter versus Transport Workers Union

4   of America Local 556, et al., and this is -- our case number is

5   3:17-cv-2278-X.

6                May I have appearances for the Plaintiff,

7   please.

8        MR. GILLIAM:  Matthew B. Gilliam for the Plaintiff.

9   And, Your Honor, we also have the Plaintiff herself on the call

10  today, Plaintiff Charlene Carter.

11       THE COURT:  Very well.  Appearing perhaps as -- oh,

12  there you are.  "Zoom user" is your name?

13       MR. GILLIAM:  That is she.

14       THE COURT:  Thank you.  We'll make sure that the record

15  reflects that you attended as well.

16                And for the Defense?

17       MR. CORRELL:  Michael Correll for Defendant, Southwest

18  Airlines, Your Honor.

19       THE COURT:  Thank you.

20                And is there anyone else who tops put their

21  appearance on the record?

22       MR. JENNINGS:  Your Honor, this is Jeffrey Jennings for

23  Plaintiff Charlene Carter.

24       THE COURT:  All right.  Very well.  Thank you.

25                So I have the motion to compel that we are

1    taking in consideration on an expedited basis given the

2    timeline for discovery completion.  I see on the docket that

3    there is also a motion to extend the deadline to complete

4    discovery, but that is not before me.  Judge Starr will take

5    that up himself.

6              And as I've noted in the order setting this

7    hearing, the parties do appear to have had quite a bit of

8    discussions so I did not require additional meet and confers.

9    And I think for the purposes of our hearing today, it would

10   make sense to use the Plaintiff's reply as an agenda.  Is that

11   all right with the attorneys?

12        MR. GILLIAM:  Yes, Your Honor.

13        MR. CORRELL:  Yes, Your Honor.

14        THE COURT:  All right.  Then let's take a look at

15   Request for Production 6 and 7 and Interrogatory Number 3.

16              Mr. Gilliam, did you want to say anything with

17   respect to the -- it looks like we're mostly arguing over the

18   comparator and how the comparator should be defined.  Is that

19   how you would characterize the dispute?

20        MR. GILLIAM:  Yeah.  That's the primary dispute, Your

21   Honor.  Southwest argues that the comparators or that that --

22   that we seek information from flight attendants that aren't

23   similarly situated, and our argument is that we -- we are

24   seeking information regarding flight attendants that are

25   similarly situated because they held the same job and

1    responsibilities and the -- their employment status was

2    determined by the same person, especially -- or same persons

3    under the social media policies.

4                    And we -- I guess the other point that we would

5    make is that we're not at the merit stage of the case, and

6    we're -- we shouldn't -- we should have an opportunity to seek

7    all of the relevant facts to put them before the Court and to

8    make our case within reason.

9                    The other, I think, point to be made is that

10   under the Fifth Circuit's decision in *Brown* from just this past

11   August, the court -- well, evidence of disparate treatment of

12   less similarly-situated employees is still valid evidence of

13   pretext even if it's less probative, and we -- we think that

14   that is a key point, Your Honor.

15             THE COURT:  Mr. Correll, do you want to respond?

16             MR. CORRELL:  Yes, Your Honor.

17                    First of all, I would note the RFPs you just

18   mentioned and the interrogatory you just mentioned don't

19   include one policy.  They include three different policies, so

20   social media, bullying and hazing, and every sexual harassment

21   issue that has come up at Southwest Airlines.

22                    Second of all, the standard here is extremely

23   rigorous when articulated by the Fifth Circuit.  *Brown* is

24   consistent with that.  In *Brown*, the court was addressing two

25   different people involved in the same incident and reviewed by

1    the same person.  So the difference between them that made them

2    not similarly situated was that they didn't have the same

3    awareness of the policy that they violated.  That was the only

4    distinction.

5                    And the other court cases that -- that the

6    Plaintiff cites are similarly distinguishable.  There was an

7    individual -- there are other individuals who had done the

8    exact same thing, rescinded their resignation.  Or in

9    *Shackelford*, the court actually rejected the similarly situated

10   -- the nonsimilarly-situated individuals simply because they

11   took lunch at a different time of day.

12                   The practical reality here is there is no way

13   for us to go through, short of a seven million document linear

14   review, to find every single time one of these 13 people have

15   in any way touched one of these policies.  They've been

16   deposed.  A corporate representative has been deposed on these

17   issues.  There was no objection to the completeness of the

18   corporate representative's testimony or preparedness.  And

19   Plaintiff still cannot identify who they want.

20                   The way we get comparator information is we

21   identify people and give the information to those -- on those

22   people.  Every name we've gotten, we've produced the

23   information.  There's no good way to identify this information,

24   and it's not relevant.

25                   I mean, the best example would be is in

1  deposition it came out that there was a social media violation

2  that involved two flight attendants at a concert holding up a

3  sign saying Southwest flight attendants wants to get you drunk

4  on a plane, consistent with a country strong.  Well, that would

5  be responsive, according to Plaintiff, and probative of whether

6  or not there was discrimination against Charlene Carter.

7  That's just not true.  And it's going to impose such an

8  extraordinary burden that there's just no way to do it,

9  especially given that there's no indication there's anything

10  else out there as evidenced by the testimony of the people

11  themselves.

12      THE COURT:  So that sounds a little bit different than

13  just objecting that the comparator is not adequately defined.

14      MR. CORRELL:  Well, because there's no definition -- if

15  Mr. Gilliam would present me with the names of the specific

16  flight attendants who he believes that are similarly situated,

17  we can argue about whether they are specifically similarly

18  situated.  But what Southwest is being asked to do is assume

19  every flight attendant who violated any one of these policies

20  or even a complaint about one of these policies is similarly

21  situated and search for all of those documents.

22      MR. GILLIAM:  Well, Your Honor, I would say that what

23  came out in the deposition is that the -- well, one, is that

24  Southwest's representative had difficulty identifying anyone

25  who -- well, other flight attendants who were subject to social

1    media policy discipline.  And, unfortunately, Southwest has not

2    been able to demonstrate any -- any of the burdens they're

3    asserting.  You know, the reviewing seven million e-mails is a

4    conclusory assertion, and they haven't really been able to

5    demonstrate why or -- why they would have to go through seven

6    million e-mails.

7             The other problem is, as with Interrogatory 3,

8    we can't identify the specific flight attendants who were

9    reported or disciplined under these social media policies

10   because we've not received discovery on them.  We're -- that's

11   why we're seeking this motion in the first place, is so that we

12   do have knowledge of the -- the other flight attendants, full

13   knowledge of the other flight attendants who were disciplined

14   under the social media policies.

15            And think that the -- that in the deposition,

16   Southwest corporate representative said that for the social

17   media policies themselves -- or social media policy itself,

18   there were roughly 300 -- maybe 340 flight attendants who were

19   reported for social media violations in the last seven years,

20   and the number is substantially less for those who were

21   reported for bullying and hazing policies.  I think that number

22   was roughly 44 reports and 143 reports under the sexual

23   harassment policies, and that's within the last seven years.

24       MR. CORRELL:  So what Defendant -- Plaintiff wants is

25   for us to search for 600 individuals across seven million

1    documents.

2              And, Your Honor, I apologize for this.  I

3    thought my representations to counsel during confer would be

4    sufficient, but I'll state on the record as an officer of the

5    court that we collected seven million documents; that the

6    upload cost to be able to search them would be $100,000; that

7    that cost would recur every month because we're talking

8    multiple terabytes of data, and that doesn't include the

9    employee review costs.  And so that's where the burden comes

10   here, and it's been discussed with Plaintiff's counsel multiple

11   times.

12             So -- and, by the way, there was no objection

13   to the corporate representative's testimony.  Had they felt the

14   corporate representative's testimony was inadequate, they are

15   permitted to object and request that we suspend the deposition

16   and get additional information.  They never once complained.

17             Mr. Simms was there.  He was prepared through a

18   dozen different witnesses, and we were fully equipped to answer

19   any questions he wanted.  But they're not allowed to, in the

20   words of the Fifth Circuit, rummage through our files looking

21   for comparators.

22             He's asked the people who were involved, which

23   has been already overly inclusive group 'cause it's supposed to

24   be limited to decisionmakers, absent actual proof of cat's paw.

25   He's already asked all of those people those questions, so

1    there has been discovery on it.  And they can't identify anyone

2    who engaged in something remotely close.

3              And let's not forget, it's not just a violation

4    of the policy.  You don't get to compare holding up a sign at a

5    concert to sending abortion videos and pictures of female

6    genitalia.  It's not the same.  That's where the -- exactly the

7    same issue comes in, and that's why the Fifth Circuit has such

8    a rigorous standard for requiring this discovery.

9         MR. GILLIAM:  The rigorous standard comes in on the

10   merits, Your Honor.  And we filed -- or we served these

11   discovery request on Southwest in April of 2019, negotiated

12   with them extensively to try to narrow all of our disputes.

13   And, frankly, we've requested the information prior to the

14   deposition in hopes of being able to have the -- the discovery

15   to use during the deposition, which we didn't.

16             You know, it's very difficult to refresh a

17   witness's recollection when you don't have any of the documents

18   so that you can discuss specific flight attendants' cases.

19        MR. CORRELL:  And Plaintiff's counsel was informed in

20   May of 2020 during our first conferral on the issue of

21   similarly-situated status that we would not change this

22   position and he should move if he felt it appropriate.  We

23   waited until after taking the depositions to pursue that

24   avenue.

25        MR. GILLIAM:  And, Your Honor, I would just say we have

1    submitted those main e-mails in the record, and they do not

2    reflect that Southwest would change its position.  They said

3    that they -- that we should negotiate for search terms and

4    custodians immediately, and in good faith we undertook to do

5    that.

6           MR. CORRELL:  And I represented to counsel in phone

7    calls that on the issue of similarly-situated status, we did

8    not agree, we would not agree, and we cited the same Fifth

9    Circuit authority provided to the Court.

10          THE COURT:  So I think I've heard enough on this issue

11   now.

12               So, Mr. Gilliam, I have read *Brown* and I do not

13   agree that it stands for the proposition that you assert.  I do

14   not think it authorizes broad discovery to discover evidence of

15   less similarly-situated employees as comparators.  The Fifth

16   Circuit authority that I am familiar in the employment context

17   is that the Fifth Circuit is strict with respect to its

18   definition of what is a similarly-situated employee.

19               Even in *Brown*, the paragraph that you took your

20   quote from begins with the language that -- it states:

21   Typically, a plaintiff who proffers treatment of fellow

22   employees to show pretext in a Title 7 retaliation action must

23   show that the termination was taken under nearly identical

24   circumstances as those faced by the comparator.  And that

25   nearly identical and the similarly situated are -- come up

1    again and again in the Fifth Circuit, and they're very strict.

2    So I don't find that your discovery requests are appropriately

3    narrowed.

4              I will accept counsel's representation that it

5    would require the review of seven million documents at the cost

6    of $100,000 and that is not proportionate in this circumstance

7    unless Plaintiff is willing to share the cost of that review,

8    which we could discuss if you wanted to.

9              MR. GILLIAM:  Your Honor, I guess we could consider it.

10             MR. CORRELL:  And, Your Honor, to clarify, that's just

11   the cost of uploading the data, that does not include attorney

12   review.

13             THE COURT:  So it may not be something that you can

14   address right now, Mr. Gilliam.  You may have to visit with

15   your client about that.  But as it stands, I will not order

16   that production.  If you want to visit with your client about

17   cost shifting, then you can approach defense counsel about

18   that; and if you can't resolve it, you can come back to me.

19   But without some agreement by the Plaintiff to bear at least

20   half of those costs, I won't order it.

21             MR. GILLIAM:  Okay.  Understood, Your Honor.

22             THE COURT:  All right.  So then the next -- if we're

23   going with the reply, the next category would be Request for

24   Production Number 17.  And this is relating to employees who

25   signed grievance settlement agreements?

1        MR. GILLIAM:  That's correct, Your Honor.

2        THE COURT:  And just to make sure I'm clear on the

3   facts, Plaintiff did or did not sign a settlement agreement --

4   grievance settlement agreement?

5        MR. GILLIAM:  The Plaintiff did not.  She -- she

6   rejected the -- signing one of the grievance settlement

7   agreements.  But Southwest has -- one of its arguments and

8   defense against reinstatement is that Ms. Carter refused to

9   sign one.  And Ms. Carter refused to sign one because she

10  believed that it would subject her to immediate termination

11  without -- and would require her to waive her rights.

12             We also seek the -- the information because we

13  argue that the recall supporters who signed such agreement

14  were -- were subject to -- or could be subject to disparate

15  treatment and that the union, I guess, union supporters who

16  were repeat offenders had -- were treated more favorably under

17  those agreements.

18        THE COURT:  Mr. Correll, do you want to respond?

19        MR. CORRELL:  Sure, Your Honor.  First of all, I'm not

20  aware of us relying on the rejection of the LCA as a defense.

21  That may have been articulated at some point by one of my

22  predecessors.  I don't even think that's permissible.  This is

23  Rule 408, offers to compromise that can't be used to show

24  liability, the amount of the dispute, impeachment, bias, any of

25  those things.  So I don't know that either party has the

1    ability to use Ms. Carter's acceptance, rejection, or offer of

2    a settlement agreement in any way in this case.

3                 Further, I think expanding that to encompass

4    other people's settlements not only falls afoul of the

5    similarly-situated discussion that we just had, but it also

6    runs into the same Rule 408 barrier.  I don't know what we're

7    going to be able to do with last chance agreements if we get to

8    trial on it.  I mean, this is not -- this is -- it's not

9    probative of anything in any way that it's allowed to be used.

10               THE COURT:  Do you have anything further, Mr. Gilliam?

11               MR. GILLIAM:  Yes, Your Honor.  Just that we -- I guess

12   I don't -- I don't see where Rule 408 problem comes in.  We --

13   we do think that it's relevant to showing disparate treatment.

14               THE COURT:  All right.  I think it is too attenuated to

15   any disparate treatment given that Plaintiff did not sign a

16   last chance or grievance settlement agreement, so that request

17   is denied.

18               All right.  Now, moving on to Number 3.  The

19   header is "Southwest must produce responsive information in its

20   possession."

21               MR. GILLIAM:  Yes.

22               THE COURT:  What is the nature of the dispute here?

23               MR. GILLIAM:  Here, this is just a reply to Southwest

24   various arguments against, I guess, regarding proportionality

25   and also against the -- the other issues that were raised.

1        THE COURT:  Is it directed to any particular discovery

2   request?

3        MR. GILLIAM:  This one is not, Your Honor.

4        THE COURT:  Okay.  Then let's move on to Request for

5   Production Number 19.

6        MR. GILLIAM:  Okay.  And --

7        THE COURT:  How are you defining Ms. Carter's protected

8   class?

9        MR. GILLIAM:  Evangelical Christians would be her

10  protected class.

11       THE COURT:  All right.  So what is it that you contend

12  Southwest has not produced?

13       MR. GILLIAM:  We're seeking documents and

14  communications that Southwest has about other flight

15  attendants' religious accommodation requests to, again, show

16  disparate treatment that others outside of Ms. Carter's

17  protected class were treated more favorably than she was.

18              Southwest did not entertain any sort of

19  accommodation request for her.  And to the extent that they did

20  for other individuals outside of Ms. Carter's protected class,

21  we believe that the Southwest documents and communications

22  about those were -- accommodation request would -- are relevant

23  to our claims.

24       THE COURT:  And did -- again, on the facts.  Did she

25  request a religious accommodation?

1      MR. GILLIAM:  No, Your Honor, she did not.  But it's --

2  we -- under the Supreme Court's decision in *EEOC v. Abercrombie*

3  *& Fitch*, while the request for an accommodation might be

4  relevant, it's not a necessary condition of liability.  And so

5  it's -- it's really not something that we have to show on the

6  merits.

7      THE COURT:  Mr. Correll.

8      MR. CORRELL:  Your Honor, on the reasonable

9  accommodation claim, there's only three elements in play here.

10  Did Ms. Carter request an accommodation with the *Abercrombie*

11  exception, if it applies, and did Southwest provide one; and if

12  so, did it meet the standards of the statute.

13      It's undisputed that Ms. Carter didn't request;

14  it's undisputed that Southwest didn't give one.  So the only

15  fact that should be determined -- or the only legal issue to be

16  determined is whether or not Ms. Carter was entitled to an

17  accommodation.  Nothing about other people's accommodations has

18  any bearing on that question.

19      Further, even if it did, we run into the same

20  similarly-situated status problem where we already have

21  testimony from the corporate representative informed by

22  interviews with the ACT team that Southwest has never been

23  asked to provide accommodation with respect to the social media

24  policy, the bullying policy, or the sexual harassment policy in

25  the religious accommodation context.  They've also never been

1    asked to or provided an accommodation retroactively, whereas

2    here the person violated the policy and then revealed that they

3    claimed it was based on religious belief.  So there's not going

4    to be anything in there similarly situated even if it was

5    relevant, which it is not.

6              THE COURT:  Mr. Gilliam?

7              MR. GILLIAM:  No, Your Honor.  I don't have anything.

8              THE COURT:  Okay.  So for similar reasons that the

9    earlier requests were denied, this one is also denied.  It

10   is -- given that Ms. Carter did not request a reasonable

11   accommodation, its relevance is outweighed by the burden.

12   Also, I think that we made the argument -- the argument may

13   conflate the religious accommodation and the disparate

14   treatment issues which are, I think, are separate and do not --

15   should not be conflated.

16              Moving on, then, to the next bullet point or

17   header with regard to the Railway Labor Act.  I think we've

18   addressed the burden issue.

19              I don't know that we directly talked about

20   RFPs 18, 19, or 21.  Do we need to address those specifically?

21              MR. GILLIAM:  RFP 19 is the religious accommodation --

22              THE COURT:  Okay.

23              MR. GILLIAM:  -- claim, so we've addressed that.

24              RFP 21, Southwest represents that -- I mean,

25   the way that I -- I took Southwest to represent in their brief,

1    that the custodians have produced all of their responsive

2    documents on that subject matter.  If that is correct, then I

3    guess we have nothing further on that point.

4                    RFP 18 seeks Southwest documents regarding

5    other flight attendants' complaints of religious

6    discrimination.

7         THE COURT:  So are you seeking to compel -- are you

8    asking me today to compel something with respect to Request for

9    Production Number 18?

10        MR. GILLIAM:  And I don't -- I don't fully know

11   Southwest's position at this stage as to whether they produced

12   all of the responsive documents on that.  I'm not sure that

13   that was specifically addressed in Southwest's response.

14        THE COURT:  Mr. Correll, do you want to --

15        MR. CORRELL:  RFP 18, just like the other RFPs we've

16   talked about, asks for all complaints regarding religious

17   beliefs, use, or practices and all Southwest responses thereto.

18                    Again, this is not tailored in any way where we

19   can go in and effectively find what they're looking for.  It's

20   not -- it's not limited to people who had similar views to

21   Ms. Carter or expressed something in a way that we can look

22   for, so we run into the similarly-situated problem as it is.

23                    I will say that we have gone to the custodians

24   with respect to RFP 18, and we have gathered documents

25   regarding complaints involving religious views and the social

1    media policy, the bullying policy, and the sexual harassment

2    policy.  And to the extent there was anything -- I don't

3    believe there was -- we've collected and produced it.  But that

4    was one of the ones that we addressed with the custodians prior

5    to the motion.

6           THE COURT:  All right.  And it sounds like to the

7    extent that the other RFPs -- the universe of documents that we

8    would be talking about would be in the seven million range,

9    that documents responsive to this request may be even greater?

10          MR. CORRELL:  No, Your Honor.  The seven million

11   derives from the 13 custodians identified in the briefing.

12   That is everything on hold for them from 2013 until today.  And

13   so all of that material has been preserved for those

14   13 individuals.  If we expanded beyond the 13, then, yes, that

15   number would exponentially grow.

16          THE COURT:  Okay.  As it stands now, the request to

17   compel is denied; however, if Mr. Gilliam and Ms. Carter wish

18   to discuss cost shifting, then I will allow the parties to

19   continue.  If you need my help -- if Ms. Carter agrees to some

20   cost sharing with respect to that discovery production, then

21   you can come back.  But in the absence of any agreement about

22   cost shifting to the Plaintiff for the burden for the

23   discovery, the request is denied.

24          MR. GILLIAM:  Understood, Your Honor.

25          MR. CORRELL:  Thank you, Your Honor.

1          THE COURT:  All right.  I want to make sure that we

2     have addressed all of the matters that were brought to the

3     Court on this motion that was referred to me because, I guess,

4     there's some question about the discovery deadline, and I want

5     to make sure that nothing is stuck or hung up because of

6     something that's been referred to me.

7                    So, Mr. Gilliam, do you believe that we've

8     addressed everything in your motion?

9          MR. GILLIAM:  Yes, Your Honor.  I think we've addressed

10    all of the -- all of the requests in the motion.

11         THE COURT:  Mr. Correll, do you agree with that?

12         MR. CORRELL:  Yes, Your Honor.

13         THE COURT:  Okay.  Then I believe our hearing will be

14    adjourned.  I wish all of you a safe and healthy holiday season

15    and a happy new year.

16         MR. GILLIAM:  Thank you, Your Honor.

17         MR. CORRELL:  Thank you, Your Honor.

18         THE COURT:  Thanks.

19            (WHEREUPON, the proceedings were adjourned.)

20                         * * * *

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2              I, Thu Bui, CRR, RMR, Official Court Reporter,
   United States District Court, Northern District of Texas, do
3  hereby certify that the foregoing is a true and correct
   transcript, to the best of my ability and understanding, from
4  the record of the proceedings in the above-entitled and
   numbered matter.

5

6                              _____/s/ Thu Bui_____
                               Official Court Reporter
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25