# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>     Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>     Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S REPLY TO DEFENDANT TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556'S RESPONSE TO HER MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................... ii

SUMMARY ....................................................................................................1

ARGUMENT AND AUTHORITIES.............................................................2

   I.     Local 556 failed to contest the union's violation of Carter's RLA-protected rights ..........2

  II.    Local 556 failed to rebut with legal arguments or evidence the presumption that the union breached its duty of fair representation by attempting to discipline Carter, or contest that the union acted arbitrarily, discriminatorily, and in bad faith..........4

 III.   Local 556 violated Carter's Title VII rights when it caused Southwest to fire her, intentionally discriminated against her by failing to accommodate her religious beliefs and practices, and otherwise discriminated against her ...........................................5

 IV.   The CBA arbitration's "just cause findings" are immaterial to Carter's RLA, Title VII, and duty of fair representation claims.................................................6

CONCLUSION................................................................................................7

i

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Acklin Stamping,*
    351 N.L.R.B. 1263 (2007) ....................................................................................................4

*Ballew v. Cont'l Airlines, Inc.,*
    668 F.3d 777 (5th Cir. 2012) ..............................................................................................7

*Brady v. Trans World Airlines, Inc.,*
    401 F.2d 87 (3d Cir. 1968).................................................................................................2

*Caravan Knight Facilities Mgmt., Inc.,*
    362 N.L.R.B. 1802 (2015) ..................................................................................................4

*CareFlite v. Off. And Prof'l Emps. Int'l Union,*
    612 F.3d 314 (5th Cir. 2010) ..............................................................................................7

*Carmona v. Sw. Airlines Co.,*
    536 F.3d 344 (5th Cir. 2008) ..............................................................................................7

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768 (2015).............................................................................................................6

*Graphics Commc'ns Local 1-M (Bang Printing),*
    337 N.L.R.B. 662 (2002) ....................................................................................................4

*Grimes v. BNSF Ry. Co.,*
    746 F.3d 184 (5th Cir. 2014) ..............................................................................................7

*Hawaiian Airlines, Inc. v. Norris,*
    512 U.S. 246 (1994).............................................................................................................7

*In re Strack & Van Til Supermarkets,*
    340 N.L.R.B. 1410 (2004) ...............................................................................................2, 3

*Int'l Union, Sec., Police and Fire Profs. Of Am. (SPFPA),*
    360 N.L.R.B 430 (2014) .....................................................................................................5

*Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of Am. v. NLRB,*
    368 F.2d 12 (5th Cir. 1966) ................................................................................................5

*NLRB v. Allied Aviation Fueling of Dallas LP,*
    490 F.3d 374 (5th Cir. 2007) ..............................................................................................4

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*N. River Energy Corp. v. United Mine Workers of Am.*
 664 F.2d 1184 (11th Cir. 1981) ...........................................................................3

*Paperworkers Local 1048 (Jefferson Smurfit Corp.),*
 323 N.L.R.B. 1042 (1997) ...................................................................................3

*Roscello v. Sw. Airlines Co.,*
 726 F.2d 217 (5th Cir. 1984) ............................................................................2, 4

*Steele v. Louisville & N.R. Co.,*
 323 U.S. 192 (1944)............................................................................................2

*United States Steel Corp. v. UMWA,*
 519 F.2d 1249 (5th Cir 1975) .............................................................................3

## Rules & Statutes

42 U.S.C. § 2000e.........................................................................................................1

42 U.S.C. § 2000e(j)....................................................................................................6

42 U.S.C. § 2000e-2(c)(3)...........................................................................................6

45 U.S.C. § 151............................................................................................................1

45 U.S.C. § 152 (Fourth).............................................................................................2

45 U.S.C. § 152 (Eleventh).........................................................................................2

## SUMMARY

The Court should grant Carter's motion for partial summary judgment as to Transport Workers Union of America, Local 556 ("Local 556"), because the union does not dispute any of the material facts or contest any of her legal arguments. Local 556's Response to Carter's Motion for Summary Judgment (ECF 193) makes the very same arguments in opposition to Carter's claims under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("the RLA"), the Duty of Fair Representation, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"), that the union raised in its brief supporting its motion for summary judgment (ECF 182).

Carter's Response to Local 556's Motion for Summary Judgment (ECF 199-1) has already demonstrated why all of the union's arguments and claims from its motion for summary judgment are baseless. Therefore, Carter limits her Reply to showing there is no dispute of material fact, Local 556's arguments fail to address Carter's summary judgement arguments, and the union fails to discharge its burden to rebut the presumption that President Stone acted on behalf of Local 556 and the presumption that Local 556 violated the Duty of Fair Representation by attempting to fire Carter. Local 556 failed to oppose Carter's arguments with any legal authorities or evidence.

The Court should grant Carter's Motion for Partial Summary Judgment because (I) Local 556 failed to contest the union's violation of Carter's RLA-protected rights; (II) Local 556 failed to rebut with legal arguments or evidence the presumption that the union breached its duty of fair representation by attempting to discipline Carter, or contest that the union acted arbitrarily, discriminatorily, and in bad faith; (III) Local 556 violated Carter's Title VII rights when it caused Southwest to fire her, intentionally discriminated against her by failing to accommodate her religious beliefs and practices, and otherwise discriminated against her; and (IV) the CBA

arbitration's "just cause findings" are immaterial to Carter's RLA, Title VII, and Duty of Fair Representation claims.

## ARGUMENT AND AUTHORITIES

### I. Local 556 failed to contest the union's violation of Carter's RLA-protected rights.

Local 556 failed to contest that the union violated Carter's RLA-protected rights by causing her to be fired because of her protected activity. Unions violate an employee's rights under the RLA when an employee exercises RLA-protected rights, union officials cause her to be fired, and the employee's protected activities were a "substantial or motivating factor" for the union's adverse action. *See Roscello v. Sw. Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984) (citation omitted); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198 (1944) (holding that the RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights"); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102 (3d Cir. 1968) (footnote omitted) (holding that unions are liable under the RLA Sections 2 (Fourth) and (Eleventh) "for their actions in procuring a discharge which violates the employee statutory rights.").

Local 556 failed to contest the fact that President Stone, acting in her official capacity and on behalf of Local 556, caused Carter's termination for communications Carter made about the union's political activities, which fall within Stone's role as union president and exclusive bargaining representative. *See In re Strack & Van Til Supermarkets*, 340 N.L.R.B. 1410, 1412 n.10, 1430 (2004). President Stone was acting in her official capacity because Carter's communications were directed solely at the union and its president, and the union has a duty to

2

hear employee objections and grievances. Carter Br. 19-21, 40-42.[1] When union presidents act within the scope of their authority as union representative, as President Stone was with respect to Carter's objections to the union's activities, the union is liable for the officer's actions. *See e.g.*, *N. River Energy Corp. v. United Mine Workers of Am.*, 664 F.2d 1184, 1190 (11th Cir. 1981) (citing *United States Steel Corp. v. UMWA*, 519 F.2d 1249, 1253 (5th Cir 1975) (other citations omitted). When employees direct communications to a union president in her official capacity (e.g., criticizing the union and its leadership), the president's subsequent complaint based on those communications is considered made in an official capacity. *See In re Strack*, 340 N.L.R.B. at 1411-1412 n.10, 1430 (union caused employee's discharge when its president reported a vocal union opponent for alleged threats); *Paperworkers Local 1048 (Jefferson Smurfit Corp.)*, 323 N.L.R.B. 1042, 1044 (1997) (union attempted to cause dissident employee to be disciplined when its representative, who had knowledge of the employee's rules, reported employee).

There is no factual dispute that Southwest fired Carter for the private Facebook messages she sent to President Stone. (Carter App.222). Nor is there any dispute that President Stone reported Carter for the Facebook videos and messages that Carter privately messaged her opposing the union's representation of flight attendants at the Women's March, advocating for changes in leadership, and opposing the union's support for pro-abortion Planned Parenthood. (Carter App.105); Carter Br. 35-38. When there is no dispute about which employee activities motivated the employer's decision to fire the employee or the union's decision to cause the employee to be

---

[1] Carter's Brief in Support of her Motion for Partial Summary Judgment (ECF 171-1) shall be cited to herein as "Carter Br. ___". Carter's Response to Local 556's Brief in Support of its Motion for Summary Judgment (ECF 199-1) shall be cited to as "Carter Resp. ___". Carter's Appendix of Exhibits in Support of her Motion for Partial Summary Judgment (ECF 170) and (ECF 171-2), shall be cited to as "Carter App.___". Local 556's Brief in Response to Carter's Motion for Partial Summary Judgment (ECF 193) shall be cited to as "L556 Resp. ___".

fired, the only question is whether the employee's activities were protected. *See NLRB v. Allied Aviation Fueling of Dallas LP*, 490 F.3d 374, 379 (5th Cir. 2007); Carter Br. 40-42.

The Court should grant Carter's motion for partial summary judgment as to Local 556 because Carter's private Facebook messages and videos sent to Local 556 President Audrey Stone were RLA-protected, Local 556 caused Carter's termination for RLA-protected speech and activity, and Carter's messages and videos did not lose their protection. Carter Br. 31-38, 40-47.

## II.   Local 556 failed to rebut with legal arguments or evidence the presumption that the union breached its duty of fair representation by attempting to discipline Carter, or contest that the union acted arbitrarily, discriminatorily, and in bad faith.

Local 556 failed to address, let alone rebut, the presumption that a union breaches its duty of fair representation when it seeks to discipline an employee it represents. *See Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1805 (2015); *Acklin Stamping*, 351 N.L.R.B. 1263, 1263 (2007); *Graphics Commc'ns Local 1-M (Bang Printing)*, 337 N.L.R.B. 662, 673 (2002); *see also Roscello*, 726 F.2d at 221 ("[T]he union's duty of fair representation has been the same duty whether the union involved is covered by the NLRA or the RLA."); *see also* Carter Br. 47-48.  To rebut the presumption that it violated the duty of fair representation, the union's burden was to show that its actions were "done in good faith, based on rational considerations, and were linked in some way to its need effectively to represent its constituency as a whole." *Caravan Knight*, 362 N.L.R.B. at 1805 (citation omitted). Local 556 failed to demonstrate that disciplining Carter for union dissident speech served any such interests. Furthermore, Local 556 failed to present any evidence or legal argument disputing that the union acted arbitrarily, discriminatorily, and in bad faith when union President Stone attempted to fire Carter for her union opposition speech sent to the union in its official representative capacity. *See* Carter Br. 48-51.

Local 556's sole response to Carter's RLA and Duty of Fair Representation claims is the union's conclusory assertion—backed with no legal authorities or arguments—that Local 556

officers are not required to abdicate their federal rights. *See* L556 Resp. 15-16. But Carter demonstrated that Local 556 and its officers undeniably owe legal duties and obligations to represented employees under the RLA, the Duty of Fair Representation, and Title VII. Carter Br. 31-32 (RLA); Carter Br. 47-48 (Duty of Fair Representation); Carter Br. 51, 56-59 (Title VII). When federal law requires employees to surrender completely their rights to self-representation in deference to an exclusive bargaining agent, "both logic and equity dictate that such agent be impressed with a reciprocal duty … *to act for and not against those whom it represents*.'" *Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. NLRB*, 368 F.2d 12, 16 (5th Cir. 1966) (emphasis added).

The NLRB regularly finds that elected union officials are union agents. *See e.g., Int'l Union, Sec., Police and Fire Profs. of Am. (SPFPA)*, 360 N.L.R.B. 430, 436 (2014) (citations omitted). Union officers are presumed to act in their official capacity absent compelling evidence to the contrary. *Id*. While union officials' elected status "does not mandate a finding of agency per se, it is persuasive and substantial evidence that will be decisive in the absence of compelling contrary evidence." *Id*. (citations omitted). Local 556 failed to present compelling evidence rebutting the presumption that President Stone acted for the union. Carter has demonstrated that, by reporting Carter for her opposition to union activities, policies, and representation, she was communicating with President Stone in her official capacity. Carter Br. 40-42.

### III. Local 556 violated Carter's Title VII rights when it caused Southwest to fire her, intentionally discriminated against her by failing to accommodate her religious beliefs and practices, and otherwise discriminated against her.

Carter demonstrated that Local 556, in addition to intentionally discriminating against Carter by failing to accommodate her religious beliefs and practices, also violated Title VII's disparate treatment provisions by causing and attempting to cause Southwest to fire her because of her religious observances, practices, and beliefs, and intentionally discriminating against Carter by

deviating from its duty of fair representation and treating her differently from other represented employees by reporting her. 42 U.S.C. § 2000e-2(c)(3); § 2000e(j); Carter Br. 56-59; Carter Resp. 31-37. Local 556 altogether fails to contest or oppose Carter's Title VII discharge claim.

Local 556's only legal argument in response to Carter's Title VII failure to accommodate claim is that Carter did not request an accommodation. L556 Resp. 22-23. While "[a] request for accommodation … may make it easier to infer motive, [it] is not a necessary condition of liability." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). Local 556 violated Carter's Title VII rights when the union president attempted to discipline Carter instead of complying with its affirmative obligation to accommodate Carter's religious beliefs. Carter Br. 56-57. Causing or attempting to cause an employee to be fired or disciplined because of her religious practice "is *synonymous* with refusing to accommodate the religious practice." *Abercrombie*, 575 U.S. at 772 n.2 (emphasis in original). President Stone, by her own admission, complained to Southwest about Carter's religious messages, and stated that those religious messages violated the company's Social Media Policies. Carter Br. 57; (Carter App.105). Local 556 has failed to address or contest any of these arguments. Carter also demonstrated that Local 556's arguments based on her deposition testimony are equally baseless. Carter Resp. 34; L556 Resp. 21-22.

## IV.   The CBA arbitration's "just cause findings" are immaterial to Carter's RLA, Title VII, and Duty of Fair Representation claims.

The CBA arbitration's "just cause" findings are immaterial to Carter's RLA, Title VII, and duty of fair representation claims, and the arbitrator himself conceded that he was not taking into account Carter's RLA-protected rights and activities, or her religious beliefs and practices. Carter Resp. 42, 42 n.20, 44. The arbitration findings are limited in scope to whether Southwest had just cause to fire Carter under the CBA, and have no bearing on whether Local 556 violated Carter's RLA or Title VII rights, or breached its duty of fair representation. Carter Resp. 38-45.

Contrary to Local 556's characterizations, the arbitrator concluded only that Southwest had "just cause" to terminate Carter under the collective bargaining agreement, and could not reach Carter's RLA, Title VII, or duty of fair representation claims, which were beyond the scope of the arbitrator's authority. Carter Resp. 42, 42 n.20, 44. Carter's direct evidence, combined with the arbitrator's own admissions that Carter's RLA and Title VII claims were beyond the scope of his authority, foreclose the relevance of his findings beyond the question of whether Southwest had "just cause" under the strict confines of the CBA. Carter obtained direct evidence through the federal discovery process regarding President Stone's reasons for reporting Carter's conduct that she did not have access to during the arbitration and that were beyond the scope of whether Southwest had "just cause" to fire Carter. (Carter App.105).

Consistent with U.S. Supreme Court and Fifth Circuit precedent, this Court has also decided that the arbitrator's "just cause" determination from the CBA arbitration did not foreclose Carter's RLA, Duty of Fair Representation, and Title VII claims. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 191 (5th Cir. 2014); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777 (5th Cir. 2012) ("[T]he assertion of any right that is not created by a CBA is … not subject to binding arbitration under the statute.") (quoting *CareFlite v. Off. and Prof'l Emps. Int'l Union,* 612 F.3d 314, 320–21 (5th Cir. 2010)); (ECF 69, pp.10-11).

## CONCLUSION

For these reasons, the Court should grant Carter's motion for partial summary judgment against Local 556 on its liability for violating Carter's rights, and allow the parties to proceed to trial on the matter of remedies.

Dated: October 18, 2021                    Respectfully submitted,

7

s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

s/ Jason E. Winford (*with permission*)
David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
Jason E. Winford
Texas Bar No. 00788693
*jwinford@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
4300 MacArthur Avenue, Suite 165
 Dallas, Texas 75209
Tel: 214-378-6675
Fax: 214-378-6680

*Attorneys for Plaintiff Charlene Carter*

## Certificate of Service

I hereby certify that on October 18, 2021, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam