# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>            Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>            Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S REPLY TO SOUTHWEST AIRLINES CO.'S RESPONSE TO HER SECOND MOTION TO COMPEL DISCOVERY** |

**TABLE OF CONTENTS**

                                                                                                **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

SUMMARY .....................................................................................................................................1

ARGUMENT AND AUTHORITIES...............................................................................................1

    I.   Carter's Second RFP 1, RFP 3, and Interrogatory 1..........................................................1

          A.  Second RFP 1, RFP 3, and Interrogatory 1 seek information relevant to
              Carter's DFR and RLA claims................................................................................2

          B.  Second RFP 1, RFP 3, and Interrogatory 1 seek information that is proportional ........4

          C.  Carter seeks information within the scope of the Court's Discovery Order ..................5

          D.  Second RFP 1, RFP 3, and Interrogatory 1 does not seek information
              precluded by the Court's ruling on the First Motion to Compel....................................6

    II.  Southwest failed to support attorney-client privilege claims in privilege log
        entries 1-6.........................................................................................................................7

    III. Southwest should produce social media discipline documents it agreed to produce ..........9

    IV. Carter filed her Motion to Compel before the discovery deadline and promptly after
        Southwest confirmed that it would not produce documents ..............................................9

CONCLUSION................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                       Page(s)

*Acklin Stamping*,
   351 N.L.R.B. 1263 (2007) .......................................................................................2

*Burns v. Thickel Chem. Corp*
   483 F.2d 300 (5th Cir. 1973) ..................................................................................5

*Caravan Knight Facilities Mgmt., Inc.*,
   362 N.L.R.B. 1802 (2015) .......................................................................................2

*E.E.O.C. v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017) ...............................................................................7, 8

*FDIC Corp. v. LSI Appraisal LLC*,
   2014 WL 12561102 (D.C. Cal. July 21, 2014) .......................................................9

*Graphics Commc'ns Local 1-M (Bang Printing)*,
   337 N.L.R.B. 662 (2002) .........................................................................................2

*Heller v. City of Dallas*,
   303 F.R.D. 466 (N.D. Tex. 2014) ............................................................................4

*Holmes v. N. Texas Health Care Laundry Coop. Ass'n*,
   2016 WL 1366269 (N.D. Tex. Apr. 6, 2016) ........................................................10

*In re Strack & Van Til Supermarkets*,
   340 N.L.R.B. 1411 (2004) .......................................................................................3

*Int'l Union, Sec., Police and Fire Profs. of Am. (SPFPA)*,
   360 N.L.R.B. 430 (2014) .........................................................................................3

*Landry v. Swire Oilfield Servs., LLC*,
   232 F.R.D. 360 (D.N.M. 2018) ................................................................................9

*Langley v. IBM*,
   2019 WL 4577115 (W.D. Tex. Sept. 20, 2019) ....................................................10

*Lopez v. Don Herring Ltd.*,
   327 F.R.D. 567 (N.D. Tex. 2018) ............................................................................5

*Milazza v. KG Enters., Inc.*,
   1999 WL 1327394 (D.N.H. Feb. 16, 1999) ............................................................9

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*NLRB v. Brookwood Furniture*,
    701 F.2d 452 (5th Cir. 1983) ............................................................................................3

*NLRB v. Interbake Foods, LLC*,
    637 F.3d 492 (4th Cir. 2011) ........................................................................................7, 8

*Paperworkers Local 1048 (Jefferson Smurfit Corp.)*,
    323 N.L.R.B. 1042 (1997) ..............................................................................................3

*Roscello v. Sw. Airlines Co.*,
    726 F.2d 217 (5th Cir. 1984) ..........................................................................................2

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944) ........................................................................................................2

*Terrell v. Feldstein Co., Inc.*,
    468 F.2d 910 (5th Cir. 1972) ..........................................................................................3

*U-Haul Co. v. Gregory J. Kamer, Ltd.*,
    2013 WL 1249702 (D. Nev. Mar. 26, 2013) ..................................................................9

*United States v. Chen*,
    99 F.3d 1495 (9th Cir. 1996) ..........................................................................................8

*Valmont Indus., Inc. v. NLRB*,
    244 F.3d 454 (5th Cir. 2001) ..........................................................................................3

*Vann v. Mattress Firm*,
    Civil Action No. H-12-3566, 2014 WL 1365943 (S.D. Tex. Apr. 7, 2014)...................6

**Rules & Statutes**

Fed. R. Civ. P. 26(b)(1)..............................................................................................2, 3, 6

Fed. R. Civ. P. 26(b)(2)(B) ..............................................................................................5

Fed. R. Civ. P. 26(b)(5)....................................................................................................7

Fed. R. Civ. P. 26(e)(1)(A) ..............................................................................................6

## SUMMARY

The Court should grant Carter's Second Motion to Compel Discovery from Southwest because Carter's Second RFP 1, RFP 3, and Interrogatory 1 seek relevant and proportional information identifying Local 556 officials who reported flight attendants' social media activities, identifying the names and activities of the flight attendants they reported, and producing the union officials' reports. Carter Br. 13-16, 20-23.[1] Contrary to Southwest's arguments, Carter's requests are follow-up discovery based on deficiencies in Southwest's October 30-31, 2020 document production, and seek information that was not precluded by this Court's ruling on the First Motion to Compel. Carter Br. 18-19, 23-24. Southwest also failed to support its attorney-client privilege claims, and produce social media discipline documents it agreed to produce. Carter Br. 25-31. This Court has good cause to grant Carter's Motion to Compel because Carter filed her motion before the discovery deadline, and promptly after Southwest confirmed it would not produce documents and failed to produce agreed-upon social media discipline documents. *See infra* at 9-10.

## ARGUMENT AND AUTHORITIES

### I. Carter's Second RFP 1, RFP 3, and Interrogatory 1.

The Court should order Southwest to produce responsive information for Carter's Second RFP 1, RFP 3, and Interrogatory 1, which seek documents and information that is (A) relevant to Carter's DFR and RLA claims; (B) proportional to the needs of the case; (C) within the scope of the Court's May 5, 2021 Discovery Order; and (D) not precluded by this Court's First Motion to Compel ruling. *See also* Carter Br. 13-16, 18-24.

---

[1] Carter's Brief Supporting her Second Motion to Compel Discovery from Southwest (ECF 158-3; ECF 174 (redacted); ECF 177 (unredacted) shall be cited to herein as "Carter Br. ___". Carter's Appendix of Exhibits in Support of her Motion to Compel (ECF 171-2), shall be cited to as "App.___". Southwest's Response to Carter's Brief Supporting her Second Motion to Compel Discovery (ECF 203) shall be cited to as "SWA Resp. ___".

1

**A. Second RFP 1, RFP 3, and Interrogatory 1 seek information relevant to Carter's DFR and RLA claims.**

Contrary to Southwest's arguments, Carter's Second RFP 1, RFP 3, and Interrogatory 1 seek documents and information about union officials' unlawful attempts to discipline union opponent flight attendants, which is directly relevant to Carter's DFR and RLA claims against Local 556. (App.24-26); SWA Resp. 21. Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."

Carter demonstrated that *every* instance when a Local 556 official turns in a flight attendant for a Social Media Policy violation is relevant to Carter's case because union officials presumptively act arbitrarily, discriminatorily and in bad faith, and violate their affirmative legal obligations under the DFR and RLA when they attempt to discipline represented employees. Carter Br. 18, 13-15, 20-21. "Under the duty-of-fair-representation standard, whenever a labor organization causes the discharge of an employee, there is a rebuttable presumption that it acted unlawfully." *See Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1805 (2015); *Acklin Stamping*, 351 N.L.R.B. 1263, 1263 (2007); *Graphics Commc'ns Local 1-M (Bang Printing)*, 337 N.L.R.B. 662, 663-64 (2002); *Roscello v. Sw. Airlines Co.*, 726 F.2d 217, 221 (5th Cir. 1984) ("[T]he union's duty of fair representation has been the same duty whether the union involved is covered by the NLRA or the RLA.");[2] *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198 (1944) (holding that the RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights" and imposes on them "an

---

[2] Contrary to Southwest's characterizations, these cases involved DFR standards, not just NLRA 8(b)(2) standards. *Id.*; Carter Br. 18-19, 18 n.4; SWA Resp. 22, 22 n.7.

2

affirmative constitutional duty equally to protect those rights.").[3]

Contrary to well-established precedent, Southwest incorrectly argues that union officials who attempt to discipline represented employees under its Social Media Policies are not acting as union representatives. SWA Resp. 22. Union officials are *presumed* to act in their official capacity absent compelling evidence to the contrary. *See e.g., Int'l Union, Sec., Police and Fire Profs. of Am. (SPFPA)*, 360 N.L.R.B. 430, 436 (2014) (citations omitted); *see also In re Strack & Van Til Supermarkets*, 340 N.L.R.B. 1410, 1411-1412 n.10, 1430 (2004); *Paperworkers Local 1048 (Jefferson Smurfit Corp.)*, 323 N.L.R.B. 1042, 1044 (1997). While union officials' elected status "does not mandate a finding of agency per se, it is persuasive and substantial evidence that will be decisive in the absence of compelling contrary evidence." *SPFPA*, 360 N.L.R.B. at 436.[4]

Carter is requesting information that can establish Local 556 officials' unlawful pattern of reporting recall supporters, nonmember objectors, and other union opponents for discipline, which is directly relevant to Carter's case. Carter Br. 13-15, 20-21; SWA Resp. 22. Evidence of a pattern or practice of discrimination is probative in an individual discrimination case for the purpose of showing motive, intent, or purpose. *Terrell v. Feldstein Co., Inc.*, 468 F.2d 910, 911 (5th Cir. 1972); *see also Valmont Indus., Inc. v. NLRB*, 244 F.3d 454, 465 (5th Cir. 2001) (recognizing relevant circumstantial evidence includes factors such as timing, the presence of other retaliation, deviation from ordinary practices); *NLRB v. Brookwood Furniture*, 701 F.2d 452, 465 (5th Cir.

---

[3] Contrary to Southwest's arguments, union officials' attempts to discipline represented flight attendants not only "*suggest*" DFR and RLA violations, they *presumptively are* DFR and RLA violations. SWA Resp. 22.

[4] While Southwest argues that union officials' reports of flight attendant "misconduct" are not relevant to Carter's "harassing social media messages," those characterizations are *Southwest's* theory of the case, not Carter's. SWA Resp. 21-22. The Federal Rules do not limit Carter to only seeking discovery relevant to Southwest's merits arguments. Fed. R. Civ. P. 26(b)(1).

3

1983). Contrary to Southwest's assertions, Carter also showed that Local 556 officials reported union opponents in violation of the DFR and RLA. Carter Br. 20-23; SWA Resp. 23.[5]

### B. Second RFP 1, RFP 3, and Interrogatory 1 seek information that is proportional.

Carter demonstrated that her requests are proportional considering (1) the importance of the constitutional issues and statutory rights at stake, (2) the importance of discovery in resolving the issues, (3) Southwest's control over the access to the discovery, and (4) that the discovery's benefits outweigh any burden. Carter Br. 15-16, 22-23.

Southwest fails to show that Carter's requests are not proportional, and it does not demonstrate any real burden or expense with producing the requested information. "A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490-91 (N.D. Tex. 2014) (citation omitted). Southwest's unduly burdensome arguments are baseless and fail to refute clear evidence that the company has Carter's requested information in its possession, custody, and control. Carter Br. 15-17, 22-23; (App.51-52, 58, 77-86); (App.89, Sims Tr. 107:17-24). While Southwest argues that it does not officially track who turns in employees, Carter demonstrated that the company possesses the information. Carter Br. 17; (App.51-52, 58, 77-86); (App.89, Sims Tr. 107:17-24); SWA Resp. 24; SWA Resp. 20 n.6. Simply put, Southwest can easily search its social media disciplinary reports for those cases where union officials reported another flight attendant, and it has failed to prove otherwise.

Southwest (not the union) takes possession, custody, and control of union officials' complaints

---

[5] Contrary to Southwest's assertions, the Federal Rules of Civil Procedure do not impose an evidentiary threshold on parties seeking discovery under the Federal Rules. Southwest's assertion that Carter must present evidence before she can seek it would defeat the discovery rules' purpose. SWA Resp. 23. Besides, Southwest has produced documents showing Local 556 officials' history and pattern of reporting union opponents. Carter Br. 20-23; (App.6, 58).

when they report other employees for Social Media Policy violations. Southwest is the party who investigates reported violations and issues discipline. Southwest received the union officials' reports and commented on those reports. Carter Br. 17; (App.51-52, 58, 77-86); (App.89, Sims Tr. 107:17-24). Southwest's arguments that Carter should have deposed Local 556 and President Stone are unavailing because Southwest is the party with possession, custody, and control over union officials' complaints to the company regarding other flight attendants' social media violations. SWA Resp. 24.

Carter presented evidence demonstrating that Southwest can produce responsive information without undue burden or cost, and Southwest failed to rebut that evidence. Carter Br. 15-17, 22-23; (App.51-52, 58, 77-86); (App.89, Sims Tr. 107:17-24). Southwest complains that Carter's Discovery Requests would "require Southwest to conduct a manual review of its records to identify social media complainants and their union representative status," but "[t]he fact that a [discovery request] calls for a thorough response—one that will take time and effort to answer—does not make it improper." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579 (N.D. Tex. 2018) (citing *Burns v. Thickel Chem. Corp.*, 483 F.2d 300, 307-08 (5th Cir. 1973). Southwest "must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Having failed to meet that burden, Southwest must conduct a reasonable search in response to Carter's requests.

**C. Carter seeks information within the scope of the Court's Discovery Order.**

Contrary to Southwest's arguments, Carter's Second RFP 1, RFP 3, and Interrogatory 1 are within the scope of the Court's May 5, 2021 Discovery Order because they are follow-up discovery with Southwest about deficiencies in its October 30-31, 2020 document production, and, specifically, its omission of Local 556 officials' reports to the company targeting flight attendants' social media activities, which were responsive to her First Discovery RFPs 3, 6(B), 25(B) and

5

Interrogatory 3. Carter Br. 19, 23-25; (App.6, 8, 15, 26, 55-56, 58, 100); (ECF 155, p.3); SWA Resp. 21. Southwest also has a duty to supplement responses to Carter's First Discovery requests under Fed. R. Civ. P. 26(e)(1)(A); Carter Br. 24-25.

### D. Second RFP 1, RFP 3, and Interrogatory 1 do not seek information precluded by the Court's ruling on the First Motion to Compel.

Carter's Second Discovery Requests do not seek information precluded by this Court's First Motion to Compel ruling because the second requests seek specific, relevant evidence regarding Local 556's DFR and RLA violations, and do not raise "similarly-situated employee" issues, which was this Court's basis for denying the First Motion. Carter Br. 17-19; (App.24-26); (ECF 144, pp.1-2); (SWA App.13, Tr.12:10-13:3). Whether an employee is "similarly-situated" is not a freestanding limitation on the Federal Rules' scope of discovery, but a limitation on what constitutes relevant circumstantial evidence in Title VII cases where the plaintiff must show the employer "treated [her] less favorably than a similarly situated person outside of her protected class." Carter Br. 17 (quoting *Vann v. Mattress Firm*, Civil Action No. H-12-3566, 2014 WL 1365943, at *2 (S.D. Tex. Apr. 7, 2014) (citations omitted).[6]

Carter's DFR and RLA claims do not limit relevant evidence based on whether represented employees were "similarly-situated" because every instance when a union official targets a represented employee for discipline is presumptively unlawful. *See supra* at 2-3. When relying on

---

[6] Carter agrees that comparator information relating to other employees is not essential in all Title VII cases: "Those issues only arise in Title VII disparate treatment cases *where a litigant relying on circumstantial evidence* must show that she was 'treated less favorably than a similarly situated person outside of her protected class." Carter Br. 17 (emphasis added); SWA Resp. 17; 17 nn.4-5. Carter stated, "Comparing a Title VII plaintiff's treatment to 'similarly-situated employees' is a limit on discovery in *the aforementioned Title VII context* only because [that] issue … is a necessary element—and the only relevant comparison—*in those cases*." Carter Br. 18 (emphasis added). Carter is nonetheless entitled to seek all evidence to oppose Southwest's and Local 556's claims and defenses, and was prejudiced by Southwest's failure to produce responsive discovery. *See* Fed. R. Civ. P. 26(b)(1).

6

circumstantial evidence in DFR and RLA cases there is no evidentiary burden to show the union treated the plaintiff less favorably than similarly-situated employees to prove a violation; there is a presumption that union officials always violate the DFR and RLA when they report represented employees for discipline. Southwest fails to cite any law to the contrary.

Contrary to Southwest's arguments, the Court's First Motion to Compel ruling did not prohibit Carter from seeking discovery based on any topic or subject matter at issue in this second motion. The Court denied the First Motion because Carter's First Discovery Requests were unduly burdensome and not appropriately narrowed based on relevant evidence. Carter Br. 17-19; (App.24-26); (ECF 144, pp.1-2); (SWA App.13, Tr.12:10-13:3). Carter's Second RFP 1, RFP 3, and Interrogatory 1 seek specific, relevant evidence of union officials targeting flight attendants for discipline. Carter Br. 13-15, 20-21; (App.24-26).

## II. Southwest failed to support attorney-client privilege claims in privilege log entries 1-6.

The Court should order Southwest to produce complete and unredacted copies of documents covered by privilege log entries 1-6 because the company has not provided adequate information to support its attorney-client privilege claims. Fed. R. Civ. P. 26(b)(5) requires that parties relying on a privilege log must "as to each document … set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d. 492, 502 (4th Cir. 2011)). For privilege log entry 6, Southwest argues that "correspondence regarding recall issues" is privileged because managers emailed the redacted comments at issue to a large group of recipients, which included an attorney. Carter Br. 28; (App.59-66). But, "the attorney-client privilege does not apply simply because documents were sent to an attorney." *BDO*,

876 F.3d at 696 (quoting *Interbake*, 637 F.3d at 502). "There is no presumption that a company's communications with counsel are privileged." *BDO*, 876 F.3d at 696.

For privilege log entries 1-3, Southwest fails to show that attorney-client privilege applies to "correspondence regarding social media and related issues." (App.59). While Southwest suggests that these communications are related to "discussions of internal investigations regarding potential improper conduct and/or contractual issues," such discussions are not inherently legal. SWA Resp. 26. Southwest does not show that these discussions specifically include communications about investigations performed *by or for* attorneys or communications made *for the purpose* of providing or obtaining legal advice.

For privilege log entries 4-5, Southwest suggests that the communications "*principally relate* to in-house counsel's provision of advice regarding the application of the RLA to specific legal issues" SWA Resp. 26 (emphasis added); (App.59). Southwest's assertion that counsel was applying the RLA to "specific legal issues" is conclusory: "Calling the lawyer's advice 'legal' … does not help in reaching a conclusion; it *is* the conclusion." *BDO*, 876 F.3d at 696 (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (emphasis in original). Parties asserting attorney-client privilege must describe the communication as more than just "legal" or "legal advice" to properly establish the privilege. *BDO*, 876 F.3d at 696, 697. Communications that *"principally relate"* to counsel's "advice" are not legal advice. Southwest's non-legal comments about RLA-issues involving employees or other issues are not protected.

Southwest's contention that Carter and the Court cannot test the company's privilege assertions after it failed to provide a timely privilege log is baseless. SWA Resp. 18. Courts have regularly found that a party waives privilege claims when it fails to provide a privilege log due to its "unjustified delay, inexcusable conduct, or bad faith." *See e.g., BDO*, 876 F.3d at 697. Despite

8

Carter's repeated requests from 2019 through May 2021, Southwest did not provide a privilege log to support its privilege claims until June 2, 2021. (ECF 139, p.11); (ECF 140-2, p.33 ¶7); (App.104, 106). To the extent that Carter cannot challenge the asserted privileges, Southwest should be deemed to have waived its privilege claims.

**III. Southwest should produce social media discipline documents it agreed to produce.**

Carter demonstrated that Southwest's spreadsheet summarizing documents it agreed to produce was insufficient to meet its obligations, and Southwest failed to oppose that argument. Carter Br. 12, 30-31. Southwest acknowledges that it agreed to produce Schneider's documents related to social media cases, but responds that the Court should deny Carter's motion because she cannot enforce Southwest's agreement to produce such documents. SWA Resp. 9, 17.

The Court should order Southwest to follow through with its discovery agreements because Southwest agreed to produce Schneider's documents, and Carter relied on the company's reassurances. *See Landry v. Swire Oilfield Servs., LLC*, 232 F.R.D. 360, 400 (D.N.M. 2018); Carter Br. 12, 30-31.[7] Southwest agreed to produce Schneider's documents in October 2020—before Carter filed her First Motion to Compel—and assured Carter that it would produce the requested information. (App.105); (ECF 140-2, pp.6-11); SWA Resp. 18.

**IV. Carter filed her Motion to Compel before the discovery deadline and promptly after Southwest confirmed that it would not produce documents.**

The Court should grant Carter's Motion to Compel because she filed her motion before the discovery deadline, and after complying with her obligation to resolve discovery disputes without

---

[7] *See also FDIC Corp. v. LSI Appraisal LLC*, 2014 WL 12561102, at *3 (D.C. Cal. July 21, 2014) ("Private agreements should be considered and honored by the courts."); *U-Haul Co. v. Gregory J. Kamer, Ltd.*, 2013 WL 1249702, at *3 (D. Nev. Mar. 26, 2013) (enforcing stipulation to additional deposition); *Milazza v. KG Enters., Inc.*, 1999 WL 1327394, at *2 (D.N.H. Feb. 16, 1999) ("If parties did not resolve most discovery matters by consent and stipulation the court would be inundated with discovery motions.").

9

court involvement. The Local Rules require counsel to meet and confer on any issues about discovery before filing a motion to compel. L.R. 7.1(a); *Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 2016 WL 1366269, at *8-9 (N.D. Tex. Apr. 6, 2016). Carter filed this Motion before the discovery deadline and promptly after Southwest's July 15, 2021 confirmation that it would not provide information responsive to Carter's Second Discovery Requests, and after Southwest produced the Schneider documents on July 21, 2021. Carter Br. 11-12. Despite Carter's diligence, she could not file the Motion earlier. Thus, Carter's case is unlike those where motions were filed after the discovery deadlines. SWA Resp. 12-14.

The Court also has good cause to decide Carter's Motion because Southwest withheld documents and again prevented Carter from completing discovery. *cf. Langley v. IBM*, 2019 WL 4577115, at *4 (W.D. Tex. Sept. 20, 2019). Carter has been diligent in attempting to obtain discovery, and was thwarted by Southwest's too-narrow view of what is relevant. While Southwest argues that the Court has already extended the fact discovery deadline, those extensions were necessitated by Southwest's delays. (ECF 139, pp.8-12, 14-19); (ECF 155, pp.1-2). Southwest's own actions caused the delays it complains about and deprived Carter of relevant and probative evidence prior to summary judgment briefing.

## CONCLUSION

For the foregoing reasons, Carter requests that the Court grant her Second Motion to Compel Discovery from Southwest as requested herein and in the accompanying Motion.

Dated: October 26, 2021                                        Respectfully submitted,

                                        s/ Matthew B. Gilliam
                                        Mathew B. Gilliam (*admitted pro hac vice*)
                                        New York Bar No. 5005996
                                        *mbg@nrtw.org*
                                        c/o National Right to Work Legal Defense
                                        Foundation, Inc.

        8001 Braddock Road, Suite 600
        Springfield, Virginia 22160
        Tel: 703-321-8510
        Fax: 703-321-9319

        <u>s/ Jason E. Winford (*with permission*)</u>
        David E. Watkins
        Texas Bar No. 20922000
        *dwatkins@jenkinswatkins.com*
        Jason E. Winford
        Texas Bar No. 00788693
        *jwinford@jenkinswatkins.com*
        JENKINS & WATKINS, P.C.
        4300 MacArthur Avenue, Suite 165
        Dallas, Texas 75209
        Tel: 214-378-6675
        Fax: 214-378-6680

        *Attorneys for Plaintiff Charlene Carter*

## Certificate of Service

I hereby certify that on October 26, 2021, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                    s/ Matthew B. Gilliam