UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-2278-X |
| | § | |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA, LOCAL 556, and | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions for summary judgment.[1]  The Court **DENIES** them, **VACATES** the prior scheduling order, and **SETS** this case for a jury trial beginning Monday, July 5, 2022.[2]  The parties **ARE ORDERED** to file a joint status report within fourteen days of the issuance of this Order indicating how many jurors and how many days are needed to try this case.[3]

## I.      Factual Background

Charlene Carter "is a Christian who believes that abortion is the taking of a human life contrary to the teachings of the Bible and the will of God."[4]  She was also

---

[1] Doc. Nos. 166, 169, and 181.

[2] The Court will set other trial-related deadlines in a subsequent scheduling order.

[3] Southwest recently filed a motion to continue the pre-trial and trial settings because the Court had not yet issued a ruling on the motions for summary judgment.  Doc. No. 230.  Carter partially opposes the motion.  Doc. No. 231.  In light of this Order and the Court *sua sponte* continuing the trial, the Court **DISMISSES AS MOOT** that motion to continue.

[4] Doc. No. 221 at 13.

a Southwest Airlines flight attendant for over twenty years.  She resigned from the union for Southwest flight attendants (defendant Local 556) in 2013 and was a non-member objector until her termination in 2017.  During those four years, Carter was involved in various opposition efforts aimed at the union and the union's then-president, Audrey Stone.   Carter supported a recall campaign, posted and sent messages on social media expressing her disapproval of the union and union leadership, and accused the union of corruption.   Specifically, she sent many messages to president Stone, who never responded.

The situation escalated when, in January 2017, president Stone and other Southwest flight attendants participated in the Women's March on Washington, D.C.  Planned Parenthood was an "exclusive premiere" sponsor of the Women's March.[5]  President Stone and other Southwest flight attendants marched with a banner that read "TWU Local 556 Working Women's Committee, The Union of Southwest Airlines Flight Attendants."[6]   The union used dues and fees to pay for union expenses associated with the Women's March.

Southwest flight attendants, including Carter, who were opposed to the union and engaged in the recall efforts learned about the Women's March and the union's participation.  A few weeks later, Carter sent several Facebook messages to president

---

[5] Doc. No. 170-7 at 3.

[6] Doc. No. 170-9 at 4.

Stone. They contained various criticisms and videos of "aborted bab[ies]."[7] For example, Carter said in one message that accompanied a video of an "aborted baby":

> This is what you supported during your Paid Leave with others at the Women's MARCH in DC….You truly are Despicable in so many ways…by the way the RECALL is going to Happen and you are limited in the days you will be living off of all the [Southwest Airlines Flight Attendants]..cant wait to see you back on line.[8]

President Stone was highly disturbed by Carter's messages and reported them to Southwest. Southwest investigated, determined that Carter had violated Southwest policies, and fired her on March 16, 2017. Carter filed a grievance challenge, and the parties eventually arbitrated the dispute, with the arbitrator concluding that Southwest had "just cause" under the Collective Bargaining Agreement to terminate Carter's employment. Then, Carter filed this suit in federal court. All parties now move for summary judgment.

District courts can grant summary judgment only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] Here, genuine disputes of material fact preclude summary judgment on all of Carter's claims.

## II.    Railway Labor Act Retaliation Claim Against Southwest and Local 556

Carter asserts a claim against both Local 556 and Southwest alleging that they retaliated against her for exercising her rights under the Railway Labor Act (the Act)

---

[7] Doc. No. 221 at 19.

[8] Doc. No. 222-17 at 3.

[9] FED. R. CIV. P. 56(a).

to object to union activity and oppose union leadership.  As for Local 556, Carter alleges that the union retaliated against her by reporting her activities and speech to Southwest.  As for Southwest, Carter alleges that it retaliated against her by terminating her employment.  All parties seek summary judgment on this claim.

Southwest and Local 556 contend that Carter does not have a private right of action under the Railway Labor Act, 45 U.S.C. § 152 Third and Fourth, and that, even if Carter has a private right of action, her claims constitute a "minor dispute" that deprives the Court of subject-matter jurisdiction.[10]

*First*, this is not a minor dispute.  Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation" while "major disputes" involve "the formation of collective bargaining agreements or efforts to secure them."[11]

Before this matter was transferred to the undersigned, the Honorable Karen Gren Scholer denied Southwest's motion to dismiss Carter's Railway Labor Act retaliation claim on the ground that Carter had plausibly alleged that she engaged in protected speech and activity.  Judge Scholer thoroughly analyzed Southwest's argument that Carter's claims were minor disputes, and she rejected it.[12]  As Judge Scholer explained, Carter's claims do not rest on and require interpretation of the collective bargaining agreement and do not bring the meaning of any collective

---

[10] *See Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, No. 21-50544, 2022 WL 1099008, at *1 (5th Cir. Apr. 13, 2022).

[11] *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994).

[12] *See* Doc. No. 69 at 8–11; *Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 566 (N.D. Tex. 2019) (Scholer, J.).

bargaining agreement provisions into dispute.[13]   Instead, Carter "alleges that Southwest terminated her employment for speech and activity protected by the [Railway Labor Act] and the Constitution, and that Southwest discriminated against her for her religious beliefs in violation of Title VII."[14]   Judge Scholer's conclusions were correct then and remain correct at the summary-judgment stage.   This case is about a major dispute.

*Second*, the Court finds that Carter likely does have a private right of action under § 152 Third and Fourth of the Railway Labor Act.   Section 152 Third states:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.   Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.[15]

Section 152 Fourth states, in pertinent part:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing.   The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.   No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or

---

[13] Doc. No. 69 at 10.

[14] *Id.*

[15] 45 U.S.C. § 152 Third.

remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions . . . .[16]

Courts have interpreted these provisions and the Act generally as granting strong rights and protections to employees and to the unions that represent them. The Act "forbid[s] any limitation upon freedom of association among employees" and "provide[s] for the complete independence . . . of employees in the matter of self-organization."[17]  "[T]he concept of 'complete independence' is inconsistent with forced representation, most especially when that forced representation is at odds with employees' will and desires."[18]

It appears that every court to consider whether employees have a private right of action to pursue their § 152 Third and Fourth rights in a major dispute has answered in the affirmative.  And they have done so by applying the Supreme Court's seminal opinion in *Cort v. Ash*.[19]  *Cort* established a four-factor test for deciding whether a statute lacking an express right of action nevertheless created one impliedly.  Those factors are: (1) whether the plaintiff is "of the class for whose especial benefit the statute was enacted;" (2) whether there is "explicit or implicit" "indication of legislative intent" either "to create such a remedy or to deny one;" (3) whether implying a right of action would be "consistent with the underlying

---

[16] 45 U.S.C. § 152 Fourth.

[17] 45 U.S.C. § 151a (2)–(3).

[18] *Russell v. NMB*, 714 F.2d 1332, 1343 (5th Cir. 1983).

[19] *Cort v. Ash*, 422 U.S. 66 (1975).

purposes of the legislative scheme;" and (4) whether the right of action is "traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a [right] of action based solely on federal law."[20] Subsequent Supreme Court opinions indicate that the second factor, legislative intent, is the lodestar of the analysis.[21]

Among the Circuits to have found an implied private right of action are the Third Circuit: "[M]any courts have implied a private right of action for individual employees within 45 U.S.C. § 152, Third & Fourth of the [Railway Labor Act.] Implying a private [right] of action for individual employees under [these sections] is appropriate given that those sections prohibit carriers from discriminating against *employees* in connection with union organizing activities."[22]  The Ninth Circuit: "[W]e conclude that [the plaintiff] has a private right of action under section 152, Fourth, and that his statutory claim is not a minor dispute."[23]  The First Circuit: "[We] affirm the district court's holding that Congress intended the Act to provide non-union railway employees, such as [the plaintiff], with a [right] of action against an employer that discharged an employee for organizing activities."[24]  The Eleventh and Second Circuits appear to be in accord.[25]

---

[20] *Id.* at 78 (cleaned up).

[21] *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979).

[22] *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 318 (3d Cir. 2004).

[23] *Fennessy v. Sw. Airlines*, 91 F.3d 1359, 1365 (9th Cir. 1996).

[24] *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 927 (1st Cir. 1983).

[25] *See Stewart v. Spirit Airlines, Inc.*, 503 F. App'x 814, 821 (11th Cir. 2013) (discussing *Fennessy*, stating that the plaintiff in *Fennessy* lacked "effective union representation," and stating

7

The Fifth Circuit has yet to decide the question of whether employees have a private right of action in major-dispute cases, but is "always chary to create a circuit split."[26]   In *Roscello v. Southwest Airlines*, a published opinion, the Fifth Circuit "assume[d] without deciding" that the plaintiff had a private right of action under § 152 Fourth.[27]   In doing so, the Fifth Circuit quoted the text of the statute and recognized that "[t]he parties [did] not question whether the plaintiff has a private right of action for wrongful discharge under" the Act.[28]   The Fifth Circuit then cited several cases from other courts holding that employees do have a private right of action to pursue their statutory rights.[29]   "Furthermore, there seems to be no doubt that this claim, which rests not upon a collective bargaining contract, but upon a charge that Southwest violated the statute, was within the jurisdiction of the district court . . . ."[30]

In any event, this Court agrees with the vast weight of authority implying a private right of action under the Railway Labor Act § 152 Third and Fourth.[31]   Under *Cort*, Carter is part of the class of people for whom the provisions were enacted—

---

that the *Fennessy* plaintiff's conduct "fell squarely within the protected activity described in § 152, Fourth"); *Lindsay v. Ass'n of Pro. Flight Attendants*, 581 F.3d 47, 52 (2d Cir. 2009).

[26] *Alfaro v. Comm'r*, 349 F.3d 225, 229 (5th Cir. 2003).

[27] *Roscello v. Sw. Airlines*, 726 F.2d 217, 220 n.2 (5th Cir. 1984).

[28] *Id.*

[29] *Id.* (citing *Griffin v. Piedmont Aviation, Inc.*, 384 F. Supp. 1070 (N.D. Ga. 1974); *Adams v. Fed. Express Corp.*, 470 F. Supp. 1356, 1361 (W.D. Tenn. 1979)).

[30] *Id.*

[31] *See generally Stepanischen*, 722 F.2d at 925–27 (conducting thorough analysis under *Cort v. Ash*).

8

carrier employees.[32]  The text of the statute also evinces Congress's intent to confer relatively expansive rights and rights of action to the class that it intended to benefit—carrier employees.[33]  Moreover, in the nearly forty years that courts have been implying a private right of action under these provisions, Congress has not protested or modified the Act to indicate that courts have been interpreting it incorrectly.[34]  Implying a right of action is also consistent with the legislative scheme,[35] which is to prohibit "*any* limitation upon freedom of association among *employees*" and "provide for the *complete independence* . . . of *employees* in the matter of self-organization."[36]  The fourth *Cort* factor is easy: "Nearly a century of evolving congressional regulation of railway labor relations . . . refutes any claim that this is an area traditionally left to state law."[37]

Southwest and Local 556 argue that the Fifth Circuit decided against a private right of action under § 152 Third and Fourth in an unpublished opinion, *PHI, Inc. v. Office & Professional Employees International Union*.[38]  In *PHI*, a collective bargaining agreement had expired and negotiations broke down when the parties were trying to form a new collective bargaining agreement.[39]  The unions and a group

---

[32] *Cort*, 422 U.S. at 78.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] 45 U.S.C. § 151a (2)–(3) (emphases added).

[37] *Stepanischen*, 722 F.2d at 927.

[38] 440 F. App'x 394 (2011).

[39] *Id.* at 396.

of individual airline pilots represented by the unions brought suit.[40]  The Fifth Circuit

affirmed the district court's finding that the case presented a minor dispute and that

the pilots did not have a private right of action under § 152 Third and Fourth.[41]  The

Fifth Circuit explained that the pilots' rights "must be brought through the Unions

as the[ir] certified representatives" and affirmed "for substantially the same reasons

as given by the district court."[42]

Carter argues that *PHI* is distinguishable from this case.  The Court agrees.

*PHI* involved a minor, not major, dispute.  It's also very important that in *PHI* the

unions took up and pursued the pilots' Railway Labor Act rights because the pilots

were union members.  The district court in *PHI* explained the distinction perfectly:

> [I]t's not that the individual pilots here, the individual employees in a
> general matter, would have no way to enforce their rights or have them
> enforced, but rather they have chosen to become union members and the
> Union is the exact entity that is supposed to enforce and protect their
> rights, and so the Union would have opportunity to do that.[43]

In contrast, Carter is not a union member.  She alleges, basically, that her employer

and her union colluded (for some different and some overlapping motivations) to deny

Carter her Act-protected rights to, among other things, oppose union leadership,

resign from membership, support the recall effort, and object to union payment for

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Record Excerpts of Appellants at 229–30, *PHI, Inc.*, No. 10-30858, (5th Cir. Nov. 10, 2010).

10

political activity contrary to her religious beliefs.[44]  As the Ninth Circuit explained in a similar case:

> [The plaintiff] was discharged [from his employment] before he was able to extend union coverage to his unit.  Thus he is not a member of the union, and the union has no duty or desire to represent him.  *If [the plaintiff] cannot sue to enforce the Act, no one can.  Such a result is inconsistent with Congress' concern that [§ 152, Fourth] be backed by adequate penalties and could not have been intended.*[45]

Carter's case is less like *PHI* and more like *Conrad v. Delta Airlines*.[46]  There, the Seventh Circuit allowed an individual employee to pursue claims under § 152 Fourth, where the individual was not represented by his union.[47]  The Fifth Circuit favorably cited *Conrad* just weeks ago, and specifically acknowledged that it was an individual employee's major-dispute suit about "retaliatory discharge."[48]

Because *PHI* involved a minor dispute, because *PHI* did not purport to answer the question left undecided by the Fifth Circuit in *Roscello*, because every court to consider the question has found a private right of action, because the Court cannot locate a single authority recognizing *PHI* as having created a circuit split in major-dispute cases, and because denying an implied private right of action in these circumstances would contravene the text of the Act which confers expansive rights to

---

[44] Another district court has recognized that *PHI* is inapposite to § 152 Third and Fourth claims about major disputes.  *See Diaz v. Amerijet Int'l, Inc.*, No. 11-61812-CIV, 2011 WL 13217664, at *4 (S.D. Fla. Nov. 28, 2011); *see also id.* at *3 (noting that "every court to consider whether a private right of action exists over a major dispute has found jurisdiction").

[45] *Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031, 1033 (9th Cir. 1970) (emphasis added).

[46] *Conrad v. Delta Airlines*, 494 F.2d 914 (7th Cir. 1974).

[47] *Id.* at 917–18.

[48] *See Bhd. of Locomotive Eng'rs & Trainmen*, 2022 WL 1099008, at *3.

11

carrier *employees* (and would thus contravene *Cort v. Ash*)—the Court finds that Carter has a private of action under the Railway Labor Act § 152 Third and Fourth.

*Third*, having determined that Carter has a private right of action under § 152 Third and Fourth and that this case concerns a major dispute, the Court also finds that genuine disputes of material fact preclude summary judgment on this claim. A reasonable jury could side with Carter or the defendants on the question of whether the defendants retaliated against Carter for exercising her Act-protected rights by messaging president Stone and expressing her disapproval with the union's activities and participation in the Women's March. Accordingly, summary judgment is inappropriate on Carter's Railway Labor Act retaliation claim.

### III.   Violation of Duty of Fair Representation Claim against Local 556

Carter asserts a claim against Local 556 alleging that the union violated its duty of fair representation to her. Both Carter and Local 556 seek summary judgment on this claim. But the parties genuinely dispute at least one material fact: whether president Stone was acting in her official union capacity when she reported Carter to Southwest. So the Court denies summary judgment to both parties on this claim.

### IV.   Title VII Discrimination Claims—Disparate Treatment and Failure to Accommodate—Against Southwest and Local 556

Carter asserts claims against Southwest and Local 556 for religious discrimination in violation of Title VII. Specifically, Carter alleges: (1) that Southwest fired her because of her religious beliefs and practices and that Local 556 caused Southwest to discriminate against her on the same illegal basis; and (2) that

the defendants failed to accommodate her religious beliefs and practices. All parties seek summary judgment on this claim but granting it would be inappropriate because the parties genuinely dispute at least one material fact: the precise reason that president Stone reported Carter to Southwest and the reason that Southwest terminated Carter. A reasonable jury could side with Carter or the defendants. A jury could conclude that the defendants indeed discriminated against Carter because of her religious beliefs and practices, that the defendants acted not because of Carter's religion but instead because of her anti-union activity, or that the defendants had perfectly legal bases for acting the way that they did. So the Court denies summary judgment on Carter's Title VII claims.

A brief note about the defendants' argument that Carter failed to exhaust administrative remedies with respect to her Title VII failure-to-accommodate claim. The defendants have not previously raised this argument. First, the Court finds that Carter did exhaust because she plainly alleged in her Equal Employment Opportunity Commission charge that Southwest fired her in violation of her religious rights: "Southwest never warned me that using Facebook to protect life was inconsistent with its work rules. As a result of my Facebook posts and messages that opposed abortion, and without prior warning that such activities violated its work rules, [Southwest] fired me. As a result of the foregoing, *my employer discriminated against me on the basis of my sincerely held religious beliefs and speech*."[49]  And the law does not require Carter to expressly request an accommodation for a religious

---

[49] Doc. No. 80-2 at 2 (cleaned up, emphasis added).

belief or practice in order for a Title VII violation to occur.[50]  Second, the defendants'
argument rings hollow because the whole point of exhausting administrative
remedies is to provide defendants a pre-litigation opportunity to change their
minds.[51]  And yet Southwest admits that it never would have accommodated the
plaintiff: "[N]o religious accommodation would have excused [the plaintiff] for her
serious reported misconduct."[52]  So the Court rejects this contention.

## V.    Issue Preclusion

The Court also addresses an argument that Southwest and Local 556 raise in
their motions for summary judgment.  They ask the Court to grant issue-preclusive
effect to the arbitrator's findings.  Cases certainly arise in which issue preclusion
would be appropriate, but this isn't one of them.

The decision to apply issue preclusion is committed to the Court's discretion.[53]
The Court considers several factors, including the facts and circumstances of the case,
the federal interests warranting protection, whether the findings were within the
arbitrator's expertise and experience, whether the arbitration adequately protected
the parties' rights, and the adequacy of the record considered by the arbitrator.[54]  To

---

[50] *See EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015) (holding that
discriminating because of religious practice "is synonymous with refusing to accommodate the
religious practice").

[51] *See Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018).

[52] Doc. No. 167 at 50.

[53] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974); *Grimes v. BNSF Ry. Co.*, 746
F.3d 184, 188 (5th Cir. 2014); *Gonzalez v. S. Pac. Transp. Co.*, 773 F.2d 637, 643 (5th Cir. 1985).

[54] *Gardner-Denver Co.*, 415 U.S. at 60 n.21; *Grimes*, 746 F.3d at 188; *Gonzalez*, 773 F.2d at
643.

14

the extent that the arbitrator's findings represent legal "issues" in the typical collateral-estoppel sense, the bar is much higher: an issue will be precluded only if "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[55]

Taking all of this into consideration, the Court declines to apply issue preclusion here. One reason is that the "findings" to which the defendants want the Court to give preclusive effect are more akin to legal determinations than factual findings. For example, Southwest says that one "preclusive finding" is the "[t]he arbitrator['s] conclu[sion] that Southwest's stated reasons were not pretextual and Southwest had 'just cause' to terminate Plaintiff 'beyond a reasonable doubt.'"[56] Another "preclusive finding" that the defendants seek: "[t]he arbitrator['s] [finding] that [Local 556 President] Stone reported Plaintiff's conduct to [Southwest] not to retaliate against [the plaintiff] but because she believed Plaintiff violated various policies that were applicable to her."[57]

But an arbitrator cannot decide ultimate legal issues. She may very well be "competent to resolve many preliminary factual questions, such as whether the employee 'punched in' when he said he did," but not competent to resolve the ultimate legal questions of a case.[58] Plus, the legal questions that the arbitrator decided aren't

---

[55] *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 548 (5th Cir. 2013); *see also Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

[56] Doc. No. 167 at 33.

[57] Doc. No. 167 at 34 (cleaned up).

[58] *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

the same as the ones presented in this federal case.  The arbitrator found simply that Southwest had "just cause" under the collective bargaining agreement to terminate Carter's employment, while Carter's claims in this suit—Title VII and Railway Labor Act claims—involve markedly different legal standards.

Another reason that the Court declines to apply issue preclusion to the arbitrator's factual findings is that even the most fact-bound findings that Southwest and Local 556 submit for preclusion are not in the same ballpark as deciding whether an employee "punched in" for work when she said that she did.[59]  For example, a "preclusive finding" that Southwest and Local 556 seek is the arbitrator's conclusion that Southwest "was warranted" in disciplining Carter "notwithstanding" that she "had no previous disciplinary record."[60]

Finally, another reason is the importance of the federal interests that warrant protection.  For example, on her Title VII claims, Carter alleges that she is a Christian who believes that "abortion is the murder of [an] unborn child . . . contrary to the will of God."[61]  She alleges that Southwest and Local 556 discriminated against her because of her religious beliefs and because of her "speak[ing] up" and "object[ing]" to Local 556 supporting the Women's March.[62]  The Supreme Court has said this about when a court can apply issue preclusion to an arbitrator's findings in a Title VII case:

> Where an arbitral determination *gives full consideration* to an employee's Title VII rights, a court may properly accord it great weight.

---

[59] *Id.*

[60] Doc. No. 167 at 33.

[61] Doc. No. 221 at 10.

[62] *Id.* at 11.

16

This is especially true where the issue is *solely one of fact*, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record.  But courts should ever [be] mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims.  It is the duty of courts to assure the full availability of this forum.[63]

Here, the arbitrator disclaimed that it had considered Carter's religious beliefs and how those may have factored into her termination.  The arbitrator's determinations are not "solely one[s] of fact" and this Court is very mindful of its duty to provide a forum for "ultimate resolution" of discrimination claims.[64]  In light of the foregoing and on these facts and circumstances, the Court cannot apply issue preclusion.

## VI.    Conclusion

The Court **DENIES** all three motions for summary judgment.

**IT IS SO ORDERED** this 5th day of May, 2022.


_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[63] *Gardner-Denver*, 415 U.S. at 60 n.21 (emphases added).

[64] *Id.*