# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## SOUTHWEST AIRLINES CO.'S MOTION FOR PARTIAL RECONSIDERATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54 OR, IN THE ALTERNATIVE, MOTION FOR INTERLOCUTORY APPEAL

---

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT PROCEDURAL HISTORY ........................................................... 2

     A.    Carter Brings RLA and Title VII Claims Against Southwest................................. 2

     B.    The Court Dismisses Carter's RLA Claim Predicated On Messages to Stone and Related Facebook Posts ........................................................................ 3

     C.    Carter Attempts to Include the Dismissed RLA Counts In the Third Amended Complaint .............................................................................................. 4

     D.    Plaintiff Files Fourth Amended Complaint............................................................ 5

     E.    The Court Denies Southwest's Motion for Summary Judgment Based on a RLA Theory Previously Dismissed With Prejudice and Without Addressing Various Stated Grounds for Summary Judgment ................................ 6

     F.    The Court Denies Southwest's Motion Summary Judgment................................. 7

III.    ARGUMENT ........................................................................................................ 8

     A.    The Court Should Exercise its Broad Discretion to Reconsider its Decision on Southwest's Motion for Summary Judgment ................................... 8

     B.    Absent Reconsideration, the Court Should Certify its Summary Judgment Order for Interlocutory Appeal ........................................................................... 12

IV.    CONCLUSION................................................................................................... 13

US_ACTIVE-166641489.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Petroleum, Inc. v. Gradney*,
   2018 U.S. Dist. LEXIS 85782 (N.D. Tex. May 2, 2018) ........................................................8

*Antoine v. First Student, Inc.*,
   713 F.3d 824 (5th Cir. 2013) ...............................................................................................11

*Austin v. Kroger Tex., L.P.*,
   864 F.3d 326 (5th Cir. 2017) .................................................................................................8

*Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*,
   2022 U.S. App. LEXIS 9974 (5th Cir. Apr. 13, 2022) ........................................................10

*Carter v. Transp. Workers Union of Am. Local 556*,
   353 F. Supp. 3d 556 (N.D. Tex. 2019) .......................................................................... *passim*

*Chalmers v. Tulon Co. of Richmond*,
   101 F.3d 1012 (4th Cir. 1996) .............................................................................................11

*Davis v. Bombardier Rec. Prods.*,
   2013 U.S. Dist. LEXIS 44580 (S.D. Miss. Mar. 28, 2013) ..................................................12

*De Olivera Dos Santos v. Bell Helicopter Textron, Inc.*,
   651 F. Supp. 2d 550 (N.D. Tex. 2009) ...................................................................................8

*Easom v. US Well Servs.*,
   527 F. Supp. 3d 898 (S.D. Tex. 2021) ..................................................................................12

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
   575 U.S. 768 (2015) .............................................................................................................13

*Fields v. Brown*,
   2021 U.S. Dist. LEXIS 136327 (E.D. Tex. May 14, 2021) ..................................................12

*In re Ford Motor Co.*,
   591 F.3d 406 (5th Cir. 2009) .................................................................................................9

*Hancock v. Chi. Title Ins. Co.*,
   2013 U.S. Dist. LEXIS 10128 (N.D. Tex. Jan. 25, 2013) ......................................................8

*Lavespere v. Niagara Mach. & Tool Works, Inc.*,
   910 F.2d 167 (5th Cir. 1990) .................................................................................................8

US_ACTIVE-166641489.1

*Lorenz v. Wal-Mart Stores, Inc.*,
   2006 U.S. Dist. LEXIS 36145 (W.D. Tex. May 24, 2006)....................................................11

*Menlo Inv. Grp., LLC v. Fought*,
   2014 U.S. Dist. LEXIS 181759 (N.D. Tex. Dec. 23, 2014) ....................................................8

*Mial v. Foxhoven*,
   305 F. Supp. 3d 984 (N.D. Iowa 2018)....................................................................................11

*Neaville v. Wells Fargo Bank, N.A.*,
   2013 U.S. Dist. LEXIS 194315 (N.D. Tex. Mar. 7, 2013) .......................................................8

*Panda Energy Int'l, Inc. v. Factory Mut. Ins.*,
   2011 U.S. Dist. LEXIS 17396 (N.D. Tex. Feb. 14, 2011).......................................................12

*PHI, Inc. v. Office & Professional Employees Int'l Union*,
   440 Fed. Appx. 394 (5th Cir. 2011).........................................................................................13

*Schwartzberg v. Mellon Bank, N.A.*,
   2008 U.S. Dist. LEXIS 1180 (W.D. Pa. Jan. 8, 2008)............................................................11

*Sippel v. Hagan*,
   2013 U.S. Dist. LEXIS 103338 (S.D. Tex. July 24, 2013)......................................................13

*Swint v. Chambers Cnty. Comm'n*,
   514 U.S. 35 (1995)...................................................................................................................12

*Wilson v. U.S. West Commc'ns*,
   58 F.3d 1337 (8th Cir. 1995) ...................................................................................................11

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................................................12

45 U.S.C. § 152..............................................................................................................................1

US_ACTIVE-166641489.1

## I.    <u>INTRODUCTION</u>

Southwest Airlines Co. ("Southwest") seeks reconsideration of the order denying its motion for summary judgment on two grounds: (a) the order is based on a legal theory under the Railway Labor Act ("RLA"), 45 U.S.C. § 152, Third & Fourth, which the Court previously dismissed with prejudice; and (b) the Court failed to address the substantive grounds Southwest proffered for summary judgment on Charlene Carter's ("Carter") Title VII failure to accommodate claim. As set forth in more detail below, the Court should reconsider Southwest's dispositive motion and grant summary judgment on Carter's RLA (Count IV) and Title VII failure to accommodate (Count V) claims. Alternatively, Southwest requests the opportunity to file an interlocutory appeal pursuant to 28 U.S.C. section 1292, and that the Court stay proceedings pending resolution of that appeal.

In light of the fast approaching July 5, 2022 trial, Southwest requests that the Court establish an expedited briefing schedule on this motion, and that it promptly schedule this motion for in person oral argument.[1]

## <u>Railway Labor Act</u>

On February 1, 2019, the Court dismissed with prejudice two counts against Southwest for alleged violations of the RLA, section 152, Third & Fourth. In doing so, the Court expressly rejected the legal theory in Count I of the Second Amended Complaint ("SAC") – namely, that Carter could predicate a RLA claim on the contention that Southwest unlawfully terminated her based on Facebook messages she sent to then-Transport Workers Union of America, Local 556 ("Local 556" or "Union") President Audrey Stone ("Stone"). Since the Court's dismissal of the two RLA counts (Counts I and II) above described claim, the parties have litigated Carter's last

---

[1] Southwest is willing to waive its reply brief in order to facilitate expedited argument and resolution of this motion.

US_ACTIVE-166641489.1

remaining RLA count (Count IV), which is premised on the claim that her termination was based on protected conduct of opting out of Local 556 membership and publicly participating in efforts to recall Union leadership.

Southwest moved for summary judgment on Carter's RLA claim. Rather than address her opposition to the only surviving RLA count, Carter largely ignored it. Instead, Carter rehashed the RLA theory that the Court conclusively resolved more than three years prior in its order on Southwest's motion to dismiss. In its summary judgment order, the Court embraced the very claim that it previously dismissed by concluding that Carter's private messages to Stone could constitute protected activity and be the predicate for a RLA claim. Moreover, the Court did not address the actual remaining RLA count in the operative complaint. On that count, there is no dispute of material fact and summary judgment was and remains proper.

**Title VII / Failure to Accommodate**

Southwest sought summary judgment on Carter's Title VII failure to accommodate claim. In support of its motion, Southwest asserted a procedural basis for summary judgment (failure to exhaust) and various substantive defenses (*e.g.*, undue hardship). In its denial of summary judgment, the Court resolved the exhaustion question against Southwest but did not discuss the litany of substantive defenses Southwest proffered. Southwest submits that it is entitled to summary judgment on each of its asserted defenses to Carter's Title VII failure to accommodate claim.

**II.    RELEVANT PROCEDURAL HISTORY**

    **A.    Carter Brings RLA and Title VII Claims Against Southwest**[2]

---

[2] Carter named Southwest in this action on September 14, 2017 when she filed the First Amended Complaint. Dkt. No. 9. Southwest promptly moved to dismiss. Dkt. No. 28. The Court denied the motion without prejudice so that Carter could file a Second Amended Complaint that included her

US_ACTIVE-166641489.1

Plaintiff filed the SAC on June 28, 2019. Dkt. No. 47. The SAC contained three separate RLA counts, which Carter labelled as:

**Count I:**      Southwest illegally terminated Carter for engaging in speech protected by the RLA.

**Count II:**     Southwest maintained and enforced overbroad and vague policies that chill and restrict employees in their exercise of protected rights.

**Count IV:**    Southwest … retaliated against Carter for the exercise of her protected rights under the RLA.

### B.   The Court Dismisses Carter's RLA Claim Predicated On Messages to Stone and Related Facebook Posts

Southwest moved to dismiss Carter's RLA counts in the SAC. Dkt. Nos. 48-49. The Court dismissed Counts I and II with prejudice. In doing so, the Court characterized these counts as arising from Carter's Facebook messages to Stone and related statements. *See Carter v. Transp. Workers Union of Am. Local 556*, 353 F. Supp. 3d 556, 570-72 (N.D. Tex. 2019) (emphasis added). Appropriately so, as Carter ***expressly predicated*** Counts I and II on the contention that the RLA protected her union-related and other Facebook messages to Stone. *See* SAC ¶ 80 ("Carter engaged in RLA-protected speech when she sent Facebook messages to President Stone and made related posts conveying her criticism and opposition, as a nonmember objector, to the political leadership of the union, and to the union's use of dues in support of … causes with which she profoundly disagreed, all of which was in the context of a campaign to oppose Local 556's leadership and expenditures, and to reorganize the union via a recall election."); SAC ¶ 81 ("By firing Carter for her Facebook messages to President Stone and for related posts, Southwest violated Carter's rights under [the] RLA … to … free speech related to … efforts to reorganize Local 556, to collectively bargain with Southwest, and to oppose the union's leadership and spending.").

---

Title VII claims; and the parties could address the import of the then-recent labor arbitration decision denying Carter's termination grievance. Dkt. No. 45.

US_ACTIVE-166641489.1

After considering the parties' submissions, the Court concluded:

> Plaintiff has failed to plausibly allege either anti-union animus or a fundamental attack on the collective bargaining process on the part of Southwest. At most, ***Plaintiff has alleged that Southwest intervened in an internal Union dispute, responded to an employee's concern about graphic and possibly harassing messages from a co-worker, and terminated an employee for violating various policies*. *These allegations, without more, do not establish more than a sheer possibility that* [*Southwest*] *has acted due to anti-union animus or in an attempt to destroy the Union*[.] … *Most significantly, the Court finds that Plaintiff cannot establish that Southwest's conduct rose to the level of leaving her no remedy to enforce her statutory rights under the RLA*.** … Even as a nonmember objector, Plaintiff had access to, and in fact utilized, the contractual dispute resolution procedure under the CBA to address her grievances in arbitration. … Because Plaintiff had a remedy to enforce her rights under the RLA and because Plaintiff ***failed to plead sufficiently the anti-union animus necessary to support her claims***, the Court finds that judicial intervention is unwarranted in Plaintiff's post-certification RLA claims.

*Carter*, 353 F. Supp. 3d at 572-73 (emphasis added).

Despite the above, the Court declined to dismiss Count IV for RLA retaliation. *Id.* at 573-74. The Court concluded that Carter alleged sufficient facts to survive a motion to dismiss on the legal theory that Southwest terminated her for becoming a non-member objector, for participating in the recall effort, and related public conduct that was oppositional to Local 556. *Id.*

### C.    Carter Attempts to Include the Dismissed RLA Counts In the Third Amended Complaint

Carter filed the Third Amended Complaint ("TAC") on March 1, 2019. Dkt. No. 70. Despite the Court's order dismissing RLA Counts I and II with prejudice, Carter included them and the supporting allegations in the TAC. Despite Defendants' request, Carter refused to remove the dismissed claims. Thus, Defendants informed Carter that they would move to move to strike the TAC.

In an effort to preempt the anticipated motion to strike, Carter filed a "Notice Regarding Her Third Amended Complaint." Dkt. No. 71. In that notice, Carter stated that to "resolve any dispute or confusion … [she] stipulate[d] and agree[d]" that her "claims in Counts I and II … were

US_ACTIVE-166641489.1

all dismissed with prejudice." Dkt. No. 71 ¶ 3. In light of that dismissal, Carter stated that "Southwest and Local 556 need not respond" to paragraphs 78 through 92 of the TAC. Dkt. No. 71 ¶¶ 3, 5. Carter thus acknowledged that certain RLA theories were no longer viable because the Court dismissed them with prejudice, and that certain assertions should be excluded from the pleadings as they were not material to her remaining RLA count. Specifically, Carter declared that Southwest need not address the following:

- Carter engaged in ***RLA-protected speech when she sent Facebook messages to President Stone*** and made related ***posts conveying her criticism and opposition, as a nonmember objector***, ***to the political leadership of the union***, ***and to the union's use of dues*** in support of political, ideological, and religious causes with which she profoundly disagreed, all of which was in the ***context of a campaign to oppose Local 556's leadership and expenditures***, and to ***reorganize the union via a recall*** election. TAC ¶ 82 (emphasis added).

- ***By firing Carter for her Facebook messages to President Stone and for related posts***, Southwest violated Carter's rights under RLA Section 2, Third and Fourth to vigorously exercise "uninhibited, robust, and wide-open" free speech related to flight attendants' efforts to reorganize Local 556, to collectively bargain with Southwest, and to oppose the union's leadership and spending. TAC ¶ 83 (emphasis added).

- By applying its Workplace Bullying and Hazing Policy, Social Media Policy, and any other company rules, policies, or mission statements to ***Carter's Facebook messages to President Stone and related posts***, Southwest violated Carter's "uninhibited robust, and wide-open" free speech rights under the RLA and federal labor policy. TAC ¶ 84 (emphasis added).

- "Southwest's … [p]olicy restrict[ed] Carter's … rights under the RLA to engage in protected speech and activities in opposition to Local 556." TAC ¶¶ 90-91.

Despite Carter's notice, the Court granted Defendants' motion to strike and ordered Carter to file the now-operative Fourth Amended Complaint ("FAC"). Dkt. No. 79.

### D.   Plaintiff Files Fourth Amended Complaint

Carter filed the FAC on April 10, 2019. Dkt. No. 80. In the FAC, Carter excluded the dismissed counts as the Court ordered and removed the above allegations (*see supra* II.C.) that she acknowledged through her "Notice" were no longer material to this case. Thus, the only RLA

US_ACTIVE-166641489.1

theory in the FAC (Count IV) is *not* based on the contention that Carter's messages to Stone and related Facebook posts were protected activities. Rather, the only remaining RLA claim is that Southwest terminated Carter for the alleged protected activity of opting out of the union and publicly supporting the recall. *See* FAC ¶¶ 94, 96, 100.

### E.   The Court Denies Southwest's Motion for Summary Judgment Based on a RLA Theory Previously Dismissed With Prejudice and Without Addressing Various Stated Grounds for Summary Judgment

Southwest moved for summary judgment on Carter's RLA and Title VII claims. Despite the Court's previous dismissal of Count I (which proffers that it was unlawful for Southwest to terminate Carter for her communications to Stone), Carter predicated her opposition to Southwest's motion on the theory underlying the dismissed count, and on factual allegations she removed from the operative FAC.

In her opposition, Carter argued that her messages to Stone constituted RLA protected activity, and because Southwest relied on the graphic and harassing nature of these communications in terminating her employment, summary judgment was inappropriate. *See* Dkt. No. 223 ("Carter Opp. MSJ") at 19-22. In doing so, Carter recited in substance the very assertions that she previously acknowledged, and the Court ruled, were no longer part of this case. *Compare* TAC ¶ 82 ("Carter engaged in RLA-protected speech when she sent Facebook messages to President Stone and made related posts."), ¶ 83 ("By firing Carter for her Facebook messages to President Stone and for related posts, Southwest violated Carter's rights under RLA Section 2, Third and Fourth"), *and* ¶ 84 (Southwest violated the RLA "[b]y applying its … rules, policies, or mission statements to Carter's Facebook messages to President Stone") *with* Carter Opp. MSJ at 20 ("Carter's RLA-protected activities – sending private Facebook videos and messages to Local 556 and President Stone – were a 'substantial or motivating factor' for her termination.") *and* Carter Opp. MSJ at 25 ("Carter was engaged in … protected activities when she sent Facebook

- 6 -

videos and messages to President Stone … Southwest violated the RLA by firing Carter because her private Facebook videos and messages to Local 556 and President Stone were RLA-protected.").

Not only did Carter direct her arguments to a count that is no longer a part of this action, she failed to substantively respond to Southwest's argument directed to the existing RLA count – *i.e.*, that there was no basis to conclude that Southwest terminated her for opting out of the union, or publicly supporting the recall campaign.

**F.      The Court Denies Southwest's Motion Summary Judgment**

On May 5, 2022, the Court denied Southwest's motion for summary judgment on Carter's RLA and Title VII claims. Among other things, the Court concluded that summary judgment was improper because:

> A reasonable jury could side with Carter or the defendants on the question of whether the defendants retaliated against Carter for exercising her Act-protected rights by messaging president Stone and expressing her disapproval with the union's activities and participation in the Women's March. Accordingly, summary judgment is inappropriate on Carter's Railway Labor Act retaliation claim.

Dkt. No. 232 ("MSJ Order") at 12. This conclusion is at odds with the Court's prior order because, in dismissing Counts I and II, Judge Scholer concluded that Carter's claim that Southwest terminated her based on her Facebook communications to Stone and related posts, which covered a variety of topics, did not state a viable RLA claim.. *See* SAC ¶¶ 80-83, 88-89; TAC ¶¶ 82-84, 88-91; dkt. no. 71; *Carter*, 353 F. Supp. 3d at 572-73.

With respect to Carter's Title VII disparate treatment claim, the Court denied summary judgment because "the parties genuinely dispute … the reason that Southwest terminated Carter. A reasonably jury could side with Carter or the defendants." MSJ Order at 13. As to the failure to accommodate theory, the Court limited its discussion to Carter's exhaustion of administrative

- 7 -

remedies. *See* MSJ Order at 13-14. However, the Court did not address the substantive arguments regarding accommodation that Southwest raised in its motion for summary judgment.

## III.   ARGUMENT

### A.   The Court Should Exercise its Broad Discretion to Reconsider its Decision on Southwest's Motion for Summary Judgment

A party may move for reconsideration of any interlocutory order – including a denial of summary judgment – under Rule 54(b). *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017); *see also Menlo Inv. Grp., LLC v. Fought*, 2014 U.S. Dist. LEXIS 181759, *6-7 (N.D. Tex. Dec. 23, 2014) ("A request to reconsider an interlocutory order, such as an order denying summary judgment, falls under Rule 54(b)."). "[T]he precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear[.]" *De Olivera Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009).

While factors "similar to those under Rule 59 and 60 inform the Court's analysis" of a motion for reconsideration, the Rule 54(b) standard is "less exacting." *Neaville v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 194315, at *2-3 (N.D. Tex. Mar. 7, 2013). Indeed, the Court may "reconsider and reverse" a denial of summary judgment for "any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336 (internal quotation marks and citations omitted); *see also Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990). Ultimately, "whether to grant [] a motion [for reconsideration] rests within the discretion of the court." *De Olivera Dos Santos*, 651 F. Supp. 2d at 553; *see also Hancock v. Chi. Title Ins. Co.*, 2013 U.S. Dist. LEXIS 10128, *2-3 (N.D. Tex. Jan. 25, 2013). Courts will often exercise their discretion in this regard to "correct manifest errors of law or fact" or "to prevent manifest injustice." *Allied Petroleum, Inc. v. Gradney*, 2018 U.S. Dist. LEXIS 85782, *6 (N.D. Tex. May 2, 2018).

US_ACTIVE-166641489.1

The Court's summary judgment order makes Carter's messages to Stone the central issue for her RLA claim. MSJ Order at 12. But as discussed above, this Court conclusively rejected Carter's RLA claims premised on such communications when it granted Southwest's motion to dismiss. *See supra* II.B-C. Indeed, Carter has acknowledged, as she must, that her remaining RLA claim is not based on her Facebook messages to Stone, but instead on her decision to opt out of Local 556 membership, her public support the recall effort, and related activities. For example:

- Carter ***removed allegations*** regarding the alleged protected nature of her Facebook communications to Stone and related posts based explicitly on the Court's dismissal order. *See* Dkt. No. 71; TAC ¶¶ 81-83, 88-91.

- After dismissal of two RLA counts, Carter ***retained allegations*** purporting to show, and moved to compel the production of evidence regarding, the alleged disparate treatment of Flight Attendants based on their Local 556 membership status and support for the recall effort (*i.e.*, the alleged protected activity). FAC ¶¶ 94, 99; dkt. no. 133 at 8-9, 14-15.

- Carter characterized her RLA claim as based on the contention that "Southwest retaliated against Carter for exercising her rights under the RLA ***to become a nonmember and object to paying the union's compelled fees*** for political, ideological, and other nonbargaining spending" rather than on the alleged protected nature of her communications to Stone. Dkt. No. 177 at 9 (emphasis added).

In light of the above, the relevant question in assessing Southwest's motion for summary judgment was not whether Carter's messages to Stone constituted RLA protected activity. This Court already decided that Carter could not pursue a RLA claim on that basis. *See* Dkt. No. 71 ¶¶ 3, 5; *Carter*, 353 F. Supp. 3d at 570-73; *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) ("Under the law of the case doctrine and general principles of comity, a successor judge … should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently."). Rather, as Southwest explained, the key questions for Carter's remaining RLA count was and is whether there is summary judgment evidence supporting *all* of the following: (1) that Carter engaged in RLA protected activity by opting out of the union and

US_ACTIVE-166641489.1

participating in the recall effort; (2) that Southwest's decision makers were motivated by the requisite anti-union animus; and (3) that Southwest's decision makers who terminated Carter's employment did so based on Carter's status as a non-member and/or her public support for the recall.

On the latter two issues, Carter submitted no evidence sufficient to give rise to a material dispute of fact. Carter scantly even addressed, for example, the motives of Ed Schneider in terminating her employment, or of Mike Simms in his handling of the Step 2 process. *See* Dkt. No. 167 ("SWA MSJ") at 22-27, 34-37, 43-44; dkt. no. 209 ("SWA MSJ Reply") at 18-21. Carter also failed to point to any circumstantial evidence of disparate treatment to suggest that Schneider, Simms, or any Southwest decision maker had an unlawful motive in connection with their actions towards Carter. *Id.* Moreover, Carter did not submit sufficient evidence to raise a dispute of fact regarding the necessary element of anti-union animus. *See* SWA MSJ at 40-41, 43, 44; SWA MSJ Reply at 15-18; *Carter*, 353 F. Supp. 3d at 572; *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 2022 U.S. App. LEXIS 9974, *14-15 (5th Cir. Apr. 13, 2022).

In sum, because Carter's opposition and the Court's order are based on a previously dismissed legal theory, Southwest submits that the Court should reconsider and reassess its summary judgment order. Specifically, Southwest requests that the Court assess the summary judgment submissions with an eye to the only remaining RLA theory in this case – that Southwest terminated Carter for becoming a non-member objector and her related public opposition to Local 556. Upon doing so, Southwest contends that there is no dispute of material fact and that it is entitled to summary judgment on Carter's RLA claim.

Similar relief is appropriate with respect to the Court's decision on Carter's Title VII failure to accommodate claim. As discussed above, the Court rejected Southwest's contention that Carter

US_ACTIVE-166641489.1

failed to exhaust administrative remedies based on a failure to accommodate. *See* MSJ Order at 13-14. However, the Court failed to address the numerous substantive defenses Southwest raised to Carter's accommodation claim. *See* SWA MSJ at 47-53; SWA MSJ Reply at 25-31. For example:

- Carter's stated religious belief and practice is that "abortion is the taking of a human life" and she is "require[d] [] to share with others that abortion is the taking of a human life." FAC ¶ 42. However, Carter cited no evidence indicating that Southwest policy prohibited her from expressing her beliefs about abortion (*i.e.*, from engaging in her self-articulated religious practice). In fact, Carter testified that expressing her pro-life views to fellow employees *did not* violate any Southwest policy. Dkt. No. 167 at 49-50. Thus, there is no record evidence of a conflict between Southwest work rules and Carter's religious practices. *See, e.g., Schwartzberg v. Mellon Bank, N.A.*, 2008 U.S. Dist. LEXIS 1180, *25-26 (W.D. Pa. Jan. 8, 2008) (accommodation claim failed because there was no "conflict between Plaintiff's religious beliefs (homosexuality is immoral) and [] employment requirements ("conduct that denigrates or shows hostility on the basis of sexual orientation is prohibited)"); *Lorenz v. Wal-Mart Stores, Inc.*, 2006 U.S. Dist. LEXIS 36145, *34 (W.D. Tex. May 24, 2006). Rather, the conflict was between Southwest policy and Carter's personal preferences. *See, e.g., Mial v. Foxhoven*, 305 F. Supp. 3d 984, 991-92 (N.D. Iowa 2018) ("[T]he fact that a practice or belief may be connected to religion does not compel the conclusion that it is not a personal preference" for which no accommodation is required.).

- Even if Carter's religious beliefs necessitated the circulation of videos of aborted fetuses and of depictions of female genitals (*i.e.*, the conduct that resulted in termination), Southwest had no legal obligation to excuse that conduct based on Carter's after-the-fact expression of religious a motivation. *See, e.g., Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) ("There is nothing in Title VII that requires employers to give lesser punishments to employees who claim, *after they violate company rules* … , that their religion caused them to transgress the rules.").

- Accommodating Carter's circulation of videos of aborted fetuses and depictions of female genitals would constitute an undue hardship that would cause more than a *de minimis* burden. *See, e.g., Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013); *Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1342 (8th Cir. 1995) (employer did not violate Title VII by restricting employee from wearing a two inch button that "showed a color photograph of an eighteen to twenty-week old fetus" and contained the phrases 'Stop Abortion,' and 'They're Forgetting Someone.'").

Southwest requests that the Court reconsider its summary judgment decision as it relates to Carter's Title VII failure to accommodate claim and, in doing so, analyze the substantive

- 11 -

defenses in Southwest's submissions. As set forth in Southwest's motion for summary judgment and the supporting reply brief, there is no material factual dispute as to those defenses and summary judgment is therefore proper as to Carter's failure to accommodate claim.

**B.    Absent Reconsideration, the Court Should Certify its Summary Judgment Order for Interlocutory Appeal**

If the Court will not reconsider its denial of Southwest's motion for summary judgment as set forth above, it should certify the order for immediate appeal. Pursuant to 28 U.S.C. section 1292(b) "[i]nterlocutory appeals are permitted when they involve (1) a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal would materially advance the ultimate termination of the litigation." *Panda Energy Int'l, Inc. v. Factory Mut. Ins.*, 2011 U.S. Dist. LEXIS 17396, *10 (N.D. Tex. Feb. 14, 2011) (*citing* 28 U.S.C. § 1292(b)); *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995). Each of these criteria are present here.

This summary judgment order involves multiple claim-dispositive legal questions and matters unsettled by the Fifth Circuit. As this Court acknowledged, the Fifth Circuit has not yet resolved whether RLA section 152, Third & Fourth provide a private right of action, and if so, under what circumstances. MSJ Order at 5-6. This is a pure legal question that is of particular import not only to the litigants in this case, but also to the state's large airline and railroad sector, its employees, and its labor representatives who regularly appear before this court. *See, e.g.*, *Easom v. US Well Servs.*, 527 F. Supp. 3d 898, 917 (S.D. Tex. 2021) (issues that are "pure question[s] of law" are appropriate for interlocutory appeal); *Davis v. Bombardier Rec. Prods.*, 2013 U.S. Dist. LEXIS 44580, *5 (S.D. Miss. Mar. 28, 2013) (granting interlocutory relief where issue "remains an unresolved issue in the Fifth Circuit"); *Fields v. Brown*, 2021 U.S. Dist. LEXIS 136327, *6 (E.D. Tex. May 14, 2021) (interlocutory appeal may be appropriate where appellate decision may

US_ACTIVE-166641489.1

have precedential value for several cases). Resolving the issue in this circuit and, in doing so, clarifying the ambiguity resulting from the Fifth Circuit's pronouncement in *PHI, Inc. v. Office & Professional Employees Int'l Union* is an appropriate basis for an interlocutory appeal. 440 Fed. Appx. 394, 396 (5th Cir. 2011) (Fifth Circuit declined to disturb the district court's "determination that [] individual pilots do not have a private cause of action under section 2, Third & Fourth of the Railway Labor Act.").

Additionally, the parties dispute the standard governing Title VII claims in light of the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). *See* Carter Opp. MSJ at 34-45. Indeed, Carter contests the continued applicability of the *de minimis* standard (which is central to Southwest's defense) in assessing an employer's accommodation obligation in the context of a Title VII failure to accommodate claim. *See* Carter Opp. MSJ at 47-52.

The resolution of these issues would substantially impact this litigation by either resulting in the dismissal of one or more claims, or clarifying the standard that will govern the trial proceedings. *See Sippel v. Hagan*, 2013 U.S. Dist. LEXIS 103338, *8-9 (S.D. Tex. July 24, 2013) (where decision could result in dismissal of claim there is a controlling question of law that may warrant an interlocutory appeal). Thus, if the Court is not inclined to reconsider its summary judgment decision, Southwest requests that the Court permit an interlocutory appeal of its summary judgment order.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant Southwest's motion for reconsideration and grant summary judgment. Alternatively, Southwest requests that the Court permit an interlocutory appeal of the Court's summary judgment order.

- 13 -

Dated: May 19, 2022                   Respectfully submitted,

                                      */s Paulo B. McKeeby*
                                      Paulo B. McKeeby
                                      State Bar No. 00784571
                                      Brian K. Morris
                                      State Bar No. 24108707
                                      **REED SMITH LLP**
                                      2850 N. Harwood Street
                                      Suite 1500
                                      Dallas, Texas 75201
                                      Phone: 469-680-4200
                                      Facsimile: 469-680-4299
                                      pmckeeby@reedsmith.com
                                      bmorris@reedsmith.com

                                      **ATTORNEYS FOR DEFENDANT**
                                      **SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF CONFERENCE

On May 18, counsel for Southwest Airlines, Co. conferred with counsel for Charlene Carter, Matthew Gilliam, via email and telephone regarding this motion. Matthew Gilliam informed Southwest that Carter opposes this motion.

                                      */s/ Paulo B. McKeeby*
                                       Paulo B. McKeeby

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 19th day of May, 2022.

                                      */s/ Paulo B. McKeeby*
                                       Paulo B. McKeeby

- 14 -

US_ACTIVE-166641489.1