# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>Defendants. | Civil Case No. 3:17-cv-02278-X |

## PLAINTIFF CHARLENE CARTER'S MOTION *IN LIMINE* AND INCORPORATED BRIEF

1

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

GROUNDS ...............................................................................................................................1

CONCLUSION .......................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Affiliated Mfrs., Inc. v. Aluminum Co.,*
 56 F.3d 521 (5th Cir. 1995). ........................................................................................12

*Bostock v. Clayton Cnty.*
 140 S. Ct. 1739 (2020)................................................................................................7, 9

*EEOC v. Abercrombie & Fitch Stores Inc.*,
 575 U.S. 772 (2015) ...................................................................................8, 9, 10, 11

*Cooper v. General Dynamics,*
 533 F.2d 163 (5th Cir. 1976) ........................................................................................8

*Ford Motor Co. v. E.E.O.C.,*
 458 U.S. 219 (1982) ....................................................................................................11

*Lewis Grocer Co. v. Holloway*
 874 F.2d 1008 (5th Cir. 1989). ....................................................................................11


**Rules & Statutes**                                                                                                **Page(s)**

Fed. R. Civ. P. 8 (c)(1)..........................................................................................................8

Fed. R. Evid. 402. ...................................................................................................... *passim*

Fed. R. Evid. 403. ...................................................................................................... *passim*

Fed. R. Evid. 408. .................................................................................................................12

Fed. R. Evid. 501. ............................................................................................................12, 13


42 U.S.C. § 2000e(j) .............................................................................................................8

Plaintiff Charlene Carter ("Carter") files this Motion *in Limine* as follows:

## Introduction

Before the voir dire examination of the jury panel, Carter makes this Motion *in Limine*. Carter seeks to exclude matters that are inadmissible, irrelevant, or prejudicial to the material issues in this case. If Defendants Southwest Airlines Co. ("Southwest") or Transport Workers Union of America, Local 556 ("Local 556"), inject these matters into the trial of this case through a party, an attorney, or a witness, Defendants will cause irreparable harm to Carter's case, which no jury instruction would cure. If any of these matters are directly or indirectly brought to the attention of the jury, Carter would be compelled to move for a mistrial. In an effort to avoid prejudice and a possible mistrial, Carter urges this Motion *in Limine*.

## Grounds

Plaintiff requests the Court to prohibit Defendants from offering any of the evidence described below without first asking for a ruling from the Court, outside the jury's presence, on the admissibility of the evidence:

1. Any evidence, statement, testimony or argument regarding the December 2017 arbitration proceedings regarding whether Southwest had "just cause" under the collective bargaining agreement to fire Carter and the arbitrator's findings. The Court declined to apply issue preclusion to the arbitrator's findings, ruling that the arbitrator's findings were more akin to legal determinations than factual findings.[1] Furthermore, the arbitration did not address Carter's Railway Labor Act, Duty of Fair Representation, and Title VII claims, which implicate Carter's statutory rights under federal law and other federal interests warranting protection. Thus, any evidence, statement, or argument regarding the arbitration proceedings or findings, is irrelevant to

---

[1] Court Memorandum Opinion and Order, Dkt. No. 232, pp.15-16.

the issues in this case.[2] Moreover, referencing the arbitration or the arbitrator's findings would risk the jury making assumptions that certain issues had already been decided and substituting the arbitrator's judgment for its own. This would create an unfair prejudicial effect, would mislead the jury, and would waste, time, and each of those effects substantially outweighs any probative value the evidence may have.[3]

2. Any evidence, statement, testimony or argument suggesting that Carter's Facebook messages to President Stone or her public complaints were not protected activity. As this Court recognized in its May 25, 2022 Order on Southwest's Motion for Reconsideration, Judge Scholer found that Carter' public complaints were protected, and Carter, in her Facebook messages, "was plainly objecting to forced payment of political … union expenses, advocating against and opposing Local 556 and President Stone, and expressing her opposition to the political leadership of the Union."[4] Thus, any evidence, statement, or argument suggesting that Carter's Facebook messages to President Stone or her public complaints were not protected activity would be irrelevant to the issues in this case.[5] Such evidence would also risk misleading the jury as to the law, unfairly prejudice Carter by holding her to a standard that is not the law, and waste time. These effects substantially outweigh any probative value such evidence would have.[6]

3. Any evidence, statement, testimony, or argument suggesting that Carter traveled to Washington, D.C., to "participate in the Women's March."[7] Carter demonstrated, and no Defendant disputed, that Carter traveled to Washington, D.C. to attend President Trump's

---

[2] *See* Fed. R. Evid. 402.
[3] *See* Fed. R. Evid. 403.
[4] Court Order on Reconsideration, Dkt. No. 237 at 3.
[5] *See* Fed. R. Evid. 402.
[6] *See* Fed. R. Evid. 403.
[7] SWA Br. 19-20. Southwest's Brief in Support of Motion for Summary Judgment, Dkt. No. 167, shall be cited to herein as "SWA Br. __".

inauguration, but she did not participate in the Women's March.[8] Carter left Washington D.C. the day after the inauguration, the same day when the Women's March began.[9] Thus, any evidence, statement, or argument is irrelevant. Moreover, introducing such evidence (or forcing Carter to introduce evidence that she was attending President Trump's inauguration to rebut a false allegation she was at the Women's March), would unfairly prejudice Carter with any juror who has strong feelings against President Trump. This is especially true given the risk that the jury may confuse President Trump's 2017 inauguration with the events at the Capitol on January 6, 2021, which would result in even more substantial prejudice. Accordingly, the risk of unfair prejudice substantially outweighs any probative value any such evidence would have.

4. Any evidence, statement, testimony or argument regarding a picture of a t-shirt that says, "Fucktard" and "I Voted Brett Nevarez Cause he Respects me," which references a statement attributed to Local 556's Executive Vice President Nevarez in the picture (but actually made by one of his supporters) calling another flight attendant, who opposed President Stone and Local 556 Vice President Nevarez, a "fucktard."[10] Charlene Carter received the picture from another flight attendant sometime prior to 2017, forwarded the message to President Stone to object to Executive Board members, like Nevarez, making unprofessional comments about flight attendants they represent, and Southwest's March 16, 2017 termination decision in this case had nothing to do with the t-shirt picture itself.[11] Thus, any evidence, statement, testimony or argument regarding the

---

[8] (SWA App. 868, Carter 339:4-13). Southwest's Appendix in Support of Motion for Summary Judgment, Dkt. No. 168, shall be cited to herein as "SWA App. __".
[9] (Carter Resp. App. 19, Carter 256:9-10. Carter's Appendix in Support of her Response to Southwest's Motion for Summary Judgment, Dkt. No. 226, shall be cited to herein as "Carter Resp. App. __".
[10] SWA Br. 19; (Carter App.434, 450; Stone 136:18-21, 179:3-8). Carter's Appendix in Support of her Motion for Summary Judgment, Dkt. No. 222, shall be cited to herein as "Carter App. __".
[11] (SWA App.1047).

t-shirt picture, is irrelevant.[12]  Moreover, the offensive word used on the t-shirt carries is so offensive, particularly if a juror happens to have a relationship with someone who is mentally challenged, that the risk of unfair prejudice substantially outweighs any probative value such evidence may have.[13]

5. Any evidence, statement, testimony or argument suggesting that Carter called Local 556 President Audrey Stone a "murderer."[14] Despite repeated mischaracterizations that Carter's message referred to Stone as a "murderer," Carter's Facebook message to President Stone stated, "TWU-AFL-CIO and 556 are supporting this Murder …".[15] Given there is no factual basis for this statement and the potential to inflame and prejudice the jury through a false and misleading description, the unfair prejudice of making such an allegation substantially outweighs any probative value such evidence may have.[16]

6. Any evidence, statement, testimony or argument suggesting that Carter referred to Local 556 or any of its officials or members as a "criminal" or "crook."[17] Carter demonstrated, and no Defendant disputed, that another flight attendant made a social media post using the word "criminal." Carter forwarded that post to President Stone, along with many more, showing *other* flight attendants' frustration with union leadership.[18] Thus, given there is no factual basis for this statement and the potential to inflame and prejudice the jury through a false and misleading

---

[12] *See* Fed. R. Evid. 402.
[13] *See* Fed. R. Evid. 403.
[14] *See* L556 Br. 5, 6, 17, 21; Local 556's Brief in Support of its Motion for Summary Judgment, Dkt. No. 182, shall be cited to herein as "L556 Br. __"; (Carter App.80, 81, 531).
[15] (Carter App.80, 81, 531)
[16] *See* Fed. R. Evid. 403.
[17] L556 Br. 6; (L556 App.54, 28-125). Local 556's Appendix in Support of its Motion for Summary Judgment, Dkt. No. 183, shall be cited to herein as "L556 App. __".
[18] (L556 App.54.)

description, the unfair prejudice of making such an allegation substantially outweighs any probative value such evidence may have.[19]

7. Any evidence, statement, testimony, or argument that Carter "threatened" President Audrey Stone. Despite repeated mischaracterizations that Carter's message "threatened" President Stone by saying "can't wait to see you back on line," Carter's messages to President Stone actually stated: "by the way the RECALL is going to Happen[20] and you are limited in the days you will be living off of all the [Southwest Airlines flight attendants]... cant  wait to see you back on line."[21] As the union concedes, "back on line" refers to "working on a flight."[22] Carter was telling President Stone: "Can't wait to see you out of office." Indeed, when President Stone was leaving office, she wrote in a union magazine, "Yippee Ki-yay and I'll see you on Line!"[23] Thus, given there is no factual basis for the characterization of Carter's comments as a threat and the potential to inflame and prejudice the jury through a false and misleading description, the unfair prejudice of making such an allegation substantially outweighs any probative value such evidence may have.[24]

8. Any evidence, statement, testimony, or argument suggesting that Carter wrote the Facebook message stating "#Democrats -  This is what you support? If its your body your choice, who is this laying in the fucking bowl? It doesn't looks like your body. #evil #murder #ownit #abortion." Carter did not write that statement, and Southwest did not discipline her for that statement.[25] Thus, given the inflammatory nature of the statement and the lack of factual basis for

---

[19] *See* Fed. R. Evid. 403.
[20] Grammatical or capitalization errors in quotes from evidence in this motion are included uncorrected for accuracy.  They are not individually noted for readability reasons.
[21] (Carter App.81, 531.)
[22] L556 Br. 6.
[23] (Carter Resp. App.31).
[24] *See* Fed. R. Evid. 403.
[25] Carter Br., Dkt. No. 221, at 19, ¶35; (Carter App. 78, 528 ¶11, 531). Carter's Brief in Support of her Motion for Summary Judgment, Dkt. No. 221, shall be cited to herein as "Carter Br. __".

attributing the comment to Carter, the unfair prejudice of making such an allegation substantially outweighs any probative value such evidence may have.[26]

9. Any evidence, statement, testimony, or argument regarding Southwest managers' subjective views regarding abortion, including any such evidence, statement, testimony, or argument suggesting that Carter believes there is no limit to what she can say or be allowed to say. Such an allegation is without evidence, without foundation or personal knowledge, and involve speculation regarding Carter's state of mind.[27]

10. Any evidence, statement, testimony, or argument regarding Carter's lack of subjective evidence of Southwest managers' private discriminatory intent. While Southwest's counsel repeatedly asked Carter in deposition for subjective evidence of manager's private motivations, Carter also responded that she could not possibly know "what is in their head."[28] Carter repeatedly testified to the evidence upon which she was relying in her deposition,[29] and presented such evidence in her motion for summary judgment. Moreover, it was not Carter's job at the deposition to personally marshal all the evidence supporting her claims. Allowing such evidence would leave a misleading impression with the jury that Carter had no evidence of discriminatory intent, which is untrue. Thus, any evidence, statement, testimony or argument that Carter did not know or have subjective evidence regarding Southwest managers' subjective intent is irrelevant, and any

---

[26] *See* Fed. R. Evid. 403.
[27] Fed. R. Evid. 403.
[28] (SWA App.657; Carter Tr. 128:3-4).
[29] (SWA App.656; Carter Tr. 127:1-14); (SWA App.614; Carter Tr. 85:2-11) (Carter Resp. App.2-3; Carter Tr. 74:21-75:5); (Carter Resp. App.4-5; Carter Tr. 78:24-79:5); (Carter Resp. App.5; Carter Tr. 79:15-16). (SWA App.204; Carter Tr. 84:1-11). (Carter Resp. App.5-8, Carter Tr. 79:21-82:9) (Carter Resp. App. 6-9; Carter Tr. 80:15-83:10). (SWA App.657; Carter Tr. 128:3-4) (SWA App.656; Carter Tr. 127:1-14); (SWA App.614; Carter Tr. 85:2-11).

probative value of such evidence is substantially outweighed by the unfairly prejudicial effect of misleading the jury on the state of evidence.[30]

11. Any evidence, statement, testimony, or argument that Carter believed President Stone tried to get her fired *only* because she was an objector who resigned from union membership and supported the recall, and, thus, that Carter did not believe Local 556 discriminated against her based on her religious beliefs.[31] Carter also stated that she believed President Stone attempted to fire her "[b]ecause [she] was dissenting against what they were doing as the union…"[32] "What they were doing as a union" was participating in the Women's March and supporting Planned Parenthood's pro-abortion agenda, which was in direct conflict with her religious beliefs.[33] Carter clearly claims that President Stone attempted to get Carter fired because of her union opposition, support for the recall (i.e., removal of union executive board officers, including Stone), *and* because of Carter's religious beliefs and practices. "Often, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision."[34] Moreover, Carter's legal claim does not depend on whether Carter *thought* that Local 556 fired her because of her religious beliefs, rendering her opinion irrelevant.[35] Such evidence would also leave the jury with a misleading impression of Carter's claim, resulting in its probative value being substantially outweighed by any prejudicial value.[36]

---

[30] *See* Fed. R. Evid. 402, 403.
[31] L556 Br. 19; (Dkt. No. 148, pp.4-5).
[32] L556 Br. 19.
[33] Carter Br. 13, 16-21, 26-27; (Carter App.527, ¶¶6-9);
[34] *Bostock v. Clayton, Cnty.*, 140 S. Ct. 1731, 1739 (2020).
[35] Fed. R. Evid. 402.
[36] Fed. R. Evid. 403.

12. Any evidence, statement, argument, or testimony regarding Local 556's representation of Carter after President Stone reported her to Southwest for discipline. Local 556's representation of Carter after President Audrey Stone reported her to Southwest is irrelevant to Carter's RLA, Title VII, and Duty of Fair Representation claims in this case, which focus on Local 556's unlawful conduct in causing Carter's termination by and through the actions of President Audrey Stone. Thus, any evidence, statement, argument, or testimony regarding Local 556's representation of Carter after President Stone reported her is irrelevant.[37] Such evidence would also leave the jury with a misleading impression of Carter's claim, resulting in its probative value being substantially outweighed by any prejudicial value.[38]

13. Any evidence, statement, or argument presented by Local 556 regarding an undue hardship defense, including any evidence that reasonably accommodating Carter's religion would have imposed an undue hardship on the union. Local 556 failed to plead any undue hardship as an affirmative defense in its Answer,[39] and never argued an undue hardship defense. Accordingly, Local 556 waived any undue hardship defense.[40] Furthermore, Local 556 cannot raise an undue hardship defense because Title VII's plain statutory text does not countenance a union undue hardship defense for union business. Title VII sets forth the *employer*'s undue hardship defense in 42 U.S.C. § 2000e(j)'s definition of religion, which includes all aspects of religious observance and practice, as well as belief, "unless an *employer* demonstrates that he is unable to reasonably

---

[37] Fed. R. Evid. 402.
[38] Fed. R. Evid. 403.
[39] Local 556 Answer, Doc. No. 82.
[40] *See* Fed. R. Civ. P. 8 (c)(1).

8

accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the *employer*'s business." (emphasis added).[41] Thus, any such evidence is irrelevant.[42]

14. Any evidence, statement, argument, or testimony about whether Carter requested a religious accommodation. The law does not require Carter to expressly request an accommodation for a religious belief or practice in order for a Title VII violation to occur.[43] Raising this issue risks leaving the jury with a misleading impression that such a request is required. Such evidence is irrelevant and any probative value it may have is substantially outweighed by the unfair prejudice associated with the potential jury confusion.[44]

15. Any evidence, statement, argument, or testimony, that Southwest fired Carter for "the manner of communications, insults, threats, and graphic images."[45] Firing an employee for reasons based in part on religious observances, beliefs, or practices, still violates Title VII regardless of the employer's other motives,[46] and neutral policies must yield to Southwest's affirmative obligation to engage Carter's need for an accommodation.[47] Raising such an issue risks leaving the jury with the false impression that Southwest can fire Carter for her religious beliefs and practices due to an otherwise-neutral policy contrary to *EEOC v. Abercrombie & Fitch Stores,*

---

[41] To be sure, prior to *Abercrombie*, the Fifth Circuit held in a plurality opinion that a union can raise an undue hardship defense. *Cooper v. General Dynamics*, 533 F.2d 163, 172-73 (5th Cir. 1976) (Brown, C.J., concurring); *id.* at 174-77 (Rives, J. concurring). Judge Gee dissented as to whether the union had an undue hardship defense: "Because of what the statute says … With deference, none of these reasons persuades me, or even approaches persuading me, that when Congress has said A, in words which admit of neither construction nor misunderstanding, we should say A and B." *Id.* at 170-71 (Gee, J., dissenting).
[42] Fed. R. Evid. 402.
[43] Court Order, Doc. No. 232 at 13-14 (citing *Abercrombie & Fitch*, 575 U.S. at 772 n.2)(quotation omitted).
[44] Fed. R. Evid. 402, 403.
[45] SWA Br. 57.
[46] *Bostock*, 140 S. Ct. at 1739, 1742 ("Intentionally burning down a neighbor's house is arson, even if the perpetrator's ultimate intention (or motivation) is only to improve the view."); *see also id.* at 1741.
[47] *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015)

*Inc.*, 575 U.S. 768 (2015). Thus, any such evidence, statement, argument, or testimony is irrelevant, and any probative value it may have is substantially outweighed by its unfairly prejudicial effect.[48]

16. Any evidence, statement, argument, or testimony, that Carter could engage in her religious observances, beliefs, and practices without violating Southwest's social media policies.[49] To the extent Southwest believed Carter could engage in her practices without violating the company's policies, it had an affirmative obligation to explore those options with her first as part of the accommodation process.[50] Firing an employee for her religious practices "is synonymous with refusing to accommodate the religious practice."[51] Southwest applied its Social Media Policies to Carter and fired her without making any accommodation attempts.[52] Thus, any such evidence, statement, argument, or testimony is irrelevant, not probative of any factual questions at issue, and any probative value such evidence would have is substantially outweighed by the unfairly prejudicial effect of leaving the jury with a misunderstanding of the law applicable to its verdict.[53]

17. Any evidence, statement, argument, or testimony, that Southwest had no actual knowledge that Carter was religious or that her actions or statements were based upon her religious belief. Title VII does not require proof that the employer had actual knowledge.[54] Introducing evidence

---

[48] *See* Fed. R. Evid. 403
[49] *See* SWA Br. 49.
[50] *Abercrombie & Fitch*, 575 U.S. at 775.
[51] *Id.* While Southwest states that Carter acknowledged she could act in accordance with her stated religious belief (share her pro-life views with fellow employees) without violating Southwest's Social Media Policies, the citation does not support that assertion. SWA Br. 50 (citing SWA App.216-217). Besides, Title VII required Southwest's Social Media Policies to give way to Carter's need for an accommodation and affirmatively obligated Southwest not to fire Carter because of her religious observance and practice. *Abercrombie & Fitch*, 575 U.S. at 775.
[52] (Carter App.378-379; Schneider 96:18-25, 97:1-8); (Carter App.306-307; Sims 164:1-25, 165:15-18).
[53] Fed. R. Evid. 402, 403.
[54] *Abercrombie & Fitch*, 575 U.S. at 775.

10

or making arguments that Southwest had no such actual knowledge is therefore irrelevant, and any probative value such evidence would have is substantially outweighed by the unfairly prejudicial effect of leaving the jury with a misunderstanding of the law applicable to its verdict.[55]

18. Any evidence, statement, argument, or testimony, that Carter failed to notify Southwest of her religious beliefs "prior to violating the [social media] policy."[56] Title VII prohibits the employer from firing an employee for her religious observances, beliefs, and practices, and prohibits the employer's motive of avoiding the employee's need for an accommodation when its application of work rules creates a conflict, not its knowledge prior to applying the policy.[57] Carter did not need an accommodation under Southwest's Social Media Policies until the company applied its Social Media Policies to her religious expression and fired her. Thus, any such evidence, statement, argument, or testimony is irrelevant, and any probative value such evidence would have is substantially outweighed by the unfairly prejudicial effect of leaving the jury with a misunderstanding of the law applicable to its verdict.[58]

19. Any evidence, statement, or argument regarding Southwest offering or Carter declining reinstatement as part of Southwest's "Last Chance Agreement" ("LCA").[59] Southwest's LCA was not an unconditional offer of reinstatement as it required Carter to relinquish her rights in order to be reinstated.[60] Southwest's LCA would have reinstated Carter's employment and reduced her termination to a 30-day suspension, but it also forced Carter to waive her legal rights and left her

---

[55] Fed. R. Evid. 402, 403.
[56] SWA Br. 51.
[57] *Abercrombie & Fitch*, 575 U.S. at 775. Title VII "gives [religious practices] favored treatment, affirmatively obligating employers not to discharge any individual because of such individual's 'religious observance and practice.'" *Abercrombie*, 575 U.S. at 775 (cleaned up).
[58] Fed. R. Evid. 402, 403.
[59] (SWA App. 1181-1186).
[60] *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 232, 102 S. Ct. 3057, 3066, 73 L. Ed. 2d 721 (1982); *Lewis Grocer Co. v. Holloway*, 874 F.2d 1008, 1012 (5th Cir. 1989).

11

without any legal recourse if the company violated her rights again.[61] Given that the offer does not constitute an unconditional offer of reinstatement, it is irrelevant.[62] Moreover, given it offered a benefit in exchange for giving up her rights, it also constituted a settlement offer and rejection of that offer, which are inadmissible under Federal Rule of Evidence 408.

20. Any evidence, statement, argument, or testimony regarding any person's specific support for Hillary Clinton or Donald Trump. Such support is irrelevant to any issue in this suit, and given the polarizing nature of such candidates and the resulting potential to unfairly bias the jury, the unfair prejudice of making such an allegation substantially outweighs any probative value such evidence may have.

21. Any evidence, statement, argument, or testimony regarding Southwest's July 8, 2020 Motion and Request for Sanctions,[63] and any attempt to elicit testimony or information from Plaintiff about communications for which Southwest sought disclosure, as part of the motion. None of this information is relevant to the claims in this case. The Court denied Southwest's motion, including its requests for disclosure of information about the source of Stone's whereabouts, and that matter should not be re-litigated here.[64] Thus, any such evidence, statements, arguments, or testimony is irrelevant since it is not probative as to liability, damages, or remedies, and any probative value it may have is substantially outweighed by the unfair prejudice of baseless accusations about Carter's conduct during the litigation.[65]

---

[61] (Carter Resp. App.12-13; Carter Tr. 92:21-93:12) ("I would have been signing all my rights away."). (SWA App. 1181-1186).
[62] Fed. R. Evid. 402.
[63] *See* Dkt. Nos. 100-102, 106; Dkt. Nos. 104-105.
[64] Dkt. No. 126.
[65] Fed. R. Evid. 402, 403.

22. Any evidence, statement, or argument regarding settlement negotiations. Evidence of settlement negotiations is inadmissible.[66]

23. Any evidence, statement, or argument suggesting that Plaintiff, through her attorney, asserted claims of privilege during discovery. Claims of privilege are not admissible as evidence.[67]

24. Any attempt to elicit testimony from Plaintiff about communications with her lawyers. Such communications are privileged. *See* Fed. R. Evid. 501.

25. Any attempt to request Plaintiff's counsel to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury.

26. Any statement of the law, other than that regarding the burden of proof and the basic legal definitions counsel believe to be applicable, before the Court rules on the law applicable to the case.[68]

27. Any evidence, statement, or argument that Defendants were, or were not, covered, insured, or otherwise protected by any bond, contract, or policy of insurance at the time of the occurrence made the basis of this suit.[69]

28. Any evidence, statement, or argument of Defendants' financial adversity or Plaintiff's financial prosperity.[70]

29. Any evidence, statement, or argument that Plaintiff received contributions from family, friends, or her husband.[71]

---

[66] *See* Fed. R. Evid. 408; *Affiliated Mfrs., Inc. v. Aluminum Co.*, 56 F.3d 521, 526-30 (5th Cir. 1995).
[67] *See* Fed. R. Evid. 501.
[68] Fed. R. Evid. 402, 403.
[69] Fed. R. Evid. 402, 403.
[70] Fed. R. Evid. 402, 403.
[71] Fed. R. Evid. 402, 403.

30. Any other references to collateral sources of employee benefits that would have been provided by Southwest but for Carter's termination.[72]

31. Any evidence, statement, or argument that any recovery by Plaintiff either would or would not be subject to federal income taxation or any other form of taxation.[73]

32. Any evidence, statement, or argument that Plaintiff filed this Motion in Limine or that the Court ruled in response. Such references are inherently prejudicial in that they suggest or imply that Plaintiff has sought to prohibit proof or that the Court has excluded proof of matters damaging to Plaintiff's case.[74]

## Conclusion

For the foregoing reasons, Carter respectfully requests that the Court grant her Motion *in Limine* and instruct Southwest, Local 556, and their counsel not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any of these matters without first obtaining the permission of the Court outside the presence and hearing of the jury, and to instruct Defendants and their counsel to warn and caution each of their witnesses to follow the same instructions.

Dated: June 9, 2022						Respectfully submitted,

						s/ Matthew B. Gilliam
						Mathew B. Gilliam (*admitted pro hac vice*)
						New York Bar No. 5005996
						*mbg@nrtw.org*
						c/o National Right to Work Legal Defense
						Foundation, Inc.
						8001 Braddock Road, Suite 600
						Springfield, Virginia 22160
						Tel: 703-321-8510
						Fax: 703-321-9319

---

[72] Fed. R. Evid. 402, 403.
[73] Fed. R. Evid. 402, 403.
[74] Fed. R. Evid. 402, 403.

14

Bobby G. Pryor<br>
State Bar No. 16373720<br>
bpryor@pryorandbruce.com<br>
Matthew D. Hill, Of Counsel<br>
State Bar No. 24032296<br>
mhill@pryorandbruce.com<br>
PRYOR & BRUCE<br>
302 N. San Jacinto<br>
Rockwall, TX 75087<br>
Telephone: (972) 771-3933<br>
Facsimile: (972) 771-8343<br>

### **Certificate of Conference**

This is to certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and 7(b). The personal conference was conducted by Matthew Gilliam emailing a draft of the motion to Paulo McKeeby and Adam Greenfield on June 9, 2022 and obtaining their position by email on the same day. The Motion is opposed in part and unopposed in part. Southwest is not opposed to *limine* points 21-28 and 31-32. Southwest and Local 556 both indicated that, after the opportunity to more thoroughly review the motion and assess what evidence plaintiff is seeking to exclude, there may be points which they would not oppose or about which they could reach agreement. Therefore, this Motion is presented to the Court for resolution.

/s/ Matthew B. Gilliam

### **Certificate of Service**

I hereby certify that on June 9, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

/s/ Matthew B. Gilliam