# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| **Defendants.** | | |

---

## EXHIBIT 2: PLAINTIFF'S DISPUTED PORTIONS OF PROPOSED JURY CHARGE AND INTERROGATORIES

---

For those issues on which the parties could not agree, the following contains 1) Plaintiff Charlene Carter's proposals for the portions of the proposed jury charge and interrogatories where the parties could not reach agreement and 2) Carter's preliminary objections to the proposals submitted by defendants Southwest and Local 556 in Exhibit 3. For the Court's convenience, where there are only discrete differences between the proposed charges of the parties, Carter has highlighted in yellow the portions included in her charge that were not in the portion that the parties agreed upon.

**Plaintiff Carter's RLA Retaliation Claim against Defendant Southwest**

Plaintiff Charlene Carter claims that Defendant Southwest retaliated against Carter by firing her for the protected activity of sending Local 556 President Audrey Stone private Facebook

1

videos and messages and expressing her disapproval with the union's activities and participation in the Women's March. The employer, Defendant Southwest, denies Plaintiff Carter's claims.

It is unlawful for an employer to retaliate against an employee for opposing her union or expressing disapproval about the union's activities.[1]

To prove that Defendant Southwest retaliated against Plaintiff Carter by firing Carter for messaging Local 556 President Stone and expressing her disapproval with the union's activities and participation in the Women's March, Plaintiff Carter must prove by a preponderance of the evidence that: (1) Defendant Southwest fired Carter and (2) Plaintiff Carter's private Facebook videos and messages to Local 556 President Stone expressing disapproval with the union's activities and participation in the Women's March were a "substantial or motivating factor" in Southwest's decision to fire Carter.[2]

Plaintiff Carter must prove only that her private Facebook videos and messages to President Stone in which she expressed her disapproval with the union's activities and participation in the Women's March were a "substantial or motivating factor" for Defendant Southwest's decision to fire Carter.[3]

"Substantial or motivating factor" means that Plaintiff Carter's private Facebook videos and messages to President Stone were a factor that made a difference in Defendant Southwest's decision to fire Carter.[4] It also means any factor that motivated or in any way contributed to

---

[1] *Roscello v. Sw. Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984).
[2] *Id.*; *see also* Court Memorandum Opinion and Order, Dkt. No. 232, at 12.
[3] *Roscello*, 726 F.2d at 222.
[4] Faculty of Federal Advocates, Model Employment Law Jury Instructions, p.5 (2013) (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003); *Elsmore v. Capstan, Inc.*, 58 F.3d 525, 530 (10th Cir. 1995)) (other citations omitted).

Southwest's decision to fire Carter, even if other factors also motivated the decision. It does not have to be the only factor that motivated Southwest's decision to fire Carter.[5]

Plaintiff Carter is not required to prove that her expression of disapproval with the union's activities and participation in the Women's March was the sole or exclusive motivating factor for Defendant Southwest's decision to fire Carter or that all of Southwest's stated reasons for firing Carter were false.[6]

If Plaintiff Charlene Carter demonstrates that her protected activity was a "substantial or motivating factor" for Southwest's termination decision, Carter's protected activity does not lose its protection even if the jury decides that Carter's protected activity is "vulgar, offensive, abusive, threatening, or harassing."[7] Employees' union representation speech is protected even if others consider their speech to be "intemperate, abusive, or insulting,"[8] or a "vehement," "caustic," or "unpleasantly sharp attack[]."[9] Even "the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth."[10]

---

[5] *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401-02 (1983).

[6] Faculty of Federal Advocates, p.5.

[7] *Austin*, 418 U.S. at 273-74. The Supreme Court has recognized that federal labor law principles guarantee employees' freedom to engage in "uninhibited, robust, and wide-open debate in labor disputes." *Id*. Federal courts have also applied the *Austin* rule in the RLA context. *See Konop*, 302 F.3d at 882 n.10 ("We see no reason why the rule announced in *Linn* [and applied in *Austin*] … regarding protected activities, should not apply in the context of the RLA.") (cleaned up); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191-92 (11th Cir. 1999). Consistent with the Supreme Court's decisions in *Steele*, *Street*, and *Austin*, RLA Section 152 (Fourth) prohibits unions and employers from diminishing constitutional protections to employee rights. The RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights," including their speech and association rights to re-organize or oppose their unions, and any other employee representation or organizational matters. *See Steele*, 323 U.S. at 198.

[8] *Austin*, 418 U.S. at 273-74, 283.

[9] *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 62 (1966).

[10] *Id.* at 63. The Supreme Court has recognized union rights to use all lawful propaganda to enlarge their membership. *Austin*, 418 U.S. at 277, 277 n.12. Thus, dissident employees have the same right to oppose union leadership and representation. The Supreme Court has held federal labor

If Plaintiff Charlene Carter demonstrates that her protected activity was a "substantial or motivating factor" for Southwest's termination decision, it would not lose its protection because the RLA protects union dissident speech to union officials about union activities even if it offends the union and its officers.[11]

**Carter Objections to Southwest's RLA Retaliation Claim Instructions**:

Southwest opposes Carter's claims based on the false distinction between terminating Carter for violations of Southwest's employment policies and Carter's opposition to union leadership. Southwest terminated Carter because it concluded that Carter's opposition to union leadership violated its policies. Southwest's assertion that it fired Carter for violating its Social Media Policies, and not for her RLA-protected activity is question-begging and misses the point of protected rights.[12]

Southwest's instructions improperly include legal claims that have already been resolved. Southwest's instructions state that RLA Sections 152 (Third) and (Fourth) address primarily employees' pre-certification rights. Federal courts have jurisdiction over post-certification disputes alleging animus—that RLA protected activity was a substantial or motivating factor for an adverse employment action—or discrimination involving protected activities.[13] Not only does

---

statutes' protections for this "[v]igorous exercise" of the right to persuade other employees to join must not be stifled by the threat of liability under state libel and defamation laws, including "for the overenthusiastic use of rhetoric or the innocent mistake of fact." *Id*.

[11] Federal labor laws, including the RLA, NLRA, and LMRDA, all subject union officers to extreme robust speech from the employees they purport to represent. *See Hall v. Cole*, 412 U.S. 1 (1973); *Petramale v. Local No. 17 of Laborers Int'l Union*, 736 F.2d 13, 16 (2d Cir. 1984).

[12] *See Arthur v. United Airlines, Inc.*, 655 F. Supp. 363, 367 (D. Colo. 1987). If the employee's activities are RLA-protected, then it is impermissible for the employer to fire her for those activities. *See e.g., Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 574 (1995) ("[T]he point of all speech protection … is to shield just these choices of content that in someone's eyes are misguided or even hurtful.").

[13] *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 346 (5th Cir. 2022). Furthermore, any reading of *Trans World Airlines, Inv. v. Independent Federation of Flight*

the RLA protect employees' right to "organize" unions, but it also protects employees' post-certification rights to continuous "self-organization" and "re-organization" campaigns, such as engaging in decertification proceedings to remove unwanted unions, and other efforts to remove unwanted union representatives.[14]

The Court has resolved that issue, and it is irrelevant to Carter's RLA claim at trial. For the same reasons, Southwest's instruction is improper because it asserts, "an employee engages in protected activity when she attempts to organize and bargaining collectively through representatives of their own choosing." As this Court has already decided, the RLA protects rights more broadly than Southwest's instructions suggest, and there is no issue for trial regarding whether Carter engaged in RLA-protected activity.

When there is no dispute as to which employee activities motivated the employer's termination of the employee, the only question is whether the employee's activities were protected.[15] The Court has already resolved that question. As this Court recognized in its May 25, 2022 Order on Southwest's Motion for Reconsideration, Judge Scholer found that Carter' public complaints were protected, and Carter, in her Facebook messages, "was plainly objecting to forced payment of political … union expenses, advocating against and opposing Local 556 and President Stone, and expressing her opposition to the political leadership of the Union."[16]

---

*Attendants*, 489 U.S. 426 (1989) that would prevent employees from exercising their expressly protected RLA rights, would erase employees' rights out of the statutory text of RLA Section 152 (Third) and (Fourth). *See* 45 U.S.C. § 152 (Third) and (Fourth).

[14] *See Russell v. NMB*, 714 F.2d 1332, 1345 (5th Cir. 1983) ("*[I]t is inconceivable that the right to reject collective representation vanishes entirely if the employees of a unit once choose collective representation.*") (emphasis in original) (citations omitted); *see also Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 279 (1974); *BRAC v. Ass'n for Benefit of Non-Contract Emps.*, 380 U.S. 650, 669 n.5 (1965).

[15] *See NLRB v. Allied Aviation Fueling of Dallas LP*, 490 F.3d 374, 379 (5th Cir. 2007).

[16] Court Order on Reconsid., Doc No. 237 at 3.

Southwest's instructions mistakenly include a *Wright Line* mixed-motive burden-shifting scheme that does not apply in this case because there is no dispute that Southwest fired Carter for sending private Facebook videos and messages to President Stone.[17] *Wright Line* only applies in cases when an employee engages in protected activity and different unprotected activity, and the parties dispute whether the protected or the unprotected activity motivated the employee's termination.[18] Shifting the burden back to Southwest to show that the company would have fired Carter for some other activity makes no sense when the company admits that it fired Carter for only her Facebook videos and messages.

Southwest's instructions are also improper because they state that, to prove retaliation, Carter must prove that "[t]he individual(s) who decided to terminate Plaintiff Charlene Carter's employment had knowledge of the protected activity in which she engaged" and the protected activity was a "substantial motivating factor for the decision maker's termination of her employment." As to Southwest, Carter need only prove that her RLA-protected activity was a substantial *or* motivating factor for Southwest's decision to fire her.

**Plaintiff Carter's Title VII Unlawful Discharge Claim against Defendant Southwest**

Plaintiff Charlene Carter claims that Southwest fired her because of her religious observances, beliefs, or practices. The employer, Defendant Southwest, denies Plaintiff Carter's claims.[19]

---

[17] Southwest's instructions state that "[i]f Plaintiff Charlene Carter demonstrates that protected activity was a motivating factor in the decision to terminate her employment, Defendant Southwest is not liable under the Railway Labor Act if [it] establishes by a preponderance of the evidence that Plaintiff Charlene Carter would have been discharged from employment even if she had not engaged in protected activity."

[18] *See e.g.*, *Poly-America, Inc. v. NLRB*, 260 F.3d 465, 488-89 (5th Cir. 2001) (applying the *Wright Line* framework when the employer claimed that it discharged the employee for poor performance); *see also NLRB v. Wright Line*, 662 F.2d 899 (1st Cir. 1981).

[19] *See* Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.1, pp.133-134.

It is unlawful for an employer to fire an employee "because of" any aspect of the employee's religious observances, beliefs, or practices.[20]

To prove that Defendant Southwest unlawfully fired Plaintiff Carter "because of" her religious observances, beliefs, or practices, Plaintiff Carter must prove by a preponderance of the evidence that: (1) Southwest fired Carter and (2) some aspect of Carter's religious observances, beliefs, or practices was a "but-for cause" of or a "motivating factor" in Southwest's decision to fire her.[21]

To prove that Plaintiff Carter's religious observances, beliefs, or practices was a "but-for cause" of Southwest's decision to fire her, Plaintiff Carter must only prove that Southwest would not have fired her in the absence of some aspect of her religious observances, beliefs, or practices.[22] Plaintiff Carter's religious observances, beliefs, or practices may be a "but-for" cause for Southwest's decision to fire Carter even if some other factor contributed to Southwest's decision.[23]

To prove that Plaintiff Carter's religious observances, beliefs, or practices were a "motivating factor" in Southwest's decision to fire her, Plaintiff Carter must only prove that some aspect of her religious observances, beliefs, or practices was a factor in the employer's decision to fire her.[24] Plaintiff Carter's religious observances, beliefs, or practices may be a "motivating factor" for Defendant Southwest's decision to fire Carter even if some other factor contributed to Southwest's decision.[25] Plaintiff Charlene Carter may prove that any aspect of her religious beliefs,

---

[20] 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e(j).

[21] 42 U.S.C. § 2000e-2(a)(1) (prohibiting discharge because of religion); 42 U.S.C. § 2000e(j) (defining "religion"); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *Bostock v. Clayton, Cnty.*, 140 S. Ct. 1731, 1739, 1741 (2020); 42 U.S.C. § 2000e-2(m) (motivating factor).

[22] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.1, p.134; *Bostock*, 140 S. Ct. at 1739, 1741.

[23] *Bostock*, 140 S. Ct. at 1739, 1741.

[24] *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m).

[25] Faculty of Federal Advocates, p.5.

observances, or practices was a "motivating factor" in Defendant Southwest's decision to fire her.[26] That is, Plaintiff Carter may prove that any aspect of her religious observances, beliefs, or practices made a difference in Defendant Southwest's decision to fire her.[27] Carter is not required to prove that her religious observances, beliefs, or practices were the sole or exclusive motivating factor for Defendant Southwest's decision to fire her or that all of the Defendant's stated reasons for firing her were false.[28]

**Carter Objections to Southwest's "Religious Discrimination Claim" Instructions**:

Southwest characterizes Carter's claim as "she would not have had her employment terminated but for her religious beliefs." Contrary to Southwest's characterizations, demonstrating that Southwest would not have fired Carter "but for" her religious observances, beliefs, and practices, is merely one way of demonstrating that Southwest unlawfully fired her "because of" some aspect of her religious observances, beliefs, or practices.[29] Carter can demonstrate "because of" causation by showing that her religious observances, beliefs, or practices, were either a "but-for" cause or a "motivating factor" in Southwest's termination decision. For the same reasons, Southwest's instruction regarding what Carter must prove by a preponderance of the evidence is false.

Southwest's instructions are also improper because they repeatedly refer to whether "illegal discrimination" was a motivating factor, but this misstates the legal standard, which evaluates whether any aspect of Carter's religious observances, beliefs, or practices, is a "but-for" cause or "motivating factor."[30]

---

[26] *See* 42 U.S.C. § 2000e(j).
[27] Faculty of Federal Advocates, p.5.
[28] *Id.*
[29] *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; *see also* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e(j).
[30] *See* 42 U.S.C. § 2000e(j); *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; *see also* 42 U.S.C. § 2000e-2(m).

Southwest's instruction is improper because its assumption that Southwest can fire Carter under "employment related policies" mistakes the law under Title VII. "An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions."[31] If an employer or union makes an employee's religiously motivated practice a factor in employment decisions Title VII is violated. Title VII requires otherwise-neutral policies to give way.[32] For the same reasons, Southwest's instructions that "An employer may … terminate … an employee for other reasons, good or bad, fair or unfair," and additional instructions instructing the jury not to "second-guess Defendant Southwest's business decisions or act as a personnel manager" are also mistaken and improper.

Southwest's instructions incorrectly state that Carter claims Southwest's stated reasons are a pretext. Not so. This is not a pretext case. Southwest fired Carter because the company said her pro-life Facebook messages and posts—wherein she exercised her religious observances, beliefs, and practices—violated its Social Media Policies. Southwest admits that it fired her these messages, and does not contend that it fired her for some other reason.

**Plaintiff Carter's Title VII Failure to Accommodate Claim against Defendant Southwest**

Plaintiff Charlene Carter claims that Southwest failed to accommodate her religious observances, beliefs, and practices. The employer, Defendant Southwest, denies Plaintiff Carter's claims.

It is unlawful for an employer to refuse to accommodate any aspect of an employee's religious observances, beliefs, or practices.[33] "Accommodation" means allowing the employee to engage in his or her religious observances, beliefs, or practices despite the employer's normal rules to the

---

[31] *Abercrombie & Fitch*, 575 U.S. at 773.
[32] *Id*.
[33] *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).

contrary.[34] Firing an employee because of his or her religious practice "is *synonymous* with refusing to accommodate the religious practice."[35] Employers may not fire employees for their religious observances, beliefs, or practices under an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.[36]

Title VII also imposes an "affirmative obligation" on employers not to fire an employee because of some aspect of the employee's religious observances, beliefs, and practices that requires accommodation from the employer.[37] The employer's "affirmative obligation" also means that the employer must give favored treatment under its rules and policies to the employee's religious observances, beliefs, and practices.[38]

To prove that Defendant Southwest unlawfully discriminated against Plaintiff Carter by failing to accommodate Carter's religious observances, beliefs, and practices, Plaintiff Carter must prove by a preponderance of the evidence that Southwest's wish to avoid accommodating Plaintiff Carter's religious observances, beliefs, or practices under its rules and policies was a motivating factor in Southwest's decision to fire Carter.[39]

To prove that Plaintiff Carter's religious observances, beliefs, or practices were a "motivating factor" in Southwest's decision to fire her, Plaintiff Carter must only prove that some aspect of her religious observances, beliefs, or practices was a factor in the employer's decision to fire her.[40] Plaintiff Carter's religious observances, beliefs, or practices may be a "motivating factor" for

---

[34] *Id.* at 772 n.2; *see also* Black's Law Dictionary (11th ed. 2019) (defining accommodation as an adaptation, adjustment, or allowance under the employer's rules and policies).
[35] *Abercrombie & Fitch*, 575 U.S. at 772 n.2 (emphasis in original).
[36] *Id.* at 775.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 773.
[40] *Id.*; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m).

Defendant Southwest's decision to fire Carter even if some other factor contributed to Southwest's decision.[41] Plaintiff Charlene Carter may prove that any aspect of her religious beliefs, observances, or practices was a "motivating factor" in Defendant Southwest's decision to fire her.[42] That is, Plaintiff Carter may prove that any aspect of her religious observances, beliefs, or practices, made a difference in Defendant Southwest's decision to fire her.[43] The Plaintiff is not required to prove that her religious observances, beliefs, or practices were the sole or exclusive motivating factor for Defendant Southwest's decision to fire her or that all of the Defendant's stated reasons for firing her were false.[44]

**Carter Objections to Southwest's Failure to Accommodate Claim Instructions**:

Southwest's instructions are improper because Southwest contends that Carter "never sought a reasonable accommodation for her religious beliefs." This Court has already decided, "the law does not require Carter to expressly request an accommodation for a religious belief or practice in order for a Title VII violation to occur."[45]

Southwest's contention that it did not have to provide an accommodation "because the request occurred after [Carter sent and posted her Facebook videos and messages]" misapprehends the law that Southwest has an affirmative obligation not to fire an employee for her religious, observances, beliefs, and practices, and that Southwest's policies must yield to those practices. Southwest created the conflict with Carter's religious beliefs and practices by firing Carter. Southwest's

---

[41] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775.
[42] *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[43] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[44] *Id.*
[45] Court Order, Dkt. No. 232 at 13-14 (citing *Abercrombie & Fitch*, 575 U.S. at 772 n.2)(quotation omitted).

instructions are improper because they fail to reflect accommodation law under *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).

Southwest's instructions are also improper because they make the misleading statement that an "employer is not required to accommodate an employee's personal preference as to how she expresses her religious beliefs or practices." That may be true when an employer initiates accommodation efforts with an employee, but an employer's termination of an employee for her religious observances, beliefs, and practices, is synonymous with a failure to accommodate.[46]

Southwest's instructions are also improper because they include failure to exhaust administrative remedies instructions, which this Court already rejected.[47]

Southwest's instructions regarding what Carter must prove by a preponderance of the evidence are also inaccurate, and do not reflect the standard set forth by the Supreme Court in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). Those instructions also suggest that Carter must establish Southwest's knowledge "of the conflict between Plaintiff Charlene Carter's religious belief or practice and the job requirement before Carter engaged in the conduct for which she sought accommodation," but that is false. Title VII's disparate-treatment provision, § 2000e-2(a)(1), "does not impose a knowledge requirement."[48] For that reason, Carter had no burden to request an accommodation or raise a religious conflict.[49]

---

[46] *Abercrombie & Fitch*, 575 U.S. at 772 n.2.
[47] Court Order, Dkt. No. 232, at pp.13-14.
[48] *Abercrombie & Fitch*, 575 U.S. at 773.
[49] The U.S. Supreme Court rejected Southwest's argument in *Abercrombie*, reasoning that:

> This [burden to request an accommodation] would require the employer to have actual knowledge of a conflict between an [employee's] religious practice and a work rule. The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province … [Title VII's] disparate-treatment provision prohibits actions taken with the *motive* of avoiding

Southwest's instructions should not include instructions regarding an undue hardship defense because Southwest never initiated any efforts to accommodate to Carter's religious observances, beliefs, and practices.[50] Southwest made any attempt to accommodate Carter's religious beliefs, and, by Southwest's own admission, "[N]o religious accommodation would have excused [the plaintiff] for her serious reported misconduct."[51] Southwest did not identify any hardships with accommodating Carter's religious beliefs before firing her. Southwest, in fact, admitted that Carter's Facebook communications imposed no financial harm on the company prior to her termination.[52] Southwest did not receive any complaints about the posts Carter made on her Facebook page.[53] Southwest only discovered those posts as part of its internal investigation of President Stone's complaint, which did not mention any of Carter's public Facebook page posts.

To be sure, employers need not make any efforts if they can show that *any* accommodation would impose an undue burden.[54] However, Carter demonstrated, and Southwest never disputed, that Southwest could have made minimal efforts to accommodate her that would not have imposed any undue burden. Southwest never discussed with Carter whether she would be willing to post a

---

the need for accommodating a religious practice. A request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability.

*Id.* at 774. "Instead, an [employee] need only show that his need for an accommodation was a motivating factor in the employer's decision." *Id.*

[50] *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993). "The prohibition of discrimination because of religious practices is meant to force employers to consider whether those practices can be accommodated without undue hardship." *Abercrombie & Fitch*, 575 U.S. at 778 (Alito, J., concurring). *See also*, Court Order, Dkt. No. 232 at 14 ("[N]o religious accommodation would have excused [the plaintiff] for her serious reported misconduct." (quoting Dkt. No. 167 at 50)).

[51] Court Order, Dkt. No. 232, p.14 (quoting SWA Br., Dkt. No. 167, at 50).

[52] (Carter App.310, Dkt. No. 222-27, Sims 222:3-4).

[53] (Carter App.309, Dkt. No. 222-27, Sims 221:13-16).

[54] *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 275 (5th Cir. 2000).

disclaimer on her Facebook page that her posts do not necessarily represent the company's views.[55] Southwest never asked Carter if she would remove Facebook posts that it considered to be a nexus to the workplace.[56] Nor did Southwest ever ask if Carter would take any Facebook posts down prior to her termination.[57]

Carter further objects to instructions that define "undue hardship" in accordance with the "more than *de minimis*" test in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).[58] While this Court may be bound by *Hardison*'s "more than *de minimis*" test it should be overturned for all of the reasons Carter already set forth in her Response to Southwest's Summary Judgment Brief.[59] *Hardison* is incorrectly reasoned and based on an erroneous interpretation of "undue hardship" that deviates from Title VII's text and plain meaning. Three Supreme Court Justices and the former Solicitor General have agreed that the Court "should grant review in an appropriate case to consider whether *Hardison*'s interpretation should be overruled."[60]

**Plaintiff Carter's claim that Defendant Local 556 President Audrey Stone acted in her official union capacity when reporting Plaintiff Carter for discipline**

Plaintiff Charlene Carter claims that Defendant Local 556's President, Audrey Stone, was acting in her official capacity as union president when she reported Plaintiff Carter to Southwest for Carter's Facebook videos and messages expressing her disapproval with the union's activities

---

[55] (Carter App. 387, Dkt. No. 222-30, Schneider 126:15-25).

[56] (Carter App. 387, Dkt. No. 222-30, Schneider 126:11-14).

[57] (Carter App. 387, Dkt. No. 222-30, Schneider 126:7-10). (Carter App. 310, Dkt. No. 222-27, Sims 222:5-7).

[58] Undue hardship exists when a religious accommodation would require an employer to incur more than a *de minimis* cost to its business. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).

[59] Carter Resp. Br., Dkt. No. 223, at 51-52.

[60] *Patterson v. Walgreen Co.*, 140 S. Ct. 686, 686 (2020) (Alito, J., concurring in the denial of certiorari).

and participation in the Women's March. The union, Defendant Local 556, denies Plaintiff Carter's claims.

A union is liable for all acts of its officers and agents within the scope of their general authority, regardless of whether the union specifically authorized or ratified the acts.[61] Holding elected union office is persuasive and substantial evidence that the union official is acting in his or her official capacity, and is decisive in the absence of compelling contrary evidence.[62]

Defendant Local 556 has the burden to present compelling evidence to rebut the presumption that Local 556's president, Audrey Stone, was acting in her official capacity when she reported Plaintiff Carter for discipline.[63]

To prove that Defendant Local 556's president, Audrey Stone, was acting in her official capacity, Plaintiff Charlene Carter must prove by a preponderance of the evidence that Audrey Stone was acting within the scope her general authority as Local 556 president when she reported Carter to Southwest for Carter's Facebook videos and messages expressing disapproval with the union's activities and participation in the Women's March.[64]

**Plaintiff Carter's Railway Labor Act retaliation claim against Defendant Local 556**

Plaintiff Charlene Carter claims that Defendant Local 556 retaliated against Carter by attempting to discipline her for the protected activity of sending Local 556 President Audrey Stone

---

[61] *N. River Energy Corp. v. United Mine Workers of Amer.*, 664 F.2d 1184, 1190 (11th Cir. 1981); *United States Steel Corp. v. UMWA*, 519 F.2d 1249, 1253 (5th Cir 1975); *Vulcan Materials Co. v. Steelworkers*, 430 F.2d 446, 454 (5th Cir. 1970), *cert. denied*, 401 U.S. 963 (1971).

[62] *See Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1804 (2015) (calling this rule "long-standing" precedent); *IBEW Local 453 (Nat'l Elec. Contractors Ass'n)*, 258 N.L.R.B. 1427, 1428 (1981), *enf'd mem.*, 696 F.2d 999 (8th Cir. 1982); *Sec., Police and Fire Prof'ls of Amer. (SPFPA) Local 444 (Sec. Support Servs.)*, 360 N.L.R.B. 430, 436 (2014).

[63] *Id.*

[64] *N. River Energy Corp.*, 664 F.2d at 1190; *United States Steel Corp.*, 519 F.2d at 1253; *Vulcan Materials Co.*, 430 F.2d at 454, *cert. denied*, 401 U.S. 963 (1971).

private Facebook videos and messages expressing her disapproval with the union's activities and participation in the Women's March. The union, Defendant Local 556, denies Plaintiff Carter's claims.

It is unlawful for a union and its officials to retaliate against an employee for opposing the union or expressing disapproval about the union's activities.[65]

To prove that Defendant Local 556 retaliated against Plaintiff Carter by reporting Carter for discipline because she messaged Local 556 President Stone and expressed her disapproval with the union's activities and participation in the Women's March, Plaintiff Carter must prove by a preponderance of the evidence that: (1) Local 556 President Stone was acting in her official capacity when she reported Carter to Southwest; (2) Local 556 President Stone reported Carter for discipline; and (3) Plaintiff Carter's private Facebook videos and messages to Local 556 President Stone expressing disapproval with the union's activities and participation in the Women's March were a "substantial or motivating factor" in Local 556's decision to report Carter for discipline.[66]

Plaintiff Carter must prove only that her private Facebook videos and messages to Defendant Local 556's President Audrey Stone in which Carter expressed her disapproval with the union's activities and participation in the Women's March was a "substantial or motivating factor" for the Defendant Local 556 President's decision to report Carter for discipline.[67] "Substantial or motivating factor" means that Plaintiff Carter's private Facebook videos and messages to President

---

[65] *See Roscello*, 726 F.2d at 222 (citation omitted); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 198 (1944) (holding that the RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights"); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102 (3d Cir. 1968) (footnote omitted) (holding that unions are liable under the RLA Sections 2 (Fourth) and (Eleventh) "for their actions in procuring a discharge which violates the employee statutory rights."); *see also* 45 U.S.C. § 152 (Third) and (Fourth).
[66] *See Roscello*, 726 F.2d at 222.
[67] *Id.*

16

Stone were a factor that made a difference in the Defendant Local 556 President's decision to report Carter for discipline.[68] It also means any factor that motivated or in any way contributed to the Defendant Local 556 President's decision to report Carter for discipline, even if other factors also motivated the decision.[69]

It does not have to be the only factor that motivated Stone's decision to report Carter.[70] Plaintiff Carter is not required to prove that her expression of disapproval with the union's activities and participation in the Women's March was the sole or exclusive motivating factor for Local 556 President Stones' decision to report Carter, or that all of President Stone's stated reasons for reporting Carter were false.[71]

If Plaintiff Charlene Carter demonstrates that her protected activity was a "substantial or motivating factor" for Local 556's decision to report Carter for discipline, Carter's protected activity does not lose its protection even if the jury decides that Carter's protected activity is "vulgar, offensive, abusive, threatening, or harassing."[72] Employees' union representation speech is protected even if others consider their speech to be "intemperate, abusive, or insulting,"[73]

---

[68] Faculty of Federal Advocates, p.5

[69] *Id.*

[70] *Transp. Mgmt. Corp.*, 462 U.S. at 401-02; Faculty of Federal Advocates, p.5.

[71] Faculty of Federal Advocates, p.5

[72] *Austin*, 418 U.S. at 273-74. The Supreme Court has recognized that federal labor law principles guarantee employees' freedom to engage in "uninhibited, robust, and wide-open debate in labor disputes." *Id.* Federal courts have also applied the *Austin* rule in the RLA context. *See Konop*, 302 F.3d at 882 n.10 ("We see no reason why the rule announced in *Linn* [and applied in *Austin*] … regarding protected activities, should not apply in the context of the RLA.") (cleaned up); *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191-92 (11th Cir. 1999). Consistent with the Supreme Court's decisions in *Steele*, *Street*, and *Austin*, RLA Section 152 (Fourth) prohibits unions and employers from diminishing constitutional protections to employee rights. The RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights," including their speech and association rights to re-organize or oppose their unions, and any other employee representation or organizational matters. *See Steele*, 323 U.S. at 198.

[73] *Austin*, 418 U.S. at 273-74, 283.

or a "vehement," "caustic," or "unpleasantly sharp attack[]."[74] Even "the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth."[75]

If Plaintiff Charlene Carter demonstrates that her protected activity was a "substantial or motivating factor" for Southwest's termination decision, it would not lose its protection because the RLA protects union dissident speech to union officials about union activities even if it offends the union and its officers.[76]

**Carter Objections to Local 556's "RLA Retaliation Claim" Instructions**:

Carter incorporates her objections to Southwest's RLA Retaliation Claim Instructions, *supra*, as objections to Local 556's Instructions.

Carter further states that Local 556's instructions are improper because they incorrectly suggest that only the union can retaliate against an employee for exercising her RLA-protected rights. Not so. Unions are liable under the RLA Sections 2 (Fourth) and (Eleventh) "for their actions in procuring a discharge which violates the employee statutory rights."[77] The RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights."[78] Thus, Local 556's instructions are also mistaken because they state, "TWU 556 is not liable … if the jury concludes that it lacked the authority to cause" Carter's termination.

---

[74] *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 62 (1966).

[75] *Id.* at 63. The Supreme Court has recognized union rights to use all lawful propaganda to enlarge their membership. *Austin*, 418 U.S. at 277, 277 n.12. Thus, dissident employees have the same right to oppose union leadership and representation. The Supreme Court has held federal labor statutes' protections for this "[v]igorous exercise" of the right to persuade other employees to join must not be stifled by the threat of liability under state libel and defamation laws, including "for the overenthusiastic use of rhetoric or the innocent mistake of fact." *Id.*

[76] Federal labor laws, including the RLA, NLRA, and LMRDA, all subject union officers to extreme robust speech from the employees they purport to represent. *See Hall v. Cole*, 412 U.S. 1 (1973); *Petramale v. Local No. 17 of Laborers Int'l Union*, 736 F.2d 13, 16 (2d Cir. 1984).

[77] *See Brady*, 401 F.2d at 102 (footnote omitted).

[78] *Steele*, 323 U.S. at 198 (1944); *see also Roscello*, 726 F.2d at 222 (citation omitted).

Local 556's instructions are also improper because they state that, to prove retaliation, Carter must prove that "[t]he individual(s) who decided to terminate Plaintiff Charlene Carter's employment had knowledge of the protected activity in which she engaged" and the protected activity was a "substantial motivating factor for the decision maker's termination of her employment." As to the union, Carter need only prove that her protected activity was a substantial *or* motivating factor for Local 556's attempt to cause her discipline for her RLA-protected activity. Thus, Local 556's instructions are also improper for instructing the jury that Local 556 is not liable if it "did not exert undue influence over Southwest's decision."

**Plaintiff Carter's Duty of Fair Representation claim against Defendant Local 556**

Plaintiff Charlene Carter claims that Defendant Local 556 violated the union's duty of representation when Defendant Local 556's president, Audrey Stone, attempted to discipline Carter for Carter's Facebook videos and messages expressing disapproval with the union's activities and participation in the Women's March. The union, Defendant Local 556, denies Plaintiff Carter's claims.

A union violates the Duty of Fair Representation to the employees it represents when it acts arbitrarily, discriminatorily, or in bad faith.[79]

To prove that Defendant Local 556 acted "arbitrarily," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone reported Carter for discipline because of Stone's hostility to Carter's anti-union activities or religious beliefs, because of political favoritism, or because of anything other than fair and impartial consideration of the union's representation of all employees or legitimate union business reasons.[80]

---

[79] *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).
[80] *See McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009) (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)).

To prove that Defendant Local 556 acted "discriminatorily," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone treated Carter differently than other Southwest employees because of Carter's opposition to the union, expression of disapproval with the union's activities and participation in the Women's March, or because of her religious beliefs, observances, or practices.[81]

To prove that Defendant Local 556 acted in "bad faith," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone acted with hostility or discrimination towards Carter, or that Stone attempted to intentionally harm Carter when she reported Carter for discipline.[82]

Under the duty of fair representation standard, the law presumes a union breaches its duty when it seeks to have the employer discipline an employee it represents.[83]

To rebut the presumption that Defendant Local 556 violated the duty of fair representation, Defendant Local 556 must prove by a preponderance of the evidence that: the Union's contested acts were done in good faith, based on rational considerations, and were linked in some way to its need to represent its constituency as a whole.[84]

If Defendant Local 556 rebuts the presumption that it violated the union's Duty of Fair Representation, Plaintiff Charlene Carter must prove by a preponderance of the evidence that Defendant Local 556 acted arbitrarily, discriminatorily, or in bad faith.

---

[81] *See Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca v. Sipes*, 386, U.S. 171, 177-78 (1967)).

[82] *See McCall*, 661 F. Supp. 2d at 654 (citing *O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203, 1204 (5th Cir. 1991)).

[83] *See Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1805 (2015); *Acklin Stamping*, 351 N.L.R.B. 1263, 1263 (2007); *Graphics Commc'ns Local 1-M (Bang Printing)*, 337 N.L.R.B. 662, 673 (2002).

[84] Under the duty of fair representation standard, the law presumes a union breaches its duty when it seeks to have the employer discipline an employee it represents. *Id.*

**Carter Objections to Local 556's "Duty of Fair Representation Claim" Instructions**:

Local 556's Duty of Fair Representation Claim instructions are improper because the union's representation of Carter—after it caused her termination—is irrelevant. Carter does not claim that the union's representation in post-termination proceedings was arbitrary, discriminatory, or in bad faith. Similarly, whether the union's conduct "undermined the fairness or integrity of the grievance process" is irrelevant in this case, and not a standard element of duty of fair representation violations.[85]

Local 556's instructions are also improper because the duty of fair representation does not "require[] Plaintiff to prove the union acted with a motive to harm her" or that the union's conduct "seriously undermined the integrity of the grievance process."

Local 556's instructions are also improper because the union must rebut the presumption that President Audrey Stone was acting in her official capacity with compelling evidence,[86] *and* the presumption that it acted arbitrarily, discriminatorily, and in bad faith by reporting a represented employee for discipline.[87]

**Plaintiff Carter's Title VII claim that Defendant Local 556 caused and attempted to cause Southwest to discriminate against Carter**

Plaintiff Charlene Carter claims that Defendant Local 556's president, Audrey Stone, caused and attempted to cause Southwest to discriminate against Carter because of Carter's religious observances, beliefs, or practices, by reporting Carter's religious observances, beliefs, and practices for discipline.  The union, Defendant Local 556, denies Plaintiff Carter's claims.

---

[85] *See e.g., Vaca*, 386 U.S. at 177-78.
[86] *See Caravan Knight*, 362 N.L.R.B. at 1804; *IBEW Local 453*, 258 N.L.R.B. at 1428; *SPFPA Local 444*, 360 N.L.R.B. at 436.
[87] *See Caravan Knight*, 362 N.L.R.B. at 1805; *Acklin Stamping*, 351 N.L.R.B. at 1263; *Graphics Commc'ns Local 1-M (Bang Printing)*, 337 N.L.R.B. at 673.

It is unlawful for a union to cause or attempt to cause an employer to discriminate against an employee "because of" some aspect of the employee's religious observances, beliefs, or practices.[88]

To prove that Defendant Local 556 caused or attempted to cause Southwest to discriminate against Plaintiff Carter "because of" her religious observances, beliefs, or practices, Plaintiff Carter must prove by a preponderance of the evidence that: (1) Defendant Local 556's President Audrey Stone was acting in her official union capacity when she reported Carter to Southwest; (2) Local 556 President Stone reported Carter for discipline; and (3) some aspect of Carter's religious observances, beliefs, or practices was a "but-for cause" of or a "motivating factor" in Local 556's decision to report Carter to Southwest for discipline.[89]

To prove that Plaintiff Carter's religious observances, beliefs, or practices were a "but-for cause" of the Defendant Local 556 President's decision to report Carter to Southwest for discipline, Plaintiff Carter must only prove that the Local 556 President would not have reported Carter to Southwest for discipline in the absence of some aspect of her religious observances, beliefs, or practices.[90] Plaintiff Carter's religious observances, beliefs, or practices may be a "but-for" cause for the Defendant Local 556 President's decision to report Carter to Southwest for discipline even if some other factor contributed to Southwest's decision.[91]

To prove that Plaintiff Carter's religious observances, beliefs, or practices was a "motivating factor" in the Defendant Local 556 President's decision to report Carter to Southwest for discipline, Plaintiff Carter must only prove that some aspect of Carter's religious observances,

---

[88] 42 U.S.C. § 2000e-2(c)(3), (c)(1); 42 U.S.C. § 2000e(j).
[89] *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock.*, 140 S. Ct. at 1739, 1741.
[90] *See* Fifth Circuit Pattern Jury Instructions, 11.1, p.134.
[91] *Bostock.*, 140 S. Ct. at 1739, 1741.

beliefs, or practices was a factor in the Defendant Local 556 president's decision to report Carter to Southwest.[92] Plaintiff Carter's religious observances, beliefs, or practices may be a "motivating factor" for Defendant Local 556 president's decision to report Carter to Southwest even if some other factor contributed to Defendant Local 556's decision.[93] Plaintiff Charlene Carter may prove that any aspect of her religious beliefs, observances, or practices was a "motivating factor" in Defendant Local 556 president's decision to report her to Southwest.[94] That is, Plaintiff Carter may prove that any aspect of her religious observances, beliefs, or practices, made a difference in Defendant Local 556 president's decision to report her to Southwest.[95] The Plaintiff is not required to prove that her religious observances, beliefs, or practices was the sole or exclusive motivating factor for Defendant Local 556 president's decision to report her to Southwest or that all of the Defendant Local 556 president's stated reasons for reporting Carter to Southwest were false.[96]

**Carter Objections to Local 556's "Religious Discrimination Claim" Instructions**:

Carter incorporates her objections to Southwest's Religious Discrimination Claim Instructions, *supra*, as objections to Local 556's Instructions.

Local 556's instruction is improper because its repeated statements that the union "had no authority terminate [Carter's] employment" are misleading and irrelevant. Title VII expressly prohibits unions from causing or attempting to cause employers to discriminate against employees "because of" their religious observances, beliefs, or practices.[97] Furthermore, whether Local 556

---

[92] 42 U.S.C. § 2000e(j); *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m).
[93] *Abercrombie & Fitch*, 575 U.S. at 775.
[94] *Id.*; 42 U.S.C. § 2000e(j).
[95] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[96] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775.
[97] 42 U.S.C. § 2000e-2(c)(3), (c)(1); 42 U.S.C. § 2000e(j).

"acted in concert" with Southwest is also irrelevant because the union has separate and independent obligations to employees under Title VII.[98]

**Plaintiff Carter's Title VII religious discrimination claim against Defendant Local 556**

Plaintiff Charlene Carter claims that Defendant Local 556 discriminated against Plaintiff Carter because of her religious observances, practices, and beliefs. The union, Defendant Local 556, denies Plaintiff Carter's claims.

It is unlawful for a union to discriminate against an individual because of his or her religious observances, practices, and beliefs.[99]

To prove that Defendant Local 556 discriminated against Plaintiff Charlene Carter, Plaintiff Carter must prove Defendant Local 556 treated her worse than other employees because of her religious observances, practices, or beliefs.[100] Carter may prove that Local 556 treated her differently (and worse) than other employees for the simple fact that unions must protect employees from discipline; they do not act affirmatively to cause them discipline.[101]

**Plaintiff Carter's Title VII Failure to Accommodate Claim against Defendant Local 556**

Plaintiff Charlene Carter claims that Defendant Local 556 failed to accommodate her religious observances, beliefs, and practices, by reporting Carter's religious observances, beliefs, and practices for discipline, instead of accommodating them. The union, Defendant Local 556, denies Plaintiff Carter's claims.

---

[98] *Id.*
[99] 42 U.S.C. § 2000e-2(c)(1); § 2000e(j).
[100] *See e.g., Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).
[101] *See Int'l Union of Operating Eng'rs Local 406*, 701 F.2d at 508 (quoting *Vaca*, 386, U.S. at 177-78).

24

It is unlawful for a union to fail to accommodate any aspect of an employee's religious observances, beliefs, or practices.[102] "Accommodation" means allowing the employee to engage in his or her religious observances, beliefs, or practices despite the union's normal rules, policies, and practices to the contrary.[103]

Title VII also imposes an "affirmative obligation" on unions not to cause an employee to be fired because of some aspect of the employee's religious observances, beliefs, and practices that requires accommodation from the union. Causing an employee to be fired because of his or her religious practice "is *synonymous* with refusing to accommodate the religious practice."[104] The union's "affirmative obligation" also means that the union must give favored treatment under its normal rules, policies, and practices to the employee's religious observances, beliefs, and practices.[105]

To prove that Defendant Local 556 unlawfully discriminated against Plaintiff Carter by failing to accommodate Carter's religious observances, beliefs, and practices, Plaintiff Carter must prove by a preponderance of the evidence that the Defendant Local 556 President's wish to avoid accommodating Plaintiff Carter's religious observances, beliefs, or practices under its rules, policies, and practices was a motivating factor in Local 556 President Stone's decision to report Carter for discipline.[106]

---

[102] *Cooper v. General Dynamics*, 533 F.2d 163, 171-72 (5th Cir. 1976) (Brown, J., concurring) (recognizing the majority agreement that the union has a duty to accommodate); *Abercrombie & Fitch*, 575 U.S. at 775.

[103] *Abercrombie & Fitch*, 575 U.S. at 772 n.2; *see also* Black's Law Dictionary (11th ed. 2019) (defining accommodation as an adaptation, adjustment, or allowance under the employer's rules and policies).

[104] *Abercrombie & Fitch*, 575 U.S. at 772 n.2 (emphasis in original).

[105] *Id.* at 775.

[106] *Id.* at 773-74.

To prove that Plaintiff Carter's religious observances, beliefs, or practices was a "motivating factor" in the Defendant Local 556 President's decision to report Carter to Southwest for discipline, Plaintiff Carter must only prove that some aspect of Carter's religious observances, beliefs, or practices was a factor in the Defendant Local 556 president's decision to report Carter to Southwest.[107] Plaintiff Carter's religious observances, beliefs, or practices may be a "motivating factor" for Defendant Local 556 president's decision to report Carter to Southwest even if some other factor contributed to Defendant Local 556's decision.[108] Plaintiff Charlene Carter may prove that any aspect of her religious beliefs, observances, or practices was a "motivating factor" in Defendant Local 556 president's decision to report her to Southwest.[109] That is, Plaintiff Carter may prove that any aspect of her religious observances, beliefs, or practices, made a difference in Defendant Local 556 president's decision to report her to Southwest.[110] The Plaintiff is not required to prove that her religious observances, beliefs, or practices was the sole or exclusive motivating factor for Defendant Local 556 president's decision to report her to Southwest or that all of the Defendant Local 556 president's stated reasons for reporting Carter to Southwest were false.[111]

**Carter Objections to Local 556's "Failure to Accommodate Claim" Instructions**:

Carter incorporates her objections to Southwest's Failure to Accommodate Claim Instructions and to Southwest's and Local 556's Religious Discrimination Instructions, *supra*, as objections to Local 556's Failure to Accommodate Instructions.

---

[107] *Id.*; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m); 42 U.S.C. § 2000e(j)
[108] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[109] *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[110] Faculty of Federal Advocates, p.5; *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).
[111] *Id.*

Carter further submits that Local 556's instructions are improper because they suggest that Local 556 can raise an undue hardship burden when the union has waived that as a defense. Local 556 failed to plead any undue hardship as an affirmative defense in its Answer,[112] and never argued an undue hardship defense. Accordingly, Local 556 waived any undue hardship defense.[113] Furthermore, Local 556 cannot raise an undue hardship defense because Title VII's plain statutory text does not countenance a union undue hardship defense for union business. Title VII sets forth the *employer*'s undue hardship defense in 42 U.S.C. § 2000e(j)'s definition of religion, which includes all aspects of religious observance and practice, as well as belief, "unless an *employer* demonstrates that he is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the *employer*'s business." (emphasis added).[114]

Furthermore, Carter does not need to prove in her failure to accommodate claim against Local 556 that "her failure to comply with the conflicting job requirement was a substantial motivating factor for Defendant Southwest's decision to terminate her employment." Carter need only prove that the Defendant Local 556 President's wish to avoid accommodating Plaintiff Carter's religious observances, beliefs, or practices under its rules, policies, and practices was a motivating factor in Local 556 President Stone's decision to report Carter for discipline.[115]

---

[112] Local 556 Answer, Dkt. No. 82.

[113] *See* Fed. R. Civ. P. 8 (c)(1).

[114] To be sure, the Fifth Circuit held in a plurality opinion that a union can raise an undue hardship defense. *Cooper v. General Dynamics*, 533 F.2d 163, 172-73 (5th Cir. 1976) (Brown, C.J., concurring); *id.* at 174-77 (Rives, J. concurring). Judge Gee dissented as to whether the union had an undue hardship defense: "Because of what the statute says … With deference, none of these reasons persuades me, or even approaches persuading me, that when Congress has said A, in words which admit of neither construction nor misunderstanding, we should say A and B." *Id.* at 170-71 (Gee, J., dissenting).

[115] *Abercrombie & Fitch*, 575 U.S. at 773-74.

**Damages**

If you found that either or both of Defendants Southwest or Local 556 violated the Railway Labor Act or Title VII then you must determine whether either or both Defendants caused Plaintiff Charlene Carter damages and, if so, you must determine the amount of those damages attributable to the liable party.[116] You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Charlene Carter has proved liability.

Plaintiff Charlene Carter must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Charlene Carter need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Plaintiff Charlene Carter would have earned in her employment with Defendant Southwest if she had not been terminated from her employment with Southwest from March 14, 2017, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff Charlene Carter received from employment during that time; (2) the amount of other damages sustained by Plaintiff such as emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, and other noneconomic losses.

**Back Pay**

Back pay includes the amounts the evidence Plaintiff Charlene Carter would have earned had she remained an employee of Defendant Southwest. These amounts include wages or salary and such benefits as life and health insurance, stock options, contributions to retirement, seniority

---

[116] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14 (2020) was used as a template for this instruction.

28

rights and benefits, vacation pay, uniform pay, ratification bonuses, profit sharing, tax relief shared with employees, and 401K and retirement benefits. You must subtract the amounts of earnings and benefits Defendant Southwest proves by a preponderance of the evidence Plaintiff Charlene Carter received during the period in question.

**Punitive Damages**[117]

In addition to actual damages, you may consider whether to award punitive damages. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future.

You may award punitive damages if Plaintiff Charlene Carter proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory or retaliatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory or retaliatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Plaintiff Charlene Carter's federally protected right to be free from discrimination and retaliation.

If Plaintiff Charlene Carter has proved these facts, then you may award punitive damages, unless Defendants Southwest or Local 556 proves by a preponderance of the evidence that the act was contrary to its good-faith efforts to prevent discrimination and retaliation in the workplace.

In determining whether the decision-maker for Southwest or Local 556 was a supervisor or manager for Southwest or Local 556, you should consider the type of authority that person had over Plaintiff Charlene Carter and the type of authority for employment decisions Southwest or Local 556 authorized that decision-maker to make.

---

[117] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14 (2020).

An action is in "reckless indifference" to Plaintiff Charlene Carter's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Plaintiff Charlene Carter is not required to show egregious or outrageous discrimination or retaliation to recover punitive damages. Proof that Defendant Southwest or Local 556 engaged in intentional discrimination or retaliation, however, is not enough in itself to justify an award of punitive damages.

In determining whether Defendant Southwest or Local 556 made good-faith efforts to prevent discrimination or retaliation in the workplace, you may consider whether it adopted anti-discrimination and anti-retaliation policies, whether it educated its employees on the federal anti-discrimination and anti-retaliation laws, how it responded to Plaintiff Charlene Carter's complaint of discrimination or retaliation, if any, and how it responded to other complaints of discrimination or retaliation.

If you find that Defendant Southwest or Local 556 acted with malice or reckless indifference to Plaintiff Charlene Carter's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Charlene Carter is entitled to receive, you may, but are not required to, award Plaintiff Charlene Carter an additional amount as punitive damages for the purposes of punishing Defendant Southwest for engaging in such wrongful conduct and deterring Defendant Southwest or Local 556 and others from engaging in such conduct in the future. You should presume that Plaintiff Charlene Carter has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

1. How reprehensible Defendant Southwest or Local 556's conduct was. You may consider whether the harm Plaintiff Charlene Carter suffered was physical or

economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Southwest or Local 556's conduct that harmed Plaintiff Charlene Carter also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Charlene Carter.

2.      How much harm Defendant Southwest or Local 556's wrongful conduct caused Plaintiff Charlene Carter.

3.      What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Southwest or Local 556's financial condition, to punish Defendant Southwest or Local 556 for its conduct toward Plaintiff Charlene Carter and to deter Defendant Southwest or Local 556 and others from similar wrongful conduct in the future.

4.      Criminal and civil sanctions for Defendants' conduct: The Railway Labor Act, 42 U.S.C. Section 152 (Tenth), makes employers' willful violations of employee rights a misdemeanor subject to fines of not less than $1,000, and not more than $20,000, or up to 6 months-imprisonment, or both fine and imprisonment, for each offense. Each day, during which the employer willfully fails or refuses to comply with employee's rights under the Railway Labor Act constitutes a separate offense.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused Plaintiff Charlene Carter.

**Proposed Jury Interrogatories**

**Question 1**[118]

Has Plaintiff Charlene Carter proved that her private Facebook videos and messages to Defendant Local 556's President, Audrey Stone, in which Carter expressed disapproval with the union's activities and participation in the Women's March, were a substantial or motivating factor in Defendant Southwest's decision to fire Carter?[119]

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

                             _____
                             UNITED STATES DISTRICT JUDGE

---

[118] *See Roscello*, 726 F.2d at 222.
[119] *Id.*

**Question 2**[120]

Has Plaintiff Charlene Carter proved that her religious observances, beliefs, or practices, were a "but-for" cause or "motivating factor" for Defendant Southwest's decision to fire Carter?

Answer "Yes" or "No"

Answer: _____

Given as requested:        _____
Refused:                   _____
Modified as noted, and given: _____
Dated:                     _____

_____
UNITED STATES DISTRICT JUDGE

---

[120] 42 U.S.C. § 2000e-2(a)(1), 2(m); 42 U.S.C. § 2000e(j); *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40.

**Question 3**[121]

Has Plaintiff Charlene Carter proved that Defendant Southwest failed to accommodate Plaintiff Carter's religious observances, beliefs, or practices?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[121] *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000e(j).

**Question 4[122]**

Given that Local 556 President Audrey Stone is presumed to have acted in her official capacity when she reported Carter to Defendant Southwest for discipline unless Local 556 rebuts that presumption with compelling evidence, did Stone act in her official capacity in reporting Carter?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[122] *See Caravan Knight*, 362 N.L.R.B. at 1804; *IBEW Local 453*, 258 N.L.R.B. at 1428; *SPFPA Local 444*, 360 N.L.R.B. at 436; *see also N. River Energy Corp.*, 664 F.2d at 1190; *United States Steel Corp.*, 519 F.2d at 1253; *Vulcan Materials Co.*, 430 F.2d at 454.

*If you answered "Yes" to Question 4, then answer Questions 5. Otherwise, skip to Question 11.*

**Question 5**[123]

Has Plaintiff Charlene Carter proved that her private Facebook videos and messages to Defendant Local 556's president, Audrey Stone, in which Carter expressed disapproval with the union's activities and participation in the Women's March, were a substantial or motivating factor in Local 556 President Stone's decision to report Carter to Southwest for discipline?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[123] *See Roscello*, 726 F.2d at 222.

**Question 6**[124]

Has Defendant Local 556 proved by a preponderance of the evidence that, when Local 556's president, Audrey Stone, reported Plaintiff Carter to Southwest for messaging Stone and expressing her disapproval with the union's activities and participation in the Women's March, the union was acting in good faith, based on rational considerations, and based on its need to represent its constituency as a whole?


Answer "Yes" or "No"

Answer: _____


Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____


                             _____
                             UNITED STATES DISTRICT JUDGE

---

[124] *See Caravan Knight*, 362 N.L.R.B. at 1805; *Acklin Stamping*, 351 N.L.R.B. at 1263; *Graphics Commc'ns Local 1-M*, 337 N.L.R.B. at 673.

**Question 7**[125]

Has Plaintiff Charlene Carter proved that Defendant Local 556's president, Audrey Stone, caused and attempted to cause Southwest to discriminate against Carter because of Carter's religious observances, beliefs, or practices, by reporting Carter's religious observances, beliefs, and practices to Southwest for discipline?


Answer "Yes" or "No"

Answer: _____


Given as requested:                    _____
Refused:                               _____
Modified as noted, and given:          _____
Dated:                                 _____


                                       _____
                                       UNITED STATES DISTRICT JUDGE

---

[125] 42 U.S.C. § 2000e-2(c)(1), (c)(3); 42 U.S.C. § 2000e(j).

**Question 8[126]**

Has Plaintiff Charlene Carter proved that Defendant Local 556 discriminated against Plaintiff Carter because of any aspect of her religious observances, practices, or beliefs?


Answer "Yes" or "No"


Answer: _____


Given as requested:           _____
Refused:                      _____
Modified as noted, and given: _____
Dated:                        _____


_____
UNITED STATES DISTRICT JUDGE

---

[126] 42 U.S.C. § 2000e-2(c)(1); § 2000e(j).[127] *Cooper*, 533 F.2d at 171-72 (Brown, J., concurring) (recognizing the majority agreement that the union has a duty to accommodate); *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000 e(j).

**Question 9**[127]

Has Plaintiff Charlene Carter proved that Defendant Local 556 failed to accommodate any aspect of Plaintiff Carter's religious observances, beliefs, or practices?


Answer "Yes" or "No"

Answer: _____


Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____


                             _____
                             UNITED STATES DISTRICT JUDGE

---

[127] *Cooper*, 533 F.2d at 171-72 (Brown, J., concurring) (recognizing the majority agreement that the union has a duty to accommodate); *Abercrombie & Fitch*, 575 U.S. at 775; 42 U.S.C. § 2000 e(j).

**Question 10**[128]

Has Plaintiff Charlene Carter proved that Defendant Local 556 violated the union's duty of representation to Plaintiff Carter by acting arbitrarily, discriminatorily, or in bad faith?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

                             _____
                             UNITED STATES DISTRICT JUDGE

---

[128] *Vaca*, 386 U.S. at 190.

*If you a) answered "Yes" to Questions 1, 2, 3, 5, 7, 8, 9, and/or 10, or b) answered "No" to Question 6, then answer Question 11.  Otherwise, skip to Question 12.*[129]

**Question 11**

What money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for lost back pay and benefits, if any, you have found were caused by Defendant Southwest and/or Defendant Local 556's conduct that you found in response to Question 1, 2, 3, 5, 6, 7, 8, 9, or 10?

Consider the following elements of damages, if any, and answer separately in dollars and cents for damages if appropriate:

1. Loss of wages sustained between March 16, 2017, and the date of the jury's decision
Answer: _____

2. Life insurance
Answer: _____

3. Health insurance
Answer: _____

4. Stock options
Answer: _____

5. 401K and retirement benefits
Answer: _____

6. Seniority rights and benefits
Answer: _____

7. Vacation pay
Answer: _____

8. Uniform pay
Answer: _____

9. Ratification bonuses
Answer: _____

10. Profit sharing
Answer: _____

11. Tax relief shared with employees
Answer: _____

---

[129] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.231-232.

Given as requested: _____
Refused: _____
Modified as noted, and given: _____
Dated: _____

_____
UNITED STATES DISTRICT JUDGE

*If you a) answered "Yes" to Questions 1, 2, 3, 5, 7, 8, 9, and/or 10, or b) answered "No" to Question 6, then answer Question 12. Otherwise, skip to Question 13.*

**Question 12[130]**

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for the damages, if any, you have found Defendants Southwest and/or Local 556 caused Plaintiff Carter through conduct that you found in response to Question 1, 2, 3, 5, 6, 7, 8, 9, or 10?

Answer separately in dollars and cents for the following items and none other:

1. Emotional distress, pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life
   Answer: _____

2. Out-of-pocket losses and expenses, including expenses for past medical bills, expenses for counseling or mental health care, and employment search expenses
   Answer: _____

Given as requested:            _____
Refused:                       _____
Modified as noted, and given:  _____
Dated:                         _____

_____
UNITED STATES DISTRICT JUDGE

---

[130] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.231-232.

**Question 13**[131]

Do you find that Plaintiff Charlene Carter failed to reduce her damages through the exercise of reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her employment termination by Defendant Southwest?

Answer "Yes" or "No"

Answer: _____

| | |
|---|---|
| Given as requested: | _____ |
| Refused: | _____ |
| Modified as noted, and given: | _____ |
| Dated: | _____ |

_____
UNITED STATES DISTRICT JUDGE

---

[131] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.231-232.

*If you a) answered "Yes" to Question 13, then answer Question 14.  Otherwise, skip to Question 15.*

## Question 14[132]

How much would Plaintiff Charlene Carter have earned had she exercised reasonable diligence under the circumstances to minimize her damages?

Answer in dollars and cents, if any:

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[132] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.231-232.

*If you answered "Yes" to Question 2, then answer Question 15.  Otherwise, skip to Question 16.*

**Question 15**[133]

Do you find that Charlene Carter should be awarded punitive damages against Southwest based upon any conduct you found in response to Question 2?

Answer "Yes" or "No"

Answer: _____

Given as requested:            _____
Refused:                       _____
Modified as noted, and given:  _____
Dated:                         _____

_____
UNITED STATES DISTRICT JUDGE

---

[133] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 15, then answer Question 16.  Otherwise, skip to Question 17.*

**Question 16**[134]

What sum of money should be assessed against Defendant Southwest for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 2?

Answer in dollars and cents: $ _____

Given as requested: _____
Refused: _____
Modified as noted, and given: _____
Dated: _____

_____
UNITED STATES DISTRICT JUDGE

---

[134] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 3, then answer Question 17.  Otherwise, skip to Question 18.*

**Question 17**[135]

Do you find that Charlene Carter should be awarded punitive damages against Southwest based upon any conduct you found in response to Question 3?

Answer "Yes" or "No"

Answer: _____

Given as requested: _____

Refused: _____

Modified as noted, and given: _____

Dated: _____

_____

UNITED STATES DISTRICT JUDGE

---

[135] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 17, then answer Question 18.  Otherwise, skip to Question 19.*

**Question 18**[136]

What sum of money should be assessed against Defendant Southwest for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 3?

Answer in dollars and cents: $ _____

Given as requested:                    _____
Refused:                               _____
Modified as noted, and given:          _____
Dated:                                 _____


_____
UNITED STATES DISTRICT JUDGE

---

[136] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 5 and "No" to Question 6, then answer Question 19.  Otherwise, skip to Question 21.*

**Question 19**[137]

Do you find that Charlene Carter should be awarded punitive damages against Local 556 based upon any conduct you found in response to Question 5?

Answer "Yes" or "No"

Answer: _____

Given as requested:                    _____
Refused:                               _____
Modified as noted, and given:          _____
Dated:                                 _____

                                       _____
                                       UNITED STATES DISTRICT JUDGE

---

[137] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 19, then answer Question 20.  Otherwise, skip to Question 21.*

**Question 20**[138]

What sum of money should be assessed against Defendant Local 556 for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 5?

Answer in dollars and cents: $ _____

Given as requested:                    _____
Refused:                               _____
Modified as noted, and given:          _____
Dated:                                 _____

_____
UNITED STATES DISTRICT JUDGE

---

[138] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 7, then answer Question 21.  Otherwise, skip to Question 23.*

**Question 21**[139]

Do you find that Charlene Carter should be awarded punitive damages against Local 556 based upon any conduct you found in response to Question 7?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____

Refused:                     _____

Modified as noted, and given: _____

Dated:                       _____

_____

UNITED STATES DISTRICT JUDGE

---

[139] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 21, then answer Question 22.  Otherwise, skip to Question 23.*

**Question 22**[140]

What sum of money should be assessed against Defendant Local 556 for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 7?

Answer in dollars and cents: $ _____

Given as requested:         _____
Refused:                    _____
Modified as noted, and given: _____
Dated:                      _____

_____
UNITED STATES DISTRICT JUDGE

---

[140] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 8, then answer Question 23.  Otherwise, skip to Question 25.*

**Question 23**[141]

Do you find that Charlene Carter should be awarded punitive damages against Local 556 based upon any conduct you found in response to Question 8?

Answer "Yes" or "No"

Answer: _____

Given as requested: _____

Refused: _____

Modified as noted, and given: _____

Dated: _____

_____

UNITED STATES DISTRICT JUDGE

---

[141] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 23, then answer Question 24.  Otherwise, skip to Question 25.*

**Question 24[142]**

What sum of money should be assessed against Defendant Local 556 for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 8?

Answer in dollars and cents: $ _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[142] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 9, then answer Question 25.  Otherwise, skip to Question 27.*

**Question 25**[143]

Do you find that Charlene Carter should be awarded punitive damages against Local 556 based upon any conduct you found in response to Question 9?

Answer "Yes" or "No"

Answer: _____

Given as requested:        _____

Refused:        _____

Modified as noted, and given:  _____

Dated:        _____

_____

UNITED STATES DISTRICT JUDGE

---

[143] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 25, then answer Question 26.  Otherwise, skip to Question 27.*

**Question 26**[144]

What sum of money should be assessed against Defendant Local 556 for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 9?

Answer in dollars and cents: $ _____

Given as requested: _____
Refused: _____
Modified as noted, and given: _____
Dated: _____

_____
UNITED STATES DISTRICT JUDGE

_____

[144] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 10, then answer Question 27. Otherwise, skip to Question 29.*

**Question 27**[145]

Do you find that Charlene Carter should be awarded punitive damages against Local 556 based upon any conduct you found in response to Question 10?

Answer "Yes" or "No"

Answer: _____

Given as requested: _____

Refused: _____

Modified as noted, and given: _____

Dated: _____

_____

UNITED STATES DISTRICT JUDGE

---

[145] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 26, then answer Question 27.  Otherwise, skip to Question 28.*

**Question 28**[146]

What sum of money should be assessed against Defendant Local 556 for punitive damages based upon any actions it took against Carter because of any conduct you found in response to Question 10?

Answer in dollars and cents: $ _____

Given as requested:                    _____
Refused:                                      _____
Modified as noted, and given:     _____
Dated:                                        _____

_____
UNITED STATES DISTRICT JUDGE

---

[146] Fifth Circuit Pattern Jury Instructions, Civil Cases, 11.14, pp.232-233.

*If you answered "Yes" to Question 1, then answer Question 29.  Otherwise, skip to Question 31.*
**Question 29**[147]

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 1?

Answer "Yes" or "No"

Answer: _____

Given as requested:        _____
Refused:                          _____
Modified as noted, and given:   _____
Dated:                            _____

                                  _____
                                  UNITED STATES DISTRICT JUDGE

---

[147] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 29, then answer Question 30.  Otherwise, skip to Question 31.*

**Question 30**[148]

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 1?

Answer "Yes" or "No"

Answer: _____

Given as requested:              _____
Refused:                         _____
Modified as noted, and given:    _____
Dated:                           _____


                                 _____
                                 UNITED STATES DISTRICT JUDGE

---

[148] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 2, then answer Question 31.  Otherwise, skip to Question 33.*
**Question 31[149]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 2?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

                             _____
                             UNITED STATES DISTRICT JUDGE

---

[149] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 31, then answer Question 32.  Otherwise, skip to Question 33.*

**Question 32[150]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 2?

Answer "Yes" or "No"

Answer: _____

Given as requested:                           _____
Refused:                                      _____
Modified as noted, and given:                 _____
Dated:                                        _____


                                              _____
                                              UNITED STATES DISTRICT JUDGE

---

[150] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 3, then answer Question 33.  Otherwise, skip to Question 35.*
**Question 33[151]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 3?

Answer "Yes" or "No"

Answer: _____

Given as requested:            _____
Refused:                       _____
Modified as noted, and given:  _____
Dated:                         _____

                               _____
                               UNITED STATES DISTRICT JUDGE

---

[151] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 32, then answer Question 30.  Otherwise, skip to Question 31.*

**Question 33[152]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 3?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                             _____
Modified as noted, and given:  _____
Dated:                               _____

            _____
            UNITED STATES DISTRICT JUDGE

---

[152] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 1, then answer Question 29.  Otherwise, skip to Question 31.*
**Question 34[153]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 4?

Answer "Yes" or "No"

Answer: _____

Given as requested:            _____
Refused:                       _____
Modified as noted, and given:  _____
Dated:                         _____


                               _____
                               UNITED STATES DISTRICT JUDGE

---

[153] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 33, then answer Question 34.  Otherwise, skip to Question 35.*

**Question 34[154]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 4?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[154] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 5 and "No" to Question 6, then answer Question 35. Otherwise, skip to Question 37.*

**Question 35**[155]

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 5?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[155] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 35, then answer Question 36.  Otherwise, skip to Question 37.*

**Question 36**[156]

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 5?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                  _____
Modified as noted, and given:   _____
Dated:                    _____

_____
UNITED STATES DISTRICT JUDGE

---

[156] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 7, then answer Question 37.  Otherwise, skip to Question 39.*
**Question 37[157]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 7?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____


                             _____
                             UNITED STATES DISTRICT JUDGE

---

[157] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 37, then answer Question 38.  Otherwise, skip to Question 39.*

**Question 38[158]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 7?

Answer "Yes" or "No"

Answer: _____

Given as requested:            _____
Refused:                       _____
Modified as noted, and given:  _____
Dated:                         _____


                               _____
                               UNITED STATES DISTRICT JUDGE

---

[158] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 8, then answer Question 39.  Otherwise, skip to Question 41.*
**Question 39[159]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 8?

Answer "Yes" or "No"

Answer: _____

Given as requested: _____
Refused: _____
Modified as noted, and given: _____
Dated: _____

_____
UNITED STATES DISTRICT JUDGE

---

[159] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 8, then answer Question 40.  Otherwise, skip to Question 41.*

**Question 40[160]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 8?

Answer "Yes" or "No"

Answer: _____

Given as requested:          _____
Refused:                     _____
Modified as noted, and given: _____
Dated:                       _____

_____
UNITED STATES DISTRICT JUDGE

---

[160] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 9, then answer Question 41.  Otherwise, skip to Question 33.*
**Question 41[161]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 9?

Answer "Yes" or "No"

Answer: _____

Given as requested:              _____
Refused:                                _____
Modified as noted, and given:  _____
Dated:                                   _____

                                          _____
                                          UNITED STATES DISTRICT JUDGE

---

[161] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 41, then answer Question 42.  Otherwise, skip to Question 43.*

**Question 42[162]**

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 9?

Answer "Yes" or "No"

Answer: _____

Given as requested:                    _____
Refused:                               _____
Modified as noted, and given:          _____
Dated:                                 _____

                                       _____
                                       UNITED STATES DISTRICT JUDGE

---

[162] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 10, then answer Question 43.  Otherwise, skip to Question 44.*
**Question 43[163]**

Should Plaintiff Charlene Carter be awarded nominal damages against Defendant Southwest because of any conduct you found in response to Question 10?

Answer "Yes" or "No"

Answer: _____

Given as requested:              _____
Refused:                         _____
Modified as noted, and given:    _____
Dated:                           _____


                                 _____
                                 UNITED STATES DISTRICT JUDGE

---

[163] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

*If you answered "Yes" to Question 43, then answer Question 44.*

**Question 44**[164]

What amount of nominal damages should Plaintiff Charlene Carter be awarded because of any conduct you found in response to Question 10?

Answer "Yes" or "No"

Answer: _____

Given as requested:               _____
Refused:                                    _____
Modified as noted, and given:   _____
Dated:                                      _____


_____
UNITED STATES DISTRICT JUDGE

---

[164] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.6.

Dated:  June 9, 2022                          Respectfully submitted,

                                              */s/* Matthew B. Gilliam
                                              Matthew B. Gilliam (*admitted pro hac vice*)
                                              New York Bar No. 5005996
                                              c/o National Right to Work Legal Defense
                                              Foundation, Inc.
                                              8001 Braddock Road, Suite 600
                                              Springfield, Virginia 22160
                                              Phone:  703.321.8510
                                              Facsimile:  703.321.9319
                                              mbg@nrtw.org

                                              Bobby G. Pryor
                                              State Bar No. 16373720
                                              bpryor@pryorandbruce.com
                                              Matthew D. Hill, Of Counsel
                                              State Bar No. 24032296
                                              mhill@pryorandbruce.com
                                              PRYOR & BRUCE
                                              302 N. San Jacinto
                                              Rockwall, TX 75087
                                              Telephone: (972) 771-3933
                                              Facsimile: (972) 771-8343

                                              **ATTORNEYS FOR PLAINTIFF
                                              CHARLENE CARTER**