# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## SOUTHWEST AIRLINES CO.'S AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556'S JOINT PROPOSED JURY INSTRUCTIONS AND INTERROGATORIES (EXH. 3 TO JOINT PROPOSED PRE-TRIAL ORDER)

Southwest Airlines Co. and Transport Workers Union of America, Local 556 hereby submit their Joint Proposed Jury Instructions and Interrogatories pursuant to the Court's Amended Scheduling Order and Local Rules. Defendants submit this joint instruction as Charlene Carter and Defendants were unable to reach agreement on the portion of the jury instructions set forth herein.

## PROPOSED INSTRUCTIONS EXHIBIT 1

As set forth in the parties' Joint Exhibit 1 to the pre-trial order, the parties were unable to agree to certain portions of the instructions (*e.g.*, punitive damages, back pay, etc.). Thus, per the parties' agreement, Defendants include the disputed portions of the charges from Jt. Exh. 1 below.

### Damages

If you found that either or both of Defendants Southwest or Local 556 violated the Railway Labor Act or Title VII then you must determine whether either or both Defendants caused Plaintiff

1

Charlene Carter damages and, if so, you must determine the amount of those damages attributable to the liable party.[1] You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Charlene Carter has proved liability.

Plaintiff Charlene Carter must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Charlene Carter need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Plaintiff Charlene Carter would have earned in her employment with Defendant Southwest if she had not been terminated from her employment with Southwest from March 14, 2017, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff Charlene Carter received from employment during that time; (2) the amount of other damages sustained by Plaintiff such as emotional distress, pain and suffering, and other noneconomic losses.   However, you may not consider awarding Plaintiff Charlene Carter emotional distress, pain and suffering, and other noneconomic losses in relation to her claim of retaliation under the Railway Labor Act.[2]

**Back Pay**

Back pay includes the amounts the evidence Plaintiff Charlene Carter would have earned had she remained an employee of Defendant Southwest. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You

---

[1] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14 (2020) was used as a template for this instruction.

[2] *See Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 226–27 (D. Colo. 1987) (finding for public policy purposes and based on the intent of the RLA, plaintiff was not entitled to compensatory or punitive damages); *see also Newlin v. GoJet Airlines, Inc.*, 2011 U.S. Dist. LEXIS 18216, at *11–12 (E.D. Mo. Feb. 24, 2011) (suggesting plaintiff would not be entitled to seek compensatory and punitive damages but for not being represented by a union or party to a CBA).

US_ACTIVE-167502938.1

must subtract the amounts of earnings and benefits Defendant Southwest proves by a preponderance of the evidence Plaintiff Charlene Carter received during the period in question.

**Punitive Damages**

In addition to actual damages, you may consider whether to award punitive damages. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future. You may not consider awarding Plaintiff Charlene Carter punitive damages in relation to her claim of retaliation under the Railway Labor Act. [3]

You may award punitive damages if Plaintiff Charlene Carter proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Plaintiff Charlene Carter's federally protected right to be free from discrimination.

If Plaintiff Charlene Carter has proved these facts, then you may award punitive damages, unless Defendant Southwest proves by a preponderance of the evidence that the act was contrary to its good-faith efforts to prevent discrimination in the workplace.

In determining whether the decision-maker for Southwest or Local 556 was a supervisor or manager for Southwest or Local 556, you should consider the type of authority that person had over Plaintiff Charlene Carter and the type of authority for employment decisions Southwest or Local 556 authorized that decision-maker to make.

---

[3] *See Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 226–27 (D. Colo. 1987) (finding for public policy purposes and based on the intent of the RLA, plaintiff was not entitled to compensatory or punitive damages); *see also Newlin v. GoJet Airlines, Inc.*, 2011 U.S. Dist. LEXIS 18216, at *11–12 (E.D. Mo. Feb. 24, 2011) (suggesting plaintiff would not be entitled to seek compensatory and punitive damages but for not being represented by a union or party to a CBA).

US_ACTIVE-167502938.1

An action is in "reckless indifference" to Plaintiff Charlene Carter's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Plaintiff Charlene Carter is not required to show egregious or outrageous discrimination to recover punitive damages. Proof that Defendant Southwest engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether Defendant Southwest made good-faith efforts to prevent discrimination in the workplace, you may consider whether it adopted anti-discrimination policies, whether it educated its employees on the federal antidiscrimination laws, how it responded to Plaintiff Charlene Carter's complaint of discrimination, if any, and how it responded to other complaints of discrimination.

If you find that Defendant Southwest acted with malice or reckless indifference to Plaintiff Charlene Carter's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Charlene Carter is entitled to receive, you may, but are not required to, award Plaintiff Charlene Carter an additional amount as punitive damages for the purposes of punishing Defendant Southwest for engaging in such wrongful conduct and deterring Defendant Southwest and others from engaging in such conduct in the future. You should presume that Plaintiff Charlene Carter has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

1.  How reprehensible Defendant Southwest's conduct was. You may consider whether the harm Plaintiff Charlene Carter suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Southwest's conduct that harmed Plaintiff Charlene Carter also posed a risk of harm to others; whether there was any repetition of the

US_ACTIVE-167502938.1

wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Charlene Carter.

2.    How much harm Defendant Southwest's wrongful conduct caused Plaintiff Charlene Carter.

3.    What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Southwest's financial condition, to punish Defendant Southwest for its conduct toward Plaintiff Charlene Carter and to deter Defendant Southwest and others from similar wrongful conduct in the future.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused Plaintiff Charlene Carter

## JURY INSTRUCTIONS

### RLA Retaliation Claim

Plaintiff Charlene Carter ("Plaintiff Carter") claims that she was retaliated against for exercising rights protected by section 152 Third & Fourth of the Railway Labor Act ("RLA") when her employment was terminated.

Carter's union representative, Defendant TWU Local 556 ("Defendant Local 556"), denies that it had any authority to take any adverse employment action against Plaintiff Carter, including causing Plaintiff Carter's termination, as it was not her employer.  Additionally, Defendant Local 556 denies that it acted in concert with Defendant Southwest Airlines Co. ("Defendant Southwest") to cause Plaintiff Carter's termination.  Defendant Local 556's Board Members, including the former President Audrey Stone, retain their rights as employees of Defendant Southwest to be free from coworker harassment.

The employer, Defendant Southwest, denies Plaintiff Charlene Carter's claims. Defendant Southwest contends Plaintiff Carter's employment was terminated for violations of its employment policies, not her decision to opt-out of union membership or any other activity protected by the RLA.

US_ACTIVE-167502938.1

Section 152, Third & Fourth of the RLA address primarily the rights of employees before a union is certified.[4] Even employees, like Plaintiff Carter, who opt out of their certified union are represented by that union and receive the benefits of the collective bargaining agreement ("CBA").

Where applicable, the RLA prohibits an employer from terminating an employee for engaging in "protected activity." An employer may, however, terminate an employee for other reasons, good or bad, fair or unfair. The RLA's prohibition of unlawful retaliation applies only to adverse employment actions taken against the employee.

Under the RLA, an employee engages in protected activity when she attempts to organize and bargain collectively through representatives of her choosing.[5]

To prove unlawful retaliation under the RLA, Plaintiff Carter must prove by a preponderance of the evidence that:

1. Plaintiff Carter engaged in activity protected by the RLA; and

2. The individual(s) who decided to terminate Plaintiff Carter's employment had knowledge of the protected activity in which she engaged; and

3. Plaintiff Carter's protected activity was a substantial motivating factor for the decision maker's termination of her employment.[6]

---

[4] *Ass'n of Flight Attendants-CWA v. United Airlines, Inc.*, 2022 U.S. Dist. LEXIS 15171, *15-16 (D.D.C. Jan. 27, 2022) ("As the Supreme Court has explained, RLA § 2, Third and Fourth, 'address[] primarily the precertification rights and freedoms of unorganized employees.' … '[J]udicial intervention … [is] limited to those cases where but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands of the RLA.") (internal quotation marks omitted); *Trans World Airlines, Inc. v. Indep. Fed. of Flight Attendants*, 489 U.S. 426, 440 (1989).

[5] 45 U.S.C. § 152, Third & Fourth; *see also Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 252-53 (5th Cir. 1991) (the RLA "protects employees' right to establish a union" but there is "no indication that the RLA seeks to preserve employees' rights to act in concert for 'mutual aid or protection.'"); *Stewart v. Spirit Airlines, Inc.*, 503 Fed. Appx. 814, 818 (11th Cir. 2013) (Section 152, Fourth "only protects employees in their efforts to join or organize a union not to engage in concerted activities"); *Klemens v. Air Line Pilots Ass'n, Int'l*, 736 F.2d 491, 496 (9th Cir. 1984) ("The NLRA and the RLA are fundamentally different.").

[6] *See Silva v. Cont'l Airlines, Inc.*, 2008 U.S. Dist. LEXIS 78979, *22-23 (S.D. Tex. Oct. 7, 2008); *Fields v. Keith*, 174 F. Supp. 2d 464, 480 (N.D. Tex. 2001); *Amarsingh v. Jetblue Airways Corp.*, 409 F. App'x 459, 461 (2d Cir. 2011).

6

The connection between Plaintiff Carter's protected activity and the decision maker's termination of her employment may be broken by a delay between the protected activity and the adverse employment action.[7]

Even if Plaintiff Carter demonstrates protected activity was a motivating factor in the decision to terminate her employment, Defendant Southwest and Defendant Local 556 are not liable under the RLA if it is established by a preponderance of the evidence that Plaintiff Carter would have been discharged from employment even if she had not engaged in protected activity.[8]

Furthermore, Even if Plaintiff Carter demonstrates that her protected activity motivated the decision maker's termination of her employment, and Southwest fails to show that it would have terminated Plaintiff Carter's employment in the absence of the protected activity, Defendant Southwest and Local 556 are nevertheless not liable if the jury concludes that Plaintiff Carter's protected activity is vulgar, offensive, abusive, threatening, or harassing.[9]

Defendant Local 556 is not liable for unlawful retaliation under the RLA if you conclude that Defendant Local 556 lacked the authority to cause Plaintiff Carter's termination and/or did not exert undue influence over Southwest's decision to terminate Carter's employment.

In the course of this trial, you have heard evidence regarding Plaintiff Carter's use of the dispute resolution protections in the CBA to challenge her termination from Defendant Southwest.

---

[7] *See Johnson v. McDonald*, 623 Fed. Appx. 701, 704 (5th Cir. 2015) (dismissing Title VII retaliation claim where "the nearly two-year gap between the[protected activity] and alleged retaliation [] refutes any causal link between the two events."); *Chhim v. Univ. of Texas*, 2016 WL 154142, *5 (W.D. Tex. Jan. 11, 2016); *Phillips v. United Parcel Serv.*, 2011 WL 2680725, *8 (N.D. Tex. June 21, 2011) (dismissing Title VII retaliation claim where "[t]he timing between the two actions and the protected activity (between nine months and two years)" did not establish a requisite causal connection).

[8] *See Fields*, 174 F. Supp. 2d at 480; *Silva*, 2008 U.S. Dist. LEXIS 78979, *23.

[9] *Held v. Am. Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7665, *21 (N.D. Ill. Jan. 31, 2007); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 883 n.11 (9th Cir. 2002) (activity "may be 'so flagrant, violent or extreme' or so 'egregious,' 'opprobrious,' 'offensive,' 'obscene' or 'wholly unjustified' that it loses the protection of the RLA."); *NLRB v. Arkema, Inc.*, 710 F.3d 308, 316 (5th Cir. 2013) (harassment, intimidation, and offensive and hostile language uttered in connection with union activities are not protected).

7

Pursuant to those procedures, Defendant Southwest and Plaintiff Carter participated in a two day hearing during which they were both represented by attorneys, were allowed to present evidence and testimony, and cross examine witnesses before a third party arbitrator. Thereafter, the arbitrator issued a written decision regarding Carter's grievances. In your deliberations, the arbitrator's decision and findings are not binding on you. However, you may regard the arbitrator's decision and the findings contained therein as evidence regarding the claims in this case.[10]

**Duty of Fair Representation**

Plaintiff Carter claims that: Defendant Local 556 violated the Duty of Fair Representation owed to her under the Railway Labor Act when her employment was terminated by her employer, Defendant Southwest, despite the Union representing her in her grievance proceedings.

The Union, Local 556, denies Plaintiff Carter's claims, and contends that once her employment was terminated for violations of Southwest's employment policies, not her opposition to union leadership.

Unions must serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.[11] The Duty of Fair Representation is violated if a union's conduct was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process.[12] This requires Plaintiff to prove the union acted with a motive to harm her and that its

---

[10] *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) ("arbitral proceedings *can* have preclusive effect even in litigation involving federal statutory and constitutional rights"); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) (labor arbitration decision may be evidence in subsequent Title VII case); *Graef v. Chemical Leaman Corp.*, 106 F.3d 112, 117 (5th Cir. 1997) (concluding that the district court abused its discretion in excluding evidence of labor arbitration award; "an arbitrator's findings relating to an interpretation of the CBA or an application of the CBA to the facts should ordinarily be considered"); *Owens v. Texaco*, 857 F.2d 262, 264-65 (5th Cir. 1988) (error to exclude arbitration decision regarding employment decision at issue in a Title VII case).
[11] Vaca v. Sipes, 386 U.S. 171, 177 (1967).
[12] Landry v. The Cooper/T. Smith Stevedoring Co., 880 F.2d 846, 852 (5th Cir. 1989)

US_ACTIVE-167502938.1

conduct seriously undermined the integrity of the grievance process contributing to the outcome of the proceedings[13].

TWU Local 556's Board Members, including the President, retain their rights as employees of Defendant Southwest to be free from coworker harassment.

To prove that Defendant Local 556 breached its duty of fair representation, Plaintiff Carter must prove by a preponderance of the evidence that:

1. That former Local 556 President Audrey Stone arbitrarily, discriminatorily, or in bad faith reported Carter to Defendant Southwest for violating company policies;

2. Former Local 556 President Audrey Stone reported Mrs. Carter solely from her position as Union President and not as a Southwest employee;

3. That the reporting of Carter undermined the fairness or integrity of the grievance process such that the Union failed in its representation;

4. That Carter was discharged from employment by the employer; and

5. That such discharge was not for a legitimate non-discriminator reason.

A union has a duty under the law to represent fairly the interests of its members in protecting their rights under a collective bargaining agreement. However, an individual employee does not have an absolute right to require the employee's union to pursue a grievance against the employer. A union has considerable discretion in controlling the grievance and arbitration procedure. The question is not whether the employee is satisfied with the union representation or whether that representation was perfect.

Breach of the duty of fair representation occurs only where a union acting in bad faith or in an arbitrary or discriminatory manner fails to process a meritorious grievance. So long as the union acts in good faith, it may exercise its discretion in determining whether to pursue or process

---

[13] Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567 (1976).

US_ACTIVE-167502938.1

an employee's grievance against the employer. Even if an employee's grievance has merit, the union's mere negligence or its exercise of poor judgment does not constitute a breach of its duty of fair representation.

## Religious Discrimination Claim

Plaintiff Carter claims that Defendant Southwest would not have terminated her employment but for her religious beliefs.[14]

Southwest denies Plaintiff Carter's claims, and contends her employment was terminated for violations of Southwest's employment policies, not her religious beliefs or practices. Defendant Local 556 denies Plaintiff Carter's claims and contends that it had no authority to terminate Plaintiff's employment.  Defendant Local 556 denies that it acted in concert with Defendant Southwest to terminate Plaintiff's employment nor did it exercise control over the terms and conditions of Plaintiff's employment with Defendant Southwest.

It is unlawful for an employer to terminate an employee because of the employee's religious beliefs. An employer may, however, terminate an employee for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination by Southwest, Plaintiff Carter must prove by a preponderance of the evidence that:

1.   Defendant Southwest terminated the employment of Plaintiff Carter; and

2.   Defendant Southwest would not have terminated the employment of Plaintiff Carter in the absence of—in other words, but for—her religious beliefs.

3.   Plaintiff Carter does not have to prove that unlawful discrimination was the only reason Defendant Southwest terminated her employment. But Plaintiff Carter must prove that Defendant Southwest's decision to terminate her employment would not have occurred in the absence of such discrimination.

---

[14] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.1 (2020).

US_ACTIVE-167502938.1

To prove unlawful discrimination by Local 556, Plaintiff Carter must prove by a preponderance of the evidence that:

1. Defendant Local 556 terminated the employment of Plaintiff Carter and/or acted in concert with Defendant Southwest to terminate Plaintiff's employment; and

2. Defendant Southwest terminated the employment of Plaintiff Carter; and

3. Defendant Southwest would not have terminated the employment of Plaintiff Carter in the absence of—in other words, but for—her religious beliefs.

4. Plaintiff Carter does not have to prove that unlawful discrimination was the only reason Defendant Southwest terminated her employment. But Plaintiff Carter must prove that Defendant Southwest's decision to terminate her employment would not have occurred in the absence of such discrimination.

Plaintiff Carter claims that Defendant Southwest's stated reasons for her termination are not the true reasons, but instead are a pretext (an excuse) to cover up for religious discrimination. If you find that the reason Defendant Southwest has given for terminating Plaintiff Carter's employment is unworthy of belief, you may, but are not required to, infer that Defendant Southwest was motivated by Plaintiff's Charlene Carter's religious beliefs.

In reaching your verdict on Plaintiff Carter's religious discrimination claim, you should keep in mind that the law requires only that an employer not discriminate against an employee based on religion. The law does not require an employer to use good judgment, to make correct decisions, or even to treat its employees fairly. Therefore, in deciding Plaintiff Carter's discrimination claim, it is not your function to second-guess Defendant Southwest's business decisions or act as a personnel manager, unless you find that the decisions were motivated by illegal discrimination.[15] In evaluating Defendant Southwest's asserted business judgment, you

---

[15] *LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) (stating "[o]ur job . . . is not to engage in second-guessing of an employer's business decisions. Our anti-discrimination laws do not require an employer to make proper decisions," only non-discriminatory ones).

US_ACTIVE-167502938.1

must examine whether business judgment was truly employed or whether it was merely used as a pretext or to cover up for illegal discrimination.[16] Furthermore, when determining the reason for Plaintiff Carter's termination, a party's unsupported assertions, improbable inferences, and unsupported speculation of a discriminatory motive are insufficient to support liability.[17]

In the course of this trial, you have heard evidence regarding Plaintiff Carter's use of the dispute resolution protections in the CBA to challenge her termination from Defendant Southwest. Pursuant to those procedures, Defendant Southwest and Plaintiff Carter participated in a two day hearing during which they were both represented by attorneys, were allowed to present evidence and testimony, and cross examine witnesses before a third party arbitrator. Thereafter, the arbitrator issued a written decision regarding Carter's grievances. In your deliberations, the arbitrator's decision and findings are not binding on you. However, you may regard the arbitrator's decision and the findings contained therein as evidence regarding the claims in this case.[18]

## Failure to Accommodate Claim

Plaintiff Carter claims that Defendant Southwest and Defendant Local 556 failed to reasonably accommodate her bona fide religious belief or practice.[19] Defendant Southwest denies Plaintiff Charlene Carter's claims. Defendant Southwest contends that it had no obligation to accommodate Plaintiff Carter; that Defendant Southwest did not know or have reason to suspect

---

[16] *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 325-26 (5th Cir. 2013) (violation of employer's social media policy is a legitimate basis for termination); *Barnard v. L-3 Communs. Integrated Sys. L.P.*, 2017 U.S. Dist. LEXIS 139235, at *17 (N.D. Tex. Aug. 30, 2017) ("Violation of company policy is a legitimate, nondiscriminatory reason for termination.").

[17] *Steinhauser v. Comcorp of Tyler, Inc.*, 586 Fed. Appx. 627, 630 n.12 (5th Cir. 2013); *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010).

[18] *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 188 (5th Cir. 2014) ("arbitral proceedings *can* have preclusive effect even in litigation involving federal statutory and constitutional rights"); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974) (labor arbitration decision may be evidence in subsequent Title VII case); *Graef v. Chemical Leaman Corp*., 106 F.3d 112, 117 (5th Cir. 1997) (concluding that the district court abused its discretion in excluding evidence of labor arbitration award; "an arbitrator's findings relating to an interpretation of the CBA or an application of the CBA to the facts should ordinarily be considered"); *Owens v. Texaco*, 857 F.2d 262, 264-65 (5th Cir. 1988) (error to exclude arbitration decision regarding employment decision at issue in a Title VII case).

[19] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.10 (2020) was used as a template for this instruction.

US_ACTIVE-167502938.1

Carter's alleged need for any accommodation; that Plaintiff Carter's religious belief did not conflict with a requirement of her employment; and that the accommodations required by Plaintiff Carter would have imposed an undue hardship on Southwest.

Defendant Local 556 contends that Plaintiff Carter never sought a religious accommodation from Defendant Local 556, and that Defendant Local 556 did not exercise control over the terms and conditions of Plaintiff Carter's employment with Defendant Southwest.

The law requires an employer to make a reasonable accommodation for an employee's known, bona fide, religious belief or practice that conflicts with a policy of the employer.[20]  A reasonable accommodation is one that eliminates the conflict between the religious belief or practice and the job requirement. However, an employer is not required to accommodate an employee's personal preference as to how she expresses her religious beliefs or practices.[21]

To bring a Title VII religious discrimination claim based on a failure to accommodate, Plaintiff Carter must first show that she timely exhausted administrative remedies related to her claim.[22]  To exhaust her administrative remedies, Plaintiff Carter must prove, by a preponderance of the evidence, that she filed a charge of discrimination with the Equal Employment Opportunity Commission or its state counterpart, the Texas Workforce Commission, alleging facts to support her failure to accommodate claim.[23]

---

[20] *See Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

[21] *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003) ("an employee is not permitted to redefine a purely personal preference or aversion as a religious belief"); *See Diss v. Portland Pub. Schs.*, 2016 U.S. Dist. LEXIS 161829, *3, 34-35 (D. Or. Nov. 22, 2016) (*aff'd* 727 Fed. Appx. 438 (9th Cir. 2018)) (Catholic pro-life employee who opposed abortion and Planned Parenthood was not entitled to an accommodation because he could not show that his religious beliefs conflicted with his duty to allow Planned Parenthood employee to make a classroom presentation); *Mial v. Foxhoven*, 305 F. Supp. 3d 984, 991 (N.D. Iowa 2018) ("the fact that a practice or belief may be connected to religion does not compel the conclusion that it is not a personal preference").

[22] *See Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378 (5th Cir. 2019).

[23] *See, e.g., Hamar v. Shland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (EEOC charge alleging disability discrimination does not exhaust claims for failure to accommodate).

US_ACTIVE-167502938.1

To assess whether Plaintiff Carter has exhausted her administrative remedies related to this claim, you may consider the allegations in the charge of discrimination and the investigation which could reasonably be expected to have grown out of the charge of discrimination.[24] If Plaintiff Carter did not exhaust administrative remedies, Defendant Southwest is not liable for Plaintiff's Charlene Carter's claim based on a failure to accommodate under Title VII.

If it has been established that Plaintiff Carter's administrative remedies have been exhausted, to establish a claim of failure to accommodate a religious belief or practice under Title VII, Plaintiff Carter must establish, by a preponderance of the evidence, all of the following:

1. That Plaintiff Charlene Carter has a bona fide religious belief or practice; and

2. That Plaintiff Carter's religious belief or practice conflicted with a job requirement; and

3. That Defendant Southwest knew of the conflict between Plaintiff Carter's religious belief or practice and the job requirement before Carter engaged in the conduct that violated a requirement of her employment with Defendant Southwest[25]; and

4. That Defendant Southwest did not explore reasonable alternatives of accommodating Plaintiff Carter's religious belief or practice; and

5. The individual(s) who decided to terminate Plaintiff Carter's employment did so because she failed to comply with the conflicting employment requirement.[26]

It is a defense to a claim of religious discrimination that providing a reasonable accommodation would impose an undue hardship on the operation of Defendant Southwest's

---

[24] *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

[25] *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) ("There is nothing in Title VII that requires employers to give lesser punishments to employees who claim, *after they violate company rules …* , that their religion caused them to transgress the rules."); *Nobach v. Woodland Vill. Nursing Ctr.*, 799 F.3d 374, 379 (5th Cir. 2015) (failure to accommodate claim fails because plaintiff "fail[ed] to advise [the employer] of her religious belief and the conflict with her job duties"); *Ileiwat v. Envtl. Prods. Int'l*, 2018 U.S. Dist. LEXIS 14362, *10-11 (N.D. Tex. Jan. 18, 2018) (Title VII claim failed because employee did not offer evidence that he requested time off to accommodate religious observance).

[26] *See Weber,* 199 F.3d at 273; *Ellis v. Principi*, 246 Fed. Appx. 871, 872 (5th Cir. 2007)

US_ACTIVE-167502938.1

business. Defendant Southwest claims that accommodating Plaintiff Carter would have imposed an undue hardship on Defendant Southwest. Defendant Southwest has the burden of proving by a preponderance of the evidence that the accommodation would have imposed an undue hardship.

An "undue hardship" is an action that imposes more than a de minimis burden on the employer or the co-workers of the individual seeking an accommodation.[27] A "de minimis" burden is one that is inconsequential or negligible.[28] Thus, even if you find that Plaintiff Carter exhausted administrative remedies and that Defendant Southwest and/or Local 556 failed to grant Plaintiff Carter a requested accommodation, Defendant Southwest and/or Local 556 is still not liable if you conclude that granting Carter an accommodation more would impose a burden that is anything more than de minimis (*i.e.*, negligible, inconsequential).

## Damages

If you found that Defendant Southwest violated the Railway Labor Act or Title VII; and/or that Defendant Local 556 violated the Railway Labor Act, Title VII, or the Duty of Fair Representation, then you must determine whether the violation has caused Plaintiff Carter damages and, if so, you must determine the amount of those damages.[29] You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Carter has proved her claims against Southwest or Local 556.

---

[27] *Perkins v. City of Greenwood*, 2016 U.S. Dist. LEXIS 37119, *19-20 (N.D. Miss. Mar. 22, 2016) (granting summary judgment to employer because, *inter alia*, "Plaintiff … failed to bring forth evidence" of a conflict between his belief and employment requirement); *Schwartzberg v. Mellon Bank, N.A.*, 2008 U.S. Dist. LEXIS 1180, *24 (W.D. Pa. Jan. 8, 2008) (granting summary judgment to employer because plaintiff did not identify a conflict between employment requirement ("conduct that denigrates or shows hostility on the basis of sexual orientation is prohibited") and his belief that homosexuality was immoral).

[28] *See Petzold v. Rostollan*, 946 F.3d 242, 252 n.48 (5th Cir. 2019) (noting that de minimis has been defined as inconsequential); *see also Camara v. Epps Air Serv.*, 292 F.Supp. 3d 1314, 1330 n.22 (N.D. Ga. 2017) (stating that court decisions have characterized "de minimis" as minimal and Black's Law Dictionary defines it as negligible).

[29] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14 (2020) was used as a template for this instruction.

US_ACTIVE-167502938.1

Plaintiff Carter must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Carter need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit. You should consider the following elements of actual damages, and no others: the amount of back pay and benefits Plaintiff Carter would have earned in her employment with Defendant Southwest if she had not been terminated from her employment with Southwest from March 14, 2017, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff Carter received from employment during that time. You may not consider awarding Plaintiff Carter emotional distress, pain and suffering, and other noneconomic losses in relation to her claim of retaliation under the Railway Labor Act.[30]

Back pay includes the amounts the evidence shows Plaintiff Carter would have earned had she remained an employee of Defendant Southwest. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits Defendant Southwest proves by a preponderance of the evidence Plaintiff Carter received during the period in question.

Defendants claim that Plaintiff Carter failed to mitigate her damages. Plaintiff Carter has a duty under the law to mitigate her damages, that is, to exercise reasonable diligence under the circumstances to minimize her damages.

To succeed on this defense, Defendant Southwest must prove, by a preponderance of the evidence: (a) that there was substantially equivalent employment available; (b) Plaintiff Carter

---

[30] *See Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 226–27 (D. Colo. 1987) (finding for public policy purposes and based on the intent of the RLA, plaintiff was not entitled to compensatory or punitive damages); *see also Newlin v. GoJet Airlines, Inc.*, 2011 U.S. Dist. LEXIS 18216, at *11–12 (E.D. Mo. Feb. 24, 2011) (suggesting plaintiff would not be entitled to seek compensatory and punitive damages but for not being represented by a union or party to a CBA).

US_ACTIVE-167502938.1

failed to use reasonable diligence in seeking those positions; and (c) the amount by which Plaintiff Carter's damages were increased by her failure to take such reasonable actions.

"Substantially equivalent employment" in this context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job Plaintiff Carter lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning. The reasonableness of Plaintiff Carter's diligence should be evaluated in light of her individual characteristics and the job market.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Plaintiff Carter for the harm she has sustained. Do not include as actual damages interest on wages or benefits.

In addition to actual damages, you may consider whether to award punitive damages. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future. You may not consider awarding Plaintiff Charlene Carter punitive damages in relation to her claim of retaliation under the Railway Labor Act.[31]

You may award punitive damages if Plaintiff Carter proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Plaintiff Carter's federally protected right to be free from discrimination.

---

[31] *See Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 226–27 (D. Colo. 1987) (finding for public policy purposes and based on the intent of the RLA, plaintiff was not entitled to compensatory or punitive damages); *see also Newlin v. GoJet Airlines, Inc.*, 2011 U.S. Dist. LEXIS 18216, at *11–12 (E.D. Mo. Feb. 24, 2011) (suggesting plaintiff would not be entitled to seek compensatory and punitive damages but for not being represented by a union or party to a CBA).

US_ACTIVE-167502938.1

If Plaintiff Carter has proved these facts, then you may award punitive damages, unless Defendant Southwest proves by a preponderance of the evidence that the act was contrary to its good-faith efforts to prevent discrimination in the workplace.

An action is in "reckless indifference" to Plaintiff Carter's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Plaintiff Carter is not required to show egregious or outrageous discrimination to recover punitive damages. Proof that Defendant Southwest or Local 556 engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether Defendant Southwest or Local 556 made good-faith efforts to prevent discrimination in the workplace, you may consider whether it adopted anti-discrimination policies, whether it educated its employees on the federal antidiscrimination laws, how it responded to Plaintiff Carter's complaint of discrimination, if any, and how it responded to other complaints of discrimination.

If you find that Defendant Southwest acted with malice or reckless indifference to Plaintiff Carter's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Carter is entitled to receive, you may, but are not required to, award Plaintiff Carter an additional amount as punitive damages for the purposes of punishing Defendant Southwest and Local 556 for engaging in such wrongful conduct and deterring Defendant Southwest and Local 556 and others from engaging in such conduct in the future. You should presume that Plaintiff Carter has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

US_ACTIVE-167502938.1

4.    How reprehensible Defendant Southwest's conduct was. You may consider whether the harm Plaintiff Carter suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Southwest's conduct that harmed Plaintiff Carter also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Carter.

5.    How much harm Defendant Southwest's wrongful conduct caused Plaintiff Carter.

6.    What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendant Southwest's financial condition, to punish Defendant Southwest for its conduct toward Plaintiff Carter and to deter Defendant Southwest and others from similar wrongful conduct in the future.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused Plaintiff Carter.

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.[32] During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

---

[32] Fifth Circuit Pattern Jury Instruction, Civil Cases, 3.7 (2020)

US_ACTIVE-167502938.1

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question on the verdict form.

You may now proceed to the jury room to begin your deliberations.

**A.      Proposed jury interrogatories**

**1.      Claims Against Southwest**

**Question No. 1**

Has Plaintiff Charlene Carter proved by a preponderance of the evidence that Carter engaged in activity protected by the Railway Labor Act?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 1, then answer Question No. 2.

**Question No. 2**

Was Plaintiff Charlene Carter's protected activity sufficiently vulgar, offensive, abusive, threatening, or harassing such that it lost protection under the Railway Labor Act?

_____

If you answered "No" to Question No. 2, then answer Question No. 3.

**Question No. 3**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that her protected activity was a substantial or motivating factor for the termination of her employment?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 3, then answer Question No. 4.

**Question No. 4**

If "Yes" to Question No. 3, would Southwest have terminated Plaintiff Charlene Carter's employment even if she had not engaged in protected activity?

Answer "Yes or "No."

_____

If you answered "Yes" to Question No. 4, then answer Question No. 5.

**Question No. 5**

If you answered "Yes" to Question No. 3 and "No" to Question No. 4, what sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for lost wages, if any, Defendant Southwest caused Plaintiff Charlene Carter?

Answer in dollars and cents for the following items and none other:

Wages and benefits from March 14, 2017 to today's date.

$_____

**Question No. 6**

Did Plaintiff Charlene Carter proved, by a preponderance that she exhausted administrative remedies with respect to her Title VII claim based on a failure to accommodate?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 6, then answer Question No. 7

**Question No. 7**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence that her religious beliefs conflicted with a requirement of her employment at Defendant Southwest?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 7, then answer Question No. 8

**Question No. 8**

Did Defendant Southwest learn or reasonably suspect that Plaintiff Carter needed an accommodation prior to the time Defendant Southwest learned that she violated Southwest's employment requirements?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 8, then answer Question No. 9

**Question No. 9**

Did Defendant Southwest fail to reasonably accommodate Plaintiff Carter's religious beliefs in the application of its policies to Carter?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 9, then answer Question No. 10

**Question No. 10**

If "Yes" to Question No. 8, would providing Plaintiff Charlene Carter an accommodation have imposed an undue hardship (*i.e.*, a burden that is more than inconsequential or negligible)?

Answer "Yes or "No."

_____

If you answered "Yes" to Question No. 10, then answer Question No. 11

**Question No. 11**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence that she would not have had her employment terminated by Defendant Southwest in the absence of—in other words, but for—her religious beliefs?

Answer "Yes" or "No."

_____

**Question No. 12**

If you answered "Yes" to Questions No. 7-8, and 10, what sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for the damages, if any, you have found Defendant Southwest caused Plaintiff Charlene Carter?

Answer in dollars and cents for the following items and none other:

1.      Wages and benefits from March 14, 2017 to today's date.

        $_____

2.      Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

        $_____

3.      Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

        $_____

**Question No. 13**

Do you find that Plaintiff Charlene Carter failed to reduce her damages through the exercise of reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her employment termination by Defendant Southwest?

Answer "Yes" or "No."



If you answered "Yes" to Question No. 13, then answer Question No. 14

**Question No. 14**

How much would Plaintiff Charlene Carter have earned had she exercised reasonable diligence under the circumstances to minimize her damages?

Answer in dollars and cents, if any.

$_____

**Question No. 15**

Do you find that Plaintiff Charlene Carter should be awarded punitive damages?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 15, then answer Question No. 16.

**Question No. 16**

What sum of money should be assessed against Defendant Damages as punitive damages?

Answer in dollars and cents:

$_____

**1.      Claims against Local 556**

**Question No. 1**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that she engaged in activity protected by the Railway Labor Act?

24

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 1, then answer Question No. 2.

**Question No. 2**

Was Plaintiff Charlene Carter's protected activity sufficiently vulgar, offensive, abusive, threatening, or harassing such that it lost protection under the Railway Labor Act?

_____

If you answered "No" to Question No. __, then answer Question No. __.

**Question No. 3**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that her protected activity, was a substantial or motivating factor in terminating her employment?

Answer "Yes" or "No."

_____

If "Yes", Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that Local 556 either had authority to take an adverse employment action against Carter, including causing the Plaintiff's termination, and/or that Defendant Local 556 acted in concert with Defendant Southwest to cause Plaintiff's termination.

If "Yes", would Southwest have terminated Plaintiff Charlene Carter's employment even if she had not engaged in protected activity?

Answer "Yes or "No."

_____

25

**Question No. 3**

If you answered "Yes" to the first question under Question No. 2 and "No" to the second question under Question No. 2, what sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for the damages, if any, you have found Defendant Local 556 caused Plaintiff Charlene Carter?

Answer in dollars and cents for the following items and none other:

Wages and benefits from March 14, 2017 to today's date.

$\underline{\hspace{2cm}}$

**Question No. 4**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence,  that she would not have had her employment terminated by Defendant Southwest in the absence of—in other words, but for—her religious beliefs?

Answer "Yes" or "No."

$\underline{\hspace{2cm}}$

**Question No. 5**

Did Defendant Local 556 fail to reasonably accommodate Plaintiff's religious beliefs in the application of its policies to Carter?

Answer "Yes" or "No."

$\underline{\hspace{2cm}}$

If "Yes", would Plaintiff Charlene Carter's requested accommodation have imposed an undue hardship on Defendant Southwest's business operations or Plaintiff Charlene Carter's co-workers?

Answer "Yes or "No."

26

_____

**Question No. 6**

If you answered "Yes" to Question No. 4 or "Yes" to the first question under Question No. 5 and "No" to the second question under Question No. 5, what sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for the damages, if any, you have found Defendant Local 556 caused Plaintiff Charlene Carter?

Answer in dollars and cents for the following items and none other:

1.      Wages and benefits from March 14, 2017 to today's date.

   $_____

2.      Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

   $_____

3.      Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

   $_____

**Question No. 7**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that former Local 556 President Audrey Stone arbitrarily, discriminatorily, or in bad faith reported Carter to Defendant Southwest for violating company policies?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 1, then answer Question No. 2.

**Question No. ___**

US_ACTIVE-167502938.1

Has Plaintiff Carter proved, by a preponderance of the evidence, that former Local 556 President Audrey Stone reported Mrs. Carter solely from her position as Union President and not as a Southwest employee?

_____

If you answered "No" to Question No. __, then answer Question No. __.

**Question No. 8**

Has Plaintiff Charlene Carter proved, by a preponderance of the evidence, that the reporting of Carter undermined the fairness or integrity of the grievance process such that the Union failed in its representation?

Answer "Yes" or "No."

_____

If "Yes", would Southwest have terminated Plaintiff Charlene Carter's employment even if Defendant Local 556 had breached its duty of representation to Carter?

Answer "Yes or "No."

_____

**Question No. 9**

If you answered "Yes" to the first question under Question No. 8 and "No" to the second question under Question No. 8 what sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Charlene Carter for the damages, if any, you have found Defendant Southwest caused Plaintiff Charlene Carter?

Answer in dollars and cents for the following items and none other:

- Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

$_____

US_ACTIVE-167502938.1

- Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

$_____

**Question No. 10**

Do you find that Plaintiff Charlene Carter failed to reduce her damages through the exercise of reasonable diligence in seeking, obtaining, and maintaining substantially equivalent employment after the date of her employment termination by Defendant Southwest?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 7, then answer Question No. 8.

**Question No. 11**

How much would Plaintiff Charlene Carter have earned had she exercised reasonable diligence under the circumstances to minimize her damages?

Answer in dollars and cents, if any.

$_____

US_ACTIVE-167502938.1

## OBJECTIONS TO PLAINTIFF'S JURY INSTRUCTIONS

Southwest and Local 556 (collectively, "Defendants") submit the following general comments and abbreviated objections to Charlene Carter's ("Carter") supplement to the parties' joint proposed jury instructions. Southwest and Local 556 may provide more detailed objections on or before June 13, 2022 in accordance with the Court's Amended Scheduling Order. *See* Dkt. No. 236 ¶ 3(6), 239. All Parties agreed that objections submitted with the Joint Pretrial Order are preliminary and that failure to include an objection here does not constitute a waiver of the right to assert additional objections in a later submission. Subject these qualifications, Southwest and Local 556 object to Carter's proposed jury instruction as follows:

- Defendants object that a plaintiff can only recover lost wages and benefits for a claim under the Railway Labor Act ("RLA").

- Defendants object that Carter predicates her RLA instruction on the incorrect legal standard. Among other things, Carter's proposed instruction does not inform the jury that, even if Carter demonstrates protected activity was a motivating factor in the decision to terminate her employment, Defendants are not liable if they establish that Southwest would have discharged Carter even if she had not engaged in protected activity.

- Defendants object that Carter's instruction does not inform the jury that otherwise protected activity can lose protection because it is vulgar, harassing, offensive, or abusive, among other things.

- Defendants object that Carter predicates her Title VII instruction on the incorrect legal standard.

- Defendants object that Carter's instruction and the associated interrogatory does not substantively address the requirements for a Title VII claim based on a failure to accommodate, including but not limited to the requirement of a conflict between her religious beliefs and an employment requirement.

- Defendants object that Carter's instruction and the associated interrogatory does not address exhaustion of administrative remedies.

- Defendants object that Carter's instruction fails to address or mention Defendants' undue burden defense.

US_ACTIVE-167502938.1

- Defendants object that Carter's instructions are vague and are calculated to or will have the effect of prejudicing of confusing the jury.

This partial list of objections is not exhaustive and will be explained and elaborated upon in the objections submitted on June 13, 2022 pursuant to the Court's Amended Scheduling Order.

Dated:  June 9, 2022                          Respectfully submitted,


                                              /s/ Paulo B. McKeeby
                                              Paulo B. McKeeby
                                              State Bar No. 00784571
                                              Brian K. Morris
                                              State Bar No. 24108707
                                              **REED SMITH LLP**
                                              2850 N. Harwood Street
                                              Suite 1500
                                              Dallas, Texas 75201
                                              Phone: 469-680-4200
                                              Facsimile: 469-680-4299
                                              pmckeeby@reedsmith.com
                                              bmorris@reedsmith.com

                                              **ATTORNEYS FOR DEFENDANT
                                              SOUTHWEST AIRLINES CO.**

                                              /s/ Adam S. Greenfield
                                              Adam S. Greenfield
                                              State Bar No. 24075494
                                              **CLOUTMAN & GREENFIELD, PLLC**
                                              3301 Elm Street
                                              Dallas, Texas 75226
                                              Phone:  214.642.7486
                                              Facsimile:  214.939.9229
                                              agreenfield@candglegal.com

                                              Edward B. Cloutman, III
                                              State Bar No. 04411000
                                              **LAW OFFICES OF EDWARD CLOUTMAN, III**
                                              3301 Elm Street
                                              Dallas, TX 75226
                                              Phone:  214.939.9222
                                              Facsimile:  214.939.9229

31

**ATTORNEYS FOR DEFENDANT**
**TWU LOCAL 556**

US_ACTIVE-167502938.1

US_ACTIVE-167502938.1