UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>              Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>              Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S
RESPONSE TO DEFENDANT SOUTHWEST AIRLINES CO.'S MOTION *IN LIMINE*
AND INCORPORATED BRIEF**

Plaintiff Charlene Carter ("Carter") responds to Southwest Airlines Co.'s ("Southwest") Motion *in Limine* as follows:

## Introduction

The Court should deny Southwest's motion to limine all evidence related to employee discipline, because Carter's claims do not raise "similarly situated employee" issues. Moreover, Southwest's request is overbroad because it excludes evidence of Local 556 representatives reporting union-represented employees for discipline when they opposed the union, which is relevant to Carter's RLA, Duty of Fair Representation, and Title VII claims against Local 556.

The Court should deny Southwest's request to limine evidence of Southwest's financial condition, which is relevant to proving the amount of a punitive damages award. The Court should also deny Southwest's request to limine "golden rule" or "conscience of the community" statements and arguments because the request is overbroad, and it is unclear what evidence Southwest seeks to exclude.

1

### I. Evidence related to Local 556 representatives reporting recall supporters for discipline and President Stone's handling of employee disciplinary issues are relevant to Carter's claims against Local 556.

The Court should deny Southwest's overbroad motion to limine evidence of employee discipline. Southwest's argument for excluding evidence of employee discipline misses the point of why Carter seeks to introduce such evidence. Carter does not contend that Southwest's different treatment of comparator (i.e., "similarly-situated") employees is evidence that Southwest's stated reason for termination was a pretext for discrimination.[1] Instead, Carter seeks to introduce evidence of employee discipline to demonstrate Local 556 representatives' knowledge of and involvement in efforts to discipline recall supporters, nonmember objectors, and other union opponents, which is directly relevant to Carter's RLA, Duty of Fair Representation, and Title VII claims against Local 556. Carter also seeks to introduce evidence regarding how President Stone handled employee disciplinary issues, which is also directly relevant to Carter's claims about Local 556 and President's Stone's treatment of her.

Carter's RLA and Title VII claims against *Southwest* do not involve showing that she was "treated less favorably than a similarly situated person outside of her protected class."[2] Carter is not seeking to introduce the evidence for the purposes Southwest outlines in its limine motion. Southwest's motion to limit comparator employee evidence to "similarly-situated" employees is inapposite.

Carter seeks to present evidence of employee discipline to prove her RLA, Duty of Fair Representation, and Title VII claims against Local 556. Unions acting as employees' exclusive

---

[1] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (recognizing different methods for proving causation under Title VII without being constrained to indirect proof paradigms).

[2] *See also* Carter's Disputed Portions of Proposed Jury Charge and Interrogatories, Dkt. No. 250-2, at 2, 6, 8. .

bargaining representation owe all the employees they represent an affirmative fiduciary duty of fair representation, whether or not the employees are nonmembers of the union or recall supporters.[3] Unions breach their duty of fair representation when they act arbitrarily, discriminatorily, or in bad faith.[4]

The Duty of Fair Representation presumes that every instance when a union representative reports a represented-employee for discipline violates the union's duty.[5] Unions must "act for and not against those whom it represents."[6] *Every* case of a Local 556 representative reporting union opponents for discipline is directly relevant to Carter's RLA, Duty of Fair Representation, and Title VII claims against Local 556 irrespective of the represented employees' different locations, different supervisors, etc.[7]

Carter will present evidence at trial that Local 556 officials and representatives, including President Audrey Stone, targeted other Southwest employees for discipline, to prove her RLA, Title VII, and Duty of Fair Representation claims. First, evidence of employee discipline will show that the union treated flight attendants with personal animosity, political favoritism, invidiously

---

[3] *See Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75-76 (1991).
[4] *Id.*
[5] *See Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1805 (2015); *Acklin Stamping*, 351 N.L.R.B. 1263, 1263 (2007); *Graphics Commc'ns Local 1-M (Bang Printing)*, 337 N.L.R.B. 662, 673 (2002); *Roscello*, 726 F.2d at 221 ("[T]he union's duty of fair representation has been the same duty whether the union involved is covered by the NLRA or the RLA.").
[6] *Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. NLRB*, 368 F.2d 12, 16 (5th Cir. 1966). Unions breach the duty when they make "arbitrary" decisions, "based upon motivations such as personal animosity or political favoritism." *See McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009). Unions breach the duty when they violate the guarantee that employees will be represented without "'invidious treatment … in matters affecting their employment.'" *Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967). Unions also breach the duty when they "evince a purpose to intentionally harm" employees subject to the union's exclusive representation. *See McCall*, 661 F. Supp. 2d at 654 (citing *O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203, 1204 (5th Cir. 1991).
[7] SWA Mot. 3.

with respect to their employment, or with a purpose to harm. That evidence is directly relevant to the union's violation of her rights, and all employees targeted by Local 556 are "similarly-situated" for that purpose.

Second, evidence that Local 556 representatives, including President Stone, exerted continuing pressure on Southwest to discipline union opponents is relevant to proving Carter's RLA retaliation against the union. Carter's RLA retaliation claim requires Carter to show that her protected activities were a substantial or motivating factor for Local 556's actions in causing her termination.[8] Carter can show Local 556 and President Stone's history and pattern of discriminatory conduct towards other nonmember objectors, recall supporters, and union opponents, to support her claims.

Third, evidence of employee discipline is also relevant to Carter's Title VII religious discrimination claim against Local 556. Carter can present relevant evidence proving that Local 556 President Stone treated her worse than other employees because of her religious observances, practices, and beliefs.[9] Carter may prove that Local 556's President Stone treated her differently (and worse) than other employees for the simple fact that Stone affirmatively acted to cause Carter discipline because of her religious observances, beliefs, and practices, whereas Stone protected other employees from discipline that did not exhibit Carter's religious characteristics.[10]

Carter seeks to present evidence regarding Local 556's reports about other flight attendants and Facebook posts they turned in to Southwest, all of which are encompassed by Southwest's overbroad request to limine evidence of employee discipline. President Stone, Local 556 Shop Steward Ricky Spand, and Executive Board-supporter Brian Talburt—who served on President

---

[8] *See Roscello*, 726 F.2d at 222.
[9] *See e.g., Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).
[10] *See Int'l Union of Operating Eng'rs Local 406*, 701 F.2d at 508 (quoting *Vaca*, 386, U.S. at 177-78).

Stone's "Core Team," exerted continuous pressure on Southwest throughout 2017 to fire vocal recall supporters.[11] Southwest's April 4, 2017 email describes how President Stone and Shop Steward Spand reported Recall Leader Jeanna Jackson and other union opponents to the company for discipline around March and April 2017, around the same time that Stone reported Carter.[12]

President Stone and Shop Steward Ricky Spand reported Recall Leader Jackson for stating, "It's pathetic that any union president turns in any member. In any union. Members are allowed to have a dissenting opinion from that of the Officers of the union."[13] Stone's report of Jackson's social media post, made shortly after Carter's March 16, 2017 termination, was a direct reference to President Stone turning in Carter for her dissenting opinion. Stone and Spand alleged that other flight attendants, including Recall Leader Jeanna Jackson, were "retaliating" against them on social media. This is direct evidence of President Stone's motive. Carter should be able to present such evidence at trial. Southwest should not be able to exclude this evidence based on its theory.

President Stone-supporter Talburt bombarded Southwest managers with requests to discipline and terminate Recall Leader Jeanna Jackson and other recall supporters for their recall speech, all with the ratification of President Stone and Executive Vice President Brett Nevarez, who were routinely included on his emails but never disavowed his efforts.[14] President Stone had previously defended Talburt from discipline after he called on "one public execution" of union opponents to silence them.[15] Notably, Talburt asked Southwest to discipline union opponent and recall supporter

---

[11] Carter's Appendix in Support of her Response to Southwest's Motion for Summary Judgment, Dkt. No. 226, App.52-87 (cited to herein as ("Carter Resp. App. __")).
[12] Carter's Appendix in Support of her Motion for Summary Judgment, Dkt. No. 222, App.549 (cited to herein as ("Carter App. __")).
[13] (Carter App.549).
[14] *See Local 9431, Commc'ns Workers of Am.*, 304 N.L.R.B. 446, 447 (1991). (Carter Resp. App.66-82).
[15] (Carter App.451-452, Stone 180:15-18, 181:16-19); (Carter Resp. App.81-82); (Carter App.550-551).

Greg Hofer and numerous other union opponents (including Carter) on February 22, 2017, the same day President Stone made her complaint against Carter, which suggests a concerted effort on the part of Local 556 to punish its opponents.[16] Finally, President Stone's communications and with Southwest management about employee discipline, grievance-handling, and negotiations that excused certain employees for social media policy violations is evidence relevant to Stone's scope of official authority.[17] Contrary to its protests,[18] Southwest would not be prejudiced by the admission of this evidence because it is not admitted to try the merits of disciplinary decisions, but to show the union's concerted efforts to report recall supporters for discipline and Stone's scope of authority.

## II. Southwest's financial condition

The Court should also deny Southwest's request to limine evidence regarding the company's financial condition, which is relevant to determining punitive damages awards. To determine the amount of punitive damages awards, juries consider the amount needed to prevent contested conduct from recurring in the future "in light of [the defendant's] financial condition."[19]

Courts have widely recognized that evidence of the defendants' wealth is relevant to the deterrent effect of a damages award.[20] Southwest opposes such evidence based in part on *Mindrup*,

---

[16] (Carter Resp. App.54); (Carter App.105).

[17] *See also* Carter's Disputed Portions of Proposed Jury Charge and Interrogatories, Dkt. No. 250-2, at 14-15.

[18] *See* SWA Mot. 7.

[19] Fifth Circuit Pattern Jury Instructions, 11.14, p230. *See Burton v. Wyeth-Ayerst Laboratories Div. of Amer. Home Prods. Corp.*, 513 F. Supp. 2d 708, 718-719 (N.D. Tex. 2007) (recognizing the usefulness of defendant's net worth as a factor in deciding whether or not to award punitive damages and denying motion to exclude such evidence); *Lowry's Reports Inc., v. Legg Mason, Inc.*, 302 F. Supp. 2d. 455, 461 (D. Md. 2004) (allowing evidence of the defendant's net worth); *See also Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 595 (5th Cir. 1998).

[20] *See e.g., Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 485 (7th Cir. 2003); *Swinton v. Potomac Corp.,* 270 F.3d 794, 818-19 (9th Cir. 2001); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1068 (8th Cir. 1997).

where the court excluded evidence "that seeks to or tends to arouse prejudice against Defendant *merely* because it is a corporate entity … *in an effort to appeal to any kind of bias*."[21] But, even *Mindrup* recognized that, if the jury answered the punitive damages question in the plaintiff's favor, the plaintiff may present evidence regarding defendant's net worth relevant to determining the amount of punitive damages.[22] The court in *Mayer* granted a motion in limine to prohibit reference to defendant's financial condition, but expressly allowed the plaintiff to "bring forth evidence of financial condition if punitive damages are warranted."[23] Consistent with the Fifth Circuit's Pattern Jury Instructions, Carter seeks only to present evidence of Southwest and Local 556's financial conditions for the purposes of determining the amount of punitive damages award.[24]

### III. "Golden rule" or "Conscience of the Community" statements and arguments

The Court should deny Southwest's request to limine "golden rule" and "conscience of the community" statements and arguments because it is overbroad. Conscience of the community and golden rule arguments are only prohibited in the context of damages, not on issues of liability.[25] Southwest's argument is overbroad because it forecloses these arguments in any context. Southwest's limine overbroad request also fails to give Carter fair notice of what arguments may be prohibited by the limine.

---

[21] *Mindrup v. Goodman Networks, Inc.*, No. 4:14-CV-00157, 2015 WL 11089474, at *2, 4 (E.D. Tex. Oct. 19, 2015) (emphasis added); *see also* SWA Mot. 7-8.
[22] *Id.*
[23] *Mayer v. Future Elecs. GP Corp.*, Civil Action No. 2:07-CV-46-SA-SAA, 2008 WL 4787536, at *1 (N.D. Miss. Oct. 30, 2008).
[24] Fifth Circuit Pattern Jury Instructions, 11.14, p230.
[25] *See Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983); *Aikens v. Cent. Oregon Truck Co., Inc.*, No. 4:20-CV-00567, 2021 WL 4312720, at *2 (E.D. Tex. Sept. 22, 2021).

**Conclusion**

For the foregoing reasons, Carter respectfully requests that the Court deny Southwest's Motion *in Limine* in its entirety.

Dated: June 13, 2022                    Respectfully submitted,


                                        s/ Matthew B. Gilliam
                                        Mathew B. Gilliam (*admitted pro hac vice*)
                                        New York Bar No. 5005996
                                        *mbg@nrtw.org*
                                        c/o National Right to Work Legal Defense
                                        Foundation, Inc.
                                        8001 Braddock Road, Suite 600
                                        Springfield, Virginia 22160
                                        Tel: 703-321-8510
                                        Fax: 703-321-9319

                                        Bobby G. Pryor
                                        State Bar No. 16373720
                                        bpryor@pryorandbruce.com
                                        Matthew D. Hill, Of Counsel
                                        State Bar No. 24032296
                                        mhill@pryorandbruce.com
                                        PRYOR & BRUCE
                                        302 N. San Jacinto
                                        Rockwall, TX 75087
                                        Telephone: (972) 771-3933
                                        Facsimile: (972) 771-8343

**Certificate of Service**

I hereby certify that on June 13, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

/s/ Matthew B. Gilliam