## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## SOUTHWEST AIRLINES CO.'S OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND INTERROGATORIES

Southwest Airlines Co. ("Southwest") submits its objections to Charlene Carter's ("Carter") prosed jury instructions and interrogatories.

### I.   OBJECTIONS TO RLA INSTRUCTION AND INTERROGATORIES

1.    Throughout her Railway Labor Act ("RLA") instruction and the associated interrogatory (*see* interrogatory number 1), Carter suggests (if not declares) that all of her communications to Local 556 President Audrey  Stone ("Stone"), irrespective of content, constituted "protected activity." Thus, in Carter's telling, Southwest is liable if *any* of her Facebook communications played a role in her termination. Contrary to Carter's suggestion, the Court has not reached that conclusion. Had the Court done so, it could not have found, as it did, that there is a dispute of fact with respect to whether or not Carter's communications were

1

protected, and if so, were the basis for her termination. On that issue, the Court concluded that "[a] reasonable jury could side with Carter or the defendants[.]"[1]

    2.     Carter carries forward the defect described in objection number 1 in her articulation of the standard governing her RLA claim. Courts have repeatedly held that, even if an employee's RLA protected activity is a substantial or motivating factor for termination, the employer will still prevail if it would have terminated the employee in the absence of the protected activity.[2] Carter's proposed instruction jettisons this critical aspect of the legal standard. Carter does so based on the contention that (a) all of her conduct at issue in this case was protected; and (b) her termination was thus *per se* unlawful. But this Court's conclusion that there is material dispute of fact with respect to whether any alleged protected activity was the motive for her termination is at odds with the view reflected in Carter's proposed instructions.

    3.     Carter repeatedly invokes "protected activity" but fails to provide the jury with a definition of the term. Instead, Carter's instruction effectively reads the protected activity requirement out of the statute.

    4.     Courts have repeatedly held that otherwise RLA protected activity loses protection if it is vulgar, offensive, abusive, threatening, or harassing.[3] Carter does not include any instruction on this issue. By failing to do so, Carter implicitly takes the position that that *any* communication

---

[1] Dkt. No. 232 at 12.

[2] *See, e.g.*, *Silva v. Cont'l Airlines, Inc.*, 2008 U.S. Dist. LEXIS 78979, *23 (S.D. Tex. Oct. 7, 2008); *Fields v. Keith*, 174 F. Supp. 2d 464, 480 (N.D. Tex. 2001); *Amarsingh v. Jetblue Airways Corp.*, 409 Fed. Appx. 459, 461 (2d Cir. 2011).

[3] *Held v. Am. Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7665, *21 (N.D. Ill. Jan. 31, 2007); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 883 n.11 (9th Cir. 2002) (activity "may be 'so flagrant, violent or extreme' or so 'egregious,' 'opprobrious,' 'offensive,' 'obscene' or 'wholly unjustified' that it loses the protection of the RLA."); *NLRB v. Arkema, Inc.*, 710 F.3d 308, 316 (5th Cir. 2013) (harassment, intimidation, and offensive and hostile language uttered in connection with union activities are not protected); *Mobil Expl. & Producing U.S., Inc. v. NLRB*, 200 F.3d 230, 238 (5th Cir. 1999) ("An employee may engage in [protected] activity in such an abusive manner that he loses the protection of Section 7.") *Media Gen. Ops., Inc. v. NLRB*, 394 F.3d 207, 209, 212 (4th Cir. 2005) (employee forfeited protections by use of terms "bastard," "son of a bitch," and calling supervisor a "racist.").

US_ACTIVE-167546627.4

objecting to the conduct of a union is protected; and that it is impossible for such a communication to lose protection irrespective of its content. The implication of Carter's instruction is that the RLA legally entitled her to make any statement, publicly post racial slurs, or even issue violent threats so long as she appended "I'm doing this to oppose Local 556" to the end of the communication. That is not the law.[4] The jury instructions should address the circumstances in which Carter's communications lose statutory protection.

5.      Carter's proposed instruction refers to "Southwest's" motive for Carter's termination. This has the potential to confuse the jury because its members may not understand how one determines the "motive" of a corporate entity. Using an instruction that refers to the motive of individuals who made the termination decision makes the jury's inquiry clear: who made the decision and what were their motives?  Referring to "Southwest" generally will necessitate additional instructions regarding the mechanism by which Southwest is legally deemed to have a "motive."

6.      As Southwest set forth in its opposition to Carter's motion in limine, the arbitrator's decision rejecting her grievance is relevant to her claims in this case. Carter's instruction fails to apprise the jury of the relevance and potential uses of the arbitration award.[5]

---

[4] *Id.*

[5] *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 116-17 (5th Cir. 1997) ("an arbitrator's findings relating to an interpretation of the CBA or an application of the CBA to the facts should ordinarily be considered by the court. … [E]ven on issues relating to the existence of discriminatory or retaliatory animus, the award can be highly probative, and wholly ignoring it can constitute an abuse of discretion."); *Baker v. Union Pac. R.R.*, 145 F. Supp. 2d 837, 843 (S.D. Tex. 2001) ("The arbitrator's finding that Plaintiff violated Union Pacific's Code of Operating Rules is … plainly relevant … because it supports the validity of Defendant's articulated non-discriminatory reason for its decision to terminate Plaintiff's employment."); *Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982) ("an arbitration decision in favor of the employer is sufficient to carry the employer's burden of articulating 'some legitimate, nondiscriminatory reason for the employee's rejection.'"); *Miller v. St. Charles Health Sys.*, 2021 U.S. Dist. LEXIS 241343, *16-17 (D. Or. Dec. 17, 2021) ("[A]rbitration decisions are 'clearly relevant and highly probative' of a defendant's legitimate, nondiscriminatory reasons for the plaintiff's termination"); *Morel v. Am. Bldg. Maint. Co.*, 124 Fed. Appx. 671, 672 (2d Cir. 2005) (labor arbitration decision is "highly probative of the absence of discriminatory intent."); *Hawkins v. Leggett*, 955 F. Supp. 2d 474 (D. Md. 2013)

3

7.      Carter's instructions fail to clearly state the role of the jury in evaluating Southwest's termination decision. Specifically, it is not the jury's job to second guess Southwest's decision or evaluate whether the decision was fair or unfair.  Rather, the jury's task is solely to assess the motive of the individual(s) who decided to terminate Carter and decide whether that motive was unlawful.[6]

8.      Carter's RLA instruction opens with a statement of the legal theory underlying her claim. However, the proposed instruction merely states that Southwest "denies Plaintiff Carter's claims" without articulating in summary fashion any of the grounds for its defense. This aspect of Carter's instruction may improperly sway the jury and would be prejudicial to Southwest, because it is one-sided and does not even attempt to explain the arguments supporting Southwest's defense.

## II.    OBJECTIONS TO TITLE VII (DISCRIMINATION) INSTRUCTION AND INTERROGATORIES

9.      Carter's religious discrimination instruction and the associated interrogatories substantially deviates from the Firth Circuit's pattern instruction without justification.[7]

10.     Carter seeks a "motivating factor" instruction and interrogatory (*see* interrogatory number 2) with respect to her religious discrimination claim. As the Fifth Circuit instructs, a court *may* only provide that instruction if the plaintiff proffers evidence at trial showing discriminatory motive.[8] Not only does Southwest deny that it took any action against Carter based on her religion, it also contends that the conduct that resulted in Carter's termination was not part of the religious

---

("the arbitrator does not have to rule on the Title VII claim *per se* before courts may defer to his or her findings.").

[6] *Henderson v. City of Hous.*, 2001 U.S. App. LEXIS 30988, *6-7 (5th Cir. Sep. 18, 2001) ("Appellants assert that by directing the jury not to 'second-guess the … decision' the court precluded the jury from considering whether the City's explanation was false. … Rather than take away the jury's ability to consider evidence of falsity, the instruction at issue focused the jury on the core question: whether or not race was a motivating factor in the City's decision. We find no error in this instruction."); *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir. 1999).

[7] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.1 (2020)

[8] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11, pp. 128-29 (2020)

US_ACTIVE-167546627.4

beliefs or practices she has proffered in this case. Thus, unless and until Carter makes a sufficient showing of discriminatory motive at trial, adopting a motivating factor instruction is not appropriate.[9]

11.     Carter's proposed instruction refers to "Southwest's" motive for Carter's termination. This has the potential to confuse the jury because its members may not understand how one determines the "motive" of a corporate entity. Using an instruction that refers to the motive of individuals who made the termination decision makes the jury's inquiry clear: who made the decision and what were their motives?  Referring to "Southwest" generally will necessitate additional instructions regarding the mechanism by which Southwest is legally deemed to have a "motive."

12.     As Southwest set forth in its opposition to Carter's motion in limine, the arbitrator's decision rejecting her grievance is relevant to her claims in this case. However, Carter's instruction fails to apprise the jury of the relevance and potential uses of the arbitration award.[10]

13.     Carter's instructions fail to clearly state the role of the jury in evaluating Southwest's termination decision. Specifically, it is not the jury's job to second guess Southwest's decision or determine whether the decision was fair or unfair. Rather, the jury's task is solely to assess whether the individual(s) who terminated Carter had an unlawful motive.[11]

---

[9] *Adams v. Mem'l Hermann*, 973 F.3d 343, 352-53 (5th Cir. 2020) (court may only give motivating factor instruction when it is supported by "substantial evidence"); *Adams v. Hermann*, 2019 U.S. Dist. LEXIS 147666, *13-14 (S.D. Tex. Aug. 29, 2019) (denying motivating factor instruction because it was not supported by substantial evidence).
[10] *See supra* note 6.
[11] *See supra* note 7.

**III.    OBJECTIONS TO TITLE VII (FAILURE TO ACCOMMODATE) INSTRUCTION AND INTERROGATORIES**

14.    Carter's instruction and the related interrogatory (*see* interrogatory number 3) ask whether Southwest failed to provide a reasonable accommodation. But Carter's instruction and interrogatory direct no questions to the preliminary and essential issue related to whether Carter was entitled to an accommodation because (a) she had a religious belief that conflicted with an employment duty, and (b) she informed Southwest of her belief and the conflict.

15.    Carter's failure to accommodate instruction ignores / omits the requirement that she show a conflict between her stated religious practice (*i.e.*, that she must share her view that abortion is the taking of human life) and a Southwest work rule.[12] This is an essential component of Carter's failure to accommodate claim and thus it should be addressed in the instructions and interrogatories to the jury.[13]

16.    It is undisputed that Carter never requested an accommodation and that Southwest management was not aware of Carter's religion or her claimed religious practice until after she engaged in the conduct that resulted in her termination. An employee is not entitled to an

---

[12] *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000) (plaintiff must show that she "had a *bona fide* religious belief that conflicted with an employment requirement"); *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (same)

[13] *See, e.g.*, *Bush v. Regis Corp.*, 257 Fed. Appx. 219, 221 (11th Cir. 2007) ("Bush argues that the Sunday shift prevented her from doing field service with her family, which constituted a bona fide religious belief. The record, however, indicates that field service was not required to be performed on Sundays; rather, that was the day Bush and her family *wished* to perform field service."); *Tiano v. Dillard Dep't Stores*, 139 F.3d 679, 683 (9th Cir. 1998) (employee's religious belief – that she "had a calling from God" to take a pilgrimage to Medjugorje, Yugoslavia in October – was not in conflict with "no leave" policy for October through December because the timing of the trip was a personal preference and not part of her calling); *Enriquez v. Gemini Motor Transp. LP*, 2021 U.S. Dist. LEXIS 238796, *35-36 (D. Ariz. Dec. 14, 2021) (accommodation claim failed because there was no conflict between plaintiff's need to observe religious holidays and the employer's leave policy); *Summers v. Whitis*, 2016 U.S. Dist. LEXIS 173222, *12-13 (S.D. Ind. Dec. 15, 2016) ("the fact that an employee subjectively perceives a conflict between her religious beliefs and her job duties is not … conclusive"); *Perkins v. City of Greenwood*, 2016 U.S. Dist. LEXIS 37119, *19-20 (N.D. Miss. Mar. 22, 2016) (granting summary judgment to employer because, *inter alia*, "Plaintiff … failed to bring forth evidence" of a conflict between his belief and employment requirement).

US_ACTIVE-167546627.4

accommodation the need for which is not known or suspected until after the employee violates the employer's policy.[14] Thus, the jury should receive an appropriate instruction and interrogatory reflecting that fact that a post-violation declaration of religiously-motivated misconduct does not create an obligation to accommodate that prior misconduct.

17.    Carter's proposed instruction does not include an instruction or interrogatory regarding Southwest's undue hardship defense. There is no basis for excluding this instruction.[15] The final instruction should inform the jury that, in evaluating whether an accommodation imposes an undue hardship, it should consider (a) the burden the accommodation would impose on the employer; (b) that the "mere possibility" of harm to an employee's co-workers can constitute an undue hardship[16]; and (c) that an undue hardship can be entirely non-economic.[17]

## IV.    OBJECTIONS TO DAMAGES INSTRUCTIONS AND INTERROGATORIES

18.    Carter's instructions and interrogatories related to damages depart from the pattern instructions where there is no basis for doing so.

19.    Carter's damages instruction assumes that, to show she failed to mitigate damages, Southwest must establish the availability of "substantially equivalent employment." But that is not

---

[14] *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) ("There is nothing in Title VII that requires employers to give lesser punishments to employees who claim, after they violate company rules … that their religion caused them to transgress the rules."); *Nobach v. Woodland Village Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015) (citing *Chalmers* with approval and reversing jury verdict and remanding for entry of judgment for employer where plaintiff failed to notify employer of need for religious accommodation until after violating employer rules).

[15] *See, e.g.*, *Weber*, 199 F.3d at 275; *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 n.7 (9th Cir. 1988) ("If an employer can show that no accommodation was possible without undue hardship, it makes no sense to require that he engage in a futile act" of taking "initial steps to reach a reasonable accommodation of the particular religious belief at issue.") ; *Dalberiste v. GLE Assocs.*, 2020 U.S. Dist. LEXIS 28214, *24 (S.D. Fla. Feb. 18, 2020) (citing cases for the same proposition).

[16] *Weber*, 199 F.3d at 274; *see also Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001); *Groff v. Dejoy*, 2022 U.S. App. LEXIS 14195, *21-24 (3d Cir. May 25, 2022).

[17] *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009) (economic and non-economic burdens can pose an undue hardship); *United States EEOC v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 752 (D. Md. 2021) (damage to employee morale can constitute undue burden).

US_ACTIVE-167546627.4

the law. "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment."[18] "A plaintiff may not simply abandon his job search and continue to recover back pay."[19] Southwest intends to show that Carter failed to engage in or promptly abandoned any search for comparable employment. Rather, shortly after separation, Carter largely devoted her efforts to unpaid work for a religious institution rather than attempting to mitigate damages. If Southwest makes this showing, the availability of comparable employment is irrelevant.[20]

20.     Carter's instructions and interrogatories incorrectly assume that she can recover punitive and compensatory damages under the RLA.[21] The RLA does not provide such remedies.

21.     In her punitive damages instruction, Carter identifies certain criminal sanctions available under the RLA. This instruction is not proper. The Court should "[o]nly include" information regarding civil and criminal sanctions "if evidence regarding criminal and civil sanctions for comparable conduct has been presented at trial."[22] Thus, at the very least, Carter's instruction is premature. More fundamentally, this instruction is inappropriate because the RLA does not provide a criminal sanctions for conduct that is "comparable" to that alleged against Southwest. Criminal sanctions under section 152, Tenth require more than a mere statutory

---

[18] *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988); *see also Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (same); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (same); *Fulbright v. Union Pac. R.R. Co.*, 2022 U.S. Dist. LEXIS 59548, *21 (N.D. Tex. Mar. 31, 2022) (same); *Houser v. Castle Montessori Sch., Inc.*, 2019 U.S. Dist. LEXIS 90672, at *6 (E.D. Tex. May 2, 2019) (same); *Morgan v. Neiman-Marcus Grp., Inc.*, 2005 U.S. Dist. LEXIS 34541, *30-31 (N.D. Tex. Dec. 20, 2005) (same); *Voskuil v. Envtl. Health Ctr.-Dallas*, 1997 U.S. Dist. LEXIS 23565, at *19 (N.D. Tex. Aug. 18, 1997) (same).
[19] *Sellers*, 902 F.2d at 1193.
[20] *See supra* note 19.
[21] *Lewy v. S. Pac. Transp. Co.*, 799 F.2d 1281, 1290-91 (9th Cir. 1986) (RLA provides reinstatement and back pay for wrongfully terminated employee but does not entitle employee to "recover damages for any resulting emotional injuries."); *Maas v. Frontier Airlines, Inc.*, 676 F. Supp. 224, 227 (D. Colo. 1987) (under the RLA a plaintiff cannot recovery compensatory or punitive damages).
[22] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.7 (2020).

violation. Rather, criminal sanctions can only be invoked if the employer "acted voluntarily and intentionally to violate a known legal duty."[23] Due to this high bar, criminal prosecutions under the RLA are nearly unheard of.[24] There is no basis to find that Southwest's conduct in this case amounted to the intentional flouting of its obligations under the RLA.

22.     Carter refers to "criminal and civil sanctions for Defendants' conduct." However, the cited provision provides only criminal sanctions. Additionally, Carter's partial recitation of section 152, Tenth, the available financial criminal penalties, and the method of calculating them is confusing and beyond what is called for in the pattern instructions.[25]

23.     Interrogatories 11 and 12 relate to Carter's claimed compensatory damages. However, these interrogatories are not in accord with the pattern instruction[26] and they ask the jury to assign damages for categories that Carter cannot show are at issue in this case, that are vague, and/or would be duplicative of other categories (*e.g.*, stock options, seniority, uniform pay, etc.).

24.     Carter's instructions and interrogatories invite the jury to award her damages against Southwest based on conduct *exclusively* related to Local 556 (*see* interrogatory numbers 11 and 12). Additionally, Carter's interrogatories appear to assume that Southwest and Local 556 are, at least in some respects, jointly liable for the actions of one another. That is unsupported. Carter's damages interrogatories should separately address the damages allegedly caused by Southwest and Local 556, as appropriate.

---

[23] *United States v. Winston*, 558 F.2d 105, 109 (2d Cir. 1977). *Lebow v. Am. Trans Air*, 86 F.3d 661, 671 (7th Cir. 1996).
[24] *Winston*, 558 F.2d at 108 (noting "[t]he paucity of criminal proceedings" under RLA); *Robinson v. Pan Am. World Airways, Inc.*, 777 F.2d 84, 86 (2d Cir. 1985) ("Although section 2, Tenth authorizes the government to seek criminal sanctions against an employer who willfully violates certain sections of the RLA … this drastic enforcement mechanism has rarely been used."); *Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1019 (3d Cir. 1977) ("Criminal sanctions are imposed by Section 2 (Tenth) of the Act … but only with respect to willful failure or refusal of a carrier to comply with the certain of the Act's duties").
[25] Fifth Circuit Pattern Jury Instruction, Civil Cases, 15.7 (2020).
[26] Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14, Question Nos. 1-2 (2020).

9

25.     Interrogatories 34 through 44 improperly invite the jury to award nominal damages against Southwest based on the conduct related to Local 556.

Dated:  June 13, 2022                    Respectfully submitted,

                                         */s/ Paulo B. McKeeby*
                                         Paulo B. McKeeby
                                         State Bar No. 00784571
                                         Brian K. Morris
                                         State Bar No. 24108707
                                         **REED SMITH LLP**
                                         2850 N. Harwood Street
                                         Suite 1500
                                         Dallas, Texas 75201
                                         Phone: 469-680-4200
                                         Facsimile: 469-680-4299
                                         pmckeeby@reedsmith.com
                                         bmorris@reedsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 13th day of June, 2022.

                                         */s/ Paulo B. McKeeby*
                                         Paulo B. McKeeby

US_ACTIVE-167546627.4