## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER )
)
) CIVIL ACTION NO.
VS. ) 3:17-CV-02278-X
)
SOUTHWEST AIRLINES CO., AND )
TRANSPORT WORKERS UNION OF )
AMERICA, LOCAL 556 )

-----------------------------------
CONFIDENTIAL
TWU LOCAL 556 30(b)(6)
ORAL DEPOSITION OF
JOHN PARROTT
NOVEMBER 30, 2020
-----------------------------------

ANSWERS AND DEPOSITION OF JOHN PARROTT,
produced as a witness at the instance of the
Plaintiff, taken in the above-styled and -numbered
cause on NOVEMBER 30, 2020, at 1:52 p.m., before
CHARIS M. HENDRICK, a Certified Shorthand Reporter
in and for the State of Texas, witness located in
Portland, Oregon, pursuant to the Federal Rules of
Civil Procedure, the current emergency order
regarding the COVID-19 State of Disaster, and the
provisions stated on the record or attached hereto.

## Page 3

1                    INDEX
2    Appearances ..................................2
3    JOHN PARROTT
4        Examination by Mr. Gilliam...............4
5
6    Signature and Changes.......................40
7    Reporter's Certificate.....................42
8
9               EXHIBITS
10   Exhibit 24 - ................................7
     Agency Fee Objectors List, Document 38
11
     Exhibit 25 - ...............................16
12   TWU Local 556 Profit & Loss Detail November 2016
     Through March 2017, Document 42
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 2

1              A P P E A R A N C E S
2    FOR THE PLAINTIFF:
3      MR. MATTHEW B. GILLIAM
       NATIONAL RIGHT TO WORK LEGAL DEFENSE
4      FOUNDATION, INC.
       8001 Braddock Road, Suite 600
5      Springfield, Virginia  22160
       (703) 770-3339
6      mbg@nrtw.org
7
     FOR THE DEFENDANT, SOUTHWEST AIRLINES CO.:
8
       MR. MICHAEL A. CORRELL
9      REED SMITH LLP
       2850 North Harwood, Suite 1500
10     Dallas, Texas  75201
       (469) 680-4264
11     mcorrell@reedsmith.com
12
     FOR THE DEFENDANT, TRANSPORT WORKERS UNION OF
13   AMERICA, LOCAL 556:
14     MR. ADAM GREENFIELD
       MR. EDWARD B. CLOUTMAN, III
15     LAW OFFICES OF CLOUTMAN & GREENFIELD, PLLC
       3301 Elm Street
16     Dallas, Texas  75226
       (214) 939-9223
17     agreenfield@candglegal.com
       ecloutman@lawoffices.email
18
19   ALSO PRESENT:  MS. CHARLENE CARTER
                    MS. LAUREN ARMSTRONG
20
21
22
23
24
25

## Page 4

1                  PROCEEDINGS
2        THE REPORTER:  Today's date is
3    November 30, 2020 and the time is 1:52 p.m.  This
4    is the 30(b)(6) deposition of John Parrott, and it
5    is being conducted remotely in accordance with the
6    current emergency order regarding the COVID-19
7    State of Disaster.  The witness is located in
8    Portland, Oregon.
9        My name is Charis Hendrick, Court
10   Reporter, CSR No. 3469.  I am administering the
11   oath and reporting the deposition remotely by
12   stenographic means from my home in Ellis County,
13   Texas.
14            JOHN PARROTT,
15   having been first duly sworn, testified as follows:
16            EXAMINATION
17   BY MR. GILLIAM:
18     Q.  Good afternoon, Mr. Parrott.  Did -- did
19   you review any documents in preparation for today's
20   deposition?
21     **A.  Yes.**
22     Q.  And what did you review?
23     **A.  I looked through some financial records as**
24   **it pertained to the women's march.  I read back**
25   **through to refresh myself on Charlene Carter's**

Page 5

1    grievance file.  I read the arbitration decision
2    again just to refresh my memory.
3        Q.  Okay.  Did you review any other documents
4    in preparation for today's deposition?
5        A.  Other than the -- the legal document as
6    far as what needed to be spoken to today.
7        Q.  Okay.
8        A.  The 20 -- the 20 items that we needed to
9    have --
10       Q.  Okay.
11       A.  -- witnesses for.
12       Q.  All right.  And apart from legal -- from
13   legal counsel, did you have any communications with
14   anyone regarding the subject matters in -- in that
15   email -- or the message?
16       A.  Yes.
17       Q.  Okay.  And who did you speak with?
18       A.  Yes.  I spoke with Lyn --
19           MR. GREENFIELD:  And, John, I'm going
20   to --
21       A.  -- I spoke with --
22           MR. GREENFIELD:  Hold on one second,
23   John.
24           THE WITNESS:  Oh, excuse me.
25           MR. GREENFIELD:  Hold on -- hold on.

Page 6

1    That's all right.  I was on mute for a second.  My
2    apologies.  I'm going to object to the extent that
3    any of those communications happened at advice of
4    legal counsel.  But if you had any communications
5    that weren't pertaining to advice of legal counsel
6    to -- to speak with on any given topic, then you --
7    you may go ahead and testify.
8        A.  So this was at the direction of legal
9    counsel as it pertains to why we're here today.
10       Q.  (By Mr. Gilliam)  Okay.  All right.  Well,
11   we will just move on.  What is an agency fee
12   objector?
13       A.  An agency fee objector is a -- a member
14   who has resigned their membership from the union,
15   but are still paying their portion of the fees as
16   it pertains to collective bargaining and grievance
17   administration.
18       Q.  Okay.  And does Local 556 keep track of
19   flight attendants who are agency fee objectors?
20       A.  Yes, sir, we do.
21       Q.  Okay.  And when did Local 556 start
22   keeping track of agency fee objectors?
23       A.  I don't know the exact date when the first
24   agency fee objectors occurred, but it's been a
25   pretty long time.

Page 7

1        Q.  Okay.  And how long did Local 556 -- all
2    right.  Let me ask it this way:  When did Local 556
3    start keeping records of who was an agency fee
4    objector?
5        A.  Well, that would be the same -- actually,
6    that's the same way.  So it's -- since we've had
7    agency fee objectors, we've tracked them, but --
8        Q.  Okay.  Now, prior to 2013, you didn't have
9    many agency fee objectors, correct?
10       A.  So for the longest time, we had maybe
11   three is the -- what I remember back -- so I took
12   -- I became a treasurer in 2009, and I believe we
13   had about three at that point.
14       Q.  Okay.  And you -- you still keep track of
15   who -- who is and is not -- well, I am sorry -- who
16   is an agency fee objector today, correct?
17       A.  Yes.  Yes, sir.
18       Q.  Okay.  I'd like to mark Document 38 as, I
19   guess, Exhibit 24.
20           (Exhibit 24 marked.)
21       Q.  (By Mr. Gilliam)  And, John, if -- that
22   would be Document 38 for you.
23       A.  Okay.  Let me pull that up.  I have that
24   up.
25       Q.  Okay.  If you could just review it real

Page 8

1    quick.  And once you've had the opportunity to
2    review it, let me know.
3        A.  I am familiar with this document.
4        Q.  Okay.  And what is it?
5        A.  So this is a report from our system that
6    tells us in real time who were the agency fee
7    objectors at that moment.  So you can see that I
8    ran that report on July 14, 2018 at 5:26 p.m.  And
9    these were the current objectors at that point,
10   which will list their names, their employee number,
11   if they were on the medical leave status, where
12   they were based and at what date did they opt out.
13       Q.  Okay.  And the database stores this
14   information?
15       A.  That's correct.
16       Q.  Okay.  And is it correct to say that the
17   union does not, I guess, create the report on a
18   routine basis?
19       A.  That would -- it could be generated on
20   demand, but that would be correct; it would only be
21   generated when necessary.
22       Q.  Okay.
23       A.  But it can be pulled up at any time.
24       Q.  And this particular report, do you know if
25   you generated it for a specific reason?

Page 9

1    A.  So, no, I don't know the answer to that,
2  why -- why this was generated in 2018.  I would be
3  speculating if I gave a reason.  I don't know.
4    Q.  Okay.  And who inputs the -- the data into
5  the system -- well, let me ask it again.
6    A.  That's -- so currently -- oh, go ahead.
7    Q.  Sorry.  We have a little bit of a delay, I
8  think.  When -- when you have someone opt out, who
9  inputs that data into your system?
10    A.  So when I receive official communication
11  from TW (sic) International, they send a letter to
12  me -- I am copied on a letter that actually is sent
13  to the agency fee objector stating that they are in
14  receipt of their letter and they have resigned
15  their membership.  I would then go into the system
16  and designate them as an agency fee objector and I
17  would put in their opt-out date, which should
18  correlate to the date of their letter.
19    Q.  Okay.  And does anyone else besides you
20  ever change that data?
21    A.  So that -- so with our Salesforce system,
22  that is field specific.  And I believe that I am
23  the only one who can see that actual manipulation
24  besides an administrator.  The treasurer would be
25  in charge of that since we've had the Salesforce

Page 10

1  system.
2    Q.  Okay.  And do you know if this document
3  correctly reflects who is an agency fee objector
4  today?
5    A.  Well, I know for certain it does not
6  reflect who is an agency fee objector today because
7  there have been additions and subtractions from
8  this list.
9    Q.  Okay.
10    A.  This report was ran two years ago, so
11  there have been people who have come off and went
12  back on.
13    Q.  Okay.  Do you know if this list changed
14  between 2014 and 2018?
15    A.  Yes.
16    Q.  Okay.
17    A.  It would have changed between 2014 and
18  2018.  In that four-year period, yes, it would have
19  changed.
20    Q.  Okay.  Do you know how many total agency
21  fee objectors there are today?
22    A.  I believe -- I -- I looked at that this
23  morning and I believe there are 60.
24    Q.  Okay.  And is -- have you -- let me ask it
25  this way:  Have you ever generated this report for

Page 11

1  the executive board?
2    MR. GREENFIELD:  And I will instruct
3  you not to --
4    A.  Yeah.
5    MR. GREENFIELD:  -- answer on the
6  basis if that -- if that came at the behest of
7  legal counsel or advice of legal counsel to produce
8  that report for the executive board for -- for an
9  executive session -- board session.
10    A.  So I will speak to my piece that I said
11  yes -- and I thank you for that.  And I will slow
12  down for -- because I think there is a delay in our
13  speaking.
14    This report would be generated monthly
15  to the executive board, so -- because they did not
16  have access to run that report.
17    Q.  (By Mr. Gilliam)  Okay.  And, I guess, for
18  what purposes is it -- well, strike that.
19    Now, excluding any requests from legal
20  counsel, what -- what purposes does it serve for
21  the executive board to receive this information?
22    A.  I believe it's just as a -- it's just --
23  it's just for informational purposes only.
24    Q.  Okay.  And has -- can any other executive
25  board member run the report?

Page 12

1    A.  So they -- they have that ability now,
2  which, basically, took away where it had to be sent
3  on a monthly basis.  An executive board member can
4  now run that report.
5    Q.  How long have executive board --
6    A.  They don't -- they don't have the ability
7  to change the data -- oh, sorry, I didn't mean to
8  talk over you.  They don't have the ability to
9  change the data, but they are able to view the
10  report.
11    Q.  Okay.  And how long have executive board
12  members been able to view the report?
13    A.  I believe that that change was made this
14  year.
15    Q.  Okay.  And has any executive board member
16  ever asked you to generate this report for -- other
17  than routine informational executive board
18  purposes?
19    A.  No.
20    Q.  Okay.  And does the Local 556 ever send
21  any information to Southwest about flight
22  attendants' objector status?
23    A.  I am really trying to think about that to
24  make sure.  I don't believe so, no.
25    Q.  Okay.  Does Local 556 ever report any

Page 13

1  information about flight attendants' nonmembership
2  status in the union?
3      A.  No.
4      Q.  Okay.  Now, apart from executive board
5  members, is this report ever distributed to anyone
6  else?
7      A.  So prior to it going to executive board --
8  when we changed that feature, this report, I
9  believe, was shared with the grievance chair.
10     Q.  Okay.  And for what purpose was it shared
11  with the grievance chair?
12     A.  I don't know the answer to that.
13     Q.  Okay.  And objectors are reimbursed a
14  certain portion of the dues they pay; is that
15  correct?
16     A.  That's correct.
17     Q.  Okay.  And how frequently are they
18  reimbursed?
19     A.  Through my interaction -- so that comes
20  directly from TWU International.  And from my
21  interactions with some of the agency fee objectors,
22  it's my understanding that they get it quarterly.
23     Q.  Okay.  And to make sure I understand, when
24  a -- I guess, a nonmember flight attendant pays
25  their dues, do they pay the full amount directly to

Page 14

1  Local 556?
2      A.  That's correct.
3      Q.  Okay.  And how does the International
4  determine how much objectors are reimbursed?
5      A.  I believe that is stated in the agency fee
6  policy, that they conduct a yearly audit.  And it's
7  based on that percentage that they are determined
8  what the refund percentage is on a yearly basis.
9      Q.  Okay.  Now, when the -- and I am sorry.
10  Strike that.
11          So do -- do nonmember flight
12  attendants pay their dues on a monthly basis?
13     A.  Correct.  All -- all members and agency
14  fee objectors pay monthly.  Normally, I would say
15  greater than 90 percent of the time, it comes out
16  of their paychecks.
17     Q.  Okay.  Now, does that money go straight
18  into the -- the union's budget?
19     A.  Yeah.  So it is -- so it is wired from
20  Southwest Airlines to the union's general funds
21  account.
22     Q.  Okay.  And Southwest just automatically
23  deducts the dues from the flight attendant?
24     A.  Correct.  It is deducted from their
25  paycheck and it is wire-transferred in one lump sum

Page 15

1  into our account.  And then we have a file transfer
2  that they tell us, here is what you deducted from
3  for this particular month.
4      Q.  Okay.  And are there any restrictions on
5  the use of that money imposed by the International?
6      A.  Are you speaking to our funds in general?
7      Q.  Yes.  Let me ask the question --
8      A.  So --
9      Q.  Or let me ask the question this way:  Can
10  Local 556 use that money it receives however it
11  wants?
12     A.  Are you speaking about dues money in
13  general?
14     Q.  Yes.
15     A.  Just regular dues?
16     Q.  Yes.
17     A.  So the Local has autonomy from TWU
18  International.  We pay a percentage of that money
19  to TWU per the Constitution, but the Local is
20  -- the executive board is the authority over how
21  the funds are spent.
22     Q.  Okay.
23     A.  I hope that answers your question.
24     Q.  Does the International say that the Local
25  can't use the money it receives for any political

Page 16

1  purposes?
2      A.  So, yes, we do not use our dues money for
3  political purposes.
4      Q.  Okay.  Okay.  Let's see.  Now, you are --
5  you are familiar that a group of flight attendants,
6  in 2017, attended a women's march in Washington,
7  correct?
8      A.  Yes, sir.
9      Q.  And was it Local 556 finances that
10  were used to fund that trip?
11     A.  So the funds -- there was a working
12  women's committee meeting held in D.C., and that
13  money that was spent came from that particular
14  budget.
15     Q.  Okay.  And it -- was it a budget that the
16  executive board allocated for the working --
17  working -- working women's committee?
18     A.  So, yes, the -- the executive board
19  allotted an annual budget for a committee or a
20  department and they spend within the confines of
21  that committee.
22     Q.  Okay.  And if I could mark -- or I will
23  reference you to Document 42 and mark it, if we
24  could, as Exhibit 23 -- 25.
25          (Exhibit 25 marked.)

Page 17

1    A. I am going to download that document so I
2  can turn it the right direction.
3       MR. GREENFIELD:  And I'm sorry,
4  Matthew, which document was that?
5       MR. GILLIAM:  42.
6       MR. GREENFIELD:  42.  Thank you.
7    A. I have Document 42 up.
8    Q. (By Mr. Gilliam)  Okay.  And if you have
9  -- if you want to take a moment to look over it, go
10  right ahead.
11   A. All right.  I have reviewed the document.
12   Q. Okay.  Do you recognize it?
13   A. I do recognize the documents.
14   Q. Okay.  And what is it?
15   A. So the first page is a screen capture that
16  was done on June 21st, 2017 that details out the
17  expense items that were spent between November 2016
18  and March 2017 for the working women's committee.
19  So it would be committee expenses specifically for
20  that committee.
21   Q. Okay.  And do you prepare this report?
22   A. This would be something that I would
23  prepare in my normal duties, yes, sir.
24   Q. Okay.  And, I guess, going about several
25  lines down on that first page and over towards the

Page 18

1  middle, it says, deposit.
2    A. At the very top of the screen?
3    Q. Yeah.  It's towards the top.
4    A. Yeah.  For $350?
5    Q. Yes.  And where does that deposit come
6  from?
7    A. I believe that to be a refund of a deposit
8  that was made towards -- in travel expenses, like
9  69 -- I can't read the exact expense line number; I
10  think it's 6956, lodging.  It would have been a
11  refund of a deposit for one of those -- probably
12  Line 2 or Line 3, their rental agreement or the
13  lodging; one of those two, but I am not certain
14  which one it was a refund for.
15   Q. Okay.  And what does the representation
16  mean?  There is the word "representation" in the
17  column for multiple entries.
18   A. Sure.  So this would be where -- at the
19  time we had put that to where it would be placed on
20  the LM2.
21   Q. Okay.  And what does representation --
22  what does that word signify?
23   A. So general member representation.
24   Q. Okay.  And what -- what are the other
25  options to populate that field with; what other

Page 19

1  words?
2    A. So there is administration, general
3  overhead, political activities and representation.
4  I believe those are the categories.
5    Q. Okay.  And what is the purpose of that
6  coding?
7    A. On this report?
8    Q. On any report.
9    A. So this would assist us in how we place
10  these expenses on our LM2; that we -- we prepare
11  this yearly for the Department of Labor, that LM2
12  report.
13   Q. Okay.  And is it exclusively -- well, let
14  me ask it this way:  Does -- does it -- does the --
15  does the coding have anything to do with what a --
16  an objector is refunded?
17   A. No, no.  That has nothing to do with that.
18   Q. Okay.  Now, as treasurer, do you know why
19  these expenses were made?
20   A. So this report captures the expenses that
21  related to that working women's meeting that was
22  held in Washington, D.C. in 2017.
23   Q. Okay.  And maybe a better way to ask the
24  question is:  For instance, midway down the page,
25  it looks like there is an entry under membership

Page 20

1  supplies; there is, like, an office supplies area,
2  membership supplies.  And --
3    A. Yes.  I see that.
4    Q. -- and it says -- I don't know --
5  30-by-108 banner plus tax.  Do you know why the
6  banner was purchased?
7    A. No, sir, I don't.
8    Q. Okay.  Now, do you -- is there any entry
9  here that reflects lost time for a flight
10  attendant?
11   A. So towards the top of the page, if you
12  look under the first line of expenses, like 6350,
13  you will see gross lost time.  And I know it's a
14  $400 figure; I can't make it out fully, but it's
15  400 and some-odd dollars.
16   Q. Okay.  And you believe that is lost time?
17   A. So I know that to be lost time, but that
18  would have been for -- I -- that would have been
19  for the month of January for committee work that
20  was done.  I can't attribute this $400 directly to
21  this -- this Washington, D.C. trip.  It was just
22  what did the committee spend that month.
23      So you can see that -- so for January,
24  that was paid out in March because of how our lost
25  time is paid out.  Anything that is -- we're

Page 21

1 basically 60 days behind. So any work that was
2 done in the month of January is paid out in March.
3 Q. Okay. And what -- what is lost time?
4 A. So lost time is the money that we pay for
5 our members to be away from the airplane and do
6 union work.
7 Q. Okay. And it -- is it the union dues that
8 pay for the lost time?
9 A. The union dues pay for all expenses, yes.
10 Q. Okay. Does Southwest reimburse the union
11 in any way for lost time?
12 A. There are some committees that we do
13 receive reimbursements for that are joint. Mostly
14 employee assistant (sic) committees. Like, we have
15 a -- we do have a safety program that our lost time
16 is reimbursed by Southwest Airlines. Drug and
17 alcohol, our critical incident stress management,
18 professional standards. There are a few examples,
19 but this example, we would not have been reimbursed
20 by Southwest.
21 Q. Okay. Now, going to one of the next
22 pages. If you see the -- I think it's the second
23 page. In the bottom, you should see TWU 556-9489?
24 A. Give me -- let me rotate pages properly.
25 Q. This one is very difficult to read, yeah.

Page 22

1 A. Oh, yeah, this brings up -- this is an old
2 system that we use -- this is Microsoft Access;
3 this was how we transmitted pulls back in the day
4 and it -- I might have a nightmare over it tonight.
5 Q. Well, when you say this transmitted pulls,
6 what does that mean?
7 A. So to have -- so to remove flight
8 attendants from their line of flying, we had a way
9 to transmit -- between the union and Southwest --
10 these are the flight attendants that we need to do
11 union business. So this was the system that
12 repairs -- excuse me -- prepares the reports that
13 we submitted over to Southwest to pull them from
14 their flying schedule.
15 Q. Okay. And do you know if pages that ended
16 in 9489 through 9492 are all pulls that Local 556
17 transmitted to Southwest in January of 2017?
18 A. So, yes, these reflect, accurately, pulls
19 that we would have submitted over to Southwest
20 Airlines, yes.
21 Q. Okay. And do you know if those pull
22 transmittals are automatically granted by
23 Southwest?
24 A. They are, yes.
25 Q. Okay. And is that required under the

Page 23

1 collective bargaining agreement?
2 A. There is language in the collective
3 bargaining agreement that allows the union to have
4 members perform union activities, so, yes.
5 Q. Okay. And do you know if any other flight
6 attendants were pulled apart from the ones that are
7 in these pull transmittals?
8 A. I am thinking through how you asked that
9 question. Can you -- can you ask it another way?
10 Q. Yeah. So do you know if any other flight
11 attendants were pulled for the January 2017 women's
12 march than the ones who are identified in one of
13 these screenshots?
14 A. I believe this is a complete picture of
15 the flight attendants that were pulled from flying
16 to attend the working women's committee meeting in
17 January.
18 Q. Okay. Now, if you look at -- it's
19 probably on several of these, but on 9490, for
20 instance, the one that ends TWU 556-9490, there is
21 a -- an approved by field; do you see that?
22 A. Yes, I do.
23 Q. And I -- I believe it says, approved by
24 Parrott/Stone; is that correct?
25 A. Yes, sir.

Page 24

1 Q. Okay. And what is being approved exactly?
2 A. So that is for an internal process that
3 two officers have signed off on this particular
4 pull.
5 Q. Okay. Does Local 556 always require that
6 at least two officers sign off?
7 A. Yes.
8 Q. Okay. All right. And then I think there
9 is a box just to the right of that that may say,
10 additional info?
11 A. Yes, I see that.
12 Q. And does that say, pull three-day reserve?
13 MR. GREENFIELD: Objection. Vague --
14 A. That -- that does -- that box that you're
15 looking at on nine --
16 MR. GREENFIELD: Which -- which
17 document are you talking about?
18 MR. GILLIAM: Sorry. 490. The one
19 that ends TWU 556-9490.
20 A. Where a flight attendant with the first
21 name Leslie? It looks like Leslie. It's very
22 grainy.
23 Q. (By Mr. Gilliam) Sorry. I -- I cannot
24 tell on my copy. Let me see if I can pull it up
25 here real quick and make sure we're looking at the

Page 25

1  same thing. Yes.
2      A. Okay.
3      Q. And what -- what does pull three-day
4  reserve mean?
5      A. So that box that you are describing is
6  we're giving information to Southwest on what we're
7  actually asking for. So in that box, we're saying
8  that we're pulling a three-day reserve block that
9  is on the flight attendant's screen; and to place
10  the union bar as indicated, which, on the left
11  side, you will see that we placed a -- so paid
12  trips is for zero. So we pulled a reserve block
13  without pay for this flight attendant to attend the
14  working women's committee meeting.
15      Q. Okay. So does that mean that the flight
16  attendant is not paid by Southwest for that time?
17      A. That's correct. Nor TWU 556; they were
18  not paid at all.
19      Q. Okay. And when you say TWU 556 was not
20  paid at all, who -- who would they be paid by if a
21  flight attendant is pulled?
22      A. I am just saying that we -- we are
23  generating no pay off of this pull. It's a pull
24  without pay. So there is just no pay associated
25  with this pull. Sorry, I didn't answer that

Page 26

1  correctly.
2      Q. Okay. And did you say you are asking to
3  place the union bar as indicated?
4      A. Correct. So still staying on that
5  graphic, if you look at the top in the middle
6  portion, it says -- and I can't make it -- the top
7  line is -- I know what it is; it is date of
8  something, but 1/19/2017. We are placing the bar
9  there and we're going for three days. The return
10  to work is one day after the date in question. So
11  if the bar ran January 19th, 20th and 21st, that
12  says 1/19/2017 and 1/22, that tells Southwest I
13  only want to place a three-day bar on their screen.
14      Q. Okay. And by bar, does that mean the
15  length of the time the flight attendant is pulled?
16      A. Right. How are we drawing this on their
17  flight attendant screen? So we're placing a
18  three-day union bar on their screen for zero TFP.
19      Q. Okay. And what does TFP stand for?
20      A. Trip --
21      Q. Did you say -- I am sorry. Did you say
22  trips for pay?
23      A. Yes.
24      Q. Okay. And who from Southwest receives
25  this information when it's transmitted?

Page 27

1      A. I don't believe that changed, even since
2  2017. So this is sent via email to a distribution
3  group at Southwest, which is their schedule and
4  audit team, such as a department over in Southwest
5  inflight operations that processes our union pulls.
6      Q. Okay. All right. Now, did you prepare
7  each one of these individual transmittals?
8      A. I am going to have to say yes because I
9  was the only one that pretty much did all of them,
10  so -- so, yes.
11      Q. Okay. Who told you the names of the
12  flight attendants to prepare the transmittals for?
13      A. So I get -- well, so our current system is
14  -- so we get an email into our operational email
15  box telling us to pull so-and-so flight attendant
16  for union business. But the system is currently
17  changed from where we are today. So it was emailed
18  during this time frame; and then today, we get them
19  via Salesforce, which is our provider.
20      Q. Okay. And who emailed the flight
21  attendants who would be pulled to you?
22      A. I would say that this came from the WISE
23  committee.
24      Q. Okay. All right. And if I could refer
25  you to Document 16.

Page 28

1      MR. GREENFIELD: I don't think he has
2  that, so let me email that to him.
3      MR. GILLIAM: Okay.
4      MR. GREENFIELD: Okay. It's on the
5  way to you, John.
6      A. Okay. I have that document up.
7      Q. (By Mr. Gilliam) Okay. And if you want
8  to take a moment to review it. Once you have
9  reviewed it, let me know.
10      A. Okay. I have read the document.
11      Q. Okay. Do you recognize this?
12      A. No. I mean, I recognize some of the
13  numbers that -- they -- they correlate to the sheet
14  that we just looked at earlier, but I am not
15  familiar with this document.
16      Q. Okay. And we will skip over that one.
17  Now, do you know how many union members attended
18  the women's march?
19      A. I believe it was somewhere close to 20.
20      Q. Okay.
21      A. I don't know the exact number. Hold on a
22  minute.
23      Q. Sorry about that. Now, were you involved
24  at all in -- in Local 556 -- well -- well, let me
25  ask it this way: Are you familiar that Charlene

Page 29

1    Carter served requests for document production on
2    Local 556?
3    **A. Yes.**
4        Q. Okay. And did you assist in any of the
5    document production efforts?
6        MR. GREENFIELD: And, Matthew, I think
7    if this is -- what is helpful is, I think, for
8    purposes of 17, Mr. Parrott will be testifying to
9    the interrogatory part. Andrew Kennedy will be
10   testifying to the request-for-production part.
11   Mr. Parrott is the individual who signed the
12   verification for the interrogatories.
13       MR. GILLIAM: Okay.
14       MR. GREENFIELD: I -- and -- if that's
15   the number that you are diving into right now.
16       MR. GILLIAM: Well, and let -- let me
17   ask another -- another question.
18       Q. (By Mr. Gilliam) Mr. Parrott, were you
19   involved at all in collecting any documents for
20   Local 556's production of information held on
21   certain union officials' personal electronic
22   devices?
23       MR. GREENFIELD: Mr. Gilliam, that's
24   not part of what Mr. Parrott has been designated
25   for to discuss today.

Page 30

1        MR. GILLIAM: Okay. Wasn't sure. So
2    that's another representative?
3        MR. GREENFIELD: Yes, I believe so.
4    Mr. Cloutman, would you confirm on that? You are
5    on mute.
6        MR. CLOUTMAN: Now I am unmuted.
7    Sorry. What -- what was the question again, Matt?
8        MR. GILLIAM: Does the union have a
9    different designee for documents produced from
10   union officials' personal devices?
11       MR. CLOUTMAN: I don't know the answer
12   to that.
13       MR. GREENFIELD: Well, we -- so maybe
14   I can chime in. What we have is Drew Kennedy who
15   will be testifying for -- on behalf of certain
16   aspects of the request-for-production search,
17   et cetera. But -- but, I think, to the -- to the
18   extent your question goes, it sounds like it's
19   starting to get into attorney/client privilege and
20   work product as far as who took place in -- at the
21   advice and assistance of counsel on retrieving
22   documents.
23       MR. GILLIAM: I don't want to get into
24   that.
25       MR. GREENFIELD: Okay.

Page 31

1        MR. GILLIAM: But I do want to
2    identify and -- you know, identify certain
3    documents. So if there's -- I assume somebody will
4    be able to help me with that.
5        MR. CLOUTMAN: I guess my question is:
6    Are you distinguishing between the document search
7    from your request for production and your
8    subsequent request for personal devices?
9        MR. GILLIAM: I'm -- I'm really not.
10   I just to want make sure that it is the same
11   designee.
12       MR. CLOUTMAN: That's my confusion; I
13   -- I am not sure it is.
14       MR. GILLIAM: Okay.
15       MR. CLOUTMAN: Adam -- Adam, you and I
16   should talk about that.
17       MR. GREENFIELD: Okay. Can we go off
18   the record for five minutes?
19       MR. GILLIAM: Yeah. Let's go off the
20   record.
21       (Recess taken.)
22       MR. GREENFIELD: Okay. We -- we're
23   just back from a short break in which we were
24   discussing the corporate representative being
25   identified to speak to Topic 17; specifically, in

Page 32

1    regard to the requests for production of documents.
2    There is an individual who will be brought later
3    named Drew Kennedy, who will be -- who will speak
4    about the initial request-for-production process.
5        Mr. Parrott did help with a subsequent
6    request for production, the one that Mr. Gilliam is
7    discussing that he was -- he had brought up to
8    Mr. Parrott, and so Mr. Parrott will be here to
9    testify to that. I will instruct Mr. Parrott to
10   limit his testimony to things that did not come
11   from -- at the advice or conversations with
12   counsel. But to the extent he can answer
13   Mr. Gilliam's questions outside of that, he should
14   do so.
15       MR. GILLIAM: Okay.
16       Q. (By Mr. Gilliam) Before moving to another
17   topic, I just had one other -- a couple other
18   questions. Mr. Parrott, do you know if Audrey
19   Stone attended the January 2017 women's march?
20       **A. Yes.**
21       Q. Okay. And -- and, yes, she did attend?
22       **A. Yes.**
23       Q. Okay. Do you know if she received lost
24   time?
25       **A. So let me look. I may be confusing the**

Page 33

1 two exhibits because the -- the Document 16 says
2 lost time for Audrey Stone.
3     Q. Well, yeah, excluding -- not -- not
4 referencing Document 16, based on your knowledge,
5 do you know if Audrey Stone received lost time for
6 attending the January 2017 women's march?
7     A. I don't recall specifically that.
8     Q. Okay. Do you know if any flight
9 attendants received lost time for attending the
10 January 2017 women's march?
11     A. So should the first document that you
12 asked me about, that P&L sheet, where -- if you --
13 if you will bear with me one moment. I don't know
14 where that --
15     Q. Document 42, Page 9488.
16     A. I think it's safe -- give me one moment,
17 please. Yup, there it is. Sorry. Take this -- so
18 on this Profit and Loss Detail, Line 6350, gross
19 lost time. So for the month of January, the total
20 lost time expense for the month for this committee
21 was $486. And I don't have a detail out of how
22 that $486 was -- like, this report doesn't say who
23 that went to.
24     Q. Okay. Can you conclude that that -- that
25 amount went to at least one flight attendant as

Page 34

1 lost time?
2     MR. GREENFIELD: Objection. Vague.
3     A. Yes.
4     Q. (By Mr. Gilliam) Okay. All right. Now,
5 at some point, the union reached out to certain
6 officials to gather info from their personal
7 electronic devices; is that correct?
8     A. So I believe that was -- was this the
9 recent -- the recent request that we -- that was
10 sent out?
11     Q. Yes, yes.
12     A. So, yes.
13     Q. Now, when did the union issue that
14 request?
15     MR. GREENFIELD: I am going to object
16 to that to the extent of any conversations -- the
17 timing and content of when those occurred as
18 attorney/client privilege.
19     MR. GILLIAM: How is that
20 attorney/client privilege?
21     MR. GREENFIELD: That you are talking
22 about a communication about when and in the content
23 of what happened when -- as part of a lawsuit.
24 Explain how it's not, sir.
25     MR. GILLIAM: Well, I mean, if he's --

Page 35

1 if -- if one of the union officials is seeking
2 documents from other union officials, I don't see
3 how that's attorney/client privilege. I am not
4 asking about his communications with counsel about
5 -- about the timing. I am just asking when the
6 union requested it.
7     MR. GREENFIELD: Right. And if that
8 was done at the advice and timing of -- of legal
9 counsel, that would be protected.
10     MR. GILLIAM: The communication with
11 the counsel is protected.
12     MR. CORRELL: Isn't this the same
13 argument you made, Counsel, in your argument
14 regarding the subpoena to Ms. Stone where you said
15 Ms. Carter's actions at your direction, we couldn't
16 know about it?
17     MR. GILLIAM: No, I don't think it is.
18     MR. CORRELL: Seems similar to me.
19     MR. GILLIAM: No, I actually didn't
20 make that argument.
21     MR. CORRELL: You asserted privilege
22 and that's what the court withheld the documents
23 on. I just want to know. Because if this is not
24 privileged, then we need to go back to the court
25 about the stuff with Ms. Stone.

Page 36

1     MR. GILLIAM: I -- I think there are
2 two different issues. One involved my
3 communications with -- with my client and
4 specifically about my communications. This
5 involves --
6     MR. CORRELL: No, no. We asked for
7 information about Ms. Carter's communications with
8 other people. And you guys asserted protection
9 over that. And that's what Mr. Greenfield is
10 arguing, isn't it? Communications by an agent at
11 the direction of counsel.
12     MR. GILLIAM: No, I -- I think they
13 are two different things.
14     MR. CORRELL: We're on record, right?
15     MR. GILLIAM: Yes.
16     MR. CORRELL: I want this whole piece
17 on record.
18     MR. GILLIAM: I'm -- I'm asking who
19 the union communicated with for its collection of
20 documents.
21     MR. GREENFIELD: Right. And who the
22 union communicated with on its collection of
23 documents is something that was done at advice of
24 counsel.
25     MR. GILLIAM: Okay. Well, I -- maybe

Page 37

1  I am missing something, but, to me, they seem like
2  two different things.
3       Q.  (By Mr. Gilliam)  Okay.  For the sake of,
4  I guess, moving on, I'm going to -- I'm going to
5  move on here.
6            Now, who did the union receive
7  information from after it requested documents?
8       **A.  I am sorry.  Can you -- can you state that**
9  **again?  I am sorry, Matt.**
10      Q.  Yeah.  When the union requested documents
11  from union officials, who did it receive documents
12  from?
13      **A.  I don't -- I don't know specifics off the**
14  **top of my head.**
15      Q.  Okay.  Who did the union send the request
16  for information to?
17           MR. GREENFIELD:  Objection.  Again,
18  Matt, that's -- that's the same thing we're talking
19  about.  It's who -- who the -- the request for
20  production, who was sought out is all done at
21  advice of legal counsel.
22           MR. GILLIAM:  Okay.  All right.  Well,
23  I guess, what I am trying to get at here -- let's
24  see.
25      Q.  (By Mr. Gilliam)  If I could direct you to

Page 38

1  Document 43.
2       **A.  Give me one second.  It's -- the email is**
3  **already buried.  43.  Okay.  I have Document 43 up.**
4       Q.  (By Mr. Gilliam)  Okay.  And if you could
5  look -- look through these.  You don't have to read
6  every page.  I will ask you general questions.
7       **A.  This is that -- do you want me to review**
8  **the 31-page document?  Just to make sure I am on**
9  **the right one.**
10      Q.  Yeah.  The first page -- well, there's --
11  in the bottom right-hand corner, it says, TWU
12  556-6655.
13      **A.  Okay.  Yes.  Okay.  I have that document**
14  **pulled up.  Okay.**
15      Q.  And, basically, I want to know if you're
16  -- if you're familiar with -- with these documents.
17      **A.  I am not.**
18      Q.  Okay.  All right.  Do you know if these
19  were produced in response to the recent requests
20  for documents from union officials' personal
21  electronic devices?
22      **A.  I don't know that.**
23      Q.  Okay.  All right.  Let's see.
24           MR. GILLIAM:  I think that's all I
25  have for now.

Page 39

1            MR. GREENFIELD:  Well, for now, are --
2  is that your way of saying that you are releasing
3  the witness?
4            MR. GILLIAM:  Yes.
5            MR. GREENFIELD:  Okay.
6            MR. GILLIAM:  Can we go off the
7  record?
8            MR. GREENFIELD:  We can.
9            (End of Proceedings, 3:00 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 40

1            CHANGES AND SIGNATURE
2  WITNESS NAME:  JOHN PARROTT
3  DATE OF DEPOSITION:  NOVEMBER 30, 2020
4  PAGE     LINE    CHANGE    REASON
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

Page 41

1    I, JOHN PARROTT, have read the foregoing
2  deposition and hereby affix my signature that same
3  is true and correct, except as noted above.
4
5  _____
6          JOHN PARROTT
7  THE STATE OF _____
   COUNTY OF _____
8
9  Before me, _____, on this day
   personally appeared JOHN PARROTT, known to me (or
10  proved to me under oath or through _____) to
   be the person whose name is subscribed to the
11  foregoing instrument and acknowledged to me that
   they executed the same for the purposes and
12  consideration therein expressed.
13
14  Given under my hand and seal of office this _____
   day of _____, 2020.
15
16
17  _____
18  NOTARY PUBLIC IN AND FOR THE
   STATE OF _____
19
20  MY COMMISSION EXPIRES:_____
21
22
23
24
25

Page 43

1    __xx__ was requested by the deponent and/or a
2  party before completion of the deposition.
3    _____ was not requested by the deponent and/or
4  a party before the completion of the deposition.
5    I further certify that I am neither
6  attorney  nor counsel for, nor related to or
7  employed by any of the parties to the action in
8  which this deposition is taken and further that I
9  am not a relative or employee of any attorney of
10  record in this cause, nor am I financially or
11  otherwise interested in the outcome of the action.
12    The amount of time used by each party at
13  the deposition is as follows:
14    Mr. Gilliam - 1:04 hours/minutes
15
16    Subscribed and sworn to on this 8th day of
17  December, 2020.
18
19
20  _Charis M Hendrick_
21  CHARIS M. HENDRICK, CSR # 3469
   Certification Expires: 10-31-21
22  Bradford Court Reporting, LLC
   7015 Mumford Street
23  Dallas, Texas  75252
   Telephone 972-931-2799
24  Facsimile 972-931-1199
   Firm Registration No. 38
25

Page 42

1          REPORTER'S CERTIFICATION
2      IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF TEXAS
3            DALLAS DIVISION
4  CHARLENE CARTER          )
                           )
5                          ) CIVIL ACTION NO.
   VS.            ) 3:17-CV-02278-X
6                          )
   SOUTHWEST AIRLINES CO., AND )
7  TRANSPORT WORKERS UNION OF  )
   AMERICA, LOCAL 556      )
8
9  -----------------------------------
10          CONFIDENTIAL
      TWU LOCAL 556 30(b)(6)
11    DEPOSITION OF JOHN PARROTT
        NOVEMBER 30, 2020
12       (REPORTED REMOTELY)
13  -----------------------------------
14
15    I, CHARIS M. HENDRICK, Certified Shorthand
16  Reporter in and for the State of Texas, do hereby
17  certify to the following:
18    That the witness, JOHN PARROTT, was by me
19  duly sworn and that the transcript of the oral
20  deposition is a true record of the testimony given
21  by the witness.
22    I further certify that pursuant to Federal
23  Rules of Civil Procedure, Rule 30(e)(1)(A) and (B)
24  as well as Rule 30(e)(2), that review of the
25  transcript and signature of the deponent:

CONFIDENTIAL DEPOSITION OF JOHN PARROTT

**A**

ability 12:1,6,8
able 12:9,12
  31:4
above-styled
  1:18
access 11:16
  22:2
account 14:21
  15:1
accurately 22:18
acknowledged
  41:11
action 1:4 42:5
  43:7,11
actions 35:15
activities 19:3
  23:4
actual 9:23
Adam 2:14
  31:15,15
additional 24:10
additions 10:7
administering
  4:10
administration
  6:17 19:2
administrator
  9:24
advice 6:3,5
  11:7 30:21
  32:11 35:8
  36:23 37:21
affix 41:1
afternoon 4:18
agency 3:10
  6:11,13,19,22
  6:24 7:3,7,9,16
  8:6 9:13,16
  10:3,6,20
  13:21 14:5,13
agent 36:10
ago 10:10
agreement
  18:12 23:1,3
agreenfield@c...

2:17
ahead 6:7 9:6
  17:10
Airlines 1:5 2:7
  14:20 21:16
  22:20 42:6
airplane 21:5
alcohol 21:17
allocated 16:16
allotted 16:19
allows 23:3
AMERICA 1:6
  2:13 42:7
amount 13:25
  33:25 43:12
and/or 43:1,3
Andrew 29:9
annual 16:19
answer 9:1 11:5
  13:12 25:25
  30:11 32:12
answers 1:16
  15:23
apart 5:12 13:4
  23:6
apologies 6:2
Appearances
  3:2
appeared 41:9
approved 23:21
  23:23 24:1
arbitration 5:1
area 20:1
arguing 36:10
argument 35:13
  35:13,20
ARMSTRONG
  2:19
asked 12:16
  23:8 33:12
  36:6
asking 25:7 26:2
  35:4,5 36:18
aspects 30:16
asserted 35:21
  36:8

assist 19:9 29:4
assistance 30:21
assistant 21:14
associated 25:24
assume 31:3
attached 1:25
attend 23:16
  25:13 32:21
attendant 13:24
  14:23 20:10
  24:20 25:13,16
  25:21 26:15,17
  27:15 33:25
attendant's 25:9
attendants 6:19
  14:12 16:5
  22:8,10 23:6
  23:11,15 27:12
  27:21 33:9
attendants'
  12:22 13:1
attended 16:6
  28:17 32:19
attending 33:6,9
attorney 43:6,9
attorney/client
  30:19 34:18,20
  35:3
attribute 20:20
audit 14:6 27:4
Audrey 32:18
  33:2,5
authority 15:20
automatically
  14:22 22:22
autonomy 15:17

**B**

B 2:3,14 42:23
back 4:24 7:11
  10:12 22:3
  31:23 35:24
banner 20:5,6
bar 25:10 26:3,8
  26:11,13,14,18
bargaining 6:16
  23:1,3

based 8:12 14:7
  33:4
basically 12:2
  21:1 38:15
basis 8:18 11:6
  12:3 14:8,12
bear 33:13
behalf 30:15
behest 11:6
believe 7:12
  9:22 10:22,23
  11:22 12:13,24
  13:9 14:5 18:7
  19:4 20:16
  23:14,23 27:1
  28:19 30:3
  34:8
better 19:23
bit 9:7
block 25:8,12
board 11:1,8,9
  11:15,21,25
  12:3,5,11,15
  12:17 13:4,7
  15:20 16:16,18
bottom 21:23
  38:11
box 24:9,14 25:5
  25:7 27:15
Braddock 2:4
Bradford 43:21
break 31:23
brings 22:1
brought 32:2,7
budget 14:18
  16:14,15,19
buried 38:3
business 22:11
  27:16

**C**

C 2:1
capture 17:15
captures 19:20
Carter 1:3 2:19
  29:1 42:4
Carter's 4:25

35:15 36:7
categories 19:4
cause 1:19 43:10
certain 10:5
  13:14 18:13
  29:21 30:15
  31:2 34:5
Certificate 3:7
Certification
  42:1 43:21
Certified 1:20
  42:15
certify 42:17,22
  43:5
cetera 30:17
chair 13:9,11
change 9:20
  12:7,9,13
changed 10:13
  10:17,19 13:8
  27:1,17
CHANGERE...
  40:4
Changes 3:6
  40:1
charge 9:25
Charis 1:20 4:9
  42:15 43:20
Charlene 1:3
  2:19 4:25
  28:25 42:4
chime 30:14
Civil 1:4,23 42:5
  42:23
client 36:3
close 28:19
Cloutman 2:14
  2:15 30:4,6,11
  31:5,12,15
coding 19:6,15
collecting 29:19
collection 36:19
  36:22
collective 6:16
  23:1,2
column 18:17

come 10:11 18:5
32:10
comes 13:19
14:15
COMMISSION
41:20
committee 16:12
16:17,19,21
17:18,19,20
20:19,22 23:16
25:14 27:23
33:20
committees
21:12,14
communicated
36:19,22
communication
9:10 34:22
35:10
communicatio...
5:13 6:3,4 35:4
36:3,4,7,10
complete 23:14
completion 43:2
43:4
conclude 33:24
conduct 14:6
conducted 4:5
CONFIDENT...
1:9 42:10
confines 16:20
confirm 30:4
confusing 32:25
confusion 31:12
consideration
41:12
Constitution
15:19
content 34:17,22
conversations
32:11 34:16
copied 9:12
copy 24:24
corner 38:11
corporate 31:24
correct 7:9,16

8:15,16,20
13:15,16 14:2
14:13,24 16:7
23:24 25:17
26:4 34:7 41:2
correctly 10:3
26:1
correlate 9:18
28:13
CORRELL 2:8
35:12,18,21
36:6,14,16
counsel 5:13 6:4
6:5,9 11:7,7,20
30:21 32:12
35:4,9,11,13
36:11,24 37:21
43:6
County 4:12
41:7
couple 32:17
court 1:1 4:9
35:22,24 42:2
43:21
COVID-19 1:24
4:6
create 8:17
critical 21:17
CSR 4:10 43:20
current 1:23 4:6
8:9 27:13
currently 9:6
27:16

            D
D.C 16:12 19:22
20:21
Dallas 1:2 2:10
2:16 42:3
43:22
data 9:4,9,20
12:7,9
database 8:13
date 4:2 6:23
8:12 9:17,18
26:7,10 40:3
day 22:3 26:10

41:9,14 43:16
days 21:1 26:9
December 43:17
decision 5:1
deducted 14:24
15:2
deducts 14:23
DEFENDANT
2:7,12
DEFENSE 2:3
delay 9:7 11:12
demand 8:20
department
16:20 19:11
27:4
deponent 42:25
43:1,3
deposit 18:1,5,7
18:11
deposition 1:10
1:16 4:4,11,20
5:4 40:3 41:1
42:11,20 43:2
43:4,8,13
describing 25:5
designate 9:16
designated
29:24
designee 30:9
31:11
detail 3:12 33:18
33:21
details 17:16
determine 14:4
determined 14:7
devices 29:22
30:10 31:8
34:7 38:21
different 30:9
36:2,13 37:2
difficult 21:25
direct 37:25
direction 6:8
17:2 35:15
36:11
directly 13:20

13:25 20:20
Disaster 1:24
4:7
discuss 29:25
discussing 31:24
32:7
distinguishing
31:6
distributed 13:5
distribution
27:2
DISTRICT 1:1
1:1 42:2,2
diving 29:15
DIVISION 1:2
42:3
document 3:10
3:12 5:5 7:18
7:22 8:3 10:2
16:23 17:1,4,7
17:11 24:17
27:25 28:6,10
28:15 29:1,5
31:6 33:1,4,11
33:15 38:1,3,8
38:13
documents 4:19
5:3 17:13
29:19 30:9,22
31:3 32:1 35:2
35:22 36:20,23
37:7,10,11
38:16,20
dollars 20:15
download 17:1
drawing 26:16
Drew 30:14 32:3
Drug 21:16
dues 13:14,25
14:12,23 15:12
15:15 16:2
21:7,9
duly 4:15 42:19
duties 17:23

            E
E 2:1,1

earlier 28:14
ecloutman@la...
2:17
EDWARD 2:14
efforts 29:5
electronic 29:21
34:7 38:21
Ellis 4:12
Elm 2:15
email 5:15 27:2
27:14,14 28:2
38:2
emailed 27:17
27:20
emergency 1:23
4:6
employed 43:7
employee 8:10
21:14 43:9
ended 22:15
ends 23:20
24:19
entries 18:17
entry 19:25 20:8
et 30:17
exact 6:23 18:9
28:21
exactly 24:1
Examination
3:4 4:16
example 21:19
examples 21:18
excluding 11:19
33:3
exclusively
19:13
excuse 5:24
22:12
executed 41:11
executive 11:1,8
11:9,15,21,24
12:3,5,11,15
12:17 13:4,7
15:20 16:16,18
Exhibit 3:10,11
7:19,20 16:24

16:25
**exhibits** 3:9 33:1
**expense** 17:17
  18:9 33:20
**expenses** 17:19
  18:8 19:10,19
  19:20 20:12
  21:9
**Expires** 41:20
  43:21
**Explain** 34:24
**expressed** 41:12
**extent** 6:2 30:18
  32:12 34:16

─────────
**F**
─────────
**Facsimile** 43:23
**familiar** 8:3
  16:5 28:15,25
  38:16
**far** 5:6 30:20
**feature** 13:8
**Federal** 1:22
  42:22
**fee** 3:10 6:11,13
  6:19,22,24 7:3
  7:7,9,16 8:6
  9:13,16 10:3,6
  10:21 13:21
  14:5,14
**fees** 6:15
**field** 9:22 18:25
  23:21
**figure** 20:14
**file** 5:1 15:1
**finances** 16:9
**financial** 4:23
**financially**
  43:10
**Firm** 43:24
**first** 4:15 6:23
  17:15,25 20:12
  24:20 33:11
  38:10
**five** 31:18
**flight** 6:19 12:21
  13:1,24 14:11

14:23 16:5
  20:9 22:7,10
  23:5,10,15
  24:20 25:9,13
  25:15,21 26:15
  26:17 27:12,15
  27:20 33:8,25
**flying** 22:8,14
  23:15
**following** 42:17
**follows** 4:15
  43:13
**foregoing** 41:1
  41:11
**FOUNDATION**
  2:4
**four-year** 10:18
**frame** 27:18
**frequently** 13:17
**full** 13:25
**fully** 20:14
**fund** 16:10
**funds** 14:20 15:6
  15:21 16:11
**further** 42:22
  43:5,8

─────────
**G**
─────────
**gather** 34:6
**general** 14:20
  15:6,13 18:23
  19:2 38:6
**generate** 12:16
**generated** 8:19
  8:21,25 9:2
  10:25 11:14
**generating**
  25:23
**Gilliam** 2:3 3:4
  4:17 6:10 7:21
  11:17 17:5,8
  24:18,23 28:3
  28:7 29:13,16
  29:18,23 30:1
  30:8,23 31:1,9
  31:14,19 32:6
  32:15,16 34:4

34:19,25 35:10
  35:17,19 36:1
  36:12,15,18,25
  37:3,22,25
  38:4,24 39:4,6
  43:14
**Gilliam's** 32:13
**give** 21:24 33:16
  38:2
**given** 6:6 41:14
  42:20
**giving** 25:6
**go** 6:7 9:6,15
  14:17 17:9
  31:17,19 35:24
  39:6
**goes** 30:18
**going** 5:19 6:2
  13:7 17:1,24
  21:21 26:9
  27:8 34:15
  37:4,4
**Good** 4:18
**grainy** 24:22
**granted** 22:22
**graphic** 26:5
**greater** 14:15
**Greenfield** 2:14
  2:15 5:19,22
  5:25 11:2,5
  17:3,6 24:13
  24:16 28:1,4
  29:6,14,23
  30:3,13,25
  31:17,22 34:2
  34:15,21 35:7
  36:9,21 37:17
  39:1,5,8
**grievance** 5:1
  6:16 13:9,11
**gross** 20:13
  33:18
**group** 16:5 27:3
**guess** 7:19 8:17
  11:17 13:24
  17:24 31:5

37:4,23
**guys** 36:8

─────────
**H**
─────────
**hand** 41:14
**happened** 6:3
  34:23
**Harwood** 2:9
**head** 37:14
**held** 16:12 19:22
  29:20
**help** 31:4 32:5
**helpful** 29:7
**Hendrick** 1:20
  4:9 42:15
  43:20
**hereto** 1:25
**hold** 5:22,25,25
  28:21
**home** 4:12
**hope** 15:23
**hours/minutes**
  43:14

─────────
**I**
─────────
**identified** 23:12
  31:25
**identify** 31:2,2
**III** 2:14
**imposed** 15:5
**incident** 21:17
**INDEX** 3:1
**indicated** 25:10
  26:3
**individual** 27:7
  29:11 32:2
**inflight** 27:5
**info** 24:10 34:6
**information**
  8:14 11:21
  12:21 13:1
  25:6 26:25
  29:20 36:7
  37:7,16
**informational**
  11:23 12:17
**initial** 32:4

**inputs** 9:4,9
**instance** 1:17
  19:24 23:20
**instruct** 11:2
  32:9
**instrument**
  41:11
**interaction**
  13:19
**interactions**
  13:21
**interested** 43:11
**internal** 24:2
**International**
  9:11 13:20
  14:3 15:5,18
  15:24
**interrogatories**
  29:12
**interrogatory**
  29:9
**involved** 28:23
  29:19 36:2
**involves** 36:5
**issue** 34:13
**issues** 36:2
**items** 5:8 17:17

─────────
**J**
─────────
**January** 20:19
  20:23 21:2
  22:17 23:11,17
  26:11 32:19
  33:6,10,19
**John** 1:10,16 3:3
  4:4,14 5:19,23
  7:21 28:5 40:2
  41:1,5,9 42:11
  42:18
**joint** 21:13
**July** 8:8
**June** 17:16

─────────
**K**
─────────
**keep** 6:18 7:14
**keeping** 6:22 7:3
**Kennedy** 29:9

CONFIDENTIAL DEPOSITION OF JOHN PARROTT

30:14 32:3
**know** 6:23 8:2
  8:24 9:1,3 10:2
  10:5,13,20
  13:12 19:18
  20:4,5,13,17
  22:15,21 23:5
  23:10 26:7
  28:9,17,21
  30:11 31:2
  32:18,23 33:5
  33:8,13 35:16
  35:23 37:13
  38:15,18,22
**knowledge** 33:4
**known** 41:9

**L**
**Labor** 19:11
**language** 23:2
**LAUREN** 2:19
**LAW** 2:15
**lawsuit** 34:23
**leave** 8:11
**left** 25:10
**legal** 2:3 5:5,12
  5:13 6:4,5,8
  11:7,7,19 35:8
  37:21
**length** 26:15
**Leslie** 24:21,21
**let's** 16:4 31:19
  37:23 38:23
**letter** 9:11,12,14
  9:18
**limit** 32:10
**line** 18:9,12,12
  20:12 22:8
  26:7 33:18
  40:4
**lines** 17:25
**list** 3:10 8:10
  10:8,13
**little** 9:7
**LLC** 43:21
**LLP** 2:9
**LM2** 18:20

19:10,11
**Local** 1:6,9 2:13
  3:12 6:18,21
  7:1,2 12:20,25
  14:1 15:10,17
  15:19,24 16:9
  22:16 24:5
  28:24 29:2,20
  42:7,10
**located** 1:21 4:7
**lodging** 18:10,13
**long** 6:25 7:1
  12:5,11
**longest** 7:10
**look** 17:9 20:12
  23:18 26:5
  32:25 38:5,5
**looked** 4:23
  10:22 28:14
**looking** 24:15,25
**looks** 19:25
  24:21
**Loss** 3:12 33:18
**lost** 20:9,13,16
  20:17,24 21:3
  21:4,8,11,15
  32:23 33:2,5,9
  33:19,20 34:1
**lump** 14:25
**Lyn** 5:18

**M**
**M** 1:20 42:15
  43:20
**management**
  21:17
**manipulation**
  9:23
**march** 3:12 4:24
  16:6 17:18
  20:24 21:2
  23:12 28:18
  32:19 33:6,10
**mark** 7:18 16:22
  16:23
**marked** 7:20
  16:25

**Matt** 30:7 37:9
  37:18
**matters** 5:14
**Matthew** 2:3
  17:4 29:6
**mbg@nrtw.org**
  2:6
**mcorrell@ree...**
  2:11
**mean** 12:7 18:16
  22:6 25:4,15
  26:14 28:12
  34:25
**means** 4:12
**medical** 8:11
**meeting** 16:12
  19:21 23:16
  25:14
**member** 6:13
  11:25 12:3,15
  18:23
**members** 12:12
  13:5 14:13
  21:5 23:4
  28:17
**membership**
  6:14 9:15
  19:25 20:2
**memory** 5:2
**message** 5:15
**MICHAEL** 2:8
**Microsoft** 22:2
**middle** 18:1
  26:5
**midway** 19:24
**minute** 28:22
**minutes** 31:18
**missing** 37:1
**moment** 8:7
  17:9 28:8
  33:13,16
**money** 14:17
  15:5,10,12,18
  15:25 16:2,13
  21:4
**month** 15:3

20:19,22 21:2
  33:19,20
**monthly** 11:14
  12:3 14:12,14
**morning** 10:23
**move** 6:11 37:5
**moving** 32:16
  37:4
**multiple** 18:17
**Mumford** 43:22
**mute** 6:1 30:5

**N**
**N** 2:1
**name** 4:9 24:21
  40:2 41:10
**named** 32:3
**names** 8:10
  27:11
**NATIONAL** 2:3
**necessary** 8:21
**need** 22:10
  35:24
**needed** 5:6,8
**neither** 43:5
**nightmare** 22:4
**nine** 24:15
**nonmember**
  13:24 14:11
**nonmembersh...**
  13:1
**normal** 17:23
**Normally** 14:14
**North** 2:9
**NORTHERN**
  1:1 42:2
**NOTARY** 41:17
**noted** 41:2
**November** 1:11
  1:19 3:12 4:3
  17:17 40:3
  42:11
**number** 8:10
  18:9 28:21
  29:15
**numbered** 1:18
**numbers** 28:13

**O**
**oath** 4:11 41:10
**object** 6:2 34:15
**Objection** 24:13
  34:2 37:17
**objector** 6:12,13
  7:4,16 9:13,16
  10:3,6 12:22
  19:16
**objectors** 3:10
  6:19,22,24 7:7
  7:9 8:7,9 10:21
  13:13,21 14:4
  14:14
**occurred** 6:24
  34:17
**office** 20:1 41:14
**officers** 24:3,6
**OFFICES** 2:15
**official** 9:10
**officials** 34:6
  35:1,2 37:11
**officials'** 29:21
  30:10 38:20
**oh** 5:24 9:6 12:7
  22:1
**Okay** 5:3,7,10
  5:17 6:10,18
  6:21 7:1,8,14
  7:18,23,25 8:4
  8:13,16,22 9:4
  9:19 10:2,9,13
  10:16,20,24
  11:17,24 12:11
  12:15,20,25
  13:4,10,13,17
  13:23 14:3,9
  14:17,22 15:4
  15:22 16:4,4,9
  16:15,22 17:8
  17:12,14,21,24
  18:15,21,24
  19:5,13,18,23
  20:8,16 21:3,7
  21:10,21 22:15
  22:21,25 23:5

23:18 24:1,5,8
25:2,15,19
26:2,14,19,24
27:6,11,20,24
28:3,4,6,7,10
28:11,16,20
29:4,13 30:1
30:25 31:14,17
31:22 32:15,21
32:23 33:8,24
34:4 36:25
37:3,15,22
38:3,4,13,13
38:14,18,23
39:5
**old** 22:1
**once** 8:1 28:8
**ones** 23:6,12
**operational**
  27:14
**operations** 27:5
**opportunity** 8:1
**opt** 8:12 9:8
**opt-out** 9:17
**options** 18:25
**oral** 1:10 42:19
**order** 1:23 4:6
**Oregon** 1:22 4:8
**outcome** 43:11
**outside** 32:13
**overhead** 19:3

**P**

**P** 2:1,1
**P&L** 33:12
**p.m** 1:19 4:3 8:8
  39:9
**page** 17:15,25
  19:24 20:11
  21:23 33:15
  38:6,10 40:4
**pages** 21:22,24
  22:15
**paid** 20:24,25
  21:2 25:11,16
  25:18,20,20
**Parrott** 1:10,16

3:3 4:4,14,18
29:8,11,18,24
32:5,8,8,9,18
40:2 41:1,5,9
42:11,18
**Parrott/Stone**
  23:24
**part** 29:9,10,24
  34:23
**particular** 8:24
  15:3 16:13
  24:3
**parties** 43:7
**party** 43:2,4,12
**pay** 13:14,25
  14:12,14 15:18
  21:4,8,9 25:13
  25:23,24,24
  26:22
**paycheck** 14:25
**paychecks** 14:16
**paying** 6:15
**pays** 13:24
**people** 10:11
  36:8
**percent** 14:15
**percentage** 14:7
  14:8 15:18
**perform** 23:4
**period** 10:18
**person** 41:10
**personal** 29:21
  30:10 31:8
  34:6 38:20
**personally** 41:9
**pertained** 4:24
**pertaining** 6:5
**pertains** 6:9,16
**picture** 23:14
**piece** 11:10
  36:16
**place** 19:9 25:9
  26:3,13 30:20
**placed** 18:19
  25:11
**placing** 26:8,17

**Plaintiff** 1:18
  2:2
**please** 33:17
**PLLC** 2:15
**plus** 20:5
**point** 7:13 8:9
  34:5
**policy** 14:6
**political** 15:25
  16:3 19:3
**populate** 18:25
**portion** 6:15
  13:14 26:6
**Portland** 1:22
  4:8
**preparation**
  4:19 5:4
**prepare** 17:21
  17:23 19:10
  27:6,12
**prepares** 22:12
**PRESENT** 2:19
**pretty** 6:25 27:9
**prior** 7:8 13:7
**privilege** 30:19
  34:18,20 35:3
  35:21
**privileged** 35:24
**probably** 18:11
  23:19
**Procedure** 1:23
  42:23
**Proceedings** 4:1
  39:9
**process** 24:2
  32:4
**processes** 27:5
**produce** 11:7
**produced** 1:17
  30:9 38:19
**product** 30:20
**production** 29:1
  29:5,20 31:7
  32:1,6 37:20
**professional**
  21:18

**Profit** 3:12
  33:18
**program** 21:15
**properly** 21:24
**protected** 35:9
  35:11
**protection** 36:8
**proved** 41:10
**provider** 27:19
**provisions** 1:25
**PUBLIC** 41:17
**pull** 7:23 22:13
  22:21 23:7
  24:4,12,24
  25:3,23,23,25
  27:15
**pulled** 8:23 23:6
  23:11,15 25:12
  25:21 26:15
  27:21 38:14
**pulling** 25:8
**pulls** 22:3,5,16
  22:18 27:5
**purchased** 20:6
**purpose** 13:10
  19:5
**purposes** 11:18
  11:20,23 12:18
  16:1,3 29:8
  41:11
**pursuant** 1:22
  42:22
**put** 9:17 18:19

**Q**

**quarterly** 13:22
**question** 15:7,9
  15:23 19:24
  23:9 26:10
  29:17 30:7,18
  31:5
**questions** 32:13
  32:18 38:6
**quick** 8:1 24:25

**R**

**R** 2:1

**ran** 8:8 10:10
  26:11
**reached** 34:5
**read** 4:24 5:1
  18:9 21:25
  28:10 38:5
  41:1
**real** 7:25 8:6
  24:25
**really** 12:23
  31:9
**reason** 8:25 9:3
**recall** 33:7
**receipt** 9:14
**receive** 9:10
  11:21 21:13
  37:6,11
**received** 32:23
  33:5,9
**receives** 15:10
  15:25 26:24
**Recess** 31:21
**recognize** 17:12
  17:13 28:11,12
**record** 1:25
  31:18,20 36:14
  36:17 39:7
  42:20 43:10
**records** 4:23 7:3
**REED** 2:9
**refer** 27:24
**reference** 16:23
**referencing** 33:4
**reflect** 10:6
  22:18
**reflects** 10:3
  20:9
**refresh** 4:25 5:2
**refund** 14:8 18:7
  18:11,14
**refunded** 19:16
**regard** 32:1
**regarding** 1:24
  4:6 5:14 35:14
**Registration**
  43:24

regular 15:15
reimburse 21:10
reimbursed
  13:13,18 14:4
  21:16,19
reimbursements
  21:13
related 19:21
  43:6
relative 43:9
releasing 39:2
remember 7:11
remotely 4:5,11
  42:12
remove 22:7
rental 18:12
repairs 22:12
report 8:5,8,17
  8:24 10:10,25
  11:8,14,16,25
  12:4,10,12,16
  12:25 13:5,8
  17:21 19:7,8
  19:12,20 33:22
REPORTED
  42:12
Reporter 1:20
  4:2,10 42:16
Reporter's 3:7
  42:1
reporting 4:11
  43:21
reports 22:12
representation
  18:15,16,21,23
  19:3
representative
  30:2 31:24
request 31:7,8
  32:6 34:9,14
  37:15,19
request-for-pr...
  29:10 30:16
  32:4
requested 35:6
  37:7,10 43:1,3

requests 11:19
  29:1 32:1
  38:19
require 24:5
required 22:25
reserve 24:12
  25:4,8,12
resigned 6:14
  9:14
response 38:19
restrictions 15:4
retrieving 30:21
return 26:9
review 4:19,22
  5:3 7:25 8:2
  28:8 38:7
  42:24
reviewed 17:11
  28:9
right 2:3 5:12
  6:1,10 7:2 17:2
  17:10,11 24:8
  24:9 26:16
  27:6,24 29:15
  34:4 35:7
  36:14,21 37:22
  38:9,18,23
right-hand
  38:11
Road 2:4
rotate 21:24
routine 8:18
  12:17
Rule 42:23,24
Rules 1:22 42:23
run 11:16,25
  12:4

— S —
S 2:1
safe 33:16
safety 21:15
sake 37:3
Salesforce 9:21
  9:25 27:19
saying 25:7,22
  39:2

says 18:1 20:4
  23:23 26:6,12
  33:1 38:11
schedule 22:14
  27:3
screen 17:15
  18:2 25:9
  26:13,17,18
screenshots
  23:13
seal 41:14
search 30:16
  31:6
second 5:22 6:1
  21:22 38:2
see 8:7 9:23 16:4
  20:3,13,23
  21:22,23 23:21
  24:11,24 25:11
  35:2 37:24
  38:23
seeking 35:1
send 9:11 12:20
  37:15
sent 9:12 12:2
  27:2 34:10
serve 11:20
served 29:1
session 11:9,9
shared 13:9,10
sheet 28:13
  33:12
short 31:23
Shorthand 1:20
  42:15
sic 9:11 21:14
side 25:11
sign 24:6
signature 3:6
  40:1 41:1
  42:25
signed 24:3
  29:11
signify 18:22
similar 35:18
sir 6:20 7:17

16:8 17:23
  20:7 23:25
  34:24
skip 28:16
slow 11:11
SMITH 2:9
so-and-so 27:15
some-odd 20:15
somebody 31:3
sorry 7:15 9:7
  12:7 14:9 17:3
  24:18,23 25:25
  26:21 28:23
  30:7 33:17
  37:8,9
sought 37:20
sounds 30:18
Southwest 1:5
  2:7 12:21
  14:20,22 21:10
  21:16,20 22:9
  22:13,17,19,23
  25:6,16 26:12
  26:24 27:3,4
  42:6
speak 5:17 6:6
  11:10 31:25
  32:3
speaking 11:13
  15:6,12
specific 8:25
  9:22
specifically
  17:19 31:25
  33:7 36:4
specifics 37:13
speculating 9:3
spend 16:20
  20:22
spent 15:21
  16:13 17:17
spoke 5:18,21
spoken 5:6
Springfield 2:5
stand 26:19
standards 21:18

start 6:21 7:3
starting 30:19
state 1:21,24 4:7
  37:8 41:7,18
  42:16
stated 1:25 14:5
STATES 1:1
  42:2
stating 9:13
status 8:11
  12:22 13:2
staying 26:4
stenographic
  4:12
Stone 32:19 33:2
  33:5 35:14,25
stores 8:13
straight 14:17
Street 2:15
  43:22
stress 21:17
strike 11:18
  14:10
stuff 35:25
subject 5:14
submitted 22:13
  22:19
subpoena 35:14
subscribed
  41:10 43:16
subsequent 31:8
  32:5
subtractions
  10:7
Suite 2:4,9
sum 14:25
supplies 20:1,1
  20:2
sure 12:24 13:23
  18:18 24:25
  30:1 31:10,13
  38:8
sworn 4:15
  42:19 43:16
system 8:5 9:5,9
  9:15,21 10:1

22:2,11 27:13
27:16

**T**

**take** 17:9 28:8
33:17
**taken** 1:18 31:21
43:8
**talk** 12:8 31:16
**talking** 24:17
34:21 37:18
**tax** 20:5
**team** 27:4
**Telephone** 43:23
**tell** 15:2 24:24
**telling** 27:15
**tells** 8:6 26:12
**testified** 4:15
**testify** 6:7 32:9
**testifying** 29:8
29:10 30:15
**testimony** 32:10
42:20
**Texas** 1:1,21
2:10,16 4:13
42:2,16 43:22
**TFP** 26:18,19
**thank** 11:11
17:6
**thing** 25:1 37:18
**things** 32:10
36:13 37:2
**think** 9:8 11:12
12:23 18:10
21:22 24:8
28:1 29:6,7
30:17 33:16
35:17 36:1,12
38:24
**thinking** 23:8
**three** 7:11,13
26:9
**three-day** 24:12
25:3,8 26:13
26:18
**time** 4:3 6:25
7:10 8:6,23

14:15 18:19
20:9,13,16,17
20:25 21:3,4,8
21:11,15 25:16
26:15 27:18
32:24 33:2,5,9
33:19,20 34:1
43:12
**timing** 34:17
35:5,8
**today** 5:6 6:9
7:16 10:4,6,21
27:17,18 29:25
**today's** 4:2,19
5:4
**told** 27:11
**tonight** 22:4
**top** 18:2,3 20:11
26:5,6 37:14
**topic** 6:6 31:25
32:17
**total** 10:20
33:19
**track** 6:18,22
7:14
**tracked** 7:7
**transcript** 42:19
42:25
**transfer** 15:1
**transmit** 22:9
**transmittals**
22:22 23:7
27:7,12
**transmitted**
22:3,5,17
26:25
**TRANSPORT**
1:6 2:12 42:7
**travel** 18:8
**treasurer** 7:12
9:24 19:18
**trip** 16:10 20:21
26:20
**trips** 25:12
26:22
**true** 41:2 42:20

**trying** 12:23
37:23
**turn** 17:2
**TW** 9:11
**two** 10:10 18:13
24:3,6 33:1
36:2,13 37:2
**TWU** 1:9 3:12
13:20 15:17,19
21:23 23:20
24:19 25:17,19
38:11 42:10

**U**

**understand**
13:23
**understanding**
13:22
**union** 1:6 2:12
6:14 8:17 13:2
21:6,7,9,10
22:9,11 23:3,4
25:10 26:3,18
27:5,16 28:17
29:21 30:8,10
34:5,13 35:1,2
35:6 36:19,22
37:6,10,11,15
38:20 42:7
**union's** 14:18,20
**UNITED** 1:1
42:2
**unmuted** 30:6
**use** 15:5,10,25
16:2 22:2

**V**

**Vague** 24:13
34:2
**verification**
29:12
**view** 12:9,12
**Virginia** 2:5
**VS** 1:4 42:5

**W**

**want** 17:9 26:13

28:7 30:23
31:1,10 35:23
36:16 38:7,15
**wants** 15:11
**Washington**
16:6 19:22
20:21
**Wasn't** 30:1
**way** 7:2,6 10:25
15:9 19:14,23
21:11 22:8
23:9 28:5,25
39:2
**we're** 6:9 20:25
24:25 25:6,6,7
25:8 26:9,17
31:22 36:14
37:18
**we've** 7:6,7 9:25
**went** 10:11
33:23,25
**weren't** 6:5
**wire-transferr...**
14:25
**wired** 14:19
**WISE** 27:22
**withheld** 35:22
**witness** 1:17,21
4:7 5:24 39:3
40:2 42:18,21
**witnesses** 5:11
**women's** 4:24
16:6,12,17
17:18 19:21
23:11,16 25:14
28:18 32:19
33:6,10
**word** 18:16,22
**words** 19:1
**work** 2:3 20:19
21:1,6 26:10
30:20
**WORKERS** 1:6
2:12 42:7
**working** 16:11
16:16,17,17

17:18 19:21
23:16 25:14

**X**

**xx** 43:1

**Y**

**yeah** 11:4 14:19
18:3,4 21:25
22:1 23:10
31:19 33:3
37:10 38:10
**year** 12:14
**yearly** 14:6,8
19:11
**years** 10:10
**Yup** 33:17

**Z**

**zero** 25:12 26:18

**0**

**1**

**1/19/2017** 26:8
26:12
**1/22** 26:12
**1:04** 43:14
**1:52** 1:19 4:3
**10-31-21** 43:21
**14** 8:8
**1500** 2:9
**16** 3:11 27:25
33:1,4
**17** 29:8 31:25
**19th** 26:11

**2**

**2** 3:2 18:12
**20** 5:8,8 28:19
**2009** 7:12
**2013** 7:8
**2014** 10:14,17
**2016** 3:12 17:17
**2017** 3:12 16:6
17:16,18 19:22
22:17 23:11
27:2 32:19

CONFIDENTIAL DEPOSITION OF JOHN PARROTT

Page 51

| | | | | |
|---|---|---|---|---|
| 33:6,10<br>**2018** 8:8 9:2<br>  10:14,18<br>**2020** 1:11,19 4:3<br>  40:3 41:14<br>  42:11 43:17<br>**20th** 26:11<br>**214** 2:16<br>**21st** 17:16 26:11<br>**22160** 2:5<br>**23** 16:24<br>**24** 3:10 7:19,20<br>**25** 3:11 16:24,25<br>**2850** 2:9 | **5:26** 8:8<br>**556** 1:6,9 2:13<br>  3:12 6:18,21<br>  7:1,2 12:20,25<br>  14:1 15:10<br>  16:9 22:16<br>  24:5 25:17,19<br>  28:24 29:2<br>  42:7,10<br>**556's** 29:20<br>**556-6655** 38:12<br>**556-9489** 21:23<br>**556-9490** 23:20<br>  24:19 | 43:23 | | |
| **3**<br>**3** 18:12<br>**3:00** 39:9<br>**3:17-CV-0227...**<br>  1:4 42:5<br>**30** 1:11,19 4:3<br>  40:3 42:11<br>**30-by-108** 20:5<br>**30(b)(6)** 1:9 4:4<br>  42:10<br>**30(e)(1)(A)**<br>  42:23<br>**30(e)(2)** 42:24<br>**31-page** 38:8<br>**3301** 2:15<br>**3469** 4:10 43:20<br>**350** 18:4<br>**38** 3:10 7:18,22<br>  43:24 | **6**<br>**60** 10:23 21:1<br>**600** 2:4<br>**6350** 20:12<br>  33:18<br>**680-4264** 2:10<br>**69** 18:9<br>**6956** 18:10<br><br>**7**<br>**7** 3:10<br>**7015** 43:22<br>**703** 2:5<br>**75201** 2:10<br>**75226** 2:16<br>**75252** 43:22<br>**770-3339** 2:5 | | | |
| **4**<br>**4** 3:4<br>**40** 3:6<br>**400** 20:14,15,20<br>**42** 3:7,12 16:23<br>  17:5,6,7 33:15<br>**43** 38:1,3,3<br>**469** 2:10<br>**486** 33:21,22<br>**490** 24:18<br><br>**5** | **8**<br>**8001** 2:4<br>**8th** 43:16<br><br>**9**<br>**90** 14:15<br>**939-9223** 2:16<br>**9488** 33:15<br>**9489** 22:16<br>**9490** 23:19<br>**9492** 22:16<br>**972-931-1199**<br>  43:23<br>**972-931-2799** | | | |