Case 3:17-cv-02278-X Document 272 Filed 06/20/22 Page 1 of 214 PageID 9128
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X June 16, 2022

1                UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
2
                   CASE NO. 3:17-cv-02245-X
3

4

5   ----------------------------------------x

6   CHARLENE CARTER,

7                         Plaintiff,

8   v.

9   SOUTHWEST AIRLINES CO. and,
    TRANSPORT WORKERS OF AMERICA,
10  LOCAL 556,

11                        Defendants.

12

13  ----------------------------------------x

14

15

16        TRANSCRIPT OF THE PRETRIAL CONFERENCE

17       BEFORE THE HONORABLE BRANTLEY STARR

18            UNITED STATES DISTRICT JUDGE

19

20

21                   Dallas, Texas

22                  June 16, 2022

23                    9:02 a.m.

24

25

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 2 of 214   PageID 9129
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 2

```
 1  A P P E A R A N C E S:

 2

    FOR THE PLAINTIFFS:
 3
         NATIONAL RIGHT TO WORK FOUNDATION INC.
 4           8001 Braddock Street
             Suite 600
 5           Springfield, Virginia  22160
         BY:  MATTHEW B. GILLIAM, ESQ.
 6           mgb@nrtw.org
             (703) 321-8510
 7

 8       PRYOR & BRUCE
             302 North San Jacinto
 9           Rockwall, Texas 75087
         BY:  BOBBY G. PRYOR, ESQ.
10           MATTHEW D. HILL, ESQ.
             bpryor@pryorandbruce.com
11           mhill@pryorandbruce.com

12

13

14

15  FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:

16       REED SMITH, LLP
             2850 North Harwood
17           Suite 1500
             Dallas, Texas  75201
18       BY:  PAULO B. McKEEBY, ESQ.
             BRIAN K. MORRIS, ESQ.
19           pmckeeby@reedsmith.com
             bmorris@reedsmith.com
20

21

22

23

24

25
```

```
 1    For the Defendant Union 556:

 2                    Adam S Greenfield

 3

 4         CLOUTMAN & GREENFIELD, PLLC
                3301 Elm Street
 5              Dallas, TX 75226
           BY:  ADAM S. GREENFIELD, ESQ.
 6              EDWARD B. CLOUTMAN, III, ESQ.
                agreenfield@candglegal.com
 7              crawfish11@prodigy.net

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   COURT REPORTER:   MS. KELLI ANN WILLIS, RPR, CRR, CSR
                       United States Court Reporter
 2                     1100 Commerce Street
                       Room 1528
 3                     Dallas, Texas   75242
                       livenotecrr@gmail.com
 4

 5           Proceedings reported by mechanical

 6   stenography and transcript produced by computer.

 7

 8                         *  *  *  *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 5 of 214   PageID 9132
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 5

```
 1                   - P R O C E E D I N G S -
 2              THE COURT SECURITY OFFICER:  All rise.
 3              THE COURT:  Thank you.  You can be seated.
 4              Okay.  The Court calls Civil Action
 5    317-cv-2278-X.  That is Carter versus Southwest
 6    Airlines and Transport Workers of America, Local 556
 7    for pretrial conference.
 8              Let's do appearances for the record.
 9              MR. GILLIAM:  Matthew Gilliam for
10    Plaintiff, along with Matthew Hill and Bobby Pryor.
11              THE COURT:  Okay.  Thank you.
12              And then how about for Southwest, who do
13    we have here?
14              MR. McKEEBY:  Paulo McKeeby along with
15    Brian Morris for the Defendant Southwest.
16              THE COURT:  Okay.  Thank you.
17              And then how about for Local 556?
18              MR. GREENFIELD:  Adam Greenfield, along
19    with Edward Cloutman, III.
20              THE COURT:  All right.  Thank you.
21              Okay.  So is everyone ready for pretrial
22    conference?
23              I know this monitor is always right in the
24    way.  I wish I was as tall as Matumbo, because then
25    I could see you perfectly.  But I'm short and I
```

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 6 of 214   PageID 9133
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 6

 1   apologize.

 2          That -- that whole system is probably

 3   going to be tilted a little bit when we have the

 4   jury trial, by the way, just because real action

 5   with the jury.  And so we try to tilt it so if you

 6   are at the podium, you can face the jury.

 7          The problem we see today with that and

 8   y'all making eye contact with me is not going to be

 9   a problem during trial.

10          Is everyone ready for pretrial conference?

11          All right.  So let me tell y'all what

12   things I plan on us covering, and then you can tell

13   me if I have left anything out.

14          So I have got 10 things I think we need to

15   talk about.

16          One is scheduling.  Just me confirming

17   that y'all have a special setting.

18          Two is pretrial order.

19          Three is jury charge.  I don't plan

20   talking through the jury charge, but just telling

21   you how I plan to do it.  I will try to send y'all

22   my draft, before trial starts, and then I will tell

23   you how I handle informal charge conferences and

24   formal charge conferences.

25          Four is motions in limine.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 7 of 214   PageID 9134
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 7

1               Five is voir dire.

2               Six is time limits.  No one likes them but

3     I want to walk through it, so I make clear to y'all

4     what the shot clock is, how it works, and what

5     questions y'all have.

6               Seven is exhibit objections.

7               I won't handle all of those today.  I will

8     just -- you know, you can calm your blood pressure,

9     you don't have to talk through one at a time.  But I

10    will tell you my protocol on how I handle them.

11              I handle them pretrial, so it doesn't

12    waste y'all's time clock.  But I handle them the

13    morning of trial before the jury gets here at 8:30.

14              And then I have got witness list

15    objections as the eighth topic to cover.

16              Depo designations and unavailable

17    witnesses is Topic 9.

18              And then any other questions on trial

19    protocol as Topic No. 10.

20              Any topics that we are missing out on,

21    that y'all want to make me aware of?

22              MR. GILLIAM:  Not that I can think of,

23    your Honor.

24              There was one item that we discussed a

25    little bit amongst ourselves, and that's having some

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 8 of 214   PageID 9135
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 8

 1    conversations about --

 2              THE COURT:  Can I ask -- and this is --

 3    everyone is used to standing up to address judges,

 4    but our microphones get real quiet when you do that.

 5              Do you mind -- can we all have an

 6    agreement that y'all can sit down when addressing

 7    me?  I'm not offended in the least, and then I can

 8    hear all of you, if that makes sense.

 9              MR. GILLIAM:  Okay.

10              THE COURT:  Okay.  So y'all can stay

11    seated, and I will slide over here, awkwardly, so I

12    can make eye contact.

13              MR. GILLIAM:  Thank you, your Honor.

14              So yes.  So we had discussed amongst

15    ourselves possibly cleaning up some of the

16    duplicative pages in the exhibits.

17              THE COURT:  Okay.

18              MR. GILLIAM:  So that might fit in well

19    with your Topic No. 7.

20              THE COURT:  Yes.

21              MR. GILLIAM:  The only other item I can

22    think of.

23              THE COURT:  And I will say, just at the

24    outset, I think y'all have been working together

25    very well on exhibits and some of the other issues

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 9 of 214   PageID 9136
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                              Page 9

1   where sometimes lawyers don't work well together.

2             If y'all have a situation where you want

3   to streamline things and make late-breaking changes

4   to exhibits and the list, I'm fine with that because

5   of the professional courtesy you have shown to each

6   other.

7             Does that make sense?

8             So I'm not going to be a jerk and say,

9   Hey, exhibit lists is closed and exhibits are closed

10  when y'all have such good coordination.

11            MR. GILLIAM:  Thank you.

12            THE COURT:  So thank you in advance for

13  your professionalism.  It is refreshing.

14            A lot of lawyers get in here and try to

15  beat the other lawyers over the head, and the jury

16  doesn't appreciate it, honestly.

17            Like I talk to the juries after every

18  case.  Anytime we have had professional lawyers

19  working well together to present a case to the jury,

20  they love it, right?  They want to see the case for

21  what it is, not for what lawyers can be to each

22  other at their worst.

23            Thank you for that at the outset.

24            MR. McKEEBY:  So as a practical matter, if

25  we do, as I suspect to be the case, i have an

 1  amended exhibit list.

 2          Should we just kind of file that based on

 3  the previous protocol or --

 4          THE COURT:  I will let you file it on the

 5  docket without a motion for leave.  All right?  Just

 6  file it.

 7          What I will ask is if when you file one,

 8  can y'all send a Word version to us as well?  The

 9  reason I'm asking for a Word version -- I will cover

10  this a little more when we get to exhibits -- I'm

11  sort of the keeper of exhibits once trial starts,

12  and so I take your Word version, add a few columns,

13  and I say witness admitted with and dated admitted,

14  and then as we admit things one at a time, I put

15  those entries on the Word version of the exhibit

16  list.

17          At the end of trial, I strip off all of

18  the exhibits that weren't admitted, and that is what

19  we send back with the jury.  They will have a paper

20  printout of that.  And then they will have the

21  electronic version of each exhibit.

22          So as I admit it, I also grab your

23  electronic exhibit and throw it on the thumb

24  drive -- that thumb drive goes on the computer.

25          So if I don't have your Word copy, then it

 1   kind of makes it more cumbersome on me.

 2            So file it -- you don't need to file a

 3   motion to leave, but if you could send a Word doc as

 4   well, that would help.

 5            I think y'all have Mr. Frye's email.

 6   Y'all have the Starr orders email.

 7            I will give you Mr. Frye's email.  That is

 8   where you can send it as well.

 9            So it is Kevin_Frye -- normal spelling of

10   Kevin; Frye is F-R-Y-E -- and then it is at

11   txnd.uscourts.gov.

12            He gets plenty of email.  I sign him up

13   for spam all of the time, enlisted him for the

14   Marines, Army, Navy, Air Force.  We need Space

15   Force.  I need to enlist him in the Space Force.

16            Okay.  So email it to Mr. Frye.  And then

17   I will have that copy to use on the bench.

18            Okay.  Well, let's start talking.  At the

19   end, I will just ask you if there is anything we

20   didn't cover, and then we can make sure all of your

21   questions are answered.

22            On scheduling, I know 1 p.m. is a weird

23   start time for July 5th.  So I will tell you why a 1

24   p.m. start.

25            I have got another pretrial conference

 1    that morning for a trial that is going to be right

 2    on your heels.  And so I needed to knock that out in

 3    the morning so we could pick the jury in the

 4    afternoon.

 5              The good news about that is, you have a

 6    special setting.  There is no other criminal case or

 7    civil case I have that will knock you off the

 8    July 5th.  There is also no other case in the

 9    courthouse that could knock you off of July 5th.

10              We do criminal cases first, oldest

11    indictments first.  And so right now there is

12    nothing that can knock you off of July 5th.  So for

13    witness planning purposes, that is your date.  We

14    are going to go then.

15              That is the one benefit to me that COVID

16    has shown us, is I like special settings.  And that

17    gives everyone greater peace and comfort, and it

18    let's me prep for the case better than just a cattle

19    call that we have got a three-week docket and who

20    knows who we will call.

21              So July 5th is our special setting.

22              Pretrial order.

23              So I have been through your pretrial

24    order.  There is only one question I have about it,

25    and it really gets to punitive damages for an RLA

 1  claim.

 2          The reason I'm asking that is because I

 3  know from the live complaint, the Fourth Amended

 4  Complaint, there was a demand for punitive damages

 5  from Title VII.  And I think we are all on the same

 6  page that punitive damages are recoverable if a

 7  Title VII case meets the legal test.

 8          I know there is a disputed question as to

 9  legally whether or not you can get punitive damages

10  on an RLA case, but I did not see a request in the

11  Fourth Amended Complaint for punitive damages for an

12  RLA claim.

13          So my question is -- I know in the

14  pretrial order we've got a reference to that being a

15  contested issue of Law No. 8 from Carter.

16          I know in Carter's submission of a

17  proposed jury questions, we've got that in there,

18  punitive damages tying back to RLA.

19          So I guess my first question is, are you

20  trying to get it?  And then I will ask, do y'all

21  consent to it?  Because you can try things by

22  consent.  And if we don't do that, then I need to

23  figure out some other questions.

24          So the first question for Team Carter is,

25  are you seeking punitives under the RLA claims?

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 14 of 214   PageID 9141
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                           Page 14

1              MR. GILLIAM:  Yes, your Honor, we are.

2              We are seeking punitive damages under the

3    precedent that was set in the Seventh Circuit case

4    of Lebeau.

5              There is another case that supports the

6    punitive damages theory out of the -- out of the one

7    of the New York districts.  That is Riley.  We cited

8    to both of those.

9              Lebeau also cites to many cases in other

10   circuits where punitive damages have been awarded

11   for an RLA claim.

12             And then, finally, I would say there is a

13   Fifth Circuit case that we cited to you in our

14   briefs that has awarded, they call it penalty A,

15   akin to punitive damages.

16             And, again, we have cited to that case in

17   our brief as well.

18             THE COURT:  And so I will -- thank you for

19   your answer.  Let me say one thing right quick.

20             Today, no matter how far get on my

21   questions on punitives and RLA, I will never get to

22   the merits of that.

23             I think that is something that we have to

24   talk about at the informal charge conference, and

25   then I will make the final decision at the formal

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 15 of 214   PageID 9142
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 15

1  charge conference.

2          The reason I'm asking it today is for the

3  limited purpose of the pretrial order.  If I sign

4  it, it replaces the pleadings.

5          And my concern is, I'm replacing a Fourth

6  Amended Complaint that does not seek punitives for

7  RLA with a pretrial order that arguably does, based

8  on contested issue of Law No. 8 from Carter.

9          So before I do that, I'm trying to figure

10  out just the procedural question, not the merits

11  question of are they recoverable.

12          Okay.  So they want them.  So now my

13  question for Southwest and 556 is, do you agree to

14  try them by consent?

15          If not, I have other procedural questions

16  I need to ask.

17          MR. McKEEBY:  No.

18          THE COURT:  Okay.  I figured that was your

19  answer.  So -- now, let me come back.

20          So basically my view is that, the pretrial

21  order replaces pleadings.  So you are trying to

22  amend your pleadings on the eve of trial.

23          So now we have to figure out good cause,

24  is there good cause.  If there is, is there

25  prejudice to the other side.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 16 of 214   PageID 9143
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                           Page 16

1          And so my question is, what is the good
2  cause for not including this in the Fourth Amended
3  Complaint but now including it in the pretrial
4  order?
5          MR. GILLIAM:  Your Honor, I know that
6  we -- the punitive damages provision in the Fourth
7  Amended Complaint did specifically mention Title
8  VII.
9          There was also another provision that said
10  we seek other relief that is warranted under the
11  case.
12         And again, we think that this is a case
13  where protected activity under the Railway Labor Act
14  should be in fact protected.
15         And when you have an employer and a union
16  that turn on an employee, then there needs to be
17  punitive damages awarded in order to deter future
18  conduct of that nature.
19         THE COURT:  Understood.
20         Is the Seventh Circuit case you cited, did
21  that come up before or after the Fourth Amended
22  Complaint?
23         MR. GILLIAM:  That came out before.
24         THE COURT:  Do you recall?
25         Okay.  So let me hear argument on good

1   cause from Southwest or 556.  I don't care who goes

2   first.

3              MR. McKEEBY:  I will go first.

4              I don't have too much interest in it today

5   rather than it wasn't in the complaint.

6              Frankly, I don't think it is something

7   that, punitive damages, they are entitled to.

8              The Lebeau case and the other cases that

9   do recognize a claim for punitive damages are in the

10  context where there is no Collective Bargaining

11  Agreement or union in place.

12             And there is another line of cases, when

13  those things do exist, there is a union in place,

14  where the Courts have fairly unanimously said the

15  punitive damages and compensatory damages, by the

16  way, are not available.

17             So I actually thought that is maybe

18  something that warrants a pretrial -- a pretrial

19  brief.

20             I know we said we didn't need one in our

21  pretrial order.  But thinking through that issue, I

22  might suggest that we revisit that.

23             But to the extent that the Court finds

24  good cause with respect to punitives, but I think it

25  is also applicable to compensatory under the RLA, at

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 18 of 214   PageID 9145
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                              Page 18

1  least we are in agreement, as the Court observed

2  with respect to Title VII, but not so with respect

3  to the RLA.

4          And, again, I construed that the omission

5  as acknowledgement that they weren't legally

6  entitled to it and so we would oppose their request

7  to effectively amend the pleading.

8          THE COURT:  Understood.

9          So here is what I will do.  I'm not going

10  to reach the merits yet.  I haven't delved into the

11  merits.

12          But what I will say is, I get that you are

13  not trying it by consent.

14          When it comes to the two elements what I

15  would look at for procedurally, can they add that

16  request at this point in time.

17          I'm going to say, I don't think there

18  would be prejudice to the defendants but I don't

19  think there is good cause.

20          I'm just saying this to be fully

21  transparent with y'all.  I don't try to rig outcomes

22  and steer outcomes.  So I'm just trying to put all

23  my cards on the table.

24          I don't think there is prejudice because

25  you are already seeking punitives in Title VII,

1   right?  And so all of that evidence is coming in

2   Title VII.

3            They have been on notice of punitives for

4   a long time.

5            Is it Title VII and RLA?  I don't know

6   that it matters that much from a prejudice stand

7   point.

8            Where I do think it matters is good cause.

9   I think if the Seventh Circuit case had come out as

10  a case after the Fourth Amended Complaint, then we'd

11  have a situation where it is changed circumstances.

12           And I would absolutely say, well, you

13  weren't really on notice at the time.  The text of

14  the RLA was not matching up to the Title VII text.

15  So we weren't really on notice from the text.  Now

16  the court says -- has implied it in.

17           But I don't think we are there in that

18  situation.  So I will just say, I think there is no

19  good cause to amend the pleadings at this stage.

20           What I plan on doing then is, I'm just

21  going to hand mark through No. 8, before I sign the

22  order.

23           If I sign the order without hand marking

24  through No. 8, then I have broaden the scope of the

25  pretrial order beyond the scope of the Fourth

1   Amended Complaint in a way where you aren't

2   consenting to it and there is no good cause for it.

3              But I will understand y'all disagree with

4   me on that, and I get that.  I'm just telling you, I

5   think there is no prejudice, but there is also no

6   good cause.

7              MR. GREENFIELD:  Your Honor, if I may.

8   Just on food for thought.

9              THE COURT:  Yes.  Sorry.  I couldn't see

10  you.

11             MR. GREENFIELD:  That is all right.  I

12  have been pretty quiet as to this point.

13             As food for thought on the prejudice

14  matter, Title VII does have damage caps.  So I think

15  that could potentially factor into that.

16             THE COURT:  Okay.  All right.  Well, thank

17  you for clarifying that.

18             What I will say is, I don't think there is

19  procedural prejudice --

20             MR. GREENFIELD:  Sure.

21             THE COURT:  -- from a discovery

22  standpoint.  But I will save back because you

23  brought up the damage cap in Title VII punitives,

24  but there maybe substantive prejudice by a higher

25  punitive damage award under RLA than under Title

1   VII.

2           Okay.  So with that on the pretrial order,

3   later on today, I will cross through Carter

4   contested issue No. 8 and then I will sign it.  That

5   will effectively merge the pleadings into your

6   pretrial order.

7           Okay.  So I will say on stipulated facts,

8   thank y'all for putting in the stipulated facts that

9   you did.  That helps tell the story of the case.

10          What I do on stipulated facts is, when we

11  start off, after we have selected the jury, sworn

12  them in and after y'all have done your opening

13  arguments, I then read the stipulated facts and say

14  the lawyers have worked hard to get together and say

15  what they agree in this case.  They hear that, and

16  then we have Carter call the first witness.

17          Those stipulated facts also show back up

18  in the jury charge, because y'all have agreed to

19  them.  I just put them in the jury charge as a list

20  there.  So that's the two places they will see

21  stipulated facts.  They will hear it from me after

22  opening and they will see it in the jury charge.

23          Any questions on pretrial order?

24          Okay.  So jury charge is the next thing we

25  should talk about.

1            And I told y'all, I'm not going to give

2   y'all rulings today on a charge.  But I want to show

3   y'all a roadmap of how we handle them.

4            I have got your proposed versions, and

5   thank you for flagging the points of disagreement

6   that y'all have.

7            I'm going to work on coming up between now

8   and the first day of trial, my first draft of the

9   jury charge.  And then we will email that out to

10  y'all, so you have the benefit of it before we start

11  picking our jury.

12           You can look through it, see what topics

13  you want to argue me off of.  And then we will have

14  an informal charge conference at some point during

15  trial.  That is off the record.  Right?  The jury

16  will obviously be out of the room.

17           But then we will have it off the record,

18  then -- that is your chance to lobby me, is the

19  informal charge conference.  We may get here early

20  one day or stay late one day.

21           Or maybe we had a witness issue where the

22  jury is out at 4:30 and it is a great time to talk

23  about the charge.

24           So I try to give my draft early, so y'all

25  can think about it and talk to me at any point

1   during trial, when we would have an informal charge

2   conference.

3              A formal charge conference, obviously, it

4   will be on the record, still outside the presence of

5   the jury but after all of the evidence is closed.

6   And so we can handle any motions for directed

7   verdict at that point because the jury is out of the

8   room, and also have our last chance to talk about

9   the jury charge.

10             What I will say is, like we usually

11  don't -- because the timing is more fixed for the

12  formal charge conference.  Right?  We've got to wait

13  until all of the evidence is in.

14             We usually don't luck out and it is just

15  at a break where the jury is gone for the night or

16  they are out at lunch.  So the jury is usually back

17  in their tiny, cramped deliberation room, unhappy

18  with us for staying out here.

19             And so that is why I try to have an

20  informal charge conference where you can persuade

21  me.

22             The formal charge conference is more about

23  preserving than persuading, if that makes sense.

24             The jury is sitting back there.  They are

25  cramped.  I will tell my view of juries and why I

1   perhaps zealously guard their time.

2              This is true of sidebars.  This is true of

3   anything we do that has the jury in the deliberation

4   room.

5              Back when it was early England, the king

6   or queen would decide the cases, right?

7              And eventually we replaced that and got

8   courts in England.

9              And here in America, we said in the first

10  three words of the Constitution, it is "We the

11  People."

12             And clarified in the Fifth Amendment for

13  criminal trial, the jury is the People.

14             And the Seventh Amendment, civil trials,

15  like we are having here, the jury is "We the

16  People."

17             So when we lock up the sovereign in that

18  dingy little room, we do it for three hours for a

19  formal change conference, I feel like I'm not doing

20  my job as a judge if I let that happen.

21             So I want you to have your full measure of

22  time to persuade me, but that should happen in an

23  informal charge conference where the jury is out,

24  right?  Where they haven't come in to the courthouse

25  and they are just waiting on us.

 1              So I try to protect their time.

 2              But you will see that when we talk about

 3   exhibits and my protocol for trying to minimize the

 4   amount of time that we are huddled at a sidebar and

 5   they are wondering what on earth we are doing and

 6   why we are wasting their time.

 7              Okay.  So that is the jury charge and

 8   informal charge conference.

 9              I'm not sure when it will happen but that

10   is the time to persuade.

11              Formal charge conference, we do know when

12   it will happen, and that is the time to preserve.

13              Any questions on jury charge and that

14   protocol?

15              MR. GILLIAM:  No.  I will save this for a

16   later item.

17              THE COURT:  Okay.  That is fine.

18              We have plenty of time to address any

19   items of whatever order y'all prefer.

20              If y'all have questions that pop up, feel

21   free to ask them whenever.

22              Okay.  Motion in limines.

23              I sent out a ruling on most of them

24   yesterday, but there are a number that I saved back

25   because I wanted to hear what y'all's thoughts were

1   on them before I issue a ruling.

2             What I will try to do is, even if I give

3   you a ruling on some of those today, I will still

4   try to push out a document in writing.

5             And if I can do it, I will push out an

6   amended ruling on motions in limine.

7             Because during the thick of trial, none of

8   us remember exactly what every limine ruling was.

9   And if we have them all on one document at your

10  fingertips, you can control F, search for it and

11  remember what the ruling was.

12            So I will try to do that for y'all's

13  benefit and mine.

14            But on the ones I saved back for talking

15  about today, I think I have got Carter motion in

16  limine number 12, as the first one that I withheld a

17  ruling on.

18            And so I will just recap what that one was

19  and then hear from y'all.

20            So Carter 12 was Carter seeking to

21  prohibit evidence, statement, argument, or testimony

22  regarding Local 556's representation of Carter after

23  President Stone reported her to Southwest for

24  discipline.

25            So it looks like both the Union and

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 27 of 214   PageID 9154
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 27

1  Southwest oppose it.  But everyone, including Carter

2  agrees, "That Local 556 did not discriminate nor

3  improperly represent her in any way at either the

4  fact finding meeting or the step two grievance."

5          So this one -- I mean, I think there is

6  some room for agreement of the parties, but not

7  total agreement.

8          I'm trying to figure out where that line

9  is, and if we should have like an extra stipulation

10 that is at the end of our stipulations that we all

11 agree that this conduct was not a Union violation or

12 not.

13         I'm just trying to figure out where we are

14 in terms of our agreement or disagreement.

15         Should I hear from Carter first and then

16 hear what -- hear what Local 556 and Southwest say?

17         MR. GILLIAM:  Sure, your Honor.

18         I think that, as the Court recognized in

19 its ruling yesterday, that really everybody agrees

20 that representation after President Stone reported

21 is not something that is contested by our duty of

22 fair representation or RLA or Title VII claims

23 against the Union.

24         We -- our claim is that it is President

25 Stone, as the representative official of Local 556

 1  turning in Ms. Carter, that is the crux of the

 2  violation, and nothing that the Union did after the

 3  fact can really change that.

 4          THE COURT:  That makes sense.

 5          So are Southwest and the Union arguing

 6  there are things after the fact that might have been

 7  Union violations of fair representations?  Or it

 8  seemed like people were in backwards positions a

 9  little bit.

10          But is there any part of what he just said

11  that is a point of disagreement from Southwest or

12  the Union?

13          MR. McKEEBY:  I will speak briefly,

14  because I think this is more of a Union issue.

15          But no, with respect to Southwest, other

16  than I think from Southwest's perspective, the

17  fairness of the overall process, the grievance

18  process, the hearings that -- and the fact finding

19  that occurred during that process at which the Union

20  was in attendance with Ms. Carter show the fairness

21  of the process, and that is something I would like

22  to be able to explain to the jury.  I think that is

23  relevant.

24          And so my questions would simply be

25  limited to the fact of Union representation at those

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 29 of 214   PageID 9156
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 29

1  proceedings to show the fairness of those

2  proceedings as opposed to getting into any other

3  detail, quite frankly.

4          THE COURT:  Okay.  I think I understand

5  the position.

6          Can I hear from the Union, Mr. Greenfield?

7          MR. GREENFIELD:  Yes, your Honor.

8          The evidence of the Union's efforts to

9  help Ms. Carter get her job back is directly related

10 to evidence that we fairly represented Ms. Carter

11 throughout that process and the lengths to which we

12 did.

13         From an initial standpoint, we would

14 contend that President Stone, as an employee of

15 Southwest, never relinquishes any of her rights to

16 be free from harassment and discrimination in the

17 workplace.

18         From that point, what the Union did is

19 almost -- there is internal and external checks and

20 balances.  So even if a Union executive board

21 member, or the president, in this example, were to

22 turn in Ms. Carter for her alleged harassing

23 behavior, the Union then comes on the back end to

24 represent Ms. Carter and ultimately got her job

25 offered back to her.

1          So we think the actions that happened

2    afterward will go directly to the duty of fair

3    representation claim.

4          THE COURT:  Understood.

5          Well, so my plan on this is to, in

6    writing, say that I will deny this.

7          I get your point now, that it is telling

8    the rest of the story, right?  And now it is -- it

9    is also a point that they will argue to the jury.

10          It doesn't matter what good you could have

11    done after the fact, if you did something bad, that

12    could have been a violation of fair representation.

13          But I don't think I will handcuff you from

14    telling that story that what you did was good after

15    Stone turned in Carter.

16          But, obviously, you can also say that no

17    amount of good after Stone turned in Carter could

18    undo the fact that Stone turned in Carter.

19          So I will deny that, but I think y'all

20    know that that is fair game for the jury to talk

21    about with regard to both of your sides of the

22    issue.

23          The next one I saved back was Carter

24    Limine 20.

25          So Carter seeks to prohibit any evidence,

1  statement, argument, or testimony regarding any

2  person's specific support for Hillary Clinton or

3  Donald Trump.

4          So the notes I have are, Carter saying it

5  is irrelevant and prejudicial; Southwest isn't

6  opposed, but Local 556 is partially opposed because

7  the objection might encompass information that there

8  was in plaintiff's communications to Audrey Stone.

9          So I guess my question would be, I get

10  that is sort of the area of dispute, right?

11          If it was in an exhibit, are we carving

12  that out in a motion in limine ruling?

13          I guess my first question is for the

14  Union.  Mr. Greenfield, do we know -- are there

15  specific exhibits we are talking about?  Because

16  this also goes to voir dire.  I know there are some

17  proposed voir dire questions on Clinton/Trump.

18          So I'm trying to figure out what is the

19  universe.  My general feeling is, like y'all's is,

20  to say that is a global matter, probably no.  But if

21  it is in communications and those communications

22  were what led to the lawsuit here, then I'm not

23  inclined to go and redact those communications.

24          So can you tell me and maybe illuminate

25  more for me the communications issues?

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 32 of 214   PageID 9159
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 32

1          MR. GREENFIELD:  Yes, your Honor.  There

2    were voluminous communications from Ms. Carter to

3    President Stone during a three-, four-, five-year

4    time period.  That included communications regarding

5    President Trump, et cetera.

6          But yes, globally we would agree with the

7    Court and plaintiffs that those topics shouldn't be

8    discussed or shouldn't be addressed.

9          But because they are in the communications

10   themselves, we shouldn't be parsing those out from

11   the jury.

12         THE COURT:  Do you know if any of those

13   communications are in trial exhibits, Mr.

14   Greenfield?

15         MR. GREENFIELD:  Yes.  Yes, they are.

16         THE COURT:  Let me hear from -- well,

17   anything to add from Southwest?

18         MR. McKEEBY:  No.

19         THE COURT:  Okay.  So Carter, what is the

20   response on that?

21         Trial exhibits is my key concern.

22         MR. GILLIAM:  Yes.  If we knew

23   specifically which trial exhibits they were

24   objecting to, maybe there is a way to redact the

25   references we all agree on, the Trump and Clinton

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 33 of 214   PageID 9160
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 33

 1  references.

 2           But maybe there is other speech, Union

 3  opposition speech that we would agree to leave

 4  unredacted.

 5           I don't know if that would resolve the

 6  issue for --

 7           THE COURT:  Here is my plan on this one,

 8  and without -- I think what I can say is, I'm not

 9  intending to redact communications that led up to

10  this lawsuit, if that makes sense.

11           So the test is always relevance and

12  prejudice, right?  I hear there is some relevance,

13  right?  Because obviously Southwest needed to know

14  what was in the communications to make a decision on

15  course of action with her employment.

16           Prejudicial, are they overly prejudicial?

17  I don't know that they are overly prejudicial

18  because she was the speaker herself, right?  There

19  are times, usually, when I find prejudice, it is

20  someone else that's injecting the prejudice.

21           But if it is the person bringing it

22  themselves, I would be hard pressed to pull out from

23  the jury's view what Southwest was viewing in making

24  a termination decision.

25           So I think, is there prejudice?  Well,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 34 of 214   PageID 9161
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                          Page 34

1  maybe, but I don't think it is undue prejudice.  So

2  I'm not inclined to go that far.

3           What I will say is, I may grant this in

4  part and just say, if there are gratuitous questions

5  of witnesses, right?  If we make this case more

6  about politics than the underlying communications

7  did, that is where I do have a problem.  Because

8  then that would be you injecting prejudice into the

9  situation.  Does that make sense?

10          So I think the jury can see what all

11  Southwest saw from her.  But if we are just asking

12  questions, you think that person loved Donald Trump

13  and it is not anchored to an exhibit or a specific

14  statement that Carter told that person, I think that

15  is where we are straying into territory that is

16  undue prejudice.

17          So I plan on granting this one in part and

18  saying in exhibits or specific statements that

19  Carter had made verbally to somebody, that that area

20  is fine to talk about because it is words from

21  Carter's mouth that Southwest Airlines had under

22  consideration when making employment decisions.

23          But if it is a gratuitous statement

24  otherwise, that is a bridge too far for me.  That is

25  injecting things into the trial that are overly

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 35 of 214   PageID 9162
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 35

1    prejudicial.

2             Okay.  So that my ruling on 20.

3             Again, I will give that in the writing in

4    the next couple of days.

5             I have Carter Limine 25 is next.

6             So Carter is seeking to prohibit any

7    attempt to request plaintiff's counsel to produce

8    documents, stipulate to any fact or any make any

9    agreement in the presence of the jury.  Southwest

10   was unopposed.  556 doesn't know exactly what this

11   means.

12            So I guess I will -- let me just say, I

13   have seen this play out in trial.  Sometimes before,

14   can't we just agree.

15            Let me say this:  If you have any

16   situation like that, bring it to a sidebar.  Your

17   Honor, sidebar.  And if you want the other side to

18   agree to anything, for streamlining trial, let's

19   talk about it at sidebar.

20            Later on, I will tell you losers of

21   sidebar get the time tagged against them for the

22   sidebar.  But there are situations where, because of

23   professionalism, you helped streamline something for

24   the jury at a sidebar, and I count that time as

25   against me, not against either of you.  Does that

1   make sense?

2            So if you have a sidebar for a noble, like

3   reaching an agreement to streamline an issue for the

4   jury, don't worry about that time getting awarded

5   against anybody.  I'm a fair judge.  I'm not trying

6   to label someone a bad actor and always tag them

7   with the time.

8            Is there any question with regard to my

9   view of that?  That I will grant the limine in part

10  and just say, it is not that you can't talk about

11  it, just talk about it in front of me instead of the

12  jury.  Because it is really not a jury issue at that

13  point.

14            Okay.  Limine No. 29 is the next one I

15  held back from Carter.

16            So this is Carter seeking to prohibit

17  evidence, statement or argument, for the plaintiff

18  received contributions from family, friends, or her

19  husband.  Southwest is unopposed.  556 opposes on

20  the basis of mitigation of damages.

21            So mitigation obviously applies to the

22  next one, too, that I held back, Limine No. 30.  So

23  I'll just read it and then maybe we can talk about

24  both at once.

25            Limine 30 is prohibiting references to

1   collateral sources of employee benefits that would

2   have been provided by Southwest but for Carter's

3   termination.

4          And so also same issue as before,

5   Southwest unopposed; 556 opposes on mitigation of

6   damages.

7          So can I hear argument from 556?

8          I understand the mitigation argument.

9   What I haven't seen is a case where mitigation has

10  gone down to friend and family contributions.

11         I have seen cases where mitigation

12  involved other employer benefits that could have

13  been attained.

14         So I guess my question is in line drawing,

15  can you help me -- I understand the conceptual

16  argument for mitigation.  I haven't seen it play out

17  in a case where friends or family helping someone

18  get by in the meantime is a mitigation of damages

19  point.

20         Can you help eliminate that for me?

21         MR. GREENFIELD:  Yes, your Honor.

22         I am not sure I have seen it play out

23  myself either.

24         But from a theoretical standpoint, if the

25  testimony was to come out or evidence was to come

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 38 of 214   PageID 9165
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 38

1  out that Ms. Carter had received ample funds from a

2  family member or what have you, to -- which would

3  then allow her to not have to work or make efforts

4  to work, et cetera, to get back to work, then that

5  should be considered by the jury, as to potentially

6  why maybe her efforts to get back to work weren't as

7  robust as they should have been.

8              THE COURT:  Understood.

9              Can I hear Carter's response to that and

10 also, obviously, at the same time, I'm trying to

11 consider the Southwest benefits piece.

12             Let me ask Southwest first, before we ask

13 Carter, can you illuminate for me what benefits we

14 are talking about that she could have obtained while

15 still being at Southwest?

16             I know it is a Union argument, but it is

17 peculiarly within Southwest's knowledge probably.

18 So I'm just trying to figure out what we are talking

19 about.

20             MR. McKEEBY:  I suspect that it is

21 medical, dental, kind of your traditional panoply of

22 employee benefits.  I'm not sure about retirement

23 and that type of thing.  But I imagine it is medical

24 and --

25             THE COURT:  Incidentals.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 39 of 214   PageID 9166
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                          Page 39

1            MR. McKEEBY:  -- incidentals, yes.

2            THE COURT:  Got it.

3            Okay.  So Carter, I would like to hear a

4    response on other benefits from Southwest and family

5    and friends contributing.

6            MR. GILLIAM:  Okay.

7            For the family and friends, that is not

8    evidence that goes towards mitigation.  If you are

9    talking about evidence of other earnings from other

10   work, sure, that goes to mitigation.

11           But, you know, things she's received from

12   her husband, from friends, that should be excluded

13   just because it is not related to the issue of

14   mitigation.

15           As far as the collateral sources where we

16   were really going with that is, for instance, if

17   Ms. Carter's husband had put her on his health

18   insurance plan, or she received unemployment or

19   pension benefits, Southwest wouldn't get a windfall

20   from that.  That would not go towards mitigation.

21           THE COURT:  All right.

22           MR. GILLIAM:  For that, I think we rely on

23   a case out of the Fifth Circuit called Phillips v.

24   Westmoore.

25           THE COURT:  Phillips v. Westmoore?

```
 1              MR. McKEEBY:  Yeah, or Western Company.
 2              I can give you the cite, if you need it.
 3              THE COURT:  That would be great, if you
 4   could.
 5              MR. GILLIAM:  953 F.2d 923, 1992 case out
 6   of the Fifth Circuit.
 7              MR. GREENFIELD:  Could you repeat that for
 8   me?
 9              MR. GILLIAM:  Sure.  It's 953 F.2d 923.
10              MR. GREENFIELD:  Thank you.
11              THE COURT:  Thank you.
12              So I keep taking Limine 30 under
13   advisement.
14              On Limine 29, what I'm going to say is,
15   I'm going to deny that one.
16              My thought is that I do think friends and
17   family are in a quintessentially unique category,
18   unlike an employer.  But that is also why I'm not
19   out of hand, you know, shutting down the notion of
20   Southwest.
21              I do need to figure out how incidental
22   benefits are treated.  But if it is Southwest -- I,
23   mean, I've had a case when I was a lawyer where we
24   brought up a retirement account.  And so I thought
25   that was mitigation of damages.
```

```
 1              And so I think employer benefits might or
 2    might not be, depending on how they are structured.
 3    So I will take a look at the windfall issue and take
 4    a look at your case.  But I do think when it is
 5    friends and family --
 6              And I will just say, I think this is an
 7    issue that is going to become more and more
 8    prevalent with GoFundMe accounts.  Because GoFundMe
 9    is not your employer, but getting money, it is a
10    windfall.
11              In my view, how I discreetly view this is
12    perhaps different than a GoFundMe even.
13              Although with friends and family, you
14    know, if Carter were to obtain a jury verdict,
15    Carter should pay her friends and family back,
16    right?  That is sort of the normal expectation with
17    friends and family.
18              And with a GoFundMe account, I don't even
19    know if there is a mechanism, if it is a crowd
20    funding, if a person gets a verdict, to get that
21    money back to them.
22              And so if it is money that in good
23    conscious should be returned and is returnable under
24    friends and family, then in my mind it almost seems
25    more like a loan than a windfall.
```

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 42 of 214   PageID 9169
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                 June 16, 2022                    Page 42

1              And if it is a crowd funding situation,

2      with no recoupment, then it seems like a windfall.

3              So the courts haven't spoken to GoFundMes

4      yet, but I'm not sure how that is good to play out.

5      But that is how I view it in my mind as different.

6              So I will research more on Limine No. 30

7      and get y'all a ruling back in writing.

8              Southwest, we had Limine 1 on Southwest,

9      where Southwest was asking to limit testimony and

10     evidence related to treatment of other employees.

11             I think the Southwest argument was, we

12     should do so because evidence regarding an

13     employer's treatment of a non-party employee is only

14     relevant if they are a comparator.

15             And there are no comparators in this case.

16     Carter was saying this was not about pretext and

17     comparators, it is about Union knowledge of

18     employees and disciplining employees and their

19     overall effort to discipline recall supporters.

20             So I guess this, what started off as a

21     fight between you two, is not really a fight between

22     you two.  So I would like to hear arguments on this.

23             I will just say from reading it -- I will

24     put this in my ruling, but in reading it, my

25     question is, should it come in but for the limited

 1  purpose of evidence with regard to the Union and not

 2  Southwest?  Right?  Because I can admit evidence

 3  with a limiting instruction.

 4          And so that is my initial read, but let me

 5  get y'all's thoughts on the situation where it

 6  stands now, that it is really almost more of a Union

 7  issue than a Southwest issue.

 8          MR. GILLIAM:  That is correct, your Honor.

 9          We are seeking that evidence, to include

10  that evidence because we want to be able to

11  demonstrate that the Union and its representatives

12  were trying to target other recall supporters that

13  they were putting constant pressure on Southwest,

14  not that Southwest -- not how it specifically

15  reacted to it, but that the Union was trying to make

16  a concerted effort right around the same time that

17  Ms. Carter was fired to -- to cause other recall

18  supporters harm.

19          We think that this employee discipline

20  evidence is also very important to showing that

21  Ms. Stone was acting within her official capacity,

22  the grievances she handled in the past, for

23  employers like Brian Talbert, who called for the

24  public execution of the Union opponents, that

25  Ms. Stone was willing to assist Mr. Talbert in his

1   grievance, but then said she felt threatened by

2   Ms. Carter's statements.  So I think it is relevant

3   to that as well.

4           And again, going back a little bit more on

5   the official capacity issue, there is a lot of

6   history of Ms. Stone taking employee grievances to

7   Southwest managers.  That was something she did.

8   She took disciplinary issues directly to many of

9   Southwest's upper level managers, vice presidents,

10  directors of labor relations.

11          And so employee discipline is critical to

12  defining the scope of Ms. Stone's scope of capacity.

13          And I would also say that, you know, if

14  the Union wants to put on evidence of its

15  representation after Stone fired Carter, what is

16  good for the goose is good for the gander.

17          Basically, how the Union was also treating

18  all of these other recall supporters is relevant to

19  her RLA and DFR claims.

20          Each time a Union official turns in a

21  represented employee, it is presumed under Caravan

22  Knight and a long line of cases that that violates

23  the duty of fair representation.

24          So it is very important evidence to

25  showing whether the Union violated its duty of fair

 1  representation when it reported Ms. Carter.

 2            THE COURT:  Thank you.

 3            Can I hear from the Union first and then

 4  Southwest?

 5            MR. GREENFIELD:  Yes, your Honor.

 6            First and foremost, I would like to

 7  disagree with Mr. Gilliam's characterization of the

 8  case law he just cited.  I believe that is

 9  incorrect.

10            I think potentially further briefing on

11  this might be appropriate just because now it has

12  turned from an argument between Southwest and the

13  plaintiffs to an argument on whether certain

14  information should come on between these two

15  parties.

16            I think in regard to similarly-situated

17  employees, et cetera, I think that the argument

18  still similarly tracks.  What is the nature of these

19  other individuals that they are seeking to bring

20  forward?  Are they similarly -- are the situations

21  similar between who turned in these employees?  Were

22  they board members?  Were they Union objectors?

23  Were they Union members?  Where these people fall in

24  these different buckets and categories, I think,

25  affects whether the information is relevant for the

1   jury to hear.

2              THE COURT:  Understood.

3              So what I will ask on this one is, I am

4   going to ask for more briefing because of the

5   original two-sided nature of the fight has now

6   turned into a little bit different two-sided fight.

7              So I will say that I agree with

8   Southwest's initial position that because we don't

9   have a designated comparator.  I don't think this

10  information should come in as to Southwest.

11             But now the question is, should it be kept

12  out as to the Union as well because of the

13  situations being sufficiently different that it is

14  marginal relevance and undue prejudice.

15             So what I'm going to do is say that you,

16  Mr. Greenfield, can file a belated motion in limine

17  addressing the topics you would like to exclude,

18  right?  So I think it is now your limine.  You are

19  taking the baton from Southwest because I'm going to

20  rule only as it pertains to Southwest and say this

21  information does need to stay out as to Southwest

22  because of the lack of a co-comparator -- lack of a

23  comparator.

24             But the separate question is, Union, can

25  it come in with a limiting instruction?  Are there

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 47 of 214   PageID 9174
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                        Page 47

1  some examples that are so far afield that they just

2  can't come in?

3              What I would like is, if you could turn in

4  a written document -- maybe let's keep it to six

5  pages or less, and by Monday at 5:00.

6              And then I would like to hear any response

7  from Carter Wednesday at 5:00.  And the same page

8  limits, six pages or less.

9              And then I will go ahead, when I push out

10 my updated ruling, I will say I'm granting this

11 limine as to Southwest, not citing any issues for

12 the Union until I see further briefing.

13             Okay.  So I think that is all that I had

14 covered on limine points.

15             Is there any other limine point that we

16 need to talk through, that anyone knows about?

17             MR. McKEEBY:  Your Honor, on that last

18 point, I mean, I guess it depends on your ultimate

19 ruling, but Southwest's concern is -- goes to the --

20 what -- if the evidence comes in -- and you tell me

21 if we should just table this.  But if the evidence

22 comes in, it should be limited to the report by the

23 Union of the conduct.

24             What I want to avoid is evidence of, you

25 know, here is a Southwest flight attendant in

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 48 of 214   PageID 9175
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         June 16, 2022                          Page 48

 1   California who posted a video threatening a

 2   politician.  And then Southwest having to explain

 3   how it handled that situation, if we can.

 4              That was the purpose of our motion in

 5   limine.  I guess once we get to the point of a

 6   ruling, then I want to make sure that that issue is

 7   preserved as to exactly what comes in.

 8              THE COURT:  Sure.

 9              So you are hoping to keep it to the report

10   so that it is not a free-for-all.

11              MR. McKEEBY:  Correct, essentially.

12              THE COURT:  Understood.

13              So what I will say is, I think that baton

14   is now passing to you.  If anything comes in, I will

15   still say you preserve your argument on that.  And

16   we will take it up.

17              If you want to inform Mr. Greenfield,

18   briefing on the nature of what comes in and not just

19   who it pertains to, right?  We have had a discussion

20   on which witnesses had that evidence that might come

21   in.  Then let's tee it up more thoroughly.

22              I -- I'll let you -- let's call it seven

23   pages, because I know if you suggest to him, Hey,

24   let's talk about what comes in, then he's going to

25   be cramped for the six pages already.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 49 of 214   PageID 9176
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                        Page 49

 1            I'm fine talking about that.  And I will
 2   just bear in mind for limiting instructions, if I do
 3   let anything in, in this space, I will rely on y'all
 4   to preview for me when it is about to come in.
 5   Because when it comes in, I will say, jury just
 6   heard X.  I have admitted X only for purpose in the
 7   use of the claims between Carter and the Union, not
 8   between Carter and Southwest.
 9            So whatever we let in, I need to give the
10   instruction as it comes in.
11            MR. GILLIAM:  Your Honor, to clarify, will
12   our response now be seven or six?
13            THE COURT:  Seven.  I'm a proportionate
14   person.  You have got seven.
15            And I'm not going to do a reply because we
16   are in pretrial mode.  Let's just say everything you
17   need to in those first two documents.  And then I
18   will try to get a written ruling, that will be the
19   last thing I think I save for y'all.  So I will have
20   a second amended limine order coming out in the next
21   few days and then a third amended that comes that
22   addresses this last limine issue.
23            Okay.  So I think that is all on limine.
24            Sorry to give y'all more work in the
25   pretrial posture.  At least we have more than a week

1    between now and trial.

2              Voir dire is the next topic I have down.

3    And it is a lengthy one.

4              I will tell you everything I'm thinking on

5    voir dire.  Because this is what most people are

6    wondering, if it's their next course of action.

7              It says on the docket that we are going to

8    look for a jury of eight.  I try to find a jury as

9    close to our six at a civil trial as possible, but

10   with the constraints of a pandemic and sometimes we

11   lose jurors, then we usually have been running with

12   juries of eight, unless it is like a one-day trial

13   and then we will run with seven.

14             So I think eight is the smallest number as

15   I can safely get.

16             Each side has their three peremptory

17   strikes, but you have unlimited challenges for

18   cause, obviously.

19             I do think with a case that touches on

20   abortion and politics, to an extent, that we might

21   lose a good bit of people on challenges for cause.

22   Normally, we don't, right?  I try to get people to

23   commit to me whether or not they could be fair, if I

24   told them they had to keep an open mind.  But we

25   just might lose more than normal.

1              Normally, I would bring in 25 jurors for a
2    civil case, picking an eight-person jury.  Here, I'm
3    going to change up that protocol on you and use my
4    criminal protocol, where we are looking for a
5    14-person jury.  I'm going to bring in 50 people,
6    which we cannot fit in this courtroom.  We can fit
7    25 in this courtroom.

8              We are going to pick the jury downstairs
9    in the big jury assembly room.  We used to pack in,
10   before COVID, 400 people in that room.  We can space
11   out 50 and do perfect social distancing.

12             So we can get 50 people in, even if we
13   lose a bunch on challenges for cause, on
14   abortion-related issues, then we should be fine
15   finding a group of eight impartial people out of
16   that group of 50.

17             That room, if you want to stick around for
18   a few minutes after we finish up today, you can see
19   that room.  Mr. Frye will show it to you.

20             It will not be set up today like we will
21   have it set up for picking the jury on July 5th at
22   one.  I can tell you a sketch about it now.  Mr.
23   Frye can fill you in when you are in the room
24   scoping it out today.

25             At the back of the room is where there is

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 52 of 214   PageID 9179
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        June 16, 2022                        Page 52

1   going to be a long series of tables.  I will be on

2   one end.  There is going to be a podium, just to my

3   left, where you can get up and ask questions from

4   when it is your turn.

5           And then everyone sitting at counsel

6   table, all the way down.  And then the jury is going

7   to be spaced out in a bunch of rows; juror number

8   one is up close and juror number 50 is way at the

9   back of the room.

10          We will have two microphones set up in

11  there on a stand, one close up to the front, one a

12  little bit farther back, probably halfway back in

13  the room.  So if it is the second half jurors

14  talking, they don't have to awkwardly walk all the

15  way up.

16          That is how the room is set up.  And so we

17  will bring in all 50 jurors at that point in time

18  and question them all together as a panel.

19          How I handle voir dire is I ask the first

20  round of questions, but I had enough state court

21  time where I like y'all getting a touch on the

22  football, so y'all get to get a better feel for the

23  jurors than just seeing their reactions to the

24  questions I will ask.

25          I will go for probably about 30 minutes

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 53 of 214   PageID 9180
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                        Page 53

1  with the Fifth Circuit standard instructions and

2  then some basic questions.

3          Some of the basic questions that I ask

4  are, who do you know questions.  I like to get those

5  out of the way.  But in my questioning time, I'm

6  going to ask the lead lawyer for each group to

7  introduce everyone at their table, right?  Including

8  their clients or corporate reps.  See if anyone

9  knows them.

10         So be ready to introduce your table when I

11 ask my questions.

12         And then after I have asked you to

13 introduce, I also ask you to read your witness list.

14 So have your witness list handy when I start my voir

15 dire, and then I will have you stand up at the

16 podium and then read off your witness list.  I will

17 ask if anyone knows them.  What I will try to do is

18 get y'all my list of my questions before that

19 Monday -- before that Tuesday July 5th.  That way,

20 if I'm asking the who-do-you-know questions or

21 anything else that is on your list, you know you

22 don't have to ask it.

23         I have had that happen one time before,

24 where a lawyer keeps asking questions I already

25 asked.  And it really loses your credibility with

 1   the jury.  So I'm going to try to give you my list
 2   in advance so you can cut off the questions I'm
 3   already going to cover.
 4          When I give the baton to you to ask
 5   questions, y'all have already filed your proposed
 6   voir dire questions, and I will go through those in
 7   just a second.  And they look pretty good.  I do
 8   just have a few I want to talk about.
 9          You can ask any questions that you ran by
10   me in writing, right?  The questions you have
11   already submitted to me.  You can also ask any
12   reasonable follow-up question.
13          If you get the sense that someone is about
14   to just drop a bomb, let's approach at sidebar,
15   right?  Sidebar is going to be harder in that room.
16   Here we all know what sidebar is.  But, like, if
17   someone is about to say that they had an abortion
18   and they would do it again, or I have had an
19   abortion and I regret it every day since.  Like if
20   someone is getting to that point, come over and
21   huddle at sidebar.  I have the ability to, after the
22   group questioning is over, kick everyone and say,
23   I'm going to call back in Juror No. 7.  And we had a
24   sense that you were going to say something, but it
25   was a group setting, it was hard to say.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 55 of 214   PageID 9182
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                          Page 55

1              So if you have a question where someone
2    could be busting a panel, please just flag it,
3    sidebar, we are going to go huddle where I'm at.
4    And we will talk through it to make sure we don't
5    bust a panel.
6              If we bust a panel in this case, it will
7    take days and days to circle back and get another
8    group of jurors.  So please work with me, the
9    courtesy I'm extending to y'all on questioning
10   witnesses, don't blow it.
11             If we blow it, then the next time we
12   question witnesses, it is just me who is going to
13   question the witnesses.
14             So get a sense for where that line is.
15   Usually, it is not too dangerous, but here it might
16   be with the abortion issue and politics running
17   around in the background.
18             Okay.  Does anyone have questions on
19   generally how I handle voir dire?  I go first.  30
20   minutes per side.  If anything is too sensitive,
21   call for a sidebar and we will figure out if we need
22   to ask a question in the follow-up.
23             MR. GILLIAM:  No, your Honor.
24             MR. PRYOR:  Your Honor, I'm sorry.
25             THE COURT:  Go for it.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 56 of 214   PageID 9183
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                  June 16, 2022                          Page 56

```
 1              MR. PRYOR:  The jury card, will we get
 2    those?
 3              THE COURT:  Yes.  So the clerk's office
 4    call them juror information forms.  And they will
 5    have the standard information on it, you know, what
 6    is your occupation, where do you live, what is your
 7    spouse's occupation, things of that nature.  And so
 8    you can tease out some information there.
 9              I will say -- and that is a good question
10    for me to say, when I tell you, you can ask two
11    things, the preapproved questions or reasonable
12    follow-up, I will allow you to ask the third
13    question, which is, if it is a question based on the
14    juror information form, right?
15              If someone says that they are a lawyer, I
16    noticed you answered you are a lawyer, you are
17    lawyer, where do you work at.  That is fair to talk
18    about.
19              If it is overly sensitive, if you work at
20    an abortion clinic, maybe like flag for me and save
21    it for an individual question.
22              I think juror information forms are fair
23    game for you to ask for without preapproving a
24    question.
25              MR. PRYOR:  Your Honor, and I may have
```

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 57 of 214   PageID 9184
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                      Page 57

 1  missed it, how many peremptory strikes?

 2          Is it going to be equal to side as opposed

 3  to party?

 4          THE COURT:  That is a good point.

 5          We need to think through that because it

 6  is listed as three per side.  And so the question

 7  is, do you want more?  If I give you more, then I

 8  have to think about, do I give them more?  And we

 9  get into a bit of a tailspin.

10          Do y'all have thoughts on peremptories and

11  three per side, whether or not you can work well

12  together?  Or if I need to make it four, with a two

13  and two split, where you don't have to work well

14  together.  And I think about whether or not I give

15  them an additional peremptory.

16          MR. McKEEBY:  Can you -- so the options

17  are we get a total of three from the Defendants or

18  two each and then they get a total of four?

19          THE COURT:  Those are the options I'm

20  thinking through.  Either you have the pooled three

21  and they have three.  Or you have, if you don't

22  think that it will be perfect cooperation, which is

23  hard to predict, if you would like to strike a

24  different person, for example, then I would be

25  amenable to giving y'all four with a split two and

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 58 of 214   PageID 9185
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                           June 16, 2022                            Page 58

1   two.  And you don't have to pool.

2              If I give y'all four, then I think I have

3   to give them a fourth.  I think I could do it based

4   on us bumping up to 50.  If we were looking at 25 in

5   this case, I think I would get nervous about whether

6   I would run out of people.

7              MR. McKEEBY:  I -- my preference is for

8   two and two with those options.

9              THE COURT:  Okay.  Any objection?

10             MR. PRYOR:  Your Honor, are you asking how

11  many strikes per side?

12             THE COURT:  You would want a million, but

13  I can't do that, right?  So you can ask for whatever

14  you want but, again, I'm the one sitting here doing

15  the math and figuring out if we are going to run out

16  of people.

17             MR. PRYOR:  Apparently, I would like six

18  per side, but four is four -- we will be there.

19             THE COURT:  Four is better than three.

20             Mr. Greenfield, no one has asked your

21  thoughts.  I haven't ruled yet.

22             MR. GREENFIELD:  Yes, your Honor.

23             Southwest and the Union haven't discussed

24  if we have similar paths, as far as who the jurors

25  would be.  So my thought would be three, three, and

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 59 of 214   PageID 9186
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                        Page 59

1  three, just from the standpoint that I don't know

2  that our ideas align on who our jurors would be.

3          And it is making an assumption that we

4  would.  And maybe we do get along on who we want and

5  who we don't.  I just don't know at this point.

6          THE COURT:  Yeah.  So I get that.  But in

7  my view, I have to keep it even per side.  So what

8  I'll do is the two, two, and four.  And that matches

9  up with the time clock that I put in, right?  The

10 totals across the V equate, and then there is a

11 split for if you don't cooperate.

12         And obviously, I will tell you this on the

13 protocol right now, I ask questions first.  Then we

14 go in order, right?  30 minutes per party, right, is

15 how I'm doing it; 30 minutes for everybody to get a

16 touch on the football in voir dire.  I let each side

17 have their own pool.  So 30, 30, 30.

18         After that, if we don't have any

19 individual people who had overly-sensitive potential

20 answers that we need to visit with, I kick all the

21 jurors out to the hall.  We talk about anyone who

22 had excuses, right?  Scheduling, undue hardship,

23 anything like that first.

24         And I make a ruling on excuses, so if we

25 excuse people, I've got kids under 10 at home,

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                      Page 60

1    right, you never should have showed up to the

2    courthouse.  I excuse them.  They are out of

3    consideration.

4           But then we talk about challenges for

5    cause.  Someone who said, Hey, my beliefs are so

6    strong on abortion one way or another, I just can't

7    be open-minded in this case.

8           And then after I have struck all of those

9    folks for cause, then I go off the bench and y'all

10   use your peremptory strikes.

11          Y'all might agree on which four you want

12   to strike.  It doesn't matter to me whether you pool

13   or not.  I just know I have given you two each,

14   being fair in that regard.

15          And then I come back on the bench when

16   y'all have all agreed who you are going to strike.

17   We figure out who our jury is and we call them back

18   in.

19          I will excuse everyone that is not on the

20   jury from service.  And then everyone who is on the

21   jury, I will say, come back tomorrow at 8:45, we

22   will start at 9:00 for opening arguments.

23          So that is the run of show on voir dire.

24          Any questions so far on that?

25          MR. GILLIAM:  Yes, your Honor.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 61 of 214  PageID 9188
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 61

 1              You may have said, how much total time do
 2    the parties have for voir dire?
 3              THE COURT:  So y'all will get 30, 30, and
 4    30.
 5              I'm giving each lead lawyer a 30-minute
 6    touch on the football when it comes to voir dire.
 7    We should be able to pick our group in an afternoon.
 8    It will probably take all afternoon.
 9              I will say this, as just a procedural,
10    mechanical thing, when we are in the room where
11    there are 50 people and two microphones, you can't
12    get a verbal answer from every person to a question.
13              And so I frame mine, y'all frame most of
14    yours as sort of yes/nos.  You can ask people to
15    explain their answer.
16              I also de-identify the potential jurors.
17    Because they might say something, like, I have had
18    an abortion.  I don't like there being a written
19    record of any of their answers tied to their name in
20    court.  If that makes sense.  I know it is
21    impersonal and I apologize to y'all for it being
22    impersonal, but I have talked to jurors who have
23    strong concerns, even in civil cases about that.
24              So we give them all a placard, it has got
25    a number on it.  And when I go in my 30 minutes or

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 62 of 214  PageID 9189
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                        Page 62

1  so, I will ask them, raise your placard, if you have

2  served on a jury before.  And then I tell them, hold

3  your placards up, and I will call them off in order

4  number lowest to highest, and put your placard down.

5           Jurors are pretty good at everything

6  except that.  The problem is they either won't hold

7  their placard up.  They will forget about it until

8  the very end.  Or they will hold it up on the first

9  row, where I can't see anyone behind them long after

10 I have called their number.

11          I will beat them into shape for y'all so

12 that by the time, Mr. Gilliam, you start asking your

13 questions, hopefully, they will know the placard

14 routine, hopefully y'all will see, okay, I'm going

15 to call them off.  Because if you don't call them

16 off, it is not in the record, the Court of Appeals

17 can't see it.

18          If you want to ask them, Hey, can you come

19 up to the microphone and tell me about what kind of

20 jury you served on, that is totally fine.

21          Keep in mind the flow.  You can get a lot

22 of questions in your 30 minutes if you get your flow

23 down and don't ask questions that burn all of the

24 time on one question.

25          So you will see how I'm doing it.  But

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 63 of 214   PageID 9190
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                     Page 63

1  think through efficiency for your sake, because I

2  don't want you only getting in two or three

3  questions in your 30 minutes because you asked them

4  the wrong way.

5          Okay.  So substantively, we should talk

6  about a few of these questions to flag.  Let me flip

7  to Carter's proposed voir dire questions first.

8          I had --

9          MR. PRYOR:  Your Honor, and I'm sorry.  I

10 went swimming with my hearing aids, which was not a

11 good thing.  I apologize.  I'm not quite catching

12 it.  I will fix that before trial.  Thankfully, the

13 only thing I think I am involved in is the voir

14 dire.

15          That last question I had, of our 30 hours

16 of trial time for plaintiff, does the 30-minutes

17 count against our time?

18          THE COURT:  Good question.

19          I think it is 12 hours.  So nice try.

20 That was slick.  Appreciate it.

21          So your 30 minutes of voir dire does not

22 count.

23          MR. PRYOR:  All right.  Thank you.

24          THE COURT:  I will get to this a little

25 bit more in time limits.  None of that counts until

 1   I bring the jury in and swear them in.

 2          MR. PRYOR:  And what about opening?  And I

 3   know I skipped beyond voir dire there.

 4          Does that count towards the 12 hours?

 5          THE COURT:  Yes.  So the 12 hours --

 6   anything that is counted is when the jury is in the

 7   box and you are consuming the time, right?

 8          MR. PRYOR:  Got it.

 9          THE COURT:  That is the general rule,

10   right?

11          Opening, you are consuming the time.  If

12   I'm reading the jury charge, you are not consuming

13   the time, that is on me, right?

14          If we are in here talking about the charge

15   conference, they are not in the box.  If we are at a

16   sidebar, that you lost horribly, then, yeah, the

17   jury is in the box and they are sitting there

18   because of you and your horrible objection at

19   sidebar that I overruled.

20          Does that make sense?

21          So make good objections.  But I will cover

22   my exhibit objection protocol here in a little bit

23   and you will see that I try to minimize those

24   sidebar times.

25          MR. PRYOR:  Can I ask one more question

1   about time?

2          I just finished a trial where at the end

3   of the day we had to report to the panel how much

4   time we thought we used.  We kept track of our own

5   time.

6          Do you keep track of our time?  Is there a

7   way we can check with someone?  We may get a little

8   close towards the end.

9          THE COURT:  Yeah.  So time clock I have a

10  little bit later, but let me knock out the rest of

11  the questions because that's basically the only

12  other time clock question that we have.

13         At the end of every day, you will get an

14  email from Mr. Frye that has two things in it.  One

15  is the updated exhibit list that we keep track of

16  every day.  Two is where you stand on your time

17  clock usage.

18         And so you will be able to keep track

19  based on that.  After every sidebar, by the way, I

20  email both Kevin and our law clerk, Ms. Silver, who

21  is working on this case and say, here is who lost

22  that sidebar, right?  And they are keeping the stop

23  watch to figure out who actually has that.

24         If you are wondering, our stop watch, when

25  it begins and ends, when I say, okay, Mr.

 1   Greenfield, you can question the witness, that is

 2   their signal to start it.

 3                  So I have had lawyers who are not used to

 4   shot clocks who would sit there and look at their

 5   notepad for an awkwardly long two-minute period of

 6   time to figure out what all questions they would

 7   think about asking.

 8                  The jury is in the box and I have just

 9   announced it is your time.  So you can't just sit

10   there at your seat awkwardly, and as if it is not

11   your time and have it not count against you.

12                  But I'm also not going to game the system.

13   You won't see, you know, Southwest finish a question

14   like an auctioneer, right?  And then say, Hey,

15   Greenfield.  I try to actually make it slower

16   because in my mind, we are a family presenting this

17   case to the jury.  And if they see me trying to

18   weird things like that, it's just not a good vibe to

19   it.  So I'm going to pause for a little bit.  Then

20   I'm going to say, Okay, Mr. Greenfield, it is your

21   turn to question the witness.

22                  So I don't try to force people into

23   un-winning situations on the time clock.

24                  I think I did say, if someone runs out of

25   time, they can ask for more, but they have to show

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 67 of 214   PageID 9194
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                          Page 67

1    that they used their time efficiently and what they

2    need to use their extra time on.

3            On efficiency, I keep track of efficiency.

4    I keep a running list with my staff on ways in which

5    you were inefficient.

6            And so I will just tell you the one thing

7    I think people could have done to avoid every

8    inefficiency I have seen is to just ask themselves

9    what do I want the jury -- if the jury goes on a

10   break right after this witness, and the jurors are

11   back taking their 10-minute break, what do they want

12   to remember from this witness?

13           I had a criminal trial where the star

14   witness in a case was the lawyer that provided legal

15   advice to the defendants long ago, right?  So that

16   might be an affirmative defense, right?  My lawyer

17   gave me this advice that I should do this and I

18   followed it.

19           So what the jury really wanted to hear

20   from that witness was, you have been a lawyer in the

21   field for 30 years, the defendants hired you to give

22   them legal advice, you gave them legal advice and

23   you followed it.

24           That is it.  It should take about five

25   minutes.  The witness was up there three hours.  And

1   then the jury did not remember anything the witness

2   had said by the time that witness left the box, all

3   right?

4            So what does the jury need to remember

5   from this witness?  Based on what you need to prove.

6   If you start with that, then you can just throw a

7   brick and sit down.  And I will have no complaints

8   about your efficiency.

9            MR. PRYOR:  And I think it goes by what

10  you have said, so closing is also part of the 12

11  hours?

12           THE COURT:  That's correct.  Closing is.

13           But obviously, it does not include my

14  time, which is jury charge or if y'all are talking

15  about sidebars in a way to be efficient and reach an

16  agreement, that is my time.

17           MR. PRYOR:  Okay.  Thank you, Judge.

18           THE COURT:  Okay.  And then remember if

19  you are getting close to running out of time and are

20  asking for more, what I really want to hear from

21  you, I have thought of your efficiencies, lack

22  thereof.  What I really want to hear from you is

23  what more time do you need?  And what will you do

24  with it?

25           Be specific, right?  If you are not

 1   specific, I can't really judge your request on the

 2   merits.

 3             And don't ask too early.

 4             In the last trial, I had the Government

 5   ask for more time when they still had three hours

 6   left.  I said, you are way too early.  You have

 7   three hours.  You can do a lot in three hours.  And

 8   they did, they finished their case in three hours.

 9             So don't ask too early because that tells

10   me that you plan on being inefficient.  Ask when you

11   are nearly out of time because that shows me you

12   were efficient and needed more despite your

13   efficiency.

14             Cross-examination of a witness, right?

15   That is you, taking time when the jury is in the

16   box.

17             I will say on time limits -- I don't think

18   I will have this problem in this case.  I have had a

19   handful of cases where lawyers have tried to game

20   the system, including through their witnesses.

21             Gaming the system through your witnesses

22   amounts to telling them, Hey, everyone is on a time

23   clock, so slow the other side down during

24   cross-examination.

25             I don't see the lawyer telling their

 1   witness that, but I see the fruits of it on the

 2   stand.  When they were incredibly efficient on

 3   direct, and then when it comes to cross, I don't

 4   recall that email.  Can you show it to me?  And then

 5   you take three minutes to review a one-page email.

 6            Don't do that.  I think y'all are

 7   professional and won't.

 8            I will tell you how I handled that the

 9   last time.  The side I saw doing that, I denied

10   their request for more time.  And I proactively gave

11   more time the side they were doing it to.  Does that

12   make sense?

13            I'm a judge.  I can figure out remedies.

14   Remedies is all we do all day every day.  So I want

15   y'all's commitment to not tell your witnesses about

16   the time clock.  Your party, your corporate reps

17   will obviously be in here and they will know about

18   it.  But tell them, be forthright.

19            Again, we are all a family presenting this

20   case to the jury.  And they will be thankful, if we

21   to do not and not thankful if we game the system.

22            Any questions on the time clock?

23            MR. PRYOR:  When you are talking about

24   gaming the system, it made me think about objections

25   during trial.  And some of your limine rulings

1  you -- there may be heaping helpings of evidence

2  coming in that we will want to make sure we preserve

3  a record.

4          I know judges don't -- I'm not fond of

5  continuing objections either, on the other hand, I

6  don't want you thinking that I'm gaming the system

7  by objecting every time they ask a question relating

8  to X.

9          THE COURT:  So you are trying to object to

10  preserve the limine ruling?

11          MR. PRYOR:  I'm sorry?

12          THE COURT:  Well, give me a more concrete

13  context for your example.

14          MR. PRYOR:  Well, I mean, maybe an easy

15  one, if you allow evidence of a collateral source,

16  and they are asking questions about her husband or

17  her mother.

18          I don't know who all the collateral source

19  issues are, and I know that I have objected once to

20  it.  And then I have got another question, and he's

21  got five more questions on it and I'm objecting,

22  objecting, objecting.

23          Judges get pretty frustrated with that.  I

24  only thought of it because I didn't want you to

25  think I'm trying to waste their time.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 72 of 214  PageID 9199
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 72

 1            THE COURT:  What I will say on that, once

 2    we see how -- how that is going, I will grant

 3    someone a running objection rather freely when we

 4    have a time clock in place.  Does that make sense?

 5    I think the frequent objections on different

 6    topics --

 7            MR. PRYOR:  Okay.

 8            THE COURT:  -- so I have no problem

 9    saying, yeah, I will give you that running

10    objection.  That way you are not breaking up their

11    flow, you are still preserving your error and then

12    we are not wasting the jury's time.

13            MR. PRYOR:  That is helpful.  Thank you,

14    your Honor.

15            THE COURT:  I will say also, once I have

16    set my limine rulings, there are lawyers that like

17    to get up and object to relevance, scope,

18    cumulative, all the time, like every question.  I

19    have had that before, too.

20            Please don't do that, right?  I mean, if

21    something is truly irrelevant, I will keep it out.

22    A lot of times, the thing has marginal relevance.

23    It is your opponent, so you think it has no

24    relevance, but it has marginal relevance.  I put

25    y'all on a clock, right?  That is how they want to

1   use their time.  You should be sitting there

2   thinking, sweet, I am glad they are not getting to

3   the good stuff, right?

4           But a lot of times things have marginal

5   relevance, no prejudice.  If that is how you want to

6   use your time, I will let you.  If you are objecting

7   to every question on that basis for a several-minute

8   period, then I'm going to call a sidebar and I'm

9   going to remind you that I put in the time clock to

10  help you by having them use their time

11  inefficiently.

12          And because of all of your objections, now

13  I'm going to have to give the inefficient person

14  more time because your objections are taking time

15  for me to rule on.

16          That is another way to gain the system

17  that I compensate for.  So I will award people more

18  time on the other side, if there are just frequent

19  objections on relevance, cumulative, that really are

20  getting overruled all of the time.  And my time

21  clock is there to solve efficiency problem anyways.

22          Any other questions on the time clock?

23          MR. GREENFIELD:  Yes, your Honor.

24          THE COURT:  Yes.  Go for it.

25          MR. GREENFIELD:  I believe your order

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 74 of 214   PageID 9201
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        June 16, 2022                        Page 74

1  discusses that defendants can pool their six hours

2  each.  How would the Court like to handle that?  For

3  example, if Southwest is presenting witnesses first,

4  I would be hesitant to give them time knowing that I

5  may not get it back.

6              THE COURT:  Yes.

7              So what I would say is, I would encourage

8  you -- just from me putting myself in your shoes, I

9  would encourage you not to make a pooling decision

10  until late in the game.  And I'm not even going to

11  ask you for one.

12             We are just going to keep three separate

13  time clocks, unless you affirmatively tell me, later

14  on in trial, Hey, we decided to pool.

15             That is what happened in my last trial.  I

16  had three defendants, and two of them decided to

17  pool, but only as one was nearing the end and they

18  wanted to help each other out because that person

19  had the witnesses that were helpful to both of them.

20  Does that make sense?

21             I don't think it is a decision you can or

22  should make on the front end.

23             MR. McKEEBY:  Pooling just means I give

24  the Union some of my time or vice versa?

25             THE COURT:  I would say that now it is one

 1  time clock for the defense, and y'all have 12 hours.
 2  At that point, I'm going to stop keeping a separate
 3  time clock for the defense.  And if the defense
 4  collectively runs out of time and needs more, then I
 5  will look, have y'all been efficient and, yeah,
 6  pooling in my view is a view of efficiency, you have
 7  tried to be efficient in pooling.
 8            How much more time do you need, what do
 9  you need it on.  Does that makes sense?
10            So I wouldn't make a decision on pooling
11  yet.  One of you may be horribly inefficient.  You
12  don't want to give your hours to the other side, if
13  you don't know that yet.  You know about five
14  minutes into the first witness cross-examination,
15  how efficient your co-defendant's lawyer is.
16            Other questions on time clock?
17            All right.  Let's jump back in to the
18  proposed voir dire questions, and then we will
19  probably take a quick break after this.
20            Okay.  So proposed voir dire questions.
21            I have a question from Carter, No. 10.
22            The second sentence of this question is,
23  Is there anyone here that feels strongly about
24  abortion, such that you will not support a political
25  party or vote for a political candidate based on

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 76 of 214   PageID 9203
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 76

1    your view about abortion.

2              MR. PRYOR:  Which number is that?

3              THE COURT:  This is Carter 10, second

4    sentence.  Let me make sure that everyone is there.

5              So I think it is page 24 of the pretrial

6    order.

7              Okay.  So there are three other sentences

8    in here that I don't think have any issues.  The

9    reason I have an issue with the second sentence is

10   it is asking, are you going to vote based on your

11   beliefs.

12             Anytime I ask someone how they are going

13   to vote, I just shut that question down.  Right?

14   Because we've got ballot secrecy concerns.  I think

15   there is discoverable information out there, and I

16   think you have asked about it in your third and

17   fourth sentence, what discoverable information is

18   out there.

19             But there is some matters of life that are

20   so private, some religious areas that we will get

21   to, some political areas like voting, that I don't

22   think we can get there and delve there.

23             And I will give you an example.  Voting?

24   No.  Showing up to a protest or rally?  Yes.  And so

25   there is Fifth Circuit case law, mostly in the

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 77 of 214   PageID 9204
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 77

1  religion context.  Your religious affiliation?  No.

2  Your very overt religious activities, like showing

3  up to a church rally for X, Y, or Z?  Yes.

4         You are holding yourself out publically

5  and identifying in that way, whether it is religion

6  or politics.

7         So I think the second sentence I can't

8  allow in question 10.  But I can allow everything

9  else in the second sentence.

10         Any questions about that one?

11         MR. PRYOR:  Your Honor, on that, the

12  political party question, what about a question of,

13  Is there anyone that feels so strongly about

14  abortion that it is -- it is the single issue for

15  you in making a decision to vote?

16         THE COURT:  I still can't get there.

17  Based on the --

18         MR. PRYOR:  Same problem.

19         THE COURT:  Even though it is not asking

20  who would they vote for, I mean, ballot secrecy is

21  still like -- there are other ways you can find out.

22  I think you are asking them in sentence three and

23  four.

24         MR. PRYOR:  All I'm really trying to find

25  out there, the ones that -- this is such an

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                     Page 78

1  emotional issue for them, we can evaluate whether or

2  not we think they would be appropriate for the jury.

3  And maybe these other questions get there

4  sufficiently.

5          So avoid the political party abortion

6  question or candidate question?

7          THE COURT:  Right.

8          MR. PRYOR:  Okay.

9          THE COURT:  Exactly.

10         Yes.  It is asking someone how they have

11 or would cast their vote based on an issue.  And I

12 think those are areas where the -- the only area

13 where I feel like I can do anything about that is

14 when someone has accused someone else of

15 fraudulently casting a ballot.

16         And that is the only area where I have

17 such inherent authority I can overcome ballot

18 secrecy.

19         And this is not that.  It is not, was your

20 ballot fraudulently cast.

21         MR. PRYOR:  Your Honor, you raised an

22 issue earlier about abortion and about potential

23 jury members that have had abortions.  I actually

24 didn't include that question in my list, but now I

25 think it should have been.  And I kind of hem-hawed

1 | all around it.  It is probably -- boy, it is such
2 | a -- I want to ask and then have them raise their
3 | hands, and then you will have the numbers and then
4 | we can talk?  I mean, it is a terrible thing to ask,
5 | I know but --
6 |           THE COURT:  So --
7 |           MR. PRYOR:  I'm not deciding --
8 |           THE COURT:  I couldn't in good conscious
9 | let you ask for a show of hands.  Right?  I just
10 | don't think I could do that.  Because then it is
11 | publicly shaming somebody.
12 |           If there is another way, tell me another
13 | way.  You know, whether, you know, including a
14 | one-question juror information form addendum.
15 |           You know, there may be other ways to skin
16 | the cat, but I don't think we can do that in a
17 | public fashion.
18 |           Okay.  So I will let you think about it.
19 | Circle back with me before we end our pretrial
20 | conference.  See if you have a different method for
21 | asking that question.
22 |           So the next one I put a note on is Carter
23 | Question 11.
24 |           MR. HILL:  Circle back on it.
25 |           THE COURT:  Discussing abortion with

1  family members.

2         You know, I think this question is close.

3  I will probably allow it, but I'm going to limit any

4  follow-ups, right?

5         If they start talking about knock-down

6  drag-out fights at home, then that is probably

7  something that we shouldn't be talking about in the

8  group session, right?

9         The last -- the last thing we want is like

10 an old west bar, where one person says something and

11 everyone gets up and everyone turns on everyone.

12        When I talk about panel-busting questions,

13 usually for some people it is some theoretical,

14 mythical thing.  Here is the real.

15        You don't want a person getting up and

16 saying something that triggers at least half the

17 room, and the old west bar fight arises, right?

18 That is where we bust a panel, and we don't need to

19 bust a panel here.

20        So I'm trying to be overly careful.  So I

21 will let you ask question 11, but don't get into the

22 follow-ups, right?  We don't want to bust it.

23        MR. PRYOR:  Judge, do you want to ask some

24 of these questions?

25        THE COURT:  I can ask some of them and

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 81 of 214   PageID 9208
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 81

1   honestly, like, some of them, I might ask.

2            MR. PRYOR:  I'm just saying, I think it

3   puts a particular onus on these parties and it is

4   going to sound better coming from you.

5            THE COURT:  Yes.

6            MR. PRYOR:  I just raise that issue.  And

7   if the Court -- it is difficult for all of us to

8   deal with, but, unfortunately, we have to here.

9            THE COURT:  That leads me to my next one.

10  So I will show you, right?  When I email my list of

11  questions, you will see which ones I am asking.  And

12  I will pick up a few on this topic.

13           Carter question 13 is one where I want to

14  ask, and I'm going to frame it in a slightly

15  different way.

16           So Carter question 13 is basically about

17  Dobbs.  We know there is that, there is a leaked

18  draft in Dobbs, the real draft is not issued yet.

19           Let me tell y'all how I propose to talk to

20  the jury about Dobbs, and then y'all can pick me

21  apart at the end and tell me what I'm wrong on.

22           So this is what I plan on saying on the

23  Dobbs question.  The Supreme Court recently did, or

24  did not -- we will choose our own adventure when it

25  comes time -- The Supreme Court recently did or did

1  not change its standard for whether states may

2  prohibit abortions.  This case is not about whether

3  states may prohibit abortions.  This question is

4  about whether the defendants violated Carter's

5  federal legal rights.  The recent Supreme Court case

6  has no bearing on this case.

7          Do any of you feel so strongly about the

8  Supreme Court's recent case on abortion that you

9  wouldn't be able to put those personal views aside

10 and fairly apply the law to the facts of this case?

11          MR. GILLIAM:  Sounds good.

12          THE COURT:  We are trying to stay down the

13 middle.

14          Mr. Greenfield, you are nervous.

15 Understandably so.

16          MR. GREENFIELD:  I'm hesitant about most

17 of this line of questioning.  I think we are just

18 beelining for busting this jury pool and that is my

19 concern from an efficiency standpoint.

20          I just have concerns that that will happen

21 from that question.

22          THE COURT:  So I get that concern.  And

23 that is also mine, by the way.  Which is why I'm

24 suggesting asking this and trying to ask it as

25 neutrally as possible.

```
 1              I feel like any case on abortion is
 2   touchy.  And for some reason, we picked the
 3   touchiest time ever in the history of modern western
 4   civilization to try this case.
 5              So I feel like it is discoverable
 6   information for both sides, right?  I feel it cuts
 7   both ways.  Some people could be so happy or so mad
 8   at the opinion that they are going to take it out on
 9   Carter, Southwest or the Union.  And I don't feel
10   like that is fair to y'all.
11              So I do feel like these kinds of questions
12   are why I'm getting 50 instead of 25.  I'm hoping we
13   get eight impartial people in this group.  We are
14   bound to.  Eight people, who can set their personal
15   views aside, if they have them, and maybe they won't
16   have them.
17              MR. McKEEBY:  Can I ask a procedural
18   question?
19              THE COURT:  Yes.
20              MR. McKEEBY:  Are the permissible voir
21   dires going to be provided to the parties in a
22   document from the Court?  Are we going to go by the
23   pretrial order?
24              THE COURT:  So, yes.  Permissible voir
25   dire, it is basically going to be a pretrial order,
```

1  as modified by this.

2            So if there are any questions I'm

3  striking, I'm going to ask y'all at the end to order

4  the transcript, so y'all have it, so I have it.

5            And so you can go by yours, for example, I

6  cut out sentence 2 of question 10.  And so I trust

7  that your team will scratch through, you know, that

8  page of the pretrial order number 24.

9            If you don't -- so I will have my

10  marked-up copy.  And if you don't, I will try to

11  stop you and go, wait a minute, you are reading some

12  marked-up sentence.

13            Okay.  So I'm letting you ask Question 11.

14  Question 13, I will ask instead, in the way I

15  formulated it.

16            So Carter question 17, there is a second

17  sentence in here that, again, I will just flag.  I

18  will let you ask it, it is about discussions with

19  family or friends that become argumentative.  I am

20  nervous, but I will let you ask it but not follow

21  up.

22            MR. McKEEBY:  Judge, this one kind of

23  raises a point I wanted to ask.

24            THE COURT:  Certainly.

25            MR. McKEEBY:  It kind of gets to your

1   question about state court.

2           The first sentence, this case involves

3   discrimination against a person based on their

4   religion without an accommodation being offered is

5   kind of state court voir dire argumentative, which I

6   would not expect in federal court.

7           Is that your -- are you okay with that?

8           THE COURT:  Well -- and good point.

9           Can I have you flag that with a

10  disclaimer?  We are arguing that this case is about,

11  right?  Because your view of what the case is about

12  is not necessarily what the evidence will show it to

13  be.

14          So can you disclaim that?  And if there

15  are any other ones like that, for anyone's side,

16  then we should disclaim.

17          Also, I handle -- if y'all ask like legal

18  questions, like here is the standard, I ask y'all to

19  disclaim and say, We think at the end of this case

20  Starr will tell you the law is X, instead of -- the

21  law is X.  You are not the giver of the law, and I'm

22  not the giver of the law right now.  I can't give it

23  until the end of the case.

24          So that disclaimer on a factual basis

25  makes sense.

1            MR. GREENFIELD:  And, your Honor, how

2  would you like counsel, on either side, to handle

3  that sort of situation, if it is to come up?

4  Because I don't want stand up in front of the jury

5  pool and start hemming and hawing, if that starts

6  happening.

7            THE COURT:  Yes.  Just ask for a sidebar.

8  And I will try to patrol that as well.

9            We will get to this in just a second.  It

10  is also a sensitive situation when another lawyer is

11  opening or closing, and so I ask for sidebars at the

12  end of that.

13            Now, if it is a question that they have

14  framed wrong, that is not how we talked about, you

15  can just stand up, I will see you and then I will

16  say, Hey, counsel can we huddle up right quick, and

17  then we will talk through it.

18            But, yes, if you've got a striking factual

19  assertion or any legal assertion, then you should

20  throw in a disclaimer.

21            We think that the facts will show X.  We

22  think Starr will give you Y on the law.

23            And I will try to flag those as we go.

24  After I get through my concerns with their

25  questions, I will see if any of you have any

 1    concerns and we'll make sure we are good on that set

 2    of questions.

 3              Okay.  So, 17, we have the disclaimer we

 4    are putting in.

 5              MR. GILLIAM:  We are going to strike

 6    through the second sentence.

 7              THE COURT:  So, the second sentence of 17,

 8    I'm allowing but no follow-ups.  Heated arguments

 9    with your family, you can tell us, but we are not

10    going to have a follow-up.

11              Okay.  Eighteen is the next one I wanted

12    to talk through.

13              So I know we had talked about this in the

14    limine context, and there being at least some

15    exhibits that Mr. Greenfield thinks are in the trial

16    record that do make reference to politicians, like

17    Donald Trump and Hillary Clinton.

18              What I want to say here is that it is

19    that -- so I think this question has a place, right?

20    Like, if there an exhibit, the question has a place.

21              I think my concern is this second

22    sentence, which is asking about feelings on

23    political candidates, right?  That gets back to more

24    secret ballot things.

25              But, you know, if they have been to a

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 88 of 214   PageID 9215
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 88

1  protest or something like that, obviously that is

2  publicly associating them in a way that makes it

3  discoverable.

4          I think you can also ask, not whether your

5  view of a candidate will influence your vote, but I

6  think you can ask whether a view of the candidate

7  will influence your verdict, right?  The verdict is

8  what does matter.  You can absolutely ask that and

9  that is your third question.  I think that hits the

10  nail on the head.

11          So it's the second sentence that I

12  disallowed.  I think it is the third sentence that I

13  think is hyper-relevant that I will allow.

14          Those are the only ones that I wanted to

15  flag on Carter's questions.

16          Let me ask for Southwest, are there any

17  other ones beyond that disclaimer to question 17,

18  Mr. McKeeby, you want to flag for me?

19          MR. McKEEBY:  No.

20          THE COURT:  Okay.  Mr. Greenfield, are

21  there any other ones that you want to flag?

22          MR. GREENFIELD:  Not at this point, your

23  Honor.

24          THE COURT:  If anyone has any that they

25  have late-breaking thoughts on, send them over

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 89 of 214   PageID 9216
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 89

1  email, you know, as soon as you can.  Let's try to

2  keep these things adjudicated well on the front end

3  so people can prep their thoughts on voir dire.

4          Let's go ahead and take a break.  I know

5  we haven't gotten to Local 556 or Southwest's

6  questions.

7          I don't have -- honestly, I have one out

8  of those, or two.  But let's talk about after maybe

9  a 10-minute break.  Then we will come back on the

10 record and finish up.

11         So court is in recess for 10 minutes.  We

12 will see y'all at 10:40.

13         THE COURT SECURITY OFFICER:  All rise.

14         (Recess.)

15         THE COURT SECURITY OFFICER:  All rise.

16         THE COURT:  Thank you.  You can be seated.

17         Before we talk about the other proposed

18 voir dire questions, I wanted to flag one thing.

19         The Clerk's office told us that Chief

20 Judge Lynn is picking a criminal jury the morning of

21 July 5th in that same jury assembly room.  So they

22 are flagging for us, they are not sure if she will

23 be finished in time for us to use the room at 1:00.

24         Kevin is going to look at an alternate

25 room, the Red River room, to see if that is a viable

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 90 of 214   PageID 9217
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 90

1  space for us to run with or we just wait until Chief

2  Judge Lynn is done.

3           We are getting creative and thinking

4  through other options, too.  We will pick our jury

5  that day, we just don't know what room we will pick

6  it in.

7           Kevin will scout out a viable alternative

8  in case that room is still booked at 1:00.

9           So we covered Carter's questions on

10 processed voir dire.

11          On Local 556's, I didn't have any that

12 jumped out at me, but I want to ask if anyone else

13 has any concerns about Local 556's questions.

14          Any questions with Local 556?

15          MR. McKEEBY:  Not from Southwest.

16          MR. GILLIAM:  No.

17          THE COURT:  Okay.  Then let's go to

18 Southwest's questions.

19          I think I just had two that I wanted to

20 talk about.

21          Questions 1 and 20 were the ones I

22 flagged.

23          Well, I may have the wrong one.  Instead

24 of 1, I should have said 5?

25          Five is, Have you donated to any nonprofit

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 91 of 214  PageID 9218
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                  June 16, 2022                         Page 91

1   or religious organizations; if so, which ones?

2           So the nonprofit or religious organization

3   question is one that to me gets more like secret

4   ballot for voting.

5           Where the Fifth Circuit has the drawn the

6   line on affiliation versus overt public activity, I

7   think the problem here is with regard to religion,

8   it is the tenet of many religions to donate back to

9   the religious institution.

10          So I think donation can look a lot more

11  like affiliation.  And that might even be true for

12  secular non-profits.

13          The Supreme Court case from 2020 on

14  California's law compelling nonprofits to disclose

15  their donors list.  Americans for Prosperity

16  Foundation versus Bonta.

17          I know it was a different legal framework

18  that the Court was analyzing but I think it has a

19  rough analogy here, when we are telling people who

20  they've given money to and that is a

21  quintessentially private context.

22          I think there is an expectation of privacy

23  that we don't pierce in even voir dire absent a

24  compelling need.

25          I think there is not a compelling need if

1  we can get to someone's overt activities, right?

2  And that's what the Fifth Circuit has said in other

3  religious question cases for voir dire.

4          If someone is going to a rally or

5  something like that, then they have taken a step

6  beyond writing a check to their church that only

7  they know about it, and are now going to this rally

8  on this issue that their church has put together.

9          And so I think that is fine.  It is almost

10 like a Fourth Amendment search and seizure kind of

11 feel to it from these cases where you might have a

12 reasonable expectation of privacy in your home.

13         But once you get out to the rally,

14 everything you are doing is public, so we can all

15 see about it but...

16         So question 5, I don't think I can allow

17 5, because I think it does get to that expectation

18 of privacy in donating to a nonprofit or affiliating

19 with a religion that I think is a bridge too far for

20 me under Fifth Circuit and Supreme Court precedents.

21         Question 20, does anyone here have strong

22 opinions about the recently-leaked draft of Dobbs?

23         I think that is the one where I said I

24 should take a bullet and handle that one.  So I'll

25 do that you y'all don't need to ask 20, just like

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 93 of 214   PageID 9220
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                         Page 93

 1  Carter doesn't need to ask her formulation of the
 2  Dobbs question.
 3            Okay.  Does anyone else have concerns on
 4  Southwest's proposed questions?
 5            I'm thumbing through them one last time to
 6  see.  I don't have any others.
 7            Last call for Southwest's questions on
 8  proposed voir dire.
 9            MR. GILLIAM:  Plaintiff doesn't have any.
10            THE COURT:  Okay.
11            That wraps up the voir dire questions.
12            Any other questions on voir dire?  I have
13  one more thing on voir dire unless someone else on
14  questions.
15            The one thing I have in the Fifth Circuit
16  pattern instructions, they require me to give sort
17  of a thumbnail sketch about every case in my
18  introductions.
19            So I basically track my thumbnail sketch
20  with y'all's stipulations.
21            I'm going to read my plan for it now, and
22  stop me at the end, if you have any -- if you have
23  any concerns about it.
24            Okay.  This is not a criminal case.  It is
25  a civil case.  The plaintiff, the person who filed

1  this lawsuit, is Charlene Carter.  She was a

2  Southwest Airlines flight attendant.  All Southwest

3  Airlines flight attendants are represented by a

4  union called Transportation Workers Union Local 556.

5          Any issues in that paragraph?

6          MR. GILLIAM:  None from plaintiff.

7          THE COURT:  Okay.  We have got three more

8  paragraphs.

9          So the second one is this:  After being a

10  member of the Union for many years, Carter resigned

11  from Union membership and became what is called a

12  fee paying non-member objector.  Carter expressed

13  her objections to the Union and Union leadership in

14  several ways, including by sending messages, making

15  posts on social media, and participating in an

16  effort to recall Union leadership.

17          Any objections to that paragraph?

18          MR. GILLIAM:  No, your Honor.

19          MR. McKEEBY:  No, your Honor.

20          THE COURT:  Okay.

21          The third paragraph is:  Carter is a

22  Christian who believes that abortion is the taking

23  of a human life, contrary to the teachings of the

24  Bible and the will of God.  In January 2017, certain

25  Southwest Airlines flight attendants, who were

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 95 of 214   PageID 9222
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                          Page 95

1   members of the Union, attended the Women's March in

2   Washington, DC.  Later, Carter sent private Facebook

3   messages to the Union president.  Those messages

4   involved the Union's activities at the Women's March

5   and the topic of abortion.

6           The Union president reported Carter's

7   messages to Southwest.  Southwest fired Carter in

8   March 2017.

9           MR. GREENFIELD:  I think -- your Honor, if

10  I may, your Honor.

11          THE COURT:  You may.

12          MR. GREENFIELD:  I believe that limits to

13  a degree the content of the messages that were sent.

14  I think that is a partial recitation of what was

15  included in those messages.  But it also, we would

16  contend, contain threats of violence against

17  President Stone.

18          THE COURT:  So you have got two components

19  there.  One, those weren't all the messages.  So

20  temporally before the March, there were other

21  messages.

22          MR. GREENFIELD:  There was other messages

23  before the March.  And then after the March, in the

24  ones that you are discussing right now, there is

25  more included in those messages than just objecting

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 96 of 214   PageID 9223
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                     Page 96

1   to the Union expenditures, Union activity, et

2   cetera.

3          THE COURT:  Yes.  Well, how can I say that

4   in a non-characterizing kind of way?  Is the

5   problem, right?  I can't call it a threat, as a

6   judge.

7          MR. GREENFIELD:  Right.

8          THE COURT:  That is up to the jury to

9   determine if it is a threat.

10          MR. GREENFIELD:  Potentially, a way to do

11   it fairly to all sides would be to -- and I'm just

12   talking out loud here -- reading the message itself?

13   Potentially?  Just so there is no discrepancy as to

14   what actually was said.  As is, I think it -- it is

15   misleading.

16          THE COURT:  Any thoughts from anyone else

17   on how to handle this?

18          MR. McKEEBY:  I have a different concern,

19   not on that.

20          THE COURT:  Understood.

21          Well, let me say just first on timing, you

22   make a good point that there were messages before

23   the March as well.

24          And so I can change it to say, Carter sent

25   private Facebook messages to the Union president

 1  before and after the March.  Those messages after

 2  the March involved the Union's activities at the

 3  Women's March and the topic of abortion.

 4          So I still need to think through how to

 5  handle that.  I mean, I don't like reading specific

 6  evidence here because I think it highlights

 7  evidence.  So I don't know if there is another way

 8  to do it.

 9          I can keep thinking through it.  Y'all can

10  keep thinking through it and communicate by email to

11  the Court, if there is a better way to do it.

12          What I will do after this is over, I will

13  have Mr. Frye email y'all out my version of the

14  thumbnail sketch of the case, just so you can see

15  the latest of where I'm at.  If you have suggestions

16  on marking it up, you can send those back over

17  email.

18          Yeah, you have a different concern?

19          MR. McKEEBY:  Yes.

20          The way it read makes it sound like the

21  only reason that the flight attendants went to

22  Washington was to attend the Women's March, when, in

23  fact, there was also a Union -- excuse me, a Women's

24  Committee Meeting that was kind of official Union

25  business.  And so I think there should be some

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 98 of 214   PageID 9225
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 98

1   modification of the language to reflect that.

2            THE COURT:  All right.  I will take a stab

3   at that and I will show y'all where my ultimate

4   language ends up later on today.  Okay?

5            Let me ask Carter, any concerns from

6   Carter's team on where that paragraph is now?

7            MR. GILLIAM:  The one about the Women's

8   March?

9            THE COURT:  Yes.

10           MR. GILLIAM:  No, not the way it is now.

11           THE COURT:  Understood.

12           And anyone can flag for me concerns over

13  email at any point on what language I'm coming up

14  with.

15           Okay.  The last paragraph is, Carter has

16  sued Southwest and the Union for purported

17  violations of federal laws, including laws that

18  protect speech and religion.

19           Southwest and the Union deny any

20  wrongdoing.  That is why you are here.

21           I tried to keep it short and not get into

22  RLA versus Title VII and all of that.

23           Any questions or concerns on that last

24  paragraph?

25

 1            MR. GILLIAM:  No objections from the

 2    plaintiff.

 3            MR. McKEEBY:  I have a concern about the

 4    reference to speech as opposed to opposition of

 5    Union practices.

 6            I don't think that is accurate to say that

 7    the RLA protects speech per se.

 8            THE COURT:  So your argument would be laws

 9    that protect opposition of Union practices and

10    religion?

11            MR. McKEEBY:  Yes.

12            THE COURT:  I will take a look at that.

13            MR. GREENFIELD:  I would just mirror the

14    same concern, your Honor.

15            MR. GILLIAM:  And for what it is worth,

16    your Honor, we did argue why RLA 152 third and

17    fourth do embrace speech as much as every other

18    activity.

19            Protections of association are actually

20    extended, too.  I think we cited Bonda as part of

21    that.

22            THE COURT:  All right.  I will take a

23    look.

24            So we have talked about the time clock.

25            Let me just say for your time clock

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 100 of 214   PageID 9227
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 100

1    expectations, I try to have my juries here in the

2    box 9 to 5, as the general rule.  And an hour break

3    for lunch that we try to take around noon.

4            We basically have one morning break that

5    happens midmorning, which is around 10:30.  We try

6    to keep our breaks 10 minutes, so we keep the trial

7    moving.

8            We try to take two 10-minute breaks in the

9    afternoon.  The first one is usually around 2:30;

10   the second one is usually around 3:45.

11           I say that because if you have a witness

12   on the stand, we have two options of handling this,

13   as you approach one of those times, whether it is

14   10:30, noon, 2:30, 3:45, 5, as you approach one of

15   those times, I will give you some leeway, you know,

16   5 to 10 minutes to blow by that if you're getting to

17   good stopping point with a witness or finishing with

18   a witness.

19           If you just keep plowing through it and

20   ignoring the clock, I am going to have to step in at

21   the 5 or 10-minute mark and protect the jury's right

22   to go potty.

23           So I would rather let you call the break,

24   instead of me.  But if you don't call it, I will.

25           Does that make sense?

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 101 of 214   PageID 9228
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                          Page 101

 1            If you're wondering if you can get to a
 2   break, if you want to call a sidebar to talk about
 3   it, we can plow through it for a few extra minutes,
 4   that is fine, too.
 5            That is on me, if you are trying to be
 6   efficient with the jury's time, then that sidebar
 7   time won't count against you.
 8            But our jurors will have kids or things
 9   after 5:00 that they have got to attend to.  So if
10   we go to 5 or 5:10, I usually don't hear complaints
11   from the jurors.  if we are blowing through to 5:30,
12   and didn't give them a 24-hour heads up, so that
13   they can make preparations, then things get dicey.
14            So 5:10, I don't have a problem with.  If
15   we go beyond that, I'm just going to cut you off for
16   their sake.
17            So based on that, if we are rigid with our
18   schedule and keep our break time to a minimum and
19   our lunchtime to a minimum, we can usually get about
20   six hours on the clock a day, right?
21            In theory, it is seven hours, but then
22   when you take out lunch, then you take out the
23   breaks and the inevitable time on changing witnesses
24   and things like that, that is -- that is time that
25   really doesn't count on the clock.

1            We have about six hours a day, if we have

2  12, six and six, it is basically four days of the

3  evidence phase of the trial.  That time does count,

4  closing argument, which goes past the evidence

5  phase.  It will take more than four days.  So if we

6  pick a jury on a Tuesday, we are getting close to at

7  the end of the day Monday or the beginning of the

8  day on Tuesday the next week.  But we will take some

9  time out of that to do a charge conference and hear

10  any directed verdict motions and then read the

11  charge to the jury.  Obviously, that doesn't count

12  against your time.  The jury will probably get the

13  case on Tuesday.

14            Okay.  Any questions on the time clock?

15            Okay.  Let's talk about exhibit

16  objections.

17            I'm not going to go through specific

18  exhibits here.  I know y'all will give me a new

19  exhibit list.  And then the file sharing version, I

20  can't remember who did it, I think counsel for

21  Southwest did it.  That worked great last time.  So

22  if you have got any new exhibits, or if you just

23  want to dump, we changed some pages, it is just a

24  new, clean copy.  Either way, that is fine.  We

25  could swap out specific exhibits or do a dump of the

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 103 of 214   PageID 9230
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 103

```
 1   new ones.
 2              As far as the exhibit objection protocol,
 3   I have got your status report, where you have got
 4   your exhibit objection and response.
 5              Assuming that attempted exhibit list
 6   doesn't change any of that, I will tell you how I
 7   work through those.
 8              I try to minimize my sidebar time by
 9   working through as many of those exhibit objections
10   outside the jury's hearing as possible.
11              What we do is, the night before evidence
12   will happen the next day, at 6:00, whoever is
13   putting on evidence the next day, sends an email out
14   that says, Here are the witnesses we plan on putting
15   on tomorrow, and here are the exhibits we plan on
16   getting to tomorrow.
17              You don't have to tell me the order of
18   your witnesses.  You don't have to tell me the order
19   of the exhibits or what exhibits go with what
20   witnesses.  I just want to know for planning
21   purposes what witnesses do you think we will hear
22   from, what exhibits do you think that you will try
23   to put into evidence.
24              That is the 6 p.m. email from someone who
25   is putting on evidence the next day.
```

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 104 of 214   PageID 9231
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                              Page 104

1            At 8 p.m., I like to see a response from

2   the other side that says, Hey, we already let you

3   know our objections to those exhibits in the status

4   report, here are the ones we are still maintaining,

5   right?

6            So you propose to put on 20 exhibits

7   tomorrow.  We file objections to 10.  We are still

8   maintaining those 10.  If you want to give me even

9   more detail about your objection than you gave in

10  the status report, you can do that.

11           You can talk to me like we are at a

12  sidebar, right?  We only speak in code when the jury

13  can hear us.  At a sidebar, you can speak normally.

14  You don't have to say hearsay or 806.  You can talk

15  to me normally.

16           You can do that in the email as well.  And

17  y'all did in the status report, and I appreciate

18  that.  You don't have to say anything extra beyond

19  what you said in the status report.  I just need to

20  know you are still maintaining your objections.

21           What I do is I stay up late a night, look

22  at the exhibits, look at the objections, and then

23  the next morning, we come in at 8:30 and we go

24  through one at a time.  And y'all can give me some

25  more argument, just like we would be at a sidebar.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 105 of 214   PageID 9232
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                                June 16, 2022                        Page 105

1  You can spend even more time than we would at a

2  sidebar, make sure we get our exhibit rulings right.

3            What we do is then I rule on that

4  objection.  And then when that exhibit is offered

5  into evidence, later on when the jury shows up, at

6  9:30, they are there.  We have already ruled on the

7  objections to Exhibit 1.  And then Carter says,

8  Offer Exhibit 1 into evidence.  And then I will look

9  to y'all and y'all can say same objections.  And

10  that relates back to our status report, where y'all

11  filed them in writing, and our discussion from that

12  morning on the record, where y'all made your more

13  in-depth argument.

14            And I will say same ruling as this

15  morning, I'm overruling the objections.  It is

16  admitted and you can publish, right?

17            And then Kevin and I will unmute the jury

18  monitors and they can see the exhibit.

19            We handle exhibit objections that way --

20  well, I only do this in trials where the lawyers are

21  good at cooperating with each other.  In trials

22  where the lawyers are unprofessional, I save all of

23  that for trial.  And I say, if you want to object,

24  you have got to come over here to a sidebar.  You

25  can speak in code in front of the jury, objection,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 106 of 214   PageID 9233
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 106

1    hearsay or objection, 806.

2                But if you want to explain your objection,

3    you have got to come over here to sidebar.  And the

4    loser of the sidebar gets the time tagged against

5    them.

6                That is my process for unprofessional

7    lawyers.  Because they just like cutting each up and

8    incentivize them not to cut each other up because

9    that wastes the jury time.

10               For y'all, I think y'all are professional

11   enough to where I want to reward y'all.  I want to

12   get here early and make sure y'all can use your time

13   efficiently, not at sidebar, but instead walking

14   through an exhibit with the jury.

15               So questions on that protocol?

16               MR. McKEEBY:  Yes.  I think we alluded to

17   this earlier.  We are planning on conferring about

18   perhaps streamlining the exhibits which might result

19   in effectively a new list.

20               Is that going to create problems with

21   utilizing the joint status report if we have new

22   numbers or how do you want to --

23               THE COURT:  How about this?  Can y'all

24   give me a new snippet from the status report that

25   has your objections in it?  Does that make sense?

 1   This exhibit may move to this number, it may have a

 2   few pages redacted out, cut out.  That is all fine

 3   by me.

 4              My main concern is I have the objections

 5   and the responses from the status report with the

 6   same numbers you are now going to proceed with on

 7   your exhibit list.

 8              What I don't want y'all to do is reopen

 9   and rehash all new exhibit objections.  But I trust,

10   again, y'all are professionals, so I trust that, you

11   know, if anyone is doing that, you will call it to

12   my attention.

13              But thank you for flagging that.  And,

14   again, I'm not going to turn to these until -- what

15   is it?  Tuesday night at 6:00.  I will get Carter's

16   first email that says, here are our witnesses and

17   exhibits for Wednesday.  And at 8 p.m., I will get

18   y'all's email.  It is not like I'm reviewing those

19   right now.  I will review those nightly before

20   trial.

21              So now y'all can have a document and make

22   sure that it is correct and it won't steamroll any

23   of my work.

24              Yes, that is the process, is, you know,

25   obviously Tuesday night, we will have the Wednesday

1   disclosures by email.  Wednesday, here is the

2   objections we are maintaining from both opposing

3   counsel.

4            The only awkwardness comes to when there

5   is a day that Carter might hand the baton over.  If

6   we start getting to that point, I will flag it and

7   say, Okay, y'all are going to need to, tonight, say

8   if we get to you tomorrow, who you want to put on

9   witness- and exhibit-wise.

10            How I handle protocol with

11   multi-defendants is, my default is to go by the

12   order of the complaint, right?

13            So if they hand the baton over, they rest.

14   Then I'm going to say Southwest can call its first

15   witness, unless y'all tell me otherwise.  I'm

16   amenable to y'all having some sort of agreement,

17   actually the Union is going to put on witnesses

18   first, or you are going to intermingle for witness

19   scheduling reasons.  That is fine by me.

20            But I will look over at you, I will give

21   you the default that Southwest is next.  Y'all can

22   tell me if you have an agreement to override that

23   default.

24            That is also true for cross-examining one

25   of Carter's witnesses.  I will look to Southwest

1    first, but if y'all agree that the Union should go

2    first, that is fine by me.  I don't care.

3               Any questions on that sort of protocol?

4               I will try to keep an eye on the clock and

5    make sure I know the day I think we are handing the

6    baton over, so that that night before we know that

7    someone from the defense needs to designate

8    witnesses and exhibits to fill up part of the day.

9               Okay.  I'm going to flag one thing right

10   quick, which is, I don't think it is going to be an

11   issue for y'all because I think y'all are agreeable

12   people.

13              Not every email is a business record.  So

14   for people who vehemently object to everyone else's

15   exhibits, this becomes -- it sounds like y'all are

16   probably going to be agreeable coming in and not

17   hashing through objections too much.

18              But not every email, not every piece of an

19   email is a business record exception.

20              I'm going to read off a case citation that

21   is very enlightening from Eastern District of

22   Louisiana that maps all of this out.

23              It is In Re:  Oil Spill.  It's a Deep

24   Water Horizon case, the MDL.  And the citation is

25   2012 WestLaw 85447.  And the pinpoint is at Star 3,

1  where they walk through the five elements you've got

2  to prove to really get in the full email in the

3  business record exception.

4          No one knows it.  And I expect that y'all

5  have professional agreements to not just hash

6  through each other's exhibits.  It seems like that

7  is the case.  I hope that is the case for y'all's

8  sake because it is much better for you and the jury,

9  if that is true.

10          Okay.  Any questions on exhibit protocol?

11          Let me flag one more thing for y'all.

12          I don't send exhibits back to the jury

13  room unless they were admitted.  So just because

14  y'all have agreed that there are no foundation or

15  authenticity objections doesn't mean that that stack

16  of exhibits will go back to the jury room.

17          Even if there are no additional

18  objections, right?

19          You still have a witness on the stand.

20  You put the exhibit in front of them, offer for its

21  admission.  It is only that subset that I admit into

22  evidence that goes back to the jury room.

23  Otherwise, it becomes a trial by document back in

24  the jury room of documents that they have never seen

25  before, instead of being a trial by the spoken word.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 111 of 214   PageID 9238
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 111

1  And courtrooms, since the dawn of man, has always

2  been where the spoken word is king.

3            So I will still let you have a streamline

4  process and preadmit things for foundation or

5  authenticity reasons, that will speed things up.

6  But it doesn't mean all 100 exhibits go back to the

7  jury room.

8            Any questions on that?

9            Okay.  So I have nothing further on

10 exhibits.

11           Witnesses is next on my list to talk

12 about.

13           So I see the listing of witness issues and

14 the status report at Doc 2060.  I think there are

15 maybe three groups we should talk about in group

16 fashion, and relatedly, at the end of this

17 discussion, we will talk about depo designations and

18 whether our witnesses are unavailable or whether

19 they will be here.

20           But let's talk about these witness issues

21 first.

22           So I think the first group is Southwest

23 and the Union objecting to Carter's witnesses,

24 Rutherford, Burdine, Conlon, Kleburne, and Hudson.

25           So I read the objections from the

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 112 of 214   PageID 9239
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 112

1  Defendants as being that these folks were not named

2  in the initial disclosures.

3           And Carter's response is that they were

4  named by Southwest's corporate rep during that depo

5  and that Southwest isn't prejudiced by Southwest not

6  naming them in its disclosures.

7           Anything Carter to add to that?

8           MR. GILLIAM:  I think as we noted, but

9  also that many of these were people we couldn't have

10 known were involved in the investigation.

11          So when we were doing the initial

12 disclosures, the onus was really on the Union and

13 Southwest to disclose those people's identities to

14 us, in addition to everything else.

15          THE COURT:  Understood.

16          Can I get a take from Southwest or the

17 Union on this group of witnesses?

18          MR. McKEEBY:  Yes, you can.

19          In response to that point, the deposition

20 of Mike Sims occurred on November 2nd of 2020.  If

21 they wanted to -- plaintiff wanted to amend her

22 disclosures to identify these witnesses, she had

23 every opportunity to do so.

24          So to say that it was Southwest or the

25 Union's, frankly, obligation to identify witnesses,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 113 of 214   PageID 9240
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                          Page 113

1   it is just not -- I think contrary to the language

2   and spirit of the rule.

3            THE COURT:  So but why would they have to

4   identify witnesses that came up with a Sims depo

5   that were Southwest employees?

6            MR. McKEEBY:  Because the disclosures are

7   designed to tell us who they intend to call as

8   witnesses in this case.

9            THE COURT:  All right.

10           What is the Union's take?  And then I will

11   hear the final word from Carter.

12           MR. GREENFIELD:  We mirror the position of

13   Southwest.

14           THE COURT:  Okay.

15           Carter, what is the final position on this

16   group of witnesses?

17           MR. GILLIAM:  I'm sorry.  What is our

18   position?

19           THE COURT:  Yes.

20           Do you have anything to add?

21           Particularly, I'm trying to get at the

22   initial disclosure obligations, right?  I know your

23   argument is that they knew about them, their

24   argument is that the list is not so much about who

25   you know about, but who you are wanting to go

1  depose.

2          MR. GILLIAM:  I don't understand Rule 26

3  to at least provide an obligation to disclose the

4  names under -- under (a)(1)A -- what is it?  Roman

5  numeral 1 to alert them to call at trial.

6          We are giving them initial disclosures of

7  who we believe has knowledge of the case.

8          THE COURT:  Yes.  So I guess here is my

9  thought on this.  I get both different views of Rule

10  26.

11          In this context, given that the

12  information was more specifically in Southwest's

13  hands, I think that inherently that would more come

14  up with Southwest's disclosures, initial

15  disclosures, and then we'd hear if they are going to

16  depose them.

17          How we sit here today, I would be inclined

18  to let them call this group of witnesses at trial.

19  The awkwardness is they haven't been deposed.  I can

20  see both sides wanting to depose them, or not.

21          And so my question is, do you want to try

22  to depose them between now and trial?

23          I'm happy to talk about that.  And I have

24  ordered that in past cases, if we are sitting here

25  with an issue of not hearing witness testimony

Case 3:17-cv-02278-X    Document 272    Filed 06/20/22    Page 115 of 214    PageID 9242
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                           June 16, 2022                           Page 115

 1  before we come into trial.  I'm happy to hear if

 2  anyone wants to have a quick depo of a witness.

 3            MR. GILLIAM:  Potentially, with a couple

 4  of them.

 5            I think that that might be -- I guess -- I

 6  guess my initial reaction is potentially.  I hate to

 7  delay the trial or the trial proceedings.  That is

 8  my concern.

 9            THE COURT:  And I would say, I'm not going

10  to, right?

11            So I have had cases where I had the normal

12  one week on Monday, you have the pretrial, the

13  following Monday you have a trial.  And some short

14  depos happen by Zoom Thursday and Friday.  And then

15  at trial no one was flying blind because everyone

16  had talked to them.

17            That is kind of the situation I'm amenable

18  to here.  And I would shorten the six-hour limit,

19  given that there are scheduling issues.  I would say

20  maybe a two-hour limit.  You don't need six hours to

21  have the beginning of the case, feel out everything

22  a person knows.  This is the end of the case.  You

23  pretty know what you are up against, and I wouldn't

24  inconvenient anybody for six hours.  But for two

25  over Zoom, sure.

1              MR. GILLIAM:  And with your -- with your

2    advisement that it would not delay trial, then I

3    would say, yes, we would want to depose.

4              THE COURT:  Okay.  Let me hear from

5    Southwest.  I'm not going to order this just yet.  I

6    want to hear their concerns.

7              MR. McKEEBY:  I mean, the concern is just

8    a matter of timing, given I don't know how many

9    depositions we are talking about.

10             I mean, we are talking about a lot of

11   people.  I just don't think it is practical to

12   require us to produce a half dozen witnesses for

13   deposition when we are trying to gear up and

14   coordinate with respect to an amended exhibit list

15   and get ready for trial.

16             I think that is too much of a burden given

17   that they had the opportunity to take these

18   depositions during the normal course.  I don't think

19   that is fair, and we would object to it on that

20   ground.

21             THE COURT:  Do you recall what date Sims'

22   deposition was?  I can't remember it.  I wasn't

23   aware of it.

24             MR. McKEEBY:  November 2nd, 2020.

25             THE COURT:  November 2nd.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 117 of 214  PageID 9244
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                     Page 117

 1              And when was the discovery cutoff in this
 2  case?
 3              MR. GILLIAM:  The initial discovery
 4  cutoff, when that deposition was taken, was
 5  November 30th of 2020.
 6              And you may recall, your Honor, that we
 7  sought to extend the discovery deadlines for various
 8  reasons.  And then that was granted, May 5th,
 9  2021 -- I believe around the beginning of May.  I
10  may be wrong on the actual day.
11              And that was extended, I want to say, late
12  July 2021, maybe early August 2021.
13              THE COURT:  So can I ask why there weren't
14  any depo notices after the extension of the fact
15  discovery cutoff?
16              MR. GILLIAM:  I think that we were trying
17  to conduct some initial discovery and with some of
18  the other discovery issues, we continued to face
19  with getting into some of the initial discovery, we
20  just ran out of time.  We didn't have time to
21  conduct additional depositions.
22              THE COURT:  Okay.
23              So here what I plan on doing on this one,
24  I'm planning on allowing depos.  I'm going to limit
25  them to one hour.

1              I think there is exposure on both sides

2    here.  I think Southwest could have named these

3    people in the amended initial disclosures.

4              I think y'all also had some knowledge of

5    them, right?  So there is risk on both sides.  At

6    the end of the day, if I do plan on allowing them to

7    be called for trial, I think it is fairest to both

8    sides to be able to have them sit for a depo.

9              I will allow it by Zoom.  I will allow

10   everyone to be in different rooms, right?  I don't

11   want to inconvenience people's travel schedules.  So

12   one hour max for the deposition by a lawyer from

13   Carter on any of these witnesses.

14             If there are scheduling issues that are

15   coming up, let me know, and I will figure out if

16   there is any -- any changes we need to make.

17             I hate doing this, but sometimes there are

18   times where you can have someone out sitting in the

19   hall, right?  The person can only come in for their

20   trial appearance and there can be a person out

21   sitting in the hall.  I don't like doing that, but

22   sometimes it is better than nothing.

23             We will figure out what kind of

24   accommodations we need to make sure people's

25   schedules don't need to change.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 119 of 214  PageID 9246
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 119

 1            MR. McKEEBY:  Your Honor, I already know

 2    that there are major scheduling issues, at least

 3    with respect to trial attendance with some of these

 4    witnesses.  We didn't understand that they were

 5    going to be part of the case.

 6            I have a witness that is going to be Kuwai

 7    from July 1st to July 8th.  Another witness who

 8    going to be in Jamaica from July 1st through

 9    July 8th.

10            And so another practical concern is that,

11    but also, you know, in terms of trial, I mean, for

12    Southwest -- for folks that Southwest has control

13    over, then certainly we will work with them in terms

14    of coordinating a time to take one-hour depositions,

15    hopefully not too many.

16            But in terms of trial attendance, I have

17    those concerns.  And also, I got -- yesterday a

18    process server showed up at my office and served me

19    with 15 subpoenas for these folks, many of whom are

20    not Southwest employees.  Many of whom are well

21    outside of the 100-mile limitation for subpoenas.

22            I don't, frankly, know what to do with

23    these trial subpoenas other than perhaps file a

24    motion to quash.  But I -- I didn't -- I'm not

25    authorized to accept service with respect to trial

1   subpoenas.

2            THE COURT:  Can I pause that right quick?

3            So I have got two other groups of

4   witnesses who had these witness issues from the

5   status report.

6            And then I think we need to talk about

7   availability of witnesses and trial subpoenas as

8   perhaps a discrete issue.

9            But so bucket one, I just want to make it

10  clear, like, Southwest do everything you can to make

11  sure that these five -- this is Rutherford, Burdine,

12  Conlan, Kleburne, Hudson, have an hour max

13  deposition.  It can be by Zoom from anywhere before

14  trial starts.

15           If that becomes an issue, then we can talk

16  about, do we need to allow it to happen after trial

17  starts.

18           Bucket two of folks was to -- I guess it

19  is Southwest's objections to Carter witnesses,

20  Lacore and Shaffer.

21           Southwest's objection is they were copied

22  on investigation emails and they lack relevant

23  information.

24           So what I will say here is, I don't think

25  that these witnesses need to sit for a depo, right,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 121 of 214   PageID 9248
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         June 16, 2022                      Page 121

1   if you are telling me that they lack relevant

2   knowledge.

3            What I'm going to do is, though, I don't

4   sideline fact witnesses in their entirety.

5            I could on an expert, right?  If an expert

6   has something that is so critically defective under

7   the Daubert standard, that I'm just going to

8   sideline them.

9            But if it is a fact witness, the fact

10  witness can show up and say what their name is.  So

11  I don't sideline fact witnesses on that basis.

12           But if they lack relevant information

13  beyond that, then question two may have an

14  objection, right?  Or it may not be an objection, I

15  don't know about that, right?

16           This is where I put the time clock in

17  place because if they want to call that witness and

18  put them on the stand, when you said they lack

19  relevant information, that is a big gamble.  Because

20  if the witness says, Hey, I don't have anything and

21  they have burned some of their time, that is also an

22  inefficiency that makes me not want to extend their

23  time, if they run out of it and ask for more.

24           So how it stands now is, I wouldn't have

25  these folks sit for a depo, but I wouldn't exclude

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 122 of 214   PageID 9249
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                          Page 122

1  them from trial.  And I think that puts the onus

2  back on Carter to make sure they are calling people

3  that have relevant knowledge.

4          Questions about how I plan on handling

5  this bucket with Shaffer and Lacore?

6          MR. McKEEBY:  One observation, I guess.

7          Shaffer is one of the people who is not a

8  Southwest employee, so I don't have any control over

9  her.

10          THE COURT:  Yes.

11          Let's give that bucket 4.  So bucket 4 is

12  availability, and there is plenty to talk about

13  there.

14          Bucket 3, Carter objections to defense

15  witnesses, Sims, and particular questions on the

16  scope of Carter.

17          So on Sims, I guess Carter is objecting to

18  the last chance agreement, offer to reinstate her

19  employment.  The step two grievance hearing and the

20  arbitration hearing.  The basis would be lack of

21  relevance, prejudice, inadmissible settlement offer.

22          So in my written order, I denied a limine

23  point on excluding testimony and evidence about the

24  last chance agreement.  I think 408, not everything

25  stays out.  It has got to have another purpose.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 123 of 214  PageID 9250
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 123

1            I think I spelled that out in the written

2    order yesterday.

3            But, of course, that was on the last

4    chance agreement.  This argument is broader, it

5    includes step two grievance hearing, the arbitration

6    hearing.

7            So I will say some of this involves

8    exhibit issues, right?  And exhibit objections.  And

9    then I'm still digging into arbitration, whether or

10   not that would come in, the arbiter's finding would

11   come in as an exhibit or not.

12           So some of these things I can't get until

13   we have our emails the night before and our

14   discussions at 8:30.

15           Is there anything else that Carter wants

16   to argue on this at this point in time knowing that

17   I may be a little stymied in not being able to rule

18   clearly, unless it is in the context of an exhibit?

19           MR. GILLIAM:  I think that it's there,

20   too, but also, I think this falls into the category

21   of testimony from Mr. Sims regarding

22   post-termination proceedings, not specifically the

23   last chance agreement itself.

24           But to the extent that it involves, say,

25   the Union's representation, Mike Sims was the VP for

1  Southwest and In Flight, but he was post-termination

2  proceedings.

3            So that is the other thing to make a

4  slight distinction with -- to contrast it from the

5  last chance agreement itself.

6            THE COURT:  Understood.

7            Then let me ask, can I get some flavor

8  from Southwest on what the post-termination

9  proceedings were?

10            I guess I'm trying to figure out, like,

11  what they were, what is their relevance.

12            MR. McKEEBY:  I don't know.  I'm not sure

13  what he's talking about.

14            THE COURT:  Can I ask for a clarification,

15  then?

16            MR. GILLIAM:  Sure.

17            That is the grievance the Union filed and

18  that Sims reviewed after Charlene Carter was

19  terminated.

20            MR. McKEEBY:  Okay.  So that is the step

21  two grievance?

22            MR. GILLIAM:  The step two grievance

23  proceeding.

24            MR. McKEEBY:  That, again, was another

25  layer of the process in which Southwest reviewed and

1   assessed the decision whether it was the right

2   decision.

3            Mike Sims sits over that process as part

4   of the Collective Bargaining Agreement, and rendered

5   the decision, after which is when he presented

6   Carter with the last chance agreement.

7            It is part of the process.  It is

8   fundamental to the fairness associated with the

9   process, and so there is no reason to limit that

10  evidence.

11           MR. GREENFIELD:  And, your Honor, if I

12  may, as well, I think Mr. Sims' testimony in that

13  regard is also crucial to the Union's claims of duty

14  of fair representation.

15           His role in that and what influence the

16  Union may have had over Southwest in Carter's

17  ultimate termination, et cetera, I think that is all

18  crucial to our showing in this case.

19           THE COURT:  Understood.

20           Then I will just stick to my prior

21  rational on limine point where I said this is part

22  of the story that Southwest and the Union can

23  continue to tell.

24           Again, relevance, if you are going to

25  spend all your time on it, that may be unwise.  But

1   I think -- I can't let you carve it out.  I think it

2   has some relevance to the claims.

3            Understood Carter was also objecting to

4   testifying on the Union's representation during the

5   grievance process.

6            The argument is that that is irrelevant

7   and prejudicial.  I think based on my prior rulings,

8   I think I need to allow this to come in, right?  It

9   is the completion of the story that needs to be told

10  on behalf of Southwest and the Union.  So I don't

11  think I can make it off limits for Carter when I'm

12  not making it off limits for other witnesses.

13           Okay.  So now, on witnesses, what we need

14  to do is talk about availability of witnesses,

15  right?

16           So I have that filing that y'all made last

17  night on witness availability.  So obviously --

18  well, and that is Carter's filing.

19           And I know Carter had raised specific

20  witnesses that were Emlet, Guttierez, Parker and

21  Schneider.  You may have more you want to raise, but

22  this is sort of the question that I'm working

23  through is, if this is a situation where Southwest

24  still employs them, then even if they are beyond 100

25  miles, they are still under the control of

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 127 of 214  PageID 9254
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 127

1  Southwest, so we need to get them here.

2          If it is a scheduling issue -- and I'm

3  trying to think what the last day of trial will be.

4          I will say that I'm easy to please when it

5  comes to witness scheduling.  If there is a final

6  day we think y'all are putting on evidence and some

7  of your witnesses will only be back in Texas for

8  that final day, that is fine by me.

9          I don't care that you may have witnesses

10  that bookend to the Union's witnesses, if that makes

11  sense.  That is not a problem in my mind at all.

12          MR. McKEEBY:  I almost feel like we need

13  to go over each witness individually.  The ones that

14  you have identified, Guttierez and Imlet are no

15  longer Southwest employees.  Both have indicated

16  that they will cooperate and appear.

17          But to say that I have control over them

18  is another matter.

19          Mr. Schneider --

20          THE COURT:  Can we take them one at a

21  time?

22          Let's do Guttierez first.  Guttierez is a

23  former employee?

24          MR. McKEEBY:  Correct.

25          THE COURT:  And yeah, you got to my

 1  question, Mr. McKeeby, which is, there are plenty of

 2  formers who will still cooperate.

 3          And so that was not my question, but your

 4  form is, will they be willing to.  If they won't,

 5  then we need to go through a separate analysis.  If

 6  they will, I'm fine accommodating schedules as much

 7  as I can, which includes -- and let me just be super

 8  clear on this, if only you are calling that witness,

 9  who is out of the U.S. or former employee, and they

10  can get there for a last day of trial, in my view

11  what I can do is allow that witness to go out of

12  turn and you can rest conditionally.

13          For example, you rest, but we have two

14  other witnesses who were all playing nice and

15  accommodating their schedules.

16          And if when we do that, then anytime there

17  is a directed verdict motion, I take it up at the

18  end, once you've met the condition and gotten in

19  your final witness.

20          But I view that notion where the

21  plaintiff's evidence got in everything they wanted

22  to, but I sidelined the defense evidence that came

23  in, during the period of time we were waiting on the

24  plaintiff's other witness to show up.  Does that

25  make sense?

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 129 of 214   PageID 9256
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 129

1          MR. GILLIAM:  I think so.

2          THE COURT:  I try to be as accommodating

3   as I can to y'all on witness schedules.  And so for

4   the bucket of people who can make it late in trial,

5   after they have already rested conditionally, then

6   we would take them out of turn.

7          MR. McKEEBY:  Okay.  But I don't know

8   Ms. Guttierez's schedule.  All I know is she

9   indicated a willingness to come to trial.

10          So I just -- I can't speak to the level of

11  specificity that I think you are contemplating.

12          THE COURT:  Well -- and so my thought is

13  what it comes next to is, if you have a witness who

14  is not under your control but otherwise willing,

15  then what we need to hear from Carter is -- and I

16  don't need to be in the middle of this -- but

17  proposed dates, right?

18          So Carter, if you have got 12 hours,

19  obviously, you are not the only one questioning

20  witness at first, right?  That 12 hours is your

21  direct mixed with their cross.

22          I think you need to start finding dates

23  for when you would take each witness.  We are going

24  to have opening argument on Wednesday, July 6th.

25  But then before lunch, we are off to the races on

1  witnesses.

2            So what I would like y'all to do is by the

3  end of the day try to send a list to Southwest of

4  what days you would like witnesses.  And then if

5  Southwest is representing those -- I mean, I

6  understand -- I represented when I was in private

7  practice, I represented formers as well.

8            You might be representing them but not

9  controlling them.  And so I get that distinction

10 very clearly.

11           You can pass along those dates and see if

12 they work.  If they don't, then we will have

13 out-of-bound dates, right, which is, we expect this

14 case to go to the jury on that Tuesday of the

15 following week.  Is there any time in there that you

16 can make this work.

17           So if you can get the preferred dates, and

18 then if that doesn't work, we will talk through the

19 fallback dates where you take the witnesses after

20 you have already rested conditionally.

21           MR. GREENFIELD:  And, your Honor, if the

22 Union can be looped into that conversation because

23 with at least a couple of the witnesses there is

24 similar control sort of issues, but some willingness

25 on the part of at least some of the witnesses to

1   attend.  But, again, not in our control to make them

2   be here.

3              THE COURT:  Got it.

4              Okay.  So Guttierez is a former, who has

5   at least expressed intent to cooperate.

6              MR. McKEEBY:  Correct.

7              THE COURT:  Let's keep going through all

8   of those for Southwest and Union, and we will figure

9   out who is in what bucket.

10             But I do think regardless of what bucket

11  they are in, we need Carter to say perhaps what

12  witnesses -- since they are pretty much all of your

13  witnesses, say what witnesses they would like to

14  take on what days so we can try to match up

15  schedules.

16             MR. McKEEBY:  And one thing I would note

17  about Guttierez that distinguishes her from some of

18  the others is that she's local, the fact that she's

19  here.

20             THE COURT:  Okay.  So that is Guttierez.

21             Who is the next one that you mentioned?

22             MR. McKEEBY:  Imlet, I believe.

23             THE COURT:  Imlet.

24             MR. McKEEBY:  She's similar in that she's

25  a former employee, who has expressed a willingness

1    to appear.

2              She is different in that she lives in

3    Colorado, so she would be flying in.

4              THE COURT:  Okay.

5              Who should we talk about next?

6              MR. McKEEBY:  Mr. Schneider is a current

7    Southwest employee who lives in Colorado.  He will

8    be flying in.

9              Again, what I would ask is that we confer

10   about -- to the extent that they want to call him as

11   part of their case-in-chief, the protocol that you

12   just described sounds good to me in terms of

13   identifying a time to require him to be here.

14             I guess one other question, though, for

15   someone like him, and, I guess, Imlet and Guttierez

16   as well, to the extent they are being called as part

17   of their case-in-chief, am I going to be allowed to

18   question them fully on, I guess, it is redirect

19   or do I -- because I don't -- what I don't want to

20   do is have to have him sit here in Dallas and wait

21   until we are ready for him.

22             Is that going to being acceptable?

23             THE COURT:  I am thrilled about trying

24   this case because y'all are asking these questions.

25             Normally this question comes up after all

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 133 of 214  PageID 9260
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 133

1  of the three rounds of questioning of a witness.

2  And I say, am I excusing you?  Parties, let's come

3  huddle at sidebar.

4          And then they say, well, yeah, we would

5  like to keep him.  Did you ask all the questions

6  that you wanted to.  Cross-examining lawyer, well,

7  no.  Okay.  Well, we should have covered that on the

8  front end.

9          I'm thrilled that you are smart enough to

10 bring that up.  That is in my outline.  Thank you

11 for bringing that up.

12          Here is how I handle these.  I prefer if

13 it is out-of-town witnesses, for the parties to be

14 okay handling them all at once, if they can, right?

15 In which case I would allow a wide open cross,

16 right?  Ask any question you want to, and when we

17 are done with a witness, we are done.

18          That is how I prefer we handle it.  There

19 are some times when there is an acute reason from

20 the plaintiff where they can't have those questions

21 that are on wide-open cross cluttering up their case

22 for directed verdict reasons.

23          But yeah, I think we're going to have a

24 slightly odd record because I think we may have some

25 records that have to get taken at the very end of

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 134 of 214   PageID 9261
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     June 16, 2022                     Page 134

1   the case.

2            I can segment directed verdict things all

3   day long, right?

4            So my preference is for out-of-town

5   witnesses, let's handle them all at once, let's do

6   wide open cross.  After we are done with all the

7   questions, we will huddle at sidebar, everyone good

8   with letting them go.

9            If not, we will talk about it.  And I can

10  excuse from trial, from the trial stand, but not

11  from the trial and make them subject to recall

12  later.

13           Any questions or concerns on that?

14           MR. McKEEBY:  Your Honor, I just wanted it

15  to be stated and not unspoken, I think it is assumed

16  from this conversation, but we do want all of these

17  witnesses during our case-in-chief.

18           THE COURT:  I would assume that that is

19  your preference.  And that is why I am expecting in

20  the communication by the end of the day, you would

21  want them all before your calculation as of when you

22  would rest, right?  Does that make sense?

23           So that is my guess.

24           And that makes sense to me.  I think you

25  should ask that, as an initial matter, if we have

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 135 of 214   PageID 9262
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 135

1  travel plans with a couple witnesses who makes that

2  difficult, then we can start talking about if we

3  take them out of turn.

4          But I do have a preference for handling

5  out-of-town witnesses all at once.  If they are in

6  town, I don't care.  If you want to deal with them,

7  I think that is great and the jury likes hearing

8  from them once.  But it doesn't mean that I'm going

9  to force you on an out-of-town witness -- on an

10 in-town witness to handle them at once.

11         So we have covered Guttierez and

12 Schneider.

13         MR. GREENFIELD:  Your Honor, if I may,

14 just to back up, the only thing I see as a potential

15 issue or conflict on that is if certain individuals

16 aren't necessarily held to the end, then potentially

17 calling them back as a rebuttal witness for

18 testimony that would come out after they were here.

19         That would be the only kind of caveat I

20 see that could create an issue for our presentation,

21 at least.

22         THE COURT:  It is.  And so I never mind

23 calling a witness back as a rebuttal witness.

24         So what I can do is, I mean, we could have

25 an agreement where we try to handle all out-of-town

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 136 of 214   PageID 9263
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        June 16, 2022                        Page 136

1   witnesses with wide open cross, and try to get in

2   all questions we are aware of at the time.

3          If there is other testimony that comes up,

4   that is a changed circumstance, where we need to

5   recall them, so be it.  Does that make sense?

6          So it may be that we have this agreement

7   for wide-open cross, everyone takes their shots that

8   they know about it.  But I don't excuse any witness

9   from the trial and make them all subject to recall.

10          MR. PRYOR:  Your Honor, on the conditional

11   close, when the plaintiff does a conditional close

12   because of a witness or two that the defendants are

13   to provide but aren't able to because of scheduling,

14   the plaintiff will still go first in the examination

15   of that witness?

16          THE COURT:  Yes.

17          And what I could do on a conditional

18   close, if we have scheduling issues where there

19   needs to be an out-of-turn witness, I can tell the

20   jury, Hey, we've got a couple witnesses the

21   plaintiff is going to call later on in the case but

22   they are done with the witnesses we have available

23   for them now.

24          Now we are going to hear from the defense

25   until we get those plaintiff's witnesses later.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 137 of 214   PageID 9264
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 137

1          I can do that to try to say that I'm sort

2    of the schedule coordinator, even though I'm not,

3    and just make it not look like y'all are up to

4    shenanigans, if that makes sense.

5                Okay.  So who is after Schneider?

6                MR. McKEEBY:  I'm not sure.

7                THE COURT:  Okay.

8                MR. McKEEBY:  Unless you want me to pick

9    someone.

10               THE COURT:  You can just pick someone.

11               I'm just trying to talk through anyone who

12   we might have issues with, either travel or former.

13   Does that make sense?

14               MR. McKEEBY:  Well, there is yet another

15   bucket, and maybe I will get to these folks now,

16   which are a group of four flight attendants who I

17   understand to be currently employed.

18               Among the people who are in these

19   subpoenas, that are not local, and I don't know

20   that, you know -- I mean, they are rank and file, if

21   you will, employees, not managers.  They are not

22   within the same control as someone who is appearing

23   as an executive or supervisor.

24               So I don't know how we want to handle

25   those folks.  Well, I take that back, a couple of

1   them have been deposed in the case, two of them have

2   not.  But they have listed them in their witnesses,

3   and have also served me with subpoenas for these

4   folks.

5            I don't have the authority to accept

6   subpoenas on their behalf.  I don't know that

7   Southwest does either.  I don't think they are

8   compliant with Rule 45, the subpoenas.  So I guess

9   we should talk about those four people.

10            MR. GREENFIELD:  And I think we have some

11   overlap on those witnesses.

12            THE COURT:  Can we name those four people,

13   the flight attendants?

14            MR. McKEEBY:  Jessica Parker, John Parrot,

15   both of those folks have been deposed.

16            And the other two, Brett Navarez and Brian

17   Talburt.

18            And I apologize, I misspoke.  My

19   understanding is that Mr. Perrit is a resident of

20   Dallas.

21            MR. GREENFIELD:  He's not.  He's from

22   Oregon.

23            MR. McKEEBY:  I'm corrected.  He's a

24   resident of Oregon.

25            THE COURT:  Close.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 139 of 214  PageID 9266
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 139

```
 1              MR. McKEEBY:  Just missed it.
 2              MR. GREENFIELD:  And Ms. Parker is a
 3   resident of Denver, I believe, further upstate.
 4   Further up in Colorado.
 5              And Mr. Navarez is somewhere on the west
 6   coast.  I know he's not here in Dallas.
 7              THE COURT:  Do we know Talburt?  I'm
 8   sorry.  Did you say Talburt?
 9              MR. GREENFIELD:  I don't know his current
10   location off the top of my head, but I don't believe
11   he's based in Dallas.
12              MR. McKEEBY:  Phoenix is what I'm advised.
13              MR. GREENFIELD:  Phoenix is Talburt.
14              THE COURT:  Got it.
15              So for these four, let's talk about -- I
16   mean, you represented the first two in the
17   deposition.
18              But the question is, are you authorized to
19   accept service of the trial subpoena for them?
20              MR. McKEEBY:  I did not represent them in
21   the first deposition.  They were deposed as Union
22   representatives.
23              MR. GREENFIELD:  Yes, your Honor.  They
24   were 30(b)(6) witnesses on behalf of the Union.
25   Specifically, Ms. Parker and Mr. Parritt, at the
```

1   time, they were both members of the Union's

2   executive board and we were able to execute control

3   over them.

4            They are no longer in our control.  They

5   are just rank and file employees of Southwest

6   Airlines at this point.

7            THE COURT:  Understood.

8            So your representation of them could not

9   continue because they are not executive members of

10  the Union now.

11           Southwest might represent them.

12           MR. GREENFIELD:  We have no control over

13  them at this point.

14           THE COURT:  I get that.

15           And so if you have control over them, it

16  is control as a line-level Southwest employee?

17           MR. McKEEBY:  Correct.

18           THE COURT:  Okay.

19           So let me ask questions.  I mean, are

20  there problems with the trial subpoenas that you

21  want to flag now?  Because in my mind, control has

22  shifted from one defendant to another.  But if they

23  are still an employee, I still view them as under

24  control.

25           I know that there are scheduling issues

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 141 of 214  PageID 9268
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 141

1  that can arise with flight attendants and how far

2  out you book, which flight.

3              MR. McKEEBY:  I have no idea.  We haven't

4  been in touch with these folks, as far as I know.

5  So I don't know their availability.  And, again --

6  so I mean, I would have to check and address that

7  issue, I suppose.

8              THE COURT:  Understood.

9              MR. GREENFIELD:  In regard to Mr. Parritt,

10  we don't anticipate any issues with his willingness

11  to show up, at least, you know, communicated

12  scheduling, et cetera, with the plaintiffs.  And the

13  same thing goes with former President Stone.

14              But Ms. Parker and Mr. Navarez has at

15  least on some level expressed unwillingness to be

16  here.  And I have no control to -- just as far as

17  the Union's control is over these individuals.

18              MR. McKEEBY:  And again, that goes to the

19  validity of the subpoenas.  I don't think they can

20  just serve a lawyer of a company with a subpoena of,

21  in this case, a flight attendant and compel that

22  person to be at trial.

23              That is not what Rule 45 says.  They have

24  to -- they want them here, they have to subpoena

25  them, which they can't in this case, at least with

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 142 of 214   PageID 9269
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 142

1  respect to most of these people, because they are

2  outside of the subpoena power.

3          MR. GREENFIELD:  We also received this

4  morning, right outside of the courthouse, subpoenas

5  for Ms. Parker and Mr. Navarez as well.  Again, we

6  don't have the ability to really accept these.

7          THE COURT:  Well, so I see your point, Mr.

8  McKeeby.  But at the end of the day, if they are

9  Southwest employees, can't Southwest compel them to

10 come to trial?

11         MR. McKEEBY:  I -- I -- usually the answer

12 to that question would be, of course.  I'm not sure,

13 because of the Union and they are Union members,

14 that it is that simple.  I guess I can check and see

15 if that is the case.

16         THE COURT:  Dan, I'd like you to check.

17 Because I mean, I have gotten someone here from

18 Spain.  That was under the control.  Control

19 stretches as far as the corporation does, if that

20 makes sense.

21         And so if a corporation, you know, it is

22 easier for at-will employees, not Union members, but

23 at-will employees, they have to do anything the

24 corporation tells them lawfully to do.

25         MR. McKEEBY:  Well, yes.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 143 of 214   PageID 9270
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 143

 1            But I mean, again, the Union -- you know,

 2    existence here is significant.  I mean, I could,

 3    frankly -- I mean, because it will be unusual for

 4    Southwest to reach out to an employee absent some

 5    Union contact.  And say, Hey, by the way, you have

 6    to be at trial in Dallas, oh, by the way, in which

 7    the Union is a party.

 8            That is going to be a very complicated

 9    process.  And the employee very likely, if they got

10    that call from, you know, my contact at Southwest

11    Airlines, is going to tell that person, no, I'm not

12    coming to Dallas.  You need to talk to my Union.

13            So it is not as simple as in most cases,

14    given the Union presence.

15            MR. GILLIAM:  Your Honor, counsel for both

16    Southwest and Local 556, it is as simple enough as

17    coordinating between the two to get some of these

18    witnesses here.

19            THE COURT:  And I'm going to have two

20    suggestions.

21            Suggestion one is, could we have a

22    coordinated effort?  I know they are no longer Union

23    management and that doesn't necessarily mean --

24    well, they are no longer under the control of the

25    Union but that doesn't mean the Union has no role.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 144 of 214  PageID 9271
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 144

1            So if there could be coordinated reach

2   out, one, that would be helpful.

3            Two, if you don't hear back in 48 hours

4   that someone from Southwest will accept service of

5   the subpoena, I'm going to suggest you do the

6   subpoena the old way, right?

7            Now, the question is, if they are beyond

8   the subpoena power of the Court, then we are again

9   relying on control of the corporation to get them

10  here, the corporation being Southwest.

11           But if you are here on Rule 45 issues,

12  then I think some of those could be circumvented by

13  you serving those witnesses individually, if that

14  makes sense.

15           MR. GILLIAM:  Understood, your Honor.

16           And one of the reasons why we did go that

17  route for some of the witnesses was that on the

18  initial disclosure, Southwest indicated contact

19  certain individual through counsel.  Others were not

20  listed on their initial disclosures, but the ones

21  who were, were -- and the same goes for Local 556

22  and Southwest.  They said to communicate and contact

23  these people.

24           THE COURT:  And that is the normal course

25  because they would prefer that, right?  No one wants

1   to be a flight attendant touching down and then a

2   process server shows up and hands them a trial

3   subpoena.

4              What I'm trying to say is, I will give a

5   48-hour period for Southwest and the Union to work

6   with that person, right?  On whether or not they can

7   attend trial, whether or not an attorney for

8   Southwest will accept service of that subpoena for

9   them.

10             Beyond that window, now we are getting

11  into the point where you need to clear off those

12  defects.  And if that is a defect, you need to work

13  on clearing it off and serve it the old fashioned

14  way.  I give you permission to serve anyone

15  individually.

16             Let me think through it.

17             Let's say, it is Monday at 5 p.m. is sort

18  of my deadline for when I think you have a green

19  light to no longer work through them for service of

20  a subpoena.  And you can work separately on service

21  of a subpoena.

22             Even if you serve those subpoenas

23  separately, I think Southwest would still have a

24  continuing duty at that point with a duly-served

25  subpoena to make that person available for trial.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 146 of 214   PageID 9273
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 146

1          But specifics and mechanics, we need to

2    talk through that because I'm not trying to

3    inconvenience these people.

4          MR. McKEEBY:  What about people that are

5    outside of subpoena range?

6          THE COURT:  So, again, if we have the

7    corporation -- I mean, you need to flag for me if

8    there is an Union issue, right?  Union, in my mind,

9    and Southwest should both be telling the person,

10   Hey, you are under the control collectively of

11   Southwest and the Union, and Southwest and Union

12   need you at trial because you were subpoenaed.

13         MR. McKEEBY:  Okay.

14         THE COURT:  Now, if I'm wrong on that,

15   tell me I'm wrong, if you have got some case law on

16   that.

17         To me, I hear there are two individuals

18   who might have some level of control.  If both of

19   them are parties and there is a trial subpoena that

20   is validly served, if not agreed to be accepted,

21   then I think that collective control should be able

22   to get them here.

23         MR. McKEEBY:  Okay.  Well, I can just tell

24   you that I'm not going to be authorized to accept

25   subpoenas for collective bargaining represented

 1  flight attendants.  So they are going to have to

 2  subpoena them in the old fashioned way and then we

 3  can cooperate at that point.

 4              THE COURT:  So I understand that.

 5              So no longer on Monday at 5:00 deadline.

 6              What I will ask is, if the Union or

 7  Southwest, or both, could provide location for a

 8  process server of where they will be, right?  I

 9  don't want any hiding of the ball, I don't think

10  y'all will.  But because we are on the eve of trial

11  now, they may be chasing them around the country.

12              Then that will give y'all -- I mean, if

13  y'all want to tell them, if y'all want to be

14  professional and coordinating, we plan on serving

15  them on this layover and you want to tell them that

16  and give them a heads up and they won't be

17  surprised.  I think that would be a professional

18  courtesy, if you can't accept service.

19              MR. McKEEBY:  I can try to do that.

20              THE COURT:  Understood.

21              MR. GILLIAM:  I can as well.

22              MR. McKEEBY:  Just provide their

23  addresses?  I think one of the communications that I

24  received last night has residential addresses, so I

25  can provide that as well.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 148 of 214   PageID 9275
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 148

1              THE COURT:  Understood.

2              I know these are difficult, and with the

3    Union overlay, they are all the more difficult.

4              I appreciate y'all working through it.  It

5    is a challenge.

6              MR. GILLIAM:  Your Honor, so it is no

7    longer a Monday deadline.  Is there a particular

8    deadline now?

9              THE COURT:  So here is the thing in my

10   mind.  The Monday deadline I was giving you was the

11   deadline to start serving them with the trial

12   subpoena because I understood them to say that they

13   wanted to have a discussion on whether or not to

14   accept service.

15             If I understand the current position is,

16   he knows he can't get there, he's saying I can't

17   accept service for under the CBA.  In that case,

18   then, I'm no longer sitting you out until Monday at

19   5 to serve them directly.  You can serve them

20   directly an hour from now, if you want to and can

21   find them.

22             What I'm asking them to do, by the end of

23   the day, provide you with location information of

24   where they will be next week, so that you can serve

25   them.

1          I would say serve them the sooner the

2   better because that serving is what now opens the

3   dialogue as to scheduling, right?

4          And so if you serve them next Friday, it

5   is going to have less time to promote a cooperative

6   schedule than it is if you serve them on Monday or

7   serve them tomorrow.

8          Okay.  So what other witnesses or buckets

9   do we need to talk about?  Because we haven't talked

10  about anyone wholly separately on your list.

11         Mr. Greenfield.

12         MR. GREENFIELD:  There was only four

13  individuals, President Stone -- former President

14  Stone, who has expressed willingness to be here.  We

15  will work with the other side on the scheduling on

16  that.  The same with former board member, John

17  Parritt.

18         It is really the two additional,

19  Ms. Parker and Mr. Navarez, who are, as we have

20  discussed, outside of the subpoena range.  They do

21  not live here.  They are not within the Union's

22  control.  And I guess there is potential issues, I

23  guess, of whether Southwest has the ability to get

24  them here.

25         And as Mr. McKeeby has expressed, he

1  doesn't have the ability to accept service on their

2  behalf.  We would be happy to work on addresses, et

3  cetera.

4           But I don't want to run afoul of the Court

5  on the Union's role in this.  I just don't know how

6  I can help because they are outside of our control

7  in making them be here.

8           THE COURT:  Well, I understand that.

9           So the thing I'm getting to is, if it is

10  two players at issue with Southwest and the Union,

11  is it possible that neither has control?  That would

12  be a strange phenomenon to me.  I realize that it is

13  diffusion of power, but I don't know it is an

14  absence of power.

15          So what my anticipation is, is once they

16  are validly served with a trial subpoena, to have

17  dual communication going on with Southwest and the

18  Union, saying, we share power in this arrangement.

19  So we really would like you to be there because you

20  have been validly subpoenaed now for trial.  What

21  can we do to help make that happen?

22          Southwest has airplanes and jump seats and

23  things of that nature.

24          MR. McKEEBY:  I think that -- and again, I

25  have questions and reservations about whether or not

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 151 of 214   PageID 9278
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 151

1   there can be a validly-served subpoena given where

2   some of these people are geographically.

3           But at the same time, I'm fine to work

4   with, you know, look -- to say along the lines you

5   suggested, you have been subpoenaed, you should

6   come, we would like you to come, here is the flight

7   that you can take to get here.

8           THE COURT:  Can I ask -- so it sounds like

9   the toughest cases might be Parker and Navarez on

10  willingness.

11          Who else would be?

12          MR. McKEEBY:  Talburt.

13          THE COURT:  Halpert.

14          And can you remind me of Halpert's

15  situation?

16          MR. McKEEBY:  Talburt is a flight

17  attendant and lives in Phoenix.

18          THE COURT:  Sorry.  Talburt.  I heard

19  Halpert, my bad.

20          MR. McKEEBY:  Talburt with a T.

21          THE COURT:  Okay.  I'm trying to think,

22  the worst case scenario, break glass in case of

23  emergency, do we hear testimony by deposition?

24          I know Talburt was not deposed.  Navarez

25  was not deposed.  And both of those have willingness

1   problems, right?  Or at least Navarez certainly

2   does.

3           So I guess that is the question.  And so,

4   in that situation, obviously, I'm fine with you

5   presenting someone by deposition.

6           If we have a situation where someone has

7   not been deposed, then we have an issue.  And then I

8   may need to make them sit for deposition, a full one

9   between now and trial, right?

10          Fortunately, we have the advantage of more

11  than a week, which is not what we normally have.

12          MR. McKEEBY:  What about appearing by

13  telephone at trial?

14          THE COURT:  That is a good question.

15          How about, let's talk through that maybe

16  in a status report.  If that is -- if our options

17  are down to deposition or Zoom kind of testimony,

18  then let's talk through that.

19          I don't want to go there just yet.  I

20  don't think we are there just yet.

21          MR. McKEEBY:  Okay.

22          THE COURT:  I guess my point being, if

23  they can't come to us, y'all can go to them.

24          And I think there is plenty of time to

25  make that happen between now and then.  I wouldn't

1  put a one-hour limit on it.  You are entitled to

2  fully discover everything they need.  But I think

3  that is where we are at.

4           So can y'all update me with periodic

5  status reports on how we are doing on these?

6           You know, I will leave it to y'all to

7  understand the triggering events that would warrant

8  a status report.  But if y'all are cooperating and

9  talking and folks have been served and you are

10  working on schedules, great.

11          If things are breaking down and it looks

12  like someone just isn't going to be there, there is

13  no power to compel them, those are the kinds of

14  things I need to know.

15          For example, if I'm going to order a depo,

16  I need to make that by court order, right?  Because

17  we are way past the fact discovery cutoff.

18          If there are things I need to do in order

19  to make sure that testimony that needs to happen

20  does, then let me know what I need to do.

21          MR. McKEEBY:  Well, I have two more

22  buckets.  I'm not sure the Court's buckets are my

23  buckets.

24          THE COURT:  Let's do it.

25          MR. McKEEBY:  The one should be pretty

1  easy, which is people who are no longer employed

2  with Southwest that we haven't talked to about their

3  willingness to participant because we don't intend

4  to call them.

5          Those employees would be -- actually, some

6  of whom were on the first -- in the first bucket

7  about people who we contemplated a deposition for

8  because they were not listed as -- in the

9  plaintiff's initial disclosures.

10         So the four that I have are Tammy Shaffer,

11  Naomi Hudson, Melissa Burdine and Edie Barnett.

12  They are not employed with Southwest any longer.  I

13  think they are all local, but I don't know that for

14  sure.

15         And so I don't have control over them at

16  all, either formally or otherwise.

17         THE COURT:  So that was Shaffer, Hudson,

18  Burdine, Barnett?

19         MR. McKEEBY:  Yes.

20         THE COURT:  And I had Hudson and Burdine

21  in that first group, where I had said a one-hour

22  Zoom depo is okay.

23         MR. McKEEBY:  I apologize for not raising

24  that.

25         THE COURT:  I think I tried to cut you off

1  from raising that, but I didn't realize the

2  interplay.  That is my fault, not yours.

3          Okay.  Then the Southwest one I have at

4  issue previously was Shaffer, in the second bucket I

5  said, they can call them, if they want.  I'm not

6  going to make them sit for a deposition, but here

7  they may not be able to call them, if they want.

8          But if they are within 100 miles, I think

9  here what we need to do is have you subpoena them.

10  Do the trial subpoena's within a hundred miles.

11  They can show up.  You may not know what they're

12  going to say.

13          Now, I would say because at least two of

14  these folks with Hudson and Burdine are in that

15  bucket 1, right?  Southwest should make them

16  available for a depo.  That is if they are under the

17  control of Southwest.

18          So Southwest, you can communicate with any

19  of these parties.  I would expect if I were one of

20  these folks that I would want you as my lawyer.  I

21  wouldn't want to fly blind or pay for a lawyer

22  myself.  So I have no problems with you

23  communicating with these folks and being their

24  lawyer in the depo, if you want to.

25          But in my mind that bucket 1, I'm still of

1   the mindset they should sit for a one-hour Zoom

2   depo, whether you are their lawyer or not.  Does

3   that make sense?

4              I'm not saying you have to -- well --

5              MR. McKEEBY:  How do they compel their

6   attendance at the deposition?

7              THE COURT:  By my court order.

8              And so now what you are telling me is that

9   some of these folks in the bucket 1 that I thought

10  were under your control are not, at least one or two

11  of them are not.

12             And so what I need to do is come up with a

13  court order, probably for all of these in bucket 1.,

14  and that will just cover the subset of bucket 1

15  which is folks that are not under your control.

16             And by court order, I'm requiring them to

17  sit for a one-hour depo, could be by Zoom, between

18  now and the start of trial.

19             Does that make sense?

20             MR. McKEEBY:  Yes.

21             THE COURT:  And so that will be your

22  triggering event, where if you want to, you can

23  reach out and say, Hey, I know a process server is

24  probably coming to find you, we are happy to be your

25  lawyer for this one-hour depo.  And if you appear at

1  trial, we are happy to be your lawyer at trial.

2          MR. McKEEBY:  Okay.  But -- but they are

3  still the -- what is contemplated or required that

4  they be served with process for the depositions.

5          THE COURT:  For these people who are not

6  under your control, right?  And so that would be the

7  Burdine and Hudson subset.

8          MR. McKEEBY:  And Shaffer and Barnett?

9  Oh, no, those are not the same.  Just Hudson and

10 Burdine.

11         THE COURT:  Right.

12         And so for the others, they are currently

13 Southwest employees, I'm assuming, Rutherford,

14 Conlan, Kleburne.

15         MR. McKEEBY:  They are, but we are going

16 to get to them because of the availability issues.

17 But that is the last bucket.

18         THE COURT:  Right.

19         Okay.  So let me make sure I understand

20 where we are at on Shaffer.

21         Shaffer was in the second bucket, where I

22 said if they want to call them to trial, great.

23 Shaffer is no longer an employee.  I was not going

24 to make Shaffer sit for a deposition based on

25 Southwest's representation that there is no personal

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 158 of 214   PageID 9285
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 158

1  knowledge.  They were just copied on investigation

2  emails.  So I don't think, based on that

3  representation, I'm going to take the extra step and

4  make them sit for a depo in Shaffer.

5          Based on that, I still think, if you want

6  to serve Shaffer with a trial subpoena, it sounds

7  like Shaffer is local, right?  Within 100 miles.  So

8  if you want Shaffer to show up, fine.  But Shaffer's

9  status as a former employee means they are certainly

10  not going to accept service.  And there is no

11  deposition to talk about.  It is just you do a trial

12  subpoena on Shaffer.  We know they won't accept it

13  because Shaffer is a former.

14          Okay.  So Barnett is the last one to talk

15  about.  I don't know that Barnett was in any of the

16  other groups we had talked about.  So Barnett is now

17  in a new bucket, which is a former employee, who is

18  local.

19          Which I think we treat Barnett and Shaffer

20  the same, right?  Any reason not to?

21          So you need to serve Barnett directly.

22  I'm not going to make Barnett sit for a separate

23  depo, because we don't have an additional disclosure

24  issue running around.

25          And if Southwest wants to reach out to any

1  formers and offer representation, that is fine.

2  That is normal course.  They don't have to.  Y'all

3  can talk about scheduling, if you want to proceed

4  with Barnett.

5          MR. GILLIAM:  One point of clarification

6  of the bucket of people no longer employed by

7  Southwest.

8          We did talk about earlier also Guttierez,

9  who has also been deposed, again, no longer employed

10 with Southwest.

11         I guess we subpoena her.  We can subpoena

12 her directly for trial, but we don't have an address

13 for her.

14         MR. McKEEBY:  I will provide an address

15 for her.

16         THE COURT:  I understand she's local.

17 Hopefully, that is within 100 miles, but also

18 cooperating is the note I had.

19         If you subpoena her, you will probably end

20 up talking to -- you anyways.

21         MR. McKEEBY:  I suspect that is right.

22         THE COURT:  Got it.

23         Any other witnesses and availability we

24 should talk about?

25         MR. McKEEBY:  Yes.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 160 of 214  PageID 9287
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 160

 1              So that brings us to the last bucket of --
 2  I apologize.

 3              THE COURT:  It is okay.

 4              MR. McKEEBY:  My notes are getting a
 5  little difficult to read.

 6              Four current Southwest employees who were
 7  on their initial disclosures, who we, again, think
 8  have very, very tangential relevance to anything in
 9  this case.

10              They are Linda Rutherford, Brendon Conlon,
11  Nancy Kleburne, and Sonia Lacore.

12              Again, all of which may have been copied
13  on an email, but we are not going to present them as
14  decision makers or involved in providing
15  recommendations with respect to the termination or
16  really being at any of the grievance proceedings
17  leading up to the termination.

18              And so, again, we don't feel like those
19  folks are particularly relevant anyway.  That is why
20  we didn't list them in our initial disclosures.

21              They all, for various reasons, the level
22  of specificity we can get into, not available at
23  least for trial.  That is the person in Kuwai, i.e.,
24  Ms. Rutherford.  Jamaica is Mr. Conlan.

25              THE COURT:  Can you give me those dates

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 161 of 214  PageID 9288
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 161

 1  for Rutherford?

 2          MR. McKEEBY:  Rutherford is July 1st

 3  through July 8th.

 4          THE COURT:  All right.

 5          And then Conlan?

 6          MR. McKEEBY:  Conlan is Jamaica from

 7  July 1st through July 8th.

 8          And then Kleburne has various travels

 9  plans between July 5th and July 17th, per this

10  email.

11          THE COURT:  Are those continuous travel

12  plans?

13          MR. McKEEBY:  Ohio.  And then to Arkansas

14  to see family.

15          Southwest gives a lot of very good

16  vacation benefits.  So, yes, she's going to be in,

17  it looks like, four different states, between

18  July 5th and July 17th.

19          THE COURT:  Why not add a fifth?  I'm

20  joking.  We will get to that at some point.

21          Okay.  So July 5th to 17th.

22          MR. McKEEBY:  Right.

23          And then Lacore is probably less

24  interesting, but she has -- is going to be in

25  Atlanta for apparently a very critical work

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 162 of 214  PageID 9289
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 162

1   function, some type of hospitality summit.

2           That is the week of July 11th.  And the

3   week of July 4th, she's on some type of out-of-town

4   vacation, the details of which I do not have.

5           And, frankly, with respect to these two,

6   it might be the preference for them to sit for an

7   hour deposition, as opposed to having to appear at

8   trial, given their plans.  So I'm not sure how to

9   deal with it.

10          THE COURT:  Understood.

11          So let me pitch it to Carter's team now

12  and see what the preference is on a path forward on

13  these four.

14          MR. GILLIAM:  What are the preferences?

15          THE COURT:  Right.

16          For example, Rutherford and Conlan, their

17  travel dates cutoff July 8th.  We will still be

18  going after July 8th, but you will be rested by that

19  point.

20          Do you prefer to pursue an out-of-order

21  live fire presentation of them at trial, is my first

22  question.  Because their timing is a little bit

23  different than Kleburne and Lacore's timing, which

24  is difficult because it is the entirety of the

25  trial.

1              MR. GILLIAM:  If that is the only option,

2    then I would say yes.

3              THE COURT:  For an out-of-order live

4    witness presentation?

5              MR. GILLIAM:  Yes.

6              THE COURT:  Yes.

7              So I think that goes back to my suggestion

8    of today, can you tell them, by the end of the day,

9    what all witnesses you want and when.

10             Now you know those schedulings, so you may

11   just present an out-of-order date beyond July 8th,

12   where you would take the witness conditionally.

13             And then for the other two, if they have

14   got these blackouts -- I mean, my inclination on the

15   other two, if they are blacked out the entire time,

16   then have them sit for a one-hour depo beforehand.

17             If they have marginal relevance, you can

18   find out what the relevance is.  And then you would

19   know before trial whether or not you would even read

20   a two-minute portion of the transcript.

21             That would be my inclination.  And if they

22   are current employees, then I can order them to sit

23   for a depo that occurs after fact discovery.

24             MR. GILLIAM:  We do view them as relevant,

25   I think for the answers that we have already stated.

1          Lacore was copied on President Stone's

2  complaint of Carter, when she made her complaint the

3  first time.

4          Also, Lacore is relevant because President

5  Stone negotiated grievances and employee discipline

6  with -- specifically social media discipline with

7  Lacore, the vice president of in-flight services.

8          So, again, it goes to the scope of

9  Ms. Stone's official capacity of grievance handling,

10  handling social media discipline issues.

11          And Kleburne was the manager of

12  Southwest's task team, that's their accommodations

13  team.

14          So any sort of religious accommodation

15  would have to be referred to her.  And it would be

16  significant, even if she didn't handle an

17  accommodation issue.

18          THE COURT:  Understood.

19          So I think I have heard enough to say that

20  I will have them sit for a one-hour depo, if they

21  were not available in trial.  And then I will leave

22  the scheduling and coordinating of that up to y'all.

23          What I think getting we're getting into

24  is, we will have at least some trial presentations

25  by depo transcript, right?  That is where we have

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 165 of 214   PageID 9292
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                           June 16, 2022                              Page 165

 1   the procedure, show us the full transcript, make

 2   your depo designations, counter-designations,

 3   objections, responses.

 4              And so now we will be doing some of that,

 5   that is between now and trial, right?  So I'm going

 6   to ask y'all, if you have a deposition in hand for a

 7   witness who will not be at trial, that is one of

 8   these one-hour depos, within 24 hours of getting the

 9   trial transcript, can you file deposition

10   designations with me?  That gives me the full

11   transcript and the objections.  The other side will

12   have -- need to come in 24 hours later.

13              For example, you objected to form on the

14   record 10 times during designated testimony.  Here

15   is our 10 objections.  We said object to form,

16   really we meant hearsay.

17              And so at 24 and 48 hours after the

18   transcript comes in hand, I would like to see those.

19              But here is what I do with the depo

20   designations, right?  I guess it takes a little bit

21   different tactic practically if it is a video depo

22   or a paper depo.

23              If it is a video depo, then I give you all

24   of the rulings on the objections that are getting

25   pressed so that the videographer can edit out all

 1  the content where I sustained an objection.

 2          Where I overruled an objection, they can

 3  edit out the objection.  And so the goal is for the

 4  jury not to hear the word "objection" during the

 5  depo.

 6          If it is paper, it is a little bit

 7  different.  There is no videographer involved and

 8  y'all are going to role play, right?  You actually

 9  put another person, not named Lacore, on the stand

10  to read Lacore's testimony and then the lawyer will

11  question.

12          Then you can just scratch through any

13  objection and whatever I cut out in my sustained

14  objection.  Does that make sense?  That is the end

15  game.

16          So it is either a role play on a paper

17  transcript or playing a video.  But either way, we

18  have edited out the objections that someone is

19  pressing, whether I sustained or overruled those.

20          I plan on turning those back to y'all as

21  soon as I can.  But they are going to exist, and

22  they are going to be annoying for y'all to have to

23  go edit with the video or carve up with the paper

24  transcript.

25          Before the first witness we hear from by

1 depo, then I will need to give the disclaimer about,

2 we are about to hear from the next witness by depo,

3 give it the same weight as if the person were here.

4 The juries don't like it as much.  So it is what it

5 is.

6          Maybe you can bring in James Earl Jones or

7 somebody to read the transcript and give it life and

8 breadth and meaning.

9          Okay.  So I think we have covered depo

10 designations.

11          Any questions?

12          I need on my end a written order that sets

13 these folks in bucket 1, and the folks in the last

14 bucket, Kleburne and Lacore, those folks are ordered

15 to sit for a one-hour depo.

16          We know we will hear from you today, Mr.

17 Gilliam, about who you hope to take when.  And there

18 can be a coordination that tries to go on with the

19 other folks.  They are going to tell you location

20 information for the folks that you need to serve

21 with Rule 45 trial subpoenas.  And then, hopefully,

22 there will be a conversation cooperatively after

23 that.

24          If we have issues on control and getting

25 someone here, y'all are going to let me know with a

1  status report, so if I need to order their depo to

2  take place, like we are doing with Kleburne and

3  Lacore before trial, if we can't get them here, that

4  can still happen in a timely fashion before trial.

5            Any other questions?

6            MR. McKEEBY:  Yes, one point on the

7  wording of the order.

8            I think this applies to Lacore, but not

9  Kleburne.  I think it should read that to the extent

10 that they are not available to appear at trial, they

11 are ordered to appear for a one-hour deposition.

12           THE COURT:  Okay.

13           MR. McKEEBY:  I think that is not going to

14 matter.  I don't think -- I think we are going to

15 produce them both for deposition, but I just would

16 like to us to have the option, just in case.

17           I assume that is agreeable.

18           THE COURT:  So is this just for Lacore or

19 Kleburne as well?

20           MR. McKEEBY:  It's just for Lacore, from

21 what I can gather from the schedules.

22           I mean, it looks like Lacore might have

23 pockets of availability, but I can't quite tell

24 from --

25           THE COURT:  Maybe a drive-by.  Moving from

 1  one state to another, which is fine.  We will make

 2  it happen, right?

 3              Okay.  Other things on witnesses and

 4  availability?

 5              MR. GREENFIELD:  Your Honor, you just

 6  mentioned a status report on some of these witness

 7  issues.

 8              Did you have a specific date or time that

 9  you had set out that I didn't get down?

10              THE COURT:  No.  Because I think the

11  status report might be so bland, you don't need to

12  file it.

13              If everything is going as planned and all

14  of these folks are going to show up one time or

15  another, that doesn't need to be filed, right?

16              I will assume everything is good until it

17  is not.

18              When it is not good, I would like to know

19  because those people who you thought may show up to

20  trial but now it looks we have no way to compel them

21  to attend, those are the folks who, worst case

22  scenario, I would need to order to sit for a

23  deposition before trial, to do the process that we

24  are doing with Kleburne and Lacore in that bucket 1.

25              I need to know that as soon as possible,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 170 of 214   PageID 9297
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 170

1   just because then y'all will have time to schedule

2   the depo as soon as possible.

3          So I'm not going to put an arbitrary date

4   on y'all for a status report.  I just think we are

5   all incentivized to move as quickly as we can.  So

6   tell me when the wheels come off and I need to order

7   a depo before anyone I'm not already ordering a depo

8   for.

9          Is that clear enough?  I know we are in a

10  muddy situation and I'm trying to make the most of

11  it.

12          MR. McKEEBY:  Are you preparing an order

13  with all of this?

14          THE COURT:  I'm preparing an order for the

15  folks I know should have to sit for a depo, the

16  one-hour depo, could be by Zoom.

17          And I can say, by my count, those

18  individuals would be named Burdine, Conlan,

19  Kleburne, Hudson and Lacore.

20          And then Lacore is going to be worded a

21  little bit differently, which is to the extent

22  Lacore will not be a live witness at trial, then sit

23  for a one-hour depo.

24          MR. McKEEBY:  And can you remind me where

25  we ended up on Conlan and Rutherford?  Who were out

1  of town?

2              THE COURT:  I think that the preference

3  from Carter's team was because July 8th is after

4  they rest, but before the case is over, that they

5  would take those witnesses out of turn and would

6  conditionally rest, whatever date that is, subject

7  to taking Rutherford and Conlan.

8              Am I misstating that?

9              And I can't remember if we talked about

10 subpoenaing them directly.  I don't know if we had a

11 conversation on that, or if you will accept a

12 subpoena for them because they are current

13 employees.

14             I don't know their status with regard to,

15 like, CBA issues and Union issues.

16             MR. GILLIAM:  I believe they are both

17 current employees.

18             MR. McKEEBY:  That is my understanding.

19             THE COURT:  Okay.  If that changes, if you

20 can't work through that, let me know.  And if I need

21 to make an order, or, you know, honestly, if they

22 can't accept a subpoena, then you go find them and

23 subpoena them.  And you know I will ask you to

24 provide information, location, if they are

25 habitually on the move, like flight attendants.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 172 of 214   PageID 9299
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 172

1           MR. McKEEBY:  These aren't flight

2  attendants.

3           THE COURT:  Okay.  Thank you.

4           Okay.  Anything else on witness issues?

5           Can I say just a note right quick,

6  assuming we have some witnesses to take by

7  deposition, there is an awkwardness that lawyers

8  usually flag for me only after we have played a

9  video of a depo, or after we have read the

10  transcript, and you will see in the video, they will

11  say, We have handed you what is marked as Exhibit 2.

12           That is not Trial Exhibit 2, right?  It

13  may be a trial exhibit, but it wasn't Exhibit 2.

14           So there are two ways to handle that.

15  Method 1 is that you can use a cross-reference chart

16  that you make for me.

17           So for the Conlan depo, Conlan Depo

18  Exhibit 1 equals Trial Exhibit 23.

19           If you make that cross-reference chart, I

20  can read it to the jury, before we do that depo.  I

21  will say the next witness is by depo and give it the

22  same weight as if they are live.  By the way, the

23  numbers don't match up.  I will give you the

24  cross-reference list.  And I can provide that to

25  them back in the jury room as well.  That is the

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 173 of 214   PageID 9300
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          June 16, 2022                          Page 173

1  only way you can handle a video depo.

2          There is a second way you can handle a

3  paper depo, which is, if y'all are in agreement and

4  y'all are just reading the depo, you mark out

5  Exhibit 2 and put in Exhibit 23.  And then it is

6  read live fire to match up to the trial exhibit

7  numbers.

8          So, you know, choose your own adventure.

9  But if you are reading a paper depo, you have got

10  two choices.  If it is a video depo, you can't edit

11  out someone voices over 23.  That is awkward.  We

12  don't do that.  You can't edit a video like that.

13  You can mark up paper like that.

14          Any questions on that?

15          MR. McKEEBY:  No questions on that.

16          On the order, I may be wildly optimistic

17  on that, but I'm somewhat hopeful that Carter's

18  counsel sees the light and decides there is better

19  uses of their time than deposing these witnesses.

20  Perhaps the order could be written in a way that

21  they are not compelled to appear unless --

22          THE COURT:  If Carter chooses to depose

23  them, I can put that language in.  It is Carter's

24  choice.  I can put in that caveat.

25          All right.  Any other issues on witnesses?

 1            All right.  I will do my order.  And y'all
 2   do what I have asked you to.  Keep me posted on if
 3   the wheels come off and I need to order more depos
 4   than the ones I am going to do in the order today.
 5            So the only other thing I have is just a
 6   few odds and ends on trial procedure.
 7            I said this earlier, made a reference to
 8   it or an allusion to it, we are supposed to speak in
 9   code when we are doing objections in front of the
10   jury.
11            The reason why is, they are the triers of
12   fact and objections are legal, gatekeeping issues,
13   right?  So we don't want to say, your Honor, that is
14   hearsay, it is an out-of-court statement because it
15   came from a declaration, blah, blah, blah.
16            Don't do that.  It is taking the factual
17   triers over here and making them hear all of the
18   legal mishmash that is only confusing.
19            So speak in code.  Ideally, give me a
20   number, right?  Objection, 402.  Right?  It is not
21   relevant.
22            In trial, you have got so many things
23   going on that you may not be able to come up with a
24   number handily, give me a word:  Objection,
25   relevance; objection, hearsay.

1           If you get out more than one or two words,

2   then it is a speaking objection.  That is a side

3   show.  So ask for a sidebar for your side show,

4   right?

5           If you can't actually come up with a

6   number or a word or two, come over at sidebar and

7   explain it.

8           There are a lot of times where you can

9   speak in code to me, I know exactly what you are

10  talking about, right?  It is hearsay.  And I don't

11  ask for a response in open court.  I think of a

12  response that might say, you know, that is present

13  tense, mental impression, I'm going to overrule

14  that.  I'm not going to say that.  I'm just going to

15  say, overruled.

16          If you want a sidebar to hash through it,

17  whether you're raising the objection or have a

18  really strong argument against the objection, just

19  call for a sidebar.  It is fine.  Just note that

20  that time counts against you.

21          I try to handle my sidebars as quickly as

22  possible.  I don't keep people over there with

23  academic arguments, but we get right to it.

24          So it will take all of our effort to be as

25  efficient as possible on the sidebars.  Most of my

 1  sidebars last 20 or 30 seconds.  And it takes longer

 2  to walk over to them than it does to actually get

 3  out what you want and to get a ruling on it.

 4          When you are at the sidebar, though, don't

 5  speak in code or numbers, just talk to me in

 6  English.  But you can be as fast as we can

 7  transcribe it.

 8          And so at the end of this, I'm going to

 9  see if y'all can come over and you can see what the

10  microphone setup is.  I'm going to ask for one

11  lawyer per side.  We can't fit all of us over there.

12  But it will be three lawyers.  I will be there.

13          And then the static will come on.  I

14  should turn that static on and so y'all can hear.

15  We will talk at a quiet level, but not a whisper,

16  because we have got to hear each other and the

17  microphone has to pick us all up for the record

18  purposes.

19          I will remind you, like, I know I put you

20  on time limits, please don't speed.  If you speed

21  and you start clocking 250 words a minute or more,

22  we can't transcribe it.  It is just impossible to

23  get a clean transcript.  And so then we have to go

24  back to the audio and triple check every word, and

25  that gets cumbersome.

1            So keep in mind if the reporter can't keep
2    up with you, the jury can't either.  It is them that
3    you are trying to clearly communicate to.

4            On transcripts, if your clients want any
5    kind of daily copy or realtime, please talk to our
6    court reporter, Kelli Ann, about that before trial.
7    Any request like that have to be lined up in advance
8    because she can't be in here transcribing and
9    someone going back through the transcript, checking
10   to make sure it is accurate.

11           And so if you are wanting realtime or a
12   daily copy, anything other than a copy for an appeal
13   at the end of the case, those are resources that she
14   has to book in advance, so you can't surprise her on
15   the first day of trial and expect to get daily copy
16   or realtime.

17           Okay.  And then after this, hopefully, we
18   will get a read from Kevin on if we can see either
19   the big jury assembly room downstairs or the Red
20   River room they pitched as an alternate, in case it
21   is not available on July 5th at 1:00.

22           I'm trying to think of any other issues.
23           Invoking the rule.
24           I assume everyone wants to invoke the
25   rule.

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 178 of 214  PageID 9305
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                   June 16, 2022                          Page 178

1              Does anyone want do it just now on the

2    record so we can get it out of the way?

3              MR. McKEEBY:  We invoke the rule.

4              THE COURT:  Okay.  Mr. McKeeby, you have

5    invoked the rule.

6              I don't know what your witnesses look

7    like, so help me patrol that, right?

8              If someone walks in, just call for a

9    sidebar, you will tell me, and I will ask the CSO to

10   get them back out in the hall.

11             On invoking the rule, have y'all picked

12   who your corporate reps are --

13             MR. McKEEBY:  Yes.

14             THE COURT:  -- who are immune from the

15   rule?

16             MR. McKEEBY:  Yes.

17             THE COURT:  You each get one, right?  You

18   are a party, so you each get one.  I don't even have

19   to know who it is, but I just know they are immune

20   from the rule.

21             Carter is immune from the rule.

22             Y'all don't have experts.  That keeps it

23   simpler.  Sometimes people carve out an exception

24   from the rule so that experts can sit in and watch

25   and it makes it easier to watch.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 179 of 214   PageID 9306
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 179

```
 1              We don't need to cover that here.
 2              MR. GILLIAM:  We also want to invoke the
 3  rule.
 4              THE COURT:  Yes.  Well, yes.  It is
 5  invoked as to one is invoked as to all.
 6              I will assume that the Union does, too.
 7  That is why we call it the rule, right?  It is good
 8  to not have witnesses hearing other witness'
 9  testimony.
10              Okay.  So I mentioned this earlier for
11  objections during opening and closing, if there are
12  things you think that the other side is doing
13  against the rules, please write them on a Post-it
14  note, right?  And then let's come up and have a
15  sidebar at the end of the person's opening.
16              If you stop someone's opening -- I trust
17  that y'all wouldn't.  But there are lawyers in here
18  that are just so antagonistic that they want to stop
19  someone's flow and object to every sentence during
20  opening.
21              And at the end of pretty much every
22  opening, I say, this is lawyer argument, it is what
23  you just heard.  What you will need to do is listen
24  to the evidence, which you haven't heard any of yet,
25  and apply the law, which you haven't heard from me,
```

Case 3:17-cv-02278-X  Document 272  Filed 06/20/22  Page 180 of 214  PageID 9307
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 180

 1   because it is not the end of the case.

 2          But if there are issues that you want to

 3   bring up, please flag those.

 4          If I see you walking over a limine issue,

 5   I may stop you in the middle of your opening.  So

 6   please be mindful of our limine issues and do not

 7   talk about the things we said to not talk about.

 8          And then save any arguments you have on

 9   the side for the end.  If I need to do a curative

10   instruction, I will.  If I need to declare a

11   mistrial, I will do it.  That is fine by me.

12          Okay.  So any questions about anything we

13   have covered?

14          I think we have exhausted everything on my

15   list.  So tell me what we missed.

16          MR. GILLIAM:  Your Honor, I guess we do

17   have a few bifurcation issues.  One, we are seeking

18   a reinstatement for Ms. Carter.  And also,

19   attorney's fees, I assume will be bifurcated as

20   well.

21          THE COURT:  All right.  Let's talk about

22   reinstatement first.

23          Well, I will just carve out attorney's

24   fees and make that simple.

25          Attorney's fees, I always handle with the

1  standard federal civil model of 14 days after a

2  final judgment, then I require the movant, who might

3  get attorney's fees, to file a motion with the

4  supporting affidavit.

5           So no need for lawyers to get on the stand

6  and talk about the reasonableness of the fee.

7  Fortunately, in federal court, we can carve that out

8  on the back end and not tie up the jury with that.

9  And then I just get cross breaking from the other

10  side on, they are not entitled to fees, or they are

11  but their fee bill, these things appear to be

12  non-recoverable.  So we will handle that in

13  post-trial briefing.

14           Talk to me about reinstatement.

15           Reinstatement, are you talking about,

16  like, an equitable remedy?  Or does the jury --

17           MR. GILLIAM:  Reinstatement of Ms.

18  Carter's employment.  I guess the same would apply

19  to the scenario where front pay could also be

20  involved as well.

21           So I think that would fall within the same

22  bucket of remedies.

23           There are scenarios maybe where Ms. Carter

24  couldn't get reinstatement but in lieu of

25  reinstatement, could get front pay.  So that would

1    be part of the same conversation.

2              THE COURT:  All right.  What is your

3    proposal for that?

4              Are you proposing we stick around and see

5    what a jury verdict is and then have additional time

6    afterwards to try, depending on the jury verdict,

7    for reinstatement issues?

8              MR. GILLIAM:  Right.  Separate

9    proceedings, your Honor.

10             THE COURT:  Understood.

11             So, yeah, let me ask thoughts on the

12   Southwest front.  Part of this is a premature

13   conversation until we see what the jury says.

14             MR. McKEEBY:  I mean, I have seen this

15   done but not that way.  But it's similar to

16   attorney's fees, in that it's just kind of done by

17   post-trial motion.  And the judge makes a

18   determination of whether front pay is appropriate

19   and whether reinstatement is appropriate.

20             And the parties just brief it, as opposed

21   to -- I don't know what additional evidence could be

22   offered on those issues.  They are equitable

23   remedies that are determined by the Court.

24             And so typically what I have seen is just,

25   in employment cases, it is just a matter of

 1  post-trial briefing, just like attorney's fees,

 2  quite frankly.

 3              THE COURT:  Sure.

 4              Have you seen affidavits being used?  For

 5  example, affidavit from HR saying, blah, blah, blah.

 6              MR. McKEEBY:  Yes.  I think so.

 7              THE COURT:  I'm just trying to make sure,

 8  like if I -- I prefer to handle it that way for the

 9  same reason as attorney's fees, right?  You can have

10  an affidavit with attorney's fees in lieu of a live

11  witness.  And the attorney is the own expert that

12  says, I have done this 20 years, my fee was

13  reasonable and necessary.

14              What I will probably do is say, we should

15  all think about this as trial progresses and

16  think about if there is anything -- I can see plenty

17  of evidence needing to come in, in affidavit form.

18  I don't know that I have to take that affidavit form

19  and make it live fire for them unless there is

20  something that you tell me about that.

21              But if there is any need for that, then we

22  could talk through it.

23              MR. GILLIAM:  Your Honor, if there is some

24  sort of claim that reinstatement is not feasible, I

25  think that is possible testimony.

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 184 of 214   PageID 9311
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Page 184

1              THE COURT:  Well -- and so your point on

2    that would be, if their HR person says reinstatement

3    is not feasible, you would want to take a shot at

4    that HR person rather than just saying, oh, well

5    based on the affidavit, we don't like it.

6              MR. GILLIAM:  That's right.

7              THE COURT:  I get that.

8              Let's all think about it as trial

9    progresses.  I don't think I can rule on that right

10   now on what form it is.

11             MR. McKEEBY:  Respectfully, the

12   feasibility of reinstatement is not an HR person

13   testifying, you know, we don't have a spot for her.

14             It is the Court making an assessment,

15   based on the weight of the evidence and the facts as

16   to whether or not the equity permits or should --

17   should require reinstatement.  So it is not an

18   evidentiary issue.

19             Again, we can brief it, if necessary.

20             THE COURT:  Sure.

21             MR. GILLIAM:  But I don't know that a HR

22   person is going to be able to say it in this

23   context.

24             THE COURT:  And I appreciate you flagging

25   it.  It is something we need to think of as the

 1   trial progresses.  I will keep my thinking evolving

 2   on it, make sure I investigate it.

 3              So when the time comes to talk about

 4   reinstatement, then I decide wisely at that point in

 5   time whether it is by affidavit or live testimony.

 6              Any other issues?

 7              This is going to be a fun case.  I'm

 8   looking forward to it.  I came here to try cases,

 9   not settle them.  So thank you for giving us an

10   interesting case to try.

11              So we will just do the path forward we

12   talked about.  I will get the order out today on the

13   one-hour depos.  And then y'all work on exchanging

14   information on location.

15              And then let me know if there are

16   additional folks who I need to order to sit down for

17   a depo because it doesn't look like they can come to

18   trial.  And then y'all tell me deposition page and

19   line designations for folks who are just going to

20   appear by depo.  And then I will work through those

21   objections.

22              MR. McKEEBY:  I did have one other

23   question.

24              At trial, will you want both defendants

25   here or will one of the defendants be at that table?

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 186 of 214   PageID 9313
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        June 16, 2022                        Page 186

```
 1              THE COURT:  That is a great question.
 2              I'm going to let y'all pick.  If y'all can
 3  fit around that table, great.  But you are going to
 4  have corporate reps there.  So six chairs around the
 5  table, you are probably going to want to split up
 6  into two.  It's just my guess.
 7              After I go off the record, then let's come
 8  over here and make sure we can test out a sidebar.
 9  One lawyer for each side come up and we will just
10  practice how loud we talk to where we hear each
11  other people but the people in the box can't hear.
12              I will try to find Mr. Frye and see if
13  he's got a beat on looking at the jury assembly room
14  and/or the Red River room.
15              Anything else?
16              All right.  Thank you.
17              Y'all are great lawyers and this is going
18  to be a fun case.  We get lots of cases where the
19  lawyers just don't know how to be officers of the
20  court.  And y'all know how to represent your clients
21  zealously and be officers of the court.
22              Y'all are a tribute to the profession.
23              So this is going to be great to try.
24              So with that, I will go off the record.
25  And let's come over here and we will live-fire a
```

1    sidebar.

2            (Proceedings concluded at 12:24 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 188 of 214   PageID 9315
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                  June 16, 2022                        Page 188

1                      C E R T I F I C A T E

2

3               I, Kelli Ann Willis, RPR, CRR, CSR

4     certify that the foregoing is a transcript from the

5     record of the proceedings in the foregoing entitled

6     matter.

7               I further certify that the transcript

8     fees format comply with those prescribed by the

9     Court and the Judicial Conference of the United

10    States.

11               This 19th day of June 2022.

12

13                      s/ Kelli Ann Willis
                        Official Court Reporters
14                      The Northern District of Texas
                        Dallas Division
15

16

17

18

19

20

21

22

23

24

25

**(**

**(a)(1)a** 114:4

---

**1**

**1** 11:22,23 42:8 90:21,
24 105:7,8 114:5
155:15,25 156:9,13,14
167:13 169:24 172:15,
18

**10** 6:14 7:19 59:25
75:21 76:3 77:8 84:6
89:11 100:6,16 104:7,8
165:14,15

**10-minute** 67:11 89:9
100:8,21

**100** 111:6 126:24 155:8
158:7 159:17

**100-mile** 119:21

**10:30** 100:5,14

**10:40** 89:12

**11** 79:23 80:21 84:13

**11th** 162:2

**12** 26:16,20 63:19 64:4,
5 68:10 75:1 102:2
129:18,20

**12:24** 187:2

**13** 81:13,16 84:14

**14** 181:1

**14-person** 51:5

**15** 119:19

**152** 99:16

**17** 84:16 87:3,7 88:17

**17th** 161:9,18,21

**1992** 40:5

**1:00** 89:23 90:8 177:21

**1st** 119:7,8 161:2,7

---

**2**

**2** 84:6 172:11,12,13
173:5

**20** 30:24 35:2 90:21
92:21,25 104:6 176:1
183:12

**2012** 109:25

**2017** 94:24 95:8

**2020** 91:13 112:20
116:24 117:5

**2021** 117:9,12

**2060** 111:14

**23** 172:18 173:5,11

**24** 76:5 84:8 165:8,12,
17

**24-hour** 101:12

**25** 35:5 51:1,7 58:4
83:12

**250** 176:21

**26** 114:2,10

**29** 36:14 40:14

**2:30** 100:9,14

**2nd** 112:20 116:24,25

---

**3**

**3** 109:25 122:14

**30** 36:22,25 40:12 42:6
52:25 55:19 59:14,15,
17 61:3,4,25 62:22
63:3,15,21 67:21 176:1

**30(b)(6)** 139:24

**30-minute** 61:5

**30-minutes** 63:16

**30th** 117:5

**317-cv-2278-x** 5:5

**3:45** 100:10,14

---

**4**

**4** 122:11

**400** 51:10

**402** 174:20

**408** 122:24

**45** 138:8 141:23 144:11
167:21

**48** 144:3 165:17

**48-hour** 145:5

**4:30** 22:22

**4th** 162:3

---

**5**

**5** 90:24 92:16,17 100:2,
14,16,21 101:10 145:17
148:19

**50** 51:5,11,12,16 52:8,
17 58:4 61:11 83:12

**556** 5:6,17 15:13 17:1
27:2,16,25 31:6 35:10
36:19 37:5,7 89:5 90:14
94:4 143:16 144:21

**556's** 26:22 90:11,13

**5:00** 47:5,7 101:9 147:5

**5:10** 101:10,14

**5:30** 101:11

**5th** 11:23 12:8,9,12,21
51:21 53:19 89:21
117:8 161:9,18,21
177:21

---

**6**

**6** 103:24

**6:00** 103:12 107:15

**6th** 129:24

---

**7**

**7** 8:19 54:23

---

**8**

**8** 13:15 15:8 19:21,24
21:4 104:1 107:17

**806** 104:14 106:1

**85447** 109:25

**8:30** 7:13 104:23
123:14

**8:45** 60:21

**8th** 119:7,9 161:3,7
162:17,18 163:11 171:3

---

**9**

**9** 7:17 100:2

**923** 40:5,9

**953** 40:5,9

**9:00** 60:22

**9:30** 105:6

---

**A**

**ability** 54:21 142:6
149:23 150:1

**abortion** 50:20 54:17,
19 55:16 56:20 60:6
61:18 75:24 76:1 77:14
78:5,22 79:25 82:8 83:1
94:22 95:5 97:3

**abortion-related**
51:14

**abortions** 78:23 82:2,3

**absence** 150:14

**absent** 91:23 143:4

**absolutely** 19:12 88:8

**academic** 175:23

**accept** 119:25 138:5
139:19 142:6 144:4
145:8 146:24 147:18
148:14,17 150:1
158:10,12 171:11,22

**acceptable** 132:22

**accepted** 146:20

**accommodating**
128:6,15 129:2

**accommodation** 85:4
164:14,17

**accommodations**
118:24 164:12

**account** 40:24 41:18

**accounts** 41:8

**accurate** 99:6 177:10

**accused** 78:14

**acknowledgement** 18:5

**Act** 16:13

**acting** 43:21

**action** 5:4 6:4 33:15 50:6

**actions** 30:1

**activities** 77:2 92:1 95:4 97:2

**activity** 16:13 91:6 96:1 99:18

**actor** 36:6

**actual** 117:10

**acute** 133:19

**Adam** 5:18

**add** 10:12 18:15 32:17 112:7 113:20 161:19

**addendum** 79:14

**addition** 112:14

**additional** 57:15 110:17 117:21 149:18 158:23 182:5,21 185:16

**address** 8:3 25:18 141:6 159:12,14

**addressed** 32:8

**addresses** 49:22 147:23,24 150:2

**addressing** 8:6 46:17

**adjudicated** 89:2

**admission** 110:21

**admit** 10:14,22 43:2 110:21

**admitted** 10:13,18 49:6 105:16 110:13

**advance** 9:12 54:2 177:7,14

**advantage** 152:10

**adventure** 81:24 173:8

**advice** 67:15,17,22

**advised** 139:12

**advisement** 40:13 116:2

**affects** 45:25

**affidavit** 181:4 183:5, 10,17,18 184:5 185:5

**affidavits** 183:4

**affiliating** 92:18

**affiliation** 77:1 91:6,11

**affirmative** 67:16

**affirmatively** 74:13

**afield** 47:1

**afoul** 150:4

**afternoon** 12:4 61:7,8 100:9

**afterward** 30:2

**agree** 15:13 21:15 27:11 32:6,25 33:3 35:14,18 46:7 60:11 109:1

**agreeable** 109:11,16 168:17

**agreed** 21:18 60:16 110:14 146:20

**agreement** 8:6 17:11 18:1 27:6,7,14 35:9 36:3 68:16 108:16,22 122:18,24 123:4,23 124:5 125:4,6 135:25 136:6 173:3

**agreements** 110:5

**agrees** 27:2,19

**ahead** 47:9 89:4

**aids** 63:10

**Air** 11:14

**Airlines** 5:6 34:21 94:2, 3,25 140:6 143:11

**airplanes** 150:22

**akin** 14:15

**alert** 114:5

**align** 59:2

**alleged** 29:22

**allowed** 132:17

**allowing** 87:8 117:24 118:6

**alluded** 106:16

**allusion** 174:8

**alternate** 89:24 177:20

**alternative** 90:7

**amenable** 57:25 108:16 115:17

**amend** 15:22 18:7 19:19 112:21

**amended** 10:1 13:3,11 15:6 16:2,7,21 19:10 20:1 26:6 49:20,21 116:14 118:3

**Amendment** 24:12,14 92:10

**America** 5:6 24:9

**Americans** 91:15

**amount** 25:4 30:17

**amounts** 69:22

**ample** 38:1

**analogy** 91:19

**analysis** 128:5

**analyzing** 91:18

**anchored** 34:13

**and/or** 186:14

**Ann** 177:6

**announced** 66:9

**annoying** 166:22

**answers** 59:20 61:19 163:25

**antagonistic** 179:18

**anticipate** 141:10

**anticipation** 150:15

**anyone's** 85:15

**anytime** 9:18 76:12 128:16

**apologize** 6:1 61:21

**63:11 138:18 154:23 160:2**

**apparently** 58:17 161:25

**appeal** 177:12

**Appeals** 62:16

**appearance** 118:20

**appearances** 5:8

**appearing** 137:22 152:12

**applicable** 17:25

**applies** 36:21 168:8

**apply** 82:10 179:25 181:18

**approach** 54:14 100:13,14

**arbiter's** 123:10

**arbitrary** 170:3

**arbitration** 122:20 123:5,9

**area** 31:10 34:19 78:12, 16

**areas** 76:20,21 78:12

**arguably** 15:7

**argue** 22:13 30:9 99:16 123:16

**arguing** 28:5 85:10

**argument** 16:25 26:21 31:1 36:17 37:7,8,16 38:16 42:11 45:12,13, 17 48:15 99:8 102:4 104:25 105:13 113:23, 24 123:4 126:6 129:24 175:18 179:22

**argumentative** 84:19 85:5

**arguments** 21:13 42:22 60:22 87:8 175:23 180:8

**arise** 141:1

**arises** 80:17

**Arkansas** 161:13

**Army** 11:14

**arrangement** 150:18

**assembly** 51:9 89:21 177:19 186:13

**assertion** 86:19

**assessed** 125:1

**assessment** 184:14

**assist** 43:25

**associating** 88:2

**association** 99:19

**assume** 134:18 168:17 169:16 177:24 179:6 180:19

**assumed** 134:15

**assuming** 103:5 157:13 172:6

**assumption** 59:3

**at-will** 142:22,23

**Atlanta** 161:25

**attained** 37:13

**attempt** 35:7

**attempted** 103:5

**attend** 97:22 101:9 131:1 145:7 169:21

**attendance** 28:20 119:3,16 156:6

**attendant** 47:25 94:2 141:21 145:1 151:17

**attendants** 94:3,25 97:21 137:16 138:13 141:1 147:1 171:25 172:2

**attended** 95:1

**attention** 107:12

**attorney** 145:7 183:11

**attorney's** 180:19,23, 25 181:3 182:16 183:1, 9,10

**auctioneer** 66:14

**audio** 176:24

**Audrey** 31:8

**August** 117:12

**authenticity** 110:15 111:5

**authority** 78:17 138:5

**authorized** 119:25 139:18 146:24

**availability** 120:7 122:12 126:14,17 141:5 157:16 159:23 168:23 169:4

**avoid** 47:24 67:7 78:5

**award** 20:25 73:17

**awarded** 14:10,14 16:17 36:4

**aware** 7:21 116:23 136:2

**awkward** 173:11

**awkwardly** 8:11 52:14 66:5,10

**awkwardness** 108:4 114:19 172:7

---

**B**

---

**back** 10:19 13:18 15:19 20:22 21:17 23:16,24 24:5 25:24 26:14 29:9, 23,25 30:23 36:15,22 38:4,6 41:15,21 42:7 44:4 51:25 52:9,12 54:23 55:7 60:15,17,21 67:11 74:5 75:17 79:19, 24 87:23 89:9 91:8 97:16 105:10 110:12, 16,22,23 111:6 122:2 127:7 135:14,17,23 137:25 144:3 163:7 166:20 172:25 176:24 177:9 178:10 181:8

**background** 55:17

**backwards** 28:8

**bad** 30:11 36:6 151:19

**balances** 29:20

**ball** 147:9

**ballot** 76:14 77:20 78:15,17,20 87:24 91:4

**bar** 80:10,17

**bargaining** 17:10 125:4 146:25

**Barnett** 154:11,18 157:8 158:14,15,16,19, 21,22 159:4

**based** 10:2 15:7 56:13 58:3 65:19 68:5 75:25 76:10 77:17 78:11 85:3 101:17 126:7 139:11 157:24 158:2,5 184:5, 15

**basic** 53:2,3

**basically** 15:20 44:17 65:11 81:16 83:25 93:19 100:4 102:2

**basis** 36:20 73:7 85:24 121:11 122:20

**baton** 46:19 48:13 54:4 108:5,13 109:6

**bear** 49:2

**bearing** 82:6

**beat** 9:15 62:11 186:13

**beelining** 82:18

**beginning** 102:7 115:21 117:9

**begins** 65:25

**behalf** 126:10 138:6 139:24 150:2

**behavior** 29:23

**belated** 46:16

**beliefs** 60:5 76:11

**believes** 94:22

**bench** 11:17 60:9,15

**benefit** 12:15 22:10 26:13

**benefits** 37:1,12 38:11, 13,22 39:4,19 40:22 41:1 161:16

**Bible** 94:24

**bifurcated** 180:19

**bifurcation** 180:17

**big** 51:9 121:19 177:19

**bill** 181:11

**bit** 6:3 7:25 28:9 44:4 46:6 50:21 52:12 57:9 63:25 64:22 65:10 66:19 162:22 165:20 166:6 170:21

**blacked** 163:15

**blackouts** 163:14

**blah** 174:15 183:5

**bland** 169:11

**blind** 115:15 155:21

**blood** 7:8

**blow** 55:10,11 100:16

**blowing** 101:11

**board** 29:20 45:22 140:2 149:16

**Bobby** 5:10

**bomb** 54:14

**Bonda** 99:20

**Bonta** 91:16

**book** 141:2 177:14

**booked** 90:8

**bookend** 127:10

**bound** 83:14

**box** 64:7,15,17 66:8 68:2 69:16 100:2 186:11

**boy** 79:1

**breadth** 167:8

**break** 23:15 67:10,11 75:19 89:4,9 100:2,4,23 101:2,18 151:22

**breaking** 72:10 153:11 181:9

**breaks** 100:6,8 101:23

**Brendon** 160:10

**Brett** 138:16

**Brian** 5:15 43:23 138:16

**brick** 68:7

**bridge** 34:24 92:19

**briefing** 45:10 46:4 47:12 48:18 181:13 183:1

**briefly** 28:13

**briefs** 14:14

**bring** 35:16 45:19 51:1, 5 52:17 64:1 133:10 167:6 180:3

**bringing** 33:21 133:11

**brings** 160:1

**broaden** 19:24

**broader** 123:4

**brought** 20:23 40:24

**bucket** 120:9,18 122:5, 11,14 129:4 131:9,10 137:15 154:6 155:4,15, 25 156:9,13,14 157:17, 21 158:17 159:6 160:1 167:13,14 169:24 181:22

**buckets** 45:24 149:8 153:22,23

**bullet** 92:24

**bumping** 58:4

**bunch** 51:13 52:7

**burden** 116:16

**Burdine** 111:24 120:11 154:11,18,20 155:14 157:7,10 170:18

**burn** 62:23

**burned** 121:21

**business** 97:25 109:13,19 110:3

**bust** 55:5,6 80:18,19,22

**busting** 55:2 82:18

— C —

**calculation** 134:21

**California** 48:1

**California's** 91:14

**call** 12:19,20 14:14 21:16 48:22 54:23 55:21 56:4 60:17 62:3, 15 73:8 93:7 96:5 100:23,24 101:2 107:11 108:14 113:7 114:5,18 121:17 132:10 136:21 143:10 154:4 155:5,7 157:22 175:19 178:8 179:7

**called** 39:23 43:23 62:10 94:4,11 118:7 132:16

**calling** 122:2 128:8 135:17,23

**calls** 5:4

**calm** 7:8

**candidate** 75:25 78:6 88:5,6

**candidates** 87:23

**cap** 20:23

**capacity** 43:21 44:5,12 164:9

**caps** 20:14

**Caravan** 44:21

**card** 56:1

**cards** 18:23

**care** 17:1 109:2 127:9 135:6

**careful** 80:20

**Carter** 5:5 13:15,24 15:8 21:3,16 26:15,20, 22 27:1,15 28:1,20 29:9,10,22,24 30:15,17, 18,23,25 31:4 32:2,19 34:14,19 35:5,6 36:15, 16 38:1,13 39:3 41:14, 15 42:16 43:17 44:15 45:1 47:7 49:7,8 75:21 76:3 79:22 81:13,16 83:9 84:16 93:1 94:1, 10,12,21 95:2,7 96:24 98:5,15 105:7 108:5 112:7 113:11,15 118:13 120:19 122:2,14,16,17 123:15 124:18 125:6 126:3,11,19 129:15,18 131:11 164:2 173:22 178:21 180:18 181:23

**Carter's** 13:16 34:21 37:2 38:9 39:17 44:2 63:7 82:4 88:15 90:9 95:6 98:6 107:15 108:25 111:23 112:3 125:16 126:18 162:11 171:3 173:17,23 181:18

**carve** 126:1 166:23 178:23 180:23 181:7

**carving** 31:11

**case** 9:18,19,20,25 12:6,7,8,18 13:7,10 14:3,5,13,16 16:11,12, 20 17:8 19:9,10 21:9,15 34:5 37:9,17 39:23 40:5,23 41:4 42:15 45:8 50:19 51:2 55:6 58:5 60:7 65:21 66:17 67:14 69:8,18 70:20 76:25 82:2,5,6,8,10 83:1,4 85:2,10,11,19,23 90:8 91:13 93:17,24,25 97:14 102:13 109:20,24 110:7 113:8 114:7 115:21,22 117:2 119:5 125:18 130:14 132:24 133:15,21 134:1 136:21 138:1 141:21,25 142:15 146:15 148:17 151:22 160:9 168:16 169:21 171:4 177:13,20 180:1 185:7,10 186:18

**case-in-chief** 132:11, 17 134:17

**cases** 12:10 14:9 17:8, 12 24:6 37:11 44:22 61:23 69:19 92:3,11 114:24 115:11 143:13 151:9 182:25 185:8 186:18

**cast** 78:11,20

**casting** 78:15

**cat** 79:16

**catching** 63:11

**categories** 45:24

**category** 40:17 123:20

**cattle** 12:18

**caveat** 135:19 173:24

**CBA** 148:17 171:15

**cetera** 32:5 38:4 45:17 96:2 125:17 141:12 150:3

**chairs** 186:4

**challenge** 148:5

**challenges** 50:17,21 51:13 60:4

**chance** 22:18 23:8 122:18,24 123:4,23 124:5 125:6

**change** 24:19 28:3 51:3 82:1 96:24 103:6 118:25

**changed** 19:11 102:23 136:4

**changing** 101:23

**characterization** 45:7

**charge** 6:19,20,23,24 14:24 15:1 21:18,19,22, 24 22:2,9,14,19,23 23:1,3,9,12,20,22 24:23 25:7,8,11,13 64:12,14 68:14 102:9,11

**Charlene** 94:1 124:18

**chart** 172:15,19

**chasing** 147:11

**check** 65:7 92:6 141:6 142:14,16 176:24

**checking** 177:9

**checks** 29:19

**Chief** 89:19 90:1

**choice** 173:24

**choices** 173:10

**choose** 81:24 173:8

**chooses** 173:22

**Christian** 94:22

**church** 77:3 92:6,8

**circle** 55:7 79:19,24

**Circuit** 14:3,13 16:20 19:9 39:23 40:6 53:1

76:25 91:5 92:2,20
93:15

**circuits** 14:10

**circumstance** 136:4

**circumstances** 19:11

**circumvented** 144:12

**citation** 109:20,24

**cite** 40:2

**cited** 14:7,13,16 16:20
45:8 99:20

**cites** 14:9

**citing** 47:11

**civil** 5:4 12:7 24:14 50:9
51:2 61:23 93:25 181:1

**civilization** 83:4

**claim** 13:1,12 14:11
17:9 27:24 30:3 183:24

**claims** 13:25 27:22
44:19 49:7 125:13
126:2

**clarification** 124:14
159:5

**clarified** 24:12

**clarify** 49:11

**clarifying** 20:17

**clean** 102:24 176:23

**cleaning** 8:15

**clear** 7:3 120:10 128:8
145:11 170:9

**clearing** 145:13

**clerk** 65:20

**clerk's** 56:3 89:19

**clients** 53:8 177:4
186:20

**clinic** 56:20

**Clinton** 31:2 32:25
87:17

**Clinton/trump** 31:17

**clock** 7:4,12 59:9 65:9,
12,17 66:23 69:23
70:16,22 72:4,25 73:9,

21,22 75:1,3,16 99:24,
25 100:20 101:20,25
102:14 109:4 121:16

**clocking** 176:21

**clocks** 66:4 74:13

**close** 50:9 52:8,11 65:8
68:19 80:2 102:6
136:11,18 138:25

**closed** 9:9 23:5

**closing** 68:10,12 86:11
102:4 179:11

**Cloutman** 5:19

**cluttering** 133:21

**co-comparator** 46:22

**co-defendant's** 75:15

**coast** 139:6

**code** 104:12 105:25
174:9,19 175:9 176:5

**collateral** 37:1 39:15
71:15,18

**collective** 17:10 125:4
146:21,25

**collectively** 75:4
146:10

**Colorado** 132:3,7
139:4

**columns** 10:12

**comfort** 12:17

**commit** 50:23

**commitment** 70:15

**Committee** 97:24

**communicate** 97:10
144:22 155:18 177:3

**communicated**
141:11

**communicating**
155:23

**communication**
134:20 150:17

**communications**
31:8,21,23,25 32:2,4,9,
13 33:9,14 34:6 147:23

**company** 40:1 141:20

**comparator** 42:14
46:9,23

**comparators** 42:15,17

**compel** 141:21 142:9
153:13 156:5 169:20

**compelled** 173:21

**compelling** 91:14,24,
25

**compensate** 73:17

**compensatory** 17:15,
25

**complaint** 13:3,4,11
15:6 16:3,7,22 17:5
19:10 20:1 108:12
164:2

**complaints** 68:7
101:10

**completion** 126:9

**compliant** 138:8

**complicated** 143:8

**components** 95:18

**computer** 10:24

**conceptual** 37:15

**concern** 15:5 32:21
47:19 82:19,22 87:21
96:18 97:18 99:3,14
107:4 115:8 116:7
119:10

**concerns** 61:23 76:14
82:20 86:24 87:1 90:13
93:3,23 98:5,12,23
116:6 119:17 134:13

**concerted** 43:16

**concluded** 187:2

**concrete** 71:12

**condition** 128:18

**conditional** 136:10,11,
17

**conditionally** 128:12
129:5 130:20 163:12
171:6

**conduct** 16:18 27:11

**company** 40:1 141:20

**confer** 132:9

**conference** 5:7,22
6:10 11:25 14:24 15:1
22:14,19 23:2,3,12,20,
22 24:19,23 25:8,11
64:15 79:20 102:9

**conferences** 6:23,24

**conferring** 106:17

**confirming** 6:16

**conflict** 135:15

**confusing** 174:18

**Conlan** 120:12 157:14
160:24 161:5,6 162:16
170:18,25 171:7 172:17

**Conlon** 111:24 160:10

**conscious** 41:23 79:8

**consent** 13:21,22
15:14 18:13

**consenting** 20:2

**consideration** 34:22
60:3

**considered** 38:5

**constant** 43:13

**Constitution** 24:10

**constraints** 50:10

**construed** 18:4

**consuming** 64:7,11,12

**contact** 6:8 8:12 143:5,
10 144:18,22

**contemplated** 154:7
157:3

**contemplating** 129:11

**contend** 29:14 95:16

**content** 95:13 166:1

**contested** 13:15 15:8
21:4 27:21

**context** 17:10 71:13
77:1 87:14 91:21
114:11 123:18 184:23

**continue** 125:23 140:9

**continued** 117:18

**continuing** 71:5
145:24

**continuous** 161:11

**contrary** 94:23 113:1

**contrast** 124:4

**contributing** 39:5

**contributions** 36:18
37:10

**control** 26:10 119:12
122:8 126:25 127:17
129:14 130:24 131:1
137:22 140:2,4,12,15,
16,21,24 141:16,17
142:18 143:24 144:9
146:10,18,21 149:22
150:6,11 154:15 155:17
156:10,15 157:6 167:24

**controlling** 130:9

**conversation** 130:22
134:16 167:22 171:11
182:1,13

**conversations** 8:1

**cooperate** 59:11
127:16 128:2 131:5
147:3

**cooperating** 105:21
153:8 159:18

**cooperation** 57:22

**cooperative** 149:5

**cooperatively** 167:22

**coordinate** 116:14

**coordinated** 143:22
144:1

**coordinating** 119:14
143:17 147:14 164:22

**coordination** 9:10
167:18

**coordinator** 137:2

**copied** 120:21 158:1
160:12 164:1

**copy** 10:25 11:17 84:10
102:24 177:5,12,15

**corporate** 53:8 70:16
112:4 178:12 186:4

**corporation** 142:19,
21,24 144:9,10 146:7

**correct** 43:8 48:11
68:12 107:22 127:24
131:6 140:17

**corrected** 138:23

**counsel** 35:7 52:5
86:2,16 102:20 108:3
143:15 144:19 173:18

**count** 35:24 63:17,22
64:4 66:11 101:7,25
102:3,11 170:17

**counted** 64:6

**counter-designations**
165:2

**country** 147:11

**counts** 63:25 175:20

**couple** 35:4 115:3
130:23 135:1 136:20
137:25

**court** 5:2,3,4,11,16,20
8:2,10,17,20,23 9:12
10:4 14:18 15:18 16:19,
24 17:23 18:1,8 19:16
20:9,16,21 25:17 27:18
28:4 29:4 30:4 32:7,12,
16,19 33:7 38:8,25
39:2,21,25 40:3,11 45:2
46:2 48:8,12 49:13
52:20 55:25 56:3 57:4,
19 58:9,12,19 59:6
61:3,20 62:16 63:18,24
64:5,9 65:9 68:12,18
71:9,12 72:1,8,15 73:24
74:2,6,25 76:3 77:16,19
78:7,9 79:6,8,25 80:25
81:5,7,9,23,25 82:5,12,
22 83:19,22,24 84:24
85:1,5,6,8 86:7 87:7
88:20,24 89:11,13,15,
16 90:17 91:13,18
92:20 93:10 94:7,20
95:11,18 96:3,8,16,20
97:11 98:2,9,11 99:8,
12,22 106:23 112:15
113:3,9,14,19 114:8
115:9 116:4,21,25
117:13,22 120:2 122:10

124:6,14 125:19
127:20,25 129:2,12
131:3,7,20,23 132:4,23
134:18 135:22 136:16
137:7,10 138:12,25
139:7,14 140:7,14,18
141:8 142:7,16 143:19
144:8,24 146:6,14
147:4,20 148:1,9 150:4,
8 151:8,13,18,21
152:14,22 153:16,24
154:17,20,25 156:7,13,
16,21 157:5,11,18
159:16,22 160:3,25
161:4,11,19 162:10,15
163:3,6 164:18 168:12,
18,25 169:10 170:14
171:2,19 172:3 173:22
175:11 177:6 178:4,14,
17 179:4 180:21 181:7
182:2,10,23 183:3,7
184:1,7,14,20,24 186:1,
20,21

**Court's** 82:8 153:22

**courtesy** 9:5 55:9
147:18

**courthouse** 12:9 24:24
60:2 142:4

**courtroom** 51:6,7

**courtrooms** 111:1

**courts** 17:14 24:8 42:3

**cover** 7:15 10:9 11:20
54:3 64:21 156:14
179:1

**covered** 47:14 90:9
133:7 135:11 167:9
180:13

**covering** 6:12

**COVID** 12:15 51:10

**cramped** 23:17,25
48:25

**create** 106:20 135:20

**creative** 90:3

**credibility** 53:25

**criminal** 12:6,10 24:13
51:4 67:13 89:20 93:24

**critical** 44:11 161:25

**critically** 121:6

**cross** 21:3 70:3 129:21
133:15,21 134:6 136:1,
7 181:9

**cross-examination**
69:14,24 75:14

**cross-examining**
108:24 133:6

**cross-reference**
172:15,19,24

**crowd** 41:19 42:1

**crucial** 125:13,18

**crux** 28:1

**CSO** 178:9

**cumbersome** 11:1
176:25

**cumulative** 72:18
73:19

**curative** 180:9

**current** 132:6 139:9
148:15 160:6 163:22
171:12,17

**cut** 54:2 84:6 101:15
106:8 107:2 154:25
166:13

**cutoff** 117:1,4,15
153:17 162:17

**cuts** 83:6

**cutting** 106:7

**D**

**daily** 177:5,12,15

**Dallas** 132:20 138:20
139:6,11 143:6,12

**damage** 20:14,23,25

**damages** 12:25 13:4,6,
9,11,18 14:2,6,10,15
16:6,17 17:7,9,15 36:20
37:6,18 40:25

**Dan** 142:16

**dangerous** 55:15

**date** 12:13 116:21
163:11 169:8 170:3

171:6

**dated** 10:13

**dates** 129:17,22 130:11,13,17,19 160:25 162:17

**Daubert** 121:7

**dawn** 111:1

**day** 22:8,20 54:19 65:3, 13,16 70:14 90:5 101:20 102:1,7,8 103:12,13,25 108:5 109:5,8 117:10 118:6 127:3,6,8 128:10 130:3 134:3,20 142:8 148:23 163:8 177:15

**days** 35:4 49:21 55:7 102:2,5 130:4 131:14 181:1

**DC** 95:2

**de-identify** 61:16

**deadline** 145:18 147:5 148:7,8,10,11

**deadlines** 117:7

**deal** 81:8 135:6 162:9

**decide** 24:6 185:4

**decided** 74:14,16

**decides** 173:18

**deciding** 79:7

**decision** 14:25 33:14, 24 74:9,21 75:10 77:15 125:1,2,5 160:14

**decisions** 34:22

**declaration** 174:15

**declare** 180:10

**Deep** 109:23

**default** 108:11,21,23

**defect** 145:12

**defective** 121:6

**defects** 145:12

**defendant** 5:15 140:22

**defendants** 18:18 57:17 67:15,21 74:1,16

82:4 112:1 136:12 185:24,25

**defense** 67:16 75:1,3 109:7 122:14 128:22 136:24

**defining** 44:12

**degree** 95:13

**delay** 115:7 116:2

**deliberation** 23:17 24:3

**delve** 76:22

**delved** 18:10

**demand** 13:4

**demonstrate** 43:11

**denied** 70:9 122:22

**dental** 38:21

**Denver** 139:3

**deny** 30:6,19 40:15 98:19

**depending** 41:2 182:6

**depends** 47:18

**depo** 7:16 111:17 112:4 113:4 115:2 117:14 118:8 120:25 121:25 153:15 154:22 155:16, 24 156:2,17,25 158:4, 23 163:16,23 164:20,25 165:2,19,21,22,23 166:5 167:1,2,9,15 168:1 170:2,7,15,16,23 172:9,17,20,21 173:1,3, 4,9,10 185:17,20

**depos** 115:14 117:24 165:8 174:3 185:13

**depose** 114:1,16,20,22 116:3 173:22

**deposed** 114:19 138:1, 15 139:21 151:24,25 152:7 159:9

**deposing** 173:19

**deposition** 112:19 116:13,22 117:4 118:12 120:13 139:17,21 151:23 152:5,8,17 154:7 155:6 156:6

157:24 158:11 162:7 165:6,9 168:11,15 169:23 172:7 185:18

**depositions** 116:9,18 117:21 119:14 157:4

**designate** 109:7

**designated** 46:9 165:14

**designations** 7:16 111:17 165:2,10,20 167:10 185:19

**designed** 113:7

**detail** 29:3 104:9

**details** 162:4

**deter** 16:17

**determination** 182:18

**determine** 96:9

**determined** 182:23

**DFR** 44:19

**dialogue** 149:3

**dicey** 101:13

**differently** 170:21

**difficult** 81:7 135:2 148:2,3 160:5 162:24

**diffusion** 150:13

**digging** 123:9

**dingy** 24:18

**dire** 7:1 31:16,17 50:2,5 52:19 53:15 54:6 55:19 59:16 60:23 61:2,6 63:7,14,21 64:3 75:18, 20 83:25 85:5 89:3,18 90:10 91:23 92:3 93:8, 11,12,13

**direct** 70:3 129:21

**directed** 23:6 102:10 128:17 133:22 134:2

**directly** 29:9 30:2 44:8 148:19,20 158:21 159:12 171:10

**directors** 44:10

**dires** 83:21

**disagree** 20:3 45:7

**disagreement** 22:5 27:14 28:11

**disallowed** 88:12

**disciplinary** 44:8

**discipline** 26:24 42:19 43:19 44:11 164:5,6,10

**disciplining** 42:18

**disclaim** 85:14,16,19

**disclaimer** 85:10,24 86:20 87:3 88:17 167:1

**disclose** 91:14 112:13 114:3

**disclosure** 113:22 144:18 158:23

**disclosures** 108:1 112:2,6,12,22 113:6 114:6,14,15 118:3 144:20 154:9 160:7,20

**discover** 153:2

**discoverable** 76:15,17 83:5 88:3

**discovery** 20:21 117:1, 3,7,15,17,18,19 153:17 163:23

**discreetly** 41:11

**discrepancy** 96:13

**discrete** 120:8

**discriminate** 27:2

**discrimination** 29:16 85:3

**discussed** 7:24 8:14 32:8 58:23 149:20

**discusses** 74:1

**discussing** 79:25 95:24

**discussion** 48:19 105:11 111:17 148:13

**discussions** 84:18 123:14

**dispute** 31:10

**disputed** 13:8

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 196 of 214   PageID 9323
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Index: distancing..exception

distancing 51:11

distinction 124:4
130:9

distinguishes 131:17

District 109:21

districts 14:7

Dobbs 81:17,18,20,23
92:22 93:2

doc 11:3 111:14

docket 10:5 12:19 50:7

document 26:4,9 47:4
83:22 107:21 110:23

documents 35:8 49:17
110:24

Donald 31:3 34:12
87:17

donate 91:8

donated 90:25

donating 92:18

donation 91:10

donors 91:15

downstairs 51:8
177:19

dozen 116:12

draft 6:22 22:8,24 81:18
92:22

drag-out 80:6

drawing 37:14

drawn 91:5

drive 10:24

drive-by 168:25

drop 54:14

dual 150:17

duly-served 145:24

dump 102:23,25

duplicative 8:16

duty 27:21 30:2 44:23,
25 125:13 145:24

E

Earl 167:6

earlier 78:22 106:17
159:8 174:7 179:10

early 22:19,24 24:5
69:3,6,9 106:12 117:12

earnings 39:9

earth 25:5

easier 142:22 178:25

Eastern 109:21

easy 71:14 127:4 154:1

Edie 154:11

edit 165:25 166:3,23
173:10,12

edited 166:18

Edward 5:19

effectively 18:7 21:5
106:19

efficiencies 68:21

efficiency 63:1 67:3
68:8 69:13 73:21 75:6
82:19

efficient 68:15 69:12
70:2 75:5,7,15 101:6
175:25

efficiently 67:1 106:13

effort 42:19 43:16
94:16 143:22 175:24

efforts 29:8 38:3,6

eight-person 51:2

Eighteen 87:11

eighth 7:15

electronic 10:21,23

elements 18:14 110:1

eliminate 37:20

else's 109:14

email 11:5,6,7,12,16
22:9 65:14,20 70:4,5
81:10 89:1 97:10,13,17
98:13 103:13,24 104:16

107:16,18 108:1
109:13,18,19 110:2
160:13 161:10

emails 120:22 123:13
158:2

embrace 99:17

emergency 151:23

Emlet 126:20

emotional 78:1

employed 137:17
154:1,12 159:6,9

employee 16:16 29:14
37:1 38:22 42:13 43:19
44:6,11,21 122:8
127:23 128:9 131:25
132:7 140:16,23 143:4,
9 157:23 158:9,17
164:5

employees 42:10,18
45:17,21 113:5 119:20
127:15 137:21 140:5
142:9,22,23 154:5
157:13 160:6 163:22
171:13,17

employer 16:15 37:12
40:18 41:1,9

employer's 42:13

employers 43:23

employment 33:15
34:22 122:19 181:18
182:25

employs 126:24

encompass 31:7

encourage 74:7,9

end 10:17 11:19 27:10
29:23 52:2 62:8 65:2,8,
13 74:17,22 79:19
81:21 84:3 85:19,23
86:12 89:2 93:22 102:7
111:16 115:22 118:6
128:18 130:3 133:8,25
134:20 135:16 142:8
148:22 159:19 163:8
166:14 167:12 176:8
177:13 179:15,21
180:1,9 181:8

ended 170:25

ends 65:25 98:4 174:6

England 24:5,8

English 176:6

enlightening 109:21

enlist 11:15

enlisted 11:13

entire 163:15

entirety 121:4 162:24

entitled 17:7 18:6
153:1 181:10

entries 10:15

equal 57:2

equals 172:18

equate 59:10

equitable 181:16
182:22

equity 184:16

error 72:11

essentially 48:11

evaluate 78:1

eve 15:22 147:10

event 156:22

events 153:7

eventually 24:7

evidence 19:1 23:5,13
26:21 29:8,10 30:25
36:17 37:25 39:8,9
42:10,12 43:1,2,9,10,20
44:14,24 47:20,21,24
48:20 71:1,15 85:12
97:6,7 102:3,4 103:11,
13,23,25 105:5,8
110:22 122:23 125:10
127:6 128:21,22 179:24
182:21 183:17 184:15

evidentiary 184:18

evolving 185:1

examination 136:14

examples 47:1

exception 109:19
110:3 178:23

exchanging 185:13

exclude 46:17 121:25

excluded 39:12

excluding 122:23

excuse 59:25 60:2,19 97:23 134:10 136:8

excuses 59:22,24

excusing 133:2

execute 140:2

execution 43:24

executive 29:20 137:23 140:2,9

exhausted 180:14

exhibit 7:6 9:9 10:1,15, 21,23 31:11 34:13 64:22 65:15 87:20 102:15,19 103:2,4,5,9 105:2,4,7,8,18,19 106:14 107:1,7,9 110:10,20 116:14 123:8,11,18 172:11,12, 13,18 173:5,6

exhibit-wise 108:9

exhibits 8:16,25 9:4,9 10:10,11,18 25:3 31:15 32:13,21,23 34:18 87:15 102:18,22,25 103:15,19,22 104:3,6, 22 106:18 107:17 109:8,15 110:6,12,16 111:6,10

exist 17:13 166:21

existence 143:2

expect 85:6 110:4 130:13 155:19 177:15

expectation 41:16 91:22 92:12,17

expectations 100:1

expecting 134:19

expenditures 96:1

expert 121:5 183:11

experts 178:22,24

explain 28:22 48:2 61:15 106:2 175:7

exposure 118:1

expressed 94:12 131:5,25 141:15 149:14,25

extend 117:7 121:22

extended 99:20 117:11

extending 55:9

extension 117:14

extent 17:23 50:20 123:24 132:10,16 168:9 170:21

external 29:19

extra 27:9 67:2 101:3 104:18 158:3

eye 6:8 8:12 109:4

---

**F**

F-R-Y-E 11:10

F.2d 40:5,9

face 6:6 117:18

Facebook 95:2 96:25

fact 16:14 27:4 28:3,6, 18,25 30:11,18 35:8 97:23 117:14 121:4,9, 11 131:18 153:17 163:23 174:12

factor 20:15

facts 21:7,8,10,13,17, 21 82:10 86:21 184:15

factual 85:24 86:18 174:16

fair 27:22 28:7 30:2,12, 20 36:5 44:23,25 50:23 56:17,22 60:14 83:10 116:19 125:14

fairest 118:7

fairly 17:14 29:10 82:10 96:11

fairness 28:17,20 29:1 125:8

fall 45:23 181:21

fallback 130:19

falls 123:20

family 36:18 37:10,17 38:2 39:4,7 40:17 41:5, 13,15,17,24 66:16 70:19 80:1 84:19 87:9 161:14

farther 52:12

fashion 79:17 111:16 168:4

fashioned 145:13 147:2

fast 176:6

fault 155:2

feasibility 184:12

feasible 183:24 184:3

federal 82:5 85:6 98:17 181:1,7

fee 94:12 181:6,11 183:12

feel 24:19 25:20 52:22 78:13 82:7 83:1,5,6,9, 11 92:11 115:21 127:12 160:18

feeling 31:19

feelings 87:22

feels 75:23 77:13

fees 180:19,24,25 181:3,10 182:16 183:1, 9,10

felt 44:1

field 67:21

fight 42:21 46:5,6 80:17

fights 80:6

figure 13:23 15:9,23 27:8,13 31:18 38:18 40:21 55:21 60:17 65:23 66:6 70:13 118:15,23 124:10 131:8

figured 15:18

figuring 58:15

file 10:2,4,6,7 11:2 46:16 102:19 104:7 119:23 137:20 140:5 165:9 169:12 181:3

filed 54:5 93:25 105:11 124:17 169:15

filing 126:16,18

fill 51:23 109:8

final 14:25 113:11,15 127:5,8 128:19 181:2

finally 14:12

find 33:19 50:8 77:21, 24 148:21 156:24 163:18 171:22 186:12

finding 27:4 28:18 51:15 123:10 129:22

finds 17:23

fine 9:4 25:17 34:20 49:1 51:14 62:20 92:9 101:4 102:24 107:2 108:19 109:2 127:8 128:6 151:3 152:4 158:8 159:1 169:1 175:19 180:11

fingertips 26:10

finish 51:18 66:13 89:10

finished 65:2 69:8 89:23

finishing 100:17

fire 162:21 173:6 183:19

fired 43:17 44:15 95:7

fit 8:18 51:6 176:11 186:3

five-year 32:3

fix 63:12

fixed 23:11

flag 55:2 56:20 63:6 84:17 85:9 86:23 88:15, 18,21 89:18 98:12 108:6 109:9 110:11 140:21 146:7 172:8 180:3

flagged 90:22

flagging 22:5 89:22 107:13 184:24

flavor 124:7

**flight** 47:25 94:2,3,25
97:21 124:1 137:16
138:13 141:1,2,21
145:1 147:1 151:6,16
171:25 172:1

**flip** 63:6

**flow** 62:21,22 72:11
179:19

**fly** 155:21

**flying** 115:15 132:3,8

**folks** 60:9 112:1
119:12,19 120:18
121:25 137:15,25
138:4,15 141:4 153:9
155:14,20,23 156:9,15
160:19 167:13,14,19,20
169:14,21 170:15
185:16,19

**follow** 84:20

**follow-up** 54:12 55:22
56:12 87:10

**follow-ups** 80:4,22
87:8

**fond** 71:4

**food** 20:8,13

**football** 52:22 59:16
61:6

**force** 11:14,15 66:22
135:9

**foremost** 45:6

**forget** 62:7

**form** 56:14 79:14 128:4
165:13,15 183:17,18
184:10

**formal** 6:24 14:25 23:3,
12,22 24:19 25:11

**formally** 154:16

**formers** 128:2 130:7
159:1

**forms** 56:4,22

**formulated** 84:15

**formulation** 93:1

**forthright** 70:18

**Fortunately** 152:10
181:7

**forward** 45:20 162:12
185:8,11

**foundation** 91:16
110:14 111:4

**four-** 32:3

**fourth** 13:3,11 15:5
16:2,6,21 19:10,25 58:3
76:17 92:10 99:17

**frame** 61:13 81:14

**framed** 86:14

**framework** 91:17

**frankly** 17:6 29:3
112:25 119:22 143:3
162:5 183:2

**fraudulently** 78:15,20

**free** 25:21 29:16

**free-for-all** 48:10

**freely** 72:3

**frequent** 72:5 73:18

**Friday** 115:14 149:4

**friend** 37:10

**friends** 36:18 37:17
39:5,7,12 40:16 41:5,
13,15,17,24 84:19

**front** 36:11 52:11 74:22
86:4 89:2 105:25
110:20 133:8 174:9
181:19,25 182:12,18

**fruits** 70:1

**frustrated** 71:23

**Frye** 11:10,16 51:19,23
65:14 97:13 186:12

**Frye's** 11:5,7

**full** 24:21 110:2 152:8
165:1,10

**fully** 18:20 132:18
153:2

**fun** 185:7 186:18

**function** 162:1

**fundamental** 125:8

**funding** 41:20 42:1

**funds** 38:1

**future** 16:17

---

**G**

**gain** 73:16

**gamble** 121:19

**game** 30:20 56:23
66:12 69:19 70:21
74:10 166:15

**gaming** 69:21 70:24
71:6

**gander** 44:16

**gatekeeping** 174:12

**gather** 168:21

**gave** 67:17,22 70:10
104:9

**gear** 116:13

**general** 31:19 64:9
100:2

**generally** 55:19

**geographically** 151:2

**get along** 59:4

**Gilliam** 5:9 7:22 8:9,13,
18,21 9:11 14:1 16:5,23
25:15 27:17 32:22 39:6,
22 40:5,9 43:8 49:11
55:23 60:25 62:12
82:11 87:5 90:16 93:9
94:6,18 98:7,10 99:1,15
112:8 113:17 114:2
115:3 116:1 117:3,16
123:19 124:16,22 129:1
143:15 144:15 147:21
148:6 159:5 162:14
163:1,5,24 167:17
171:16 179:2 180:16
181:17 182:8 183:23
184:6,21

**Gilliam's** 45:7

**give** 11:7 22:1,24 26:2
35:3 40:2 49:9,24 54:1,
4 57:7,8,14 58:2,3
61:24 67:21 71:12 72:9
73:13 74:4,23 75:12

76:23 85:22 86:22
93:16 100:15 101:12
102:18 104:8,24 106:24
108:20 122:11 145:4,14
147:12,16 160:25
165:23 167:1,3,7
172:21,23 174:19,24

**giver** 85:21,22

**giving** 57:25 61:5 114:6
148:10 185:9

**glad** 73:2

**glass** 151:22

**global** 31:20

**globally** 32:6

**goal** 166:3

**God** 94:24

**Gofundme** 41:8,12,18

**Gofundmes** 42:3

**good** 9:10 12:5 15:23,
24 16:1,25 17:24 18:19
19:8,19 20:2,6 30:10,
14,17 41:22 42:4 44:16
50:21 54:7 56:9 57:4
62:5 63:11,18 64:21
66:18 73:3 79:8 82:11
85:8 87:1 96:22 100:17
105:21 132:12 134:7
152:14 161:15 169:16,
18 179:7

**goose** 44:16

**Government** 69:4

**grab** 10:22

**grant** 34:3 36:9 72:2

**granted** 117:8

**granting** 34:17 47:10

**gratuitous** 34:4,23

**great** 22:22 40:3 102:21
135:7 153:10 157:22
186:1,3,17,23

**greater** 12:17

**green** 145:18

**Greenfield** 5:18 20:7,
11,20 29:6,7 31:14
32:1,14,15 37:21 40:7,

10 45:5 46:16 48:17
58:20,22 66:1,15,20
73:23,25 82:14,16 86:1
87:15 88:20,22 95:9,12,
22 96:7,10 99:13
113:12 125:11 130:21
135:13 138:10,21
139:2,9,13,23 140:12
141:9 142:3 149:11,12
169:5

**grievance** 27:4 28:17
44:1 122:19 123:5
124:17,21,22 126:5
160:16 164:9

**grievances** 43:22 44:6
164:5

**ground** 116:20

**group** 51:15,16 53:6
54:22,25 55:8 61:7 80:8
83:13 111:15,22 112:17
113:16 114:18 137:16
154:21

**groups** 111:15 120:3
158:16

**guard** 24:1

**guess** 13:19 31:9,13
35:12 37:14 42:20
47:18 48:5 114:8 115:5,
6 120:18 122:6,17
124:10 132:14,15,18
134:23 138:8 142:14
149:22,23 152:3,22
159:11 165:20 180:16
181:18 186:6

**Guttierez** 126:20
127:14,22 131:4,17,20
132:15 135:11 159:8

**Guttierez's** 129:8

———————————

**H**

———————————

**habitually** 171:25

**half** 52:13 80:16 116:12

**halfway** 52:12

**hall** 59:21 118:19,21
178:10

**Halpert** 151:13,19

**Halpert's** 151:14

**hand** 19:21,23 40:19
71:5 108:5,13 165:6,18

**handcuff** 30:13

**handed** 172:11

**handful** 69:19

**handily** 174:24

**handing** 109:5

**handle** 6:23 7:7,10,11,
12 22:3 23:6 52:19
55:19 74:2 85:17 86:2
92:24 96:17 97:5
105:19 108:10 133:12,
18 134:5 135:10,25
137:24 164:16 172:14
173:1,2 175:21 180:25
181:12 183:8

**handled** 43:22 48:3
70:8

**handling** 100:12 122:4
133:14 135:4 164:9,10

**hands** 79:3,9 114:13
145:2

**handy** 53:14

**happen** 24:20,22 25:9,
12 53:23 82:20 103:12
115:14 120:16 150:21
152:25 153:19 168:4
169:2

**happened** 30:1 74:15

**happening** 86:6

**happy** 83:7 114:23
115:1 150:2 156:24
157:1

**harassing** 29:22

**harassment** 29:16

**hard** 21:14 33:22 54:25
57:23

**harder** 54:15

**hardship** 59:22

**harm** 43:18

**hash** 110:5 175:16

**hashing** 109:17

**hate** 115:6 118:17

**hawing** 86:5

**head** 9:15 88:10 139:10

**heads** 101:12 147:16

**health** 39:17

**heaping** 71:1

**hear** 8:8 16:25 21:15,21
25:25 26:19 27:15,16
29:6 32:16 33:12 37:7
38:9 39:3 42:22 45:3
46:1 47:6 67:19 68:20,
22 101:10 102:9 103:21
104:13 113:11 114:15
115:1 116:4,6 129:15
136:24 144:3 146:17
151:23 166:4,25 167:2,
16 174:17 176:14,16
186:10,11

**heard** 49:6 151:18
164:19 179:23,24,25

**hearing** 63:10 103:10
114:25 122:19,20
123:5,6 135:7 179:8

**hearings** 28:18

**hearsay** 104:14 106:1
165:16 174:14,25
175:10

**Heated** 87:8

**heels** 12:2

**held** 36:15,22 135:16

**helped** 35:23

**helpful** 72:13 74:19
144:2

**helping** 37:17

**helpings** 71:1

**helps** 21:9

**hem-hawed** 78:25

**hemming** 86:5

**hesitant** 74:4 82:16

**Hey** 9:9 48:23 60:5
62:18 66:14 69:22
74:14 86:16 104:2
121:20 136:20 143:5
146:10 156:23

**hiding** 147:9

**higher** 20:24

**highest** 62:4

**highlights** 97:6

**Hill** 5:10 79:24

**Hillary** 31:2 87:17

**hired** 67:21

**history** 44:6 83:3

**hits** 88:9

**hold** 62:2,6,8

**holding** 77:4

**home** 59:25 80:6 92:12

**honestly** 9:16 81:1
89:7 171:21

**Honor** 7:23 8:13 14:1
16:5 20:7 27:17 29:7
32:1 35:17 37:21 43:8
45:5 47:17 49:11 55:23,
24 56:25 58:10,22
60:25 63:9 72:14 73:23
77:11 78:21 86:1 88:23
94:18,19 95:9,10 99:14,
16 117:6 119:1 125:11
130:21 134:14 135:13
136:10 139:23 143:15
144:15 148:6 169:5
174:13 180:16 182:9
183:23

**hope** 110:7 167:17

**hopeful** 173:17

**hoping** 48:9 83:12

**Horizon** 109:24

**horrible** 64:18

**horribly** 64:16 75:11

**hospitality** 162:1

**hour** 100:2 117:25
118:12 120:12 148:20
162:7

**hours** 24:18 63:15,19
64:4,5 67:25 68:11
69:5,7,8 74:1 75:1,12
101:20,21 102:1
115:20,24 129:18,20
144:3 165:8,12,17

**HR** 183:5 184:2,4,12,21

**huddle** 54:21 55:3 86:16 133:3 134:7

**huddled** 25:4

**Hudson** 111:24 120:12 154:11,17,20 155:14 157:7,9 170:19

**human** 94:23

**hundred** 155:10

**husband** 36:19 39:12, 17 71:16

**hyper-relevant** 88:13

———————

**I**

**i.e.** 160:23

**idea** 141:3

**Ideally** 174:19

**ideas** 59:2

**identified** 127:14

**identify** 112:22,25 113:4

**identifying** 77:5 132:13

**identities** 112:13

**ignoring** 100:20

**III** 5:19

**illuminate** 31:24 38:13

**imagine** 38:23

**Imlet** 127:14 131:22,23 132:15

**immune** 178:14,19,21

**impartial** 51:15 83:13

**impersonal** 61:21,22

**implied** 19:16

**important** 43:20 44:24

**impossible** 176:22

**impression** 175:13

**improperly** 27:3

**in-depth** 105:13

**in-flight** 164:7

**in-town** 135:10

**inadmissible** 122:21

**incentivize** 106:8

**incentivized** 170:5

**incidental** 40:21

**incidentals** 38:25 39:1

**inclination** 163:14,21

**inclined** 31:23 34:2 114:17

**include** 43:9 68:13 78:24

**included** 32:4 95:15,25

**includes** 123:5 128:7

**including** 16:2,3 27:1 53:7 69:20 79:13 94:14 98:17

**inconvenience** 118:11 146:3

**inconvenient** 115:24

**incorrect** 45:9

**incredibly** 70:2

**indictments** 12:11

**individual** 56:21 59:19 144:19

**individually** 127:13 144:13 145:15

**individuals** 45:19 135:15 141:17 146:17 149:13 170:18

**inefficiency** 67:8 121:22

**inefficient** 67:5 69:10 73:13 75:11

**inefficiently** 73:11

**inevitable** 101:23

**influence** 88:5,7 125:15

**inform** 48:17

**informal** 6:23 14:24 22:14,19 23:1,20 24:23 25:8

**information** 31:7 45:14,25 46:10,21 56:4, 5,8,14,22 76:15,17 79:14 83:6 114:12 120:23 121:12,19 148:23 167:20 171:24 185:14

**inherent** 78:17

**inherently** 114:13

**initial** 29:13 43:4 46:8 112:2,11 113:22 114:6, 14 115:6 117:3,17,19 118:3 134:25 144:18,20 154:9 160:7,20

**injecting** 33:20 34:8,25

**instance** 39:16

**institution** 91:9

**instruction** 43:3 46:25 49:10 180:10

**instructions** 49:2 53:1 93:16

**insurance** 39:18

**intend** 113:7 154:3

**intending** 33:9

**intent** 131:5

**interest** 17:4

**interesting** 161:24 185:10

**intermingle** 108:18

**internal** 29:19

**interplay** 155:2

**introduce** 53:7,10,13

**introductions** 93:18

**investigate** 185:2

**investigation** 112:10 120:22 158:1

**invoke** 177:24 178:3 179:2

**invoked** 178:5 179:5

**invoking** 177:23 178:11

**involved** 37:12 63:13 95:4 97:2 112:10

160:14 166:7 181:20

**involves** 85:2 123:7,24

**irrelevant** 31:5 72:21 126:6

**issue** 13:15 15:8 17:21 21:4 22:21 26:1 28:14 30:22 33:6 36:3,12 37:4 39:13 41:3,7 43:7 44:5 48:6 49:22 55:16 76:9 77:14 78:1,11,22 81:6 92:8 109:11 114:25 120:8,15 127:2 135:15, 20 141:7 146:8 150:10 152:7 155:4 158:24 164:17 180:4 184:18

**issued** 81:18

**issues** 8:25 31:25 44:8 47:11 51:14 71:19 76:8 94:5 111:13,20 115:19 117:18 118:14 119:2 120:4 123:8 130:24 136:18 137:12 140:25 141:10 144:11 149:22 157:16 164:10 167:24 169:7 171:15 172:4 173:25 174:12 177:22 180:2,6,17 182:7,22 185:6

**item** 7:24 8:21 25:16

**items** 25:19

———————

**J**

**Jamaica** 119:8 160:24 161:6

**James** 167:6

**January** 94:24

**jerk** 9:8

**Jessica** 138:14

**job** 24:20 29:9,24

**John** 138:14 149:16

**joint** 106:21

**joking** 161:20

**Jones** 167:6

**judge** 24:20 36:5 68:17 69:1 70:13 80:23 84:22

89:20 90:2 96:6 182:17

**judges** 8:3 71:4,23

**judgment** 181:2

**July** 11:23 12:8,9,12,21 51:21 53:19 89:21 117:12 119:7,8,9 129:24 161:2,3,7,9,18, 21 162:2,3,17,18 163:11 171:3 177:21

**jump** 75:17 150:22

**jumped** 90:12

**juries** 9:17 23:25 50:12 100:1 167:4

**juror** 52:7,8 54:23 56:4, 14,22 79:14

**jurors** 50:11 51:1 52:13,17,23 55:8 58:24 59:2,21 61:16,22 62:5 67:10 101:8,11

**jury** 6:4,5,6,19,20 7:13 9:15,19 10:19 12:3 13:17 21:11,18,19,22, 24 22:9,11,15,22 23:5, 7,9,15,16,24 24:3,13, 15,23 25:7,13 28:22 30:9,20 32:11 34:10 35:9,24 36:4,12 38:5 41:14 46:1 49:5 50:8 51:2,5,8,9,21 52:6 54:1 56:1 60:17,20,21 62:2, 20 64:1,6,12,17 66:8,17 67:9,19 68:1,4,14 69:15 70:20 78:2,23 81:20 82:18 86:4 89:20,21 90:4 96:8 102:6,11,12 104:12 105:5,17,25 106:9,14 110:8,12,16, 22,24 111:7 130:14 135:7 136:20 166:4 172:20,25 174:10 177:2,19 181:8,16 182:5,6,13 186:13

**jury's** 33:23 72:12 100:21 101:6 103:10

---

## K

**keeper** 10:11

**keeping** 65:22 75:2

**Kelli** 177:6

**Kevin** 11:10 65:20 89:24 90:7 105:17 177:18

**Kevin_frye** 11:9

**key** 32:21

**kick** 54:22 59:20

**kids** 59:25 101:8

**kind** 10:2 11:1 38:21 62:19 78:25 84:22,25 85:5 92:10 96:4 97:24 115:17 118:23 135:19 152:17 177:5 182:16

**kinds** 83:11 153:13

**king** 24:5 111:2

**Kleburne** 111:24 120:12 157:14 160:11 161:8 162:23 164:11 167:14 168:2,9,19 169:24 170:19

**knew** 32:22 113:23

**Knight** 44:22

**knock** 12:2,7,9,12 65:10

**knock-down** 80:5

**knowing** 74:4 123:16

**knowledge** 38:17 42:17 114:7 118:4 121:2 122:3 158:1

**Kuwai** 119:6 160:23

---

## L

**label** 36:6

**labor** 16:13 44:10

**lack** 46:22 68:21 120:22 121:1,12,18 122:20

**Lacore** 120:20 122:5 160:11 161:23 164:1,4, 7 166:9 167:14 168:3,8, 18,20,22 169:24 170:19,20,22

**Lacore's** 162:23 166:10

**language** 98:1,4,13 113:1 173:23

**late** 22:20 74:10 104:21 117:11 129:4

**late-breaking** 9:3 88:25

**latest** 97:15

**law** 13:15 15:8 45:8 65:20 76:25 82:10 85:20,21,22 86:22 91:14 146:15 179:25

**lawfully** 142:24

**laws** 98:17 99:8

**lawsuit** 31:22 33:10 94:1

**lawyer** 40:23 53:6,24 56:15,16,17 61:5 67:14, 16,20 69:25 75:15 86:10 118:12 133:6 141:20 155:20,21,24 156:2,25 157:1 166:10 176:11 179:22 186:9

**lawyers** 9:1,14,15,18, 21 21:14 66:3 69:19 72:16 105:20,22 106:7 172:7 176:12 179:17 181:5 186:17,19

**layer** 124:25

**layover** 147:15

**lead** 53:6 61:5

**leadership** 94:13,16

**leading** 160:17

**leads** 81:9

**leaked** 81:17

**leave** 10:5 11:3 33:3 153:6 164:21

**Lebeau** 14:4,9 17:8

**led** 31:22 33:9

**leeway** 100:15

**left** 6:13 52:3 68:2 69:6

**legal** 13:7 67:14,22 82:5 85:17 86:19 91:17 174:12,18

**legally** 13:9 18:5

**lengths** 29:11

**lengthy** 50:3

**letting** 84:13 134:8

**level** 44:9 129:10 141:15 146:18 160:21 176:15

**lieu** 181:24 183:10

**life** 76:19 94:23 167:7

**light** 145:19 173:18

**likes** 7:2 135:7

**limine** 6:25 26:6,8,16 30:24 31:12 35:5 36:9, 14,22,25 40:12,14 42:6, 8 46:16,18 47:11,14,15 48:5 49:20,22,23 70:25 71:10 72:16 87:14 122:22 125:21 180:4,6

**limines** 25:22

**limit** 42:9 80:3 115:18, 20 117:24 125:9 153:1

**limitation** 119:21

**limited** 15:3 28:25 42:25 47:22

**limiting** 43:3 46:25 49:2

**limits** 7:2 47:8 63:25 69:17 95:12 126:11,12 176:20

**Linda** 160:10

**line-level** 140:16

**lined** 177:7

**lines** 151:4

**list** 7:14 9:4 10:1,16 21:19 53:13,14,16,18, 21 54:1 65:15 67:4 78:24 81:10 91:15 102:19 103:5 106:19 107:7 111:11 113:24 116:14 130:3 149:10 160:20 172:24 180:15

**listed** 57:6 138:2 144:20 154:8

**listen** 179:23

**listing** 111:13

**lists** 9:9

**live** 13:3 56:6 149:21 162:21 163:3 170:22 172:22 173:6 183:10,19 185:5

**live-fire** 186:25

**lives** 132:2,7 151:17

**loan** 41:25

**lobby** 22:18

**local** 5:6,17 26:22 27:2, 16,25 31:6 89:5 90:11, 13,14 94:4 131:18 137:19 143:16 144:21 154:13 158:7,18 159:16

**location** 139:10 147:7 148:23 167:19 171:24 185:14

**lock** 24:17

**long** 19:4 44:22 52:1 62:9 66:5 67:15 134:3

**longer** 127:15 140:4 143:22,24 145:19 147:5 148:7,18 154:1,12 157:23 159:6,9 176:1

**looped** 130:22

**lose** 50:11,21,25 51:13

**loser** 106:4

**losers** 35:20

**loses** 53:25

**lost** 64:16 65:21

**lot** 9:14 44:5 62:21 69:7 72:22 73:4 91:10 116:10 161:15 175:8

**lots** 186:18

**loud** 96:12 186:10

**Louisiana** 109:22

**love** 9:20

**loved** 34:12

**lowest** 62:4

**luck** 23:14

**lunch** 23:16 100:3

101:22 129:25

**lunchtime** 101:19

**Lynn** 89:20 90:2

**M**

**mad** 83:7

**made** 34:19 70:24 105:12 126:16 164:2 174:7

**main** 107:4

**maintaining** 104:4,8, 20 108:2

**major** 119:2

**make** 7:3,21 8:12 9:3,7 11:20 14:25 33:14 34:5, 9 35:8 36:1 38:3 43:15 48:6 55:4 57:12 59:24 64:20,21 66:15 70:12 71:2 72:4 74:9,20,22 75:10 76:4 87:1,16 96:22 100:25 101:13 105:2 106:12,25 107:21 109:5 118:16,24 120:9, 10 122:2 124:3 126:11 128:25 129:4 130:16 131:1 134:11,22 136:5, 9 137:3,13 145:25 150:21 152:8,25 153:16,19 155:6,15 156:3,19 157:19,24 158:4,22 165:1 166:14 169:1 170:10 171:21 172:16,19 177:10 180:24 183:7,19 185:2 186:8

**makers** 160:14

**makes** 8:8 11:1 23:23 28:4 33:10 61:20 75:9 85:25 88:2 97:20 121:22 127:10 134:24 135:1 137:4 142:20 144:14 178:25 182:17

**making** 6:8 33:23 34:22 59:3 77:15 94:14 126:12 150:7 174:17 184:14

**man** 111:1

**management** 143:23

**manager** 164:11

**managers** 44:7,9 137:21

**maps** 109:22

**March** 95:1,4,8,20,23 96:23 97:1,2,3,22 98:8

**marginal** 46:14 72:22, 24 73:4 163:17

**Marines** 11:14

**mark** 19:21 100:21 173:4,13

**marked** 172:11

**marked-up** 84:10,12

**marking** 19:23 97:16

**match** 131:14 172:23 173:6

**matches** 59:8

**matching** 19:14

**math** 58:15

**matter** 9:24 14:20 20:14 30:10 31:20 60:12 88:8 116:8 127:18 134:25 168:14 182:25

**matters** 19:6,8 76:19

**Matthew** 5:9,10

**Matumbo** 5:24

**max** 118:12 120:12

**Mckeeby** 5:14 9:24 15:17 17:3 28:13 32:18 38:20 39:1 40:1 47:17 48:11 57:16 58:7 74:23 83:17,20 84:22,25 88:18,19 90:15 94:19 96:18 97:19 99:3,11 106:16 112:18 113:6 116:7,24 119:1 122:6 124:12,20,24 127:12,24 128:1 129:7 131:6,16, 22,24 132:6 134:14 137:6,8,14 138:14,23 139:1,12,20 140:17 141:3,18 142:8,11,25 146:4,13,23 147:19,22 149:25 150:24 151:12,

16,20 152:12,21 153:21,25 154:19,23 156:5,20 157:2,8,15 159:14,21,25 160:4 161:2,6,13,22 168:6,13, 20 170:12,24 171:18 172:1 173:15 178:3,4, 13,16 182:14 183:6 184:11 185:22

**MDL** 109:24

**meaning** 167:8

**means** 35:11 74:23 158:9

**meant** 165:16

**meantime** 37:18

**measure** 24:21

**mechanical** 61:10

**mechanics** 146:1

**mechanism** 41:19

**media** 94:15 164:6,10

**medical** 38:21,23

**meeting** 27:4 97:24

**meets** 13:7

**Melissa** 154:11

**member** 29:21 38:2 94:10 149:16

**members** 45:22,23 78:23 80:1 95:1 140:1,9 142:13,22

**membership** 94:11

**mental** 175:13

**mention** 16:7

**mentioned** 131:21 169:6 179:10

**merge** 21:5

**merits** 14:22 15:10 18:10,11 69:2

**message** 96:12

**messages** 94:14 95:3, 7,13,15,19,21,22,25 96:22,25 97:1

**met** 128:18

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 203 of 214   PageID 9330
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Index: method..objectors

**method** 79:20 172:15

**microphone** 62:19
176:10,17

**microphones** 8:4
52:10 61:11

**middle** 82:13 129:16
180:5

**midmorning** 100:5

**Mike** 112:20 123:25
125:3

**miles** 126:25 155:8,10
158:7 159:17

**million** 58:12

**mind** 8:5 41:24 42:5
49:2 50:24 62:21 66:16
127:11 135:22 140:21
146:8 148:10 155:25
177:1

**mindful** 180:6

**mindset** 156:1

**mine** 26:13 61:13 82:23

**minimize** 25:3 64:23
103:8

**minimum** 101:18,19

**minute** 84:11 176:21

**minutes** 51:18 52:25
55:20 59:14,15 61:25
62:22 63:3,21 67:25
70:5 75:14 89:11 100:6,
16 101:3

**mirror** 99:13 113:12

**mishmash** 174:18

**misleading** 96:15

**missed** 57:1 139:1
180:15

**missing** 7:20

**misspoke** 138:18

**misstating** 171:8

**mistrial** 180:11

**mitigation** 36:20,21
37:5,8,9,11,16,18 39:8,
10,14,20 40:25

**mixed** 129:21

**mode** 49:16

**model** 181:1

**modern** 83:3

**modification** 98:1

**modified** 84:1

**Monday** 47:5 53:19
102:7 115:12,13 145:17
147:5 148:7,10,18
149:6

**money** 41:9,21,22
91:20

**monitor** 5:23

**monitors** 105:18

**morning** 7:13 12:1,3
89:20 100:4 104:23
105:12,15 142:4

**Morris** 5:15

**mother** 71:17

**motion** 10:5 11:3 25:22
26:15 31:12 46:16 48:4
119:24 128:17 181:3
182:17

**motions** 6:25 23:6 26:6
102:10

**mouth** 34:21

**movant** 181:2

**move** 107:1 170:5
171:25

**moving** 100:7 168:25

**muddy** 170:10

**multi-defendants**
108:11

**mythical** 80:14

---

**N**

**nail** 88:10

**named** 112:1,4 118:2
166:9 170:18

**names** 114:4

**naming** 112:6

**Nancy** 160:11

**Naomi** 154:11

**nature** 16:18 45:18
46:5 48:18 56:7 150:23

**Navarez** 138:16 139:5
141:14 142:5 149:19
151:9,24 152:1

**Navy** 11:14

**nearing** 74:17

**necessarily** 85:12
135:16 143:23

**needed** 12:2 33:13
69:12

**needing** 183:17

**negotiated** 164:5

**nervous** 58:5 82:14
84:20

**neutrally** 82:25

**news** 12:5

**nice** 63:19 128:14

**night** 23:15 103:11
104:21 107:15,25 109:6
123:13 126:17 147:24

**nightly** 107:19

**noble** 36:2

**non-characterizing**
96:4

**non-member** 94:12

**non-party** 42:13

**non-profits** 91:12

**non-recoverable**
181:12

**nonprofit** 90:25 91:2
92:18

**nonprofits** 91:14

**noon** 100:3,14

**normal** 11:9 41:16
50:25 115:11 116:18
144:24 159:2

**note** 79:22 131:16
159:18 172:5 175:19
179:14

**noted** 112:8

**notepad** 66:5

**notes** 31:4 160:4

**notice** 19:3,13,15

**noticed** 56:16

**notices** 117:14

**notion** 40:19 128:20

**November** 112:20
116:24,25 117:5

**number** 25:24 26:16
50:14 52:7,8 61:25
62:4,10 76:2 84:8 107:1
174:20,24 175:6

**numbers** 79:3 106:22
107:6 172:23 173:7
176:5

**numeral** 114:5

---

**O**

**object** 71:9 72:17
105:23 109:14 116:19
165:15 179:19

**objected** 71:19 165:13

**objecting** 32:24 71:7,
21,22 73:6 95:25
111:23 122:17 126:3

**objection** 31:7 58:9
64:18,22 72:3,10 103:2,
4 104:9 105:4,25 106:1,
2 120:21 121:14 166:1,
2,3,4,13,14 174:20,24,
25 175:2,17,18

**objections** 7:6,15
64:21 70:24 71:5 72:5
73:12,14,19 94:13,17
99:1 102:16 103:9
104:3,7,20,22 105:7,9,
15,19 106:25 107:4,9
108:2 109:17 110:15,18
111:25 120:19 122:14
123:8 165:3,11,15,24
166:18 174:9,12 179:11
185:21

**objector** 94:12

**objectors** 45:22

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                              June 16, 2022                    Index: obligation..people

**obligation** 112:25 114:3

**obligations** 113:22

**observation** 122:6

**observed** 18:1

**obtain** 41:14

**obtained** 38:14

**occupation** 56:6,7

**occurred** 28:19 112:20

**occurs** 163:23

**odd** 133:24

**odds** 174:6

**offended** 8:7

**offer** 105:8 110:20 122:18,21 159:1

**offered** 29:25 85:4 105:4 182:22

**office** 56:3 89:19 119:18

**OFFICER** 5:2 89:13,15

**officers** 186:19,21

**official** 27:25 43:21 44:5,20 97:24 164:9

**Ohio** 161:13

**Oil** 109:23

**oldest** 12:10

**omission** 18:4

**one-day** 50:12

**one-hour** 119:14 153:1 154:21 156:1,17,25 163:16 164:20 165:8 167:15 168:11 170:16, 23 185:13

**one-page** 70:5

**one-question** 79:14

**onus** 81:3 112:12 122:1

**open** 50:24 133:15 134:6 136:1 175:11

**open-minded** 60:7

**opening** 21:12,22 60:22 64:2,11 86:11

129:24 179:11,15,16, 20,22 180:5

**opens** 149:2

**opinion** 83:8

**opinions** 92:22

**opponent** 72:23

**opponents** 43:24

**opportunity** 112:23 116:17

**oppose** 18:6 27:1

**opposed** 29:2 31:6 57:2 99:4 162:7 182:20

**opposes** 36:19 37:5

**opposing** 108:2

**opposition** 33:3 99:4,9

**optimistic** 173:16

**option** 163:1 168:16

**options** 57:16,19 58:8 90:4 100:12 152:16

**order** 6:18 12:22,24 13:14 15:3,7,21 16:4,17 17:21 19:22,23,25 21:2, 6,23 25:19 49:20 59:14 62:3 73:25 76:6 83:23, 25 84:3,8 103:17,18 108:12 116:5 122:22 123:2 153:15,16,18 156:7,13,16 163:22 167:12 168:1,7 169:22 170:6,12,14 171:21 173:16,20 174:1,3,4 185:12,16

**ordered** 114:24 167:14 168:11

**ordering** 170:7

**orders** 11:6

**Oregon** 138:22,24

**organization** 91:2

**organizations** 91:1

**original** 46:5

**other's** 110:6

**out-of-bound** 130:13

**out-of-court** 174:14

**out-of-order** 162:20 163:3,11

**out-of-town** 133:13 134:4 135:5,9,25 162:3

**out-of-turn** 136:19

**outcomes** 18:21,22

**outline** 133:10

**outset** 8:24 9:23

**overcome** 78:17

**overlap** 138:11

**overlay** 148:3

**overly** 33:16,17 34:25 56:19 80:20

**overly-sensitive** 59:19

**override** 108:22

**overrule** 175:13

**overruled** 64:19 73:20 166:2,19 175:15

**overruling** 105:15

**overt** 77:2 91:6 92:1

**P**

**p.m.** 11:22,24 103:24 104:1 107:17 145:17 187:2

**pack** 51:9

**pages** 8:16 47:5,8 48:23,25 102:23 107:2

**pandemic** 50:10

**panel** 52:18 55:2,5,6 65:3 80:18,19

**panel-busting** 80:12

**panoply** 38:21

**paper** 10:19 165:22 166:6,16,23 173:3,9,13

**paragraph** 94:5,17,21 98:6,15,24

**paragraphs** 94:8

**Parker** 126:20 138:14 139:2,25 141:14 142:5 149:19 151:9

**Parritt** 139:25 141:9 149:17

**Parrot** 138:14

**parsing** 32:10

**part** 28:10 34:4,17 36:9 68:10 99:20 109:8 119:5 125:3,7,21 130:25 132:11,16 182:1,12

**partial** 95:14

**partially** 31:6

**participant** 154:3

**participating** 94:15

**parties** 27:6 45:15 61:2 81:3 83:21 133:2,13 146:19 155:19 182:20

**party** 57:3 59:14 70:16 75:25 77:12 78:5 143:7 178:18

**pass** 130:11

**passing** 48:14

**past** 43:22 102:4 114:24 153:17

**path** 162:12 185:11

**paths** 58:24

**patrol** 86:8 178:7

**pattern** 93:16

**Paulo** 5:14

**pause** 66:19 120:2

**pay** 41:15 155:21 181:19,25 182:18

**paying** 94:12

**peace** 12:17

**peculiarly** 38:17

**penalty** 14:14

**pension** 39:19

**people** 24:11,13,16 28:8 45:23 50:5,21,22 51:5,10,12,15 58:6,16

59:19,25 61:11,14
66:22 67:7 73:17 80:13
83:7,13,14 89:3 91:19
109:12,14 112:9 116:11
118:3 122:2,7 129:4
137:18 138:9,12 142:1
144:23 146:3,4 151:2
154:1,7 157:5 159:6
169:19 175:22 178:23
186:11

**people's** 112:13
118:11,24

**peremptories** 57:10

**peremptory** 50:16
57:1,15 60:10

**perfect** 51:11 57:22

**perfectly** 5:25

**period** 32:4 66:5 73:8
128:23 145:5

**periodic** 153:4

**permissible** 83:20,24

**permission** 145:14

**permits** 184:16

**Perrit** 138:19

**person** 33:21 34:12,14
41:20 49:14 57:24
61:12 73:13 74:18
80:10,15 85:3 93:25
115:22 118:19,20
141:22 143:11 145:6,25
146:9 160:23 166:9
167:3 184:2,4,12,22

**person's** 31:2 179:15

**personal** 82:9 83:14
157:25

**perspective** 28:16

**persuade** 23:20 24:22
25:10

**persuading** 23:23

**pertains** 46:20 48:19

**phase** 102:3,5

**phenomenon** 150:12

**Phillips** 39:23,25

**Phoenix** 139:12,13

151:17

**pick** 12:3 51:8 61:7
81:12,20 90:4,5 102:6
137:8,10 176:17 186:2

**picked** 83:2 178:11

**picking** 22:11 51:2,21
89:20

**piece** 38:11 109:18

**pierce** 91:23

**pinpoint** 109:25

**pitch** 162:11

**pitched** 177:20

**placard** 61:24 62:1,4,7,
13

**placards** 62:3

**place** 17:11,13 72:4
87:19,20 121:17 168:2

**places** 21:20

**plaintiff** 5:10 36:17
63:16 93:9,25 94:6 99:2
112:21 133:20 136:11,
14,21

**plaintiff's** 31:8 35:7
128:21,24 136:25 154:9

**plaintiffs** 32:7 45:13
141:12

**plan** 6:12,19,21 19:20
30:5 33:7 34:17 39:18
69:10 81:22 93:21
103:14,15 117:23 118:6
122:4 147:14 166:20

**planned** 169:13

**planning** 12:13 103:20
106:17 117:24

**plans** 135:1 161:9,12
162:8

**play** 35:13 37:16,22
42:4 166:8,16

**played** 172:8

**players** 150:10

**playing** 128:14 166:17

**pleading** 18:7

**pleadings** 15:4,21,22
19:19 21:5

**plenty** 11:12 25:18
122:12 128:1 152:24
183:16

**plow** 101:3

**plowing** 100:19

**pockets** 168:23

**podium** 6:6 52:2 53:16

**point** 18:16 19:7 20:12
22:14,25 23:7 28:11
29:18 30:7,9 36:13
37:19 47:15,18 48:5
52:17 54:20 57:4 59:5
75:2 84:23 85:8 88:22
96:22 98:13 100:17
108:6 112:19 122:23
123:16 125:21 140:6,13
142:7 145:11,24 147:3
152:22 159:5 161:20
162:19 168:6 184:1
185:4

**points** 22:5 47:14

**political** 75:24,25
76:21 77:12 78:5 87:23

**politician** 48:2

**politicians** 87:16

**politics** 34:6 50:20
55:16 77:6

**pool** 58:1 59:17 60:12
74:1,14,17 82:18 86:5

**pooled** 57:20

**pooling** 74:9,23 75:6,7,
10

**pop** 25:20

**portion** 163:20

**position** 29:5 46:8
113:12,15,18 148:15

**positions** 28:8

**possibly** 8:15

**Post-it** 179:13

**post-termination**
123:22 124:1,8

**post-trial** 181:13

182:17 183:1

**posted** 48:1 174:2

**posts** 94:15

**posture** 49:25

**potential** 59:19 61:16
78:22 135:14 149:22

**potentially** 20:15 38:5
45:10 96:10,13 115:3,6
135:16

**potty** 100:22

**power** 142:2 144:8
150:13,14,18 153:13

**practical** 9:24 116:11
119:10

**practically** 165:21

**practice** 130:7 186:10

**practices** 99:5,9

**preadmit** 111:4

**preapproved** 56:11

**preapproving** 56:23

**precedent** 14:3

**precedents** 92:20

**predict** 57:23

**prefer** 25:19 133:12,18
144:25 162:20 183:8

**preference** 58:7 134:4,
19 135:4 162:6,12
171:2

**preferences** 162:14

**preferred** 130:17

**prejudice** 15:25 18:18,
24 19:6 20:5,13,19,24
33:12,19,20,25 34:1,8,
16 46:14 73:5 122:21

**prejudiced** 112:5

**prejudicial** 31:5 33:16,
17 35:1 126:7

**premature** 182:12

**prep** 12:18 89:3

**preparations** 101:13

**preparing** 170:12,14

**presence** 23:4 35:9 143:14

**present** 9:19 160:13 163:11 175:12

**presentation** 135:20 162:21 163:4

**presentations** 164:24

**presented** 125:5

**presenting** 66:16 70:19 74:3 152:5

**preserve** 25:12 48:15 71:2,10

**preserved** 48:7

**preserving** 23:23 72:11

**president** 26:23 27:20, 24 29:14,21 32:3,5 95:3,6,17 96:25 141:13 149:13 164:1,4,7

**presidents** 44:9

**pressed** 33:22 165:25

**pressing** 166:19

**pressure** 7:8 43:13

**presumed** 44:21

**pretext** 42:16

**pretrial** 5:7,21 6:10,18 7:11 11:25 12:22,23 13:14 15:3,7,20 16:3 17:18,21 19:25 21:2,6, 23 49:16,25 76:5 79:19 83:23,25 84:8 115:12

**pretty** 20:12 54:7 62:5 71:23 115:23 131:12 153:25 179:21

**prevalent** 41:8

**preview** 49:4

**previous** 10:3

**previously** 155:4

**printout** 10:20

**prior** 125:20 126:7

**privacy** 91:22 92:12,18

**private** 76:20 91:21 95:2 96:25 130:6

**proactively** 70:10

**problem** 6:7,9 34:7 62:6 69:18 72:8 73:21 77:18 91:7 96:5 101:14 127:11

**problems** 106:20 140:20 152:1 155:22

**procedural** 15:10,15 20:19 61:9 83:17

**procedurally** 18:15

**procedure** 165:1 174:6

**proceed** 107:6 159:3

**proceeding** 124:23

**proceedings** 29:1,2 115:7 123:22 124:2,9 160:16 182:9 187:2

**process** 28:17,18,19, 21 29:11 106:6 107:24 111:4 119:18 124:25 125:3,7,9 126:5 143:9 145:2 147:8 156:23 157:4 169:23

**processed** 90:10

**produce** 35:7 116:12 168:15

**profession** 186:22

**professional** 9:5,18 70:7 106:10 110:5 147:14,17

**professionalism** 9:13 35:23

**professionals** 107:10

**progresses** 183:15 184:9 185:1

**prohibit** 26:21 30:25 35:6 36:16 82:2,3

**prohibiting** 36:25

**promote** 149:5

**proportionate** 49:13

**proposal** 182:3

**propose** 81:19 104:6

**proposed** 13:17 22:4 31:17 54:5 63:7 75:18, 20 89:17 93:4,8 129:17

**proposing** 182:4

**Prosperity** 91:15

**protect** 25:1 98:18 99:9 100:21

**protected** 16:13,14

**Protections** 99:19

**protects** 99:7

**protest** 76:24 88:1

**protocol** 7:10,19 10:3 25:3,14 51:3,4 59:13 64:22 103:2 106:15 108:10 109:3 110:10 132:11

**prove** 68:5 110:2

**provide** 114:3 136:13 147:7,22,25 148:23 159:14 171:24 172:24

**provided** 37:2 67:14 83:21

**providing** 160:14

**provision** 16:6,9

**Pryor** 5:10 55:24 56:1, 25 58:10,17 63:9,23 64:2,8,25 68:9,17 70:23 71:11,14 72:7,13 76:2 77:11,18,24 78:8,21 79:7 80:23 81:2,6 136:10

**public** 43:24 79:17 91:6 92:14

**publically** 77:4

**publicly** 79:11 88:2

**publish** 105:16

**pull** 33:22

**punitive** 12:25 13:4,6, 9,11,18 14:2,6,10,15 16:6,17 17:7,9,15 20:25

**punitives** 13:25 14:21 15:6 17:24 18:25 19:3 20:23

**purported** 98:16

**purpose** 15:3 43:1 48:4 49:6 122:25

**purposes** 12:13 103:21 176:18

**pursue** 162:20

**push** 26:4,5 47:9

**put** 10:14 18:22 21:19 39:17 42:24 44:14 59:9 62:4 72:24 73:9 79:22 82:9 92:8 103:23 104:6 108:8,17 110:20 121:16,18 153:1 166:9 170:3 173:5,23,24 176:19

**puts** 81:3 122:1

**putting** 21:8 43:13 74:3 87:4 103:13,14,25 127:6

---

**Q**

**quash** 119:24

**queen** 24:6

**question** 12:24 13:8, 13,19,24 15:10,11,13 16:1 31:9,13 36:8 37:14 42:25 46:11,24 52:18 54:12 55:1,12,13,22 56:9,13,21,24 57:6 61:12 62:24 63:15,18 64:25 65:12 66:1,13,21 71:7,20 72:18 73:7 75:21,22 76:13 77:8,12 78:6,24 79:21,23 80:2, 21 81:13,16,23 82:3,21 83:18 84:6,13,14,16 85:1 86:13 87:19,20 88:9,17 91:3 92:3,16,21 93:2 114:21 121:13 126:22 128:1,3 132:14, 18,25 133:16 139:18 142:12 144:7 152:3,14 162:22 166:11 185:23 186:1

**questioning** 53:5 54:22 55:9 82:17 129:19 133:1

**questions** 7:5,18 11:21 13:17,23 14:21 15:15 21:23 25:13,20 28:24 31:17 34:4,12 52:3,20, 24 53:2,3,4,11,18,20,24 54:2,5,6,9,10 55:18

56:11 59:13 60:24
62:13,22,23 63:3,6,7
65:11 66:6 70:22 71:16,
21 73:22 75:16,18,20
77:10 78:3 80:12,24
81:11 83:11 84:2 85:18
86:25 87:2 88:15 89:6,
18 90:9,13,14,18,21
93:4,7,11,12,14 98:23
102:14 106:15 109:3
110:10 111:8 122:4,15
132:24 133:5,20 134:7,
13 136:2 140:19 150:25
167:11 168:5 173:14,15
180:12

**quick** 14:19 75:19
86:16 109:10 115:2
120:2 172:5

**quickly** 170:5 175:21

**quiet** 8:4 20:12 176:15

**quintessentially**
40:17 91:21

---

**R**

---

**races** 129:25

**Railway** 16:13

**raise** 62:1 79:2 81:6
126:21

**raised** 78:21 126:19

**raises** 84:23

**raising** 154:23 155:1
175:17

**rally** 76:24 77:3 92:4,7,
13

**ran** 54:9 117:20

**range** 146:5 149:20

**rank** 137:20 140:5

**rational** 125:21

**reach** 18:10 68:15
143:4 144:1 156:23
158:25

**reaching** 36:3

**reacted** 43:15

**reaction** 115:6

**reactions** 52:23

**read** 21:13 36:23 43:4
53:13,16 93:21 97:20
102:10 109:20 111:25
160:5 163:19 166:10
167:7 168:9 172:9,20
173:6 177:18

**reading** 42:23,24 64:12
84:11 96:12 97:5 173:4,
9

**ready** 5:21 6:10 53:10
116:15 132:21

**real** 6:4 8:4 80:14 81:18

**realize** 150:12 155:1

**realtime** 177:5,11,16

**reason** 10:9 13:2 15:2
76:9 83:2 97:21 125:9
133:19 158:20 174:11
183:9

**reasonable** 54:12
56:11 92:12 183:13

**reasonableness**
181:6

**reasons** 108:19 111:5
117:8 133:22 144:16
160:21

**rebuttal** 135:17,23

**recall** 16:24 42:19
43:12,17 44:18 70:4
94:16 116:21 117:6
134:11 136:5,9

**recap** 26:18

**received** 36:18 38:1
39:11,18 142:3 147:24

**recent** 82:5,8

**recently** 81:23,25

**recently-leaked** 92:22

**recess** 89:11,14

**recitation** 95:14

**recognize** 17:9

**recognized** 27:18

**recommendations**
160:15

**record** 5:8 22:15,17
23:4 61:19 62:16 71:3
87:16 89:10 105:12
109:13,19 110:3 133:24
165:14 176:17 178:2
186:7,24

**records** 133:25

**recoupment** 42:2

**recoverable** 13:6
15:11

**Red** 89:25 177:19
186:14

**redact** 31:23 32:24
33:9

**redacted** 107:2

**redirect** 132:18

**reference** 13:14 87:16
99:4 174:7

**references** 32:25 33:1
36:25

**referred** 164:15

**reflect** 98:1

**refreshing** 9:13

**regard** 30:21 36:8 43:1
45:16 60:14 91:7
125:13 141:9 171:14

**regret** 54:19

**rehash** 107:9

**reinstate** 122:18

**reinstatement** 180:18,
22 181:14,15,17,24,25
182:7,19 183:24 184:2,
12,17 185:4

**related** 29:9 39:13
42:10

**relatedly** 111:16

**relates** 105:10

**relating** 71:7

**relations** 44:10

**relevance** 33:11,12
46:14 72:17,22,24 73:5,
19 122:21 124:11
125:24 126:2 160:8
163:17,18 174:25

**relevant** 28:23 42:14
44:2,18 45:25 120:22
121:1,12,19 122:3
160:19 163:24 164:4
174:21

**relief** 16:10

**religion** 77:1,5 85:4
91:7 92:19 98:18 99:10

**religions** 91:8

**religious** 76:20 77:1,2
91:1,2,9 92:3 164:14

**relinquishes** 29:15

**rely** 39:22 49:3

**relying** 144:9

**remedies** 70:13,14
181:22 182:23

**remedy** 181:16

**remember** 26:8,11
67:12 68:1,4,18 102:20
116:22 171:9

**remind** 73:9 151:14
170:24 176:19

**rendered** 125:4

**reopen** 107:8

**rep** 112:4

**repeat** 40:7

**replaced** 24:7

**replaces** 15:4,21

**replacing** 15:5

**reply** 49:15

**report** 47:22 48:9 65:3
103:3 104:4,10,17,19
105:10 106:21,24 107:5
111:14 120:5 152:16
153:8 168:1 169:6,11
170:4

**reported** 26:23 27:20
45:1 95:6

**reporter** 177:1,6

**reports** 153:5

**represent** 27:3 29:24
139:20 140:11 186:20

**representation** 26:22
27:20,22 28:25 30:3,12
44:15,23 45:1 123:25
125:14 126:4 140:8
157:25 158:3 159:1

**representations** 28:7

**representative** 27:25

**representatives** 43:11
139:22

**represented** 29:10
44:21 94:3 130:6,7
139:16 146:25

**representing** 130:5,8

**reps** 53:8 70:16 178:12
186:4

**request** 13:10 18:6,16
35:7 69:1 70:10 177:7

**require** 93:16 116:12
132:13 181:2 184:17

**required** 157:3

**requiring** 156:16

**research** 42:6

**reservations** 150:25

**resident** 138:19,24
139:3

**residential** 147:24

**resigned** 94:10

**resolve** 33:5

**resources** 177:13

**respect** 17:24 18:2
28:15 116:14 119:3,25
142:1 160:15 162:5

**Respectfully** 184:11

**response** 32:20 38:9
39:4 47:6 49:12 103:4
104:1 112:3,19 175:11,
12

**responses** 107:5
165:3

**rest** 30:8 65:10 108:13
128:12,13 134:22
171:4,6

**rested** 129:5 130:20
162:18

**result** 106:18

**retirement** 38:22 40:24

**returnable** 41:23

**returned** 41:23

**review** 70:5 107:19

**reviewed** 124:18,25

**reviewing** 107:18

**revisit** 17:22

**reward** 106:11

**rig** 18:21

**rights** 29:15 82:5

**rigid** 101:17

**Riley** 14:7

**rise** 5:2 89:13,15

**risk** 118:5

**River** 89:25 177:20
186:14

**RLA** 12:25 13:10,12,18,
25 14:11,21 15:7 17:25
18:3 19:5,14 20:25
27:22 44:19 98:22 99:7,
16

**roadmap** 22:3

**robust** 38:7

**role** 125:15 143:25
150:5 166:8,16

**Roman** 114:4

**room** 22:16 23:8,17
24:4,18 27:6 51:9,10,
17,19,23,25 52:9,13,16
54:15 61:10 80:17
89:21,23,25 90:5,8
110:13,16,22,24 111:7
172:25 177:19,20
186:13,14

**rooms** 118:10

**rough** 91:19

**round** 52:20

**rounds** 133:1

**route** 144:17

**routine** 62:14

**row** 62:9

**rows** 52:7

**rule** 46:20 64:9 73:15
100:2 105:3 113:2
114:2,9 123:17 138:8
141:23 144:11 167:21
177:23,25 178:3,5,11,
15,20,21,24 179:3,7
184:9

**ruled** 58:21 105:6

**rules** 179:13

**ruling** 25:23 26:1,3,6,8,
11,17 27:19 31:12 35:2
42:7,24 47:10,19 48:6
49:18 59:24 71:10
105:14 176:3

**rulings** 22:2 70:25
72:16 105:2 126:7
165:24

**run** 50:13 58:6,15 60:23
90:1 121:23 150:4

**running** 50:11 55:16
67:4 68:19 72:3,9
158:24

**runs** 66:24 75:4

**Rutherford** 111:24
120:11 157:13 160:10,
24 161:1,2 162:16
170:25 171:7

---

**S**

**safely** 50:15

**sake** 63:1 101:16 110:8

**save** 20:22 25:15 49:19
56:20 105:22 180:8

**saved** 25:24 26:14
30:23

**scenario** 151:22
169:22 181:19

**scenarios** 181:23

**schedule** 101:18 129:8
137:2 149:6 170:1

**schedules** 118:11,25
128:6,15 129:3 131:15
153:10 168:21

**scheduling** 6:16 11:22
59:22 108:19 115:19
118:14 119:2 127:2,5
136:13,18 140:25
141:12 149:3,15 159:3
164:22

**schedulings** 163:10

**Schneider** 126:21
127:19 132:6 135:12
137:5

**scope** 19:24,25 44:12
72:17 122:16 164:8

**scoping** 51:24

**scout** 90:7

**scratch** 84:7 166:12

**search** 26:10 92:10

**seat** 66:10

**seated** 5:3 8:11 89:16

**seats** 150:22

**seconds** 176:1

**secrecy** 76:14 77:20
78:18

**secret** 87:24 91:3

**secular** 91:12

**SECURITY** 5:2 89:13,
15

**seek** 15:6 16:10

**seeking** 13:25 14:2
18:25 26:20 35:6 36:16
43:9 45:19 180:17

**seeks** 30:25

**sees** 173:18

**segment** 134:2

**seizure** 92:10

**selected** 21:11

**send** 6:21 10:8,19 11:3,
8 88:25 97:16 110:12
130:3

**sending** 94:14

**sends** 103:13

**sense** 8:8 9:7 23:23
28:4 33:10 34:9 36:1

54:13,24 55:14 61:20 64:20 70:12 72:4 74:20 75:9 85:25 100:25 106:25 127:11 128:25 134:22,24 136:5 137:4, 13 142:20 144:14 156:3,19 166:14

**sensitive** 55:20 56:19 86:10

**sentence** 75:22 76:4,9, 17 77:7,9,22 84:6,12,17 85:2 87:6,7,22 88:11,12 179:19

**sentences** 76:7

**separate** 46:24 74:12 75:2 128:5 158:22 182:8

**separately** 145:20,23 149:10

**series** 52:1

**serve** 141:20 145:13, 14,22 148:19,24 149:1, 4,6,7 158:6,21 167:20

**served** 62:2,20 119:18 138:3 146:20 150:12 153:9 157:4

**server** 119:18 145:2 147:8 156:23

**service** 60:20 119:25 139:19 144:4 145:8,19, 20 147:18 148:14,17 150:1 158:10

**services** 164:7

**serving** 144:13 147:14 148:11 149:2

**session** 80:8

**set** 14:3 51:20,21 52:10, 16 72:16 83:14 87:1 169:9

**sets** 167:12

**setting** 6:17 12:6,21 54:25

**settings** 12:16

**settle** 185:9

**settlement** 122:21

**setup** 176:10

**Seventh** 14:3 16:20 19:9 24:14

**several-minute** 73:7

**Shaffer** 120:20 122:5,7 154:10,17 155:4 157:8, 20,21,23,24 158:4,6,7, 8,12,13,19

**Shaffer's** 158:8

**shaming** 79:11

**shape** 62:11

**share** 150:18

**sharing** 102:19

**shenanigans** 137:4

**shifted** 140:22

**shoes** 74:8

**short** 5:25 98:21 115:13

**shorten** 115:18

**shot** 7:4 66:4 184:3

**shots** 136:7

**show** 21:17 22:2 28:20 29:1 51:19 60:23 66:25 70:4 79:9 81:10 85:12 86:21 98:3 121:10 128:24 141:11 155:11 158:8 165:1 169:14,19 175:3

**showed** 60:1 119:18

**showing** 43:20 44:25 76:24 77:2 125:18

**shown** 9:5 12:16

**shows** 69:11 105:5 145:2

**shut** 76:13

**shutting** 40:19

**side** 15:25 35:17 50:16 55:20 57:2,6,11 58:11, 18 59:7,16 69:23 70:9, 11 73:18 75:12 85:15 86:2 104:2 149:15 165:11 175:2,3 176:11 179:12 180:9 181:10 186:9

**sidebar** 25:4 35:16,17, 19,21,22,24 36:2 54:14, 15,16,21 55:3,21 64:16, 19,24 65:19,22 73:8 86:7 101:2,6 103:8 104:12,13,25 105:2,24 106:3,4,13 133:3 134:7 175:3,6,16,19 176:4 178:9 179:15 186:8 187:1

**sidebars** 24:2 68:15 86:11 175:21,25 176:1

**sideline** 121:4,8,11

**sidelined** 128:22

**sides** 30:21 83:6 96:11 114:20 118:1,5,8

**sign** 11:12 15:3 19:21, 23 21:4

**signal** 66:2

**significant** 143:2 164:16

**Silver** 65:20

**similar** 45:21 58:24 130:24 131:24 182:15

**similarly** 45:18,20

**similarly-situated** 45:16

**simple** 142:14 143:13, 16 180:24

**simpler** 178:23

**simply** 28:24

**Sims** 112:20 113:4 122:15,17 123:21,25 124:18 125:3

**Sims'** 116:21 125:12

**single** 77:14

**sit** 8:6 66:4,9 68:7 114:17 118:8 120:25 121:25 132:20 152:8 155:6 156:1,17 157:24 158:4,22 162:6 163:16, 22 164:20 167:15 169:22 170:15,22 178:24 185:16

**sits** 125:3

**sitting** 23:24 52:5 58:14 64:17 73:1 114:24 118:18,21 148:18

**situation** 9:2 19:11,18 34:9 35:16 42:1 43:5 48:3 86:3,10 115:17 126:23 151:15 152:4,6 170:10

**situations** 35:22 45:20 46:13 66:23

**six-hour** 115:18

**sketch** 51:22 93:17,19 97:14

**skin** 79:15

**skipped** 64:3

**slick** 63:20

**slide** 8:11

**slight** 124:4

**slightly** 81:14 133:24

**slow** 69:23

**slower** 66:15

**smallest** 50:14

**smart** 133:9

**snippet** 106:24

**social** 51:11 94:15 164:6,10

**solve** 73:21

**someone's** 92:1 179:16,19

**Sonia** 160:11

**sooner** 149:1

**sort** 10:11 31:10 41:16 61:14 86:3 93:16 108:16 109:3 126:22 130:24 137:1 145:17 164:14 183:24

**sought** 117:7

**sound** 81:4 97:20

**sounds** 82:11 109:15 132:12 151:8 158:6

**source** 71:15,18

**sources** 37:1 39:15

**Southwest** 5:5,12,15 15:13 17:1 26:23 27:1, 16 28:5,11,15 29:15 31:5 32:17 33:13,23 34:11,21 35:9 36:19 37:2,5 38:11,12,15 39:4,19 40:20,22 42:8, 9,11 43:2,7,13,14 44:7 45:4,12 46:10,19,20,21 47:11,25 48:2 49:8 58:23 66:13 74:3 83:9 88:16 90:15 94:2,25 95:7 98:16,19 102:21 108:14,21,25 111:22 112:5,13,16,24 113:5, 13 116:5 118:2 119:12, 20 120:10 122:8 124:1, 8,25 125:16,22 126:10, 23 127:1,15 130:3,5 131:8 132:7 138:7 140:5,11,16 142:9 143:4,10,16 144:4,10, 18,22 145:5,8,23 146:9, 11 147:7 149:23 150:10,17,22 154:2,12 155:3,15,17,18 157:13 158:25 159:7,10 160:6 161:15 182:12

**Southwest's** 28:16 38:17 44:9 46:8 47:19 89:5 90:18 93:4,7 112:4 114:12,14 120:19,21 157:25 164:12

**sovereign** 24:17

**space** 11:14,15 49:3 51:10 90:1

**spaced** 52:7

**Spain** 142:18

**spam** 11:13

**speak** 28:13 104:12,13 105:25 129:10 174:8,19 175:9 176:5

**speaker** 33:18

**speaking** 175:2

**special** 6:17 12:6,16,21

**specific** 31:2,15 34:13, 18 68:25 69:1 97:5 102:17,25 126:19 169:8

**specifically** 16:7 32:23 43:14 114:12 123:22 139:25 164:6

**specificity** 129:11 160:22

**specifics** 146:1

**speech** 33:2,3 98:18 99:4,7,17

**speed** 111:5 176:20

**spelled** 123:1

**spelling** 11:9

**spend** 105:1 125:25

**Spill** 109:23

**spirit** 113:2

**split** 57:13,25 59:11 186:5

**spoken** 42:3 110:25 111:2

**spot** 184:13

**spouse's** 56:7

**stab** 98:2

**stack** 110:15

**staff** 67:4

**stage** 19:19

**stand** 19:6 52:11 53:15 65:16 70:2 86:4,15 100:12 110:19 121:18 134:10 166:9 181:5

**standard** 53:1 56:5 82:1 85:18 121:7 181:1

**standing** 8:3

**standpoint** 20:22 29:13 37:24 59:1 82:19

**stands** 43:6 121:24

**star** 67:13 109:25

**Starr** 11:6 85:20 86:22

**start** 11:18,23,24 21:11 22:10 53:14 60:22 62:12 66:2 68:6 80:5 86:5 108:6 129:22 135:2 148:11 156:18 176:21

**started** 42:20

**starts** 6:22 10:11 86:5 120:14,17

**state** 52:20 85:1,5 169:1

**stated** 134:15 163:25

**statement** 26:21 31:1 34:14,23 36:17 174:14

**statements** 34:18 44:2

**states** 82:1,3 161:17

**static** 176:13,14

**status** 103:3 104:3,10, 17,19 105:10 106:21,24 107:5 111:14 120:5 152:16 153:5,8 158:9 168:1 169:6,11 170:4 171:14

**stay** 8:10 22:20 46:21 82:12 104:21

**staying** 23:18

**stays** 122:25

**steamroll** 107:22

**steer** 18:22

**step** 27:4 92:5 100:20 122:19 123:5 124:20,22 158:3

**stick** 51:17 125:20 182:4

**stipulate** 35:8

**stipulated** 21:7,8,10, 13,17,21

**stipulation** 27:9

**stipulations** 27:10 93:20

**Stone** 26:23 27:20,25 29:14 30:15,17,18 31:8 32:3 43:21,25 44:6,15 95:17 141:13 149:13,14 164:5

**Stone's** 44:12 164:1,9

**stop** 65:22,24 75:2 84:11 93:22 179:16,18 180:5

**stopping** 100:17

**story** 21:9 30:8,14 125:22 126:9

**strange** 150:12

**straying** 34:15

**streamline** 9:3 35:23 36:3 111:3

**streamlining** 35:18 106:18

**stretches** 142:19

**strike** 57:23 60:12,16 87:5

**strikes** 50:17 57:1 58:11 60:10

**striking** 84:3 86:18

**strip** 10:17

**strong** 60:6 61:23 92:21 175:18

**strongly** 75:23 77:13 82:7

**struck** 60:8

**structured** 41:2

**stuff** 73:3

**stymied** 123:17

**subject** 134:11 136:9 171:6

**submission** 13:16

**submitted** 54:11

**subpoena** 139:19 141:20,24 142:2 144:5, 6,8 145:3,8,20,21,25 146:5,19 147:2 148:12 149:20 150:16 151:1 155:9 158:6,12 159:11, 19 171:12,22,23

**subpoena's** 155:10

**subpoenaed** 146:12 150:20 151:5

**subpoenaing** 171:10

**subpoenas** 119:19,21, 23 120:1,7 137:19 138:3,6,8 140:20 141:19 142:4 145:22

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 211 of 214   PageID 9338
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Index: subset..tilt

146:25 167:21

**subset** 110:21 156:14 157:7

**substantive** 20:24

**substantively** 63:5

**sued** 98:16

**sufficiently** 46:13 78:4

**suggest** 17:22 48:23 144:5

**suggested** 151:5

**suggesting** 82:24

**suggestion** 143:21 163:7

**suggestions** 97:15 143:20

**summit** 162:1

**super** 128:7

**supervisor** 137:23

**support** 31:2 75:24

**supporters** 42:19 43:12,18 44:18

**supporting** 181:4

**supports** 14:5

**suppose** 141:7

**supposed** 174:8

**Supreme** 81:23,25 82:5,8 91:13 92:20

**surprise** 177:14

**surprised** 147:17

**suspect** 9:25 38:20 159:21

**sustained** 166:1,13,19

**swap** 102:25

**swear** 64:1

**sweet** 73:2

**swimming** 63:10

**sworn** 21:11

**system** 6:2 66:12 69:20,21 70:21,24 71:6 73:16

**T**

**table** 18:23 47:21 52:6 53:7,10 185:25 186:3,5

**tables** 52:1

**tactic** 165:21

**tag** 36:6

**tagged** 35:21 106:4

**tailspin** 57:9

**takes** 136:7 165:20 176:1

**taking** 40:12 44:6 46:19 67:11 69:15 73:14 94:22 171:7 174:16

**Talbert** 43:23,25

**Talbut** 138:17 139:7,8, 13 151:12,16,18,20,24

**talk** 6:15 7:9 9:17 14:24 21:25 22:22,25 23:8 25:2 30:20 34:20 35:19 36:10,11,23 47:16 48:24 54:8 55:4 56:17 59:21 60:4 63:5 79:4 80:12 81:19 86:17 87:12 89:8,17 90:20 101:2 102:15 104:11,14 111:11,15,17,20 114:23 120:6,15 122:12 126:14 130:18 132:5 134:9 137:11 138:9 139:15 143:12 146:2 149:9 152:15,18 158:11,14 159:3,8,24 176:5,15 177:5 180:7,21 181:6, 14 183:22 185:3 186:10

**talked** 61:22 86:14 87:13 99:24 115:16 149:9 154:2 158:16 171:9 185:12

**talking** 6:20 11:18 26:14 31:15 38:14,18 39:9 49:1 52:14 64:14 68:14 70:23 80:5,7 96:12 116:9,10 124:13 135:2 153:9 159:20 175:10 181:15

**tall** 5:24

**Tammy** 154:10

**tangential** 160:8

**target** 43:12

**task** 164:12

**teachings** 94:23

**team** 13:24 84:7 98:6 162:11 164:12,13 171:3

**tease** 56:8

**tee** 48:21

**telephone** 152:13

**telling** 6:20 20:4 30:7, 14 69:22,25 91:19 121:1 146:9 156:8

**tells** 69:9 142:24

**temporally** 95:20

**tenet** 91:8

**tense** 175:13

**terminated** 124:19

**termination** 33:24 37:3 125:17 160:15,17

**terms** 27:14 119:11,13, 16 132:12

**terrible** 79:4

**territory** 34:15

**test** 13:7 33:11 186:8

**testifying** 126:4 184:13

**testimony** 26:21 31:1 37:25 42:9 114:25 122:23 123:21 125:12 135:18 136:3 151:23 152:17 153:19 165:14 166:10 179:9 183:25 185:5

**Texas** 127:7

**text** 19:13,14,15

**thankful** 70:20,21

**Thankfully** 63:12

**theoretical** 37:24 80:13

**theory** 14:6 101:21

**thereof** 68:22

**thick** 26:7

**thing** 14:19 21:24 38:23 49:19 61:10 63:11,13 67:6 72:22 79:4 80:9,14 89:18 93:13,15 109:9 110:11 124:3 131:16 135:14 141:13 148:9 150:9 174:5

**things** 6:12,14 9:3 10:14 13:21 17:13 28:6 34:25 39:11 56:7,11 65:14 66:18 73:4 87:24 89:2 101:8,13,24 111:4, 5 123:12 134:2 150:23 153:11,14,18 169:3 174:22 179:12 180:7 181:11

**thinking** 17:21 50:4 57:20 71:6 73:2 90:3 97:9,10 185:1

**thinks** 87:15

**thought** 17:17 20:8,13 40:16,24 58:25 65:4 68:21 71:24 114:9 129:12 156:9 169:19

**thoughts** 25:25 43:5 57:10 58:21 88:25 89:3 96:16 182:11

**threat** 96:5,9

**threatened** 44:1

**threatening** 48:1

**threats** 95:16

**three-** 32:3

**three-week** 12:19

**thrilled** 132:23 133:9

**throw** 10:23 68:6 86:20

**thumb** 10:23,24

**thumbing** 93:5

**thumbnail** 93:17,19 97:14

**Thursday** 115:14

**tie** 181:8

**tied** 61:19

**tilt** 6:5

**tilted** 6:3

**time** 7:2,9,12 10:14
11:13,23 18:16 19:4,13
22:22 24:1,22 25:1,4,6,
10,12,18 32:4 35:21,24
36:4,7 38:10 43:16
44:20 52:17,21 53:5,23
55:11 59:9 61:1 62:12,
24 63:16,17,25 64:7,11,
13 65:1,4,5,6,9,12,16
66:6,9,11,23,25 67:1,2
68:2,14,16,19,23 69:5,
11,15,17,22 70:9,10,11,
16,22 71:7,25 72:4,12,
18 73:1,6,9,10,14,18,
20,22 74:4,13,24 75:1,
3,4,8,16 81:25 83:3
89:23 93:5 99:24,25
101:6,7,18,23,24 102:3,
9,12,14,21 103:8
104:24 105:1 106:4,9,
12 117:20 119:14
121:16,21,23 123:16
125:25 127:21 128:23
130:15 132:13 136:2
140:1 149:5 151:3
152:24 163:15 164:3
169:8,14 170:1 173:19
175:20 176:20 182:5
185:3,5

**timely** 168:4

**times** 33:19 64:24
72:22 73:4 100:13,15
118:18 133:19 165:14
175:8

**timing** 23:11 96:21
116:8 162:22,23

**tiny** 23:17

**Title** 13:5,7 16:7 18:2,
25 19:2,5,14 20:14,23,
25 27:22 98:22

**today** 6:7 7:7 14:20
15:2 17:4 21:3 22:2
26:3,15 51:18,20,24
98:4 114:17 163:8
167:16 174:4 185:12

**told** 22:1 34:14 50:24
89:19 126:9

**tomorrow** 60:21
103:15,16 104:7 108:8
149:7

**tonight** 108:7

**top** 139:10

**topic** 7:15,17,19 8:19
50:2 81:12 95:5 97:3

**topics** 7:20 22:12 32:7
46:17 72:6

**total** 27:7 57:17,18 61:1

**totally** 62:20

**totals** 59:10

**touch** 52:21 59:16 61:6
141:4

**touches** 50:19

**touchiest** 83:3

**touching** 145:1

**touchy** 83:2

**toughest** 151:9

**town** 135:6 171:1

**track** 65:4,6,15,18 67:3
93:19

**tracks** 45:18

**traditional** 38:21

**transcribe** 176:7,22

**transcribing** 177:8

**transcript** 84:4 163:20
164:25 165:1,9,11,18
166:17,24 167:7 172:10
176:23 177:9

**transcripts** 177:4

**transparent** 18:21

**Transport** 5:6

**Transportation** 94:4

**travel** 118:11 135:1
137:12 161:11 162:17

**travels** 161:8

**treat** 158:19

**treated** 40:22

**treating** 44:17

**treatment** 42:10,13

**trial** 6:4,9,22 7:13,18
10:11,17 12:1 15:22

22:8,15 23:1 24:13 26:7
32:13,21,23 34:25
35:13,18 50:1,9,12
63:12,16 65:2 67:13
69:4 70:25 74:14,15
87:15 100:6 102:3
105:23 107:20 110:23,
25 114:5,18,22 115:1,7,
13,15 116:2,15 118:7,
20 119:3,11,16,23,25
120:7,14,16 122:1
127:3 128:10 129:4,9
134:10,11 136:9 139:19
140:20 141:22 142:10
143:6 145:2,7,25
146:12,19 147:10
148:11 150:16,20
152:9,13 155:10 156:18
157:1,22 158:6,11
159:12 160:23 162:8,
21,25 163:19 164:21,24
165:5,7,9 167:21 168:3,
4,10 169:20,23 170:22
172:12,13,18 173:6
174:6,22 177:6,15
183:15 184:8 185:1,18,
24

**trials** 24:14 105:20,21

**tribute** 186:22

**triers** 174:11,17

**triggering** 153:7
156:22

**triggers** 80:16

**triple** 176:24

**true** 24:2 91:11 108:24
110:9

**Trump** 31:3 32:5,25
34:12 87:17

**trust** 84:6 107:9,10
179:16

**Tuesday** 53:19 102:6,
8,13 107:15,25 130:14

**turn** 16:16 29:22 47:3
52:4 66:21 107:14
128:12 129:6 135:3
171:5 176:14

**turned** 30:15,17,18
45:12,21 46:6

**turning** 28:1 166:20

**turns** 44:20 80:11

**two-hour** 115:20

**two-minute** 66:5
163:20

**two-sided** 46:5,6

**txnd.uscourts.gov.**
11:11

**tying** 13:18

**type** 38:23 162:1,3

**typically** 182:24

---

U

**U.S.** 128:9

**ultimate** 47:18 98:3
125:17

**ultimately** 29:24

**un-winning** 66:23

**unanimously** 17:14

**unavailable** 7:16
111:18

**underlying** 34:6

**understand** 20:3 29:4
37:8,15 114:2 119:4
130:6 137:17 147:4
148:15 150:8 153:7
157:19 159:16

**Understandably**
82:15

**understanding** 138:19
171:18

**understood** 16:19
18:8 30:4 38:8 46:2
48:12 96:20 98:11
112:15 124:6 125:19
126:3 140:7 141:8
144:15 147:20 148:1,12
162:10 164:18 182:10

**undo** 30:18

**undue** 34:1,16 46:14
59:22

**unemployment** 39:18

**unhappy** 23:17

**union** 16:15 17:11,13 26:25 27:11,23 28:2,5, 7,12,14,19,25 29:6,18, 20,23 31:14 33:2 38:16 42:17 43:1,6,11,15,24 44:14,17,20,25 45:3,22, 23 46:12,24 47:12,23 49:7 58:23 74:24 83:9 94:4,10,11,13,16 95:1, 3,6 96:1,25 97:23,24 98:16,19 99:5,9 108:17 109:1 111:23 112:12,17 124:17 125:16,22 126:10 130:22 131:8 139:21,24 140:10 142:13,22 143:1,5,7,12, 14,22,25 145:5 146:8, 11 147:6 148:3 150:10, 18 171:15 179:6

**Union's** 29:8 95:4 97:2 112:25 113:10 123:25 125:13 126:4 127:10 140:1 141:17 149:21 150:5

**unique** 40:17

**universe** 31:19

**unlike** 40:18

**unlimited** 50:17

**unmute** 105:17

**unopposed** 35:10 36:19 37:5

**unprofessional** 105:22 106:6

**unredacted** 33:4

**unspoken** 134:15

**unusual** 143:3

**unwillingness** 141:15

**unwise** 125:25

**update** 153:4

**updated** 47:10 65:15

**upper** 44:9

**upstate** 139:3

**usage** 65:17

**utilizing** 106:21

**V**

**vacation** 161:16 162:4

**validity** 141:19

**validly** 146:20 150:16, 20

**validly-served** 151:1

**vehemently** 109:14

**verbal** 61:12

**verbally** 34:19

**verdict** 23:7 41:14,20 88:7 102:10 128:17 133:22 134:2 182:5,6

**versa** 74:24

**version** 10:8,9,12,15, 21 97:13 102:19

**versions** 22:4

**versus** 5:5 91:6,16 98:22

**viable** 89:25 90:7

**vibe** 66:18

**vice** 44:9 74:24 164:7

**video** 48:1 165:21,23 166:17,23 172:9,10 173:1,10,12

**view** 15:20 23:25 33:23 36:9 41:11 42:5 59:7 75:6 76:1 85:11 88:5,6 128:10,20 140:23 163:24

**viewing** 33:23

**views** 82:9 83:15 114:9

**VII** 13:5,7 16:8 18:2,25 19:2,5,14 20:14,23 21:1 27:22 98:22

**violated** 44:25 82:4

**violates** 44:22

**violation** 27:11 28:2 30:12

**violations** 28:7 98:17

**violence** 95:16

**visit** 59:20

**voices** 173:11

**voir** 7:1 31:16,17 50:2,5 52:19 53:14 54:6 55:19 59:16 60:23 61:2,6 63:7,13,21 64:3 75:18, 20 83:20,24 85:5 89:3, 18 90:10 91:23 92:3 93:8,11,12,13

**voluminous** 32:2

**vote** 75:25 76:10,13 77:15,20 78:11 88:5

**voting** 76:21,23 91:4

**VP** 123:25

**W**

**wait** 23:12 84:11 90:1 132:20

**waiting** 24:25 128:23

**walk** 7:3 52:14 110:1 176:2

**walking** 106:13 180:4

**walks** 178:8

**wanted** 25:25 67:19 74:18 84:23 87:11 88:14 89:18 90:19 112:21 128:21 133:6 134:14 148:13

**wanting** 113:25 114:20 177:11

**warrant** 153:7

**warranted** 16:10

**warrants** 17:18

**Washington** 95:2 97:22

**waste** 7:12 71:25

**wastes** 106:9

**wasting** 25:6 72:12

**watch** 65:23,24 178:24, 25

**Water** 109:24

**ways** 67:4 77:21 79:15 83:7 94:14 172:14

**Wednesday** 47:7 107:17,25 108:1 129:24

**week** 49:25 102:8 115:12 130:15 148:24 152:11 162:2,3

**weight** 167:3 172:22 184:15

**weird** 11:22 66:18

**west** 80:10,17 139:5

**western** 40:1 83:3

**Westlaw** 109:25

**Westmoore** 39:24,25

**wheels** 170:6 174:3

**whisper** 176:15

**who-do-you-know** 53:20

**wholly** 149:10

**wide** 133:15 134:6 136:1

**wide-open** 133:21 136:7

**wildly** 173:16

**willingness** 129:9 130:24 131:25 141:10 149:14 151:10,25 154:3

**windfall** 39:19 41:3,10, 25 42:2

**window** 145:10

**wisely** 185:4

**withheld** 26:16

**witness'** 179:8

**witness-** 108:9

**witnesses** 7:17 34:5 48:20 55:10,12,13 69:20,21 70:15 74:3,19 101:23 103:14,18,20,21 107:16 108:17,25 109:8 111:11,18,23 112:17, 22,25 113:4,8,16 114:18 116:12 118:13 119:4 120:4,7,19,25 121:4,11 122:15 126:12,13,14,20 127:7, 9,10 128:14 130:1,4,19,

Case 3:17-cv-02278-X   Document 272   Filed 06/20/22   Page 214 of 214   PageID 9341
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    June 16, 2022                    Index: Women's..Zoom

23,25 131:12,13 133:13
134:5,17 135:1,5 136:1,
20,22,25 138:2,11
139:24 143:18 144:13,
17 149:8 159:23 163:9
169:3 171:5 172:6
173:19,25 178:6 179:8

**Women's** 95:1,4 97:3,
22,23 98:7

**wondering** 25:5 50:6
65:24 101:1

**word** 10:8,9,12,15,25
11:3 110:25 111:2
113:11 166:4 174:24
175:6 176:24

**worded** 170:20

**wording** 168:7

**words** 24:10 34:20
175:1 176:21

**work** 9:1 22:7 38:3,4,6
39:10 49:24 55:8 56:17,
19 57:11,13 103:7
107:23 119:13 130:12,
16,18 145:5,12,19,20
149:15 150:2 151:3
161:25 171:20 185:13,
20

**worked** 21:14 102:21

**Workers** 5:6 94:4

**working** 8:24 9:19
65:21 103:9 126:22
148:4 153:10

**workplace** 29:17

**works** 7:4

**worry** 36:4

**worst** 9:22 151:22
169:21

**worth** 99:15

**wraps** 93:11

**write** 179:13

**writing** 26:4 30:6 35:3
42:7 54:10 92:6 105:11

**written** 47:4 49:18
61:18 122:22 123:1
167:12 173:20

**wrong** 63:4 81:21
86:14 90:23 117:10
146:14,15

**wrongdoing** 98:20

———————

Y

**y'all** 6:8,11,17,21 7:3,5,
21 8:6,10,24 9:2,10
10:8 11:5,6 13:20 18:21
20:3 21:8,12,18 22:1,2,
3,6,10,24 25:19,20
26:19 30:19 42:7 49:3,
19,24 52:21,22 53:18
54:5 55:9 57:10,25 58:2
60:9,11,16 61:3,13,21
62:11,14 68:14 70:6
72:25 75:1,5 81:19,20
83:10 84:3,4 85:17,18
89:12 92:25 97:9,13
98:3 102:18 104:17,24
105:9,10,12 106:10,11,
12,23 107:8,10,21
108:7,15,16,21 109:1,
11,15 110:4,11,14
118:4 126:16 127:6
129:3 130:2 132:24
137:3 147:10,12,13
148:4 152:23 153:4,6,8
159:2 164:22 165:6
166:8,20,22 167:25
170:1,4 173:3,4 174:1
176:9,14 178:11,22
179:17 185:13,18
186:2,17,20,22

**y'all's** 7:12 25:25 26:12
31:19 43:5 70:15 93:20
107:18 110:7

**years** 67:21 94:10
183:12

**yes/nos** 61:14

**yesterday** 25:24 27:19
119:17 123:2

**York** 14:7

———————

Z

**zealously** 24:1 186:21

**Zoom** 115:14,25 118:9
120:13 152:17 154:22
156:1,17 170:16