UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>             Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND<br>TRANSPORT WORKERS UNION OF AMERICA,<br>LOCAL 556,<br><br>             Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S RESPONSE
TO DEFENDANT TRANSPORT WORKERS UNION OF AMERICA LOCAL 556'S
MOTION *IN LIMINE* AND INCORPORATED BRIEF**

The Court should deny Transport Workers Union of America Local 556's ("Local 556's") motion to *limine* evidence of employee discipline because Plaintiff Charlene Carter's claims do not raise "similarly-situated employee" issues, and such evidence is directly relevant to Carter's Railway Labor Act ("RLA"),[1] Duty of Fair Representation ("DFR"), and Title VII of the Civil Rights Act[2] claims against Local 556.

Carter seeks to present evidence that Local 556 officials and representatives repeatedly attempted to cause Southwest to discipline union opponents for social media policy violations. President Audrey Stone, Local 556 Shop Steward Ricky Spand, and "Core Team" member/Contract Action Network representative Brian Talburt, all exerted continuous pressure on Southwest throughout 2017 to fire vocal recall supporters.[3] One Southwest email describes how

---

[1] 45 U.S.C. § 151, *et seq.*
[2] 42 U.S.C. § 2000e, *et seq*.
[3] Carter's Appendix in Support of her Response to Local 556's Motion for Summary Judgment, Dkt. No. 226, App.52-87 (cited to herein as ("Carter Resp. App. __")).

1

Stone and Spand reported recall leader Jeanna Jackson and other union opponents to Southwest for discipline around March and April 2017, near in time to when Stone reported Carter.[4]

Stone and Spand reported Jackson for stating, "It's pathetic that any union president turns in any member. In any union. Members are allowed to have a dissenting opinion from that of the Officers of the union."[5] Stone's report of Jackson's social media post, made shortly after Carter's March 16, 2017 termination, directly referred to Stone turning in Carter for her dissenting opinion.[6] Stone and Spand reported other union opponents for "retaliating" against them on social media.[7] This is direct evidence of Stone's motive for reporting Carter and her animus toward Carter's protected conduct. Carter should be able to present such evidence at trial.

From February 23, 2017 through July 2017, Stone "Core Team" supporter and Contract Action Network representative,[8] Brian Talburt, bombarded Southwest managers with requests to discipline and terminate Jackson and other recall supporters for union opposition speech, all with the ratification[9] of Stone and Executive Vice President Brett Nevarez, who knew of Talburt's efforts but never disavowed or took steps to stop them.[10] Talburt asked Southwest to discipline union opponent and recall supporter Greg Hofer and other union opponents (including Carter) on February 23, 2017, one day after Stone made her complaint against Carter— the Carter report was

---

[4] Trial Ex. 132; Carter's Appendix in Support of her Motion for Summary Judgment, Dkt. No. 222, App.549 (cited to herein as ("Carter App. __")).
[5] Trial Ex. 132; (Carter App.549).
[6] Id.
[7] Id.; see also Tr. Ex. 21 (Amended June 13, 2022) (Resp. App. 83).
[8] As a "Contract Action Network" representative, Talburt helped get the Local 556 contract negotiation team's messages to employees. Audrey Stone Deposition Tr. 49:14-51:6.
[9] See Local 9431, Commc'ns Workers of Am., 304 N.L.R.B. 446, 447 (1991) (union president's failure to repudiate, disavow, or prevent threats established apparent authority and the union was responsible for rights violations caused by those threats).
[10] Trial Ex. 21 (Amended June 13, 2022) (Resp. App. 76, 78-81); Trial Ex. 68-72; (Carter Resp. App.66-82).

part of a concerted campaign by Local 556 to target its opponents.[11]

Stone previously defended Talburt from discipline after he posted a call for "one public execution" to silence union opponents.[12] This evidence is relevant to contrast Stone's treatment of Talburt—a "Core Team" supporter who used threatening language but whom Stone defended as exercising protected speech rights—with her treatment of Carter, a union opponent. This is also relevant to showing the lack of credibility in Stone's baseless accusations that Carter threatened her when Carter messaged that she looked forward to seeing Stone back on the job after a successful recall.[13] Also, Stone's communications with Southwest management about employee discipline, grievance-handling, and negotiations regarding employees' social media policy violations establish Stone's scope of duties and authority in managing employee grievances.[14] For instance, Stone informed Local 556 members that she was in negotiations with Southwest regarding its inconsistent application of the social media policy, and argued that Southwest should amend the policy so that it would not interfere with flight attendants' rights.[15]

I. "Similarly-situated" employee requirements do not limit what evidence is relevant Carter's RLA, DFR, and Title VII claims against Local 556.

Contrary to Local 556's characterizations, Title VII's "similarly-situated" employee analysis does not restrict what evidence is relevant to Carter's RLA, DFR, and Title VII claims against the union. Unions, unlike employers, owe a fiduciary duty of fair representation to affirmatively represent and protect employees.[16] "Similarly-situated" employee evidentiary restrictions arise when employees seek to prove an employer's discriminatory enforcement of work rules based on

---

[11] (Carter Resp. App.54); (Carter App.105).
[12] Trial Ex. 21 (Amended June 13, 2022) (Resp. App. 81); Tr. Exs. 26-28; (Carter App.451-452, Stone 180:15-18, 181:16-19); (Carter Resp. App.81-82); (Carter App.550-551).
[13] Trial Ex. 65 (Apps.81, 82).
[14] Audrey Stone Deposition, Tr. 55:20-57:14; 58:10-59:7, 59:17-65:16; 65:22-66:10; 66:23-7:14.
[15] Trial Ex. 19 (Carter 110).
[16] *See* Local 556's Motion in *Limine*, Dkt. No. 276, 2-3, 4 (cited to herein as "L556 Mot. ___").

the employer's different treatment of employees under those rules.[17] Employers may generally apply work rules differently to differently situated employees.[18] The same is not true for unions. Federal law presumes that unions violate the duty of fair representation whenever union actors report a represented employee for discipline.[19] Federal law mandates that unions, who act as employees' exclusive bargaining representatives, owe all represented employees a fiduciary duty of fair representation.[20] A union must "act for and not against those whom it represents."[21]

Unions breach their duty of fair representation when they act arbitrarily, discriminatorily, or in bad faith;[22] make "arbitrary" decisions, "based upon motivations such as personal animosity or political favoritism";[23] engage in invidious treatment in matters affecting their employment;[24] or "evince a purpose to intentionally harm" employees subject to the union's exclusive representation.[25] Every instance when union officials and representatives attempt to discipline recall supporters is relevant to establishing Stone and Local 556 actors' personal animosity, political favoritism, pattern of invidious treatment, and purpose to intentionally harm recall supporters.[26]

---

[17] Employees can produce direct evidence or circumstantial evidence of discriminatory motive. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 (1973) framework is merely one tool to analyze circumstantial discrimination evidence. *See Comcast*, 140 S. Ct. at 1019.
[18] *See Chescheir v. Liberty Mut. Ins. Co.*, 713 F.2d 1142, 1148 (5th Cir. 1983) (citation omitted); *Megill v. Bd. of Regents*, 541 F.2d 1073, 1077 (5th Cir. 1976).
[19] *See e.g., Caravan Knight Facilities Mgmt., Inc.*, 362 N.L.R.B. 1802, 1805 (2015); *see also Roscello v. Sw. Airlines,* 726 F.2d 217, 221 (5th Cir. 1984) (citation omitted) (recognizing that the union's DFR is the same whether the union involved is covered by the NLRA or the RLA.).
[20] *See Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 75-76 (1991).
[21] *Local Union No. 12, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. NLRB*, 368 F.2d 12, 16 (5th Cir. 1966).
[22] *Id*.
[23] *See McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009).
[24] *Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967).
[25] *See McCall*, 661 F. Supp. 2d at 654. (citation omitted)
[26] Contrary to Local 556's arguments, it is irrelevant whether union representatives reporting recall

Thus, Local 556's reliance on *Lee* and similar authorities—premised on the employer's general freedom to discipline employees and permitting employers to give different treatment to differently situated employees—is misplaced.[27] Local 556's Federal Rule of Evidence 104(a) argument is also inapposite because there is no preliminary question to resolve regarding "similarly-situated" comparators.[28] Contrary to Local 556's suggestions, Carter has produced more than sufficient evidence to establish a basis for the evidence she seeks to admit at trial regarding union officials' attempts to discipline union opponents and other employee disciplinary matters.[29]

## II. Carter's evidence is relevant to Carter's claims against Local 556.

Contrary to Local 556's arguments with respect to Federal Rules of Evidence 401 and 402, *every* instance that President Stone and other Local 556 actors targeted recall supporters for discipline is relevant to Carter's RLA, DFR, and Title VII claims against Local 556.[30] First, Carter's evidence is relevant to her DFR claims because it shows that Stone and other Local 556 actors treated recall supporters with personal animosity and political favoritism, engaged in invidious treatment in matters affecting their employment, and acted with a purpose to intentionally harm them. Second, Carter's evidence that Stone and other Local 556 actors attempted to discipline recall supporters is relevant to proving Carter's RLA retaliation claim against the union. For her RLA retaliation claim, Carter will show that her RLA-protected activities (e.g., union opposition and recall support) were a substantial or motivating factor for Local 556's actions causing her termination.[31] Local 556 and Stone's history and pattern of

---

supporters had specific knowledge about Carter's termination because such other employees' reports show Local 556 and Stone's motive, opportunity, intent, preparation, plan, and knowledge regarding efforts to target union opponents. *See id.* at 2-3.

[27] *See* L556 Mot. 3 n.4, citing, *inter alia*, *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009.
[28] L556 Mot. 4.
[29] *See supra* 1-3 (trial exhibits and deposition testimony cited therein).
[30] L556 Mot. 4; *see also supra* 1-3.
[31] *See Roscello*, 726 F.2d at 222.

5

discriminatory conduct towards nonmember objectors, recall supporters, and union opponents, support Carter's claim that RLA-protected activities were a motivating factor in actions taken against Carter. Third, Carter's evidence that Stone defended other flight attendants under Southwest's social media policies is relevant to her Title VII religious discrimination claim against Local 556.[32] Carter can present evidence that President Stone treated Carter differently (and worse) than other employees by showing Stone affirmatively acted to cause Carter discipline because of her religious observances, beliefs, and practices, whereas Stone protected employees from discipline who did not exhibit Carter's religious characteristics.[33] Fourth, Carter will present evidence of Audrey Stone's grievance handling and discussions with Southwest management regarding employee disciplinary matters under the social media policies, which is relevant to showing that Stone was acting in the scope of her official duties when she reported Carter.[34]

Despite Local 556's continued assertions,[35] unions are liable for their RLA and Title VII violations. Unions are liable under the RLA Sections 2 (Fourth) and (Eleventh) "for their actions in procuring a discharge which violates the employee statutory rights."[36] The RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights."[37] Title VII expressly prohibits unions from causing or attempting to cause employers to discriminate against employees "because of" religious observances, beliefs, or practices.[38] Title VII also prohibits unions from discriminating because of religious observances,

---

[32] *See supra* at 3, 3 nn.14-15.
[33] *See e.g., Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *Int'l Union of Operating Eng'rs Local 406*, 701 F.2d at 508.
[34] Deposition of Audrey Stone, 55:20-57:14; 58:10-59:7, 59:17-65:16; 65:22-66:10; 66:23-7:14.
[35] L556 Mot. 3.
[36] *See Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102 (3d Cir. 1968) (footnote omitted).
[37] *Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 198 (1944); *see also Roscello,* 726 F.2d at 222 (citation omitted).
[38] 42 U.S.C. § 2000e-2(c)(3), (c)(1); 42 U.S.C. § 2000e(j).

practices, and beliefs,[39] and failing to accommodate any aspect of a person's religious beliefs.[40]

Despite Local 556's conclusory assertions,[41] Carter's evidence does not risk undue prejudice, confusion, or misleading the jury. Local 556 fails to offer any valid argument or evidence to support those claims. Evidence that Stone, Spand, and Talburt attempted to discipline recall supporters would not create "trials within trials" or force the union "to rebut each witness'[s] claim of discrimination."[42] Stone and Local 556's attempts to discipline recall supporters are presumably RLA, DFR, and Title VII violations regardless of the merits of those reports. Similarly, Carter's evidence regarding Stone's handling of employees' social media discipline with Southwest management does not contest the merits of any such cases. Thus, Local 556 would not have to rebut any witness's discrimination claims. Furthermore, witnesses like recall leader Jeanna Jackson can testify to facts without making any discrimination claim against the union.

### III. Carter's evidence of employee discipline is not inadmissible "character" evidence.

The Court should not exclude Carter's evidence of employee discipline under Rule 404(b) because Carter offers this evidence to prove, among other things, Local 556's discriminatory motive. While evidence of any wrong or act is inadmissible to prove a person's character to show that a person acted in accordance with the character on a particular occasion, it is admissible for another purpose—proving motive, opportunity, intent, preparation, plan, and knowledge.[43]

Dated: June 27, 2022                                         Respectfully submitted,

                                                             s/ Matthew B. Gilliam
                                                             Mathew B. Gilliam (*admitted pro hac vice*)
                                                             New York Bar No. 5005996

---

[39] 42 U.S.C. § 2000e-2(c)(1); § 2000e(j).
[40] *Cooper v. Gen. Dynamics*, 533 F.2d 163, 171-72 (5th Cir. 1976) (Brown, J., concurring) (recognizing the majority agreement that the union has a duty to accommodate).
[41] L556 Mot. 4-5.
[42] L556 Mot. 2, 5 (footnote and citation omitted).
[43] Fed. R. Evid. 404(b)(1)-(2).

*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

**Certificate of Service**

I hereby certify that on June 27, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

/s/ Matthew B. Gilliam