```
 1            UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF TEXAS
 2
                CASE NO. 3:17-cv-02245-X
 3

 4

 5   ----------------------------------------x

 6   CHARLENE CARTER,

 7               Plaintiff,

 8   v.

 9   SOUTHWEST AIRLINES CO. and,
     TRANSPORT WORKERS OF AMERICA,
10   LOCAL 556,

11               Defendants.

12

13   ----------------------------------------x

14

15

16       TRANSCRIPT OF THE PRETRIAL CONFERENCE

17        BEFORE THE HONORABLE BRANTLEY STARR

18            UNITED STATES DISTRICT JUDGE

19

20

21                    Dallas, Texas

22                    June 16, 2022

23                     9:02 a.m.

24

25                                    EXHIBIT 2
```

Page 2

```
 1   A P P E A R A N C E S:
 2
     FOR THE PLAINTIFFS:
 3
         NATIONAL RIGHT TO WORK FOUNDATION INC.
 4           8001 Braddock Street
             Suite 600
 5           Springfield, Virginia  22160
         BY:  MATTHEW B. GILLIAM, ESQ.
 6           mgb@nrtw.org
             (703) 321-8510
 7
     PRYOR & BRUCE
 8       302 North San Jacinto
         Rockwall, Texas 75087
 9   BY: BOBBY G. PRYOR, ESQ.
         MATTHEW D. HILL, ESQ.
10       bpryor@pryorandbruce.com
11       mhill@pryorandbruce.com
12
13
14
15  FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
16      REED SMITH, LLP
            2850 North Harwood
17          Suite 1500
            Dallas, Texas  75201
18      BY: PAULO B. McKEEBY, ESQ.
            BRIAN K. MORRIS, ESQ.
19          pmckeeby@reedsmith.com
            bmorris@reedsmith.com
20
21
22
23
24
25
```

Page 3

```
 1  For the Defendant Union 556:
 2          Adam S Greenfield
 3
 4      CLOUTMAN & GREENFIELD, PLLC
            3301 Elm Street
 5          Dallas, TX 75226
        BY: ADAM S. GREENFIELD, ESQ.
 6          EDWARD B. CLOUTMAN, III, ESQ.
            agreenfield@candglegal.com
 7          crawfish11@prodigy.net
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1  COURT REPORTER:  MS. KELLI ANN WILLIS, RPR, CRR, CSR
                    United States Court Reporter
 2                  1100 Commerce Street
                    Room 1528
 3                  Dallas, Texas  75242
                    livenotecrr@gmail.com
 4
 5      Proceedings reported by mechanical
 6  stenography and transcript produced by computer.
 7
 8              * * * *
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 5

```
 1              - P R O C E E D I N G S -
 2      THE COURT SECURITY OFFICER:  All rise.
 3      THE COURT:  Thank you.  You can be seated.
 4      Okay.  The Court calls Civil Action
 5  317-cv-2278-X.  That is Carter versus Southwest
 6  Airlines and Transport Workers of America, Local 556
 7  for pretrial conference.
 8      Let's do appearances for the record.
 9      MR. GILLIAM:  Matthew Gilliam for
10  Plaintiff, along with Matthew Hill and Bobby Pryor.
11      THE COURT:  Okay.  Thank you.
12      And then how about for Southwest, who do
13  we have here?
14      MR. McKEEBY:  Paulo McKeeby along with
15  Brian Morris for the Defendant Southwest.
16      THE COURT:  Okay.  Thank you.
17      And then how about for Local 556?
18      MR. GREENFIELD:  Adam Greenfield, along
19  with Edward Cloutman, III.
20      THE COURT:  All right.  Thank you.
21      Okay.  So is everyone ready for pretrial
22  conference?
23      I know this monitor is always right in the
24  way.  I wish I was as tall as Matumbo, because then
25  I could see you perfectly.  But I'm short and I
```

Page 142

1  respect to most of these people, because they are
2  outside of the subpoena power.
3          MR. GREENFIELD: We also received this
4  morning, right outside of the courthouse, subpoenas
5  for Ms. Parker and Mr. Navarez as well. Again, we
6  don't have the ability to really accept these.
7          THE COURT: Well, so I see your point, Mr.
8  McKeeby. But at the end of the day, if they are
9  Southwest employees, can't Southwest compel them to
10  come to trial?
11          MR. McKEEBY: I -- I -- usually the answer
12  to that question would be, of course. I'm not sure,
13  because of the Union and they are Union members,
14  that it is that simple. I guess I can check and see
15  if that is the case.
16          THE COURT: Dan, I'd like you to check.
17  Because I mean, I have gotten someone here from
18  Spain. That was under the control. Control
19  stretches as far as the corporation does, if that
20  makes sense.
21          And so if a corporation, you know, it is
22  easier for at-will employees, not Union members, but
23  at-will employees, they have to do anything the
24  corporation tells them lawfully to do.
25          MR. McKEEBY: Well, yes.

Page 143

1          But I mean, again, the Union -- you know,
2  existence here is significant. I mean, I could,
3  frankly -- I mean, because it will be unusual for
4  Southwest to reach out to an employee absent some
5  Union contact. And say, Hey, by the way, you have
6  to be at trial in Dallas, oh, by the way, in which
7  the Union is a party.
8          That is going to be a very complicated
9  process. And the employee very likely, if they got
10  that call from, you know, my contact at Southwest
11  Airlines, is going to tell that person, no, I'm not
12  coming to Dallas. You need to talk to my Union.
13          So it is not as simple as in most cases,
14  given the Union presence.
15          MR. GILLIAM: Your Honor, counsel for both
16  Southwest and Local 556, it is as simple enough as
17  coordinating between the two to get some of these
18  witnesses here.
19          THE COURT: And I'm going to have two
20  suggestions.
21          Suggestion one is, could we have a
22  coordinated effort? I know they are no longer Union
23  management and that doesn't necessarily mean --
24  well, they are no longer under the control of the
25  Union but that doesn't mean the Union has no role.

Page 144

1          So if there could be coordinated reach
2  out, one, that would be helpful.
3          Two, if you don't hear back in 48 hours
4  that someone from Southwest will accept service of
5  the subpoena, I'm going to suggest you do the
6  subpoena the old way, right?
7          Now, the question is, if they are beyond
8  the subpoena power of the Court, then we are again
9  relying on control of the corporation to get them
10  here, the corporation being Southwest.
11          But if you are here on Rule 45 issues,
12  then I think some of those could be circumvented by
13  you serving those witnesses individually, if that
14  makes sense.
15          MR. GILLIAM: Understood, your Honor.
16          And one of the reasons why we did go that
17  route for some of the witnesses was that on the
18  initial disclosure, Southwest indicated contact
19  certain individual through counsel. Others were not
20  listed on their initial disclosures, but the ones
21  who were, were -- and the same goes for Local 556
22  and Southwest. They said to communicate and contact
23  these people.
24          THE COURT: And that is the normal course
25  because they would prefer that, right? No one wants

Page 145

1  to be a flight attendant touching down and then a
2  process server shows up and hands them a trial
3  subpoena.
4          What I'm trying to say is, I will give a
5  48-hour period for Southwest and the Union to work
6  with that person, right? On whether or not they can
7  attend trial, whether or not an attorney for
8  Southwest will accept service of that subpoena for
9  them.
10          Beyond that window, now we are getting
11  into the point where you need to clear off those
12  defects. And if that is a defect, you need to work
13  on clearing it off and serve it the old fashioned
14  way. I give you permission to serve anyone
15  individually.
16          Let me think through it.
17          Let's say, it is Monday at 5 p.m. is sort
18  of my deadline for when I think you have a green
19  light to no longer work through them for service of
20  a subpoena. And you can work separately on service
21  of a subpoena.
22          Even if you serve those subpoenas
23  separately, I think Southwest would still have a
24  continuing duty at that point with a duly-served
25  subpoena to make that person available for trial.

Page 146

 1      But specifics and mechanics, we need to
 2 talk through that because I'm not trying to
 3 inconvenience these people.
 4      MR. McKEEBY: What about people that are
 5 outside of subpoena range?
 6      THE COURT: So, again, if we have the
 7 corporation -- I mean, you need to flag for me if
 8 there is an Union issue, right? Union, in my mind,
 9 and Southwest should both be telling the person,
10 Hey, you are under the control collectively of
11 Southwest and the Union, and Southwest and Union
12 need you at trial because you were subpoenaed.
13      MR. McKEEBY: Okay.
14      THE COURT: Now, if I'm wrong on that,
15 tell me I'm wrong, if you have got some case law on
16 that.
17      To me, I hear there are two individuals
18 who might have some level of control. If both of
19 them are parties and there is a trial subpoena that
20 is validly served, if not agreed to be accepted,
21 then I think that collective control should be able
22 to get them here.
23      MR. McKEEBY: Okay. Well, I can just tell
24 you that I'm not going to be authorized to accept
25 subpoenas for collective bargaining represented

Page 147

 1 flight attendants. So they are going to have to
 2 subpoena them in the old fashioned way and then we
 3 can cooperate at that point.
 4      THE COURT: So I understand that.
 5      So no longer on Monday at 5:00 deadline.
 6      What I will ask is, if the Union or
 7 Southwest, or both, could provide location for a
 8 process server of where they will be, right? I
 9 don't want any hiding of the ball, I don't think
10 y'all will. But because we are on the eve of trial
11 now, they may be chasing them around the country.
12      Then that will give y'all -- I mean, if
13 y'all want to tell them, if y'all want to be
14 professional and coordinating, we plan on serving
15 them on this layover and you want to tell them that
16 and give them a heads up and they won't be
17 surprised. I think that would be a professional
18 courtesy, if you can't accept service.
19      MR. McKEEBY: I can try to do that.
20      THE COURT: Understood.
21      MR. GILLIAM: I can as well.
22      MR. McKEEBY: Just provide their
23 addresses? I think one of the communications that I
24 received last night has residential addresses, so I
25 can provide that as well.

Page 148

 1      THE COURT: Understood.
 2      I know these are difficult, and with the
 3 Union overlay, they are all the more difficult.
 4      I appreciate y'all working through it. It
 5 is a challenge.
 6      MR. GILLIAM: Your Honor, so it is no
 7 longer a Monday deadline. Is there a particular
 8 deadline now?
 9      THE COURT: So here is the thing in my
10 mind. The Monday deadline I was giving you was the
11 deadline to start serving them with the trial
12 subpoena because I understood them to say that they
13 wanted to have a discussion on whether or not to
14 accept service.
15      If I understand the current position is,
16 he knows he can't get there, he's saying I can't
17 accept service for under the CBA. In that case,
18 then, I'm no longer sitting you out until Monday at
19 5 to serve them directly. You can serve them
20 directly an hour from now, if you want to and can
21 find them.
22      What I'm asking them to do, by the end of
23 the day, provide you with location information of
24 where they will be next week, so that you can serve
25 them.

Page 149

 1      I would say serve them the sooner the
 2 better because that serving is what now opens the
 3 dialogue as to scheduling, right?
 4      And so if you serve them next Friday, it
 5 is going to have less time to promote a cooperative
 6 schedule than it is if you serve them on Monday or
 7 serve them tomorrow.
 8      Okay. So what other witnesses or buckets
 9 do we need to talk about? Because we haven't talked
10 about anyone wholly separately on your list.
11      Mr. Greenfield.
12      MR. GREENFIELD: There was only four
13 individuals, President Stone -- former President
14 Stone, who has expressed willingness to be here. We
15 will work with the other side on the scheduling on
16 that. The same with former board member, John
17 Parritt.
18      It is really the two additional,
19 Ms. Parker and Mr. Navarez, who are, as we have
20 discussed, outside of the subpoena range. They do
21 not live here. They are not within the Union's
22 control. And I guess there is potential issues, I
23 guess, of whether Southwest has the ability to get
24 them here.
25      And as Mr. McKeeby has expressed, he

Page 158

 1  knowledge.  They were just copied on investigation
 2  emails.  So I don't think, based on that
 3  representation, I'm going to take the extra step and
 4  make them sit for a depo in Shaffer.
 5         Based on that, I still think, if you want
 6  to serve Shaffer with a trial subpoena, it sounds
 7  like Shaffer is local, right?  Within 100 miles.  So
 8  if you want Shaffer to show up, fine.  But Shaffer's
 9  status as a former employee means they are certainly
10  not going to accept service.  And there is no
11  deposition to talk about.  It is just you do a trial
12  subpoena on Shaffer.  We know they won't accept it
13  because Shaffer is a former.
14         Okay.  So Barnett is the last one to talk
15  about.  I don't know that Barnett was in any of the
16  other groups we had talked about.  So Barnett is now
17  in a new bucket, which is a former employee, who is
18  local.
19         Which I think we treat Barnett and Shaffer
20  the same, right?  Any reason not to?
21         So you need to serve Barnett directly.
22  I'm not going to make Barnett sit for a separate
23  depo, because we don't have an additional disclosure
24  issue running around.
25         And if Southwest wants to reach out to any

Page 159

 1  formers and offer representation, that is fine.
 2  That is normal course.  They don't have to.  Y'all
 3  can talk about scheduling, if you want to proceed
 4  with Barnett.
 5         MR. GILLIAM:  One point of clarification
 6  of the bucket of people no longer employed by
 7  Southwest.
 8         We did talk about earlier also Guttierez,
 9  who has also been deposed, again, no longer employed
10  with Southwest.
11         I guess we subpoena her.  We can subpoena
12  her directly for trial, but we don't have an address
13  for her.
14         MR. McKEEBY:  I will provide an address
15  for her.
16         THE COURT:  I understand she's local.
17  Hopefully, that is within 100 miles, but also
18  cooperating is the note I had.
19         If you subpoena her, you will probably end
20  up talking to -- you anyways.
21         MR. McKEEBY:  I suspect that is right.
22         THE COURT:  Got it.
23         Any other witnesses and availability we
24  should talk about?
25         MR. McKEEBY:  Yes.

Page 160

 1         So that brings us to the last bucket of --
 2  I apologize.
 3         THE COURT:  It is okay.
 4         MR. McKEEBY:  My notes are getting a
 5  little difficult to read.
 6         Four current Southwest employees who were
 7  on their initial disclosures, who we, again, think
 8  have very, very tangential relevance to anything in
 9  this case.
10         They are Linda Rutherford, Brendon Conlon,
11  Nancy Kleburne, and Sonia Lacore.
12         Again, all of which may have been copied
13  on an email, but we are not going to present them as
14  decision makers or involved in providing
15  recommendations with respect to the termination or
16  really being at any of the grievance proceedings
17  leading up to the termination.
18         And so, again, we don't feel like those
19  folks are particularly relevant anyway.  That is why
20  we didn't list them in our initial disclosures.
21         They all, for various reasons, the level
22  of specificity we can get into, not available at
23  least for trial.  That is the person in Kuwai, i.e.,
24  Ms. Rutherford.  Jamaica is Mr. Conlan.
25         THE COURT:  Can you give me those dates

Page 161

 1  for Rutherford?
 2         MR. McKEEBY:  Rutherford is July 1st
 3  through July 8th.
 4         THE COURT:  All right.
 5         And then Conlan?
 6         MR. McKEEBY:  Conlan is Jamaica from
 7  July 1st through July 8th.
 8         And then Kleburne has various travels
 9  plans between July 5th and July 17th, per this
10  email.
11         THE COURT:  Are those continuous travel
12  plans?
13         MR. McKEEBY:  Ohio.  And then to Arkansas
14  to see family.
15         Southwest gives a lot of very good
16  vacation benefits.  So, yes, she's going to be in,
17  it looks like, four different states, between
18  July 5th and July 17th.
19         THE COURT:  Why not add a fifth?  I'm
20  joking.  We will get to that at some point.
21         Okay.  So July 5th to 17th.
22         MR. McKEEBY:  Right.
23         And then Lacore is probably less
24  interesting, but she has -- is going to be in
25  Atlanta for apparently a very critical work

Page 162

 1  function, some type of hospitality summit.
 2       That is the week of July 11th.  And the
 3  week of July 4th, she's on some type of out-of-town
 4  vacation, the details of which I do not have.
 5       And, frankly, with respect to these two,
 6  it might be the preference for them to sit for an
 7  hour deposition, as opposed to having to appear at
 8  trial, given their plans.  So I'm not sure how to
 9  deal with it.
10       THE COURT:  Understood.
11       So let me pitch it to Carter's team now
12  and see what the preference is on a path forward on
13  these four.
14       MR. GILLIAM:  What are the preferences?
15       THE COURT:  Right.
16       For example, Rutherford and Conlan, their
17  travel dates cutoff July 8th.  We will still be
18  going after July 8th, but you will be rested by that
19  point.
20       Do you prefer to pursue an out-of-order
21  live fire presentation of them at trial, is my first
22  question.  Because their timing is a little bit
23  different than Kleburne and Lacore's timing, which
24  is difficult because it is the entirety of the
25  trial.

Page 163

 1       MR. GILLIAM:  If that is the only option,
 2  then I would say yes.
 3       THE COURT:  For an out-of-order live
 4  witness presentation?
 5       MR. GILLIAM:  Yes.
 6       THE COURT:  Yes.
 7       So I think that goes back to my suggestion
 8  of today, can you tell them, by the end of the day,
 9  what all witnesses you want and when.
10       Now you know those schedulings, so you may
11  just present an out-of-order date beyond July 8th,
12  where you would take the witness conditionally.
13       And then for the other two, if they have
14  got these blackouts -- I mean, my inclination on the
15  other two, if they are blacked out the entire time,
16  then have them sit for a one-hour depo beforehand.
17       If they have marginal relevance, you can
18  find out what the relevance is.  And then you would
19  know before trial whether or not you would even read
20  a two-minute portion of the transcript.
21       That would be my inclination.  And if they
22  are current employees, then I can order them to sit
23  for a depo that occurs after fact discovery.
24       MR. GILLIAM:  We do view them as relevant,
25  I think for the answers that we have already stated.

Page 164

 1  Lacore was copied on President Stone's
 2  complaint of Carter, when she made her complaint the
 3  first time.
 4       Also, Lacore is relevant because President
 5  Stone negotiated grievances and employee discipline
 6  with -- specifically social media discipline with
 7  Lacore, the vice president of in-flight services.
 8       So, again, it goes to the scope of
 9  Ms. Stone's official capacity of grievance handling,
10  handling social media discipline issues.
11       And Kleburne was the manager of
12  Southwest's task team, that's their accommodations
13  team.
14       So any sort of religious accommodation
15  would have to be referred to her.  And it would be
16  significant, even if she didn't handle an
17  accommodation issue.
18       THE COURT:  Understood.
19       So I think I have heard enough to say that
20  I will have them sit for a one-hour depo, if they
21  were not available in trial.  And then I will leave
22  the scheduling and coordinating of that up to y'all.
23       What I think getting we're getting into
24  is, we will have at least some trial presentations
25  by depo transcript, right?  That is where we have

Page 165

 1  the procedure, show us the full transcript, make
 2  your depo designations, counter-designations,
 3  objections, responses.
 4       And so now we will be doing some of that,
 5  that is between now and trial, right?  So I'm going
 6  to ask y'all, if you have a deposition in hand for a
 7  witness who will not be at trial, that is one of
 8  these one-hour depos, within 24 hours of getting the
 9  trial transcript, can you file deposition
10  designations with me?  That gives me the full
11  transcript and the objections.  The other side will
12  have -- need to come in 24 hours later.
13       For example, you objected to form on the
14  record 10 times during designated testimony.  Here
15  is our 10 objections.  We said object to form,
16  really we meant hearsay.
17       And so at 24 and 48 hours after the
18  transcript comes in hand, I would like to see those.
19       But here is what I do with the depo
20  designations, right?  I guess it takes a little bit
21  different tactic practically if it is a video depo
22  or a paper depo.
23       If it is a video depo, then I give you all
24  of the rulings on the objections that are getting
25  pressed so that the videographer can edit out all

Page 186

1      THE COURT:  That is a great question.
2      I'm going to let y'all pick.  If y'all can
3  fit around that table, great.  But you are going to
4  have corporate reps there.  So six chairs around the
5  table, you are probably going to want to split up
6  into two.  It's just my guess.
7      After I go off the record, then let's come
8  over here and make sure we can test out a sidebar.
9  One lawyer for each side come up and we will just
10 practice how loud we talk to where we hear each
11 other people but the people in the box can't hear.
12     I will try to find Mr. Frye and see if
13 he's got a beat on looking at the jury assembly room
14 and/or the Red River room.
15     Anything else?
16     All right.  Thank you.
17     Y'all are great lawyers and this is going
18 to be a fun case.  We get lots of cases where the
19 lawyers just don't know how to be officers of the
20 court.  And y'all know how to represent your clients
21 zealously and be officers of the court.
22     Y'all are a tribute to the profession.
23     So this is going to be great to try.
24     So with that, I will go off the record.
25 And let's come over here and we will live-fire a

Page 187

1  sidebar.
2      (Proceedings concluded at 12:24 p.m.)

Page 188

1                    C E R T I F I C A T E
2
3      I, Kelli Ann Willis, RPR, CRR, CSR
4  certify that the foregoing is a transcript from the
5  record of the proceedings in the foregoing entitled
6  matter.
7      I further certify that the transcript
8  fees format comply with those prescribed by the
9  Court and the Judicial Conference of the United
10 States.
11     This 19th day of June 2022.
12
13          s/ Kelli Ann Willis
                Official Court Reporters
14              The Northern District of Texas
                Dallas Division