Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER,         )
                         )
     Plaintiff,          )
                         )
VS.                      ) CIVIL ACTION
                         )
SOUTHWEST AIRLINES CO.,  ) NO.: 3:17-cv-02278-X
AND TRANSPORT WORKERS    )
UNION OF AMERICA, LOCAL  )
556,                     )
                         )
     Defendants.         )

-------------------------------
VIDEOCONFERENCE ORAL AND VIDEOTAPED DEPOSITION OF
SONYA LACORE
JUNE 24, 2022
-------------------------------

VIDEOCONFERENCE ORAL AND VIDEOTAPED DEPOSITION
OF SONYA LACORE, produced as a witness at the
instance of the Plaintiff, and duly sworn, was
taken in the above-styled and numbered cause on
June 24, 2022, from 9:57 a.m. to 11:17 a.m., via
Zoom Videoconference, before Melody A. Monk, CSR
in and for the State of Texas, reported by machine
shorthand, with the witness located in Dallas,

Page 2

1  Texas, pursuant to the Federal Rules of Civil
2  Procedure, and the provisions stated on the record
3  or attached hereto.

Page 3

1      A P P E A R A N C E S
2      (All parties appearing via Zoom Videoconference)
3  FOR THE PLAINTIFF:
4      BOBBY G. PRYOR
5      Pryor & Bruce
       302 North San Jacinto
6      Rockwall, Texas 75087
       972.771.3933
7      Bpryor@pryorandbruce.com
8
       MATTHEW B. GILLIAM
9      National Right to Work Legal Defense
   Foundation,   Inc.
10     8001 Braddock Road, Suite 600
       Springfield, Virginia 22160
11     703.321.8510
       Mbg@nrtw.org
12
13 FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
14
       PAULO B. MCKEEBY
15     Reed Smith
       2850 North Harwood Street
16     Suite 1500
       Dallas, Texas 75201
17     Pmckeeby@reedsmith.com
18
19 FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
   AMERICA AND LOCAL 556:
20
       EDWARD B. CLOUTMAN, III
21     Law Offices of Edward Cloutman III
       3301 Elm Street
22     Dallas, Texas 75226
       214.232.9015
23     Ecloutman@lawoffices.email
24
25

Page 4

1      ADAM S. GREENFIELD
       Cloutman & Greenfield, PLLC
2      3301 Elm Street
       Dallas, Texas 75226
3      Agreenfield@candlegal.com
4
5  ALSO PRESENT:
       Lisa Block, Videographer
6      Charlene Carter
       Chris Maberry, Senior Attorney - Southwest
7         Airlines
       Kerrie Forbes, Associate General Counsel -
8         Southwest Airlines
       Lauren Armstrong, Paralegal - Southwest
9         Airlines

1 (Pages 1 to 4)

Page 25

1  here today, correct?
2       MR. MCKEEBY: What, what question?
3       MR. PRYOR: The question of does she
4  know whether or not she can still assist the union
5  in kicking people off of committees, nonunion
6  objectors.
7     Q. Do you know?
8     A. I have a team of experts that work on
9  that, and so I delegate every bit of that work.
10 They --
11    Q. Let's look at Exhibit --
12    A. -- they will know.
13    Q. Oh, I'm sorry.
14       Okay. You, you rely on someone else
15 for that, correct?
16    A. That is correct.
17    Q. Who is Brian -- how do you pronounce his
18 last name, Talburt?
19    A. Brian is a flight attendant.
20    Q. Okay. And someone that you knew certainly
21 back as of 2014, correct?
22    A. Yes.
23    Q. Did you know him before then?
24    A. Yes. Flight attendant in Phoenix.
25    Q. So how long had you known him? How long

Page 26

1  have you known him as you sit here today, I guess?
2     A. I probably met him when I was a leader in
3  the Phoenix space in 2007 or 2008.
4     Q. Okay. So do you recognize this e-mail,
5  the portion that's on the screen?
6     A. I -- Brian sent me a lot of e-mails. So I
7  can read it right now, but I don't remember.
8     Q. I'm gonna read it to you.
9        You didn't -- you haven't seen this
10 document in the last few days?
11    A. No, sir.
12    Q. So, first of all, I note that he sends it
13 to a different e-mail address than the one you
14 identified as your business address before,
15 correct?
16    A. Yes.
17    Q. All right. And he says, So my final
18 installment on this subject. Shipman stepped up
19 to the plate. It is maddening trying to reason
20 with these sheeple. The issue becomes the tumor.
21       Then he goes on to say -- I'm going to
22 read a couple of lines down -- Corliss
23 particularly is something we have not seen before
24 and is incredibly dangerous.
25       Who is Corliss?

Page 27

1     A. Corliss is a flight attendant and also
2  currently serves on, on the union team.
3     Q. And he says, The attitude she spawns is
4  Northwest Airlines in the '80s. People listen and
5  people read.
6        Do you know how what he's talking
7  about, how she's dangerous, incredibly dangerous?
8     A. I don't know what he -- I, I can't assume
9  what he meant.
10    Q. Okay. I'm asking how you understood it.
11 Let's try that.
12    A. Brian is someone who -- frequent pen pal,
13 and he is very passionate when he doesn't agree
14 with things that people do or say, and so I can
15 only assume that's what he meant.
16    Q. He says -- then he says, I am all about
17 targeted assassinations.
18       Now, if you read this e-mail, maybe
19 you'll remember that, maybe that will help you
20 recall, but he's talking about targeted
21 assassinations using social media.
22       Do you recall that?
23       MR. MCKEEBY: What, what, what is it?
24 Where is that? Where does it say social media?
25       MR. PRYOR: Go to the next paragraph.

Page 28

1     Q. Social media is by far the major source of
2  reach and must be used to our advantage.
3        He's talking about using social media
4  for targeted assassinations. You don't recall
5  that?
6        MR. GREENFIELD: Objection, form.
7     A. I don't remember this. I --
8     Q. Okay.
9     A. What I can tell you is Brian later got
10 into some challenges with his own social media
11 posts, and I know my team investigates that.
12    Q. Well, you certainly didn't have them
13 investigate this one, the one he sent you, did
14 you?
15    A. I don't remember if I did or not.
16    Q. Oh. So --
17    A. I get a lot of e-mail.
18    Q. -- once again, we look forward to
19 Southwest showing us the documents where you
20 reported him for this comment. I want to read
21 something else in here.
22       MR. MCKEEBY: Object to the sidebar.
23    Q. In that same paragraph about --
24       MR. MCKEEBY: Just ask, ask the
25 witness questions, please.

7 (Pages 25 to 28)

Sonya Lacore

Page 45

1   A. I think it would have depended on all of
2   the details of what I would have done with that.
3   I am seeing this now for the first time, so I, I
4   don't -- I can't really say what I would do.
5   Q. By the way, who is Julie O'Grady?
6   A. Julie wor -- I believe that she worked in
7   employee relations.
8   Q. And she says, At this time, I do not have
9   the specific page or wall where this content was
10  found. Please work with labor relations and your
11  HR business partner to address this matter.
12      Why would anyone be referring this to
13  labor relations unless you were trying to help the
14  union with people that didn't like the union?
15  A. I --
16      MR. MCKEEBY: Object to the form of
17  the question as --
18  Q. I -- I'm giving, I'm giving you the chance
19  to come up with any explanation you can think of
20  for --
21      MR. MCKEEBY: She's --
22  Q. -- Southwest management.
23      MR. MCKEEBY: She's already testified
24  she doesn't -- hasn't seen this e-mail. She's not
25  the -- she's not a recipient.

Page 46

1   So you can answer as best you can.
2   A. I can't even begin to know what Julie was
3   saying because I, I didn't this write e-mail.
4   Q. Would you have directed to labor
5   relations -- if, if, if Brian Talburt had sent you
6   an e-mail with all these union objectors on there
7   that he's been searching their Facebook pages and
8   wants Southwest to take action against them, and
9   knowing what you know from his targeted
10  assassination e-mail with you, would you have sent
11  it to labor relations?
12  A. I would --
13      MR. MCKEEBY: Object to the form as
14  hypothetical.
15      You can answer.
16  A. I would send it to my team of experts that
17  work on that, because I have a team that's very
18  good at this. And I -- honestly, that's why
19  sometimes I will do an FYI and let them take it
20  from there.
21  Q. Who's Maureen Emlet, or I may have said
22  the wro -- yeah, Maureen Emlet?
23  A. Are you asking me who she is?
24  Q. I am.
25  A. She was a base manager -- well, she served

Page 47

1   in many roles. So I'm not sure what role she was
2   in here. Oh, manager of labor relations.
3   Q. And do you see this e-mail from her
4   regarding the social media posts where she says, I
5   couldn't find much with Greg's name on it.
6       Do you know who Greg is?
7   A. I don't know who she's talking about right
8   here.
9   Q. Okay. But I'm happy to keep looking. I
10  did take screenshots of his most recent posts, and
11  I think there's an interesting pattern of trying
12  to milk the company for money and topple the
13  union. Do you want me to dig further?
14      You know nothing about this e-mail?
15  A. I do not.
16  Q. What would you have done with this e-mail
17  if you had received it?
18  A. I would send it to my team and let them
19  determine what the next steps are.
20  Q. 84 -- 6351.
21      Were you involved or receive any
22  information about the Step 1 or Step 2 process
23  involving Charlene?
24  A. I'm not involved in the process.
25  Q. So what involvement did you have?

Page 48

1   A. What about what?
2   Q. You just said --
3   A. I couldn't hear you.
4   Q. -- not that aspect. What are you -- you
5   said not that aspect, and I said, okay, what
6   aspect did you have involvement?
7   A. I said I'm not involved in the prospect --
8   in the process of Step 1, Step 2 hearings.
9   Q. Okay. And so, therefore, when you said
10  not involved in that aspect, did you mean to
11  indicate you were involved in some other aspect?
12  A. I'm not involved in the pro -- in those
13  processes. Do people come and let me know that
14  there is a, a case going on, maybe, maybe not.
15  Depends. But I, I intentionally do not involve
16  myself in the process.
17  Q. Did you search your personal e-mails for
18  all e-mails you had with Brian Talburt for
19  production in this lawsuit?
20  A. Did I search my what? I -- I'm sorry, I'm
21  having really a tough time --
22  Q. Your, your pers -- and I'm sorry.
23      Did you search your personal e-mails
24  to produce in this lawsuit all e-mails you had
25  with Brian Talburt?

12 (Pages 45 to 48)

MELODY MONK REPORTING
888.988.5317

**APP 25**

| | |
|---|---|
| Page 49 | Page 51 |

Page 49

1  A. I, I did not.
2  Q. What's your education?
3  A. What's my education?
4  Q. You don't need to repeat the question
5  unless you just didn't hear it.
6  A. I shouldn't --
7  MR. MCKEEBY: Well, she didn't hear
8  it. She didn't hear it. That's why she repeated
9  it.
10  A. I'm not, I'm not trying to be difficult
11  here. I'm really having a challenge hearing you,
12  and I wanted to make sure that I understood you.
13  So if you're asking me what my
14  education is, I have a high school education and
15  two years of college. I do not have a college
16  degree.
17  Q. Why can you not be at trial in this case?
18  A. I have some commitments that I had
19  previously prepared for, and it just is really
20  difficult for me to be away.
21  Q. By the way, I had some commitments too.
22  I, I changed them. Tell me about your
23  commitments.
24  A. I'm happy to. The, the first week -- I'm
25  assuming you're talking about the dates of the 5th

Page 50

1  through the 8th? I am --
2  Q. No, I'm not, ma'am. No, ma'am, I'm
3  talking about July 5th through July 12th.
4  A. Okay. Okay.
5  Q. Are you available for trial any of those
6  days?
7  A. I am not, and I'm happy to share why. I,
8  I have very little opportunity to spend time with
9  my family when they're in town, and the week after
10  the Fourth they're coming in and they're spending
11  time with me. And my niece and her husband have
12  three children, and my nephew is undergoing -- at
13  age 34 is undergoing cancer for melanoma, is
14  undergoing treatment, and my husband and I have
15  promised to baby-sit their children during that
16  time because we are like grandparents to them.
17  They, they have very little support.
18  The following week, I am traveling
19  because I have commitments to speak at a
20  hospitality summit, and I also have a, a --
21  produced a schedule of a town hall in one of the
22  bases in Atlanta. And when we produce a town hall
23  for our people, we don't cancel it because they
24  bid their schedules around these.
25  MR. PRYOR: All right. I'll just

Page 51

1  state for the record that I, I did call Paulo
2  before this deposition and let him know that if
3  this witness was available for trial, we would not
4  take the deposition, and he said she was
5  unavailable and if that was not the case, he would
6  check. In our view, that is not unavailable, and
7  although we've taken this deposition, we will
8  subpoena her for trial.
9  I'm gonna take a break, ma'am. I'm
10  gonna stop my little clock here, and give me ten
11  minutes. Thanks.
12  THE VIDEOGRAPHER: Going off the
13  record at 10:51.
14  (Recess).
15  THE VIDEOGRAPHER: We are back on the
16  record with Clip 2 at 11:05.
17  Q. Ma'am, if you'll look at Exhibit 26.
18  (Exhibit 26 marked).
19  Q. We looked at this before, it's Exhibit
20  twen -- Trial Exhibit 26. In this e-mail, where
21  it says, As I told VdV, can you tell --
22  MR. MCKEEBY: Are you pulling --
23  Q. -- me who that is?
24  MR. MCKEEBY: Are you pulling it up?
25  MR. PRYOR: Oh, oh, I'm sorry. I've

Page 52

1  gotta share screen.
2  MR. MCKEEBY: Yeah, no worries.
3  MR. PRYOR: Yes, I will, yes, I will
4  pull it up. I thought I was. Let me share
5  screen. Okay. Maybe that's it. I may have the
6  wrong one up there, but I'll get the right one
7  now.
8  Q. Okay. We talked about this e-mail, it's
9  Exhibit 26. In the middle of the first paragraph,
10  it says, As I told VdV.
11  Do you know who that is?
12  MR. MCKEEBY: I, I still don't think
13  you have the right -- Bobby, I don't think you
14  have the right document pulled up. At least I
15  don't have it on my screen.
16  MR. PRYOR: What, what are you guys,
17  what are you guys looking at?
18  MR. MCKEEBY: I've got the --
19  MR. PRYOR: You're looking at Exhibits
20  --
21  MR. MCKEEBY: -- the deposition
22  notice.
23  THE WITNESS: Same.
24  MR. PRYOR: Huh. Mine says -- new
25  share then. Let's try that. Yes, how about this.

Page 61

1   punished?
2       MR. MCKEEBY: Same objection.
3   A. I believe --
4       MR. MCKEEBY: Counsel, you need to
5   wrap up.
6   Q. I am. I -- you -- what was your answer
7   and then I'll conclude. What was your answer?
8   A. I believe in the process, and I -- that's,
9   that's my answer. I trust the process.
10      MR. PRYOR: All right. I've already
11  stated on the record our position on this. And I
12  do think I'm at the one-hour mark, and maybe
13  slightly over, but if you count all the colloquy,
14  and there frankly wasn't that much, I think I'm
15  right at it. I appreciate your patience, Counsel,
16  because we had a lot to cover in a short period of
17  time. I pass the witness.
18      MR. MCKEEBY: No questions at this
19  time. Thank you, Ms. Lacore.
20      THE VIDEOGRAPHER: Going off the
21  record at 11:17.
22      THE REPORTER: What about signature?
23      MR. PRYOR: Hang on. What about, what
24  about Ed?
25      MR. GREENFIELD: You need to ask the

Page 62

1   union, to get us on the record, please.
2       MR. MCKEEBY: Fine. Sorry, Ed.
3       MR. CLOUTMAN: We have no questions.
4       THE VIDEOGRAPHER: Going off the
5   record at 11:17.
6       THE REPORTER: Signature?
7       MR. PRYOR: Thank you.
8       MR. MCKEEBY: Yeah, we'll read and
9   sign, if you'll send it to me, as the one -- same
10  as the one yesterday. Same, same copy request as
11  well.
12      MR. CLOUTMAN: As with us.
13      THE REPORTER: Anyone else?
14      MR. CLOUTMAN: Yes, the union wants a
15  condensed copy only.
16      THE REPORTER: Mr. Greenfield?
17      MR. GREENFIELD: Yes.
18      (Deposition concluded at 11:17 a.m.)

Page 63

1   CHANGES AND SIGNATURE
2   WITNESS NAME: SONYA LACORE   DATE: JUNE 24, 2022
3   PAGELINE   CHANGE      REASON
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

Page 64

1   _____
2   _____
3       I, SONYA LACORE, have read the foregoing
4   deposition and hereby affix my signature that same
5   is true and correct, except as noted above.
6
7
8
9
                    _____
10                  SONYA LACORE
11
12  THE STATE OF _____)
13  COUNTY OF _____)
14
15      Before me, _____, on
16  this day personally appeared SONYA LACORE, known
17  to me (or proved to me under oath or through
18  _____) (description of
19  identity card or other document)) to be the person
20  whose name is subscribed to the foregoing
21  instrument and acknowledged to me that they
22  executed the same for the purposes and
23  consideration therein expressed.
24      Given under my hand and seal of office
25  this _____ day of _____,

16 (Pages 61 to 64)

### Page 65

```
1    _____.
2
3
4         _____
          NOTARY PUBLIC IN AND FOR
5         THE STATE OF _____
          COMMISSION EXPIRES: _____
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

### Page 66

```
1       IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
2                 DALLAS DIVISION
3    CHARLENE CARTER,      )
                           )
4       Plaintiff,         )
                           )
5    VS.                   ) CIVIL ACTION
                           )
6                          ) NO.: 3:17-cv-02278-X
     SOUTHWEST AIRLINES CO.,   )
7    AND  TRANSPORT WORKERS    )
     UNION OF AMERICA, LOCAL   )
8    556,                  )
                           )
9       Defendants.        )
10
11         REPORTER'S CERTIFICATION
12         DEPOSITION OF SONYA LACORE
13              JUNE 24, 2022
14
15    I, Melody A. Monk, Certified Shorthand
16  Reporter in and for the State of Texas, hereby
17  certify to the following:
18    That the witness, SONYA LACORE, was duly sworn
19  by the officer and that the transcript of the oral
20  deposition is a true record of the testimony given
21  by the witness;
22    That the deposition transcript was submitted
23  on June 29, 2022 to the witness or to the attorney
24  for the witness for examination, signature and
25  return to me by July 28, 2022;
```

### Page 67

```
1     That the amount of time used by each party at
2  the deposition is as follows:
3  BOBBY G. PRYOR.....01 HOUR(S):06 MINUTE(S)
4     That pursuant to information given to the
5  deposition officer at the time said testimony was
6  taken, the following includes counsel for all
7  parties of record:
8  FOR THE PLAINTIFF:
9     MATTHEW D. HILL
       Pryor & Bruce
10     302 North San Jacinto
       Rockwall, Texas 75087
11     972.771.3933
       Mhill@pryorandbruce.com
12
13     MATTHEW B. GILLIAM
       National Right to Work Legal Defense
14        Foundation, Inc.
       8001 Braddock Road
15     Suite 600
       Springfield, Virginia 22160
16     703.321.8510
       Mbg@nrtw.org
17
18
19  FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
20     PAULO B. MCKEEBY
       Reed Smith
21     2850 North Harwood Street
       Suite 1500
22     Dallas, Texas 75201
       Pmckeeby@reedsmith.com
23
24
25
```

### Page 68

```
1  FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
   AMERICA LOCAL 556:
2
     EDWARD B. CLOUTMAN, III
3    Law Offices of Edward Cloutman III
     3301 Elm Street
4    Dallas, Texas 75226
     214.232.9015
5    Ecloutman@lawoffices.email
6
     ADAM S. GREENFIELD
7    Cloutman & Greenfield, PLLC
     3301 Elm Street
8    Dallas, Texas 75226
     Agreenfield@candglegal.com
9
10    That $_____ is the deposition officer's
11 charges to the Plaintiff for preparing the
12 original deposition transcript and any copies of
13 exhibits;
14    I further certify that I am neither counsel
15 for, related to, nor employed by any of the
16 parties or attorneys in the action in which this
17 proceeding was taken, and further that I am not
18 financially or otherwise interested in the outcome
19 of the action.
20    Certified to by me this 27th day of June,
21 2022.
22
23
         _____
24       Melody A. Monk, RPR
         Texas CSR No. 3613
25       Expiration Date: 10/21/2022
```

17 (Pages 65 to 68)

Sonya Lacore

Page 69

| | |
|---|---|
| 1 | MELODY MONK REPORTING |
| | Firm Registration No. 10821 |
| 2 | 1999 McKinney Avenue, No. 1404 |
| | Dallas, Texas 75201 |
| 3 | 888.988.5317 (phone and fax) |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

18 (Page 69)