

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLENE CARTER,          )
                          )
        Plaintiff,        )
                          )
VS.                       ) CIVIL ACTION
                          )
SOUTHWEST AIRLINES CO.,   ) NO.: 3:17-cv-02278-X
AND TRANSPORT WORKERS     )
UNION OF AMERICA, LOCAL   )
556,                      )
                          )
        Defendants.       )

---------------------------------

VIDEOCONFERENCE ORAL AND VIDEOTAPED DEPOSITION OF
SONYA LACORE
JUNE 24, 2022

---------------------------------

VIDEOCONFERENCE ORAL AND VIDEOTAPED DEPOSITION
OF SONYA LACORE, produced as a witness at the
instance of the Plaintiff, and duly sworn, was
taken in the above-styled and numbered cause on
June 24, 2022, from 9:57 a.m. to 11:17 a.m., via
Zoom Videoconference, before Melody A. Monk, CSR
in and for the State of Texas, reported by machine
shorthand, with the witness located in Dallas,

## Page 2

1    Texas, pursuant to the Federal Rules of Civil
2    Procedure, and the provisions stated on the record
3    or attached hereto.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Page 3

1        A P P E A R A N C E S
2    (All parties appearing via Zoom Videoconference)
3
4    FOR THE PLAINTIFF:
5        BOBBY G. PRYOR
         Pryor & Bruce
         302 North San Jacinto
6        Rockwall, Texas 75087
         972.771.3933
7        Bpryor@pryorandbruce.com
8
9        MATTHEW B. GILLIAM
         National Right to Work Legal Defense
         Foundation,   Inc.
10       8001 Braddock Road, Suite 600
         Springfield, Virginia 22160
11       703.321.8510
         Mbg@nrtw.org
12
13
14   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
15       PAULO B. MCKEEBY
         Reed Smith
         2850 North Harwood Street
16       Suite 1500
         Dallas, Texas 75201
17       Pmckeeby@reedsmith.com
18
19   FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
     AMERICA AND LOCAL 556:
20
21       EDWARD B. CLOUTMAN, III
         Law Offices of Edward Cloutman III
         3301 Elm Street
22       Dallas, Texas 75226
         214.232.9015
23       Ecloutman@lawoffices.email
24
25

## Page 4

1        ADAM S. GREENFIELD
         Cloutman & Greenfield, PLLC
2        3301 Elm Street
         Dallas, Texas 75226
3        Agreenfield@candglegal.com
4
5    ALSO PRESENT:
         Lisa Block, Videographer
6        Charlene Carter
         Chris Maberry, Senior Attorney - Southwest
7            Airlines
         Kerrie Forbes, Associate General Counsel -
8            Southwest Airlines
         Lauren Armstrong, Paralegal - Southwest
9            Airlines
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1 (Pages 1 to 4)

Sonya Lacore

---

Page 5

INDEX

PAGE

Appearances.................................. 2

SONYA LACORE
  EXAMINATION BY MR. PRYOR.................. 7
Witness's Signature Page...................... 63
Reporter's Certificate Page................... 66

EXHIBITS
NO.  DESCRIPTION                          PAGE
3 - January 30, 2014 Email....................11
13 - October 13, 2014 Email.................--
14 - October 13, 2014 Email.................--
19 - President's Message - Social media, NEW
Android App and Contract Quickies.............35
21 - February 24 2017 Email.................--
66 - February 22, 2017 Email................37
38 - Read Before Fly February 22, 2017.........39
26 - October 13, 2014 Email................51
67 - February 23, 2017 Email...............--
73 - February 23, 2017 Email...............--

---

Page 6

1     THE VIDEOGRAPHER:  We are going on the
2   record June 24th, 2022 for the deposition of Sonya
3   Lacore in a case styled Charlene Carter versus
4   Southwest Airlines Company and Transport Workers
5   Union of America, Local 556, Civil Case No.
6   3:17-cv-02278-X, in the United States District
7   Court for the Northern District of Texas, Dallas
8   Division.  The time is now 9:57.
9         Will counsel state their appearances,
10  locations, and agreements or stipulations for the
11  record.  Following will the court reporter please
12  swear in the witness.
13        MR. PRYOR:  I'm Bobby Pryor and, along
14  with Matt Gilliam, we represent Charlene Carter.
15        MR. MCKEEBY:  And this is Paulo
16  McKeeby --
17        MR. PRYOR:  And I'm in, I'm in, I'm in
18  Rockwall, sorry.
19        MR. MCKEEBY:  That's all right.
20        MR. PRYOR:  I forgot you were asking
21  where we were.
22        MR. MCKEEBY:  And this is Paulo
23  McKeeby.  I represent Southwest Airlines, and I'm
24  in my office in Dallas, Texas.
25        MR. CLOUTMAN:  This is Ed Cloutman,

---

Page 7

1   I'm one of the two lawyers here representing
2   Transport Workers Union Local 556.  I'm in Dallas.
3         MR. GREENFIELD:  This is Adam
4   Greenfield.  I'm the other attorney representing
5   TWU Local 556, and I'm also at my home in Dallas.
6         SONYA LACORE,
7   having been first duly sworn, testified as
8   follows:
9         EXAMINATION
10  BY MR. PRYOR:
11      Q.  Would you state your name, please?
12      A.  Sonya Lacore.
13      Q.  Ms. Lacore, my name is Bobby Pryor.  I
14  represent Charlene Carter in this matter.
15        Who do you work for?
16      A.  I work for Southwest Airlines.
17      Q.  Are you represented by counsel today?
18      A.  Yes.
19      Q.  Who's your counsel?
20      A.  Paulo McKeeby.
21      Q.  And is that counsel also counsel for
22  Southwest in this lawsuit, Southwest Airlines?
23      A.  I'm so -- I am sorry, I'm gonna have to
24  see if I can get my volume up a little bit here
25  today.  Let me see.  I'm having a hard time

---

Page 8

1   hearing you.
2         Could you repeat?
3       Q.  Sure.
4         Does the attorney representing you at
5   this deposition today also represent Southwest
6   Airlines --
7       A.  Yes.
8       Q.  -- in, in this lawsuit?
9       A.  Yes.
10      Q.  And are you paying for that attorney or is
11  Southwest Airlines paying?
12      A.  I'm not paying for it.
13      Q.  And you don't think Southwest Airlines is?
14      A.  I, I don't really know.  I don't know how
15  that works.
16      Q.  Really?
17        Okay.  You just took an oath, correct?
18      A.  Yes.
19      Q.  And you take your oath seriously?
20      A.  Yes, I do.
21      Q.  You understand that a jury could be
22  viewing your testimony today?
23      A.  That a -- I'm sorry, I'm having such a
24  hard time hearing you.
25      Q.  Do you understand that a jury could be

---

Sonya Lacore

Page 9

1   viewing your testimony today?
2       A. Yes, I do.
3       Q. Will you answer my questions truthfully,
4   completely, and without evasion today?
5       A. Yes.
6       Q. And I'll ask you again, do you have any
7   understanding of who is paying Southwest Airlines'
8   attorneys in this matter?
9       A. I sincerely don't know how that works.
10      Q. If a Southwest employee sees another
11  employee committing a violation of company policy,
12  what should they do?
13          MR. MCKEEBY: Object to the form of
14  the question.
15          You can answer.
16          THE WITNESS: I'm sorry, what? Paulo,
17  will you, Paulo, will you --
18          MR. MCKEEBY: I, I made an objection,
19  but you're free to answer that question.
20          THE WITNESS: Oh.
21      A. I, I would encourage an employee to report
22  it.
23      Q. What was your position when you were first
24  hired by Southwest Airlines?
25      A. Flight attendant.

Page 10

1       Q. What year was that?
2       A. 2001.
3       Q. Were you at that time or subsequently ever
4   a member of the union at Southwest Airlines,
5   Local 556?
6       A. Yes.
7       Q. What years were you a member?
8       A. 2001 to 2004.
9       Q. Were you an active union member?
10      A. Can you explain what you mean by active?
11      Q. Someone who, I don't know, goes to
12  meetings, serves on committees, assists --
13      A. No.
14      Q. -- in helping the union, serving as a
15  director?
16      A. No, I was not.
17      Q. Okay. How would you define an active
18  union member?
19      A. Where my head automatically went was we
20  have active and inactive employees, when they're,
21  when they're working or not working, and so I just
22  wanted to make sure that I understood that.
23      Q. Okay. Then if you would go ahead and
24  answer my question, how would you define an active
25  union employee?

Page 11

1       A. I guess I would describe it as someone who
2   is an active flight attendant serving in the role
3   because of the dues they pay. So I would say
4   that -- I would consider that active.
5       Q. Were you aware in 2013 and early 2014 that
6   there were two competing slates of candidates for
7   offices for the Local 556?
8       A. I don't recall what was happening that
9   particular year. Could you be more specific?
10      Q. Do you re -- do you recall that Audrey
11  Stone was part of a group of candidates that ran
12  against another group of candidates, lost, and
13  then ended up being instated because the other
14  candidates were, I don't know, disqualified or
15  removed or --
16      A. I remember --
17      Q. -- complaints were brought against them?
18      A. I do, I do recall some of that.
19      Q. Okay. I'll, I'll tell you that was in
20  2013, early 2014.
21          Let me show you a document. I need
22  the first one, I need Exhibit 3.
23          (Exhibit 3 marked).
24      Q. Okay. This is Exhibit 3 to Stone's
25  deposition. Can you see this document?

Page 12

1       A. I cannot.
2       Q. How about now?
3       A. Yes.
4       Q. Okay. I'm gonna show you an e-mail from
5   Audrey Stone to you in January 2014.
6          Do you see that?
7       A. I do.
8       Q. Okay. I'm gonna read part of it and then
9   ask you questions.
10      A. Okay.
11      Q. By the way, is this a -- is that -- is
12  this a document you would receive in the regular
13  course of your business as, as your position?
14      A. Occasionally.
15      Q. So what was your position in 2014?
16      A. Hmm. I believe in 2014 I was a senior
17  director of strategy and onboard experience.
18      Q. Is that part of the inflight department or
19  something else?
20      A. Yes, it is part of the inflight
21  department.
22      Q. Tell the jury what inflight is.
23      A. Inflight is a group that leads our flight
24  attendants.
25      Q. So this says, Sonya, Heads-up, we have a

3 (Pages 9 to 12)

Sonya Lacore

## Page 13

1  movement of objectors, those that resign their
2  union membership and receive a small reimbursement
3  of their dues, and the board agreed that a
4  nonmember of 556 cannot represent TWU 556 on any
5  556 committee.
6         When she says "board" there, do you
7  understand her to be referring to the board of the
8  union?
9     A. I do.
10    Q. And then she says, Kent Hand is on CISM.
11       Do you know who Kent Hand is?
12    A. I do.
13    Q. Who's that?
14    A. A flight attendant.
15    Q. And it says, We instructed Eileen.
16       Do you know who Eileen is?
17    A. I do.
18    Q. Who's that?
19    A. Eileen leads our -- she's a flight
20  attendant, and she is also the chair of CISM.
21    Q. So she's in the union?
22    A. She's a member of the union because she
23  pays dues. She does not serve on their board.
24    Q. It says, We instructed Eileen to let him
25  know he couldn't serve on behalf of 556 anymore.

## Page 14

1  He is trying to cause her problems. I wanted you
2  to be aware. I am going to try to follow up with
3  him tomorrow, and I'm happy to speak to you
4  further if you have any questions. Sorry to bring
5  you more union drama.
6         Do you know what she's referring to
7  when she says "more union drama"?
8     A. I honestly don't remember. That was so
9  long ago.
10    Q. And do you recall what you did in response
11  to this e-mail?
12    A. I do not.
13    Q. Look at the response that you sent her.
14  And this says, on January 30, the same day, and
15  it's Sonya Lacore at WNCO.com. Is that your
16  company e-mail address?
17    A. Yes, it is.
18    Q. It says, Hey there, thanks for the
19  heads-up. I definitely learned something today.
20  I wasn't aware there was such a movement.
21       So would that be accurate, that at
22  that time in January 2014, you didn't know
23  anything about an objector movement?
24    A. Yes.
25    Q. Okay. Then it says, I'm sorry you have to

## Page 15

1  deal with it. Let me know if there is anything I
2  can do to assist.
3         Did I read that correctly?
4     A. Yes.
5     Q. And so if I understand correctly, the
6  president of the union reaches out to a member of
7  management at Southwest and says, we have
8  objectors, we have people that are objecting about
9  the union, and your response to her is, let me
10  know if there's anything I can do to assist,
11  correct?
12    A. That is what, that is what --
13       MR. MCKEEBY: Object --
14    A. -- I said here.
15       MR. MCKEEBY: Objection to the form of
16  the question.
17    Q. When you, when you say that's what it
18  says, is, is -- are you disagreeing with what you
19  wrote back on January 30 of 2014?
20    A. Not disagreeing at all. I'm, I'm -- I
21  don't know that -- well, I do know that what my
22  intent would have been was probably more related
23  to Kent Hand.
24    Q. To what?
25    A. To Kent Hand, the flight attendant.

## Page 16

1     Q. And so what were you going to do to assist
2  with Kent Hand, apply the --
3     A. I --
4     Q. -- the power of the company against an
5  objecting union member that's having problems with
6  the union?
7     A. No, sir.
8        MR. MCKEEBY: Object to the form of
9  the question.
10       You can answer.
11    Q. So what were you gonna do regarding Kent
12  Hand? Because you don't ask anything about what
13  is Kent Hand doing, do you?
14    A. When anything like this comes across my
15  desk, what I mean by assisting is I will pass it
16  off to someone on my team to research and explore,
17  and at that point I'm assuming that's what I did.
18  This was a very long time ago.
19    Q. Okay. So we can assume, since Southwest
20  has been asked to produce all documents about
21  this, that we're gonna see some documents at trial
22  that show us exactly what you just told us, right?
23       MR. MCKEEBY: Object to the form of
24  the question.
25       MR. PRYOR: I'm inviting, I'm inviting

Page 17

1    Southwest to do that.
2            MR. MCKEEBY:  Thank you.
3            Q.  And so you, you be -- since you've raised
4    that issue, we want the jury to be aware that
5    that's what you're swearing to now.  And,
6    therefore, I'm sure we'll see the documents that
7    support that.
8            So you actually weren't saying what
9    can I do to assist, you're saying what can I do
10   about Ken -- Kent Hand.  And so what did you do
11   about Kent Hand?
12           A.  I don't remember.
13           Q.  Okay.  So you asked what can I do to
14   assist.
15           By the way, did you know how many
16   objectors there were at that time?
17           A.  I did not remember.  I don't --
18           Q.  Did you --
19           A.  I don't know if I did.
20           Q.  Did you reach out to the objectors and
21   offer them to do anything that Southwest could do
22   to assist them?
23           A.  I don't recall doing any of that.
24           Q.  Okay.  So if you did, I assume we would
25   see those e-mails as well, correct?

Page 18

1            MR. MCKEEBY:  Object to the form of
2    the question.  She doesn't know what was produced
3    and not produced in the case.
4            Q.  Well, once again, ma'am, we're, we're
5    willing to allow you to come -- Southwest can
6    search all their files, we'll ignore any deadlines
7    for documents, forgive any failure to produce, and
8    we can't wait to see those documents at trial
9    where you reached out to the objectors to offer
10   them all the assistance you could provide.  Okay?
11           MR. MCKEEBY:  Object --
12           Q.  You understand --
13           MR. MCKEEBY:  Objection to the form.
14           Q.  -- that we're making that offer to you?
15           MR. PRYOR:  Let me finish my question,
16   Counsel.
17           Q.  Go ahead, ma'am.
18           MR. MCKEEBY:  Objection to the form --
19           Q.  Do you understand we're making --
20           MR. MCKEEBY:  -- of the question.
21           Q.  Do you understand we're making that offer
22   to you?
23           MR. MCKEEBY:  You're making that offer
24   to Southwest.
25           But you can answer, if you understand.

Page 19

1            Q.  Fair enough, but you can answer.  You
2    understand that's what I'm doing?
3            A.  I understand that you are doing what?
4    What am I answering?
5            Q.  Now, that, that, that we're, we're looking
6    forward to, since you -- this is the kind of, of
7    service you would provide to all of the inflight
8    flight attendants, whether they're objectors or
9    not objectors, surely you wouldn't be favoring the
10   union; that you reached out to the objectors and
11   offered them all of the assistance you could
12   provide as well, and I'm offering to let you prove
13   to the jury that that is, in fact, what Southwest
14   did.
15           MR. MCKEEBY:  Objection --
16           Q.  Do you underst --
17           MR. MCKEEBY:  -- compound.  Object to
18   the form of the question as compound and vague.
19           You can answer.
20           A.  I sincerely don't know what I'm answering
21   here.  I really don't.  I, I understand that you
22   have something you're trying to say to me.  I
23   don't understand what, what you're asking.
24           Q.  I -- I'm, I'm saying you did not reach out
25   to the objectors, and any indication that you did

Page 20

1    is untruthful under your oath, that's what I'm
2    saying.  You're disagreeing with that?
3            MR. MCKEEBY:  No --
4            A.  I --
5            MR. MCKEEBY:  -- she never made such
6    a, she never made such a representation, Counsel.
7            A.  I, I don't remember.
8            MR. PRYOR:  She just said --
9            A.  But I don't --
10           Q.  You don't remember whether or not you
11   reached out to an unknown number of objectors.
12           Okay.  So let's go to -- and see what
13   -- let's see how Ms. Stone interpreted your
14   e-mail.  She says, Sonya -- this is her response
15   to you -- You may want to leave your directors and
16   let your -- leave your directors and base managers
17   know as well that any nonmember of TWU may not be
18   a representative of Local 556.  And this says it
19   would apply to all the meetings.
20           Do you recall that?
21           A.  I don't recall it.  It's so long ago.
22           Q.  Okay.  If you -- do you know what you
23   would have done in response to that?  Would you
24   have kicked off objecting members from committees
25   of Southwest?  You wouldn't have done that, right?

Sonya Lacore

## Page 21

1          MR. MCKEEBY: Objection --
2     A. I --
3          MR. MCKEEBY: -- to -- object to the
4  form of the question. What committees are you
5  talking about?
6          MR. PRYOR: Any committee. Any
7  committee --
8          MR. MCKEEBY: Any committee.
9          MR. PRYOR: -- any meeting, anything
10 to do with Southwest where you're, you're -- she's
11 saying we want these nonunion members off of
12 anything to do with meetings with Southwest.
13         MR. MCKEEBY: Yeah, so what's the
14 question?
15         MR. PRYOR: Unless you're directors
16 and -- well, it's the question now.
17    Q. So did you or did you not comply with her
18 request?
19    A. I don't recall what I did.
20    Q. Do you think it would be appropriate to
21 comply with her request?
22         MR. MCKEEBY: Her request to, to, to,
23 to kick union members off of committees?
24         MR. PRYOR: As the request in the
25 e-mail that we just read. It's on the screen.

## Page 22

1  The jury can read it. She can read it.
2     A. I can read it, yes. And what I would say
3  about this is -- and I am -- I'll just be really
4  transparent with you. I did not, especially in
5  2014, did not understand everything about the, the
6  rules and the policies of a union, 556
7  specifically. So what I do know is that
8  committees that we held were joint by the company
9  and the union. And they -- if it was partially --
10 because they're joint, they are paid for jointly.
11 CISM is paid for jointly by Southwest and the
12 union. So I don't -- I, I know that I didn't know
13 a lot about policies then. So, quite honestly, I
14 really don't remember what I did. That is, that
15 is the honest truth.
16    Q. So here's where she -- that's the same
17 e-mail. And then we'll scroll up. And you
18 forwarded this message from her to inflight
19 directors.
20         Do you see that?
21    A. I do.
22    Q. And do you know what happened as a result
23 of that?
24    A. I don't remember.
25    Q. Do you know that objectors were, in fact,

## Page 23

1  kicked off committees and had to file a lawsuit in
2  order to have their rights understood? You don't
3  know that?
4          MR. MCKEEBY: Well, she had -- ask her
5  the question. She hadn't a -- said whether or not
6  she knows it or not.
7     A. I, I don't, I honestly don't remember what
8  happened. There's a volume of work that comes
9  across my desk. I don't remember 2014.
10    Q. 2014, you don't remember if you
11 disenfranchised hundreds of objectors and they had
12 to file a lawsuit to protect their rights? You
13 don't remember that; is that right?
14         MR. MCKEEBY: Object, object to the
15 form of the question as argumentative and vague.
16         You can answer.
17    A. I just don't remember what ha -- hundreds,
18 I don't remember pe -- I don't remember names
19 during that time. I don't remember any of that.
20    Q. That's not the kind of thing you'd
21 remember, correct?
22    A. Please restate.
23    Q. That's not the kind of thing you would
24 remember because it was eight years ago, right?
25         MR. GREENFIELD: Objection, form.

## Page 24

1     A. I remember there being something going on.
2  I do not remember all of the specifics.
3     Q. Do you know as you sit here today whether
4  or not the collective bargaining agreement permits
5  Southwest and the union to agree to kick objectors
6  off of joint company and union committees?
7     A. I didn't understand it at that time. I
8  know that I didn't.
9     Q. I'm asking, do you understand it as you
10 sit here today that you can't do that?
11    A. I, I, I didn't know that. I don't.
12 That -- I'm ...
13    Q. You, you don't know that as you sit here
14 today. What's your position today?
15    A. Vice president.
16    Q. Of what?
17    A. Inflight operations.
18    Q. That's a very senior position, correct?
19    A. Yes, sir, it is.
20    Q. You have thousands of people under your
21 purview, correct?
22    A. I do.
23    Q. And at least 16,000 of them or so, maybe
24 fifteen thou -- are, are union members, and you
25 don't know the answer to that question as you sit

MELODY MONK REPORTING
888.988.5317

Sonya Lacore

Page 25

1    here today, correct?
2         MR. MCKEEBY:  What, what question?
3         MR. PRYOR:  The question of does she
4    know whether or not she can still assist the union
5    in kicking people off of committees, nonunion
6    objectors.
7    Q.  Do you know?
8    A.  I have a team of experts that work on
9    that, and so I delegate every bit of that work.
10   They --
11   Q.  Let's look at Exhibit --
12   A.  -- they will know.
13   Q.  Oh, I'm sorry.
14        Okay.  You, you rely on someone else
15   for that, correct?
16   A.  That is correct.
17   Q.  Who is Brian -- how do you pronounce his
18   last name, Talburt?
19   A.  Brian is a flight attendant.
20   Q.  Okay.  And someone that you knew certainly
21   back as of 2014, correct?
22   A.  Yes.
23   Q.  Did you know him before then?
24   A.  Yes.  Flight attendant in Phoenix.
25   Q.  So how long had you known him?  How long

Page 26

1    have you known him as you sit here today, I guess?
2    A.  I probably met him when I was a leader in
3    the Phoenix space in 2007 or 2008.
4    Q.  Okay.  So do you recognize this e-mail,
5    the portion that's on the screen?
6    A.  I -- Brian sent me a lot of e-mails.  So I
7    can read it right now, but I don't remember.
8    Q.  I'm gonna read it to you.
9         You didn't -- you haven't seen this
10   document in the last few days?
11   A.  No, sir.
12   Q.  So, first of all, I note that he sends it
13   to a different e-mail address than the one you
14   identified as your business address before,
15   correct?
16   A.  Yes.
17   Q.  All right.  And he says, So my final
18   installment on this subject.  Shipman stepped up
19   to the plate.  It is maddening trying to reason
20   with these sheeple.  The issue becomes the tumor.
21        Then he goes on to say -- I'm going to
22   read a couple of lines down -- Corliss
23   particularly is something we have not seen before
24   and is incredibly dangerous.
25        Who is Corliss?

Page 27

1    A.  Corliss is a flight attendant and also
2    currently serves on, on the union team.
3    Q.  And he says, The attitude she spawns is
4    Northwest Airlines in the '80s.  People listen and
5    people read.
6         Do you know how what he's talking
7    about, how she's dangerous, incredibly dangerous?
8    A.  I don't know what he -- I, I can't assume
9    what he meant.
10   Q.  Okay.  I'm asking how you understood it.
11   Let's try that.
12   A.  Brian is someone who -- frequent pen pal,
13   and he is very passionate when he doesn't agree
14   with things that people do or say, and so I can
15   only assume that's what he meant.
16   Q.  He says -- then he says, I am all about
17   targeted assassinations.
18        Now, if you read this e-mail, maybe
19   you'll remember that, maybe that will help you
20   recall, but he's talking about targeted
21   assassinations using social media.
22        Do you recall that?
23        MR. MCKEEBY:  What, what, what is it?
24   Where is that?  Where does it say social media?
25        MR. PRYOR:  Go to the next paragraph.

Page 28

1    Q.  Social media is by far the major source of
2    reach and must be used to our advantage.
3         He's talking about using social media
4    for targeted assassinations.  You don't recall
5    that?
6         MR. GREENFIELD:  Objection, form.
7    A.  I don't remember this.  I --
8    Q.  Okay.
9    A.  What I can tell you is Brian later got
10   into some challenges with his own social media
11   posts, and I know my team investigates that.
12   Q.  Well, you certainly didn't have them
13   investigate this one, the one he sent you, did
14   you?
15   A.  I don't remember if I did or not.
16   Q.  Oh.  So --
17   A.  I get a lot of e-mail.
18   Q.  -- once again, we look forward to
19   Southwest showing us the documents where you
20   reported him for this comment.  I want to read
21   something else in here.
22        MR. MCKEEBY:  Object to the sidebar.
23   Q.  In that same paragraph about --
24        MR. MCKEEBY:  Just ask, ask the
25   witness questions, please.

7 (Pages 25 to 28)

## Page 29

1    MR. GREENFIELD: Objection to the
2  form --
3    Q. -- about --
4    MR. GREENFIELD: -- as well.
5    Q. -- about targeted assassinations.
6    I am sure with her dreadful work
7  history there could be opportunity -- he's talking
8  about an opportunity to fire her, isn't he, and
9  he's talking to you, a member of senior
10  management, true?
11    A. Apparently.
12    Q. Yes?
13    A. Yes, he is talking to me in this e-mail.
14    Q. Okay. I didn't say -- I'll take your yes.
15  I didn't ask you if he's talking; he obviously
16  wrote the e-mail. You answered my question.
17    Now, he goes on to say, She will play
18  very well to the heavy inner city minority crowd
19  coming on board soon. She will be their voice.
20  She will be a huge threat in our unco -- our
21  upcoming election as well.
22    That's racist, isn't it? I'm sure you
23  reported that.
24    MR. MCKEEBY: Object to the form of
25  the question as compound and argumentative.

## Page 30

1    MR. PRYOR: Okay. We'll go to the
2  first one.
3    MR. MCKEEBY: What's the question?
4    Q. That's racist, what -- isn't it?
5    A. I'm reading this for the first time.
6    Q. You don't think it's, you don't think it's
7  racist?
8    A. I'm asking you --
9    MR. MCKEEBY: You asked -- let her
10  answer the question, Counsel.
11    A. I'm asking you --
12    MR. MCKEEBY: She's reading it, and
13  she's gonna answer the question.
14    Q. I just read it to you, ma'am. You want me
15  to read it again? I'm on a limited time. Is that
16  what we're doing? I just read it to you and it's
17  in front of you. And --
18    MR. MCKEEBY: Let -- if you can let
19  her --
20    Q. -- you can tell us if this is racist.
21    A. It's --
22    MR. MCKEEBY: She could, she could
23  tell you if you'd give her the opportunity.
24    A. Yeah.
25    Q. Please do.

## Page 31

1    A. I, I will. I will like to just read over
2  it again.
3    I -- are you, are you mi -- are you
4  referencing the minority crowd part?
5    Q. I'm referencing what I read, but you just
6  read that paragraph. Tell us whether or not you
7  think these are racist comments.
8    A. I, I, I don't see it as racist, but --
9    Q. Okay.
10    A. -- maybe you do. I don't.
11    Q. And so he's talking about -- then in the
12  next paragraph, he's talking about how social
13  media can use -- be used, and in the paragraph
14  below that he says, I would highly encourage
15  targeting people.
16    And he sent this to you; what did you
17  do in response?
18    A. I don't remember what I did.
19    Q. Okay. By the way, he says at the end, he
20  says, I've sent this to your personal e-mail. I
21  totally get the paper trail thing, nobody can be
22  fully trusted except me.
23    Is that what he's doing, he's sending
24  you -- by the way, he said final installment.
25  This is the only e-mail we've received. Where are

## Page 32

1  the other installments? Have you seen them? Do
2  you know anything about that?
3    MR. MCKEEBY: Object to the form of
4  the question. It's compound.
5    You can answer.
6    Q. Do --
7    MR. PRYOR: I'll uncompound it.
8    Q. He says --
9    MR. MCKEEBY: Thank you.
10    Q. -- this is my final installment.
11    Do you recall how many installments
12  there were?
13    A. I do not.
14    Q. So did you -- the jury will be able to
15  have this; we read part of it to them. Do you
16  interpret this as Brian saying, Let's use social
17  media to target people we want to get rid of to
18  help -- and he phrases it our union, our upcoming
19  election. Do you interpret it that way as well?
20    A. I, I don't. And if, if you don't mind,
21  I'd like to say why. Because it was not --
22    Q. Sure.
23    A. -- un -- it was not uncommon for Brian --
24  this is one of many e-mails that Brian would send
25  on whatever the topic of the week was for him.

Sonya Lacore

Page 33

1   And so I honestly began to take his e-mails
2   very -- just a little bit too passionate, and if
3   you -- I, I actually do not interact with him
4   anymore at all for that reason.
5       Q.  Well, he says he's interacting with you on
6   October 13th.  Not too long after that, he sends
7   an e-mail to Ms. Stone, it's Exhib -- Trial
8   Exhibit 26, and he says, I found this.  It really
9   has nothing to do with the topic at hand, but it's
10  an illustration of casual behind the scenes
11  conversations we have and particularly re: social
12  media.  I along with Mike and Sonya had a meeting
13  last summer with VdV to discuss social media as a
14  tool together -- all caps -- with management and
15  FAS to deliver and reinforce messages.
16      Do you recall that?
17      A.  I, I don't recall this e-mail.  I recall
18  that meeting.
19      Q.  Is he, is he lying when he says that's
20  what you were doing?
21          MR. MCKEEBY:  Well, objection.  These
22  --
23          You can answer.
24      A.  I will tell you what the meeting was
25  about.

Page 34

1       Q.  No, I'm asking you if he's lying in this
2   e-mail.  I didn't ask about the meeting.  Is he
3   telling the truth in what I just read in that
4   e-mail?
5          MR. MCKEEBY:  Object to the form of
6   the question.
7          You can answer.
8       A.  Is he telling the truth that he had a
9   meeting with us, yes.
10      Q.  So is anything that I read to you that he
11  said not true?
12      A.  I'm just rereading it.  If you'll give me
13  a moment.
14          MR. MCKEEBY:  And, Counsel, what part
15  are you asking her about, the first paragraph
16  here?
17          MR. PRYOR:  The part that I just read.
18          MR. MCKEEBY:  And what is that, the
19  first paragraph?
20      A.  Yeah, I'm ...
21          MR. PRYOR:  It's most of the first
22  paragraph.
23      A.  I'll tell you what, let's do this, because
24  I'm not trying to be difficult here, and I think
25  you feel that I am.  If you could tell me exactly

Page 35

1   which part, then I'm happy to answer the question.
2       Q.  Okay.  So I -- I've, I've read it, it's in
3   front of you.  I've asked it twice, and I'm on a
4   limited time schedule.  And nothing I've -- well,
5   let's try it this way.  Nothing I've read to you
6   from this e-mail struck you, when I read it to
7   you, that, wow, that's not true, did it?  Surely
8   if you hear something untrue, that strikes you,
9   right?
10      A.  If I hear something untrue, yes.  But
11  there is a, there is a --
12      Q.  Let's go to Exhibit -- go to Exhibit 19.
13  If I can --
14          (Exhibit 19 marked).
15      Q.  This is -- that's not the one I want, but
16  I'm going to find.  There it is.
17          MR. MCKEEBY:  There it is.
18      Q.  This Exhibit 19 is a message from Audrey
19  Stone, as president of the union, to the flight
20  attendants.
21          Do you see these messages?  Do you get
22  those?
23      A.  Excuse me, I only get them if someone
24  sends them to me.
25      Q.  Do you, do you, do you regularly get

Page 36

1   these?
2       A.  Not regularly, no.
3       Q.  Okay.  Do you recall a President's Message
4   from Ms. Stone where she said she was working with
5   Southwest Airlines to make their social media
6   policy not so ambiguous?  Do you recall that?
7       A.  I recall her talking with us about that.
8       Q.  Okay.  And she also says in there that
9   most of the complaints from social media have been
10  flight attendants complaining about flight
11  attendants, and she encourages them not to do
12  that, to keep it in-house.
13          Did she discuss that with you, or do
14  you recall that?
15      A.  I don't remember the in-house part, but I
16  do remember us having discussions, especially her
17  with Mike, around -- this was the -- this was kind
18  of the beginning of the social media activity with
19  our group.  And I, I do recall that we were having
20  multiple challenges with people posting, and we
21  were trying to navigate how to best handle that,
22  because it was, it was new to all of us.
23      Q.  So Exhibit --
24          THE REPORTER:  I'm sorry, it was what?
25  I'm sorry, it was what?

9 (Pages 33 to 36)

Page 37

1    THE WITNESS:  It was new to all of --
2  it was just kind of a new arena that our flight
3  attendants were engaging in more frequently than
4  they ever had.
5    Q.  Exhibit 66 is Audrey Stone's complaint to
6  Southwest Airlines about Charlene Carter, and you
7  are copied on that e-mail.
8    (Exhibit 66 marked).
9    Q.  It's February 22, 2017.  Do you recall
10 that?
11   A.  I don't -- I, I don't recall everything
12 that's in this.  I -- but I, I do see that I'm
13 copied.
14   Q.  So is it standard policy at Southwest
15 Airlines that when someone wants to make a
16 complaint about another employee, that they not
17 only include their base manager, but the vice
18 president of inflight services; is that, is that
19 what standard process is?
20   A.  I wouldn't say --
21     MR. MCKEEBY:  Object to the form of
22 the question.
23     You can answer.
24   A.  I wouldn't say it's standard.  I think it
25 depends on the person who files it.  Some, some

Page 38

1  people do, some people don't.
2    Q.  So you typically then receive -- every
3  time someone has a complaint about a, a coworker,
4  they typically include you on those e-mails,
5  correct?
6      MR. MCKEEBY:  Objection.
7    A.  That's not --
8      MR. MCKEEBY:  Mischaracterizes her
9  testimony.
10     You can answer.
11   A.  That's not correct.  That's not, that's --
12   Q.  Okay.
13   A.  -- not every time.
14   Q.  But, but that's what Audrey Stone did,
15 isn't it, the person that you were working with on
16 social media, the person you were -- had
17 corresponded with Brian about targeted
18 assassinations, right?
19     MR. MCKEEBY:  Object to the form of
20 the question.
21     You can answer.
22   A.  She copied me here.  I'm not -- that's
23 not -- some people do, some people don't.  That's
24 -- with, with such a large group, it depends on
25 the person.

Page 39

1    Q.  And, and most people also include someone
2  like Naomi Hudson.  Who's Ms. Hudson?
3      MR. MCKEEBY:  Objection to the form.
4      MR. GREENFIELD:  Objection to the
5  characterization.
6      MR. MCKEEBY:  You can answer.
7    A.  Naomi Hudson is for -- no longer works for
8  us, but she worked for us in the labor
9  negotiations and also the labor relations team.
10   Q.  So the person that negotiates with the
11 union -- by the way, Audrey Stone was on that
12 negotiating committee at that time in 2017, wasn't
13 she?
14   A.  I believe so.
15   Q.  And she includes the person that
16 negotiates union contracts on her complaint.  Is
17 that something that gets normally done as well?
18   A.  I can't answer that.  I don't know.
19   Q.  Let's look at Exhibit 38.
20     (Exhibit 38 marked).
21   Q.  The very same day -- let's go back to
22 Exhibit 19.  That was sent out at -- 66, I'm
23 sorry.  It was sent out at around 9 o'clock
24 Central Time.
25     That very same day, February 22nd, you

Page 40

1  sent out Read Before Fly, and it's a Read Before
2  Fly just before Ms. Stone makes her complaint,
3  warning people about violations of social media
4  policy.  Do you see that?
5    A.  Yes.
6    Q.  And that's just a coincidence, right?
7    A.  We were dealing with multiple issues at
8  that time, so I can't tell you what was in my head
9  at the time that I wrote this, but I can tell you
10 that all of the people who authored this, we were
11 the ones having to do the volume of work with
12 multiple social media, which is why we, to my
13 point earlier, we felt like it was time for us to
14 really educate our group because they -- we owed
15 it to them to let them know that we have a, a firm
16 policy.
17   Q.  And it's just happenstance that it was the
18 same day that Audrey Stone made her complaint,
19 right?
20   A.  I don't know that it was happenstance.  I
21 think we were all talking about this for months.
22   Q.  Did you talk to Audrey Stone about her
23 complaint?
24   A.  I never reached out to her to talk to her
25 about it.  Did she try to share some of it with me

10 (Pages 37 to 40)

Sonya Lacore

---

Page 41

 1  at times, possibly. I don't remember. She
 2  talked al -- we -- any time you have --
 3          MR. MCKEEBY: Yeah, yeah, you've told
 4  her (sic) you don't remember.
 5          MR. PRYOR: Wait, what was that?
 6  Don't, don't instruct the witness how to answer a
 7  question. I don't know who did that.
 8          MR. MCKEEBY: I --
 9          MR. PRYOR: That's inappropriate. I
10  object.
11          MR. MCKEEBY: That was -- that --
12  okay. Objection noted, and it was Mr. McKeeby.
13  I'm just advising the witness that she's answered
14  your question.
15          MR. PRYOR: Okay. I -- that's --
16  we'll reserve all rights. Okay.
17          MR. MCKEEBY: All rights as --
18      Q. And let's look at --
19          MR. PRYOR: All rights -- no, to take
20  appropriate action for improperly instructing a
21  witness during a sworn deposition.
22          MR. MCKEEBY: I understand you're
23  reserving all rights.
24          MR. PRYOR: Okay.
25      Q. So let's look at February 23rd, this same

---

Page 42

 1  time period, it's Exhibit 21, I've got to find it,
 2  it's SWA 44. 4484, here we go.
 3          So February 22nd, we have these --
 4  this strange coincidence. And then on
 5  February 23rd, this is Julie O'Grady to Maureen
 6  Emlet and others saying: Deborah Edwards and I
 7  received the attached e-mails from Brian
 8  containing additional social media posts. We can
 9  review this information and determine next steps.
10          Is this another coincidence, or is
11  this the targeted --
12          MR. MCKEEBY: Object to the --
13      Q. -- assassination that you and Brian
14  e-mailed about?
15          MR. MCKEEBY: Object to the form of
16  the question. And object to the characterization.
17          You can answer.
18      A. I have no idea.
19      Q. You know nothing about this, correct?
20      A. I don't remember this at all.
21      Q. Let's see if you remember some of the
22  others, then. Let's go to 655, the same exhibit.
23          MR. MCKEEBY: What is the number on
24  this exhibit, please?
25          MR. PRYOR: 21. It's the Trial

---

Page 43

 1  Exhibit 21.
 2          MR. MCKEEBY: Right. Understood.
 3      Q. Okay. So, so look, look here. Okay.
 4  Let's try -- how about this one, this is an e-mail
 5  in which they talk about all of the information
 6  that was just discussed that Brian provided, and
 7  look at this e-mail. It's against Jeanna Jackson,
 8  Beverly Berlanger, Michelle Foley, Charlene
 9  Carter, Greg Hofer, Mol -- I mean, we can go
10  through this, the jury will get it. The -- and
11  all these people that he went through their
12  Facebook posts and provided to management,
13  just like he talked about with you, and every
14  single one of them is a union objector or a
15  union -- opposed to the union leadership, and you
16  know nothing about this, correct?
17      A. I don't --
18          MR. MCKEEBY: Object to the
19  characterization.
20          You can answer his -- the very last
21  part of what he said, which was the question,
22  which is whether or not you know about this.
23      A. I, I don't, I don't remember any of this.
24  And I'm not copied on this e-mail.
25      Q. So you, you don't think you're on any of

---

Page 44

 1  these e-mails; is that right?
 2      A. I, I don't remember if I am. I, I don't
 3  know any other way to state that to you.
 4          MR. MCKEEBY: She just said she's not
 5  on this one.
 6          MR. PRYOR: No, I --
 7      Q. You -- it's -- is it your testimony you
 8  never received e-mails with this information in
 9  it?
10      A. That -- I, I can't say that because I
11  don't know. I don't know which e-mails you're
12  referring to. I'm telling you I don't --
13      Q. Well, if you --
14      A. -- remember.
15      Q. If you received this information, surely,
16  knowing that Brian had talked to you about social
17  media and targeted assassinations, you would have
18  said something, wouldn't you, you would have told
19  the people, hey, wait a minute, you guys need to
20  be aware of what he's up to here; you would --
21          MR. MCKEEBY: Object --
22      Q. -- have done that, right?
23          MR. MCKEEBY: Object to the form of
24  the question. It's a hypothetical.
25          You can answer.

---

                              11 (Pages 41 to 44)

Page 45

1     A. I think it would have depended on all of
2 the details of what I would have done with that.
3 I am seeing this now for the first time, so I, I
4 don't -- I can't really say what I would do.
5     Q. By the way, who is Julie O'Grady?
6     A. Julie wor -- I believe that she worked in
7 employee relations.
8     Q. And she says, At this time, I do not have
9 the specific page or wall where this content was
10 found.  Please work with labor relations and your
11 HR business partner to address this matter.
12     Why would anyone be referring this to
13 labor relations unless you were trying to help the
14 union with people that didn't like the union?
15     A. I --
16     MR. MCKEEBY: Object to the form of
17 the question as --
18     Q. I -- I'm giving, I'm giving you the chance
19 to come up with any explanation you can think of
20 for --
21     MR. MCKEEBY: She's --
22     Q. -- Southwest management.
23     MR. MCKEEBY: She's already testified
24 she doesn't -- hasn't seen this e-mail.  She's not
25 the -- she's not a recipient.

Page 46

1     So you can answer as best you can.
2     A. I can't even begin to know what Julie is
3 saying because I, I didn't this write e-mail.
4     Q. Would you have directed to labor
5 relations -- if, if, if Brian Talburt had sent you
6 an e-mail with all these union objectors on there
7 that he's been searching their Facebook pages and
8 wants Southwest to take action against them, and
9 knowing what you know from his targeted
10 assassination e-mail with you, would you have sent
11 it to labor relations?
12     A. I would --
13     MR. MCKEEBY: Object to the form as
14 hypothetical.
15     You can answer.
16     A. I would send it to my team of experts that
17 work on that, because I have a team that's very
18 good at this.  And I -- honestly, that's why
19 sometimes I will do an FYI and let them take it
20 from there.
21     Q. Who's Maureen Emlet, or I may have said
22 the wro -- yeah, Maureen Emlet?
23     A. Are you asking me who she is?
24     Q. I am.
25     A. She was a base manager -- well, she served

Page 47

1 in many roles.  So I'm not sure what role she was
2 in here.  Oh, manager of labor relations.
3     Q. And do you see this e-mail from her
4 regarding the social media posts where she says, I
5 couldn't find much with Greg's name on it.
6     Do you know who Greg is?
7     A. I don't know who she's talking about right
8 here.
9     Q. Okay.  But I'm happy to keep looking.  I
10 did take screenshots of his most recent posts, and
11 I think there's an interesting pattern of trying
12 to milk the company for money and topple the
13 union.  Do you want me to dig further?
14     You know nothing about this e-mail?
15     A. I do not.
16     Q. What would you have done with this e-mail
17 if you had received it?
18     A. I would send it to my team and let them
19 determine what the next steps are.
20     Q. 84 -- 6351.
21     Were you involved or receive any
22 information about the Step 1 or Step 2 process
23 involving Charlene?
24     A. I'm not involved in the process.
25     Q. So what involvement did you have?

Page 48

1     A. What about what?
2     Q. You just said --
3     A. I couldn't hear you.
4     Q. -- not that aspect.  What are you -- you
5 said not that aspect, and I said, okay, what
6 aspect did you have involvement?
7     A. I said I'm not involved in the prospect --
8 in the process of Step 1, Step 2 hearings.
9     Q. Okay.  And so, therefore, when you said
10 not involved in that aspect, did you mean to
11 indicate you were involved in some other aspect?
12     A. I'm not involved in the pro -- in those
13 processes.  Do people come and let me know that
14 there is a, a case going on, maybe, maybe not.
15 Depends.  But I, I intentionally do not involve
16 myself in the process.
17     Q. Did you search your personal e-mails for
18 all e-mails you had with Brian Talburt for
19 production in this lawsuit?
20     A. Did I search my what?  I -- I'm sorry, I'm
21 having really a tough time --
22     Q. Your, your pers -- and I'm sorry.
23     Did you search your personal e-mails
24 to produce in this lawsuit all e-mails you had
25 with Brian Talburt?

12 (Pages 45 to 48)

Sonya Lacore

Page 49

```
 1      A. I, I did not.
 2      Q. What's your education?
 3      A. What's my education?
 4      Q. You don't need to repeat the question
 5   unless you just didn't hear it.
 6      A. I shouldn't --
 7          MR. MCKEEBY: Well, she didn't hear
 8   it. She didn't hear it. That's why she repeated
 9   it.
10      A. I'm not, I'm not trying to be difficult
11   here. I'm really having a challenge hearing you,
12   and I wanted to make sure that I understood you.
13          So if you're asking me what my
14   education is, I have a high school education and
15   two years of college. I do not have a college
16   degree.
17      Q. Why can you not be at trial in this case?
18      A. I have some commitments that I had
19   previously prepared for, and it just is really
20   difficult for me to be away.
21      Q. By the way, I had some commitments too.
22   I, I changed them. Tell me about your
23   commitments.
24      A. I'm happy to. The, the first week -- I'm
25   assuming you're talking about the dates of the 5th
```

Page 50

```
 1   through the 8th? I am --
 2      Q. No, I'm not, ma'am. No, ma'am, I'm
 3   talking about July 5th through July 12th.
 4      A. Okay. Okay.
 5      Q. Are you available for trial any of those
 6   days?
 7      A. I am not, and I'm happy to share why. I,
 8   I have very little opportunity to spend time with
 9   my family when they're in town, and the week after
10   the Fourth they're coming in and they're spending
11   time with me. And my niece and her husband have
12   three children, and my nephew is undergoing -- at
13   age 34 is undergoing cancer for melanoma, is
14   undergoing treatment, and my husband and I have
15   promised to baby-sit their children during that
16   time because we are like grandparents to them.
17   They, they have very little support.
18          The following week, I am traveling
19   because I have commitments to speak at a
20   hospitality summit, and I also have a, a --
21   produced a schedule of a town hall in one of the
22   bases in Atlanta. And when we produce a town hall
23   for our people, we don't cancel it because they
24   bid their schedules around these.
25          MR. PRYOR: All right. I'll just
```

Page 51

```
 1   state for the record that I, I did call Paulo
 2   before this deposition and let him know that if
 3   this witness was available for trial, we would not
 4   take the deposition, and he said she was
 5   unavailable and if that was not the case, he would
 6   check. In our view, that is not unavailable, and
 7   although we've taken this deposition, we will
 8   subpoena her for trial.
 9          I'm gonna take a break, ma'am. I'm
10   gonna stop my little clock here, and give me ten
11   minutes. Thanks.
12          THE VIDEOGRAPHER: Going off the
13   record at 10:51.
14          (Recess.)
15          THE VIDEOGRAPHER: We are back on the
16   record with Clip 2 at 11:05.
17      Q. Ma'am, if you'll look at Exhibit 26.
18          (Exhibit 26 marked.)
19      Q. We looked at this before, it's Exhibit
20   twen -- Trial Exhibit 26. In this e-mail, where
21   it says, As I told VdV, can you tell --
22          MR. MCKEEBY: Are you pulling --
23      Q. -- me who that is?
24          MR. MCKEEBY: Are you pulling it up?
25          MR. PRYOR: Oh, oh, I'm sorry. I've
```

Page 52

```
 1   gotta share screen.
 2          MR. MCKEEBY: Yeah, no worries.
 3          MR. PRYOR: Yes, I will, yes, I will
 4   pull it up. I thought I was. Let me share
 5   screen. Okay. Maybe that's it. I may have the
 6   wrong one up there, but I'll get the right one
 7   now.
 8      Q. Okay. We talked about this e-mail, it's
 9   Exhibit 26. In the middle of the first paragraph,
10   it says, As I told VdV.
11          Do you know who that is?
12          MR. MCKEEBY: I, I still don't think
13   you have the right -- Bobby, I don't think you
14   have the right document pulled up. At least I
15   don't have it on my screen.
16          MR. PRYOR: What, what are you guys
17   what are you guys looking at?
18          MR. MCKEEBY: I've got the --
19          MR. PRYOR: You're looking at Exhibits
20   --
21          MR. MCKEEBY: -- the deposition
22   notice.
23          THE WITNESS: Same.
24          MR. PRYOR: Huh. Mine says -- new
25   share then. Let's try that. Yes, how about this.
```

13 (Pages 49 to 52)

Page 53

1    There we go.
2            MR. MCKEEBY:  Still the same one.
3            MR. PRYOR:  Zoom share.  Okay.  I am
4    clicking on it with all my might.
5            MR. MCKEEBY:  I believe it.
6            MR. PRYOR:  Did that help?
7            MR. MCKEEBY:  Yes.
8            THE WITNESS:  That's it.
9            MR. MCKEEBY:  Now we've got it.
10           MR. PRYOR:  The third time's the
11   charm.
12       Q.  Ma'am, can you tell me who VdV is?
13       A.  Mike Van de Ven, our chief operating --
14       Q.  So he's --
15       A.  -- officer.
16       Q.  Let's look at Exhibit 21 again.  And this
17   is Exhibit 21, and the page number is marked
18   Response App. 76.  And this is an e-mail to you.
19           Do you see that?
20       A.  Yes.
21       Q.  So Brian sends you an e-mail, and did he
22   send -- did he send this to your business e-mail
23   or your personal e-mail?
24       A.  I, I don't know.  I can't tell.
25       Q.  But you don't, you don't deny that he sent

Page 54

1    you this e-mail?
2        A.  I don't remember it, but -- because he
3    sent me so many.
4        Q.  You don't remember this at all, him trying
5    to get Jeanna Jackson fired for the -- I don't
6    know how many times?
7            MR. MCKEEBY:  Object to the --
8        A.  I don't --
9            MR. MCKEEBY:  Object to the
10   characterization.
11           You, you can answer his question if
12   you remember the e-mail.
13       A.  I, I -- it's a long time ago, so I'm
14   seeing it now again maybe.  I don't remember, but
15   I, I, I remember his -- you know, him talking a
16   lot about her.
17       Q.  And your response to Brian was what?
18       A.  I don't recall.
19       Q.  You can see it on the screen.  May 16,
20   2017, the next day, you respond, Thank you, Brian,
21   and I assume that means e -- e should be I -- I
22   will review your concerns, or We will review your
23   concerns, correct?
24       A.  That looks like that's from Mike Sims.
25       Q.  Oh, and Mike Sims reports to you?

Page 55

1        A.  Correct.
2        Q.  By the way, Mike Sims was in the union as
3    well, wasn't he?
4        A.  Many years ago, yes.
5        Q.  And he -- well, at the time of the
6    problems in 2013, 2014, was he a union member?
7        A.  No, sir.
8        Q.  When was he last a union member?
9        A.  I don't, I don't really know.
10       Q.  And do you know if he was active in the
11   union?
12       A.  He was.
13       Q.  And do you know if he was an officer?
14       A.  I believe he was the grievance chair, but
15   I can't confirm that.
16       Q.  Do you recall seeing the termination
17   letter for Charlene?
18       A.  I recently saw it in some documents
19   provided to me by Mr. McKeeby, but I don't
20   recall -- I hadn't recalled it before then.
21       Q.  What other documents did you review for
22   your deposition other than the termination letter?
23       A.  I think there was -- the, the one that you
24   pulled up earlier that was sent to Suzanne
25   Stephensen.

Page 56

1        Q.  And what did that one say?  Remind me.
2        A.  It wa -- the title was Complaint,
3    Complaint, contains graphic images or something
4    like that.
5        Q.  Is that the one with the long list of
6    objectors that the -- he sent to management?
7        A.  I don't have --
8            MR. MCKEEBY:  No, that's, that's
9    Stone's complaint.
10       A.  Yeah.  So I, I don't have that one.
11       Q.  Oh, you sent Stone's complaint.
12           MR. MCKEEBY:  Yes.
13       Q.  What other documents?  Is that it?
14       A.  I have the letter, oh, the Read Before
15   Fly, and then this --
16       Q.  The what?
17       A.  The RBF, that you referenced earlier.
18       Q.  Okay.
19       A.  And then the, the e-mail that was sent
20   from Suzanne -- excuse me, from Audrey to Suzanne,
21   Naomi Hudson, and copied me.
22       Q.  Tell me about every conversation you had
23   with Au -- have you read Ms. Stone's deposition,
24   by the way?
25       A.  I have not.

Page 57

1   Q. Tell me every conversation you've had with
2   Ms. Stone about her complaint.
3       MR. MCKEEBY:  Her complaint about
4   Ms. Carter?
5       MR. PRYOR:  Her complaint about
6   Ms. Carter.
7   A. I don't remember.  That's so many years
8   ago.  I remember that she brought it forward, and
9   I passed it on my team, which is, again, what I
10  normally would do.
11      So I don't recall any specifics.  I
12  remember her being highly emotional about it, and
13  I sent her to my team.
14  Q. So it's -- since you knew she was highly
15  emotional about it, that means you must have
16  spoken to her?
17  A. I remem --
18  Q. Was she emotional during that
19  conversation?
20  A. I -- when I say emotional, I mean that
21  she -- I could tell that she was upset, so I sent
22  her to my team.
23  Q. Wait.  You could tell she was upset from
24  what she wrote?
25  A. I'm talking about when -- she -- because

Page 58

1   of the nature of union business and her frequency
2   in and out of this office for negotiations, I
3   would see her in passing, and if she tried to talk
4   to me about anything like that, and I do recall
5   her saying something one day about how upset she
6   was about this, and I said, You need to deal with
7   my team; i.e., Mike Sims.
8   Q. And, by the way, is Ms. Emlet on your
9   team?
10  A. She was not.
11  Q. Does your team include employee relations?
12  A. No, sir.
13  Q. Then why would your team be dealing with
14  her complaint?
15  A. Because they would engage employee
16  relations.  It starts here with our team if
17  somebody brings something forward, and our team --
18  Q. Why, why wouldn't you -- why wouldn't you
19  just direct her to employee relations?  Do you
20  need someone on your team to tell her to go to
21  employee relations?
22  A. I just -- that's how --
23      MR. MCKEEBY:  Objection to the form.
24  It's compound.
25      You can answer.

Page 59

1   A. I -- that's just our process.
2       MR. MCKEEBY:  Bobby, you're about out
3   of your --
4   Q. With others --
5       MR. MCKEEBY:  Hold on, hold on.
6   You're about at your time limit, so --
7       MR. PRYOR:  Yeah, I, I have it, I have
8   it, I have it at a little less than one hour if
9   you take out all the objections.  If -- we're
10  gonna ask that she be at trial.  We'll ask for
11  more time for her deposition.  If we don't get
12  that, but I, I will -- I understand my limitation.
13  I have a lot more questions, but I will wrap up in
14  two or three minutes here.
15  Q. Ma'am, should Southwest Airlines engage in
16  trying to limit anyone's ability to object to
17  union -- to their union?
18      MR. MCKEEBY:  Object to form.
19      You can answer.
20  A. Should Southwest Airlines -- please repeat
21  it one more time.
22  Q. Should Southwest Airlines be involved in
23  disciplining an employee for engaging in union
24  activities?
25  A. I believe it probably depends on the

Page 60

1   scenario.  That's probably the -- how I would
2   answer that.
3   Q. If a jury decides that Southwest has
4   improperly interfered with Ms. Carter's union
5   activities, do you have an opinion as to how much
6   money the jury should award so that you will
7   remember these things, so that Southwest's board
8   will remember these things and stop doing it?
9       MR. MCKEEBY:  Object to the form of
10  the question.  It mischaracterizes testimony.  It
11  assumes facts not in evidence.
12      You can answer.
13  A. I don't, I don't have an opinion on that.
14  Q. You don't have an opinion?
15  A. You, you asked me if I had an opinion on
16  how much they would pay, and I don't, I don't have
17  an opinion.
18  Q. No, no, I didn't say how much they would
19  pay.  I said how much a jury should award so that
20  Southwest will quit doing these kinds of things to
21  an employee like Charlene and other union
22  objectors.
23      MR. MCKEEBY:  Same objection.
24  Q. If you don't think they should be -- if a
25  jury finds that, you don't think you should be

## Page 61

1   punished?
2         MR. MCKEEBY:  Same objection.
3      A.  I believe --
4         MR. MCKEEBY:  Counsel, you need to
5   wrap up.
6      Q.  I am.  I -- you -- what was your answer
7   and then I'll conclude.  What was your answer?
8      A.  I believe in the process, and I -- that's,
9   that's my answer.  I trust the process.
10        MR. PRYOR:  All right.  I've already
11  stated on the record our position on this.  And I
12  do think I'm at the one-hour mark, and maybe
13  slightly over, but if you count all the colloquy,
14  and there frankly wasn't that much, I think I'm
15  right at it.  I appreciate your patience, Counsel,
16  because we had a lot to cover in a short period of
17  time.  I pass the witness.
18        MR. MCKEEBY:  No questions at this
19  time.  Thank you, Ms. Lacore.
20        THE VIDEOGRAPHER:  Going off the
21  record at 11:17.
22        THE REPORTER:  What about signature?
23        MR. PRYOR:  Hang on.  What about, what
24  about Ed?
25        MR. GREENFIELD:  You need to ask the

## Page 62

1   union, to get us on the record, please.
2         MR. MCKEEBY:  Fine.  Sorry, Ed.
3         MR. CLOUTMAN:  We have no questions.
4         THE VIDEOGRAPHER:  Going off the
5   record at 11:17.
6         THE REPORTER:  Signature?
7         MR. PRYOR:  Thank you.
8         MR. MCKEEBY:  Yeah, we'll read and
9   sign, if you'll send it to me, as the one -- same
10  as the one yesterday.  Same, same copy request as
11  well.
12        MR. CLOUTMAN:  As with us.
13        THE REPORTER:  Anyone else?
14        MR. CLOUTMAN:  Yes, the union wants a
15  condensed copy only.
16        THE REPORTER:  Mr. Greenfield?
17        MR. GREENFIELD:  Yes.
18        (Deposition concluded at 11:17 a.m.)
19
20
21
22
23
24
25

## Page 63

1            CHANGES AND SIGNATURE
2   WITNESS NAME: SONYA LACORE  DATE: JUNE 24, 2022
3   PAGELINE    CHANGE        REASON
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

## Page 64

1   _____
2   _____
3        I, SONYA LACORE, have read the foregoing
4   deposition and hereby affix my signature that same
5   is true and correct, except as noted above.
6
7
8
9
10            _____
11               SONYA LACORE
12   THE STATE OF _____)
13   COUNTY OF _____)
14
15        Before me, _____, on
16   this day personally appeared SONYA LACORE, known
17   to me (or proved to me under oath or through
18   _____) (description of
19   identity card or other document)) to be the person
20   whose name is subscribed to the foregoing
21   instrument and acknowledged to me that they
22   executed the same for the purposes and
23   consideration therein expressed.
24        Given under my hand and seal of office
25   this _____ day of _____,

16 (Pages 61 to 64)

Page 65

```
1    _____.
2
3
4
                    _____
                    NOTARY PUBLIC IN AND FOR
5                   THE STATE OF _____
                    COMMISSION EXPIRES: _____
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 67

```
1        That the amount of time used by each party at
2    the deposition is as follows:
3    BOBBY G. PRYOR.....01 HOUR(S):06 MINUTE(S)
4        That pursuant to information given to the
5    deposition officer at the time said testimony was
6    taken, the following includes counsel for all
7    parties of record:
8    FOR THE PLAINTIFF:
9        MATTHEW D. HILL
         Pryor & Bruce
10       302 North San Jacinto
         Rockwall, Texas 75087
11       972.771.3933
         Mhill@pryorandbruce.com
12
13       MATTHEW B. GILLIAM
         National Right to Work Legal Defense
14           Foundation, Inc.
         8001 Braddock Road
15       Suite 600
         Springfield, Virginia 22160
16       703.321.8510
         Mbg@nrtw.org
17
18
19   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
20       PAULO B. MCKEEBY
         Reed Smith
21       2850 North Harwood Street
         Suite 1500
22       Dallas, Texas 75201
         Pmckeeby@reedsmith.com
23
24
25
```

Page 66

```
1        IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
2                  DALLAS DIVISION
3    CHARLENE CARTER,      )
                           )
4        Plaintiff,        )
                           )
5    VS.                   ) CIVIL ACTION
                           )
6                          ) NO.: 3:17-cv-02278-X
     SOUTHWEST AIRLINES CO., )
7    AND  TRANSPORT WORKERS )
     UNION OF AMERICA, LOCAL )
8    556,                  )
                           )
9        Defendants.       )
10
11          REPORTER'S CERTIFICATION
12          DEPOSITION OF SONYA LACORE
13               JUNE 24, 2022
14
15       I, Melody A. Monk, Certified Shorthand
16   Reporter in and for the State of Texas, hereby
17   certify to the following:
18       That the witness, SONYA LACORE, was duly sworn
19   by the officer and that the transcript of the oral
20   deposition is a true record of the testimony given
21   by the witness;
22       That the deposition transcript was submitted
23   on June 29, 2022 to the witness or to the attorney
24   for the witness for examination, signature and
25   return to me by July 28, 2022;
```

Page 68

```
1    FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
     AMERICA LOCAL 556:
2
3        EDWARD B. CLOUTMAN, III
         Law Offices of Edward Cloutman III
         3301 Elm Street
4        Dallas, Texas 75226
         214.232.9015
5        Ecloutman@lawoffices.email
6
7        ADAM S. GREENFIELD
         Cloutman & Greenfield, PLLC
         3301 Elm Street
8        Dallas, Texas 75226
         Agreenfield@candglegal.com
9
10       That $_____ is the deposition officer's
11   charges to the Plaintiff for preparing the
12   original deposition transcript and any copies of
13   exhibits;
14       I further certify that I am neither counsel
15   for, related to, nor employed by any of the
16   parties or attorneys in the action in which this
17   proceeding was taken, and further that I am not
18   financially or otherwise interested in the outcome
19   of the action.
20       Certified to by me this 27th day of June,
21   2022.
22
23
                    _____
24                  Melody A. Monk, RPR
                    Texas CSR No. 3613
25                  Expiration Date: 10/21/2022
```

Sonya Lacore

Page 69

1    MELODY MONK REPORTING
     Firm Registration No. 10821
2    1999 McKinney Avenue, No. 1404
     Dallas, Texas 75201
3    888.988.5317 (phone and fax)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| A | | | | |
|---|---|---|---|---|

**A**
**a.m** 1:22,22
  62:18
**ability** 59:16
**able** 32:14
**above-styled**
  1:21
**accurate** 14:21
**acknowledged**
  64:21
**action** 1:5 41:20
  46:8 66:5
  68:16,19
**active** 10:9,10
  10:17,20,24
  11:2,4 55:10
**activities** 59:24
  60:5
**activity** 36:18
**Adam** 4:1 7:3
  68:6
**additional** 42:8
**address** 14:16
  26:13,14 45:11
**advantage** 28:2
**advising** 41:13
**affix** 64:4
**age** 50:13
**ago** 14:9 16:18
  20:21 23:24
  54:13 55:4
  57:8
**agree** 24:5 27:13
**agreed** 13:3
**agreement** 24:4
**agreements** 6:10
**Agreenfield@ ...**
  4:3 68:8
**ahead** 10:23
  18:17
**Airlines** 1:6 3:13
  4:7,8,9 6:4,23
  7:16,22 8:6,11
  8:13 9:24 10:4
  27:4 36:5 37:6

37:15 59:15,20
  59:22 66:6
  67:19
**Airlines'** 9:7
**al** 41:2
**allow** 18:5
**ambiguous** 36:6
**America** 1:7
  3:19 6:5 66:7
  68:1
**amount** 67:1
**Android** 5:12
**answer** 9:3,15
  9:19 10:24
  16:10 18:25
  19:1,19 23:16
  24:25 30:10,13
  32:5 33:23
  34:7 35:1
  37:23 38:10,21
  39:6,18 41:6
  42:17 43:20
  44:25 46:1,15
  54:11 58:25
  59:19 60:2,12
  61:6,7,9
**answered** 29:16
  41:13
**answering** 19:4
  19:20
**anymore** 13:25
  33:4
**anyone's** 59:16
**App** 5:12 53:18
**Apparently**
  29:11
**appearances** 5:2
  6:9
**appeared** 64:16
**appearing** 3:2
**apply** 16:2 20:19
**appreciate**
  61:15
**appropriate**
  21:20 41:20

**arena** 37:2
**argumentative**
  23:15 29:25
**Armstrong** 4:8
**asked** 16:20
  17:13 30:9
  35:3 60:15
**asking** 6:20
  19:23 24:9
  27:10 30:8,11
  34:1,15 46:23
  49:13
**aspect** 48:4,5,6
  48:10,11
**assassination**
  42:13 46:10
**assassinations**
  27:17,21 28:4
  29:5 38:18
  44:17
**assist** 15:2,10
  16:1 17:9,14
  17:22 25:4
**assistance** 18:10
  19:11
**assisting** 16:15
**assists** 10:12
**Associate** 4:7
**assume** 16:19
  17:24 27:8,15
  54:21
**assumes** 60:11
**assuming** 16:17
  49:25
**Atlanta** 50:22
**attached** 2:3
  42:7
**attendant** 9:25
  11:2 13:14,20
  15:25 25:19,24
  27:1
**attendants**
  12:24 19:8
  35:20 36:10,11
  37:3

**attitude** 27:3
**attorney** 4:6 7:4
  8:4,10 66:23
**attorneys** 9:8
  68:16
**Au** 56:23
**Audrey** 11:10
  12:5 35:18
  37:5 38:14
  39:11 40:18,22
  56:20
**authored** 40:10
**automatically**
  10:19
**available** 50:5
  51:3
**Avenue** 69:2
**award** 60:6,19
**aware** 11:5 14:2
  14:20 17:4
  44:20

| B | | | | |
|---|---|---|---|---|

**B** 3:8,14,20
  67:13,20 68:2
**baby-sit** 50:15
**back** 15:19
  25:21 39:21
  51:15
**bargaining** 24:4
**base** 20:16 37:17
  46:25
**bases** 50:22
**began** 33:1
**beginning** 36:18
**behalf** 13:25
**believe** 12:16
  39:14 45:6
  53:5 55:14
  59:25 61:3,8
**Berlanger** 43:8
**best** 36:21 46:1
**Beverly** 43:8
**bid** 50:24
**bit** 7:24 25:9

33:2
**Block** 4:5
**board** 13:3,6,7
  13:23 29:19
  60:7
**Bobby** 3:4 6:13
  7:13 52:13
  59:2 67:3
**Bpryor@pryo...**
  3:7
**Braddock** 3:10
  67:14
**break** 51:9
**Brian** 25:17,19
  26:6 27:12
  28:9 32:16,23
  32:24 38:17
  42:7,13 43:6
  44:16 46:5
  48:18,25 53:21
  54:17,20
**bring** 14:4
**brings** 58:17
**brought** 11:17
  57:8
**Bruce** 3:5 67:9
**business** 12:13
  26:14 45:11
  53:22 58:1

| C | | | | |
|---|---|---|---|---|

**C** 3:1
**call** 51:1
**cancel** 50:23
**cancer** 50:13
**candidates** 11:6
  11:11,12,14
**caps** 33:14
**card** 64:19
**Carter** 1:3 4:6
  6:3,14 7:14
  37:6 43:9 57:4
  57:6 66:3
**Carter's** 60:4
**case** 6:3,5 18:3

48:14 49:17 51:5
casual 33:10
cause 1:21 14:1
Central 39:24
certainly 25:20 28:12
Certificate 5:7
CERTIFICA... 66:11
Certified 66:15 68:20
certify 66:17 68:14
chair 13:20 55:14
challenge 49:11
challenges 28:10 36:20
chance 45:18
CHANGE 63:3
changed 49:22
CHANGES 63:1
characterizati... 39:5 42:16 43:19 54:10
charges 68:11
Charlene 1:3 4:6 6:3,14 7:14 37:6 43:8 47:23 55:17 60:21 66:3
charm 53:11
check 51:6
chief 53:13
children 50:12 50:15
Chris 4:6
CISM 13:10,20 22:11
city 29:18
Civil 1:5 2:1 6:5 66:5
clicking 53:4
Clip 51:16

clock 51:10
Cloutman 3:20 3:21 4:1 6:25 6:25 62:3,12 62:14 68:2,3,7
coincidence 40:6 42:4,10
collective 24:4
college 49:15,15
colloquy 61:13
come 18:5 45:19 48:13
comes 16:14 23:8
coming 29:19 50:10
comment 28:20
comments 31:7
COMMISSION 65:5
commitments 49:18,21,23 50:19
committee 13:5 21:6,7,8 39:12
committees 10:12 20:24 21:4,23 22:8 23:1 24:6 25:5
committing 9:11
company 6:4 9:11 14:16 16:4 22:8 24:6 47:12
competing 11:6
complaining 36:10
complaint 37:5 37:16 38:3 39:16 40:2,18 40:23 56:2,3,9 56:11 57:2,3,5 58:14
complaints 11:17 36:9

completely 9:4
comply 21:17,21
compound 19:17,18 29:25 32:4 58:24
concerns 54:22 54:23
conclude 61:7
concluded 62:18
condensed 62:15
confirm 55:15
consider 11:4
consideration 64:23
containing 42:8
contains 56:3
content 45:9
Contract 5:12
contracts 39:16
conversation 56:22 57:1,19
conversations 33:11
copied 37:7,13 38:22 43:24 56:21
copies 68:12
copy 62:10,15
Corliss 26:22,25 27:1
correct 8:17 15:11 17:25 23:21 24:18,21 25:1,15,16,21 26:15 38:5,11 42:19 43:16 54:23 55:1 64:5
correctly 15:3,5
corresponded 38:17
counsel 4:7 6:9 7:17,19,21,21 18:16 20:6 30:10 34:14

61:4,15 67:6 68:14
count 61:13
COUNTY 64:13
couple 26:22
course 12:13
court 1:1 6:7,11 66:1
cover 61:16
coworker 38:3
crowd 29:18 31:4
CSR 1:23 68:24
currently 27:2

### D

D 67:9
Dallas 1:2,25 3:16,22 4:2 6:7 6:24 7:2,5 66:2 67:22 68:4,8 69:2
dangerous 26:24 27:7,7
Date 63:2 68:25
dates 49:25
day 14:14 39:21 39:25 40:18 54:20 58:5 64:16,25 68:20
days 26:10 50:6
de 53:13
deadlines 18:6
deal 15:1 58:6
dealing 40:7 58:13
Deborah 42:6
decides 60:3
DEFENDANT 3:13,19 67:19 68:1
Defendants 1:8 66:9
Defense 3:9 67:13

define 10:17,24
definitely 14:19
degree 49:16
delegate 25:9
deliver 33:15
deny 53:25
department 12:18,21
depended 45:1
depends 37:25 38:24 48:15 59:25
deposition 1:12 1:18 6:2 8:5 11:25 41:21 51:2,4,7 52:21 55:22 56:23 59:11 62:18 64:4 66:12,20 66:22 67:2,5 68:10,12
describe 11:1
description 5:9 64:18
desk 16:15 23:9
details 45:2
determine 42:9 47:19
different 26:13
difficult 34:24 49:10,20
dig 47:13
direct 58:19
directed 46:4
director 10:15 12:17
directors 20:15 20:16 21:15 22:19
disagreeing 15:18,20 20:2
disciplining 59:23
discuss 33:13 36:13

discussed 43:6
discussions
36:16
disenfranchised
23:11
disqualified
11:14
District 1:1,1
6:6,7 66:1,1
Division 1:2 6:8
66:2
document 11:21
11:25 12:12
26:10 52:14
64:19
documents
16:20,21 17:6
18:7,8 28:19
55:18,21 56:13
doing 16:13
17:23 19:2,3
30:16 31:23
33:20 60:8,20
drama 14:5,7
dreadful 29:6
dues 11:3 13:3
13:23
duly 1:20 7:7
66:18

**E**

e 3:1,1 54:21,21
e-mail 12:4
14:11,16 20:14
21:25 22:17
26:4,13 27:18
28:17 29:13,16
31:20,25 33:7
33:17 34:2,4
35:6 37:7 43:4
43:7,24 45:24
46:3,6,10 47:3
47:14,16 51:20
52:8 53:18,21
53:22,23 54:1

54:12 56:19
e-mailed 42:14
e-mails 17:25
26:6 32:24
33:1 38:4 42:7
44:1,8,11
48:17,18,23,24
earlier 40:13
55:24 56:17
early 11:5,20
Ecloutman@l...
3:23 68:5
Ed 6:25 61:24
62:2
educate 40:14
education 49:2,3
49:14,14
Edward 3:20,21
68:2,3
Edwards 42:6
eight 23:24
Eileen 13:15,16
13:19,24
election 29:21
32:19
Elm 3:21 4:2
68:3,7
Email 5:10,10
5:11,12,13,14
5:14,15
Emlet 42:6
46:21,22 58:8
emotional 57:12
57:15,18,20
employed 68:15
employee 9:10
9:11,21 10:25
37:16 45:7
58:11,15,19,21
59:23 60:21
employees 10:20
encourage 9:21
31:14
encourages
36:11

ended 11:13
engage 58:15
59:15
engaging 37:3
59:23
especially 22:4
36:16
evasion 9:4
evidence 60:11
exactly 16:22
34:25
examination 5:5
7:9 66:24
excuse 35:23
56:20
executed 64:22
Exhib 33:7
exhibit 11:22,23
11:24 25:11
33:8 35:12,12
35:14,18 36:23
37:5,8 39:19
39:20,22 42:1
42:22,24 43:1
51:17,18,19,20
52:9 53:16,17
exhibits 5:8
52:19 68:13
experience
12:17
experts 25:8
46:16
Expiration
68:25
EXPIRES 65:5
explain 10:10
explanation
45:19
explore 16:16
expressed 64:23

**F**

Facebook 43:12
46:7
fact 19:13 22:25

facts 60:11
failure 18:7
Fair 19:1
family 50:9
far 28:1
FAS 33:15
favoring 19:9
fax 69:3
February 5:12
5:13,13,14,15
37:9 39:25
41:25 42:3,5
Federal 2:1
feel 34:25
felt 40:13
fifteen 24:24
file 23:1,12
files 18:6 37:25
final 26:17
31:24 32:10
financially
68:18
find 35:16 42:1
47:5
finds 60:25
Fine 62:2
finish 18:15
fire 29:8
fired 54:5
firm 40:15 69:1
first 7:7 9:23
11:22 26:12
30:2,5 34:15
34:19,21 45:3
49:24 52:9
flight 9:25 11:2
12:23 13:14,19
15:25 19:8
25:19,24 27:1
35:19 36:10,10
37:2
Fly 5:13 40:1,2
56:15
Foley 43:8
follow 14:2

following 6:11
50:18 66:17
67:6
follows 7:8 67:2
Forbes 4:7
foregoing 64:3
64:20
forgive 18:7
forgot 6:20
form 9:13 15:15
16:8,23 18:1
18:13,18 19:18
21:4 23:15,25
28:6 29:2,24
32:3 34:5
37:21 38:19
39:3 42:15
44:23 45:16
46:13 58:23
59:18 60:9
forward 19:6
28:18 57:8
58:17
forwarded
22:18
found 33:8
45:10
Foundation 3:9
67:4
Fourth 50:10
frankly 61:14
free 9:19
frequency 58:1
frequent 27:12
frequently 37:3
front 30:17 35:3
fully 31:22
further 14:4
47:13 68:14,17
FYI 46:19

**G**

G 3:4 67:3
General 4:7
Gilliam 3:8 6:14

67:13
**give** 30:23 34:12
  51:10
**given** 64:24
  66:20 67:4
**giving** 45:18,18
**go** 10:23 18:17
  20:12 27:25
  30:1 35:12,12
  39:21 42:2,22
  43:9 53:1
  58:20
**goes** 10:11 26:21
  29:17
**going** 6:1 14:2
  16:1 24:1
  26:21 35:16
  48:14 51:12
  61:20 62:4
**gonna** 7:23 12:4
  12:8 16:11,21
  26:8 30:13
  51:9,10 59:10
**good** 46:18
**gotta** 52:1
**grandparents**
  50:16
**graphic** 56:3
**Greenfield** 4:1,1
  7:3,4 23:25
  28:6 29:1,4
  39:4 61:25
  62:16,17 68:6
  68:7
**Greg** 43:9 47:6
**Greg's** 47:5
**grievance** 55:14
**group** 11:11,12
  12:23 36:19
  38:24 40:14
**guess** 11:1 26:1
**guys** 44:19
  52:16,17

**H**

**ha** 23:17
**hall** 50:21,22
**hand** 13:10,11
  15:23,25 16:2
  16:12,13 17:10
  17:11 33:9
  64:24
**handle** 36:21
**Hang** 61:23
**happened** 22:22
  23:8
**happening** 11:8
**happenstance**
  40:17,20
**happy** 14:3 35:1
  47:9 49:24
  50:7
**hard** 7:25 8:24
**Harwood** 3:15
  67:21
**head** 10:19 40:8
**heads-up** 12:25
  14:19
**hear** 35:8,10
  48:3 49:5,7,8
**hearing** 8:1,24
  49:11
**hearings** 48:8
**heavy** 29:18
**held** 22:8
**help** 27:19 32:18
  45:13 53:6
**helping** 10:14
**hereto** 2:3
**hey** 14:18 44:19
**high** 49:14
**highly** 31:14
  57:12,14
**HILL** 67:9
**hired** 9:24
**history** 29:7
**Hmm** 12:16
**Hofer** 43:9
**hold** 59:5,5
**home** 7:5

**honest** 22:15
**honestly** 14:8
  22:13 23:7
  33:1 46:18
**hospitality**
  50:20
**hour** 59:8
**HOUR(S):06**
  67:3
**HR** 45:11
**Hudson** 39:2,2,7
  56:21
**huge** 29:20
**Huh** 52:24
**hundreds** 23:11
  23:17
**husband** 50:11
  50:14
**hypothetical**
  44:24 46:14

**I**

**i.e** 58:7
**idea** 42:18
**identified** 26:14
**identity** 64:19
**ignore** 18:6
**III** 3:20,21 68:2
  68:3
**illustration**
  33:10
**images** 56:3
**improperly**
  41:20 60:4
**in-house** 36:12
  36:15
**inactive** 10:20
**inappropriate**
  41:9
**include** 37:17
  38:4 39:1
  58:11
**includes** 39:15
  67:6
**incredibly** 26:24

27:7
**INDEX** 5:1
**indicate** 48:11
**indication** 19:25
**inflight** 12:18,20
  12:22,23 19:7
  22:18 24:17
  37:18
**information**
  42:9 43:5 44:8
  44:15 47:22
  67:4
**inner** 29:18
**installment**
  26:18 31:24
  32:10
**installments**
  32:1,11
**instance** 1:20
**instated** 11:13
**instruct** 41:6
**instructed** 13:15
  13:24
**instructing**
  41:20
**instrument**
  64:21
**intent** 15:22
**intentionally**
  48:15
**interact** 33:3
**interacting** 33:5
**interested** 68:18
**interesting**
  47:11
**interfered** 60:4
**interpret** 32:16
  32:19
**interpreted**
  20:13
**investigate**
  28:13
**investigates**
  28:11
**inviting** 16:25

16:25
**involve** 48:15
**involved** 47:21
  47:24 48:7,10
  48:11,12 59:22
**involvement**
  47:25 48:6
**involving** 47:23
**issue** 17:4 26:20
**issues** 40:7

**J**

**Jacinto** 3:5
  67:10
**Jackson** 43:7
  54:5
**January** 5:10
  12:5 14:14,22
  15:19
**Jeanna** 43:7
  54:5
**joint** 22:8,10
  24:6
**jointly** 22:10,11
**Julie** 42:5 45:5,6
  46:2
**July** 50:3,3
  66:25
**June** 1:14,22 6:2
  63:2 66:13,23
  68:20
**jury** 8:21,25
  12:22 17:4
  19:13 22:1
  32:14 43:10
  60:3,6,19,25

**K**

**keep** 36:12 47:9
**Ken** 17:10
**Kent** 13:10,11
  15:23,25 16:2
  16:11,13 17:10
  17:11
**Kerrie** 4:7

Sonya Lacore

**kick** 21:23 24:5
**kicked** 20:24
  23:1
**kicking** 25:5
**kind** 19:6 23:20
  23:23 36:17
  37:2
**kinds** 60:20
**knew** 25:20
  57:14
**know** 8:14,14
  9:9 10:11
  11:14 13:11,16
  13:25 14:6,22
  15:1,10,21,21
  17:15,19 18:2
  19:20 20:17,22
  22:7,12,12,22
  22:25 23:3
  24:3,8,11,13
  24:25 25:4,7
  25:12,23 27:6
  27:8 28:11
  32:2 39:18
  40:15,20 41:7
  42:19 43:16,22
  44:3,11,11
  46:2,9 47:6,7
  47:14 48:13
  51:2 52:11
  53:24 54:6,15
  55:9,10,13
**knowing** 44:16
  46:9
**known** 25:25
  26:1 64:16
**knows** 23:6

**L**

**labor** 39:8,9
  45:10,13 46:4
  46:11 47:2
**Lacore** 1:13,19
  5:4 6:3 7:6,12
  7:13 14:15

**61**:19 63:2
  64:3,10,16
  66:12,18
**large** 38:24
**Lauren** 4:8
**Law** 3:21 68:3
**lawsuit** 7:22 8:8
  23:1,12 48:19
  48:24
**lawyers** 7:1
**leader** 26:2
**leadership** 43:15
**leads** 12:23
  13:19
**learned** 14:19
**leave** 20:15,16
**Legal** 3:9 67:13
**let's** 20:12,13
  25:11 27:11
  32:16 34:23
  35:5,12 39:19
  39:21 41:18,25
  42:21,22 43:4
  52:25 53:16
**letter** 55:17,22
  56:14
**limit** 59:6,16
**limitation** 59:12
**limited** 30:15
  35:4
**lines** 26:22
**Lisa** 4:5
**list** 56:5
**listen** 27:4
**little** 7:24 33:2
  50:8,17 51:10
  59:8
**Local** 1:7 3:19
  6:5 7:2,5 10:5
  11:7 20:18
  66:7 68:1
**located** 1:25
**locations** 6:10
**long** 14:9 16:18
  20:21 25:25,25

**33**:6 54:13
  56:5
**longer** 39:7
**look** 14:13 25:11
  28:18 39:19
  41:18,25 43:3
  43:3,7 51:17
  53:16
**looked** 51:19
**looking** 19:5
  47:9 52:17,19
**looks** 54:24
**lost** 11:12
**lot** 22:13 26:6
  28:17 54:16
  59:13 61:16
**lying** 33:19 34:1

**M**

**ma'am** 18:4,17
  30:14 50:2,2
  51:9,17 53:12
  59:15
**Maberry** 4:6
**machine** 1:24
**maddening**
  26:19
**major** 28:1
**making** 18:14
  18:19,21,23
**management**
  15:7 29:10
  33:14 43:12
  45:22 56:6
**manager** 37:17
  46:25 47:2
**managers** 20:16
**mark** 61:12
**marked** 11:23
  35:14 37:8
  39:20 51:18
  53:17
**Matt** 6:14
**matter** 7:14 9:8
  45:11

**MATTHEW** 3:8
  67:9,13
**Maureen** 42:5
  46:21,22
**Mbg@nrtw.org**
  3:11 67:16
**McKeeby** 3:14
  6:15,16,19,22
  6:23 7:20 9:13
  9:18 15:13,15
  16:8,23 17:2
  18:1,11,13,18
  18:20,23 19:15
  19:17 20:3,5
  21:1,3,8,13,22
  23:4,14 25:2
  27:23 28:22,24
  29:24 30:3,9
  30:12,18,22
  32:3,9 33:21
  34:5,14,18
  35:17 37:21
  38:6,8,19 39:3
  39:6 41:3,8,11
  41:12,17,22
  42:12,15,23
  43:2,18 44:4
  44:21,23 45:16
  45:21,23 46:13
  49:7 51:22,24
  52:2,12,18,21
  53:2,5,7,9 54:7
  54:9 55:19
  56:8,12 57:3
  58:23 59:2,5
  59:18 60:9,23
  61:2,4,18 62:2
  62:8 67:20
**McKinney** 69:2
**mean** 10:10
  16:15 43:9
  48:10 57:20
**means** 54:21
  57:15
**meant** 27:9,15

**media** 5:11
  27:21,24 28:1
  28:3,10 31:13
  32:17 33:12,13
  36:5,9,18
  38:16 40:3,12
  42:8 44:17
  47:4
**meeting** 21:9
  33:12,18,24
  34:2,9
**meetings** 10:12
  20:19 21:12
**melanoma** 50:13
**Melody** 1:23
  66:15 68:24
  69:1
**member** 10:4,7
  10:9,18 13:22
  15:6 16:5 29:9
  55:6,8
**members** 20:24
  21:11,23 24:24
**membership**
  13:2
**message** 5:11
  22:18 35:18
  36:3
**messages** 33:15
  35:21
**met** 26:2
**Mhill@pryor...**
  67:11
**mi** 31:3
**Michelle** 43:8
**middle** 52:9
**Mike** 33:12
  36:17 53:13
  54:24,25 55:2
  58:7
**milk** 47:12
**mind** 32:20
**Mine** 52:24
**minority** 29:18
  31:4

Sonya Lacore

minute 44:19
MINUTE(S)
  67:3
minutes 51:11
  59:14
mischaracteri...
  38:8 60:10
Mol 43:9
moment 34:13
money 47:12
  60:6
Monk 1:23
  66:15 68:24
  69:1
months 40:21
movement 13:1
  14:20,23
multiple 36:20
  40:7,12

_____ N _____
N 3:1
name 7:11,13
  25:18 47:5
  63:2 64:20
names 23:18
Naomi 39:2,7
  56:21
National 3:9
  67:13
nature 58:1
navigate 36:21
need 11:21,22
  44:19 49:4
  58:6,20 61:4
  61:25
negotiates 39:10
  39:16
negotiating
  39:12
negotiations
  39:9 58:2
neither 68:14
nephew 50:12
never 20:5,6

40:24 44:8
new 5:11 36:22
  37:1,2 52:24
niece 50:11
nonmember
  13:4 20:17
nonunion 21:11
  25:5
normally 39:17
  57:10
North 3:5,15
  67:10,21
Northern 1:1
  6:7 66:1
Northwest 27:4
NOTARY 65:4
note 26:12
noted 41:12 64:5
notice 52:22
number 20:11
  42:23 53:17
numbered 1:21

_____ O _____
o'clock 39:23
O'Grady 42:5
  45:5
oath 8:17,19
  20:1 64:17
object 9:13
  15:13 16:8,23
  18:1,11 19:17
  21:3 23:14,14
  28:22 29:24
  32:3 34:5
  37:21 38:19
  41:10 42:12,15
  42:16 43:18
  44:21,23 45:16
  46:13 54:7,9
  59:16,18 60:9
objecting 15:8
  16:5 20:24
objection 9:18
  15:15 18:13,18

19:15 21:1
  23:25 28:6
  29:1 33:21
  38:6 39:3,4
  41:12 58:23
  60:23 61:2
objections 59:9
objector 14:23
  43:14
objectors 13:1
  15:8 17:16,20
  18:9 19:8,9,10
  19:25 20:11
  22:25 23:11
  24:5 25:6 46:6
  56:6 60:22
obviously 29:15
Occasionally
  12:14
October 5:10,11
  5:14 33:6
offer 17:21 18:9
  18:14,21,23
offered 19:11
offering 19:12
office 6:24 58:2
  64:24
officer 53:15
  55:13 66:19
  67:5
officer's 68:10
offices 3:21 11:7
  68:3
oh 9:20 25:13
  28:16 47:2
  51:25,25 54:25
  56:11,14
okay 8:17 10:17
  10:23 11:19,24
  12:4,8,10
  14:25 16:19
  17:13,24 18:10
  20:12,22 25:14
  25:20 26:4
  27:10 28:8

29:14 30:1
  31:9,19 35:2
  36:3,8 38:12
  41:12,15,16,24
  43:3,3 47:9
  48:5,9 50:4,4
  52:5,8 53:3
  56:18
onboard 12:17
once 18:4 28:18
one-hour 61:12
ones 40:11
operating 53:13
operations
  24:17
opinion 60:5,13
  60:14,15,17
opportunity
  29:7,8 30:23
  50:8
opposed 43:15
oral 1:12,18
  66:19
order 23:2
original 68:12
outcome 68:18
owed 40:14

_____ P _____
P 3:1,1
page 5:1,6,7,9
  45:9 53:17
PAGELINE
  63:3
pages 46:7
paid 22:10,11
pal 27:12
paper 31:21
paragraph
  27:25 28:23
  31:6,12,13
  34:15,19,22
  52:9
Paralegal 4:8
part 11:11 12:8

12:18,20 31:4
  32:15 34:14,17
  35:1 36:15
  43:21
partially 22:9
particular 11:9
particularly
  26:23 33:11
parties 3:2 67:7
  68:16
partner 45:11
party 67:1
pass 16:15 61:17
passed 57:9
passing 58:3
passionate 27:13
  33:2
patience 61:15
pattern 47:11
Paulo 3:14 6:15
  6:22 7:20 9:16
  9:17 51:1
  67:20
pay 11:3 60:16
  60:19
paying 8:10,11
  8:12 9:7
pays 13:23
pe 23:18
pen 27:12
people 15:8
  24:20 25:5
  27:4,5,14
  31:15 32:17
  36:20 38:1,1
  38:23,23 39:1
  40:3,10 43:10
  44:19 45:14
  48:13 50:23
period 42:1
  61:16
permits 24:4
pers 48:22
person 37:25
  38:15,16,25

39:10,15 64:19
**personal** 31:20
  48:17,23 53:23
**personally** 64:16
**Phoenix** 25:24
  26:3
**phone** 69:3
**phrases** 32:18
**Plaintiff** 1:4,20
  3:3 66:4 67:8
  68:11
**plate** 26:19
**play** 29:17
**please** 6:11 7:11
  23:22 28:25
  30:25 42:24
  45:10 59:20
  62:1
**PLLC** 4:1 68:7
**Pmckeeby@r...**
  3:17 67:22
**point** 16:17
  40:13
**policies** 22:6,13
**policy** 9:11 36:6
  37:14 40:4,16
**portion** 26:5
**position** 9:23
  12:13,15 24:14
  24:18 61:11
**possibly** 41:1
**posting** 36:20
**posts** 28:11 42:8
  43:12 47:4,10
**power** 16:4
**prepared** 49:19
**preparing** 68:11
**PRESENT** 4:5
**president** 15:6
  24:15 35:19
  37:18
**President's** 5:11
  36:3
**previously** 49:19
**pro** 48:12

**probably** 15:22
  26:2 59:25
  60:1
**problems** 14:1
  16:5 55:6
**Procedure** 2:2
**proceeding**
  68:17
**process** 37:19
  47:22,24 48:8
  48:16 59:1
  61:8,9
**processes** 48:13
**produce** 16:20
  18:7 48:24
  50:22
**produced** 1:19
  18:2,3 50:21
**production**
  48:19
**promised** 50:15
**pronounce**
  25:17
**prospect** 48:7
**protect** 23:12
**prove** 19:12
**proved** 64:17
**provide** 18:10
  19:7,12
**provided** 43:6
  43:12 55:19
**provisions** 2:2
**Pryor** 3:4,5 5:5
  6:13,13,17,20
  7:10,13 16:25
  18:15 20:8
  21:6,9,15,24
  25:3 27:25
  30:1 32:7
  34:17,21 41:5
  41:9,15,19,24
  42:25 44:6
  50:25 51:25
  52:3,16,19,24
  53:3,6,10 57:5

59:7 61:10,23
  62:7 67:3,9
**PUBLIC** 65:4
**pull** 52:4
**pulled** 52:14
  55:24
**pulling** 51:22,24
**punished** 61:1
**purposes** 64:22
**pursuant** 2:1
  67:4
**purview** 24:21

**_____Q_____**

**question** 9:14,19
  10:24 15:16
  16:9,24 18:2
  18:15,20 19:18
  21:4,14,16
  23:5,15 24:25
  25:2,3 29:16
  29:25 30:3,10
  30:13 32:4
  34:6 35:1
  37:22 38:20
  41:7,14 42:16
  43:21 44:24
  45:17 49:4
  54:11 60:10
**questions** 9:3
  12:9 14:4
  28:25 59:13
  61:18 62:3
**Quickies** 5:12
**quit** 60:20
**quite** 22:13

**_____R_____**

**R** 3:1
**racist** 29:22 30:4
  30:7,20 31:7,8
**raised** 17:3
**ran** 11:11
**RBF** 56:17
**reach** 17:20

19:24 28:2
**reached** 18:9
  19:10 20:11
  40:24
**reaches** 15:6
**read** 5:13 12:8
  15:3 21:25
  22:1,1,2 26:7,8
  26:22 27:5,18
  28:20 30:14,15
  30:16 31:1,5,6
  32:15 34:3,10
  34:17 35:2,5,6
  40:1,1 56:14
  56:23 62:8
  64:3
**reading** 30:5,12
**really** 8:14,16
  19:21 22:3,14
  33:8 40:14
  45:4 48:21
  49:11,19 55:9
**reason** 26:19
  33:4 63:3
**recall** 11:8,10,18
  14:10 17:23
  20:20,21 21:19
  27:20,22 28:4
  32:11 33:16,17
  33:17 36:3,6,7
  36:14,19 37:9
  37:11 54:18
  55:16,20 57:11
  58:4
**recalled** 55:20
**receive** 12:12
  13:2 38:2
  47:21
**received** 31:25
  42:7 44:8,15
  47:17
**Recess** 51:14
**recipient** 45:25
**recognize** 26:4
**record** 2:2 6:2

6:11 51:1,13
  51:16 61:11,21
  62:1,5 66:20
  67:7
**Reed** 3:15 67:20
**referenced**
  56:17
**referencing** 31:4
  31:5
**referring** 13:7
  14:6 44:12
  45:12
**regarding** 16:11
  47:4
**Registration**
  69:1
**regular** 12:12
**regularly** 35:25
  36:2
**reimbursement**
  13:2
**reinforce** 33:15
**related** 15:22
  68:15
**relations** 39:9
  45:7,10,13
  46:5,11 47:2
  58:11,16,19,21
**rely** 25:14
**remem** 57:17
**remember** 11:16
  14:8 17:12,17
  20:7,10 22:14
  22:24 23:7,9
  23:10,13,17,18
  23:18,19,21,24
  24:1,2 26:7
  27:19 28:7,15
  31:18 36:15,16
  41:1,4 42:20
  42:21 43:23
  44:2,14 54:2,4
  54:12,14,15
  57:7,8,12 60:7
  60:8

**Remind** 56:1
**removed** 11:15
**repeat** 8:2 49:4
  59:20
**repeated** 49:8
**report** 9:21
**reported** 1:24
  28:20 29:23
**reporter** 6:11
  36:24 61:22
  62:6,13,16
  66:16
**Reporter's** 5:7
  66:11
**REPORTING**
  69:1
**reports** 54:25
**represent** 6:14
  6:23 7:14 8:5
  13:4
**representation**
  20:6
**representative**
  20:18
**represented**
  7:17
**representing** 7:1
  7:4 8:4
**request** 21:18,21
  21:22,24 62:10
**rereading** 34:12
**research** 16:16
**reserve** 41:16
**reserving** 41:23
**resign** 13:1
**respond** 54:20
**response** 14:10
  14:13 15:9
  20:14,23 31:17
  53:18 54:17
**restate** 23:22
**result** 22:22
**return** 66:25
**review** 42:9
  54:22,22 55:21

**rid** 32:17
**right** 3:9 6:19
  16:22 20:25
  23:13,24 26:7
  26:17 35:9
  38:18 40:6,19
  43:2 44:1,22
  47:7 50:25
  52:6,13,14
  61:10,15 67:13
**rights** 23:2,12
  41:16,17,19,23
**Road** 3:10 67:14
**Rockwall** 3:6
  6:18 67:10
**role** 11:2 47:1
**roles** 47:1
**RPR** 68:24
**rules** 2:1 22:6

**S**

**S** 3:1 4:1 68:6
**San** 3:5 67:10
**saw** 55:18
**saying** 17:8,9
  19:24 20:2
  21:11 32:16
  42:6 46:3 58:5
**says** 12:25 13:6
  13:10,15,24
  14:7,14,18,25
  15:7,18 20:14
  20:18 26:17
  27:3,16,16
  31:14,19,20
  32:8 33:5,8,19
  36:8 45:8 47:4
  51:21 52:10,24
**scenario** 60:1
**scenes** 33:10
**schedule** 35:4
  50:21
**schedules** 50:24
**school** 49:14
**screen** 21:25

26:5 52:1,5,15
  54:19
**screenshots**
  47:10
**scroll** 22:17
**seal** 64:24
**search** 18:6
  48:17,20,23
**searching** 46:7
**see** 7:24,25
  11:25 12:6
  16:21 17:6,25
  18:8 20:12,13
  22:20 31:8
  35:21 37:12
  40:4 42:21
  47:3 53:19
  54:19 58:3
**seeing** 45:3
  54:14 55:16
**seen** 26:9,23
  32:1 45:24
**sees** 9:10
**send** 32:24
  46:16 47:18
  53:22,22 62:9
**sending** 31:23
**sends** 26:12 33:6
  35:24 53:21
**senior** 4:6 12:16
  24:18 29:9
**sent** 14:13 26:6
  28:13 31:16,20
  39:22,23 40:1
  46:5,10 53:25
  54:3 55:24
  56:6,11,19
  57:13,21
**seriously** 8:19
**serve** 13:23,25
**served** 46:25
**serves** 10:12
  27:2
**service** 19:7
**services** 37:18

**serving** 10:14
  11:2
**share** 40:25 50:7
  52:1,4,25 53:3
**sheeple** 26:20
**Shipman** 26:18
**short** 61:16
**shorthand** 1:25
  66:15
**show** 11:21 12:4
  16:22
**showing** 28:19
**sic** 41:4
**sidebar** 28:22
**sign** 62:9
**signature** 5:6
  61:22 62:6
  63:1 64:4
  66:24
**Sims** 54:24,25
  55:2 58:7
**sincerely** 9:9
  19:20
**single** 43:14
**sir** 16:7 24:19
  26:11 55:7
  58:12
**sit** 24:3,10,13,25
  26:1
**slates** 11:6
**slightly** 61:13
**small** 13:2
**Smith** 3:15
  67:20
**social** 5:11 27:21
  27:24 28:1,3
  28:10 31:12
  32:16 33:11,13
  36:5,9,18
  38:16 40:3,12
  42:8 44:16
  47:4
**somebody** 58:17
**Sonya** 1:13,19
  5:4 6:2 7:6,12

12:25 14:15
  20:14 33:12
  63:2 64:3,10
  64:16 66:12,18
**soon** 29:19
**sorry** 6:18 7:23
  8:23 9:16 14:4
  14:25 25:13
  36:24,25 39:23
  48:20,22 51:25
  62:2
**source** 28:1
**Southwest** 1:6
  3:13 4:6,8,8
  6:4,23 7:16,22
  7:22 8:5,11,13
  9:7,10,24 10:4
  15:7 16:19
  17:1,21 18:5
  18:24 19:13
  20:25 21:10,12
  22:11 24:5
  28:19 36:5
  37:6,14 45:22
  46:8 59:15,20
  59:22 60:3,20
  66:6 67:19
**Southwest's**
  60:7
**space** 26:3
**spawns** 27:3
**speak** 14:3
  50:19
**specific** 11:9
  45:9
**specifically** 22:7
**specifics** 24:2
  57:11
**spend** 50:8
**spending** 50:10
**spoken** 57:16
**Springfield** 3:10
  67:15
**standard** 37:14
  37:19,24

starts 58:16
state 1:24 6:9
   7:11 44:3 51:1
   64:12 65:5
   66:16
stated 2:2 61:11
States 1:1 6:6
   66:1
Step 47:22,22
   48:8,8
Stephensen
   55:25
stepped 26:18
steps 42:9 47:19
stipulations
   6:10
Stone 11:11 12:5
   20:13 33:7
   35:19 36:4
   38:14 39:11
   40:2,18,22
   57:2
Stone's 11:24
   37:5 56:9,11
   56:23
stop 51:10 60:8
strange 42:4
strategy 12:17
Street 3:15,21
   4:2 67:21 68:3
   68:7
strikes 35:8
struck 35:6
styled 6:3
subject 26:18
submitted 66:22
subpoena 51:8
subscribed
   64:20
subsequently
   10:3
Suite 3:10,16
   67:15,21
summer 33:13
summit 50:20

support 17:7
   50:17
sure 8:3 10:22
   17:6 29:6,22
   32:22 47:1
   49:12
surely 19:9 35:7
   44:15
Suzanne 55:24
   56:20,20
SWA 42:2
swear 6:12
swearing 17:5
sworn 1:20 7:7
   41:21 66:18

T

take 8:19 29:14
   33:1 41:19
   46:8,19 47:10
   51:4,9 59:9
taken 1:21 51:7
   67:6 68:17
Talburt 25:18
   46:5 48:18,25
talk 40:22,24
   43:5 58:3
talked 41:2
   43:13 44:16
   52:8
talking 21:5
   27:6,20 28:3
   29:7,9,13,15
   31:11,12 36:7
   40:21 47:7
   49:25 50:3
   54:15 57:25
target 32:17
targeted 27:17
   27:20 28:4
   29:5 38:17
   42:11 44:17
   46:9
targeting 31:15
team 16:16 25:8

27:2 28:11
   39:9 46:16,17
   47:18 57:9,13
   57:22 58:7,9
   58:11,13,16,17
   58:20
tell 11:19 12:22
   28:9 30:20,23
   31:6 33:24
   34:23,25 40:8
   40:9 49:22
   51:21 53:12,24
   56:22 57:1,21
   57:23 58:20
telling 34:3,8
   44:12
ten 51:10
termination
   55:16,22
testified 7:7
   45:23
testimony 8:22
   9:1 38:9 44:7
   60:10 66:20
   67:5
Texas 1:1,24 2:1
   3:6,16,22 4:2
   6:7,24 66:1,16
   67:10,22 68:4
   68:8,24 69:2
Thank 17:2 32:9
   54:20 61:19
   62:7
thanks 14:18
   51:11
thing 23:20,23
   31:21
things 27:14
   60:7,8,20
think 8:13 21:20
   30:6,6 31:7
   34:24 37:24
   40:21 43:25
   45:1,19 47:11
   52:12,13 55:23

60:24,25 61:12
   61:14
third 53:10
thou 24:24
thought 52:4
thousands 24:20
threat 29:20
three 50:12
   59:14
time 6:8 7:25
   8:24 10:3
   14:22 16:18
   17:16 23:19
   24:7 30:5,15
   35:4 38:3,13
   39:12,24 40:8
   40:9,13,41:2
   42:1 45:3,8
   48:21 50:8,11
   50:16 54:13
   55:5 59:6,11
   59:21 61:17,19
   67:1,5
time's 53:10
times 41:1 54:6
title 56:2
today 7:17,25
   8:5,22 9:1,4
   14:19 24:3,10
   24:14,14 25:1
   26:1
told 16:22 41:3
   44:18 51:21
   52:10
tomorrow 14:3
tool 33:14
topic 32:25 33:9
topple 47:12
totally 31:21
tough 48:21
town 50:9,21,22
trail 31:21
transcript 66:19
   66:22 68:12
transparent

22:4
Transport 1:6
   3:19 6:4 7:2
   66:7 68:1
traveling 50:18
treatment 50:14
trial 16:21 18:8
   33:7 42:25
   49:17 50:5
   51:3,8,20
   59:10
tried 58:3
true 29:10 34:11
   35:7 64:5
   66:20
trust 61:9
trusted 31:22
truth 22:15 34:3
   34:8
truthfully 9:3
try 14:2 27:11
   35:5 40:25
   43:4 52:25
trying 14:1
   19:22 26:19
   34:24 36:21
   45:13 47:11
   49:10 54:4
   59:16
tumor 26:20
twen 51:20
twice 35:3
two 7:1 11:6
   49:15 59:14
TWU 7:5 13:4
   20:17
typically 38:2,4

U

un 32:23
unavailable
   51:5,6
unco 29:20
uncommon
   32:23

Sonya Lacore

uncompound 32:7
undergoing 50:12,13,14
underst 19:16
understand 8:21 8:25 13:7 15:5 18:12,19,21,25 19:2,3,21,23 22:5 24:7,9 41:22 59:12
understanding 9:7
understood 10:22 23:2 27:10 43:2 49:12
union 1:7 3:19 6:5 7:2 10:4,9 10:14,18,25 13:2,8,21,22 14:5,7 15:6,9 16:5,6 19:10 21:23 22:6,9 22:12 24:5,6 24:24 25:4 27:2 32:18 35:19 39:11,16 43:14,15,15 45:14,14 46:6 47:13 55:2,6,8 55:11 58:1 59:17,17,23 60:4,21 62:1 62:14 66:7 68:1
United 1:1 6:6 66:1
unknown 20:11
untrue 35:8,10
untruthful 20:1
upcoming 29:21 32:18
upset 57:21,23 58:5

use 31:13 32:16

**V**

vague 19:18 23:15
Van 53:13
VdV 33:13 51:21 52:10 53:12
Ven 53:13
versus 6:3
vice 24:15 37:17
Videoconfere... 1:12,18,23 3:2
Videographer 4:5 6:1 51:12 51:15 61:20 62:4
VIDEOTAPED 1:12,18
view 51:6
viewing 8:22 9:1
violation 9:11
violations 40:3
Virginia 3:10 67:15
voice 29:19
volume 7:24 23:8 40:11
VS 1:5 66:5

**W**

wa 56:2
wait 18:8 41:5 44:19 57:23
wall 45:9
want 17:4 20:15 21:11 28:20 30:14 32:17 35:15 47:13
wanted 10:22 14:1 49:12
wants 37:15 46:8 62:14
warning 40:3

wasn't 14:20 39:12 55:3 61:14
way 12:11 17:15 31:19,24 32:19 35:5 39:11 44:3 45:5 49:21 55:2 56:24 58:8
we'll 17:6 18:6 22:17 30:1 41:16 59:10 62:8
we're 16:21 18:4 18:4,14,19,21 19:5,5 30:16 59:9
we've 31:25 51:7 53:9
week 32:25 49:24 50:9,18
went 10:19 43:11
weren't 17:8
willing 18:5
witness 1:19,25 6:12 9:16,20 28:25 37:1 41:6,13,21 51:3 52:23 53:8 61:17 63:2 66:18,21 66:23,24
Witness's 5:6
WNCO.com 14:15
wor 45:6
work 3:9 7:15 7:16 23:8 25:8 25:9 29:6 40:11 45:10 46:17 67:13
worked 39:8 45:6
Workers 1:6

3:19 6:4 7:2 66:7 68:1
working 10:21 10:21 36:4 38:15
works 8:15 9:9 39:7
worries 52:2
wouldn't 19:9 20:25 37:20,24 44:18 58:18,18
wow 35:7
wrap 59:13 61:5
write 46:3
wro 46:22
wrong 52:6
wrote 15:19 29:16 40:9 57:24

**X**

**Y**

yeah 21:13 30:24 34:20 41:3,3 46:22 52:2 56:10 59:7 62:8
year 10:1 11:9
years 10:7 23:24 49:15 55:4 57:7
yesterday 62:10

**Z**

Zoom 1:23 3:2 53:3

**0**

01 67:3

**1**

1 47:22 48:8
10/21/2022 68:25
10:51 51:13

10821 69:1
11 5:10
11:05 51:16
11:17 1:22 61:21 62:5,18
12th 50:3
13 5:10,10,11,14
13th 33:6
14 5:11
1404 69:2
1500 3:16 67:21
16 54:19
16,000 24:23
19 5:11 35:12,14 35:18 39:22
1999 69:2

**2**

2 5:2 47:22 48:8 51:16
2001 10:2,8
2004 10:8
2007 26:3
2008 26:3
2013 11:5,20 55:6
2014 5:10,10,11 5:14 11:5,20 12:5,15,16 14:22 15:19 22:5 23:9,10 25:21 55:6
2017 5:12,13,13 5:14,15 37:9 39:12 54:20
2022 1:14,22 6:2 63:2 66:13,23 66:25 68:21
21 5:12 42:1,25 43:1 53:16,17
214.232.9015 3:22 68:4
22 5:13,13 37:9
22160 3:10 67:15

Sonya Lacore

Page 80

**22nd** 39:25 42:3
**23** 5:14,15
**23rd** 41:25 42:5
**24** 1:14,22 5:12
  63:2 66:13
**24th** 6:2
**26** 5:14 33:8
  51:17,18,20
  52:9
**27th** 68:20
**28** 66:25
**2850** 3:15 67:21
**29** 66:23

**3**

**3** 5:10 11:22,23
  11:24
**3:17-cv-02278...**
  1:6 6:6 66:6
**30** 5:10 14:14
  15:19
**302** 3:5 67:10
**3301** 3:21 4:2
  68:3,7
**34** 50:13
**35** 5:12
**3613** 68:24
**37** 5:13
**38** 5:13 39:19,20
**39** 5:13

**4**

**44** 42:2
**4484** 42:2

**5**

**51** 5:14
**556** 1:7 3:19 6:5
  7:2,5 10:5 11:7
  13:4,4,5,25
  20:18 22:6
  66:8 68:1
**5th** 49:25 50:3

**6**

**600** 3:10 67:15

**63** 5:6
**6351** 47:20
**655** 42:22
**66** 5:7,13 37:5,8
  39:22
**67** 5:14

**7**

**7** 5:5
**703.321.8510**
  3:11 67:16
**73** 5:15
**75087** 3:6 67:10
**75201** 3:16
  67:22 69:2
**75226** 3:22 4:2
  68:4,8
**76** 53:18

**8**

**8001** 3:10 67:14
**80s** 27:4
**84** 47:20
**888.988.5317**
  69:3
**8th** 50:1

**9**

**9** 39:23
**9:57** 1:22 6:8
**972.771.3933**
  3:6 67:11