# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>         Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>         Defendants. | Civil Case No. 3:17-cv-02278-X |

## PLAINTIFF CHARLENE CARTER'S MOTION REGARDING TIME LIMITS AND BRIEF IN SUPPORT

Plaintiff Charlene Carter files this motion, and requests that the Court lift time limits on jury time and instead rely on its broad discretion to ensure the efficiency of proceedings, or, in the alternative, extend Carter's time for presentation of evidence and argument to 26.25 hours. In support of this motion, Carter further states as follows:

**I. Introduction**

Following the Court's review of pretrial materials, the Court issued a June 13, 2022 Order Setting Time Limits and allocated Carter twelve hours of jury time.[1] Based on the complexity of the issues in this case, along with the array of exhibits, testimony, and other evidence that will be presented to the jury, Carter submits that extending the twelve-hour time limit is necessary to make the case comprehensible, "more efficient and juror friendly," and will best serve the Court's interests in expediency and the search for truth.

---

[1] Dkt. No. 252.

1

Carter raises this issue now, before trial, because she must present her case at trial with the time limitations in mind, budgeting time for each potential witness from the beginning, and without knowing in advance if or how much additional time the Court might grant towards the end of her case-in-chief. While the Court could extend Carter's time limits during trial when her time runs out, Carter will, by that point, have budgeted her time with important witnesses earlier in the week such that she will have to truncate or eliminate crucial testimony for witnesses who she cannot recall, which will also force her to present evidence in a manner that makes certain information incomprehensible or confusing to the jury.

## II. Argument

Courts certainly have discretion to impose time limits at trial.[2] Notably, courts use time limits "to make trials more efficient and juror friendly,"[3] but, at some point, time limits can "destroy" the essence of trial and deprive parties of their due process rights and right to trial by jury. "When the manner of the presentation of information … is judicially restricted to the extent that the information becomes incomprehensible, then the essence of the trial [is] destroyed.[4] "Unduly restrictive procedures can have a negative impact on the quality of trial."[5]

A trial proceeding is designed to be a search for truth.[6] Essential to the endeavor is an opportunity for the parties through their lawyers to present information in a manner that is comprehensible to a judge and jury.[7] Presenting a comprehensible case is particularly important in a jury trial. Unlike the judge at a bench trial, who has the "virtue of his experience and

---

[2] *U.S. v. Morrison*, 833 F.3d 491, 504 (5th Cir. 2016).
[3] *Id.*
[4] *Sims v ANR Freight Sys., Inc.,* 77 F.3d 846, 849 (5th Cir. 1996).
[5] *Id.* at 850.
[6] *Id*.
[7] *Id*.

2

knowledge of the case long before trial" and "is better able to comprehend the presentation of evidence," the jury is unfamiliar with the issues, evidence, and players involved in the case.[8]

The Fifth Circuit, in *McClain*, "[did] not doubt that it was difficult" for a party, "in the mere twenty hours" allowed each side to put on his case involving complex claims against a company implicating many of its divisions sand spanning almost a decade.[9] Another Court found ten hours of trial time per side was reasonable in an automobile accident case where the parties stipulated to liability.[10]  This case is vastly more complicated, with multiple, distinct causes of action and two defendants, each with their own actors (*i.e.,* far more complex than a standard employment case and certainly more complex than an automobile case with only damages at issue), and the current limitation is twelve hours.

Southwest's disciplinary investigation of Carter, on its own, involves issues and actors spanning multiple departments and levels of management at Southwest, including Inflight services, Human Resources, Employee Relations, the Accommodations and Career Transitions Team, and Labor Relations.  Carter's case also involves activities and events taking place shortly after President Stone became union president in 2013, including her representation of flight attendants in disciplinary matters in 2014 and 2015 (related to the scope of her official capacity and comparative treatment of Carter), the recall effort to remove union leadership, the union's participation in the Women's March and Carter's opposition, and union efforts to target recall supporters in 2017.

---

[8] *Id.*
[9] *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008).
[10] *Grant v. CRST Expedited, Inc.*, Civ. Action No. 1:18-CV-433, 2021 WL 1299227, at *1 (E.D. Tex. April 4, 2021).

Given the number of exhibits, witnesses and the valuable testimony they can offer, the important federal rights and statutory interests at stake, and nearly ten-year history of events in the case, the Court's interests in making the trial "more efficient and juror friendly" are best served by extending time limits on Carter's presentation of the evidence. Furthermore, extending Carter's jury time would not prevent the Court from exercising its powers at trial to limit questioning based upon "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or marginally relevant."[11]

Carter's own testimony, covering activities and events from 2013 to 2017 relevant to her claims and damages, will likely require four or more hours of direct testimony, involving numerous documents and dozens of social media posts, and 30 minutes or more on redirect.[12] Testimony from former Local 556 President Audrey Stone will cover Stone's attempt to discipline Carter for her protected speech and activities, Stone's activities from 2013 and 2017 involving her representation of flight attendants with respect to Southwest's social media policies, and Stone's involvement in the Women's March. That testimony is relevant to all of Carter's claims, including the issue of whether Stone was acting in her official capacity as union president when she reported Carter for discipline. Stone's testimony will likely involve three or more hours of direct testimony and 30 minutes or more on redirect.[13] More than half of Carter's current twelve-hour allotment of jury time will likely have been expended on two witnesses.[14] Truncating necessary evidence from these two witnesses to accommodate the twelve-hour time limit, would render the presentation of

---

[11] *United States v. Maloof*, 205 F.3d 819, 828 (5th Cir. 2000).
[12] Affidavit of Bobby G. Pryor, ¶ 7a.
[13] *Id.,* ¶ 7b.
[14] *Id.,* ¶ 7c.

evidence incomprehensible for the jury, and would thereby undermine the Court's interests in efficiency and the pursuit for truth.

Carter will also call Southwest management employees regarding the company's disciplinary investigation and termination of Carter under the company's social media policies (including its failure to initiate accommodation efforts), the Women's March, Southwest management's interactions with President Stone and Stone's scope of authority, the recall effort to remove union leadership, and union actors' attempts to discipline recall supporters.[15] These witnesses include: Mike Sims (Southwest's corporate representative at deposition and Director of Inflight Relations), Ed Schneider (Southwest's Denver Base Manager who conducted Carter's investigation), Maureen Emlet (Southwest's Labor Relations Manager, retired), Brendon Conlon (Southwest's Director of Labor Relations), Melissa Burdine (Southwest's Labor Relations Manager), Nancy Cleburn (Southwest's Accommodations and Career Transition Team Leader), and Naomi Hudson (Southwest's Senior Director Labor Relations).[16] These seven witnesses will likely involve six or more hours of testimony, even when carefully avoiding duplicative testimony and focusing on the witness's involvement, and an additional one or more hours for re-direct.[17]

The one-hour deposition of Sonya Lacore (Southwest's VP of Inflight Services) was inadequate to cover her full involvement in Carter's claims, such as her communication from Local 556 Contract Action Network Representative and Stone "Core Team" supporter Brian Talburt about targeting union opponents, a communication not on her Southwest employee email but on

---

[15] *Id.*, ¶ 7e.
[16] *Id.*
[17] *Id.*

her private email account.[18] Talburt's targeting of union opponents using Southwest's social media policies for "targeted assassinations" is exactly what Stone did to Carter. Notably, Stone copied Lacore on the complaint she made about Carter, which led to Carter's termination. Carter believes two or more hours of testimony from Lacore is necessary to address this evidence, with fifteen minutes or more on redirect.[19]

Similarly, there is Recall Leader Jeanna Jackson and former Local 556 officials to be called as witnesses for similar topics, such as John Parrott (former Local 556 Secretary-Treasurer), Jessica Parker (former Working Women's Committee Chair), Brian Talburt (Stone's Core Team member and Contract Action Network Representative), and Brett Nevarez (former Local 556 Second Vice President).[20] These witnesses will testify regarding the union Women's March event (and the union's financial support for members' participation in the march), the recall, union animus for Carter, and union actors targeting their opponents on social media. Talburt's testimony alone is likely to involve two or more hours of direct testimony.[21] Carter anticipates that these witnesses will collectively involve five or more hours of direct examination and one hour or more on redirect.[22]

The, opening and closing, as well as cross-examination of witnesses to be called by Defendants are still to be accounted for, and three or more hours is likely to be a minimum amount of jury time for Carter.[23]

---

[18] Talburt's communication further stated that it was the final installment, but no other "installments" in the communications between Lacore and Talburt were produced. Lacore further stated that she never searched for her communications with Talburt.
[19] *Id.,* ¶ 7d.
[20] *Id.,* ¶ 7f.
[21] *Id.*
[22] *Id.*
[23] *Id.,* ¶ 7g.

Counting jury time before trial is not an exact science. Nevertheless, Carter can conclude that twelve hours of jury time will not be adequate to present a comprehensible case to the jury based on the complexity of the issues and the evidence involved. Furthermore, the potential for granting more time near the end of trial would not cure the harm to evidence presented and witnesses examined at the beginning of trial.[24]

### III. Conclusion

The jury time estimates above totaling 26.25 hours are a minimum, not an estimate of likely time needed to efficiently present a comprehensible case. Accordingly, for all of the reasons identified, Carter requests that the Court lift time limits on the presentation of Carter's evidence to the jury and instead rely on its broad discretion to ensure the efficiency of proceedings, or, in the alternative, grant Carter a minimum of 26.25 hours of jury time to present her case. Carter also seeks any additional relief to which she may be entitled.

---

[24] *See* Affidavit of Bobby G. Pryor, ¶¶ 4-5.

Dated: June 30, 2022                          Respectfully submitted,

/s/ Matthew B. Gilliam
Matthew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

## **Certificate of Conference**

I hereby certify that I emailed a draft of this motion to counsel for Southwest and Local 556 on June 30, 2022 to determine their positions and left voicemails for both. Local 556 and Southwest stated by email they are opposed to the relief sought.

/s/ Matthew B. Gilliam

## **Certificate of Service**

I hereby certify that on June 30, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

/s/ Matthew B. Gilliam

8