UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-2278-X |
| | § | |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA, LOCAL 556, and | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Defendants. | § | |

## SECOND AMENDED ORDER ON MOTIONS IN LIMINE

This case is about the 2017 termination of a Southwest Airlines flight attendant, Charlene Carter. Carter has sued Southwest and the Southwest flight attendants' union, Transport Workers Union of America, Local 556, for alleged violations of Title VII and the Railway Labor Act. Carter and Southwest filed motions in limine. [Doc. Nos. 242, 247]. For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Carter's motion in limine [Doc. No. 247] and **GRANTS IN PART** and **DENIES IN PART** Southwest's motion in limine [Doc. No. 242]. The Court **DENIES** Local 556's motion in limine [Doc. No. 276].

This document has been revised from the original version [Doc. No. 266] and the first-amended version [Doc. No. 275] to reflect (1) the Court's oral rulings from the pretrial conference held on June 16, 2022; (2) the Court's rulings on Carter's motion in limine point 1 related to the arbitration proceedings and Carter's motion in limine point 30 related to Southwest employee benefits; (3) and the Court's ruling on

1

Local 556's motion in limine.

## I. Legal Standard

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."[1] "Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds."[2] To that end, "evidentiary rulings should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context."[3]

## II. Analysis

A. **Carter's Motion in Limine**

1. *Carter seeks to prohibit any "evidence, statement, testimony or argument regarding the December 2017 arbitration proceedings regarding whether Southwest had 'just cause' under the collective bargaining agreement to fire Carter and the arbitrator's findings."*

Both Southwest and Local 556 oppose this request. Local 556 argues that the arbitration proceedings are relevant to Carter's duty-of-fair-representation claim against the union.[4] Local 556 explains that the results of the arbitration "evidences Local 556's successful representation of Ms. Carter as the Union was able to negotiate"

---

[1] *King v. Cole's Poultry, LLC*, No. 1:14-cv-00099-MPM-DAS, 2017 WL 532284 at *1 (N.D. Miss. Feb. 9, 2017) (cleaned up).

[2] *Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-00129-DMB-SAA, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015).

[3] *King*, 2017 WL 532284 at *1 (cleaned up).

[4] *See* Doc. No. 251 at 1.

a last-chance agreement that offered Carter alternatives to termination.[5]  Both Local 556 and Southwest acknowledge the Court's prior ruling that the arbitrator's findings are not preclusive or binding in this case, and they seek jury instructions reflecting that.  The point, as Southwest's counsel explained at the pretrial conference, is that "the fact of Union representation at those proceedings . . . show[s] the fairness of those proceedings as opposed to [the parties needing to] get[] into any other detail, quite frankly."[6]

The Court agrees that the arbitration proceedings' occurrence, that Carter was represented by Local 556 at those proceedings, and that Local 556 was able to negotiate a last-chance agreement are relevant at least to Carter's duty-of-fair-representation claim.[7]  So the Court **DENIES IN PART** Carter's request and will allow testimony and evidence along those lines.[8]

While the Court will allow general testimony about the arbitration proceedings' occurrence and Local 556 procuring a last-chance agreement for Carter, the Court will not allow the arbitrator's written decision to go to the jury and will also prohibit substantial testimony and evidence related to the arbitrator's specific findings.  The Court finds that the danger of unfair prejudice, confusing the issues, and misleading

---

[5] *Id.*

[6] Doc. No. 272 at 28:24–29:3.

[7] *See Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986) (affirming district court's decision to "admit into evidence the fact that the parties had arbitrated" and "refus[e] to admit the text of the arbitration decision and the arbitration transcript into evidence.")

[8] The precise, appropriate legal purpose that such evidence and testimony may serve will be determined by the Court's limiting instructions and jury charge.

the jury substantially outweigh any relevance the written decision and specific findings may have.[9]

As the Court explained in its prior order denying all parties' motions for summary judgment:

> [T]he legal questions that the arbitrator decided aren't the same as the ones presented in this federal case. The arbitrator found simply that Southwest had "just cause" under the collective bargaining agreement to terminate Carter's employment, while Carter's claims in this suit . . . involve markedly different legal standards.[10]

The Court also explained that the arbitrator specifically stated that it was not considering Carter's Title VII religious or Railway Labor Act rights.[11]   Finally, the Court conducted an analysis pursuant to *Alexander v. Gardner-Denver Co.*[12] and declined to grant issue-preclusive effect or heavy weight to the arbitrator's findings.

Now that the case is going to a jury, the Court finds that allowing detailed and substantial evidence related to the arbitrator's determination that Southwest had "just cause" to terminate Carter runs a high risk of unfair prejudice, confusing the issues, and misleading the jury.  Giving the arbitrator's written decision to the jury presents the same risk.  Indeed, the risk of unfair prejudice is especially acute considering the arbitrator's colorful descriptions of Carter's conduct and Southwest and Local 556's response.  Plus, much of the arbitrator's written decision is completely irrelevant to the issues present in this case.  Here are some excerpts from the arbitrator's written

---

[9] FED. R. EVID. 403.

[10] Doc. No. 232 at 15–16.

[11] *Id.*

[12] 415 U.S. 36 (1974).

4

decision that demonstrate the unfairly prejudicial nature of the document—were it
given to the jury:

- About Carter's messages: "The use of social media has gotten totally
  out of hand.  [Southwest] has the right to regulate this conduct, and
  has realized the seriousness of what is happening . . . .  Enough is
  enough."[13]

- Under the heading "Evidence of Guilt," the arbitrator wrote that "[t]o
  compound matters, [Carter] also accused [former Local 556 president]
  Audrey Stone of supporting murder because she participated in the
  2017 Women's March . . . in Washington, D.C., which was apparently
  sponsored by Planned Parenthood."[14]

- The arbitrator quoted the testimony of Audrey Stone, who said that
  Carter's Facebook messages "hurt" her, were "vile" and "disgusting,"
  and "crossed a line."[15]  Then, for himself, the arbitrator said: "I
  completely concur.  I found the postings and messages to be repulsive
  and beyond the bounds of civility."[16]

- The arbitrator also made comments about Carter's inner feelings of
  remorse or lack thereof: "I have studied, and taught, *The Power of*

---

[13] Doc. No. 50 at 14.

[14] Doc. No. 50 at 16.

[15] Doc. No. 50 at 20.

[16] Doc. No. 50 at 21.

5

*Apology*, and [Carter's] excuses are nowhere near the five elements always present in a sincere apology."[17]

The Court is concerned "that the jury may give special weight to the quasi-judicial conclusions of the arbitrator."[18]   Allowing detailed and substantial evidence and testimony about the arbitrator's specific findings and written decision also runs the risk of "usurp[ing] the jury's role in assessing credibility"[19]—because the jury will be hearing from the same witnesses who were involved in the arbitration.

For these reasons, the Court finds that the risk of unfair prejudice, misleading the jury, and confusing the issues substantially outweighs any probative value that the arbitrator's written decision (and substantial testimony about the arbitrator's specific findings) would have.  Accordingly, the Court **GRANTS IN PART** Carter's request.

2. *Carter seeks to prohibit any "evidence, statement, testimony or argument suggesting that Carter's Facebook messages to President Stone or her public complaints were not protected activity."*

Both Southwest and Local 556 oppose this request.   The Court **DENIES** Carter's request.

3. *Carter seeks to prohibit any "evidence, statement, testimony, or argument*

---

[17] Doc. No. 50 at 21 n.6.

[18] *Kirouac v. Donahoe*, No. 2:11-CV-00423-NT, 2013 WL 5952055, at *7 (D. Me. Nov. 6, 2013) (quoting *Faigan v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) ("A lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings.")).

[19] *Wilmington*, 793 F.2d at 919.

*suggesting that Carter traveled to Washington, D.C., to 'participate in the Women's March.'"*

Local 556 agrees to this request.  Southwest is partially opposed.  The impetus for this request is Southwest's motion for summary judgment, in which it stated that Carter traveled to Washington, D.C. to "participate in the Women's March."[20]  Carter has been objecting to that characterization ever since and argues in her motion in limine that she did travel to D.C. on January 20, 2017 to attend President Trump's inauguration but left D.C. the next day, when the Women's March began.  Carter argues that any evidence about her travel to D.C. for the inauguration is irrelevant and that "forcing [her] to introduce evidence that she was attending President Trump's inauguration to rebut a false allegation she was at the Women's March" would be unfairly prejudicial given that a juror may have "strong feelings about President Trump" and that the jury "may confuse President Trump's 2017 inauguration with the events at the Capitol on January 6, 2021."[21]

In response, Southwest says that it "does not intend to argue or adduce evidence that Carter traveled to Washington D.C. for the express purpose of participating in the Women's March."[22]  So it agrees to the exclusion of "evidence or argument that Carter's purpose in traveling to Washington was to participate in the Women's March."[23]  The Court therefore **GRANTS** as unopposed Carter's request to prohibit any argument or

---

[20] Doc. No. 167 at 19–20.

[21] Doc. No. 247 at 6.

[22] Doc. No. 262 at 5.

[23] *Id.*

evidence that Carter traveled to D.C. to participate in the Women's March.

However, Southwest contends that "Carter's travel to Washington provides context regarding her Facebook messaging to Stone and should be admissible background evidence."[24]   Southwest does not explain how Carter's January travel to President Trump's inauguration provides "context" about her February messages to President Stone about the union's activity and participation in the Women's March. Even if such information would provide "context," it does not appear to be probative or relevant context.   The Court therefore **GRANTS** Carter's additional request that the Court prohibit evidence regarding her travel to D.C. for President Trump's inauguration.

4. *Carter seeks to prohibit any "evidence, statement, testimony or argument regarding a picture of a t-shirt that says, 'Fucktard' and 'I Voted Brett Nevarez Cause he Respects me.'"*

Carter argues that she didn't make those statements and that the offensive nature of the photo could unfairly prejudice jurors against her.   Both Southwest and Local 556 oppose this request because, they say, the photo reflects Carter's union opposition conduct and because Carter presented the photo in her grievance and investigation process.   The Court agrees with the defendants that the photo may be relevant and that the risk of unfair prejudice does not substantially outweigh any probative value.   So the Court **DENIES** this request.

_____

[24] *Id.*

5. *Carter seeks to prohibit any "evidence, statement, testimony or argument suggesting that Carter called Local 556 President Audrey Stone a 'murderer.'"*

Carter argues that she didn't call Stone a murderer but instead told Stone that the union was supporting "murder."[25]  Southwest and Local 556 oppose this request. They say that they "should be permitted to make arguments and suggest inferences regarding Carter's intent when making these statements, which Carter is of course free to rebut, and the jury can make up its own mind."[26]  The Court agrees with the defendants and **DENIES** this request.

6. *Carter seeks to prohibit any "evidence, statement, testimony or argument suggesting that Carter referred to Local 556 or any of its officials or members as a 'criminal' or 'crook.'"*

Carter argues that other flight attendants called Local 556 officials "criminals" and "crooks;" Carter simply forwarded those messages to President Stone.  Southwest and Local 556 oppose this request.  They argue that "Carter can explain to the jury that she was forwarding the messages of other flight attendants who used the terms 'criminal' and 'crook,' and these communications are part of Carter's opposition to union leadership and thus are clearly relevant."[27]  The Court agrees and **DENIES** this request.

---

[25] Doc. No. 247 at 7.

[26] Doc. No. 262 at 5–6.

[27] Doc. No. 262 at 6.

7. *Carter seeks to prohibit any "evidence, statement, testimony, or argument that Carter 'threatened' President Audrey Stone."*

This point arises from Carter's message to President Stone, in which Carter stated: "by the way the RECALL is going to Happen and you are limited in the days you will be living off of all the [Southwest Airlines flight attendants] . . . cant wait to see you back on line."[28]  Carter argues that—in the world of flight attendants—telling someone that you'll see them "on line" just means that you'll see them "working on a flight" or "out of office" and that the defendants and Stone therefore shouldn't be allowed to characterize Carter's message as a threat.[29]

Both Southwest and Local 556 oppose this request.  They say that Carter is "improperly seek[ing] through a motion in limine to limit argument about the meaning of Carter's language" and that, regardless, the jury "should be allowed to hear Stone's testimony as to her perception of Carter's message."[30]  The Court agrees and **DENIES** this request.

8. *Carter seeks to prohibit any "evidence, statement, testimony, or argument suggesting that Carter wrote the Facebook message stating '#Democrats - This is what you support? If its your body your choice, who is this laying in the fucking bowl? It doesn't looks like your body. #evil #murder #ownit #abortion.'"*

---

[28] Doc. No. 247 at 8.

[29] *Id.*

[30] Doc. No. 262 at 6.

Carter argues that she didn't write that statement. Southwest and Local 556 oppose this request. They argue that "Carter is free to explain to the jury what portions of the messages she sent to Stone were written by her and what portions are forwarded statements, but there is no reason to exclude [this] evidence."[31] The Court agrees and **DENIES** this request.

9. *Carter seeks to prohibit any "evidence, statement, testimony, or argument* [1] *regarding Southwest managers' subjective views regarding abortion, including* [2] *any such evidence, statement, testimony, or argument suggesting that Carter believes there is no limit to what she can say or be allowed to say."*

On [1], Carter does not explain why Southwest managers' subjective views regarding abortion should be entirely excluded from the jury's consideration. Local 556 and Southwest oppose this request. They argue that such evidence might be relevant to Southwest's motivations in firing Carter and that the jury should "not be shielded from those views and beliefs and should be afforded the opportunity to weigh those consideration."[32] The Court agrees and **DENIES** this request.

On [2], Carter appears to make a somewhat vague argument that the defendants should not be able to submit evidence or argument about the scope of Carter's contentions about her religious practices and beliefs. The Court agrees with Carter that—if this comes up at trial—there could be issues regarding speculation and

---

[31] *Id.* at 7.

[32] *Id.*

11

lack-of-foundation. But at least for the purposes of this motion in limine, Carter hasn't identified any specific evidence or argument that should be excluded. And, of course, the Court will not prohibit the defendants from making legal arguments to the Court about religious activity in the Title VII context or union-opposition activity in the Railway Labor Act context. So the Court **DENIES** this request as well.

   *10. Carter seeks to prohibit any "evidence, statement, testimony, or argument regarding Carter's lack of subjective evidence of Southwest managers' private discriminatory intent."*

This point arises from Carter's deposition, where the defendants asked Carter questions such as "[i]s there any other evidence that you possess that Mr. Schneider acted against you because he was hostile to or discriminating against your religious beliefs?"[33] To that, Carter responded, "No."[34] Another question was: "What evidence, if any, do you have that Ms. Jones sought to discriminate against you on the basis of your religious beliefs?"[35] Carter responded: "None, except that I said I was a Christian."[36] Carter wants evidence about this testimony excluded because, she says, that "[a]llowing such evidence would leave a misleading impression with the jury that Carter had no evidence of discriminatory intent, which is untrue."[37] But this evidence is plainly relevant, and she is welcome to rebut any argument or testimony about her

---

[33] *Id.* at 8.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] Doc. No. 247 at 6.

deposition at the trial.  This is simply not a proper basis to exclude evidence through a motion in limine, and the Court **DENIES** this request.

11. *Carter seeks to prohibit any "evidence, statement, testimony, or argument that Carter believed President Stone tried to get her fired only because she was an objector who resigned from union membership and supported the recall, and, thus, that Carter did not believe Local 556 discriminated against her based on her religious beliefs."*

Southwest does not have a position on this limine point, but Local 556 is opposed.  The Court **DENIES** this request because, as the Court has stated previously, a reasonable jury could find that the defendants legally acted against Carter, illegally acted against her in violation of Title VII, illegally acted against her in violation of the Railway Labor Act, or illegally acted against her in violation of both of these laws.  And of course the Court also concluded that a reasonable jury could go either way on Carter's duty-of-fair-representation claim against Local 556.  The Court will not disallow the defendants from arguing that the jury should choose any of these possibilities.

12. *Carter seeks to prohibit any "evidence, statement, argument, or testimony regarding Local 556's representation of Carter after President Stone reported her to Southwest for discipline."*

Both Local 556 and Southwest oppose this request.  Everyone, including Carter, agrees "that [Local 556] did not discriminate nor improperly represent her, in any way,

at either the fact-finding meeting or Step 2 grievance."[38]  The Court **DENIES** this request to exclude such evidence in toto.  However, as explained above in Carter's motion in limine point 1, the Court will limit testimony and evidence related to the arbitration proceedings.

> *13. Carter seeks to prohibit any "evidence, statement, or argument presented by Local 556 regarding an undue hardship defense, including any evidence that reasonably accommodating Carter's religion would have imposed an undue hardship on the union."*

Southwest has no position on this point and Local 556 is unopposed.  So the Court **GRANTS** this request.

> *14. Carter seeks to prohibit "any evidence, statement, argument, or testimony about whether Carter requested a religious accommodation."*

Although the Court has explained that an express request for a religious accommodation is not necessary for a Title VII violation to occur, that does not mean that such evidence and testimony is irrelevant and should be excluded from the jury's consideration.[39]  Failing to expressly request a religious accommodation and the contours of any request that is made can be relevant to whether the defendant "knew, suspected, or reasonably should have known the cause for [the plaintiff] refusing [to

---

[38] Doc. No. 182 at 7.

[39] *See* Doc. No. 232 at 13–14 (citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015)).

do what the employer asked] was [the plaintiff's] conflicting religious belief."[40]  So the Court **DENIES** this request.

> *15. Carter seeks to prohibit any "evidence, statement, argument, or testimony, that Southwest fired Carter for 'the manner of communications, insults, threats, and graphic images.'"*

Carter does not identify any specific evidence that she wants excluded and does not appear to argue that she does not want any of her messages or communications excluded.  The Court **DENIES** this request.

> *16. Carter seeks to prohibit any "evidence, statement, argument, or testimony, that Carter could engage in her religious observances, beliefs, and practices without violating Southwest's social media policies."*

Carter argues that such evidence would leave "the jury with a misunderstanding of the law applicable to its verdict" because, she says, Southwest had "an affirmative obligation to explore" with Carter "options" for her to "engage in her [religious] practices without violating the company's policies."[41]   In response, Southwest argues that such evidence is relevant to whether Carter's religious beliefs and practices conflicted with an employment requirement.  The Court agrees and **DENIES** this request.

> *17. Carter seeks to prohibit any "evidence, statement, argument, or testimony, that*

---

[40] *Nobach v. Woodland Vill. Nursing Ctr.*, 799 F.3d 374, 379 (5th Cir. 2015).

[41] Doc. No. 247 at 13.

*Southwest had no actual knowledge that Carter was religious or that her actions or statements were based upon her religious belief."*

Again, while any such evidence may not be dispositive of Carter's Title VII claim, that does not mean that the evidence is irrelevant and should not be seen by the jury. So the Court **DENIES** this request.

*18. Carter seeks to prohibit "any evidence, statement, argument, or testimony, that Carter failed to notify Southwest of her religious beliefs 'prior to violating the [social media] policy.'"*

Again, while any such evidence may not be dispositive of Carter's Title VII claim, that does not mean that the evidence is irrelevant and should not be seen by the jury. So the Court **DENIES** this request.

*19. Carter seeks to prohibit any "evidence, statement, or argument regarding Southwest offering or Carter declining reinstatement as part of Southwest's 'Last Chance Agreement.'"*

At the close of the grievance process, after the step 2 hearing at which Carter appeared with representatives of Local 556, Southwest offered Carter a "last chance agreement." Under the agreement, Carter's termination would have been reduced to a 30-day suspension and she would have been reinstated subject to her avoidance of any violation of Southwest's social media and bullying and hazing policies for a period of 24 months. Carter declined the agreement.

Both Southwest and Local 556 oppose this request.  All parties agree that the last chance agreement constitutes a settlement offer that would normally be excluded pursuant to Federal Rule of Evidence 408.  The defendants argue that the last chance agreement could be used in a way that satisfies the "another purpose" exception of Rule 408(b)—by tending to show whether Carter mitigated her damages.[42]  So the Court **DENIES** this request.

20. *Carter seeks to prohibit any "evidence, statement, argument, or testimony regarding any person's specific support for Hillary Clinton or Donald Trump."*

Carter says that such evidence is irrelevant and that the resulting unfair prejudice would substantially outweigh the probative value.  In light of the parties' representations at the pretrial conference and the Court's ruling there[43], the Court **GRANTS IN PART** and **DENIES IN PART** this request.  The Court will allow evidence of Carter's own statements about these persons to the extent that those statements were considered in the termination process.  However, the Court will prohibit gratuitous questioning of witnesses and testimony about these persons that is not anchored to a specific exhibit or statement that Carter made to the witness about these persons.

*       *       *

---

[42] *See, e.g.*, *Bhandari v. First Nat'l Bank of Com.*, 808 F.2d 1082, 1103 (5th Cir. 1987) (affirming the discretion of the district court's admission of a settlement offer under this "another purpose" exception); *ESPN, Inc. v. Off. of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 408–413 (S.D.N.Y. 1999) (allowing the admission of a settlement offer under the "another purpose" exception of 408(b)).

[43] *See generally* Doc. No. 272 at 30–35.

17

The Court **GRANTS AS UNOPPOSED** Carter's motion in limine points 21–24:

21. *Any evidence, statement, argument, or testimony regarding Southwest's July 8, 2020 Motion and Request for Sanctions, 63 and any attempt to elicit testimony or information from Plaintiff about communications for which Southwest sought disclosure, as part of the motion.*

22. *Any evidence, statement, or argument regarding settlement negotiations.*

23. *Any evidence, statement, or argument suggesting that Plaintiff, through her attorney, asserted claims of privilege during discovery.*

24. *Any attempt to elicit testimony from Plaintiff about communications with her lawyers.*

\*      \*      \*

25. *Carter seeks to prohibit any "attempt to request Plaintiff's counsel to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury."*

Southwest is unopposed, but Local 556 says that it is confused by the objection and seeks further clarification. The Court **DEFERS** ruling on this request until the

situation arises at trial.

\*      \*      \*

The Court **GRANTS AS UNOPPOSED** Carter's motion in limine points 26–28:

> 26. *Any statement of the law, other than that regarding the burden of proof and the basic legal definitions counsel believe to be applicable, before the Court rules on the law applicable to the case.*

> 27. *Any evidence, statement, or argument that Defendants were, or were not, covered, insured, or otherwise protected by any bond, contract, or policy of insurance at the time of the occurrence made the basis of this suit.*

> 28. *Any evidence, statement, or argument of Defendants' financial adversity or Plaintiff's financial prosperity.*

\*      \*      \*

> 29. *Carter seeks to prohibit any "evidence, statement, or argument that Plaintiff received contributions from family, friends, or her husband."*

Southwest is unopposed, but Local 556 opposes and says that Carter is trying "to preclude evidence related to her mitigation of damages that are directly relevant to Defendant's Affirmative Defenses."[44]  The Court **DENIES** this request.

---

[44] Doc. No. 251 at 6.

*30. Carter seeks to prohibit any "other references to collateral sources of employee benefits that would have been provided by Southwest but for Carter's termination."*

Southwest is unopposed, but Local 556 opposes and says that Carter is trying "to preclude evidence related to her mitigation of damages that are directly relevant to Defendant's Affirmative Defenses."[45]  The Court **DEFERS** ruling on this point until the situation arises at trial.

*   *   *

The Court **GRANTS AS UNOPPOSED** Carter's motion in limine points 31 and 32:

*31. Any evidence, statement, or argument that any recovery by Plaintiff either would or would not be subject to federal income taxation or any other form of taxation.*

*32. Any evidence, statement, or argument that Plaintiff filed this Motion in Limine or that the Court ruled in response.*

B. **Southwest's Motion in Limine**

*1. Southwest asks the Court to limit testimony and evidence related to Southwest's treatment of other employees.*

Southwest argues that the Court should do so because "evidence regarding an

---

[45] *Id.* at 6.

employer's treatment of non-party employees is only relevant if the plaintiff and proffered comparator are 'similarly situated'" and because, according to Southwest, Carter has not identified any similarly situated employees.[46]

In response, Carter argues that Southwest fundamentally misunderstands why she seeks to introduce evidence of employee discipline.  She explains that she "does not contend that Southwest's different treatment of comparator (i.e., 'similarly-situated') employees is evidence that Southwest's stated reason for termination was a pretext for discrimination."[47]  "Instead, Carter seeks to introduce evidence of employee discipline to demonstrate Local 556 representatives' knowledge of and involvement in efforts to discipline recall supporters, nonmember objectors, and other union opponents, which is directly relevant to Carter's RLA, Duty of Fair Representation, and Title VII claims against Local 556."[48]  Carter argues that the "evidence of employee discipline will show that the union treated flight attendants with personal animosity, political favoritism, invidiously with respect to their employment, or with a purpose to harm."[49]  Carter also argues that "evidence that Local 556 representatives, including President Stone, exerted continuing pressure on Southwest to discipline union opponents is relevant to proving Carter's RLA retaliation against

---

[46] Doc. No. 247 at 3.

[47] Doc. No. 254 at 2.

[48] *Id.*

[49] *Id.* at 3–4.

the union."[50]

Consistent with the Court's oral ruling at the pretrial conference, the Court **GRANTS** this point.[51]

2. *Southwest asks the Court to prohibit testimony and evidence related to Southwest's financial condition.*

The Court **GRANTS** this request to the extent that such evidence would be offered to "arouse prejudice against" the defendant "merely because it is a corporate entity . . . in an effort to appeal to any kind of bias."[52]  However, such evidence can be offered to "bring forth evidence of financial condition if punitive damages are warranted."[53]  The parties agree that punitive damages are potentially available for Carter's Title VII claim, so the Court **DENIES** this request.

3. *Southwest asks the Court to prohibit "Golden Rule" and "Conscience-of-the-Community" statements.*

The Fifth Circuit has held that such arguments are "improper only in relation to damages" but "not improper when urged on the issue of ultimate liability."[54]  In the

---

[50] *Id.* at 4.

[51] Doc. No. 272 at 47.

[52] *Mindrup v. Goodman Networks, Inc.*, No. 4:14-CV-00157, 2015 WL 11089474, at *3 (E.D. Tex. Oct. 19, 2015).

[53] *Mayer v. Future Elecs. GP Corp.*, Civil Action No. 2:07-CV-46-SA-SAA, 2008 WL 4787536, at *1 (N.D. Miss. Oct. 30, 2008); *see also Burton v. Wyeth-Ayerst Laboratories Div. of Amer. Home Prods. Corp.*, 513 F. Supp. 2d 708, 718–19 (N.D. Tex. 2007) (Fish, J.).

[54] *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983).

fast-paced context of trial, this can be a tough line to toe.  But the Court will police counsel on this topic, and will prohibit any conscience-of-the-community or golden-rule arguments that are inconsistent with the Fifth Circuit's instructions.  Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** this request.

*4.   Southwest asks the Court to prohibit comments about defense counsel's law firm.*

The Court **GRANTS** this request as unopposed.

**C.  Local 556's Motion in Limine**

*1.  Local 556 seeks to prohibit "evidence regarding the alleged experiences of other 'Agency Fee Objectors' and Union dissenters over the course of several years prior to Defendant Southwest terminating Plaintiff's employment and those afterwards as well."*

Local 556 argues that the Court should do so because this evidence allegedly fails to meet the Fifth Circuit's "similarly situated" test for analyzing the admissibility of comparators in Title VII claims.[55]   Furthermore, Local 556 argues that this evidence's probative value would be substantially outweighed by the risks of unfair prejudice to Local 556 and confusion by the jury.[56]

In response, Carter argues that the "similarly situated" Title VII analysis applies to employers but not unions, because while "[e]mployers may generally apply

---

[55] Doc. No. 276 at 4.

[56] *Id.* at 4–5.

work rules differently to differently situated employees[,] [t]he same is not true for unions."[57]  Carter also argues that Local 556 misapprehends what claim such evidence is particularly relevant to—her Duty of Fair Representation claim.  As Carter explains, because unions "owe all represented employees a fiduciary duty of fair representation" and breach that duty "when they act arbitrarily, discriminatorily, or in bad faith," this evidence is relevant to demonstrating how Local 556's actors violated that duty.[58]  Additionally, Carter explains that this evidence will not be used to impermissibly introduce prejudicial character evidence, rather this evidence will be used to prove "motive, opportunity, intent, preparation, plan, and knowledge" in line with what the Federal Rules of Evidence allow.[59]

As for Carter's Railway Labor Act retaliation and Duty of Fair Representation claims, Local 556 points to no caselaw to support its assertion that such evidence would be irrelevant to these claims.  Carter's stated purpose of using this evidence to prove that Local 556 acted "arbitrarily, discriminatorily, or in bad faith" is at least relevant to Carter's Duty of Fair Representation claim.  Furthermore, the Court finds that the relevance of such evidence is not substantially outweighed by the risks of unfair prejudice and jury confusion.  Therefore, the Court **DENIES** this request.  Because the Court **GRANTED** as unopposed a similar request from Southwest[60] and if and when this evidence comes in at trial, the Court will give a limiting instruction that

---

[57] Doc. No. 279 at 3–4 (internal citations omitted).

[58] *Id.* at 4.

[59] *Id*. (citing FED. R. EVID. 404(b)(1)–(2)).

[60] Southwest motion in limine point 1.

24

such evidence is to be considered by the jury only as to Carter's claims against Local 556, not Southwest.

\*       \*       \*

**IT IS SO ORDERED** this 1st day of July, 2022.


_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE