## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X |

### PLAINTIFF CHARLENE CARTER'S TRIAL BRIEF IN RESPONSE TO THE ISSUE OF WHETHER CARTER ENGAGED IN RLA-PROTECTED ACTIVITY IS A QUESTION OF LAW

Pursuant to the Court's July 5, 2022 Order[1], Plaintiff Charlene Carter ("Carter") files this Trial Brief to address the following question: "Is whether Plaintiff Carter engaged in activity protected by the Railway Labor Act Section 152 Third and Fourth, a matter of law to be decided by the Court for the purposes of Carter's Railway Labor Act retaliation claim?"[2]

The Court can decide that Carter engaged in RLA-protected activity as a matter of law because the scope of the RLA's protection is a legal question, and the substance of her protected activity and that activity as the cause for her termination are undisputed.[3] Carter demonstrated the scope of RLA protection for her rights.[4] Carter's Facebook videos and messages were the conduct that

---

[1] Doc. No. 308.

[2] *Id.*

[3] *See NLRB v. Allied Aviation Fueling of Dallas, L.P*, 490 F.3d 374, 379 (5th Cir. 2007) (characterizing the question of whether signing an employee's name to a grievance form constituted protected activity as a question of law); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006); *Reef Indus. Inc. v. NLRB*, 952 F.2d 830, 837 (5th Cir. 1991); *Browning v. Sw. Rsch. Inst.*, No. SA-05-CA-0245-FB, 2006 WL 843061, at *7 (W.D. Tex. Oct. 6, 2006).

[4] Carter's Supp. Mot. Summ. J. Br., Doc. No. 221, at 32-38.

motivated the Local 556 President to report her and Southwest's decision to fire her. Carter did not engage in some different, unprotected activity that Southwest or Local 556 asserts as an alternative pretext for Carter's termination. There is no factual dispute for the jury to resolve regarding Carter's actual RLA-protected activities.

The Court's question presented also raises the issue of whether Carter's activities lost their protection, but that is also a legal question for the Court to decide. Southwest and Local 556 do not contest that Carter engaged in RLA-protected activity. Instead, they argue that Carter's activities exceeded RLA protections. Yet, "intemperate, abusive, insulting, or hyperbolic" activity is protected under RLA Section 152 Third and Fourth.[5] Even if the jury believed that Carter engaged in "intemperate, abusive, insulting, or hyperbolic" activity, Carter's RLA-protected activity would not lose its protection as a matter of law.[6] "[T]he most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth."[7] Neither Southwest nor Local 556 claims that Carter engaged in defamatory, libelous, or illegal activity.[8] Indeed, Carter did not disseminate or publicize any false or defamatory information about President Stone.[9] Carter privately sent her RLA-protected Facebook videos and messages to President Stone, and did not send them to any other Southwest employees.[10]

Similarly, the Court can conclude, as a matter of law, that cases of "flagrant, violent, extreme, egregious, opprobrious, offensive, obscene, or wholly unjustified" conduct losing their protection because it was *directed at the employer or the workplace* are also inapposite.[11] The

---

[5] *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 882-83 (9th Cir. 2002); *see also* Court's Draft Jury Charges and Instructions.
[6] *See also* Doc. No. 221, at 42-47.
[7] *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 63 (1966).
[8] 490 F.3d at 379.
[9] (Carter App.105, 80, 81, 531).
[10] *Id.*
[11] *See e.g., Reef Indus. Inc. v. NLRB*, 952 F.2d 830, 837 (5th Cir. 1991).

2

workplace/employer requirement is important, because, under the Fifth Circuit's analysis, the exception to the rule that union activity is protected as a matter of law only applies because of the employee rights must be balanced against the employer's interest in maintaining order and respect.[12] That interest is not implicated in non-work conduct. Carter's RLA expression was confined to private Facebook videos and messages directed solely at the union, not at Southwest or the workplace.[13]

Carter privately communicated union dissident speech to the union president in Facebook communications addressed solely to Local 556 and its leadership.[14] Union presidents are not like ordinary employees when it comes to heated speech and criticism over union matters. Federal labor laws, including the RLA, NLRA, and LMRDA, all subject union officers to extremely robust speech from the employees they purport to represent.[15] The RLA protects union dissident speech about union activities even if it offends the union and its officers.

Carter's speech was *not* directed at the company, *not* made at work or during work hours, and had *no* adverse effect on the workplace.[16] Carter never criticized Southwest management in her Facebook communications to President Stone, which concerned only the union and its activities.[17] Carter's videos and messages communicated her opposition to Local 556's representation, leadership, and use of employee's forced fees.[18] Carter's Facebook videos and messages did not attack or disparage Southwest's products or services.[19] Carter did not affect the employer's ability

---

[12] *Id.*
[13] Carter Resp. Br. to Local 556 Mot. Summ. J. Br., Doc. No. 225, at 22-24.
[14] (Carter App.105, 80, 81, 531).
[15] *See Hall v. Cole*, 412 U.S. 1 (1973); *Petramale v. Local No. 17 of Laborers Int'l Union*, 736 F.2d 13, 16 (2d Cir. 1984).
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*.; *see New York Univ. Med. Ctr.*, 261 N.L.R.B. 822, 824 (1982).

to maintain order or discipline in the workplace,[20] which means insubordination, urging or inciting coworkers to take action against their employer,[21] or hurling invective or profanities at supervisors.[22] Southwest received no other reports or complaints of Carter's conduct.[23] Nothing regarding the place of the discussion affected Southwest's right or ability to maintain order or discipline in the workplace.[24]

### Conclusion

For the foregoing reasons, whether Carter engaged in RLA-protected activity is a legal question that the Court can decide as a matter of law. The scope of the RLA's protection is a legal question, and it is undisputed what protected activity Carter engaged in or was fired for.  The question regarding whether her protected activities were excluded from RLA protection because of their egregious or offensive nature is not implicated because the conduct was outside the workplace.

Dated: July 10, 2022                    Respectfully submitted,


                                        s/ Matthew B. Gilliam
                                        Mathew B. Gilliam (*admitted pro hac vice*)
                                        New York Bar No. 5005996
                                        *mbg@nrtw.org*
                                        c/o National Right to Work Legal Defense
                                        Foundation, Inc.
                                        8001 Braddock Road, Suite 600
                                        Springfield, Virginia 22160
                                        Tel: 703-321-8510
                                        Fax: 703-321-9319

                                        Bobby G. Pryor
                                        State Bar No. 16373720
                                        bpryor@pryorandbruce.com
                                        Matthew D. Hill, Of Counsel

---

[20] *See, e.g., Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 798 (1945).
[21] *See e.g., Southwestern Bell Telephone Co.*, 200 N.L.R.B. 667 (1972).
[22] *See e.g., Caterpillar Tractor Co.*, 276 N.L.R.B. 1323, 1332 (1985).
[23] (Carter App. 309; Sims 221:13-16).
[24] *Id*.

State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

**<u>Certificate of Service</u>**

I hereby certify that on July 10, 2022, I electronically filed the foregoing document with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record

/s/ Matthew B. Gilliam