## Page 1

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                     DALLAS DIVISION
CHARLENE CARTER,       )
                       )
     Plaintiff,        )
                       )
VS.                    ) CIVIL ACTION
                       )
SOUTHWEST AIRLINES CO.,) NO.: 3:17-cv-02278-X
AND TRANSPORT WORKERS  )
UNION OF AMERICA, LOCAL)
556,                   )
                       )
     Defendants.       )


          ---------------------------------
      VIDEOCONFERENCE AND VIDEOTAPED DEPOSITION OF
                      BRETT NEVAREZ
                      JULY 8, 2022
          ---------------------------------


          VIDEOCONFERENCE ORAL AND VIDEOTAPED
DEPOSITION OF BRETT NEVAREZ, produced as a witness
at the instance of the Plaintiff, and duly sworn,
was taken in the above-styled and numbered cause
on June 29, 2022, from 8:03 p.m. to 8:45 p.m., via
Zoom Videoconference, before Melody A. Monk, CSR
in and for the State of Texas, reported by machine
shorthand, with the witness located in Las Cruces,
New Mexico, pursuant to the Federal Rules of Civil
```

## Page 2

1  Procedure, and the provisions stated on the record
2  or attached hereto.

## Page 3

```
1           A P P E A R A N C E S
2   (All parties appearing via Zoom Videoconference)
3  FOR THE PLAINTIFF:
4
      MATT HILL
5     Pryor & Bruce
      302 North San Jacinto
6     Rockwall, Texas 75087
      972.771.3933
7     Mhill@pryorandbruce.com
8     MATTHEW B. GILLIAM
      National Right to Work Legal Defense
9        Foundation, Inc.
      8001 Braddock Road, Suite 600
10    Springfield, Virginia 22160
      703.321.8510
11    Mbg@nrtw.org
12
13  FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
14
      PAULO B. MCKEEBY
15    Reed Smith
      2850 North Harwood Street
16    Suite 1500
      Dallas, Texas 75201
17    Pmckeeby@reedsmith.com
18
19
      FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
20    AMERICA:
21    EDWARD B. CLOUTMAN, III
      Law Offices of Edward Cloutman III
22    3301 Elm Street
      Dallas, Texas 75226
23    214.232.9015
      Ecloutman@lawoffices.email
24
25
```

## Page 4

```
1   ADAM S. GREENFIELD
    Cloutman & Greenfield, PLLC
2   3301 Elm Street
    Dallas, Texas 75226
3   Agreenfield@candglegal.com
4
5
    ALSO PRESENT:
6     Lisa Block, Videographer
      Charlene Carter
7     Chris Maberry
      Lauren Armstrong
```

Page 5

1              INDEX
                                PAGE
2    Appearances.................................. 2
3
4    BRETT NEVAREZ
5        EXAMINATION BY MR. HILL.................... 7
         EXAMINATION BY MR. GREENFIELD.............29
6        EXAMINATION BY MR. MCKEEBY................31
         EXAMINATION BY MR. GREENFIELD.............34
7
     Witness's Signature Page...................... 37
8
     Reporter's Certificate Page................... 40
9
10
              (No exhibits were marked).
11

Page 6

1            THE VIDEOGRAPHER: We're going on the
2    record July 8, 2022 for the deposition of Brett
3    Nevarez in a case styled Charlene Carter versus
4    Southwest Airlines Company and Transport Workers
5    Union of America, Local 556, Civil Case No.
6    3:17-cv-02278-X, in the United States District
7    Court for the Northern District of Texas, Dallas
8    Division. The time is now 8:02 p.m.
9            Will counsel please state their
10   appearances, locations, and any agreements or
11   stipulations for the record. Following will the
12   court reporter please swear in the witness.
13           MR. HILL: Matt Hill and Matt Gilliam,
14   both in Dallas, Texas, for plaintiff, Charlene
15   Carter.
16           MR. MCKEEBY: Paulo McKeeby in Dallas,
17   Texas for defendant Southwest Airlines, and Chris
18   Maberry and Lauren Bobis-Armstrong from Southwest
19   legal department are also on the call.
20           MR. GREENFIELD: Adam Greenfield along
21   with Edward Cloutman, III. We are in Dallas,
22   Texas on behalf of TWU Local 556. And the only
23   agreement on the record is that the deposition
24   will be limited to an hour and a half today.
25           MR. HILL: Agreed.

Page 7

1                    * * *
2            BRETT NEVAREZ,
3    having been first duly sworn, testified as
4    follows:
5                 EXAMINATION
6    BY MR. HILL:
7        Q. Mr. Nevarez, could you tell the jury what
8    it was that your position was with Southwest
9    Airlines in 2000 -- I'm sorry, with the, with the
10   TWU Local 556 in 2017?
11       A. I was second vice president of the local
12   and also a negotiating team member.
13       Q. Were you also a core team member for
14   Audrey Stone?
15       A. A core team member? I, I don't know what
16   you mean by that.
17       Q. Did, did -- are you familiar with what the
18   core team is?
19       A. No.
20       Q. Okay. So are you telling us today that
21   you have no knowledge of a core team that
22   advocated on behalf of the candidacies of your
23   executive board?
24       A. What, what core team? I'm not sure what
25   you're talking about. Are you --

Page 8

1        Q. I'm talking about this --
2        A. -- talking about an election cycle in 2015
3    or are you talking about 2017? There was no --
4        Q. There was --
5        A. -- election in 2017.
6        Q. Okay. So was, was there a core team in
7    2015?
8        A. Yes.
9        Q. And were you on that team?
10       A. Yes.
11       Q. And when did that team cease to exist?
12       A. When we won the election.
13       Q. Are you familiar with something called the
14   contract action network?
15       A. Yes.
16       Q. Frequently called the CAN team?
17       A. Yes.
18       Q. Were you also on that?
19       A. Yes, as a member of the negotiating team,
20   I'm part of the CAN.
21       Q. And you're one of the ones who negotiated
22   the collective bar -- the collective bargaining
23   agreement on behalf of Local 556, right?
24       A. Correct.
25       Q. Okay. What was your relationship with

Page 9

1   Audrey Stone?
2   A. I was the second vice president.
3   Q. You ran together -- well, did -- do you
4   ever run for election together?
5   A. Yes.
6   Q. Did you frequently work together?
7   A. Yes.
8   Q. On union business and in your flying; is
9   that right?
10  A. Yes.
11  Q. Was she -- did you consider her a good
12  friend?
13  A. I still do, yes.
14  Q. You -- did you and do you con -- well,
15  I'll ask them separately.
16      Did you consider her a confidante?
17  A. Yes.
18  Q. Do you know whether she considered you a
19  confidant?
20  A. Yes. I believe so.
21  Q. Would she frequently consult you on
22  important decisions that she made with the union?
23  A. Yes.
24  Q. Did she consult you when she received a
25  message from Charlene Carter that she eventually

Page 10

1   submitted a complaint to Southwest about?
2   A. Yes.
3   Q. And what did you tell her?
4   A. I told her that the video was offensive.
5   Q. Did you suggest that she submit a
6   complaint?
7   A. Yes.
8   Q. What did she tell you -- what, what -- how
9   did she, how did she raise the issue with you?
10  A. We were at a meeting in Baltimore, and I
11  arrived, and she was distraught; and I asked her
12  what was wrong, and she showed me the instant
13  message that your client had sent her.
14  Q. You, you were in an in-person meeting with
15  her in Baltimore when she re -- when she received
16  it and was distraught?
17  A. Yes.
18      MR. GREENFIELD: Object, objection to
19  the form. Mischaracterizes the testimony.
20  Q. Did you, did you work with her on the
21  complaint?
22  A. No.
23  Q. Did she ever show you a draft of the
24  complaint before it was sent?
25  A. No.

Page 11

1   Q. Did you discuss with her what should be
2   included in the complaint?
3   A. No.
4   Q. But you agreed she should make it?
5   A. Yes.
6   Q. When she submitted the complaint, did you
7   understand her to be doing that in her role as
8   union president?
9   A. She, she never disconten -- I mean, she's
10  always the president of the union. You can't
11  separate the, the roles between flight attendant
12  and employee and president of the union, in my
13  opinion.
14  Q. And you supported her making that
15  complaint, despite her role as union president,
16  right?
17  A. Yes.
18  Q. I'm gonna show you an exhibit.
19      MR. HILL: I need screen sharing
20  enabled, Melody.
21  Q. Do you recognize Exhibit 25?
22  A. I'm trying to enlarge it. I can't read
23  it.
24  Q. I can blow it up for you, if you'd like.
25  A. Yeah, blow it up, please. A little bit

Page 12

1   more. Okay. Right there. Oh, yeah, that's fine,
2   right there. Yes.
3   Q. You, you say in that e-mail, Cuyler's
4   favorite is threatening to decert right now.
5       Who is Cuyler's favorite?
6   A. Charlene Carter.
7   Q. And it says she wants to decert now that
8   she's not a member and cannot be charged, right?
9   A. That's, that's what it says, yes.
10  Q. Why was -- why did you refer to Charlene
11  Carter as Cuyler's favorite?
12  A. It's a sarcastic term. She's not his
13  favorite.
14  Q. And why is that?
15  A. Because she had been very adversarial for
16  many years.
17  Q. You, you and the rest of the executive
18  board had shared your negative opinions of people
19  that were opposed to the union, right, people
20  opposed to the union leadership?
21      MR. GREENFIELD: Objection, lack of
22  foundation. Calls for speculation as to what the
23  rest of the executive board felt about Ms. Carter.
24      You may answer, Mr. Nevarez, if you
25  understand.

3 (Pages 9 to 12)

Page 13

1    A. I've known Charlene Carter since 2001, and
2  we've had a very adversarial relationship. I
3  can't speak to anyone else's relationship with
4  her, but mine certainly.
5    Q. Well, you and, you and -- you were one of
6  Ms. Stone's close confidants. You know that Ms.
7  Stone had an adversarial relationship with
8  Ms. Carter, too, don't you?
9    A. I, I couldn't characterize it as that, no.
10 They -- she had just become president a year prior
11 in 2013, and this meeting, this was after a
12 membership meeting where Charlene had decided --
13 not decided, had threatened to decertify the
14 union.
15   Q. Did Ms. Stone ever talk to you about her
16 opinion, whether before this e-mail or after this
17 e-mail, did Ms. Stone ever talk to you about her
18 opinion of Charlene Carter?
19   A. No.
20   Q. Never?
21   A. No, not -- she doesn't share her personal
22 opinions about members. She's -- she doesn't --
23   Q. Well --
24   A. -- she doesn't talk like that.
25   Q. Well, we know what her opinion of

Page 14

1  Ms. Carter was when she received the e-mail that
2  you told her that -- that you told us that she was
3  distraught about, right?
4        MR. GREENFIELD: Objection, form --
5    A. Yes, three years late -- yeah, three years
6  later, yes.
7        MR. GREENFIELD: Excuse me, Mr.,
8  Mr. Nevarez, hold on one moment, please.
9        THE WITNESS: All right.
10       MR. GREENFIELD: I'm objecting to the,
11 to the form of the question. Again, lack of
12 foundation, calls for speculation as to what
13 Ms. Stone was thinking at the time. Mr. Nevarez
14 just testified that he does not know.
15   Q. When Ms. Stone received the e-mail that
16 you discussed from Ms. Carter, did she express to
17 you any opinion about Ms. Carter at that time?
18   A. No, not at that time. She was totally
19 distraught by the video. It's very graphic and
20 disturbing. She was crying and, and very upset.
21 There wasn't much talking going on.
22   Q. When you say, I am contacting legal and
23 coun -- legal counsel and will keep you advised,
24 what did you mean by that?
25   A. That meant I would talk to the

Page 15

1  international and talk to, to our, our, our
2  lawyers on retainer.
3    Q. What course of action were you
4  considering?
5        MR. GREENFIELD: Objection to any
6  communications about what your decision may or may
7  not have been pursuant to the advice of lesal --
8  legal counsel. If you had any opinion as to the
9  matter prior to that, Mr. Nevarez, I will instruct
10 you to answer the question on those grounds. But
11 anything that came from advice of legal counsel or
12 steps that were taken pursuant to advice of legal
13 counsel, I would advise you not to answer that
14 question.
15       You may answer, if you understand.
16   A. That's attorney-client privileged
17 information. My personal opinion is that we
18 should monitor any kind of communications that
19 she's putting out to stem any kind of decert
20 effort.
21   Q. Okay. How would you monit -- what would
22 you do -- once you received whatever communication
23 she was putting out, what would you do to monit --
24 to, to stem the decert effort?
25       MR. GREENFIELD: Objection, form.

Page 16

1  Mischaracterizes the testimony.
2        You may answer, Mr. Nevarez.
3    A. I would make sure that the union officials
4  in her base and in other bases were aware that a
5  decert was going on. None of that occurred.
6    Q. Would you take any action against her?
7    A. None of that occurred, so I couldn't take
8  any action against her.
9    Q. Okay. I'm going to point you now to
10 Exhibit 27. Do you recognize Exhibit 27?
11   A. Yes.
12   Q. What is it?
13   A. It's a communication from Brian Talburt.
14   Q. I'm going to direct your attention to an
15 e-mail here at the bottom from, from yourself to
16 Brian Talburt. Do you recognize that
17 communication?
18   A. Yes.
19   Q. What does leg breaking time for Casper the
20 ghost scab mean?
21   A. I -- that means Casper the ghost needs
22 their legs broken.
23   Q. Who is Casper the ghost?
24   A. I don't know. A cartoon character.
25   Q. You're referring -- well, is there, is

4 (Pages 13 to 16)

Page 17

1  there a -- is there an employee named Casper?
2     A. No.
3     Q. I direct your attention to a -- another
4  part of the e-mail. It says Casper and Hofer
5  Rant.
6        Does this refrect your -- refresh your
7  rexellection -- recollection as to whether there
8  was an employee named -- with, with the last name
9  Casper?
10    A. Yes.
11    Q. Who -- do you know his name now?
12    A. Mike Casper. He doesn't work here
13 anymore.
14    Q. Okay.
15    A. Not --
16        (Inaudible cross-talk).
17    Q. Now let's go back to Casper the ghost
18 scab. Is that your nickname for Mi -- for Mike
19 Casper?
20    A. Yes.
21    Q. Why did you call Casper the ghost scab --
22 I'm sorry, why did you call Mike Casper, Casper
23 the ghost scab?
24    A. Because I believed him to be a scab and a
25 ghost.

Page 18

1     Q. Why, why did you believe those things
2  about him?
3     A. Because he's a union buster.
4     Q. What made him a union buster?
5     A. Not supporting the union and --
6        (Inaudible cross-talk).
7     Q. Does anyone who support -- didn't support
8  the union a union buster?
9        MR. GREENFIELD: Objection to the
10 form. I would ask that you let my -- let the
11 witness answer the question, please.
12       MR. HILL: I was trying.
13    Q. If I interrupted and you had more to say,
14 I, I apologize. You can finish the rest of your
15 answer.
16    A. I, I believe I'm finished.
17    Q. Okay.
18    A. Go ahead.
19    Q. And then was every employee who opposed
20 the union a scab, in your view?
21    A. No.
22    Q. Did you have nicknames for a lot of union
23 opponents?
24    A. Yes.
25    Q. That was something that you and the

Page 19

1  executive board frequently engaged in and, and,
2  and used --
3     A. No.
4     Q. -- with each other?
5     A. That's a bad habit of mine, a lot. I
6  can't speak for the executive board. I can speak
7  for myself.
8     Q. Did Audrey Stone ever use any of those
9  nicknames?
10    A. No, most definitely not.
11    Q. Okay. I'm going to direct your attention
12 to an Exhibit 21-X.
13       Do you recognize this document?
14    A. Yes.
15    Q. Who is Rickie Spand? I'm sorry, what is
16 it?
17    A. It's an e-mail from Rickie Spand to the
18 executive board.
19    Q. And who is Rickie Spand?
20    A. A flight attendant.
21    Q. Would you agree that in this e-mail Rickie
22 Spand -- oh, well, a -- besides being a flight
23 attendant, what else -- did, did Rickie Spand hold
24 any positions with the union?
25    A. I -- he might have been a shop steward at

Page 20

1  that time. It's 2017. I'm not sure.
2     Q. At some point Rickie Spand was a shop
3  steward, right?
4     A. Correct. Yes.
5     Q. And that is an elected official of the
6  union, just like you, right?
7     A. No.
8     Q. That's an elected official of the union?
9     A. Yes. A shop steward is elected by the
10 people on their base. I was elected by the entire
11 membership, all bases.
12    Q. Understood. And in this e-m -- in this
13 e-mail Mr. Spand is complaining about Jeanna
14 Jackson, right?
15    A. Yes.
16    Q. And what, what he's complaining about is,
17 is her social media posts, right?
18    A. Yes.
19    Q. And you're asking for the leadership to
20 stop this behavior, right? I'm sorry, he was
21 asking, he was asking for the leadership to stop
22 this behavior, right?
23    A. Yeah, that's, that's what his e-mail is
24 regarding, yes.
25    Q. Did you take any action in response to

5 (Pages 17 to 20)

Page 21

1  this e-mail?
2      A. I don't believe so.
3      Q. Okay. We had some trouble getting you to
4  appear for this deposition, didn't we?
5      A. Yes, I was at work. You were aware of it,
6  as was Southwest Airlines. I worked on July 3rd,
7  4th, 5th, and 6th, and then Hawaii time, so that's
8  five hours off of Dallas time. It was an
9  unreasonable request.
10     Q. Southwest requested you to show up for our
11 -- for the previously noticed deposition, right?
12     A. Southwest and you and Adam and, and Ed.
13     Q. And, and Mr. McKeeby also, right?
14     A. Yeah, everybody knew I was at work. You,
15 you can't, you can't pretend like you didn't know
16 I was working or flying. That's ridiculous.
17     Q. Well, you told all of them you wouldn't
18 attend, right?
19     A. I didn't accept service.
20     Q. That wasn't my question.
21         MR. HILL: Object to nonresponsive.
22     Q. You told all of them you wouldn't attend,
23 right?
24     A. No. I didn't speak to the Southwest
25 people.

Page 22

1      Q. Okay. Every one of those --
2      A. I personally --
3         (Inaudible cross-talk).
4      Q. -- that you talked to, you told them you
5  wouldn't attend, right?
6      A. Excuse me?
7         THE REPORTER: I'm sorry, we have to
8  have one at a time. I, I didn't understand what
9  either of you said.
10     Q. Every one of the Southwest people you
11 talked to -- I'm sorry, every one of the people
12 that, that asked you to come to the deposition,
13 you told them you wouldn't attend; is that right?
14     A. No, that's incorrect. I didn't speak to
15 anyone until last night.
16     Q. You simply ignored their calls until then?
17     A. Yes. I told you it was an unreasonable
18 request. I was flying, you were aware of it,
19 Southwest was aware of it. If they wanted to make
20 me available, they would have pulled my trip and
21 they would have told me to come to Dallas.
22     Q. You received an order from the court to
23 appear at a deposition, did you not?
24     A. Yes, I did, but I didn't --
25     Q. And you --

Page 23

1      A. -- receive service, so I -- technically I
2  didn't receive it.
3      Q. Well, you, you were aware of it, right?
4      A. I'm aware of it, yeah. That doesn't mean
5  I received it or acknowledged it or accepted it.
6      Q. Okay. So despite being aware that a court
7  had ordered you to appear for a deposition, you
8  decided to ignore his order; is that true?
9      A. I'm -- am I not being deposed right now?
10 There are no sanctions against me.
11     Q. Right.
12     A. I was --
13        (Inaudible cross-talk).
14     Q. There was -- there were, there were two
15 different orders that were issued to you. I'm
16 sorry. There were two different orders --
17     A. I didn't --
18     Q. I'm sorry. I, I keep thinking you're
19 done, and you're not. I apologize.
20        There were two different orders that
21 were issued against you; is that right?
22     A. I don't know how many orders were issued.
23 All I know is the show cause last night, I took
24 care of it, and I'm here now.
25     Q. You were aware of a previous order that

Page 24

1  was issued to you that instructed you to attend a
2  deposition, weren't you?
3      A. I've already acknowledged that, and that I
4  didn't accept service --
5      Q. And you ignored that order, did you not?
6      A. Outside of a hundred miles.
7      Q. You blew it off, you said, I'm not within
8  a hundred miles, I'm ignoring the court's order;
9  is that right?
10        MR. GREENFIELD: Objection, form.
11 Asked and answered.
12     Q. You can answer.
13     A. I already have. He just told you, asked
14 and answered.
15     Q. No. You need to answer my question.
16     A. I already answered your question.
17     Q. The first --
18     A. I said I did not accept acceptance of the
19 subpoena, and until the show cause last night, and
20 I've shown cause and I'm here now, and I'm done
21 answering that question. It's already answered.
22     Q. So the court ordered you to appear and
23 answer questions tonight, and that's what I'm
24 requesting you to do right now. Are you now
25 refusing to do that as well?

Page 25

1    A. That's what I'm doing right now, I'm
2  answering questions.
3    Q. No, you're refusing to answer my question.
4    A. I just --
5    Q. I'll go back and ask the question I asked
6  you before, and I'm gonna expect an answer. The
7  an -- the question I was asking you --
8    A. The answer is --
9    Q. -- before is --
10   A. -- I'm here now.
11   Q. Before the show cause order, you were
12 issued a previous order by the court that
13 instructed you to appear for a deposition, and you
14 ignored that order because you didn't believe that
15 you were within a hundred miles and it was
16 therefore not a valid order; is that right?
17       MR. GREENFIELD: Objection --
18   A. Yes.
19       MR. GREENFIELD: -- form, mischaracter
20 -- mischaracterizes --
21   A. That's what I've already said --
22       MR. GREENFIELD: Excuse me,
23 Mr. Nevarez.
24       Objection, form and mischaracterizes
25 testimony and is a partial explanation as to what

Page 26

1  Mr. Nevarez gave to the court.
2        You may answer, Mr. Nevarez.
3    Q. Because Mr. Nevarez was -- I'm sorry,
4  because Mr. Greenfield was speaking during that,
5  I'm gonna, I'm gonna ask you to confirm, your
6  answer was yes to my question; is that right?
7        MR. GREENFIELD: Objection, form.
8  Mr. Nevarez was trying to speak during the middle
9  of the objection.
10       Mr. Nevarez, please answer the
11 question to best of your ability.
12   A. I'm here now. I'm being deposed now.
13 I'm --
14   Q. Your answer to whether you decided to
15 ignore the previous order from the court was yes,
16 was it, was it not?
17   A. Yes.
18       MR. HILL: We'll take a very, very
19 short break, and we'll be right back and hopefully
20 wrap up and we'll be done.
21       THE VIDEOGRAPHER: Going off the
22 record at 8:27.
23       (Recess.)
24       THE VIDEOGRAPHER: We are back on the
25 record with Clip 2 at 8:31.

Page 27

1    Q. Do you consider a non -- a, a, a nonunion
2  member objector to be a union buster?
3    A. Yes.
4    Q. Do you consider a recall supporter to be a
5  union buster?
6    A. No.
7    Q. Did you make any efforts to collect social
8  media posts on, on what you considered to be union
9  opponents?
10   A. No.
11   Q. Did you -- are you aware of anyone who
12 did?
13   A. No, I don't think so. I -- all I was
14 worried was about is decertification.
15   Q. Who's Brian Talburt?
16   A. A Phoenix flight attendant.
17   Q. And was he a friend of yours?
18   A. Yes.
19   Q. Did, did he and you and Ms. Stone fly
20 together frequently?
21   A. No.
22   Q. Do you know whether he was a friend of
23 Ms. Stone's?
24   A. Yes.
25   Q. A good friend, do you know?

Page 28

1    A. I don't know.
2    Q. Okay. Did you have any nicknames for
3  Charlene Carter who was previously known as
4  Charlene Carter Batts?
5    A. Yes.
6    Q. What was your nickname for her?
7    A. Batshit, as in batshit crazy.
8    Q. Why was that?
9    A. Because I believe her to be disturbed.
10   Q. What did she do that made you believe that
11 she was disturbed?
12   A. It began in 2001, irrational behavior and
13 just problematic behavior.
14   Q. Did Audrey Stone ever tell you what her
15 purpose was gonna be in sending the complaint to
16 Southwest about Ms. Carter?
17   A. No.
18   Q. Did you have a nickname for Jeanna
19 Jackson?
20   A. No.
21   Q. Did anyone else use that batshit nickname
22 for Ms. Carter?
23   A. No. I think it's just me.
24       MR. HILL: Okay. I don't have
25 anything further.

Page 29

 1    MR. GREENFIELD:  The union has a few
 2  questions.
 3              EXAMINATION
 4  BY MR. GREENFIELD:
 5    Q.  Mr. Nevarez, I turned my camera back on.
 6  Sorry, it's getting late here in Dallas, Texas,
 7  and I took off my shirt and tie.  Is that all
 8  right?
 9    A.  Yeah.  That's fine.
10    Q.  Okay.  Mr. Hill, opposing counsel, showed
11  you Exhibit 27.  Do you remember that exhibit?
12    A.  Yeah, an e-mail thread.
13    MR. GREENFIELD:  And, Mr. Hill, you
14  have to any objection -- I don't have access to
15  that document.  Do you have any objection that the
16  date of that e-mail was October 13th, 2014?
17    MR. HILL:  I'll look over at it.
18    MR. GREENFIELD:  Yes, sir.
19    MR. HILL:  You say October 13th, 2014?
20    MR. GREENFIELD:  Yes, sir.
21    MR. HILL:  That's correct.
22    MR. GREENFIELD:  Okay.
23    Q.  And, Mr. Nevarez, did you ever represent
24  Brian Talburt at a fact-finding or Step 2 meeting?
25    A.  Yes, I did.

Page 30

 1    Q.  Does the date of October 13th, 2014
 2  coincide with that representation?
 3    A.  I believe so.
 4    Q.  And did Mr. Talburt make a specific
 5  request for you to represent him at that meeting?
 6    A.  Yes.
 7    Q.  And was it union practice for when a
 8  member requested specific representation at a Step
 9  2 or fact-finding meeting, that that be granted?
10    A.  Yes.  Historically.
11    Q.  Thank you.
12        Mr. Rickie Spand was discussed
13  earlier.  Was Mr. Spand a member of the executive
14  board?
15    A.  No.
16    Q.  Did he hold any office positions with the
17  union?
18    A.  He had been a shop steward in the past.
19  I'm not sure if he was a shop steward in 2017, the
20  date of the e-mail.
21    Q.  Okay.  Best recollection, was he a shop
22  steward at the date of that e-mail?
23    A.  I'm gonna say no.
24    Q.  Okay.  And let me come back to Mr.
25  Talburt.  Mr. Talburt was not a board member,

Page 31

 1  correct?
 2    A.  No.
 3    Q.  And Mr. Talburt didn't hold a position
 4  with the union office?
 5    A.  No.
 6    MR. GREENFIELD:  No more questions.
 7  I'll pass the witness.
 8              EXAMINATION
 9  BY MR. MCKEEBY:
10    Q.  Hello, Mr. Nevarez.  This is Paulo
11  McKeeby.  I'm the schmuck who is still wearing his
12  necktie.  And I have a couple of questions for
13  you.
14    A.  Okay.
15    Q.  You mentioned that when you met with
16  Ms. Stone in Baltimore, she was distraught.  Can
17  you explain to the jury a little bit more about
18  what you meant by that?
19    A.  She was crying and, and could barely
20  speak.  She just handed me her phone, and I, I
21  turned the video on.
22    Q.  Was it -- had she received one or two
23  videos at that point, or did you know?
24    A.  I, I only watched a few seconds of one
25  video.  That was enough for me to, to know that I

Page 32

 1  didn't want to watch any more.
 2    Q.  Did you -- do you know if there were two
 3  videos or not?
 4    A.  I don't know if there were two or if it
 5  was sent twice.  It was -- instant message is very
 6  inconsistent.
 7    Q.  Okay.  Did you have to click on the video
 8  to make it play?
 9    A.  Yes.
10    Q.  And it was on her phone?
11    A.  Yes.
12    Q.  And she handed it to you, and you observed
13  it at that meeting in Baltimore?
14    A.  Yes.
15    Q.  Did she indicate when she had received it?
16    A.  Earlier that day.
17    Q.  Did she indicate to you where she had
18  viewed it?
19    A.  Where she had --
20    Q.  Yeah.  Where was --
21    A.  -- where she had what?
22    Q.  Yeah.  Where was she when she, when she
23  watched it, if she indicated that to you?
24    A.  No, I, I -- no, I don't think she told me
25  that.  I just assumed there at the, at the

Page 33

1  facility. We were at the maritime facility
2  outside the, the Baltimore/Washington airport.
3       Q. I forget if Mr. Greenfield asked you this,
4  but have you ever turned in an employee, a
5  Southwest employee for a violation of the social
6  media policy?
7       A. No.
8       Q. Have you ever been turned in for violating
9  the social media policy?
10      A. Yes.
11      Q. Who did that?
12      A. I don't know.
13      Q. What was the violation, or alleged
14  violation?
15      A. It was a Facebook post that was turned in
16  to management.
17      Q. What, what did you post?
18      A. I posted that Lyn was being
19  discriminatory. I believed it to be
20  union-protected speech, that she had posted
21  some -- she behaved derogatorily in a Dallas
22  membership meeting.
23      Q. Who was that?
24      A. Lyn Montgomery, the president.
25      Q. What does the concept of union-protected

Page 34

1  speech mean to you?
2       A. That management can't hold what's said in
3  a membership meeting a -- against a member.
4            MR. MCKEEBY: Okay. No further
5  questions. Thank you, Mr. Nevarez.
6            MR. GREENFIELD: I have a couple
7  follow-up questions for Mr. -- based on Mr.
8  McKeeby's questions, if I may. Any objections?
9            MR. MCKEEBY: None from me.
10           MR. HILL: None.
11              EXAMINATION
12  BY MR. GREENFIELD:
13      Q. Mr. Nevarez, did Ms. Stone ever speak to
14  you about her physical well-being after receiving
15  those posts -- after receiving the messages from
16  Ms. Carter?
17      A. Unfortunately, yes.
18      Q. What did Ms. Stone express to you in that
19  regard?
20      A. She was disturbed. She was having
21  trouble, she was emotionally disturbed by it.
22      Q. Did she express to you whether or not she
23  had fears of physical threats based on the
24  messages she received?
25      A. Yes.

Page 35

1       Q. Okay. Can you elaborate on that, if you
2  remember?
3       A. Well, she had -- threats had escalated
4  since the failed TA in 2015, and she had become
5  increasing, increasing -- increasingly anxious as
6  a result of e-mails and phone calls and instant
7  messages and all that kind of stuff.
8       Q. You're discussing increased threats. What
9  does that mean?
10      A. Well, basically like hate mail, wait until
11  you get back online, that kind of thing.
12           MR. GREENFIELD: I have no more
13  questions for you, Mr. Nevarez. Thank you for
14  appearing this evening.
15           MR. MCKEEBY: No questions from me.
16           MR. HILL: Let me, let me take one
17  more short break, and we'll hopefully be done very
18  quickly.
19           THE VIDEOGRAPHER: Going off the
20  record at 8:41.
21           (Recess).
22           THE VIDEOGRAPHER: We're back on the
23  record with Clip 3 at 8:44.
24           MR. HILL: Mr. Nevarez, I have no
25  further questions.

Page 36

1            THE WITNESS: Okay.
2            THE VIDEOGRAPHER: Anyone else?
3            MR. MCKEEBY: No.
4  Thank you, Mr. Nevarez.
5            THE VIDEOGRAPHER: Going off the
6  record at 8:44.
7            THE REPORTER: Okay. Signature?
8            MR. MCKEEBY: It's up to the witness.
9            MR. HILL: Mr. Nevarez, she's asking
10  if you would like a signature. Would, would you
11  like to have an opportunity to read and sign your
12  deposition?
13           THE WITNESS: Yes.
14           (Discussion off the record).
15           THE REPORTER: Does anyone want to
16  purchase a copy?
17           MR. CLOUTMAN: The union does.
18  Condensed only.
19           MR. MCKEEBY: Same as Southwest.
20           (Deposition concluded at 8:45 p.m.)
21
22
23
24
25

Page 37

1  CHANGES AND SIGNATURE
2  WITNESS NAME: BRETT NEVAREZ  DATE: JULY 8, 2022
3  PAGELINE   CHANGE       REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____

Page 38

1  _____
2  _____
3       I, BRETT NEVAREZ, have read the foregoing
4  deposition and hereby affix my signature that same
5  is true and correct, except as noted above.
6
7
8
9
              _____
10              BRETT NEVAREZ
11
12
13
14  THE STATE OF _____)
15  COUNTY OF _____)
16
17       Before me, _____, on
18  this day personally appeared BRETT NEVAREZ, known
19  to me (or proved to me under oath or through
20  _____) (description of
21  identity card or other document)) to be the person
22  whose name is subscribed to the foregoing
23  instrument and acknowledged to me that they
24  executed the same for the purposes and
25  consideration therein expressed.

Page 39

1       Given under my hand and seal of office
2  this _____ day of _____,
3  _____.
4
5
6           _____
              NOTARY PUBLIC IN AND FOR
7             THE STATE OF _____
              COMMISSION EXPIRES: _____
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 40

1       IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
2              DALLAS DIVISION
3  CHARLENE CARTER,      )
                         )
4   Plaintiff,           )
                         )
5  VS.                   ) CIVIL ACTION
                         )
6  SOUTHWEST AIRLINES CO., ) NO.: 3:17-cv-02278-X
   AND TRANSPORT WORKERS   )
7  UNION OF AMERICA, LOCAL )
   556,                    )
8                          )
    Defendants.            )
9
10         REPORTER'S CERTIFICATION
11         DEPOSITION OF BRETT NEVAREZ
12             JULY 8, 2022
13
14      I, Melody A. Monk, Certified Shorthand
15  Reporter in and for the State of Texas, hereby
16  certify to the following:
17      That the witness, BRETT NEVAREZ, was duly
18  sworn by the officer and that the transcript of
19  the oral deposition is a true record of the
20  testimony given by the witness;
21      That the deposition transcript was submitted
22  on July 9, 2022 to the witness or to the attorney
23  for the witness for examination, signature and
24  return to me by August 9, 2022;
25      That the amount of time used by each party at

Page 41

1  the deposition is as follows:
2  MATT HILL.....00 HOUR(S):25 MINUTE(S)
   PAULO MCKEEBY.....00 HOUR(S):04 MINUTE(S)
3  ADAM GREENFIELD.....00 HOUR(S):04 MINUTE(S)
4      That pursuant to information given to the
5  deposition officer at the time said testimony was
6  taken, the following includes counsel for all
7  parties of record:
8  FOR THE PLAINTIFF:
9      MATT HILL
       Pryor & Bruce
10     302 North San Jacinto
       Rockwall, Texas 75087
11     972.771.3933
       Mhill@pryorandbruce.com
12
       MATTHEW B. GILLIAM
13     National Right to Work Legal Defense
          Foundation, Inc.
14     8001 Braddock Road, Suite 600
       Springfield, Virginia 22160
15     703.321.8510
       Mbg@nrtw.org
16
17
18 FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:
19     PAULO B. MCKEEBY
       Reed Smith
20     2850 North Harwood Street
       Suite 1500
21     Dallas, Texas 75201
       Pmckeeby@reedsmith.com
22
23
24
25

Page 42

1  FOR THE DEFENDANT TRANSPORT WORKERS UNION OF
   AMERICA:
2
   EDWARD B. CLOUTMAN, III
3  Law Offices of Edward Cloutman III
   3301 Elm Street
4  Dallas, Texas 75226
   214.232.9015
5  Ecloutman@lawoffices.email
6
   ADAM S. GREENFIELD
7  Cloutman & Greenfield, PLLC
   3301 Elm Street
8  Dallas, Texas 75226
   Agreenfield@candglegal.com
9
10     That $_____ is the deposition officer's
11 charges to the Plaintiff for preparing the
12 original deposition transcript and any copies of
13 exhibits;
14     I further certify that I am neither counsel
15 for, related to, nor employed by any of the
16 parties or attorneys in the action in which this
17 proceeding was taken, and further that I am not
18 financially or otherwise interested in the outcome
19 of the action.
20     Certified to by me this 9th day of July, 2022.
21
22
23
       _____
24     Melody A. Monk, RPR
       Texas CSR No. 3613
25     Expiration Date:  10/21/2022

Page 43

1  MELODY MONK REPORTING
   Firm Registration No. 10821
2  1999 McKinney Avenue, No. 1404
   Dallas, Texas 75201
3  888.988.5317 (phone and fax)

### A
**ability** 26:11
**above-styled** 1:20
**accept** 21:19 24:4,18
**acceptance** 24:18
**accepted** 23:5
**access** 29:14
**acknowledged** 23:5 24:3 38:23
**action** 1:5 8:14 15:3 16:6,8 20:25 40:5 42:16,19
**Adam** 4:1 6:20 21:12 41:3 42:6
**adversarial** 12:15 13:2,7
**advice** 15:7,11 15:12
**advise** 15:13
**advised** 14:23
**advocated** 7:22
**affix** 38:4
**agree** 19:21
**agreed** 6:25 11:4
**agreement** 6:23 8:23
**agreements** 6:10
**Agreenfield@...** 4:3 42:8
**ahead** 18:18
**Airlines** 1:6 3:13 6:4,17 7:9 21:6 40:6 41:18
**airport** 33:2
**alleged** 33:13
**America** 1:7 3:20 6:5 40:7 42:1
**amount** 40:25

**answer** 12:24 15:10,13,15 16:2 18:11,15 24:12,15,23 25:3,6,8 26:2,6 26:10,14
**answered** 24:11 24:14,16,21
**answering** 24:21 25:2
**anxious** 35:5
**anymore** 17:13
**apologize** 18:14 23:19
**appear** 21:4 22:23 23:7 24:22 25:13
**appearances** 5:2 6:10
**appeared** 38:18
**appearing** 3:2 35:14
**Armstrong** 4:7
**arrived** 10:11
**asked** 10:11 22:12 24:11,13 25:5 33:3
**asking** 20:19,21 20:21 25:7 36:9
**assumed** 32:25
**attached** 2:2
**attend** 21:18,22 22:5,13 24:1
**attendant** 11:11 19:20,23 27:16
**attention** 16:14 17:3 19:11
**attorney** 40:22
**attorney-client** 15:16
**attorneys** 42:16
**Audrey** 7:14 9:1 19:8 28:14
**August** 40:24

**available** 22:20
**Avenue** 43:2
**aware** 16:4 21:5 22:18,19 23:3 23:4,6,25 27:11

### B
**B** 3:8,14,21 41:12,19 42:2
**back** 17:17 25:5 26:19,24 29:5 30:24 35:11,22
**bad** 19:5
**Baltimore** 10:10 10:15 31:16 32:13
**Baltimore/Wa...** 33:2
**bar** 8:22
**barely** 31:19
**bargaining** 8:22
**base** 16:4 20:10
**based** 34:7,23
**bases** 16:4 20:11
**basically** 35:10
**batshit** 28:7,7,21
**Batts** 28:4
**began** 28:12
**behalf** 6:22 7:22 8:23
**behaved** 33:21
**behavior** 20:20 20:22 28:12,13
**believe** 9:20 18:1,16 21:2 25:14 28:9,10 30:3
**believed** 17:24 33:19
**best** 26:11 30:21
**bit** 11:25 31:17
**blew** 24:7
**Block** 4:6
**blow** 11:24,25

**board** 7:23 12:18,23 19:1 19:6,18 30:14 30:25
**Bobis-Armstr...** 6:18
**bottom** 16:15
**Braddock** 3:9 41:14
**break** 26:19 35:17
**breaking** 16:19
**Brett** 1:12,18 5:4 6:2 7:2 37:2 38:3,10 38:18 40:11,17
**Brian** 16:13,16 27:15 29:24
**broken** 16:22
**Bruce** 3:5 41:9
**business** 9:8
**buster** 18:3,4,8 27:2,5

### C
**C** 3:1
**call** 6:19 17:21 17:22
**called** 8:13,16
**calls** 12:22 14:12 22:16 35:6
**camera** 29:5
**candidacies** 7:22
**card** 38:21
**care** 23:24
**Carter** 1:3 4:6 6:3,15 9:25 12:6,11,23 13:1,8,18 14:1 14:16,17 28:3 28:4,16,22 34:16 40:3
**cartoon** 16:24
**case** 6:3,5
**Casper** 16:19,21

16:23 17:1,4,9 17:12,17,19,21 17:22,22
**cause** 1:20 23:23 24:19,20 25:11
**cease** 8:11
**certainly** 13:4
**Certificate** 5:8
**CERTIFICA...** 40:10
**Certified** 40:14 42:20
**certify** 40:16 42:14
**CHANGE** 37:3
**CHANGES** 37:1
**character** 16:24
**characterize** 13:9
**charged** 12:8
**charges** 42:11
**Charlene** 1:3 4:6 6:3,14 9:25 12:6,10 13:1 13:12,18 28:3 28:4 40:3
**Chris** 4:7 6:17
**Civil** 1:5,25 6:5 40:5
**click** 32:7
**client** 10:13
**Clip** 26:25 35:23
**close** 13:6
**Cloutman** 3:21 3:21 4:1 6:21 36:17 42:2,3,7
**coincide** 30:2
**collect** 27:7
**collective** 8:22 8:22
**come** 22:12,21 30:24
**COMMISSION** 39:7
**communication**

15:22 16:13,17
communicatio...
  15:6,18
Company 6:4
complaining
  20:13,16
complaint 10:1
  10:6,21,24
  11:2,6,15
  28:15
con 9:14
concept 33:25
concluded 36:20
Condensed
  36:18
confidant 9:19
confidante 9:16
confidants 13:6
confirm 26:5
consider 9:11,16
  27:1,4
consideration
  38:25
considered 9:18
  27:8
considering 15:4
consult 9:21,24
contacting 14:22
contract 8:14
copies 42:12
copy 36:16
core 7:13,15,18
  7:21,24 8:6
correct 8:24
  20:4 29:21
  31:1 38:5
coun 14:23
counsel 6:9
  14:23 15:8,11
  15:13 29:10
  41:6 42:14
COUNTY 38:15
couple 31:12
  34:6
course 15:3

court 1:1 6:7,12
  22:22 23:6
  24:22 25:12
  26:1,15 40:1
court's 24:8
crazy 28:7
cross-talk 17:16
  18:6 22:3
  23:13
Cruces 1:24
crying 14:20
  31:19
CSR 1:22 42:24
Cuyler's 12:3,5
  12:11
cycle 8:2

D
Dallas 1:2 3:16
  3:22 4:2 6:7,14
  6:16,21 21:8
  22:21 29:6
  33:21 40:2
  41:21 42:4,8
  43:2
date 29:16 30:1
  30:20,22 37:2
  42:25
day 32:16 38:18
  39:2 42:20
decert 12:4,7
  15:19,24 16:5
decertification
  27:14
decertify 13:13
decided 13:12
  13:13 23:8
  26:14
decision 15:6
decisions 9:22
defendant 3:13
  3:19 6:17
  41:18 42:1
Defendants 1:8
  40:8

Defense 3:8
  41:13
definitely 19:10
department
  6:19
deposed 23:9
  26:12
deposition 1:11
  1:18 6:2,23
  21:4,11 22:12
  22:23 23:7
  24:2 25:13
  36:12,20 38:4
  40:11,19,21
  41:1,5 42:10
  42:12
derogatorily
  33:21
description
  38:20
despite 11:15
  23:6
different 23:15
  23:16,20
direct 16:14
  17:3 19:11
disconten 11:9
discriminatory
  33:19
discuss 11:1
discussed 14:16
  30:12
discussing 35:8
Discussion
  36:14
distraught 10:11
  10:16 14:3,19
  31:16
District 1:1,1
  6:6,7 40:1,1
disturbed 28:9
  28:11 34:20,21
disturbing
  14:20
Division 1:2 6:8

  40:2
document 19:13
  29:15 38:21
doing 11:7 25:1
draft 10:23
duly 1:19 7:3
  40:17

E
E 3:1,1
e-m 20:12
e-mail 12:3
  13:16,17 14:1
  14:15 16:15
  17:4 19:17,21
  20:13,23 21:1
  29:12,16 30:20
  30:22
e-mails 35:6
earlier 30:13
  32:16
Ecloutman@l...
  3:23 42:5
Ed 21:12
Edward 3:21,21
  6:21 42:2,3
effort 15:20,24
efforts 27:7
either 22:9
elaborate 35:1
elected 20:5,8,9
  20:10
election 8:2,5,12
  9:4
Elm 3:22 4:2
  42:3,7
else's 13:3
emotionally
  34:21
employed 42:15
employee 11:12
  17:1,8 18:19
  33:4,5
enabled 11:20
engaged 19:1

enlarge 11:22
entire 20:10
escalated 35:3
evening 35:14
eventually 9:25
everybody 21:14
examination 5:5
  5:5,6,6 7:5
  29:3 31:8
  34:11 40:23
Excuse 14:7
  22:6 25:22
executed 38:24
executive 7:23
  12:17,23 19:1
  19:6,18 30:13
exhibit 11:18,21
  16:10,10 19:12
  29:11,11
exhibits 5:10
  42:13
exist 8:11
expect 25:6
Expiration
  42:25
EXPIRES 39:7
explain 31:17
explanation
  25:25
express 14:16
  34:18,22
expressed 38:25

F
Facebook 33:15
facility 33:1,1
fact-finding
  29:24 30:9
failed 35:4
familiar 7:17
  8:13
favorite 12:4,5
  12:11,13
fax 43:3
fears 34:23

felt 12:23
financially
  42:18
fine 12:1 29:9
finish 18:14
finished 18:16
Firm 43:1
first 7:3 24:17
five 21:8
flight 11:11
  19:20,22 27:16
fly 27:19
flying 9:8 21:16
  22:18
follow-up 34:7
following 6:11
  40:16 41:6
follows 7:4 41:1
foregoing 38:3
  38:22
forget 33:3
form 10:19 14:4
  14:11 15:25
  18:10 24:10
  25:19,24 26:7
foundation 3:9
  12:22 14:12
  41:13
frequently 8:16
  9:6,21 19:1
  27:20
friend 9:12
  27:17,22,25
further 28:25
  34:4 35:25
  42:14,17

          G
getting 21:3
  29:6
ghost 16:20,21
  16:23 17:17,21
  17:23,25
Gilliam 3:8 6:13
  41:12

given 39:1 40:20
  41:4
go 17:17 18:18
  25:5
going 6:1 14:21
  16:5,9,14
  19:11 26:21
  35:19 36:5
gonna 11:18
  25:6 26:5,5
  28:15 30:23
good 9:11 27:25
granted 30:9
graphic 14:19
Greenfield 4:1,1
  5:5,6 6:20,20
  10:18 12:21
  14:4,7,10 15:5
  15:25 18:9
  24:10 25:17,19
  25:22 26:4,7
  29:1,4,13,18
  29:20,22 31:6
  33:3 34:6,12
  35:12 41:3
  42:6,7
grounds 15:10

          H
habit 19:5
half 6:24
hand 39:1
handed 31:20
  32:12
Harwood 3:15
  41:20
hate 35:10
Hawaii 21:7
Hello 31:10
hereto 2:2
Hill 3:4 5:5 6:13
  6:13,25 7:6
  11:19 18:12
  21:21 26:18
  28:24 29:10,13

29:17,19,21
  34:10 35:16,24
  36:9 41:2,9
Historically
  30:10
Hofer 17:4
hold 14:8 19:23
  30:16 31:3
  34:2
hopefully 26:19
  35:17
hour 6:24
HOUR(S):04
  41:2,3
HOUR(S):25
  41:2
hours 21:8
hundred 24:6,8
  25:15

          I
identity 38:21
ignore 23:8
  26:15
ignored 22:16
  24:5 25:14
ignoring 24:8
III 3:21,21 6:21
  42:2,3
important 9:22
in-person 10:14
Inaudible 17:16
  18:6 22:3
  23:13
included 11:2
includes 41:6
inconsistent
  32:6
incorrect 22:14
increased 35:8
increasing 35:5
  35:5
increasingly
  35:5
INDEX 5:1

indicate 32:15
  32:17
indicated 32:23
information
  15:17 41:4
instance 1:19
instant 10:12
  32:5 35:6
instruct 15:9
instructed 24:1
  25:13
instrument
  38:23
interested 42:18
international
  15:1
interrupted
  18:13
irrational 28:12
issue 10:9
issued 23:15,21
  23:22 24:1
  25:12

          J
Jacinto 3:5
  41:10
Jackson 20:14
  28:19
Jeanna 20:13
  28:18
July 1:13 6:2
  21:6 37:2
  40:12,22 42:20
June 1:21
jury 7:7 31:17

          K
keep 14:23
  23:18
kind 15:18,19
  35:7,11
knew 21:14
know 7:15 9:18
  13:6,25 14:14

16:24 17:11
  21:15 23:22,23
  27:22,25 28:1
  31:23,25 32:2
  32:4 33:12
knowledge 7:21
known 13:1 28:3
  38:18

          L
lack 12:21 14:11
Las 1:24
late 14:5 29:6
Lauren 4:7 6:18
Law 3:21 42:3
lawyers 15:2
leadership 12:20
  20:19,21
leg 16:19
legal 3:8 6:19
  14:22,23 15:8
  15:11,12 41:13
legs 16:22
lesal 15:7
let's 17:17
limited 6:24
Lisa 4:6
little 11:25
  31:17
local 1:7 6:5,22
  7:10,11 8:23
  40:7
located 1:24
locations 6:10
look 29:17
lot 18:22 19:5
Lyn 33:18,24

          M
Maberry 4:7
  6:18
machine 1:23
mail 35:10
making 11:14
management

33:16 34:2
maritime 33:1
marked 5:10
Matt 3:4 6:13,13
  41:2,9
matter 15:9
MATTHEW 3:8
  41:12
Mbg@nrtw.org
  3:11 41:15
McKeeby 3:14
  5:6 6:16,16
  21:13 31:9,11
  34:4,9 35:15
  36:3,8,19 41:2
  41:19
McKeeby's 34:8
McKinney 43:2
mean 7:16 11:9
  14:24 16:20
  23:4 34:1 35:9
means 16:21
meant 14:25
  31:18
media 20:17
  27:8 33:6,9
meeting 10:10
  10:14 13:11,12
  29:24 30:5,9
  32:13 33:22
  34:3
Melody 1:22
  11:20 40:14
  42:24 43:1
member 7:12,13
  7:15 8:19 12:8
  27:2 30:8,13
  30:25 34:3
members 13:22
membership
  13:12 20:11
  33:22 34:3
mentioned
  31:15
message 9:25

10:13 32:5
messages 34:15
  34:24 35:7
met 31:15
Mexico 1:25
Mhill@pryor...
  3:7 41:11
Mi 17:18
middle 26:8
Mike 17:12,18
  17:22
miles 24:6,8
  25:15
mine 13:4 19:5
MINUTE(S)
  41:2,2,3
mischaracter
  25:19
mischaracteri...
  10:19 16:1
  25:20,24
moment 14:8
monit 15:21,23
monitor 15:18
Monk 1:22
  40:14 42:24
  43:1
Montgomery
  33:24

         N
N 3:1
name 17:8,11
  37:2 38:22
named 17:1,8
National 3:8
  41:13
necktie 31:12
need 11:19
  24:15
needs 16:21
negative 12:18
negotiated 8:21
negotiating 7:12
  8:19

neither 42:14
network 8:14
Nevarez 1:12,18
  5:4 6:3 7:2,7
  12:24 14:8,13
  15:9 16:2
  25:23 26:1,2,3
  26:8,10 29:5
  29:23 31:10
  34:5,13 35:13
  35:24 36:4,9
  37:2 38:3,10
  38:18 40:11,17
never 11:9 13:20
New 1:25
nickname 17:18
  28:6,18,21
nicknames
  18:22 19:9
  28:2
night 22:15
  23:23 24:19
non 27:1
nonresponsive
  21:21
nonunion 27:1
North 3:5,15
  41:10,20
Northern 1:1
  6:7 40:1
NOTARY 39:6
noted 38:5
noticed 21:11
numbered 1:20

         O
oath 38:19
Object 10:18
  21:21
objecting 14:10
objection 10:18
  12:21 14:4
  15:5,25 18:9
  24:10 25:17,24
  26:7,9 29:14

29:15
objections 34:8
objector 27:2
observed 32:12
occurred 16:5,7
October 29:16
  29:19 30:1
offensive 10:4
office 30:16 31:4
  39:1
officer 40:18
  41:5
officer's 42:10
Offices 3:21
  42:3
official 20:5,8
officials 16:3
oh 12:1 19:22
Okay 7:20 8:6
  8:25 12:1
  15:21 16:9
  17:14 18:17
  19:11 21:3
  22:1 23:6 28:2
  28:24 29:10,22
  30:21,24 31:14
  32:7 34:4 35:1
  36:1,7
once 15:22
ones 8:21
online 35:11
opinion 11:13
  13:16,18,25
  14:17 15:8,17
opinions 12:18
  13:22
opponents 18:23
  27:9
opportunity
  36:11
opposed 12:19
  12:20 18:19
opposing 29:10
oral 1:17 40:19
order 22:22 23:8

23:25 24:5,8
  25:11,12,14,16
  26:15
ordered 23:7
  24:22
orders 23:15,16
  23:20,22
original 42:12
outcome 42:18
outside 24:6
  33:2

         P
P 3:1,1
p.m 1:21,21 6:8
  36:20
Page 5:1,7,8
PAGELINE
  37:3
part 8:20 17:4
partial 25:25
parties 3:2 41:7
  42:16
party 40:25
pass 31:7
Paulo 3:14 6:16
  31:10 41:2,19
people 12:18,19
  20:10 21:25
  22:10,11
person 38:21
personal 13:21
  15:17
personally 22:2
  38:18
Phoenix 27:16
phone 31:20
  32:10 35:6
  43:3
physical 34:14
  34:23
plaintiff 1:4,19
  3:3 6:14 40:4
  41:8 42:11
play 32:8

please 6:9,12
  11:25 14:8
  18:11 26:10
PLLC 4:1 42:7
Pmckeeby@r...
  3:17 41:21
point 16:9 20:2
  31:23
policy 33:6,9
position 7:8 31:3
positions 19:24
  30:16
post 33:15,17
posted 33:18,20
posts 20:17 27:8
  34:15
practice 30:7
preparing 42:11
PRESENT 4:5
president 7:11
  9:2 11:8,10,12
  11:15 13:10
  33:24
pretend 21:15
previous 23:25
  25:12 26:15
previously 21:11
  28:3
prior 13:10 15:9
privileged 15:16
problematic
  28:13
Procedure 2:1
proceeding
  42:17
produced 1:18
proved 38:19
provisions 2:1
Pryor 3:5 41:9
PUBLIC 39:6
pulled 22:20
purchase 36:16
purpose 28:15
purposes 38:24
pursuant 1:25

  15:7,12 41:4
putting 15:19,23

          Q
question 14:11
  15:10,14 18:11
  21:20 24:15,16
  24:21 25:3,5,7
  26:6,11
questions 24:23
  25:2 29:2 31:6
  31:12 34:5,7,8
  35:13,15,25
quickly 35:18

          R
R 3:1
raise 10:9
ran 9:3
Rant 17:5
read 11:22
  36:11 38:3
REASON 37:3
recall 27:4
receive 23:1,2
received 9:24
  10:15 14:1,15
  15:22 22:22
  23:5 31:22
  32:15 34:24
receiving 34:14
  34:15
Recess 26:23
  35:21
recognize 11:21
  16:10,16 19:13
recollection 17:7
  30:21
record 2:1 6:2
  6:11,23 26:22
  26:25 35:20,23
  36:6,14 40:19
  41:7
Reed 3:15 41:19
refer 12:10

referring 16:25
refrect 17:6
refresh 17:6
refusing 24:25
  25:3
regard 34:19
regarding 20:24
Registration
  43:1
related 42:15
relationship
  8:25 13:2,3,7
remember 29:11
  35:2
reported 1:23
reporter 6:12
  22:7 36:7,15
  40:15
Reporter's 5:8
  40:10
REPORTING
  43:1
represent 29:23
  30:5
representation
  30:2,8
request 21:9
  22:18 30:5
requested 21:10
  30:8
requesting
  24:24
response 20:25
rest 12:17,23
  18:14
result 35:6
retainer 15:2
return 40:24
rexellection 17:7
Rickie 19:15,17
  19:19,21,23
  20:2 30:12
ridiculous 21:16
right 3:8 8:23
  9:9 11:16 12:1

  12:2,4,8,19
  14:3,9 20:3,6
  20:14,17,20,22
  21:11,13,18,23
  22:5,13 23:3,9
  23:11,21 24:9
  24:24 25:1,16
  26:6,19 29:8
  41:13
Road 3:9 41:14
Rockwall 3:6
  41:10
role 11:7,15
roles 11:11
RPR 42:24
Rules 1:25
run 9:4

          S
S 3:1 4:1 42:6
San 3:5 41:10
sanctions 23:10
sarcastic 12:12
says 12:7,9 17:4
scab 16:20 17:18
  17:21,23,24
  18:20
schmuck 31:11
screen 11:19
seal 39:1
second 7:11 9:2
seconds 31:24
sending 28:15
sent 10:13,24
  32:5
separate 11:11
separately 9:15
service 21:19
  23:1 24:4
share 13:21
shared 12:18
sharing 11:19
shirt 29:7
shop 19:25 20:2
  20:9 30:18,19

  30:21
short 26:19
  35:17
shorthand 1:24
  40:14
show 10:23
  11:18 21:10
  23:23 24:19
  25:11
showed 10:12
  29:10
shown 24:20
sign 36:11
signature 5:7
  36:7,10 37:1
  38:4 40:23
simply 22:16
sir 29:18,20
Smith 3:15
  41:19
social 20:17 27:7
  33:5,9
sorry 7:9 17:22
  19:15 20:20
  22:7,11 23:16
  23:18 26:3
  29:6
Southwest 1:6
  3:13 6:4,17,18
  7:8 10:1 21:6
  21:10,12,24
  22:10,19 28:16
  33:5 36:19
  40:6 41:18
Spand 19:15,17
  19:19,22,23
  20:2,13 30:12
  30:13
speak 13:3 19:6
  19:6 21:24
  22:14 26:8
  31:20 34:13
speaking 26:4
specific 30:4,8
speculation

12:22 14:12
**speech** 33:20
  34:1
**Springfield** 3:10
  41:14
**state** 1:23 6:9
  38:14 39:7
  40:15
**stated** 2:1
**States** 1:1 6:6
  40:1
**stem** 15:19,24
**Step** 29:24 30:8
**steps** 15:12
**steward** 19:25
  20:3,9 30:18
  30:19,22
**stipulations**
  6:11
**Stone** 7:14 9:1
  13:7,15,17
  14:13,15 19:8
  27:19 28:14
  31:16 34:13,18
**Stone's** 13:6
  27:23
**stop** 20:20,21
**Street** 3:15,22
  4:2 41:20 42:3
  42:7
**stuff** 35:7
**styled** 6:3
**submit** 10:5
**submitted** 10:1
  11:6 40:21
**subpoena** 24:19
**subscribed**
  38:22
**suggest** 10:5
**Suite** 3:9,16
  41:14,20
**support** 18:7,7
**supported** 11:14
**supporter** 27:4
**supporting** 18:5

**sure** 7:24 16:3
  20:1 30:19
**swear** 6:12
**sworn** 1:19 7:3
  40:18

─────── T ───────
**TA** 35:4
**take** 16:6,7
  20:25 26:18
  35:16
**taken** 1:20 15:12
  41:6 42:17
**Talburt** 16:13
  16:16 27:15
  29:24 30:4,25
  30:25 31:3
**talk** 13:15,17,24
  14:25 15:1
**talked** 22:4,11
**talking** 7:25 8:1
  8:2,3 14:21
**team** 7:12,13,15
  7:18,21,24 8:6
  8:9,11,16,19
**technically** 23:1
**tell** 7:7 10:3,8
  28:14
**telling** 7:20
**term** 12:12
**testified** 7:3
  14:14
**testimony** 10:19
  16:1 25:25
  40:20 41:5
**Texas** 1:1,23 3:6
  3:16,22 4:2 6:7
  6:14,17,22
  29:6 40:1,15
  41:10,21 42:4
  42:8,24 43:2
**Thank** 30:11
  34:5 35:13
  36:4
**thing** 35:11

**things** 18:1
**think** 27:13
  28:23 32:24
**thinking** 14:13
  23:18
**thread** 29:12
**threatened**
  13:13
**threatening** 12:4
**threats** 34:23
  35:3,8
**three** 14:5,5
**tie** 29:7
**time** 6:8 14:13
  14:17,18 16:19
  20:1 21:7,8
  22:8 40:25
  41:5
**today** 6:24 7:20
**told** 10:4 14:2,2
  21:17,22 22:4
  22:13,17,21
  24:13 32:24
**tonight** 24:23
**totally** 14:18
**transcript** 40:18
  40:21 42:12
**Transport** 1:6
  3:19 6:4 40:6
  42:1
**trip** 22:20
**trouble** 21:3
  34:21
**true** 23:8 38:5
  40:19
**trying** 11:22
  18:12 26:8
**turned** 29:5
  31:21 33:4,8
  33:15
**twice** 32:5
**two** 23:14,16,20
  31:22 32:2,4
**TWU** 6:22 7:10

─────── U ───────
**understand** 11:7
  12:25 15:15
  22:8
**Understood**
  20:12
**Unfortunately**
  34:17
**union** 1:7 3:19
  6:5 9:8,22 11:8
  11:10,12,15
  12:19,20 13:14
  16:3 18:3,4,5,8
  18:8,20,22
  19:24 20:6,8
  27:2,5,8 29:1
  30:7,17 31:4
  36:17 40:7
  42:1
**union-protected**
  33:20,25
**United** 1:1 6:6
  40:1
**unreasonable**
  21:9 22:17
**upset** 14:20
**use** 19:8 28:21

─────── V ───────
**valid** 25:16
**versus** 6:3
**vice** 7:11 9:2
**video** 10:4 14:19
  31:21,25 32:7
**Videoconfere...**
  1:11,17,22 3:2
**Videographer**
  4:6 6:1 26:21
  26:24 35:19,22
  36:2,5
**videos** 31:23
  32:3
**VIDEOTAPED**
  1:11,17
**view** 18:20

**viewed** 32:18
**violating** 33:8
**violation** 33:5
  33:13,14
**Virginia** 3:10
  41:14
**VS** 1:5 40:5

─────── W ───────
**wait** 35:10
**want** 32:1 36:15
**wanted** 22:19
**wants** 12:7
**wasn't** 14:21
  21:20
**watch** 32:1
**watched** 31:24
  32:23
**we'll** 26:18,19
  26:20 35:17
**We're** 6:1 35:22
**we've** 13:2
**wearing** 31:11
**well-being** 34:14
**weren't** 24:2
**witness** 1:18,24
  6:12 14:9
  18:11 31:7
  36:1,8,13 37:2
  40:17,20,22,23
**Witness's** 5:7
**won** 8:12
**work** 3:8 9:6
  10:20 17:12
  21:5,14 41:13
**worked** 21:6
**Workers** 1:6
  3:19 6:4 40:6
  42:1
**working** 21:16
**worried** 27:14
**wouldn't** 21:17
  21:22 22:5,13
**wrap** 26:20
**wrong** 10:12

| **X** | 41:14 | **8:02** 6:8 |
|---|---|---|
| | **25** 11:21 | **8:03** 1:21 |
| **Y** | **27** 16:10,10 | **8:27** 26:22 |
| **yeah** 11:25 12:1 | 29:11 | **8:31** 26:25 |
| 14:5 20:23 | **2850** 3:15 41:20 | **8:41** 35:20 |
| 21:14 23:4 | **29** 1:21 5:5 | **8:44** 35:23 36:6 |
| 29:9,12 32:20 | | **8:45** 1:21 36:20 |
| 32:22 | **3** | **8001** 3:9 41:14 |
| **year** 13:10 | **3** 35:23 | **888.988.5317** |
| **years** 12:16 14:5 | **3:17-cv-02278...** | 43:3 |
| 14:5 | 1:6 6:6 40:6 | |
| | **302** 3:5 41:10 | **9** |
| **Z** | **31** 5:6 | **9** 40:22,24 |
| **Zoom** 1:22 3:2 | **3301** 3:22 4:2 | **972.771.3933** |
| | 42:3,7 | 3:6 41:11 |
| **0** | **34** 5:6 | **9th** 42:20 |
| **00** 41:2,2,3 | **3613** 42:24 | |
| | **37** 5:7 | |
| **1** | **3rd** 21:6 | |
| **10/21/2022** | | |
| 42:25 | **4** | |
| **10821** 43:1 | **40** 5:8 | |
| **13th** 29:16,19 | **4th** 21:7 | |
| 30:1 | | |
| **1404** 43:2 | **5** | |
| **1500** 3:16 41:20 | **556** 1:7 6:5,22 | |
| **1999** 43:2 | 7:10 8:23 40:7 | |
| | **5th** 21:7 | |
| **2** | | |
| **2** 5:2 26:25 | **6** | |
| 29:24 30:9 | **600** 3:9 41:14 | |
| **2000** 7:9 | **6th** 21:7 | |
| **2001** 13:1 28:12 | | |
| **2013** 13:11 | **7** | |
| **2014** 29:16,19 | **7** 5:5 | |
| 30:1 | **703.321.8510** | |
| **2015** 8:2,7 35:4 | 3:10 41:15 | |
| **2017** 7:10 8:3,5 | **75087** 3:6 41:10 | |
| 20:1 30:19 | **75201** 3:16 | |
| **2022** 1:13,21 6:2 | 41:21 43:2 | |
| 37:2 40:12,22 | **75226** 3:22 4:2 | |
| 40:24 42:20 | 42:4,8 | |
| **21-X** 19:12 | | |
| **214.232.9015** | **8** | |
| 3:23 42:4 | **8** 1:13 6:2 37:2 | |
| **22160** 3:10 | 40:12 | |