**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**Dallas Division**

| | |
|---|---|
| CHARLENE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S TRIAL BRIEF IN RESPONSE TO THE COURT'S DRAFT JURY CHARGE AND INSTRUCTIONS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................... iii

RESPONSE TO JURY CHARGE.........................................................................................1

I. Carter's RLA Retaliation Claims against Southwest and Local 556 ..................................1

A. The Court's *Wright Line* mixed motive instruction does not apply to this case because Southwest and Local 556 did not fire Carter for some different unprotected activity, and the *Wright Line* instruction would improperly nullify Carter's RLA protections.........................................................................1

B. The Court's Jury Charge should clarify the meaning of "substantial or motivating factor"....................................................................................3

C. The Court's Jury Charge should clarify the kinds of threats that are unprotected ........3

II. Carter's Title VII Claims against Southwest and Local 556 .............................................4

A. The Draft Jury Charge should clarify the "motivating factor" analysis for Carter's Religious Discrimination Claims against Southwest and Local 556 ..........................................................................................4

B. The Draft Jury Charge should clarify the second element of what Carter must prove to prevail on her unlawful discrimination claim against Local 556..........................................................................................6

C. The Draft Jury Charge should clarify Carter's Failure to Accommodate Claims against Southwest and Local 556.......................................................................7

1. The Court's Draft Jury Charge should exclude elements one and two of what Carter must prove in accordance with *EEOC v. Abercrombie & Fitch Stores* because the conflict with job requirements is undisputed in this case and could confuse the jury ....................................................................7

2. The Court's Draft Jury Charge should define "accommodation" for the jury.........9

III. Carter's Duty of Fair Representation ("DFR") Claims against Local 556 .........................9

A. The Court's Jury Charge should clarify for the Jury the meaning of "arbitrary," "discriminatory," and "bad faith"...............................................9

B. The Court should amend the Jury Charge to exclude references to grievance handling, which is irrelevant to Carter's DFR claim and not necessary to proving the union's DFR violation……………………………………………………..........................................10

CONCLUSION..........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arthur v. United Airlines, Inc.*,
655 F.Supp. 363 (D. Colo. 1987) ....................................................................2

*Bostock v. Clayton Cnty., Ga.*,
140 S. Ct. 1731 (2020)....................................................................4, 5, 6

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
140 S. Ct. 1009 (2020)....................................................................6

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015)....................................................................4, 5, 6, 7, 8

*Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston, Inc.*,
515 U.S. 557 (1995)....................................................................3

*In re Graphic Commc'ns Int'l Union, Local 1-M (Bang Printing)*,
337 N.L.R.B. 662 (2002). ....................................................................11

*Int'l Union of Operating Eng'rs Local 406, AFL-CIO v. NLRB*,
701 F.2d 504 (5th Cir. 1983) ....................................................................10

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................................................................3, 4

,
*McCall v. Sw. Airlines Co.*,
661 F. Supp. 2d 647 (N.D. Tex. 2009) ....................................................................10

*NLRB v. Allied Aviation Fueling of Dallas LP*,
490 F.3d 374 (5th Cir. 2007) ....................................................................1, 2

*NLRB v. Transp. Mgmt, Corp.*,
462 U.S. 393 (1983)....................................................................3

*NLRB v. Wright Line*,
662 F.2d 899 (1st Cir. 1981)....................................................................1, 2, 3

*O'Neill v. Air Line Pilots Ass'n, Int'l*,
939 F.2d 1199 (5th Cir. 1991) ....................................................................10

*Poly-America, Inc. v. NLRB*,
260 F.3d 465 (5th Cir. 2001) ....................................................................12

*Tedford v. Peabody Coal Co.*,
533 F.2d 952 (5th Cir. 1976) ....................................................................10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Vaca v. Sipes*,
386 U.S. 171 (1967) ....................9, 10

**Rules & Statutes**

42 U.S.C. § 2000e ....................4, 5, 6

42 U.S.C. § 2000e(j) ....................4, 5

42 U.S.C. § 2000e-2(a)(1) ....................4, 6

45 U.S.C. § 152 ....................1, 3

45 U.S.C. § 152 (Third) ....................1, 3

45 U.S.C. § 152 (Fourth) ....................1, 3

## RESPONSE TO DRAFT JURY CHARGE

Pursuant to the Court's July 8, 2022 authorization, Plaintiff Charlene Carter ("Carter") files this trial brief regarding the Court's Draft Jury Charge and Instructions.

### I. Carter's RLA Retaliation Claims against Southwest and Local 556

#### A. The Court's *Wright Line* mixed motive instruction does not apply to this case because Southwest and Local 556 did not fire Carter for some different unprotected activity, and the *Wright Line* instruction would improperly nullify Carter's RLA protections.

The Court's jury charge should not give a *Wright Line* mixed motive instruction[1] for Carter's RLA retaliation claims because there are no competing motives based on protected and unprotected activity. When it is undisputed which employee activities motivated the employer's decision to fire the employee or the union's decision to cause the employee to be fired, the *Wright Line* mixed motive framework does not apply, and the only question is whether the employee's activities were protected.[2] Southwest and Local 556 do not dispute that they fired Carter for her Facebook videos and messages to President Stone. Southwest and Local 556's only defense—that they fired Carter because her activities were "offensive" and violated the social media policy—are arguments that Carter's RLA-protected activities exceeded their protections, not *Wright Line* affirmative defenses that they fired her for different, unprotected activity.

The Court's jury charge states:

> If you decide that Defendant Southwest and/or Defendant Local 556 retaliated against Plaintiff Carter (assuming that Plaintiff Carter engaged in protected activity), you must then consider the Defendants' affirmative defense. The Defendants assert that Plaintiff Carter would have been discharged even if she had not engaged in activity protected by Section 152 Third and/or Fourth. The Defendants have the burden of proving this affirmative defense, and they must prove it by a preponderance of the evidence. If the Defendants prove this defense by a preponderance of the evidence, the Defendants are not liable for this claim.[3]

[1] Draft Jury Instructions, p.15; *see also NLRB v. Wright Line*, 662 F.2d 899 (1st Cir. 1981).
[2] *See NLRB v. Allied Aviation Fueling of Dallas LP*, 490 F.3d 374, 379 (5th Cir. 2007).
[3] Draft Jury Instructions, p.15.

The *Wright Line* mixed-motive framework applies only in mixed-motive cases involving competing motives: a motive based on protected activity, and a motive based on different, unprotected activity.[4] For example, *Wright Line* applies when an employee contends that the employer fired him for engaging in protected activity, but the employer maintains that it fired him for unprotected activity, such as poor work performance, tardiness, or stealing from the company. *Wright Line* applies to distill whether the protected or the unprotected activity motivated the adverse action. Here, it is undisputed that Southwest and Local 556 fired Carter for her Facebook videos and messages. Southwest and Local 556 do not assert that they fired Carter for some unprotected activity that is different from her Facebook videos and messages opposing Local 556's representation of flight attendants at the Women's March and objecting to the union's activities. The only question is whether the RLA protected Carter's activities.

Southwest and Local 556's only defense for firing Carter for her Facebook videos and messages is that those communications were "offensive" and violated the company's social media policies. But those arguments are not an "affirmative defense" within *Wright Line*'s meaning. To the contrary, those arguments fall within the Fifth Circuit's analysis in *Allied Aviation*, regarding whether the employee's protected activities lost their protection. The Fifth Circuit held that in these circumstances, *Wright Line* does not apply, and for good reason.

If Southwest can simply re-assert its social media policies as an "affirmative defense" under *Wright Line*, then the RLA's protections are meaningless, and *Wright Line*'s application erases employees' RLA statutory rights from the text. Southwest's assertion that it fired Carter for violating its social media policies, and not for her RLA-protected activity is question begging and

[4] *See e.g.*, *Poly-America, Inc. v. NLRB*, 260 F.3d 465, 488-89 (5th Cir. 2001) (applying the *Wright Line* framework when the employer claimed that it discharged the employee for poor performance); *see also NLRB v. Wright Line*, 662 F.2d 899 (1st Cir. 1981).

misses the point of protected rights.[5] Similarly, Local 556's assertion that Carter's communications "offended" President Stone cannot provide the union with an affirmative defense. Simply put, if the employee's activities are RLA-protected, the employer and union cannot fire her for those activities.[6]

The Court's jury charge should not include a *Wright Line* instruction because it undermines the RLA's protections under the circumstances in this case, where Southwest and Local 556 do not contest that they fired Carter for any other reason besides her Facebook videos and messages. Furthermore, instructing the jury to determine whether Carter would have been discharged for some other reason when no such reason exists, risks jury confusion in addition to being contrary to Fifth Circuit precedent.

**B. The Court's Jury Charge should clarify the meaning of "substantial or motivating factor."**

The Court's Jury Charge should clarify the meaning of "substantial or motivating factor."[7] "Substantial or motivating factor" means any factor that motivated or in any way contributed to Southwest's decision to fire Carter, even if other factors also motivated the decision. It does not have to be the only factor that motivated Southwest's decision to fire Carter.[8]

**C. The Court's Jury Charge should clarify the kinds of threats that are unprotected.**

The Court's Jury Charge instructs the jury that all union-oppositional-and-organizational activity is protected under Section 152 Third and Fourth unless it "constitutes a threat."[9] While the

[5] *See Arthur v. United Airlines, Inc.*, 655 F. Supp. 363, 367 (D. Colo. 1987).
[6] *See e.g., Hurley v. Irish-Am. Gay, Lesbian, and Bisexual Grp. of Boston, Inc.*, 515 U.S. 557, 574 (1995) ("[T]he point of all speech protection … is to shield just these choices of content that in someone's eyes are misguided or even hurtful.").
[7] Draft Jury Charge, pp.13-14.
[8] *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401-02 (1983).
[9] Draft Jury Instructions, p.14 (citing *Konop v. Hawaiian Airlines*, 302 F.3d 868, 882-83 (9th Cir. 2002).

Court's Jury Charge cites *Konop* for the instruction, that case discussed whether an *employer* violated the NLRA for threatening to file a defamation suit against an employee for his protected activity.[10] While threats may be legally actionable, there is no case law holding that the amorphous concept of a threat, without more, is enough to strip RLA-activities of their protection.

## II. Carter's Title VII Claims against Southwest and Local 556

### A. The Draft Jury Charge should clarify the "motivating factor" analysis for Carter's Religious Discrimination Claims against Southwest and Local 556.

The Court's Draft Jury Charge states that Carter must prove that "Defendant Southwest's discharge of Plaintiff Carter was motivated by her sincerely held religious observances, beliefs, or practices"[11] and, for the union, that "Local 556's decision to report Carter to Southwest was motivated by Carter's sincerely held religious observances, beliefs, or practices."[12] The Draft Jury Charge suggests Carter must prove that her religious observances, beliefs, or practices were the *sole and exclusive* motivating factor for her termination, but Title VII makes it unlawful for Southwest to fire and Local 556 to report her "because of" any aspect of Carter's religious observances, beliefs, or practices.[13] This means Carter need only show that some aspect of her religious observances, beliefs, or practices was a "motivating factor" in Southwest's decision to fire her.[14] Carter suggests that these sentences should instead state that Carter must prove "that

---

[10] *Id.* at 885-86.
[11] Draft Jury Instructions, p.16.
[12] Draft Jury Instructions, p.17.
[13] 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e(j).
[14] 42 U.S.C. § 2000e-2(a)(1) (prohibiting discharge because of religion); 42 U.S.C. § 2000e(j) (defining "religion"); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *Bostock v. Clayton, Cnty.*, 140 S. Ct. 1731, 1739, 1741 (2020); 42 U.S.C. § 2000e-2(m) (motivating factor). Title VII's "because of" standard allows Carter to prove Southwest's religious discrimination against her by showing that her religious observances, beliefs, or practices was a "but-for cause" of Southwest's decision to fire her. Under this standard, Carter must only prove that Southwest would not have fired her in the absence of some aspect of her religious observances, beliefs, or practices. *See* Fifth Circuit Pattern Jury Instructions 11.1, p.134; *Bostock*, 140 S. Ct. at 1739, 1741. Plaintiff Carter's religious observances, beliefs, or practices may be a "but-for" cause

her sincerely held religious observances, beliefs, or practices were a motivating factor in Defendant Southwest's discharge of Plaintiff Carter," and "Carter's sincerely held religious observances, beliefs, or practices were a motivating factor in Local 556's decision to report Carter to Southwest."

The Draft Jury Charge states, "Plaintiff Carter does not have to prove that *unlawful discrimination* was the only reason Defendant Southwest discharged her [or Defendant Local 556 reported her to Defendant Southwest]."[15] Phrased this way, the Draft Jury Charge heightens the burden under Title VII's "motivating factor" test because it suggests that "unlawful discrimination" must be the motivating factor. Under Title VII's "motivating factor" test Carter need only prove that *some aspect*[16] of her religious observances, beliefs, or practices was *a factor* in the employer's/union's decisions.[17] The Supreme Court has held, in fact, that "[a]n employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions."[18]

The Court's instructions should clarify that Carter's religious observances, beliefs, or practices may be a "motivating factor" for Southwest's decision to fire Carter even if some other factor contributed to Southwest's and Local 556's decisions.[19] Therefore, this Draft Jury Charge statement should be amended to state: "Carter is not required to prove that her religious observances, beliefs, or practices were the sole or exclusive motivating factor for Defendant

---

for Southwest's decision to fire Carter even if some other factor contributed to Southwest's decision. *Bostock*, 140 S. Ct. at 1739, 1741.

[15] Draft Jury Instructions, p.16 (Southwest), p.17 (Local 556).

[16] *See* 42 U.S.C. § 2000e(j).

[17] *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m).

[18] *Abercrombie & Fitch*, 575 U.S. at 773.

[19] *See* 42 U.S.C. § 2000e(j).

Southwest's decision to fire her [or Local 556's decision to report her] or that all of the Defendants' stated reasons for firing her [or reporting her] were false."[20]

While the Fifth Circuit Pattern Jury Instructions suggest that the Court should decide whether to give a "but-for" or "mixed-motive" instruction based on the evidence in this case, the Supreme Court has held that a Title VII plaintiff can demonstrate "because of" causation under a "but-for" or "motivating factor" standard.[21] Carter's Title VII claims do not implicate "mixed-motives" insofar as it is undisputed that Southwest and Local 556 fired Carter for her Facebook videos and messages involving her religious observances, beliefs, and practices.[22] Southwest and Local 556 do not argue that they fired or reported her for some different unprotected activity besides her Facebook videos and message. Southwest and Local 556 simply argue that they could fire Carter for social media policy violations.

**B. The Draft Jury Charge should clarify the second element of what Carter must prove to prevail on her unlawful discrimination claim against Local 556.**

The Draft Jury Charge should clarify the second element of what Carter must prove to prevail on her unlawful discrimination claim against Local 556. The Draft Jury Charge states that the second element Carter must prove is "Local 556 caused or attempted to cause Carter's *discharge* by Southwest."[23] Title VII frames a union's violation in terms of causing or attempting to cause the employer *to discriminate*.[24] While Carter does claim that Local 556 caused and attempted to cause Southwest to discriminate against her religious observances, beliefs, and practices, Carter

---

[20] *Id.*
[21] *Abercrombie & Fitch*, 575 U.S. at 773; *Bostock*, 140 S. Ct. at 1739-40; 42 U.S.C. § 2000e-2(m); 42 U.S.C. § 2000e-2(a)(1).
[22] *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (recognizing different methods for proving causation under Title VII without being constrained to indirect proof paradigms).
[23] Draft Jury Instructions, p.17.
[24] 42 U.S.C. § 2000e-2(c)(3).

need not prove that Local 556 intended to cause the actual discharge. Carter need only show that Local 556 attempted to cause Southwest to discriminate against her religion in any way, whether the union intended to cause her discharge, discipline, or some other different treatment from other employees based on religion.

### C. The Draft Jury Charge should clarify Carter's Failure to Accommodate Claims against Southwest and Local 556.

#### 1. The Court's Draft Jury Charge should exclude elements one and two of what Carter must prove in accordance with *EEOC v. Abercrombie & Fitch Stores* because the conflict with job requirements is undisputed in this case and could confuse the jury.

The Court should amend the Draft Jury Charge to reflect more clearly the failure to accommodate elements as set forth by the Supreme Court in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015): (1) Southwest fired Carter/Local 556 reported Carter, (2) because of, (3) some aspect of her religious observances, beliefs, or practices.[25] The Draft Jury Charge currently shows that Carter must prove:

> (1) that Plaintiff Carter's sincerely held religious beliefs conflicted with a job requirement, (2) that Plaintiff Carter was discharged for failure to comply with the conflicting job requirement, and (3) that Defendant Southwest discharged Carter with the motive of avoiding the need for accommodating a religious belief, observance, or practice.[26]

Elements one and two of the Draft Charge's instructions are inconsistent with *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), and create confusion that could be prejudicial. Elements one and two instruct the jury that Carter must prove that her religious beliefs conflicted with a job requirement. That formulation is confusing in this case.

As in *Abercrombie & Fitch* where a job applicant was not hired because of her religious practices, Carter was fired for her religious observances, beliefs, and practices. "Firing Carter" is

---

[25] *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 772.
[26] Draft Jury Instructions, p.19.

the conflict with the job requirements. Stated another way, the "conflict with job requirements" is inherent in Southwest's decision to fire Carter under the social media policies as much as the "failure to hire" element in *Abercrombie & Fitch* was the conflict with the employer's "no headscarves" policy. As worded, the Draft Charge could confuse and mislead the jury as to whether Carter's religious beliefs "conflicted with a job requirement." It is undisputed here that Southwest fired Carter under its social media policies and created the "conflict." Therefore, this instruction as to what Carter must prove can be limited to just the third element.

The Court should further clarify for the jury that firing an employee because of her religious observances, beliefs, or practices "is synonymous with refusing to accommodate the religious practice."[27] The Draft Jury Charge should also explain to the jury that employers may not fire employees for their religious observances, beliefs, or practices under an otherwise neutral policy, and that Title VII requires otherwise neutral policies to give way to the need for an accommodation.[28] The Draft Jury Charge should also inform the Jury that Title VII imposes an affirmative obligation on employers not to fire an employee because of some aspect of her religious observances, beliefs, or practices.[29] For the same reasons, the Court should amend the Draft Jury Charge to exclude the instruction that "An employer may terminate an employee for other reasons, good or bad, fair or unfair."[30]

The Court should also amend the Draft Jury Charge for Carter's failure to accommodate claim against Local 556 in all of the same respects set forth above because, as currently written, the failure to accommodate instructions for Local 556 rehash her Title VII "cause or attempt to cause

[27] *Abercrombie & Fitch*, 575 U.S. at 772 n.2.
[28] *Id.* at 775.
[29] *Id.*
[30] Draft Jury Instructions, p.16.

discrimination" claim against the union.[31] While there are similarities with these claims based on Local 556 causing and attempting to cause Southwest to discriminate and fire Carter, Carter's failure to accommodate claim against Local 556 involves affirmative obligations on the part of the union.[32]

**2. The Court's Draft Jury Charge should define "accommodation" for the jury.**

The Draft Jury Charge should define accommodation for the jury as allowing the employee to engage in her religious observances, beliefs, or practice despite the employer's normal rules to the contrary. This would prevent any confusing resulting from the Title VII term.

**III. Carter's Duty of Fair Representation ("DFR") Claims against Local 556**

**A. The Court's Jury Charge should clarify for the Jury the meaning of "arbitrary," "discriminatory, and "bad faith."**

The Draft Jury Charge should provide further detail to explain the meaning of "arbitrary," "discriminatory," and "in bad faith" for the jury.[33] While the Jury Charge references the "arbitrary, discriminatory, or bad faith" standard, those legal terms have a more definite legal meaning that the instructions should elucidate for the jury. The Court should instruct the jury what Carter must prove to show that Defendant Local 556 acted "arbitrarily," "discriminatorily," or "in bad faith" so the jury understands those standards in the event that the union rebuts the presumption that it breached the duty:

To prove that Defendant Local 556 acted "arbitrarily," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone reported Carter for discipline because of Stone's hostility to Carter's anti-union activities or religious beliefs, because of political

[31] Draft Jury Instructions, p.21.
[32] *Supra* at 8.
[33] Draft Jury Instructions, pp.9-11; *see also Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

favoritism, or because of anything other than fair and impartial consideration of the union's representation of all employees or legitimate union business reasons.[34]

To prove that Defendant Local 556 acted "discriminatorily," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone treated Carter differently than other Southwest employees because of Carter's opposition to the union, expression of disapproval with the union's activities and participation in the Women's March, or because of her religious beliefs, observances, or practices.[35]

To prove that Defendant Local 556 acted in "bad faith," Plaintiff Carter must prove by a preponderance of the evidence that Local 556 President Stone acted with hostility or discrimination towards Carter, or that Stone attempted to intentionally harm Carter when she reported Carter for discipline.[36]

Plaintiff Carter must only prove one of these to show a violation of Defendant Local 556's duty of fair representation.

**B. The Court should amend the Jury Charge to exclude references to grievance handling, which is irrelevant to Carter's DFR claim and not necessary to proving the union's DFR violation.**

The Court should amend the Jury Charge to exclude references to grievance handling because it confuses the Jury regarding the DFR claim, and what Carter must show to prove her claim. The Court's Jury Charge emphasizes that the DFR applies "when a union is handling a grievance based upon termination,"[37] and states "Plaintiff Carter can also prove a breach of duty by the union by

---

[34] *See McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009) (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)).
[35] *See Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca*, 386 U.S. at 177-78).
[36] *See McCall*, 661 F. Supp. 2d at 654 (citing *O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203, 1204 (5th Cir. 1991)).
[37] Draft Jury Instructions, p.9.

showing that the union was arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion."[38] Unions violate the duty of fair representation by causing or attempting to cause an employee's discharge.[39] DFR violations are not limited to improper grievance handling or inadequate representation in other areas.

Carter's claim is that Local 556 violated the DFR when Local 556 President Stone caused and attempted to cause her to be disciplined for union dissident speech.[40] Carter's DFR claim does not involve any argument that Local 556 mishandled her grievance or failed to represent her during Step 2 grievance proceedings. Thus, this information may mislead the jury about the Carter DFR claim's merits because she does not argue that the union mishandled a grievance in her case.

The Court should also amend the Jury Charge to clarify that the union violates the DFR when it even *attempts to cause* the discharge of a represented employee, and not just when it successfully causes an employee's discharge. The Court's Draft Jury Charge indicates that the union breaches its duty only when it causes the discharge of an employee.[41]

## CONCLUSION

For the foregoing reasons, the Court should amend the Draft Jury Charge and Instructions as set forth herein.

Dated: July 10, 2022

Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice)*
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160

[38] Draft Jury Instructions, p.10
[39] *In re Graphic Commc'ns Int'l Union, Local 1-M (Bang Printing)*, 337 N.L.R.B. 662, 673 (2002).
[40] *See id*.
[41] Draft Jury Instructions, p.10.

Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

**Certificate of Service**

I hereby certify that on July 10, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record

/s/ Matthew B. Gilliam