# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

---

## DEFENDANT SOUTHWEST AIRLINES CO.'S RESPONSE TO COURT'S DRAFT JURY INSTRUCTIONS AND INTERROGATORIES

---

Southwest Airlines Co. ("Southwest") submits this summary response to the Court's draft jury instructions and interrogatories in preparation for the upcoming charge conference.

## I. RAILWAY LABOR ACT INSTRUCTION

1. For the reasons set forth in Southwest's trial brief, it believes that the question of protected activity under the RLA is a matter for resolution by the jury.

2. The Court's RLA instruction quotes from the statute's general statement of purpose. While such statements may be relevant to the Court in interpreting the RLA, it is of no use to the jury in assessing liability in this case. The cited provisions impose no obligations on Southwest and do not define the scope of protected activity. Moreover, Southwest notes that the RLA's statement of purpose also emphasizes the need for prompt resolution of disputes through arbitration, and the Supreme Court has long held that section 152 Third & Fourth is designed to

1

protected employees *prior* to union certification. *See* 45 U.S.C. § 151a(4)-(5); *TWA, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989). If the Court insists on including a general statement regarding the RLA's purpose, it should provide a more complete statement that incorporates the statute's strong preference to arbitral resolution and a summary of RLA's limited application to post-certification disputes (*e.g.*, the necessity of animus or an attack on the bargaining process).

3.      The Court's draft instruction characterizes Carter's RLA claim against Southwest as follows: "Plaintiff Carter claims that Defendant Southwest retaliated against her by firing her for engaging in union-opposition-and-organizational activity protected by Section 152 Third and Fourth." Southwest disputes this characterization of Carter's claim. Southwest submits the following more neutral statement of Carter's claim is preferable because it does not risk being incomplete or prejudicing the jury: "Plaintiff Carter claims that Defendant Southwest retaliated against her by firing her for engaging in activity protected by Section 152 Third and Fourth."

4.      The Court's instruction states that "[a]ll union-oppositional-and-organizational activity is protected." Southwest submits that this instruction is an inaccurate and incomplete statement of the law. Moreover, this instruction is unnecessary because the Court quotes the key statutory text thereby obviating the need for a five word summary of what constitutes protected activity.

5.      Citing *Konop v. Hawaiian Airlines*, 302 F.3d 868, 882–83 (9th Cir. 2002), the Court's draft jury instructions states that activity only loses protection if it (a) is a threat; or (b) is a false statement made with knowledge of its falsity or reckless disregard for its truth. Southwest submits that threats and defamation (under a heightened standard) are not the only forms of conduct that forfeit statutory protection. Indeed, the court in *Konop* stated that speech loses

2

protection if it is flagrant, violent, extreme, egregious, opprobrious, offensive, or obscene. *Konop*, 302 F.3d at 883 n.11; *see also Contempora Fabrics, Inc. v. United Food & Commercial Workers Union*, 344 NLRB 851 (2005) (telling co-worker that she "better not vote no for this union" was unprotected); *Honda of Am. Mfg., Inc.*, 334 NLRB 746, 748-49 (2001) (use of phrases "out of the closet" and "bone us" in a union newsletter was "so offensive as to render the otherwise protected newsletters unprotected.").

Moreover, Courts (including the Fifth Circuit) have described that other forms of speech and conduct that lose protection. *NLRB v. Arkema, Inc.*, 710 F.3d 308, 316-17 (5th Cir. 2013) ("Harassment and intimidation are not protected union activities; offensive, hostile language and threats are not protected even if under the guise of union activity. 'In the simplest terms, it is preposterous that employees are incapable of organizing a union or exercising their other statutory rights under the NLRA without resort to abusive or threatening language.'"); *Held v. Am. Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7665, *21-22 (N.D. Ill. Jan. 31, 2007) ("[S]peech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing."); *Media Gen. Ops., Inc. v. NLRB*, 394 F.3d 207, 209, 212 (4th Cir. 2005) (employee forfeited protections by use of terms "bastard," "son of a bitch," and calling supervisor a "racist."); *Leiser Constr., LLC*, 349 NLRB 413, 415 (2007) (situations in which the protected activity is "vulgar or obscene[,] [] may 'exacerbate employee dissension' or situations in which restriction … 'is necessary to maintain decorum and discipline … '"); *DaimlerChrysler Corp.*, 344 NLRB 1324, 1329 (2005) ("Where an employee engages in indefensible or abusive misconduct during otherwise protected activity, the employee forfeits the [NLRA's] protection."); *Sw. Bell Tel. Co.*, 200 NLRB 667 (1972) (employer could prohibit insignia with "provocative slogan" that "Ma Bell is a Cheap Mother" due to the

3

"controversial nature of the language [] and its admitted susceptibility to [a] derisive … construction").

Additionally, employers may restrict otherwise protected activity in order to maintain order and respect, and to ensure compliance with applicable law, including Title VII. *NLRB v. Allied Aviation Fueling of Dall. LP*, 490 F.3d 374, 379 (5th Cir. 2007) (the employer has the right to restrict protected activity to "maintain order and respect."); *Constellium Rolled Prods. Ravenswood, LLC v. NLRB*, 945 F.3d 546, 551 (D.C. Cir. 2019) (NLRB must consider potential conflict with other federal laws in assessing protected conduct; concluding that identifying co-workers and union members who signed up to work overtime as "whores" could "conflict with … obligations to provide a workplace free of sexual harassment").

6.      The Court's instruction appears to contemplate that if it finds protected activity is a question of law, the jury will render an advisory opinion on the topic. Southwest is confused regarding the basis for having the jury provide an advisory opinion and the Court's proffered language on this issue more generally. Southwest asks that the Court further explain this instruction at the charge conference.

## II.    TITLE VII

1.      The Court's Title VII accommodation instruction should make clear that if an employee violates an employment policy *before* she requests an accommodation and the need for an accommodation becomes apparent to the employer, his or her religiously-motivated policy violation need not be excused. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) ("There is nothing in Title VII that requires employers to give lesser punishments to employees who claim, after they violate company rules … that their religion caused them to transgress the rules."); *Nobach v. Woodland Village Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015) (citing *Chalmers* with approval and reversing jury verdict and remanding for entry of

US_ACTIVE-168009229.1

judgment for employer where plaintiff failed to notify employer of need for religious accommodation until after violating employer rules); *Bob v. Madison Sec. Grp.*, 2016 U.S. Dist. LEXIS 163940, *27 (S.D.N.Y. Nov. 28, 2016) ("plaintiff must properly notify the employer of the plaintiff's conflicting religious belief … *before* the time the conflicting employment requirement arises"); *Hussein v. Waldorf Astoria*, 134 F. Supp. 2d 591, 597 (S.D.N.Y. 2001) (accommodation claim failed because employee "did not mention the purported conflict between his religion and the hotel's policy until after management questioned him about his beard").

2.      The Court's de minimis instruction overstates the burden required to establish and undue hardship and excessively limits what the jury can consider in assessing whether accommodating Carter would have imposed an undue hardship. *See, e.g.*, *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009) (economic and non-economic burdens can pose an undue hardship); *Bruff v. N. Miss. Health Servs.*, 244 F.3d 495, 501 (5th Cir. 2001) (the employer is not required to "actually incur accommodation costs before asserting that they are more than *de minimis.*"); *United States EEOC v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 752 (D. Md. 2021) (damage to employee morale can constitute undue burden). Moreover, the law is clear that financial loss is not the only harm that can demonstrate hardship. *Dalberiste v. GLE Assocs., Inc.*, 814 Fed. Appx. 495, 498 (11th Cir. 2020); *Cook v. Chrysler Corp.*, 981 F.2d 336, 338 (8th Cir. 1992). The court can also consider the burden on one's co-workers. Even Carter has argued that the de minimis bar is a very low one in opposing summary judgment in this case.[1]

---

[1] Carter described the de minimis standard as follows: *Hardison*['s] [*de minimis* burden test] allows employers to systematically discriminate against and exclude religious minorities from the workplace using overly-broad rules, such as Southwest's Social Media Policies. … It means that an employer need not "grant even the most minor special privilege to religious observers to enable them to follow their faith." … [I]n practice employers can deprive religious employees of their livelihood for simply following their faith.

US_ACTIVE-168009229.1

3.      The Court's instruction should make clear that an employer is not required to provide an accommodation that allows an employee to proselytize to co-workers. *See Ervington v. LTD Commodities, LLC*, 555 Fed. Appx. 615 (7th Cir. 2014) (employer "was not required to accommodate [the employee's] religion by permitting her to distribute pamphlets offensive to other employees."); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004) (employee was not entitled to post scripture at his cubicle as an accommodation); *Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1342 (8th Cir. 1995) (employer did not violate Title VII by restricting employee from wearing a two inch button that "showed a color photograph of an eighteen to twenty-week old fetus" and contained the phrases 'Stop Abortion,' and 'They're Forgetting Someone.'"); *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1021 (4th Cir. 1996) (employer not required to accommodate employee's request to proselytize); *Mitchell v. Univ. Med. Ctr., Inc.*, 2010 U.S. Dist. LEXIS 80194, *22-23 (W.D. Ky. Aug. 9, 2010) (allowing employee "to have religious conversations with co-workers, including conversations about the dates God sent her, and whether they could be the date for the end of the world or the Antichrist" would impose an undue hardship).

4.      The Court's instruction should make clear that an employer is not required to accommodate an employee's personal preferences as to how he or she expresses or manifests his or her religious beliefs. *See Mial v. Foxhoven*, 305 F. Supp. 3d 984, 991-92 (N.D. Iowa 2018) ("[T]he fact that a practice or belief may be connected to religion does not compel the conclusion that it is not a personal preference" for which no accommodation is required."); *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682-83 (9th Cir. 1998) (timing of religious pilgrimage was a matter of personal preference); *Schwartzberg v. Mellon Bank, N.A.*, 2008 U.S. Dist. LEXIS 1180

US_ACTIVE-168009229.1

(W.D. Pa. Jan. 8, 2008) (*aff'd* 307 Fed. Appx. 676 (3d Cir. 2009)); *Summers v. Whitis*, 2016 U.S. Dist. LEXIS 173222 (S.D. Ind. Dec. 15, 2016).

5. The Court fails to include an instruction regarding Carter's exhaustion of administrative remedies with respect to her claim against Southwest based on a failure to accommodate. *See Lacy v. Dall. Cowboys Football Club*, 2012 U.S. Dist. LEXIS 95222, *11-12 (N.D. Tex. July 10, 2012) ("Lacy's complaint alleges both sex-based disparate treatment and sexual harassment. Lacy's letter to the EEOC, dated June 11, 2010, alleges DCM disciplined Lacy for making errors while female employees who made similar errors incurred no discipline. … Lacy's complaint echoes these allegations … Thus, there remains a genuine issue of material fact as to whether  Lacy exhausted his administrative remedies regarding  sex-based  disparate  treatment, preventing summary judgment on this ground"); *Hill v. Wash. Metro. Area Transit Auth.*, 231 F. Supp. 2d 286, 291 (D.D.C. 2002) (finding a material dispute of fact regarding exhaustion of administrative remedies); *Valentine v. State Emp't Dev. Dep't*, 2012 U.S. Dist. LEXIS 14792, *11 (C.D. Cal. Feb. 6, 2012) ("The Court finds that a triable issue of fact exists regarding whether plaintiff exhausted her administrative remedies.").

6. The Court's instruction asks the jury to consider how Southwest responded to Carter's and other complaints of discrimination in assessing punitive damages. The Court should remove this instruction as it will confuse the jury given that Carter made no such complaints and Southwest's responses to other complaints is not at issue in this case.

## III.    <u>DAMAGES</u>

1. The Court's damages instruction assumes that, to show she failed to mitigate damages, Southwest must establish the availability of substantially equivalent employment. But that is not the law. "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially

US_ACTIVE-168009229.1

comparable employment." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988); *see also Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (same); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (same); *Fulbright v. Union Pac. R.R. Co.*, 2022 U.S. Dist. LEXIS 59548, *21 (N.D. Tex. Mar. 31, 2022) (same); *Houser v. Castle Montessori Sch., Inc.*, 2019 U.S. Dist. LEXIS 90672, at *6 (E.D. Tex. May 2, 2019) (same); *Morgan v. Neiman-Marcus Grp., Inc.*, 2005 U.S. Dist. LEXIS 34541, *30-31 (N.D. Tex. Dec. 20, 2005) (same); *Voskuil v. Envtl. Health Ctr.-Dallas*, 1997 U.S. Dist. LEXIS 23565, at *19 (N.D. Tex. Aug. 18, 1997) (same). "A plaintiff may not simply abandon his job search and continue to recover back pay." *Sellers*, 902 F.2d at 1193. Southwest intends to show that Carter failed to engage in or promptly abandoned any search for comparable employment. Rather, shortly after separation, Carter largely devoted her efforts to unpaid work for a religious institution rather than attempting to mitigate damages. If Southwest makes this showing, the availability of comparable employment is irrelevant.

2.      The Courts separate enumeration of various potential categories of damages in its damages interrogatories is confusing and inconsistent with the Fifth Circuity's Pattern Instructions on damages. Fifth Circuit Pattern Jury Instruction, Civil Cases, 11.14, Question Nos. 1-2 (2020). The Court's general discussion of damages sufficiently instructs the jury as to what they should include in a potential damages award. The suggested interrogatory is confusing and inapplicable in this case.

## IV.    <u>GENERAL ISSUES</u>

1.      The Court's instruction and jury interrogatories simultaneously address Carter's claims against Southwest and Local 556. Southwest submits that combining the instruction and interrogatories in this regard is needlessly confusing to the jury. Southwest requests that there be

one set of interrogatories and instructions for Carter's claims against Southwest, and a separate set of interrogatories addressing Carter's claims against Local 556.

2.     Southwest asks that the Court reiterate and incorporate its limiting instruction in the final jury instruction.

Dated:  July 10, 2022                    Respectfully submitted,


                                         */s/ Paulo B. McKeeby*
                                         Paulo B. McKeeby
                                         State Bar No. 00784571
                                         Brian K. Morris
                                         State Bar No. 24108707
                                         **REED SMITH LLP**
                                         2850 N. Harwood Street
                                         Suite 1500
                                         Dallas, Texas 75201
                                         Phone: 469-680-4200
                                         Facsimile: 469-680-4299
                                         pmckeeby@reedsmith.com
                                         bmorris@reedsmith.com

                                         **ATTORNEYS FOR DEFENDANT**
                                         **SOUTHWEST AIRLINES CO.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 10th day of July, 2022.

                                         */s/ Paulo B. McKeeby*
                                         Paulo B. McKeeby

US_ACTIVE-168009229.1