UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:17-CV-02278-X |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA LOCAL 556 and | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Defendants.* | § | |

## JURY INSTRUCTIONS
### [DRAFT]

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case.   The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or either defendant in arriving at your verdict.

Do not let bias, prejudice, or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**Preponderance of the Evidence**

Plaintiff Charlene Carter has the burden of proving her case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff Charlene Carter has failed to prove any element of her claim by a preponderance of the evidence, then she may not recover on that claim.

**Evidence**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**Stipulations**

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

The parties stipulate to the below facts, which are set forth individually numbered paragraphs, and which require no proof.

1. Charlene Carter is a Christian who believes that abortion is the taking of a human life contrary to the teachings of the Bible and the will of God.

2. Carter was hired as a Flight Attendant by Southwest in 1996.

3. TWU Local 556 is the local Union representing flight attendants working at Southwest Airlines.

4. Local 556 served as Carter's exclusive bargaining representative throughout her tenure with Southwest.

5. For several years, Carter objected to certain decisions by and the leadership of Local 556's leadership through email messages and Facebook postings.

6. In September 2013, Carter resigned her membership with Local 556 and was an agency fee paying non-member objector until her termination in 2017.

7. Starting in early 2015, Carter began sending messages to Stone, discussing Carter's status as a Union objector. These emails and messages continued through the termination of Carter's employment by Southwest.

8. From 2015 through 2017, Carter continued in various efforts opposing the union and the union's then-president, Audrey Stone. Carter supported a recall campaign, and posted and sent messages on social media expressing her disapproval of the union and union leadership. Carter sent many direct messages to Stone, to which Stone never responded.

9. In January of 2017, members of Local 556, including President Stone, attended a union sponsored Women's Committee meeting in Washington D.C.

10. On January 21, 2017, certain members of Local 556 attended the Women's March on Washington, D.C.

11. On February 14, 2017, Carter sent Local 556 President Audrey Stone private messages via Facebook Messenger.

12. President Stone never sent Carter responses to the private messages.

13. On February 22, 2017, President Stone reported Carter's emails and Facebook Messages to Stone's base manager, Suzanne Stephenson ("Stephenson"), in Las Vegas, Nevada.

14. On March 7, 2017, Southwest held a fact-finding meeting with Carter as part of its investigation of President Stone's Complaint.

15. On March 14, 2017, Southwest sent Carter a Termination Notice.

**Witnesses**

You alone are to determine the questions of credibility or truthfulness of the witnesses.  In weighing the testimony of the witnesses, you may consider the

witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**Similar Acts**

Evidence that an act was done at one time or on one occasion is not any evidence or proof whatsoever that the act was done in this case.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing Carter's, Southwest's, Local 556's motives, opportunities, intents, knowledges, plans, identities, or absence of mistakes or accidents, which are at issue in this case.

Such evidence may not be considered for any other purpose whatsoever. You may not use the evidence to consider or reflect Carter's, Southwest's, or Local 556's character.

**Impeachment by Witness's Inconsistent Statements**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**Deposition Testimony**

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to

testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been read to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**Limiting Instructions**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

**No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**Parties' Claims**

I will now instruct you on the law that you must apply to Plaintiff Carter's claims.

### A. Plaintiff Carter's Duty of Fair Representation Claim Against Defendant Local 556

A federal law called the Railway Labor Act imposes upon unions, like Defendant Local 556, what is called a Duty of Fair Representation. The duty means that a union must serve the interests of all employees—whether they are union members or not—without hostility or discrimination toward any, must exercise its discretion with complete good faith and honesty, and must avoid arbitrary conduct.[1] This is especially true when a union is handling a grievance based upon a termination, the industrial equivalent of capital punishment.[2]

Plaintiff Charlene Carter claims that Defendant Local 556 violated its Duty of Fair Representation owed to her under the Railway Labor Act when former Local 556 President Audrey Stone reported Plaintiff Carter to Defendant Southwest.

A union is liable for all acts of its officers and agents within the scope of their official capacity, regardless of whether the union specifically authorized or ratified the acts.[3] Holding elected union office is persuasive and substantial evidence that the union official is acting in his or her official capacity and is decisive in the absence of compelling contrary evidence.[4] However, a Union Official does not lose her federally

---

[1] *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

[2] *Helmes v. Inter. Brands Corp.*, No. 1:00-cv-160 (N.D. Miss. Feb. 13, 2004) (Jury Instructions).

[3] *Vulcan Materials Co. v. United Steelworkers of Am., AFL-CIO*, 430 F.2d 446, 457 (5th Cir. 1970).

[4] *Int'l Union, Sec., Police & Fire Pros. of Am. (Spfpa), & Its Amalgamated Loc. 444 & Cordarryl Nelson*, 360 NLRB 430 (2014); *Penn Yan Express*, 274 NLRB 449, 450 (1985); *IBEW Local 453 (National Electrical Contractors Assn.)*, 258 NLRB 1427, 1428 (1981); *Caravan Knight Facilities Mgmt., Inc. & Aretha A. Powell Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (Uaw), Afl-Cio, & Its Local 1700 & Aretha A. Powell*, 362 NLRB 1802, 1804 (2015).

protected rights as an employee by becoming an Official with the Union.  As such, Defendant SWA owes the same duty to Union Officials as any other SWA employee

A union violates the duty of fair representation when it takes action that is arbitrary, discriminatory, or in bad faith.[5]

To prove that Defendant Local 556 violated its Duty of Fair Representation that it owed to Plaintiff Carter, Plaintiff Carter must prove by a preponderance of the evidence that Defendant Local 556 acted arbitrarily, discriminatorily, or in bad faith. Plaintiff Carter can also prove a breach of duty by the union by showing that the union was arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion.[6]

The law presumes a union breaches its duty when it causes the discharge of an employee.[7]  OBJECTION: Misstates of the Law; if applied to conduct of individuals, rather than actions of the Executive Board creating such a presumption elevates the federal rights of some employees above those of others. If a union caused the discharge of an employee, it can rebut the presumption of breach by showing by a preponderance of the evidence that the action was done in good faith, was based on rational considerations, and was linked in some way to the union's need to effectively represent its constituency as a whole.[8]

---

[5] *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

[6] *Helmes v. Inter. Brands Corp.*, No. 1:00-cv-160 (N.D. Miss. Feb. 13, 2004) (Jury Instructions).

[7] *Acklin Stamping Co.*, 351 NLRB 1263 (2007); *In Re Graphic Commc'ns Int'l Union, Loc. 1-M*, 337 NLRB 662, 673 (2002)

[8] *Operative Plasterers & Cement Masons, Local No. 299 (Wyoming Contractors Assn.)*, 257 NLRB 1386 (1981).

If you find that former Local 556 President Audrey Stone was not acting in her official capacity when she reported Plaintiff Carter to Defendant Southwest, you must find Defendant Local 556 not liable for this claim.

If you find that President Stone was acting in her official capacity when she reported Plaintiff Carter to Defendant Southwest and that Local 556, through Stone, caused Plaintiff Carter's discharge, then you must presume that Local 556 breached the duty of representation.  Then, you must consider whether Local 556 can rebut the presumption by a preponderance of the evidence.

If you find that Stone was acting in her official capacity when she reported Plaintiff Carter to Defendant Southwest but that Local 556 did not cause Plaintiff Carter's discharge, then there is no presumption of breach.  Nevertheless, you must still determine whether Local 556 breached its duty by acting arbitrarily, discriminatorily, or in bad faith—even if it did not cause Plaintiff Carter's discharge. And if you determine that Defendant Local 556 rebuts a presumption that it violated its Duty of Fair Representation, you must still nevertheless determine whether Local 556 breached its duty by acting arbitrarily, discriminatorily, or in bad faith—even if it rebuts a presumption that it breached the duty.

## B. Plaintiff Carter's Railway Labor Act retaliation claim against Defendants Southwest and Local 556

Plaintiff Carter brings a claim against Defendants Southwest and Local 556 under a federal law that is commonly referred to as the Railway Labor Act.  The Act "forbid[s] any limitation upon freedom of association among employees" and

"provide[s] for the complete independence . . . of employees in the matter of self-organization."[9]  The Act also places certain general duties upon common air carriers and their unions, such as Defendants Southwest and Local 556, respectively.

Plaintiff Carter has filed this lawsuit based on her claim that Defendants Southwest and Local 556 violated two provisions of the Act.

The first provision that Plaintiff Carter alleges that Defendants Southwest and Local 556 violated is Section 152 Third.  It states:

> Representatives [of a union] shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives.  Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.[10]

The second provision that Plaintiff Carter alleges that Defendants Southwest and Local 556 violated is Section 152 Fourth.  It states, in pertinent part:

> Employees shall have the right to organize and bargain collectively through [union] representatives of their own choosing.  The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter.  No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or

---

[9] 45 U.S.C. § 151a (2)–(3).

[10] 45 U.S.C. § 152 (Third).

> to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions . . . .[11]

Plaintiff Carter claims that Defendant Southwest retaliated against her by firing her for engaging in union-opposition-and-organizational activity protected by Section 152 Third and Fourth.  Plaintiff Carter also claims that Defendant Local 556 retaliated against her by attempting to discipline her for engaging in union-opposition-and-organizational activity protected by Section 152 Third and Fourth.  It is unlawful for a carrier employer or a union to retaliate against an employee for exercising rights protected by the Act.

To prove that Defendant Southwest retaliated against Plaintiff Carter, Plaintiff Carter must prove by a preponderance of the evidence the following elements: (1) that Plaintiff Carter engaged in activity that is protected by Section 152 Third and/or Fourth; (2) that Defendant Southwest discharged Plaintiff Carter; and (3) that Plaintiff Carter's protected activity played a substantial or motivating factor in Defendant Southwest's decision to discharge Plaintiff Carter.

To prove that Defendant Local 556 retaliated against Plaintiff Carter, Plaintiff Carter must prove by a preponderance of the evidence the following elements: (1) that Plaintiff Carter engaged in activity that is protected by

---

[11] *Id.* (Fourth).

Section 152 Third and/or Fourth; (2) that former Local 556 President Audrey Stone reported Plaintiff Carter to Defendant Southwest for discipline; (3) that Stone reported Plaintiff Carter in Stone's official capacity as President of Local 556; and (4) that Plaintiff Carter's protected activity was a substantial or motivating factor in Stone's decision to report Plaintiff Carter to Defendant Southwest for discipline.

I will decide element (1)—whether Plaintiff Carter engaged in activity that is protected by Section 152 Third and/or Fourth—as a matter of law.[12] Therefore, you will be acting in an advisory capacity with respect to element (1).  You are to make a finding as to element (1), but it will not be binding on me.[13]

Union-oppositional-and-organizational activity is protected under Section 152 Third and Fourth  but  can lose protection if it is vulgar, offensive, abusive, or harassing.  *Held v. Am. Airlines, Inc.,* 2007 WL 433107, \*7 (N.D. Ill. Jan. 31, 2007) (citing TWA, 489 U.S. at 440).   Special circumstances' can also cause the speech to lose protection. [2] *Leiser Constr., LLC,* 349 NLRB 413, 415 (2007).  Such circumstances include situations in which the otherwise protected activity is vulgar or obscene and may exacerbate employee

---

[12] *Reef v. Indus. Inc. v. NLRB*, 952 F.2d 830, 837 (5th Cir. 1991) (noting that the NLRB's determination of whether activity was protected was a "matter of law").

[13] This is drafted with the protected-activity question open.  Before giving the case to the jury, the Court will decide as a matter of law whether Plaintiff Carter engaged in any RLA-protected activity.  Based on that determination, the Court will change these instructions to reflect whether Carter's activity was protected.

tensions.  *Id.*  If you find Plaintiff Carter's messages to Ms. Stone to be indefensible or abusive, the protection is forfeited." *Daimler Chrysler Corp.,* 344 NLRB 1324, 1329 (2005).   Activity that is intemperate, abusive, insulting, or hyperbolic may still be  protected activity under Section 152 Third and Fourth.[15]  Activity that expresses an opinion about someone's competence for her job is also protected.[16]

Regardless of whether you find that any of Plaintiff Carter's messages were protected by Section 152 Third and/or Fourth, you must make findings with respect to the remaining elements of Plaintiff Carter's claims against Defendants Southwest and Local 556.  In making your findings on the remaining elements, you should assume that Plaintiff Carter engaged in at least some activity protected by Section 152 Third and/or Fourth.

If you decide that Defendant Southwest and/or Defendant Local 556 retaliated against Plaintiff Carter (assuming that Plaintiff Carter engaged in protected activity), you must then consider the Defendants' affirmative defense.  The Defendants assert that Plaintiff Carter would have been discharged even if she had not engaged in activity protected by Section 152 Third and/or Fourth and/or that even if her messages to Stone contained protected expression, they also constituted harassment that violated SWA employee conduct policies and implicated Stone's federally protected rights.

---

[15] *Id.*

[16] *Id.*

The Defendants have the burden of proving this affirmative defense, and they must prove it by a preponderance of the evidence.  If the Defendants prove this defense by a preponderance of the evidence, the Defendants are not liable for this claim.

### C. Plaintiff Carter's Title VII Religious Discrimination Claims against Defendants Southwest and Local 556

#### 1. Plaintiff Carter's Unlawful Discharge Claim Against Defendants Southwest and Local 556

OBJECTION: Defendant 556 proposes the adoption of the Pattern Jury Charge for claims of religious discrimination under TITLE VII

Plaintiff Charlene Carter claims that Defendant Southwest discharged her because of her sincerely held religious observances, beliefs, or practices.  The employer, Defendant Southwest, denies Plaintiff Carter's claims and contends that it discharged her because she violated Defendant Southwest's employment policies.

It is unlawful for an employer to discriminate against an employee because of the employee's sincerely held religious observances, beliefs, or practices.  An employer may, however, discharge an employee for other reasons, good or bad, fair or unfair.

To prove unlawful discrimination by Defendant Southwest, Plaintiff Carter must prove by a preponderance of the evidence that: (1) Defendant Southwest

discharged Carter, and (2) that Defendant Southwest's discharge of Plaintiff Carter was motivated by her sincerely held religious observances, beliefs, or practices.[17]

Plaintiff Carter does not have to prove that unlawful discrimination was the only reason Defendant Southwest discharged her. If you find that the reason Defendant Southwest has given for discharging Plaintiff Carter is unworthy of belief, you may, but are not required to, infer that Defendant Southwest was motivated by Plaintiff Carter's religious observances, beliefs, or practices.

Plaintiff Carter claims that Defendant Local 556 caused and attempted to cause Defendant Southwest to discharge Plaintiff Carter because of her sincerely held religious observances, beliefs, or practices by reporting Carter's religious observances, beliefs, and practices for discipline. Local 556 denies Plaintiff Carter's claims and contends that it had no authority to terminate Plaintiff Carter.

It is unlawful for a union to cause or attempt to cause an employer to discriminate against an employee because of the employee's sincerely held religious beliefs, observances, or practices.[18]

To prove unlawful discrimination by Defendant Local 556, Plaintiff Carter must prove by a preponderance of the evidence: (1) that former Local 556 President Audrey Stone was acting in her official Local 556 capacity when she reported Carter for discipline to Defendant Southwest; (2) that Local 556 caused or attempted to

---

[17] 42 U.S.C. § 2000e-(2)(m); *see also* Fifth Circuit Pattern Jury Instructions at 141–42 (explaining that the Court should decide whether to give a "but-for" or "mixed-motive" instruction based on the evidence in the case).

[18] 42 U.S.C. § 2000e-2(c)(3).

cause Carter's discharge by Southwest; and (3) that Local 556's decision to report Carter to Southwest was motivated by Carter's sincerely held religious observances, beliefs, or practices.

Plaintiff Carter does not have to prove that unlawful discrimination was the only reason Defendant Local 556 reported her to Defendant Southwest. If you find that the reason Defendant Local 556 has given for reporting Plaintiff Carter to Defendant Southwest is unworthy of belief, you may, but are not required to, infer that Defendant Local 556 was motivated by Plaintiff Carter's religious observances, beliefs, or practices.

## 2. Plaintiff Carter's Religious Discrimination Claim against Defendant Local 556

Plaintiff Carter claims that Defendant Local 556 discriminated against Plaintiff Carter because of her sincerely held religious observances, practices, and beliefs. The union, Local 556, denies that Audrey Stone was acting in her official capacity when she reported Plaintiff Carter to SWA or that her reporting was motivated by Plaintiff Carter's religion.

It is unlawful for a union to discriminate against an employee because of her sincerely held religious observances, practices, or beliefs.[19]

To prove unlawful discrimination by Defendant Local 556, Plaintiff Carter must prove by a preponderance of the evidence: (1) that Defendant Local 556 treated Plaintiff Carter less favorably than other similarly situated, non-Christian

---

[19] 42 U.S.C. § 2000e-2(c)(1).

employees; and (2) that such treatment was motivated by Carter's sincerely held religious beliefs, observances, or practices.[20]

### 3. Plaintiff Carter's Failure to Accommodate Claim against Defendant Southwest

Plaintiff Carter claims that Defendant Southwest failed to accommodate Plaintiff Carter's sincerely held religious beliefs, observances, or practices. Defendant Southwest denies the claim and claims that it had no obligation to accommodate Plaintiff Carter, did not know or have reason to suspect that Plaintiff Carter needed an accommodation, and that Plaintiff Carter's religious belief did not conflict with a requirement of her employment.

It is unlawful for an employer to refuse to accommodate any aspect of an employee's religious observances, practices, or beliefs.

To prove that Defendant Southwest unlawfully failed to accommodate her sincerely held religious beliefs, practices, or observances, Plaintiff Carter must prove by a preponderance of the evidence:[21] (1) that Plaintiff Carter's sincerely held religious beliefs conflicted with a job requirement; (2) that Plaintiff Carter was discharged for failure to comply with the conflicting job requirement; and (3) that Defendant Southwest discharged Carter with the motive of avoiding the need for accommodating a religious belief, observance, or practice.[22]

---

[20] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

[21] *See generally EEOC v. Consol Energy, Inc.*, No. 1:13-CV-215 (N.D. W. Va. Aug. 27, 2015) (Doc. No. 165, Final Civil Jury Instructions).

[22] *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) ("[Title VII] prohibits actions taken with the motive of avoiding the need for accommodating a religious practice.").

If you find that Plaintiff Carter has established each of these elements, then to avoid liability, Defendant Southwest must establish by a preponderance of the evidence that it did not accommodate Plaintiff Carter because any accommodation would have imposed an undue hardship on defendant Southwest.[23]  Undue hardship cannot be proven by merely proving any cost or any disruption or inconvenience to the business.  A greater degree of hardship is required to be shown.  An undue hardship means more than a de minimis cost on the conduct of the employer's business either in terms of financial costs or disruption of the business.

### 4. Plaintiff Carter's Failure to Accommodate Claim Against Defendant Local 556

Plaintiff Carter claims that Defendant Local 556 failed to accommodate her sincerely held religious observances, beliefs, and practices by reporting Plaintiff Carter to Defendant Southwest, instead of accommodating them.  The union, Local 556, denies the claim, and claims that Plaintiff Carter never sought a religious accommodation from Defendant Local 556 and that Defendant Local 556 did not exercise control over the terms and conditions of Plaintiff Carter's employment.

It is unlawful for a union to fail to accommodate any aspect of an employee's sincerely held religious observances, beliefs, or practices.[24]  It is unlawful for a union

---

[23] *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 275 (5th Cir. 2000) (employer doesn't have to initiate a good-faith effort to accommodate *only if* it can show that *any* accommodation would impose undue hardship).

[24] *Cooper v. Gen. Dynamics, Convair Aerospace Div., Ft. Worth Operation*, 533 F.2d 163, 165 (5th Cir. 1976) (reversing district court's dismissal of Title VII religious failure to accommodate claim in part because district court did not consider whether the union could establish that any accommodation would have imposed an undue hardship on the union); *see also id.* at 171–72 ("A [panel]

to cause or attempt to cause an employer to discriminate against an employee because of the employee's sincerely held religious beliefs, observances, or practices.

To prove that Defendant Local 556 unlawfully failed to accommodate her sincerely held religious beliefs, practices, or observances, Plaintiff Carter must prove by a preponderance of the evidence: (1) that former Local 556 President Audrey Stone was acting in her official capacity when she reported Plaintiff Carter to Defendant Southwest; (2) that Defendant Local 556 caused or attempted to cause Plaintiff Carter's discharge by Defendant Southwest; and (3) that Defendant Local 556 caused or attempted to cause Plaintiff Carter's discharge with the motive of avoiding the need for accommodating a religious belief, observance, or practice.

**Damages**

---

majority is in agreement . . . that the substantive restraints of Section 701(j) forbidding religious discrimination applies to employer and Union alike and each has a duty of accommodation.") (Brown, C.J., concurring).

> *See also id.* at 172 n.1:
>
> It is perfunctorily asserted that section 701(j) applies only to employers, not to unions. The contention derives such plausibility as it has from the circumstance that the definition of "religion" embodied in that section, quoted at footnote 9 above, contains a reference to accommodation by an employer, but none to accommodation by a union. It must be remembered, however, that the term "religion" is defined for purposes of section 703 of the same Civil Rights Act. That section, in its subsection (c)(3), defines union misconduct in terms of employer misconduct, making it an unlawful employment practice for a union to cause or attempt to cause an employer to discriminate or discharge on grounds of religion. The customary procedure for enforcing agency shop agreements, and that provided for by Article Two, Section 5, of the agreement in effect here between Employer and Union, is discharge of the delinquent employee upon demand of the Union. Thus, for the Union to demand appellants' discharge for delinquency in dues-equivalent payments, when that delinquency is a consequence of their religious belief a belief that Employer has not attempted to accommodate, and that it may yet be found able to accommodate without undue hardship would be to do precisely what section 703(c) (3) denounces. And so, though perhaps backhanded, the application of section 701(j) to the Union and its acts is plain. These two sections when read together impose a duty on the union as well as the employer to accommodate the religious beliefs of employees.

If you found that either or both of Defendants Southwest or Local 556 violated the Railway Labor Act or Title VII then you must determine whether either or both Defendants caused Plaintiff Charlene Carter damages and, if so, you must determine the amount of those damages attributable to the liable party. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether Plaintiff Charlene Carter has proved liability.

Plaintiff Charlene Carter must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Plaintiff Charlene Carter need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1) the amount of back pay and benefits Plaintiff Charlene Carter would have earned in her employment with Defendant Southwest if she had not been terminated from her employment with Southwest from March 14, 2017, to the date of your verdict, minus the amount of earnings and benefits that Plaintiff Charlene Carter received from employment during that time; (2) the amount of other damages sustained by Plaintiff such as emotional distress, pain and suffering, inconvenience, mental anguish and loss of enjoyment of life, and other noneconomic losses. However, you may not consider awarding Plaintiff Charlene Carter emotional distress, pain and suffering, and other noneconomic losses in relation to neither her Railway Labor Act

retaliation claim against Defendants Southwest and Local 556 nor her Duty of Fair Representation claim against Defendant Local 556.

**Actual Damages**

There is no exact standard for determining actual damages.  You are to determine an amount that will fairly compensate Plaintiff Charlene Carter for the harm she has sustained.  Do not include as actual damages interest on wages or benefits.

**Back Pay**

Back pay includes the amounts the evidence Plaintiff Charlene Carter would have earned had she remained an employee of Defendant Southwest.  These amounts include wages or salary and such benefits as life and health insurance, stock options, contributions to retirement, seniority rights and benefits, vacation pay, uniform pay, ratification bonuses, profit sharing, tax relief shared with employees, and 401K and retirement benefits.  You must subtract the amounts of earnings and benefits Defendant Southwest proves by a preponderance of the evidence Plaintiff Charlene Carter received during the period in question.

**Punitive Damages**

In addition to actual damages, you may consider whether to award punitive damages.  Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future.  You may not consider awarding Plaintiff Charlene Carter punitive damages against Southwest or Local 556 in relation to her

claim of retaliation under the Railway Labor Act. You may not consider awarding Plaintiff Charlene Carter punitive damages against Local 556 in relation to her claim of violation of the Duty of Fair Representation under the Railway Labor Act.

You may award punitive damages if Plaintiff Charlene Carter proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment; and (3) he or she acted with malice or reckless indifference to Plaintiff Charlene Carter's federally protected right to be free from discrimination.

If Plaintiff Charlene Carter has proved these facts, then you may award punitive damages, unless Defendants Southwest proves by a preponderance of the evidence that the act was contrary to its good-faith efforts to prevent discrimination in the workplace. OBJECTION: Misstates the law; no member of 556 could meet the punitive damage requirement of an individual acting in a managerial capacity. Plainly, "managerial capacity" refers to the members of the SWA Management, but even if Union Officials were analogized to managers, Plaintiff Carter was not a member of 556 and submitted to no managerial authority that Executive Board may be interpreted to have.

In determining whether the decision-maker for Southwest was a supervisor or manager for Defendants Southwest , you should consider the type of authority that person had over Plaintiff Charlene Carter and the type of authority for

employment decisions Defendants Southwest  authorized that decision-maker to make.

An action is in "reckless indifference" to Plaintiff Charlene Carter's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law.  Plaintiff Charlene Carter is not required to show egregious or outrageous discrimination to recover punitive damages.  Proof that Defendants Southwest  engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether Defendants Southwest  made good-faith efforts to prevent discrimination in the workplace, you may consider whether Defendants adopted anti-discrimination policies, whether they educated their employees on the federal antidiscrimination laws, how they responded to Plaintiff Charlene Carter's complaint of discrimination, if any, and how they responded to other complaints of discrimination.

If you find that Defendants Southwest  acted with malice or reckless indifference to Plaintiff Charlene Carter's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Plaintiff Charlene Carter is entitled to receive, you may, but are not required to, award Plaintiff Charlene Carter an additional amount as punitive damages for the purposes of punishing Defendants Southwest  for engaging in such wrongful conduct and deterring Defendants Southwest  and others from engaging in such conduct in

the future.  You should presume that Plaintiff Charlene Carter has been made whole for her injuries by any actual damages you have awarded.

If you decide to award punitive damages, you should consider the following in deciding the amount:

1.  How reprehensible Defendants Southwest's conduct was.  You may consider whether the harm Plaintiff Charlene Carter suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether Defendant Southwest's conduct that harmed Plaintiff Charlene Carter also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Plaintiff Charlene Carter.

2.  How much harm Defendants Southwest's wrongful conduct caused Plaintiff Charlene Carter.

3.  What amount of punitive damages, in addition to the other damages already awarded, is needed, considering Defendants Southwest's financial condition, to punish Defendants Southwest for its conduct toward Plaintiff Charlene Carter and to deter Defendants Southwest and others from similar wrongful conduct in the future.

The amount of any punitive damages award should bear a reasonable relationship to the harm caused Plaintiff Charlene Carter.

You may assess punitive damages against any, or all, of the Defendants, or you may refuse to impose punitive damages. If punitive damages are imposed on more than one defendant, the amounts for each may be the same or they may be different.

**Front Pay**[25]

---

[25] *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001):

An award of future damages necessarily requires that payment be made now for a loss that the plaintiff will not actually suffer until some future date.  If you should find that the plaintiff is entitled to future earnings, then you must determine the present worth in dollars of such earnings.  To do this, you must consider two particular factors:

1.  You should reduce any award by the amount of the expenses that the plaintiff would have incurred in making those earnings.

2.  You should reduce any award to present value by considering the interest that the plaintiff could earn on the amount of the award if she made a relatively risk-free investment.  The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the plaintiff if she receives it today than if she received it in the future, when she would otherwise have earned it.  It is more valuable because the plaintiff can earn interest on it for the period of time between the date of the award and the date she would have earned the money.  Thus you should adjust the amount of any award for future loss of earnings by the amount of interest that the plaintiff can earn on that amount in the future.

Any award you make to the plaintiff is not subject to income tax; neither the state nor the federal government will tax it.  Therefore, you should determine the amount that the plaintiff is entitled to receive without considering the effect of taxes upon it.

---

"Front pay" covers monetary damages for future lost wages and benefits.  Front pay is awarded only when reinstatement is not feasible because a hostile relationship exists between the employer and employee.  Front pay is an equitable remedy to be determined by the court at the conclusion of the jury trial, but an advisory jury may be used.

Any determination that you make with respect to this topic—front pay—will not be binding upon me.  Instead, you are acting in an advisory capacity.

**Nominal Damages**

Nominal damages are an inconsequential or trifling sum awarded to plaintiff when a technical violation of her rights has occurred, but the plaintiff has suffered no actual loss or injury.

If you find from a preponderance of the evidence that Plaintiff Charlene Carter sustained a technical violation of the Railway Labor Act, Title VII, or the Duty of Fair Representation but that Plaintiff Charlene Carter has suffered no damages as a result of this violation, then you may award Plaintiff Charlene Carter nominal damages.

**Mitigation**

Defendants Southwest and Local 556 claim that Plaintiff Charlene Carter failed to mitigate her damages.  Plaintiff Charlene Carter has a duty under the law to mitigate her damages, that is, to exercise reasonable diligence under the circumstances to minimize her damages.  To succeed on this defense, Defendants Southwest and Local 556 must prove, by a preponderance of the evidence: (1) that there was substantially equivalent employment available; (2) Plaintiff Charlene Carter failed to use reasonable diligence in seeking those positions; and (3) the amount by which Plaintiff Charlene Carter's damages were increased by her failure to take such reasonable actions.  "Substantially equivalent employment" in this

context means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job Charlene Carter lost. Plaintiff does not have to accept a job that is dissimilar to the one she lost, one that would be a demotion, or one that would be demeaning. The reasonableness of Plaintiff Charlene Carter's diligence should be evaluated in light of her individual characteristics and the job market.

**Duty to Deliberate; Notes**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You

must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question on the verdict form.

You may now proceed to the jury room to begin your deliberations.