# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S MOTION FOR ENTRY OF JUDGMENT ON THE JURY'S VERDICT AND FURTHER RELIEF, INCLUDING REINSTATEMENT AND PREJUDGMENT INTEREST, AND INCORPORATED BRIEF IN SUPPORT**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT AND AUTHORITIES ................................................................................... 1

   I.    The Court should enter judgment on the jury's July 14, 2022 verdict on liability and damages ........................................................................................................... 1

   II.   The Court should award further relief, including reinstatement, prejudgment interest, and other declaratory and injunctive relief ......................................................... 3

        A.    The Court should award Carter reinstatement, or in the alternative, front pay ............. 4

            1.   Reinstatement with full seniority and benefits........................................................... 4

            2.   Front Pay ..................................................................................................................... 8

        B.    Prejudgment Interest ................................................................................................. 10

        C.    The Court should award declaratory and injunctive relief as requested in Carter's Complaint and in accordance with the jury's verdict ................................. 12

            1.   The Court should award Carter's requested declaratory relief in accordance with Carter's Complaint and the jury's verdict ...................................................... 12

            2.   The Court should enjoin Southwest and Local 556 from engaging in unlawful activities in accordance with the jury's July 14, 2022 verdict, and order them to institute appropriate policies to remedy past discrimination .... 12

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Bell v. Hood*,
  327 U.S. 678 (1946) .................................................................................................... 4

*Bogan v. MTD Consumer Grp., Inc.*,
  919 F.3d 332 (5th Cir. 2019) ................................................................................ 4, 5, 9

*Brady v. Trans World Airlines, Inc.*,
  401 F.2d 87 (3d Cir. 1968) .................................................................................. 4, 5, 10

*Brunneman v. Terra Int'l, Inc.*,
  975 F.2d 175 (5th Cir. 1992) ..................................................................................... 5, 7

*Bruso v. United Airlines, Inc.*,
  239 F.3d 848 (7th Cir. 2001) .......................................................................................... 7

*Dowd v. United Steelworkers of Am., Local No. 286*
  253 F.3d 1093 (8th Cir. 2001) ....................................................................................... 2

*Franklin v. Gwinnett Cnty. Public Schs.*,
  503 U.S. 60 (1992) ........................................................................................................ 4

*Garza v. Brownsville Indep. Sch. Dist.*,
  700 F.2d 253 (5th Cir. 1983) ......................................................................................... 5

*Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*,
  865 F.2d 1491 (5th Cir. 1989) ....................................................................................... 5

*Johnson v. Sw. Rsch. Inst.*,
  384 F.Supp. 3d 722 (W.D. Tex. 2019) ....................................................................... 10

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
  962 S.W.2d 507 (Tex. 1998) ...................................................................................... 10

*Olivares v. Brentwood Indus.*,
  822 F.3d 426 (8th Cir. 2016) ........................................................................................ 7

*Palasota v. Haggar Clothing Co.*,
  499 F.3d 474 (5th Cir. 2007) ........................................................................................ 9

*Perez v. Bruister*,
  823 F.3d 250 (5th Cir. 2016) ...................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                       **Page(s)**

*Ray v. Iuka Special Mun. Separate Sch. Dist.,*
   51 F.3d 1246 (5th Cir. 1995) ...............................................................................5

*Steele v. Louisville & N.R. Co.,*
   323 U.S. 192 (1944) ..............................................................................................4

*Stelly v. W. Gulf Mar. Ass'n,*
   407 F.Supp. 3d 673 (S.D. Tex. 2019). ..................................................................2

*Sturgill v. United Parcel Serv., Inc.,*
   512 F.3d 1024 (8th Cir. 2008). ..............................................................................4

*Texas & N.O.R. Co. v. Bhd. Of Ry. & S.S. Clerks*
   281 U.S. 548 (1930) ..............................................................................................4

*Thomas v. Texas Dep't of Crim. Just.,*
   297 F.3d 361 (5th Cir. 2002) ........................................................................10, 11

*United States v. Ocean Bulk Ships, Inc.,*
   248 F.3d 331 (5th Cir. 2001) ..............................................................................10

*Vaca v. Sipes,*
   386 U.S. 171 (1967) ..........................................................................................4, 8

*Weaver v. Casa Gallardo, Inc.,*
   922 F.2d 1515 (11th Cir. 1991) ............................................................................9

*Welborn v. Reynolds Metals Co.,*
   868 F.2d 389 (11th Cir. 1989) ..............................................................................5

**Rules & Statutes**

Fed. R. Civ. P. 58 (a)(1). ..............................................................................................1

Fed. R. Civ. P. 58 (a)(2). ..............................................................................................1

Fed. R. Civ. P. 58 (d). ..................................................................................................1

Tex. Fin. Code Ann. § 304.004(c)(1) ........................................................................11

28 U.S.C. § 2201 ........................................................................................................12

# TABLE OF AUTHORITIES

**Rules & Statutes**                                                       **Page(s)**

28 U.S.C. § 2201(a) .................................................................................................................12

28 U.S.C. § 2202 ......................................................................................................................12

42 U.S.C. § 1981a.. .....................................................................................................................2

42 U.S.C. § 1981a(b)(3)........................................................................................................2, 10

42 U.S.C. § 2000e ......................................................................................................................1

42 U.S.C. § 2000e(b). .................................................................................................................2

42 U.S.C. § 2000e(e). .................................................................................................................3

42 U.S.C. § 2000e(j). ..................................................................................................................8

42 U.S.C. § 2000e-2(c)(1)..........................................................................................................8

42 U.S.C. § 2000e-2(c)(3)..........................................................................................................8

42 U.S.C. § 2000e-5(e)(3)(B) ....................................................................................................2

42 U.S.C. § 2000e-5(g)(1). ...................................................................................................4, 13

45 U.S.C. § 151..........................................................................................................................1

45 U.S.C. § 152 (Third) .............................................................................................................4

45 U.S.C. § 152 (Fourth) ...........................................................................................................4

Pursuant to this Court's July 19, 2022 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, moves the Court to enter judgment, in accordance with the jury's July 14, 2022 verdict on liability and damages.[2] Carter also requests that the Court award further relief against Southwest Airlines Co. ("Southwest") and Transport Workers Union of America Local 556 ("Local 556"), including reinstatement, prejudgment interest, and other declaratory and injunctive relief.

## ARGUMENT AND AUTHORITIES

**I. The Court should enter judgment on the jury's July 14, 2022 verdict on liability and damages.**

Carter requests that the Court enter judgment on a separate document as required by Federal Rule of Civil Procedure Rule 58(a)(1).[3] The Clerk of the Court must prepare, sign, and enter judgment on a separate document when a jury awards a general verdict, when the jury returns a general verdict accompanied by interrogatories, or when the court grants other relief not described in Rule 58(a)(2).[4]

Following a trial on Carter's claims, the Court submitted this case to the jury. On July 14, 2022, the jury reached a unanimous verdict in Carter's favor and against Southwest and Local 556.[5] The jury found that Southwest and Local 556 violated Carter's rights under the Railway Labor Act ("RLA"), 42 U.S.C. § 151 *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and that Local 556 breached the union's duty of fair representation ("DFR") to Carter.[6] The jury's findings entitle Carter to judgment against Southwest and Local

---

[1] Doc. No. 349.
[2] Doc. No. 348.
[3] Fed. R. Civ. P. 58(d).
[4] Fed. R. Civ. P. 58(a)(2).
[5] Doc. No. 348.
[6] Doc. No. 348.

1

556 on all claims. The jury awarded Carter the following damages for Southwest's and Local 556's unlawful conduct:

- $120,000 in lost wages
- $30,000 in lost benefits
- $200,000 for front pay (advisory award)
- $250,000 for past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life caused by Southwest's and Local 556's Title VII violations
- $250,000 for future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life caused by Southwest's and Local 556's Title VII violations
- $300,000 for punitive damages from Local 556 for its Title VII violations
- $3,500,000 for punitive damages from Southwest for its Title VII violations

Carter acknowledges that Title VII caps compensatory and punitive damages at $300,000 for unlawful discrimination for employers with over 500 employees and for unions with more than 500 members.[7] Southwest has more than 500 employees,[8] and Local 556 has more than 500 members.[9]

For unions, the appropriate measure for the damages cap is its number of members, not its number of employees.[10] Title VII authorizes punitive damages awards against unions under Section 1981a.[11] Section 1981a's punitive damages provision is drawn in terms of matching Title VII's jurisdictional requirements. For employers, Title VII's jurisdictional provision, 42 U.S.C. § 2000e(b), reaches employers who have "fifteen or more employees," which corresponds with the punitive damage caps for the smallest employers within Section 1981's jurisdiction: "[I]n the case of a respondent who *has more than 14* and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000."[12]

---

[7] *See* 42 U.S.C. § 1981a(b)(3).
[8] *See* Trial Ex. 138, p.26-27.
[9] Ex. 3, App.5 (reporting 15,908 employee members); Trial Tr. 684:18-20.
[10] *See Stelly v. W. Gulf Mar. Ass'n,* 407 F. Supp. 3d 673, 686-87 (S.D. Tex. 2019); *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1100 (8th Cir. 2001).
[11] 42 U.S.C. § 2000e-5(e)(3)(B).
[12] 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added).

For unions, Title VII's jurisdictional provisions subject "labor organizations" to its statutory requirements and penalties based on the union's number of *members*, not on its employees:

> A labor organization shall be deemed to be engaged in an industry affecting commerce if … the number of its members (or, where it is a labor organization composed of other labor organizations or their representatives, if the aggregate number of the members of such other labor organization) is (A) twenty-five or more during the first year after March 24, 1972, or (B) fifteen or more thereafter, and such labor organization…[13]

After 1972, Congress aligned the number of employees for employers with the number of members for unions. Thus, Title VII caps the union's punitive damages according to its number of members, not its number of employees.

Accordingly, the Court should order the clerk to enter judgment for Carter against Southwest and Local 556 as to liability on all claims and award Carter $150,000 from Southwest and Local 556 jointly in lost wages and benefits, and $600,000 for total compensatory and punitive damages ($300,000 each from Southwest and Local 556).

## II. The Court should award further relief, including reinstatement, prejudgment interest, and other declaratory and injunctive relief.

The Court should also award Carter (A) reinstatement, or, in the alternative, $250,000 for front pay (in accordance with the jury's advisory decision) up to a maximum of $900,000, (B) prejudgment interest at the maximum allowable legal rate, and (C) other declaratory and injunctive relief.[14]

---

[13] 42 U.S.C. § 2000e(e).
[14] (Doc. No. 80, Prayer for Relief, pp.30-31, A-B).

A. **The Court should award Carter reinstatement, or in the alternative, front pay.**

1. **Reinstatement with full seniority and benefits**

The Court should award Carter reinstatement with restoration of full seniority and benefits[15] for Southwest's and Local 556's violations of Carter's rights under Title VII, the RLA, and the DFR. Reinstatement is the proper remedy when employers and unions unlawfully fire employees in violation of Title VII, the RLA, and the DFR.[16] Title VII expressly authorizes the court to order reinstatement.[17] "Reinstatement more tightly fits the termination injury,"[18] and "is most consistent with Title VII's "'make-whole' philosophy."[19] "[R]einstatement restores not just the financial benefits of a job but also the 'psychological benefits' of work."[20]

The U.S. Supreme Court has also recognized that the RLA "contemplates resort to the usual judicial remedies of injunction and award of damages"[21] and that courts should be free to award appropriate equitable relief to ensure full compensation,[22] including for cases of DFR breaches.[23]

---

[15] (Doc. No. 80, Prayer for Relief, p.31, B ¶2).
[16] *See Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102-03 (3d Cir. 1968) (affirming district court's awards of reinstatement and back pay and that employer and union had joint liability); *Texas & N.O.R. Co. v. Bhd. of Ry. & S.S. Clerks,* 281 U.S. 548, 569-70 (1930); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 206-07 (1944) (recognizing that the RLA "contemplates resort to the usual judicial remedies of injunction and award of damages when appropriate for breach of that duty"); *Vaca v. Sipes*, 386 U.S. 171, 196 (1967) (holding that courts should be free to award appropriate damages or equitable relief to ensure full compensation); *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024 (8th Cir. 2008) (reinstatement for failure to accommodate claim).
[17] 42 U.S.C. § 2000e-5(g)(1).
[18] *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 336 (5th Cir. 2019).
[19] *Id*. (citation omitted).
[20] *Id*. (citation omitted).
[21] *Steele*, 323 U.S. at 206-07; *Texas & N.O.R. Co.*, 281 U.S. at 569-70 (recognizing that under RLA Section 152 (Third) and (Fourth), "[t]he right is created and the remedy exists."); *see also Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 66 (1992) ("[W]here legal rights have been invaded and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).
[22] *Vaca*, 386 U.S. at 196.
[23] *Steele*, 323 U.S. at 206-07; *Vaca*, 386 U.S. at 196.

"[W]hen procedures for reinstatement are otherwise unavailable … the purposes of the Railway Labor Act would best be served if an employee seeking to regain his job may invoke the equitable powers of the court … [R]einstatement … [is] an appropriate remedy and … [the district court] ha[s] authority to so order."[24]

Carter would never have lost her job if Southwest and Local 556 had not retaliated against her for her RLA-protected activity or discriminated against her religious beliefs in violation of Title VII, and if Local 556 had not breached the DFR by reporting Carter to Southwest for discipline.[25] The jury further found that Southwest would not have fired Carter even if it had not fired her for protected activity.[26]

Courts should award reinstatement in all but unusual cases.[27] The Court should award reinstatement when it is feasible and appropriate.[28] Carter's reinstatement is feasible and appropriate in this case. Reinstatement is "feasible" and "appropriate" unless the terminated employee finds other employment, reinstatement would require the employer to displace an existing employee, or there is irreparable animosity between the employee and employer.[29]

First, Carter wants to continue her career as a Southwest flight attendant.[30] Carter loved her job at Southwest[31] and the flight attendants with whom she worked.[32] She did not change careers

---

[24] *Brady*, 401 F.2d at 103.
[25] Doc. No. 348.
[26] Doc. No. 348, p.9.
[27] *See Garza v. Brownsville Indep. Sch. Dist.*, 700 F.2d 253, 255 (5th Cir. 1983); *Bogan*, 919 F.3d at 336. *See also Welborn v. Reynolds Metals Co.*, 868 F.2d 389, 391 (11th Cir. 1989) (holding that employees unlawfully discharged are presumptively entitled to reinstatement).
[28] *See e.g., Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1469-70 (5th Cir. 1989).
[29] *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1253-54 (5th Cir. 1995); *Brunneman v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).
[30] Carter Aff. ¶ 7, Ex. 1, App.2.
[31] Trial Tr. 1209:8-20; 1216:9-13; 1315:19-1316:2; Trial Tr. 1211:21-25; 1212:10-19.
[32] Trial Tr. 1209:8-20.

5

or find other employment.[33] Only the importance of protecting her religious freedoms and right to oppose her union caused Carter to lose her job.

Carter accrued 21 years of seniority with Southwest, which is also critical to a flight attendant's ability to bid her preferred lines (i.e., trips).[34] By attempting to start over at another airline, Carter would lose her seniority and the right to select more profitable trips, or trips that more befit her schedule.[35] Carter sought employment as a flight attendant with other airlines,[36] but Southwest's termination of her employment and this lawsuit likely mean that Southwest is her only option. Having worked as a Southwest flight attendant for 21 years, Carter is fully qualified to return to her position. Carter should not have to give up her career as a flight attendant because she vindicated her RLA and Title VII-protected rights.

Second, Carter's reinstatement would not displace another flight attendant. Southwest has publicly reported in recent months that it is facing "an acute staffing shortfall" and had been forced to reopen flight attendant recruitment.[37] Southwest reduced its summer schedule because it has struggled "to hire enough staff to keep up with a return in travel demand."[38] Southwest further reported in April 2022 that such staffing challenges "would remain over the next few months at least."[39] Meanwhile, Local 556 "slammed the airline for overworking crew members who they

---

[33] Carter Aff. ¶ 5, Ex. 1, App.1.
[34] Carter Aff. ¶ 6, Ex. 1, App.2; Trial Ex. 6 (SWA 47, ¶ 1 (a)(4)); Trial Ex. 6 (SWA 23-24; 47-70).
[35] Carter Aff. ¶ 6, Ex. 1, App.2.
[36] Carter Aff. ¶ 5, Ex. 1, App.1; Tr. 1301:2-11.
[37] https://www.paddleyourownkanoo.com/2022/04/29/southwest-airlines-had-to-briefly-reopen-flight-attendant-recruitment-as-it-seeks-to-plug-staffing-shortfall/, last visited July 20, 2022. *See also* Southwest's Form 8-K, filed with the SEC on April 28, 2022 (www.paddleyourownkanoo.com/2022/04/29/southwest-airlines-had-to-briefly-reopen-flight-attendant-recruitment-as-it-seeks-to-plug-staffing-shortfall).
[38] *Id.*
[39] *Id.*

claimed were exhausted" and "implored Southwest to hire more staff to keep up with the rise in demand."[40]

Third, Carter's employment relationship with Southwest can continue because there is not such hostility or animosity between Southwest's inflight managers and Carter herself that would make reinstatement unworkable.[41] Carter worked at Southwest for 21 years without discipline.[42] Carter's supervisors spoke favorably of her work as a Southwest employee. Carter's direct supervisor in 2017, Meggan Jones, testified that her interactions with Carter had always been very friendly and that, as her supervisor, she never had problems or concerns with her.[43] Senior Director of Inflight Operations Michael Sims also testified that Carter was a long-term employee with a good employee record.[44] Even Southwest Denver Base Manager, Ed Schneider, who made the decision to terminate Carter, stated that the decision was "[d]efinitely" heavy-handed.[45]

Southwest never complained about Carter's job performance or quality of work. Moreover, Southwest's willingness to give Carter her job back with its Last Chance Agreement demonstrates that the relationship can continue.[46] Furthermore, it would be unjust to allow Southwest to use

---

[40] *Id.*
[41] *Brunneman*, 975 F.2d at 180. To be sure, the Fifth Circuit has considered animosity in the litigation, but this Court should not penalize Carter for seeking reinstatement at Southwest based on the adversarial nature of this litigation, especially when the company considered her a good employee prior to its unlawful retaliation and discrimination against her. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) ("A court must be careful, however, not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement."); *Olivares v. Brentwood Indus.*, 822 F.3d 426, 429-30 (8th Cir. 2016) ("Normal friction arising from the litigation process itself would not be a sufficient basis for denying reinstatement. Only substantial hostility above that normally incident to litigation, is a sound basis for denying reinstatement.") (cleaned up).
[42] Carter Aff. ¶ 4, Ex. 1, App.1.
[43] Trial Tr. 1675:14-1676:1
[44] Trial Tr. 1718:8-11; 1696:2-6
[45] Trial Tr. 1141:17-22.
[46] Trial Tr. 1718:17-22; Tr. Ex. 40.

7

Carter's vindication of her RLA and religious rights as grounds for preventing her from resuming the career that was taken from her.

Carter's dispute with her union did not involve the workplace or any Southwest employees apart from the union president, who has distinct and affirmative obligations to Carter under Title VII and the duty of fair representation.[47] Carter testified, and the evidence demonstrates, that she never engaged in union or religious protected activities at the workplace, and that she would not engage in those activities at the workplace.[48] Carter never worked with President Stone, they work at different bases, and Carter otherwise has a good relationship with other flight attendants and Southwest management. Carter will faithfully follow all Southwest policies that do not unlawfully interfere with her protected union and religious activities, as she did for 21 years.[49] Carter does not want to use her job as a platform for promoting her beliefs.[50] She only wants to be a flight attendant again.[51]

### 2. Front Pay

The Court should award Carter's reinstatement, and giver her back the 20-year career she loved. Carter loves her job so much that she is willing to forego any front pay award the Court determines appropriate (and which the jury, in an advisory role, valued at $200,000)[52] even though she will have to work years to earn that amount. Nevertheless, if the Court does not award Carter's reinstatement, then it should award front pay up to a maximum of $900,000 based on what Carter could have earned if she resumed her employment with Southwest. "[I]f reinstatement is not

---

[47] Tr. Ex. 64-65; 42 U.S.C. § 2000e-2(c)(1), -2(c)(3); § 2000e(j) (union's Title VII obligations); *Vaca*, 386 U.S. at 190 (union DFR obligations).
[48] Tr. Ex. 64-65; Carter Aff. ¶ 9, Ex. 1, App.2.
[49] Carter Aff. ¶ 8, Ex. 1, App.2.
[50] Carter Aff. ¶ 9, Ex. 1, App.2.
[51] Carter Aff. ¶ 7, Ex. 1, App.2.
[52] Doc. No. 348, p.23 (Local 556); p.32 (Southwest).

feasible, front pay is the appropriate award."[53] "[P]revailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay."[54] Front pay compensates a litigant for future economic harm and makes the litigant whole for all future losses: "[F]ront pay is a prospective remedy that estimates the damage the plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing."[55]

Carter is ready to return immediately to working full time,[56] and, at the age of 56,[57] she anticipates working for at least another 9 years.[58] Carter would work a full line, which would allow her to earn approximately $100,000 per year.[59] Carter estimated at trial that, working full time, she could work 80-100 trips per month, which would allow her, at her pay scale, to earn anywhere from $80,000-$100,000 a year.[60] Carter further estimated that she could make, in addition, more than $20,000 with benefits (e.g., profit sharing, 401(k) matches, medical insurance, and other bonuses).[61] Carter testified that she could immediately return to work full time and earn those amounts.[62] Thus, Carter could earn an additional $900,000 over the course of her career. The jury's advisory award awarded Carter $200,000 from Southwest and Local 556.[63] Local 556 has joint liability for causing Carter's termination such that, if the Court does not award Carter

---

[53] *Bogan*, 919 F.3d at 336 (citation omitted); *see also id.* at 336-37 ("[I]t is impossible for us to imagine cases when a denial of both reinstatement and reimbursement would be justified.") (footnote and citation omitted).
[54] *Id.* (quoting *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1528 (11th Cir. 1991)).
[55] *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490-91 (5th Cir. 2007).
[56] Trial Tr. 1304:5-19; Carter Aff. ¶ 10, Ex. 1, App.2.
[57] Trial Tr. 1176:25-1177:2.
[58] Carter Aff. ¶ 10, Ex. 1, App.2.
[59] Carter Aff. ¶ 10, Ex. 1, App.2; Trial Tr. 1475:9-1476:24
[60] Trial Tr. 1475:11-15
[61] Trial Tr. 1475:16-1476:3; 1476:10-20
[62] Trial Tr. 1476:21-24
[63] Doc. No. 348, p.23 (Local 556); p.32 (Southwest).

reinstatement, then the union is jointly liable for Carter's front pay award.[64] Therefore, the Court should award Carter between $200,000 (in accordance with the jury's advisory award) and $900,000, from Southwest and Local 556.

### B. Prejudgment Interest

The Court should award Carter $19,947.34 in prejudgment interest on the jury's $150,000 back pay award against Southwest and Local 556.[65] "Prejudgment interest should apply to all past injuries, including past emotional injuries … Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole."[66] The Fifth Circuit has "a strong presumption in favor of awarding pre-judgment interest."[67]

The Fifth Circuit looks to state law for guidance on the applicable rate because there is no federal law setting the prejudgment interest rate.[68] Texas state law is the applicable state law in this matter.[69] The Texas Supreme Court has held that prejudgment interest accrues at the rate for post-judgment interest, and is computed as simple interest.[70] Under the Texas Finance Code, the post-judgment interest rate is "the prime rate as published by the Board of Governors of the Federal

---

[64] *See Brady*, 401 F.2d at 102-03 (affirming district court's awards of reinstatement and back pay and that employer and union had joint liability); Doc. No. 348, p.23 (Local 556); p.32 (Southwest).
[65] Doc. No. 248, p.13 (Local 556); p.24 (Southwest). Courts also award prejudgment interest on compensatory, non-economic damages such as emotional distress, pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. *See Thomas v. Texas Dep't of Crim. Just.*, 297 F.3d 361, 372 (5th Cir. 2002). The jury awarded Carter such damages against Southwest and Local 556 in relation to her Title VII claims. Doc. No. 348, p.14 (Local 556); p.25 (Southwest). However, Title VII caps compensatory and punitive damages at $300,000 for unlawful discrimination. *See* 42 U.S.C. § 1981a(b)(3).
[66] *Thomas*, 297 F.3d at 372; *see also id*. (affirming that prejudgment interest applies to both back pay and compensatory damage awards under Title VII).
[67] *United States v. Ocean Bulk Ships, Inc.*, 248 F.3d 331, 344 (5th Cir. 2001).
[68] *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016) (turning to state law for guidance because the federal Employee Retirement Income Security Act does not set prejudgment interest rates).
[69] *Id*.
[70] *See Johnson v. Sw. Rsch. Inst.*, 384 F.Supp. 3d 722, 727 (W.D. Tex. 2019) (citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)).

Reserve on the date of the computation," unless that rate is less than five percent or greater than fifteen percent.[71] Currently, the prime rate is 4.75%.[72] Therefore, Carter calculated prejudgment interest based on Texas's 5% minimum.[73]

"District Courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action."[74] Here, the date of the adverse employment action is March 14, 2017, the date when Southwest fired Carter.[75] Therefore, Carter calculated prejudgment interest for each payment she would have received since her March 14, 2017 termination. Carter multiplied $77.00 of back pay per day[76] owed by Southwest and Local 556 for each month from her March 14, 2017 termination date to the jury's July 14, 2022 verdict.[77] For each such monthly payment, Carter calculated the prejudgment interest due by multiplying the 5% prejudgment interest rate by the monthly "back pay owed" amount and the number of years between that pay period and the date judgment is issued.[78] Carter's Exhibit 2 shows this calculation.[79] Accordingly, the Court should award Carter $19,947.34 in prejudgment interest.

---

[71] Tex. Fin. Code Ann. § 304.004(c)(1) (West 2019).
[72] Selected Interest Rates (Daily), Board of Governors of the Federal Reserve System, https://www.federalreserve.gov/releases/h15/, last visited July 20, 2022.
[73] From March 14, 2017, the date when Southwest terminated Carter's employment, through the present, the prime rate has stayed below 5%, except for the period from September 27, 2018 through September 19, 2019, during which time it was 5.25% or 5.50%. Given the small excess over Texas's 5% minimum prejudgment interest rate and limited time period during which this excess existed, the use of different rates for these time periods would not have a meaningful effect on the total amount of Carter's prejudgment interest. Therefore, Carter's calculation uses the less-favorable-to-her 5% rate to calculate such interest.
[74] *Thomas*, 297 F.3d at 372.
[75] Tr. Ex. 115.
[76] Carter's "back pay per day" is her $150,000 back pay award divided by 1,948 days between her termination and the verdict.
[77] *See* Ex. 2, App.3, "Back Pay Owed" column.
[78] Carter calculated "the number of years between the pay period and the date judgment is issued" by dividing the "days until judgment" for each month by 365.
[79] Ex. 2, App.3

**C. The Court should award declaratory and injunctive relief as requested in Carter's Complaint and in accordance with the jury's verdict.**

**1. The Court should award Carter's requested declaratory relief in accordance with Carter's Complaint and the jury's verdict.**

The Court should award Carter's requested declaratory relief in accordance with the jury's July 2014 verdict. The Court "may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[80] "Further necessary or proper relief based on a declaratory judgment or decree may be granted … against any adverse party whose rights have been determined by such judgment."[81] Consistent with the jury's July 2014 verdict, the Court should enter judgment declaring that:

- Southwest and Local 556 violated Carter's rights under the RLA by terminating her employment in retaliation for her exercise of protected rights.[82]

- Southwest and Local 556 violated Carter's Title VII rights by discriminating against Carter because of her religion and failing to accommodate Carter's religious observances, beliefs, and practices.[83]

- Local 556 breached the duty of fair representation the union owed to Carter.[84]

**2. The Court should enjoin Southwest and Local 556 from engaging in unlawful activities in accordance with the jury's July 14, 2022 verdict, and order them to institute appropriate policies to remedy past discrimination.**

The Court should enjoin Southwest and Local 556, and their officers, employees, agents, attorneys, and all other persons acting in active concert with them, from engaging in any of the activities that the Court declares and the jury found to be unlawful.[85] Title VII authorizes the Court to enjoin employers and unions from engaging in unlawful discrimination, and "to order such

---

[80] 28 U.S.C. § 2201(a).
[81] 28 U.S.C. § 2202.
[82] (Doc. No. 80, Prayer for Relief, p.30, A ¶¶1, 3).
[83] (Doc. No. 80, Prayer for Relief, pp.30-31, A ¶¶4-6).
[84] (Doc. No. 80, Prayer for Relief, p.30, A ¶2).
[85] (Doc. No. 80, Prayer for Relief, p.31, B ¶1).

12

affirmative action as may be appropriate … or any other equitable relief as the court deems appropriate."[86] The U.S. Supreme Court has also recognized that the RLA and DFR contemplate injunctive relief.[87]

The Court should also order Southwest and Local 556 to institute and carry out policies, practices, and programs which provide equal employment opportunities for Carter and other employees, and which eradicate the effects of their past and present unlawful employment practices.[88] The Court should further order other affirmative relief necessary to eradicate the effects of Southwest's and Local 556's unlawful employment practices.[89] For example, the Court should order Local 556 to post the Court's judgment and the jury's verdict at the union hall for a 60-day period and issue it electronically to all union members, and order Southwest to post the Court's judgment and the jury's verdict on company bulletin boards for a 60-day period and email the same to all flight attendants. The Court should also order Southwest and Local 556 to inform Southwest flight attendants of their Title VII and RLA rights under Section 152 (Third) and (Fourth), and notify them of Southwest's accommodation policy.

## CONCLUSION

For the foregoing reasons, Carter asks the Court to order the clerk to enter judgment on the jury's July 14, 2022 verdict, and award Carter reinstatement, prejudgment interest, and the declaratory and injunctive relief as requested herein and in her complaint.

Dated: July 26, 2022                                            Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996

---

[86] 42 U.S.C. § 2000e-5(g)(1).
[87] *See supra* at 4, 4 n.16.
[88] (Doc. No. 80, Prayer for Relief, p.31, B ¶3).
[89] (Doc. No. 80, Prayer for Relief, p.31, B ¶4).

13

*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343


*Attorneys for Plaintiff Charlene Carter*

**Certificate of Service**

I hereby certify that on July 26, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam