# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

## DEFENDANT SOUTHWEST AIRLINES CO.'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT

---

## <u>TABLE OF CONTENTS</u>

**Page**

I.      Plaintiff's Compensatory and Punitive Damage Awards are Statutorily Capped. ............. 1

II.     The Court Should Deny Plaintiff's Request for Reinstatement. ......................................... 2

III.    Front Pay and Pre-Judgment Interest are Unnecessary because the Jury's Awards Have Already Made Plaintiff Whole. ................................................................................. 7

      A.      Front pay is improper and Plaintiff's requested front pay award is excessive. ............................................................................................................. 7

      B.      The Court should not award front pay is because Plaintiff failed to mitigate. ................................................................................................................. 10

      C.      The Court should not award pre-judgment interest. ............................................ 12

IV.     Plaintiff is Not Entitled to the Declaratory Relief Sought. .............................................. 13

V.      Plaintiff's Requested Injunctive Relief is Unnecessary. .................................................. 14

VI.     Conclusion ........................................................................................................................ 18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. City of McComb*,
  2015 U.S. Dist. LEXIS 184949 (S.D. Miss. Mar. 19, 2015) ...................................................10

*Armstrong v. Turner Indus.*,
  141 F.3d 554 (5th Cir. 1998) ...............................................................................14, 15, 16, 17

*Badgerow v. Rej Props.*,
  2021 U.S. Dist. LEXIS 81505 (E.D. La. Feb. 24, 2021) ........................................................7

*Baker v. John Morrell & Co.*,
  263 F. Supp. 2d 1161 (N.D. Iowa 2003)................................................................................2

*Bogan v. MTD Consumer Grp., Inc.*,
  2020 U.S. Dist. LEXIS 33550 (N.D. Miss. Feb. 27, 2020) ...................................................11

*Bogan v. MTD Consumer Grp., Inc.*,
  839 F. App'x 832 (5th Cir. 2020) ..................................................................................2, 7, 12

*Bogan v. MTD Consumer Grp., Inc.*,
  919 F.3d 332 (5th Cir. 2019) ............................................................................................2, 3

*Burns v. Tex. City Refining*,
  890 F.2d 747 (5th Cir. 1989) ................................................................................................8

*Carmona v. Southwest Airlines Co.*,
  604 F.3d 848 (5th Cir. 2010) ................................................................................................2

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..............................................................................................................15

*Downey v. Strain*,
  510 F.3d 534 (5th Cir. 2007) .............................................................................................7, 8

*EEOC v. Serv. Temps Inc.*,
  679 F.3d 323 (5th Cir. 2012) ..............................................................................................14

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) ..............................................................................................13

*Floca v. Homcare Health Servs., Inc.*,
  845 F.2d 108 (5th Cir. 1988) ................................................................................................7

US_ACTIVE-168352879.17

*Gilbert v. Donahoe¸*
    751 F.3d 303 (5th Cir. 2014) ................................................................................16

*Google Inc. v. Beneficial Innovations, Inc.,*
    2014 U.S. Dist. LEXIS 118587 (E.D. Tex. Aug. 26, 2014) ....................................13

*Hadley v. VAM P T S,*
    44 F.3d 372 (5th Cir. 1995) ..............................................................................7, 12

*Hansard v. Pepsi-Cola Metro. Bottling Co.,*
    865 F.2d 1461 (5th Cir. 1989) ...............................................................................10

*Hooker v. Victoria's Secret Stores, Inc.,*
    2000 U.S. Dist. LEXIS 23779 (S.D. Miss. Aug. 28, 2000) ...................................11

*Hunter v. Town of Mocksville,*
    897 F.3d 538 (4th Cir. 2018) ...................................................................................3

*James v. City of Dallas, Tex.,*
    254 F.3d 551 (5th Cir. 2012) ...........................................................................16, 17

*Junaid v. McHugh,*
    2013 U.S. Dist. LEXIS 10833 (S.D. Tex. Jan. 28, 2013) ........................................8

*Kostic v. Tex. A&M Univ. at Commerce,*
    2015 U.S. Dist LEXIS 106467 (N.D. Tex. 2015 Aug. 13, 2015) .............................8

*Manuel v. Tex. State Tech. College,*
    2007 U.S. Dist. LEXIS 114921 (E.D. Tex. July 5, 2007)........................................8

*Miller v. Raytheon Co.,*
    2013 U.S. Dist. LEXIS 180752 (N.D. Tex. Dec. 27, 2013) .....................................9

*Owen v. Rutherford Supply Corp.,*
    2020 U.S. Dist. LEXIS 126210 (E.D. Va. July 16, 2020) .......................................6

*Palasota v. Haggar Clothing Co.,*
    2005 U.S. Dist. LEXIS 1242 (N.D. Tex. Jan. 28, 2005) .......................................12

*Palasota v. Haggar Clothing Co.,*
    499 F.3d 474 (5th Cir. 2007) ...................................................................................7

*Payne v. Travenol Labs., Inc.,*
    565 F.2d 895 (5th Cir. 1978) ...........................................................................15, 16

*Perez v. Ohio Bell Tel. Co.,*
    655 F. App'x 404 (6th Cir. 2016) .........................................................................15

*Reneau v. Wayne Griffin & Sons, Inc.*,
    945 F.2d 869 (5th Cir. 1991) ................................................10

*Reynolds v. Octel Comms. Corp.*,
    924 F. Supp. 743 (N.D. Tex. 1995) .........................................8

*Scudiero v. Radio One of Tex. II, LLC*,
    2015 U.S. Dist. LEXIS 133434 (S.D. Tex. Sept. 30, 2015) ...............7, 11

*Sellers v. Delgado Cmty. Coll.*,
    839 F.2d 1132 (5th Cir. 1988) .............................................10

*Smith v. Xerox Corp.*,
    2008 U.S. Dist LEXIS 121782 (N.D. Tex. May 13, 2008) .....................7

*Stewart v. Am. Eagle Airlines, Inc.*,
    2011 U.S. Dist. LEXIS 88135 (N.D. Tex. Aug. 2, 2011) .....................5

*Union P. R. Co. v. Sheehan*,
    439 U.S. 89 (1978)........................................................5

*West v. Nabors Drilling USA, Inc.*,
    330 F.3d 379 (2003).......................................................10

*Wojcik v. Costco Wholesale Corp.*,
    2016 U.S. Dist. LEXIS 8652 (N.D. Tex. Jan. 26, 2016) .................12, 13

**Statutes**

42 U.S.C. § 1981a(b)(3).......................................................1

45 U.S.C. § 153(m)...........................................................5

**Rules**

FED. R. CIV. P. 65(d)(1) ....................................................16

US_ACTIVE-168352879.17

As required by the Court's minute order of July 20, 2022 [ECF No. 349], Southwest Airlines Co. ("Southwest") hereby submits this response to Plaintiff Charlene Carter's ("Plaintiff") motion for entry of judgment. Aside from the back pay and capped compensatory and punitive damages awards, Southwest respectfully requests the Court deny the additional relief sought by Plaintiff.

Plaintiff's request that the Court order Southwest to reinstate her is not supported by the law or facts in this case. *First*, five years of acrimonious litigation against both Southwest and Transportation Workers Union of America, Local 556 ("Local 556"))—including a grievance, an adversarial arbitration (resulting in a finding of just cause upholding Plaintiff's termination under the Railway Labor Act), and a trial—coupled with Plaintiff and her representatives' post-termination conduct, have left reinstatement infeasible and inappropriate. *Second*, Plaintiff's request for front pay is too speculative and, based on the record, excessive. *Third*, Plaintiff's request for pre-judgment interest should be denied because, under applicable Fifth Circuit precedent, the jury's award has made Plaintiff whole. *Fourth*, Plaintiff also fails to establish any right to declaratory relief. *Finally*, there is no record evidence to suggest a reasonable probability of any ongoing or future legal violations, so there is no basis to award injunctive relief.

## I.      Plaintiff's Compensatory and Punitive Damage Awards are Statutorily Capped.

Plaintiff rightly concedes that compensatory and punitive damages are capped at a combined maximum of $300,000. *See* 42 U.S.C. § 1981a(b)(3). The jury's awards of $250,000 in compensatory damages and $3,500,000 in punitive damages against Southwest should thus be reduced to a total of $300,000. Plaintiff, likewise, acknowledges that Southwest is only jointly liable for the jury's awards of $120,000 in lost wages and $30,000 in lost benefits. Accordingly, Plaintiff can only recover a total of $150,000 in back pay and benefits combined from Southwest and Local 556.

1

**II.      The Court Should Deny Plaintiff's Request for Reinstatement.**

The Court should deny Plaintiff's request for reinstatement because there is significant animosity among the parties, and reinstatement would result in workplace disruption in a safety-sensitive work environment.

Reinstatement is an equitable remedy within the sound discretion of the trial court. *See Bogan v. MTD Consumer Grp., Inc.*, 839 F. App'x 832, 834 (5th Cir. 2020). When determining whether to award or deny reinstatement, the Fifth Circuit may consider several factors, including whether the plaintiff has changed careers and whether animosity exists between the plaintiff and her former employer. *See id.*; *see also Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 863 (5th Cir. 2010) (a court may properly consider "the impact reinstatement would have on employee relations" when determining whether reinstatement is feasible).[1]

When assessing animosity, courts look to whether there is significant hostility between the parties and whether reinstatement might create hostility in the workplace among co-workers. *See Baker v. John Morrell & Co.*, 263 F. Supp. 2d 1161, 1171 (N.D. Iowa 2003). As the Fifth Circuit has explained, "hostility between the parties that is likely to disrupt the workplace if the employee returns can be a reason for denying reinstatement." *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 338 (5th Cir. 2019).

Throughout the litigation process and still today, Plaintiff has exhibited substantial hostility towards Southwest, its current leadership, many of its flight attendants, and Local 556, the union that represents all of Southwest's Flight Attendants, rendering Plaintiff's reinstatement infeasible

---

[1] While Plaintiff may not have formally changed careers, the record trial evidence established, that (1) she has not worked as a flight attendant for over five years since her termination from Southwest; (2) she made only modest efforts in 2018 to secure employment with other airlines as a flight attendant; and (3) she has devoted the majority of her professional time since her separation from Southwest to nonprofit educational organizations. As such, this factor weighs against reinstatement.

US_ACTIVE-168352879.17

and inappropriate.  Indeed, Plaintiff's recent public comments suggest a generalized antipathy towards Southwest and Local 556.  Just days ago, Plaintiff took to her Facebook page[2] to accuse Southwest of mistreating various unnamed employees.  She declared that Southwest is no longer the airline she "admired" and "loved working for" due to its "GREED!!!!!"  App. 22.  In her Facebook post, Plaintiff linked to an August 2 Daily Wire article that made accusations about various Southwest managers and flight attendants.  App. 22, 24-30.[3]  The article Plaintiff shared included personal and business email addresses of various Southwest employees and Local 556 members.  App. 26-27, 29.  As of the filing of this response, the article has 360 comments.[4]

Plaintiff has also used her Facebook page to cheer on litigation against Southwest for matters unrelated to her case, and to generally criticize the company and Local 556.  For example, in October 2021 when commenting on unrelated class action litigation against Southwest, Plaintiff posted "Hopefully Gary and all of Management at SWA get BLASTED" and that "They should be ASHAMED of themselves!"  App. 32.  Additionally, Plaintiff recently posted that she is "BEYOND SICKENED to know that 20 plus years of [her] Union Dues helped in supporting" and covering up child sex trafficking.  Plaintiff went on to assert that her union dues "helped in Harvesting Baby Parts / Organs, and Sexual Abuse!," and were "sent to Planned Parenthood to help this Evil."  App. 34.  Taken together, Plaintiff's public comments reflect exactly the kind of animosity that warrants denial of reinstatement as an equitable remedy.  *See Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 339 n.4 (5th Cir. 2019); *see also Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (affirming denial of reinstatement because plaintiff's

---

[2] All of the posts referenced herein were available on Plaintiff's publicly accessible Facebook page.
[3] The article is included with the appendix and is available at App. 24-30.
[4] It remains to be seen whether this article and Plaintiff's sharing of it will result in any targeted harassment campaigns against Southwest employees.

3

relationship with the employer "deteriorated since his termination, as evidenced by two [negative] social media posts").[5]

Plaintiff's hostility towards Southwest and efforts to spread the same have already begun to bear fruit. Approximately one week ago, another former Southwest flight attendant, Mike Casper, appears to have started a public Facebook group named "Transcripts and Depositions II." The Facebook group describes itself as: "an unmoderated, informational group for the express purpose of allowing YOU to read the trial transcripts and depositions of the Charlene Carter … trial." App. 36-37. In the group, various litigation documents are available for download, including all volumes of the trial transcript, a number of exhibits, and several deposition transcripts of current Southwest employees. App. 39-40.[6] The group encourages readers to "DOWNLOAD each file for [] personal use" and notes that "sharing to everyone in the world is encouraged." App. 36. As of August 8, 2022, the group had more than 1,600 members and numerous comments. Carter has been an active participant in the group, using it as a platform to make accusations regarding Southwest, its leaders, and her former co-workers, and to create general disaffection within the workforce. App. 42-46.[7]

Southwest notes that Plaintiff's hostility against Southwest and Local 556 has only increased in the years since her termination and most recently, just days after the jury's verdict. It

---

[5] Southwest notes that Plaintiff remains an active social media user and regularly posts on various controversial topics. Since her termination, Plaintiff has posted regarding a litany of matters, including George Floyd; transgender issues; COVID-19 conspiracy theories; alleged manipulation of COVID-19 death numbers; and the alleged evils of George Soros, Bill Gates, and Anthony Fauci, among others. App. 7-20.

[6] It is unclear how Mr. Casper obtained the trial transcripts. The most straightforward conclusion is that Mr. Casper obtained them from Plaintiff. Plaintiff distributing trial materials at this juncture could not be for the purpose of advancing her position in litigation; its only function would be to increase the animosity between the parties and create broader workplace disruption.

[7] Using the hashtag "#FireThemAll", Mr. Casper and others have encouraged Southwest to terminate employees. App. 48-49.

4

is apparent that neither the passage of time nor even a remedy in this case has dampened Plaintiff's antagonism toward Southwest or Local 556. Reinstating Plaintiff will likely exacerbate her animosity and create broader workplace dysfunction. Furthermore, reinstating Plaintiff at this juncture – more than four years after she unsuccessfully sought that very same relief through the arbitration process – will call into question the finality of arbitration decisions and thereby undermine a central purpose of the RLA. *See Union P. R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (emphasizing the importance of finality of arbitration determinations under the RLA); *Stewart v. Am. Eagle Airlines, Inc.*, 2011 U.S. Dist. LEXIS 88135, *21-22 (N.D. Tex. Aug. 2, 2011) (same); 45 U.S.C. § 153(m) (arbitrator's decision "shall be final and binding upon both parties to the dispute").

Moreover, upon reinstatement, Plaintiff will be contractually obligated to resume paying dues to Local 556. Plaintiff's recent public social media posts indicate she believes that, if she were reinstated as an employee of Southwest, Local 556 will use her dues to facilitate child sex trafficking and the sale of baby body parts. If one takes Plaintiff's testimony regarding the necessity of thwarting union expenditures to which she objects using the most effective means possible (*i.e.*, which she testified were often videos), she may well send employees and union leaders graphic and upsetting sex-trafficking related videos and images much like the abortion videos that led to her termination. App. 51 (Trial Tr. 1262:2-20); *see also* App. 50 (Trial Tr. 812:6-814:6). If reinstated, Plaintiff will be required to pay dues to Local 556 as an agency-fee paying non-member despite her belief that those dues may be used to support practices she strongly opposes.

Southwest further notes that Audrey Stone, Ed Schneider (Plaintiff's former base manager), and others involved in the investigation into Plaintiff's conduct and the disciplinary

process (*e.g.*, Meggan Jones and Mike Sims) remain Southwest employees. Indeed, if the Court orders Plaintiff's reinstatement, Schneider—who made the decision to terminate Plaintiff and who she claims recklessly disregarded her rights under Title VII and the RLA—will again be her base manager. This counsels against reinstatement. *See Owen v. Rutherford Supply Corp.*, 2020 U.S. Dist. LEXIS 126210, at *10–11 (E.D. Va. July 16, 2020) (denying reinstatement because "many of those who held leadership positions at the time of Plaintiff's termination remain employed by Defendant").

Finally, the record evidence in this case demonstrates animosity between Plaintiff and a significant number of current flight attendants. While this may not be particularly remarkable given the allegations in the case and the fact that the union was also a party, Southwest would respectfully request that the Court not lose sight of the fact that flight attendants work in a heavily regulated environment where passenger safety is of utmost concern. To reinstate Plaintiff to a safety-sensitive job in which she would work side by side with the various other employees with whom she has had and continues to have disputes could compromise the safety of the operation. This factor alone strongly mitigates against reinstatement.

In summary, in the years since her termination and even after the favorable jury verdict, Plaintiff has continued to express her disdain for Southwest, its employees, and its leaders, as well as the union that represents Southwest's flight attendants. The five years of notably contentious litigation, which remains ongoing, have irreparably harmed the parties' relationships. Thus, the Court should decline to order Plaintiff's reinstatement.[8]

---

[8] To be clear, should this Court rule for Carter and order reinstatement, Southwest will treat Carter just like every other employee. It will follow its established policies and practices governing the workplace, which no court, administrative body, or factfinder has found to be unlawful.

**III.    Front Pay and Pre-Judgment Interest are Unnecessary because the Jury's Awards Have Already Made Plaintiff Whole.**

Plaintiff is not entitled to an award of front pay because the jury's award of compensatory and punitive damages made Plaintiff whole and a front pay award would constitute a windfall to Plaintiff.  An award of front pay is not automatic.  *See Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988).  This is true even when a court declines to order reinstatement. *Bogan*, 839 Fed. Appx. at 835; *Badgerow v. Rej Props.*, 2021 U.S. Dist. LEXIS 81505, at *15 n.9 (E.D. La. Feb. 24, 2021) ("[Plaintiff] . . . assume[s] that because reinstatement is not an option she will automatically be entitled to front pay if she prevails on her Title VII claim. This is not correct.")

Front pay is an equitable remedy and when "exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case." *Downey v. Strain*, 510 F.3d 534 (5th Cir. 2007).  "[I]n the determination of front pay, . . . awards must be carefully crafted to avoid a windfall to the plaintiff, as [such] damages . . . are not meant to be punitive." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007); *see also Scudiero v. Radio One of Tex. II, LLC*, 2015 U.S. Dist. LEXIS 133434, at *44 (S.D. Tex. Sept. 30, 2015) (same).

A.    <u>Front pay is improper and Plaintiff's requested front pay award is excessive.</u>

In cases like this where juries have awarded the full amount of monetary damages available under Title VII, courts have held that front pay should not be awarded as the monetary damages have made plaintiff whole and front pay would, therefore constitute an excessive windfall.  *See Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir. 1995) (stating that in Title VII cases, "a substantial liquidated damages award may indicate that an additional award of front pay is inappropriate or excessive"); *see also Smith v. Xerox Corp.*, 2008 U.S. Dist LEXIS 121782, at *2–3 (N.D. Tex.

May 13, 2008) (holding plaintiff was not entitled to front pay award as the plaintiff was made whole by the jury's award of $250,000 in exemplary damages); *Reynolds v. Octel Comms. Corp.*, 924 F. Supp. 743, 748 (N.D. Tex. 1995) (denying award of front pay where jury awarded plaintiff more than the statutory maximum amount of compensatory and punitive damages).

If the Court finds that an award of front pay is appropriate, the amount requested by Plaintiff should be substantially reduced.  A court cannot "base an award of front pay solely on a subjective statement of intent regarding retirement age." *Junaid v. McHugh*, 2013 U.S. Dist. LEXIS 10833, at *6–7 (S.D. Tex. Jan. 28, 2013).  Though front pay awards necessarily involve some degree of speculation, awarding front pay until a plaintiff's estimated retirement, based on nothing but the plaintiff's subjective statement of intent, is generally improper.  *See Burns v. Tex. City Refining*, 890 F.2d 747, 753 (5th Cir. 1989) (finding trial court's award of front pay until retirement was an abuse of discretion).

Plaintiff's request for nine years of front pay is excessive and too speculative.  *See Burns*, 890 F.2d at 753 n.4 ("The longer the front pay period, the more speculative the front pay award.").  Courts in the Fifth Circuit have routinely limited awards of front pay to three years or less.  *See Downey*, 510 F.3d 534 at 545 (affirming trial court's award of two years' front pay); *see also Kostic v. Tex. A&M Univ. at Commerce*, 2015 U.S. Dist LEXIS 106467, at *10 (N.D. Tex. 2015 Aug. 13, 2015) (awarding plaintiff two years of front pay); *Manuel v. Tex. State Tech. College*, 2007 U.S. Dist. LEXIS 114921, at *17 (E.D. Tex. July 5, 2007) (awarding plaintiff two years of front pay).  Here, there is nothing in the record except for Plaintiff's subjective statement that she intends to work nine more years until her retirement.  Such a statement is too speculative and any front pay award should be limited to a more reasonable period of three years or less.

Plaintiff's requested amount of front pay is likewise excessive. The record evidence shows that, in the three years prior to her termination, Plaintiff earned approximately $20,000 per year.[9] The jury appears to have recognized this fact by awarding Plaintiff less than $24,000 a year in back pay. *See* ECF No. 348 (awarding Plaintiff $120,000 in lost wages from her termination in March 2017 to the date of verdict in July 2022). As the great weight of the record evidence supports a finding that Plaintiff's annual wages likely would be approximately $20,000, any award of front pay should not exceed that amount per year.

As for the jury's advisory front pay award, the jury was not asked to provide a basis for its advisory award of $200,000 of front pay. If the jury's back pay award is any indication, the front pay award would compensate Plaintiff for approximately eight years of additional wages at her previous earnings rate. As discussed above, this amount, particularly when the jury's compensatory and punitive damages awards are taken into account, is excessive. *See Miller v. Raytheon Co.*, 2013 U.S. Dist. LEXIS 180752, at *44 (N.D. Tex. Dec. 27, 2013) (holding that 2.5 years of front pay was sufficient to make plaintiff whole when additional damages awards were taken into consideration). In light of the jury's compensatory and punitive damages awards, any award of front pay in excess of three year's wages would constitute a windfall to Plaintiff. Accordingly, although Southwest submits that any front pay award is unreasonable here where Plaintiff has recovered that statutory maximum in punitive and compensatory damages, if the Court determines an award of front pay is appropriate, any such award should be limited to $60,000 or less.[10]

---

[9] Trial Ex. 130 at 3–6.

[10] To the extent the Court does award front pay, Southwest and Defendant Transport Workers Union of America, Local 556 should be jointly liable for such award as they are for the jury's award of back pay. Accordingly, Plaintiff can only recover the full amount of any front pay award from Southwest and Defendant Transportation Workers Union of America, Local 556, combined. She is not entitled to receive the full amount of any front pay award from both Defendants.

B.    <u>The Court should not award front pay is because Plaintiff failed to mitigate.</u>

The Court should not award Plaintiff front pay because she failed to mitigate her damages by diligently looking for comparable work after separation from Southwest. In the more than five years since her termination, Plaintiff applied to only four jobs, and only in 2018. Otherwise, Plaintiff spent her post-Southwest time not looking for work, engaging in unpaid non-profit endeavors, and teaching a handful of Pilates classes.

"[A] plaintiff's failure to mitigate his damages will usually reduce or perhaps eliminate his entitlement to front pay." *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989). Even in cases where reinstatement is not appropriate, the court "must consider" the plaintiff's mitigation efforts "in determining the extent to which, *if at all*, front pay is appropriate." *Id.* (emphasis added); *see also Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991) ("Front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment.").

To show a failure to mitigate, a defendant need not demonstrate the availability of equivalent work. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (2003). Rather, an employee fails to mitigate, and is thus not entitled to front pay, when she fails to "use 'reasonable diligence to obtain substantially equivalent employment.'" *Id.*; *see also Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1988). As discussed below, Plaintiff's testimony conclusively establishes that she made no effort to mitigate her damages in this case and thus she should not receive a front pay award. Moreover, a court can deny a front pay award based on a plaintiff's failure to mitigate even if the jury "concluded that plaintiff had mitigated for purposes of a back pay award[.]" *Anderson v. City of McComb*, 2015 U.S. Dist. LEXIS 184949, at *4 (S.D. Miss. Mar. 19, 2015). Similarly, in deciding whether to award front pay, the court may consider evidence

10

of a plaintiff's failure to mitigate during the back pay period.  *See Scudiero*, 2015 U.S. Dist. LEXIS 133434, at *54.

Southwest terminated Plaintiff's employment in March 2017.  Since her termination, Plaintiff has spent her time either not looking for work, performing unpaid work for education non-profits, or teaching a few Pilates classes in 2021-2022 for which she earned no more than a few thousand dollars.  App. 52-54 (Trial Tr. 1301:2-11, 1398:18-1402:20).  Indeed, Plaintiff submitted no job applications in 2017, 2019, 2020, 2021, or 2022.  The only year in which Plaintiff actively sought employment as a flight attendant was 2018. App. 52-54 (Trial Tr. 1398:18-1402:20).

In sum, in the five years after her termination, Plaintiff applied for four airline jobs all in 2018, but otherwise did not seek paid employment.  App. 52-54 (Trial Tr. 1301:2-11, 1398:18-1402:20). This falls wells short of what mitigation requires.  *See, e.g.*, *Bogan v. MTD Consumer Grp., Inc.*, 2020 U.S. Dist. LEXIS 33550, at *9 (N.D. Miss. Feb. 27, 2020) (plaintiff failed to mitigate damages and was thus not entitled to front pay because during the four years following her termination . . . [plaintiff] only applied for approximately fifteen jobs"); *Hooker v. Victoria's Secret Stores, Inc.*, 2000 U.S. Dist. LEXIS 23779, at *4–5 (S.D. Miss. Aug. 28, 2000) (denying front pay because "submission of an average of one job application per month was insufficient to show that the claimant had attempted to mitigate her damages"). Indeed, Texas law requires people seeking unemployment benefits to engage in at least three work search activities – such as applying for jobs – *every week*.[11]  Yet the trial evidence demonstrates that Plaintiff only engaged in four attempts to gain equivalent employment over the course of five years.

---

[11] *Required Number of Work Search Activities by County*, Texas Workforce Commission, *available at* https://www.twc.texas.gov/jobseekers/required-number-work-search-activities-county; *Work Search Requirements for Unemployment Benefits*, Texas Workforce Commission, *available at* https://www.twc.texas.gov/jobseekers/work-search-requirements-unemployment-benefits.

Plaintiff's remaining post-termination conduct indicates that her focus was not on seeking comparable employment as the duty to mitigate requires. Rather, it was working in the non-profit education sector, where she held two unpaid positions after termination, and sporadically teaching Pilates. Plaintiff chose to leave the airline industry years ago when she decided to apply only for a handful of positions in one year, and after that focusing solely on other efforts to find employment. *See Bogan*, 839 F. App'x at 835 (denying plaintiff reinstatement and front pay because even "[t]hough she had not yet found full-time employment . . . she demonstrated a clear pursuit of [a] new path" by applying for positions in a new field). As such, Plaintiff's failure to mitigate is an additional basis to deny, or significantly reduce, any award of front pay.

C.      The Court should not award pre-judgment interest.

In her motion, Plaintiff seeks pre-judgment interest solely on the jury's back pay award. The Fifth Circuit has "not adopted a per se rule that requires prejudgment interest to be included" in an award of back pay. *Hadley*, 44 F.3d at 376 (affirming denial of prejudgment interest). An award of prejudgment interest "is merited when prejudgment interest is necessary to make a victim of discrimination whole." *See Palasota v. Haggar Clothing Co.*, 2005 U.S. Dist. LEXIS 1242, at *12–13 (N.D. Tex. Jan. 28, 2005) (denying pre-judgment interest where plaintiff was awarded liquidated damages under the Age Discrimination in Employment Act). For the same reason that front pay would constitute a windfall to Plaintiff, so would an award of pre-judgment interest. The jury awarded Plaintiff $600,000 in compensatory and punitive damages, the $300,000 statutory maximum against both Defendants, an amount far in excess of what Plaintiff would have earned had she remained employed. Therefore, an award of pre-judgment interest is not necessary to make Plaintiff whole.[12]

---

[12] To the extent the Court awards Plaintiff pre-judgment interest, such an award should be limited to the amount sought in Plaintiff's Motion. *See* ECF No. 351 at 10–11.

US_ACTIVE-168352879.17

**IV.     Plaintiff is Not Entitled to the Declaratory Relief Sought.**

The jury verdict does not entitle Plaintiff to declaratory relief restating the verdict.  *See Wojcik v. Costco Wholesale Corp.*, 2016 U.S. Dist. LEXIS 8652, at *18–19 (N.D. Tex. Jan. 26, 2016); *see also Google Inc. v. Beneficial Innovations, Inc.*, 2014 U.S. Dist. LEXIS 118587, at * 24–25 (E.D. Tex. Aug. 26, 2014) (stating that "jury's factual findings are not judicial declarations, in and of themselves").  Moreover, the Fifth Circuit has "recognized that a declaratory judgment may not serve a 'useful purpose' when a fact-finder has already settled the legal issue." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523–524 (5th Cir. 2016).  In *ExxonMobil Corp.*, the court explained that a decision to render a declaratory judgment should be guided by whether "(1) the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.*

In *Wojcik*, the plaintiff asked the court for declaratory relief for no other purpose than to restate the jury's verdict.  *See* 2016 U.S. Dist. LEXIS 8652, at * 19.  Finding that plaintiff was not seeking any forward-looking relief or any declaration of the parties' relationship, the court denied the plaintiff's request.  *See id.* at 19–20.  Likewise in *Google Inc.*, the plaintiff's request for declaratory relief was "an exact duplication of the jury's verdict."  2014 U.S. Dist. LEXIS 118587, at *24.  In that case, as the declaratory relief served no other purpose, the court denied the requested relief as redundant of the jury's verdict.  *See id.* at 24–25.

Here, Plaintiff provides no explanation as to why declaratory relief is necessary.  As with the declaratory relief requested in *Wojcik* and *Google Inc.*, the relief sought by Plaintiff essentially consists of a restatement of the jury's verdict.  As such, declaratory relief is unnecessary and redundant.  Accordingly, Southwest respectfully requests that Plaintiff's request for declaratory relief be denied.

US_ACTIVE-168352879.17

## V.     Plaintiff's Requested Injunctive Relief is Unnecessary.

Plaintiff's request for injunctive relief is neither necessary nor appropriate because Plaintiff has not alleged, and cannot show, that Southwest is likely to violate Title VII or the RLA in the future.  Injunctive relief is not necessary under Title VII absent a reasonable probability of future noncompliance with the statute.  *See EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 338 n.51 (5th Cir. 2012); *see also Armstrong v. Turner Indus.*, 141 F.3d 554, 563 (5th Cir. 1998) ("[T]o pursue an injunction or declaratory judgment, the [plaintiffs] must allege a likelihood of future violations of their rights by [the defendant], not simply future effects from past violations.").

Moreover, based on the record evidence, none of the requested injunctive relief is warranted.  Specifically, Plaintiff requests the Court: (1) enjoin Southwest from engaging in any of the activities that the Court declares and the jury found to be unlawful; (2) order Southwest to institute and carry out policies, practices, and programs which provide equal employment opportunities for Plaintiff and other employees; (3) order Southwest to post the Court's judgment and the jury's verdict on company bulletin boards for a 60-day period and email the judgement and jury verdict to all flight attendants; and (4) order Southwest to inform its flight attendants of their Title VII and RLA rights and Southwest's accommodation policy.

First, Plaintiff has made no allegations regarding any likelihood that Southwest might violate Title VII in the future.  There is also no evidence in the record that Southwest has any history of non-compliance with Title VII or the Railway Labor Act ("RLA") or that there is a reasonable probability of future violation of either law.  This case presented unique facts— involving a sitting union president complaining to management about one of the union's members, which has rarely if ever occurred at Southwest outside of this case—under which the Court could not determine as a matter of law that Southwest violated Plaintiff's rights and which required a

weeklong trial and three days of jury deliberation.[13]  The record evidence presented did not suggest any risk of future noncompliance with Title VII or the RLA that might warrant the type of sweeping injunctive relief requested by Plaintiff.

Plaintiff's first request—that the Court enter an injunction against activities the Court declares or the jury found to be unlawful—is unwarranted for several reasons.  First, Plaintiff lacks standing to request injunctive relief as to alleged harm to others.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that a plaintiff seeking injunctive relief must show she has sustained or will sustain direct injury as a result of violation.)  A plaintiff seeking injunctive relief must "allege a likelihood of future violations of their rights by [the defendant], not simply future effects of past violations."  *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). Second, as set forth above, there is no basis for declaratory relief, and the Court made no determination as to any unlawful practice by Southwest under either Tile VII or the RLA. Similarly, the jury did not find any ongoing practice, policy or conduct by Southwest to be unlawful such that it might be possible for the Court to fashion meaningful injunctive relief.  The jury simply found liability and awarded damages based on the decision five years ago to terminate Plaintiff's employment (for which an arbitrator independently found just cause).  As such, Plaintiff's request that the Court enjoin unspecified "unlawful activities" should be denied.  *See Perez v. Ohio Bell Tel. Co.*, 655 F. App'x 404, 411–412 (6th Cir. 2016) (discussing the impropriety of requests for injunctions that compel nothing more than obedience to existing law); *see also Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 898 (5th Cir. 1978) (holding "obey the law" injunctions are improper).

---

[13] *See* ECF No. 232 at 12–13 (holding a reasonable jury could side with either party on whether Southwest violated Title VII or the RLA).

US_ACTIVE-168352879.17

Plaintiff, likewise, does not have standing to seek her second request for injunctive relief. *See Armstrong*, 141 F.3d at 563.  Plaintiff's second vague request that the Court enter an injunction requiring Southwest to institute and carry out policies, practices, and programs that provide "equal employment opportunities" for Plaintiff and other employees is unnecessary because the trial record reflects that Southwest already has such policies in place.  *See* Trial Exhibits 7 and 11. There is no evidence in the record to support the notion that Southwest's current policies are insufficient or that there is a reasonable probability that Southwest currently does not or will not provide employees with equal employment opportunities in the future.  Furthermore, Plaintiff's non-specific request provides no indication of what particular equal employment opportunities any injunction might prohibit.  *See Payne*, 565 F.2d at 897 (stating that plaintiff's non-specific request "fails to satisfy the requirement that an injunction 'be specific in terms' and 'describe in reasonable detail . . . the act or acts sought to be [required] . . . .'" (citing FED. R. CIV. P. 65(d)(1)).

Again, Plaintiff lacks standing as to her third request for injunctive relief that Southwest institute and carry out policies and practices to eradicate the effects as she has made no allegation that she will be harmed in the future if the requested relief is not granted.  *See Gilbert v. Donahoe¸* 751 F.3d 303, 313 (5th Cir. 2014) ("In order to obtain an injunction, a plaintiff must demonstrate that she 'face[s] a realistic threat' of the defendant's policy harming her in the future.").  Plaintiff also lacks standing to seek injunctive relief on behalf of third parties.  *See James v. City of Dallas, Tex.*, 254 F.3d 551, 564 (5th Cir. 2012) (holding plaintiffs did not have standing to seek injunctive relief that only prevented future injuries to other individuals); *see also Armstrong*, 141 F.3d at 563 (affirming denial of injunctive relief for, among other reasons, plaintiff seeking injunctive relief on behalf of others where plaintiff did not represent a specific class of individuals for whom relief was sought).

US_ACTIVE-168352879.17

Moreover, Plaintiff's third request for injunctive relief related to past and present alleged unlawful employment practices is similarly unnecessary. Again, Plaintiff's request lacks specificity as to what "past and present unlawful employment practices" Plaintiff would have the Court enjoin, particularly given the lack of any evidence of any current or ongoing unlawful employment related practice by Southwest. To the contrary, the evidence in this case makes clear that the parties disagreed over the application of Southwest's policies to Plaintiff's unique behavior. There is no evidence that Southwest has a pattern or practice of engaging in unlawful employment practices. As a result, an injunction requiring Southwest to institute new policies to address unspecified employment practices is unwarranted.

Plaintiff does not even attempt to justify her request that Southwest be ordered to provide a copy of the Court's judgment and jury's verdict to *all* of its flight attendants and to post them on company bulletin boards for 60 days, nor provide any case law supporting her request. As with her other requests for injunctive relief, Plaintiff lacks standing to seek her final request for injunctive relief on behalf of herself or any other individual. *See Armstrong*, 141 F.3d at 563; *James*, 254 F.3d at 564. Moreover, such a requirement is unnecessary in light of the fact that both the Court's order and jury's verdict are publically available documents and because Southwest flight attendants are provided Southwest's policies—including Southwest's accommodation policy—which inform them of their rights and to which they have access throughout their employment with Southwest. *See* Trial Ex. 10.

Based on the evidence before the Court, there is no reasonable probability of further noncompliance with Title VII or the RLA by Southwest. As a result, not only does Plaintiff lack standing for the injunctive relief sought, but Plaintiff's requested injunctive relief is not warranted.

17

## VI.     Conclusion

Based on the foregoing, Southwest respectfully requests that entry of any compensatory and punitive damages award be capped at the statutory maximum of $300,000 and that all of Plaintiff's requested relief be denied.  Accordingly, Southwest further requests that judgment be entered as follows:

- Plaintiff is awarded $120,000 total in back wages from Defendants.

- Plaintiff is awarded $30,000 total in back benefits from Defendants.

- Plaintiff is awarded $300,000 in compensatory and punitive damages from Defendant Southwest Airlines, Co.

- Plaintiff is awarded $300,000 in compensatory and punitive damages from Defendant Transport Workers Union of America, Local 556.

- Plaintiff's request for reinstatement of employment is **DENIED**.

- Plaintiff's request for front pay is **DENIED**.

- Plaintiff's request for prejudgment interest is **DENIED**.

- Plaintiff's requests for declaratory relief are **DENIED**.

- Plaintiff's requests for injunctive relief are **DENIED**.

US_ACTIVE-168352879.17

Dated:  August 9, 2022                    Respectfully submitted,


                                          /s/ Paulo B. McKeeby
                                          Paulo B. McKeeby
                                          State bar No. 00784571
                                          Brian K. Morris
                                          State bar No. 24108707
                                          **REED SMITH LLP**
                                          2850 N. Harwood Street
                                          Suite 1500
                                          Dallas, Texas 75201
                                          Phone: 469-680-4200
                                          Facsimile: 469-680-4299
                                          pmckeeby@reedsmith.com
                                          bmorris@reedsmith.com


                                          **ATTORNEYS FOR DEFENDANT
                                          SOUTHWEST AIRLINES CO.**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 9th day of August, 2022.

                                          /s/ Paulo B. McKeeby
                                          Paulo B. McKeeby

US_ACTIVE-168352879.17