UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLENE CARTER,§§§§ Plaintiff, §§ V. §§ SOUTHWEST AIRLINES CO., AND § TRANSPORT WORKERS UNION OF § AMERICA, LOCAL 556, §§§§ Defendants. §§§§§ | CIVIL CASE NO. 3:17-CV-02278-X |

**DEFENDANT LOCAL 556'S BRIEF IN RESPONSE
TO PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

### I.   INTRODUCTION

Pursuant to this Court's July 19, 2022 Order,[1] Defendant Transport Workers Union of America, Local 556 ("The Union" and/or "Local 556"), files this response to Plaintiff's Motion for Entry of Judgment. First and foremost, The Union requests this Court require Plaintiff to specifically move for the relief sought under each damage category, for each cause of action, against each Defendant. Second, the Union requests that the Court negate the findings of monetary liability against the Union in the form of Frontpay and Backpay, as the Union has no control over the terms and conditions of Plaintiff's employment and no evidence exists to find joint enterprise. The Union further requests the Court to properly apply the Title VII damage caps regarding

---
[1] Doc. No. 349

compensatory and punitive damages based on the number of individuals employed by the Union. Finally, The Union requests the Court deny Plaintiff's requests for injunctive relief as they are not commensurate principles of equitable relief.

## II.     ARGUMENT AND AUTHORITY

### A. The Union Needs a more Specific Request to Accurately Respond to Plaintiff's Motion for Entry of Judgement

The question of apportionment of damages in this matter is muddled as none of the Statutes involved in the finding of liability provide for joint and several liability. Plaintiff now asks that the Court enter judgment for damage awards that do not contain sufficient specificity to be further litigated through post judgment motions and potentially appeal.

Specifically, Plaintiff requests that the jury's $250,000 non-economic finding against the Union, along with the $300,000 punitive finding be reduced to $300,000 total against Local 556. Plaintiff does not assert, much less support with argument, which portion of that $300,000 they think should come from the punitive finding and which portion properly derives from the non-economic compensatory finding. As such this Court should require Plaintiff to specifically move for the relief sought under each damage category, for each cause of action, against each Defendant.  Only then can the propriety of the damage awards be evaluated against the case law governing those specific types of damage awards.

If Plaintiff's do not, the Court is now placed in the position of apportioning the following categories of damages as follows:

- Backpay: $120,000 in lost wages and $30,000 in lost benefits

- Frontpay: $200,000 for front pay (advisory award)

- Compensatory and Punitive Damages
    - $250,000 for past pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life caused by Southwest's and Local 556's Title VII violations

- - $250,000 for future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life caused by Southwest's and Local 556's Title VII violations
  - $300,000 for punitive damages from Local 556 for its Title VII violations
  - $3,500,000 for punitive damages from Southwest for its Title VII violations

- Injunctive and Declaratory Relief

## B. Actual Damages – Backpay and Frontpay

### 1. Backpay and FrontPay should not be awarded against the Union as they have no control over the terms and conditions of Plaintiff's Employment

To address the matter simply, The Union has no ability to control the terms and conditions of Plaintiff's employment, neither termination nor reinstatement, and should not be responsible for these category of damages. This Court should not enter a damage's judgement against the Union because the Jury did not find a joint enterprise and the Plaintiff made clear "we don't allege any sort of conspiracy theory,"[2] In the context of Title VII, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employed."[3] "Over the past decade, numerous courts have drawn upon theories and rules developed in the related area of labor relations in determining when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities."[4]

The trial record further provides that Defendant Southwest made the sole decision to terminate Plaintiff, with no input from the Union. Indeed, the evidence submitted at trial supports that the Union represented Plaintiff post termination and was able to successfully negotiate her reinstatement, offered by Southwest, to which Plaintiff rejected. Furthermore, based on Plaintiff's

---

[2] Trial. Vol. 4 p. 1150, lns: 18-19.
[3] *Trevino v. Celanese Corp.,* 701 F.2d 397, 404 (5th Cir. 1983).
[4] *Id.* at 403.

working history prior to and after termination, the trial record does not support a finding of backpay in the amount determined by the jury.

   2. **Frontpay should <u>not</u> be awarded against the Union as they have no control over the terms and conditions of Plaintiff's Employment and should not be held accountable for Southwest's opposition to Plaintiff's reinstatement.**

Plaintiff is seeking reinstatement with restoration of full seniority and benefits. As noted above, The Union does not have the ability to control the terms and conditions of Plaintiff's employment with Defendant Southwest Airlines, nor is it making argument to prevent her reinstatement. Hiring and firing decisions are made by Southwest Airlines. Assuming, *arguendo*, that Defendant Southwest will contend that reinstatement is unavailable as there is animosity and discord between the employee and employer, the Union should not be held financially accountable for this decision.[5] Furthermore, based on Plaintiff's working history prior to and after termination, the trial record does not support a finding of Frontpay in the amount determined by the jury.

C. **Compensatory and Punitive Damages**

   1. **Compensatory and Punitive Damages are not supported by the evidence, but are nevertheless capped under Title VII by the number of people employed by the Union.**

Section 1981A(a)(1) provides that a complaining party may recover compensatory and punitive damages against a respondent who has engaged in unlawful intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq. However, Plaintiff improperly argues that the damage caps for Unions should be based on the number of members as opposed to the number of their employees.

As of July 14, 1992, the Equal Employment Opportunity Commission ("EEOC"), Office of Legal Counsel issued "Enforcement Guidance: Compensatory and Punitive Damages Available

---

[5] *Brunneman v. Terra Int'l, Inc.*, 975 F.2d 175, 180 (5th Cir. 1992).

under § 102 of the Civil Rights Act of 1991. The EEOC specifically addressed the issue of the caps being computed based on "employees v. members" in "II. Types and Extent of Recovery," as follows:

> "The limitations do not, on their face, apply to respondents who have fewer than fifteen employees, although labor organizations and employment agencies with fewer than fifteen employees may be subject to Title VII. (citing to footnote 7) Thus, a literal interpretation of the provision would potentially subject them to unlimited damages. Such an interpretation would be inconsistent with Congress' clear intent to spare small respondents from large damage awards. The provision could also be read to mean that labor organizations and employment agencies with fewer than fifteen employees are not subject to any damages. The Commission rejects both interpretations and concludes that all covered employment agencies and labor organizations with 100 or fewer employees are subject to the $50,000 cap on damages."

Footnote "7" provides us further incite:

> "Labor organizations need only operate a hiring hall which procures employees for an employer or have fifteen members to be covered by Title VII. See 42 U.S.C. § 2000e(e). … Basing a union's damage caps on its number of employees, rather than on the number of its members, may have been a drafting error. However, since § 1981A(b)(3) specifically refers to the number of "employees," and since that is not inconsistent with the provision's purpose, the Commission interprets the statute to mean that the caps relate to the number of a union's employees, rather than to the number of its members."

The clear and plain language of the Statute necessitates that the damages caps be assessed based on the number of Union employees.

Ignoring the EEOC's guidance on the issue, Plaintiff asserts that the Union should be subjected to the top tier of non-economic and punitive damage caps allowable under Title VII. For this proposition, Plaintiff cites a case coming from the Southern District of Texas, citing the Eighth

Circuit.[6] In both cases, the Courts rejected arguments made by the respective Union litigants that Title VII erects a complete bar to non-economic recovery against any union with less than fifteen employees. In *Dowd*, the Eighth Circuit held that a Unions liability for compensatory and punitive damages was not capped at zero, affirming a $20k punitive damage award as it was "well within the lowest tier ($50,000) specified by the statute." While both cases discussed the number of members in the respective Unions as persuasive in deciding against a total cap, neither case made the broad holding on which Plaintiff's Motion attempts to rely. Furthermore, the deference due to the Agency's interpretation—along with the equitable considerations—all support the conclusion that the Union's exposure for punitive and compensatory damages be capped at $50k, as they have well less than 100 employees.[7]

### 2. Compensatory and Punitive damages should also be apportioned jointly and severally.

If damages against Defendants Union and SWA are being apportioned jointly and severally, as propounded by the Court and requested by the Plaintiff, so should the assessment of compensatory and punitive damages. Assuming, *arguendo*, that the Union's compensatory and punitive damages are not capped at $50,000.00, as argued above, Defendants should also jointly have compensatory and punitive damages capped at $300,000.00, and then apportioned based on a ratio tied to the juries respective finding of damages; $800,000/$4,000,000 or 1/5.

Finally, the trial record is devoid of evidence, outside of Plaintiff's own testimony, that supports a finding of damages for compensatory damages. The record is absent of doctors' records or expert testimony.

---

[6] *See Stelly v. Gulf mar; Dowd v. United Steel workers.*
[7] Affidavit of Michael Massoni.

**D. Injunctive and Declaratory Relief**

Plaintiff improperly requests the Court to "enjoin" the Union from engaging in the illegal activity found by the jury as well as obey the law moving forward by adhering to the provisions of "equal [opportunity employment]". While Title VII does afford the Court latitude in dispensing equitable relief, "command[s] to obey the law [are] overbroad under general equitable principles."[8] Additionally, Plaintiff's request for injunctive relief should be denied as Plaintiff has not alleged, and cannot show, that the Union is likely to violate Title VII or the RLA in the future. Injunctive relief is not necessary under Title VII absent a reasonable probability of future noncompliance with the statute.[9] As such, the Court should deny Plaintiff's requested relief.

### III.   CONCLUSION

For the aforementioned reasons, the Union requests the Court withhold entering judgment until Plaintiff can specifically and properly apportion damages to the respective parties.

The Union further prays this Court (1) negates the findings of monetary liability against the Union in the form of Frontpay and Backpay, (2) properly applies the Title VII damage caps regarding compensatory and punitive damages based on the number of individuals employed by the Union, and (3) deny Plaintiff's requests for injunctive relief as they are not commensurate principles of equitable relief.

---

[8] *See Swift & Co.,* 196 U.S. at 396, 25 S.Ct. 276; *Beatty,* 191 F.2d at 321.
[9] *See* EEOC v. Serv. Temps Inc., 679 F.3d 323, 338 n.51 (5th Cir. 2012); see also Armstrong v. Turner Indus., 141 F.3d 554, 563 (5th Cir. 1998) ("[T]o pursue an injunction or declaratory judgment, the [plaintiffs] must allege a likelihood of future violations of their rights by [the defendant], not simply future effects from past violations.").

Dated: August 9, 2022                                      Respectfully submitted,

*/s/ Edward B. Cloutman, III*_____                       */s/ Adam S. Greenfield*_____
Edward B. Cloutman, III                                    Adam S. Greenfield
State Bar No. 04411000                                     State Bar No. 240 754 94
ECLOUTMAN@LAWOFFICES.EMAIL                                 AGREENFIELD@CANDGLEGAL.COM

Law Offices of Ed Cloutman, L.L.C.                         Cloutman & Greenfield, PLLC
618 Largent Ave.,                                          6217 Bryan Parkway
Dallas, TX 75214                                           Dallas, TX 75214
Phone 214.232.9015                                         Phone 214.642.7486

**ATTORNEYS FOR DEFENDANT TWU LOCAL 556**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 9th day of August, 2022.

*/s/ Adam S. Greenfield*_____
Adam S. Greenfield