UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556'S RESPONSE TO HER MOTION FOR ENTRY OF JUDGMENT ON THE JURY'S VERDICT AND FURTHER RELIEF**

Pursuant to this Court's July 19, 2022 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, files her Reply to Transport Workers Union of America Local 556's ("Local 556") Response to Carter's Motion for Entry of Judgment on the Jury's Verdict and Further Relief, including reinstatement, prejudgment interest, and declaratory and injunctive relief.

**ARGUMENT AND AUTHORITIES**

**I. The Court should award back pay and any front pay jointly and severally from Local 556 and Southwest.**

**A. The RLA and Title VII make Local 556 jointly and severally liable with Southwest for back pay and any front pay awards.**

Contrary to Local 556's arguments, the union is jointly and severally liable for back pay and front pay because it violated Carter's RLA and Title VII rights and breached the duty of fair representation.[2] The jury found Local 556 and Southwest jointly and severally liable for RLA and

---

[1] Dkt. No. 349.
[2] Dkt. No. 348, pp.1-7.

1

Title VII violations,[3] and that they both caused the same, undifferentiated amounts of lost wages,[4] compensatory damages,[5] and lost front pay.[6] While Local 556 argues that the Court should require Carter to move for relief sought under each damage category, for each cause of action, and against each defendant,[7] the jury gave the Court guidance on how to award damages, and Carter's motion sets forth the defendants' respective liabilities.[8]

Despite Local 556's arguments,[9] well-established authority authorizes the court to award back pay and front pay for the union's Title VII, RLA, and DFR violations. Title VII authorizes the Court to award back pay and front pay[10] "payable by the … labor organization … responsible for the unlawful employment practice."[11] The jury decided that Local 556 violated Carter's Title VII rights by committing the following "unlawful employment practices": (1) "causing or attempting to cause her discharge" because of her religious beliefs;[12] (2) "treating her less favorably than other employees" because of her religious beliefs;[13] and (3) "unlawfully fail[ing] to accommodate" her religious beliefs and practices.[14]

---

[3] Dkt. No. 348, pp.3,8 (RLA liability); pp.5-7,11 (Title VII liability).
[4] Dkt. No. 348, p.13 (L556), p.24 (SWA).
[5] Dkt. No. 348, p.14 (L556), p.25 (SWA).
[6] Dkt. No. 348, p.23 (L556), p.32 (SWA).
[7] Dkt. No. 357, p.2.
[8] Dkt. No. 351, pp.6-8.
[9] Dkt. No. 357, p.3, 4.
[10] Title VII's statutory text authorizes courts to "order such affirmative action as may be appropriate," which includes front pay awards. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 853-54 (2001).
[11] 42 U.S.C. 2000e-5(g)(1).
[12] Dkt. No. 348, p.5; 42 U.S.C. § 2000e-2(c)(3) (declaring "[i]t shall be an unlawful employment practice" for a union to cause or attempt to cause an employer to discriminate against an individual based on her religion).
[13] Dkt. No. 348, p.6; *see also* 42 U.S.C. § 2000e-2(c)(1) (declaring "[i]t shall be an unlawful employment practice" for a union to discriminate against any individual because of her religion).
[14] Dkt. No. 348, p.7; *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772, 772 n.2, 775 (2015); *Cooper v. General Dynamics*, 533 F.2d 163, 171-72 (5th Cir. 1976) (union failure to accommodate); *see also* 42 U.S.C. § 2000e(j).

Notwithstanding the jury's verdict to the contrary, Local 556 continues to argue that Southwest, not the union, made the sole decision to terminate Carter.[15] While Local 556 also argues that it "has no ability to control" Carter's terms and conditions of employment, the union is the exclusive bargaining representative for all Southwest flight attendants, and negotiates the terms and conditions of their employment.[16] In any event, the question is not who controls Carter's terms and conditions of employment, but who caused her damages, and the jury found that both Local 556 and Southwest caused Carter's damages. Finally, Local 556 argues that the jury "did not find a joint enterprise," suggesting that, without such a finding, the union does not violate Title VII and cannot be liable for damages.[17] Title VII imposes distinct statutory grounds for the union's liability, none of which requires the union to be part of a joint enterprise.[18]

Carter showed—and the jury found—that Local 556 is jointly and severally liable for reinstatement and back pay and for causing her termination and other damages by retaliating against her RLA-protected rights, discriminating against her religious beliefs in violation of Title VII, and breaching the DFR.[19] Local 556 is jointly and severally liable for reinstatement such that, if the Court does not grant reinstatement, the union is liable with Southwest for front pay.[20]

---

[15] Dkt. No. 357, p.3 (*but see* Dkt. No. 348, pp.1-7).
[16] Dkt. No. 343, p.4, ¶¶3-4; Dkt. No. 357, pp.3, 4.
[17] Dkt. No. 357, p.3.
[18] *See* 42 U.S.C. § 2000e-2(c)(1), (3), and § 2000e(j) (failure to accommodate); *See also Cooper*, 533 F.2d at 171-72.
[19] *See Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 102-03 (3d Cir. 1968) (affirming district court's awards of reinstatement and back pay and that employer and union had joint liability for RLA violations). *See also* Dkt. No. 351, p. 9, 9 nn.16, 21 (citing *Texas & N.O.R. Co. v. Bhd. of Ry. & S.S. Clerks,* 281 U.S. 548, 569-70 (1930); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 206-07 (1944); *Vaca v. Sipes*, 386 U.S. 171, 196 (1967); *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 66 (1992)).
[20] *See Peterson v. Air Line Pilots Ass'n*, 622 F. Supp. 232, 237 (M.D.N.C. 1985).

**B. The Court should award $150,000 in back pay against Local 556 and Southwest jointly and severally in accordance with the jury's verdict.**

The Court should award $150,000 in back pay against Local 556 jointly and severally with Southwest in accordance with the jury's verdict. Without argument or relevant authority, Local 556 asserts that the trial record does not support the jury's back pay award.[21] The Court has instructed the parties not to include such judgment as a matter of law issues in this briefing.[22] Nevertheless, Carter presented evidence, including W2s and testimony, supporting the back pay award.[23] Local 556 fails to explain or show why the record does not support the award or why the Court should not convert that award to a judgment.

**C. The Court should award Carter reinstatement, but, if not, the Court should instead award front pay against Local 556 and Southwest jointly and severally.**

Local 556 fails to address Carter's demand for front pay in lieu of reinstatement. Without argument or any relevant authority, Local 556 asserts that it should not be financially accountable for its unlawful acts.[24] While Local 556 cites *Brunneman v. Terra International, Inc.*,[25] for the proposition it should not be liable for front pay, that case has nothing to do with front pay or unions. Local 556 does not attempt to argue its relevance.[26] Nor does Local 556 make an argument or offer authorities explaining its assertion that the record does not support the jury's front pay award.[27]

Carter showed that front pay award factors[28] support a $900,000 front pay award as well as the jury's $200,000 front pay award: Carter's age (56), her ability to immediately resume flying a full

---

[21] Dkt. No. 357, pp.3-4.
[22] Dkt. No. 349, p.1 n.1.
[23] Trial Tr. 1304:5-19; 1475:11-1476:3; 1476:10-24; Tr. Ex. 42, 130.
[24] Dkt. No. 357, p.4. Dkt. No. 357, pp.4, 4 n.5.
[25] 957 F.2d 175, 180 (5th Cir. 1992).
[26] Dkt. No. 357, pp.4, 4 n.5.
[27] Dkt. No. 357, p.4.
[28] *See Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) ((1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the employee's age and

line of 80-100 trips per month (earning $80,000-$100,000 per year) for 9 years, the nature of flight attendants to work long careers, and her 21 years of employment at Southwest without discipline.[29] Carter flew fewer hours in the 3 years prior to her termination, in accordance with her rights under Southwest's CBA,[30] due to her need to stay at home and take care of her daughter.[31] Carter testified that her daughter has now graduated and she is ready to return immediately to work and fly a full line, earning $80,000-$100,000 each year, excluding benefits. This also explains why the jury did not limit the front pay award like the back pay award.[32] Having heard Carter's testimony that she could now earn $80,000-$100,000 per year, the jury likely awarded 2-3 years of front pay considering adjustments provided for in the jury instructions.[33]

## II. Compensatory and Punitive Damages

### A. Proper construction of Title VII's text demonstrates that the statute caps the union's compensatory and punitive damages at $300,000.

Contrary to Local 556's argument,[34] Title VII caps Local 556's compensatory and punitive damages at $300,000. Courts should interpret words according to their content and in furtherance of the statutory purpose—here to allow damages within certain limits.[35] "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."[36]

---

physical condition, and (5) other non-discriminatory factors affecting the employer/employee relationship.).

[29] *See Junaid v. McHugh*, Civil Action No. 2:11-CV-00226, 2013 WL 321567, at *2 (S.D. Tex. Jan. 28, 2013) (applying relevant factors for determining front pay); *see also* Dkt. No. 351, p.14.
[30] Trial Tr. 1676:3-17.
[31] Trial Tr. 1302:12-1304:19.
[32] Dkt. No. 351, pp.14-15; Trial Tr. 1302:12-1304:19.
[33] Dkt. No. 343, pp.23-24; Dkt. No. 348, pp.23, 32.
[34] Dkt. No. 357, pp.4-5.
[35] *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1100 (8th Cir. 2001).
[36] *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022) (citation omitted); *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

Section 1981a(b)(3)(A) defines "respondent" just as 42 U.S.C. § 2000e(n) does—as "an employer, employment agency, labor organization," etc. When defining respondent unions' punitive damages caps under § 1981a(b)(3), the words "respondent's employees" must mean the union's employee *members*. "It makes no sense to use the numbers of employees as the criterion for damages caps in union cases, when the very question whether the statute covers a given union turns on numbers of members."[37] While Congress might choose to use the union's number of employees to cap compensatory and punitive damages, there is no evidence that it has done so when the statute subjects unions to all of its requirements based on its number of members.[38] This construction is also consistent with how Title VII's jurisdictional provision corresponds with the punitive damage caps for employers.[39]

The Court should also reject Local 556's interpretation because it would contradict the statutory design and purpose to cap punitive damages based on a "respondent's" size and resources. Congress designed statutory limitations on compensatory and punitive damages according to the employer's size and resources, and "[t]he best way to determine an employer's size is to ascertain the number of employees it has."[40] However, the union's number of employees "is an inaccurate gauge of its size and resources, as Congress itself recognized in describing what labor unions would be subject to Title VII."[41] The union's number of dues and fee-paying members is the true indication of its size and resources.[42]

---

[37] *Dowd*, 253 F.3d at 1100.
[38] *Id.*
[39] *See* Dkt. No. 351, p.2.
[40] *Dowd*, 253 F.3d at 1100.
[41] *Id.*
[42] *Id.*

Local 556 points to an EEOC guideline that interprets the statute to cap the union's punitive damages based on its number of employees since "§ 1981a(b)(3) specifically refers to number of 'employees,'"[43] That hyper-technical interpretation is inconsistent with the overall statutory scheme and design, especially considering that it is the union's number of members that determines whether the union is covered by Title VII in the first place.

Contrary to Local 556's assertions,[44] EEOC guidelines do not warrant deference. "Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations."[45] While this does not mean that EEOC guidelines are not entitled to any consideration, courts may properly accord less weight to such guidelines and need not defer to them, especially, as here, where they are inconsistent with the statute they interpret. This Court should follow the Eighth Circuit and decline not to defer to the EEOC's interpretation of § 1981a(b)(3) because it is inconsistent with Title VII's overall statutory scheme, design, and purpose.

Congress amended 42 U.S.C. § 1981 "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace."[46] Title VII applies only to employers with 15 or more employees. Thus, every employer covered by Title VII can be liable for at least some amount of compensatory and punitive damages under 42 U.S.C. § 1981a(b)(3)(A). Local 556's interpretation of the statute would create the anomalous result of having a labor union with few employees liable under Title VII, but unlike every employer covered by Title VII, exempt

---

[43] *See* EEOC Policy Document 915.002, CCH–EEOCCM ¶ 2062, n. 7 (July 14, 1992).
[44] Dkt. No. 357, p.6 (asserting "the deference due to the Agency's interpretation").
[45] *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431 (1975)); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also West Virginia*, 142 S. Ct. at 2609 ("Agencies have only those powers given to them by Congress.").
[46] Civil Rights Act of 1991, Pub. L. No. 102-166, § 3.

from any compensatory and punitive damages liability.[47] Likewise, under Local 556's interpretation of § 1981a(b)(3), unions with few employees but thousands of members would be subject to Title VII's prohibitions against discrimination, but could intentionally discriminate with impunity against employees and with immunity from punitive damages' deterrent function.

### B.  The Court should not apportion compensatory and punitive damages.

The Court should not apportion compensatory and punitive damages because Local 556 is jointly and severally liable with Southwest for compensatory damages, and solely liable for $300,000 in punitive damages.[48] The Court should not apportion punitive damages because its jury instructions instructed the jury to make separate punitive damages awards for Local 556 and Southwest, and the jury did, in fact, make separate punitive awards against them.[49]

Contrary to Local 556's arguments,[50] the Court does not have to apportion compensatory damages because Local 556 is jointly and severally liable with Southwest for damages. The Court instructed the jury to determine Southwest's and Local 556's liability, and the jury did, deciding the compensatory damages the Defendants caused.[51] Contrary to Local 556's arguments,[52] Carter's evidence and testimony supported the jury's compensatory damages award.[53] Despite Local 556's objections, compensatory damages awards do not require doctor's records or expert testimony.[54]

---

[47] *Dowd*, 253 F.3d at 1100 ("We do not believe it was Congress's intent to treat labor unions and employers so disparately.").
[48] Dkt. No. 357, p.2.
[49] Dkt. No. 348, pp.16, 27 ("What sum of money should be assessed against Defendant Local 556/Southwest as punitive damages against Local 556/Southwest.").
[50] Dkt. No. 357, p.6.
[51] Dkt. No. 348, p.14 (L556); p.25 (SWA).
[52] Local 556 does not make any argument or cite any authorities to explain its assertion that the trial record does not support the jury's compensatory damages award. Dkt. No. 357, p.6.
[53] Tr. Ex. 126-129; Trial Tr. 1296:6-1298:7, 1300:2-1301:1, 1306:7-25
[54] *See DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007).

In any event, the place for such objections would be in a motion for judgment as a matter of law, and the Court has instructed the parties not to include such issues in this briefing.[55]

### III. Injunctive Relief

Carter does not need to prove that the union is likely to violate the RLA or Title VII in the future for the Court to award injunctive relief because (1) Carter *already* sustained an injury with *continuing* effects and (2) Local 556 has the burden to prove that it is unlikely to violate the RLA and Title VII in the future.[56] To obtain injunctive relief, a plaintiff must "show that he '*has sustained* or is immediately in danger of sustaining some direct injury' as the result of the challenged … conduct."[57] Carter's loss of employment is a direct and continuing injury—she remains unemployed because Southwest and Local 556 caused her termination. The Court should award injunctive relief against Local 556 because its unlawful conduct invaded Carter's "legally protected interests,"[58] and the termination continues to prevent Carter from working.

Even if the Court awards reinstatement, there remains a real and immediate threat that Southwest and Local 556 could violate Carter's rights again.[59] Local 556 has the burden to demonstrate that it will not engage in prohibited conduct in the future.[60] "Past wrongs [are] evidence bearing on 'whether there is a real and immediate threat of repeated injury.'"[61] The

---

[55] Dkt. No. 349, p.1 n.1.
[56] Dkt. No. 357, p.7.
[57] *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis added).
[58] *See James v. City of Dallas*, 254 F.3d 551, 564 (5th Cir. 2001).
[59] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (citation and internal punctuation omitted).
[60] *See EEOC v. Serv. Temps. Inc.*, 679 F.3d 323, 338, 338 n.51 (5th Cir. 2012); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) ("[A]bsent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory."); *EEOC v. Rogers Bros., Inc.*, 470 F.2d 965, 966-67 (5th Cir. 1972) (per curiam); *see also id.* ("The burden of negating that probability lies with the defendants.").
[61] *Lyons*, 461 U.S. at 102 (citation omitted).

continued threat of interference with her RLA and Title VII protected rights "demonstrate the likelihood of real and immediate future injury."[62]

## CONCLUSION

For the foregoing reasons, the Court should award Carter reinstatement, prejudgment interest, declaratory and injunctive relief, and the other relief as requested herein and in her opening motion and brief.

Dated: August 16, 2022                     Respectfully submitted,


/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

---

[62] *James*, 254 F.3d at 564.

## Certificate of Service

I hereby certify that on August 16, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam