UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>　　　　　　Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO SOUTHWEST AIRLINES CO.'S RESPONSE TO HER MOTION FOR ENTRY OF JUDGMENT**

Pursuant to this Court's July 19, 2022 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, files her Reply to Southwest Airlines Co.'s ("Southwest") Response to Carter's Motion for Entry of Judgment on the Jury's Verdict and Further Relief, including reinstatement, prejudgment interest, and declaratory and injunctive relief.

**ARGUMENT AND AUTHORITIES**

**I. The Court should award reinstatement.**

　**A. Carter's social media activities, union opposition, and sharing trial transcripts do not show irreparable damage to her employment relationship with Southwest.**

The Court should award Carter reinstatement because Southwest's complaints regarding her social media activities, continued union opposition, willingness to provide trial transcripts to current and former flight attendants, and activities related to the litigation, have nothing to do with the employment relationship. To deny reinstatement, there must be irreparable damage to the

---

[1] Dkt. No. 349.

1

employment relationship, which means "more than the friction that typically results from litigation or the employee's termination."[2] Hostility regarding the unlawful conduct and litigation do not constitute irreparable damage to the employment relationship.[3] "If the hostility common to litigation were sufficient for 'denial of reinstatement, reinstatement would cease to be a remedy except in cases where the defendant felt like reinstating the plaintiff."[4]

Despite Southwest's arguments,[5] Southwest managers involved in Carter's termination—Schneider, Sims, and Jones—acknowledged that Carter was a good employee, and never disciplined her during her career.[6] Schneider himself admitted his decision was "definitely heavy-handed."[7] As the jury also concluded, Southwest did not fire Carter for any reason apart from her RLA-protected activity.[8] The Court should further reject Southwest's suggestion that reinstatement is inappropriate because its managers might still harbor retaliatory and discriminatory animus against Carter.[9] Southwest should remedy any such unlawful conduct, and comply with the RLA and Title VII.[10]

While Southwest complains about Carter's social media activities, the company publicly states that it respects employees' rights to express their opinions, and thus admits that those opinions do not impact the employment relationship. Following the trial, Southwest declared in the media that it "has a demonstrated history of supporting [its] employees' rights to express opinions when done

---

[2] *Bogan v. MTD Consumer Grp. Inc.*, 919 F.3d 332, 339 (5th Cir. 2019).
[3] *Id.* at 338; *Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995).
[4] *Bogan*, 919 F.3d at 338 (citation omitted).
[5] Dkt. No. 355, pp.10-11.
[6] Dkt. No. 351, pp.12-13.
[7] Trial Tr. 1141:17-22.
[8] Dkt. No. 348, pp.8-11.
[9] DKt. No. 355, p.11.
[10] *Bogan*, 919 F.3d at 339. Dkt. No. 355, p.11.

in a respectful manner."[11] Thus, when Local 556's Executive Board openly opposed Senior VP of Inflight, Sonya Lacore, over matters arising in this litigation[12] Southwest did not claim that flight attendants on the Executive Board and the employees they represent are not fit for employment.

Carter linking a news report on her personal Facebook page about the litigation, and posting "this is what they did to me and others"[13] is no different. Carter's references to the union's and company's unlawful conduct at issue in the litigation is not "irreparable discord" in the employment relationship.[14] Southwest says it supports employees' rights to express their opinions, which is what Carter has done. Carter's post also reflects admiration for the company and its former CEO.[15] While Carter explains her opinion about why things changed and how they were different five years ago under former CEO Gary Kelly's leadership, she states clearly that she hopes they know that she is *fighting for* "the LUV Airline."

Likewise, Southwest objected to Carter's social media posts that involve her political opinions and religious beliefs,[16] but those are unrelated to Southwest and do not affect the employment relationship. Contrary to Southwest's characterizations,[17] Carter did not cheer on class action litigation against Southwest. Carter voiced support for Southwest pilots (and SWAPA, the Southwest pilots' union) and flight attendants protesting Southwest's vaccine mandate, linked a report about the protest, and expressed her opinion that Southwest management deserves criticism

---

[11] The Daily Wire, https://www.dailywire.com/news/flight-attendant-wins-millions-after-southwest-fires-her-for-being-pro-life-a-victory-for-freedom-of-speech, July 17, 2022 (last visited Aug. 16, 2022).
[12] *See* Carter App. in Support of her Reply, Ex. 1.
[13] Dkt. No. 355, p.8; Dkt. No. 356 1, Ex. C, App.22.
[14] *Bogan*, 919 F.3d at 339.
[15] Dkt. No. 355, p.8; Dkt. No. 356 1, Ex. C, App.22.
[16] Dkt. No. 355, p.9 n.5.
[17] Dkt. No. 355, p.8.

for their position.[18] Like the Southwest pilots and flight attendants who opposed the company's mandate, Carter did not engage in "hostility" towards the company.

Contrary to Southwest's characterizations, sharing trial transcripts with current and former Southwest employees gives them information about the litigation and the jury's decision. While Southwest objects to a Facebook forum created by current and former flight attendants to discuss the litigation, Carter did not start the Facebook group, and did not use the group "as a platform to make accusations" about Southwest or its leaders.[19] Court proceedings are matters of public concern, and the jury's decision directly affects flight attendants' rights and interests.[20] Carter's communications with flight attendants on Facebook never exhibited hostility towards the company and did not affect the employment relationship.[21]

Carter is not hostile towards Southwest flight attendants.[22] Southwest's real objection is to Carter's opposition to union officers, namely former President Stone, and union policies. Carter linked a news article discussing Local 556 officers' animus towards her RLA-protected activities, but that is not hostility towards the company or its employees.[23] With the exception of former

---

[18] Dkt. No. 356-1, Ex. E, App.32; "Southwest Airlines Employees Hold the Line: Freedom Not Force in Dallas, TX 10/18/21," Right Side Broadcasting Network, https://rumble.com/vnwj2r-southwest-airlines-employees-hold-the-line-freedom-not-force-in-dallas-tx-1.html (last visited Aug. 16, 2022).
[19] Dkt. No. 355, p.9.
[20] *See e.g., United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).
[21] Dkt. No. 356-1, Ex. G, Apps.36-37, 39-40, 42-46; Dkt. No. 355, p.9, 9 n.6. A *former* employee made the Facebook group post "#FireThemAll". Dkt. No. 355, p.9, 9 n.7.
[22] Dkt. No. 355, p.11.
[23] Southwest objects that this news article, containing a document with union officers' official email addresses, might cause "harassment campaigns" against "Southwest employees" (i.e., union officials), but these email addresses have been widely available to Southwest's 17,000 flight attendants for years, and have been available in unredacted form for months on the court's public docket. *See* Dkt. No. 226-7 (App.89). Similarly, the "targeted assassination" emails, also included in the article, were trial exhibits admitted into evidence without redaction at trial. Trial Tr. 400:9-401:2; 405:8-406:11; Tr. Ex. 141

union officers who operate out of different bases, Southwest failed to point to a single flight attendant among approximately 17,000, who has a conflict with Carter.

Carter's RLA-protected activities are not a basis for denying reinstatement.[24] Yet, Southwest suggests that the Court should deny reinstatement because Carter made social media posts objecting to how the union spends forced dues. Southwest argues that Carter could send "union leaders graphic and upsetting videos and images much like the abortion videos."[25] But, as the jury found, that is her right.[26] Southwest also objects to Carter's Facebook posts about her religious beliefs,[27] but further religious discrimination cannot be grounds for denying reinstatement. Consistent with the jury's verdict, Southwest cannot continue to deprive Carter of her job based on its animus for her protected rights.[28] The Court should reject Southwest's continued efforts to deprive Carter of her career based on the same unlawful motives that harmed her in the first place.

### B. Carter did not change careers.

Contrary to Southwest's characterizations,[29] Carter never changed careers. Carter started work to organize an educational nonprofit in January 2017, before Southwest fired her.[30] Instead, Carter has explained her readiness to resume her career as a flight attendant immediately.[31]

### C. The arbitration is irrelevant to Carter's RLA and Title VII remedies.

The Court should also reject Southwest's renewed attempt to hide behind the arbitrator's "just cause" decision and evade the RLA's and Title VII's requirements to make Carter whole for

---

[24] Dkt. No. 355, pp.7-8.
[25] Dkt. No. 355, p.10 (citing App.51 (Tr. 1262:2-20); App.50 (Tr. 812:6-814:6)).
[26] Dkt. No. 343, pp.11-19; Dkt. No. 348, pp.8-12.
[27] Dkt. No. 355, p.10; Dkt. No. 356-1, Ex. B, App.14, 20; Dkt. No. 356-1, Ex. F, App.34.
[28] Dkt. No. 348, 2-12.
[29] Dkt. No. 355, p.17.
[30] Trial Tr. 1399:6-23.
[31] Dkt. No. 351, pp.10-11, 14-15.

5

unlawfully firing her.[32] Whether Southwest had just cause to fire Carter under the CBA is irrelevant to Carter's RLA and Title VII rights and remedies.[33]

## II. Front Pay

The Court should award Carter reinstatement, but, if not, then, it should award her up to $900,000 in front pay jointly and severally from Southwest and Local 556.[34] "[P]revailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay."[35] Courts' "remedial discretion … involves the '*selection between* reinstatement and front pay.'"[36] "The typical 'either/or' nature of this remedial choice is also seen in [the Fifth Circuit's] statement that 'if reinstatement is not feasible, front pay is the appropriate award.'"[37]

Carter showed that front pay award factors[38] support a $900,000 front pay award as well as the jury's $200,000 front pay award: Carter's age (56), her ability to immediately resume flying a full line of 80-100 trips a month (earning $80,000-$100,000 per year) for 9 years, the nature of flight attendants to work long careers, and her 21 years of employment at Southwest without discipline.[39] These factors demonstrate the likelihood she would have worked another nine years.[40]

Thus, a nine-year timeframe is not an excessive or speculative variance from cases awarding 3 to 4 years of front pay.[41] Carter also showed why Southwest's $20,000 per year estimate, based

---

[32] Dkt. No. 355, p.10.
[33] Dkt. No. 232, pp.14-17; Dkt. No. 223, pp.25, 52-59.
[34] Dkt. No. 351, pp.13-15.
[35] *Bogan*, 919 F.3d at 336.
[36] *Id.* (emphasis in original) (citation omitted).
[37] *Id.* (citation omitted).
[38] *See Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) ((1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, and (4) the employee's age and physical condition).
[39] *See Junaid v. McHugh*, Civil Action No. 2:11-CV-00226, 2013 WL 321567, at *2 (S.D. Tex. Jan. 28, 2013) (applying relevant factors for determining front pay); *see also* Dkt. No. 351, p.14.
[40] Dkt. No. 351, pp.13, 14; *see also Junaid*, 2013 WL 321567, at *2 (citations omitted).
[41] Dkt. No. 355, p.13.

on Carter's earnings in the 3 years prior to her termination, is not a fair representation of front pay.[42] Carter flew fewer hours in the 3 years prior to her termination, in accordance with her rights under Southwest's CBA,[43] due to her need to stay at home and take care of her daughter.[44] Carter testified that her daughter has now graduated, and she is ready to return immediately to work and fly a full line, earning $80,000-$100,000 each year, excluding benefits. This also explains why the jury did not limit the front pay award like the back pay award.[45]

Contrary to Southwest's characterizations, the jury's $200,000 front pay award does not represent eight years of additional wages.[46] Southwest speculates that the jury awarded $200,000 in front pay based on the $20,000 yearly back pay estimate.[47] Having heard Carter's testimony that she could now earn $80,000-$100,000 per year, the jury likely awarded 2-3 years of front pay considering adjustments provided for in the jury instructions.[48]

Contrary to Southwest's arguments,[49] the Court should award front pay in addition to compensatory and punitive damages in accordance with the jury's decision. "[W]hile previous cases … suggest that the presence or absence of a liquidated damages award is material to front pay, we think it should play only a very small role in that determination."[50] Here, front pay serves distinct and separate purposes from the jury's compensatory and punitive damages awards, and should not be lumped in with them. The jury concluded that, to redress the statutory violations and

---

[42] Dkt. No. 355, p.14.
[43] Trial Tr. 1676:3-17.
[44] Trial Tr. 1302:12-1304:19.
[45] Dkt. No. 351, pp.14-15; Trial Tr. 1302:12-1304:19.
[46] Dkt. No. 355, p.14.
[47] *Id*.
[48] Dkt. No. 343, pp.23-24; Dkt. No. 348, pp.23, 32.
[49] Dkt. No. 355, p.12.
[50] *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007) (quoting *Price v. Marshall Erdman & Assocs.*, 966 F.2d 320, 326 (7th Cir. 1992)) (citations omitted).

unlawful conduct and make Carter whole for the violations of her rights, Southwest should pay $3,500,000 in punitive damages, $250,000 in compensatory damages, and an additional $200,000 for front pay.[51] Thus, after capping compensatory and punitive damages, withholding front pay fails to make Carter whole—in accordance with the jury's decision—for loss of her future career.

The Court should also reject Southwest's mitigation arguments because the jury found that Southwest and Local 556 did not prove that Carter failed to mitigate.[52] The mitigation instructions applied to all damages awards.[53] While the jury question regarding front pay was advisory, the jury's decision that Southwest failed to prove mitigation was not. "[W]hen legal and equitable issues to be decided in the same case depend on common determinations of fact … the court in resolving the equitable issues is then bound by the jury's findings on them."[54] "It would be improper for the court to override the jury's factfinding on this question when deciding equitable relief."[55] Notably, the Court also instructed the parties not to include judgment as a matter of law issues in this briefing.[56] Given the jury's verdict, Southwest also had to prove the availability of substantially equivalent employment, which it failed to do.[57]

**III. The Court should award Carter prejudgment interest for complete "make-whole" relief.**

The Court should also award prejudgment interest for complete "make-whole" relief, notwithstanding the jury's punitive damages award.[58] Prejudgment interest is an element of

---

[51] Dkt. No. 348 pp. 25, 27, 32.
[52] Dkt. No. 355, p.15; Dkt. No. 343, pp.23-34.
[53] Dkt. No. 343, p.25.
[54] *Bogan*, 919 F.3d at 338 (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 965 (10th Cir. 2002)); *id*. (quoting *Hussein v. Oshkosh Motor Truck Co., Inc.*, 816 F.2d 348, 355 (7th Cir. 1987) ("[I]n deciding whether to grant equitable relief under Title VII, the district court [is] prohibited from reconsidering any issues necessarily and actually decided by the jury.")).
[55] *Bogan*, 919 F.3d at 337-38.
[56] Dkt. No. 349, p.1 n.1.
[57] Dkt. No. 348, p.33; Dkt. No. 355, p.15.
[58] Dkt. No. 355, p.17.

complete compensation,[59] and "compensates the plaintiff for being denied the opportunity to invest and earn interest on the amount of damages."[60] "Refusing to award prejudgment interest ignores the time value of money and fails to make the plaintiff whole."[61] Southwest's reliance on ADEA cases, which disallow prejudgment interest when awarding liquidated damages, is misplaced.[62] Title VII, unlike the ADEA, expressly authorizes courts to award prejudgment interest.[63] "Under Title VII, interest is an item that 'should be included in back pay' to make a victim whole."[64]

## IV. Declaratory and Injunctive Relief

Contrary to Southwest's characterizations,[65] Carter seeks conclusions of law and declarations of legal rights in light of the jury's factual findings. Courts enter declaratory judgments to clarify and settle the legal relations at issue and terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.[66] The Court's declaratory judgment will clarify Carter's legal rights and settle controversies that Southwest and Local 556 plainly contest.[67]

Carter does not need to prove that the company is likely to violate the RLA or Title VII in the future for the Court to award injunctive relief because (1) Carter *already* sustained an injury with *continuing* effects and (2) Southwest has the burden to prove that it is unlikely to violate the RLA and Title VII in the future.[68] To obtain injunctive relief, a plaintiff must "show that he '*has sustained* or is immediately in danger of sustaining some direct injury' as the result of the

---

[59] *West Virginia v. United States*, 479 U.S. 305, 310 (1987).
[60] *Wood v. Armco, Inc.*, 814 F.2d 211, 214 (5th Cir. 1987) (citation omitted).
[61] *Thomas v. Texas Dep't of Crim. Justice*, 297 F.3d 361, 372 (5th Cir. 2002).
[62] Dkt. No. 355, p.17.
[63] *Miller v. Tex. Alcoholic Beverage Comm'n*, A-21-CV-00204-JRN, 2022 WL 2078033, *2 (W.D. Tex. June 9, 2022) (citing *Peques v. Miss. State Emp.*, 899 F.2d 1449, 1453 (5th Cir. 1990)).
[64] *Id.*
[65] Dkt. No. 355, p.18.
[66] *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523-24 (5th Cir. 2016).
[67] Dkt. No. 351., p.17.
[68] Dkt. No. 355, p.19.

challenged … conduct."[69] Carter's loss of employment is a direct and continuing injury—she remains unemployed because Southwest and Local 556 caused her termination.

Even if the Court awards reinstatement, there remains a real and immediate threat that Southwest and Local 556 could violate Carter's rights again.[70] Southwest must show it will not engage in prohibited conduct in the future.[71] "Past wrongs [are] evidence bearing on 'whether there is a real and immediate threat of repeated injury.'"[72] Southwest *continues* to argue that this Court should deny reinstatement based on Carter's protected activities.[73] Such continuing threats of interference with her rights "demonstrate the likelihood of real and immediate future injury."[74]

## CONCLUSION

For the foregoing reasons, the Court should award Carter reinstatement, prejudgment interest, declaratory and injunctive relief, and the other relief as requested herein and in her opening motion and brief.

Dated: August 16, 2022                     Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510

---

[69] *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) (emphasis added).
[70] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) (citation and internal punctuation omitted).
[71] *See EEOC v. Serv. Temps. Inc.*, 679 F.3d 323, 338, 338 n.51 (5th Cir. 2012); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) ("[A]bsent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory."); *EEOC v. Rogers Bros., Inc.*, 470 F.2d 965, 966-67 (5th Cir. 1972).
[72] *Lyons*, 461 U.S. at 102 (citation omitted).
[73] *See supra* at pp.4-5; Dkt. No. 355, p.8; App.34.
[74] *See James v. City of Dallas*, 254 F.3d 551, 564 (5th Cir. 2001).

Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

11

## Certificate of Service

I hereby certify that on August 16, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam