UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>    Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S CONSOLIDATED REPLY TO SOUTHWEST AIRLINES CO.'S AND TRANSPORT WORKERS UNION OF AMERICA LOCAL 556'S RESPONSE TO HER BILL OF COSTS AND PROOF OF ATTORNEYS' FEES**

Pursuant to Federal Rule of Civil Procedure, Rule 37(b)(2)(A)-(C) and the Court's November 16, 2022 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this Consolidated Reply to Southwest Airlines Co. ("Southwest") and Transport Workers Union of America Local 556's ("Local 556") responses[2] to her bill of costs and proof of attorneys' fees and expenses. Contrary to Southwest's and Local 556's arguments, Carter (I) requests attorneys' fees, costs, and expenses related to Southwest and Local 556's violation of the Court's July 1 discovery order, their failure to make Nevarez available, and Carter's attempts to depose Nevarez, and (II) does not seek fees for time that is excessive or duplicative.

---

[1] Doc. No. 366.
[2] Doc. Nos. 370 and 371.

1

## REPLY ARGUMENT AND AUTHORITIES

**I. Carter's requested attorneys' fees, costs, and expenses all relate to Southwest's and Local 556's violation of the Court's July 1 discovery order, their failure to make Nevarez available for his deposition, and Carter's attempts to depose Nevarez.**

**A. Nevarez's July 4 and 8 depositions and the sanctions motion.**

Contrary to Southwest's and Local 556's assertions,[3] Carter's requested fees, costs, and expenses all relate to the company and union's violation of the Court's July 1 discovery order, their failure to make Nevarez available for his July 4 deposition, and Carter's attempts to depose Nevarez. Rule 37(b)(2)(C) provides that a party who fails to obey a Court order must "pay the reasonable expenses, including attorney's fees, caused by the failure."[4] "Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)."[5]

Carter's lost time (fees), expenses, and costs on July 1, 2, and 4, preparing for and arranging the July 4 deposition for which Nevarez did not appear, were all caused by Southwest and Local 556's failure to comply with the Court's July 1 order to make Nevarez available for his deposition.[6] Carter would not have lost time, expenses, and costs on Nevarez's non-appearance if Southwest and Local 556 had complied with the Court's order.

Southwest objects to Gilliam's and Hill's time related to Nevarez's July 8 deposition where he finally appeared after Carter filed her sanctions motion and this Court issued multiple orders to compel his appearance.[7] Carter's sanctions motion requested that the Court "require Southwest and Local 556 to pay Carter's expenses in serving all subpoenas, witness fees, and court reporter

---

[3] Doc No. 370, p.5; Doc. No. 371, pp.4-5.
[4] Fed. R. Civ. P., Rule 37(b)(2)(C).
[5] *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986) (citations omitted).
[6] Doc. Nos. 294, 294-1, 303, 303-1, and 353.
[7] Doc. Nos. 297, 310, 320, and 324.

and videographer fees and for reasonable attorney fees incurred in securing Nevarez's appearing and preparing for and attending Nevarez's deposition."[8] Nevarez's appearance was not a foregone conclusion. He appeared for his July 8 deposition only after Carter filed her sanctions motion, and this Court issued multiple orders, expending time and resources trying to secure Nevarez's appearance. Taxing Southwest and Local 556 for their conduct is necessary to provide an adequate deterrent and penalize them (and future violators) for disobeying the Court's orders.[9]

Contrary to Local 556's assertions,[10] Carter's fees and expenses for preparing the sanctions motion are also related. The Fifth Circuit recognizes that, under Rule 37, petitioners awarded attorneys' fees as a sanction may also recover fees related to their motion seeking sanctions.[11]

### B. Carter excluded unrelated time involving trial preparation, deposition, and other unrelated matters.

Contrary to Southwest's and Local 556's characterizations,[12] Carter does not claim time for "trial preparation, other depositions, or matters unrelated to securing Nevarez's attendance at the deposition."[13] Southwest and Local 556's argument appears to stem from a misreading of the fees sought by Carter—Carter does not seek fees for all of the tasks contained in the descriptions but rather only for those tasks related to Nevarez's deposition. Carter excluded time associated with unrelated tasks from her calculations. Carter kept unrelated tasks in the time entries for the sake of transparency, and so the Court could see that the portions of time allocated to Nevarez's deposition

---

[8] Doc. No. 353, p.6.
[9] "[T]he assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to following similar conduct." *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980)).
[10] Doc No. 371, p.2 ¶3, p.5.
[11] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).
[12] Doc. No. 370, pp.5-6; Doc. No. 371, p.2 ¶1, p.4.
[13] Doc. No. 370, p.5.

3

were reasonable. As Carter explained (and as Southwest acknowledges),[14] Gilliam "bold[ed] the tasks performed related to securing and taking the deposition of Brett Nevarez," and "[f]or billing entries containing activities unrelated to this matter, [he] apportioned the time to include hours related to the attempts to depose Brett Nevarez."[15] Where bolded time entries include both Nevarez-related matters and unrelated matters (e.g., multiple issues or witnesses), Gilliam reduced (i.e., apportioned) the hours sought so that the "Actual Hours" and "Actual Minutes" columns reported Nevarez-related time only.[16] Similarly, the Pryor & Bruce bills apportion time to "Time Sought" and do not seek fees for unrelated tasks.[17]

Despite Carter's explanation and Southwest's acknowledgment that Carter did not include time from all bolded entries, the company and union present charts showing time Carter did not claim.[18] Southwest's charts are misleading because they show aggregate time for different tasks, not the hours claimed after apportioning the time spent on the Nevarez matter and excluding unrelated time.[19] For example, Carter did not seek the full 1.0 hours of fees associated with "reviewing court orders and L556 opposition motion re motions in limine, supplemental exhibits, and time limit extensions."[20] While the bolded times for that day total 9.6 hours, Carter claimed only 8.0 of those

---

[14] *See* Doc. No. 370 n.3 ("[O]n July 1, 2022, Matt Gilliam's time entry reflects that he billed 16.1 hours. App. 8. Of those hours, 9.6 are bolded, meaning presumably that they are part of the fee request. But the "actual hours" column lists 8 hours, suggesting 1.6 of the bolded hours were excluded from Carter's calculation. *Perhaps the reason for the exclusion is that, per the notation in the last column of the chart, these entries were deemed "... unrelated to the Nevarez matter.*") (emphasis added). While Southwest asserts, "there is no way to tell for sure," the company admits that Carter separated chargeable from nonchargeable time, and the attorneys' declarations explain precisely this point. *See id.*
[15] Doc. No. 369-1, App.5, ¶8; Doc. No. 369-1, App.8-9; Doc. No. 368, p.4.
[16] *Id.*
[17] Doc. No. 369-2, App.13, ¶4; Doc. No. 369-2, App.18-19.
[18] Doc. No. 370, p.6; Doc. No. 371, p.4.
[19] Doc. No. 370, p.6.
[20] *Id.*; *see also* Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App. 8 (July 1 entry).

hours, which includes time for reviewing the Court order and time apportioned for other bolded Nevarez-related tasks.[21] Carter only claimed a small fraction of that time for reviewing the Court's July 1 order requiring Southwest and Local 556 to make Nevarez available and excluded the rest as unrelated. Carter's 8.0 hours in the "Actual Hours" column includes time apportioned for reviewing the July 1 order, but excludes time in the remainder of the 1.0-hour entry for motions in limine, supplemental exhibits, and time limit extensions.[22] Similarly, with all the other time in Southwest's chart, Carter only included the time actually attributable to Nevarez-related tasks.[23] Carter also excluded all July 9-11 time related to Nevarez deposition designations.[24] Despite bolding those entries to identify them as Nevarez-related, Carter did not charge any of the time.[25]

## II. Carter does not seek fees for excessive or duplicative time.

Contrary to Southwest's and Local 556's characterizations,[26] Carter's time is not excessive, and does not involve unnecessary duplication. The Court should reject Southwest and Local 556's conclusory assertions regarding excessive and duplicative time. "In raising objections, the party challenging the amount of fees should explain why the fees are unreasonable or should be excluded. Without detailed information explaining why or how the total number of hours … are

---

[21] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App. 8 (July 1 entry).
[22] *Id.*
[23] Doc. No. 369-1, App.5, ¶8; Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8-9 (July 1 and 2 entries); Doc. No. 369-2, Pryor Declaration, App.13, ¶4; Doc. No. 369-2, Ex. 1 to Pryor Declaration, App.18-19, (Pryor, Hill, and PL-paralegal Cristina Garcia-entries on July 1-2) Doc. No. 370, pp.3, 6.
[24] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.9 (July 9-11 time entries); Doc. No. 369-1, App.5, ¶8 ("I have also excluded from the calculation of my hours those time entries that I have marked on the attachment as "n/c," for nonchargeable, in the exercise of billing judgment."); Doc. No. 370, p.6.
[25] *Id.* (July 9-11 time entries) (showing 0 hours and including the "n/c" designation to show Gilliam did not charge that time);
[26] Doc. No. 370, pp.3-4; Doc. No. 371, pp.2, 3.

5

unreasonable, an objection to a fee request does not constrain the court's discretion."[27] If a party does not object to particular billing entries, the court is not obligated *sua sponte* to sift through fee records.[28] "It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention."[29] Accordingly, the Court should reject Local 556's[30] and Southwest's[31] conclusory assertions that Carter's hours are excessive and duplicative. For those assertions, they fail to give any "detailed information explaining why or how the total number of hours … are unreasonable," without which Carter and the Court cannot respond.[32] Moreover, Southwest's and Local 556's misconduct made Carter's time on the sanctions motion necessary. Southwest and Local 556 cannot disobey the Court's order to make Nevarez available and then complain about time spent to enforce it.[33] As one court stated:

> Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they extract from their opponents.[34]

Having attempted to evade the Court's July 1 order and failed, Southwest and Local 556 cannot disavow the consequences of their actions now.

---

[27] *James v. City of Dallas*, No. Civ. A. 3:98-CV- 0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 823 (5th Cir. 1997))(other citations omitted).

[28] *See e.g., La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

[29] *Hoffman*, 2015 WL 3999171, at *5 (citations omitted).

[30] *See* Doc. No. 371, p.3 (insisting that "all duplicative hours should be excluded" but refusing to identify any instances because, the union asserts, "[t]he duplicative billing is overwhelming and too voluminous").

[31] Doc. No. 370, p.4. *See* Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8-9 (July 4-5, 27; August 8-0, November 16-18 entries).

[32] *James*, 2005 WL 954999, at *2.

[33] *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citation omitted).

[34] *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976); *see also Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side).

**A. Carter's counsel do not claim excessive hours.**

Southwest's more specific excessive hour claims are also unavailing.[35] First, the Court should reject Southwest's objection to Gilliam's "*6.5 hours*" on July 2 for "drafting depo examination notes and identifying relevant exhibits for Talburt and Nevarez depo examinations"[36] because on July 2 Gilliam only claims *1.5 hours* total for that and other related tasks.[37]

Second, Gilliam's 3.5 hours spent preparing the July 1 Status Report Regarding the Court's Order to Cooperate for Service and Scheduling Witnesses[38] was reasonable and related to her attempts to depose Nevarez. Furthermore, Carter's report resulted in the Court's July 1 Order.[39] Gilliam's 5.7 hours spent preparing the sanctions motion reply[40] was also reasonable, and necessitated by Southwest's baseless arguments in its response. Carter prevailed on the sanctions motion, and the Court largely agreed with Carter's arguments made in her reply.[41]

Third, as Carter explained, Gilliam (less than 4 hours) and Hill (less than 11.9 hours)[42] devoted substantial time to preparing for Nevarez's July 4 deposition because, at the time, the Court had not restricted his deposition to 1.5 hours, and Carter anticipated taking a full deposition for this critical trial witness.[43] Nor was Gilliam and Hill's time preparing for Nevarez's July 4 deposition

---

[35] While Southwest argues that taking Nevarez's deposition during trial weighs in favor of reducing the lodestar (Doc. No. 370, p.4), the Court has already rejected Southwest's argument that Carter should be entitled do fewer fees for not taking his deposition sooner. Doc. No. 366, p.5.
[36] Doc. No. 370, p.3.
[37] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8 (July 2 entry).
[38] Doc. No. 294. Carter's report and exhibit recounted in detail all of the parties' communications since the Court's prior order to show the Court the Defendants' failure to produce Nevarez and other witnesses. Preparing the report required conferences between co-counsel and the parties.
[39] Doc. No. 297.
[40] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8 (July 1 entry); Doc. No. 353.
[41] Doc. No. 366.
[42] Southwest's calculation for Gilliam (5.6 hours) and Hill (14.1 hours) is incorrect, and is apparently based on those attorneys' non-apportioned, non-reduced time. Doc No. 370, p.3.
[43] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8, (July 1, 2, and 4 entries); Doc. No. 369-2, Ex. 1 to Pryor Declaration, App.18-20 (Hill July 1-4 entries).

excessive based on the duration of the July 8 depo. Contrary to Southwest's characterizations,[44] Gilliam and Hill prepared to take a *full* deposition of Nevarez on July 4, which would be critically important at trial. The Court only later limited Nevarez's deposition to 1.5 hours after Nevarez's non-appearance on July 4, resulting in Mr. Hill taking a 42-minute deposition on July 8.[45] As stated Southwest and Local 556 caused Carter to lose time (fees), expenses, and costs expended in preparation for taking Nevarez's full deposition on July 4.

Fourth, Southwest also objects to counsel's time preparing the status report, addressing witness issues, and communicating with Carter.[46] As stated, Carter apportioned these time entries to include only time spent related to the Nevarez matter, and, as shown by the total time actually claimed on each day (i.e., Gilliam's "Actual Hours and Minutes" columns and Hill's/Pryor's "Time Sought" columns), this time represents a small fraction of the fees sought.[47]

**B. Carter's counsel do not claim time for duplicative work.**

Contrary to Southwest's suggestions,[48] dividing tasks between multiple attorneys does not automatically make their time duplicative. Attorneys' time is not duplicative if tasks involve work and matters in which "both attorneys' input [i]s important and … billing for both counsel [i]s appropriate for efficient and effective prosecution of th[e] litigation."[49] Indeed, Southwest

---

[44] Doc. No. 370, pp.3, 6.
[45] Tr. Trans. 14:12-15:7 (July 5, 2022 Proceedings).
[46] Doc. No. 370, pp.3-4.
[47] Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8, (Gilliam July 1 entry) (showing that most time on July 1 was spent preparing the status report and conferring with opposing counsel and only a fraction of 2 hours of related conference time with co-counsel and client); (July 2 entry) (only a fraction of .5 hours of related conference time with client applied to 1.5 total of time sought that day, which also included apportioned/reduced hours for 6.5-hour and 2.8-hour tasks); Doc No. 369-2, Ex. 1 to Pryor Declaration, App.18-19 (those activities each comprising a fraction of Pryor's 1.1 total hours and Hill's 1.9 hours on July 1).
[48] Doc. No. 370, p.3.
[49] *See Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 652-53 (S.D. Tex. 2008). While Southwest also cites other cases for the proposition that multiple attorneys' involvement can

attorneys Paulo McKeeby, Chris Maberry, and Lauren Armstrong all attended Nevarez's deposition.[50] Local 556 attorneys Ed Cloutman and Adam Greenfield also attended.[51]

Carter's fee request includes only 2.4 hours of time for Mr. Pryor. While none of Mr. Pryor's time was duplicative, any arguable "duplication" on his part would be minimal, if not negligible.[52] Consistent with the *Turner* decision, Pryor's contribution of extensive and valuable experience to Gilliam and Hill's work was not only warranted, but "reasonable, valuable, and necessary."[53]

Gilliam and Hill charged time for their conferences regarding opposing counsel's failure to follow the Court's July 1 order, securing Nevarez's attendance at his deposition, preparing and filing Carter's sanctions motion, and taking Nevarez's deposition.[54] Their internal conferences regarding these issues was necessary to expedient and effective resolution of the matter. Deciding whether to file a sanctions motion is not a decision that one attorney should make without input from co-counsel. As for Nevarez's deposition, Mr. Gilliam's and Mr. Hill's time accounts for their distinctive, non-duplicative roles. Mr. Gilliam's time preparing Mr. Hill with exhibits and notes for the deposition and attending the deposition himself was necessary based on his experience and knowledge of the case.[55] Mr. Hill's time was necessary based on his expertise in taking a trial deposition.[56]

---

*sometimes* be duplicative, the descriptions show that Gilliam's, Hill's, and Pryor's work on this matter was not so here, and Southwest fails to show otherwise. *See* Doc. No. 370, p.3.

[50] Doc. No. 330-1, p.1 (Tr. 3:14-17; 4:7-8).

[51] *Id.* (Tr. 3:19-24; 4:1-3).

[52] *See Turner*, 552 F. Supp. 2d at 652 (rejecting duplication arguments where lead counsel might have arguably duplicated only a fraction of the other attorney's work).

[53] *Id.* at 653.

[54] *Id.* at 652 (allowing multiple attorneys' time for limited activities, "such as rare conferences at crucial times in the case, their clients' depositions, mediation, and final negotiations").

[55] Doc. No. 369-1, Gilliam Declaration, App.1-3 ¶1, 3, 4; Doc. No. 369-1, Ex. 1 to Gilliam Declaration, App.8 (July 1, 2, and 8 entries).

[56] Doc. No. 369-2, Pryor Declaration, App.14, ¶8.

### C. The Court should reject Southwest's and Local 556's block billing assertions because it can conduct a meaningful review of the time Carter claim.

Contrary to Southwest's and Local 556's assertions,[57] block billing does not prevent the Court from conducting a meaningful review because Carter's time entries identify the hours claimed on tasks related to the Nevarez matter. Reductions are unwarranted if billing records allow the Court to conduct a meaningful review of the reasonableness of the hours claimed in relation to the work performed.[58] Carter counsel's billing records clearly specified the legal services rendered with a brief description of the work performed, the date, and hours expended.[59] The Court should also reject Southwest's and Local 556's purported estimates of fees (made based on their contentions that "block billing" forced them to estimate the time spent on particular tasks)[60] because they failed to adequately explain how they deducted fees from each entry in making their estimates.[61]

### CONCLUSION

For the foregoing reasons, the Court should order Southwest and Local 556 to pay a total of $33,196.22, which includes $29,750.00 in attorneys' fees and $3,446.22 in expenses and costs, to the National Right to Work Legal Defense Foundation, Inc.

Dated: November 25, 2022          Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
mbg@nrtw.org

---

[57] *See* Doc. No. 370 p.4 n.2, p.7 n.3; Doc. No. 371, p.3.
[58] *League of United Latin Am. Citizens #4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (citations and punctuation omitted); *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (affirming an attorneys' fees award even though the billing records "lumped together" the time entries).
[59] *See Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:11-CV-870-D, 2016 WL 6330429, *10 (N.D. Tex. Oct. 27, 2016) (citations omitted); *see also supra* at 4 and 4 n.14.
[60] Doc. No. 370, pp.7, and 7 n.3; Doc. No. 371, pp.3, 5, and 6.
[61] *See Sapp v. Snuffer's Rests. Inc.*, No. 3:07-CV-273-M, 2010 WL 6194117, at *3 (N.D. Tex. Nov. 23, 2010), *report & recommendation adopted*, 2011 WL 1042289 (N.D. Tex. Mar. 21, 2011).

        c/o National Right to Work Legal Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343


*Attorneys for Plaintiff Charlene Carter*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2022 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

<u>By**: /s/ Matthew B. Gilliam**</u>