# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>               Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>               Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES FROM SOUTHWEST AIRLINES CO. AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................1

BACKGROUND AND HISTORY OF THE CASE .......................................................2

REQUESTED ATTORNEYS' FEES AND COSTS.......................................................8

     I.     Carter prevailed on all of her claims in this case .....................................8

     II.    Carter's lodestar calculation ..................................................................11

          A. The Reasonable Hourly Rate ..........................................................12

          B. The Hours Expended, Reductions and Reasonableness....................14

          C. Reasonable Out-of-Pocket Expenses ...............................................19

     III.   The Court should adjust the lodestar upward because this is an exceptional case.............................................................................................................21

CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

Case                                                                                                    Page(s)

*Abell v. Potomac Ins. Co.*,

    858 F.2d 1104 (5th Cir. 1988) ........................................................................................10

*Adams v. Boyle, P.C. v. Slatery*,

    No. 3:15-CV-00705, 2022 WL 1432539 (M.D. Tenn. May 5, 2022) ................................1

*Advanced physicians, S.C. v. Conn. Gen. Life Ins. Co.*,

    No. 3:16-CV-02355-G-BT, 2021 WL 6428370 (N.D. Tex. Dec. 17, 2021) ....................13

*Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*,

    919 F.2d 374 (5th Cir. 1990) ........................................................................................20

*Baulch v. Johns*,

    70 F.3d 813 (5th Cir. 1995) ..........................................................................................14

*Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n*,

    434 U.S. 412 (1978) ........................................................................................................9

*City of Burlington v. Dague*,

    505 U.S. 557 (1992) ......................................................................................................17

*City of Riverside v. Rivera*,

    477 U.S. 561 (1986) ......................................................................................................15

*Cobb v. Miller*,

    818 F.2d 1227 (5th Cir. 1987) ......................................................................................21

*Copeland v. Marshall*,

    641 F.2d 880 (D.C. Cir. 1980) ......................................................................................15

*Cruz v. Hauck*,

    762 F.2d 1230 (5th Cir. 1985) ........................................................................................9

*Dean v. Riser*,

    240 F.3d 505 (5th Cir. 2001) ..........................................................................................9

## TABLE OF AUTHORITIES

Case                                                                                          Page(s)

*DP Solutions, Inc. v. Rollins, Inc.*,

    353 F.3d 421 (5th Cir. 2003) ...............................................................................9

*Dobbs v. Jackson Women's Health Org.*,

    142 S. Ct. 2228 (2022)........................................................................................23

*Dodge v. Hunt Petroleum Corp.*,

    174 F. Supp. 2d (N.D. Tex. 2001) ....................................................................21

*EEOC v. Abercrombie & Fitch Stores, Inc.*,

    575 U.S. 772 (2015)...........................................................................................23

*Espino v. Besteiro*,

    708 F.2d 1002 (5th Cir. 1983) .....................................................................10, 11

*First Commonwealth Bank v. Auto Res. of Texas LLC*,

    Civ. Act. No. 3:22-cv-374-L, 2022 WL 16964754 (N.D. Tex. Nov. 16, 2022) ...............14

*Hardy v. SDM Hosp., LLC*,

    20-CV-3157-S-BK, 2022 WL 272718 (N.D. Tex. Jan. 10, 2022)....................................13

*Hensley v. Eckerhart*,

    461 U.S. 424 (1983)....................................................................................... *passim*

*Hernandez v. Hill Country Telephone Coop., Inc.*,

    849 F.2d 139 (5th Cir. 1988) .............................................................................10

*In re Taco Bueno Rests., Inc.*,

    No. 18-33678, Doc. No. 308 (Bankr. N.D. Tex. Feb. 14, 2019) .......................13

*Indep. Fed'n of Flight Attendants v. Zipes*,

    491 U.S. 754 (1989)............................................................................................9

*Islamic Ctr. of Miss., Inc.v. City of Starkville*,

    876 F.2d 465 (5th Cir. 1989) .............................................................................14

# TABLE OF AUTHORITIES

Case                                                                                      Page(s)

*Janvey v. Alguire*,

    Case No. 3:09-cv-724-N-BQ, 2019 WL 13075953 (N.D. Tex. Feb. 6, 2019) .................14

*Johnson v. Ga. Hwy. Express, Inc.*,

    488 F.2d 714 (5th Cir. 1974) ....................................................................................17, 21

*Kostic v. Tex. A&M Univ.-Commerce*,

    No. 3:10-CV-2265-M, 2015 WL 9997211 (N.D. Tex. Dec. 28, 2015) ............................13

*Maher v. Gagne*,

    448 U.S. 122 (1980)........................................................................................................10

*Martinez v. Donna Indep. Sch. Dist.*,

    Civil Action No. M-03-377, 2010 WL 11636123 (S.D. Tex. Mar. 29, 2010)..................11

*Migis v. Pearle Vision, Inc.*,

    944 F. Supp. 508 (N.D. Tex. 1996) ................................................................................10

*Miller v. Raytheon Co.*,

    Civil Action No. 3:09-CV-440-O, 2011 WL 13234115 (N.D. Tex. Sept. 15, 2011) .........9

*Miller v. Raytheon Co.*,

    716 F.3d 138 (5th Cir. 2013) ..........................................................................................13

*Mota v. Univ. of Tex.*,

    261 F.3d 512 (5th Cir. 2001) ....................................................................................10, 20

*New York Gaslight Club v. Carey*,

    447 U.S. 54 (1980)........................................................................................................8, 9

*Oviatt v. Pearce*,

    954 F.2d 1470 (9th Cir. 1992) ..........................................................................................9

*Perdue v. Kenny A. ex rel. Winn*,

    559 U.S. 542 (2010)........................................................................................................17

iv

## TABLE OF AUTHORITIES

Case                                                                                                    Page(s)

*Perkins v. New Orleans Athletic Club*,

    429 F. Supp. 661 (E.D. La. 1976) ...................................................................................16

*Planned Parenthood of Houston and Southeast Texas v. Sanchez*,

    480 F.3d 734 (5th Cir. 2007) ..........................................................................................10

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,

    382 F.3d 546 (5th Cir. 2004) ..........................................................................................14

*Riley v. City of Jackson*,

    99 F.3d 757 (5th Cir. 1996) ............................................................................................21

*R.K.C.J., LLC v. Texas Cap. Bank, N.A.*,

    No. 3:20-cv-533-K, 2020 WL 5552153 (N.D. Tex. Aug. 24, 2020) ...............................12

*Saizan v. Delta Concrete Prods. Co. Inc.*,

    448 F.3d 795 (5th Cir. 1996) ..........................................................................................11

*Sanchez v. City of Austin*,

    774 F.3d 873 (5th Cir. 2014) .............................................................................................9

*SortiumUSA, LLC v. Hunger*,

    No. 3:11-CV-1656-M, 2015 WL 179025 (N.D. Tex. Jan. 14, 2015) ...............................14

*Southwestern Bell Tel. Co. v. City of El Paso*,

    346 F.3d 541 (5th Cir. 2003) ..........................................................................................10

*Thermotek, Inc. v. Orthoflex, Inc.*,

    No. 3:11-CV-870-D, 2016 WL 6330429 (N.D. Tex. Oct. 27, 2016) ...............................14

*Tollett v. City of Kemah*,

    285 F.3d 357 (5th Cir. 2002) ....................................................................................12, 14

*Tureaud v. Grambling State Univ.*,

    294 Fed. App'x 909 (5th Cir. 2008) .................................................................................9

# TABLE OF AUTHORITIES

Case                                                                                    Page(s)

*United Mine Workers v. Gibbs*,

    383 U.S. 715 (1966)...................................................................................................10

*Vanliner Ins. Co. v. DerMargosian*,

    No. 3:12-cv-5074-D, 2014 WL 1632181 (N.D. Tex. Apr. 24, 2014)................................14

*Vaughn v. Neb. Furniture Mart, LLC,*

    Case No. 3:19-CV-1220-C-BK,
    2020 WL 1695695 (N.D. Tex. Mar. 12, 2020) ....................................................1, 8, 13, 21

*Veach v. State Farm Lloyds*,

    Case No. 3:19-cv-02313-BT, 2021 WL 5920903 (N.D. Tex. Dec. 15, 2021)............13, 14

*Villas at Parkside Partners v. City of Farmers Branch*,

    Civil Action No. 3:08-CV-1551-B, 2010 WL 2730629 (N.D. Tex. July 9, 2010)...........11

*Walker v. U.S. Dep't of Hous. & Urban Dev.*,

    99 F.3d 761 (5th Cir. 1996) .........................................................................................12

*Watkins v. Fordice*,

    7 F.3d 453 (5th Cir. 1993) ...........................................................................................22

*Wegner v. Standard Ins. Co.*,

    129 F.3d 814 (5th Cir. 1997) .......................................................................................11

*Wolf v. Frank*,

    555 F.2d 1213 (5th Cir. 1977) .....................................................................................16


**Rules, Statutes, Other**

Fed. Rule of Civ. Proc. Rule 54(d)(2).............................................................................1

Local Civil Rule 54.1 ....................................................................................................1

Civil Rights Act of 1964, Title VII

    42 U.S.C. § 1983........................................................................................................11

    42 U.S.C. § 1988.............................................................................................9, 10, 20

# TABLE OF AUTHORITIES

Page(s)

42 U.S.C. § 1988(b) ........................................................................................1, 8

42 U.S.C. § 2000e *et seq.*........................................................................... *passim*

42 U.S.C. § 2000e-5(g)(2)(B)(i) ...........................................................1, 8, 20

42 U.S.C. § 2000e-5(k) ...................................................................................1, 8

Railway Labor Act,

42 U.S.C. § 151 *et seq.*.......................................................................2, 4, 9, 11

Judiciary & Judicial Proc.,

28 U.S.C. § 1920...................................................................................20, 21

**PLAINTIFF CHARLENE CARTER'S BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES FROM SOUTHWEST AIRLINES CO. AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556**

Pursuant to Federal Rule of Civil Procedure, Rule 54(d)(2), and Local Civil Rule 54.1, Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, moves the Court to grant this motion for reasonable attorneys' fees and expenses under 42 U.S.C. § 2000e-5(k), § 2000e-5(g)(2)(B)(i), and § 1988(b).[1] This motion is based upon the Court's December 5, 2022 entry of judgment[2] on the jury's verdict[3] in Carter's favor on her Title VII religious discrimination claims against Southwest Airlines Co. ("Southwest") and Transport Workers Union of America, Local 556 ("Local 556"). Accordingly, Carter requests that the Court award her $2,262,437.89 in reasonable attorneys' fees and expenses against Southwest and Local 556,[4] plus a 25% lodestar enhancement, and order them to pay those amounts to the National Right to Work Legal Defense Foundation, Inc. (the "Foundation"), which has underwritten all of Carter's attorneys' fees, costs, and expenses as part of its legal aid program.[5] Additionally, Carter files a separate Bill of Costs seeking $21,670.10.

## SUMMARY OF ARGUMENT

Carter's counsel has waged a more-than-five-year battle to redress the religious discrimination Carter suffered at the hands of Southwest and Local 556, eventually prevailing with a jury

---

[1] *See Vaughn v. Neb. Furniture Mart, LLC*, Case No. 3:19-CV-1220-C-BK, 2020 WL 1695695, *6 (N.D. Tex. Mar. 12, 2020).

[2] Doc. Nos. 374, 375.

[3] Doc. 348.

[4] This amount includes $2,212,914.00 in attorneys' fees and $49,523.89 in expenses.

[5] App.7-8, Declaration of Matthew Gilliam ("Gilliam Declaration"), ¶11-13. Pursuant to Carter's Retainer Authorization, the Foundation is entitled to any attorneys' fees, expenses, or costs that opposing parties are ordered to pay. *Id*. Where an attorney is awarded fees after a pro bono representation, it is appropriate to direct the attorney fee payment directly to that counsel. *Adams & Boyle, P.C. v. Slatery*, No. 3:15-CV-00705, 2022 WL 1432539, at *1 (M.D. Tenn. May 5, 2022).

awarding her all the relief she sought and more, with the jury awarding $4.1 million dollars including a significant punitive award (later reduced due to the damage caps). Southwest and Local 556's aggressive defense of the suit, the number of witnesses involved, and the length and complexity of the matter forced Carter to expend a significant number of hours prosecuting her claim. Title VII allows Carter's counsel to be compensated for that work. The work for which Carter seeks a fee award was reasonable and necessary to pursuing her claim. The Court should award Carter all of the $2,212,914.00 in attorneys' fees and $49,523.89 in expenses she seeks.

## BACKGROUND AND HISTORY OF THE CASE

Carter has successfully litigated all of her claims against Southwest and Local 556 in this case, including her claim that Southwest and Local 556 violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII") by discriminating against her for her sincerely held religious beliefs and practices.[6] Carter filed this action on August 25, 2017, alleging the facts giving rise to her Title VII religious discrimination claims, and further alleging—based on those same facts—that the company and union violated her rights under the Railway Labor Act, 42 U.S.C. § 151 *et seq*., and the union's Duty of Fair Representation ("DFR").[7]

On September 7 and 20, 2017, Carter filed her religious discrimination claims against Southwest and Local 556 with the Equal Employment Opportunity Commission ("EEOC"), which issued her right-to-sue notices on March 27, 2018.[8] Once the EEOC issued right-to-sue notices, Carter filed the Second Amended Complaint adding a request for relief under Title VII based upon substantially the same facts alleged in her First Amended Complaint.[9]

---

[6] Doc. Nos. 348, 374, 375; Doc. No. 80 (Fourth Amended Complaint).
[7] *See* Doc. No. 1; Carter originally filed this case against Local 556 on August 25, 2017, and amended the complaint on September 14, 2017, adding Southwest as a defendant. *See* Doc. No. 9.
[8] Doc. Nos. 46-3, 46-4, and 46-5.
[9] *Compare* Doc. Nos. 1, 9 and Doc. No. 47.

Carter achieved overwhelming success on all of her claims at trial and in post-trial proceedings. Following a week-long trial that began on July 6, 2022, the jury issued a verdict in favor of Carter on all the claims in her Fourth Amended Complaint.[10] On July 14, 2022, the jury unanimously awarded Carter $150,000 in back pay, $500,000 against Southwest and Local 556 for compensatory damages under Title VII, $3,500,000 in punitive damages against Southwest under Title VII, and $300,000 in punitive damages against Local 556 for its Title VII violations.[11] On December 5, 2022, the Court entered judgment on the jury's July 14, 2022 verdict and reinstated Carter, while also awarding monetary and comprehensive injunctive relief that protects Carter and all other Southwest flight attendants from religious discrimination.[12] The Court awarded Carter $150,000 in back pay and $60,180.82 in prejudgment interest, $300,000 in compensatory and punitive damages against Southwest, and $300,000 in compensatory and punitive damages against Local 556, the highest that the Title VII statutory cap allows for compensatory and punitive damages.[13] Accordingly, Carter, is a prevailing party against Southwest and Local 556.

Southwest and Local 556 aggressively litigated this case throughout, forcing Carter to accrue substantial attorneys' fees in her successful efforts to pursue her claims against Southwest and Local 556's efforts. Early in this case Southwest and Local 556 forced Carter to litigate two rounds of Motions to Dismiss, in which she ultimately prevailed. On October 17 and 24, 2017, Southwest and Local 556 filed motions to dismiss Carter's First Amended Complaint.[14] Southwest's and Local 556's motions and Carter's responses involved arguments that the company and the union continued making throughout the case and at trial and addressed Carter's Title VII claims and her

---

[10] Doc. Nos. 348, 374, 375; Doc. No. 80.
[11] Doc. No. 348.
[12] Doc. Nos. 374, 375.
[13] *Id.*
[14] Doc. Nos. 23-24 (Local 556); Doc. Nos. 28-29 (SWA).

RLA and DFR claims. Southwest argued that Carter did not allege sufficient facts to establish a causal nexus between her protected speech and termination, that Carter's abortion-related speech was not protected, and that Carter did not have federal statutory rights separate and independent from the CBA.[15] Local 556 argued that President Stone was not acting in her capacity as union president and the union was not her employer.[16]

Following an April 30, 2018 status conference,[17] the Court denied Southwest and Local 556's motions to dismiss without prejudice, and the parties stipulated to Carter filing a Second Amended Complaint on June 25, 2018, adding her Title VII claims after the EEOC issued a decision that it would not prosecute her claims.[18] On July 9 and 11, 2018, Southwest and Local 556 again filed motions to dismiss Carter's claims.[19] On February 1, 2019, after holding oral arguments on the motions,[20] the Court  issued an order denying Southwest's and Local 556's Motions to Dismiss Carter's Title VII claims, her RLA retaliation claims, and her Duty of Fair Representation claim.[21]

Southwest and Local 556's aggressive litigation strategies continued through discovery, delaying this case for years, and increasing fees and expenses.[22] Carter's Motion to Extend Discovery Deadlines[23] and two Motions to Compel Discovery from Local 556[24] describe how Southwest and Local 556 increased litigation fees and expenses in this case. Carter first served discovery requests on Southwest and Local 556 on April 26, 2019. On May 14, 2019, ten days

---

[15] Id.; Doc. No. 34, pp.25-28; *see also* Doc. No. 54, pp.11-14.
[16] Doc. Nos. 23-24 (Local 556); Doc. No. 32, pp.14-20; *see also* Doc. No. 56, pp.12-13.
[17] Doc. No. 39.
[18] Doc. No. 45-47.
[19] Doc. Nos. 48, 49 (SWA); Doc. Nos. 51, 52 (Local 556).
[20] Doc. No. 76.
[21] Doc. No. 69.
[22] *See infra* 16-17.
[23] Doc Nos. 138-140
[24] Doc. No. 92-94, 98 (Carter first motion to compel against Local 556); Doc. Nos. 120-122 (Carter renewed motion to compel against Local 556); Doc. Nos. 99, 131 (Court orders).

before its deadline to respond to Carter's discovery requests, Southwest requested a "preliminary 60-day extension."[25] Southwest demanded that Carter send a list of custodians and search terms "sufficient to address Carter's Discovery Requests," and refused to provide responsive documents unless and until Carter participated in a complicated and time-consuming e-discovery protocol.[26] Carter's attorneys responded that Southwest could conduct searches through self-collection based on the requests as written. Southwest nonetheless objected to Carter's requests and refused to search for or produce documents. Carter's counsel spent significant time working with Southwest from May 14, 2019 through October 8, 2020 to negotiate overly complicated e-discovery parameters pursuant to Southwest's demands.[27]

On October 9, 2020, Southwest suddenly reversed course the month before the discovery deadline, abandoned its demand for an ESI approach based on search terms, and admitted that self-collection was "the much better course,"[28] finally agreeing with Carter's original position that such an approach was unnecessary and inappropriate.[29] Only then did Southwest finally begin to produce responsive documents.

Furthermore, Southwest and Local 556 refused to produce documents responsive to Carter's April 2019 requests without an onerous protective order.[30] Southwest and Local 556's demand for a protective order increased discovery fees and expenses as the parties engaged in protracted

---

[25] Doc. Nos. 139, p.5, 140-2 (App.72).

[26] *Id.*; Doc. No. 140-2 (App.68, 71, 72).

[27] Doc. Nos. 139, p.8; 140-2 (App.72); App.20-33.

[28] Doc. Nos. 139, p.10; 140-2 (App. 27, ¶4).

[29] *Id*.

[30] Doc. No. 134-3; Doc. No. 93, p.10 n.10, p.12; 94-1, 94-2 (App.22-23, 35-39, 59, 61-63, 68); *see also* Doc. No. 98 n.3 p.2 "("Despite demanding a protecting order and withholding these documents following issuance of a protective order, Local 556 did not designate any documents as confidential."). Nevertheless, Local 556's indication that certain documents should be filed under seal and designation of certain testimony to file under seal required Carter to file documents under seal. Doc No. 171, p.2, ¶4-5; Doc. No. 199, p.2 ¶2-3.

negotiations over the terms of the order marked by Local 556's continuous delays and not approving a proposed draft until September 27, 2019.[31]

On October 4, 2019, the parties finally filed the joint motion for the entry of a stipulated protective order, which the Court entered on November 5, 2019.[32] Southwest and Local 556's subsequent over-designation of documents as confidential greatly increased fees and expenses associated with summary judgment filings.[33] After Southwest's and Local 556's actions required Carter to file documents and information under seal, the Court denied the motion, deciding that most of the information should not be sealed.[34]

As Carter demonstrated in previous filings, Local 556's dilatory responses, refusal to provide a valid privilege log, meritless objections, and other discovery delays, necessitated Carter's two motions to compel and significant scheduling order revisions.[35] Local 556 withheld documents and refused to address discovery deficiencies from May 14, 2019, through May 14, 2020, despite repeated conferences, causing Carter's counsel to expend significant resources addressing Local 556's failure to comply with the federal rules.[36] Then, on July 8, 2020, Southwest filed a meritless request for sanctions against Carter and her counsel, which the Carter's counsel spent significant time briefing, and which this Court denied on September 2, 2020.[37] The Court recognized the effect of Southwest and Local 556's discovery delays, granting on May 5, 2021 Carter's motion to extend

---

[31] Doc. No. 93, p.12; Doc. No. 94 (App.59, 61-63, 68).

[32] Doc. No. 85.

[33] Doc. Nos. 171, 196, 199, 217, 218, 225-227; *see also infra* 16 n.101.

[34] Doc. No. 217. The Court denied the request to seal any documents outright, only allowing for partial redaction of personal contact information for certain witnesses. After requiring Carter to file documents under seal, Local 556 failed to file anything in support of sealing documents at all. Doc. No. 217, pp.3, 4, and 10. In fact, the union did not even make the prescribed redactions as ordered by the Court. *See* Doc. No. 227.

[35] Doc. Nos. 93, pp.8-12; 121, pp.5-8; 139, pp.5-8.

[36] Doc. No. 93, p.8-13; Doc. No. 94 (App.50-70).

[37] Doc Nos. 100-112, 125-126.

the time for fact discovery by several months based on her arguments regarding Southwest's and Local 556's discovery delays.[38]

On September 2 and 9, 2021, the parties filed cross motions for summary judgment, and they completed briefing on October 18, 2021.[39] This Court denied Southwest and Local 556's motions for summary judgment on May 5, 2022,[40] rejecting their arguments that it should give issue-preclusive effect to arbitration findings and that Carter had failed to exhaust administrative remedies for purposes of her Title VII failure to accommodate claim.[41] The Court set a trial date on the two-week docket beginning July 5, 2022, and held a pretrial conference on June 16, 2022.[42]

In preparation for trial, Carter hired experienced trial attorneys Bobby Pryor and Matthew Hill in late-May 2022.[43] For the nature and complexity of the case, multiple attorneys were necessary to present the case at trial.[44] Notably, Southwest brought at least five attorneys to trial in addition to support staff, and, like Carter, Local 556 also had three attorneys at trial. Pryor's and Hill's work preparing for trial was not duplicative of the work Jason Winford performed as local counsel. Winford's local counsel role did not overlap with the tasks necessary to prepare for trial. By bringing Pryor and Hill in late, their efforts could be focused specifically on trial preparation.

---

[38] Doc. No. 155.
[39] Doc. Nos. 166-168, 180 (Southwest); Doc. Nos. 169-171, 221, 223, 225, 226 (Carter motions for summary judgment and motions to file under seal); Doc. Nos. 181-183 (Local 556); Doc. Nos. 191-192 (Southwest Response); Doc. Nos. 193 (Local 556 Response); Doc. Nos. 194-199 (Carter responses and motions to file under seal); Doc. No. 206 (Local 556 Reply); Doc. Nos. 207-208 (Carter Replies); Doc. No. 209 (Southwest Reply).
[40] Doc. No. 232.
[41] *Id*. at 13-14.
[42] Doc. No. 236.
[43] Doc. Nos. 238, 240.
[44] App.233, Declaration of Bobby G. Pryor ("Pryor Declaration"), ¶13.

Given this case's nature and complexity, Matthew Gilliam, Pryor, and Hill were each necessary for an effective presentation at trial.[45] Pryor's work was necessary as he handled voir dire, opening, almost all trial witnesses and closing. To carry this significant burden, he relied heavily, both before trial and at trial, on the assistance of Hill and Gilliam. Further, Hill prepared to examine several witnesses that were not ultimately called and was also necessary in preparing trial arguments, the selection and presentation of exhibits, and managing the significant additional work that was performed during trial, including deposing Brett Nevarez.[46] Likewise, Gilliam was indispensable at trial given his knowledge of the history of the suit, the witnesses' testimony throughout discovery, and the evidence produced in such discovery, as well as his expertise on the specific legal issues at issue in the case.[47] Carter's team could not have presented her case as effectively without the participation at trial of each of these attorneys.[48]

## REQUESTED ATTORNEYS' FEES AND COSTS

## I. Carter prevailed on all of her claims in this case.

The Court should award Carter her requested attorneys' fees and expenses against Southwest and Local 556 because she prevailed on her Title VII claims (and all other claims) against them. Under Title VII, the court "[i]n any action or proceeding [under Title VII] … in its discretion, may allow the prevailing party … a reasonable attorney's fee … as part of the costs…."[49] "[A] prevailing *plaintiff* [in a Title VII case] ordinarily is to be awarded attorney's fees in all but special

---

[45] *Id*.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] 42 U.S.C. § 2000e-5(k). *See also* 42 U.S.C. § 2000e-5(g)(2)(B)(i); § 1988(b); *Vaughn*, 2020 WL 1695695, *6. Carter may also recover for fees and expenses related to EEOC "proceedings" prior to bringing her Title VII claims in federal court. *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61-62 (1980).

circumstances."[50] "[I]n [the] absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff."[51] Where civil rights plaintiffs prevail overwhelmingly, they are entitled to all of their requested fees, and the court is not required to segregate and subtract the time spent on each issue or motion, even if unsuccessful.[52]

Carter is a "prevailing party" in this case because the Court has entered judgment on the jury's verdict in her favor on all her claims, including her Title VII claims against Southwest and Local 556.[53] Carter's efforts resulted in her recovering virtually all of the relief she sought in the case. No special circumstances exist that would render an award unjust here.

While Carter prevailed on Title VII fee-supporting claims and non-fee-supporting RLA and DFR claims, Carter's claims are intertwined and based on a common core of facts: Southwest and Local 556 caused Carter's termination because she opposed the union's participation in the Planned Parenthood-sponsored Women's March and support for abortion based on her pro-life

---

[50] *Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 417 (1978) (emphasis in original). "[A] prevailing plaintiff is deserving of an award of attorney's fees because they are assessed against a violator of federal law.'" *Id.* at 418.

[51] *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (interpreting Title VII's fee provision) (emphasis in original); *New York Gaslight Club*, 447 U.S. at 68 ("[T]he court's discretion to deny a fee award to a prevailing plaintiff [in a Title VII case] is narrow."); *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (noting that "the judicial gloss on § 1988, and its legislative history, have constrained [the district court's discretion], in most cases converting the statute's 'may' into a 'must'"); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("[A]bsent special circumstances, a prevailing plaintiff should be awarded section 1988 fees as a matter of course.") (cleaned up); *Tureaud v. Grambling State Univ.*, 294 Fed. App'x 909, 917 (5th Cir. 2008) (finding that the district court abused its discretion in failing to award plaintiff reasonable attorney's fees after he prevailed at trial). "The purpose of [§ 1988 ] is to ensure 'effective access to the judicial process for persons with civil rights grievances.'" *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (other citation omitted).

[52] *See Miller v. Raytheon*, Civil Action No. 3:09-CV-440-O, 2011 WL 13234115, at *4 (N.D. Tex. Sept. 15, 2011) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003)); *Oviatt v. Pearce*, 954 F.2d 1470, 1483 (9th Cir. 1992); *see also DP Solutions, Inc.*, 353 F.3d at 434 (stating that "a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim" under Texas state statute).

[53] Doc. Nos. 348, 374, 375.

religious beliefs.[54] Fifth Circuit precedent establishes that, where a prevailing party brings both fee-supporting claims and non-fee-supporting claims, the court may award attorneys' fees on all claims derived from related legal theories or based upon a common core of facts.[55] "A court need not segregate fees when the facts and issues are so closely interwoven" that the time spent on separate claims or against separate defendants in the same litigation cannot reasonably be divided.[56] "[C]laims that involve common facts or derive from related legal theories cannot be viewed as separate or discrete causes of action."[57] Claims "arise out of a common nucleus of operative fact" when the fee and non-fee claims are "so interrelated that plaintiffs 'would ordinarily be expected to try them all in one judicial proceeding.'"[58] For example, in *Espino*, a  student with a disability challenged a school district's treatment of him by placing him in a plexiglass cubicle. The Fifth Circuit reversed the district court's denial of attorneys' fees, deciding that the treatment "challenged separately under the [Education for All Handicapped Children Act of 1975 (EAHCA)]

---

[54] *Id.*; *see* Doc. No. 374, p.3

[55] *See Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1142 (5th Cir. 1988); *Hernandez v. Hill Country Telephone Coop., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988) (citing *Hensley*, 461 U.S. at 435); *see also Maher v. Gagne*, 448 U.S. 122 (1980) ("Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial claim."); *Espino v. Besteiro*, 708 F.2d 1002, 1007-10 (5th Cir. 1983) (recognizing that courts have relied on this doctrine to award § 1988 attorney's fees to plaintiffs prevailing on non-fee federal statutory claims); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003); *Planned Parenthood of Houston and Se. Tex. v. Sanchez*, 480 F.3d 734, 738-39 (5th Cir. 2007).

[56] *Mota v. Univ. of Tex.*, 261 F.3d 512, 528 (5th Cir. 2001) (citing *Abell*, 946 F.2d at 1169).

[57] *Migis v. Pearle Vision, Inc.*, 944 F. Supp. 508, 512 (N.D. Tex. 1996) (citing *Hensley*, 461 U.S. at 434), *aff'd* in relevant part and *rev'd* on other grounds, 135 F.3d 1041, 1049 (5th Cir. 1998); *Hernandez*, 849 F.2d at 144 ("The *Hensley* court teaches that claims for relief that involve a common core of facts, or derive from related legal theories, cannot be viewed as a series of discrete claims.").

[58] *Espino*, 708 F.2d at 1010 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). *Villas at Parkside Partners v. City of Farmers Branch*, Civil Action Nos. 3:08-CV-1551-B, 3:03-CV-1615, 2010 WL 2730629, at *2-3 (N.D. Tex. July 9, 2010).

and § 1983 is exactly the same," so "there [was] every reason to expect that [the student plaintiff] would try both in one proceeding."[59]

Carter's Title VII claims—based on Southwest and Local 556 causing her termination—are so inextricably interrelated to the facts underlying her RLA and DFR claims that she could not have tried them in separate proceedings without subjecting them to claim preclusion. Carter's RLA retaliation claims against Southwest and Local 556 involved them causing her termination for RLA-protected expression opposing the union that was also religious in nature.[60] Carter's DFR claim against Local 556 alleged that the union treated Carter arbitrarily, discriminatorily, and in bad faith, based in part on her religious speech and protests made to President Audrey Stone and her religious expression opposing the union's participation in the Planned Parenthood-sponsored Women's March.[61] Carter argued and presented evidence that the union's discriminatory treatment of her because of her religious beliefs constituted a duty of fair representation violation.[62]

## II. Carter's lodestar calculation

Courts must use the lodestar method to determine the appropriate amount of attorneys' fees they should award.[63] Under the lodestar method, the Court must first "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the lodestar.[64]

---

[59] *Espino*, 708 F.2d at 1010.

[60] *See Martinez v. Donna Indep. Sch. Dist.*, Civil Action No. M-03-377, 2010 WL 11636123, *3 (S.D. Tex. Mar. 29, 2010) (observing "all the claims shared 'a common core of facts' … i.e., Plaintiff's termination"); *see also e.g.*, Doc. No. 221, 19-31, 35-42, 46.

[61] *See e.g., id*.; *id*. at 49-51.

[62] *Id.*

[63] *See Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

[64] *Hensley*, 461 U.S. at 433; *Wegner*, 129 F.3d at 822 (citations omitted). *See also Saizan v. Delta Concrete Prods. Co. Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam) (describing the lodestar method as "[m]ultiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work").

**A.  The Reasonable Hourly Rate**

The Court should adopt hourly rates of $350 for attorney Matthew B. Gilliam, $375 for attorney Jason E. Winford, $395 for attorney Matthew D. Hill, and $495 for attorney Bobby G. Pryor. To determine the reasonable hourly rate, the Court must use the prevailing market rate in Dallas, Texas.[65] The relevant legal community is the Northern District of Texas in Dallas, Texas, "the community in which the district court sits."[66] Pryor's, Hill's and Winford's hourly rates claimed here are the rates actually charged to and paid by the Foundation on Carter's behalf for work performed.[67] For Gilliam, the $350 hourly rate sought for work he performed is below the customary rate charged by attorneys of his skill and experience in the Dallas market.[68] Chappell's $400 hourly rate and Jennings's $300 hourly rate are also below the customary rates charged by attorneys of their skill and experience in the Dallas market.[69] Likewise, Hill's, Pryor's, and Winford's respective hourly rates charged are well below the standard hourly rates in Dallas, Texas for attorneys with their qualifications and experience.[70]

Gilliam is a 2011 Georgetown University Law Center graduate who was first licensed in New York in 2012.[71] Chappell is a 1976 Catholic University of America graduate who was first licensed

---

[65] *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("Attorneys' fees are to be calculated at the prevailing market rates in the relevant community.") (cleaned up).

[66] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted). *R.K.C.J., LLC v. Tex. Cap. Bank, N.A.*, No. 3:20-cv-533-K, 2020 WL 5552153, *7 (N.D. Tex. Aug. 24, 2020) ("A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.") (citation omitted).

[67] App.8, Declaration of Matthew B. Gilliam ("Gilliam Declaration"), ¶12; App.105, Declaration of Jason E. Winford ("Winford Declaration"), ¶11; App.233-234, Pryor Declaration, ¶15-16.

[68] App.232-233, Pryor Declaration ¶12; App.104, Winford Declaration, ¶10.

[69] App.104, Winford Declaration, ¶10.

[70] App.231-232, Pryor Declaration ¶9-10 (Pryor's and Hill's rates); App.104, Winford Declaration ¶9.

[71] App.1, Gilliam Declaration, ¶2.

in 1976.[72] Jennings is a graduate from the Antonin Scalia Law School George Mason University,

and licensed in Virginia in 2014.[73] Pryor is a 1983 *summa cum laude* graduate of the University

of Arkansas who was first licensed in Oklahoma in 1983.[74] Hill is a 2001 graduate of the University

of Chicago Law School who was first licensed in 2001.[75] Winford is a 1993 graduate of the

University of Texas School of Law who was first licensed in 1993.[76] All of these attorneys have

significant experience handling employment cases such as this one, and Pryor and Hill are

experienced trial attorneys, with Pryor having tried over 100 cases and Hill having been lead trial

attorney in multiple trials.[77]

Counsel's hourly rates are reasonable based on this Court's findings in recent cases in this

district.[78] Dallas metroplex attorneys Pryor and Winford (local counsel in this case) also attest that

the hourly rates sought for Gilliam, Chappell, and Jennings, are reasonable and below the

---

[72] *Id.*, App.4, ¶7.

[73] *Id.*, App.4, ¶8.

[74] App.231, Pryor Declaration, ¶9.

[75] App.232, Pryor Declaration, ¶10.

[76] App.101-102, Winford Declaration, ¶2, 4.

[77] App.101-102, Winford Declaration, ¶3; App.1-4, Gilliam Declaration, ¶3-5, 7-8; App.231-232, Pryor Declaration, ¶9-10.

[78] *See e.g.*, *Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (affirming $577.50, $542.50, and $280 in age discrimination case); *Hardy v. SDM Hosp., LLC*, 20-CV-3157-S-BK, 2022 WL 272718, *6 (N.D. Tex. Jan. 10, 2022) (finding $525 reasonable for an employment law attorney and recognizing approval for hourly rates of $400-$500 where all three attorneys had practiced for at least nine years, including in employment litigation) (other citations omitted); *Veach v. State Farm Lloyds*, No. 3:19-cv-02312-BT, 2021 WL 5920903, *3 (N.D. Tex. Dec. 15, 2021) (finding that $500 is a reasonable rate for trial attorneys); *Vaughn*, 2020 WL 1695695, *6 (finding $500 reasonable for plaintiff's counsel in Title VII case); *Kostic v. Tex. A&M Univ.-Commerce*, No. 3:10-CV-2265-M, 2015 WL 9997211, at *3 (N.D. Tex. Dec. 28, 2015), report and recommendation adopted, No. 3:10-CV-2265-M, 2016 WL 407357 (N.D. Tex. Feb. 3, 2016) (approving a $650 rate for a 29-year attorney and a $450 rate for 17- and 20-year attorneys); *In re Taco Bueno Rests., Inc.*, No. 18-33678, Doc. No. 308 (Bankr. N.D. Tex. Feb. 14, 2019) (billing rates for Partners ($945-$1,280), Counsel ($830-$915), and Associates ($450-$945); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding attorney rates of $537 to $862 per hour to be reasonable in the Dallas market) (Rutherford, J.).

prevailing rates in the local market, given their experience and the quality of work performed in this case.[79] Additionally, Carter encourages this Court to rely upon its own expertise and knowledge of the prevailing rates in Dallas in making its determination herein. "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services."[80] For paralegals Jami Lair and Cristina Garcia, their respective hourly rates of $160 and $110 are also reasonable based on their qualifications, and is well within the rates approved for similarly experienced paralegals in the Dallas legal community.[81] Notably, Southwest and Local 556 did not contest Gilliam's, Pryor's, Hill's, and Garcia's rates in the sanctions fees petition briefing.[82] "When that rate is not contested it is *prima facie reasonable*."[83] Thus, Carter has substantiated the attorneys' and paralegals' hourly rates.

## B. The Hours Expended, Reductions, and Reasonableness

The Court should approve the hours claimed by attorneys Gilliam, Pryor, Hill, and Winford. To determine the reasonable number of hours expended, the court should exclude excessive,

---

[79] App.232-233, Pryor Declaration ¶12 (Gilliam's rate); App.104, Winford Declaration ¶10 (Gilliam's Chappell's, and Jennings's rates).

[80] *SortiumUSA, LLC v. Hunger,* No. 3:11-CV-1656-M, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.); *Janvey v. Alguire*, Case No. 3:09-CV-724-N-BQ, 2019 WL 13075953, *2 (N.D. Tex. Feb. 6, 2019); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004*); Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, *2 (N.D. Tex. Apr. 24, 2014) (noting that the court is an expert on the reasonableness of attorneys' fees).

[81] App.232, Pryor Declaration, ¶11. *See, e.g., Veach*, 2021 WL 5920903, *3 ($150 per hour is a reasonable rate for paralegal time); *First Commonwealth Bank v. Auto Res. of Tex. LLC*, Civ. Act. No. 3:22-cv-374-L, 2022 WL 16964754, *3 (N.D. Tex. Nov. 16, 2022) (Lindsay, J.) (finding a $200 hourly rate for a paralegal within the range of usual and customary hourly rates for a paralegal in the Dallas legal community).

[82] Doc. No. 373, p.2 ("Defendants do not contest the reasonableness of those hourly rates.").

[83] *See Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:11-CV-870-D, 2016 WL 6330429, *8 (N.D. Tex. Oct. 27, 2016) (quoting *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (emphasis in *Thermotek*); *Tollett*, 285 F.3d at 369 (affirming requested hourly rate that was uncontested); *Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995).

redundant or otherwise unnecessary hours.[84] Carter attaches the declarations of her counsel, Matthew B. Gilliam (App.1-100), Jason E. Winford (App.101-228), and Bobby G. Pryor (App.229-311), which attest to their qualifications and the respective amounts of hours, expenses, and costs incurred.[85] Carter has only included those fees and expenses reasonably and necessarily expended by them in successfully litigating her case.[86] Counsel document the hours they expended in exhibits to their declarations.[87] These attachments are accurate and derived from routinely prepared compilations of the contemporaneous time sheets that they maintain in the normal course of business.[88]

Southwest and Local 556 engaged in an aggressive litigation strategy to avoid the consequences of their violations of Carter's Title VII rights. The magnitude of Carter's requested fees is attributable largely to Southwest's and Local 556's litigation strategies. Southwest and Local 556 cannot litigate tenaciously and then complain about time necessarily expended by Carter in response.[89] As one court stated:

> Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they extract from their opponents. It is … [defendants'] right to contest every aspect of this claim, but they cannot now disclaim the consequences of their actions.[90]

---

[84] *See Hensley*, 461 U.S. at 433-35, 440.

[85] Exhibit 1 to Gilliam Declaration (App.1-100); Exhibit 1 to Winford Declaration (App.101-228). Exhibit 1 to Pryor Declaration (App.229-311).

[86] App.231,233-234, Pryor Declaration, ¶8, 13, 17; App.6-7, Gilliam Declaration, ¶10; App.101-102, Winford Declaration ¶3.

[87] App.235-309, Exhibits 1 and 2 to Pryor Declaration; App.9-57, Exhibit 1 to Gilliam Declaration (Gilliam's hours); Exhibit 2 to Gilliam Declaration, App.58-65 (documenting Chappell's hours) and App.66-94 (documenting Jennings's hours); App.101-102, Exhibit 1 to Winford Declaration.

[88] App.229-230, Exhibit 1 to Pryor Declaration, ¶3-4; App.5, Exhibit 1 to Gilliam Declaration ¶9; App.103, Exhibit 1 to Winford Declaration, ¶6.

[89] *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citing *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (*en banc*).

[90] *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976); *see also Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side).

To prosecute this case through the Court's entry of judgment, Carter's attorneys' incurred time investigating the facts,[91] preparing the complaints,[92] fighting several rounds of motions to dismiss from both Southwest and Local 556,[93] preparing and responding to extensive written discovery,[94] and fighting protracted discovery disputes for approximately three years.[95] Southwest's and Local 556's discovery tactics involved extensive conferencing to resolve disputes,[96] four motions to compel,[97] a motion for sanctions against Carter and her counsel,[98] and delays to the case. In one example of egregious conduct, Southwest demanded complex electronic discovery protocols involving search terms and custodians in May 2019 at the outset of discovery, only to concede that its e-discovery protocols were never necessary.[99] Southwest's later-abandoned e-discovery demands multiplied the time spent on discovery in this case.[100] Furthermore, Southwest and Local 556 demanded an overbroad protective order and over designated documents they produced as confidential subject to that order, which together forced Carter to expend additional time and resources to comply with the order.[101] After Southwest and Local 556 forced Carter to file documents under seal pursuant to that order, the Court concluded that virtually all of the information could be filed on the public docket.[102] Further, Carter's counsel also incurred time in

---

[91] App.9-10, 58, 66-68.
[92] App.10-11, 58, 66-71.
[93] App.11-18, 58-60.
[94] App.18-36, 39-42, 60-63, 80-93.
[95] App.18-36, 39-42, 60-63, 80-93.
[96] *Id*.
[97] Doc. Nos. 92-99, 114, 117, 120-122, 127, 132-134; App.25-36, 60-61, 88-93.
[98] Doc. Nos. 100-112, 125, 126; App.29-32, 61, 89-91.
[99] *See supra* at 4-5.
[100] *See supra* at 4-5.
[101] App.42 (8/30/21-9/2/21 entries); App.43 (10/1/21-10/4/21 entries); App.45 (1/31/22-2/17/22 entries); App.63 (9/2/21, 1/31/22-2/18/22 entries).
[102] Doc. Nos. 171, 196, 199, 217-218, 225-227.

briefing cross-motions for summary judgment against Southwest and Local 556,[103] preparing and filing the pretrial order, reports, and jury instructions,[104] preparing for trial,[105] *voir dire*,[106] conducting a six-day jury trial,[107] and post-trial briefing of additional relief.[108]

Carter calculated an initial "lodestar amount" of $2,671,214.10 in attorneys' fees based on the attorneys' total hours incurred over the 5-year history of this case at their respective hourly rates:[109]

| Attorney | Hourly Rate | Total Hours | Initial Lodestar | Hours Claimed | Fee Claimed |
|---|---|---|---|---|---|
| Matthew B. Gilliam | $350 | 5,060.8 | $1,771,280.00 | 4,715.4 | $1,650,390.00 |
| Jeffrey D. Jennings | $300 | 1,392.4 | $417,720.00 | 570.1 | $171,030.00 |
| Milton L. Chappell | $400 | 388.6 | $155,440.00 | 161.8 | $64,720.00 |
| Jason Winford | $375 | 104.7 | $39,611.60 | 104.7 | $39,611.60 |
| Matthew Hill | $395 | 337.1 | $133,154.50 | 337.1 | $133,154.50 |
| Bobby Pryor | $495 | 292.4 | $144,738.00 | 292.4 | $144,738.00 |
| Jami Lair | $160 | 23.7 | $3,792.00 | 23.7 | $3,792.00 |
| Cristina Garcia | $110 | 49.8 | $5,478.00 | 49.8 | $5,478.00 |
| **TOTALS** | - | 7,649.5 | $2,671,214.10 | 6,255.0 | $2,212,914.10 |

---

[103] App.37-44, 62-63.

[104] App.46-51, 63-64, 235-246, 248-250.

[105] *Id.*

[106] *Id.*; App.250-251.

[107] App.52-53, 250-254.

[108] App.53-57, 64-65, 254, 257-262.

[109] The Supreme Court has "established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citation omitted); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 554 (2010). But a fee petitioner can overcome that in circumstances where the lodestar does not account for certain crucial factors. *See infra* at 21-25; *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 716 (5th Cir. 1974).

Carter reduced the total hours to the hours claimed in several steps. First, Carter completely excluded time for Foundation attorneys Bruce N. Cameron (22.2 hours), Heidi E. Schneider (79.2 hours), James C. Devereaux (17.5 hours), and Christian C. Wilson (91.9 hours), and Jenkins & Watkins attorney David Watkins—totaling 211.8 hours of work—in the exercise of billing judgment, notwithstanding their contributions to the case.[110] Carter, in a further exercise of billing judgment, also excluded all time for Foundation legal assistants and paralegals for work performed over the five and a half year duration of the case.

Second, Carter excluded 1,394.5 hours from Foundation attorneys Gilliam's, Chappell's, and Jennings's time in the exercise of billing judgment. Carter excluded 345.4 hours of Mr. Gilliam's time in the exercise of billing judgment.[111] As part of these reductions Gilliam excluded 37.5 hours for initial client meetings, investigation and research of the case,[112] 38.3 hours related to or involving the arbitration,[113] and 86.3 hours of time responding to Southwest and Local 556's first motion to dismiss as time unrelated to whether Carter alleged a causal nexus between her protected speech and her termination, whether her communications lost their protection, and whether President Stone acted in her official capacity.[114] Those issues from the motion to dismiss persisted throughout the case and at trial with respect to all claims. Carter reduced that time by applying a 70% reduction to hours spent on that motion to dismiss. Carter also excluded 15.7 hours of Gilliam's time spent preparing the response to Southwest's motion for reconsideration, which the Court denied before Carter filed a response,[115] and 36.6 hours related to the Nevarez sanctions

---

[110] App.7, Gilliam Declaration, ¶10; App.102-103, Winford Declaration ¶5.
[111] App.6-7, Gilliam Declaration, ¶10.
[112] *Id.* (various entries from 4/18/17-6/2/17).
[113] *Id.* (various entries between 9/1/17 and 1/8/18).
[114] *Id.* (various entries between 10/17/17 and 11/14/17).
[115] *Id.* (various entries between 5/20/22 and 5/24/22).

motion, for which the Court has already awarded Carter fees.[116] Carter also excluded 59 hours of Gilliam's travel time between Springfield, Virginia, and Dallas, Texas, for Court hearings, oral arguments, conferences, and trial-related proceedings, and another 72 hours for other unrelated and/or redacted time entries.[117]

Carter excluded 226.8 hours from Mr. Chappell's time in the exercise of billing judgment, which included time for redacted entries, time related to Carter's arbitration, time that was not reasonably necessary to the case, excessive time, and duplicative time.[118] Carter further excluded 822.3 hours from Mr. Jennings' time in the exercise of billing judgment, which included time for unrelated and/or redacted entries, time related to Carter's arbitration, entries with inadequate detail, excessive time, duplicative time, and all travel time based on his role as second chair at case conferences and oral arguments.[119] As a result, Carter claims 6,255.0 total hours ($2,212,914.00) for time spent on this case.

### C. Reasonable Out-of-Pocket Expenses

The Court should also award Carter a total of $49,523.89 in reasonable out-of-pocket expenses incurred by counsel for travel, lodging, meals, Court reporter fees, deposition expenses, videographer fees, and other litigation expenses. The expenses awardable under Title VII include not only the costs that are available to a prevailing party in a bill of costs, but all other costs that an attorney would normally charge to a fee-paying client.[120] Accordingly, should the clerk fail to

---

[116] *Id.* (various entries between 7/1/22, 7/4/22, 75/22, 7/27/22, 8/8/22, 8/9/22, and 11/16/22-11/18/22).
[117] *Id.*
[118] *Id.*
[119] *Id.*
[120] *See, e.g., Mota*, 261 F.3d at 529 (in a prevailing party fee award under Title VII, 42 U.S.C. § 2000e-5(k), holding that a reasonable attorney's fee includes costs items beyond those allowed under 28 U.S.C. § 1920, including all reasonable costs charged a fee-paying client; *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (in a

award any of the expenses itemized in the Bill of Costs filed concurrently with this motion, the Court should award such amounts as expenses. The Foundation incurred $49,523.89 in total out-of-pocket expenditures, which are reflected in **Exhibit 3** to Mr. Gilliam's declaration, **Exhibit 1** to Mr. Winford's declaration, and **Exhibit 3** to Mr. Pryor's declaration.[121] Carter details the relevant out-of-pocket expenditures the Foundation directly incurred on her behalf ($41,818.51) in **Exhibit 3** to Mr. Gilliam's declaration.[122] The relevant out-of-pocket expenditures Pryor & Bruce incurred on Carter's behalf ($7,333.78) are detailed in the exhibit to Mr. Pryor's declaration,[123] all of which the Foundation paid to Pryor & Bruce on Carter's behalf.[124] The relevant out-of-pocket expenditures Jenkins & Watkins incurred on Carter's behalf ($371.60) are detailed in the exhibit to Mr. Winford's declaration,[125] all of which the Foundation paid to Jenkins & Watkins on Carter's behalf.[126] Carter has excluded from such amounts the expenses already awarded to her as sanctions related to Brett Nevarez's deposition.

Counsel's summaries documenting out-of-pocket expenditures are derived from accurate and routinely prepared compilations of the daily contemporaneous records of necessary expenditures maintained in the ordinary course of business.[127] Carter also excluded expenses the Court awarded

---

prevailing party fee award under 42 U.S.C. § 1988, affirming the trial court's award of out-of-pocket expenses, including charges for copies, travel and telephone, noting that such items are "plainly recoverable" because they are part of the costs normally charged to fee-paying clients).

[121] **Exhibit 3** to Gilliam's Declaration (App.96-99); **Exhibit 1** to Winford's declaration (App.109, 112, 126, 128, 182, 185, 193, 195); **Exhibit 3** to Pryor's declaration (App.310-311).

[122] *See* **Exhibit 3** to Gilliam's Declaration (App.96-99).

[123] App.310-311, **Exhibit 3** to Pryor Declaration.

[124] App.233, Pryor Declaration, ¶14.

[125] **Exhibit 1** to Winford's declaration (126, 128, 182, 185, 193, 195) Carter submitted with her Bill of Costs an additional $270.04 for service of process fees and a $40 witness fee for deposition witness Denise Gutierrez as identified on Exhibit 1 to Winford's Declaration, and excludes those costs from the expenses claimed here. App.109, 112, 193, 195.

[126] App.105, Winford Declaration, ¶11-12.

[127] App.230, Pryor Declaration, ¶4; App.105, Winford Declaration, ¶12; App.6, Gilliam Declaration, ¶9.

pursuant to Carter's sanctions motion ($1,465.00).[128] While the declarations of Carter's counsel contain all of the out-of-pocket expenses and costs incurred, including those recoverable under 28 U.S.C. § 1920, Carter contemporaneously files a separate Bill of Costs for $21,670.10 in costs associated with this case.[129] The Court should order Southwest and Local 556 to pay the Foundation for $2,212,914.00 in reasonable attorneys' fees, and $49,523.89 for expenses.[130]

## III. The Court should adjust the lodestar upward because this is an exceptional case.

The Court's second step is to consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[131]

> The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[132]

While there is ordinarily a strong presumption that the lodestar amount is reasonable, and that a court should modify the lodestar "only in exceptional cases,"[133] *this is an exceptional case.* Carter

---

[128] Doc. No. 373, p.7.

[129] App.100, Exhibit 3 to Gilliam Declaration.

[130] All fees charged by Pryor & Bruce and Jenkins & Watkins have been paid by the Foundation on Carter's behalf with the exception of the December 1 and December 19 Pryor & Bruce invoices, and the Foundation has sent payment for the December 1 invoice. App.233-234, Pryor Declaration, ¶14-16; App.105, Winford Declaration, ¶11-12; App.8, Gilliam Declaration, ¶12.

[131] *Vaughn*, 2020 WL 1695695, *6 (citing *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

[132] *Dodge v. Hunt Petroleum Corp.*, 174 F. Supp. 2d 505, 509 n.3 (N.D. Tex. 2001) (citing *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987)) (other citations omitted).

[133] *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citation omitted).

requests an upward adjustment of 25% of the total attorney's fees sought or such greater amount as the Court, in its discretion deems appropriate.

***Amount involved and the results obtained.*** Carter achieved a victory on all claims. "[T]he most critical factor is the degree of success obtained."[134] Carter's victory in this case is clearly demonstrated by the Court's reinstatement of Carter to her employment with Southwest and entry of judgment of the jury's July 14, 2022 verdict, after that jury unanimously awarded Carter nearly $4.5 million against Southwest and Local 556 for their Title VII violations.[135] While federal law capped punitive damages against Southwest and Local 556, the jury's verdict speaks to Carter's extraordinary success in this case. Moreover, the Court determined that indeed Carter should get her job back along with comprehensive injunctive relief to prevent Southwest and Local 556 from harming other Southwest flight attendants the way they harmed her.[136] Carter achieved all the relief she hoped to win in bringing her lawsuit. Carter's victory vindicates the Title VII religious freedoms for Southwest flight attendants across the country.[137] Not only has Carter succeeded in enforcing her rights, she has helped safeguard the rights of more than 17,000 flight attendants nationwide.[138] The Court should adjust the lodestar upward based on this "most critical factor."

***Time and labor required*** The Foundation has spent more than five years representing Carter and litigating this case without any compensation, fronting not only attorney hours but out-of-pocket expenses.[139] The hours incurred by Carter's counsel reflect the time and labor required to prosecute her case from the drafting of the complaint through judgment, and continuing through

---

[134] *Hensley*, 461 U.S. at 436; *Saizon*, 448 F.3d at 799.
[135] Doc. Nos. 348, 374, 375.
[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] App.8, Gilliam Declaration, ¶13.

today.[140] Southwest and Local 556 vigorously contested Carter's claims at every stage of the litigation, and adopted an extremely aggressive strategy in discovery.[141]

*Novelty and difficulty of the questions.* Carter's case presented many new issues in the Fifth Circuit involving the application of the Supreme Court's *Abercrombie* decision.[142] Furthermore, as the Court recognized in structuring *voir dire*, trying Carter's case before a jury involved particularly difficult issues of presentation given the centrality of abortion-related speech to the case and the emotions stirred in the wake of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), shortly before trial.[143]

*Skill required*. The issues in Carter's case required attorneys skilled in labor and employment law, and, in particularly attorneys knowledgeable about issues involving both Title VII religious discrimination and compulsory unionism. As their declarations demonstrate, Carter's attorneys are experienced in labor and employment law.[144] Not only did trying Carter's case require Gilliam's knowledge of Carter's case and the legal issues at stake, but it also required Pryor's and Hill's knowledge, skills, and experience in trying cases before a jury.

*Customary fee.* Carter's attorneys all charged fees well below the prevailing rates of attorneys with similar expertise and experience in the Dallas, Texas market.[145] Having claimed hourly rates below the prevailing market rate for Gilliam, Pryor, Hill, Winford, Chappell, and Jennings, this factor warrants an increase to the lodestar amount.[146]

---

[140] *See supra* at 16-17.
[141] *See supra* at 16-17.
[142] Doc. No. 221, pp.51-59; Doc. No. 223, pp.33-52, Doc. No. 225, pp.31-36; *see also* Doc. No. 374, pp.20-23.
[143] *See e.g.*, Doc. No. 272, June 16, 2022 Pretrial Transcript, Tr.81:16-83:16, 92:21-93:2.
[144] App.101-102*,* Winford Declaration ¶3; App.1-4, Gilliam Declaration, ¶3-5, 7-8; App.231-232*,* Pryor Declaration, ¶9-10.
[145] *See supra* at 7-8, 13.
[146] *See supra* at 12.

***Whether fee is fixed or contingent.*** The Foundation provided Carter with free legal aid (i.e., all of the funding for her case).[147] The Foundation reimbursed and/or paid Jenkins & Watkins and Pryor & Bruce for all of their fees and expenses.[148] Litigating this extraordinary case for more than five years against Southwest, a nationwide corporation worth billions of dollars, and TWU Local 556, a union that represents over 17,000 flight attendants, would be cost prohibitive for most ordinary employees, who, instead of fighting to enforce her Title VII rights, could be easily cowed into submission by litigation fees and expenses.

***Experience, reputation, and ability of the attorneys***. Carter's attorneys have set forth the details regarding their experience, reputation, and ability in labor and employment law in their declarations.[149]

***Undesirability of the case***. From the perspective of a member of the bar, Carter's case might be deemed undesirable given the difficulty of taking on Southwest and the TWU Local 556 union, and the controversial nature of the issues involved. Furthermore, Southwest's and Local 556's aggressive litigation strategies in discovery and pursuit of sanctions also made fighting this case for five years undesirable.[150]

***Nature and length of the professional relationship with the client***. Carter and her attorneys at the Foundation have had an attorney-client relationship that has lasted for more than five years while she has pursued her claims against Southwest and Local 556.[151]

---

[147] App.8, Gilliam Declaration, ¶13.
[148] App.8, Gilliam Declaration, ¶13; *see supra* at p.19-21, 21 n.133.
[149] App.101-102*,* Winford Declaration ¶3; App.1-4, Gilliam Declaration, ¶3-5, 7-8; App.231-232; Pryor Declaration, ¶9-10.
[150] *See supra* at 2-8.
[151] App.1, Gilliam Declaration, ¶1; App.101*,* Winford Declaration ¶1; App.229*,* Pryor Declaration, ¶1.

## CONCLUSION

For the foregoing reasons, the Court should award Carter a total of $2,262,437.89, which includes $2,212,914.00 in reasonable attorneys' fees, $49,523.89 in expenses, plus a 25% lodestar enhancement, and $21,670.10 in costs, and order Southwest and Local 556 to pay those amounts as requested herein and in the Bill of Costs and other documents filed contemporaneously herewith.

Dated: December 19, 2022                    Respectfully submitted,


/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343


*Attorneys for Plaintiff Charlene Carter*

25

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

<u>By: **/s/ Matthew B. Gilliam**</u>