## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>     Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>     Defendants. | Civil Case No. 3:17-cv-02278-X |

### PLAINTIFF CHARLENE CARTER'S MOTION AND INCORPORATED BRIEF TO FIND SOUTHWEST AIRLINES CO. IN CONTEMPT FOR VIOLATING THE COURT'S DECEMBER 5, 2022 ORDER AND FOR FURTHER RELIEF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

SUMMARY ................................................................................................................1

ARGUMENT AND AUTHORITIES ..........................................................................2

   I.   Southwest's misleading "Recent Court Decision" notice violated the Court's injunction requiring the company to notify flight attendants that the company *may not* discriminate against them...........................................................................3

   II.  Southwest's IIOTG Memo violated the Court's injunction by discriminating against flight attendants' religious practices and beliefs expressed on social media and those concerning abortion, discriminating against Carter for exercising her RLA-protected rights, and preemptively repudiating the court-ordered notifications the company was required to issue ......................................5

   III. The Court should remedy violations caused by Southwest's "Recent Court Decision" notice and IIOTG Memo by ordering Southwest to issue revised notices, ordering the company and responsible counsel and officials to pay sanctions to the Court, and issuing any other sanctions the Court deems warranted ..........9

        A.  Southwest should immediately issue corrective notices.......................................10

        B.  The Court should also issue monetary and other sanctions against Southwest.................................................................................................12

CONCLUSION...........................................................................................................13

# TABLE OF AUTHORITIES

Case                                                                        Page(s)

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,

    228 F.3d 574 (5th Cir. 2000) ...............................................................2, 10, 12

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,

    53 F. Supp. 2d 909 (N.D. Tex. 1999) ...................................................... *passim*

*Connolly v. J.S. Ventures*,

    851 F.2d 930 (7th Cir. 1988) ...........................................................................13

*Fla. Steel. Corp. v. NLRB*,

    648 F.2d 233 (5th Cir. 1981) ...........................................................................10

*Giboney v. Empire Storage & Ice Co.*,

    336 U.S. 490 (1949)............................................................................................8

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers*,

    609 F.2d 165 (5th Cir. 1980) .............................................................................2

*NLRB v. Laborer's Int'l Union of North Am.*,

    882 F.2d 949 (5th Cir. 1989) ...........................................................................13

*NLRB v. Maine Caterers, Inc.*,

    732 F.2d 689 (1st Cir. 1984)............................................................................13

*Petroleos Mexicanos v. Crawford Enters., Inc.*,

    826 F.2d 392 (5th Cir. 1987) .............................................................................8

*R.A.V. v. City of St. Paul*,

    505 U.S. 377 (1992)............................................................................................8

*S.E.C. v. First Fin. Grp. of Tex., Inc.*,

    659 F.2d 660 (5th Cir. 1981) .............................................................................2

*Test Masters Educ. Servs., Inc. v. Singh*,

    428 F.2d 559 (5th Cir. 2005) ........................................................................8, 10

*Travelhost, Inc. v. Blandford*,

    68 F.3d 958 (5th Cir. 1995) .............................................................................12

*United States Steel Corp. v. United Mine Workers of Am., Dist.* 20,

    598 F.2d 363 (5th Cir. 1979) ..........................................................................2, 7

# TABLE OF AUTHORITIES

Page(s)

Case

*United States v. United Mine Workers of Am.*,

      330 U.S. 258 (1947)..........................................................................................................12


**Rules, Statutes, Other**

Fed. Rule of Civ. Proc. Rule 70(e)...............................................................................................1

Civil Rights Act of 1964, Title VII

      42 U.S.C. § 2000e *et seq.*............................................................................ *passim*

Railway Labor Act,

      42 U.S.C. § 151 *et seq.*............................................................................... *passim*

**SUMMARY**

Pursuant to the Court's inherent powers and Federal Rule of Civil Procedure 70(e), Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this motion to find Southwest Airlines Co. ("Southwest") in contempt for violation of the Court's December 5, 2022 Order and Judgment.[1] Instead of obeying this Court's order requiring Southwest to inform flight attendants that the company *may not discriminate* against them because of their religious practices and beliefs, Southwest falsely told flight attendants in a December 20, 2022 "Recent Court Decision" notice that the Court ordered the company to notify them that it *does not discriminate* on the basis of religion.

At the same time, in a separate December 20, 2022 "Inflight Information On The Go" ("IIOTG") Memo to all flight attendants, Southwest discriminated against flight attendants' religious practices and beliefs on social media concerning abortion, criticized Carter for her religious beliefs and practices, and discriminated against her RLA-protected speech. Southwest chilled and restrained flight attendants' exercise of religious practices and beliefs by insisting that their exercise must be courteous, ominously warning flight attendants that the company will decide what is courteous, and characterizing Carter's exercise of religious practices and beliefs as unacceptable and not courteous.

Carter requests that the Court hold Southwest in contempt for flouting the Court's order and for making misleading, coercive, and discriminatory statements to flight attendants in the company's "Recent Court Decision" notice and IIOTG Memo. Accordingly, the Court should require the company to immediately issue corrective notices as requested herein.

---

[1] Doc. Nos. 374, 375.

Carter also requests that the Court, at its earliest convenience, hold a show cause evidentiary hearing to determine why Southwest and responsible counsel and officials should not be subject to monetary and other sanctions for intentionally violating the Court's orders, and further order Southwest, to produce, prior to the hearing, information to Carter's counsel as requested herein.

## ARGUMENT AND AUTHORITIES

The Court should hold Southwest in contempt for violating the court-ordered injunctions requiring Southwest to notify flight attendants that the company *may not* discriminate against them for their religious beliefs and practices[2] and enjoining Southwest from discriminating against flight attendants for their religious practices and beliefs and discriminating against Carter for exercising her RLA-protected rights.[3] To demonstrate contempt, a movant must show by clear and convincing evidence that (1) a court order is in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the Court's order.[4]

This Court entered judgment against Southwest on December 5, 2022, adopting immediately effective injunctive orders that have remained in effect at all times through the present.[5] "An order issued by the Court with jurisdiction over the subject matter and person must be obeyed until it is reversed."[6] Here, the Court specifically ordered Southwest:

- "[T]o inform Southwest flight attendants that, under Title VII, the Defendants may not discriminate against Southwest flight attendants for their religious practices and beliefs,

---

[2] Doc. No. 375, p.3 ¶10.

[3] *Id*. at p.2 ¶5-7.

[4] *See e.g., Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 938 (N.D. Tex. 1999); *see also S.E.C. v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers*, 609 F.2d 165, 168 (5th Cir. 1980); *see also Am. Airlines, Inc.*, 53 F. Supp. 2d at 939 ("Willfulness is not an element of civil contempt.").

[5] Doc. Nos. 374, 375.

[6] *United States Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979).

including—but not limited to—those expressed on social media and those concerning abortion."[7]

- Not to "discriminat[e] against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion."[8]
- Not to "fail[] to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances."[9]
- Not to "discriminat[e] against Carter for exercising her rights, under the Railway Labor Act, to resign from membership in Local 556 and to object to the forced payment of political and other nonchargeable union expenses, including—but not limited to—objections to union expenditures that are expressed in social media posts."[10]

Fifteen days after the Court issued its judgment, Southwest violated the Court's orders with two actions: On Tuesday, December 20, 2022, Southwest emailed all flight attendants a misleading "Recent Court Decision" notice[11] that violated the Court's requirement for Southwest to notify flight attendants the company may not discriminate against them for their religious beliefs and practices. Also on December 20, Southwest sent flight attendants an "Inflight Info On The Go" ("IIOTG") Memo that discriminated against flight attendants' religious practices and beliefs expressed on social media and those concerning abortion, discriminated against Carter for exercising her RLA-protected rights, and preemptively repudiated the court-ordered notifications the company was required to issue.[12]

**I. Southwest's misleading "Recent Court Decision" notice violated the Court's injunction requiring the company to notify flight attendants that the company *may not* discriminate against them.**

Southwest's "Recent Court Decision" email notice to flight attendants (Exhibit 2) violated the Court's injunctive order in Paragraph 10. The Court ordered Southwest to inform flight attendants

---

[7] Doc. No. 375, p.3 ¶10.
[8] *Id*. at p.2 ¶5.
[9] *Id*. at p.2 ¶6.
[10] *Id*. at p.2 ¶7.
[11] *See* Ex. 2, Recent Court Decision notice (App.6); *see also* Ex. 5 (App.9, ¶3)
[12] *See* Ex. 3, IIOTG Memo (App.7); *see also* Ex. 5 (App.9, ¶4).

that under Title VII Southwest "***may not*** discriminate against Southwest flight attendants."[13] But Southwest told flight attendants, "[t]he court also ordered us to inform you that Southwest ***does not*** discriminate against our Employees for their religious practices and beliefs. . . ."[14]

Southwest's assertion that the Court told the company to inform flight attendants it "***does not*** discriminate" is patently false and misleading, misrepresents the Court's judgment and jury verdict, and undermines the purpose of that relief. The Court's judgment clearly states, "A jury found that Southwest Airlines Co. … discriminated against Charlene Carter for her protected speech about religion and unions."[15] The Court explained the purpose for notice relief, saying it "requires Southwest … to notify [its] flight attendants of this Title VII injunction that now applies to them."[16] Rather than inform flight attendants that the Title VII injunction applies to them, Southwest suggests that the Court determined there is no need for the Title VII injunction to apply to them because the Court decided that Southwest "does not" discriminate against flight attendants' religious beliefs and practices in the first place. That, of course, is mistaken.

Southwest seized an opportunity to play games with the language to alter the meaning in such a way as to mislead flight attendants as to both what the Court had found and what its order required. The Northern District has found contempt when a party subject to a court-ordered injunction employed such tactics, and captured the nature of such conduct in terms that apply here: "Not only was this gamesmanship outrageous, it was patently unwise to think this transparent charade … would not be seen for what it was."[17] Southwest legal department's decision to change the meaning from Southwest will not discriminate going forward to create the impression that

---

[13] Doc. No. 375, p.3 ¶10.
[14] Ex. 2 (App.6) (emphasis added).
[15] Doc. No. 375, p.1.
[16] Doc. No. 374, p.3; *see also id*. at pp.2-3.
[17] *Am. Airlines, Inc.*, 53 F. Supp. 2d at 929.

Southwest has never discriminated cannot be accidental. Furthermore, when read together with Southwest's IIOTG Memo, it is clearly contrary to the Court's order.

## II. Southwest's IIOTG Memo violated the Court's injunction by discriminating against flight attendants' religious practices and beliefs expressed on social media and those concerning abortion, discriminating against Carter for exercising her RLA-protected rights, and preemptively repudiating the court-ordered notifications the company was required to issue.

Southwest's IIOTG Memo (Exhibit 3) violated the Court's injunctive orders in Paragraphs 5-7. "Under Title VII, the Court enjoin[ed] Southwest and Local 556 from violating the religious speech of Southwest flight attendants."[18] The Court enjoined Southwest from "discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion."[19] The Court also ordered Southwest "to inform Southwest flight attendants" that the company may not discriminate against them on those bases.[20]

Southwest's IIOTG Memo, published and disseminated to the company's 17,000 flight attendants, shows that the company will treat differently (i.e. discriminate against) flight attendants' religious practices and beliefs if they are like Carter's, including those expressed on social media and those concerning abortion. Southwest's IIOTG Memo gives flight attendants ominous reminders that Southwest terminated Carter for her religious messages concerning abortion, which it disparaged as "inappropriate, harassing, and offensive" for all flight attendants to see.[21] Southwest also reminds its flight attendants that the company's arbitrator backed Southwest's termination decision and called Carter's protected religious speech "repulsive and

---

[18] Doc. No. 374, p.3.
[19] Doc. No. 375, p.2 ¶5.
[20] *Id.* at p.3 ¶10.
[21] Ex. 3 (App.7).

beyond the bounds of civility."[22] Southwest's Memo exhibits discriminatory animus toward those flight attendants who would exercise "their religious practices and beliefs," as Carter did, "including—but not limited to—those expressed on social media and those concerning abortion."[23] Southwest's Memo thereby chills and restrains employees' religious beliefs and expression under Title VII.

Thus, Southwest's memo does the opposite of informing flight attendants that the company will not discriminate against their religious practices and beliefs under Title VII. Southwest's suggestive and derogatory characterizations of Carter's religious beliefs and practices also signal a preemptive refusal to accommodate flight attendants' sincerely held religious practices and beliefs, and thus restrain employees' rights as protected by that Court-ordered injunctive relief.[24]

Furthermore, Southwest conveyed to flight attendants that the company will continue to enforce its social media policies against their religious expression, practices, and beliefs if Southwest decides that they did not exercise them in a civil and respectful manner.[25] Southwest makes clear that the company will be the arbiter of what protected conduct is courteous and what religious expression the company is willing to permit, as it did with Carter.[26] Southwest's communication shows that nothing has really changed as to Southwest's enforcement of its social media policies.[27] These Southwest-imposed limitations on flight attendants' religious freedoms violate this Court's orders. Southwest's actions are particularly concerning in light of the Court's explanation of its rationale for issuing the injunction:

---

[22] *Id.*
[23] Doc. No. 375, p.2 ¶5.
[24] *See Id.* at p.2 ¶5-6; Ex. 3 (App.7).
[25] Ex. 3 (App.7).
[26] *Id.*
[27] *Id.*

> Because Southwest has only doubled down on its speech suppression since the jury's verdict, justice requires the Court to enjoin that unlawful conduct. And the policies of Title VII require the Court to prohibit that conduct more broadly, especially when Defendants appear poised to repeat it with other flight attendants.[28]

Southwest's memo also tells flight attendants that Carter's objections to the union's participation in the Women's March "created unnecessary tension among a workgroup," and "crossed the boundaries of acceptable behavior."[29] Thus, Southwest's memo violates the Court's injunction against treating Carter differently and less favorably by announcing to its 17,000 flight attendant employees that Carter, by making objections to union expenditures as expressed in her social media posts, "created [such] unnecessary tension among [her] workgroup" and that she "crossed the boundaries of acceptable behavior."[30]

Southwest's IIOTG Memo preemptively repudiates the Court's orders. While the company purports to comply with the orders, it simultaneously undermines their weight and importance with interjections that Southwest is "extremely disappointed with the court's ruling," "appealing the decision to the Fifth Circuit Court of Appeals," and is only "implement[ing] the judgment" as it "work[s] through the appeal process and await[s] a final ruling."[31] Essentially, Southwest throws cold water on the legitimacy of the Court's orders and jury verdict in the workplace at the same time the company purports to carry out those orders. Thus, Southwest leaves flight attendants uncertain regarding the legal effect of the Court's orders and jury verdict. Southwest's notices were "'so lacking in authoritative forcefulness that they either were not heard at all … or were discounted as being merely stage lines parroted for the benefit of some later judicial review.'"[32]

---

[28] Doc. No. 374, p.28.
[29] Ex. 3 (App.7).
[30] *Id*.
[31] *Id*.
[32] *United States Steel Corp.*, 598 F.2d at 366.

As this Court previously stated, Southwest's "disagreement with the Court's Order is not a valid basis for [its] failure to comply."[33]

Southwest may express its opinions and views regarding the jury verdict and its plans to appeal.[34] But "[c]ourts have made a distinction between communication and harassment. The difference is one between free speech and conduct that may be proscribed."[35] While "restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech."[36] Courts do have the power to enjoin discriminatory communications, including those that coerce, restrain, and discriminate against employee rights in violation of Title VII, a statute enacted pursuant to Congress's powers.[37] Similarly, Southwest may express its opinions and views regarding the jury's verdict and its plans to appeal, but it may not leverage that right to undermine its duties and obligations under a court-ordered injunction and nullify the orders' legitimacy. That is what Southwest did here when the IIOTG Memo signaled to flight attendants that the company's court-ordered notification in the forthcoming Recent Court Decision notice was nothing more than window dressing.

While the respondent can ordinarily attempt to defend against the movant's *prima facie* case of civil contempt by showing its inability to comply with the Court's order, Southwest cannot make such a showing here.[38] Not only has Southwest demonstrated that it is capable of making the

---

[33] Doc. No 366, p.5.

[34] *See* Ex. 6 (App.12).

[35] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949), *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992)).

[36] *Test Masters Educ. Servs., Inc.*, 428 F.3d at 580 (citations omitted).

[37] *Id.* (citation omitted).

[38] *See Am. Airlines, Inc.*, 53 F. Supp. 2d at 939 (citing *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) (cleaned up).

necessary communications, Local 556 issued the communication as required by the Court order.[39]

Carter's counsel contacted Southwest's counsel on Thursday, December 22, 2022, regarding

Carter's objections to Southwest's communications, and her counsel's requests that Southwest

remedy those objections and conform to the Court's order, with the revised notices provided for

below.[40] Southwest refused the requests of Carter's counsel.[41]

### III. The Court should remedy violations caused by Southwest's "Recent Court Decision" notice and IIOTG Memo by ordering Southwest to issue revised notices, ordering the company and responsible counsel and officials to pay sanctions to the Court, and issuing any other sanctions the Court deems warranted.

Given that Southwest's "Recent Court Decision" notice and IIOTG Memo violated the Court's

December 5 orders, the Court should order Southwest to immediately issue corrective notices to

all flight attendants that remedy the company's false, misleading, coercive, and discriminatory

statements, disclaim those prior communications, and inform flight attendants that the Court finds

Southwest in contempt for violating the Court's December 5 order as a result of those

communications. "When the gauntlet is thrown down to the authority of the Court and its lawful

orders, the Court has no choice but to pick it up."[42]

The Court need not hold a show cause hearing to find Southwest in contempt for violations

that are plain on the face of the "Recent Court Decision" notice and IIOTG Memo. The Court

should hold a show cause hearing to determine whether further sanctions are warranted, including

imposing monetary and other sanctions the Court deems warranted on Southwest and those

individual officials and counsel who intentionally caused the violations of the Court's orders.

---

[39] Ex. 4, Transport Workers Union of America Local 556 Notice to Flight Attendants (App.8); *see also* Ex. 5 (App.10, ¶5).
[40] *See* Ex. 1, Carter Counsel December 22, 2022 Letter to Southwest Counsel (App.1-4).
[41] *See* Ex. 6, Southwest Counsel December 28, 2022 Response Letter (App.11-13).
[42] *Am. Airlines, Inc.*, 53 F. Supp. 2d at 939.

**A. Southwest should immediately issue corrective notices.**

The Court should require Southwest to immediately issue corrective notices that remedy the company's violations caused by its "Recent Court Decision" notice and IIOTG Memo, conform them to the Court's December 5 judgment and order, and inform employees that the Court has held Southwest in contempt for its noncompliance. "Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process."[43] "[T]he proper aim of judicial sanctions for civil contempt is 'full remedial relief,' that such sanctions should be 'adapted to the particular circumstances of each case,' and that the only limitation upon the sanctions imposed is that they be remedial or coercive but not penal."[44] The public rights that a court order seeks to protect are important measures of the remedy.[45]

Southwest's revised notices should remedy the company's misrepresentations and coercive and discriminatory statements made to flight attendants in its "Recent Court Decision" notice and IIOTG Memo. Southwest's notices chilled and restrained flight attendants' rights under the Court's injunctions and Title VII. Southwest's IIOTG Memo also discriminated against Carter for engaging in RLA-protected activities. To remedy Southwest's misrepresentations in its "Recent Court Decision" notice, the Court should order Southwest to issue the following:

> *On December 20, 2022, Southwest's Legal Department issued an email to all flight attendants entitled "Recent Court Decision" regarding a federal court decision by the United States Court for the Northern District of Texas whereby the Court entered judgment against Southwest and Transport Workers Union, Local 556 after a jury found that they discriminated against Charlene Carter for her religious practices and beliefs. Among other things, the Court entered injunctive relief against Southwest and TWU Local 556, which prohibits them from discriminating against Southwest flight attendants for their religious practices and beliefs, and*

---

[43] *Test Masters Educ. Servs.*, 428 F.2d at 582 (citation omitted).
[44] *Fla. Steel. Corp. v. NLRB*, 648 F.2d 233, 239 (5th Cir. 1981) (internal citations omitted).
[45] *Am. Airlines, Inc.*, 228 F.3d at 585 (citations omitted).

*from failing to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances.*

*Southwest Legal Department's December 20 email misstated the Court's order and contained the misleading statement that "Southwest **does not** discriminate against our Employees, for their religious practices and beliefs." In fact, as recognized by the Court, "A jury found that Southwest Airlines Co. ... discriminated against Charlene Carter for her protected speech about religion and unions."*

*As we should have done previously, Southwest's Legal Department issues this corrected notice to inform you that, under Title VII of the Civil Rights Act, which prohibits employment discrimination based on religion, Southwest **may not** discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. Southwest's Legal Department apologizes for misrepresenting the Court decision and jury verdict in its prior statement on December 20, 2022.*[46]

To remedy Southwest's coercive and discriminatory statements in its IIOTG Memo and alleviate the chill and restraint on flight attendants' rights, the Court should order Southwest to issue the following revised memo:

*On December 20, 2022, Southwest sent inflight operations employees an "Inflight Info on the Go" news memo entitled "Recent Court Decision" regarding a federal court decision by the United States Court for the Northern District of Texas whereby that court entered judgment against Southwest and Transport Workers Union, Local 556 after a jury found that they discriminated against Charlene Carter's religious practices and beliefs.*

*Southwest's legal department made a number of statements in the memo that improperly chill and restrain employees' religious beliefs and expression in a manner that is inconsistent with the district court's order. First, Southwest wishes to make clear that, pursuant to the Court's December 5, 2022 order, the company may not discriminate against you for your sincerely-held religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. Nothing in that memo should be construed as tolerating discrimination based on your sincerely held religious beliefs and practices, whether under Southwest's social media policies or otherwise. Second, Southwest wishes to make clear that, pursuant to the Court's December 5, 2022 order, the employee's expression of objections to union expenditures on social media and at*

---

[46] Ex. 1 (App.1-2).

11

*issue in that decision did not create unnecessary tension in the workplace and did not cross the boundaries of unacceptable behavior.*[47]

**B. The Court should also issue monetary and other sanctions against Southwest.**

The Court should also impose monetary and other sanctions the Court deems warranted on Southwest for the "Recent Court Decision" notice's and IIOTG Memo's violations of the Court's orders. "A fine for civil contempt is a means to enforce a court order of injunctive relief."[48] The Court "has broad discretion in the assessment of damages in a civil contempt proceeding."[49] The Court should impose a monetary fine against Southwest to deter the company's continued violations of the Court's orders.[50]

Yet, it is clear that, thus far, imposing monetary sanctions on the company has not deterred Southwest's misconduct. Having violated Carter's protected rights in this case and previously flouted this Court's orders to make witness Brett Nevarez available,[51] Southwest's legal department has exhibited a persistent pattern of noncompliance with court orders and violation of employees' rights. Therefore, the Court should also conduct a show cause evidentiary hearing to determine whether and to what extent the Court should impose monetary or other sanctions individually against those Southwest officials and counsel who intentionally caused the company's

---

[47] Ex. 1 (App.3-4).

[48] *Am. Airlines, Inc.*, 53 F. Supp. 2d at 939; *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1995); *Am. Airlines, Inc.*, 53 F. Supp. 2d at 939 ("To give a court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give a court the power to grant a remedy without effective means to enforce it.").

[49] *Am. Airlines, Inc.*, 228 F.3d at 585 (citation omitted).

[50] Carter recognizes that such a fine would not be payable to her in these circumstances but would instead be payable to the Court.

[51] Doc. No. 366, pp.3-5. Instead of making Nevarez available as ordered by the Court, Southwest tepidly declared to Nevarez that it supported his testimony, and respectfully requested his attendance before strongly urging him to attend. *Id*. at p.3

violations of the Court's orders. Courts may sanction a corporation's officers for violating the court's orders.[52] The Court should, at its earliest convenience, hold a show cause evidentiary hearing at which all persons identified in response to Paragraph 1 below must be present, regarding why those Southwest officials and counsel who intentionally caused the company's violations of the Court's order should not be subject to monetary and other sanctions for intentionally violating the Court's order. Prior to the hearing, the Court should order Southwest to:

1. Identify for the Court and Carter's counsel all persons involved in crafting or approving the Recent Court Decision notice or the IIOTG Memo (Exhibits 2 and 3), whether employees, attorneys or other persons;

2. Produce all communications relating to the Recent Court Decision notice and the IIOTG Memo (Exhibits 2 and 3) to Carter's counsel, and a privilege log as to any communications for which a privilege is asserted; and

3. Provide all drafts of the Recent Court Decision notice and the IIOTG Memo (Exhibits 2 and 3) to Carter's counsel, and a privilege log as to any communications for which a privilege is asserted.

## CONCLUSION

For the foregoing reasons, the Court should hold Southwest in contempt based upon its "Recent Court Decision" notice and IIOTG Memo, and immediately require the company to issue corrective notices as requested herein. The Court should also, at its earliest convenience, hold a show cause evidentiary hearing for why Southwest and its responsible counsel and officials should

---

[52] *Am. Airlines, Inc.*, 53 F. Supp. 2d at 941 (citations omitted); *Connolly v. J.S. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988) ("a command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, an may be punished for contempt"); *NLRB v. Maine Caterers, Inc.*, 732 F.2d 689, 691 (1st Cir. 1984) ("[A]n officer, responsible for the corporation's affairs and for its disobedience, may be held liable for contempt."). *NLRB v. Laborers' Int'l Union of North Am.*, 882 F.2d 949, 954 (5th Cir. 1989) ("[A]ny party who knowingly aids, abets, or conspires with another to evade an injunction or order of a court is also in contempt of that court.").

not be subject to monetary and other sanctions for intentionally violating the Court's orders requiring notice of flight attendants' rights against discrimination under Title VII, enjoining Southwest from discriminating against them based on their religious practices and beliefs, and enjoining Southwest from discriminating against Carter based on her exercise of RLA-protected rights. The Court should order Southwest to provide Carter with the information requested herein on a date prior to the hearing.

Dated: December 30, 2022                    Respectfully submitted,


                                            /s/ Matthew B. Gilliam
                                            Mathew B. Gilliam (*admitted pro hac vice*)
                                            New York Bar No. 5005996
                                            *mbg@nrtw.org*
                                            c/o National Right to Work Legal Defense
                                            Foundation, Inc.
                                            8001 Braddock Road, Suite 600
                                            Springfield, Virginia 22160
                                            Tel: 703-321-8510
                                            Fax: 703-321-9319

                                            Bobby G. Pryor
                                            State Bar No. 16373720
                                            bpryor@pryorandbruce.com
                                            Matthew D. Hill, Of Counsel
                                            State Bar No. 24032296
                                            mhill@pryorandbruce.com
                                            PRYOR & BRUCE
                                            302 N. San Jacinto
                                            Rockwall, TX 75087
                                            Telephone: (972) 771-3933
                                            Facsimile: (972) 771-8343


                                            *Attorneys for Plaintiff Charlene Carter*

14

**Certificate of Conference**

I hereby certify that on December 22, 2022, I emailed Counsel for Southwest with the letter attached as Exhibit 1 to this motion regarding Carter's objections to Southwest's communications to flight attendants and requests to revise them to conform with the Court's December 5, 2022 Order. I further indicated in my email that I was available to confer further if Southwest desired to do so. Southwest attorney Paulo McKeeby responded that same evening, confirmed receipt of my email, and stated that he would be in touch through written response or other conferral. On December 27, 2022, Mr. McKeeby requested that Southwest have another day to respond given holiday travel issues, and I agreed. On December 28, 2022, Mr. McKeeby responded by letter, indicating that Southwest did not agree to Carter's requests and is opposed to this motion.[53]

/s/ Matthew B. Gilliam

**Certificate of Service**

I hereby certify that on December 30, 2022, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam

---

[53] *See* Ex. 6.