# EXHIBIT 1



# NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC.
8001 BRADDOCK ROAD, SUITE 600, SPRINGFIELD, VIRGINIA 22160

---

**MATTHEW B. GILLIAM**  
*Staff Attorney*  
Admitted & Licensed in New York and West Virginia Only

Phone: (703) 770-3339  
Fax: (703) 321-9319  
Email: mbg@nrtw.org

December 22, 2022

<u>*Via Email*</u>  
Paulo B. McKeeby  
Reed Smith LLP  
2850 N. Harwood Street, Ste. 1500  
Dallas, Texas 75201  
pmckeeby@reedsmith.com

Re: *Charlene Carter v. Transport Workers Union of America, Local 556 and Southwest Airlines Co.*; Civil Action No. 3:17-cv-2278-x

Dear Paulo,

On Tuesday, December 20, 2022, Southwest emailed flight attendants a communication entitled "Re: Recent Court Decision," and an "In Flight On the Go Memo." I am writing to convey Carter's objections to these communications and demands for revising them to conform to the Court's December 5, 2022 order. Furthermore, I also ask that Southwest address questions we have about certain requirements and restrictions Southwest is imposing on Carter's reinstatement. If Southwest does not respond fully at the times and in the manner requested below, Carter will proceed to file a motion for Southwest to be held in contempt for violation of the Court's order.

    1. **Southwest Communication "Re: Recent Court Decision"**

The Court ordered Southwest to inform flight attendants that "under Title VII" Southwest "***may not*** discriminate against Southwest flight attendants…" But Southwest's communication told flight attendants, "The court also ordered us to inform you that Southwest ***does not*** discriminate against our Employees, for their religious practices and beliefs." That representation is patently false, misleading, and misrepresents the Court's judgment and jury verdict: The Court's judgment states, "A jury found that Southwest Airlines Co. … discriminated against Charlene Carter for her protected speech about religion and unions." Southwest instead suggests that the Court ordered Southwest to inform employees *that it does not and has never engaged in religious discrimination*, which is patently false and misrepresents the jury's July 14, 2022 verdict and the Court's judgment.

Having failed to comply with the Court's order, Carter demands that Southwest issue a second notice stating as follows:

> *On December 20, 2022, Southwest's Legal Department issued an email to all flight attendants entitled "Recent Court Decision" regarding a federal court decision by*

1

**App.1**

> *the United States Court for the Northern District of Texas whereby the Court entered judgment against Southwest and Transport Workers Union, Local 556 after a jury found that they discriminated against Charlene Carter for her religious practices and beliefs. Among other things, the Court entered injunctive relief against Southwest and TWU Local 556, which prohibits them from discriminating against Southwest flight attendants for their religious practices and beliefs, and from failing to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances.*
>
> *Southwest Legal Department's December 20 email misstated the Court's order and contained the misleading statement that "Southwest **does not** discriminate against our Employees, for their religious practices and beliefs." In fact, as recognized by the Court, "A jury found that Southwest Airlines Co. … discriminated against Charlene Carter for her protected speech about religion and unions."*
>
> *As we should have done previously, Southwest's Legal Department issues this corrected notice to inform you that, under Title VII of the Civil Rights Act, which prohibits employment discrimination based on religion, Southwest **may not** discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. Southwest's Legal Department apologizes for misrepresenting the Court decision and jury verdict in its prior statement on December 20, 2022.*

Unless Southwest agrees to revise its statement as specified by Tuesday, December 27, 2022, by 6:00 p.m. ET, and to email the statement to all flight attendants by Wednesday, December 27, 2022, Carter will proceed to file a motion to hold Southwest in contempt for violating the Court's December 5, 2022 order.

**2. Inflight Info on the Go Memo: Recent Court Decision**

At the same time or prior to emailing the communication described in Paragraph 1 ("Re: Recent Court Decision"), Southwest's Legal Department also emailed flight attendants an "Inflight Info on the Go" Memo (IIOTG Memo) about the Court's decision in this case.

Southwest's December 20 IIOTG Memo was a preemptive repudiation of the court-ordered notices, and other injunctive relief, which, among other things, enjoined Southwest from

- Discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion
- Discriminating against Carter for exercising her rights, under the Railway Labor Act, to resign from membership in Local 556 and to object to the forced payment of political and other nonchargeable union expenses, including—but not limited to—objections to union expenditures that are expressed in social media posts

Southwest's memo, disseminated to the company's 17,000 flight attendants, conveys

discriminatory animus toward those flight attendants who would exercise "their religious practices and beliefs," as Carter did, "including—but not limited to—those expressed on social media and those concerning abortion." (Doc. No. 375, p.2 ¶5). Southwest's memo chills and restrains employees' religious beliefs and expression under Title VII with ominous reminders that Southwest terminated Carter for religious messages concerning abortion, which it disparaged as "inappropriate, harassing, and offensive" for all flight attendants to see. Southwest also reminds its flight attendants that the company's arbitrator backed Southwest's termination decision and called Carter's protected religious speech "repulsive and beyond the bounds of civility."

Southwest, in contravention of the Court's order, has conveyed to employees that the company will continue to enforce its social media policies against employees' religious expression, practices, or beliefs, if not exercised in what it deems to be a civil and respectful manner. Southwest's communication is the opposite of what the Court ordered it to do and itself constitutes a violation of Title VII. Southwest makes clear that the company will be the arbiter of what protected conduct the company is willing to permit, as it did with Carter. The entire communication makes clear that nothing has changed as to Southwest's enforcement of its social media policies.

Southwest's actions are particularly concerning in light of the Court's explanation of its rationale for issuing the injunction:

> Because Southwest has only doubled down on its speech suppression since the jury's verdict, justice requires the Court to enjoin that unlawful conduct. And the policies of Title VII require the Court to prohibit that conduct more broadly, especially when Defendants appear poised to repeat it with other flight attendants. (Doc. No. 374, p.28).

Southwest's memo also tells flight attendants that Carter's communications with former TWU Local 556 President Audrey Stone about her objections to the union's participation in the Women's March "created unnecessary tension among a workgroup," and "crossed the boundaries of acceptable behavior." Thus, Southwest's memo violates the Court's injunction against treating Carter differently and less favorably by announcing to its 17,000 flight attendant employees that Carter, by making objections to union expenditures as expressed in her social media posts, "created [such] unnecessary tension among [her] workgroup and that she "crossed the boundaries of acceptable behavior."

With Southwest having undermined and violated the Court's order, Carter demands that Southwest agree to issue the following statement in an updated IIOTG Memo regarding the Recent Court Decision, distributed in the same manner and to the same personnel as the IIOTG Memo:

> *On December 20, 2022, Southwest sent inflight operations employees an "Inflight Info on the Go" news memo entitled "Recent Court Decision" regarding a federal court decision by the United States Court for the Northern District of Texas whereby that court entered judgment against Southwest and Transport Workers Union, Local 556 after a jury found that they discriminated against Charlene Carter's religious practices and beliefs.*

> *Southwest's legal department made a number of statements in the memo that improperly chill and restrain employees' religious beliefs and expression in a manner that is inconsistent with the district court's order. First, Southwest wishes to make clear that, pursuant to the Court's December 5, 2022 order, the company may not discriminate against you for your sincerely-held religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion. Nothing in that memo should be construed as tolerating discrimination based on your sincerely held religious beliefs and practices, whether under Southwest's social media policies or otherwise. Second, Southwest wishes to make clear that, pursuant to the Court's December 5, 2022 order, the employee's expression of objections to union expenditures on social media and at issue in that decision did not create unnecessary tension in the workplace and did not cross the boundaries of unacceptable behavior.*

Unless Southwest agrees by Tuesday, December 27, 2022, by 6:00 p.m. ET, to revise its statements made in the December 20 IIOTG Memo as specified above, and to email it as an updated IIOTG memo to all flight attendants by Wednesday, December 27, 2022, Carter will proceed to file a motion to hold Southwest in contempt for violating the Court's December 5, 2022 order.

3. **Reinstatement**

Finally, on December 6, 2022, one day after the Court's entry of judgment, Southwest issued a Read Before Fly Memo declaring that "[a]ny Flight Attendants who haven't attended Recurrent Training in the previous 60 months or longer will be required to attend Initial Training." Prior to December 6, Southwest required that flight attendants who have been unqualified 24 months or longer attend a two-hour requalification process, and there was no separate requirement for flight attendants who had not attended recurrent training in the previous 60 months. Please explain when and why Southwest decided to include this requirement in its December 6 Read Before Fly Memo, identify all other flight attendants besides Charlene Carter who fall within this "60 months or longer" category and are scheduled for retraining, and explain why this policy change was not adopted to discriminate and retaliate further against Charlene who has been absent for more than 60 months only because of Southwest's unlawful actions.

The Court ordered that Southwest reinstate Carter "as a Southwest flight attendant with full seniority and benefits." Pursuant to Southwest's December 6 revision to its policy, Carter understands that Southwest will require her to attend four weeks of Initial Training with a reduced rate of pay, whereas flight attendants with her experience and seniority are paid in full for any days attending training. Please confirm that Carter will receive her full pay for days attending any training.

Unless Southwest agrees by Tuesday, December 27, 2022, by 6:00 p.m. ET, to provide this information and to provide Carter with her full pay during training, Carter will proceed to file a motion to hold Southwest in contempt for violating the Court's December 5, 2022 order regarding reinstatement.

5

    If Southwest does not respond fully at the times and in the manner requested above, Carter will file a motion for Southwest to be held in contempt for violation of the Court's order and seek the relief requested from Southwest herein. As part of that motion, Carter will also seek sanctions, a show cause evidentiary hearing as to why Southwest should not be held in contempt, and for Southwest to identify all persons involved in the creation and approval of the communications at issue, to produce all communications related to the communications at issue, to provide drafts of their communications, and to provide a privilege log as to any communications for which a privilege is asserted.

    I am available to further confer should you desire to do so.

                                                              Sincerely,

                                                            /s/ Matthew B. Gilliam

                                                            Matthew B. Gilliam