# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| **Defendants.** | | |

---

## SOUTHWEST AIRLINES CO.'S BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B); OR, IN THE ALTERNATIVE, FOR NEW TRIAL PURSUANT TO RULE 59(A); OR, IN THE ALTERNATIVE, FOR REMITTITUR

---

US_ACTIVE-170734314.7

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.    ARGUMENT ................................................................................................ 1

    A.    Exclusion of the Arbitrator's Decision and Related Testimony Was Improper ................................................................................................ 2

    B.    The Record Supports Judgment In Favor of Southwest With Respect to Carter's Title VII Claims or Alternatively, a New Trial ................... 5

        1.    Title VII – Reasonable Accommodation ................................... 5

            a.    The Court Erroneously Failed to Instruct the Jury Regarding the "Conflict" Element of Carter's Title VII Claim ................................................................. 5

            b.    There is No Evidence of a "Conflict" Between Carter's Religion and a Requirement of Her Employment ........................................................ 6

            c.    The Court Improperly Failed to Instruct the Jury that Southwest Had No Obligation to Accommodate Carter if She Violated Policy Prior to Southwest's Suspicion of Her Accommodation Need ................................................................ 8

            d.    Southwest Lacked Sufficient Knowledge of Carter's Need for an Accommodation to Trigger the Obligation to Provide One ................................... 9

            e.    The Court's Instruction Improperly Limited the Burdens the Jury Could Consider In Assessing Undue Hardship ................................................ 10

            f.    The Record Evidence Demonstrates that Accommodating Carter Would Have Imposed an Undue Hardship ................................................. 12

        2.    Southwest is Entitled to Judgment on Carter's Disparate Treatment Claim ................................................................... 13

        3.    The Jury's Emotional Distress Award for Alleged Title VII Violations Lacked an Evidentiary Basis and it Should Be Eliminated ................................................................ 14

        4.    There is Insufficient Evidence to Support the Punitive Damages Award ................................................................. 17

    C.    Southwest is Entitled to Judgment and/or a New Trial on the RLA Claim ................................................................................................ 20

        1.    The Court's RLA-Protected Activity Instruction Was Erroneous ................................................................. 20

2.      Partial Recitation of the RLA's Purpose Was Confusing and
        Prejudicial ................................................................................................ 23

D.      Southwest is Entitled to a Judgment and/or a New Trial on
        Mitigation ................................................................................................... 24

E.      Unfair Management of the Trial and Other Legal Errors Warrant
        Relief .......................................................................................................... 24

US_ACTIVE-170734314.7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aero Int'l v. United States Fire Ins. Co.*,
713 F.2d 1106 (5th Cir. 1983) ...........................................................................2

*Alexander v. Gardner-Denver Co.*,
415 U.S. 36 (1974)...............................................................................................2

*Antoine v. First Student, Inc.*,
713 F.3d 824 (5th Cir. 2013) ........................................................................10, 12

*Averett v. Honda of Am. Mfg.*,
2010 U.S. Dist. LEXIS 11307 (S.D. Ohio Feb. 9, 2010).................................12

*Baker Hughes*,
128 BNA LA 37 (2010) .......................................................................................4

*Baker v. Union Pac. R.R.*,
145 F. Supp. 2d 837 (S.D. Tex. 2001) ................................................................2

*Balderas v. Valdez*,
2018 U.S. Dist. LEXIS 124195 (N.D. Tex. July 25, 2018) ..............................10

*Beckett v. Atlas Air*,
968 F. Supp. 814 (E.D.N.Y. 1997) ...................................................................22

*Becton*,
687 F.2d at 142 ....................................................................................................4

*Benton v. United States EPA*,
2014 U.S. Dist. LEXIS 85308 (N.D. Tex. June 24, 2014) ...............................14

*Bob v. Madison Sec. Grp.*,
2016 U.S. Dist. LEXIS 163940 (S.D.N.Y. Nov. 28, 2016)................................9

*Brown v. Miss. Dep't of Health*,
256 Fed. Appx. 710 (5th Cir. 2007)...................................................................16

*Brown v. Trustees of Bos. Univ.*,
891 F.2d 337 (1st Cir. 1989)..............................................................................25

*Bryant v. Compass Grp. USA*,
413 F.3d 471 (5th Cir. 2005) .............................................................................13

US_ACTIVE-170734314.7

*Cent. Progressive Bank v. Fireman's Fund Ins. Co.*,
    658 F.2d 377 (5th Cir. 1981) ...............................................................................5

*Chalmers v. Tulon Co. of Richmond*,
    101 F.3d 1012 (4th Cir. 1996) ....................................................................8, 11, 12

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...............................................................................................25

*Constellium Rolled Prods. v. NLRB*,
    945 F.3d 546 (D.C. Cir. 2019) ...........................................................................22

*Decorte v. Jordan*,
    497 F.3d 433 (5th Cir. 2007) ..............................................................................14

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015)............................................................................................18

*EEOC v. Boh Bros. Constr. Co.*,
    731 F.3d 444 (5th Cir. 2013) ........................................................................17, 19

*Flowers v. S. Reg'l Physician Servs.*,
    247 F.3d 229 (5th Cir. 2001) ..............................................................................14

*Gen. Tel. Co. of the Nw. v. EEOC*,
    446 U.S. 318 (1980)............................................................................................25

*Gibson v. Wayfair, Inc.*,
    2018 U.S. Dist. LEXIS 107425 (S.D. Tex. June 27, 2018) ..................................13

*Giles v. GE*,
    245 F.3d 474 (5th Cir. 2001) ..............................................................................15

*Graef v. Chem. Leaman Corp.*,
    106 F.3d 112 (5th Cir. 1997) ................................................................................3

*Grizzle v. Travelers Health Network*,
    14 F.3d 261 (5th Cir. 1994) ................................................................................14

*Guerrero v. Cal. Dep't of Corr. & Rehab.*,
    2015 U.S. Dist. LEXIS 130470 (N.D. Cal. Sept. 28, 2015) ................................25

*Hamar v. Ashland*,
    211 Fed. Appx. 309 (5th Cir. 2006)....................................................................25

*Havenrda v. Hays City*,
    723 F.3d 586 (5th Cir. 2013) ..............................................................................14

US_ACTIVE-170734314.7

*Hawkins v. Leggett,*
   955 F. Supp. 2d 474(D. Md. 2013) ...................................................................4

*Held v. Am. Airlines, Inc.,*
   2007 U.S. Dist. LEXIS 7665 (N.D. Ill. Jan. 30, 2007) ..........................................21

*Hitt v. Connell,*
   301 F.3d 240 (5th Cir. 2002) ...................................................................14, 15, 16

*Hussein v. Waldorf Astoria,*
   134 F. Supp. 2d 591 (S.D.N.Y. 2001)...................................................................9

*Ileiwat v. Envtl. Prods. Int'l,*
   2018 U.S. Dist. LEXIS 14362 (N.D. Tex. Jan. 29, 2018) ......................................5

*Indep. Union of Flight Attend. v. Pan Am. World Airways,*
   789 F.2d 139 (2d Cir. 1986)...............................................................................22

*Jiglov v. Hotel Peabody, G.P.,*
   719 F. Supp. 2d 918 (W.D. Tenn. 2010)...............................................................8

*Johnson v. Angelica Unif. Grp., Inc.,*
   762 F.2d 671 (8th Cir. 1985) ...............................................................................8

*Knight v. State Dep't of Pub. Health,*
   275 F.3d 156 (2d Cir. 2001)...............................................................................9

*Kolstad v. Am. Dental Ass'n,*
   527 U.S. 526 (1999)................................................................................18, 19

*Konop v. Hawaiian Airlines,*
   302 F.3d 868 (9th Cir. 2002) .............................................................................21

*Leonce v. Callahan,*
   2008 U.S. Dist. LEXIS 228 (N.D. Tex. Jan. 3, 2008) ..........................................11

*Logan v. Westfield Ins.,*
   2020 U.S. Dist. LEXIS 12273 (W.D. La. Jan. 24, 2020).......................................16

*Machinists v. Nw. Airlines, Inc.,*
   673 F.2d 700 (3d Cir. 1982)...............................................................................21

*Meyer v. Brown & Root Const.,*
   661 F.2d 369 (5th Cir. 1981) .............................................................................25

*Mial v. Foxhoven,*
   305 F. Supp. 3d 984 (N.D. Iowa 2018)...............................................................6, 8

US_ACTIVE-170734314.7

*Miller v. Raytheon Co.*,
   716 F.3d 138 (5th Cir. 2013) ...................................................................14

*Miller v. Upper Iowa Univ.*,
   2021 U.S. Dist. LEXIS 217088 (W.D. La. Nov. 9, 2021) ................................17, 20

*Mitchell v. Univ. Med. Ctr.*,
   2010 U.S. Dist. LEXIS 80194 (W.D. Ky. Aug. 9, 2010) ......................................12

*Montano v. Orange Cty.*,
   842 F.3d 865 (5th Cir. 2016) .....................................................................1

*Morel v. Am. Bldg. Maint. Co.*,
   124 Fed. Appx. 671 (2d Cir. 2005)..............................................................3

*Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists*,
   915 F.2d 43 (1st Cir. 1990)......................................................................25

*Nixon El v. GM Co.*,
   2021 U.S. Dist. LEXIS 35106 (N.D. Tex. Feb. 25, 2021)................................11, 12

*NLRB v. Allied Aviation*,
   490 F.3d 374 (5th Cir. 2007) ...................................................................22

*NLRB v. Arkema*,
   710 F.3d 308 (5th Cir. 2013) ...................................................................22

*Nobach v. Woodland Village Nursing Ctr., Inc.*,
   799 F.3d 374 (5th Cir. 2015) .............................................................8, 9, 19

*Novitsky v. Am. Consulting Eng'rs*,
   196 F.3d 699 (7th Cir. 1999) ...................................................................25

*Owens v. Texaco*,
   857 F.2d 262 (5th Cir. 1988) .....................................................................3

*Passmore v. 21st Century Oncology*,
   2018 U.S. Dist. LEXIS 61085 (M.D. Fla. Apr. 10, 2018).................................6, 7

*Patterson v. PHP Healthcare Corp.*,
   90 F.3d 927 (5th Cir. 1996) .....................................................................17

*Payne v. Travenol Labs., Inc.*,
   565 F.2d 895 (5th Cir. 1978) ...................................................................25

*Peterson v. Hewlett-Packard*,
   358 F.3d 599 (9th Cir. 2004) .............................................................11, 12, 13

US_ACTIVE-170734314.7

*PHI, Inc. v. Office & Prof'l Employees Int'l Union*,
  440 Fed. Appx. 394 (5th Cir. 2011) ...................................................25

*Pichon v. Murphy Oil U.S.A.*,
  2002 U.S. Dist. LEXIS 23907 (E.D. La. Dec. 9, 2002) ...........................................4

*Reeves v. Sanderson Plumbing Prods.*,
  530 U.S. 133 (2000) ...................................................1

*Rightnour v. Tiffany & Co.*,
  354 F. Supp. 3d 511 (S.D.N.Y. 2019) ...................................................13

*Sambrano v. United Airlines*,
  2022 U.S. App. LEXIS 4347 (5th Cir. Feb. 17, 2022) ...........................................11

*Seidman v. Am. Airlines, Inc.*,
  923 F.2d 1134 (5th Cir. 1991) ...................................................2

*Sellers v. Delgado Cmty. Coll.*,
  839 F.2d 1132 (5th Cir. 1988) ...................................................24

*Simien v. S. S. Kresge Co.*,
  566 F.2d 551 (5th Cir. 1978) ...................................................6

*SMI Owen Steel Co. v. Marsh USA, Inc.*,
  520 F.3d 432 (5th Cir. 2008) ...................................................1

*Smith v. Lyondell Citgo Ref. LP*,
  2006 U.S. Dist. LEXIS 14669 (S.D. Tex. Mar. 9, 2006) ...........................................3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ...................................................17

*Summers v. Whitis*,
  2016 U.S. Dist. LEXIS 173222 (S.D. Ind. Dec. 15, 2016) ...........................................8

*Tagore v. United States*,
  735 F.3d 324 (5th Cir. 2013) ...................................................5

*Thomas v. Tex. Dep't of Crim. Justice*,
  297 F.3d 361 (5th Cir. 2002) ...................................................15

*TWA, Inc. v. Indep. Fed'n of Flight Attendants*,
  489 U.S. 426 (1989) ...................................................20, 21, 22, 23

*Vadie v. Miss. State Univ.*,
  218 F.3d 365 (5th Cir. 2000) ...................................................16

US_ACTIVE-170734314.7

*Wantou v. Wal-Mart Stores Tex*,
   23 F.4th 422 (5th Cir. 2022) ........................................................................17, 19

*Webb v. City of Philadelphia*,
   562 F.3d 256 (3d Cir. 2009).........................................................................11

*Weber v. Roadway Exp., Inc.*,
   199 F.3d 270 (5th Cir. 2000) ...............................................................5, 10, 11

*Wilkerson v. New Media Tech. Charter Sch., Inc.*,
   522 F.3d 315 (3d Cir. 2008).........................................................................10

*Wilson v. U.S. West Commc'ns*,
   58 F.3d 1337 (8th Cir. 1995) .......................................................................12

*Wright v. Union Pac. R.R. Co.*,
   990 F.3d 428 (5th Cir. 2021) .......................................................................25

**Statutes**

42 U.S.C. § 1981a(b)(1)................................................................................17

45 U.S.C. § 151a.........................................................................................23

45 U.S.C. § 151a(4)-(5) ...............................................................................23

**Rules**

Fed. R. Evid. 701(c)....................................................................................16

Fed. R. Evid. 702........................................................................................16

Fed. R. Evid. 802........................................................................................16

US_ACTIVE-170734314.7

In July 2022, the Court held an eight-day jury trial to adjudicate Carter's claims for retaliation in violation of the Railway Labor Act ("RLA") and religious discrimination under Title VII. At the close of Carter's case in chief, Southwest moved for judgment as a matter of law on all claims. The Court denied Southwest's motion. Southwest also objected to various aspects of the Court's jury instructions related to Title VII, the RLA, and damages. The jury returned a verdict in Carter's favor, concluding that Southwest retaliated against Carter for exercising rights protected by the RLA, discriminated against Carter based on her religion, and failed to reasonably accommodate Carter's religious beliefs or practices. The jury found the following damages:

- $150,000 in backpay for earnings lost from March 14, 2017 to July 14, 2022.
- $250,000 for past pain and suffering attributable to a Title VII violation.
- $250,000 for future pain and suffering attributable to a Title VII violation.
- $3.5 million punitive damages attributable to a Title VII violation.

On December 5, 2022, the Court entered judgment awarding Carter $150,000 in backpay and $300,000 in compensatory and punitive damages. Dkt. No. 375. The Court also ordered Carter reinstated and various injunctive relief. Dkt. Nos. 374-375.

## I.   **ARGUMENT**

"A motion for judgment as a matter of law…is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). Courts evaluate a motion under Rule 50(b) using the same standards that govern a motion under Rule 50(a) and 56. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). Thus, courts will grant a Rule 50(b) motion when a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-moving party. *Id.* at 149.

A motion under Rule 50(b) may include an alternative or joint request for a new trial under Rule 59. *Montano v. Orange Cty.*, 842 F.3d 865, 873 (5th Cir. 2016). Rule 59 allows the Court "to grant a new trial based on its assessment of the fairness of the trial and the reliability of the []

US_ACTIVE-170734314.7

verdict." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). A new trial is proper when "the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed[.]" *Id.* Prejudicial error can include improper jury instructions and exclusion of evidence. Southwest is entitled to judgment or, alternatively, a new trial.

A.   **Exclusion of the Arbitrator's Decision and Related Testimony Was Improper**

The Supreme Court has recognized that a labor arbitration decision may be relevant evidence in an action involving federal statutory rights. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 (1974). Among other things, a decision addressing an employer's "just cause" for termination under a CBA directly relates to the employer's legitimate basis for termination, and the proper interpretation and application of the CBA and relevant policies. *Baker v. Union Pac. R.R.*, 145 F. Supp. 2d 837, 843 (S.D. Tex. 2001) ("The arbitrator's finding that Plaintiff violated…Rules is…plainly relevant…because it supports the…articulated non-discriminatory reason for…terminat[ion]"). Despite these authorities, the Court prohibited Southwest from substantively discussing the arbitration proceedings in this matter, referencing the arbitrator's decision, or entering the decision into evidence. Dkt. No. 292. The Court concluded that the unfair prejudice resulting from the admission of such material exceeded its probative value. Dkt. No. 292 at 3-4. The Court proffered the following grounds for excluding the arbitration-related evidence:

- The arbitrator addressed just cause rather than Carter's Title VII / RLA claims.
- Concern that the jury may give special weight to the arbitrator's decision because it was a quasi-judicial determination.
- Many of the same witnesses who testified at the arbitration also testified at trial.
- Irrelevance of certain portions of the arbitrator's decision, including a reference to Carter's message stating that Stone supported murder; Stone's testimony describing the messages Carter sent her and the arbitrator's agreement with the same; and the arbitrator's perception that Carter lacked remorse.

Dkt. No. 292 at 4-6. None of these concerns supported excluding the arbitration materials.

US_ACTIVE-170734314.7

To start, the Court's first three reasons are present in nearly all arbitrations under CBAs. That is to say, arbitrators resolving a contractual termination grievance are not applying federal statutes – they are addressing the presence of just cause under a CBA. Similarly, all labor arbitrators' decisions are quasi-judicial, and an employer defending a termination decision will likely call the same witnesses irrespective of forum (arbitral or judicial) or the framing of the claims (just cause vs. Title VII/RLA). Thus, if these were grounds for excluding arbitration decisions, the general rule would be that such materials are *excluded*. But the opposite is true.

"The Federal Rules of Evidence start from the premise that [arbitration decisions] are generally admissible[.]" *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 118 (5th Cir. 1997). "[W]hether binding on the district court or not, an arbitrator's findings relating to an interpretation of the CBA or an application of the CBA to the facts should ordinarily be considered by the court." *Id.* at 117. "[E]ven on issues relating to the existence of discriminatory or retaliatory animus, the award can be highly probative, and wholly ignoring it can constitute an abuse of discretion." *Id.* at 118. Whether the employer's termination decision violated or complied with the CBA "is plainly relevant" because it "makes [the employer's] non-retaliatory reason for the discharge more believable and…[plaintiff's] allegations of retaliation less probable." *Id.*; *Owens v. Texaco*, 857 F.2d 262 (5th Cir. 1988)

Moreover, numerous courts have rejected the Court's stated grounds for excluding the arbitration evidence. Courts have repeatedly found arbitration decisions addressing just cause under a CBA are relevant and admissible in judicial proceedings related to statutory claims. *Smith v. Lyondell Citgo Ref. LP*, 2006 U.S. Dist. LEXIS 14669, *7-8 (S.D. Tex. Mar. 9, 2006)

US_ACTIVE-170734314.7

(defense to race discrimination claims "is supported by the arbitrator's finding of just cause.");

*Hawkins v. Leggett*, 955 F. Supp. 2d 474, 503(D. Md. 2013)[1]

Finally, the Court erroneously found statements in the arbitrator's decision irrelevant and prejudicial. Specifically:

- The arbitrator states that Carter accused Stone of supporting murder. Dkt. No. 292 at 5. This could not have been prejudicial – it is a factual assertion derived from Carter's Facebook messages to Stone that were themselves admitted at trial. Trial Exh. 15.
- The arbitrator quoted Stone testifying that Carter's messages to her were hurtful and disgusting and vile, among other things. The arbitrator agreed with Stone and stated that the messages were repulsive and beyond the bounds of civility. References to Stone's arbitration testimony describing Carter's messages could not be unfairly prejudicial because she proffered substantively identical testimony before the jury. App. 69, 74, 192 (473:6-9, 494:6-14, 812:10-11). Moreover, that fact that the arbitrator accepted as true Stone's testimony that the messages hurt her is simply an arbitrator doing what he must as a fact finder – assessing witness credibility. Similarly, the arbitrator's view that videos of aborted fetuses are repulsive is unremarkable and in any case is not prone to prejudice the jury given that they have access to and can independently asses the nature of the videos.
- The arbitrator stated his view regarding the sincerity of Carter's apology. Appropriately so, as the arbitrator (who serves as the fact finder) necessarily forms impressions regarding credibility and articulates them in a written decision that can be subject to judicial review. Moreover, a grievant's contrition and taking of responsibility is often critical in arbitral proceedings, particularly as it relates to the penalty (*e.g.*, should arbitrator reduce termination to a suspension). *Baker Hughes*, 128 BNA LA 37, 42 (2010) ("Discharge is the appropriate…discipline…considering the…offense [and] Grievant's lack of remorse").

Stated simply, the arbitrator's statements that the Court takes issue with are not aberrant such that they support deviating from the general rule that such materials are presumptively admitted. The arbitrator's decision speakS directly to the claims and issues in this case, including the reasons for termination and the appropriate application of the Southwest policies that were the predicate for Carter's termination. The Court's decision to exclude the arbitrator's decision was unfairly prejudicial with respect to all of Carter's claims. Thus, absent a full judgment in favor of Southwest, the appropriate remedy for the Court's error is to order a new trial.

---

[1] If the Court had concern that the jury would give excess weight to the arbitrator's findings or be confused regarding the decision, the appropriate response was an explanatory jury instruction. *Pichon v. Murphy Oil U.S.A.*, 2002 U.S. Dist. LEXIS 23907, *5-6 (E.D. La. Dec. 9, 2002).

US_ACTIVE-170734314.7

B.     **The Record Supports Judgment In Favor of Southwest With Respect to Carter's Title VII Claims or Alternatively, a New Trial**

1.     Title VII – Reasonable Accommodation

To state a prima facie case of religious discrimination based on failure to accommodate, a plaintiff must establish that she "had a *bona fide* religious belief that conflicted with an employment requirement, that [s]he informed the employer of h[er] belief, and that [s]he was discharged for failing to comply with the conflicting employment requirement." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Even if a plaintiff makes this showing, the employer still prevails if accommodating the employee would impose an undue hardship. *Id.*

The jury found that Southwest failed to provide Carter a reasonable religious accommodation, and that providing her an accommodation would not impose an undue hardship. These conclusions are unsupported by the evidence and predicated on faulty instructions.

a.     The Court Erroneously Failed to Instruct the Jury Regarding the "Conflict" Element of Carter's Title VII Claim

To prevail on a failure to accommodate claim, a plaintiff must demonstrate that her bona fide religious belief or practice conflicts with a requirement of her employment. *See Weber*, 199 F.3d at 273; *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013). Failure to satisfy this requirement is fatal to a failure to accommodate claim. *See, e.g.*, *Ileiwat v. Envtl. Prods. Int'l*, 2018 U.S. Dist. LEXIS 14362, *12 (N.D. Tex. Jan. 29, 2018).

The Court recognized this requirement and referenced it in the narrative portion of the jury instructions. Dkt. No. 343 at 17. However, despite Southwest's request, the Court refused to include a jury interrogatory on the issue. As a result, the jury interrogatories were incomplete and do not indicate a finding on this ultimate question of fact. *Cent. Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 381 (5th Cir. 1981). In fact, the interrogatories permitted the jury to find Southwest liable without Carter satisfying the essential "conflict" element of her claim. This

US_ACTIVE-170734314.7

alone is a sufficient basis for a new trial. *Simien v. S. S. Kresge Co.*, 566 F.2d 551, 556 (5th Cir. 1978) ("[T]he failure…to submit [defendant's] requested interrogatory constitutes reversible error."). Additionally, as set forth below, the record demonstrates that Carter ***did not*** show the existence of a conflict between her religion and a requirement of her employment.

> b.    There is No Evidence of a "Conflict" Between Carter's Religion and a Requirement of Her Employment

Not only were the accommodation interrogatories improper and incomplete because they did not recognize the requirement that Carter demonstrate the necessary "conflict," Southwest is entitled to judgment because there is no evidence of any such conflict.

It may be the case that some of Carter's misconduct had some relationship to her religion. However, the law does not require an employer to accommodate all conduct that has some connection to or is motivated by religion. *See Mial v. Foxhoven*, 305 F. Supp. 3d 984, 991 (N.D. Iowa 2018) ("the fact that a practice of belief may be connected to religion does not compel the conclusion that it is not a personal preference, or that it is in fact sincerely held."). Moreover, a plaintiff cannot prevail on a failure to accommodate claim if she contends that the religiously-based conduct that resulted in her termination did not in fact violate an employment policy. *See Passmore v. 21st Century Oncology*, 2018 U.S. Dist. LEXIS 61085, *8-10 (M.D. Fla. Apr. 10, 2018) (plaintiffs terminated for religiously-motivated anti-abortion activities could not bring accommodation claim because they alleged that their activities did not conflict with employment requirement). That is because the very predicate of an accommodation claim is the existence of a conflict between the religious practice and the requirements of employment. Applied here, Southwest is entitled to judgment on Carter's accommodation claim because there is no evidence that its policies prohibited her from acting in accordance with her articulated religious beliefs.

US_ACTIVE-170734314.7

Carter testified that she is a Christian and that she objected to the Union and 20 members attending the Women's March at which they held a banner representing Southwest Flight Attendants. App. 398-399, 403 (1345, 1347:3-1348:25, 1365). Carter also stated that abortion is a "huge issue" for her. In sending the abortion videos, Carter "was objecting to a march" and her union's attendance. App. 408 (1383:2-21). Taken together, Carter's testimony indicates that she has a religiously-based opposition to abortion, Planned Parenthood and the Union's attendance at the Women's March. However, there is no evidence that Southwest prohibited Carter from having or communicating these views. In fact, Carter testified that she posted anti-abortion content on her Facebook page for years prior to her termination without incident and that her religious and union-related communications had always been "protected" App. 409, 542 (1386:1-1387:25, 1767:20-21, 1769:20-22). Thus, Carter's own testimony demonstrates that there was no religious belief or practice for Southwest to accommodate.[2] Courts have dismissed accommodation claims where the employee was terminated for religiously-motivated opposition to abortion because she failed to specifically identify the religious belief and the employer practice with which it conflicted. *Passmore*, 2018 U.S. Dist. LEXIS 61085, *2-3, 8-10 (employees terminated for religiously-motivated opposition to abortion could not bring accommodation claim because they did not specifically identify the practice with which their sincerely held belief conflicted).

Additionally, there is no record evidence that the conduct Southwest actually prohibited and that Carter claims it had to accommodate – *i.e.*, private and public circulation of videos of aborted fetuses while readily identifiable as a Southwest Flight Attendant and of anatomically correct vagina depictions – was a mandate of Carter's religion. The absence of such evidence is fatal, as the law does not require Southwest to accommodate every act that is in some way

---

[2] This does not leave a Title VII plaintiff without a potential remedy. Even absent a "conflict," a plaintiff may still be able to bring a religious discrimination claim predicated on disparate treatment.

US_ACTIVE-170734314.7

connected to religion, or an employee's personal preference as to how she manifests her religious beliefs. *Summers v. Whitis*, 2016 U.S. Dist. LEXIS 173222 (S.D. Ind. Dec. 15, 2016) (employer not required to accommodate refusal to process same-sex marriage licenses because doing so did not conflict with religiously-based opposition to same-sex marriage); *Mial*, 305 F. Supp. 3d at 99. Rather, "an employee's right to a reasonable accommodation, including the time, place, and manner of the accommodation, only covers matters dictated by religious practice." *Jiglov v. Hotel Peabody, G.P.*, 719 F. Supp. 2d 918, 929 (W.D. Tenn. 2010). Opposing abortion may have been a dictate of Carter's religion. But the evidence shows that Carter could oppose abortion without incident (*i.e.*, there was no conflict). And there is no evidence that Carter had a religious dictate to circulate graphic imagery, which is the actual conduct at issue in this case.

        c.    <u>The Court Improperly Failed to Instruct the Jury that Southwest Had No Obligation to Accommodate Carter if She Violated Policy Prior to Southwest's Suspicion of Her Accommodation Need</u>

"[N]othing in Title VII that requires employers to give lesser punishments to employees who claim, ***after they violate company rules***…that their religion caused them to transgress the rules." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) (emphasis added); *see also Nobach v. Woodland Village Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015) (citing *Chalmers* with approval; reversing verdict and ordering judgment for employer where plaintiff failed to notify employer of need for accommodation until after violating employer rules). This not only accords with the relevant case law, it accords with common sense. An employee cannot violate employment rules with impunity and belatedly insist on the eve of disciplinary action that the rules be ignored due to the religious motivation for the policy violations. *See Johnson v. Angelica Unif. Grp., Inc.*, 762 F.2d 671, 673 (8th Cir. 1985) (accommodation claim failed because plaintiff violated attendance policy prior to raising religiously-based need to do so). Despite this,

US_ACTIVE-170734314.7

the Court refused to instruct the jury that Carter could not prevail on her accommodation claim if her misconduct preceded Southwest's awareness of her accommodation need.

Carter does not dispute that she engaged in the conduct that resulted in her separation prior to discussions with Southwest regarding her religious beliefs. Moreover, none of Southwest's managers indicated that they were aware of Carter's religious views or practices prior to the time it received a complaint regarding her conduct. However, the instructions allowed the jury to improperly find liability even though Carter violated Southwest policies and only belatedly asserted a religious motivation for doing so. *See Bob v. Madison Sec. Grp.*, 2016 U.S. Dist. LEXIS 163940, *27 (S.D.N.Y. Nov. 28, 2016) ("plaintiff must properly notify the employer of the plaintiff's conflicting religious belief…*before*…the conflict[]…arises"); *Hussein v. Waldorf Astoria*, 134 F. Supp. 2d 591, 597 (S.D.N.Y. 2001) (accommodation claim failed because employee "did not mention…conflict between his religion and the hotel's policy until after management questioned him about his beard"). Failure to inform the jury that Southwest was not required to excuse policy violations based on an after-the-fact assertion of a religious motive necessitates a new trial on Carter's accommodation claim.

      d.    <u>Southwest Lacked Sufficient Knowledge of Carter's Need for an Accommodation to Trigger the Obligation to Provide One</u>

In order to trigger the obligation to provide an accommodation, the employer must know or at the very least have reason to suspect an employee's need for one. *See Nobach*, 799 F.3d at 378 . Here, Carter generally expressed that she was a Christian, opposed the Union's participation in the March, and opposed Planned Parenthood and abortion. However, even if Carter had a religious mandate to engage in the conduct that resulted in her termination, her general statements of her beliefs did not put Southwest on notice that her religion required the circulation of abortion videos and other graphic material. *Knight v. State Dep't of Pub. Health*, 275 F.3d 156, 167-68 (2d

9

Cir. 2001) ("plaintiffs…employers knew both were born-again Christians, but there is no evidence…showing appellants requested any sort of accommodation for their need to evangelize,…Knowledge that [plaintiffs] are born-again Christians is insufficient to put their employers on notice of their need to evangelize."); *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) ("That [plaintiff] alleges that she told [the employer] that she was a Christian and that [it] knew she was a Christian does not [] satisfy [] duty to provide 'fair warning'…that she possessed a religious belief that [] prevented her from participating in the libations ceremony."). Because there was no evidence Southwest's accommodation obligation was triggered, it is entitled to judgment on Carter's accommodation claim.

        e.    <u>The Court's Instruction Improperly Limited the Burdens the Jury Could Consider In Assessing Undue Hardship</u>

Employers are not required to provide religious accommodations that would impose an undue hardship. An undue hardship exists when the accommodation(s) at issue impose a burden that is more than *de minimis*. *Antoine v. First Student, Inc.*, 713 F.3d 824, 839 (5th Cir. 2013). While the jury instructions reference the undue hardship defense (dkt. no. 343 at 18), they only permit the jury to consider hardships that impose "costs on the conduct of the employer's business either in terms of financial costs or disruption of the business." *Id.* This instruction is erroneous.

Burdens on an employee's co-workers can constitute an undue hardship. *See Weber.*, 199 F.3d at 274 (accommodation imposed a burden that was more that de minimis because it "unduly burden[ed] [] co-workers."). Indeed, this Court has recognized that "[a]n employer incurs undue hardship as a matter of law when it is 'required to bear a greater than de minimis cost ***or imposition upon co-workers'*** in order to accommodate an employee's religious observations." *Balderas v. Valdez*, 2018 U.S. Dist. LEXIS 124195, *12-13 (N.D. Tex. July 25, 2018) (emphasis added). This Court reached that conclusion based on binding Fifth Circuit authority holding that "even the ***mere***

*possibility* of an adverse impact on co-workers is an undue hardship." *Nixon El v. GM Co.*, 2021 U.S. Dist. LEXIS 35106, *8 (N.D. Tex. Feb. 25, 2021) (citing *Weber*).

Importantly, the potential adverse impact on co-workers need not be monetary to constitute an undue hardship. An accommodation can impose an undue hardship if "other employees **could** have **hard feelings** (*i.e.*, **lower morale**)" as a result of the accommodation. *Leonce v. Callahan*, 2008 U.S. Dist. LEXIS 228, *14 (N.D. Tex. Jan. 3, 2008). The burden also need not take the form of monetary cost employer or a generalized business disruption. *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009) ("economic and non-economic costs can pose an undue hardship"); *Peterson v. Hewlett-Packard*, 358 F.3d 599, 608 (9th Cir. 2004) (accommodation would have imposed an undue burden because it "would have infringed upon the company's right to promote diversity and encourage tolerance and good will among its workforce"). "Undue hardship [] exists wherever an employer would bear…inconvenience to accommodate an employee's beliefs." *Sambrano v. United Airlines*, 2022 U.S. App. LEXIS 4347, *72-73 (5th Cir. Feb. 17, 2022).

By instructing the jury that it could only consider monetary costs and disruption to the business, the Court precluded the jury from assessing other burdens that can constitute an undue hardship and that were present in this case. For example, courts have repeatedly held an accommodation that would permit an employee to proselytize to co-workers about abortion and other topics is not reasonable. *See, e.g., Chalmers*, 101 F.3d at 1021. However, the burdens associated with permitting Carter's proselytization – *i.e.*, sending of unsolicited videos of aborted fetuses and genital depiction to co-workers – are not within the narrow category of harms the Court's instruction permitted the jury to consider.

US_ACTIVE-170734314.7

   f. The Record Evidence Demonstrates that Accommodating Carter
     Would Have Imposed an Undue Hardship

Even if Carter had sufficient evidence to state a prima facie for an accommodation-based religious discrimination claim, the Court should enter judgment for Southwest because the record demonstrates that accommodating Carter would have imposed an undue hardship. *See Antoine*, 713 F.3d at 839; *Nixon El*, 2021 U.S. Dist. LEXIS 35106, *7.

Courts have repeatedly held that Title VII does not "require an employer to accommodate an employee's desire to impose his religious beliefs upon his co-workers." *Peterson*, 358 F.3d at 607; *see also Chalmers*, 101 F.3d at 1021. Based on this principle, employers may prohibit an employee's religiously-motivated display of graphic abortion images. *See Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, 1342 (8th Cir. 1995) (employer did not violate Title VII by restricting employee from wearing a two inch button that "showed a color photograph of an eighteen to twenty-week old fetus" and contained the phrases 'Stop Abortion,' and 'They're Forgetting Someone.'"). Similarly, employers can prohibit an employee from mailing letters to co-workers accusing them of immoral conduct or engaging in other proselytization, particularly when doing so results in co-worker complaints. *See Chalmers*, 101 F.3d at 1021; *Averett v. Honda of Am. Mfg.*, 2010 U.S. Dist. LEXIS 11307, *26-30 (S.D. Ohio Feb. 9, 2010) (employee not entitled to accommodation for practice of "express[ing] [] belief that her coworkers were sinful and evil persons whom God would punish."); *Mitchell v. Univ. Med. Ctr.*, 2010 U.S. Dist. LEXIS 80194, *22-23 (W.D. Ky. Aug. 9, 2010) ("[Plaintiff] wants to be able to have religious conversations with co-workers…Such conversations…were offensive and troubling to other employees [and]…violated the [] harassment policies. Any accommodation…would necessarily infringe on the rights of other employees."). As Maureen Emlet testified, authorizing Carter's communications (and presumably similar communications from all religious employees) and ignoring complaints

12

about the same would raise serious concerns about compliance with federal law (*e.g.*, Title VII) and have a seriously detrimental impact of the workforce. App. *Peterson*, 358 F.3d at 608 (accommodation inflicted undue hardship because it infringed upon "right to promote…good will among its workforce."). The undisputed evidence and case law demonstrates the accommodating Carter would impose an undue burden.

> 2.  Southwest is Entitled to Judgment on Carter's Disparate Treatment Claim

In assessing a Rule 50 motion filed in connection with a religious discrimination claim, courts do not "parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext." *Bryant v. Compass Grp. USA*, 413 F.3d 471, 476 (5th Cir. 2005). Rather, the Court's inquiry is focused on whether there is sufficient record evidence supporting the jury's finding of unlawful discrimination. *Id.* at 475-76. Merely demonstrating a prima facie case of discrimination along with pretext is not always sufficient to defeat a Rule 50 motion. "[I]t is possible for a plaintiff's evidence to permit a tenuous inference of pretext and…discrimination, and yet for the evidence to be insufficient…to support a finding of discrimination." *Id.*

There is little dispute about the events that led to and resulted in Carter's termination (*i.e.*, tone's complaint, fact-finding meeting, Step 2, etc.) so Southwest will not recite them here. Suffice it to say, the evidence does not reveal any basis for the jury's discrimination finding. Specifically:

- There is no evidence of hostile comments regarding Christians generally or Carter's religious beliefs specially. In fact, the individuals involved in Carter's termination were pro-life and one is an active participant in a universal prayer group that prays about pro-life issues. App. 450 (1550:22-1551:5); *Rightnour v. Tiffany & Co.*, 354 F. Supp. 3d 511, 523 (S.D.N.Y. 2019) ("the fact that one of the key decision-makers is Catholic 'undermines any possible inference of discriminatory animus.'").
- Carter posted pro-life and religious content on her Facebook page for years before her termination and was never disciplined for doing so. App. 399 (1347:4-13).
- Carter testified that she was not aware of any non-Christian employees who she believes Southwest treated more favorably than herself. App. 427 (1458:18-21); *Gibson v. Wayfair, Inc.*, 2018 U.S. Dist. LEXIS 107425, *10 (S.D. Tex. June 27, 2018) (granting summary

judgment because plaintiff did not present evidence of similarly situated non-Christian employees who received more favorable treatment).

- While Carter may take issue with the application of certain policies to her, there is no evidence that the stated grounds for her termination were merely a pretext for hostility to her religion or views on abortion. *See Havenrda v. Hays City*, 723 F.3d 586, 596 n.1 (5th Cir. 2013) (employer's simple mistake in taking adverse action is not evidence of pretext). To the contrary, those involved in Carter's termination were themselves Christian and shared Carter's pro-life views.

Carter's only evidence that Ed Schneider, Maureen Emlet, Mike Sims, or any other Southwest manager acted based on hostility towards her religious beliefs is her speculative and uncorroborated testimony. This is not sufficient. *See Grizzle v. Travelers Health Network*, 14 F.3d 261, 268-69 (5th Cir. 1994) (judgment for employer appropriate "when the circumstantial evidence is such that the jury could improperly draw inferences that are mere speculation.").

> 3. The Jury's Emotional Distress Award for Alleged Title VII Violations Lacked an Evidentiary Basis and it Should Be Eliminated

"Compensatory damages for emotional distress and other intangible injuries are not presumed from the mere violation of…[Title VII]." *Benton v. United States EPA*, 2014 U.S. Dist. LEXIS 85308, *22 (N.D. Tex. June 24, 2014); *see also Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 239 (5th Cir. 2001). To recover such damages, the plaintiff must demonstrate that she sustained an "actual injury" as a result of the unlawful conduct and provide specific evidence proving the nature, extent, and the severity of the emotional harm. *Flowers*, 247 F.3d at 238-39; *Miller v. Raytheon Co.*, 716 F.3d 138, 147 (5th Cir. 2013).

To be sure, "medical evidence is *not* required in *every* case" to recover damages for emotional distress. *Decorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007). However, it is also true that "[i]n many cases, a claimant's testimony alone may not be sufficient to support anything more than a nominal damage award." *Id.* A plaintiff's testimony alone will only suffice when it is "particularized and extensive" on the details of the alleged emotional injury and its relationship to the unlawful conduct. *Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002). "Because emotional

distress [is] fraught with vagueness and speculation, [and] is [] susceptible to fictitious and trivial claims," courts "scrupulously analyze an award of compensatory damages for…emotional distress predicated exclusively on the plaintiff's testimony." *Giles v. GE*, 245 F.3d 474, 488 (5th Cir. 2001)

Merely demonstrating that one suffered distress as a result of the unlawful conduct does not necessarily warrant emotional distress damages. "'[H]urt feelings, anger and frustration are part of life,'" and are not the types of emotional harm that could support an award of damages. *Hitt*, 301 F.3d at 250-51. Additionally, for an award based on future emotional harm, there must be evidence linking the defendant's misconduct to demonstrated future emotional injuries. *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 371 (5th Cir. 2002).

Here, Carter was the sole witness as to her claimed emotional distress. Despite claiming various medical diagnosis resulting from her termination, she did not proffer any medical records, or call her medical provider or another expert to testify to her emotional distress and its causes. Carter also declined to call other associates who may have been aware of her emotional condition from 2017-2022 (*e.g.*, spouse, adult children, friends, etc.). Carter provided even less (indeed, no) evidence supporting an award for *future* emotional distress (notably, in an amount precisely equal to the award for past distress) as a result of Southwest's 2017 conduct. *Thomas*, 297 F.3d at 371 (reducing award because plaintiff "did not provide evidence tightly linking the denial of a promotion and future emotional harm."). The lack of corroborating evidence supporting Carter's assertions of emotional distress counsels against upholding the jury's award. *Hitt*, 301 F.3d at 251 (eliminating emotional distress award because "[t]here is no medical evidence, no testimony from family members or co-workers, no evidence of physical manifestations of distress.").

The bulk of Carter's testimony regarding emotional distress and is vague and generalized and thus cannot support the jury's award. *See* App. 386-387 (1296:6-1301:1). The only specific

15

details Carter did offer were hearsay and improper opinion. Specifically, Carter testified that her doctor told her that she suffered from a walking stroke based on the events at Southwest, and her counselor diagnosed her with PTSD *Id.* Carter did not present any records supporting these claimed diagnoses and her testimony regarding the statements of her physician and counselor – to the extent used to support an emotional distress award – are offered for the truth of the matter asserted and are thus hearsay. FRE 802. And Carter's own testimony as to the nature and causes of a walking stroke and PTSD are of no weight because they are improper lay opinion. FRE 701(c) (lay witness cannot offer opinion on matters "based on scientific, technical, or other specialized knowledge."). Testimony on such topics is the province of experts. FRE 702; *Logan v. Westfield Ins.*, 2020 U.S. Dist. LEXIS 12273, *26 (W.D. La. Jan. 24, 2020) (prohibiting testimony from lay witness on cause of medical condition because such matters are "within the purview of a medical expert").

With the hearsay and improper opinion excluded, Carter is left to rely on the kind of general statements about emotional harms that cannot support an emotional distress award. Indeed, it appears that the bulk of emotional distress about which Carter testified derived from other sources, such as her husband's substance abuse, marriage problems, and concern about the care of her daughter. App. 388-389 (1302:12-1306:18). Carter provided no substantive testimony about future emotional distress. In light of Carter's perfunctory showing of emotional distress, the law requires the Court to eliminate the award. *See Hitt*, 301 F.3d at 251 (eliminating all $224,000 of emotional distress damages because general statements about embarrassment, stress, and reputational harm resulting from termination were insufficient); *Brown v. Miss. Dep't of Health*, 256 Fed. Appx. 710, 711 (5th Cir. 2007) (eliminating emotional distress award because plaintiff's testimony regarding anguish resulting from discrimination, emotional suffering, marital difficulties, and exacerbation of kidney condition as a result of discrimination lacked the requisite specificity); *Vadie v. Miss.*

*State Univ.*, 218 F.3d 365, 377 (5th Cir. 2000) (reducing $300,000 award to $10,000 because plaintiff's testimony that he was "destroyed," "totally ruined," "took many doctors, many pills," "could not sleep for months at a time," suffered from severe headaches and nausea, and was still "under severe doctor surveillance because of what they have done to me" was insufficient); *Patterson v. PHP Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996) (reducing $40,000 and $150,000 award in Title VII action to nominal damages where plaintiffs testified about frustration, low self-esteem, anger, and paranoia and that termination resulted in "emotional scars" and unemployment).

4. <u>There is Insufficient Evidence to Support the Punitive Damages Award</u>

"It should be presumed that a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003). To recover punitive damages in a Title VII action, the plaintiff must prove that the "defendant acted with malice or with reckless indifference" to the plaintiff's federal protected rights. 42 U.S.C. § 1981a(b)(1). "This is a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 467 (5th Cir. 2013).

"[T]he terms 'malice' and 'reckless indifference' 'focus on the actor's state of mind.'" *Wantou v. Wal-Mart Stores Tex*, 23 F.4th 422, 439 (5th Cir. 2022). Both relate to the employers "knowledge that it may be acting in violation of federal law not its awareness that it is engaging in discrimination." *Id.* "Thus, the [] employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable for punitive damages." *Id.* "Intentional discrimination will not give rise to punitive damages where the employer is unaware of the federal prohibition, or believes that its discrimination is lawful." *Miller v. Upper Iowa Univ.*, 2021 U.S.

17

Dist. LEXIS 217088, *39 (W.D. La. Nov. 9, 2021). Additionally, punitive damages are inappropriate if those alleged to have engaged in unlawful conduct understood there to be a defense (undue hardship). *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999).

There is no record evidence that at time of Carter's termination, Southwest managers believed their actions violated Title VII. To the contrary they understood themselves to be (among other things) applying policies designed to *thwart* violations of Title VII. Trial Exh. 7, 10, 13. None of the individuals involved in Carter's termination were tasked with handling the provision of religious accommodations – those are handled by the Accommodations and Career Transitions Team ("ACT Team"). App. 291 (1069:8-19). And given that it is undisputed that Carter never sought an accommodation, Southwest management had no basis to believe they were running afoul of federal law by failing to provide one. In this regard, Southwest notes that the Supreme Court only recently made clear that a specific accommodation request is not essential for a Title VII religious discrimination claim. *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) ("A request for accommodation, or the employer's certainty that the practice exists…is not a necessary condition of liability."). Thus, it is unremarkable that Schneider, Emlet, Sims, and other Southwest managers – none of whom worked in the department that handled accommodations – did not conclude that Title VII precluded disciplining an employee who is reported for circulating to co-workers videos of aborted fetuses and vagina depictions if they generally reference their Christianity after the investigation commences. *See supra* I.B.1.d.

Moreover, while it became clear that Carter was a Christian in the course of Southwest's investigation, no one understood Carter's conduct and communications as a religious exercise that it needed to accommodate. Understandably so, given that much of Carter's misconduct and her

evidentiary presentations during the investigation and grievance concerned matters lacking any apparent connection to religion (*e.g.*, recall campaigns / elections).

Furthermore, "[p]unitive damages are [] inappropriate when the underlying theory of discrimination is novel or [] poorly recognized[.]" *Kolstad*, 527 U.S. at 529. This case is littered with novelties that render punitive damages inappropriate. Most Title VII religious discrimination claims involve employees seeking accommodations that do not involve direct impositions on other employees (*e.g.*, time off to attend a religiously-mandated service). In contrast, this is one of the relatively fewer number of cases where the employee claims a legal right to proselytize to co-workers. In cases where plaintiffs have asserted that right – including in relation to religiously motivated expressions opposing abortion – courts have uniformly rejected it. *Supra* I.B.1.e-f. Additionally, a central assertion in this case is that Title VII entitles an employee to avoid discipline for violating employer rules if she asserts a religious motivation for doing so after the fact. But that too has been rejected by courts throughout the country (*supra* I.B.1.c) and while the Fifth Circuit has not directly addressed the question, it has cited such authorities approvingly. *Nobach*, 799 F.3d at 378 n.7 (*quoting with approval Chalmers*, 101 F.3d at 1020 (giving notice of religious beliefs "at the same time as an employee violates an employment requirement is insufficient to provide adequate notice to the employer and to shield the employee's conduct.")). While the Court ultimately concluded that Southwest violated Title VII, there is no evidence that any Southwest manager subjectively understood themselves to be doing so, rendering punitive damages inappropriate. *Boh Bros. Constr. Co.*, 731 F.3d at 468.

Even if the record suggested that Southwest managers acted maliciously or with reckless indifference, that would not be sufficient to support the jury's punitive damages award. "[E]ven if particular agents acted with malice or reckless indifference, an employer may avoid vicarious

punitive damages liability if it can show that it made good-faith efforts to comply with Title VII." *Wantou*, 23 F.4th at 439. The uncontested evidence shows that Southwest made those efforts. Southwest promulgated policies prohibiting unlawful discrimination; established investigation procedures; and erected two teams (Employee Relations and the ACT Team) to address employee complaints of discrimination and requests for religious accommodations. App. 291 (1069:8-19). Southwest made these policies available to all employees and guided management on their implementation. In light of these efforts, there was no basis for the jury's imposition of punitive damages against Southwest. *Miller v. Upper Iowa Univ.*, 2021 U.S. Dist. LEXIS 217088, *41 (W.D. La. Nov. 9, 2021) (employer not liable for punitive damages because its policies prohibited discrimination, it had "procedures to address [] complaints…, and took active steps to ensure…employees were knowledgeable of [] laws and policies.").

### C. <u>Southwest is Entitled to Judgment and/or a New Trial on the RLA Claim</u>

#### 1. <u>The Court's RLA-Protected Activity Instruction Was Erroneous</u>

A central and claim dispositive issue with respect to Carter's RLA retaliation cause of action is what kind of activities the RLA protects and in what circumstances does an employee forfeit statutory protection. In the jury instruction, the Court answered those questions as follows:

- The RLA protects "[a]ll union-oppositional-and-organizational activity." This includes, but is not limited to speech that is "intemperate, abusive, insulting, or hyperbolic."
- The RLA "forbids any limitation upon freedom of association among employees and provides for the complete independence of employees in the matter of self-organization."
- The only speech that loses protection are threats and reckless defamation.

In effect, the Court concluded that so long as a RLA-covered employee is discussing a union matters, she has a free speech right that exceeds those provided under the First Amendment. This instruction was erroneous and necessitates a new trial.

To start, note that courts have, with rare exception, rejected RLA claims that arise after certification of a union. *TWA, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 441 (1989).

US_ACTIVE-170734314.7

Moreover, the RLA does not permit employees "to pursue a claim under §§ 152, Third and Fourth after the employee has submitted to arbitration under the [CBA]." *Held v. Am. Airlines, Inc.*, 2007 U.S. Dist. LEXIS 7665, *18-19 (N.D. Ill. Jan. 30, 2007); *see also Machinists v. Nw. Airlines, Inc.*, 673 F.2d 700, 712 (3d Cir. 1982). Where courts have allowed plaintiffs to proceed under section 152 Third & Fourth, they have done so where the employer's actions were animated by extreme anti-union animus or constituted a fundamental attack on collective bargaining. *TWA, Inc.*, 489 U.S. at 440-42. Importantly, in none of those case have courts concluded that section 152 Third & Fourth provide the kind of generalized speech protections the Court endorsed here. While there is little case law directly addressing the scope of speech protection under the RLA, courts have dismissed claims predicated on "union-oppositional-and-organizational activity" similar to Carter's. *Held*, 2007 U.S. Dist. LEXIS 7665, *18.

Moreover, Southwest notes that the cited authority for the Court's instruction regarding what speech loses protection was *Konop v. Hawaiian Airlines*, 302 F.3d 868 (9th Cir. 2002). The court in *Konop* recognized that speech that is flagrant, violent, extreme, egregious, opprobrious, offensive, or obscene may also lose protection. *Id.* at 833 n.11. While few cases have addressed this issue under the RLA, courts have recognized similar forms as speech as forfeiting any RLA protection. *Held*, 2007 U.S. Dist. LEXIS 7665, *21-22 ("[S]peech relating to union activity loses statutory protection if it is vulgar, offensive, abusive, or harassing."). However, the Court declined to incorporate these concepts in the jury instruction because they were derived from authorities applying the analogous NLRA. As the Court explained, in its view, the RLA provides broader protection than the NLRA and thus it would not apply NLRA authorities here:

> [U]nder *Konop*, they had a question…where they said they might, looking at a Fifth Circuit [NLRA] case. I don't see a basis to ingraft it from [the NLRA] over to [the RLA]… ***And from what I can tell, the reason Congress used different language is, the NLRA was [] talking about context where you might have a union, and the RLA was talking about***

>*context where you will have a union*…***It is basically making it as if it is the Government, right****? **The Government saying you will have a union in these transportation contexts***…[A]s a result…it is [] like you are speaking to your Government. So what protected speech do you have? … [Y]ou can't say knowingly false things about…and you can't threaten your Government officials. But that separate category we find in the [NLRA] where you might have a union, that…additional protection is not there…just like it is not… [with] your Government. So that is my view…as to why the two laws are worded differently and why I don't…need this third category. App. 571-72 (1883:25-1885:8).

Southwest submits that the Court's reasoning does not support its proffered instruction.

There is nothing in the RLA that necessitates the presence of a union. In fact, language of section 152 Third & Fourth that relate to protected activity do not exist to provide employees represented by a union with rights beyond those provided in the NLRA. In fact, the Supreme Court has made clear the section 152 Third and Fourth are principally concerned with providing statutory protections *prior* to a union's certification rather than after. *TWA, Inc.*, 489 U.S. at 440. Moreover, the RLA is not intended to provide broader protections than the NLRA. Courts have recognized that the RLA "protects a narrower range of activities…than does section 7 of the NLRA." *Beckett v. Atlas Air*, 968 F. Supp. 814, 820 (E.D.N.Y. 1997); *see also Indep. Union of Flight Attend. v. Pan Am. World Airways*, 789 F.2d 139 n.2 (2d Cir. 1986). Given how courts have interpreted the NLRA, the activities it protects, and the activities that lose protection, the Court's instruction does not withstand scrutiny. *NLRB v. Arkema*, 710 F.3d 308, 316 (5th Cir. 2013) (harassing, offensive and hostile language "are not protected…union activity"); *NLRB v. Allied Aviation*, 490 F.3d 374 (5th Cir. 2007) (employer can restrict protected activity to "maintain order and respect").

Finally, the Court's broad definition of protected activity would cause the RLA to run head first into the anti-harassment and provisions of Title VII. No court has concluded that the RLA or any other labor statute provide such protections. On the contrary, courts are mindful of the necessity of harmonizing federal labor statutes and the protections they provide with the mandates

US_ACTIVE-170734314.7

of Title VII. *Constellium Rolled Prods. v. NLRB*, 945 F.3d 546, 551 (D.C. Cir. 2019). The Court's protected activity instruction lacks legal support and thus a new trial on the RLA claim is essential.

2.      Partial Recitation of the RLA's Purpose Was Confusing and Prejudicial

In its RLA instruction, the Court partially recites a portion of the statute's general statement of purpose. Dkt. No. 343 at 11-12; 45 U.S.C. § 151a. Specifically, the Court's instruction declares that the RLA "forbids any limitation upon freedom of association among employees and provides for the complete independence of employees in the matter of self-organization." Dkt. No. 343 at 11. However, the RLA does not contain this prohibition. Instead, the RLA describes its general *purpose* as (among other things) ensuring freedom of association, as the Court states. But the Court's instruction transforms that description of statutory purpose into a source of freestanding obligations on Southwest and protected activity for Carter under section 152 Third & Fourth. That is not supported by the statute or relevant case law.

More generally, while the RLA's purpose may be relevant to the Court in interpreting the RLA, it is of no use to the jury in assessing liability. The relevant provision is not the source of the claim at issue in this case and it does not define the scope of protected activity. It is inappropriate for the Court to invite the jury to make use of Congressional purpose of the statute as that is solely for the Court. Additionally, even if it were proper to include an instruction related to statutory purpose in the instruction, the Court's statement is incomplete. The Court omitted language from the statute Supreme Court authority emphasizing the desire for prompt resolution of disputes through arbitration and for the RLA to, with rare exception, only be a basis for a legal action by employees prior to a union's certification. 45 U.S.C. § 151a(4)-(5); *TWA, Inc.*, 489 U.S. at 440. Thus, not only was the statement of purpose inappropriate, it was incomplete and prejudicial.

D.      **Southwest is Entitled to a Judgment and/or a New Trial on Mitigation**

The Court's jury mitigation instruction assumed that to show Carter failed to mitigate damages, Southwest had to establish the availability of substantially equivalent employment. That is not the law. "If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not [] have to establish the availability of substantially comparable employment." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988). "A plaintiff may not simply abandon his job search and continue to recover back pay." *Id.* at 1139. Southwest terminated Carter's employment on March 17, 2017. Carter did not apply for any position throughout the entirety of 2017. App. 412 (1498:1-1400:25). Instead, Carter performed unpaid work for two non-profits. App. 387, 412-413 (1301:2:-11, 1398:5-1400:20, 1401:25-1402:18). In 2018, Carter applied for positions at Jet Blue, Delta, United, and Frontier. Carter scheduled an interview with Delta but claims she never received the interview link and never bothered to follow up. Stated simply, Carter's mitigation efforts did not end – they in fact never began. Carter did not bother to seek any employment for nearly a full year after her termination but instead pursued various non-profit endeavors. In the more than 5 years since Carter's termination, she applied for four positions and made no follow up effort to appear at the interview invitation she received. Because Carter did not seek to mitigate, the instruction that Southwest was required to show the availability of similar employment was improper.

E.      **Unfair Management of the Trial and Other Legal Errors Warrant Relief**

The Court made various decisions just prior to and in the midst of the trial that unfairly prejudiced Southwest, constitute a lack of Due Process, and that warrant a new trial. These include:

- The Court established set time limits for each party. After Southwest prepared and made strategic choices based on those time limits, the Court excused Carter's own decision to largely ignore them and granted additional time.
- Carter had years to conduct necessary discovery. The Court even granted Carter's motion for additional time over Southwest's objection in May 2021. Dkt. No. 155. In Carter's

request to extend the discovery cutoff, Carter sought additional time only to conduct limited written discovery – she did not raise the need for additional depositions and did not seek to take additional depositions during the extended discovery period. Dkt. Nos. 139, 150. Then, on the eve of trial, the Court facilitated Carter conducting six new depositions. When one deponent did not readily make himself available around July 4, the Court indicated that it would ultimately have the witness arrested if he failed to appear. After Southwest secured the deponent's appearance, the Court concluded that its efforts were not sufficient and imposed a $25,714 sanction. Dkt. Nos. 366, 373.

- As Southwest stated in its motion for reconsideration (dkt. no. 235), the Court allowed this case to proceed to trial on a legal theory that was dismissed with prejudice in 2018.

- The Court improperly limited Southwest's communications with its witnesses during trial, while allowing Carter to communicate freely with her counsel, thus depriving Southwest of the right to counsel.

- The Court's summary judgment order did not adequately explain the grounds for denial, in violation of Fed. R. Civ. P. 56(a), because it did not address various arguments Southwest raised. For example, the Court did not address: (1) whether Carter's articulated religious belief or practice conflicted with an employment requirement; (2) whether Title VII required Southwest to excuse Carter's misconduct based on her after-the-fact expression of a religious motivation; and (3) whether accommodating Carter's circulation of videos (privately and publicly while identifiable as a Southwest employee) of aborted fetuses and depictions of female genitals constituted an undue hardship.

- The Court "enjoin[ed] Defendants from discriminating." Dkt. No. 375, at 2. This is an impermissible "obey the law" injunction that the Fifth Circuit has found unlawful and that violates Rule 65(d). *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897 (5th Cir. 1978).

- Carter lacked standing to seek injunctive relief on a classwide basis. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Injunctive relief that extends beyond Carter is outside the district court's authority. *Guerrero v. Cal. Dep't of Corr. & Rehab.*, 2015 U.S. Dist. LEXIS 130470, *12 (N.D. Cal. Sept. 28, 2015) ("This case is about a single plaintiff and [the defendant's] discrimination…The relief, therefore, shall be tailored to [plaintiff].").

The Court also made various substantive errors in the course of this action. While the Court may have conclusively ruled against Southwest on some of these issues at summary judgment or at another time during these proceedings, Southwest reiterates the following errors:

- The Court erroneously concluded that Carter exhausted administrative remedies with respect to a failure to accommodate claim against Southwest. Carter's charge against Southwest did not alleged a failure to accommodate and thus she failed to exhaust a Title VII claim predicated on an accommodation theory. *See, e.g.*, *Hamar v. Ashland*, 211 Fed. Appx. 309, 310 (5th Cir. 2006).

- Section 152 Third & Fourth do not grant Carter a private right of action. *PHI, Inc. v. Office & Prof'l Employees Int'l Union*, 440 Fed. Appx. 394, 396 (5th Cir. 2011)

- Carter's claims in this action involved preempted minor disputes and their fair resolution necessitated interpretation and application of the applicable CBA and the incorporated policies. *See Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 435-36 (5th Cir. 2021).

25

- The Court erroneously concluded that anti-union animus was not essential for Carter's RLA claim. Dkt. No. 232.

Dated:  January 2, 2022                              Respectfully submitted,


                                                     */s/ Paulo B. McKeeby*
                                                     _____
                                                     Paulo B. McKeeby
                                                     State Bar No. 00784571
                                                     Brian K. Morris
                                                     State Bar No. 24108707
                                                     **REED SMITH LLP**
                                                     2850 N. Harwood Street
                                                     Suite 1500
                                                     Dallas, Texas 75201
                                                     Phone: 469-680-4200
                                                     Facsimile: 469-680-4299
                                                     pmckeeby@reedsmith.com
                                                     bmorris@reedsmith.com




## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 2nd day of January, 2023.

                                                     */s/ Paulo B. McKeeby*
                                                     _____
                                                     Paulo B. McKeeby

US_ACTIVE-170734314.7