# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| CHARLENE CARTER, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |


## DEFENDANT SOUTHWEST AIRLINES CO.'S RESPONSE TO PLAINTIFF'S MOTION TO FIND SOUTHWEST AIRLINES CO. IN CONTEMPT

## <u>TABLE OF CONTENTS</u>

**Page**

I.  SUMMARY OF SOUTHWEST'S POSITION..................................................................... 1

II.  CARTER'S BURDEN AND SOUTHWEST'S COMPLIANCE WITH THE
COURT'S ORDER............................................................................................................. 1

    A.  Carter's Burden to Show Contempt by Clear and Convincing
Evidence................................................................................................................. 1

    B.  Southwest's Actions in Compliance with the Judgment........................................ 2

III.  SOUTHWEST'S EMAIL NOTICE TO FLIGHT ATTENDANTS
COMPLIED WITH THE COURT'S JUDGMENT AND WAS NOT
MISLEADING.................................................................................................................... 3

IV.  SOUTHWEST'S "INFLIGHT ON THE GO" MEMO WAS AN EXERCISE
OF ITS FIRST AMENDMENT RIGHTS AND DID NOT CONSTITUTE
RETALIATION OR DISCRIMINATION .......................................................................... 6

    A.  Southwest Did Not Violate the Court's Order....................................................... 6

    B.  The First Amendment Protects Southwest's Speech as to the Inflight
on the Go Memo .................................................................................................... 9

    C.  The Case Law on Which Carter Relies is Distinguishable .................................. 11

V.  CARTER'S REQUEST THAT THE COURT REQUIRE SOUTHWEST TO
ISSUE CORRECTIVE NOTICES VIOLATES ITS FIRST AMENDMENT
RIGHTS .......................................................................................................................... 13

VI.  THE RELIEF REQUESTED BY CARTER WITH REGARD TO
APPROVAL OF THE EMAIL AND NOTICE IS UNNECESSARY ............................. 15

VII.  CONCLUSION................................................................................................................. 16

US_ACTIVE-170810756.7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Riga,*
208 F.3d 419 (3d Cir. 2000)............................................................................11

*Alexander v. United States,*
509 U.S. 544 (1993)...........................................................................................9

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
53 F. Supp. 2d 909 (N.D. Tex. 1999), *aff'd*, 228 F.3d 574 (5th Cir. 2000)...................1, 11, 12

*Baumrin v. Cournoyer,*
448 F.Supp. 225 (D. Mass. 1978) .....................................................................3

*Black Diamond Coal Mining Co. v. Local Union # 8460, United Mine Workers of
America,*
597 F.2d 494 (5th Cir.1979) ..............................................................................1

*In re Brown,*
511 B.R. 843 (S.D. Tex. 2014) ..........................................................................2

*Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Found.
Inc.,*
2020 WL 4852858 (C.D. Cal. Feb. 6, 2020)....................................................14

*F.D.I.C. v. LeGrand,*
43 F.3d 163 (5th Cir. 1995) ...............................................................................2

*HTH Corp. v. NLRB,*
823 F.3d 668 (D.C. Cir. 2016) .........................................................................14

*Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston,*
515 U.S. 557 (1995)..........................................................................................13

*KeyBank Nat. Ass'n v. Perkins Rowe Assocs., Inc.,*
2011 WL 2222192 (M.D. La. June 7, 2011).....................................................2

*M.D. bnf Stukenberg v. Abbot,*
509 F. Supp. 3d 683 (S.D. Tex. 2020) ...............................................................2

*Madsen v. Women's Health Ctr., Inc.,*
512 U.S. 753 (1994).........................................................................................11

*Magliulo v. Edward Via Coll. of Osteopathic Med.,*
582 F. Supp. 3d 373 (W.D. La. 2022)........................................................1, 3, 5

US_ACTIVE-170810756.7

*Martin v. Trinity Indus. Inc.*,
  959 F.2d 45 (5th Cir. 1992) ...................................................................................4, 7

*In re Matter of Baum*,
  606 F.2d 592 (5th Cir. 1979 ..................................................................................3, 7

*In re Murphy-Brown, LLC*,
  907 F.3d 788 (4th Cir. 2018) ..................................................................................10

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
  138 S. Ct. 2361 (2018)............................................................................................14

*Near v. Minnesota*,
  283 U.S. 697 (1931).................................................................................................10

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)...................................................................................................9

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971).................................................................................................10

*Perez v. Thompson*,
  No. 5:12-CV-52, 2015 WL 541730 (S.D. Miss. Feb. 10, 2015)..............................2

*Petroleos Mexicanos v. Crawford Enterprises, Inc.*,
  826 F.2d 392 (5th Cir. 1987) ....................................................................................2

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992).................................................................................................10

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015).................................................................................................10

*Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*,
  2020 WL 5792475 (C.D. Cal. Aug. 27, 2020)........................................................14

*Riley's Am. Heritage Farms v. Elsasser*,
  29 F.4th 484 (9th Cir. 2022) ...................................................................................14

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
  515 U.S. 819 (1995).................................................................................................10

*Rousseau v. 3 Eagles Aviation, Inc.*,
  No. CIV.A. 02-0208, 2006 WL 219992 (E.D. La. Jan. 26, 2006)............................5

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*,
  547 U.S. 47 (2006)...................................................................................................13

US_ACTIVE-170810756.7

*SEC v. First Financial Group of Texas, Inc.*,
    659 F.2d 660 (5th Cir. 1981) ................................................................7

*Sindi v. El-Moslimany*,
    896 F.3d 1 (1st Cir. 2018) ................................................................11

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ................................................................12

*Travelhost, Inc. v. Blandford*,
    68 F.3d 958 (5th Cir. 1995) ................................................................1

*Turner Broad. Sys. v. FCC*,
    512 U.S. 622 (1994) ................................................................13

*Whitfield v. Pennington*,
    832 F.2d 909 (5th Cir. 1987) ................................................................2

*Woodruff v. Ohman*,
    29 F. App'x 337 (6th Cir. 2002) ................................................................14

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ................................................................13

US_ACTIVE-170810756.7

Defendant Southwest Airlines Co. ("Defendant" or "Southwest") files this Response to Plaintiff's Motion to Find Southwest Airlines Co. In Contempt ("Plaintiff's Motion") and would respectfully show as follows:

## I.      SUMMARY OF SOUTHWEST'S POSITION

Southwest has fully complied with the injunctive relief ordered by the Court. Plaintiff Charlene Carter ("Carter") cannot meet the heavy burden to show otherwise by clear and convincing evidence.  To the contrary, the communications about which she complains are consistent with the requirements the Court imposed on Southwest.  Those communications are not discriminatory conduct prohibited by the Court's Judgment.  Indeed, the Court did not purport to constrain Southwest's exercise of its First Amendment rights to voice its disagreement with the outcome of the case and its expectations of its employees.  Southwest has taken no action against Carter, or any other employee, that could be construed as discrimination covered by the Court's Judgment.  Carter's Motion should be denied.

## II.     CARTER'S BURDEN AND SOUTHWEST'S COMPLIANCE WITH THE COURT'S ORDER.

### A.      Carter's Burden to Show Contempt by Clear and Convincing Evidence

A party seeking a finding of contempt bears the burden of establishing a violation of a court order by clear and convincing evidence.  *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 938 (N.D. Tex. 1999), *aff'd*, 228 F.3d 574 (5th Cir. 2000) (citing *Black Diamond Coal Mining Co. v. Local Union # 8460, United Mine Workers of America,* 597 F.2d 494, 496 (5th Cir.1979));. Clear and convincing evidence is evidence that "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, of the truth of the precise facts of the case." *Magliulo v. Edward Via Coll. of Osteopathic Med.*, 582 F. Supp. 3d 373, 375 (W.D. La. 2022) (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995)).

1

The party seeking a civil contempt order must establish that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the order. *M.D. bnf Stukenberg v. Abbot*, 509 F. Supp. 3d 683, 704 (S.D. Tex. 2020) (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995) (quotation marks omitted)). If the movant has made that showing, the burden shifts to the respondent to show a justification for noncompliance, inability to comply, good faith in its attempts to comply, or substantial compliance. *M.D. bnf Stukenberg*, 509 F. Supp. 3d at 704 (citing *LeGrand*, 43 F.3d at 170; *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987); and *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987)). "A finding that a party violated an order willfully or in bad faith is generally required in the Fifth Circuit." *Perez v. Thompson*, No. 5:12-CV-52, 2015 WL 541730, at *2 (S.D. Miss. Feb. 10, 2015) (citing *KeyBank Nat. Ass'n v. Perkins Rowe Assocs., Inc.*, 2011 WL 2222192, at *2 (M.D. La. June 7, 2011)(internal citation omitted).

Here, Carter cannot meet her initial burden to show that Southwest violated a court order. Even if she could, Southwest's actions show that it has substantially complied with this Court's orders and acted in good faith. *See Whitfield*, 832 F.2d at 914  (even if a violation of court order is shown, party can avoid contempt by "show[ing] either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance" with the order); *In re Brown*, 511 B.R. 843, 849 (S.D. Tex. 2014) ("The respondent may avoid a contempt finding by establishing that is has substantially complied with the order or has made reasonable efforts to comply.").

### B.    Southwest's Actions in Compliance with the Judgment

The injunctive components of the Court's December 5, 2022, Judgment required Southwest and Local 556 ("the union") to take certain affirmative measures and to generally refrain from

discriminatory conduct prohibited by Title VII or the Railway Labor Act.   Southwest took immediate steps to comply with each of the affirmative requirements in the Judgment by:

1.   Contacting Carter to arrange for her reinstatement as a Flight Attendant, reinstating her as an active employee, and scheduling her for one of the first available training classes;

2.   Posting the Judgment and verdict form in the break areas at all of its airport bases;

3.   Sending the Judgment and verdict form by email ("the Email Notice", Exh. 2 to Plaintiff's Motion) to every active Southwest Flight Attendant, and advising those Flight Attendants of Southwest's commitment to refrain from discrimination based on the religious beliefs of employees, including beliefs related to opposition to abortion, whether expressed on social media or otherwise.

Carter does not complain in her Motion about Southwest's compliance with the first two requirements above.   Rather, her Motion addresses a single word in the Email Notice, and a separate "In Flight on the Go" memo ("the Memo", Exh. 3 to Plaintiff's Motion) that sets forth Southwest's position in the lawsuit, its disappointment with the jury's verdict, and its expectations of its employees.

## III.   <u>SOUTHWEST'S EMAIL NOTICE TO FLIGHT ATTENDANTS COMPLIED WITH THE COURT'S JUDGMENT AND WAS NOT MISLEADING</u>

"Contempt is committed when a person 'violates an order of a court requiring in specific and definite language that a person do or refrain from doing an act.' " *In re Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (reversing contempt finding, and quoting *Baumrin v. Cournoyer*, 448 F.Supp. 225, 227 (D. Mass. 1978)).   "The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous."  *Id.* (citations omitted).   "Thus, the court's order must set forth in specific detail an unequivocal command."  *Id.* (citation and quotation marks omitted); *see also Magliulo*, 582 F. Supp. 3d at 377 (noting, "Contempt is only committed if a person violates a court order that

requires, in specific and definite language, that a person do or refrain from doing an act.") (citing *Martin v. Trinity Indus. Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

The Court's Judgment ordered that Southwest and Local 556 inform Southwest Flight Attendants that they may not discriminate against Southwest Flight Attendants for their religious beliefs, including—but not limited to—those expressed on social media and those concerning abortion. Southwest and the Union sent different notices to the Flight Attendants to comply with this requirement. Southwest, on December 20, 2022, sent the Email Notice to all of its current Flight Attendants explaining its commitment to refrain from discriminatory treatment. The Email Notice attached the Court's Judgment and the jury's verdict form, as the Court's Judgment required.

Carter complains about the phrase "does not discriminate," rather than "may not discriminate," in the Email Notice. That complaint is unwarranted. The Email Notice and its context contradict Carter's claim that it is "misleading" and "misrepresents the Court's Judgment and jury verdict." (Cater Motion at p. 4). The Email Notice does neither.

First, the initial sentence of the Email Notice states, "On December 5, 2022, a federal court in Dallas entered a judgment against Southwest and Transport Workers Union 556 in connection with a lawsuit alleging, among other things, religious discrimination and interference rights under the Railway Labor Act." As such, it is clear from the Email Notice that Southwest was found to have violated the law. Moreover, the Email Notice attached the jury's verdict and the Court's Judgment, making it further clear to the recipient that there had been a determination that Southwest was found to have violated Carter's rights under the referenced laws.

As such, the notion that the use of the phrase "does not discriminate" would somehow mislead the reader or cause confusion is unwarranted and certainly not the basis for a contempt

4

finding.  Moreover, "does not discriminate" conveys that Southwest will not discriminate in the future, which is entirely consistent with the Court's Judgment.  As such, Carter's position that the phrasing "does not discriminate" was intended to conceal the jury's determination in the case, or that the Email Notice had that effect, is unwarranted.

In addition, the Court did not mandate a particular script or statement that Southwest was obligated to publish.  In fact, the Judgment was not specific about the manner in which Southwest was required to inform Flight Attendants.  *Compare* Judgment Para. 9 (ordering Southwest to "*email* the jury's verdict and this judgment to all Southwest flight attendants") versus Para. 10 (ordering Southwest to "*inform* Southwest flight attendants….") (emphases added).  Had Southwest, for example, chosen to have town halls or have leaders communicate this information to Flight Attendants verbally, there would have been numerous varied communications conveying the same message with different wording.  And that would have been consistent with the Court's judgment.

The Court did not order Southwest to communicate a specific statement to Flight Attendants.  Without "set[ting] forth in specific detail an unequivocal command" such as specifically required langauge, there is no basis to find Southwest in contempt simply because it used the phrase "does not" rather than "may not."  *See Magliulo*, 582 F. Supp. 3d at 377 (denying motion for contempt because language in a consent decree regarding COVID restrictions did "not meet the specific and definite language that is required to hold a party in contempt."); *Rousseau v. 3 Eagles Aviation, Inc.*, No. CIV.A. 02-0208, 2006 WL 219992, at *1 (E.D. La. Jan. 26, 2006) (denying motion to contempt because court's order did contain clear and definite language regarding compliance within a particular timeframe).

US_ACTIVE-170810756.7

Given the context and entirety of the Email Notice, Carter has not met her burden to show by clear and convincing evidence that Southwest violated the Court's judgment.  To the contrary, the sum of Southwest's actions, along with the language used by Southwest in the Email Notice to convey it would not discriminate against Flight Attendants, show that Southwest fully complied with the Court's Judgment, acted in good faith, and at the minimum is in substantial compliance with the Court's Judgment.  The Court wanted Southwest to convey that a jury found Southwest liable for religious discrimination, and that Southwest Flight Attendants would not be discriminated against for their religious practices and beliefs.  The Email Notice did just that.

## IV.  SOUTHWEST'S "INFLIGHT ON THE GO" MEMO WAS AN EXERCISE OF ITS FIRST AMENDMENT RIGHTS AND DID NOT CONSTITUTE RETALIATION OR DISCRIMINATION

Carter next challenges Southwest's Memo separately sent on December 20, 2022, to its Flight Attendant workforce. Carter complains about Southwest's speech regarding the case to its employees.  Those arguments fail.  *First*, Southwest cannot be held in contempt unless it violated the Court's Judgment, and nothing in the Judgment explicitly or implicitly prohibited Southwest from speaking about this case.  That is unsurprising, because Carter never sought a gag order barring Southwest from commenting on this litigation.  To the extent that Carter argues that the Memo itself represents discrimination, that allegation rests on patent mischaracterizations of the Memo.  *Second*, and in any event, Carter's theory of contempt violates Southwest's First Amendment right to speech.  Carter asks this Court to prohibit Southwest from expressing its view about this case and its plan to appeal.  That request is paradigmatic viewpoint discrimination, subject to strict scrutiny, and presumptively unconstitutional.

### A.  Southwest Did Not Violate the Court's Order

Contempt is permissible only if a party "violates a definite and specific order of the court requiring [it] to perform or refrain from performing a particular act or acts with knowledge of the

court's order." *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). "The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." *Martin*, 959 F.2d at 47 (quoting *In re Baum*, 606 F.2d at 593. The contempt power should only be invoked where a specific aspect of the injunction has been clearly violated. *Id.*

Carter's challenge to the December 20 Memo fails that test. Carter does not point to any "definite and specific order of the court" prohibiting Southwest from commenting about this case. Instead, Carter complains that the memo itself "exhibits discriminatory animus" towards Flight Attendants in violation of the Court's order enjoining Southwest from discriminating against Flight Attendants on the basis of their religion. Motion, at 6. But Carter does not explain how Southwest's statement about Carter's individual case expresses any animus towards other Southwest Flight Attendants. Indeed, given the content and tone of the memo, it would be impossible for Carter to do so. *See, e.g.*, Carter App. 7 ("We want to remind our Employees that no matter our individual ideologies, we should never lose sight of our shared goal to take care of each other while extending Hospitality to everyone around us, in every interaction, including those online."). Carter asserts that the Memo "gives flight attendants ominous reminders that Southwest terminated Carter for her religious messages concerning abortion," (Motion at 5), but Carter points to no language in the Memo resembling that characterization. In fact, the Memo does not even mention the words "religion" or "abortion." Instead, it reports that Southwest "felt" that the Employee's conduct "crossed the boundaries of acceptable behavior." Carter's Motion identifies no conduct by Southwest that would constitute discrimination or conduct otherwise prohibited by the Court's Judgment.

7

Carter's Motion also repeatedly mischaracterizes the content of the Memo.  The Memo's qualifying language makes clear that Southwest is expressing its opinion.  The Memo uses phrases like "we felt," "we believed," and "Southwest perceived"—all of which Carter omits from her Motion.  And when Carter does cite the Memo, she does so selectively or otherwise ascribes meaning that cannot be reasonably attributed to the language of the Memo.  For example, Carter states that "Southwest's memo also tells flight attendants that Carter's objections to the union's participation in the Women's March," "created unnecessary tension among a work group," and "crossed the boundaries of acceptable behavior."  (Motion at 7).  But the Memo does not mention the Women's March, Carter's opposition to the union's participation in it, or the substance of any of the messages she sent.  Rather, the Memo refers generally to "an online conversation between employees."

Similarly, Carter claims that Southwest treated her differently because the Memo allegedly stated that Carter, "by making objections to union expenditures as expressed in her social media posts, created [such] unnecessary tension among [her] workgroup." *Id.*  Yet the Memo makes no reference to Carter's objections about union expenditures, or even refers to Carter by name.  Similarly, nothing in the Memo supports Carter's assertion that it contains "suggestive and derogatory characterizations of Carter's religious beliefs and practices."  Also, contrary to Carter's Motion, Southwest did not disparage Carter's religious beliefs or "her religious messages concerning abortion." *Id.* at 5.  Rather, the Memo states simply that Southwest believed the communications were inappropriate and constituted a violation of its social media policies.

The Memo also does not state, as Carter contends (Mot. 6), that Southwest will continue to enforce its social media policies against religious beliefs.  To the contrary, the Memo states Southwest's intention to update its social media policies as a result of the lawsuit.  The Memo goes

8

on to remind employees that "we must all work to ensure that everyone is comfortable in their work environment by consistently displaying civility, care and unity at all times." The Memo also states Southwest's commitment to "implement the Judgment as we work through the appeal process and await a final ruling." As discussed below, the First Amendment protects Southwest's right to express these sentiments and expectations to its Flight Attendants. Similarly, Southwest has every right to express its disagreement with the jury's verdict and the outcome of the case – as Carter concedes in her Motion at page 12. The Memo does no more than that.

While Carter and her counsel may disagree with the content of the Memo, nothing in the Memo constitutes discrimination prohibited by the Court's Judgment. Carter does not come close to establishing by clear and convincing evidence that Southwest violated a definite and specific order of the Court. The Memo represents communication, not discriminatory conduct against any employee or any group of employees. The Court should reject Carter's invitation to involve itself in Southwest's communications to its workforce, especially given the First Amendment concerns discussed below.

**B.**    **The First Amendment Protects Southwest's Speech as to the Inflight on the Go Memo**

It is no wonder that the Court did not issue a clear and definite order prohibiting Southwest from speaking about this matter, because that relief would pose serious First Amendment problems. A court order preventing a person or a company from speaking, on pain of contempt, is a quintessential prior restraint, "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *see also Alexander v. United States*, 509 U.S. 544, 550 (1993) ("[A] judicial order[] forbidding certain communications … issued in advance of the time that such communications are to occur" is a paradigmatic example of prior restraint). "Any prior restraint on expression comes to th[e] Court

with a 'heavy presumption' against it constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).  It is the "essence of censorship" to impose an injunction allowing a plaintiff to haul a company to court in a contempt proceeding on the basis of a press release or statement.  *Near v. Minnesota*, 283 U.S. 697, 713 (1931).  Carter cannot shoulder the heavy burden of showing that her request is constitutional.

In fact, Carter's theory does not merely seek a prior restraint.  She seeks a gag order targeting speech based on its content and viewpoint—the type of restraint warranting the strictest judicial scrutiny. "Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive-limitations: prior restraints and content-based restrictions." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018).  These restrictions are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Carter's requested relief is content-based because it targets Southwest's speech about her case.  But that is not all.  Her request "goes beyond mere content, to actual viewpoint, discrimination," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992), because, in Carter's view, contempt is warranted only if Southwest issues a statement with which Carter disagrees.  *See* Motion at 11 (arguing for contempt because Southwest stated that it is "extremely disappointed with the court's ruling" and is "appealing the decision to the Fifth Circuit Court of Appeals").  The door swings only one way: so long as Southwest's speech accords with Carter's views, it avoids sanctions.  The court cannot issue an order "regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).  Put simply,

10

prohibiting Southwest from sharing its views on the case, or ordering Southwest to issue the statements proposed by Carter, would violate Southwest's First Amendment right.  The court cannot enter such an injunction.  *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 757 (1994) (vacating injunction that violated defendants' First Amendment rights); *Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018) ("The injunction issued in this case, which prohibits the appellants from republishing six particular statements, is a paradigmatic example of a prior restraint.").

Nor can Carter's Motion be construed as a new request for an injunction prohibiting Southwest from commenting on this litigation. Putting aside the serious First Amendment problems with such a request, *see infra* pp. 10-11, Carter forfeited any such request.  A party can waive a request for injunctive relief.  *See, e.g.*, *Alexander v. Riga*, 208 F.3d 419, 434 (3d Cir. 2000). Here, Carter sought various forms of specific injunctive relief, *see* ECF No. 351, at 12-13, but she did not seek an order prohibiting Southwest from commenting on this case.

## C.    The Case Law on Which Carter Relies is Distinguishable

The authority cited by Carter is distinguishable and does not support a finding of contempt.  In *Am. Airlines, Inc. v. Allied Pilots Ass'n*, the court issued a temporary restraining order instructing defendants—a union, its president, and vice-president—to take action to prevent a "sick-out" work stoppage by the union's pilots from continuing.  *See* 53 F.Supp. 909, 915–16 (N.D. Tex. 1999).  The court's order further instructed defendants to issue a communication to the pilots that required the communication to have specific language (*i.e.*, "instruct all pilots to resume their normal working schedule . . . ."). *See id.* at 920.  After issuing the temporary restraining order, the court found defendants' actions contemptuous where the behavior prohibited by a temporary restraining order significantly increased after the order was issued, defendants' communication gave the impression to its members that they did not need to comply with the

order, and encouraged the prohibited conduct to continue.  *See* 53 F.Supp. 909, 918–22 (N.D. Tex. 1999).  Southwest's communications to its Flight Attendants did not "flout" the Court's Judgment as in *Allied Pilots Ass'n* because Southwest's communications did not increase the activity the Court's Judgment sough to prohibit, the Email Notice and Memo did not lack any language required by the Court's Judgment, and as explained above, Southwest attempted to comply in good faith and substantially complied with the Court's order in all respects.  Unlike the outright defiance displayed by defendants in *Allied Pilots Ass'n*, Plaintiff is simply dissatisfied with the language used in Southwest's communications.

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005), also cited by Carter, weighs against her argument that Southwest's actions warrant a contempt finding.  In *Test Masters*, although the district court expressed doubt about the sincerity of defendant's efforts to comply with its order, it nonetheless found the plaintiff failed to provide clear and convincing evidence that defendant's behavior was contemptuous.  *See* 428 F.3d at 582.  In *Test Masters*, defendant was enjoined from registration of a trademark, mandated to withdraw his current pending trademark application, and enjoined from using such trademarks.  *See id.* at 577.  Plaintiff argued that defendant only suspended his application instead of withdrawing it and again advertised with the prohibited trademark.  *See id.*  Plaintiff's arguments were insufficient to move the district court by clear and convincing evidence that defendant's behavior was contemptuous.  *See id.* at 582. When ruling on plaintiff's motion for sanctions, the district court found defendant had provided adequate support to defend his actions as either honest mistakes or outside the bounds of the injunction order.  *See id.*

US_ACTIVE-170810756.7

## V.      CARTER'S REQUEST THAT THE COURT REQUIRE SOUTHWEST TO ISSUE CORRECTIVE NOTICES VIOLATES ITS FIRST AMENDMENT RIGHTS

The Court's Judgment required Southwest to comply with Title VII and the RLA and to advise Flight Attendants of its obligations under those statutes.  The Court did not mandate a particular script or statement that Southwest would be obligated to publish and Southwest complied with the letter and spirit of the Judgment.  Now, Carter seeks an order requiring that Southwest issue a particular statement, dictated to the letter by the Court on pain of contempt.  The Court should reject that request.  For one thing, Southwest has already complied with the Court's order.  For another, an order requiring Southwest to make such a particular statement would violate Southwest's First Amendment right against compelled speech.

Supreme Court decisions firmly establish the First Amendment right against compelled speech: "[F]reedom of thought protected by the First Amendment . . . includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  Judicially compelled speech "violates the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message." *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557, 559 (1995).

These principles apply with equal force when the compelled speech is one of fact rather than one of opinion.  The "general rule[ ] that the speaker has the right to tailor the speech[ ] applies… equally to statements of fact the speaker would rather avoid." *Id.*; *see also Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*, 547 U.S. 47, 62 (2006) ("Compelled statements of fact… like compelled statements of opinion, are subject to First Amendment scrutiny.").  The presumption against the unconstitutionality of judicially compelled speech is so strong that strict scrutiny applies when the compelled speech requires the speaker to make a statement endorsing particular content or a viewpoint. *Turner Broad. Sys. v. FCC*, 512 U.S. 622,

US_ACTIVE-170810756.7

642 (1994) ("Laws that compel speakers to utter or distribute speech bearing a particular message are subject to the same rigorous scrutiny" as laws that "suppress, disadvantage, or impose differential burdens upon speech because of its content"); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) ("[C]ompelling individuals to speak a particular message" is a "content-based regulation of speech" that is subject to strict scrutiny).

In light of these principles, courts have repeatedly declined to order litigants to issue particular statements or apologies to remedy alleged violations of law, recognizing that "an order requiring Defendants to make certain statements… raises significant First Amendment considerations."  *Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Found. Inc.*, 2020 WL 4852858, at *4 (C.D. Cal. Feb. 6, 2020) (citing cases); *see also, e.g., Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*, 2020 WL 5792475, at *4 (C.D. Cal. Aug. 27, 2020) (noting the "irony in this First Amendment case" of the plaintiffs' request that the Court require the defendant to issue a statement), *aff'd in part, appeal dismissed in part sub nom. Riley's Am. Heritage Farms v. Elsasser*, 29 F.4th 484 (9th Cir. 2022); *Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (holding that district court abused its discretion in ordering defendant to apologize to plaintiff).  And in the employment law context, courts have tightly limited remedies that require an employer to read a prescribed notice to employees. In one case, the D.C. Circuit struck an administrative order requiring an employer to make a statement to employees as "humiliating and degrading… conjur[ing] up the system of 'criticism-self-criticism' devised by Stalin and adopted by Mao." *HTH Corp. v. NLRB*, 823 F.3d 668, 677 (D.C. Cir. 2016).

The relief Carter seeks presents precisely these First Amendment concerns.  Carter seeks a court order requiring Southwest to issue two detailed and verbatim statements, espousing a particular content and viewpoint, under penalty of contempt.  Such an order would compel

14

Southwest to speak a particular message, using words chosen by Carter.  Granting Carter's request would violate Southwest's First Amendment right to be free from content-based compelled speech.

## VI.   THE RELIEF REQUESTED BY CARTER WITH REGARD TO APPROVAL OF THE EMAIL AND NOTICE IS UNNECESSARY

Southwest agrees with Carter's statements at page 9 of her Motion that the Court need not hold a show cause hearing.  Southwest disagrees with the relief Carter requests at page 13 of her Motion involving identification of persons involved in approving the Email Notice and the Memo, producing internal communications regarding the documents, producing drafts of the Email Notice and the Memo, and producing privilege logs.  Southwest contends that the Email Notice and the Memo did not violate the Court's Judgment.  The Court can determine Southwest's compliance with its Judgment based on the text of those documents and the other undisputed actions that Southwest has taken to comply with the Judgment. Southwest respectfully submits that producing or identifying those involved in drafting the documents, and producing the other information requested, is not necessary or even helpful in resolving Carter's Motion.

15

## VII.    <u>CONCLUSION</u>

Southwest respectfully submits Carter has not met her burden to establish, by clear and convincing evidence, that Southwest failed to comply with the Court's Judgment.  To the contrary, the evidence demonstrates Southwest has complied with all requirements of the Court's Judgment.  At the minimum, Southwest has proven it substantially complied with the Court's judgment.  What Carter complains about is largely the exercise by Southwest of its First Amendment rights which, apart from being protected speech, did not violate the terms of the Court's Judgment.  For these reasons, Southwest respectfully asks that the Court deny Carter's Motion.

Dated:  January 6, 2023                    Respectfully submitted,


                                            */s/ Paulo B. McKeeby*
                                            Paulo B. McKeeby
                                            State Bar No. 00784571
                                            Brian K. Morris
                                            State Bar No. 24108707
                                            **REED SMITH LLP**
                                            2850 N. Harwood Street
                                            Suite 1500
                                            Dallas, Texas 75201
                                            Phone: 469-680-4200
                                            Facsimile: 469-680-4299
                                            pmckeeby@reedsmith.com
                                            bmorris@reedsmith.com


### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 6th day of January, 2023.

                                            */s/ Paulo B. McKeeby*
                                            Paulo B. McKeeby

US_ACTIVE-170810756.7