# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| Plaintiff, | § | Civil Case No. 3:17-cv-02278-X |
| | § | |
| V. | § | |
| | § | |
| SOUTHWEST AIRLINES CO., AND | § | |
| TRANSPORT WORKERS UNION OF | § | |
| AMERICA, | § | |
| LOCAL 556, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT SOUTHWEST AIRLINES CO.'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND MOTION TO <u>RECONSIDER CERTAIN COSTS AWARDED</u>

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF RESPONSE ........................................................................... 1

II.     RELEVANT BACKGROUND ......................................................................... 1

III.    ARGUMENTS & AUTHORITIES ................................................................... 3

    A.   Attorneys' Fees Awards Rest Within the Discretion of the Trial Court ............... 3

    B.   Plaintiff is Not Entitled to Recover Attorneys' Fees on her Non-Title VII Claims. .................................................................................................... 4

    C.   Plaintiff is Not Entitled to Recover Attorneys' Fees for Duplicative Work by Three Senior Attorneys for Preparing For and Attending Trial. ...................... 8

    D.   Plaintiff is Not Entitled to Recover Attorneys' Fees for Unsuccessful Discovery and Dispositive Motions. ................................................................ 10

    E.   The Court Should Further Reduce the Fee Award by Thirty Percent Given Plaintiff's Use of Block Billing ..................................................................... 12

    F.   The Court Should Apportion Attorneys' Fees Between the Two Defendants ............................................................................................... 14

    G.   Plaintiff is Not Entitled to an Increase of the Lodestar. ................................ 15

        1.   Plaintiff seeks to double count several Johnson factors. ....................... 16

            a)   Time and Labor Required. ............................................... 17

            b)   Novelty and Difficulty of the Questions. .......................... 17

            c)   Skill Requisite to Perform the Legal Service Properly ........ 18

            d)   Customary Fee. ............................................................... 18

            e)   Whether Fee is Fixed or Contingent. ................................ 19

            f)   Amount Involved and the Results Obtained. ..................... 19

            g)   Experience, Reputation, and Ability of the Attorneys. ........ 21

            h)   Undesirability of the Case. ............................................... 21

            i)   Nature and Length of the Professional Relationship with the Client. ........................................................................... 22

    H.   Plaintiff is Not Entitled to Expenses Sought for Meals and Lodging for Plaintiff. ................................................................................................ 22

IV.    Plaintiff is Not Entitled to Expenses Sought for Videotaped Depositions. ..................... 22

    A.   The Court Should Reconsider its Award of Costs Requested Because Plaintiff Has Not Shown that She is Entitled to Costs Sought for "Rush Fees." ...................................................................................................... 24

V.     CONCLUSION ......................................................................................... 24

US_ACTIVE-170847471.6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abell v. Potomac Ins. Co.*,
    946 F.2d 1160 (5th Cir. 1991) ....................................................................4

*Agredano v. State Farms Lloyds*,
    Case No. 5:15-cv-1067-RCL, 2021 U.S. Dist. LEXIS 176702 (W.D. Tex.
    Sept. 16, 2021) ........................................................................................11

*Alonzo-Miranda v. Schlumberger Tech. Corp.*,
    Civ. A. No. 5:13-cv-1057, 2015 U.S. Dist. LEXIS 76028 (W.D. Tex. June 11,
    2025) ................................................................................................23, 24

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
    No. 4:12-CV-083-Y, 2012 U.S. Dist. LEXIS 198394 (N.D. Tex. Nov. 2,
    2012) ........................................................................................................3

*Barrow v. Greenville Indep. Sch. Dist.*,
    2005 U.S. Dist. LEXIS 34557 (N.D. Tex. Dec. 20, 2005) ................................13, 14

*Bierscheid v. Hamman*,
    2022 U.S. Dist. LEXIS 111629 (S.D. Tex. June 23, 2022) ..................................14

*Black v. Settlepou, P.C.*,
    732 F.3d 492 (5th Cir. 2013) ................................................................15, 16

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................16, 18, 21, 22

*Bramlett v. Med. Protective Co.*,
    2010 U.S. Dist. LEXIS 85898 (N.D. Tex. Aug. 20, 2010) ....................................14

*Calsep A/S v. Intelligent Petro. Software Solutions, LLC*,
    No. 4:19-CV-1118, 2022 U.S. Dist. LEXIS 294438 (S.D. Tex. Feb. 18, 2022) ......................9

*Carroll v. Sanderson Farms, Inc.*,
    No. H-10-3108, 2014 U.S. Dist. LEXIS 16890, 2014 WL 549380 (S.D. Tex.
    Feb. 11, 2014) ........................................................................................10

*Chumney v. Glasscock County Indep. Sch. Dist.*,
    Civ. A. No. 6:17-CV-037-C, 2019 U.S. Dist. LEXIS 233633 (N.D. Tex. Mar.
    6, 2019) ..................................................................................................6

*City of Burlington v. Dague*,
   505 U.S. 557 (1992)...........................................................................................16, 19

*Cole v. Orleans Parish Sheriff's Office*,
   No. 11-2211, 2013 U.S. Dist. LEXIS 145389, 2013 WL 5557416 (E.D. La.
   Oct. 8, 2013) ...................................................................................................................10

*Combs v. City of Huntington, Tex.*,
   829 F.3d 388 (5th Cir. 2016) ...........................................................................................4

*Combs v. City of Huntington*¸829
   F.3d 388, 392 (5th Cir. 2016) .........................................................................................8

*Dardar v. T&C Marine, L.L.C.*,
   Civ. A. No. 16-13797 H, 2018 U.S. Dist. LEXIS 139837 (E.D. La. May 3,
   2018) ...................................................................................................................5, 6, 7

*Denton v. City of El Paso*,
   No. EP-20-CV-85-KC, 2022 U.S. Dist. LEXIS 123570 (W.D. Tex. 2022)...........................19

*Eastman Chem. Co. v. PlastiPure, Inc.*,
   No. A-12-CA-057-SS, 2013 U.S. Dist. LEXIS 144390 (W.D. Tex. Oct. 4,
   2013) .................................................................................................................23

*Fields v. Keith*,
   174 F. Supp. 2d 464 (N.D. Tex. 2001) ...........................................................................6

*Flowers v. Wiley*,
   675 F.2d 704 (5th Cir. 1982) .........................................................................................9

*Glass v. United States*,
   335 F. Supp. 2d 736 (N.D. Tex. 2004) .........................................................................12

*Grovner v. Georgia-Pacific Corp.*,
   625 F.2d 1289 (5th Cir. 1980) .........................................................................................7

*Harris v. Dallas Cnty. Hosp.*,
   No. 3:14cv3663D, 2016 U.S. Dist. LEXIS 103769 (N.D. Tex. Aug. 5, 2016) ...............23, 24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..............................................................................................4, 9, 19, 20

*Hopwood v. State of Texas*,
   236 F.3d 256 (5th Cir. 2000) .........................................................................................10

*Jimenez v. Wood Cty.*,
   621 F.3d 372 (5th Cir. 2010) .........................................................................................8

US_ACTIVE-170847471.6

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................................... *passim*

*Kosti v. Tex. A&M University-Commerce*,
    No. 3:10-cv-2265-M, 2015 U.S. Dist. LEXIS 175827 (N.D. Tex. Dec. 28,
    2015) .........................................................................................................................4, 5, 6, 7

*Leal v. Magic Touch Up, Inc.*,
    Civ. A. No. 3:16-CV-00662-O, 2019 U.S. Dist. LEXIS 4365 (N.D. Tex. Jan.
    9, 2019) ...................................................................................................................23, 24

*Leroy v. Houston*,
    906 F.2d 1068 (5th Cir. 1990) ...........................................................................9, 11

*Mota v. Univ. of Tex.*,
    261 F.3d 512 (5th Cir. 2001) ..........................................................................4, 22, 23

*Nash v. Chandler*,
    848 F.2d 567 (5th Cir. 1988) ..............................................................................15

*NuVasive, Inc. v. Lewis*,
    No. A-12-CA-1156-SS, 2014 U.S. Dist. LEXIS 151117 (W.D. Tex. Oct. 22,
    2014) .........................................................................................................................23

*Owens v. Excel Mgmt. Serv., Inc.*,
    No. 3-02-CV-0835-L, 2004 U.S. Dist. LEXIS 28670, 2004 WL 576091 (N.D.
    Tex. March 16, 2004)...............................................................................................24

*Paris v. Dallas Automotive, Inc.*,
    No. 3:97-CV-0208-L, 2004 U.S. Dist. LEXIS 18893 (N.D. Tex. Sep. 21,
    2004) .........................................................................................................................14

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)...........................................................................................18, 21

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010).......................................................................................... *passim*

*Portillo v. Cunningham*,
    872 F.3d 728 (5th Cir. 2017) ................................................................................4

*Rouse v. Target Corp.*,
    181 F. Supp. 3d 379 (S.D. Tex. 2016) ..................................................................9

*Saizan v. Delta Concrete Prods. Co.*,
    448 F.3d 795 (5th Cir. 2006) ........................................................................10, 19, 20

iv

*Saizon v. Delta Concrete Prods. Co.*,
  448, F.3d 795, 800 (5th Cir. 2006) ...................................................................17, 18

*Sanmina Corp. v. Banctec USA, Inc.*,
  No. 3-99-CV-665-H, 2004 U.S. Dist. LEXIS 23774, 2004 WL 2826452 (N.D.
  Tex. Nov. 23, 2004) .........................................................................................24

*Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc.*,
  Civ. A. No. 3:05-CV-1745-M, 2008 U.S. Dist. LEXIS 68680 (N.D. Tex. Aug.
  19, 2008) ...................................................................................................11, 12

*Walker v. United States HUD*,
  99 F.3d 761 .......................................................................................... *passim*

**Statutes**

42 U.S.C. § 1988.........................................................................................................20

42 U.S.C. § 2000e-5(k)..........................................................................................3, 23

45 U.S.C. § 181...........................................................................................................3

US_ACTIVE-170847471.6

Defendant Southwest Airlines Co. ("Southwest") responds to Plaintiff Charlene Carter's ("Plaintiff") Motion for Attorneys' Fees and Expenses from Southwest and Transport Workers Union of America, Local 556 ("Local 556") (with Southwest, collectively "Defendants") and also files this Motion to Reconsider Certain Costs Awarded, and would show as follows:

## I.    SUMMARY OF RESPONSE

Plaintiff's fee application fails to account for: (1) the fact that three of her six initial claims were dismissed; (2) that her claims under the Railway Labor Act ("RLA") do not permit fee recovery; (3) duplicative trial preparation and attendance at trial by three attorneys; and (4) two unsuccessful discovery motions filed against Southwest and an unsuccessful motion for summary judgment filed against Defendants.  Moreover, Southwest is entitled to percentage reductions of the fees ordered based on Plaintiff's counsels' block billing because Plaintiff seeks fees as to claims for which there is no fee entitlement.  Plaintiff also attempts to shift several costs and expenses, such as meals, hotel costs, and costs for "rush fees," to Southwest without a proper basis.  Accordingly, Southwest requests that this Court reduce the fees, expenses, and costs[1] sought in the amounts detailed below.

## II.    RELEVANT BACKGROUND

Plaintiff mischaracterizes the history of this litigation to inflate her success and paint Southwest in a negative light.  For example, Plaintiff was not "forced . . . to litigate two rounds of motions to dismiss, in which she ultimately prevailed."  Motion, at 3.  Instead, as Plaintiff admits, the "parties stipulated to [Plaintiff] filing a Second Amended Complaint" at a status conference where the initial motions to dismiss were heard.  *Id*. at 4.  Further, Plaintiff did not "ultimately

---

[1] The Court awarded the full bill of costs sought on January 3, 2023 before Southwest was required to file a response to Plaintiff's Motion for Attorneys' Fees and Expenses.  Accordingly, Southwest requests that the Court reconsider that award and reduce it as discussed in Section III, H.

prevail" on the motions to dismiss and did not "successfully litigate[ ] all of her claims against Southwest and Local 556 in this case," as three of the six claims initially filed against Defendants were dismissed with prejudice. *See* Doc. 69, at 35.

In Plaintiff's Second Amended Complaint, in addition to her retaliation claims under the Railway Labor Act ("RLA") and her claims under Title VII, she asserted six causes of action based on: (1) allegedly protected speech under the RLA against Southwest; (2) maintenance of overbroad policies in alleged violation of the RLA against Southwest; and (3) retaliation for the exercise of Plaintiff's First and Fifth Amendment rights against Southwest and Local 556. *See* Doc. 47. The Court granted Defendants' second round of motions to dismiss on claims (1) and (2) against Southwest, and claim (3) against both Defendants. *See* Doc. 69, at 35. As to the claims only against Southwest, three of the five initial claims were dismissed.

Plaintiff also mischaracterizes the discovery and motion practice in the case. Although Plaintiff claims that Defendants' "aggressive litigation strategies continued through discovery, delaying this case for years, and increasing fees and expenses," she fails to mention that she filed two unsuccessful Motions to Compel against Southwest.[2] *See* Motion, at 4; *see also* Doc. 132 (first Motion to Compel); Doc. 146 (electronic order denying first Motion to Compel); Hearing Transcript, attached as Exhibit A (APP.0001-22) (denying first Motion to Compel); Doc. 176 (second Motion to Compel); Doc. 215 (denying second Motion to Compel). In fact, both of Plaintiff's Motions to Compel against Southwest were denied in their entirety. *See* Ex. A (APP 0001-22); Doc. 215.

---

[2] In addition, while Plaintiff ascribes the "delay" in the case to Defendants' "litigation strategies," the longer relative pendency of this case was the product of the Court, pursuant to the parties' stipulation, waiting to rule on the original motion to dismiss until after the arbitrator's ruling in connection with the grievance process as well as the fact that the case was transferred to two different judges after its original assignment.

Plaintiff also incorrectly contends that Southwest initially opposed self-collection of documents, insisting instead on an e-discovery protocol, and then suddenly reversing course months later.  (Motion, at 5).  Southwest did not refuse "self-collection" as it produced thousands of pages of documents in 2019 and early 2020.  *See* Doc. 147, at 2 (correcting the record on this issue).  Southwest raised the possibility of an e-discovery protocol due to the breadth and burdensome nature of Plaintiff's requests,[3] and then ultimately agreed to self-collection of a narrowed scope of the original requests.  *See id*., at 2–3; Doc. 134-1, at 6; Doc. 134-2, at 5; Doc. 140-2, at 16, 60.

Finally, Plaintiff complains of the dispositive motions filed by Defendants, but fails to note that she also filed a Motion for Partial Summary Judgment.  *See* Doc. 169, 221.  The Court denied Plaintiff's Motion for Partial Summary Judgment in its entirety.  *See* Doc. 232.

### III.      ARGUMENTS & AUTHORITIES

### A.      Attorneys' Fees Awards Rest Within the Discretion of the Trial Court

As Plaintiff concedes, attorneys' fees are not recoverable under the RLA.  Motion, at 9; *see also* 45 U.S.C. § 181 (specifically exempting air carriers from the RLA provision allowing the recovery of attorneys' fees); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, No. 4:12-CV-083-Y, 2012 U.S. Dist. LEXIS 198394, at *21 n.6 (N.D. Tex. Nov. 2, 2012) (noting the same).  Title VII, on the other hand, provides that a court may, in its discretion, award the "prevailing party" in any action "a reasonable attorney's fee."  42 U.S.C. § 2000e-5(k).

A plaintiff may be considered a "prevailing party" for attorneys' fees purposes if he or she succeeds on a significant issue in litigation that achieves some of the benefit the party sought in

---

[3] Plaintiff's original discovery requests asked for information about other employees not limited to flight attendants.

filing suit.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The determination of what is a "reasonable attorney's fee" is left to the discretion of the trial court.  *Id.*

First, the court calculates the lodestar, "which is equal to the numbers of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016).  "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017).  The court may reduce the lodestar if it includes hours that were not "reasonably expended*." Hensley*, 461 U.S. at 433–34.  Other factors also may lead a court to adjust a fee award, and the most critical is "the degree of success obtained." *Combs*, 829 F.3d. at 612.  Where, for example, a plaintiff obtained partial success, an award of hours reasonably expended times a reasonable fee may be excessive, and the court may reduce the award to account for partial success.  *Id.*

**B.     Plaintiff is Not Entitled to Recover Attorneys' Fees on her Non-Title VII Claims.**

Because the legal standards and proof required for Plaintiff's Title VII and RLA claims are different, the fees sought by Plaintiff should be reduced to account for work on the RLA claims. Plaintiff is correct that "[a] court need not segregate fees when the facts and issues are so closely interwoven" that the time spent on separate claims . . . cannot reasonably be divided." *Mota v. Univ. of Tex.*, 261 F.3d 512, 518 (5th Cir. 2001) (citing *Abell v. Potomac Ins. Co.*, 946 F.2d 1160, 1169 (5th Cir. 1991)).  However, district courts in the Fifth Circuit reduce fees when there is a difference in the elements and evidence required to prove the claims for which fees can be recovered and claims for which fees are not recoverable.

In *Kosti v. Tex. A&M University-Commerce*, for example, the plaintiff filed a motion for attorneys' fees after she prevailed on her Title VII claim.  No. 3:10-cv-2265-M, 2015 U.S. Dist.

4

LEXIS 175827, *15-23 (N.D. Tex. Dec. 28, 2015).  The plaintiff sought to recover attorneys' fees for time expended litigating his Title VII and non-Title VII claims, which did not support a fee entitlement, because the facts supporting his Title VII claim "pervade[d] each of the other claims," including his complaints about the defendant promoting a particular religion.  *Id*. at *18.  The district court rejected this argument, noting that: (1) the elements of the plaintiff's Title VII claim were distinct from his non-fee claims; and (2) there were facts that supported the non-Title VII claims that were immaterial to the Title VII claim.  *Id*. at *18–19.  The *Kosti* court reduced the total fees by 20% and held that "the amount of fees sought is not reasonable in relation to the results obtained on [the p]laintiff's Title VII retaliation claim insofar as it includes attorneys' fees that would have been expended solely on claims on which Plaintiff did not prevail."  *Id*. at *21.

The Eastern District of Louisiana similarly reduced a plaintiff's requested attorneys' fees to account for claims for which fees were not recoverable in *Dardar v. T&C Marine, L.L.C.*, Civ. A. No. 16-13797 H, 2018 U.S. Dist. LEXIS 139837, *8–12 (E.D. La. May 3, 2018).  At issue in *Dardar* were the plaintiff's claims for negligence under the Jones Act, unseaworthiness, and a maintenance and cure claim.  *Id*. at *9.  The plaintiff prevailed only on the latter claim at trial.  *Id*.  The court noted, "[t]he question in this case is whether the claims and facts were so closely interwoven that plaintiff should recover <u>all</u> of his attorneys' fees."  *Id*. at *9–10.  After acknowledging that some of the evidence to support each claim of Plaintiff's overlapped, the *Dardar* court held that it, "cannot accept plaintiff's argument that he is entitled to 100% of his billed fees . . . [g]iven the different in legal standards and evidentiary proof between these three claims."  *Id*. at *9–11.  The court therefore reduced the requested amount by 33% based on the partial overlap of the three claims.  *Id*. at *12.

The claims in this case are akin to the claims in *Kosti* and *Dardar*,[4] not those in *Espino v. Besteiro* cited by Plaintiff.  (Motion at 10–11) (citing 708 F.2d 1002, 1010 (5th Cir. 1983)).  In *Espino*, plaintiff plead a Section 1983 claim, for which fees were recoverable, and a claim under the Education for All Handicapped Children Act ("EAHCA"), for which fees were not recoverable. *Id*. at 1006–07.  In concluding that the claims arose out of a common nucleus of operative fact, the district court reasoned that "the treatment challenged separately under the EAHCA and [Section] 1983 is *exactly* the same; there is every reason to expect that [the plaintiff] would try both in one proceeding, as he has in fact done."  *Id*. at 1010 (emphasis added).  Accordingly, the holding in *Espino* was specific to the context of a Section 1983 and an EAHCA claim.

Conversely, Plaintiff's claim for religious discrimination under Title VII has different elements than her RLA retaliation and breach of fair representation claims and there is limited overlap of the evidence to support the three claims.  To be successful on her Title VII claim for religious discrimination, Plaintiff was required to show that: (1) she had a bona fide religious belief or was a member of an identifiable religion; (2) she was qualified for the position; (3) her beliefs or religion resulted in adverse employment action; and (4) she was treated differently from members outside that class.  *See Chumney v. Glasscock County Indep. Sch. Dist.*, Civ. A. No. 6:17-CV-037-C, 2019 U.S. Dist. LEXIS 233633, *15 (N.D. Tex. Mar. 6, 2019).  In an RLA retaliation claim, a plaintiff must demonstrate that: (1) she engaged in RLA protected activities; (2) the employer had knowledge of the activities; (3) the employer harbored anti-union animus; and (4) the animus was a substantial or motivating factor in plaintiff's termination.  *See Fields v. Keith*, 174 F. Supp. 2d 464, 480 (N.D. Tex. 2001).  To prevail on a breach of a duty of fair representation

---

[4] Southwest acknowledges that *Kosti* and *Dardar* both dealt with unsuccessful claims for which attorneys' fees were not recoverable.  However, that fact is irrelevant to the inquiry of whether the claims for which attorneys' fees are not recoverable are sufficiently intertwined with Plaintiff's Title VII Claims.

claim ("DFR claim") against a union defendant, a plaintiff must demonstrate that the union's conduct is arbitrary, discriminatory, or in bad faith, or that the union discharged its duties in a perfunctory manner. *Grovner v. Georgia-Pacific Corp.*, 625 F.2d 1289, 1290 (5th Cir. 1980).

Comparing the Title VII and RLA retaliation claims, the only element that arguably overlaps is the necessity to show an adverse employment action. There is no overlap in the elements for the Title VII and breach of fair representation claims. Further, the evidentiary overlap between Plaintiff's Title VII claim and her RLA retaliation claim is limited. While both claims required evidence relating to Plaintiff's termination from employment, there was significant evidence addressed at trial in support of Plaintiff's RLA claim that had nothing to do with her Title VII claim. Specifically, Plaintiff's claims under the RLA were based as much on Plaintiff's historical disagreements with the Union and its leadership that had nothing remotely to do with religious expression or practice and thus involved proof at trial that was not connected to Plaintiff's Title VII claims. Accordingly, as in *Kosti* and *Dardar*, the amount of fees awarded should be at least partially reduced to account for the work performed to advance her RLA retaliation and breach of fair representation claims.

Southwest proposes a twenty-five percent reduction of fees sought to account for the work performed to advance Plaintiff's RLA retaliation and breach of fair representation claims. *Dardar*, 2018 U.S. Dist. LEXIS 139837, at *12 (holding that "it is appropriate to make a percentage reduction in [the plaintiff's] fee request to reflect his entitled to fees on the maintenance and cure claim only."). A twenty-five percent reduction is reasonable here given that, of the three claims that went to trial, Plaintiff prevailed on only one claim for which fees are recoverable. *See Kosti*, 2015 U.S. Dist. LEXIS 175827, at *21 (reducing fee award by 20%); *Dardar*, 2018 U.S. Dist. LEXIS 139837, at *12 (reducing fee award by 33% where there was substantial overlap).

7

In addition to the foregoing deduction, Southwest proposes an additional twenty-five percent deduction on all fees billed through February 1, 2019, on which date the Court dismissed half of Plaintiff's initial claims.  *See* Doc. 69, at 35.  Southwest therefore requests an aggregated deduction of fifty percent of fees claimed through February, 1, 2019. Reducing Plaintiff's requested fees for this period by fifty percent is proportionate and reasonable to account for the Court's dismissal of half of Plaintiff's initial claims.  The total fees billed through February 1, 2019, were $443,806.50.  (*See* Summary of Pre-MTD Fees, attached as Exhibit B (APP.0023-42)). Accordingly, a reduction of $221,903.25, fifty percent of what was billed through February 1, 2019, properly accounts for the proportion of initial claims that were dismissed, and sufficiently accounts for any overlap with the remaining claims.

In sum, and not yet including other requested deductions enumerated in Sections (C) and (D) below, Southwest respectfully requests that the Court reduce by fifty percent all fees claimed through February 1, 2019, and reduce by twenty-five percent all fees the Court deems are properly claimed after February 1, 2019.  *See* Table 1.

Table 1. Calculation without accounting for requested deductions below

| Equation | Comment |
|---|---|
| $ 2,262,427.89 | Total Fees Claimed |
| - $   221,903.25 | 50% Deduction of Fees Through 2/1/2019 |
| - $   454,655.35 | 25% Deduction of Fees After 2/1/2019 |
| $ 1,585,869.29 | Proposed Total (Without below requested deductions) |

**C.    Plaintiff is Not Entitled to Recover Attorneys' Fees for Duplicative Work by Three Senior Attorneys for Preparing For and Attending Trial.**

Plaintiff should not be permitted to recover fees for three senior attorneys performing duplicative work for trial preparation and during trial.  "In calculating the lodestar, '[t]he court should exclude all time that is excessive, duplicative, or inadequately documented.'"  *Combs v. City of Huntington*¸829 F.3d 388, 392 (5th Cir. 2016) (citing *Jimenez v. Wood Cty.*, 621 F.3d 372,

379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011)).  "Hours which, though

actually expended, nevertheless . . . result from the case being 'overstaffed,' are *not* hours

'reasonably expended.'"  *Leroy v. Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (citing *Hensley*

*v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1941 (1983); *Flowers v. Wiley*, 675 F.2d 704,

705 (5th Cir. 1982.  For example, in *Calsep A/S v. Intelligent Petro. Software Solutions, LLC*, the

district court reduced the attorneys' fees sought by 20% where the "bills demonstrate duplicative

hours because multiple partners performed essentially the same tasks."  No. 4:19-CV-1118, 2022

U.S. Dist. LEXIS 294438, *7 (S.D. Tex. Feb. 18, 2022) (citing *Rouse v. Target Corp.*, 181 F. Supp.

3d 379, 389–90 (S.D. Tex. 2016) (reducing attorneys' fees when partners billed duplicative work)).

The staffing of Plaintiff's attorneys in this case for trial preparation and trial is similar to

that in *Calsep*, with three senior attorneys duplicating much of the same work.  Matthew Gilliam

has been practicing for eleven (11) years, while counsel he brought on to assist at trial, Bobby

Pryor and Matthew Hill, have been practicing for thirty-nine (39) and twenty-one (21) years

respectively.  (*See* Doc. 378-1, App. 1, 231–32).  In total, all three attorneys expended 1,113 hours

of time for trial preparation and trial attendance for a fee total of $443,807.50, broken down as

follows:  Gilliam – 544.80 hours, $190,680.00; Pryor – 285.7 hours, $141,421.50; Hill – 282.8

hours, $11,706.00.  (*See* Summary of Trial Fees, attached as Exhibit C (APP.0043-61)).  From the

block billed entries submitted, it is clear that all three attorneys worked on nearly all pre-trial tasks,

including, for example, preparation for jury selection and drafting the motion in limine and exhibit

lists.  *See id*. (with various entries referring to work on pretrial pleadings or filings).  All three

attorneys also billed for attending trial, even though Pryor handled nearly all of the presentation of

Plaintiff's case.  *See id*.  There was also considerable time expended by all three attorneys to get

Pryor and Hill up to speed on the case, which was not accounted for in any reductions in Plaintiff's

9

fee application.  *See id*.  It is not at all surprising that Pryor and Hill would need to quickly get up to speed on the facts and law associated with the case given their late entry to the proceedings, but Southwest should not have to bear that cost.

Although the block-billed entries make it difficult to determine the precise number of hours spent on duplicative tasks, Southwest submits that the Court should exercise its discretion to apply a simple percentage reduction to the total billed for trial preparation and trial.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).  The reduction percentage applied by courts has ranged from ten percent to fifty percent.  *See e.g., Saizan*, 448 F.3d at 800 (10% reduction for vagueness, duplicative work, and lack of billing judgment); *Walker v. United States HUD*, 99 F.3d 761, 770 (reducing fee award by 15% for lack of billing judgment); *Hopwood v. State of Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (25% reduction based on inadequate time entries, duplicative work product, and lack of billing judgment); *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 U.S. Dist. LEXIS 16890, 2014 WL 549380, at *23 (S.D. Tex. Feb. 11, 2014) (50% reduction when counsel failed to demonstrate billing judgment, majority of entries were vague and it was unclear whether fees were for clerical or legal work); *Cole v. Orleans Parish Sheriff's Office*, No. 11-2211, 2013 U.S. Dist. LEXIS 145389, 2013 WL 5557416, at *4 (E.D. La. Oct. 8, 2013) (50% reduction for failure to exercise billing judgment).  In light of the time spent to get trial counsel up to speed on the case, the duplicative work on pre-trial pleadings and preparation, and the attendance of all three attorneys at trial, Southwest proposes a 40% reduction of the total fees expended for trial preparation and trial ($443,807.50) for a total fee reduction of $177,523.00.

**D.** **Plaintiff is Not Entitled to Recover Attorneys' Fees for Unsuccessful Discovery and Dispositive Motions.**

Plaintiff should not be permitted to recover attorneys' fees for time expended on two unsuccessful motions to compel filed against Southwest.  "[D]istrict courts may deduct time

expended on unsuccessful or unnecessary pleadings, motions, discovery requests, or other court filings." *Agredano v. State Farms Lloyds*, Case No. 5:15-cv-1067-RCL, 2021 U.S. Dist. LEXIS 176702, *7 (W.D. Tex. Sept. 16, 2021) (citing *Leroy v. City of Houston*, 906 F.2d 1068, 1085-86) (5th Cir. 1990) (denying fees for hours expended on an unsuccessful motion for postjudgment interest)).  In *Agredano*, the district court denied attorneys' fees for several unsuccessful motions, including discovery motions and a motion for partial summary judgment.[5]  *Id*.  The Northern District of Texas similarly has excluded recovery of attorneys' fees for unsuccessful discovery motions.  *See Ultimate Living Int'l, Inc. v. Miracle Greens Supplements, Inc.*, Civ. A. No. 3:05-CV-1745-M, 2008 U.S. Dist. LEXIS 68680, *15–*16 (N.D. Tex. Aug. 19, 2008) (Lynn, B. presiding).  Accordingly, the Court should deduct attorneys' fees expended on Plaintiff's two Motions to Compel and Partial Motion for Summary Judgment that were denied in all respects.

Plaintiff's first Motion to Compel was filed on November 13, 2020, and heard by Magistrate Judge Rebecca Rutherford on December 11, 2020.  *See* Doc. 132, 145.  During the hearing, Judge Rutherford rejected Plaintiff's counsel interpretation of the case law at issue and found that Plaintiff's discovery requests were not appropriately narrowed.  *See* Ex. A at 12–13 (APP 0012-13)("I have read *Brown* and I do not agree that it stands for the proposition you assert…I don't find that your discovery requests are appropriately narrowed").  Four of Plaintiff's attorneys expended a total of $123,927.50 in fees on this discovery motion against Southwest.  *See* Summary of First MTC Fees, attached as Exhibit D (APP. 0062-65) (including entire block billed entries); *see also Ultimate Living,* 2008 U.S. Dist. LEXIS 68680, at *16 (assuming that all hours in billing entries related to unsuccessful motion where time was block-billed).

---

[5] The *Agredano* Court also noted that the plaintiffs withdrew some of the motions at issue, but not all.  Some of the motions that the Court did not allow recovery on were denied, not withdrawn.

11

Plaintiff filed her second Motion to Compel against Southwest on September 8, 2021.  Doc. 176.  Judge Rutherford again denied the motion in its entirety on November 19, 2021, finding that the motion was untimely.  *See* Doc. 215.  The order denying the motion also stated, "[e]ven if the Court, in its discretion, determined that [Plaintiff] timely filed her motion, [Plaintiff] has not shown that she is entitled to the documents and information she seeks."  *Id*. at 5 (noting that the discovery at issue in the pending motion is not within the scope of the permissible follow-up discovery).  In connection with this motion, three of Plaintiff's attorneys expended a total of $61,295.00 in fees. *See* Summary of Second MTC Fees, attached as Exhibit E (APP. 0066-67) (including entire block billed entries); *see also Ultimate Living,* 2008 U.S. Dist. LEXIS 68680, at *16 (assuming that all hours in billing entries related to unsuccessful motion where time was block-billed).

Finally, Plaintiff filed her Motion for Partial Summary Judgment on September 9, 2021, and another brief supporting the same on February 17, 2022.  *See* Doc. 169, 221.  The Court denied Plaintiff's Motion for Partial Summary Judgment in its entirety.  *See* Doc. 232.   Three attorneys for Plaintiff expended a total of $266,227.50 on Plaintiff's unsuccessful dispositive motion.  *See* Summary of Plaintiff's MSJ Fees, attached as Exhibit F (APP.0068-72) (including entire billed entries); *see also Ultimate Living,* 2008 U.S. Dist. LEXIS 68680, at *16 (assuming that all hours in billing entries related to unsuccessful motion where time was block-billed).

### E.     The Court Should Further Reduce the Fee Award by Thirty Percent Given Plaintiff's Use of Block Billing

"Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation.  "Block billing" refers to the "time-keeping method by which" attorneys enter their "total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004) (citation omitted). When time records are block billed, the court cannot accurately determine the number of hours

spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable." *Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 34557, at *11–12 (N.D. Tex. Dec. 20, 2005)

Here, the time records of Plaintiff's counsel are replete with instances of block billing. (*See generally* Plaintiff's Appendix pp. 13–100; 114–235; 242–316.)  For example, Plaintiff requests $6,055.00 for 17.3 hours based on the entry: "Case filing and complaint planning discussion; Finalize and file complaint and case documents." (Plaintiff's Appendix at 10).  Because Plaintiff's counsel used block billing, the Court cannot determine how much time was spent on each activity in the narrative billing entry.  Specific to this entry, for example, it is unclear how much time was spent in a planning and discussing as opposed to the time spent finalizing and filing the complaint and case documents.  "It is conceivable—even if unlikely—that [counsel] spent" most of his time conferring with opposing counsel, "and expended only a modest amount of time . . . on drafting and research." *Fralick*, 2011 U.S. Dist. LEXIS 13672, at *20.  "The point is that the court cannot [determine] how much time was spent on each task due to the use of block billing." *Id*.

There are *numerous* additional examples where Plaintiff's counsel billed hours in a given day, yet failed to indicate how much time they spent on each task.  Some of the more egregiously block-billed entries include:

- 3/29/2019 – 9 hours – $3,150.00: "Prepare and revise initial disclosures; discuss initial disclosures with co counsel; finalize and send initial disclosures; review motion to strike reply and research cited legal authorities; prepare and file notice re citation correction; case strategy and develop plans for requests for production."

- 7/29/2019 – 6.3 hours – $2,205.00: "Organizing SWA production of documents; analyzing L556 discovery plan and issues; communicating with client re status of case and discovery; preparing research and outline for motion to compel re L556 issues."

13

- 5/14/2020 – 10.5 hours – $3,675.00: "Reviewing, editing, and researching for L556 MTC Brief; incorporating edits and doing final preparations for filing; filing brief; communications with client; communications with SWA."

- 6/12/2020 – 7.4 hours – $2,590.00: "Making arrangements with S & W process service to serve Stone subpoena; finalizing and sending notice of subpoena to L556 and SWA; phone call with L556 AG re discovery issues."

- 7/8/2020 – 10.7 hours – $3,745.00: "reviewing SWA proposed discovery compromise; discussing SWA sanctions motion with co counsel; case management and planning; communicating with local counsel re sanctions motions; reading SWA motion; researching and preparing response to anticipated motion."

For each of the foregoing—again, a small sample of the large number of block-billed entries—it is impossible to determine how much time was spent on each discrete task in the entry.

Because of the pervasive use of block billing by Plaintiff's counsel, the Court is not able to accurately determine the reasonableness of a large majority of the work for which they seek fees. Southwest therefore requests that the Court deduct 30% from the lodestar, after deducting amounts discussed in Sections B–D above for specific tasks that were unreasonable. *See Fralick*, 2011 U.S. Dist. LEXIS 13672, at *40–42 (applying 25% reduction for block billing, and citing *Bramlett v. Med. Protective Co.*, 2010 U.S. Dist. LEXIS 85898 (N.D. Tex. Aug. 20, 2010), for the proposition that courts typically apply reductions up to 30% for block billing); *Barrow*, 2005 U.S. Dist. LEXIS 34557, at *11) (applying 20% reduction for same); *Paris v. Dallas Automotive, Inc.*, No. 3:97-CV-0208-L, 2004 U.S. Dist. LEXIS 18893, at *9 (N.D. Tex. Sep. 21, 2004) (applying 40% reduction for same).

## F.    The Court Should Apportion Attorneys' Fees Between the Two Defendants

In determining whether to impose joint and several liability for attorneys' fees, "[f]actors to consider … include whether (a) it is an equitable result; (b) a single, indivisible injury exists; (c) each party played a substantial role; and (d) the legal defense was joint." *Bierscheid v.*

*Hamman*, 2022 U.S. Dist. LEXIS 111629, *23 (S.D. Tex. June 23, 2022). Application of these factors here counsels against making Southwest and Local 556 – each of which had separate representations – jointly liable for an attorneys' fee award.

A plaintiff is not entitled to recover fees incurred in pursuit of a duty of fair representation claim. Nevertheless, Carter seeks to recover fees ***against Southwest*** for time spent litigating her DFR claim against ***Local 556***. It would be inequitable to make Southwest liable for fees associated with Plaintiff's claim brought exclusively against a separate party, that does not provide for fee shifting, and that arises from the union's representation of its members, conduct over which Southwest was uninvolved. *See Walker v. United States HUD*, 99 F.3d 761, 772 (5th Cir. 1996) ("If joint and several liability [for attorneys' fees] leads to inequitable results, it is reversible").

Similarly, Carter's Title VII claims against Southwest and Local 556 arise from entirely distinct conduct. The predicate for Carter's Title VII claim against Southwest (*i.e.*, the motive of Southwest decision makers) and against Local 556 (*e.g.*, the motive for Stone's report of Plaintiff) are conceptually and legally distinct. Stated another way, the Title VII claims against Local 556 involve events over which Southwest exercised no control and that were independently actionable irrespective of any conduct against Southwest. In light of the above, the Court should apportion any attorneys' fee award between Southwest and the Union. *See Nash v. Chandler*, 848 F.2d 567, 573 (5th Cir. 1988) (noting that there are instances in which apportioning an attorneys' fee award is necessary).

### G.     Plaintiff is Not Entitled to an Increase of the Lodestar.

After calculating the lodestar figure, a district court may enhance or decrease the amount of attorneys' fees based on the relative weight of the twelve factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).  *Black v. Settlepou, P.C.*, 732 F.3d

492, 502 (5th Cir. 2013).  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 502 n.7 (citing *Johnson*, 488 F.2d at 717–19 (5th Cir. 1974)).

"[T]here is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  *Perdue v. Kenny A.*, 559 U.S. 542, 554 (2010).  "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant.  *Id.* at 553 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Blum v. Stenson*, 465 U.S. 886, 898 (1984)).  Importantly, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."  *Settlepou*, 732 F.3d at 502.

Here, Plaintiff offers only conclusory discussion of several of the *Johnson* factors and fails to rebut the strong presumption of the reasonableness of the lodestar figure.

### 1.      Plaintiff seeks to double count several *Johnson* factors.

Plaintiff attempts to rely on the following *Johnson* factors to enhance the lodestar figure: (1) time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (5) the customary fee charged for those services

in the relevant community; (6) whether the fee is fixed or contingent; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; and (11) the nature and length of the professional relationship with the client.  (Motion, at 22–24).  Because most of these factors are subsumed by the initial lodestar calculation, Plaintiff's request to escalate the lodestar calculation requires impermissible double counting.

### a)      *Time and Labor Required.*

Plaintiff seeks to enhance the lodestar amount because she and her counsel spent more than five years litigating this case.  (Motion, at 22).[6]  However, factor one is fully accounted for through the base lodestar.  Plaintiff admits, "[t]he hours incurred by Carter's counsel reflect the time and labor required to prosecute her case from the drafting of the complaint through judgment, and continuing through today."  *Id.* at 22–23.  That is correct, as "[t]he first factor is already included in the lodestar."  *Walker v. United States HUD*, 99 F.3d 761, 771 (5th Cir. 1996).  Because "the lodestar amount may not be adjusted due to a *Johnson* factor if the creation of the lodestar amount already took that factor into account," factor one cannot serve as a basis for enhancing the base lodestar amount.  *Saizon v. Delta Concrete Prods. Co.*, 448, F.3d 795, 800 (5th Cir. 2006).

### b)      *Novelty and Difficulty of the Questions.*

Plaintiff seeks to enhance the lodestar amount because her case presented novel issues regarding abortion-related speech.  (Motion, at 2).  The Supreme Court has significantly limited the use of the second factor for enhancement purposes because it is presumptively accounted for in the base lodestar calculation.  *See Purdue v. Kenny A.*, 559 U.S. 542, 553 (2010) ("We have

---

[6] Again, the delays in the case were in large part the product of agreements between the parties.  Specifically, the parties agreed to stay discovery while the motions to dismiss were pending and agreed to two trial continuances based on the pendency of the parties' summary judgment motions.  The parties did not actively litigate the case during those periods.  As such, the suggestion that this case was litigated for five years is misleading.

US_ACTIVE-170847471.6

thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel.") (internal quotations omitted); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("Novelty and complexity of the issues . . . [is] presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award."). Accordingly, consideration of this factor for enhancement would constitute double counting. *See Purdue*, 559 U.S. at 553; *Saizon*, 488 F.3d at 800.

### c) *Skill Requisite to Perform the Legal Service Properly*

Plaintiff seeks to enhance the lodestar amount because the case required Plaintiff to retain attorneys skilled in labor and employment law. (Motion, at 23). The situation Plaintiff describes is not exceptional. Moreover, the Supreme Court has significantly limited the use of the third factor because it is accounted for in the base lodestar amount. *See Delaware Valley*, 478 U.S. at 565 (1986) ("[T]he special skill and experience of counsel . . . [is] presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (quoting *Blum*, 465 U.S. at 898–900); *Walker*, 99 F.3d at 771–72 (5th Cir. 1996) ("The Supreme Court has limited greatly the use of the . . . third . . . factor[ ], and we have held that 'enhancements based upon [this] factor[ ] are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts."). Accordingly, consideration of this factor to enhance the base lodestar amount also would constitute double counting. *See Saizon*, 488 F.3d at 800.

### d) *Customary Fee.*

Plaintiff alleges its counsel charged below market rate and that this warrants an upward adjustment to the lodestar calculation. (Motion, at 23). Plaintiff in her fee application has taken a

18

position as to a "reasonable rate" so she cannot simultaneously argue that her rate is "below market." This factor is considered heavily in determination of the reasonable hourly rate in the lodestar calculation and it is therefore improper to consider this factor a second time to justify an upward adjustment. *See e.g., Denton v. City of El Paso*, No. EP-20-CV-85-KC, 2022 U.S. Dist. LEXIS 123570, at *18 (W.D. Tex. 2022) ("the Court has already considered [the fifth factor] to calculate the lodestar, and thus will not consider [it] again.").

### e)   *Whether Fee is Fixed or Contingent.*

Under the sixth *Johnson* factor, Plaintiff raises several points unrelated to fixed or contingent fee payments. (Motion, at 24). Plaintiff outlines counsel's payment structure: "The Foundation provided Carter with free legal aid . . . [and] reimbursed and/or paid Jenkins & Watkins and Pryor & Bruce for all of their fees and expenses." *Id.* Plaintiff does not justify why this payment structure might justify an enhanced lodestar amount. *See id.* Moreover, "[t]he Supreme Court has barred ***any*** use of the sixth factor" in enhancing the lodestar. *Walker*, 99 F.3d at 772 (citing *Shipes*, 987 F.2d at 320 ("following the clearly lighted path of *Burlington*, we now hold that the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees.") (emphasis added)). Accordingly, factor six cannot serve as a basis for enhancing the base lodestar amount. *See id.*; *Shipes*, 987 F.2d at 320.

### f)   *Amount Involved and the Results Obtained.*

Plaintiff raises several points related to the eighth *Johnson* factor and asserts that "the most critical factor is the degree of success obtained." (Motion, at 22). Plaintiff cites two cases for this proposition: *Hensley v. Eckerhart*, 461 U.S. 424 (1983) and *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795 (5th Cir. 2006) which discuss the "critical" nature of factor eight with regard to a *reduction* of the lodestar amount due to a prevailing party's limited success on the merits of their

claim.  Thus, while it is true that the eighth factor is "the most critical factor" with regard to reducing the lodestar figure, the same is not true with regard to enhancing the lodestar figure.

In *Hensley*, the Supreme Court's entire discussion of the eighth factor is as follows:

> We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988.  Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But **where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.**  On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

*Hensley*, 461 U.S. at 440 (emphasis added).  Under *Hensley*, a court may reduce fees to better reflect a partial success.  It does not follow that a court should enhance fees beyond 100% to reflect what Plaintiff deems to be a complete success.  *See Walker*, 99 F.3d at 771–72 (5th Cir. 1996) ("The Supreme Court has limited greatly the use of the . . . eighth . . . factor[ ], and we have held that 'enhancements based upon [this] factor[ ] are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts.").[7]  Further, Plaintiff disregards this Circuit's precedent regarding the eighth factor.  In *Walker*, the Fifth Circuit stated, "[a]n enhancement based on the eighth factor is appropriate only when the fee applicant can demonstrate that it is customary in the area for attorneys to charge an additional fee above their hourly rates for an exceptional result."  99 F.3d at 772 (quoting *Shipes*, 787 F.2d at 322).  Plaintiff makes no such showing.

---

[7] *Saizan*, also a case about a reduced lodestar amount, is similarly inapposite.  In *Saizan*, the Fifth Circuit affirmed the trial court's reduction of the lodestar figure on the basis of the prevailing party's limited success.  *Saizan*, 448 F.3d at 801 ("Where a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . Consequently, the District Court did not err in reducing the fee award.")

US_ACTIVE-170847471.6

**g)**    ***Experience, Reputation, and Ability of the Attorneys.***

Under the ninth *Johnson* factor, Plaintiff points to declarations from counsel "regarding their experience, reputation, and ability in labor and employment law."  Motion, at 24.  Plaintiff offers no argument or reasoning as to how these bare assertions make this a "rare case" that warrants an enhancement.  *See id.*  Moreover, the Supreme Court has significantly limited the use of the ninth factor for enhancement because it is presumptively accounted for in the base lodestar amount and the reasonable rate for the services rendered.  *See Delaware Valley*, 478 U.S. at 565 (1986).  As such, factor nine does not serve as a basis for enhancing the base lodestar amount.  *See Walker*, 99 F.3d at 771–72.

**h)**    ***Undesirability of the Case.***

Under the tenth *Johnson* factor, Plaintiff hypothesizes that the "case might be deemed undesirable given the difficulty of taking on [Defendants], and the controversial nature of the issues involved."  (Motion, at 24).  Plaintiff fails to provide the "specific evidence" required to warrant enhancement of the lodestar amount.  *See Perdue*, 559 U.S. at 553 ("a fee applicant seeking an enhancement must produce 'specific evidence' that supports the award.") (citing *Blum*, 465 U.S. at 899, 901 (enhancement must be based on "evidence that enhancement was necessary to provide fair and reasonable compensation")).  Plaintiff further states that Defendants' "aggressive litigation strategies" made this case undesirable.  *Id.*  Such allegations are "not uncommon in present-day litigation" and "simply [do] not render a case 'rare' or 'exceptional' for purposes of enhancing the lodestar amount."  *Shipes*, 987 F.2d at 321 (discussing obstinate litigation conduct that failed to support enhancement of lodestar amount).  Accordingly, the tenth *Johnson* factor does not support enhancement.

21

i)      *Nature and Length of the Professional Relationship with the Client.*

Under the eleventh factor, Plaintiff states, "Carter and her attorneys at the Foundation have had an attorney–client relationship that has lasted for more than five years while she has pursued her claims against [Defendants]." Motion, at 24. Again, Plaintiff fails to offer an explanation for why the representation of a client for the duration of a matter is "exceptional." Plaintiff thus fails to meet her burden of providing "specific evidence" warranting enhancement of the lodestar amount under this factor. *See Perdue*, 559 U.S. at 553 (citing *Blum*, 465 U.S. at 899, 901). Accordingly, the eleventh *Johnson* factor does not support enhancement of the lodestar figure.

## H.      Plaintiff is Not Entitled to Expenses Sought for Meals and Lodging for Plaintiff.

Plaintiff seeks to shift the cost of expenses for meals and lodging that she is not entitled to recover. The Fifth Circuit "has interpreted the 'attorney's fee' allowed by [Title VII] to include 'reasonable out-of-pocket expenses incurred by the attorney ***which are normally charged to a fee-paying client***, in the course of providing legal services,' such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *See Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (emphasis added). Amounts expended for Plaintiff's hotel costs are not expenses "incurred by the attorney" under *Mota*, even if Plaintiff's attorneys decided to front the hotel costs. Accordingly, the expenses sought by Plaintiff should be reduced by $418.92 for the meals with Plaintiff and an additional $2,375.01 for Plaintiff's hotel costs. *See* Summary of Meal and Lodging Expenses, attached as Exhibit G (APP. 0073).

## IV.      Plaintiff is Not Entitled to Expenses Sought for Videotaped Depositions.

Plaintiff seeks to also shift the cost of videotaped depositions to which she is not entitled to recover because the videos were not used at trial. In *Mota*, the Fifth Circuit expressly held that

videotaped depositions cannot be reimbursed under Section 2000e-5(k) because they cannot be characterized as "'out-of-pocket expenses' similar to postage and long-distance telephone calls." 261 F.3d at 529.  While Section 1920 has since been amended to permit the recovery of expenses for video depositions, district courts in the Fifth Circuit have "often found such costs unwarranted where . . . the video was not used at trial."  *Alonzo-Miranda v. Schlumberger Tech. Corp.*, Civ. A. No. 5:13-cv-1057, 2015 U.S. Dist. LEXIS 76028, *18 (W.D. Tex. June 11, 2025) (citing *NuVasive, Inc. v. Lewis,* No. A-12-CA-1156-SS, 2014 U.S. Dist. LEXIS 151117, *27 (W.D. Tex. Oct. 22, 2014) ("The Court fails to see how these costs were necessarily obtained for use in this case when the witness at issue actually appeared in person at trial, and the video deposition was not used"); *Eastman Chem. Co. v. PlastiPure, Inc.*, No. A-12-CA-057-SS, 2013 U.S. Dist. LEXIS 144390, *20–21 (W.D. Tex. Oct. 4, 2013) (declining to award costs for both transcripts and video recordings of the same deposition where the videos were not used at trial)); *see also Leal v. Magic Touch Up, Inc.*, Civ. A. No. 3:16-CV-00662-O, 2019 U.S. Dist. LEXIS 4365, *9 (N.D. Tex. Jan. 9, 2019) ("When courts have allowed the recovery of costs for both a printed deposition transcript and a videotaped deposition, it has often been the case that the video deposition was played at trial.").[8]

Here, Plaintiff seeks $9,130.69 for videotaped depositions and video synchronization costs. *See* Summary of Video Expenses, attached as Exhibit H (APP. 0074) (showing charges for a videographer for the depositions of Maureen Emlet, Denise Gutierrez, Meggan Jones, Mike Sims, Ed Schneider, Sonya Lacore, Brendan Colon, Nancy Cleburn).  But Plaintiff should not be able to recover those costs because the videotaped depositions were not used at trial and she has not shown

---

[8]District courts have also held that costs for video synchronization are not recoverable where there is no showing that synchronization was more a necessity than a convenience. *Harris v. Dallas Cnty. Hosp.*, No. 3:14cv3663D, 2016 U.S. Dist. LEXIS 103769, *11–12 (N.D. Tex. Aug. 5, 2016) (noting that costs for video synchronization is not enumerated in Section 1920).

that the video synchronization was necessary. *See Alonzo-Miranda*, 2015 U.S. Dist. LEXIS 76028, at *18; *Leal*, 2019 U.S. Dist. LEXIS 4365, at *9; *Harris*, 2016 U.S. Dist. LEXIS 103769, at *11–12. Accordingly, Southwest requests that the Court further reduce the expenses sought by $9,130.69.

### A. The Court Should Reconsider its Award of Costs Requested Because Plaintiff Has Not Shown that She is Entitled to Costs Sought for "Rush Fees."

Plaintiff also claims a number of line items that include "rush fees." *See* Plaintiff's Bill of Costs, at 15, 16, 19, 33, 38, 50, 52, 54, 61, 62. However, Plaintiff fails to provide support regarding the reasonableness or necessity of these fees. *See generally* Plaintiff's Appendix. It is unclear whether these fees were necessary to incur, or whether they were instead incurred for the mere convenience of counsel. Because Plaintiff fails to establish the reasonable necessity of these fees, the Court should decline Plaintiff's invitation to pass these costs on to Southwest. *See Sanmina Corp. v. Banctec USA, Inc.*, No. 3-99-CV-665-H, 2004 U.S. Dist. LEXIS 23774, 2004 WL 2826452, at *3 (N.D. Tex. Nov. 23, 2004) (denying fees for expedited transcripts where court determined the costs were more for the convenience of counsel than because of necessity); *Owens v. Excel Mgmt. Serv., Inc.*, No. 3-02-CV-0835-L, 2004 U.S. Dist. LEXIS 28670, 2004 WL 576091, at *1 (N.D. Tex. March 16, 2004) (concluding that charges incurred for convenience of counsel are not recoverable as costs). Accordingly, Southwest requests that the Court withdraw its January 3, 2023, award of costs in the amount of $21,670.10 and reduce the total costs awarded by $8,918.40 expended on unjustified rush fees. *See* Doc. 388; *see also* Summary of Rush Costs, attached as Exhibit I (APP. 0075).

### V.   CONCLUSION

As summarized herein, Southwest respectfully requests a reduction in the fee award sought by Plaintiff as follows:

24

- limit the attorneys' fees award to $779,897.68, which accounts for the following reductions from the total requested attorneys' fees of $2,262,437.89:

  (1) $221,903.25 for fees claimed through February, 1, 2019, in pursuit of meritless claims (*see supra*, p. 9);

  (2) $177,523 for duplicative trial preparation and trial work (*see supra*, p. 12);

  (3) $185,222.50 for unsuccessful discovery motions (*see supra* , p. 14);

  (4) $266,227.50 for an unsuccessful dispositive motion (*see supra*, p. 14); and

  (5) a 25% reduction of fees claimed after February 1, 2019, after deductions (2) through (4) above, totaling $297,412.10.  (*See supra*, p. 9).

  (6) a 30% reduction of all fees remaining after excluding and accounting for unreasonable work performed by Plaintiff's counsel

- deny Plaintiff's request to increase the lodestar amount.

- apportion attorneys' fees between the two Defendants given the distinct nature of the claims against each.

- limit the expenses sought to $37,599.27, which accounts for the following reductions from the total requested expenses of $49,523.89:

  (1) $418.92 for meals with Plaintiff;

  (2) $2,375.01 for Plaintiff's hotel costs; and

  (3) $9,130.69 for videotaped depositions and video synchronization.

- withdraw the award of costs issued on January 3, 2023 and reduce the total costs sought of $21,670.10 by $8,918.40 for rush fees, limiting the cost award to $12,751.70.

25

Dated:  January 9, 2023                    Respectfully submitted,

                                           /s/ Paulo B. McKeeby
                                           Paulo B. McKeeby
                                           State Bar No. 00784571
                                           Brian K. Morris
                                           State bar No. 24108707
                                           **REED SMITH LLP**
                                           2850 N. Harwood Street
                                           Suite 1500
                                           Dallas, Texas 75201
                                           Phone: 469-680-4200
                                           Facsimile: 469-680-4299
                                           pmckeeby@reedsmith.com
                                           bmorris@reedsmith.com

                                           **ATTORNEYS FOR DEFENDANT**
                                           **SOUTHWEST AIRLINES CO.**

                        **<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that a true and correct copy of the above and foregoing document has been

filed via the Court's ECF system and all counsel of record have been served on this 9th day of

January, 2023.

                                           /s/ Paulo B. McKeeby
                                           Paulo B. McKeeby

US_ACTIVE-170847471.6