UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO
SOUTHWEST AIRLINES CO.'S RESPONSE TO HER MOTION TO FIND
SOUTHWEST IN CONTEMPT AND FOR FURTHER RELIEF**

Pursuant to the Court's inherent powers and Federal Rule of Civil Procedure 70(e), Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this reply to Southwest Airlines Co.'s ("Southwest") response to her motion to find Southwest in contempt for violation of the Court's December 5, 2022 Order and Judgment.[1]

Southwest's "Recent Court Decision" notice subverted the Court's Order and Judgment and misled flight attendants by asserting that the Court ordered the company to inform flight attendants that it does not discriminate.[2] Carter also demonstrated that Southwest's "Inflight Info on the Go" Memo ("IIOTG Memo") discriminated against religious practices and beliefs on social media concerning abortion, and discriminated against Carter for her RLA-protected speech.[3] Southwest may not convey that the company will continue to treat flight attendants' religious expressions,

---

[1] Doc. Nos. 374, 375.
[2] Doc. No. 382, pp.7-9.
[3] *Id*. at pp.9-13.

1

practices and beliefs on social media, including those concerning abortion, as "inappropriate, harassing, offensive, repulsive and beyond the bounds of civility,"[4] and, thus, as social media policy violations. Southwest may not continue unlawfully enforcing the company's policies, with Southwest as the sole judge of whether protected conduct displays sufficient "civility." The Court should grant Carter's requests for corrective notices because they are well-established remedies, and do not interfere with Southwest's rights to speak about the case. The Court should award Carter's requested relief and any additional sanctions and relief it deems appropriate.[5]

## ARGUMENT AND AUTHORITIES

**I. Southwest's "Recent Court Decision" notice violated the Court's injunction requiring the company to notify flight attendants that the company *may not* discriminate against them.**

Contrary to Southwest's assertions,[6] Carter presented clear and convincing evidence that the Court required Southwest in clear and specific terms to inform flight attendants that under Title VII Southwest "***may not*** discriminate against Southwest flight attendants."[7] Southwest told flight attendants that "[t]he court also ordered us to inform you that Southwest ***does not*** discriminate against our Employees for their religious practices and beliefs"[8] Carter thus met her burden.[9]

Southwest asserts that Carter did not meet her burden for two reasons, both of which are baseless. First, Southwest argues that "does not discriminate" means the same thing as "may not

---

[4] Doc. No. 383-3, Ex. 3 (App.7).
[5] Southwest also asserts that Carter does not complain in her motion regarding the company's reinstatement of Carter and the Court's notice posting requirement. Doc. No. 394, p.8. *See also* Doc. No. 375, pp.2-3 ¶9-10. While Carter has not yet raised the issues with the Court as she determines whether Southwest will comply, Southwest has not yet fully complied. *See* Doc. No. 381-1 p.5 (App.4); Doc. No. 381-6 pp.2-3 (App.11-12).
[6] Doc. No. 394, pp.7, 11.
[7] Doc. No. 375, p.3 ¶10.
[8] Doc. No. 383-2, p.2 (App.6) (emphasis added).
[9] Doc. No. 382, pp.6-9; *see also e.g., Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 938 (N.D. Tex. 1999).

2

discriminate."[10] Southwest is incorrect. "May not discriminate" is a statement about what the law permits, and means that Southwest *is not allowed to discriminate*.[11] "Does not" discriminate purports the lawfulness of Southwest's actual conduct, and, coupled with a false implication that the Court has authorized the message, conveys that Southwest is not doing anything to cause discrimination.[12] Notwithstanding Southwest's tortured linguistics, the phrases do not remotely mean the same thing. Furthermore, Southwest's proclamation to flight attendants that the Court ordered the company to tell them that it "does not" discriminate does not convey that Southwest will not discriminate (or is prohibited from discriminating) in the future. "Does not discriminate" is present tense whereas "will not discriminate" is future tense.[13]

Second, Southwest argues that the Court "did not mandate a particular script,"[14] (i.e., the Court did not give specific orders). But the Court *did* give Southwest clear and specific orders "to inform Southwest flight attendants that, under Title VII, the Defendants may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion."[15] Southwest plainly could not do the opposite. Southwest's reliance on *Magliulo* is unavailing because the decree to implement "reasonable safety measures" could encompass various different measures.[16] Here, by

---

[10] Doc. No. 394, pp.9-10.
[11] *See* Merriam Webster Dictionary online, definition of "may," 1b ("have permission to" or "be free to"), https://www.merriam-webster.com/dictionary/may, last visited Jan. 11, 2023.
[12] *See* Merriam Webster Dictionary online, definition of "do," 1 ("to bring to pass" or "carry out") and 4a ("to bring about" or "effect"), https://www.merriam-webster.com/dictionary/do, last visited Jan. 11, 2023.
[13] *See* Merriam Webster Dictionary online, definition of "does," https://www.merriam-webster.com/dictionary/does, last visited Jan. 11, 2023; *see also* Doc. No. 394, p.10.
[14] Doc. No. 394, p.10.
[15] Doc. No. 375, p.3, ¶10.
[16] Doc. No. 394, p.10 (citing *Magliulo v. Edward Via Coll. of Osteopathic Med.*, 582 F. Supp. 3d 373, 377 (W.D. La. 2022).

contrast, the Court was clear in what conduct was mandated and prohibited.[17] Southwest's reliance on *Rousseau* is unavailing because omitting a definite timeframe for action is not an issue here.[18]

Given Southwest's violation of the Court's order, the burden falls on Southwest to show inability to comply, good faith, or substantial compliance.[19] With Southwest's decision to do the exact opposite of what the Court ordered and its misleading statements, the company cannot meet its burden to show that it acted in good faith or substantially complied with the Court's order to inform flight attendants that it "may not discriminate."[20] "A party is under an obligation to comply with a court order in all 'meaningful respects' to achieve substantial and diligent compliance."[21]

Despite Southwest's disregard for this Court's orders (again), the company asks the Court to excuse its violations because the "Recent Court Decision" notice contains an initial statement saying the Court entered judgment "in connection with a lawsuit *alleging*, among other things, religious discrimination and interference [with RLA] rights."[22] But that does not inform flight attendants that Southwest may not discriminate against their religious practices and beliefs. Southwest also contends that doing the exact opposite of what the Court ordered is no big deal because it emailed the Court's judgment and jury verdict to its misstatements in the "Recent Court Decision" notice.[23] But emailing the judgment and verdict was merely *one* of the Court's

---

[17] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 793 (5th Cir. 2013).
[18] *See* Doc. No. 394, p.10 (citing *Rousseau v. 3 Eagles Aviation, Inc.*, No. CIV.A 02-0208, 2006 WL 219992, at *1 (E.D. La. Jan. 26, 2006)).
[19] Carter showed Southwest had the ability to comply, but chose not to. Doc. No. 382, pp.12-13.
[20] Doc. No. 394, p.7. Despite *Perez* (which did not cite a Fifth Circuit Court of Appeals case), the Fifth Circuit has repeatedly held that "contemptuous actions need not be willful so long as the contemnor actually failed to comply with the Court's order." *Am. Airlines*, 228 F.3d at 581 (citation omitted); *see also* Doc. No. 394, p.7 (citing *Perez v. Thompson*, Civil Action No. 5:12-CV-0052(DCB)(MTP), 2015 WL 541730, at *2 (S.D. Miss. Feb. 10, 2015)).
[21] *Bisous Bisous, LLC v. The CLE Group, LLC*, Civil Action No. 3:21-CV-1614-B, 2021 WL 4219707, *2 (N.D. Tex. Sept. 16, 2021) (citations omitted).
[22] Doc. No. 383-2 (App.6) (emphasis added); Doc. No. 394, p.9.
[23] Doc. No. 394, pp.9, 11.

requirements.[24] The Court separately ordered Southwest to issue notice informing flight attendants that the company "may not discriminate."[25] But the company did not comply.[26]

Contrary to Southwest's characterizations, doing the opposite of what the Court ordered is bad faith, not substantial compliance.[27] Southwest's misleading statements and gamesmanship show willful derogation and "outright defiance" of this Court's order.[28] Notwithstanding the Court's clear and specific order, Southwest twisted the Court's instructions to suggest to its 17,000 flight attendants that the Court ordered the company to tell them that it "***does not*** discriminate." Southwest's maneuver subverts the Court's instructions, is patently false and misleading, misrepresents the Court's judgment and jury verdict, and undermines the purpose of the relief.

## II. Southwest's IIOTG Memo discriminated against flight attendants for their religious beliefs, discriminated against Carter for exercising her RLA-protected rights, repudiated the court-ordered notifications, and is not protected by the First Amendment.

Contrary to Southwest's characterizations,[29] Carter met her burden to demonstrate by clear and convincing evidence that Southwest's IIOTG Memo violated the Court's injunction prohibiting Southwest from discriminating against flight attendants' Title VII-protected rights and Carter's RLA-protected rights. The Court's definite and specific order enjoined Southwest from "discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion."[30]

---

[24] *See* Doc. No. 375, p.2 ¶9; *see also* Doc. No. 394, p.9.
[25] Doc. No. 375, p.3 ¶10.
[26] Doc. No. 383-2 (App.6). Contrary to Southwest's assertions, it never "advise[d] … Flight Attendants of Southwest's commitment to refrain from discrimination based on the religious beliefs of employees." Doc. No. 394, p.8, ¶3; Doc. No. 383-2, p.2 (App.6).
[27] *Bisous Bisous, LLC*, 2021 WL 4219707, at *4.
[28] Doc. No. 382, pp.8-9 (citing *Am. Airlines, Inc.*, 53 F. Supp. 2d at 929); Doc. No. 394, pp.11, 17.
[29] Doc. No. 394, p.14.
[30] Doc. No. 375, p.2 ¶5-6; Doc. No. 382, p.10. While Southwest asserts that the IIOTG Memo did not "lack language required by the judgment," the memo violated the Court's order not because of what it omitted but because of what it included—discriminatory disapproval of Carter's and other

5

The Court also enjoined Southwest from discriminating against Carter's RLA-protected rights.[31]

While Southwest asserts that the Court's orders did not prohibit it from speaking about this case,[32] that misstates why Carter seeks sanctions. Carter does not seek sanctions against the company for stating its disappointment with the decision or its plans to appeal. Carter seeks sanctions because Southwest's IIOTG Memo discriminated against Carter and other flight attendants in violation of the Court's orders, undermined the orders' force and effect, and announced Southwest's intention to continue disciplining employees for protected conduct that does not meet Southwest's notion of "civility."[33]

Courts may enjoin and proscribe messages "associated with particular 'secondary effects' of the speech," such that the injunction is "*justified* without reference to the content of the … speech."[34] As the Supreme Court has recognized, communications can "violate laws directed not against speech but against conduct"[35] Thus, communications "may produce a violation of Title VII's general prohibition against [] discrimination in employment practices."[36] Sanctioning Southwest for the IIOTG Memo's discriminatory effects does not impermissibly restrict or interfere with Southwest's First Amendment speech rights because the sanctions for violating the

---

flight attendants' exercise of religious beliefs and practices expressed on social media, including about abortion. *See* Doc. No. 383-3 (App.7); Doc. No. 382, pp.9-12; Doc. No. 394, p.17.

[31] Doc. No. 375, p.2 ¶7.

[32] Doc. No. 394, pp.11, 12.

[33] Doc. No. 382, pp.9-12; Doc. No. 383-3, p.2 (App.7); *see also* Doc. No. 394, pp.11, 14, 16.

[34] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)) (emphasis in *Renton*) (other citations omitted); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). While Southwest attempts to distinguish *Test Masters*, it makes no meaningful distinctions applicable to this case. Doc. No. 394, p.17.

[35] *R.A.V.*, 505 U.S. at 389 (citations omitted).

[36] *Id*. (citing 42 U.S.C. § 2000e-2) (other citations omitted).

Court's injunctions are aimed at the memo's discrimination and restraints on flight attendants' Title VII-protected rights and Carter's RLA-protected rights.[37]

The Court's injunction does not target speech *qua* speech and does not prohibit Southwest from sharing its views about the case. Instead, the Court's injunction prohibits Southwest's discriminatory restraints on religious beliefs and practices. Notwithstanding the Court's injunction, Southwest is free to advocate for pro-abortion speech and causes or for pro-union speech or any other causes it so desires. But what Southwest may not do is convey to flight attendants that it will discriminate against their religious beliefs and practices in violation of the Court's injunction. Carter requests that the Court remedy the IIOTG Memo's discriminatory restraint on flight attendants' exercise of religious freedoms with sanctions against Southwest, and stop Southwest from repeatedly violating the Court's orders. Carter's request for sanctions for the IIOTG Memo's discriminatory effects is neither unlawful content-based nor viewpoint discrimination.[38]

Carter demonstrated that Southwest's IIOTG Memo violated the Court's orders by discriminating against Carter's RLA-protected rights and against flight attendants who exercise Title VII religious freedoms in the same way as Carter did, "including—but not limited to—those expressed on social media and those concerning abortion."[39] Southwest's IIOTG Memo singled out Carter's Title VII and RLA-protected activities and asserted that those activities "created unnecessary tension among a workgroup," and "crossed the boundaries of acceptable behavior."[40] Southwest categorized those activities as "inappropriate, harassing, offensive, repulsive, and beyond the bounds of civility" and told flight attendants that those activities violated its social

---

[37] *See* Doc. No. 375, p.2 ¶5-7; Doc. No. 382, pp.9-12.
[38] *See R.A.V.*, 505 U.S. at 389; Doc. No. 394, p.15.
[39] Doc. No. 382, pp.9-11; Doc. No. 375, p.2 ¶5; *see also* Doc. No. 394, p.12.
[40] Doc. No. 383-3, p.2 (Ex. 3) (App.7); Doc. No. 394, p.12.

7

media policies.[41] Southwest further instructed flight attendants that they "must all adhere to [the company's "policies and guidelines"] … to create and protect a healthy work environment," and "consistently display[] civility, care, and unity at all times."[42] Southwest's continued application of its civility requirement to protected conduct is at issue.

Southwest asserts that its memo does not mention religion or abortion,[43] Carter's objections about union expenditures, the Women's March, Carter's opposition to the union's participation in it, or the substance of the messages she sent.[44] But, as Southwest knows, its flight attendants are very familiar with this case.[45] Furthermore, Southwest disseminated the IIOTG Memo to flight attendants contemporaneously with the Court's Judgment and jury verdict—flight attendants were well aware that Southwest was disparaging Title VII and RLA-protected activities.

Southwest also argues that the IIOTG Memo does not state that Southwest will continue to enforce the social media policies,[46] and that the company stated its intention to refresh its social media policies.[47] But Southwest does not say how or when it will update its policies. As stated, the company warns flight attendants that they "must all adhere to [the company's "policies and guidelines"] as [it] work[s] to create and protect a healthy work environment," and specifically addresses what Southwest and its arbitrator determined to violate its policies.[48] Southwest leaves flight attendants in a state of uncertainty with potential undefined updates to its social media

---

[41] Contrary to Southwest's assertions that it does not say anything derogatory about Carter's religious beliefs and practices, the company's IIOTG Memo reminds flight attendants that Carter's conduct was "inappropriate, harassing, offensive, repulsive and beyond the bounds of civility," and not "courteous or civil." Doc. No. 383-3, p.2 (App.7); Doc. No. 394, p.13.
[42] Doc. No. 383-3, p.2 (App.7).
[43] Doc. No. 394, p.12.
[44] *Id*. at p.13.
[45] Doc. No. 355, p.9.
[46] Doc. No. 394, p.13.
[47] *Id*.
[48] Doc. No. 383-3, p. 2 (Ex. 3) (App.7).

8

policies, and how Southwest will enforce its policies during an appeal.

Contrary to Southwest's characterizations,[49] Southwest did not comply in good faith or substantially comply with the Court's Judgment because it singled out for different treatment the very religious beliefs, practices, and expression concerning abortion that the Court prohibited it from discriminating against. Southwest characterized Carter's Title VII and RLA-protected activities as "inappropriate, harassing, offensive, repulsive and beyond the bounds of civility."[50] That is neither substantial nor good faith compliance. Nor is the IIOTG Memo's preemptive repudiation of the Court's orders substantial or good faith compliance.[51]

### III. The Court should order revised notices, order the company and responsible counsel and officials to pay sanctions, and order any other relief the Court deems warranted.

Contrary to Southwest's assertions,[52] ordering Southwest to issue corrective notices would not violate the company's First Amendment rights. A court can exercise its equitable powers to remedy the discriminatory and other unlawful effects of communications that violate its orders and decrees without interfering with speech itself.[53] The Court could order Southwest to issue notices in the first place, and it can certainly order Southwest to correct its violations now. Courts have long recognized the validity of requirements for employers to issue notices informing employees about their rights after committing unfair labor practices.[54] Corrective notices also serve to deter future

---

[49] Doc. No. 394, p.17.
[50] Doc. No. 383-3, p. 2 (Ex. 3) (App.7).
[51] Doc. No. 382, pp.11-12.
[52] Doc. No. 394, pp.18-19.
[53] *See Test Masters Educ. Servs., Inc.*, 428 F.3d at 580 (citing *Giboney*, 336 U.S. at 502); *see also R.A.V.*, 505 U.S. at 389; *E.E.O.C. v. Boh Bros. Const., LLC*, No. Civ. A. 09-6460, 2011 WL 3585599, at *1-2 (E.D. La. Aug. 16, 2011); *NLRB v. Falk Corp.*, 308 U.S. 453, 462-63 (1940).
[54] Courts have broad and flexible equitable powers to frame a remedy that will fully correct past wrongs. *See Smith v. Town of Clarkton*, 682 F.2d 1055, 1068-69 (4th Cir. 1982). *See also* 42 U.S.C. § 2000e-5(g)(1); *In Re J&R Flooring, Inc.*, 356 N.L.R.B. 11, 12 (2010) (describing the federal government's nearly 90-year history of at the National Labor Relations Board of issuing remedial notices to redress violations with the Supreme Court's approval); *id.* at 12 ("In order to achieve

violations.[55] While Southwest argues that the Court cannot order the company to make statements,[56] the Court can order Southwest to issue notices because the company has already been found to have engaged in unlawful conduct that violated employees' Title VII religious freedoms. Alternatively, the Court could issue its own remedial statements and order Southwest to distribute those statements in the same manner as it issued the "Recent Court Decision" notice and IIOTG Memo, just as courts regularly order companies to distribute class notices. The Court should also conduct a show cause evidentiary hearing to determine whether and to what extent the Court should impose monetary or other sanctions against Southwest officials and counsel who intentionally caused the company's violations of the Court's orders.[57]

## CONCLUSION

For the foregoing reasons, the Court should hold Southwest in contempt based upon its "Recent Court Decision" notice and IIOTG Memo, and immediately require the company to issue corrective notices as requested herein and in her motion. The Court should also hold a show cause evidentiary hearing for why Southwest and its responsible counsel and officials should not be subject to monetary and other sanctions. The Court should order all relief Carter requested in her motion and to which the Court deems Carter is entitled.

Dated: January 11, 2023                    Respectfully submitted,

                                           /s/ Matthew B. Gilliam
                                           Mathew B. Gilliam (*admitted pro hac vice*)
                                           New York Bar No. 5005996

---

these remedial goals, notices must be adequately communicated to the employees or members affected by the unfair labor practices found.").

[55] *See Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 152 (2002).

[56] Doc. No. 394, p.19. Contrary to Southwest's characterizations, *HTH* upheld the requirement for an employer who engaged in unfair labor practice to either read a notice or have a National Labor Relations Board agent do it. Doc. No. 394, p.19 (citing *HTH Corp. v. NLRB*, 823 F.3d 668, 677 (D.C. Cir. 2016)).

[57] *See* Doc. No. 382, pp.16-18; Doc. No. 394, p.20.

        *mbg@nrtw.org*
        c/o National Right to Work Legal Defense
        Foundation, Inc.
        8001 Braddock Road, Suite 600
        Springfield, Virginia 22160
        Tel: 703-321-8510
        Fax: 703-321-9319

        Bobby G. Pryor
        State Bar No. 16373720
        bpryor@pryorandbruce.com
        Matthew D. Hill, Of Counsel
        State Bar No. 24032296
        mhill@pryorandbruce.com
        PRYOR & BRUCE
        302 N. San Jacinto
        Rockwall, TX 75087
        Telephone: (972) 771-3933
        Facsimile: (972) 771-8343

        *Attorneys for Plaintiff Charlene Carter*

**Certificate of Service**

I hereby certify that on January 11, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam