# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO SOUTHWEST AIRLINES CO.'S RESPONSE TO HER MOTION FOR ATTORNEYS' FEES AND EXPENSES AND HER RESPONSE TO SOUTHWEST'S MOTION TO RECONSIDER COSTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ATTORNEYS' FEES AND EXPENSES ............................................................................................ 1

    I.    Carter's claims are intertwined and based on a common core of facts ..................... 1

    II.    Carter's counsel do not claim duplicative time for trial work ................................ 4

    III.    The Court can conduct a meaningful review of time claimed for block-billed entries ........................................................................................................................ 5

    IV.    Carter may recover attorneys' fees for discovery and dispositive motions ............. 6

    V.    The Court should not apportion attorneys' fees between Southwest and Local 556 .................................................................................................................. 7

    VI.    Carter's videotaped deposition and synchronization costs were reasonably necessary for trial when incurred ............................................................................ 9

    VII.    The Court should enhance the lodestar because this is an exceptional case .......... 10

RESPONSE TO SOUTHWEST'S MOTION TO RECONSIDER COSTS ................................ 10

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

Case                                                                                                         Page(s)

*Agredano v. State Farms Lloyds*,
    Case No. 5:15-cv-1067-RCL, 2021 WL 4228340 (W.D. Tex. Sept. 16, 2021) ..................7

*Allstate Ins. Co. v. Plambeck*,
    66 F. Supp. 3d 782 (N.D. Tex. 2014) ......................................................................9

*Baisden v. I'm Ready Prods., Inc.*,
    793 F. Supp. 2d (S.D. Tex. 2011) ..........................................................................9

*Barrow v. Greenville Indep. Sch. Dist.*,
    No. 3:00-CV-0913-D, 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005) ........................... 6

*Calsep A/S v. Intelligent Petroleum Software Sols.*,
    No. 4:19-CV-1118, 2022 WL 508334, at *4 (S.D. Tex. Feb. 18, 2022) ........................ 4

*DP Solutions, Inc. v. Rollins, Inc.*,
    353 F.3d 421 (5th Cir. 2003) ................................................................................6

*Fogleman v. ARAMCO*,
    920 F.2d 278 (5th Cir. 1991) ................................................................................9

*Fralick v. Plumbers & Pipefitters Nat. Pension Fund*,
    No. 3:09-CV-0752-D, 2011 WL 487754 (N.D. Tex. Feb. 11, 2011) ............................. 6

*Hollowell v. Orleans Reg'l Hosp., LLC*,
    217 F.3d 379 (5th Cir. 2000) ................................................................................5

*Int'l Union of Operating Eng'rs Local 406 v. NLRB*,
    701 F.2d 504 (5th Cir. 1983) ................................................................................1

*James v. City of Dallas*,
    No. Civ. A. 3:98-CV-0436R, 2005 WL 954999 (N.D. Tex. Apr. 25, 2005) ......................4

*Leal v. Magic Touch Up, Inc.*,
    Civil Action No. 3:16-CV-00662-O, 2019 WL 162885 (N.D. Tex. 2019) ........................9

## TABLE OF AUTHORITIES

Case     Page(s)

*McCall v. Sw. Airlines Co.*,

    661 F. Supp. 2d 647 (N.D. Tex. 2009) ...............................................................................1

*Miller v. Raytheon*,

    Civil Action No. 3:09-CV-440-O, 2011 WL 13234115 (N.D. Tex. Sept. 15, 2011) ..........6

*Nash v. Chandler*,

    848 F.2d 567 (5th Cir. 1988) ..............................................................................................7

*Paris v. Dallas Airmotive, Inc.*,

    No. CIV.A. 3:97-CV-0208, 2004 WL 2100227 (N.D. Tex. Sept. 21, 2004).................... 6

*Tedford v. Peabody Coal Co.*,

    533 F.2d 952 (5th Cir. 1976) ..............................................................................................1

*Turner v. Oxford Mgmt. Servs., Inc.*,

    552 F. Supp. 2d (S.D. Tex. 2008) ......................................................................................4

*Vaca v. Sipes*,

    386 U.S. 171 (1967)............................................................................................................1

*Waggoner v. Trans Union, LLC*,

    No. Civ. A-302-CV-1494G, 2003 WL 22838718 (N.D. Tex. Nov. 24, 2003)....................9

*Walker v. U.S. Dep't of Housing and Urban Dev.*,

    99 F.3d 761 (5th Cir. 1996) ................................................................................................7

*Watkins v. Fordice*,

    7 F.3d 453 (5th Cir. 1993) ................................................................................................10

**Rules, Statutes, Other**

Fed. Rule of Civ. Proc. Rule 54(d)(2)..............................................................................................1

Local Civil Rule 54.1.......................................................................................................................1

28 U.S.C. § 1920.............................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

Civil Rights Act of 1964, Title VII

    42 U.S.C. § 2000e *et seq.* ......................................................................................... *passim*

    42 U.S.C. § 2000e(g) ......................................................................................................1

    42 U.S.C. § 2000e-2(a)(1) ..............................................................................................1

Railway Labor Act,

    45 U.S.C. § 151 *et seq.* ......................................................................................1, 2, 3, 8

Pursuant to Federal Rule of Civil Procedure, Rule 54(d)(2), and Local Civil Rule 54.1, Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this reply to Southwest Airlines Co.'s ("Southwest") response to her motion for attorneys' fees and expenses. Notwithstanding Southwest's objections, the Court should award Carter $2,262,437.89 in reasonable attorneys' fees and expenses,[1] a 25% lodestar enhancement, and costs of $21,670.10.

## ATTORNEYS' FEES AND EXPENSES

### I. Carter's claims are intertwined and based on a common core of facts.

The Court should award Carter the requested attorneys' fees and expenses against Southwest and Local 556 because her claims are intertwined and based on a common core of facts: Southwest and Local 556 together caused Carter's termination because she opposed the union's participation in the Planned Parenthood-sponsored Women's March and its support for abortion based on her pro-life religious beliefs.[2] Carter's Title VII, RLA, and DFR claims share the same essential legal standards and evidentiary proof:[3]

| Title VII[4] | RLA[5] | DFR[6] |
|---|---|---|
| 1) Carter's Title VII-protected activity (Facebook communications) | 1) Carter's RLA-protected activity (Facebook communications) | 1) Arbitrary (treating Carter differently based on personal animosity towards Carter's |

---

[1] This amount includes $2,212,914.00 in attorneys' fees and $49,523.89 in expenses.
[2] Doc. No. 377, pp.17-18; Doc. No. 374, pp.3-4; Doc. No. 396, p.14.
[3] Doc. No. 396, pp.12-13.
[4] Doc. No. 343, pp.14-19; 42 U.S.C. § 2000e-2(a)(1); § 2000e(g).
[5] Doc. No. 343, pp.11-13. Southwest mischaracterizes the elements of Carter's RLA claim. Doc. No. 343, pp.11-13; Doc. No. 396, p.12; Doc. No. 223, pp.19-20; Doc. No. 208, pp.20-21.
[6] Doc. No. 343, pp.9-11. "[T]o be non-arbitrary, a decision must [not] be … based upon motivations such as personal animosity or political favoritism." *McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009) (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)). *See also Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967) (defining discriminatory as "invidious" treatment). Unions engage in bad faith conduct when they act with hostility or discrimination towards an employee. *See McCall*, 661 F. Supp. 2d at 654.

|  |  | Title VII and RLA- protected activity) |
|---|---|---|
| 2) Carter was discharged, discriminated against, or the union attempted to cause her discharge | 2) Carter suffered discharge/adverse employment action | 2) Discriminatory (invidiously attempting to cause Carter to be disciplined based on her religion and RLA-protected activity) |
| 3) Carter's protected activity was a motivating factor for the adverse action | 3) Carter's protected activity was a substantial or motivating factor for the adverse action | 3) Bad faith (attempting to cause Carter to be disciplined based on hostility and discrimination towards Carter and her Title VII and RLA- protected activity) |

Carter's Title VII and RLA-protected activity was inextricably intertwined in her Facebook communications to President Stone opposing the union's support for abortion at the Women's March.[7] To show causation for her Title VII, RLA, and DFR claims, Carter had to show that the protected activity in her Facebook communications was a motivating factor for Southwest's and Local 556's actions causing her discharge. Carter's DFR claim involved the presumption that the union breaches its duty when it causes a discharge.[8] Carter's DFR claims also involved the same causation showing as her Title VII and RLA claims because they required her to show that Local 556's actions—causing her termination—were arbitrary (motivated by personal or political animosity to her protected activity), discriminatory (motivated by invidious discrimination based on her protected activity), and bad faith (based on hostility and discrimination towards Carter's protected activities).[9] Carter's claims also required her to show that Stone was acting in her official

---

[7] Tr. Ex. 65; Doc. No. 221 pp.19-21 ¶¶35-38. Carter's Facebook posts also involved Title VII-protected activities, which are clearly within the scope of her attorneys' fees requests. Tr. Ex. 64.
[8] Doc. No. 343, p.10.
[9] *See* p. 1, n.6, *supra.*

2

capacity.[10] Thus, the Court should deny Southwest's requested 25% reduction of fees.[11]

While Southwest also asserts that Carter adduced evidence at trial "that had nothing to do with her Title VII claim," Southwest does not identify that evidence or quantify RLA time that should be reduced.[12] Carter showed that her claims are inextricably interwoven. Even supposing Carter spent an hour presenting such evidence, that would only translate into $1,000-$2,000. When claims are inextricably interwoven courts do not separate the granules into buckets.[13]

While Southwest asserts that the Court should apply an additional 25% deduction for all fees billed through February 1, 2019 for Count I and II claims dismissed by the Court, Carter already made a voluntary 70% reduction for time spent responding to the first motions to dismiss.[14] Carter's Count I and II claims involved Carter's protected activities and Southwest's social media policies, issues that were also relevant to her Title VII protected activities. Furthermore, Southwest's proposed reduction for *all* time through February 1, 2019 is overbroad because it encompasses related hours to which Southwest did not object, such as time spent on EEOC proceedings, Defendants' second motions to dismiss, conferring on proposed case scheduling orders, and other matters related to Carter's Title VII claims and her case as a whole.[15] Southwest also appears to double count its proposed 25% reduction by applying a third 25% cut after aggregating the cuts for dismissed claims and "overlapping" claims to 50%.[16] The Court should not apply any of these three separate proposed 25% cuts.

---

[10] Doc. No. 343, pp.9-15, 18, 28.
[11] Doc. No. 396, p.13.
[12] *Id.*
[13] *Id.*
[14] Carter only claimed time related to issues that persisted through trial with respect to all claims. Doc. No. 377, p.26; Doc. No. 396, p.14.
[15] Doc. No. 378-1 (App.9-18, 58-60, 66-79).
[16] Doc. No. 396, p.14.

**II. Carter's counsel do not claim duplicative time for trial work.**

The Court should reject Southwest's duplicative billing objections because Carter's counsel billed time for work necessary to make an effective presentation of the case.[17] Attorneys' time is not duplicative if tasks involve work and matters in which "both attorneys' input [i]s important and … billing for both counsel [i]s appropriate for efficient and effective prosecution of th[e] litigation."[18] Contrary to Southwest's objections, billing for Gilliam's, Pryor's, and Hill's time at trial is not duplicative because they were each necessary for an effective presentation at trial given the case's nature and complexity.[19] Southwest objects to the reasonableness of all three attorneys billing for trial, but it brought at least five attorneys and support staff for trial and jury selection.[20]

While Southwest also objects to Gilliam, Pryor, and Hill working on nearly all pre-trial tasks, the fact that more than one attorney might have helped with a different aspect of the task does not make it duplicative, particularly when each attorneys' input is important to effective litigation.[21] Southwest does not sufficiently explain why or how the attorneys' time spent on their respective trial-related tasks was unreasonably duplicative.[22] "[T]he objecting party must explain how an entry is excessive or duplicative with 'detailed information explaining why or how the total number of hours or the rates are unreasonable.'"[23] Gilliam, Pryor, and Hill performed distinct tasks

---

[17] Doc. No. 396, p.14.

[18] *See Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 652-53 (S.D. Tex. 2008).

[19] Doc. No. 377, pp.15-16; Doc. No. 396, p.15.

[20] Doc. No. 396, p.15. Notably, Southwest and Local 556 even had a dedicated video presenter, while Carter accomplished this with an attorney already at trial.

[21] *See Turner*, 552 F. Supp. 2d at 652-53.

[22] Doc. No. 396, p.15, Doc. No. 397-3 (App.43-61).

[23] Doc. No. 373, p.4, 4 n.19 (quoting *James v. City of Dallas*, No. Civ. A. 3:98-CV- 0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (Buchmeyer, J.)). Southwest cites *Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-CV-1118, 2022 WL 508334, at *4 (S.D. Tex. Feb. 18, 2022), for the proposition that time should be reduced when three senior attorneys work on a matter, but the court's analysis there focused primarily on the excessive time spent by the attorneys that the court believed was unjustified, a factor Southwest has not shown.

4

with respect to drafting motions in limine, exhibit lists, and jury selection.[24]

Despite Southwest's objections to time spent getting Pryor and Hill up to speed on the case for trial,[25] Southwest should have to bear those costs because Carter actually expended fewer fees by waiting until just before trial to engage experienced trial counsel, avoiding the need for Pryor and Hill to expend time throughout the five years of litigation. Pryor and Hill's time entries reflect that the work they did was primarily on trial preparation tasks, the completion of which brought them up to speed. Accordingly, the Court should deny Southwest's request for a 40% reduction of total fees expended for trial preparation.[26]

### III. The Court can conduct a meaningful review of time claimed for block-billed entries.

Contrary to Southwest's assertions,[27] block billing does not prevent the Court from conducting a meaningful review because Carter's entries identify the time related to the case. Reductions are unwarranted if billing records allow the Court to conduct a meaningful review of the reasonableness of the hours claimed in relation to the work performed.[28] Carter shows that counsel is claiming time for tasks performed related to this case, so the Court need not segregate tasks to assess time spent on unrelated activities. Despite Southwest's objections, the company fails to identify any tasks in these combined entries that are unrelated to the case or that are otherwise unrecoverable.[29] Southwest only identifies six specific entries to which it objects, but Southwest

---

[24] *Compare* Doc. No. 378-1 (App.46-53) (Gilliam trial-related hours) with Doc. No. 378-3 (App.235-254) (Pryor and Hill trial-related hours).
[25] Doc. No. 396, pp.15-16.
[26] Doc. No. 396, p.16.
[27] Doc. No. 396, pp.16, 18-20.
[28] *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (affirming an attorneys' fees award even though the billing records "lumped together" the time entries).
[29] Doc. No. 396, pp.18-19. For example, Southwest objects to Carter's 17.3 hour entry (App.10) involving complaint preparation and case filing, arguing that it is unclear how much time counsel spent planning as opposed to time spent finalizing and filing the complaint. Doc. No. 396, p.19. But that distinction is meaningless because Carter can recover for the time spent on all of those

does not explain why it objects apart from block billing.[30] None of these entries contain unrelated tasks. While some entries combine discovery and motions against Local 556, the company and the union are jointly and severally liable for attorneys' fees.[31] Notably, the cases cited by Southwest to support its request to reduce fees for block billing offer no such support. One involved bills that lumped work into a single number of hours expended for all hours in a month.[32] Others involved entries where the entries were not sufficient for the court to adequately evaluate the reasonableness of the fees, which is not the case here.[33] The Court should deny Southwest's request that it further reduce Carter's lodestar another 30% for these time entries and should not reduce the fees at all.[34]

**IV. Carter may recover attorneys' fees for discovery and dispositive motions.**

Contrary to Southwest's objections, Carter is entitled to recover attorneys' fees on unsuccessful motions because she is nonetheless a prevailing party and Title VII allows the prevailing party to recover for attorneys' fees reasonably expended in litigating the case. The Court is not required to segregate and subtract the time spent on each issue or motion, even if unsuccessful.[35]

While Southwest cites *Agredano* for the proposition that courts may refuse to award attorneys' fees for unsuccessful motions, that case shows the court denying fees for "unnecessary"

---

activities as they are related to filing the complaint. Doc. No. 396, p.16. But Gilliam's trial-related entries are not block billed. *See* Doc. No. 378-1 (App.46-53).
[30] Doc. No. 396, pp.19-20.
[31] *See infra* at pp.7-9; Doc. No. 396, pp.19-20.
[32] *Paris v. Dallas Airmotive, Inc.*, No. CIV.A. 3:97-CV-0208-, 2004 WL 2100227, at *9 (N.D. Tex. Sept. 21, 2004);
[33] *Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *2 (N.D. Tex. Feb. 11, 2011); *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *6 (N.D. Tex. Dec. 20, 2005), aff'd, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).
[34] Doc. No. 396, p.20.
[35] *See Miller v. Raytheon*, Civil Action No. 3:09-CV-440-O, 2011 WL 13234115, at *4 (N.D. Tex. Sept. 15, 2011) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003)).

unsuccessful motions, including some that were voluntarily withdrawn.[36] Even if Carter did not succeed on her partial summary judgment motion, the briefing advanced the litigation, focused the issues in this case, and helped defeat Southwest's and Local 556's summary judgment motions.[37] Moreover, the arguments made were subsequently utilized in jury instructions, opposing Southwest and Local 556's motions for directed verdict, and in opposing Southwest's motion for new trial or judgment as a matter of law. While her motions to compel were unsuccessful, they were necessary at the time and she was entitled to make them to obtain discovery in her case.

**V. The Court should not apportion attorneys' fees between Southwest and Local 556.**

The Court should find Southwest and Local 556 jointly and severally liable for attorneys' fees consistent with the jury's verdict because the case involved a single, indivisible injury and both parties played an essential role in Carter's termination. To determine whether parties liable on the merits are jointly and severally liable for attorneys' fees, the Court considers whether there is a single, indivisible injury, whether each party played a substantial role in causing the plaintiff's injury, whether the legal defense was joint, and the equitability of the result.[38]

Three of the four factors show that the Court should not apportion attorneys' fees, and should instead find them jointly and severally liable for fees. The jury found Southwest and Local 556 jointly and severally liable on Carter's Title VII claims. Carter's Title VII claims against Southwest

---

[36] Doc. No. 396, pp.16-17, 17 n.5 (citing *Agredano v. State Farms Lloyds*, Case No. 5:15-cv-1067-RCL, 2021 WL 4228340, at *8 (W.D. Tex. Sept. 16, 2021).

[37] Doc. Nos. 169-171, 207-208; Doc. No. 396, pp.17-18. Southwest fails to note that Carter *successfully* opposed the defendants' motions for summary judgment, and that time should not be deducted. Doc. No. 378-1, pp.43-44 (App.42-43 (time entries from 9/7/21 through 10/4/21).

[38] *See Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 772-73 (5th Cir. 1996). While Southwest cites *Nash* for the notion that there are circumstances when defendants will not be found jointly and severally liable, those circumstances involved a decision where one of the parties was not liable on the merits. Doc. No. 396, p.21; *Nash v. Chandler*, 848 F.2d 567, 573-74 (5th Cir. 1988).

and Local 556 arise from the same course of conduct.[39] Southwest defended Carter's termination on the theory that it was protecting Local 556 President Audrey Stone, who it refused to characterize as anything other than an ordinary employee, an argument it lost.[40] President Stone pointed Southwest to the social media policies that she believed Carter violated.[41] Southwest then called on President Stone to assist the company in digging up all of Carter's old Facebook communications to prosecute the company's case against her.[42]

Contrary to Southwest's arguments,[43] it is not inequitable to make Southwest jointly and severally liable for attorneys' fees with Local 556 because Carter's Title VII, RLA, and DFR claims were inextricably interwoven, and her time spent on activities advanced multiple claims and arguments simultaneously.[44] Given that Carter's claims are inextricably interwoven, Carter's discovery, motions, and arguments directed at Local 556 were as necessary to prosecuting her claims against Southwest as they were to her case against the union. Notably, Southwest argued in opposition of Carter's DFR claim against the union early in the case.[45] Furthermore, Carter's discovery requests and motions addressed to both parties were relevant to making her claims against each of them. While Southwest argues that that the company and the union had separate legal representation, that does not tip the scales.[46] Southwest and Local 556 filed a joint supersedeas bond in which attorneys' fees are included, further showing that holding them jointly

---

[39] Doc. No. 396, p.21.
[40] *See e.g.*, Doc. No. 80-5; Doc. No. 29, pp.20-22, 24-26; Doc. No. 49, pp.26-27, 29-31; Doc. No. 57, p.2, 10; Doc. No. 167 pp.10-12, 18-24, 50-53; Doc. No. 192, pp.29-30, pp.40-42.
[41] Tr. Ex. 66, p.1
[42] Tr. Ex. 89 (SWA 4636, 4638); Tr. Ex. 97.
[43] Doc. No. 396, p.21.
[44] *See supra* at 1-3.
[45] Doc. No. 39, pp.20-22.
[46] Doc. No. 396, p.21. Notably, Southwest does not show whether the *legal defense* was joint. *Id.*

8

liable for attorneys' fees is equitable.[47]

## VI. Carter's videotaped deposition and synchronization costs were reasonably necessary for trial when incurred.

The Court should award costs for videotaped depositions and synchronization.[48] Costs for both printed transcripts and videotapes of depositions may be recovered under § 1920 when "the circumstances of the case have made it appear reasonably necessary, at the time of the deposition, to have a videotape of the deposition."[49] Southwest "cannot object to the court's taxing of these depositions as costs by positing that, in retrospect, the depositions were [ultimately] unneeded or less useful."[50] "[T]he determination of necessity is an *ex ante*—not an *ex post*—analysis."[51] Carter took the videotaped depositions of Emlet, Gutierrez, Jones, Sims, and Schneider in November 2020, when COVID prevented taking in-person depositions, and when videotaped depositions might be necessary for trial.[52] Notably, witnesses Emlet, Jones, and Schneider, lived outside of Texas.[53] Southwest represented that Lacore, Conlon, and Cleburne would be unavailable for trial.[54] Similarly, video synchronization costs were necessary to allow Carter's counsel to present video depositions of unavailable witnesses. Carter could not know which witnesses' videos would be needed until determining what evidence would be obtained from other witnesses at trial.

---

[47] Doc. Nos. 389, 389-1, 393.
[48] Doc. No. 396, pp.28-30.
[49] *Leal v. Magic Touch Up, Inc.*, Civil Action No. 3:16-CV-00662-O, 2019 WL 162885, *4 (N.D. Tex. 2019); *Waggoner v. Trans Union, LLC*, No. Civ. A. 302-CV-1494G, 2003 WL 22838718, *2 (N.D. Tex. Nov. 24, 2003) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).
[50] *Waggoner*, 2003 WL 22838718, *3. Doc. No. 396, pp.29-30.
[51] *Id.* at *2 (citation omitted).
[52] Doc. No. 397-8, p.1 (November 2020 entries). *See Baisden v. I'm Ready Prods., Inc.*, 793 F. Supp. 2d 970, 977 (S.D. Tex. 2011) (awarding costs for video depositions of witnesses whose live attendance at trial was uncertain); *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 789-90 (N.D. Tex. 2014) (awarding costs for video depositions of witnesses who, at the time of the depositions, were outside the court's subpoena power).
[53] Doc. Nos. 170-24 through 170-28, pp.2, 6.
[54] Doc. No. 272, Tr. 160:10-24, 161:5-14, 161:23-162:9; Doc. No. 267; Doc. Nos. 246, 268.

**VII. The Court should enhance the lodestar because this is an exceptional case.**

The Court should exercise its discretion to enhance the lodestar. While the *Johnson* factors are ordinarily included in the initial lodestar calculation, and courts only enhance the lodestar in rare cases,[55] Carter maintains that this is such a case for the reasons she previously set forth.[56]

### RESPONSE TO SOUTHWEST'S MOTION TO RECONSIDER COSTS

Contrary to Southwest's objections, Carter's costs for expediting deposition services during trial were necessary because of the unavailability of witnesses and limited time to schedule and take trial depositions. While Southwest objects to expedited fees for serving deposition subpoenas on Audrey Stone, those fees were necessary due to the narrow window for completing service on Stone given her flight schedule and the constraints that imposed on serving her.[57] Expedited fees for the pretrial conference transcript were also necessary to effectively address issues raised at the pretrial conference that needed to be addressed for trial.[58] Expedited service of trial subpoenas was necessary given witnesses' unavailability and the limited timeframe to serve these witnesses.[59]

### CONCLUSION

For the foregoing reasons and those stated in her motion, the Court should award Carter a total of $2,262,437.89, which includes $2,212,914.00 in reasonable attorneys' fees, $49,523.89 in expenses, plus the 25% lodestar enhancement, and $21,670.10 in costs, and order Southwest and Local 556 to pay those amounts as requested.

Dated: January 23, 2023                                      Respectfully submitted,


                                                            /s/ Matthew B. Gilliam

---

[55] Doc. No. 396, pp.21-28.
[56] Doc. No. 377, pp.29-32; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citation omitted).
[57] Doc. No. 379, pp.15, 16; Doc. No. 396, p.30.
[58] Doc. No. 379, p.19; Doc. No. 396, p.30.
[59] Doc. Nos. 272, 268; Doc. No. 379, pp.33, 38, 50, 52, 54, 61, 62; Doc. No. 396, p.30.

>Mathew B. Gilliam (*admitted pro hac vice*)
>New York Bar No. 5005996
>*mbg@nrtw.org*
>c/o National Right to Work Legal Defense
>Foundation, Inc.
>8001 Braddock Road, Suite 600
>Springfield, Virginia 22160
>Tel: 703-321-8510
>Fax: 703-321-9319
>
>Bobby G. Pryor
>State Bar No. 16373720
>bpryor@pryorandbruce.com
>Matthew D. Hill, Of Counsel
>State Bar No. 24032296
>mhill@pryorandbruce.com
>PRYOR & BRUCE
>302 N. San Jacinto
>Rockwall, TX 75087
>Telephone: (972) 771-3933
>Facsimile: (972) 771-8343
>
>
>*Attorneys for Plaintiff Charlene Carter*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

<u>By</u><u>: /s/ Matthew B. Gilliam</u>