UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>V.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO TRANSPORT WORKERS UNION OF AMERICA LOCAL 556'S RESPONSE TO HER MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to Federal Rule of Civil Procedure, Rule 54(d)(2), and Local Civil Rule 54.1, Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this reply to Transport Workers Union of America, Local 556's ("Local 556") response to her motion for attorneys' fees and expenses. Notwithstanding Local 556's objections, the Court should award Carter $2,262,437.89 in reasonable attorneys' fees and expenses,[1] a 25% lodestar enhancement, and costs of $21,670.10.

**ATTORNEYS' FEES AND EXPENSES**

**I. Carter's claims are intertwined and based on a common core of facts.**

The Court should award Carter the requested attorneys' fees and expenses against Southwest and Local 556 because her claims are intertwined and based on a common core of facts: Southwest

---

[1] This amount includes $2,212,914.00 in attorneys' fees and $49,523.89 in expenses.

1

and Local 556 together caused Carter's termination because she opposed the union's participation in the Planned Parenthood-sponsored Women's March and its support for abortion based on her pro-life religious beliefs.[2] Carter's Title VII, RLA, and DFR claims share the same essential legal standards and evidentiary proof:[3]

| **Title VII**[4] | **RLA**[5] | **DFR**[6] |
|---|---|---|
| 1) Carter's Title VII-protected activity (Facebook communications) | 1) Carter's RLA-protected activity (Facebook communications) | 1) Arbitrary (treating Carter differently based on personal animosity towards Carter's Title VII and RLA- protected activity) |
| 2) Carter was discharged, discriminated against, or the union attempted to cause her discharge | 2) Carter suffered discharge/adverse employment action | 2) Discriminatory (invidiously attempting to cause Carter to be disciplined based on her religion and RLA-protected activity) |
| 3) Carter's protected activity was a motivating factor for the adverse action[7] | 3) Carter's protected activity was a substantial or motivating factor for the adverse action | 3) Bad faith (attempting to cause Carter to be disciplined based on hostility and discrimination towards Carter |

---

[2] Doc. No. 377, pp.17-18; Doc. No. 374, pp.3-4; Doc. No. 398, p.3.
[3] Doc. No. 398, pp.3-4.
[4] Doc. No. 343, pp.14-19; 42 U.S.C. § 2000e-2(a)(1); § 2000e(g).
[5] Doc. No. 343, pp.11-13. Local 556 mischaracterizes the elements of Carter's RLA claim. Doc. No. 343, pp.11-13; Doc. No. 398, pp.3-4; Doc. No. 223, pp.19-20; Doc. No. 208, pp.20-21.
[6] Doc. No. 343, pp.9-11. "[T]o be non-arbitrary, a decision must [not] be … based upon motivations such as personal animosity or political favoritism." *McCall v. Sw. Airlines Co.*, 661 F. Supp. 2d 647, 654 (N.D. Tex. 2009) (quoting *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)). *See also Int'l Union of Operating Eng'rs Local 406 v. NLRB*, 701 F.2d 504, 508 (5th Cir. 1983) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177-78 (1967) (defining discriminatory as "invidious" treatment). Unions engage in bad faith conduct when they act without honest purpose and judgment, or when they act with hostility or discrimination towards an employee. *See McCall*, 661 F. Supp. 2d at 654. Union conduct that "evince[s] a purpose to intentionally harm" employees subject to the union's exclusive representation is per se bad faith conduct. *See id.* (citing *O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203, 1204 (5th Cir. 1991).
[7] While Local 556 adds the "treated differently from others" element, that is not required for a direct evidence case, but for an indirect evidence case based on circumstantial evidence. Doc. No. 398, p.4. Carter only had to show that for one of her Title VII discrimination claims against the union, and there is no dispute that those claims are compensable. Doc. No. 343, p.8, 16.

| | | and her Title VII and RLA-protected activity) |
|---|---|---|

Carter's Title VII and RLA-protected activity was inextricably intertwined in her Facebook communications to President Stone opposing the union's support for abortion at the Women's March.[8] To show causation for her Title VII, RLA, and DFR claims, Carter had to show that the protected activity in her Facebook communications was a motivating factor for Southwest's and Local 556's actions causing her discharge. Carter's DFR claim involved the presumption that the union breaches its duty when it causes a discharge.[9] Carter's DFR claims also involved the same causation showing as her Title VII and RLA claims because they required her to show that Local 556's actions—causing her termination—were arbitrary (motivated by personal or political animosity to her protected activity), discriminatory (motivated by invidious discrimination based on her protected activity), and bad faith (based on hostility and discrimination towards Carter's protected activities).[10] Carter's claims also required her to show that Stone was acting in her official capacity.[11] Thus, the Court should deny Local 556's requested 66% reduction of fees.[12]

While Local 556 also makes a conclusory objection to Carter seeking attorneys' fees and costs prior to filing suit, it cites no case law or authority regarding why Carter cannot recover for time spent preparing to bring litigation, and it makes no sense that time spent performing the work necessary to file a suit should not be included.[13] Local 556 makes another conclusory assertion

---

[8] Tr. Ex. 65; Doc. No. 221 pp.19-21 ¶¶35-38. Carter's Facebook posts also involved Title VII-protected activities, which are clearly within the scope of her attorneys' fees requests. Tr. Ex. 64.
[9] Doc. No. 343, p.10.
[10] *See* p.1, n.6, *supra.*
[11] Doc. No. 343, pp.9-15, 18, 28.
[12] Doc. No. 398, p.4.
[13] Doc. No. 398, p.5. While Local 556 further asserts that time prior to filing was excessive, duplicative, ambiguous, and block-billed, it fails to meet its burden to show why any particular

that Carter is improperly requesting fees from September 13, 2017, through April 24, 2019, in perfecting her complaint.[14] Local 556 fails to cite any authority to support its claim that prevailing parties cannot claim time reasonably expended on the case simply because they filed amended complaints. Contrary to Local 556's assertions, Carter demonstrated that she is claiming time spent on matters related to her Title VII claims and her case as a whole.[15] Carter already made a voluntary 70% reduction for time spent responding to the first motions to dismiss.[16] Carter showed that her Count I and II claims involved protected activities and Southwest's social media policies, issues that were also relevant to her Title VII protected activities. Local 556 also objects to Carter seeking fees for time spent on EEOC proceedings, but Carter has already demonstrated the time is compensable.[17]

**II. Carter's counsel do not claim duplicative time for trial work.**

The Court should reject Local 556's duplicative billing objections for trial work because Carter's counsel billed time for work necessary to make an effective presentation of the case.[18] Attorneys' time is not duplicative if tasks involve work and matters in which "both attorneys' input

---

entries are unreasonable. "[T]he objecting party must explain how an entry is excessive or duplicative with 'detailed information explaining why or how the total number of hours or the rates are unreasonable.'" Doc. No. 373, p.4, 4 n.19 (quoting *James v. City of Dallas*, No. Civ. A. 3:98-CV- 0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (Buchmeyer, J.)).

[14] Doc. No. 398, pp.6-7. Contrary to Local 556's characterizations, Carter did not "blatantly ignor[e] Court orders." *Id*. When the Court ordered Carter to remove Counts I and II from her Third Amended Complaint, she complied and filed her Fourth Amended Complaint. Doc. No. 80.
[15] Doc. No. 378-1 (App.9-18, 58-60, 66-79). Local 556 again makes conclusory assertions about duplicative and block-billed entries, but it fails to meet its burden to show why any particular entries are unreasonable. Doc. No. 373, p.4, 4 n.19 (quoting *James*, 2005 WL 954999, at *2).
[16] Carter only claimed time related to issues that persisted through trial with respect to all claims. Doc. No. 377, p.26.
[17] Doc. No. 377, p.16, 16 n.49 (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61-62 (1980)). Local 556 again makes conclusory assertions about duplicative and block-billed entries, but it fails to meet its burden to show why any particular entries are unreasonable. Doc. No. 373, p.4, 4 n.19 (quoting *James*, 2005 WL 954999, at *2).
[18] Doc. No. 398, pp.4-5, 8, 8 n.36.

[i]s important and … billing for both counsel [i]s appropriate for efficient and effective prosecution of th[e] litigation."[19] Contrary to Local 556's objections, billing for Gilliam's, Pryor's, and Hill's time at trial is not duplicative because they were each necessary for an effective presentation at trial given the case's nature and complexity.[20]

Local 556 does not sufficiently explain why or how the attorneys' time spent on their respective trial-related tasks was unreasonably duplicative.[21] "[T]he objecting party must explain how an entry is excessive or duplicative with 'detailed information explaining why or how the total number of hours or the rates are unreasonable.'"[22] Gilliam, Pryor, and Hill performed distinct tasks with respect to drafting motions in limine, exhibit lists, and jury selection.[23] Notably, Southwest brought at least five attorneys to trial, and Local 556 brought three, all working in concert against Carter, in addition to other support staff, while Carter handled the trial with just three attorneys and no staff.[24] Accordingly, the Court should deny Local 556's request for a deduction of time for trial-related tasks.[25]

### III. The Court can conduct a meaningful review of time claimed for block-billed entries.

Contrary to Local 556's assertions,[26] block billing does not prevent the Court from conducting a meaningful review because Carter's entries identify the time related to the case. Reductions are unwarranted if billing records allow the Court to conduct a meaningful review of the

---

[19] *See Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 652-53 (S.D. Tex. 2008).
[20] Doc. No. 377, pp.15-16; Doc. No. 398, pp.4-5, 8.
[21] Doc. No. 398, pp.4-5, 8.
[22] Doc. No. 373, p.4, 4 n.19 (quoting *James v. City of Dallas*, No. Civ. A. 3:98-CV- 0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (Buchmeyer, J.)).
[23] Compare Doc. No. 378-1 (App.46-53) (Gilliam trial-related hours) with Doc. No. 378-3 (App.235-254) (Pryor and Hill trial-related hours).
[24] Notably, Southwest and Local 556 even had a dedicated video presenter, while Carter accomplished this with an attorney already at trial.
[25] Doc. No. 398, pp.4-5, 8.
[26] *Id*.

reasonableness of the hours claimed in relation to the work performed.[27] Carter shows that counsel is claiming time for tasks performed related to this case, so the Court need not segregate tasks to assess time spent on unrelated activities. Despite Local 556's objections, the union fails to identify any tasks in these combined entries that are unrelated to the case or that are otherwise unrecoverable.[28] None of these entries contain unrelated tasks. And the billing entries are sufficiently detailed that the Court can effectively evaluate the reasonableness of the time spent, even without knowing how much was allocated to each task. The Court should deny Local 556's request for a 30% reduction and should not reduce the fees at all based upon block billing.[29]

### IV. Carter may recover attorneys' fees for discovery and dispositive motions.

Contrary to Local 556's objections, Carter is entitled to recover attorneys' fees on unsuccessful motions because she is nonetheless a prevailing party and Title VII allows the prevailing party to recover for attorneys' fees reasonably expended in litigating the case. The Court is not required to segregate and subtract the time spent on each issue or motion, even if unsuccessful.[30]

While Local 556 cites *Agredano* for the proposition that courts may refuse to award attorneys' fees for unsuccessful motions, that case shows the court denying fees for "unnecessary" unsuccessful motions, including some that were voluntarily withdrawn.[31] Even if Carter did not succeed on her partial summary judgment motion, the briefing advanced the litigation, focused the

---

[27] *Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (affirming an attorneys' fees award even though the billing records "lumped together" the time entries).
[28] Doc. No. 398, p.4. Gilliam's trial-related entries are not block billed. *See* Doc. No. 378-1 (App.46-53).
[29] Doc. No. 398, p.4.
[30] *See Miller v. Raytheon*, Civil Action No. 3:09-CV-440-O, 2011 WL 13234115, at *4 (N.D. Tex. Sept. 15, 2011) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003)).
[31] Doc. No. 398, p.6, 6 n.25 (citing *Agredano v. State Farms Lloyds*, Case No. 5:15-cv-1067-RCL, 2021 WL 4228340, at *8 (W.D. Tex. Sept. 16, 2021).

issues in this case, and helped defeat Southwest's and Local 556's summary judgment motions.[32] Moreover, the arguments made were subsequently utilized in jury instructions, opposing Southwest and Local 556's motions for directed verdict, and in opposing Southwest's motion for new trial or judgment as a matter of law. While her motions to compel were unsuccessful, they were necessary at the time and she was entitled to make them to obtain discovery in her case.

**V. The Court should enhance the lodestar because this is an exceptional case.**

The Court should exercise its discretion to enhance the lodestar. While the *Johnson* factors are ordinarily included in the initial lodestar calculation, and courts only enhance the lodestar in rare cases,[33] Carter maintains that this is such a case for the reasons she previously set forth.[34]

## CONCLUSION

For the foregoing reasons and those stated in her motion, the Court should award Carter a total of $2,262,437.89, which includes $2,212,914.00 in reasonable attorneys' fees, $49,523.89 in expenses, plus the 25% lodestar enhancement, and $21,670.10 in costs, and order Southwest and Local 556 to pay those amounts as requested.

Dated: January 23, 2023                           Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510

---

[32] Doc. Nos. 169-171, 207-208; Doc. No. 398, pp.6-7. Local 556 fails to note that Carter *successfully* opposed the defendants' motions for summary judgment, and that time should not be deducted. Doc. No. 378-1, pp.43-44 (App.42-43 (time entries from 9/7/21 through 10/4/21).
[33] Doc. No. 398, pp.9-13.
[34] Doc. No. 377, pp.29-32; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citation omitted).

7

Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

<u>By</u><u>: /s/ Matthew B. Gilliam</u>