UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:17-CV-2278-X |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA, LOCAL 556, and | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Defendants*. | § | |

**<u>ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL</u>**

A jury found that Southwest Airlines Co. ("Southwest") and the flight attendants' union, Transport Workers Union Local 556 ("Local 556"), discriminated against Charlene Carter by terminating her employment for her protected speech about religion and unions. Southwest now moves for judgment as a matter of law, a new trial, or remitter. For the reasons below, the Court **DENIES** the motion.

## I. Background

After an eight-day trial, a jury found for Carter and against Southwest on Carter's claims for retaliation in violation of the Railway Labor Act and religious discrimination in violation of Title VII. The Court denied Southwest's motion for judgment as a matter of law at the close of Carter's case-in-chief. In light of the jury's verdict, the Court entered judgment for Carter, ordering Southwest to, among other things, reinstate Carter and pay her $150,000 in backpay and $300,000 in compensatory and punitive damages.

Southwest now renews its motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, moves for a new trial under Rule 59(a) or, in the alternative, moves for remittitur.

## II. Legal Standard

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict."[1] Courts grant such motions "only when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict."[2]  The Court "must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence."[3]

A court may "grant a new trial based on its assessment of the fairness of the trial and the reliability of the jury's verdict."[4]  "A new trial may be granted if the trial court finds that the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed."[5]

## III.   Analysis

Southwest raises issues concerning (A) an arbitrator's decision, (B) Title VII's "conflict" requirement, (C) Carter's need to an accommodation, (D) undue hardship,

---

[1] *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (cleaned up).

[2] *Id.*

[3] *Id.*

[4] *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991).

[5] *Id.* (cleaned up).

(E) disparate treatment, (F) the emotional-distress award, (G) the punitive-damages award, (H) Railway Labor Act ("RLA") jury instructions, (I) mitigation, and (J) a laundry list of case-management issues.  The Court considers each in turn.

## A. Arbitrator Decision

At trial, Southwest sought to admit evidence concerning "Carter's arbitration and the resulting decision," where an arbitrator found "just cause" for firing Carter under the Collective Bargaining Agreement.[6]   The Court allowed testimony concerning the arbitration proceedings to the extent it was "relevant to Carter's duty-of-fair-representation claim."[7]   But the Court declined to "allow the arbitrator's written decision to go to the jury" because "the danger of unfair prejudice, confusing the issues, and misleading the jury substantially outweigh any relevance the written decision and specific findings may have."[8]   Southwest now claims that "[t]he Court's decision to exclude the arbitrator's decision was unfairly prejudicial" to it.[9]

District courts have "broad discretion in determining the admissibility of evidence" and "[a]rbitral awards are not immune from this general grant of discretion to the district courts."[10]   Thus, the Fifth Circuit has declined to hold that "arbitral awards are per se admissible in subsequent employment actions."[11]   Where an arbitral award "gives full consideration to an employee's Title VII rights, a court ***may***

---

[6] Doc. 262 at 1–3.

[7] Doc. 292 at 2.

[8] *Id.* at 3-–4.

[9] Doc. 386-1 at 13.

[10] *Graef v. Chem. Leaman Corp.*, 106 F.3d 112, 116 (5th Cir. 1997).

[11] *Id.* at 117.

properly accord it great weight."[12]   And that's especially so when the arbitrator addresses an issue that "is solely one of fact."[13]   At the same time, "Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims."[14]   So courts have excluded arbitral awards as irrelevant and unduly prejudicial when their findings did not go "directly to an element" of a claim at issue in the lawsuit in light of the "jury's tendency to defer to a professional factfinder."[15]

The arbitral award at issue falls into the latter category for two reasons.   First, as the Court previously held, "the legal questions that the arbitrator decided aren't the same as the ones presented in this federal case."[16]   "The arbitrator found simply that Southwest had 'just cause' under the collective bargaining agreement to terminate Carter's employment, while Carter's claims in this suit—Title VII and Railway Labor Act claims—involve markedly different legal standards."[17]   In fact,

---

[12] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974) (emphasis added).

[13] *Id.*

[14] *Id.*

[15] *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1128 (9th Cir. 2020); *see also Kirouac v. Donahoe*, No. 2:11-CV-00423-NT, 2013 WL 5952055, at *7 (D. Me. Nov. 6, 2013) (recognizing that "the jury may give special weight to the quasi-judicial conclusions of the arbitrator"); *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986) (affirming a district court that was "was concerned that the arbitrator's comments and findings regarding the credibility of witnesses who also testified at trial would either usurp the jury's role in assessing credibility or would be unfairly prejudicial"); *cf. Williams v. McDermott Int'l Inc.*, No. 2:20-CV-00277, 2022 WL 1664552, at *5 (W.D. La. May 25, 2022) ("Courts have repeatedly excluded EEOC determination letters based on a finding that the legal conclusions therein are more prejudicial than probative."); *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir. 1994) ("[D]istrict courts [retain] discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule.").

[16] Doc. 232 at 15–16.

[17] Doc. 232 at 16.

4

"the arbitrator disclaimed that it had considered Carter's religious beliefs and how those may have factored into her termination."[18]  Second, the arbitrator's decision contained "colorful descriptions of Carter's conduct and Southwest and Local 556's response," along with a discussion of issues that were "completely irrelevant to the issues present in this case."[19]  Thus, the arbitrator didn't "give[] full consideration to [Carter's] Title VII rights."[20]  And, given the arbitrator's colorful commentary and irrelevant discussions, there is a substantial risk that presenting that arbitral award to the jury would have unduly inflamed the "jury's tendency to defer to a professional factfinder."[21]

Finally, it is worth noting an inconsistency in Southwest's argument. Southwest contends it was prejudiced because the jury wasn't given the decision—indicating that it thinks the jury would have reached a different conclusion if it had the arbitration decision.  But on the other hand, Southwest says a limiting instruction could have made everything right by telling the jury it couldn't defer to the arbitrator in reaching its decision here.  Both can't be right.  Had the Court allowed the arbitration decision, it would have issued a limiting instruction, which would have prevented the jury from merely copying the arbitration decision for its decision in this case.  Accordingly, the Court did not abuse its discretion in excluding the arbitrator's decision, and there is no basis for a judgment as a matter of law or a new trial.

---

[18] *Id.* at 17.

[19] Doc. 292 at 4.

[20] *Alexander*, 415 U.S. at 60 n.21.

[21] *Barranco*, 952 F.3d at 1128.

## B. Title VII "Conflict"

In a throw-away argument, Southwest contends that the Court erroneously "permitted the jury to find Southwest liable without Carter satisfying the essential 'conflict' element of her claim."[22]  And it's true that, to prove a Title VII religious-discrimination claim, a plaintiff must show that "her belief conflicted with a requirement of her employment."[23]  But, as Southwest recognizes in a moment of candor, "[t]he Court recognized this [conflict] requirement and referenced it in the narrative portion of the jury instructions."[24]  Thus, Southwest's only gripe is that "the Court refused to include a jury interrogatory on the issue."[25]

But Southwest doesn't cite any precedent suggesting that courts must separately enumerate each element of a claim in a jury charge.  Nor could it.  District courts have "wide latitude in submitting and framing written questions to the jury."[26]  And "[i]n determining the adequacy of the form of [jury] interrogatories, [courts] consider . . . whether, when read as a whole and *in conjunction with the general charge* the interrogatories adequately presented the contested issues to the jury."[27]  Given the general charge, the jury had to find the requisite conflict in order to find that Southwest was liable under Title VII.  The Court didn't err in declining to include

---

[22] Doc. 386-1 at 16.

[23] *Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013).

[24] Doc. 386-1 at 16; *see also* Doc. 343 at 17 (requiring Carter to show "that [she] was discharged for failure to comply with the conflicting job requirement").

[25] Doc. 386-1 at 16.

[26] *Cent. Progressive Bank v. Fireman's Fund Ins. Co.*, 658 F.2d 377, 381 (5th Cir. 1981).

[27] *Id.* at 381 (cleaned up) (emphasis added).

Southwest's specific interrogatory.

Next, Southwest contends that, interrogatory aside, Carter presented to the jury "no evidence of any such conflict."[28]  Wrong again.  Carter presented ample evidence that "her [religious] belief conflicted with a requirement of her employment."[29]  Specifically, Carter testified that she sent the video to Audrey Strone "because of [her] religious beliefs."[30]  She testified that those communications "express[ed] [her] religious beliefs."[31]  And Carter testified that her religious beliefs compel her to "do whatever [she] can to save another baby in the womb."[32]  So Carter holds a religious belief that abortion is wrong and that she must do whatever she can—including sending the communications at issue—to save unborn children.  And, as Southwest concedes, it fired her because it considered those communications to be "policy violations" and viewed those policies as conditions of Carter's employment.[33]  Thus, abundant evidence showed that Carter's religious belief conflicted with a requirement of her employment—that she abide by Southwest's policies.

## C. Accommodation

Southwest next contends that there should have been an instruction that Southwest had no obligation to accommodate Carter if she violated Southwest's policy

---

[28] Doc. 386-1 at 17.

[29] *Tagore*, 735 F.3d at 329.

[30] Tr. Trans. 1289:24.

[31] *Id.* at 1262:24–1263:4.

[32] *Id.* at 1201:24–25.

[33] Doc. 386-1 at 18; *see also* Doc. 383-3 at 2 (communicating to Southwest Flight Attendants that Carter's communications "were in violation of several Company policies" and that Carter's failure to "adhere to Southwest policies and guidelines[] result[ed] in her termination").

before Southwest suspected she needed an accommodation.[34]  Southwest relatedly argues that it did not know about Carter's need for an accommodation, so it was never under a duty to provide one.[35]

But the direct messages that resulted in Carter's termination were religious on their face.  So the same messages that Southwest viewed as a problem self-evidently showed their religious basis and the resulting need for an accommodation. As a result, the cases Southwest points to in which an employee's religious motivation only became apparent after the misconduct occurred don't have any effect here.

### D. Undue Hardship

Southwest next argues that the jury instructions improperly cabined undue hardship by focusing on costs to employers and not on effects on co-workers like the "mere possibility" of "hard feelings" or "lower morale."[36]  Southwest's argument is this: companies can sacrifice the faith of their employees on the altar of company policy because some employees dislike people of faith.  Southwest's interpretation of the "undue hardship" standard for providing religious accommodations is as disturbing as it is deficient.

At best, this argument is a misinterpretation of the jury charge.  The Court's jury instructions stated that "[a]n undue hardship means more than a de minimis cost on the conduct of the employer's business either in terms of financial costs or

---

[34] Doc. 386-1 at 17.

[35] Doc. 386-1 at 19.

[36] Doc. 386-1 at 19–20 (quoting *Nixon El v. Gen. Motors Co.*, No. 4:20-CV-471-A, 2021 WL 736267, at *3 (N.D. Tex. Feb. 25, 2021) (McBryde, J.); *Leonce v. Callahan*, No. 7:03-CV-110-KA, 2008 WL 58892, at *5 (N.D. Tex. Jan. 3, 2008) (Roach, M.J.)).

disruption of the business."[37]   This definition plainly encompasses the totality of Southwest's business and did not prevent the jury from considering potential burdens on Carter's co-workers.

But Southwest protests that the Court's instructions needed to go further, specifically telling the jury that burdens on co-workers' feelings may enable employers to refuse religious accommodations.  In support of this claim, Southwest points to Fifth Circuit caselaw holding that undue monetary or scheduling burdens on co-workers might suffice to outweigh an employee's right to religious expression in the workplace.[38]   When applying Title VII's undue burden standard, the Fifth Circuit has emphasized that its interpretation of that standard is compelled by the Supreme Court's landmark 1977 ruling in *Trans World Airlines, Inc. v. Hardison*.[39] In *Hardison*, the Supreme Court stated in dicta that requiring an employer "to bear more than a de minimis cost in order to" accommodate an employee's religion "is an undue hardship" sufficient to thwart Title VII's protection of that employee's religious liberty.[40]   The Fifth Circuit has since clarified that, more "[s]pecifically, *Hardison* concluded that an undue hardship is present if the proposed accommodation would

---

[37] Doc. 343 at 17–18.

[38] Doc. 386-1 at 19–20 (citing *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 274 (5th Cir. 2000)).

[39] *See, e.g.*, *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 502 n.20 (5th Cir. 2001) (citing a side-by-side comparison of the statutory definition of "undue hardship"—"an action requiring significant difficulty or expense"—and *Hardison*'s interpretation—"anything more than *de minimis* expense" (quoting 42 U.S.C. § 12111(10)(A); 432 U.S. 63, 84 (1977))).

[40] 432 U.S. at 84; *see Patterson v. Walgreen Co.*, 140 S. Ct. 685, 686 & n.* (2020) (Alito, J., joined by Thomas and Gorsuch, JJ., concurring in denial of certiorari) (stating that "*Hardison*'s reading does not represent the most likely interpretation of the statutory term 'undue hardship'" and noting that "*Hardison* did not apply the current form of Title VII, but instead an [EEOC] guideline that predated the 1972 amendments defining the term 'religion'" (citation omitted)).

force changes in the schedules of other employees and alter the employer's otherwise neutral procedure."[41]   As Southwest notes, courts in the Northern District have dutifully applied this interpretation.[42]

Dissenting in *Hardison*, Justice Marshall objected that the Court's "de minimis cost" interpretation of an undue burden could "effectively nullify[]" Title VII's protection for religious expression in the workplace.[43]   He was right.   A more recent judge examining *Hardison* elaborated that it "effectively subject[s] Title VII religious accommodation to a heckler's veto by disgruntled employees."[44]   That is precisely the result Southwest seeks here.   By weaponizing *Hardison*, Southwest would arm a single employee who disdains religion to override Title VII's protection of religious expression in the workplace.

But *Hardison* (even not extended like Southwest wants) stands on thin ice and may soon rest in peace with *Lemon*.[45]   Perhaps to curtail the hostile view of religious liberty Southwest promotes, the Supreme Court has granted certiorari on a petition that asks the high Court to (1) "disapprove the more-than-de-minimis-cost test for refusing Title VII religious accommodations stated in [*Hardison*]" and (2) decide whether employers may demonstrate undue hardship "merely by showing that the

---

[41] *Antoine v. First Student, Inc.*, 713 F.3d 824, 839 (5th Cir. 2013).

[42] *See, e.g.*, *Balderas v. Valdez*, No. 16-CV-2652-D, 2018 WL 3570096, at *4 (N.D. Tex. July 25, 2018) (Fitzwater, J.).

[43] 432 U.S. at 89 (Marshall, J., dissenting).

[44] *Groff v. DeJoy*, 35 F.4th 162, 177 (3d Cir. 2022) (Hardiman, J., dissenting).

[45] *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (acknowledging the Supreme Court's abandonment of the Establishment Clause balancing test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971)).

requested accommodation burdens the employee's co-workers rather than the business itself."[46]  The Court optimistically anticipates the Supreme Court's answers to these questions, but it need not await them to rule on Southwest's motion.

The fate of *Hardison* notwithstanding, Southwest's undue hardship argument fails because it identifies the burden on Carter's co-workers not in terms of compensation, scheduling, or any other workplace difficulty; rather, Southwest protests that Carter's religious actions may have burdened her co-workers *emotionally*.  *Hardison* reasoned that Title VII does not require employers "to discriminate against some employees in order to" accommodate the religious beliefs of others.[47]  But Southwest doesn't claim that accommodating Carter's religious beliefs would have required it to discriminate against her co-workers.  Instead, it argues that religious accommodation might have hurt their feelings.

Southwest clumsily musters some caselaw to bolster its view, but—for good reason—it cannot cite any cases that elevate a co-worker's potential offended feelings above an employee's right to religious expression.[48]  And that should give every

---

[46] Petition for Writ of Certiorari at *i, *Groff v. DeJoy*, 2022 WL 3701768 (2022), *certiorari granted*, 143 S. Ct. 646 (Mem.) (Jan. 13, 2023).

[47] 432 U.S. at 85; *see also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982) ("[T]he rationale underlying [*Hardison*'s holding] is that anything more than a de minim[i]s cost would result in discrimination against other employees, a result the Court concluded Congress did not intend." (citation omitted)).

[48] Doc. 386-1 at 20 (citing *Leonce*, 2008 WL 58892, at *5 (acknowledging, in dicta, that filling a Sabbath-observing employee's Saturday shifts might cause "hard feelings (i.e., lower morale)" among coworkers, but also identifying several additional, independently sufficient burdens such as "violat[ing] the [employer's] seniority[-]based days-off system" and "prevent[ing] the religious employee from [attending] the mandatory training" that sometimes occurred on Saturdays)); Doc. 406 at 4 (citing *Brener*, 671 F.2d at 147 (acknowledging undue hardship under *Hardison* where accommodation "resulted in disruption of work routines *and* a lowering of morale among [coworkers]," as well as "less favorable working conditions" (emphasis added)).  Southwest also blusters that "courts have repeatedly held" that religious accommodations permitting employees "to proselytize to co-

American great relief.  If Southwest's vision of religious accommodation in the workplace becomes reality, each citizen could express their religious beliefs at work only to the extent the most antithetical co-worker is willing to tolerate.  Most employees would be astounded to learn that their freedom of religion extends no further than their most sensitive co-worker's threshold for offense.  So would the Founders of this country.[49]

Another irony is worth noting.  Southwest's motion argues Carter should get no emotional distress damages because "hurt feelings, anger and frustration are part of life[.]"[50]  But then Southwest claims that the "mere possibility" of "hard feelings" alleviates it from accommodating an employee's federally protected religious beliefs.  Southwest has a pot/kettle problem.

The Supreme Court set the bar for "undue burdens" extremely low in *Hardison*, but Southwest wants it even lower.  Or maybe Southwest doesn't want it to exist at all.  The Court has difficulty imagining any religious expression inoffensive enough to withstand a co-worker's challenge under the regime Southwest proposes.  Accordingly, the Court rejects Southwest's argument that its instruction improperly advised the jury as to Southwest's "undue hardship" defense.

---

workers about abortion and other topics" may be denied.  *Id*.  It cites only one case to support this dubious proposition, which does not apply because it hinged on the employee's failure to provide "notice of her need to engage in [the religious] conduct" rather than a finding of undue hardship.  *Id*. (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1013 (4th Cir. 1996)).

[49] *See, e.g.*, THE FEDERALIST NO. 10 (James Madison) ("In a free government the security for civil rights must be the same as that for religious rights.")  In fact, the Court is fairly confident that were James Madison to review Southwest's Motion for New Trial, he would be far more astonished at Southwest's disparaging view of religious liberty than he would be to learn of the existence of the entire commercial airline industry.

[50] Doc. 386-1 at 24 (quoting *Hitt v. Connell*, 301 F.3d 240, 250–51 (5th Cir. 2002) (cleaned up)).

### E. Disparate Treatment

To grant Southwest's Rule 50 motion on Carter's disparate-treatment claim, the Court would have to find that "there is no legally sufficient evidentiary basis for a reasonable jury" to have found for Carter.[51]  The Court must deny the motion "if reasonable persons could differ in their interpretations of the evidence."[52]

Southwest asserts that "the evidence does not reveal any basis for the jury's discrimination finding."[53]  In support, Southwest lists a few odds and ends that it contends should convince the Court that *no reasonable jury* could have found for Carter.  The argument is a complete failure.  First, Southwest says there was "no evidence of hostile comments regarding Christians generally or Carter's religious beliefs specifically,"[54] but hostile comments are not the only way a jury can find disparate treatment.[55]  This point is irrelevant.  Next, Southwest says that Carter posted religious content on her Facebook page for years without any repercussions from Southwest.[56]  This point, again, is irrelevant because it has no bearing on whether a reasonable jury could conclude that Southwest terminated Carter for posting *the particular religious expression at issue in this case*.  Finally, Southwest

---

[51] FED. R. CIV. PROC. 50(a).

[52] *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 392 (5th Cir. 2000).

[53] Doc. 386-1 at 22.

[54] *Id.*

[55] Southwest similarly asserts that "the individuals involved in Carter's termination were pro-life," but it only cites evidence that one such individual held pro-life views.  Doc. 386-1 at 22 (citing Doc. 387 at 452).  And Southwest can cite no binding authority holding that a disparate-treatment claim fails as a matter of law if an employer claimed to share the plaintiff's religious views.

[56] Doc. 386-1 at 22–23.

says no evidence shows that its stated grounds for terminating Carter were pretextual. This is, yet again, irrelevant. Carter alleged, and the jury found, that Southwest directly discriminated against her, so evidence of pretext—a feature of the burden-shifting framework courts employ for discrimination allegations supported only by *circumstantial* evidence—was unnecessary for the jury to reach its conclusion.[57]

Sufficient evidence supports the jury's finding for Carter on her disparate-treatment claim. The most obvious example is Southwest's decision to terminate Carter for posting religious expression on Facebook in part because she "w[as] identifiable as a Southwest Airlines Employee and represent[ing] [the] Company" when she did so, but choosing to protect, embolden, and endorse other Southwest employees who carried political messages at a divisive and highly publicized political protest while emblazoned with the Southwest Airlines logo.[58] The jury reasonably viewed this double standard—punishing an employee for privately posting her views while applauding others for publicly evangelizing theirs—as evidence of disparate treatment. The Court cannot second-guess the jury's decision when evidence exists

---

[57] *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (clarifying that the *McDonnell Douglas* burden-shifting framework "sought only to apply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination"). The Court instructed the jury: "If you find that the reason Defendant Southwest has given for discharging Plaintiff Carter is unworthy of belief, you may, but are not required to, infer that Defendant Southwest was motivated by Plaintiff Carter's religious observances, beliefs, or practices." Doc. 343 at 15–16. And the jury, as the ultimate and sovereign decisionmaker in this case, found that "Carter proved that [] Southwest unlawfully discriminated against [her] by discharging her [] and that such discharge was motivated by [her] sincerely-held religious observances, beliefs, or practices." Doc. 348 at 10.

[58] *Compare, e.g.*, Doc. 400-47 at 1, *with* Doc. 400-44 at 6, 13–14.

to support it.

## F. Emotional-Distress Award

Next, Southwest claims that "the law requires the Court to eliminate" the jury's award of emotional-distress damages because "the bulk of Carter's testimony regarding emotional distress [was] vague and generalized" and the rest was "hearsay and improper opinion."[59]  But Carter testified that she suffered an "'actual injury' resulting from the harassment," and a claimant's testimony alone can sufficiently support an emotional-distress claim because "corroborating testimony and medical evidence is not required in every case."[60]

The "standard of review for awards based on intangible harms . . . is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of witnesses."[61]  Carter testified that she suffered distress including stress, insomnia, marital problems, loss of appetite, post-traumatic stress disorder, and a walking stroke.[62]  She submitted as exhibits her invoices for "Individual Psychotherapy."[63]  And though Southwest suggests other possible causes for Carter's post-termination medical distress, the jury was free to believe that those

---

[59] Doc. 386-1 at 24–25.

[60] *Flowers v. Southern Regional Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001); *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007) (emphasis removed).

[61] *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937–38 (5th Cir. 1996) (cleaned up).

[62] Tr. Trans. 1296:6–1298:9, 1300:2–14, 1306:7–24; *see Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (holding that emotional distress damages are appropriate to compensate for "sleeplessness, anxiety, stress, marital problems, and humiliation, and do[] not always require that the plaintiff offer medical evidence or corroborating testimony in addition to her own testimony").

[63] *See, e.g.*, Doc. 400-53. These exhibits presented evidence that could have assisted a reasonable jury in estimating Carter's future emotional damages as well.

causes, not Southwest, caused Carter's emotional distress.  But it did not, and the Court will not intervene now to substitute Southwest's favored interpretation of the evidence in place of the jury's.  And the Court notes that Southwest's belated evidentiary objections are powerless to dispel testimony it disfavors.[64]

Southwest betrays its ignorance of the proper standard when it declares that a "lack of corroborating evidence" to support Carter's testimony of emotional distress "counsels against upholding the jury's award."[65]  It is the jury—not the Court, and certainly not Southwest—that the law empowers to decide which way the evidence "counsels," and the jury has already reached its verdict.  Southwest does not contend that no reasonable jury could have found that Southwest caused Carter's emotional distress; instead, it contends that if *Southwest* were in the jury box, it would have found otherwise.  This irrelevant and self-serving argument is inappropriate under the applicable standard of review.

Finally, the Court notes that agreeing with Southwest on this issue would not alter the total amount of Carter's award.  The applicable limitation of Title VII caps "the amount of compensatory damages" available to Carter for "emotional pain . . . *and* the amount of punitive damages" at $300,000.[66]  In other words, Carter's compensatory and punitive damages are in the same bucket. Were the Court to drain any or all of Carter's emotional-damages award, her ample punitive-damages

---

[64] Fed. R. Evid. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if," among other things, the party "timely objects or moves to strike[,] and [] states the specific ground[.]"); Tr. Trans. 1296:13–1300:14.

[65] Doc. 386-1 at 24.

[66] 42 U.S.C. § 1981a(b)(3)(D) (emphasis added).

award—which is over eleven times larger than the statutory cap—would replenish any losses and ensure Carter receives the maximum of $300,000.

## G. Punitive-Damages Award

Southwest challenges the jury's award of punitive damages, again asserting that no evidence supports it. But crystal-clear evidence dooms this argument to inescapable failure.

Punitive damages require evidence that the "defendant [discriminated] with malice or with reckless indifference to the [plaintiff's] federally protected rights."[67] This standard requires that an employer "discriminate in the face of a perceived risk that its actions will violate federal law."[68]

And that's exactly what happened. The manager and 28-year Southwest employee who terminated Carter, Ed Schneider, testified that he knew the definition of protected religious speech, and provided it in court.[69] He testified that he received "required training once a year on different aspects involving" employees' "religious beliefs that are interacting with Southwest policy."[70] And Schneider testified to his view that Carter "crossed the line when she posted those videos, and pictures [depicting abortion], and [] sent them to a Southwest employee," and stated that "that is what I used as my basis for her termination."[71]

---

[67] *Id.* § 1981a(b)(1).

[68] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.2th 422, 439 (5th Cir. 2022).

[69] Tr. Trans. 873:13–16 ("Protected religious [activity] is speech that reflects on religion in the workplace.").

[70] *Id.* at 873:17–23.

[71] *Id.* at 878:25–879:9.

But despite his knowledge and training, Schneider confirmed that he "didn't consider whether" Carter's comments were "protected speech or not,"[72] and stated that he "didn't consider [her posts] to any extent to be religious activity."[73] Southwest joins Schneider in professing ignorance of Carter's religious motivation, but the evidence tells another story.[74] An email to Schneider summarizing an internal investigation of Carter's activity states that Carter "admitted to sending the[] posts and she explained she did so because she is a []Christian."[75] Schneider's own summary of that investigation states that Carter described the Women's March and abortion as "against her values as a Christian."[76] And after an initial meeting between Carter and Southwest's Employee Relations and Human Resources departments, a transcript emailed to Schneider reveals that Carter's response to the first question—"Why were these [pictures] posted to your Facebook page?"—was "I'm Christian, I'm a conservative, and I'm pro-life."[77]

Direct testimony from Southwest's own employee confirmed that the company acted with at least reckless indifference to Carter's known religious beliefs. Southwest's assertion that no evidence supported the jury's punitive-damages award is utterly, demonstrably false.

---

[72] *Id.* at 877:5–9.

[73] *Id.* at 885:10–13.

[74] Doc. 386-1 at 27 ("[N]o one understood Carter's conduct and communications as a religious exercise that it needed to accommodate.").

[75] Doc. 400-46 at 1.

[76] Doc. 400-45 at 1.

[77] Doc. 400-43 at 1–2.

## H. RLA Instructions

Shifting to the Railway Labor Act retaliation claim, Southwest argues that the RLA should be read like the National Labor Relations Act and not protect speech that is vulgar, offensive, abusive, or harassing.[78]  As the Court explained previously, Southwest's basis for doing so is dicta from the Ninth Circuit suggesting that some of the National Labor Relations Act limitations might cross-apply to the RLA.[79]  But the Ninth Circuit isn't the Fifth Circuit, and this Court prefers not to cherry pick one party's preferred bits of one federal law and judicially shoehorn them into another law.

Southwest also argues that reciting a portion of the purpose of the RLA that Congress included in that law was confusing and prejudicial.[80]  Specifically, Southwest thinks the purpose of free association should not have made it into the charge and, if it did, the charge should also have included statutory purpose language on the prompt resolution of disputes.[81]  But Southwest's conclusory statement that this was prejudicial does not show how the jury was misled by knowing Congress stated its intent to protect freedom of association.  Nor does Southwest show how adding in language on prompt resolution of disputes would have resulted in a different verdict.

---

[78] Doc. 386-1 at 29.

[79] *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 882 n.10 (9th Cir. 2002) ("We see no reason why the rule announced in *Linn* . . . regarding protected activities[] should not apply in the context of the [Railway Labor Act]." (cleaned up)).

[80] Doc. 386-1 at 32.

[81] *Id.*

## I.  Mitigation

Southwest next asks the Court to toss the verdict because Carter's efforts to mitigate Southwest's damages fell short.[82]  Procedurally, this isn't a viable argument for a new trial.  Back pay is equitable and something the Court—not the jury—orders.  The right time to take shots at the jury's advisory answer was in Southwest's opposition to Carter's motion for entry of judgment.

Substantively, Southwest falls woefully short in making a compelling argument on mitigation.  This is not a case where the plaintiff made no attempt to mitigate.  Carter applied for flight attendant positions at competing airlines.  But the jury also heard Carter testify regarding the effect of a termination for violating airline policy on the prospects of getting another similar job.  Southwest made the points to the jury that it raises here.  But Southwest doesn't show here that the jury disagreed with its contention that Carter shouldn't recover for the period of time before she applied for the other flight attendant jobs.  Without a modest effort at math from Southwest, the Court sees no reason to disturb the jury's advisory answer.

## J.  Case-Management Issues

Southwest also raises a host of other issues in bullet point fashion.  The Court rejects them in similar fashion, with the underlined phrase summarizing Southwest's argument:

- <u>The Court imposed time limits but gave Carter more time:</u> Yes, but the Court found good cause to give Carter a small amount of additional time and gave the same amount to Southwest.

---

[82] Doc. 386-1 at 33.

- <u>The Court improperly allowed six depositions of unavailable witnesses before trial</u>:  Yes, and the Court had to raise the issue of an arrest with one witness because Southwest failed to make the witness available—even though the witness said he would have complied with a Southwest request.  The Court ultimately had to sanction Southwest.

- <u>The Court proceeded on a dismissed claim</u>: No.  The Court dismissed only Carter's Count I and II post-certification claims when those claims did not allege animus.[83]  But the Court allowed (and went to trial on) Carter's Count IV post-certification claim because it alleged animus.  But Southwest never objected to trying the Count IV Railway Labor Act claim at trial.  So if Southwest was right (and it's not), it tried this claim by consent.

- <u>Southwest couldn't talk to its witnesses even though Carter could talk to her counsel</u>:  This one is only partly true.  As is custom and rule, Southwest could talk to its trial representative during trial (just not during bathroom or lunch breaks if that trial representative was on the stand).  The same is true for a natural party like Carter as it is for a trial representative.  Southwest made a strategic decision not to make the employee who made the termination decision its trial representative.  So when that witness performed poorly in Carter's case, and Southwest deferred its cross-examination to its case-in-chief, the Court rightfully instructed the witness he couldn't talk about the case because he'd be recalled.  Sure, anyone in Southwest's position would want to coach up that witness.  The same rule applied to Carter and Southwest: natural parties are trial representatives and are immune from the rule sequestering witnesses (unless they're on the stand and are at a bathroom or lunch break).

- <u>The order denying summary judgment didn't address certain points</u>:  The Court is confused as to why this is a new trial point rather than a motion to reconsider the summary judgment ruling.  In any event, the Court's summary-judgment order complied with Rule 56's requirement to "state on the record the reasons for granting or denying the motion."[84]

- <u>The Court impermissibly and generically ordered Southwest to "obey the law" by enjoining the defendants from discriminating</u>:  Wrong.  The injunction was quite specific.  The Court enjoined "Defendants from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on

---

[83] Doc. 69 at 17–18.

[84] *See generally* Doc. 232 (stating the Court's reasons for denying summary judgment).

social media and those concerning abortion."[85]  The odd thing here is that when the Court ordered Southwest to inform its flight attendants that a jury found that Southwest had illegally discriminated against the religious beliefs of a flight attendant, Southwest seems to have told its flight attendants the opposite (that it does not discriminate).  The Court must resolve this issue separately.  But here, the Court is concerned that Southwest distorted the specificity of the Court's injunctive relief both to its own flight attendants and then again to the Court in its Motion for New Trial.  This is unfortunate.

- <u>Carter lacks standing for injunctive relief broader than herself:</u>  But the Fifth Circuit has said that a plaintiff in a "Title VII suit takes on the mant[le] of the sovereign" with the purpose of "eliminat[ing] discrimination and recompens[ing] those who have suffered from it."[86]  Just like Southwest thinks its employee handbook trumps federal law, it also thinks its preferred narrow injunction trumps Fifth Circuit precedent.  The Court disagrees.

- <u>Carter's "charge against Southwest did not alleged [*sic*] a failure to accommodate and thus she failed to exhaust a Title VII claim:"</u> The Court correctly concluded otherwise.

- <u>Section 152 Third and Fourth of the Railway Labor Act do not confer a private cause of action:</u> The Court correctly concluded otherwise.

- <u>Carter's claims are preempted:</u> The Court correctly concluded otherwise.

- <u>The Court wrongly held anti-union animus wasn't required:</u> The Court correctly concluded otherwise.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Southwest's motion.

**IT IS SO ORDERED** this 24th day of April, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[85] Doc. 374 at 29.

[86] *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (cleaned up).