# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                 Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                 Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S MOTION TO COMPEL DISCLOSURE AND REQUEST FOR *IN CAMERA* REVIEW OF COURT-ORDERED DOCUMENTS FROM DEFENDANT SOUTHWEST AIRLINES CO. AND CARTER'S INCORPORATED BRIEF SUPPORTING THE MOTION AND RESPONDING TO THE COURT'S ORDER**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ............................................................................................ ii

SUMMARY ..................................................................................................................... 3

ARGUMENT .................................................................................................................... 5

I.   The Southwest Privilege Log does not establish that attorney-client privilege applies to its communications regarding the Recent Court Decision notice and IIOTG Memo .................... 5

   A.   Southwest Privilege Log Nos. 1-17, 20-40, 42-43: Communications regarding "compliance with court order and content of employee communications" ........................ 7

   B.   Southwest Privilege Log No. 41: "form of court-mandated employee communication and compliance with Court order" ........................................................................... 9

   C.   Southwest Privilege Log Nos. 44-46: "Discussions between Southwest management employees and in-house legal team regarding Court-required communications to employees ................................................................................................................. 10

II.  Southwest should produce its privilege log communications because the crime-fraud exception applies, but the Court can also review the documents *in* camera to determine whether the crime-fraud exception applies ........................................................................ 12

   A.   The crime-fraud exception applies ..................................................................... 12

   B.   If the Court cannot conclude that the crime-fraud exception applies based on the available evidence, it should conduct an *in camera* review of Southwest's privileged communications to determine whether the exception applies ........................................... 15

III. Summary of the impact of evidence Southwest produced ...................................... 19

   A.   Southwest outside counsel's communications with Local 556's counsel regarding issuing a joint notice ............................................................................................. 20

   B.   Carter intends to subpoena Southwest managers and attorneys identified in Southwest's notice to the Court ............................................................................... 21

CONCLUSION .............................................................................................................. 21

CERTIFICATE OF CONFERENCE ............................................................................. 22

**TABLE OF AUTHORITIES**

Page(s)

## CASES

*Chandler v. Phoenix Servs.*,
Civil Action No. 7:19-cv-00014-O, 2020 WL 487503 (N D. Tex. Jan. 30, 2020)........5, 12, 16

*Chemtech Royalty Assocs., L.P. v. United States*,
No. 06-258-RET-DLD, 2009 WL 854358 (M.D. La. Mar. 30, 2009)...........................6, 8, 10

*Cole v. Collier*,
Civil Action No. 4:14-CV-1698, 2020 WL 2813454 (S.D. Tex. May 29, 2020)........... *passim*

*Crosswhite v. Lexington Ins. Co.*,
321 F.App'x 365 (5th Cir. 2009) .............................................................................................4

*E.E.O.C. v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) ...................................................................................... *passim*

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
No. 13-373-SDD-EWD, 2018 WL 326504 (M.D. La. Jan. 8, 2018)........................................8

*Gutter v. E.I. Dupont de Nemours*,
124 F.Supp. 2d 1291 (S.D. Fla. 2000) ...................................................................................14

*In re Antitrust Grand Jury*,
805 F.2d 155 (6th Cir. 1988) .................................................................................................16

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
No. MDL 2047, 2014 WL 7135657 (E.D. La. Dec. 12, 2014)...............................................13

*In re Gen. Instrument Corp. Sec. Litig.*,
190 F.R.D. 527 (N.D. Ill. 2000)..........................................................................................9, 10

*In re Grand Jury Subpoena*,
419 F.3d 329 (5th Cir.2005) ..................................................................................................12

*International Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)................................................................................................................13

*Lasker v. Stevens Graphics Corp.*,
1994 WL 389467 (N.D. Tex. April 29, 1994) .........................................................................4

*Lopiparo v. United States*,
222 F.2d 897 (8th Cir. 1955) .................................................................................................13

*NLRB v. Interbake Foods, LLC*,
637 F.3d. 492 (4th Cir. 2011) ............................................................................................6, 11

**TABLE OF AUTHORITIES**

Page(s)

*United States v. Chen*,
99 F.3d 1495 (9th Cir. 1996) .......................................................................................7

*United States v. DeCay*,
406 F.Supp. 2d 679 (E.D. La. 2005) ...........................................................................4

*United States v. Evans*,
113 F.3d 1457 (7th Cir. 1997) .....................................................................................9

*United States v. Louisiana*,
No. 11-470, 2015 WL 4619561 (M.D. La. July 31, 2015) .................................9, 10

*United States v. Parker*,
586 F.2d 422 (5th Cir. 1978) .......................................................................................4

*United States v. Zolin*,
491 U.S. 554 (1989) .........................................................................................4, 5, 6, 16

*Wanzer v. Town of Plainville*,
No. 3:15-CV-00016 (AWT), 2016 WL 1258456 (D. Conn. Mar. 30, 2016) ...........7

## RULES & STATUTES

Fed. R. Civ. P. 26(b)(5)(A)(ii) .........................................................................................6

Fed. R. Civ. P. 37(a) .........................................................................................................3

Fed. R. Civ. P. 37(a)(3)(B) ...............................................................................................4

Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv) ..................................................................................4

18 U.S.C. § 401 ...............................................................................................................13

iii

**PLAINTIFF CHARLENE CARTER'S MOTION TO COMPEL DISCLOSURE AND REQUEST FOR *IN CAMERA* REVIEW OF COURT-ORDERED DOCUMENTS FROM DEFENDANT SOUTHWEST AIRLINES CO. AND CARTER'S INCORPORATED BRIEF SUPPORTING THE MOTION AND RESPONDING TO THE COURT'S ORDER**

Pursuant to Federal Rule of Civil Procedure 37(a), and this Court's April 18, 2023 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this motion requesting that the Court order Southwest Airlines Co. ("Southwest") to produce the documents identified in its privilege log (the "Southwest Privilege Log")[2] for *in camera* review to determine (I) whether attorney-client privilege applies to Privilege Log Nos. 1-17, 20-40, and 42-43; Privilege Log No. 41; and Privilege Log Nos. 44-46;[3] and (II) whether the crime-fraud exception applies to the Southwest Privilege Log communications. Carter also requests that the Court order Southwest to produce, prior to the May 23, 2023 hearing, all documents and information required by the Court's order.[4]

## SUMMARY

Despite the Court's April 18, 2023 Order, Southwest did not produce all of its communications related to Southwest's violation of the Court's December 5, 2022 order and injunction.[5] Southwest asserted attorney-client privilege for those communications, and has withheld or redacted those documents.[6] The Southwest Privilege Log shows Southwest's counsel and managers engaging in extensive communications regarding the December 20, 2022 Recent Court Decision notice,[7] the

---

[1] Doc. 408.

[2] *See* Exhibit 1 attached hereto (App.1-3).

[3] *Id*. Notably, Southwest does not assert work product privilege for any documents, communications or attachments, and has waived any such claim. *Id*.

[4] Doc. 408.

[5] (App.1-3).

[6] *Id*.; *see* Exhibit 4 (Southwest production) attached hereto (App.13-51). For purposes of filing this Exhibit 4, Carter made redactions of personal email information separate from Southwest's redactions. Carter designated her separate redactions with the word "REDACTED" in red font.

[7] Doc. 383-2, p.2.

Inflight Information On the Go ("IIOTG") Memo,[8] and compliance with the Court's orders, immediately before violating those orders.[9]

The Court should order Southwest to produce these documents to Carter or to the Court for *in camera* review. Southwest's Privilege Log communications are necessary to meaningfully evaluate Southwest's contempt of this court order, including why those Southwest counsel and managers who intentionally caused the company's violations of the Court's order should not be subject to monetary and other sanctions for intentionally violating the order.[10]

Under the Federal Rules of Civil Procedure, Rule 37(a)(3)(B), a party seeking discovery may move for an order compelling production against another party when the latter has failed to respond.[11] The Southwest Privilege Log fails to provide sufficient information to support Southwest's attorney-client privilege claims. The Court can review documents *in camera* to determine whether they are privileged.[12] Courts "require[] the *in camera* submission of privileged materials for a variety of reasons, chief among them determining whether a privilege exists."[13] Carter requests that the Court order Southwest to produce to Carter, prior to the May 23, 2023 hearing, all documents and information which the Court determines to be non-privileged.

---

[8] Doc. 383-3, p.3.
[9] (App.1-3).
[10] Doc. 382, pp.16-17.
[11] *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv); *accord Crosswhite v. Lexington Ins. Co.*, 321 F.App'x 365, 368 (5th Cir. 2009).
[12] *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 n.4 (5th Cir. 2017); *Cole v. Collier*, Civil Action No. 4:14-CV-1698, 2020 WL 2813454, at *3 (S.D. Tex. May 29, 2020).
[13] *United States v. DeCay*, 406 F.Supp. 2d 679, 681 n.1 (E.D. La. 2005) (citations omitted); *see also United States v. Parker*, 586 F.2d 422, 428-29, 429 n.8 (5th Cir. 1978) (*in camera* review to determine existence of attorney-client privilege); *Lasker v. Stevens Graphics Corp.*, 1994 WL 389467, at *1, 2 (N.D. Tex. April 29, 1994) (same); *United States v. Zolin*, 491 U.S. 554, 565-75 (1989) (*in camera* review to determine if the crime-fraud exception applies).

To the extent the Court concludes that attorney-client privilege applies to any Southwest Privilege Log documents, Carter requests that the Court also review them *in camera* to determine whether the crime-fraud exception applies. The Court can conduct *in camera* review of privileged documents and communications if there is a "reasonable belief" that the review "may yield evidence" that the crime-fraud exception applies.[14] The Court should conduct an *in camera* review to determine whether the crime-fraud exception applies to Southwest's violations, and, if the exception applies, order Southwest to produce those communications to Carter prior to the hearing.

Pursuant to the Court's Order Setting Show-Cause Hearing and Requiring Discovery,[15] Carter also describes the impact of the evidence Southwest produced in response to the Court's April 18, 2023 Order. Given the fast-approaching May 23, 2023 Show-Cause Hearing, Carter also requests that the Court set a May 12, 2023 expedited deadline for Southwest to respond to this motion to compel disclosure and request for *in camera* review of documents, which is the same date that the Court set for Southwest's response to Carter's brief describing the impact of Southwest's evidence.

## ARGUMENT

### I. The Southwest Privilege Log does not establish that attorney-client privilege applies to its communications regarding the Recent Court Decision notice and IIOTG Memo.

The Court should review Southwest Privilege Log Nos. 1-17, 20-46 *in camera* to determine whether attorney-client privilege applies because Southwest's log descriptions do not give sufficient information to support its privilege claims. "If [parties] are unable to express through their privilege log whether documents are privileged or not, then … *in camera* review … [is] the

---

[14] *Zolin*, 491 U.S. at 574-75; *Chandler v. Phoenix Servs.*, Civil Action No. 7:19-cv-00014-O, 2020 WL 487503, *5 (N.D. Tex. Jan. 30, 2020); *Cole*, 2020 WL 2813454, at *3 (finding that "[t]he Court … needs to review documents withheld by Defendants under the attorney-client privilege *in camera* to determine if they are in fact privileged" or if the crime-fraud exception applies).
[15] Doc. 408, p.2.

best method to adjudicate privilege without inadvertently revealing privileged information."[16] The Court should order Southwest to produce all non-privileged communications.

When a party withholds information by claiming that the information is privileged, the party must provide a privilege log that describes the nature of each document not produced, "set[ting] forth specific facts that, if credited would suffice to establish each element of the privilege or immunity that is claimed."[17] The privilege-asserting party must provide sufficient information as to each document withheld so that the Court and the parties may test the merits of the claim.[18] "Courts do not presume that communications with counsel are privileged[.]"[19] "Determining the applicability of the privilege is a highly fact specific inquiry, and the party asserting the privilege bears the burden of proof."[20] "Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent [of the privilege]."[21]

The Southwest Privilege Log does not give Carter and the Court enough substantive details to support Southwest's attorney-client privilege claims because the log's descriptions do not establish that the communications were made for the purpose of giving or obtaining legal advice or assistance. Privilege log entries are inadequate where they consist of vague or general subject matter descriptions, are repetitious, or where the party asserting privilege does not show that the type of information is inherently protected by the privilege.[22]

---

[16] *See Cole*, 2020 WL 2813454, at *3 (citing *Zolin*, 491 U.S. at 568-69).

[17] *BDO USA, L.L.P.*, 876 F.3d at 697 (cleaned up).

[18] Fed. R. Civ. P. 26(b)(5)(A)(ii); *BDO USA, L.L.P.*, 876 F.3d at 697.

[19] *Cole*, 2020 WL 2813454, at *2 (citing *BDO USA, L.L.P.*, 876 F.3d at 696); *BDO USA, L.L.P.*, 876 F.3d at 696 ("[T]he attorney-client privilege does not apply simply because documents were sent to an attorney." (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d. 492, 502 (4th Cir. 2011))).

[20] *BDO USA, L.L.P.*, 876 F.3d at 695 (internal punctuation and citation omitted).

[21] *Id.*

[22] *Chemtech Royalty Assocs., L.P. v. United States*, No. 06-258-RET-DLD, 2009 WL 854358, at *5 (M.D. La. Mar. 30, 2009) ("It is not possible to tell from the entries whether these entries truly enjoy … the privilege … without useless speculation."); *see also Cole*, 2020 WL 2813454, at *2

Southwest's Privilege Log repeats over and over the characterization that communications involve "compliance with court order and content of employee communications," with very little variation across sixty logged communication descriptions.[23] Repeating the same boilerplate description for its communications without giving substantive detail forces the Court and Carter to speculate regarding the communications' contents and the privilege's applicability. Southwest's boilerplate language obscures crucial details in its communications.

### A. Southwest Privilege Log Nos. 1-17, 20-40, 42-43: Communications regarding "compliance with court order and content of employee communications"[24]

Southwest's Privilege Log Nos. 1-17, 20-40, and 42-43 do not show that these communications "regarding compliance with court order and content of employee communications" involved attorneys giving legal advice or assistance or Southwest managers (i.e., non-attorneys) seeking legal advice or assistance.[25] To establish attorney-client privilege, the privilege log must show a confidential communication made by or to a lawyer for the primary purpose of giving or seeking legal advice, services, or assistance in some legal proceeding.[26] "[A] confidential communication

---

(finding that descriptions such as "[c]ommunication made for the purpose of obtaining and providing legal advice and assistance in Cole v. Collier litigation," "the Pack Unit," "inspection of the LeBlanc Unit," and "temperature" logs, were vague and boilerplate descriptions and failed to provide adequate detail to support the privilege log).

[23] (App.1-3).

[24] (App.1-3). Similarly, Southwest's Privilege Log Nos. 13, 20-21, 42-43 do not establish attorney-client privilege for "requirements for compliance with Court order" and "proposed employee communication," and Privilege Log No. 27 does not establish the privilege for a non-attorney's emails regarding "content of communications to employees in light of Court decision." (App.1-3).

[25] Parties asserting attorney-client privilege must describe the communication as more than just "legal" or "legal advice" to properly establish the privilege. *BDO USA, L.L.P.*, 876 F.3d at 696. "Calling the lawyer's advice 'legal' … does not help in reaching a conclusion; it *is* the conclusion." *Id.* (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) (emphasis in original).

[26] *BDO USA, L.L.P.*, 876 F.3d at 695 (citation omitted) (emphasis in original); *see also Wanzer v. Town of Plainville*, No. 3:15-CV-00016 (AWT), 2016 WL 1258456, at *3 (D. Conn. Mar. 30, 2016) ("Without some indication that these documents contain legal advice or requests therefor, and without documentation with respect to the contents of the attachments, the Court cannot review the assertion of privilege.").

7

between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance."[27] "Courts do not presume that communications with counsel are privileged[.]"[28] Privilege logs must provide a "substantive description regarding the withheld information" and "enough detail to determine the [legal] nature of the advice sought."[29] "'[G]eneral level' description is not in keeping with the intent of Rule 26."[30]

To be sure, giving or seeking legal advice regarding what compliance with the Court Order requires Southwest to tell employees in the Recent Court Decision notice or IIOTG Memo about the content of employee communications may be privileged.[31] But Southwest's Privilege Log does not show that.[32] Southwest's description conflates two different subjects (i.e., compliance with the Court order and content of employee communication).[33] Southwest's description is not entitled to any presumption that its communications involved attorneys giving and non-attorneys seeking legal advice about whether the "employee communications" complied with the Court order.[34] Southwest must specifically establish that the communications involved attorneys giving or non-attorneys seeking legal advice about whether the company's "employee communications" comply with the Court order (e.g., whether the Recent Court Decision notice and IIOTG Memo comply with the Court order), not obscure such critical details.[35]

---

[27] *BDO USA, L.L.P.*, 876 F.3d at 696 (citation omitted).

[28] *Cole*, 2020 WL 2813454, at *2 (citing *BDO USA, L.L.P.*, 876 F.3d at 696).

[29] *Firefighters' Ret. Sys. v. Citco Grp. Ltd.,* No. 13-373-SDD-EWD, 2018 WL 326504, at *6, 7 (M.D. La. Jan. 8, 2018).

[30] *Chemtech*, 2009 WL 854358, at *4.

[31] If this is the case, then the Court should still review Southwest's communications *in camera* because they "may yield evidence" that the crime-fraud exception applies. *See infra* at 12-19.

[32] (App.1-3) (Privilege Log Nos. 1-17, 20-40, 42-43).

[33] *Id*.

[34] *Cole*, 2020 WL 2813454, at *2 (citing *BDO USA, L.L.P.*, 876 F.3d at 696).

[35] *BDO USA, L.L.P.*, 876 F.3d at 695 (citation omitted)

Southwest's communications involving facts and not legal advice are also not privileged. "To be privileged, the documents must not only exhibit attorney involvement, but must involve a legal adviser acting in his capacity as such."[36] Attorney-client privilege does not extend to purely factual information that an attorney communicates via memo to other persons.[37] Southwest's communications regarding facts within the court order (i.e., what the Court order explicitly stated) are not privileged.[38] Nor do Southwest Privilege Log entries containing only facts about the content of employee communications and company policy involve legal advice.[39] Counsel's communications are not privileged if they concern company policy as a business matter as opposed to legal services or assistance.[40] "[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, are not privileged."[41]

## B. Southwest Privilege Log No. 41: "form of court-mandated employee communication and compliance with Court order"[42]

Southwest Privilege Log No. 41 regarding the "form of court-mandated employee communication" concerns fact information, not confidential or legal information.[43] Attorney-client

---

[36] *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 531 (N.D. Ill. 2000) (citing *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)) (internal punctuation and citation omitted). *See also BDO*, 876 F.3d at 696.

[37] *See United States v. Louisiana*, No. 11-470, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015).

[38] (App.1-3) (Privilege Log Nos. 1-17, 20-40, 42-43). Proving Carter's point, Southwest's April 28, 2023 privilege log improperly asserted attorney-client privilege for attorneys' *non-legal* communications about purely factual matters. *See* Exhibit 3 (App.10-12). After Carter's counsel questioned Southwest's privilege claims in conferral [Exhibit 2, (App.4-5)], Southwest produced contested communications showing that many of these involved the same type of non-legal communication that Carter continues to contest here. *Compare* Privilege Log Nos. 14 and 38 (App.10-11)/ SWA Show Cause 4 and 9 (App.16, 21) *with* SWA Show Cause 22 and 35 (App.34, 47); *see* SWA Show Cause documents corresponding with original privilege log nos. 9 (App.10, 31), 22 and 25 (App.11, 23), 49 and 50 (App.12, 49), and 53-55, 59-60 (App.12, 39-42).

[39] *See e.g.*, (App.1-2) (Privilege Log Nos. 2, 27).

[40] *See BDO USA, L.L.P.*, 876 F.3d at 696 (citation omitted).

[41] *Id*. (citation omitted) (cleaned up).

[42] (App.3).

[43] *Id*. (Privilege Log No. 41).

privilege does not extend to purely fact information that an attorney communicates via memo to other persons.[44] "Form" is not confidential information. Instead, "form" is a non-privileged fact and characteristic of Southwest's communications.[45] The Court and Carter should not have to speculate how "form" might be confidential or involve legal analysis, advice, or assistance. Privilege log entries are inadequate where they consist of vague or general subject matter descriptions.[46] The fact that Southwest's description forces such speculation shows "form" is impermissibly vague and fails to support Southwest's privilege claim.

**C. Southwest Privilege Log Nos. 44-46: "Discussions between Southwest management employees and in-house legal team regarding Court-required communications to employees"[47]**

Southwest fails to show that Privilege Log Nos. 44-46—Southwest Vice President of Inflight Sonya Lacore's and Southwest Communications Advisor Cindy Hermosillo's non-attorney discussions  regarding the "Court-required communications to employees" (i.e., the Recent Court Decision notice and the IIOTG Memo)—are confidential communications directed to attorneys for legal advice.[48] To support the attorney-client privilege claim, the privilege log must show "that legal advice is being sought, or revealed."[49] "[C]ommunications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, are not privileged[,] nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel[.]"[50]

---

[44] *See Louisiana*, 2015 WL 4619561, at *5.
[45] (App.3) (Privilege Log No. 41).
[46] *Chemtech*, 2009 WL 854358, at *5; *see also Cole*, 2020 WL 2813454, at *2.
[47] (App.3).
[48] *Id.*
[49] *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. at 531 (citation omitted).
[50] *BDO USA, L.L.P.*, 876 F.3d at 696 (citations omitted) (cleaned up).

The Southwest managers involved in these communications are not attorneys.[51]  Southwest does not show that Lacore and Hermosillo were discussing or seeking legal advice regarding compliance with the Court order. Southwest's April 28 privilege log originally asserted attorney-client privilege for all managers' communications in the same email thread,[52] but, once Carter's counsel questioned this privilege assertion with Southwest,[53] it produced the other managers' communications from the thread.[54] Southwest continues to assert attorney-client privilege for Lacore's and Hermosillo's redacted communications,[55] but, as Southwest's disclosure of the other manager's communications shows,[56] these communications were not seeking legal advice.

While Chris Maberry and Kevin Minchey are attorneys included on those emails, they did not initiate or respond to any of these communications, which confirms that Southwest managers did not direct any legal questions or requests to them in these communications.[57] "[T]he attorney-client privilege does not apply simply because documents were sent to an attorney."[58] "There is no presumption that a company's communications with counsel are privileged."[59] Accordingly, attorney-client privilege does not attach to these communications.

---

[51] (App.3) (Privilege Log Nos. 44-46); Doc. No. 410, pp.1-2 (Cindy Hermosillo (Southwest Communications Advisor), Sonya Lacore (Southwest Vice President of Inflight), Mike Sims (Southwest Managing Director of Inflight Crew Support & Services), Meggan Jones (Southwest Senior Manager of Labor Administration in in-house legal department), and Melissa Ford (Southwest Director of Operations and Labor Communications)).
[52] (App.12)(Privilege Log Nos. 54-59).
[53] (App.4).
[54] (App.39-41) (SWA Show Cause 27-29).
[55] (App.3) (Privilege Log Nos. 44-46); (App.39-40) (SWA Show Cause 27-28).
[56] (App.39-41) (SWA Show Cause 27-29).
[57] (App.3) (Privilege Log Nos. 44-46); (App.39-41) (SWA Show Cause 27-29).
[58] *BDO USA, L.L.P.*, 876 F.3d at 696 (quoting *Interbake*, 637 F.3d at 502).
[59] *BDO USA, L.L.P.*, 876 F.3d at 696 (citation omitted).

## II. Southwest should produce its privilege log communications because the crime-fraud exception applies, but the Court can also review the documents *in camera* to determine whether the crime-fraud exception applies.

The Court should review the foregoing communications *in camera* to determine whether attorney-client privilege applies.[60] To the extent that the Court determines attorney-client privilege applies to Southwest's Privilege Log documents and attachments, it should order Southwest to produce them because the crime-fraud exception applies, and overcomes Southwest's attorney-client privilege claim.[61] If the Court does not conclude that the crime-fraud exception applies based on available evidence, it should conduct an *in camera* review of Southwest's privileged communications to determine whether the exception applies, and order Southwest to produce documents for which it does.

### A.  The crime-fraud exception applies.

Southwest should produce the Privileged Log communications because it cannot assert attorney-client privilege for communications related to its violation of the Court's December 5, 2022 Order with its misrepresentations in the Recent Court Decision notice and IIOTG Memo. "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to further continuing or future criminal or future criminal or fraudulent activity."[62] To invoke the crime-fraud exception, the party opposing the privilege must establish a *prima facie* case of fraudulent or criminal activity by "produc[ing] evidence such as will suffice until contradicted and overcome by other evidence."[63]

---

[60] *See supra* at 5-11 (Privilege Log Nos. 1-17, 20-46) (App.1-3).

[61] If the asserting party establishes the privilege, then "the burden shifts to the [opposing] party to prove any applicable exceptions." *BDO USA, L.L.P.*, 876 F.3d at 695.

[62] *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (internal citation omitted); *Cole*, 2020 WL 2813454, at *4.

[63] *See Chandler*, 2020 WL 487503, at *2; *see also In re Grand Jury Subpoena*, 419 F.3d at 336.

Criminal contempt can trigger the crime-fraud exception.[64] Courts have "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, [including] … disobedience or resistance to its lawful writ, process, order, rule, decree, or command."[65] The Court's punishment of contempt determines whether it is civil or criminal.[66] Contempt is civil if "remedial, and for the benefit of the complainant" and to ensure future compliance with its order.[67] Criminal contempt arises when a court imposes retrospective punitive sanctions "for a completed act of disobedience" to "vindicate the authority of the court."[68] Carter asked the Court to hold a show cause evidentiary hearing to determine "why those Southwest officials and counsel who *intentionally* caused the company's violations of the Court's order should not be subject to monetary and other sanctions for intentionally violating the Court's order."[69] The Court may decide it should impose fines on Southwest counsel and officers to punish them for intentionally defying its orders, and to "vindicate[e] its legal authority to enter the initial court order."[70]

To be sure, Carter seeks civil contempt sanctions (i.e., "penalties designed to compel future compliance with [the] court order").[71] Notably, "[c]ontemptuous conduct may constitute both [c]ivil and criminal contempt."[72] Thus, the fact that the remedy sought also includes requiring

---

[64] *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, No. MDL 2047, 2014 WL 7135657, at *4 (E.D. La. Dec. 12, 2014) ("Even so, the Court emphasizes that the crime-fraud exception applies equally to client and counsel for those instances in which the client's purpose is to further the client's intent to participate in criminal contempt of court.").

[65] 18 U.S.C. § 401 (a criminal statute giving courts the power to punish contempt).

[66] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-29 (1994).

[67] *Id.* at 827-29.

[68] *Bagwell*, 512 U.S. at 828.

[69] Doc. 382, p.17 (emphasis added).

[70] *Bagwell*, 512 U.S. at 828.

[71] *Id.* at 827.

[72] *Lopiparo v. United States*, 222 F.2d 897, 898 (8th Cir. 1955).

Southwest to issue additional communications does not render the contempt at issue civil only, since the issue of whether Southwest must be punished for its misdeeds is also at issue.[73]

Southwest's fraudulent misrepresentations to flight attendants in the Notice and Memo also trigger the crime-fraud exception.[74] Southwest has not merely failed to comply with the Court's order but has disseminated misleading communications to its employees that deceived them as to what the Court found and ordered. Southwest admits (and its Privilege Log shows) that counsel and managers were communicating about circumscribing the Court order to manage "employee emotions" that may be "ignite[d]" by doing what the Court required.[75] Southwest's Recent Court Decision notice and IIOTG Memo failed to disclose and concealed from flight attendants Court-ordered information about their Title VII rights and protections.

Carter showed that Southwest's Recent Court Decision notice violated the Court's order by doing the opposite of what the Court ordered it to do and informing flight attendants it "***does not*** discriminate."[76] Southwest's Recent Court Decision notice was patently false and misleading, misrepresented what the Court ordered Southwest to tell flight attendants and what the Court found, and undermined the judgment, jury verdict, and the Court's relief.[77] Southwest made a conscious decision to deviate from the Court's explicit order to inform flight attendants that it may not discriminate, and represent that the Court ordered it to tell them that it does not discriminate

---

[73] *See id.*

[74] *See Gutter v. E.I. Dupont de Nemours*, 124 F.Supp. 2d 1291, 1300 (S.D. Fla. 2000) (affirming a special master's report and recommendation applying the crime-fraud exception where counsel repeatedly violated court orders). Doc. 382, pp.7-9; Doc. 383-2, p.2.

[75] (App.46) (SWA Show Cause 34).

[76] Doc. 382, pp.7-9; Doc. 399, pp.2-5.

[77] Doc. 382, pp.7-9; Doc. 383-2, p.2. As this Court observed, "[W]hen the Court ordered Southwest to inform its flight attendants that a jury found that Southwest had illegally discriminated against the religious beliefs of a flight attendant, Southwest seems to have told its flight attendants the opposite (that it does not discriminate)." Doc. 409, p.22.

(which, as clearly intended by Southwest, was the equivalent of saying the Court determined that Southwest has not discriminated in the past).[78]

Carter also showed that Southwest's IIOTG Memo violated the Court's order enjoining "Defendants from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion."[79] Southwest's IIOTG Memo conveyed to flight attendants that the company will continue to enforce its social media policies against their religious expression, practices, and beliefs if Southwest decides that they did not exercise them in a "civil and respectful manner."[80] Southwest's IIOTG Memo also misrepresented and concealed from flight attendants the company's Title VII obligations and restrained their rights with threats to continue discriminating against religious beliefs like Carter's under its social media policies.[81] Carter has made a prima facie case that the crime-fraud exception applies to Southwest's contempt and fraudulent misrepresentations to flight attendants about their Title VII rights.[82]

**B. If the Court cannot conclude that the crime-fraud exception applies based on the available evidence, it should conduct an *in camera* review of Southwest's privileged communications to determine whether the exception applies.**

To the extent that the Court determines attorney-client privilege applies to Southwest's privilege log communications and cannot determine whether the crime-fraud exception applies from Southwest's privilege log and the parties' contempt briefing, the Court should conduct an *in camera* review to determine whether the crime-fraud exception applies. Southwest's Recent Court

---

[78] Doc. 382, pp.7-9; Doc. 383-2, p.2; Doc. 399, pp.2-5; *see also infra* at 18-19.
[79] Doc. 375, p.2 ¶5; Doc. 382, pp.9-13; Doc. 383-3, p.2 (IIOTG Memo); Doc. 399, pp.5-9.
[80] Doc. 383-3, p.2.
[81] *Id.*; *see also infra* at 18-19.
[82] Doc. 382, pp.7-13; Doc. 399, pp.2-9.

Decision Notice,[83] the IIOTG Memo,[84] and its privilege log,[85] establish a "reasonable belief" that communications and documents related to the Notice's and Memo's preparation, creation, and approval "may yield evidence" of Southwest's contempt.[86]

  "Where privilege has already been established" the court may "conduct *in camera* review of privileged documents to determine the applicability of the crime-fraud exception" if the party opposing privilege "present[s] evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability."[87] "Indeed, when a party asserts privilege, 'the only way the district court *can* determine if any of the documents are subject to a subpoena under the crime-fraud exception is by reviewing them.'"[88] In *Cole*, the court found sufficient evidence to support a reasonable belief that communications met this standard for *in camera* review when a party asserted privilege for communications related to misrepresentations made to the court regarding its compliance with a court-approved settlement agreement.[89]

Southwest's communications related to the preparation, creation, and approval of the Recent Court Decision notice and IIOTG Memo are relevant to fraudulent and criminal activity, and, at a minimum, "may yield [further] evidence" regarding the exception's applicability in addition to Southwest's intent and the persons involved. Southwest's Privilege Log descriptions "support a reasonable belief" that examining these documents *in camera* "may yield evidence" that Southwest

---

[83] Doc. 383-2, p.2.
[84] Doc. 383-3, p.2.
[85] (App.1-3).
[86] Doc. 382, pp.7-13; Doc. 399, pp.2-9; (App.1-3).
[87] *Cole*, 2020 WL 2813454, at *3 (quoting *Zolin*, U.S. at 574-75); *see also Chandler*, 2020 WL 487503, *5 (citing *Zolin*, 491 U.S. at 574-75).
[88] *Chandler*, 2020 WL 487503, *5 (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 168 (6th Cir. 1988) (emphasis in *Chandler*).
[89] *Cole*, 2020 WL 2813454, at *1, 3.

16

evaded the Court's requirements and acted in contempt of the Court's orders.[90] Furthermore, Southwest's communications may show Southwest's intentional decision to subvert those orders for its private gain, and Southwest's counsel's and managers' respective roles in violating the Court's orders.[91] Southwest's Privilege Log descriptions show that, from the day after the Court issued its December 5, 2022 order, through December 20, 2022, the date when Southwest issued its Recent Court Decision Notice and IIOTG Memo, the company apprehended the risk that the Notice and Memo violated the Court's Order:

- Southwest represents that it communicated about whether the "content of employee communications" complied with the Court order;[92]

- Southwest management employees discussed "Court-required communications to employees;"[93]

- Southwest counsel and managers, reviewing "proposed employee communication," discussed "requirements for compliance with Court order;"[94] and

- Southwest continued to discuss the "form of court-mandated employee communication and compliance with court order."[95]

Southwest's two-week-long exchange of more than sixty communications and documents among seven high-level managers and five attorneys hashing out the Recent Court Decision notice's and IIOTG Memo's compliance with the Court Order creates a reasonable belief that these communications, at a minimum, address their intent to evade and disseminate a message that

---

[90] (App.1-3).

[91] *Id.*

[92] (App.1-3) (Privilege Log Nos. 1-12, 14-17, 22-40). Southwest's Privilege Log shows that it was attempting to ascertain how it could police the content of employees' social media communications as a result of the Court order. *Id.* Southwest discerned the risk that in issuing the Recent Court Decision notice and IIOTG Memo, it would be doing what the Court told it not to do. *Id.*

[93] (App.3) (Privilege Log Nos. 44-46).

[94] (App.1-3) (Privilege Log Nos. 13, 20-21, 42-43).

[95] (App.3) (Privilege Log Nos. 41).

violated the court's injunction and order.[96] Southwest's prolonged discussions are not proportional to complying with the Court's orders. Why would Southwest need to conduct such an extensive back and forth exchange of documents and communications between high-level managers and attorneys to conform its Notice and Memo to the Court order's plain, unambiguous terms?

Despite such extensive communications, Southwest produced and disseminated a Recent Court Decision notice that said the opposite of what the Court ordered it to tell flight attendants.[97] Southwest's efforts show that Southwest's violations of the Court's orders were deliberate, not accidental.[98] Southwest's communications reflect intentional efforts to manipulate the Court order's terms in such a way as to mislead flight attendants as to both what the Court had found and what its order required, and to justify its own deviation from the Court's explicit orders.[99]

Prior to filing this Motion for Contempt, Carter invited Southwest to revise its Recent Court Decision notice and IIOTG Memo to conform with the Court order and remedy its misleading statements to flight attendants.[100] Southwest admitted that, rather than comply with the Court's explicit order, it seized the opportunity to interpret the order in a self-serving manner, justifying its actions with this sophomoric logic: "The Judgment did not say that Southwest had to exactly follow the language used by Judge Starr, and Southwest did not interpret the order in that manner."[101] Southwest's assertion is revealing. Southwest unilaterally decided that, notwithstanding what the Court ordered, Southwest could do whatever it wanted, as long as Southwest had the pretense of "compl[ying] with the spirit and wording of the Court's

---

[96] (App.1-3).
[97] *Id*.; Doc. 383-2, p.2.
[98] (App.1-3).
[99] *Id*.
[100] Doc. 383-1.
[101] Doc. 383-6, p.3

judgment."[102] Southwest's position also reflects that *in camera* review will likely yield communications about how Southwest believed it could manipulate the Court's clear and specific requirements to convey its own preferred message.

Southwest's IIOTG Memo was a direct response to the Court's order intended to deal with what Southwest called "the significant discussion among flight attendants" caused by "the [C]ourt mandated notice."[103] On December 6, one day after the Court's order, Southwest started drafting the IIOTG Memo and appeared to produce the first draft of the IIOTG Memo on December 12.[104] Southwest admitted the motive driving all the privilege log communications that culminated in the Recent Court Decision notice and IIOTG Memo—Southwest was clawing back against the Court order: "Southwest had every right to express its position, its disagreement with the jury's verdict in the case, and *its expectations that employees treat each other with respect and dignity*."[105] But in Carter's case, Southwest's call for treating others "with respect and dignity" meant using its social media policies as a weapon to discriminate against and restrain flight attendants' religious beliefs, discriminate against Carter's union opposition speech, and silence other lawful speech and expression. That is precisely what Southwest did in the IIOTG memo.

## III. Summary of the impact of evidence Southwest produced

Carter cannot fully address the impact of Southwest's communications because Southwest has withheld or redacted forty-six communications related to the Recent Court Decision notice and

---

[102] *Id.*

[103] Doc. 383-6, p.3.

[104] (App.1) (Privilege Log Nos. 1, 6).

[105] Doc. 383-6, p.3. Carter acknowledges Southwest's right to appeal and express its position as well as its disagreement with the Court order and jury verdict. But as Carter has previously stated, what Southwest cannot do is violate the Court's standing orders. Doc. 382, p.12; Doc. 399, pp.1-2, 6.

IIOTG Memo based on its attorney-client privilege claims.[106] On April 28, 2022, Southwest produced approximately three email chains, with one attachment, for a total ten pages of documents.[107] On May 4, 2023, after Carter's counsel raised objections regarding Southwest's Privilege Log, the company produced approximately thirty heavily redacted pages of documents covered under its original privilege log.[108] By cloaking in privilege the operative documents regarding Southwest's decision to flout the Court's order and producing heavily redacted documents, Southwest has avoided producing the documents necessary for the Court to evaluate Southwest's conduct. As such, the information actually produced adds only marginally to the evidence establishing Southwest's violation of the Court's orders, which is evident on the surface of the communications.

### A. Southwest outside counsel's communications with Local 556's counsel regarding issuing a joint notice.

Southwest produced emails with Local 556's counsel regarding the union's willingness to issue a joint notice regarding the Court's judgment.[109] Notably, Southwest Attorney Paulo McKeeby's December 9 email asked Local 556's counsel if they would be willing to issue a joint notice "contemplated" by the Court's judgment, and quoted from the Court's order that Southwest inform flight attendants that Defendants "may not discriminate."[110] Southwest's Privilege Log reflects that counsel devoted considerable time to drafting that notice, and, ultimately, issued its notice informing flight attendants that the Court ordered Southwest to tell them it "does not discriminate."[111]

---

[106] (App.1-3); (App.13-51).
[107] (App.10-12).
[108] (App.13-51); (App.4-5).
[109] (App.16-22, 34-38, 47-48) (SWA Show Cause 4-10, 22-26, 35-36).
[110] (App.18, 24) (SWA Show Cause 6, 36).
[111] (App.1-3) (Doc. 383-2, p.2).

While these email communications reflect Southwest and Local 556 counsel's intent to communicate by phone regarding Southwest's interest in filing a joint notice with Local 556, the emails do not reveal any substantive information regarding those communications.[112] Accordingly, Carter intends to issue subpoenas to Southwest's and Local 556's counsel to appear at the May 23, 2023 show cause hearing to testify regarding those communications.

### B. Carter intends to subpoena Southwest managers and attorneys identified in Southwest's notice to the Court.

Carter also intends to subpoena Southwest managers and attorneys identified in Southwest's notice to the Court[113] and privilege log to appear at the May 23, 2023 show cause hearing to testify regarding their communications. Carter asked Southwest's counsel if he would agree to accept service on the employees' behalf to appear at the hearing, but Southwest has not yet done so or indicated that it will.

### CONCLUSION

The Court should require Southwest to produce documents and communications for which it has asserted attorney-client privilege or conduct an *in camera* review to determine whether the privilege applies, and, to the extent that the privilege applies, determine whether the crime-fraud exception applies. The Court should order Southwest to produce all non-privileged documents and communications.

The Court should also order Southwest to respond to Carter's Motion to Compel by May 12, 2023, the same date which the Court ordered it to respond to Carter's Brief in Response to the April 18, 2023 order. Carter also requests all other relief at law and equity to which the Court deems her to be entitled.

---

[112] (App.16-22, 34-38, 47-48) (SWA Show Cause 4-10, 22-26, 35-36).
[113] Doc. 410.

Dated: May 5, 2023                        Respectfully submitted,

                                          s/ Matthew B. Gilliam
                                          Mathew B. Gilliam (*admitted pro hac vice*)
                                          New York Bar No. 5005996
                                          *mbg@nrtw.org*
                                          c/o National Right to Work Legal Defense
                                          Foundation, Inc.
                                          8001 Braddock Road, Suite 600
                                          Springfield, Virginia 22160
                                          Tel: 703-321-8510
                                          Fax: 703-321-9319

                                          Bobby G. Pryor
                                          State Bar No. 16373720
                                          bpryor@pryorandbruce.com
                                          Matthew D. Hill, Of Counsel
                                          State Bar No. 24032296
                                          mhill@pryorandbruce.com
                                          PRYOR & BRUCE
                                          302 N. San Jacinto
                                          Rockwall, TX 75087
                                          Telephone: (972) 771-3933
                                          Facsimile: (972) 771-8343

                                          *Attorneys for Plaintiff Charlene Carter*

### Certificate of Conference

I hereby certify that Plaintiff's counsel, Matthew B. Gilliam and Matthew D. Hill, conferred with counsel for Defendant Southwest Airlines Co., Paulo B. McKeeby and Brian K. Morris, by telephone on May 2, 2023, regarding Carter's objections to Southwest's privilege log and requests for clarification to the privilege log.

For April 28 Privilege Log Nos. 1-20, 25-47 (App.10-12), I expressed Carter's objection that the descriptions failed to establish that attorneys were giving legal advice or a manager was seeking legal advice, and requested further detail to clarify that issue. For April 28 Privilege Log Nos. 38, 48-50, 53, 60 (App.11-12), I expressed Carter's objection that the log descriptions involving

22

"status" and "form" of communications failed to establish attorney-client privilege, and that such terms are vague. I requested more detail in the description to show these communications involve giving legal advice. For April 28 Privilege Log Nos. 54-59 (App.12), I expressed Carter's objection that the log fails to show that Southwest managers (non-attorneys) were seeking legal advice from attorneys. I also inquired whether Southwest could provide additional details to the privilege log such as subject lines for all of the email communications, clarification as to whether each communications related to the Recent Court Decision Notice or the IIOTG Memo, whether Southwest could identify attachments by Bates Number, title, file name, author, most recent editor, and the date of attachment. I also sought clarification on other elements of the privilege log. During the May 2, 2023 telephone conference, I also asked McKeeby if he would agree to accept service of subpoenas on behalf of employees Southwest identified to appear at the Show Cause Hearing as witnesses. McKeeby stated he would be at the hearing himself. As of this filing, Southwest has not yet agreed to accept service.

During the meeting, I explained that Carter would file a motion to compel with her brief in response to the Court's April 18, 2023 Order to request, for any documents where Carter contends there is not sufficient information to determine whether the privilege applies, that the Court review them *in camera* to determine the privilege's applicability. I also explained that, for all the communications listed on the privilege log, if the Court finds that attorney-client privilege applies, Carter contends that the crime-fraud exception would apply, and that Carter would ask the Court to review all of the communications in camera based on our belief that they involve communications about violating the Court order. I explained that Carter would request that the Court set the deadline for Southwest's response to this motion for the same May 12, 2023 deadline for its response to Carter's brief permitted under the Court's April 18, 2023 Order. Following the

May 2, 2023 telephone conference, I emailed McKeeby and Morris regarding these objections and requests.

On May 3, 2023, McKeeby emailed me, and indicated Southwest's opposition to Carter's motion to compel and requests for *in camera* review. On May 4, 2023, Southwest provided Carter a revised privilege log addressing some but not all of Carter's concerns, and it supplemented its April 28 production with approximately thirty redacted and unredacted documents covered under its original privilege log.

s/ Matthew B. Gilliam

**Certificate of Service**

I hereby certify that on May 5, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Matthew B. Gilliam

24