# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

|  |  |  |
|---|---|---|
| CHARLENE CARTER, | § § § | Civil Case No. 3:17-cv-02278-X |
|  | § |  |
| Plaintiff, | § |  |
|  | § |  |
| v. | § |  |
|  | § |  |
| SOUTHWEST AIRLINES CO., AND | § |  |
| TRANSPORT WORKERS UNION OF | § |  |
| AMERICA, | § |  |
| LOCAL 556, | § |  |
|  | § |  |
|  | § |  |
| Defendants. | § |  |

---

## SOUTHWEST AIRLINES CO.'S BRIEF RESPONDING TO COURT ORDER

---

Southwest takes the allegation of contempt seriously.  To prepare for the upcoming Show Cause Hearing, it hired additional outside counsel, began a thorough review of the step-by-step actions leading to the Email Notice, and evaluated with fresh eyes and open minds Plaintiff's allegations (and the Court's concern (Doc. 409 at 21-22)) that Southwest's notice did not comply with the Court's judgment.  Even though Southwest's actions substantially complied with the judgment and do not rise to the level of contempt, they still fall below the high standards to which Southwest holds itself.

To start, Southwest takes to heart the objection that its characterization in the Email Notice that "the **court** also ordered [Southwest] to tell [Flight Attendants] that Southwest **does not discriminate** against our Employees for their religious practices and beliefs," Doc. 383-2 (emphasis added), was wrong.  Southwest sincerely believes no Flight Attendant was confused by this statement alone because the documents and other statements included with and in the Email Notice—including the judgment, jury verdict, and the email's first sentence stating that "a federal court in Dallas entered a judgment **against** Southwest" (emphasis added)—could not be clearer. Even so, Southwest acknowledges the possibility that someone could read the sentence at issue by itself and have the impression that this Court ruled that Southwest had not discriminated against an employee because of her religious beliefs.  Southwest admits it was wrong to issue a statement that could be construed to convey—albeit unintentionally—that this was the Court's ruling.

To be clear, Southwest stands by its earlier arguments that it has not contemptuously violated the Court's judgment.  *See* Doc. 394 at 1-6.  As the Plaintiff can see from the Privilege Log, and the Court from its *in camera* review, Southwest considered drafts of the Email Notice— all including notice of the judgment against Southwest and copies of the judgment and verdict form—for over one week.  This process involved at least five lawyers with over 100 years'

2

experience practicing law.[1]  During all those years, none of Southwest's lawyers has ever been sanctioned, much less found guilty of contempt.  Indeed, the Court included Southwest's trial counsel, along with the other lawyers in the case, as "phenomenal lawyers" who "put[ ] on a good case for the jury."  Trial Tr., Vol. 7 at 2193:15-20.  As a company, Southwest takes pride in its long-standing respect for the justice system.  Southwest therefore worked in good faith, with both inside and outside counsel, to craft an Email Notice that complied with the Court's judgment and advised the Flight Attendants of the judgment against Southwest.

At the same time, implementing the judgment's non-monetary requirements involved several moving parts and a great deal of time and effort from many people.  "Southwest declined to seek a stay of [Ms.] Carter's reinstatement" to ensure her "orderly and immediate return to" work.  Doc. 383-6 at App. 11.  As a result, Southwest had to coordinate all aspects of its compliance with the judgment—not just returning Ms. Carter to work, but also "post[ing] the jury's verdict and the accompanying Final Judgment on company bulletin boards for a 60-day period" and preparing the Email Notice to both "issue [the verdict and judgment] electronically to all Southwest flight attendants" and "inform Southwest flight attendants that, under Title VII, [Southwest] may not discriminate against Southwest flight attendants for their religious practices and beliefs."  Doc. 374 at 31.  This was a huge undertaking.  Externally, it required coordination with the union, until the union decided it would not issue a joint notice.  Internally, implementing the non-monetary parts of the judgment required the involvement of not only Southwest's lawyers, but also labor leaders, communication specialists, and others.  On top of the non-monetary parts of the judgment, Southwest was also addressing Plaintiff's claim for fees and obtaining a

---

[1]     Paulo McKeeby (31 years); Kerrie Forbes (27 years); Kevin Minchey (21 years); Chris Maberry (18 years); and Brian Morris (5 years).

US_ACTIVE-172899205.1

supersedeas bond for the judgment.  And all of this was being handled during a stressful and busy time for individuals and airlines alike—the Christmas holidays.  It is against this backdrop of many moving parts that the word "does" instead of "may" made its way into the Email Notice advising the Flight Attendants of (and attaching) the verdict and judgment.

Because this process involved Southwest's inside and outside counsel, the precise explanation of how and why the words "Southwest does not discriminate" were used in the Email Notice falls in the heartland of protected attorney-client communications.  Despite what Plaintiff might argue, Southwest's invocation of the privilege here is not self-serving.  Courts err in favor of protecting the attorney-client privilege because "sound legal advice or advocacy…depends upon" the sanctity of these communications, which "promote[s] broader interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981); *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018) (same).  What's more, Southwest cannot waive the privilege because it is still litigating with Ms. Carter on appeal.  For this reason, Southwest is limited in what more it can offer to explain both its substantial compliance with the Court's judgment and how the words "Southwest does not discriminate" ended up in the Email Notice.

All that said, Southwest sincerely regrets not quoting verbatim the language used in the Court's judgment.  Southwest would never intentionally seek to mislead its employees or shirk its responsibilities under a court order.  To make things right, Southwest voluntarily agrees to the following, without the need for a contempt finding by the Court.

*First*, Southwest will make available Mr. McKeeby and Mr. Maberry for an *ex parte* discussion with the Court to address any questions about the privileged *in camera* communications.  *See, e.g.*, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 8267444, at *3 (S.D. Fla. June 1, 2021) (allowing *ex parte* testimony about privileged

4

communications "once the threshold for *in camera* review has been met."). The *ex parte* request is required because the underlying communications are privileged and the Court, not Plaintiff, should guide any inquiry into the substance of those communications. Southwest simply requests that this discussion be transcribed, with the record under seal, because of the privileged nature of the *in camera* documents.[2]

 *Second*, Southwest will reimburse Plaintiff for all her reasonable attorneys' fees connected to the Motion for Contempt and Motion to Compel proceedings.

 *Third*, Southwest will re-issue the Email Notice (with attachments) with the "may not discriminate" language. But Southwest submits that Plaintiff's proposed corrective—including that Southwest "misrepresent[ed] the Court's decision and jury verdict," Doc. 383-1 at App. 1— is both incorrect and unwarranted under the circumstances.

 For these reasons, as well as those given in its earlier briefs, Southwest respectfully requests that the Court: (1) decline to hold Southwest in contempt and (2) order the relief consented to above.

---

[2] After this discussion, if the Court believes the *in camera* documents should be provided to Plaintiff, the Court could use FED. R. EVID. 502(d) to order production of those documents without waiving Southwest's attorney-client privilege. In addition to preserving the privilege, Southwest would ask the Court to impose conditions on the use of these privileged documents, including limiting their use to the Show Cause Hearing only and prohibiting Plaintiff from disclosing the documents to anyone else.

US_ACTIVE-172899205.1

Dated:  May 12, 2023.

Respectfully submitted,

*/s/ Andrew B. Ryan*
Paulo B. McKeeby
State Bar No. 00784571
Brian K. Morris
State Bar No. 24108707
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
bmorris@reedsmith.com

Andrew B. Ryan
State Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
Phone: 214-347-7360
Facsimile: 855-354-4055
andy@ryanlawpartners.com

**ATTORNEYS FOR DEFENDANT
SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 12th day of May, 2023.

*/s/ Andrew B. Ryan*
Andrew B. Ryan

6