UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| CHARLENE CARTER, | § § § | Civil Case No. 3:17-cv-02278-X |
| Plaintiff, | § § § | |
| v. | § § | |
| SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, | § § § § § § | |
| Defendants. | § | |

**SOUTHWEST AIRLINES CO.'S BRIEF RESPONDING TO COURT ORDER**

In response to the Court's Show Cause Order (Doc. 410 at 1-2), Southwest identified eleven people who "were involved in the crafting or authorization of the 'Recent Court Decision' notice and/or the 'Inflight On the Go Memorandum." Ms. Carter sought to compel the attendance of many of these witnesses at the upcoming Show Cause Hearing (Doc. 416), and the Court has ordered Southwest to file this expedited brief addressing two issues: (1) why "any of those individuals" requested by Ms. Carter are "not responsible for the relevant communications" and (2) why any of those people "should not be required to attend the hearing." Doc. 423 at 3.[1] Southwest addresses each issue in turn.

### A. The Creation and Communication of the Court-Ordered Notice and the IIOTG Memorandum Was a Cooperative Effort Between Southwest's Legal Department and Several Business Units.

The Court originally ordered Southwest to "[i]dentify…all persons involved in crafting or approving the Recent Court Decision notice or the IIOTG Memorandum." Doc. 408 at 2. The Expedited Briefing Order (Doc. 423) allows Southwest to file a brief explaining why individuals should not have to attend the hearing, to the extent Southwest believes any of those individuals "is not responsible for the relevant communication[s] and should not be required to attend the hearing." *Id*. at 3. This distinction reflects the reality that, for each communication, there were different parties who were responsible for (and controlled the content of) the document.

The creation and communication of both the Court-ordered notice attaching the jury's verdict and the Court's judgment and the IIOTG Memorandum was a cooperative effort between Southwest's Legal Department and several business units (the Legal Department's clients). The final method of communication of the notice and memorandum in two separate communications,

---

[1] The Expedited Briefing Order also orders Southwest to address "at the hearing" the proposed remedy of religious liberty training. Doc. 423 at 2-3. Southwest has asked for leave to file a brief on this remedy, but this brief does not address that issue.

and the language included in those communications, were products of privileged legal communications and advice shared between clients and counsel, both in-house and external. *See, e.g.*, Doc. 412-4 at App. 46 (SWA SHOW CAUSE 034). This is explained further in the privileged and confidential declaration of Christopher Maberry, which is being filed *ex parte* and under seal as required by the Expedited Briefing Order.[2]

For this reason, Southwest requests that only two people previously named—Meggan Jones and Cindy Hermosillo—be excused from attending the hearing because they were not responsible for either communication. Ms. Jones, who is on Southwest's Labor Administration Team, was not involved with the Email Notice and was not responsible for drafting or communicating the IIOTG Memorandum. Instead, she was working on "getting [Ms.] Carter reinstated" consistent with the Court's order. Doc. 412-4 at App. 46 (SWA SHOW CAUSE 034); *accord* Doc. 416 at 2. Southwest only identified her on its original list of persons because it construed the Show Cause Order broadly and Ms. Jones was copied on emails that dealt with both the communications and Ms. Carter's reinstatement. Ms. Hermosillo, who is on Southwest's Corporate Communications Team, had no responsibility for the content of either the Email Notice of the IIOTG Memorandum. Her job was limited to formatting the emails and sending them to the Flight Attendants by hitting the "send" button from her desktop. Because neither Ms. Jones nor

---

[2]  For the avoidance of all doubt, Mr. Maberry's *ex parte* declaration contains attorney-client privileged communications and core opinion work product regarding his mental impressions of steps taken by Southwest after the judgment was entered. Southwest is submitting Mr. Maberry's declaration *ex parte* in accordance with the Expedited Briefing Order because it is "privileged information" that is the "relevant evidence" to support Southwest's arguments in its "brief." Doc. 423 at 3. Southwest is also filing Mr. Maberry's *ex parte* declaration under seal as contemplated by the local rules. *See* N.D. LOC. CIV. R. 79.3(b) ("a party may file a document under seal only…by permission of the presiding judge."). Southwest is therefore filing Mr. Maberry's *ex parte* declaration under the assumption that it will not be disclosed to Plaintiff or otherwise be construed as a waiver of the attorney-client privilege or work product protections. As discussed below, Southwest will not be calling Mr. Maberry or any other witness to testify at the Show Cause Hearing and objects to Plaintiff doing so. If the Court for any reason believes Mr. Maberry's *ex parte* declaration should be disclosed to Plaintiff or waives any applicable privilege, Southwest requests it be allowed the opportunity to withdraw the *ex parte* declaration before its public disclosure.

Ms. Hermosillo was responsible for either communication, they should not have to attend the Show Cause Hearing.

    **B.    As for the Other Business Employees, Southwest Requests They Not Be Required to Attend the Show Cause Hearing Because Their Communications with Counsel Regarding the Notice and Memorandum at Issue Are Privileged.**

Although Plaintiff's Motion to Compel contends "the purpose of the Show Cause hearing [is] to examine Southwest witnesses," the Court's order asks Southwest whether these individuals "should not be required to attend the hearing." *Compare* Doc. 416 at 3 *with* Doc. 423 at 3. The Court's order is silent on whether the witnesses will testify for what Southwest believe is an important reason. Based on the Court's *in camera* review of the documents (Doc. 422), and the rejection of Plaintiff's claims of waiver (at Doc. 411 at 12-15), the communications surrounding the content of (and decision to send) the Email Notice and the IIOTG Memorandum are protected by the attorney-client privilege. As a result, Southwest's witnesses cannot testify, nor be compelled to testify, about these privileged communications.

To be clear, Southwest can bring any unexcused witnesses to the Show Cause Hearing and will do so—without the need for subpoenas—if the Court orders their attendance. But Southwest submits their attendance should not be required for three reasons.

*First*, the Show Cause hearing should be limited to the remedies, if any, for Southwest's alleged contempt. This aligns with both parties' papers. In her initial motion, Ms. Carter wrote:

> ***The Court need not hold a show cause hearing to find Southwest in contempt*** for violations that are plain on the face of the "Recent Court Decision" notice and IIOTG Memo. ***The Court should hold a show cause hearing to determine whether further sanctions are warranted***, including imposing monetary and other sanctions the Court deems warranted on Southwest and those individual officials and counsel who intentionally caused the violations of the Court's orders.

Doc. 382 at 9 (emphasis supplied). Southwest then "agree[d] with [Ms.] Carter's statement[ ]" that "[t]he Court can determine Southwest's compliance with its Judgment based on the text of" the communications "and other undisputed actions that Southwest has taken to comply with the Judgment." Doc. 394 at 15. As stated before, Southwest stands by its arguments that its conduct was not contemptuous of the judgment. *See* Doc. 394 at 1-9; *accord* Doc. 419 at 2. On the current record, there is nothing more the Court needs to determine whether Southwest violated the judgment. All that remains for the Show Cause Hearing, then, is what remedies should be ordered if the Court finds Southwest in contempt.

*Second*, and relatedly, Southwest bears the burden of showing cause. But Southwest does not plan to call any witnesses to testify at the hearing because of the attorney-client privilege issues. If Southwest presents only argument, and not evidence, in its defense, Southwest's witnesses should not be subject to cross-examination by Plaintiff. *Cf.* FED. R. EVID. 611(b) ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility.").

*Third*, testimony from Southwest's witnesses "falls in the heartland of protected attorney-client communications." Doc. 419 at 4. As a result, there is very little (if any) substantive testimony that Southwest's witnesses could give about the Email Notice or IIOTG Memo. For starters, the Court has reviewed the *in camera* documents and determined the lion's share are privileged. *See* Doc. 422. Southwest's witnesses thus cannot be questioned about those privileged communications. Plus, whatever questions could be asked about the non-privileged documents, the answers will likely require attorney-client privileged communications, which privilege Southwest cannot waive due to its appellate litigation with Ms. Carter. Realizing the documents may be a dead end, Ms. Carter contends testimony is required about "the content of *all* the[ ]

5

communications (written and oral) related to Southwest's violation of the Court's orders." Doc. 416 at 3 (emphasis in original).  But these oral communications are privileged for the same reason as the documents—the drafting, approval, and transmission of the Email Notice and IIOTG Memorandum were part of an interactive process between Southwest's business unit employees, Southwest's in-house legal department, and Southwest's outside counsel.[3]

In short, Southwest respectfully submits that its business unit employees should not have to attend a hearing where they cannot testify substantively about either Southwest's alleged violations of the Court's judgment or Plaintiff's proposed remedies for the alleged contempt.  Nor does Plaintiff have any particular interest in or need for the employees' testimony.  The privilege issues will be thorny and could delay the completion of the Show Cause Hearing.  If the Court overrules Southwest's assertion of attorney-client privilege, Southwest would be required to seek a stay of the Show Cause Hearing to pursue interlocutory or other appellate relief.  *See, e.g.*, *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) ("[A]ppeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the district court's order." (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760-61 (D.C. Cir. 2014)); *In re EEOC*, 207 F. App'x 426, 430 (5th Cir. 2006) ("Assuming privilege exists, there is no adequate remedy on appeal for the revelation of this information.").

No matter its privilege objection, Southwest will have the lawyers—Mr. McKeeby, Mr. Morris, Mr. Maberry, Ms. Forbes, and Mr. Minchey—present at the hearing.  But for the reasons stated above, Southwest asks the Court to: (1) excuse the attendance of its business unit

---

[3]     Plaintiff argues that the existence of oral communications, instead of exclusively written ones, suggest some kind of "malfeasance."  Doc. 416 at 3.  But the sole evidence cited rebuts this point.  *Id.* at n. 2 (*citing* Doc. 412-4 at 6-8).  Mr. McKeeby asked the Union's counsel to call him; when the lawyers appeared to be unavailable, Mr. McKeeby wrote to them that "[t]he purpose of the call is to discuss the Union's willingness to issue a joint notice with Southwest…as contemplated by the Court's judgment."  Doc. 412-4 at App. 18 (SWA SHOW CAUSE 006).

employees in their entirety, or alternatively, (2) excuse Meggan Jones and Cindy Hermosillo due to their limited role in the communications.

Dated:  May 18, 2023.                    Respectfully submitted,

*/s/ Andrew B. Ryan*
Paulo B. McKeeby
State Bar No. 00784571
Brian K. Morris
State Bar No. 24108707
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
bmorris@reedsmith.com

Andrew B. Ryan
State Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
Phone: 214-347-7360
Facsimile: 855-354-4055
andy@ryanlawpartners.com

**ATTORNEYS FOR DEFENDANT SOUTHWEST AIRLINES CO.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 12th day of May, 2023.

*/s/ Andrew B. Ryan*
Andrew B. Ryan