# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S BRIEF IN RESPONSE TO DEFENDANT SOUTHWEST AIRLINES CO.'S MAY 12, 2023 BRIEF** |

Pursuant to the Court's May 16, 2023 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her attorneys, hereby files this Brief in Response to Defendant Southwest Airline Co.'s ("Southwest") May 12, 2023 "Brief Responding to Court Order."[2] Contrary to Southwest's pretense of its conversion on the road to Damascus, Southwest still fails to recognize the seriousness of violating the Court's December 5, 2022 Orders. Southwest refuses to back down from its violations, reminding the Court: "To be clear, Southwest stands by its earlier arguments that it has not contemptuously violated the Court's judgment."[3] Southwest admits only that it was wrong "to issue [a] statement [that it does not discriminate] *that could be construed* to convey—albeit *unintentionally*—that this was the Court's ruling."[4] Thus, Southwest only says that it was wrong to issue a statement that the Court, Carter, and its flight attendants misunderstood.[5] Contrary

---

[1] Doc. 421.
[2] Doc. 419.
[3] *Id*. at 2 (citing Doc. 394 at 1-6).
[4] *Id*. at 2 (emphasis added).

1

to Southwest's representations that its actions were fatigue-induced inadvertence caused by the stress of the holiday travel season,[6] Southwest's actions and communications show that it intentionally violated the Court's Order.

Given Southwest's continued defense of its violations, the Court should consider remedies appropriate to coercing compliance and penalizing Southwest, as discussed herein. Southwest proposes that Carter and the Court make a trade: It will "voluntarily agree[]" to re-issue a corrected Recent Court Decision notice and pay Carter attorneys' fees, if the Court does not make a contempt finding.[7] To be sure, Southwest agrees to self-imposed sanctions, but its proposals do not remedy its misconduct. To remedy the discriminatory effects of Southwest's Inflight Info On The Go ("IIOTG") Memo (not even mentioned in Southwest's proposal), vindicate the Court's legal authority, and coerce compliance, the Court should award Carter *all* requested relief, including monetary and other sanctions it deems warranted, including sanctions against Southwest and responsible counsel and officials for intentionally violating the Court's orders.[8]

**I. Southwest refuses to remedy its IIOTG Memo's discrimination against Carter's exercise of RLA-protected rights and its discriminatory restraint and coercion of flight attendants' Title VII freedoms of religious expression.**

Southwest refuses to remedy the IIOTG Memo's[9] discriminatory effects on flight attendants' religious practices and beliefs and against Carter's RLA-protected rights.[10] Despite the Court's prior admonitions against Southwest's discriminatory conduct, Southwest still insists that it did nothing wrong with the IIOTG Memo, and still "fail[s] to appreciate the problem with [its] conduct

---

[6] *Id*. at 4.
[7] *Id*. at 4-5.
[8] *Id*. at 17-18.
[9] Doc. 383-3, p.2
[10] Doc. 382, pp.9-16; Doc. 399, pp.7-9.

involving Carter."[11] Southwest's omission of a remedy for its discriminatory IIOTG Memo rewards its efforts to mislead flight attendants. Furthermore, Southwest's proposal offers no deterrent for future discrimination other than its offer to pay attorneys' fees, a small price for Southwest to pay in exchange for the IIOTG Memo's restraint on flight attendants' union-related speech and religious expression.

Moreover, Southwest has demonstrated that its discriminatory acts are likely to continue.[12] As the IIOTG Memo demonstrates, Southwest's "eyes aren't just on Carter."[13] The IIOTG Memo shows that Southwest "tripled down" on its efforts to silence flight attendants' speech since the jury's verdict.[14] Consistent with Carter's previous requests, the Court should order Southwest to issue a corrective notice that remedies the IIOTG Memo's discriminatory effects on Carter's and other flight attendants' rights, and that clearly explains to flight attendants how Southwest misinformed them and misrepresented the Court's December 5, 2022 Order.[15]

Southwest's steadfast refusal to remedy the IIOTG Memo's discriminatory effects (e.g., telling flight attendants that their behavior must meet Southwest's view of what is courteous and conform to its social media policies) underscores Southwest's continuing resistance to Title VII compliance (despite this Court's warnings), its ongoing contempt for the Court's Orders, and Southwest's determination to use its social media policies to restrain flight attendants' Title VII religious

---

[11] Doc. 374, p.28.
[12] *See infra* at 5-6, 7-9.
[13] Doc. 374, p.28.
[14] *Id*.
[15] *See e.g.*, Doc. 382, pp.9-16; Doc. 399, pp.9-10. Southwest should re-issue a corrected Recent Court Decision notice as Carter requested. Doc. 382, pp.14-15. The IIOTG Memo corrective notice should be a separate notice from that remedying the violations in the Recent Court Decision notice. Southwest originally sent two separate notices, and the IIOTG Memo caused separate and independent discriminatory effects.

liberties and RLA-protected speech.[16] "The public rights that the [] court orders sought to protect are important measures of the [sanctions] remedy."[17] Since Southwest still wants to treat its social media policies as if they trump federal law, the Court should require Southwest to revise its social media policies to expressly recognize that it cannot apply them in a way that violates employees' RLA and Title VII protected rights. Not only should the Court order Southwest's counsel and officials to attend religious-liberty training, but, the Court should also order Southwest to revise its social media policy to include in the policy itself, language expressly stating that Southwest cannot use its social media policy to discriminate against flight attendants' Title VII and RLA rights by targeting religious or union-related speech.

## II. The Court should decline Southwest's invitation to conduct in-person, *ex parte* interviews with Southwest's counsel regarding the company's *in camera* communications.

The Court should decline Southwest's invitation to have *ex parte* discussions "to address *any* questions about the privileged *in camera* communications."[18] Instead, the Court has ruled, if Carter's counsel questions witnesses whose answers would reveal privilege, the Court can conduct such examination *in camera*. But if the Court concludes thereafter that attorney-client privilege *does not* apply, the Court should permit Carter's counsel to examine such witnesses. "[T]he reliability of testimonial evidence is best tested 'in the crucible of cross examination.'"[19]

---

[16] Doc. 374, p.25.
[17] *Am. Airlines v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citations omitted).
[18] Doc. 419, p.4 (emphasis added) (citation omitted).
[19] *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 WL 8267444, at *2 (S.D. Fla. June 1, 2021) (quoting *Crawford v. Washington*, 541 U.S. 36, 61-62 (2004)).

### III. Southwest's justifications for its violations of the Court's December 5, 2022 Order are belied by its prior actions.

**A. Southwest's representation that its Court Order violations were inadvertent is false.**

The Court should award Carter all requested relief and additional sanctions it deems warranted because Southwest's responses and communications undermine its latest justifications for violating the Court's December 5, 2022 Order. Contrary to Southwest's representations in its May 12 Brief,[20] Southwest's responses and correspondence show that its "does not discriminate" notice to employees was intentional and did not just *accidentally* "ma[k]e its way" into the Recent Court Decision notice.[21] Southwest's December 28, 2022 response letter demonstrates that its actions were intentional when it asserted, "The Judgment did not say that Southwest had to exactly follow the language used by Judge Starr, and Southwest did not interpret the order in that manner."[22]

Contrary to Southwest's characterizations, Southwest did not inadvertently insert the word "does" in place of "may," and those words did not just insinuate themselves into Southwest's notice.[23] Southwest admits that it worked hard over the course of two weeks to complete the "huge task" of making sure the Recent Court Decision notice complied with the Court's Order. But all Southwest had to do was copy and paste the Court's language, just as McKeeby had done in his email to counsel for Transport Workers Union of America, Local 556.[24] Southwest's diversion of so many resources shows that the company intently scrutinized and purposefully selected the precise language it wanted to use. Southwest's purportedly rigorous scrutiny of its Notice also undermines its representations that only now can it see how someone might misunderstand what

---

[20] Doc. 419, pp.2-4.
[21] *Id*. at p.4.
[22] Doc. 383-6, p.3; Doc. 411, pp.20-21.
[23] Doc. 419, p.4.
[24] Doc. 412-4, p.7 (App.18) (McKeeby 12/9/22 1:11 PM email to Cloutman and Greenfield).

it did, and that it would have never intentionally violated the Court's Order. Complying with the Court's order could only be a "huge undertaking" if it was trying to evade the Court's requirements.[25] Southwest did not need "five lawyers, with over 100 years' experience practicing law"[26] torturing the Court Order's clear and succinct text to say the opposite of the Court's Order.

### B. Southwest's continuing refusal to acknowledge that it violated the Court's Orders demonstrates its May 12 proposed remedies are insufficient.

Southwest's proposed remedies will not coerce its compliance with the Court's December 5, 2022 Orders, penalize Southwest for its violations, or vindicate the Court's authority. When Southwest asserts that it stands by its arguments it openly states that it will continue to "adhere to [its] policy of [disobedience and] defiance."[27] Southwest "attempt[ed] to repudiate and override" the Court injunctions as "instrument[s] of lawful government in the very situation in which governmental action was indispensable."[28] Based on Southwest's intentional and willful actions, and its continued insistence that it did not violate Court Orders, the Court should grant the Contempt Motion's requests for monetary and other sanctions,[29] and order Southwest, as well as its responsible counsel and officials, to pay civil and punitive fines to coerce their compliance with the Court Order and penalize them for their violations.

The Court can sanction Southwest, responsible officials, and counsel with civil and punitive fines. "To give a court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give a court the power to grant a remedy without

---

[25] Doc. 419, p.3.
[26] *Id.* at 2-3.
[27] *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947).
[28] *Id.*
[29] Doc. 382, pp.16-18.

6

effective means to enforce it."[30] "Common sense would recognize that conduct can amount to both civil and criminal contempt. The same acts may justify … coercive and to punitive measures."[31]

The Court should impose civil contempt fines to coerce Southwest into compliance with the Court's order.[32] The Court should also impose retrospective, punitive sanctions for Southwest's "completed act of disobedience" to "vindicate the authority of the court."[33] "[T]he power of courts to punish for contempt[] is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law."[34] When "imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future."[35] The Court "must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."[36]

Notwithstanding Southwest's carefully worded non-apology, it refuses to recognize that anything it did violated the Court's December 5, 2022 Order. Southwest's dubious "death bed

---

[30] *Am. Airlines v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 939 (N.D. Tex. 1999).
[31] *United Mine Workers of Am.*, 330 U.S. at 298-99 (footnote omitted). *See also id*. at 299 n.70 ("It may not be always easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.") (citations and internal punctuation omitted).
[32] *Id.* at 303-304; *Am. Airlines*, 228 F.3d at 585.
[33] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994).
[34] *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911) and *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).
[35] *United Mine Workers of Am.*, 330 U.S. at 303.
[36] *Id.* at 304 (footnote and citation omitted); *see also Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

conversion" comes less than two weeks before the Court's May 23 Show Cause Hearing. As this Court previously observed, Southwest's "protestations of repentance and reform timed to … blunt the force of a lawsuit offer insufficient assurance that the practice sought to be enjoined will not be repeated."[37] Southwest's gambit, made after a substantial history of noncompliance,[38] is nothing more than a last ditch effort to escape sanctions. Southwest gives no reassurances that it respects the seriousness of the Court's Orders or authority, or that it will comply in the future.

Prior to these contempt proceedings, the Court's December 5, 2022 opinion observed that Southwest's actions demonstrated a continuing threat of future non-compliance, and warned Southwest about continued noncompliance.[39] Despite the Court's warnings, Southwest continued to engage in gamesmanship right up to the present, where it attempted to make an end run around the Court's April 18 Order to file its May 12 Brief.[40] When Carter confronted Southwest with the misleading nature of its notice prior to filing this motion, giving it an opportunity to see the error of its ways,[41] Southwest "strongly disagree[d]" and called its departure from the Court's language "a distinction without a difference."[42] Southwest vehemently asserted that it did not have to use the Court's language, and defended its right to use the language it wanted, all of which belies Southwest's May 12 characterizations that its actions were just an accident.[43]

Then, in its response to Carter's Contempt Motion, Southwest again had an opportunity to correct its behavior but it instead argued that its actions were appropriate, and asserted that the

---

[37] Doc. 374, p.25.
[38] Contrary to Southwest's characterization that it "takes pride in its long-standing respect for the justice system," (Doc. 419, p.3) the Court has repeatedly warned Southwest about its continuing discrimination and even sanctioned it.
[39] Doc. 374, p.28.
[40] Doc. 420, pp.1-3.
[41] Doc. 383-1.
[42] Doc. 383-6, p.2, 3.
[43] *Id*. at 3; Doc. 419, pp.3-4.

Court should deny all of Carter's requested relief.[44] Southwest never offered any hint of what it now characterizes as fatigue-induced inadvertence.[45] Even now, Southwest merely "*acknowledges the possibility* that someone could read the sentence [in its Recent Court Decision notice] by itself and have the impression that this Court ruled that Southwest had not discriminated against employees[.]"[46] Notably, Southwest never admits that it intentionally failed to comply with the Court's Order. Southwest makes it "clear" that it "stands by its earlier arguments that it has not contemptuously violated the Court's judgment."[47]

Southwest could have revised its Recent Court Decision notice and IIOTG Memo before Carter's motion, and had months thereafter to "take to heart" Carter's objections.[48] Only now, less than two weeks before the Show Cause Hearing does Southwest purport to "take[] the allegation of contempt seriously."[49] Southwest's time to evaluate its violations "with fresh eyes and open minds"[50] was not these two weeks before the Show Cause Hearing, but *at the latest*, when Carter made her objections known on December 22, 2022, prior to filing the contempt motions.

When a court finds contempt, it "must, in fixing the amount of a fine to be imposed as a punishment [i.e., criminal contempt liability] or as a means of securing future compliance [i.e., civil contempt liability], consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant."[51] Not only should Southwest separately have to pay attorneys' fees and costs as it proposed, but it should also have to pay civil or punitive

---

[44] Doc. 394, pp.6, 9-10, 18-21.
[45] Doc. 383-6.
[46] Doc. 419, p.2.
[47] *Id*. (citing Doc. 394 at 1-6).
[48] Doc. 419, p.2.
[49] *Id*.
[50] *Id*.
[51] *United Mine Workers of Am.*, 330 U.S. at 304; *see also Lamar*, 918 F.2d at 567.

sanctions to the Court.[52] While the discretion is the Court's, Carter suggests a monetary fine against Southwest in the high six figures given that Southwest is a billion-dollar company[53] and such an amount would be the minimum necessary to deter Southwest from future violations. As to any individuals the Court finds responsible, Carter suggests a monetary fine commensurate with what the evidence suggests would discourage such behavior in the future. To the extent that Carter ascertains further evidence of Southwest's willfulness at the hearing, she asks the Court's leave to request additional appropriate sanctions.

Dated: May 19, 2023                          Respectfully submitted,


/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

---

[52] Doc. 382, p.16, 16 n.50.
[53] *See* Trial Exhibit 138 (detailing Southwest's financial worth).

**Certificate of Service**

I hereby certify that on May 19, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Matthew B. Gilliam