# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>Defendants. | Civil Case No. 3:17-cv-02278-X |

## SOUTHWEST AIRLINES CO.'S BRIEF RESPONDING TO SHOW CAUSE ORDER (DOC. 423)

US_ACTIVE-172899205.1

Southwest should not have to send several of its attorneys and employees "to religious-liberty training" for their role in drafting and sending the Email Notice and IIOTG Memo. Doc. 423 at 2-3. Southwest respectfully disagrees with the jury's and Court's conclusion that it violated Title VII and plans to seek Fifth Circuit review. The Court should not sanction Southwest for defending itself in court, and if it nonetheless finds Southwest in contempt, should stay the order pending appellate review.

### A. Religious-Liberty Training is Not an Appropriate Remedy for Southwest's Use of "Does Not" Rather than "May Not."

The Court is considering requiring religious-liberty training in part because Southwest emailed flight attendants that it "does not discriminate" rather than that it "may not discriminate." Doc. 423 at 1-3. Religious-liberty training is not an appropriate remedy for that email.

A contempt remedy must be "'the least possible power adequate to the end proposed,'" so "the court must try [a] less restrictive measure first," if "there is a reasonable probability that a lesser sanction will have the desired effect." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (internal citation omitted). Civil contempt must either secure a party's compliance with a court order or compensate for losses sustained because of that non-compliance. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000); *see FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995) (citing *Martin v. Trinity Indus.*, 959 F.2d 45, 47 (5th Cir. 1992)). A civil contempt remedy cannot seek to "punish disobedience" or otherwise "vindicate the court's authority." 15B Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. JURIS. § 3917 (2d. ed. April 2023 update). Importantly, "a judgment of civil contempt is conditional, and may be lifted if the contemnor purges himself of the contempt," *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976), "by doing what he had previously refused to do." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911) (citation omitted).

2

Under this well-established standard, ordering religious-liberty training would be an inappropriate remedy for the alleged civil contempt. *First*, because the Court's judgment did not order Southwest to attend religious-liberty training, requiring that training now will not secure compliance with the judgment. *Second*, religious-liberty training would not compensate Ms. Carter for any loss. She has asserted attorneys' fees as her only loss, which Southwest has agreed to pay. *Third*, and most importantly, any contempt should be lifted if Southwest complies with the Court's orders. Although Southwest contends the Email Notice still substantially complied with the judgment, Doc. 394 at 1-6, Southwest has already offered to purge this alleged contempt by providing a corrective notice replacing the "does not discriminate" language with "may not discriminate." Put another way, there is no conduct for religious-liberty training to remedy. By issuing the corrective notice, Southwest would no longer be in alleged contempt, confirming that any remedy beyond issuance of the corrective notice goes too far.

Civil contempt is an awesome "power" and "one that should be used sparingly," *Gompers*, 221 U.S. at 450, by awarding only the "least severe sanction." *Addington v. Addington*, 77 Fed. Appx. 282, 284 (5th Cir. 2003) (unpublished). Here, the least severe sanctions are the two Southwest has already agreed to provide—the corrective notice and payment of Ms. Carter's fees for the contempt proceedings. Thus, even if the Court enters a contempt finding, it should not order religious-liberty training.

**B.     There Is No Contempt to Remedy as to the IIOTG Memo.**

The Court has suggested the IIOTG Memo failed to "compl[y] with the Court's injunctions in this case," Doc. 423 at 3, but does not identify which injunction was violated. And nothing in the Court's judgment prohibited Southwest from communicating its position on the verdict and judgment in Ms. Carter's case to its employees. Doc. 394 at 9-12. Thus, an order of religious-liberty training or other sanctions would be improper because a contempt order must rest on a

3

finding that Southwest "failed to comply with the court's order." *LeGrand*, 43 F.3d at 170. The Court thus "**ENJOIN[ED]**" Southwest "from discriminating against Southwest flight attendants," including Ms. Carter. Doc. 375 at 2, ¶¶ 5-6. Religious-liberty training or sanctions should therefore be considered only if the communications discriminated against Ms. Carter or other Flight Attendants, which they did not.

Discrimination requires "an adverse employment action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). The IIOTG Memo was not an adverse employment action because it did not affect Ms. Carter's "job duties, compensation or benefits." *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (internal quotation & citation omitted). The IIOTG Memo did not cost Ms. Carter one day at work or one dollar of pay. Ms. Carter also has not alleged the IIOTG Memo caused her to face any "hostility from fellow employees" or suffer any "anxiety," especially not the "permeat[ing] discrimination, intimidation, ridicule, and insult" required to prove harassment or a hostile work environment. *Davila v. White*, 61 Fed. Appx. 918, *1 (5th Cir. 2003).

The IIOTG Memo also did not discriminate against Ms. Carter's sincerely held religious beliefs.[1] The IIOTG Memo does not mention Ms. Carter's religious beliefs. It instead described Southwest's "belie[f]" and "perce[ption]" that the way Ms. Carter expressed herself was "inappropriate." Doc. 383-2 at App. 7. Even then, the IIOTG memo reiterated that the views of all Southwest employees should be "valued"—"regardless of our differing opinions" or "individual ideologies" for reasons of civility that go "[b]eyond [Southwest's] policies." *Id*. This message mirrors one that the Court already gave to Southwest: that no "important topic[ ] of civil

---

[1] Southwest objects strongly to the Court's characterization that the IIOTG Memo "derided" or "denigrate[d]" Ms. Carter's religious beliefs. Doc. 423 at 2. Southwest never disputed the sincerity of Ms. Carter's religious beliefs or ridiculed her views. Nor would it. Thousands of other Southwest employees no doubt share Ms. Carter's religious views—including some of the lawyers and business executives Plaintiff now seeks to hold in contempt.

4

discourse … should be out-of-bounds for upstanding Flight Attendants." Doc. 374 at 13, n.52. As a result, there is no basis for religious-liberty training or sanctions based on the IIOTG Memo.

### C. Southwest's Actions Make Sanctions Unnecessary Because Southwest Understands that It May Not Discriminate.

The Court's order expresses concern that Southwest thinks that "[f]ederal law trumps its policies." Doc. 423 at 2. Southwest respectfully submits that it does not believe that its policies supersede federal law. Indeed, Southwest's policies are based on and mirror federal anti-discrimination laws, and Southwest is firmly committed to following federal law. Southwest has never argued, and would not argue, that its policies allow discrimination that federal law forbids. To the contrary, Southwest has long committed "to abid[e] by all applicable [anti-discrimination] laws." App. 006.

Even though Southwest did not contemptuously violate the judgment, Southwest offered corrective actions to obviate the need for a contempt order by this Court. Doc. 419 at 4-5. Southwest showed it heard the Court's message that federal law trumps its policies by agreeing to "make things right" on the Email Notice. Doc. 419 at 4-5. Southwest's anti-discrimination policy says that religious discrimination "will not be tolerated," App. 009, and an acknowledgment given to all new Southwest employees affirms that "Southwest Airlines complies with this policy" prohibiting religious discrimination. App. 011. Furthermore, beyond the injunctive relief ordered by the Court, following the jury's verdict, Southwest (a) revised its accommodation policy to make it even more clear to employees that they may request accommodations for religious issues, and (b) added an entire section to the policy emphasizing that religious discrimination is prohibited.[2] Southwest also revised its off duty conduct policy to note that conduct supporting or opposing a

---

[2] *See* App. 015.

union is generally protected, with limited exceptions noted in this Court's jury instructions.[3] Southwest also added a discussion of religious accommodation to its training for all leaders in the company, reminding leaders that employees' religious beliefs should be accommodated in the same manner as disabilities. App. 002, ¶ 7. Southwest would not have taken any of these corrective actions if it believed that its policies trumped federal law, or if it did not understand the federal laws governing the exercise of religious beliefs in the workplace. To the contrary, these actions show that Southwest heard the Court's message loud and clear and has attempted to better align and further clarify its policies to protect employees' religious freedoms.

### D. Southwest Respectfully Disagrees With the Jury's and Court's Conclusion, on Which These Contempt Proceedings Rest, that it Violated Title VII.

Southwest also submits that the Court may not rely on Southwest's disagreement with the jury's verdict and the Court's legal rulings to hold Southwest in contempt or ordering religious-liberty training or other sanction. As explained, Southwest understands it may not discriminate and that its policies do not trump federal law. But Southwest respectfully disagrees that its termination of Ms. Carter violated federal law in the first place. That legal disagreement about the precise operation of federal law cannot support a finding of contempt; the Court may not punish Southwest, its employees, or its counsel for defending themselves in Court. Southwest plans to challenge on appeal the jury's verdict and this Court's rulings that it violated Title VII. If the Court nonetheless finds Southwest or its employees in contempt, Southwest will respectfully request that the Court stay its contempt order and any remedies or sanctions pending review by the Fifth Circuit.

---

[3] *See* App. 013.

Dated: May 19, 2023.

Respectfully submitted,

*/s/ Andrew B. Ryan*
Paulo B. McKeeby
State Bar No. 00784571
Brian K. Morris
State Bar No. 24108707
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
Phone: 469-680-4200
Facsimile: 469-680-4299
pmckeeby@reedsmith.com
bmorris@reedsmith.com

Andrew B. Ryan
State Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
Phone: 214-347-7360
Facsimile: 855-354-4055
andy@ryanlawpartners.com

**ATTORNEYS FOR DEFENDANT**
**SOUTHWEST AIRLINES CO.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 19th day of May, 2023.

*/s/ Andrew B. Ryan*
Andrew B. Ryan