UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>  Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>  Defendants. | Civil Case No. 3:17-cv-02278-X<br><br>**PLAINTIFF CHARLENE CARTER'S BRIEF IN RESPONSE TO DEFENDANT SOUTHWEST AIRLINES CO.'S BRIEF REGARDING RELIGIOUS LIBERTY TRAINING** |

Pursuant to the Court's May 18, 2023 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her attorneys, hereby files this Brief in Response to Defendant Southwest Airline Co.'s ("Southwest") Brief Regarding Religious Liberty Training."[2] The Court should order religious liberty training because it is both necessary and permissible to coerce Southwest's compliance with its orders to not discriminate or fail to reasonably accommodate,[3] and to remedy Southwest's Inflight Information On The Go ("IIOTG") Memo's discriminatory effects. The Court should also deny Southwest's request to stay its contempt orders or sanctions pending appeal because Southwest has a legal obligation to comply with this Court's orders while they are in effect even if they are later reversed.

---

[1] Doc. 427.
[2] Doc. 429.
[3] Doc. 375, p.2 ¶¶5-7.

1

### I. The Court should order religious liberty training because it is both necessary and permissible to coerce Southwest's compliance with its orders not to discriminate or fail to reasonably accommodate, and to remedy the IIOTG Memo's discriminatory effects.

Contrary to Southwest's assertions,[4] the Court should order Southwest's counsel and officials to attend religious liberty training because it is a necessary and appropriate remedy to coerce Southwest's compliance with the Court's order that Southwest may not discriminate.[5] "Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process."[6] "[T]he proper aim of judicial sanctions for civil contempt is 'full remedial relief,' [and] that such sanctions should be 'adapted to the particular circumstances of each case[.]'"[7] When a defendant violates a court Order, the court can fashion appropriate relief to coerce compliance.[8] The public rights that a court order seeks to protect are important measures of the remedy.[9] The Court's civil contempt power "is broad and pragmatic, reaching where it must—consistent with prudent court management and due process—to prevent insults, oppression, and experimentation with disobedience of the law."[10]

Religious liberty training is an appropriate civil (and non-punitive) sanction that coerces Southwest to comply with the Court's injunctions that it not discriminate or fail to accommodate flight attendants' religious beliefs,[11] and is necessary because Southwest violated those injunctions with its IIOTG Memo. Religious liberty training is also necessary here to protect flight attendants' Title VII rights and help stop Southwest's counsel and officials from discriminating against flight

---

[4] Doc. 429
[5] Doc. 375, p.2 ¶¶5-7.
[6] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citation omitted).
[7] *Fla. Steel. Corp. v. NLRB*, 648 F.2d 233, 239 (5th Cir. 1981) (internal citations omitted).
[8] *See, e.g., United States v. Lynd*, 349 F.2d 790, 793 (5th Cir. 1965).
[9] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citations omitted).
[10] *In re Bradley*, 588 F.3d 254, 265-66.
[11] Doc. 375, p.2, ¶5-6.

attendants' religious freedoms. Southwest vehemently denies its IIOTG Memo's discriminatory effects and stands by its noncompliance.[12] That underscores religious liberty training's importance in coercing Southwest's compliance with the Court's injunctions not to "discriminat[e] against Southwest flight attendants for their religious practices and beliefs"[13] and not to "fail[] to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances."[14]

Astonishingly, Southwest asserts that it *does not even know* which injunctions the Southwest's IIOTG Memo violated.[15] Carter's Contempt Motion specifically identified the injunctions at issue.[16] Southwest's argument proves why Southwest's counsel should attend religious liberty training to help coerce future compliance with the Court's injunctions. Southwest's defiance concerning its IIOTG Memo's discriminatory effects[17] and preemptive repudiation of its duty to accommodate religious beliefs concerning abortion[18] also show why religious liberty training is necessary.

Contrary to Southwest's objections,[19] the Court's judgment did not have to specifically order Southwest to attend religious-liberty training for it to be an appropriate sanction to coerce compliance. District courts are "entitled to a degree of flexibility in vindicating [their] authority

---

[12] Doc 429, pp.3-5; Doc. 419, p.2; Doc. 428, p.6 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947)).
[13] Doc. 375, p.2, ¶5.
[14] *Id*. at p.2, ¶6.
[15] Doc. 429, pp.3-4. Southwest's repeated characterization that Carter seeks sanctions regarding the IIOTG Memo to prevent Southwest from communicating its position on the verdict and judgment is incorrect. Doc. 429, p.3. As Carter has explained, this misstates the purpose of imposing sanctions for the IIOTG Memo. Doc. 399, p.6.
[16] Doc. 382, pp.6-7, 13.
[17] Doc. 429, pp.3-4.
[18] *See infra* at 7-9.
[19] Doc. 429, p.3.

against actions that … violate the reasonably understood terms of the order."[20] "It does not lie in [contemnors'] mouths to say that they have an immunity from civil contempt because *the plan or scheme which they adopted* was not specifically enjoined."[21] The Court clearly ordered Southwest not to discriminate against flight attendants' religious beliefs, but that is what Southwest's IIOTG Memo did. While Southwest adopted a particular scheme for discrimination and refusal to accommodate that was not specifically contemplated, that is precisely the conduct that the Court enjoined. Southwest's "record of continuing and persistent violations" shows that the Court's injunctions not to discriminate and to accommodate are "wholly warranted."[22]

Contrary to Southwest's assertions, Southwest "contemptuously violate[d] the [Court's] judgment"[23] by telling flight attendants in its Recent Court Decision notice that it "does not discriminate" and by discriminating against Carter and other flight attendants in its IIOTG Memo.[24] Southwest's assertion glosses over the fact that its violations are contempt even if they are not intentional and willful.[25] Moreover, Southwest *did intentionally and willfully violate the Court's Orders* because, as Carter showed, Southwest purposefully crafted its "does not

---

[20] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013); *Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*, No. 3:21-CV-01974-X, 2022 WL 4538466, at *3 (N.D. Tex. Sept. 28, 2022).
[21] *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949) (emphasis added); *Bisous Bisous, L.L.C. v. The CLE Group, L.L.C.*, Civil Action No. 3:21-CV-1614-B, 2021 WL 4219707, *2 (N.D. Tex. Sept. 16, 2021) ("A party is under an obligation to comply with a court order in all 'meaningful respects' to achieve substantial and diligent compliance.") (citations omitted).
[22] *See McComb*, 336 U.S. at 192.
[23] Doc. 429, p.5.
[24] Doc. 382, pp.6-13; Doc. 399, pp.2-9.
[25] *See McComb*, 336 U.S. at 191; *Am. Airlines, Inc.*, 53 F. Supp. 2d at 939 ("Willfulness is not an element of civil contempt."). *See also* Doc. 382, p.6 (stating that respondent acts in contempt if it failed to comply with the Court's order); *id*. at p.6 n.4.

discriminate" language because it did not want to follow what the Court ordered,[26] and Southwest drafted the IIOTG Memo to silence flight attendants' religious expression.[27]

Contrary to Southwest's characterizations,[28] re-issuing the Recent Court Decision notice will not remedy its IIOTG Memo violations of the Court's injunctions against religious discrimination and failure to accommodate.[29] Southwest's purported offer "to make things right"[30] does not address the IIOTG Memo's violations. And Southwest flatly rejects that it has done anything wrong in its IIOTG Memo.[31] Thus, religious liberty training is necessary to coerce compliance with the Court's discrimination and accommodation orders. While Southwest also complains that religious liberty training is a non-compensatory civil sanction,[32] that is immaterial. As Southwest acknowledges, the Court can also fashion civil sanction remedies to coerce compliance.[33]

---

[26] Doc. 429, pp.5-6; Doc. 411, pp.16-17, 19-22.
[27] Doc. 382, pp.9-13; Doc. 399, pp.5-9.
[28] Doc. 429, p.3.
[29] Southwest incorrectly asserts that once Southwest complies with the Court's order (by which it presumably means reissuing its Recent Court Decision notice) "any contempt should be lifted" and there will be no contempt for religious liberty training to remedy. Doc. 429, p.3. Even if Southwest reissues a corrected Recent Court Decision notice that will not purge the effects of misinforming and misleading flight attendants when it said that the Court ordered it to tell them that Southwest does not discriminate. Southwest offers to do what the Court ordered in the first place, but it does not remedy Southwest's misrepresentation to flight attendants that "the Court ordered us to inform [flight attendants] that Southwest does not discriminate." Not only is it necessary for Southwest to do what it should have done in the first place, purging effects of its misrepresentations also requires Southwest to tell flight attendants that it misinformed them when it said it does not discriminate. Thus, Carter's corrective notices are necessary to purge the effects of those misrepresentations. Doc. 382, pp.14-17. Furthermore, Southwest still maintains that its Recent Court Decision notice "substantially complied with the judgment." Doc. 429, p.3. But Carter showed that it did not and did the opposite of what the Court ordered. Doc. 399, pp.4-5.
[30] Doc. 429, p.5.
[31] *Id*. at pp.3-5.
[32] *Id*. at p.3.
[33] *Id*. The Court's order expressly states that it is considering the remedy to coerce compliance, and Southwest acknowledges that civil sanctions coercing compliance are permissible. Doc. 423, pp.2-3; Doc. 429, p.2 (citing *Am. Airlines, Inc.*, 228 F.3d at 585) (other citations omitted). Contrary to Southwest's suggestions, requiring its counsel and managers to attend religious liberty training

Contrary to Southwest's representations, Fifth Circuit precedent does not require courts to award "the least severe sanctions."[34] Southwest misstates Fifth Circuit precedent, which considers in its review of district court sanctions awards, among other factors, the district court's findings as to whether "sanctions are the least severe sanctions *adequate to accomplish the purpose for which the sanction was imposed*."[35] Southwest's religious discrimination and disobedience towards this Court's Orders here is persistent and unapologetic. When assessing the appropriate remedy, the Court must consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."[36] As the Court considers what sanctions are necessary to purge the IIOTG Memo's discriminatory effects and coerce Southwest's compliance with the Court's injunctions against discrimination and failure to accommodate, it can and should also consider Southwest's repeated violations of this Court's orders, its "tripling down" on discrimination against Carter and other flight attendants,[37] and its steadfast refusal to stand down from its conduct.

---

does not "punish" Southwest (Doc. 429, p.6); it coerces compliance with the Court's non-discrimination and accommodation orders.

[34] Doc. 429, p.3.

[35] *Topalian v. Ehrman*, 3 F.3d 931, 938 (5th Cir. 1993) (emphasis added). The Fifth Circuit also considered (1) what conduct is being punished or is sought to be deterred by the sanction, (2) what expenses or costs were caused by the violation of the rule, and (3) were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention. Notably, the Fifth Circuit has also recognized that "the district court should carefully choose sanctions that foster the appropriate purpose of the rule, depending on the parties, the violation, and the nature of the case." *Id*. at 936-37.

[36] *United Mine Workers*, 330 U.S. at 304; *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).

[37] Doc. 382, pp.10-11; Doc. 428, pp.3-4.

## II. Southwest's IIOTG Memo violated the Court's order not to discriminate.

Religious liberty training is an appropriate sanction because Southwest's IIOTG Memo violated the Court's non-discrimination and accommodation injunctions[38] by denigrating Carter's religious beliefs and practices concerning abortion and conveying that flight attendants' religious expression on social media concerning abortion would receive disparate, unfavorable treatment (i.e., punishment up to and including termination) under the social media policies.

Contrary to Southwest's characterizations,[39] treating flight attendants less favorably under the company's social media policies because of their religious beliefs and practices is unlawful religious discrimination, regardless of whether the employee suffered an adverse employment action (e.g., termination or demotion). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, *or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion*."[40] Religious discrimination means "treat[ing] a particular person less favorably than others because of [religion]."[41] While courts are divided, and the Fifth Circuit is currently considering *en banc*, the question of whether an employee must show an ultimate employment action to prevail in a Title VII claim,[42] that question does not decide the issue here. The Court ordered Southwest not to discriminate against flight attendants for, and to reasonably

---

[38] Doc. 375, p.2 ¶¶5-7.
[39] Doc 429, p.4. Southwest suggests that the IIOTG Memo did not violate the Court's Order not to discriminate because it was not "an adverse employment action" affecting Carter's "job duties, compensation, or benefits." Doc. 429, p.4 (citations omitted).
[40] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (cleaned up) (emphasis added).
[41] 42 U.S.C. § 2000e-2(a)(1) (emphasis added).
[42] *See Hamilton v. Dallas Cnty.,* 42 F.4th 550, 555 (5th Cir. 2022), *reh'g en banc granted, opinion vacated,* 50 F.4th 1216 (5th Cir. 2022). Oral arguments in the *en banc* rehearing took place on January 24, 2023.

accommodate, their religious practices and beliefs.[43] When Southwest conveyed that protected religious beliefs and practices crossed the boundaries of acceptable behavior and violated its social media policies, it announced an intention to continue the same religious discrimination that the jury found unlawful and the Court enjoined. Even where a court would not have authority to award damages under a discrimination statute, it still has the power to sanction contempt in violation of its orders.[44]

Southwest's IIOTG Memo invokes its social media rules, which impose terms, conditions, and restrictions on flight attendants' privileges of employment, declaring that flight attendants "must all adhere to" the policies. Carter showed that the IIOTG Memo discriminated against Carter's and other flight attendants' religious practices and beliefs, including those expressed on social media and concerning abortion, less favorably with respect to its social media policy enforcement.[45] Carter also showed how the IIOTG Memo exhibits discriminatory animus towards those flight attendants who would exercise their religious beliefs as Carter did and thereby chilled and restrained their Title VII-protected religious beliefs and expression.[46] Southwest conveyed that it will enforce its social media policies to discipline or fire any flight attendants who exercise their Title VII rights in the same manner as Carter.[47] Carter further showed that the IIOTG Memo signaled Southwest's preemptive refusal to accommodate flight attendants' sincerely held religious beliefs and practices expressed on social media.[48] Southwest also admits it issued its IIOTG Memo to silence employees' religious expression and other speech.[49]

---

[43] Doc. 375, p.2, ¶¶ 5-6.
[44] *Am. Airlines Inc.*, 228 F.3d at 585-86. *See also supra* at 3-4.
[45] Doc. 382, pp.9-10; Doc. 383-3, p.2.
[46] Doc. 382, p.10; Doc. 383-3, p.2.
[47] Doc. 382, p.10; Doc. 383-3, p.2.
[48] *Id*.
[49] Doc. 412-4, p.35 (App.46) (SWA Show Cause 34); Doc. 411, p.16.

Southwest "objects strongly" that it never denigrated Carter's religious beliefs and practices,[50] but the fact is that it called Carter's religious beliefs concerning abortion "inappropriate, harassing, offensive, repulsive and beyond the bounds of civility" in a company-wide communication to all 17,000 flight attendants.[51] While Southwest argues that the IIOTG Memo did not say Carter's name or specifically mention her religious beliefs,[52] Southwest issued the Court opinion and order to every flight attendant at the same time as the Memo, so they were well aware that Southwest was targeting Carter and flight attendants' religious beliefs on social media concerning abortion.[53]

While Southwest seeks refuge in legal boilerplate, that, unlike the IIOTG Memo, does not address how Southwest will enforce those broad policies. Southwest's IIOTG Memo targeted religious expression like Carter's for disparate treatment under its social media policies, and thereby violated the Court's orders against religious discrimination.

### III. Southwest must comply with the Court's Orders even if it wishes to appeal.

Contrary to Southwest's suggestions,[54] Southwest's violations of this Court's orders are contempt even if the Court of Appeals later reverses those orders. "An order issued by the Court with jurisdiction over the subject matter and person must be obeyed until it is reversed."[55] Southwest violated this Court's Orders while they were effective.[56] Whether the Court of Appeals might reverse those orders is immaterial—Southwest cannot violate the Court's Orders while they are in effect. Therefore, the Court should not stay its sanctions order pending appellate review

---

[50] Doc. 429, p.4 n.1 (Southwest asserting that it never ridiculed Carter's views).
[51] Doc. 399, p.7; Doc. 383-3, p.2.
[52] Doc. 429, p.4.
[53] Doc. 399, pp.7-8.
[54] *Id*.
[55] *United States Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979) (citing *United Mine Workers*, 330 U.S. at 293); *Am. Airlines Inc.*, 228 F.3d at 578.
[56] Doc. 382, pp.6-7.

9

because Southwest must comply with the Court's Orders regardless of any appeal's ultimate disposition.[57]

Dated: May 22, 2023						Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

---

[57] Notably, Southwest did not seek a stay of any of this Court's injunctive orders. Whether Southwest ultimately prevails on its appeal or not, Southwest cannot violate the Court's orders while they are in effect.

**Certificate of Service**

 I hereby certify that on May 22, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                 /s/ Matthew B. Gilliam