Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 1 of 228   PageID 13597
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022

```
 1                  UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF TEXAS
 2
                     CASE NO. 3:17-cv-02245-X
 3

 4

 5   ----------------------------------------x

 6   CHARLENE CARTER,

 7                        Plaintiff,

 8   v.

 9   SOUTHWEST AIRLINES CO. and
     TRANSPORT WORKERS OF AMERICA,
10   LOCAL 566,

11                        Defendants.

12

13   ----------------------------------------x

14

15

16              TRANSCRIPT OF THE TRIAL

17       BEFORE THE HONORABLE BRANTLEY STARR

18           UNITED STATES DISTRICT JUDGE

19

20

21                   Dallas, Texas

22                   July 5, 2022

23                    12:40 p.m.

24

25
```

```
 1   A P P E A R A N C E S:

 2

     FOR THE PLAINTIFFS:
 3
           NATIONAL RIGHT TO WORK FOUNDATION INC.
 4              8001 Braddock Street
                Suite 600
 5              Springfield, Virginia  22160
           BY:  MATTHEW B. GILLIAM, ESQ.
 6              mgb@nrtw.org
                (703) 321-8510
 7

 8         PRYOR & BRUCE
                302 North San Jacinto
 9              Rockwall, Texas 75087
           BY:  BOBBY G. PRYOR, ESQ.
10              MATTHEW D. HILL, ESQ.
                bpryor@pryorandbruce.com
11              mhill@pryorandbruce.com

12

13

14

15   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:

16         REED SMITH, LLP
                2850 North Harwood
17              Suite 1500
                Dallas, Texas  75201
18         BY:  PAULO B. McKEEBY, ESQ.
                BRIAN K. MORRIS, ESQ.
19              pmckeeby@reedsmith.com
                bmorris@reedsmith.com
20

21

22

23

24

25
```

```
 1   For the Defendant Union 566:

 2              Adam S Greenfield

 3

 4      CLOUTMAN & GREENFIELD, PLLC
                3301 Elm Street
 5              Dallas, TX 75226
        BY:   ADAM S. GREENFIELD, ESQ.
 6              EDWARD B. CLOUTMAN, III, ESQ.
                agreenfield@candglegal.com
 7              crawfish11@prodigy.net

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1    COURT REPORTER:   MS. KELLI ANN WILLIS, RPR, CRR, CSR
                       United States Court Reporter
2                      1100 Commerce Street
                       Room 1528
3                      Dallas, Texas  75242
                       livenotecrr@gmail.com
4

5            Proceedings reported by mechanical

6    stenography and transcript produced by computer.

7

8                         *   *   *   *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                      **I N D E X**

2    Voir Dire ................................   33

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     July 05, 2022                            Page 6

```
 1                - P R O C E E D I N G S -
 2                          -o-
 3            THE COURT SECURITY OFFICER:  All rise.
 4            THE COURT:  Thank you.
 5            You can be seated.
 6            Okay.  The Court calls civil case action
 7   317-cv-2278-X.  And we are on our jury selection
 8   day, so let's do appearances.
 9            First, for Carter.
10            MR. GILLIAM:  Matthew Gilliam for Carter,
11   along with my colleagues, Matt Hill and Bobby Pryor.
12            THE COURT:  Thank you.
13            And how about -- just going in order of
14   the case caption, let's do Local 556 next.
15            MR. GREENFIELD:  Adam Greenfield on behalf
16   of TWU Local 556, along here with Edward Cloutman,
17   III.
18            THE COURT:  Thank you, Mr. Greenfield.
19            And then Mr. McKeeby, for Southwest
20   Airlines?
21            MR. GILLIAM:  Yes.
22            Paulo McKeeby for defendant Southwest
23   Airlines.  My colleague, Brian Morris, will be
24   joining directly.
25            THE COURT:  Very good.
```

1           All right.  Well, I sent y'all an email

2    saying I would like to talk to witnesses first.  And

3    then we should get our jury right around 1:00.

4           Mr. Frye is going to come back in the back

5    door and give us the all clear when they have been

6    cleared for active duty for questions from us.

7           I wanted to ask a few minutes' worth of

8    questions on witnesses first, and then if y'all have

9    anything else, we can do that.

10          I don't want to keep the jury waiting now,

11   so as soon as we get the all-clear signal, we need

12   to head down there.

13          It will take us a few minutes to

14   transition.  We have got to move our court reporting

15   equipment down there.  So you will -- you will have

16   a chance to use the bathroom and get down there in

17   time, and it is not a rush.

18          But all that to say, on witnesses -- so I

19   sent out my email and I got a little bit of an

20   update from y'all on one of the depos -- sorry, one

21   of the witnesses being set for July 6th.

22          And then another, I think Parker, had been

23   deposed in 30(b)(6) capacity.

24          And I did see that we also got some of

25   these filings on depo designation objections from

1  the Defendants.  So I appreciate those.

2           What I wanted to talk through is where we

3  at now, I know Nevarez is the big question.  And so

4  I wanted to hear, perhaps, a verbal response, if we

5  could, on where we are on Nevarez from the

6  Defendants' standpoint.

7           I know we have got the request for

8  sanctions from Carter.  And so I wanted to hear what

9  the path forward is from Southwest and the Union's

10 view.

11          MR. GILLIAM:  Would you like me to start?

12          THE COURT:  I would love to.

13          MR. GILLIAM:  Okay.

14          The short answer is he did not comply with

15 the subpoena that he was served with by counsel for

16 Carter on Friday evening, as I understand it.

17          We made efforts to contact him before that

18 through myself personally, sending emails through

19 Southwest's in-house counsel sending emails, and

20 through the Union's efforts, to which they can

21 speak.

22          One of those efforts was a combined email

23 to him on Friday evening, after the Court entered

24 its order, I believe around 7:00, requiring him to

25 appear at deposition.  Whereas before, he had been

1  provided the alternative to appear at deposition or

2  at trial remotely.

3          When we got that order, we sent -- counsel

4  for the Union and myself sent him an email directing

5  him to come.

6          He did not respond to that email, but

7  roughly an hour later, we received an email from

8  Mr. Hill, counsel for Carter, indicating that he had

9  been served.

10          I then instructed Southwest's in-house

11  counsel to send Mr. Nevarez an email -- and

12  Mr. Talburt at that point, because at that point,

13  Mr. Talburt had not been served.  And he's relevant

14  for reasons that I can explain.

15          But in-house counsel for Southwest, on

16  Saturday, at noon, sent both Mr. Talburt and

17  Mr. Nevarez essentially the same email, saying, "You

18  need to be here," and advising each of them that

19  they would be potentially subject to contempt if

20  they did not appear for their depositions.

21          Fast forward to that evening -- that

22  night, really, around 8:00, I believe, Mr. Hill,

23  counsel for Carter, called me, and told me that

24  Mr. Talburt, the other one, was avoiding service.

25          There was something about the service

 1   processor had tried to throw him the subpoena as he

 2   was exiting his residence, and he asked for my

 3   assistance in addressing that issue.

 4           I guess there was some question, perhaps,

 5   if service had been affected, but it did not appear

 6   to be the case, and it was apparent that he was

 7   avoiding service.

 8           I had his cell phone.  I called him.  I

 9   spent the better part of an hour on Saturday night

10   talking to him, listening to him tell me that he had

11   a friend who was an attorney that told him that

12   maybe he didn't have to comply with the subpoena.

13           And anyway, it took some effort, but I

14   worked through it, talked him into it, convinced

15   him, You need to appear for deposition.

16           There was complications because he was

17   scheduled to fly the next day, so we had to move the

18   deposition from 1:00 to 4:00.

19           That was agreeable to all parties,

20   although then there was some discussion between

21   counsel for the Union and counsel for Carter about

22   the duration of the deposition.

23           I, frankly, didn't care about that.  So we

24   worked through that.

25           And he was scheduled to appear at 4:00 the

1    next day.  I called him again the next day and I

2    said, I just want to confirm that you are going to

3    be there.  He said, Yes, I will be there.  And he

4    was there.  He was deposed at 4:00 for roughly

5    three hours.

6            So now Mr. Nevarez was scheduled to be

7    deposed the next day, on the 4th.  And frankly, I

8    woke up Monday morning and realized, wait a minute,

9    we have never heard back from this guy.  He's been

10   subpoenaed.

11           And frankly, the timing of my message with

12   the Union to him at approximately 7:00 Friday night,

13   and then getting an email from Mr. Hill saying, He's

14   been served, suggested to me, okay, he's at least

15   cooperating, he's accepting service, whereas before,

16   he had been evading it.

17           In any event, that -- I didn't just assume

18   that.  Because, again, on Saturday, I had in-house

19   counsel for Southwest send him an email saying, You

20   need to appear or there could be a contempt issue.

21           So I didn't just assume that was the case,

22   but I then focused my attention on Mr. Talburt at

23   the direction, I think, of Mr. Hill, Carter's

24   counsel, and got him to the table to be deposed.

25           And on Monday, when I woke up and

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 12

1  realized, wait a minute, we have not heard back from

2  Nevarez, I called Union's counsel.  And I said, What

3  have you heard?  What's the status of Mr. Nevarez?

4  And they said, We hadn't heard anything either.

5              So we both got off -- on the phone and

6  contacted him -- or attempted to contact him.  Got

7  his voicemail.  Left him a voicemail, asked for him

8  to call us back.  He didn't do so.

9              We called him again, at -- prior to the --

10  actually, when the deposition had commenced and

11  everybody was on the Zoom call, we contacted him

12  again -- or rather, I should say, attempted to

13  contact him again.  He did not answer.  We left

14  another voicemail.  We waited for an hour, a little

15  over an hour, to address any confusion about time

16  zones, and he didn't appear.  And that is where

17  things stood.

18              THE COURT:  Understood.

19              Anything to add from the Union's

20  standpoint on that?

21              MR. GREENFIELD:  No, your Honor.  Most of

22  the work was done jointly with Southwest to try and

23  get him to cooperate.

24              We may have made some additional phone

25  calls specifically from Southwest also to get Mr.

 1  Nevarez to appear, and Mr. Talburt, that were

 2  separate and not at the same time.  But in sum, that

 3  sums up the effort.

 4          THE COURT:  So I will tell you my leaning

 5  on this.

 6          I'm more interested in getting his depo

 7  then I am in moving on to more substantive and harsh

 8  sanctions at this point or contempt.

 9          What I would prefer to do is us to find

10  the next possible time he could sit for a depo,

11  including on a night after trial.

12          Does that make sense?

13          I know you offered weekend dates,

14  Saturday, Sunday.  My thought would be, there's some

15  universe in which you may hand the baton over in

16  your case, you know, some point on Friday.  And I

17  realize I can let you take a witness out of turn,

18  that is totally fine.  But I would love for you to

19  have the option of not having to.

20          And so my question would be, can we -- can

21  we figure out -- I can order him to sit for a depo

22  by a certain time, right?  By tomorrow at midnight.

23  All right.  And I can then throw in contempt

24  language as well, if that helps y'all get his

25  attention.  And then that gives y'all some

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 14 of 228   PageID 13610
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                        Page 14

1  maneuvering space to where maybe tonight or tomorrow

2  night he could sit for a depo after flight schedules

3  have finished.

4           But that is my leaning for the next step.

5  Obviously, if that doesn't work out, we will have

6  bigger issues to talk through and what the path

7  forward is.

8           MR. McKEEBY:  Might I suggest that a time

9  limitation on the deposition might also be of

10  assistance for a lot of reasons, but in terms of

11  getting him to appear?

12           THE COURT:  I assume you would want six

13  hours.  My inclination is to do one, because these

14  are people who could have been deposed during the

15  fact discovery period and weren't.  And so I'm still

16  trying to extend an olive branch to you.  But it is

17  not a six-hour olive branch.  So I will allow it for

18  an hour.  I will put that in the written order as

19  well.

20           MR. GILLIAM:  Your Honor, is there any

21  opportunity we could compromise on two?

22           THE COURT:  Let me ask the position of

23  Southwest and Union.

24           MR. McKEEBY:  I will let the Union talk a

25  little bit.

1            MR. GREENFIELD:  I think one would be

2  appropriate.  That is what we have done with all the

3  other witnesses.

4            MR. HILL:  Mr. Cloutman had offered two

5  hours last week.

6            THE COURT:  Here's what I will do:  I will

7  say an hour and a half.  I will put the hour and a

8  half in the written order, and I will set the

9  deadline as midnight Central time tomorrow night,

10  which leaves us tonight and tomorrow night to work

11  in a depo -- obviously, by Zoom still -- so

12  depending on what city Nevarez is at, he can take

13  the Zoom call from wherever he's at.

14            Okay.  So we've talked about Nevarez.

15  We've also --

16            MR. GREENFIELD:  Your Honor, if I may

17  briefly?

18            THE COURT:  Yes.

19            MR. GREENFIELD:  Is there any assistance

20  that the Court can provide on any other additional

21  levels that they would expect the Union and

22  Southwest to go to make -- to ensure Mr. Nevarez's

23  appearance?

24            We want to do everything we can to comply

25  with the Court's order and get him here.  But to a

 1  certain extent, I can't, like --
 2            THE COURT:  I like the joint email
 3  approach and the phone call approach.  Like, the
 4  joint email shows it is from both of you.  The phone
 5  calls from both of you would help.
 6            So I realize now you have got a case of a
 7  non-responsive witness.  And so I realize if he's,
 8  you know, not an officer of either defendant --
 9  well, I should ask:  Is he an officer of the Union
10  anymore?  He used to be --
11            MR. GREENFIELD:  Correct.
12            THE COURT:  -- but no longer is.
13            He is an employee of Southwest, but not an
14  officer, so that means it is -- you know, it is a
15  hundred-mile radius.  And so I can make him sit for
16  a depo, especially one where he's at.  But I cannot
17  make him show up to trial physically in person.
18            So I think in light of all of that, your
19  steps are good ones.  The best we can hope for is
20  his depo, given his non-responsiveness.  But I think
21  your steps are good ones.
22            I need to make another try with some
23  stronger language on my end.
24            But get that language in his hands, joint
25  email, phone calls, those would all help.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 17 of 228   PageID 13613
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 17

```
1                   MR. CLOUTMAN:  Your Honor, if I may add --
2    I'm sorry, Ed Cloutman, also for the Union.
3                   Can we represent to Mr. Nevarez by phone
4    and by email that you have indicated that
5    willingness to enforce your order by appropriate
6    sanctions or --
7                   THE COURT:  Or contempt finding, yes.
8                   MR. CLOUTMAN:  I would like to be able to
9    help club along with the --
10                  THE COURT:  Yes.
11                  MR. CLOUTMAN:  -- suggest to him it's not
12   voluntary.
13                  THE COURT:  Yeah.  Yes, I can do that.  As
14   strong a language as I can come up with.
15                  MR. CLOUTMAN:  All right.  I thank you.
16                  THE COURT:  Yes.  And I appreciate your
17   forthcomingness for both of you.
18                  You know, either the company tries to hide
19   the person or the person is trying to run.  So I can
20   see now which situation we're in.  And so I think we
21   can all try to work together to get him to sit for
22   an hour-and-a-half depo.
23                  MR. McKEEBY:  And I -- on Southwest's
24   behalf, I will apologize for not requesting your
25   permission to utilize that club before I did so with
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 18

1   Mr. Talburt.

2              THE COURT:  You can say anything you want

3   to, to compel attendance.  How about that?

4              MR. McKEEBY:  Thank you.

5              THE COURT:  And I will try to say plenty

6   on my own.

7              Okay.  Should we talk any more about

8   Talburt?  Did we have Talburt's depo?  And are we --

9              MR. GILLIAM:  Yes, your Honor, we do have

10  his deposition and we will present him by

11  deposition.

12             THE COURT:  Okay.

13             And we have got the deposition

14  designations.

15             I guess the one thing I would need is any

16  objections to the deposition designations,

17  objections that y'all want to maintain for the

18  Talburt depo.

19             I see y'all have filed plenty of others.

20  And so I would ask that you y'all file those.

21             Do you plan to present Talburt tomorrow?

22  I mean, I know it is only 6:00 tonight that I ask

23  you to tell me who you are going to present

24  tomorrow.

25             MR. GILLIAM:  Yes, your Honor.  At the

```
 1   moment, we plan on him being our second witness.
 2              THE COURT:  Okay.  Then let me ask this:
 3   Is there any way that y'all's team could get
 4   objections on file by, like, 6:00 tonight to the
 5   deposition designations?  I know that is hard
 6   because we are picking a jury here.
 7              But the problem is, I have got to rule on
 8   these in order for y'all to know what portions of
 9   the transcript to read.
10              So I'm trying to match up where we are at
11   with where we need to be.  So I'm going to be
12   working tonight on these.  But --
13              MR. GILLIAM:  We have filed, your Honor,
14   his depo designations.
15              THE COURT:  Correct.
16              And so what I need to figure out is, from
17   those designations, you know, maybe there is 50
18   object to form that are in the transcript.  Which
19   ones of those are y'all maintaining and what does
20   object to form mean, right?  You have to decode it
21   and tell me hearsay or relevance.  And then I go on
22   those and rule, sustained, overruled.
23              And then y'all know which portions of the
24   transcript to read, right, when you are role playing
25   from the witness stand.  It is a transcript and not
```

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 20 of 228  PageID 13616
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 20

1  a video, right, is how your --

2          MR. GILLIAM:  It is video, your Honor.

3          THE COURT:  Okay.  So how long does your

4  videographer need?  That is our next question.  He

5  may not be your second witness if -- for example, if

6  I get you rulings by midnight tonight --

7          MR. HILL:  I can make it happen.

8          THE COURT:  Excellent.

9          Okay.  So the question is, when can you

10 get objections on file?

11         MR. GREENFIELD:  We will work as

12 diligently as we can, your Honor, based on when we

13 get out of here, and we will file them as soon as we

14 can this evening.

15         THE COURT:  All right.  And I will turn to

16 them as soon as y'all file them.

17         MR. GREENFIELD:  Okay.  Just from a global

18 standpoint, we did make a global objection to the

19 extension of the deposition at the -- I think it was

20 about the hour-and-a-half mark, we objected to the

21 continuation of the deposition.  Allowed it to

22 continue.

23         THE COURT:  Okay.

24         MR. GREENFIELD:  But we did move to strike

25 the remaining portions --

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 21 of 228   PageID 13617
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 21

 1              THE COURT:  Portions.
 2              MR. GREENFIELD:  -- of the deposition at
 3   that point because there was disagreement over it.
 4   But we didn't want to stop the process at that
 5   point.
 6              THE COURT:  I appreciate you not stopping
 7   it.  So I will take a look at that.
 8              MR. GILLIAM:  Your Honor, may we respond
 9   to that now?
10              THE COURT:  You may.
11              MR. GILLIAM:  At the pretrial conference,
12   we discussed the potential for breaking glass in
13   case of emergency, if you will, and -- instead of
14   getting a live in-court appearance for Mr. Navares
15   and Mr. Talburt taking a full deposition.  And our
16   understanding, based on the reading of the
17   transcript and our pretrial conference, was that we
18   were going to have the opportunity to take a full
19   deposition at that time for both Mr. Nevarez and
20   Mr. Talburt.  So that would be our response to that
21   objection.
22              THE COURT:  Understood.
23              I will go back and review the pretrial
24   conference and then look at the objection at the
25   hour-and-a-half mark.

1          MR. GILLIAM:  And one other comment I
2  would add is that even though discovery was extended
3  at one point in this case, it was also limited to, I
4  guess, specific areas for follow-up.
5          THE COURT:  Understood.
6          MR. GREENFIELD:  And, your Honor, we just
7  maintained that this was a witness that was listed
8  on plaintiff's initial disclosures, that had the
9  entire discovery period, similar with the Southwest
10  witnesses.
11          We just want what is good for the extra
12  depositions for Southwest to be the same rules to be
13  played upon by the Union's witnesses.
14          THE COURT:  All right.  Okay.  So I will
15  look at Talburt objections tonight.
16          Who else do we need to talk about?
17  Parker.  So Parker was a 30(b)(6).
18          Do we know if Parker will be at trial or
19  not?
20          MR. GREENFIELD:  She's indicated she will
21  not make herself available for trial.
22          THE COURT:  Okay.  And what is her status?
23  Can y'all refresh me on, is she an officer of
24  either?  Is she out of state?  Is she in --
25          MR. McKEEBY:  Out-of-state flight

1   attendant, non-officer.

2           MR. GILLIAM:  And former executive board

3   member at the time of the events in the case.  But

4   our intent there is to present her by deposition.

5           THE COURT:  So -- and are those on file

6   yet, those designations?

7           MR. GILLIAM:  Yes, your Honor.

8           THE COURT:  Okay.  Do we have objections

9   on file yet to Parker's depo designations?

10          MR. GREENFIELD:  Yes, your Honor, from the

11  Union.

12          THE COURT:  Union has?  Okay.

13          MR. McKEEBY:  I don't recall.

14          THE COURT:  Okay.

15          It is fine.  So let me ask the follow-up

16  question then:  Do you plan to present Parker

17  tomorrow, her testimony by depo tomorrow?

18          MR. GILLIAM:  That is the plan, your

19  Honor.  Unless my co-counsel --

20          THE COURT:  All right.  We will add it to

21  the list, Mr. McKeeby, for our night work.

22          MR. McKEEBY:  Right.  I suspect that the

23  reason I don't know is because we don't care and

24  that we didn't file, but I will confirm --

25          THE COURT:  You may not have much, if

 1   you --

 2           MR. McKEEBY:  I may not have much or I may

 3   not have anything.

 4           THE COURT:  Okay.

 5           MR. McKEEBY:  Your Honor -- I'm sorry.

 6           THE COURT:  Yes.

 7           MR. McKEEBY:  -- I did want to -- before I

 8   forget, a couple of -- I did have a couple protocol

 9   issues that I wanted to raise.

10           THE COURT:  You bet.

11           MR. McKEEBY:  One is with respect to

12   subpoenaed witnesses.  That would be Ms. Lacour,

13   Ms. Hudson, and Ms. Shaffer.  They are all going to

14   appear at trial.

15           The subpoenas, understandably, direct them

16   to be here at 8:30 -- I think 8:30 tomorrow morning.

17   Obviously, they are not going to be called then.

18           And I raised this issue with counsel for

19   Carter, but can we relieve them from the burden of

20   showing up at 8:30 tomorrow morning, such that they

21   appear when needed, pursuant to the protocol that

22   the Court has established regarding the timing of

23   witnesses?

24           THE COURT:  So yes, I'm amenable to that.

25   To the extent y'all can communicate, I know I

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 25 of 228   PageID 13621
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                      July 05, 2022                      Page 25

1   haven't told him he's got to tell me who he's going

2   to take tomorrow until 6:00.

3              But especially when it comes to

4   out-of-town witnesses, any kind of coordination to

5   make travel arrangements easier on the witnesses --

6   it is always a circus when you have all witnesses

7   sitting out in the hall and they are mad.

8              MR. McKEEBY:  These people are not

9   out-of-town witnesses, but they are former employees

10  or executives.  And I mean, the preference would be

11  not to make them come downtown twice, if that's

12  agreeable.

13             THE COURT:  So I will ask you y'all to

14  confer, so that if there is a targeted time -- I

15  mean, we know 8:30 isn't going to be the case,

16  because that is when y'all open, right?

17             MR. McKEEBY:  Right.

18             THE COURT:  And so y'all are spending your

19  time opening tomorrow.  It is probably not until

20  mid-morning that we take up our first witness.  So

21  at a minimum, you know, nobody is going at 8:30 on

22  the witness stand.

23             MR. McKEEBY:  So can I tell these folks

24  that they do not need to be here at 8:30, that they

25  will be called when counsel for -- they are not our

 1  witnesses.  They are -- Carter -- people who Carter

 2  has --

 3              THE COURT:  I think you can tell them they

 4  don't have to be here at 8:30, but they do have to

 5  be here whenever he asks for them to be here.

 6              MR. McKEEBY:  Yeah.

 7              THE COURT:  Is that fair?

 8              MR. McKEEBY:  Understood.

 9              MR. GILLIAM:  We will confer with counsel,

10  your Honor.

11              THE COURT:  That sounds good.

12              Okay.  So do we need to say anything

13  more -- so it sounds like Lacour will be here.

14              Rutherford, I have deposition designations

15  and objections on file.  So I assume -- so I guess

16  the question is, are there any other witnesses who

17  you expect, Mr. Gilliam, to take by depo tomorrow?

18  Because I'm trying to figure which ones I would need

19  to get to tonight.

20              Does that makes sense?

21              MR. GILLIAM:  Yes, your Honor.

22              I believe it would only be Parker, unless

23  my co-counsel corrects me here.

24              I believe that's the only one tomorrow we

25  would present -- oh, and Talburt.

```
 1                  THE COURT:  Parker and Talburt.  Okay.

 2                  Because I know we have other potential

 3      depo witnesses as Lacour, Rutherford, Burdine,

 4      Conlon, and Cleaburn.  So I need to get to those

 5      deposition designations and objections to rule on,

 6      but perhaps not tonight for use tomorrow.

 7                  MR. GILLIAM:  Okay.  And, your Honor, one

 8      little clarification, we would like to present

 9      Nevarez, if it were at all possible, by deposition

10      tomorrow.  But we understand the situation.

11                  THE COURT:  Understood.

12                  Well, I will put a pin in that.

13                  I'll let you take Nevarez, even if out of

14      order, but I would prefer you not to have to take

15      Nevarez after you have rested.

16                  All right.  So if you rest at that point

17      and we still haven't cleared it up, you will rest

18      subject to the reservation of Nevarez and what we do

19      with Nevarez.  But hopefully we will get Nevarez

20      deposed tonight or tomorrow night.

21                  MR. PRYOR:  Your Honor?

22                  THE COURT:  Yes.

23                  MR. PRYOR:  I noticed that they filed

24      objections to the Lacour deposition designations,

25      and that was all done out of abundance of caution to
```

1  make sure that, you know, in case she wasn't here

2  but she's here.  We just want to make sure you don't

3  inadvertently do all this work tonight, work on

4  Lacour.

5            THE COURT:  Okay.  Lacour will be here.

6            So of the other ones I rattled off, are

7  there any that we think will be here, Rutherford,

8  Burdine, Conlan, Cleaburn?  Those are ones we think

9  will go by depo instead of live?

10           MR. GILLIAM:  Yes, your Honor.

11           THE COURT:  Okay.  Understood.

12           Well, we have got our work cut out for us.

13 The ones we will do tonight are Talburt and Parker

14 then.

15           MR. McKEEBY:  Your Honor, one other

16 logistic issue --

17           THE COURT:  Yes.

18           MR. McKEEBY:  -- in connection with the

19 6:00, 8:00 protocol.

20           THE COURT:  Yes.

21           MR. McKEEBY:  I don't know if the Court

22 has thought of this, but they are going to be

23 calling many, if not all, of our witnesses as part

24 of their case in chief.  So they will be listing

25 those at 6:00.  And then we are to respond with any

 1  objections.  And they are also going to identify the

 2  exhibits that they intend to introduce, is my

 3  understanding, of what the Court directed at the

 4  pretrial conference.

 5          The challenge, though, is that there may

 6  be exhibits that I want to introduce through those

 7  witnesses, that -- but I'm not going to know who the

 8  witnesses are.

 9          So at 6:00 tonight, I'm going to get an

10  email saying, We intend to call Mike Sims as a

11  witness.  And I'm going to say, Oh, well, great.

12  Here are the exhibits that you intend to use.  But I

13  have got probably some other exhibits that I want to

14  introduce through Mr. Sims.  Should I list that in

15  my 8:00 submission?  Or how do we want to handle

16  that issue?

17          THE COURT:  I think that would be helpful.

18  And this goes largely to the point that you want to

19  take their witnesses on a wide-open cross and have

20  them here once for their convenience --

21          MR. McKEEBY:  Correct.

22          THE COURT:  -- which I'm totally fine

23  with.  And then it gets to the question of protocol

24  if they are not your witness.  But because of a

25  wide-open cross, you can put a new exhibit in front

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 30 of 228   PageID 13626
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                              July 05, 2022                              Page 30

1    of them that is outside the scope of direct, how we

2    handle that.

3              I do think disclosing in your 8:00 email,

4    you know, we might also use Exhibits 23, 48, 51 with

5    their witness tomorrow.  I think that is perfectly

6    sufficient.

7              And then at 8:30 we can kick around your

8    objections to their exhibits, and any of your

9    objections to their exhibits.

10             So I won't make you file something in a

11   written form after 8:00.  I will let you keep

12   prepping for trial.  But the next morning at 8:30, I

13   will ask, Okay, he named three exhibits for that

14   witness.  Do you have any objections?

15             And remember, these relate back to the

16   pretrial objections that y'all have already listed

17   in your joint status report.  So it is not a time to

18   think afresh about new objections, unless it is

19   something that couldn't have been raised at the

20   time.

21             I understand the landscape always changes

22   a little bit on relevance, so there are some

23   objections you couldn't have made before but could

24   now.

25             Thank you for the clarification,

```
 1   Mr. McKeeby.

 2             MR. McKEEBY:  You're welcome.

 3             THE COURT:  Okay.  Any other questions we

 4   should talk about?

 5             Just as a reminder, when we go down there,

 6   I will kick it off with just some of the standard

 7   instructions in opening.  And then I will ask

 8   probably 30 minutes' worth of questions.  I think we

 9   have sent my list of questions to y'all, so y'all

10   know not to double up on them and waste your time

11   there.

12             And then we said it is 30, 30, and 30 for

13   questions.  They will all have placards.  There will

14   be two mics.  And so get them to raise their placard

15   and you read off the placard into the record.  Then

16   they can lower their placard.  Then you can have

17   them say a verbal answer from the microphone, if

18   needed.

19             If there is anything super-sensitive,

20   abortion, then we can try to use your discretion,

21   approach at a sidebar, and we will think about if we

22   need to draw the person back in after the room is

23   cleared and everyone is out in the hall.  We can

24   think about drawing the person back in.

25             I prefer not to do that.  It really slows
```

1  down voir dire.  But if we really get in a sticky

2  situation and don't want to bust a panel, then that

3  is the best option we have.

4          Mr. Frye, you are in the room.

5          MR. FRYE:  We're ready, Judge, ready to

6  go.

7          THE COURT:  Okay.  Then what we will do,

8  is we will take our break now.  Y'all can make your

9  way down to the jury assembly room and can get in

10  your places whenever you are ready.  I will make

11  sure I only come on the bench once everyone is ready

12  and we have gotten the court reporting equipment

13  moved down there.

14          I'm not going to do appearances again.  I

15  will just assume it is the same.  And y'all tell me

16  if it is any different, if you're missing a lawyer

17  or added a lawyer you didn't identify on the record.

18  And then we will just go from there.

19          We will spend the rest of our time today

20  down in that room.  When it comes to talking about

21  excuses, challenges for cause, strikes, we will stay

22  in that room and we will have everyone go out to the

23  hall while we talk about that.  We will bring them

24  back in to announce who the jury is at the end of

25  the day.

1             MR. McKEEBY:  Any further questions?  All

2    right.  We are now in recess and we will move down

3    to the first floor.

4             Thank y'all.

5             THE COURT SECURITY OFFICER:  All rise.

6             (Recess.)

7             (The jurors were seated in the jury

8        assembly room.)

9             THE COURT SECURITY OFFICER:  All rise.

10            THE COURT:  Thank you.

11            You can be seated.

12            Okay.  Ladies and gentlemen, thank you for

13   being here today.

14            It is hot in here, and we really are

15   trying to fix that.

16            My name is Brantley Starr.  I'm your judge

17   presiding over this case.  And it may get even

18   hotter, because we are going to talk about

19   interesting things this morning.  We're going to --

20   this afternoon.  Sorry, the day has flown by.

21            We are going to talk about

22   non-controversial topics of like politics, religion,

23   abortion.  We are going to make it an interesting

24   discussion today.

25            What I want to do is give you some

1  instructions, first off, that we have to give in

2  every case, and then we will get into a little bit

3  of what this case is about.

4          I will ask you some questions and then I

5  will let the lawyers for each of our three sides in

6  this lawsuit ask you some questions.  So that is how

7  our afternoon is going to go.

8          Let me give you some -- some tips on our

9  COVID protocols right quick.

10          I know COVID is an ever-changing thing.

11  And so what I want to tell you is, we have tried to

12  adapt, and we have adapted and changed our protocols

13  over time.  You can see we still have the plexiglass

14  in some certain places.

15          Everyone can wear a mask if you want to.

16  You don't have to if you don't want to.

17          Based on our protocols, we have had during

18  COVID, we changed this room's configuration.  We

19  used to fit 400 people in this room, and now it is

20  50 of you.  We tried to shrink that number down.

21  Change with the times, right?

22          So we are down to 50 people.  If you get

23  selected for this jury, we still have got different

24  protocols in place upstairs that keeps some

25  separation, keep people with the level of COVID

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 35

1    protection that they want.
2              I have had 10 jury trials during COVID and
3    zero cases of COVID transmission during those
4    trials.
5              So I can't guarantee that there will never
6    be a case of COVID transmission, but we try to put
7    protocols in place that don't drive people crazy on
8    one hand and don't cause unsafe levels of
9    transmission on the other hand.
10             Okay.  So let me tell you, if you get
11   selected for this trial -- and we won't know until
12   the end of the day if you will -- how we handle it
13   is, we would start trial tomorrow at 8:45.  We would
14   ask you to assemble, get on the record, and go in at
15   9:00.
16             And the courtroom looks a lot better than
17   this room does.  Our courtroom is up on the 15th
18   floor.  It is a normal courtroom.  A lot of space
19   where we can spread out.  There aren't pillars
20   blocking your view.
21             We would give you about an hour break for
22   lunch.  You can go out and do lunch on your own.
23   You can bring a lunch in.  We have a refrigerator.
24             We take a break in the morning about
25   midmorning.  A couple of breaks in the afternoon.

1  And we try to cut you loose around 5:00 because we

2  know you have got important things to do after that

3  point in time.

4           We may go a few minutes longer than 5:00

5  on a given day if there is a witness we are trying

6  to finish up with, but we try not to go much past

7  5:00 at all.

8           Let me give some of our usual instructions

9  that we have to give in every case before we get

10  into what each case is about.

11           If you have a cell phone -- and I assume

12  you do -- you should take it off and power it down.

13  Putting it on silent or vibrate isn't enough for

14  jury selection.  You have got to turn it all the way

15  off.

16           There are certain rules that you have got

17  to follow when participating, even in a jury

18  selection phase of a trial, like today, even if you

19  don't get selected for this jury.

20           First, you cannot communicate with anyone

21  about this case, including your fellow jurors, until

22  it is time to deliberate.

23           I understand you may want to tell your

24  family, close friends, employer, other people, that

25  you have been called for jury service so you can

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 37

1  explain why you have got to be here instead of

2  there.

3          But you should warn them not to ask you

4  about this case, not to tell you anything they know

5  or think they know about this case, or discuss this

6  case at all in your presence until after I accept

7  your verdict or excuse you as a juror.

8          Likewise, you must not give any

9  information to anyone by any means about this case.

10          For example, do not talk face-to-face or

11  use any electronic device or media or in any other

12  way communicate to anyone any information about this

13  case until after I accept your verdict or excuse you

14  as a juror.

15          That includes information about the

16  parties, witnesses, participants, evidence, or

17  anything else related to this case.

18          Second, do not speak with anyone in or

19  around the courthouse other than your fellow jurors

20  or court personnel.

21          Some of the people you encounter may have

22  a connection to this case.  If you were to speak

23  with them, that could create an appearance or raise

24  a suspicion of impropriety.

25          Third, don't do any research on the

1  Internet, social media, libraries, books,

2  newspapers, any other source or method.  Don't make

3  any investigation about this case on your own.

4  Don't visit or view any place discussed in this case

5  or use the Internet or other tools of research to

6  view any place discussed in this testimony.

7           Do not in any way research any information

8  about this case, the law, the people involved,

9  including the parties, the witnesses, lawyers, or

10  me, your judge, until after I have excused you as

11  jurors.

12           If you happen to see or hear anything

13  touching on this case in the media, turn away and

14  report it to me as soon as you can.

15           These rules protect the parties' right to

16  have this case decided only on the evidence they

17  know about that has been presented here in court.

18           If you do any research, investigation or

19  experiment that we don't know about, or gain any

20  information through improper means, then your

21  verdict may be influenced by inaccurate, incomplete

22  or misleading information that has not been tested

23  by the trial process, which includes the oath, to

24  tell the truth, and cross-examination.

25           It could also be unfair to the parties'

1  right to know what information the jurors are

2  relying on to decide the case.

3              Each of the parties is entitled to a fair

4  trial by an impartial jury and you must conduct

5  yourself so as to maintain the integrity of that

6  trial process.

7              If you decide the case based on

8  information not presented in court, you will have

9  denied the parties a fair trial in accordance with

10  the rules of this country, and you will have done an

11  injustice.

12              It is very important that you abide by

13  these rules.  Failure to follow these instructions

14  could result in this case having to be tried all

15  over again.

16              So we are about to go through the jury

17  selection process in this case.  I will ask

18  questions first, and then, as I said, I will give

19  each side -- each of our three sides 30 minutes.

20              Why we do this is for two reasons.

21              First, I need to determine if any of you

22  need to be excused for cause.  There are different

23  legal reasons that would give me cause to excuse you

24  that I won't go into.

25              But the second reason you need to know is

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 40 of 228   PageID 13636
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 40

1  the lawyers get a certain number of peremptory

2  strikes.  That means they don't have to give me a

3  reason to use that strike at all, but they can't use

4  their strike intelligently unless they get to know

5  you.

6          Now, let me tell you a little bit about

7  this case.  This is not a criminal case, it's a

8  civil case.

9          The plaintiff, the person who filed this

10 lawsuit, is Charlene Carter.  She was a Southwest

11 Airlines flight attendant.

12         All Southwest Airlines flight attendants

13 are represented by a Union called Transport Workers

14 Union Local 556.

15         After being a member of the Union for many

16 years, Carter resigned from Union membership and

17 became what is called a fee-paying, non-member

18 objector.

19         Carter expressed her objections to the

20 Union and Union leadership in several ways,

21 including by sending messages, making posts on

22 social media, and participating in an effort to

23 recall Union leadership.

24         Carter is a Christian who believes that

25 abortion is the taking of a human life, contrary to

1  the teachings of the Bible and the will of God.

2          In January of 2017, after Carter had

3  resigned from Union membership, certain members of

4  the Union, including the Union president, attended a

5  Union-sponsored Women's Committee Meeting in

6  Washington, DC.

7          On January 21st, 2017, certain members of

8  the Union attended the Women's March on Washington,

9  DC.  Later, Carter sent private Facebook messages to

10  the Union president.  Those messages involved the

11  Union's activities at the Women's March and the

12  topic of abortion.

13          The Union president reported Carter's

14  messages to Southwest.  Southwest fired Carter in

15  March 2017.

16          Carter has sued Southwest and the Union

17  for purported violations of federal laws, including

18  laws that protect religion, as well as laws that

19  protect Union opposition.

20          Southwest and the Union deny any

21  wrongdoing, and that is why you are here.

22          So before I let the parties ask questions,

23  I'm going to ask some questions of my own.

24          I'm Brantley Starr.

25          Does anyone here know me?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 42 of 228   PageID 13638
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 42

 1             How we'll do this is, if you have an

 2   affirmative answer to a question, just raise your

 3   placard so that I can see it.  And then what I have

 4   got to do is, our court reporter, who is sitting

 5   just to my left, she's transcribing everything here

 6   so that the Court of Appeals knows we did a good

 7   job.

 8             And it doesn't matter if something

 9   happened unless it was recorded.  And so what I will

10   do is, if you have a "yes" answer, hold up your

11   placard.  And I will try to read them in number

12   order, lowest to highest.  And as soon as I read

13   your number, go ahead and put it down.  Then I can

14   see those numbers behind you.

15             Okay.  So does anyone here know me,

16   Brantley Starr?  I'm your judge.

17             Let's play the who-do-you-know game a

18   little bit more.

19             Let me ask our lead lawyer on each team to

20   introduce their team, and then we will see if y'all

21   know anyone on their team.

22             MR. PRYOR:  I'm Bobby Pryor, and I

23   represent Charlene Carter, as does Matt Hill and

24   Matt Gilliam.

25             THE COURT:  Does anyone know anyone on

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 43 of 228   PageID 13639
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     July 05, 2022                    Page 43

```
 1  Carter's team?
 2              Is that a placard?  Okay.
 3              Who is going next?
 4              Mr. McKeeby, can you go next?
 5              MR. McKEEBY:  Yes, I can.
 6              My name is Paulo McKeeby.  I represent
 7       Southwest Airlines.  I'm here with Jason Bloom
 8       and also Chris Mayberry.
 9              THE COURT:  Okay.  Does anyone know
10  someone on the Southwest Airlines' team?
11              All right.  Thanks, Mr. McKeeby.
12              Okay.  Mr. Greenfield.
13              MR. GREENFIELD:  Good morning, everyone.
14              My name is Adam Greenfield.  I'm here
15  along with Edward Cloutman, III and Lee Daley.  We
16  proudly represent TWU Workers Local Union 556.
17              THE COURT:  Okay.  Does anyone know anyone
18  on the Union's legal team?
19              Okay.  So now we are going to go back and
20  I'm going to ask folks to read their list of
21  possible witnesses.  I don't want to freak you out.
22  We are not going to hear from every one of these
23  witnesses.  But before trial begins, I make them
24  list every possible person we would hear from that
25  they might call.
```

1              So they are going to read the list of

2    names.  If you think you know one of those names,

3    you can raise your placard and we will figure out if

4    the person they mentioned, Tom Smith, is the person

5    that you know.

6              So you can proceed.

7              MR. PRYOR:  Charlene Carter, who we have

8    mentioned.

9              Audrey Stone.

10             Brett Nevarez.

11             Edie Barnett.

12             Melissa Burdine.

13             Brendon Conlon.

14             THE COURT:  I'm going to ask permission

15   for y'all to sit down when you're speaking, just so

16   we can hear you in the microphone a little bit

17   better.

18             MR. PRYOR:  Sorry to switch that.  Because

19   I just can't see -- I can switch with Mr. Gilliam.

20             THE COURT:  Okay.

21             MR. PRYOR:  Your Honor, that's the best we

22   can do.

23             Are you ready, Your Honor?

24             THE COURT:  Yes, sir.

25             Put the microphone closer to you,

```
 1   Mr. Pryor.

 2             MR. PRYOR:  What?

 3             THE COURT:  Scoot the mic closer.  Thank

 4   you.

 5             MR. PRYOR:  Maureen Emlet.

 6             Denise Guttierez.

 7             Meggan Jones.

 8             Dave Kissman.

 9             Sonia Lacour.

10             Linda Rutherford.

11             Ed Schneider.

12             Tammy Shaffer.

13             Michael Sims.

14             I have to say, some popular witnesses.

15   And that's it.

16             THE COURT:  Okay.  Anyone know any name on

17   that list or want clarification on, more information

18   behind that name?

19             Okay.  Mr. McKeeby, can you read --

20             MR. PRYOR:  There's a sign back there.

21             THE COURT:  Oh, sorry.  We've got a sign.

22   What number is that?

23             Juror number 49.  Can you come to that

24   back microphone over here?

25             And which name is it that you recognize,
```

 1   Juror 49?

 2          PROSPECTIVE JUROR:  We could barely hear

 3   back here.  You mentioned Audrey -- and I didn't

 4   hear the last name.

 5          MR. PRYOR:  Audrey Stone.

 6          PROSPECTIVE JUROR:  No.  Audrey Jones.

 7          MR. PRYOR:  Okay.

 8          THE COURT:  Okay.  Close, but not a match.

 9          Okay.  Mr. McKeeby, can you read your list

10   for the jury.  And permission to stay seated.

11          MR. McKEEBY:  Yes.

12          Now, should I repeat folks that were just

13   read?  If not, I think I only have one person.

14          THE COURT:  Yeah.  You can add just new

15   names to the list.

16          MR. McKEEBY:  There is one new name, and

17   that is Naomi Hudson.

18          THE COURT:  Okay.  Anyone know Naomi

19   Hudson?

20          Okay.  And then Mr. Greenfield, can you

21   add any new names that have not been called?

22          MR. GREENFIELD:  We have no additional

23   names, your Honor.

24          THE COURT:  Okay.  So with that, let me

25   ask one last question on the who-do-you-know game.

1             Does anyone here know anyone else on the

2    jury panel?  It is not a crime.  You won't get

3    arrested.  We just need to know if two or three of

4    you know each other.

5             Okay.  I will take that as a no.

6             And as you see people pop up and give

7    answers later on, and you think, Oh, maybe I do know

8    them, you can always change your answer later on.

9             Okay.  Has anyone here ever served on a

10   jury before?  It could be state or federal, civil or

11   criminal.

12            Hold those placards up until I read off

13   the numbers if you have served on a jury before.

14            Okay.  So we have got Jurors No. 2 -- you

15   can put it down -- 10, 15, 16, 17, 18, 24, 26, 28,

16   29, 34, 35, 36, 38, 39, 42, 46.

17            Anyone I missed?

18            Okay.  We are going to play a

19   lightning-round game.  I'm going to ask y'all to

20   come up if you answered.

21            I'm going to ask Juror No. 2, if you could

22   come to the front mic, can you just tell us a little

23   bit about when you were a juror?  Was this a state

24   or federal?  If you even remember.  You may not have

25   remembered.  But was it a civil case about money or

 1   a criminal case?

 2            PROSPECTIVE JUROR NO. 2:  It was state,

 3   about six, seven years ago.

 4            THE COURT:  Okay.

 5            PROSPECTIVE JUROR NO. 2:  And it was some

 6   criminal case.

 7            THE COURT:  Criminal case.

 8            Do you remember if y'all reached a verdict

 9   or not?

10            PROSPECTIVE JUROR NO. 2:  I don't, sir.

11            THE COURT:  Okay.  That's --

12            PROSPECTIVE JUROR NO. 2:  It was like this

13   and I was like this.  I don't know what happened

14   after that.

15            THE COURT:  Okay.  You weren't selected.

16   Okay.  Got it.

17            And I will say, if you weren't selected, I

18   won't make you come up to the microphone.

19            But thank you for telling me.  I

20   appreciate it.

21            Juror No. 10, I think I have you next.

22            PROSPECTIVE JUROR NO. 10:  Sorry, it

23   was --

24            THE COURT:  Oh, I'm sorry.  Cause of the

25   annoying plexiglass, we can't hear you until you get

```
 1   to that microphone.
 2             PROSPECTIVE JUROR NO. 10:  Right.  It was
 3   a Dallas County civil case.
 4             THE COURT:  Dallas County civil.
 5             PROSPECTIVE JUROR NO. 10:  And we did
 6   reach a verdict.
 7             THE COURT:  You did reach a verdict?
 8             PROSPECTIVE JUROR NO. 10:  Yes.
 9             THE COURT:  Some amount of money?
10             PROSPECTIVE JUROR NO. 10:  No.  It was a
11   foundation repair thing the homeowner was suing
12   about, and we found for the foundation company.
13             THE COURT:  Got it.  Thank you.  I
14   appreciate that.
15             I have Juror No. 15 next.  Short trip to
16   the mic for you.  What was your jury service.
17             PROSPECTIVE JUROR NO. 15:  Tarrant County.
18   So it was a drug case, and we found him guilty.
19             THE COURT:  Okay.  Got it.  Thank you.
20             How about Juror No. 16.  What was your
21   jury service about?
22             PROSPECTIVE JUROR NO. 16:  It was civil,
23   but I can't recall because we were dismissed once we
24   were --
25             THE REPORTER:  I can't understand her.
```

```
 1                THE COURT:  Do you mind lowering your mask
 2   just while we hear from you?
 3                PROSPECTIVE JUROR NO. 16:  Civil, and we
 4   were dismissed once we were selected.
 5                THE COURT:  Okay.  So the case maybe have
 6   settled out and you didn't have to serve?
 7                PROSPECTIVE JUROR:  Correct.
 8                THE COURT:  Okay.  Thank you for telling
 9   me.
10                I have 17 next.  Sorry to make you walk.
11   What can you tell us?
12                PROSPECTIVE JUROR NO. 17:  It was a civil
13   case, and it was a slip and fall about 30 years ago.
14                THE COURT:  And did y'all reach a verdict?
15                PROSPECTIVE JUROR NO. 17:  Yes, we did.
16                THE COURT:  Okay.  Some amount of money?
17                PROSPECTIVE JUROR NO. 17:  Some amount of
18   money, I believe.
19                THE COURT:  Got it.  Well, thank you.
20                I think we have got 18 next.
21                PROSPECTIVE JUROR NO. 18:  I served as a
22   juror in the city of Balch Springs.  It was over --
23                THE REPORTER:  I'm sorry, I can't hear.
24                PROSPECTIVE JUROR NO. 18:  -- over a
25   speeding infraction.
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 51 of 228   PageID 13647
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                                    July 05, 2022                                    Page 51

```
 1                THE COURT:  In Balch Springs?

 2                PROSPECTIVE JUROR NO. 18:  Yes.

 3                THE COURT:  Over a speeding infraction?

 4                PROSPECTIVE JUROR NO. 18:  Yes.

 5                THE COURT:  Okay.  Did y'all reach a

 6   verdict?

 7                PROSPECTIVE JUROR:  Yes.  He was guilty.

 8                THE COURT:  Guilty.  Okay.  Thank you for

 9   telling us.

10                We are up to Juror No. 24 now.

11                24, what can you tell us?

12                PROSPECTIVE JUROR NO. 24:  I served on

13   a -- it was a civil case, and we did reach a verdict

14   in favor of the plaintiff.

15                THE COURT:  Okay.  Got it.  Thank you.

16                How about 26?

17                PROSPECTIVE JUROR NO. 26:  It was a civil

18   case car accident in Dallas County.  And I don't

19   believe we awarded any money to the plaintiffs.

20                THE COURT:  Okay.  You did reach a

21   verdict, though?  You finished the trial?

22                PROSPECTIVE JUROR NO. 26:  Yes.

23                THE COURT:  Thank you.

24                Juror No. 28.

25                PROSPECTIVE JUROR NO. 28:  I have been on
```

1    a couple of juries, Dallas County.  They were

2    criminal.  We reached a verdict in each case.

3              THE COURT:  Okay.  Do you recall if it was

4    guilty or not guilty?

5              PROSPECTIVE JUROR:  It was guilty on a

6    murder charge and guilty on a resisting arrest

7    charge.

8              THE COURT:  Okay.  Got it.  Thank you.

9              Okay.  Juror No. 29.

10             PROSPECTIVE JUROR NO. 29:  I was on a

11   criminal case in Dallas County, and we acquitted.

12   And then I think I was also on a drug case, but it

13   has been so long ago, I don't remember.

14             THE COURT:  Okay.  Thank you.

15             Juror No. 34.

16             PROSPECTIVE JUROR:  It was a civil case in

17   Dallas County, and it was a broken lease agreement.

18             THE COURT:  Okay.

19             PROSPECTIVE JUROR:  And we found them

20   guilty of money paid.

21             THE COURT:  Okay.  Money paid?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  Okay.  Thank you.

24             Juror No. 35.

25             PROSPECTIVE JUROR NO. 35:  Hello.

```
 1                   THE COURT:  Hello.

 2                   PROSPECTIVE JUROR NO. 35:  It was a

 3    traffic ticket case and he was guilty.  Mesquite.

 4                   THE COURT:  Okay.  In Mesquite.  Okay.

 5    Thank you.

 6                   PROSPECTIVE JUROR:

 7                   PROSPECTIVE JUROR NO. 35:  You're welcome.

 8                   THE COURT:  And Juror No. 36.

 9                   PROSPECTIVE JUROR NO. 36:  Dallas County

10    criminal, guilty.

11                   THE COURT:  Thank you.

12                   And then Juror 38.

13                   PROSPECTIVE JUROR NO. 38:  Three juries.

14    One was a murder case, found guilty, in Broward

15    County, Florida.

16                   A civil case, had to do with signing some

17    papers.  It really wasn't a trial, but I had to go

18    for service.

19                   And one was a DUI in Rockwall County.  We

20    found him guilty.

21                   THE COURT:  Okay.  Thank you.

22                   Then Juror No. 39.

23                   PROSPECTIVE JUROR NO. 39:  Can you hear

24    me?  Yeah.

25                   It was a civil case involving a Realtor
```

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 54 of 228  PageID 13650
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 54

 1  against the attorneys, and the case went to the
 2  Realtor for $500,000.
 3           THE COURT:  Okay.  Thank you.
 4           All of our attorneys are cringing in the
 5  room.  They don't want to get sued.  No attorney
 6  wants to get sued -- or judge, for that matter.
 7           Juror No. 42.
 8           PROSPECTIVE JUROR NO. 42:  It was a
 9  criminal case, found guilty, in Dallas County.
10           THE COURT:  In Dallas County.  Okay.
11  Thank you, Juror 42.
12           And 46, I have as the last one on this
13  one.
14           PROSPECTIVE JUROR NO. 46:  It was in Terry
15  County about 15 years ago.  It was a criminal case,
16  acquittal.  It was reasonable doubt.
17           And then there was another case, and it
18  was dismissed before going to trial.
19           THE COURT:  Okay.  Thank you.
20           I will just say, I'm a personable person,
21  notwithstanding the fact that I'm behind a wall of
22  plexiglass.  And I have to apologize that we are
23  using your juror numbers instead of your names.
24           I have a list all of your names, but after
25  every jury trial, I talk to the juries.  And a lot

1  of them have asked, Can you please not use my name,

2  because we may say things in here that we may ask

3  you for a really honest answer about a sensitive

4  topic.

5              If your name is connected to your answer

6  in a court record, that can hang around for a long

7  time.  Some jurors just want some anonymity.  And so

8  we want to give you that, give you a safe space to

9  talk, to say anything.

10             And then, I know your name, but I'm not

11 using it.  And so it's not tied in the court record,

12 if that makes sense.

13             So please feel open and honest to share.

14 That's our chance to get to know you.

15             And they can't use those peremptory

16 strikes well unless they really get to know you.

17             Okay.  Next question:  Has anyone here had

18 a negative interaction with a legal system that they

19 think would keep them from being fair and impartial

20 in this trial?

21             If you have had a bad experience with the

22 legal system and you think in this trial it would

23 just be hard to be fair and impartial.

24             No placards.

25             Let me get y'all exercising your placards

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 56

1    here a little bit.

2              Raise your placard if you can read, write,

3    and understand English.  Okay.  That should be all

4    of our placards.

5              Anyone spot a placard that didn't go up?

6              Okay.  All our placards went up.

7              I used to ask the inverse question, which

8    got no answers.  Right?  Raise your placard if you

9    can't understand what I'm saying.  And no one would

10   raise their hand.  So I had to ask it the opposite

11   way.  But it gets your blood moving.

12             Does anyone here have a disability that

13   would affect their service in trial?  Like, you have

14   a problem seeing.  And so, if we have an exhibit on

15   a video monitor in front of you, you just can't see

16   things very well.  Or you have a problem hearing,

17   and you are having a problem hearing me.  It is okay

18   to say that.

19             Juror No. 32, what can you tell us?

20             Can you come to the microphone to tell us?

21             PROSPECTIVE JUROR NO. 32:  I have, like,

22   90 percent loss in this ear, and this is probably

23   about half loss.  I have to use it with -- I use my

24   cell phone to regulate the controls.  I can do it

25   manually, too, but -- I mean, I can hear.  I just --

1    if one of them goes out for any reason, I'm going to

2    be, like (gesturing).

3              THE COURT:  Okay.

4              PROSPECTIVE JUROR NO. 32:  That's it.

5              THE COURT:  Thank you for telling us.  I

6    appreciate that.

7              Juror No. 5, what can you tell us?

8              PROSPECTIVE JUROR NO. 5:  Your Honor,

9    right now, I'm confused and dizzy --

10             THE REPORTER:  I can't -- I can't hear --

11             THE COURT:  Confused and dizzy?

12             PROSPECTIVE JUROR NO. 5:  Yeah.  Because I

13   have -- disoriented right now because of the effect

14   of the COVID that I have before.  And I feel it is

15   coming first thing in the morning.  I have to get

16   them -- have them examine my condition.

17             THE COURT:  Understood.

18             Are you still contagious or is this is a

19   previous case of COVID?

20             PROSPECTIVE JUROR NO. 5:  It is a previous

21   case.  I'm not contagious.  I'm negative.

22             THE COURT:  Okay.  Okay.  Thank you.

23             PROSPECTIVE JUROR NO. 5:  It's just...

24             THE COURT:  I'm sorry you are going

25   through that.

```
 1              PROSPECTIVE JUROR NO. 5:  Thank you.
 2              THE COURT:  Okay.  Let me shift topics a
 3    little bit.
 4              Does anyone here have legal training?
 5              Oh, sorry, we've got another person.
 6              Sorry.  Go back to the prior question.
 7              You have some sort of impairment that
 8    would affect your service as a juror.
 9              Number 12, can you tell us your answer to
10    that?
11              PROSPECTIVE JUROR NO. 12:  I have tinnitus
12    in my head and I get the ringing all of the time.
13    And then also, I have trouble comprehending.  I had
14    that all the way through school.  So just talking,
15    people talking to me and things like that, I have
16    trouble hanging on to it, put it that way.
17              THE COURT:  Understood.  Let me ask you
18    one question on that.
19              Some judges don't let anyone take notes.
20    I do let people take notes.  If I let you take
21    notes, would that help?  Or would it still be a
22    condition that would be present?
23              PROSPECTIVE JUROR:  It would still be
24    present because I -- there is no way I could
25    probably take the notes quick enough.
```

```
 1              THE COURT:  Understood.  Thank you for
 2   telling us.
 3              Okay.  Anyone else on impairment?
 4              Juror No. 30, can you come tell us?
 5              PROSPECTIVE JUROR NO. 30:  Yes, your
 6   Honor.  I have a temporary injured back, and I just
 7   can't sit for long periods of time.  But as long AS
 8   I can stand up, I will be okay.
 9              THE COURT:  Okay.  I appreciate that.
10   Thank you for telling me.
11              Okay.  Anyone else on the impairment
12   question?
13              Okay.  So let me ask the legal training
14   question.
15              Who all here has had legal training?
16   Maybe you are a lawyer now or maybe you went to law
17   school.  Maybe you work in a law firm and you have
18   had some training there.
19              Okay.  So I have got 20, 40.  Anyone else?
20              So Juror No. 20, can you come tell us
21   about your legal training?
22              PROSPECTIVE JUROR NO. 20:  I'm a certified
23   legal nurse consultant.  I have taken a course --
24              THE COURT:  Do you mind lowering your mask
25   just while we hear you speak?
```

```
 1              PROSPECTIVE JUROR NO. 20:  It's just --
 2   I'm just a reference person, and I've not actually
 3   used it with an attorney.  But I'm a reference
 4   person to look through medical records and make
 5   determinations on if there was anything that could
 6   have been done differently or things that we need to
 7   bring to the focus.
 8              THE COURT:  Thank you.
 9              PROSPECTIVE JUROR NO. 20:  Uh-huh.
10              THE COURT:  Okay.  And Juror No. 40, what
11   is your legal training.
12              PROSPECTIVE JUROR:
13              PROSPECTIVE JUROR NO. 40:  I'm an
14   attorney.
15              Can you hear me?
16              THE COURT:  Yes.
17              Okay.  So you're an attorney.
18              What field?
19              PROSPECTIVE JUROR NO. 40:  Currently
20   healthcare law, although I used to practice in
21   federal workers' comp and small claims collections.
22              THE COURT:  Okay.  Thank you.
23              Okay.  So let me ask perhaps the ultimate
24   question in this case.  The ultimate question we ask
25   of every juror before they sit.
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and

1              If you are selected to sit on this case,

2     could you render a verdict based just on the

3     evidence you hear in this case plus the relevant law

4     I will give you at the end of this case?

5              And let me say that another way.

6              I know all of you have views coming in on

7     religion, abortion, politics.  All of us do.  We

8     absolutely do.  And we are naive to think we don't

9     have any views on that topic.

10             But these folks here have made their way

11    through this case to trial today and need a jury of

12    people who can set those beliefs aside and hear just

13    the evidence and match it up just to the law that I

14    will give you at the end of the case and reach a

15    verdict based on those two things.

16             Raise your placard if you think you cannot

17    do that.  That I have beliefs that are so strong on

18    something, religion, politics, abortion, that I just

19    can't listen to the evidence and apply it to the law

20    and reach a verdict.  I have to inject my personal

21    beliefs and have those override the law.  And I have

22    to inject my personal beliefs and let those override

23    the evidence.

24             Raise your placard if you think that is

25    you.

```
 1                    Okay.  We have got -- keep those up till I
 2    call your number.  We have got 4, 9, 1 -- y'all can
 3    put them down if I have called it -- 18, 30.  Okay,
 4    6, I'm going to come back and add you.  All right.
 5    So now we are at 43, 46, 49.
 6                    Okay.  Juror No. 1, can you come up to the
 7    mic.
 8                    And so what can you tell me about those
 9    personal beliefs that you may think would come in
10    and override evidence or law?
11                    PROSPECTIVE JUROR NO. 1:  I'm a Christian
12    and don't believe in abortion, and I have some
13    strong views about that.
14                    I'm not wholly upset about the overturning
15    of Roe v. Wade because I kind of believe people kind
16    of have a choice.  They kind of do.  But I do have
17    strong views and that might --
18                    THE COURT:  I appreciate that.  Let me ask
19    that follow up.
20                    I know you have strong views.
21                    PROSPECTIVE JUROR NO. 1:  Yeah.
22                    THE COURT:  Could you promise for those
23    views to not come in?  All right.  And for you to
24    listen to the evidence?
25                    I have heard one juror say it back a
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 63 of 228   PageID 13659
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                              July 05, 2022                              Page 63

 1  different way that I never thought of before.  And
 2  he thought about it for a while.  And then he said,
 3  You know what?  If I were in that chair as a party,
 4  I would want someone like me to set those beliefs
 5  aside and give them a fair trial.  And he said, I
 6  think I could do that.
 7          Do you think you are in that camp, that
 8  other juror I talked to before, or do you think
 9  you're in A camp where, no matter how hard you try,
10  the views would just come in?
11          PROSPECTIVE JUROR NO. 1:  I think I'm in
12  the camp where I could be objective, I think
13  that's --
14          THE COURT:  I appreciate your honesty,
15  because it is tough to say all of those things that
16  you just said, right, to say, I do have strong
17  beliefs, I think I could set them aside.  So I
18  appreciate your honesty.
19          I'm going to say your nametag fell off, so
20  you should snag it before you leave the podium.
21          PROSPECTIVE JUROR NO. 1:  Okay.
22          THE COURT:  Okay.  I had Juror No. 4 next.
23  Can we talk to you, Juror No. 4?
24          PROSPECTIVE JUROR NO. 4:  I haven't come
25  before.  This is my first time.  So I don't know.

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 64 of 228  PageID 13660
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 64

1    To be honest, I don't know if I -- so I just wanted

2    to let you know.

3                   THE COURT:  I appreciate that.

4                   So if -- and this is -- I will tell y'all,

5    this is -- the hardest part of jury selection is for

6    you, as jurors, to not have heard the evidence or

7    the law and say, I could keep my personal opinions

8    out.

9                   It is much easier if you heard all of the

10   evidence and then all of the law, and then you can

11   sit there and know, Yeah, I can sideline my personal

12   opinions.

13                  But unfortunately, that is not how trials

14   work.  We don't make all 50 of you sit in through

15   the jury trial and then see which of you could be

16   objective at the end.

17                  So let me ask you, if I told you that as a

18   juror, it is their ability to have an impartial

19   jury, you can hear the evidence -- even if it is

20   evidence that is on a very difficult topic -- if

21   they are entitled to have people that can hear all

22   of the evidence and apply that evidence and only

23   that evidence to the law that I give, could you do

24   that?

25                  PROSPECTIVE JUROR NO. 4:  If I am

1    explained the law, yes.

2              THE COURT:  Yes.  Okay.

3              And that will be my job, is to explain the

4    law to y'all at the end of the case in a way that

5    makes sense.

6              What I will say on your question, Juror

7    No. 1, there was a recent case from the Supreme

8    Court on abortion.  And I will tell you that that

9    case has nothing to do with this case.

10             Does that make sense?

11             So the Supreme Court case on abortion was

12   whether states could prohibit abortion in whole or

13   in part.  That is not this case at all.

14             This case is about federal laws that

15   protect religious exercises and federal laws that

16   protect speech about humans.

17             And so this case has nothing to do with

18   the recent Supreme Court case.  So you may love or

19   hate the recent Supreme Court case, and that is not

20   going to factor into the law I give you at the end

21   of the case.  I can tell you that today, as we sit

22   here today.  That didn't change any of the law that

23   I will give you.

24             I appreciate you standing up and talking

25   about your thoughts.

 1                    Okay.  Juror No. 6, can we hear from you

 2   right quick?

 3                    PROSPECTIVE JUROR NO. 6:  Well, you just

 4   kind of said you -- that it doesn't have anything to

 5   do with the Supreme Court deal, because that is my

 6   objective.  I'm very against that, and I do have a

 7   serious problem with that, so...

 8                    THE COURT:  With the Court opinion?

 9                    PROSPECTIVE JUROR NO. 6:  Yes.

10                    THE COURT:  Well, and I appreciate you

11   saying that, because that is something the parties

12   want to know when it is a get-to-know-you time.

13   That is something that they want to know.

14                    But I do need to ask, if that case is

15   different than this one, could you take this

16   evidence you are about to hear and the law I give

17   you, that will have nothing to do with that Supreme

18   Court opinion, and match it up and judge it based on

19   that?  Or would you judge it based on your other

20   beliefs on abortion?

21                    PROSPECTIVE JUROR NO. 6:  I really don't

22   know.  It is a possibility.

23                    THE COURT:  Can you say that again?

24                    PROSPECTIVE JUROR NO. 6:  I really don't

25   know.  It is a possibility.

```
 1              THE COURT:  Okay.  Thank you for your
 2   answer.
 3              Okay.  Juror No. 9, can we talk?
 4              PROSPECTIVE JUROR NO. 9:  I have very
 5   strong opinions about abortion --
 6              THE REPORTER:  Can you take your mask
 7   down?
 8              PROSPECTIVE JUROR NO. 9:  I have very
 9   strong opinions about abortion, so I do feel like
10   that that would come into play with the case.
11              THE COURT:  Understood.
12              And is that your -- even if I tell you
13   that the Supreme Court case Dobbs is different than
14   this one, before that case, after that case, there
15   was a different set of federal laws that talked
16   about religion and employees' religious beliefs and
17   Union opposition, and those laws are just completely
18   different, right?  It is not whether or not you
19   could have an abortion, it is religious speech to
20   the degree federal law protects it, is a different
21   issue than whether states can ban abortion.
22              Would that help you apply the evidence to
23   the law or do you think your beliefs are so strong
24   on abortion that they would override the evidence
25   that you are about to hear and the law that I would
```

1    give you?

2              PROSPECTIVE JUROR NO. 9:  I feel like they

3    would be -- it would be hard to separate.

4              THE COURT:  Okay.  Juror No. 18 is who I

5    have next.

6              What can you tell us about your personal

7    beliefs, sir?

8              PROSPECTIVE JUROR NO. 18:  My personal

9    belief is against abortion.  I am a Christian.  And

10   I kind of feel like that would come into play as far

11   as reaching a verdict.

12             THE COURT:  Understood.

13             PROSPECTIVE JUROR NO. 18:  I understand

14   bringing in the laws and, you know, things like

15   that.  It's just, in certain situations, I just

16   can't.  And those are my thoughts.

17             THE COURT:  Understood.

18             So I will just ask you that same follow

19   up.

20             If I tell you, you have to only apply the

21   evidence to the law that I give you, could you do it

22   or do you think those personal beliefs are so

23   strong, that there would be a third bucket that

24   comes into evidence, law, and personal beliefs, in

25   you reaching a decision?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 69 of 228   PageID 13665
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 69

1                    PROSPECTIVE JUROR NO. 18:  I guess it

2      would depend on what the evidence -- I mean, the

3      evidence and the laws, what it would -- I guess it

4      would depend on what it was.  But I could probably

5      separate them.

6                    THE COURT:  Understood.

7                    And that is a little bit of that chicken

8      versus egg problem we were talking about earlier.

9                    I wish I could tell you all the evidence,

10     but even he who are sitting on the evidence don't

11     really know what all is going to come in yet.

12                   PROSPECTIVE JUROR NO. 18:  Right.

13                   THE COURT:  And so we have to figure out

14     the best we can today.

15                   If you could basically make a promise or a

16     pledge, like, I do have personal beliefs on this

17     topic, but because I would want a fair juror, if I

18     were in your shoes, I'm going to be a fair juror and

19     I'm going to take my personal beliefs and just apply

20     that evidence to the law.

21                   PROSPECTIVE JUROR NO. 18:  Yeah, I could

22     probably be fair.

23                   THE COURT:  All right.  I appreciate that.

24                   Thank you, Juror No. 18.

25                   Okay.  I have 30, is next.

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 70 of 228  PageID 13666
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 70

1              Yes, sir.

2              PROSPECTIVE JUROR NO. 30:  I'm a

3   Christian, but I am pro choice.  I believe in a

4   woman's rights.

5              THE COURT:  Yes, sir.

6              PROSPECTIVE JUROR NO. 30:  I have a

7   problem -- I'll probably have a problem trying to

8   separate the case from my strong beliefs, you know,

9   Christianity, religious rights, because I have some

10  differences with that.

11             THE COURT:  Understood.

12             And so I will ask you that same follow up.

13             If I told you that, as a juror, you are

14  supposed to set that bucket of personal beliefs

15  aside and treat them the way you would want to be

16  treated, to apply the evidence that they give you

17  with the law that I give you, could you do that or

18  are those personal beliefs so strong that they would

19  be that third bucket that really is there?

20             PROSPECTIVE JUROR NO. 30:  It would be a

21  third bucket.  And I can't promise you that I

22  wouldn't -- it wouldn't help in getting into the --

23  that would be difficult for me.

24             THE COURT:  Okay.  I appreciate your

25  honesty.

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 71 of 228  PageID 13667
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 71

1           Okay.  Let me ask Juror No. 43.  I think
2    we have you as next.
3           PROSPECTIVE JUROR NO. 43:  Well, my
4    opinion as well is on abortion --
5           THE COURT:  Do you mind pulling your mask
6    down just for talking?
7           PROSPECTIVE JUROR NO. 43:  My opinion as
8    well is on the abortion, but you explained that it
9    didn't have anything to do with the recent law.
10          But in the case if a medical doctor was on
11   trial for saving someone's life to give an abortion,
12   he would absolutely be held not guilty to me.
13          THE COURT:  Yeah, I appreciate that.
14   Thank you for your honesty.
15          Given that this isn't that case and this
16   is just a case about federal law that talks about
17   religion and Union opposition, could you hear this
18   evidence and apply that law that --
19          PROSPECTIVE JUROR NO. 43:  Yes.
20          THE COURT:  -- I just talked to you about?
21          PROSPECTIVE JUROR NO. 43:  Yes.
22          THE COURT:  Okay.  I appreciate your
23   honesty.  That is very helpful to us.  Thank you.
24          Okay.  So that was Juror 43.
25          Juror 46, I have you as next.

```
 1              PROSPECTIVE JUROR NO. 46:  I might have a
 2   third-bucket issue.
 3              THE COURT:  Okay.  Can you talk us through
 4   that?  Is it on abortion or --
 5              PROSPECTIVE JUROR NO. 46:  Yes.
 6              THE COURT:  -- religion or politics or
 7   something else?
 8              PROSPECTIVE JUROR NO. 46:  It's -- I'm a
 9   Christian and I am very much pro life.
10              THE COURT:  Understood.
11              And so when I ask you point blank, if you
12   are a juror, you have got to promise to apply
13   evidence to the law, you are saying that there would
14   be that third bucket that you dip into of personal
15   beliefs?
16              PROSPECTIVE JUROR NO. 46:  I don't see how
17   I could not.
18              THE COURT:  Okay.  I understand.  Thank
19   you for your honesty.
20              Okay.  Juror No. 49, I have you as our
21   last person.
22              What can you tell us about your personal
23   beliefs?
24              PROSPECTIVE JUROR NO. 49:  I'm a very
25   strong advocate for pro choice.  I protest.  I don't
```

1  think the -- a lot of the laws of the land are just

2  and civil.  And so I'm not sure that I could make an

3  opinion without my opinion being influenced.

4          THE COURT:  Okay.  So you would answer

5  that last question I asked her, you dip into the

6  third bucket, too?

7          PROSPECTIVE JUROR NO. 49:  And the fourth,

8  yes.

9          THE COURT:  I appreciate your honesty.

10          Can I just say, I appreciate y'all's

11  diplomacy.  Like, y'all have not started fighting

12  yet.  It is great.  Y'all are fine Americans and I

13  appreciate all of you.

14          Thank you for your honesty.

15          PROSPECTIVE JUROR NO. 49:  Okay.

16          THE COURT:  I appreciate that.

17          Okay.  So I talked to y'all about the

18  recent Supreme Court case -- oh, 38.  Sorry, we

19  missed you.

20          Can you come up and tell us about that

21  question?

22          PROSPECTIVE JUROR NO. 38:  I'm a little

23  confused.

24          Is the case about an abortion or is it

25  about free speech about abortion?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 74 of 228   PageID 13670
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022                         Page 74

1              THE COURT:  Speech.  It is about speech
2    that touches on abortion, touches on politics.
3              PROSPECTIVE JUROR NO. 38:  Okay.  But it
4    is about free speech?
5              THE COURT:  That's correct.
6              And the federal law we are talking about
7    is a federal law about religious speech, for
8    instance.
9              PROSPECTIVE JUROR NO. 38:  Okay.  Then I'm
10   okay.
11             THE COURT:  Okay.  I appreciate you asking
12   the clarification.  That is good.
13             Okay.  I mentioned politics.  This case
14   may involve -- we haven't seen all of the exhibits
15   we think might come in yet, but we think this case
16   may involve people expressing their views about
17   Donald Trump and Hillary Clinton, to make this
18   matter more interesting.
19             So let me ask -- the case is not actually
20   going to be a case on you vote for Donald Trump or
21   Hillary Clinton.  We are not doing that.  All right?
22   Secret ballot, it is a great invention.  I love it.
23             But you may hear references to Donald
24   Trump or Hillary Clinton.  So I'm going to ask you
25   sort of the same style question I asked on abortion:

1   Do you have such strong views on any politician,

2   that as soon as their name is mentioned, you stop

3   thinking about the evidence and now you decide,

4   well, I hate that person and I'm going to vote in

5   any way I can against them?  Right?  Or can you keep

6   an open mind and match up the evidence to the law?

7              So same question, but instead of about

8   abortion, we are now talking politics.

9              Can you listen to the evidence and apply

10  it to the law or as soon as you hear the name of a

11  politician, like Donald Trump or Hillary Clinton,

12  that you just have to make up your mind about the

13  case?

14             So show me your placards if you would just

15  dip into that third bucket and you just, you know,

16  As soon as I hear the name of that politician, I'm

17  done?

18             Juror -- okay, let me write these down.

19             Juror No. 6.

20             Who else do we need to write down?

21             27, 30, 35, and 43 -- and 49.

22             Okay.  Let's go Juror No. 6.  Can we hear

23  from you?

24             PROSPECTIVE JUROR NO. 6:  So I would be

25  done once you mention Donald Trump.

```
 1                    THE COURT:  Okay.  I appreciate your
 2     honesty.
 3                    Okay.  Juror No. 27.
 4                    PROSPECTIVE JUROR NO. 27:  I try not to be
 5     this, but I echo the sentiments of the first person.
 6     My brain just turns off when I hear that name.
 7                    THE COURT:  Okay.  Well, I appreciate your
 8     honesty.
 9                    Juror No. 30, can we hear from you on this
10     one?
11                    PROSPECTIVE JUROR NO. 30:  Real quick,
12     ditto.
13                    THE COURT:  What?  Can you say that again?
14                    PROSPECTIVE JUROR NO. 30:  Same.
15                    THE COURT:  The same as Juror No. 6 and
16     27?  Okay.
17                    Juror No. 35.
18                    PROSPECTIVE JUROR NO. 35:  I concur with
19     the first three people as a Christian.  Thank you.
20                    THE COURT:  Okay.  And then 43, I have as
21     next.
22                    PROSPECTIVE JUROR NO. 43:  Same as the
23     first four.
24                    THE COURT:  Okay.
25                    And then 49.
```

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 77 of 228  PageID 13673
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                          Page 77

 1              PROSPECTIVE JUROR NO. 49:  I concur with
 2    everybody.  Absolutely.
 3              THE COURT:  Let me ask a couple more
 4    questions, and then I'll hand the baton over.
 5              Let me ask, does anyone here -- oh, Juror
 6    No. 7, were you -- okay.
 7              Does anyone here have a COVID-related
 8    reason why they think they shouldn't serve as a
 9    juror?
10              I can't promise you that I will say, Yeah,
11    that is great, you can leave.  I can promise you if
12    you get selected and then tomorrow at 9:00, you're,
13    like, Hey, wait, I just thought of a COVID-related
14    reason I can't serve, I can't listen to it tomorrow,
15    all right, this is your chance to speak.
16              If you have got a COVID-related reason --
17    for example, like, you have got COPD and it is on
18    the CDC list of co-morbidity conditions.  And you
19    can wear two masks, but, you know, you have never
20    gone out in public for the last three years, right,
21    and so you don't want to start now.
22              Is there anyone who has got a
23    COVID-related reason why they can't serve on this
24    jury, which will probably go into midweek next week?
25    All right.

1              We will probably hand the case off to you

2   midweek next week.  You'll deliberate.  Some people

3   deliberate in 15 minutes, some people take a day,

4   some people take more to deliberate.  But assuming

5   y'all get the case midweek next week, is there

6   anyone with a COVID-related reason why that amount

7   of jury service time just wouldn't work out for

8   their health?

9              Juror No. 6, can you tell us a little bit?

10             PROSPECTIVE JUROR NO. 6:  I don't go out

11  since COVID.

12             As you can see, I still wear my gloves.

13  So I don't like being in a room with people without

14  masks.  I have a problem with that.

15             THE COURT:  Understood.

16             Do you have any of those conditions, the

17  co-morbidity conditions, from the CDC?  Or you just

18  don't want to even mess with it?

19             PROSPECTIVE JUROR NO. 6:  I just don't

20  even want to even mess with it.

21             THE COURT:  Okay.  Thank you.

22             Okay.  So let me ask the same question

23  from a different standpoint.  Scheduling.

24             Anyone here who has a big scheduling thing

25  that would be an undue hardship on them that we need

1   to talk about for this week into midweek next week?

2   Juror numbers --

3                PROSPECTIVE JUROR:  Can you repeat?

4                THE COURT:  If you have got a scheduling

5   issue, like you have got an international trip

6   prepaid, you don't get your money back for it.

7   Something big in your life that is going on that

8   can't be rescheduled.

9                PROSPECTIVE JUROR:  For next week?

10               THE COURT:  For this week or next.  Right.

11  Then raise your placard.  Let's talk about those

12  right quick.

13               Juror No. 7, what can you tell us --

14  sorry.  Hold your placards up.  I'm going to get

15  your numbers.

16               So 7, 15 -- well, we have 12 -- y'all can

17  put them down if I have called them -- 21, 29, 32 --

18  I missed 30 -- 45, 48 and 49.

19               Okay.  Let's hear from you in order.

20               Juror No. 7, you are first.

21               What have you got in the next week, week

22  and some change?

23               PROSPECTIVE JUROR NO. 7:  I am currently

24  enrolled at -- in a summer semester at UTA.  I

25  actually had to miss class to come here.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 80 of 228   PageID 13676
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 80

```
 1              THE COURT:  Okay.  Thank you.  I
 2  appreciate that.
 3              And you're a full-time student?  I should
 4  ask.
 5              PROSPECTIVE JUROR NO. 7:  Yes.
 6              THE COURT:  Okay.  Juror No. 12.
 7              PROSPECTIVE JUROR NO. 12:  If I serve on
 8  this jury, then I'm supposed to go to Loxahatchee
 9  next week on the 13th.
10              But my other problem is, I'm a
11  self-employed person.  And if I don't work, I don't
12  get paid, and I can't pay my mortgage, you know.
13              So -- and I also have a wife at home.  She
14  also works, but she's having to do everything now
15  because I'm doing this.  And it puts a hardship on
16  us for -- financially.  And also, she has heart
17  problems, so I don't know how that is going to
18  affect her.
19              THE COURT:  Okay.  Thank you for that
20  detail.
21              Juror No. 15, I have as next.
22              PROSPECTIVE JUROR NO. 15:  I'm the only
23  caregiver for my 84-year-old father who has advanced
24  COPD and is a serious fall risk.  So it would be
25  really a hardship for me to be away from him that
```

1    long.

2              THE COURT:  Understood.  Thank you.

3              Juror No. 21, I have as next.

4              PROSPECTIVE JUROR NO. 21:  I just have a

5    grandbaby due any time and it is out of state.  I'm

6    supposed to pack a bag and go when they call.

7              THE COURT:  Okay.  Is your role in that

8    helping out when the baby is here?

9              PROSPECTIVE JUROR NO. 21:  No, just a

10   grandmother.

11             THE COURT:  Grandmother.  Okay.

12             I have 29 next, but I think I have

13   scribbling writing.

14             Is 29 correct?

15             PROSPECTIVE JUROR NO. 29:  Yes.

16             THE COURT:  Okay.  What can you tell us?

17             PROSPECTIVE JUROR NO. 29:  I'm hosting

18   five people at an event in Scottsdale, and my

19   airplane tickets are for Wednesday of next week.  So

20   if it goes beyond Tuesday, I have a problem.

21             THE COURT:  So what is the event you are

22   hosting?  Can you tell us a little bit about that?

23             PROSPECTIVE JUROR NO. 29:  Well, I just

24   have people coming to Scottsdale to visit me and we

25   have got excursions planned and things like that.  I

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 82 of 228   PageID 13678
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 82

1  have a house there, too.

2          THE COURT:  Okay.  Thank you.

3          PROSPECTIVE JUROR NO. 29:  Scottsdale.

4          THE COURT:  Okay.  Thank you.

5          It can't be hotter than it is here.

6  Right?  But it is a dry heat.  Dry heat is fine.

7          Juror No. 30, I have as next.

8          PROSPECTIVE JUROR NO. 30:  I have a

9  preplanned trip to Memphis for my 50th class

10 reunion, and I would like to go.

11         THE COURT:  Congratulations.

12         PROSPECTIVE JUROR NO. 30:  Thank you.

13         THE COURT:  Okay.  I have 32 as next.

14         PROSPECTIVE JUROR NO. 32:  I'm a teacher

15 for special needs students in Roy City, and the

16 summer school starts next week.  I mean, I could do

17 it this week, but it starts next week.  And because

18 of my certifications, I was asked to teach months in

19 advance.  It really has been difficult to find

20 teachers for these students.

21         These are high school students that are in

22 precarious situations that need special help in

23 various ways.  Not only academic, but emotional

24 support help.  And it is going to be all of July,

25 starting next week.

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 83 of 228  PageID 13679
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 83

```
 1                THE COURT:  Okay.

 2                And Juror 45.

 3                PROSPECTIVE JUROR NO. 45:  Yes.  I have a

 4  conference next week from the 11th to the 13th in

 5  Dana Point, California.  It is kind of preplanned

 6  and pre-budgeted.  I mean, it is actually all paid

 7  for.  So it's just the evening of the 11th through

 8  the 13th.

 9                THE COURT:  All right.  Thank you.

10                Juror No. 48, you are next.

11                PROSPECTIVE JUROR NO. 48:  Yes.  I have a

12  preplanned vacation on the 13th through the 20th.

13  Non-refundable.  Booked in January.

14                THE COURT:  Thank you.

15                Juror No. 49.

16                PROSPECTIVE JUROR NO. 49:  I have a

17  conference that begins on this Friday and goes

18  through next Tuesday, and I'm a presenter.

19                THE COURT:  Okay.  Where is that

20  conference at?

21                PROSPECTIVE JUROR NO. 49:  Fort

22  Lauderdale.  The hotel is paid and the air is paid.

23  Non-refundable.

24                THE COURT:  Okay.  Thank you.

25                Okay.  That is all of the questions I have
```

1    for you.

2             I'm going to let counsel for Carter ask

3    questions first, and then we will take a bathroom

4    break.  And then we will come back with questions

5    from Southwest and Local 556.

6             MR. PRYOR:  Your Honor, could I approach?

7             THE COURT:  You may.

8             (Thereupon, the following proceedings were

9        had at sidebar:)

10            MR. PRYOR:  Your Honor, there are several

11   witnesses, I think --

12            THE COURT:  We are not doing cause.

13            MR. PRYOR:  I understand.

14            I want to make sure that I understand that

15   certain jurors that you are in agreement that there

16   has been sufficient questions asked for us to bring

17   them up for cause without me having to ask any

18   further questions.

19            THE COURT:  What do you mean?

20            MR. PRYOR:  I mean, like Jurors 6, 9, 46,

21   49, all three of them said that they are third and

22   fourth buckets.

23            THE COURT:  Sure.

24            MR. PRYOR:  So I don't -- I feel like that

25   is enough to bring them forward later for cause

 1  strike.  And certainly, on both sides of this issue.
 2  I just want to make sure --
 3              THE COURT:  All right.  If you want to try
 4  to rehab them, you can.
 5              MR. PRYOR:  Again --
 6              THE COURT:  If I stopped questioning, it
 7  was because I thought I got a concrete enough answer
 8  one way or another.
 9              MR. PRYOR:  I thought you did, too.
10              Okay.  Thank you, Judge.
11              (Thereupon, the sidebar was concluded and
12        the following proceedings were held in open
13        court:)
14              THE COURT:  Okay.  You can proceed,
15  Mr. Pryor.
16              MR. PRYOR:  All right.  Good afternoon.
17              Can everyone in the back row hear me?  Oh,
18  excellent.  Okay.
19              As I said before, I'm Bobby Pryor.  I
20  represent Charlene Carter.  And I very much
21  appreciate the judge covering a lot of the tough
22  questions.
23              I am going to have a few additional
24  questions in that regard, but I'm too afraid to ask
25  them at the start.  I'm going to start with some

1  easy stuff.

2          And if I could start with Juror No. 1.

3          PROSPECTIVE JUROR NO. 1:  Yes.

4          MR. PRYOR:  I think you have to go over

5  there.  And I'm not used to the number system.  I

6  get it.  That makes sense.  So I'm going to try not

7  to say your name.  I'm going to call you a number.

8          Okay, No. 1.

9          PROSPECTIVE JUROR NO. 1:  All right.

10         MR. PRYOR:  Now, you had indicated that

11  you had strong views and that you are Christian.

12  And we certainly don't want to see every Christian

13  get kicked off this jury panel.

14         So I want to make sure with you, you have

15  told us that, your beliefs aside, you will listen to

16  the evidence and you will take the laws that the

17  judge gives you and you will render a verdict based

18  on those two things.

19         You can do that?

20         PROSPECTIVE JUROR NO. 1:  I believe I can

21  do that.  Because my -- well, if I can clarify.

22  Because I was thinking in my head while I was

23  sitting down and other people were talking, it's,

24  like, I don't believe in abortion or birth control.

25  I don't believe in that, but I'm not wholly opposed

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     July 05, 2022                        Page 87

1  to -- and I don't think that abortion should be the

2  law of the land.

3           But if it is, I'm not really losing any

4  sleep over that because it is an individual's choice

5  because it is the law you don't have to have an

6  abortion.  And I think people should have the right

7  to make their own choice.

8           MR. PRYOR:  Okay.  And the key point for

9  us, we are not looking for people that necessarily

10  have to agree with us to be on this jury or be

11  opposed to us -- we don't want you to be opposed

12  either -- but we want someone on the jury that will

13  listen to the evidence.  And then the judge is going

14  to tell you what the law is.  And you are going to

15  take that evidence and you are going to answer those

16  questions.

17           And you would do that?

18           PROSPECTIVE JUROR NO. 1:  Yeah, I believe

19  I can do that.

20           MR. PRYOR:  I just wanted to make sure.

21           Thank you.

22           PROSPECTIVE JUROR NO. 1:  Okay, thank you.

23           MR. PRYOR:  All right.  Jury No. 5 -- 4.

24  Yes, ma'am.

25           And if you'll put that microphone close to

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 88 of 228   PageID 13684
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                              July 05, 2022                              Page 88

1  your mouth.  I'm like the young lady that controls

2  her hearing aids with my cell phone.  And my cell

3  phone is turned off, too, so I'm going to do my

4  best.

5          Juror No. 4, I heard you say that you had

6  strong opinions and this is your first time in this

7  process.  And that you -- I think you said you

8  thought you could do your best to follow the law.

9          What I didn't hear was your strong

10 opinions about what issue.  I just didn't hear that.

11         PROSPECTIVE JUROR NO. 4:  Free speech.

12         MR. PRYOR:  About freedom of speech?

13         PROSPECTIVE JUROR NO. 4:  Yes.

14         MR. PRYOR:  All right.  Do you believe in

15 freedom of speech?

16         PROSPECTIVE JUROR NO. 4:  Yes.

17         MR. PRYOR:  Okay.  I'm going to ask a

18 question about that later.  You are going to get a

19 chance to grade yourself.

20         Thank you.  That's all I need, ma'am.

21         How am I doing on time?  Okay.

22         And you will also be happy to know that

23 Judge has given me 30 minutes to talk to you.  So it

24 will be over before you know it.

25         Juror No. 8.  Who is No. 8?  Come on -- I

1   think you have to go to the podium.  This should be

2   very short, ma'am.

3           What is an insurance verification

4   specialist?  That sounds cool.

5           PROSPECTIVE JUROR NO. 8:  I verify you

6   guys' insurance to make sure you are covered so that

7   I can get you on some medication.

8           MR. PRYOR:  Okay.  And that is your

9   current job?

10          PROSPECTIVE JUROR NO. 8:  Yes.

11          MR. PRYOR:  All right.  Thank you.  Just

12  wanted to understand that.

13          And Juror No. 9, kind of the same question

14  for you.  What insurance?

15          PROSPECTIVE JUROR NO. 9:  I work for a

16  Medicare exchange company.  So we get retired --

17          THE COURT:  Can you pull your mask down

18  just while you're talking?

19          PROSPECTIVE JUROR NO. 9:  I work for a

20  Medicare exchange company, so we get retired people

21  from different companies and we provide Medicare

22  insurance for them.

23          MR. PRYOR:  Okay, great.  Thanks for the

24  explanation.

25          That is all I needed.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 90 of 228   PageID 13686
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 90

1              Juror No. 10.  First of all, I like your
2    wife's job better than yours.
3              PROSPECTIVE JUROR NO. 10:  Oh, yes.
4              MR. PRYOR:  She's a swim instructor.
5    You --
6              PROSPECTIVE JUROR NO. 10:  She's doing
7    that right now.
8              MR. PRYOR:  Vice president -- that sounds
9    good -- of apartment management.
10             Tell me the name of the company or what
11   you do.
12             PROSPECTIVE JUROR NO. 10:  Hallmark
13   Presidential.  They manage apartments across the
14   United States.
15             MR. PRYOR:  Oh, okay.
16             Do you cover certain areas of the United
17   States or you just --
18             PROSPECTIVE JUROR:  No, I cover it all.
19             MR. PRYOR:  You cover it all.  All right.
20   Thank you very much.
21             PROSPECTIVE JUROR NO. 10:  Thank you.
22             MR. PRYOR:  Juror No. 11, come on up.
23             And what do you do for a living, sir?
24             PROSPECTIVE JUROR NO. 11:  I'm retired.
25             MR. PRYOR:  I thought that since you left

1  it blank.  What did you do before you retired?

2              PROSPECTIVE JUROR NO. 11:  Engineer.

3              MR. PRYOR:  Engineer.  Fantastic.  Thank

4  you.

5              And Juror No. 14.  And by the way, the

6  profession most on this list is teacher, and we have

7  one here.  Thank you.

8              Just tell me what grade and how long you

9  have been teaching.

10             PROSPECTIVE JUROR NO. 14:  Currently, I

11 teach high school, 9th through 12th grade.  I have

12 taught at Rockwall High School for ten years.  And

13 I've also taught university level for 33 years.

14             MR. PRYOR:  I'm glad I asked to talk to

15 you.  Thank you.

16             And let's see, No. -- Juror 15.  Ma'am,

17 you are in human resources?

18             PROSPECTIVE JUROR NO. 15:  Uh-huh.

19             MR. PRYOR:  Tell me what that -- what you

20 do.

21             PROSPECTIVE JUROR NO. 15:  I'm what is

22 known as a HR generalist, so I support

23 organizations' employee relations issues.  Kind of a

24 one-stop shop for organizations --

25             MR. PRYOR:  I'm familiar with that.

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 92 of 228  PageID 13688
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 92

1              So do you deal with employees that have

2    religious freedom issues or Union issues or free

3    speech issues?  Do those things come up?

4              PROSPECTIVE JUROR NO. 15:  I have not

5    dealt with those.  I supported employees with the

6    Union many years ago, but --

7              MR. PRYOR:  Okay.  And what did you do for

8    the Union?

9              PROSPECTIVE JUROR NO. 15:  I was the labor

10   relations representative.

11             MR. PRYOR:  Okay.  For the company or for

12   the Union?

13             PROSPECTIVE JUROR NO. 15:  For the

14   company.

15             MR. PRYOR:  All right.  What company?

16             PROSPECTIVE JUROR NO. 15:  Lockheed

17   Martin.

18             MR. PRYOR:  Oh, a small company.

19             PROSPECTIVE JUROR NO. 15:  Yes.  180 of my

20   closest friends.

21             MR. PRYOR:  All right.  Thank you.

22             Juror No. 19.  Just by appearances, I

23   don't think you have been teaching as long as the

24   last teacher, but you're a teacher?

25             PROSPECTIVE JUROR NO. 19:  Yes, I'm a

1   teacher, and this will be my ninth year teaching.

2              THE COURT:  Okay.  And what grade do you

3   teach?

4              PROSPECTIVE JUROR NO. 19:  Fourth and

5   fifth grade special ed.

6              MR. PRYOR:  I really just -- and then your

7   spouse is an assistant principal?

8              PROSPECTIVE JUROR NO. 19:  He is.

9              MR. PRYOR:  Your boss, by any chance?

10             PROSPECTIVE JUROR NO. 19:  No, he's in the

11   neighboring district.

12             MR. PRYOR:  Okay.  Thank you for being a

13   teacher.  Thank you.

14             And I'm almost done with this.  If I can

15   see Juror No. 21.

16             This isn't why I called you up, but is

17   this your first grandchild?

18             PROSPECTIVE JUROR NO. 21:  No, it is my

19   third.

20             MR. PRYOR:  All right.  It is still

21   special.

22             All right.  So you have "blank" by

23   occupation.  What do you do?

24             PROSPECTIVE JUROR:  I work at Sedgwick,

25   which is an insurance broker.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 94 of 228   PageID 13690
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                         Page 94

 1              MR. PRYOR:  Okay.

 2              PROSPECTIVE JUROR NO. 19:  I am on the

 3    third-party billing.

 4              MR. PRYOR:  All right.  Okay.  That is all

 5    I needed to know.  Thank you.

 6              Juror No. 23.  You knew it was coming.  I

 7    don't even have to ask, do I?

 8              PROSPECTIVE JUROR NO. 23:  This will be my

 9    sixth year to teach.  I teach second grade.

10              MR. PRYOR:  Okay.  Thank you.

11              And if I miss a teacher on the back row, I

12    promise -- I apologize.  If you are on the back row,

13    you probably aren't going to get picked.  So I'm not

14    ignoring you, but who knows.

15              All right.  Attorneys ask silly questions,

16    and so you will get to repeat this.

17              Is anyone here familiar with Southwest

18    Airlines?  All right.  I thought so.

19              Is there -- now, let me try it another

20    way.  And I fly most airlines.  I'm not so beholden

21    to them I couldn't sit on a jury.  But is there

22    anyone that your relationship with Southwest -- and

23    by the way, I meant to tell you, I'm not here to

24    debate anybody.  All I'm here is to listen to

25    answers.  I'm not going to debate anything you have

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 95 of 228  PageID 13691
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 95

1    to say, pro, con, neutral, about Southwest or

2    unions, we just want to hear what you have to say.

3                   But is there anyone here that your

4    relationship with Southwest is such that they start

5    out way ahead in this lawsuit or -- and if this

6    indicates you, they start out way behind?  I don't

7    know, maybe they lost your bags or something.

8                   Is there anybody that has an issue with

9    Southwest?

10                  Oh, 47.  Do I want to hear this?

11                  PROSPECTIVE JUROR NO. 47:  Sure.

12                  My dad was a pilot for Southwest for

13   30 years.  And he has a lot of friends that are

14   also --

15                  THE COURT:  Okay.  And I'm hard of

16   hearing.  This gentleman is writing it down for me.

17                  But you worked for Southwest for a long

18   time?

19                  PROSPECTIVE JUROR NO. 47:  My father did.

20                  MR. PRYOR:  Your father did.

21                  Was he in the Union?

22                  PROSPECTIVE JUROR NO. 47:  Yes, he was.

23                  MR. PRYOR:  And without going into -- did

24   that make you love them or hate them, either

25   Southwest or the Union -- I may have to ask that; I

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 96 of 228   PageID 13692
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 96

1    hope I don't -- is that experience such that

2    somebody at this table is starting out behind with

3    you?

4              PROSPECTIVE JUROR NO. 47:  Probably.

5    Southwest.

6              MR. PRYOR:  Okay.  And so the judge used a

7    phrase that I'm going to start using too now, that

8    you fall into a third bucket, the bucket of, I

9    really, no matter, I can't be fair.

10              PROSPECTIVE JUROR:  Well, Southwest has,

11    you know, made my life possible and both of my

12    parents' lives possible, so --

13              MR. PRYOR:  Very understandable.

14              So you are the third bucket.  All right.

15    Thank you, ma'am.

16              Any more Southwest people?  They must do a

17    good job with bags.

18              All right.  So what about Transportation

19    Workers Union Local 556, the AFL-CIO, anybody have

20    strong opinions about those Unions or any Unions

21    such that it might make it a little difficult?

22              Who has got strong -- let's try it this

23    way:  Who has got strong opinions about Unions?

24              15.  27.  Anyone else?

25              All right, ma'am, Juror No. 15.  I think

1    this is your third time up here.  You are going to

2    win a prize.

3                PROSPECTIVE JUROR NO. 15:  I'm not sure

4    that is a good thing.

5                So not a popular opinion, but I think

6    Unions have served their purpose.

7                MR. PRYOR:  Thank you, ma'am.

8                And Juror No. 27.  Yes, ma'am.

9                PROSPECTIVE JUROR NO. 27:  I think people

10   should have a right to unionize if they want to.

11   I'm in favor of unions.

12               MR. PRYOR:  Sure.  Thank you very much.

13               Let me just ask you, though -- sorry about

14   that.  You were too quick on me.

15               It doesn't sound like there is anything

16   about that that would prevent you from deciding for

17   a union or against a union.  You would listen to the

18   facts?

19               PROSPECTIVE JUROR NO. 27:  Yes.

20               MR. PRYOR:  Fair enough.  Thank you.

21               Okay.  I want to ask a question a little

22   bit differently.

23               Is there anyone here that you personally

24   or your business or who you work for does a lot of

25   business with Southwest Airlines?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 98 of 228   PageID 13694
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 98

1              Okay.  I will ask the same question about
2    the unions that I mentioned or unions in general.
3    Anyone?
4              Number 34.  I didn't think I was going to
5    get any takers.
6              PROSPECTIVE JUROR NO. 34:  I was in the
7    Union from 1989 until 2013.
8              MR. PRYOR:  Is there anything about that
9    experience that would make it hard for you?
10             PROSPECTIVE JUROR NO. 34:  No.  No.
11             MR. PRYOR:  Thank you.
12             And this one young lady in the back
13   mentioned this, but let me ask it generally.
14             Is there anyone here that is a member of a
15   union or a member of your family is a member of a
16   union?
17             Okay.  No. 38.  I'm sorry, ma'am.
18             Is anyone in your family a member of a
19   union?
20             PROSPECTIVE JUROR NO. 38:  Any union?
21             MR. PRYOR:  Any union, yes, ma'am.
22             PROSPECTIVE JUROR NO. 38:  My husband.
23             MR. PRYOR:  Okay.  What union is he in?
24             PROSPECTIVE JUROR NO. 38:  Well, he's
25   still a member of the Teacher's Union but he's also

1    a member of -- he works for insurance, so he's a

2    member of various insurance unions by the type of

3    insurance that he does, which is telephone

4    companies.

5              MR. PRYOR:  Okay.  It sounds like the fact

6    that your husband works for a union is not going to

7    really impact how you view this case -- or is it?

8              PROSPECTIVE JUROR NO. 38:  I'm sorry?

9              MR. PRYOR:  Okay.  Is the fact that your

10   husband -- I think you said your husband was in a

11   union.

12             Is that going to make it difficult for you

13   in this case to decide --

14             PROSPECTIVE JUROR NO. 38:  No.  No.

15             MR. PRYOR:  It didn't sound like that you

16   would get back at your husband.

17             Who else do we have?  Yes, ma'am.

18             PROSPECTIVE JUROR NO. 38:  My husband is

19   in a union.

20             MR. PRYOR:  Okay.

21             PROSPECTIVE JUROR NO. 38:  My husband is

22   in a union, the Local 100.

23             MR. PRYOR:  Okay.  What type of union was

24   that?

25             PROSPECTIVE JUROR NO. 38:  Steel fitters

1    and pipe fitters.

2           MR. PRYOR:  Oh, that's right.  I saw that

3    on your questionnaire.  That's right.

4           Is there anything about that that would

5    make it hard for you here?

6           PROSPECTIVE JUROR NO. 38:  No.

7           MR. McKEEBY:  I'm sorry, what number is

8    that?

9           MR. PRYOR:  38.

10          Okay.  Again, all the parties are

11   appreciative of the judge covering some of the more

12   sensitive issues.  I'm going to gently follow up on

13   a couple of those.

14          And I'm not going to ask a follow-up

15   question about this, I'm just going to ask you to

16   raise your card if you fall into this category.

17          Okay.  You ready for it?

18          Is there anyone that has had close family

19   members that had differing views on abortion such

20   that it has caused difficulties in discussing

21   abortion with those family members without arguing?

22          I would have to raise mine.

23          Okay.  So we have 24, 28, 7, 26, 32, 45.

24   And the judge did such a better job -- 22 -- of

25   getting them in order.  All right.  I promised I

 1   won't follow up.

 2            This case also involves persons expressing

 3   their views about Planned Parenthood.

 4            THE COURT:  43.

 5            MR. PRYOR:  Did I miss someone?

 6            THE COURT:  43.

 7            MR. PRYOR:  43.  Thank you, 43.  You were

 8   blocked from me.

 9            Let me ask the same type question that has

10   been asked about abortion and political candidates.

11            Does anyone have a view favorable or

12   negative to Planned Parenthood that would be

13   something you think it might be difficult for you to

14   set aside if you heard people talking about Planned

15   Parenthood?

16            Okay.  No. 1, does that fall in the same

17   category we talked about before, though?

18            I understand you have strong views, but

19   does that fall into the category that you will

20   follow the evidence?

21            PROSPECTIVE JUROR NO. 1:  Yeah.

22            MR. PRYOR:  Okay.  Nothing wrong, I think,

23   like the judge said, with having strong views.  It

24   is a question of whether or not those views are

25   going to overcome the law and evidence.  I

1  appreciate you saying that is not the case.

2          Okay.  Let's try this one.  This case

3  could -- let me just say it this way.

4          This case will involve a video of an

5  aborted baby or fetus.

6          Is there anyone, knowing that that might

7  be the case, that would say, for whatever reason,

8  this is not a case I should sit on the jury?

9          Here we go.  Got to be careful what you

10 ask:  5, 12, 15, 26, 35, 38.

11         Let me just check my notes on a couple of

12 things and see if I need to ask additional questions

13 about that.

14         Juror No. 5, tell me why -- are you saying

15 that that playing of a video is going to make it so

16 that you really can't serve as a juror here?

17         PROSPECTIVE JUROR NO. 5:  Yes.  Because

18 I'm very emotional about it, especially when you say

19 it's a video.  So I think I cannot be fair.

20         MR. PRYOR:  Okay.  Thank you.

21         And Juror No. 26.  And remember, I said

22 I'm not here to debate, just listen.  So you just

23 tell me what your concern is there.

24         PROSPECTIVE JUROR NO. 26:  I had a

25 miscarriage three weeks ago.

```
 1            MR. PRYOR:  I'm sorry?
 2            PROSPECTIVE JUROR NO. 26:  I had a
 3  miscarriage three weeks ago unexpectedly.
 4            MR. PRYOR:  Okay.  So that would make it
 5  extremely emotional for you?
 6            PROSPECTIVE JUROR NO. 26:  (Nods head
 7  affirmatively.)
 8            MR. PRYOR:  I'm sorry I made you have to
 9  tell us that.  We are very understanding of that.
10  Thank you.
11            What were the other numbers?
12            Juror 15, do you want to go to the podium?
13            Did you answer this already?  You are just
14  trying to get the prize.
15            PROSPECTIVE JUROR NO. 15:  I am not.  I
16  think that would be very disturbing.
17            MR. PRYOR:  What?
18            PROSPECTIVE JUROR NO. 15:  I think I would
19  find that very disturbing.
20            MR. PRYOR:  Disturbing in a way -- I have
21  no problem with someone saying it is disturbing, of
22  course.
23            The question is, is the fact that it is
24  disturbing, does that prevent you from bringing a
25  fair verdict here?
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 104 of 228   PageID 13700
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                          Page 104

 1              PROSPECTIVE JUROR NO. 15:  I believe that
 2  it would, yes.
 3              MR. PRYOR:  Okay.  And why is that?  It is
 4  okay.  You can tell us.
 5              PROSPECTIVE JUROR NO. 15:  I would rather
 6  not, if that's okay.
 7              MR. PRYOR:  Fair enough.  Thank you,
 8  ma'am.
 9              Juror 25 -- I'm sorry, 26.  Have a seat
10  young lady.  35?
11              PROSPECTIVE JUROR NO. 35:  Yes.  I think
12  watching that video would be because of my religious
13  beliefs.  It would be difficult for me to actually
14  separate that from, you know, all the evidence.
15              MR. PRYOR:  Okay, thank you.
16              THE COURT:  And 38?
17              PROSPECTIVE JUROR 38:  I think I have seen
18  that video, I think, as part of a documentary or
19  something and it is very disturbing.  I am all about
20  free speech, talking about it, arguing about it all
21  at the same time, but I'm a Roman Catholic and I
22  can't abide abortion except in rare cases.
23              MR. PRYOR:  If this was a video that was
24  sent to show how bad abortion is, that would prevent
25  you from rendering a fair verdict here?

```
 1              PROSPECTIVE JUROR NO. 38:  Oh, no.

 2              MR. PRYOR:  All right.  I just wanted to

 3    make sure.

 4              Thank you.

 5              MR. PRYOR:  And let me ask it that way.

 6              If someone in this case, in order to

 7    express their religious beliefs that abortion is

 8    wrong, sent someone a video of six or seven seconds

 9    of an aborted fetus or baby, however you want to

10    refer to it, just knowing those facts, would those

11    facts say, wait a minute, I have decided this

12    already, I'm not going to be fair, I'm going to

13    decide against that person or for that person?

14              Do you understand the question?

15              You can wave your card, if you want me to

16    clarify.

17              I was afraid of that.

18              If in this case, in this case, it is the

19    plaintiff, Ms. Carter, sends a video to the

20    president of her union saying, I don't think you

21    should be using our money to support abortion, and

22    that abortion is murder, and here is a video that

23    proves it.  You got those facts?

24              By the way, we are not deciding this

25    case -- I'm not trying to tie you into deciding the
```

1  case.  I'm trying to make sure if that is all you

2  know about the case, wow, this case is over, I'm

3  deciding for her or I'm deciding against her, that

4  would be unfair to the parties.

5          We appreciate your honesty, if you fall

6  into that category.

7          Anybody?

8          So does everybody understand the question?

9  Here we go.

10          Who falls into the category, boom, that

11  makes my mind up?  Anybody?

12          Everybody has an open mind in that regard?

13          I appreciate your honesty.

14          Okay.  I've got four minutes.

15          So free speech.  10 is, you can say

16  whatever you want in the world; 1 is any

17  restrictions that the government wants to put on.

18          1 to 10, grade yourself really quick on 1

19  to 10, tell me who falls in the category of 7 to 10.

20          I love that.  You have restored my faith

21  in America.

22          All right.  I'm not even going to go with

23  the rest.  I appreciate that.

24          Same thing on freedom of religion.

25  Religion should not be -- the government shouldn't

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 107 of 228   PageID 13703
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 107

1  tell religion what to do, and 1 is the government

2  can put restrictions.

3          1 to 10.  How many are a 7 to 9 on freedom

4  of religion?

5          PROSPECTIVE JUROR NO. 10:  Can you clarify

6  what you just said?  I think you got the numbers

7  wrong.

8          MR. PRYOR:  And I apologize.  I'm on a

9  clock here.

10          Freedom of religion.  10 is there

11  shouldn't be restrictions on freedom of religion.  1

12  is there can be whatever restrictions the government

13  wants to put on it.  Those are the 1 to 10.  And

14  most of you are 7 to 9.

15          Who falls below 5s?  The government ought

16  to be in control of religious people.

17          I've got one.  Thank you, 31.  I

18  appreciate that.

19          Punitive damages.  Under the law, when a

20  company or group has done something really bad, a

21  jury is entitled to punish them and award damages to

22  them.

23          Occasionally, there is a juror that says,

24  you know what, that is not something I'm going to

25  do.  I can't do that.

1                    Is there anybody that has that kind of

2    view about punitive damages?

3                    Okay.  Towards the end.

4                    I only have 30 seconds.  I will talk to

5    you later.

6                    How many of you have been a plaintiff in a

7    lawsuit?  Raise your card.

8                    Okay.  Thank you.

9                    And how many have been a defendant in a

10   lawsuit?  Thank you.  24 and 8.

11                   Give me one second to talk to all of my

12   bosses.  Thank you very much.  I appreciate your

13   patience.

14                   THE COURT:  Okay.  What we should do is

15   take a bathroom break.  I know there is really only

16   one bathroom, so let's take about a 15-minute break.

17   Hopefully, we can get in and out and then back in

18   our seats here.  What is it?  Ten after 3.  We will

19   see you at 3:10.

20                   THE COURT SECURITY OFFICER:  All rise.

21                   (Recess.)

22                   THE COURT:  I need to huddle up with the

23   lawyers right here, 30 seconds.

24                   (Thereupon, the following proceedings were

25       had at sidebar:)

```
 1                    THE COURT:  Okay.  So jurors 7 and 15,
 2   under the jury plan, meet the automatic tests for
 3   excusing, and they should never have come to the
 4   courthouse.  No. 7 is the full-time UTA student and
 5   15 has the 84-year-old infirmed person.
 6                    I am cutting them loose now.
 7                    MR. PRYOR:  Absolutely.
 8                    MR. McKEEBY:  Thank you, Judge.
 9                    (Thereupon, the sidebar was concluded and
10          the following proceedings were held in open
11          court:)
12                    THE COURT:  Okay.  So before we have
13   questions from Southwest Airlines, Jurors No. 7 and
14   15, y'all have met the test for a legal excuse where
15   we should have figured that out before you ever came
16   to the courthouse.
17                    Y'all are excused from jury duty and you
18   are free to leave.
19                    The rest of you still stick around.  We
20   have got to talk to you.
21                    So jurors No. 7 and 15, thank you for
22   being here and thank you for your service.
23                    So Southwest now gets to ask questions.
24                    Mr. McKeeby, is that you?
25                    MR. McKEEBY:  That is me.
```

```
 1                THE COURT:  Okay.  Have at it.  You have
 2    got your 30 minutes.
 3                MR. McKEEBY:  Can everyone hear me?
 4                My name is Paulo McKeeby.  I represent
 5    Southwest Airlines.
 6                I'm going to do the opposite of
 7    plaintiff's counsel, which will be a recurring
 8    theme.
 9                I'm going to ask general questions first
10    and then, to the extent I have time, I might require
11    some of you to answer some more specific questions.
12                You heard some discussion about freedom of
13    speech and freedom of religion, and everybody is for
14    that.  I was glad to see so many people raise their
15    placards.
16                From Southwest's perspective, it is not
17    about that, those things, but rather the workplace
18    and application of Southwest's policies to its
19    employees.
20                As such, I want to ask some questions
21    about -- that relate to your experience as employees
22    or perhaps employers, and get your perspective on
23    some of those issues as opposed to kind of the more
24    general political questions that are important, but
25    the workplace issues are also important,
```

 1  particularly in a case like this.

 2          So the first question along those lines is

 3  as follows.

 4          And maybe we will go row by row, I guess.

 5  I'm not sure how many rows there are.

 6          But let's start with the first row.

 7          Has anyone on the first row ever been

 8  involuntarily terminated from a job?

 9          Juror No. 1.  Can you briefly explain

10  that?  I'm not going to get into too much detail.

11  Can you briefly describe that?

12          PROSPECTIVE JUROR NO. 1:  This was early

13  in 2000.  I was with McGraw Hill Company and I got

14  fired.

15          MR. McKEEBY:  I don't want to make you get

16  up twice.

17          I did have a question specific to you, if

18  that is all right.

19          When you were questioned by Ms. Carter's

20  counsel, you indicated that you felt strongly or

21  something about Planned Parenthood struck a cord

22  with you.

23          PROSPECTIVE JUROR NO. 1:  Well, Planned

24  Parenthood is not an organization that I

25  particularly support because I think they have their

1  genesis in Eugenics and that has never sit well with

2  me.

3          MR. McKEEBY:  You indicated while you

4  expressed your beliefs, you can nonetheless be fair

5  and impartial, is that fair?

6          PROSPECTIVE JUROR NO. 1:  I believe I can.

7          MR. McKEEBY:  And if in this case, Ms.

8  Carter is claiming that she was wrongfully

9  terminated, does that give her any advantage in your

10 eyes based upon your experience?

11         PROSPECTIVE JUROR NO. 1:  No.

12         MR. McKEEBY:  All right.  Thank you, Juror

13 No. 1.

14         Let's matriculate to the second row and

15 ask the same question.

16         Has anyone ever been involuntarily

17 terminated from a job on the second row?

18         No. 12, can you tell us a little bit about

19 that?

20         PROSPECTIVE JUROR 12:  Yes.  I was

21 probably terminated because I kissed my wife-to-be

22 in the parking lot of where I worked.

23         MR. McKEEBY:  Okay.  Where was that?

24         PROSPECTIVE JUROR NO. 12:  It was in

25 Indianapolis, Indiana.  So...

1                 MR. McKEEBY:  Before you sit down, would

2    that in any way affect your ability to be fair and

3    impartial, given the fact that Ms. Carter's claiming

4    wrongful termination?

5                 Does that put her in the lead in the case?

6                 PROSPECTIVE JUROR NO. 12:  It might.  I'm

7    not sure.

8                 MR. McKEEBY:  Okay.  Thank you.

9                 Did I get everybody on the second row?

10                How about on the third row?  Has anyone

11   ever been involuntarily terminated from a job on the

12   third row?

13                Juror 22, can you briefly explain that?

14                PROSPECTIVE JUROR NO. 22:  When I started

15   a new job, I received improper training.

16                MR. McKEEBY:  How long ago was that?

17                PROSPECTIVE JUROR NO. 22:  2008.

18                MR. McKEEBY:  And would that experience in

19   any way influence your ability to be fair and

20   impartial given that Ms. Carter is claiming wrongful

21   termination?

22                PROSPECTIVE JUROR NO. 22:  No.

23                MR. McKEEBY:  Thank you.

24                Anyone else on the third row?

25                I am getting to the point where I can't

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 114 of 228   PageID 13710
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                              July 05, 2022                        Page 114

1    see the placards.

2              Let's go to the fourth row.

3              Has anyone on the fourth row been

4    involuntarily terminated from a job?

5              Thirty-two.

6              PROSPECTIVE JUROR NO. 32:  It was in a

7    different line of work than what I'm doing now.

8              I was working with a company that provided

9    medical services, as far as medical records, things

10   of that nature.  And I was moved down to Florida,

11   and politically things happened and I got pushed

12   out.  And basically, here is my check, at the

13   airport.  And they said, thank you for your service,

14   we no longer need your services.

15             MR. McKEEBY:  Were you taking a Southwest

16   flight while at the airport?

17             PROSPECTIVE JUROR NO. 32:  I haven't taken

18   a Southwest flight in a few years.

19             MR. McKEEBY:  When was that experience

20   that you described?

21             PROSPECTIVE JUROR NO. 32:  It was 2000.

22   I'm really dating myself.

23             MR. McKEEBY:  Sorry to make you do that,

24   but I wanted to know.

25             PROSPECTIVE JUROR NO. 32:  I'm not in that

 1  line of work anymore.

 2           MR. McKEEBY:  All right.  That is

 3  sufficient.  Thank you.

 4           Did I miss anyone on that row?  That row,

 5  being the fourth row.

 6           What about the fifth row?  Is there

 7  anyone?

 8           How about, let's do it this way:  Is there

 9  anyone else that I haven't spoken to who was

10  terminated from -- involuntarily from a job?

11           I see 43.  And I don't see anyone else.

12  That is maybe because I can't see them.

13           Juror 43, do you mind explaining the

14  situation?

15           PROSPECTIVE JUROR NO. 43:  Last year.  I

16  didn't meet my PRN requirement because I took a

17  travel requirement.  However, I got rehired.

18           MR. McKEEBY:  Would that influence your

19  ability to be fair and impartial in this case?

20           PROSPECTIVE JUROR NO. 43:  No.

21           MR. McKEEBY:  Okay.

22           I think that covers everyone, unless I'm

23  mistaken.  I'm going to move on.

24           So this one is going to require some

25  definition, I guess.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 116 of 228   PageID 13712
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 116

1                Let me approach it this way:  Does anyone

2    regularly post on social media websites?

3                I was afraid of that.

4                Let me define "regularly."

5                Does anyone post on social media websites

6    at least once every three days?

7                What numbers do I have there?  Thirteen,

8    40, and 34.

9                THE COURT:  Ten as well, Mr. McKeeby.

10               MR. McKEEBY:  Ten as well.  Thank you.

11               Juror 10, can you approach the podium?

12               First of all, what sites do you post on?

13               PROSPECTIVE JUROR NO. 10:  Facebook.

14               MR. McKEEBY:  Facebook.

15               And can you describe generally the topics?

16               PROSPECTIVE JUROR NO. 10:  Yes, I repost

17   some prayer requests.

18               MR. McKEEBY:  Some what?

19               PROSPECTIVE JUROR NO. 10:  Prayer

20   requests.

21               Do you regularly engage on Facebook

22   regarding political issues?

23               PROSPECTIVE JUROR NO. 10:  Never.  In the

24   last four years, it is terrible.

25               MR. McKEEBY:  Are you thinking about

1   starting now?

2              PROSPECTIVE JUROR  NO. 10:  Or for two or

3   three years.  No.  No.

4              MR. McKEEBY:  Thank you.

5              What about Juror 13?

6              PROSPECTIVE JUROR NO. 13:  I use Facebook

7   and Instagram socially and for work.

8              MR. McKEEBY:  How so for work?

9              PROSPECTIVE JUROR NO. 13:  I work for a

10  nonprofit.  We reach our constituents across the

11  state.

12             MR. McKEEBY:  Okay.  The same question for

13  you, do you routinely engage in discussions of a

14  political nature on either Instagram or Facebook?

15             PROSPECTIVE JUROR NO. 13:  I try not to

16  engage.  I do have a private account, so socially

17  when I'm posting, I feel like I post whatever I am

18  comfortable with my family members knowing about me.

19             MR. McKEEBY:  And when you say a private

20  account, does that mean it is only accessible to

21  people who --

22             PROSPECTIVE JUROR NO. 13:  Accepted.

23             MR. McKEEBY:  That is a Facebook term,

24  right?  Is that the same with Instagram?

25             PROSPECTIVE JUROR NO. 13:  Instagram is

 1   public but I'm using it again for work.

 2               MR. McKEEBY:  Got it.  Okay.  Thank you.

 3               Juror 34, what websites do you post on?

 4               PROSPECTIVE JUROR NO. 34:  Facebook.

 5               MR. McKEEBY:  Facebook.

 6               Do you regularly post about matters of

 7   political --

 8               PROSPECTIVE JUROR NO. 34:  Yes, I do.

 9               MR. McKEEBY:  Can you tell me about that?

10               PROSPECTIVE JUROR NO. 34:  If I see

11   something, I might comment on it.  I might share it,

12   if I agreed with it.

13               MR. McKEEBY:  Do you remember the last

14   time that you did that?

15               PROSPECTIVE JUROR NO. 34:  Probably two

16   days ago.

17               MR. McKEEBY:  Can you tell us what that

18   was about?

19               PROSPECTIVE JUROR NO. 34:  No, not really.

20   I can't remember now.

21               MR. McKEEBY:  Do you remember anything in

22   that regard?

23               PROSPECTIVE JUROR NO. 34:  Oh, just about

24   anything that is political in the current events.

25   You know, things that are going on.  Roe v. Wade and

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 119 of 228  PageID 13715
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 119

1  things.

2          MR. McKEEBY:  What did you post about?

3          PROSPECTIVE JUROR NO. 34:  I just passed

4  one on that I agreed with.  It should have -- the

5  Supreme Court did what they should have done.

6          MR. McKEEBY:  In overturning it?

7          PROSPECTIVE JUROR NO. 34:  Yes.

8          MR. McKEEBY:  Okay.  Thank you.

9          And No. 40?

10          PROSPECTIVE JUROR NO. 40:  I have a couple

11  that I have, a couple of private accounts and

12  public, some private.  Twitter, Instagram, Facebook,

13  Snapchat.  I think those are all.

14          MR. McKEEBY:  Okay.  And do you regularly

15  post messages of a political nature?

16          PROSPECTIVE JUROR NO. 40:  Mostly on my

17  private account, yes.

18          MR. McKEEBY:  Same question with those

19  locked accounts, where you have only granted

20  permission to certain people to be able to view

21  those?

22          PROSPECTIVE JUROR NO. 40:  Yes, sir.

23          MR. McKEEBY:  Is one of those a Facebook

24  account?

25          PROSPECTIVE JUROR NO. 40:  Yes, but I'm

1    not really active on Facebook.

2            MR. McKEEBY:  You are more active on the

3    others that you mentioned?  Which one?

4            PROSPECTIVE JUROR NO. 40:  Twitter and

5    Instagram.

6            MR. McKEEBY:  Since I have you, and not

7    have to call you up, you told us about you are a

8    lawyer, correct?

9            PROSPECTIVE JUROR:  Yes, I have been

10   licensed since 2019.

11           MR. McKEEBY:  Are you practicing

12   currently?

13           PROSPECTIVE JUROR:  Yes, I'm doing

14   transactional law.  It is remote.

15           MR. McKEEBY:  Okay.  You work for a firm?

16           PROSPECTIVE JUROR:  A company.

17           MR. McKEEBY:  A company?  What company?

18           PROSPECTIVE JUROR:  Aspirion, LLC.  It is

19   a healthcare company.

20           MR. McKEEBY:  Do all the people work

21   remotely then?

22           PROSPECTIVE JUROR:  No.  Since the

23   pandemic, the firm has the ability for a couple

24   years, a little bit.  But since the summer, I have

25   been in the office.

```
 1              MR. McKEEBY:  Thank you.
 2              PROSPECTIVE JUROR:  I would note there
 3  might be a union issue, for my one healthcare, I
 4  worked for a summer.
 5              MR. McKEEBY:  Where did you do that?
 6              PROSPECTIVE JUROR:  Tarrant County.  The
 7  Dallas regional office.  It's since closed.
 8              MR. McKEEBY:  What did you do there?
 9              PROSPECTIVE JUROR:  Shadowed a lot more
10  experienced attorneys, wrote memos, stuff like that.
11              MR. McKEEBY:  Thank you.
12              Okay.  I'm going to go to the next
13  question.  It is also a social media question, that
14  I'm guessing that you're not an active social media
15  person.  I guess this elicits hand raising.
16              Has anyone ever, temporarily or
17  permanently, been suspended from any social media
18  website?
19              I see no placards.
20              I see one placard.
21              Can you please approach and tell us about
22  that experience?
23              PROSPECTIVE JUROR:  Facebook is kind of
24  weird.  They pick and choose what is allowed to be
25  posted or not posted.  Whenever it is something that
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 122 of 228   PageID 13718
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                       July 05, 2022                       Page 122

1  may be reposted and it kind of put me in jail for a
2  few days, where you can't post anything.  You can't
3  react to anything.
4           MR. McKEEBY:  Okay.  And that is because
5  of something that you posted?
6           PROSPECTIVE JUROR:  Something that maybe I
7  reposted.
8           MR. McKEEBY:  Do you know what that was
9  or --
10          PROSPECTIVE JUROR:  It wasn't even
11 anything that was that naked or anything.  It may
12 have been -- it may have had an adult word in it.
13          MR. McKEEBY:  I will not ask about that.
14          PROSPECTIVE JUROR:  I'm going to sit down.
15 I'm going to sit down.  I'm just trying to be
16 honest.
17          THE COURT:  Thank you.
18          MR. McKEEBY:  We appreciate that very
19 much.
20          PROSPECTIVE JUROR NO. 4:  Following
21 something about China.
22          MR. McKEEBY:  Tell us about that.
23          PROSPECTIVE JUROR NO. 4:  I did get an
24 account blocked.  It was an account in Snapchat in
25 China.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 123 of 228   PageID 13719
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 123

```
1              MR. McKEEBY:  Thank you very much.
2              Did I miss anyone who was temporarily
3  booted?
4              Forty-four, tell us about that.
5              PROSPECTIVE JUROR:  I actually made -- in
6  September of last year, I think I got hacked or
7  something.  Out of precaution, they gave me -- so I
8  just closed the other one down.
9              MR. McKEEBY:  Your summary is that
10 unremarkable is confirmed.  Thank you.
11             Anyone else on that topic?
12             All right.  Still on social media, has
13 anyone ever been disciplined or reprimanded or
14 counseled at work for anything they have done on
15 social media?
16             PROSPECTIVE JUROR:  Can you repeat it?
17             MR. McKEEBY:  Has anyone been disciplined
18 or reprimanded or counseled at work for something
19 that they posted on a social media site?
20             It looks like the answer to that question
21 is no.
22             Has anyone -- I think I'm done with social
23 media.
24             Has anyone -- again, going back to the
25 workplace, has anyone here ever felt that they were
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 124 of 228   PageID 13720
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                     July 05, 2022                     Page 124

1  unfairly prevented by their employer from freely

2  discussing their political or religious beliefs in

3  the workplace?

4          Anyone?  Okay.

5          This is kind of a similar question.

6          Does anyone here believe that individuals

7  should have the right to express their religious

8  views in the workplace without restriction?

9          Number 18.

10         Let me get a list.  Eight, 18, 1, 29, 31,

11 38.

12         THE COURT:  Ten and 20.

13         MR. McKEEBY:  Ten and 20, thank you.

14         All right.  Let me call on a couple of you

15 maybe we haven't heard from as much.

16         Eighteen, tell us about your views as to

17 expressing your religious preferences with coworkers

18 at the workplace.

19         PROSPECTIVE JUROR NO. 18:  Well, I believe

20 free speech is everywhere.  Whenever you are

21 speaking of religion, beliefs, you can talk about it

22 anywhere, not restricted in the workplace.

23         MR. McKEEBY:  If Ms. Carter was

24 disciplined as a result of her communications with a

25 coworker about her religion, would that affect your

1  ability to render a fair and impartial verdict?

2              PROSPECTIVE JUROR NO. 18:  If it became an

3  argumentative conversation?  Probably both sides.

4  But I don't think she -- yeah, I feel like that

5  would affect me a little bit.

6              MR. McKEEBY:  That would affect your

7  ability to being fair and impartial?

8              PROSPECTIVE JUROR NO. 18:  Yes.

9              MR. McKEEBY:  Okay.  You believe she

10 should be allowed to express her views in the

11 workplace?

12             You can go ahead and sit down.

13             Does anyone else that raised their placard

14 feel the same way?

15             PROSPECTIVE JUROR:  I don't think so.

16             MR. McKEEBY:  Why don't you go ahead and

17 take the podium.  I was going to give you a break.

18             PROSPECTIVE JUROR:  You are trying to

19 expose me.

20             MR. McKEEBY:  I'm not doing anything of

21 the sort.

22             PROSPECTIVE JUROR:  I think everybody has

23 a right to express themselves.  You don't have the

24 right to force it on someone else.  You are there to

25 do a job.  The job is -- they don't hire you to come

 1  talk about what you believe, what your holy ghost

 2  is.  They hire you to do a job.  That is what you

 3  are doing on that job.  What you do on your breaks

 4  and lunch, outside of your work and car, that is

 5  fine.  What you talk about when you are on the

 6  clock, you have to go by their rules.  They are

 7  paying you to do a job, not to discuss what you

 8  believe in.  That is just my belief.

 9          MR. McKEEBY:  Okay, thank you.

10          Does anyone here work for a company that

11  has a social media policy as part of one of their

12  employment policies, in a handbook or otherwise?

13          Has anyone here been disciplined or

14  counseled in any way for a violation of a social

15  media policy at work?

16          So no one.

17          And so has anyone been, if not disciplined

18  or counseled, has anyone had to discipline or

19  counsel an employee who may have violated a

20  company's social media policy?

21          Ten and 45.

22          Ten, why don't we start with you.

23          PROSPECTIVE JUROR NO. 10:  There's was a

24  gal that works for me reposting something that was a

25  little bit -- it was political, but it wasn't nice.

1  It had --

2            MR. McKEEBY:  What was it?

3            PROSPECTIVE JUROR  NO. 10:  What?

4            MR. McKEEBY:  What was it?

5            PROSPECTIVE JUROR NO. 10:  I don't

6  remember, actually.  I just remember it wasn't nice.

7  And I said to her, I would, I said, Beth, you know,

8  you've got to think about whether that was nice or

9  not.

10            And that was it.  That was really the

11  whole conversation.  She is over a lot of people.

12            MR. McKEEBY:  So that means you counseled

13  her verbally?

14            PROSPECTIVE JUROR  NO. 10:  Yes.

15            MR. McKEEBY:  In that context, did your

16  company have a social media policy?

17            PROSPECTIVE JUROR  NO. 10:  Yes.

18            MR. McKEEBY:  And did the post that you

19  are talking about -- how did you find out about it?

20  Did she send it to a coworker?  Or how did you

21  discover it?

22            PROSPECTIVE JUROR  NO. 10:  She sent it to

23  a coworker, who reported it to HR.

24            MR. McKEEBY:  Thank you, Juror 10.

25            Number 45.

 1              PROSPECTIVE JUROR NO. 45:  Yes, I work as

 2   an investment adviser, registered investment

 3   adviser.  We have a social media policy.

 4              I actually work in regulatory compliance.

 5   I have situations where employees have posted

 6   something that, you know, potentially violates

 7   federal securities laws with respect to general

 8   specifications and certain activities that you can't

 9   do.

10              And I also recently saw an employee that

11   was terminated for it.  I don't know if it was a

12   repost, but they put information out there that was

13   for the Black Lives Matter movement.  And it was

14   just, it was inappropriate and just didn't align

15   with our culture.  And long story short, that

16   individual was terminated.

17              MR. McKEEBY:  Did that individual send the

18   post to other employees or did they -- it was

19   discovered that he or she posted it?

20              PROSPECTIVE JUROR:  It was discovered by

21   an operating partner, who noted and recognized the

22   employee's name.

23              MR. McKEEBY:  So then that third party

24   reported it?

25              PROSPECTIVE JUROR:  Yes.  They knew

1   somebody at our firm and reported it to them.

2           MR. McKEEBY:  Did the company conduct an

3   investigation of that?

4           PROSPECTIVE JUROR:  Our general counsel

5   was involved.  So, yes, there was some level of

6   investigation and ultimately resulted in

7   termination.

8           MR. McKEEBY:  Okay.  Thank you.

9           I'm sorry.  Did I miss No. 20?  Did you

10  have your hand up for one of the other questions?

11  Did I miss you on something?

12          PROSPECTIVE JUROR NO. 20:  Yeah, I think

13  so.  But that is okay.  I'm good.  I don't remember

14  what the question was.

15          MR. McKEEBY:  It may have been religion in

16  the workplace.

17          PROSPECTIVE JUROR NO. 20:  It was on the

18  question about being able to talk about religion or

19  politics at the workplace.

20          MR. McKEEBY:  What did you want to say

21  about that?  I apologize for not seeing you.

22          PROSPECTIVE JUROR NO. 20:  I think that

23  because I have worked in small environments and big

24  environments, you kind of learn who has similar

25  likes as politics and religion.  And so you kind of

 1  converse with each other.

 2          I have worked with atheists, I have worked

 3  with Jewish people, you know, Muslims.  So y'all

 4  have -- so you kind of get to where you talk about

 5  those things with people who have like views.

 6          MR. McKEEBY:  Okay.  Is that something

 7  that you feel like employees should be allowed to

 8  do?  Or I guess maybe I'm not understanding.

 9          PROSPECTIVE JUROR NO. 20:  I just think

10  there is an etiquette to it.  And if you have like

11  views and it is not keeping you from doing your

12  job --

13          MR. McKEEBY:  Right.

14          PROSPECTIVE JUROR NO. 20:  -- that is one

15  thing.

16          MR. McKEEBY:  Right.

17          PROSPECTIVE JUROR NO. 20:  If you are

18  trying to instill your views in someone who doesn't

19  have those views, I think that needs to be dropped.

20          MR. McKEEBY:  Okay.  Do you have an

21  opinion about whether employers should have social

22  media policies?

23          PROSPECTIVE JUROR NO. 20:  Yes.

24          MR. McKEEBY:  What do you think?  What is

25  that opinion?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 131 of 228   PageID 13727
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                                    July 05, 2022                                    Page 131

```
 1              PROSPECTIVE JUROR NO. 20:  Well, I just
 2   feel like you need to monitor what you are putting
 3   out there publicly.
 4              I have -- my account is closed.  I only
 5   have a certain group of people who I can go to.  So
 6   I don't post things that go universal.
 7              So I think it is a good idea to have a
 8   social media policy that -- I mean, we had policies
 9   in the hospital, but you couldn't share HIPAA
10   information or about patients or take pictures of
11   things in the hospital.  So...
12              MR. McKEEBY:  Thank you.
13              PROSPECTIVE JUROR NO. 20:  Uh-huh.
14              MR. McKEEBY:  I will ask a related
15   question to the group.
16              Does anyone -- also related to the social
17   media policy, does anyone have a problem with the
18   idea of a company utilizing its social media policy
19   to protect its public perception or brand in the
20   sense of counseling employees or disciplining
21   employees when they post something that might create
22   a negative impression about that company's brand or
23   its perception in the public?
24              Does anyone think that they shouldn't do
25   that?  Or does --
```

```
 1              PROSPECTIVE JUROR:  Clarification?
 2              MR. McKEEBY:  Yes.
 3              PROSPECTIVE JUROR:  Must the company be
 4   associated in the post?
 5              MR. McKEEBY:  Let's say yes.
 6              I need to make you take the podium, I
 7   think.  I will ask it to you both ways.
 8              If the company is reflected in the post or
 9   elsewhere on the social media page, how would that
10   impact your perception?
11              PROSPECTIVE JUROR:  Well, considering the
12   entities on social media and the ability to accept
13   employment and if you post, it would seem to be
14   lackadaisical on the company's part, if they weren't
15   actively monitoring their own associations, what
16   other people say.
17              MR. McKEEBY:  What if it wasn't associated
18   with the company, in that sense that you just
19   described?  If it was just a public post, but the
20   public post also had, in addition to something that
21   might have violated the social media policy, also
22   had depictions of that employee as a representative
23   of that company, would it be a problem for the
24   employer to say, wait a minute, we have a problem
25   with you doing that because of -- because of the
```

1  potential impact on our brand and the public

2  perception of us?

3             PROSPECTIVE JUROR:  If the company is

4  represented in any fashion without their knowledge

5  and consent, that would be a problem.

6             MR. McKEEBY:  Thank you.  Thank you.

7             Who was a plaintiff in a lawsuit?  I

8  believe there were some hands when that question was

9  asked.

10             I think I am in the same boat as Mr.

11  Pryor, my colleague, I'm almost out of time.

12             THE COURT:  Two minutes.

13             MR. McKEEBY:  Who has been a plaintiff in

14  a lawsuit?  I thought there were a couple of people.

15             THE COURT:  Forty-three.

16             MR. McKEEBY:  Forty-three.

17             Can you tell us about that experience?

18             PROSPECTIVE JUROR:  Before I answer, so

19  yes.

20             MR. McKEEBY:  Correct.  I would encourage

21  you to quickly approach the podium.

22             PROSPECTIVE JUROR:  Yes, sir.  Just a slip

23  and fall at Wal-Mart.  Yes.

24             MR. McKEEBY:  Okay.  Thank you.

25             Let me ask this question --

```
 1              THE COURT:  No. 8.

 2              MR. McKEEBY:  No. 8, yes.

 3              PROSPECTIVE JUROR NO. 8:  Don't hold it

 4   against me, I work for -- I had a supervisor and she

 5   didn't know that I knew her job.  And I -- a long

 6   story short, I would help her get some of the work.

 7   Bottom line, I was terminated, not because my work,

 8   because of the fact that I was African American.

 9              MR. McKEEBY:  Okay.

10              PROSPECTIVE JUROR NO. 8:  And I have also

11   looked past it because I don't let other people's

12   ignorance bother me.  And my roommate -- I had a

13   white roommate.  Her mother said to me, Yolanda, I

14   am white.  You wouldn't say that to me.  Don't allow

15   her to say it to you.

16              Oh, she's under a little -- I don't care

17   what she's going through.  You are a good person.

18   We have never had anyone come in, do what you have

19   done.  You are not going to allow her to talk to you

20   like that.  Every email she sent, I forwarded to my

21   personal email at home.  So for five years, I took

22   abuse from this lady.  And I did her job.  And the

23   people from heads up from corporate would say, where

24   did you find this lady?  I come in, do this.  When I

25   sued them, they ended up firing her.
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 135 of 228   PageID 13731
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022                         Page 135

1              MR. McKEEBY:  What happened to you?

2              PROSPECTIVE JUROR NO. 8:  I left the

3    company before the lawsuit was over, because it was

4    so much stress.  When I drove up to the building, I

5    automatically would start throwing up.  I was down

6    to 98 pounds.  I couldn't hold anything, when I got

7    to the building knowing when I get in the door, I

8    was going to take some stuff.

9              MR. McKEEBY:  I'm sorry.  What was the

10   resolution of the lawsuit?  Was it a trial or did

11   you resolve it?

12             PROSPECTIVE JUROR NO. 8:  They settled out

13   of court.  The judge basically told them that they

14   needed to quit the pressure, feel like that going to

15   court was going to help them.  They didn't have

16   anyone on their side from corporate that stick.

17   They would always say they have been calling us in

18   order to give a bonus, how to work, this lady never

19   wanted to get in trouble.  They didn't have no one

20   to back her, so they settled.

21             MR. McKEEBY:  They gave you your job back?

22             PROSPECTIVE JUROR NO. 8:  I ended up

23   moving to back to Texas.  I was in hell for 12

24   years, yes.

25             MR. McKEEBY:  I think I'm out of time.

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 136 of 228   PageID 13732
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 136

 1              THE COURT:  Thank you, Mr. McKeeby.

 2              Mr. Greenfield, you are the last

 3    questioner of the day.  So we will turn the baton

 4    over to you for your 30 minutes.

 5              MR. GREENFIELD:  My name is Adam

 6    Greenfield.

 7              Can everyone hear me?  Even in the back?

 8    I think that is really important.  If at any time

 9    throughout this trial, everyone in the room deserves

10    to hear every fact and every piece of evidence and

11    understand the law.

12              So while we are here today, at least right

13    now, can I have y'all's agreement, if you can't

14    agree with me, throw up your card?  I want y'all to

15    stand up and make sure you understand every piece of

16    evidence and you understand the law as we go.

17              Anyone can't do that?  Okay.  All right.

18              I'm going last and I get the luxury of

19    keeping it a little shorter, because everyone has

20    asked the questions.  I'm going to follow up on a

21    few of those.  But I do feel I should give a little

22    bit of background about myself.

23              I see people out there yawning.  If you

24    see me yawning, it is because I have three kids

25    under five and I am doing my best.  It is just

1   natural.  Something that happens.  It is not that

2   I'm disinterested by any of your answers or anything

3   like that.

4          All right.

5          A few people here at the front, we haven't

6   really heard from you.  Y'all are doing a really

7   good job ducking under the radar.

8          Juror No. 3.  I have a couple of

9   questions.  Can you hop up there for me?

10          PROSPECTIVE JUROR NO. 3:  Yes, sir.

11          MR. GREENFIELD:  Okay.  I don't have your

12   occupation down.

13          What do you do, sir?

14          PROSPECTIVE JUROR NO. 3:  I'm retired.

15          MR. GREENFIELD:  What did you do?

16          PROSPECTIVE JUROR NO. 3:  I was a police

17   officer for 20 years.  I left there and started a

18   heating and air conditioning business.  Did that

19   until 2008.  The economy crashed.  I went to work

20   for the State Child Protective Services.  I was an

21   investigator for the homicide division for the

22   children.

23          And went to work for another company after

24   retiring from there, heating and air conditioner for

25   about six months.  And I just quit everything.

1            MR. GREENFIELD:  I understand.  Thank you

2    for your service on some very important issues.  We

3    do appreciate that.

4            You kind of waved your card a little bit

5    when it came to the social media posting.

6            Did you do it a little bit, but can you

7    tell us a little bit more about that?

8            PROSPECTIVE JUROR NO. 3:  I like funny

9    stuff, something where someone says something funny

10   about Biden or something falling, I repost that.

11   Funny stuff, mainly.

12           MR. GREENFIELD:  I understand.

13           What do you like to do in your spare time?

14           PROSPECTIVE JUROR NO. 3:  Fish.

15           MR. GREENFIELD:  I'm not a very good

16   fisherman.  I do like it by the lake.

17           Thank you, sir.

18           Juror No. 11, you have been hiding a bit

19   yourself.  I have noticed you are a retired

20   engineer.

21           PROSPECTIVE JUROR NO. 11:  I am.

22           MR. GREENFIELD:  What sort of engineer?

23           PROSPECTIVE JUROR NO. 11:  Mechanical

24   engineer.

25           MR. GREENFIELD:  Very good.

```
 1              In what capacity did you work?
 2              PROSPECTIVE JUROR NO. 11:  Plant manager.
 3  Plant manager.
 4              MR. GREENFIELD:  Plant manager.
 5              Since then, what do you like to do in your
 6  spare time?
 7              PROSPECTIVE JUROR NO. 11:  Golf, scuba
 8  dive, travel.
 9              MR. GREENFIELD:  That is all I have for
10  you.
11              I would like to see a show of cards,
12  anyone who has ever filed a complaint in the
13  workplace against their employer or had a workplace
14  complaint filed against you.
15              I see 8.  I see 16.  If there are any
16  others, if you could hold those cards up high.
17              21 and 22.  All right.
18              THE COURT:  You have got 35 as well.
19              MR. GREENFIELD:  Juror No. 21, we haven't
20  talked much, so if you wouldn't mind.
21              Hi.  Would you mind telling us about that?
22              PROSPECTCIVE JUROR NO. 21:  It was, I
23  filed a complaint when there was an accident.
24              MR. GREENFIELD:  Why did you wait until
25  you were --
```

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 140 of 228  PageID 13736
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 140

1              PROSPECTIVE JUROR NO. 21:  Because of the

2    environment that I was working under, if I

3    complained --

4              MR. GREENFIELD:  Fear of retaliation?

5              PROSPECTIVE JUROR NO. 21:  Uh-huh.

6              MR. GREENFIELD:  And I have you do

7    third-party billing for insurance, is that right?

8              PROSPECTIVE JUROR NO. 21:  Yes.

9              MR. GREENFIELD:  And I know you have a

10   grandbaby on the way.

11             Outside of being a grandma, do you have

12   any hobbies?

13             PROSPECTIVE JUROR NO. 21:  I have six kids

14   and it is just whatever they need.

15             MR. GREENFIELD:  Thank you.

16             Sorry.  I'm trying to see that side of the

17   room the best I can.

18             22 is right in my line of sight.

19             PROSPECTIVE JUROR NO. 22:  One, I had a

20   complaint filed against me for using my outside

21   voice.  A couple of years later, I filed a complaint

22   because my manager threatened me with violence.

23             MR. GREENFIELD:  All right.  On the first

24   issue, how did that resolve itself?

25             PROSPECTIVE JUROR NO. 22:  I went back to

 1  using my inside voice.

 2          MR. GREENFIELD:  Was there a process that

 3  you had to go through with the company as far as

 4  resolving that issue?

 5          PROSPECTIVE JUROR NO. 22:  No, sir.

 6          MR. GREENFIELD:  All right.  What about

 7  the second one?

 8          PROSPECTIVE JUROR NO. 22:  It was ignored.

 9          MR. GREENFIELD:  It was ignored.

10          Did your company have any sort of policy

11  or procedure for working through a complaint like

12  that?

13          PROSPECTIVE JUROR NO. 22:  I assumed they

14  would have done an investigation, but I can only

15  assume.

16          MR. GREENFIELD:  Were you continuing --

17  were you forced to continue with the person who

18  threatened violence?

19          PROSPECTIVE JUROR NO. 22:  Well, forced is

20  a strong term.

21          I was looking for an interoffice transfer

22  quickly, and I found a position in about three or

23  four months.

24          MR. GREENFIELD:  Did they allow you to

25  transfer positions?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 142 of 228   PageID 13738
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 142

```
 1              PROSPECTIVE JUROR NO. 22:  Yes.

 2              MR. GREENFIELD:  Was that a suitable

 3   resolution for you?

 4              PROSPECTIVE JUROR NO. 22:  Yes.

 5              MR. GREENFIELD:  Now, this one might raise

 6   a few eyebrows:  Does anyone think lawsuits are too

 7   prevalent?

 8              I'm sorry.  Juror No. 22, you can sit.

 9              People file lawsuits too often?

10              MR. GREENFIELD:  Let's start with too many

11   lawsuits.

12              I see 10, 21, 12, 22, 27, 29, and 33.

13              Number 33, we haven't heard from you, sir.

14   Would you mind?

15              PROSPECTIVE JUROR NO. 33:  There is too

16   damn many.  They sue over everything.

17              MR. GREENFIELD:  Why do you think people

18   do that?

19              PROSPECTIVE JUROR:  If there was no money

20   there, they wouldn't be suing.

21              MR. GREENFIELD:  And No. 33, I don't have

22   your occupation, if you don't mind sharing.

23              PROSPECTIVE JUROR:  I am working on my

24   bucket list since I retired in March.  I was a

25   pipeline engineer for 32 years and I was a master
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 143 of 228   PageID 13739
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 143

1  plumber for eight years prior to that.

2          MR. GREENFIELD:  Oftentimes that kind of

3  crosses over in the union world.

4          Were you a member of the union at that

5  time?

6          PROSPECTIVE JUROR:  No, no.

7          MR. GREENFIELD:  What do you like to do in

8  your spare time?

9          PROSPECTIVE JUROR:  I don't have any spare

10 time.  I don't have any spare time.  I'm working

11 from dawn to dusk on everything from landscaping,

12 water garden, all kinds of gardens, aquarium,

13 telescope.  Trying to get caught up.

14          I have three grandkids now, so anyhow, I'm

15 going to get my wife an electric bike.  She had a

16 hip replacement.  Just cramming into everything I

17 can every day.

18          MR. GREENFIELD:  I understand.  I water

19 the grass a lot.

20          PROSPECTIVE JUROR:  We will get a $1,000

21 water bill soon.  We have got a lot of property to

22 keep green.

23          MR. GREENFIELD:  Thank you.

24          PROSPECTIVE JUROR:  Okay.

25          MR. GREENFIELD:  And Juror No. 17, would

1  you mind stepping up for a moment?  I'm sorry to get

2  you back on your feet.

3            Are you doing okay?

4            PROSPECTIVE JUROR NO. 17:  Yes.  I have

5  new knees.  They are supposed to be better.

6            MR. GREENFIELD:  When did you get that

7  done?

8            PROSPECTIVE JUROR NO. 17:  January and

9  October.

10           MR. GREENFIELD:  Okay.  Are you still kind

11  of recovering from that?

12           Are there any additional medical issues?

13  I know we talked --

14           PROSPECTIVE JUROR NO. 17:  I am all good.

15           MR. GREENFIELD:  I see that you are a

16  purchasing manager.

17           Can you tell me a little bit about what

18  that is?

19           PROSPECTIVE JUROR NO. 17:  I work at

20  Windsor Corporation.  It is the worst job in the

21  world right now.  It is that we purchase a lot of

22  items that we resell.  We have three warehouses

23  across the country and some brick and mortar stores

24  as well.

25           MR. GREENFIELD:  Do you work in an

1  individual capacity or do you manage?

2          PROSPECTIVE JUROR NO. 17:  I have been

3  managing a team.  And today was going to be the

4  first time I'm buying just for our brick and mortar

5  stores.  I'm leaving that side and going over to

6  another side.

7          MR. GREENFIELD:  Thank you.

8          I have a few people I want to follow up

9  with some questions that were asked at the very

10  beginning by your Honor about politics.

11          I just want to tangentially touch on that

12  a little bit.

13          I don't think this is about that and I

14  don't want Republicans or Democrats or any way this

15  jury for that -- for that belief.  Okay?  I wanted a

16  cross section of people.

17          Juror No. 6, can I bother you again?

18          PROSPECTIVE JUROR NO. 6:  Sure.

19          MR. GREENFIELD:  Thank you.

20          You mentioned that you had an issue with

21  the mentioning or association with our last

22  president, is that correct?

23          PROSPECTIVE JUROR NO. 6:  That's correct.

24          MR. GREENFIELD:  Okay.  Do you think that

25  you can find, as all the attorneys have said, a way

1    to be in the third bucket and be impartial if any of

2    those political beliefs are brought up?

3              PROSPECTIVE JUROR NO. 6:  I'm not sure

4    about that.

5              MR. GREENFIELD:  Thank you.

6              Juror No. 27, the same thing?

7              PROSPECTIVE JUROR NO. 27:  I wish I could

8    say it differently, but I'm not sure that I could be

9    impartial.

10             MR. GREENFIELD:  Thank you.

11             Juror No. 4, can I bother you again?

12             Hi.

13             PROSPECTIVE JUROR NO. 4:  Hi.

14             MR. GREENFIELD:  Based on some of the

15   conversation you had earlier today, it sounds like

16   at some point you have had a Facebook account in

17   another country.

18             PROSPECTIVE JUROR NO. 4:  Yes.

19             MR. GREENFIELD:  Is that something where

20   you had to live in China to have?

21             PROSPECTIVE JUROR NO. 4:  No.  In the U.S.

22             MR. GREENFIELD:  So if I understand

23   correctly, it was that you believe the Chinese

24   government shut off your account because of your

25   post about Hong Kong?

 1              PROSPECTIVE JUROR NO. 4:  The company --
 2   the company owner is someone -- something they --
 3   for the government to shut down the account on.
 4              MS. GREEN:  Do you feel that your view on
 5   free speech would cloud your judgment and kind of
 6   put you in the third bucket that would not allow you
 7   to be impartial in this case?
 8              PROSPECTIVE JUROR NO. 4:  Let me think.
 9         I think I can be fair and impartial, yes.
10              MR. GREENFIELD:  I appreciate that.
11         Thank you, everyone.
12         I will turn it over to Judge Starr.
13              THE COURT:  I think we are all grateful
14   that you yield back some of your time, Mr.
15   Greenfield.  Thank you very much.
16              So, jury, what I'm going do next, we are
17   going to huddle back in this room and talk through
18   some legal issues.
19              I'm going to let y'all turn your phones
20   back on and resume normal life.  If you really need
21   to go to bathroom, you can do that.
22              There is a chance we may need to talk to a
23   few of you, if there are some questions, checking
24   notes, we realize we didn't get a clean answer from
25   you on a topic, we may need to call a few of you

 1   back in that room.

 2              As soon as we are done with our

 3   housekeeping stuff, we will come back in here and

 4   tell you who is on the jury for tomorrow and who is

 5   excused now.  And then that will be it for the day.

 6              So that may take us half an hour, 45

 7   minutes.  So that is why you keep your cell phones

 8   on.  I hope it will take us half an hour, but it may

 9   take 45 or even a little bit longer.

10              With that, we are going to skidaddle back

11   to this room.  We will see you back here as soon as

12   we can.

13              THE COURT SECURITY OFFICER:  All rise.

14              (Recess.)

15              THE COURT:  Okay.  We are back on the

16   record.

17              Have we got everyone we need in here?  Any

18   team missing anybody?

19              Okay.  Based on that, I think what we

20   should do is talk about remaining excuses first,

21   then challenges for cause.  And then I can jump out

22   of the room while y'all talk about peremptory

23   strikes.

24              We will probably have Team Carter go back

25   in this room and then we will have a wall of

1  separation between y'all to talk about your

2  peremptories.

3            And then y'all just let Kevin know when

4  you are done.  And then we will get back together

5  and make sure we crosscheck lists in here once more.

6  And then we will go back in there and tell them who

7  our jury is.

8            On excuses, I told y'all at the pretrial

9  conference that is really my province, not y'all's.

10 But there are some of these that are in the gray

11 area that I run by y'all and tell you what I'm

12 thinking of.

13           For excuses, I will go over my list first.

14 And if there is anyone who has some sort of excuse

15 that I didn't cover, y'all could flag it for me.  I

16 will tell you what my leaning is on their reasons

17 for an excuse.  And then anyone who disagrees with

18 me, can try to talk me out of it.  Sound good?

19           Okay.  I'm going to go in order.  Excuses

20 could be anything like COVID, scheduling, anything

21 else.  Disability.

22           So my first potential excuse was Juror

23 No. 5.  Juror No. 5 was the one who said he was

24 dizzy and disoriented.  Apparently, he is suffering

25 from a long-COVID symptom on neuro function.

1          Sounds like he's got an appointment on

2    Thursday.  He also said something about later on for

3    us to discuss on cause, being upset by watching the

4    video we talked about.  I'm not going to talk about

5    that.  I'm just talking about excuses now.

6          So as far as an excuse, my leaning was to

7    excuse him under mental impairment.  Because of the

8    manner in which he spoke when he spoke, I thought he

9    probably did suffer enough of a cognitive problem

10   where he may not be attentive enough, even if he's

11   able to take notes.

12          I wasn't as worried about a Thursday

13   appointment.  Appointments can usually get

14   rescheduled.  I'm worried about his cognitive

15   impairment in the meantime.  That is my leaning.

16          Does anyone want to talk me off of

17   Juror No. 5?

18          MR. PRYOR:  I'm in agreement, your Honor.

19          MR. McKEEBY:  Agree as well.

20          THE COURT:  Okay.  I will say on this, on

21   excuses, I think -- I'm pleasantly surprised -- but

22   I think we have a little margin here.

23          And so if there is ever a situation where

24   all three sides are in agreement, even if I'm a jerk

25   on somebody, y'all are in agreement, I will let

 1    y'all excuse somebody if y'all are in agreement.

 2                 Does that make sense?

 3                 Our margins aren't so close that I'm just

 4    going to override your consensus.

 5                 The next one I had on 5 -- so I have

 6    excused 5.

 7                 6 is a juror who talked about COVID.  She

 8    was wearing a mask, also wearing gloves, said the

 9    whole three years she hasn't really gone out.  She

10    also said she had no co-morbidity condition.

11                 This is one where I'm sort of a jerk, but

12    if y'all want to override me, that is fine.  I'm

13    sort of a jerk, because if I don't hear any

14    condition on the co-morbidity list, then I, as a

15    judge, don't have any concrete reason to excuse.

16                 But I will say, there are plenty of

17    lawyers who are concerned about their ability to pay

18    attention, if the person sitting there is worried

19    about germs.

20                 I haven't used that as a basis to excuse

21    anyone in my 10 trials yet.  I don't intend to

22    start.  But if y'all have some sort of consensus on

23    kicking 6 for an excuse, I will do so and use my

24    kick.

25                 Anyone want to excuse her?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 152 of 228   PageID 13748
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 152

```
 1                MR. PRYOR:  Not for that.
 2                THE COURT:  As long as there's -- yes,
 3    agreed.  And we have cause issues that we will talk
 4    about later, which is sometimes hard for y'all to
 5    separate into these buckets.  But excuses are
 6    mine --
 7                MR. PRYOR:  It didn't seem like an excuse
 8    to me.
 9                THE COURT:  Okay.  So I am not going to
10    excuse 6.  We will talk about her later.
11                7, I already excused, the UTA full-time
12    student.
13                That takes us to 12.  12 is the one who
14    said she's self-employed.  And she actually
15    volunteered.  Normally, when someone says
16    "self-employed," that is not enough for me.  I want
17    to know more.  And she volunteered the more, which
18    is, I can't pay the mortgage if I don't do the job,
19    spouse at home had a heart condition.
20                And so when I hear that, that now gets to
21    the level of undue hardship in my mind, when just
22    self-employed, that doesn't -- I usually ask, you
23    know, what is going to happen if you don't do your
24    job.
25                So I thought 12 volunteered enough
```

1  information to get into the undue hardship space.

2  That would be leaning.

3                Does anyone want to talk me out of that

4  and say 12 is not undue hardship?

5                MR. PRYOR:  Your Honor, I must -- my notes

6  must be wrong about 12.  I thought she was the one

7  that also said she couldn't concentrate and

8  comprehend even if she took notes.

9                Is that a different --

10               THE COURT:  I think that's right.  I have

11  tinnitus next.

12               MR. PRYOR:  Okay.  That -- for me, that --

13  I thought cause is appropriate.

14               THE COURT:  Okay.  Understood.  So does

15  anyone want to talk me out of -- for either reason,

16  tinnitus or financial hardship -- that we should

17  keep 12?

18               Okay.  I plan on excusing 12, then.

19               The next one I have down is 21.  This is

20  for grandbaby.  When she told me she isn't in a

21  caregiving role, that kicked me into the jerk mode.

22               And again, if y'all are -- if y'all are

23  thinking she's so preoccupied with photos of the

24  baby and she's upset with all of us for being here,

25  we can use an excuse on her.  Otherwise, I don't

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 154 of 228   PageID 13750
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 154

1    think it rises to the level of undue hardship.

2              So my leaning would be to keep juror 21 on

3    the excuse basis; not excuse her.

4              Anyone want me to talk me off of 21?

5              MR. GREENFIELD:  I'm pretty sensitive

6    about that right now, Your Honor.

7              THE COURT:  I get it.

8              MR. GREENFIELD:  I would be in a very

9    difficult time if I didn't have familial help right

10   now.

11             THE COURT:  I get it.

12             MR. GREENFIELD:  So I'm just --

13             THE COURT:  That is why I asked her the

14   question I did.  And so I asked her, Are you in some

15   sort of caregiving role.

16             Because -- and to be honest, with my

17   family, we did do that in a caregiving role.  And

18   that shifts more back into the automatic excuse.  If

19   you are caring for a kid under 10, you can shift

20   into that role.

21             And with it being a third grandbaby, there

22   could be two others running around uncared for.  And

23   she didn't take the bait on that.

24             So I get your point.  And I want to be

25   sympathetic.  Which is why if y'all agree, I will

1  be.  But in the absence of that, I feel the need to

2  not call it an undue hardship.

3          Do we have agreement from --

4          MR. PRYOR:  No.  I'm in jerk mode.

5          MR. McKEEBY:  I'm not in jerk mode. I

6  would be fine.

7          THE COURT:  Okay.  But because there's one

8  objector, then I am going to stick to my tentative

9  ruling, which is to not excuse her.

10          That takes us to 29.  29 is hosting

11  friends in Scottsdale.  I'm still in jerk mode.  I

12  kept a bride from going to, like, a wedding venue to

13  look at -- it wasn't the wedding.  I think I might

14  draw the line at wedding.  But this sounds like a

15  delightful trip we should all be on but for this

16  trial.

17          Does anyone want to talk me out of the

18  Scottsdale?

19          MR. PRYOR:  I can't read my handwriting.

20          Is that the lady going to Fort Lauderdale?

21          MR. GREENFIELD:  No, Scottsdale.

22          THE COURT:  Different.

23          MR. PRYOR:  Okay.

24          THE COURT:  And I will say -- and I will

25  just say my overall line here -- is if it is kind of

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 156 of 228   PageID 13752
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                        Page 156

1  prepaid travel to a conference and you are speaking

2  or something like that, where you have a unique role

3  or an irretractable role because of the prepaid

4  nature, but I didn't hear anything on Scottsdale

5  about non-refundable, prepaid, any of those words

6  that push me into a more sympathetic category.

7          Okay.  So I will stick with my leaning on

8  Scottsdale and not excuse Juror No. 29.

9          Juror No. 30 is the 50th reunion in

10  Memphis.  I thought this shifts more into the unique

11  role.  If y'all want to talk me out of that, I think

12  there are several that fit into this bucket, several

13  conferences or speakers.

14          MR. PRYOR:  I think 30 is going to be up

15  for cause, but I also -- the 50th, that anniversary

16  sounded pretty good to me, but --

17          THE COURT:  I understand.

18          MR. McKEEBY:  Did he say he was master of

19  ceremonies?

20          THE COURT:  Yes.  MC is a unique deal.

21          Anyone else want to talk me out of my

22  leaning on 30 and say that we should keep 30 here

23  instead of letting 30 go?

24          He also said he had a bad back.  He said

25  his condition is temporary, if he can stretch.  I

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 157 of 228   PageID 13753
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 157

 1  would make a reasonable accommodation for a juror to

 2  stand up and stretch.  I think that is easy to do,

 3  and so I'm not viewing that as the excuse

 4  impediment.  I'm viewing it more the trip, if that

 5  makes sense.

 6         I always try to accommodate people.  I've

 7  had people with blood pressure, blood sugar issues,

 8  and so those are pretty easy to accommodate.

 9         Okay.  So I plan on sticking to my

10  tentative ruling and letting 30 go be an MC.

11         32.  So we have two things to talk about

12  on 32.  One is hearing aid issues that she said

13  wouldn't be an issue unless a hearing aid goes out.

14  So again, to me, that is like the temporary back

15  problems.

16         She did talk about being a special ed

17  teacher that she called for in advance with a lack

18  of subs.

19         That shifted me into more sympathetic mode

20  instead of jerk mode.  But there would be impact on

21  the kids.  And so my thought was, that probably

22  crosses the line into undue hardship.

23         Does anyone want to talk me out of that,

24  32, undue hardship, special ed reasons, not the

25  hearing aids?

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 158 of 228   PageID 13754
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 158

1              Okay.  So I will kick 32 as well.

2              45 is what I have next on excuses.  45 is

3    a prepaid conference, July 11th to 13th, Dana Point.

4              So the next three I have, 45, 48, 49, were

5    all prepaid conferences.  I probably should have

6    asked their role a little bit more.  Prepaid, I

7    think, nudges me in the direction of letting them go

8    in undue hardship, if we have the margins, and I

9    think we do in this case.

10             So I have the same leaning on 45, 48 and

11   49, just because they were all prepaid conferences,

12   they should go.

13             And by the way, we shouldn't even see

14   these people.  The duty judge should be working with

15   the clerk's office to iron these out in advance.  We

16   got several here today, and I'm sorry y'all are

17   having to deal with that.  That's normally why we

18   have a duty judge in rotation to clean these people

19   out so they're not filling up a chair.

20             And so my leaning is 45, 48 and 49, to let

21   them go.

22             MR. CLOUTMAN:  Judge, in answer to 32, did

23   you say let them go or let them stay?

24             THE COURT:  39, I was going to let them go

25   due to the special ed job.

```
 1              MR. CLOUTMAN:  32?

 2              THE COURT:  32.

 3              MR. CLOUTMAN:  I just missed it.

 4              THE COURT:  So what I have, I have as

 5   excusing 7, 12, 15, 30, 32, 45, 48 and 49.

 6              MR. CLOUTMAN:  And 5.

 7              THE COURT:  And -- oh, you are right.

 8   Okay.

 9              MR. McKEEBY:  Which one?

10              THE COURT:  Five.

11              MR. McKEEBY:  Five.

12              THE COURT:  That's nine, excuse.  So it is

13   49 we started with, not 50.  Was it 50?

14              THE COURTROOM DEPUTY:  Yes, during that

15   time, the 50th juror showed up.

16              THE COURT:  Okay.  So we are now looking

17   at 41 potential jurors.  Remember, we are looking

18   for a jury of eight.  Y'all have got four, two and

19   two strikes, so that's eight strikes.  So you've got

20   plenty of people to kick out for cause if they meet

21   the test.

22              So that is who we should talk about next,

23   is challenges for cause.

24              So we should probably just go in the

25   lowest number order.  I'm just going to go one at a
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 160 of 228   PageID 13756
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022                         Page 160

 1   time.  And if it's someone I haven't excused, let me

 2   see if anyone has a cause argument to be made.  All

 3   right?

 4             And this is obviously separate and apart

 5   from your peremptory strikes.  This is where you are

 6   going to tell me your reason.

 7             So for cause, does anyone want to talk

 8   about 1?

 9             MR. McKEEBY:  Yes.

10             THE COURT:  Got it.  Let me have it,

11   Mr. McKeeby.

12             MR. McKEEBY:  Yeah.  She just expressed

13   very strong anti-abortion beliefs.  She suggested

14   that it might color her ability to be impartial.  I

15   thought the Planned Parenthood question really

16   resonated with her, to the point where she didn't, I

17   believe, indicate that she could be impartial.

18             So Southwest would move to strike her for

19   cause.

20             MR. GREENFIELD:  Are you talking about 1

21   here?

22             THE COURT:  1.

23             MR. PRYOR:  That is not what she said, and

24   you have the record.

25             She does have strong views and she didn't

1  even phrase it that way.  But every time, both when

2  you questioned her, I questioned her, when this

3  counsel questioned her, she said that she would

4  follow the law, and the parties would be treated

5  fairly.  And if having strong views about issues

6  like this disqualifies, it would disqualify every

7  juror.

8          THE COURT:  So I went back and checked on

9  No. 1 and she did rehab.  So I get your point.  She

10  did admit to having -- well, I don't know if she

11  said strong views -- but having clear views on

12  abortion, one-sided, based on her religion.

13          But I thought she rehabbed and said she

14  would apply the facts to the law and set those

15  personal beliefs aside.

16          There are a lot of people who didn't do

17  rehab, so we will talk about those.  But I thought

18  she was on the rehab side of the line.

19          So I'm going to overrule that challenge

20  for cause for 1.

21          Okay.  So anybody talking about 2?

22          3 for cause?

23          4 is the next number on my list I had that

24  we will talk about for cause.

25          So anybody for 2 and 3?

```
 1              Okay.  4, anyone want to talk about 4?
 2              MR. GREENFIELD:  I would.  4 for cause.  I
 3   don't think she really rehabilitated herself on the
 4   free speech issue.  I think she's dealt with some
 5   very personal things, that I don't think she's
 6   capable of separating the free speech issues she's
 7   dealing with.
 8              THE COURT:  Understood.
 9              Okay.  So what about No. 4 and free
10   speech?  I think -- obviously, we talked about
11   abortion earlier.  And later on in the question she
12   came more to free speech.
13              MR. PRYOR:  She was asked -- and it wasn't
14   me asking her -- this counsel asked her, and she
15   thought about it carefully.  And she either is from
16   China or her parents -- I mean, this is obviously an
17   important issue to her, and I get that.
18              But being a supporter of free speech
19   shouldn't disqualify you.  And she absolutely, after
20   careful consideration -- because at some point in
21   talking to her, she said she absolutely could follow
22   the law and answer the questions, that she would be
23   unbiased.  And if they want to use a peremptory,
24   fine, but I don't think she established cause.
25              THE COURT:  That is how I read the
```

1  transcript too.  She rehabbed herself, I think both

2  on abortion and on free speech.

3           So I will overrule that challenge for

4  cause on 4.

5           MR. GREENFIELD:  Just for preservation's

6  sake, I respectfully disagree on the abortion issue,

7  I wasn't sure that she rehabilitated herself on

8  that.

9           THE COURT:  Understood.  Understood.

10          MR. GREENFIELD:  Thank you.

11          THE COURT:  Okay.  So on 5, I already

12 kicked out 5 for an excuse.

13          For 6, I have not excused 6.  She's the

14 one I wanted to talk about challenge for cause, on

15 6.

16          MR. PRYOR:  Yeah, 6, absolutely, on not

17 one, but two issues -- well, I guess -- okay.

18          Talking about all issues, she said she

19 could not be fair on abortion.  She specifically --

20 my notes could be wrong -- but I think she's one of

21 the ones that agreed with the third bucket.  She

22 might have been before the third bucket.  But she

23 also had a visceral reaction to former President

24 Trump, and that she could not be fair about anything

25 involving somebody that supported Trump.

1              THE COURT:  Response.

2              MR. McKEEBY:  Yes, Your Honor, a couple of

3    things.

4              First of all, she said she felt strongly

5    about the Dobbs case, but she also said she could be

6    objective.  And so I don't think there is a basis

7    for cause there.

8              And on the Trump issue, I think a handful

9    of jurors indicated that they opposed Donald Trump.

10   But that is not a significant issue in this case.

11   There is a document in a -- one document in an

12   exhibit of 120 pages that suggests that Ms. Carter

13   supported Donald Trump.

14             It is not like abortion.  Abortion

15   obviously is front and center.  But support of

16   Donald Trump is so tangential.  So that cannot be

17   the basis for cause.

18             And moreover, Your Honor, you already

19   addressed that issue to some degree in the motion in

20   limine ruling.

21             If you recall, they asked that we not be

22   allowed to present evidence as to her intent to go

23   to the Women's March as part of her celebration of

24   Donald Trump's inauguration.

25             And I don't recall if we opposed it or

1   not -- I don't think we did -- but you ruled, yes,

2   you can't talk about that because it might prejudice

3   the jury.  So we are not going to get into the

4   reasons that she was in Washington and the Trump

5   support.

6            So it is not an issue in the case and

7   shouldn't be the basis for cause.  What they are

8   really saying is that they don't like somebody who

9   they are pretty sure is pro choice being on the

10  jury.  And that is not the basis for cause.

11           THE COURT:  So let me give you my leaning,

12  and then y'all can hone in on that.

13           I think she rehabbed on abortion.  I don't

14  know that she rehabbed on Trump.  I don't think she

15  did.

16           I get your point on it being a more

17  minimal thing.  And so my question is this:  If it

18  is a more minimal thing, if there is an agreement

19  for y'all to keep the exhibit out, right?  Then it

20  is out.  And I don't know that we are going to hear

21  a reference to Trump or Hillary.

22           MR. McKEEBY:  We will agree to keep that

23  one page out.

24           MR. PRYOR:  It would have to be any

25  reference to Trump, and that is not the only

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 166 of 228   PageID 13762
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 166

 1   reference.

 2             And we filed a motion in limine on it and

 3   they opposed it.  And you ruled in their favor that

 4   the communications that she sent that mention Trump

 5   were going to be part of this case.

 6             Now, one of the parties is saying they are

 7   willing to take it out.  If the other says it, I

 8   would be happy to confer with counsel.

 9             She clearly says, "If Trump is involved,

10   it doesn't matter what, big issue, small issue,

11   we're over it."

12             THE COURT:  And I will say there are four

13   of these who said that.

14             MR. PRYOR:  Yes.

15             THE COURT:  If Trump comes in, then I'm

16   done.

17             And I thought y'all delicately, you know,

18   rehabbed them as much as you could, and they still

19   ended up where they ended up.

20             So here is my thought -- I'm tying to

21   thread the needle as a judge.

22             If we can assure that mentions of Trump or

23   Hillary -- no one hyped up on Hillary -- are out,

24   then I'm okay not challenging these people for

25   cause.

```
 1              I don't know that I can force y'all into
 2   that.
 3              Does that make sense?
 4              So what I'm going to do is leave for a
 5   couple minutes, y'all can talk, and if there is an
 6   agreement, fine.  If there is not, then I heard what
 7   I heard and I need to rule accordingly.
 8              So I'm going to go into a quick recess.
 9   And then y'all tell Kevin when -- and so just -- I
10   mean, so y'all know which ones I'm talking about, I
11   was talking about 6, 27, 30 and 35.  But I struck
12   30 -- well, I excused 30.
13              And so we are really talking about 6, 27
14   and 35 and 43.
15              MR. PRYOR:  And I also had 49, but I don't
16   think we are getting there.
17              MR. GREENFIELD:  No.  She's been excused.
18              THE COURT:  49 is excused.
19              MR. PRYOR:  She's excused?  Okay.
20              THE COURT:  Correct.  49 is excused.
21   You're right.  Thank you for catching that.
22              Okay.  So I'm going to step out in the
23   hall, and then y'all let Mr. Frye know when you are
24   done.
25
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 168 of 228   PageID 13764
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                    Page 168

 1            (Recess.)

 2            THE COURT:  We should take them up one at

 3    a time.

 4            So No. 6, I thought 6 rehabbed on abortion

 5    but not Trump.  So the attempted rehab was

 6    unsuccessful.  Said do not know if could be fair,

 7    and ultimately rehab was not sure could be fair.

 8            So I thought that was sufficient for me

 9    to --

10            MR. McKEEBY:  Your Honor, again, just to

11    reiterate, it is not an issue in this case in terms

12    of that no one is going to put on evidence in

13    support of Trump.  I mean, it is not an issue in the

14    case, so there is no reason for the evidence to come

15    in.

16            There is one page in a multi-page document

17    that references Trump.  So we would agree to exclude

18    that from the packet of documents and not to

19    question her about it.

20            They moved in limine to keep this away

21    from the jury and you granted that.  And

22    understandably so.

23            And now they are asking for -- you know,

24    they are not agreeing to us deleting that one piece

25    of paper in that packet of documents for the express

1   purpose to disqualify jurors.  And that is not how

2   you -- that is not a for-cause basis.

3            And moreover, I mean, it's not surprising,

4   no one spoke up with Hillary Clinton.  No one thinks

5   about Hillary Clinton.  So they are using this

6   basis --

7            THE COURT:  I think Trump thinks about

8   Hillary Clinton.

9            MR. McKEEBY:  The jurors are not as

10  inclined -- we are not inclined to get people to

11  raise they hands and say, yeah, you know, if

12  somebody supports Hilary, I've got a problem with

13  them.

14           They did that with Trump.  They got four

15  people to stand up and say, I don't like Trump.  I

16  don't think that they all said, I couldn't be fair.

17  They just said, I'm done, whatever that meant.

18           But moreover, it is not an issue in the

19  case.  We are not going to talk about Donald Trump

20  in the case.  They want to exclude her because they

21  think -- probably, legitimately -- that they are pro

22  choice.  And -- but that is not a basis for

23  excluding them from the jury, simply that they are

24  pro choice.

25           THE COURT:  I understand.  We need to keep

1  moving, though.  We are 30 seconds --

2           MR. PRYOR:  We're rearguing this, what you

3  have already decided.  That is not correct.  We did

4  not move to limine that page.

5           In Audrey Stone's complaint to Southwest

6  Airlines, she complains about the politics.  And it

7  is discussed by Ed Schneider, the people that

8  reviewed this.  And it does talk about Trump.  We

9  did not move to limine that.  We moved to limine

10  that -- her going to Washington, DC for Trump.  And

11  that is what you limined.

12           It is part of the case.  It is going to be

13  in evidence.  And witnesses that absolutely didn't

14  say, And me.  No.  The person said, I can't decide

15  anything fairly if Trump is on there, and several

16  agreed.

17           MR. GREENFIELD:  Your Honor, then we have

18  to run numbers.

19           THE COURT:  Okay.  You can have

20  30 seconds, too.

21           MR. GREENFIELD:  We need to identify one

22  piece of evidence that is in this stack of social

23  media posts that she sent to Audrey Stone.  They

24  requested to limine that out.  We would be happy --

25  that is the truth, sir -- we would be happy to keep

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 171 of 228   PageID 13767
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 171

1  that post out.  If they didn't want to introduce it
2  in the first place, and we had to fight to introduce
3  that stack of exhibits, I believe we should be able
4  to at least keep that page in.
5          THE COURT:  I understand at a pretrial --
6  and I'll stick to this -- I think the material she
7  sent to the Union was part of what Southwest was
8  looking at when they were making the termination
9  decision.  So even though it is not front and center
10 in the case like abortion is, I think it is in the
11 case enough to where it still matters.  And the
12 reactions were strong enough here that I feel like
13 they should be struck for cause.
14          So I will do that.  My ruling is for 6,
15 27 -- I have already 30 as an excuse -- 35, and 43.
16          Which means we should go back after we
17 picked up with 6.  We should figure out where we are
18 going now.
19          7 is out for an excuse.  It takes us to 8.
20 Does anyone want to talk about 8?
21          I have 9 as a potential to talk about
22 next.
23          MR. PRYOR:  I have 9, abortion, third
24 bucket.
25          THE COURT:  Yeah, I had third bucket.  She

1  said she couldn't separate it.

2           MR. PRYOR:  And I frankly don't know if it

3  was one of the buckets for or against abortion.

4  There is both.  I don't remember, but I wrote down

5  third bucket.

6           THE COURT:  Anyone want to talk me off of

7  9?

8           MR. McKEEBY:  For 9, she just said that

9  she had strong opinions, but she didn't say anything

10 that I too -- I don't think that she ever

11 articulated her beliefs.  And so I don't -- and she

12 just said that she had strong opinions.  I don't

13 think she suggested that there would be any

14 difficulty in her being impartial.

15          THE COURT:  And so I read it differently.

16          I read that she didn't articulate which

17 belief she had, but that she would have a hard time

18 sidelining them.  And so that -- you know, I don't

19 know that I can force someone to say what their

20 beliefs are.

21          I think we had one person who sort of

22 boomeranged later.  Oh, it is a pro life video, then

23 I would be okay with that, right?

24          And so, I mean, sometimes people

25 accidentally tell you what their beliefs are.  But I

1  thought she did say whatever her beliefs were, she

2  said she would have a hard time sidelining them.  So

3  my leaning is to kick out 9 for that reason.

4          So I will overrule that objection and

5  sideline 9.

6          Who should we talk about next?  10.

7  Anyone want to talk about 10?  Or 11?

8          12, I excused.

9          Anyone want to talk about 13 or 14 and

10  cause?

11          15, I excused.

12          So 16 or 17 on cause?

13          18, we should talk about -- I thought that

14  person said they were Christian --

15          MR. PRYOR:  Oh --

16          THE COURT:  Yes, what do you have on --

17          MR. PRYOR:  No, no.  I'm ready to respond

18  to anybody that wants to object to 18.

19          THE COURT:  I'm sorry.  Okay.

20          MR. PRYOR:  I understand he had strong

21  views.  But every time said, I will still be fair.

22  And then he was asked, I think, about free speech at

23  work, but he was asked -- talking about something

24  that is not on all fours with what is going on here.

25          If he's going to be considered struck for

1   that question, he did say he thought it would be

2   hard for him, I would like to bring him in and ask

3   questions.  I didn't get a chance to rehabilitate

4   him.

5          THE COURT:  So it wasn't the first part

6   that I was concerned about, because I thought he did

7   rehab.  It was the second part.  Honestly, I don't

8   know that I have perfect clarity, but I did think he

9   said enough where I wrote him on my cause list to

10  where his thoughts on there should be no

11  restrictions on religion in the workplace.

12          I never asked him, if that is not the law,

13  could you follow the law.  I never asked him that

14  rehab question.

15          Does anyone have a recollection or feeling

16  on this one?

17          MR. McKEEBY:  Yes.  Strong feeling that

18  that -- I agree with you on the abortion issue,

19  rehabilitated, but not on the expression of

20  religious views in the workplace.

21          He said that he cannot be fair and

22  impartial if someone was not allowed to express

23  their views about religion in the workplace.  That

24  is critical and basis for cause.

25          THE COURT:  So my thoughts are either I

1  strike him because of the second thing he said or I

2  ask him the one rehab question.  And no one else

3  asked the question.

4           MR. PRYOR:  I would have asked a rehab

5  question if I thought it was necessary.  I didn't

6  have it in my notes.  The only rehab question I

7  thought was the question Adam asked about free

8  speech.  And I can't even remember the context now,

9  but I wrote down, May need to rehab.  But I

10  thought -- and you guys have the transcript -- but I

11  didn't think he was for cause unless the free speech

12  issue.  That's --

13           THE COURT:  Well, bring him in and ask him

14  one question on, Could you, not notwithstanding your

15  views on -- so it is Juror No. 18; is that right?

16           (The prospective juror entered the room.)

17           THE COURT:  You're Juror No. 18.  This

18  won't take long.  Welcome to our above-ground lair.

19           Okay.  So I apologize for not asking this

20  earlier.  I should have.

21           Near the end of the questioning, they were

22  asking you questions about restrictions on speech in

23  the workplace when it comes to religion.

24           PROSPECTIVE JUROR NO. 18:  Right.

25           THE COURT:  You said that you had a

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 176 of 228   PageID 13772
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                        July 05, 2022                    Page 176

 1    problem with those.

 2            So my question is this -- I can't tell you

 3    right now how much federal law let's employers

 4    restrict speech in the workplace.  I have to tell

 5    you at the end of the case.

 6            But whatever I tell you, could you follow

 7    it and say, Okay, well, I don't like that law, I

 8    don't agree with that law, but Judge Starr told me

 9    to follow it, could you follow it or would your

10    personal beliefs on what the law should be sort of

11    override that second bucket of what the law is?

12            PROSPECTIVE JUROR NO. 18:  If you tell me

13    what the law is, I could probably follow it.

14            THE COURT:  Okay.  I appreciate you

15    answering that.  Thanks for coming back in.

16            PROSPECTIVE JUROR NO. 18:  Thank you.

17            (The prospective juror exited the room.)

18            THE COURT:  Okay.  So he rehabbed, so --

19            MR. McKEEBY:  Your Honor, he said he could

20    probably follow it.

21            THE COURT:  Okay.

22            That's what he said, probably.

23            Should we call him back in for

24    clarification?

25            MR. McKEEBY:  I think that's strong

1    enough, but I'm happy to call him back in.

2             THE COURT:  Okay.  Could or could not is

3    what we need, right?

4             Do you want me to call him -- I'm serious.

5    I can call him back in.  I was reading his

6    non-verbals more than his verbals.

7             So should we call him back in for either a

8    could or could not?

9             MR. McKEEBY:  I'm pretty sure I know what

10   he's going to say.  But I think he said I could

11   probably do it.

12            THE COURT:  Which I think is not enough.

13   And to be fair for you, I don't think that is fair.

14   I don't know what he's doing because I was only

15   reading his nonverbals, you were reading his

16   verbals.

17            Can you call him back in for another

18   question?  I'm sorry.

19            Now that you and I are on the same page on

20   clarity, there is no problem.  Promise that you

21   will.

22            (The prospective juror entered the room.)

23            THE COURT:  I'm back at it again.

24            They accurately told me I missed the word

25   "probably" in your answer.  I could probably do

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 178 of 228   PageID 13774
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                                   July 05, 2022                                   Page 178

1    that.

2              The problem is, I need a promise that you

3    could or could not do that.

4              Could you follow the law if I told you the

5    law was something you don't like, you don't agree

6    with, could you follow the law?

7              PROSPECTIVE JUROR NO. 18:  Yes.

8              THE COURT:  Okay.  Thank you for your

9    answer, and I'm sorry to bring you back here twice.

10   That is my fault, not theirs.

11             (The potential juror exited the room.)

12             THE COURT:  Okay.  I'm sorry.  I should

13   have asked the clean question the first time.

14             Okay.  So I am not going to excuse him --

15   or challenge him for cause, sorry.  I'm not going to

16   kick him for cause.  So that is 18.

17             19 and 20, anyone want to talk about 19

18       and 20?

19             21, I'm the jerk on the grandbaby.

20             Anyone want to talk about cause on 21 or

21       22?

22             23 or 24?

23             How about 25 or 26?

24             UNIDENTIFIED SPEAKER:  We may have 16

25   people.

```
 1              THE COURT:  What's that?
 2              UNIDENTIFIED SPEAKER:  We may have 16
 3  people already.  We might be there.
 4              MR. PRYOR:  I thought we had to go a
 5  little further, but okay.
 6              THE COURT:  Let's go five more jurors in,
 7  and then we'll know we're safe.
 8              MR. HILL:  All right.  The miscarriage
 9  lady, 26.
10              Yeah.  The miscarriage lady -- the poor
11  woman who had a miscarriage was 26.  I just don't
12  see how someone could sit on this jury and watch
13  that video.
14              MR. PRYOR:  No, no.  I agree.
15              THE COURT:  I thought this is the one that
16  y'all might all agree on.
17              What do you think, Mr. Greenfield?
18              MR. GREENFIELD:  I do not.
19              THE COURT:  You do not?
20              MR. GREENFIELD:  I would like her to be
21  here.
22              THE COURT:  Okay.
23              That's someone with real tangible --
24              MR. GREENFIELD:  Wait.  I didn't hear you.
25  What?
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 180 of 228   PageID 13776
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 180

1           I said that's someone -- I think someone

2  with real tangible experience with what's happening,

3  while it is difficult, I think her voice should be

4  included.

5           THE COURT:  While I see your point.  I

6  think the emotion she spoke with about the three

7  weeks ago.  I think the problem is, I don't know

8  that she would be a fully attentive juror.

9           All right?  Which goes like to the person

10  with tinnitus and like the person with some

11  long-COVID symptoms on mental competence.

12           At that point, I think -- I don't mind

13  making people suffer, but if they suffer to the

14  point of not paying attention, that is where I get

15  concerned for y'all.

16           MR. GREENFIELD:  Can we ask --

17           THE COURT:  I'm okay asking her.  I will

18  be the bad guy.

19           MR. PRYOR:  We are going to ask her?

20  Okay.  Well --

21           THE COURT:  I asked follow-ups on 18, so I

22  will ask follow-ups here.

23           (The prospective jurors entered the room.)

24           THE COURT:  Are you Juror No. 26?

25           PROSPECTIVE JUROR NO. 26:  Yes.

1              THE COURT:  First, I want to say I'm sorry

2    for what you went through.

3              PROSPECTIVE JUROR NO. 26:  Thank you.

4              THE COURT:  I hate to be a jerk and ask

5    you one more question.

6              PROSPECTIVE JUROR NO. 26:  That's fine.

7              THE COURT:  But I need to ask you one more

8    question.

9              PROSPECTIVE JUROR:  That's okay.

10             THE COURT:  If you saw graphic images or

11   in light of what you went through three weeks ago,

12   do you think you would be able to pay attention to

13   the evidence in the case or do you think your mind

14   would wander with what you went through three weeks

15   ago?

16             PROSPECTIVE JUROR NO. 26:  With that

17   specific evidence, I'm not sure.  I think my mind

18   would go to what I went through.  With other

19   evidence, I think I would be able to focus on other

20   evidence.

21             THE COURT:  I really appreciate your

22   honesty, and I'm so sorry to bring you in here.

23             PROSPECTIVE JUROR NO. 26:  That's okay.

24             THE COURT:  That is all I have for you.

25             (The potential juror exited the room.)

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 182 of 228   PageID 13778
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                          Page 182

```
 1              THE COURT:  So unless there is an
 2    agreement to exclude the evidence, going back to
 3    that kind of thing, to reopen that can, if the
 4    evidence is still in, then it is still part of the
 5    case.  So I think I have to grant the cause
 6    challenge on that.
 7              I will note your objection, I will
 8    overrule it, and I will kick 26 out.
 9              Okay.  So why don't we go up to 30?
10              So that is 26.
11              27 is one I just ruled on already for
12    Trump.
13              28 or 29, I have no excuses for.
14              Anyone have challenges for cause on 28 or
15    29?
16              Okay.  So I think we know we are good
17    through the first 30.  Hopefully that is enough with
18    our four, two, and two strikes and a jury of 8.  And
19    if not, for any reason, then -- I don't know how
20    many people in the first 30 that we kicked.
21              MR. PRYOR:  So can we agree where we are
22    striking through?  I haven't done the math.
23              THE COURT:  Do you want to -- on Juror 22?
24              MR. PRYOR:  I hate to waste a strike on
25    Juror 35.
```

```
 1              THE COURT:  I've got 10 of the first 30 as
 2   ones I've excused or struck for cause.
 3              Does that add up to the first 30 numbers,
 4   with 30 being inclusive?
 5              UNIDENTIFIED SPEAKER:  Mine shows the
 6   strikes go through No. 22.  That would be the 16th
 7   person.  No. 22 would be the 16th person.
 8              THE COURT:  Okay.  So what I will do then,
 9   I will head out of this room.  And we can see if
10   this door can open for Team Carter.  If you want to
11   use your peremptory, let Mr. Frye know when you are
12   done.  And then I will come back in, we'll go on the
13   record and say what the jury is, and then go tell
14   them.  Sound good?  Okay.  Thanks.
15              (Recess.)
16              THE COURT:  Okay.  I was informed there's
17   issues we need to talk about before raising --
18              Mr. McKeeby?
19              MR. McKEEBY:  Yes, your Honor.  It came up
20   in our discussion that -- something about Juror 21
21   that we feel like we probably should disclose and we
22   feel like we have an obligation to disclose.
23              She works for Sedgwick, who I've heard of,
24   but I'm not familiar with.
25              They are a worker's comp administrative
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 184 of 228   PageID 13780
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                           July 05, 2022                           Page 184

 1  provider and they work a significant contract with

 2  Southwest.

 3            And so that is something that I wanted to

 4  make sure counsel for Carter as well as the Court is

 5  aware of.

 6            THE COURT:  Okay.

 7            So let me ask, counsel for Carter, what do

 8  y'all want to do with that information?

 9            MR. PRYOR:  Your Honor, that was a

10  question that was asked that should have brought

11  that answer out, so it is very concerning that we

12  didn't get that answer.  Maybe she didn't hear it, I

13  don't know.  But, you know, call her in and talk to

14  her about it.

15            It also could change our strike list now

16  that we have this new information.

17            THE COURT:  So any objection to me calling

18  her in, you ask her a question on Sedgwick?

19            Okay.  Can we go get 21?  I will move

20  over.

21            MR. PRYOR:  Just Sedgwick?

22            THE COURT:  What's that?

23            MR. PRYOR:  I have a few other questions

24  now that I wish I had asked her.

25            It's always 20/20, isn't it?

1              Hold your fire.

2              (The potential juror entered the room.)

3              THE COURT:  Juror No. 21, if you can stand

4    somewhere in that general direction.  I wanted to

5    let Mr. Pryor ask you a follow-up question about

6    Sedgwick and its relationship to Southwest.

7              Go for it.

8              PROSPECTIVE JUROR NO. 21:  Okay.

9              MR. PRYOR:  Right.  And when I asked a

10   question about anyone -- worked for anyone that does

11   a lot of business with Southwest Airlines, do you

12   think Sedgwick falls within that?

13             PROSPECTIVE JUROR NO. 21:  If they do, I'm

14   not aware of it.

15             MR. PRYOR:  Okay.  That is not something,

16   you -- do you know what they do for Sedgwick?

17             I mean, I guess their standard -- I don't

18   recall what Sedgwick does.  Billing or --

19             PROSPECTIVE JUROR NO. 21:  Sedgwick is a

20   broker for insurance.  But, I mean, if they have

21   anything to do with Southwest, I'm not aware of it.

22             MR. PRYOR:  Okay.  Now that you know they

23   might be, is that going to be any problem for you?

24             PROSPECTIVE JUROR NO. 21:  No.

25             MR. PRYOR:  Okay.  You wouldn't talk to

1    anybody at work about that --

2              PROSPECTIVE JUROR NO. 21:  No.

3              MR. PRYOR:  -- so it wouldn't in any way

4    affect your opinion?

5              Thanks so much for answering the

6    questions.

7              (The potential juror exited the room.)

8              THE COURT:  So back to your rooms, now.

9    Any other questions on that or --

10             MR. PRYOR:  It does not change our strike.

11             THE COURT:  It does not change it.  Okay.

12             Is everyone ready to use their strikes?

13             MR. PRYOR:  We're ready.

14             THE COURT:  Okay.  Then let me ask Carter

15   first.  I think y'all have the strike zone up to 22.

16   So let me ask Carter first.  Y'all have four.

17             MR. PRYOR:  We do have four strikes.

18             THE COURT:  Who are you thinking?

19             MR. PRYOR:  Well, Your Honor, I'd rather

20   just show them to you before disclosing what the

21   other side say theirs are as well.  They might

22   decide to change one of them.  I mean, not that you

23   guys can think that quick, but you never know.

24             Let me see what he has put on there.  Make

25   sure he's got the right ones.

```
 1              THE COURT:  So y'all double struck No. 8,
 2   which does not surprise any of us, because as I told
 3   my clerks, everyone can strike 8.  So
 4   congratulations.
 5              I used to do that.  And it's 5:00, they
 6   want to get out of here.  So I think everyone should
 7   be satisfied that 8 is not serving on your jury.
 8              Okay.  So what that would leave us if we
 9   strike 1, 4, 8, 11, 13, 18, and 20.  That means our
10   jury is:  Juror No. 2, 3, 10, 14, 16, 17, 19.
11              Is that it?  Or is 21 our last?  21 is our
12   last juror.
13              So I will say that one more time.
14              So our jury would be:  2, 3, 10, 14, 16,
15   17, 19 and 21.
16              So no one I listed off is the subject of
17   an excuse, a challenge for cause, or peremptory.
18   Right?
19              Okay.  So we should go back in.  I will
20   let y'all go in first.  I will come on last, and I
21   will tell the folks who our jury is.  I'll tell them
22   show up at 8:45 tomorrow.  We will get rolling at
23   9:00.
24              Any other issues?
25              MR. PRYOR:  Your Honor, I do have one
```

1    other issue.  My understanding is that -- it's about

2    opening remarks.

3              Should we discuss that in the morning?

4              THE COURT:  Let's maybe save that one once

5    we kick them out of the room.  And then once they

6    are out of the room, we can talk about everything

7    for tonight and tomorrow.

8              All right.  I will let y'all go back in

9    first.

10             (Recess.)

11             THE COURT SECURITY OFFICER:  All rise.

12             THE COURT:  Thank you.  You can be seated.

13             Okay.  That is the last time y'all have to

14   stand for me.  Even if you get picked for jury

15   service, the rest of the week I stand up for y'all.

16   So we are flipping the tables a little bit.

17             We have got our jury, and I will tell you

18   which eight people it is going to be.  If I do not

19   call your number, that means you are not on the

20   jury.  And so if I didn't call your number, I'm

21   going to excuse you and you can go ahead and leave.

22             If I call your number, I have just got 30

23   seconds' worth of instructions once those folks file

24   out of the room who weren't selected.

25             So our jury of eight people is going to

1   be:  Juror No. 2, Juror No. 3, Juror No. 10, Juror

2   No. 14, Juror No. 16, Juror No. 17, Juror No. 19,

3   and Juror No. 21.

4           With that, we are all going to stand up.

5   And if I did not call your number, you are free to

6   leave.  You are excused as a juror in this case.

7   Thank you for your service in this case.

8           THE COURT SECURITY OFFICER:  All rise.

9           THE COURT:  Hey, guys, y'all have jury

10  certificates that Mr. Frye will hand to you.  So if

11  you want that, don't leave before you get it.  It is

12  your permission slip.

13          (The excused prospective jurors exited the

14      courtroom.)

15          THE COURT:  Okay.  So I will go ahead and

16  begin just our instructions.

17          As a reminder, we're going to start

18  tomorrow -- if you can meet up at 8:45, if you show

19  up to the 15th floor of this building, you will have

20  to go through security here.  And then once you get

21  up to the elevators, there is another security you

22  have got to go through.  Tell them you're here for

23  Judge Starr's trial and they will bring you back to

24  my jury deliberation room behind my courtroom.

25          If you can be there by 8:45, then we will

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                July 05, 2022                    Page 190

1  be on the record going by 9:00.  The lawyers and I

2  get here early and handle legal stuff, so we try to

3  get as much of that out of the way that it doesn't

4  waste y'all's time as humanly possible.  So we will

5  already be going by the time y'all get here.

6           But we will start at 9:00.  We will have a

7  break midmorning.  An hour for lunch as close to

8  noon as we can get it.  You can bring your lunch.

9  We have got a fridge.  You can eat lunch out.  That

10 is fine, too.

11          We take two breaks in the afternoon, and

12 then cut you loose as close to 5:00 as we can.

13          If there is any day where I think we have

14 witness scheduling issues and we may need to push a

15 little after 5:00, I will ask our court security

16 officer to tell you in advance, just because I know

17 y'all may have commitments and it may not be

18 possible to keep a witness who has got to leave town

19 the next day to keep them over.  So we will try to

20 be transparent with you about that.

21          I tell you three things every time we have

22 a break in a case -- and you are going to get so

23 tired of me saying these.

24          Number one is, don't talk to anyone in the

25 courthouse except your fellow jurors.  Only talk to

1  your fellow jurors, just not about this case.  You

2  can't even talk to your fellow jurors about this

3  case yet.  Only once you start deliberating can you

4  talk about this case, and only then with your fellow

5  jurors.

6          Don't do any research about this case as

7  well.  So don't talk to anyone other than your

8  fellow jurors or court personnel.  Only talk to them

9  about non-case things.

10          And then don't do any research.

11          Those are your instructions.  Once we get

12  here at 9:00 tomorrow, I will swear you in as jurors

13  and then we will have opening argument from all

14  three sides.  And we will get going with our first

15  witness.

16          Thank you so much for being here, for

17  paying attention, and for being patient with us.  I

18  really appreciate y'all's demeanor here today.

19  Y'all are a tribute to America.

20          Yes, Juror No. 19.

21          PROSPECTIVE JUROR NO. 19:  Do we need to

22  bring -- like, if we want to take notes, do we bring

23  our own stuff, or do y'all provide that?

24          THE COURT:  It is the only thing our

25  government will provide you.  I mean, we will give

1  you a pen and a notepad, and so you will be good to

2  go there.

3          PROSPECTIVE JUROR NO. 19:  Okay.

4          THE COURT:  But thank you for asking that,

5  because I do -- I mentioned earlier, I'm a judge who

6  allows note taking.  I will give you some

7  instructions tomorrow.  You can't let your notes

8  override your memory or someone else's memory.  But

9  I'm a note taker, and my notes jog my memory.  And

10 so I let people take notes for that reason.  But you

11 can't let your notes supercede your thoughts or

12 someone else's thoughts of what happened.

13         PROSPECTIVE JUROR:  Are we allowed to tell

14 our employers today?  Do we have something to give

15 them or --

16         THE COURT:  So, yes.  Mr. Frye will have a

17 certificate for you.  And just for planning

18 purposes, we think midweek next week is when we will

19 close the case, and that is when we give it to you

20 for deliberations.

21         Most of our juries don't deliberate beyond

22 a day, right, if we give them the case, you know,

23 noon one day.  Usually they've wrapped up

24 deliberations by noon the next day.

25         You've heard cases in the media that

1   deliberate for a long time.  So I can't promise you

2   how long you will deliberate.  That is entirely up

3   to y'all.

4            And once y'all deliberate, y'all set your

5   own schedule.  We are running on a 9-to-5 schedule

6   now, but once you take the baton and y'all

7   deliberate, if y'all want to deliberate 24/7, you

8   can.  And we have to stay in the courtroom and be at

9   your beck and call.  And that is fine.  We will do

10  it.

11           Any other questions?  Okay.  Thank y'all.

12  I love working with juries and I will just say this:

13  Juries are one of the best parts I've ever seen

14  about America.  So y'all give me great pride.  Even

15  though you may not be happy to do this, I am happy

16  to have you here because y'all are the real judges

17  in the case.  So I look forward to giving you more

18  instructions tomorrow at 9:00 when we get going on

19  the record.

20           Let's all rise for the jury.

21           (The jurors exited the courtroom.)

22           THE COURT:  Okay.  Y'all can be seated.

23           Mr. Pryor, you had some things you wanted

24  to talk about as far as opening tomorrow.

25           MR. PRYOR:  I was informed from one of my

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 194 of 228   PageID 13790
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022                         Page 194

1  people that one of the Defendants is going to use

2  the video or something or the screen, and I just

3  want to see anything before it is displayed to the

4  jury.

5          THE COURT:  So can I ask -- and this is

6  for tomorrow, as well as for all days of trial -- if

7  you have a demonstrative that exists before the day

8  it is used, can you disclose it that night at 8:00?

9  I mean, I know we will have sort of disclosures at

10  6:00 of here will be our witnesses and exhibits for

11  tomorrow.  If it is a demonstrative that exists,

12  like a PowerPoint for opening or closing, if you

13  could hand that over at 8:00.  I don't need to see

14  any objections in writing to that.  But the next

15  morning, when we convene at 8:30, I can say, Okay,

16  we saw the PowerPoint, what issues do you have with

17  the PowerPoint?  Does that make sense?

18          As a reminder for openings, I ask y'all

19  extend to each other the courtesy of not objecting

20  during someone else's opening.  But I'm going to

21  make eye contact with everybody.

22          So, Mr. Pryor, are you doing the opening?

23  Or who is doing the opening?

24          MR. PRYOR:  Your Honor, I'm opening.  And

25  I do want to make a record on your ruling in that

1   regard.

2              THE COURT:  Yes.

3              MR. PRYOR:  We object to that.  We believe

4   that if things are said during the opening that are

5   objectionable, that we should have the opportunity

6   to object and could be cured at the time.  And it's

7   more difficult to cure it, especially if it goes on

8   and on.

9              And so, I don't like people objecting

10  during opening.  I get it.  And it is not my desire

11  to do that, but I think there is the potential for

12  prejudice if it is a blanket order that you can't

13  object.

14             THE COURT:  I have never done a blanket

15  order that you can't object.  I have done a request

16  for people to hold their objections until the end.

17  Because I can declare a mistrial.  I can give a

18  curative instruction.

19             Now, the curative instruction might not

20  work if it's -- you know, they said something

21  heinous at minute one.  If it's really heinous, if

22  it's, like, a limine violation, stand up.  Right?  I

23  will call a sidebar.

24             At the end, I'm going to look at all of

25  you and make eye contact.  And if anyone is looking

1  at me, then I'm going to say, Okay, sidebar, right,

2  after that opening occurs.

3            MR. PRYOR:  Okay.  So it is not a rule

4  that we can't object, it is your request that we not

5  object.  And you are saying that we can then make

6  the objections, if we have any, after the opening is

7  concluded?

8            THE COURT:  So the only time you would

9  stand up is when a curative instruction has to work

10 right then in order to avoid a mistrial.

11           Does that make sense?

12           MR. PRYOR:  It does.  It does.

13           THE COURT:  If a curative instruction

14 would work at the end of closing, I will give the

15 curative instruction at the end of closing.  Right?

16           And if it is a mistrial now, it is a

17 mistrial now.

18           Let them finish their closing or opening.

19 All right.

20           MR. PRYOR:  Your Honor, the issue that is

21 in my mind is a ruling that you made on the limine

22 about the last chance law.  And we want to be

23 sure -- I'm going to -- I'll argue that now, but

24 it's a discussion, obviously.  But that last chance

25 letter is an issue we want to be sure and preserve

 1   our record on.

 2              And if they discuss it during opening, I

 3   would want to stand up and object.  Even though I

 4   know what your ruling is, Your Honor, at least on

 5   the limine.

 6              And so I feel the need to preserve my

 7   record on that.  And I think that is the only issue

 8   that comes to my mind right now.  But that is the

 9   kind of thing I'm thinking of, things that I want to

10   preserve a record on.

11              THE COURT:  Sure.  Understood.

12              Do you have a response, Mr. McKeeby,

13   before I say my thoughts?

14              MR. McKEEBY:  We do plan to mention the

15   last chance agreement during opening.

16              THE COURT:  Sure.

17              MR. McKEEBY:  But I don't have a problem

18   with him objecting at the close of the opening and

19   preserving the record.  He could do that outside of

20   the jury's presence and then the Court can decide if

21   some limiting instruction in front of the jury is

22   necessary.

23              THE COURT:  Sure.

24              So what I will do is, I will go back and

25   refresh what my ruling was on that point.  But I

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 198 of 228   PageID 13794
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 198

1  don't have a problem.  If I limined something out --
2  if I have allowed something in and haven't limined
3  it out, and you have a duty to keep objecting, I
4  have no problems with us saying -- and we are saying
5  this on the record beforehand -- that you are
6  objecting to it then.
7          I have no problem with you saying at the
8  very end of it, at a sidebar, We object to the
9  reference of the ELCA, and we ask for it to be
10 struck and ask for a curative instruction and a
11 mistrial, if that doesn't work.  I don't know how
12 that is not preserving error.  If I told you --
13         MR. PRYOR:  Can I get counsel for both
14 Defendants to state that that is their agreement,
15 that any objection not made during opening is no
16 waiver and it can be made at the conclusion of the
17 opening?
18         MR. McKEEBY:  Yes.
19         MR. GREENFIELD:  That is acceptable.
20         THE COURT:  Is that sufficient?  Thank you
21 for being professional and diplomatic.
22         I'm only putting this rule in because I
23 know once it spirals down, y'all can just dog pile
24 each other.  And I prefer an approach where y'all
25 collegially present this to the jury.

```
 1              And to me, juries work much more
 2   effectively when they haven't just seen lawyers
 3   stabbing each other with knives in opening.  Right?
 4   And to the extent y'all can do that, I think it
 5   helps all of your clients.
 6              MR. PRYOR:  And I should state that I
 7   appreciate counsel's agreement and the Court
 8   covering this issue.
 9              I don't mean to say that by entering into
10   that agreement that I won't object during opening,
11   but it certainly allows us the opportunity not to
12   unfairly interfere with someone's opening.  So I
13   will certainly try to do that.
14              THE COURT:  Well, now that you have got
15   the agreement, I can't promise that I won't say, You
16   shouldn't object, like we talked about here at
17   trial.  Save it, Pryor, for afterwards.
18              So I get that you reserve the right to
19   stand up and object.  And I reserve the right to
20   say, I told y'all not to do that.  Understood?
21              MR. PRYOR:  Yes, sir.
22              THE COURT:  Okay.  So 6:00 and 8:00 -- we
23   are pretty close to 6:00.  I'm going to say that
24   6:00 designation, 6:30, then 8:00 objection.
25   Lobbing from the other side.
```

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 200 of 228   PageID 13796
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                         Page 200

1                    And then, Mr. McKeeby, you pointed out

2       additional exhibits on a wide-open cross for

3       plaintiff's witnesses.  8:30 instead of 8.

4                    MR. PRYOR:  And Democrats.

5                    THE COURT:  And demonstratives.

6                    Anything else we need to talk about?

7                    MR. PRYOR:  No.

8                    Do we have access to your courtroom?

9                    Our files are up there and there's some

10      things I need to look at.

11                   THE COURT:  For a fee.  I'm joking.  I

12      think it is open.  We can check and make sure.

13                   MR. HILL:  Can we get into the courtroom?

14      Our files are in our breakout room.

15                   THE COURT:  The breakout room.  Someone

16      has got a key.

17                   I take it no one is anticipating

18      conducting a deposition this evening?

19                   MR. PRYOR:  We would be happy to.

20                   THE COURT:  I don't suppose we've heard

21      any movement on witness availability at a deposition

22      this evening?

23                   MR. McKEEBY:  I don't believe so.

24                   THE COURT:  Okay.

25                   MR. McKEEBY:  Our thought was to send the

Case 3:17-cv-02278-X  Document 447  Filed 06/14/23  Page 201 of 228  PageID 13797
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Page 201

1  witness your order, which I understand you entered

2  at 3:45.

3              THE COURT:  Yes.

4              MR. McKEEBY:  And that we would follow up

5  and try to get the witness to cooperate and attend

6  the deposition.  I believe that's for tomorrow

7  evening.

8              THE COURT:  That is much more likely,

9  given the hour of the day.

10             If there is bright ideas y'all have

11 tonight on things I can do to help out, let me know.

12 Messenger pigeon, marshal delivery of the order;

13 something.

14             All right.  Okay.  Well, we will see y'all

15 at 8:30 in the morning.

16             We're going to talk about objections to

17 exhibits for tomorrow and any demonstrative

18 objections.

19             All right.  Thank you y'all.

20             This was a great jury selection from all

21 of you.  Y'all are top notch.  So it is always a

22 privilege to work with lawyers who really know what

23 they're doing.

24             This is the funnest day of trial.  The

25 other days, not so much.  But we will figure it out.

1    Thank y'all.  See you in the morning.

2    THE COURT SECURITY OFFICER:  All rise.

3    (Proceedings concluded at 5:24 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 C E R T I F I C A T E

 2

 3             I, Kelli Ann Willis, RPR, CRR, CSR

 4   certify that the foregoing is a transcript from the

 5   record of the proceedings in the foregoing entitled

 6   matter.

 7             I further certify that the transcript

 8   fees format comply with those prescribed by the

 9   Court and the Judicial Conference of the United

10   States.

11         This 6th day of July 2022.

12

13             s/ Kelli Ann Willis
               Official Court Reporters
14             Northern District of Texas
               Dallas Division
15

16

17

18

19

20

21

22

23

24

25
```

**$**

**$1,000** 143:20
**$500,000** 54:2

**-**

**-o-** 6:2

**1**

**1** 62:2,6,11,21 63:11,21 65:7 86:2,3,8,9,20 87:18,22 101:16,21 106:16,18 107:1,3,11, 13 111:9,12,23 112:6, 11,13 124:10 160:8,20, 22 161:9,20 187:9

**10** 35:2 47:15 48:21,22 49:2,5,8,10 90:1,3,6,12, 21 106:15,18,19 107:3, 5,10,13 116:11,13,16, 19,23 117:2 126:23 127:3,5,14,17,22,24 142:12 151:21 154:19 173:6,7 183:1 187:10, 14 189:1

**100** 99:22

**11** 90:22,24 91:2 138:18,21,23 139:2,7 173:7 187:9

**11th** 83:4,7 158:3

**12** 58:9,11 79:16 80:6,7 102:10 112:18,20,24 113:6 135:23 142:12 152:13,25 153:4,6,17, 18 159:5 173:8

**120** 164:12

**12th** 91:11

**13** 117:5,6,9,15,22,25 173:9 187:9

**13th** 80:9 83:4,8,12 158:3

**14** 91:5,10 173:9 187:10,14 189:2

**15** 47:15 49:15,17 54:15 78:3 79:16 80:21,22

91:16,18,21 92:4,9,13, 16,19 96:24,25 97:3 102:10 103:12,15,18 104:1,5 109:1,5,14,21 159:5 173:11

**15-minute** 108:16

**15th** 35:17 189:19

**16** 47:15 49:20,22 50:3 139:15 173:12 178:24 179:2 187:10,14 189:2

**16th** 183:6,7

**17** 47:15 50:10,12,15,17 143:25 144:4,8,14,19 145:2 173:12 187:10,15 189:2

**18** 47:15 50:20,21,24 51:2,4 62:3 68:4,8,13 69:1,12,21,24 124:9,10, 19 125:2,8 173:13,18 175:15,17,24 176:12,16 178:7,16 180:21 187:9

**180** 92:19

**19** 92:22,25 93:4,8,10 94:2 178:17 187:10,15 189:2 191:20,21 192:3

**1989** 98:7

**1:00** 7:3 10:18

**2**

**2** 47:14,21 48:2,5,10,12 161:21,25 187:10,14 189:1

**20** 59:19,20,22 60:1,9 124:12,13 129:9,12,17, 22 130:9,14,17,23 131:1,13 137:17 178:17,18 187:9

**20/20** 184:25

**2000** 111:13 114:21

**2008** 113:17 137:19

**2013** 98:7

**2017** 41:2,7,15

**2019** 120:10

**20th** 83:12

**21** 79:17 81:3,4,9 93:15, 18 139:17,19,22 140:1, 5,8,13 142:12 153:19 154:2,4 178:19,20 183:20 184:19 185:3,8, 13,19,24 186:2 187:11, 15 189:3

**21st** 41:7

**22** 100:24 113:13,14,17, 22 139:17 140:18,19,25 141:5,8,13,19 142:1,4, 8,12 178:21 182:23 183:6,7 186:15

**23** 30:4 94:6,8 178:22

**24** 47:15 51:10,11,12 100:23 108:10 178:22

**24/7** 193:7

**25** 104:9 178:23

**26** 47:15 51:16,17,22 100:23 102:10,21,24 103:2,6 104:9 178:23 179:9,11 180:24,25 181:3,6,16,23 182:8,10

**27** 75:21 76:3,4,16 96:24 97:8,9,19 142:12 146:6,7 167:11,13 171:15 182:11

**28** 47:15 51:24,25 100:23 182:13,14

**29** 47:16 52:9,10 79:17 81:12,14,15,17,23 82:3 124:10 142:12 155:10 156:8 182:13,15

**3**

**3** 108:18 137:8,10,14,16 138:8,14 161:22,25 187:10,14 189:1

**30** 31:8,12 39:19 50:13 59:4,5 62:3 69:25 70:2, 6,20 75:21 76:9,11,14 79:18 82:7,8,12 88:23 95:13 108:4,23 110:2 136:4 156:9,14,22,23 157:10 159:5 167:11,12 170:1,20 171:15 182:9, 17,20 183:1,3,4 188:22

**30(b)(6)** 7:23 22:17

**31** 107:17 124:10

**317-cv-2278-x** 6:7

**32** 56:19,21 57:4 79:17 82:13,14 100:23 114:6, 17,21,25 142:25 157:11,12,24 158:1,22 159:1,2,5

**33** 91:13 142:12,13,15, 21

**34** 47:16 52:15 98:4,6, 10 116:8 118:3,4,8,10, 15,19,23 119:3,7

**35** 47:16 52:24,25 53:2, 7 75:21 76:17,18 102:10 104:10,11 139:18 167:11,14 171:15 182:25

**36** 47:16 53:8,9

**38** 47:16 53:12,13 73:18,22 74:3,9 98:17, 20,22,24 99:8,14,18,21, 25 100:6,9 102:10 104:16,17 105:1 124:11

**39** 47:16 53:22,23 158:24

**3:10** 108:19

**3:45** 201:2

**4**

**4** 62:2 63:22,23,24 64:25 87:23 88:5,11,13, 16 122:20,23 146:11, 13,18,21 147:1,8 161:23 162:1,2,9 163:4 187:9

**40** 59:19 60:10,13,19 116:8 119:9,10,16,22, 25 120:4

**400** 34:19

**41** 159:17

**42** 47:16 54:7,8,11

**43** 62:5 71:1,3,7,19,21, 24 75:21 76:20,22 101:4,6,7 115:11,13,15, 20 167:14 171:15

**45** 79:18 83:2,3 100:23
126:21 127:25 128:1
148:6,9 158:2,4,10,20
159:5

**46** 47:16 54:12,14 62:5
71:25 72:1,5,8,16 84:20

**47** 95:10,11,19,22 96:4

**48** 30:4 79:18 83:10,11
158:4,10,20 159:5

**49** 45:23 46:1 62:5
72:20,24 73:7,15 75:21
76:25 77:1 79:18 83:15,
16,21 84:21 158:4,11,
20 159:5,13 167:15,18,
20

**4:00** 10:18,25 11:4

**4th** 11:7

**5**

**5** 57:7,8,12,20,23 58:1
87:23 102:10,14,17
149:23 150:17 151:5,6
159:6 163:11,12

**50** 19:17 34:20,22 64:14
159:13

**50th** 82:9 156:9,15
159:15

**51** 30:4

**556** 6:14,16 40:14 43:16
84:5 96:19

**5:00** 36:1,4,7 187:5
190:12,15

**5:24** 202:3

**5s** 107:15

**6**

**6** 62:4 66:1,3,9,21,24
75:19,22,24 76:15 78:9,
10,19 84:20 145:17,18,
23 146:3 151:7,23
152:10 163:13,15,16
167:11,13 168:4
171:14,17

**6:00** 18:22 19:4 25:2
28:19,25 29:9 194:10

199:22,23,24

**6:30** 199:24

**6th** 7:21

**7**

**7** 77:6 79:13,16,20,23
80:5 100:23 106:19
107:3,14 109:1,4,13,21
152:11 159:5 171:19

**7:00** 8:24 11:12

**8**

**8** 88:25 89:5,10 108:10
134:1,2,3,10 135:2,12,
22 139:15 171:19,20
182:18 187:1,3,7,9
200:3

**84-year-old** 80:23
109:5

**8:00** 9:22 28:19 29:15
30:3,11 194:8,13
199:22,24

**8:30** 24:16,20 25:15,21,
24 26:4 30:7,12 194:15
200:3 201:15

**8:45** 35:13 187:22
189:18,25

**9**

**9** 62:2 67:3,4,8 68:2
84:20 89:13,15,19
107:3,14 171:21,23
172:7,8 173:3,5

**9-to-5** 193:5

**90** 56:22

**98** 135:6

**9:00** 35:15 77:12
187:23 190:1,6 191:12
193:18

**9th** 91:11

**A**

**abide** 39:12 104:22

**ability** 64:18 113:2,19
115:19 120:23 125:1,7
132:12 151:17 160:14

**aborted** 102:5 105:9

**abortion** 31:20 33:23
40:25 41:12 61:7,18
62:12 65:8,11,12 66:20
67:5,9,19,21,24 68:9
71:4,8,11 72:4 73:24,25
74:2,25 75:8 86:24
87:1,6 100:19,21
101:10 104:22,24
105:7,21,22 161:12
162:11 163:2,6,19
164:14 165:13 168:4
171:10,23 172:3 174:18

**above-ground** 175:18

**absence** 155:1

**absolutely** 61:8 71:12
77:2 109:7 162:19,21
163:16 170:13

**abundance** 27:25

**abuse** 134:22

**academic** 82:23

**accept** 37:6,13 132:12

**acceptable** 198:19

**Accepted** 117:22

**accepting** 11:15

**access** 200:8

**accessible** 117:20

**accident** 51:18 139:23

**accidentally** 172:25

**accommodate** 157:6,8

**accommodation**
157:1

**accordance** 39:9

**account** 117:16,20
119:17,24 122:24 131:4
146:16,24 147:3

**accounts** 119:11,19

**accurately** 177:24

**acquittal** 54:16

**acquitted** 52:11

**action** 6:6

**active** 7:6 120:1,2
121:14

**actively** 132:15

**activities** 41:11 128:8

**Adam** 6:15 43:14 136:5
175:7

**adapt** 34:12

**adapted** 34:12

**add** 12:19 17:1 22:2
23:20 46:14,21 62:4
183:3

**added** 32:17

**addition** 132:20

**additional** 12:24 15:20
46:22 85:23 102:12
144:12 200:2

**address** 12:15

**addressed** 164:19

**addressing** 10:3

**administrative** 183:25

**admit** 161:10

**adult** 122:12

**advance** 82:19 157:17
158:15 190:16

**advanced** 80:23

**advantage** 112:9

**adviser** 128:2,3

**advising** 9:18

**advocate** 72:25

**affect** 56:13 58:8 80:18
113:2 124:25 125:5,6
186:4

**affected** 10:5

**affirmative** 42:2

**affirmatively** 103:7

**AFL-CIO** 96:19

**afraid** 85:24 105:17
116:3

**afresh** 30:18

**African** 134:8

**afternoon** 33:20 34:7 35:25 85:16 190:11

**agree** 87:10 136:14 150:19 154:25 165:22 168:17 174:18 176:8 178:5 179:14,16 182:21

**agreeable** 10:19 25:12

**agreed** 118:12 119:4 152:3 163:21 170:16

**agreeing** 168:24

**agreement** 52:17 84:15 136:13 150:18, 24,25 151:1 155:3 165:18 167:6 182:2 197:15 198:14 199:7, 10,15

**ahead** 42:13 95:5 125:12,16 188:21 189:15

**aid** 157:12,13

**aids** 88:2 157:25

**air** 83:22 137:18,24

**airlines** 6:20,23 40:11, 12 43:7 94:18,20 97:25 109:13 110:5 170:6 185:11

**Airlines'** 43:10

**airplane** 81:19

**airport** 114:13,16

**align** 128:14

**all-clear** 7:11

**allowed** 20:21 121:24 125:10 130:7 164:22 174:22 192:13 198:2

**alternative** 9:1

**amenable** 24:24

**America** 106:21 191:19 193:14

**American** 134:8

**Americans** 73:12

**amount** 49:9 50:16,17 78:6

**anniversary** 156:15

**announce** 32:24

**annoying** 48:25

**anonymity** 55:7

**answering** 176:15 186:5

**answers** 47:7 56:8 94:25 137:2

**anti-abortion** 160:13

**anticipating** 200:17

**anymore** 16:10 115:1

**apartment** 90:9

**apartments** 90:13

**apologize** 17:24 54:22 94:12 107:8 129:21 175:19

**apparent** 10:6

**Apparently** 149:24

**Appeals** 42:6

**appearance** 15:23 21:14 37:23

**appearances** 6:8 32:14 92:22

**application** 110:18

**apply** 61:19 64:22 67:22 68:20 69:19 70:16 71:18 72:12 75:9 161:14

**appointment** 150:1,13

**Appointments** 150:13

**appreciative** 100:11

**approach** 16:3 31:21 84:6 116:1,11 121:21 133:21 198:24

**approximately** 11:12

**aquarium** 143:12

**area** 149:11

**areas** 22:4 90:16

**argue** 196:23

**arguing** 100:21 104:20

**argument** 160:2 191:13

**argumentative** 125:3

**arrangements** 25:5

**arrest** 52:6

**arrested** 47:3

**articulate** 172:16

**articulated** 172:11

**asks** 26:5

**Aspirion** 120:18

**assemble** 35:14

**assembly** 32:9 33:8

**assistance** 10:3 14:10 15:19

**assistant** 93:7

**association** 145:21

**associations** 132:15

**assume** 11:17,21 14:12 26:15 32:15 36:11 141:15

**assumed** 141:13

**assuming** 78:4

**assure** 166:22

**atheists** 130:2

**attempted** 12:6,12 168:5

**attend** 201:5

**attendance** 18:3

**attendant** 23:1 40:11

**attendants** 40:12

**attended** 41:4,8

**attention** 11:22 13:25 151:18 180:14 181:12 191:17

**attentive** 150:10 180:8

**attorney** 10:11 54:5 60:3,14,17

**attorneys** 54:1,4 94:15 121:10 145:25

**Audrey** 44:9 46:3,5,6

170:5,23

**automatic** 109:2 154:18

**automatically** 135:5

**availability** 200:21

**avoid** 196:10

**avoiding** 9:24 10:7

**award** 107:21

**awarded** 51:19

**aware** 184:5 185:14,21

---

**B**

**baby** 81:8 102:5 105:9 153:24

**back** 7:4 11:9 12:1,8 21:23 30:15 31:22,24 32:24 43:19 45:20,24 46:3 58:6 59:6 62:4,25 79:6 84:4 85:17 94:11, 12 98:12 99:16 108:17 123:24 135:20,21,23 136:7 140:25 144:2 147:14,17,20 148:1,3, 10,11,15,24 149:4,6 154:18 156:24 157:14 161:8 171:16 176:15,23 177:1,5,7,17,23 178:9 182:2 183:12 186:8 187:19 188:8 189:23 197:24

**background** 136:22

**bad** 55:21 104:24 107:20 156:24 180:18

**bag** 81:6

**bags** 95:7 96:17

**bait** 154:23

**Balch** 50:22 51:1

**ballot** 74:22

**ban** 67:21

**barely** 46:2

**Barnett** 44:11

**based** 20:12 21:16 34:17 39:7 61:2,15 66:18,19 86:17 112:10

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 207 of 228   PageID 13803
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                      July 05, 2022                      Index: basically..case

146:14 148:19 161:12

**basically** 69:15 114:12 135:13

**basis** 151:20 154:3 164:6,17 165:7,10 169:2,6,22 174:24

**bathroom** 7:16 84:3 108:15,16 147:21

**baton** 13:15 77:4 136:3 193:6

**beck** 193:9

**begin** 189:16

**beginning** 145:10

**begins** 43:23 83:17

**behalf** 6:15 17:24

**beholden** 94:20

**belief** 68:9 126:8 145:15 172:17

**beliefs** 61:12,17,21,22 62:9 63:4,17 66:20 67:16,23 68:7,22,24 69:16,19 70:8,14,18 72:15,23 86:15 104:13 105:7 112:4 124:2,21 146:2 160:13 161:15 172:11,20,25 173:1 176:10

**believes** 40:24

**bench** 32:11

**bet** 24:10

**Beth** 127:7

**Bible** 41:1

**Biden** 138:10

**big** 8:3 78:24 79:7 129:23 166:10

**bigger** 14:6

**bike** 143:15

**bill** 143:21

**billing** 94:3 140:7 185:18

**birth** 86:24

**bit** 7:19 14:25 30:22 34:2 40:6 42:18 44:16

47:23 56:1 58:3 69:7 78:9 81:22 97:22 112:18 120:24 125:5 126:25 136:22 138:4,6, 7,18 144:17 145:12 148:9 158:6 188:16

**Black** 128:13

**blank** 72:11 91:1 93:22

**blanket** 195:12,14

**blocked** 101:8 122:24

**blocking** 35:20

**blood** 56:11 157:7

**Bloom** 43:7

**board** 23:2

**boat** 133:10

**Bobby** 6:11 42:22 85:19

**bonus** 135:18

**Booked** 83:13

**books** 38:1

**boom** 106:10

**boomeranged** 172:22

**booted** 123:3

**boss** 93:9

**bosses** 108:12

**bother** 134:12 145:17 146:11

**Bottom** 134:7

**brain** 76:6

**branch** 14:16,17

**brand** 131:19,22 133:1

**Brantley** 33:16 41:24 42:16

**break** 32:8 35:21,24 84:4 108:15,16 125:17 190:7,22

**breaking** 21:12

**breakout** 200:14,15

**breaks** 35:25 126:3 190:11

**Brendon** 44:13

**Brett** 44:10

**Brian** 6:23

**brick** 144:23 145:4

**bride** 155:12

**briefly** 15:17 111:9,11 113:13

**bright** 201:10

**bring** 32:23 35:23 60:7 84:16,25 174:2 175:13 178:9 181:22 189:23 190:8 191:22

**bringing** 68:14 103:24

**broken** 52:17

**broker** 93:25 185:20

**brought** 146:2 184:10

**Broward** 53:14

**bucket** 68:23 70:14,19, 21 72:14 73:6 75:15 96:8,14 142:24 146:1 147:6 156:12 163:21,22 171:24,25 172:5 176:11

**buckets** 84:22 152:5 172:3

**building** 135:4,7 189:19

**burden** 24:19

**Burdine** 27:3 28:8 44:12

**business** 97:24,25 137:18 185:11

**bust** 32:2

**buying** 145:4

---

**C**

**California** 83:5

**call** 12:8,11 15:13 16:3 29:10 43:25 62:2 81:6 86:7 120:7 124:14 147:25 155:2 176:23 177:1,4,5,7,17 184:13 188:19,20,22 189:5 193:9 195:23

**called** 9:23 10:8 11:1 12:2,9 24:17 25:25 36:25 40:13,17 46:21 62:3 79:17 93:16 157:17

**calling** 28:23 135:17 184:17

**calls** 6:6 12:25 16:5,25

**camp** 63:7,9,12

**candidates** 101:10

**capable** 162:6

**capacity** 7:23 139:1 145:1

**caption** 6:14

**car** 51:18 126:4

**card** 100:16 105:15 108:7 136:14 138:4

**cards** 139:11,16

**care** 10:23 23:23 134:16

**careful** 102:9 162:20

**carefully** 162:15

**caregiver** 80:23

**caregiving** 153:21 154:15,17

**caring** 154:19

**Carter** 6:9,10 8:8,16 9:8,23 10:21 24:19 26:1 40:10,16,19,24 41:2,9, 14,16 42:23 44:7 84:2 85:20 105:19 112:8 113:20 124:23 148:24 164:12 183:10 184:4,7 186:14,16

**Carter's** 11:23 41:13 43:1 111:19 113:3

**case** 6:6,14 10:6 11:21 13:16 16:6 21:13 22:3 23:3 25:15 28:1,24 33:17 34:2,3 35:6 36:9, 10,21 37:4,5,6,9,13,17, 22 38:3,4,8,13,16 39:2, 7,14,17 40:7,8 47:25 48:1,6,7 49:3,18 50:5, 13 51:13,18 52:2,11,12, 16 53:3,14,16,25 54:1,

9,15,17 57:19,21 60:24
61:1,3,4,11,14 65:4,7,9,
11,13,14,17,18,19,21
66:14 67:10,13,14 70:8
71:10,15,16 73:18,24
74:13,15,19,20 75:13
78:1,5 99:7,13 101:2
102:1,2,4,7,8 105:6,18,
25 106:1,2 111:1 112:7
113:5 115:19 147:7
158:9 164:5,10 165:6
166:5 168:11,14
169:19,20 170:12
171:10,11 176:5 181:13
182:5 189:6,7 190:22
191:1,3,4,6 192:19,22
193:17

cases  35:3 104:22
192:25

catching  167:21

category  100:16
101:17,19 106:6,10,19
156:6

Catholic  104:21

caught  143:13

caused  100:20

caution  27:25

CDC  77:18 78:17

celebration  164:23

cell  10:8 36:11 56:24
88:2 148:7

center  164:15 171:9

Central  15:9

ceremonies  156:19

certificate  192:17

certificates  189:10

certifications  82:18

certified  59:22

chair  63:3 158:19

challenge  29:5 161:19
163:3,14 178:15 182:6
187:17

challenges  32:21
148:21 159:23 182:14

challenging  166:24

chance  7:16 55:14
77:15 88:19 93:9
147:22 174:3 196:22,24
197:15

change  34:21 47:8
65:22 79:22 184:15
186:10,11,22

changed  34:12,18

charge  52:6,7

Charlene  40:10 42:23
44:7 85:20

check  102:11 114:12
200:12

checked  161:8

checking  147:23

chicken  69:7

chief  28:24

Child  137:20

children  137:22

China  122:21,25
146:20 162:16

Chinese  146:23

choice  62:16 70:3
72:25 87:4,7 165:9
169:22,24

choose  121:24

Chris  43:8

Christian  40:24 62:11
68:9 70:3 72:9 76:19
86:11,12 173:14

Christianity  70:9

circus  25:6

city  15:12 50:22 82:15

civil  6:6 40:8 47:10,25
49:3,4,22 50:3,12
51:13,17 52:16 53:16,
25 73:2

claiming  112:8 113:3,
20

claims  60:21

clarification  27:8
30:25 45:17 74:12
132:1 176:24

clarify  86:21 105:16
107:5

clarity  174:8 177:20

class  79:25 82:9

Cleaburn  27:4 28:8

clean  147:24 158:18
178:13

clear  7:5 161:11

cleared  7:6 27:17
31:23

clerk's  158:15

clerks  187:3

clients  199:5

Clinton  74:17,21,24
75:11 169:4,5,8

clock  107:9 126:6

close  36:24 46:8 87:25
100:18 151:3 190:7,12
192:19 197:18 199:23

closed  121:7 123:8
131:4

closer  44:25 45:3

closest  92:20

closing  194:12 196:14,
15,18

cloud  147:5

Cloutman  6:16 15:4
17:1,2,8,11,15 43:15
158:22 159:1,3,6

club  17:9,25

co-counsel  23:19
26:23

co-morbidity  77:18
78:17 151:10,14

cognitive  150:9,14

colleague  6:23 133:11

colleagues  6:11

collections  60:21

collegially  198:25

color  160:14

combined  8:22

comfortable  117:18

commenced  12:10

comment  22:1 118:11

commitments  190:17

Committee  41:5

communicate  24:25
36:20 37:12

communications
124:24 166:4

comp  60:21 183:25

companies  89:21 99:4

company  17:18 49:12
89:16,20 90:10 92:11,
14,15,18 107:20 111:13
114:8 120:16,17,19
126:10 127:16 129:2
131:18 132:3,8,18,23
133:3 135:3 137:23
141:3,10 147:1,2

company's  126:20
131:22 132:14

compel  18:3

competence  180:11

complained  140:3

complains  170:6

complaint  139:12,14,
23 140:20,21 141:11
170:5

completely  67:17

compliance  128:4

complications  10:16

comply  8:14 10:12
15:24

comprehend  153:8

comprehending
58:13

compromise  14:21

con  95:1

concentrate  153:7

concern  102:23

concerned  151:17
174:6 180:15

**concluded** 85:11
109:9 196:7 202:3

**conclusion** 198:16

**concrete** 85:7 151:15

**concur** 76:18 77:1

**condition** 57:16 58:22
151:10,14 152:19
156:25

**conditioner** 137:24

**conditioning** 137:18

**conditions** 77:18
78:16,17

**conduct** 39:4 129:2

**conducting** 200:18

**confer** 25:14 26:9
166:8

**conference** 21:11,17,
24 29:4 83:4,17,20
149:9 156:1 158:3

**conferences** 156:13
158:5,11

**configuration** 34:18

**confirm** 11:2 23:24

**confirmed** 123:10

**confused** 57:9,11
73:23

**confusion** 12:15

**congratulations**
82:11 187:4

**Conlan** 28:8

**Conlon** 27:4 44:13

**connected** 55:5

**connection** 28:18
37:22

**consensus** 151:4,22

**consent** 133:5

**consideration** 162:20

**considered** 173:25

**constituents** 117:10

**consultant** 59:23

**contact** 8:17 12:6,13
194:21 195:25

**contacted** 12:6,11

**contagious** 57:18,21

**contempt** 9:19 11:20
13:8,23 17:7

**context** 127:15 175:8

**continuation** 20:21

**continue** 20:22 141:17

**continuing** 141:16

**contract** 184:1

**contrary** 40:25

**control** 86:24 107:16

**controls** 56:24 88:1

**convene** 194:15

**convenience** 29:20

**conversation** 125:3
127:11 146:15

**converse** 130:1

**convinced** 10:14

**cool** 89:4

**cooperate** 12:23 201:5

**cooperating** 11:15

**coordination** 25:4

**COPD** 77:17 80:24

**cord** 111:21

**corporate** 134:23
135:16

**Corporation** 144:20

**correct** 16:11 19:15
29:21 50:7 74:5 81:14
120:8 133:20 145:22,23
167:20 170:3

**correctly** 146:23

**corrects** 26:23

**counsel** 8:15,19 9:3,8,
11,15,23 10:21 11:19,
24 12:2 24:18 25:25
26:9 84:2 110:7 111:20
126:19 129:4 161:3
162:14 166:8 184:4,7

198:13

**counsel's** 199:7

**counseled** 123:14,18
126:14,18 127:12

**counseling** 131:20

**country** 39:10 144:23
146:17

**County** 49:3,4,17 51:18
52:1,11,17 53:9,15,19
54:9,10,15 121:6

**couple** 24:8 35:25 52:1
77:3 100:13 102:11
119:10,11 120:23
124:14 133:14 137:8
140:21 164:2 167:5

**court** 6:3,4,6,12,18,25
7:14 8:12,23 12:18 13:4
14:12,22 15:6,18,20
16:2,12 17:7,10,13,16
18:2,5,12 19:2,15 20:3,
8,15,23 21:1,6,10,22
22:5,14,22 23:5,8,12,
14,20,25 24:4,6,10,22,
24 25:13,18 26:3,7,11
27:1,11,22 28:5,11,17,
20,21 29:3,17,22 31:3
32:7,12 33:5,9,10 37:20
38:17 39:8 42:4,6,25
43:9,17 44:14,20,24
45:3,16,21 46:8,14,18,
24 48:4,7,11,15,24
49:4,7,9,13,19 50:1,5,8,
14,16,19 51:1,3,5,8,15,
20,23 52:3,8,14,18,21,
23 53:1,4,8,11,21 54:3,
10,19 55:6,11 57:3,5,
11,17,22,24 58:2,17
59:1,9,24 60:8,10,16,22
62:18,22 63:14,22 64:3
65:2,8,11,18,19 66:5,8,
10,18,23 67:1,11,13
68:4,12,17 69:6,13,23
70:5,11,24 71:5,13,20,
22 72:3,6,10,18 73:4,9,
16,18 74:1,5,11 76:1,7,
13,15,20,24 77:3 78:15,
21 79:4,10 80:1,6,19
81:2,7,11,16,21 82:2,4,
11,13 83:1,9,14,19,24
84:7,12,19,23 85:3,6,
13,14 89:17 93:2 95:15
101:4,6 104:16 108:14,

20,22 109:1,11,12
110:1 116:9 119:5
122:17 124:12 133:12,
15 134:1 135:13,15
136:1 139:18 147:13
148:13,15 150:20
152:2,9 153:10,14
154:7,11,13 155:7,22,
24 156:17,20 158:24
159:2,4,7,10,12,16
160:10,22 161:8 162:8,
25 163:9,11 164:1
165:11 166:12,15
167:18,20 168:2 169:7,
25 170:19 171:5,25
172:6,15 173:16,19
174:5,25 175:13,17,25
176:14,18,21 177:2,12,
23 178:8,12 179:1,6,15,
19,22 180:5,17,21,24
181:1,4,7,10,21,24
182:1,23 183:1,8,16
184:4,6,17,22 185:3
186:8,11,14,18 187:1
188:4,11,12 189:8,9,15
190:15 191:8,24 192:4,
16 193:22 194:5 195:2,
14 196:8,13 197:11,16,
20,23 198:20 199:7,14,
22 200:5,11,15,20,24
201:3,8 202:2

**Court's** 15:25

**courtesy** 194:19

**courthouse** 37:19
109:4,16 190:25

**courtroom** 35:16,17,
18 159:14 189:14,24
193:8,21 200:8,13

**cover** 90:16,18,19
149:15

**covered** 89:6

**covering** 85:21 100:11
199:8

**covers** 115:22

**COVID** 34:9,10,18,25
35:2,3,6 57:14,19 78:11
149:20 151:7

**COVID-RELATED**
77:7,13,16,23 78:6

**coworker** 124:25

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 210 of 228   PageID 13806
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                         July 05, 2022                Index: coworkers..discovery

127:20,23

coworkers 124:17

cramming 143:16

crashed 137:19

crazy 35:7

create 37:23 131:21

crime 47:2

criminal 40:7 47:11
48:1,6,7 52:2,11 53:10
54:9,15

cringing 54:4

critical 174:24

cross 29:19,25 145:16
200:2

cross-examination
38:24

crosscheck 149:5

crosses 143:3 157:22

culture 128:15

curative 195:18,19
196:9,13,15 198:10

cure 195:7

cured 195:6

current 89:9 118:24

cut 28:12 36:1 190:12

cutting 109:6

——————

D

dad 95:12

Daley 43:15

Dallas 49:3,4 51:18
52:1,11,17 53:9 54:9,10
121:7

damages 107:19,21
108:2

damn 142:16

Dana 83:5 158:3

dates 13:13

dating 114:22

Dave 45:8

dawn 143:11

day 6:8 10:17 11:1,7
32:25 33:20 35:12 36:5
78:3 136:3 143:17
148:5 190:13,19
192:22,23,24 194:7
201:9,24

days 116:6 118:16
122:2 194:6 201:25

DC 41:6,9 170:10

deadline 15:9

deal 66:5 92:1 156:20
158:17

dealing 162:7

dealt 92:5 162:4

debate 94:24,25 102:22

decide 39:2,7 75:3
99:13 105:13 170:14
186:22 197:20

decided 38:16 105:11
170:3

deciding 97:16 105:24,
25 106:3

decision 68:25 171:9

declare 195:17

decode 19:20

defendant 6:22 16:8
108:9

Defendants 8:1 194:1
198:14

Defendants' 8:6

define 116:4

definition 115:25

degree 67:20 164:19

deleting 168:24

deliberate 36:22 78:2,
3,4 192:21 193:1,2,4,7

deliberating 191:3

deliberation 189:24

deliberations 192:20,
24

delicately 166:17

delightful 155:15

delivery 201:12

demeanor 191:18

Democrats 145:14
200:4

demonstrative 194:7,
11 201:17

demonstratives 200:5

denied 39:9

Denise 45:6

deny 41:20

depend 69:2,4

depending 15:12

depictions 132:22

depo 7:25 13:6,10,21
14:2 15:11 16:16,20
17:22 18:8,18 19:14
23:9,17 26:17 27:3 28:9

depos 7:20

deposed 7:23 11:4,7,
24 14:14 27:20

deposition 8:25 9:1
10:15,18,22 12:10 14:9
18:10,11,13,16 19:5
20:19,21 21:2,15,19
23:4 26:14 27:5,9,24
200:18,21 201:6

depositions 9:20
22:12

DEPUTY 159:14

describe 111:11
116:15

deserves 136:9

designation 7:25
199:24

designations 18:14,16
19:5,14,17 23:6,9 26:14
27:5,24

desire 195:10

detail 80:20 111:10

determinations 60:5

determine 39:21

device 37:11

differences 70:10

differently 60:6 97:22
146:8 172:15

differing 100:19

difficult 64:20 70:23
82:19 96:21 99:12
101:13 104:13 154:9
180:3 195:7

difficulties 100:20

difficulty 172:14

diligently 20:12

dip 72:14 73:5 75:15

diplomacy 73:11

diplomatic 198:21

dire 32:1

direct 24:15 30:1

directed 29:3

directing 9:4

direction 11:23 158:7
185:4

directly 6:24

disability 56:12 149:21

disagree 163:6

disagreement 21:3

disagrees 149:17

discipline 126:18

disciplined 123:13,17
124:24 126:13,17

disciplining 131:20

disclose 183:21,22
194:8

disclosing 30:3 186:20

disclosures 22:8
194:9

discover 127:21

discovered 128:19,20

discovery 14:15 22:2,9

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 211 of 228   PageID 13807
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Index: discretion..excluding

**discretion** 31:20

**discuss** 37:5 126:7
150:3 188:3 197:2

**discussed** 21:12 38:4,
6 170:7

**discussing** 100:20
124:2

**discussion** 10:20
33:24 110:12 183:20
196:24

**discussions** 117:13

**disinterested** 137:2

**dismissed** 49:23 50:4
54:18

**disoriented** 57:13
149:24

**displayed** 194:3

**disqualifies** 161:6

**disqualify** 161:6
162:19 169:1

**district** 93:11

**disturbing** 103:16,19,
20,21,24 104:19

**ditto** 76:12

**dive** 139:8

**division** 137:21

**dizzy** 57:9,11 149:24

**Dobbs** 67:13 164:5

**doctor** 71:10

**document** 164:11
168:16

**documentary** 104:18

**documents** 168:18,25

**dog** 198:23

**Donald** 74:17,20,23
75:11,25 164:9,13,16,
24 169:19

**door** 7:5 135:7 183:10

**double** 31:10 187:1

**doubt** 54:16

**downtown** 25:11

**draw** 31:22 155:14

**drawing** 31:24

**drive** 35:7

**dropped** 130:19

**drove** 135:4

**drug** 49:18 52:12

**dry** 82:6

**ducking** 137:7

**due** 81:5 158:25

**DUI** 53:19

**duration** 10:22

**dusk** 143:11

**duty** 7:6 109:17 158:14,
18 198:3

**E**

**ear** 56:22

**earlier** 69:8 146:15
162:11 175:20 192:5

**early** 111:12 190:2

**easier** 25:5 64:9

**easy** 86:1 157:2,8

**eat** 190:9

**echo** 76:5

**economy** 137:19

**ed** 17:2 45:11 93:5
157:16,24 158:25 170:7

**Edie** 44:11

**Edward** 6:16 43:15

**effect** 57:13

**effectively** 199:2

**effort** 10:13 13:3 40:22

**efforts** 8:17,20,22

**egg** 69:8

**Eighteen** 124:16

**ELCA** 198:9

**electric** 143:15

**electronic** 37:11

**elevators** 189:21

**elicits** 121:15

**else's** 192:8,12 194:20

**email** 7:1,19 8:22 9:4,6,
7,11,17 11:13,19 16:2,
4,25 17:4 29:10 30:3
134:20,21

**emails** 8:18,19

**emergency** 21:13

**Emlet** 45:5

**emotion** 180:6

**emotional** 82:23
102:18 103:5

**employee** 16:13 91:23
126:19 128:10 132:22

**employee's** 128:22

**employees** 25:9 92:1,5
110:19,21 128:5,18
130:7 131:20,21

**employees'** 67:16

**employer** 36:24 124:1
132:24 139:13

**employers** 110:22
130:21 176:3 192:14

**employment** 126:12
132:13

**encounter** 37:21

**encourage** 133:20

**end** 16:23 32:24 35:12
61:4,14 64:16 65:4,20
108:3 175:21 176:5
195:16,24 196:14,15
198:8

**ended** 134:25 135:22
166:19

**enforce** 17:5

**engage** 116:21 117:13,
16

**engineer** 91:2,3
138:20,22,24 142:25

**English** 56:3

**enrolled** 79:24

**ensure** 15:22

**entered** 8:23 175:16
177:22 180:23 185:2
201:1

**entering** 199:9

**entire** 22:9

**entities** 132:12

**entitled** 39:3 64:21
107:21

**environment** 140:2

**environments** 129:23,
24

**equipment** 7:15 32:12

**error** 198:12

**essentially** 9:17

**established** 24:22
162:24

**etiquette** 130:10

**Eugenics** 112:1

**evading** 11:16

**evening** 8:16,23 9:21
20:14 83:7 200:18,22
201:7

**event** 11:17 81:18,21

**events** 23:3 118:24

**ever-changing** 34:10

**evidence** 37:16 38:16
61:3,13,19,23 62:10,24
64:6,10,19,20,22,23
66:16 67:22,24 68:21,
24 69:2,3,9,10,20 70:16
71:18 72:13 75:3,6,9
86:16 87:13,15 101:20,
25 104:14 136:10,16
164:22 168:12,14
170:13,22 181:13,17,
19,20 182:2,4

**examine** 57:16

**excellent** 20:8 85:18

**exchange** 89:16,20

**exclude** 168:17 169:20
182:2

**excluding** 169:23

**excursions** 81:25

**excuse** 37:7,13 39:23
109:14 149:14,17,22
150:6,7 151:1,15,20,23,
25 152:7,10 153:25
154:3,18 155:9 156:8
157:3 159:12 163:12
171:15,19 178:14
187:17 188:21

**excused** 38:10 39:22
109:17 148:5 151:6
152:11 160:1 163:13
167:12,17,18,19,20
173:8,11 183:2 189:6,
13

**excuses** 32:21 148:20
149:8,13,19 150:5,21
152:5 158:2 182:13

**excusing** 109:3 153:18
159:5

**executive** 23:2

**executives** 25:10

**exercises** 65:15

**exercising** 55:25

**exhibit** 29:25 56:14
164:12 165:19

**exhibits** 29:2,6,12,13
30:4,8,9,13 74:14 171:3
194:10 200:2 201:17

**exists** 194:7,11

**exited** 176:17 178:11
181:25 186:7 189:13
193:21

**exiting** 10:2

**expect** 15:21 26:17

**experience** 55:21 96:1
98:9 110:21 112:10
113:18 114:19 121:22
133:17 180:2

**experienced** 121:10

**experiment** 38:19

**explain** 9:14 37:1 65:3
111:9 113:13

**explained** 65:1 71:8

**explaining** 115:13

**explanation** 89:24

**expose** 125:19

**express** 105:7 124:7
125:10,23 168:25
174:22

**expressed** 40:19 112:4
160:12

**expressing** 74:16
101:2 124:17

**expression** 174:19

**extend** 14:16 194:19

**extended** 22:2

**extension** 20:19

**extent** 16:1 24:25
110:10 199:4

**extra** 22:11

**extremely** 103:5

**eye** 194:21 195:25

**eyebrows** 142:6

**eyes** 112:10

_____

**F**

**face-to-face** 37:10

**Facebook** 41:9 116:13,
14,21 117:6,14,23
118:4,5 119:12,23
120:1 121:23 146:16

**fact** 14:15 54:21 99:5,9
103:23 113:3 134:8
136:10

**factor** 65:20

**facts** 97:18 105:10,11,
23 161:14

**Failure** 39:13

**fair** 26:7 39:3,9 55:19,
23 63:5 69:17,18,22
96:9 97:20 102:19
103:25 104:7,25 105:12
112:4,5 113:2,19
115:19 125:1,7 147:9
163:19,24 168:6,7
169:16 173:21 174:21
177:13

**fairly** 161:5 170:15

**faith** 106:20

**fall** 50:13 80:24 96:8
100:16 101:16,19 106:5
133:23

**falling** 138:10

**falls** 106:10,19 107:15
185:12

**familial** 154:9

**familiar** 91:25 94:17
183:24

**family** 36:24 98:15,18
100:18,21 117:18
154:17

**Fantastic** 91:3

**fashion** 133:4

**Fast** 9:21

**father** 80:23 95:19,20

**fault** 178:10

**favor** 51:14 97:11 166:3

**favorable** 101:11

**Fear** 140:4

**federal** 41:17 47:10,24
60:21 65:14,15 67:15,
20 71:16 74:6,7 128:7
176:3

**fee** 200:11

**fee-paying** 40:17

**feel** 55:13 57:14 67:9
68:2,10 84:24 117:17
125:4,14 130:7 131:2
135:14 136:21 147:4
155:1 171:12 183:21,22
197:6

**feeling** 174:15,17

**feet** 144:2

**fell** 63:19

**fellow** 36:21 37:19
190:25 191:1,2,4,8

**felt** 111:20 123:25
164:4

**fetus** 102:5 105:9

**field** 60:18

**fight** 171:2

**fighting** 73:11

**figure** 13:21 19:16
26:18 44:3 69:13
171:17 201:25

**figured** 109:15

**file** 18:20 19:4 20:10,13,
16 23:5,9,24 26:15
30:10 142:9 188:23

**filed** 18:19 19:13 27:23
40:9 139:12,14,23
140:20,21 166:2

**files** 200:9,14

**filings** 7:25

**filling** 158:19

**financial** 153:16

**financially** 80:16

**find** 13:9 82:19 103:19
127:19 134:24 145:25

**finding** 17:7

**fine** 13:18 23:15 29:22
73:12 82:6 126:5
151:12 155:6 162:24
167:6 181:6 190:10
193:9

**finish** 36:6 196:18

**finished** 14:3 51:21

**fire** 185:1

**fired** 41:14 111:14

**firing** 134:25

**firm** 59:17 120:15,23
129:1

**Fish** 138:14

**fisherman** 138:16

**fit** 34:19 156:12

**fitters** 99:25 100:1

**fix** 33:15

**flag** 149:15

**flight** 14:2 22:25 40:11,
12 114:16,18

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                                July 05, 2022                          Index: flipping..guys

**flipping** 188:16

**floor** 33:3 35:18 189:19

**Florida** 53:15 114:10

**flown** 33:20

**fly** 10:17 94:20

**focus** 60:7 181:19

**focused** 11:22

**folks** 25:23 43:20 46:12 61:10 187:21 188:23

**follow** 36:17 39:13 62:19 68:18 70:12 88:8 100:12 101:1,20 136:20 145:8 161:4 162:21 174:13 176:6,9,13,20 178:4,6 201:4

**follow-up** 22:4 23:15 100:14 185:5

**follow-ups** 180:21,22

**for-cause** 169:2

**force** 125:24 167:1 172:19

**forced** 141:17,19

**forget** 24:8

**form** 19:18,20 30:11

**Fort** 83:21 155:20

**forthcomingness** 17:17

**Forty-four** 123:4

**Forty-three** 133:15,16

**forward** 8:9 9:21 14:7 84:25 193:17

**forwarded** 134:20

**found** 49:12,18 52:19 53:14,20 54:9 141:22

**foundation** 49:11,12

**fours** 173:24

**fourth** 73:7 84:22 93:4 114:2,3 115:5

**frankly** 10:23 11:7,11 172:2

**freak** 43:21

**free** 73:25 74:4 88:11 92:2 104:20 106:15 109:18 124:20 147:5 162:4,6,9,12,18 163:2 173:22 175:7,11 189:5

**freedom** 88:12,15 92:2 106:24 107:3,10,11 110:12,13

**freely** 124:1

**Friday** 8:16,23 11:12 13:16 83:17

**fridge** 190:9

**friend** 10:11

**friends** 36:24 92:20 95:13 155:11

**front** 29:25 47:22 56:15 137:5 164:15 171:9 197:21

**Frye** 7:4 32:4,5 167:23 183:11 189:10 192:16

**full** 21:15,18

**full-time** 80:3 109:4 152:11

**fully** 180:8

**function** 149:25

**funnest** 201:24

**funny** 138:8,9,11

**G**

**gain** 38:19

**gal** 126:24

**game** 42:17 46:25 47:19

**garden** 143:12

**gardens** 143:12

**gave** 123:7 135:21

**general** 98:2 110:9,24 128:7 129:4 185:4

**generalist** 91:22

**generally** 98:13 116:15

**genesis** 112:1

**gentleman** 95:16

**gentlemen** 33:12

**gently** 100:12

**germs** 151:19

**gesturing** 57:2

**get-to-know-you** 66:12

**ghost** 126:1

**Gilliam** 6:10,21 8:11,13 14:20 18:9,25 19:13 20:2 21:8,11 22:1 23:2, 7,18 26:9,17,21 27:7 28:10 42:24 44:19

**give** 7:5 33:25 34:1,8 35:21 36:8,9 37:8 39:18,23 40:2 47:6 55:8 61:4,14 63:5 64:23 65:20,23 66:16 68:1,21 70:16,17 71:11 108:11 112:9 125:17 135:18 136:21 165:11 191:25 192:6,14,19,22 193:14 195:17 196:14

**giving** 193:17

**glad** 91:14 110:14

**glass** 21:12

**global** 20:17,18

**gloves** 78:12 151:8

**God** 41:1

**Golf** 139:7

**good** 6:25 16:19,21 22:11 26:11 42:6 43:13 74:12 85:16 90:9 96:17 97:4 129:13 131:7 134:17 137:7 138:15,25 144:14 149:18 156:16 182:16 183:14 192:1

**government** 106:17,25 107:1,12,15 146:24 147:3 191:25

**grade** 88:19 91:8,11 93:2,5 94:9 106:18

**grandbaby** 81:5 140:10 153:20 154:21 178:19

**grandchild** 93:17

**grandkids** 143:14

**grandma** 140:11

**grandmother** 81:10,11

**grant** 182:5

**granted** 119:19 168:21

**graphic** 181:10

**grass** 143:19

**grateful** 147:13

**gray** 149:10

**great** 29:11 73:12 74:22 77:11 89:23 193:14 201:20

**green** 143:22 147:4

**Greenfield** 6:15,18 12:21 15:1,16,19 16:11 20:11,17,24 21:2 22:6, 20 23:10 43:12,13,14 46:20,22 136:2,5,6 137:11,15 138:1,12,15, 22,25 139:4,9,19,24 140:4,6,9,15,23 141:2, 6,9,16,24 142:2,5,10, 17,21 143:2,7,18,23,25 144:6,10,15,25 145:7, 19,24 146:5,10,14,19, 22 147:10,15 154:5,8, 12 155:21 160:20 162:2 163:5,10 167:17 170:17,21 179:17,18, 20,24 180:16 198:19

**group** 107:20 131:5,15

**guarantee** 35:5

**guess** 10:4 18:15 22:4 26:15 69:1,3 111:4 115:25 121:15 130:8 163:17 185:17

**guessing** 121:14

**guilty** 49:18 51:7,8 52:4,5,6,20 53:3,10,14, 20 54:9 71:12

**Guttierez** 45:6

**guy** 11:9 180:18

**guys** 175:10 186:23 189:9

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 214 of 228   PageID 13810
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Index: guys'..important

**guys'** 89:6

---

**H**

**hacked** 123:6

**half** 15:7,8 56:23 148:6, 8

**hall** 25:7 31:23 32:23 167:23

**Hallmark** 90:12

**hand** 13:15 35:8,9 56:10 77:4 78:1 121:15 129:10 189:10 194:13

**handbook** 126:12

**handful** 164:8

**handle** 29:15 30:2 35:12 190:2

**hands** 16:24 133:8 169:11

**handwriting** 155:19

**hang** 55:6

**hanging** 58:16

**happen** 20:7 38:12 152:23

**happened** 42:9 48:13 114:11 135:1 192:12

**happening** 180:2

**happy** 88:22 166:8 170:24,25 177:1 193:15 200:19

**hard** 19:5 55:23 63:9 68:3 95:15 98:9 100:5 152:4 172:17 173:2 174:2

**hardest** 64:5

**hardship** 78:25 80:15, 25 152:21 153:1,4,16 154:1 155:2 157:22,24 158:8

**harsh** 13:7

**hate** 65:19 75:4 95:24 181:4 182:24

**head** 7:12 58:12 86:22 103:6 183:9

**heads** 134:23

**health** 78:8

**healthcare** 60:20 120:19 121:3

**hear** 8:4,8 38:12 43:22, 24 44:16 46:2,4 48:25 50:2,23 53:23 56:25 57:10 59:25 60:15 61:3, 12 64:19,21 66:1,16 67:25 71:17 74:23 75:10,16,22 76:6,9 79:19 85:17 88:9,10 95:2,10 110:3 136:7,10 151:13 152:20 156:4 165:20 179:24 184:12

**heard** 11:9 12:1,3,4 62:25 64:6,9 88:5 101:14 110:12 124:15 137:6 142:13 167:6,7 183:23 192:25 200:20

**hearing** 56:16,17 88:2 95:16 157:12,13,25

**hearsay** 19:21

**heart** 80:16 152:19

**heat** 82:6

**heating** 137:18,24

**heinous** 195:21

**held** 71:12 85:12 109:10

**hell** 135:23

**helpful** 29:17 71:23

**helping** 81:8

**helps** 13:24 199:5

**Hey** 77:13 189:9

**hide** 17:18

**hiding** 138:18

**high** 82:21 91:11,12 139:16

**highest** 42:12

**Hilary** 169:12

**Hill** 6:11 9:8,22 11:13, 23 15:4 20:7 42:23 111:13 179:8 200:13

**Hillary** 74:17,21,24 75:11 165:21 166:23 169:4,5,8

**hip** 143:16

**HIPAA** 131:9

**hire** 125:25 126:2

**hobbies** 140:12

**hold** 42:10 47:12 79:14 134:3 135:6 139:16 185:1 195:16

**holy** 126:1

**home** 80:13 134:21 152:19

**homeowner** 49:11

**homicide** 137:21

**hone** 165:12

**honest** 55:3,13 64:1 122:16 154:16

**Honestly** 174:7

**honesty** 63:14,18 70:25 71:14,23 72:19 73:9,14 76:2,8 106:5,13 181:22

**Hong** 146:25

**Honor** 12:21 14:20 15:16 17:1 18:9,25 19:13 20:2,12 21:8 22:6 23:7,10,19 24:5 26:10, 21 27:7,21 28:10,15 44:21,23 46:23 57:8 59:6 84:6,10 145:10 150:18 153:5 154:6 164:2,18 168:10 170:17 176:19 183:19 184:9 186:19 187:25 194:24 196:20 197:4

**hop** 137:9

**hope** 16:19 96:1 148:8

**hospital** 131:9,11

**hosting** 81:17,22 155:10

**hot** 33:14

**hotel** 83:22

**hotter** 33:18 82:5

**hour** 9:7 10:9 12:14,15 14:18 15:7 35:21 148:6, 8 190:7 201:9

**hour-and-a-half** 17:22 20:20 21:25

**hours** 11:5 14:13 15:5

**house** 82:1

**housekeeping** 148:3

**HR** 91:22 127:23

**huddle** 108:22 147:17

**Hudson** 24:13 46:17,19

**human** 40:25 91:17

**humanly** 190:4

**humans** 65:16

**hundred-mile** 16:15

**husband** 98:22 99:6, 10,16,18,21

**hyped** 166:23

---

**I**

**idea** 131:7,18

**ideas** 201:10

**identify** 29:1 32:17 170:21

**ignorance** 134:12

**ignoring** 94:14

**III** 6:17 43:15

**images** 181:10

**impact** 99:7 132:10 133:1 157:20

**impairment** 58:7 59:3, 11 150:7,15

**impartial** 39:4 55:19,23 64:18 112:5 113:3,20 115:19 125:1,7 146:1,9 147:7,9 160:14,17 172:14 174:22

**impediment** 157:4

**important** 36:2 39:12 110:24,25 136:8 138:2 162:17

impression 131:22

improper 38:20 113:15

impropriety 37:24

in-court 21:14

in-house 8:19 9:10,15
11:18

inaccurate 38:21

inadvertently 28:3

inappropriate 128:14

inauguration 164:24

inclination 14:13

inclined 169:10

included 180:4

includes 37:15 38:23

including 13:11 36:21
38:9 40:21 41:4,17

inclusive 183:4

incomplete 38:21

Indiana 112:25

Indianapolis 112:25

indicating 9:8

individual 128:16,17
145:1

individual's 87:4

individuals 124:6

infirmed 109:5

influence 113:19
115:18

influenced 38:21 73:3

information 37:9,12,
15 38:7,20,22 39:1,8
45:17 128:12 131:10
153:1 184:8,16

informed 183:16
193:25

infraction 50:25 51:3

initial 22:8

inject 61:20,22

injured 59:6

injustice 39:11

inside 141:1

Instagram 117:7,14,
24,25 119:12 120:5

instance 74:8

instill 130:18

instructed 9:10

instruction 195:18,19
196:9,13,15 197:21
198:10

instructions 31:7 34:1
36:8 39:13 188:23
189:16 191:11 192:7
193:18

instructor 90:4

insurance 89:3,6,14,22
93:25 99:1,2,3 140:7
185:20

integrity 39:5

intelligently 40:4

intend 29:2,10,12
151:21

intent 23:4 164:22

interaction 55:18

interested 13:6

interesting 33:19,23
74:18

interfere 199:12

international 79:5

Internet 38:1,5

interoffice 141:21

introduce 29:2,6,14
42:20 171:1,2

invention 74:22

inverse 56:7

investigation 38:3,18
129:3,6 141:14

investigator 137:21

investment 128:2

involuntarily 111:8
112:16 113:11 114:4
115:10

involve 74:14,16 102:4

involved 38:8 41:10
129:5 166:9

involves 101:2

involving 53:25 163:25

iron 158:15

irretractable 156:3

issue 10:3 11:20 24:18
28:16 29:16 67:21 72:2
79:5 85:1 88:10 95:8
121:3 140:24 141:4
145:20 157:13 162:4,17
163:6 164:8,10,19
165:6 166:10 168:11,13
169:18 174:18 175:12
188:1 196:20,25 197:7
199:8

issues 14:6 24:9 91:23
92:2,3 100:12 110:23,
25 116:22 138:2 144:12
147:18 152:3 157:7,12
161:5 162:6 163:17,18
183:17 187:24 190:14
194:16

items 144:22


J

jail 122:1

January 41:2,7 83:13
144:8

Jason 43:7

jerk 150:24 151:11,13
153:21 155:4,5,11
157:20 178:19 181:4

Jewish 130:3

job 42:7 65:3 89:9 90:2
96:17 100:24 111:8
112:17 113:11,15 114:4
115:10 125:25 126:2,3,
7 130:12 134:5,22
135:21 137:7 144:20
152:18,24 158:25

jog 192:9

joining 6:24

joint 16:2,4,24 30:17

jointly 12:22

joking 200:11

Jones 45:7 46:6

judge 32:5 33:16 38:10
42:16 54:6 66:18,19
85:10,21 86:17 87:13
88:23 96:6 100:11,24
101:23 109:8 135:13
147:12 151:15 158:14,
18,22 166:21 176:8
189:23 192:5

judges 58:19 193:16

judgment 147:5

July 7:21 82:24 158:3

jump 148:21

juries 52:1 53:13 54:25
192:21 193:12,13 199:1

juror 37:7,14 45:23
46:1,2,6 47:21,23 48:2,
5,10,12,21,22 49:2,5,8,
10,15,17,20,22 50:3,7,
12,15,17,21,22,24 51:2,
4,7,10,12,17,22,24,25
52:5,9,10,15,16,19,22,
24,25 53:2,6,7,8,9,12,
13,22,23 54:7,8,11,14,
23 56:19,21 57:4,7,8,
12,20,23 58:1,8,11,23
59:4,5,20,22 60:1,9,10,
12,13,19,25 62:6,11,21,
25 63:8,11,21,22,23,24
64:18,25 65:6 66:1,3,9,
21,24 67:3,4,8 68:2,4,8,
13 69:1,12,17,18,21,24
70:2,6,13,20 71:1,3,7,
19,21,24,25 72:1,5,8,
12,16,20,24 73:7,15,22
74:3,9 75:18,19,22,24
76:3,4,9,11,14,15,17,
18,22 77:1,5,9 78:9,10,
19 79:2,3,9,13,20,23
80:5,6,7,21,22 81:3,4,9,
15,17,23 82:3,7,8,12,14
83:2,3,10,11,15,16,21
86:2,3,9,20 87:18,22
88:5,11,13,16,25 89:5,
10,13,15,19 90:1,3,6,
12,18,21,22,24 91:2,5,
10,16,18,21 92:4,9,13,
16,19,22,25 93:4,8,10,
15,18,24 94:2,6,8

95:11,19,22 96:4,10,25
97:3,8,9,19 98:6,10,20,
22,24 99:8,14,18,21,25
100:6 101:21 102:14,
16,17,21,24 103:2,6,12,
15,18 104:1,5,9,11,17
105:1 107:5,23 111:9,
12,23 112:6,11,12,20,
24 113:6,13,14,17,22
114:6,17,21,25 115:13,
15,20 116:11,13,16,19,
23 117:2,5,6,9,15,22,25
118:3,4,8,10,15,19,23
119:3,7,10,16,22,25
120:4,9,13,16,18,22
121:2,6,9,23 122:6,10,
14,20,23 123:5,16
124:19 125:2,8,15,18,
22 126:23 127:3,5,14,
17,22,24 128:1,20,25
129:4,12,17,22 130:9,
14,17,23 131:1,13
132:1,3,11 133:3,18,22
134:3,10 135:2,12,22
137:8,10,14,16 138:8,
14,18,21,23 139:2,7,19,
22 140:1,5,8,13,19,25
141:5,8,13,19 142:1,4,
8,15,19,23 143:6,9,20,
24,25 144:4,8,14,19
145:2,17,18,23 146:3,6,
7,11,13,18,21 147:1,8
149:22,23 150:17 151:7
154:2 156:8,9 157:1
159:15 161:7 175:15,
16,17,24 176:12,16,17
177:22 178:7,11 180:8,
24,25 181:3,6,9,16,23,
25 182:23,25 183:20
185:2,3,8,13,19,24
186:2,7 187:10,12
189:1,2,3,6 191:20,21
192:3,13

**jurors** 33:7 36:21 37:19
38:11 39:1 47:14 55:7
64:6 84:15,20 109:1,13,
21 159:17 164:9 169:1,
9 179:6 180:23 189:13
190:25 191:1,2,5,8,12
193:21

**jury** 6:7 7:3,10 19:6
32:9,24 33:7 34:23 35:2
36:14,17,19,25 39:4,16
46:10 47:2,10,13 49:16,
21 54:25 61:11 64:5,15,
19 77:24 78:7 80:8
86:13 87:10,12,23
94:21 102:8 107:21
109:2,17 145:15 147:16
148:4 149:7 159:18
165:3,10 168:21 169:23
179:12 182:18 183:13
187:7,10,14,21 188:14,
17,20,25 189:9,24
193:20 194:4 197:21
198:25 201:20

**jury's** 197:20

**K**

**keeping** 130:11 136:19

**Kevin** 149:3 167:9

**key** 87:8 200:16

**kick** 30:7 31:6 151:24
158:1 159:20 173:3
178:16 182:8 188:5

**kicked** 86:13 153:21
163:12 182:20

**kicking** 151:23

**kid** 154:19

**kids** 136:24 140:13
157:21

**kind** 25:4 62:15,16 66:4
68:10 83:5 89:13 91:23
108:1 110:23 121:23
122:1 124:5 129:24,25
130:4 138:4 143:2
144:10 147:5 155:25
182:3 197:9

**kinds** 143:12

**kissed** 112:21

**Kissman** 45:8

**knees** 144:5

**knew** 94:6 128:25
134:5

**knives** 199:3

**knowing** 102:6 105:10
117:18 135:7

**knowledge** 133:4

**Kong** 146:25

**L**

**labor** 92:9

**lack** 157:17

**lackadaisical** 132:14

**Lacour** 24:12 26:13
27:3,24 28:4,5 45:9

**Ladies** 33:12

**lady** 88:1 98:12 104:10
134:22,24 135:18
155:20 179:9,10

**lair** 175:18

**lake** 138:16

**land** 73:1 87:2

**landscape** 30:21

**landscaping** 143:11

**language** 13:24 16:23,
24 17:14

**largely** 29:18

**Lauderdale** 83:22
155:20

**law** 38:8 59:16,17 60:20
61:3,13,19,21 62:10
64:7,10,23 65:1,4,20,22
66:16 67:20,23,25
68:21,24 69:20 70:17
71:9,16,18 72:13 74:6,7
75:6,10 87:2,5,14 88:8
101:25 107:19 120:14
136:11,16 161:4,14
162:22 174:12,13
176:3,7,8,10,11,13
178:4,5,6 196:22

**laws** 41:17,18 65:14,15
67:15,17 68:14 69:3
73:1 86:16 128:7

**lawsuit** 34:6 40:10 95:5
108:7,10 133:7,14
135:3,10

**lawsuits** 142:6,9,11

**lawyer** 32:16,17 42:19
59:16 120:8

**lawyers** 34:5 38:9 40:1
108:23 151:17 190:1
199:2 201:22

**lead** 42:19 113:5

**leadership** 40:20,23

**leaning** 13:4 14:4
149:16 150:6,15 153:2
154:2 156:7,22 158:10,
20 165:11 173:3

**learn** 129:24

**lease** 52:17

**leave** 63:20 77:11
109:18 167:4 187:8
188:21 189:6,11 190:18

**leaves** 15:10

**leaving** 145:5

**Lee** 43:15

**left** 12:7,13 42:5 90:25
135:2 137:17

**legal** 39:23 43:18
55:18,22 58:4 59:13,15,
21,23 60:11 109:17
147:18 190:2

**legitimately** 169:21

**letter** 196:25

**letting** 156:23 157:10
158:7

**level** 34:25 91:13 129:5
152:21 154:1

**levels** 15:21 35:8

**libraries** 38:1

**licensed** 120:10

**life** 40:25 71:11 72:9
79:7 96:11 147:20
172:22

**light** 16:18 181:11

**lightning-round** 47:19

**likes** 129:25

**Likewise** 37:8

**limine** 164:20 166:2
168:20 170:4,9,24
195:22 196:21 197:5

**limined** 170:11 198:1,2

**limitation** 14:9

**limited** 22:3

**limiting** 197:21

**Linda** 45:10

**lines** 111:2

**list** 23:21 29:14 31:9 43:20,24 44:1 45:17 46:9,15 54:24 77:18 91:6 124:10 142:24 149:13 151:14 161:23 174:9 184:15

**listed** 22:7 30:16 187:16

**listen** 61:19 62:24 75:9 77:14 86:15 87:13 94:24 97:17 102:22

**listening** 10:10

**listing** 28:24

**lists** 149:5

**live** 21:14 28:9 146:20

**lives** 96:12 128:13

**living** 90:23

**LLC** 120:18

**Lobbing** 199:25

**Local** 6:14,16 40:14 43:16 84:5 96:19 99:22

**locked** 119:19

**Lockheed** 92:16

**logistic** 28:16

**long** 20:3 52:13 55:6 59:7 81:1 91:8 92:23 95:17 113:16 128:15 134:5 152:2 175:18 193:1,2

**long-covid** 149:25 180:11

**longer** 16:12 36:4 114:14 148:9

**looked** 134:11

**loose** 36:1 109:6 190:12

**losing** 87:3

**loss** 56:22,23

**lost** 95:7

**lot** 14:10 35:16,18 54:25 73:1 85:21 95:13 97:24 112:22 121:9 127:11 143:19,21 144:21 161:16 185:11

**love** 8:12 13:18 65:18 74:22 95:24 106:20 193:12

**lower** 31:16

**lowering** 50:1 59:24

**lowest** 42:12 159:25

**Loxahatchee** 80:8

**lunch** 35:22,23 126:4 190:7,8,9

**luxury** 136:18

— **M** —

**mad** 25:7

**made** 8:17 12:24 30:23 61:10 96:11 103:8 123:5 160:2 196:21 198:15,16

**maintain** 18:17 39:5

**maintained** 22:7

**maintaining** 19:19

**make** 13:12 15:22 16:15,17,22 20:7,18 22:21 25:5,11 28:1,2 30:10 32:8,10 33:23 38:2 43:23 48:18 50:10 60:4 64:14 65:10 69:15 73:2 74:17 75:12 84:14 85:2 86:14 87:7,20 89:6 95:24 96:21 98:9 99:12 100:5 102:15 103:4 105:3 106:1 111:15 114:23 132:6 136:15 149:5 151:2 157:1 167:3 184:4 186:24 194:17,21,25 195:25 196:5,11 200:12

**makes** 26:20 55:12 65:5 86:6 106:11 157:5

**making** 40:21 171:8 180:13

**manage** 90:13 145:1

**management** 90:9

**manager** 139:2,3,4 140:22 144:16

**managing** 145:3

**maneuvering** 14:1

**manner** 150:8

**manually** 56:25

**March** 41:8,11,15 142:24 164:23

**margin** 150:22

**margins** 151:3 158:8

**mark** 20:20 21:25

**marshal** 201:12

**Martin** 92:17

**mask** 34:15 50:1 59:24 67:6 71:5 89:17 151:8

**masks** 77:19 78:14

**master** 142:25 156:18

**match** 19:10 46:8 61:13 66:18 75:6

**material** 171:6

**math** 182:22

**matriculate** 112:14

**Matt** 6:11 42:23,24

**matter** 42:8 54:6 63:9 74:18 96:9 128:13 166:10

**matters** 118:6 171:11

**Matthew** 6:10

**Maureen** 45:5

**Mayberry** 43:8

**MC** 156:20 157:10

**Mcgraw** 111:13

**Mckeeby** 6:19,22 14:8, 24 17:23 18:4 22:25 23:13,21,22 24:2,5,7,11 25:8,17,23 26:6,8 28:15,18,21 29:21 31:1, 2 33:1 43:4,5,6,11 45:19 46:9,11,16 100:7 109:8,24,25 110:3,4 111:15 112:3,7,12,23

113:1,8,16,18,23 114:15,19,23 115:2,18, 21 116:9,10,14,18,25 117:4,8,12,19,23 118:2, 5,9,13,17,21 119:2,6,8, 14,18,23 120:2,6,11,15, 17,20 121:1,5,8,11 122:4,8,13,18,22 123:1, 9,17 124:13,23 125:6,9, 16,20 126:9 127:2,4,12, 15,18,24 128:17,23 129:2,8,15,20 130:6,13, 16,20,24 131:12,14 132:2,5,17 133:6,13,16, 20,24 134:2,9 135:1,9, 21,25 136:1 150:19 155:5 156:18 159:9,11 160:9,11,12 164:2 165:22 168:10 169:9 172:8 174:17 176:19,25 177:9 183:18,19 197:12,14,17 198:18 200:1,23,25 201:4

**means** 16:14 37:9 38:20 40:2 127:12 171:16 187:9 188:19

**meant** 94:23 169:17

**meantime** 150:15

**Mechanical** 138:23

**media** 37:11 38:1,13 40:22 116:2,5 121:13, 14,17 123:12,15,19,23 126:11,15,20 127:16 128:3 130:22 131:8,17, 18 132:9,12,21 138:5 170:23 192:25

**medical** 60:4 71:10 114:9 144:12

**Medicare** 89:16,20,21

**medication** 89:7

**meet** 109:2 115:16 159:20 189:18

**Meeting** 41:5

**Meggan** 45:7

**Melissa** 44:12

**member** 23:3 40:15 98:14,15,18,25 99:1,2 143:4

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                          July 05, 2022                    Index: members..number

**members** 41:3,7
100:19,21 117:18

**membership** 40:16
41:3

**memory** 192:8,9

**memos** 121:10

**Memphis** 82:9 156:10

**mental** 150:7 180:11

**mention** 75:25 166:4
197:14

**mentioned** 44:4,8 46:3
74:13 75:2 98:2,13
120:3 145:20 192:5

**mentioning** 145:21

**mentions** 166:22

**Mesquite** 53:3,4

**mess** 78:18,20

**message** 11:11

**messages** 40:21 41:9,
10,14 119:15

**Messenger** 201:12

**met** 109:14

**method** 38:2

**mic** 45:3 47:22 49:16
62:7

**Michael** 45:13

**microphone** 31:17
44:16,25 45:24 48:18
49:1 56:20 87:25

**mics** 31:14

**mid-morning** 25:20

**midmorning** 35:25
190:7

**midnight** 13:22 15:9
20:6

**midweek** 77:24 78:2,5
79:1 192:18

**Mike** 29:10

**mind** 50:1 59:24 71:5
75:6,12 106:11,12
115:13 139:20,21
142:14,22 144:1 152:21

180:12 181:13,17
196:21 197:8

**mine** 100:22 152:6
183:5

**minimal** 165:17,18

**minimum** 25:21

**minute** 11:8 12:1
105:11 132:24 195:21

**minutes** 7:13 36:4
39:19 78:3 88:23
106:14 110:2 133:12
136:4 148:7 167:5

**minutes'** 7:7 31:8

**miscarriage** 102:25
103:3 179:8,10,11

**misleading** 38:22

**missed** 47:17 73:19
79:18 159:3 177:24

**missing** 32:16 148:18

**mistaken** 115:23

**mistrial** 195:17 196:10,
16,17 198:11

**mode** 153:21 155:4,5,
11 157:19,20

**moment** 19:1 144:1

**Monday** 11:8,25

**money** 47:25 49:9
50:16,18 51:19 52:20,
21 79:6 105:21 142:19

**monitor** 56:15 131:2

**monitoring** 132:15

**months** 82:18 137:25
141:23

**morning** 11:8 24:16,20
30:12 33:19 35:24
43:13 57:15 188:3
194:15 201:15 202:1

**Morris** 6:23

**mortar** 144:23 145:4

**mortgage** 80:12
152:18

**mother** 134:13

**motion** 164:19 166:2

**mouth** 88:1

**move** 7:14 10:17 20:24
33:2 115:23 160:18
170:4,9 184:19

**moved** 32:13 114:10
168:20 170:9

**movement** 128:13
200:21

**moving** 13:7 56:11
135:23 170:1

**multi-page** 168:16

**murder** 52:6 53:14
105:22

**Muslims** 130:3

_____

**N**

**naive** 61:8

**naked** 122:11

**named** 30:13

**names** 44:2 46:15,21,
23 54:23,24

**nametag** 63:19

**Naomi** 46:17,18

**natural** 137:1

**nature** 114:10 117:14
119:15 156:4

**Navares** 21:14

**necessarily** 87:9

**needed** 24:21 31:18
89:25 94:5 135:14

**needle** 166:21

**negative** 55:18 57:21
101:12 131:22

**neighboring** 93:11

**neuro** 149:25

**neutral** 95:1

**Nevarez** 8:3,5 9:11,17
11:6 12:2,3 13:1 15:12,
14 17:3 21:19 27:9,13,
15,18,19 44:10

**Nevarez's** 15:22

**newspapers** 38:2

**nice** 126:25 127:6,8

**night** 9:22 10:9 11:12
13:11 14:2 15:9,10
23:21 27:20 194:8

**ninth** 93:1

**nods** 103:6

**non-case** 191:9

**non-controversial**
33:22

**non-member** 40:17

**non-officer** 23:1

**non-refundable**
83:13,23 156:5

**non-responsive** 16:7

**non-responsiveness**
16:20

**non-verbals** 177:6

**nonetheless** 112:4

**nonprofit** 117:10

**nonverbals** 177:15

**noon** 9:16 190:8
192:23,24

**normal** 35:18 147:20

**notch** 201:21

**note** 121:2 182:7 192:6,
9

**noted** 128:21

**notepad** 192:1

**notes** 58:19,20,21,25
102:11 147:24 150:11
153:5,8 163:20 175:6
191:22 192:7,9,10,11

**noticed** 27:23 138:19

**notwithstanding**
54:21 175:14

**nudges** 158:7

**number** 34:20 40:1
42:11,13 45:22,23 58:9
62:2 86:5,7 98:4 100:7
124:9 127:25 142:13

Case 3:17-cv-02278-X   Document 447   Filed 06/14/23   Page 219 of 228   PageID 13815
CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Index: numbers..permanently

159:25 161:23 188:19,
20,22 189:5 190:24

**numbers** 42:14 47:13
54:23 79:2,15 103:11
107:6 116:7 170:18
183:3

**nurse** 59:23

─────────────

**O**

─────────────

**oath** 38:23

**object** 19:18,20 173:18
195:3,6,13,15 196:4,5
197:3 198:8 199:10,16,
19

**objected** 20:20

**objecting** 194:19 195:9
197:18 198:3,6

**objection** 20:18 21:21,
24 173:4 182:7 184:17
198:15 199:24

**objectionable** 195:5

**objections** 7:25 18:16,
17 19:4 20:10 22:15
23:8 26:15 27:5,24 29:1
30:8,9,14,16,18,23
40:19 194:14 195:16
196:6 201:16,18

**objective** 63:12 64:16
66:6 164:6

**objector** 40:18 155:8

**obligation** 183:22

**Occasionally** 107:23

**occupation** 93:23
137:12 142:22

**occurs** 196:2

**October** 144:9

**offered** 13:13 15:4

**office** 120:25 121:7
158:15

**officer** 6:3 16:8,9,14
22:23 33:5,9 108:20
137:17 148:13 188:11
189:8 190:16 202:2

**Oftentimes** 143:2

**olive** 14:16,17

**one-sided** 161:12

**one-stop** 91:24

**open** 25:16 55:13 75:6
85:12 106:12 109:10
183:10 200:12

**opening** 25:19 31:7
188:2 191:13 193:24
194:12,20,22,23,24
195:4,10 196:2,6,18
197:2,15,18 198:15,17
199:3,10,12

**openings** 194:18

**operating** 128:21

**opinion** 66:8,18 71:4,7
73:3 97:5 130:21,25
186:4

**opinions** 64:7,12 67:5,
9 88:6,10 96:20,23
172:9,12

**opportunity** 14:21
21:18 195:5 199:11

**opposed** 86:25 87:11
110:23 164:9,25 166:3

**opposite** 56:10 110:6

**opposition** 41:19
67:17 71:17

**option** 13:19 32:3

**order** 6:13 8:24 9:3
13:21 14:18 15:8,25
17:5 19:8 27:14 42:12
79:19 100:25 105:6
135:18 149:19 159:25
195:12,15 196:10
201:1,12

**organization** 111:24

**organizations** 91:24

**organizations'** 91:23

**Out-of-state** 22:25

**out-of-town** 25:4,9

**overcome** 101:25

**override** 61:21,22
62:10 67:24 151:4,12
176:11 192:8

**overrule** 161:19 163:3
173:4 182:8

**overruled** 19:22

**overturning** 62:14
119:6

**owner** 147:2

─────────────

**P**

─────────────

**p.m.** 202:3

**pack** 81:6

**packet** 168:18,25

**pages** 164:12

**paid** 52:20,21 80:12
83:6,22

**pandemic** 120:23

**panel** 32:2 47:2 86:13

**paper** 168:25

**papers** 53:17

**Parenthood** 101:3,12,
15 111:21,24 160:15

**parents** 162:16

**parents'** 96:12

**Parker** 7:22 22:17,18
23:16 26:22 27:1 28:13

**Parker's** 23:9

**parking** 112:22

**part** 10:9 28:23 64:5
65:13 104:18 126:11
132:14 164:23 166:5
170:12 171:7 174:5,7
182:4

**participants** 37:16

**participating** 36:17
40:22

**parties** 10:19 37:16
38:9 39:3,9 41:22 66:11
100:10 106:4 161:4
166:6

**parties'** 38:15,25

**partner** 128:21

**parts** 193:13

**party** 63:3 128:23

**passed** 119:3

**past** 36:6 134:11

**path** 8:9 14:6

**patience** 108:13

**patient** 191:17

**patients** 131:10

**Paulo** 6:22 43:6 110:4

**pay** 80:12 151:17
152:18 181:12

**paying** 126:7 180:14
191:17

**pen** 192:1

**people** 14:14 25:8 26:1
34:19,22,25 35:7 36:24
37:21 38:8 47:6 58:15,
20 61:12 62:15 64:21
74:16 76:19 78:2,3,4,13
81:18,24 86:23 87:6,9
89:20 96:16 97:9
101:14 107:16 110:14
117:21 119:20 120:20
127:11 130:3,5 131:5
132:16 133:14 134:23
136:23 137:5 142:9,17
145:8,16 157:6,7
158:14,18 159:20
161:16 166:24 169:10,
15 170:7 172:24 178:25
179:3 180:13 182:20
188:18,25 192:10 194:1
195:9,16

**people's** 134:11

**percent** 56:22

**perception** 131:19,23
132:10 133:2

**peremptories** 149:2

**peremptory** 40:1
55:15 148:22 160:5
162:23 183:11 187:17

**perfect** 174:8

**perfectly** 30:5

**period** 14:15 22:9

**periods** 59:7

**permanently** 121:17

**permission** 17:25
44:14 46:10 119:20
189:12

**person** 16:17 17:19
31:22,24 40:9 43:24
44:4 46:13 54:20 58:5
60:2,4 72:21 75:4 76:5
80:11 105:13 109:5
121:15 134:17 141:17
151:18 170:14 172:21
173:14 180:9,10 183:7

**personable** 54:20

**personal** 61:20,22 62:9
64:7,11 68:6,8,22,24
69:16,19 70:14,18
72:14,22 134:21 161:15
162:5 176:10

**personally** 8:18 97:23

**personnel** 37:20 191:8

**persons** 101:2

**perspective** 110:16,22

**phase** 36:18

**phone** 10:8 12:5,24
16:3,4,25 17:3 36:11
56:24 88:2,3

**phones** 147:19 148:7

**photos** 153:23

**phrase** 96:7 161:1

**physically** 16:17

**pick** 121:24

**picked** 94:13 171:17
188:14

**picking** 19:6

**pictures** 131:10

**piece** 136:10,15 168:24
170:22

**pigeon** 201:12

**pile** 198:23

**pillars** 35:19

**pilot** 95:12

**pin** 27:12

**pipe** 100:1

**pipeline** 142:25

**placard** 31:14,15,16
42:3,11 43:2 44:3 56:2,
5,8 61:16,24 79:11
121:20 125:13

**placards** 31:13 47:12
55:24,25 56:4,6 75:14
79:14 110:15 114:1
121:19

**place** 34:24 35:7 38:4,6
171:2

**places** 32:10 34:14

**plaintiff** 40:9 51:14
105:19 108:6 133:7,13

**plaintiff's** 22:8 110:7
200:3

**plaintiffs** 51:19

**plan** 18:21 19:1 23:16,
18 109:2 153:18 157:9
197:14

**planned** 81:25 101:3,
12,14 111:21,23 160:15

**planning** 192:17

**Plant** 139:2,3,4

**play** 42:17 47:18 67:10
68:10

**played** 22:13

**playing** 19:24 102:15

**pleasantly** 150:21

**pledge** 69:16

**plenty** 18:5,19 151:16
159:20

**plexiglass** 34:13 48:25
54:22

**plumber** 143:1

**podium** 63:20 89:1
103:12 116:11 125:17
132:6 133:21

**point** 9:12 13:8,16 21:3,
5 22:3 27:16 29:18 36:3
72:11 83:5 87:8 113:25
146:16 154:24 158:3
160:16 161:9 162:20
165:16 180:5,12,14
197:25

**pointed** 200:1

**police** 137:16

**policies** 110:18 126:12
130:22 131:8

**policy** 126:11,15,20
127:16 128:3 131:8,17,
18 132:21 141:10

**political** 101:10 110:24
116:22 117:14 118:7,24
119:15 124:2 126:25
146:2

**politically** 114:11

**politician** 75:1,11,16

**politics** 33:22 61:7,18
72:6 74:2,13 75:8
129:19,25 145:10 170:6

**poor** 179:10

**pop** 47:6

**popular** 45:14 97:5

**portions** 19:8,23 20:25
21:1

**position** 14:22 141:22

**positions** 141:25

**possibility** 66:22,25

**post** 116:2,5,12 117:17
118:3,6 119:2,15 122:2
127:18 128:18 131:6,21
132:4,8,13,19,20
146:25 171:1

**posted** 121:25 122:5
123:19 128:5,19

**posting** 117:17 138:5

**posts** 40:21 170:23

**potential** 21:12 27:2
133:1 149:22 159:17
171:21 178:11 181:25
185:2 186:7 195:11

**potentially** 9:19 128:6

**pounds** 135:6

**power** 36:12

**Powerpoint** 194:12,16,
17

**practice** 60:20

**practicing** 120:11

**prayer** 116:17,19

**pre-budgeted** 83:6

**precarious** 82:22

**precaution** 123:7

**prefer** 13:9 27:14 31:25
198:24

**preference** 25:10

**preferences** 124:17

**prejudice** 165:2 195:12

**preoccupied** 153:23

**prepaid** 79:6 156:1,3,5
158:3,5,6,11

**preplanned** 82:9 83:5,
12

**prepping** 30:12

**presence** 37:6 197:20

**present** 18:10,21,23
23:4,16 26:25 27:8
58:22,24 164:22 198:25

**presented** 38:17 39:8

**presenter** 83:18

**preservation's** 163:5

**preserve** 196:25 197:6,
10

**preserving** 197:19
198:12

**president** 41:4,10,13
90:8 105:20 145:22
163:23

**Presidential** 90:13

**presiding** 33:17

**pressure** 135:14 157:7

**pretrial** 21:11,17,23
29:4 30:16 149:8 171:5

**pretty** 154:5 156:16
157:8 165:9 177:9
199:23

**prevalent** 142:7

**prevent** 97:16 103:24
104:24

**prevented** 124:1

**previous** 57:19,20

**pride** 193:14

**principal** 93:7

**prior** 12:9 58:6 143:1

**private** 41:9 117:16,19
119:11,12,17

**privilege** 201:22

**prize** 97:2 103:14

**PRN** 115:16

**pro** 70:3 72:9,25 95:1
165:9 169:21,24 172:22

**problem** 19:7 56:14,16,
17 66:7 69:8 70:7 78:14
80:10 81:20 103:21
131:17 132:23,24 133:5
150:9 169:12 176:1
177:20 178:2 180:7
185:23 197:17 198:1,7

**problems** 80:17
157:15 198:4

**procedure** 141:11

**proceed** 44:6 85:14

**proceedings** 84:8
85:12 108:24 109:10
202:3

**process** 21:4 38:23
39:6,17 88:7 141:2

**processor** 10:1

**profession** 91:6

**professional** 198:21

**prohibit** 65:12

**promise** 62:22 69:15
70:21 72:12 77:10,11
94:12 177:20 178:2
193:1 199:15

**promised** 100:25

**property** 143:21

**PROSPECTCIVE**
139:22

**prospective** 46:2,6
48:2,5,10,12,22 49:2,5,
8,10,17,22 50:3,7,12,

15,17,21,24 51:2,4,7,
12,17,22,25 52:5,10,16,
19,22,25 53:2,6,7,9,13,
23 54:8,14 56:21 57:4,
8,12,20,23 58:1,11,23
59:5,22 60:1,9,12,13,19
62:11,21 63:11,21,24
64:25 66:3,9,21,24
67:4,8 68:2,8,13 69:1,
12,21 70:2,6,20 71:3,7,
19,21 72:1,5,8,16,24
73:7,15,22 74:3,9 75:24
76:4,11,14,18,22 77:1
78:10,19 79:3,9,23
80:5,7,22 81:4,9,15,17,
23 82:3,8,12,14 83:3,
11,16,21 86:3,9,20
87:18,22 88:11,13,16
89:5,10,15,19 90:3,6,
12,18,21,24 91:2,10,18,
21 92:4,9,13,16,19,25
93:4,8,10,18,24 94:2,8
95:11,19,22 96:4,10
97:3,9,19 98:6,10,20,
22,24 99:8,14,18,21,25
100:6 101:21 102:17,24
103:2,6,15,18 104:1,5,
11,17 105:1 107:5
111:12,23 112:6,11,20,
24 113:6,14,17,22
114:6,17,21,25 115:15,
20 116:13,16,19,23
117:2,6,9,15,22,25
118:4,8,10,15,19,23
119:3,7,10,16,22,25
120:4,9,13,16,18,22
121:2,6,9,23 122:6,10,
14,20,23 123:5,16
124:19 125:2,8,15,18,
22 126:23 127:3,5,14,
17,22 128:1,20,25
129:4,12,17,22 130:9,
14,17,23 131:1,13
132:1,3,11 133:3,18,22
134:3,10 135:2,12,22
137:10,14,16 138:8,14,
21,23 139:2,7 140:1,5,
8,13,19,25 141:5,8,13,
19 142:1,4,15,19,23
143:6,9,20,24 144:4,8,
14,19 145:2,18,23
146:3,7,13,18,21 147:1,
8 175:16,24 176:12,16,
17 177:22 178:7
180:23,25 181:3,6,9,16,
23 185:8,13,19,24

186:2 189:13 191:21
192:3,13

**protect** 38:15 41:18,19
65:15,16 131:19

**protection** 35:1

**Protective** 137:20

**protects** 67:20

**protest** 72:25

**protocol** 24:8,21 28:19
29:23

**protocols** 34:9,12,17,
24 35:7

**proudly** 43:16

**proves** 105:23

**provide** 15:20 89:21
191:23,25

**provided** 9:1 114:8

**provider** 184:1

**province** 149:9

**Pryor** 6:11 27:21,23
42:22 44:7,18,21 45:1,
2,5,20 46:5,7 84:6,10,
13,20,24 85:5,9,15,16,
19 86:4,10 87:8,20,23
88:12,14,17 89:8,11,23
90:4,8,15,19,22,25
91:3,14,19,25 92:7,11,
15,18,21 93:6,9,12,20
94:1,4,10 95:20,23
96:6,13 97:7,12,20
98:8,11,21,23 99:5,9,
15,20,23 100:2,9 101:5,
7,22 102:20 103:1,4,8,
17,20 104:3,7,15,23
105:2,5 107:8 109:7
133:11 150:18 152:1,7
153:5,12 155:4,19,23
156:14 160:23 162:13
163:16 165:24 166:14
167:15,19 170:2 171:23
172:2 173:15,17,20
175:4 179:4,14 180:19
182:21,24 184:9,21,23
185:5,9,15,22,25 186:3,
10,13,17,19 187:25
193:23,25 194:22,24
195:3 196:3,12,20
198:13 199:6,17,21
200:4,7,19

**public** 77:20 118:1
119:12 131:19,23
132:19,20 133:1

**publicly** 131:3

**pull** 89:17

**pulling** 71:5

**punish** 107:21

**punitive** 107:19 108:2

**purchase** 144:21

**purchasing** 144:16

**purported** 41:17

**purpose** 97:6 169:1

**purposes** 192:18

**pursuant** 24:21

**push** 156:6 190:14

**pushed** 114:11

**put** 14:18 15:7 27:12
29:25 35:6 42:13 44:25
47:15 58:16 62:3 79:17
87:25 106:17 107:2,13
113:5 122:1 128:12
147:6 168:12 186:24

**puts** 80:15

**putting** 36:13 131:2
198:22

---

**Q**

**question** 8:3 10:4
13:20 20:4,9 23:16
26:16 29:23 42:2 46:25
55:17 56:7 58:6,18
59:12,14 60:24 65:6
73:5,21 74:25 75:7
78:22 88:18 89:13
97:21 98:1 100:15
101:9,24 103:23 105:14
106:8 111:2,17 112:15
117:12 119:18 121:13
123:20 124:5 129:14,18
131:15 133:8,25 154:14
160:15 162:11 165:17
168:19 174:1,14 175:2,
3,5,6,7,14 176:2 177:18
178:13 181:5,8 184:10,
18 185:5,10

**questioned** 111:19
161:2,3

**questioner** 136:3

**questioning** 85:6
175:21

**questionnaire** 100:3

**questions** 7:6,8 31:3,8,
9,13 33:1 34:4,6 39:18
41:22,23 77:4 83:25
84:3,4,16,18 85:22,24
87:16 94:15 102:12
109:13,23 110:9,11,20,
24 129:10 136:20 137:9
145:9 147:23 162:22
174:3 175:22 184:23
186:6,9 193:11

**quick** 34:9 58:25 66:2
76:11 79:12 97:14
106:18 167:8 186:23

**quickly** 133:21 141:22

**quit** 135:14 137:25

---

### R

**radar** 137:7

**radius** 16:15

**raise** 24:9 31:14 37:23
42:2 44:3 56:2,8,10
61:16,24 79:11 100:16,
22 108:7 110:14 142:5
169:11

**raised** 24:18 30:19
125:13

**raising** 121:15 183:17

**rare** 104:22

**rattled** 28:6

**reach** 49:6,7 50:14
51:5,13,20 61:14,20
117:10

**reached** 48:8 52:2

**reaching** 68:11,25

**react** 122:3

**reaction** 163:23

**reactions** 171:12

**read** 19:9,24 31:15
42:11,12 43:20 44:1
45:19 46:9,13 47:12
56:2 155:19 162:25
172:15,16

**reading** 21:16 177:5,15

**ready** 32:5,10,11 44:23
100:17 173:17 186:12,
13

**real** 76:11 179:23 180:2
193:16

**realize** 13:17 16:6,7
147:24

**realized** 11:8 12:1

**Realtor** 53:25 54:2

**rearguing** 170:2

**reason** 23:23 39:25
40:3 57:1 77:8,14,16,23
78:6 102:7 151:15
153:15 160:6 168:14
173:3 182:19 192:10

**reasonable** 54:16
157:1

**reasons** 9:14 14:10
39:20,23 149:16 157:24
165:4

**recall** 23:13 40:23
49:23 52:3 164:21,25
185:18

**received** 9:7 113:15

**recent** 65:7,18,19 71:9
73:18

**recently** 128:10

**recess** 33:2,6 108:21
148:14 167:8 168:1
183:15 188:10

**recognize** 45:25

**recognized** 128:21

**recollection** 174:15

**record** 31:15 32:17
35:14 55:6,11 148:16
160:24 183:13 190:1
193:19 194:25 197:1,7,
10,19 198:5

**recorded** 42:9

**records** 60:4 114:9

**recovering** 144:11

**recurring** 110:7

**refer** 105:10

**reference** 60:2,3
165:21,25 166:1 198:9

**references** 74:23
168:17

**reflected** 132:8

**refresh** 22:23 197:25

**refrigerator** 35:23

**regard** 85:24 106:12
118:22 195:1

**regional** 121:7

**registered** 128:2

**regularly** 116:2,4,21
118:6 119:14

**regulate** 56:24

**regulatory** 128:4

**rehab** 85:4 161:9,17,18
168:5,7 174:7,14 175:2,
4,6,9

**rehabbed** 161:13
163:1 165:13,14 166:18
168:4 176:18

**rehabilitate** 174:3

**rehabilitated** 162:3
163:7 174:19

**rehired** 115:17

**reiterate** 168:11

**relate** 30:15 110:21

**related** 37:17 131:14,
16

**relations** 91:23 92:10

**relationship** 94:22
95:4 185:6

**relevance** 19:21 30:22

**relevant** 9:13 61:3

**relieve** 24:19

**religion** 33:22 41:18
61:7,18 67:16 71:17

72:6 106:24,25 107:1,4,
10,11 110:13 124:21,25
129:15,18,25 161:12
174:11,23 175:23

**religious** 65:15 67:16,
19 70:9 74:7 92:2
104:12 105:7 107:16
124:2,7,17 174:20

**relying** 39:2

**remaining** 20:25
148:20

**remarks** 188:2

**remember** 30:15 47:24
48:8 52:13 102:21
118:13,20,21 127:6
129:13 159:17 172:4
175:8

**remembered** 47:25

**reminder** 31:5 189:17
194:18

**remote** 120:14

**remotely** 9:2 120:21

**render** 61:2 86:17
125:1

**rendering** 104:25

**reopen** 182:3

**repair** 49:11

**repeat** 46:12 79:3
94:16 123:16

**replacement** 143:16

**report** 30:17 38:14

**reported** 41:13 127:23
128:24 129:1

**reporter** 42:4 49:25
50:23 57:10 67:6

**reporting** 7:14 32:12

**repost** 116:16 128:12
138:10

**reposted** 122:1,7

**reposting** 126:24

**represent** 17:3 42:23
43:6,16 85:20 110:4

**representative** 92:10

132:22

represented 40:13
133:4

reprimanded 123:13,
18

Republicans 145:14

request 8:7 195:15
196:4

requested 170:24

requesting 17:24

requests 116:17,20

require 110:10 115:24

requirement 115:16,
17

requiring 8:24

rescheduled 79:8
150:14

research 37:25 38:5,7,
18 191:6,10

resell 144:22

reservation 27:18

reserve 199:18,19

residence 10:2

resigned 40:16 41:3

resisting 52:6

resolution 135:10
142:3

resolve 135:11 140:24

resolving 141:4

resonated 160:16

resources 91:17

respect 24:11 128:7

respectfully 163:6

respond 9:6 21:8 28:25
173:17

response 8:4 21:20
164:1 197:12

rest 27:16,17 32:19
106:23 109:19 188:15

rested 27:15

restored 106:20

restrict 176:4

restricted 124:22

restriction 124:8

restrictions 106:17
107:2,11,12 174:11
175:22

result 39:14 124:24

resulted 129:6

resume 147:20

retaliation 140:4

retired 89:16,20 90:24
91:1 137:14 138:19
142:24

retiring 137:24

reunion 82:10 156:9

review 21:23

reviewed 170:8

rights 70:4,9

ringing 58:12

rise 6:3 33:5,9 108:20
148:13 188:11 189:8
193:20 202:2

rises 154:1

risk 80:24

Rockwall 53:19 91:12

Roe 62:15 118:25

role 19:24 81:7 153:21
154:15,17,20 156:2,3,
11 158:6

rolling 187:22

Roman 104:21

room 31:22 32:4,9,20,
22 33:8 34:19 35:17
54:5 78:13 136:9
140:17 147:17 148:1,
11,22,25 175:16 176:17
177:22 178:11 180:23
181:25 183:9 185:2
186:7 188:5,6,24
189:24 200:14,15

room's 34:18

roommate 134:12,13

rooms 186:8

rotation 158:18

roughly 9:7 11:4

routinely 117:13

row 85:17 94:11,12
111:4,6,7 112:14,17
113:9,10,12,24 114:2,3
115:4,5,6

rows 111:5

Roy 82:15

rule 19:7,22 27:5 167:7
196:3 198:22

ruled 165:1 166:3
182:11

rules 22:12 36:16 38:15
39:10,13 126:6

ruling 155:9 157:10
164:20 171:14 194:25
196:21 197:4,25

rulings 20:6

run 17:19 149:11
170:18

running 154:22 193:5

rush 7:17

Rutherford 26:14 27:3
28:7 45:10

S

safe 55:8 179:7

sake 163:6

sanctions 8:8 13:8
17:6

satisfied 187:7

Saturday 9:16 10:9
11:18 13:14

save 188:4 199:17

saving 71:11

schedule 193:5

scheduled 10:17,25
11:6

schedules 14:2

scheduling 78:23,24
79:4 149:20 190:14

Schneider 45:11 170:7

school 58:14 59:17
82:16,21 91:11,12

Scoot 45:3

scope 30:1

Scottsdale 81:18,24
82:3 155:11,18,21
156:4,8

screen 194:2

scribbling 81:13

scuba 139:7

seat 104:9

seated 6:5 33:7,11
46:10 188:12 193:22

seats 108:18

seconds 105:8 108:4,
23 170:1,20

seconds' 188:23

Secret 74:22

section 145:16

securities 128:7

security 6:3 33:5,9
108:20 148:13 188:11
189:8,20,21 190:15
202:2

Sedgwick 93:24
183:23 184:18,21
185:6,12,16,18,19

selected 34:23 35:11
36:19 48:15,17 50:4
61:1 77:12 188:24

selection 6:7 36:14,18
39:17 64:5 201:20

self-employed 80:11
152:14,16,22

semester 79:24

send 9:11 11:19 127:20
128:17 200:25

sending 8:18,19 40:21

**sends** 105:19

**sense** 13:12 26:20
55:12 65:5,10 86:6
131:20 132:18 151:2
157:5 167:3 194:17
196:11

**sensitive** 55:3 100:12
154:5

**sentiments** 76:5

**separate** 13:2 68:3
69:5 70:8 104:14 152:5
160:4 172:1

**separating** 162:6

**separation** 34:25
149:1

**September** 123:6

**serve** 50:6 77:8,14,23
80:7 102:16

**served** 8:15 9:9,13
11:14 47:9,13 50:21
51:12 97:6

**service** 9:24,25 10:5,7
11:15 36:25 49:16,21
53:18 56:13 58:8 78:7
109:22 114:13 138:2
188:15 189:7

**services** 114:9,14
137:20

**serving** 187:7

**set** 7:21 15:8 61:12
63:4,17 67:15 70:14
101:14 161:14 193:4

**settled** 50:6 135:12,20

**Shadowed** 121:9

**Shaffer** 24:13 45:12

**share** 55:13 118:11
131:9

**sharing** 142:22

**shift** 58:2 154:19

**shifted** 157:19

**shifts** 154:18 156:10

**shoes** 69:18

**shop** 91:24

**short** 8:14 49:15 89:2
128:15 134:6

**shorter** 136:19

**show** 16:17 75:14
104:24 139:11 186:20
187:22 189:18

**showed** 159:15

**showing** 24:20

**shows** 16:4 183:5

**shrink** 34:20

**shut** 146:24 147:3

**side** 39:19 135:16
140:16 145:5,6 161:18
186:21 199:25

**sidebar** 31:21 84:9
85:11 108:25 109:9
195:23 196:1 198:8

**sideline** 64:11 173:5

**sidelining** 172:18
173:2

**sides** 34:5 39:19 85:1
125:3 150:24 191:14

**sight** 140:18

**sign** 45:20,21

**signal** 7:11

**significant** 164:10
184:1

**signing** 53:16

**silent** 36:13

**silly** 94:15

**similar** 22:9 124:5
129:24

**simply** 169:23

**Sims** 29:10,14 45:13

**sir** 44:24 48:10 68:7
70:1,5 90:23 119:22
133:22 137:10,13
138:17 141:5 142:13
170:25 199:21

**sit** 13:10,21 14:2 16:15
17:21 44:15 59:7 60:25
61:1 64:11,14 65:21
94:21 102:8 112:1

113:1 122:14,15 125:12
142:8 179:12

**site** 123:19

**sites** 116:12

**sitting** 25:7 42:4 69:10
86:23 151:18

**situation** 17:20 27:10
32:2 115:14 150:23

**situations** 68:15 82:22
128:5

**six-hour** 14:17

**sixth** 94:9

**skidaddle** 148:10

**sleep** 87:4

**slip** 50:13 133:22
189:12

**slows** 31:25

**small** 60:21 92:18
129:23 166:10

**Smith** 44:4

**snag** 63:20

**Snapchat** 119:13
122:24

**social** 38:1 40:22
116:2,5 121:13,14,17
123:12,15,19,22
126:11,14,20 127:16
128:3 130:21 131:8,16,
18 132:9,12,21 138:5
170:22

**socially** 117:7,16

**someone's** 71:11
199:12

**Sonia** 45:9

**sort** 58:7 74:25 125:21
138:22 141:10 149:14
151:11,13,22 154:15
172:21 176:10 194:9

**sound** 97:15 99:15
149:18 183:14

**sounded** 156:16

**sounds** 26:11,13 89:4
90:8 99:5 146:15 150:1
155:14

**source** 38:2

**Southwest** 6:19,22 8:9
9:15 11:19 12:22,25
14:23 15:22 16:13 22:9,
12 40:10,12 41:14,16,
20 43:7,10 84:5 94:17,
22 95:1,4,9,12,17,25
96:5,10,16 97:25
109:13,23 110:5
114:15,18 160:18 170:5
171:7 184:2 185:6,11,
21

**Southwest's** 8:19 9:10
17:23 110:16,18

**space** 14:1 35:18 55:8
153:1

**spare** 138:13 139:6
143:8,9,10

**speak** 8:21 37:18,22
59:25 77:15

**SPEAKER** 178:24
179:2 183:5

**speakers** 156:13

**speaking** 44:15 124:21
156:1

**special** 82:15,22 93:5,
21 157:16,24 158:25

**specialist** 89:4

**specific** 22:4 110:11
111:17 181:17

**specifically** 12:25
163:19

**specifications** 128:8

**speech** 65:16 67:19
73:25 74:1,4,7 88:11,
12,15 92:3 104:20
106:15 110:13 124:20
147:5 162:4,6,10,12,18
163:2 173:22 175:8,11,
22 176:4

**speeding** 50:25 51:3

**spend** 32:19

**spending** 25:18

**spent** 10:9

**spirals** 198:23

**spoke** 150:8 169:4 180:6

**spoken** 115:9

**spot** 56:5

**spouse** 93:7 152:19

**spread** 35:19

**Springs** 50:22 51:1

**stabbing** 199:3

**stack** 170:22 171:3

**stand** 19:25 25:22 59:8 136:15 157:2 169:15 185:3 188:14,15 189:4 195:22 196:9 197:3 199:19

**standard** 31:6 185:17

**standing** 65:24

**standpoint** 8:6 12:20 20:18 78:23

**Starr** 33:16 41:24 42:16 147:12 176:8

**Starr's** 189:23

**start** 8:11 35:13 77:21 85:25 86:2 95:4,6 96:7 111:6 126:22 135:5 142:10 151:22 189:17 190:6 191:3

**started** 73:11 113:14 137:17 159:13

**starting** 82:25 96:2 117:1

**starts** 82:16,17

**state** 22:24 47:10,23 48:2 81:5 117:11 137:20 198:14 199:6

**states** 65:12 67:21 90:14,17

**status** 12:3 22:22 30:17

**stay** 32:21 46:10 158:23 193:8

**Steel** 99:25

**step** 14:4 167:22

**stepping** 144:1

**steps** 16:19,21

**stick** 109:19 135:16 155:8 156:7 171:6

**sticking** 157:9

**sticky** 32:1

**Stone** 44:9 46:5 170:23

**Stone's** 170:5

**stood** 12:17

**stop** 21:4 75:2

**stopped** 85:6

**stopping** 21:6

**stores** 144:23 145:5

**story** 128:15 134:6

**stress** 135:4

**stretch** 156:25 157:2

**strike** 20:24 40:3,4 85:1 160:18 175:1 182:24 184:15 186:10,15 187:3,9

**strikes** 32:21 40:2 55:16 148:23 159:19 160:5 182:18 183:6 186:12,17

**striking** 182:22

**strong** 17:14 61:17 62:13,17,20 63:16 67:5, 9,23 68:23 70:8,18 72:25 75:1 86:11 88:6,9 96:20,22,23 101:18,23 141:20 160:13,25 161:5,11 171:12 172:9, 12 173:20 174:17 176:25

**stronger** 16:23

**strongly** 111:20 164:4

**struck** 111:21 167:11 171:13 173:25 183:2 187:1 198:10

**student** 80:3 109:4 152:12

**students** 82:15,20,21

**stuff** 86:1 121:10 135:8 138:9,11 148:3 190:2 191:23

**style** 74:25

**subject** 9:19 27:18 187:16

**submission** 29:15

**subpoena** 8:15 10:1,12

**subpoenaed** 11:10 24:12

**subpoenas** 24:15

**subs** 157:18

**substantive** 13:7

**sue** 142:16

**sued** 41:16 54:5,6 134:25

**suffer** 150:9 180:13

**suffering** 149:24

**sufficient** 30:6 84:16 115:3 168:8 198:20

**sugar** 157:7

**suggest** 14:8 17:11

**suggested** 11:14 160:13 172:13

**suggests** 164:12

**suing** 49:11 142:20

**suitable** 142:2

**sum** 13:2

**summary** 123:9

**summer** 79:24 82:16 120:24 121:4

**sums** 13:3

**Sunday** 13:14

**super-sensitive** 31:19

**supercede** 192:11

**supervisor** 134:4

**support** 82:24 91:22 105:21 111:25 164:15 165:5 168:13

**supported** 92:5 163:25 164:13

**supporter** 162:18

**supports** 169:12

**suppose** 200:20

**supposed** 70:14 80:8 81:6 144:5

**Supreme** 65:7,11,18, 19 66:5,17 67:13 73:18 119:5

**surprise** 187:2

**surprised** 150:21

**surprising** 169:3

**suspect** 23:22

**suspended** 121:17

**suspicion** 37:24

**sustained** 19:22

**swear** 191:12

**swim** 90:4

**switch** 44:18,19

**sympathetic** 154:25 156:6 157:19

**symptom** 149:25

**symptoms** 180:11

**system** 55:18,22 86:5

**T**

**table** 11:24 96:2

**tables** 188:16

**taker** 192:9

**takers** 98:5

**takes** 152:13 155:10 171:19

**taking** 21:15 40:25 114:15 192:6

**Talburt** 9:12,13,16,24 11:22 13:1 18:1,8,18,21 21:15,20 22:15 26:25 27:1 28:13

**Talburt's** 18:8

**talk** 7:2 8:2 14:6,24 18:7 22:16 31:4 32:23 33:18, 21 37:10 54:25 55:9 63:23 67:3 72:3 79:1,11 88:23 91:14 108:4,11 109:20 124:21 126:1,5

129:18 130:4 134:19
147:17,22 148:20,22
149:1,18 150:4,16
152:3,10 153:3,15
154:4 155:17 156:11,21
157:11,16,23 159:22
160:7 161:17,24 162:1
163:14 165:2 167:5
169:19 170:8 171:20,21
172:6 173:6,7,9,13
178:17,20 183:17
184:13 185:25 188:6
190:24,25 191:2,4,7,8
193:24 200:6 201:16

talked 10:14 15:14 63:8
67:15 71:20 73:17
101:17 139:20 144:13
150:4 151:7 162:10
199:16

talking 10:10 32:20
58:14,15 65:24 69:8
71:6 74:6 75:8 86:23
89:18 101:14 104:20
127:19 150:5 160:20
161:21 162:21 163:18
167:10,11,13 173:23

talks 71:16

Tammy 45:12

tangential 164:16

tangentially 145:11

tangible 179:23 180:2

targeted 25:14

Tarrant 49:17 121:6

taught 91:12,13

teach 82:18 91:11 93:3
94:9

teacher 82:14 91:6
92:24 93:1,13 94:11
157:17

Teacher's 98:25

teachers 82:20

teaching 91:9 92:23
93:1

teachings 41:1

team 19:3 42:19,20,21
43:1,10,18 145:3
148:18,24 183:10

telephone 99:3

telescope 143:13

telling 48:19 50:8 51:9
57:5 59:2,10 139:21

temporarily 121:16
123:2

temporary 59:6 156:25
157:14

ten 91:12 108:18 116:9,
10 124:12,13 126:21,22

tentative 155:8 157:10

term 117:23 141:20

terminated 111:8
112:9,17,21 113:11
114:4 115:10 128:11,16
134:7

termination 113:4,21
129:7 171:8

terms 14:10 168:11

terrible 116:24

Terry 54:14

test 109:14 159:21

tested 38:22

testimony 23:17 38:6

tests 109:2

Texas 135:23

theme 110:8

thing 18:15 34:10 49:11
57:15 78:24 97:4
106:24 130:15 146:6
165:17,18 175:1 182:3
191:24 197:9

things 12:17 33:19
36:2 55:2 56:16 58:15
60:6 61:15 63:15 68:14
81:25 86:18 92:3
102:12 110:17 114:9,11
118:25 119:1 130:5
131:6,11 157:11 162:5
164:3 190:21 191:9
193:23 195:4 197:9
200:10 201:11

thinking 75:3 86:22
116:25 149:12 153:23
186:18 197:9

thinks 169:4,7

third-bucket 72:2

third-party 94:3 140:7

Thirteen 116:7

Thirty-two 114:5

thought 13:14 28:22
63:1,2 77:13 85:7,9
88:8 90:25 94:18
133:14 150:8 152:25
153:6,13 156:10 157:21
160:15 161:13,17
162:15 166:17,20
168:4,8 173:1,13 174:1,
6 175:5,7,10 179:4,15
200:25

thoughts 65:25 68:16
174:10,25 192:11,12
197:13

thread 166:21

threatened 140:22
141:18

throw 10:1 13:23
136:14

throwing 135:5

Thursday 150:2,12

ticket 53:3

tickets 81:19

tie 105:25

tied 55:11

till 62:1

time 7:17 12:15 13:2,
10,22 14:8 15:9 21:19
23:3 25:14,19 30:17,20
31:10 32:19 34:13 36:3,
22 55:7 58:12 59:7
63:25 66:12 78:7 81:5
88:6,21 95:18 97:1
104:21 110:10 118:14
133:11 135:25 136:8
138:13 139:6 143:5,8,
10 145:4 147:14 154:9
159:15 160:1 161:1
168:3 172:17 173:2,21
178:13 187:13 188:13
190:4,5,21 193:1 195:6
196:8

times 34:21

timing 11:11 24:22

tinnitus 58:11 153:11,
16 180:10

tips 34:8

tired 190:23

today 32:19 33:13,24
36:18 61:11 65:21,22
69:14 136:12 145:3
146:15 158:16 191:18
192:14

told 9:23 10:11 25:1
64:17 70:13 86:15
120:7 135:13 149:8
153:20 176:8 177:24
178:4 187:2 198:12
199:20

Tom 44:4

tomorrow 13:22 14:1
15:9,10 18:21,24 23:17
24:16,20 25:2,19 26:17,
24 27:6,10,20 30:5
35:13 77:12,14 148:4
187:22 188:7 189:18
191:12 192:7 193:18,24
194:6,11 201:6,17

tonight 14:1 15:10
18:22 19:4,12 20:6
22:15 26:19 27:6,20
28:3,13 29:9 188:7
201:11

tools 38:5

top 201:21

topic 41:12 55:4 61:9
64:20 69:17 123:11
147:25

topics 33:22 58:2
116:15

totally 13:18 29:22

touch 145:11

touches 74:2

touching 38:13

tough 63:15 85:21

town 190:18

traffic 53:3

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                           July 05, 2022                    Index: training..vote

**training** 58:4 59:13,15, 18,21 60:11 113:15

**transactional** 120:14

**transcribing** 42:5

**transcript** 19:9,18,24, 25 21:17 163:1 175:10

**transfer** 141:21,25

**transition** 7:14

**transmission** 35:3,6,9

**transparent** 190:20

**Transport** 40:13

**Transportation** 96:18

**travel** 25:5 115:17 139:8 156:1

**treat** 70:15

**treated** 70:16 161:4

**trial** 9:2 13:11 16:17 22:18,21 24:14 30:12 35:11,13 36:18 38:23 39:4,6,9 43:23 51:21 53:17 54:18,25 55:20, 22 56:13 61:11 63:5 64:15 71:11 135:10 136:9 155:16 189:23 194:6 199:17 201:24

**trials** 35:2,4 64:13 151:21

**tribute** 191:19

**trip** 49:15 79:5 82:9 155:15 157:4

**trouble** 58:13,16 135:19

**Trump** 74:17,20,24 75:11,25 163:24,25 164:8,9,13,16 165:4,14, 21,25 166:4,9,15,22 168:5,13,17 169:7,14, 15,19 170:8,10,15 182:12

**Trump's** 164:24

**truth** 38:24 170:25

**Tuesday** 81:20 83:18

**turn** 13:17 20:15 36:14 38:13 136:3 147:12,19

**turned** 88:3

**turns** 76:6

**Twitter** 119:12 120:4

**TWU** 6:16 43:16

**tying** 166:20

**type** 99:2,23 101:9

---

**U**

**U.S.** 146:21

**Uh-huh** 60:9 91:18 131:13 140:5

**ultimate** 60:23,24

**ultimately** 129:6 168:7

**unbiased** 162:23

**uncared** 154:22

**understand** 8:16 27:10 30:21 36:23 49:25 56:3, 9 68:13 72:18 84:13,14 89:12 101:18 105:14 106:8 136:11,15,16 138:1,12 143:18 146:22 156:17 169:25 171:5 173:20 201:1

**understandable** 96:13

**understandably** 24:15 168:22

**understanding** 21:16 29:3 103:9 130:8 188:1

**Understood** 12:18 21:22 22:5 26:8 27:11 28:11 57:17 58:17 59:1 67:11 68:12,17 69:6 70:11 72:10 78:15 81:2 153:14 162:8 163:9 197:11 199:20

**undue** 78:25 152:21 153:1,4 154:1 155:2 157:22,24 158:8

**unexpectedly** 103:3

**unfair** 38:25 106:4

**unfairly** 124:1 199:12

**UNIDENTIFIED** 178:24 179:2 183:5

**union** 9:4 10:21 11:12 14:23,24 15:21 16:9 17:2 23:11,12 40:13,14, 15,16,20,23 41:3,4,8, 10,13,16,19,20 43:16 67:17 71:17 92:2,6,8,12 95:21,25 96:19 97:17 98:7,15,16,19,20,21,23, 25 99:6,11,19,22,23 105:20 121:3 143:3,4 171:7

**Union's** 8:9,20 12:2,19 22:13 41:11 43:18

**Union-sponsored** 41:5

**unionize** 97:10

**unions** 95:2 96:20,23 97:6,11 98:2 99:2

**unique** 156:2,10,20

**United** 90:14,16

**universal** 131:6

**universe** 13:15

**university** 91:13

**unremarkable** 123:10

**unsafe** 35:8

**unsuccessful** 168:6

**update** 7:20

**upset** 62:14 150:3 153:24

**upstairs** 34:24

**usual** 36:8

**UTA** 79:24 109:4 152:11

**utilize** 17:25

**utilizing** 131:18

---

**V**

**vacation** 83:12

**venue** 155:12

**verbal** 8:4 31:17

**verbally** 127:13

**verbals** 177:6,16

**verdict** 37:7,13 38:21 48:8 49:6,7 50:14 51:6, 13,21 52:2 61:2,15,20 68:11 86:17 103:25 104:25 125:1

**verification** 89:3

**verify** 89:5

**versus** 69:8

**vibrate** 36:13

**Vice** 90:8

**video** 20:1,2 56:15 102:4,15,19 104:12,18, 23 105:8,19,22 150:4 172:22 179:13 194:2

**view** 8:10 35:20 38:4,6 99:7 101:11 108:2 119:20 147:4

**viewing** 157:3,4

**views** 61:6,9 62:13,17, 20,23 63:10 74:16 75:1 86:11 100:19 101:3,18, 23,24 124:8,16 125:10 130:5,11,18,19 160:25 161:5,11 173:21 174:20,23 175:15

**violated** 126:19 132:21

**violates** 128:6

**violation** 126:14 195:22

**violations** 41:17

**violence** 140:22 141:18

**visceral** 163:23

**visit** 38:4 81:24

**voice** 140:21 141:1 180:3

**voicemail** 12:7,14

**voir** 32:1

**voluntary** 17:12

**volunteered** 152:15, 17,25

**vote** 74:20 75:4

CHARLENE CARTER vs SOUTHWEST AIRLINES and
3:17-cv-02245-X                    July 05, 2022                    Index: Wade..Zoom

## W

**Wade** 62:15 118:25

**wait** 11:8 12:1 77:13 105:11 132:24 139:24 179:24

**waited** 12:14

**waiting** 7:10

**waiver** 198:16

**Wal-mart** 133:23

**walk** 50:10

**wall** 54:21 148:25

**wander** 181:14

**wanted** 7:7 8:2,4,8 24:9 64:1 87:20 89:12 105:2 114:24 135:19 145:15 163:14 184:3 185:4 193:23

**warehouses** 144:22

**warn** 37:3

**Washington** 41:6,8 165:4 170:10

**waste** 31:10 182:24 190:4

**watch** 179:12

**watching** 104:12 150:3

**water** 143:12,18,21

**wave** 105:15

**waved** 138:4

**ways** 40:20 82:23 132:7

**wear** 34:15 77:19 78:12

**wearing** 151:8

**website** 121:18

**websites** 116:2,5 118:3

**wedding** 155:12,13,14

**Wednesday** 81:19

**week** 15:5 77:24 78:2,5 79:1,9,10,21 80:9 81:19 82:16,17,25 83:4 188:15 192:18

**weekend** 13:13

**weeks** 102:25 103:3 180:7 181:11,14

**weird** 121:24

**white** 134:13,14

**who-do-you-know** 42:17 46:25

**wholly** 62:14 86:25

**wide-open** 29:19,25 200:2

**wife** 80:13 143:15

**wife's** 90:2

**wife-to-be** 112:21

**willingness** 17:5

**win** 97:2

**Windsor** 144:20

**witnesses** 7:2,8,18,21 15:3 22:10,13 24:12,23 25:4,5,6,9 26:1,16 27:3 28:23 29:7,8,19 37:16 38:9 43:21,23 45:14 84:11 170:13 194:10 200:3

**woke** 11:8,25

**woman** 179:11

**woman's** 70:4

**Women's** 41:5,8,11 164:23

**word** 122:12 177:24

**words** 156:5

**work** 12:22 14:5 15:10 17:21 20:11 23:21 28:3, 12 59:17 64:14 78:7 80:11 89:15,19 93:24 97:24 114:7 115:1 117:7,8,9 118:1 120:15, 20 123:14,18 126:4,10, 15 128:1,4 134:4,6,7 135:18 137:19,23 139:1 144:19,25 173:23 184:1 186:1 195:20 196:9,14 198:11 199:1 201:22

**worked** 10:14,24 95:17 112:22 121:4 129:23 130:2 185:10

**worker's** 183:25

**Workers** 40:13 43:16 96:19

**workers'** 60:21

**working** 19:12 114:8 140:2 141:11 142:23 143:10 158:14 193:12

**workplace** 110:17,25 123:25 124:3,8,18,22 125:11 129:16,19 139:13 174:11,20,23 175:23 176:4

**works** 80:14 99:1,6 126:24 183:23

**world** 106:16 143:3 144:21

**worried** 150:12,14 151:18

**worst** 144:20

**worth** 7:7 31:8 188:23

**wow** 106:2

**wrapped** 192:23

**write** 56:2 75:18,20

**writing** 81:13 95:16 194:14

**written** 14:18 15:8 30:11

**wrong** 101:22 105:8 107:7 153:6 163:20

**wrongdoing** 41:21

**wrongful** 113:4,20

**wrongfully** 112:8

**wrote** 121:10 172:4 174:9 175:9

## Y

**y'all** 7:1,8,20 13:24,25 18:17,19,20 19:8,19,23 20:16 22:23 24:25 25:13,16,18 30:16 31:9 32:8,15 33:4 42:20 44:15 47:19 48:8 50:14 51:5 55:25 62:2 64:4 65:4 73:11,12,17 78:5

79:16 109:14,17 130:3 136:14 137:6 147:19 148:22 149:1,3,8,11,15 150:25 151:1,12,22 152:4 153:22 154:25 156:11 158:16 159:18 165:12,19 166:17 167:1,5,9,10,23 179:16 180:15 184:8 186:15,16 187:1,20 188:8,13,15 189:9 190:5,17 191:19, 23 193:3,4,6,7,11,14, 16,22 194:18 198:23,24 199:4,20 201:10,14,19, 21 202:1

**y'all's** 19:3 73:10 136:13 149:9 190:4 191:18

**yawning** 136:23,24

**year** 93:1 94:9 115:15 123:6

**years** 40:16 48:3 50:13 54:15 77:20 91:12,13 92:6 95:13 114:18 116:24 117:3 120:24 134:21 135:24 137:17 140:21 142:25 143:1 151:9

**yield** 147:14

**Yolanda** 134:13

**young** 88:1 98:12 104:10

## Z

**zone** 186:15

**zones** 12:16

**Zoom** 12:11 15:11,13