Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 1 of 403   PageID 13825
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                                    Vol 2 July 06, 2022

```
 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF TEXAS
 2
                   CASE NO. 3:17-cv-02278-X
 3

 4

 5   ----------------------------------------x

 6   CHARLENE CARTER,

 7                      Plaintiff,

 8   v.

 9   SOUTHWEST AIRLINES CO. and
     TRANSPORT WORKERS OF AMERICA,
10   LOCAL 566,

11                      Defendants.

12

13   ----------------------------------------x

14

15

16              TRANSCRIPT OF THE TRIAL

17        BEFORE THE HONORABLE BRANTLEY STARR

18            UNITED STATES DISTRICT JUDGE

19

20              V O L U M E   2

21

22                  Dallas, Texas

23                  July 6, 2022

24                   8:38 a.m.

25
```

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 2 of 403  PageID 13826
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 205

```
 1   A P P E A R A N C E S:

 2

     FOR THE PLAINTIFFS:
 3
           NATIONAL RIGHT TO WORK FOUNDATION INC.
 4               8001 Braddock Street
                 Suite 600
 5               Springfield, Virginia  22160
           BY:   MATTHEW B. GILLIAM, ESQ.
 6               mgb@nrtw.org

 7

 8         PRYOR & BRUCE
                 302 North San Jacinto
 9               Rockwall, Texas 75087
           BY:   BOBBY G. PRYOR, ESQ.
10               MATTHEW D. HILL, ESQ.
                 bpryor@pryorandbruce.com
11               mhill@pryorandbruce.com

12

13

14

15   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:

16         REED SMITH, LLP
                 2850 North Harwood
17               Suite 1500
                 Dallas, Texas  75201
18         BY:   PAULO B. McKEEBY, ESQ.
                 BRIAN K. MORRIS, ESQ.
19               pmckeeby@reedsmith.com
                 bmorris@reedsmith.com
20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 3 of 403   PageID 13827
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 206

1    For the Defendant Union 566:

2

3         CLOUTMAN & GREENFIELD, PLLC
              3301 Elm Street
4              Dallas, TX 75226
         BY:  ADAM S. GREENFIELD, ESQ.
5              EDWARD B. CLOUTMAN, III, ESQ.
              agreenfield@candglegal.com
6              crawfish11@prodigy.net

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 4 of 403   PageID 13828
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 2 July 06, 2022                         Page 207

```
 1   COURT REPORTER:  MS. KELLI ANN WILLIS, RPR, CRR, CSR
                      United States Court Reporter
 2                    1100 Commerce Street
                      Room 1528
 3                    Dallas, Texas  75242
                      livenotecrr@gmail.com
 4

 5           Proceedings reported by mechanical

 6   stenography and transcript produced by computer.

 7

 8                        *  *  *  *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 5 of 403   PageID 13829
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 208

1                    I N D E X

2

3  Jury sworn ................................ 241

4  Stipulations ............................. 247

5

6  Opening Statement by Mr. Pryor ............ 249

7  Opening Statement by Mr. McKeeby .......... 279

8  Opening Statement by Mr. Greenfield ....... 300

9

10

11

12                W I T N E S S E S

13  AUDREY STONE

14     Direct Examination by Mr. Pryor ........ 309

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 6 of 403   PageID 13830
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 209

1

2                    **E X H I B I T S**

3

4    Plaintiff's Exhibit 6 ................... 314

5    Plaintiff's Exhibit 24 ................. 319

6    Plaintiff's Exhibit 146 ............... 328

7    Plaintiff's Exhibit 25 ................. 342

8    Plaintiff's Exhibit 26 ................. 354

9    Plaintiff's Exhibit 27 ................. 360

10   Plaintiff's Exhibit 140 ............... 401

11   Plaintiff's Exhibit 141 ............... 406

12   Plaintiff's Exhibit 29 ................. 423

13   Plaintiff's Exhibit 30 ................. 433

14   Plaintiff's Exhibit 23 ................. 449

15   Plaintiff's Exhibit 52 ................. 453

16   Plaintiff's Exhibit 56 ................. 463

17   Plaintiff's Exhibit 19 ................. 481

18   Plaintiff's Exhibit 66 ................. 489

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 7 of 403   PageID 13831
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 210

```
1                -- P R O C E E D I N G S --
2                          - o -
3          THE COURT SECURITY OFFICER:  All rise.
4          THE COURT:  You can be seated.
5          Okay.  We are on Day 2 of trial, Day 1 of
6  evidence, and 3:17-cv-2278.  That's Carter versus
7  Transport Workers Union Local 556 and Southwest.
8          Let's do appearances.  First for Carter.
9          MR. GILLIAM:  Matthew Gilliam for
10 Plaintiff Charlene Carter, along with Matt Hill and
11 Bobby Pryor.
12         THE COURT:  Thank you.
13         And for Southwest?
14         MR. McKEEBY:  Paulo McKeeby for Defendant
15 Southwest, and Brian Morris is going through
16 security, or was a moment ago.
17         THE COURT:  We all are at some point.  So
18 I'm sorry, double security.  I tried to warn the
19 jury, right?  Double security is an unwelcome thing
20 to wake up to.
21         Okay.  And then for the Union.
22         MR. GREENFIELD:  Adam Greenfield on behalf
23 of the Union, with Ed Cloutman, III.
24         And we have a new face here.  This is
25 Michael Masoni, our corporate representative.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 8 of 403   PageID 13832
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 211

 1              THE COURT:  Great to meet you.  Thanks for
 2  being here.
 3              MR. GILLIAM:  Your Honor, I'm sorry.
 4  Ms. Meggan Jones is our corporate representative,
 5  who is also here.
 6              THE COURT:  Ms. Jones, thank you for being
 7  here.
 8              MR. GILLIAM:  For Plaintiff, I should
 9  probably say Charlene Carter is with us here.
10              THE COURT:  She's here in the front row.
11              Thank you, Ms. Carter.
12              So let me say first off, we are trying to
13  push out the Talburt and Parker rulings on depo
14  designations right now.
15              I know that is not what y'all expected
16  timeline-wise, and I apologize for the delay on my
17  end.
18              So I'm not sure what that does to the mix
19  of things, but as soon as we give you those rulings,
20  then y'all do what you need to do.
21              MR. HILL:  I can adjust pretty much on the
22  fly.
23              THE COURT:  Okay.  Well, I appreciate
24  that.
25              That is very kind of you to accommodate my

 1  delay.  So thank you for your patience.  I

 2  appreciate that.

 3           So we will get those out to you here this

 4  morning as soon as we can.  We are finishing those

 5  up and pushing them out on the docket.

 6           Okay.  So I have the -- I have the

 7  explanation of last night from 6:30 and from 8:30.

 8  So I have gone through those, and I figured we

 9  should just talk through them at the top.

10           So what I wanted to do is maybe pick up

11  with Exhibit No. 15.

12           I will just say this.  I think Mr. Frye

13  was going to email y'all and see if we could get an

14  updated exhibit list.  I know there were some

15  exhibits that were added to the mix that we got over

16  email.  I don't know that we have an updated exhibit

17  list itself.

18           And so I don't know if one party is

19  keeping the list, but if we could get an updated

20  list on the docket and then one in Word form, that

21  would help, because once we start admitting

22  exhibits, I'm going to be the keeper of the Word

23  document, and then I log in what date it was

24  admitted into evidence, what witness it came in

25  with.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 10 of 403   PageID 13834
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 213

1            And so I will take your Word document, add

2    a few columns, and then start keeping tabs of it on

3    the bench.

4            So if whoever has the pen on the exhibit

5    list could get me an updated copy, that would be

6    great.

7            MR. McKEEBY:  We will.

8            THE COURT:  Great.  Thank you very much.

9            Okay.  So I have Exhibit 15 as the first

10   one with objections to talk about.

11           I think that Southwest was the first to

12   get their objections in, so I will go through the

13   ones y'all did first.  But any time we are on an

14   exhibit, I will talk about everyone's objections to

15   that exhibit.  All right?

16           And then once we finish Southwest, we will

17   come back to the ones that the Union had unique

18   objections to.

19           So I guess Exhibit 15 is the first one

20   that we had objections to.  And I think -- well,

21   that's -- sorry.  That was Union only.

22           The first one that Southwest and the Union

23   had objections to is 21, I think 21 and 22.

24           So this is emails regarding the recall

25   campaign.  And Southwest was making relevance, undue

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 11 of 403  PageID 13835
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                      Page 214

 1   prejudice, jury confusion objections.

 2           Union was making similar objections.

 3           I guess this also gets to the point of

 4   similarly-situated or non-similarly situated

 5   employees, a limine issue that I addressed

 6   previously.

 7           So let me ask Southwest or Union, whoever

 8   wants to go first, if you want to talk about your

 9   objection.  I have read that objection, I have read

10   the response that Carter had from the status report.

11           So if there is anything you want to add on

12   21, let me have at it.

13           MR. McKEEBY:  Nothing to add specifically

14   to 21.  I think they are going to be the same

15   argument for most of these exhibits from Southwest's

16   perspective, is that the Court ruled that the fact

17   that the Union or Union leadership reported

18   employees could be admissible as to the duty of fair

19   representation claim.

20           But the ultimate resolution of those

21   complaints, how Southwest may or may not have

22   disciplined particular employees, was outside the

23   scope of relevant discovery, would result in

24   prejudice, and require us to have to marshal

25   evidence about people who weren't parties to this

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 12 of 403   PageID 13836
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 215

1  case, former employees or employees, and that was

2  the holding on the motion in limine.

3            So, again, as long as this type of

4  evidence is limited to the claims against the Union,

5  that is fine.

6            There should be a limiting instruction,

7  though, when the evidence does come in, that limits

8  the relevance, or the jury's consideration, rather,

9  of the evidence to those claims so that they are not

10 asking, Okay, well, what happened to this guy, Greg

11 Hover, who got turned in, and why wasn't he -- why

12 aren't we hearing about whether or not he was fired

13 or not?

14           That's what I want to avoid.  That was the

15 design of the motion in limine, or the purpose of

16 the motion in limine.

17           THE COURT:  Understood.

18           Anything for the Union to add to that?

19           MR. GREENFIELD:  It's just a very similar

20 line of argument.

21           If we look at Exhibit 21, and we can look

22 at page 6, is where there is a list of individuals.

23           To start, we have a Gina Jackson, Beverly

24 Belanger, Miche Foley, Ms. Carter, a Mr. HofeHover,

25 Ms. Kearney, Mr. Rivera.  It goes on.  And there are

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 13 of 403   PageID 13837
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 216

 1  additional witnesses or additional individuals that

 2  will come up in the same respect.

 3           Just to echo what Mr. McKeeby was saying,

 4  it puts us in a position to try and explain all of

 5  these things to the jury and it really creates a

 6  trial within a trial on all of these different

 7  individuals.

 8           THE COURT:  I understand.

 9           I guess my question is how similar is it?

10  Because, obviously, from the limine rulings that

11  Mr. McKeeby pointed out, there are things in the ZIP

12  code that I think are fine as to the Union, right,

13  and the duty of fair representation claim.  That is

14  not to say that the whole universe is fine.

15           So the question is, where do you draw the

16  line?

17           Can I hear your argument, Mr. Gilliam, on,

18  is this close enough as to where it comes as to for

19  the Union?

20           MR. GILLIAM:  Yes.  I think they all come

21  in as to the Union on both the duty of fair

22  representation claim and the RLA retaliation claim

23  against the Union.

24           I think they are all covered by the

25  Court's prior rulings on the motion in limine.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 14 of 403   PageID 13838
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 217

 1              THE COURT:  Well, that was my view as
 2   well.
 3              So what I'm trying to do is make sure that
 4   I keep tabs on exhibits that come in really Union
 5   only, right?  And so to make sure I give the
 6   limiting instruction on those.
 7              So I'm going to make a note of these as we
 8   talk about them.  We may not get to cover all of
 9   these before the jury gets here.
10              So if there are others that are in this
11   bucket that are basically union-only exhibits, if
12   you could just ask for a sidebar, flag that for me,
13   or just say "limiting instruction, your Honor," then
14   that will flag for me that this is the Union-only
15   bucket.  It is not applicable to Southwest.
16              MR. GILLIAM:  Your Honor, I will say there
17   are some communications where Brian Talburt -- they
18   had some communications with Southwest senior V.P.
19   Sonya Lacore and forwarded that to Ms. Stone.
20              And they are relevant in two respects.
21              Not only are they relevant to Ms. Stone
22   and her knowledge of what Brian Talburt was doing
23   and his activities, but they are also relevant not
24   for Southwest's discipline of Mr. Talburt, but they
25   are relevant for Southwest's knowledge and awareness

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 15 of 403   PageID 13839
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 218

 1  of what Mr. Talburt was doing and saying.

 2          THE COURT:  Which exhibit are we talking

 3  about?

 4          MR. GILLIAM:  I think specifically this

 5  may be 141.

 6          THE COURT:  Okay.

 7          MR. GREENFIELD:  Your Honor, while we're

 8  pulling that up, if I may, I think the issue with

 9  Brian Talburt in some of these initial documents

10  that we are looking at right now is that it does get

11  to -- it starts to get very attenuated.

12          We are talking about, they are trying to

13  make an argument binding the Union because of the

14  actions of an executive board member.

15          Mr. Talburt was not -- he was not an agent

16  of the Union, he's just a rank-and-file member of

17  the Union.

18          So they are trying to -- which leads into

19  our 403 argument about it being confusing to the

20  jury about what actually can and cannot bind the

21  Union.  One may be able to, and one absolutely

22  cannot.

23          THE COURT:  Sure.

24          Well, I don't know that that means it

25  doesn't come in.  I think it is a great

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 16 of 403   PageID 13840
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 219

 1  cross-examination point.

 2            MR. GREENFIELD:  Thank you.

 3            MR. GILLIAM:  I can address that as well,

 4  your Honor.

 5            We've cited case law in our response to

 6  the Union's motion in limine, and we believe that

 7  the theory that applies here is one that was

 8  established under a case called Communication

 9  Workers.  It's a National Labor Relations Board

10  case.

11            THE COURT:  Well, I think it already comes

12  in.  So we have a lot to get to.  I just want to

13  make sure I use our time as efficiently as possible.

14            So let's just go in order to keep things

15  simple.  So we already laid out some framework.  We

16  will get to 141 here in a little bit.

17            For 21, I'm overruling the objections, but

18  I will bring it down with a limiting instruction

19  that it's applied to the Union only, not as to

20  Southwest.

21            22 is the next one we have both Southwest

22  and Union objections to.  This is emails regarding a

23  recall campaign.

24            So any brief argument that Southwest or

25  Union wants to make from this, and I will hear a

 1  Carter response.

 2          MR. GILLIAM:  Your Honor, it is the same

 3  position as with 21.

 4          THE COURT:  Understood.

 5          Anything to add from the Union?

 6          MR. GREENFIELD:  I think we have multiple

 7  layers of hearsay issues.  We are looking at

 8  multiple Facebook posts, Facebook documents.  And so

 9  they are out-of-court statements being offered for

10  the truth of the matter asserted and they violate --

11          THE COURT:  What is the hearsay response?

12          MR. GILLIAM:  On the hearsay response,

13  they are not really being offered for the truth of

14  the matter asserted, they are being offered for

15  Southwest's knowledge of President Stone struggling

16  with a recall campaign.

17          All right.  Then I do have something else

18  to say about that because that again goes to the

19  heart of our motion in limine.

20          The fact that some senior executive who

21  had nothing to do with Ms. Carter's termination got

22  an email in 2013 about the recall election has

23  nothing to do with Ms. Carter's claims regarding her

24  termination in 2017.

25          What they want to do is get this in front

 1  of the jury, and say, you know, Look, Southwest

 2  should have reported this claim or should have

 3  reported this issue back in 2013.

 4          But again, Sonya Lacore was not a

 5  decision-maker with respect to Ms. Carter's

 6  termination, she was not involved in the

 7  investigation.  She was copied on a couple of

 8  documents.

 9          THE COURT:  Understood.

10          So my ruling on this one is I think it

11  fits within a hearsay exception.  However, I do

12  think it still has a limiting instruction that comes

13  in with it.

14          MR. GILLIAM:  Your Honor, may I respond?

15          THE COURT:  So it comes in as to Union but

16  not as to Southwest.

17          MR. GILLIAM:  I think it is relevant to

18  Southwest.

19          THE COURT:  How so?

20          MR. GILLIAM:  Because this exhibit has

21  nothing to do with employee discipline or

22  comparators at all.  It has nothing to do with

23  employee discipline or similarly-situated

24  comparators.

25          It is an email where Southwest senior

1  management is talking about Stone's struggles with

2  the recall campaign.

3          So it's not about employee discipline at

4  all.  It's about Southwest's knowledge and their

5  reaction to the recall campaign and Ms. Stone's --

6  the opposition she's dealing with.

7          THE COURT:  20-second response,

8  Mr. McKeeby.

9          MR. McKEEBY:  What does that have to do

10 with Ms. Carter's termination four years later?  It

11 is irrelevant.

12         MR. GILLIAM:  Motive, your Honor.

13         MR. McKEEBY:  But these aren't

14 decision-makers.  That's why the motive, if it were

15 a decision-maker, then it might be relevant to

16 motive.  But Ms. Lacore had nothing to do with that

17 decision, and therefore, it's irrelevant and

18 prejudicial, and that is why it should be kept out,

19 as the Court has already ruled.

20         MR. GILLIAM:  On the complaint.

21         THE COURT:  I'm not convinced on relevance

22 as to Southwest.  So I will still stick to my course

23 and say it fits within hearsay exceptions, but it is

24 still limited as to Union only, not as to Southwest.

25         MR. GREENFIELD:  Your Honor, just so we

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 20 of 403   PageID 13844
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 223

 1   are clear, when you say "limiting," we would ask for

 2   a limiting instruction that the posts, as presented

 3   by Mr. Gilliam, are not being offered for the truth,

 4   and we would ask for that instruction to the jury.

 5                THE COURT:  I saw that request, and I have

 6   never done that before.  And I will tell you why.

 7                You are asking me to tell them what is

 8   going on with a legal side show.  I just don't do

 9   that.  I could say, Well, this is present state

10   mental impression, right?  What on earth is that?

11                So I get your request, but -- you can

12   bring that up if you want to in cross, but I don't

13   signal to them.  I try not to even tell them what my

14   rulings are, right?  If we're over here at a

15   sidebar, I don't even tell them what I ruled, much

16   less why.

17                So I get your point, but I have never done

18   that before, I'm not going to start, because I think

19   it starts injecting a legal debate into the factual

20   resolution that they are getting to.

21                The next one I have is 23.

22                So 22, I overruled the objections, but it

23   will come in with a limiting instruction.

24                23.  Any argument from -- well, sorry.  I

25   said I would cover Southwest first.  That is Union

```
 1  only.
 2              Scrolling down to Southwest.
 3              I have Southwest, next one as the batch at
 4  68 to 72.
 5              MR. McKEEBY:  It is actually 31.  But that
 6  is a different basis.  I don't know how the Court
 7  wants to cover it.
 8              THE COURT:  I will go back to 31.  What
 9  argument do you want to make on 31?
10              MR. McKEEBY:  It is similar argument, but
11  this is different in that it is a statement from a
12  employee or former employee about her social media
13  experience, violations, and discipline.
14              She says in the fourth paragraph, "Each
15  time I was turned in, management would tell me that
16  I was not receiving discipline, but not -- to tread
17  lightly when posting, and reminded me of the very
18  strict social media policy that had been implemented
19  by management."
20              Again, so it has nothing to do with
21  Ms. Carter.  It is a statement by a different
22  employee about her situation, and it is going to
23  confuse the jury and is irrelevant for the reasons
24  that are set forth in our motion in limine.
25              And this one is different in that it
```

1   doesn't even relate, appear to relate to a complaint

2   from the Union or the Union leadership.  So this one

3   shouldn't be admitted at all.

4             That's my argument.

5             THE COURT:  Okay.  Then Union also has

6   arguments.

7             Anything you want to make in addition to

8   those arguments?

9             MR. GREENFIELD:  We would echo the

10  relevance argument, but also that this is hearsay.

11            They also have Ms. Jeanna Jackson listed

12  on their witness list.  If they would like to call

13  her up and talk about these things, they are

14  certainly able to do that.

15            This is an out-of-court statement being

16  offered for its truth.

17            THE COURT:  What is the response on 31?

18            MR. GILLIAM:  On 31, Jeanna Jackson was

19  the leader of the recall campaign, and we have

20  evidence showing that she was being reported by

21  Union actors throughout this time period.

22            And again, it is relevant to both

23  Southwest's knowledge of the recall efforts going on

24  and to their retaliatory motive for Carter's RLA

25  claims against Southwest, as well as against the

1  Union.

2         It's also relevant to the DFR claims as to

3  how the Union was responding to Ms. Jackson and how

4  various Union actors were reporting her for

5  discipline.

6         THE COURT:  What about hearsay?

7         MR. GILLIAM:  On hearsay, it is -- they

8  are mental impressions.  We can call Ms. Jackson to

9  verify this information.  It's not really introduced

10  for the truth of the matters asserted.

11         THE COURT:  So my ruling on this one is I

12  get its relevance and I think it is relevant.

13         The problem is hearsay.  If this is

14  present tense mental impression, then everything is.

15         It's a really long letter, right?  You

16  could put her on the stand and she could talk about

17  it.  If she doesn't remember it, you could use it to

18  refresh.

19         I think it is certainly a topic you can

20  get into, but in this form I think it is hearsay.

21         So I will sustain the objection from

22  Southwest and the Union on hearsay grounds on

23  Exhibit 31.

24         Okay.  So are we now to 68 to 72,

25  Mr. McKeeby?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 24 of 403   PageID 13848
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 227

```
 1              MR. McKEEBY:  57 is another one that I
 2  raised.  It's just a newspaper article.  I don't
 3  understand the relevance and think it is hearsay.
 4              THE COURT:  Understood.
 5              Anything to add from the Union?
 6              It looks like relevance and hearsay are
 7  your two objections, Mr. Greenfield.
 8              MR. GREENFIELD:  Correct, your Honor.
 9              THE COURT:  So relevance and hearsay for
10  57?
11              MR. GILLIAM:  Yes, your Honor.
12              We think it comes in as a party admission
13  by TWU as to why members were there in Washington,
14  DC.  They were there to participate in the march.
15              And so it's also relevant as to showing
16  why the Union was attending the -- why they were
17  there at the time they were there and that they were
18  there to attend the march.
19              MR. GREENFIELD:  Your Honor, if I may
20  provide a response to that.
21              THE COURT:  Briefly.
22              MR. GREENFIELD:  This is not a Local 556
23  document.  This is a document from a publication by
24  the International Union, which is not a party to
25  this case.  It is hearsay.
```

```
 1              THE COURT:  What is the response from
 2   Carter to that?
 3              MR. GILLIAM:  TWU is their parent union.
 4   They are Transport Workers Union of America, Local
 5   556.  And it is -- the article was talking about TWU
 6   locals taking action nationwide.
 7              THE COURT:  Response to the TWU as a
 8   parent argument, Mr. Greenfield?
 9              MR. GREENFIELD:  Well, your Honor, they
10   are not a party to this case.  While we are a local,
11   they are very separate.  Hence, why you see some of
12   the issues with separation of dues and money that go
13   to the different organizations.
14              They are different entities, and they are
15   asking about an article which we don't have an
16   author to.  We don't know who wrote this.  We can't
17   test its veracity, for all of the reasons that we
18   exclude hearsay documents.
19              THE COURT:  Understood.
20              Okay.  My ruling on this one, number 57,
21   is I will go ahead and sustain that hearsay
22   objection.  I think, given that it is a parent, I
23   still don't think I can get there without piercing
24   the corporate veil, so to speak.
25              So I'm not going to do that in this
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 26 of 403   PageID 13850
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 229

1   context without a showing of commingling in the

2   organizations functioning as one.

3            Okay.  What objection are we to next?

4   Mr. McKeeby.

5            MR. McKEEBY:  68 through 72 fall under the

6   same -- I can't resist -- bucket as 21 and 22.

7            They are, again, directly covered by the

8   Court's ruling on our motion in limine, and to the

9   extent admissible, should be admitted with a

10  limiting instruction.

11           THE COURT:  Understood.

12           Any additional argument, Mr. Greenfield,

13  on that bucket, 68 to 72?

14           MR. GREENFIELD:  It just goes into even

15  further more tangential Facebook posts.  So we just

16  renew our relevance and hearsay objections.

17           THE COURT:  Understood.

18           My leaning on this one is to allow them

19  in, tangential though they are, and just remind you

20  of the clock and efficiency, right?  And efficient

21  presentation.  People get bogged down in exhibits

22  all of the time that have marginal relevance, and

23  that is where they kill themselves on the time

24  clock.

25           So I will let it in, 68 through 72, but I

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 27 of 403   PageID 13851
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 230

 1  will do so with a limiting instruction.  So I'm

 2  making a note of that, to bring that up every time

 3  such an exhibit is offered and admitted into

 4  evidence.

 5           Okay, Mr. McKeeby, we are through 72.

 6  Where are we at now?

 7           MR. McKEEBY:  132.

 8           And that's another -- it's a relevance

 9  objection.  But, again, this one doesn't appear to

10  even relate to a report by the Union, so I'm not

11  sure it should come in at all.

12           And so for the reasons raised in our

13  motion in limine, relevance, prejudice, misleading

14  the jury -- or confusing the jury, I should say, it

15  should not be admitted.

16           THE COURT:  Understood.

17           Anything to add from the Union?

18           MR. GREENFIELD:  Depending on who they

19  bring this in through, it is also hearsay, your

20  Honor.

21           In addition, it's talking about

22  information that they have gathered about potential

23  witness reports, et cetera, which then leads us to

24  the best evidence argument.

25           If there are actual reports of these

1  individuals, for example, Ms. Stone and Ricci Spand

2  making complaints to the company, if those were

3  actually done or done properly, or specifically who

4  they were done by, we should just look at that

5  evidence.

6          THE COURT:  All right.  Response from

7  Carter.

8          MR. GILLIAM:  Yes.  It's relevant because

9  it's President Stone and Shop Steward Ricci Spand

10 reporting the recall leader, Jeanna Jackson.  So it

11 shows motive, plan, intent, knowledge, opportunity.

12          So it's also an exception to hearsay and

13 directly relevant to Carter's DFR and retaliation

14 claims against the Union.

15          THE COURT:  Yes.  Okay.  I will do the

16 same as I did for 21 through 22, the other bucket.

17 So I will admit it with a limiting instruction.

18          MR. GREENFIELD:  Your Honor, may I have a

19 ruling on the best evidence argument as well?

20          THE COURT:  Lay out your best evidence

21 argument.

22          MR. GREENFIELD:  Okay.

23          THE COURT:  Go for it.

24          MR. GREENFIELD:  Thank you.

25          THE COURT:  Sorry.  Can you lay out your

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 29 of 403   PageID 13853
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 232

1    best evidence argument?

2             MR. GREENFIELD:  Yes, your Honor.

3             So I think the problem is that we have

4    risk of confusion here.  It's saying flight

5    attendants Audrey Stone and Ricci Spand alleging

6    retaliation from several other flight attendants.

7             We don't know who to attribute that to.

8    We don't know whether it was Ms. Stone, Ms. Spand,

9    and what capacity and who those retaliation

10   complaints were against.

11            And we should just look at those

12   complaints, if those actually exist, and who they

13   exist against.

14            And I think that's very important,

15   especially for Ms. Stone, because they are trying to

16   pass her actions off for all of the Union and they

17   are trying to create an argument of a pattern of

18   turning in AFO's objectors.

19            Who they are turning in would be directly

20   relevant to that.  Maybe they are turning in people

21   who have nothing to do with their argument.  But

22   that is what they are trying to conflate.

23            And so if those complaints exist, that's

24   the evidence we should be looking at.

25            THE COURT:  So I understand the argument,

1   but I overrule those, because usually the best

2   evidence arguments don't put to the actual trial

3   exhibit that's the best evidence.

4               So if they did, then that gets my

5   attention.  But to the extent that it doesn't, that

6   is my understanding of the flaw in the argument.

7               So I will overrule that best evidence

8   argument as well.

9               So I will admit this, 132, with a limiting

10  instruction.

11              Mr. McKeeby, are we to 140?

12              MR. McKEEBY:  140, 141, and 146 fall into

13  the same category, and a familiar one that Southwest

14  objects for the grounds set forth in its motion in

15  limine.

16              And to the extent those documents are

17  admissible, they should be admitted with a limiting

18  instruction.

19              THE COURT:  And relevance, prejudice,

20  hearsay are the additional arguments that you are

21  making, Mr. Greenfield?

22              MR. GREENFIELD:  Yes, your Honor.

23              THE COURT:  Okay.

24              So response.

25              MR. GILLIAM:  The same response as to 21,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 31 of 403   PageID 13855
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 234

1   22, 132.  These are -- these involve Stone and other

2   Union actors complaining to the company about

3   non-member objectors, and also, Mr. Talburt

4   complaining about the recall leader, Jeanna Jackson,

5   and go to the Union's retaliatory motive and DFR

6   claims.

7            MR. GREENFIELD:  Your Honor, if I may, on

8   146, I believe it is a little bit different.

9            THE COURT:  Okay.  What I will do is let

10  me go ahead and rule on 140 and 141.

11            I will have my same rulings as the prior

12  buckets with 21 and 22.  I will admit with a

13  limiting instruction.

14            But let's carve out 146 and hit me with

15  your additional 146 argument.

16            MR. GREENFIELD:  Your Honor, if we

17  ultimately just pause for a brief moment, I know

18  that the rule has been invoked in this case, and I

19  have seen a witness enter at this time.

20            THE COURT:  All righty.

21            Is anyone in here in the courtroom who is

22  a witness in the case?

23            MR. GILLESPIE:  Your Honor, Ms. Stone is

24  here, and I didn't realize there was testimony

25  taking place.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 32 of 403   PageID 13856
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 235

1          THE COURT:  Okay.  There is no testimony

2  taking place.  There is legal argument.  But we are

3  talking about exhibits, and so we're basically

4  functioning as if we are at a sidebar.

5          So at a sidebar, I don't let the witnesses

6  hear what is going on and come over here.

7          So I would appreciate it if you would go

8  back out to the hall or find some other place.

9          If y'all need to coordinate to talk

10  timing, I will be happy to excuse a lawyer out to

11  the hall to talk through timing.

12          MR. GILLESPIE:  Thank you.

13          THE COURT:  Mr. Greenfield.

14          MR. GREENFIELD:  Yes, your Honor.

15          THE COURT:  Okay.  Now 146.

16          I don't know what anyone looks like, so I

17  appreciate y'all patrolling the rule.  I'm the only

18  one facing them, but I'm the only one who doesn't

19  know who they are.

20          MR. GREENFIELD:  Out of the corner of my

21  eye I was able to catch that.

22          THE COURT:  Very good.

23          MR. GREENFIELD:  I think 146 is a little

24  bit different in regards to the other documents we

25  have talked about.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 33 of 403   PageID 13857
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 236

 1              If you look at page 6, what Ms. Stone is

 2   requesting is that the company take objectors off of

 3   joint committees between 556 and the Union, joint

 4   union company committees.

 5              There is nothing illegal about that.

 6              And, again, I think they are just using it

 7   for prejudicial purposes.  If that action is not

 8   illegal, then it is irrelevant and it is prejudicial

 9   to confuse the jury that this is another action of

10   retaliation, when it is not.

11              THE COURT:  What's your response on the

12   additional 146 argument on legality?

13              MR. GILLIAM:  Well, I think that, again,

14   it shows that Stone is turning in non-member

15   objectors, just like Ms. Carter.  Ms. Carter was a

16   non-member objector.

17              And it shows Ms. Stone's efforts to get

18   the company to act against non-member objectors in

19   this case, taking them off of joint union and

20   employee committees.  So, again, it's -- that's -- I

21   think it is relevant for those reasons.

22              MR. GREENFIELD:  And, your Honor, to be

23   clear, she's not turning anyone in here.  All she's

24   doing is reaching out to the company.

25              If you look at page 6, it is just her and

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 34 of 403   PageID 13858
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 237

1    Ms. Stone asking the company to coordinate to take

2    non-members off of joint committees.

3              They objected to the union.  They gave up

4    their voice.  They don't get to serve on joint

5    committees between the union and the company any

6    longer.  That is all Ms. Stone is trying to do.

7    There is no complaint existing in this document.

8              THE COURT:  So I get your point.  I don't

9    think it rises to the level of unfair prejudice.  I

10   think it is a point to bring up on cross to diffuse

11   the value of their exhibit.

12             So I will overrule the objection, I will

13   let it in, and I will include the limiting

14   instruction on 146.

15             Okay.  So let's go back up to, at the top.

16   Let me ask...

17             Our jurors are here.  So let me say for

18   the objections I didn't get to, Mr. Greenfield, of

19   yours, what you can do is, to save time, if you want

20   to, you can say "same objections as earlier."

21             I have a leaning on what I would do with

22   them.  If you want to argue them at sidebar, that is

23   perfectly fine.  You may call as many sidebars as

24   you want.  But the sidebars that anyone loses, the

25   time goes to them.  So keep that in mind.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 35 of 403  PageID 13859
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 238

1              So if you just say, "Objection, same

2    objections as this morning," I know what I'm going

3    to do on them, right?

4              And there may be some that I call a

5    sidebar because I want more argument on them but I

6    have researched them all and so I have a leaning.

7              So I can still be efficient even though we

8    haven't gotten to yours this morning, but call a

9    sidebar.  If you really want to argue one to me.

10             Does that make sense?

11             MR. GREENFIELD:  Yes, your Honor.

12             Thank you.

13             THE COURT:  Okay.  As far as opening, are

14   we doing --

15             MR. PRYOR:  I have a point about opening.

16             THE COURT:  Yes.

17             MR. PRYOR:  You ordered Southwest to

18   provide us the demonstrative evidence they were

19   going to use in opening.

20             It is not demonstrative evidence.  It is

21   evidence.  They are attempting to display to the

22   jury the pictures of the fetuses.  That is not in

23   evidence yet.  This is opening; it is not evidence.

24   And they are displaying their actual wording of

25   their policies and their policies, it is not

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 36 of 403  PageID 13860
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 239

 1  demonstrative, it is evidence.  It is inappropriate.

 2          THE COURT:  Understood.

 3          Response from Southwest?

 4          MR. McKEEBY:  Your Honor, I'm not asking

 5  for it to be admitted during the opening, obviously,

 6  but if these are exhibits that are listed in the

 7  documents that plaintiff's counsel provided and they

 8  should be raised with the jury during opening.

 9  There is nothing wrong with that.

10          I'm not asking it to be admitted,

11  obviously, but the jury is going to hear about the

12  policies.  There is no reason they can't see the

13  policy during the opening.

14          THE COURT:  Is there anything that you're

15  showing the jury that they have not asked to admit

16  today?

17          MR. McKEEBY:  No.

18          THE COURT:  Okay.  I will allow it.

19          But I want you to preface it with a caveat

20  that this is not evidence.  This is what we expect

21  the evidence that will be admitted will show to you.

22          MR. PRYOR:  Your Honor, given that ruling,

23  we would like to play some of the video depositions

24  during opening.

25          That's -- it's your ruling, your Honor.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 37 of 403   PageID 13861
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 240

1    You are saying evidence is admitted.  We would like

2    to play evidence for the jury as well.

3                THE COURT:  No.  No one can, right?  To

4    play video depo.  You can say, we expect you will

5    hear from this witness.

6                MR. PRYOR:  But it's not as effective as

7    showing the jury the testimony itself just as it's

8    not as effective for him to say --

9                THE COURT:  No.

10               MR. PRYOR:  Okay.  I tried.

11               THE COURT:  Any other issues with opening?

12               Okay.  So what is the order?  You're

13   going, and then defense.  Who is going first?  Have

14   y'all arm wrestled over that?

15               MR. McKEEBY:  We have not arm wrestled.

16               THE COURT:  Okay.

17               MR. McKEEBY:  I'm happy to go first.

18               THE COURT:  Okay.  That works.  McKeeby,

19   then Greenfield.  Okay.  Got it.  That's our run of

20   show.

21               We'll bring them in.  We'll swear them in.

22   I will give them the standard instructions I need to

23   and then we will open, open, open, and then we'll

24   probably take our morning break and then call our

25   first witness.  Fair?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 38 of 403   PageID 13862
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 241

 1                    MR. PRYOR:  Okay.

 2                    THE COURT:  Okay.

 3                    You can take a -- how about we do this?

 4    We're going to take a five-minute break for y'all's

 5    sake.  You can reset, use the bathroom, if you need

 6    to.

 7                    We are going to line up them up, tell them

 8    how the first run goes, and then I will back in five

 9    minutes and we will get going.

10                    THE COURT SECURITY OFFICER:  All rise.

11                    (Recess.)

12                    THE COURT SECURITY OFFICER:  All rise.

13                    THE COURT:  Okay.  Let's bring them in.

14                    THE COURT SECURITY OFFICER:  All rise for

15    the jury.

16                    (The jurors entered the courtroom.)

17                    THE COURT:  All right.  Now, Mr. Frye is

18    going to swear you in as jurors.

19                    (The jurors were sworn.)

20                    THE COURT:  Okay.  The United States

21    District Court, in and for the Northern District of

22    Texas is now in session.

23                    The Honorable United States District Judge

24    Brantley Starr presiding.

25                    All those having business with this Court,

 1  draw near and you shall be heard.

 2          Please be seated.

 3          THE COURT:  Okay.  Well, thank you for

 4  being here.

 5          I will say before I give you our starting

 6  instructions, that our second president, John Adams,

 7  said that the right to vote and a trial by jury are

 8  the heart and lungs of American democracy.

 9          So thank you for being the lungs of

10  American democracy.  We appreciate you serving in

11  this capacity.

12          You now have been sworn in as the jury to

13  try this case.  As the judge, I will decide all

14  questions of law and procedure.  As the jury, you

15  are the judges of the facts.

16          At the end of the trial, I will instruct

17  you on the rules of law that you must apply to the

18  facts as you find them.

19          You may take notes during this trial.  Do

20  not allow your note-taking to distract you from

21  listening to the testimony.  Your notes are an aid

22  to your memory.

23          If your memory should later be different

24  from your notes, you should rely on your memory.

25          Do not be unduly influenced by the notes

1  of other jurors.  The jurors' notes are not entitled

2  to any greater weight than each juror's recollection

3  of the testimony.

4          Until this trial is over, do not discuss

5  this case with anyone and do not permit anyone to

6  discuss this case in your presence.

7          This includes your spouse, children,

8  relatives, friends, coworkers, and people with whom

9  you commute to court each day.

10         During your jury service, you must not

11 communicate any information about this case by any

12 means, by conversation or with tools of technology.

13         For example, do not talk face-to-face or

14 use any electronic device or media, such as a phone,

15 computer, the Internet, or any Internet or messaging

16 service, or any other way to communicate with anyone

17 any information about this case, until after I

18 accept your verdict or excuse you as jurors.

19         Do not even discuss this case with other

20 jurors until the end of the case when you retire to

21 deliberate.

22         It is unfair to discuss the case before

23 all the evidence is in because you may become an

24 advocate for one side or another.

25         The parties, the witnesses, the attorneys

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 41 of 403   PageID 13865
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 244

1   and persons associated with the case are not allowed

2   to communicate with you.  And you may not speak with

3   anyone else in or around the courthouse other than

4   your fellow jurors or court personnel.

5            Do not make any independent investigation

6   of this case.  You must rely solely on what you see

7   and hear in this courtroom.

8            Do not try to learn anything about the

9   case from any other source.  In particular, you may

10  not use any electronic device or media, such as

11  telephone, cell phone, smart phone, or computer to

12  research any issue touching on this case.

13           Do not go online or read any newspaper

14  account of this trial, or listen to any radio or

15  television newscast about it.

16           Do not visit or view any place discussed

17  in this case and do not use Internet programs or

18  other devices to search for or view any place

19  discussed in the testimony.

20           In sum, you may not research any

21  information about this case, the law, or the people

22  involved, including the parties, the witnesses, the

23  lawyers, or me, your judge, until after you have

24  been excused as jurors.

25           There are some issues of law or procedure

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 42 of 403  PageID 13866
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 245

 1  I must decide that the attorneys and I must discuss.

 2  These issues are not part of what you must decide.

 3  They are not properly discussed in your presence.

 4          To avoid having you leave the courtroom

 5  and to save time, I may discuss these issues with

 6  the attorneys at the bench over here at the side,

 7  outside of your hearing.

 8          I will press a button; it will turn on

 9  white noise, and then we will try to whisper loud

10  enough for us to hear but not for y'all to hear.

11          When I confer with the attorneys at the

12  bench, please don't listen to what we are

13  discussing.  If the discussions require more time, I

14  may have to have you leave the courtroom until the

15  lawyers and I can resolve those legal issues.

16          I will try to keep these interruptions as

17  few and as brief as possible.

18          The trial will now begin and lawyers for

19  each party will make an opening statement.  Opening

20  statements are intended to assist you in

21  understanding the significance of the evidence they

22  expect to be presented.  But the opening statements

23  are not evidence.

24          After the opening statements, the

25  Plaintiff will present her case through witness

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 43 of 403   PageID 13867
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 246

1    testimony and documentary or other evidence.

2            Next, the Defendants will have an

3    opportunity to present their cases.

4            The Plaintiff may then present rebuttal

5    evidence.

6            After all the evidence is introduced, I

7    will instruct you on the law that applies to this

8    case.

9            The lawyers will then make their closing

10   arguments.  Closing arguments are not evidence, but

11   rather the attorneys' interpretations of what the

12   evidence has shown or not shown.

13           And, finally, you will go to the jury room

14   to deliberate to reach a verdict.

15           Keep an open mind during the entire trial.

16   Do not decide the case until you have heard all the

17   evidence, my instructions, and the closing

18   arguments.

19           Before we do opening statements, what I

20   want do is read some stipulations to you.

21           Those stipulations are just agreements

22   among the parties.  Lawyers can do this with their

23   clients to make sure that it streamlines the case

24   and gives you agreements that they have reached in

25   advance that no one needs to prove here in court and

 1   these lawyers have done that in this case.

 2            So there are a total of, I believe, 15

 3   stipulations.  I'm going to read them to you now.

 4   You don't have to write them all down because I will

 5   include them in the jury charge that I give to you

 6   at the end of the case that includes the relevant,

 7   but I will read them for you now.

 8                  (Discussion off the record.)

 9            THE COURT:  All right.

10            We are making the jump to hyperspace.

11            Here we go.

12            Stipulation 1:  Charlene Carter is a

13   Christian who believes that abortion is the taking

14   of a human life contrary to the teachings of the

15   Bible and the will of God.

16            No. 2:  Carter was hired as a flight

17   attendant by Southwest in 1996.

18            No. 3:  TWU Local 556 is the local union

19   representing flight attendants working at Southwest

20   Airlines.

21            No. 4:  Local 556 served as Carter's

22   exclusive bargaining representative throughout her

23   tenure with Southwest.

24            5:  For several years Carter objected to

25   certain decisions by and the leadership of Local

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 45 of 403   PageID 13869
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 248

1    556's leadership, email messages, and Facebook

2    postings.

3              6:  In September 2013, Carter resigned her

4    membership with Local 556 and was an agency

5    fee-paying non-member objector until her termination

6    in 2017.

7              7:  Starting in early 2015, Carter began

8    sending messages to Stone discussing Carter's status

9    as a Union objector.

10             These emails and messages continued for

11   the termination of Carter's employment by Southwest.

12             8:  From 2015 through 2017, Carter

13   continued in various efforts opposing the Union and

14   the Union's then president Audrey Stone.

15             Carter supported a recall campaign and

16   posted and sent messages on social media expressing

17   her disapproval of the Union and Union leadership.

18             Carter sent many direct messages to Stone

19   to which Stone never responded.

20             9:  In January of 2017, members of Local

21   556, including President Stone, attended a

22   union-sponsored Women's Committee Meeting in

23   Washington, DC.

24             10:  On January 21st, 2017, certain

25   members of Local 556 attended the Women's March in

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 46 of 403  PageID 13870
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 249

1   Washington, DC.

2           11:  On February 14th, 2017, Carter sent

3   Local 556 President Audrey Stone private messages

4   via Facebook Messenger.

5           12:  President Stone never sent Carter

6   responses to the private messages.

7           13:  On February 22nd, 2017, President

8   Stone reported Carter's emails and Facebook messages

9   to Stone's base manager, Suzanne Stephensen, in Las

10  Vegas, Nevada.

11          14:  On March 7, 2017, Southwest held a

12  fact-finding meeting with Carter as part of its

13  investigation of President Stone's complaint.

14          15:  On March 14th, 2017, Southwest sent

15  Carter a termination notice.

16          That ends the stipulations.  So with that,

17  we are now going to move to the opening statements

18  by the lawyers.

19          Mr. Pryor will open for the Plaintiff

20  Carter.

21          MR. PRYOR:  Thank you, your Honor.

22          In 1983, Charlene Carter was 19 years old,

23  and she had a problem.  She was living with her

24  boyfriend in Lake Dallas, Texas.  Her parents had

25  disowned her because she was living out of wedlock.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 47 of 403   PageID 13871
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 250

 1   Her father called her a whore.

 2           Her boyfriend was going to college.  She

 3   had been going to college, but she quit in order to

 4   take two jobs to put her boyfriend through college.

 5           She was pregnant and she had no support.

 6   She waited a day after finding out to tell her

 7   boyfriend, and he didn't want a child.  He didn't

 8   want to get married.  He was in a fraternity, he was

 9   going to school.  And so she was left on her own.

10           A tough decision for a 19-year-old.

11           By the way, we are talking about

12   Charlene's story as it relates to her beliefs and

13   her exercise of her religious freedom here.  I'm not

14   trying to convince anyone of anything.  I just hope

15   you can respect her experience.

16           So at 19 she goes to see her doctor.

17   She's nine-and-a-half weeks pregnant.

18           She goes home, she pulls out the Yellow

19   Pages, and she looks for the number for Planned

20   Parenthood.

21           She goes there.  And she goes there with

22   every intention of getting an abortion if she gets

23   answers that she's really hoping to hear from them.

24           She goes there, and they tell her that

25   that's not a baby, it's a zygote.  Don't worry about

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 48 of 403   PageID 13872
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 251

1  it.  And she accepts that answer.

2          In her heart she will tell you she knew it

3  wasn't right for her, but she accepted it and she

4  had the abortion.

5          And it was devastating for her.  She was

6  depressed for years.

7          To deal with the depression, she married

8  her boyfriend.  And she will tell you, walking down

9  the aisle, she was thinking about the fact that he

10  had not supported her when she had the abortion.

11          But she married him because the guy you

12  sleep with is the guy you are supposed to marry.

13  And the depression does not go away.

14          She finally, after years, she goes to a

15  church, and at this church -- again, I'm not

16  preaching to you, this is her experience.

17          But at this church, she's at a women's

18  Bible study, and it is basically an auditorium full

19  of women and then they will break into smaller

20  groups.

21          And the speaker stood up and talked about

22  something she had never heard talked about in

23  church.

24          The speaker talked to her about God's

25  love, God's forgiveness, and then the speaker asked

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 49 of 403   PageID 13873
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 252

1  anyone that's had an abortion to stand up.

2          There was not a rush of people to stand

3  up.  Charlene had been carrying this for years.  She

4  stood up and another stood up.  And then the speaker

5  talked about people affected by abortion.

6  Eventually, everyone in the auditorium is standing

7  up and they pray.

8          And Charlene felt God's love, she felt his

9  forgiveness, and she felt his guidance that she use

10 her experience to help others and to save babies.

11         And that is what she's done.

12         By the way, she's not out or has ever been

13 protesting in front of a Planned Parenthood office.

14 That is not her.  She's helping women that were in

15 the same situation she was when she was 19 years

16 old.

17         That's to inform you about her religious

18 belief and how she exercised it and got fired for

19 it.

20         Now, there is another aspect of her life

21 that is involved in this case, and that is her

22 union.

23         And that begins in 1996.  She goes to work

24 for Southwest Airlines.  She's very excited about

25 it.

1    She had a son by then.

2         By the way, I should mention that before

3    she had her son, she was pregnant as well and lost

4    that baby.  And the reason I mention it is because

5    she lost the baby because of complications from her

6    abortion.

7         That was part of the guilt she was

8    carrying.  But, you know, she felt God's forgiveness

9    for that.  She moved on and is helping people.

10        But when she went to work in 1996, she was

11   very excited.  She went to work as a flight

12   attendant.

13        And Charlene, it's the perfect job for

14   her.  She's a people person, she likes helping

15   people, she's a smiling person.  She's like what you

16   remember from Southwest in the Herb Kelleher days.

17   She was the perfect employee for that position.

18        In fact, let me fast forward.

19        21 years, from 1996 to 2017, 21 years,

20   she's a flight attendant for Southwest Airlines.

21   How many times was she given a verbal warning, a

22   written warning, a 30-day suspension, a probation?

23        You name whatever penalty they have.

24   Nothing.  She was an absolutely stellar flight

25   attendant and gave all of her efforts, as did many

1  other people, to make Southwest Airlines the

2  successful airline it is today.

3           But she had problems with her union.

4           And I want to talk to you just for a

5  minute.  The judge explained it during voir dire.

6  Let me cover it again.

7           The relationship between Southwest

8  Airlines, a union, and its employee.

9           So this is Southwest Airlines, this is the

10 Union and this is Charlene.

11          So Southwest Airlines and the Union have a

12 Collective Bargaining Agreement.  By law, the only

13 one that can deal with Southwest Airlines regarding

14 employees' benefits, salary, work conditions is the

15 Union.

16          So it is the Union and Southwest.

17          Charlene cannot talk to Southwest about,

18 Hey, I want you to pay me more money.  I want better

19 work conditions.  It is the union that does that.

20          As a result of that, the law says, Union,

21 you have to look after that employee because that

22 employee can't do it.  We give that responsibility

23 to you.

24          You have a fiduciary duty to that

25 employee.  It is the highest obligation under the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 52 of 403   PageID 13876
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 255

 1  law.  You cannot do anything against the interest of

 2  that employee.  That is the relationship.

 3            So Charlene, she pays her dues.  She's not

 4  terribly active in the union.  In the year 2000, she

 5  thought the union was focused way too much on

 6  national things and politics instead of

 7  concentrating on what she thought a union should be

 8  doing, better work conditions, better pay.

 9            And a candidate ran, a young lady, I think

10  it was Melissa Smith, ran, and Charlene was very

11  excited about that candidacy.  Melissa Smith wins.

12            And Charlene then finds out a hard truth

13  about her union.  Melissa Smith is kicked out.

14            So Melissa Smith gets elected by the

15  voters, and the seniors at the national and

16  international kicked Melissa Smith out.

17            And this becomes a pattern.  You will hear

18  more about it.  And this pattern is, they always

19  have an excuse.  You know, you kept that laptop two

20  weeks too long, or you didn't turn in this

21  reimbursement slip.

22            By the way, some of the excuses, they are

23  mostly petty, but some of them turned out to be

24  completely false.

25            Charlene's view is that they had

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 53 of 403  PageID 13877
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 256

1  disenfranchised the voters, and this person that was

2  going to come in and make the union better gets

3  kicked out.

4           This happens again in 2013.  And this is a

5  whole slate of candidates, five candidates for every

6  officer position in the Local 556.

7           All five of the candidates that Charlene

8  supports get voted in.  What happens to them?  I can

9  tell you, they are all kicked out within less than a

10  year.

11           And who do they put in power?  The ones

12  that lost.  The vast majority voted for by the

13  people get kicked out, and the ones that lost are

14  put in the offices.  One of those is Audrey Stone.

15  She's the president of the union at this point.

16           And so Charlene -- by the way, Audrey

17  Stone is going to be the one that is going to

18  complain and get Charlene fired.  The Union

19  president.

20           Charlene starts complaining to her union.

21  You heard the stipulation, sending emails, sending

22  Facebook messages.  And she's -- it is always

23  precipitated by something.

24           I'm upset that they kicked out these

25  candidates.  I'm upset that you're improperly

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 54 of 403   PageID 13878
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 257

1   negotiating for us on a Collective Bargaining

2   Agreement.  It's not good enough.

3              By the way, a Collective Bargaining

4   Agreement that was rejected by 87 percent of the

5   flight attendants.  So it is not like Charlene is

6   just a rabble rouser.  She's just not happy with

7   what her union is doing.

8              And she communicates that to the Union.

9   And there were a couple of ways.  One is email

10  messages, but the other is Facebook messages.

11             Charlene had received Facebook messages

12  from her Union president, Audrey Stone, TWU,

13  Transportation Workers Union.

14             Ms. Stone used this Facebook page to send

15  out campaign information and seek support, tell

16  people to support the Collective Bargaining

17  Agreement, you name it.

18             And Charlene would respond, and say, No, I

19  disagree with that.  And she responded on Facebook

20  message.

21             And interestingly, they are going to stand

22  up and tell you that really that's Audrey Stone's

23  personal Facebook message, that's not the Union.

24             For years she communicated with her like

25  that, and now they are going to tell you that, Oh,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 55 of 403   PageID 13879
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 258

1   that wasn't really the Union that was handling that

2   communication.

3            My client, Ms. Carter, doesn't know

4   Ms. Stone.  She doesn't -- she doesn't know hardly

5   anything about her other than her union activities.

6            The only reason she's communicating with

7   her is to express her views about what the Union is

8   doing.  She's not a Facebook friend.

9            So troubles continue.  And you will hear

10  about them.  There was a recall petition.  This

11  became a problem.

12           After the Collective Bargaining Agreement

13  was rejected, a lot of flight attendants decided

14  they wanted to get a recall petition to get rid of

15  these five people that were not initially elected.

16           It's Audrey Stone, Bill Holcomb, John

17  Parrott, Brett Nevarez.  There may be another name.

18           And Charlene supported that, and that put

19  a target on her back.

20           By the way, the recall petition was signed

21  by more than 50 percent of the flight attendants.

22  When they sent it to the Union to then have a recall

23  vote, the Union said, your petition is not good

24  enough.

25           The Union appointed some people to review

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 56 of 403   PageID 13880
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 259

 1  the petition and say it wasn't good enough.

 2          Who were the people that appointed them?

 3  Audrey Stone, Bill Holcomb, John Parrott, Brett

 4  Nevarez.

 5          It would be like if I could pick the jury

 6  in this case, not that I don't like you guys, but if

 7  I could pick my relatives or something, it might be

 8  a little more easy case.

 9          So this is what Charlene is doing.  She's

10  complaining about all of this.  And it's not

11  obscene.  She's not using curse words.  She's using

12  strong language trying to get her point across.

13          I think what you are doing is not moral.

14  I think what you are doing is corrupt.  This is

15  terrible.  Those kind of things.

16          Absolutely appropriate protected union

17  speech.

18          Brings us to 2017, the year she's going to

19  get fired.

20          In January of 2017, her union decides to

21  spend money for a bunch of people to go up to

22  Washington, DC.  And one of the things they did

23  while they were there is they participated in a

24  Women's March.

25          That March was sponsored by Planned

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 57 of 403  PageID 13881
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 260

 1   Parenthood.  And you can imagine Charlene's reaction

 2   to her dues being used for that.

 3              And I should say something about her dues.

 4              At this point in time, she was an

 5   objector.  And an objector is, she quit the union at

 6   some point.  And you would think, Oh, so therefore,

 7   she no longer has any interest in any of this.

 8              No.  That relationship we talked about is

 9   unchanged by her being an objector.  Being an

10   objector says, I quit the Union.

11              By the way, she still has to pay dues by

12   law.  She's only represented by the Union still.

13   The Union still has that fiduciary obligation.

14              Well, then what's the point of quitting?

15   There's two points.

16              One is, from the Union standpoint, she

17   can't vote anymore, and then the other is she gets a

18   small reimbursement for all of the political

19   activities they are involved in.  Her money doesn't

20   have to go for that.  Now, she's still paying the

21   salaries of people that are going to these events.

22              So that's the point of an objector.  It

23   certainly makes the Union upset with you if you are

24   an objector, but it doesn't change the legal

25   relationship.

```
 1              You will hear, we believe, instructions
 2    from the Court saying they still had that fiduciary
 3    obligation to her.
 4              So the Union posts pictures of the March,
 5    and it's people holding up signs from Local 556,
 6    saying, "Pro choice."  It is sponsored by Planned
 7    Parenthood.  She's very upset about it.
 8              By the way, it also has pictures of
 9    Southwest Airlines' emblem.  They wrote, "Southwest
10    Airlines" while they are marching down the street.
11    See if, wherever they talk to you about nexus, what
12    kind of nexus there was.  And I will talk about
13    nexus in a minute.
14              Southwest Airlines complains about her
15    Facebook page.  We will talk about how Southwest
16    Airlines dealt with the Women's March.
17              Charlene got fired.  So Charlene sends a
18    complaint, and she sends it -- where does she send
19    it?  Does she send it to every union member?  She
20    could have.  She didn't.  Does she send it to
21    everyone at Southwest?  She could have but didn't.
22              She sent a private Facebook message.  That
23    means only one person can see it.  And that is her
24    Union president.  And she sends it to her Union
25    president to try and tell her, what you are doing is
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  wrong.

2          She's trying to make her point as she's

3  allowed to, with her Union president, to say, Don't

4  spend our money like this.  And she said, What you

5  are doing supports murder.  It is that strong.  That

6  kind of strong speech is absolutely appropriate.

7          Southwest Airlines will tell you, Well,

8  that is over the top for us.

9          Well, that speech wasn't to Southwest

10 Airlines, it was to her Union president.  She didn't

11 send it to people at Southwest Airlines.

12         They'll say, Well, she was a flight

13 attendant.

14         Now, Ms. Stone was a flight attendant.

15 She was a flight attendant that hadn't been on a

16 plane as a flight attendant in years, but they can

17 still say that.  She was receiving that

18 communication as Union president.

19         There is a video, and it shows an aborted

20 fetus or baby, depending on how you look at it, and

21 it's moving.

22         She sent another video -- or another post

23 that Southwest complains about, that is pictures of

24 three ladies' faces in -- I'm sorry for this

25 language, but here we go -- vagina hats or pussy

1  hats, anatomically correct hats that were worn by

2  people at the march that was being supported by her

3  Union.

4          She was upset about that, and she sent

5  that to Ms. Stone, president of the Union, and said,

6  Look what you are supporting.  There were children

7  at this March.  This is inappropriate.

8          And so she makes her complaint.  She's

9  exercising her union right to complain to her union.

10 She's exercising her religious freedom to express

11 her views about life.

12         And Audrey Stone turns her in to the

13 company on February 22, 2017.  It is an interesting

14 date, as it turns out.  February 22, 2017.

15         And she complains to Southwest Airlines

16 saying that this -- Charlene has violated the

17 company's social media policy.

18         She acknowledges that it's union speech,

19 she acknowledges that it relates to religion, and

20 yet she is still complaining.

21         She has that fiduciary obligation, but

22 she's still complaining.  She's trying to get

23 Charlene fired.

24         What else was going on?  Let me tell you

25 about the social media policy of Southwest Airlines.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 61 of 403   PageID 13885
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 264

1            And by the way, look at the actions of
2    Charlene.  They weren't actions at her job, they
3    were actions dealing with her union.
4            But Southwest will tell you that it's on
5    the job because you sent it to a flight attendant.
6    They ignore the fact that she's the Union president.
7            So Charlene has sent this information.
8            What else is going on with the social
9    media policy?
10           In 2015, Audrey Stone, president of the
11   union, writes a message to all flight attendants,
12   including Charlene, saying, "Southwest's social
13   media policy is terrible.  They are applying it
14   subjectively.  They are using it to go after people
15   and not other people.  This policy is terrible.  We
16   are going to try and get Southwest to get rid of it
17   or change it.
18           "And, by the way, don't be reporting
19   people under this policy.  You don't know what is
20   going to happen.  We will handle these things on our
21   own."
22           That is what Audrey Stone said.
23           As a matter of fact, Audrey Stone defended
24   employees that had violations of the social media
25   policy, including an employee that called other

1  employees "fucktard" and an employee that said

2  somebody should be killed.

3          I mean, a variety of just pretty strong --

4  and what was the defense?  The defense was, they

5  were engaging in union activities, spirited passion,

6  election communications.

7          But that apparently doesn't work when

8  you're opposed to the union -- by the way, the

9  people she was defending were always union

10 supporters.

11         So, by the way, also at this time, the

12 Union is communicating with Southwest management.

13 Senior Southwest management, not somebody down here.

14 Somebody up here.  Like the second, third top

15 executives at Southwest Airlines.

16         And what are they saying?  They are

17 saying, You know, we really should use this social

18 media policy to target some people, get rid of these

19 employees we don't like.  We should target them.

20         Okay, wait a minute.  I didn't say it

21 right.  They said, Target for assassination.  It is

22 that strong.  It is stronger than what I said.  They

23 are going to target these employees for

24 assassination.

25         Most of them are people involved in the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 63 of 403   PageID 13887
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 266

 1   recall, as Ms. Carter was.  One is a union member,
 2   not an officer yet.  I don't even think she was in
 3   the recall petition.  And they are targeting her
 4   because they think she could be a leader in the
 5   future that could threaten the current leadership of
 6   the union, and we need to get rid of her.  And they
 7   are telling that to Southwest management.
 8           Who is she?  She's someone that they say,
 9   Well, she could appeal to certain members of the
10   union, and we need to stop that.
11           Why did they say that?  She was
12   Africa-American.
13           This is going on.  This is what Charlene
14   is faced with on February 22, 2017.
15           So also on February 22, 2017, that very
16   same day, the Union, one of the insiders of her
17   team, files a bunch of dossiers.  They went through
18   the social media of all of the recall supporter
19   leaders they could find, and they sent it to
20   Southwest and said, These are -- these are people
21   that should be punished under the social media
22   policy.
23           This is the Union using the social media
24   policy.  And they had talked about it with Mike
25   Hafner, the senior guy I was telling you about.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 64 of 403  PageID 13888
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 267

1  They talked about it with Sonya Lacore, another

2  senior person at Southwest Airlines.

3            By the way, on February 22, 2017, Sonya

4  Lacore sends out a "read before you fly" to every

5  flight attendant.

6            And what does she talk about?  She talks

7  about social media policy and workplace bullying,

8  the two policies they fired Charlene on.

9            It is just coincidence it all happened on

10  February 22, 2017.

11            Southwest investigates this, and Ed

12  Schneider is the person they say made the decision.

13            And you will see his notes.  He

14  acknowledges she's engaged in exercising her

15  religious beliefs.  He acknowledges she's engaged in

16  union activity.  No accommodation is given for that.

17            I'm going to mention accommodation for a

18  moment, and I think the judge will instruct you on

19  this.

20            When you are dealing with a religious

21  belief claim, the employee doesn't have to ask for

22  an accommodation, the company has to give it.

23            Charlene didn't know to use the word

24  "accommodation" when she went and met with them, but

25  she told them about her beliefs and why she felt she

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 65 of 403  PageID 13889
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 268

 1   needed to do this.

 2          And they didn't say anything about

 3   accommodation, never granted her one, never talked

 4   about the fact that there should be some

 5   understanding that what she was doing was union

 6   activity and religious belief.

 7          No, they wanted to fire Charlene, and they

 8   did.

 9          Okay.  I want to talk a little bit about

10   what Southwest and the Union might talk to you

11   about.  And we think this is a lot of misdirection,

12   but this is not -- you will be able to follow this.

13          They can -- I think they will try to

14   confuse this, but it won't work.

15          Okay.  One thing they will say, no

16   evidence.  Charlene doesn't have any evidence we

17   were intentionally discriminating against her

18   because of her religious belief.  We were just

19   trying to enforce our social media policy.

20          They will say, Do you know if Ed Schneider

21   discriminated against you?

22          And she will say, No, except that I got

23   fired.

24          And so what they are saying is, Oh, so you

25   don't know what Ed Schneider was thinking.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 66 of 403   PageID 13890
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 269

1             That is not the way it works.  You can't

2    sue someone for what they are thinking.  You could

3    all be thinking really horrible things about me

4    right now, I would never know.  And that is the same

5    in this situation.  What you sue people for are

6    their actions, and their actions reveal their

7    thoughts.

8             But you don't really need their thoughts.

9             They fired her because she exercised her

10   union rights.  They fired her because she exercised

11   her religious beliefs.

12            They will say, Well, this was over the

13   top.

14            There is no over-the-top exception to free

15   speech.  There are numerous exceptions to free

16   speech.  And the same thing for religious belief and

17   union activity.

18            Illegal conduct.  Defamation.  Libel.  So

19   there are all kind of things.  But otherwise, your

20   free speech, your religious freedoms, you should be

21   able to exercise them.

22            By the way, she didn't do it at work.  She

23   did it on her personal Facebook page.

24            So by the way, this over the top, this is

25   really graphic, they're going to show you a picture

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 67 of 403   PageID 13891
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 270

1   of this baby or fetus in opening, and it makes the

2   point of what's the best way to communicate your

3   position.

4           In our country, when something bad

5   happens, we all get upset.  When something bad

6   happens and it's on video, things change.

7           And Charlene wanted change, and she wanted

8   to change her union.  And they want to take away her

9   right to use the most effective speech possible.

10          I think they will try and distance

11  themselves from some people that had these

12  communications with upper Southwest management.

13          One of them is an officer of the Union,

14  Mr. Nevarez.  The other one is Brian Talburt, who

15  was in her inner circle.

16          You will see that she was -- they were

17  acting on behalf of the Union.

18          They will say, Well, we didn't fire all of

19  these recall -- all these recall people that came

20  in, we didn't fire them.

21          You know, that is -- well, they fired

22  Charlene.  They reprimanded Jeanna Jackson, one of

23  the recall people.  They reprimanded Greg Hofer.

24  You don't have to get them all, you get enough, you

25  will get the desired result of making these people

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 68 of 403   PageID 13892
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 271

1  shut up.

2          Okay, nexus.  I want to talk to you about

3  nexus.

4          So they say, Okay.  So maybe Charlene was

5  engaged in union activity when she sent that to her

6  Union president.  Maybe that was religious activity.

7  But she posted that video on her personal Facebook

8  page, and people could get confused and think that

9  she was actually speaking on behalf of Southwest

10  Airlines.

11          And because of that, there is a nexus, and

12  we fire her for violating our social media policy.

13          Let's look at the nexus.

14          By the way, that nexus, let's see what

15  evidence they put on about all of the people at the

16  Women's March, there is no doubt about nexus.  It

17  was posted the next day, says Southwest Airlines.

18  They didn't do that, but they fired Charlene.

19          So here is the nexus.  They have a rule

20  that wherever it's social media policy, Okay.  We

21  will look back about 18 months.  Not about.  18

22  months.

23          And so they go to Charlene's Facebook page

24  and they are looking for a nexus, something that

25  would say she's acting on behalf of Southwest

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 69 of 403   PageID 13893
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 272

 1   Airlines.  They can't find it.

 2            And there is -- Denise Gutierrez sends an

 3   email saying, What do I do?  I can't find it.

 4            What do they do?  Let's just go a little

 5   bit past 18 months.  Let's go a year.  Oh, no, let's

 6   another year.  Let's go another year.

 7            They go years back, three, four -- I think

 8   one of them is five years, to say, Ah, this is the

 9   connection to Southwest Airlines.

10            So what do they find, three, four years

11   ago, from this post?  She is standing in a cockpit

12   of Southwest Airlines in her uniform.  So that

13   picture --

14            By the way, you can't do it.  You'd have

15   to scroll for 15 or 20 minutes really working at it

16   to get there.  And that is telling the world that

17   that Charlene Carter is taking a position on behalf

18   of Southwest Airlines such that people would be

19   confused.

20            So we've got to fire you for that.

21            Okay.  I have two others.

22            One is -- I'm not sure when this picture

23   was, but it doesn't show anything.  One of them is

24   her standing with friends and she's getting her

25   picture taken and she's wearing a lanyard, she's got

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 70 of 403   PageID 13894
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 273

1  this thing around, it's this little plastic thing

2  that's got something in it.

3              And they say, We know that is a Southwest

4  Airlines lanyard.

5              You can blow it up.  The world is not

6  going to know it.  You can't tell anything from it.

7  This is the straws they are grasping at to look for

8  a nexus to fire someone that was opposed to the

9  Union.

10             So they had one other where she has her

11  Southwest Airlines sticker, I don't know how many

12  years ago this one was, and an emblem under it that

13  relates to support for America and Israel that she

14  started wearing after 9/11.  It was absolutely no

15  problem with her company.

16             But they are going to use that now from

17  years ago to say, We are going to fire you today for

18  this.

19             So there is no nexus, and she's entitled

20  to post on her personal Facebook page.

21             They will say, Well, Charlene was an

22  objector.  There is nothing Audrey Stone, president

23  of the Union, can do to her because she's not in the

24  Union.  So the only thing she can do is go to

25  Southwest Airlines and ask for help.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 71 of 403  PageID 13895
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 2 July 06, 2022                  Page 274

1            Well, first of all, it wasn't an

2  employment communication, so she shouldn't be going

3  to Southwest Airlines.

4            And Audrey Stone, president of the Union,

5  reported other people that weren't objectors, like

6  Jeanna Jackson.

7            What did she report Jeanna Jackson for?

8            This is -- it is hard to -- you can't make

9  this up.

10            Jeanna Jackson told union members, Our

11  Union president is bringing charges against union

12  members.

13            Something you would want to know if you

14  were a union member about your president.

15            And the president of the union reports her

16  for that and Southwest Airlines reprimands her.

17  Takes the charges.  So she -- she is reporting these

18  people for other reasons.

19            You can take people to the police.  She

20  says that Charlene threatened her.  You read these.

21            Charlene was upset that Ms. Stone was the

22  president and continued to be paid and not have to

23  work at American Airlines, and she was constantly

24  complaining about the salary, constantly, a few

25  times.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 72 of 403   PageID 13896
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 275

1          So at the end of one of her posts, she

2     says, basically, I can't wait for the recall

3     petition to be successful.  Can't wait to see you

4     online.

5          That's a common phrase, "see you online,"

6     among flight attendants.

7          And it was saying, I'm going to be glad

8     that you are no longer being paid and you have to

9     work like the rest of us.

10         Audrey Stone is going to tell you that was

11    a threat.  I will show you documents from Audrey

12    Stone where she uses that phrase, and I don't think

13    she was intending to threaten people.

14         They could block her.

15         The other thing that the Union could have

16    done is, they could have banned her.  And that would

17    be significant to Charlene.  She wants to go back

18    there.  She wants to go back to her job.  She wants

19    to go back to her union some day.  She still wants

20    her union to start doing union things and not all of

21    these other things.

22         And when that happens, she looks

23    forward -- she will still pay dues, but she looks

24    forward to being a member.

25         So there are a lot of things they can do.

```
 1                They will say, Charlene didn't know
 2   Ms. Stone's beliefs, she didn't know Ed Schneider's
 3   beliefs, and so why would she be sending these
 4   things to them?
 5                That is the point.  She's sending it to
 6   the Union president.  She's not -- not that she's
 7   not interested, but the point is not is what Audrey
 8   Stone's personal opinion, what as president of the
 9   union are you doing regarding this issue?
10                All right.  We are on a clock here, by the
11   way, and I know it's hard being preached to for so
12   long.  I'm almost done.
13                Damages.  Charlene has been out of a job
14   for five years.  She tried to get a job at other
15   airlines.  It was difficult.  She didn't get hired.
16   And part of it was during COVID.  So there is
17   reasons.
18                They will say -- by the way, that is back
19   pay.  They should have been paying her for the past
20   five years.
21                And they will tell you, Well, those last
22   couple of years she didn't work very much.  She only
23   worked four or five flights.
24                Which is perfectly appropriate under the
25   Collective Bargaining Agreement.  But let's see if
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 74 of 403   PageID 13898
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 277

1  they tell you why she didn't.

2           Okay.  So she's -- but she's more than

3  ready, willing and able to go back to work full

4  time, wants to get her job back.  She's suffered

5  emotional distress because of this.  She had to go

6  to counseling.  We will tell you about all of that.

7           I think that is all very important.  I

8  think she's entitled to a significant amount of

9  money here.

10          But Charlene wants you to protect her

11  religious freedom.  You don't have to agree with

12  her, but protect her rights.  She wants you to

13  protect her rights and others that want to complain

14  about their union and effect change.  That is what

15  she wants protection from.

16          If, at the conclusion of this, you think

17  that these actors over here did what I have been

18  talking to you about, we are going to ask you to

19  award punitive damages.  It is going to take a

20  significant amount of money to get these people to

21  change.

22          Thank you.

23          THE COURT:  Thank you, Mr. Pryor.

24          MR. McKEEBY:  Sidebar.

25          (Thereupon, the following proceedings were

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 75 of 403   PageID 13899
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 278

1          had at sidebar:)

2                    THE COURT:  I was just making sure.

3                    MR. McKEEBY:  I'm sorry.

4                    THE COURT:  Good to go?  Do you need a

5     sidebar?

6                    MR. GREENFIELD:  Brief objections.

7                    His reference to fiduciary duty, duty

8     being the highest obligation in the law, it's not

9     the case.  There is lots of legal standards that are

10    higher than fiduciary obligation.

11                   And making reference to a free speech

12    claim does not exist in this case.  He's talking

13    about specific free speech.  There is no government

14    entity, there is no free speech claim.

15                   THE COURT:  What I can say is, Everything

16    you've heard is lawyer argument.  Remember, the

17    evidence is yet to come in, and as to the law, I

18    will give you the law at the end of the case.

19                   Any objection to that?  I will say that

20    and then give you the baton.

21                   (Thereupon, the sidebar was concluded and

22        the following proceedings were held in open

23        court:)

24                   THE COURT:  Okay.  Just a brief reminder

25    before Mr. McKeeby goes, is everything you heard was

1   not evidence, it was a preview of the evidence they

2   expect; and any references to the law, remember, I

3   will give you the relevant law at the end of the

4   case.

5           With that, Mr. McKeeby is going to open

6   for Southwest Airlines.

7           MR. McKEEBY:  Thank you.

8           Good to see everyone and good to see you

9   without the plexiglass today.

10          My name is Paulo McKeeby, and I represent

11  Southwest Airlines.

12          There was a lot of discussion yesterday

13  and today, as well, about religious freedom.

14          And religious freedom is important to

15  Southwest.  It is important to anyone.  And that

16  involves the right to pray to the God of your

17  choosing.  It involves the right, in some

18  circumstances, to express your religious beliefs.

19          But freedom of religion also involves the

20  freedom to be free from others forcing their

21  religious beliefs on you, particularly when that is

22  done in a harassing, bullying, intimidating manner,

23  as was the case with Ms. Carter and her

24  communication to Ms. Stone.

25          And particularly, they have talked about

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 77 of 403   PageID 13901
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 280

1    free speech and freedom of religion.  We are talking

2    about the workplace here.  We are talking about

3    communications between one employee and another

4    employee.

5                  They want to talk about Ms. Stone as the

6    president of the Union.  She was the president of

7    the Union, but she was also a flight attendant, a

8    fellow employee of Ms. Carter, who was entitled to

9    the benefits of Southwest's policies just as much as

10   any other employee was, including Ms. Carter.

11                 Ms. Carter was not terminated for the

12   beliefs in her mind about her religion, which

13   Southwest -- we are not saying that those aren't

14   valid or that she didn't sincerely believe those

15   beliefs.  She was terminated for what she did.

16                 She was terminated for her conduct, and

17   that conduct was sending videos of aborted fetuses

18   or babies, depending on your perspective, to a

19   co-employee.  That is not acceptable and that is why

20   Ms. Carter was terminated.

21                 She won't accept responsibility for her

22   conduct.  That is partly why we are here today.

23                 But Southwest had a responsibility as

24   well, and that responsibility was to protect its

25   employees from that kind of conduct.  And that's why

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 78 of 403   PageID 13902
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 281

 1   Ms. Carter was terminated.

 2            Let me introduce some of the other folks

 3   at my table.  Brian Morris is here.  He's my

 4   colleague at my law firm.

 5            Meggan Jones is with Southwest Airlines.

 6   She's our corporate representative.

 7            You will hear from her later in the case

 8   as a witness.

 9            Also, you will see Chris Maberry.  He's

10   Southwest's in-house counsel.

11            And Lauren Bobis-Armstrong is also with

12   Southwest's legal department.

13            And last, but definitely not least, is

14   Kate McKinney, our technical person.  And I

15   introduce her now because I would like her to

16   commence the PowerPoint.

17            Let's talk about what the evidence will

18   show in this case.

19            First, the evidence will show that Ms.

20   Carter was terminated for violating multiple

21   Southwest policies.

22            And this is what she did to violate those

23   policies.  These are still photographs of the videos

24   that Ms. Carter sent to Ms. Stone.  We will show you

25   the videos during the course of the evidence, but

 1   these are the still shots.

 2              This is what she sent to Ms. Stone.  This

 3   is what she posted on her Facebook page.

 4              Let's talk about Southwest's social media

 5   policy.

 6              Obviously, you can't read the policy, but

 7   I have highlighted a couple terms.

 8              Content that can be disrespectful,

 9   malicious, harassing violates the social media

10   policy; and also, content that could be viewed as

11   damaging to Southwest's public perception.

12              We will talk about that in just a moment.

13              And the policy makes clear that violations

14   of the policy can result in termination.

15              There is going to be no dispute that

16   Ms. Carter was aware of this policy.  All employees

17   receive this policy.  All employees sign off on this

18   policy.  It tells employees what the expectations

19   are with respect to social media posting.

20              Let's talk about that middle bullet, the

21   content being viewed as damaging, could be viewed as

22   damaging to the public perception.

23              On Ms. Carter's Facebook post were

24   pictures like this of her in her Southwest uniform.

25   Like this.  Referencing the company's CEO, former

 1   CEO and founder.

 2              So clearly someone who viewed, a member of

 3   the public who viewed her Facebook page, could see

 4   that she was an employee of Southwest Airlines and

 5   could see the videos that you are going to be shown

 6   in this case.

 7              And Southwest had the legitimate

 8   contention under its social media policy that that

 9   harmed its reputation, it harmed its public

10   perception, and yes, it was a factor in her

11   termination.

12              Let's also talk about Southwest's bullying

13   and hazing policy.  That's another workplace policy

14   where bullying and hazing is defined as malicious

15   and unwelcome or severe mistreatment that harms,

16   intimidates, offends, or humiliates an employee.

17   And it also includes the concept of cyberbullying.

18   So it incorporates to some degree the social media

19   policy.

20              And it also, like the social media policy,

21   specifically warns employees, we take this seriously

22   at Southwest.  And you are going to hear about

23   Southwest's culture of respect amongst its employees

24   and how important that is to Southwest.

25              And so employees are warned, Look, if you

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 81 of 403   PageID 13905
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 284

1  bully and haze your coworkers, it could result in

2  discipline up to and including termination.

3           The evidence will also show that Southwest

4  did not terminate Ms. Carter because of her

5  religious beliefs.

6           As you are all aware, Southwest is a large

7  company.  They run an airline.  They are not in the

8  business of discriminating against employees because

9  of their religion.  They frankly don't care in terms

10  of religious beliefs because they know that they

11  have a diverse workforce and they are going to have

12  employees of all different faiths among its

13  workforce.

14           You will hear from the employees who

15  participated in the investigation of Ms. Stone's

16  complaints and you will hear about the religious

17  views of those individuals.

18           From Ed Schneider, from Maureen Emlet.

19  Those people are Christian, just like Ms. Carter,

20  and they also have similar views regarding abortion

21  as Ms. Carter.

22           You will hear from those witnesses, and

23  you should ask yourself, are these people really

24  going to take action against Ms. Carter based on

25  what is in her mind?  No.

 1          The termination was based on her conduct,

 2   what she did with respect to sending those videos to

 3   Ms. Stone.

 4          The evidence will also show that

 5   Ms. Carter was not terminated based on her

 6   opposition to the Union.  You are going to hear, and

 7   you have already heard, a lot about the historic

 8   dispute between Ms. Carter and perhaps others and

 9   the Union.  And what you have to understand, first

10   of all, is that Southwest and the Union are

11   separate.

12          That's one reason why the Union has

13   separate counsel and is a different party in this

14   case.  The Union has different bylaws, the Union has

15   different guidelines, the Union has different

16   leadership, different payroll.  They are not the

17   same as Southwest Airlines.

18          And when the Union wants to do something,

19   like, oh, by the way, go on a Women's March in

20   Washington, they don't ask Southwest to sponsor or

21   approve that because it's separate from Southwest.

22   They do it.

23          So Southwest didn't have a dog in that

24   fight or a role in their -- in their participation

25   in the Women's March other than to provide them

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 83 of 403   PageID 13907
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 286

1  transportation, which Southwest is contractually

2  obligated to do under the Collective Bargaining

3  Agreement.

4          Southwest simply did not have a dog in the

5  fight with respect to Ms. Carter's disputes with the

6  Union, as the evidence will show.

7          And moreover, just as the people who were

8  involved in the decision to ultimately terminate her

9  employment, they had no idea of Ms. Carter's

10  religious beliefs.  They also did not know about

11  Ms. Carter's disputes with the Union until the

12  investigation.

13          The people who conducted the

14  investigation, Mr. Schneider, the Denver-based

15  manager, he didn't -- he had never met, had never

16  spoken to Audrey Stone, the union president.  He had

17  motivation to protect her or to treat her

18  differently than anyone else, any other employee.

19          And, again, Ms. Carter wasn't someone

20  that, frankly, Mr. Schneider had to think about

21  because she wasn't working.  She took three flights

22  during the year prior to her termination.

23          Southwest got involved in this dispute and

24  in Ms. Carter's dispute with the Union when

25  Ms. Stone, the Union president -- I think you are

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  going to hear every time from counsel for

2  Ms. Carter, every time they refer to Ms. Stone, you

3  are going to hear "the Union president" -- she was

4  also a fellow employee.  Do not forget about that.

5          Ed Schneider didn't forget about that when

6  he conducted the investigation, and Southwest didn't

7  become involved in this until Ms. Stone made her

8  complaint.  And when that happened, that triggered a

9  process.

10         So the evidence will also show that

11 Southwest conducted a fair and thorough

12 investigation.  It was a three-week investigation

13 involving multiple different departments and

14 different people from whom you will hear during the

15 course of this trial.

16         You will hear from Maureen Emlet in labor

17 relations; you will hear from Ms. Jones, the

18 assistant base manager at the time; and you'll hear

19 from Denise Gutierrez in employee relations, all of

20 whom who had a role in the investigation and

21 ultimate decision with respect to Ms. Carter's

22 termination.

23         Ms. Carter had the opportunity to tell her

24 side of the story during the investigation.  This

25 wasn't just a matter of the company talking to

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 85 of 403  PageID 13909
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 288

 1  Ms. Stone, the company talked to Ms. Carter, first,

 2  in what will be referred to as a fact-finding

 3  meeting over which Mr. Schneider presided.

 4           And he asked Ms. Carter, Why did you do

 5  this?  What is your side of the story?

 6           And Ms. Carter was given that opportunity.

 7           And then there was something that you will

 8  hear about called a Step 2 hearing.  It gave

 9  Ms. Carter the opportunity to, again, tell her side

10  of the story, to yet another layer of Southwest

11  management.  This time a gentleman by the name of

12  Michael Sims who you'll hear from.

13           MR. PRYOR:  May I approach?  I have an

14  objection.

15           THE COURT:  Same objection we discussed

16  previously?

17           MR. PRYOR:  This is -- we haven't gotten

18  to that one yet but...

19           THE COURT:  Okay.  Hold on.  Sidebar, no

20  speaking objections.

21           (Thereupon, the following proceedings were

22      had at sidebar:)

23           THE COURT:  Better be good.

24           MR. PRYOR:  I thought you were about the

25  last call.  I'm talking about what he's talking

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 86 of 403   PageID 13910
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 289

 1  about now.

 2          Step 2 is not her opportunity to be heard

 3  on this.  And you gave a limine that they could talk

 4  about the Union did its job in Step 2 but Step 2 is

 5  not part of this case nor is the arbitration.

 6          MR. GREENFIELD:  Which is absolutely

 7  directly related to --

 8          THE COURT:  What number do you think?

 9          MR. PRYOR:  I'm sorry?

10          THE COURT:  What limine number do you

11  think I limined it out?

12          MR. PRYOR:  I have to --

13          THE COURT:  Can you go find it?

14          MR. PRYOR:  I can find it.  I wasn't aware

15  that limined.  I will look.  I will look.  Thirty

16  seconds.

17

18          MR. McKEEBY:  Your Honor, it is part of

19  the process.  It is part of the investigation.

20          THE COURT:  So I limined out the

21  arbitration ruling itself.

22          MR. PRYOR:  Twelve.

23          THE COURT:  I have got it.

24          Yeah, okay.

25          I didn't limine that out.  What I limined

1    out was the actual arbitration ruling and any

2    testimony that gets in depth discussions of the

3    arbitration agreement.  The last chance agreement,

4    Step 2 still comes in for the purpose under 408.

5               MR. PRYOR:  Maybe I misunderstood.

6               The Step 2 and arbitration had everything

7    to do with the claims that she's making here.  That

8    is what he's arguing, that she had her chance to

9    raise these issues, that is not where she had the

10   chance.  This is where she had --

11              MR. GREENFIELD:  You can argue that.

12              THE COURT:  You can clean that up and

13   obviously at some point later on in the proceeding

14   when we have the arbitration agreement that does not

15   come in.  I can tell the arbitrator is looking at

16   different issues than you are looking at here.

17              MR. PRYOR:  You are overruling my

18   objection?

19              THE COURT:  Well, you shouldn't have this

20   objection now.

21              So what I can do, at the end, I can say,

22   look, you will hear from me more fully at the end of

23   the case.

24              MR. PRYOR:  Okay.  Well, I have another

25   conference after.  I just need to make a record on

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 88 of 403   PageID 13912
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 291

 1  it.

 2          THE COURT:  I think you already have.

 3          MR. PRYOR:  Okay.  I didn't get a ruling.

 4          THE COURT:  I'm overruling your objection.

 5          MR. PRYOR:  Okay.  That's fine.

 6          THE COURT:  What I'm going to say at the

 7  end of this, I'm going to say, well, the facts and

 8  law, you haven't heard any of the facts and the law

 9  you will hear from me.

10          MR. PRYOR:  I'm not trying to be

11  difficult.  I wanted to make sure.

12          THE COURT:  I understand.

13          (Thereupon, the sidebar was concluded and

14      the following proceedings were held in open

15      court:)

16          THE COURT:  Okay.  Sorry, Mr. McKeeby.

17  You can continue.

18          MR. McKEEBY:  Thank you, your Honor.

19          So where was I?  The Step 2 hearing

20  presided over by Michael Sims, whom you will hear

21  from.

22          Another opportunity for Ms. Carter to tell

23  her side of the story to another member of

24  Southwest's executive team.

25          Mr. Sims agreed with the decision of

1   Mr. Schneider to terminate Ms. Carter's employment

2   based on her conduct.  Based on the videos that she

3   sent to Ms. Stone and based on her other conduct.

4             And normally, that would be the end of my

5   presentation and I would shuffle back to my table

6   and sit down.  But this case is different for

7   another reason.

8             At the end of the Step 2 hearing, Mr. Sims

9   had a decision to make.  He had different options.

10  And he'll tell you about those options when he gets

11  on the witness stand.

12            He could either uphold the termination

13  without reservation, he could rescind the

14  termination or he could adopt a middle ground.

15            Now, during the Step 2 hearing, Ms. Carter

16  said, I love the company.  I love Southwest.  I love

17  my job.  What I want is my job back, and she

18  appeared for the first time in this process, she

19  appeared remorseful, she appeared to recognize that

20  she had stepped over the line by sending those

21  graphic videos to Ms. Stone.

22            Because of all of that and because she was

23  a long-term employee, Mr. Sims said, you know what,

24  let's give her a second chance.  Let's go ahead and

25  give her her job back.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 90 of 403   PageID 13914
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 293

 1              And that was presented to Ms. Carter by
 2   Mr. Sims at the end of the Step 2 hearing.
 3              Now, you're probably asking yourself,
 4   well, okay, what are we doing here then?
 5              Ms. Carter turned down the offer of
 6   reinstatement.
 7              And so the last thing the evidence will
 8   show, ladies and gentlemen, is that Ms. Carter quit
 9   on Southwest by refusing that offer.
10              She's going to have an explanation for why
11   she did that.  She's going to talk about the
12   conditions that were associated with the last chance
13   agreement that she was presented, that a document
14   would be in her file for two years, that, ladies and
15   gentlemen, required her to comply with Southwest's
16   policies.
17              That is what she had to do, comply with
18   Southwest's policies.
19              She gave up her right to backpay for the
20   few weeks that the investigation occurred when she
21   wouldn't have been flying anyway.  That was no
22   concession.  She wasn't going to be flying during
23   that period anyway.
24              Mike Sims fully expected Ms. Carter to
25   say, thank you, I will take my job back because that

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 91 of 403   PageID 13915
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                      Page 294

 1   is what she said during the Step 2 hearing.  I love
 2   the company.  I want my job back.
 3              And Mr. Sims said, you know what?  Look,
 4   she's showing some remorse, she wants her job back,
 5   I will give her the chance.  And he's shocked when
 6   he founds out through the union that it wasn't good
 7   enough for Ms. Carter.  It is another example of her
 8   unwilling to accept responsibility for her actions
 9   and for her conduct.
10              So to summarize very briefly, Ms. Carter
11   was not -- was terminated because she violated
12   company policy by sending those videos, as well as
13   other conduct that we will talk about.
14              Southwest did not terminate Ms. Carter
15   because of her religious beliefs.  There will be no
16   evidence before you that any of these decision
17   makers thought less of Ms. Carter because she was a
18   Christian.  They were Christians too.
19              And they did not terminate Ms. Carter
20   because of her longstanding dispute with the Union.
21              The Southwest employees involved in this
22   decision frankly didn't care.  They deal with the
23   union.  They don't care who the union leadership is.
24              Mr. Schneider, who will you hear from, who
25   was the primary original decision maker after the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 92 of 403   PageID 13916
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 295

1   fact finding meeting, had never spoken to Audrey

2   Stone prior to that investigation.

3            And you will hear about the investigation

4   that it was thorough and that it was fair and it

5   gave the opportunity for Ms. Carter to be heard on

6   two occasions during the fact finding meeting and

7   during the Step 2 hearing.

8            And then, finally, you will have to ask

9   yourself, why did Ms. Carter not accept that job

10  that she said she wanted.

11           Thank you, ladies and gentlemen.

12           THE COURT:  Thank you, Mr. McKeeby.

13           MR. POSTMAN:  Can we do our objections?

14           THE COURT:  Yes.

15           (Thereupon, the following proceedings were

16      had at sidebar:)

17           MR. PRYOR:  Your Honor, in addition to the

18  objection previously raised, we object to the

19  mention of the last chance agreement.  It is not a

20  mitigation of damages, which is, as the Court's

21  limine ruling.

22           Now, mitigation of damages does not

23  require -- you don't have to mitigate if it requires

24  you to give up your rights.  She had to give up her

25  rights of free speech, or religion, her union

1    activities, backpay, release the company.  That is

2    not a mitigation of damages document.

3              And I have not been able to address it

4    because if I raised it first, I waive it.  All

5    right.  And it being talked about in openings is

6    inappropriate.  It is inappropriate evidence.

7              The other objection is Rule 404(a)(1),

8    talking about Southwest Airlines's employees

9    religious beliefs.  404(a)(1) specifically says,

10   Character evidence is not permitted to show what you

11   did here as a trade of what you did for something

12   else.  That is what he's arguing.

13             Those are my additional objections.

14             THE COURT:  Response?

15             MR. McKEEBY:  Your Honor, on the last

16   chance agreement, I mean, the issue of

17   reasonableness is obviously critical to mitigation,

18   so if having to give up her rights made the refusal

19   to accept the offer reasonable, then that is

20   something that they can put in through their

21   witness.

22             Ms. Carter can say, Here's why I didn't

23   sign it.  I thought it was unreasonable.  I didn't

24   want to give up my rights.  And the jury --

25             MR. PRYOR:  Which is claiming --

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 94 of 403  PageID 13918
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 297

```
 1              THE COURT:  Understood.
 2              I think it comes up under 408.  I think he
 3  still has a path to argue that.  I don't think it
 4  is, as a matter of law, points that there is failure
 5  to mitigate.
 6              MR. PRYOR:  So I think it is a matter of
 7  law point and I don't think it is a gray area.  But
 8  we can't raise it ourselves to respond to it until
 9  they do it in evidence.
10              THE COURT:  Sure.
11              MR. GREENFIELD:  Your Honor, if I may add
12  to that because I think that last chance agreement
13  is directly related to the DFR claims against the ^^
14              THE COURT:  I've already ruled on it,
15  so --
16              MR. GREENFIELD:  Okay.
17              THE COURT:  -- I'm sticking to my ruling
18  on the 404.
19              Is there any argument you want to make in
20  response to 404 character evidence?  Actually, I
21  don't know that I fully understood your 404
22  argument.
23              MR. PRYOR:  I'm sorry?
24              THE COURT:  I don't know that I fully
25  understood your 404 argument.  What are you saying ^
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 298

```
 1   is the purpose --
 2            MR. PRYOR:  What he has said, he repeated,
 3   several employees, he said they're Christians, they
 4   wouldn't do this.
 5            MR. McKEEBY:  Yes.
 6            MR. PRYOR:  They are pro life.  They
 7   wouldn't do this.
 8            Now, in Rule 404(a)(1) says, you can't use
 9   character evidence in that manner.
10            THE COURT:  Well, I'm going to give the
11   same instruction that I gave, which is, everything
12   you heard is not facts or law, you will hear that
13   from me at the end of the case.
14            MR. PRYOR:  I take it you're overruling
15   all my objections.
16            THE COURT:  No.
17            I'm actually saying the way I'm going to
18   deal with your second objection is to say that
19   everything you've heard, right, the words that came
20   out of his mouth are not evidence.  404 is evidence.
21   Right?
22            So what I'm saying is, if that comes in,
23   in a future form, we'll have to deal with it under
24   404.
25            Here I just say, not evidence, everything
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 96 of 403   PageID 13920
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 299

1    you just heard.

2              So I'm overruling the last chance

3    agreement argument.  I'm going to deal with it in a

4    curative instruction.

5              MR. GREENFIELD:  Your Honor, one last

6    thing.

7              After opening statements, is there a way

8    to move the podium?  I can only see half of the

9    jurors.

10             THE COURT:  We will be taking a break

11   after you do your opening, we can adjust the podium

12   if we need to, but it is still tethered to the floor

13   with wires, so we will figure that out.  Okay.  So

14   we will go back and I'll give my instruction.

15             (Thereupon, the sidebar was concluded and

16        the following proceedings were held in open

17        court:)

18             THE COURT:  Okay.  As Mr. Greenfield

19   approaches, I'm going to give you the same

20   instruction that I gave after Mr. Pryor opened,

21   which is everything you heard is not evidence.  It

22   is a preview of what evidence might be.

23             It's also not the law.  You can only hear

24   the law from me, and that will only come to you at

25   the end of the case.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 97 of 403   PageID 13921
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 300

1              With that, Mr. Greenfield, you can
2    approach the podium and give your opening on behalf
3    of Local 556.
4              MR. GREENFIELD:  I can lean.
5              THE COURT:  Okay.
6              MR. GREENFIELD:  I can be here.
7              As much as I would like to roam, I can
8    stay put.
9              Good morning, everyone.  It is good to see
10   y'all again.
11             To remind you, my name is Adam Greenfield,
12   along with my co-counsel, Edward Cloutman, III, and
13   our corporate representative, Michael Masoni.
14             We are here on behalf of Transport Workers
15   Union, Local 556.
16             You also will see an associate, Daniel
17   Dailey, from Kingdom Litigators, in the gallery.
18   You might have seen him during jury selection.
19             He will be helping me out with various
20   computer things because he's just better at that
21   than I am, so...
22             You have heard a lot about the contentious
23   issues between the Union and Ms. Carter and
24   Southwest.
25             We will hear a lot of about that during

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 98 of 403   PageID 13922
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 301

1  the evidence so I don't want to dive into all of

2  that and rehash it at this point.

3          What I would like to focus on is what

4  Ms. Carter's counsel wanted to focus on.  Actions.

5  So let's start with actions.

6          This is a case about someone who wants to

7  be able to say whatever she wants, whenever she

8  wants, however she wants to say it.

9          And look, I understand that kind of desire

10 for personal freedom.  I do.  I think a lot of us

11 do.  It can be a pretty natural human feeling.

12          But there are places that exist in most of

13 our lives where we understand that our actions may

14 have consequences, there's a certain level of

15 respect between folks is required.

16          Work is one of those places for a lot of

17 us.

18          At work, where employees are being paid by

19 a company for their work as part of a huge team,

20 like the Southwest flight attendants, you are not

21 solely an individual with your own agenda.

22          How you speak to folks you work with

23 matters.

24          What you say to them or about them

25 matters.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 99 of 403   PageID 13923
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 302

 1              How you say it matters.

 2              And if an employee makes folks she works

 3  with feel traumatized or threatened by her

 4  communication, we expect that you jurors will find

 5  that federal law does not protect her from the

 6  consequences of her actions.

 7              Now, this case is also about employee

 8  rights.

 9              And as I have said, you have heard already

10  a complicated story that will get more layered as we

11  go forward about the competing rights of Southwest

12  employees in the workplace.

13              You will hear about some of these issues

14  that stem way back to 2013.  We expect that the

15  evidence will show you that some of these issues

16  that arose earlier come from issues of fraud, and

17  theft, and that is why some of these Union officials

18  were kicked out of office.

19              You will hear, we believe the evidence

20  will show that the recall petition that they have

21  mentioned is also rife with fraud.  Signatures of

22  dead people included.

23              But I don't want to get bogged down there.

24  I don't want to talk about Ms. Carter.

25              Charlene Carter's right to speak her mind

1  under Southwest Airlines' social media policy and

2  the other side of it, Audrey Stone's right to not be

3  harassed and threatened by a coworker.

4          Yes, she was president of the Union.  Yes,

5  she was always a flight attendant, an employee of

6  Southwest Airlines.

7          I want you to listen to how those rights

8  came into conflict and the steps folks took in

9  pursuit of those rights.

10          Counsel for Southwest talked a bit about

11  that process, fact finding meeting, Step 2 process.

12          Ms. Carter was represented by Union

13  individuals during all of those steps.

14          We expect the evidence to show from

15  Ms. Carter's mouth that she felt the Union

16  represented her excellently during that time period.

17          Plaintiff brings this suit alleging that

18  all other parties involved have conspired against

19  her to violate her rights.  And that the assertions

20  or protections of anybody else's rights, like the

21  rights of Ms. Stone, are purely for show.

22          I want you to ask yourselves what Charlene

23  Carter would have been happy with.  Short of Audrey

24  Stone continuing to endure her cyberbullying while

25  saying nothing.  What would have satisfied

 1  Ms. Carter?

 2           This is a case about someone who wants to

 3  be able to say whatever she wants, whenever she

 4  wants, however she wants to say it.

 5           We expect the evidence will show that

 6  Charlene Carter has been as vocally critical of the

 7  Union as she could have possibly been, for years,

 8  before her termination.

 9           And she was never reported to Southwest

10  Airlines.  I want you to listen for how the

11  plaintiff explains her claim that she was retaliated

12  against for her anti-Union speech when all of her

13  previous anti-Union speech went unreported.

14           We expect the evidence will show that it

15  was not until this specifically traumatic and

16  threatening communication that Ms. Stone reported

17  the plaintiff to Southwest Airlines.

18           A line had been crossed.

19           I want you to listen for what the

20  plaintiff claims Ms. Stone should have done instead.

21           I want you think to about what options

22  Ms. Stone had, given that Ms. Carter wasn't a member

23  of the Union, and her harassing conduct only seemed

24  to be escalating.

25           She objected to the Union.  She gave up

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 102 of 403   PageID 13926
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 305

1  her voice in certain respects.

2           As pointed out by Ms. Carter's counsel,

3  she couldn't vote in elections, she couldn't go to

4  membership meetings.

5           So did Ms. Stone have to just stay quiet

6  and accept being harassed?  Being bullied?

7           I want you to listen to whether plaintiff

8  offers you any answer other than she has the right

9  to say whatever, however and whenever.

10          We expect that the evidence will show that

11 Ms. Stone was acting in her individual capacity,

12 exercising her federally protected rights to be free

13 from coworker harassment.

14          Ms. Carter is not the only employee whose

15 rights deserve to be protected today.

16          But more than anything else, I want you to

17 think about whether the plaintiff's theory of the

18 case makes sense, whether they meet their burden of

19 proving that it is more likely than not that every

20 single person you hear from, from the Union or

21 Southwest Airlines, are lying and are actually

22 involved in one huge conspiracy against Charlene

23 Carter.

24          Because that is what it takes.  This was

25 what plaintiff is arguing.  Make no mistakes.  This

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 103 of 403   PageID 13927
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 306

1  case is about someone who wants to be able to say

2  whatever they want, whenever they want, and however

3  they want to.

4            Thank you.

5            THE COURT:  Thank you, Mr. Greenfield.

6            Sidebar?

7            (Thereupon, the following proceedings were

8     had at sidebar:)

9            MR. PRYOR:  Raise the same objection

10 regarding the comments regarding Step 2.

11            THE COURT:  Understood and overruled.

12            And I will give the instruction what you

13 heard is not evidence, I just give that after

14 everyone, all right?  And then I will give them

15 their first break and then let's go ahead and put

16 the first witness on the stand during the break.

17            (Thereupon, the sidebar was concluded and

18     the following proceedings were held in open

19     court:)

20            THE COURT:  Okay.

21            Same thing that I have told you after

22 everyone's opening, everything you heard is not

23 evidence, right?  And the law comes from me at the

24 end of the case.

25            So you're about to hear some evidence.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 104 of 403   PageID 13928
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 307

1              We're going to take our morning break, get

2    our first witness on the stand, bring you back in

3    and then you're going to start hearing evidence.

4              So with that, we'll all rise for the jury.

5              I'll give you the same three instructions:

6    Don't talk to anyone in the courthouse other than

7    your jurors and court personnel, and only talk to

8    them not about the case.  And don't do any research

9    on the case.

10             Thank you.

11             (The jurors exited the courtroom.)

12             THE COURT:  Okay.  We should have them

13   back in 10 minutes at 10:46, so let's endeavor to be

14   back here a minute or two before that, then we can

15   put our first witness on the stand.

16             Who will that first witness be?

17             MR. PRYOR:  Audrey Stone.

18             THE COURT:  Okay, got it.  So we can go

19   ahead and bring her in.

20             Are there any issues we should talk about

21   with the witness not in the room?

22             MR. GILLIAM:  Not that I know of.

23             MR. McKEEBY:  Not from Southwest.

24             MR. GREENFIELD:  Same here, your Honor.

25             THE COURT:  We are trying to tilt that

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 105 of 403   PageID 13929
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 308

1  podium.  I'm sorry.  It's a big, old podium.  Right?

2  It is substantial.

3          So if you need to like move your chair or

4  that table a little bit, we can do that, too.  We

5  don't care.  Everything is moveable to the extent

6  the wires permit.

7          MR. GREENFIELD:  Can I kind of give you

8  a --

9          THE COURT:  You have permission to slide

10  as you see fit.

11          MR. GREENFIELD:  Thank you, your Honor.

12          THE COURT:  Okay.  We will see you in

13  about eight minutes.

14          Thank you.

15          (Recess.)

16          THE COURT SECURITY OFFICER:  All rise.

17          THE COURT:  Okay.  Let's bring in the

18  jury.

19          (The jurors entered the courtroom.)

20          THE COURT:  Okay.  You can be seated.

21          And Carter can call its first witness.

22          MR. HILL:  First witness.

23          MR. PRYOR:  At this time Charlene Carter

24  calls Audrey Stone.

25          THE COURT:  All right.  Ms. Stone, you are

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 106 of 403   PageID 13930
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 309

 1   in the box already.  Thank you for being here.

 2              If you could stand up and Mr. Frye will

 3   administer the oath.

 4              (AUDREY STONE was duly sworn by the

 5       Clerk.)

 6              THE COURT:  Okay.  You can take a seat.

 7   And I have the same questions of every witness,

 8   which is, I'm going to ask for some separation

 9   between questions and answers.  That way if anyone

10   has an objection to the question, I can rule on it

11   before you answer.

12              If I sustain an objection, that means you

13   don't have to answer the question.  If I overrule

14   the objection, it means you can go ahead and answer

15   the question.

16              That also let's us keep a clean record for

17   the appellant proceedings, because if two people at

18   the same time, we can't write it down.

19              With that, you can proceed.

20                     DIRECT EXAMINATION

21   BY MR. PRYOR:

22   Q.   Good morning.

23   A.   Good morning.

24   Q.   Would you state your name?

25   A.   Audrey Stone.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 107 of 403   PageID 13931
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 310

1   Q.   Would you speak up?

2   A.   Audrey Stone.

3   Q.   Ms. Stone, were you Union president of Local

4   556 starting sometime in January '13?

5   A.   No.

6   Q.   When were you president?

7   A.   Starting in June 2013.

8   Q.   Can you move the microphone closer to you?

9           THE COURT:  I'm turning it up, too.

10  BY MR. PRYOR:

11  Q.   When were you president?

12  A.   Beginning in June 2013.

13  Q.   June 2013.

14       And as Union president and a union member, it

15  was important to you that Southwest Airlines not

16  interfere with union activities, true?

17  A.   It depends.

18  Q.   So there were some union activities that you

19  wanted Southwest Airlines to interfere with?

20  A.   No.  Not union activities.

21  Q.   All right.

22       That was my question, ma'am.  What was the

23  problem?

24  A.   I'm sorry.  I didn't understand your question.

25  Q.   You didn't understand it.  I said it very

 1  clearly.  That is your explanation?

 2  A.   Yes, sir.

 3  Q.   Okay.

 4       Tell me your confusion again.

 5  A.   My confusion was about Southwest and union

 6  activities and what that meant.  And I should have

 7  taken more time to --

 8  Q.   I'll repeat it exactly again.  See if you

 9  understand it this time.

10       As Union president and union member, it was

11  important to you that Southwest Airlines not

12  interfere with union activities, true?

13  A.   If they were protected union activities, yes.

14  Q.   Okay.  What is an unprotected union activity?

15  A.   There are things that members could choose to

16  do on their own that wouldn't be sanctioned by the

17  union that would not be considered protected union

18  activity.

19  Q.   Well, you just defined something that is not

20  union activity.

21       Tell me a union activity that you could engage

22  in that Southwest Airlines, you think it would be

23  appropriate for them to interfere with.

24  A.   If it is an official union activity, it

25  wouldn't be.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 109 of 403   PageID 13933
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                        Page 312

1        But, again, there are situations where a member

2   may choose to do something and say they are doing it

3   on behalf of the union but it is not union

4   sanctioned.

5   Q.    So a union member communicating you -- with you

6   about union activities, that is union activity,

7   right?

8   A.    If they are a member, yes.

9   Q.    What if they are not a member?  What if they're

10  an objector or opt out, that doesn't get protection

11  from your Union?

12  A.    No, that is not correct.  It just wouldn't be a

13  member communicating with the union.

14  Q.    Okay.

15       So let's talk about members, first of all, and

16  members communicating with the Union about union

17  activities.

18       You want Southwest to not be involved in that,

19  true?  Or not interfere with it?

20  A.    Could you repeat your question, please?

21  Q.    What did you hear?

22  A.    I heard Union and Southwest involvement, isn't

23  that true.

24  Q.    Okay.  Answer your question then.  I will

25  listen to your answer.

```
 1  A.   Can you not repeat your question?
 2  Q.   I have to repeat my question and your question
 3  that you heard.
 4       You are under oath today, true?
 5  A.   Yes, sir.
 6  Q.   You agree to answer your questions truthfully
 7  and without evasion?
 8  A.   Yes, sir.
 9  Q.   From this point forward, will you do that?
10  A.   Yes, sir.
11  Q.   Okay.
12       So as Union president, it was important that
13  when a union member is engaging in communications
14  with its union regarding union activities, that
15  Southwest Airlines not interfere, true?
16  A.   Yes.
17  Q.   And it is also, if I put the word "opt out
18  person or "objector, your answer would still be the
19  same, true?
20  A.   If it is a union activity, yes.
21  Q.   That was the question, ma'am.  It presumed
22  union activity.  Why did you need to add it for an
23  objector?
24  A.   I didn't.  I made a statement earlier about
25  sometimes people pretending or acting on behalf of
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 111 of 403   PageID 13935
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 314

1  the union and it not actually being union

2  activities.

3  Q.   Did -- were you the lead negotiator for a

4  Collective Bargaining Agreement with Southwest

5  Airlines?

6  A.   Yes.

7              MR. PRYOR:  Let's look at Exhibit 6.

8              I'm going to give you a couple of pages

9  from that.

10             THE COURT:  Is this for the witness only

11 or are you moving it into evidence?

12             MR. PRYOR:  I'm sorry, your Honor?

13             THE COURT:  Is this for the witness only

14 or are you moving its admission into evidence?

15             MR. PRYOR:  I will move for its admission,

16 sure.

17             THE COURT:  Okay.  Number 6.  Do we have

18 an objection to 6?

19             MR. McKEEBY:  No objection.

20             MR. GREENFIELD:  No objection.

21             THE COURT:  Okay.  6 is in evidence.

22             (The referred-to document was admitted

23       into evidence as Plaintiff's Exhibit 6.)

24             THE COURT:  You can publish to the witness

25 and the jury.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1    BY MR. PRYOR:

2    Q.    Let's look at the first page.

3          Do you recognize Exhibit 6 as the Collective

4    Bargaining Agreement between Southwest Airlines and

5    your union?

6    A.    Yes.

7    Q.    Now let's look at page SWA 07.

8          I'm going to read the first -- you negotiated

9    this, so this is your agreement, right?

10   A.    Yes.

11   Q.    And you say, "No employee covered by this

12   agreement will be interfered with, restrained,

13   coerced or discriminated against by the company or

14   the union because of membership in the union."

15         Then you say, "All employees shall be free to

16   engage in lawful union activities or to refrain from

17   such activities."  True?

18   A.    Yes.  That is the language in the contract.

19   Q.    So employees are free to engage in lawful union

20   activities.

21         Let's go to page 011.

22         In paragraph 2, it says, "Employees covered by

23   this agreement shall be governed by all company

24   rules, regulations, and orders previously or

25   hereinafter issued by proper authorities of the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 113 of 403   PageID 13937
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 316

 1  company which are not in conflict with the terms of

 2  this agreement."

 3       So all of the employees are covered by employee

 4  policies unless they are in conflict with the terms

 5  of this agreement.  True?

 6  A.   Yes.

 7  Q.   Now, let's go back to what we just read before

 8  on 07.

 9       "All employees shall be free to engage in

10  lawful union activities or refrain from such

11  activities."

12       So if an employee is engaged in lawful union

13  activities, Southwest Airlines' policies don't

14  apply.

15       That's your understanding, true?

16  A.   Yes.

17  Q.   You ran for Union president in 2013?

18  A.   No.

19  Q.   When did you run?

20  A.   For president?

21  Q.   Yes.

22  A.   2015.

23  Q.   Oh, that is right.  You ran for first or

24  second -- what office did you run for in 2013?

25  A.   I didn't run for any office in 2013.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 114 of 403   PageID 13938
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                          Page 317

```
 1  Q.   When were you -- when were you running that you
 2  were defeated and then put in the office?
 3  A.   The election of 2012.
 4  Q.   2012.
 5       So in 2012, what office were you running for?
 6  A.   First vice president.
 7  Q.   You were running for first vice president.  And
 8  were you elected?
 9  A.   No.
10  Q.   And in fact, an entire another slate of -- you
11  were in one slate of candidates and there was
12  another slate of candidates, true?
13  A.   Yes.
14  Q.   And the other slate of candidates was elected?
15  A.   Yes.
16  Q.   And then a couple, what, two or three of those
17  were kicked out of their office?
18  A.   Three were removed from their position.
19  Q.   So three were removed from office.
20       Who removed them?
21  A.   The executive board, the governing body of the
22  local union.
23  Q.   The executive board of the union.
24       So the executive board removed the three people
25  that were elected and then two others resigned?
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 318

1  A.   The two that resigned, resigned before the
2  removals of the other three.
3  Q.   So in any event, those five are out and you get
4  put into what position?
5  A.   The first vice president.
6  Q.   And then you ended up going to president
7  because that position was vacated?
8  A.   Once the president was removed, yes.
9  Q.   Okay.  And I'm sorry, I'm having trouble
10 hearing you.
11 A.   Once the president was removed from office,
12 yes.
13 Q.   Okay.
14          MR. PRYOR:  Let's look at Exhibit 24.
15          And I will move for its admission.
16          THE COURT:  Okay.  24.  Any objection?
17          I have nothing on file for 24.
18          MR. PRYOR:  Are you talking to me, your
19 Honor?
20          THE COURT:  I'm asking if there is a --
21 was 24 on the list for today?
22          Let me ask them.  I have no written
23 objection to 24.
24          So anything from Southwest or Union for
25 24?

```
 1                 MR. GREENFIELD:  No, your Honor.

 2                 MR. McKEEBY:  No objection.

 3                 THE COURT:  Okay.  24 is in evidence.  You

 4    can publish.

 5                 (The referred-to document was admitted

 6         into evidence as Plaintiff's Exhibit 24.)

 7    BY MR. PRYOR:

 8    Q.   Let me show you Exhibit 24.

 9         I'm going to start at the beginning of this

10    email string.  It's the last page.

11         By the way, it looks like it's pretty easy to

12    see these on the screen, but if you ever need a hard

13    copy of a document, just ask me, I will bring it up

14    to you.

15         Some of these emails, it might be easier at

16    times, so feel free to ask.

17         So this is an email from Charlene Carter to

18    John Parrott.

19         Who is John Parrott?

20    A.   He was the treasurer of the executive board and

21    the local union at that time.

22    Q.   He was on your team, right?

23    A.   Yes.

24    Q.   And the subject matter is "COPE."

25         Tell us what COPE is.
```

1   A.    COPE is Committee on Political Education.

2   Q.    I'm sorry?

3   A.    COPE is the Committee on Political Education.

4   Q.    So it's the committee that spends union money

5   on political activities, true?

6   A.    Yes.

7   Q.    And Charlene Carter objected to her union dues

8   being used for those type of activities, true?

9   A.    I don't know if she objected about her union

10   dues.

11        The deduction that is referenced in this email

12   was a voluntary deduction that she would have had to

13   sign up for.

14   Q.    Okay.

15   A.    It was separate from union dues.

16   Q.    So she says to Mr. Parrott, "I" -- I think it

17   should say it -- "has come to my attention that in

18   my paycheck, there is a deduction coming out for

19   COPE, and I would like to stop this from being

20   deducted ASAP."

21        Do you see that?

22   A.    Yes, sir.

23   Q.    You were aware of her request, true?

24   A.    When I received this email, yes.

25   Q.    Okay.  You became aware of her saying, "I don't

1  want to pay for these political activities," right?

2  A.   Yes.

3  Q.   Okay.  And that is her right as a union member

4  to say she doesn't want to do that, true?

5  A.   Yes.

6  Q.   So do you respect the rights of your members?

7  A.   Yes.

8  Q.   Okay.  Let's see your respect.

9       Then Mr. Parrott says -- he sends an email to

10 you and he says, "Ha.  She has been supporting the

11 thing she despises this entire time."

12      Do you recall that?

13 A.   I see it here.  I don't recall it --

14 Q.   You don't recall --

15 A.   -- back then.

16 Q.   -- the treasurer, one of your team members, is

17 belittling the request from a union member that

18 doesn't want to do this, and as a matter of fact,

19 he's belittling it even more so because you designed

20 her paycheck so that it wouldn't reveal she was

21 paying for these COPE activities and she did it for

22 years --

23           MR. McKEEBY:  Objection, argumentative.

24           THE COURT:  Sustained.

25           Please rephrase.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 119 of 403   PageID 13943
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 322

 1  BY MR. PRYOR:

 2  Q.   Are you aware that her paycheck was designed to

 3  avoid revealing to her that she was paying for these

 4  political activities?

 5  A.   No, I don't have anything to do with how

 6  Southwest Airlines lines up any payroll deductions.

 7  Q.   Okay.  You swear the Union had nothing -- it's

 8  your testimony, under oath, that the Union had

 9  nothing to do with that?

10  A.   I don't have any knowledge or part of how the

11  payroll deductions are set up between the Union and

12  Southwest Airlines.

13  Q.   Forget any knowledge.

14       Do you have any knowledge that there was an

15  arrangement with the Union to conceal from

16  Ms. Carter how her funds were being used?

17  A.   No, absolutely not.

18  Q.   You have no knowledge of that?

19  A.   No.

20  Q.   And then up above, the next email says -- by

21  the way, did you respond to this email and say,

22  "Hey, she's entitled to do that.  You shouldn't be

23  making fun of her and being happy that she's been

24  paying for something she despises."

25       Did you say that?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 120 of 403   PageID 13944
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 323

```
 1  A.    No.

 2  Q.    Why not?

 3  A.    I had no idea she'd been volunteering to COPE

 4  until this, and she was probably paying in more than

 5  the money she was getting back after she had opted

 6  out.

 7         And it was an informational email that was sent

 8  to four of us, and I didn't comment at all on it.

 9  Q.    Ma'am, I didn't ask you about Ms. Carter's

10  request.

11         I asked you about Mr. Parrott's email to you

12  belittling Ms. Carter and her request and being

13  thrilled that she's been supporting things she

14  despises this entire time.

15         She's exercising her union right.

16         This is what you get.

17         As Union president, did you tell Mr. Parrott,

18  Hey, that is inappropriate?

19              MR. McKEEBY:  Objection.  Again, this is

20  argument, not a question.

21              THE COURT:  I will allow that one.

22              THE WITNESS:  No.

23  BY MR. PRYOR:

24  Q.    Why not?

25  A.    I just didn't comment on it.
```

1  Q.   So if somebody does something clearly

2  inappropriate on your leadership team and you don't

3  comment, you don't comment because you agree?

4  A.   No.

5  Q.   Oh.  Then why didn't you comment?

6  A.   I just chose not to comment at all on the

7  thread.

8  Q.   Well, let's look at the next one.

9       Then there is an email from Cuyler Thompson.

10      Who is Cuyler Thompson?

11 A.   He was the recording secretary for the Union at

12 the time.

13 Q.   And he sends you an email as well, correct?

14 A.   It was an email thread going to everyone.  It

15 wasn't just sent to me directly.

16 Q.   Did he send it to you?

17 A.   He sent it to all of us.

18 Q.   Did he send it to you?

19 A.   Yes, I was one of the people he sent it to.

20 Q.   And so he's very comfortable sending belittling

21 comments about a union member to the president.  He

22 said, "This just made my morning."  True?

23 A.   Yes.

24 Q.   And I'm sure you responded to this one and

25 said, Hey, come on, that is not the way we treat our

1    members.

2         Is that what you said?

3    A.   No.

4    Q.   As a matter of fact, your only response was to

5    talk about your Queso dip, right?

6    A.   Yes.

7    Q.   But it doesn't end there, does it?

8         Can you tell us who Brett Nevarez is?

9    A.   He was the second vice-president of our union.

10   Q.   He's also an officer of the union, and he

11   responds, "Yum to the Queso dip."  But then he says,

12   "So typical.  Batshit dipshit cannot read her

13   paycheck."

14        He's referring to Ms. Carter, isn't he?

15   A.   Yes.

16   Q.   And did you respond to this?

17   A.   No.

18   Q.   Is that appropriate?

19   A.   No.

20   Q.   It is inappropriate.  You are willing to come

21   in to court today and say it was inappropriate.

22        But back in 2013, when there wasn't a jury in

23   the room, did you say it was inappropriate?

24   A.   No.

25   Q.   Why not?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 123 of 403   PageID 13947
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 2 July 06, 2022                     Page 326

1  A.    I just chose not to comment at all on the

2  communication.

3  Q.    You commented, you talked about your Queso dip.

4  You chose not to comment on inappropriate behavior

5  by your officers because you routinely engaged in it

6  as well?

7  A.    That is not true.

8  Q.    And then you received another email.  This was

9  from Mr. Gage.

10       So we are now covering all your officers,

11  aren't we?

12       He's another officer, right?

13  A.    Yes.

14  Q.    So we got the whole team.

15       Now the Union and the whole leadership team

16  says, "I wish you could give her a list of all of

17  the campaigns she has donated to in the last 17

18  years," exclamation point.  "Her head would

19  explode."

20       Is that appropriate?

21  A.    No.

22  Q.    And what was your response to that?

23  A.    I didn't have one.

24  Q.    You certainly knew who Charlene Carter was in

25  2013, didn't you?

```
 1  A.    Yes.

 2  Q.    And you knew she objected to your team being

 3  put in place in place of the elected leaders, true?

 4  A.    Yes.

 5  Q.    And you certainly knew she opposed the

 6  political activities that your union was involved in

 7  and didn't want her dues going there, true?

 8  A.    Yes.

 9           MR. PRYOR:  I can't close the big one.

10           MR. GREENFIELD:  Counsel, did you say 146?

11           MR. PRYOR:  146.  Sorry.

12           MR. GREENFIELD:  That's all right.

13           MR. PRYOR:  Let me make sure it is the

14  right one.  It is.

15           We move for the admission of Exhibit 146.

16           THE COURT:  Same objections as earlier?

17           MR. McKEEBY:  Yes, your Honor.

18           THE COURT:  So I am admitting 146, but I

19  will tell the jury, there is a batch of exhibits

20  that I'm admitting, but they're only as to one

21  defendant, not the other.

22           So this is one of those exhibits.  So it

23  is admissible and relevant only as to the Union not

24  as to Southwest Airlines.  So please consider it in

25  that regard.  I will make that note on the exhibit
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 125 of 403   PageID 13949
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 328

 1  list that you will also have back in the jury room.

 2              So 146 is admitted as to the Union.

 3              (The referred-to document was admitted

 4       into evidence as Plaintiff's Exhibit 146.)

 5              MR. PRYOR:  Your Honor, may I approach?

 6              (Thereupon, the following proceedings were

 7       had at sidebar:)

 8              MR. PRYOR:  First of all, let me say

 9  making a record on these sidebars is costing me time

10  to make a record.  I understand your rulings.

11              THE COURT:  So do so briefly.  You just

12  cost yourself five seconds.

13              MR. PRYOR:  We object to the Court's

14  limiting instruction.  It's relevant to our claims

15  against Southwest.

16              THE COURT:  Understood.  I will give you a

17  running objection on that for all of the buckets at

18  once.  I'm including with the limiting instruction

19  as to the Union only.

20              MR. McKEEBY:  Your Honor, not to quibble,

21  but I will, when you give the limiting instruction,

22  I think you should say "relevant to the claims

23  against the Union, not relevant to the claims

24  against Southwest."

25              I think just to say "relevant to

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 126 of 403   PageID 13950
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 329

1 Southwest" doesn't adequately communicate.

2             THE COURT:  I will clean that up.

3             MR. PRYOR:  I appreciate the running

4 objection.

5             THE COURT:  You bet.

6             (Thereupon, the sidebar was concluded and

7     the following proceedings were held in open

8     court:)

9             THE COURT:  Okay.  Just to clean up my

10 wording.  This exhibit and the ones that are like it

11 later on that I'll give this disclaimer on are

12 relevant to the claims against the Union and are not

13 relevant to the claims against Southwest.

14             With that, 146 is in evidence with the

15 limitation that I just gave you.

16             You can proceed.

17             MR. PRYOR:  Okay.  Let's go to the

18 beginning of this email string.

19             And there it is.

20 BY MR. PRYOR:

21 Q.   Okay.  This is an email from you to Sonya

22 Lacore, true?

23 A.   Yes.

24 Q.   And it's back in January of 2014.  True?

25 A.   Yes.

```
 1  Q.    Who is Sonya Lacore?

 2  A.    At the time she was a director in inflight for

 3  Southwest Airlines.

 4  Q.    Is that pretty high up at Southwest?

 5  A.    It is below -- yes, it is below vice president.

 6  Q.    Okay.  But it is high up in management.  She's

 7  not a low-level employee?

 8  A.    Correct.

 9  Q.    Okay.

10        And what is "inflight"?

11  A.    "Inflight" is the term that Southwest Airlines

12  uses to describe the department that oversees the

13  flight attendant work group.

14  Q.    The what?

15  A.    The flight attendant work group.

16  Q.    Okay.

17        And that is 15,000 or more employees?

18  A.    Yes.

19  Q.    And you send an email to Ms. Lacore, true?

20  A.    Yes.

21  Q.    And it says, "Heads up.  We have a movement of

22  objectors, those that resign their union membership

23  and receive a small reimbursement of their dues, and

24  the board agreed that a non-member of 556 cannot

25  represent TWU 556 on any 556 committee."
```

1          What you are talking about there is there are

2    joint committees between Southwest Airlines and the

3    Union, and any objectors to the Union you want off

4    the committees?

5    A.    Yes, if it is a joint union committee.

6    Q.    I'm sorry?

7    A.    Yes, if it is a joint union committee.

8    Q.    Objectors are also entitled to be represented

9    by the union, aren't they, by law?

10   A.    Yes.

11   Q.    And were you aware of whether or not this was

12   even a legal request you were making?

13         Was it legal to kick the objectors off the

14   committees, if you know?

15   A.    Yes, based on our understanding of RTW

16   international constitution and our bylaws that state

17   someone who has opted out of the union cannot attend

18   a membership meeting, cannot vote on any union

19   matters, and completely lose their voice to

20   participate in any union activity.

21         So under that, you cannot then serve on a union

22   committee if you cannot participate in union

23   activities.

24   Q.    I understand you're telling me your

25   International Union rules, and I appreciate that

 1  very much.
 2       That doesn't happen, however, to be the law of
 3  the land.
 4       I'm asking you, legally --
 5           MR. GREENFIELD:  Objection, your Honor.
 6           THE COURT:  So I'll put a pin in this,
 7  that all of the law will come from me at the end of
 8  the case.
 9           So if a lawyer ever tells you, that is not
10  the law, then wait to hear the law from me.
11           With that, you can proceed.
12  BY MR. PRYOR:
13  Q.   Well, let me ask that question that your
14  counsel wants to ask.
15       So do you think that the International Union is
16  the law of the United States of America?
17  A.   No.
18  Q.   Okay.  Let me ask you about the law of the
19  United States of America.
20       Did you have any understanding as to whether or
21  not what you were requesting was even legal?
22  A.   I'm not an attorney and I'm not allowed to talk
23  about anything that is attorney-client privilege.
24  Q.   So you did speak to an attorney about whether
25  or not this was legal, but you just aren't going to

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 130 of 403  PageID 13954
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 333

 1  tell us what he or she said?

 2  A.    Yes.

 3  Q.    Okay.  And did you proceed forward knowing that

 4  in fact what you were requesting was illegal?

 5  A.    No.

 6            MR. GREENFIELD:  Same objection, your

 7  Honor.

 8  BY MR. PRYOR:

 9  Q.    So you had advice --

10            MR. PRYOR:  I'm sorry, what was the

11  objection?

12            THE COURT:  The objection was on framing a

13  legal conclusion.

14            So I will allow you to ask that question.

15  BY MR. PRYOR:

16  Q.    Tell me the name of the attorney you spoke to.

17  A.    Ed Cloutman.

18  Q.    This gentleman right over here?

19  A.    Yes, sir.

20  Q.    And the Union attorney told you this was a

21  legal request?

22            MR. GREENFIELD:  Objection, your Honor.

23  Ms. Stone has clearly testified that there is

24  attorney-client privilege existing.

25            THE COURT:  Sustained.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 131 of 403   PageID 13955
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 334

 1  BY MR. PRYOR:
 2  Q.   Then it says, "The board agreed."
 3       When you say "the board" in this email, who is
 4  the board?
 5  A.   The executive board is the governing body of
 6  the Union, of Local 556.
 7  Q.   So these people that were ridiculing Ms. Carter
 8  in the emails that we looked at first, that is who
 9  they are?
10  A.   They are some members of the executive board.
11  Q.   Certainly that group.
12       Who are we missing?
13  A.   The executive board had 17 flight attendants on
14  it.
15  Q.   Oh, I don't want all of them.
16       So all 17 of them agreed?
17  A.   Yes.
18  Q.   And then it says, "Kent Hand on CISM, and we
19  instructed Eileen to let him know he couldn't serve.
20  He's trying to cause her problems."
21       And the problems he was causing her is he
22  didn't want to resign from the committee.
23       Is that the problem?
24  A.   He was very aggressive when she spoke with him,
25  and she was very upset after the conversation and

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 132 of 403   PageID 13956
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 335

1  very rattled.

2  Q.   So you send this to -- by the way, you say,

3  "Sorry to bring more Union drama your way."

4       What is the "more" referring to?

5  A.   This was six months after we had just had what

6  I think anyone would call Union drama when two

7  officers resigned and the other three were removed

8  from their positions.  Our Union had been in

9  upheaval in 2013.

10      And it was widely known with Southwest and

11  other unions that we had had a very dramatic year

12  with the Union, and it was right on the heels of

13  that.

14  Q.   And not only that, it led to a movement of

15  objectors, people who were in the union, that were

16  so upset that they resigned.  They still paid dues,

17  they are still entitled to be represented, but they

18  resigned?

19  A.   Yes.

20  Q.   And then let's look at Ms. Lacore's response.

21      She says, "I'm sorry you are having to deal

22  with it.  Let me know if there is anything I can do

23  to assist."

24      That is part of what she said, right?

25  A.   Yes.

1  Q.   And why did you send this to her to begin with?

2  You thought Southwest should be the one to take

3  against a union objector?

4  A.   No, absolutely not.

5       All of the joint committees between Southwest

6  and the Union have a liaison from both the Southwest

7  side and the Union side that will coordinate with

8  the committee, that work on budgets, who is going to

9  pay what.

10       And at the time, Sonya Lacore was the liaison

11  for Southwest for the critical incident stress

12  management committee.

13  Q.   So you weren't asking Southwest Airlines to

14  remove these people from the committee, correct?

15  That was something the union would do?

16  A.   Correct.  I was just informing them that he

17  could no longer serve on that union committee

18  because he was a non-member.

19  Q.   And then you respond to her and say, when she

20  says, "What can Southwest Airlines do to assist

21  you?"

22       You then say, "You may want to leave your

23  directors" -- I assume that means let -- "let your

24  directors and base managers know as well that any

25  non-member of TWU may not be a representative of

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 134 of 403   PageID 13958
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 337

1  Local 556.  This would apply to meetings as well."

2       You are not asking her to make sure they are

3  not on there?

4  A.   No.

5  Q.   Then what was the point of telling her that?

6  A.   Because we had discussed that if -- a flight

7  attendant always has the right, we allow them to

8  take in any representative that they would like, if

9  Southwest Airlines members and management are

10 calling them in for any investigation or meeting.

11      However, if it is not someone that is an actual

12 union representative that has been trained to be a

13 union representative to represent someone in a

14 meeting, then they are just simply there as support

15 and not an actual representative, an agent of the

16 union.

17      And, again, someone that had opted out of the

18 union cannot serve in a union capacity to officially

19 represent someone in a meeting with Southwest

20 Airlines.

21 Q.   So you know that objectors had to file a

22 lawsuit for their rights to be protected, to be

23 represented on joint committees?

24           MR. GREENFIELD:  Objection, your Honor.

25 Lack of foundation.

```
 1              THE COURT:  Sustained.

 2   BY MR. PRYOR:

 3   Q.   Do you know?

 4        I'm trying to lay the foundation.

 5        He doesn't have the answer, ma'am.  I'm asking

 6   for your testimony.

 7        Are you aware?  All you have to do is tell the

 8   truth.

 9   A.   I am aware that there was a lawsuit filed, yes.

10   Q.   What was so difficult and why did you have to

11   look over here to answer my question?

12   A.   Because, sir, he raised an objection.  Judge

13   Starr said "sustained," and I was just for a second

14   trying to remember if that meant I needed to answer.

15   This is my first time testifying in court, so it

16   just took me a second to process that.

17   Q.   I understand that process.

18        I'm just wondering why you needed to look at

19   the Union table to process that.

20   A.   I looked at the Union table because he raised

21   an objection and stood up.

22   Q.   Are you being represented by counsel today?

23   A.   Yes.

24   Q.   So do you know what happened with that lawsuit

25   that had to be filed because of the action you took
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 136 of 403   PageID 13960
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 339

1  with Southwest Airlines?

2          MR. GREENFIELD:  Objection, your Honor.

3          Anything that stems from this discussion

4  is related to --

5          THE COURT:  Sidebar if you want to phrase

6  it.

7          (Thereupon, the following proceedings were

8      had at sidebar:)

9          MR. GREENFIELD:  Mr. Cloutman is going to

10  join us for the conversation.  He was a part of

11  this.

12          THE COURT:  Understood.

13          MR. CLOUTMAN:  May I speak?

14          THE COURT:  Sure.  Yeah, you may speak.

15          MR. CLOUTMAN:  There was a lawsuit filed,

16  and it was the subject of a confidential settlement.

17  We can't get into the terms of who shot John at all

18  about the terms of the settlement.  I think counsel

19  knows that.

20          MR. PRYOR:  First of all, I don't know

21  that, but I accept it --

22          MR. CLOUTMAN:  Now you do.

23          MR. PRYOR:  I was going to say, I accept

24  your representation, but I don't accept that it

25  overrules evidence in a federal court proceeding.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 137 of 403   PageID 13961
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 340

 1   That is not confidential from this proceeding.

 2              MR. CLOUTMAN:  Yes, it is.  It absolutely

 3   is.  It's been filed in federal court and approved

 4   by a federal judge.

 5              THE COURT:  Well, I'm not going to bust it

 6   up, but I will let you ask if you know the outcome,

 7   right?  And if her answer is there was a settlement

 8   that was confidential and remains confidential, it

 9   is what it is.

10              MR. PRYOR:  I will just do that.

11              MR. GREENFIELD:  Can we instruct the

12   witness on that?

13              THE COURT:  I will instruct the witness --

14   well, you ask the question, and I will say that the

15   witness can answer this question.

16              MR. PRYOR:  So I ask broad-based, and then

17   you will limit with your instruction?

18              THE COURT:  Correct.

19              (Thereupon, the sidebar was concluded and

20         the following proceedings were held in open

21         court:)

22              THE COURT:  Okay.  You can ask your next

23   question, then I will give an instruction to the

24   witness, and then you can answer.

25              How about that?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 138 of 403   PageID 13962
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 341

1  BY MR. PRYOR:

2  Q.   Ma'am, isn't it true that you do know what

3  happened, what the outcome of that lawsuit was, and

4  the illegality of your actions?  True?

5            THE COURT:  So I will tell the witness

6  that the witness can answer if you know of a

7  settlement but you cannot reveal the contents of

8  that settlement.

9            THE WITNESS:  All I know is that there was

10  a settlement done through the insurance company.  I

11  don't know any details of what that looked like.  I

12  wasn't a part of that.

13            MR. PRYOR:  Okay.  Thank you.

14            Exhibit 25.  We move for its admission.

15            THE COURT:  25.  I see the objections from

16  this morning.

17            Does the Union need a sidebar?  I know

18  what I'm going to do with 25.

19            MR. GREENFIELD:  I'm pulling the document

20  up right now, if I may have a moment.

21            THE COURT:  You bet.

22            MR. GREENFIELD:  If we could have a

23  sidebar, your Honor.

24            THE COURT:  You may.

25            (Thereupon, the following proceedings were

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 139 of 403   PageID 13963
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 342

1           had at sidebar:)

2                MR. GREENFIELD:  I would just like to know

3    what your Honor is planning on doing before we --

4                THE COURT:  I think a couple of hearsay

5    exceptions apply, so I plan on overruling the

6    hearsay objection.

7                MR. GREENFIELD:  Thank you.

8                (Thereupon, the sidebar was concluded and

9        the following proceedings were held in open

10       court:)

11               THE COURT:  All right.  I'm admitting 25

12   into evidence over the objection.

13               You can publish it to the jury.

14               (The referred-to document was admitted

15       into evidence as Plaintiff's Exhibit 25.)

16   BY MR. PRYOR:

17   Q.   Let's look at Exhibit 25, the second page.

18        Do you want to see the first page before the

19   second page so you can see what this --

20        Do you recognize this or do you want to see the

21   first page?

22   A.   I don't have anything on my screen yet.

23   Q.   I'm sorry?

24   A.   I don't have anything on my screen yet.

25   Q.   There's nothing on your screen?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 140 of 403   PageID 13964
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 343

```
 1                    MR. PRYOR:  Let's get 25 on there.

 2                    Can you hand me Exhibit 25?

 3                    THE COURT:  It is up now.

 4    BY MR. PRYOR:

 5    Q.   Okay.  There is the first page.

 6         Let me show you -- let's go to the second page.

 7         And this -- did you want a copy of this?

 8    A.   I can see it now, thank you.

 9    Q.   Okay.  So can you tell me what this second page

10    is?

11    A.   It looks like a post that Ms. Carter made

12    somewhere.

13    Q.   That is right.  It is a post that Ms. Carter

14    made.

15         And she says, among other things, "I am so mad

16    at the past really.  I am just so tired of the same

17    old stuff from this union being thought about with

18    Thom McDaniel."

19         Then goes on to say, "And that is, I am a

20    non-member objector.  I would love to start the card

21    drive to get rid of TWU."

22         So Ms. Carter has made a post somewhere that

23    she's upset with her union and she wants a card

24    drive to get rid of TWU, right?

25    A.   Yes.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 141 of 403   PageID 13965
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                          Page 344

```
 1  Q.   And "getting rid of TWU," another phrase for

 2  that is decertification, right?

 3  A.   Yes.

 4  Q.   By the way, are you aware that one of your

 5  officers previously threatened Ms. Carter when she

 6  said there should be decertification?

 7  A.   Threatened?  No.

 8  Q.   Yes.

 9       Tell her that she would be kicked out of the

10  union and lose her job?

11  A.   No.

12  Q.   You are not aware that Cuyler Thompson did

13  that?

14  A.   No.

15  Q.   All right.

16       Do you know how this post of Ms. Carter's ends

17  up being in an email from Brian to you?

18            MR. PRYOR:  Next page.

19  BY MR. PRYOR:

20  Q.   This is from Brian to -- is that to you or is

21  it to Brett Nevarez?

22            MR. PRYOR:  Do we have an unredacted

23  version?

24  BY MR. PRYOR:

25  Q.   Eventually, in any event, it ends finding its
```

```
 1   way to you, right?

 2   A.   It went to -- it looks like it was forwarded to

 3   me along with four other people.

 4   Q.   Okay.  Well, when Southwest or the Union

 5   produced this, they blacked out these things.

 6        I don't know who the "to" is.  Do you?

 7   A.   The "to" on my document says "Audrey Stone" --

 8   at the very top --

 9   Q.   I'm talking about below where it is blacked

10   out.

11        Is that some kind of state secret as well?

12   A.   I don't know.  I don't know who it was sent out

13   to.

14   Q.   In any event, you received this.

15        And who is Brian?

16   A.   A flight attendant at Southwest.

17   Q.   Is that it?

18        Is that all you can tell us about him?

19        Tell us about Mr. Talburt, ma'am.

20   A.   He's a long-time very senior flight attendant

21   at Southwest Airlines.

22   Q.   Okay.

23        How about his union activity?

24        You didn't mention that, so I will ask.

25   A.   He was very supportive of our administration
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 143 of 403   PageID 13967
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 346

1  when we were in office.

2  Q.   Very supportive.  Wouldn't you put that in all

3  caps?

4       That is an understatement, right?

5  A.   I don't know that it is an understatement.  I

6  just -- he was -- he was supportive.

7  Q.   Hmm.

8       So he was just supportive.

9       Did you have a core team?

10 A.   Yes.

11 Q.   And you had a core team that had a secret

12 Facebook page, correct?

13 A.   A private Facebook page.

14 Q.   The actual setting is secret, isn't it, ma'am?

15      There is public, private and secret.  You are

16 telling me it wasn't secret?

17 A.   I didn't set it up, and I'm not Facebook savvy.

18 I did not know it went private and secret.  I just

19 knew that it was a --

20 Q.   But wait.  No, no.  You just told us under oath

21 it was private.  Now you are telling us you don't

22 know if it was private or not?

23 A.   No, no, no.  I said I knew it was private.  I

24 don't understand the different settings between

25 private and secret and what that looks like in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 144 of 403   PageID 13968
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 2 July 06, 2022                    Page 347

1  Facebook.

2  Q.   But it was your understanding that no one could

3  get on that Facebook page except your core team

4  members?

5  A.   It was only people that were -- that were on --

6  would have been -- had to have been added by an

7  admin.

8  Q.   That's right.

9       And it was during your campaign and it was your

10 inner circle, true?

11 A.   No.  There were actually flight attendants on

12 there that I did not know well at all.

13 Q.   That weren't supporting you?

14 A.   There were flight attendants that had personal

15 relationships with other people on my team that may

16 have been supporting them, but again, weren't people

17 that -- it wasn't just my inner circle.  There were

18 people I did not know well.

19 Q.   Mr. Talburt certainly knew you, right?  You

20 knew him.

21 A.   Yes.

22 Q.   And you also appointed him to the CAN

23 committee, right?

24 A.   Yes.

25 Q.   And that's the committee that is supposed to

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 145 of 403   PageID 13969
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                        Page 348

 1  keep flight attendants informed about the efforts of

 2  the union in the collective bargaining process?

 3  A.    Yes.

 4  Q.    That was an important position, wasn't it?

 5        Is it unimportant?

 6  A.    No, it was an important role.

 7  Q.    Is there some reason you are hesitant to praise

 8  all of the work that this very supportive member of

 9  your core team was involved in?

10  A.    No.

11  Q.    Okay.  Well, then, why can't you tell us, he's

12  a great guy, he supported me?

13  A.    I -- I already stated that he was a big

14  supporter throughout my administration.

15  Q.    So Mr. Talburt sends you this post of

16  Ms. Carter's.

17        Do you know how he got it?

18  A.    I don't.

19  Q.    You don't know where it came from?

20  A.    No.

21  Q.    And then Mr. Nevarez, I think -- what did you

22  say -- he was second vice president at the Union?

23  A.    Yes.

24  Q.    He sends an email to you, and to others,

25  including Mr. Parrott, "Cuyler's favorite is

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 146 of 403   PageID 13970
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 349

1   threatening to decert now that she is not a member

2   and cannot be charged.  I'm contacting legal counsel

3   and will keep you advised."

4        What did you understand that to mean?

5   A.   I understood it to mean that he was going to be

6   checking with legal counsel on if there were any

7   ramifications regarding someone that had already

8   opted out that was trying to decert, because under

9   our TW international constitution, decertification,

10  you can have charges brought against you within the

11  Union for attempting to decertify.

12       But when you are not a member, there was a

13  question of what did that even mean and, you know,

14  could you bring even charges against somebody that

15  was a non-member.

16  Q.   Well, let's not forget the first sentence.  And

17  I will get to the second one.

18       "Cuyler's favorite is threatening to decert now

19  that she is not a member and cannot be charged."

20       Cuyler Thompson, the person that I've told

21  you -- you say you don't know -- threatened

22  Ms. Carter when she was a union member, and her

23  favorite -- I'm still over here, ma'am.

24            MR. PRYOR:  Do you need something?

25            MR. GREENFIELD:  Yes.  I would like to

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 147 of 403   PageID 13971
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 350

 1  make an objection.  He keeps testifying about facts

 2  not in evidence about this threat.

 3           THE COURT:  I will sustain that.

 4  BY MR. PRYOR:

 5  Q.   So, Mr. Cuyler -- or Mr. Nevarez is referencing

 6  that Mr. Cuyler's favorite thing is threatening

 7  members that mention decertification, but now that

 8  Ms. Carter is not a member, she cannot be charged.

 9       Isn't that what is being said there?

10  A.   No.  This email does not say Cuyler is

11  threatening.

12  Q.   What is it talking about then?

13  A.   It sounds like Cuyler's favorite, referring to

14  Ms. Carter, that she's threatening to decert now.

15  Q.   And she's not a member and cannot be charged.

16       So the threatening that cannot be charged

17  doesn't then fit, does it?  If it is talking about

18  her favorite.

19  A.   No.  That she's Cuyler's favorite.

20  Q.   Why is it mentioning -- oh, I see.

21       You are saying that Ms. Carter is Cuyler's

22  favorite.

23  A.   Yes.  There is nothing in here about Cuyler

24  threatening anyone.

25  Q.   Okay.  So they were close friends?

1  A.    No.

2  Q.    Wait.  It just says that she's Cuyler's

3  favorite.

4  A.    I believe he was being sarcastic.

5  Q.    Oh, okay.

6        And then it says, "I'm contacting legal

7  counsel."

8        So you are contacting legal counsel because

9  Ms. Carter has posted something that is related to

10 her union stating that she's fed up with them and

11 you need a better union, let's just rid of this one.

12       And so you are seeking legal counsel and what

13 you can do against her, in February of 2014, right?

14 A.    I wasn't.

15 Q.    I'm sorry?

16 A.    I said I wasn't.  Brett said he was going to.

17 Q.    Oh, I'm sorry.  Of course.  You told Brett

18 Nevarez to stop.

19       You got an email saying that, right?

20 A.    No.

21 Q.    Oh, I thought you -- okay.  Did you disagree

22 with him?

23 A.    No.  I thought contacting legal counsel for

24 advice was the appropriate thing to do.

25 Q.    Okay.  What action was taken?

1  A.    There was no action taken.

2  Q.    You sure wanted to, though, right?

3  A.    No.

4  Q.    You didn't?

5        Is that what you are saying, you didn't want to

6  take action against her?

7        Then why were you seeking legal counsel to take

8  action against her?  Those don't make sense.

9  A.    Any time any comments about decertification

10 came up, we sought the guidance of TW international

11 and legal counsel as leaders of the union.

12 Q.    I just want to make sure I understand.

13       You didn't want to take legal action against

14 her, and when Mr. Nevarez suggested, let's check

15 with legal counsel and see what we can do, you

16 didn't agree with that?

17 A.    That is not what I said.  I said I thought it

18 was a good idea for him to seek legal counsel's

19 advice on what, if anything, needed to be done.

20 Q.    So you wanted to do something?

21 A.    No.  I wanted to see if there was something we

22 should be doing as leaders of the union.

23 Q.    Something you might be required to do, is that

24 what you were worried about?

25 A.    Yes.  Under the constitution and our bylaws,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 150 of 403   PageID 13974
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 353

1   there is a lot of things leaders of the Union are

2   required to do.

3   Q.   Against an objector that thinks the Union

4   should be decertified, there is a lot of things in

5   the constitution?

6   A.   No.  In general, as union leaders, and there

7   are responsibilities when it comes to something

8   regarding decertification.  Our TWU constitution

9   speaks to it.

10               MR. PRYOR:  Let's look at Exhibit 26.

11               We move for its admission.

12               Don't display it yet.

13               MR. McKEEBY:  No objection from Southwest.

14               THE COURT:  Pending Union's written

15   objection, I'm happy to rule, unless you want to a

16   sidebar.

17               MR. GREENFIELD:  Very briefly.

18               (Thereupon, the following proceedings were

19       had at sidebar:)

20               MR. GREENFIELD:  I just didn't get what

21   your basis for the hearsay objection was on the

22   first one, and I wanted to make sure I preserved the

23   record as to what -- I presume you are going to have

24   an exception --

25               THE COURT:  All I have to do is overrule

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 151 of 403   PageID 13975
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 354

 1   it.  I don't have to say which ground.

 2           But I think there is a hearsay exception

 3   that applies.  I can't remember which one, that

 4   Carter argued in its status report, but I thought

 5   that exception applied.

 6           Relevance, I will say it's marginal

 7   relevance at best.  If you want to use it, you may

 8   burn your time.  But you may understand it better

 9   than I do.

10           So I'll overrule the objection.

11           MR. PRYOR:  I'm worried about your list of

12   time now.  I thought it was relevant.

13           (Thereupon, the sidebar was concluded and

14       the following proceedings were held in open

15       court:)

16           THE COURT:  Okay.  I'm admitting 26 over

17   objection.

18           You can publish to the jury.

19           (The referred-to document was admitted

20       into evidence as Plaintiff's Exhibit 26.)

21   BY MR. PRYOR:

22   Q.   All right.  Let's look at Exhibit 26.

23       And this is an email from Brian Talburt, the --

24   I'm not sure how to characterize him now.

25       A good supporter of yours, right?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 152 of 403   PageID 13976
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 355

 1  A.    Yes.

 2  Q.    And he seems to email you stuff.

 3        Is that part of his role, to gather information

 4  and send it to you?

 5  A.    No.  I received emails from a lot of members

 6  every single day.

 7  Q.    Just like this one, right?

 8  A.    Yes.

 9  Q.    Okay.  So Mr. Talburt is saying that "While it

10  has nothing to with the topic at hand, it's an

11  illustration of casual behind-the-scenes

12  conversations we have and particularly regarding

13  social media.

14        "I, along with Mike and Sonya, had a meeting

15  last summer with VDV to discuss social media as a

16  tool."

17        Who is Mike?

18  A.    I am assuming, based on the bottom of the

19  original message, Mike Hafner.

20        There's numerous Mikes at Southwest, but since

21  Mike Hafner's name is below, I'm assuming that is

22  who he's referring to.

23        And at that time he would have been, if it is

24  Mike Hafner, the vice president of inflight for

25  Southwest.

1  Q.   By the way, you make a really good point.

2       There is an original message from Mike Hafner,

3  and he's the head of inflight at Southwest Airlines,

4  right?

5  A.   Yes.

6  Q.   Where is his email?

7  A.   I don't know.

8  Q.   Have you seen it?

9  A.   No.

10 Q.   It's not here, is it?

11 A.   It's not displayed on the screen that I'm

12 looking at, no.

13 Q.   We are more than happy to allow that be

14 produced at any time.

15           MR. GREENFIELD:  Objection, your Honor.

16           This is their own exhibit.  There is no

17 evidence that something wasn't produced, and I don't

18 appreciate that insinuation to the jury.

19           THE COURT:  I will strike that.

20           You can proceed.

21 BY MR. PRYOR:

22 Q.   And Mike Hafner, and then Sonya -- is that

23 again Sonya Lacore?

24 A.   I would assume so, yes.

25 Q.   I'm sorry?

```
 1  A.    I would assume so, yes.
 2  Q.    Okay.  Were there a lot of other Sonyas that
 3  you dealt with at Southwest Airlines in management?
 4  A.    In management, no.
 5  Q.    And who is VDV?
 6  A.    I'm not certain.
 7  Q.    Okay.  And if it turns out to be someone that
 8  everyone recognizes as the COO of Southwest
 9  Airlines, you are telling us, as Union president in
10  2014, that would be a shock to you?
11  A.    Yes.
12  Q.    Okay.
13  A.    Not that VDV --
14  Q.    That is fine.  It is shocking to you.  We will
15  recall.
16        Are you changing that?
17  A.    No, I wasn't finished.
18        He's referencing a meeting that took place.
19  I'm not certain I was even president yet because
20  he's referencing a meeting that took place the
21  previous summer, which was around the time the
22  changeover was happening in our union.
23  Q.    That wasn't my question.
24        My question was who is VDV, and you said you
25  don't know.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 155 of 403   PageID 13979
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 358

 1  A.   I'm not sure.

 2  Q.   Oh.

 3  A.   I didn't have a conversation.  It could have

 4  been Mike Van de Ven.  I don't know.

 5  Q.   What is that name again?

 6  A.   Mike Van de Ven.

 7  Q.   Mike Van de Ven?

 8       And what was his position at Southwest

 9  Airlines?

10            THE COURT:  We've got to keep more

11  separation between questions and answers to keep a

12  clean record.

13            You can answer, if you know.

14            THE WITNESS:  At the time he was one of

15  the executive officers.  I think he was the chief

16  operating officer.

17  BY MR. PRYOR:

18  Q.   Okay.  When you told me you were not going to

19  be evasive at the beginning of our conversation, I

20  asked you about who VDV is, and you said you are not

21  sure.

22  A.   I'm not 100 percent sure.  I am making

23  assumptions because I wasn't a part of the meeting

24  and I did not have a conversation with Brian about

25  this meeting.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 156 of 403   PageID 13980
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 359

 1  Q.   There must be lots of other VDVs, right, just

 2  like there must be a lot of other Sonyas.

 3       You don't know who he's talking about.  You

 4  can't be sure.  Right?

 5  A.   I'm assuming.

 6  Q.   Well, you are assuming after I forced you to.

 7  You wouldn't assume it before, would you?

 8       Are you being evasive?

 9  A.   No.

10            MR. PRYOR:  Let's look at exhibit --

11  BY MR. PRYOR:

12  Q.   By the way, why are you being -- well, why are

13  you reluctant to say that Brian Talburt is having

14  behind-the-scenes conversations with senior

15  management of Southwest Airlines about using social

16  media as a tool?

17       Why would you be concerned about that?

18  A.   You asked me about knowing about it, and I was

19  trying to explain that I did not know about this

20  meeting and I wasn't a part of it and I didn't

21  participate in it, so I don't have intimate

22  knowledge about this.

23  Q.   Okay.

24       And it's your testimony, under oath, and your

25  credibility can be viewed in this context, that you

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 157 of 403   PageID 13981
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 360

1   weren't trying to be evasive about knowing who VDV

2   is, true?

3   A.   Yes.  I was not trying to be evasive.

4   Q.   All right.

5              MR. PRYOR:  Let's look at Exhibit 27.

6              And we move for its admission.

7              THE COURT:  I have Union objections from

8   this morning.

9              Anything from Southwest?

10             MR. McKEEBY:  No objection from Southwest.

11             THE COURT:  I know my ruling.

12             Do you want a sidebar?

13             MR. GREENFIELD:  No, your Honor.

14             THE COURT:  I will overrule on two hearsay

15  exception grounds and admit it into evidence.

16             You can publish 27.

17             (The referred-to document was admitted

18        into evidence as Plaintiff's Exhibit 27.)

19  BY MR. PRYOR:

20  Q.   Ma'am, do you want a hard copy of this email

21  string?

22        It is several pages long.

23        Do you recognize it?

24  A.   Yes.

25  Q.   Okay.

 1  A.    What is up here?

 2  Q.    Let's go to the beginning of this email.

 3        And it's forwarding a very long dissertation by

 4  someone, apparently Mike Casper -- oh, yes, it is

 5  Mike Casper -- with a whole host of complaints about

 6  Local 556.

 7        Do you see that?

 8        I'm happy to read them if you want me to read

 9  all of his complaints.

10        Okay.  I will try a few.

11        "Hold the executive board and the rest of the

12  residents of our union accountable.  A resounding no

13  vote is an acceptable thing.

14        "11 of those 15 positions, the incumbents were

15  not reelected by a very wide margin.  It wasn't even

16  close.  Many of these incumbents were entrenched for

17  years and years."

18        It goes on.

19        "The new executive board went about their way

20  and assumed their positions with high hopes and then

21  they were kicked out."

22        Do you want me to read more, or do you accept

23  that Mr. Casper was writing and complaining about

24  Local 556?

25        Would that be accurate?

 1  A.    Yes.

 2  Q.    Okay.   That's union activity, right?

 3  A.    He's expressing his opinion about union

 4  activity.

 5  Q.    No, no.   Him expressing his opinion is union

 6  activity, true?

 7  A.    I think so.

 8  Q.    You think so.

 9        As union president, someone is expressing their

10  opinion about the union to another union member, and

11  you think so, you don't know so, that that is

12  protected union activity, right?

13  A.    I guess I'm stuck on activity and being

14  actually union activity taking action, and

15  conversations between members, expressing their

16  views about a union, yes, that would be --

17  Q.    Well, if we are talking about being stuck, I'm

18  stuck on a union president that isn't willing to say

19  that a union member has the right to object to her

20  union and it be union activity.

21  A.    Yes.

22  Q.    You said, "I think so."

23             MR. PRYOR:   All right.   So let's go to --

24  it is page 98.

25             MR. GREENFIELD:   Page 98?   Okay.   I

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 160 of 403   PageID 13984
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 363

 1  thought we were talking about another exhibit.  I'm

 2  sorry.

 3              MR. PRYOR:  We are on that page.

 4  BY MR. PRYOR:

 5  Q.   Okay.  So this is from Tina.  And who is Tina?

 6  A.   Tina Coffee was a board member at that time.

 7  Q.   How were you able to recognize Tina and tell us

 8  who Tina was?

 9       There's got to be other Tinas there.

10       Are you sure it's the right Tina?  You weren't

11  sure about VDV.

12  A.   The previous screen had her initials on it and

13  she was a board member, so I worked very closely

14  with her.

15  Q.   So a board member is forwarding this to

16  someone.  It says it is to -- do you see on page 99?

17       It might be better if you had a copy.

18              MR. PRYOR:  Can I approach the witness,

19  your Honor?

20              THE COURT:  You may.

21              MR. McKEEBY:  Thank you.

22  BY MR. PRYOR:

23  Q.   Where it says "to" -- oh, there it is right

24  there.

25       Who is it being forwarded to?

 1  A.   I'm not sure.

 2  Q.   Okay.

 3           THE COURT:  We can't hear you if you are

 4  not at a mic.

 5  BY MR. PRYOR:

 6  Q.   Do you know why the name of who that was

 7  forwarded to is blacked out?

 8  A.   No.

 9  Q.   All right.  Let's go back to, then your board

10  member then sends it to Brian Talburt.

11       Is that right?

12  A.   No.

13  Q.   Mr. Nevarez sends it?

14  A.   It looks like it was a Rocky Mountain that sent

15  it to Mr. Talburt, if I'm reading it correctly.

16  Q.   Okay.  We will get to Rocky Mountain.

17       I'm talking about the one right above where it

18  says, "Leg-breaking time for Casper the Ghost scab."

19       That was written by Mr. Nevarez, correct?

20  A.   Yes.

21  Q.   And you received this email string, correct?

22       Surely you remember someone threatening to

23  break the leg and calling someone a scab.

24  A.   Yes.

25  Q.   By the way, "scab" is a very derogatory term to

1 | a union member or a union supporter, true?

2 | A.    "Scab" is a term used to describe someone who

3 | has opted out of the union or who crosses a picket

4 | line.

5 | Q.    So "scab" is not a derogatory term to you as

6 | former union president, right?

7 |       It's just a descriptive term --

8 | A.    Yes.

9 | Q.    -- as opposed to saying someone crossing a

10 | picket line.

11 |       That scab is not a negative derivation of that,

12 | right?

13 | A.    It's a descriptive term to describe behavior

14 | that is -- someone that has voluntarily chosen to

15 | not support the union or opt out of the union.

16 | Q.    Okay.  But it is not a derogatory term, right?

17 | A.    It is not complimentary --

18 | Q.    Well, wait a minute.

19 | A.    -- but it is a descriptive word.

20 | Q.    So as a union member, you are sitting here

21 | telling this jury that referring to someone as scab,

22 | scab is not really negative.  It's not positive,

23 | it's not negative.  Right?

24 | A.    I'm saying it is a fact of a description of

25 | somebody, the actual definition of it.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  Q.   Okay.  Listen to my question.  I'm going to

2  give you your chance.

3       Is using the term "scab" to refer to someone a

4  negative term?

5  A.   Somebody could consider it negative, yes.

6  Q.   Okay.

7       How many questions did it take me to get you to

8  admit the basic fact that "scab" is a negative term?

9  Tell me.  I think it is four or five.

10      Why was that so hard?

11      Because your second vice president is referring

12  to a member of the union as a scab, right?

13 A.   Someone that has opted out of the union isn't a

14 member.

15 Q.   Are you telling me Mike Casper had opted out?

16 A.   I don't know if he had opted out at this point.

17 Q.   Then let's just stick with what you do know.

18      Mike Casper represents himself as a union

19 member at this time.  You can read what he writes.

20      You are telling me, maybe he wasn't?  But

21 listen --

22 A.   He opted out at one point and he was not a

23 member.

24 Q.   But whether he had opted out or not, he never

25 crossed a picket line, did he?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 164 of 403   PageID 13988
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 367

1    A.    Not to my knowledge.

2    Q.    Okay.  So this is just -- just more negative

3    connotation about anyone that opposes union

4    leadership, true?

5    A.    We just have different opinions on what the

6    definition of "scab" is.

7    Q.    Oh, I thought we came to an agreement.

8          It turns out once again now it went from being

9    positive, neutral, negative, now it is positive

10   again?

11   A.    No.  I'm just saying that someone that hasn't

12   crossed a picket line, that's not the only

13   definition of somebody that can be a "scab."

14   Q.    So when you received this email where your

15   second vice president refers to leg-breaking time

16   for Casper the Ghost scab for having the temerity to

17   object to his union's activities, what did you do?

18   A.    I spoke to Brett.

19   Q.    You did?

20   A.    Yes.

21   Q.    You spoke to who?

22   A.    Brett.  Mr. Nevarez.

23   Q.    And you told Brett, Don't do that?

24   A.    I told him he shouldn't be even making jokes

25   like that and shouldn't be talking that way about

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 165 of 403   PageID 13989
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 2 July 06, 2022                         Page 368

 1  anyone.
 2  Q.   Isn't, in fact, what you told him is, Don't put
 3  it in writing?
 4  A.   I told him he shouldn't be talking, period,
 5  that way.
 6  Q.   Let me just get an answer to my question.
 7       Didn't you, in fact -- have you spoken to
 8  Mr. Nevarez recently?
 9  A.   No.
10  Q.   Didn't you, in fact, tell him he shouldn't be
11  putting that type of thing in writing?
12  A.   I always told my team that anything they put in
13  writing, they needed to be prepared that it should
14  be something they would be comfortable with the
15  public seeing, and if they weren't, don't put it in
16  writing.  That was what I told everyone in Union
17  work.
18  Q.   All right.
19       So by the way, those previous emails we looked
20  at, did you tell Mr. Nevarez back then, and
21  Mr. Thompson and whoever else was making fun of
22  Charlene, and the fact they misused her dues, did
23  you tell them, Hey, don't put that kind of stuff in
24  writing, that's improper?
25  A.   No.  And they didn't misuse her union dues.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 166 of 403   PageID 13990
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 369

1  Q.   You just told us, whenever they do something

2  improper in writing, you told us that was improper

3  at the time.  You said, Yeah, they shouldn't have

4  said that.

5       Surely you told them, Don't put that in

6  writing, and yet here we go again, here it is.

7       Are they just not listening to you?

8  A.   I don't control Mr. Nevarez.

9  Q.   So Mr. Nevarez writes, "Leg-breaking time for

10 Casper the Ghost scab."

11      Then someone responds and says, "He is such an

12 ass."

13      And that is talking about Mr. Casper.

14      Do you see this email?

15 A.   Yes.

16 Q.   And who is Rocky Mountain?

17 A.   I don't know.

18 Q.   You don't know that Rocky Mountain is the

19 personal email address of Mr. Hafner, one of the top

20 people at Southwest Airlines?

21           MR. GREENFIELD:  Objection, your Honor.

22 Lack of foundation.

23           THE COURT:  Sustained.

24           THE WITNESS:  I did not utilize Southwest

25 leaders' personal email addresses.  I didn't have

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 167 of 403   PageID 13991
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 370

 1  them.  My communication with Southwest leadership

 2  was always through their WNCO email, company email

 3  addresses.

 4  BY MR. PRYOR:

 5  Q.   So you don't know who Rocky Mountain is?

 6  A.   No.

 7  Q.   Would it shock you that a member of management

 8  of Southwest Airlines would agree with leg-breaking

 9  time for Casper the Ghost scab by saying, "He's such

10  an ass"?

11  A.   Yes.

12  Q.   I will stick with shocking.

13       All right.

14          MR. PRYOR:  Let's go to page 97.

15  BY MR. PRYOR:

16  Q.   And this an email from Brian.

17       And Brian Talburt's your supporter, a person

18  you appoint to committees, a person who sends you

19  information, right?

20  A.   Yes.

21  Q.   And he says, "Audrey, a couple of things about

22  this thread.  Please delete Brett's comment about

23  leg-breaking."

24       Do you see that?

25  A.   Yes.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 168 of 403  PageID 13992
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 371

1  Q.   Do you know why he said that?

2  A.   Because it wasn't appropriate for Brett to say

3  that.

4  Q.   Well, would deleting it be the thing to do

5  about an inappropriate comment, or would it be to

6  keep a record of it and take appropriate action?

7  A.   Anything that is out on social media that is

8  inappropriate, my advice to people is always first

9  to delete it if they are made aware that it is

10  something that they shouldn't have posted.

11  Q.   So this communication about leg breaking and

12  he's such an ass, you agreed that it should be

13  deleted?

14  A.   I believe in my conversation with Brett, I told

15  him he should delete it.

16  Q.   And then he goes on to say, "There is a private

17  email between Mike and I.  I take this stuff very

18  seriously."

19       Do you know that Mike is Mike Hafner?

20  A.   I'm assuming so, just based off of you saying

21  that that was who Rocky Mountain was.  I had no -- I

22  did not know that.

23  Q.   Okay.  So you now assume Rocky Mountain is

24  Mr. Hafner?

25  A.   Based off of what you stated.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 169 of 403   PageID 13993
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 372

1  Q.   Okay.  Based on me telling you?

2  A.   Yes.

3  Q.   Oh, no.  You don't have to accept that.  I will

4  tell you that, but I don't want your testimony --

5  A.   I don't know who -- I don't know who Rocky

6  Mountain is.

7  Q.   Okay.  All right.

8  A.   I don't know who that email address belongs to.

9       And again, there were a number of Mikes in

10  Southwest leadership --

11  Q.   Okay.

12  A.   -- then and now on the inflight side.

13  Q.   I recall you telling me you would be shocked

14  that it was Mr. Hafner.

15       You don't have to accept what I'm saying about

16  it.  We will see if another witness can testify

17  about that.

18       So it says, based -- tell you what -- well, I

19  was going to ask you to assume it was Mr. Hafner so

20  you could interpret what is being said here, but I

21  actually don't want you to do that.

22       In context, do you know what Mr. Talburt is

23  saying when he says, "I would hate to breach a

24  confidence he obviously had in me based on the

25  long-term relationship we developed.  He's a great

 1  person."

 2       And then it goes on.

 3       So he's revealing something to you that he

 4  wants to make sure doesn't become public, at least

 5  that much is clear, right?

 6            MR. GREENFIELD:  Objection, your Honor,

 7  calls for speculation.

 8            THE COURT:  I will only allow her to

 9  answer if she has personal knowledge.

10            THE WITNESS:  I don't.

11  BY MR. PRYOR:

12  Q.   Do you have an understanding -- how did you

13  interpret this email when you received it?

14  A.   That Brian was sharing it with me.  That he was

15  concerned about breaching a confidence.  But he goes

16  on to say, at the end of the day, he was talking

17  about his job, and he didn't want to hold anything

18  back that he believed, you know, could be helpful.

19  Q.   Okay.  So would you agree with me that what

20  this email is saying is that I'm having confidential

21  communications with senior members of Southwest

22  Airlines's management, and I want to keep it

23  confidential, I don't want to get anybody in

24  trouble, but if push comes to shove and it is my job

25  and my family, I will do what I have to do.

```
 1        Is that fair?

 2   A.   Yes.

 3   Q.   Okay.  Let's go back up to the top of page 98.

 4        I'm going to read a part of what he says here.

 5        He says, "This is just an illustration of the

 6   types of conversations I have had with senior

 7   Southwest management re dealing with problem people,

 8   and in this case specifically, Hafner and Casper."

 9        Did I read that correctly?

10   A.   Yes.

11   Q.   And Hafner and Casper are both union members?

12   A.   No.

13   Q.   Which one is not?

14   A.   Greg Hafner.

15   Q.   Is he an objector?

16   A.   Yes.

17   Q.   Okay.  So we are talking about an objector and

18   a union member, and Brian Talburt is telling you,

19   I'm having these secret conversations with Southwest

20   senior management about how to deal with these

21   problem people, true?

22   A.   Yes.

23   Q.   I'm sure, when you saw that, you would say,

24   That is totally inappropriate.

25        Is that how you reacted?
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 172 of 403   PageID 13996
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 375

 1  A.   No.

 2  Q.   It is totally inappropriate, isn't it?

 3  A.   For a flight attendant to have conversations

 4  with Southwest leaders, no, that is not

 5  inappropriate.

 6  Q.   Was that my question, ma'am?

 7       Of course it's not.

 8       You can talk to anybody you want.

 9       It's inappropriate to have a conversation with

10  Southwest senior management about trying to deal

11  with people, an objector and a union member that are

12  problematic?

13  A.   Yes, that is inappropriate.

14  Q.   Okay.  That was my question.

15       You are still telling me under oath you are not

16  trying to be evasive, right?

17  A.   No, sir, I'm not.

18  Q.   You really thought my question was, is it okay

19  for a flight attendant to talk to a member of senior

20  management?

21       That is how you answered my question, and that

22  wasn't being evasive, right?

23  A.   No, sir, I was not trying to be evasive.

24  Q.   And then there is an email above that on

25  page 97.

1    It says -- this is from you -- "Brian, thanks

2 for sending.  Will go through when done with the

3 negotiations.  Anything you have where you have used

4 'public execution' in writing?"

5    Is that -- so you are sending an email to Brian

6 trying to find out whether or not he's used the term

7 "public execution" in writing, right?

8 A.   Yes.

9 Q.   Okay.  You were representing him for making

10 comments about executing people?

11 A.   No.  I was assisting our grievance specialist

12 in his grievance where he had made comments about a

13 public execution and had stated repeatedly that he

14 did not mean really executing somebody, and that he

15 had had numerous conversations with people,

16 including Southwest leaders, explaining what he

17 meant.

18    Which is why I was asking him if there was

19 anything in writing that depicted what he was really

20 trying to say, to defend that it was not him

21 actually literally saying somebody needed to be

22 publically executed.

23 Q.   I'm not saying --

24         THE COURT:  Did you have an objection?

25

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 174 of 403  PageID 13998
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 377

 1  BY MR. PRYOR:

 2  Q.   -- he was actually talking about public

 3  execution.

 4            THE COURT:  Hold on.  Hold on.

 5            Do you need a sidebar?

 6            MR. GREENFIELD:  Yes, your Honor.

 7            (Thereupon, the following proceedings were

 8       had at sidebar:)

 9            MR. GREENFIELD:  Sorry, Mr. Pryor, to

10  interrupt your flow.

11            Because of my vantage point, I caught

12  another witness who has entered the courtroom.  I

13  know we've invoked the rule, so I just wanted to

14  make the Court aware of it.

15            It is Mr. Parrott.

16            THE COURT:  Who is he?

17            MR. GREENFIELD:  Mr. John Parrott.

18            THE COURT:  Okay.  Kevin --

19            MR. GREENFIELD:  John Parrott is here.

20            THE COURT:  Okay.

21            MR. GREENFIELD:  He's our next witness, I

22  think.

23            I just wanted to be able to get him out,

24  if you didn't want to him to hear what was going on.

25            THE COURT:  So we need to take a lunch

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 175 of 403   PageID 13999
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 378

1  break and get the witness out, but you have got a

2  live question.

3            Or do you have a live question?

4            Did she give you a satisfactory answer?

5            If you another question or two, I'll --

6            MR. PRYOR:  I can break any time.  This is

7  a great time.

8            THE COURT:  Okay.

9            Then let me call our lunch break now.  You

10  can pick back up and jump back to that question, if

11  you want to, after lunch, and then we'll get the

12  witness out of the room.

13            MR. PRYOR:  Thank you, your Honor.

14            MR. GREENFIELD:  Can we have some sort

15  of -- something to the jury that I'm not trying to

16  put the kibosh on what is happening here, just that

17  there was some protocol --

18            MR. PRYOR:  It is a witness.

19            MR. GREENFIELD:  -- that had to be talked

20  about?

21            Thank you, your Honor.

22            (Thereupon, the sidebar was concluded and

23      the following proceedings were held in open

24      court:)

25            THE COURT:  Okay.  We had to talk about a

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 176 of 403  PageID 14000
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 379

1  witness issue; it is not anyone's fault.  But I

2  notice that it is after noon, and so we should give

3  y'all your lunch break.

4          So I'm going to ask that we pause the

5  action here.  We will pick back up with Ms. Stone's

6  testimony after lunch.

7          So let's take an hour lunch break.  It's

8  12:07.  We will be back here at 1:07, and then we

9  will back on the record.

10          Same three instructions as always.  You

11  can only talk to your fellow jurors, just not about

12  the case.  Don't talk to anyone else in the

13  courthouse and don't do any research on the case.

14          All rise for the jury.

15          (The jurors exited the courtroom.)

16          THE COURT:  All right.

17          Ms. Stone, you're free to leave the

18  witness stand.

19          But now that you are a witness, you are a

20  ward of the Court.  That means you are with me, and

21  so you are not supposed to talk to a lawyer or

22  anyone else about the case until I excuse you from

23  your testimony in this case.

24          Does that make sense?

25          (Thereupon, the witness exited the

```
 1        courtroom.)
 2              THE COURT:  Okay.  Any other issues anyone
 3   has that they want to bring up now?
 4              Okay.  Let's be back in here maybe at five
 5   minutes, so 1:02 is our target time.  We can handle
 6   anything that comes up in the meantime.
 7              And then we will bring you in after we
 8   have handled any legal issues and then continue with
 9   your testimony.
10              MR. GREENFIELD:  And your Honor, just
11   maybe for the information of the witness, why we
12   took the break.
13              THE COURT:  Yes.  We took the break
14   because a witness came into the room.  So witnesses
15   can't be in the room because we have invoked the
16   rule in this case, which means witnesses have to sit
17   out in the hall unless you've got special
18   dispensation to sit at the counsel table.
19              So witnesses can't be in the room.
20              Okay.  With that, we will take our break.
21   We will see you at 1:02.
22              (Recess.)
23              (In chambers).
24              THE COURT:  Hello.  I'm Brantley.  You are
25   not in trouble.  Don't worry.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 178 of 403   PageID 14002
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 381

1            I need to ask you a couple of questions

2   because I know the lawyers will ask me, because I

3   have to tell them what you wrote me.

4            So I know you say you didn't know

5   Charlene, if y'all went to high school together, you

6   didn't know her.

7            JUROR NO. 8:  Right.

8            THE COURT:  Do you know anything about

9   her?

10            JUROR NO. 8:  I just kind of --

11   whenever -- I kept saying I kind of -- she looked

12   familiar.  I was thinking maybe it was from around

13   town.  Because I worked at the bank.  I was thinking

14   maybe.

15            And then today whenever they said that she

16   was from Lake Dallas, it started kind of clicking.

17   And then I saw her maiden name in one of the

18   documents that was on there.  And I was, yeah, that

19   is her, I think.

20            THE COURT:  Was it Gale?

21            JUROR NO. 8:  Batt.

22            THE COURT:  Batt.

23            JUROR NO. 8:  And she was an upper

24   classman.  So I really don't know -- I might know

25   the group of girls she hung around with.  We weren't

1    friends.

2              THE COURT:  Okay.

3              JUROR NO. 8:  And I don't really know any

4    more that, that I recall anyway.

5              THE COURT:  Yes.  Okay.

6              And let me ask you sort of like the

7    questions we asked yesterday.

8              Is there anything you told me about that

9    or anything that you know of about her would that

10   keep you from being impartial in this case?

11             JUROR NO. 8:  No.

12             THE COURT:  Okay.  Got it.

13             So I will go tell them.  They may want to

14   ask you the same questions, ask you some different

15   ones.  We will try to clean that all up as soon as

16   we can and get back rolling.

17             Thank you for telling me.  You did the

18   absolute right thing.

19             JUROR NO. 8:  And if they ask me why I was

20   in here, am I allowed to tell them?  Or no?

21             THE COURT:  How about, don't tell them.

22   Just tell them it is a judicial issue and the judge

23   will take care of it.

24             I'm sorry.

25             JUROR NO. 8:  It is okay.  I just wanted

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 180 of 403   PageID 14004
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 383

 1  to know.

 2          THE COURT:  You are right.  It is a tough

 3  question.  Thank you.

 4          (Recess.)

 5          (In the courtroom).

 6          THE COURT SECURITY OFFICER:  All rise.

 7          THE COURT:  You can be seated.

 8          It wouldn't be day 2 of trial if we didn't

 9  have a strange jury issue.

10          So here it is, strange jury issue of the

11  day.  Hopefully, the only we will get in trial.

12          We have a juror who wrote me a note.  It

13  is Juror No. 8.  Sonia Freeman is her name.  She

14  sits in the back corner.

15          And Mr. Frye, you can go ahead and hand

16  out the note she wrote me.  And I will read it to

17  you so it is in the record.

18          She says, "Not sure, but may have went to

19  high school with Charlene.  I was at Lake Dallas

20  High School 1981 to 1985.  Did not know her, if so,

21  but wanted to disclose this, if so."  Signed, Sonia

22  Freeman.

23          MR. PRYOR:  Can we inquire of my client?

24          THE COURT:  Yes, you may.

25          MR. PRYOR:  What was the year?

1              THE COURT:  The year was 1981 to 1985,

2    lake Dallas High School.

3              (Pa.)use

4              THE COURT:  Do you know anything yet?  Was

5    she at Lake Dallas High School?

6              MR. PRYOR:  She was at Lake Dallas High

7    School between 1981 and 1985.  She graduated in

8    1983.  She does not recognize the juror.

9              THE COURT:  Okay.  And so what I will say

10   is, I knew when I got this note, y'all might have

11   some other questions.  I went ahead and asked her

12   some of the questions I knew y'all would want to

13   ask, and then y'all may have others.

14              I asked her, Well, did you hear anything

15   about Charlene?  And she said, No.  She thought --

16   if this is the same person -- that Charlene was an

17   upper classman.  And that math checks out, because

18   Sonia graduated in '85; you in '83.

19              She said she may have known some friends

20   in the same group that your group of friends in, but

21   she didn't really know you specifically.  Didn't

22   have any recollections of anything anyone ever said

23   about you.

24              I asked her two other questions.  One,

25   Based on your knowledge of her, but not really

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 182 of 403   PageID 14006
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 385

1  knowing her, could you be fair and impartial?  She

2  said without hesitation, Yes.

3              Two is, I asked, Well, why did you

4  disclose that today?

5              And she said she could see you more

6  closely today.  You can see from the distance, she's

7  a lot closer to you today, Ms. Carter, than she was

8  yesterday in jury selection.  And she your maiden

9  name on some of the documents that we've gone

10 through in evidence this morning.

11             So I don't think she was genuinely trying

12 to lay behind the log, but she's closer to you and

13 she saw your maiden name, so that triggered a

14 memory.

15     So my question is, do y'all want to ask her

16 further questions?  Because I have no problem if

17 anyone wants to ask her further questions.

18             MR. McKEEBY:  Can I confer briefly with my

19 client?

20             THE COURT:  You may.  Yep.  How about

21 this, I can put on the white noise, Mr. McKeeby.

22                 (Discussion off the record.)

23             THE COURT:  Okay.  What do you think?

24             MR. McKEEBY:  I think counsel for the

25 Union, as well as myself, would like to ask a couple

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 183 of 403   PageID 14007
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 386

 1  of follow-up questions, but --

 2           THE COURT:  That sounds fine by me.  And

 3  then I will let y'all ask any follow-up questions.

 4  We'll go Southwest, Union and then Carter.

 5           MR. PRYOR:  Sure.

 6           THE COURT:  Okay.  Let's bring her in.

 7           She asked me, Well, can I tell the other

 8  jurors what it is about?  I said, No.

 9           And this is sort of like criminal defense

10  cases with multiple defendants, right?  Like, you

11  leave the room, Oh, are you talking to the cops?

12  Who are you talking to?

13           MR. McKEEBY:  Should I take the podium

14  or --

15           THE COURT:  You can take the podium.  And

16  I have asked --

17           (The juror entered the courtroom.)

18           THE COURT:  Okay.  Welcome back,

19  Ms. Freeman.  Thank you.  You're under oath as a

20  juror.  We're not going to seat you in the witness

21  box.

22           Oh, can we just give her a handheld mic?

23  Yeah, we're not used to having you talk.  I'm sorry.

24           Okay.  So, Ms. Freeman, I told them what

25  our exchange was, and then I gave them the option of

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 184 of 403  PageID 14008
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 387

1  asking -- I gave them the option of asking you some

2  questions.  So Southwest, then the Union, then

3  Carter is going to ask you questions very briefly.

4           JUROR 8:  Okay.

5           THE COURT:  Go for it.

6           MR. McKEEBY:  Okay.

7           Hi, Ms. Freeman.  Just a couple of

8  questions to -- about the issue that you raised.

9           Did you know any of -- did you hear

10  anything or know anything about Ms. Carter in terms

11  of, you know, what she did activities-wise or

12  classes she took while you were in school together?

13           JUROR 8:  No.

14           MR. McKEEBY:  Did you know any of her

15  friends?

16           JUROR 8:  If I did, I don't remember.  I

17  mean, I don't recall.

18           JUROR 8:  And I'm assuming, since you did

19  the right thing and raised the issue voluntarily,

20  that you can commit to everyone at this trial that,

21  notwithstanding, that you had some overlap in high

22  school with Ms. Carter, or may have, that you can

23  keep your commitment to be fair and impartial to all

24  of the parties; is that fair?

25           JUROR 8:  Yes.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 185 of 403   PageID 14009
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 388

 1              MR. McKEEBY:  Including my client,

 2   obviously --

 3              JUROR 8:  Yes.

 4              MR. McKEEBY:  -- Southwest Airlines?

 5              JUROR 8:  Yes.

 6              MR. McKEEBY:  Okay.  That is all.

 7              THE COURT:  Okay.  Thank you, Mr. McKeeby.

 8          Mr. Greenfield, you can ask questions.

 9              MR. GREENFIELD:  Yes.  I know Lake Dallas

10   is a growing area at this point in time.

11              JUROR 8:  Yes.

12              MR. GREENFIELD:  In the '80s, I'm

13   presuming it was pretty small?

14              JUROR 8:  Yes, it was smaller.

15              MR. GREENFIELD:  How big was your

16   graduating class?

17              JUROR 8:  I think a hundred.

18              MR. GREENFIELD:  A hundred.

19          Do you have any older brothers or sisters?

20              JUROR 8:  Not from the school district.

21              MR. GREENFIELD:  All right.  And did you

22   personally have any extracurricular activities that

23   you took part in while you were at Lake Dallas?

24              JUROR 8:  I was a manager on drill team,

25   and that -- but I didn't interact with her, I don't

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 186 of 403   PageID 14010
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 389

1  believe.

2           MR. GREENFIELD:  I'm sorry, say that last

3  part.

4           JUROR 8:  I don't think I interacted with

5  her.  I mean, we had different friend groups.

6           MR. GREENFIELD:  So you said you were on

7  the drill team.  You think she might have been.

8           But you didn't interact with her?

9           JUROR 8:  I think -- she was an

10 upperclassman, and I believe she might have been on

11 the drill team before I was.

12          MR. GREENFIELD:  Okay.  That is all.

13 Thank you so much.

14          THE COURT:  Thank you, Mr. Greenfield.

15          Okay, Mr. Pryor, you can ask questions.

16          MR. PRYOR:  I'm impressed with all of you

17 that can remember high school.  It has been too long

18 ago for me.

19          And I'm disappointed, I mentioned Lake

20 Dallas in my opening and that doesn't -- that didn't

21 ring a bell with you?

22          JUROR 8:  No.  No.  I didn't even hear it.

23 No, I heard it today, and I didn't hear it

24 yesterday.

25          MR. PRYOR:  No worries.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 187 of 403   PageID 14011
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 390

 1              Okay.  So if -- I just want you to

 2    understand, if the Judge decides that you continue

 3    to sit on this jury, that is a decision that no one

 4    thinks that there is anything about your past that

 5    makes you anything but the same juror we thought you

 6    were before, impartial.

 7              You deliberate just as you would have

 8    before.  You don't have to feel like, gee, because I

 9    recognize her from high school, that means I have to

10    somehow give more favor to one side or another.  You

11    are just the same juror you always were if you

12    continue to sit, right?

13              JUROR 8:  Yes.  And I only recognized her

14    because you said Lake Dallas today, and that kind of

15    drew my attention.  And then I started thinking --

16              MR. PRYOR:  Oh, okay, good.

17              JUROR 8:  -- did I know her last name?

18    And then I seen her maiden name in a document, and

19    then I was like, yes, I recognize that.  But that is

20    the only way I recognized her.

21              MR. PRYOR:  I think we all find that very

22    understandable.  Thank you.

23              JUROR 8:  Uh-huh.

24              THE COURT:  Okay.  Any further questions?

25              Okay.  You are excused as a sort of

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 188 of 403   PageID 14012
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 391

1   witness.  You can go back to the jury room.

2              (The Juror exited the courtroom.)

3              THE COURT:  Okay.  So any concerns with

4   this juror participating as a juror?

5              MR. GREENFIELD:  I have concerns, your

6   Honor.  I have concerns.

7              THE COURT:  Okay.  Talk to me.

8              MR. GREENFIELD:  It was a small town at

9   the time.  It's close.  I know they don't -- she

10  doesn't have any specific --

11             THE COURT:  Can you grab that mic?

12             MR. GREENFIELD:  Yes.  I apologize.

13      I know she doesn't have any specific

14  recollections.  She does think maybe they were on

15  the drill team together, different class points. I

16  can't imagine I wouldn't have struck her if I didn't

17  know that.  If I would have had this information, I

18  would have used one of my strikes on this witness.

19             THE COURT:  Against her.

20      And would have not used a strike on who?

21             MR. GREENFIELD:  Well --

22             THE COURT:  Struck her instead of someone

23  else?

24             MR. GREENFIELD:  We pooled strikes with

25  Southwest, as you know.  I think if we would have

1  known that as a team, we would have used one of them

2  on 21.  I can't -- I don't want to speak for them,

3  but I would have pushed.

4            MR. McKEEBY:  I mean, I think it would

5  have been a cause strike at that point.

6            I mean, there is enough concern about --

7  about bias that -- I understand she sat up there and

8  said she was impartial, and I credit her.  And I'm

9  sure she's being as truthful as she can be.

10           But, I mean, I would have asked that that

11  be a cause strike, quite frankly.  I don't know what

12  the Court would have done.  But I have the same

13  concerns, I guess.  But I don't really understand, I

14  have not been in this situation before --

15           THE COURT:  Sure.

16           MR. McKEEBY:  -- and really know what is

17  behind door No. 1.

18           So to suggest how strongly I should object

19  to this, because I don't want a mistrial, but --

20           MR. GREENFIELD:  And your Honor, if I may,

21  a little bit more transparency.

22           The last individual we decided about

23  striking as a group was between Juror No. 8 and

24  Juror No. 21.

25           Ultimately, we decided on 8, which was

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 190 of 403   PageID 14014
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 393

 1  also struck by the plaintiffs.  But she was our

 2  other consideration.  And if -- that would have been

 3  her, if I would known that information.

 4           THE COURT:  And that is helpful for me to

 5  know.  That is why I asked.

 6           Okay.  So you wouldn't have used a strike

 7  on -- you gave me a number, and I appreciate that.

 8           Okay.  Let me ask Carter's thoughts.

 9           MR. PRYOR:  Unless there was an

10  intentional misrepresentation on her part, once

11  she's seated on the jury, it is a question of

12  whether or not she has done something that indicates

13  a bias.

14           I don't think anyone here is saying she

15  was lying during voir dire.  And so now, given she's

16  properly seated, has she shown any bias?  I don't

17  think she has.

18           In terms of the exercise of their strikes,

19  I don't know what the law is on that.  I don't know.

20           THE COURT:  Understood.

21           Well, okay.  Any last thoughts?

22           MR. McKEEBY:  None that wouldn't just be

23  repetitive of what I said.

24           I mean, I just have concerns that -- I

25  mean, again, if I would have known this, we would

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 191 of 403   PageID 14015
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 394

1    have certainly addressed the strikes differently.

2              THE COURT:  Understood.

3              Well, what I will tell you is, I don't

4    think I've seen enough from what she said to kick

5    her on a cause basis, if we were to put ourselves

6    24-hours ago.

7              What I would say is, I'm sympathetic to

8    the notion of this late-breaking knowledge is

9    something that we all should have known yesterday.

10   We didn't because the Lake Dallas wasn't enough of a

11   trigger for her, but the maiden name was, combined

12   with Lake Dallas.

13             So I get that.  She was not laying behind

14   the log.  I don't think she's lying about being

15   impartial.  But I'm taking your statement at face

16   value that you would have struck her instead of No.

17   8.

18             Does that make sense?

19             So because of that, what I need to do is

20   kick her off the jury at this point.  We still have

21   a plus one.  We still go on with a jury of 7.  We

22   can't get below 6, right?  And so we've lost

23   50 percent of our margin that I was hoping to keep

24   throughout the case.

25             And so it is incumbent on all of us --

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 192 of 403  PageID 14016
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 395

1  most importantly, the jury -- to not lose anyone

2  else.

3           Does that make sense?

4           So again, I don't think she's biased or

5  partial in some way.  But because we did deprive you

6  of the ability to have that knowledge when using

7  your peremptories -- and you are saying that you

8  would have used a peremptory on her -- I think I

9  have to credit that at this point.

10          So what I will do -- I guess the question

11 is how to break that to the jury.

12          I can do it cryptically, right, and bring

13 in all of the jury, and say, It's come to our

14 attention, through Juror No. 8, that an issue has

15 arisen that I think meets the legal test for me to

16 excuse her from her service as juror, and not say

17 anything beyond that.

18          They are not supposed to talk about the

19 case, right?  And so earlier, the things she told me

20 indicates that no one else has an idea what note she

21 wrote.  And so she's just off.  She gathers her

22 things and leaves, and then she's excused as a

23 juror.

24          Any issue with that as the protocol on how

25 I orchestrate this?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 193 of 403   PageID 14017
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 396

 1              Okay.  I will do it.

 2              And we will limp along with one reserve

 3     and see if that can get us across the finish line.

 4              So, sorry.  Got to buckle up on Day 2 of

 5     trial.  That is when the curveballs really happen

 6     with the jurors.

 7              But let's bring them in, and I will excuse

 8     Juror 8.

 9              THE COURT SECURITY OFFICER:  All rise for

10     the jury.

11              (The jurors entered the courtroom.)

12              THE COURT:  Okay.  You can be seated.

13              Okay.  So sorry for the delay.

14              We had to have a discussion with Juror No.

15     8.  And Juror No. 8 brought an issue to my

16     attention.

17              I'm not going to tell you what it is

18     because it doesn't matter.

19              But there is a reason she brought it to my

20     attention that meets the test for me excluding her

21     as a juror.

22              Because of that, then, I'm excusing you

23     Juror No. 8, as a juror.

24              We still have enough to keep going.  We

25     will miss having you here because this is a good

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 194 of 403  PageID 14018
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 397

1   group.  I can tell from hearing conversation in the

2   hall.  It is a collegial group.  I know they are

3   going to serve admirably as a jury.

4           I'm sorry that you can't be a part of it,

5   but I appreciate you bringing the matter to my

6   attention.  I thank for your service yesterday and

7   today.

8           Mr. Frye can still get you a certificate,

9   so don't leave just yet.  He can go back and make

10  sure you get your certificate and are covered for

11  yesterday and today. We will all rise for you, then,

12  as you walk out.

13          (The excused juror exited the courtroom.)

14          THE COURT:  Okay.  Now we can be seated.

15          And Ms. Stone, you are still under oath.

16          And so I believe, Mr. Pryor, you were

17  still asking questions, so you can resume your line

18  of questioning, sir.

19  BY MR. PRYOR:

20  Q.  Ms. Stone, let's go back to Exhibit 27.

21      It should be on your screen in a second.

22      There we go.

23      All right.  We had talked about Mr. Talburt's

24  email to you about deleting the broken leg comment.

25          MR. PRYOR:  The next page, Matt.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 195 of 403  PageID 14019
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 398

 1  BY MR. PRYOR:

 2  Q.   And then that you would be shocked if the Mike

 3  referred to was Mike Hafner, the member of senior

 4  management, that that was Rocky Mountain.

 5       Do you recall that?

 6  A.   Yes, sir.

 7  Q.   Okay.

 8            MR. PRYOR:  Let's go back to the last

 9  paragraph of Brian's email to you.

10            No, go back.

11            No.  Leave it alone.  There you go.

12  Thanks.

13  BY MR. PRYOR:

14  Q.   And he says, "So what I'm saying is, if we have

15  to use this type of evidence to secure my job, then

16  we have to do what we have to do."

17            THE COURT:  One moment.

18            I have got to unmute their jury screens

19  right quick.

20            MR. PRYOR:  Every time I look on the

21  screen, it is somewhere else.

22            THE COURT:  Okay.  There we go.

23  BY MR. PRYOR:

24  Q.   All right.  Then the next sentence is, "Please

25  just keep my thoughts in mind.  BTW" -- presumably,

 1   by the way -- "the Rocky Mountain email is Mike's
 2   personal email.  I do not like using company email
 3   for obvious reasons."
 4        Do you see that?
 5   A.   Yes, sir.
 6   Q.   Does that tell you who Mike is?
 7   A.   No.
 8   Q.   Okay.  And where he says, "I do not like using
 9   company email for obvious reasons," do you know what
10   he's talking about there?
11   A.   No.
12   Q.   Even though he had just told you that they are
13   talking about using social media to target people,
14   including Haffer and Casper.  And that doesn't tell
15   you he wants to keep those kinds of communications
16   off company emails for obvious reasons?
17        You didn't read that in context?
18   A.   He already said he wanted to keep it
19   confidential.
20   Q.   It sounds like he's reiterating that point or
21   is there something else he's wanting to keep secret,
22   too?
23   A.   I don't know if there is something else.
24   Q.   So when you got this email, did you point out
25   that it is inappropriate?  Did you respond and say,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 197 of 403   PageID 14021
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 400

 1  That is inappropriate, we can't be targeting people

 2  using social media and the assistance of Southwest

 3  senior management?

 4  A.    No.

 5  Q.    Instead, you responded and talked about, Did

 6  you ever use public execution in public, right?

 7  A.    Yes.

 8  Q.    Okay.

 9          MR. PRYOR:  Let's look at Exhibit 140.

10          We move for the admission of Exhibit 140.

11          MR. McKEEBY:  This is another one with the

12  limiting instruction.

13          THE COURT:  Understood.  Same objections

14  as this morning, otherwise, for Southwest and Union?

15          MR. McKEEBY:  Correct.

16          MR. GREENFIELD:  Yes, your Honor.

17          THE COURT:  Okay.  So on 140, I'm

18  admitting it with the same limiting instruction I

19  gave you earlier.

20          This document No. 140 is relevant to the

21  claims against the Union, not relevant to the claims

22  against Southwest.

23          It is admitted.

24          You can publish.

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 198 of 403   PageID 14022
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 401

 1              (The referred-to document was admitted in

 2         Evidence as Plaintiff's Exhibit 140.)

 3   BY MR. PRYOR:

 4   Q.   Do you recognize this document?

 5   A.   No.

 6   Q.   Do you need a hard copy of it?

 7   A.   No, sir, but if I can just have a moment to

 8   read through it.

 9   Q.   Okay.  Could you bring the microphone closer to

10   your mouth?  And I will bring you a hard copy, if

11   you want.  It is hard for him to know where to

12   scroll.  He's -- it is hard for him to know where I

13   want him to scroll.

14         Let me know when you are ready and I can ask

15   you a question.

16   A.   Okay.  I have just skimmed it.

17   Q.   Okay.  I will point to specific things you can

18   look at.  If you think I'm taking it out of context,

19   you can read more.

20         So this is Mr. Talburt, Brian Talburt, your

21   supporter, who's emailing Sonya Lacore, senior

22   manager at Southwest Airlines, and Mike Hafner,

23   senior manager at Southwest Airlines, right?

24   A.   Yes.

25   Q.   Who is Jamie Willard?

1  A.   She was also in a leadership position at

2  Southwest Airlines for inflight.

3  Q.   And he again is communicating with senior

4  management at Southwest Airlines, it looks like, at

5  least in terms of specifics, complaining about

6  Mr. Casper and that social media could be utilized

7  to deal with that.

8       Is that fair about the general context?

9  A.   Yes.  I think so.

10  Q.   Okay.  And I can't remember between Casper and

11  Hafner, was Mr. Hafner, in 2014, an objector or a

12  union member?

13  A.   I don't know.

14  Q.   Okay.  But it wouldn't matter in terms of the

15  Union's obligation to look after him, right?

16  A.   Correct.

17  Q.   And so when you got this email from Brian, in

18  October 13 of 2014, were you president then?

19  October?

20  A.   Yes.  When the email was sent, yes.

21  Q.   You get an email -- yet another email talking

22  about targeting a union member or union objector

23  using social media.

24       Your response was what?

25  A.   I don't -- I don't think I wrote -- I don't

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 200 of 403   PageID 14024
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 403

1   recall writing anything back to Brian.

2        The conversation -- the email and the

3   conversations took place way before I was in a

4   leadership position.

5        Actually, I wasn't even working for the Union

6   when this email took place.

7        And I had had conversations with Brian

8   eventually of just stop sending me things because I

9   had a very busy job.  And getting emails like this

10  just wasn't -- there wasn't anything for me to do

11  with that.  I wasn't a part of the conversations and

12  asked him to just stop.

13  Q.   Well, you know, as -- if I was an objector in

14  the union, I might think there were some things you

15  could do.

16       How about contact Southwest management and say,

17  Don't use social media policy to target my members

18  and objectors?  How about doing that?

19  A.   I had numerous conversations with members of

20  Southwest Airlines management about the social media

21  policy and what I thought was inappropriate

22  discipline being leveled for both members and

23  non-members.

24  Q.   Okay.  Listen to my question.

25       Did you have a conversation with them when you

1  said to them, Quit discussing with union members

2  about using social media policy to target union

3  members we don't like?  Anything like that?

4  A.   No.  I never had a conversation with anybody in

5  management about specific members.

6  Q.   You looked at several emails that raised those

7  issues and you never disavowed them to the

8  management of Southwest Airlines saying, Don't do

9  that?

10  A.   No.

11             MR. PRYOR:  Let's look at Exhibit 141.

12  BY MR. PRYOR:

13  Q.   By the way, do you think you should have?  Do

14  you think that you should have done that?

15  A.   I didn't believe it was -- that I had any

16  control over the conversations that management chose

17  to have with an employee.  A private conversation.

18  And I did have numerous conversations with leaders

19  about the social media policy.

20  Q.   Oh, I am aware that you have, and we are going

21  to talk about it.

22        But you had no conversation with them

23  disavowing these type of back-door conversations and

24  efforts, even though it was against objectors and

25  union members, your union had an obligation to,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 202 of 403   PageID 14026
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 405

1   true?

2   A.   I did not have conversations, no.

3   Q.   Was there something not true about my

4   statement, you couldn't say true?

5   A.   It is true.

6   Q.   Okay.  That is what I was expecting to hear,

7   not a limitation.  It is true.

8           MR. PRYOR:  Let's look at Exhibit 141.

9   Exhibit 141.

10          THE COURT:  Is it admitted?

11          MR. PRYOR:  Oh, I didn't offer it.  I

12   apologize.

13          THE COURT:  It's on the monitor.  You can

14   show it to the witness.

15          MR. PRYOR:  May I --

16          THE COURT:  Are you moving for its

17   admission?

18          MR. PRYOR:  I'm sorry?

19          THE COURT:  Are you moving for its

20   admission?

21          MR. PRYOR:  Yes, I am, Your Honor.

22          THE COURT:  Okay.

23          MR. PRYOR:  That's what they were waiting

24   on.  I should have said --

25          THE COURT:  Same objections as earlier,

1   limiting?

2          MR. McKEEBY:  Correct.  With the request

3   for the limiting instruction.

4          THE COURT:  Okay.  I'm overruling the

5   earlier objections, and I will admit it with the

6   same limiting instruction, this one applies to the

7   claims against the Union, not to the claims against

8   Southwest.

9          We are publishing.

10         (The referred-to document was admitted in

11     Evidence as Plaintiff's Exhibit 141.)

12  BY MR. PRYOR:

13  Q.   Okay.  This is an email.  The first one is from

14  Brian Talburt to Sonya Lacore.

15       And we know who they are, right?

16  A.   Yes.

17  Q.   And he says, "So my final installment on this

18  subject."

19       Did you see any of the other installments?

20  A.   No, not to my recollection.

21  Q.   Okay.  And then it says -- I'm going to read

22  parts of it.  You are welcome to read any parts of

23  it you want.

24       "The issue becomes the tumor.  While I hate to

25  give him credit for anything, Casper really was the

1  first legitimate cancer or tumor -- cancerous tumor

2  that had any significant reach with 1,000 members.

3  But in a relatively insightful way, he could be

4  contained."

5       And Casper, again, is talking about Mike

6  Casper?

7  A.   Yes, I assume so.

8  Q.   And he's referring to him as a "cancerous

9  tumor."  Yes?

10 A.   No.  I read that he's referring to issues

11 becoming the tumor.

12 Q.   He was really the first legitimate cancerous

13 tumor.

14      So do you know what nouns and pronouns and

15 adjectives are?

16 A.   I do.  I was looking at the sentence above.

17 Q.   And so you are saying that what they are

18 referring to is what he's doing is, as opposed to,

19 "The first legitimate cancerous tumor"?

20      That doesn't refer to Mike Casper?

21 A.   I see that now.  I was reading the sentence

22 right above it --

23 Q.   Okay.

24 A.   -- where it said, "The issue becomes the

25 tumor."

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 205 of 403   PageID 14029
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 408

1  Q.    Oh, no, I'm not disagreeing about that one.

2  A.    Okay.

3  Q.    Okay.  So we agree that, "The first cancerous

4  tumor" is, according to this email, Mike Casper?

5  A.    When I read the whole sentence, I think he was

6  talking about the forum that was set up by Casper.

7  Q.    Okay.  All right.  That is the way you read it

8  at the time, too, right?

9  A.    Yes.

10 Q.    And then it says, "He could be contained."

11       Do you know what that is referring to?

12 A.    No.

13 Q.    Then it says -- skipping a sentence -- it says,

14 "Corliss, particularly, is something we have not

15 seen before and is incredibly dangerous.  The

16 attitude she spans is NW Airlines in the 19 -- in

17 the '80s.  People listen, and people react" -- I'm

18 going to read keeping, and then I'll ask you

19 questions -- "I am all about targeted

20 assassinations.  I'm sure with her dreadful work

21 history, there could be opportunities.  She will

22 play very well to the heavy, inner-city minority

23 crowd coming on board soon.  She will be the voice.

24 She will be a huge threat in our upcoming election

25 as well.  She plays very well to her crowd."

1      Did you disavow any of those statements at any

2  time?

3  A.   I spoke to Brian and I told him he needed to

4  stop having conversations and sending stuff in

5  emails, that people in Southwest management were in

6  a leadership position, they were not his friends,

7  they were not his buddies, even if he thought that

8  because of his tenure as an employee.

9  Q.   Ma'am, that is pretty convenient when you are

10  sitting here in front of a jury.

11      This was sent as an email to you in writing, in

12  a communication.

13      Did you ever -- can you point to one piece of

14  email from you, anything in writing, disavowing the

15  actions of your supporter, who is sending this to

16  you, feels very comfortable sending this to you,

17  talking about trying to eliminate a potential

18  candidate against your leadership?

19  A.   He sent this to me as indication of the

20  conversations using phrases like "targeted

21  assassination" that he had had with members of

22  management.  That was why he sent that to me, as

23  documentation.

24      He sent me a lot of things during this time.

25  And most of them, I did not respond to.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 207 of 403   PageID 14031
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 410

1       We had a conversation about a slew of the

2   emails that he sent.  But, no, I -- there is no --

3   not anything in writing.

4   Q.   I was waiting for all of that information you

5   just gave us for the answer, and you finally

6   answered it at the end.

7       Nothing, right?

8   A.   No.  Not besides what has been presented.

9   Q.   What do you mean "besides"?

10      There is nothing from you here disavowing this.

11  A.   I'm sorry.  In other documents that were sent,

12  I think around the same day, there were just

13  comments that I had replied to.  Not disavowing.

14  Q.   Who is Corliss?

15  A.   She is a flight attendant for Southwest.

16  Q.   Is she African-American?

17  A.   Yes.

18  Q.   And it is very clear that Ms. Lacore and

19  Mr. Talburt -- and you, by being included on this

20  email -- are being informed that "she's a danger to

21  your leadership and now is the time for a targeted

22  assassination, maybe we can use her dreadful work

23  history to get rid of her."

24      Isn't that what is being said?

25  A.   That is not how I -- I didn't participate in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 208 of 403   PageID 14032
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 411

1  that conversation and that was not what I took from

2  this.

3  Q.   Oh, okay.

4       Well, let's read it again together so we can

5  see how you took it.

6       "Corliss particularly is something we have not

7  seen before and is incredibly dangerous."

8       So he must be talking about -- did she carry

9  guns?  Did she know judo?  What -- how did you take

10 that?

11 A.   That it was Brian just spewing off at the mouth

12 about flight attendants that he didn't support and

13 he didn't want to see in a leadership position.

14 Q.   Ma'am, does it cause you any concern that your

15 supporter feels very comfortable sending something

16 to you, knowing there will be no repercussions, when

17 he's talking about taking adverse action against

18 someone because of their race, not just because they

19 are a union member?

20      That doesn't bother you?

21 A.   I don't agree with what you said, and I don't

22 think her race had anything to do with how Brian

23 felt about her.

24 Q.   You don't think this is about race?

25 A.   No, sir.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 209 of 403   PageID 14033
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 412

1  Q.   So when he said, "She's incredibly dangerous,

2  she's going to play very well with the heavy

3  inner-city minority crowd," he's not talking about

4  her race?

5       He's talking about what?  She's packing a gun?

6       That is not how you, as union president, read

7  this?

8  A.   No.

9  Q.   I just want to be sure, very clear.

10      You think there is nothing --

11          MR. GREENFIELD:  Objection, your Honor.

12  This is the third time.  He's asking the same

13  question.

14          THE COURT:  I will sustain that.

15          MR. PRYOR:  I didn't hear that.

16          THE COURT:  I will sustain that.  It is

17  duplicative, cumulative, repetitive.

18          MR. PRYOR:  Asked and answered, is that

19  the -- was that the objection?

20          THE COURT:  Yes.  That's another way to

21  say it.

22          MR. PRYOR:  I'm trying to hear.

23  BY MR. PRYOR:

24  Q.   And then, Mr. Talburt sends you an email.  And

25  he's talking about the close relationship he's dealt

1  with Sonya Lacore.

2       Do you see that?

3  A.   Yes.

4  Q.   And you represented Brian, or you helped the

5  grievance committee with him.

6       You know for a fact that no one at Southwest

7  Airlines senior management reported Mr. Lacore for

8  any company violation for making these kind of

9  statements to senior management?

10 A.   Did you say Mr. Lacore?

11 Q.   What was your question?

12 A.   Did you say Mr. Lacore?

13 Q.   I can't hear what you are saying.

14 A.   Did you say Mr. Lacore?

15 Q.   I should have said Ms. Lacore.

16      But other than that --

17 A.   Can you repeat your question?

18 Q.   Yes.

19      You know for a fact that Ms. Lacore did not

20 report Mr. Talburt for any company violation for

21 threatening someone both because they were a union

22 member that might threaten your leadership, or

23 because she's African-American and there was no

24 report?

25           MR. GREENFIELD:  Objection.  Relevance.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 211 of 403   PageID 14035
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 414

1         MR. McKEEBY:  Well --

2         THE COURT:  I will sustain that.

3         MR. PRYOR:  May we approach?

4         THE COURT:  You may.

5         (Thereupon, the following proceedings were

6     had at sidebar:)

7         MR. PRYOR:  It doesn't matter that

8  Ms. Lacore didn't report it?

9         THE COURT:  Well, Lacore is Southwest, not

10 Union.

11        MR. McKEEBY:  She is, yes.  It doesn't

12 matter that she didn't report it.  She's not a

13 decision maker.  This is a motion in limine.

14        THE COURT:  It's not a fair representation

15 claim as to Lacore.

16        MR. McKEEBY:  Exactly.

17        THE COURT:  Lacore is not a leader.

18        MR. PRYOR:  But we have claims against

19 Southwest Airlines that this relates to.

20        MR. McKEEBY:  No.  Because Ms. Lacore had

21 nothing to with the termination decision of

22 Ms. Carter, and that is the whole basis of our

23 motion in limine.  They are just trying to slime

24 Ms. Lacore by making her look bad for not reporting

25 this supposed --

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 212 of 403   PageID 14036
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 415

1          THE COURT:  I will sustain it.

2          MR. PRYOR:  Let --- can I just respond?

3    Because that is just not accurate on the facts.

4          On February 22nd, 2017, when she

5    reported -- when this -- when Ms. Stone reported

6    Ms. Carter, she included on her report, her

7    complaint, even though you are not supposed to --

8    she was supposed to have been just the base

9    manager -- she sent it to Sonya Lacore.

10         We absolutely believe Sonya Lacore is

11   involved.  And Mike Sims testified he brought the

12   termination letter in to Sonya Lacore.  You can't

13   act like Sonya Lacore wasn't involved in this.

14         MR. McKEEBY:  Sure I can.  She wasn't.

15         I mean, you have seen the summary judgment

16   proof.  She was not a decision maker.  She was

17   copied -- Ms. Stone decided to copy her on a

18   complaint.  But she was not involved, and therefore,

19   she's not relevant, and it shouldn't come in.  It's

20   just --

21         MR. PRYOR:  Yes.

22         THE COURT:  I haven't heard anything that

23   makes me change my mind.  Let's continue.

24         (Thereupon, the sidebar was concluded and

25      the following proceedings were held in open

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 213 of 403   PageID 14037
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 416

1        court:)

2   BY MR. PRYOR:

3   Q.   Did you report Brian Talburt to Southwest

4   Airlines for violations of Southwest's policy as a

5   result of receiving this email, saying that he's

6   wanting to target people for assassination -- and

7   clearly he means talking about getting them fired,

8   I'm not saying he's trying to kill them -- because

9   they are a threat to your leadership and because

10  she's African-American?  Did you report any of that

11  to Southwest Airlines?

12  A.   No.

13  Q.   Why not?  You supported it.  You didn't report

14  it because you supported it?

15  A.   I didn't support it.

16  Q.   Absolutely, ma'am.  You got emails on this, you

17  didn't respond and say, No, no, we can't do stuff

18  like that.  I have shown you half a dozen.  Not one

19  word from you other than support and offering queso

20  dip.  That is it.

21         MR. GREENFIELD:  Objection, your Honor.

22  Counsel is just testifying.

23         THE COURT:  Sustained.

24  BY MR. PRYOR:

25  Q.   Not one thing did you do, right?  Not one

1   thing?

2            MR. GREENFIELD:  Objection, your Honor,

3   that is a compound question.

4            THE COURT:  I think it is sufficiently

5   clear.  He's asked the question.  You can answer, if

6   you have knowledge.

7            THE WITNESS:  I already said that I, at

8   some point, spoke to Brian and told him to stop

9   sending me stuff.

10  BY MR. PRYOR:

11  Q.   Ma'am, what you told us was, without the

12  benefit of anything in writing, that you told him,

13  Don't be writing this stuff down, and then there is

14  more and then there is more.

15       And then there is some from Brett Nevarez and

16  Cuyler Thompson.  You named them.  Your whole team

17  is doing this and you never do a thing.  You say,

18  I'm always telling them don't put that in writing or

19  that's not right, and yet they keep doing it.

20            MR. GREENFIELD:  Objection, your Honor.

21  He continues to testify.  He's misrepresenting the

22  evidence.  If he has a question, he should just ask.

23            MR. PRYOR:  It is a combination of her

24  evidence and I'm letting her comment on.

25            THE COURT:  I will allow this one.  You

1   can answer.

2            THE WITNESS:  I don't --

3   BY MR. PRYOR:

4   Q.   What was your answer?

5   A.   I don't have control over other people's

6   actions and what they choose to email me or send me

7   or forward me.

8   Q.   So all of this was done over your strenuous

9   objection that you have no record of, and they kept

10  doing it, kept -- by the way, kept including you on

11  the emails that you are saying, I told them not to

12  do and that it was wrong, and yet they keep sending

13  it to you.  And you don't have any negative response

14  to them.  That is what happened, right?

15  A.   That is based off of what you -- what is

16  displayed here.  There are a lot of people that I

17  wish I could have had them stop emailing me when I

18  was in that position and it wasn't an option.

19  Q.   We are not talking about any people.  We are

20  talking about your leadership team.

21       The team that you ran on a ticket with.  The

22  team that is on your executive board meeting.  The

23  ones you deal with all of the time.

24       Your inside core, Facebook, secret group.

25            MR. GREENFIELD:  Objection, your Honor,

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 216 of 403  PageID 14040
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 419

1  also mischaracterizing testimony.  The testimony is

2  actually clear that --

3            THE COURT:  Sustained.

4            MR. GREENFIELD:  -- Mr. Talburt is not.

5            THE COURT:  Sustained.  Rephrase.

6  BY MR. PRYOR:

7  Q.   You didn't do anything, did you?  You don't

8  want to answer?

9  A.   I'm sorry.  I thought I have answered that.

10 Q.   Let's look at exhibit -- did you think all of

11 these emails that were sent to personal addresses

12 would end up in court some day?

13     That wasn't the point -- that kind of defeats

14 the point of sending it to the personal emails,

15 right?

16            MR. GREENFIELD:  Objection, your Honor,

17 calls for speculation.  There hasn't been a single

18 email from Ms. Stone from a personal --

19            MR. PRYOR:  Your Honor, speaking

20 objections --

21            THE COURT:  If you get two or three words

22 in, then you are speaking and need a sidebar.  I

23 will sustain that objection.

24 BY MR. PRYOR:

25 Q.   She's speculating -- you have to speculate

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 217 of 403   PageID 14041
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                      Page 420

 1  about your own opinion as to why these were sent to

 2  personal email addresses, ma'am.

 3            THE COURT:  Counsel, I didn't sustain it

 4  on that basis.  You haven't put the email into the

 5  record yet.

 6            MR. PRYOR:  I'm sorry, Your Honor?

 7            THE COURT:  You haven't put the email into

 8  the record yet.  That was the basis I was thinking

 9  of when I sustained the objection.  You might want

10  to move for its admission first.

11  BY MR. PRYOR

12  Q.   Okay.  Well, the one we were just talking about

13  was sent to personal email addresses, Rocky

14  Mountain, Sonya Lacore's personal email address.

15       Did you see that?  Do you see where it says

16  sonyalacore@gmail?

17  A.   Yes.

18  Q.   That is her personal email address, right?

19  A.   Yes.  I would assume so.

20  Q.   And before, Rocky Mountain.  That is the

21  personal email address of Mr. Hafner, right?

22  A.   I don't know if that is the personal email

23  address of Mr. Hafner.  I've already stated I'm not

24  sure whose personal email address that is.

25            MR. PRYOR:  Let's look at Exhibit 29.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 218 of 403   PageID 14042
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                    Page 421

 1              MR. GREENFIELD:  Your Honor, may we have a
 2    sidebar on 29?

 3              THE COURT:  On 29?  Sure.

 4              (Thereupon, the following proceedings were
 5       had at sidebar:)

 6              MR. GREENFIELD:  29 is literally just
 7    Facebook posts.  They are not tied to a company
 8    email or anything like that.  It is the definition
 9    of hearsay.

10              THE COURT:  Response.

11              MR. PRYOR:  She's on it.  She knows
12    exactly what it is.  She can identify it.  I have no
13    problem getting it in through her.

14              MR. GREENFIELD:  It does not make it an
15    out-of-court statement that you are offering for the
16    truth of the matter asserted.  And there is
17    several -- there is numerous --

18              THE COURT:  I think the response needs to
19    ask her what it was, so I was inclined to overrule
20    the hearsay objection based on the facts.

21              MR. GREENFIELD:  Okay.

22              MR. PRYOR:  This is a post that is on her
23    core team group that she's testified about, and she
24    was on it, received it, and can identify it.

25              THE COURT:  And that is why I'm inclined

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 219 of 403   PageID 14043
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 422

 1  to overrule the objection.
 2          MR. GREENFIELD:  And I don't want to have
 3  to object again to this situation, but he keeps
 4  referring to these as "her core team," things like
 5  that.  That is just not the case.  He keeps trying
 6  to identify a personal nature to these things that
 7  are not owned by her.
 8          MR. PRYOR:  That is absolutely wrong.
 9  She's answered the question.  She knows what her
10  core team is.
11          MR. GREENFIELD:  And that is not what she
12  said.
13          MR. PRYOR:  Well, she's answered the
14  question.
15          MR. GREENFIELD:  Not like that, though.
16          THE COURT:  I think you can address that
17  on cross to the extent you think there is an
18  exploitation there.
19          MR. GREENFIELD:  Sure.
20          (Thereupon, the sidebar was concluded and
21      the following proceedings were held in open
22      court:)
23          THE COURT:  All right.  I have overruled
24  the objection to No. 29.  It is in evidence and we
25  can publish to the jury.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 220 of 403   PageID 14044
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 423

 1              THE COURT:  29 is admitted.

 2              (Thereupon, the document was admitted in

 3         Evidence as Plaintiff's Exhibit 29.)

 4   BY MR. PRYOR:

 5   Q.   In Exhibit No. 29, this -- these are some

 6   posts -- let me show you the next two pages as

 7   well -- some posts from your core team talking about

 8   Mr. Glick.

 9         It is not that page, it is the one before.

10         Let me try it this way:  Do you recognize this

11   as being part of the secret Facebook page for your

12   core team?

13   A.   I think so.

14   Q.   Okay.  And Mr. Nevarez and Mr. Talburt are

15   talking about, Click is getting agitated.  I think

16   he may private message his way into big troubles for

17   himself.

18         And then Brian Talburt says, "We can only

19   hope."

20         And Mr. Click was someone that was -- had run

21   for office.  And was he the one that was elected and

22   got kicked out and you were put in, or is that

23   someone else?

24   A.   He was one of the officers that was removed,

25   yes.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 221 of 403   PageID 14045
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 424

1   Q.   Okay.  So someone who was an officer, but got

2   kicked out, and you got put in.  Your team is

3   looking for a way to get him in trouble using

4   private messages, right?

5   A.   I don't think they are looking to get him in

6   trouble.  I think they are just wanting to be aware

7   of anything that he's sending that was harassment.

8   Q.   Okay.  Is that really -- it says, Thanks for

9   the screen shot.  And then it says -- Brett Nevarez

10  says, "Anybody else get private messages from Click,

11  please screen shot and save for posterity.  I think

12  he may private message his way into big troubles for

13  himself."

14       That is not your team plotting against yet

15  another union member to use social media to get them

16  in trouble?  That is not what your team is doing on

17  your core team secret website?

18  A.   I don't think they were plotting to get someone

19  in trouble, no.

20  Q.   So you think they were doing good things, they

21  thought they were going to save it for prosperity,

22  they could send it to his wife, and they could put

23  it on a picture frame?  Is that what they were

24  talking about?

25  A.   That is not what I said.

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 222 of 403  PageID 14046
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 425

1   Q.   Well, you said you didn't think they were

2   plotting against him.  I'm just trying to think,

3   what is -- if that is not plotting against him, what

4   is?

5       Can I have an answer?

6   A.   Chris was very, very outspoken and there were

7   legal issues that he was involved in against the

8   union, active cases at that time.  So anything

9   related to that, we --

10  Q.   We what?  We wanted to keep a record of, right?

11  A.   I can't talk about anything that was

12  attorney-client privilege.

13  Q.   Go ahead.

14  A.   I don't have anything else to say, other than

15  Mr. Click had a lawsuit against the union at the

16  time of this post.

17  Q.   Okay.  Let me summarize what you have told us.

18  First you said, "No, they weren't doing this to get

19  him in trouble.  They were just thinking he might

20  get himself in trouble."

21      Then when I read, well, wait a minute, what

22  about this, save for posterity, we can only hope,

23  then you decided, well, there are these legal

24  problems with Mr. Click, and so actually we were

25  gathering this information.  Do you see how those

1 | two things are different?

2 | A.    There were so many lawsuits that involved

3 | Mr. Click, and I'm trying to get the time frames

4 | straight in my mind between -- a short time frame

5 | that he was involved in.

6 |     And --- there was still active lawsuits and I

7 | didn't remember that when we first looked at this.

8 | Q.   Do you see the two different answers you have

9 | given under oath to the same question?

10 | A.    I didn't give two different answers, I'm trying

11 | to further explain based on remembering and looking

12 | at the time frame.

13 | Q.   So you are explaining your memory, and your

14 | memory was they weren't gathering information, and

15 | then your memory became they are gathering

16 | information?

17 | A.    No.  I said I did not believe they were

18 | gathering information to target them.

19 | Q.   Oh, let's go back to -- they were gathering

20 | information to help him.  There seems only to be a

21 | couple of choices unless they just wanted souvenirs.

22 | A.    I have already stated that is not what I

23 | thought.

24 | Q.   Which was it?  Tell us what you thought.  You

25 | thought they were gathering the information to help

 1  him or hurt him?  How about that?

 2  A.    Neither.

 3  Q.    So they were gathering information, then, for

 4  no reason at all?

 5  A.    No.

 6  Q.    By the way, the fact that Mr. Click had

 7  lawsuits against his union, he had objections to

 8  things you guys were doing, too.  That doesn't allow

 9  the union to target him, does it?

10  A.    No.

11  Q.    But you did?

12  A.    No.

13  Q.    By the way, your core secret team became public

14  at some point, didn't it?

15  A.    Screen shots from it were made public, yes.

16  Q.    Okay.  So somebody took screen shots and it

17  became public what you guys were trying to do in

18  secret, correct?

19  A.    Screen shots of the conversations happening in

20  the group were made public.

21  Q.    Conversations you wanted to keep secret became

22  public?

23  A.    Yes.

24  Q.    And your team members, including yourself, on

25  these communications, referred to anybody that was

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 225 of 403   PageID 14049
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 428

1  opposed to your union leadership as "haters,"

2  correct?

3  A.   That was a term people used.  I don't see

4  anything in front of me with that.

5  Q.   No, I'm not -- if you want them, we can -- we

6  can gather as many as you would like, ma'am.  You

7  issued a public apology for it, didn't you?

8  A.   I issued a public apology for anybody that was

9  hurt by anything that came out in those screen

10 shots.

11 Q.   Well, let's see how well you recall.

12      Your core team members on communications on

13 your secret website that you were involved in,

14 strings of conversations that you were on, referred

15 to union people that were opposed to your leadership

16 as "haters," true?

17 A.   Yes.

18 Q.   It referred to your opponents as "fucktards,"

19 correct?

20 A.   No.

21 Q.   Are you sure?

22 A.   My recollection of that phrase being used was

23 not about an opponent.

24 Q.   It was never used -- as a matter of fact,

25 Mr. Talburt bragged about it on your core team

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 226 of 403   PageID 14050
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 429

1  website when he said he converted someone, that his

2  fucktard strategy must have worked.  You don't

3  recall that?

4  A.   I did not say that the word "fuckard" wasn't

5  used.  I corrected the way you said it was used.

6  Q.   Oh, what was the better use of "fucktard"?

7  A.   You said it was about opposition and the

8  election.  And he called another flight attendant a

9  "fucktard," based on my recollection.

10  Q.   And your recollection isn't that he called the

11  opponents in general "fucktards" or that Mr. Nevarez

12  did?

13  A.   No.

14  Q.   And what about referring to your opponents as

15  "spewing bullshit"?

16  A.   I don't recall if that was said --

17  Q.   That's not the kind of thing you recall because

18  there was so much "spewing bullshit" that you

19  wouldn't remember?  That would stick out in my mind

20  unless it was common place that all kinds of things

21  were being said like that.

22          MR. McKEEBY:  Objection, asked and

23  answered.

24          THE COURT:  Sustained.

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 227 of 403   PageID 14051
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 430

1  BY MR. PRYOR:

2  Q.   Did you, at any time, with any of your core

3  team members, on your secret Facebook

4  communications, ever reprimand anyone for the

5  language that they used and the characterizations

6  that they made and the actions they proposed?

7  A.   Not to my recollection.

8  Q.   And your administration negotiated a Collective

9  Bargaining Agreement?

10  A.   There was a negotiating team that negotiated a

11  Collective Bargaining Agreement under my

12  administration.

13  Q.   There was a what?

14  A.   There was a negotiating team that negotiated a

15  Collective Bargaining Agreement under my

16  administration.

17  Q.   Okay.  Under your administration, this

18  negotiating team, who was the head of the

19  negotiating team?

20  A.   I was.

21  Q.   And did you propose a Collective Bargaining

22  Agreement to your members?

23  A.   The executive board sent a Collective

24  Bargaining Agreement out to our members.

25  Q.   And was it accepted or rejected by your

1  membership?

2  A.    The first one was rejected.

3  Q.    Was it a close vote?

4  A.    No.

5  Q.    And, in fact, your members rejected it by

6  87 percent, correct?

7  A.    Yes.

8  Q.    And there was the feeling that your membership

9  was too close with management of Southwest Airlines,

10  in order to protect your team, as opposed to a good

11  Collective Bargaining Agreement?

12      Do you want me to rephrase it?

13  A.    I didn't -- I didn't understand the question.

14  Q.    Okay.  I'll try it again.

15      The thinking was, that your team was too

16  concerned about people like Ms. Corless or

17  Mr. Casper, people that were opposed to your

18  leadership, and that you were more interested in

19  working with management at Southwest Airlines to

20  defeat your opponents than to negotiate a good

21  Collective Bargaining Agreement?

22  A.    No.

23          MR. GREENFIELD:  Objection, your Honor,

24  calls for speculation.  He's asking about the

25  thinking.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 229 of 403   PageID 14053
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 432

```
 1                THE COURT:  I will sustain that.

 2   BY MR. PRYOR:

 3   Q.   And as a result, there was a recall petition?

 4   A.   As a result of the failed tentative agreement,

 5   yes.

 6   Q.   I'm sorry?

 7   A.   As a result of the failed tentative agreement,

 8   yes.

 9   Q.   Okay.  So a bunch of flight attendants wanted

10   to recall you.  I guess they didn't have a reason?

11   It wasn't because you were too cozy with management?

12   A.   There was a reason --

13                MR. GREENFIELD:  Objection, your Honor,

14   same, speculation.

15                THE COURT:  Sustained.

16   BY MR. PRYOR:

17   Q.   Let me rephrase.

18        There was a recall petition after your failed

19   Collective Bargaining Agreement, correct?

20   A.   Yes.

21                MR. PRYOR:  Let's look at Exhibit 30.

22                I move for the admission of Exhibit 30.

23   I'm sorry.

24                THE COURT:  Okay, 30.  Objection -- same

25   objections as this morning?  From Union, none from
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 230 of 403   PageID 14054
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 433

```
 1  Southwest?
 2          MS. GREEN:  Give me one moment, your
 3  Honor.
 4          Yes, your Honor.
 5          THE COURT:  All right.  I will overrule
 6  those and allow you to publish Exhibit No. 30.
 7          (The referred-to document was admitted in
 8      Evidence as Plaintiff's Exhibit 30.)
 9  BY MR. PRYOR:
10  Q.   Okay.  And this is a form of the recall
11  petition, ma'am, Exhibit 30?
12  A.   Yes.  It appears to be.
13  Q.   And the people that they want to recall are
14  Audrey Stone, president; first vice president, Todd
15  Gage; second vice president, Brett Nevarez;
16  recording secretary, Kyler Thompson; financial
17  secretary, John Perri; and it looks like member at
18  large, Sam Wilkins; member at large, Crystal Riven;
19  and DEBM, Andrea Gannet.
20      And then the other names on there.
21      Is that correct?
22  A.   Yes.
23  Q.   By the way, what is a DEBM?
24  A.   Domicile Executive Board Member.
25  Q.   And that is someone that is voted locally in
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 231 of 403   PageID 14055
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 434

1  the Dallas area to represent the local and some

2  board?

3  A.   Dallas would be one example.  Every domicile

4  has a DEBM representing them on the executive board.

5  Q.   Was Crystal for the Dallas area?

6  A.   No.

7  Q.   Who was Dallas, do you recall?

8  A.   B.R. Ricks.

9  Q.   Who?

10 A.   B.R. Ricks.

11 Q.   Did you ever remove a DEBM from the Dallas

12 area?

13 A.   The executive board did.

14 Q.   And were you on the executive board?

15 A.   I was.  But as the chair of the meeting, I did

16 not vote unless there was a tie.

17 Q.   And this elected Dallas DEBM was removed and

18 someone else was put in, correct?

19 A.   Correct.

20 Q.   Was that DEBM ever reinstated?

21 A.   Yes.

22 Q.   And so, in fact, what the board did was, they

23 took an elected official, someone else that is in

24 Charlene's area, and kick them out, because they

25 don't like them, said, came up with an excuse, and

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 232 of 403   PageID 14056
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 435

1  that excuse turned out to be false and they were put

2  back, is that what happened?

3  A.    That is not correct.

4  Q.    It wasn't an excuse?

5  A.    No.

6  Q.    Did their reason turn out to be rejected?

7  A.    No.  The reason that he was reinstated was the

8  process by which it was done.

9            MR. PRYOR:  Let's look at Exhibit 22-O.

10            MR. HILL:  Repeat that, please, Bobby.

11            MR. PRYOR:  I'm sorry?

12            MR. HILL:  Repeat that, please.

13            MR. PRYOR:  22-O.  And, Your Honor, she's

14  not on this document.  And I'm going to ask if she's

15  familiar with it.  I can cover.

16            THE COURT:  We will keep the jury screens

17  muted.  What document are you talking about?

18            MR. PRYOR:  22-O.

19            THE COURT:  Document 22, page O?

20            MR. PRYOR:  22-O, as in the letter "O."

21            We have A through X, I think, on 22.  And

22  this is 22-O.  And, actually, don't publish it yet.

23            MR. GREENFIELD:  Do you have the page

24  numbers for 22?  Or is this in addition?

25            MR. PRYOR:  7470.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 233 of 403   PageID 14057
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 436

 1                   MR. GREENFIELD:   7470.

 2    BY MR. PRYOR

 3    Q.   I'm just going to ask you if you are familiar

 4    with this

 5                   MR. McKEEBY:   Your Honor, we needed a

 6    limiting instruction on this document.

 7                   MR. GREENFIELD:   Is this before the jury

 8    right now?

 9                   THE COURT:   It is not.

10    BY MR. PRYOR:

11    Q.   Ma'am, are you familiar with trial Exhibit 22-0

12    or the facts that are discussed in there?

13    A.   I am not familiar with this document at all,

14    no.

15    Q.   Let me -- I won't offer it as an exhibit at

16    this time.

17         But did you have conversations with Naomi

18    Hudson informing her about the recall petition?

19    A.   Yes.

20    Q.   And why were you having discussions with

21    Southwest Airlines about the recall petition?

22    A.   Naomi Hudson was the lead negotiator for

23    Southwest at that time.  We were having regular

24    discussions.  The tentative agreement had just

25    failed, and it was part of a conversation regarding

1  us regrouping, the negotiating team, and everything

2  that was going on following that rejected tentative

3  agreement, of which she had been the lead for on the

4  Southwest side.

5  BY MR. PRYOR:

6  Q.   You weren't seeking her assistance in keeping

7  your team intact, were you?

8  A.   No.

9  Q.   And did you tell her you would continue to keep

10 her informed of the inner workings of your union?

11 A.   No.  Not -- it wasn't about the inner workings,

12 it was about the kind of reset that both teams were

13 doing following the rejected tentative agreement.

14 Q.   Did you represent Brett Nevarez in a mandatory

15 meeting?

16 A.   Yes.

17 Q.   What was he charged with?

18 A.   He wasn't charged with anything.

19 Q.   What was he called in to the mandatory meeting

20 for?

21 A.   He was called in to have a discussion about a

22 post he had made on social media.

23 Q.   And what were the posts?

24 A.   He was answering questions and speaking about

25 one of the lawsuits that the union was engaged in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 235 of 403   PageID 14059
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 438

1  with the former officers that were removed.

2  Q.   And you defended him and said he was engaged in

3  union activity, correct?

4  A.   I didn't even defend him.  I was there as his

5  representative.  They had told him advance no

6  discipline would be issued and it was just to have a

7  conversation.

8  Q.   In that conversation you said he was engaged in

9  protected union activity?

10  A.   No.  We stated that what he had posted was

11  public fact because the lawsuits were public in

12  nature.  And Southwest Airlines agreed that there

13  was nothing in violation of any of the work rules,

14  but cautioned him to be careful to not say anything

15  that could be construed in violation or something

16  that wasn't public information.

17  Q.   And you never said he was engaged in protected

18  union activity, correct?

19  A.   I don't recall if I used those specific

20  phrases.

21  Q.   Well, I'm not asking for a direct quote.

22       But did you or did you not tell Southwest

23  Airlines he was engaged in union activity and they

24  shouldn't be involved in that?

25  A.   I don't -- I don't remember using those words.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 236 of 403   PageID 14060
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 439

1  Especially because we knew in advance that there was

2  not going to be any discipline issued and it was

3  just a conversation.

4  Q.   A conversation or not, you told them during

5  that meeting what he was doing was protected union

6  activity.

7          MR. GREENFIELD:  Objection, your Honor,

8  asked and answered, and he's testifying.

9          THE COURT:  Sustained.

10 BY MR. PRYOR:

11 Q.   So what about Mr. Talburt, did you represent

12 him in a hearing?

13 A.   I assisted in his representation in a hearing.

14 Q.   I'm sorry?

15 A.   I assisted in his representation in a hearing.

16 Q.   And when you assisted Mr. Talburt, did you say

17 he was engaged in protected union activity?

18 A.   I don't remember if I used those exact words.

19 Q.   Okay.  When we talked about not being

20 evasive -- I'm not trying to quote you, I wasn't

21 there.  But the import of one of the things you told

22 them was Mr. Talburt was engaged in protected union

23 activity?

24 A.   For Talburt, that theme was probably discussed

25 in his meeting.  I just --

1  Q.   Given that you are now saying yes to that, why

2  were you playing the game of, I don't recall those

3  exact words?  Is that an evasive answer?

4  A.   No, sir.  I feel like you are trying to get me

5  to say that I made that statement to Southwest

6  numerous times.  And I cannot go back and tell you

7  what words I used in any of those meetings that took

8  place years ago.

9  Q.   I absolutely don't deny that you said it all of

10 the time.  If that is what you think I'm trying to

11 get you to not say.

12 A.   No, sir, that is not what I said.

13 Q.   And what had Mr. Talburt done that you were

14 defending him for?

15 A.   Um, it was, as part of his appeal process, on a

16 grievance following his termination for social

17 media.

18 Q.   And what had he done on social media that got

19 him terminated?

20 A.   He had called another flight attendant a

21 "fucktard."

22 Q.   And he was reinstated?

23 A.   He was.

24          MR. McKEEBY:  Your Honor --

25 Q.   And what about Bill --

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 238 of 403   PageID 14062
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 441

```
 1                 THE COURT:  Hold on.
 2                 MR. McKEEBY:  Objection, relevance.
 3                 THE COURT:  Sidebar.
 4                 (Thereupon, the following proceedings were
 5          had at sidebar:)
 6                 MR. McKEEBY:  Your Honor, he ran roughshod
 7   over your motion in limine ruling in opening
 8   statements and I stood there and took it.  And here
 9   he is doing it again here.
10                 The discipline of other employees is not
11   relevant and I shouldn't have to get witnesses up to
12   testify about it.  You have already ruled on that.
13   And objection, relevance, prejudice.
14                 MR. PRYOR:  I was not running roughshod
15   over your motion in limine.  I am absolutely within
16   bounds.  She was involved in these meetings.  She
17   took positions protecting her team members.  I have
18   shown she didn't take that those actions for others.
19   It goes right into the theory of our case and it is
20   relevant.
21                 MR. McKEEBY:  That part is fine.
22                 MR. PRYOR:  Where did I go over?
23                 MR. McKEEBY:  You went over when you
24   talked about what the ultimate disciplines --
25                 THE COURT:  Exactly, exactly.  That's
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 239 of 403   PageID 14063
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 442

 1  where you went over.

 2            MR. PRYOR:  But she opened the door when

 3  she said he was terminated.  And, in fact, he got

 4  reinstated.  He doesn't have to sign a last-chance

 5  agreement -- not that I'm going to be able to say

 6  that yet.  So I need to be able to respond to the

 7  answers she gave.

 8            MR. GREENFIELD:  And, Your Honor, I have a

 9  404(b) objection.  She's talking about past

10  practices to fall in line with what she was doing

11  with other people.  She's talking about

12  representation of one individual --

13            No, they're --

14            MR. GREENFIELD:  -- every single

15  individual at 15,000 --

16            THE COURT:  I think you can ask this

17  question and no farther.  I think as of now, she's

18  only opened the door to terminated but then

19  reinstated.

20            MR. PRYOR:  Fair enough.

21            THE COURT:  Got it?

22            (Thereupon, the sidebar was concluded and

23       the following proceedings were held in open

24       court:)

25            THE COURT:  Okay.  You can reask that

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 240 of 403  PageID 14064
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 443

1  question we discussed.

2  BY MR. PRYOR:

3  Q.   Mr. Talburt was reinstated, correct?

4  A.   Yes.

5  Q.   And he was represented in part by you, who, at

6  the time, you were negotiating a union contract with

7  Southwest Airlines, right?

8  A.   Yes.

9  Q.   And Bill Holcomb, someone else was on your

10 team, was charged with social media policy, and he

11 was someone that you took care of while you were

12 negotiating the CBA agreement?

13 A.   I -- I never -- what do you mean "took care

14 of"?  I never represented Bill.

15 Q.   Well, by "took care of," he was charged with

16 something pretty serious, typically at Southwest

17 Airlines and passenger shaming, wasn't he?

18 A.   I don't recall what Bill's social media

19 complaint was.  I don't --

20 Q.   I didn't say social media.  I said passenger

21 shaming.

22 A.   I don't recall Bill having an issue with

23 passenger shaming.

24 Q.   Okay.  Maybe it is someone else.  If I'm wrong,

25 I apologize.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 241 of 403   PageID 14065
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                         Page 444

1         But did you or did you not meet with Naomi
2    Hudson at a time when Bill Holcomb, on your
3    negotiating team, was charged with violation of
4    social media policy?  And you asked Naomi Hudson to
5    get rid of that charge and she refused.  And you
6    went to Mike Hafner and asked him to, and he did.
7    A.    No.  That is not an accurate representation.
8    Q.    You didn't do that?
9    A.    No.
10   Q.    You didn't meet with Mike Hafner and say, "We
11   need these social media policy violations to go
12   away," and within 24 hours, they went away?
13   A.    That is not what you stated earlier.
14   Q.    Tell me, did you or did you not talk to
15   Mr. Hafner about social media policy employees that
16   were charged --
17   A.    I did.
18   Q.    -- and after you met with him, at a time when
19   you are negotiating the CBA, within 24 hours, maybe
20   48, those charges are gone?
21            MR. GREENFIELD:  Objection, your Honor,
22   compound question.
23            THE COURT:  Sustained.
24            MR. McKEEBY:  My objection is to relevance
25   based on what we just discussed.  He's talking

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 242 of 403   PageID 14066
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 445

 1    about -- well.

 2              THE COURT:  I will sustain that as well.

 3    BY MR. PRYOR:

 4    Q.   Ma'am, did you have a conversation with

 5    Mr. Hafner about getting social media charges

 6    removed from some of your team members at a time you

 7    were negotiating the CBA?

 8    A.   I had a meeting with Mike Hafner to discuss

 9    getting discipline removed for all of the flight

10    attendants that currently had discipline on their

11    record for a social media violation.  One of whom

12    was a team member of mine at the time.  Some who had

13    no involvement with union.  Some that I didn't know.

14    And some that were non-members of the union.

15    Q.   And one of them was Bill Holcomb?

16    A.   Yes.

17    Q.   And within 48 hours, that was resolved?

18              MR. McKEEBY:  Your Honor, same objection.

19              THE COURT:  Sustained.  Counsel, please

20    refrain.

21              MR. PRYOR:  I apologize, I'm not

22    understanding.  Can I approach?

23              THE COURT:  You bet.

24              (Thereupon, the following proceedings were

25        had at sidebar:)

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 243 of 403   PageID 14067
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 446

1           MR. PRYOR:  She gets the charges dismissed

2    and I can't discuss that?  If I can't, I understand.

3    But that is not -- I'm missing the distinction.  I'm

4    not talking about a punishment they received.  They

5    got off completely.

6           THE COURT:  So I think this was

7    Southwest's limine point one, which I granted.  So

8    Southwest handles this -- I mean, y'all redirected

9    it to say, no, what we are really looking at is

10   union fair representation, right?  So what did she

11   say to Southwest?  Sure, that is fair game.  What

12   did Southwest do?  Those are the questions you keep

13   asking and those are the subject of limine point

14   one.

15          MR. PRYOR:  Okay.  Then, you are right.  I

16   did ask that question.

17          I believe it is relevant -- and it doesn't

18   matter if I believe it is relevant.  If I thought

19   you had ruled I couldn't do that, I won't do it.

20          But she got her team members -- she

21   treated them differently than other people.  She

22   went in and met with Hafner and got Holcomb and

23   Talburt charges dismissed.  That's what she -- now,

24   she keeps saying --

25          MR. McKEEBY:  Everything is fine until the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 244 of 403   PageID 14068
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 447

 1   charge is dismissed; correct?

 2              MR. GREENFIELD:  Correct.  She already

 3   testified --

 4              THE COURT:  Yeah, until the outcome of

 5   the -- Southwest decided, right?  You can ask what

 6   she did on their behalf.  That is not the subject

 7   of -- what is the subject is, what is Southwest's

 8   ruling, then, because we don't have comparators.

 9   That's not what --

10              MR. PRYOR:  And so Southwest colluding

11   with her in order to get a better Collective

12   Bargaining Agreement doesn't show that she's not

13   adequately representing my client?

14              THE COURT:  Well, you got plenty of things

15   to talk about.  It is just the last question that

16   wasn't --

17              MR. PRYOR:  All right.  I think I

18   understand it now.  I won't violate it.

19              THE COURT:  Understood.  Thank you.

20              (Thereupon, the sidebar was concluded and

21        the following proceedings were held in open

22        court:)

23              THE COURT:  Okay.  You can ask a new

24   question.

25

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 245 of 403  PageID 14069
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 448

 1  BY MR. PRYOR:

 2  Q.   Did your core team sexually harass someone

 3  because they were gay?

 4  A.   No.

 5  Q.   You don't have any recollection of that?  You

 6  don't recall defending them?

 7  A.   Someone for -- no.  Somebody sexually harassing

 8  somebody because they were gay?  No, I don't recall

 9  that.

10  Q.   I don't know if you're trying to split hairs

11  with me, but it would seem pretty easy to me, either

12  you did or you didn't sexually harass --

13  A.   I don't -- I don't recall that.

14  Q.   You don't recall it?  Did it happen --

15  something -- I remember I didn't murder somebody at

16  lunch.  Do you remember whether or not your team

17  members sexually harassed someone because they were

18  gay on your core team member site?

19  A.   One of my team members made a comment about

20  another flight attendant.  He was investigated.  But

21  the flight attendant that made the comment was gay.

22  So I don't -- so no, not to my knowledge.

23  Q.   And so what was the comment, then?  What was

24  the comment they were investigated for?

25  A.   I don't recall the details of the comment.  It

1  was something -- it was something not nice about

2  another flight attendant.  I think it may have been

3  about their appearance.

4  Q.   And I'm sure that you took action against that

5  core team member that said something not nice about

6  the flight attendant?  Oh, no, wait, you didn't,

7  right?  Oh, no, you defended them?

8  A.   Is that a question?

9  Q.   Yes.  Did you defend them as opposed to

10 reprimand them, how about that?

11 A.   I defended all of the flight attendants that

12 had social media violations at that time.

13          MR. PRYOR:  Exhibit 23.  We move for its

14 admission.  23.

15          THE COURT:  23, I have Union objections

16 from this morning.

17          MR. McKEEBY:  No objection.

18          THE COURT:  No from Southwest.  Okay.

19          Anything else to add to Union from this

20 morning?

21          Okay.  I will overrule the Union

22 objections and we can publish 23.

23          (The referred-to document was admitted in

24      Evidence as Plaintiff's Exhibit 23.)

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 247 of 403   PageID 14071
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                        Page 450

 1  BY MR. PRYOR:

 2  Q.   Ma'am, is this one of your -- Exhibit 23 one of

 3  your president's messages to flight attendants?

 4  A.   Yes.

 5  Q.   And I just want to make sure I get this into

 6  evidence.

 7       You acknowledge that the contract you

 8  negotiated was -- it missed the mark, and as team

 9  leader you own that, and that you were the lead

10  negotiator?  True?

11  A.   Yes.

12          MR. PRYOR:  Let's look at -- I think it is

13  134.  Let me check, before you put it up.

14  Q.   Ma'am --

15          MR. PRYOR:  I'm not offering it at this

16  point.

17  BY MR. PRYOR:

18  Q.   For the recall petition, you were president at

19  the time, correct?

20  A.   Yes.

21  Q.   The recall verification committee, who

22  appointed the recall verification committee?

23  A.   The executive board.

24  Q.   The executive board includes Audrey Stone, one

25  of the people to be recalled, correct?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 248 of 403   PageID 14072
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 451

 1  A.    Yes.

 2  Q.    And it includes Brett Nevarez, one of the

 3  people to be recalled, correct?

 4  A.    Yes.

 5  Q.    And it included John Parrott, one of the people

 6  to be recalled, correct?

 7  A.    Yes.

 8            MR. PRYOR:  52.  Let's look at Trial

 9  Exhibit 52.  We will move for its admission.

10            THE COURT:  52?  I don't have any

11  objections to 52.

12            MR. McKEEBY:  It wasn't listed, but I

13  don't think I have any objection.

14            MR. PRYOR:  It wasn't in our report last

15  night.

16            THE COURT:  It is not on the last night

17  list.  I can call a break and see if they have an

18  objection at the break.  How about that?

19            Okay.  I'm going to call the first

20  afternoon break.  We will do a ten-minute break.

21  We'll see you back here at 2:38.  Same three

22  instructions:  Only talk to your fellow jurors and

23  court personnel, just not about the case; don't talk

24  to anyone else; and don't do any research.

25            All rise for the jury.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 249 of 403   PageID 14073
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 452

1              (The jurors exited the courtroom.)

2              THE COURT:  Okay.  Same instructions to

3    you.  You can take your break, but you just can't

4    talk to anyone about the case.

5              Any issues we need to talk about?  So

6    y'all look at 52, and then we will come back a few

7    minutes early and then see if y'all have objections

8    to 52.  Sounds good.  See you in a minute.

9

10             MR. GREENFIELD:  What time, Judge?

11             THE COURT:  So we are back here at maybe

12   2:36.  Sound good?

13             MR. GREENFIELD:  Thank you.

14             THE COURT:  See you in a few.

15             (Recess.)

16             THE COURT SECURITY OFFICER:  All rise.

17             THE COURT:  Is there anything to say about

18   52?

19             MR. McKEEBY:  No objection.

20             No objection.  Yeah, no objection.  There

21   is another issue, but it is not -- we can handle it

22   later.

23             THE COURT:  Okay.  That works.  Okay.

24   Let's bring in the jury.

25             (The jurors entered the courtroom.)

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 250 of 403   PageID 14074
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 2 July 06, 2022                Page 453

1                THE COURT:  Thank you.  You can be seated.

2                Okay.  I have admitted Exhibit 52 into

3     evidence.

4                And you can proceed, Mr. Pryor.

5                (The referred-to document was admitted in

6        Evidence as Plaintiff's Exhibit 52.)

7     BY MR. PRYOR:

8     Q.   Now, I'm looking at Exhibit 52.  It is a

9     January 10, January 12 -- it will be up on the

10    screen in a minute, I hope -- TWU Local 556

11    executive board meeting synopsis.

12         Do you see that?

13    A.   Yes, sir.

14    Q.   And you were at that meeting?

15    A.   Yes.

16                MR. PRYOR:  And let's go to the next page.

17    BY MR. PRYOR:

18    Q.   Under Working Women's Committee, at the bottom.

19    Do you see it?

20    A.   Yes.

21    Q.   Lori worked with Working Women's Committee

22    Chair, Jessica Parker, on coordination of meetings

23    and events during the Women's March on Washington on

24    January 21.  Lori procured a TWU Local 556 WWC

25    banner that will be used at the march and future

 1  events.

 2        And is that what happened?

 3  A.    Yes.

 4  Q.    Did the banner say "Southwest Airlines" on it?

 5  A.    Yes.  I believe it said the "Union of Southwest

 6  Flight Attendants."

 7              MR. PRYOR:  Your Honor, can I approach?

 8              THE COURT:  Yes.

 9              (Thereupon, the following proceedings were

10        had at sidebar:)

11              MR. PRYOR:  I'm going to ask if Southwest

12  Airlines ever took any action against them for using

13  Southwest Airlines's name on that banner and at the

14  march.  And I think I can, but I'm a little worried

15  because I truly don't want to do what I'm not

16  supposed to.

17              THE COURT:  Sure.  And it is not another

18  employee, an employee discipline situation, so I

19  don't think it is in limine point 1.

20              MR. McKEEBY:  Exactly.  No, I think that

21  is a fair question.

22              THE COURT:  Thank you for asking.  This

23  time is on me.

24              MR. PRYOR:  And I hope I can say it right.

25              (Thereupon, the sidebar was concluded and

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 252 of 403   PageID 14076
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 455

1      the following proceedings were held in open

2      court:)

3              THE COURT:  Okay.  You can ask that

4   question that we were thinking of.

5              MR. PRYOR:  Thank you, Your Honor.

6   BY MR. PRYOR:

7   Q.   Ma'am, to your knowledge, did Southwest

8   Airlines, at any time, take any action against

9   anyone with the union for utilizing Southwest

10  Airlines's name at that march?

11  A.   No, not to my knowledge.

12             MR. PRYOR:  Let's look at Exhibit 53.

13             Your Honor, we move for the admission of

14  Exhibit 53.

15             MR. McKEEBY:  No objection from Southwest.

16             THE COURT:  Okay.  I have yours from this

17  morning.

18             MR. GREENFIELD:  And if we can approach on

19  that.

20             THE COURT:  You can approach on that.

21             (Thereupon, the following proceedings were

22      had at sidebar:)

23             MR. PRYOR:  I was worried I wasn't going

24  to get my milage in today.

25             MR. GREENFIELD:  I was too.

```
 1              THE COURT:  Okay.  Argument?
 2              MR. GREENFIELD:  Yes.  First of all, your
 3  Honor, the document is altered.  It is highlighted.
 4  We don't know where it came from.  It is incomplete.
 5  It is a partial list of potential sponsors.  We
 6  don't know the veracity of who the sponsors or where
 7  the document came from.
 8              It is just wholly inappropriate.  It is a
 9  piece of evidence we don't know where it came from,
10  it has been altered, and it is a partial document.
11              THE COURT:  You address those.
12              MR. PRYOR:  I don't know what he means
13  abut authored.  This --
14              MR. GREENFIELD:  It's got, like, purple
15  highlighting --
16              MR. PRYOR:  Oh, that --
17              MR. GREENFIELD:  -- and yellow highlighter
18  on it.
19              MR. PRYOR:  I'll have to look at it.
20              MR. GREENFIELD:  Well, highlighting
21  planned Parenthood specifically, which again, we
22  think is just intended to inflame the jury.
23              MR. PRYOR:  Or intended to show them what
24  I want to talk about.  But I don't -- frankly don't
25  know what is on the exhibit other than it is a
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 254 of 403   PageID 14078
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 457

1  document I think that she has recognized and can

2  identify as the document that shows who the sponsors

3  of the Women's March was.  That is the reason I'm

4  offering it.  I can limit it to to the first page, I

5  guess, although there is --

6          MR. GREENFIELD:  That is the problem, it

7  is a partial document.  It is just one page showing

8  a handful of the sponsors of the --

9          MR. PRYOR:  It shows the premier sponsors.

10 There are two premier sponsors.

11         THE COURT:  You can ask her that.

12         MR. PRYOR:  Okay.

13         THE COURT:  And if she doesn't know, you

14 can use it to refresh her recollection without it

15 coming into evidence.  But I do have concerns, given

16 the alterations of the --

17         MR. PRYOR:  Fair enough.  Absolutely.

18         THE COURT:  So you have got a path

19 forward.

20         MR. PRYOR:  Okay.

21         THE COURT:  Any other concerns?

22         MR. McKEEBY:  No.  Well, I will go back

23 and look at the document.

24         MR. PRYOR:  I may look at it, too.

25         THE COURT:  Got it.

```
 1                (Thereupon, the sidebar was concluded and
 2         the following proceedings were held in open
 3         court:)
 4                MR. PRYOR:  Can I get a copy of
 5    Exhibit 53?
 6                MR. PRYOR:  May I approach the witness,
 7    your Honor?
 8                THE COURT:  You may.
 9    BY MR. PRYOR:
10    Q.    Ma'am, can you identify the first page of
11    Exhibit 53?
12    A.    It looks like it is --
13    Q.    Well, hang on.  I want to be careful here.
14          Is this a document that you have seen before,
15    how about that?
16    A.    No.
17    Q.    Is this is a document that is consistent with
18    your recollection regarding who the sponsors of the
19    Women's March was?  Were?  Are?  It is one of those.
20    A.    No.  There is names on here I have not even
21    heard of.
22    Q.    Well, does it refresh your recollection as to
23    Planned Parenthood?  Or do you need it refreshed?
24    A.    I'm aware that Planned Parenthood had a part in
25    the march, yes.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 256 of 403   PageID 14080
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 459

1  Q.   Well, there is having a part in the march and

2  then there is the premier sponsor, the major

3  sponsor.

4       Are you aware that Planned Parenthood was one

5  of the two premier sponsors of the Women's March?

6            MR. GREENFIELD:  Objection, your Honor.

7  He's testifying if she's aware that they were.

8  There's been --

9            THE COURT:  Sustained.  Hold on.  No

10  speaking objections.  Sustained.  You can rephrase

11  it.

12  BY MR. PRYOR:

13  Q.   Ma'am, do you know who the premier sponsors of

14  the Women's March were?

15  A.   According to this, Planned Parenthood and

16  something called NRDC.

17  Q.   As you sit here today, you are telling us that

18  you sent Local 556 to a march without knowing who

19  the premier sponsors were?

20  A.   I didn't -- I did not know -- I'm still not

21  familiar with who NRDC is.

22  Q.   Let's try Planned Parenthood.

23       Do you know who they are?

24  A.   Yes.

25  Q.   And you knew when you went to the Women's March

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 257 of 403   PageID 14081
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 460

1  that Planned Parenthood was one of the major

2  sponsors of the march?

3  A.    Yes.

4  Q.    Do you know what a "pink out" is?

5  A.    No.

6  Q.    You never heard of a "pink out" in connection

7  with the Women's March on Southwest Airlines's

8  flights?

9  A.    Yes.

10  Q.    Tell us what it is.

11  A.    I believe it is referring to, there were flight

12  attendants that changed the lights on our newer

13  aircraft that have different colored light settings

14  and changed them to pink on some of the flights

15  going in and out of the Baltimore/Washington area.

16  Q.    And is that consistent with Southwest

17  Airlines's policies, that the flight attendants can

18  make decisions to choose a political cause and do

19  something on the plane for it?

20  A.    No.

21  Q.    And so you believe they violated policy?

22  A.    The flight attendants that did that?  Yes.

23  Q.    Do you know if anyone lost their job?

24  A.    I don't know.  I don't believe so.

25  Q.    I was going to say, don't you think you would

 1  have heard if someone lost their job?

 2  A.   I don't think so.

 3  Q.   You don't think so, you would have heard, or

 4  you don't think so, no one lost their job?

 5  A.   I don't think anyone lost their job.

 6  Q.   Okay.  So far, the only person that lost their

 7  job that we have talked about is Charlene Carter,

 8  right?

 9  A.   That lost their job at Southwest Airlines?

10  Q.   That we have talked about today.  These

11  employees that --

12           THE COURT:  Counsel, will you approach?

13           MR. PRYOR:  Sorry.

14           (Thereupon, the following proceedings were

15      had at sidebar:)

16           MR. PRYOR:  I made it about 20 minutes --

17           THE COURT:  I give up.  I'm just -- I'm

18  done.

19           MR. GREENFIELD:  Now we are in the thick

20  of it.  Now she's got to talk about it.

21           MR. McKEEBY:  I don't think she has to

22  talk about it.

23           MR. GREENFIELD:  She does.

24           THE COURT:  How about I go tell the jury

25  that I have said, based on my prior rulings in this

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 259 of 403  PageID 14083
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 462

1  case, that how Southwest disciplined other employees

2  is not relevant to this okay case?

3         MR. PRYOR:  Yes, your Honor, I deserve

4  that.

5         THE COURT:  Okay.

6         (Thereupon, the sidebar was concluded and

7     the following proceedings were held in open

8     court:)

9         THE COURT:  Okay.  So I will tell the

10  jury, I have had a prior ruling in this case that

11  how Southwest treated other people is not relevant

12  to this employment lawsuit.  So I have cut that

13  segment of the world out, so y'all don't have to

14  hear about how they treated anyone else.

15         With that, you can ask a new question, if

16  you have one.

17         MR. PRYOR:  Thanks, Your Honor.

18         And I apologize for asking the question.

19  I understand that ruling, your Honor.  I appreciate

20  that.

21  BY MR. PRYOR:

22  Q.   Okay.  Let's go to Exhibit 56.

23       And we move for the introduction of Exhibit 56.

24         THE COURT:  All right.  I have morning

25  objections from the union and none from Southwest.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 260 of 403   PageID 14084
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 463

1    I know what I'm going to rule on this.  Need a

2    sidebar or are you okay?

3              MR. GREENFIELD:  If you already have your

4    decision made, Your Honor, I don't think we need to.

5              THE COURT:  Pictures aren't hearsay.

6    There is one exception, but it is not in this case.

7    So I will allow them into evidence and 56 can come

8    in over the objection.

9              (The referred-to document was admitted in

10        Evidence as Plaintiff's Exhibit 56.)

11   BY MR. PRYOR:

12   Q.   Let's look at AP -- page AP31.

13        Well, first of all, let's look on the first

14   page.

15        Exhibit 56, these are some pictures from some

16   or all of the people that attended the Working

17   Women's March in Washington DC?

18   A.   No.

19   Q.   What is it?

20   A.   It is a photograph of the people that attended

21   the TWU Local 556 Working Women's Committee Meeting

22   held in conjunction with TWU International in DC.

23   Q.   Okay.  And for that meeting up there in

24   conjunction with this march, the union paid for all

25   of these people to go up there, right?

1  A.    No.  I believe all of the flight attendants

2  volunteered their time for that meeting, with the

3  exception of me, and I was on a salary as part of my

4  position.

5  Q.    What about the hotels and airfare?

6  A.    The airfare was provided by Southwest Airlines,

7  per our Collective Bargaining Agreement, that says

8  Southwest will provide travel for union business.

9  And the hotels were paid for by the union out of the

10 Working Women's Committee budget.

11 Q.    It was paid for by the union?

12 A.    The hotels, yes.

13 Q.    And I'm missing -- you are just going to have

14 to pull that closer to your mouth for me.  I

15 couldn't hear the last part.  It was paid for by the

16 union, what?

17 A.    The hotels were paid for by the union out of

18 the Working Women's Committee meeting -- Working

19 Women's Committee budget.

20 Q.    And who funded that budget?

21 A.    Budgets were funded through union dues.

22 Q.    So in other words, the union paid for it?

23 A.    Yes.

24 Q.    Okay.  And by the way, it says on that banner

25 "Southwest Airlines," right?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 262 of 403   PageID 14086
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 465

1  A.   Yes.  Our logo always includes that.

2  Q.   And that was the banner that was carried in the

3  March?

4  A.   Yes.

5  Q.   Okay.

6           MR. PRYOR:  Let's look at AP31.

7  BY MR. PRYOR:

8  Q.   Are you in this picture?

9  A.   Yes.

10 Q.   You are part of the march?

11 A.   Yes.  I was there for part of the march.

12 Q.   Okay.  Let's look at 32.

13      And under -- by the way, these are Facebook

14 posts on, what, the union's Facebook page?

15 A.   Yes, part of it is.  And then it looks like

16 someone shared the post from the Union's Facebook

17 page.

18 Q.   By the way, the Union Facebook page, you can't

19 put comments on?

20 A.   That is correct.  It was a one-sided

21 communication avenue.

22 Q.   And this is a picture posted on the Union

23 Facebook page about the march that says, My body, my

24 choice, correct?

25 A.   Yes.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 263 of 403   PageID 14087
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 466

1  Q.   Let's look at 43, I think -- not 43, 49.  Look

2  at 49.

3       And this, again, is on the Union Facebook page

4  with pictures from the march and pictures of flight

5  attendants in their uniforms on a Southwest Airlines

6  flight, correct?

7  A.   I'm assuming so.  I can't tell -- this document

8  doesn't have a header like the first one did that

9  shows where it was posted.

10  Q.   So you are questioning as to whether or not

11  it's on some other social media site or the union?

12  A.   Right.  I just -- I just can't determine that.

13  It just uploads.  It doesn't show where it is being

14  displayed.

15  Q.   Okay.  Someone is posting pictures of people in

16  Southwest Airlines's uniforms at the time of the

17  march, either a few days before or a few days after,

18  along with pictures of people at the Women's March,

19  true?

20           MR. GREENFIELD:  Objection, your Honor,

21  lack of foundation.

22           THE WITNESS:  Yes.

23           MR. GREENFIELD:  We don't know where these

24  pictures came from, who posted them.

25           THE COURT:  I will allow it.  I will allow

1  it.  She can answer if she has knowledge.

2  BY MR. PRYOR:

3  Q.   Your answer was yes, ma'am?

4  A.   That they were posted somewhere, yes.

5  Q.   I understand you are not sure where they were

6  posted, at least this picture.

7       Now, as a result of this, you received

8  communications on Audrey Stone TWU Facebook page,

9  you received a Facebook message from Charlene

10 Carter?

11 A.   At the time of the March, I do not believe my

12 Facebook was designated Audrey Stone TWU.  It had

13 been at one point in the past.  I received messages

14 from Charlene Carter shortly following this via

15 instant messenger on Facebook.

16 Q.   And it was to a Facebook page that was Audrey

17 Stone TWU, correct?

18 A.    No.  That is what I just said, I do not believe

19 it was labeled Audrey Stone TWU at the point that

20 she communicated with me following the march, that

21 it was just Audrey Stone.

22 Q.   Would you be surprised that you didn't change

23 it until after the complaint you filed against

24 Charlene?

25 A.   I don't remember when I changed it.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 265 of 403   PageID 14089
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 468

1  Q.   You can swear under oath, though.  It was not

2  Audrey Stone TWU at the time that you sent it?

3  A.   That is not what I said.  I said I did not

4  think it was Audrey Stone TWU, that I believed it

5  was just Audrey Stone.  I knew I had changed it at

6  some point.

7  Q.   You did.

8       If it was Audrey Stone TWU at the time Charlene

9  Carter sent her Facebook message to you, does that

10 change your opinion about whether or not you should

11 have reported something received from a union

12 member?

13 A.   No.

14 Q.   So even if it came to Audrey Stone TWU, it is

15 still inappropriate and the union should take

16 action?

17 A.   I still believe that it would have been

18 inappropriate and that Southwest Airlines should

19 take action in investigating.

20 Q.   You certainly used Audrey Stone TWU Facebook

21 page for union activities, true?

22 A.   At points during my presidency, yes.

23 Q.   By the way, at some point, did you send out an

24 email to all of these people, or a Facebook message

25 to all of these people that you have been sending

1  Facebook messages to about union activities, Audrey

2  Stone TWU, did you ever send out something saying,

3  That is no longer Audrey Stone TWU, that is now my

4  personal Facebook page?  Did you ever do that?

5  A.    No.  I did not often use Facebook as a vehicle

6  for communicating with members.

7  Q.   Now, but you did.  You used it to communicate

8  with Facebook members, including Charlene Carter?

9  A.   I said I didn't often use it.  And I did not

10  use it to communicate with Charlene Carter.

11  Charlene Carter utilized my Facebook to communicate

12  with me.  It was a one-way communication.

13  Q.   You never sent out a blast Facebook message

14  encouraging flight attendants to support -- or to

15  oppose right-to-work laws?

16  A.    No.

17  Q.   You never sent any message from your Audrey

18  Stone TWU saying, Support my Candacey?

19  A.    Facebook messages?

20  Q.    Yes.

21  A.    Yes.

22  Q.    From Audrey Stone TWU?

23  A.    I made posts, I didn't send messages --

24  Q.    Okay.  Posts --

25  A.    -- via Facebook to members.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 267 of 403   PageID 14091
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 470

 1  Q.   Let me try it again.

 2       Did you use Audrey Stone TWU Facebook to make

 3  posts to members of the union?

 4  A.   If they were a friend of mine on Facebook, yes.

 5  Q.   You -- and who-all were your friends?  You

 6  didn't have access to all of the flight attendants,

 7  it was only a select few friends?

 8  A.   I never had -- my Facebook was not a public

 9  account.

10  Q.   I didn't ask if it was public.

11       Did you use it to send messages to flight

12  attendants in connection with your campaign for

13  union president?

14  A.   If they were a Facebook friend of mine, or on a

15  group that I was a member of.  But to the general

16  membership, no.

17  Q.   So how many flight attendants did you send

18  these to, do you suppose?  Are we talking 5?  50?

19  100?

20  A.   Which post?

21  Q.   The post -- let's just use "Support your

22  Candidacy"?

23  A.   I don't recall how many Facebook friends I had

24  during the election in 2015.

25  Q.   And in fact, didn't you set up a different

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 268 of 403  PageID 14092
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 471

1  Facebook account for your family activities as

2  opposed to Audrey Stone TWU?

3  A.   I initially did.  And then quickly into my

4  presidency, I realized that I just didn't have time

5  to stay abreast via Facebook and that that wasn't

6  going to be a communication tool that I used

7  primarily.

8  Q.   I hear what you want to say, but is my

9  statement correct?

10 A.   Yes.

11 Q.   And by the way, that other Facebook account,

12 what was it called?

13 A.   Audrey Stone.

14 Q.   And what is your understanding of whether or

15 not it violates Facebook rules to have two Facebook

16 pages for the same person?

17 A.   I don't know anything about --

18          MR. McKEEBY:  Objection.

19          THE COURT:  Sustained.

20 BY MR. PRYOR:

21 Q.   You had two Facebook pages, one of them was

22 Audrey Stone, one of them was Audrey Stone TWU;

23 correct?

24 A.   Yes.

25 Q.   Now, when you received a communication from

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 269 of 403   PageID 14093
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 472

1   Charlene Carter, you were at the airport getting

2   ready to get on a flight?

3   A.   When I received one of the communications from

4   Charlene Carter, yes.

5   Q.   The message that you ended up filing a

6   complaint against her for?

7   A.   Yes.

8   Q.   Can you bring that closer to your mouth, lean

9   forward?

10  A.   Yes.

11  Q.   And when you got this message, you clicked on

12  the message for it to play?

13  A.   I opened Facebook Messenger, and her message

14  was at the top as the most recent message.  And when

15  I opened the message, the video started playing.

16  Q.   So the way Facebook Messenger works is, you

17  open it, but you then you click on the video, if you

18  want to watch it, it doesn't automatically play.

19       Do you understand that?

20            MR. GREENFIELD:  Objection.  The witness

21  is testifying -- or, excuse me -- counsel is

22  testifying.

23            THE COURT:  I will allow you to rephrase

24  it.

25

1   BY MR. PRYOR:

2   Q.   Isn't it correct that you had to click on the

3   video for it to play?  That is the way Facebook

4   Messenger works?

5   A.   When I opened it, to pull the message up, it --

6   Q.   Is it upsetting, ma'am, because you think you

7   saw a life?  If it is not a life, why are you upset?

8   A.   I am upset because it was the most graphic,

9   disturbing image I have seen.

10  Q.   What is disturbing about it?  Is it because it

11  shows a baby?  It makes the point she was trying to

12  make about what you were doing with that march, that

13  is why you are crying?

14  A.   That is not correct.

15  Q.   So you are not crying because it was a baby.

16  Explain to me why it is graphic and upsetting if it

17  is not?  What's -- then if it is nothing, what is

18  upsetting about it?

19  A.   I didn't say it was nothing.

20  Q.   Okay.  It is something.  Okay.

21       So let me just see if I understand.  You are

22  telling us that that video started playing without

23  you asking it to, without you clicking on it.

24  A.   When I opened it, I may have inadvertently hit

25  play.  It all happened so fast.  I was horrified.  I

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 271 of 403   PageID 14095
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                      Page 474

1  was about to board a flight in Denver.  And I opened

2  it -- I was watching Facebook, and the next thing I

3  know, it was playing.

4  Q.   Okay.  So you may have inadvertently clicked

5  play.

6       And did you read the message before you clicked

7  play vertently or inadvertently?

8  A.   No, I stopped.  I stopped it.  And I did not

9  read any further at that moment.

10 Q.   How many seconds did you watch the video before

11 you stopped it?

12 A.   I don't remember exactly how many seconds it

13 was.

14 Q.   Okay.  But it was seconds?  You didn't watch it

15 for very long, it was too upsetting to you, correct?

16 A.   Correct.

17 Q.   Would you say three seconds?  How long before

18 you realized, I don't want to watch this, if it is

19 so graphic?  Was it two seconds?

20          MR. GREENFIELD:  Objection, your Honor.

21          MR. GILLIAM:  Three seconds?

22          MR. GREENFIELD:  Asked and answered, she

23 said she doesn't remember.

24          And it is my understanding that there is

25 the law, but there is also the language in the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 272 of 403   PageID 14096
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 475

 1  contract under Article III that ultimately Southwest

 2  can decide what is or isn't a violation of their

 3  policy regardless of what kind of activity it is.

 4  BY MR. PRYOR:

 5  Q.   Oh, let's look at that.  Article III is going

 6  to say that?  That is your testimony under oath,

 7  ma'am?

 8  A.   No, sir.  I'm saying that is my understanding.

 9  Q.   No, no, let's look at it.

10          MR. PRYOR:  May I approach?

11          THE COURT:  You may.

12  BY MR. PRYOR:

13  Q.   In the contract you negotiated you swore to

14  under oath that says illegal activity is all you can

15  do when someone is engaged in union activity.  Go,

16  give to me.

17  A.   That is not what I stated.

18  Q.   Article III.  Common on, you just swore to it.

19  It is different than what you swore to this morning?

20  A.   I did not swear to what you just stated.

21  Q.   Are you wanting to withdraw what you said?  In

22  fact, you cannot report a union member engaged in

23  legal union activity and you did.  Right?

24          MR. GREENFIELD:  Objection, your Honor,

25  asking for a legal conclusion again.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 273 of 403   PageID 14097
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 476

1            THE COURT:  I will allow it.

2            THE WITNESS:  I do not believe that I

3  violated the law by bringing my concerns forward to

4  Southwest Airlines.

5  BY MR. PRYOR:

6  Q.   You want to go ahead and answer my question

7  now?

8        I understand what you want to say.

9        You told us, Article III, it says it.

10       No.  Article III doesn't say that.  You know

11  it.

12       You know that you reported someone to the

13  company for engaging in legal union activity to

14  retaliate against her because she was on the recall

15  petition.

16  A.   No.  Absolutely not.  I did not do anything to

17  retaliate against Charlene Carter.  And I do not

18  believe that what she did in the totality of

19  everything she sent in that batch was protected

20  union activity.

21       No one.

22  Q.   So the video was so upsetting, it is outside

23  union activity, when -- what about religious

24  activity, when her religious beliefs are that that

25  is murder?  You don't have to agree with her.  And

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 274 of 403   PageID 14098
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 477

1    I'm not up here taking a position either.  But she

2    believes it and her religion tells her to confront

3    that, and speak truth to the situation.

4         And it must have spoken to you in a way because

5    you cry about it.

6              MR. McKEEBY:  Objection, testifying,

7    foundation as to Ms. Carter's belief.

8              THE COURT:  Sustained.

9    BY MR. PRYOR:

10   Q.   Isn't that why you cried about it, ma'am?

11             THE COURT:  I sustained that.  Can you ask

12   a new question free standing?

13             MR. PRYOR:  I will.  I will, let me get my

14   notes back.

15   Q.   You don't want to talk to us about Article III,

16   ma'am?

17   A.   I have repeatedly said that the way you are

18   repeating my comment about Article III is incorrect.

19   Q.   We are doing a daily transcript.  Maybe we will

20   show that to the jury in closing if we have that.

21   You are okay with that?

22             MR. GREENFIELD:  Can we have a sidebar?

23             THE COURT:  Sustained.

24   BY MR. PRYOR:

25   Q.   Ma'am, let's look at exhibit -- I think it is

```
 1  66.

 2  BY MR. PRYOR:

 3  Q.   Did you watch the George Floyd video?

 4           MR. GREENFIELD:  Objection, your Honor,

 5  relevance.

 6           THE COURT:  Sustained.

 7  BY MR. PRYOR:

 8  Q.   Do you believe that a video is an effective

 9  means of showing someone what is really happening

10  and effect change?

11  A.   I think it depends on the circumstance.

12  Q.   Okay.  How about in the situation of George

13  Floyd, then?

14           MR. GREENFIELD:  Objection, Your Honor.

15           MR. PRYOR:  She just raised it --

16           THE COURT:  I will allow it.

17           MR. PRYOR:  I missed the ruling.

18           THE COURT:  I will allow it.

19  BY MR. PRYOR:

20  Q.   So how about the George Floyd video, then?  By

21  the way, I'm not -- it is the most disturbing thing

22  I have ever seen.  Did it disturb you?

23  A.   I didn't watch all of it.

24  Q.   I'm sorry?

25  A.   I didn't watch all of it.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 276 of 403   PageID 14100
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 479

```
 1  Q.    I understand.
 2        What you did watch, did it disturb you?
 3  A.    Yes.
 4  Q.    And, you know, I think we have heard in this
 5  country before, about African-American men being
 6  victimized by police, that --
 7              MR. GREENFIELD:  Objection, your Honor
 8  he's testifying.
 9              THE COURT:  You have got to let him finish
10  his question first.
11  BY MR. PRYOR:
12  Q.    -- but that video changed America, didn't it?
13              MR. GREENFIELD:  Objection, Your Honor,
14  he's testifying.  Move to strike.  There is
15  foundation for anything he's saying.
16              THE COURT:  I will sustain that.  You can
17  ask -- the last part of your question you can ask.
18  BY MR. PRYOR:
19  Q.    Okay.  It changed America, didn't it, the
20  video?  Thank God someone videoed it.  And it was
21  terrible.
22  A.    I don't feel like I could speak to whether or
23  not that changed America.
24  Q.    So it was terrible, so no one should have had
25  the freedom to post that video and change America,
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 277 of 403   PageID 14101
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 480

 1  right?  Didn't change you, apparently.

 2          MR. GREENFIELD:  Objection, your Honor.

 3  Argumentative.

 4          THE COURT:  Sustained.

 5  BY MR. PRYOR:

 6  Q.   Did it have an impact on you?

 7  A.   Yes.

 8  Q.   Do you believe it changed America?

 9  A.   No.

10          MR. PRYOR:  Let's look at Exhibit 66.

11  BY MR. PRYOR:

12  Q.   By the way, before 66, let's look at

13  Exhibit 19.

14          MR. PRYOR:  Move to admit Exhibit 19.

15          THE COURT:  I don't have anything

16  objection-wise on 19.  Anything on 19?

17          MR. GREENFIELD:  I'm sorry, this is what

18  number?

19          MR. PRYOR:  Nineteen.

20          THE COURT:  Nineteen.

21          MR. McKEEBY:  No objection.

22          THE COURT:  Any from the union to 19?

23          MR. GREENFIELD:  I'm pulling it up right

24  now, your Honor.

25          MR. PRYOR:  It is the president's message.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 278 of 403   PageID 14102
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 481

 1              MR. GREENFIELD:  No objection, Your Honor.

 2              THE COURT:  All right.  Nineteen is

 3   admitted.  We will publish to the jury.

 4              (The referred-to document was admitted in

 5   Evidence as Plaintiff's Exhibit 19.)

 6   BY MR. PRYOR:

 7   Q.   Let me show you the first page of Exhibit 19

 8   and ask you if you can identify this document.  And

 9   if you would like a hard copy, I can bring you one.

10        Do you recognize it?

11   A.   Yes.

12   Q.   Okay.  This is a president's message you sent

13   out to all of the flight attendants, correct?

14   A.   Yes, all of the flight attendants that we had

15   email addresses on file for.

16   Q.   Okay.  That is 14-, 15,000?

17   A.   Probably, at that time.

18   Q.   You sent it to basically your entire union

19   membership, to the best of your ability?

20   A.   Yes.

21   Q.   And in this, there is a president's message.

22   And it says, I address social media, as I recognize

23   this is an issue that has the potential to affect

24   the vast majority of our work group, whether you are

25   on Facebook, Twitter, LinkedIn or any other social

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 279 of 403   PageID 14103
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 482

1  media platform.  I am pleased that over the last

2  month, Southwest Airlines has finally taken us

3  seriously.

4       You wrote that?

5  A.   Yes.

6  Q.   Your union has been addressing Southwest

7  Airlines's social media policy for a long time.  We

8  have been bringing forward your concerns around lack

9  of clear guidance on a policy that is both vague and

10 undefined.  We have witnessed inconsistencies around

11 the way the policy is applied and the often

12 subjective stance that Southwest management has

13 displayed in administering the policy.

14      Is that what you wrote?

15 A.   Yes.

16 Q.   By the way, where did you mention in here, oh,

17 by the way, we are also having these off-the-record

18 conversations with Southwest Airlines's management

19 about using the social media policy to target union

20 members and objectors?  Do you cover that in here?

21          MR. GREENFIELD:  Objection, Your Honor

22 he's just testifying.

23          THE COURT:  Sustained.

24          MR. PRYOR:  What was the basis of the

25 objection?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 280 of 403   PageID 14104
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 483

```
 1              THE COURT:  It was lawyer testifying.
 2              MR. PRYOR:  Okay.  Let me try it another
 3   way.
 4   BY MR. PRYOR:
 5   Q.   Did you include in this message anything about
 6   the emails we have seen where you know that your
 7   second vice-president, one of your core team
 8   members, is having conversations with senior
 9   management of American Airlines about -- Southwest
10   Airlines, sorry; I used to represent American --
11   Southwest Airlines about using social media to
12   target union members and objectors?
13   A.   My second vice president, I don't believe, was
14   having conversations with members of Southwest
15   Airlines' management about targeting objectors.
16   Q.   You don't recall testifying about the emails
17   earlier that we talked about?
18   A.   The emails that I have seen that involve
19   Southwest management were from Brian Talburt, who
20   was not the second vice president.
21   Q.   Well, wait.  We saw an email from Rocky
22   Mountain, who is Mike Hafner, that said, Yeah, he's
23   an ass --
24              MR. GREENFIELD:  Objection, Your Honor.
25
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 281 of 403   PageID 14105
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 484

 1  BY MR. PRYOR:

 2  Q.   -- do you recall that?

 3            MR. GREENFIELD:  Again, lack of

 4  foundation, and no evidence introduced in that

 5  regard.

 6            MR. PRYOR:  No, she identified it.

 7            THE COURT:  I think she did.  She can

 8  answer it.

 9            THE WITNESS:  I don't know who Rocky

10  Mountain is and I'm not looking at that right now.

11  I believe it was a forward that Talburt sent to

12  Brett.

13  BY MR. PRYOR:

14  Q.   I'm not saying it wasn't forwarded to you,

15  ma'am.  I'm saying you knew these discussions were

16  going on.

17       As a matter of fact, you told us that you had

18  conversations with him about how improper that

19  was -- although there is nothing in writing -- but

20  you told us verbally you did.  Now you are telling

21  us you didn't know anything about it?  I thought you

22  coached him?

23  A.   Sir, your question, the way I heard it, was

24  about conversations that both Mr. Talburt and

25  Mr. Nevarez were having privately with members of

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 282 of 403   PageID 14106
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 485

1  Southwest Airlines's management.  And I am stating I

2  do not believe that to be factual.

3  Q.   What is not factual about it?

4  A.   That I do not believe Mr. Nevarez was having

5  private conversations with members of Southwest

6  Airlines's management regarding targeting any

7  members.

8  Q.   Well, how about emails, then?  If you don't

9  think he had conversations, what about the email

10 where he talks about targeting Mike Casper and he

11 sends it to Rocky Mountain, and Rocky Mountain says,

12 He's an ass?

13          MR. GREENFIELD:  Objection, your Honor,

14 asked and answered.  She's testified --

15          THE COURT:  Sustained.

16 BY MR. PRYOR:

17 Q.   So it is your testimony you coached these

18 people about these improper activities.  And then

19 when you wrote this president's message, you didn't

20 include anything about it, is that fair?

21 A.   Yes.

22 Q.   So you are telling the members, This is a

23 terrible social media policy, and yet over here, you

24 know in fact you are trying to make improper use of

25 the social media policy, and you don't disclose that

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 283 of 403   PageID 14107
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                      Page 486

1  in your president's message?

2  A.    That is not correct.

3  Q.    So you write, Over the past several weeks, I

4  met with various Southwest Airlines leaders,

5  including our vice president of cabin services, Mike

6  Hafner, right?

7  A.    Yes.

8  Q.    Okay.  And you aren't sure that that is the

9  Mike Hafner that Mr. Talburt is talking about?

10          MR. GREENFIELD:  Objection, asked and

11  answered.

12          THE COURT:  Sustained.

13  BY MR. PRYOR:

14  Q.    Do you recall the email where he talks about it

15  is Mike's personal email address, we like to keep

16  these discussions off the record?  You don't recall

17  that?

18          MR. GREENFIELD:  Objection, asked and

19  answered.

20          THE COURT:  Sustained.

21          MR. PRYOR:  What was the objection?

22          THE COURT:  Asked and answered.

23          MR. PRYOR:  Oh, fair enough.

24  BY MR. PRYOR:

25  Q.    Okay.  Then you say, Your voices and your

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 284 of 403   PageID 14108
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 487

1    issues have been strongly expressed by your union.

2    We have heard you.  Over the last weeks, we have

3    been working towards seeking resolution on

4    outstanding grievances, challenges -- challenging

5    the discipline to flight attendants for alleged

6    violations of social media policy.  We have been

7    making progress.

8         Did you write that?

9    A.   Yes.

10   Q.   And then you say, On a personal note, however,

11   please know that the social media issues management

12   investigated and the resulting discipline Southwest

13   Airlines issued did not arise out of something

14   management simply uncovered or stumbled upon.  They

15   are not generally monitoring our sites.

16        Instead, these cases come about as our own

17   flight attendants are turning each other in.  These

18   latest investigations have been the result of flight

19   attendant complaints.  I am asking that we please

20   consider stopping any back and forth fighting on

21   social media.

22        We are not always going to agree with one

23   another, but please recognize that your fellow

24   employees are entitled to their own thoughts and

25   opinions.  If we have a problem, let's work it out

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 285 of 403   PageID 14109
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 488

1  as professionals that we are.  Please respect one

2  another.

3        Is that what you wrote?

4  A.   Yes.

5  Q.   Did you mean it?

6  A.   Yes.

7  Q.   And then on February 22nd, 2017, you sent a

8  complaint regarding Ms. Carter to Southwest

9  Airlines, true?

10 A.   Yes.

11 Q.   And you complained about the social media

12 policy that we just read your president's message

13 about, true?

14 A.   Yes.

15            MR. PRYOR:  Move for the admission of

16 Exhibit 66.

17            THE COURT:  Sixty-six, I don't have an

18 objection to.

19            MR. McKEEBY:  No objection.

20            MR. GREENFIELD:  Give me one second.

21            I do not.

22            THE COURT:  Okay.  Sixty-six is in.  We

23 will publish.

24

25

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1          (The referred-to document was admitted in

2       Evidence as Plaintiff's Exhibit 66.)

3    BY MR. PRYOR:

4    Q.   This is what you sent to Suzanne Stevenson,

5    correct?

6    A.   Yes.

7    Q.   And who is Suzanne Stevenson?

8    A.   At the time, she was the Las Vegas based

9    manager.

10   Q.   Okay.  And a base manager is your kind of local

11   supervisor out of where your base -- where you fly

12   out of or where you live?

13   A.   It is -- it is the managers, the top person.

14   They are above the supervisors in that domicile.  It

15   is the top person in the domicile that you are based

16   out of.

17   Q.   The top person in your domicile, that is who

18   you report complaints about other employees

19   regarding violation of company policy?

20   A.   It is one of the people you can report it to,

21   yes.

22   Q.   Well, isn't that typically who you would report

23   it to, base manager?

24   A.   There are some flight attendants that report it

25   to a supervisor.  There are some flight attendants

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 287 of 403   PageID 14111
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 490

1  that report directly to labor relations, a
2  complaint.  Some that do employee relations.  Some
3  that do all three departments.
4  Q.   What is the standard -- go ahead.  Are you
5  done?  What is the standard policy?  You report to
6  base manager?
7  A.   Actually, no.  In our Southwest policy, it
8  outlines a list of people that you should report
9  harassment to, and a manager is one of the many
10 positions listed as an option.
11 Q.   And one of the people you should report to,
12 then, is Suzanne Stevenson, base manager?
13 A.   Yes.
14 Q.   Now, on that list, it doesn't say you should
15 report it to the head of in-flight, does it?
16 A.   Actually, it does.  It says, Or the vice
17 president.
18 Q.   So you are required to report all complaints to
19 the head of in-flight?
20 A.   I didn't say you are required.  It is one of
21 the positions people listed under the Southwest
22 Airlines Harassment Policy.
23 Q.   The policy is, any time you see a violation,
24 you can report it to anyone in management.  But it
25 is unusual to include in your complaint the head of

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 288 of 403   PageID 14112
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 491

1  in-flight?

2  A.   I don't think so.  There were -- I have seen

3  many, many times -- I wouldn't send anything just to

4  one person of this nature.

5       Throughout the course of my union career, I saw

6  things fall through the cracks, balls get dropped,

7  because it went to one individual, and it wasn't

8  seen.  And since I went to the base manager, I

9  wasn't going to cc someone in a lower position than

10 hers.

11 Q.   Well, you are not required to cc someone.  But

12 did you think Suzanne Stevenson was going to drop

13 the ball on this?

14 A.   I always counseled flight attendants that if it

15 was something important, they needed to cc someone

16 on written communication they sent to make sure that

17 it had the eyes on it that they intended for it to.

18 Q.   And you just happened to send it to Sonya

19 Lacore, the person at in-flight, that you had

20 received emails about her conversations with

21 Mr. Talburt, about targeted assassinations of people

22 like Ms. Coreless and Mr. Casper, true?

23 A.   Yes.

24 Q.   And so you included Sonya Lacore.  You also

25 included Naomi Hudson, who is on the labor relations

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 289 of 403   PageID 14113
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 492

1  negotiating team for Southwest Airlines, right?

2  A.   She was on the Southwest Airlines negotiating

3  team.  Her position at Southwest Airlines was also

4  director of labor relations.

5  Q.   So your head of the negotiating team for the

6  union, and you decide to include someone on

7  Southwest Airlines's side of the negotiating team in

8  a complaint against another employee, right?

9  A.   Yes.  I included her because she was the

10 director of labor relations, and labor relations is

11 involved in any investigation of complaints that is

12 brought forward to Southwest Airlines.

13 Q.   So you write this email -- yeah, it is an

14 email.  And you say, several things.  You say, Below

15 you will see Facebook messages that were sent to me

16 last week by Southwest Airlines flight attendant

17 Charlene Carter.  It is in regards to a TWU Local

18 556 Women's Committee meeting.  That is what you

19 said, right?

20 A.   Yes.

21 Q.   It is relating to a union activity according to

22 your own words, correct?

23 A.   Yes.

24 Q.   And then you say that, I participated in last

25 month in a march that I voluntarily participated in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 290 of 403   PageID 14114
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 493

```
 1  a few days later.
 2      You say, This message contains two graphic
 3  videos of an alleged aborted fetus and makes
 4  reference to murder, as well as political and
 5  religious comments.
 6      That is what you wrote?  True?
 7  A.   Yes.
 8  Q.   And so, so far, you have acknowledged it is
 9  union activity, you have acknowledged it is
10  political activity, and you have acknowledged it is
11  religious activity.  True?
12  A.   Yes.
13  Q.   It says, I believe these to be a violation of
14  the social media policy.  Correct?
15  A.   Yes.
16  Q.   The policy that you had said shouldn't be
17  utilized against flight attendants, and that
18  shouldn't be reported by flight attendants, true?
19  A.   I had said that, yes.
20  Q.   You also say, I find it obscene and violent, as
21  well as threatening in nature.
22      So the obscene and violent, is that -- are
23  those the videos of the baby?  The fetus?
24  A.   The obscene part -- part of her message, I took
25  as a threat.
```

 1  Q.    Okay.  Let's talk about the threat.

 2        The threat was, she can't wait to see you

 3  online, right?

 4  A.    Yes.

 5  Q.    And that was a threat?

 6  A.    There was nothing about any of the messages

 7  that she had sent --

 8  Q.    Well --

 9  A.    May I finish?  There were nothing that were

10  friendly, and there had already been conversations

11  taking place on social media about what the flight

12  attendants were going to do to me when I came back

13  online, and that I would need to travel with body

14  guards.  So yes, I took that as a threat.

15  Q.    So those other things you are talking about,

16  those weren't from Charlene Carter, were they?

17  A.    The other ones were not.

18  Q.    And in fact, in the previous messages you had

19  received from Charlene, she constantly was telling

20  you, she doesn't think you should be a full-time

21  paid member of the union and she's looking forward

22  after the recall petition to you going back online

23  as a flight attendant, isn't that correct?  Is it

24  correct, ma'am?

25              MR. McKEEBY:  Objection, talking about

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 292 of 403   PageID 14116
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 495

1  documents that are not in evidence.

2          THE COURT:  Sustained.

3  BY MR. PRYOR:

4  Q.   From your recollection, the communications she

5  received -- you received from her, she's telling

6  you, she doesn't think you should be union president

7  and she can't wait for you not continue to be paid

8  with her union dues, and she can't wait to see you

9  back online.  That is the context, isn't it?

10 A.   That is not the context that I took that

11 message.

12 Q.   So you don't think that is the context?

13 A.   No.

14 Q.   And so you took that phrase that you used

15 yourself many times as a threat, true?

16 A.   Yes.

17 Q.   And so did you report her to the police?

18 A.   No, I did not report her.

19 Q.   No, you reported her to Southwest Airlines, not

20 the police, for a threat, true?

21 A.   Yes.

22 Q.   In the next paragraph, you say, I'm fearful to

23 return to my job as a line flying -- line flying

24 flight attendant due to repeated personal attacks

25 and threats made both via social media, as well as

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 293 of 403  PageID 14117
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 496

1  altercations that occurred face-to-face while I have

2  been on a Southwest Airlines plane.

3      None of those involved Charlene Carter, these

4  are other attacks and threats that you are talking

5  about?

6  A.   Yes.

7  Q.   And you included them in your complaint against

8  Charlene Carter, correct?

9  A.   Yes, because I viewed her comment as a threat.

10  Q.   I'm sorry?

11  A.   Yes, because I viewed her comment toward me as

12  a threat.

13  Q.   No, I understand you are saying, I will see you

14  online as a threat.

15      But you then talk about personal attacks and

16  threats and being -- face-to-face encounters on the

17  airplane, you are talking about other things you

18  were dealing with, correct?

19  A.   Yes.

20  Q.   And you included that in your complaint against

21  Charlene Carter?

22  A.   Yes.

23  Q.   And then you go on to say, I am personally pro

24  choice.  But then you go on to say, However, I

25  believe in equality and individual rights, and will

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 294 of 403   PageID 14118
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 497

1  continue to support causes and events that promote

2  fundamental rights.

3       Because what you are saying is, you are pro

4  choice?

5  A.   No.  I immediately sent another email when I

6  realized I had mistyped.

7  Q.   Ma'am, you are going to have to hold the

8  microphone to your mouth.

9  A.   No.  I immediately sent a second email when I

10 went back and reread what I had typed.  And I said I

11 was personally -- personally pro life.

12 Q.   Are you finished with your answer?

13 A.   Yes.

14 Q.   In fact, what you wrote was, that you are

15 personally pro choice.  You may believe abortion

16 involves a life, but you are pro choice.  Let a

17 woman decide what to do with what is inside her

18 body.  That is your position?

19          MR. GREENFIELD:  Objection, your Honor,

20 asked and answered.

21          THE COURT:  I will allow this

22 clarification question.

23          THE WITNESS:  There is another piece that

24 isn't displayed right now that I'm speaking to,

25 because I mistyped that on my personal beliefs.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 295 of 403   PageID 14119
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 498

 1  BY MR. PRYOR:

 2  Q.   It says, I am personally pro choice, is that

 3  what you wrote?

 4  A.   It is, and I corrected it immediately after

 5  sending this email.

 6  Q.   And you corrected it by saying, I am personally

 7  pro life, but I believe in women having a choice,

 8  true?

 9  A.   Yes.  That I don't believe anyone else has the

10  right to dictate what should happen to another

11  woman.

12  Q.   Fair enough.  But that is the definition of pro

13  choice, ma'am.  That is not pro life.  That is pro

14  choice.

15          MR. GREENFIELD:  Objection, Your Honor,

16  he's testifying again.

17          THE COURT:  Sustained.

18  BY MR. PRYOR:

19  Q.   Do you understand that pro choice means exactly

20  what you just said?  What you believe, that let a

21  woman -- and I'm not debating you about it -- nut

22  let a woman decide what to do with her body?  That

23  is pro choice.  People who are pro life say that

24  woman doesn't have that choice.  That is not you,

25  you are not pro life, you are pro choice.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 296 of 403   PageID 14120
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 2 July 06, 2022                        Page 499

```
 1              MR. GREENFIELD:  Same objection,

 2              THE COURT:  Sustained.

 3  BY MR. PRYOR:

 4  Q.   You just told us you thought pro choice means

 5  that a women should get to decide what to do with

 6  her body.  Is that what you believe?

 7              MR. GREENFIELD:  Objection, your Honor,

 8  asked and answered.

 9              THE COURT:  Sustained.

10              MR. PRYOR:  What was the objection?

11              THE COURT:  Asked and answered.

12              MR. PRYOR:  Well, Your Honor, if I could,

13  she's now tried to backtrack on what she said and so

14  I'm trying to clarify.  I'd ask --

15              THE COURT:  I think it was clear.

16              MR. PRYOR:  Okay.  All right.  I will move

17  on.

18  BY MR. PRYOR:

19  Q.   Ma'am, attached to that exhibit, is the video

20  that you found disturbing.  It is the next page.

21  I'm not going to play the video.  I'm going to read

22  the -- what is said before playing the video.

23       It says, This is what you supported during your

24  paid leave with others at the Washington March in

25  DC.  You truly are despicable in so many ways.  By
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 297 of 403   PageID 14121
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 500

 1  the way, the recall is going to happen, and you are
 2  limited in the days you will be living off of all of
 3  the Southwest Airlines flight attendants.  Can't
 4  wait to see you back online.
 5       Isn't she, in fact, exercising her union right
 6  to object to the union and to tell you she thinks
 7  you are doing something awful and that you -- she
 8  can't wait to see you, Quit living off Southwest
 9  Airlines and going back on line, and that is what
10  you are calling a threat?
11            MR. GREENFIELD:  Objection, Your Honor,
12  compound question.
13            THE COURT:  I will allow it.
14            THE WITNESS:  It is not how I took those
15  messages.
16  BY MR. PRYOR:
17  Q.  I'm asking you if I said anything that is
18  incorrect?
19  A.  Yes.
20  Q.  What did I say incorrect?
21  A.  I did not believe that the way that she sent
22  those, what she sent, the comments she sent, I did
23  not believe that was her exercising union protected
24  speech, and simply saying that I -- that she was
25  ready for me to be back on line.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  Q.   Ma'am, is this the video you watched two or

2  three seconds of?  Or was it the other one?

3           MR. GREENFIELD:  Objection, your Honor,

4  mischaracterizes the testimony, previous testimony.

5           THE COURT:  I think it was a question.

6  I'm fine with your question and her answer, if she

7  has an answer to your question.

8  BY MR. PRYOR:

9  Q.   Go ahead, ma'am.

10  A.   Yes.

11  Q.   This is the video?

12  A.   I believe so.

13  Q.   I'm sorry?

14  A.   Yes, I believe so.

15  Q.   Okay.  And it is the effectiveness -- I

16  understand it is disturbing.  Bad things are

17  disturbing.

18       It is the effectiveness of the video that is

19  upsetting.  True?

20  A.   No.

21  Q.   So it is not effective.  That is not what is

22  offensive.  What is offensive?

23  A.   That is not what I said.

24  Q.   You just said no, so then the other side of

25  that has got to be that it is not offensive.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 299 of 403   PageID 14123
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 502

1        It is upsetting because it is effective, true?

2   A.    It is disturbing.

3   Q.    Okay.  It is disturbing because it is

4   effective.

5   A.    No one should be sent that.

6   Q.    So you feel that way.  And some people might

7   feel no one should take my money and support

8   something like that.  That is equally upsetting to

9   someone else.

10       And to speak to power, to speak to her

11   president of her union to get that message across,

12   is no different than what you are saying.

13             MR. GREENFIELD:  Objection, your Honor,

14   he's testifying, he's talking about what some people

15   may think.

16             THE COURT:  I will sustain that.  You can

17   rephrase it.

18   BY MR. PRYOR:

19   Q.    Let me go back to my question.  And I will

20   still wait for an answer.

21       This video was disturbing to you, because it

22   was effective?

23             MR. GREENFIELD:  Objection, your Honor,

24   asked and answered.  He's being argumentative.

25             MR. PRYOR:  She's not answered.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 300 of 403   PageID 14124
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 503

1              THE COURT:  There is no answer yet.

2              MR. PRYOR:  I'm sorry, Your Honor?

3              THE COURT:  There is no answer yet.  I

4    will let her answer if she can.

5              THE WITNESS:  If "being effective" means

6    upsetting me terribly, of being subjected to

7    horrific images, being called a murderer, if that is

8    what your definition of effective is, yes, it was

9    effective for that.

10   BY MR. PRYOR:

11   Q.   Let's test that.  First of all, she didn't call

12   a murder.  She said you were supporting murder.  And

13   it is not even in this message, but okay.

14        She said you supported murder whenever you give

15   money to an organization that does something like

16   this.  That is what she said.  She didn't call you a

17   murderer.

18              MR. GREENFIELD:  Objection, your Honor,

19   he's testifying about what someone --

20              MR. PRYOR:  She testified.  I'm testing

21   her testimony.

22              THE COURT:  I will allow this question.

23              THE WITNESS:  Our union has not supported

24   abortion or Planned Parenthood by giving money or

25   union dues.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 301 of 403   PageID 14125
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 504

```
 1  BY MR. PRYOR:
 2  Q.   Did your union support the march of Planned
 3  Parenthood?
 4            MR. McKEEBY:  Objection, that
 5  mischaracterizes.  It is not the march of Planned
 6  Parenthood.
 7            MR. PRYOR:  I will rephrase.
 8            THE COURT:  Sustained.
 9  BY MR. PRYOR:
10  Q.   Did you support -- did the union support the
11  Women's March that was sponsored -- the premier
12  sponsor being Planned Parenthood?
13            MR. GREENFIELD:  Objection, your Honor,
14  again, mischaracterizes testimony that --
15            THE COURT:  I will allow it based on my
16  recollection of the testimony.
17            THE WITNESS:  Yes.
18  BY MR. PRYOR:
19  Q.   If you thought someone was doing something that
20  was murder, would you try and stop it?
21       Is that a hard question?
22  A.   I didn't say that a woman who makes a choice to
23  have an abortion is murder.
24  Q.   Listen to me question.  We are not even talking
25  about abortion right now.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 302 of 403   PageID 14126
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 505

 1        If you think someone is doing something that is
 2   murder, would you do something to try and stop it?
 3            MR. GREENFIELD:  Objection, your Honor,
 4   relevance.
 5            MR. PRYOR:  Seems clearly relevant.
 6            THE COURT:  I will sustain it.
 7   BY MR. PRYOR:
 8   Q.   If you thought someone was engaging in conduct
 9   that you could have -- first of all let's try this.
10   Someone is using your money to murder someone.  You
11   got the hypothetical?
12   A.   Yes.
13   Q.   Would you say, Quit using my money to murder
14   someone?  Would you do that?
15            MR. GREENFIELD:  Objection, your Honor,
16   relevance.
17            MR. PRYOR:  Seems on all fours.
18            THE COURT:  I will sustain that objection.
19            MR. PRYOR:  I'm sorry, did you sustain?
20            THE COURT:  I did.
21            MR. PRYOR:  Okay.  All right.  Your Honor,
22   I don't want to quibble with your ruling, but I'm
23   going try again.  But if I -- if it's the whole area
24   --
25            THE COURT:  Do you need a sidebar?

1              MR. PRYOR:  I'm sorry?

2              THE COURT:  Do we need a sidebar?

3              MR. PRYOR:  Yes, your Honor.

4              (Thereupon, the following proceedings were

5        had at sidebar:)

6              MR. PRYOR:  I am so trying to be good

7    because I realize --

8              THE COURT:  I get it.  My concern here is,

9    it is speculation as to her, not at all as to

10   Carter.  When Carter takes the stand, these are all

11   fair game, right?  But asking any other witness,

12   Well, if you were in her shoes with her view of

13   life, wouldn't you believe it is protecting --

14             MR. PRYOR:  This is not my question.  My

15   question is her.  I'm not wanting her to put herself

16   in Carter shoes.  I'm wanting her to put her in her

17   shoes.  If you were in a situation where you thought

18   someone was doing something, wouldn't you take

19   drastic action?  That's my point.

20             THE COURT:  I will allow you to ask it if

21   you clean up the phraseology.

22             MR. PRYOR:  I'm going to try.  I'm not

23   very good at this.

24             THE COURT:  You can ask her as her, not

25   her as Carter.  All right?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 304 of 403   PageID 14128
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                      Page 507

```
 1              MR. PRYOR:  Absolutely.  That is what I
 2    meant.
 3              THE COURT:  Okay.
 4              (Thereupon, the sidebar was concluded and
 5         the following proceedings were held in open
 6         court:)
 7              THE COURT:  All right.  I will let you
 8    reframe that question.
 9    BY MR. PRYOR:
10    Q.   Okay.  Ms. Stone, let me very clear.  I'm
11    talking to you about you, okay?  Not about
12    Ms. Carter, not about anyone else.  You, the
13    president of the Local 556 at the time.
14              MR. GREENFIELD:  Objection, your Honor.
15    Her or her as the -- may we sidebar on that?
16              THE COURT:  If you want to.
17              (Thereupon, the following proceedings were
18         had at sidebar:)
19              MR. PRYOR:  I think I get both, but okay.
20              MR. GREENFIELD:  That is exactly what we
21    are talking about.  Now you are talking about two
22    separate -- her as an agent of the union, that
23    combine the union, or her personally?
24              MR. PRYOR:  Yeah, I want both.
25              THE COURT:  Okay.
```

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 305 of 403  PageID 14129
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 508

 1              MR. PRYOR:  Of course.

 2              MR. GREENFIELD:  Then separate them out.

 3              THE COURT:  As long as you ask the

 4    separate questions, then it is fine.

 5              MR. PRYOR:  Okay.  I thought I said as her

 6    profession.  Okay.  All right.

 7              (Thereupon, the sidebar was concluded and

 8         the following proceedings were held in open

 9         court:)

10              THE COURT:  Okay.  You can proceed.

11              You may want to reask it, because I think

12    we all forgot.

13              MR. PRYOR:  Yes.

14    BY MR. PRYOR:

15    Q.   Ma'am, if, as president of the Local 556 you

16    believe -- I'm talking about you now -- if you

17    believe -- and not in the situation of abortion, we

18    don't have to put it in that context -- if you

19    believe your union funds were being utilized for

20    murder, would you do something?  Would you try and

21    take strong action to stop it?

22    A.   Yes.

23    Q.   And would you personally, if you thought your

24    money was being used to perpetrate murder, would you

25    say, Quit spending my money that way, and do it in

1  as forceful and an effective manner -- legal, of

2  course -- that you can?  Would you do that?

3          MR. GREENFIELD:  Objection, compound

4  question.

5          THE COURT:  Can you split it up?

6          MR. PRYOR:  I'm sorry, it was --

7          THE COURT:  Compound.  Can you split it

8  up?

9          MR. PRYOR:  Okay.  I will break it down.

10 BY MR. PRYOR:

11 Q.   So would you, if you thought your money was

12 being used to perpetrate murder -- you got the

13 example so far?

14 A.   Yes.

15 Q.   Would you, first of all, say, Stop spending my

16 money on murder?  Would you do that?

17 A.   Yes.

18 Q.   And would you, in the most effective means that

19 you could within the law, try and convince them to

20 stop doing that?

21 A.   Not if it is the way she did it.

22 Q.   Well, I didn't put it in the context of

23 abortion.  I understand what you want to say about

24 abortion.

25      But let's say that it is -- union money is

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 307 of 403   PageID 14131
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 510

1   going to Bangladesh and -- at a shoe factory and

2   little children are making shoes and they are --

3   several die every week.

4       Would you send a video and say, Look at these

5   conditions, look at this poor dying child?  Would

6   you do everything you could to save that child?

7           MR. GREENFIELD:  Objection, relevance to

8   children in Bangladesh, Your Honor.

9           MR. PRYOR:  She wanted an example, I gave

10  her one.

11          THE COURT:  I will allow it.

12  BY MR. PRYOR

13  Q.   I can give you more.

14  A.   I don't know what I would do in that situation.

15  Q.   You would not do everything you could to save

16  that child in Bangladesh, would you?  You wouldn't

17  show a video to someone to stop them from murdering

18  that child because it is too offensive, right?

19  A.   I wouldn't harass or threaten another person.

20  Q.   I'm asking about my example, ma'am.  In my

21  example, you are not going to use a video to save

22  that child because it offends your sensibilities

23  more that murder does, correct?

24  A.   I don't understand -- I don't understand the

25  question, that -- that last part of comparing that

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 308 of 403   PageID 14132
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 511

 1  it offends me more than murder.

 2  Q.   Since this the video you watched -- and it is

 3  graphic.  And by the way, when this was posted on

 4  her Facebook page, she put "graphic video" and so

 5  you could decide to use it or not.

 6      With Facebook Messenger, you already have to

 7  decide.  It doesn't just start playing, but you say

 8  you inadvertently clicked on it --

 9          MR. McKEEBY:  Objection.

10  Q.   -- but that certainly was your inadvertence not

11  her intention.  She sent you something --

12          THE COURT:  Hold on.  We have got an

13  objection.

14          MR. McKEEBY:  I think I might have

15  several, but the one I got to up to say was

16  irrelevant -- excuse me -- hearsay.  He's testifying

17  about documents that are not in evidence.

18          THE COURT:  Sustained.

19          Start a new question.

20          MR. PRYOR:  Okay.  I can't even remember

21  the -- the -- okay.

22  BY MR. PRYOR:

23  Q.   The video that you received, you clicked on it

24  inadvertently, true?

25  A.   Yes.

1  Q.   The video that was sent to you was sent to you

2  as a private message to Audrey Stone TWU, true?

3  A.   It was sent to me as a private message on

4  Facebook via messenger.  I have already said I don't

5  recall if it was Audrey Stone or Audrey Stone TWU at

6  that time.

7  Q.   It doesn't matter which to you, correct?  In

8  terms of the actions you took?

9            THE COURT:  Counsel, can I ask, can we

10  take our last break for the day right quick, and

11  then we will come back?

12            MR. PRYOR:  Yes.  Believe it or not, I'm

13  going to wrap up, I hope.

14            THE COURT:  So if you have got

15  five minutes or less --

16            MR. PRYOR:  Oh, I can't commit to that.

17            THE COURT:  Okay.  That's fine.  Then

18  let's take our last break.  Same three instructions:

19  Only talk to your fellow jurors, just not about the

20  case; don't talk to anyone else other than fellow

21  jurors or courthouse personnel; and don't do any

22  research about the case.

23            We'll see you in five minutes at 4:15.

24  All rise.

25            (The jurors exited the courtroom.)

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 310 of 403   PageID 14134
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 513

 1              THE COURT:  And I have one question for

 2   folks before witness is out of the room -- not about

 3   the witness, just about other witnesses.

 4              So you can go ahead and leave, Ms. Stone.

 5              And then we will take our break right

 6   quick.

 7              (The witness exited the courtroom.)

 8              THE COURT:  So my question for y'all is on

 9   depo designations and order of witnesses in the

10   future.  I know we have gotten the rulings back on

11   objections to depo designations from Talburt and

12   Parker.  We are still working on Conlan, Sims,

13   Rutherford, Klenurne, Burdine.

14              What I'm asking is, triaging.  Who do you

15   think is next up?  I know Conlan was on a list for

16   today.  Obviously, we probably won't get to Conlan.

17   But who should we work on in order of prioritization

18   as far as getting written rulings back to y'all on

19   objections within your page line designations?

20              MR. PRYOR:  Your Honor, you are asking

21   us -- you have currently have done Talburt, and he

22   will be our next witness.

23              THE COURT:  Okay.

24              MR. PRYOR:  We don't have Mr. Nevarez.

25   After that we anticipate Mr. Parrott, a live

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 311 of 403   PageID 14135
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 514

1  witness.  Then we will read from the deposition of

2  Ms. Parker.

3            THE COURT:  Uh-huh.  Which we have on

4  file.

5            MR. PRYOR:  Okay.  I need to consult with

6  counsel.  I think it is important the time we are

7  spending with this witness for our case.  And I'm --

8  but I'm also mindful of our time limit.  And I

9  cannot tell the Court that we will not cut Conlan.

10  But if we were going to call him, he would be our

11  next witness.

12            THE COURT:  Okay.  So I have already

13  internally prioritized Conlan.  I'm just trying to

14  make sure Conlan is the right person to do next.

15  But have you got two or three others for me to

16  prioritize after Conlan?

17            MR. PRYOR:  I anticipate at least four

18  live witnesses after -- or five, even -- after

19  Conlan before you would get to Kleburne and Burdine.

20  And I think those are relatively short deposition

21  excerpts, and those are the only ones left.

22            THE COURT:  Okay.  So Sims and Rutherford,

23  we should not turn to?

24            MR. PRYOR:  Sims -- oh, your Honor, we

25  probably -- we designated Sims, but we have the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 312 of 403   PageID 14136
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 515

1  opportunity to call him live.

2          THE COURT:  Okay.  Got it.  So Sims is

3  live.  And then Rutherford, are we thinking

4  Rutherford is last on priority or Rutherford will be

5  live?

6          MR. PRYOR:  I'm sorry?  They are saying

7  yes.  Kleburne and Burdine are the last two.

8          Okay.  And then Rutherford, what is the

9  Rutherford status, live or not priority?

10          MR. GILLIAM:  No, it would be by

11  deposition, if we get to her.

12          THE COURT:  Okay.  So we will put

13  Rutherford as the fourth depo to get to.  So I have

14  got Conlan, Kleburne, Burdine and Rutherford as the

15  depo designation objections to get to my

16  prioritization order.  Okay.  Thank you for helping

17  clarify that for me.

18          And then we can talk about Nevarez at the

19  end of the day.  Sound good?

20          MR. PRYOR:  Sure.

21          THE COURT:  Okay.  Now, let's take our

22  break, and we will see y'all at 4:15.

23          MR. GREENFIELD:  Your Honor, may we have a

24  brief sidebar before we break?

25          THE COURT:  Do we need a sidebar?  I mean,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 313 of 403   PageID 14137
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 516

1    everyone is out.

2              MR. PRYOR:  What are we doing?

3              MR. GREENFIELD:  I would just prefer not

4    to be in front of the full gallery, but --

5              THE COURT:  Okay.  That's fine.

6              (Thereupon, the following proceedings were

7          had at sidebar:)

8              MR. GREENFIELD:  I don't want to object

9    the flow of counsel, but -- and I have tried to be

10   respectful, but his consistent use of sidebars and

11   testifying during his examinations, I find to be

12   abusive of proper cross-examination rules.  And I am

13   going to feel compelled to object more if he

14   continues to do it.  I have tried to give him

15   leeway, but I feel like it is getting worse and

16   worse, your Honor.

17             MR. PRYOR:  Let me say, this is obviously

18   a pivotal witness.  And it is a witness with a bent,

19   and I'm entitled to challenge this witness and I

20   think we have.  I don't think I have crossed the

21   line.  I do know that I have had several long

22   questions that the Court has sustained objections

23   on. I can think of two or three.  But I'm not sure

24   what the point is being made here.  If I ask an

25   objectional question, I expect an objection.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 314 of 403   PageID 14138
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 517

 1              THE COURT:  I will say this, there is
 2    always a fine line because you have to lead an
 3    adverse witness, but you also cannot testify.
 4              This also has the interesting implications
 5    of being a key witness that is also going first.
 6    All right?  And so I'm trying to draw the line where
 7    I draw it.  Anytime you have had a three-line lead
 8    up --
 9              MR. PRYOR:  Fair enough.
10              THE COURT:  -- before you ask the question
11    mark, then, holy cow, I'm granting that, right?
12    Does that make sense?
13              MR. PRYOR:  It does.
14              I just try to draw the line there.
15              MR. PRYOR:  And, you know, part of it is
16    the heat of the battle.  And I do recognize that the
17    questions need to -- I thought the questions, when I
18    summarized testimony and then got her to answer,
19    were fair.
20              And I think you allowed a couple of those.
21    But then certainly, there are ones that -- I get it.
22    And I appreciate that the Court sustained those.
23    And I'm not intending to violate a rule.
24              THE COURT:  I'm not moving the line.  I'm
25    not trying to get on to you for objecting.  And the

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 315 of 403   PageID 14139
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 518

1   ones I think crossed the line, I sustained the

2   objection on.

3            MR. PRYOR:  Sure.

4            THE COURT:  So I think we are going to

5   keep plotting the course where we are plotting it

6   and the chips fall where they fall.

7            MR. PRYOR:  Okay.

8            THE COURT:  We will see you back here.

9            MR. GREENFIELD:  That is why I wanted to

10  do it.

11           THE COURT:  I appreciate that.

12           MR. PRYOR:  I just say this for purposes

13  of warning, I'm going to play the video next.

14           THE COURT:  Right into the break.

15           MR. GREENFIELD:  Does the witness need to

16  watch this again?

17           MR. PRYOR:  She doesn't have to watch it.

18           MR. McKEEBY:  I'm going to play it for

19  her, if he doesn't.

20           MR. PRYOR:  So, your Honor, she's

21  testified that she --

22           THE COURT:  I can't make her open her

23  eyes, right?  But if she looks away, then, you know,

24  I can't -- and the same thing with the jury, I can't

25  force them to keep their eyes on it.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 316 of 403   PageID 14140
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 519

1              MR. PRYOR:  I'm not -- I think that, given

2   the nature of this case, I have to do this.  She's

3   testified she watched about three seconds of it.

4   I'm going to play three seconds.

5              MR. GREENFIELD:  That is also not her

6   testimony.

7              MR. PRYOR:  I believe it is.

8              THE COURT:  A few seconds.

9              MR. PRYOR:  She said as soon as she

10  realized what it was, she stopped it.  That's

11  probably less than three -- three seconds is much

12  longer than that.  I gave her the benefit.  I think

13  she agreed.

14             THE COURT:  I understand.

15             MR. PRYOR:  Okay.  I'm just letting

16  everyone know.

17             THE COURT:  Question, do you want me to

18  forecast for the jury when we come back in?  Or do

19  you want to the one --

20             MR. PRYOR:  Yes.  No, I think we -- we

21  should.  I will do it in a preamble to my question,

22  but the Court doing it is fine.

23             THE COURT:  Well, I'm going to tell the

24  jury, look, this is a question I asked, there are

25  going to be pictures, there are going to be videos.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 317 of 403   PageID 14141
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 520

1  The video that you see cued up is --

2          MR. PRYOR:  Will be a short clip.

3          THE COURT:  -- before the day is over.

4          MR. PRYOR:  It will just be the clip to

5  the extent she watched it.

6          THE COURT:  I'll do it.  That is my job.

7  Thank you.

8          (Recess.)

9          MR. GREENFIELD:  He's intending to -- what

10  I heard is, to play what he thinks she watched, a

11  portion.  If we are going to play the video, I think

12  we need to play the whole video.  We don't know how

13  much she watched or not.  She couldn't even recall

14  how much it was.  So if we are going to play, lets

15  play the whole video.

16          MR. PRYOR:  That is absolutely wrong.  And

17  I, first of all, can play whatever I want.  And

18  second of all, she said seconds.  The video is over

19  three minutes long.

20          THE COURT:  I think you're entitled to --

21          MR. PRYOR:  I understand what he's trying

22  to do.

23          THE COURT:  -- play all of it if you want

24  to.

25          MR. PRYOR:  Okay.  If he wants to do it in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 318 of 403   PageID 14142
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                          Page 521

 1  his case, we will be sure and talk about that.

 2          THE COURT:  Appreciate that.

 3          MR. GREENFIELD:  That's fine.

 4          THE COURT:  Thank you.

 5          (Recess.)

 6          THE COURT SECURITY OFFICER:  All rise.

 7          THE COURT:  Okay.  Anything before we get

 8  the jury?  I will give that disclaimer when they

 9  come in.  So you can bring them in.

10          (The jurors entered the courtroom.)

11          THE COURT:  All righty.  Thank you.  You

12  can be seated.

13          And, Mr. Pryor, you can approach the

14  podium.

15          While you do, I will remind the jury that

16  during jury selection yesterday, we talked about

17  this case can touch on sensitive topics like

18  abortion, that there are going to be graphic images,

19  videos.  Y'all saw the Facebook message with the

20  video queued up.

21          I understand from Mr. Pryor we are going

22  to play at least a few opening seconds of that

23  video.  So I am just warning you of that in advance.

24  It's part of the evidence.  The lawyers are entitled

25  to put it on, and so I'm letting them.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X            Vol 2 July 06, 2022                    Page 522

1         So, Mr. Pryor, with that, you can continue

2   your questioning.

3         MR. PRYOR:  And just a couple of preamble

4   questions to that.

5   BY MR. PRYOR:

6   Q.   Ma'am, you previously told us you accidentally

7   hit play, and the moment you realized that it was

8   something you considered so offensive, you stopped

9   watching it, and you estimated that to be a few

10  seconds.  Is that fair?

11  A.   I thought I said I didn't recall how long, how

12  many seconds I watched it, but that I didn't finish

13  watching the video.

14  Q.   I understood you to say you realized

15  immediately it was offensive and stopped watching.

16  Is that fair?

17  A.   Quickly, yes.

18  Q.   Okay.  I'm going to play three seconds of the

19  video that you watched.  Three seconds is (snapping

20  fingers).  That is a long time if you are looking at

21  something and immediately realize it's offensive and

22  stop watching, true?

23  A.   I didn't say three seconds.

24         I don't recall.  I've testified repeatedly, I

25  don't know how long I watched it.  It was long

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 320 of 403   PageID 14144
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 523

1  enough to become upset, stopped watching it, and

2  have to go to the women's restroom to pull myself

3  together before I could board the flight I was

4  supposed to be on.

5  Q.   One of the things I wrote down, you told us you

6  immediately realized that it was offensive.  What

7  does "immediately" mean?

8       Are you trying to make us watch more of the

9  video than you watched, ma'am?

10  A.   I am not.  Southwest and the Union have argued

11  over the definition of "immediately" in the past,

12  and that is what is going through my mind.

13  Q.   I'm just asking you what "immediately" meant to

14  you sitting in the airport, you looked at it, and

15  immediately realized it was offensive and stopped

16  watching.

17           MR. GREENFIELD:  Objection, your Honor,

18  asked and answered.

19           THE COURT:  Sustained.

20  BY MR. PRYOR:

21  Q.   Is three seconds an unfair estimate?

22  A.   I don't know how many seconds it was playing.

23  Q.   All right.  Ma'am, you've seen this video.  And

24  I'm not asking -- I don't need you to watch it to

25  authenticate it if you do not want to watch it.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1        It's part of the evidence in this case, and so

2   I'm going to play three seconds of this video.

3        (Thereupon, the video clip was played.)

4   BY MR. PRYOR:

5   Q.   Now, you were also sent a -- I'm looking for

6   the -- you know, when you sent your complaint, you

7   didn't include the Facebook message about the hats.

8   Did you?

9   A.   I don't -- I don't think originally.  I think

10  it was just the -- the still screen shots of the

11  video.

12  Q.   Okay.  So your email doesn't mention the

13  pictures of the women in the hats, and it is not

14  attached to Exhibit 66.

15       Do you know whether or not, at the time you

16  made your complaint, you even included the message

17  about the hats?

18  A.   In the original complaint, again, I don't

19  believe so.

20  Q.   Okay.

21  A.   It was provided later.

22  Q.   You don't think you included that, correct?

23  A.   Correct.

24  Q.   Subsequently, Southwest Airlines asked you to

25  send more information, didn't they?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 322 of 403   PageID 14146
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 525

 1  A.    Yes.  They asked me to send anything that she
 2  had sent.
 3  Q.    At that point, you included the message with
 4  the pictures of the hats, true?
 5  A.    I believe so.
 6  Q.    By the way, when Southwest Airlines asked you
 7  to go back and find messages from Ms. Carter, did
 8  they tell you to only go back 18 months?
 9  A.    I don't recall a specific time frame.  I think
10  they requested that I send any communication that I
11  had received via Facebook to the best of my ability.
12  Q.    Did you only send Facebook communications?
13  A.    I don't recall if, at that point, anybody asked
14  if there had been any communication through union
15  channels.  I know at some point I was asked that.  I
16  don't recall if it was at the initial -- in that
17  first, that first conversation.
18  Q.    Did you object to sending communications from
19  Ms. Carter that were union activity?
20              MR. GREENFIELD:  Objection, your Honor,
21  vague.
22              THE COURT:  Sustained.
23              Can you reframe it?
24  BY MR. PRYOR:
25  Q.    Did you review the communication -- first of

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 526

 1  all, when Ms. Carter sent you communications, did

 2  you even read them?

 3  A.   Not all of them, no.

 4  Q.   Which ones did you read?

 5  A.   I couldn't even tell you which ones I read,

 6  there were so many.

 7  Q.   And so at some point, did you stop reading

 8  them?

 9  A.   Yes.

10  Q.   And of the ones that you read, she was

11  complaining about things that you or the union were

12  doing, correct?

13  A.   Not always.

14          MR. GREENFIELD:  Vague, lacks specificity.

15          THE COURT:  I will allow it.

16  BY MR. PRYOR:

17  Q.   You are going to tell us that we are going to

18  see an email or a Facebook communication from her

19  where she's not talking about a complaint about the

20  union, true?

21  A.   To my recollection, she sent things quoting --

22  quoting someone, like somebody's, like, hierarchy

23  levels.  There were memes, there were pictures.

24  Some of the stuff was campaign related.  Some if it

25  was complaining about the union.  It was a variety

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 324 of 403   PageID 14148
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 527

1  of things.

2  Q.   We will go through them, and you can point to

3  the ones that don't relate to her complaints about

4  the union, okay?  Because there are going to be a

5  lot, right, from what you just swore to.

6  A.   I didn't say there were a lot.  I said there

7  were a lot of messages.

8  Q.   I must have misunderstood.

9       Let's look at -- I think it's Exhibit 15.

10            MR. PRYOR:  I move for its admission.

11            THE COURT:  This is 15?

12  BY MR. PRYOR:

13  Q.   So this is an email --

14            THE COURT:  Hold on.

15            I've got Union prior objections to 15.  I

16  can rule on those unless you want a sidebar.

17            MR. PRYOR:  What is the objection?

18            THE COURT:  Hearsay.

19            MR. GREENFIELD:  I think that falls under

20  a previous ruling you found on that, your Honor, so

21  I don't need a sidebar.

22            THE COURT:  Okay.  So I will overrule

23  those objections.  15 is in evidence and we can

24  publish.

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 325 of 403   PageID 14149
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 2 July 06, 2022                    Page 528

 1              (The referred-to document was admitted

 2        into evidence as Plaintiff's Exhibit 15.)

 3   BY MR. PRYOR:

 4   Q.   So Exhibit 15 is an email from you on

 5   February 25th, 2017.

 6        By the way, let's back up for a minute.

 7        On February 22nd, the day that you made your

 8   complaint, it's your testimony you didn't know

 9   anything about other complaints being made about

10   other union members by the union to Southwest

11   Airlines?

12   A.   At that time, no.

13   Q.   At that time?

14   A.   No.  I don't remember other complaints.

15   Q.   You don't remember.

16        When do you remember becoming aware of it?

17   A.   I became aware of things if I heard chatter in

18   the grievance office, if someone brought forward a

19   question to me.

20   Q.   Chatter.  How about emails?

21   A.   Sometimes it was emails from people.

22   Q.   We are going to look at some documents, ma'am.

23        I'm asking you now, do you remember that in

24   February of 2017, in the time period in which you

25   made your complaint against Ms. Carter, that your

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 326 of 403   PageID 14150
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 529

 1  union cohorts were making complaints against recall

 2  petitioners including Ms. Carter?

 3  A.   I don't remember.

 4            MR. GREENFIELD:  Objection, your Honor.

 5  He's testifying.  Lack of foundation.

 6            THE COURT:  I will sustain.

 7  BY MR. PRYOR:

 8  Q.   Are you saying at some point you became aware

 9  of it?

10            MR. GREENFIELD:  Objection, your Honor,

11  same.

12            THE COURT:  I will allow it.

13            THE WITNESS:  There were numerous time

14  periods where social media activity was high and

15  there were a lot of investigations going on.  I

16  don't know about any specific investigations that

17  you are -- I don't know what you are asking about.

18  BY MR. PRYOR:

19  Q.   As union president, if one of your core team

20  members gathered information on the Internet about

21  half a dozen or more union members that were part of

22  the recall petition against your administration,

23  gathered all that up and reported them to American

24  Airlines for social media violations, you are

25  telling us you are not aware of that at any time

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 327 of 403   PageID 14151
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 530

 1   until right now?

 2              MR. GREENFIELD:  Objection, your Honor.

 3   Lack of foundation.  Aware of it until right now?

 4   Thee's been no evidence.

 5              THE COURT:  I will allow it.

 6              MR. McKEEBY:  Can they at least get the

 7   right airline?  For Southwest.

 8              MR. PRYOR:  Did I say American Air?

 9              THE COURT:  Old habits.

10              MR. PRYOR:  I represented American

11   Airlines for about 10 years in another life.  And I

12   apologize.  I apologize to Southwest or American,

13   I'm not sure who I'm offending, and I greatly

14   apologize.

15   BY MR. PRYOR:

16   Q.   Let me ask the question again.

17        Are you telling us you never became aware that

18   in February of 2017, that your core team members

19   were reporting recall petitioners to Southwest

20   Airlines for violations of social media policy after

21   having scoured the Internet looking for violations?

22              MR. GREENFIELD:  Objection, your Honor,

23   compound.

24   BY MR. PRYOR:

25   Q.   Did you ever become aware of that?

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1              THE COURT:  Objection?

2              MR. GREENFIELD:  Compound, your Honor.

3              THE COURT:  I will allow that.

4              You can answer.

5              THE WITNESS:  There were flight attendants

6    that reported things to Southwest Airlines that I

7    did not know about that they didn't talk to me about

8    in advance that I would eventually become aware of

9    through a variety of means.

10             I cannot right now recall specifics about

11   other people reporting flight attendants at this

12   exact same time.

13   BY MR. PRYOR:

14   Q.   Is that your way of saying you don't remember?

15   A.   Correct.  I don't -- I don't recall every

16   social media case and when it happened, nor was I

17   dialed in.

18   Q.   I'm talking about the people that were opposing

19   you, trying to recall you, that your core team

20   members gathered information against them and

21   reported them to Southwest Airlines.

22             I'm not talking about all types of different --

23   I'm talking about this specific instance.  And you

24   wouldn't remember the union reporting over half a

25   dozen union members?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 329 of 403   PageID 14153
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 532

1                MR. GREENFIELD:  Objection, your Honor,

2    asked and answered.

3                THE COURT:  Sustained.

4    BY MR. PRYOR:

5    Q.   I take it you don't.

6                MR. GREENFIELD:  I renew my objection.

7                THE COURT:  I sustained it.

8                MR. PRYOR:  Let's look at Exhibit 15.

9    BY MR. PRYOR:

10   Q.   And you sent this to Denise Gutierrez at

11   Southwest Airlines along with Suzanne Stephensen, Ed

12   Schneider, and Brett Nevarez, correct?

13   A.   Yes.

14   Q.   And you say that "These are screen shots of

15   every message Charlene Carter has sent me via

16   Facebook."  True?

17   A.   Yes.

18   Q.   Okay.  Let's look at them.

19        The next page.  Well, this may work.

20        "Well, Audrey, it looks like you have stepped

21   in dog poo" --

22        By the way, this is March 4, 2015.

23        You got the time frame?

24   A.   Yes.

25   Q.   "Well, Audrey, it looks you all have stepped in

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 330 of 403   PageID 14154
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 533

 1  dog poo big time.  Funny how that happens when there

 2  is little to no integrity with our leadership in

 3  TWU.  No one is buying your apology except maybe

 4  your hardcore followers."

 5       Isn't she talking about the apology that you

 6  made regarding the core team members?

 7            MR. GREENFIELD:  Objection, speculation.

 8  BY MR. PRYOR:

 9  Q.   Is that the context?

10            THE COURT:  I will allow her to answer if

11  she has personal knowledge.

12            THE WITNESS:  I'm assuming so.

13  BY MR. PRYOR:

14  Q.   I'm sorry?

15  A.   I said I'm assuming so.

16  Q.   Okay.

17       But in any event, you issued an apology for all

18  of the horrible things that were said by your core

19  team members on your secret core team Facebook, and

20  Ms. Carter is calling you on it.  She's Facebook

21  messaging you about it and says she's not buying it.

22       That's complaining to her union, that's union

23  activity.

24       Do you agree?

25  A.   Yes.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 331 of 403   PageID 14155
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 534

 1  Q.   Okay.  Well, let's keep looking.

 2       So it says on the next page -- and you can read

 3  any excerpts you want, by the way.

 4       The next page is "I have experienced the hate

 5  before from a few of your board members and staunch

 6  supporters, along with threats that are being

 7  brought against me for saying the word 'decertify,'

 8  even though Brett, who made that threat, did try and

 9  decertify from TWU years ago."

10       I think earlier I said Cuyler Thompson, so it

11  must have been Brett Nevarez.

12       But nonetheless, this is a union member

13  communicating with you again about the hateful words

14  that were used on your core team and is complaining

15  about it and about her personal experience with the

16  union.

17       That's union activity that's protected, in your

18  opinion, true?

19            MR. GREENFIELD:  I would like, your Honor,

20  to object to this portion as hearsay without an

21  instruction to the jury that this is not being asked

22  for for the truth of the matter asserted, that

23  these --

24            THE COURT:  If you've got a speaking

25  objection, you can go for it at sidebar if you want

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 332 of 403  PageID 14156
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 535

1  to.  I think I know what it is.

2              MR. GREENFIELD:  I apologize.

3              THE COURT:  So I will overrule that

4  objection.  You can continue.

5  BY MR. PRYOR:

6  Q.   You can answer.

7  A.   Yes.

8  Q.   Union activity, ma'am?

9  A.   Yes.

10 Q.   And you believe it is protected union activity,

11 that she's entitled to do that, true?

12 A.   This, yes.

13 Q.   Okay.  Let's go to the next page.

14      It says, "Vote everyone out of office the next

15 election cycle.  Pray that happens from a member who

16 still pays dues, just objects to paying for the TWU

17 liberal political stuff and the sheer disrespect you

18 show to members that do not agree with you."

19      Once again, that's union communication,

20 complaining about her union, and you believe it's

21 protected, true?

22 A.   Well, it's inaccurate.  She wasn't a member at

23 this point.

24 Q.   You can disagree with her, ma'am.  I'm not

25 saying you have to agree with a single things she

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 333 of 403   PageID 14157
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 536

1  says.  I'm saying you agree that it is union

2  activity and she has the right to say it?

3  A.   Sure.

4  Q.   Sure.  But you send it to Southwest Airlines

5  for them to take action against her.  You know it is

6  protected, you are the union president, and you send

7  it to Southwest Airlines.  Didn't you?

8            MR. GREENFIELD:  Objection, your Honor,

9  mischaracterizes.

10            Can I approach?

11            THE COURT:  I will sustain that.

12  BY MR. PRYOR:

13  Q.   Did you, in fact, intentionally send to

14  Southwest Airlines protected activity of Ms. Carter

15  for them to take action against her?

16  A.   No.

17  Q.   So you didn't expect them to take action for

18  this, right?

19  A.   I sent this to comply with their request that I

20  send messages.

21  Q.   You are a union president, ma'am.  You can say

22  no to a request that you gather union activity and

23  send it to the management of Southwest Airlines to

24  take action against a union member for engaging in

25  protected union activity.  You could have done that,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 334 of 403   PageID 14158
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 537

 1  true?

 2             MR. McKEEBY:  Objection --

 3             THE COURT:  Hold on.

 4             MR. McKEEBY:  -- foundation, and it talks

 5  about the intent of Southwest Airlines, or the

 6  question does.

 7             MR. PRYOR:  I'm talking about her.

 8             THE COURT:  Hold on.

 9             I will overrule that.  You can answer the

10  question.

11             THE WITNESS:  I could have refused to send

12  any additional messages, yes.

13  BY MR. PRYOR:

14  Q.   And if you wanted to protect a union member's

15  protected union communications, you would have done

16  that, wouldn't you?

17  A.   I was trying to protect myself from being

18  harassed further.

19  Q.   You were trying to protect yourself by sending

20  union-protected activity to Southwest Airlines about

21  a union member.  That is protecting yourself?

22  Violate your union obligations to protect yourself?

23       Do you have an answer or can I go on?

24             MR. GREENFIELD:  Objection, your Honor.

25  Assuming facts not in evidence about certain

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 335 of 403   PageID 14159
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 538

 1  obligations, that's something that should be in the

 2  province of the jury.

 3           THE COURT:  I will sustain.

 4           I sustained.  New question.

 5           MR. PRYOR:  Okay.

 6  BY MR. PRYOR:

 7  Q.   Let's look at the next page.

 8       It says, "Hmm.  Didn't you say in your apology

 9  letter that the group where all of the hate was

10  spewed was started by your supporters?"

11       Once again, she's talking about union activity

12  and complaining about what her union is doing.  And

13  that is protected union activity, true?

14  A.   Yes.

15  Q.   Yes?

16  A.   Yes.

17  Q.   And then the next page.  "Talking

18  disrespectfully about members, but y'all allowed it

19  to happen.  That sure says a lot about the true

20  character of each of you."

21       Again, she's complaining about her union,

22  right?

23  A.   Yes.

24  Q.   I'm sorry, I can't hear you.

25  A.   Yes.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 336 of 403   PageID 14160
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 539

 1  Q.   And the next page says, "I opted out of this
 2  union.  It has been going on a long time.  I should
 3  know, since I have all of the transcripts from
 4  Melissa Smith's trial that I testified.  You are all
 5  a product of what is wrong with our union."
 6       Once again she's complaining about her union,
 7  right?
 8  A.   Yes.
 9  Q.   And, in fact, she's talking about a current
10  event.  She's complaining about the core team
11  publications that came out showing improper activity
12  for which you apologized and she's complaining
13  about, true?
14  A.   Yes.
15  Q.   These didn't come out of the blue.  There was
16  an event that precipitated it, true?
17  A.   Yes.
18  Q.   And when she talks about Melissa Smith, she's
19  talking about Melissa Smith that got kicked out of
20  office in 2000 by the union after being elected by
21  the members, and she's upset about it, true?
22            MR. GREENFIELD:  Objection, your Honor.
23  He's testifying.  There's been no evidence
24  presented.
25            THE COURT:  Sustained.

```
 1  BY MR. PRYOR:
 2  Q.   Do you know that that is what she's referring
 3  to?  Is that how you understand the context of what
 4  she's saying?
 5  A.   Talking about Melissa Smith's trial.  Yes, I
 6  don't know anything about -- I mean, I wasn't even
 7  working at Southwest at that time.
 8  Q.   It certainly is her complaining to her union
 9  about a current event, true?
10  A.   Melissa Smith's trial?
11  Q.   No, about the context of it.  Saying, this is
12  why I opted out, because of all of the horrible
13  things that you guys are doing.
14       And it is in the context of it coming out about
15  what all your core team members were saying about
16  fellow flight attendants that are union members.
17            MR. GREENFIELD:  Objection, your Honor.
18  He's testifying and lack of foundation.  Again,
19  about what all her union --
20            THE COURT:  I will allow this one.
21            THE WITNESS:  It's what the message
22  started out as.
23  BY MR. PRYOR:
24  Q.   Well, it certainly is still talking about union
25  activity, true?
```

 1  A.    Yes.

 2  Q.    And then the next page.  "Corruption at its

 3  best.  You should be proud of yourselves."

 4        She's got a picture of your core team there.

 5  That is part of your core team.  Oh, there you are,

 6  Audrey Stone.  Oh.  That says "Audrey Stone, TWU."

 7  What is that?  What is that?

 8  A.    A Facebook.

 9  Q.    Oh.  So you are using -- I thought you didn't

10  use Audrey Stone, TWU.

11  A.    That's not what I said.

12  Q.    Oh, I thought it was very rare.  It turns out

13  you used it on the core team, right?

14  A.    I never said that.

15  Q.    So you never used it on the core team or you

16  did?

17  A.    I utilized it some on the core team.  I never

18  said that I didn't use it.

19  Q.    Okay.  So once again, this is a current event,

20  complaint about her union from Ms. Carter to the

21  president of her union, true?

22  A.    Yes.

23  Q.    And, in fact, it was sent to Audrey Stone, TWU,

24  right?  That is what you had at the time.

25  A.    Yes.  This was right afterwards and I hadn't

1  changed it yet.

2  Q.   By the way, she was an objector.  Frankly, even

3  if she wasn't an objector, you could have blocked

4  her if you wanted to, right?  Get someone to block

5  her if you don't know how.  But you know you can

6  block people.

7  A.   Yes.

8  Q.   And you chose not to because she's sending you

9  union complaints, and as union president, you

10  shouldn't turn a blind eye to that, whether it is

11  from an objector or a member, right?

12  A.   I chose not to block her at that time.  It's

13  something I regret.

14  Q.   And then the next page, there is your core team

15  member again.  She's talking about she's now read a

16  lot of these horrible things that were said there,

17  and she's upset, and she says, "I see you and your

18  board.  Such a shame.  Moral bankruptcy."

19       And then she sends you an article explaining to

20  you what morals are, right, in the context of her

21  telling you, our union lacks morals.  That is her

22  exercising her union right, true?

23  A.   Yes.

24  Q.   And that goes on for a few pages.  And then --

25       By the way, then there are some blank pages.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 340 of 403   PageID 14164
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 2 July 06, 2022                         Page 543

 1  Do you know why there are blank pages?

 2  A.    No.   It looks like there were photos on the

 3  left that aren't being loaded or displayed.

 4  Q.    Do you know what those were or are?

 5  A.    No, I don't recall.

 6  Q.    Let's go to the next page that has some writing

 7  on it.

 8        Then it says -- it's -- I don't know how to

 9  tell you what.   It's the page after that one.

10        It says, "This came from a friend of mine in

11  Denver who also had the pleasure of the disrespect

12  from a few of this unelected board."

13        When she says "unelected board," she's talking

14  about your officer team, correct?

15  A.    I assume so.

16  Q.    Okay.   I understand there are a few other

17  unelected boards in the history of your local union.

18  But this, in the time frame that we are talking

19  about, was referring to you and your board, correct?

20        You don't have to assume.   You understand that.

21  A.    Members of my board.   It wasn't the whole

22  board.

23  Q.    Now, she's complaining once again about the

24  unelected board, okay, and praying that you will be

25  voted out.   She's talking now about that she hopes

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 341 of 403  PageID 14165
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 544

1  you get voted out.

2       That is a union activity, she's entitled to

3  suppress her opinion, and it's topical, given what

4  had just happened.  Do you agree?

5  A.   Yes.

6  Q.   And you sent it to Southwest Airlines for them

7  to take action.  That was your intent in sending it?

8  A.   No.  I sent it to Southwest Airlines at their

9  request as part of their investigation.

10  Q.   No, ma'am.  Just a moment ago you said, "I sent

11  it to protect myself."  That's what you said.

12       No, no.  But now you are telling me, no, I did

13  it because I was ordered to.  Which is it?

14  A.   I said earlier it was at their request, and I

15  felt like I had been harassed with that last batch

16  of things she had sent me, and this was sent at

17  their request as part of that.

18  Q.   Do you feel like you are being harassed today?

19  A.   This entire process has absolutely made me feel

20  like I've been harassed.

21  Q.   Do you feel like I'm harassing you by

22  confronting you with evidence and making you respond

23  to it?

24  A.   Oh, I think you have been very aggressive and

25  twisted my words throughout today.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 342 of 403   PageID 14166
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 545

1  Q.   Which words?  Tell me a word I twisted.  You

2  get to rephrase it.  Let's go for it.

3            MR. GREENFIELD:  Objection, your Honor.

4            THE COURT:  Sustained.

5  BY MR. PRYOR:

6  Q.   What words have I twisted?

7            MR. GREENFIELD:  Objection, your Honor.

8  It's the same question.

9            THE COURT:  I will allow this one

10 question.

11           THE WITNESS:  One of the exhibits earlier,

12 you were twisting the words to say that Cuyler had

13 threatened her, versus the actual sentence that was

14 in the exhibit.

15 BY MR. PRYOR:

16 Q.   Fair enough.

17      It turns out I was wrong.  It wasn't your

18 secretary officer that threatened Ms. Carter, it was

19 the vice president, Brett Nevarez, that threatened

20 her.  I apologize for my mistake.

21           MR. GREENFIELD:  Objection, your Honor.

22 Lack of foundation.  That evidence has not been

23 presented at any point during this trial.

24           MR. PRYOR:  It is what she just said.  She

25 said it should have been Nevarez, not Cuyler.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 343 of 403   PageID 14167
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 2 July 06, 2022                      Page 546

 1            THE COURT:  I'll overrule the objection.

 2   Ask a new question.

 3   BY MR. PRYOR:

 4   Q.   Let's look at the next page.

 5        And she's forwarding you something that someone

 6   had sent that's -- she says that she wants to vote

 7   you out of office so we can bring back truth,

 8   transparency, integrity and unity.

 9        And she has included in this string, it's not

10   from her, but someone posted "Fucktard.  I voted

11   Brett Nevarez because he respects me."

12        That is a commentary on the "fucktard" language

13   used about flight attendants in the core team, true?

14   A.   Yes.

15   Q.   And so once again, she's pointing out with a

16   visual the improper activity of her union, in her

17   opinion, true?

18   A.   Yes.

19   Q.   Let's look at the next page.

20        By the way, I keep looking for -- you told me

21   that none -- I can keep going through all of this.

22   It all relates to union activity, ma'am.

23   A.   I never said none.

24   Q.   I thought you did.  I thought you said there

25   were memes.  I thought you said there were things

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 344 of 403   PageID 14168
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 547

 1   unrelated.

 2        In fact, isn't it your testimony that every

 3   communication you received from Ms. Carter related

 4   to her complaints about the union?

 5   A.   No, I do not believe some of these things --

 6   Q.   Let's keep looking then.  So far we have seen

 7   topical, timely, complaints about her union.  True?

 8   A.   No.  I don't think it's timely.  I don't think

 9   bringing up a trial, a union event that took place

10   22 years ago is timely.

11   Q.   So she's raising it as an example of the

12   continued corruption of her union in regard to

13   something that had just occurred, and she's saying,

14   wow, this is typical.  This is -- you guys have done

15   this before.

16        And you are saying that is not topical, to

17   raise that issue?

18             MR. GREENFIELD:  Objection, your Honor.

19   He's testifying about what Carter was intending with

20   these messages.

21             THE COURT:  Hold on.  Hold on.  Speaking

22   objections.

23             MR. GREENFIELD:  Sorry, your Honor.

24             MR. PRYOR:  I'm testing her answer.

25             THE COURT:  I will allow this question.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 345 of 403   PageID 14169
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 548

1              THE WITNESS:  I didn't say it wasn't

2    topical.  I said I didn't think it was timely.

3    BY MR. PRYOR:

4    Q.   So let's look at the next page.  It says, "This

5    is what radical unions like TWU use to get their

6    way, smart things being used by this unelected

7    board.  But people are waking up to the tactics and

8    some day the chickens will come home to roost.

9    Praying to God it comes sooner than later."

10         Once again, she's talking about her complaints

11   about the union, true?

12   A.   Yes.

13   Q.   And then she says "radical unions," and then

14   she gives you examples from Alinsky as to what the

15   rules for radicals are to further make her point

16   that her radical union is not representing her.

17         Do you see it?

18   A.   I see some of it.

19   Q.   I can bring you a copy of this exhibit if you

20   want.

21         That is what she's doing, right?

22         I can read it.

23   A.   I'm looking at it.

24   Q.   Okay.  Is that what she's doing?

25   A.   Would you repeat the question, please?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 346 of 403   PageID 14170
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 549

 1  Q.   Yes.  She's telling that you what you guys are

 2  doing is radicalizing the union, and then she's

 3  giving you examples of what radicalization means

 4  through the rules that she's going through.

 5       It is relating to her complaints about her

 6  union, to show that what you are doing is

 7  radicalizing the union.

 8       You don't have to agree with her, but that is

 9  what she is doing.

10  A.   I don't.  I think that's what she was intending

11  to do.

12  Q.   You think what?

13  A.   I said I don't agree.  I think that is what she

14  was intending to do.

15  Q.   Okay.  I understand you don't agree with her,

16  but she's complaining to her union about being

17  radicalized and giving examples of what

18  radicalization means, right?

19  A.   Yes.

20  Q.   All right.  Then let's go to the page that

21  says, "My attorney called it blatant discrimination.

22  I wonder who on the EB called in this favor for

23  Brian."

24       You know what this one is about, don't you?

25  A.   I think so.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

```
 1   Q.    You don't?

 2   A.    I said I think so.

 3   Q.    Okay.

 4         And what happened is Brian Talburt violates

 5   social media policy and he doesn't lose his job.

 6   And she's saying that is blatant discrimination.

 7         Your core team member gets off the hook --

 8              MR. McKEEBY:  Objection, your Honor,

 9   relevance.

10              THE COURT:  Hold on.  Sustained.

11              MR. PRYOR:  To the complaint being made?

12   Okay.

13   BY MR. PRYOR:

14   Q.   What do you understand this to be about?  Is it

15   relating to her complaints about the union and union

16   members and how some are treated differently than

17   others, in her opinion?

18   A.    That is what she's claiming, yes.

19   Q.    Is she allowed to raise that complaint?

20   A.    She can, yes.

21   Q.    And in fact it's timely, it's talking about an

22   event that just happened, true?

23   A.    Yes.

24   Q.    So far we have seen timely complaints about the

25   union.
```

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 348 of 403   PageID 14172
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 551

 1      Let's look at the next page.

 2      She's saying, "Hmm.  It looks like there is

 3 another group that is not happy with TWU.  TWU Local

 4 577 is now attempting to decertify.  This letter

 5 below from Local 577, contract negotiators, they

 6 quit."

 7      She's pointing out that the transportation

 8 workers union that she's complaining about, that

 9 other people are complaining too, and she gives you

10 an example.  True?

11 A.    Yes.

12 Q.    It sounds like union activity, doesn't it?

13 A.    Yes.

14 Q.    So that goes on for a couple of pages.

15      Let's see where the next thing is.

16      Let's look at the page -- it's hard to read.

17 It looks like SWA 612.  It looks like that is where

18 we pick up.

19      And she says, "Hey, where did Mr. Talburt go?

20 Will there be another favor called in?  And to think

21 you condoned his behavior, along with Brett and the

22 rest, really shows your lack of morals.  Praying

23 that changes."

24      Once again she's complaining about her union,

25 right?

1  A.   She's talking about someone -- a flight

2  attendant's investigation, and complaining about, I

3  guess two of us involved with the union.  So yes.

4  Q.   So let's see.  She's complaining about

5  Mr. Talburt, your core team member, who is involved

6  in the inappropriate communications that she's

7  complaining about.  Brett Nevarez, an officer, the

8  same thing, and she's sending it to you.

9       And you are telling us that is not complaining

10 about the union, this is talking about something

11 completely unrelated.

12 A.   That is not what I just said.

13 Q.   So it is union related, correct?

14 A.   Yes.

15 Q.   And then, lo and behold, the next page, she

16 says, "Well, well, well.  Brian is back and so many

17 more."

18            MR. PRYOR:  Your Honor, may I approach?

19            THE COURT:  You may.

20            (Thereupon, the following proceedings were

21      had at sidebar:)

22            MR. PRYOR:  Your Honor, I would ask --

23 give whatever limiting instruction you want.

24            But my client is sending her -- these are

25 the messages they fired her for.  She's sending a

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 350 of 403   PageID 14174
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 553

1  union complaint saying -- let me finish -- that,

2  hey, what Brett Nevarez is doing, he had been

3  charged with something, and she predicts, oh, yes,

4  he will get off.  And sure enough, that is what her

5  next text says.  He gets off.

6           That is the substance of her opinion and

7  what she's writing --

8           THE COURT:  You're very loud right now.

9           MR. PRYOR:  Okay.  I apologize.

10          THE COURT:  You only have to be picked up

11  by the mic, not by the jury.

12          MR. PRYOR:  I'm sorry.  It's not my

13  intent.

14          THE COURT:  Understood.

15          I mean, so I think it's already come in,

16  right, against my wishes.

17          MR. PRYOR:  If it came in against your

18  wishes, I will not --

19          THE COURT:  So I mean I'm not inclined to

20  bring it up to a fifth time.  The jury has already

21  heard it, that he got reinstated.  So I think

22  they've heard it.  I don't think we need to --

23          MR. PRYOR:  I will not say it again then.

24          If it came in over your ruling, I also

25  want to mention --

```
 1            THE COURT:  This is a good stopping
 2  point --
 3            MR. PRYOR:  Okay.  I'm done.
 4            THE COURT:  With it being 5:00, are we
 5  near a breaking point?
 6            MR. PRYOR:  Sure, you can stop any time.
 7  But I'm going to finish in another -- I don't want
 8  to say 30 more minutes, but I have got some more
 9  time with her.
10            THE COURT:  Can you finish by 5:10?
11            MR. PRYOR:  No, sir.
12            THE COURT:  Then let's break here and come
13  back tomorrow at 9:00.
14            MR. PRYOR:  Yes.
15            (Thereupon, the sidebar was concluded and
16        the following proceedings were held in open
17        court:)
18            THE COURT:  It is 5:00, so we are going to
19  let y'all go.
20            So we will come back here at 8:45 in the
21  morning, get on the record, and going by 9:00.
22            So same instructions as always.  Only talk
23  to your fellow jurors and court personnel, just not
24  about the case.  Don't talk to anyone else.  And
25  please keep an open mind and don't do any research
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 555

 1  on the case.

 2              All rise for the jury.

 3              (The jurors exited the courtroom.)

 4              THE COURT:  All right.  You are excused,

 5  but you still can't talk to anyone about the case.

 6              I'm sorry that we are carrying you over to

 7  tomorrow.  We will see you tomorrow at 9:00.  Thank

 8  you, Ms. Stone.

 9              Okay.  I will wait and we will take up any

10  other issues y'all have once she's out.

11              (The witness exited the courtroom.)

12              THE COURT:  All righty.

13              Anything we should talk about?  I know

14  Nevarez.  Any peep on Nevarez?

15              MR. McKEEBY:  No.  We sent him another

16  communication today.

17              THE COURT:  Okay.  I guess the deadline is

18  tonight at 11:59.

19              MR. GREENFIELD:  And a joint one last

20  night as well.

21              THE COURT:  Right.  Nothing.

22              So here is my read on a path forward on

23  Nevarez.  So I think what I would need to do next is

24  set a show cause order out.  It's awkward to send a

25  show cause setting a hearing for someone who is

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 353 of 403   PageID 14177
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 556

1  beyond 100 miles.  I could do it, or say, in the

2  alternative, explain in writing your delay if you

3  choose not to show at the hearing and do it in sworn

4  form.

5              The problem is, once I have a failure to

6  respond to a show cause order, the next remedy is a

7  motion for contempt.  But then if he's not within

8  100 miles, I would have to transfer to a judge who

9  is within 100 miles of him.  All right.  And we see

10 what that judge does on their timelines.

11             So my request will be, let me know at

12 8:30 in the morning if there has been any

13 development on Nevarez.  I will draft a show cause

14 order.

15             And then if I do it and he fails to

16 respond tonight and fails to respond to the time I

17 set in the show cause order, then I will ask if

18 Carter wants to file an appropriate motion and have

19 me transfer it to a judge wherever he's at.

20             And then I need information from Southwest

21 and the Union on where Nevarez would be at, right?

22 Because I don't know who to transfer it to if I

23 don't know his schedule.

24             MR. CLOUTMAN:  He lives in Las Cruces, New

25 Mexico.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 354 of 403   PageID 14178
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 557

 1              THE COURT:  Las Cruces, New Mexico.  Okay.
 2              MR. CLOUTMAN:  I believe there is a
 3    district court sitting there, or Albuquerque.  He
 4    rotates through there.
 5              THE COURT:  Okay.  Any thoughts, comments
 6    on that course of action?
 7              MR. PRYOR:  I have a comment.  To me, it
 8    is two issues.
 9              Certainly Mr. Nevarez, I agree that's the
10    procedure that has to be followed with a
11    miscellaneous proceeding, but there is also the
12    issue of the order to Southwest Airlines and the
13    Local 556.
14              They have control of this person.  They
15    should have produced him.  I understand they are
16    saying, We can't get ahold of him.
17              Well, that is pretty convenient about a
18    witness that has got a lot of bad testimony to give
19    in this case, and we would ask for our relief in
20    that regard.
21              THE COURT:  I understand.
22              And my point is we are not there yet.  I'm
23    still trying to obtain his testimony.
24              And if another judge can secure his
25    attendance via a marshal and some shackles, if there

 1   is a judge within 100 miles of him and the judge

 2   issues a contempt ruling, then the marshals will

 3   take that out and bring him in, in leg irons.  And

 4   so he could sit for a depo there or for live

 5   testimony by Teams there, right?

 6          So we are still looking at securing his

 7   testimony.  The question is how do we do that?

 8          If we can't, then I need to look at

 9   alternate remedies.  I need to look at do I assume

10   the questions that you asked him would be answered

11   the way that you would want them answered.

12          I haven't thought through that yet because

13   I'm not there yet.

14          MR. PRYOR:  Thank you.

15          MR. McKEEBY:  There will be the

16   opportunity to argue that, I trust.

17          THE COURT:  Of course.  Absolutely.

18          Okay.  Any other issues?  I have got my

19   prioritization on depo designations and who is up

20   next.  So we are looking at Conlon and Kleburne and

21   Burdine and Rutherford.

22          MR. GOTTFRIED:  Your Honor, we have

23   out-of-town witnesses, and I don't know exactly

24   their schedules in terms of the duration of their

25   stay in Dallas.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 559

 1              But I would like to get a better sense of,

 2   in particular, when they intend to call Ms. Emlet

 3   and Mr. Schneider.

 4              And I guess also generally, maybe a bit

 5   more precision as to the witnesses.  Last night we

 6   got a -- the email indicated that they would be

 7   calling today, I think, six different witnesses, and

 8   we are not even through one.

 9              So I would ask that they give us a little

10   bit better notice and specifically tell us with

11   respect to these out-of-town witnesses when they

12   intend to call them.  They need to be done this week

13   if at all possible.

14              THE COURT:  Understood.

15              What can y'all tell us at this point in

16   time, especially as it relates to the

17   out-of-towners?

18              I know when it comes to in-towners, I put

19   the burden on y'all for 6:00 at night.  We're not

20   far from that, so you will have to tell us soon.

21              But on the out-of-towners, what can you

22   tell us as far as the run of show and when you can

23   expect to call them?

24              MR. PRYOR:  We gave them our list of

25   witnesses in order; that is still the case.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 357 of 403   PageID 14181
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 560

1          I don't have the email in front of me.

2          But we will call Mr. Talburt after

3  Ms. Stone.  We would then call Mr. Nevarez, although

4  that does not appear likely.

5          We will then call Mr. Parrott.  Then

6  Parker, by deposition.  Conlon, possibly by video.

7  Possibly Mr. Sims.

8          And that may be after I talk to the Court

9  about time.  And if there is not going to be time,

10 then we may cut Mr. Sims.

11         Mr. Schneider will be called.  That would

12 be the next witness.

13         Basically giving our trial strategy away

14 here to try and satisfy that request.  That is

15 pretty far down the line.

16         THE COURT:  So is Hamlet on the list?  I'm

17 just trying to think.  So Schneider and Hamlet are

18 the two out-of-towners you are asking about.

19         MR. McKEEBY:  Emlet and Schneider.

20         THE COURT:  Emlet.  Sorry.

21         MR. PRYOR:  Emlet is on the list.

22         After Schneider, I anticipate it will be

23 Ms. Hudson and then Ms. Emlet.

24         THE COURT:  So the question is, are they

25 off the hook?  Can they leave town for a day or two,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 358 of 403   PageID 14182
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022                     Page 561

1  or how fast do you expect to go, assuming that we

2  don't have Nevarez here.  And I don't know the

3  answer to that.

4          Can I ask a question right quick on

5  cleanup?  Conlon, you said by video.  Are we talking

6  live video Teams or video depo?

7          MR. PRYOR:  Live video.  Video deposition.

8  I'm sorry.

9          THE COURT:  Video depo.  Got it.

10         I'm just making sure, because Conlon is

11  the first on my list to go through page/line

12  objections.  If it was a live video, then we scrap

13  the page/line.  So I'm just making sure it is a

14  video depo.

15         Well, I'm trying to figure out if there is

16  a day off for Emlet and Schneider tomorrow.  That is

17  what I'm trying to figure out.

18         I don't know the answer to that.  If these

19  witnesses are super efficient, then sure, right?  If

20  we skip Nevarez and the Parker depo is quick,

21  then --

22         MR. PRYOR:  As we said in our motion

23  regarding more time, our two long witnesses are

24  Ms. Stone and Ms. Carter, which we anticipate they

25  would take half of our case.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 359 of 403   PageID 14183
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 562

1              The rest we would like more time with, but

2   obviously, it is what the Court gives us.

3              THE COURT:  Understood.

4              Okay.  So do you all anticipate getting to

5   Schneider or Emlet tomorrow?  That's my question.

6              I mean, y'all can't forecast what they are

7   going to spend on cross.

8              MR. GILLIAM:  I would say Emlet is

9   unlikely.  I would say Schneider is --

10             THE COURT:  Possibly by the end of the

11  day?

12             MR. PRYOR:  I would think Schneider at the

13  end of the day or the next morning.

14             THE COURT:  Sure.

15             MR. GREENFIELD:  Your Honor, while John

16  Parrott came up, is there any way we can make him

17  available via phone call?  He is local.  He sat here

18  all day patiently, and it was pretty clear he wasn't

19  going to go.  We only caught him in the hall at that

20  last break, to say, Hey, you can get out of here.

21             Is there any way we can make that notice

22  via phone call so he doesn't have to be here at

23  9 a.m. tomorrow?

24             THE COURT:  So Talburt is going next after

25  Stone?

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 360 of 403   PageID 14184
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 563

1          MR. PRYOR:  Yes.

2          THE COURT:  Sure.  I mean, I would assume

3    we wouldn't get to Parrott until like 10, 10:30.

4          MR. PRYOR:  I'm very hopeful to finish

5    after another hour or less with Ms. Stone.

6          THE COURT:  And we still have got cross,

7    wide-open cross.

8          MR. PRYOR:  I don't know how long that is

9    going to take.  If they want to do their case cross,

10   that's fine.

11         How long are you going to take?

12         MR. GREENFIELD:  I would presume that

13   Stone alone will take us into the afternoon, your

14   Honor.

15         THE COURT:  Sure.

16         MR. PRYOR:  I didn't hear.  How long?

17         MR. GREENFIELD:  I presume -- at least,

18   based on my anticipation, I can't speak for

19   Southwest -- that depending on when you wrap up

20   Stone, it will probably get us to lunchtime by the

21   time the two of us are done would be my guess.

22         MR. PRYOR:  Oh.  So we may not get to

23   Schneider tomorrow then if you are going to take

24   that long.

25         Okay.  I don't know.

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 361 of 403   PageID 14185
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 564

1              Well, do you think you will be done by

2    noon?

3              MR. GREENFIELD:  I can't possibly make

4    that representation.

5              MR. GILLIAM:  We are trying to give you

6    some of our forecast.

7              THE COURT:  How about this.

8              MR. GREENFIELD:  You guys took all day

9    with one witness and you said you might call six.

10             THE COURT:  Tell Parrott to be here by

11   12:30.  We can break for lunch.  If we need to break

12   for an early lunch at 11:30 when we finish with the

13   final round of examination on Stone, so be it, and

14   then Parrott can be here 12:30, and then we can pick

15   up and go.

16             Does that make sense?

17             MR. PRYOR:  That's fine.  I don't think we

18   will get to --

19             THE COURT:  All right.  And Schneider is

20   probably off tomorrow.  Emlet is probably off

21   tomorrow.  Got it.

22             Anything else?

23             When you send your emails at 6:00 and

24   8:00, can you also copy Ms. Silver on it, not just

25   Mr. Frye?  The law clerks work all sorts of hours

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 362 of 403   PageID 14186
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                        Page 565

 1  because they are FSLA exempt.

 2              So her email, if you don't have it handy,

 3  is savannah_silver@txnd.uscourts.gov.

 4              All right.  See y'all in the morning at

 5  8:30.

 6              THE COURT SECURITY OFFICER:  All rise.

 7              (Proceedings adjourned at 5:14 p.m.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 363 of 403   PageID 14187
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Page 566

1                    C E R T I F I C A T E

2

3              I, Kelli Ann Willis, RPR, CRR, CSR

4    certify that the foregoing is a transcript from the

5    record of the proceedings in the foregoing entitled

6    matter.

7              I further certify that the transcript

8    fees format comply with those prescribed by the

9    Court and the Judicial Conference of the United

10   States.

11              This 7th day of July 2022.

12

13              s/ Kelli Ann Willis
                Official Court Reporters
14              Northern District of Texas
                Dallas Division

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 364 of 403   PageID 14188
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Index: (pa.)use..66

**(**

**(pa.)use** 384:3

**0**

**011** 315:21

**07** 315:7 316:8

**1**

**1** 210:5 247:12 392:17 454:19

**1,000** 407:2

**10** 248:24 307:13 453:9 530:11 563:3

**100** 358:22 470:19 556:1,8,9 558:1

**10:30** 563:3

**10:46** 307:13

**11** 249:2 361:14

**11:30** 564:12

**11:59** 555:18

**12** 249:5 453:9

**12:07** 379:8

**12:30** 564:11,14

**13** 249:7 310:4 402:18

**132** 230:7 233:9 234:1

**134** 450:13

**14** 249:11

**14-** 481:16

**140** 233:11,12 234:10 400:9,10,17,20 401:2

**141** 218:5 219:16 233:12 234:10 404:11 405:8,9 406:11

**146** 233:12 234:8,14,15 235:15,23 236:12 237:14 327:10,11,15,18 328:2,4 329:14

**14th** 249:2,14

**15** 212:11 213:9,19 247:2 249:14 272:15 361:14 527:9,11,15,23 528:2,4 532:8

**15,000** 330:17 442:15 481:16

**17** 326:17 334:13,16

**18** 271:21 272:5 525:8

**19** 249:22 250:16 252:15 408:16 480:13, 14,16,22 481:5,7

**19-year-old** 250:10

**1981** 383:20 384:1,7

**1983** 249:22 384:8

**1985** 383:20 384:1,7

**1996** 247:17 252:23 253:10,19

**1:02** 380:5,21

**1:07** 379:8

**2**

**2** 210:5 247:16 288:8 289:2,4 290:4,6 291:19 292:8,15 293:2 294:1 295:7 303:11 306:10 315:22 383:8 396:4

**20** 272:15 461:16

**20-second** 222:7

**2000** 255:4 539:20

**2012** 317:3,4,5

**2013** 220:22 221:3 248:3 256:4 302:14 310:7,12,13 316:17,24, 25 325:22 326:25 335:9

**2014** 329:24 351:13 357:10 402:11,18

**2015** 248:7,12 264:10 316:22 470:24 532:22

**2017** 220:24 248:6,12, 20,24 249:2,7,11,14 253:19 259:18,20 263:13,14 266:14,15 267:3,10 415:4 488:7 528:5,24 530:18

**21** 213:23 214:12,14 215:21 219:17 220:3 229:6 231:16 233:25 234:12 253:19 392:2,24 453:24

**21st** 248:24

**22** 213:23 219:21 223:22 229:6 231:16 234:1,12 263:13,14 266:14,15 267:3,10 435:19,21,24 547:10

**22-0** 435:9 436:11

**22-O** 435:13,18,20,22

**22nd** 249:7 415:4 488:7 528:7

**23** 223:21,24 449:13,14, 15,22,24 450:2

**24** 318:14,16,17,21,23, 25 319:3,6,8 444:12,19

**24-hours** 394:6

**25** 341:14,15,18 342:11, 15,17 343:1,2

**25th** 528:5

**26** 353:10 354:16,20,22

**27** 360:5,16,18 397:20

**29** 420:25 421:2,3,6 422:24 423:1,3,5

**2:36** 452:12

**2:38** 451:21

**3**

**3** 247:18

**30** 432:21,22,24 433:6, 8,11 554:8

**30-day** 253:22

**31** 224:5,8,9 225:17,18 226:23

**32** 465:12

**3:17-cv-2278** 210:6

**4**

**4** 247:21 532:22

**403** 218:19

**404** 297:18,20,21,25 298:20,24

**404(a)(1)** 296:7,9 298:8

**404(b)** 442:9

**408** 290:4 297:2

**43** 466:1

**48** 444:20 445:17

**49** 466:1,2

**4:15** 512:23 515:22

**5**

**5** 247:24 470:18

**50** 258:21 394:23 470:18

**52** 451:8,9,10,11 452:6, 8,18 453:2,6,8

**53** 455:12,14 458:5,11

**556** 210:7 227:22 228:5 236:3 247:18,21 248:4, 21,25 249:3 256:6 261:5 300:3,15 310:4 330:24,25 334:6 337:1 361:6,24 453:10,24 459:18 463:21 492:18 507:13 508:15 557:13

**556's** 248:1

**56** 462:22,23 463:7,10, 15

**57** 227:1,10 228:20

**577** 551:4,5

**5:00** 554:4,18

**5:10** 554:10

**5:14** 565:7

**6**

**6** 215:22 236:1,25 248:3 314:7,17,18,21,23 315:3 394:22

**612** 551:17

**66** 478:1 480:10,12 488:16 489:2 524:14

**68** 224:4 226:24 229:5, 13,25

**6:00** 559:19 564:23

**6:30** 212:7

_____

**7**

**7** 248:7 249:11 394:21

**72** 224:4 226:24 229:5, 13,25 230:5

**7470** 435:25 436:1

_____

**8**

**8** 248:12 381:7,10,21,23 382:3,11,19,25 383:13 387:4,13,16,18,25 388:3,5,11,14,17,20,24 389:4,9,22 390:13,17, 23 392:23,25 394:17 395:14 396:8,15,23

**80s** 388:12 408:17

**83** 384:18

**85** 384:18

**87** 257:4 431:6

**8:00** 564:24

**8:30** 212:7 556:12 565:5

**8:45** 554:20

_____

**9**

**9** 248:20 562:23

**9/11** 273:14

**97** 370:14 375:25

**98** 362:24,25 374:3

**99** 363:16

**9:00** 554:13,21 555:7

_____

**A**

**a.m.** 562:23

**ability** 395:6 481:19 525:11

**aborted** 262:19 280:17 493:3

**abortion** 247:13 250:22 251:4,10 252:1, 5 253:6 284:20 497:15 503:24 504:23,25 508:17 509:23,24 521:18

**abreast** 471:5

**absolute** 382:18

**absolutely** 218:21 253:24 259:16 262:6 273:14 289:6 322:17 336:4 340:2 415:10 416:16 422:8 440:9 441:15 457:17 476:16 507:1 520:16 544:19 558:17

**abusive** 516:12

**abut** 456:13

**accept** 243:18 280:21 294:8 295:9 296:19 305:6 339:21,23,24 361:22 372:3,15

**acceptable** 280:19 361:13

**accepted** 251:3 430:25

**accepts** 251:1

**access** 470:6

**accidentally** 522:6

**accommodate** 211:25

**accommodation** 267:16,17,22,24 268:3

**account** 244:14 470:9 471:1,11

**accountable** 361:12

**accurate** 361:25 415:3 444:7

**acknowledge** 450:7

**acknowledged** 493:8, 9,10

**acknowledges** 263:18,19 267:14,15

**act** 236:18 415:13

**acting** 270:17 271:25 305:11 313:25

**action** 228:6 236:7,9 284:24 338:25 351:25 352:1,6,8,13 362:14 371:6 379:5 411:17 449:4 454:12 455:8 468:16,19 506:19 508:21 536:5,15,17,24 544:7 557:6

**actions** 218:14 232:16 264:1,2,3 269:6 294:8 301:4,5,13 302:6 341:4 409:15 418:6 430:6 441:18 512:8

**active** 255:4 425:8 426:6

**activities** 217:23 258:5 260:19 265:5 296:1 310:16,18,20 311:6,12, 13 312:6,17 313:14 314:2 315:16,17,20 316:10,11,13 320:5,8 321:1,21 322:4 327:6 331:23 367:17 388:22 468:21 469:1 471:1 485:18

**activities-wise** 387:11

**activity** 267:16 268:6 269:17 271:5,6 311:14, 18,20,21,24 312:6 313:20,22 331:20 345:23 362:2,4,6,12,13, 14,20 438:3,9,18,23 439:6,17,23 475:3,14, 15,23 476:13,20,23,24 492:21 493:9,10,11 525:19 529:14 533:23 534:17 535:8,10 536:2, 14,22,25 537:20 538:11,13 539:11 540:25 544:2 546:16,22 551:12

**actors** 225:21 226:4 234:2 277:17

**actual** 230:25 233:2 238:24 290:1 337:11,15 346:14 365:25 545:13

**Adam** 210:22 300:11

**Adams** 242:6

**add** 213:1 214:11,13 215:18 220:5 227:5 230:17 297:11 313:22 449:19

**added** 212:15 347:6

**addition** 225:7 230:21 295:17 435:24

**additional** 216:1 229:12 233:20 234:15 236:12 296:13 537:12

**address** 219:3 296:3 369:19 372:8 420:14, 18,21,23,24 422:16 456:11 481:22 486:15

**addressed** 214:5 394:1

**addresses** 369:25 370:3 419:11 420:2,13 481:15

**addressing** 482:6

**adequately** 329:1 447:13

**adjectives** 407:15

**adjourned** 565:7

**adjust** 211:21 299:11

**admin** 347:7

**administer** 309:3

**administering** 482:13

**administration** 345:25 348:14 430:8,12,16,17 529:22

**admirably** 397:3

**admissible** 214:18 229:9 233:17 327:23

**admission** 227:12 314:14,15 318:15 327:15 341:14 353:11 360:6 400:10 405:17,20 420:10 432:22 449:14 451:9 455:13 488:15 527:10

**admit** 231:17 233:9 234:12 239:15 360:15 366:8 406:5 480:14

**admitted** 212:24 225:3 229:9 230:3,15 233:17

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 366 of 403   PageID 14190
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                Index: admitting..approved

239:5,10,21 240:1
314:22 319:5 328:2,3
342:14 354:19 360:17
400:23 401:1 405:10
406:10 423:1,2 433:7
449:23 453:2,5 463:9
481:3,4 489:1 528:1

**admitting** 212:21
327:18,20 342:11
354:16 400:18

**adopt** 292:14

**advance** 246:25 438:5
439:1 521:23 531:8

**adverse** 411:17 517:3

**advice** 333:9 351:24
352:19 371:8

**advised** 349:3

**advocate** 243:24

**affect** 481:23

**affected** 252:5

**AFO's** 232:18

**Africa-american**
266:12

**African-american**
410:16 413:23 416:10
479:5

**afternoon** 451:20
563:13

**agency** 248:4

**agenda** 301:21

**agent** 218:15 337:15
507:22

**aggressive** 334:24
544:24

**agitated** 423:15

**agree** 277:11 313:6
324:3 352:16 370:8
373:19 408:3 411:21
476:25 487:22 533:24
535:18,25 536:1 544:4
549:8,13,15 557:9

**agreed** 291:25 330:24
334:2,16 371:12 438:12
519:13

**agreement** 254:12

257:2,4,17 258:12
276:25 286:3 290:3,14
293:13 295:19 296:16
297:12 299:3 314:4
315:4,9,12,23 316:2,5
367:7 430:9,11,15,22,
24 431:11,21 432:4,7,
19 436:24 437:3,13
442:5 443:12 447:12
464:7

**agreements** 246:21,24

**ahead** 228:21 234:10
292:24 306:15 307:19
309:14 383:15 384:11
425:13 476:6 490:4
501:9 513:4

**ahold** 557:16

**aid** 242:21

**Air** 530:8

**aircraft** 460:13

**airfare** 464:5,6

**airline** 254:2 284:7
530:7

**airlines** 247:20 252:24
253:20 254:1,8,9,11,13
261:10,14,16 262:7,10,
11 263:15,25 265:15
267:2 271:10,17 272:1,
9,12,18 273:4,11,25
274:3,16,23 276:15
279:6,11 281:5 283:4
285:17 303:6 304:10,17
305:21 310:15,19
311:11,22 313:15 314:5
315:4 322:6,12 327:24
330:3,11 331:2 336:13,
20 337:9,20 339:1
345:21 356:3 357:3,9
358:9 359:15 369:20
370:8 388:4 401:22,23
402:2,4 403:20 404:8
408:16 413:7 414:19
416:4,11 431:9,19
436:21 438:12,23
443:7,17 454:4,12
455:8 461:9 464:6,25
466:5 468:18 476:4
482:2 483:9,10,11
486:4 487:13 488:9
490:22 492:1,2,3,12,16
495:19 496:2 500:3,9

524:24 525:6 528:11
529:24 530:11,20
531:6,21 532:11 536:4,
7,14,23 537:5,20 544:6,
8 557:12

**Airlines'** 261:9 303:1
316:13 483:15

**Airlines's** 296:8
373:22 454:13 455:10
460:7,17 466:16 482:7,
18 485:1,6 492:7

**airplane** 496:17

**airport** 472:1 523:14

**aisle** 251:9

**Albuquerque** 557:3

**Alinsky** 548:14

**alleged** 487:5 493:3

**alleging** 232:5 303:17

**allowed** 244:1 262:3
332:22 382:20 517:20
538:18 550:19

**alterations** 457:16

**altercations** 496:1

**altered** 456:3,10

**alternate** 558:9

**alternative** 556:2

**America** 228:4 273:13
332:16,19 479:12,19,
23,25 480:8

**American** 242:8,10
274:23 483:9,10 529:23
530:8,10,12

**amount** 277:8,20

**anatomically** 263:1

**Andrea** 433:19

**answering** 437:24

**answers** 250:23 309:9
358:11 426:8,10 442:7

**anti-union** 304:12,13

**anticipate** 513:25
514:17 560:22 561:24
562:4

**anticipation** 563:18

**anymore** 260:17

**anyone's** 379:1

**Anytime** 517:7

**AP** 463:12

**AP31** 463:12 465:6

**apologize** 211:16
391:12 405:12 443:25
445:21 462:18 530:12,
14 535:2 545:20 553:9

**apologized** 539:12

**apology** 428:7,8 533:3,
5,17 538:8

**apparently** 265:7
361:4 480:1

**appeal** 266:9 440:15

**appearance** 449:3

**appearances** 210:8

**appeared** 292:18,19

**appears** 433:12

**appellant** 309:17

**applicable** 217:15

**applied** 219:19 354:5
482:11

**applies** 219:7 246:7
354:3 406:6

**apply** 242:17 316:14
337:1 342:5

**applying** 264:13

**appoint** 370:18

**appointed** 258:25
259:2 347:22 450:22

**approach** 288:13
300:2 328:5 363:18
414:3 445:22 454:7
455:18,20 458:6 461:12
475:10 521:13 536:10
552:18

**approaches** 299:19

**approve** 285:21

**approved** 340:3

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 367 of 403   PageID 14191

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022          Index: arbitration..Bangladesh

**arbitration** 289:5,21
290:1,3,6,14

**arbitrator** 290:15

**area** 297:7 388:10
434:1,5,12,24 460:15
505:23

**argue** 237:22 238:9
290:11 297:3 558:16

**argued** 354:4 523:10

**arguing** 290:8 296:12
305:25

**argument** 214:15
215:20 216:17 218:13,
19 219:24 223:24
224:9,10 225:4,10
228:8 229:12 230:24
231:19,21 232:1,17,21,
25 233:6,8 234:15
235:2 236:12 238:5
278:16 297:19,22,25
299:3 323:20 456:1

**argumentative** 321:23
480:3 502:24

**arguments** 225:6,8
233:2,20 246:10,18

**arise** 487:13

**arisen** 395:15

**arm** 240:14,15

**arose** 302:16

**arrangement** 322:15

**article** 227:2 228:5,15
475:1,5,18 476:9,10
477:15,18 542:19

**ASAP** 320:20

**aspect** 252:20

**ass** 369:12 370:10
371:12 483:23 485:12

**assassination** 265:21,
24 409:21 410:22 416:6

**assassinations**
408:20 491:21

**asserted** 220:10,14
226:10 421:16 534:22

**assertions** 303:19

**assist** 245:20 335:23
336:20

**assistance** 400:2
437:6

**assistant** 287:18

**assisted** 439:13,15,16

**assisting** 376:11

**associate** 300:16

**assume** 336:23 356:24
357:1 359:7 371:23
372:19 407:7 420:19
543:15,20 558:9 563:2

**assumed** 361:20

**assuming** 355:18,21
359:5,6 371:20 387:18
466:7 533:12,15 537:25
561:1

**assumptions** 358:23

**attached** 499:19
524:14

**attacks** 495:24 496:4,
15

**attempting** 238:21
349:11 551:4

**attend** 227:18 331:17

**attendance** 557:25

**attendant** 247:17
253:12,20,25 262:13,
14,15,16 264:5 267:5
280:7 303:5 330:13,15
337:7 345:16,20 375:3,
19 410:15 429:8 440:20
448:20,21 449:2,6
487:19 492:16 494:23
495:24

**attendant's** 552:2

**attendants** 232:5,6
247:19 257:5 258:13,21
264:11 275:6 301:20
334:13 347:11,14 348:1
411:12 432:9 445:10
449:11 450:3 454:6
460:12,17,22 464:1
466:5 469:14 470:6,12,
17 481:13,14 487:5,17
489:24,25 491:14
493:17,18 494:12 500:3

531:5,11 540:16 546:13

**attended** 248:21,25
463:16,20

**attending** 227:16

**attention** 233:5 320:17
390:15 395:14 396:16,
20 397:6

**attenuated** 218:11

**attitude** 408:16

**attorney** 332:22,24
333:16,20 549:21

**attorney-client** 332:23
333:24 425:12

**attorneys** 243:25
245:1,6,11

**attorneys'** 246:11

**attribute** 232:7

**auditorium** 251:18
252:6

**audrey** 232:5 248:14
249:3 256:14,16
257:12,22 258:16 259:3
263:12 264:10,22,23
273:22 274:4 275:10,11
276:7 286:16 295:1
303:2,23 307:17 308:24
309:4,25 310:2 345:7
370:21 433:14 450:24
467:8,12,16,19,21
468:2,4,5,8,14,20
469:1,3,17,22 470:2
471:2,13,22 512:2,5
532:20,25 541:6,10,23

**authenticate** 523:25

**author** 228:16

**authored** 456:13

**authorities** 315:25

**automatically** 472:18

**avenue** 465:21

**avoid** 215:14 245:4
322:3

**award** 277:19

**aware** 282:16 284:6
289:14 320:23,25 322:2
331:11 338:7,9 344:4,

12 371:9 377:14 404:20
424:6 458:24 459:4,7
528:16,17 529:8,25
530:3,17,25 531:8

**awareness** 217:25

**awful** 500:7

**awkward** 555:24

──────────

**B**

**B.R.** 434:8,10

**babies** 252:10 280:18

**baby** 250:25 253:4,5
262:20 270:1 473:11,15
493:23

**back** 213:17 221:3
224:8 235:8 237:15
241:8 258:19 271:21
272:7 275:17,18,19
276:18 277:3,4 292:5,
17,25 293:25 294:2,4
299:14 302:14 307:2,
13,14 316:7 321:15
323:5 325:22 328:1
329:24 364:9 368:20
373:18 374:3 378:10
379:5,8,9 380:4 382:16
383:14 386:18 391:1
397:9,20 398:8,10
403:1 426:19 435:2
440:6 451:21 452:6,11
457:22 477:14 487:20
494:12,22 495:9 497:10
500:4,9,25 502:19
512:11 513:10,18 518:8
519:18 525:7,8 528:6
546:7 552:16 554:13,20

**back-door** 404:23

**backpay** 293:19 296:1

**backtrack** 499:13

**bad** 270:4,5 414:24
501:16 557:18

**ball** 491:13

**balls** 491:6

**Baltimore/
washington** 460:15

**Bangladesh** 510:1,8,
16

**bank** 381:13

**bankruptcy** 542:18

**banned** 275:16

**banner** 453:25 454:4,
13 464:24 465:2

**bargaining** 247:22
254:12 257:1,3,16
258:12 276:25 286:2
314:4 315:4 348:2
430:9,11,15,21,24
431:11,21 432:19
447:12 464:7

**base** 249:9 287:18
336:24 415:8 489:10,
11,23 490:6,12 491:8

**based** 284:24 285:1,5
292:2,3 331:15 355:18
371:20,25 372:1,18,24
384:25 418:15 421:20
426:11 429:9 444:25
461:25 489:8,15 504:15
563:18

**basic** 366:8

**basically** 217:11 235:3
251:18 275:2 481:18
560:13

**basis** 224:6 353:21
394:5 414:22 420:4,8
482:24

**batch** 224:3 327:19
476:19 544:15

**bathroom** 241:5

**baton** 278:20

**Batshit** 325:12

**Batt** 381:21,22

**battle** 517:16

**began** 248:7

**begin** 245:18 336:1

**beginning** 310:12
319:9 329:18 358:19
361:2

**begins** 252:23

**behalf** 210:22 270:17
271:9,25 272:17 300:2,
14 312:3 313:25 447:6

**behavior** 326:4 365:13
551:21

**behind-the-scenes**
355:11 359:14

**behold** 552:15

**Belanger** 215:24

**belief** 252:18 267:21
268:6,18 269:16 477:7

**beliefs** 250:12 267:15,
25 269:11 276:2,3
279:18,21 280:12,15
284:5,10 286:10 294:15
296:9 476:24 497:25

**believed** 373:18 468:4

**believes** 247:13 477:2

**belittling** 321:17,19
323:12 324:20

**bell** 389:21

**belongs** 372:8

**bench** 213:3 245:6,12

**benefit** 417:12 519:12

**benefits** 254:14 280:9

**bent** 516:18

**bet** 329:5 341:21
445:23

**Beverly** 215:23

**bias** 392:7 393:13,16

**biased** 395:4

**Bible** 247:15 251:18

**big** 308:1 327:9 348:13
388:15 423:16 424:12
533:1

**Bill** 258:16 259:3
440:25 443:9,14,22
444:2 445:15

**Bill's** 443:18

**bind** 218:20

**binding** 218:13

**bit** 219:16 234:8 235:24
268:9 272:5 303:10
308:4 392:21 559:4,10

**blacked** 345:5,9 364:7

**blank** 542:25 543:1

**blast** 469:13

**blatant** 549:21 550:6

**blind** 542:10

**block** 275:14 542:4,6,
12

**blocked** 542:3

**blow** 273:5

**blue** 539:15

**board** 218:14 219:9
317:21,23,24 319:20
330:24 334:2,3,4,5,10,
13 361:11,19 363:6,13,
15 364:9 408:23 418:22
430:23 433:24 434:2,4,
13,14,22 450:23,24
453:11 474:1 523:3
534:5 542:18 543:12,
13,19,21,22,24 548:7

**boards** 543:17

**Bobby** 210:11 435:10

**Bobis-armstrong**
281:11

**body** 317:21 334:5
465:23 494:13 497:18
498:22 499:6

**bogged** 229:21 302:23

**bother** 411:20

**bottom** 355:18 453:18

**bounds** 441:16

**box** 309:1 386:21

**boyfriend** 249:24
250:2,4,7 251:8

**bragged** 428:25

**Brantley** 241:24
380:24

**breach** 372:23

**breaching** 373:15

**break** 240:24 241:4
251:19 299:10 306:15,
16 307:1 364:23 378:1,
6,9 379:3,7 380:12,13,
20 395:11 451:17,18,20
452:3 509:9 512:10,18

513:5 515:22,24 518:14
554:12 562:20 564:11

**breaking** 371:11 554:5

**Brett** 258:17 259:3
325:8 344:21 351:16,17
367:18,22,23 371:2,14
417:15 424:9 433:15
437:14 451:2 484:12
532:12 534:8,11 545:19
546:11 551:21 552:7
553:2

**Brett's** 370:22

**Brian** 210:15 217:17,22
218:9 270:14 281:3
344:17,20 345:15
354:23 358:24 359:13
364:10 370:16,17
373:14 374:18 376:1,5
401:20 402:17 403:1,7
406:14 409:3 411:11,22
413:4 416:3 417:8
423:18 483:19 549:23
550:4 552:16

**Brian's** 398:9

**briefly** 227:21 294:10
328:11 353:17 385:18
387:3

**bring** 219:18 223:12
230:2,19 237:10 240:21
241:13 307:2,19 308:17
319:13 335:3 349:14
380:3,7 386:6 395:12
396:7 401:9,10 452:24
472:8 481:9 521:9
546:7 548:19 553:20
558:3

**bringing** 274:11 397:5
476:3 482:8 547:9

**brings** 259:18 303:17

**broad-based** 340:16

**broken** 397:24

**brothers** 388:19

**brought** 349:10
396:15,19 415:11
492:12 528:18 534:7

**BTW** 398:25

**bucket** 217:11,15
229:6,13 231:16

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 369 of 403   PageID 14193
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022            Index: buckets..characterize

**buckets** 234:12 328:17

**buckle** 396:4

**buddies** 409:7

**budget** 464:10,19,20

**budgets** 336:8 464:21

**bullet** 282:20

**bullied** 305:6

**bullshit** 429:15,18

**bully** 284:1

**bullying** 267:7 279:22
283:12,14

**bunch** 259:21 266:17
432:9

**burden** 305:18 559:19

**Burdine** 513:13 514:19
515:7,14 558:21

**burn** 354:8

**business** 241:25 284:8
464:8

**bust** 340:5

**busy** 403:9

**button** 245:8

**buying** 533:3,21

**bylaws** 285:14 331:16
352:25

———————————

**C**

**cabin** 486:5

**call** 225:12 226:8
237:23 238:4,8 240:24
288:25 308:21 335:6
378:9 451:17,19
503:11,16 514:10 515:1
559:2,12,23 560:2,3,5
562:17,22 564:9

**called** 219:8 250:1
264:25 288:8 429:8,10
437:19,21 440:20
459:16 471:12 503:7
549:21,22 551:20
560:11

**calling** 337:10 364:23
500:10 533:20 559:7

**calls** 308:24 373:7
419:17 431:24

**campaign** 213:25
219:23 220:16 222:2,5
225:19 248:15 257:15
347:9 470:12 526:24

**campaigns** 326:17

**cancer** 407:1

**cancerous** 407:1,8,12,
19 408:3

**Candacey** 469:18

**candidacy** 255:11
470:22

**candidate** 255:9
409:18

**candidates** 256:5,7,25
317:11,12,14

**capacity** 232:9 242:11
305:11 337:18

**caps** 346:3

**card** 343:20,23

**care** 284:9 294:22,23
308:5 382:23 443:11,
13,15

**career** 491:5

**careful** 438:14 458:13

**carried** 465:2

**carry** 411:8

**carrying** 252:3 253:8
555:6

**Carter** 210:6,8,10
211:9,11 214:10 215:24
220:1 224:21 228:2
231:7 236:15 247:12,
16,24 248:3,7,12,15,18
249:2,5,12,15,20,22
258:3 266:1 272:17
279:23 280:8,10,11,20
281:1,20,24 282:16
284:4,19,21,24 285:5,8
286:19 287:2,23 288:1,
4,6,9 291:22 292:15
293:1,5,8,24 294:7,10,
14,17,19 295:5,9
296:22 300:23 302:24
303:12,23 304:1,6,22
305:14,23 308:21,23

319:17 320:7 322:16
323:12 325:14 326:24
334:7 343:11,13,22
344:5 349:22 350:8,14,
21 351:9 354:4 385:7
386:4 387:3,10,22
414:22 415:6 461:7
467:10,14 468:9 469:8,
10,11 472:1,4 476:17
488:8 492:17 494:16
496:3,8,21 506:10,16,
25 507:12 525:7,19
526:1 528:25 529:2
532:15 533:20 536:14
541:20 545:18 547:3,19
556:18 561:24

**Carter's** 220:21,23
221:5 222:10 225:24
231:13 247:21 248:8,11
249:8 282:23 286:5,9,
11,24 287:21 292:1
301:4 302:25 303:15
305:2 323:9 344:16
348:16 393:8 477:7

**carve** 234:14

**case** 215:1 219:5,8,10
227:25 228:10 234:18,
22 236:19 242:13
243:5,6,11,17,19,20,22
244:1,6,9,12,17,21
245:25 246:8,16,23
247:1,6 252:21 259:6,8
278:9,12,18 279:4,23
281:7,18 283:6 285:14
289:5 290:23 292:6
298:13 299:25 301:6
302:7 304:2 305:18
306:1,24 307:8,9 332:8
374:8 379:12,13,22,23
380:16 382:10 394:24
395:19 422:5 441:19
451:23 452:4 462:1,2,
10 463:6 512:20,22
514:7 519:2 521:1,17
524:1 531:16 554:24
555:1,5 557:19 559:25
561:25 563:9

**cases** 246:3 386:10
425:8 487:16

**Casper** 361:4,5,23
364:18 366:15,18
367:16 369:10,13 370:9
374:8,11 399:14 402:6,

10 406:25 407:5,6,20
408:4,6 431:17 485:10
491:22

**casual** 355:11

**catch** 235:21

**category** 233:13

**caught** 377:11 562:19

**causing** 334:21

**cautioned** 438:14

**caveat** 239:19

**CBA** 443:12 444:19
445:7

**cell** 244:11

**CEO** 282:25 283:1

**certificate** 397:8,10

**cetera** 230:23

**chair** 308:3 434:15
453:22

**challenge** 516:19

**challenges** 487:4

**challenging** 487:4

**chambers** 380:23

**chance** 290:3,8,10
292:24 293:12 294:5
295:19 296:16 297:12
299:2 366:2

**change** 260:24 264:17
270:6,7,8 277:14,21
415:23 467:22 468:10
478:10 479:25 480:1

**changed** 460:12,14
467:25 468:5 479:12,
19,23 480:8 542:1

**changeover** 357:22

**changing** 357:16

**channels** 525:15

**character** 296:10
297:20 298:9 538:20

**characterizations**
430:5

**characterize** 354:24

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 370 of 403   PageID 14194
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 2 July 06, 2022              Index: charge..communicates

**charge** 247:5 444:5 447:1

**charged** 349:2,19 350:8,15,16 437:17,18 443:10,15 444:3,16 553:3

**charges** 274:11,17 349:10,14 444:20 445:5 446:1,23

**Charlene** 210:10 211:9 247:12 249:22 252:3,8 253:13 254:10,17 255:3,10,12 256:7,16, 18,20 257:5,11,18 258:18 259:9 261:17 263:16,23 264:2,7,12 266:13 267:8,23 268:7, 16 270:7,22 271:4,18 272:17 273:21 274:20, 21 275:17 276:1,13 277:10 302:25 303:22 304:6 305:22 308:23 319:17 320:7 326:24 368:22 381:5 383:19 384:15,16 461:7 467:9, 14,24 468:8 469:8,10, 11 472:1,4 476:17 492:17 494:16,19 496:3,8,21 532:15

**Charlene's** 250:12 255:25 260:1 271:23 434:24

**chatter** 528:17,20

**check** 352:14 450:13

**checking** 349:6

**checks** 384:17

**chickens** 548:8

**chief** 358:15

**child** 250:7 510:5,6,16, 18,22

**children** 243:7 263:6 510:2,8

**chips** 518:6

**choice** 261:6 465:24 496:24 497:4,15,16 498:2,7,13,14,19,23,24, 25 499:4 504:22

**choices** 426:21

**choose** 311:15 312:2 418:6 460:18 556:3

**choosing** 279:17

**chose** 324:6 326:1,4 404:16 542:8,12

**chosen** 365:14

**Chris** 281:9 425:6

**Christian** 247:13 284:19 294:18

**Christians** 294:18 298:3

**church** 251:15,17,23

**circle** 270:15 347:10,17

**circumstance** 478:11

**circumstances** 279:18

**CISM** 334:18

**cited** 219:5

**claim** 214:19 216:13,22 221:2 267:21 278:12,14 304:11 414:15

**claiming** 296:25 550:18

**claims** 215:4,9 220:23 225:25 226:2 231:14 234:6 290:7 297:13 304:20 328:14,22,23 329:12,13 400:21 406:7 414:18

**clarification** 497:22

**clarify** 499:14 515:17

**class** 388:16 391:15

**classes** 387:12

**classman** 381:24 384:17

**clean** 290:12 309:16 329:2,9 358:12 382:15 506:21

**cleanup** 561:5

**clear** 223:1 236:23 282:13 373:5 410:18 412:9 417:5 419:2 482:9 499:15 507:10 562:18

**Clerk** 309:5

**clerks** 564:25

**click** 423:15,20 424:10 425:15,24 426:3 427:6 472:17 473:2

**clicked** 472:11 474:4,6 511:8,23

**clicking** 381:16 473:23

**client** 258:3 383:23 385:19 388:1 447:13 552:24

**clients** 246:23

**clip** 520:2,4 524:3

**clock** 229:20,24 276:10

**close** 216:18 327:9 350:25 361:16 391:9 412:25 431:3,9

**closely** 363:13 385:6

**closer** 310:8 385:7,12 401:9 464:14 472:8

**closing** 246:9,10,17 477:20

**Cloutman** 210:23 300:12 333:17 339:9, 13,15,22 340:2 556:24 557:2

**co-counsel** 300:12

**co-employee** 280:19

**coached** 484:22 485:17

**cockpit** 272:11

**code** 216:12

**coerced** 315:13

**Coffee** 363:6

**cohorts** 529:1

**coincidence** 267:9

**colleague** 281:4

**collective** 254:12 257:1,3,16 258:12 276:25 286:2 314:4 315:3 348:2 430:8,11, 15,21,23 431:11,21 432:19 447:11 464:7

**college** 250:2,3,4

**collegial** 397:2

**colluding** 447:10

**colored** 460:13

**columns** 213:2

**combination** 417:23

**combine** 507:23

**combined** 394:11

**comfortable** 324:20 368:14 409:16 411:15

**commence** 281:16

**comment** 323:8,25 324:3,5,6 326:1,4 370:22 371:5 397:24 417:24 448:19,21,23, 24,25 477:18 496:9,11 557:7

**commentary** 546:12

**commented** 326:3

**comments** 306:10 324:21 352:9 376:10,12 410:13 465:19 493:5 500:22 557:5

**commingling** 229:1

**commit** 387:20 512:16

**commitment** 387:23

**committee** 248:22 320:1,3,4 330:25 331:5, 7,22 334:22 336:8,12, 14,17 347:23,25 413:5 450:21,22 453:18,21 463:21 464:10,18,19 492:18

**committees** 236:3,4, 20 237:2,5 331:2,4,14 336:5 337:23 370:18

**common** 275:5 429:20 475:18

**communicate** 243:11, 16 244:2 270:2 329:1 469:7,10,11

**communicated** 257:24 467:20

**communicates** 257:8

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 371 of 403   PageID 14195

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022          Index: communicating..convenient

communicating 258:6
265:12 312:5,13,16
402:3 469:6 534:13

communication 219:8
258:2 262:18 274:2
279:24 302:4 304:16
326:2 370:1 371:11
409:12 465:21 469:12
471:6,25 491:16
525:10,14,25 526:18
535:19 547:3 555:16

communications
217:17,18 265:6 270:12
280:3 313:13 373:21
399:15 427:25 428:12
430:4 467:8 472:3
495:4 525:12,18 526:1
537:15 552:6

commute 243:9

company 231:2 234:2
236:2,4,18,24 237:1,5
263:13 267:22 273:15
284:7 287:25 288:1
292:16 294:2,12 296:1
301:19 315:13,23 316:1
341:10 370:2 399:2,9,
16 413:8,20 421:7
476:13 489:19

company's 263:17
282:25

comparators 221:22,
24 447:8

comparing 510:25

compelled 516:13

competing 302:11

complain 256:18 263:9
277:13

complained 488:11

complaining 234:2,4
256:20 259:10 263:20,
22 274:24 361:23 402:5
526:11,25 533:22
534:14 535:20 538:12,
21 539:6,10,12 540:8
543:23 549:16 551:8,9,
24 552:2,4,7,9

complains 261:14
262:23 263:15

complaint 222:20
225:1 237:7 249:13
261:18 263:8 287:8
415:7,18 443:19 467:23
472:6 488:8 490:2,25
492:8 496:7,20 524:6,
16,18 526:19 528:8,25
541:20 550:11,19 553:1

complaints 214:21
231:2 232:10,12,23
284:16 361:5,9 487:19
489:18 490:18 492:11
527:3 528:9,14 529:1
542:9 547:4,7 548:10
549:5 550:15,24

completely 255:24
331:19 446:5 552:11

complicated 302:10

complications 253:5

complimentary
365:17

comply 293:15,17
536:19

compound 417:3
444:22 500:12 509:3,7
530:23 531:2

computer 243:15
244:11 300:20

conceal 322:15

concentrating 255:7

concept 283:17

concern 392:6 411:14
506:8

concerned 359:17
373:15 431:16

concerns 391:3,5,6
392:13 393:24 457:15,
21 476:3 482:8

concession 293:22

concluded 278:21
291:13 299:15 306:17
329:6 340:19 342:8
354:13 378:22 415:24
422:20 442:22 447:20
454:25 458:1 462:6
507:4 508:7 554:15

conclusion 277:16

333:13 475:25

conditions 254:14,19
255:8 293:12 510:5

condoned 551:21

conduct 269:18
280:16,17,22,25 285:1
292:2,3 294:9,13
304:23 505:8

conducted 286:13
287:6,11

confer 245:11 385:18

conference 290:25

confidence 372:24
373:15

confidential 339:16
340:1,8 373:20,23
399:19

conflate 232:22

conflict 303:8 316:1,4

confront 477:2

confronting 544:22

confuse 224:23 236:9
268:14

confused 271:8 272:19

confusing 218:19
230:14

confusion 214:1 232:4
311:4,5

conjunction 463:22,24

Conlan 513:12,15,16
514:9,13,14,16,19
515:14

Conlon 558:20 560:6
561:5,10

connection 272:9
460:6 470:12

connotation 367:3

consequences 301:14
302:6

consideration 215:8
393:2

considered 311:17
522:8

consistent 458:17
460:16 516:10

conspiracy 305:22

conspired 303:18

constantly 274:23,24
494:19

constitution 331:16
349:9 352:25 353:5,8

construed 438:15

consult 514:5

contact 403:16

contacting 349:2
351:6,8,23

contained 407:4
408:10

contempt 556:7 558:2

content 282:8,10,21

contention 283:8

contentious 300:22

contents 341:7

context 229:1 359:25
372:22 399:17 401:18
402:8 495:9,10,12
508:18 509:22 533:9
540:3,11,14 542:20

continue 258:9 291:17
380:8 390:2,12 415:23
437:9 495:7 497:1
522:1 535:4

continued 248:10,13
274:22 547:12

continues 417:21
516:14

continuing 303:24

contract 315:18 443:6
450:7 475:1,13 551:5

contractually 286:1

contrary 247:14

control 369:8 404:16
418:5 557:14

convenient 409:9
557:17

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 372 of 403   PageID 14196

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 2 July 06, 2022                    Index: conversation..Court's

**conversation** 243:12
334:25 339:10 358:3,
19,24 371:14 375:9
397:1 403:2,25 404:4,
17,22 410:1 411:1
436:25 438:7,8 439:3,4
445:4 525:17

**conversations** 355:12
359:14 362:15 374:6,19
375:3 376:15 403:3,7,
11,19 404:16,18,23
405:2 409:4,20 427:19,
21 428:14 436:17
482:18 483:8,14
484:18,24 485:5,9
491:20 494:10

**converted** 429:1

**convince** 250:14
509:19

**convinced** 222:21

**COO** 357:8

**coordinate** 235:9
237:1 336:7

**coordination** 453:22

**COPE** 319:24,25 320:1,
3,19 321:21 323:3

**copied** 221:7 415:17

**cops** 386:11

**copy** 213:5 319:13
343:7 360:20 363:17
401:6,10 415:17 458:4
481:9 548:19 564:24

**core** 346:9,11 347:3
348:9 418:24 421:23
422:4,10 423:7,12
424:17 427:13 428:12,
25 430:2 448:2,18
449:5 483:7 529:19
530:18 531:19 533:6,
18,19 534:14 539:10
540:15 541:4,5,13,15,
17 542:14 546:13 550:7
552:5

**Coreless** 491:22

**Corless** 431:16

**Corliss** 408:14 410:14
411:6

**corner** 235:20 383:14

**corporate** 210:25
211:4 228:24 281:6
300:13

**correct** 227:8 263:1
312:12 324:13 330:8
336:14,16 340:18
346:12 364:19,21
400:15 402:16 406:2
427:18 428:2,19 431:6
432:19 433:21 434:18,
19 435:3 438:3,18
443:3 447:1,2 450:19,
25 451:3,6 465:20,24
466:6 467:17 471:9,23
473:2,14 474:15,16
481:13 486:2 489:5
492:22 493:14 494:23,
24 496:8,18 510:23
512:7 524:22,23 526:12
531:15 532:12 543:14,
19 552:13

**corrected** 429:5 498:4,
6

**correctly** 364:15 374:9

**corrupt** 259:14

**corruption** 541:2
547:12

**cost** 328:12

**costing** 328:9

**counsel** 239:7 281:10
285:13 287:1 301:4
303:10 305:2 327:10
332:14 338:22 339:18
349:2,6 351:7,8,12,23
352:7,11,15 380:18
385:24 416:22 420:3
445:19 461:12 472:21
512:9 514:6 516:9

**counsel's** 352:18

**counseled** 491:14

**counseling** 277:6

**country** 270:4 479:5

**couple** 221:7 257:9
276:22 282:7 314:8
317:16 342:4 370:21
381:1 385:25 387:7
426:21 517:20 522:3
551:14

**court** 210:3,4,12,17
211:1,6,10,23 213:8
214:16 215:17 216:8
217:1 218:2,6,23
219:11 220:4,11 221:9,
15,19 222:7,19,21
223:5 224:6,8 225:5,17
226:6,11 227:4,9,21
228:1,7,19 229:11,17
230:16 231:6,15,20,23,
25 232:25 233:19,23
234:9,20 235:1,13,15,
22 236:11 237:8
238:13,16 239:2,14,18
240:3,9,11,16,18 241:2,
10,12,13,14,17,20,21,
25 242:3 243:9 244:4
246:25 247:9 261:2
277:23 278:2,4,15,23,
24 288:15,19,23 289:8,
10,13,20,23 290:12,19
291:2,4,6,12,15,16
295:12,14 296:14
297:1,10,14,17,24
298:10,16 299:10,17,18
300:5 306:5,11,19,20
307:7,12,18,25 308:9,
12,16,17,20,25 309:6
310:9 314:10,13,17,21,
24 318:16,20 319:3
321:24 323:21 325:21
327:16,18 328:11,16
329:2,5,8,9 332:6
333:12,25 338:1,15
339:5,12,14,25 340:3,5,
13,18,21,22 341:5,15,
21,24 342:4,10,11
343:3 350:3 353:14,25
354:15,16 356:19
358:10 360:7,11,14
363:20 364:3 369:23
373:8 376:24 377:4,14,
16,18,20,25 378:8,24,
25 379:16,20 380:2,13,
24 381:8,20,22 382:2,5,
12,21 383:2,6,7,24
384:1,4,9 385:20,23
386:2,6,15,18 387:5
388:7 389:14 390:24
391:3,7,11,19,22
392:12,15 393:4,20
394:2 396:9,12 397:14
398:17,22 400:13,17
405:10,13,16,19,22,25
406:4 412:14,16,20
414:2,4,9,14,17 415:1,
22 416:1,23 417:4,25
419:3,5,12,21 420:3,7
421:3,10,18,25 422:16,
22,23 423:1 429:24
432:1,15,24 433:5
435:16,19 436:9 439:9
441:1,3,25 442:16,21,
24,25 444:23 445:2,19,
23 446:6 447:4,14,19,
22,23 449:15,18
451:10,16,23 452:2,11,
14,16,17,23 453:1
454:8,17,22 455:2,3,16,
20 456:1,11 457:11,13,
18,21,25 458:3,8 459:9
461:12,17,24 462:5,8,9,
24 463:5 466:25 471:19
472:23 475:11 476:1
477:8,11,23 478:6,16,
18 479:9,16 480:4,15,
20,22 481:2 482:23
483:1 484:7 485:15
486:12,20,22 488:17,22
495:2 497:21 498:17
499:2,9,11,15 500:13
501:5 502:16 503:1,3,
22 504:8,15 505:6,18,
20,25 506:2,8,20,24
507:3,6,7,16,25 508:3,
9,10 509:5,7 510:11
511:12,18 512:9,14,17
513:1,8,23 514:3,9,12,
22 515:2,12,21,25
516:5,22 517:1,10,22,
24 518:4,8,11,14,22
519:8,14,17,22,23
520:3,6,20,23 521:2,4,
6,7,11 523:19 525:22
526:15 527:11,14,18,22
529:6,12 530:5,9 531:1,
3 532:3,7 533:10
534:24 535:3 536:11
537:3,8 538:3 539:25
540:20 545:4,9 546:1
547:21,25 550:10
552:19 553:8,10,14,19
554:1,4,10,12,17,18,23
555:4,12,17,21 557:1,3,
5,21 558:17 559:14
560:8,16,20,24 561:9
562:2,3,10,14,24 563:2,
6,15 564:7,10,19 565:6

**Court's** 216:25 229:8
295:20 328:13

Case 3:17-cv-02278-X Document 448 Filed 06/14/23 Page 373 of 403 PageID 14197

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022        Index: courthouse..demonstrative

**courthouse** 244:3
307:6 379:13 512:21

**courtroom** 234:21
241:16 244:7 245:4,14
307:11 308:19 377:12
379:15 380:1 383:5
386:17 391:2 396:11
397:13 452:1,25 512:25
513:7 521:10 555:3,11

**cover** 217:8 223:25
224:7 254:6 435:15
482:20

**covered** 216:24 229:7
315:11,22 316:3 397:10

**covering** 326:10

**COVID** 276:16

**cow** 517:11

**coworker** 303:3 305:13

**coworkers** 243:8
284:1

**cozy** 432:11

**cracks** 491:6

**create** 232:17

**creates** 216:5

**credibility** 359:25

**credit** 392:8 395:9
406:25

**cried** 477:10

**criminal** 386:9

**critical** 296:17 304:6
336:11

**cross** 223:12 237:10
422:17 562:7 563:6,7,9

**cross-examination**
219:1 516:12

**crossed** 304:18 366:25
367:12 516:20 518:1

**crosses** 365:3

**crossing** 365:9

**crowd** 408:23,25 412:3

**Cruces** 556:24 557:1

**cry** 477:5

**crying** 473:13,15

**cryptically** 395:12

**Crystal** 433:18 434:5

**cued** 520:1

**culture** 283:23

**cumulative** 412:17

**curative** 299:4

**current** 266:5 539:9
540:9 541:19

**curse** 259:11

**curveballs** 396:5

**cut** 462:12 514:9
560:10

**Cuyler** 324:9,10 344:12
349:20 350:5,10,23
417:16 534:10 545:12,
25

**Cuyler's** 348:25 349:18
350:6,13,19,21 351:2

**cyberbullying** 283:17
303:24

**cycle** 535:15

**D**

**Dailey** 300:17

**daily** 477:19

**Dallas** 249:24 381:16
383:19 384:2,5,6 388:9,
23 389:20 390:14
394:10,12 434:1,3,5,7,
11,17 558:25

**damages** 276:13
277:19 295:20,22 296:2

**damaging** 282:11,21,
22

**danger** 410:20

**dangerous** 408:15
411:7 412:1

**Daniel** 300:16

**date** 212:23 263:14

**day** 210:5 243:9 250:6
266:16 271:17 275:19

355:6 373:16 383:8,11
396:4 410:12 419:12
512:10 515:19 520:3
528:7 548:8 560:25
561:16 562:11,13,18
564:8

**days** 253:16 466:17
493:1 500:2

**DC** 227:14 248:23 249:1
259:22 463:17,22
499:25

**de** 358:4,6,7

**dead** 302:22

**deadline** 555:17

**deal** 251:7 254:13
294:22 298:18,23 299:3
335:21 374:20 375:10
402:7 418:23

**dealing** 222:6 264:3
267:20 374:7 496:18

**dealt** 261:16 357:3
412:25

**debate** 223:19

**debating** 498:21

**DEBM** 433:19,23 434:4,
11,17,20

**decert** 349:1,8,18
350:14

**decertification** 344:2,
6 349:9 350:7 352:9
353:8

**decertified** 353:4

**decertify** 349:11 534:7,
9 551:4

**decide** 242:13 245:1,2
246:16 475:2 492:6
497:17 498:22 499:5
511:5,7

**decided** 258:13
392:22,25 415:17
425:23 447:5

**decides** 259:20 390:2

**decision** 222:17
250:10 267:12 286:8
287:21 291:25 292:9
294:16,22,25 390:3

414:13,21 415:16 463:4

**decision-maker** 221:5
222:15

**decision-makers**
222:14

**decisions** 247:25
460:18

**deducted** 320:20

**deduction** 320:11,12,
18

**deductions** 322:6,11

**Defamation** 269:18

**defeat** 431:20

**defeated** 317:2

**defeats** 419:13

**defend** 376:20 438:4
449:9

**defendant** 210:14
327:21

**defendants** 246:2
386:10

**defended** 264:23 438:2
449:7,11

**defending** 265:9
440:14 448:6

**defense** 240:13 265:4
386:9

**defined** 283:14 311:19

**definition** 365:25
367:6,13 421:8 498:12
503:8 523:11

**degree** 283:18

**delay** 211:16 212:1
396:13 556:2

**delete** 370:22 371:9,15

**deleted** 371:13

**deleting** 371:4 397:24

**deliberate** 243:21
246:14 390:7

**democracy** 242:8,10

**demonstrative**
238:18,20 239:1

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 374 of 403   PageID 14198
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                  Index: Denise..documents

**Denise** 272:2 287:19 532:10

**Denver** 474:1 543:11

**Denver-based** 286:14

**deny** 440:9

**department** 281:12 330:12

**departments** 287:13 490:3

**depending** 230:18 262:20 280:18 563:19

**depends** 310:17 478:11

**depicted** 376:19

**depo** 211:13 240:4 513:9,11 515:13,15 558:4,19 561:6,9,14,20

**deposition** 514:1,20 515:11 560:6 561:7

**depositions** 239:23

**depressed** 251:6

**depression** 251:7,13

**deprive** 395:5

**depth** 290:2

**derivation** 365:11

**derogatory** 364:25 365:5,16

**describe** 330:12 365:2, 13

**description** 365:24

**descriptive** 365:7,13, 19

**deserve** 305:15 462:3

**design** 215:15

**designated** 467:12 514:25

**designation** 515:15

**designations** 211:14 513:9,11,19 558:19

**designed** 321:19 322:2

**desire** 301:9

**desired** 270:25

**despicable** 499:25

**despises** 321:11 322:24 323:14

**details** 341:11 448:25

**determine** 466:12

**devastating** 251:5

**developed** 372:25

**development** 556:13

**device** 243:14 244:10

**devices** 244:18

**DFR** 226:2 231:13 234:5 297:13

**dialed** 531:17

**dictate** 498:10

**die** 510:3

**differently** 286:18 394:1 446:21 550:16

**difficult** 276:15 291:11 338:10

**diffuse** 237:10

**dip** 325:5,11 326:3 416:20

**dipshit** 325:12

**dire** 254:5 393:15

**direct** 248:18 309:20 438:21

**directly** 229:7 231:13 232:19 289:7 297:13 324:15 490:1

**director** 330:2 492:4,10

**directors** 336:23,24

**disagree** 257:19 351:21 535:24

**disagreeing** 408:1

**disappointed** 389:19

**disapproval** 248:17

**disavow** 409:1

**disavowed** 404:7

**disavowing** 404:23

409:14 410:10,13

**discipline** 217:24 221:21,23 222:3 224:13,16 226:5 284:2 403:22 438:6 439:2 441:10 445:9,10 454:18 487:5,12

**disciplined** 214:22 462:1

**disciplines** 441:24

**disclaimer** 329:11 521:8

**disclose** 383:21 385:4 485:25

**discovery** 214:23

**discriminated** 268:21 315:13

**discriminating** 268:17 284:8

**discrimination** 549:21 550:6

**discuss** 243:4,6,19,22 245:1,5 355:15 445:8 446:2

**discussed** 244:16,19 245:3 288:15 337:6 436:12 439:24 443:1 444:25

**discussing** 245:13 248:8 404:1

**discussion** 247:8 279:12 339:3 385:22 396:14 437:21

**discussions** 245:13 290:2 436:20,24 484:15 486:16

**disenfranchised** 256:1

**dismissed** 446:1,23 447:1

**disowned** 249:25

**dispensation** 380:18

**display** 238:21 353:12

**displayed** 356:11 418:16 466:14 482:13 497:24 543:3

**displaying** 238:24

**dispute** 282:15 285:8 286:23,24 294:20

**disputes** 286:5,11

**disrespect** 535:17 543:11

**disrespectful** 282:8

**disrespectfully** 538:18

**dissertation** 361:3

**distance** 270:10 385:6

**distinction** 446:3

**distract** 242:20

**distress** 277:5

**district** 241:21,23 388:20 557:3

**disturb** 478:22 479:2

**disturbing** 473:9,10 478:21 499:20 501:16, 17 502:2,3,21

**dive** 301:1

**diverse** 284:11

**docket** 212:5,20

**doctor** 250:16

**document** 212:23 213:1 227:23 237:7 293:13 296:2 314:22 319:5,13 328:3 341:19 342:14 345:7 354:19 360:17 390:18 400:20 401:1,4 406:10 423:2 433:7 435:14,17,19 436:6,13 449:23 453:5 456:3,7,10 457:1,2,7,23 458:14,17 463:9 466:7 481:4,8 489:1 528:1

**documentary** 246:1

**documentation** 409:23

**documents** 218:9 220:8 221:8 228:18 233:16 235:24 239:7 275:11 381:18 385:9 410:11 495:1 511:17 528:22

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 375 of 403   PageID 14199
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                    Index: dog..entitled

**dog** 285:23 286:4 532:21 533:1

**domicile** 433:24 434:3 489:14,15,17

**donated** 326:17

**door** 392:17 442:2,18

**dossiers** 266:17

**double** 210:18,19

**doubt** 271:16

**dozen** 416:18 529:21 531:25

**draft** 556:13

**drama** 335:3,6

**dramatic** 335:11

**drastic** 506:19

**draw** 216:15 242:1 517:6,7,14

**dreadful** 408:20 410:22

**drew** 390:15

**drill** 388:24 389:7,11 391:15

**drive** 343:21,24

**drop** 491:12

**dropped** 491:6

**due** 495:24

**dues** 228:12 255:3 260:2,3,11 275:23 320:7,10,15 327:7 330:23 335:16 368:22, 25 464:21 495:8 503:25 535:16

**duly** 309:4

**duplicative** 412:17

**duration** 558:24

**duty** 214:18 216:13,21 254:24 278:7

**dying** 510:5

---

**E**

**earlier** 237:20 302:16 313:24 327:16 395:19

400:19 405:25 406:5 444:13 483:17 534:10 544:14 545:11

**early** 248:7 452:7 564:12

**earth** 223:10

**easier** 319:15

**easy** 259:8 319:11 448:11

**EB** 549:22

**echo** 216:3 225:9

**Ed** 210:23 267:11 268:20,25 276:2 284:18 287:5 333:17 532:11

**Education** 320:1,3

**Edward** 300:12

**effect** 277:14 478:10

**effective** 240:6,8 270:9 478:8 501:21 502:1,4, 22 503:5,8,9 509:1,18

**effectiveness** 501:15, 18

**efficiency** 229:20

**efficient** 229:20 238:7 561:19

**efficiently** 219:13

**efforts** 225:23 236:17 248:13 253:25 348:1 404:24

**Eileen** 334:19

**elected** 255:14 258:15 317:8,14,25 327:3 423:21 434:17,23 539:20

**election** 220:22 265:6 317:3 408:24 429:8 470:24 535:15

**elections** 305:3

**electronic** 243:14 244:10

**eliminate** 409:17

**else's** 303:20

**email** 212:13,16 220:22

221:25 248:1 257:9 272:3 319:10,17 320:11,24 321:9 322:20,21 323:7,11 324:9,13,14 326:8 329:18,21 330:19 334:3 344:17 348:24 350:10 351:19 354:23 355:2 356:6 360:20 361:2 364:21 367:14 369:14, 19,25 370:2,16 371:17 372:8 373:13,20 375:24 376:5 397:24 398:9 399:1,2,9,24 402:17,20, 21 403:2,6 406:13 408:4 409:11,14 410:20 412:24 416:5 418:6 419:18 420:2,4,7,13,14, 18,21,22,24 421:8 468:24 481:15 483:21 485:9 486:14,15 492:13,14 497:5,9 498:5 524:12 526:18 527:13 528:4 559:6 560:1 565:2

**emailing** 401:21 418:17

**emails** 213:24 219:22 248:10 249:8 256:21 319:15 334:8 355:5 368:19 399:16 403:9 404:6 409:5 410:2 416:16 418:11 419:11, 14 483:6,16,18 485:8 491:20 528:20,21 564:23

**emblem** 261:9 273:12

**Emlet** 284:18 287:16 559:2 560:19,20,21,23 561:16 562:5,8 564:20

**emotional** 277:5

**employee** 221:21,23 222:3 224:12,22 236:20 253:17 254:8,21,22,25 255:2 264:25 265:1 267:21 280:3,4,8,10 283:4,16 286:18 287:4, 19 292:23 302:2,7 303:5 305:14 315:11 316:3,12 330:7 404:17 409:8 454:18 490:2 492:8

**employees** 214:5,18, 22 215:1 264:24 265:1, 19,23 280:25 282:16, 17,18 283:21,23,25 284:8,12,14 294:21 296:8 298:3 301:18 302:12 315:15,19,22 316:3,9 330:17 441:10 444:15 461:11 462:1 487:24 489:18

**employees'** 254:14

**employment** 248:11 274:2 286:9 292:1 462:12

**encounters** 496:16

**encouraging** 469:14

**end** 211:17 242:16 243:20 247:6 275:1 278:18 279:3 290:21,22 291:7 292:4,8 293:2 298:13 299:25 306:24 325:7 332:7 373:16 410:6 419:12 515:19 562:10,13

**endeavor** 307:13

**ended** 318:6 472:5

**ends** 249:16 344:16,25

**endure** 303:24

**enforce** 268:19

**engage** 311:21 315:16, 19 316:9

**engaged** 267:14,15 271:5 316:12 326:5 437:25 438:2,8,17,23 439:17,22 475:15,22

**engaging** 265:5 313:13 476:13 505:8 536:24

**enter** 234:19

**entered** 241:16 308:19 377:12 386:17 396:11 452:25 521:10

**entire** 246:15 317:10 321:11 323:14 481:18 544:19

**entities** 228:14

**entitled** 243:1 273:19 277:8 280:8 322:22

331:8 335:17 487:24
516:19 520:20 521:24
535:11 544:2

**entity** 278:14

**entrenched** 361:16

**equality** 496:25

**equally** 502:8

**escalating** 304:24

**established** 219:8

**estimate** 523:21

**estimated** 522:9

**evasion** 313:7

**evasive** 358:19 359:8
360:1,3 375:16,22,23
439:20 440:3

**event** 318:3 344:25
345:14 533:17 539:10,
16 540:9 541:19 547:9
550:22

**events** 260:21 453:23
454:1 497:1

**eventually** 252:6
344:25 403:8 531:8

**everyone's** 213:14
306:22

**evidence** 210:6 212:24
214:25 215:4,7,9
225:20 230:4,24 231:5,
19,20 232:1,24 233:2,3,
7 238:18,20,21,23
239:1,20,21 240:1,2
243:23 245:21,23
246:1,5,6,10,12,17
268:16 271:15 278:17
279:1 281:17,19,25
284:3 285:4 286:6
287:10 293:7 294:16
296:6,10 297:9,20
298:9,20,25 299:21,22
301:1 302:15,19 303:14
304:5,14 305:10
306:13,23,25 307:3
314:11,14,21,23 319:3,
6 328:4 329:14 339:25
342:12,15 350:2 354:20
356:17 360:15,18
385:10 398:15 401:2
406:11 417:22,24

422:24 423:3 433:8
449:24 450:6 453:3,6
456:9 457:15 463:7,10
481:5 484:4 489:2
495:1 511:17 521:24
524:1 527:23 528:2
530:4 537:25 539:23
544:22 545:22

**exact** 439:18 440:3
531:12

**examination** 309:20
564:13

**examinations** 516:11

**examples** 548:14
549:3,17

**excellently** 303:16

**exception** 221:11
231:12 269:14 353:24
354:2,5 360:15 463:6
464:3

**exceptions** 222:23
269:15 342:5

**excerpts** 514:21 534:3

**exchange** 386:25

**excited** 252:24 253:11
255:11

**exclamation** 326:18

**exclude** 228:18

**excluding** 396:20

**exclusive** 247:22

**excuse** 235:10 243:18
255:19 379:22 395:16
396:7 434:25 435:1,4
472:21 511:16

**excused** 244:24
390:25 395:22 397:13
555:4

**excuses** 255:22

**excusing** 396:22

**executed** 376:22

**executing** 376:10,14

**execution** 376:4,7,13
377:3 400:6

**executive** 218:14

220:20 291:24 317:21,
23,24 319:20 334:5,10,
13 358:15 361:11,19
418:22 430:23 433:24
434:4,13,14 450:23,24
453:11

**executives** 265:15

**exempt** 565:1

**exercise** 250:13
269:21 393:18

**exercised** 252:18
269:9,10

**exercising** 263:9,10
267:14 305:12 323:15
500:5,23 542:22

**exhibit** 212:11,14,16
213:4,9,14,15,19
215:21 218:2 221:20
226:23 230:3 233:3
237:11 314:7,23 315:3
318:14 319:6,8 327:15,
25 328:4 329:10 341:14
342:15,17 343:2 353:10
354:20,22 356:16
359:10 360:5,18 363:1
397:20 400:9,10 401:2
404:11 405:8,9 406:11
419:10 420:25 423:3,5
432:21,22 433:6,8,11
435:9 436:11,15
449:13,24 450:2 451:9
453:2,6,8 455:12,14
456:25 458:5,11
462:22,23 463:10,15
477:25 480:10,13,14
481:5,7 488:16 489:2
499:19 524:14 527:9
528:2,4 532:8 545:14
548:19

**exhibits** 212:15,22
214:15 217:4,11 229:21
235:3 239:6 327:19,22
545:11

**exist** 232:12,13,23
278:12 301:12

**existing** 237:7 333:24

**exited** 307:11 379:15,
25 391:2 397:13 452:1
512:25 513:7 555:3,11

**expect** 239:20 240:4

245:22 279:2 302:4,14
303:14 304:5,14 305:10
516:25 536:17 559:23
561:1

**expectations** 282:18

**expected** 211:15
293:24

**expecting** 405:6

**experience** 224:13
250:15 251:16 252:10
534:15

**experienced** 534:4

**explain** 216:4 359:19
426:11 473:16 556:2

**explained** 254:5

**explaining** 376:16
426:13 542:19

**explains** 304:11

**explanation** 212:7
293:10 311:1

**explode** 326:19

**exploitation** 422:18

**express** 258:7 263:10
279:18

**expressed** 487:1

**expressing** 248:16
362:3,5,9,15

**extent** 229:9 233:5,16
308:5 422:17 520:5

**extracurricular**
388:22

**eye** 235:21 542:10

**eyes** 491:17 518:23,25

---

**F**

**face** 210:24 394:15

**face-to-face** 243:13
496:1,16

**Facebook** 220:8
229:15 248:1 249:4,8
256:22 257:10,11,14,
19,23 258:8 261:15,22
269:23 271:7,23 273:20

282:3,23 283:3 346:12,
13,17 347:1,3 418:24
421:7 423:11 430:3
465:13,14,16,18,23
466:3 467:8,9,12,15,16
468:9,20,24 469:1,4,5,
8,11,13,19,25 470:2,4,
8,14,23 471:1,5,11,15,
21 472:13,16 473:3
474:2 481:25 492:15
511:4,6 512:4 521:19
524:7 525:11,12 526:18
532:16 533:19,20 541:8

**faced** 266:14

**faces** 262:24

**facing** 235:18

**fact** 214:16 220:20
251:9 253:18 264:6,23
268:4 295:1,6 303:11
317:10 321:18 325:4
333:4 365:24 366:8
368:2,7,10,22 413:6,19
427:6 428:24 431:5
434:22 438:11 442:3
470:25 475:22 484:17
485:24 494:18 497:14
500:5 536:13 539:9
541:23 547:2 550:21

**fact-finding** 249:12
288:2

**factor** 283:10

**factory** 510:1

**facts** 242:15,18 291:7,8
298:12 350:1 415:3
421:20 436:12 537:25

**factual** 223:19 485:2,3

**failed** 432:4,7,18
436:25

**fails** 556:15,16

**failure** 297:4 556:5

**fair** 214:18 216:13,21
240:25 287:11 295:4
374:1 385:1 387:23,24
402:8 414:14 442:20
446:10,11 454:21
457:17 485:20 486:23
498:12 506:11 517:9,19
522:10,16 545:16

**faiths** 284:12

**fall** 229:5 233:12 442:10
491:6 518:6

**falls** 527:19

**false** 255:24 435:1

**familiar** 233:13 381:12
435:15 436:3,11,13
459:21

**family** 373:25 471:1

**farther** 442:17

**fast** 253:18 473:25
561:1

**father** 250:1

**fault** 379:1

**favor** 390:10 549:22
551:20

**favorite** 348:25 349:18,
23 350:6,13,18,19,22
351:3

**fearful** 495:22

**February** 249:2,7
263:13,14 266:14,15
267:3,10 351:13 415:4
488:7 528:5,7,24
530:18

**fed** 351:10

**federal** 302:5 339:25
340:3,4

**federally** 305:12

**fee-paying** 248:5

**feel** 302:3 319:16 390:8
440:4 479:22 502:6,7
516:13,15 544:18,19,21

**feeling** 301:11 431:8

**feels** 409:16 411:15

**fellow** 244:4 280:8
287:4 379:11 451:22
487:23 512:19,20
540:16 554:23

**felt** 252:8,9 253:8
267:25 303:15 411:23
544:15

**fetus** 262:20 270:1
493:3,23

**fetuses** 238:22 280:17

**fiduciary** 254:24
260:13 261:2 263:21
278:7,10

**fight** 285:24 286:5

**fighting** 487:20

**figure** 299:13 561:15,
17

**figured** 212:8

**file** 293:14 318:17
337:21 481:15 514:4
556:18

**filed** 338:9,25 339:15
340:3 467:23

**files** 266:17

**filing** 472:5

**final** 406:17 564:13

**finally** 246:13 251:14
295:8 410:5 482:2

**financial** 433:16

**find** 235:8 242:18
266:19 272:1,3,10
289:13,14 302:4 376:6
390:21 493:20 516:11
525:7

**finding** 250:6 295:1,6
303:11 344:25

**finds** 255:12

**fine** 215:5 216:12,14
237:23 291:5 357:14
386:2 441:21 446:25
501:6 508:4 512:17
516:5 517:2 519:22
521:3 563:10 564:17

**fingers** 522:20

**finish** 213:16 396:3
479:9 494:9 522:12
553:1 554:7,10 563:4
564:12

**finished** 357:17 497:12

**finishing** 212:4

**fire** 268:7 270:18,20
271:12 272:20 273:8,17

**fired** 215:12 252:18

256:18 259:19 261:17
263:23 267:8 268:23
269:9,10 270:21 271:18
416:7 552:25

**firm** 281:4

**fit** 308:10 350:17

**fits** 221:11 222:23

**five-minute** 241:4

**flag** 217:12,14

**flaw** 233:6

**flight** 232:4,6 247:16,19
253:11,20,24 257:5
258:13,21 262:12,14,
15,16 264:5,11 267:5
275:6 280:7 301:20
303:5 330:13,15 334:13
337:6 345:16,20
347:11,14 348:1 375:3,
19 410:15 411:12 429:8
432:9 440:20 445:9
448:20,21 449:2,6,11
450:3 454:6 460:11,17,
22 464:1 466:4,6
469:14 470:6,11,17
472:2 474:1 481:13,14
487:5,17,18 489:24,25
491:14 492:16 493:17,
18 494:11,23 495:24
500:3 523:3 531:5,11
540:16 546:13 552:1

**flights** 276:23 286:21
460:8,14

**floor** 299:12

**flow** 377:10 516:9

**Floyd** 478:3,13,20

**fly** 211:22 267:4 489:11

**flying** 293:21,22 495:23

**focus** 301:3,4

**focused** 255:5

**Foley** 215:24

**folks** 281:2 301:15,22
302:2 303:8 513:2

**follow** 268:12

**follow-up** 386:1,3

**followers** 533:4

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 378 of 403   PageID 14202
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022              Index: force..granted

**force** 518:25

**forced** 359:6

**forceful** 509:1

**forcing** 279:20

**forecast** 519:18 562:6
564:6

**forget** 287:4,5 322:13
349:16

**forgiveness** 251:25
252:9 253:8

**forgot** 508:12

**form** 212:20 226:20
298:23 433:10 556:4

**forum** 408:6

**forward** 253:18 275:23,
24 302:11 313:9 333:3
418:7 457:19 472:9
476:3 482:8 484:11
492:12 494:21 528:18
555:22

**forwarded** 217:19
345:2 363:25 364:7
484:14

**forwarding** 361:3
363:15 546:5

**found** 499:20 527:20

**foundation** 337:25
338:4 369:22 466:21
477:7 479:15 484:4
529:5 530:3 537:4
540:18 545:22

**founder** 283:1

**founds** 294:6

**fours** 505:17

**fourth** 224:14 515:13

**frame** 424:23 426:4,12
525:9 532:23 543:18

**frames** 426:3

**framework** 219:15

**framing** 333:12

**frankly** 284:9 286:20
294:22 392:11 456:24
542:2

**fraternity** 250:8

**fraud** 302:16,21

**free** 269:14,15,20
278:11,13,14 279:20
280:1 295:25 305:12
315:15,19 316:9 319:16
379:17 477:12

**freedom** 250:13 263:10
277:11 279:13,14,19,20
280:1 301:10 479:25

**freedoms** 269:20

**Freeman** 383:13,22
386:19,24 387:7

**friend** 258:8 389:5
470:4,14 543:10

**friendly** 494:10

**friends** 243:8 272:24
350:25 382:1 384:19,20
387:15 409:6 470:5,7,
23

**front** 211:10 220:25
252:13 409:10 428:4
516:4 560:1

**Frye** 212:12 241:17
309:2 383:15 397:8
564:25

**FSLA** 565:1

**fuckard** 429:4

**fucktard** 265:1 429:2,6,
9 440:21 546:10,12

**fucktards** 428:18
429:11

**full** 251:18 277:3 516:4

**full-time** 494:20

**fully** 290:22 293:24
297:21,24

**fun** 322:23 368:21

**functioning** 229:2
235:4

**fundamental** 497:2

**funded** 464:20,21

**funds** 322:16 508:19

**Funny** 533:1

**future** 266:5 298:23
453:25 513:10

---

### G

**Gage** 326:9 433:15

**Gale** 381:20

**gallery** 300:17 516:4

**game** 440:2 446:11
506:11

**Gannet** 433:19

**gather** 355:3 428:6
536:22

**gathered** 230:22
529:20,23 531:20

**gathering** 425:25
426:14,15,18,19,25
427:3

**gathers** 395:21

**gave** 237:3 253:25
288:8 289:3 293:19
295:5 298:11 299:20
304:25 329:15 386:25
387:1 393:7 400:19
410:5 442:7 510:9
519:12 559:24

**gay** 448:3,8,18,21

**gee** 390:8

**general** 353:6 402:8
429:11 470:15

**generally** 487:15 559:4

**gentleman** 288:11
333:18

**gentlemen** 293:8,15
295:11

**genuinely** 385:11

**George** 478:3,12,20

**Ghost** 364:18 367:16
369:10 370:9

**GILLESPIE** 234:23
235:12

**Gilliam** 210:9 211:3,8
216:17,20 217:16 218:4
219:3 220:2,12 221:14,
17,20 222:12,20 223:3

225:18 226:7 227:11
228:3 231:8 233:25
236:13 307:22 474:21
515:10 562:8 564:5

**Gina** 215:23

**girls** 381:25

**give** 211:19 217:5
240:22 242:5 247:5
254:22 267:22 278:18,
20 279:3 292:24,25
294:5 295:24 296:18,24
298:10 299:14,19 300:2
306:12,13,14 307:5
308:7 314:8 326:16
328:16,21 329:11
340:23 366:2 378:4
379:2 386:22 390:10
406:25 426:10 433:2
461:17 475:16 488:20
503:14 510:13 516:14
521:8 552:23 557:18
559:9 564:5

**giving** 503:24 549:3,17
560:13

**glad** 275:7

**Glick** 423:8

**God** 247:15 279:16
479:20 548:9

**God's** 251:24,25 252:8
253:8

**good** 235:22 257:2
258:23 259:1 278:4
279:8 288:23 294:6
300:9 309:22,23 352:18
354:25 356:1 390:16
396:25 424:20 431:10,
20 452:8,12 506:6,23
515:19 554:1

**GOTTFRIED** 558:22

**governed** 315:23

**governing** 317:21
334:5

**government** 278:13

**grab** 391:11

**graduated** 384:7,18

**graduating** 388:16

**granted** 268:3 446:7

**granting** 517:11

**graphic** 269:25 292:21 473:8,16 474:19 493:2 511:3,4 521:18

**grasping** 273:7

**gray** 297:7

**great** 211:1 213:6,8 218:25 348:12 372:25 378:7

**greater** 243:2

**greatly** 530:13

**GREEN** 433:2

**Greenfield** 210:22 215:19 218:7 219:2 220:6 222:25 225:9 227:7,8,19,22 228:8,9 229:12,14 230:18 231:18,22,24 232:2 233:21,22 234:7,16 235:13,14,20,23 236:22 237:18 238:11 240:19 278:6 289:6 290:11 297:11,16 299:5,18 300:1,4,6,11 306:5 307:24 308:7,11 314:20 319:1 327:10,12 332:5 333:6,22 337:24 339:2, 9 340:11 341:19,22 342:2,7 349:25 353:17, 20 356:15 360:13 362:25 369:21 373:6 377:6,9,17,19,21 378:14,19 380:10 388:8,9,12,15,18,21 389:2,6,12,14 391:5,8, 12,21,24 392:20 400:16 412:11 413:25 416:21 417:2,20 418:25 419:4, 16 421:1,6,14,21 422:2, 11,15,19 431:23 432:13 435:23 436:1,7 439:7 442:8,14 444:21 447:2 452:10,13 455:18,25 456:2,14,17,20 457:6 459:6 461:19,23 463:3 466:20,23 472:20 474:20,22 475:24 477:22 478:4,14 479:7, 13 480:2,17,23 481:1 482:21 483:24 484:3 485:13 486:10,18 488:20 497:19 498:15

499:1,7 500:11 501:3 502:13,23 503:18 504:13 505:3,15 507:14,20 508:2 509:3 510:7 515:23 516:3,8 518:9,15 519:5 520:9 521:3 523:17 525:20 526:14 527:19 529:4,10 530:2,22 531:2 532:1,6 533:7 534:19 535:2 536:8 537:24 539:22 540:17 545:3,7,21 547:18,23 555:19 562:15 563:12,17 564:3,8

**Greg** 215:10 270:23 374:14

**grievance** 376:11,12 413:5 440:16 528:18

**grievances** 487:4

**ground** 292:14 354:1

**grounds** 226:22 233:14 360:15

**group** 330:13,15 334:11 381:25 384:20 392:23 397:1,2 418:24 421:23 427:20 470:15 481:24 538:9 551:3

**groups** 251:20 389:5

**growing** 388:10

**guards** 494:14

**guess** 213:19 214:3 216:9 362:13 392:13 395:10 432:10 457:5 552:3 555:17 559:4 563:21

**guidance** 252:9 352:10 482:9

**guidelines** 285:15

**guilt** 253:7

**gun** 412:5

**guns** 411:9

**Gutierrez** 272:2 287:19 532:10

**guy** 215:10 251:11,12 266:25 348:12

**guys** 259:6 427:8,17 540:13 547:14 549:1 564:8

---

**H**

---

**Ha** 321:10

**habits** 530:9

**Haffer** 399:14

**Hafner** 266:25 355:19, 24 356:2,22 369:19 371:19,24 372:14,19 374:8,11,14 398:3 401:22 402:11 420:21, 23 444:6,10,15 445:5,8 446:22 483:22 486:6,9

**Hafner's** 355:21

**hairs** 448:10

**half** 299:8 416:18 529:21 531:24 561:25

**hall** 235:8,11 380:17 397:2 562:19

**Hamlet** 560:16,17

**hand** 334:18 343:2 355:10 383:15

**handful** 457:8

**handheld** 386:22

**handle** 264:20 380:5 452:21

**handled** 380:8

**handles** 446:8

**handling** 258:1

**handy** 565:2

**hang** 458:13

**happen** 264:20 332:2 396:5 448:14 498:10 500:1 538:19

**happened** 215:10 267:9 287:8 338:24 341:3 418:14 435:2 454:2 473:25 491:18 531:16 544:4 550:4,22

**happening** 357:22 378:16 427:19 478:9

**guys** — see above

**happy** 235:10 240:17 257:6 303:23 322:23 353:15 356:13 361:8 551:3

**harass** 448:2,12 510:19

**harassed** 303:3 305:6 448:17 537:18 544:15, 18,20

**harassing** 279:22 282:9 304:23 448:7 544:21

**harassment** 305:13 424:7 490:9,22

**hard** 255:12 274:8 276:11 319:12 360:20 366:10 401:6,10,11,12 481:9 504:21 551:16

**hardcore** 533:4

**harmed** 283:9

**harms** 283:15

**hate** 372:23 406:24 534:4 538:9

**hateful** 534:13

**haters** 428:1,16

**hats** 262:25 263:1 524:7,13,17 525:4

**haze** 284:1

**hazing** 283:13,14

**he'll** 292:10

**head** 326:18 356:3 430:18 490:15,19,25 492:5

**header** 466:8

**Heads** 330:21

**hear** 216:17 219:25 235:6 239:11 240:5 244:7 245:10 250:23 255:17 258:9 261:1 281:7 283:22 284:14, 16,22 285:6 287:1,3,14, 16,17,18 288:8,12 290:22 291:9,20 294:24 295:3 298:12 299:23 300:25 302:13,19 305:20 306:25 312:21 332:10 364:3 377:24

384:14 387:9 389:22,23
405:6 412:15,22 413:13
462:14 464:15 471:8
538:24 563:16

**heard** 242:1 246:16
251:22 256:21 278:16,
25 285:7 289:2 291:8
295:5 298:12,19 299:1,
21 300:22 302:9
306:13,22 312:22 313:3
389:23 415:22 458:21
460:6 461:1,3 479:4
484:23 487:2 520:10
528:17 553:21,22

**hearing** 215:12 245:7
288:8 291:19 292:8,15
293:2 294:1 295:7
307:3 318:10 397:1
439:12,13,15 555:25
556:3

**hearsay** 220:7,11,12
221:11 222:23 225:10
226:6,7,13,20,22 227:3,
6,9,25 228:18,21
229:16 230:19 231:12
233:20 342:4,6 353:21
354:2 360:14 421:9,20
463:5 511:16 527:18
534:20

**heart** 220:19 242:8
251:2

**heat** 517:16

**heavy** 408:22 412:2

**heels** 335:12

**held** 249:11 278:22
291:14 299:16 306:18
329:7 340:20 342:9
354:14 378:23 415:25
422:21 442:23 447:21
455:1 458:2 462:7
463:22 507:5 508:8
554:16

**helped** 413:4

**helpful** 373:18 393:4

**helping** 252:14 253:9,
14 300:19 515:16

**Herb** 253:16

**hereinafter** 315:25

**hesitant** 348:7

**hesitation** 385:2

**hey** 254:18 322:22
323:18 324:25 368:23
551:19 553:2 562:20

**hierarchy** 526:22

**high** 330:4,6 361:20
381:5 383:19,20 384:2,
5,6 387:21 389:17
390:9 529:14

**higher** 278:10

**highest** 254:25 278:8

**highlighted** 282:7
456:3

**highlighter** 456:17

**highlighting** 456:15,20

**Hill** 210:10 211:21
308:22 435:10,12

**hired** 247:16 276:15

**historic** 285:7

**history** 408:21 410:23
543:17

**hit** 234:14 473:24 522:7

**Hmm** 346:7 538:8
551:2

**Hofehover** 215:24

**Hofer** 270:23

**Holcomb** 258:16 259:3
443:9 444:2 445:15
446:22

**hold** 288:19 361:11
373:17 377:4 441:1
459:9 497:7 511:12
527:14 537:3,8 547:21
550:10

**holding** 215:2 261:5

**holy** 517:11

**home** 250:18 548:8

**Honor** 211:3 217:13,16
218:7 219:4 220:2
221:14 222:12,25
227:8,11,19 228:9
230:20 231:18 232:2
233:22 234:7,16,23

255:14 236:22 238:11
239:4,22,25 249:21
289:18 291:18 295:17
296:15 297:11 299:5
307:24 308:11 314:12
318:19 319:1 327:17
328:5,20 332:5 333:7,
22 337:24 339:2 341:23
342:3 356:15 360:13
363:19 369:21 373:6
377:6 378:13,21 380:10
391:6 392:20 400:16
405:21 412:11 416:21
417:2,20 418:25
419:16,19 420:6 421:1
431:23 432:13 433:3,4
435:13 436:5 439:7
440:24 441:6 442:8
444:21 445:18 454:7
455:5,13 456:3 458:7
459:6 462:3,17,19
463:4 466:20 474:20
475:24 478:4,14 479:7,
13 480:2,24 481:1
482:21 483:24 485:13
497:19 498:15 499:7,12
500:11 501:3 502:13,23
503:2,18 504:13 505:3,
15,21 506:3 507:14
510:8 513:20 514:24
515:23 516:16 518:20
523:17 525:20 527:20
529:4,10 530:2,22
531:2 532:1 534:19
536:8 537:24 539:22
540:17 545:3,7,21
547:18,23 550:8
552:18,22 558:22
562:15 563:14

**Honorable** 241:23

**hook** 550:7 560:25

**hope** 250:14 423:19
425:22 453:10 454:24
512:13

**hopeful** 563:4

**hopes** 361:20 543:25

**hoping** 250:23 394:23

**horrible** 269:3 533:18
540:12 542:16

**horrific** 503:7

**horrified** 473:25

**host** 361:5

**hotels** 464:5,9,12,17

**hour** 379:7 563:5

**hours** 444:12,19
445:17 564:25

**Hover** 215:11

**Hudson** 436:18,22
444:2,4 491:25 560:23

**huge** 301:19 305:22
408:24

**human** 247:14 301:11

**humiliates** 283:16

**hundred** 388:17,18

**hung** 381:25

**hurt** 427:1 428:9

**hyperspace** 247:10

**hypothetical** 505:11

---

**I**

---

**idea** 286:9 323:3
352:18 395:20

**identified** 484:6

**identify** 421:12,24
422:6 457:2 458:10
481:8

**ignore** 264:6

**III** 210:23 300:12 475:1,
5,18 476:9,10 477:15,
18

**illegal** 236:5,8 269:18
333:4 475:14

**illegality** 341:4

**illustration** 355:11
374:5

**image** 473:9

**images** 503:7 521:18

**imagine** 260:1 391:16

**immediately** 497:5,9
498:4 522:15,21 523:6,
7,11,13,15

**impact** 480:6

Case 3:17-cv-02278-X  Document 448  Filed 06/14/23  Page 381 of 403  PageID 14205
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022          Index: impartial..investigates

**impartial** 382:10 385:1 387:23 390:6 392:8 394:15

**implemented** 224:18

**implications** 517:4

**import** 439:21

**important** 232:14 277:7 279:14,15 283:24 310:15 311:11 313:12 348:4,6 491:15 514:6

**importantly** 395:1

**impressed** 389:16

**impression** 223:10 226:14

**impressions** 226:8

**improper** 368:24 369:2 484:18 485:18,24 539:11 546:16

**improperly** 256:25

**in-flight** 490:15,19 491:1,19

**in-house** 281:10

**in-towners** 559:18

**inaccurate** 535:22

**inadvertence** 511:10

**inadvertently** 473:24 474:4,7 511:8,24

**inappropriate** 239:1 263:7 296:6 323:18 324:2 325:20,21,23 326:4 371:5,8 374:24 375:2,5,9,13 399:25 400:1 403:21 456:8 468:15,18 552:6

**incident** 336:11

**inclined** 421:19,25 553:19

**include** 237:13 247:5 483:5 485:20 490:25 492:6 524:7

**included** 302:22 410:19 415:6 451:5 491:24,25 492:9 496:7, 20 524:16,22 525:3 546:9

**includes** 243:7 247:6 283:17 450:24 451:2 465:1

**including** 244:22 248:21 264:12,25 280:10 284:2 328:18 348:25 376:16 388:1 399:14 418:10 427:24 469:8 486:5 529:2

**incomplete** 456:4

**inconsistencies** 482:10

**incorporates** 283:18

**incorrect** 477:18 500:18,20

**incredibly** 408:15 411:7 412:1

**incumbent** 394:25

**incumbents** 361:14,16

**independent** 244:5

**indication** 409:19

**individual** 301:21 305:11 392:22 442:12, 15 491:7 496:25

**individuals** 215:22 216:1,7 231:1 284:17 303:13

**inflame** 456:22

**inflight** 330:2,10,11 355:24 356:3 372:12 402:2

**influenced** 242:25

**inform** 252:17

**information** 226:9 230:22 243:11,17 244:21 257:15 264:7 355:3 370:19 380:11 391:17 393:3 410:4 425:25 426:14,16,18, 20,25 427:3 438:16 524:25 529:20 531:20 556:20

**informational** 323:7

**informed** 348:1 410:20 437:10

**informing** 336:16 436:18

**initial** 218:9 525:16

**initially** 258:15 471:3

**initials** 363:12

**injecting** 223:19

**inner-city** 408:22 412:3

**inquire** 383:23

**inside** 418:24 497:17

**insiders** 266:16

**insightful** 407:3

**insinuation** 356:18

**installment** 406:17

**installments** 406:19

**instance** 531:23

**instant** 467:15

**instruct** 242:16 246:7 267:18 340:11,13

**instructed** 334:19

**instruction** 215:6 217:6,13 219:18 221:12 223:2,4,23 229:10 230:1 231:17 233:10,18 234:13 237:14 298:11 299:4,14,20 306:12 328:14,18,21 340:17,23 400:12,18 406:3,6 436:6 534:21 552:23

**instructions** 240:22 242:6 246:17 261:1 307:5 379:10 451:22 452:2 512:18 554:22

**insurance** 341:10

**intact** 437:7

**integrity** 533:2 546:8

**intend** 559:2,12

**intended** 245:20 456:22,23 491:17

**intending** 275:13 517:23 520:9 547:19 549:10,14

**intent** 231:11 537:5 544:7 553:13

**intention** 250:22 511:11

**intentional** 393:10

**intentionally** 268:17 536:13

**interact** 388:25 389:8

**interacted** 389:4

**interest** 255:1 260:7

**interested** 276:7 431:18

**interesting** 263:13 517:4

**interestingly** 257:21

**interfere** 310:16,19 311:12,23 312:19 313:15

**interfered** 315:12

**internally** 514:13

**international** 227:24 255:16 331:16,25 332:15 349:9 352:10 463:22

**Internet** 243:15 244:17 529:20 530:21

**interpret** 372:20 373:13

**interpretations** 246:11

**interrupt** 377:10

**interruptions** 245:16

**intimate** 359:21

**intimidates** 283:16

**intimidating** 279:22

**introduce** 281:2,15

**introduced** 226:9 246:6 484:4

**introduction** 462:23

**investigated** 448:20, 24 487:12

**investigates** 267:11

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 382 of 403   PageID 14206
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                           Vol 2 July 06, 2022              Index: investigating..labeled

**investigating** 468:19

**investigation** 221:7
244:5 249:13 284:15
286:12,14 287:6,12,20,
24 289:19 293:20
295:2,3 337:10 492:11
544:9 552:2

**investigations** 487:18
529:15,16

**invoked** 234:18 377:13
380:15

**involve** 234:1 483:18

**involved** 221:6 244:22
252:21 260:19 265:25
286:8,23 287:7 294:21
303:18 305:22 312:18
327:6 348:9 415:11,13,
18 425:7 426:2,5
428:13 438:24 441:16
492:11 496:3 552:3,5

**involvement** 312:22
445:13

**involves** 279:16,17,19
497:16

**involving** 287:13

**irons** 558:3

**irrelevant** 222:11,17
224:23 236:8 511:16

**Israel** 273:13

**issue** 214:5 218:8
221:3 244:12 276:9
296:16 379:1 382:22
383:9,10 387:8,19
395:14,24 396:15
406:24 407:24 443:22
452:21 481:23 547:17
557:12

**issued** 315:25 428:7,8
438:6 439:2 487:13
533:17

**issues** 220:7 228:12
240:11 244:25 245:2,5,
15 290:9,16 300:23
302:13,15,16 307:20
380:2,8 404:7 407:10
425:7 452:5 487:1,11
555:10 557:8 558:2,18

## J

**Jackson** 215:23
225:11,18 226:3,8
231:10 234:4 270:22
274:6,7,10

**Jamie** 401:25

**January** 248:20,24
259:20 310:4 329:24
453:9,24

**Jeanna** 225:11,18
231:10 234:4 270:22
274:6,7,10

**Jessica** 453:22

**job** 253:13 264:2,5
275:18 276:13,14 277:4
289:4 292:17,25 293:25
294:2,4 295:9 344:10
373:17,24 398:15 403:9
460:23 461:1,4,5,7,9
495:23 520:6 550:5

**jobs** 250:4

**John** 242:6 258:16
259:3 319:18,19 339:17
377:17,19 433:17 451:5
562:15

**join** 339:10

**joint** 236:3,19 237:2,4
331:2,5,7 336:5 337:23
555:19

**jokes** 367:24

**Jones** 211:4,6 281:5
287:17

**judge** 241:23 242:13
244:23 254:5 267:18
338:12 340:4 382:22
390:2 452:10 556:8,10,
19 557:24 558:1

**judges** 242:15

**judgment** 415:15

**judicial** 382:22

**judo** 411:9

**jump** 247:10 378:10

**June** 310:7,12,13

**juror** 381:7,10,21,23
382:3,11,19,25 383:12,
13 384:8 386:17,20
387:4,13,16,18,25
388:3,5,11,14,17,20,24
389:4,9,22 390:5,11,13,
17,23 391:2,4 392:23,
24 395:14,16,23 396:8,
14,15,21,23 397:13

**juror's** 243:2

**jurors** 237:17 241:16,
18,19 243:1,18,20
244:4,24 299:9 302:4
307:7,11 308:19
379:11,15 386:8 396:6,
11 451:22 452:1,25
512:19,21,25 521:10
554:23 555:3

**jurors'** 243:1

**jury** 210:19 214:1 216:5
217:9 218:20 221:1
223:4 224:23 230:14
236:9 238:22 239:8,11,
15 240:2,7 241:15
242:7,12,14 243:10
246:13 247:5 259:5
296:24 300:18 307:4
308:18 314:25 325:22
327:19 328:1 342:13
354:18 356:18 365:21
378:15 379:14 383:9,10
385:8 390:3 391:1
393:11 394:20,21
395:1,11,13 396:10
397:3 398:18 409:10
422:25 435:16 436:7
451:25 452:24 456:22
461:24 462:10 477:20
481:3 518:24 519:18,24
521:8,15,16 534:21
538:2 553:11,20 555:2

**jury's** 215:8

## K

**Kate** 281:14

**Kearney** 215:25

**keeper** 212:22

**keeping** 212:19 213:2
408:18 437:6

**Kelleher** 253:16

**Kent** 334:18

**Kevin** 377:18

**key** 517:5

**kibosh** 378:16

**kick** 331:13 394:4,20
434:24

**kicked** 255:13,16
256:3,9,13,24 302:18
317:17 344:9 361:21
423:22 424:2 539:19

**kill** 229:23 416:8

**killed** 265:2

**kind** 211:25 259:15
261:12 262:6 269:19
280:25 301:9 308:7
345:11 368:23 381:10,
11,16 390:14 413:8
419:13 429:17 437:12
475:3 489:10

**kinds** 399:15 429:20

**Kingdom** 300:17

**Kleburne** 514:19
515:7,14 558:20

**Klenurne** 513:13

**knew** 251:2 326:24
327:2,5 346:19,23
347:19,20 384:10,12
439:1 459:25 468:5
484:15

**knowing** 333:3 359:18
360:1 385:1 411:16
459:18

**knowledge** 217:22,25
220:15 222:4 225:23
231:11 322:10,13,14,18
359:22 367:1 373:9
384:25 394:8 395:6
417:6 448:22 455:7,11
467:1 533:11

**Kyler** 433:16

## L

**labeled** 467:19

**labor** 219:9 287:16 490:1 491:25 492:4,10

**lack** 337:25 369:22 466:21 482:8 484:3 529:5 530:3 540:18 545:22 551:22

**lacks** 526:14 542:21

**Lacore** 217:19 221:4 222:16 267:1,4 329:22 330:1,19 336:10 356:23 401:21 406:14 410:18 413:1,7,10,12,14,15,19 414:8,9,15,17,20,24 415:9,10,12,13 491:19, 24

**Lacore's** 335:20 420:14

**ladies** 293:8,14 295:11

**ladies'** 262:24

**lady** 255:9

**laid** 219:15

**lake** 249:24 381:16 383:19 384:2,5,6 388:9, 23 389:19 390:14 394:10,12

**land** 332:3

**language** 259:12 262:25 315:18 430:5 474:25 546:12

**lanyard** 272:25 273:4

**laptop** 255:19

**large** 284:6 433:18

**Las** 249:9 489:8 556:24 557:1

**last-chance** 442:4

**late-breaking** 394:8

**latest** 487:18

**Lauren** 281:11

**law** 219:5 242:14,17 244:21,25 246:7 254:12,20 255:1 260:12 278:8,17,18 279:2,3 281:4 291:8 297:4,7 298:12 299:23,24 302:5 306:23 331:9 332:2,7, 10,16,18 393:19 474:25

**476:3** 509:19 564:25

**lawful** 315:16,19 316:10,12

**laws** 469:15

**lawsuit** 337:22 338:9, 24 339:15 341:3 425:15 462:12

**lawsuits** 426:2,6 427:7 437:25 438:11

**lawyer** 235:10 278:16 332:9 379:21 483:1

**lawyers** 244:23 245:15, 18 246:9,22 247:1 249:18 381:2 521:24

**lay** 231:20,25 338:4 385:12

**layer** 288:10

**layered** 302:10

**layers** 220:7

**laying** 394:13

**lead** 314:3 436:22 437:3 450:9 517:2,7

**leader** 225:19 231:10 234:4 266:4 414:17 450:9

**leaders** 266:19 327:3 352:11,22 353:1,6 375:4 376:16 404:18 486:4

**leaders'** 369:25

**leadership** 214:17 225:2 247:25 248:1,17 266:5 285:16 294:23 324:2 326:15 367:4 370:1 372:10 402:1 403:4 409:6,18 410:21 411:13 413:22 416:9 418:20 428:1,15 431:18 533:2

**leads** 218:18 230:23

**lean** 300:4 472:8

**leaning** 229:18 237:21 238:6

**learn** 244:8

**leave** 245:4,14 336:22

**379:17** 386:11 397:9 398:11 499:24 513:4 560:25

**leaves** 395:22

**led** 335:14

**leeway** 516:15

**left** 250:9 514:21 543:3

**leg** 364:23 371:11 397:24 558:3

**leg-breaking** 364:18 367:15 369:9 370:8,23

**legal** 223:8,19 235:2 245:15 260:24 278:9 281:12 331:12,13 332:21,25 333:13,21 349:2,6 351:6,8,12,23 352:7,11,13,15,18 380:8 395:15 425:7,23 475:23,25 476:13 509:1

**legality** 236:12

**legally** 332:4

**legitimate** 283:7 407:1, 12,19

**lets** 520:14

**letter** 226:15 415:12 435:20 538:9 551:4

**letting** 417:24 519:15 521:25

**level** 237:9 301:14

**leveled** 403:22

**levels** 526:23

**liaison** 336:6,10

**Libel** 269:18

**liberal** 535:17

**life** 247:14 252:20 263:11 298:6 473:7 497:11,16 498:7,13,23, 25 506:13 530:11

**light** 460:13

**lightly** 224:17

**lights** 460:12

**likes** 253:14

**limine** 214:5 215:2,15, 16 216:10,25 219:6 220:19 224:24 229:8 230:13 233:15 289:3, 10,25 295:21 414:13,23 441:7,15 446:7,13 454:19

**limined** 289:11,15,20, 25

**limit** 340:17 457:4 514:8

**limitation** 329:15 405:7

**limited** 215:4 222:24 500:2

**limiting** 215:6 217:6,13 219:18 221:12 223:1,2, 23 229:10 230:1 231:17 233:9,17 234:13 237:13 328:14,18,21 400:12,18 406:1,3,6 436:6 552:23

**limits** 215:7

**limp** 396:2

**lines** 322:6

**Linkedin** 481:25

**list** 212:14,17,19,20 213:5 215:22 225:12 318:21 326:16 328:1 354:11 451:17 456:5 490:8,14 513:15 559:24 560:16,21 561:11

**listed** 225:11 239:6 451:12 490:10,21

**listen** 244:14 245:12 303:7 304:10,19 305:7 312:25 366:1,21 403:24 408:17 504:24

**listening** 242:21 369:7

**literally** 376:21 421:6

**Litigators** 300:17

**live** 378:2,3 489:12 513:25 514:18 515:1,3, 5,9 558:4 561:6,7,12

**lives** 301:13 556:24

**living** 249:23,25 500:2, 8

**lo** 552:15

**loaded** 543:3

**local** 210:7 227:22 228:4,10 247:18,21,25 248:4,20,25 249:3 256:6 261:5 300:3,15 310:3 317:22 319:21 334:6 337:1 361:6,24 434:1 453:10,24 459:18 463:21 489:10 492:17 507:13 508:15 543:17 551:3,5 557:13 562:17

**locally** 433:25

**locals** 228:6

**log** 212:23 385:12 394:14

**logo** 465:1

**long** 215:3 226:15 255:20 276:12 360:22 361:3 389:17 474:15,17 482:7 508:3 516:21 520:19 522:11,20,25 539:2 561:23 563:8,11, 16,24

**long-term** 292:23 372:25

**long-time** 345:20

**longer** 237:6 260:7 275:8 336:17 469:3 519:12

**longstanding** 294:20

**looked** 334:8 338:20 341:11 368:19 381:11 404:6 426:7 523:14

**Lori** 453:21,24

**lose** 331:19 344:10 395:1 550:5

**loses** 237:24

**lost** 253:3,5 256:12,13 394:22 460:23 461:1,4, 5,6,9

**lot** 219:12 258:13 268:11 275:25 279:12 285:7 300:22,25 301:10,16 353:1,4 355:5 357:2 359:2 385:7 409:24 418:16 527:5,6,7 529:15 538:19 542:16 557:18

**lots** 278:9 359:1

**loud** 245:9 553:8

**love** 251:25 252:8 292:16 294:1 343:20

**low-level** 330:7

**lower** 491:9

**lunch** 377:25 378:9,11 379:3,6,7 448:16 564:11,12

**lunchtime** 563:20

**lungs** 242:8,9

**lying** 305:21 393:15 394:14

---

**M**

**Maberry** 281:9

**mad** 343:15

**made** 267:12 287:7 296:18 313:24 324:22 343:11,14,22 371:9 376:12 427:15,20 430:6 437:22 440:5 448:19,21 461:16 463:4 469:23 495:25 516:24 524:16 528:7,9,25 533:6 534:8 544:19 550:11

**maiden** 381:17 385:8, 13 390:18 394:11

**major** 459:2 460:1

**majority** 256:12 481:24

**make** 217:3,5,7 218:13 219:13,25 224:9 225:7 238:10 244:5 245:19 246:9,23 254:1 256:2 262:2 274:8 290:25 291:11 292:9 297:19 305:25 327:13,25 328:10 337:2 350:1 352:8,12 353:22 356:1 373:4 377:14 379:24 394:18 395:3 397:9 421:14 450:5 460:18 470:2 473:12 485:24 491:16 514:14 517:12 518:22 523:8 548:15 562:16,21 564:3,16

**maker** 294:25 414:13 415:16

**makers** 294:17

**makes** 260:23 263:8 270:1 282:13 302:2 305:18 390:5 415:23 473:11 493:3 504:22

**making** 213:25 214:2 230:2 231:2 233:21 247:10 270:25 278:2,11 290:7 322:23 328:9 331:12 358:22 367:24 368:21 376:9 413:8 414:24 487:7 510:2 529:1 544:22 561:10,13

**malicious** 282:9 283:14

**management** 222:1 224:15,19 265:12,13 266:7 270:12 288:11 330:6 336:12 337:9 357:3,4 359:15 370:7 373:22 374:7,20 375:10,20 398:4 400:3 402:4 403:16,20 404:5, 8,16 409:5,22 413:7,9 431:9,19 432:11 482:12,18 483:9,15,19 485:1,6 487:11,14 490:24 536:23

**manager** 249:9 286:15 287:18 388:24 401:22, 23 415:9 489:9,10,23 490:6,9,12 491:8

**managers** 336:24 489:13

**mandatory** 437:14,19

**manner** 279:22 298:9 509:1

**march** 227:14,18 248:25 249:11,14 259:24,25 261:4,16 263:2,7 271:16 285:19, 25 453:23,25 454:14 455:10 457:3 458:19,25 459:1,5,14,18,25 460:2, 7 463:17,24 465:3,10, 11,23 466:4,17,18 467:11,20 473:12 492:25 499:24 504:2,5, 11 532:22

**marching** 261:10

**margin** 361:15 394:23

**marginal** 229:22 354:6

**mark** 450:8 517:11

**married** 250:8 251:7,11

**marry** 251:12

**marshal** 214:24 557:25

**marshals** 558:2

**Masoni** 210:25 300:13

**math** 384:17

**Matt** 210:10 397:25

**matter** 220:10,14 264:23 287:25 297:4,6 319:24 321:18 325:4 396:18 397:5 402:14 414:7,12 421:16 428:24 446:18 484:17 512:7 534:22

**matters** 226:10 301:23, 25 302:1 331:19

**Matthew** 210:9

**Maureen** 284:18 287:16

**Mcdaniel** 343:18

**Mckeeby** 210:14 213:7 214:13 216:3,11 222:8, 9,13 224:5,10 226:25 227:1 229:4,5 230:5,7 233:11,12 239:4,17 240:15,17,18 277:24 278:3,25 279:5,7,10 289:18 291:16,18 295:12 296:15 298:5 307:23 314:19 319:2 321:23 323:19 327:17 328:20 353:13 360:10 363:21 385:18,21,24 386:13 387:6,14 388:1, 4,6,7 392:4,16 393:22 400:11,15 406:2 414:1, 11,16,20 415:14 429:22 436:5 440:24 441:2,6, 21,23 444:24 445:18 446:25 449:17 451:12 452:19 454:20 455:15 457:22 461:21 471:18 477:6 480:21 488:19 494:25 504:4 511:9,14

518:18 530:6 537:2,4
550:8 555:15 558:15
560:19

**Mckinney** 281:14

**means** 218:24 243:12
261:23 309:12,14
336:23 379:20 380:16
390:9 416:7 456:12
478:9 498:19 499:4
503:5 509:18 531:9
549:3,18

**meant** 311:6 338:14
376:17 507:2 523:13

**meantime** 380:6

**media** 224:12,18
243:14 244:10 248:16
263:17,25 264:9,13,24
265:18 266:18,21,23
267:7 268:19 271:12,20
282:4,9,19 283:8,18,20
303:1 355:13,15 359:16
371:7 399:13 400:2
402:6,23 403:17,20
404:2,19 424:15 437:22
440:17,18 443:10,18,20
444:4,11,15 445:5,11
449:12 466:11 481:22
482:1,7,19 483:11
485:23,25 487:6,11,21
488:11 493:14 494:11
495:25 529:14,24
530:20 531:16 550:5

**meet** 211:1 305:18
444:1,10

**meeting** 248:22 249:12
288:3 295:1,6 303:11
331:18 337:10,14,19
355:14 357:18,20
358:23,25 359:20
418:22 434:15 437:15,
19 439:5,25 445:8
453:11,14 463:21,23
464:2,18 492:18

**meetings** 305:4 337:1
440:7 441:16 453:22

**meets** 395:15 396:20

**Meggan** 211:4 281:5

**Melissa** 255:10,11,13,
14,16 539:4,18,19
540:5,10

**member** 218:14,16
261:19 266:1 274:14
275:24 283:2 291:23
304:22 310:14 311:10
312:1,5,8,9,13 313:13
321:3,17 324:21 348:8
349:1,12,19,22 350:8,
15 362:10,19 363:6,13,
15 364:10 365:1,20
366:12,14,19,23 370:7
374:18 375:11,19 398:3
402:12,22 411:19
413:22 424:15 433:17,
18,24 445:12 448:18
449:5 468:12 470:15
475:22 494:21 534:12
535:15,22 536:24
537:21 542:11,15 550:7
552:5

**member's** 537:14

**members** 227:13
248:20,25 266:9
274:10,12 311:15
312:15,16 321:6,16
325:1 334:10 337:9
347:4 350:7 355:5
362:15 373:21 374:11
403:17,19,22 404:1,3,5,
25 407:2 409:21 427:24
428:12 430:3,22,24
431:5 441:17 445:6
446:20 448:17,19
469:6,8,25 470:3
482:20 483:8,12,14
484:25 485:5,7,22
528:10 529:20,21
530:18 531:20,25
533:6,19 534:5 535:18
538:18 539:21 540:15,
16 543:21 550:16

**membership** 248:4
305:4 315:14 330:22
331:18 431:1,8 470:16
481:19

**memes** 526:23 546:25

**memory** 242:22,23,24
385:14 426:13,14,15

**men** 479:5

**mental** 223:10 226:8,14

**mention** 253:2,4
267:17 295:19 345:24
350:7 482:16 524:12

553:25

**mentioned** 302:21
389:19

**mentioning** 350:20

**message** 257:20,23
261:22 264:11 355:19
356:2 423:16 424:12
467:9 468:9,24 469:13,
17 472:5,11,12,13,14,
15 473:5 474:6 480:25
481:12,21 483:5 485:19
486:1 488:12 493:2,24
495:11 502:11 503:13
512:2,3 521:19 524:7,
16 525:3 532:15 540:21

**messages** 248:1,8,10,
16,18 249:3,6,8 256:22
257:10,11 424:4,10
450:3 467:13 469:1,19,
23 470:11 492:15
494:6,18 500:15 525:7
527:7 536:20 537:12
547:20 552:25

**messaging** 243:15
533:21

**messenger** 249:4
467:15 472:13,16 473:4
511:6 512:4

**met** 267:24 286:15
444:18 446:22 486:4

**Mexico** 556:25 557:1

**mic** 364:4 386:22
391:11 553:11

**Michael** 210:25 288:12
291:20 300:13

**Miche** 215:24

**microphone** 310:8
401:9 497:8

**middle** 282:20 292:14

**Mike** 266:24 293:24
355:14,17,19,21,24
356:2,22 358:4,6,7
361:4,5 366:15,18
371:17,19 398:2,3
399:6 401:22 407:5,20
408:4 415:11 444:6,10
445:8 483:22 485:10
486:5,9

**Mike's** 399:1 486:15

**Mikes** 355:20 372:9

**milage** 455:24

**miles** 556:1,8,9 558:1

**mind** 237:25 246:15
280:12 284:25 302:25
398:25 415:23 426:4
429:19 523:12 554:25

**mindful** 514:8

**mine** 445:12 470:4,14
543:10

**minority** 408:22 412:3

**minute** 254:5 261:13
265:20 307:14 365:18
425:21 452:8 453:10
528:6

**minutes** 241:9 272:15
307:13 308:13 380:5
452:7 461:16 512:15,23
520:19 554:8

**miscellaneous** 557:11

**mischaracterizes**
501:4 504:5,14 536:9

**mischaracterizing**
419:1

**misdirection** 268:11

**misleading** 230:13

**misrepresentation**
393:10

**misrepresenting**
417:21

**missed** 450:8 478:17

**missing** 334:12 446:3
464:13

**mistake** 545:20

**mistakes** 305:25

**mistreatment** 283:15

**mistrial** 392:19

**mistyped** 497:6,25

**misunderstood** 290:5
527:8

**misuse** 368:25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 386 of 403   PageID 14210

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                    Index: misused..objecting

**misused** 368:22

**mitigate** 295:23 297:5

**mitigation** 295:20,22
296:2,17

**mix** 211:18 212:15

**moment** 210:16 234:17
267:18 282:12 341:20
398:17 401:7 433:2
474:9 522:7 544:10

**money** 228:12 254:18
259:21 260:19 262:4
277:9,20 320:4 323:5
502:7 503:15,24
505:10,13 508:24,25
509:11,16,25

**monitor** 405:13

**monitoring** 487:15

**month** 482:2 492:25

**months** 271:21,22
272:5 335:5 525:8

**moral** 259:13 542:18

**morals** 542:20,21
551:22

**morning** 212:4 238:2,8
240:24 300:9 307:1
309:22,23 324:22
341:16 360:8 385:10
400:14 432:25 449:16,
20 455:17 462:24
475:19 554:21 556:12
562:13 565:4

**Morris** 210:15 281:3

**motion** 215:2,15,16
216:25 219:6 220:19
224:24 229:8 230:13
233:14 414:13,23
441:7,15 556:7,18
561:22

**motivation** 286:17

**motive** 222:12,14,16
225:24 231:11 234:5

**Mountain** 364:14,16
369:16,18 370:5
371:21,23 372:6 398:4
399:1 420:14,20 483:22
484:10 485:11

**mouth** 298:20 303:15
401:10 411:11 464:14
472:8 497:8

**move** 249:17 299:8
308:3 310:8 314:15
318:15 327:15 341:14
353:11 360:6 400:10
420:10 432:22 449:12
451:9 455:13 462:23
479:14 480:14 488:15
499:16 527:10

**moveable** 308:5

**moved** 253:9

**movement** 330:21
335:14

**moving** 262:21 314:11,
14 405:16,19 517:24

**multiple** 220:6,8
281:20 287:13 386:10

**murder** 262:5 448:15
476:25 493:4 503:12,14
504:20,23 505:2,10,13
508:20,24 509:12,16
510:23 511:1

**murderer** 503:7,17

**murdering** 510:17

**muted** 435:17

---

**N**

---

**named** 417:16

**names** 433:20 458:20

**Naomi** 436:17,22
444:1,4 491:25

**national** 219:9 255:6,
15

**nationwide** 228:6

**natural** 301:11

**nature** 422:6 438:12
491:4 493:21 519:2

**needed** 268:1 338:14,
18 352:19 368:13
376:21 409:3 436:5
491:15

**negative** 365:11,22,23
366:4,5,8 367:2,9

418:13

**negotiate** 431:20

**negotiated** 315:8
430:8,10,14 450:8
475:13

**negotiating** 257:1
430:10,14,18,19 437:1
443:6,12 444:3,19
445:7 492:1,2,5,7

**negotiations** 376:3

**negotiator** 314:3
436:22 450:10

**negotiators** 551:5

**neutral** 367:9

**Nevada** 249:10

**Nevarez** 258:17 259:4
270:14 325:8 344:21
348:21 350:5 351:18
352:14 364:13,19
367:22 368:8,20 369:8,
9 417:15 423:14 424:9
429:11 433:15 437:14
451:2 484:25 485:4
513:24 515:18 532:12
534:11 545:19,25
546:11 552:7 553:2
555:14,23 556:13,21
557:9 560:3 561:2,20

**newer** 460:12

**newscast** 244:15

**newspaper** 227:2
244:13

**nexus** 261:11,12,13
271:2,3,11,13,14,16,19,
24 273:8,19

**nice** 449:1,5

**night** 212:7 451:15,16
555:20 559:5,19

**nine-and-a-half**
250:17

**Nineteen** 480:19,20
481:2

**noise** 245:9 385:21

**non-member** 234:3
236:14,16,18 248:5
330:24 336:18,25

343:20 349:15

**non-members** 237:2
403:23 445:14

**non-similarly** 214:4

**nonetheless** 534:12

**noon** 379:2 564:2

**Northern** 241:21

**note** 217:7 230:2
327:25 383:12,16
384:10 395:20 487:10

**note-taking** 242:20

**notes** 242:19,21,24,25
243:1 267:13 477:14

**notice** 249:15 379:2
559:10 562:21

**notion** 394:8

**notwithstanding**
387:21

**nouns** 407:14

**NRDC** 459:16,21

**number** 228:20 250:19
289:8,10 314:17 372:9
393:7 480:18

**numbers** 435:24

**numerous** 269:15
355:20 376:15 403:19
404:18 421:17 440:6
529:13

**nut** 498:21

**NW** 408:16

---

**O**

---

**oath** 309:3 313:4 322:8
346:20 359:24 375:15
386:19 397:15 426:9
468:1 475:6,14

**object** 295:18 328:13
362:19 367:17 392:18
422:3 500:6 516:8,13
525:18 534:20

**objected** 237:3 247:24
304:25 320:7,9 327:2

**objecting** 517:25

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 387 of 403   PageID 14211

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 2 July 06, 2022                    Index: objection..original

**objection** 214:9 226:21 228:22 229:3 230:9 237:12 238:1 278:19 288:14,15 290:18,20 291:4 295:18 296:7 298:18 306:9 309:10, 12,14 314:18,19,20 318:16,23 319:2 321:23 323:19 328:17 329:4 332:5 333:6,11,12,22 337:24 338:12,21 339:2 342:6,12 350:1 353:13, 15,21 354:10,17 356:15 360:10 369:21 373:6 376:24 412:11,19 413:25 416:21 417:2,20 418:9,25 419:16,23 420:9 421:20 422:1,24 429:22 431:23 432:13, 24 439:7 441:2,13 442:9 444:21,24 445:18 449:17 451:13,18 452:19,20 455:15 459:6 463:8 466:20 471:18 472:20 474:20 475:24 477:6 478:4,14 479:7, 13 480:2,21 481:1 482:21,25 483:24 485:13 486:10,18,21 488:18,19 494:25 497:19 498:15 499:1,7, 10 500:11 501:3 502:13,23 503:18 504:4,13 505:3,15,18 507:14 509:3 510:7 511:9,13 516:25 518:2 523:17 525:20 527:17 529:4,10 530:2,22 531:1 532:1,6 533:7 534:25 535:4 536:8 537:2,24 539:22 540:17 545:3,7,21 546:1 547:18 550:8

**objection-wise** 480:16

**objectional** 516:25

**objections** 213:10,12, 14,18,20,23 214:1,2 219:17,22 223:22 227:7 229:16 237:18,20 238:2 278:6 288:20 295:13 296:13 298:15 327:16 341:15 360:7 400:13 405:25 406:5 419:20 427:7 432:25 449:15,22

**objector** 236:16 248:5, 9 260:5,9,10,22,24 273:22 312:10 313:18, 23 336:3 343:20 353:3 374:15,17 375:11 402:11,22 403:13 542:2,3,11

**objectors** 232:18 234:3 236:2,15,18 274:5 330:22 331:3,8, 13 335:15 337:21 403:18 404:24 482:20 483:12,15

**objects** 233:14 535:16

**obligated** 286:2

**obligation** 254:25 260:13 261:3 263:21 278:8,10 402:15 404:25

**obligations** 537:22 538:1

**obscene** 259:11 493:20,22,24

**obtain** 557:23

**obvious** 399:3,9,16

**occasions** 295:6

**occurred** 293:20 496:1 547:13

**October** 402:18,19

**off-the-record** 482:17

**offending** 530:13

**offends** 283:16 510:22 511:1

**offensive** 501:22,25 510:18 522:8,15,21 523:6,15

**offer** 293:5,9 296:19 405:11 436:15

**offered** 220:9,13,14 223:3 225:16 230:3

**offering** 416:19 421:15 450:15 457:4

**offers** 305:8

**office** 252:13 302:18 316:24,25 317:2,5,17, 19 318:11 346:1 423:21 528:18 535:14 539:20 546:7

**officer** 210:3 241:10, 12,14 256:6 266:2 270:13 308:16 325:10 326:12 358:16 383:6 396:9 424:1 452:16 521:6 543:14 545:18 552:7 565:6

**officers** 326:5,10 335:7 344:5 358:15 423:24 438:1

**offices** 256:14

**official** 311:24 434:23

**officially** 337:18

**officials** 302:17

**older** 388:19

**one-sided** 465:20

**one-way** 469:12

**online** 244:13 275:4,5 494:3,13,22 495:9 496:14 500:4

**open** 240:23 246:15 249:19 278:22 279:5 291:14 299:16 306:18 329:7 340:20 342:9 354:14 378:23 415:25 422:21 442:23 447:21 455:1 458:2 462:7 472:17 507:5 508:8 518:22 554:16,25

**opened** 299:20 442:2, 18 472:13,15 473:5,24 474:1

**opening** 238:13,15,19, 23 239:5,8,13,24 240:11 245:19,22,24 246:19 249:17 270:1 299:7,11 300:2 306:22 389:20 441:7 521:22

**openings** 296:5

**operating** 358:16

**opinion** 276:8 362:3,5,

10 420:1 468:10 534:18 544:3 546:17 550:17 553:6

**opinions** 367:5 487:25

**opponent** 428:23

**opponents** 428:18 429:11,14 431:20

**opportunities** 408:21

**opportunity** 231:11 246:3 287:23 288:6,9 289:2 291:22 295:5 515:1 558:16

**oppose** 469:15

**opposed** 265:8 273:8 327:5 365:9 407:18 428:1,15 431:10,17 449:9 471:2

**opposes** 367:3

**opposing** 248:13 531:18

**opposition** 222:6 285:6 429:7

**opt** 312:10 313:17 365:15

**opted** 323:5 331:17 337:17 349:8 365:3 366:13,15,16,22,24 539:1 540:12

**option** 386:25 387:1 418:18 490:10

**options** 292:9,10 304:21

**orchestrate** 395:25

**order** 219:14 240:12 250:3 431:10 447:11 513:9,17 515:16 555:24 556:6,14,17 557:12 559:25

**ordered** 238:17 544:13

**orders** 315:24

**organization** 503:15

**organizations** 228:13 229:2

**original** 294:25 355:19 356:2 524:18

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 388 of 403   PageID 14212

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022            Index: originally..personally

**originally** 524:9

**out-of-court** 220:9
225:15 421:15

**out-of-town** 558:23
559:11

**out-of-towners**
559:17,21 560:18

**outcome** 340:6 341:3
447:4

**outlines** 490:8

**outspoken** 425:6

**outstanding** 487:4

**over-the-top** 269:14

**overlap** 387:21

**overrule** 233:1,7
237:12 309:13 353:25
354:10 360:14 421:19
422:1 433:5 449:21
527:22 535:3 537:9
546:1

**overruled** 223:22
306:11 422:23

**overrules** 339:25

**overruling** 219:17
290:17 291:4 298:14
299:2 342:5 406:4

**oversees** 330:12

**owned** 422:7

———————

**P**

**p.m.** 565:7

**packing** 412:5

**page/line** 561:11,13

**pages** 250:19 314:8
360:22 423:6 471:16,21
542:24,25 543:1 551:14

**paid** 274:22 275:8
301:18 335:16 463:24
464:9,11,15,17,22
494:21 495:7 499:24

**paragraph** 224:14
315:22 398:9 495:22

**parent** 228:3,8,22

**Parenthood** 250:20
252:13 260:1 261:7
456:21 458:23,24
459:4,15,22 460:1
503:24 504:3,6,12

**parents** 249:24

**Parker** 211:13 453:22
513:12 514:2 560:6
561:20

**Parrott** 258:17 259:3
319:13,19 320:16 321:9
323:17 348:25 377:15,
17,19 451:5 513:25
560:5 562:16 563:3
564:10,14

**Parrott's** 323:11

**part** 245:2 249:12 253:7
276:16 289:5,18,19
301:19 322:10 335:24
339:10 341:12 355:3
358:23 359:20 374:4
388:23 389:3 393:10
397:4 403:11 423:11
436:25 440:15 441:21
443:5 458:24 459:1
464:3,15 465:10,11,15
479:17 493:24 510:25
517:15 521:24 524:1
529:21 541:5 544:9,17

**partial** 395:5 456:5,10
457:7

**participate** 227:14
331:20,22 359:21
410:25

**participated** 259:23
284:15 492:24,25

**participating** 391:4

**participation** 285:24

**parties** 214:25 243:25
244:22 246:22 303:18
387:24

**partly** 280:22

**parts** 406:22

**party** 212:18 227:12,24
228:10 245:19 285:13

**pass** 232:16

**passenger** 443:17,20,
23

**passion** 265:5

**past** 272:5 276:19
343:16 390:4 442:9
467:13 486:3 523:11

**path** 297:3 457:18
555:22

**patience** 212:1

**patiently** 562:18

**patrolling** 235:17

**pattern** 232:17 255:17,
18

**Paulo** 210:14 279:10

**pause** 234:17 379:4

**pay** 254:18 255:8
260:11 275:23 276:19
321:1 336:9

**paycheck** 320:18
321:20 322:2 325:13

**paying** 260:20 276:19
321:21 322:3,24 323:4
535:16

**payroll** 285:16 322:6,
11

**pays** 255:3 535:16

**peep** 555:14

**pen** 213:4

**penalty** 253:23

**Pending** 353:14

**people** 214:25 229:21
232:20 243:8 244:21
252:2,5 253:9,14,15
254:1 256:13 257:16
258:15,25 259:2,21
260:21 261:5 262:11
263:2 264:14,15,19
265:9,18,25 266:20
269:5 270:11,19,23,25
271:8,15 272:18 274:5,
18,19 275:13 277:20
284:19,23 286:7,13
287:14 302:22 309:17
313:25 317:24 324:19
334:7 335:15 336:14
345:3 347:5,15,16,18
369:20 371:8 374:7,21
375:11 376:10,15
399:13 400:1 408:17

409:5 416:6 418:16,19
428:3,15 431:16,17
433:13 442:11 446:21
450:25 451:3,5 462:11
463:16,20,25 466:15,18
468:24,25 485:18
489:20 490:8,11,21
491:21 498:23 502:6,14
528:21 531:11,18 542:6
548:7 551:9

**people's** 418:5

**percent** 257:4 258:21
358:22 394:23 431:6

**perception** 282:11,22
283:10

**peremptories** 395:7

**peremptory** 395:8

**perfect** 253:13,17

**perfectly** 237:23
276:24

**period** 225:21 293:23
303:16 368:4 528:24

**periods** 529:14

**permission** 308:9

**permit** 243:5 308:6

**permitted** 296:10

**perpetrate** 508:24
509:12

**Perri** 433:17

**person** 253:14,15
256:1 261:23 267:2,12
281:14 305:20 313:18
349:20 370:17,18 373:1
384:16 461:6 471:16
489:13,15,17 491:4,19
510:19 514:14 557:14

**personal** 257:23
269:23 271:7 273:20
276:8 301:10 347:14
369:19,25 373:9 399:2
419:11,14,18 420:2,13,
14,18,21,22,24 422:6
469:4 486:15 487:10
495:24 496:15 497:25
533:11 534:15

**personally** 388:22
496:23 497:11,15

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                    Vol 2 July 06, 2022                  Index: personnel..praying

498:2,6 507:23 508:23

**personnel** 244:4 307:7 451:23 512:21 554:23

**persons** 244:1

**perspective** 214:16 280:18

**petition** 258:10,14,20, 23 259:1 266:3 275:3 302:20 432:3,18 433:11 436:18,21 450:18 476:15 494:22 529:22

**petitioners** 529:2 530:19

**petty** 255:23

**phone** 243:14 244:11 562:17,22

**photograph** 463:20

**photographs** 281:23

**photos** 543:2

**phrase** 275:5,12 339:5 344:1 428:22 495:14

**phraseology** 506:21

**phrases** 409:20 438:20

**pick** 212:10 259:5,7 378:10 379:5 551:18 564:14

**picked** 553:10

**picket** 365:3,10 366:25 367:12

**picture** 269:25 272:13, 22,25 424:23 465:8,22 467:6 541:4

**pictures** 238:22 261:4, 8 262:23 282:24 463:5, 15 466:4,15,18,24 519:25 524:13 525:4 526:23

**piece** 409:13 456:9 497:23

**piercing** 228:23

**pin** 332:6

**pink** 460:4,6,14

**pivotal** 516:18

**place** 234:25 235:2,8 244:16,18 327:3 357:18,20 403:3,6 429:20 440:8 494:11 547:9

**places** 301:12,16

**plaintiff** 210:10 211:8 245:25 246:4 249:19 303:17 304:11,17,20 305:7,25

**plaintiff's** 239:7 305:17 314:23 319:6 328:4 342:15 354:20 360:18 401:2 406:11 423:3 433:8 449:24 453:6 463:10 481:5 489:2 528:2

**plaintiffs** 393:1

**plan** 231:11 342:5

**plane** 262:16 460:19 496:2

**planned** 250:19 252:13 259:25 261:6 456:21 458:23,24 459:4,15,22 460:1 503:24 504:2,5, 12

**planning** 342:3

**plastic** 273:1

**platform** 482:1

**play** 239:23 240:2,4 408:22 412:2 472:12,18 473:3,25 474:5,7 499:21 518:13,18 519:4 520:10,11,12,14,15,17, 23 521:22 522:7,18 524:2

**played** 524:3

**playing** 440:2 472:15 473:22 474:3 499:22 511:7 523:22

**plays** 408:25

**pleased** 482:1

**pleasure** 543:11

**plenty** 447:14

**plexiglass** 279:9

**plotting** 424:14,18

425:2,3 518:5

**podium** 299:8,11 300:2 308:1 386:13,15 521:14

**point** 210:17 214:3 219:1 223:17 237:8,10 238:15 256:15 259:12 260:4,6,14,22 262:2 270:2 276:5,7 290:13 297:7 301:2 313:9 326:18 337:5 356:1 366:16,22 377:11 388:10 392:5 394:20 395:9 399:20,24 401:17 409:13 417:8 419:13,14 427:14 446:7,13 450:16 454:19 467:13,19 468:6,23 473:11 506:19 516:24 525:3,13,15 526:7 527:2 529:8 535:23 545:23 548:15 554:2,5 557:22 559:15

**pointed** 216:11 305:2

**pointing** 546:15 551:7

**points** 260:15 297:4 391:15 468:22

**police** 274:19 479:6 495:17,20

**policies** 238:25 239:12 267:8 280:9 281:21,23 293:16,18 316:4,13 460:17

**policy** 224:18 239:13 263:17,25 264:9,13,15, 19,25 265:18 266:22,24 267:7 268:19 271:12,20 282:5,6,10,13,14,16,17, 18 283:8,13,19,20 294:12 303:1 403:17,21 404:2,19 416:4 443:10 444:4,11,15 460:21 475:3 482:7,9,11,13,19 485:23,25 487:6 488:12 489:19 490:5,7,22,23 493:14,16 530:20 550:5

**political** 260:18 320:1, 3,5 321:1 322:4 327:6 460:18 493:4,10 535:17

**politics** 255:6

**poo** 532:21 533:1

**pooled** 391:24

**poor** 510:5

**portion** 520:11 534:20

**position** 216:4 220:3 253:17 256:6 270:3 272:17 317:18 318:4,7 348:4 358:8 402:1 403:4 409:6 411:13 418:18 464:4 477:1 491:9 492:3 497:18

**positions** 335:8 361:14,20 441:17 490:10,21

**positive** 365:22 367:9

**possibly** 304:7 560:6,7 562:10 564:3

**post** 262:22 272:11 273:20 282:23 343:11, 13,22 344:16 348:15 421:22 425:16 437:22 465:16 470:20,21 479:25

**posted** 248:16 271:7, 17 282:3 351:9 371:10 438:10 465:22 466:9,24 467:4,6 511:3 546:10

**posterity** 424:11 425:22

**posting** 224:17 282:19 466:15

**postings** 248:2

**POSTMAN** 295:13

**posts** 220:8 223:2 229:15 261:4 275:1 421:7 423:6,7 437:23 465:14 469:23,24 470:3

**potential** 230:22 409:17 456:5 481:23

**power** 256:11 502:10

**Powerpoint** 281:16

**practices** 442:10

**praise** 348:7

**pray** 252:7 279:16 535:15

**praying** 543:24 548:9 551:22

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 390 of 403   PageID 14214
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                              Vol 2 July 06, 2022              Index: preached..Pryor

preached 276:11

preaching 251:16

preamble 519:21 522:3

precipitated 256:23
539:16

precision 559:5

predicts 553:3

preface 239:19

prefer 516:3

pregnant 250:5,17
253:3

prejudice 214:1,24
230:13 233:19 237:9
441:13

prejudicial 222:18
236:7,8

premier 457:9,10
459:2,5,13,19 504:11

prepared 368:13

presence 243:6 245:3

present 223:9 226:14
245:25 246:3,4

presentation 229:21
292:5

presented 223:2
245:22 293:1,13 410:8
539:24 545:23

preserved 353:22

presided 288:3 291:20

presidency 468:22
471:4

president 220:15
231:9 242:6 248:14,21
249:3,5,7,13 256:15,19
257:12 261:24,25
262:3,10,18 263:5
264:6,10 271:6 273:22
274:4,11,14,15,22
276:6,8 280:6 286:16,
25 287:3 303:4 310:3,6,
11,14 311:10 313:12
316:17,20 317:6,7
324:21 330:5 348:22
355:24 357:9,19 362:9,
18 365:6 366:11 367:15

402:18 412:6 433:14,15
450:18 470:13 483:13,
20 486:5 490:17 495:6
502:11 507:13 508:15
529:19 536:6,21 541:21
542:9 545:19

president's 450:3
480:25 481:12,21
485:19 486:1 488:12

presiding 241:24

press 245:8

presume 353:23
563:12,17

presumed 313:21

presuming 388:13

pretending 313:25

pretty 211:21 265:3
301:11 319:11 330:4
388:13 409:9 443:16
448:11 557:17 560:15
562:18

preview 279:1 299:22

previous 304:13
357:21 363:12 368:19
494:18 501:4 527:20

previously 214:6
288:16 295:18 315:24
344:5 522:6

primarily 471:7

primary 294:25

prior 216:25 234:11
286:22 295:2 461:25
462:10 527:15

prioritization 513:17
515:16 558:19

prioritize 514:16

prioritized 514:13

priority 515:4,9

private 249:3,6 261:22
346:13,15,18,21,22,23,
25 371:16 404:17
423:16 424:4,10,12
485:5 512:2,3

privately 484:25

privilege 332:23

333:24 425:12

pro 261:6 298:6 496:23
497:3,11,15,16 498:2,7,
12,13,19,23,25 499:4

probation 253:22

problem 226:13 232:3
249:23 258:11 273:15
310:23 334:23 374:7,21
385:16 421:13 457:6
487:25 556:5

problematic 375:12

problems 254:3
334:20,21 425:24

procedure 242:14
244:25 557:10

proceed 309:19 329:16
332:11 333:3 356:20
453:4 508:10

proceeding 290:13
339:25 340:1 557:11

proceedings 277:25
278:22 288:21 291:14
295:15 299:16 306:7,18
309:17 328:6 329:7
339:7 340:20 341:25
342:9 353:18 354:14
377:7 378:23 414:5
415:25 421:4 422:21
441:4 442:23 445:24
447:21 454:9 455:1,21
458:2 461:14 462:7
506:4 507:5,17 508:8
516:6 552:20 554:16
565:7

process 287:9 289:19
292:18 303:11 338:16,
17,19 348:2 435:8
440:15 544:19

procured 453:24

produced 345:5
356:14,17 557:15

product 539:5

profession 508:6

professionals 488:1

programs 244:17

progress 487:7

promote 497:1

pronouns 407:14

proof 415:16

proper 315:25 516:12

properly 231:3 245:3
393:16

propose 430:21

proposed 430:6

prosperity 424:21

protect 277:10,12,13
280:24 286:17 302:5
431:10 537:14,17,19,22
544:11

protected 259:16
305:12,15 311:13,17
337:22 362:12 438:9,17
439:5,17,22 476:19
500:23 534:17 535:10,
21 536:6,14,25 537:15
538:13

protecting 441:17
506:13 537:21

protection 277:15
312:10

protections 303:20

protesting 252:13

protocol 378:17
395:24

proud 541:3

prove 246:25

provide 227:20 238:18
285:25 464:8

provided 239:7 464:6
524:21

province 538:2

proving 305:19

Pryor 210:11 238:15,17
239:22 240:6,10 241:1
249:19,21 277:23
288:13,17,24 289:9,12,
14,22 290:5,17,24
291:3,5,10 295:17
296:25 297:6,23 298:2,
6,14 299:20 306:9
307:17 308:23 309:21

310:10 314:7,12,15 315:1 318:14,18 319:7 322:1 323:23 327:9,11, 13 328:5,8,13 329:3,17, 20 332:12 333:8,10,15 334:1 338:2 339:20,23 340:10,16 341:1,13 342:16 343:1,4 344:18, 19,22,24 349:24 350:4 353:10 354:11,21 356:21 358:17 359:10, 11 360:5,19 362:23 363:3,4,18,22 364:5 370:4,14,15 373:11 377:1,9 378:6,13,18 383:23,25 384:6 386:5 389:15,16,25 390:16,21 393:9 397:16,19,25 398:1,8,13,20,23 400:9 401:3 404:11,12 405:8, 11,15,18,21,23 406:12 412:15,18,22,23 414:3, 7,18 415:2,21 416:2,24 417:10,23 418:3 419:6, 19,24 420:6,11,25 421:11,22 422:8,13 423:4 430:1 432:2,16, 21 433:9 435:9,11,13, 18,20,25 436:2,10 437:5 439:10 441:14,22 442:2,20 443:2 445:3, 21 446:1,15 447:10,17 448:1 449:13 450:1,12, 15,17 451:8,14 453:4,7, 16,17 454:7,11,24 455:5,6,12,23 456:12, 16,19,23 457:9,12,17, 20,24 458:4,6,9 459:12 461:13,16 462:3,17,21 463:11 465:6,7 467:2 471:20 473:1 475:4,10, 12 476:5 477:9,13,24 478:2,7,15,17,19 479:11,18 480:5,10,11, 14,19,25 481:6 482:24 483:2,4 484:1,6,13 485:16 486:13,21,23,24 488:15 489:3 495:3 498:1,18 499:3,10,12, 16,18 500:16 501:8 502:18,25 503:2,10,20 504:1,7,9,18 505:5,7, 17,19,21 506:1,3,6,14, 22 507:1,9,19,24 508:1, 5,13,14 509:6,9,10 510:9,12 511:20,22

512:12,16 513:20,24 514:5,17,24 515:6,20 516:2,17 517:9,13,15 518:3,7,12,17,20 519:1, 7,9,15,20 520:2,4,16, 21,25 521:13,21 522:1, 3,5 523:20 524:4 525:24 526:16 527:10, 12,17 528:3 529:7,18 530:8,10,15,24 531:13 532:4,8,9 533:8,13 535:5 536:12 537:7,13 538:5,6 540:1,23 545:5, 15,24 546:3 547:24 548:3 550:11,13 552:18,22 553:9,12,17, 23 554:3,6,11,14 557:7 558:14 559:24 560:21 561:7,22 562:12 563:1, 4,8,16,22 564:17

**public** 282:11,22 283:3, 9 346:15 368:15 373:4 376:4,7,13 377:2 400:6 427:13,15,17,20,22 428:7,8 438:11,16 470:8,10

**publically** 376:22

**publication** 227:23

**publications** 539:11

**publish** 314:24 319:4 342:13 354:18 360:16 400:24 422:25 433:6 435:22 449:22 481:3 488:23 527:24

**publishing** 406:9

**pull** 464:14 473:5 523:2

**pulling** 218:8 341:19 480:23

**pulls** 250:18

**punished** 266:21

**punishment** 446:4

**punitive** 277:19

**purely** 303:21

**purple** 456:14

**purpose** 215:15 290:4 298:1

**purposes** 236:7 518:12

**pursuit** 303:9

**push** 211:13 373:24

**pushed** 392:3

**pushing** 212:5

**pussy** 262:25

**put** 226:16 233:2 250:4 256:11,14 258:18 271:15 296:20 300:8 306:15 307:15 313:17 317:2 318:4 327:3 332:6 346:2 368:2,12, 15,23 369:5 378:16 385:21 394:5 417:18 420:4,7 423:22 424:2, 22 434:18 435:1 450:13 465:19 506:15,16 508:18 509:22 511:4 515:12 521:25 559:18

**puts** 216:4

**putting** 368:11

---

## Q

**queso** 325:5,11 326:3 416:19

**question** 216:9,15 309:10,13,15 310:22,24 312:20,24 313:1,2,21 323:20 332:13 333:14 338:11 340:14,15,23 349:13 357:23,24 366:1 368:6 375:6,14,18,21 378:2,3,5,10 383:3 385:15 393:11 395:10 401:15 403:24 412:13 413:11,17 417:3,5,22 422:9,14 426:9 431:13 442:17 443:1 444:22 446:16 447:15,24 449:8 454:21 455:4 462:15,18 476:6 477:12 479:10,17 484:23 497:22 500:12 501:5,6,7 502:19 503:22 504:21,24 506:14,15 507:8 509:4 510:25 511:19 513:1,8 516:25 517:10 519:17, 21,24 528:19 530:16 537:6,10 538:4 545:8, 10 546:2 547:25 548:25 558:7 560:24 561:4

562:5

**questioning** 397:18 466:10 522:2

**questions** 242:14 309:7,9 313:6 338:11 366:7 381:1 382:7,14 384:11,12,24 385:16,17 386:1,3 387:2,3,8 388:8 389:15 390:24 397:17 408:19 437:24 446:12 508:4 516:22 517:17 522:4 558:10

**queued** 521:20

**quibble** 328:20 505:22

**quick** 398:19 512:10 513:6 561:4,20

**quickly** 471:3 522:17

**quiet** 305:5

**quit** 250:3 260:5,10 293:8 404:1 500:8 505:13 508:25 551:6

**quitting** 260:14

**quote** 438:21 439:20

**quoting** 526:21,22

---

## R

**rabble** 257:6

**race** 411:18,22,24 412:4

**radical** 548:5,13,16

**radicalization** 549:3, 18

**radicalized** 549:17

**radicalizing** 549:2,7

**radicals** 548:15

**radio** 244:14

**raise** 290:9 297:8 306:9 547:17 550:19

**raised** 227:2 230:12 239:8 295:18 296:4 338:12,20 387:8,19 404:6 478:15

**raising** 547:11

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 392 of 403   PageID 14216

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022              Index: ramifications..relevant

ramifications 349:7

ran 255:9,10 316:17,23 418:21 441:6

rank-and-file 218:16

rare 541:12

rattled 335:1

reach 246:14 407:2

reached 246:24

reaching 236:24

react 408:17

reacted 374:25

reaction 222:5 260:1

read 214:9 244:13 246:20 247:3,7 267:4 274:20 282:6 315:8 316:7 325:12 361:8,22 366:19 374:4,9 383:16 399:17 401:8,19 406:21,22 407:10 408:5,7,18 411:4 412:6 425:21 474:6,9 488:12 499:21 514:1 526:2,4,5, 10 534:2 542:15 548:22 551:16 555:22

reading 364:15 407:21 526:7

ready 277:3 401:14 472:2 500:25

realize 234:24 506:7 522:21

realized 471:4 474:18 497:6 519:10 522:7,14 523:6,15

reask 442:25 508:11

reason 239:12 253:4 258:6 285:12 292:7 348:7 396:19 427:4 432:10,12 435:6,7 457:3

reasonable 296:19

reasonableness 296:17

reasons 224:23 228:17 230:12 236:21 274:18 276:17 399:3,9,16

rebuttal 246:4

recall 213:24 219:23 220:16,22 222:2,5 225:19,23 231:10 234:4 248:15 258:10,14,20,22 266:1,3,18 270:19,23 275:2 302:20 321:12, 13,14 357:15 372:13 382:4 387:17 398:5 403:1 428:11 429:3,16, 17 432:3,10,18 433:10, 13 434:7 436:18,21 438:19 440:2 443:18,22 448:6,8,13,14,25 450:18,21,22 470:23 476:14 483:16 484:2 486:14,16 494:22 500:1 512:5 520:13 522:11,24 525:9,13,16 529:1,22 530:19 531:10,15,19 543:5

recalled 450:25 451:3, 6

receive 282:17 330:23

received 257:11 320:24 326:8 345:14 355:5 364:21 367:14 373:13 421:24 446:4 467:7,9,13 468:11 471:25 472:3 491:20 494:19 495:5 511:23 525:11 547:3

receiving 224:16 262:17 416:5

recent 472:14

recently 368:8

Recess 241:11 308:15 380:22 383:4 452:15 520:8 521:5

recognize 292:19 315:3 342:20 360:23 363:7 384:8 390:9,19 401:4 423:10 481:10,22 487:23 517:16

recognized 390:13,20 457:1

recognizes 357:8

recollection 243:2 406:20 428:22 429:9,10 430:7 448:5 457:14

458:18,22 495:4 504:16 526:21

recollections 384:22 391:14

record 247:8 290:25 309:16 328:9,10 353:23 358:12 371:6 379:9 383:17 385:22 418:9 420:5,8 425:10 445:11 486:16 554:21

recording 324:11 433:16

redirected 446:8

reelected 361:15

refer 287:2 366:3 407:20

reference 278:7,11 493:4

referenced 320:11

references 279:2

referencing 282:25 350:5 357:18,20

referred 288:2 398:3 427:25 428:14,18

referred-to 314:22 319:5 328:3 342:14 354:19 360:17 401:1 406:10 433:7 449:23 453:5 463:9 481:4 489:1 528:1

referring 325:14 335:4 350:13 355:22 365:21 366:11 407:8,10,18 408:11 422:4 429:14 460:11 540:2 543:19

refers 367:15

refrain 315:16 316:10 445:20

reframe 507:8 525:23

refresh 226:18 457:14 458:22

refreshed 458:23

refusal 296:18

refused 444:5 537:11

refusing 293:9

regard 327:25 484:5 547:12 557:20

regret 542:13

regrouping 437:1

regular 436:23

regulations 315:24

rehash 301:2

reimbursement 255:21 260:18 330:23

reinstated 434:20 435:7 440:22 442:4,19 443:3 553:21

reinstatement 293:6

reiterating 399:20

rejected 257:4 258:13 430:25 431:2,5 435:6 437:2,13

relate 225:1 230:10 527:3

related 289:7 297:13 339:4 351:9 425:9 526:24 547:3 552:13

relates 250:12 263:19 273:13 414:19 546:22 559:16

relating 492:21 549:5 550:15

relations 219:9 287:17, 19 490:1,2 491:25 492:4,10

relationship 254:7 255:2 260:8,25 372:25 412:25

relationships 347:15

relatives 243:8 259:7

release 296:1

relevance 213:25 215:8 222:21 225:10 226:12 227:3,6,9 229:16,22 230:8,13 233:19 354:6,7 413:25 441:2,13 444:24 478:5 505:4,16 510:7 550:9

relevant 214:23 217:20,21,23,25 221:17

222:15 225:22 226:2,12
227:15 231:8,13 232:20
236:21 247:6 279:3
327:23 328:14,22,23,25
329:12,13 354:12
400:20,21 415:19
441:11,20 446:17,18
462:2,11 505:5

**relief** 557:19

**religion** 263:19 279:19
280:1,12 284:9 295:25
477:2

**religious** 250:13
252:17 263:10 267:15,
20 268:6,18 269:11,16,
20 271:6 277:11
279:13,14,18,21 284:5,
10,16 286:10 294:15
296:9 476:23,24 493:5,
11

**reluctant** 359:13

**rely** 242:24 244:6

**remains** 340:8

**remedies** 558:9

**remedy** 556:6

**remember** 226:17
253:16 278:16 279:2
338:14 354:3 364:22
387:16 389:17 402:10
426:7 429:19 438:25
439:18 448:15,16
467:25 474:12,23
511:20 528:14,15,16,23
529:3 531:14,24

**remembering** 426:11

**remind** 229:19 300:11
521:15

**reminded** 224:17

**reminder** 278:24

**remorse** 294:4

**remorseful** 292:19

**removals** 318:2

**remove** 336:14 434:11

**removed** 317:18,19,20,
24 318:8,11 335:7
423:24 434:17 438:1
445:6,9

**renew** 229:16 532:6

**repeat** 311:8 312:20
313:1,2 413:17 435:10,
12 548:25

**repeated** 298:2 495:24

**repeatedly** 376:13
477:17 522:24

**repeating** 477:18

**repercussions** 411:16

**repetitive** 393:23
412:17

**rephrase** 321:25 419:5
431:12 432:17 459:10
472:23 502:17 504:7
545:2

**replied** 410:13

**report** 214:10 230:10
274:7 354:4 413:20,24
414:8,12 415:6 416:3,
10,13 451:14 475:22
489:18,20,22,24 490:1,
5,8,11,15,18,24 495:17,
18

**reported** 214:17 221:2,
3 225:20 249:8 274:5
304:9,16 413:7 415:5
468:11 476:12 493:18
495:19 529:23 531:6,21

**reporting** 226:4 231:10
264:18 274:17 414:24
530:19 531:11,24

**reports** 230:23,25
274:15

**represent** 279:10
330:25 337:13,19 434:1
437:14 439:11 483:10

**representation** 214:19
216:13,22 339:24
414:14 439:13,15
442:12 444:7 446:10
564:4

**representative** 210:25
211:4 247:22 281:6
300:13 336:25 337:8,
12,13,15 438:5

**represented** 260:12
303:12,16 331:8 335:17
337:23 338:22 413:4

443:5,14 530:10

**representing** 247:19
376:9 434:4 447:13
548:16

**represents** 366:18

**reprimand** 430:4
449:10

**reprimanded** 270:22,
23

**reprimands** 274:16

**reputation** 283:9

**request** 223:5,11
320:23 321:17 323:10,
12 331:12 333:21 406:2
536:19,22 544:9,14,17
556:11 560:14

**requested** 525:10

**requesting** 236:2
332:21 333:4

**require** 214:24 245:13
295:23

**required** 293:15
301:15 352:23 353:2
490:18,20 491:11

**requires** 295:23

**reread** 497:10

**rescind** 292:13

**research** 244:12,20
307:8 379:13 451:24
512:22 554:25

**researched** 238:6

**reservation** 292:13

**reserve** 396:2

**reset** 241:5 437:12

**residents** 361:12

**resign** 330:22 334:22

**resigned** 248:3 317:25
318:1 335:7,16,18

**resist** 229:6

**resolution** 214:20
223:20 487:3

**resolve** 245:15

**resolved** 445:17

**resounding** 361:12

**respect** 216:2 221:5
250:15 282:19 283:23
285:2 286:5 287:21
301:15 321:6,8 488:1
559:11

**respectful** 516:10

**respects** 217:20 305:1
546:11

**respond** 221:14 257:18
297:8 322:21 325:16
336:19 399:25 409:25
415:2 416:17 442:6
544:22 556:6,16

**responded** 248:19
257:19 324:24 400:5

**responding** 226:3

**responds** 325:11
369:11

**response** 214:10 219:5
220:1,11,12 222:7
225:17 227:20 228:1,7
231:6 233:24,25 236:11
239:3 296:14 297:20
325:4 326:22 335:20
402:24 418:13 421:10,
18

**responses** 249:6

**responsibilities** 353:7

**responsibility** 254:22
280:21,23,24 294:8

**rest** 275:9 361:11
551:22 562:1

**restrained** 315:12

**restroom** 523:2

**result** 214:23 254:20
270:25 282:14 284:1
416:5 432:3,4,7 467:7
487:18

**resulting** 487:12

**resume** 397:17

**retaliate** 476:14,17

**retaliated** 304:11

**retaliation** 216:22

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 394 of 403   PageID 14218
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 2 July 06, 2022                    Index: retaliatory..send

231:13 232:6,9 236:10

**retaliatory** 225:24
234:5

**retire** 243:20

**return** 495:23

**reveal** 269:6 321:20
341:7

**revealing** 322:3 373:3

**review** 258:25 525:25

**Ricci** 231:1,9 232:5

**Ricks** 434:8,10

**rid** 258:14 264:16
265:18 266:6 343:21,24
344:1 351:11 410:23
444:5

**ridiculing** 334:7

**rife** 302:21

**right-to-work** 469:15

**rights** 269:10 277:12,
13 295:24,25 296:18,24
302:8,11 303:7,9,19,20,
21 305:12,15 321:6
337:22 496:25 497:2

**righty** 234:20 521:11
555:12

**ring** 389:21

**rise** 210:3 241:10,12,14
307:4 308:16 379:14
383:6 396:9 397:11
451:25 452:16 512:24
521:6 555:2 565:6

**rises** 237:9

**risk** 232:4

**Riven** 433:18

**Rivera** 215:25

**RLA** 216:22 225:24

**roam** 300:7

**Rocky** 364:14,16
369:16,18 370:5
371:21,23 372:5 398:4
399:1 420:13,20 483:21
484:9 485:11

**role** 285:24 287:20

348:6 355:3

**rolling** 382:16

**room** 246:13 307:21
325:23 328:1 378:12
380:14,15,19 386:11
391:1 513:2

**roost** 548:8

**rotates** 557:4

**roughshod** 441:6,14

**round** 564:13

**rouser** 257:6

**routinely** 326:5

**row** 211:10

**RTW** 331:15

**rule** 234:10,18 235:17
271:19 296:7 298:8
309:10 353:15 377:13
380:16 463:1 517:23
527:16

**ruled** 214:16 222:19
223:15 297:14 441:12
446:19

**rules** 242:17 315:24
331:25 438:13 471:15
516:12 548:15 549:4

**ruling** 221:10 226:11
228:20 229:8 231:19
239:22,25 289:21 290:1
291:3 295:21 297:17
360:11 441:7 447:8
462:10,19 478:17
505:22 527:20 553:24
558:2

**rulings** 211:13,19
216:10,25 223:14
234:11 328:10 461:25
513:10,18

**run** 240:19 241:8 284:7
316:19,24,25 423:20
559:22

**running** 317:1,5,7
328:17 329:3 441:14

**rush** 252:2

**Rutherford** 513:13
514:22 515:3,4,8,9,13,
14 558:21

─────────────────
**S**
─────────────────

**sake** 241:5

**salaries** 260:21

**salary** 254:14 274:24
464:3

**Sam** 433:18

**sanctioned** 311:16
312:4

**sarcastic** 351:4

**sat** 392:7 562:17

**satisfactory** 378:4

**satisfied** 303:25

**satisfy** 560:14

**savannah_silver@
txnd.uscourts.gov.**
565:3

**save** 237:19 245:5
252:10 424:11,21
425:22 510:6,15,21

**savvy** 346:17

**scab** 364:18,23,25
365:2,5,11,21,22 366:3,
8,12 367:6,13,16
369:10 370:9

**schedule** 556:23

**schedules** 558:24

**Schneider** 267:12
268:20,25 284:18
286:14,20 287:5 288:3
292:1 294:24 532:12
559:3 560:11,17,19,22
561:16 562:5,9,12
563:23 564:19

**Schneider's** 276:2

**school** 250:9 381:5
383:19,20 384:2,5,7
387:12,22 388:20
389:17 390:9

**scope** 214:23

**scoured** 530:21

**scrap** 561:12

**screen** 319:12 342:22,

24,25 356:11 363:12
397:21 398:21 424:9,11
427:15,16,19 428:9
453:10 524:10 532:14

**screens** 398:18 435:16

**scroll** 272:15 401:12,13

**Scrolling** 224:2

**search** 244:18

**seat** 309:6 386:20

**seated** 210:4 242:2
308:20 383:7 393:11,16
396:12 397:14 453:1
521:12

**seconds** 289:16
328:12 474:10,12,14,
17,19,21 501:2 519:3,4,
8,11 520:18 521:22
522:10,12,18,19,23
523:21,22 524:2

**secret** 345:11 346:11,
14,15,16,18,25 374:19
399:21 418:24 423:11
424:17 427:13,18,21
428:13 430:3 533:19

**secretary** 324:11
433:16,17 545:18

**secure** 398:15 557:24

**securing** 558:6

**security** 210:3,16,18,
19 241:10,12,14 308:16
383:6 396:9 452:16
521:6 565:6

**seek** 257:15 352:18

**seeking** 351:12 352:7
437:6 487:3

**segment** 462:13

**select** 470:7

**selection** 300:18 385:8
521:16

**send** 257:14 261:18,19,
20 262:11 324:16,18
330:19 335:2 336:1
355:4 418:6 424:22
468:23 469:2,23
470:11,17 491:3,18
510:4 524:25 525:1,10,
12 536:4,6,13,20,23

537:11 555:24 564:23

**sending** 248:8 256:21 276:3,5 280:17 285:2 292:20 294:12 324:20 376:2,5 403:8 409:4,15, 16 411:15 417:9 418:12 419:14 424:7 468:25 498:5 525:18 537:19 542:8 544:7 552:8,24, 25

**sends** 261:17,18,24 267:4 272:2 321:9 324:13 348:15,24 364:10,13 370:18 412:24 485:11 542:19

**senior** 217:18 220:20 221:25 265:13 266:25 267:2 345:20 359:14 373:21 374:6,20 375:10,19 398:3 400:3 401:21,23 402:3 413:7, 9 483:8

**seniors** 255:15

**sense** 238:10 305:18 352:8 379:24 394:18 395:3 517:12 559:1 564:16

**sensibilities** 510:22

**sensitive** 521:17

**sentence** 349:16 398:24 407:16,21 408:5,13 545:13

**separate** 228:11 285:11,13,21 320:15 507:22 508:2,4

**separation** 228:12 309:8 358:11

**September** 248:3

**serve** 237:4 331:21 334:19 336:17 337:18 397:3

**served** 247:21

**service** 243:10,16 395:16 397:6

**services** 486:5

**serving** 242:10

**session** 241:22

**set** 224:24 233:14 322:11 346:17 408:6 470:25 555:24 556:17

**setting** 346:14 555:25

**settings** 346:24 460:13

**settlement** 339:16,18 340:7 341:7,8,10

**severe** 283:15

**sexually** 448:2,7,12,17

**shackles** 557:25

**shame** 542:18

**shaming** 443:17,21,23

**shared** 465:16

**sharing** 373:14

**she'd** 323:3

**sheer** 535:17

**shock** 357:10 370:7

**shocked** 294:5 372:13 398:2

**shocking** 357:14 370:12

**shoe** 510:1

**shoes** 506:12,16,17 510:2

**Shop** 231:9

**short** 303:23 426:4 514:20 520:2

**shortly** 467:14

**shot** 339:17 424:9,11

**shots** 282:1 427:15,16, 19 428:10 524:10 532:14

**shove** 373:24

**show** 223:8 239:21 240:20 269:25 272:23 275:11 281:18,19,24 284:3 285:4 286:6 287:10 293:8 296:10 302:15,20 303:14,21 304:5,14 305:10 319:8 343:6 405:14 423:6 447:12 456:23 466:13 477:20 481:7 510:17

535:18 549:6 555:24,25 556:3,6,13,17 559:22

**showing** 225:20 227:15 229:1 239:15 240:7 294:4 457:7 478:9 539:11

**shown** 246:12 283:5 393:16 416:18 441:18

**shows** 231:11 236:14, 17 262:19 457:2,9 466:9 473:11 551:22

**shuffle** 292:5

**shut** 271:1

**side** 223:8 243:24 245:6 287:24 288:5,9 291:23 303:2 336:7 372:12 390:10 437:4 492:7 501:24

**sidebar** 217:12 223:15 235:4,5 237:22 238:5,9 277:24 278:1,5,21 288:19,22 291:13 295:16 299:15 306:6,8, 17 328:7 329:6 339:5,8 340:19 341:17,23 342:1,8 353:16,19 354:13 360:12 377:5,8 378:22 414:6 415:24 419:22 421:2,5 422:20 441:3,5 442:22 445:25 447:20 454:10,25 455:22 458:1 461:15 462:6 463:2 477:22 505:25 506:2,5 507:4, 15,18 508:7 515:24,25 516:7 527:16,21 534:25 552:21 554:15

**sidebars** 237:23,24 328:9 516:10

**sign** 282:17 296:23 320:13 442:4

**signal** 223:13

**Signatures** 302:21

**signed** 258:20 383:21

**significance** 245:21

**significant** 275:17 277:8,20 407:2

**signs** 261:5

**Silver** 564:24

**similar** 214:2 215:19 216:9 224:10 284:20

**similarly-situated** 214:4 221:23

**simple** 219:15

**simply** 286:4 337:14 487:14 500:24

**Sims** 288:12 291:20,25 292:8,23 293:2,24 294:3 415:11 513:12 514:22,24,25 515:2 560:7,10

**sincerely** 280:14

**single** 305:20 355:6 419:17 442:14 535:25

**sir** 311:2 313:5,8,10 320:22 333:19 338:12 375:17,23 397:18 398:6 399:5 401:7 411:25 440:4,12 453:13 475:8 484:23 554:11

**sisters** 388:19

**sit** 292:6 380:16,18 390:3,12 459:17 558:4

**site** 448:18 466:11

**sites** 487:15

**sits** 383:14

**sitting** 365:20 409:10 523:14 557:3

**situated** 214:4

**situation** 224:22 252:15 269:5 392:14 422:3 454:18 477:3 478:12 506:17 508:17 510:14

**situations** 312:1

**Sixty-six** 488:17,22

**skimmed** 401:16

**skip** 561:20

**skipping** 408:13

**slate** 256:5 317:10,11, 12,14

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 396 of 403   PageID 14220
CHARLINE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022            Index: sleep..standard

**sleep** 251:12

**slew** 410:1

**slide** 308:9

**slime** 414:23

**slip** 255:21

**small** 260:18 330:23
388:13 391:8

**smaller** 251:19 388:14

**smart** 244:11 548:6

**smiling** 253:15

**Smith** 255:10,11,13,14,
16 539:18,19

**Smith's** 539:4 540:5,10

**snapping** 522:19

**social** 224:12,18
248:16 263:17,25
264:8,12,24 265:17
266:18,21,23 267:7
268:19 271:12,20
282:4,9,19 283:8,18,20
303:1 355:13,15 359:15
371:7 399:13 400:2
402:6,23 403:17,20
404:2,19 424:15 437:22
440:16,18 443:10,18,20
444:4,11,15 445:5,11
449:12 466:11 481:22,
25 482:7,19 483:11
485:23,25 487:6,11,21
488:11 493:14 494:11
495:25 529:14,24
530:20 531:16 550:5

**solely** 244:6 301:21

**somebody's** 526:22

**son** 253:1,3

**Sonia** 383:13,21 384:18

**Sonya** 217:19 221:4
267:1,3 329:21 330:1
336:10 355:14 356:22,
23 401:21 406:14 413:1
415:9,10,12,13 420:14
491:18,24

**sonyalacore@gmail**
420:16

**Sonyas** 357:2 359:2

**sooner** 548:9

**sort** 378:14 382:6 386:9
390:25

**sorts** 564:25

**sought** 352:10

**Sound** 452:12 515:19

**sounds** 350:13 386:2
399:20 452:8 551:12

**source** 244:9

**Southwest** 210:7,13,
15 213:11,16,22,25
214:7,21 217:15,18
219:20,21,24 221:1,16,
18,25 222:22,24 223:25
224:2,3 225:25 226:22
233:13 238:17 239:3
247:17,19,23 248:11
249:11,14 252:24
253:16,20 254:1,7,9,11,
13,16,17 261:9,14,15,
21 262:7,9,11,23
263:15,25 264:4,16
265:12,13,15 266:7,20
267:2,11 268:10 270:12
271:9,17,25 272:9,12,
18 273:3,11,25 274:3,
16 279:6,11,15 280:13,
23 281:5,21 282:24
283:4,7,22,24 284:3,6
285:10,17,20,21,23
286:1,4,23 287:6,11
288:10 292:16 293:9
294:14,21 296:8 300:24
301:20 302:11 303:1,6,
10 304:9,17 305:21
307:23 310:15,19
311:5,11,22 312:18,22
313:15 314:4 315:4
316:13 318:24 322:6,12
327:24 328:15,24
329:1,13 330:3,4,11
331:2 335:10 336:2,5,6,
11,13,20 337:9,19
339:1 345:4,16,21
353:13 355:20,25 356:3
357:3,8 358:8 359:15
360:9,10 369:20,24
370:1,8 372:10 373:21
374:7,19 375:4,10
376:16 386:4 387:2
388:4 391:25 400:2,14,
22 401:22,23 402:2,4

403:16,20 404:8 406:8
409:5 410:15 413:6
414:9,19 416:3,11
431:9,19 433:1 436:21,
23 437:4 438:12,22
440:5 443:7,16 446:8,
11,12 447:5,10 449:18
454:4,5,11,13 455:7,9,
15 460:7,16 461:9
462:1,11,25 464:6,8,25
466:5,16 468:18 475:1
476:4 482:2,6,12,18
483:9,11,14,19 485:1,5
486:4 487:12 488:8
490:7,21 492:1,2,3,7,
12,16 495:19 496:2
500:3,8 523:10 524:24
525:6 528:10 530:7,12,
19 531:6,21 532:11
536:4,7,14,23 537:5,20
540:7 544:6,8 556:20
557:12 563:19

**Southwest's** 214:15
217:24,25 220:15 222:4
225:23 264:12 280:9
281:10,12 282:4,11
283:12,23 291:24
293:15,18 416:4 446:7
447:7

**souvenirs** 426:21

**Spand** 231:1,9 232:5,8

**spans** 408:16

**speak** 228:24 244:2
301:22 302:25 310:1
332:24 339:13,14 392:2
477:3 479:22 502:10
563:18

**speaker** 251:21,24,25
252:4

**speaking** 271:9 288:20
419:19,22 437:24
459:10 497:24 534:24
547:21

**speaks** 353:9

**special** 380:17

**specialist** 376:11

**specific** 278:13 391:10,
13 401:17 404:5 438:19
525:9 529:16 531:23

**specifically** 214:13
218:4 231:3 283:21
296:9 304:15 374:8
384:21 456:21 559:10

**specificity** 526:14

**specifics** 402:5 531:10

**speculate** 419:25

**speculating** 419:25

**speculation** 373:7
419:17 431:24 432:14
506:9 533:7

**speech** 259:17 262:6,9
263:18 269:15,16,20
270:9 278:11,13,14
280:1 295:25 304:12,13
500:24

**spend** 259:21 262:4
562:7

**spending** 508:25
509:15 514:7

**spends** 320:4

**spewed** 538:10

**spewing** 411:11
429:15,18

**spirited** 265:5

**split** 448:10 509:5,7

**spoke** 333:16 334:24
367:18,21 409:3 417:8

**spoken** 286:16 295:1
368:7 477:4

**sponsor** 285:20 459:2,
3 504:12

**sponsored** 259:25
261:6 504:11

**sponsors** 456:5,6
457:2,8,9,10 458:18
459:5,13,19 460:2

**spouse** 243:7

**stance** 482:12

**stand** 226:16 252:1,2
257:21 292:11 306:16
307:2,15 309:2 379:18
506:10

**standard** 240:22 490:4,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 397 of 403   PageID 14221
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022          Index: standards..supporters

5

**standards** 278:9

**standing** 252:6 272:11, 24 477:12

**standpoint** 260:16

**Starr** 241:24 338:13

**start** 212:21 213:2 215:23 223:18 275:20 301:5 307:3 319:9 343:20 511:7,19

**started** 273:14 381:16 390:15 472:15 473:22 538:10 540:22

**starting** 242:5 248:7 310:4,7

**starts** 218:11 223:19 256:20

**state** 223:9 309:24 331:16 345:11

**stated** 348:13 371:25 376:13 420:23 426:22 438:10 444:13 475:17, 20

**statement** 224:11,21 225:15 245:19 313:24 394:15 405:4 421:15 440:5 471:9

**statements** 220:9 245:20,22,24 246:19 249:17 299:7 409:1 413:9 441:8

**States** 241:20,23 332:16,19

**stating** 351:10 485:1

**status** 214:10 248:8 354:4 515:9

**staunch** 534:5

**stay** 300:8 305:5 471:5 558:25

**stellar** 253:24

**stem** 302:14

**stems** 339:3

**Step** 288:8 289:2,4 290:4,6 291:19 292:8, 15 293:2 294:1 295:7

303:11 306:10

**Stephensen** 249:9 532:11

**stepped** 292:20 532:20,25

**steps** 303:8,13

**Stevenson** 489:4,7 490:12 491:12

**Steward** 231:9

**stick** 222:22 366:17 370:12 429:19

**sticker** 273:11

**sticking** 297:17

**stipulation** 247:12 256:21

**stipulations** 246:20,21 247:3 249:16

**Stone** 217:19,21 220:15 231:1,9 232:5,8, 15 234:1,23 236:1,14 237:1,6 248:8,14,18,19, 21 249:3,5,8 256:14,17 257:12,14 258:4,16 259:3 262:14 263:5,12 264:10,22,23 273:22 274:4,21 275:10,12 279:24 280:5 281:24 282:2 285:3 286:16,25 287:2,7 288:1 292:3,21 295:2 303:21,24 304:16,20,22 305:5,11 307:17 308:24,25 309:4,25 310:2,3 333:23 345:7 379:17 397:15,20 415:5,17 419:18 433:14 450:24 467:8,12,17,19,21 468:2,4,5,8,14,20 469:2,3,18,22 470:2 471:2,13,22 507:10 512:2,5 513:4 541:6,10, 23 555:8 560:3 561:24 562:25 563:5,13,20 564:13

**Stone's** 222:1,5 236:17 249:9,13 257:22 276:2, 8 284:15 303:2 379:5

**stood** 251:21 252:4 338:21 441:8

**stop** 266:10 320:19 351:18 403:8,12 409:4 417:8 418:17 504:20 505:2 508:21 509:15,20 510:17 522:22 526:7 554:6

**stopped** 474:8,11 519:10 522:8,15 523:1, 15

**stopping** 487:20 554:1

**story** 250:12 287:24 288:5,10 291:23 302:10

**straight** 426:4

**strange** 383:9,10

**strategy** 429:2 560:13

**straws** 273:7

**streamlines** 246:23

**street** 261:10

**strenuous** 418:8

**stress** 336:11

**strict** 224:18

**strike** 356:19 391:20 392:5,11 393:6 479:14

**strikes** 391:18,24 393:18 394:1

**striking** 392:23

**string** 319:10 329:18 360:21 364:21 546:9

**strings** 428:14

**strong** 259:12 262:5,6 265:3,22 508:21

**stronger** 265:22

**strongly** 392:18 487:1

**struck** 391:16,22 393:1 394:16

**struggles** 222:1

**struggling** 220:15

**stuck** 362:13,17,18

**study** 251:18

**stuff** 343:17 355:2 368:23 371:17 409:4 416:17 417:9,13 526:24

535:17

**stumbled** 487:14

**subject** 319:24 339:16 406:18 446:13 447:6,7

**subjected** 503:6

**subjective** 482:12

**subjectively** 264:14

**Subsequently** 524:24

**substance** 553:6

**substantial** 308:2

**successful** 254:2 275:3

**sue** 269:2,5

**suffered** 277:4

**sufficiently** 417:4

**suggest** 392:18

**suggested** 352:14

**suit** 303:17

**sum** 244:20

**summarize** 294:10 425:17

**summarized** 517:18

**summary** 415:15

**summer** 355:15 357:21

**super** 561:19

**supervisor** 489:11,25

**supervisors** 489:14

**support** 250:5 257:15, 16 273:13 337:14 365:15 411:12 416:15, 19 469:14,18 470:21 497:1 502:7 504:2,10

**supported** 248:15 251:10 258:18 263:2 348:12 416:13,14 499:23 503:14,23

**supporter** 266:18 348:14 354:25 365:1 370:17 401:21 409:15 411:15

**supporters** 265:10 534:6 538:10

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 398 of 403   PageID 14222
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 2 July 06, 2022                    Index: supporting..termination

supporting 263:6
321:10 323:13 347:13,
16 503:12

supportive 345:25
346:2,6,8 348:8

supports 256:8 262:5

suppose 470:18

supposed 251:12
347:25 379:21 395:18
414:25 415:7,8 454:16
523:4

suppress 544:3

Surely 364:22 369:5

surprised 467:22

suspension 253:22

sustain 226:21 228:21
309:12 350:3 412:14,16
414:2 415:1 419:23
420:3 432:1 445:2
479:16 502:16 505:6,
18,19 529:6 536:11
538:3

sustained 321:24
333:25 338:1,13 369:23
416:23 419:3,5 420:9
429:24 432:15 439:9
444:23 445:19 459:9,10
471:19 477:8,11,23
478:6 480:4 482:23
485:15 486:12,20 495:2
498:17 499:2,9 504:8
511:18 516:22 517:22
518:1 523:19 525:22
532:3,7 538:4 539:25
545:4 550:10

Suzanne 249:9 489:4,7
490:12 491:12 532:11

SWA 315:7 551:17

swear 240:21 241:18
322:7 468:1 475:20

swore 475:13,18,19
527:5

sworn 241:19 242:12
309:4 556:3

sympathetic 394:7

synopsis 453:11

T

table 281:3 292:5 308:4
338:19,20 380:18

tabs 213:2 217:4

tactics 548:7

takes 274:17 305:24
506:10

taking 228:6 234:25
235:2 236:19 247:13
272:17 299:10 362:14
394:15 401:18 411:17
477:1 494:11

Talburt 211:13 217:17,
22,24 218:1,9,15 234:3
270:14 345:19 347:19
348:15 354:23 355:9
359:13 364:10,15
372:22 374:18 401:20
406:14 410:19 412:24
413:20 416:3 419:4
423:14,18 428:25
439:11,16,22,24 440:13
443:3 446:23 483:19
484:11,24 486:9 491:21
513:11,21 550:4 551:19
552:5 560:2 562:24

Talburt's 370:17
397:23

talk 212:9 213:10,14
214:8 217:8 225:13
226:16 235:9,11 243:13
254:4,17 261:11,12,15
267:6 268:9,10 271:2
280:5 281:17 282:4,12,
20 283:12 289:3 293:11
294:13 302:24 307:6,7,
20 312:15 325:5 332:22
375:8,19 378:25
379:11,12,21 386:23
391:7 395:18 404:21
425:11 444:14 447:15
451:22,23 452:4,5
456:24 461:20,22
477:15 494:1 496:15
512:19,20 515:18 521:1
531:7 554:22,24 555:5,
13 560:8

talked 235:25 251:21,
22,24 252:5 260:8
266:24 267:1 268:3

279:25 288:1 296:5
303:10 326:3 378:19
397:23 400:5 439:19
441:24 461:7,10 483:17
521:16

talking 218:2,12 222:1
228:5 230:21 235:3
250:11 277:18 278:12
280:1,2 287:25 288:25
296:8 318:18 331:1
345:9 350:12,17 359:3
362:17 363:1 364:17
367:25 368:4 369:13
373:16 374:17 377:2
386:11,12 399:10,13
402:21 407:5 408:6
409:17 411:8,17 412:3,
5,25 416:7 418:19,20
420:12 423:7,15 424:24
435:17 442:9,11 444:25
446:4 470:18 486:9
494:15,25 496:4,17
502:14 504:24 507:11,
21 508:16 526:19
531:18,22,23 533:5
537:7 538:11,17 539:9,
19 540:5,24 542:15
543:13,18,25 548:10
550:21 552:1,10 561:5

talks 267:6 485:10
486:14 537:4 539:18

tangential 229:15,19

target 258:19 265:18,
19,21,23 380:5 399:13
403:17 404:2 416:6
426:18 427:9 482:19
483:12

targeted 408:19 409:20
410:21 491:21

targeting 266:3 400:1
402:22 483:15 485:6,10

teachings 247:14

team 266:17 291:24
301:19 319:22 321:16
324:2 326:14,15 327:2
346:9,11 347:3,15
348:9 368:12 388:24
389:7,11 391:15 392:1
417:16 418:20,21,22
421:23 422:4,10 423:7,
12 424:2,14,16,17
427:13,24 428:12,25

430:3,10,14,18,19
431:10,15 437:1,7
441:17 443:10 444:3
445:6,12 446:20 448:2,
16,18,19 449:5 450:8
483:7 492:1,3,5,7
529:19 530:18 531:19
533:6,19 534:14 539:10
540:15 541:4,5,13,15,
17 542:14 543:14
546:13 550:7 552:5

teams 437:12 558:5
561:6

technical 281:14

technology 243:12

telephone 244:11

television 244:15

telling 266:7,25 272:16
331:24 337:5 346:16,21
357:9 365:21 366:15,20
372:1,13 374:18 375:15
382:17 417:18 459:17
473:22 484:20 485:22
494:19 495:5 529:25
530:17 542:21 544:12
549:1 552:9

tells 282:18 332:9
477:2

temerity 367:16

ten-minute 451:20

tense 226:14

tentative 432:4,7
436:24 437:2,13

tenure 247:23 409:8

term 330:11 364:25
365:2,5,7,13,16 366:3,
4,8 376:6 428:3

terminate 284:4 286:8
292:1 294:14,19

terminated 280:11,15,
16,20 281:1,20 285:5
294:11 440:19 442:3,18

termination 220:21,24
221:6 222:10 248:5,11
249:15 282:14 283:11
284:2 285:1 286:22
287:22 292:12,14 304:8
414:21 415:12 440:16

**terms** 282:7 284:9
316:1,4 339:17,18
387:10 393:18 402:5,14
512:8 558:24

**terrible** 259:15 264:13,
15 479:21,24 485:23

**terribly** 255:4 503:6

**test** 228:17 395:15
396:20 503:11

**testified** 333:23 415:11
421:23 447:3 485:14
503:20 518:21 519:3
522:24 539:4

**testify** 372:16 417:21
441:12 517:3

**testifying** 338:15 350:1
416:22 439:8 459:7
472:21,22 477:6 479:8,
14 482:22 483:1,16
498:16 502:14 503:19
511:16 516:11 529:5
539:23 540:18 547:19

**testimony** 234:24
235:1 240:7 242:21
243:3 244:19 246:1
290:2 322:8 338:6
359:24 372:4 379:6,23
380:9 419:1 475:6
485:17 501:4 503:21
504:14,16 517:18 519:6
528:8 547:2 557:18,23
558:5,7

**testing** 503:20 547:24

**tethered** 299:12

**Texas** 241:22 249:24

**text** 553:5

**Thee's** 530:4

**theft** 302:17

**theme** 439:24

**theory** 219:7 305:17
441:19

**thick** 461:19

**thing** 210:19 268:15
269:16 273:1,24 275:15
293:7 299:6 306:21
321:11 350:6 351:24
361:13 368:11 371:4

382:18 387:19 416:25
417:1,17 429:17 474:2
478:21 518:24 551:15
552:8

**things** 211:19 216:5,11
219:14 225:13 255:6
259:15,22 264:20
269:3,19 270:6 275:20,
21,25 276:4 300:20
311:15 323:13 343:15
345:5 353:1,4 370:21
395:19,22 401:17
403:8,14 409:24 422:4,
6 424:20 426:1 427:8
429:20 439:21 447:14
491:6 492:14 494:15
496:17 501:16 523:5
526:11,21 527:1 528:17
531:6 533:18 535:25
540:13 542:16 544:16
546:25 547:5 548:6

**thinking** 251:9 268:25
269:2,3 381:12,13
390:15 420:8 425:19
431:15,25 455:4 515:3

**thinks** 353:3 390:4
500:6 520:10

**Thirty** 289:15

**Thom** 343:18

**Thompson** 324:9,10
344:12 349:20 368:21
417:16 433:16 534:10

**thought** 255:5,7 288:24
294:17 296:23 336:2
343:17 351:21,23
352:17 354:4,12 363:1
367:7 375:18 384:15
390:5 403:21 409:7
419:9 424:21 426:23,
24,25 446:18 484:21
499:4 504:19 505:8
506:17 508:5,23 509:11
517:17 522:11 541:9,12
546:24,25 558:12

**thoughts** 269:7,8
393:8,21 398:25 487:24
557:5

**thread** 324:7,14 370:22

**threat** 275:11 350:2
408:24 416:9 493:25
494:1,2,5,14 495:15,20

496:9,12,14 500:10
534:8

**threaten** 266:5 275:13
413:22 510:19

**threatened** 274:20
302:3 303:3 344:5,7
349:21 545:13,18,19

**threatening** 304:16
349:1,18 350:6,11,14,
16,24 364:22 413:21
493:21

**threats** 495:25 496:4,
16 534:6

**three-line** 517:7

**three-week** 287:12

**thrilled** 323:13

**ticket** 418:21

**tie** 434:16

**tied** 421:7

**tilt** 307:25

**time** 213:13 219:13
224:15 225:21 227:17
229:22,23 230:2 234:19
237:19,25 245:5,13
260:4 265:11 277:4
287:1,2,18 288:11
292:18 303:16 308:23
309:18 311:7,9 319:21
321:11 323:14 324:12
328:9 330:2 336:10
338:15 352:9 354:8,12
355:23 356:14 357:21
358:14 363:6 364:18
366:19 367:15 369:3,9
370:9 378:6,7 380:5
388:10 391:9 398:20
408:8 409:2,24 410:21
412:12 418:23 425:8,16
426:3,4,12 430:2
436:16,23 440:10 443:6
444:2,18 445:6,12
449:12 450:19 452:10
454:23 455:8 464:2
466:16 467:11 468:2,8
471:4 481:17 482:7
489:8 490:23 507:13
512:6 514:6,8 522:20
524:15 525:9 528:12,
13,24 529:13,25 531:12
532:23 533:1 539:2

540:7 541:24 542:12
543:18 553:20 554:6,9
556:16 559:16 560:9
561:23 562:1 563:21

**timeline-wise** 211:16

**timelines** 556:10

**timely** 547:7,8,10 548:2
550:21,24

**times** 253:21 274:25
319:16 440:6 491:3
495:15

**timing** 235:10,11

**Tina** 363:5,6,7,8,10

**Tinas** 363:9

**tired** 343:16

**today** 239:16 254:2
273:17 279:9,13 280:22
305:15 313:4 318:21
325:21 338:22 381:15
385:4,6,7 389:23
390:14 397:7,11 455:24
459:17 461:10 513:16
544:18,25 555:16 559:7

**Todd** 433:14

**told** 267:25 274:10
306:21 333:20 346:20
349:20 351:17 358:18
367:23,24 368:2,4,12,
16 369:1,2,5 371:14
382:8 386:24 395:19
399:12 409:3 417:8,11,
12 418:11 425:17 438:5
439:4,21 476:9 484:17,
20 499:4 522:6 523:5
546:20

**tomorrow** 554:13
555:7 561:16 562:5,23
563:23 564:20,21

**tonight** 555:18 556:16

**tool** 355:16 359:16
471:6

**tools** 243:12

**top** 212:9 237:15 262:8
265:14 269:13,24 345:8
369:19 374:3 472:14
489:13,15,17

**topic** 226:19 355:10

**topical** 544:3 547:7,16 548:2

**topics** 521:17

**total** 247:2

**totality** 476:18

**totally** 374:24 375:2

**touch** 521:17

**touching** 244:12

**tough** 250:10 383:2

**town** 381:13 391:8 560:25

**trade** 296:11

**trained** 337:12

**transcript** 477:19

**transcripts** 539:3

**transfer** 556:8,19,22

**transparency** 392:21 546:8

**Transport** 210:7 228:4 300:14

**transportation** 257:13 286:1 551:7

**traumatic** 304:15

**traumatized** 302:3

**travel** 464:8 494:13

**tread** 224:16

**treasurer** 319:20 321:16

**treat** 286:17 324:25

**treated** 446:21 462:11, 14 550:16

**triaging** 513:14

**trial** 210:5 216:6 233:2 242:7,16,19 243:4 244:14 245:18 246:15 287:15 383:8,11 387:20 396:5 436:11 451:8 539:4 540:5,10 545:23 547:9 560:13

**trigger** 394:11

**triggered** 287:8 385:13

**trouble** 318:9 373:24 380:25 424:3,6,16,19 425:19,20

**troubles** 258:9 423:16 424:12

**true** 310:16 311:12 312:19,23 313:4,15,19 315:17 316:5,15 317:12 320:5,8,23 321:4 324:22 326:7 327:3,7 329:22,24 330:19 341:2,4 347:10 360:2 362:6 365:1 367:4 374:21 405:1,3,4,5,7 428:16 450:10 466:19 468:21 488:9,13 491:22 493:6,11,18 495:15,20 498:8 501:19 502:1 511:24 512:2 522:22 525:4 526:20 532:16 534:18 535:11,21 537:1 538:13,19 539:13,16,21 540:9,25 541:21 542:22 546:13,17 547:7 548:11 550:22 551:10

**trust** 558:16

**truth** 220:10,13 223:3 225:16 226:10 255:12 338:8 421:16 477:3 534:22 546:7

**truthful** 392:9

**truthfully** 313:6

**tumor** 406:24 407:1,9, 11,13,19,25 408:4

**turn** 245:8 255:20 435:6 514:23 542:10

**turned** 215:11 224:15 255:23 293:5 435:1

**turning** 232:18,19,20 236:14,23 310:9 487:17

**turns** 263:12,14 357:7 367:8 541:12 545:17

**TW** 349:9 352:10

**Twelve** 289:22

**twisted** 544:25 545:1,6

**twisting** 545:12

**Twitter** 481:25

**TWU** 227:13 228:3,5,7 247:18 257:12 330:25 336:25 343:21,24 344:1 353:8 453:10,24 463:21,22 467:8,12,17, 19 468:2,4,8,14,20 469:2,3,18,22 470:2 471:2,22 492:17 512:2, 5 533:3 534:9 535:16 541:6,10,23 548:5 551:3

**type** 215:3 320:8 368:11 398:15 404:23

**typed** 497:10

**types** 374:6 531:22

**typical** 325:12 547:14

**typically** 443:16 489:22

---

**U**

**Uh-huh** 390:23 514:3

**ultimate** 214:20 287:21 441:24

**ultimately** 234:17 286:8 392:25 475:1

**unchanged** 260:9

**uncovered** 487:14

**undefined** 482:10

**understand** 216:8 227:3 232:25 285:9 291:12 301:9,13 310:24,25 311:9 328:10 331:24 338:17 346:24 349:4 352:12 354:8 390:2 392:7,13 431:13 446:2 447:18 462:19 467:5 472:19 473:21 476:8 479:1 496:13 498:19 501:16 509:23 510:24 519:14 520:21 521:21 540:3 543:16,20 549:15 550:14 557:15, 21

**understandable** 390:22

**understanding** 233:6 245:21 268:5 316:15

**331**:15 332:20 347:2 373:12 445:22 471:14 474:24 475:8

**understatement** 346:4,5

**understood** 215:17 220:4 221:9 227:4 228:19 229:11,17 230:16 239:2 297:1,21, 25 306:11 328:16 339:12 349:5 393:20 394:2 400:13 447:19 522:14 553:14 559:14 562:3

**undue** 213:25

**unduly** 242:25

**unelected** 543:12,13, 17,24 548:6

**unfair** 237:9 243:22 523:21

**uniform** 272:12 282:24

**uniforms** 466:5,16

**unimportant** 348:5

**union** 210:7,21,23 213:17,21,22 214:2,7, 17 215:4,18 216:12,19, 21,23 217:4 218:13,16, 17,21 219:19,22,25 220:5 221:15 222:24 223:25 225:2,5,21 226:1,3,4,22 227:5,16, 24 228:3,4 230:10,17 231:14 232:16 234:2 236:3,4,19 237:3,5 247:18 248:9,13,17 252:22 254:3,8,10,11, 15,16,19,20 255:4,5,7, 13 256:2,15,18,20 257:7,8,12,13,23 258:1, 5,7,22,23,25 259:16,20 260:5,10,12,13,16,23 261:4,19,24 262:3,10, 18 263:3,5,9,18 264:3, 6,11 265:5,8,9,12 266:1,6,10,16,23 267:16 268:5,10 269:10,17 270:8,13,17 271:5,6 273:9,23,24 274:4,10,11,14,15 275:15,19,20 276:6,9 277:14 280:6,7 285:6,9,

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 401 of 403   PageID 14225
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                                Vol 2 July 06, 2022                    Index: union's..violating

10,12,14,15,18 286:6,
11,16,24,25 287:3
289:4 294:6,20,23
295:25 300:15,23
302:17 303:4,12,15
304:7,23,25 305:20
310:3,14,16,18,20
311:5,10,12,13,14,17,
20,21,24 312:3,5,6,11,
13,16,22 313:12,13,14,
20,22 314:1 315:5,14,
16,19 316:10,12,17
317:22,23 318:24
319:21 320:4,7,9,15
321:3,17 322:7,8,11,15
323:15,17 324:11,21
325:9,10 326:15 327:6,
23 328:2,19,23 329:12
330:22 331:3,5,7,9,17,
18,20,21,22,25 332:15
333:20 334:6 335:3,6,8,
12,15 336:3,6,7,15,17
337:12,13,16,18
338:19,20 341:17
343:17,23 344:10
345:4,23 348:2,22
349:11,22 351:10,11
352:11,22 353:1,3,6
357:9,22 360:7 361:12
362:2,3,5,9,10,12,14,
16,18,19,20 365:1,3,6,
15,20 366:12,13,18
367:3 368:16,25
374:11,18 375:11
385:25 386:4 387:2
400:14,21 402:12,22
403:5,14 404:1,2,25
406:7 411:19 412:6
413:21 414:10 424:15
425:8,15 427:7,9 428:1,
15 432:25 437:10,25
438:3,9,18,23 439:5,17,
22 443:6 445:13,14
446:10 449:15,19,21
454:5 455:9 462:25
463:24 464:8,9,11,16,
17,21,22 465:18,22
466:3,11 468:11,15,21
469:1 470:3,13 475:15,
22,23 476:13,20,23
480:22 481:18 482:6,19
483:12 487:1 491:5
492:6,21 493:9 494:21
495:6,8 500:5,6,23
502:11 503:23,25
504:2,10 507:22,23

508:19 509:25 523:10
525:14,19 526:11,20,25
527:4,15 528:10 529:1,
19,21 531:24,25 533:22
534:12,16,17 535:8,10,
19,20 536:1,6,21,22,24,
25 537:14,15,21,22
538:11,12,13,21 539:2,
5,6,20 540:8,16,19,24
541:20,21 542:9,21,22
543:17 544:2 546:16,22
547:4,7,9,12 548:11,16
549:2,6,7,16 550:15,25
551:8,12,24 552:3,10,
13 553:1 556:21

union's 219:6 234:5
248:14 353:14 367:17
402:15 465:14,16

union-only 217:11,14

union-protected
537:20

union-sponsored
248:22

unions 335:11 548:5,
13

unique 213:17

United 241:20,23
332:16,19

unity 546:8

universe 216:14

unmute 398:18

unprotected 311:14

unreasonable 296:23

unredacted 344:22

unrelated 547:1
552:11

unreported 304:13

unusual 490:25

unwelcome 210:19
283:15

unwilling 294:8

upcoming 408:24

updated 212:14,16,19
213:5

upheaval 335:9

uphold 292:12

uploads 466:13

upper 270:12 381:23
384:17

upperclassman
389:10

upset 256:24,25 260:23
261:7 263:4 270:5
274:21 334:25 335:16
343:23 473:7,8 523:1
539:21 542:17

upsetting 473:6,16,18
474:15 476:22 501:19
502:1,8 503:6

utilize 369:24

utilized 402:6 469:11
493:17 508:19 541:17

utilizing 455:9

_____

V

V.P. 217:18

vacated 318:7

vagina 262:25

vague 482:9 525:21
526:14

valid 280:14

Van 358:4,6,7

vantage 377:11

variety 265:3 526:25
531:9

vast 256:12 481:24

VDV 355:15 357:5,13,
24 358:20 360:1 363:11

VDVS 359:1

Vegas 249:10 489:8

vehicle 469:5

veil 228:24

Ven 358:4,6,7

veracity 228:17 456:6

verbal 253:21

verbally 484:20

verdict 243:18 246:14

verification 450:21,22

verify 226:9

version 344:23

versus 210:6 545:13

vertently 474:7

vice 317:6,7 318:5
330:5 348:22 355:24
366:11 367:15 433:14,
15 483:13,20 486:5
490:16 545:19

vice-president 325:9
483:7

victimized 479:6

video 239:23 240:4
262:19,22 270:6 271:7
472:15,17 473:3,22
474:10 476:22 478:3,8,
20 479:12,20,25
499:19,21,22 501:1,11,
18 502:21 510:4,17,21
511:2,4,23 512:1
518:13 520:1,11,12,15,
18 521:20,23 522:13,19
523:9,23 524:2,3,11
560:6 561:5,6,7,9,12,14

videoed 479:20

videos 280:17 281:23,
25 283:5 285:2 292:2,
21 294:12 493:3,23
519:25 521:19

view 217:1 244:16,18
255:25 506:12

viewed 282:10,21
283:2,3 359:25 496:9,
11

views 258:7 263:11
284:17,20 362:16

violate 220:10 281:22
303:19 447:18 517:23
537:22

violated 263:16 294:11
460:21 476:3

violates 282:9 471:15
550:4

violating 271:12
281:20

Case 3:17-cv-02278-X   Document 448   Filed 06/14/23   Page 402 of 403   PageID 14226
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                           Vol 2 July 06, 2022              Index: violation..written

**violation** 413:8,20
438:13,15 444:3 445:11
475:2 489:19 490:23
493:13

**violations** 224:13
264:24 282:13 416:4
444:11 449:12 487:6
529:24 530:20,21

**violent** 493:20,22

**visit** 244:16

**visual** 546:16

**vocally** 304:6

**voice** 237:4 305:1
331:19 408:23

**voices** 486:25

**voir** 254:5 393:15

**voluntarily** 365:14
387:19 492:25

**voluntary** 320:12

**volunteered** 464:2

**volunteering** 323:3

**vote** 242:7 258:23
260:17 305:3 331:18
361:13 431:3 434:16
535:14 546:6

**voted** 256:8,12 433:25
543:25 544:1 546:10

**voters** 255:15 256:1

---

**W**

**wait** 265:20 275:2,3
332:10 346:20 351:2
365:18 425:21 449:6
483:21 494:2 495:7,8
500:4,8 502:20 555:9

**waited** 250:6

**waiting** 405:23 410:4

**waive** 296:4

**wake** 210:20

**waking** 548:7

**walk** 397:12

**walking** 251:8

**wanted** 212:10 258:14
268:7 270:7 291:11
295:10 301:4 310:19
352:2,20,21 353:22
377:13,23 382:25
383:21 399:18 425:10
426:21 427:21 432:9
510:9 518:9 537:14
542:4

**wanting** 399:21 416:6
424:6 475:21 506:15,16

**ward** 379:20

**warn** 210:18

**warned** 283:25

**warning** 253:21,22
518:13 521:23

**warns** 283:21

**Washington** 227:13
248:23 249:1 259:22
285:20 453:23 463:17
499:24

**watch** 472:18 474:10,
14,18 478:3,23,25
479:2 518:16,17 523:8,
24,25

**watched** 501:1 511:2
519:3 520:5,10,13
522:12,19,25 523:9

**watching** 474:2 522:9,
13,15,22 523:1,16

**ways** 257:9 499:25

**wearing** 272:25 273:14

**website** 424:17 428:13
429:1

**wedlock** 249:25

**week** 492:16 510:3
559:12

**weeks** 250:17 255:20
293:20 486:3 487:2

**weight** 243:2

**whisper** 245:9

**white** 245:9 385:21

**who-all** 470:5

**wholly** 456:8

**whore** 250:1

**wide** 361:15

**wide-open** 563:7

**widely** 335:10

**wife** 424:22

**Wilkins** 433:18

**Willard** 401:25

**wins** 255:11

**wires** 299:13 308:6

**wishes** 553:16,18

**withdraw** 475:21

**witnessed** 482:10

**witnesses** 216:1 235:5
243:25 244:22 284:22
380:14,16,19 441:11
513:3,9 514:18 558:23
559:5,7,11,25 561:19,
23

**WNCO** 370:2

**woman** 497:17 498:11,
21,22,24 504:22

**women** 251:19 252:14
498:7 499:5 524:13

**women's** 248:22,25
251:17 259:24 261:16
271:16 285:19,25
453:18,21,23 457:3
458:19 459:5,14,25
460:7 463:17,21
464:10,18,19 466:18
492:18 504:11 523:2

**wondering** 338:18

**word** 212:20,22 213:1
267:23 313:17 365:19
416:19 429:4 534:7
545:1

**wording** 238:24 329:10

**words** 259:11 298:19
419:21 438:25 439:18
440:3,7 464:22 492:22
534:13 544:25 545:1,6,
12

**work** 252:23 253:10,11
254:14,19 255:8 265:7
268:14 269:22 274:23

275:9 276:22 277:3
301:16,18,19,22
330:13,15 336:8 348:8
368:17 408:20 410:22
438:13 481:24 487:25
513:17 532:19 564:25

**worked** 276:23 363:13
381:13 429:2 453:21

**workers** 210:7 219:9
228:4 257:13 300:14
551:8

**workforce** 284:11,13

**working** 247:19 272:15
286:21 403:5 431:19
453:18,21 463:16,21
464:10,18 487:3 513:12
540:7

**workings** 437:10,11

**workplace** 267:7 280:2
283:13 302:12

**works** 240:18 269:1
302:2 452:23 472:16
473:4

**world** 272:16 273:5
462:13

**worn** 263:1

**worried** 352:24 354:11
454:14 455:23

**worries** 389:25

**worry** 250:25 380:25

**worse** 516:15,16

**wow** 547:14

**wrap** 512:13 563:19

**wrestled** 240:14,15

**write** 247:4 309:18
486:3 487:8 492:13

**writes** 264:11 366:19
369:9

**writing** 361:23 368:3,
11,13,16,24 369:2,6
376:4,7,19 403:1
409:11,14 410:3
417:12,13,18 484:19
543:6 553:7 556:2

**written** 253:22 318:22
353:14 364:19 491:16

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                                     Vol 2 July 06, 2022                    Index: wrong..zygote

513:18

**wrong** 239:9 262:1
418:12 422:8 443:24
520:16 539:5 545:17

**wrote** 228:16 261:9
381:3 383:12,16 395:21
402:25 482:4,14 485:19
488:3 493:6 497:14
498:3 523:5

**WWC** 453:24

---

**Y**

---

**y'all** 211:15,20 212:13
213:13 235:9,17 240:14
245:10 300:10 379:3
381:5 384:10,12,13
385:15 386:3 446:8
452:6,7 462:13 513:8,
18 515:22 521:19
538:18 554:19 555:10
559:15,19 562:6 565:4

**y'all's** 241:4

**year** 255:4 256:10
259:18 272:5,6 286:22
335:11 383:25 384:1

**years** 222:10 247:24
249:22 251:6,14 252:3,
15 253:19 257:24
262:16 272:7,8,10
273:12,17 276:14,20,22
293:14 304:7 321:22
326:18 361:17 440:8
530:11 534:9 547:10

**yellow** 250:18 456:17

**yesterday** 279:12
382:7 385:8 389:24
394:9 397:6,11 521:16

**young** 255:9

**Yum** 325:11

---

**Z**

---

**ZIP** 216:11

**zygote** 250:25