Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 1 of 425   PageID 15404
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022

1          UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF TEXAS
2
              CASE NO. 3:17-cv-02278-X
3

4

5     ----------------------------------------x

6     CHARLENE CARTER,

7                      Plaintiff,

8     v.

9     SOUTHWEST AIRLINES CO. and
      TRANSPORT WORKERS OF AMERICA,
10    LOCAL 566,

11                     Defendants.

12

13    ----------------------------------------x

14

15

16              TRANSCRIPT OF THE TRIAL

17        BEFORE THE HONORABLE BRANTLEY STARR

18           UNITED STATES DISTRICT JUDGE

19

20              V O L U M E   6

21

22                 Dallas, Texas

23                 July 12, 2022

24                  8:37 a.m.

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 2 of 425   PageID 15405
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1623

```
 1   A P P E A R A N C E S:

 2

     FOR THE PLAINTIFFS:
 3
         NATIONAL RIGHT TO WORK FOUNDATION INC.
 4            8001 Braddock Street
              Suite 600
 5            Springfield, Virginia  22160
         BY:  MATTHEW B. GILLIAM, ESQ.
 6            mgb@nrtw.org

 7

 8       PRYOR & BRUCE
              302 North San Jacinto
 9            Rockwall, Texas 75087
         BY:  BOBBY G. PRYOR, ESQ.
10            MATTHEW D. HILL, ESQ.
              bpryor@pryorandbruce.com
11            mhill@pryorandbruce.com

12

13

14

15   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:

16       REED SMITH, LLP
              2850 North Harwood
17            Suite 1500
              Dallas, Texas  75201
18       BY:  PAULO B. McKEEBY, ESQ.
              BRIAN K. MORRIS, ESQ.
19            pmckeeby@reedsmith.com
              bmorris@reedsmith.com
20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 3 of 425   PageID 15406
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022                        Page 1624

1    For the Defendant Union 566:

2

3         CLOUTMAN & GREENFIELD, PLLC
              3301 Elm Street
4             Dallas, TX 75226
         BY:  ADAM S. GREENFIELD, ESQ.
5             EDWARD B. CLOUTMAN, III, ESQ.
              agreenfield@candglegal.com
6             crawfish11@prodigy.net

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 4 of 425   PageID 15407
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1625

```
 1   COURT REPORTER:   MS. KELLI ANN WILLIS, RPR, CRR, CSR
                       United States Court Reporter
 2                     1100 Commerce Street
                       Room 1528
 3                     Dallas, Texas  75242
                       livenotecrr@gmail.com
 4

 5           Proceedings reported by mechanical

 6   stenography and transcript produced by computer.

 7

 8                         *  *  *  *

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 5 of 425   PageID 15408
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1626

1                        I N D E X

2       Formal Charge Conference ................... 1857

3

4                    W I T N E S S E S

5    ED SCHNEIDER

6       Cross-Examination by Mr. Pryor ............. 1654

7

8    MEGGAN JONES

9       Direct Examination by Mr. McKeeby .......... 1674
        Cross-Examination by Mr. Greenfield ........ 1683
10

11   DENISE GUTTIEREZ

12      Direct Examination by Mr. Morris ........... 1686
        Cross-Examination by Mr. Greenfield ........ 1693
13

14   MIKE SIMS

15      Direct Examination by Mr. McKeeby .......... 1695
        Voir Dire Examination by Mr. McKeeby ....... 1740
16      Cross-Examination by Mr. Greenfield ........ 1743

17

18   CHARLENE CARTER

19       Direct Examination by Mr. Greenfield ...... 1760
         Cross-Examination by Mr. Pryor ............ 1832
20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 6 of 425   PageID 15409
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1627

1

2                    E X H I B I T S

3

4   Trial Exhibit 10  ................... 1658

5   Trial Exhibit 36  ................... 1671

6   Trial Exhibit 119 ................... 1709

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 7 of 425   PageID 15410
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1628

```
 1              - P R O C E E D I N G S -

 2                        -o-

 3              THE COURT SECURITY OFFICER:  All rise.

 4              THE COURT:  You can have a seat.

 5              Thank you.

 6              Okay.  So we are on -- what day is it?

 7    Does anyone know what day of trial it is?  Are we on

 8    6?  It might be Day 6 trial.

 9              So let's go ahead and do appearances,

10    first for Carter.

11              MR. GILLIAM:  For Carter, Matthew Gilliam,

12    Matt Hill and Bobby Pryor.

13              THE COURT:  Thank you.

14              And Southwest.

15              MR. McKEEBY:  For Southwest, Paulo McKeeby

16    and Brian Morris.

17              THE COURT:  Okay.  Thank you.

18              And for the Union.

19              MR. GREENFIELD:  On behalf of the Union,

20    Adam Greenfield and Edward Cloutman III, along with

21    our corporate rep, Mike Massoni.

22              THE COURT:  Thank you.

23              First I want to congratulate all of you

24    for clearing security downstairs.  I heard it was an

25    absolute cluster today.  So we will see when our
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 8 of 425   PageID 15411
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1629

 1  jury gets here.  We could probably take bets if

 2  y'all want to on when they will clear security.  The

 3  line is something to behold.

 4          So thank y'all for being here.  That is

 5  impressive.

 6          I guess I'll ask y'all what you wish to

 7  talk about.  The two things on my mind are exhibits.

 8  I know we had timely designations and objections

 9  last night I want to cover.

10          And then what I wanted to do is see if

11  there are any exhibit objections that we didn't get

12  to yesterday morning because we were talking about

13  the jury charge.

14          If we've got extra time, we can talk about

15  anything jury charge that we didn't get to yesterday

16  that's on y'all's minds.  I know we covered a lot,

17  but we didn't cover everything that y'all put in

18  writing to me.  So if anyone wants to take another

19  crack at me on something jury charge-wise, we should

20  cover that after exhibits.

21          And I just plan to do rounds like we

22  finished off doing yesterday where I'll ask Carter,

23  Southwest, Union, what's next that they want to talk

24  about.

25          What else should we cover other than

1  exhibits and any lingering charge thoughts from

2  yesterday morning's session?

3           MR. McKEEBY:  I had a housekeeping matter.

4           I thought that Exhibit 36 was admitted and

5  published, but I see from the list that that may not

6  be the case.  I don't think there is any objection

7  to me just publishing that in front of the jury.  I

8  thought I had done so, but I guess maybe not.

9           THE COURT:  Well, that could be on my end,

10 like I didn't publish one of yours yesterday.  So it

11 could be my fault on 36.

12          So should we go ahead and do that first

13 thing when the jury gets in?  Do you want to show 36

14 to them?

15          MR. McKEEBY:  That's fine.

16          THE COURT:  Okay.  I will make a note of

17 that.

18          I know you had prepared the redactions.

19          Only -- for the Dropbox last night, I

20 could only upload 21-Q, or download 21-Q.  So it may

21 have been user error on my end.

22          MR. HILL:  Or user error my part.  I send

23 Kevin a second link that had the full set.

24          THE COURT:  Okay.  I will make sure I

25 download that.  I just want to make sure that I have

1  a complete copy of everything we need before we send

2  the jury back.  Agreed that will probably be

3  tomorrow, not today, but I'm just trying to make

4  sure, as we land the plane, that we have everything

5  we need.

6              We have an electronic copy of 15A.

7  Remember that was the one where Stone marked with

8  yellow highlighter?  It's 57 megabytes.  So if

9  anyone wants it, we can get it to you, but it may

10  not go in your email.

11             What we will do is when we charge the jury

12  and send them back, we are going to have the final

13  list of exhibits that I give y'all that will cut off

14  everything we didn't introduce, and then we will

15  have the thumb drive and y'all can look and make

16  sure the right exhibits are on there.

17             So you can copy the thumb drive, make a

18  copy of the exhibits for yourself if you want to,

19  and that -- that's fine by me.

20             MR. PRYOR:  Your Honor, in terms of what

21  you're sending, you're sending back a hard copy as

22  well?

23             THE COURT:  So we have the hard copy

24  available if they ask, but we're sending back the

25  e-copy of every exhibit.  The only hard copy they

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1  will have of anything is each juror will have a hard

 2  copy of the jury charge that includes the questions.

 3          There is going to be the master copy that

 4  the foreperson will keep that's the control copy,

 5  and then there is one hard copy of the exhibit list.

 6  All of the exhibits themselves are actually

 7  electronic.

 8          We still have that hard copy exhibit of

 9  15A.  If they ask for it at all, we can give it to

10  them.

11          MR. PRYOR:  We would request that the hard

12  copies go back in bound index notebooks.

13          I understand flash drives and all of that,

14  but -- I think it's a little more user-friendly for

15  them to have the actual hard copy exhibits.

16          We will put them in a binder if the Court

17  doesn't object.

18          THE COURT:  So any other thoughts from the

19  other side?

20          I don't have a problem with it.  This is

21  sort of a relic of COVID.  We had shifted to all

22  electronic back when people thought paper is what

23  transmits COVID, right?  It got easier and cheaper,

24  and so people liked it.

25          But if you've got a hard copy and the

Case 3:17-cv-02278-X    Document 452    Filed 06/14/23    Page 12 of 425    PageID 15415
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1633

1    other side can see it and they are fine with the

2    actual substance of it, fine by us.  15A is our only

3    hard copy and we can make it available.

4              MR. PRYOR:  And I'm saying we do.  I have

5    them in front of me and I've got an extra set behind

6    me.  I think we can put one together.  If I'm wrong,

7    I'm sure --

8              THE COURT:  Yeah.  The only thing I try

9    not to send back are guns, drugs, cash, right?  I

10   learned that lesson from a mentor judge who tried

11   El Chapo once.  Yes.  Wise lessons.  Don't send back

12   the guns, drugs, or cash.  But I don't think we have

13   any of that in this case.  I think we are good.

14             So I have no problem with that.  If you've

15   got a control copy and they approve of it, then we

16   will send back a laptop too.  But we can send back

17   the binders and they will probably look at those

18   first.

19             Other questions, housekeeping-wise?

20             Okay.  So let's jump into exhibits then.

21             I think I have the first objection we

22   should talk about as being Southwest designation of

23   number 50.

24             MR. McKEEBY:  I can streamline this.

25             We will withdraw that one that's admitted

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 13 of 425   PageID 15416
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1634

1  through other exhibits which I can use instead of

2  that one.

3             MR. PRYOR:  Exhibit number?

4             THE COURT:  Understood.  That makes sense.

5             So 50 I'm going to note in my notes is

6  withdrawn.

7             I have 119 as Southwest designation that

8  Carter objects to, and that's a Step 2

9  documentation.

10            MR. GILLIAM:  That's right, your Honor.

11            THE COURT:  That was Mr. Gilliam?

12            MR. GILLIAM:  Yes.  I'm trying to reach

13  out here in the aisle.

14            THE COURT:  The problem is when you move

15  to where I can see you, then the microphone can't

16  grab you.

17            MR. GILLIAM:  Let me try this one.

18            THE COURT:  I've got wheels, I can move.

19            Okay.  So anything we want to talk about

20  on Step 2?  I know we've generally covered Step 2,

21  but anything we want to talk about on this document?

22            MR. GILLIAM:  We have.  We just wanted to

23  make our objection.

24            THE COURT:  I appreciate that.

25            So I will stick with my prior rulings.  I

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 14 of 425   PageID 15417
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1635

1   think Step 2 is admissible for those limited

2   purposes of mitigation, fair representation.

3            So I will acknowledge your objection.  I

4   will overrule it on the record here and say that at

5   the point in time that it gets offered, I will just

6   plan on overruling morning objections and letting it

7   come in.

8            So those are the two Southwest documents

9   that there were objections to.

10           In the Union documents, the first one I

11  have an objection to is Number 3.  This is the EEOC

12  charge as it pertains to the Union.  I know the EEOC

13  charge came in yesterday, but the one for Southwest.

14           MR. GREENFIELD:  Your Honor, we can move

15  on.  I'm not going to dive into it.

16           THE COURT:  Okay.  That's fine by me.  I

17  would feel compelled to reach the same conclusion,

18  but it would take time on the record.  So if you

19  don't want to spend your time on that, that's fine

20  by me.

21           MR. GREENFIELD:  I don't.

22           THE COURT:  I have 119 as your next

23  exhibit, Mr. Greenfield, that Carter objected to,

24  and this is an email from Burdine to Sims.

25           MR. GREENFIELD:  Which numbers, your

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 15 of 425   PageID 15418
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1636

1  Honor?  I couldn't hear you.

2           THE COURT:  This is 119.  This is another

3  Step 2 document.

4           MR. GREENFIELD:  I think it's the same one

5  we just talked about.  It's the Step 2 hearing.

6           THE COURT:  That's true.  So I have

7  already ruled on it.  Thank you for noting that.

8           120 is the next one I have for you,

9  Mr. Greenfield, that Carter objected to.  And the

10  objection is relevance grounds.

11           I get your objection, but I didn't see the

12  objection back in the status report for the pretrial

13  proceedings.  So I know I have been a jerk to anyone

14  who is raising new ones.  But double-check me and

15  make sure I'm right.

16           MR. GILLIAM:  You are correct.  The

17  objection was not raised in the status report.

18           THE COURT:  But that's not the end of it

19  because if it is now irrelevant because of something

20  I have done in trial, then I can't hold you to a

21  pretrial objection you didn't raise.  If that makes

22  sense.

23           So I guess the question is, is it

24  irrelevant and was when you filed the status report

25  with the objections pretrial, or is it irrelevant

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 16 of 425   PageID 15419
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1637

1  now because of something I've done in trial, is what

2  I'm trying to figure out.

3           MR. GILLIAM:  Well, if I'm being full

4  candid, I think it was irrelevant all along.  So --

5           THE COURT:  I get that.  And that was my

6  read, too, but I never want to assume that.  I

7  always want to talk through and ask it we made so

8  many rulings in trial that I have done something

9  that changed the scope of it.

10          So I will continue to be the jerk that

11 overrules that objection.  I'm overruling it, so if

12 I'm wrong on that, you can still raise the merits of

13 appeal.

14          136 is what I have next as a Union exhibit

15 that Carter objected to.  This is a text to Lyn

16 Montgomery.  Relevance is the main objection, and

17 then prejudice is next, and then 404(b) is next.

18          So happy to hear any argument you have,

19 Mr. Gilliam, and I will ask Mr. Greenfield for his

20 response.

21          MR. GREENFIELD:  Your Honor, we can move

22 on.  I don't intend to spend any time on that

23 exhibit today.

24          THE COURT:  Okay.  Well, that simplifies

25 things.  So I will just note that it is withdrawn.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1638

1              I have the last one as being 137, and that
2   is emails on Step 2.
3              So I guess let me ask, if you are planning
4   on using that, is there anything unique about this
5   Step 2 document that changes how my analysis would
6   run on it?  Mr. Gilliam.
7              MR. GILLIAM:  No, your Honor.  It's also
8   just another Step 2 proceeding document.
9              THE COURT:  Understood.
10             So I will be consistent and I will
11  overrule that objection here on the record, and that
12  will streamline it if it gets offered into evidence.
13             So those are the only ones I had for this
14  morning.  Am I missing something from last night's
15  designations that we need to cover this morning?
16             MR. GILLIAM:  I don't think so.
17             THE COURT:  And I haven't done a cross
18  reference of what was designated two nights ago
19  compared to what we covered yesterday.
20             So I guess my question is, is there
21  something that was designated that has not yet come
22  into evidence that was objected to that could come
23  into evidence that anyone wants to tell me?
24             This is digging deep.  It's not even two
25  nights ago because we had a weekend in there.  So I

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 18 of 425   PageID 15421
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1639

1  don't know what this would be, like Thursday night

2  designations for Friday documents.

3              So is there any other exhibit y'all want

4  to talk about?  Let me just simplify my phraseology.

5  Any other exhibit objection y'all want to talk about

6  in a pretrial posture?

7              MR. McKEEBY:  No.

8              THE COURT:  No for Southwest.

9              Anything for the Union or for Carter that

10  y'all can think of that we should talk about?

11              MR. GREENFIELD:  Not that I can think of

12  at this time, your Honor.

13              THE COURT:  Okay.  Got it.

14              Then let me shift gears back to the

15  informal charge conference we had yesterday.  We

16  covered a lot of ground but not everything.

17              So let me just ask, and I will go in

18  order.  Carter, is there anything we didn't talk

19  about yesterday that you want to talk about?

20              I know my goal is still to turn another

21  draft of the charge back to you by noon, but we are

22  not at noon yet.  I'm still working through it.

23              So is there anything else you want to

24  bring up that we didn't cover yesterday that you

25  think we should talk about?

Case 3:17-cv-02278-X    Document 452    Filed 06/14/23    Page 19 of 425    PageID 15422
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1640

 1              MR. GILLIAM:  Well, it wouldn't be

 2    anything new that we didn't address already in our

 3    brief.  So I don't know if you want to revisit

 4    something that's discussed in the brief that maybe

 5    we didn't specifically talk about yesterday.

 6              THE COURT:  I can thumb through my

 7    documents, but while I do, let me pose the same

 8    question to Southwest next, Mr. Morris, and then

 9    you, Mr. Greenfield.  Is there anything on your mind

10    that we didn't talk about yesterday that you wanted

11    to get to and we just ran out of time?

12              MR. GREENFIELD:  No, I think we covered it

13    all, your Honor.

14              MR. MORRIS:  I have a couple of things.

15              THE COURT:  Let's do it.  We've got the

16    time, and we may have another hour with the security

17    line downstairs.  So you got me here.  May as well

18    use it.

19              So what have you got, Mr. Morris?

20              MR. MORRIS:  We raised in our brief this

21    notion that the request for an accommodation or the

22    knowledge of the need for an accommodation does not

23    arise until after the employee violates whatever

24    work rule is at issue, then they are not entitled to

25    an accommodation.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 20 of 425   PageID 15423
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1641

1        We cite some cases in that regard.

2        And we think the instruction should

3   reflect that and indicate that if Ms. Carter

4   violated a policy before the knowledge of her need

5   for an accommodation was apparent, then she's not

6   entitled to one.

7        THE COURT:  All right.  And I think y'all

8   were arguing Abercrombie and --

9        MR. GILLIAM:  I'll address that.  Not only

10  Abercrombie, but the main case they cite for that

11  proposition is a Fifth Circuit case called Konop

12  back.  And let me tell you why that case is totally

13  distinguishable here.

14        In Konop, you had a nurse who worked in a

15  nursing home who refused to pray the rosary with one

16  of the clients, and the company, the nursing home

17  company, fired her.

18        There, the Fifth Circuit held that the

19  nursing home had no -- no notion or no idea that she

20  needed an accommodation because she didn't -- her

21  need for an accommodation didn't become apparent

22  until after she was fired.

23        THE COURT:  She didn't say "I'm a

24  Jehovah's Witness" before her termination.

25        MR. GILLIAM:  Right.  But here the

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  evidence clearly establishes in the fact-finding

2  meeting that Southwest -- that Southwest knew of

3  Carter's need for an accommodation, yet continued to

4  make its termination decision and avoid its burden

5  of affirmative duty to accommodate.

6          So they -- they create this conflicting

7  requirement by firing her under its social media

8  policies for her religious beliefs and practices.

9          So there, their logic is flawed that she

10  has to give them notice of her need for an

11  accommodation before she violates the policy.

12          Well, they determined that she violates

13  the policy after her fact-finding and they fire her

14  for it, so the logic of that position is totally

15  faulty.

16          And I guess I would also just reiterate

17  our position that there should be no -- nothing in

18  the jury charge about her having to request an

19  accommodation.  It is just really an undisputed fact

20  here that Southwest knew before they fired her that

21  she needed an accommodation.

22          Ed Schneider has testified to that

23  repeatedly and it's in the fact-finding notes.  I

24  think Exhibit 98.  And in his synopsis, Exhibit 107.

25          THE COURT:  Any response, Mr. Morris, on

1    Konop and the employer not having a factual basis

2    for what the accommodation might be?

3                MR. MORRIS:  Sure.  So first, you know, we

4    cite a Fourth Circuit case that has been recited --

5    I can send you ten cases that have recited this

6    proposition that -- I'm not saying that Ms. Carter

7    necessarily, post Abercrombie, had to make a

8    specific request, but at very least, the employer's

9    knowledge of the need for an accommodation is still

10   relevant, I think even post Abercrombie.

11               Konop cites a Fourth Circuit case with

12   approval, and that's why we point to it.  We cite

13   some other district court cases, and I can give you

14   several more of them.

15               But I would say the import of this rule,

16   just to give you a practical example, an employee

17   may in some circumstance be entitled to an

18   accommodation to, say, travel to Mecca as part of

19   their religious practice.  But if they just

20   disappear for a month and then the employer says,

21   Hey, you've been gone, we are going to discipline

22   you, and they say, Whoa, Whoa, whoa, that was a

23   religious thing I was doing, I'm entitled to an

24   accommodation, the fact that the employer didn't

25   know and there was no request until after the policy

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 23 of 425   PageID 15426
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1644

1   was violated means there is no accommodation

2   required for that prior violation.

3            So that's why I think in this case -- and

4   we cite cases to this effect -- our argument is

5   Ms. Carter violated the policies before her

6   Christianity had been raised to anybody.

7            THE COURT:  So what about if the knowledge

8   comes in after the policies were violated but before

9   the termination occurs?  I think that's the argument

10  they are making is in the fact-finding meeting, then

11  they were then on notice that her religion was in

12  play with the sending of the messages.

13           So what about that timeline?  Because from

14  your hypo, you know, it was a little bit different

15  on the timetable.  Here I'm wondering, what if that

16  knowledge comes into play after the policies were

17  broken but before the firing occurs.  Does that

18  change the outcome?

19           MR. MORRIS:  I don't think so.  I think

20  Chalmers counsels that once the policy is violated,

21  you are entitled to enforce that policy.

22           Now, subsequent to the employee raising

23  their religious issue or it becoming known, then

24  maybe there is leniency subsequently.  And I can

25  send additional cases if that would be helpful.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 24 of 425   PageID 15427
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1645

1           But no, I don't think the fact that the

2    response to the pre-knowledge violation is limited

3    by the fact that after the violation, they say, Hey,

4    I have been -- I have a religious reason.

5           And I think the example I gave is

6    illustrative.  If an employee leaves and the

7    employer hasn't yet decided what to do and they just

8    disappear, you don't get to then come and say, Whoa,

9    whoa, whoa, it was for a religious reason I just

10   didn't show up for work for a week.

11          THE COURT:  Understood.

12          You said you had two things, and that was

13   thing one.  Is there a thing two?

14          MR. GREENFIELD:  Your Honor, may I just

15   touch on that briefly?

16          I think an important thing to consider in

17   that is sufficiency of notice, and perhaps a jury

18   question that touched on perhaps whether Southwest

19   or the Union was absolutely put on sufficient notice

20   to provide that accommodation.

21          I think that might potentially cure any

22   issues that we are dealing with on this on the

23   Union's behalf.  I'm not speaking for Southwest, of

24   course.

25          MR. GILLIAM:  Your Honor, may I address

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 25 of 425   PageID 15428
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022                        Page 1646

```
 1   Mr. Greenfield?

 2              THE COURT:  You may.

 3              MR. GILLIAM:  The notice is apparent on

 4   the Facebook -- in the Facebook videos and the

 5   messages and posts themselves that this is a

 6   religious issue.

 7              In fact, it's obvious that President Stone

 8   treated it that way because when she reports

 9   Ms. Carter, she reports Ms. Carter for her religious

10   comments, quote/unquote, quotes taken directly from

11   her complaint.

12              MR. GREENFIELD:  And I guess my response

13   to that, your Honor, would be is that enough, still

14   sufficient to put either the Union or the company on

15   notice that they have to provide a reasonable

16   accommodation on that?  I think a jury should

17   consider -- should consider that question.

18              THE COURT:  Understood.

19              Thing two.

20              MR. MORRIS:  I would just say whatever

21   Ms. Stone's knowledge and notice isn't necessary

22   imputed to us.  The policy violation happened.  I

23   think under the law we are entitled to respond to it

24   even though Ms. Carter then raises her religious

25   issues.
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1              THE COURT:  Sure.  Understood.

2              Okay.  Is there another topic we should

3    talk about jury charge-wise?

4              MR. GILLIAM:  I could address the law he

5    cites in Chalmers if you want.  I don't want to

6    waste your time, though.

7              THE COURT:  Sure.  If you've got something

8    succinct, I'm happy to hear it.

9              MR. GILLIAM:  I would just say that

10   Chalmers is a pre-Abercrombie case.  And another

11   thing that's significant about that case is that

12   there the employer actually engaged in accommodation

13   efforts with the employee, and the whole issue there

14   was whether the accommodation was reasonable.

15             It was not a situation, as in Abercrombie

16   and in Ms. Carter's case, where the employer just

17   abruptly fired her without even initiating

18   accommodation efforts.

19             Even Alito's concurrence in Abercrombie &

20   Fitch raises the issue that the whole point of

21   undertaking the accommodation process is that the

22   employer doesn't do that, that the employer tries to

23   make efforts to work with the employee and give her

24   a reasonable accommodation and not fire her

25   abruptly.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 27 of 425   PageID 15430
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1648

1          THE COURT:  All right.  Thank you.

2          MR. GILLIAM:  But having said that, we

3    kind of touched on this issue.  One the other issues

4    that I would have touched on yesterday is that right

5    now the jury charge is formulated to where one of

6    the elements of the failure to accommodate claims is

7    whether there was a conflicting job -- yeah,

8    conflicting employment requirement.

9              Abercrombie also illustrates why that

10   element is -- it's not the best formulation of that

11   element for a case like this.

12             Abercrombie, in that case you had an

13   employee who was not hired because of Abercrombie &

14   Fitch's headscarves policy.

15             So the way that Justice Scalia formulated

16   the elements there was not whether there was some

17   conflicting requirement.  He knew, it was clear that

18   there was no conflicting requirement -- or that

19   there was a conflicting requirement because they

20   failed to hire her.

21             Similarly, in this case, they fired

22   Ms. Carter under their policies.

23             So I think that to ask the jury whether

24   there is a conflicting employment requirement is a

25   bit confusing because that -- that is a -- that

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 28 of 425  PageID 15431
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1649

1  should be a clear settled issue, resolved issue.

2  They fired Ms. Carter.  That's the conflict with the

3  social media policy.

4             THE COURT:  Any response on the conflict,

5  Mr. Morris?

6             MR. MORRIS:  Yeah, two things.

7             I think one is, my recollection of the

8  testimony is Ms. Carter said, I didn't violate any

9  policy.

10            So from my vantage point -- and there is

11  case law in this regard -- if you say, I haven't

12  violated any policy, then there is nothing to be

13  accommodated.

14            So I'm not sure about -- you know, I think

15  her testimony contradicts what they are saying.

16            MR. GILLIAM:  However you construe

17  Ms. Carter's testimony there, Southwest sure thought

18  that Ms. Carter violated the social media policy.

19  They fired her for it.

20            MR. MORRIS:  Your Honor, there is a

21  case -- and I think we cited some of it in our

22  summary judgment motion -- where courts have

23  dismissed claims or granted summary judgment on

24  claims where the person alleges, actually violated

25  no policy, but they terminated anyway.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1650

1                And the reasoning in those cases is if you

2    allege that no policy is violated and you are

3    terminated, what you are alleging is a

4    straightforward religious discrimination claim, not

5    a failure to accommodate claim.  Because there is

6    nothing to be accommodated under your own theory.

7                So you can still say, you know, the

8    employer has some kind of abstract hostility towards

9    people of my religion, which is sort of one way in

10   which you can establish liability, perhaps, under

11   Title VII, but you're not in the accommodation box.

12   That's why I think it is relevant.

13               MR. GILLIAM:  All of those are

14   pre-Abercrombie cases.

15               MR. MORRIS:  That's not accurate.

16               And if I could just suggest one other

17   thing about the conflict.  You know, Ms. Carter's

18   articulated religious belief is that she's a

19   Christian and that abortion is the taking of human

20   life.

21               It's not clear, in my view on the record,

22   that the particular actions she engaged in were

23   clear manifestations of that religious practice.

24               I'm not sure that there is any evidence on

25   the record right now that she was not allowed to

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 30 of 425   PageID 15433
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1651

1   manifest her articulated belief in the workplace.

2           Just because she wasn't allowed to send

3   these particular videos -- and we cite some cases

4   about that -- just because something in some way is

5   related to your religion doesn't mean it's a

6   practice that's required to be accommodated.

7           So, for example, you know, you want to

8   take -- the example you used earlier, you want to

9   travel to Mecca.  The fact that you feel like doing

10  it in March, you want to travel to Mecca in March,

11  is not something you have to accommodate.

12          Similarly, your view that abortion is the

13  taking of a human life, the fact that you want to

14  circulate videos to other people in that regard is

15  not necessarily your religious belief itself.

16          MR. GILLIAM:  Your Honor, he's addressing

17  the -- what you call the personal preference cases,

18  that personal preference doesn't necessarily dictate

19  what a reasonable accommodation is.  And that issue

20  arises when the employer undertakes to make efforts

21  to provide a reasonable accommodation.

22          But here they didn't do that.  They fired

23  her right away.  They didn't undertake any

24  accommodation efforts.

25          So whether -- if they had provided her or

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1652

1   attempted to provide her a reasonable accommodation,

2   then it's true that maybe Ms. Carter's personal

3   preferences for how she made her posts or

4   communicated with the Union, maybe that would come

5   into play.  But it just doesn't here because they --

6   they short-circuited the whole process by firing her

7   immediately.

8                 THE COURT:  They are here.  We can bring

9   them in.  Anyone need a break or are we okay?

10                MR. GREENFIELD:  I could use a two-minute

11  restroom break.

12                THE COURT:  Let's do it.  Let's try two to

13  three minutes, how about that?

14                So I will go into recess.  I will come

15  back on in a couple of minutes, and then we will

16  bring in the jury.

17                THE COURT SECURITY OFFICER:  All rise.

18                (Recess.)

19                THE COURT SECURITY OFFICER:  All rise.

20                THE COURT:  Okay.  We can go ahead and

21  bring in Mr. Schneider, if there is nothing else

22  housekeeping-wise.

23                MR. McKEEBY:  That housekeeping issue on

24  the exhibit, do you care if Mr. Schneider is here?

25                THE COURT:  The exhibit was not with him,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 32 of 425   PageID 15435
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1653

 1  right?

 2              MR. McKEEBY:  Correct.

 3              THE COURT:  I don't have a problem with

 4  him being on the stand if -- you know what, I can

 5  mute the witness monitor alone and everyone else can

 6  see it.  So how about we do that.  We can go ahead

 7  and bring him in.  I will mute the witness monitor

 8  for you to flash 36 on.

 9              MR. McKEEBY:  It's not technically my turn

10  right now, but --

11              THE COURT:  Oh, that's right.  Should we

12  wait for your next turn with him and do it?

13              MR. McKEEBY:  Yes.

14              THE COURT:  Okay.

15               (The witness entered the courtroom.)

16              THE COURT:  Welcome back, Mr. Schneider,

17  to your rightful place in the courtroom.

18              We can go ahead and get the jury now.

19              Mr. Pryor, I thought we had just handed

20  the baton over to you, is that correct?

21              So it's the end of round one.  You went,

22  you went, and then it's to you.  So you can go ahead

23  and take your rightful place.

24               (The jurors entered the courtroom.)

25              THE COURT:  Okay.  You can be seated.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 33 of 425   PageID 15436
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1654

1              And, Mr. Schneider, you are still under

2    oath, so we will just go ahead and proceed with the

3    questions from Mr. Pryor on cross-examination.

4              I will just ask y'all to keep some space

5    between questions and answers.

6              You can proceed, Mr. Pryor.

7                    CROSS-EXAMINATION

8    BY MR. PRYOR:

9    Q.   Mr. Schneider, let's look at Exhibit 74, what

10   was referred to as Exhibit 74.5 yesterday.

11            And where it says, "Democrats, this is what you

12   support?" do you know whether or not that was

13   written by Ms. Carter or someone else?

14   A.   It was on Ms. Carter's page, but I'm not sure

15   who wrote it.

16   Q.   Do you think she actually made the video?

17   A.   I don't believe so.

18   Q.   Okay.  Did you ask who wrote that?

19   A.   She stated that this information was what she

20   believed --

21   Q.   Was what --

22   A.   -- but I didn't ask the question, no.

23   Q.   She posted this from someone else to show this

24   video?  Yes?

25   A.   Yes.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1655

```
 1                 MR. PRYOR:  Let's look at Exhibit 10.

 2  BY MR. PRYOR:

 3  Q.   While he's calling up Exhibit 10, you were

 4  asked yesterday, did Ms. Carter, during the

 5  fact-finding meeting, raise any complaint that she

 6  was being discriminated against by the company

 7  because of her religion.

 8       Do you recall that?

 9  A.   Yes.

10  Q.   And, in fact, at that point in time, Southwest

11  had taken no action in regard to Ms. Carter, true?

12  A.   At what point in time?

13  Q.   The fact-finding meeting.  You hadn't --

14  Southwest hadn't done anything to her, had they?

15  A.   No.  We hadn't made a decision at that point.

16  Q.   They didn't fire her at that point because of

17  her religion; that was later.

18                 MR. McKEEBY:  Objection to the

19  characterization.

20                 THE COURT:  Sustained.

21  BY MR. PRYOR:

22  Q.   At the fact-finding meeting --

23                 MR. McKEEBY:  And move to strike, your

24  Honor.  I'm sorry.

25                 THE COURT:  I will strike that.
```

```
 1              You can ask a new question.
 2    BY MR. PRYOR:
 3    Q.   At the fact-finding meeting, no action had been
 4    taken against her because of her religion for which
 5    she would then complain, true?
 6    A.   No action had been taken.  We hadn't finished
 7    the investigation and she hadn't given all her
 8    information at that point.
 9    Q.   Okay.  That's my point.  He was saying, Well,
10    she didn't complain that you were discriminating
11    against her because of her religion at the
12    fact-finding meeting.
13        Well, that's kind of silly because no action
14    had been taken yet for her to complain about, true?
15    A.   No action had been taken yet, no.
16    Q.   Is my statement true?  There was nothing for
17    her to complain about in terms of Southwest taking
18    action because no action had been taken.  True?
19    A.   She could not complain about the action, that
20    is true.
21    Q.   Well, there would be nothing to complain about
22    because you hadn't taken action, right?
23    A.   I had not taken action, yes.
24    Q.   So you are agreeing with my statement?
25    A.   She did not complain at that point, if that is
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1657

 1  your question, yes.

 2  Q.   That's only half my question.

 3       I'm going to see if you are going to agree,

 4  there was nothing for her to complain about at that

 5  point because you hadn't taken action against her,

 6  true?

 7  A.   True.

 8  Q.   Okay.  And the same thing in regard to Union

 9  activity.  There was nothing for her to complain

10  about Southwest taking action against her for Union

11  activity because Southwest, at the fact-finding

12  meeting, had taken no action, true?

13  A.   True.

14  Q.   That wasn't an effort -- those questions

15  weren't an effort to try and mislead the jury, was

16  it?

17            MR. McKEEBY:  Objection, your Honor.

18            THE COURT:  Sustained.

19            MR. McKEEBY:  And move to strike.

20            THE COURT:  Sustained.

21            Jury, please disregard.

22            MR. PRYOR:  Let's look at Exhibit 10.

23            We move for the introduction of

24  Exhibit 10.

25            THE COURT:  Any objection to 10?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 37 of 425   PageID 15440
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1658

 1              MR. GREENFIELD:  None from the Union.

 2              MR. McKEEBY:  No objection.

 3              THE COURT:  Okay.  10 is in.

 4              You can publish.

 5              (The referred-to document was admitted

 6         into evidence as Trial Exhibit 10.)

 7    BY MR. PRYOR:

 8    Q.   Now, this is the Southwest accommodation

 9    policy, true?

10    A.   Yes.

11    Q.   And it says, "In regard to the ACT team is

12    responsible for determining whether a reasonable

13    workplace accommodation can be made.  As such, an

14    applicant or employee in need of an accommodation or

15    a leader aware of an applicant or employee's need or

16    request for accommodation should contact Southwest's

17    ACT team."

18         Did I read that correctly?

19    A.   Yes.

20    Q.   What does "leader" refer to?

21    A.   Somebody in a leadership position at Southwest

22    Airlines.

23    Q.   And, in fact, "leader" is just about anyone in

24    management.  It would certainly include you,

25    correct?

1   A.   Yes.

2   Q.   Do you recall telling us, when I first asked

3   you questions in this trial, that you had no

4   obligation to report an employee's potential need

5   for an accommodation, that it was the employee's

6   responsibility?

7   A.   It's the employee's responsibility to let me

8   know or to reach out to the ACT team, that's

9   correct.

10  Q.   Is that what this says?  Where does it say it's

11  the employee -- do you see where it says "or a

12  leader aware of an applicant or employee's need."

13       It doesn't say the employee has to tell you.

14  You just have to be aware of the need.  The employee

15  doesn't have to play lawyer, the employee doesn't

16  have to use magic words, true?

17  A.   I don't know what "magic words" would be.

18  Q.   Do you believe that the policy requires you, if

19  you are aware that an employee is involved in

20  protected activity and has a need for an

21  accommodation, whether they ask you or not, you

22  should go to the ACT team and make them aware of it?

23            MR. GREENFIELD:  Objection, compound

24  question.

25            THE COURT:  I will overrule that.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1660

```
 1              You can answer.
 2              THE WITNESS:  Yes, if we were made aware
 3    of it.
 4    BY MR. PRYOR:
 5    Q.   Well, let's talk about "aware."
 6         When someone tells you, I'm engaged in activity
 7    because of my religious belief, and you are getting
 8    ready to fire them for engaging in that activity,
 9    that doesn't tell you there might be a need for an
10    accommodation?
11    A.   I did not come to that conclusion.
12    Q.   I understand that.  But do you not see when
13    someone raises something like their religious belief
14    that you should raise that issue with ACT and
15    didn't?
16              MR. McKEEBY:  Objection, vague and
17    incomplete hypothetical.
18              THE COURT:  I'll allow it.
19              THE WITNESS:  If she would have made it
20    aware to me specifically, then I would have, that
21    she needed the accommodation.
22    BY MR. PRYOR:
23    Q.   What more could she do other than use the magic
24    word "accommodation" with you, telling you -- she
25    told you over and over about how this is one of the
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 40 of 425   PageID 15443
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1661

1   most important aspects of her life, and her

2   relationship with God tells her that she needs to

3   raise these issues.  That doesn't tell you that

4   religious belief is involved and an accommodation

5   should at least be considered?  It doesn't tell you?

6   A.   No, not at the time.

7   Q.   Would it now?

8   A.   If it was raised to me --

9           MR. McKEEBY:  Objection, relevance.

10          MR. PRYOR:  Well, we have a claim for

11  punitive damages.

12          THE COURT:  Hold on.  Hold on.  That's a

13  speaking objection.

14          I'll allow it.

15  BY MR. PRYOR:

16  Q.   Go ahead.  You can answer.

17  A.   If it was raised to me, then yes, I would.

18  Q.   I just told you how it was raised.

19      And if it was raised with you, someone tomorrow

20  came in and said, Hey this post on my personal

21  Facebook page is because of my religious beliefs,

22  heartfelt, significant, important religious beliefs

23  and communication, would you then, would you now go

24  to the ACT team and say, Hey, do you think we should

25  consider an accommodation here?  Would you at least

1  do that?

2          MR. McKEEBY:  Objection, vague, incomplete

3  hypothetical, relevance.

4          THE COURT:  I'll allow it.

5          THE WITNESS:  If it was made aware to me

6  that, yes, they needed the accommodation, yes, the

7  religion was the reason for the accommodation, then

8  I would, yes.

9  BY MR. PRYOR:

10  Q.  So I guess where our disconnect is, I have now

11  told you all the facts.  I just didn't use the word

12  "accommodation."

13      If the employee still doesn't use the magic

14  word "accommodation," you are not going to go to ACT

15  and see if an accommodation can be granted, true?

16  A.  It really depends on the situation, sir.  I'm

17  not trying to say I'm not doing -- or taking care of

18  my employees.  I'm just saying that there is a

19  situation where they would make me aware of it more

20  so than what this case had.

21  Q.  Okay.  So this case, where Charlene told you

22  over and over at the fact-finding meeting -- the

23  jury will get to it, we'll put it up for them during

24  closing -- but you've read it.  And you know that

25  over and over she raised this was part of her

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 42 of 425   PageID 15445
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1663

1  heartfelt religious belief that she was exercising.

2  That was not enough to put you on notice that she

3  needed an accommodation?  True?

4          MR. GREENFIELD:  Objection, your Honor,

5  asked and answered at this point.

6          THE COURT:  I will sustain.

7          MR. PRYOR:  What was the objection?

8          THE COURT:  Sustained.

9          MR. PRYOR:  I just didn't hear what the

10  objection was.

11          THE COURT:  Asked and answered.

12          MR. PRYOR:  Fair enough.

13  BY MR. PRYOR:

14  Q.   How about union activity.  If someone came in

15  and told you, Hey, I'm engaged in complaining to my

16  union, and you shouldn't be taking action against me

17  because I'm engaged in this protected activity.

18      Just knowing those facts, would you go to the

19  ACT team and say, Hey, we need to consider an

20  accommodation here?  Just on those facts, would that

21  be enough?

22  A.   No.

23  Q.   Is there a process under the social media

24  policy for pre-approval of posts, so every time

25  somebody at Southwest that's an employee that's at

```
 1   home on their personal computer and wants to say
 2   something to the world about their opinion about
 3   whatever, that they can send it to Southwest
 4   Airlines to make sure they won't get fired for it?
 5   Is there a process for that?
 6   A.    We always ask our employees to reach out to the
 7   base if they have any questions that have to do with
 8   the airline and business that they would do.
 9   Q.    Has anyone ever done that, to your knowledge?
10   A.    I have had people reach out to me and ask me
11   about putting something on social media, and I have
12   cautioned them.
13   Q.    Did anyone send you something for pre-approval
14   before they posted it?
15   A.    No, not that I can recall.
16   Q.    And let's look at Exhibit 10 again.
17         Is there anything in the policy that says --
18   let's see.  That's the accommodation policy.
19         Let's look at the social media policy.  I think
20   it's -- I don't know what it is, 8, whatever it is.
21   It looks like it's 9.  Let's look at Exhibit 9.
22         Is there a process in the written social media
23   policy for an employee to come to Southwest Airlines
24   in advance and get approval so they won't get fired?
25   Is there anything like that in this policy?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 44 of 425   PageID 15447
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1665

1  A.   I would have to read through it in detail,

2  but --

3  Q.   Read it.  Read it.  You are telling me you

4  think it's in there.

5      By the way, I was told by some of the witnesses

6  yesterday that took the stand that you've got to

7  look at these policies every year, you've got to be

8  familiar with them, or you can't work at Southwest

9  Airlines.  Is that true?

10          MR. McKEEBY:  Objection, mischaracterizes

11  testimony.  It's compound as well.

12          MR. PRYOR:  The jury can see if I

13  mischaracterized it or not.

14          THE COURT:  Hold on.

15          I will allow you to rephrase it.  I will

16  sustain the objection.

17  BY MR. PRYOR:

18  Q.   Is it, in fact, your obligation to be familiar

19  with this policy as you sit here today as a 28-year

20  employee of Southwest Airlines that fired someone

21  under this very policy?

22  A.   Yes, we are supposed to be aware of it.

23  Q.   So you can't answer the basic question of

24  whether or not this policy provides a procedure for

25  pre-approval of posts without reviewing it, true?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 45 of 425   PageID 15448
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1666

1              MR. McKEEBY:  Objection, argumentative.

2              THE COURT:  I'll allow it.

3              THE WITNESS:  I don't remember that part

4    of it.  I would have to look through this to see if

5    that's actually a part, because I don't remember

6    there being something that says they could submit

7    before they post.

8    BY MR. PRYOR:

9    Q.   We will let the jury read it, and you can maybe

10   read it in your off-time to see whether or not there

11   is such --

12             MR. GREENFIELD:  Objection, your Honor, to

13   the sidebars.

14             MR. McKEEBY:  Objection to the last part.

15   Move to strike.

16             THE COURT:  Sustained.

17             I will strike the sidebar.

18             MR. PRYOR:  I pass the witness.

19             THE COURT:  Are you passing the witness,

20   Mr. Pryor?

21             MR. PRYOR:  I'm sorry.  I didn't say it

22   into the microphone, I guess.  I pass the witness,

23   your Honor.

24             THE COURT:  Okay.

25             Mr. McKeeby, round two.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 46 of 425   PageID 15449
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1667

1          MR. McKEEBY:  Your Honor, the housekeeping

2     matter that we discussed.

3          THE COURT:  Yes.  So, jury, there was an

4     exhibit that was admitted yesterday, and I neglected

5     to show y'all the exhibit.  So I'm un-muting your

6     monitors.

7          Sidebar right quick.

8          (Thereupon, the following proceedings were

9        had at sidebar:)

10         THE COURT:  So we pulled the transcript

11    and couldn't find a reference to 36 in it.  Is there

12    another witness who you can bring it up with, 36?

13         MR. McKEEBY:  With Ms. Hudson?

14         No, I know I did.

15         THE COURT:  I have 38.

16         MR. McKEEBY:  Was that through Hudson?

17         Because that was the only exhibit that I

18    introduced through Hudson would have been 36.  Maybe

19    there was something in the numbering that was off.

20         THE COURT:  So this was late in the day,

21    but Hudson was the next to last, and then we had 44,

22    7, 11, 2, 9, 16.

23         How about we take it up at another break.

24    We will all do research and figure it out.

25         I just -- I don't have any basis to flash

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 47 of 425   PageID 15450
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1668

 1   it in front of the jury yet because I don't have a

 2   record of it having come in with a witness.  Does

 3   that make sense?

 4              MR. McKEEBY:  Well, it makes sense in the

 5   sense that I understand, but it just does not

 6   comport with my recollection at all.  Because I know

 7   I asked her, What was the context of you sending

 8   this?  And she said, Because there was a lot of

 9   infighting between flight attendants.

10              So we published this to tell them -- it

11   was towards the end of her testimony, and I know I

12   showed her the document, and I thought I had

13   admitted it.

14              I know I asked her, Why did you send this

15   out at the time?

16              And she said, The reason is because there

17   was squabbling about social media, and we wanted to

18   remind the flight attendants of our policy.

19              I'm certain I asked that.

20              THE COURT:  I mean, if you talked about it

21   with her, that's fine.  Here is my thought.  These

22   are business records.  The custodian probably can

23   authenticate anything.

24              So the next round, you can bring it up.

25   And if you already talked about it with her, now the

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 48 of 425   PageID 15451
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1669

```
 1  jury will see it.
 2            MR. McKEEBY:  Okay.
 3            (Thereupon, the sidebar was concluded and
 4       the following proceedings were held in open
 5       court:)
 6            THE COURT:  So we are not going to flash
 7  an exhibit yet.  You will probably see it at some
 8  point coming up.
 9            So you can proceed, Mr. McKeeby.  You can
10  go right there if you want to.
11            MR. McKEEBY:  I'm going to try to go right
12  there.
13                   REDIRECT EXAMINATION
14  BY MR. McKEEBY:
15  Q.   What is a Read Before Fly memo?
16  A.   That is a memo that's sent out to the flight
17  attendant work group that they need to read before
18  they fly the next time.
19  Q.   Do you get those as well as a base manager?
20  A.   Yes, I do.
21            MR. McKEEBY:  Can you pull up 36?
22            Move to admit 36 into evidence and
23  publish.
24            MR. PRYOR:  Lack of foundation at this
25  point.
```

```
 1              THE COURT:  Can you set it?

 2   BY MR. McKEEBY:

 3   Q.   Is this a Read Before Fly memo?

 4        I'm sorry.  Let me back up.

 5        What is this document?

 6   A.   It is a Read Before Fly that was put out by

 7   Naomi Hudson.

 8   Q.   And who is Ms. Hudson?

 9              MR. PRYOR:  Well -- I'm sorry.  Go ahead.

10              THE COURT:  Proceed.

11   BY MR. McKEEBY:

12   Q.   Who is Ms. Hudson?

13   A.   She was director of labor relations at the

14   time.

15   Q.   And is this the type of document that you would

16   have received?

17   A.   Yes, it is.

18   Q.   In the normal course of your business as a base

19   manager?

20   A.   Yes.

21              MR. McKEEBY:  Move to admit Exhibit 36 and

22   publish.

23              MR. PRYOR:  Lack of foundation.  He's

24   established no personal knowledge of this witness.

25              THE COURT:  I will overrule that.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 50 of 425   PageID 15453
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                  Page 1671

 1              Any objection from the Union?

 2              MR. GREENFIELD:  No, your Honor.

 3              THE COURT:  All right.  It's admitted into

 4  evidence and we are publishing.

 5              (The referred-to document was admitted

 6          into evidence as Trial Exhibit 36.)

 7              MR. McKEEBY:  And how about Exhibit 10.

 8  If you could blow up the same spot and highlight the

 9  same area that we did previously, which is -- yes,

10  that sentence right there.

11  BY MR. McKEEBY:

12  Q.   Mr. Pryor asked you some questions about this

13  section of the policy, correct?

14  A.   Yes.

15  Q.   And I think we established that you are a

16  leader at Southwest Airlines, correct?

17  A.   Yes.

18  Q.   And as you look at the policy, would you agree

19  that at the time of Ms. Carter's fact-finding

20  meeting that you were a leader aware of an

21  employee's need for an accommodation?

22              MR. PRYOR:  Object, leading.

23              THE COURT:  I'll allow it.

24              THE WITNESS:  I was not aware that she

25  needed an accommodation.

1  BY MR. McKEEBY:

2  Q.   Did she tell you during the fact-finding

3  meeting that her religious beliefs conflicted with a

4  particular Southwest policy?

5  A.   No, she did not.

6  Q.   Did she tell you that the company should not

7  apply its policies to her because of her religious

8  beliefs or practices?

9            MR. PRYOR:  Object, leading.

10            THE COURT:  I'll allow it.

11            THE WITNESS:  No, she did not.

12            MR. McKEEBY:  Nothing further.

13            THE COURT:  Okay.  Mr. Greenfield.

14            MR. GREENFIELD:  No further questions,

15  your Honor.

16            THE COURT:  Okay.  Round two for you?

17            MR. PRYOR:  As much I would like to, I

18  have to say no.

19            THE COURT:  Okay.  So no further questions

20  for you because you can't ask questions based on

21  your own questions, Mr. McKeeby.

22            So Mr. Schneider, you are now re-excused

23  as a witness.  Thank you for coming back.

24            Now Southwest can call its next witness.

25            MR. McKEEBY:  Can Mr. Schneider be excused

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1673

```
 1  for the day?

 2              THE COURT:  Yes.

 3              MR. McKEEBY:  Southwest calls Meggan

 4  Jones.

 5              THE COURT:  Okay.  You may do so.

 6              Ms Jones, you can come take the stand.

 7              MR. McKEEBY:  And by "excused for the

 8  day," can he fly back to Denver?

 9              THE COURT:  I will give you no further

10  restrictions.

11              Any desire at this present time to recall

12  him in the plaintiff's rebuttal case?

13              MR. PRYOR:  A desire, but we do no plan on

14  it.

15              THE COURT:  Okay.  Understood.

16              Then I will give you no restrictions on

17  your travel or speech.  You are free to leave.

18                  (The witness exited the courtroom.)

19              (MEGGAN JONES was duly sworn by the

20      Clerk.)

21              THE COURT:  Okay.  Ms. Jones, you know the

22  routine because we've said it with every witness.

23              Mr. McKeeby, you can continue.

24

25
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 53 of 425   PageID 15456
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                  Page 1674

```
 1                    DIRECT EXAMINATION
 2   BY MR. McKEEBY:
 3   Q.    Ms. Jones, state your name for the record,
 4   please.
 5   A.    Meggan Jones.
 6   Q.    How long have you been -- where are you
 7   employed currently?  I'm sorry.
 8   A.    At Southwest Airlines.
 9   Q.    What is your current position?
10   A.    Senior manager of labor administration.
11   Q.    How long have you been in that role?
12   A.    Just over a year and a half now.
13   Q.    What were you before that?
14   A.    I was a base manager prior to that.  I was an
15   assistant base manager prior to that.
16   Q.    Where were you a base manager?
17   A.    In Phoenix, Arizona.
18   Q.    And in 2017, what was your position?
19   A.    I was an assistant base manager at the Denver
20   in-flight base.
21   Q.    How long have you been employed overall by
22   Southwest Airlines?
23   A.    Just over 11 years.
24   Q.    Can you briefly explain to the jury, since 2017
25   is the relevant time period, what you did as a
```

1  assistant base manager at the Denver airport.

2  A.   I supported the Denver in-flight team and

3  flight attendants.  I supported the base manager

4  there.  Scheduling issues within the staff, personal

5  issues that arose with the flight attendants,

6  conducted investigations, and things of that nature.

7  Q.   And I don't think I asked you this question.

8  How long were you the assistant base manager in

9  Denver?

10  A.   I was three years, three and a half years.

11  Q.   Okay.  Did you work with Ms. Carter at the

12  Denver airport?

13  A.   Yes, I did.

14  Q.   What were your observations or experience with

15  her prior to the investigation that we will talk

16  about?

17  A.   Prior to this investigation and prior to being

18  an assistant base manager, I was a supervisor at the

19  Denver base, and I was actually her direct

20  supervisor.

21      My interactions with her had always been very

22  friendly up until this point.  I hadn't seen her in

23  a while when this meeting occurred because she

24  hadn't flown much over the previous three years.

25  But I had no problems or, you know, concerns at that

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 55 of 425   PageID 15458
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1676

 1  point.

 2  Q.   You mentioned that she hadn't flown for some

 3  time.  Is there a process at Southwest for flight

 4  attendants to trade or give away their shifts?  Can

 5  you kind of explain that to jury?

 6  A.   Yes.  Southwest is one of the only airlines in

 7  the country that does not have a flying minimum for

 8  their flight attendants, so they can contractually

 9  trade down or give away all of their assignments,

10  which is a huge perk of the job.

11  Q.   And how do they go about doing that?

12  A.   There is a system that the flight attendants

13  utilize that they can put their trips in for trade.

14  They can say, I want to give this away.  They can

15  put money to say, Hey, I will give you money if you

16  pick up this trip, or to trade into a different

17  trip.  And it's a voluntary process.

18  Q.   How did you find out about the complaints

19  against Ms. Carter?

20  A.   Ed Schneider made me aware.

21  Q.   And in what context?

22  A.   He let me know that he had received a complaint

23  and was going to be conducting an investigation, and

24  asked me if I would assist as his note-taker in that

25  meeting.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 56 of 425   PageID 15459
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1677

1  Q.    Assist as the --

2  A.    The note-taker.

3  Q.    Did you have any other responsibilities in

4  connection with the investigative process?

5  A.    I asked some clarifying questions during the

6  meeting, but other than that, I really didn't have a

7  role in the investigation itself.

8  Q.    How about prior to the fact-finding meeting,

9  were you asked to do anything prior to the meeting?

10 A.    I was asked to review the videos that had been

11 sent, and I did go look at her Facebook page.  Ed's

12 not real Facebook savvy and I am.

13       I went to check it out, which is pretty

14 standard any time we have a social media

15 investigation, just to see some context of what we

16 are looking at here from a nexus standpoint or

17 whatnot.

18 Q.    I will get to that in a second.

19       Did I understand your testimony correctly that

20 you also reviewed the videos?

21 A.    Yes, I did.

22 Q.    What do you remember about that?

23 A.    I was very disturbed by those videos.

24 Q.    Let me stop you.  Did you review two videos?

25 A.    Yes, I did.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 57 of 425  PageID 15460
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1678

1   Q.   Go ahead.

2   A.   I had to look at them to become familiar with

3   the investigation.  And I just remember being kind

4   of horrified by the images because I -- this is the

5   Internet, and we don't know, really truly, where

6   those images came from.

7        I mean, I thought that could be somebody's

8   miscarried baby or somebody's -- it felt like an

9   exploitation of something very personal and horrific

10  and it made me feel queasy.  It kind of ruined my

11  day.  I didn't feel great for the rest of the day.

12  Q.   You then, I think, indicated that you reviewed

13  Ms. Carter's Facebook page.

14       Why did you do that?

15  A.   It's pretty standard, any time there is a

16  social media investigation, just to kind of get some

17  context of, you know, okay.  We get a lot of social

18  media complaints.  So, you know, what really are we

19  looking at here from a severity standpoint and a

20  nexus standpoint.

21  Q.   Did you pull the photographs that we've seen in

22  this case from the Facebook page?

23  A.   I did pull a few photographs, yes.

24  Q.   Can you describe those photos?

25  A.   What I recall there being was a picture of her

1   flight attendant wings with some caption about

2   Southwest.  Pictures of her in uniform on the

3   aircraft, several pictures of those.

4   Q.   And what did you do to find those posts?  Walk

5   the jury kind of through it.  I don't know their

6   Facebook familiarity, so walk them through kind of

7   what you did to identify those posts, please.

8   A.   It was easy to locate her page on Facebook.  It

9   was a public page, meaning anything that was on it

10  was open to the public, which, you know, makes it

11  very easy to see what's on there.

12        And to find those photographs, I clicked on

13  "photos," and there they were.  I didn't have to do

14  a lot of digging, you don't generally have to do a

15  lot of digging on Facebook to find photographs and

16  things like that.  So it wasn't a laborious process

17  by any means.

18  Q.   How long did it take you?

19  A.   Maybe three minutes in its entirety.

20  Q.   And did I understand correctly that you

21  attended the fact-finding meeting?

22  A.   Yes, I did.

23  Q.   Let's talk a little bit about that.

24        Were you there in person?

25  A.   Yes, I was.

1  Q.   And if you could remind the jury, who else was

2  there?

3  A.   Ed Schneider was there.  Denise Gutierrez was

4  there from employee relations.  Edie Barnett from

5  our -- what we call our people department.  Chris

6  Sullivan and Charlene Carter.  And Chris was acting

7  as a 556 rep.

8  Q.   Did Ms. Carter admit at the fact-finding

9  meeting to sending the videos to Ms. Stone?

10  A.   Yes.

11  Q.   Now, had you had any previous dealings with

12  Ms. Stone?

13  A.   I knew her before, but not well.  I had met her

14  in, like, passing a few times.

15  Q.   In passing at the airport?

16  A.   Like at headquarters.  At the airport.

17  Q.   Can you describe to the jury your general

18  observations at the fact-finding meeting?

19  A.   Yes.  I was very surprised at the fact-finding

20  meeting.  I was -- I was frustrated at kind of what

21  was happening during the meeting.  It was a

22  difficult meeting.

23       Charlene kept taking us off topic, which the

24  topic was these videos that were sent, and there was

25  a lot of information being presented.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 60 of 425  PageID 15463
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1681

1     But what was frustrating about it was -- and

2  shocking was just she had such a lack of remorse in

3  this meeting and was very proud of what she had

4  done.

5     And that was shocking to me because it was so

6  different from the Charlene that I had interacted

7  with prior to this meeting.  I was kind of taken

8  aback by just the lack of humility and the lack of

9  receptiveness that this action was very hurtful to

10  another employee.

11  Q.   Were you the one who was responsible for taking

12  the notes of the meeting?

13  A.   Yes.

14          MR. McKEEBY:  And let's pull those up.  I

15  think they have been admitted.  98.

16  BY MR. McKEEBY:

17  Q.   Did you create this document?

18  A.   Yes, I did.

19  Q.   Did you say anything during the fact-finding

20  meeting?

21  A.   Yes, I did.

22          MR. McKEEBY:  Let me go to 98.13.

23  BY MR. McKEEBY:

24  Q.   It looks like, at the bottom of the page,

25  that's something that you said to Ms. Carter?

```
 1   A.    Yes, it is.
 2   Q.    Can you read that for the jury?
 3   A.    "Charlene, if I can clarify, you do have the
 4   right to disagree or complain about your union.
 5   It's the method in which you complain or how those
 6   complaints are made that causes concern when the
 7   nature of those complaints begins to impact one of
 8   our workplace policies."
 9   Q.    I think you'll have to go to the next page.
10   A.    "That's when it becomes an issue.
11         "Your most recent post to Audrey is the main
12   reason why we are here today, because of the graphic
13   images and graphic nature of the post.
14         "Audrey is still an employee of Southwest
15   Airlines and she's represented by these policies.
16   These are expectations and guidelines for all
17   employees.  Your most recent post to her was very
18   disturbing to her and made her uncomfortable."
19   Q.    How did you feel after the meeting?
20             MR. McKEEBY:  You can take that down.
21             THE WITNESS:  I was pretty shocked after
22   the meeting.  I was kind of reeling from it, just
23   the graphic nature of the post and the videos and
24   just Charlene's conduct in the meeting.  It just
25   left me feeling kind of like perplexed and upset for
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 62 of 425   PageID 15465
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1683

1   the rest of the day.

2   BY MR. McKEEBY:

3   Q.   Did you share those feelings with

4   Mr. Schneider?

5   A.   We did have a discussion.  I don't remember the

6   details of it.  But I did tell him that I was

7   shocked because it was just so different from the

8   Charlene I had interacted with previous to this

9   meeting.

10              MR. McKEEBY:  Pass the witness.

11              Thank you, Ms. Jones.

12              THE COURT:  Thank you, Mr. McKeeby.

13              Mr. Greenfield.

14                    CROSS-EXAMINATION

15   BY MR. GREENFIELD:

16   Q.   Good morning, Ms. Jones.

17   A.   Good morning.

18   Q.   It sounds like you are representing to the

19   Court and the jury that you are pretty Facebook

20   savvy, is that fair?

21   A.   You could say that.

22   Q.   And in your position in management, were you

23   tasked with looking at social media infractions or

24   complaints of flight attendants?

25   A.   Only if there was an infraction or a complaint

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1684

```
 1 | that would prompt me to look.
 2 | Q.   About how many do you think you reviewed?
 3 | A.   That's a loaded question.  Probably --
 4 | Q.   From 2015 to 2017, how many do you think you
 5 | reviewed?
 6 | A.   Probably thousands.
 7 | Q.   Thousands of complaints?
 8 | A.   Posts --
 9 |      Of posts.  Okay.
10 | A.   -- that were brought forward.
11 | Q.   Can you break that down to about how many
12 | complaints?
13 | A.   Hundreds of complaints.
14 | Q.   And would you be tasked with reviewing the
15 | complaints for all the different bases?
16 | A.   Not necessarily, no.
17 | Q.   Just if it involved an employee at your base?
18 | A.   Correct.
19 | Q.   And that was Phoenix, correct?
20 | A.   I was Denver and Phoenix --
21 | Q.   Denver.
22 | A.   -- based.
23 | Q.   Denver.  I apologize.  Thank you.
24 |         MR. GREENFIELD:  Sorry, Ms. Willis.
25 |
```

 1  BY MR. GREENFIELD:

 2  Q.   I believe you said it was Denver, is that

 3  correct?

 4  A.   In 2017, it would have been Denver-based.

 5  Q.   Okay.  And how many bases are there?

 6  A.   There's 11 what we call brick-and-mortar bases,

 7  and there's two satellite bases which are like

 8  remote bases.

 9  Q.   So you are saying hundreds of complaints just

10  at your base alone regarding social media

11  infractions?

12  A.   That touched my base alone, yes.

13          MR. McKEEBY:  Thank you.  No more

14  questions.

15          THE COURT:  All right.  And Mr. Pryor.

16          MR. PRYOR:  Not a thing, your Honor.

17          THE COURT:  So do you have any questions

18  based on Mr. Greenfield's questions, Mr. McKeeby?

19          MR. McKEEBY:  No.

20          THE COURT:  Any need to keep this witness?

21          We can excuse you back to your seat.

22          THE WITNESS:  Thank you.

23          THE COURT:  Okay.  Next witness for

24  Southwest.

25          MR. McKEEBY:  Southwest calls Denise

1   Gutierrez.

2              THE COURT:  Okay.  You may do so.

3                  (The witness entered the courtroom.)

4              THE COURT:  Ms. Gutierrez, you can come on

5   in and approach the witness box up here.

6              Before you get seated, we will need to

7   swear you in.  So if you could raise your right hand

8   and Mr. Frye will give you the oath.

9              (DENISE GUTIERREZ was duly sworn by the

10        Clerk.)

11             THE COURT:  Okay.  And I will just ask for

12   some space between questions from lawyers and

13   answers, and answers and questions.  That way, if

14   there is an objection, I can rule on it before you

15   answer.

16             You can proceed, Mr. Morris.

17                     DIRECT EXAMINATION

18   BY MR. MORRIS:

19   Q.   Hello, Ms. Gutierrez.

20   A.   Hi.  Good morning.

21   Q.   Ms. Gutierrez, who is your current employer?

22   A.   My current employer is JP Morgan Chase.

23   Q.   And what do you at JP Morgan?

24   A.   I do trend and theme analysis on conduct

25   activity for the firm.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 66 of 425   PageID 15469
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1687

1  Q.   And prior to working at JP Morgan, who was your

2  employer?

3  A.   Southwest Airlines.

4  Q.   And how long were you employed by Southwest

5  Airlines?

6  A.   Just shy of ten years, like nine and a half

7  years.

8  Q.   And what positions did you hold at Southwest?

9  A.   I was the -- I was an employee relations senior

10 investigator.

11 Q.   Was that your position throughout your tenure

12 at Southwest?

13 A.   Yes, through the majority of my tenure there,

14 yes.

15 Q.   And what were your duties at Southwest?

16 A.   I was responsible for conducting investigations

17 related to the harassment, sexual harassment,

18 discrimination and retaliation policy.

19 Q.   And can you tell me a little bit about employee

20 relations in general, what kind of things did they

21 do at Southwest?

22 A.   So when we would get allegations that someone

23 may have engaged in behavior that potentially

24 violated the policy related to harassment, sexual

25 harassment, discrimination and retaliation, we were

1  required to do an investigation, which meant that we

2  would interview individuals that might have relevant

3  information to the alleged behavior.  We would also

4  look at any additional information that might be

5  relevant to those allegations.

6      Based on that information, we would assess

7  whether there was policy violation or not.

8  Q.  And did you work with the labor relations

9  department in conducting these investigations?

10  A.  Yes.  If it did involve a union employee, we

11  would, yes.

12  Q.  Are you familiar with an investigation into a

13  complaint made by Audrey Stone regarding Charlene

14  Carter?

15  A.  I am, yes.

16  Q.  And how did you become familiar with that?

17  A.  I don't 100 percent recall, but based on what I

18  can recall, I believe that there was an email sent

19  to the employee relations email, distribution group

20  email, related to some concerns that Audrey Stone

21  had related to some Facebook messages that she had

22  received from Charlene Carter.

23  Q.  And when you learned about the investigation,

24  were you familiar with Ms. Carter?

25  A.  I was not.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 68 of 425   PageID 15471
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1689

 1              MR. MORRIS:  If we can pull up Exhibit 76.
 2              THE WITNESS:  Hold on one second.  I have
 3   got to put on my glasses.
 4   BY MR. MORRIS:
 5   Q.   Sure.
 6   A.   Okay.
 7   Q.   If you look at the top of this email, it looks
 8   like it's an email from you to Ed Schneider.
 9        Do you recall this email?
10   A.   I do, yes.
11   Q.   Is this you reaching out to him to say that you
12   are going to assist with the investigation?
13   A.   That is correct, yes.
14              MR. MORRIS:  We can take that down.
15   BY MR. MORRIS:
16   Q.   So what did you do in connection with the
17   investigation into Ms. Carter?
18   A.   I'm sorry, I didn't hear that.
19   Q.   What did you do in connection with the
20   investigation into Ms. Carter?
21   A.   So I partnered with the in-flight base to
22   conduct a fact-finding.  So that's usually how
23   employee relations worked with in-flight, was that
24   in-flight would lead the fact-finding, and employee
25   relations would partner with them in the

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 69 of 425   PageID 15472
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1690

 1   fact-finding.  So we would interview all of the

 2   parties together.

 3   Q.   So did you attend the fact-finding meeting with

 4   Ms. Carter?

 5   A.   I did, yes.

 6   Q.   And what was your role in that fact-finding

 7   meeting?

 8   A.   With Ms. Carter?

 9   Q.   Yes.

10   A.   My role was as an active participant in asking

11   questions related to the alleged behavior with

12   Audrey Stone.  My role was specifically to the

13   behavior specific to the harassment, sexual

14   harassment, discrimination and retaliation policy.

15   Q.   And did you attend a fact-finding meeting with

16   Ms. Stone?

17   A.   I believe I did, yes.

18   Q.   And was your role the same in that meeting as

19   well as it was in Ms. Carter's fact-finding meeting?

20   A.   More or less.  You know, Audrey Stone's was

21   really to get much more information as to what her

22   concerns were relative to the allegation she was

23   making to Ms. Carter.

24   Q.   Did you make any -- let me step back.

25        When you're participating in an investigation,

 1  do you typically summarize your findings in some

 2  way?

 3  A.   After we've conducted all of the interviews,

 4  you mean?

 5  Q.   Correct.

 6  A.   Yes.  Usually we would put together a summary

 7  of sorts determining our outcome.

 8  Q.   Do you recall making any conclusions in this

 9  case regarding the violations of the harassment

10  policy?

11  A.   Yes, I do recall making some determinations.

12          MR. MORRIS:  Let's look at Exhibit 108,

13  please.

14  BY MR. MORRIS:

15  Q.   If you look down at the bottom, and it goes on

16  to the next page.

17      Does this document look familiar to you?

18  A.   It does, yes.

19  Q.   And what is this document?

20  A.   It would be just a summary of my findings

21  related to the harassment, sexual harassment,

22  discrimination, retaliation policy.

23  Q.   And looking at this document, and based on your

24  recollection, what were your findings in this case

25  regarding Ms. Carter?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 71 of 425   PageID 15474
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1692

1  A.    Well, you know, to be fair, I don't fully

2  remember, since it has been a little while since

3  then.

4       But looking at this email, I can see that my

5  findings were partially supported to the allegations

6  that Ms. Stone made against Ms. Carter.

7  Q.    Can you explain what you meant by "partially

8  supported"?

9  A.    Yes.  So to the best of my recollection,

10 Ms. Stone had made, you know, several allegations

11 related to the material that she received from

12 Ms. Carter via Facebook.  And we could only

13 substantiate that part of those allegations were

14 supported to violate the harassment, sexual

15 harassment, discrimination and retaliation policy.

16      So that's what we meant by "partially

17 supported," what I meant by "partially supported."

18 Q.    Do you recall what those posts were that

19 partially supported a violation of that policy?

20 A.    If I recall, I believe it was related to some

21 pictures that were sent of women who were dressed

22 like vaginas.

23 Q.    And you thought that supported a violation of

24 the harassment policy?

25 A.    I did, yes.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  Q.   Did you make the decision to terminate

2  Ms. Carter?

3  A.   No.

4  Q.   Do you know who made that decision?

5  A.   That would be, you know, the in-flight base

6  management in collaboration with labor relations.

7  Q.   And when you are involved in an investigation

8  like Ms. Carter's, is it normally your role to make

9  a determination as to an appropriate discipline?

10  A.   No.

11  Q.   Who makes that decision?

12  A.   It would be leadership in conjunction with, if

13  it's a union employee, labor relations.  If it's a

14  non-union employee, usually their HR representative.

15  But employee relations had no role in determining

16  corrective action.

17  Q.   So it's fair to say that your role was just

18  assessing whether there had been a violation of the

19  policy?

20  A.   That's correct.

21          MR. MORRIS:  Pass the witness.

22          THE COURT:  All right.  Mr. Greenfield.

23                CROSS-EXAMINATION

24  BY MR. GREENFIELD:

25  Q.   Good morning, Ms. Gutierrez.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 73 of 425   PageID 15476
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1694

1  A.    Good morning, Mr. Greenfield, is that right?

2  Q.    It's Mr. Greenfield.  I represent the Union.

3  A.    Okay.

4  Q.    Okay?

5        Did anyone at the Union try to improperly

6  influence your investigation into the matter?

7  A.    No, not that I can recall.

8  Q.    And when conducting an investigation, are there

9  different rules for different employees?

10 A.    No, I don't believe so.

11 Q.    Would you treat an investigation differently

12 because the complaint was made by a union executive

13 board member?

14 A.    No.

15            MR. GREENFIELD:  Pass the witness.

16            MR. HILL:  No questions, your Honor.

17            THE COURT:  Okay.  Any need to reserve her

18 for a recall?

19            With that, you are excused as a witness.

20 Thank you for your testimony.

21            THE WITNESS:  Thank you.

22            (The witness exited the courtroom.)

23            THE COURT:  Southwest, do we have another

24 witness to call?

25            MR. McKEEBY:  We do.  Mike Sims.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 74 of 425   PageID 15477
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1695

```
 1                   (The witness entered the courtroom.)

 2                   THE COURT:  Mr. Sims, you can come on up

 3     here and approach the witness box.

 4                   Before you get into the box, can I have

 5     you raise your right hand.  We're going to swear you

 6     in.

 7                   (MIKE SIMS was duly sworn by the Clerk.)

 8                   THE COURT:  Okay.  Now you can take a

 9     seat.

10                   THE WITNESS:  Thank you, sir.

11                   THE COURT:  And Mr. Sims, I ask all

12     witnesses if they could help us keep some space

13     between questions that the lawyers that ask you and

14     your answers, and then ask the lawyers to keep space

15     between your answer and their question.

16                   THE WITNESS:  Yes, sir.

17                   THE COURT:  That way we can keep a clean

18     record and I can rule on any objections from the

19     lawyers before you answer.

20                   THE WITNESS:  Yes, sir.

21                   THE COURT:  You can proceed, Mr. McKeeby.

22                   MR. McKEEBY:  Thank you.

23                           DIRECT EXAMINATION

24     BY MR. McKEEBY:

25     Q.   Will you please state your name for the record.
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1696

```
 1  A.    Michael Sims.  S-I-M-S.

 2  Q.    How are you currently employed?

 3  A.    I'm currently employed at Southwest Airlines as

 4  a senior director of in-flight operations.

 5  Q.    How long have you been in that position?

 6  A.    Since 2017.

 7  Q.    What did you do before that?

 8  A.    Regional director, in-flight operations.

 9  Q.    Tell the jury, what's the difference between a

10  senior director and a regional director?

11  A.    Well, a regional director, in that instance, I

12  was managing flight attendant bases across the

13  United States.  At one point I had the eastern part

14  of the United States, at another point I had the

15  western part of the United States.

16        I was promoted to senior director in 2017 where

17  that encompassed the entire area of the United

18  States for in-flight bases, which now are 11 bases,

19  but back then it was 10.

20  Q.    When in 2017 did you receive that promotion?

21  A.    That was mid summer.

22  Q.    Okay.  I asked that because I want to focus on

23  your job prior to that time.

24        And so am I right that prior to that time, you

25  were a regional director?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 76 of 425   PageID 15479
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1697

 1  A.    That is correct, sir.

 2  Q.    I understand you explained a little bit about

 3  the breakdown and the difference between a senior

 4  and regional director.

 5        But as a regional director, can you generally

 6  describe your job duties to the jury.

 7  A.    Yes, sir.

 8        Regional director primarily is focused with

 9  ensuring that our flight attendants are meeting

10  company standards in terms of delivering customer

11  service.

12        So my job included insurance of the customer

13  experience for the people that fly Southwest

14  Airlines in terms of how our flight attendants

15  deliver it.

16        It also consisted of ensuring overall job

17  performance of our flight attendants, and then also

18  ensuring that our in-flight bases, which were

19  scattered throughout the United States, were running

20  effectively.

21  Q.    Have you ever been a flight attendant with

22  Southwest Airlines?

23  A.    Yes, sir.  I was hired as a flight attendant in

24  November of 1996.  Served as a flight attendant from

25  1996 to June of 2007.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1698

1  Q.   Were you a member of the Union during that time

2  period?

3  A.   Yes, sir.  I was a member of transport workers

4  Union Local 556, as all flight attendants are.

5       In addition, I was elected as a union officer

6  in 2003.  I was elected as executive board member at

7  large, and at that point, I was appointed to run the

8  union office, if you will, and process employee

9  grievances.

10      So I was full-time in the union from 2003

11  through 2006.  Excuse me, until April of 2006.

12  Q.   Thank you.

13      Mr. Sims, it sounds like, given your

14  background, you are pretty knowledgeable about Local

15  556, I take it?

16  A.   Yes, sir.

17  Q.   I just kind of want to get some explanation so

18  that the jury understands the relationship between

19  Southwest Airlines and Local 556 in terms of their

20  interactions.

21      Can you just provide sort of a general

22  description of that?

23  A.   Yes.  Overall, the interactions between

24  Southwest Airlines and Transport Workers Union Local

25  556 is very professional and it's amicable.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1        There are disagreements, as you can imagine

2   when it comes to collective bargaining and

3   collective bargaining agreements and their

4   administration.

5        But Southwest is very unique in the fact that

6   we have been able to work with the union through the

7   processes that allow us to resolve disputes through

8   the good times and the bad times.

9   Q.   Fair enough.

10       How about in terms of the structure of the two

11  entities.  Do they have the same, for example,

12  policies and laws -- I mean policies and procedures?

13  A.   Oh, no, sir.  It's important to note that TWU

14  Local 556 and Southwest Airlines are separate

15  entities.

16  Q.   What does that mean?

17  A.   Excuse me?

18  Q.   What do you mean by that?

19  A.   Well, by "separate entities," I mean that

20  Southwest Airlines is the company that we know that

21  operates aircraft and flies customers around the

22  country.

23       TWU Local 556 is a separate organization that

24  has its own governance, has its own budget, has its

25  own operating rules, bylaws, et cetera.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 79 of 425  PageID 15482
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1700

1      What makes the two in common is while they are

2  separate entities, TWU Local 556 is operated by

3  Southwest Airlines employees.

4  Q.   Understood.  Thank you for that clarification.

5      As a regional director of in-flight operations,

6  did you preside over something called a Step 2

7  hearing?

8  A.   Yes, sir.  At that time, I presided over the

9  majority of them, if not all.

10 Q.   All of them within your region?

11 A.   Yes, sir.  If not in the region, over the

12 whole -- the entire group of bases.  It just depends

13 on where we were in terms of our org structure at

14 that point.

15     So we did some re-orgs and we were a little

16 short-handed for a while.  How is that?

17 Q.   Understood.

18     How about the spring of 2017, did you preside

19 over --

20 A.   Yes.

21 Q.   -- Step 2 meetings at that time?

22     And we will get it, but you presided over

23 Ms. Carter's Step 2 hearing?

24     That is correct, yes, sir.

25          MR. HILL:  Running objection on relevance

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 80 of 425   PageID 15483
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1701

1    and 403.

2              THE COURT:  I will grant you that running

3    objection.

4              I will overrule it and you can answer the

5    question and continue.

6    BY MR. McKEEBY:

7    Q.   Before we get into the specifics of Ms. Carter,

8    can you briefly explain to the jury what a Step 2

9    hearing is?

10   A.   Well, a Step 2 hearing is what we would

11   consider the beginning of an appeal process for an

12   employee who has found themselves in disagreement

13   with company action when it comes to issuing

14   discipline.

15         So under the Collective Bargaining Agreement,

16   our contract with Transport Workers Union Local 556,

17   we have an appeals process that allows decisions to

18   be further reviewed and analyzed and checked for

19   additional information.

20         So the Step 2 hearing, we call it Step 2,

21   because Step 1 is, Hey, I don't like or I disagree

22   with this decision, so Step 1, I file for appeal.

23         Step 2 is where the appeal is heard at my level

24   to review what transpired at the in-flight base

25   level by usually the decision made by base

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 81 of 425   PageID 15484
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1702

 1  leadership.

 2  Q.   Now, again, speaking generally, do you have any

 3  particular involvement with the grievance prior to

 4  the Step 2 hearing?

 5  A.   No, sir.

 6  Q.   I think I asked you, but were you involved in

 7  Ms. Carter's Step 2 hearing?

 8  A.   I was involved in her Step 2 hearing, yes, sir.

 9  Q.   What did you do, if anything, to prepare for

10  the Step 2 hearing in Ms. Carter's case?

11  A.   It was pretty standard in terms of preparation.

12  So we have a department in Southwest Airlines, it is

13  our labor relations department.  They are tasked

14  with managing the administrative part of an appeal.

15       So they sent me notice that Ms. Carter wanted

16  to appeal her termination, so they sent me the

17  information surrounding the circumstances.

18       So that would be, you know, correspondence or

19  notes or anything that had to do with the decision

20  that they made at that level.

21       So I reviewed that prior to going in and I

22  reviewed her termination letter.

23  Q.   Okay.  Did part of that -- part of the

24  materials that you reviewed include the videos that

25  we've discussed in this case, I will tell you?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 82 of 425   PageID 15485
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1703

1  A.    Yes, sir.

2  Q.    Did you watch the videos?

3  A.    I did not watch them prior to her meeting with

4  me, but I was aware of them.  I saw that they were

5  stills.  I received pictures of the videos and then

6  saw the videos later.

7  Q.    Okay.  That was part of the labor relations

8  file that you mentioned?

9  A.    Yes, sir.

10 Q.    The still photos?

11 A.    Yes, sir.  Screen shots.

12 Q.    Screen shots, sorry.  Thank you.

13        When did you review, or when did you watch the

14 videos?

15 A.    Ah, somewhere during -- there is a 10-day

16 process after our meeting, and that's when we have a

17 decision time period.  I saw it during that and also

18 saw them in preparation for an arbitration that took

19 place later.

20 Q.    All right.  Well, then let's continue on the

21 timeline before we get to that.

22        So to kind of set the table, if you will,

23 for -- where was Ms. Carter's Step 2 hearing?  Where

24 did it take place?

25 A.    We held the meeting at Southwest Airlines

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 83 of 425   PageID 15486
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1704

1  headquarters.  We have designated conference rooms

2  for those meetings, and she and her union

3  representatives met us there.

4  Q.   In person?

5  A.   Yes, sir.

6  Q.   Do you recall who her union representative --

7  you said plural representatives, more than one?

8  A.   Yes, sir.

9  Q.   Do you recall who that was?

10  A.   Yes, sir.

11  Q.   Who?

12  A.   There was two.  Becky Parker, P-A-R-K-E-R, and

13  Beth Ross, R-O-S-S.

14  Q.   Okay.  Did Carter present any documents during

15  the Step 2 hearing?

16  A.   Yes, she did.  She presented numerous

17  documents.

18  Q.   Okay.

19        MR. McKEEBY:  If you can pull Exhibit 118.

20  BY MR. McKEEBY:

21  Q.   Do you recognize this document, Mr. Sims?

22  A.   Yes, sir, I do.

23  Q.   Tell the jury what this is.

24  A.   What this is, is a list of the information that

25  she provided for us in terms of the documents.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 84 of 425  PageID 15487
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1705

1      And some of them were -- well, they were all

2  provided by her.  Some were articles from the

3  Internet.  Some were information that she felt was

4  pertinent to her case.  This is just a collective

5  list of those documents.

6  Q.   Okay.  And did she actually come to the meeting

7  and present this packet to you?

8  A.   Yes, she did present a packet.  Yes, that is

9  correct.

10  Q.   And I think -- are there different -- this an

11  index of 10 documents.  Are there more than that?

12  A.   I think there are.

13  Q.   I do, too.

14      So if you will go to 118.30, what is that

15  document?

16  A.   That's a continuation of the previous list.

17  Q.   And what about 118.61, if you could pull that.

18  A.   Again, that is continuation of the previous two

19  lists.

20  Q.   So more documents?

21  A.   Yes, sir.

22  Q.   Okay.  And, I'm sorry, I forgot if you have

23  done this, but can you just kind of generally

24  describe the content?

25      I mean, it is a long, lengthy exhibit, and I

 1   don't want to walk through step-by-step with you.

 2   But can you just describe generally to the jury what

 3   this packet of documents consisted of?

 4   A.    Yes.  During a Step 2 meeting -- and this is,

 5   again, when they are appealing, in Ms. Carter's

 6   case, the termination -- we encouraged them to bring

 7   any information that they feel is pertinent or may

 8   be information that wasn't considered or information

 9   that would provide additional context.

10        So in Ms. Carter's case, she brought to me

11   numerous documents that she believed would be

12   helpful to me in making a decision in her favor.

13        So it's pretty typical that the union and the

14   grievant bring additional information or

15   information, again, to provide additional context.

16        So this gave me an opportunity to learn a

17   little bit more about her point of view and her

18   thoughts on why she felt that her termination was

19   not reasonable.

20   Q.    And during the Step 2 hearing, did you go over

21   the different documents that she provided?

22   A.    Well, there were numerous documents, so what we

23   agreed was that we would label them so I could keep

24   track of them, and then I committed to Ms. Carter

25   that I would look at them after the meeting.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 86 of 425   PageID 15489
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1707

1        Because I felt that the documents were

2    important to her, therefore, they were important to

3    me, but I also wanted to hear her speak and tell me

4    her point of view.

5        And there just wasn't enough time to read 30

6    documents because some of them were two or three

7    pages each.  So I did review them after our meeting

8    a couple of days after we met.

9    Q.   Did you go over the documents in terms of

10   asking Ms. Carter what they were?

11   A.   Yes.

12   Q.   And that was during the Step 2 grievance?

13   A.   Yes, sir.

14       So how it worked was she would hand me a

15   document and say, This is an article on the AFL-CIO

16   as an example.

17       And then I would say, Okay, let's mark this as

18   an AFL-CIO document.

19       And then we would set it aside and then move on

20   to the next one and the next one after that.

21           MR. McKEEBY:  Okay.  You can take that

22   down.

23   BY MR. McKEEBY:

24   Q.   Was there anything else with Southwest Airlines

25   at the Step 2 hearing?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 87 of 425   PageID 15490
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1708

 1  A.   Yes.  When we conduct Step 2 hearings, we have

 2  a representative from our labor relations

 3  department, as they act as the case manager, if you

 4  will.

 5        And in this case we had a manager by the name

 6  of Melissa Burdine, B-U-R-D-I-N-E.

 7  Q.   And she's with labor relations?

 8  A.   She was.  She has since left the company.

 9  Q.   What was her role at the Step 2 hearing?

10  A.   Her role was to ensure that the documents were

11  present.  She took notes and then she also provided

12  counsel to me after the meeting.

13            MR. McKEEBY:  If we could go to

14  Exhibit 119.

15            MR. HILL:  Objection.  The ones discussed

16  this morning.

17            THE COURT:  On 119?

18            MR. McKEEBY:  Should I move to admit

19  first?

20            THE COURT:  Yes.

21            MR. McKEEBY:  Move to admit and publish

22  Exhibit 119.

23            THE COURT:  Okay.  I have the objections

24  from this morning.  I'm overruling those and

25  admitting 119.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 88 of 425   PageID 15491
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1709

```
 1              You can publish.
 2              (The referred-to document was admitted
 3         into evidence as Trial Exhibit 119.)
 4  BY MR. McKEEBY:
 5  Q.   The first page of 119 is an email, correct?
 6  A.   Yes, sir.
 7  Q.   Can you describe to the jury what that email
 8  is?
 9  A.   This is an email from the labor relations
10  manager, Melissa Burdine, sending it to me on
11  April 6th -- that was a couple of days after the
12  hearing -- her notes that she typed during our
13  hearing.
14       And she just mentioned here that -- and this
15  did happen -- her laptop that she was working on at
16  the time, it powered down for a few minutes, but she
17  was able to plug it in.  We took about a three- or
18  four-minute break while she plugged it in.
19       And then "I will send the labor recap to you
20  next week."
21  Q.   And then if you go to the next page, are those
22  her notes?
23  A.   Yes.
24              MR. McKEEBY:  You can take that down for
25  now.
```

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 89 of 425  PageID 15492
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1710

1  BY MR. McKEEBY:

2  Q.   Okay.  You go through the documents.  You

3  indicated that she handed them to you and that you

4  then later reviewed them.

5       What did you do next during the Step 2

6  grievance hearing?

7  A.   After the hearing, or are we still during?

8  Q.   No, no, no.  Still in the hearing.  You have

9  gone through the documents.  I understand you didn't

10  go through each one, but there was a labeling

11  process during the hearing, as I understood it?

12  A.   Yes.

13  Q.   Okay.  So what happened next at the hearing?

14  A.   At the hearing it was a pretty typical hearing.

15  And what I did was I asked Ms. Carter why she felt

16  that the termination was unjust or why she believed

17  that our company was making a mistake.

18  Q.   What do you recall her saying in response to

19  that question?

20  A.   Well, she was in a dispute with Transport

21  Workers Union Local 556.  And then during the --

22  after we went through the exhibits, we had more

23  discussion where she gave me her point of view of

24  why she felt that she wanted her job back.

25  Q.   What do you recall generally her saying about

 1  that?

 2  A.   Well, she asked me, Can I have my job back?

 3  Q.   During the Step 2 hearing, did she admit

 4  sending the video messages to Ms. Stone?

 5  A.   Yes.  There was never any dispute between us

 6  that they were sent and she did acknowledge that she

 7  sent them.

 8           MR. McKEEBY:  119 again.

 9  BY MR. McKEEBY:

10  Q.   Was Ms. Carter apologetic at all during the

11  Step 2 hearing?

12  A.   I think she was -- she appeared to be

13  remorseful at that hearing and said that she had

14  gone a little over the top.

15           MR. McKEEBY:  Let's look at 119.5.  I'm

16  sorry.  15, I think.  Yes, 15.  It's at the bottom

17  here where it says "the last three weeks," the last

18  bullet.  "The last three weeks."  There we go.

19  BY MR. McKEEBY:

20  Q.   Do you see that where it says "the last three

21  weeks"?  Can you read that to the jury, Mr. Sims?

22  A.   Yeah, starting -- okay.

23       "The last three weeks I could have made a

24  better choice regarding Audrey.  I don't know why

25  they won't let us know.  This has nothing to do with

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 91 of 425   PageID 15494
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1712

1  Southwest.  This was something about the Women's

2  March, because we paid for it and they didn't say

3  anything to us before they went."

4  Q.   Is that the -- that's not testimony, she wasn't

5  under oath, but is that the statement that you were

6  recalling a moment ago?

7  A.   Yes.

8            MR. McKEEBY:  And if you go to 119.16.

9  About halfway down, where it says "cc."  Yes, that's

10  the one.

11  BY MR. McKEEBY:

12  Q.   Is this where she's asking for her job back?

13  A.   Yes.  She directly asked me, Can I have my job

14  back, because I do love my job and company.

15  Q.   And did you also have a discussion during the

16  Step 2 hearing about her sending other Facebook

17  messages to other Southwest employees?

18  A.   Yes.

19  Q.   What do you recall about that?

20  A.   I recall that she was --

21            MR. HILL:  Objection, relevance.

22            THE COURT:  Overruled.

23            You can answer.

24            THE WITNESS:  I recall that she was very

25  passionate about her beliefs and her values, and she

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 92 of 425   PageID 15495
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1713

1  wanted to share those beliefs and values with other

2  people.

3          MR. McKEEBY:  Let's look at 119.17.  The

4  next page, I guess.  The one that says "cc" about

5  midway through, "I promise."

6          THE WITNESS:  Yes, sir.

7  BY MR. McKEEBY:

8  Q.   Does that refresh your recollection as to what

9  was said about further Facebook posts?

10  A.   Yes.

11  Q.   I'm sorry, messages?

12  A.   Yes.

13       She's saying here "I promise it will never

14  happen again.  If they don't like what's said, I

15  won't do it."

16  Q.   And then at the top of the page, where it says

17  "BP," who do you know who that is?

18  A.   BP are the initials for Becky Parker, who was

19  one of her union representatives.

20          MR. McKEEBY:  And if you could blow that

21  up.

22  BY MR. McKEEBY:

23  Q.   And that very last line of her question is

24  what?

25  A.   "Can I trust" -- let me back up.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 93 of 425  PageID 15496
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1714

1        This is where her union representative turns to

2   Ms. Carter and asks, "Can I trust you won't do it

3   again?"

4   Q.   Okay.  And what did she say?

5   A.   "Yes.  I won't."

6              MR. McKEEBY:  You can take that down now.

7   BY MR. McKEEBY:

8   Q.   About how long was the Step 2 hearing?

9   A.   I think it was between 90 minutes and almost

10  two hours.

11  Q.   So you mentioned something earlier about 10

12  days.  What was the significance of that?

13  A.   Well, as I mentioned earlier, Southwest

14  Airlines and the flight attendant union have an

15  agreement, and in that agreement, which is the

16  contract, there is an appeal process that is laid

17  out.

18       So we start with Step 1.  Then we have Step 2.

19  But then there are days that are designated between

20  those steps for the company or the union to gather

21  additional information.

22       So in this case, we take, in Step 2, 10

23  business days afterwards to review all of the

24  information, and then we have that time period to

25  formulate our decision back to the union.

 1  Q.   I think you have alluded to a couple of things.

 2       But in this case, what did you do during that

 3  10-day period?

 4  A.   During that 10-day period, I reviewed all of

 5  the documents that Ms. Carter supplied.  I conferred

 6  with labor relations and, you know, read through

 7  some other things about -- just on my own about how

 8  things were in the current state, you know, of the

 9  times.  And that's how I came to make my decision.

10  Q.   When you say you conferred with labor

11  relations, do you recall with whom you conferred?

12  A.   That would have been the manager, Melissa

13  Burdine.  Possibly her leader at the time who has

14  retired, Tammy Schaffer.

15  Q.   Okay.  And did I understand your testimony

16  earlier correctly that you viewed the videos during

17  that 10-day window?

18  A.   Yes, sir.

19  Q.   Why did you do that?

20  A.   I just wanted to know.

21  Q.   What was your reaction when you saw the videos?

22       By that time you had gone though the Step 2

23  hearing, you had heard from Ms. Carter, correct?

24       What was your reaction?

25  A.   The videos were very impactful to me.  I hated

1  them.  They were ugly.  They were disgusting.

2       That's just the tip of the iceberg of how it

3  made me feel.  It made me feel sick.

4  Q.   Mr. Sims, I take it that part of the review

5  process at the Step 2 hearing involves your

6  assessment as to the decision that in this case

7  Mr. Schneider made?

8  A.   Yes.

9  Q.   And did you agree with that decision?

10  A.   I agreed with Mr. Schneider's decision.

11       Ms. Carter's actions under the Southwest

12  Airlines policy, procedures and our overall mission,

13  she was -- she was terminated for good reason.

14  Q.   Now, at the end of the Step 2 hearing, what

15  options did you have?

16  A.   The agreement or the contract we have with the

17  Union gives me three options at the end of a Step 2.

18       The first option is I can just accept the

19  grievance, and just say, Union, you were correct, we

20  are going to restore her employment as if nothing

21  happened.

22       The second option I have is to offer a

23  settlement, meaning that in most cases we will

24  return them back to work but with some conditions,

25  you know.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 96 of 425   PageID 15499
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1717

1     And then the final option I have is what we

2  call -- I have the authority to deny the grievance,

3  which simply means it sends it to the next stage in

4  the process, which would be a Step 3.

5  Q.   And which of these options did you arrive at?

6  A.   After careful thought, I offered a settlement.

7  Q.   And why did you -- what was the -- can you just

8  describe generally, I will show you the document in

9  a minute, but can you describe generally what you

10 mean by that.  What did you do?

11 A.   Ms. Carter asked me if she could --

12          MR. HILL:  Objection.

13          THE COURT:  I'll overrule.

14          You can answer.

15          MR. HILL:  And the settlement

16 communication.

17          THE COURT:  Yes, overruled.

18          You can answer.

19 BY MR. McKEEBY:

20 Q.   Explain generally what the proposal was, if you

21 will.

22 A.   Well, Ms. Carter asked me for her job back, and

23 I decided to help her get her job back.

24 Q.   And why did you do that?

25 A.   I wanted to give her another chance.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 97 of 425   PageID 15500
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1718

1  Q.   You said you agreed with the decision.  Why did

2  you decide to give her her job back?

3  A.   Well, she was fired for all of the right

4  reasons, but the appeals process allows us to step

5  back a little bit and review.

6       So while she was fired for all of the right

7  reasons, she convinced me in the Step 2 that she

8  would be different.  And I looked at the fact that

9  she was a long-term employee, she had a good

10 employee record, and I just, at the end of the day,

11 wanted to give her another chance.

12 Q.   And I think in the context of this case, we

13 have been referring to something called the last

14 chance agreement.  Is that the proposal to which you

15 are referring?

16 A.   Yes, sir.

17           MR. McKEEBY:  Can you pull up Exhibit 40?

18 It's in evidence.

19 BY MR. McKEEBY:

20 Q.   Can you identify this document for the jury?

21 A.   Yes, sir.  This is the last chance agreement

22 that I authorized to be offered to Ms. Carter.

23 Q.   And is this the same -- is this a form that you

24 had used in other cases?

25 A.   Yes.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 98 of 425  PageID 15501
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 6 July 12, 2022                Page 1719

 1  Q.   Let's kind of go over the terms so that the

 2  jury understands.

 3       The first bullet -- I'm going to have them blow

 4  it up for you to make it easier to read.

 5  A.   Thank you.

 6  Q.   You are welcome.

 7       Just explain to the jury what that means.

 8  A.   Well, this was me granting Ms. Carter's

 9  request, and the company is going to reinstate her

10  employment, give her her job back.

11  Q.   What does "no loss of seniority" mean?

12  A.   What that means is, in the airline world or the

13  industrial world, if you will, where there is union

14  agreements, how we schedule people for their work is

15  based on seniority, or their length of service.

16       So they are able to bid for schedules or bid

17  for vacation, or get other possible other things

18  based on their length of service or their seniority.

19       So in this case, we didn't ding her, if you

20  will, with her seniority.  Her seniority was

21  restored, or left status quo, excuse me.

22  Q.   Okay.  The next bullet says, "You will receive

23  Konop pay."

24       What does that mean?

25  A.   What that meant was we were not offering any

 1  back pay as if she had stayed at the company and was

 2  working.

 3       I made that decision because in reviewing her

 4  work history, she was not working that much.  And

 5  also, this was just another way of just saying,

 6  we're going to agree to there will be Konop pay.

 7       She really wasn't eligible for back pay anyway,

 8  since there was no work completed.

 9  Q.   What do you mean, no work completed?

10  A.   Flight attendants have a lot of flexibility to

11  modify their schedule and they can work pretty much

12  as they want in the guardrails of federal -- of

13  aviation regulations, or they can work as little as

14  they want.

15       So at that period, Ms. Carter wasn't working

16  enough to warrant a check, if you will, for coming

17  back to work.

18            MR. McKEEBY:  Okay.  Let's tick down to

19  the next bullet.

20  BY MR. McKEEBY:

21  Q.   What does that mean?

22  A.   So I reduced her termination to a 30-day

23  suspension.  So what that meant was I reinstated her

24  employment, but we had to reconcile this event

25  because she violated company policy.  She did some

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 100 of 425   PageID 15503
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                    Page 1721

 1   things that were warranting termination of

 2   employment.

 3        So just to reconcile this under our work

 4   conduct rules, I added we would just convert that

 5   termination to a 30-day suspension, which is pretty

 6   innocuous here because she had already served that

 7   suspension, if you will.  So it was just something

 8   that would be reflected in her file, her employment

 9   file.

10              MR. McKEEBY:  Let's tick down to the next

11   one.

12   BY MR. McKEEBY:

13   Q.   Can you just tell the jury what that means?

14   A.   Yes.  We pay -- most airlines or other

15   employers pay by the hour, so you are paid 40 hours

16   a week, for example.

17        We use a term called TFP, trips for pay.

18        Not necessary to know all of that, what that

19   means.  But what we do is when somebody is

20   terminated, they accrue vacation time.

21        So once somebody is terminated, we know they

22   are not going to take that vacation time, so we just

23   pay out that vacation in a check to reconcile it.

24        So on return to work in this case, we gave her

25   the option, you can keep that money we paid to you

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 101 of 425   PageID 15504
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1722

1   for your earned vacation, but if you want to

2   reinstate those vacation days, then you will just

3   pay us back and we will put that back into your

4   vacation bank.

5   Q.   Thank you, Mr. Sims.

6           MR. McKEEBY:   Let's tick down to the next

7   bullet.

8   BY MR. McKEEBY:

9   Q.   What does that mean?

10  A.   "Any record improvement will be delayed for a

11  period of time equal to the time from termination."

12      Okay.  So in the flight attendant contract, we

13  have a section that administers our attendance

14  policy.

15      So in layman's terms when a flight attendant

16  calls in sick and that is not covered by a doctor's

17  note, we assess them points.  Okay?  And they have

18  an ongoing record of attendance points that they

19  accrue for absenteeism.

20      In this case, what we did was when we reinstate

21  somebody, we always restart the record improvement

22  clock, which means that when you accrue points, you

23  have the ability several times through the year to

24  have those points removed.  And we call that record

25  improvement.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 102 of 425   PageID 15505
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1723

1      So this is pretty simple here.  All this is, is

2  clarifying that we will not use that record

3  improvement mechanism for the time that she was gone

4  because there is really nothing to improve, since

5  she was gone.

6  Q.   Okay.

7            MR. McKEEBY:  Let's go to the next one.

8  BY MR. McKEEBY:

9  Q.   So you, if I understand correctly, you were

10 going to have her sign an attachment?

11 A.   Yes, sir.

12 Q.   Can you generally describe that attachment?

13 A.   It's a -- it's a general legal release, and it

14 is a way to put this issue to bed.  It is we sign

15 the release and we are done.

16 Q.   Was that common in the context of last chance

17 agreements you had provided to other employees?

18 A.   Yes.

19 Q.   Let me ask you this.  Would the release have

20 still permitted -- if she had signed the release,

21 would she still have been permitted to pursue a

22 claim against the Union Local 556?

23            MR. HILL:  Objection, calls for a legal

24 conclusion.

25            THE COURT:  I will allow it if he has

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 103 of 425   PageID 15506
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1724

 1  personal knowledge.

 2            THE WITNESS:  I'm not sure.

 3  BY MR. McKEEBY:

 4  Q.   Let me help you.

 5            MR. McKEEBY:  Let's go to 40.3, and we

 6  will flip back to this.

 7  BY MR. McKEEBY:

 8  Q.   Paragraph 2.  Can you just take a look at the

 9  first -- look at how the -- what parties are being

10  released.  The first is Southwest Airlines, and what

11  is AirTran?

12  A.   AirTran is a former airline that was based in

13  Atlanta, Georgia, that Southwest Airlines acquired

14  in 2010, and we merged the AirTran operations and

15  employees into Southwest Airlines.

16  Q.   So the Union is not mentioned here, correct?

17  A.   No, sir.

18            MR. McKEEBY:  Let's go back to 40.1.  I

19  forgot what bullet we were on.  Maybe -- yes.

20  BY MR. McKEEBY:

21  Q.   The "in addition."  What does -- can you

22  explain to the jury what that means?

23  A.   This was intended to make it crystal clear that

24  moving forward, you need to comply with our company

25  policies.

1        "Any future violation of the Southwest Airlines

2   workplace bullying and hazing policing policy,

3   social media policy, or harassment, sexual

4   harassment, discrimination and retaliation policy

5   will result in termination."

6        So we wanted to have that in there to make it

7   very crystal clear our expectations moving forward.

8   Q.   And she had committed during the Step 2 hearing

9   that she wouldn't do it, correct?

10  A.   Yes, that is correct.  She told me she wouldn't

11  do this anymore.

12  Q.   Now, Ms. Carter -- if Ms. Carter has expressed

13  concerns that the company could terminate her

14  employment based on previous Facebook messages that

15  might have been uncovered, do you think those

16  concerns are legitimate?

17  A.   No.

18  Q.   Why not?

19  A.   Well, the reason is, is the last chance

20  agreement is designed to draw the line and move

21  forward.  Because you will see in the last chance

22  agreement, just reading it, it is designed to put

23  all of this to bed and call this resolved.  So there

24  would be no need to even look to previous things

25  because we are past that, we are moving forward.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 105 of 425  PageID 15508
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1726

1  Q.   Well, let's say someone had raised a complaint

2  about an old Facebook message that they had

3  uncovered and brought that to the company's

4  attention and it found its way to you.

5       How would that -- how would this agreement --

6  if she had signed it, of course -- how would that

7  have played out in that context?

8  A.   It would have been pretty simple, from my point

9  of view, because we have a -- we refer to the last

10  chance agreement and its intent, and it was to move

11  forward, not to look backwards.

12  Q.   All right.  And did Ms. Carter lose her rights

13  under the Collective Bargaining Agreement to grieve

14  any discipline that she thought was unfair if she

15  had signed this agreement?

16  A.   She did not release any rights under the

17  Collective Bargaining Agreement.

18       So that appeals process that I described, you

19  know, the Step 1, Step 2, that remains as part of

20  her ability to disagree or dispute any future

21  conflicts.

22  Q.   Okay.  Just for the sake of completeness, let's

23  go to the next -- or the remaining bullets.  We will

24  kind of handle this somewhat quickly.

25       What is the next one on the list?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 106 of 425   PageID 15509
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1727

1  A.    "Prior to reinstatement, you will be required

2  to meet with in-flight operations director Mike

3  Sims."

4  Q.    Who is that?

5  A.    That would be yours truly.

6  Q.    What would -- what were you hoping to

7  accomplish with another meeting?

8  A.    My intent there was to bring her back to my

9  office in Dallas with her union representatives,

10  welcome her back, and help set her course to move

11  forward.

12  Q.    Okay.  What about the next bullet about the 24

13  months, what does that mean?

14  A.    It gave a life span to this document, the last

15  chance agreement.

16        So we were going to put this in her file so

17  everybody knew about the -- everybody who had a

18  business of need to know -- of her last chance

19  agreement.  And then at the end of the 24 months, we

20  are done and it was -- it would be removed and

21  pulled out.

22  Q.    Removed -- I'm sorry?

23  A.    Removed from her file, if she requested it.

24  Q.    What is the next bullet?

25  A.    A pretty standard statement on criminal

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 107 of 425   PageID 15510
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1728

1  history.  That is, in the airline industry,

2  safety-sensitive employees are required to have a

3  10-year background check.

4        In her case, it wasn't necessary, because she

5  was not -- she was not an inactive employee, so

6  there was no need, but that is there in case that

7  the need comes up, it's required by the -- by the

8  Federal Government.

9  Q.   Understood.

10       The next bullet looks like just an

11  administrative process in terms of --

12  A.   Yeah.  We give their company ID back to them.

13       And then "contacting crew planning."  That is

14  our unit that builds work schedules.  So we would

15  ask her to contact the crew planning so they could

16  build her work schedule to get her back started to

17  work.

18  Q.   Okay.  And then what is the significance of the

19  next bullet, the grievance, I guess, that's the

20  union grievance being withdrawn?

21  A.   "The grievance regarding your termination will

22  be withdrawn and dismissed."

23       This again is designed to further reconcile

24  this issue and to have an understanding with all of

25  the parties, the Union and the company, that this

1  grievance has reached its conclusion, so it's --

2  terminated -- it's withdrawn.

3  Q.   And then the last bullet, I guess that just

4  kind of restates the settlement agreement that you

5  referenced?

6  A.   Yes, sir.  That is just a summary of the

7  following pages, which was the settlement agreement

8  that states that the grievant is releasing the

9  company, Southwest Airlines, and is going to

10  discharge Southwest Airlines from claims that she

11  may have had then or anything that may have

12  resolved -- I mean arisen from her termination.

13       So it's a pretty standard summary.

14            MR. McKEEBY:  Okay.  You can take that

15  down.

16  BY MR. McKEEBY:

17  Q.   Did you ever have any conversations with

18  Ms. Carter about the agreement to reinstate her?

19  A.   No, sir.  Our -- our agreement with the Union

20  is -- under the Collective Bargaining Agreement, is

21  the Union is her agent that represents her

22  throughout the grievance process.

23       And we do that to ensure fairness.

24       So I never had any direct conversations with

25  her because it wasn't -- she had union

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 109 of 425   PageID 15512
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1730

1   representatives that were representing her.  And had

2   she wanted to have conversations with me, she could

3   have asked her union.  We could have arranged that.

4   Because we want to have union in the room, company

5   in the room at all times.

6         So I never had any conversations with her.

7   Pretty standard.

8   Q.   Has that happened before in the context of last

9   chance agreements?

10  A.   Yes.

11  Q.   There have been questions, and then that

12  process that you just described occurred?

13  A.   Yes.  Many times during a last chance

14  agreement, we will get an inquiry from the union

15  wanting -- most of the time it's clarification, but

16  other times they may want to modify or propose

17  changing the language, if you will.

18  Q.   So how did the agreement get to Ms. Carter, if

19  you know?

20  A.   Typical process is our labor relations

21  department, in this instance, it was the manager,

22  Melissa Burdine, sent it directly to the Union for

23  them to review with Ms. Carter.

24  Q.   Mr. Sims, what was your expectation with

25  respect to whether or not Ms. Carter would sign the

1   last chance agreement?

2   A.   I thought she was going to sign it.

3   Q.   Why did you think that?

4   A.   She was very compelling when we met and she

5   asked me for her job back.  And she made commitments

6   to her union and she made commitments in my presence

7   that she wouldn't do this anymore.

8        And I took it at face value and I thought, I'm

9   going to give her another chance.  Because you

10  generally don't get chances or a do-over when you

11  send videos of aborted fetuses to people.

12       So I thought, okay, this is a risk, but I'm

13  going to offer her her job back.  And I was -- I was

14  very convinced that not only would she get her job

15  back, it would put this to bed, this whole issue.

16  Q.   I take it at some point you found out that she

17  declined the last chance agreement.

18  A.   Yes, sir.  Yes, sir.

19  Q.   What was your reaction when you found that out?

20  A.   I remember looking at my email and seeing a

21  message that she had declined, and I sat back in my

22  chair.  I was floored, to say the least.  I was

23  shocked.  Because this -- this case was so unique

24  and there was so much at stake because of the level

25  of harassment, I thought, my goodness, she will take

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 111 of 425   PageID 15514
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1732

1   her job back because this is what she wants and we

2   can have a do-over.

3         And when she didn't take her job back, I was

4   beyond surprised.

5   Q.   Did you have any next steps to do when you

6   found that out?  Was there anything else in the

7   process that you needed to complete?

8   A.   No, sir.  My role was complete because when she

9   declined -- because she has -- as I had my options

10  to offer resolution, she has options as well under

11  her Collective Bargaining Agreement to process

12  through the grievance process.  So my role there was

13  complete.

14  Q.   Mr. Sims, did you base any decision in

15  connection with Ms. Carter's employment on the fact

16  that she was a Christian?

17  A.   No.

18  Q.   Did you hold that against her in any way?

19  A.   Absolutely not.

20  Q.   Prior to the Step 2 hearing process, were you

21  aware that Ms. Carter was what we called in the

22  parlance of this case a union objector?

23  A.   I did not know she was a union objector.

24  Q.   Do you know -- did you know at that time what

25  that meant?

```
 1   A.    I do.
 2   Q.    What was your -- let me ask you this:  Were you
 3   aware of something called the recall process?
 4   A.    Yes, I was aware of that.
 5   Q.    What -- what -- what was your understanding of
 6   the recall process?
 7   A.    Well, as I mentioned earlier, Southwest
 8   Airlines and TWU are separate entities.  And
 9   Transport Workers Union is governed by elected
10   officers and they have their own set of bylaws and
11   constitution.
12         And their constitution has a section where if
13   they want to recall an officer, if you will, or, you
14   know, there is a mechanism for them to go through
15   this process as detailed in the TWU constitution to
16   recall one or more officers.
17         So at that point, that process was underway.
18   Q.    And prior to the Step 2 hearing that you have
19   described, were you aware of Ms. Carter's
20   involvement in that recall process?
21   A.    No.
22   Q.    Now.  During the Step 2 hearing, do I
23   understand correctly that you did become aware of
24   some of Ms. Carter's issues with union leadership?
25   A.    Yes.  She told me that she had been formally
```

1  objecting to the Union since 2013, her union

2  involvement and required membership.

3  Q.    What does that mean?

4  A.    Well, Southwest Airlines and the Union have

5  what we call a closed shop.  That means that when

6  you become a Southwest Airlines flight attendant,

7  you fall under the Collective Bargaining Agreement

8  and you are represented by the Union.

9       The law -- I'm not a lawyer, by the way, so --

10  but the law does require -- excuse me -- does allow

11  people to object and opt out of union involvement.

12       And Ms. Carter had let me know that she was an

13  objector and was not a member, per se, as most of

14  the other flight attendants were members.  Not all.

15  Q.    And did her status as an objector or her

16  support of the recall process have anything to do

17  with any decision you made with respect to handling

18  her grievance?

19  A.    No, it did not at all.

20  Q.    Mr. Sims, are you Christian?

21  A.    I am.

22  Q.    What church do you go to?

23  A.    I'm a member of First Baptist Church in

24  Midlothian, Texas.

25  Q.    And can you just very briefly describe your

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 114 of 425   PageID 15517
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1735

 1  personal beliefs regarding abortion to the jury.
 2  A.   I am -- I'm pro life and very sympathetic and
 3  compassionate to people that have been through what
 4  Ms. Carter told me she had gone through because I am
 5  very saddened.  I'm saddened by abortion.
 6           MR. McKEEBY:  Your Honor, can we have a
 7  quick sidebar?
 8           THE COURT:  You may.
 9           (Thereupon, the following proceedings were
10      had at sidebar:)
11           MR. McKEEBY:  I have been requested to
12  make an offer of proof on the arbitration award.
13           So what I would propose doing is asking a
14  few preliminary questions, and then have them object
15  to the award, and then we do an offer of proof.
16           THE COURT:  Outside the jury?
17           MR. McKEEBY:  Outside the jury.
18           THE COURT:  So that makes sense because
19  it's almost time for our break.
20           So I will let you ask those predicate
21  questions.  Obviously, I've ruled on keeping out the
22  arbitration award.  So object, I will sustain, we
23  will break, and then we can stick around.
24           Can we do the offer of proof at the end of
25  the break, just because we have been the record for

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 115 of 425   PageID 15518
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 6 July 12, 2022                Page 1736

1  quite a while?

2          MR. McKEEBY:  Sure.  That's fine with me.

3          THE COURT:  Okay.  Sounds good.

4          (Thereupon, the sidebar was concluded and

5      the following proceedings were held in open

6      court:)

7          THE COURT:  Okay.  Mr. McKeeby, you can

8  ask those questions we discussed.

9  BY MR. McKEEBY:

10  Q.   Okay.  Mr. Sims, I think you mentioned --

11  sorry.  Some of the witnesses are overlapping a bit.

12  But I'm going to say that I think you mentioned that

13  there was an arbitration in connection with this

14  process?

15  A.   There was an arbitration --

16          THE COURT:  Hold on.

17          MR. HILL:  Objection, limine.

18          THE COURT:  Okay.  I will overrule that at

19  this point.

20  BY MR. McKEEBY:

21  Q.   Explain to the jury what the arbitration

22  involved.

23          MR. HILL:  Objection, limine.

24          THE COURT:  I will overrule.

25          You can answer.

```
 1              THE WITNESS:  Yes, sir.

 2              Again, as I mentioned earlier, in the

 3   agreement that we have with the Union, there is an

 4   appeals process and there are several steps in the

 5   process.

 6              We are governed by something called the

 7   Railway Labor Act that requires airlines that are

 8   under the -- companies that are under the RLA to

 9   have an internal mechanism to manage disputes.

10              So in this case, when Ms. Carter chose not

11   to accept the last chance agreement, she appealed to

12   the Step 3, which is an arbitration, which basically

13   means that it is a more formalized hearing with

14   someone who presides over the hearing that is a

15   disinterested party.  They are, in effect, a judge,

16   if you will.  It's not court, but it's similar.

17              It is a very informal court, how is that?

18   BY MR. McKEEBY:

19   Q.   And was that person that you mentioned an

20   arbitrator?  Is that the arbitrator who you just

21   described?

22   A.   Yes.  Yes.  Yes.

23   Q.   And did you appear at the arbitration?

24   A.   I did.

25              MR. HILL:  Objection, limine.
```

```
 1  BY MR. McKEEBY:

 2  Q.   What was your --

 3           THE COURT:  Hold on.  I'm going to rule on

 4  it.

 5           I will overrule that question.

 6           You can answer.

 7  BY MR. McKEEBY:

 8  Q.   What was your role in the actual arbitration?

 9           MR. HILL:  Objection, limine.

10           THE COURT:  I think now we are getting to

11  the point of detail where I will sustain the

12  objection.

13           Counsel, any further questions before we

14  take our break?

15           MR. McKEEBY:  I think this is a good time

16  for a break.

17           THE COURT:  Okay.  Let's take our morning

18  break, a little belatedly.

19           Same instructions.  You can talk to your

20  fellow jurors and court personnel, just not about

21  this case; don't talk to anyone else, and don't do

22  any research about the case.

23           We will probably take about a 15-minute

24  break, so we will see you in 15 minutes from now.

25  So I guess that is 11:07.  See you in 15 minutes,
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 118 of 425   PageID 15521
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1739

1    thank you.

2               All rise for the jury.

3               (The jurors exited the courtroom.)

4               THE COURT:  Okay.  So we are going to take

5    about a 10-minute break, and then we will need to

6    ask some questions outside the jury's hearing in

7    what is called an offer of proof.

8               So there is a topic I have carved out of

9    the jury's hearing, but they are still entitled to

10   ask you questions about it on the record.

11              So we will come back in 10 minutes, we

12   will ask questions outside the jury's hearing, and

13   then we will bring them in when we are done.

14              Any other issues?

15              MR. McKEEBY:  No other issues.

16              THE COURT:  All right.  We will see you in

17   10 minutes.

18              (Recess.)

19              THE COURT SECURITY OFFICER:  All rise.

20              THE COURT:  Thank you.  You can be seated.

21              So we're on the record but outside the

22   jury's presence.  So we're going to do an offer of

23   proof on further details on arbitration in the

24   arbitration agreement.

25              Correct, Mr. McKeeby?

Case 3:17-cv-02278-X    Document 452    Filed 06/14/23    Page 119 of 425    PageID 15522
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1740

 1              MR. McKEEBY:  Yes.

 2              THE COURT:  Go for it.

 3              MR. McKEEBY:  Thank you, your Honor.

 4         I forget where we left off.

 5                    VOIR DIRE EXAMINATION

 6    BY MR. McKEEBY:

 7    Q.   You participated in the arbitration?

 8    A.   That's correct.

 9    Q.   You were a witness?

10    A.   I was a witness.

11    Q.   Were you cross-examined?

12    A.   I was.

13    Q.   Was that by Ms. Carter's lawyers?

14    A.   That is correct.

15    Q.   Now, do you recall who the arbitrator was?

16    A.   Arbitrator Lemons, L-E-M-O-N-S.  I don't

17    remember his first name.

18    Q.   How was he selected?

19    A.   There is a mechanism between the company and

20    the union to select arbitrators.  It is done via a

21    panel where the union submits names of arbitrators

22    they prefer, the company submit names of arbitrators

23    we prefer, and there is a strike method that lands

24    on a seated panel, if you will.

25         Once the panel is seated, it goes in rotation

 1  between union picks and company picks.

 2  Q.   Had you been in proceedings before Arbitrator

 3  Lemons before this one?

 4  A.   I believe I had.

 5  Q.   Did you view him to be an experienced

 6  arbitrator?

 7  A.   I thought he was extremely experienced.

 8  Q.   Did Ms. Carter have the opportunity to present

 9  witnesses and documents at the arbitration?

10  A.   She did.

11  Q.   Did she have the opportunity to cross-examine

12  Southwest's witnesses?

13  A.   She did.

14  Q.   And did Arbitrator Lemons render a written

15  decision after the arbitration?

16  A.   He did.

17  Q.   And is that --

18            MR. McKEEBY:  Pull up 124.

19  BY MR. McKEEBY:

20  Q.   Does this appear to be the decision of

21  Arbitrator Lemons?

22  A.   It is.

23            MR. McKEEBY:  So move to admit.  I don't

24  know that --

25            THE COURT:  I will admit for the purpose

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 121 of 425   PageID 15524
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1742

1  of this offer of proof, but not in front of the jury

2  as evidence that will go back to the deliberation

3  room.  Fair enough?

4            MR. HILL:  Yes, your Honor.

5            THE COURT:  Okay.  It is admitted for this

6  hearing.

7            MR. McKEEBY:  I'm done.  Thank you.

8            THE COURT:  Very good.

9            Okay.  That concludes the offer of proof.

10  We can bring in the jury.

11            I've got the jury screens muted, so

12  whenever y'all move to a new exhibit that is in

13  evidence --

14            MR. McKEEBY:  Okay.  You can take that

15  down.

16            (The jurors entered the courtroom.)

17            THE COURT:  Okay.  You can be seated.

18            And you can continue, Mr. McKeeby.

19            MR. McKEEBY:  I can, but I will not.  I

20  thank you for your time, Mr. Sims.

21            I will pass the witness.

22            THE COURT:  Okay.  So Mr. Greenfield, it

23  is your turn.

24

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 122 of 425   PageID 15525
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 6 July 12, 2022                    Page 1743

```
 1                    CROSS-EXAMINATION
 2  BY MR. GREENFIELD:
 3  Q.   Good afternoon, Mr. Sims.
 4  A.   Good afternoon, sir.
 5  Q.   My name is Adam Greenfield and I represent the
 6  Union in this matter.
 7  A.   Yes, sir.
 8  Q.   Okay.  I want to talk to you a little bit about
 9  representation first.
10       My understanding is that Beth Ross and Becky
11  Parker represented Ms. Carter at the Step 2 hearing,
12  is that correct?
13  A.   That is correct, sir.
14  Q.   Okay.  And can you please describe the quality
15  of representation that you viewed by Ms. Ross and
16  Ms. Parker at that hearing?
17  A.   I have known Ms. Ross and Ms. Parker for many
18  years, and they are the utmost professionals, highly
19  capable, highly astute, and highly passionate about
20  their case.  I thought she was very well
21  represented.
22  Q.   And were they those things you described for
23  Ms. Carter?
24  A.   Did they --
25  Q.   Did they exhibit those characteristics in their
```

1  presentations?

2  A.   Absolutely.  Absolutely.  Becky Parker

3  especially was very passionate about ensuring that

4  Ms. Carter was taken care of in terms of their

5  disposition of the case.

6           MR. GREENFIELD:  I think we stepped on

7  each other a little bit, and my apologies to

8  Ms. Willis for that.

9  BY MR. GREENFIELD:

10  Q.   Let's ask it again so we can have a clear

11  record for the future.

12       The qualities you described in Ms. Parker and

13  Ms. Ross, did they exhibit those in the

14  representation of Ms. Carter?

15  A.   I believe they did.  I thought they were

16  outstanding and were very compelling in terms of how

17  they came prepared and how they provided

18  representation for her.

19  Q.   You talked about the last chance agreement

20  earlier with Mr. McKeeby.  Do you remember that?

21  A.   I do.

22  Q.   And did you discuss that last chance agreement

23  with either Ms. Ross or Ms. Parker at any point?

24  A.   I did not.

25  Q.   Is there anything that would have -- that could

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 124 of 425   PageID 15527
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1745

1  have been represented by Ms. Carter or Ms. Parker or

2  Ms. Ross that would have changed the last chance

3  agreement that you offered to Ms. Carter?

4  A.   That I don't know.  We never had that

5  conversation.

6  Q.   Would you have considered a reduction in the

7  24-month probation letter?

8  A.   That's possible.  We just never had that

9  conversation.

10  Q.   Okay.  Could you testify to the jury if

11  there's -- if you would have taken that out

12  completely, if asked?

13         MR. HILL:  Objection.

14         THE WITNESS:  I don't think I could have

15  taken it out completely.

16         THE COURT:  Hold on.  There was an

17  objection.

18         MR. HILL:  Relevance.

19         THE COURT:  Okay.  I will overrule and

20  allow the answer to stand.

21         New question.

22         MR. GREENFIELD:  You sustained the

23  objection?  I'm sorry.

24         THE COURT:  I overruled it, but the

25  objection came after the question, so I had to say

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 125 of 425  PageID 15528
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1746

1    what I was doing to the question and the answer.  I

2    let it stand.  So you can ask a new question.

3              MR. GREENFIELD:  Yes, your Honor.

4    BY MR. GREENFIELD:

5    Q.    So my understanding, based on what you said, is

6    that you don't think you would have removed that

7    stipulation?

8    A.    No, sir.

9    Q.    Why not?

10   A.    Well, Ms. Carter's actions that led to her

11   termination were very egregious, very disturbing,

12   and were very much against the principles of our

13   company.  Basically the principles of just treating

14   others with respect.

15        So that 24-month clause would not have been

16   removed because that was the purpose of the last

17   chance agreement, to have something in place to

18   ensure that Ms. Carter knew moving forward that

19   these were the expectations further highlighted to

20   ensure that she was clear on the path she needed to

21   take.

22   Q.    And your testimony earlier is that she

23   expressed remorse and that she wouldn't do it again?

24   A.    That is correct.

25   Q.    Fair to say this is a way to ensure that?

 1  A.   That is correct.  It's, you know, in layman's

 2  terms, it's our insurance policy.

 3  Q.   Okay.

 4       At any point during the Step 2 process, did

 5  Ms. Carter ever try to convince you that the

 6  messages she sent to Ms. Carter were fake or not

 7  actually sent by her?

 8  A.   No, she didn't.  That was actually pretty

 9  established from the get-go, that she admitted to

10  them.

11              MR. GREENFIELD:  Can you pull up

12  Exhibit 120?

13  BY MR. GREENFIELD:

14  Q.   Do you recognize this document, Mr. Sims?

15  A.   I do.

16  Q.   Okay.  And if I can turn your attention to the

17  very bottom of the very last paragraph.  Do you see

18  that paragraph?

19  A.   Yes, sir.

20  Q.   Okay.  And above you said you were going to put

21  it in the file.

22  A.   Yes.

23  Q.   What did this communication mean to you?

24  A.   Well, what it was, was Ms. Carter sent this

25  email to her union representative asking to forward

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 127 of 425   PageID 15530
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1748

1  this to me.  And I'm assuming that that was in

2  consideration of her case or to provide additional

3  information.

4       So her union representative, Beth Ross, sent it

5  to me, and then I sent it to labor relations to add

6  to the overall file.

7  Q.   What is your impression of what, if any,

8  Ms. Carter was trying to represent to you by

9  presenting this?

10 A.   I don't have really an impression other than my

11 thought was she was wanting us to have additional

12 information.

13 Q.   Okay.  Ms. Carter testified yesterday that you

14 told her that Southwest Airlines should never have

15 gotten involved in this case.

16      Did you ever say that to Ms. Carter?

17 A.   Not in those words.  What I told her was

18 Southwest Airlines does not like to get involved in

19 disputes between union leaders and the constituents

20 they represent, but in this case, we were forced

21 into it.

22 Q.   Okay.

23           MR. GREENFIELD:  No more questions.  Thank

24 you, sir.

25           THE COURT:  Thank you, Mr. Greenfield.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 128 of 425   PageID 15531
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 6 July 12, 2022                          Page 1749

```
 1                 Mr. Hill, Mr. Pryor, Mr. Gilliam.
 2                 MR. HILL:  No questions, your Honor.
 3                 THE COURT:  Okay.
 4                 Any need to ask questions on based on
 5       Greenfield's questions, Mr. McKeeby?
 6                 MR. McKEEBY:  No.
 7                 THE COURT:  Any need to reserve him to
 8       call him back?
 9                 MR. HILL:  No.
10                 THE COURT:  Okay.
11                 You are excused from your testimony.
12       Thank you for being here.
13                 THE WITNESS:  Thank you, sir.
14                 MR. HILL:  Hold on.  Maybe.  We may need
15       to reserve him.  I'm sorry.
16                 THE COURT:  Okay.  So what I will ask you
17       to do is you are excused from the courtroom.  They
18       might need to call you back.
19                 In light of that, I'm going to ask you not
20       to talk to anyone about the case in the meantime.
21                 THE WITNESS:  Yes, your Honor.
22                 THE COURT:  Thank you.  Okay.
23                 MR. McKEEBY:  Does that mean he can leave
24       the courthouse?
25                 THE COURT:  Sidebar?
```

1               MR. McKEEBY:  Okay.

2               (Thereupon, the following proceedings were

3       had at sidebar:)

4               THE COURT:  So the question would be one

5   on timing.  I have no problem with him leaving the

6   courthouse unless it looks like we're going to get

7   to the plaintiff's rebuttal case soon.  I haven't

8   watched to see -- this is your last witness?

9               MR. McKEEBY:  Yes.

10              THE COURT:  You are about to rest.

11              So then you are about to go.

12              I know you have called Sims.  You're going

13  to call Carter?

14              MR. GREENFIELD:  I don't intend to recall

15  Sims.  I just intend to call Ms. Carter.

16              THE COURT:  Okay.  Do you have any guess

17  as to how long you will go with Carter?

18              MR. GREENFIELD:  If everything goes to

19  plan, 15 minutes, but probably an hour.

20              THE COURT:  So I would say in light of

21  that, can we ask him to stay within 15 minutes of

22  the courthouse?  I don't want to tell him he can't

23  leave the courthouse.  We will probably need him

24  shortly after lunch is my guess.

25              MR. PRYOR:  Your Honor, part of this will

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                   Vol 6 July 12, 2022                   Page 1751

 1  depend on when they rest, after they do all of that.
 2           By the way, I found a very interesting
 3  legal discussion.  I'm going to ask the Court for
 4  some more time.  If I don't get more time, I won't
 5  call him back.  If I get more time, I will consider
 6  calling him back.  But we will need more time.
 7           THE COURT:  I understand your request.
 8           So let me ask you this while we are at
 9  sidebar.  When he rests, are you going to need to
10  make a motion outside the presence of the jury --
11           MR. PRYOR:  Yes.
12           THE COURT:  -- or you going to wait to
13  make a motion until he rests?
14           MR. PRYOR:  I think procedurally, when he
15  rests, we have to -- now, the Court can certainly
16  say, I will hold off until -- it is up to you, but I
17  think we technically have to make our motion at that
18  time, and you can hold it in an abeyance and hear it
19  after the Union.  It's totally up to you.
20           THE COURT:  Okay.  So what I will do is we
21  need to go back on the record for you to rest,
22  right, you have no more witnesses, and then we will
23  kick the jury out again for you to make your motion.
24           And I will hold it abeyance until after I
25  hear the Union, just keep them out as briefly as

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 131 of 425  PageID 15534
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                  Page 1752

1  possible.

2           I can't stop you from making your motion.

3           MR. PRYOR:  I'm not trying to jerk this

4  gentleman's chains.  If you can give me two more

5  hours, I would love to spend some time with him.  If

6  you can only give me one more hour, 45 minutes, I'm

7  probably not going to call him.

8           THE COURT:  Okay.  Let's go back and do

9  our thing.

10           MR. GREENFIELD:  Your Honor, can I make a

11  request to Mr. Frye that after he rests and before

12  we start, I can just get a shot clock of where we

13  stand with everybody, just so I know going in if I

14  may need to request more time.

15           THE COURT:  I will ask them.  It's

16  multiple timekeepers and they calibrate against each

17  other.  So I will ask while we're doing your motion.

18           MR. GREENFIELD:  I just need a rough one.

19           MR. PRYOR:  I want to make sure I

20  understand.  When he rests, I just stand up and say,

21  We have an issue outside the presence of the jury.

22           THE COURT:  Sure.

23           (Thereupon, the sidebar was concluded and

24      the following proceedings were held in open

25      court:)

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 132 of 425   PageID 15535
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1753

 1            THE COURT:  Okay.  So with that, now I
 2   need to ask Mr. McKeeby, do you have any other
 3   witnesses for Southwest's case?
 4            MR. McKEEBY:  No, your Honor.  Southwest
 5   rests.
 6            THE COURT:  Okay.  So do you have a
 7   motion?
 8            MR. PRYOR:  Your Honor, at this time we
 9   have a matter to handle outside the presence of the
10   jury.
11            THE COURT:  Got it.
12            So any time anyone says the word "rest,"
13   then I've got to kick y'all out again, but we will
14   try to keep it as short as possible.
15            So don't talk to anyone about the case,
16   just talk to your fellow jurors and court personnel,
17   not about the case.  Don't do any research.
18            We will see you as soon as we can.
19            All rise.
20            (The jurors exited the courtroom.)
21            THE COURT:  Okay.  Y'all can be seated.
22            As soon as that door is closed, you can
23   go, Mr. Pryor -- Mr. Gilliam.
24            MR. PRYOR:  My lawyer.
25            MR. GILLIAM:  At this time, Plaintiff

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 133 of 425   PageID 15536
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1754

1    Carter would move for a directed verdict on all

2    claims against Southwest Airlines.

3                 THE COURT:  All right.  You can elaborate

4    as much or as little as you want to.  It's entirely

5    up to you.

6                 MR. GILLIAM:  Well, so let's start first

7    with the RLA retaliation claims.

8                 There is no question that -- let me move

9    up to the podium here for the sake of clarity.

10                There is absolutely no question that

11   Ms. Carter was fired and that she engaged in

12   RLA-protected activity.  All of her Facebook videos

13   and messages to President Stone are nothing but RLA.

14   Well, they are RLA-protected activity.  They do

15   happen to be protected by Title VII, we will get to

16   that in a minute.

17                But they were all activity opposing what

18   the Union was doing at the Women's March.  They were

19   objecting to how the Union was spending money.

20                And the -- both the videos and the

21   pictures demonstrated that, demonstrated

22   Ms. Carter's opposition.  They were part of her

23   protected activity.

24                And then as to the next factor under

25   Rocello, her RLA-protected activities were a

 1  motivating factor for Southwest's decision to

 2  terminate her employment.

 3          There is -- there is no dispute or

 4  question regarding that either.  I think Mr. --

 5  Mr. Schneider has testified that, yes, they fired

 6  her for her Facebook videos and messages to Audrey

 7  Stone.  And that's all RLA-protected activity.

 8          We had discussed Write-Line at another

 9  point.  I know that's probably still an outstanding

10  issue, but I would say this.  While Southwest may be

11  allowed a legitimate non-discriminatory reason as an

12  affirmative defense, it doesn't have one.  Its only

13  defense is a discriminatory reason, that is, the

14  other discriminatory reasons that would come in

15  would be her Title VII rights and her religious

16  expression.

17          So shifting to that, the first RLA -- I'm

18  sorry, the first Title VII religious discrimination

19  claim against Southwest.  So Southwest fired

20  Ms. Carter -- that's the conflict with the social

21  media policies -- because of her sincerely-held

22  religious beliefs.  Ms. Carter has testified to her

23  religious beliefs.

24          And even from Mr. Sims to Mr. Schneider,

25  they all recognized that, yes, her religious belief

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 135 of 425   PageID 15538
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1756

1    articulated at the fact-finding meeting was that she

2    wanted to share her message that abortion is the

3    taking of life, contrary to the will of God.

4              Southwest fired her for that.

5              And moving on to the failure to

6    accommodate claim, Southwest was perfectly aware at

7    the fact-finding meeting of Ms. Carter's need for an

8    accommodation.  Mr. Schneider had received training

9    from employee relations to recognize any sort of

10   protected categories including religion, but he --

11   he didn't do anything about it.

12             Under the acting policy, a leader who is

13   aware of any employee's need for accommodation must

14   report to the ACT team.  And that didn't happen.

15             There is no undue hardship question here

16   either because Southwest can't show, and hasn't

17   shown, that there was no possible accommodation that

18   they could make, so they would have had to terminate

19   Ms. Carter's employment.

20             No.  It is clear that what they could have

21   done, they could have asked Ms. Carter to remove the

22   nexus photos to Southwest, and that would have

23   resolved the problem for her Facebook posts on her

24   website.

25             She could have posted a disclaimer.  None

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 136 of 425   PageID 15539
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1757

 1   of those would have imposed more than a di minimis

 2   burden on the company.  They could have done that

 3   easily and accommodated Ms. Carter.

 4           But instead they fired her, and firing an

 5   employee is synonymous with failure to accommodate.

 6           So I think I have covered all of the

 7   elements.  If you have any questions, I'm happy to

 8   answer them.

 9           THE COURT:  Thank you.  I don't have any

10   questions, Mr. Gilliam.

11           I'm going to save a ruling for this until

12   after the Union rests and you've made a motion

13   regarding the Union in the interest of saving the

14   jury's time.  But I do need to, out of fairness, see

15   if Mr. McKeeby or Mr. Morris have a response to

16   this, briefly.

17           MR. McKEEBY:  Okay.  Brief response.

18           I think that the entirety of the argument

19   is premised under -- or on the notion that all of

20   the posts were, per se, and completely protected

21   under the RLA, at least as to that claim, as the

22   Court is well aware, we object strongly to that

23   notion.  The posts are subject to multiple

24   interpretations which the jury should be allowed to

25   assess in terms of whether or not these were --

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 137 of 425   PageID 15540
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1758

1  these videos were an expression of religious belief

2  or union activity or just personal animosity toward

3  Stone, among possible interpretations.

4           Moreover, the lack of evidence of

5  motivation in this case would be a reason to deny

6  the directed verdict.

7           As to the accommodation claim, there was

8  no reason for Southwest to be aware that any

9  conflict existed between Ms. Carter's religious

10  beliefs or practices and the application of its

11  policy.

12           She never requested an accommodation and

13  it wasn't apparent to Mr. Schneider or anyone else

14  that this was a situation where Southwest could or

15  should have simply overlooked its policies and the

16  obligations under those policies to protect its

17  employees in the context of conduct such as that

18  engaged in by Ms. Carter.

19           Finally, we believe there is more than

20  sufficient evidence of undue hardship, particularly

21  with respect to Mr. Schneider's testimony of the

22  impact on employee morale and employee relations in

23  general should employees like Ms. Carter be allowed

24  to disseminate posts like this to others in the

25  workforce.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 138 of 425   PageID 15541
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1759

```
 1                THE COURT:  Understood.  Okay.  Thank you.
 2                So I will save my ruling on this until
 3      after we get the motion on the Union when the Union
 4      rests.
 5                So in light of that, anything else before
 6      we call back in the jury and we hand the baton to
 7      you, Mr. Greenfield?
 8                MR. GREENFIELD:  No, your Honor.
 9                THE COURT:  Let's bring them back in.
10                And Mr. Greenfield, you are going to call
11      who first --
12                MR. GREENFIELD:  Charlene Carter.
13                THE COURT:  Ms. Carter, can you go ahead
14      and come up to the witness box?  They are going to
15      call you as the first witness during their case.  So
16      while the jury is getting ready, you can come on up.
17                (The jurors entered the courtroom.)
18                THE COURT:  Okay.  You can be seated.
19                And so now that Southwest has rested, it's
20      your turn to present the Union's case,
21      Mr. Greenfield, and you have called as your first
22      witness --
23                MR. GREENFIELD:  Charlene Carter.
24                THE COURT:  Ms. Carter, if you could stand
25      back up.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 139 of 425   PageID 15542
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1760

```
 1           Mr. Frye, can you administer the oath to
 2  Ms. Carter once more?
 3           (CHARLENE CARTER was duly sworn by the
 4      Clerk.)
 5           THE COURT:  Y'all know the instructions,
 6  so go for it.
 7                    DIRECT EXAMINATION
 8  BY MR. GREENFIELD:
 9  Q.   Good afternoon, Ms. Carter.
10  A.   Hello.
11  Q.   Do you recall, when we spoke previously, that
12  you and I and the jury were attempting to get on the
13  same page as far as what you felt the Union did
14  wrong to you.  Is that fair?
15  A.   Yes.
16  Q.   Okay.  Today I would like to start with asking
17  you if you were in the courtroom during my opening
18  statement?
19  A.   Yes.
20  Q.   And did you hear me say that I felt this case
21  was about you being able to say whatever you wanted
22  whenever you wanted and however you wanted to in the
23  workplace?
24       Do you remember that statement?
25  A.   I remember that statement.
```

1  Q.   And do you agree with that?

2  A.   I agree with the being the union president, I

3  can speak to my union in any way that I see fit.  We

4  pay them to represent us.  And so when it comes to

5  my union, yes.

6  Q.   Okay.  And we will explore that a little bit

7  more.

8       But just to take a step back, in 2013, you

9  objected to being a union member, correct?

10 A.   That is correct.

11 Q.   And as kind of in line with what you just

12 testified, even though you objected to being in the

13 union, you still wanted a say in how the union was

14 governed and how they spent their funds, correct?

15 A.   That is correct, because I still paid dues.

16 Q.   And from 2013 to 2017, you were involved with

17 what you felt was activism against union corruption

18 at 556, is that fair?

19 A.   Yes.

20 Q.   And you talked about it on Facebook?

21 A.   Yes.

22 Q.   And you threatened to decertify the union?

23 A.   I said the word "decertify."  I think we need

24 to get rid of TWU, yes, I do.  There has been too

25 many problems.  They don't work for us.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1762

 1 | Q.   So fair to say you threatened to decertify the
 2 | union?
 3 | A.   I didn't threaten.
 4 | Q.   Oh.  Okay.
 5 | A.   I said the word "decertify," and that means
 6 | replacing TWU.  Yes, I have called for that for a
 7 | long time.
 8 | Q.   Exactly.  For several years, yes?
 9 | A.   From the time that I started seeing what they
10 | do to their own members, yes.
11 | Q.   And you supported a recall petition?
12 | A.   I voiced my support for that recall position.
13 | Q.   You supported it?
14 | A.   I supported the recall, yes.  Didn't sign it,
15 | but I supported it.
16 | Q.   Understood.
17 |      And you opposed the first tentative contract
18 | agreement that Audrey Stone's administration had
19 | negotiated, correct?
20 | A.   Didn't get to vote, but yes, I opposed it.
21 | Q.   And you sent Instant Messages to Audrey Stone
22 | as well, correct?
23 | A.   I sent Instant Messages to my president of TWU
24 | 556, yes, I did.
25 | Q.   And through all of that, from 2013 to the

1  beginning of 2017, you maintained a clean

2  disciplinary file, isn't that right?

3  A.    That is correct.

4  Q.    Not a single complaint from another flight

5  attendant or Southwest employee, right?

6  A.    My file?

7  Q.    Yes, ma'am.

8  A.    As far as I know, yes.  I never got called in.

9  Q.    Okay.

10       So let's talk about life after February of

11  2017, okay?

12  A.    Okay.

13  Q.    That's when you started sending a very specific

14  type of message to a very specific employee,

15  correct?

16  A.    I don't know what you are talking about.

17  Q.    Okay.  Well, I'm talking about the graphic

18  abortion videos you sent to Ms. Stone.

19  A.    The baby abortion videos, yes, to my union

20  president, after they went to the union -- or the DC

21  march with Planned Parenthood, yes, I did.

22  Q.    And these are not my words, you described the

23  video as graphic yourself, isn't that right?

24  A.    That was on my personal Facebook page.  That

25  was not to her.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 143 of 425  PageID 15546
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1764

1  Q.   You don't agree that it's a graphic video?

2  A.   It is a depiction of what happens to a precious

3  little baby after it's been aborted.

4  Q.   And do you find that to be graphic?

5  A.   I find that to be graphic on my personal

6  Facebook page.  For anybody that sees the word

7  "graphic," they can scroll through it or watch the

8  video.

9       But when Ms. Stone took those women to that

10 march, she was subjected to the very same things as

11 what I sent her from pro life groups there at the

12 march.

13      So ask your question again.

14           MR. GREENFIELD:  I'd make an objection to

15 speculation and move to strike Ms. Carter's response

16 about what Ms. Stone would have viewed at the march.

17           THE COURT:  I will sustain that.

18           I will strike that one sentence.

19           Jury, please disregard that last sentence.

20 BY MR. GREENFIELD:

21 Q.   Ms. Carter, you don't know what Ms. Stone saw

22 at the march, do you?

23 A.   Not specifically, but I will also tell you,

24 too, she made me feel sick, as far as I'm concerned,

25 taking those women and wearing those pussy hats

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 144 of 425   PageID 15547
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1765

 1  within the march.
 2           MR. GREENFIELD:  Objection, your Honor,
 3  non-responsive.  Move to strike the testimony.
 4           THE COURT:  I will overrule that.
 5  BY MR. GREENFIELD:
 6  Q.   This was the first time you had ever sent a
 7  coworker a video of an aborted baby, right?
 8  A.   I sent my union president, this was the only
 9  time, and it was in reference to what she did by
10  taking those women to that march, yes.
11  Q.   Well, you don't dispute that Ms. Stone was a
12  coworker, correct?
13  A.   She was our union president first and foremost
14  at that particular time.  Was she a flight attendant
15  prior to that and flew regular trips, as the rest of
16  you did?  Yes.
17  Q.   Are you telling the jury today that you don't
18  believe Ms. Stone was a coworker?
19  A.   She was my union president at that time.  She
20  was a coworker in the sense that she still worked at
21  Southwest Airlines, but she was using -- she was in
22  the capacity of the union president.
23  Q.   But she was a coworker, correct?
24           MR. PRYOR:  Object, asked and answered.
25  She just answered.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 145 of 425   PageID 15548
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1766

```
 1              THE COURT:  Hold on.  Speaking objection.
 2              I will sustain that.
 3              New question.
 4              MR. GREENFIELD:  Yes, your Honor.
 5   BY MR. GREENFIELD:
 6   Q.   And after you sent those videos to Ms. Stone,
 7   like clockwork, and also for the first time, you got
 8   a call from the company to answer a complaint
 9   against you, correct?
10   A.   Yes, I did.
11   Q.   Okay.  And you knew exactly what it was for,
12   didn't you?
13   A.   When they referenced on the call -- and this is
14   the first call I got was from Meggan Jones -- she
15   said it had to do with a post.
16        The second message I received was from Ed
17   Schneider, and they said that it had to do with a
18   post that was sent to a -- what they called just
19   another flight attendant coworker.  They didn't
20   reference that it was my union president.
21        But I never sent anything else to anybody else
22   but my union president.
23   Q.   That's right, Ms. Carter.  You knew exactly
24   what it was about when they called, didn't you?
25   A.   When they made reference to it, yes, I did.  I
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 146 of 425   PageID 15549
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1767

 1  mean --

 2  Q.   But they didn't reference Ms. Stone in the

 3  call, did they, that initial call?

 4  A.   When they said that it was a post that I had

 5  sent, I knew -- I didn't send any other posts to

 6  anybody else.  So I knew.  And she's the only one

 7  that I communicated with.  My president.

 8  Q.   Thank you.  That's my point.

 9       And there was discussion earlier by Ms. Jones

10  and Mr. Sims about remorse.

11       Are you -- let me just ask you point blank, are

12  you remorseful or sorry for the manner in which you

13  communicated to Mr. Stone?

14  A.   Not in the manner that I communicated because I

15  could have, if I was a member, I could have taken

16  that to a union membership meeting, taken the same

17  exact post, said the same exact things in that

18  membership meeting, and it would have been

19  protected.

20       Any communication further should have been

21  protected as well because it always had been.

22  Q.   And did you agree with Ms. Jones's comment that

23  you showed no remorse for your actions?

24            MR. PRYOR:   Object, just asked and

25  answered.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 147 of 425   PageID 15550
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1768

```
 1              MR. GREENFIELD:  This is a different
 2  questions.  This is a different question, your
 3  Honor.
 4              THE COURT:  Yes, it is different.  You can
 5  answer it.
 6              THE WITNESS:  I showed no remorse in the
 7  fact that they asked me in the manner that I sent
 8  it.  No, I don't -- I'm not remorseful for objecting
 9  to how my union was representing me and many other
10  coworkers at a march that I disagreed with.
11  BY MR. GREENFIELD:
12  Q.   Okay.  And my question is a little bit
13  different, so let's be clear for the jury.
14      I'm not asking you about whether you are
15  remorseful about what you were opposing.  I'm asking
16  if you were sorry for the way you approached the
17  situation.
18              MR. PRYOR:  I object.  Maybe it's just me,
19  it sounds like the third time.  The fact he can use
20  one --
21              THE COURT:  Hold on.  That's a speaking
22  objection.
23              MR. PRYOR:  Sorry.
24              Object, asked and answered.
25              THE COURT:  I will sustain that.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 148 of 425   PageID 15551
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1769

1  BY MR. GREENFIELD:

2  Q.   Mr. Sims up here, when he was up here, he

3  expressed to the jury that he felt you were sorry

4  for the way that you communicated to Ms. Stone.

5       Did you hear that testimony?

6            MR. PRYOR:   Object, mischaracterizes his

7  testimony.

8            THE COURT:   I will sustain that.

9            You can reask it in a different way.

10 BY MR. GREENFIELD:

11 Q.   Do you believe you expressed remorse to

12 Mr. Sims over the way you communicated with Audrey

13 Stone?

14 A.   The remorse that I had that I expressed was

15 that if it hurt her as a person, that I was sorry

16 for that.  But I still have that ability to

17 communicate; if she decides to take other people,

18 that we pay for, to a march like that, I'm not sorry

19 for that.

20      I'm just going to tell you right now, we've

21 always had open communication without the company

22 being involved in union business.

23      So what I probably would have done was opted

24 back in and taken that complaint to a union meeting

25 so that the company could not and would not, because

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 149 of 425   PageID 15552
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1770

1  they couldn't have used it under the social media

2  policy that they claim that they used it for.

3       And we were being targeted by the union and

4  their representatives regarding social media.

5            MR. GREENFIELD:  Objection, move to

6  strike, non-responsive.  Move to strike everything

7  that did not have to do with my question involving

8  remorse.

9            THE COURT:  I will sustain that, jury.

10  Please disregard any portion of the answer that did

11  not relate to remorse.

12  BY MR. GREENFIELD:

13  Q.   Ms. Carter, I understand that.  I think the

14  jury understands those last points you were trying

15  to make.  But I would like to just stick to the

16  questions I'm asking, okay?

17  A.   Uh-huh.

18  Q.   In fact, in an earlier proceeding to get your

19  job back, you actually admitted that sending the

20  post to Ms. Stone was a mistake, isn't that correct?

21  A.   The mistake that I made was not going into the

22  union office.  But still the communication that was

23  rendered through the Facebook messages was the only

24  way that I was going to be able to make -- or

25  through email -- was the only way that I was going

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 150 of 425   PageID 15553
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1771

1  to be able to make my statement and my dislike

2  heard.

3  Q.   Did you previously offer this same explanation

4  for what you described as a mistake?

5  A.   I don't understand that question.

6  Q.   You testified, just now, that it was a mistake,

7  but not that type of mistake, not the type of

8  mistake I'm talking about, correct?

9  A.   The mistake would be the fact that they were

10 using social media to target us, and that's exactly

11 what happened.

12      If I were to have done it again, I would have

13 gone into her office at the 556 office building and

14 spoken with her, and the company couldn't have used

15 the social media part of it to fire me.

16 Q.   Okay.

17 A.   It's protected speech between me and my union.

18 Q.   I understand that you believe it's protected

19 speech, Ms. Carter.

20      I'm talking about remorse and mistakes and

21 apologies.  That's what we are talking about.

22 That's what I'm talking about right now.  Okay?

23 A.   Correct.

24 Q.   All right.  And previously, at that earlier

25 proceeding to get your job back, you did, in fact,

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                  Page 1772

```
 1   say that you were sorry for what you did, isn't that
 2   right?
 3            MR. PRYOR:  Object, asked and answered.
 4   She just explained what she meant.
 5            THE COURT:  Hold on.  That's a speaking
 6   objection.
 7            MR. GREENFIELD:  Talking about a different
 8   proceeding, your Honor.
 9            THE COURT:  I will allow her to answer if
10   you clarify which proceeding.
11   BY MR. GREENFIELD:
12   Q.   At the arbitration that was discussed earlier.
13            MR. PRYOR:  Object to the arbitration.
14   Object, continuing limine issue.
15            THE COURT:  I will grant you a running
16   objection, and I will see what the question is.
17   BY MR. GREENFIELD:
18   Q.   During that hearing, isn't it true that you
19   testified --
20            MR. PRYOR:  Object, your Honor.  He's now
21   using testimony --
22            THE COURT:  We don't do speaking
23   objections.
24            MR. GREENFIELD:  If we can approach, your
25   Honor.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 152 of 425   PageID 15555
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1773

```
 1               MR. PRYOR:  I have to approach.
 2               (Thereupon, the following proceedings were
 3        had at sidebar:)
 4               THE COURT:  No speaking objections, right?
 5   If we do speaking objections and you lose them, I
 6   count that time against you.
 7               MR. PRYOR:  Okay.  And I can't afford it.
 8               THE COURT:  I know.  So just speak in
 9   code, right?  If it's the arbitration --
10               MR. PRYOR:  I quickly said limine.
11               THE COURT:  -- details in the arbitration.
12               So these are questions of what she said at
13   the arbitration hearing.
14               MR. GREENFIELD:  I intend to impeach her.
15   Her testimony is that she's not -- she's admitting
16   that -- she is testifying that she didn't say that
17   the posts were a mistake and that she's not sorry
18   for what she's done.
19               MR. PRYOR:  That's not what she said.
20               MR. GREENFIELD:  Excuse me.
21               That is in direct contradiction to what
22   she testified at the arbitration hearing, and I
23   intend to impeach her on it.
24               THE COURT:  You can't bring up the
25   arbitration hearing.  It's too detailed.  I limined
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 153 of 425   PageID 15556
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1774

 1   out the arbitration hearing, details of the

 2   arbitration hearing.

 3           MR. GREENFIELD:  Okay.  But this --

 4   details of the arbitration.  This is about her

 5   specific testimony.

 6           This is for a matter of impeachment.  I'm

 7   not asking about any specifics other than for

 8   impeachment, and I'm absolutely allowed to impeach

 9   her on her prior sworn testimony.

10           MR. PRYOR:  Then do it properly.

11           First of all, I don't think that the value

12   of this -- she's testified what her mistake was,

13   over and over.  Her mistake was that she let them

14   take advantage of social media policy, not that what

15   she did was wrong.

16           MR. GREENFIELD:  And that's the

17   impeachment because --

18           MR. PRYOR:  If this Court thinks that

19   getting into the arbitration at that level is

20   important enough on that issue, we disagree.  But if

21   so, he's going to have to lay the predicate.  He's

22   going to have to --

23           THE COURT:  So I'm with you on the second

24   point.  I think you can tread carefully without

25   getting into what was involved in the arbitration

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 154 of 425   PageID 15557
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1775

1  and what the arbitration decision was, but you've

2  got to do it properly.

3              MR. GREENFIELD:  I intend to impeach her

4  with her prior testimony right now.

5              MR. PRYOR:  But he has to show her the

6  testimony and ask her if it's inconsistent.  He's

7  got to do it just like he would a deposition.  You

8  don't just start reading it.

9              THE COURT:  That's correct.  At this

10 point, I think she has to see it, right?

11             MR. PRYOR:  And they have to establish the

12 transcript --

13             THE COURT:  There's one question left.  Is

14 that consistent with your prior statement in

15 arbitration?  Then you have to show her.  That's the

16 last question you can ask before showing her.

17             MR. PRYOR:  I don't think he has to use

18 the word "arbitration," but I understand.

19             (Thereupon, the sidebar was concluded and

20       the following proceedings were held in open

21       court:)

22             THE COURT:  Okay.  So you can ask the

23 question we discussed at sidebar, Mr. Greenfield.

24             MR. PRYOR:  Your Honor, time on that?

25             THE COURT:  Keep going.  Ask the question.

```
 1  BY MR. GREENFIELD:
 2  Q.   Ms. Carter, the explanation you are giving
 3  about your contrition about whether you made a
 4  mistake or whether you were sorry, do you believe
 5  that to be consistent with prior testimony you gave
 6  at the arbitration hearing?
 7            MR. PRYOR:  Object.  He just misstated her
 8  testimony, not only at the arbitration, but what she
 9  just said.
10            THE COURT:  I will sustain that.
11            You can rephrase it.
12  BY MR. GREENFIELD:
13  Q.   It's your testimony that it wasn't a mistake,
14  correct?
15            MR. PRYOR:  Object, asked and answered.
16            THE COURT:  I will allow this.
17            THE WITNESS:  In what --
18  BY MR. GREENFIELD:
19  Q.   Sending the message to Ms. Stone, it's your
20  testimony today that it was not a mistake?
21            MR. PRYOR:  Object, mischaracterizes
22  testimony.  The question has been asked and answered
23  three times.
24            THE COURT:  No, you put him here.  So yes,
25  you can be here.  So you can get an answer to your
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1777

 1  question.

 2              THE WITNESS:  That it was a mistake to

 3  send it to her?

 4  BY MR. GREENFIELD:

 5  Q.   Yes, ma'am.

 6  A.   I just said that.  The mistake was to use it

 7  under the form of a social media portion.  I should

 8  have taken it to her union office and presented it

 9  to her, and then the company would have never been

10  able to get involved in the union business.

11  Q.   And do you --

12  A.   They use social media.

13  Q.   I'm sorry, I don't mean to cut you off.

14       Do you believe that is consistent with your

15  prior testimony at the arbitration proceeding?

16  A.   Honestly, I do not remember all of what I said.

17  That's been five years ago.  I would have to look at

18  it in context.

19       I will say this.  I did say I was sorry if it

20  affected her the way that she is claiming that it

21  affected her.  But again, they subjected us to them

22  taking our money and representing us in a march that

23  we did not agree with.

24  Q.   So it's your testimony that you are sorry for

25  what -- if it bothered her, but you are not sorry

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 157 of 425   PageID 15560
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1778

1   for what you did, is that fair?

2   A.    In the context of what I was -- who I was

3   sending it to, my union president, I would not be

4   here today if they would not have gone to that

5   march.

6           MR. GREENFIELD:  Your Honor, I intend to

7   approach the witness for purpose of impeachment.

8           THE COURT:  You may.

9           MR. PRYOR:  Your Honor, we would like page

10  and line and a copy.

11          THE COURT:  You can get it.

12          MR. GREENFIELD:  Carter arbitration

13  transcript, Volume 2, lines 8 through 23.

14          THE COURT:  I have it.

15          MR. PRYOR:  I have to locate it.

16          MR. GREENFIELD:  I would be happy to show

17  it to you right here.

18          MR. PRYOR:  Your Honor, we object to the

19  use of the arbitration transcript.  It's not

20  inconsistent.

21          THE COURT:  I understand.

22          I will let you put it in front of the

23  witness.

24  BY MR. GREENFIELD:

25  Q.   Ms. Carter, before I show you this document, do

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 158 of 425   PageID 15561
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1779

 1 | you remember testifying --
 2 |             THE COURT:  Hold on.  We need to get you
 3 | to a microphone.
 4 |             MR. GREENFIELD:  I apologize for the back
 5 | and forth.
 6 | BY MR. GREENFIELD:
 7 | Q.   Ms. Carter, do you remember testifying at an
 8 | arbitration proceeding to get your job back?
 9 | A.   Yes, I do.
10 | Q.   And do you remember taking an oath to swear to
11 | tell the truth, the whole truth, and nothing but the
12 | truth for that?
13 | A.   Yes, I do.
14 | Q.   Can you please read silently as I read aloud.
15 |      Can we share a microphone?
16 |             THE COURT:  Hold on.
17 |             MR. PRYOR:  Is he having her read it
18 | silently or out loud?
19 |             THE COURT:  He's asking for himself to
20 | read it out loud while she reads it silently.
21 |             MR. PRYOR:  No.  I object.  It's improper
22 | use.  He hadn't established an inconsistency, and
23 | we've pointed it out to the Court.
24 |             THE COURT:  I will sustain that.
25 |

```
 1   BY MR. GREENFIELD:

 2   Q.   If you can just read from here to here.

 3   A.   I'm still not clear, what am I supposed to

 4   read?

 5   Q.   This part.

 6   A.   This right here?

 7   Q.   Yes, ma'am.

 8   A.   Okay.

 9   Q.   Scroll down?

10   A.   Wait.  Wait.

11   Q.   I apologize.

12   A.   I'm sorry.  Because I have to digest this.  I'm

13   sorry.

14   Q.   That's all right.

15   A.   I'm not sure, who is -- this is a question,

16   correct?

17   Q.   Yes, ma'am.

18   A.   Okay.  I don't know how to read from this

19   computer.  Sorry.

20   Q.   Where can I help?

21   A.   No, I wanted to go back.  It's the question.

22   Q.   Yes, ma'am.

23   A.   Okay.

24        Okay.

25   Q.   And can you read and do you see anything else
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 160 of 425   PageID 15563
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1781

1  underneath there about your testimony?

2       This is where the question is.

3  A.   Yeah, that's where I just read to.

4       I answered it the same way.

5  Q.   Ms. Carter, the document I showed you, does it

6  refresh your recollection as to what your testimony

7  was at the arbitration proceedings?

8  A.   Yes.  And it's exactly what I just told you.

9  Q.   So your testimony today -- let me ask a

10 separate question -- the caveats you've provided

11 today now about why it was a mistake and what you

12 were actually sorry about, did you offer those

13 opinions at the arbitration?

14           MR. PRYOR:  Object, misuse of a

15 transcript.  She's answered his question.  Now

16 he's --

17           THE COURT:  Hold on.  That's a speaking

18 objection.

19           MR. PRYOR:  Sorry.

20           THE COURT:  I'm overruling it.

21           MR. PRYOR:  Object to the form of the

22 question.

23           THE COURT:  You can answer.

24           THE WITNESS:  Okay.  Ask that again,

25 because I just answered that same question in the

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1782

```
 1  same manner.
 2  BY MR. GREENFIELD:
 3  Q.   Well, see, that's why we are talking about it,
 4  Ms. Carter.
 5       Based on what I just showed you, does it
 6  refresh your recollection that you did not offer the
 7  same caveats about it being a mistake -- about why
 8  it was a mistake, excuse me -- or what you were
 9  sorry to?  You didn't offer that to the arbitrator,
10  did you?
11  A.   It's the same stuff, though.  It would have
12  been it's a union matter.  And the same -- I may not
13  have said those exact words, but that's exactly what
14  it meant.
15       It meant that I would have not done it in the
16  manner in which I did.  I didn't say because of the
17  social media stuff.  But I would have -- I would
18  have gone into her office.
19       Did I say the exact same words?  No.  But that
20  is the same manner in which it's -- it's being
21  portrayed.
22  Q.   Yes, ma'am.  And Ms. Carter, I'm not talking
23  about the exact same words, I'm talking about any
24  words.
25       You are offering testimony to the jury today as
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 162 of 425   PageID 15565
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1783

1  to what you think you actually made a mistake about

2  and what you actually were sorry about.  But at no

3  point did you ever express any of that to the

4  arbitrator, isn't that correct?

5  A.    In that -- in that testimony --

6  Q.    Yes, ma'am.

7  A.    -- I did not use the exact same words, you are

8  correct.  I didn't.

9  Q.   And not the exact same words, you didn't offer

10 any of the explanation that we are hearing today,

11 isn't that correct?

12 A.   As in saying that I would taken it to her union

13 office?  It's the same type of answer.

14       I'm sorry for the way that I did it because

15 they used it -- no, I didn't say because they used

16 it under the social media policy.  I made a mistake

17 by sending it through social media instead of taking

18 it to her office.

19       No, I didn't say those exact words, but that is

20 exactly what was meant.

21 Q.   So you agree that you made a mistake in the way

22 you sent it to Ms. Stone, isn't that correct?

23             MR. PRYOR:  Object, asked and answered.

24             MR. GREENFIELD:  And she's --

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 163 of 425   PageID 15566
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1784

```
 1  BY MR. GREENFIELD:
 2  Q.   You're testifying right now --
 3          MR. PRYOR:  -- leading after her
 4  explanation.
 5          THE COURT:  No speaking objections.
 6          I will sustain that.
 7  BY MR. GREENFIELD:
 8  Q.   You are testifying right now before the jury
 9  that what you should have done is you should have
10  gone to the union office and talked to Ms. Stone,
11  isn't that right?  That's the mistake you made?
12  A.   The mistake I made was sending it through the
13  social media because they were using the social
14  media -- I would have never been called in if we
15  weren't being targeted through social media.  I
16  would have gone through to her office.
17  Q.   You are sorry for that, right?  The manner in
18  which you sent it?
19          MR. PRYOR:  Object, asked and answered.
20          THE WITNESS:  Oh, I'm not sorry --
21          THE COURT:  Hold on.
22          Sustained.
23          MR. GREENFIELD:  She just said she's not
24  sorry.  So if that's the point, I would like to
25  approach the witness for purposes of impeachment.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 164 of 425   PageID 15567
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1785

 1            MR. PRYOR:  It's a point she's explained
 2    what she's sorry for and what she's not --
 3            THE COURT:  I will allow her to answer
 4    this question in light of that answer.
 5    BY MR. GREENFIELD:
 6    Q.   Are you sorry for the manner in which you sent
 7    it to Ms. Stone or not, Ms. Carter?  That's what I
 8    want the jury to understand.
 9            MR. PRYOR:  Object to the form of
10    question.  It's him telling her what the jury
11    understands.
12            THE COURT:  I will sustain that.
13            Reask.
14            MR. PRYOR:  Wow.
15    BY MR. GREENFIELD:
16    Q.   Ms. Carter, are you sorry for the manner in
17    which you sent Audrey Stone the messages?
18    A.   I would have to reread what you just said,
19    because now I'm so confused on everything.  I'm
20    sorry.
21    Q.   This is a very simple question.  You don't have
22    to read anything.
23        I'm asking you right now, are you sorry for the
24    manner in which you sent the messages to Ms. Stone?
25            MR. PRYOR:  Object, asked and answered

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 165 of 425   PageID 15568
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1786

1  repeatedly.

2          THE COURT:  Overruled.

3          You can answer.

4          THE WITNESS:  Can I see that document

5  again?

6  BY MR. GREENFIELD:

7  Q.   Ma'am, can you not answer my question without

8  reading things?

9  A.   Am I sorry for sending it in the manner -- you

10 are asking me what I said five years ago.

11 Q.   Ma'am, this is a very simple question.

12         Are you or are you not sorry for the manner in

13 which you sent the messages to Ms. Stone?

14 A.   Yes, because it got me here.

15 Q.   So you are only sorry because you are here

16 because of it, that is it?  Not actually sending it

17 to her, just the result?

18 A.   I didn't know that I couldn't communicate to my

19 union president.

20         MR. GREENFIELD:  Objection, your Honor.

21 Move to strike, non-responsive.

22         THE WITNESS:  I'm sorry for the fact it

23 hurt her if it hurt her in any manner.  I have

24 already said that.

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 166 of 425   PageID 15569
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1787

 1  BY MR. GREENFIELD:

 2  Q.   And I'm not asking you about that, Ms. Carter.

 3  A.   And yes, sitting here today, I am sorry for the

 4  manner that I sent it.  Yes.

 5  Q.   Thank you.

 6       I would like to talk now about what you believe

 7  should be the rules when it comes to other

 8  employees' rights at the workplace.  Okay?

 9  A.   Okay.

10  Q.   You believe that a union member should never

11  turn in another union member at Southwest under any

12  circumstances, correct?

13           MR. PRYOR:  Object, asked and answered

14  previously.

15           THE COURT:  I'll overrule that.

16  BY MR. GREENFIELD:

17  Q.   Is that correct?

18  A.   Repeat that.

19  Q.   You believe that a union member should never

20  turn in another union member to Southwest Airlines

21  under any circumstance, correct?

22  A.   An executive board member?  Yes, I don't think

23  that they should ever turn them in to Southwest

24  Airlines.

25  Q.   I'm just asking about any member.

 1  A.    Any member.

 2  Q.    Yes, ma'am.  We will get to executive board

 3  members.  I'm just talking about --

 4  A.    Any member.

 5  Q.    Yes, ma'am.

 6  A.    It depends upon the context.

 7  Q.    Okay.  Thank you.

 8        So now I want to talk to you about what you

 9  believe should be the rules when it comes to you and

10  your voice, okay?

11  A.    Uh-huh.

12            MR. PRYOR:  I'm sorry.  Union what?

13  BY MR. GREENFIELD:

14  Q.    In the workplace --

15            THE COURT:  Counsel couldn't hear that.

16  Can you reask that one question?

17            MR. GREENFIELD:  Yes.  It was a signpost

18  to just talk about a transition about what we are

19  going to be speaking about, and I want to talk to

20  Ms. Carter about the rules when it comes to her and

21  her voice.

22            MR. PRYOR:  Her and her voice.  Okay.

23  BY MR. GREENFIELD:

24  Q.    In the workplace, you believe that you should

25  be able to say whatever you want, however you want,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 168 of 425   PageID 15571
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1789

1  if it is in support of your Christian beliefs,

2  right?

3              MR. PRYOR:  Asked and answered.  Very

4  beginning.

5              MR. GREENFIELD:  It's a different --

6              THE COURT:  Yeah, it's a different ending.

7              I will allow you to answer.

8              THE WITNESS:  That I can say anything and

9  anything?  Repeat that.

10  BY MR. GREENFIELD:

11  Q.   You believe that you should be able to say

12  whatever you want, however you want, if it's in

13  support of your Christian beliefs, isn't that true?

14  A.   Yes, I should be able to -- to voice my

15  Christian beliefs.

16  Q.   With no constraints, no roof on the vulgarity?

17  A.   First of all --

18  Q.   No ceiling on the trauma that it could induce?

19  A.   -- I never, ever sent these to just a member.

20  This was to my union president.

21              MR. GREENFIELD:  Objection, your Honor,

22  non-responsive --

23              THE WITNESS:  I would never send something

24  like that.  So here you go.

25              No, I would never send those types of

1  things to just a regular member.  No.

2  BY MR. GREENFIELD:

3  Q.   I understand.  And we are talking --

4       So you believe it changes now, based on whether

5  it's a member or an executive board member?

6  A.   The only reason that it was sent was because it

7  is a board member who actually took our money and

8  spent it.  If they wouldn't have spent the money, I

9  wouldn't have had a gripe, a dissenting opinion

10 about it and a view on it.  I don't care what they

11 do.  I do if they spend my money and represent me.

12 Q.   Yes, ma'am.  And I'm not talking to you about

13 the complaint right now.  Okay?

14      Can we be on the same page with that?

15 A.   Yes.

16 Q.   I'm asking you about your general beliefs about

17 what you can and can't do, okay?

18 A.   Okay.

19 Q.   All right.

20      In the workplace, because I don't think we have

21 an answer to this question, I understand an

22 objection is probably going to be made about that,

23 but you believe that you should be able to say

24 whatever you want, however you want, if it is in

25 support of your Christian beliefs.  That's correct,

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1791

```
 1   right?
 2             MR. PRYOR:  Object, asked and answered.
 3             THE COURT:  I will sustain that.
 4   BY MR. GREENFIELD:
 5   Q.   There is no roof on the vulgarity of what you
 6   can say?
 7             MR. PRYOR:  Object -- I'm sorry.  I
 8   thought you were done.
 9             Object, asked and answered.
10             MR. GREENFIELD:  I don't believe I ever
11   got an answer to the question about vulgarity.
12             THE COURT:  There is not an answer to this
13   one.
14             THE WITNESS:  I would never be vulgar and
15   never was to any employee.  So, no, I don't believe
16   in vulgarity.
17   BY MR. GREENFIELD:
18   Q.   But you could if you wanted to, correct?
19   Because you believe --
20   A.   That's a right, but I don't believe that with
21   my heart that I would ever do that.
22   Q.   And I'm just -- and I understand that.  I'm
23   just asking you what you believe the limits on what
24   you can say are.
25        There is no roof on that vulgarity, is there?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 171 of 425   PageID 15574
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1792

 1   You believe that's your right, correct?

 2   A.   The first amendment in the Constitution gives

 3   us rights to do --

 4            MR. GREENFIELD:  Objection, your Honor,

 5   non-responsive, move to strike.

 6            MR. PRYOR:  She's entitled to answer his

 7   question.

 8            THE COURT:  Hold on.  No speaking

 9   objections.

10            I will overrule.

11            You can answer the question.

12   BY MR. GREENFIELD:

13   Q.   Ms. Carter, you don't have First Amendment

14   right claims in this case, do you?

15   A.   Under my union, yes.

16            MR. PRYOR:  She didn't get to answer.

17            THE COURT:  I will let her finish her

18   prior answer.

19            MR. PRYOR:  Yes.  About the First

20   Amendment?

21            THE WITNESS:  Under my union, there is a

22   Bill of Rights, and the very first thing is freedom

23   of speech.

24            Would I be vulgar to another just regular

25   flight attendant?  First of all, I don't believe

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 172 of 425  PageID 15575
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1793

1  what I sent was vulgar.  It's heartbreaking.  And I

2  sent it to one person, and she was my union

3  president.

4  BY MR. GREENFIELD:

5  Q.  And, again, Ms. Stone -- or Ms. Carter, excuse

6  me -- I'm not asking you about the post.

7  A.  No, I don't believe that it is just over the

8  top like that.

9      Vulgarity, let's say it is sexual, and what I

10 sent was costumes of what women were wearing.

11          MR. GREENFIELD:  And again, objection,

12 non-responsive, move to strike.

13          THE COURT:  I will sustain that.

14 BY MR. GREENFIELD:

15 Q.  Ms. Carter, I'm not asking you about what you

16 sent.  We all know what you sent.  Okay?

17     I'm asking about what you think you are allowed

18 to do in the workplace?  Okay?  That's just what we

19 are talking about.

20 A.  To a normal employee?  To a normal flight

21 attendant that I'm working with, no.

22          MR. GREENFIELD:  Objection, your Honor,

23 non-responsive, move to strike.  She's testifying.

24 I have not asked a question.

25          MR. PRYOR:  Object to --

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 173 of 425   PageID 15576
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1794

1          THE COURT:  Hold on.  Hold on.

2          MR. PRYOR:  She's answering it.

3          THE COURT:  I think she's answering your

4    question.

5          You can finish your answer.

6          THE WITNESS:  To a normal member,

7    employee, flight attendant, that I work with, I

8    would have never sent, nor do I agree with sending

9    that to just a regular flight attendant unless they

10   were spending my money and representing me in an

11   action.

12   BY MR. GREENFIELD:

13   Q.   Okay.  Ms. Carter, again, I'm not asking you

14   what you sent or --

15   A.   I believe in the freedom of speech.

16          MR. GREENFIELD:  Objection, your Honor,

17   move to strike.  Non-responsive.

18          THE COURT:  Sustained.

19   BY MR. GREENFIELD:

20   Q.   Ms. Carter, I'm just trying to find out, so we

21   can all understand --

22   A.   Yes.  I'm just going to answer yes.  We do have

23   that right.

24          Do I think it would be something that I would

25   do to just a normal flight attendant?  No.  My union

1  president.

2          MR. GREENFIELD:  Objection,

3  non-responsive.  Move to strike everything after "we

4  have the right to do that."

5          THE COURT:  Sustained.

6  BY MR. GREENFIELD:

7  Q.   And because you have that right, Ms. Carter,

8  you believe you could -- I'm not saying that you

9  would -- but you could send vulgar messages to a

10  coworker in support of your religious beliefs,

11  correct?

12          MR. PRYOR:  Your Honor, object on

13  relevance and vagueness.  And this seems to be --

14          THE COURT:  Hold on.  That is speaking.

15          MR. PRYOR:  -- a hypothetical concept

16  without sufficient standing.

17          THE COURT:  I will allow the question if

18  you can answer.

19          THE WITNESS:  If an employee feels it

20  necessary, under the -- and this also goes under the

21  RLA, between union members, and that means members.

22          You are asking me members --

23          MR. GREENFIELD:  Objection, your Honor.

24          THE WITNESS:  -- is that correct?

25          MR. GREENFIELD:  Move to strike,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 175 of 425   PageID 15578
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1796

1  non-responsive.

2              I'm asking about her -- what -- if she

3  could -- if she felt she could send vulgar messages,

4  if she had the right to send vulgar messages to

5  other employees, as long it was in support of her

6  Christian beliefs.

7              THE COURT:  I think she was answering your

8  question, so I'm not going to strike it.

9              You can ask a new question.

10  BY MR. GREENFIELD:

11  Q.   Do you believe you can do that?

12  A.   Under the First Amendment --

13              MR. PRYOR:  Object to not what occurred in

14  this case.

15              THE COURT:  I understand that that's what

16  relevance means.

17              So I'm overruling and you can answer the

18  question.

19              THE WITNESS:  Under the First Amendment,

20  we should be given a right to send -- now, there may

21  be consequences, but to send to somebody a message,

22  a private message, yes.

23  BY MR. GREENFIELD:

24  Q.   And you agree that there can be consequences to

25  sending those messages, just like you just

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 176 of 425  PageID 15579
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1797

 1  testified.  Correct?

 2  A.   To a -- under the context of just sending it,

 3  yes.  But under the consequence -- or under the

 4  circumstances of an action and responding to that

 5  action that my union president did, I feel I have

 6  every right to do that.

 7  Q.   Again, Ms. Stone --

 8            MR. GREENFIELD:  Objection,

 9  non-responsive.  Move to strike.

10            MR. PRYOR:  Your Honor, it's absolutely

11  responsive.

12            THE COURT:  Hold on.

13            I will deny that request.

14            You can ask a new question.

15            MR. GREENFIELD:  I will.

16  BY MR. GREENFIELD:

17  Q.   Should the religions of all Southwest employees

18  be protected in the same way?

19  A.   Yes.

20  Q.   So you would agree that everyone in the

21  workplace can say whatever they want to other

22  employees as long as it was motivated by their

23  religious beliefs, isn't that right?

24            MR. PRYOR:  Object, mischaracterizes her

25  testimony.  She explained --

```
 1                THE COURT:  Hold on.  Hold on.  No, no,
 2  no.
 3                I will sustain that.
 4                MR. GREENFIELD:  Then may I backtrack to
 5  get some clarity to --
 6                THE COURT:  You may.
 7                MR. GREENFIELD:  -- flesh that out, your
 8  Honor?
 9                THE COURT:  You may.
10  BY MR. GREENFIELD:
11  Q.   You have testified that you should be able to
12  say whatever you want, however you want, if it is in
13  support of your Christian beliefs, correct?
14  A.   Yes.
15  Q.   Okay.  And you believe that all religions at
16  Southwest should be protected in the same way,
17  correct?
18  A.   Yes.
19  Q.   So now we get to the big point.
20       So if everyone can say whatever they want to
21  their employees, as long as it was motivated by
22  their religious beliefs, you believe that to be
23  true, correct?
24  A.   Yes.  I believe that you should be able to
25  speak what you believe in, yes, I do.
```

1   Q.   All right.

2         Let's move on and talk about one more rule that

3   you believe should be applied to you and your voice.

4   Okay?

5   A.   Okay.

6   Q.   You believe that because Audrey Stone was the

7   union president, no matter what you did, she

8   shouldn't be able to report you to Southwest

9   Airlines, correct?

10  A.   Correct.

11  Q.   In fact, you believe that if it was an

12  African-American board member, you could send a

13  message including the N word, and they shouldn't be

14  able to report you to Southwest Airlines, isn't that

15  correct?

16  A.   That is not correct.

17  Q.   If you were to send a message to a union

18  officer who is an African-American including the N

19  word, would it be appropriate for that person to

20  report you to Southwest Airlines?

21  A.   That's a defamation, and that -- that, first

22  off, should be handled through the union, and from

23  there, I don't know the actions.

24        But it should be -- and it would be something

25  that the union would probably take them out of the

 1  membership or --

 2  Q.   Well, you couldn't do that to a non-member,

 3  could you?

 4  A.   There were avenues that they could have taken

 5  through the union membership.

 6  Q.   Is it your testimony that the union has the

 7  ability to punish you as a non-member for things you

 8  say?  Officially as far as in a union capacity.  Can

 9  they bring you up on charges?

10  A.   No, I don't believe they can bring me up on

11  charges.

12  Q.   No, they cannot, Ms. Carter, can they?

13  A.   That's why they were searching for other

14  avenues --

15  Q.   Well, my question, Ms. Carter --

16  A.   -- if you recall.

17           THE COURT:  Hold on.  We've got to keep

18  separation between the questions and answers.

19           You can ask a new question.

20           MR. GREENFIELD:  Yes, your Honor.

21  BY MR. GREENFIELD:

22  Q.   Back to my question.

23       If you were to send a message to a union

24  officer, you, as a non-member, who is an

25  African-American, including the N word, your

1   testimony is that it would be inappropriate for that

2   person to report you to Southwest Airlines, isn't

3   that right?

4   A.   I think we would probably go to -- oh, what is

5   it called? -- professional standards, and

6   professional standards is within the company.

7              MR. GREENFIELD:  Objection, your Honor,

8   non-responsive, move to strike.  I asked if she

9   thought it would be inappropriate for that person to

10  report her.

11             THE COURT:  Hold on.  That's a speaking

12  objection.  Hold on.

13             I will overrule that.

14             THE WITNESS:  First of all, I would never

15  use that word.

16             Second of all, I think that's a

17  derogatory, horrible statement to somebody.

18             So I guess if the union felt that it was

19  so derogatory, yes, then they would have to go to

20  the company.

21  BY MR. GREENFIELD:

22  Q.   And, Ms. Carter, I understand.  I'm not saying

23  you would.  I'm saying that you could, and the union

24  should not be able to turn you in to the company.

25  That is correct, right?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 181 of 425   PageID 15584
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1802

1          MR. PRYOR:  Your Honor, I object to him

2    putting her in an example of using --

3          THE COURT:  That is a speaking objection.

4    What's your --

5          MR. PRYOR:  Object to improper question,

6    improper hypothetical, putting her in that position.

7          THE COURT:  Yes.  I think I'll sustain

8    that at this point.

9    BY MR. GREENFIELD:

10   Q.   You believe an objector, okay, let's just take

11   the -- let's just take that specific example.

12        You believe an objector, if they were to send a

13   message to a union officer who is African-American

14   including the N word, it would be inappropriate to

15   turn that person in to Southwest Airlines for doing

16   that, correct?

17          MR. PRYOR:  Object, incomplete

18   hypothetical as opposed to other avenues.

19          THE COURT:  I will sustain that at this

20   point.

21   BY MR. GREENFIELD:

22   Q.   In fact, you believe that you can actually make

23   physical threats of violence to a board member and

24   they shouldn't be able to turn you in, isn't that

25   right?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 182 of 425   PageID 15585
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1803

1             MR. PRYOR:  Once again, an incomplete

2   hypothetical.  Acting like that's the only --

3             THE COURT:  Hold on.  Just give me your

4   objection, not your --

5             MR. PRYOR:  Improper hypothetical.

6             THE COURT:  I will allow this one.

7             THE WITNESS:  If it is a physical threat,

8   like execution, yes.  And I also think they should

9   call the police, police first.  If they feel their

10  life -- such as targeted executions, yes.  I think

11  that that would be something that they should take

12  to the police and then to Southwest.

13  BY MR. GREENFIELD:

14  Q.   Just so we are clear, because you said yes and

15  it was I think a bit ambiguous.

16       Do you believe that you can make -- that a

17  threat of physical violence can be made without

18  those repercussions?

19            MR. PRYOR:  Object to the hypothetical.

20            THE WITNESS:  I don't understand.

21            MR. PRYOR:  Asked and answered.  Object,

22  403.

23            MR. GREENFIELD:  I literally don't know

24  the answer.

25            THE COURT:  Hold on.

```
 1              I will allow it.
 2              THE WITNESS:  Okay.  I didn't understand
 3   that question.
 4   BY MR. GREENFIELD:
 5   Q.   All right.  So just to take a step back.
 6        We are talking about what you believe should
 7   apply to you and your voice, okay?  Yes?
 8   A.   Yes.
 9   Q.   Okay.  And you believe that you can make a
10   physical threat of violence to an executive board
11   member in a message and that they cannot turn you in
12   to the company, isn't that correct?
13              MR. PRYOR:  Object.  Placing her in the
14   position of doing something improper that she
15   hasn't.  It's an improper hypothetical.
16              THE COURT:  I will allow her to answer
17   this one last question.
18              THE WITNESS:  I never and would never
19   suggest physical violence or bring physical violence
20   or talk about physical violence to anyone at work --
21   BY MR. GREENFIELD:
22   Q.   I know you wouldn't.
23   A.   -- or a union member.
24   Q.   I apologize.  I understand that --
25   A.   Place me in that position.
```

 1  Q.   I understand that your testimony is that you

 2  wouldn't do it.

 3       But you believe you could, and that the union

 4  cannot turn you in to the company, isn't that

 5  correct?

 6              MR. PRYOR:  Same objection, and we are now

 7  beyond one last time.

 8              THE COURT:  I will sustain that.

 9  BY MR. GREENFIELD:

10  Q.   I believe your testimony is that on a threat of

11  physical violence, they should call the police,

12  right?

13              MR. PRYOR:  Object, your Honor.  Asked and

14  answered and skirting your ruling.

15              MR. GREENFIELD:  I have not asked anything

16  about --

17              THE COURT:  I will let him revisit this

18  one last time.

19  BY MR. GREENFIELD:

20  Q.   A threat of physical violence is made.  You

21  think the option is that the board member should

22  call the police, correct?

23  A.   I think board member or even just a regular

24  flight attendant should call the police first, yes.

25  Q.   I'm talking about board members.  You believe

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 185 of 425  PageID 15588
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1806

1  the board member should call the police, correct?

2  A.   If they feel physical threat, yes.

3  Q.   Call the police, but not --

4  A.   And file a complaint.

5  Q.   Call the police, but not report it to the

6  company, right?

7           MR. PRYOR:  Object, asked and answered.

8           THE COURT:  Sustained.

9  BY MR. GREENFIELD:

10  Q.   Ms. Carter, you believe because Ms. Stone was

11  the union president, no matter what you did, she

12  couldn't report you, correct?

13           MR. PRYOR:  Object, asked and answered

14  multiple times including --

15           THE COURT:  I'll allow it.

16  BY MR. GREENFIELD:

17  Q.   Isn't that right, Ms. Stone -- or Ms. Carter?

18  A.   That -- repeat that question, please.

19  Q.   Do you believe that because Audrey Stone was

20  the union president, no matter what you did, no

21  matter what you said, she shouldn't report you to

22  Southwest Airlines.  Isn't that correct?

23  A.   No matter what I said as long as it's not a

24  threat.

25  Q.   So you are making -- just so we understand, you

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 186 of 425   PageID 15589
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1807

1    are making a caveat for a threat now, is that

2    correct?

3              MR. PRYOR:  Object, calls for a legal

4    conclusion, and her opinion is not relevant on

5    something not at issue.

6              THE COURT:  Overruled.

7              She can answer.

8              THE WITNESS:  I believe that we can speak

9    to our union president when there has been an action

10   and we are dissenting.  We have every right to say

11   anything to our union president, yes, within the

12   context of what they have done.  Especially when

13   they are using our money to do it.

14   BY MR. GREENFIELD:

15   Q.  And you could even include a physical threat,

16   isn't that right?

17             MR. PRYOR:  Object, asked and answered.

18   BY MR. GREENFIELD:

19   Q.  As long as it was talking about what they

20   were --

21             MR. PRYOR:  We've been through the

22   physical threats.

23             THE COURT:  Hold on.  He's got to finish

24   his question first.

25             Can you restate your question,

 1  Mr. Greenfield?

 2  BY MR. GREENFIELD:

 3  Q.   My understanding is that when I asked you a

 4  question about what you -- what you believe you

 5  could do and whether or not the union or a president

 6  could report you, you parsed out that it couldn't

 7  include a physical threat.

 8       Could you or could you not make a threat --

 9  A.   A union member --

10  Q.   Excuse me.  Excuse me.

11       Could you or could you not make a threat of

12  physical violence as long it was tied to your

13  anti-union speech and not suffer the consequences of

14  being reported by the union president?  That is what

15  you believe, correct?

16           MR. PRYOR:  Object, improper hypothetical.

17  Reported to who?

18           THE COURT:  I'll allow it.

19  BY MR. GREENFIELD:

20  Q.   That's what you believe, right?

21  A.   Well, I can tell you this.  It has been done

22  before and people weren't turned in.

23           MR. GREENFIELD:  Objection, your Honor,

24  move to strike, non-responsive.

25           THE COURT:  Sustained.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 188 of 425   PageID 15591
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 6 July 12, 2022                  Page 1809

1          MR. GREENFIELD:  I'm just asking about

2    her.

3    BY MR. GREENFIELD:

4    Q.   You believe you can do that, right, Ms. Carter?

5    You believe you can do that?

6    A.   Somebody can make a physical threat, and then

7    that person on the union board would actually, I

8    believe, would call the police, file a report, and

9    that report, if it was deemed necessary to involve

10   Southwest Airlines, yes, it would go to Southwest

11   Airlines.

12   Q.   But that's the point, Ms. Carter.

13        You believe that the executive board member can

14   and should call the police, but they cannot inform

15   their company of a physical threat.  That's your

16   testimony?

17   A.   If it is a direct physical threat such as I'm

18   going to execute you, yes.  But I would also first

19   involve the police so that you have a formal

20   complaint to also take to Southwest.

21   Q.   All right.  So now we are back to that same

22   point, because you are parsing out your explanation

23   a little bit.

24        I asked if you believed that because Audrey

25   Stone was the union president, no matter what you

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 189 of 425   PageID 15592
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1810

1  did, she shouldn't be able to report you to

2  Southwest Airlines, right?

3  A.   In the context of union business, no, she

4  should not.

5  Q.   In the context of union business.  We can agree

6  on that.  She should not be able to even if it

7  includes a physical threat, right?  You believe --

8  A.   I did not physically threaten her.

9           MR. GREENFIELD:  Objection, your Honor,

10  non-responsive.  Move to strike.  I'm in the middle

11  of my question.

12           THE COURT:  Hold on.  We've got to keep

13  separation between questions and answers.

14           So I'm not going to strike it, but he

15  needs to finish his question, then she needs to

16  finish her answer.

17           You can repeat your question.

18  BY MR. GREENFIELD:

19  Q.   Okay.  Let's dial it back to the beginning

20  because it got stepped on for the record.

21       I asked you whether you believe that because

22  Audrey Stone was the union president, no matter what

23  you did, as long as it was tied to your protected

24  union speech, that she shouldn't be able report you

25  to Southwest Airlines.

```
 1              MR. PRYOR:  Your Honor --
 2  BY MR. GREENFIELD:
 3  Q.   And now it is your testimony that -- but not
 4  physical threats, right?
 5              MR. PRYOR:  Object.  First of all, it's
 6  now compound, but also he's -- it's like --
 7              THE COURT:  Just state your objection.  No
 8  speaking objections.
 9              MR. PRYOR:  -- he's putting her in an
10  example of doing something highly improper that
11  there is no evidence she's done.
12              THE COURT:  Okay, that is still a speaking
13  objection.
14              MR. PRYOR:  Well. I didn't know -- can I
15  just say --
16              THE COURT:  Improper hypothetical.
17              MR. PRYOR:  Improper hypothetical.
18              THE COURT:  I will sustain that.
19              MR. PRYOR:  Sorry.
20              THE COURT:  Counsel, I'm wondering if we
21  can break for lunch.  It is 12:24.
22              MR. GREENFIELD:  This is my last point,
23  your Honor.
24              THE COURT:  Are you within five minutes?
25              MR. GREENFIELD:  I'm within five minutes.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 191 of 425   PageID 15594
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1812

```
 1              THE COURT:  Okay.  Let's finish your
 2   examination then.
 3   BY MR. GREENFIELD:
 4   Q.   Do you or do you not believe that you can make
 5   a threat of physical violence to a union president,
 6   okay?  As long it's tied to your speech, do you
 7   believe -- to your union dissenting speech, do you
 8   believe you can do that?
 9              MR. PRYOR:  Same objection.  He's now
10   placing her -- same objection.  Improper
11   hypothetical.
12              MR. GREENFIELD:  It's not a hypothetical,
13   your Honor.
14              THE COURT:  I will allow her to answer.
15              THE WITNESS:  Please repeat that.
16   BY MR. GREENFIELD:
17   Q.   Yes ma'am.
18   A.   And please don't put me as the person
19   threatening because I have never threatened anybody
20   at my job.
21   Q.   Ms. Carter, again, I'm not asking you -- I'm
22   not saying anything about what you did or whether
23   you would or won't used the N word.  We are just
24   talking about what you believe you can do and the
25   limits to your voice, okay?
```

1            That's what I want the jury to understand.

2   A.   Okay.

3   Q.   Do you believe that you can make a threat of

4   physical violence to your union president as long as

5   you are also dissenting to the union's position on

6   whatever?  Do you believe you can do that?

7            MR. PRYOR:  Object, improper hypothetical.

8   Object, asked and answered.

9            MR. GREENFIELD:  It is not a hypothetical.

10            THE COURT:  I'll allow it.

11   BY MR. GREENFIELD:

12   Q.   Do you believe you can do that, Ms. Carter?

13            MR. PRYOR:  Same objection.

14            THE COURT:  I'll allow it.

15            THE WITNESS:  I believe that you can --

16   you can, and it has been done, make a threat to a

17   union officer.

18            Do I think that that is protected under

19   the RLA?  A threat such as execution?  No, I do not.

20            MR. GREENFIELD:  Okay.  I would like to

21   approach the witness for purposes of impeachment.

22            THE COURT:  With what?

23            MR. GREENFIELD:  Her deposition, your

24   Honor.

25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 193 of 425   PageID 15596
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1814

 1  BY MR. GREENFIELD:

 2  Q.   Ms. Carter, do you remember giving a deposition

 3  testimony tied to this case?

 4  A.   Yes.  That has been a couple of years ago.

 5  Yes, I do.

 6  Q.   During that deposition, did you swear to tell

 7  the truth, the whole truth and nothing but the

 8  truth?

 9  A.   Yes.

10  Q.   Okay.

11           MR. GREENFIELD:  May I approach the

12  witness, your Honor?

13           THE COURT:  You may.

14  BY MR. GREENFIELD:

15  Q.   Reading from page 46, can you read, please,

16  silently, as I read aloud.

17       "Had you sent Ms. Stone a message that said" --

18           MR. PRYOR:  Object, improper use of

19  deposition.

20           THE COURT:  I will sustain that.

21           And we need a microphone.

22           MR. GREENFIELD:  May we approach sidebar?

23           THE COURT:  You may.

24           (Thereupon, the following proceedings were

25       had at sidebar:)

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 194 of 425   PageID 15597
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1815

1              MR. GREENFIELD:  Your Honor, I presented

2    the testimony specifically on this issue.  I have

3    shown page and line as to what I'm going to speak

4    on.  I don't know where my mistake is in this

5    impeachment technique.

6              MR. PRYOR:  First of all, he has to

7    establish that she said something inconsistent.

8              He asked a hypothetical now that is not

9    the question that was asked at deposition.  It's a

10   different question.

11             She does say, in response to that

12   question, that, no, you shouldn't report it to

13   Southwest Airlines.

14             Now if he wants to ask those questions

15   there and see if she says something different, then

16   he can use the deposition.  But not with the

17   hypothetical that is not that question.

18             THE COURT:  That's my view --

19             MR. GREENFIELD:  You want me to use the --

20             THE COURT:  -- on all fours.

21             MR. PRYOR:  I will use the exact language

22   on the page and then we will get to lunch.

23             (Thereupon, the sidebar was concluded and

24        the following proceedings were held in open

25        court:)

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1816

```
 1  BY MR. GREENFIELD:
 2  Q.   Had you sent Ms. Stone a message that said,
 3  "I'm going to harm you," it is your view, based on
 4  what you have testified today, that it would be
 5  inappropriate for her to report you to Southwest
 6  Airlines, is that correct?
 7  A.   If I was going to harm her?
 8  Q.   Yes, ma'am.
 9  A.   I think that she should call the police.
10  Q.   And my question is a little bit different,
11  ma'am.
12       My question is, would it be inappropriate for
13  her to report you to Southwest Airlines?
14            MR. PRYOR:  Your Honor, I object.  Can I
15  show you -- she doesn't even have it in front of
16  her.  She gave the same answer.
17            THE COURT:  Sidebar.
18            (Thereupon, the following proceedings were
19       had at sidebar:)
20            MR. PRYOR:  He asked the question and she
21  gave the very same answer.
22            And then he said, "That is not my
23  question."
24            That is exactly what he asked.
25            MR. GREENFIELD:  No.  If you continue to
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 196 of 425   PageID 15599
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1817

1  read down the page, she testifies that, look, if you

2  look at line 17 to 20 --

3            MR. PRYOR:  We are not there yet, though.

4            MR. GREENFIELD:  -- I'm asking a very

5  specific question.  Because this is the next

6  question that's about to follow up.  Because the

7  same thing happened at her deposition.  She tried to

8  equivocate about the police.

9            17.  "I'm asking a very specific question

10 I understand that you would have reported it to the

11 police.  Would it be inappropriate for her to also

12 report you to Southwest Airlines?"

13            THE COURT:  You need to move on to the

14 second question now.  You haven't gotten there.  The

15 first question is now consistent; we have got to get

16 to the second.

17            (Thereupon, the sidebar was concluded and

18      the following proceedings were held in open

19      court:)

20 BY MR. GREENFIELD:

21 Q.   Okay, Ms. Carter.

22      So I'm asking a very specific --

23            MR. PRYOR:  I would like the record to

24 reflect that my objection was sustained.

25            THE COURT:  Correct.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 197 of 425  PageID 15600
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1818

 1  BY MR. GREENFIELD:

 2  Q.   So I'm asking a very specific question.  Okay?

 3       I understand that you would have reported to

 4  her to the police.  Agreed.  Would it be

 5  inappropriate for her to also report it to Southwest

 6  Airlines?

 7  A.   If the threat was real and the police report

 8  shows it.

 9  Q.   The threat is just "I'm going to harm you."

10  That was the -- that was the quote.

11       I'm asking --

12  A.   In what context?  I'm going to harm you.

13       She should report it to the police, and if she

14  truly feels that she's being harmed, I still don't

15  believe that she should be going to Southwest

16  Airlines.

17  Q.   Thank you, Ms. Carter.

18       You believe even if --

19  A.   Go to the police.

20            MR. PRYOR:  Wait.  Object, asked and

21  answered.

22  BY MR. GREENFIELD:

23  Q.   Even if you said, "I'm going to harm you" --

24  A.   Go to the police.

25  Q.   -- she should not be able to report it to

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 198 of 425   PageID 15601
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1819

1 | Southwest Airlines, correct?

2 |          MR. PRYOR:  She's answered the question.

3 |          THE WITNESS:  Go to the police, and then

4 | they will file the complaint to Southwest Airlines.

5 | BY MR. GREENFIELD:

6 | Q.   Ma'am, I understand you are talking about the

7 | police.

8 |          MR. GREENFIELD:  And I object and move to

9 | strike as non-responsive.

10 | BY MR. GREENFIELD:

11 | Q.   I'm asking --

12 | A.   No, I don't believe she should go to Southwest.

13 | I believe she should go to the police.

14 |          MR. GREENFIELD:  Thank you, Ms. Carter.

15 |          THE WITNESS:  You are welcome.

16 |          THE COURT:  Are you passing the witness?

17 |          MR. GREENFIELD:  Yes, I pass the witness.

18 | I apologize.

19 |          THE COURT:  Okay.  Now we should take

20 | lunch.

21 |          So you can only talk to your fellow

22 | jurors, not about the case.  You can't talk to

23 | anyone else other than fellow jurors and court

24 | personnel.  And don't do any research about the

25 | case.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 199 of 425   PageID 15602
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1820

1            We will see you back here in one hour at

2    1:33.

3            All rise for the jury.

4            (The jurors exited the courtroom.)

5            THE COURT:  Okay.  So anything we need to

6    cover?  And I guess the age-old question of do I

7    tell a witness, this witness, that they can't talk

8    to anyone about the case?  I'm trying to think of my

9    recollection.  And I think in non-overnight breaks,

10   if they are continuous testimony on the stand, I ask

11   them not to talk to a lawyer even if they have Fifth

12   or Seventh Amendment rights.

13           MR. PRYOR:  Your Honor, I haven't talked

14   to her since Friday or whatever, so it's not an

15   issue.

16           But I would like to know where we are

17   going.  Is this it?

18           THE COURT:  Any other witnesses that you

19   plan to call after Ms. Carter?

20           MR. GREENFIELD:  I plan on resting, your

21   Honor.

22           THE COURT:  Thanks.

23           MR. PRYOR:  Your Honor, there is a matter

24   to raise.

25           THE COURT:  Yes.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 200 of 425   PageID 15603
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1821

 1                    MR. PRYOR:  I request just some additional
 2     time.  And --
 3                    THE COURT:  Okay.  Just a second.
 4                    Ms. Carter, you don't have to stay
 5     standing anymore.  You can leave the box.  But I
 6     just ask you to not talk to anyone about the case
 7     during the lunch break, since you're still a
 8     witness.
 9                    MR. PRYOR:  And, your Honor, I think we
10     might end up -- she would be happy to step outside
11     for a minute while we talk if you are concerned
12     about the rule with her.
13                    I'll have her step outside --
14                    THE COURT:  That seems appropriate.
15                    MR. PRYOR:  -- so I don't have to worry
16     about it.
17                    Your Honor -- and I -- the case that they
18     have put on, I think you can see that their defense
19     to our claims did not require the same type of
20     time-wise, document-wise, witness-wise that we were
21     confronted with in presenting our case.
22                    And I also respectfully suggest to the
23     Court, I have almost pulled a muscle not answering
24     questions of witnesses that I would love to, and I
25     fully acknowledge that we have not cut into muscle

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 201 of 425   PageID 15604
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1822

1    at all in terms of our ability to provide a trial

2    for our client.

3              Having said that, I am faced at closing

4    with two parties that have an ocean of time, I think

5    at this point they could have four hours of closing,

6    and I have probably about 45 minutes.  And that's --

7    I need to spend time with this witness on

8    cross-examination now.

9              And so I know the Court has a bucket of

10   three hours, and I would like some -- I think there

11   should be some limit on -- a maximum limit on time

12   to closing.

13             I don't think the intent was to offer 12

14   hours to the other side that they -- or 6, 12,

15   whatever it was.  I think you get my point.

16             I don't think that the point was to allow

17   them to not have a need for that time and then to

18   clump it into closing, and I'm not saying that's

19   what they did.  But I would like some time

20   protection in closing and I would like some

21   additional time.

22             There we go.

23             THE COURT:  Okay.  So what I will say

24   preliminarily, and then I will ask y'all's thoughts,

25   on time protection in closing, I'm not going to give

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 202 of 425   PageID 15605
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1823

 1  you all of their time and then tell them they can't

 2  use theirs, which is how I interpret the latter part

 3  of your request.  I don't think you can do that.

 4  You can't take over their case.

 5           I'm not going to impose limits on closing.

 6           What I do is -- I don't do that on opening

 7  or closing.  I give y'all a bucket of time and let

 8  y'all use the time as you see fit.

 9           So I will listen to arguments from Union

10  and Southwest on how much more time they are asking

11  for.

12           But before I do, let me ask you, what is

13  your concrete request on how much more time you

14  would need?  And I understand your arguments are you

15  would use it on an adequate closing and you would

16  use it on cross-examination of Carter.  You made a

17  reference at the sidebar to wanting to ask Sims

18  questions in a rebuttal case.

19           So what are you wanting and what is it

20  for?  I want to drill down and be very concrete.

21           MR. PRYOR:  It's difficult for me to be

22  concrete.

23           I would say I need 15 to 20 minutes with

24  Ms. Carter on cross, and then I don't know what they

25  will do, and I may need another five minutes after

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 203 of 425   PageID 15606
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1824

1    that.

2            So I'm looking at using a substantial

3    portion of my 45 minutes that I have left that I

4    can't afford, and so I would ask that I have time

5    for that.

6            Then for closing -- and I understand what

7    the Court is saying.  I'm not asking for their time.

8    I'm asking for a reasonable time limitation on

9    closing.  But I guess I would like an hour for

10   closing.  And I would -- assuming reasonable

11   restrictions on them.  But I understand the Court's

12   position.

13           THE COURT:  Understood.

14           Okay.  So let me shift the baton over and

15   ask Southwest and the Union for their positions.

16           MR. McKEEBY:  Our position is that we

17   oppose the request for more time, your Honor.

18           We have planned our trial presentation

19   under the rules set forth by this Court, we have

20   done our best to be efficient within those

21   guidelines, and we frankly have made strategic

22   decisions based on those time limitations.

23           To wit, what we did with Mr. Schneider.

24   We relied on the Court's rules and tried this case

25   within those rules.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 204 of 425   PageID 15607
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1825

 1                 To now give yet more time to plaintiffs

 2    is -- is not fair, particularly given what the Court

 3    mentioned yesterday about not holding any

 4    efficiencies on the side of defendants against us.

 5    I feel like that is effectively what is being done

 6    here.  We have been efficient.

 7                 And, frankly, I'm not comfortable

 8    criticizing opposing counsel, but they have not been

 9    efficient from the time -- from the very beginning

10    of this case when my opening statement was

11    interrupted on an issue that was entirely covered by

12    a motion in limine ruling, to the constant sidebars,

13    I won't say every time, but almost every time an

14    objection to sustain, we are up there spending time.

15                 And, frankly, the examination style of

16    opposing counsel, which is I understand something

17    that is at some level effective and may have been so

18    in the past, but it's questions that are vague and

19    asked in a confrontational style.

20                 And that's fine, there is nothing wrong

21    with that, but it is also not the type of

22    examination technique that is going to lend itself

23    to an efficient introduction of the testimony.

24                 So all of those considerations mitigate in

25    favor of not providing any more time.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 205 of 425   PageID 15608
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1826

 1            THE COURT:  Understood.

 2            Union position.

 3            MR. GREENFIELD:  Yes.  I think the most

 4   important thing to look at, from my vantage point,

 5   is an issue of prejudice.

 6            I have bent over backwards, I know

 7   personally, I'm not going to speak for Southwest,

 8   but to present our case in a way that complied with

 9   the original six hours you gave us.  Now, ultimately

10   you said maybe there might be more time if we needed

11   it.

12            The way I asked questions about Southwest

13   witnesses, the way I asked questions about -- to

14   Ms. Stone, if I knew all of this entire -- if we

15   were going to rip up the time sheets, I would have

16   approached the case completely differently.  I tried

17   to play within the rules of the game that you set

18   forth.

19            And I don't believe they want to do that

20   or have ever had any intention of doing that, your

21   Honor.  They have been asking since the very moment

22   the trial started for more time.  They asked for

23   more time before it started.  You said no.  They

24   asked for more time after their opening.  They asked

25   for more time almost after every witness.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

```
 1              It has never been their intention to
 2   comply with the timing rules you presented, your
 3   Honor.
 4              MR. PRYOR:  Response.
 5              THE COURT:  Briefly.
 6              MR. PRYOR:  First of all, we are all
 7   operating under the same order here, and that order
 8   says that you can ask for more time.  We all know
 9   that is an opportunity that your order affords.  So
10   no one is being prejudiced.
11              The second is, in terms of our
12   efficiencies, while we have foregone questions we
13   would love to ask of numerous witnesses, and I think
14   that we have been as efficient as we can within the
15   bounds of zealously representing our client's
16   position to this Court, I don't think it's
17   unreasonable, given we are dealing with two parties
18   here that are aligned, that don't have the same
19   burdens and efforts required to put on our case that
20   they are dealing with.
21              I'd ask the Court for more time so we can
22   adequately cross-examine Ms. Carter and adequately
23   summarize the evidence in our closing.
24              THE COURT:  Okay.  So here is my ruling.
25              I'm going to give you a few more minutes,
```

1   but not nearly what you want, and not for the

2   reasons that any of us have talked about.

3              I'm going to give you 15 more minutes for

4   the purpose of cross-examining Carter, and here is

5   why.

6              When I let you get into the arbitration

7   testimony, if I'm a juror sitting over here, I'm

8   wondering, why wasn't this decided in arbitration?

9              I think it is fair game for you to ask her

10  on cross-examination if her claims that are

11  presented in this lawsuit at this time were at issue

12  in the arbitration.  I think you can do that without

13  running afoul of my motion in limine and correct any

14  conceptions that the jury may have.

15             I'm going back to the other points that

16  y'all made.  I echo them, and that is the reason why

17  I'm not granting more time to you.

18             But I do think that there is this --

19  perhaps an inference now regarding arbitration that

20  you are entitled to clean up.

21             I did give you the leeway of going there,

22  and I don't think you crossed over the line that I

23  was thinking of, which I appreciate.  But it does

24  leave the jurors with a question in their minds of,

25  well, why are we here?  Why didn't this end at

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1829

1   arbitration?

2          Okay.  So what did I say?  15 minutes.  So

3   you have 15 minutes that doesn't count to the other

4   46 minutes you have already got.

5          MR. PRYOR:  If I use ten, can I keep my

6   five?

7          THE COURT:  I'll give you the 15 to use

8   how you see fit, but I need you to use it wisely.

9   Does that make sense?

10          MR. PRYOR:  It does.

11          THE COURT:  So you are now sitting at an

12   hour and one minute.

13          MR. GREENFIELD:  And that includes his

14   time for closing?

15          THE COURT:  Yes.  And I'm not putting a

16   limit on how much of your time you are going to use

17   for closing.

18          I will tell everyone, before I go into

19   closing, you can take as much time as you want.

20   I've never seen a closing that lasted upwards of an

21   hour that a jury appreciated, right?  So you can

22   take that for what you will.

23          But jurors appreciate succinct closings

24   and they're more powerful if they do succinctly

25   summarize the evidence.  Get to the point and then

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 209 of 425   PageID 15612
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1830

 1    end the closing argument.

 2              All right.  Any other issues before we

 3    come back?

 4              Okay.  So when we come back, you are going

 5    to cross-examine.  We will go through however many

 6    rounds we go through.  You've got your extra 15

 7    minutes.  But then at the point that you rest,

 8    because this is your last witness, then we will kick

 9    the jury out, have another motion, I will rule on

10    both motions, and we will proceed from there.

11              MR. McKEEBY:  Your Honor, two questions.

12    Do I get the opportunity to examine Ms. Stone -- I

13    mean Ms. Carter?

14              THE COURT:  I should have asked you next.

15    Why did I go out of order?

16              I'm sorry.  I should have asked you next.

17              Based on --

18              MR. McKEEBY:  He rested, so it should be

19    me next, and then --

20              THE COURT:  Yes.  So I didn't tell you you

21    can go next.  So you should be next, Mr. McKeeby,

22    and then he'll go.

23              MR. McKEEBY:  And it is not going to be

24    much.

25              THE COURT:  Right.  And then we will go

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 210 of 425   PageID 15613
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1831

1   back for a round two if needed.

2              MR. McKEEBY:  It is not going to be long.

3              THE COURT:  But thank you.  I'm used to

4   going in a wheel this way, and I need to -- the

5   wheel is now different.

6              MR. McKEEBY:  The other question is may

7   Mr. Sims be excused?

8              MR. PRYOR:  Yes.

9              THE COURT:  Okay.  Any other questions?

10             So I think I cut the jury loose at 12:33,

11  so 1:33 is when we should back in here.  See you

12  soon.

13             THE COURT SECURITY OFFICER:  All rise.

14             (Recess.)

15             THE COURT SECURITY OFFICER:  All rise.

16             THE COURT:  Thank you.  One quick update

17  before we get the jury.  Y'all should get jury

18  questions any minute, the latest round from me.

19             So we will come back in, we will finish up

20  this round.  Then I will kick the jury out for

21  motions and rulings.  And then see if you have a

22  rebuttal case when the jury comes back in.

23             And then if you don't have a rebuttal

24  case, then I need to send them out because I'm

25  assuming there is going to be a renewed Rule 29

1  motion.  Then bring the jury back in.  And then we

2  will see what time we are.  We may just send them

3  home early for the day, so we can do charge

4  conference and printing it.

5          If we have beaucoups of time, I will keep

6  them around.  But I want to make sure we have time

7  for the formal charge conference and printing the

8  charge.

9          Does that make sense for a run of show?

10 Any questions?

11         Okay.  We will bring them in.

12         (The jurors entered the courtroom.)

13         THE COURT:  Thank you.  Be seated.

14         Okay.  So Mr. Greenfield, you passed on

15 the witness.

16         Which means, Mr. McKeeby, do you have

17 questions?

18         MR. McKEEBY:  No questions for the

19 witness.

20         THE COURT:  Okay.  So now I need to ask

21 you, Mr. Pryor, do you want to question the witness?

22                    CROSS-EXAMINATION

23 BY MR. PRYOR:

24 Q.  Ms. Carter, I feel like we have been here

25 before, but let me ask you, in terms of saying

Case 3:17-cv-02278-X    Document 452    Filed 06/14/23    Page 212 of 425    PageID 15615
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1833

1  anything you want to say, whether it be religious

2  speech, union activity, do you believe that that

3  includes you should be able to engage in illegal

4  speech?

5           MR. GREENFIELD:  Objection, your Honor,

6  leading the witness.

7           MR. PRYOR:  It's redirect.

8           THE COURT:  I'll allow it.

9           THE WITNESS:  No, not illegal speech.

10  BY MR. PRYOR:

11  Q.   And if you defamed someone, if you say

12  something knowingly false, do you think you should

13  be able to get sued for that?

14  A.   Oh, yes, yes.

15           MR. GREENFIELD:  Objection, your Honor

16  leading the witness.

17           THE COURT:  I'll allow it.

18  BY MR. PRYOR:

19  Q.   And also, you talked about the workplace

20  itself.  You agree to that there should be

21  reasonable limitations so you can keep peace in the

22  workplace?

23  A.   Yes.

24  Q.   Okay.

25       You didn't sign the recall petition because

 1  were an objector and you weren't allowed to sign it,

 2  right?

 3  A.   Correct.

 4  Q.   The Step 2 and arbitration, you were asked some

 5  questions that led to those two topics.  Just want

 6  to make sure we are still very clear on that, that

 7  those processes did not involve your claims as to

 8  your religious freedoms and your union activities

 9  that are before this court today, true?

10  A.   That is correct.

11  Q.   Mistake.

12       The mistake that you are talking about is a

13  mistake of, I used social media and that gave them a

14  free shot at me?

15  A.   Correct.

16  Q.   And counsel is asking you questions about the N

17  word and threats to people, and whether or not even

18  if it is union activity, it should be reported to

19  the company.

20       Do you see an irony in a union coming in here

21  and talking about wanting the company to be involved

22  in union activity?

23  A.   Yes.

24  Q.   Is that the Local 556 that you feel is corrupt

25  and that is one of the reasons you are here?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 214 of 425   PageID 15617
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1835

```
 1   A.   Yes.
 2             MR. GREENFIELD:  Objection, your Honor,
 3   leading the witness.  If I can have a running
 4   objection.
 5             THE COURT:  I'll give you the running
 6   objection.  I'll sustain that last objection.
 7             Can you rephrase?
 8   BY MR. PRYOR:
 9   Q.   Ma'am, do you believe, as you sit here today,
10   that you had the right to send the complaints that
11   you did, along with the videos that you sent, to the
12   private Facebook message of Audrey Stone TWU, your
13   union president?
14   A.   Yes.
15   Q.   Do you believe that you had the religious right
16   to post on Facebook what you did that you got fired
17   for?
18   A.   Yes.
19             MR. PRYOR:  Thank you.
20             THE COURT:  Okay.  So round two,
21   Mr. Greenfield.
22             MR. GREENFIELD:  None, your Honor.
23             THE COURT:  Okay.
24             Mr. McKeeby, anything?
25             MR. McKEEBY:  No questions.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 215 of 425   PageID 15618
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1836

```
 1              THE COURT:  Okay.  And you, one last

 2   question --

 3              MR. PRYOR:  No questions on my questions,

 4   your Honor.

 5              THE COURT:  That's right, you don't need

 6   to question based on your questions.

 7              Okay.  Ms. Carter, again, you can leave

 8   the witness box and return to your rightful seat in

 9   the courtroom.

10              Okay.  Any other witnesses that the union

11   wants to put on during its case?

12              MR. GREENFIELD:  The union rests, your

13   Honor.

14              THE COURT:  Okay.  So remember, any time

15   someone says the word "rest," now y'all got to go

16   back out for your break.  I'm sorry.

17              So same instructions as always:  You can

18   talk to your fellow jurors and court personnel, not

19   about the case; can't talk to anyone else; can't do

20   any research.  We will see you here in a few

21   minutes.

22              All rise for the jury.

23              (The jurors exited the courtroom.)

24              THE COURT:  Okay.  You can be seated.

25              Okay.  So now we've had both Defendants
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 216 of 425   PageID 15619
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1837

1  rest, so let me turn it back to you, Mr. Gilliam.

2  You can make your motion as to the union, and then I

3  held in abeyance my ruling as to Southwest and your

4  motion as to Southwest.  So I need to rule on both

5  of those motions.  So I will turn the floor over to

6  you.  You can go there or the podium.  I don't -- I

7  can keep looking over at you like this.

8            MR. GILLIAM:  I like the podium a little

9  bit better.

10            So at this time, we would move for

11  directed verdict against Local 556 on all claims, as

12  to liability.

13            Let's start first with the RLA retaliation

14  claim.  We've -- the testimony and all of the

15  evidence has shown that Ms. Stone reported

16  Ms. Carter for her Facebook videos and messages that

17  were privately sent to her that were talking about

18  nothing but union -- well, opposing the Women's

19  March and union activity, RLA-protected activity.

20            Ms. Stone couldn't identify anything that

21  wasn't RLA-protected activity.

22            All of those posts on their face, they

23  mention the recall, they mention objecting to the

24  union's use of dues, they were opposing the union's

25  activities at the Women's March.

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 217 of 425  PageID 15620
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1838

1              So there is -- Ms. Stone was, like I said,

2   never able to identify anything that wasn't

3   protected activity.

4              Ms. Stone was acting within the scope of

5   her official capacity.  Everything that Ms. Carter

6   sent her addressed union activities.  They never had

7   any personal/interpersonal communications about work

8   or about anything else about -- apart from the union

9   and the union's activities.

10             Local 556 Vice President Nevarez testified

11  you cannot separate the employee from the union

12  president.  She's always acting in the presidential

13  capacity.

14             Ms. Carter sent her messages to the Audrey

15  Stone TWU account.  And Ms. Stone testified that she

16  used that Audrey Stone TWU account for union

17  business.

18             Also, Ms. Stone copied on her complaint

19  Naomi Hudson, the Southwest negotiating -- CBA

20  negotiating chair of their negotiating committee and

21  director of labor relations, as well as the vice

22  president, Sonya Lacore.

23             And historically, Ms. Stone's interactions

24  with these officials at Southwest was in the

25  capacity of negotiating social media discipline and

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 218 of 425   PageID 15621
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1839

1    clemency for employees.

2             So of course, when she's engaging them,

3    she's acting within that capacity as well.

4             The -- and again, the videos and Facebook

5    messages privately sent to Ms. Stone were a

6    substantial or motivating factor.

7             There was another factor, we argue, as

8    Ms. Carter's religious beliefs, and we will move to

9    those in a second.  But as to the RLA activity that

10   Ms. Carter engaged in, that was a motivating factor.

11   When Ms. Stone reported Ms. Carter, her complaint in

12   Exhibit 66 revealed that she's -- that Ms. Carter

13   was talking to her about events that transpired at

14   the Women's March, about events that she and the

15   union had participated in there.

16            And she also referred to Ms. Carter's

17   political comments.  So in her meeting with

18   Southwest, she -- she was asked about Charlene

19   Carter and said she's very anti-union.

20            And what did she ask Southwest to do?  She

21   said, Make Charlene and Chris Click, another recall

22   supporter and union opponent, to stop.  Make them

23   stop.

24            Now, as for any sort of affirmative

25   defense, there is no affirmative defense that Local

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 219 of 425   PageID 15622
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1840

 1  556 could raise.  It could raise -- its affirmative

 2  defense has to be a non-discriminatory reason.

 3  There are no non-discriminatory reasons.  The only

 4  reason would be Ms. Carter sending these videos and

 5  messages that upset her.

 6          But that is protected activity.

 7          The reason -- well, the affirmative

 8  defense has to be a non-discriminatory reason,

 9  because if it is the same reason, there is no point

10  to the RLA's protections at all, and the statutory

11  text is totally eviscerated.

12          So there has got to be a point to those

13  RLA protections.

14          Now, let's move on to the Title VII

15  cause -- attempt to cause religious discrimination.

16          Again, I addressed how Ms. Stone was

17  acting in her official Local 556 capacity when she

18  reported Ms. Carter.  Clearly, she attempted to

19  cause Southwest to discriminate against her.  I

20  think it is clear that she was wanting Southwest

21  to -- to terminate her, but at least discipline her,

22  because she talked about all of the activities she

23  engaged in in her complaint, and then started

24  listing all of the different policies that Southwest

25  could terminate Ms. Carter under.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 220 of 425   PageID 15623
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1841

 1              Policies that Ms. Stone had experience
 2    with.  Ms. Stone, in her social media statement that
 3    she had released just two years before, said,
 4    Employees are getting turned in and terminated for
 5    these policies, for violating these policies.
 6              So Ms. Stone knew exactly what the results
 7    of her actions could be.
 8              Importantly, on this religious
 9    discrimination claim against Local 556, Ms. Stone's
10    email refers to Ms. Carter's religious comments.  So
11    she knew exactly what she was reporting them for,
12    for these Facebook videos and messages.
13              So the other religious discrimination
14    claim against Local 556. Ms. Stone knows what the
15    duty of fair representation is.  So she -- she knows
16    that treating -- that turning someone in for their
17    religious comments is, per se, treating them
18    differently from all of the other represented
19    employees that she knows she has to defend and
20    protect based on her duty of fair representation.
21    So it is, per se, discrimination.
22              She -- Ms. Stone also knew exactly what
23    she was doing because she testified that she talked
24    to her lawyers about accommodation and religious
25    discrimination.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 221 of 425   PageID 15624
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1842

1              She -- Ms. Stone's actions were in bad
2    faith as well, because she -- she believed that --
3    she testified to her belief that any employee
4    should -- who was engaging in protected activities
5    with the union should be protected and that the
6    Southwest policies don't apply.  Ms. Stone testified
7    to that.
8              But she turned Carter in anyway.
9              And I think that these particular
10   religious discrimination issues, they get to the
11   duty of fair representation claim as well.  Because
12   the discriminatory prong of arbitrary,
13   discriminatory and in bad faith is religious
14   discrimination.
15             So by engaging in religious
16   discrimination, Ms. Carter -- I mean, I'm sorry --
17   Ms. Stone and Local 556 violate the duty of fair
18   representation.
19             And the bad faith prong, again, just --
20   just described was that she believed that any time a
21   represented employee communicates with the union
22   about union activities is protected and Southwest
23   policies don't apply.
24             She negotiated that in the Collective
25   Bargaining Agreement.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 222 of 425   PageID 15625
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1843

1          Again, she turned Ms. Carter in anyway.

2          Let's get to the failure to accommodate

3    claim.

4          I will be quick here.

5          So here you have President Stone acting on

6    behalf of Local 556, reporting Ms. Carter.  She --

7    she could have engaged in conversations with

8    Ms. Carter.  She could have simply blocked her and

9    prevented her from having more communications, and

10   that was at least short of terminating her

11   employment.

12          So for that reason, just by the act of

13   turning Ms. Carter in, Audrey Stone, on behalf of

14   Local 556, who knew her affirmative obligations

15   under Title VII -- again, she testified to having

16   discussed those with a lawyer, she was well aware of

17   them -- knowing her affirmative obligations under

18   the duty of fair representation, repudiated any

19   obligation to take actions to make an exception for

20   Ms. Carter, make an exception for her religious

21   observances, beliefs and practices, and turned her

22   in.

23          And going back to the duty of fair

24   representation.  So I did address the discriminatory

25   and in bad faith prongs.  The -- as for the

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 223 of 425   PageID 15626
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1844

1   arbitrary prong, under the Northern District of

2   Texas case McCall, treating someone differently

3   based on their -- their -- any sort of political

4   differentiation between represented employees is an

5   arbitrary action on the part of the Union president.

6          And even though I go through those

7   arbitrary, discriminatory and in bad faith prongs,

8   the fact is, is that the union has failed to meet a

9   couple of its -- its own burdens.

10         First of all, there is a presumption that

11  a union official acts in her official capacity.  And

12  the union has not presented any evidence whatsoever

13  that she was acting outside of her official

14  capacity.

15         There is also the presumption that the

16  union breaches the duty of fair representation when

17  it causes another employee to be disciplined.

18         And there -- they must show, the union

19  must show, that President Stone acted in good faith

20  with rationale considerations, and representing its

21  constituency as a whole.

22         By President Stone's own definition, she

23  acted in bad faith because she turned in a

24  represented employee when she knows that Southwest

25  policies shouldn't be meddling in their

 1   communications.

 2            And it was -- it was Ms. Carter's protest

 3   of the Women's March and union dissident activities

 4   that -- that motivated Ms. Stone, not -- there were

 5   no other rational considerations that the union has

 6   shown.

 7            And also, the third thing -- and these are

 8   conjunctive elements -- the union also has to show

 9   that it was representing its constituency as a

10   whole.  How could it possibly be representing its

11   constituency as a whole when it is turning in a

12   protected employee for protected activities?

13            That doesn't represent the constituency as

14   a whole, it has -- it is targeting one member who

15   was opposing the union and who was supporting the

16   recall.

17            So again, I would like to also

18   specifically address how -- there were two

19   motivations here for Local 556 and Southwest.  And

20   they wanted to discipline Ms. Carter for Facebook

21   videos and messages, and they were both RLA

22   protected and they were protected by Title VII.

23            The posts on Ms. Carter's Facebook page

24   were -- were protected under Title VII.  She was

25   exercising her religious observances, beliefs and

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 225 of 425   PageID 15628
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1846

1    practices and sharing her views with other flight

2    attendants.

3                And as for Southwest's defense of a nexus,

4    these -- these posts that they found that justified

5    their nexus were years old.  And that the

6    uncontroverted testimony shows that these were three

7    to four years old and nobody ever disputed that,

8    nobody ever showed differently.

9                So for all of these reasons, I think the

10   Court should grant a directed verdict on all claims

11   against Southwest and Local 556.

12               THE COURT:  Okay.  Thank you, Mr. Gilliam.

13               Mr. Greenfield, can I hear your response?

14               MR. GREENFIELD:  Yes, your Honor.

15               I think this case is interesting and

16   unique from the standpoint of we have four different

17   causes of action.  Every single cause of action is

18   tied to the very same fact, right?

19               Reasonable accommodation.  Failed to

20   accommodate Ms. Stone because -- or failed to

21   accommodate Ms. Carter because Ms. Stone turned her

22   in.

23               Religious discrimination.  They

24   discriminated against her because they -- Ms. Stone

25   turned her in.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 226 of 425   PageID 15629
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1847

1              DFR claim.  Violated because we turned her

2    in.  Not about any other representation throughout

3    the whole process.

4              Same thing with the RLA.

5              All their claims came down to this one

6    issue.

7              And I think we have presented evidence

8    that support every element of all of those claims.

9    And I think we can start at the beginning with

10   official capacity.

11             And we will talk about this at the jury

12   charge, but official capacity is dispositive of

13   every single cause of action against the union.  If

14   Ms. Stone was not acting in her official capacity,

15   then in no way could she bind the union, she was

16   just an employee.

17             So let's start with evidence that has come

18   on about her official capacity.

19             That is in dispute.  That is why we made

20   past summary judgment.  That is why we are here

21   before the Court.  And some of the evidence that has

22   come out, we know that even Charlene Carter's own

23   exhibits show that the messages she sent were to

24   Audrey Stone, not Audrey Stone TWU.  That is not

25   what the evidence shows.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1848

1             That is what they have argued.  They have

2   argued that Ms. Stone changed it.  Their argument is

3   going to be that she changed it afterwards.  But

4   that is not what the exhibits show.  That is not

5   what Ms. Carter's evidence shows that she turned in

6   to the company.

7             Witness after witness testified that

8   employees don't lose their rights when they become

9   president of the Union.  Ms. Stone was acting in her

10  capacity as an employee when she turned her in.  She

11  has always that right.  She never loses her rights

12  as an employee.  Otherwise, her Title VII rights,

13  her rights to be free from harassment and

14  discrimination in the workplace become subservient

15  to Ms. Carter's.

16            Witness after witness testified that the

17  communications went too far.  And that

18  Ms. Stone's -- or Ms. Carter's communications lost

19  their protection.

20            Speech can be protected in one part and

21  still be harassing and violative of the law and lose

22  those protections at the same time.  The underlying

23  basis, she was dissenting against her union, agreed.

24  No dispute.

25            It was about her religious beliefs.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 228 of 425   PageID 15631
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1849

 1   Agreed, no dispute.

 2            So that in and of itself is protected.

 3   But it then can lose -- it can lose that protection

 4   and become harassing.  We could all agree that if

 5   Ms. Carter had sent the very same messages but left

 6   a -- but tied around a note on a chopped off horse

 7   head and left it at Ms. Stone's front door, we have

 8   gone too far.  We can't do that.

 9            Or if it's tied to some sort of criminal

10   act, you can't do that.  At some point, it loses

11   protection and it does cross over to being

12   harassing.

13            Regarding retaliation, we have also put on

14   temporal proximity evidence.  Ms. Carter has been

15   anti-union since at least 2013.  She sent

16   hundreds -- at least 100 -- I counted 98 pages of

17   private messages to Ms. Stone and no action was

18   taken against her.

19            She opposed she was part of the recall

20   petition in 2015.  Ms. Stone didn't file any charges

21   on that.

22            Excuse me, your Honor.

23            THE COURT:  It is okay.

24            MR. GREENFIELD:  Just over and over, these

25   communications have gone on for years.  And

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 229 of 425   PageID 15632
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1850

 1   Ms. Carter agreed to that, that she had been
 2   dissenting again the union.  She was against the
 3   first tentative agreement as well.  Again, no
 4   actions were taken by Ms. Stone.
 5              It all came after these specific videos.
 6   Okay?  And that is where we argue it went too far
 7   and she lost her protection.
 8              Regarding religion, we put on several
 9   pieces of evidence regarding that, including that
10   Ms. Stone herself is pro life.  So they are asking
11   the jury, and you as a matter of law, to ignore
12   that, the fact that Ms. Stone, as a pro life
13   individual, is discriminating against Ms. Carter for
14   her prop life stances.  That obviously should go
15   before the jury and should be weighed.
16              Ms. Carter couldn't identify a single
17   individual who was treated more favorably than her.
18   It is just her.
19              On the failure to accommodate claim,
20   again, it ties back to the message itself.  That it
21   was turned in -- that doing that -- but preventing
22   that, again, ties back to the official capacity
23   argument.  If Ms. Stone made that as an employee,
24   she reserved the right to do that.  She never
25   relinquishes the right to be free from harassment

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 230 of 425   PageID 15633
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1851

1    and discrimination in the workplace.

2              And so the only accommodation that she

3    sought was that Ms. Stone not turn her in.  That is

4    it.

5              And then we have several, several issues

6    of causation.  Numerous parts of each claim that

7    Ms. Carter brings requires that they show beyond a

8    preponderance of the evidence that we caused the

9    termination.

10             That certainly is in dispute.  Witness

11   after witness from Southwest testified that the

12   union had no interference into their investigation

13   process, had no weighing on the decision to

14   terminate.  That was Southwest's decision.

15             And I believe that is actually very

16   heavily tied to Southwest's legitimate

17   non-discriminatory reason for the termination, which

18   you considered earlier in denying their motion on

19   that.

20             I have nothing else, your Honor.

21             THE COURT:  All right.  Thank you,

22   Mr. Greenfield.

23             So at this point, I will say that I have

24   both the directed verdict motions against Southwest

25   and the union fully argued.  So I'm going to deny

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 231 of 425   PageID 15634
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1852

1  both of those motions at this point.  Like I said, I
2  never explain our reasons for what I'm doing, why I
3  am doing it.  I just state my ruling on the record.
4           So based on that, we need to bring back in
5  the jury so we can hear if you have witnesses for a
6  rebuttal case.  Yeah, that is fine.  And then we
7  would close, close, close.
8           And then at this point, it is a close call
9  on whether there is any chance we could do a formal
10  charge conference, print the behemoth charge, and
11  read it by 5:00.
12           I think it will probably take me an hour
13  and a half to read it to them.  I figure it will
14  take us an hour and a half to do a formal charge
15  conference and print it.  Should we go for it?
16  Should we not?  What do y'all think?
17           MR. PRYOR:  What are you thinking of in
18  terms of start time tomorrow for closing?
19           THE COURT:  So assuming we do a formal
20  charge conference today, send them home, then I
21  would think tomorrow at 9:00 we start, whether we
22  are starting with a reading of the charge tomorrow
23  or if we by some miracle get it read to them at the
24  end of the day today.  So I think 9:00 tomorrow is
25  our start time regardless.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 232 of 425   PageID 15635
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1853

1              The one question I have for y'all is, do
2    we try to keep them here and do a formal charge
3    conference and print it so I can read them the
4    charge and get that done by 5?  Or do we send them
5    home and say we are just doing the formal charge
6    conference today, getting it printed, and then we
7    will read it first thing tomorrow?  Any thoughts?
8              MR. PRYOR:  I'm going to turn to over to
9    my lawyer.
10             MR. McKEEBY:  I think I would just send
11   them home.  I mean, I think since it is not clear
12   that we are even going to get to it -- well, I mean,
13   I think it is fair to send them home rather than
14   keep them here with the hope that we would be able
15   to get to it.  But obviously, that is your call.
16             THE COURT:  That is my leaning.  I'm
17   always optimistic around timing and it never works
18   out as fast as I think it will, right?  Both my
19   reading of it and the formal charge conference.
20             MR. GREENFIELD:  I agree, your Honor.
21             THE COURT:  Any objection to we will bring
22   them back in; more witnesses, no; close, close,
23   close, send them home; and then we will go from
24   there?
25             MS. GREEN:  I think that is appropriate,

 1  your Honor.

 2          THE COURT:  Okay.  Let's do it.

 3          (The jurors entered the courtroom.)

 4          THE COURT:  Okay.  You can be seated.

 5          Okay.  I mentioned at the outset of trial,

 6  sometimes plaintiffs call rebuttal cases, so I need

 7  to ask you, Mr. Pryor, does the plaintiff have any

 8  more witnesses they want to call for a rebuttal

 9  case?

10          MR. PRYOR:  The plaintiff has no rebuttal

11  case, your Honor.

12          THE COURT:  Okay.  So does that mean the

13  plaintiff closes?

14          MR. PRYOR:  The plaintiff's case closes

15  and is closed.

16          THE COURT:  Okay.  So that means

17  Southwest, now.  Is Southwest closing?

18          MR. McKEEBY:  Southwest is closed.

19          THE COURT:  Okay.  How about the Union?

20          MR. GREENFIELD:  The Union is closed, your

21  Honor.

22          THE COURT:  Okay.  We heard rest, close,

23  close, close.  What that means is, y'all get an

24  early day to go home while we have to sit here and

25  hash through a really long jury charge that I get to

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 234 of 425   PageID 15637
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1855

 1   read to you first thing tomorrow morning.

 2           So what is left of the trial is, I read

 3   you the jury charge, then we have closing arguments

 4   from Carter, Southwest and the Union, and then the

 5   case is yours.  We hand the baton to you.

 6           We have been working through the jury

 7   charge since this case began and before then, but we

 8   still have to work through all the legal argument,

 9   now that the evidence is in, right?  We didn't know

10   what the evidence would be until they all said,

11   closed.

12           So we need to stick around today for a few

13   more hours to finalize the jury charge, so that

14   tomorrow at 9:00, I can read it to you.  It may take

15   an hour and a half.  It is pretty long.  I wish my

16   reading voice were like James Earl Jones', but it is

17   not.

18           So come caffeinated tomorrow at 9:00.  You

19   will hear me boringly read a charge.  And then you

20   will hear some excited closing arguments from these

21   talented lawyers.  And then the case will be yours,

22   at long last.

23           So thank you for your careful attention

24   these past two weeks.  I'm giving you the afternoon

25   off, but that doesn't mean you have to tell your

1   family or your employers, right?  Go do what you

2   want to do.

3            So thank you for your careful attention.

4   Same instructions, though.  Because until I say, Go

5   deliberate, then you can't talk to each other about

6   the case.  You can talk to each, just not about the

7   case.  You can't talk to anyone else.  And don't do

8   any research on the case.  All rise for the jury.

9            (The jurors exited the courtroom.)

10            THE COURT:  Okay.  Y'all can be seated.

11            I'm probably going to let us take a break

12   before we launch into the formal charge conference.

13   But let me ask, does everyone want to renew their

14   directed verdict motions?  I know we didn't hear

15   really any evidence since we just talked about the

16   most recent ones.  But does everyone want to renew

17   their directed verdict motions for posterity?

18            MR. McKEEBY:  Yes, your Honor.

19            MR. GREENFIELD:  Yes.

20            MR. GILLIAM:  Yes.

21            THE COURT:  Yes, yes, yes.  Okay.  I have

22   heard your renewed motions.  I'm rejecting all of

23   them, without saying why still again.  So that

24   ruling is on the record, so you preserved your

25   error.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 236 of 425   PageID 15639
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1857

1          So let's take a 10-minute break.  Y'all

2   can get reset, and then we will come back in and

3   talk about the formal charge.  I think we have got

4   electronic copies in your hands.  And then we will

5   see what we can get through on the charge this

6   afternoon.

7          Court is in a 10-minute recess.  We will

8   see y'all at 2:20.

9          THE COURT SECURITY OFFICER:  All rise.

10          (Recess.)

11          THE COURT SECURITY OFFICER:  All rise.

12          THE COURT:  Thank you.

13          You can be seated.

14          Okay.  We are back on the record, maybe

15   let's refresh our appearances because we are outside

16   the jury's presence at a formal charge conference.

17          So let's go for it, Mr. Gilliam.

18          MR. GILLIAM:  For plaintiff Charlene

19   Carter, Matthew Gilliam, Matt Hill, and Bobby Pryor.

20          MR. McKEEBY:  For Southwest Airlines,

21   Paulo McKeeby and Brian Morris.

22          MR. GREENFIELD:  On behalf of TWU Local

23   556, Adam Greenfield and Edward Cloutman, III.

24          THE COURT:  Okay.  Thank y'all.

25          All right.  So we are here at the formal

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 237 of 425   PageID 15640
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1858

 1  charge conference, sent the jury home for the day

 2  and then y'all have my latest draft of the jury

 3  charge and the jury questions.

 4           So what I want to do is, basically, we

 5  will go through this a section at a time this time.

 6  And I'm just going to ask if anyone has any problems

 7  with any section.  And then we will address those

 8  before I move on to the next section.  As soon as my

 9  computer decides to pull up the behemoth charge, I

10  will be ready to go.

11           Okay.  So I have got it up.  So we've got

12  jury instructions, a standard opening on pages 1 and

13  2.

14           Does anyone have any issues with pages 1

15  and 2?

16           MR. GREENFIELD:  I'm sorry.  You have the

17  jury instructions first?

18           THE COURT:  Uh-huh.

19           MR. GREENFIELD:  I'm sorry, I don't know

20  if I --

21           THE COURT:  So pages 1 and 2, anyone --

22  any issues with the standard instructions?

23           MR. GREENFIELD:  I'm trying to pull it up.

24  My email is not --

25           THE COURT:  How about signal to me when

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 238 of 425   PageID 15641
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1859

1   you are ready?

2           MR. GREENFIELD:  The wheels are spinning.

3   I would be happy if you want to turn it over to see

4   what everyone else has to say to keep moving

5   forward, your Honor.  I'm just getting a spinning

6   wheel.  Thank you, though.

7           THE COURT:  I was earlier, so I feel your

8   pain.

9           MR. GREENFIELD:  I think I have got

10  them -- within moments, your Honor.  Maybe.

11          I'm ready, your Honor.

12          THE COURT:  All righty.

13          Okay.  So pages 1 and 2 are standard

14  preliminary instructions.

15          Any issues with regard to those?

16          MR. GILLIAM:  None from plaintiff.

17          THE COURT:  All right.  Any Southwest

18  issues on 1 and 2?

19          MR. MORRIS:  No, your Honor.

20          MR. GREENFIELD:  No, your Honor.

21          THE COURT:  All right.

22          Preponderance of the evidence on page 3,

23  any issues?

24          MR. GILLIAM:  None from plaintiff.

25          MR. MORRIS:  None from Southwest.

```
 1                MR. GREENFIELD:  None, your Honor.

 2                THE COURT:  Okay.  So we are on to

 3    evidence, page 3; direct and circumstantial.

 4                MR. GILLIAM:  No issues from plaintiff.

 5                MR. MORRIS:  None from Southwest.

 6                MR. GREENFIELD:  None, your Honor, from

 7    the Union.

 8                THE COURT:  Now we are on to stipulations

 9    and the 15 from the pretrial order that I read at

10    the start of trial and incorporated here.

11                Any issues with the stipulation section?

12                MR. GILLIAM:  None from plaintiff.

13                MR. MORRIS:  None from Southwest.

14                MR. GREENFIELD:  None from the Union, your

15    Honor.

16                THE COURT:  All right.

17                So we are to the witnesses section on

18    pages 5 and 6.

19                MR. GILLIAM:  No issues from plaintiff.

20                MR. MORRIS:  None from Southwest.

21                MR. GREENFIELD:  None from the Union, your

22    Honor.

23                THE COURT:  All right.

24                So then similar acts on 6 and 7?

25                MR. GILLIAM:  No issues from plaintiff.
```

1          MR. MORRIS:  Your Honor, Southwest just

2   requests that the limiting instruction that is

3   further down the charge be included here as well.

4          THE COURT:  I know the limiting

5   instruction is in here.  I'm fine putting it in one

6   place.  If you want me to put it in here, I can move

7   it.  Putting in it twice, I think, gives it more

8   credence than anything else gets in the charge.

9          MR. MORRIS:  I think it is fine where it

10  is.

11         THE COURT:  Okay.  Any other issues with

12  similar acts?

13         MR. GILLIAM:  No other issues from

14  plaintiff.

15         MR. GREENFIELD:  None from me, your Honor.

16         THE COURT:  Okay.  Impeachment by

17  inconsistent statements?

18         MR. GREENFIELD:  None from the Union, your

19  Honor.

20         MR. GILLIAM:  No issues from the

21  plaintiff.

22         MR. MORRIS:  None for Southwest.

23         THE COURT:  Okay.  Depo testimony on

24  pages 7 and 8?

25         MR. GREENFIELD:  No issues from the Union,

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 241 of 425  PageID 15644
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1862

1   your Honor.

2            MR. GILLIAM:  No issues from the

3   plaintiff.

4            THE COURT:  I will flag for y'all, I

5   changed, like, two or three words in here.  The

6   pattern says, "Before trial a depo was taken," and

7   Nevarez was not taken before trial.  So I just said

8   "some time before the testimony was presented," just

9   to make sure we are technically correct.

10           Are there any issues with that?  That is

11  the next-to-the-bottom line on page 7.

12           I just want to give full disclosure on

13  what I was tweaking this morning.

14           MR. MORRIS:  No issues from Southwest.

15           MR. GREENFIELD:  No, your Honor.

16           And I would just make a request from the

17  Court, if you could kindly point out if there has

18  been any adjustments so I can at least compare if we

19  get to a section.

20           THE COURT:  I have no idea.  Because I'm

21  one of three people who was changing it in the last

22  24 hours.

23           MR. GREENFIELD:  Understood.

24           THE COURT:  So I will tell you if I have

25  personal knowledge of things that I changed.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 242 of 425   PageID 15645
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1863

 1                    MR. GREENFIELD:  Thank you.

 2                    THE COURT:  Yes, if you want to make a red

 3      line and send it now, that is fine, to the version

 4      y'all had last.

 5                    Okay.  So now we are at limiting

 6      instructions.  Any issue with limiting instructions?

 7                    MR. GILLIAM:  No issues from plaintiff.

 8                    MR. MORRIS:  None from Southwest.

 9                    MR. GREENFIELD:  None for me, your Honor.

10                    THE COURT:  All right.

11                    Inference from filing suit.  There is

12      none.  Any issue?

13                    MR. GILLIAM:  No issues from plaintiff.

14                    MR. MORRIS:  None from Southwest.

15                    MR. GREENFIELD:  None from the Union, your

16      Honor.

17                    THE COURT:  Okay.  Now, we are into

18      parties claims.  Let's talk about Section 8 first.

19                    So fair representation against Local 556.

20                    Any issues on this one on pages 9, 10, and

21      touching on 11?

22                    MR. GILLIAM:  Yes, your Honor.  We still

23      maintain our objection about the inclusion of

24      language about how the DFR applies during grievance

25      handling.  Grievance handling is not a relevant part

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 243 of 425   PageID 15646
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1864

1  of Ms. Carter's claims in this case.  And we feel

2  that it is confusing to the jury, the claims.

3           So we object to the --

4           MR. GREENFIELD:  If I may respond, your

5  Honor.

6           THE COURT:  Yes.  So let's -- can you zoom

7  in on that sentence?  Is it the last sentence of the

8  first full paragraph that we are talking about?

9           MR. GILLIAM:  Yes.  That is one occurrence

10  of it.  It occurs in two places.  That is one place.

11  The other is on page 10, and it is the last sentence

12  of the second paragraph.

13           THE COURT:  Okay.

14           Response?

15           MR. GREENFIELD:  Yes, your Honor.

16           I understand that the attorneys are saying

17  that it is not part of their case, but when

18  Ms. Carter was on the stand, she waffled a couple

19  times back and forth, but did say at one point that

20  she did say the representation was a breach.

21           THE COURT:  In the Step 2?

22           MR. GREENFIELD:  Yes, ma'am -- yes, sir.

23           THE COURT:  Yes.  I recalled that, too.

24  So I know y'all have been consistent, but I thought

25  there --

```
 1              MR. GILLIAM:  We argued it, so I --

 2              THE COURT:  -- agreed.

 3              But -- so I wasn't also asked to

 4  judiciously estop her and strike her.

 5              So because of that, I think I have got to

 6  have the language in for clarity of picture from

 7  what the jury heard, if that makes sense.

 8              That is at least my view sitting here

 9  after hearing that testimony.  So my recollection

10  was consistent with Mr. Greenfield's.

11              MR. GILLIAM:  Okay.  And.

12              A question for your Honor, for any

13  instance where, I guess, we do have an objection to

14  some of these instructions on claims, it is my

15  understanding that we need to file, to get something

16  on the record, maybe, you know, a version that, you

17  know, we would not -- that we would not object to in

18  order to preserve our objection.

19              THE COURT:  So yes, with an asterisk.  I

20  guess what I'm concerned about is not about language

21  that you would like cut out.  You can just tell me.

22              And that is why I asked you to point out

23  the specific sentences you are talking about.  So

24  right now you have preserved error that those two

25  sentences, and the spots that you identified are in
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 245 of 425   PageID 15648
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1866

 1  and shouldn't be, in your view.

 2          My greater concern was -- and this

 3  probably is evaporating, given the timing that we

 4  are having this charge conference at.  If the jury

 5  were back out there, and you said, Hey, I have got a

 6  20-page instruction on my preferred way to handle my

 7  claims, and now we are worried about the jury's

 8  timing being back there, I would ask you to file

 9  that, reference it in this proceeding.  And that way

10  we don't have to have you read it all.

11          So here I have no problem, if you read

12  it -- now that the jury is not waiting on us, I

13  don't have a problem with you reading what you think

14  is substantially correct.  But if it is an omission

15  that we are talking about like right here, you can

16  just say, Omit X, Starr, because it shouldn't be in

17  there.

18          And if there is something larger that you

19  want in that I'm not putting in, we need to get it

20  in, in some way.  Either you read it into the record

21  here or you file it and reference it by

22  incorporation.

23          Does that make sense?

24          MR. GILLIAM:  I think so.

25          So you mentioned a notation saying "omit."

1              Do we file something with some kind of

2    notation like that?

3              THE COURT:  No.  So as long as it is in

4    the record, that is what matters, right?  And so the

5    normal way of handling this is all verbally on the

6    record.

7              If we have somebody say, I would like a

8    different jury question that is 30 pages long, it is

9    going to take 30 minutes to read that into the

10   record.  I was concerned about them waiting back

11   there for 30 minutes.  When you could just file it,

12   refer to it in this proceeding that you are filing,

13   and then it is preserved.

14             So my preference would be, now that we are

15   not waiting on them, whatever you have got that you

16   want in that I'm keeping out, read it into the

17   record.

18             But if it really is like 30 or 40 minutes

19   worth, or more than that, then we can think about

20   whether or not we should file it.

21             So it is content you are wanting in that

22   is lengthy that would bore us all to tears that I'm

23   letting you file in reference to it in this hearing.

24   But you should still reference it in this hearing,

25   right?  I don't want you going and filing something

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 247 of 425   PageID 15650
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1868

 1  at midnight saying, This was my preferred charge.

 2  That is not a proper way of handling it.

 3            MR. GILLIAM:  Okay.

 4            We just had concerns about preserving the

 5  issue.  And I think we were under the impression

 6  that we would have to file -- that we would have to

 7  put something in writing.

 8            THE COURT:  You don't have to put

 9  something in writing to preserve it.  You can put it

10  in at this hearing to preserve it.

11            Now, you need something at this hearing to

12  preserve it, even if this hearing references

13  something you are filing on the docket right now or

14  an hour from now, that incorporates it by reference.

15            Does that make sense?  But you have got to

16  bring it up at this hearing.

17            If you bring it up on the docket tonight

18  and there is no reference in this hearing to it,

19  then it is not preserved at the formal charge

20  conference.

21            All right.  So if you have a question on a

22  particular thing you are wondering about, let me

23  know, because I don't just have to give you

24  generalized, we can talk through it specifically.

25            But on the ones you just told me, the two

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 248 of 425   PageID 15651
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 6 July 12, 2022                Page 1869

1  sentences that shouldn't be there, in your view, I'm

2  overruling your objection.  Your objection is

3  perfectly clear on the record on what documents they

4  are.

5          Now, I will say, one thing I should do --

6  because I only emailed this to y'all and did not

7  send it, I'm going to read these two sentences into

8  the record because I think a reference to an email

9  is not enough.  It has got to be a reference to a

10 file document or something read into the record,

11 right?  So I caught myself there.

12         So I think your two sentences that you are

13 objecting to, Mr. Gilliam, are, this is especially

14 true when a union is handling a grievance based upon

15 a termination, the industrial equivalent of capital

16 punishment, is that one of the sentences you are

17 objecting to?

18         MR. GILLIAM:  Yes, your Honor.

19         THE COURT:  Okay.  I will overrule that

20 one.

21         And then the other sentence you are

22 objecting to is, plaintiff Carter can also prove a

23 breach of duty by the Union by showing that the

24 Union was arbitrarily ignoring a meritorious

25 grievance or processing it in a perfunctory fashion.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 249 of 425   PageID 15652
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1870

1                  That's the other one you are objecting to?

2                  MR. GILLIAM:  That's the other one, your

3  Honor.

4                  THE COURT:  Okay.  I will overrule that

5  objection as well, based on the evidence that I

6  believe we heard.

7                  Okay.  So other questions on this section

8  A, fair representation against the Union?

9                  MR. GREENFIELD:  Yes, your Honor.

10                 If we go down to the paragraph that

11 starts, "A union is liable for all acts."

12                 THE COURT:  I'm there.

13                 MR. GREENFIELD:  I think the charge sets

14 out kind of what a union is liable for, and how a

15 union violates the DFR.

16                 We would just reiterate the language we

17 asked for in our formal -- or in our informal charge

18 conference.  At the end of footnote 4, we believe it

19 would be important to include, "However, a union

20 official does not lose their federally-protected

21 rights as an employee by becoming an official with

22 the Union.  As such, Defendant Southwest Airlines

23 owes the same duty to the Union and as officials as

24 any other Southwest employees."

25                 THE COURT:  Understood.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 250 of 425   PageID 15653
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1871

```
 1              Thank you for reading it in.  I will
 2   reject that.  But that was perfect in reading it in.
 3   So you have preserved your argument.
 4              MR. GREENFIELD:  The next issue I have,
 5   your Honor.
 6              THE COURT:  Yes, sir.
 7              MR. GREENFIELD:  If we go down to, "The
 8   law presumes."
 9              THE COURT:  I'm there.
10              MR. GREENFIELD:  "Breaches its duty when
11   it causes the discharge of an employee."
12              THE COURT:  Yes, sir.
13              MR. GREENFIELD:  I believe that is a
14   misstatement of the law.  The law, if applied to
15   conduct of individuals rather than actions of the
16   executive board, creating such a presumption
17   elevates the federal rights of some employees above
18   those of others, and I think that is improper.
19              THE COURT:  All right.  Would you omit or
20   reform that statement?
21              MR. GREENFIELD:  I would take that out.
22              THE COURT:  Okay.
23              MR. GREENFIELD:  Omit it.
24              THE COURT:  Understood.
25              I will overrule that.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 251 of 425   PageID 15654
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1872

1              MR. GILLIAM:  And, your Honor, I also have

2    an objection with that statement as well.

3              THE COURT:  Okay.  Go for it.

4              MR. GILLIAM:  It currently says, "The law

5    presumes a union breaches its duty when it causes

6    the discharge of an employee."  The second sentence

7    says, "If a union caused the discharge of an

8    employee."

9              We believe that it should say the law

10   presumes union breaches its duty when it causes or

11   attempts to cause the discharge of an employee.

12             THE COURT:  Causes or attempts to cause.

13   Do you have a citation for authority for attempts to

14   cause?

15             MR. GILLIAM:  I believe the In Re Graphics

16   case, or Acklin, one of the two states it.  If not,

17   maybe the Caravan Knight case.  I know we have cited

18   it before.  I don't have the citation off the top of

19   my head.  We've often cited those together.

20             THE COURT:  Understood.

21             So what I will do is, I will overrule it

22   for now.  I will look into it, because I reserve the

23   right before charging the jury to change my mind,

24   but I will look at your cases.  But I'm going to

25   overrule it at this point.

```
 1              MR. GILLIAM:  Well, one of the cases does

 2   say "cause," but I believe one of the others says

 3   "attempts to cause."

 4              THE COURT:  Okay.  I'm overruling it at

 5   this point and I reserve the right change my mind.

 6              Other issues with this section?

 7              MR. GREENFIELD:  The Union has no

 8   additional objections to section A, your Honor.

 9              THE COURT:  All right.

10              MR. GILLIAM:  No others to section A from

11   plaintiff.

12              THE COURT:  Okay.  B is RLA retaliation

13   claim against Southwest and 556.

14              So who wants to raise an objection to this

15   section?

16              MR. MORRIS:  Your Honor, Southwest would

17   request that the second sentence, The act forbids

18   any limitation, et cetera, et cetera.  That

19   statement is from the section on the purpose of the

20   RLA.  It doesn't impose any free-standing legal

21   obligations on the parties.  And we think it is

22   inappropriate to instruct the jury as to the purpose

23   of a statute.  That is for the Court's use perhaps,

24   but we think it is improper for the jury.

25              THE COURT:  Any thoughts from any other
```

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 253 of 425  PageID 15656
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1874

1   side?  Any objection to me taking it out?

2              MR. GILLIAM:  We think it is proper to

3   include the language of the statute there.

4              MR. MORRIS:  Your Honor, if I could one

5   thing.  It says, "The act forbids."  The section

6   actually says, "the act is intended to forbid."

7   This is saying it actually forbids something.  I

8   just think that is not accurate, as well as just

9   inappropriate.

10             THE COURT:  Understood.

11             So what I will do on this is, I'm going to

12  overrule this one for now.  I'm going to take a look

13  at it as well.

14             And what I will do is, if I make any

15  changes later on today, I'm going to send y'all a

16  red line from what I tell you I'm doing at the

17  formal charge conference, if that makes sense.

18             Okay.  Other questions?

19             MR. GILLIAM:  Yes, your Honor.

20             For plaintiffs, on -- I guess starting

21  with page 13.  Let's see, the first full paragraph

22  that starts with, To prove.

23             THE COURT:  I'm there.

24             MR. GILLIAM:  And the third element says

25  that plaintiff Carter's protective activity played a

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 254 of 425   PageID 15657
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1875

1  substantial or motivating factor.

2          I think played should be --

3          MR. GREENFIELD:  And I'm sorry, Matthew.

4  I'm not there.  I'm trying to track.

5          MR. GILLIAM:  Oh, sorry.

6          MR. GREENFIELD:  On page 13, you said?

7          MR. GILLIAM:  Page 13, the first full

8  paragraph that starts with --

9          MR. GREENFIELD:  To prove.

10          MR. GILLIAM:  -- to prove.

11          MR. GREENFIELD:  Thank you.

12          MR. GILLIAM:  And then the third element.

13          MR. GREENFIELD:  My apologies.  Thank you.

14          MR. GILLIAM:  No problem.

15          It says that plaintiff Carter -- plaintiff

16  Carter's protected activity played a substantial and

17  motivating factor.

18          We would just strike "played" and include

19  "was."  The concern is that "played" may confuse

20  what the motivating factor analysis actually is.

21          THE COURT:  Okay.  "Played" to "was."

22          Any issues with changing played to was?

23          MR. MORRIS:  Your Honor, I think that

24  is -- that's fine.

25          MR. GREENFIELD:  Yes, your Honor.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1876

1              THE COURT:  It saves several letters,
2  which, in the grand scheme of things, we could make
3  that change throughout.
4              MR. GILLIAM:  I hate to seem like I'm
5  quibbling, but I did have a concern about it.
6              THE COURT:  Understood.
7              No, I -- okay.  So I have made that change
8  from "played" to "was."
9              I will note, now that I'm making changes,
10  my pagination is changing a little bit, so it may
11  take me a little bit to catch up to where y'all are
12  at.
13              Okay.  So I made that change from changing
14  "played" to "was."
15              Other issues with this section?
16              MR. GILLIAM:  I still have a couple.
17              The other is we think there should be a
18  paragraph included to define what "substantial and
19  motivating factor" means.
20              We would -- we would amend it to read,
21  "substantial and motivating factor means any factor
22  that motivated or in any way contributed to
23  Southwest's decision to fire Carter or Local 556's
24  decision to report Carter."
25              And further include language that says

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 256 of 425   PageID 15659
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1877

1  "even if other factors also motivated the decision."

2         THE COURT:  Okay.  So thoughts on that

3  language, on defining "substantial and motivating

4  factor"?

5         MR. MORRIS:  We object to that inclusion.

6  We think it is clear as it is; long enough as it is.

7         THE COURT:  Understood.

8         Any Union position?

9         MR. GREENFIELD:  Same here.

10        THE COURT:  Okay.  So I'm going to reject

11 that inclusion, but you have preserved it.

12        MR. MORRIS:  Your Honor, I have another

13 thought.  I don't know if anybody else wants to jump

14 in.

15        THE COURT:  You may as well, Mr. Morris.

16        MR. MORRIS:  In the first sentence after

17 the Court quotes section 152.4.  It says, "Plaintiff

18 Carter claims Southwest retaliated against her by

19 firing her for engaging in union-opposition-and-

20 organizational activity."

21        I think it is best not to characterize the

22 claim there, at the risk of being either inaccurate

23 or under or over inclusive, and just say "Carter

24 claims Southwest retaliated against her by firing

25 her for engaging in activity protected by the

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 257 of 425   PageID 15660
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1878

 1   RLA" -- or protected by section -- sorry -- I'm just

 2   trying to word it properly.

 3            So if we just took out "in opposition,

 4   union-opposition-and-organizational activity."  I

 5   think that would address it.

 6            THE COURT:  So you suggest taking out the

 7   words connected by the hyphens,

 8   union-opposition-and-organizational?

 9            MR. MORRIS:  Correct.

10            THE COURT:  I don't have an issue with

11   taking out "union opposition" and organizational

12   modifier to activity.

13            MR. GILLIAM:  We do, your Honor.  I think

14   that it makes it clear what -- what exact activity

15   we are talking about for the purpose of the RLA

16   claims so that, you know, the jurors don't have to

17   be lawyers and understand what it is precisely that

18   152, Third and Fourth protect and what is at issue

19   in this case.

20            THE COURT:  Understood.

21            Any Union position on that phrase coming

22   out or staying in?

23            MR. GREENFIELD:  I'm not sure, your Honor.

24   I'm trying to keep up.  I'm on a different section.

25            THE COURT:  I hear you.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 258 of 425   PageID 15661
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1879

 1              MR. GREENFIELD:  Specifically, what are we

 2  talking about?  I apologize.

 3              THE COURT:  So under the block quote that

 4  I have now on my page 12 -- which is different than

 5  y'all's page 12 --

 6              MR. GREENFIELD:  Okay.  All right.

 7              THE COURT:  -- that quotes section 152.4,

 8  there is a first full sentence that says, "Plaintiff

 9  Carter claims that Defendant Southwest."

10              Tell me when you are at that sentence.

11              MR. GREENFIELD:  Yes, I'm there.

12              THE COURT:  Okay.  There is a long

13  hyphenated phrase, union-opposition-and-

14  organizational, that Southwest would like out that

15  Carter wants to keep in.

16              MR. GREENFIELD:  And I'm sorry, I didn't

17  hear what Southwest -- did Southwest have a

18  proposition that they wanted?

19              THE COURT:  They prefer to either cut it

20  or cut it and change the wording of, "by section

21  152, Third and Fourth," to, "by the RLA."

22              MR. GREENFIELD:  I'm fine either way, your

23  Honor.

24              THE COURT:  Okay.  I'm going to keep it in

25  for now.  I know it adds length, but it is clarity,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 259 of 425   PageID 15662
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1880

1   so I think it serves some purpose.  So I will

2   overrule the objection and keep it in.

3              What is the next objection to this

4   section?

5              MR. GILLIAM:  For plaintiff, your Honor,

6   paragraph 15 -- I'm sorry -- page 15.  I think it is

7   still page 15.  I'm using the old version for

8   guidance on pages.

9              THE COURT:  Okay.  But now you are in a

10  new section, though, right?

11             MR. GILLIAM:  Am I?

12             MR. GREENFIELD:  Fifteen would take us

13  into C --

14             THE COURT:  It would take us somewhere

15  into the C territory.

16             MR. GILLIAM:  Okay.  I'm sorry.  We are in

17  B.

18             MR. GREENFIELD:  So, Matthew, what

19  happened is and why I lost you earlier is, I believe

20  the Court cut the language about it being a -- the

21  matter of law question, and so that kind of skewed

22  our pages from your pages.

23             MR. GILLIAM:  Oh.

24             THE COURT:  Yes, it did.

25             MR. GILLIAM:  Okay.  Sorry about that.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1881

1              With that mind, so it is the last
2     paragraph of paragraph B -- paragraph B, right
3     before C.
4              THE COURT:  Okay.  So the last full
5     paragraph of B, if you decide that Defendant
6     Southwest, is that correct?
7              MR. GILLIAM:  Yes.  And we believe that
8     whole paragraph should be stricken for the -- for
9     all of the reasons we have previously argued.
10             There is no -- we have argued there is no
11    legitimate, non-discriminatory reason.  There is --
12    you know, Southwest and Local 556 reported
13    Ms. Carter's messages and posts under the social
14    media policies, and that either was a discriminatory
15    reason or it was not a discriminatory reason.  And
16    the affirmative defense is meant to provide for a
17    non-discriminatory reason.
18             So it is -- the social media policies, as
19    a defense, shouldn't get two bites at the apple.
20    And it nullifies the RLA's protections to include
21    this paragraph in here.  It nullifies the whole
22    protection for the activities that Ms. Carter
23    engaged it.
24             THE COURT:  Understood.
25             So I will project your request for the

 1  same reasons I overruled the directed verdict motion

 2  which is -- shhhhh.

 3            I'm joking.  But I never say why, right?

 4  So I'm not going to say why now.

 5            I don't want shape y'all's closing

 6  arguments, right?  I don't want to tell you what I'm

 7  thinking of that is important to me, which may be

 8  totally different than what is important to them.

 9            So, you know, I have my own reasons, but I

10  have found that in the past, they usually don't

11  matter if I tell you, because they pull you off of

12  the jury's trail and on to my trail, which is just

13  irrelevant.

14            So I understand your request to remove

15  that paragraph, but I will overrule it.

16            Other objections for section B?

17            MR. GREENFIELD:  Yes, your Honor, from the

18  Union.  If we look at section 13 -- or page 13, the

19  second paragraph from the bottom that says, "All

20  union-oppositional-and-organizational activity."

21            THE COURT:  I'm there.

22            MR. GREENFIELD:  Okay.  We would seek, as

23  we requested in the informal conference, different

24  case law language.  We have provided the case of

25  Held v. American Airlines, Lesser Construction, LLC

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 262 of 425   PageID 15665
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1883

 1   and Daimler Chrysler Corp.

 2              We believe a more proper instruction would

 3   be under section 152, Third and Fourth, but can lose

 4   protection, if the communication is vulgar,

 5   offensive, abusive, or harassing under Held.

 6              Special circumstances can also cause the

 7   speech to lose protection under Lesser Construction.

 8   Such circumstances include situations in which the

 9   otherwise-protected activity is vulgar or obscene

10   and may exacerbate employee tensions.  Also from

11   Lesser Construction.

12              And then continuing on, if you find

13   plaintiff Carter's messages to Ms. Stone to be

14   indefensible or abusive, the protection is forfeited

15   under Daimler Chrysler in the NLRB case.

16              THE COURT:  Understood.

17              So I will say I think this is sort of the

18   core issue with the charge, right?  Getting down to

19   what is -- what is the categories of protected

20   conduct under the RLA.

21              And I'm not going to speak too much on

22   this because then I'm getting away from my general

23   principle of not trying to throw y'all off of the

24   jury's trail and tell you what I think is important.

25              But based on this, I can't find a Supreme

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 263 of 425   PageID 15666
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1884

1   Court case or a Fifth Circuit case using that

2   language in the Railway Labor Act.  Absolutely any

3   National Labor Relations Act, what I ingrafted in.

4   I know under Konop, they had a question in a

5   footnote where they said they might, looking at a

6   Fifth Circuit National Labor Relations Act case.

7           I don't see a basis to ingraft it from a

8   National Labor Relations Act over to a Railway Labor

9   Act, unless it is necessary.

10          And from what I can tell, the reason

11  Congress used different language is, the NLRA was

12  really talking about context where you might have a

13  union, and the RLA was talking about context where

14  you will have a union.

15          So I think it is basically making it as if

16  it is the Government, right?  The Government saying

17  you will have a union in these transportation

18  contexts.  And as a result of that, it is almost

19  like you are speaking to your Government.

20          So what protected speech do you have?

21  Well, you can't say knowingly false things about

22  Government officials and you can't threaten your

23  Government officials.

24          But that separate category we find in the

25  National Labor Relations Act where you might have a

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 264 of 425   PageID 15667
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1885

 1  union, that level of additional protection is not

 2  there against where you will have a union just like

 3  it is not there where you will have your Government.

 4          So that is my view from the best I can

 5  extrapolate as to why the two laws are worded

 6  differently and why I don't have a Supreme Court

 7  case or a Fifth Circuit case telling me I need this

 8  third category.

 9          So that is a long way of saying I will

10  reject that request, but I appreciate you reading

11  the language into the record for us.

12          MR. GREENFIELD:  Yes, your Honor.

13          Thank you.

14          MR. MORRIS:  Your Honor, we have the

15  same -- although I was going to identify certain

16  other categories of speech that lose protection.

17          THE COURT:  You should.  So let's have you

18  read your preferred language into the record,

19  Mr. Morris.

20          MR. MORRIS:  Sure.  Just give me one

21  second.  I'm just trying to get it right here.

22          THE COURT:  Yes.

23          MR. MORRIS:  So I guess it would be,

24  "unless it is flagrant, violent, extreme, egregious,

25  inappropriate, offensive, obscene, harassing,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 265 of 425   PageID 15668
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1886

 1  intimidating, or hostile."

 2            THE COURT:  Understood.

 3            So I'll overrule that one for the same

 4  reasons I overruled the Union's request for similar

 5  language in section B.

 6            Okay.  Other issues with section B?

 7            MR. GREENFIELD:  Yes.  I think I have one

 8  more, your Honor.  I'm just trying to be clear on

 9  where it is.

10            Yes.  If we go down to the -- if you --

11  the very last paragraph in section B, If you decide

12  that Defendant Southwest and/or Defendant Local 556.

13            THE COURT:  Yes.

14            MR. GREENFIELD:  If you scroll down a few

15  sentences, it gets to the section that goes section

16  152, Third and/or Fourth.

17            THE COURT:  Yes.

18            MR. GREENFIELD:  So it says, "The

19  Defendants assert that Plaintiff Carter would have

20  been discharged even if she had not engaged in

21  activity protected by section 152, Third and/or

22  Fourth."

23            We would seek additional language that

24  says, at the end of Fourth, "and/or that even if her

25  messages to Ms. Stone contained protected

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 266 of 425  PageID 15669
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1887

1  expression, they also constituted harassment that

2  violated Southwest Airlines' employee conduct

3  policies and implicated Stone's federally-protected

4  rights."

5           THE COURT:  Understood.

6           I will reject that request.

7           Okay.  Other issues with section B?

8           It sounds like we should move to C-1.

9           So C-1 is Carter's discharge claim against

10  Southwest and 556.

11           So on my version, it is starting on

12  page 14, and runs to the top of 16.

13           Who has an issue with section C-1?

14           MR. GREENFIELD:  The Union, your Honor.

15  And correct me if I'm wrong on this -- and I

16  apologize, I had some help on this briefing.

17           But we object to it on the basis that we

18  would propose the adoption of the pattern jury

19  charge for claims of religious discrimination under

20  Title VII as presented by the Fifth Circuit.

21           THE COURT:  Understood.

22           And anyone else have thoughts on sticking

23  to the patterns?

24           So my recollection was the patterns

25  preferred some tailoring to the case, so I think

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  that is what we tried to accomplish in as neutral of

2  a way as possible.

3          MR. GILLIAM:  Yes, your Honor.  Just, I

4  think that in this case, the -- these instructions

5  more closely follow Abercrombie and Fitch, which I

6  think benefits this case.

7          THE COURT:  All right.  And I know I

8  haven't gone all of the way with you on Abercrombie

9  and what your view is, Abercrombie to this case, but

10 there is some part of it I have come along with you

11 on.

12         Okay.  So I have a request in for sticking

13 solely to the patterns.  I'm going to overrule that

14 request.

15         What other issues are there with C-1?

16         MR. GILLIAM:  Let's see.  I'm probably a

17 little messed up on my pages here.

18         There is a paragraph with the elements, I

19 guess for both Southwest and Local 556.  And the

20 elements basically say that either Southwest --

21 Southwest's discharge of Plaintiff Charter was

22 motivated by her sincerely-held religious

23 observance, beliefs, or practices.

24         And then the corresponding one for Local

25 556 says that Local 556's decision to report Carter

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  to Southwest was motivated by Carter's

2  sincerely-held religious observance, beliefs, or

3  practices.

4         Our objection there would be that it

5  should more clearly state that Ms. Carter's

6  sincerely-held religious observance, beliefs or

7  practices were a motivating factor.

8         Concern with the way it is currently

9  phrased is that it would maybe lead the jury to

10 believe that the standard is a lot higher than it

11 is.

12         In fact --

13         THE COURT:  It looks more like but-for

14 language based on how we frame it?

15         MR. GILLIAM:  Yes.  And I think -- I do --

16 I would like to state for the record that Ms. Carter

17 could also prove because of in this instance,

18 through a but-for cause analysis, the motivating

19 factor analysis is probably more appropriate.

20         I think she has either option, she could

21 prove her case through either the motivating factor

22 analysis or a but-for cause analysis.

23         And, again, to more clearly represent that

24 element, or more accurately represent the case law,

25 it should be worded to say that -- just so it is

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 269 of 425  PageID 15672
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1890

1  clear for the record -- that Defendant Southwest's

2  discharge of Plaintiff Carter -- I'm sorry -- that

3  Plaintiff Carter's sincerely-held religious

4  observances, beliefs, or practices was a motivating

5  factor for Defendant Southwest's decision to

6  discharge Carter.

7              And then the corresponding one for the

8  Union should say that Carter's sincerely-held

9  religious observance, beliefs, or practices was a

10 motivating factor to Local 556's decision to report

11 Carter.

12             THE REPORTER:  Could you say that again?

13 It was garbled.

14             MR. GILLIAM:  Sure.

15             That Local 556's decision to -- I'm

16 sorry -- that Carter's sincerely-held religious

17 observances, beliefs, or practices was a motivating

18 factor for Local 556's decision to report Carter.

19             I'm starting to lose my voice.  I

20 apologize.

21             THE COURT:  I think we all are at this

22 point.

23             MR. MORRIS:  Your Honor, I would just note

24 for Southwest, that the "motivated by" language is

25 from the pattern instruction, and we don't see any

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 270 of 425   PageID 15673
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1891

1  reason to deviate from that.  And relatedly, we

2  think the but-for instruction is the appropriate

3  one.

4          THE COURT:  Now, they think they get both

5  motivating factor and but-for, and you think they

6  just get but-for, is that correct?

7          MR. MORRIS:  Uh-huh, yes.

8          MR. GILLIAM:  That's correct.

9          THE COURT:  Okay.  Union position on these

10 two arguments?

11         MR. GREENFIELD:  No, your Honor.  I think

12 the language should read as is.

13         THE COURT:  Okay.  So I'm going to stick

14 with it as is.

15         So I get your argument that I think

16 patterns might be able to be clearer, but until they

17 clear them up, I think I'm going to stick with the

18 safe harbor in the patterns.

19         I get your point to Abercrombie and Wright

20 Line, that maybe you can get both, but the patters

21 still are sticking me to one or the other.  I

22 haven't seen sufficient clarity from Abercrombie

23 where I think I should really send both against the

24 patterns, but, yes, that may be true.

25         MR. GILLIAM:  Bostock v. Clayton County,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 271 of 425   PageID 15674
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1892

 1  Georgia addresses it as well.

 2              THE COURT:  Right.  I get that.  But I'm

 3  not there yet.  So my inclination now is to send

 4  motivating factor, but not both and not but-for, if

 5  that makes sense.

 6              So I will note your request, but I am

 7  rejecting it.

 8              THE COURT:  Okay.  What else do we have to

 9  address in C-1?

10              MR. GILLIAM:  The very last paragraph.  It

11  starts, "Plaintiff Carter does not have to prove

12  that unlawful discrimination was the only reason" --

13              THE COURT:  Uh-huh.

14              MR. GILLIAM:  -- "the Defendant Local 556

15  reported her."

16              And I guess there is a corresponding

17  paragraph for Southwest that this would apply to as

18  well.

19              The concern there is that it sort of

20  equates unlawful discrimination, what you are

21  proving, by showing that Ms. Carter's

22  sincerely-healed religious beliefs was a motivating

23  factor is instead now -- you are sort of

24  substituting what you have to prove for the -- what

25  is a motivating factor.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 272 of 425   PageID 15675
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1893

1          So phrased the way it currently is, the

2    concern is that the -- it heightens the burden under

3    Title VII's motivating factor test.  Because it

4    suggests that unlawful discrimination must be the

5    motivating factor.

6              THE COURT:  Okay.  What is your suggested

7    alternative?

8              MR. GILLIAM:  That -- give me a second.

9    I'm sorry.  I lost my place here.

10             Plaintiff Carter does not have to prove

11   that -- let's see.

12             "Plaintiff Carter does not have to prove

13   that her sincerely-held religious beliefs,

14   observances, and practices was the only reason that

15   Defendant Local 556 reported her or that Defendant

16   Southwest fired her," only that it was a reason.

17             And maybe another paragraph that says

18   "Under Title VII's motivating factor test, Carter

19   need only prove that some aspect of her religious

20   observance, beliefs, or practices was a factor in

21   the decision."

22             THE COURT:  Understood.

23             I will overrule that request.

24             Other issues with C-1?

25             MR. GREENFIELD:  None, your Honor.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 273 of 425   PageID 15676
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1894

 1              MR. MORRIS:  No further from Southwest.

 2              THE COURT:  Anything else from Carter on

 3    C-1?

 4              MR. GILLIAM:  I'm trying see if this is

 5    the one where -- oh, yes.  One other thing in the

 6    paragraph relating to Local 556, element 2 of what

 7    Ms. Carter has to prove, that Local 556 caused or

 8    attempted to cause Carter's discharge by Southwest.

 9              THE COURT:  Uh-huh.

10              MR. GILLIAM:  I think in accordance with

11    the language of the statutory text, it should be

12    that Local 556 caused or attempted to cause

13    Southwest to discriminate against Carter's religious

14    beliefs or practices.

15              MR. GREENFIELD:  And I'm sorry, which

16    section are we at?  Have we moved to 2?  I

17    apologize.

18              MR. GILLIAM:  Yes, element 2 of

19    Ms. Carter --

20              MR. GREENFIELD:  Section -- I'm sorry,

21    section 2?

22              THE COURT:  We are still on C-1.

23              MR. GREENFIELD:  Okay.  Thank you.

24              MR. GILLIAM:  Still on C-1.

25              And the reason being is that it is --

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 274 of 425   PageID 15677
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1895

1   certainly in this case, you know, we allege that

2   Ms. Stone and Local 556 attempted to cause

3   Ms. Carter's discharge, but if -- if for whatever

4   reason the jury determined that they weren't trying

5   to cause her actual discharge but were trying to

6   cause just Southwest to treat her differently, to

7   discipline her, that that is still a violation of

8   the law, the statutory text.

9              THE COURT:  Okay.

10             So the current version in C-1 for the

11  paragraph that starts with, "To prove unlawful

12  discrimination by Defendant Local 556," we have a

13  second element that currently reads, "That Local 556

14  caused or attempted to cause discrimination against

15  Plaintiff Carter by Defendant Southwest."

16             And you want to put in -- can you say that

17  language one more time?

18             MR. GILLIAM:  Oh, wait.  Does it use

19  "discrimination" instead of "discharge"?

20             THE COURT:  In the current version, yes.

21  Unless I'm on a different --

22             MR. GILLIAM:  I apologize.  It does.

23             THE COURT:  So is that language now

24  sufficient in the newest version of the charge for

25  you?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 275 of 425   PageID 15678
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1896

1              MR. GILLIAM:  Yes, your Honor.  I'm sorry,

2   I missed that one.

3              THE COURT:  I know it is not your exact

4   language, but it is different than the version --

5              MR. GILLIAM:  Yes, I apologize.  I missed

6   that one, your Honor.

7              THE COURT:  Okay.  All right.

8              Other issues with C-1?

9              MR. GILLIAM:  No other issues from

10  plaintiff.  I'm sorry.

11             THE COURT:  That is fine.  Okay.

12             So we are at C-2 now.  For me, that starts

13  at the top of 16.

14             What issues are there with C-2?

15             MR. GREENFIELD:  I can start, your Honor,

16  if you would like.

17             THE COURT:  You may.

18             MR. GREENFIELD:  Just at the end, we would

19  ask for some additional language.  The first

20  paragraph, "The Union Local 556 denies Carter's

21  claim."

22             What we would like it to say is the Union

23  Local 556 denies that Audrey Stone was acting in her

24  official capacity when she reported plaintiff Carter

25  to Southwest Airlines or that her reporting was

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 276 of 425   PageID 15679
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1897

1   motivated by plaintiff Carter's religion.

2           Again, this ties back to our argument

3   that -- the official capacity issue, I believe is

4   dispositive of every issue, and I think it should be

5   included in every part as we go down.

6           THE COURT:  All right.  Any thoughts by

7   Carter on that proposed language, to clarify what

8   the Union is arguing in response to this claim?

9           MR. GILLIAM:  So it is just what the Union

10  claims?

11          THE COURT:  Correct.

12          MR. GILLIAM:  Yes.  No objection for them

13  to state it.

14          THE COURT:  So I think this is the most

15  area where you have freedom to control the words

16  that are in the charge.  So give me just one minute,

17  I'm going to write the words you said in from the

18  transcript, put them in and read them back to you,

19  so hold on.

20          Okay.  Can you say your proposed language

21  one more time?

22          MR. GREENFIELD:  Yes, your Honor.

23          THE COURT:  It's the last part of it, I'm

24  trying to make sure I have down.

25          MR. GREENFIELD:  "The Union Local 556

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 277 of 425   PageID 15680
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1898

1   denies that Audrey Stone was acting in her official

2   capacity when she reported Plaintiff Carter to

3   Southwest Airlines," or, "that her reporting was

4   motivated by Plaintiff Carter's religion."

5            THE COURT:  I think we need to say

6   religious -- what is the phrase?

7            MR. GILLIAM:  Religious observances,

8   beliefs, and practices.

9            MR. GREENFIELD:  No objection to that,

10  your Honor.

11           THE COURT:  I think we need to make it

12  disjunctive for this sentence, the practices, not to

13  nerd out too much.

14           MR. GREENFIELD:  Don't let your appellate

15  show too much, your Honor.

16           THE COURT:  Okay.  Instead of reading it

17  back, I'm just going to flash it up on the screen

18  for y'all.  I think I can show my screen.

19           Okay.  So it is the top paragraph that you

20  are looking at.  It's the last sentence of that

21  first full paragraph.  So anyone tell me if I have

22  gotten something wrong in that language.

23           And then I think the order of is it

24  observances, practices, or beliefs, to be consistent

25  with the next sentence.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

```
 1              MR. GREENFIELD:  Yes, your Honor.  That
 2    looks correct.
 3              THE COURT:  But then we switch the order
 4    in the bottom paragraph to beliefs, observances, or
 5    practices, so I guess consistency is out the window
 6    at this point, right?  As long as we have those
 7    three elements, that is what matters.
 8              Okay.  Any issues elsewhere?
 9              MR. GREENFIELD:  Yes, in the third
10    paragraph, your Honor.
11              THE COURT:  Yes, sir.
12              MS. GREEN:  In the elements of .1, it
13    says, "That Defendant Local 556 treated Plaintiff
14    Carter less favorably than other employees."
15              We would like that to be, "That Defendant
16    Local 556 treated Plaintiff Carter less favorably
17    than other similarly-situated non-Christian
18    employees."
19              THE COURT:  Response from the Union --
20    sorry, from Carter?
21              MR. GILLIAM:  Yes, I don't see how that
22    requirement applies here, how the similarly
23    situated --
24              THE COURT:  Yes, I can similarly-situated.
25    I can't see Christian or non-Christian, adding that
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 279 of 425   PageID 15682
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1900

1  in.
2          MR. GREENFIELD:  Okay.  I believe that
3  tracks Title VII language as far as the causation
4  standard, that how you were being treated
5  differently has to be from -- differently from
6  somebody outside of your protected class, her
7  protected class being Christian.
8          So the person who must have been treated
9  more or less favorably needs to be outside of that
10 protected class.
11          THE COURT:  Right.  But then I'm giving
12 the jury the questions of law after instructing them
13 on what that is.  So my instruction might be
14 similarly situated, but if I'm going to go tell them
15 what it is, it would be like me telling them, I find
16 the following is protected activity, right?
17          So if I tell them, Here is her class, then
18 I think I'm really grabbing the things from their
19 province that I'm supposed to instruct them on and
20 have them find.
21          So I can see things similarly situated, I
22 can't see going so far as to define the protected
23 class.
24          So do you have thoughts on whether I say
25 "similarly situated" in between "other" and

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 280 of 425   PageID 15683
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1901

1  "employees," Mr. Gilliam?

2          MR. GILLIAM:  The problem is the legal

3  definition of similarly situated.  And, again, the

4  potential to confuse the jury with that.

5          THE COURT:  Yes.  I think I will probably

6  leave it, because I think we have got the concept of

7  similarly situated coming into number 2 when we talk

8  about it's her religious beliefs, observances, or

9  practices.  So my inclination is to leave it.  So I

10  will overrule that request for similarly situated

11  and the religious specification.

12          MR. GREENFIELD:  Nothing else from the

13  Union on that section, your Honor.

14          THE COURT:  Okay.

15          MR. GILLIAM:  Plaintiff has nothing for

16  No. 2.

17          THE COURT:  All right.  I assume nothing

18  from Southwest on a section that is not about

19  Southwest?

20          MR. MORRIS:  Yes, nothing from Southwest.

21          THE COURT:  Got it.  Okay.

22          The next section is you, Mr. Morris.  So

23  failure to accommodate against Southwest as to C-3.

24          So who has got an issue with C-3?

25          MR. GILLIAM:  Your Honor, I guess elements

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 281 of 425   PageID 15684
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1902

 1   1 and 2 of what Ms. Carter has to prove, it -- I

 2   guess our objection is to the inclusion of language

 3   about conflicting with the job requirement.  We

 4   think that is sort of inherent with the facts here

 5   under Abercrombie.

 6           We think that the elements should

 7   basically mirror those set forth in the Abercrombie

 8   decision that Ms. Carter was fired because of her

 9   religion, and that those should be the elements,

10   fired because of religion.

11           Or maybe stated another way, let's see,

12   that -- that -- that Ms. Carter was fired and that

13   Defendant Southwest discharged Carter with the

14   motive of avoiding the need for accommodating a

15   religious belief, observance, or practice.

16           THE COURT:  All right.  I understand that

17   request.  I will reject it.

18           What is the next issue with C-3?

19           MR. MORRIS:  Your Honor, I will reiterate

20   what we raised this morning about a violation that

21   occurs prior to the request of the knowledge of the

22   need for an accommodation, and request that in an

23   instruction indicating that if an employee violates

24   a policy before the request or need for an

25   accommodation is known, that there is no obligation

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 282 of 425   PageID 15685
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1903

1  to provide an accommodation.

2           THE COURT:  I understand that request.  I

3  will reject that one as well.

4           MR. MORRIS:  I don't know -- if the Union

5  doesn't have another, regarding to the undue

6  hardship defense, that we raised this morning,

7  again, we think the Court's instruction overstates

8  the burden and doesn't include all of the various

9  burdens that could constitute an undue hardship,

10 including but not limited to burden to other

11 employees, potential future harms, it doesn't

12 actually have to be any kind of monetary loss, et

13 cetera.

14           And we provided cases to that effect.

15           So we think this statement of the undue

16 hardship defense is just an overstatement of the

17 law.  And then related to that, we think an

18 instruction that an employer does not have an

19 obligation to provide an accommodation that entitles

20 employees to proselytize should be included as well.

21           THE COURT:  I understand that.  I will

22 reject it because I think the last phrase

23 "disruption of the business" is a sufficient place

24 to put your concepts.

25           MR. MORRIS:  I have one more, if nobody

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 283 of 425   PageID 15686
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1904

 1  else --

 2              THE COURT:  You may.

 3              MR. MORRIS:  The instruction that was

 4  just -- that was added regarding purporting to

 5  define accommodation, I think is not accurate.

 6              And I think a more general statement from

 7  some of the Fifth Circuit case law stating that an

 8  accommodation is one that eliminates the conflict

 9  between the religious belief and the employer

10  practice would be appropriate.

11              THE COURT:  So what language are you

12  suggesting should go?  I'm trying to find which spot

13  you are critiquing.

14              MR. MORRIS:  Oh, I apologize.

15              It is the second paragraph at the second

16  sentence.

17              THE COURT:  Okay.  And you suggest

18  swapping that with?

19              MR. MORRIS:  Just one second.  I'm trying

20  to formulate that myself.

21              THE COURT:  Sure.

22              MR. MORRIS:  If we could come back to it.

23  I don't want to hold everybody else up, if that's

24  okay.  I can propose some language before we --

25              THE COURT:  Sure.  That's fine.  And I

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 284 of 425   PageID 15687
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1905

 1   will just say the sentence that you are addressing

 2   says "an accommodation means allowing the employee

 3   to engage in her religious practice or observance,

 4   despite the employer's normal rules to the

 5   contrary."

 6              And then we can come back to whatever

 7   language you want to propose for that.

 8              MR. MORRIS:  Sure.

 9              THE COURT:  Any other issues with C-3,

10   Southwest's accommodation?

11              MR. GILLIAM:  Yes, your Honor.

12              There is some more language from

13   Abercrombie that we think is important, that the

14   charge should explain to the jury that employers may

15   not fire employees for their religious observance,

16   beliefs, and practices under an otherwise neutral

17   policy.  And that Title VII requires an otherwise

18   neutral policies to give way to the need for an

19   accommodation.

20              THE COURT:  Right.  I understand that

21   request.  I will reject that at this point.

22              MR. GILLIAM:  And one more in that same

23   vein is that we think the charge should inform the

24   jury that Title VII imposes an affirmative

25   obligation on employers not to fire an employee

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 285 of 425  PageID 15688
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1906

1  because of some aspect of her religious observances,

2  beliefs, or practices.

3            THE COURT:  All right.  I will reject that

4  one as well.

5            Any other issues on C-3 other than the one

6  I'm putting a pin on for Southwest?

7            MR. GILLIAM:  Well, one more, and I

8  suspect I understand where your position is on this,

9  but for the record, just that the Court should also,

10  for the same reasons as stated with the other

11  Abercrombie language, is that the jury charge should

12  exclude the instruction that an employer may

13  terminate an employee for other reasons, good or

14  bad, fair or unfair.

15            THE COURT:  Where is that language?

16            MR. GILLIAM:  You know what, that may have

17  just appeared in one.  Yes, that just appears in

18  one, subsection one.

19            THE COURT:  It is not in C-3.  Got it.

20            Okay.  Any other issues on C-3?

21            All right.  C-4 is where we are at now,

22  and that is accommodation against the Union.

23            MR. GILLIAM:  For, I guess, all of our

24  requests that we made for C-3, we would also

25  reiterate for C-4 as well.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 286 of 425   PageID 15689
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1907

1              THE COURT:  I appreciate that.  I will

2    overrule those requests at this time.

3              MR. GILLIAM:  Maybe some -- I guess also

4    we would add some parallel language, like you find

5    in C-3, that attempting to cause the employee to

6    discriminate -- and I'm sorry -- the employer to

7    discriminate in these circumstances would be

8    synonymous with refusing to accommodate an

9    employee's religious observances, beliefs, and

10   practices.

11             THE COURT:  All right.  I see your

12   request.  I will overrule that.

13             MR. GILLIAM:  Okay.

14             MR. GREENFIELD:  The Union has nothing to

15   request on that section.

16             THE COURT:  On 4?

17             Mr. Morris, you don't have any language

18   handy yet on C-3, do you?  Before we get to damages?

19             MR. MORRIS:  Let's move on to damages.  I

20   will get you that.

21             THE COURT:  That is fine.

22             Okay.  Damages is on my page 19.

23             So what issues do we have on a first

24   section on damages before we get to actual damages?

25             MR. GREENFIELD:  Nothing from the Union,

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1908

```
 1    your Honor.
 2            MR. GILLIAM:  Nothing from plaintiff, your
 3    Honor.
 4            MR. MORRIS:  Nothing from Southwest.
 5            THE COURT:  All right.
 6            How about the actual damages, small
 7    paragraph?
 8            MR. GILLIAM:  Nothing from plaintiff.
 9            MR. GREENFIELD:  None from the Union.
10    Your Honor, the word "Charlene" was taken out of one
11    of the -- out of the draft and it threw off my --
12            THE COURT:  Pagination?  Sorry.  One word
13    can cause a big headache when it comes to page
14    numbers.
15            Okay.  Anything from Southwest on actual
16    damages?
17            MR. MORRIS:  No, your Honor.
18            THE COURT:  Okay.  How about back pay?
19            MR. GILLIAM:  Nothing from plaintiff, your
20    Honor.
21            MR. MORRIS:  Your Honor, from Southwest, I
22    don't think there is anything in the record
23    regarding all of these various categories of damages
24    that have been identified here.  It is certainly
25    nothing as to the amounts.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 288 of 425   PageID 15691
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1909

```
 1              So we don't think it is appropriate to
 2   instruct the jury as to items -- you know, tax
 3   relief shared with employees, for example, that are
 4   not even in the record.
 5              THE COURT:  Understood.
 6              Are there things in that category that we
 7   do remember being discussed?  Like, if we are going
 8   to narrow down, what would we narrow it down to?
 9              MR. MORRIS:  The only thing that from I
10   recall from the record is health insurance.
11              MR. GILLIAM:  Seniority rights and
12   benefits were discussed.
13              MR. MORRIS:  Is that monetized -- I don't
14   know if that's a monetized one.  I don't know if
15   there is anything in the record about the amounts.
16              MR. GILLIAM:  I think we said insurance,
17   right?
18              THE COURT:  Yes, health insurance was
19   definitely in there.
20              I don't recall a monetary figure going on
21   seniority benefits.
22              MR. GILLIAM:  I don't know if you got
23   that, your Honor, the jury can value that.
24              THE COURT:  So, yes, and my inclination is
25   to put it in, even if it wasn't monetized.  But if
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 289 of 425   PageID 15692
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                    Page 1910

 1  we are talking about all benefits, we talked about

 2  health insurance and seniority benefits.

 3           MR. GILLIAM:  Yes, your Honor.

 4           THE COURT:  Okay.  So I'm going to mark

 5  this up a little bit.  I'm going to say, "And such

 6  benefits as health insurance and seniority

 7  benefits."

 8           MR. MORRIS:  That is good with Southwest.

 9           MR. GREENFIELD:  And, your Honor, just on

10  back pay, one last issue.  After the first sentence,

11  just perhaps to avoid any confusion about what that

12  time period is, just to conclude what Carter would

13  have earned had she remained an employee of

14  Defendant Southwest from the time of her termination

15  through the time of trial.

16           I believe that is how back pay is defined.

17           THE COURT:  Any issues with the time

18  frame?

19           MR. GILLIAM:  What was the time frame?

20           THE COURT:  Termination through trial.

21           MR. GILLIAM:  For back pay?  Well --

22           THE COURT:  I think we have an instruction

23  up here, if you wouldn't mind, at the end of 19, we

24  say that you should consider the following elements

25  of actual damages, the amount of back pay is, what

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 290 of 425   PageID 15693
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1911

 1  she would have earned had she not been terminated

 2  from her employment from March 14th to the date of

 3  the verdict.

 4          So I think we defined it up top.

 5          MR. GREENFIELD:  Right.

 6          I just missed that.

 7          THE COURT:  No.  And that's right, it

 8  needs to be in there.  I just want to make sure it

 9  is close enough where they can link back and see it.

10          Other issues on back pay?

11          Punitive damages are next.

12          Issues on the punitive language?  It is a

13  long section.

14          MR. GREENFIELD:  Yes, your Honor.  In

15  regard to elements that are laid out, "you may award

16  punitive damages," we would object that it misstates

17  the law.  No member of 556 could meet the punitive

18  damages requirement of an individual acting in a

19  managerial capacity.

20          Plainly, "managerial capacity" refers to

21  the members of Southwest Airlines' management.  But

22  even if union officials were analogized to

23  managers -- analogized, excuse me -- Plaintiff

24  Carter was not a member of 556 and submitted to no

25  managerial authority that the executive board may be

 1  interpreted to have.  I don't believe that punitive

 2  damages apply.

 3          THE COURT:  Understood.

 4          What is the response, Mr. Gilliam, to the

 5  Union's structure on the punitives argument?

 6          MR. GILLIAM:  Yes.  I mean, managerial

 7  capacity is more of a term of art.  And I think that

 8  President Stone was certainly acting in a managerial

 9  capacity, so the instruction is appropriate.

10          THE COURT:  So I'm going to leave it in at

11  this time.  This is the kind of thing where if it

12  does get awarded, then I would expect a more robust,

13  post-trial briefing on what the legal standard is

14  and then what evidence came into play, if that makes

15  sense.

16          But at this time, I don't think I'm going

17  to pull it out of the jury's purview based on what I

18  have seen.

19          Other issues on punitive damages?

20          MR. MORRIS:  Yes, your Honor.  I have one.

21          On the -- I don't know, it is pretty far

22  down.

23          In determining whether -- hold on --

24  Defendant Southwest or Local 556 made a good faith

25  effort to prevent discrimination, that paragraph, on

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 292 of 425   PageID 15695
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1913

1    the fourth line, it refers to how or whether they

2    responded to Plaintiff Charlene Carter's complaint

3    of discrimination.

4              THE COURT:  Can you identify the paragraph

5    right quick?  I'm still --

6              MR. MORRIS:  Sure.  Yes.  It is one -- it

7    is the sixth paragraph.

8              THE COURT:  Okay.  With the last two words

9    of that paragraph being "of discrimination"?

10             MR. MORRIS:  Yes.

11             THE COURT:  Okay.  I'm there.

12             MR. MORRIS:  The reference to the

13   considerations that one could look at for punitives,

14   says how or whether they responded to Plaintiff

15   Carter's complaint of discrimination, I don't think

16   there is anything in the record of a complaint of

17   discrimination made by Ms. Carter.

18             THE COURT:  Well, there is an EEOC

19   complaint, Exhibit No. 2, that is in the record.  So

20   I guess the question is, are we confusing the jury,

21   right?  By having that language in there?

22             MR. MORRIS:  Right.

23             THE COURT:  What are you suggesting we

24   should have its place, anything?

25             MR. MORRIS:  Our suggestion would be just

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 293 of 425   PageID 15696
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1914

 1  to delete it.  She was terminated at that point.

 2           THE COURT:  Thoughts on how to handle that

 3  phrase, how or whether they responded to Carter's

 4  complaint of discrimination?

 5           MR. GILLIAM:  This is the one about Local

 6  556, right?

 7           THE COURT:  Let me scroll back up.

 8           MR. GREENFIELD:  Okay.  Now I'm lost.

 9           MR. GILLIAM:  With respect to Defendant

10  Local 556 --

11           THE COURT:  I mean, the lead-in sentence

12  talks about both, Southwest and 556.

13           So Southwest is proposing we admit how or

14  whether they responded to Plaintiff Charlene

15  Carter's complaints of discrimination saying there

16  are no complaints of discrimination in this case to

17  Southwest.  Therefore, it is irrelevant.

18           MR. GILLIAM:  My concern is the, I guess,

19  Local 556's acts or other attempts to discriminate

20  against -- or to turn in other employees and whether

21  this would exclude that from consideration.

22           So I would -- which is what I don't want

23  to do.

24           THE COURT:  Right.

25           I'm trying to figure out is there a way to

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 294 of 425   PageID 15697
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1915

1  phrase it that accomplishes what you want to, but

2  doesn't say "complaint of discrimination," which

3  seems like a term of art that wasn't really used in

4  this case, if that makes sense.

5          I see Southwest's point.  I don't know

6  what "it" means.  "It" means something.  Is there a

7  different way to phrase what "it" means?

8          MR. GREENFIELD:  I have not thought of one

9  yet.

10          THE COURT:  Okay.  It is pattern language,

11  so the question is, do we need to adapt the pattern

12  language to match this case to avoid a jury question

13  on what was the complaint of discrimination?

14          All right.  So if we can come up with an

15  understanding of what we-all view it to mean,

16  then --

17          MR. GREENFIELD:  I would rather just stick

18  with the pattern language, your Honor.

19          MR. GILLIAM:  I think we are fine with the

20  pattern language.

21          MR. MORRIS:  We are not fine with the

22  pattern language.

23          THE COURT:  I get that you are not.  But

24  the question is, I can't -- I can't omit it unless I

25  have something to run with, right?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 295 of 425   PageID 15698
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1916

1           The patterns were meaning to accomplish

2    something, which may have been as simple as what

3    happens to Charlene Carter in this case, right?

4           Now, that is an inartful way of phrasing

5    it, but it means something.  I'm not okay with

6    changing the something to nothing.  So I have to

7    leave in the something for now, unless the something

8    can be changed to something clearer.

9           MR. MORRIS:  Frankly, I am just having a

10   hard time because there was no complaint of

11   discrimination, so I don't know what we would say as

12   an alternative, given that there wasn't one.

13          THE COURT:  Right.  Which gets back to the

14   issue with the conflict and an accommodation.

15          MR. McKEEBY:  Well, what about something

16   like Ms. Carter's situation, which is --

17          THE COURT:  That is what I was getting at,

18   right?

19          MR. McKEEBY:  Yes.  I think that at least

20   is -- at least less confusing.  I think the jury

21   would read that and understand what you mean, where

22   as with this, they may not know -- are you talking

23   about the EEOC charge or something else?

24          I mean, the language is not particularly

25   precise, but I think it is better than this.

```
 1              THE COURT:  And if we made that change, we
 2    would have to make a corresponding change in the
 3    next sentence, which talks about with the Union, we
 4    can talk about other people, right?  We would have
 5    to talk about other union members' situations.
 6              MR. McKEEBY:  It's overruled.
 7              MR. MORRIS:  Well, I just think
 8    "situation" sort of suggests they could consider all
 9    kinds of things.
10              THE COURT:  Sure.
11              MR. MORRIS:  And, quite frankly, I think
12    that is not appropriate.  This was intended to allow
13    them to consider one thing.
14              THE COURT:  That is fair.  What I'm going
15    to say is, we all agree that this language sucks
16    from the patterns, but we can't figure out a better
17    way to do it.
18              So if someone has a bright idea before we
19    finish our formal charge conference, come back and
20    let me know.  It is on my page 22.  So I'm going to
21    put a placeholder on it.
22              MR. MORRIS:  Actually, I might have a
23    proposal.
24              THE COURT:  Okay.  Did lightning strike,
25    Mr. Morris?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 297 of 425   PageID 15700
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1918

1              MR. MORRIS:  Maybe.

2              THE COURT:  Okay.

3              MR. MORRIS:  You could say, if there is

4    evidence that Carter made the complaint of

5    discrimination to Southwest, it could be considered

6    in addressing punitive damages or something like

7    that.

8              THE COURT:  Sure.  I mean, it is as good

9    as anything we have seen, which ain't saying much.

10             MR. GILLIAM:  Right.

11             I think at that point, we prefer the

12   pattern instruction.

13             THE COURT:  My inclination is, if we stick

14   to the pattern, and we may see a question on this.

15   They may ask us what complaint of discrimination are

16   you talking about?  And then we will have to figure

17   it out.

18             But until then, I haven't heard anything

19   that I'm more comfortable with than the pattern.

20             But I like the fact that you brought it

21   up.  If no one brings up the idea, then we won't get

22   a better idea.

23             Okay.  So I will overrule the request for

24   now on changing the language from the patterns on

25   complaint of discrimination in the section on

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 298 of 425   PageID 15701
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1919

1    punitive damages that we are on.

2              What other issues do we have with the

3    punitive damage instructions?

4              I will say, with regard to your pointing

5    out of that language, we say "Charlene," when he

6    have kept out her first name, except for the first

7    reference, so I am going to delete the word

8    "Charlene" from that sentence.

9              Okay.  Other language on punitives?

10             MR. GILLIAM:  Nothing from plaintiffs.

11             MR. MORRIS:  Nothing from Southwest.

12             MR. GREENFIELD:  Nothing else from the

13   Union.

14             THE COURT:  Okay.  I found one more

15   reference to Charlene after the enumerated list of

16   three and the punitive instructions, so I have got

17   that.

18             So we are done with punitives.  We are on

19   to front pay.  In my draft, that is page 23, is

20   where it starts.

21             MR. GREENFIELD:  And just, your Honor, if

22   I may?

23             THE COURT:  You may.

24             MR. GREENFIELD:  We either would ask for

25   an instruction or some other alternative as we

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 299 of 425   PageID 15702
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1920

 1  don't -- we object to being -- to front pay being

 2  applied to us.

 3          In our formal conference briefing, we cite

 4  to Mota v. University of Texas, Texas Health, front

 5  pay, definition-ally covers monetary damages for

 6  future lost wages and benefits, front pay is awarded

 7  only when reinstatement is not feasible because

 8  hostile relationships exists between the employer

 9  and the employee.  Front pay is an equitable remedy

10  to be determined by the Court at the conclusion of

11  the trial, but an advisory jury may be used.

12          The Union has no ability to give

13  Ms. Carter her job back or have any say in that, and

14  we should not be liable for any front pay damages.

15          THE COURT:  I understand that argument.

16          Let me say two things about it.

17          First, I'd probably like to consider it

18  more in a post-verdict context, when we have had the

19  benefit of the full record and the full briefing on

20  it.

21          But let me ask this question:  When you

22  said advisory, yes, I do agree that they wouldn't be

23  binding on me unless I said nothing about advisory

24  and everyone consented to it.

25          I'm fine putting in an advisory caveat.  I

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 300 of 425   PageID 15703
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1921

1   thought about that, and so I can put it in here if
2   it is not in here already.
3            Any objections to me putting in an
4   advisory caveat?  And then if they go haywire, then
5   we can all revisit it in post-trial proceedings,
6   whether that is on the paper with affidavits or that
7   is another evidentiary hearing.
8            MR. GILLIAM:  I think you have one in
9   there, your Honor.
10            THE COURT:  Do I have one in there?  Is it
11   in the questions, not here?  Or is it somewhere else
12   in --
13            MR. GILLIAM:  The very last sentence in
14   that section.
15            MR. GREENFIELD:  Your Honor, I just
16   included kind of the full scope of what I thought
17   front pay was.  And I bet you it left it at that, it
18   is just that it doesn't -- we believe it doesn't
19   apply to the Union.
20            That is all that was for.
21            THE COURT:  Okay.  Got it.
22            And so I'm only overruling it to the
23   extent I don't know enough about it yet.  I'm going
24   to see what the jury says.
25            And we did have the caveat on advisory, so

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 301 of 425   PageID 15704
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1922

 1 | I think we are covered there.
 2 |           Okay.  Other issues with front pay?
 3 |           MR. GILLIAM:  Nothing from plaintiff.
 4 |           MR. MORRIS:  Nothing.  We just -- well,
 5 | aside from reiterating the objection that it is for
 6 | the Court, but, you know, nothing additional.
 7 |           THE COURT:  Understood.
 8 |           So I will understand that objection, which
 9 | is why I'm putting in the advisory language.  I'm
10 | not bound by it at all.
11 |           Okay.  So now we should look at nominal
12 | damages.
13 |           MR. GILLIAM:  Nothing from plaintiff.
14 |           THE COURT:  Anything on nominal from
15 | Southwest or the Union?
16 |           MR. GREENFIELD:  None from the Union, your
17 | Honor.
18 |           MR. MORRIS:  None from Southwest, your
19 | Honor.
20 |           THE COURT:  All right.
21 |           So mitigation is next.
22 |           MR. GREENFIELD:  Just to make note to the
23 | Court that it says "Charlene" several times, but
24 | other than that ...
25 |           THE COURT:  Thank you.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 302 of 425   PageID 15705
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1923

1                In mitigation --

2                MR. GREENFIELD:  Or -- I'm sorry, no.  It

3    is taken out.  It was in my old copy.

4                Sorry, Ms. Silver.

5                THE COURT:  Every draft is getting

6    slightly better.

7                MR. GREENFIELD:  Take my stones back.

8                THE COURT:  And plenty other places.

9                MR. GREENFIELD:  The Union has no issue

10   with the mitigation instruction.

11               THE COURT:  All right.

12               Any issue from Carter or Southwest on the

13   mitigation language?

14               MR. GILLIAM:  Nothing from Carter.

15               MR. MORRIS:  Yes, your Honor.

16               The first requirement indicating that

17   there has to be substantially equivalent employment

18   available.

19               We think that is not appropriate based on

20   the evidence in the record that Ms. Carter ceased

21   looking for employment and was engaged in various

22   nonprofit endeavors.

23               So we think the instruction should

24   indicate that if you cease searching for employment,

25   you've failed to mitigate at that time.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 303 of 425   PageID 15706
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1924

```
 1                THE COURT:  Understood.

 2                Response?

 3                MR. GILLIAM:  It is an element of the

 4    mitigation, right?  So I think that they do have

 5    that burden to prove.

 6                MR. MORRIS:  If it helps the Court, we

 7    cited various cases on this issue in our response to

 8    the instruction that indicate that if there is

 9    evidence that an employee has ceased looking for a

10    job, then that mitigation instruction could be

11    altered.

12                THE COURT:  Understood.

13                I think I'm going to leave it as is.  So I

14    will overrule that objection.

15                Okay.  Other issues on mitigation?

16                MR. GREENFIELD:  None from us, your Honor.

17                MR. GILLIAM:  None from plaintiff.

18                MR. MORRIS:  No others from Southwest.

19                THE COURT:  All right.

20                Duty to deliberate.  First paragraph is on

21    notes, and it addresses from there.

22                MR. GREENFIELD:  Nothing from the Union,

23    your Honor.

24                MR. GILLIAM:  Nothing from plaintiff.

25                MR. MORRIS:  Nothing from Southwest.
```

 1              THE COURT:  Okay.

 2              What I will do, then is I will give y'all

 3    a 10-minute break.  We can use the bathroom, and

 4    then come back and talk about the jury questions.

 5              And then that will be it for y'all for the

 6    day for here.  And then we will work on printing

 7    this thing out, once we've made any final changes

 8    based on reviewing a couple of things that I

 9    flagged.

10              Okay.  So we are in a 10-minute recess.

11              I will see y'all at 4:46.

12              THE COURT SECURITY OFFICER:  All rise.

13              (Recess.)

14              THE COURT SECURITY OFFICER:  All rise.

15              THE COURT:  Thank you.  You can be seated.

16              MR. McKEEBY:  Your Honor, Mr. Morris has

17    the proposed language on that one instruction he

18    wants to read, and I actually also have a

19    housekeeping-type question.

20              THE COURT:  You bet.  Housekeeping first?

21              MR. McKEEBY:  Yes, please.

22              I'm assuming, given that the evidence is

23    closed, that if elect to use a PowerPoint during my

24    closing, I do not need to share that with counsel?

25    But I wanted to confirm that now before --

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 305 of 425   PageID 15708
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1926

```
 1                THE COURT:  Sure.
 2                So my request is for -- and I said this
 3     briefly before we did voir dire on day one.  If
 4     y'all have demonstratives that you want to use that
 5     exist, then please disclose them the night before at
 6     8:00, so do not disclose them at 6.  I assume you
 7     will be working on them at 6.  But if you can
 8     disclose them the night before at 8.
 9                That is for anyone who is using a
10     PowerPoint for closing tomorrow.  Show it to the
11     other side, so we can talk about it tomorrow before
12     the jury gets here and we read the charge.
13                Does that make sense?
14                MR. McKEEBY:  So the entire PowerPoint,
15     then, not just the demonstratives?
16                THE COURT:  That's correct.
17                MR. PRYOR:  So the displaying of exhibits
18     to the jury, testimony from the dailies that is not
19     part of a PowerPoint, can be utilized?
20                THE COURT:  How would it not be part of
21     the PowerPoint?
22                MR. PRYOR:  I'm sorry?  Yes, okay.
23                THE COURT:  So my question to you is, I
24     didn't hear your question fully.  You are asking --
25                MR. PRYOR:  Yes.  I'm not doing a
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 306 of 425   PageID 15709
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1927

 1  PowerPoint.  It is --

 2           THE COURT:  What are you doing?

 3           MR. PRYOR:  That is too close to my

 4  bedtime.

 5           But I have to -- I'm going to use

 6  exhibits.  I'll say Matt, put exhibit so and so up.

 7           I may refer to a daily trial transcript as

 8  demonstrative evidence.  And I will fill in the

 9  blanks on the jury form, but I'm not sure what I'm

10  going to do until I put it on the ELMO.

11           THE COURT:  Sure.  So on the ELMO, that is

12  something that doesn't currently exist, right?  But

13  when we are talking about depo transcripts, that is

14  something that does exist, right?  That you are not

15  creating on the fly.

16           MR. PRYOR:  Right.

17           THE COURT:  So I would ask you to disclose

18  that or -- you can just say numbers, right?  You

19  don't have to --

20           MR. PRYOR:  What am I disclosing?

21           THE COURT:  Exhibits or numbers, right?

22           So what I'm saying is, you're trying to

23  make sure you do the same thing he does, but to not

24  put in a PowerPoint, so you don't have to show it to

25  him.  And I don't think that is fair, right?

1              So either we all show PowerPoints, or what

2      we are going to use, or we don't show anything.

3              But I don't think I can have one rule for

4      the people who use PowerPoint and a different rule

5      for the people who use the native exhibit and then

6      pull up a depo transcript.

7              MR. McKEEBY:  Oh, trial transcript.

8              THE COURT:  Trial transcript.

9              MR. PRYOR:  Your Honor, it is also very

10     possible during my closing I will think of an

11     exhibit that I want.  And I don't know tonight.

12             I mean, I will be happy to -- I'm making a

13     list right now.  But you are telling me on the fly

14     tomorrow if I decide, oh, I do want to see

15     Exhibit 66, pull up -- I happen to know what that

16     one is.

17             THE COURT:  As long you are okay not

18     seeing the PowerPoint at all, that is fine by me,

19     right?  That is what we are getting into is, I want

20     to make sure we don't have an incongruence here,

21     where you get to see their stuff and they don't get

22     to see your stuff.

23             MR. McKEEBY:  I'm fine with that.  I

24     prefer that, frankly.

25             MR. PRYOR:  Okay.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 308 of 425   PageID 15711
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 6 July 12, 2022                Page 1929

1           THE COURT:  How about this:  I just ask

2    that if you are pulling from trial materials, that

3    is actually the trial materials, right?  You are

4    actually pulling from the depo, the trial

5    transcript, you are actually pulling from the

6    exhibit, and you are not altering it in any way,

7    right?

8           MR. McKEEBY:  So we are not sharing it?

9           THE COURT:  Not sharing.

10          MR. PRYOR:  Okay.

11          THE COURT:  And also not fabricating

12   anything, right?

13          MR. PRYOR:  You are so strict.

14          THE COURT:  I know.

15          MR. HILL:  On not fabricating, let me make

16   sure we are that we are on the same page on one

17   issue here.

18          THE COURT:  Sure.

19          MR. HILL:  One thing we may do is show a

20   witness and show their question-and-answer

21   testimony.  Meaning, like a picture of the witness

22   that we have from a deposition or something and then

23   the question-and-answer testimony.

24          THE COURT:  I think that is sufficiently

25   similar to what actually happened as to not cause

 1  concerns in my mind.

 2           MR. HILL:  I thought that would be the

 3  case.  I just wanted to confirm.

 4           THE COURT:  If you -- where do your

 5  pictures of witnesses come from?  Like, are you

 6  pulling old, like, arrest photos or something?  I

 7  have seen pictures get very interesting.  So -- and

 8  that actually does make me want to ask.

 9           MR. HILL:  Primarily, to the extent that

10  they were deposed, they would come from --

11           THE COURT:  From video depos, sure.

12           MR. HILL:  To the extent that they weren't

13  deposed, if there is one in an exhibit somewhere,

14  then we would pull it from there, an exhibit that

15  has been admitted --

16           THE COURT:  So you are getting it from the

17  case, not from searches of county jail records or

18  something like that?

19           I have seen -- I have seen some really

20  interesting stuff before.

21           MR. GREENFIELD:  Hold on, your Honor.

22           There is pretty wild pictures in this --

23  in the evidence today, so I am slightly concerned

24  because of that, the pictures that Mr. Hill --

25           MR. HILL:  I'm not going to be using it if

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 310 of 425  PageID 15713
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1931

1  somebody is wearing a hat or holding a sign or

2  something.

3            THE COURT:  That's a good point.

4            MR. HILL:  It's going to be just -- it's

5  going to be trying to show them who that person is.

6            THE COURT:  A professional setting

7  photograph taken from evidence in this case.

8            MR. McKEEBY:  Yes.  And to that end, I

9  mean, if we do show an exhibit in a -- you know,

10  either in native format or in a PowerPoint, I mean,

11  my thought would be that, you know, you would affix

12  the exhibit number to the -- to the display so that

13  the parties know and the jury knows what we are --

14            THE COURT:  And I will say, I prefer that.

15  If someone doesn't do that, you have got to at least

16  tell everyone what exhibit you are talking about,

17  right?  Out of fairness.  Everyone has a right to

18  know.

19            And so if you can't technologically add

20  the label to it, then you at least need to talk

21  about it as soon as it comes up.  Otherwise, I don't

22  know that it was admitted into evidence.  When y'all

23  do that, then I usually cross check and make sure it

24  was in, right?  Because I have got my list.  And if

25  I can't cross check, then I'm going to stop you.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1932

```
 1              Does that make sense?
 2              Okay.  Any other housekeeping things?
 3              THE COURT:  Okay.  So Mr. Morris, you had
 4    language.  Is this in page 17ish, C-1?  Or somewhere
 5    else?
 6              MR. MORRIS:  It is under 3 -- the third
 7    paragraph, an accommodation means, that paragraph.
 8              THE COURT:  Okay.  I'm at, "An
 9    accommodation means," which is for me on page 17,
10    but I don't know about anyone else.
11              MR. MORRIS:  I would propose a reasonable
12    accommodation is one that eliminates or resolves the
13    conflict between the employee's religious belief or
14    practice or -- and a conflicting employment
15    requirement.
16              THE COURT:  Okay.  What is Carter's
17    position on that?  New language or current language?
18    Or something else?
19              MR. GILLIAM:  We prefer the current
20    language, not the proposed amended language.  We
21    think that it is -- it is very legal, highly
22    technical, and may be confusing to the jury.  We
23    think that the current language is -- clearly
24    represents what an accommodation is and does not
25    cause confusion for the jury.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 312 of 425   PageID 15715
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1933

```
 1                 THE COURT:  Understood.
 2                 I will overrule that request to change
 3    that language.
 4                 MR. MORRIS:  Your Honor, and while we are
 5    here, something else just jumped out to me that is a
 6    little confusing.
 7                 THE COURT:  Sure.
 8                 MR. MORRIS:  We refer to accommodation
 9    repeatedly.  I think it should be "reasonable
10    accommodation" or "reasonably accommodate," which
11    is, I think, consistent with what the law requires.
12    It is just a proper terminology.
13                 THE COURT:  I see your point.  But I think
14    we also have reasonable for accommodation somewhere
15    else in the charge and I'm not sure we need to add
16    it every place.  I appreciate the request.
17                 I will overrule that.
18                 Okay.  Any other issues before we talk
19    questions?
20                 MR. GILLIAM:  None from the plaintiff,
21    your Honor.
22                 MR. MATTHEWS:  None from Southwest.
23                 THE COURT:  Okay.
24                 Anything else from the Union or are we
25    ready to talk questions?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 313 of 425   PageID 15716
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1934

1                 MR. GREENFIELD:  We are ready to talk

2      questions, your Honor.

3                 THE COURT:  Okay.  So questions, we tried

4      to put in some sign-posting given that we broke some

5      of these questions out as to Southwest and Union,

6      because it is long now.  We have got 34 pages of

7      questions.

8                 So let's go to Question 1.

9                 Any issues on Question 1?

10                 MR. GREENFIELD:  Yes, your Honor, I do.

11                 From a global point, I would just, again,

12      request that -- object to the general verdict form

13      in lieu of the special verdict form that we

14      submitted to the Court.

15                 Again, I believe the purpose of this is to

16      avoid confusion, appellate uncertainty, and the need

17      for additional proceedings.

18                 I just, again, just seek that the special

19      instructions be included instead of the general.

20                 And I would ask that the Court recognize

21      for us to -- our Exhibit 1 to our filing, as opposed

22      to me going through and reading off every single

23      special instruction that we have deemed.  I would

24      seek to submit that in lieu of that.

25                 THE COURT:  Based on my discussion with

 1   Gilliam, I think that is the kind of circumstance

 2   where we should file something and refer to it.

 3             Is this -- I can't remember if it was by

 4   email or filed on the docket.

 5             Do you recall if it was?

 6             MR. GREENFIELD:  I filed it as an exhibit

 7   to a motion, and then I filed it as an exhibit.  And

 8   then I circulated a separate Word document.

 9             THE COURT:  Okay.  Do you recall what

10   exhibit number that was?

11             MR. GREENFIELD:  Exhibit 1.

12             THE COURT:  To docket number?

13             MR. GREENFIELD:  Yes, I don't know.

14             THE COURT:  How about his:  Try to find

15   out before the end of our time, and then we will put

16   it in there.  And then you have absolutely hit the

17   nail on the head, incorporated that document by

18   reference.  But I would just like to get that docket

19   number in.  I'm fine with you incorporating that by

20   reference.

21             I will say that I have read the document

22   you are referring to.  I don't remember what docket

23   number it is.  And I appreciate your request for a

24   special verdict form.

25             I will overrule it, but I do believe your

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 315 of 425   PageID 15718
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1936

 1  argument to be preserved.  I just hope we can get

 2  that docket number on.

 3          MR. GREENFIELD:  Yes, your Honor.  I will

 4  search for that right after my next point, because I

 5  have another issue on Question 1.

 6          THE COURT:  You may fire your other

 7  question now.

 8          MR. GREENFIELD:  Yes, your Honor.

 9          Just for preservation's sake, we would

10  seek the same language we sought previously for

11  Ms. Carter -- for the Question No. 1, that it should

12  read, "Has Plaintiff Carter proved that Audrey Stone

13  was acting exclusively/solely in her official

14  capacity" to include that language.

15          The rights of all employees at Southwest

16  Airlines are protected by multiple facets of

17  numerous statutes that prevent various forms of

18  harassment within the workforce, Title VII, FMLA,

19  ADA, et cetera.

20          Southwest Airlines, operating as a private

21  employer, an at-will employment state can terminate

22  their employees for good reason, bad reason, or no

23  reason at all, as long as it is not an illegal or

24  discriminatory reason.

25          Congress and the Courts have agreed to

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 316 of 425   PageID 15719
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1937

 1  give private employers wide latitude, free of

 2  interference, to make their own business decisions.

 3  These business decisions, including setting their

 4  own policies and procedures regarding matters such

 5  as bullying and harassment in the work place.  These

 6  policies and procedures can always be more

 7  protective of employee rights than federal

 8  employment law.

 9          But, nevertheless, Ms. Stone's decision to

10  turn in plaintiff Charlene Carter was -- if it was

11  in any way made to protect her rights as an

12  employee, she legally had the right to make that

13  report to Southwest Airlines.  Otherwise,

14  Ms. Stone's rights as an employee would be

15  subservient to those of plaintiff's rights, to be

16  free from any alleged retaliation by the Union, to

17  which she no longer belonged.

18          Contiguously, if an agent of the Union

19  that exercises a scintilla of their protected rights

20  as an employee, the Union could --

21          THE COURT:  You need to slow down.  We're

22  having a hard time grabbing your speed reading.

23          MR. GREENFIELD:  Yes, your Honor.

24          And I'm sorry, Ms. Willis.  Where did you

25  lose me?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 317 of 425   PageID 15720
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1938

 1            THE COURT:  To which he no longer --

 2    retaliation by the union, to which he no longer

 3    belonged.

 4            MR. GREENFIELD:  And I said, contiguously,

 5    if an agent of the Union then exercises a scintilla

 6    of their protected rights as an employee, the Union

 7    could not possibly be held liable sans one

 8    situation:  The union agent was acting exclusively

 9    or solely in their capacity as a union agent.

10            The decision must have been made

11    exclusively or solely in Ms. Stone's capacity as a

12    union president to bind the Union, or else it

13    requires all union agents to potentially relinquish

14    their own federally-protected rights.

15            Nevertheless, if the Court decides to

16    exclude that language, we urge the adoption of an

17    additional question, allowing the jury to consider

18    whether the speech, though protected in content and

19    made in Ms. Stone's official capacity, was also

20    sufficiently harassing or threatening that it

21    potentially altered the condition of Ms. Stone's

22    employment.

23            Sorry.  I just wanted to get that on the

24    record, your Honor.  That is why I was speaking so

25    quickly.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 318 of 425   PageID 15721
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1939

```
1              THE COURT:  I appreciate that, but
2   remember, this is the time to preserve, not the time
3   to persuade.
4              MR. GREENFIELD:  Yes.
5              THE COURT:  Okay.  I understand your
6   argument, but I will overrule that request to have
7   exclusive language in Question 1.
8              Other issues with Question 1?
9              MR. MORRIS:  Not from Southwest.
10             MR. GILLIAM:  None from Carter.
11             THE COURT:  All right.  Question 2.
12             MR. GILLIAM:  None from Carter.
13             MR. GREENFIELD:  I'm sorry, your Honor,
14  just back to Question 1 real quick, we would seek
15  that it would be appropriate to include some sort of
16  additional language that says something along the
17  lines of, if no to this answer, if Ms. Stone was not
18  acting exclusively/solely in her capacity as union
19  president -- or sorry -- take out the language that
20  I was asking, just as written by -- as is, then no
21  more questions are required to be answered of --
22  regarding liability on the Union.
23             If Ms. Stone -- it stops there for us,
24  essentially, if the answer is no.
25             THE COURT:  I understand that.  And I will
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                          Page 1940

 1  reference back to my earlier conversation.  I try,
 2  to the extent possible, to pull out some of these
 3  conditioning questions so that if they answer no, we
 4  all know that the Union is done, right?  And I can
 5  certainly enter judgment to that effect.
 6           If the Fifth Circuit finds out that their
 7  answer to 1 was wrong, and they said they should
 8  have answered 2, then they have an answer to 2 now,
 9  right?
10           So I get your point.  I'm not misled as to
11  what the effect of a "no" answer on Question 1 is,
12  but I'm trying to make sure that we don't have to
13  try this case three, four, or five times.
14           If we just -- you know, we got Question 1
15  wrong first; then later on next year, we got
16  Question 3 wrong.  And then -- I would like this to
17  be the last time we have to try this case, even if
18  there is an incorrect jury answer.  This lack of
19  conditioning for some of these questions may not
20  solve all of those problems.
21           Okay.  So I get your request.  I will
22  overrule it.
23           Any other questions on Question 1?
24           Okay.  So now we are on to 2.
25           Any issues on 2?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 320 of 425   PageID 15723
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1941

1              MR. GILLIAM:  No issues from plaintiff.

2              MR. MORRIS:  None from Southwest.

3              MR. GREENFIELD:  Just a running objection

4    for the request to the special instruction, which I

5    will submit to the Court.  And I will look for that

6    number right now.

7              THE COURT:  That sounds great.  I will

8    give you that request for a special instruction

9    running objection.

10             Okay.  Question 3.

11             MR. GILLIAM:  No objections from the

12   plaintiff.

13             MR. MORRIS:  None from Southwest.

14             THE COURT:  All right.  Anything

15   union-wise on Question 3, other than the special

16   instruction running objection?

17             MR. GREENFIELD:  One moment, your Honor.

18   I'm scrolling right now.

19             No, your Honor.  Just the same special

20   instruction.

21             THE COURT:  Okay.  Question No. 4.

22             MR. GILLIAM:  Your Honor, I would just

23   state our same objection for the record to the jury

24   charge that the -- this affirmative defense issue

25   shouldn't be here under NRLB v. Allied Aviation; but

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 321 of 425  PageID 15724
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1942

1  otherwise, no issue.

2           THE COURT:  I understand that request.

3           I will overrule that.

4           Any other issues on 4?

5           MR. MORRIS:  None from Southwest.

6           MR. GREENFIELD:  None from us, your Honor,

7  other than the running objection.

8           THE COURT:  Understood.

9           I will overrule that.

10          Okay.  Question 5.

11          No objection from plaintiff.

12          MR. MORRIS:  None from Southwest.

13          MR. GREENFIELD:  Just the running

14 objection from the Union.

15          THE COURT:  All right.  I will overrule

16 that.

17          Question 6?

18          MR. GILLIAM:  Your Honor, just reiterating

19 the same objection we had to Question 4 regarding

20 the Wright Line affirmative defense.  We don't think

21 it should be part of the charge; otherwise, no issue

22 with Question 6.

23          THE COURT:  I understand your Wright Line

24 objection.  I will overrule that.

25          Any other issues on 6?

```
 1              MR. GREENFIELD:  Yes.  On Question No. 6,
 2   the Union seeks the same similarly-situated,
 3   non-Christian employees to be included in this
 4   question.
 5              THE COURT:  Understood.
 6              For consistency, I will overrule that.
 7              Anything else on 6?
 8              Okay.  On to 7.
 9              MR. GREENFIELD:  I don't believe I had any
10   actually separation out on the accommodation case
11   claims, so I don't believe I have any.  If I did, I
12   would preserve them with the same running objection.
13              THE COURT:  So what is your request,
14   Mr. Greenfield?
15              MR. GREENFIELD:  I don't know exactly,
16   your Honor.
17              THE COURT:  Sure.  That is fine.  I will
18   let you gather it.
19              MR. GREENFIELD:  I don't actually -- I
20   didn't change that, so none, your Honor.  I do --
21   would just, again, seek the inclusion of a separate
22   question on undue hardship, and that we seek to add
23   in that affirmative defense into the jury charge,
24   just for preservation's sake, your Honor.
25              THE COURT:  Understood.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 323 of 425   PageID 15726
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1944

1          I appreciate that.  I will overrule that

2   on undue hardship for the Union.

3          Anything else on 7?

4          MR. GILLIAM:  Nothing from plaintiff, your

5   Honor.

6          MR. MORRIS:  Nothing from Southwest.

7          THE COURT:  All right.

8          Question 8.

9          MR. MORRIS:  Your Honor, just for

10  consistency between Questions 8 and 9, if you look

11  at the -- Question 8, the last part of that question

12  says "exercising her rights under the Railway Labor

13  Act."  Question 9 says, "engaged in activity

14  protected by the Railway Labor Act."

15         We think the latter is the appropriate

16  phrase, and so that the end of that sentence from

17  question 9 should also be in question 8.

18         THE COURT:  Understood.

19         Does Carter have a position on conforming

20  Question 8 more to Question 9, statement on engaging

21  in protected activity under the Railway Labor Act as

22  opposed to exercising rights under the Railway Labor

23  Act?

24         MR. GILLIAM:  I think it should be engaged

25  in protected activity, engaged in activity protected

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 324 of 425   PageID 15727
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1945

 1  by the Railway Labor Act.

 2          THE COURT:  I think that is a good change,

 3  so let me make that and then I will flash my screen.

 4          Okay.  So here is how Question 8 is

 5  reading now after that proposed change.

 6          "Has Plaintiff Carter proved that

 7  Defendant Southwest retaliated against Plaintiff

 8  Carter for engaging in activity protected by the

 9  Railway Act -- Railway Labor Act," which matches up

10  to Question 9.

11          MR. GILLIAM:  That is right, your Honor.

12          No objection.

13          THE COURT:  All right.  So that was

14  Question 8.

15          Now, down to 9.

16          MR. GREENFIELD:  And, your Honor, before

17  we move on to No. 9, it is Docket 333, Exhibit 1.

18          THE COURT:  So Docket 333, Exhibit 1 is

19  your specific request for a special verdict as

20  opposed to a general verdict form?

21          MR. GREENFIELD:  Yes, your Honor.

22          THE COURT:  Okay.  So I will let you

23  incorporate that by reference, then.

24          I am overruling your request for that

25  verdict form, but thank you for bringing up the

 1    docket number.

 2              MR. GREENFIELD:  Sure.

 3              THE COURT:  Okay.  So we have moved on

 4    from Question 8, we are on Question 9.

 5              Any issues with 9?

 6              MR. GILLIAM:  I'm confused.  I thought

 7    that we -- I thought we solved this one already.

 8    Something about the formatting I'm seeing on this

 9    has me confused.

10              Nine, I think, would be our Wright Line

11    mixed-motive objection that I would just reiterate,

12    if I'm looking at the right sentence.  I realize I

13    may have been looking at the wrong thing earlier

14    when I made that objection.

15              THE COURT:  Sure.

16              MR. GILLIAM:  The formatting is screwed up

17    on -- I was looking at it on my phone.

18              But yes, we would reassert our Wright Line

19    objection here for all of the reasons we stated

20    earlier.  No other issues.

21              THE COURT:  Understood.

22              I appreciate your request.  I will

23    overrule that at this time.

24              Okay.  Anything else on Question 9?

25              MR. GILLIAM:  Nothing from Carter.

```
 1              MR. MORRIS:  Nothing from Southwest.
 2              THE COURT:  All right.  How about Question
 3   10?
 4              MR. GILLIAM:  No objections from Carter.
 5              MR. MORRIS:  No objections from Southwest.
 6              THE COURT:  All right.
 7         On to 11.
 8              MR. GILLIAM:  I'm sorry, your Honor.  We
 9   would reiterate our same motivating factor objection
10   that we made earlier, that -- instead, that it
11   should be stated that her sincerely-held religious
12   observances, beliefs, or practices was a motivating
13   factor in Southwest's decision to discharge Carter.
14              THE COURT:  I understand that objection.
15   I will stick to the pattern language, but
16   acknowledge that you may have an argument there, if
17   anyone needs to take it up.
18         Okay.  Eleven.
19              MR. MORRIS:  Your Honor, this is sort of
20   related to 11, which is the conflict question should
21   precede Question 11, when it is a conflict between
22   her religious beliefs or practices and the
23   requirement of employment.
24              THE COURT:  What is your proposed
25   question?
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 327 of 425   PageID 15730
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1948

1           MR. MORRIS:  "Has Plaintiff Carter proved

2    that she had a religious belief or practice that

3    conflicted with the requirement of her employment

4    with Defendant Southwest?"

5           THE COURT:  Understood.

6           I will overrule that objection, but I

7    appreciate the question.

8           Okay.  So now we are to Question 11.

9           Carter had no objection.

10          Is there a Southwest objection, other than

11   the lack of a predicate on conflict?

12          MR. MORRIS:  I would just say "reasonably

13   accommodate" there, again.

14          THE COURT:  I understand that, but I will

15   stick to the current language.  I will overrule that

16   objection.

17          Anything else on 11?

18          All right.  We are at 12.  Your reasonable

19   accommodation language came up here.

20   Congratulations.  It is in 12.

21          MR. GILLIAM:  Your Honor, our objection

22   would be that it should state in accordance with

23   Weber, has proved that any reasonable accommodation

24   claim -- or any reasonable accommodation would have

25   imposed an undue hardship on Defendant Southwest.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1949

```
 1                THE COURT:  So you are wanting to swap
 2   "each" with "any," is that the upshot of your
 3   change?
 4                MR. GILLIAM:  Yes.  And I don't know that
 5   a specific reasonable accommodation has specifically
 6   been claimed.  In fact, that is one of our
 7   arguments, that they didn't initiate any
 8   accommodation efforts to suggest that there was one
 9   as claimed.
10                THE COURT:  So can you talk to me on why
11   it should be "any" versus "each" accommodation?
12                MR. GILLIAM:  Yes.  Under Weber, because
13   they -- because Southwest never initiated any
14   accommodation efforts, it -- it has to show that --
15   it couldn't have undertaken any accommodation that
16   would have -- that any accommodation they could have
17   taken would have imposed the undue hardship, which I
18   think is consistent with the wording in the charge
19   itself.
20                THE COURT:  Can we pull that back up?
21                So I have got at the bottom of my draft on
22   page 17, I have a sentence saying, "Defendant
23   Southwest must establish by a preponderance of the
24   evidence that it did not accommodate Plaintiff
25   Carter because any accommodation would have imposed
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 329 of 425   PageID 15732
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1950

1  an undue hardship on Defendant Southwest."

2        MR. GILLIAM:  You could use the word "any"

3  in the question, too.

4        THE COURT:  So I would like to hear

5  Southwest's thoughts on this one.

6        MR. MORRIS:  I'm not sure -- I'm not sure,

7  frankly, I understand the --

8        THE COURT:  Sure.  So it's fighting over

9  one word, "any" versus "each."  Right now, we talk

10  about in the question "each accommodation."  And the

11  question is, do we make the change to any

12  accommodation.

13        Their argument is that they never

14  requested an accommodation because Carter was fired

15  before she could make such a request.  I guess the

16  thought on my end is, the accommodations were never

17  really discussed by either side.

18        And so I think it makes sense -- it

19  doesn't say any accommodation requested by Carter or

20  any one thought of by Southwest.  It just refers to

21  an accommodation, whoever thought of it.

22        I think it makes to sense any because,

23  one, that is what we say in the charge; but two, if

24  everybody is saying no specific accommodation was

25  discussed, I don't want the jury penalizing other

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 330 of 425   PageID 15733
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1951

1  side, Southwest or Carter, if there is not a

2  specific accommodation.  And they come back and say

3  each, what were they?  We would come back and say, I

4  don't know.

5          So my thought would be to say "any" to

6  conform to the charge and because we don't have a

7  specific accommodation at the time that either side,

8  Southwest or Union or Carter, had discussed.  But

9  that is my leaning without knowing more about any

10 versus each.

11         MR. GILLIAM:  The other part of the

12 objection is to the phrase "claimed in this case,"

13 because I think --

14         MR. MORRIS:  Well, I think wouldn't each

15 reasonable accommodation or each accommodation

16 incorporate all?  Because there is no specific --

17 there is none enumerated here and there's none that

18 have been raised.

19         THE COURT:  Right.

20         But the question is, does it incorporate

21 all, if any?

22         MR. MORRIS:  Right.

23         THE COURT:  Any presupposes if any -- each

24 presupposes there is more than one, right?  And so

25 we have accommodations that have been discussed at

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 331 of 425   PageID 15734
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1952

1  trial, like blocking, ignoring on the part of the

2  Union.  Or, you know, on the part of Southwest,

3  disclaimer on the Facebook page or pulling down the

4  nexus photographs.

5          So we have multiples that were discussed

6  at trial.  But I think this almost anchors it back

7  at the time, right?  At the time of the termination.

8  What happened at the time of the termination, all

9  sides were talking about none.

10          And so "each" presupposes two or more.

11  "Any" supposes zero or more.  So I don't know.  I

12  think "any" more accurately matches the factual

13  circumstance at the time, even though at trial

14  multiple accommodations had been discussed for

15  Southwest and the Union.

16          MR. GILLIAM:  And consistent with what you

17  said, I think that "claimed in this case" should be

18  omitted as well.

19          THE COURT:  So you are saying "any

20  reasonable accommodation claimed in this case"?

21          MR. GILLIAM:  I think it is consistent

22  with the jury charge language, too.

23          THE COURT:  So what I plan on doing is,

24  any instead of "each," omitting claims, but not

25  saying "in this case."  I know that is splitting

1  hairs, but "in this case" can include in this trial,
2  right?  Or earlier factually on.
3          So I would say, "Do you find the Defendant
4  Southwest has proved that any reasonable
5  accommodation in this case would have imposed an
6  undue hardship on Defendant Southwest?"
7          Does Southwest want to object to that
8  language or you object keeping "in this case"?
9          MR. GILLIAM:  We still object to "in this
10 case."  Again, you know, our position is that when
11 they repudiate all efforts to accommodate, they have
12 to show that any and every possible accommodation
13 would have imposed an undue hardship.
14          THE COURT:  I understand that argument.
15 And I will overrule that request and keep in, "in
16 this case."
17          MR. MORRIS:  Your Honor, I think we are
18 okay with that language, except I think the concept
19 of "reasonable" should be removed in this case -- in
20 this instance because --
21          THE COURT:  Question 11?
22          MR. MORRIS:  Well, right.  And because,
23 you know, a reasonable accommodation is one that
24 eliminates the conflict between the religious
25 practice and the employment requirement.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 333 of 425   PageID 15736
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1954

1              And just to use some of the examples they

2    just raised, blocking Ms. -- you know blocking --

3    Ms. Stone blocking Ms. Carter or removing a nexus

4    photograph doesn't do -- has nothing to do with the

5    conflict between Ms. Carter's stated religious

6    belief or practice, i.e. sharing her view that

7    abortion is bad and the requirement of her job.

8              So I don't really concede that any

9    reasonable accommodation has been raised or at

10   issue, or anything like that.

11             THE COURT:  So you would cut the

12   "reasonable" modifier?

13             MR. MORRIS:  Correct.

14             THE COURT:  And I think out of consistency

15   with 11, that makes sense to me.  Bring in the

16   concept now -- I think we should either bring in the

17   concept in 11 or leave it out in both for

18   consistency's sake.

19             We have charged the reasonableness of

20   accommodation.  They know it has got to be

21   reasonable.  Either we have got to put it in, in

22   both places or pull it out.  I would be inclined to

23   deleting words instead of adding them at this point,

24   given that I will have to read each word tomorrow.

25             But any argument from Southwest on

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 334 of 425   PageID 15737
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1955

1   "reasonable" in or out on Question 12?

2           MR. GILLIAM:  I think it is fine with it

3   being in.  I just want to clarify our position is

4   that "any" doesn't mean just one, it means "every."

5   Again, based on Weber and Hacienda Hotels, a Ninth

6   Circuit case.

7           THE COURT:  Right.  And I'm just trying to

8   make sure that the jury would read it that way.

9           I understand that argument, right?  If

10  there is one accommodation, that would have been an

11  undue hardship.  But another accommodation, that

12  wouldn't be, then they can't prove undue hardship,

13  right?  Because one accommodation would not have

14  been an undue hardship.  So I'm trying to make sure

15  that the working is sufficiently clear.

16          Now that I've changed "any," I'm trying to

17  make sure that my "any" has not allowed the jury to

18  think one is an undue hardship, the other is not an

19  undue hardship.

20          Well, the first thing I'm going to do is

21  pull out "reasonable" to be consistent with 11, and

22  then I'm going to look at the sentence.  I will show

23  you my current draft of what I'm looking at.

24          MR. GILLIAM:  I would argue it proves any

25  possible combinations.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1956

```
 1              THE COURT:  I would be more inclined to
 2  say "any and all accommodations."  Does that make
 3  sense?  Because possible now seems like it is
 4  changing a reasonable accommodation standard to
 5  something different.  But "any and all" presupposes
 6  that the number is zero to whatever the maximum
 7  number of accommodations would have been, that all
 8  of those are an undue hardship.
 9              MR. GILLIAM:  "Any and all," I think makes
10  sense.
11              THE COURT:  Okay.  Let me put it in here,
12  we will see how it reads.
13              Am I grammatically incorrect on any and
14  all accommodation, accommodations?  I don't know if
15  I'm violating the rules of grammar.
16              All right.  I think this satisfies the
17  concerns on bringing out "reasonable," but having
18  whatever accommodations would have been in play in
19  this case be undue as the proper standard.
20              So now with this language, y'all can
21  object to it.  Does anyone have an objection to it?
22  Is everyone glazed over?  You can't object to it?
23              MR. GILLIAM:  I have already stated -- I
24  guess I will reiterate it, just we would object to
25  the inclusion of "in this case."
```

```
 1              THE COURT:  Right.  I have still kept that
 2    in.
 3              MR. GILLIAM:  But no other objections.
 4              THE COURT:  Okay.  Any objection to "any
 5    and all accommodations"?
 6              MR. MORRIS:  I guess I will just state for
 7    the record I think that there is no evidence of any
 8    accommodations that have been really proposed or at
 9    issue, but I think that is it.
10              THE COURT:  Understood.
11              So I will overrule that objection, keep
12    Question 12 in its current -- in its modified form.
13              Okay.  So next question, 13, lost wages.
14              On Local 556?
15              MR. GREENFIELD:  No objection, your Honor.
16              THE COURT:  Anything from Carter on
17    Question 13?
18              MR. GILLIAM:  No, your Honor.
19              MR. MORRIS:  Your Honor, just one thing
20    from Southwest.
21              THE COURT:  Yes.
22              MR. MORRIS:  And I sort of apologize a
23    little bit, because I did request that these be
24    broken up, and I think that is good.
25              But just the way the damages questions,
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 337 of 425   PageID 15740
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1958

1  with respect to Local 556 and Southwest are

2  worded -- you know, for example, if you look at the

3  lost wages sustained between these dates, you know,

4  I think the jury is probably going to look at that,

5  and if they were to find one or both of us liable,

6  they would put the same amount for both people

7  there, and then it may look like double damages,

8  essentially.

9           THE COURT:  I'm glad you brought this up.

10          So yes.  And we were having this

11  discussion back in chambers.

12          What we need to make sure is, in

13  post-verdict briefing, we make sure there is no

14  double recovery, right?

15          I don't know -- I don't know how to do

16  that other than hopefully the number is the same,

17  right?  If it is different numbers, then we are

18  going to have an issue.

19          But presumably both numbers would be the

20  same, or nothing, right?  And if they are the same

21  number, then it is capped at that number.  Let's say

22  it is $10,000, right?  And the answer is $10,000 for

23  both Union and Southwest.  Then the recovery is

24  $10,000.  It can't be a double recovery because 20

25  would be double, right?  In my mind?

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 338 of 425   PageID 15741
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1959

1              The question is, if the number is

2     different, you know, if they say 8,000 for Southwest

3     and 2,000 for the Union, I'm not sure how they would

4     have gotten there and I'm not sure what to do about

5     it, right?

6              So I have thought this is the best we can

7     do, knowing that I will have to avoid a double

8     recovery on the back end.  But I'm trying to figure

9     out if they can engineer a result that none of us

10    can figure out how they got there and how do undo

11    it.

12             Any bright ideas?  I see the value in

13    breaking these things out, right?  There could be a

14    recovery just from the Union, Southwest and not the

15    Union, or a recovery just from the Union and not

16    Southwest.

17             MR. McKEEBY:  No bright ideas, just more

18    problems in the sense that, even if they do put one

19    number, then I guess there is a question of which

20    defendant pays.

21             THE COURT:  Right.  It is not tortfeasors,

22    but we would be talking joint and several liability,

23    if this were a tort case, right?  And what is the

24    total recovery?  Is it 10,000 or is it 20,000?

25             And in my view, if this were a tort case,

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 339 of 425   PageID 15742
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1960

 1    it would a $10,000 recovery, with joint and several

 2    liability.

 3            If they both have been found liable, then

 4    I think there can be a judgment.  But then it would

 5    be my duty to make sure there is not a double

 6    recovery and a double satisfaction.

 7            So in my view, I think the best we can do

 8    is all know that there is the potential for an odd

 9    result here, hope that the dollar signs are

10    consistent, matching up to the liability questions,

11    right?  And then make sure that we avoid the double

12    recovery in post-verdict machinations.

13            Or we can go back to one damages question,

14    but then we have got other problems that we create

15    by one damages question to defendants.

16            MR. GREENFIELD:  Would you entertain the

17    idea of some and give some -- and again, problems

18    not solutions?  So I apologize.  Some sort of

19    apportionment footnote question in there, if

20    you do -- you know, or maybe on the back end of all

21    the damage questions, if you found that both

22    Southwest and the Union are liable for the

23    discharge, and you have asserted damage to both,

24    which -- how much do you assert, you know,

25    which apportion -- you know, something -- I don't

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 340 of 425   PageID 15743
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1961

 1   know.

 2             I'm spit-balling here, but just something

 3   to potentially maybe on the back end and parse it

 4   out.

 5             THE COURT:  And I think that would work,

 6   but only if we wrapped it down into one damage

 7   question.  And if we've found liability for both and

 8   one amount of damages, then what is a proportionate

 9   responsibility, right?

10             But I don't even know that this can be a

11   proportionate responsibility case, right?  I almost

12   think in a case like this -- like, let's say that it

13   is $10,000 each.  Unless I'm missing something, in a

14   case like this, she would have the ability to get a

15   judgment, $10,000, but then only get one

16   satisfaction, right?

17             And so the first one to pay up is the

18   first one to pay up.  And so it is actually an

19   enforcement of the judgment problem, not even a

20   judgment in how it reads problem, right?

21             I would know, I can see it is 20 grand.

22   But it is almost an enforcement of the judgment

23   problem.

24             So the problem -- so while I like your

25   idea, I think I can't impose a proportionate

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 341 of 425   PageID 15744
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1962

1  responsibility context in a statutory violation case

2  that is not a negligence case with a proportionate

3  responsibility-staked overlay on it.

4          So I think I have got to give her a full

5  satisfaction, potentially from each defendant who

6  they found liable, up to the level of damages that

7  they found them responsible for.  But she can only

8  ever get one complete satisfaction, even if there

9  are two judgments.

10          MR. GREENFIELD:  Thank you.

11          THE COURT:  Does anyone want to take issue

12  with my hunch here?

13          MR. PRYOR:  I just -- no, I take issue

14  with the number used, but we agree with the

15  analysis.

16          THE COURT:  I knew you would, Pryor.

17          But, I mean, it would be all easier if

18  this were a tort case, right?  Because then we would

19  just have one damages question and a proportionate

20  responsibility and we would know exactly how to do

21  it.  But a multi-defendant statutory damages case is

22  a different animal.

23          I think we have done it as best as we can.

24  I think we all know that we have a double recovery

25  issue waiting for us at the end of the day, assuming

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 342 of 425  PageID 15745
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1963

1    that there is liability for both and there are

2    damages for both.

3              And that we may need to talk about this,

4    if there is a different calculation for each of the

5    two defendants.  But it may actually be fine because

6    maybe then that is what the judgment looks like for

7    each defendant.  We just have to figure out what the

8    dollar amount of the double recovery would mean.

9              MR. MORRIS:  Your Honor, just thinking out

10   loud here a little bit is, if there were an

11   apportionment question there, then we would have the

12   information from the jury -- and maybe it becomes

13   unnecessary at some point, but at least we have it,

14   if it becomes necessary or relevant for some

15   question of apportionment or something.

16             MR. HILL:  What?  How would that come into

17   play?

18             THE COURT:  If they picked different

19   numbers?  If they found them both liable but said

20   Southwest was 8,000 and the Union, 6,000?

21             I don't know why they would do that.  I

22   can't think of a good reason why they would pick

23   different numbers, as we sit here today.

24             All right.  The best I can do is what we

25   have done so far, and then see what happens and hope

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 343 of 425   PageID 15746
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1964

1  that they get consistent numbers, right?  And if

2  they get consistent numbers, we can figure out

3  avoiding a double recovery on the back end.  If they

4  get inconsistent numbers, then I may not release

5  them immediately, but I may send them back to the

6  jury room and we figure if we need to ask them a

7  follow-up question.

8          So I'm not saying we will never ask that,

9  but hopefully we won't need to.

10          MR. PRYOR:  I guess I'm misunderstanding

11  what -- I thought you were going to submit one

12  damage question.  If you submit two, I think it is

13  going to be very confusing for the jury for the very

14  reason you are stating.

15          Why are we stating -- it is the same

16  damage.  It is the liability question is going to

17  determine who is responsible for the damage.  And if

18  it is both, it is just as you have stated.  But to

19  give two -- I have had this happen before.  These

20  two damage questions, the jury ends up fighting

21  over, trying to split it between the two, and that

22  is not their issue, some thinking it is a double

23  recovery and they cut in half.

24          And then if they don't find liability for

25  both, she doesn't get both.  I think it is -- if

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 344 of 425   PageID 15747
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1965

1  that is what you are doing, I don't know if we said

2  we don't object.  We do.

3          THE COURT:  Understood.

4          Okay.  So now we are back to the question

5  of do we lump it back into one damage question, and

6  then we use the liability questions to determine who

7  owes that amount of money.

8          If both are liable, then both owe that

9  amount of money, if those types of damages are

10 recoverable.  I know you've got your lost pay

11 argument for the Union -- sorry -- front pay for the

12 Union.

13         But we break that out, right?  So even if

14 there is a category that we treat differently, if

15 the Union is off for front pay, then we could still

16 figure out because there is a separate front pay

17 question.

18         So the question is now, are we back to one

19 damages question that doesn't identify which

20 defendant but which type of damages?

21         MR. GREENFIELD:  We contend that the two

22 damages question is still better than the joint

23 damage question, but -- it may not be perfect, but I

24 think it is closer to the right direction to where

25 we want to be.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 345 of 425   PageID 15748
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1966

1            MR. MORRIS:  Southwest agrees.

2            THE COURT:  Agrees on two, instead of one?

3            MR. MORRIS:  Yes.

4            THE COURT:  So I think I may have talked

5     myself out of it though, now.

6            Yes.  Looking at all of the types of

7     damage questions, my current thinking is the only

8     way to avoid the problem of the jury's inconsistent

9     answer on Southwest and the Union owing different

10    amounts of money for the same types of damages is to

11    send one damage question without identifying a

12    defendant and using the liability question to

13    determine if those damages are awardable against

14    that defendant.

15            MR. GREENFIELD:  And I would contend that

16    that has greater risk of confusion and prejudice by

17    lumping them together, as opposed to splitting them

18    apart and potentially dealing with this other issue.

19            THE COURT:  So I see your point, but I'm

20    not seeing how it would actually play it.  Like, I

21    see how it plays out in the other context.  They

22    start thinking who was more at fault, right?  They

23    start implying a proportion of responsibility

24    context.

25            But they can't do that if it is one

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 346 of 425   PageID 15749
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1967

1  question.  If they found someone not liable, then

2  they are not liable.  And whatever amount of damages

3  it is, they are not on the hook for.

4         MR. GREENFIELD:  I actually think that it

5  is --there is a perfect example, and we can just

6  look at back pay.

7         We both could be found liable for the

8  termination under any one of the -- any number of

9  the statutes.

10        The jury could come back and say, yes, and

11 we, you know, tip the cap here -- you probably

12 understand that we will probably argue this -- but

13 that then we are not actually responsible for any of

14 the back pay damages.  We are not her employer, we

15 didn't cause -- we fought to get her job back.

16        So even though we are liable, our back pay

17 should be zero.  And if they are lumped together,

18 I'm going to be stuck with an argument about

19 splitting it with them and I don't want to do that.

20        MR. PRYOR:  If, as a matter of law, they

21 are not responsible for the back pay, then you form

22 a judgment accordingly.

23        MR. GREENFIELD:  If you would like to

24 stipulate that we are not possible for back pay, I

25 would be happy to go with that.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 347 of 425   PageID 15750
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1968

```
 1              MR. PRYOR:  Well, I'm not going to
 2    stipulate -- what?  No.  The Court can ferret that
 3    out.
 4              THE COURT:  I think I can ferret that out
 5    in post-verdict briefing, right?  If there is, as a
 6    matter of law, if you are not on the hook for back
 7    pay.
 8              The question would be if there is some
 9    sort of factual basis, not as a matter-of-law point,
10    the jury could find they are not on the hook for
11    back pay.
12              MR. GREENFIELD:  And I'm not arguing from
13    a matter-of-law point.  I'm arguing from a factual
14    point.  And so I think if they are lumped back
15    together, then we absolutely have to have some sort
16    of apportionment because I think a jury could easily
17    find if we are both liable, for example, that the
18    Union is X, could potentially be much less.
19              Because, again, the different sort of
20    situation that we are in, that we actually -- and we
21    would argue -- even fought to get her her job back.
22    And ultimately, the decision was made by Southwest
23    Airlines to terminate her employment.
24              So if they are lumped together, then I
25    absolutely think we need some sort of apportionment
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 348 of 425   PageID 15751
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1969

1  question.  But I think the better way is to have

2  them split apart.

3            MR. PRYOR:  I don't see it.  I don't

4  understand that argument.

5            MR. HILL:  It's like a joint-employer

6  case, where you get a joint and several judgment

7  from joint employers.

8            MR. GREENFIELD:  We are not joint

9  employers.

10            MR. HILL:  Well, that's fine, but I'm

11  using my analogy.

12            THE COURT:  Well, and so what I will say

13  is, there is a universe in which the jury could say

14  the Union shouldn't have turned in her; however,

15  Southwest Airlines shouldn't have fired her, and so

16  the Union shouldn't be on the hook for her back pay,

17  right?  Like, the Union should be on the hook for

18  some damages, but not the full extent of the back

19  pay.  This is -- so --

20            MR. PRYOR:  Okay.  I'm having

21  difficulties -- but I guess if you submit a question

22  like that to the jury.  But, okay.  I mean, I give

23  up.  I don't know what to do.

24            THE COURT:  I think we all give up at this

25  point.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 349 of 425   PageID 15752
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1970

 1              MR. PRYOR:  There has got to be a way.

 2              But submitting two damage questions,

 3  unless you put something in there telling the jury

 4  there is no double recovery, don't think about your

 5  answers to -- I mean, I don't know.

 6              Otherwise, it is going to -- I know two

 7  damage questions will create confusion.  This other

 8  hypothetical issue, I -- it seems odd that a jury

 9  could consistently find them liable for getting her

10  fired, but somehow think they are not liable for

11  back pay and Southwest is, as opposed to joint and

12  several.

13              It just seems like that is an issue that

14  the Court would ferret out and not the jury, but --

15              THE COURT:  So now what I'm thinking

16  about, Mr. Pryor, is two questions, but actually

17  adding in the cautionary language you are flagging,

18  which is something along the lines of, the jury is

19  to award the full measure of damages it finds

20  attributable to each defendant.  The Court will take

21  separate action to avoid any double recovery.

22              MR. PRYOR:  If there is really that

23  concern, I guess so.

24              MR. HILL:  So you still have the problem

25  of potentially inconsistent verdicts.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 350 of 425   PageID 15753
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1971

1          And because there is one set of damages
2  that is caused by the termination, regardless of who
3  did it, who caused it.  If the Union caused it, she
4  still got terminated and the pay that she lost
5  between March 14th, 2017 and the date of trial is
6  the same, March 14th to the date of trial, that she
7  would have lost if Southwest had fired her.  I mean,
8  it the same quantum.  Having two questions just --
9          THE COURT:  I get your point, but I'm not
10  necessarily in agreement with it.  The jury could
11  say that Southwest is liable for the termination and
12  the Union is liable for its breach of duty of fair
13  representation.  But there is no further liability,
14  and that the Union's damages are less than
15  Southwest's damages.
16          MR. PRYOR:  Okay.  If it is going to be,
17  you have to have two.
18          THE COURT:  So in that case, if they
19  award, you know, 8 grand against Southwest and 6
20  against the Union, then we would have judgments that
21  say 8 and 6.  But I would know that her recovery
22  can't exceed 8.  Does that make sense?
23          MR. PRYOR:  So if they are going to be
24  two, you will put the language in that says don't
25  worry about -- give the full measure of damages each

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1972

 1  time and the Court will ensure -- now, they would be

 2  worried about double recovery.

 3          THE COURT:  I agree with you, Mr. Pryor.

 4          MR. PRYOR:  And so that is actually the

 5  way I would say it, the Court will ferret this out

 6  and not permit a double recovery or something.

 7          THE COURT:  Okay.  So give me 30 seconds.

 8  I'm going to draft some language, and then I will

 9  show it on the screen.

10          Okay.  So the language I have proposed is

11  right under the questions about damages header:

12  "The jury should award whatever recoverable damages

13  it finds that Plaintiff Carter proved each defendant

14  caused.  The Court will ensure that it avoids giving

15  Plaintiff Carter more than a full recovery of the

16  damages the jury finds that she proved."

17          I can't say "double recovery," because it

18  could be 1.3, 1.8.  So it is the one satisfaction

19  rule is really what we are talking about, so --

20          MR. PRYOR:  And I don't guess you can put

21  in, should the jury award damages in regard to

22  Southwest Airlines, so that they understand -- and

23  although maybe that same language in the Southwest

24  Airlines --

25          THE COURT:  Well, should I say, should the

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 352 of 425   PageID 15755
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1973

 1   jury award damages as to both defendants, the Court

 2   will ensure --

 3                MR. PRYOR:  Yes.  Yes, that would be

 4   great.

 5                THE COURT:  I think that is the best we

 6   can do, is two separate questions with the caveat.

 7                And then if we have to sort out

 8   something -- you know, after we get a jury verdict,

 9   everyone be looking out if there is something really

10   squirrely and we need to send them back for another

11   question.

12                Normally, I accept the verdict and cut

13   them loose.  But we should all be on the lookout if

14   we need to not cut them loose for some kind of

15   inconsistent jury answer that we can't resolve as a

16   matter of law on the back end.  Does that make

17   sense?

18                MR. PRYOR:  And where are you going to be

19   on Thursday?

20                THE COURT:  I will tell Judge Kinkeade,

21   look, man.

22                So does anyone want to object to the

23   overall structure about questions about damages with

24   the preamble language I have?

25                MR. GILLIAM:  No objection from plaintiff.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 353 of 425   PageID 15756
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1974

1          THE COURT:  We are just talking about the

2   preamble at this point and separate questions for

3   defendants.  I know y'all wanted separate questions.

4          Is the preamble good enough?

5          MR. MORRIS:  Yes, your Honor.  I think

6   that works.

7          THE COURT:  He said cautiously.  We will

8   see how this plays out in the next few days.

9          Any issue with the language that you want

10  to take, Mr. Greenfield?

11         MR. GREENFIELD:  No, your Honor.

12         THE COURT:  Okay.  And let's talk about

13  Question 13.  Now we are back to 13.

14         MR. GREENFIELD:  Just to the question in

15  and of itself for lost wages and damages against

16  back pay, I think there is insufficient evidence

17  that shows that we caused the termination of

18  Ms. Carter, and I believe the question itself to be

19  inappropriate.

20         THE COURT:  Understood.

21         I will overrule that objection.

22         MR. GREENFIELD:  Yes, your Honor.

23         MR. GILLIAM:  Plaintiff has no objection.

24         THE COURT:  Okay.  So moving on to

25  Question 14.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 354 of 425   PageID 15757
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1975

```
 1              MR. GREENFIELD:  No objections, your
 2    Honor.
 3              THE COURT:  Anything from Carter on
 4    Question 14?
 5              MR. GILLIAM:  No objection.
 6              MR. MORRIS:  Nothing with Southwest.
 7              THE COURT:  Okay.  15, punitives.
 8              Local 556?
 9              MR. GREENFIELD:  Yes, your Honor.  We just
10    renew our objection regarding punitives that we made
11    earlier.
12              THE COURT:  I understand that and overrule
13    it.
14              Any other objections on Question 15?
15              MR. GILLIAM:  No objections from Carter.
16              THE COURT:  All right.  16, the sum of
17    money.
18              Same objection to 16 as 15,
19    Mr. Greenfield, on punitives?  It's just the dollar
20    amount on punitives?
21              MR. GREENFIELD:  Oh, yes.  Yes, your
22    Honor.  I was just trying to follow -- I was
23    thinking it was the same thing, so I'm trying to --
24              THE COURT:  Yes, sir.  Okay.  So I will
25    overrule that objection on your punitives argument
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1976

```
 1  on 16.
 2          MR. GILLIAM:  No objection from Carter.
 3          THE COURT:  All right.
 4          So that should take us to 17.  Nominal
 5  damages against 556 for Title VII claims.
 6          MR. GREENFIELD:  No objection, your Honor.
 7          MR. GILLIAM:  No objection.
 8          MR. GREENFIELD:  No objection to 18.
 9          THE COURT:  18.  Yes.  We all know they
10  are supposed to write a dollar.  If they write
11  anything else, I'm supposed to reform it, right?
12  Everyone is sort of on the same page?
13          I've seen a jury award 10 in state court
14  before, and that had to reformed to a dollar.
15          MR. GILLIAM:  No objection from Carter.
16          THE COURT:  19.  Nominals for 556 for fair
17  representation.  Any issue with Question 19?
18          MR. GREENFIELD:  Your Honor, I would be
19  happy to skip all of the way down through 22 and say
20  no objections.  I think they are all nominal damage
21  questions and we have no objection to them.
22          THE COURT:  Understood.
23          Any issue before we get to 22 for Carter?
24          MR. GILLIAM:  No.
25          THE COURT:  So then 22 is the last
```

1    nominals question.

2              So 23, is that where we are at now?

3              MR. GREENFIELD:  Yes, your Honor.

4              THE COURT:  So front pay against Local

5    556.

6              MR. GREENFIELD:  We would like to renew

7    our objections regarding front pay being

8    inapplicable to the Union.  And we believe it is a

9    question for your Honor to decide, and there should

10   be some sort of jury advisory language, if it is

11   included.

12             THE COURT:  Understood.

13             Do we need -- so on front pay, I don't

14   have a problem putting in more advisory language in

15   here.  I know I have put it in the instructions that

16   it is advisory.

17             Any issue with me putting the disclaimer

18   in one more time here, that this is an advisory

19   question?

20             MR. GILLIAM:  Yes.  That's fine, your

21   Honor.  We have no objection.

22             THE COURT:  So I just said, "This is a

23   question for the Court on which the Court seeks the

24   jury's advice."

25             MR. GREENFIELD:  Perfect.  Thank you.

```
 1              THE COURT:  Any issue with that from
 2   Carter?
 3              MR. GILLIAM:  No, your Honor.  No
 4   objection.
 5              MR. HILL:  I'd probably change the
 6   spelling of "advice."
 7              THE COURT:  Advise and consent.  Advice.
 8   I got it wrong.  Thank you.  It is with a "c" now.
 9              Okay.  So 23, we've added the disclaimer
10   in the front.
11              How about 24?  Now we are at Southwest
12   damages questions.
13              MR. MORRIS:  I think we are good, your
14   Honor.
15              MR. GILLIAM:  No objection.
16              THE COURT:  Okay.  25.  Non-economic,
17   Southwest, Title VII.
18              MR. MORRIS:  Yes, your Honor.  Just at the
19   end of the first question, it refers to the various
20   categories.  And it says, "and other non-economic
21   losses, if any."  I think that deviates from the
22   pattern instruction and should not be included.
23              THE COURT:  All right.  So it's that
24   phrase "and other non-economic losses, if any"?
25              MR. MORRIS:  Yes.
```

1            THE COURT:  Are there any other types of

2  non-economic losses?

3            MR. MORRIS:  Excuse me?

4            THE COURT:  Even separate and apart from

5  the patterns, are there any other types of

6  non-economic losses?  I couldn't think of any in the

7  abstract, much less in the specific case.

8            So if anyone can fit something into that

9  category, I can see a reason to keep it.  But if no

10  one can fit anything from this case into that

11  category, I'm not sure it is doing any work.

12            MR. GREENFIELD:  Your Honor, we would just

13  ask that if you are going to the change the

14  instruction on that, then do it for us just so we

15  have some cohesiveness.

16            MR. MORRIS:  And that repeats in the

17  Question 1 and Question 2 subparts, so I would just

18  ask that it be removed there as well.

19            THE COURT:  Sure.  So is Carter aware of

20  any type of damages in this case that are other than

21  non-economic damages not enumerated in the breakout

22  list in Question 25?

23            MR. GILLIAM:  We are sitting here

24  pondering that, making sure that there are not -- I

25  think -- I don't think there are.  I think that's

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 359 of 425   PageID 15762
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022                        Page 1980

 1   it.

 2            THE COURT:  All right.  So I'm going to

 3   make this conforming change.  I will do it on this

 4   screen, show y'all my work, and then I will go back

 5   and do it on the Union.

 6            So here is how 25 looks now.

 7            MR. GILLIAM:  No objections from

 8   Plaintiff.

 9            MR. MORRIS:  None from Southwest.

10            THE COURT:  Okay.  Then I will go find --

11   so it is Question 14.  Now Question 14 has the

12   conforming changes.

13            MR. GILLIAM:  No objections from Carter.

14            THE COURT:  All right.  So let's go back

15   to 25.  We fixed 25.

16            Now 26.  Punitives, Southwest, Title VII.

17            MR. MORRIS:  Your Honor, we object

18   because, one, we think this question is duplicative.

19   It is also 27.

20            THE COURT:  So I thought 26 was the

21   predicate to 27.  "Do you find that the legal test

22   was met for avoiding punitives" in 26, and in 27,

23   what dollar amount.

24            MR. MORRIS:  I apologize.

25            MR. GREENFIELD:  It is the same thing I

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 360 of 425   PageID 15763
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                           Vol 6 July 12, 2022                    Page 1981

 1  did.  Don't worry.

 2             THE COURT:  No, it's fine.  At this point

 3  they are all running together with me too.  So maybe

 4  one of us can see straight at this point.

 5             MR. MORRIS:  I guess the only thing I

 6  would say is this deviates a bit from the pattern

 7  instruction about violating Ms. Carter's religious

 8  rights.  I think that's kind of incomplete and

 9  confusing.  I think we should just stick to the

10  pattern.

11             THE COURT:  What was the pattern?  Do you

12  have that language handy?

13             MR. MORRIS:  It just says, "Do you find

14  that the plaintiff should be awarded punitive

15  damages?"

16             Maybe we could just say "for her Title VII

17  claims," if we need that clarification.

18             THE COURT:  Any objection to changing to

19  punitives under Title VII?

20             MR. GILLIAM:  Just I think making it

21  specific to what she can get punitive damages for.

22             MR. HILL:  A jury isn't necessarily going

23  to know what Title VII -- I know it's all in the

24  instructions, but it's just a lot cleaner for them

25  if they understand, this is the one related to

Case 3:17-cv-02278-X  Document 452  Filed 06/14/23  Page 361 of 425  PageID 15764
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1982

 1  religion.

 2          THE COURT:  So I see both of your points.

 3          Right now "religious rights" is wrong

 4  because it's the first time we've used that phrase,

 5  right?  We could use "religious observances,"

 6  "practices," and whatever, "exercises."  But we

 7  can't use "religious rights."  We can't start

 8  changing terms on them now.

 9          So I think at a minimum, we need to do

10  that.  And the question is, do we drop it at Title

11  VII?  I see your point on saying what it is.  I

12  don't have a problem with that as long as we are

13  consistent.

14          MR. GILLIAM:  Observances, beliefs, and

15  practices, whichever order.  I know we switched up

16  the order.

17          THE COURT:  That's our most common order.

18          "Observances, beliefs, or practices"

19  appears to be the most common.

20          Okay.  So I'm going to replace "rights"

21  with "observances, beliefs, or practices."

22          So the way I currently have it.

23          MR. MORRIS:  Your Honor, I guess it makes

24  it sound like there are sort of multiple categories

25  of things in here.  I think there is just one thing.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 362 of 425   PageID 15765
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1983

1  And I think Title VII is used throughout the

2  instruction.

3           I don't know how Southwest violated her

4  observances or violated her rights or violated her

5  religion.  I mean, that is not really the claim

6  here.

7           You know, you have one claim that she was

8  terminated for her religious belief; the other one

9  is that she wasn't granted an accommodation to

10 engage in it.  So I think this is just not quite

11 accurate.

12          MR. McKEEBY:  Something like

13 discriminating against Carter because of her

14 religious beliefs is more -- I think it better

15 relates.  Because violating her religious

16 observances makes it sound like they tackled her on

17 her way to church or something.

18          THE COURT:  Mr. McKeeby, I can get behind

19 your language for discriminating against Plaintiff

20 Carter's religious observances, beliefs, or

21 practices.  I think that makes more sense than

22 violating.

23          MR. GILLIAM:  Carter agrees with that.

24          THE COURT:  Okay.  Let me change the

25 wording up and see what I'm doing.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 363 of 425   PageID 15766
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1984

1              MR. GREENFIELD:  And, your Honor, the same

2    deal.  I would just ask for the language to track

3    for consistency's sake.

4              THE COURT:  All right.  Is that

5    language -- let's see this language first.

6              MR. HILL:  Discriminating against

7    Plaintiff Carter for her religious.

8              THE COURT:  So you say it's Carter,

9    apostrophe S?

10             MR. HILL:  No.  You lose the apostrophe S

11   and you say "Discriminating Plaintiff Carter for her

12   religious beliefs and practices."

13             MR. GILLIAM:  If you are going to type it

14   out, it probably should be "because of."  That's the

15   statutory language.

16             THE COURT:  Now are we good?

17             It was wrong when we started, so I think

18   it is right now, but I'm not sure.

19             Okay.  So --

20             MR. GREENFIELD:  15, I believe.

21             THE COURT:  15.  That would make sense.

22             Here is how 15 looks now.

23             MR. GILLIAM:  It looks like that will

24   carry down through 18, I believe.

25             THE COURT:  Yes, you are right.  Okay.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 364 of 425   PageID 15767
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1985

```
 1              MR. GILLIAM:  Hate to be the bearer of bad
 2   news.
 3              THE COURT:  One good deed.
 4                   (Discussion off the record.)
 5              MR. PRYOR:  Your Honor, may I be excused
 6   and allow these two gentlemen to handle this issue
 7   very competently without me?
 8              THE COURT:  You may.
 9              MR. PRYOR:  Thank you.
10              MR. McKEEBY:  I'm getting a similar
11   request from Ms. Jones and the Southwest contingent.
12   I assume that's okay.
13              THE COURT:  Yes.  The Court finds that
14   anyone who does not wish to be here can leave.  I
15   figure that the familiar cast of characters will
16   remain the same.
17              MR. GREENFIELD:  We are almost there.
18              THE COURT:  Okay.  I'm going to show you
19   how 15 through 18 to read.
20              So 15 now has this phrasing.
21              MR. GREENFIELD:  It looks good, your
22   Honor.
23              THE COURT:  16.
24              MR. GREENFIELD:  It looks good, your
25   Honor.
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 365 of 425   PageID 15768
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1986

```
 1              MR. GILLIAM:  No objections from Carter to
 2   15 or 16.
 3              THE COURT:  17.
 4              MR. GREENFIELD:  It looks good, your
 5   Honor.
 6              MR. GILLIAM:  No objection.
 7              THE COURT:  And lastly, 18.
 8              MR. GILLIAM:  No objection.
 9              MR. GREENFIELD:  Beautiful.  Perfect.
10   Thank you.
11              THE COURT:  Okay.  Now, where were we?
12   Can y'all tell me what question we were on with
13   Southwest that caused all of that?
14              MR. MORRIS:  25.
15              MR. GREENFIELD:  So 26, 27, and 28 should
16   all have the same.
17              THE COURT:  So 26 is where it all started.
18              27 has got to change.
19              28 has got to change.
20              Give me one moment.
21              Okay.  Do the changes we've just made have
22   an issue?  There are multiple Title VII theories
23   that involve punitive damages.  One of them is
24   termination, right?  For religious exercises,
25   observances, beliefs.  But failure to accommodate is
```

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 366 of 425   PageID 15769
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1987

1   another theory, which is why my law clerk, who is

2   smarter than I am, put the broader term "religious

3   rights" in there.

4            So the question is, can we think of a way

5   to phrase it that doesn't foreclose in the jury's

6   careful attentive mind the accommodation and theory

7   for punitives and Title VII?  Make sense?

8            So now let's look at the language again.

9            I have got 29 up.

10           MR. MORRIS:  Your Honor, my original

11   proposal was just for violating Title VII, which

12   would incorporate both theories.

13           THE COURT:  So you still don't like

14   "religious rights."  You still like religious

15   something.

16           MR. GILLIAM:  I like the language that you

17   have now, but I understand the issue and the

18   concern.

19           MR. GREENFIELD:  Your Honor, as a

20   pragmatist over here, we could just pivot to the

21   pattern jury instructions.

22           MR. HILL:  What if it's "What sum of money

23   should be assessed against Defendant Southwest as

24   nominal damages" -- that's predominant.

25           But "for discriminating against Plaintiff

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  Carter because of her religious observances" -- I'm

2  sorry -- because of -- "for discriminating against

3  Plaintiff Carter because of or failing to

4  accommodate her religious observances, beliefs, or

5  practices under Title VII."

6              THE COURT:  Okay.  It is even more

7  confusing because the jury is instructed about, with

8  the Union, not just terminate, attempt to terminate,

9  right?  Because the Union can't terminate.  So the

10  plot thickens even more.

11             What I'm going to suggest doing is going

12  back to the original language.  I know you don't

13  like "religious rights."  It serves a purpose, but

14  its purpose is not to confine it.  It captures

15  everything.

16             So I'm going to go back to "religious

17  rights" for all of these and keep them worded the

18  way they were.

19             And now I will hear your objection -- I

20  will hear both of your objections if you object to

21  "religious rights" being in there instead of just

22  saying "Title VII."

23             MR. MORRIS:  Sure.  Yes.  We object to

24  "religious rights" as being confusing and vague.

25  And also, we also just suggest that the Court adhere

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 368 of 425   PageID 15771
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022                     Page 1989

 1  to the pattern, just for the record.

 2          THE COURT:  Understood.

 3          I appreciate that.  I will overrule it and

 4  stick to the original language, which I will put

 5  back in as soon as I leave the bench, and then I

 6  will send you a copy of it by email tonight.

 7          Okay.  So that's -- we've got through

 8  Question 29.  Are there any other objections to

 9  Question 29?

10          MR. GILLIAM:  No objections from

11  Plaintiff, your Honor.

12          MR. MORRIS:  If we could just, at 28, the

13  pattern instruction doesn't have nominal damages on

14  Title VII.

15          THE COURT:  So I guess we can talk through

16  what this would amount to be.  If there is any

17  measure of actual damages, then we would not have

18  nominal damages, right?

19          So in my mind, nominal damages will only

20  come in if the jury thinks that there is liability

21  but that she had not proven actual damages.

22          Does everyone have the same understanding

23  of "nominal"?

24          MR. GILLIAM:  Yes, your Honor.

25          THE COURT:  So I get nominal damages

Case 3:17-cv-02278-X    Document 452    Filed 06/14/23    Page 369 of 425    PageID 15772
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1990

1  aren't in the patterns.  I don't know that they are

2  anywhere in the patterns for any claim, right?

3  Nominals are when you don't prove damages with

4  certainty.

5          MR. MORRIS:  I was saying we could remove

6  it, but I take your point.

7          THE COURT:  I mean, I will say this,

8  nominals can also be handed by not sending a

9  question on nominals.  And if the jury writes zero,

10 I re-form it to nominals at 1 in post-verdict

11 briefing.  I've had a trial where that happened

12 before.

13         But I also have trials where they put in

14 nominals and they put in nominals -- you know, if

15 they awarded $10,000 on actual and then a dollar on

16 nominals, I wouldn't award the dollar on nominals,

17 right?  It is irrelevant at that point.

18         And so I just want to make sure everyone

19 is on the same page on what nominals serve a purpose

20 for, only if actual damages are nothing.

21         MR. GILLIAM:  Yes, we agree.

22         THE COURT:  Okay.  So that's 28.

23         29 -- so we should be at 30.

24         MR. GILLIAM:  No objection, your Honor.

25         MR. MORRIS:  The only thing, I think this

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 370 of 425   PageID 15773
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1991

1   is similar to our reform earlier about protected

2   activity on the Railway Labor Act versus exercising

3   rights.  I think we reformed that in some prior

4   text.

5             THE COURT:  We did and then we undid it

6   all, so I'm trying to figure out if there is a

7   variant of it that is --

8             MR. MORRIS:  Okay.  Did we?  Maybe I've

9   forgotten.  I thought we had adopted it.

10            THE COURT:  That was Questions 26 through

11  28 as well.  But maybe there was a separate question

12  where we just addressed it and not the Title VII

13  issue.

14            I thought it was for discriminating

15  against, but here it is a retaliation question,

16  so -- I thought it was a Title VII discrimination

17  claim we reformed it on earlier, but here I'm not

18  sure the same defect exists.

19            MR. MORRIS:  I thought -- we are on 30,

20  correct?

21            THE COURT:  Correct.

22            MR. MORRIS:  Okay.  I may be

23  misremembering, I thought we had changed it to "for

24  engaging in protected activity under the Railway

25  Labor Act" versus exercising her rights.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1              THE COURT:  Does anyone know what question
 2   we did that on?
 3              MR. MORRIS:  I don't.  Because I think you
 4   changed it in yours.
 5              THE COURT:  Question 8, I have as, "Has
 6   Carter proved Southwest retaliated against Plaintiff
 7   Carter for engaging in protected activity by the
 8   Railway Labor Act -- for engaging in activity
 9   protected by the Railway Labor Act?"
10              MR. MORRIS:  Right.  I was just saying
11   that would make it consistent with the other
12   questions, that was all.
13              MR. GILLIAM:  We don't have any objection
14   to that.
15              MR. GREENFIELD:  And then, your Honor, not
16   to be a pain, but for consistency's sake, if we are
17   going to change it here, we should change it in the
18   Union's questions as well.
19              THE COURT:  I think it was a Union
20   question we had changed it in, but I will go back
21   and double-check.
22              So we are changing the phrase "for
23   exercising her rights under the Railway Labor Act"
24   to the phrase "for engaging in activity protected by
25   the Railway Labor Act."  Correct?  To make it

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 372 of 425   PageID 15775
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022                      Page 1993

```
 1   conform to 8?

 2            MR. MORRIS:  Yes.  Whatever is in 8,

 3   basically.

 4            THE COURT:  Here is how it looks.

 5            MR. GREENFIELD:  That is 21 for the Union.

 6            THE COURT:  It's 21?

 7            MR. GREENFIELD:  22, actually.

 8            Both.

 9            THE COURT:  Okay.  Here is how 21 looks

10   like now.

11            MR. GILLIAM:  No objection from Carter.

12            THE COURT:  And 22 now.

13            MR. GILLIAM:  Still no objection from

14   Carter.

15            THE COURT:  Is the Union good?

16            MR. GREENFIELD:  Yes, your Honor.

17            THE COURT:  Okay.  Where were we,

18   Question 30?

19            MR. MORRIS:  Yes.

20            MR. GILLIAM:  We had no other objections

21   to that question.

22            MR. MORRIS:  And I think that language

23   about RLA-protected rights carries through to 31 as

24   well.

25            THE COURT:  I think you are right.
```

```
 1                    So 31 now looks like this.
 2                    MR. GILLIAM:  No objection.
 3                    MR. MORRIS:  No objection for Southwest.
 4                    THE COURT:  Okay.  Question 32.  Front
 5    pay, Southwest.
 6                    MR. GREENFIELD:  We just renew our
 7    previous objections regarding front pay, your Honor.
 8                    THE COURT:  Sure.  But it is against
 9    Southwest.
10                    MR. GREENFIELD:  Oh, I apologize.
11                    MR. MORRIS:  We make that same objection,
12    your Honor.
13                    THE COURT:  Awfully charitable of you, Mr.
14    Greenfield.
15                    MR. GILLIAM:  No objection.
16                    THE COURT:  So I need to put my advisory
17    caveat in front of this.
18                    Here is how 32 looks now with the caveat.
19                    "Advice" spelled correctly, Mr. Hill?
20                    MR. HILL:  It is indeed, your Honor.
21                    THE COURT:  Okay.  So 32.  I will overrule
22    that objection from Southwest, but I'm putting in
23    the advisory condition.
24                    33, mitigation.
25                    MR. GILLIAM:  No objections.
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1995

 1              MR. MORRIS:  No objection, your Honor.
 2              MR. GREENFIELD:  None here, your Honor.
 3              THE COURT:  All right.  And then 34?
 4              MR. MORRIS:  Your Honor, we would just
 5    raise our objection that we don't have to show that
 6    Ms. Carter would have earned anything if she ceased
 7    looking for employment, that the damages should be
 8    cut off from the day she did that.
 9              THE COURT:  I understand that objection.
10    I will overrule that.
11              MR. GREENFIELD:  The Union echos that
12    sentiment.
13              THE COURT:  Understood.
14              I will overrule that as well.
15              MR. GILLIAM:  No objections from Carter.
16              THE COURT:  All right.  So I now need to
17    go back and undo the changes that I did to those
18    prior questions where we got caught in a tailspin
19    and I didn't see the forest through the trees.
20              So then we need to send y'all a clean copy
21    tonight that you can see.  We will print it off
22    tonight.  Look at it.  If there is, like, a
23    scrivener's error or something that you think is
24    inconsistent with how I ruled, let me know as soon
25    as you can.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 375 of 425   PageID 15778
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1996

1          Because, for example, if we get here at --
2   I will ask for 8:45 tomorrow.  I won't ask for 8:30
3   because we don't have plenty to cover tomorrow.
4          But if you've got some sort of error that
5   you found in the charge, not an argument of yours
6   that I have overruled, but like I did something
7   wrong based on what I told you I was doing, please
8   let us know by email because these things take
9   forever to print.  And if we print something, it may
10  have a cascading effect.
11         So please let us know by email if there is
12  something you think we've missed.  Hopefully, we
13  will be able to swap out a page and not have to
14  reprint the whole thing.  But then I will try to
15  read it at 9, and then we will roll into closing,
16  closing, closing.
17         Make sense?
18         Again, I guess I need to figure out
19  tomorrow on closing if they are saving a small
20  modicum of minutes for the final word, right?
21         MR. HILL:  We are indeed.
22         THE COURT:  How many, do you know?  I
23  should have asked Mr. Pryor before he left.
24         MR. HILL:  Mr. Pryor will have a better
25  sense of that in the morning.

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 376 of 425   PageID 15779
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1997

1          THE COURT:  Yes.  So I will tell you, in

2   the past, what I've done is I've let -- people tend

3   to reserve up to 10 minutes.  People who have asked

4   for more, I initially used to let go, and then

5   they'd have new arguments they bring in a rebuttal,

6   and then we've got to unwind it and I give more time

7   to rebut the new information that came in.

8          So 10 minutes, I'm perfectly comfortable

9   with saving that time out of closing for the final

10  word.

11          I'll just reiterate, and if y'all can tell

12  Mr. Pryor, if you can save your objections for the

13  end of that argument, unless someone has blown

14  through a motion in limine, right?  Stand up, look

15  at me, I will call a sidebar.

16          Otherwise, save your objections for the

17  end.  I will call a sidebar after everyone is

18  closing and see if there is anything we need to

19  address.

20          Other than that, any questions?

21          MR. GILLIAM:  No questions here.

22          THE COURT:  I'm really glad I listened to

23  you, Mr. McKeeby, on not keeping the jury here,

24  because that would have been bad.

25          MR. McKEEBY:  You can answer a question

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 377 of 425   PageID 15780
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1998

1  that I have, and that is when is the one time that a

2  photograph is not hearsay?

3           THE COURT:  The one time a photograph --

4           MR. McKEEBY:  Or is hearsay, I guess.

5           THE COURT:  The one time a photograph is

6  hearsay is when a criminal defendant is accused of a

7  scheme involving withdrawing funds and there is a

8  photograph of them withdrawing funds at Western

9  Union.  It is the proof of the matter asserted that

10 they were withdrawing funds.  But it's also a

11 statement of the party, a party admission.

12          And so it is a hearsay exception, while

13 hearsay all at the same time.

14          I have had that happen before.

15          No, that was you in the Western Union

16 video.  So it stays out under hearsay, it comes back

17 in under party statement.

18          Okay.  Any other questions?

19          All right.  I will see y'all tomorrow at

20 8:45, not 8:30.  Good luck getting your closing

21 materials together tonight, and we will finish

22 strong and give it to the jury tomorrow.

23          All right.  Court is in recess.

24          THE COURT SECURITY OFFICER:  All rise.

25          (Proceedings adjourned at 5:32 p.m.)

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 378 of 425   PageID 15781
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Page 1999

 1                    C E R T I F I C A T E

 2

 3              I, Kelli Ann Willis, RPR, CRR, CSR

 4   certify that the foregoing is a transcript from the

 5   record of the proceedings in the foregoing entitled

 6   matter.

 7              I further certify that the transcript

 8   fees format comply with those prescribed by the

 9   Court and the Judicial Conference of the United

10   States.

11              This 13th day of July 2022.

12

13              s/ Kelli Ann Willis
                Official Court Reporters
14              Northern District of Texas
                Dallas Division

15

16

17

18

19

20

21

22

23

24

25

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: $10,000..4

**$**

**$10,000** 1958:22,24
1960:1 1961:13,15
1990:15

**-**

**--there** 1967:5

**-o-** 1628:2

**1**

**1** 1701:21,22 1714:18
1726:19 1858:12,14,21
1859:13,18 1899:12
1902:1 1934:8,9,21
1935:11 1936:5,11
1939:7,8,14 1940:7,11,
14,23 1945:17,18
1979:17 1990:10

**1.3** 1972:18

**1.8** 1972:18

**10** 1655:1,3 1657:22,24,
25 1658:3,6 1664:16
1671:7 1696:19
1705:11 1714:11,22
1739:11,17 1863:20
1864:11 1947:3
1976:13 1997:3,8

**10,000** 1959:24

**10-day** 1703:15 1715:3,
4,17

**10-minute** 1739:5
1857:1,7 1925:3,10

**10-year** 1728:3

**100** 1688:17 1849:16

**107** 1642:24

**108** 1691:12

**11** 1667:22 1674:23
1685:6 1696:18
1863:21 1947:7,20,21
1948:8,17 1953:21
1954:15,17 1955:21

**118** 1704:19

**118.30** 1705:14

**118.61** 1705:17

**119** 1634:7 1635:22
1636:2 1708:14,17,22,
25 1709:3,5 1711:8

**119.16** 1712:8

**119.17** 1713:3

**119.5** 1711:15

**11:07** 1738:25

**12** 1822:13,14 1879:4,5
1948:18,20 1955:1
1957:12

**120** 1636:8 1747:12

**124** 1741:18

**12:24** 1811:21

**12:33** 1831:10

**13** 1874:21 1875:6,7
1882:18 1957:13,17
1974:13

**136** 1637:14

**137** 1638:1

**14** 1882:12 1974:25
1975:4 1980:11

**14th** 1911:2 1971:5,6

**15** 1711:16 1738:24,25
1750:19,21 1823:23
1828:3 1829:2,3,7
1830:6 1860:9 1880:6,7
1975:7,14,18 1984:20,
21,22 1985:19,20
1986:2

**15-minute** 1738:23

**152** 1878:18 1879:21
1883:3 1886:16,21

**152.4** 1877:17 1879:7

**15A** 1631:6 1632:9
1633:2

**16** 1667:22 1887:12
1896:13 1975:16,18
1976:1 1985:23 1986:2

**17** 1817:2,9 1932:9
1949:22 1976:4 1986:3

**17ish** 1932:4

**18** 1976:8,9 1984:24
1985:19 1986:7

**19** 1907:22 1910:23
1976:16,17

**1996** 1697:24,25

**1:33** 1820:2 1831:11

**2**

**2** 1634:8,20 1635:1
1636:3,5 1638:2,5,8
1667:22 1700:6,21,23
1701:8,10,20,23
1702:4,7,8,10 1703:23
1704:15 1706:4,20
1707:12,25 1708:1,9
1710:5 1711:3,11
1712:16 1714:8,18,22
1715:22 1716:5,14,17
1718:7 1724:8 1725:8
1726:19 1732:20
1733:18,22 1743:11
1747:4 1778:13 1834:4
1858:13,15,21 1859:13,
18 1864:21 1894:6,16,
18,21 1901:7,16 1902:1
1913:19 1939:11
1940:8,24,25 1979:17

**2,000** 1959:3

**20** 1817:2 1823:23
1958:24 1961:21

**20,000** 1959:24

**20-page** 1866:6

**2003** 1698:6,10

**2006** 1698:11

**2007** 1697:25

**2010** 1724:14

**2013** 1734:1 1761:8,16
1762:25 1849:15

**2015** 1684:4 1849:20

**2017** 1674:18,24 1684:4
1685:4 1696:6,16,20
1700:18 1761:16
1763:1,11 1971:5

**21** 1993:5,6,9

**21-Q** 1630:20

**22** 1917:20 1976:19,23,
25 1993:7,12

**23** 1778:13 1919:19
1977:2 1978:9

**24** 1727:12,19 1862:22
1978:11

**24-month** 1745:7
1746:15

**25** 1978:16 1979:22
1980:6,15 1986:14

**26** 1980:16,20,22
1986:15,17 1991:10

**27** 1980:19,21,22
1986:15,18

**28** 1986:15,19 1989:12
1990:22 1991:11

**28-year** 1665:19

**29** 1831:25 1987:9
1989:8,9 1990:23

**2:20** 1857:8

**3**

**3** 1635:11 1717:4
1737:12 1859:22
1860:3 1932:6 1940:16
1941:10,15

**30** 1707:5 1867:8,9,11,
18 1972:7 1990:23
1991:19 1993:18

**30-day** 1720:22 1721:5

**31** 1993:23 1994:1

**32** 1994:4,18,21

**33** 1994:24

**333** 1945:17,18

**34** 1934:6 1995:3

**36** 1630:4,11,13 1653:8
1667:11,12,18 1669:21,
22 1670:21 1671:6

**38** 1667:15

**4**

**4** 1870:18 1907:16
1941:21 1942:4,19

**40** 1718:17 1721:15 1867:18

**40.1** 1724:18

**40.3** 1724:5

**403** 1701:1 1803:22

**404(b)** 1637:17

**44** 1667:21

**45** 1752:6 1822:6 1824:3

**46** 1814:15 1829:4

**4:46** 1925:11

---

**5**

**5** 1853:4 1860:18 1942:10

**50** 1633:23 1634:5

**556** 1680:7 1698:4,15, 19,25 1699:14,23 1700:2 1701:16 1710:21 1723:22 1761:18 1762:24 1771:13 1834:24 1837:11 1838:10 1840:1,17 1841:9,14 1842:17 1843:6,14 1845:19 1846:11 1857:23 1863:19 1873:13 1881:12 1886:12 1887:10 1888:19,25 1892:14 1893:15 1894:6,7,12 1895:2,12,13 1896:20, 23 1897:25 1899:13,16 1911:17,24 1912:24 1914:6,10,12 1957:14 1958:1 1975:8 1976:5, 16 1977:5

**556's** 1876:23 1888:25 1890:10,15,18 1914:19

**57** 1631:8

**5:00** 1852:11

**5:32** 1998:25

---

**6**

**6** 1628:8 1822:14

**1860**:18,24 1926:6,7 1942:17,22,25 1943:1,7 1971:19,21

**6,000** 1963:20

**66** 1839:12 1928:15

**6th** 1709:11

---

**7**

**7** 1667:22 1860:24 1861:24 1862:11 1943:8 1944:3

**74** 1654:9

**74.5** 1654:10

**76** 1689:1

---

**8**

**8** 1664:20 1778:13 1861:24 1863:18 1926:8 1944:8,10,11, 17,20 1945:4,14 1946:4 1971:19,21,22 1992:5 1993:1,2

**8,000** 1959:2 1963:20

**8:00** 1926:6

**8:30** 1996:2 1998:20

**8:45** 1996:2 1998:20

---

**9**

**9** 1664:21 1667:22 1863:20 1944:10,13,17, 20 1945:10,15,17 1946:4,5,24 1996:15

**90** 1714:9

**98** 1642:24 1681:15 1849:16

**98.13** 1681:22

**9:00** 1852:21,24 1855:14,18

---

**A**

**aback** 1681:8

**Abercrombie** 1641:8, 10 1643:7,10 1647:15, 19 1648:9,12,13 1888:5,8,9 1891:19,22 1902:5,7 1905:13 1906:11

**abeyance** 1751:18,24 1837:3

**ability** 1722:23 1726:20 1769:16 1800:7 1822:1 1920:12 1961:14

**aborted** 1731:11 1764:3 1765:7

**abortion** 1650:19 1651:12 1735:1,5 1756:2 1763:18,19 1954:7

**abruptly** 1647:17,25

**absenteeism** 1722:19

**absolute** 1628:25

**absolutely** 1645:19 1732:19 1744:2 1754:10 1774:8 1797:10 1884:2 1935:16 1968:15,25

**abstract** 1650:8 1979:7

**abusive** 1883:5,14

**accept** 1716:18 1737:11 1973:12

**accommodate** 1642:5 1648:6 1650:5 1651:11 1756:6 1757:5 1843:2 1846:20,21 1850:19 1901:23 1907:8 1933:10 1948:13 1949:24 1953:11 1986:25 1988:4

**accommodated** 1649:13 1650:6 1651:6 1757:3

**accommodating** 1902:14

**accommodation** 1640:21,22,25 1641:5, 20,21 1642:3,11,19,21 1643:2,9,18,24 1644:1 1645:20 1646:16 1647:12,14,18,21,24

**1650**:11 1651:19,21,24 1652:1 1658:8,13,14,16 1659:5,21 1660:10,21, 24 1661:4,25 1662:6,7, 12,14,15 1663:3,20 1664:18 1671:21,25 1756:8,13,17 1758:7,12 1841:24 1846:19 1851:2 1902:22,25 1903:1,19 1904:5,8 1905:2,10,19 1906:22 1916:14 1932:7,9,12,24 1933:8,10,14 1943:10 1948:19,23,24 1949:5, 8,11,14,15,16,25 1950:10,12,14,19,21,24 1951:2,7,15 1952:20 1953:5,12,23 1954:9,20 1955:10,11,13 1956:4, 14 1983:9 1987:6

**accommodations** 1950:16 1951:25 1952:14 1956:2,7,14,18 1957:5,8

**accomplish** 1727:7 1888:1 1916:1

**accomplishes** 1915:1

**accordance** 1894:10 1948:22

**account** 1838:15,16

**accrue** 1721:20 1722:19,22

**accurate** 1650:15 1874:8 1904:5 1983:11

**accurately** 1889:24 1952:12

**accused** 1998:6

**Acklin** 1872:16

**acknowledge** 1635:3 1711:6 1821:25 1947:16

**acquired** 1724:13

**act** 1658:11,17 1659:8, 22 1660:14 1661:24 1662:14 1663:19 1708:3 1737:7 1756:14 1843:12 1849:10 1873:17 1874:5,6 1884:2,3,6,8,9,25

1944:13,14,21,23
1945:1,9 1991:2,25
1992:8,9,23,25

**acted** 1844:19,23

**acting** 1680:6 1756:12
1803:2 1838:4,12
1839:3 1840:17 1843:5
1844:13 1847:14
1848:9 1896:23 1898:1
1911:18 1912:8
1936:13 1938:8
1939:18

**action** 1655:11 1656:3,
6,13,15,18,19,22,23
1657:5,10,12 1663:16
1681:9 1693:16
1701:13 1794:11
1797:4,5 1807:9 1844:5
1846:17 1847:13
1849:17 1970:21

**actions** 1650:22
1716:11 1746:10
1767:23 1799:23
1841:7 1842:1 1843:19
1850:4 1871:15

**active** 1690:10

**activism** 1761:17

**activities** 1754:25
1834:8 1837:25 1838:6,
9 1840:22 1842:4,22
1845:3,12 1881:22

**activity** 1657:9,11
1659:20 1660:6,8
1663:14,17 1686:25
1754:12,14,17,23
1755:7 1758:2 1833:2
1834:18,22 1837:19,21
1838:3 1839:9 1840:6
1874:25 1875:16
1877:20,25 1878:4,12,
14 1882:20 1883:9
1886:21 1900:16
1944:13,21,25 1945:8
1991:2,24 1992:7,8,24

**acts** 1844:11 1860:24
1861:12 1870:11
1914:19

**actual** 1632:15 1633:2
1738:8 1895:5 1907:24
1908:6,15 1910:25
1989:17,21 1990:15,20

**ADA** 1936:19

**Adam** 1628:20 1743:5
1857:23

**adapt** 1915:11

**add** 1748:5 1907:4
1931:19 1933:15
1943:22

**added** 1721:4 1904:4
1978:9

**adding** 1899:25
1954:23 1970:17

**addition** 1698:5
1724:21

**additional** 1644:25
1688:4 1701:19 1706:9,
14,15 1714:21 1748:2,
11 1821:1 1822:21
1873:8 1885:1 1886:23
1896:19 1922:6
1934:17 1938:17
1939:16

**address** 1640:2 1641:9
1645:25 1647:4
1843:24 1845:18
1858:7 1878:5 1892:9
1997:19

**addressed** 1838:6
1840:16 1991:12

**addresses** 1892:1
1924:21

**addressing** 1651:16
1905:1 1918:6

**adds** 1879:25

**adequate** 1823:15

**adequately** 1827:22

**adhere** 1988:25

**adjourned** 1998:25

**adjustments** 1862:18

**administer** 1760:1

**administers** 1722:13

**administration**
1674:10 1699:4
1762:18

**administrative**
1702:14 1728:11

**admissible** 1635:1

**admission** 1998:11

**admit** 1669:22 1670:21
1680:8 1708:18,21
1711:3 1741:23,25
1914:13

**admitted** 1630:4
1633:25 1658:5 1667:4
1668:13 1671:3,5
1681:15 1709:2 1742:5
1747:9 1770:19
1930:15 1931:22

**admitting** 1708:25
1773:15

**adopted** 1991:9

**adoption** 1887:18
1938:16

**advance** 1664:24

**advantage** 1774:14

**advice** 1977:24 1978:6,
7 1994:19

**Advise** 1978:7

**advisory** 1920:11,22,
23,25 1921:4,25 1922:9
1977:10,14,16,18
1994:16,23

**affected** 1777:20,21

**affidavits** 1921:6

**affirmative** 1642:5
1755:12 1839:24,25
1840:1,7 1843:14,17
1881:16 1905:24
1941:24 1942:20
1943:23

**affix** 1931:11

**afford** 1773:7 1824:4

**affords** 1827:9

**AFL-CIO** 1707:15,18

**afoul** 1828:13

**African-american**
1799:12,18 1800:25
1802:13

**afternoon** 1743:3,4
1760:9 1855:24 1857:6

**age-old** 1820:6

**agent** 1729:21 1937:18
1938:5,8,9

**agents** 1938:13

**agree** 1657:3 1671:18
1716:9 1720:6 1761:1,2
1764:1 1767:22
1777:23 1783:21
1794:8 1796:24
1797:20 1810:5
1833:20 1849:4
1853:20 1917:15
1920:22 1962:14
1972:3 1990:21

**agreed** 1631:2 1706:23
1716:10 1718:1 1818:4
1848:23 1849:1 1850:1
1865:2 1936:25

**agreeing** 1656:24

**agreement** 1701:15
1714:15 1716:16
1718:14,21 1725:20,22
1726:5,10,13,15,17
1727:15,19 1729:4,7,
18,19,20 1730:14,18
1731:1,17 1732:11
1734:7 1737:3,11
1739:24 1744:19,22
1745:3 1746:17
1762:18 1842:25
1850:3 1971:10

**agreements** 1699:3
1719:14 1723:17
1730:9

**agrees** 1966:1,2
1983:23

**ahead** 1628:9 1630:12
1652:20 1653:6,18,22
1654:2 1661:16 1670:9
1678:1 1759:13

**aircraft** 1679:3 1699:21

**airline** 1664:8 1719:12
1724:12 1728:1

**airlines** 1658:22
1664:4,23 1665:9,20
1671:16 1674:8,22
1676:6 1682:15 1687:3,
5 1696:3 1697:14,22
1698:19,24 1699:14,20
1700:3 1702:12

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 382 of 425   PageID 15785

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022                   Index: Airlines'..argument

1703:25 1707:24
1714:14 1716:12
1721:14 1724:10,13,15
1725:1 1729:9,10
1733:8 1734:4,6 1737:7
1748:14,18 1754:2
1765:21 1787:20,24
1799:9,14,20 1801:2
1802:15 1806:22
1809:10,11 1810:2,25
1815:13 1816:6,13
1817:12 1818:6,16
1819:1,4 1857:20
1870:22 1882:25
1896:25 1898:3
1936:16,20 1937:13
1968:23 1969:15
1972:22,24

**Airlines'** 1887:2
1911:21

**airport** 1675:1,12
1680:15,16

**Airtran** 1724:11,12,14

**aisle** 1634:13

**aligned** 1827:18

**Alito's** 1647:19

**allegation** 1690:22

**allegations** 1688:5
1692:5,10,13

**allege** 1650:2 1895:1

**alleged** 1688:3 1690:11
1937:16

**alleges** 1649:24

**alleging** 1650:3

**Allied** 1941:25

**allowed** 1650:25
1651:2 1755:11
1757:24 1758:23
1774:8 1793:17 1834:1
1955:17

**allowing** 1905:2
1938:17

**alluded** 1715:1

**aloud** 1779:14 1814:16

**altered** 1924:11
1938:21

**altering** 1929:6

**alternative** 1893:7
1916:12 1919:25

**ambiguous** 1803:15

**amend** 1876:20

**amended** 1932:20

**amendment** 1792:2,
13,20 1796:12,19
1820:12

**American** 1882:25

**amicable** 1698:25

**amount** 1910:25
1958:6 1961:8 1963:8
1965:7,9 1967:2
1975:20 1980:23
1989:16

**amounts** 1908:25
1909:15 1966:10

**analogized** 1911:22,23

**analogy** 1969:11

**analysis** 1638:5
1686:24 1875:20
1889:18,19,22 1962:15

**analyzed** 1701:18

**anchors** 1952:6

**and/or** 1886:12,16,21,
24

**animal** 1962:22

**animosity** 1758:2

**answering** 1794:2,3
1796:7 1821:23

**answers** 1654:5
1686:13 1695:14
1800:18 1810:13
1970:5

**anti-union** 1808:13
1839:19 1849:15

**anymore** 1725:11
1731:7 1821:5

**apologetic** 1711:10

**apologies** 1744:7
1771:21 1875:13

**apologize** 1684:23

1779:4 1780:11
1804:24 1819:18
1879:2 1887:16
1890:20 1894:17
1895:22 1896:5
1904:14 1957:22
1960:18 1980:24
1994:10

**apostrophe** 1984:9,10

**apparent** 1641:5,21
1646:3 1758:13

**appeal** 1637:13
1701:11,22,23 1702:14,
16 1714:16

**appealed** 1737:11

**appealing** 1706:5

**appeals** 1701:17
1718:4 1726:18 1737:4

**appearances** 1628:9
1857:15

**appeared** 1711:12
1906:17

**appears** 1906:17
1982:19

**appellate** 1898:14
1934:16

**apple** 1881:19

**applicant** 1658:14,15
1659:12

**application** 1758:10

**applied** 1799:3
1871:14 1920:2

**applies** 1863:24
1899:22

**apply** 1672:7 1804:7
1842:6,23 1892:17
1912:2 1921:19

**appointed** 1698:7

**apportion** 1960:25

**apportionment**
1960:19 1963:11,15
1968:16,25

**appreciated** 1829:21

**approach** 1686:5
1695:3 1772:24 1773:1

1778:7 1784:25
1813:21 1814:11,22

**approached** 1768:16
1826:16

**approval** 1643:12
1664:24

**approve** 1633:15

**April** 1698:11 1709:11

**arbitrarily** 1869:24

**arbitrary** 1842:12
1844:1,5,7

**arbitration** 1703:18
1735:12,22 1736:13,15,
21 1737:12,23 1738:8
1739:23,24 1740:7
1741:9,15 1772:12,13
1773:9,11,13,22,25
1774:1,2,4,19,25
1775:1,15,18 1776:6,8
1777:15 1778:12,19
1779:8 1781:7,13
1828:6,8,12,19 1829:1
1834:4

**arbitrator** 1737:20
1740:15,16 1741:2,6,
14,21 1782:9 1783:4

**arbitrators** 1740:20,
21,22

**area** 1671:9 1696:17
1897:15

**argue** 1839:7 1850:6
1955:24 1967:12
1968:21

**argued** 1848:1,2
1851:25 1865:1 1881:9,
10

**arguing** 1641:8 1897:8
1968:12,13

**argument** 1637:18
1644:4,9 1757:18
1830:1 1848:2 1850:23
1855:8 1871:3 1891:15
1897:2 1912:5 1920:15
1936:1 1939:6 1947:16
1950:13 1953:14
1954:25 1955:9
1965:11 1967:18
1969:4 1975:25 1996:5
1997:13

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 383 of 425   PageID 15786

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022              Index: argumentative..bargaining

**argumentative** 1666:1

**arguments** 1823:9,14 1855:3,20 1882:6 1891:10 1949:1 1997:5

**arise** 1640:23

**arisen** 1729:12

**arises** 1651:20

**Arizona** 1674:17

**arose** 1675:5

**arranged** 1730:3

**arrest** 1930:6

**arrive** 1717:5

**art** 1912:7 1915:3

**article** 1707:15

**articles** 1705:2

**articulated** 1650:18 1651:1 1756:1

**asks** 1714:2

**aspect** 1893:19 1906:1

**aspects** 1661:1

**assert** 1886:19 1960:24

**asserted** 1960:23 1998:9

**assess** 1688:6 1722:17 1757:25

**assessed** 1987:23

**assessing** 1693:18

**assessment** 1716:6

**assignments** 1676:9

**assist** 1676:24 1677:1 1689:12

**assistant** 1674:15,19 1675:1,8,18

**assume** 1637:6 1901:17 1926:6 1985:12

**assuming** 1748:1 1824:10 1831:25 1852:19 1925:22 1962:25

**asterisk** 1865:19

**astute** 1743:19

**at-will** 1936:21

**Atlanta** 1724:13

**attachment** 1723:10, 12

**attempt** 1840:15 1988:8

**attempted** 1652:1 1840:18 1894:8,12 1895:2,14

**attempting** 1760:12 1907:5

**attempts** 1872:11,12, 13 1873:3 1914:19

**attend** 1690:3,15

**attendance** 1722:13, 18

**attendant** 1669:17 1679:1 1696:12 1697:21,23,24 1714:14 1722:12,15 1734:6 1763:5 1765:14 1766:19 1792:25 1793:21 1794:7,9,25 1805:24

**attendants** 1668:9,18 1675:3,5 1676:4,8,12 1683:24 1697:9,14,17 1698:4 1720:10 1734:14 1846:2

**attended** 1679:21

**attention** 1726:4 1747:16 1855:23 1856:3

**attentive** 1987:6

**attorneys** 1864:16

**attributable** 1970:20

**Audrey** 1682:11,14 1688:13,20 1690:12,20 1711:24 1755:6 1762:18,21 1769:12 1785:17 1799:6 1806:19 1809:24 1810:22 1835:12 1838:14,16 1843:13 1847:24 1896:23 1898:1 1936:12

**authenticate** 1668:23

**authority** 1717:2 1872:13 1911:25

**authorized** 1718:22

**avenues** 1800:4,14 1802:18

**aviation** 1720:13 1941:25

**avoid** 1642:4 1910:11 1915:12 1934:16 1959:7 1960:11 1966:8 1970:21

**avoiding** 1902:14 1964:3 1980:22

**avoids** 1972:14

**award** 1735:12,15,22 1911:15 1970:19 1971:19 1972:12,21 1973:1 1976:13 1990:16

**awardable** 1966:13

**awarded** 1912:12 1920:6 1981:14 1990:15

**aware** 1658:15 1659:12,14,19,22 1660:2,5,20 1662:5,19 1665:22 1671:20,24 1676:20 1703:4 1732:21 1733:3,4,19,23 1756:6,13 1757:22 1758:8 1843:16 1979:19

---

**B**

---

**B-U-R-D-I-N-E** 1708:6

**baby** 1678:8 1763:19 1764:3 1765:7

**back** 1631:2,12,21,24 1632:12,22 1633:9,11, 16 1636:12 1639:14,21 1641:12 1652:15 1653:16 1670:4 1672:23 1673:8 1685:21 1690:24 1696:19 1710:24 1711:2 1712:12,14

1713:25 1714:25 1716:24 1717:22,23 1718:2,5 1719:10 1720:1,7,17 1722:3 1724:6,18 1727:8,10 1728:12,16 1731:5,13, 15,21 1732:1,3 1739:11 1742:2 1749:8,18 1751:5,6,21 1752:8 1759:6,9,25 1761:8 1769:24 1770:19 1771:25 1779:4,8 1780:21 1800:22 1804:5 1809:21 1810:19 1820:1 1828:15 1830:3,4 1831:1,11,19,22 1832:1 1836:16 1837:1 1843:23 1850:20,22 1852:4 1853:22 1857:2, 14 1864:19 1866:5,8 1867:10 1897:2,18 1898:17 1904:22 1905:6 1908:18 1910:10,16,21,25 1911:9,10 1914:7 1916:13 1917:19 1920:13 1923:7 1925:4 1939:14 1940:1 1949:20 1951:2,3 1952:6 1958:11 1959:8 1960:13,20 1961:3 1964:3,5 1965:4,5,18 1967:6,10,14,15,16,21, 24 1968:6,11,14,21 1969:16,18 1970:11 1973:10,16 1974:13,16 1980:4,14 1988:12,16 1989:5 1992:20 1995:17 1998:16

**background** 1698:14 1728:3

**backtrack** 1798:4

**backwards** 1726:11 1826:6

**bad** 1699:8 1842:1,13, 19 1843:25 1844:7,23 1906:14 1936:22 1954:7 1985:1 1997:24

**bank** 1722:4

**Baptist** 1734:23

**bargaining** 1699:2,3

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 384 of 425   PageID 15787
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022            Index: Barnett..bringing

1701:15 1726:13,17
1729:20 1732:11
1734:7 1842:25

**Barnett** 1680:4

**base** 1664:7 1669:19
1670:18 1674:14,15,16,
19,20 1675:1,3,8,18,19
1684:17 1685:10,12
1689:21 1693:5
1701:24,25 1732:14

**based** 1672:20 1684:22
1685:18 1688:6,17
1691:23 1719:15,18
1724:12 1725:14
1746:5 1749:4 1782:5
1790:4 1816:3 1824:22
1830:17 1836:6
1841:20 1844:3 1852:4
1869:14 1870:5
1883:25 1889:14
1912:17 1923:19
1925:8 1934:25 1955:5
1996:7

**bases** 1684:15 1685:5,
6,7,8 1696:12,18
1697:18 1700:12

**basic** 1665:23

**basically** 1737:12
1746:13 1858:4
1884:15 1888:20
1902:7 1993:3

**basis** 1643:1 1667:25
1848:23 1884:7
1887:17 1968:9

**bathroom** 1925:3

**baton** 1653:20 1759:6
1824:14 1855:5

**bearer** 1985:1

**beaucoups** 1832:5

**Beautiful** 1986:9

**Becky** 1704:12 1713:18
1743:10 1744:2

**bed** 1723:14 1725:23
1731:15

**bedtime** 1927:4

**began** 1855:7

**beginning** 1701:11

1763:1 1789:4 1810:19
1825:9 1847:9

**begins** 1682:7

**behalf** 1628:19 1645:23
1843:6,13 1857:22

**behavior** 1687:23
1688:3 1690:11,13

**behemoth** 1852:10
1858:9

**behold** 1629:3

**belatedly** 1738:18

**belief** 1650:18 1651:1,
15 1660:7,13 1661:4
1663:1 1755:25 1758:1
1842:3 1902:15 1904:9
1932:13 1948:2 1954:6
1983:8

**beliefs** 1642:8 1661:21,
22 1672:3,8 1712:25
1713:1 1735:1 1755:22,
23 1758:10 1789:1,13,
15 1790:16,25 1795:10
1796:6 1797:23
1798:13,22 1839:8
1843:21 1845:25
1848:25 1888:23
1889:2,6 1890:4,9,17
1892:22 1893:13,20
1894:14 1898:8,24
1899:4 1901:8 1905:16
1906:2 1907:9 1947:12,
22 1982:14,18,21
1983:14,20 1984:12
1986:25 1988:4

**believed** 1654:20
1706:11 1710:16
1809:24 1842:2,20

**belonged** 1937:17
1938:3

**bench** 1989:5

**benefit** 1920:19

**benefits** 1888:6
1909:12,21 1910:1,2,6,
7 1920:6

**bent** 1826:6

**bet** 1921:17 1925:20

**Beth** 1704:13 1743:10
1748:4

**bets** 1629:1

**bid** 1719:16

**big** 1798:19 1908:13

**Bill** 1792:22

**bind** 1847:15 1938:12

**binder** 1632:16

**binders** 1633:17

**binding** 1920:23

**bit** 1644:14 1648:25
1679:23 1687:19
1697:2 1706:17 1718:5
1736:11 1743:8 1744:7
1761:6 1768:12
1803:15 1809:23
1816:10 1837:9
1876:10,11 1910:5
1957:23 1963:10
1981:6

**bites** 1881:19

**blank** 1767:11

**blanks** 1927:9

**block** 1879:3

**blocked** 1843:8

**blocking** 1952:1
1954:2,3

**blow** 1671:8 1713:20
1719:3

**blown** 1997:13

**board** 1694:13 1698:6
1787:22 1788:2 1790:5,
7 1799:12 1802:23
1804:10 1805:21,23,25
1806:1 1809:7,13
1871:16 1911:25

**Bobby** 1628:12
1857:19

**bore** 1867:22

**boringly** 1855:19

**Bostock** 1891:25

**bothered** 1777:25

**bottom** 1681:24
1691:15 1711:16
1747:17 1882:19
1899:4 1949:21

**bound** 1632:12
1922:10

**bounds** 1827:15

**box** 1650:11 1686:5
1695:3,4 1759:14
1821:5 1836:8

**BP** 1713:17,18

**breach** 1864:20
1869:23 1971:12

**breaches** 1844:16
1871:10 1872:5,10

**break** 1652:9,11
1667:23 1684:11
1709:18 1735:19,23,25
1738:14,16,18,24
1739:5 1811:21 1821:7
1836:16 1856:11
1857:1 1925:3 1965:13

**breakdown** 1697:3

**breaking** 1959:13

**breakout** 1979:21

**breaks** 1820:9

**Brian** 1628:16 1857:21

**brick-and-mortar**
1685:6

**briefing** 1887:16
1912:13 1920:3,19
1958:13 1968:5
1990:11

**briefly** 1645:15
1674:24 1701:8
1734:25 1751:25
1757:16 1827:5 1926:3

**bright** 1917:18
1959:12,17

**bring** 1639:24 1652:8,
16,21 1653:7 1667:12
1668:24 1706:6,14
1727:8 1739:13
1742:10 1759:9
1773:24 1800:9,10
1804:19 1832:1,11
1852:4 1853:21
1868:16,17 1954:15,16
1997:5

**bringing** 1945:25
1956:17

**brings** 1851:7 1918:21

**broader** 1987:2

**broke** 1934:4

**broken** 1644:17
1957:24

**brought** 1684:10
1706:10 1726:3
1918:20 1958:9

**bucket** 1822:9 1823:7

**budget** 1699:24

**build** 1728:16

**building** 1771:13

**builds** 1728:14

**bullet** 1711:18 1719:3,
22 1720:19 1722:7
1724:19 1727:12,24
1728:10,19 1729:3

**bullets** 1726:23

**bullying** 1725:2 1937:5

**burden** 1642:4 1757:2
1893:2 1903:8,10
1924:5

**burdens** 1827:19
1844:9 1903:9

**Burdine** 1635:24
1708:6 1709:10
1715:13 1730:22

**business** 1664:8
1668:22 1670:18
1714:23 1727:18
1769:22 1777:10
1810:3,5 1838:17
1903:23 1937:2,3

**but-for** 1889:13,18,22
1891:2,5,6 1892:4

**bylaws** 1699:25
1733:10

C

**C-1** 1887:8,9,13
1888:15 1892:9
1893:24 1894:3,22,24
1895:10 1896:8 1932:4

**C-2** 1896:12,14

**C-3** 1901:23,24 1902:18
1905:9 1906:5,19,20,24
1907:5,18

**C-4** 1906:21,25

**caffeinated** 1855:18

**calculation** 1963:4

**calibrate** 1752:16

**call** 1651:17 1672:24
1680:5 1685:6 1694:24
1701:20 1717:2
1722:24 1725:23
1734:5 1749:8,18
1750:13,15 1751:5
1752:7 1759:6,10,15
1766:8,13,14 1767:3
1803:9 1805:11,22,24
1806:1,3,5 1809:8,14
1816:9 1820:19 1852:8
1853:15 1854:6,8
1997:15,17

**called** 1641:11 1700:6
1718:13 1721:17
1732:21 1733:3 1737:6
1739:7 1750:12
1759:21 1762:6 1763:8
1766:18,24 1784:14
1801:5

**calling** 1655:3 1751:6

**calls** 1673:3 1685:25
1722:16 1723:23
1807:3

**candid** 1637:4

**cap** 1967:11

**capable** 1743:19

**capacity** 1765:22
1800:8 1838:5,13,25
1839:3 1840:17
1844:11,14 1847:10,12,
14,18 1848:10 1850:22
1896:24 1897:3 1898:2
1911:19,20 1912:7,9
1936:14 1938:9,11,19
1939:18

**capital** 1869:15

**capped** 1958:21

**caption** 1679:1

**captures** 1988:14

**Caravan** 1872:17

**care** 1652:24 1662:17
1744:4 1790:10

**careful** 1717:6 1855:23
1856:3 1987:6

**carefully** 1774:2

**carries** 1993:23

**carry** 1984:24

**Carter** 1628:10,11
1629:22 1634:8
1635:23 1636:9
1637:15 1639:9,18
1641:3 1643:6 1644:5
1646:9,24 1648:22
1649:2,8,18 1654:13
1655:4,11 1675:11
1676:19 1680:6,8
1681:25 1688:14,22,24
1689:17,20 1690:4,8,23
1691:25 1692:6,12
1693:2 1701:7 1702:15
1704:14 1706:24
1707:10 1710:15
1711:10 1714:2 1715:5,
23 1717:11,22 1718:22
1720:15 1725:12
1726:12 1729:18
1730:18,23,25 1732:21
1734:12 1735:4
1737:10 1741:8
1743:11,23 1744:4,14
1745:1,3 1746:18
1747:5,6,24 1748:8,13,
16 1750:13,15,17
1754:1,11 1755:20,22
1756:21 1757:3
1758:18,23 1759:12,13,
23,24 1760:2,3,9
1764:21 1766:23
1770:13 1771:19
1776:2 1778:12,25
1779:7 1781:5 1782:4,
22 1785:7,16 1787:2
1788:20 1792:13
1793:5,15 1794:13,20
1795:7 1800:12,15
1801:22 1806:10,17
1809:4,12 1812:21
1813:12 1814:2
1817:21 1818:17
1819:14 1820:19
1821:4 1823:16,24
1827:22 1828:4

1830:13 1832:24
1836:7 1837:16 1838:5,
14 1839:10,11,12,19
1840:4,18,25 1842:8,16
1843:1,6,8,13,20
1845:20 1846:21
1849:5,14 1850:1,13,16
1851:7 1855:4 1857:19
1864:18 1869:22
1875:15 1876:23,24
1877:18,23 1879:9,15
1881:22 1886:19
1888:25 1889:16
1890:2,6,11,18 1892:11
1893:10,12,18 1894:2,
7,19 1895:15 1896:24
1897:7 1898:2 1899:14,
16,20 1902:1,8,12,13
1910:12 1911:24
1913:17 1916:3 1918:4
1920:13 1923:12,14,20
1936:11,12 1937:10
1939:10,12 1944:19
1945:6,8 1946:25
1947:4,13 1948:1,9
1949:25 1950:14,19
1951:1,8 1954:3
1957:16 1972:13,15
1974:18 1975:3,15
1976:2,15,23 1978:2
1979:19 1980:13
1983:13,23 1984:7,8,11
1986:1 1988:1,3
1992:6,7 1993:11,14
1995:6,15

**Carter's** 1642:3
1647:16 1649:17
1650:17 1652:2
1654:14 1671:19
1678:13 1690:19
1693:8 1700:23 1702:7,
10 1703:23 1706:5,10
1716:11 1719:8
1732:15 1733:19,24
1740:13 1746:10
1754:22 1756:7,19
1758:9 1764:15 1839:8,
16 1841:10 1845:2,23
1847:22 1848:5,15,18
1864:1 1874:25
1875:16 1881:13
1883:13 1887:9 1889:1,
5 1890:3,8,16 1892:21
1894:8,13 1895:3
1896:20 1897:1 1898:4
1913:2,15 1914:3,15

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 386 of 425   PageID 15789
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022              Index: carved..circumstance

1916:16 1932:16
1954:5 1981:7 1983:20

**carved** 1739:8

**cascading** 1996:10

**case** 1630:6 1633:13
1641:10,11,12 1643:4,
11 1644:3 1647:10,11,
16 1648:11,12,21
1649:11,21 1662:20,21
1673:12 1678:22
1691:9,24 1702:10,25
1705:4 1706:6,10
1708:3,5 1714:22
1715:2 1716:6 1718:12
1719:19 1721:24
1722:20 1728:4,6
1731:23 1732:22
1737:10 1738:21,22
1743:20 1744:5 1748:2,
15,20 1749:20 1750:7
1753:3,15,17 1758:5
1759:15,20 1760:20
1792:14 1796:14
1814:3 1819:22,25
1820:8 1821:6,17,21
1823:4,18 1824:24
1825:10 1826:8,16
1827:19 1831:22,24
1836:11,19 1844:2
1846:15 1852:6 1854:9,
11,14 1855:5,7,21
1856:6,7,8 1864:1,17
1872:16,17 1878:19
1882:24 1883:15
1884:1,6 1885:7
1887:25 1888:4,6,9
1889:21,24 1895:1
1904:7 1914:16 1915:4,
12 1916:3 1930:3,17
1931:7 1940:13,17
1943:10 1951:12
1952:17,20,25 1953:1,
5,8,10,16,19 1955:6
1956:19,25 1959:23,25
1961:11,12,14 1962:1,
2,18,21 1969:6 1971:18
1979:7,10,20

**cases** 1641:1 1643:5,
13 1644:4,25 1650:1,14
1651:3,17 1716:23
1718:24 1854:6
1872:24 1873:1
1903:14 1924:7

**cash** 1633:9,12

**cast** 1985:15

**catch** 1876:11

**categories** 1756:10
1883:19 1885:16
1908:23 1978:20
1982:24

**category** 1884:24
1885:8 1909:6 1965:14
1979:9,11

**caught** 1869:11
1995:18

**causation** 1851:6
1900:3

**caused** 1851:8 1872:7
1894:7,12 1895:14
1971:2,3 1972:14
1974:17 1986:13

**cautionary** 1970:17

**cautioned** 1664:12

**cautiously** 1974:7

**caveat** 1807:1 1920:25
1921:4,25 1973:6
1994:17,18

**caveats** 1781:10
1782:7

**CBA** 1838:19

**cease** 1923:24

**ceased** 1923:20 1924:9
1995:6

**ceiling** 1789:18

**certainty** 1990:4

**cetera** 1699:25 1873:18
1903:13 1936:19

**chains** 1752:4

**chair** 1731:22 1838:20

**Chalmers** 1644:20
1647:5,10

**chambers** 1958:11

**chance** 1717:25
1718:11,14,21 1723:16
1725:19,21 1726:10
1727:15,18 1730:9,13
1731:1,9,17 1737:11

1744:19,22 1745:2
1746:17 1852:9

**chances** 1731:10

**change** 1644:18
1872:23 1873:5 1876:3,
7,13 1879:20 1917:1,2
1933:2 1943:20 1945:2,
5 1949:3 1950:11
1978:5 1979:13 1980:3
1983:24 1986:18,19
1992:17

**changed** 1637:9
1745:2 1848:2,3
1862:5,25 1916:8
1955:16 1991:23
1992:4,20

**changing** 1730:17
1862:21 1875:22
1876:10,13 1916:6
1918:24 1956:4
1981:18 1982:8
1992:22

**Chapo** 1633:11

**characteristics**
1743:25

**characterization**
1655:19

**characterize** 1877:21

**characters** 1985:15

**charge** 1629:13,15
1630:1 1631:11 1632:2
1635:12,13 1639:15,21
1642:18 1648:5 1832:3,
7,8 1847:12 1852:10,
14,20,22 1853:2,4,5,19
1854:25 1855:3,7,13,19
1856:12 1857:3,5,16
1858:1,3,9 1861:3,8
1866:4 1868:1,19
1870:13,17 1874:17
1883:18 1887:19
1895:24 1897:16
1905:14,23 1906:11
1916:23 1917:19
1926:12 1933:15
1941:24 1942:21
1943:23 1949:18
1950:23 1951:6
1952:22 1996:5

**charge-wise** 1629:19

1647:3

**charged** 1954:19

**charges** 1800:9,11
1849:20

**charging** 1872:23

**charitable** 1994:13

**charlene** 1662:21
1680:6,23 1681:6
1682:3 1683:8 1688:13,
22 1759:12,23 1760:3
1839:18,21 1847:22
1857:18 1908:10
1913:2 1914:14 1916:3
1919:5,8,15 1922:23
1937:10

**Charlene's** 1682:24

**Charter** 1888:21

**Chase** 1686:22

**cheaper** 1632:23

**check** 1677:13 1720:16
1721:23 1728:3
1931:23,25

**checked** 1701:18

**choice** 1711:24

**chopped** 1849:6

**chose** 1737:10

**Chris** 1680:5,6 1839:21

**Christian** 1650:19
1732:16 1734:20
1789:1,13,15 1790:25
1796:6 1798:13
1899:25 1900:7

**Christianity** 1644:6

**Chrysler** 1883:1,15

**church** 1734:22,23
1983:17

**Circuit** 1641:11,18
1643:4,11 1884:1,6
1885:7 1887:20 1904:7
1940:6 1955:6

**circulate** 1651:14

**circulated** 1935:8

**circumstance** 1643:17
1787:21 1935:1

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 387 of 425   PageID 15790
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022          Index: circumstances..completed

1952:13

**circumstances**
1702:17 1787:12
1797:4 1883:6,8 1907:7

**circumstantial** 1860:3

**citation** 1872:13,18

**cite** 1641:1,10 1643:4,
12 1644:4 1651:3
1920:3

**cited** 1649:21 1872:17,
19 1924:7

**cites** 1643:11 1647:5

**claim** 1650:4,5 1661:10
1723:22 1755:19
1756:6 1757:21 1758:7
1770:2 1837:14 1841:9,
14 1842:11 1843:3
1847:1 1850:19 1851:6
1873:13 1877:22
1887:9 1896:21 1897:8
1948:24 1983:5,7
1990:2 1991:17

**claimed** 1949:6,9
1951:12 1952:17,20

**claiming** 1777:20

**claims** 1648:6 1649:23,
24 1729:10 1754:2,7
1792:14 1821:19
1828:10 1834:7
1837:11 1846:10
1847:5,8 1863:18
1864:1,2 1865:14
1866:7 1877:18,24
1878:16 1879:9
1887:19 1897:10
1943:11 1952:24
1976:5 1981:17

**clarification** 1700:4
1730:15 1981:17

**clarify** 1682:3 1772:10
1897:7 1955:3

**clarifying** 1677:5
1723:2

**clarity** 1754:9 1798:5
1865:6 1879:25
1891:22

**class** 1900:6,7,10,17,
23

**clause** 1746:15

**Clayton** 1891:25

**clean** 1695:17 1763:1
1828:20 1995:20

**cleaner** 1981:24

**clear** 1629:2 1648:17
1649:1 1650:21,23
1724:23 1725:7
1744:10 1746:20
1756:20 1768:13
1780:3 1803:14 1834:6
1840:20 1853:11
1869:3 1877:6 1878:14
1886:8 1890:1 1891:17
1955:15

**clearer** 1891:16 1916:8

**clearing** 1628:24

**clemency** 1839:1

**clerk** 1673:20 1686:10
1695:7 1760:4 1987:1

**Click** 1839:21

**clicked** 1679:12

**client** 1822:2

**client's** 1827:15

**clients** 1641:16

**clock** 1722:22 1752:12

**clockwork** 1766:7

**close** 1852:7,8
1853:22,23 1854:22,23
1911:9 1927:3

**closed** 1734:5 1753:22
1854:15,18,20 1855:11
1925:23

**closely** 1888:5

**closer** 1965:24

**closes** 1854:13,14

**closing** 1662:24
1822:3,5,12,18,20,25
1823:5,7,15 1824:6,9,
10 1827:23 1829:14,17,
19,20 1830:1 1852:18
1854:17 1855:3,20
1882:5 1925:24
1926:10 1928:10
1996:15,16,19 1997:9,

18 1998:20

**closings** 1829:23

**Cloutman** 1628:20
1857:23

**clump** 1822:18

**cluster** 1628:25

**code** 1773:9

**cohesiveness**
1979:15

**collaboration** 1693:6

**collective** 1699:2,3
1701:15 1705:4
1726:13,17 1729:20
1732:11 1734:7
1842:24

**combinations**
1955:25

**comfortable** 1825:7
1918:19 1997:8

**comment** 1767:22

**comments** 1646:10
1839:17 1841:10,17

**commitments** 1731:5,
6

**committed** 1706:24
1725:8

**committee** 1838:20

**common** 1700:1
1723:16 1982:17,19

**communicate** 1769:17
1786:18

**communicated**
1652:4 1767:7,13,14
1769:4,12

**communicates**
1842:21

**communication**
1661:23 1717:16
1747:23 1767:20
1769:21 1770:22
1883:4

**communications**
1838:7 1843:9 1845:1
1848:17,18 1849:25

**companies** 1737:8

**company** 1641:16,17
1646:14 1655:6 1672:6
1697:10 1699:20
1701:13 1708:8
1710:17 1712:14
1714:20 1719:9 1720:1,
25 1724:24 1725:13
1728:12,25 1729:9
1730:4 1740:19,22
1741:1 1746:13 1757:2
1766:8 1769:21,25
1771:14 1777:9 1801:6,
20,24 1804:12 1805:4
1806:6 1809:15
1834:19,21 1848:6

**company's** 1726:3

**compare** 1862:18

**compared** 1638:19

**compassionate**
1735:3

**compelled** 1635:17

**compelling** 1731:4
1744:16

**competently** 1985:7

**complain** 1656:5,10,
14,17,19,21,25 1657:4,
9 1682:4,5

**complaining** 1663:15

**complaint** 1646:11
1655:5 1676:22
1683:25 1688:13
1694:12 1726:1 1763:4
1766:8 1769:24
1790:13 1806:4
1809:20 1819:4
1838:18 1839:11
1840:23 1913:2,15,16,
19 1914:4 1915:2,13
1916:10 1918:4,15,25

**complaints** 1676:18
1678:18 1682:6,7
1683:24 1684:7,12,13,
15 1685:9 1835:10
1914:15,16

**complete** 1631:1
1732:7,8,13 1962:8

**completed** 1720:8,9

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 388 of 425   PageID 15791

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                    Index: completely..continue

completely 1745:12,15
1757:20 1826:16

completeness
1726:22

complied 1826:8

comply 1724:24
1827:2

comport 1668:6

compound 1659:23
1665:11 1811:6

computer 1664:1
1780:19 1858:9

concede 1954:8

concept 1795:15
1901:6 1953:18
1954:16,17

conceptions 1828:14

concepts 1903:24

concern 1682:6 1866:2
1875:19 1876:5 1889:8
1892:19 1893:2
1914:18 1970:23
1987:18

concerned 1764:24
1821:11 1865:20
1867:10 1930:23

concerns 1675:25
1688:20 1690:22
1725:13,16 1868:4
1930:1 1956:17

conclude 1910:12

concluded 1669:3
1736:4 1752:23
1775:19 1815:23
1817:17

concludes 1742:9

conclusion 1635:17
1660:11 1723:24
1729:1 1807:4 1920:10

conclusions 1691:8

concrete 1823:13,20,
22

concurrence 1647:19

condition 1938:21
1994:23

conditioning 1940:3,
19

conditions 1716:24

conduct 1682:24
1686:24 1689:22
1708:1 1721:4 1758:17
1871:15 1883:20
1887:2

conducted 1675:6
1691:3

conducting 1676:23
1687:16 1688:9 1694:8

conference 1639:15
1704:1 1832:4,7
1852:10,15,20 1853:3,
6,19 1856:12 1857:16
1858:1 1866:4 1868:20
1870:18 1874:17
1882:23 1917:19
1920:3

conferred 1715:5,10,
11

confine 1988:14

confirm 1925:25
1930:3

conflict 1649:2,4
1650:17 1755:20
1758:9 1904:8 1916:14
1932:13 1947:20,21
1948:11 1953:24
1954:5

conflicted 1672:3
1948:3

conflicting 1642:6
1648:7,8,17,18,19,24
1902:3 1932:14

conflicts 1726:21

conform 1951:6
1993:1

conforming 1944:19
1980:3,12

confrontational
1825:19

confronted 1821:21

confuse 1875:19
1901:4

confused 1785:19
1946:6,9

confusing 1648:25
1864:2 1913:20
1916:20 1932:22
1933:6 1964:13 1981:9
1988:7,24

confusion 1910:11
1932:25 1934:16
1966:16 1970:7

congratulate 1628:23

Congratulations
1948:20

Congress 1884:11
1936:25

conjunction 1693:12

conjunctive 1845:8

connected 1878:7

connection 1677:4
1689:16,19 1732:15
1736:13

consent 1978:7

consented 1920:24

consequence 1797:3

consequences
1796:21,24 1808:13

consideration 1748:2
1914:21

considerations
1825:24 1844:20
1845:5 1913:13

considered 1661:5
1706:8 1745:6 1851:18
1918:5

consisted 1697:16
1706:3

consistency 1899:5
1943:6 1944:10
1954:14

consistency's
1954:18 1984:3
1992:16

consistent 1638:10
1775:14 1776:5
1777:14 1817:15
1864:24 1865:10

1898:24 1933:11
1949:18 1952:16,21
1955:21 1960:10
1964:1,2 1982:13
1992:11

consistently 1970:9

constant 1825:12

constituency 1844:21
1845:9,11,13

constituents 1748:19

constitute 1903:9

constituted 1887:1

constitution 1733:11,
12,15 1792:2

constraints 1789:16

Construction 1882:25
1883:7,11

construe 1649:16

contact 1658:16
1728:15

contacting 1728:13

contained 1886:25

contend 1965:21
1966:15

content 1705:24
1867:21 1938:18

context 1668:7
1676:21 1677:15
1678:17 1706:9,15
1718:12 1723:16
1726:7 1730:8 1758:17
1777:18 1778:2 1788:6
1797:2 1807:12 1810:3,
5 1818:12 1884:12,13
1920:18 1962:1
1966:21,24

contexts 1884:18

contiguously 1937:18
1938:4

contingent 1985:11

continuation 1705:16,
18

continue 1637:10
1673:23 1701:5
1703:20 1742:18

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 389 of 425   PageID 15792
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                    Index: continued..court

1816:25

continued 1642:3

continuing 1772:14
1883:12

continuous 1820:10

contract 1701:16
1714:16 1716:16
1722:12 1762:17

contractually 1676:8

contradiction 1773:21

contradicts 1649:15

contrary 1756:3
1905:5

contributed 1876:22

contrition 1776:3

control 1632:4 1633:15
1897:15

conversation 1745:5,9
1940:1

conversations
1729:17,24 1730:2,6
1843:7

convert 1721:4

convince 1747:5

convinced 1718:7
1731:14

copied 1838:18

copies 1632:12 1857:4

copy 1631:1,6,17,18,
21,23,25 1632:2,3,4,5,
8,15,25 1633:3,15
1778:10 1923:3 1989:6
1995:20

core 1883:18

Corp 1883:1

corporate 1628:21

correct 1636:16
1653:2,20 1658:25
1659:9 1671:13,16
1684:18,19 1685:3
1689:13 1691:5
1693:20 1697:1
1700:24 1705:9 1709:5
1715:23 1716:19

1724:16 1725:9,10
1739:25 1740:8,14
1743:12,13 1746:24
1747:1 1761:9,10,14,15
1762:19,22 1763:3,15
1765:12,23 1766:9
1770:20 1771:8,23
1775:9 1776:14
1780:16 1783:4,8,11,22
1787:12,17,21 1790:25
1791:18 1792:1
1795:11,24 1797:1
1798:13,17,23 1799:9,
10,15,16 1801:25
1802:16 1804:12
1805:5,22 1806:1,12,22
1807:2 1808:15 1816:6
1817:25 1819:1
1828:13 1834:3,10,15
1862:9 1866:14 1878:9
1881:6 1887:15 1891:6,
8 1897:11 1899:2
1926:16 1954:13
1991:20,21 1992:25

corrective 1693:16

correctly 1658:18
1677:19 1679:20
1715:16 1723:9
1733:23 1994:19

correspondence
1702:18

corrupt 1834:24

corruption 1761:17

costumes 1793:10

counsel 1708:12
1738:13 1788:15
1811:20 1825:8,16
1834:16 1925:24

counsels 1644:20

count 1773:6 1829:3

counted 1849:16

country 1676:7
1699:22

county 1891:25
1930:17

couple 1640:14
1652:15 1707:8
1709:11 1715:1 1814:4
1844:9 1864:18

1876:16 1925:8

court 1628:3,4,13,17,
22 1630:9,16,24
1631:23 1632:16,18
1633:8 1634:4,11,14,
18,24 1635:16,22
1636:2,6,18 1637:5,24
1638:9,17 1639:8,13
1640:6,15 1641:7,23
1642:25 1643:13
1644:7 1645:11 1646:2,
18 1647:1,7 1648:1
1649:4 1652:8,12,17,
19,20,25 1653:3,11,14,
16,25 1655:20,25
1657:18,20,25 1658:3
1659:25 1660:18
1661:12 1662:4 1663:6,
8,11 1665:14 1666:2,
16,19,24 1667:3,10,15,
20 1668:20 1669:5,6
1670:1,10,25 1671:3,23
1672:10,13,16,19
1673:2,5,9,15,21
1683:12,19 1685:15,17,
20,23 1686:2,4,11
1693:22 1694:17,23
1695:2,8,11,17,21
1701:2 1708:17,20,23
1712:22 1717:13,17
1723:25 1735:8,16,18
1736:3,6,7,16,18,24
1737:16,17 1738:3,10,
17,20 1739:4,16,19,20
1740:2 1741:25 1742:5,
8,17,22 1745:16,19,24
1748:25 1749:3,7,10,
16,22,25 1750:4,10,16,
20 1751:3,7,12,15,20
1752:8,15,22,25
1753:1,6,11,16,21
1754:3 1757:9,22
1759:1,9,13,18,24
1760:5 1764:17 1765:4
1766:1 1768:4,21,25
1769:8 1770:9 1772:5,
9,15,22 1773:4,8,11,24
1774:18,23 1775:9,13,
21,22,25 1776:10,16,24
1778:8,11,14,21
1779:2,16,19,23,24
1781:17,20,23 1784:5,
21 1785:3,12 1786:2
1787:15 1788:15
1789:6 1791:3,12
1792:8,17 1793:13

1794:1,3,18 1795:5,14,
17 1796:7,15 1797:12
1798:1,6,9 1800:17
1801:11 1803:2,7,19
1803:3,6,25 1804:16
1805:8,17 1806:8,15
1807:6,23 1808:18,25
1810:12 1811:7,12,16,
18,20,24 1812:1,14
1813:10,14,22 1814:13,
20,23 1815:18,20,25
1816:17 1817:13,19,25
1819:16,19,23 1820:5,
18,22,25 1821:3,14,23
1822:9,23 1824:7,13,19
1825:2 1826:1 1827:5,
16,21,24 1829:7,11,15
1830:14,20,25 1831:3,
9,13,15,16 1832:13,20
1833:8,17 1834:9
1835:5,20,23 1836:1,5,
14,18,24 1846:10,12
1847:21 1849:23
1851:21 1852:19
1853:16,21 1854:2,4,
12,16,19,22 1856:10,21
1857:7,9,11,12,24
1858:18,21,25 1859:7,
12,17,21 1860:2,8,16,
23 1861:4,11,16,23
1862:4,17,20,24
1863:2,10,17 1864:6,
13,21,23 1865:2,19
1867:3 1868:8 1869:19
1870:4,12,25 1871:6,9,
12,19,22,24 1872:3,12,
20 1873:4,9,12,25
1874:10,23 1875:21
1876:1,6 1877:2,7,10,
15,17 1878:6,10,20,25
1879:3,7,12,19,24
1880:9,14,20,24
1881:4,24 1882:21
1883:16 1884:1 1885:6,
17,22 1886:2,13,17
1887:5,21 1888:7
1889:13 1890:21
1891:4,9,13 1892:2,8,
13 1893:6,22 1894:2,9,
22 1895:9,20,23
1896:3,7,11,17 1897:6,
11,14,23 1898:5,11,16
1899:3,11,19,24
1900:11 1901:5,14,17,
21 1902:16 1903:2,21
1904:2,11,17,21,25

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 390 of 425   PageID 15793

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022              Index: Court's..decision

1905:9,20 1906:3,9,15,
19 1907:1,11,16,21
1908:5,12,18 1909:5,
18,24 1910:4,17,20,22
1911:7 1912:3,10
1913:4,8,11,18,23
1914:2,7,11,24
1915:10,23 1916:13,17
1917:1,10,14,24
1918:2,8,13 1919:14,23
1920:10,15 1921:10,21
1922:6,7,14,20,23,25
1923:5,8,11 1924:1,6,
12,19 1925:1,12,14,15,
20 1926:1,16,20,23
1927:2,11,17,21
1928:8,17 1929:1,9,11,
14,18,24 1930:4,11,16
1931:3,6,14 1932:3,8,
16 1933:1,7,13,23
1934:3,14,20,25
1935:9,12,14 1936:6
1937:21 1938:1,15
1939:1,5,11,25 1941:5,
7,14,21 1942:2,8,15,23
1943:5,13,17,25
1944:7,18 1945:2,13,
18,22 1946:3,15,21
1947:2,6,14,24 1948:5,
14 1949:1,10,20
1950:4,8 1951:19,23
1952:19,23 1953:14,21
1954:11,14 1955:7
1956:1,11 1957:1,4,10,
16,21 1958:9 1959:21
1961:5 1962:11,16
1963:18 1965:3 1966:2,
4,19 1968:2,4 1969:12,
24 1970:14,15,20
1971:9,18 1972:1,3,5,7,
14,25 1973:1,5,20
1974:1,7,12,20,24
1975:3,7,12,16,24
1976:3,9,13,16,22,25
1977:4,12,22,23
1978:1,7,16,23 1979:1,
4,19 1980:2,10,14,20
1981:2,11,18 1982:2,17
1983:18,24 1984:4,8,
16,21,25 1985:3,8,13,
18,23 1986:3,7,11,17
1987:13 1988:6,25
1989:2,15,25 1990:7,22
1991:5,10,21 1992:1,5,
19 1993:4,6,9,12,15,17,
25 1994:4,8,13,16,21

1995:3,9,13,16 1996:22
1997:1,22 1998:3,5,23,
24

Court's 1824:11,24
1873:23 1903:7

courthouse 1749:24
1750:6,22,23

courtroom 1653:15,
17,24 1673:18 1686:3
1694:22 1695:1 1739:3
1742:16 1749:17
1753:20 1759:17
1760:17 1820:4
1832:12 1836:9,23
1854:3 1856:9

courts 1649:22
1936:25

cover 1629:9,17,20,25
1638:15 1639:24
1820:6 1996:3

covered 1629:16
1634:20 1638:19
1639:16 1640:12
1722:16 1757:6
1825:11 1922:1

covers 1920:5

COVID 1632:21,23

coworker 1765:7,12,
18,20,23 1766:19
1795:10

coworkers 1768:10

crack 1629:19

create 1642:6 1681:17
1960:14 1970:7

creating 1871:16
1927:15

credence 1861:8

crew 1728:13,15

criminal 1727:25
1849:9 1998:6

criticizing 1825:8

critiquing 1904:13

cross 1638:17 1823:24
1849:11 1931:23,25

cross-examination
1654:3,7 1683:14

1693:23 1743:1 1822:8
1823:16 1828:10
1832:22

cross-examine
1741:11 1827:22
1830:5

cross-examined
1740:11

cross-examining
1828:4

crossed 1828:22

crystal 1724:23 1725:7

cure 1645:21

current 1674:9
1686:21,22 1715:8
1895:10,20 1932:17,19,
23 1948:15 1955:23
1957:12 1966:7

custodian 1668:22

customer 1697:10,12

customers 1699:21

cut 1631:13 1777:13
1821:25 1831:10
1865:21 1879:19,20
1880:20 1954:11
1964:23 1973:12,14
1995:8

D

dailies 1926:18

daily 1927:7

Daimler 1883:1,15

Dallas 1727:9

damage 1919:3
1960:21,23 1961:6
1964:12,16,17,20
1965:5,23 1966:7,11
1970:2,7 1976:20

damages 1661:11
1907:18,19,22,24
1908:6,16,23 1910:25
1911:11,16,18 1912:2,
19 1918:6 1919:1
1920:5,14 1922:12
1957:25 1958:7
1960:13,15 1961:8

1962:6,19,21 1963:2
1965:9,19,20,22
1966:10,13 1967:2,14
1969:18 1970:19
1971:1,14,15,25
1972:11,12,16,21
1973:1,23 1974:15
1976:5 1978:12
1979:20,21 1981:15,21
1986:23 1987:24
1989:13,17,18,19,21,25
1990:3,20 1995:7

date 1911:2 1971:5,6

dates 1958:3

day 1628:6,7,8 1667:20
1673:1,8 1678:11
1683:1 1718:10 1832:3
1852:24 1854:24
1858:1 1925:6 1926:3
1962:25 1995:8

days 1707:8 1709:11
1714:12,19,23 1722:2
1974:8

DC 1763:20

deal 1984:2

dealing 1645:22
1827:17,20 1966:18

dealings 1680:11

decertify 1761:22,23
1762:1,5

decide 1718:2 1881:5
1886:11 1928:14
1977:9

decided 1645:7
1717:23 1828:8

decides 1769:17
1858:9 1938:15

decision 1642:4
1655:15 1693:1,4,11
1701:22,25 1702:19
1703:17 1706:12
1714:25 1715:9 1716:6,
9,10 1718:1 1720:3
1732:14 1734:17
1741:15,20 1755:1
1775:1 1851:13,14
1876:23,24 1877:1
1888:25 1890:5,10,15,
18 1893:21 1902:8

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 391 of 425   PageID 15794
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                Index: decisions..discipline

1937:9 1938:10
1947:13 1968:22

**decisions** 1701:17
1824:22 1937:2,3

**declined** 1731:17,21
1732:9

**deed** 1985:3

**deemed** 1809:9
1934:23

**deep** 1638:24

**defamation** 1799:21

**defamed** 1833:11

**defect** 1991:18

**defend** 1841:19

**defendant** 1870:22
1879:9 1881:5 1886:12
1890:1,5 1892:14
1893:15 1895:12,15
1899:13,15 1902:13
1910:14 1912:24
1914:9 1945:7 1948:4,
25 1949:22 1950:1
1953:3,6 1959:20
1962:5 1963:7 1965:20
1966:12,14 1970:20
1972:13 1987:23
1998:6

**defendants** 1825:4
1836:25 1886:19
1960:15 1963:5 1973:1
1974:3

**defense** 1755:12,13
1821:18 1839:25
1840:2,8 1846:3
1881:16,19 1903:6,16
1941:24 1942:20
1943:23

**define** 1876:18 1900:22
1904:5

**defined** 1910:16
1911:4

**defining** 1877:3

**definition** 1844:22
1901:3

**definition-ally** 1920:5

**delayed** 1722:10

**delete** 1914:1 1919:7

**deleting** 1954:23

**deliberate** 1856:5
1924:20

**deliberation** 1742:2

**deliver** 1697:15

**delivering** 1697:10

**Democrats** 1654:11

**demonstrated**
1754:21

**demonstrative** 1927:8

**demonstratives**
1926:4,15

**denies** 1896:20,23
1898:1

**denise** 1680:3 1685:25
1686:9

**Denver** 1673:8 1674:19
1675:1,2,9,12,19
1684:20,21,23 1685:2

**Denver-based** 1685:4

**deny** 1717:2 1758:5
1797:13 1851:25

**denying** 1851:18

**department** 1680:5
1688:9 1702:12,13
1708:3 1730:21

**depend** 1751:1

**depends** 1662:16
1700:12 1788:6

**depiction** 1764:2

**depo** 1861:23 1862:6
1927:13 1928:6 1929:4

**depos** 1930:11

**deposed** 1930:10,13

**deposition** 1775:7
1813:23 1814:2,6,19
1815:9,16 1817:7
1929:22

**derogatory** 1801:17,19

**describe** 1678:24
1680:17 1697:6
1705:24 1706:2 1709:7

1717:8,9 1723:12
1734:25 1743:14

**description** 1698:22

**designated** 1638:18,
21 1704:1 1714:19

**designation** 1633:22
1634:7

**designations** 1629:8
1638:15 1639:2

**designed** 1725:20,22
1728:23

**desire** 1673:11,13

**detail** 1665:1 1738:11

**detailed** 1733:15
1773:25

**details** 1683:6 1739:23
1773:11 1774:1,4

**determination** 1693:9

**determinations**
1691:11

**determine** 1964:17
1965:6 1966:13

**determined** 1642:12
1895:4 1920:10

**determining** 1658:12
1691:7 1693:15
1912:23

**deviate** 1891:1

**deviates** 1978:21
1981:6

**DFR** 1847:1 1863:24
1870:15

**di** 1757:1

**dial** 1810:19

**dictate** 1651:18

**difference** 1696:9
1697:3

**differentiation** 1844:4

**differently** 1694:11
1826:16 1841:18
1844:2 1846:8 1885:6
1895:6 1900:5 1965:14

**difficult** 1680:22

1823:21

**difficulties** 1969:21

**digest** 1780:12

**digging** 1638:24
1679:14,15

**ding** 1719:19

**dire** 1740:5 1926:3

**direct** 1674:1 1675:19
1686:17 1695:23
1729:24 1760:7
1773:21 1809:17
1860:3

**directed** 1754:1 1758:6
1837:11 1846:10
1851:24 1856:14,17
1882:1

**direction** 1965:24

**directly** 1646:10
1712:13 1730:22

**director** 1670:13
1696:4,8,10,11,16,25
1697:4,5,8 1700:5
1727:2 1838:21

**disagree** 1682:4
1701:21 1726:20
1774:20

**disagreed** 1768:10

**disagreement**
1701:12

**disagreements**
1699:1

**disappear** 1643:20
1645:8

**discharge** 1729:10
1871:11 1872:6,7,11
1887:9 1888:21 1890:2,
6 1894:8 1895:3,5,19
1947:13 1960:23

**discharged** 1886:20
1902:13

**disciplinary** 1763:2

**discipline** 1643:21
1693:9 1701:14
1726:14 1838:25
1840:21 1845:20
1895:7

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 392 of 425   PageID 15795
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 6 July 12, 2022          Index: disciplined..EEOC

**disciplined** 1844:17

**disclaimer** 1756:25
1952:3 1977:17 1978:9

**disclose** 1926:5,6,8
1927:17

**disclosing** 1927:20

**disclosure** 1862:12

**disconnect** 1662:10

**discriminate** 1840:19
1894:13 1907:6,7
1914:19

**discriminated** 1655:6
1846:24

**discriminating**
1656:10 1850:13
1983:13,19 1984:6,11
1987:25 1988:2
1991:14

**discrimination** 1650:4
1687:18,25 1690:14
1691:22 1692:15
1725:4 1755:18
1840:15 1841:9,13,21,
25 1842:10,14,16
1846:23 1848:14
1851:1 1887:19
1892:12,20 1893:4
1895:12,14,19 1912:25
1913:3,9,15,17 1914:4,
15,16 1915:2,13
1916:11 1918:5,15,25
1991:16

**discriminatory**
1755:13,14 1842:12,13
1843:24 1844:7
1881:14,15 1936:24

**discuss** 1744:22

**discussed** 1640:4
1667:2 1702:25
1708:15 1736:8 1755:8
1772:12 1775:23
1843:16 1909:7,12
1950:17,25 1951:8,25
1952:5,14

**discussion** 1683:5
1710:23 1712:15
1751:3 1767:9 1934:25
1958:11 1985:4

**disgusting** 1716:1

**disinterested** 1737:15

**disjunctive** 1898:12

**dislike** 1771:1

**dismissed** 1649:23
1728:22

**display** 1931:12

**displaying** 1926:17

**disposition** 1744:5

**dispositive** 1847:12
1897:4

**dispute** 1710:20
1711:5 1726:20 1755:3
1765:11 1847:19
1848:24 1849:1
1851:10

**disputed** 1846:7

**disputes** 1699:7
1737:9 1748:19

**disregard** 1657:21
1764:19 1770:10

**disruption** 1903:23

**disseminate** 1758:24

**dissenting** 1790:9
1807:10 1812:7 1813:5
1848:23 1850:2

**dissident** 1845:3

**distinguishable**
1641:13

**distribution** 1688:19

**district** 1643:13 1844:1

**disturbed** 1677:23

**disturbing** 1682:18
1746:11

**dive** 1635:15

**do-over** 1731:10
1732:2

**docket** 1868:13,17
1935:4,12,18,22 1936:2
1945:17,18 1946:1

**doctor's** 1722:16

**document** 1634:21

1636:3 1638:5,8 1658:5
1668:12 1670:5,15
1671:5 1681:17
1691:17,19,23 1704:21
1705:15 1707:15,18
1709:2 1717:8 1718:20
1727:14 1747:14
1778:25 1781:5 1786:4
1869:10 1935:8,17,21

**document-wise**
1821:20

**documentation**
1634:9

**documents** 1635:8,10
1639:2 1640:7 1704:14,
17,25 1705:5,11,20
1706:3,11,21,22
1707:1,6,9 1708:10
1710:2,9 1715:5 1741:9
1869:3

**dollar** 1960:9 1963:8
1975:19 1976:10,14
1980:23 1990:15,16

**door** 1753:22 1849:7

**double** 1958:7,14,24,
25 1959:7 1960:5,6,11
1962:24 1963:8 1964:3,
22 1970:4,21 1972:2,6,
17

**double-check** 1636:14
1992:21

**download** 1630:20,25

**downstairs** 1628:24
1640:17

**draft** 1639:21 1858:2
1908:11 1919:19
1923:5 1949:21
1955:23 1972:8

**draw** 1725:20

**dressed** 1692:21

**drill** 1823:20

**drive** 1631:15,17

**drives** 1632:13

**drop** 1982:10

**Dropbox** 1630:19

**drugs** 1633:9,12

**dues** 1761:15 1837:24

**duly** 1673:19 1686:9
1695:7 1760:3

**duplicative** 1980:18

**duties** 1687:15 1697:6

**duty** 1642:5 1841:15,20
1842:11,17 1843:18,23
1844:16 1869:23
1870:23 1871:10
1872:5,10 1924:20
1960:5 1971:12

---

**E**

**e-copy** 1631:25

**Earl** 1855:16

**earlier** 1651:8 1714:11,
13 1715:16 1733:7
1737:2 1744:20
1746:22 1767:9
1770:18 1771:24
1772:12 1851:18
1859:7 1880:19 1940:1
1946:13,20 1947:10
1953:2 1975:11 1991:1,
17

**early** 1832:3 1854:24

**earned** 1722:1 1910:13
1911:1 1995:6

**easier** 1632:23 1719:4
1962:17

**easily** 1757:3 1968:16

**eastern** 1696:13

**easy** 1679:8,11

**echo** 1828:16

**echos** 1995:11

**Ed** 1642:22 1676:20
1680:3 1689:8 1766:16

**Ed's** 1677:11

**Edie** 1680:4

**Edward** 1628:20
1857:23

**EEOC** 1635:11,12
1913:18 1916:23

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 393 of 425   PageID 15796

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: effect..essentially

**effect** 1644:4 1737:15
1903:14 1940:5,11
1996:10

**effective** 1825:17

**effectively** 1697:20
1825:5

**efficiencies** 1825:4
1827:12

**efficient** 1824:20
1825:6,9,23 1827:14

**effort** 1657:14,15
1912:25

**efforts** 1647:13,18,23
1651:20,24 1827:19
1949:8,14 1953:11

**egregious** 1746:11
1885:24

**EI** 1633:11

**elaborate** 1754:3

**elect** 1925:23

**elected** 1698:5,6
1733:9

**electronic** 1631:6
1632:7,22 1857:4

**element** 1648:10,11
1847:8 1874:24
1875:12 1889:24
1894:6,18 1895:13
1924:3

**elements** 1648:6,16
1757:7 1845:8 1888:18,
20 1899:7,12 1901:25
1902:6,9 1910:24
1911:15

**elevates** 1871:17

**Eleven** 1947:18

**eligible** 1720:7

**eliminates** 1904:8
1932:12 1953:24

**ELMO** 1927:10,11

**email** 1631:10 1635:24
1688:18,19,20 1689:7,
8,9 1692:4 1709:5,7,9
1731:20 1747:25
1770:25 1841:10
1858:24 1869:8 1935:4

1989:6 1996:8,11

**emailed** 1869:6

**emails** 1638:2

**employed** 1674:7,21
1687:4 1696:2,3

**employee** 1640:23
1643:16 1644:22
1645:6 1647:13,23
1648:13 1658:14
1659:11,13,14,15,19
1662:13 1663:25
1664:23 1665:20
1680:4 1681:10
1682:14 1684:17
1687:9,19 1688:10,19
1689:23,24 1693:13,14,
15 1698:8 1701:12
1718:9,10 1728:5
1756:9 1757:5 1758:22
1763:5,14 1791:15
1793:20 1794:7
1795:19 1838:11
1842:3,21 1844:17,24
1845:12 1847:16
1848:10,12 1850:23
1870:21 1871:11
1872:6,8,11 1883:10
1887:2 1902:23 1905:2,
25 1906:13 1907:5
1910:13 1920:9 1924:9
1937:7,12,14,20 1938:6

**employee's** 1658:15
1659:4,5,7,12 1671:21
1756:13 1907:9
1932:13

**employees** 1662:18
1664:6 1682:17 1694:9
1700:3 1712:17
1723:17 1724:15
1728:2 1758:17,23
1796:5 1797:17,22
1798:21 1839:1 1841:4,
19 1844:4 1848:8
1870:24 1871:17
1899:14,18 1901:1
1903:11,20 1905:15
1909:3 1914:20
1936:15,22 1943:3

**employees'** 1787:8

**employer** 1643:1,20,24
1645:7 1647:12,16,22
1650:8 1651:20

1686:21,22 1687:2
1903:18 1904:9
1906:12 1907:6 1920:8
1936:21 1967:14

**employer's** 1643:8
1905:4

**employers** 1721:15
1856:1 1905:14,25
1937:1 1969:7,9

**employment** 1648:8,
24 1716:20 1719:10
1720:24 1721:2,8
1725:14 1732:15
1755:2 1756:19
1843:11 1911:2
1923:17,21,24 1932:14
1936:21 1937:8
1938:22 1947:23
1948:3 1953:25
1968:23 1995:7

**encompassed**
1696:17

**encouraged** 1706:6

**end** 1630:9,21 1636:18
1653:21 1668:11
1716:14,17 1718:10
1727:19 1735:24
1821:10 1828:25
1830:1 1852:24
1870:18 1886:24
1896:18 1910:23
1931:8 1935:15
1944:16 1950:16
1959:8 1960:20 1961:3
1962:25 1964:3
1973:16 1978:19
1997:13,17

**endeavors** 1923:22

**ending** 1789:6

**ends** 1964:20

**enforce** 1644:21

**enforcement** 1961:19,
22

**engage** 1833:3 1905:3
1983:10

**engaged** 1647:12
1650:22 1660:6
1663:15,17 1687:23
1754:11 1758:18

1839:10 1840:23
1843:7 1881:23
1886:20 1923:21
1944:13,24,25

**engaging** 1660:8
1839:2 1842:4,15
1877:19,25 1944:20
1945:8 1991:24 1992:7,
8,24

**engineer** 1959:9

**ensure** 1708:10
1729:23 1746:18,20,25
1972:1,14 1973:2

**ensuring** 1697:9,16,18
1744:3

**enter** 1940:5

**entered** 1653:15,24
1686:3 1695:1 1742:16
1759:17 1832:12
1854:3

**entertain** 1960:16

**entire** 1696:17 1700:12
1826:14 1926:14

**entirety** 1679:19
1757:18

**entities** 1699:11,15,19
1700:2 1733:8

**entitled** 1640:24
1641:6 1643:17,23
1644:21 1646:23
1739:9 1792:6 1828:20

**entitles** 1903:19

**enumerated** 1919:15
1951:17 1979:21

**equal** 1722:11

**equates** 1892:20

**equitable** 1920:9

**equivalent** 1869:15
1923:17

**equivocate** 1817:8

**error** 1630:21,22
1856:25 1865:24
1995:23 1996:4

**essentially** 1939:24
1958:8

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 394 of 425   PageID 15797

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: establish..factual

**establish** 1650:10
1775:11 1815:7
1949:23

**established** 1670:24
1671:15 1747:9
1779:22

**establishes** 1642:1

**estop** 1865:4

**evaporating** 1866:3

**event** 1720:24

**events** 1839:13,14

**evidence** 1638:12,22,
23 1642:1 1650:24
1658:6 1669:22 1671:4,
6 1709:3 1718:18
1742:2,13 1758:4,20
1811:11 1827:23
1829:25 1837:15
1844:12 1847:7,17,21,
25 1848:5 1849:14
1850:9 1851:8 1855:9,
10 1856:15 1859:22
1860:3 1870:5 1912:14
1918:4 1923:20 1924:9
1925:22 1927:8
1930:23 1931:7,22
1949:24 1957:7
1974:16

**evidentiary** 1921:7

**eviscerated** 1840:11

**exacerbate** 1883:10

**exact** 1767:17 1782:13,
19,23 1783:7,9,19
1815:21 1878:14
1896:3

**examination** 1669:13
1674:1 1686:17
1695:23 1740:5 1760:7
1812:2 1825:15,22

**examine** 1830:12

**examples** 1954:1

**exceed** 1971:22

**exception** 1843:19,20
1998:12

**excited** 1855:20

**exclude** 1906:12
1914:21 1938:16

**exclusive** 1939:7

**exclusively** 1938:8,11

**exclusively/solely**
1936:13 1939:18

**excuse** 1685:21
1698:11 1699:17
1719:21 1734:10
1773:20 1782:8 1793:5
1808:10 1849:22
1911:23 1979:3

**excused** 1672:25
1673:7 1694:19
1749:11,17 1831:7
1985:5

**execute** 1809:18

**execution** 1803:8
1813:19

**executions** 1803:10

**executive** 1694:12
1698:6 1787:22 1788:2
1790:5 1804:10
1809:13 1871:16
1911:25

**exercises** 1937:19
1938:5 1982:6 1986:24

**exercising** 1663:1
1845:25 1944:12,22
1991:2,25 1992:23

**exhibit** 1629:11 1630:4
1631:25 1632:5,8
1634:3 1635:23
1637:14,23 1639:3,5
1642:24 1652:24,25
1654:9,10 1655:1,3
1657:22,24 1658:6
1664:16,21 1667:4,5,17
1669:7 1670:21 1671:6,
7 1689:1 1691:12
1704:19 1705:25
1708:14,22 1709:3
1718:17 1742:12
1743:25 1744:13
1747:12 1839:12
1913:19 1927:6 1928:5,
11,15 1929:6 1930:13,
14 1931:9,12,16
1934:21 1935:6,7,10,11
1945:17,18

**exhibits** 1629:7,20
1630:1 1631:13,16,18

1632:6,15 1633:20
1634:1 1710:22
1847:23 1848:4
1926:17 1927:6,21

**exist** 1926:5 1927:12,
14

**existed** 1758:9

**exists** 1920:8 1991:18

**exited** 1673:18 1694:22
1739:3 1753:20 1820:4
1836:23 1856:9

**expect** 1912:12

**expectation** 1730:24

**expectations** 1682:16
1725:7 1746:19

**experience** 1675:14
1697:13 1841:1

**experienced** 1741:5,7

**explain** 1674:24 1676:5
1692:7 1701:8 1717:20
1719:7 1724:22
1736:21 1852:2
1905:14

**explained** 1697:2
1772:4 1785:1 1797:25

**explanation** 1698:17
1771:3 1776:2 1783:10
1784:4 1809:22

**exploitation** 1678:9

**explore** 1761:6

**express** 1783:3

**expressed** 1725:12
1746:23 1769:3,11,14

**expression** 1755:16
1758:1 1887:1

**extent** 1921:23 1930:9,
12 1940:2 1969:18

**extra** 1629:14 1633:5
1830:6

**extrapolate** 1885:5

**extreme** 1885:24

**extremely** 1741:7

**F**

**fabricating** 1929:11,15

**face** 1731:8 1837:22

**Facebook** 1646:4
1661:21 1677:11,12
1678:13,22 1679:6,8,15
1683:19 1688:21
1692:12 1712:16
1713:9 1725:14 1726:2
1754:12 1755:6
1756:23 1761:20
1763:24 1764:6
1770:23 1835:12,16
1837:16 1839:4
1841:12 1845:20,23
1952:3

**faced** 1822:3

**facets** 1936:16

**fact** 1642:19 1643:24
1645:1,3 1646:7
1651:9,13 1655:10
1658:23 1665:18
1699:5 1718:8 1732:15
1768:7,19 1770:18
1771:9,25 1786:22
1799:11 1802:22
1844:8 1846:18
1850:12 1889:12
1918:20 1949:6

**fact-finding** 1642:1,13,
23 1644:10 1655:5,13,
22 1656:3,12 1657:11
1662:22 1671:19
1672:2 1677:8 1679:21
1680:8,18,19 1681:19
1689:22,24 1690:1,3,6,
15,19 1756:1,7

**factor** 1754:24 1755:1
1839:6,7,10 1875:1,17,
20 1876:19,21 1877:4
1889:7,19,21 1890:5,
10,18 1891:5 1892:4,
23,25 1893:3,5,18,20
1947:9,13

**factors** 1877:1

**facts** 1662:11 1663:18,
20 1902:4

**factual** 1643:1 1952:12
1968:9,13

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 395 of 425   PageID 15798

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022              Index: factually..follow

factually 1953:2

failed 1648:20 1844:8
1846:19,20 1923:25

failing 1988:3

failure 1648:6 1650:5
1756:5 1757:5 1843:2
1850:19 1901:23
1986:25

fair 1635:2 1663:12
1683:20 1692:1
1693:17 1699:9 1742:3
1746:25 1760:14
1761:18 1762:1 1778:1
1825:2 1828:9 1841:15,
20 1842:11,17 1843:18,
23 1844:16 1853:13
1863:19 1870:8
1906:14 1917:14
1927:25 1971:12
1976:16

fairness 1729:23
1757:14 1931:17

faith 1842:2,13,19
1843:25 1844:7,19,23
1912:24

fake 1747:6

fall 1734:7

false 1833:12 1884:21

familiar 1665:8,18
1678:2 1688:12,16,24
1691:17 1985:15

familiarity 1679:6

family 1856:1

fashion 1869:25

fast 1853:18

fault 1630:11 1966:22

faulty 1642:15

favor 1706:12 1825:25

favorably 1850:17
1899:14,16 1900:9

feasible 1920:7

February 1763:10

federal 1720:12 1728:8
1871:17 1937:7

federally-protected
1870:20 1887:3
1938:14

feel 1635:17 1651:9
1678:10,11 1682:19
1706:7 1716:3 1764:24
1797:5 1803:9 1806:2
1825:5 1832:24
1834:24 1859:7 1864:1

feeling 1682:25

feelings 1683:3

feels 1795:19 1818:14

fellow 1738:20 1753:16
1819:21,23 1836:18

felt 1678:8 1705:3
1706:18 1707:1
1710:15,24 1760:13,20
1761:17 1769:3 1796:3
1801:18

ferret 1968:2,4 1970:14
1972:5

fetuses 1731:11

Fifteen 1880:12

fighting 1950:8
1964:20

figure 1637:2 1667:24
1852:13 1909:20
1914:25 1917:16
1918:16 1959:8,10
1963:7 1964:2,6
1965:16 1985:15
1991:6 1996:18

file 1701:22 1703:8
1721:8,9 1727:16,23
1747:21 1748:6 1763:2,
6 1806:4 1809:8 1819:4
1849:20 1865:15
1866:8,21 1867:1,11,
20,23 1868:6 1869:10
1935:2

filed 1636:24 1935:4,6,
7

filing 1863:11 1867:12,
25 1868:13 1934:21

fill 1927:8

final 1631:12 1717:1
1925:7 1996:20 1997:9

finalize 1855:13

Finally 1758:19

find 1667:11 1676:18
1679:4,12,15 1764:4,5
1794:20 1883:12,25
1884:24 1900:15,20
1904:12 1907:4
1935:14 1953:3 1958:5
1964:24 1968:10,17
1970:9 1980:10,21
1981:13

findings 1691:1,20,24
1692:5

finds 1940:6 1970:19
1972:13,16 1985:13

fine 1630:15 1631:19
1633:1,2 1635:16,19
1668:21 1736:2
1825:20 1852:6 1861:5,
9 1863:3 1875:24
1879:22 1896:11
1904:25 1907:21
1915:19,21 1920:25
1928:18,23 1935:19
1943:17 1955:2 1963:5
1969:10 1977:20
1981:2

finish 1792:17 1794:5
1807:23 1810:15,16
1812:1 1831:19
1917:19 1998:21

finished 1629:22
1656:6

fire 1642:13 1647:24
1655:16 1660:8
1771:15 1876:23
1905:15,25 1936:6

fired 1641:17,22
1642:20 1647:17
1648:21 1649:2,19
1651:22 1664:4,24
1665:20 1718:3,6
1754:11 1755:5,19
1756:4 1757:4 1835:16
1893:16 1902:8,10,12
1950:14 1969:15
1970:10 1971:7

firing 1642:7 1644:17
1652:6 1757:4 1877:19,
24

firm 1686:25

fit 1761:3 1823:8 1829:8
1979:8,10

Fitch 1647:20 1888:5

Fitch's 1648:14

fixed 1980:15

flag 1862:4

flagged 1925:9

flagging 1970:17

flagrant 1885:24

flash 1632:13 1653:8
1667:25 1669:6
1898:17 1945:3

flawed 1642:9

flesh 1798:7

flew 1765:15

flexibility 1720:10

flies 1699:21

flight 1668:9,18
1669:16 1675:3,5
1676:3,8,12 1679:1
1683:24 1696:12
1697:9,14,17,21,23,24
1698:4 1714:14
1720:10 1722:12,15
1734:6,14 1763:4
1765:14 1766:19
1792:25 1793:20
1794:7,9,25 1805:24
1846:1

flip 1724:6

floor 1837:5

floored 1731:22

flown 1675:24 1676:2

fly 1669:15,18 1670:3,6
1673:8 1697:13
1927:15 1928:13

flying 1676:7

FMLA 1936:18

focus 1696:22

focused 1697:8

follow 1817:6 1888:5
1975:22

**follow-up** 1964:7

**footnote** 1870:18
1884:5 1960:19

**forbid** 1874:6

**forbids** 1873:17
1874:5,7

**forced** 1748:20

**foreclose** 1987:5

**foregone** 1827:12

**foremost** 1765:13

**foreperson** 1632:4

**forest** 1995:19

**forever** 1996:9

**forfeited** 1883:14

**forget** 1740:4

**forgot** 1705:22 1724:19

**forgotten** 1991:9

**form** 1718:23 1777:7
1781:21 1785:9 1927:9
1934:12,13 1935:24
1945:20,25 1957:12
1967:21

**formal** 1809:19 1832:7
1852:9,14,19 1853:2,5,
19 1856:12 1857:3,16,
25 1868:19 1870:17
1874:17 1917:19
1920:3

**formalized** 1737:13

**formally** 1733:25

**format** 1931:10

**formatting** 1946:8,16

**forms** 1936:17

**formulate** 1714:25
1904:20

**formulated** 1648:5,15

**formulation** 1648:10

**forward** 1684:10
1724:24 1725:7,21,25
1726:11 1727:11
1746:18 1747:25
1859:5

**fought** 1967:15
1968:21

**found** 1701:12 1726:4
1731:16,19 1732:6
1751:2 1846:4 1882:10
1919:14 1960:3,21
1961:7 1962:6,7
1963:19 1967:1,7
1996:5

**foundation** 1669:24
1670:23

**four-minute** 1709:18

**fours** 1815:20

**fourth** 1643:4,11
1878:18 1879:21
1883:3 1886:16,22,24
1913:1

**frame** 1889:14 1910:18,
19

**frankly** 1824:21
1825:7,15 1916:9
1917:11 1928:24
1950:7

**free** 1673:17 1834:14
1848:13 1850:25
1937:1,16

**free-standing** 1873:20

**freedom** 1792:22
1794:15 1897:15

**freedoms** 1834:8

**Friday** 1639:2 1820:14

**friendly** 1675:22

**front** 1630:7 1633:5
1668:1 1742:1 1778:22
1816:15 1849:7
1919:19 1920:1,4,6,9,
14 1921:17 1922:2
1965:11,15,16 1977:4,
7,13 1978:10 1994:4,7,
17

**frustrated** 1680:20

**frustrating** 1681:1

**Frye** 1686:8 1752:11
1760:1

**full** 1630:23 1637:3
1862:12 1864:8
1874:21 1875:7 1879:8

1881:4 1898:21
1920:19 1921:16
1962:4 1969:18
1970:19 1971:25
1972:15

**full-time** 1698:10

**fully** 1692:1 1821:25
1851:25 1926:24

**funds** 1761:14 1998:7,
8,10

**future** 1725:1 1726:20
1744:11 1903:11
1920:6

———————————

**G**

**game** 1826:17 1828:9

**garbled** 1890:13

**gather** 1714:20
1943:18

**gave** 1645:5 1706:16
1710:23 1721:24
1727:14 1776:5
1816:16,21 1826:9
1834:13

**gears** 1639:14

**general** 1680:17
1687:20 1698:21
1723:13 1758:23
1790:16 1883:22
1904:6 1934:12,19
1945:20

**generalized** 1868:24

**generally** 1634:20
1679:14 1697:5 1702:2
1705:23 1706:2
1710:25 1717:8,9,20
1723:12 1731:10

**gentleman's** 1752:4

**gentlemen** 1985:6

**Georgia** 1724:13
1892:1

**get allegations**
1687:22

**get-go** 1747:9

**Gilliam** 1628:11

1634:10,11,12,17,22
1636:16 1637:3,19
1638:6,7,16 1640:1
1641:9,25 1645:25
1646:3 1647:4,9 1648:2
1649:16 1650:13
1651:16 1749:1
1753:23,25 1754:6
1757:10 1837:1,8
1846:12 1856:20
1857:17,18,19 1859:16,
24 1860:4,12,19,25
1861:13,20 1862:2
1863:7,13,22 1864:9
1865:1,11 1866:24
1868:3 1869:13,18
1870:2 1872:1,4,15
1873:1,10 1874:2,19,24
1875:5,7,10,12,14
1876:4,16 1878:13
1880:5,11,16,23,25
1881:7 1888:3,16
1889:15 1890:14
1891:8,25 1892:10,14
1893:8 1894:4,10,18,24
1895:18,22 1896:1,5,9
1897:9,12 1898:7
1899:21 1901:1,2,15,25
1905:11,22 1906:7,16,
23 1907:3,13 1908:2,8,
19 1909:11,16,22
1910:3,19,21 1912:4,6
1914:5,9,18 1915:19
1918:10 1919:10
1921:8,13 1922:3,13
1923:14 1924:3,17,24
1932:19 1933:20
1935:1 1939:10,12
1941:1,11,22 1942:18
1944:4,24 1945:11
1946:6,16,25 1947:4,8
1948:21 1949:4,12
1950:2 1951:11
1952:16,21 1953:9
1955:2,24 1956:9,23
1957:3,18 1973:25
1974:23 1975:5,15
1976:2,7,15,24 1977:20
1978:3,15 1979:23
1980:7,13 1981:20
1982:14 1983:23
1984:13,23 1985:1
1986:1,6,8 1987:16
1989:10,24 1990:21,24
1992:13 1993:11,13,20
1994:2,15,25 1995:15

1997:21

**give** 1631:13 1632:9
1642:10 1643:13,16
1647:23 1673:9,16
1676:4,9,14,15 1686:8
1717:25 1718:2,11
1719:10 1728:12
1731:9 1752:4,6 1803:3
1822:25 1823:7 1825:1
1827:25 1828:3,21
1829:7 1835:5 1862:12
1868:23 1885:20
1893:8 1897:16
1905:18 1920:12
1925:2 1937:1 1941:8
1960:17 1962:4
1964:19 1969:22,24
1971:25 1972:7
1986:20 1997:6
1998:22

**giving** 1776:2 1814:2
1855:24 1900:11
1972:14

**glad** 1958:9 1997:22

**glasses** 1689:3

**glazed** 1956:22

**global** 1934:11

**goal** 1639:20

**God** 1661:2 1756:3

**good** 1633:13 1683:16,
17 1686:20 1693:25
1694:1 1699:8 1716:13
1718:9 1736:3 1738:15
1742:8 1743:3,4 1760:9
1844:19 1906:13
1910:8 1912:24 1918:8
1931:3 1936:22 1945:2
1957:24 1963:22
1974:4 1978:13
1984:16 1985:3,21,24
1986:4 1993:15
1998:20

**goodness** 1731:25

**governance** 1699:24

**governed** 1733:9
1737:6 1761:14

**Government** 1728:8
1884:16,19,22,23
1885:3

**grab** 1634:16

**grabbing** 1900:18
1937:22

**grammar** 1956:15

**grammatically**
1956:13

**grand** 1876:2 1961:21
1971:19

**grant** 1701:2 1772:15
1846:10

**granted** 1649:23
1662:15 1983:9

**granting** 1719:8
1828:17

**graphic** 1682:12,13,23
1763:17,23 1764:1,4,5,
7

**Graphics** 1872:15

**great** 1678:11 1941:7
1973:4

**greater** 1866:2 1966:16

**GREEN** 1853:25
1899:12

**Greenfield** 1628:19,20
1635:14,21,23,25
1636:4,9 1637:19,21
1639:11 1640:9,12
1645:14 1646:1,12
1652:10 1658:1
1659:23 1663:4
1666:12 1671:2
1672:13,14 1683:13,15
1684:24 1685:1
1693:22,24 1694:1,2,15
1742:22 1743:2,5
1744:6,9 1745:22
1746:3,4 1747:11,13
1748:23,25 1750:14,18
1752:10,18 1759:7,8,
10,12,21,23 1760:8
1764:14,20 1765:2,5
1766:4,5 1768:1,11
1769:1,10 1770:5,12
1772:7,11,17,24
1773:14,20 1774:3,16
1775:3,23 1776:1,12,18
1777:4 1778:6,12,16,24
1779:4,6 1780:1 1782:2
1783:24 1784:1,7,23

1785:5,15 1786:6,20
1787:1,16 1788:13,17,
23 1789:5,10,21 1790:2
1791:4,10,17 1792:4,12
1793:4,11,14,22
1794:12,16,19 1795:2,
6,23,25 1796:10,23
1797:8,15,16 1798:4,7,
10 1800:20,21 1801:7,
21 1802:9,21 1803:13,
23 1804:4,21 1805:9,
15,19 1806:9,16
1807:14,18 1808:1,2,
19,23 1809:1,3 1810:9,
18 1811:2,22,25
1812:3,12,16 1813:9,
11,20,23 1814:1,11,14,
22 1815:1,19 1816:1,25
1817:4,20 1818:1,22
1819:5,8,10,14,17
1820:20 1826:3
1829:13 1832:14
1833:5,15 1835:2,21,22
1836:12 1846:13,14
1849:24 1851:22
1853:20 1854:20
1856:19 1857:22,23
1858:16,19,23 1859:2,
9,20 1860:1,6,14,21
1861:15,18,25 1862:15,
23 1863:1,9,15 1864:4,
15,22 1870:9,13
1871:4,7,10,13,21,23
1873:7 1875:3,6,9,11,
13,25 1877:9 1878:23
1879:1,6,11,16,22
1880:12,18 1882:17,22
1885:12 1886:7,14,18
1887:14 1891:11
1893:25 1894:15,20,23
1896:15,18 1897:22,25
1898:9,14 1899:1,9
1900:2 1901:12
1907:14,25 1908:9
1910:9 1911:5,14
1914:8 1915:8,17
1919:12,21,24 1921:15
1922:16,22 1923:2,7,9
1924:16,22 1930:21
1934:1,10 1935:6,11,13
1936:3,8 1937:23
1938:4 1939:4,13
1941:3,17 1942:6,13
1943:1,9,14,15,19
1945:16,21 1946:2
1957:15 1960:16

1962:10 1965:21
1966:15 1967:4,23
1968:12 1969:8
1974:10,11,14,22
1975:1,9,19,21 1976:6,
8,18 1977:3,6,25
1979:12 1980:25
1984:1,20 1985:17,21,
24 1986:4,9,15 1987:19
1992:15 1993:5,7,16
1994:6,10,14 1995:2,11

**Greenfield's** 1685:18
1749:5 1865:10

**grievance** 1702:3
1707:12 1710:6
1716:19 1717:2
1728:19,20,21 1729:1,
22 1732:12 1734:18
1863:24,25 1869:14,25

**grievances** 1698:9

**grievant** 1706:14
1729:8

**grieve** 1726:13

**gripe** 1790:9

**ground** 1639:16

**grounds** 1636:10

**group** 1669:17 1688:19
1700:12

**groups** 1764:11

**guardrails** 1720:12

**guess** 1629:6 1630:8
1636:23 1638:3,20
1642:16 1646:12
1662:10 1666:22
1713:4 1728:19 1729:3
1738:25 1750:16,24
1801:18 1820:6 1824:9
1865:13,20 1874:20
1885:23 1888:19
1892:16 1899:5
1901:25 1902:2
1906:23 1907:3
1913:20 1914:18
1950:15 1956:24
1957:6 1959:19
1964:10 1969:21
1970:23 1972:20
1981:5 1982:23
1989:15 1996:18
1998:4

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 398 of 425   PageID 15801
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022            Index: guidance..Honor

**guidance** 1880:8

**guidelines** 1682:16
1824:21

**guns** 1633:9,12

**Gutierrez** 1680:3
1686:1,4,9,19,21
1693:25

---

## H

**Hacienda** 1955:5

**hairs** 1953:1

**half** 1657:2 1674:12
1675:10 1687:6
1852:13,14 1855:15
1964:23

**halfway** 1712:9

**hand** 1686:7 1695:5
1707:14 1759:6 1855:5

**handed** 1653:19
1710:3 1990:8

**handle** 1726:24 1753:9
1866:6 1914:2 1985:6

**handled** 1799:22

**handling** 1734:17
1863:25 1867:5 1868:2
1869:14

**hands** 1857:4

**handy** 1907:18 1981:12

**happen** 1709:15
1713:14 1754:15
1756:14 1928:15
1964:19 1998:14

**happened** 1646:22
1710:13 1716:21
1730:8 1771:11 1817:7
1880:19 1929:25
1952:8 1990:11

**happening** 1680:21

**happy** 1637:18 1647:8
1757:7 1778:16
1821:10 1859:3
1928:12 1967:25
1976:19

**harassing** 1848:21
1849:4,12 1883:5

1885:25 1938:20

**harassment** 1687:17,
24,25 1690:13,14
1691:9,21 1692:14,15,
24 1725:3,4 1731:25
1848:13 1850:25
1887:1 1936:18 1937:5

**harbor** 1891:18

**hard** 1631:21,23,25
1632:1,5,8,11,15,25
1633:3 1916:10
1937:22

**hardship** 1756:15
1758:20 1903:6,9,16
1943:22 1944:2
1948:25 1949:17
1950:1 1953:6,13
1955:11,12,14,18,19
1956:8

**harm** 1816:3,7 1818:9,
12,23

**harmed** 1818:14

**harms** 1903:11

**hash** 1854:25

**hat** 1931:1

**hate** 1876:4 1985:1

**hated** 1715:25

**hats** 1764:25

**haywire** 1921:4

**hazing** 1725:2

**he'll** 1830:22

**head** 1849:7 1872:19
1935:17

**headache** 1908:13

**header** 1972:11

**headquarters** 1680:16
1704:1

**headscarves** 1648:14

**health** 1909:10,18
1910:2,6 1920:4

**hear** 1636:1 1637:18
1647:8 1663:9 1689:18
1707:3 1751:18,25
1760:20 1769:5

1788:15 1846:13
1852:5 1855:19,20
1856:14 1878:25
1879:17 1926:24
1950:4 1988:19,20

**heard** 1628:24 1701:23
1715:23 1771:2
1854:22 1856:22
1865:7 1870:6 1918:18

**hearing** 1636:5 1700:7,
23 1701:9,10,20
1702:4,7,8,10 1703:23
1704:15 1706:20
1707:25 1708:9
1709:12,13 1710:6,7,8,
11,13,14 1711:3,11,13
1712:16 1714:8
1715:23 1716:5,14
1725:8 1732:20
1733:18,22 1737:13,14
1739:6,9,12 1742:6
1743:11,16 1772:18
1773:13,22,25 1774:1,2
1776:6 1783:10 1865:9
1867:23,24 1868:10,11,
12,16,18 1921:7

**hearings** 1708:1

**hearsay** 1998:2,4,6,12,
13,16

**heart** 1791:21

**heartbreaking** 1793:1

**heartfelt** 1661:22
1663:1

**heavily** 1851:16

**heightens** 1893:2

**held** 1641:18 1669:4
1703:25 1736:5
1752:24 1775:20
1815:24 1817:18
1837:3 1882:25 1883:5
1938:7

**helpful** 1644:25
1706:12

**helps** 1924:6

**Hey** 1643:21 1645:3
1661:20,24 1663:15,19
1676:15 1701:21
1866:5

**higher** 1889:10

**highlight** 1671:8

**highlighted** 1746:19

**highlighter** 1631:8

**highly** 1743:18,19
1811:10 1932:21

**Hill** 1628:12 1630:22
1694:16 1700:25
1708:15 1712:21
1717:12,15 1723:23
1736:17,23 1737:25
1738:9 1742:4 1745:13,
18 1749:1,2,9,14
1857:19 1929:15,19
1930:2,9,12,24,25
1931:4 1963:16 1969:5,
10 1970:24 1978:5
1981:22 1984:6,10
1987:22 1994:19,20
1996:21,24

**hire** 1648:20

**hired** 1648:13 1697:23

**historically** 1838:23

**history** 1720:4 1728:1

**hit** 1935:16

**hold** 1636:20 1661:12
1665:14 1687:8 1689:2
1732:18 1736:16
1738:3 1745:16
1749:14 1751:16,18,24
1766:1 1768:21 1772:5
1779:2,16 1781:17
1784:21 1792:8 1794:1
1795:14 1797:12
1798:1 1800:17
1801:11,12 1803:3,25
1807:23 1810:12
1897:19 1904:23
1912:23 1930:21

**holding** 1825:3 1931:1

**home** 1641:15,16,19
1664:1 1832:3 1852:20
1853:5,11,13,23
1854:24 1858:1

**Honestly** 1777:16

**Honor** 1631:20 1634:10
1635:14 1636:1
1637:21 1638:7

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 399 of 425   PageID 15802
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022          Index: hook..improvement

1639:12 1640:13
1645:14,25 1646:13
1649:20 1651:16
1655:24 1657:17
1663:4 1666:12,23
1667:1 1671:2 1672:15
1685:16 1694:16
1735:6 1740:3 1742:4
1746:3 1749:2,21
1750:25 1752:10
1753:4,8 1759:8 1765:2
1766:4 1768:3 1772:8,
20,25 1775:24 1778:6,
9,18 1786:20 1789:21
1792:4 1793:22
1794:16 1795:12,23
1797:10 1798:8
1800:20 1801:7 1802:1
1805:13 1808:23
1810:9 1811:1,23
1812:13 1813:24
1814:12 1815:1
1816:14 1820:13,21,23
1821:9,17 1824:17
1826:21 1827:3
1830:11 1833:5,15
1835:2,22 1836:4,13
1846:14 1849:22
1851:20 1853:20
1854:1,11,21 1856:18
1859:5,10,11,19,20
1860:1,6,15,22 1861:1,
15,19 1862:1,15
1863:9,16,22 1864:5,15
1865:12 1869:18
1870:3,9 1871:5 1872:1
1873:8,16 1874:4,19
1875:23,25 1877:12
1878:13,23 1879:23
1880:5 1882:17
1885:12,14 1886:8
1887:14 1888:3
1890:23 1891:11
1893:25 1896:1,6,15
1897:22 1898:10,15
1899:1,10 1901:13,25
1902:19 1905:11
1908:1,3,10,17,20,21
1909:23 1910:3,9
1911:14 1912:20
1915:18 1919:21
1921:9,15 1922:17,19
1923:15 1924:16,23
1925:16 1928:9
1930:21 1933:4,21
1934:2,10 1936:3,8

1937:23 1938:24
1939:13 1941:17,19,22
1942:6,18 1943:16,20,
24 1944:5,9 1945:11,
16,21 1947:8,19
1948:21 1953:17
1957:15,18,19 1963:9
1974:5,11,22 1975:2,9,
22 1976:6,18 1977:3,9,
21 1978:3,14,18
1979:12 1980:17
1982:23 1984:1 1985:5,
22,25 1986:5 1987:10,
19 1989:11,24 1990:24
1992:15 1993:16
1994:7,12,20 1995:1,2,
4

**hook** 1967:3 1968:6,10
1969:16,17

**hope** 1853:14 1936:1
1960:9 1963:25

**hoping** 1727:6

**horrible** 1801:17

**horrific** 1678:9

**horrified** 1678:4

**horse** 1849:6

**hostile** 1886:1 1920:8

**hostility** 1650:8

**Hotels** 1955:5

**hour** 1640:16 1721:15
1750:19 1752:6 1820:1
1824:9 1829:12,21
1852:12,14 1855:15
1868:14

**hours** 1714:10 1721:15
1752:5 1822:5,10,14
1826:9 1855:13
1862:22

**housekeeping** 1630:3
1652:23 1667:1
1925:20 1932:2

**housekeeping-type**
1925:19

**housekeeping-wise**
1633:19 1652:22

**HR** 1693:14

**Hudson** 1667:13,16,18,

21 1670:7,8,12 1838:19

**huge** 1676:10

**human** 1650:19
1651:13

**humility** 1681:8

**hunch** 1962:12

**hundreds** 1684:13
1685:9 1849:16

**hurt** 1769:15 1786:23

**hurtful** 1681:9

**hyphenated** 1879:13

**hyphens** 1878:7

**hypo** 1644:14

**hypothetical** 1660:17
1662:3 1795:15 1802:6,
18 1803:2,5,19 1804:15
1808:16 1811:16,17
1812:11,12 1813:7,9
1815:8,17 1970:8

**I**

**i.e.** 1954:6

**iceberg** 1716:2

**ID** 1728:12

**idea** 1641:19 1862:20
1917:18 1918:21,22
1960:17 1961:25

**ideas** 1959:12,17

**identified** 1865:25
1908:24

**identify** 1679:7
1718:20 1837:20
1838:2 1850:16
1885:15 1913:4
1965:19

**identifying** 1966:11

**ignore** 1850:11

**ignoring** 1869:24
1952:1

**Ill** 1628:20 1857:23

**illegal** 1833:3,9
1936:23

**illustrates** 1648:9

**illustrative** 1645:6

**images** 1678:4,6
1682:13

**imagine** 1699:1

**immediately** 1652:7
1964:5

**impact** 1682:7 1758:22

**impactful** 1715:25

**impeach** 1773:14,23
1774:8 1775:3

**impeachment** 1774:6,
8,17 1778:7 1784:25
1813:21 1815:5
1861:16

**implicated** 1887:3

**implying** 1966:23

**import** 1643:15

**important** 1645:16
1661:1,22 1699:13
1707:2 1774:20 1826:4
1870:19 1882:7,8
1883:24 1905:13

**Importantly** 1841:8

**impose** 1823:5
1873:20 1961:25

**imposed** 1757:1
1948:25 1949:17,25
1953:5,13

**imposes** 1905:24

**impression** 1748:7,10
1868:5

**impressive** 1629:5

**improper** 1779:21
1802:5,6 1803:5
1804:14,15 1808:16
1811:10,16,17 1812:10
1813:7 1814:18
1871:18 1873:24

**improperly** 1694:5

**improve** 1723:4

**improvement**
1722:10,21,25 1723:3

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 400 of 425   PageID 15803

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 6 July 12, 2022         Index: imputed..investigator

imputed 1646:22

in-flight 1674:20
1675:2 1689:21,23,24
1693:5 1696:4,8,18
1697:18 1700:5
1701:24 1727:2

inaccurate 1877:22

inactive 1728:5

inapplicable 1977:8

inappropriate 1801:1,
9 1802:14 1816:5,12
1817:11 1818:5
1873:22 1874:9
1885:25 1974:19

inartful 1916:4

inclination 1892:3
1901:9 1909:24
1918:13

inclined 1954:22
1956:1

include 1658:24
1702:24 1807:15
1808:7 1870:19 1874:3
1875:18 1876:25
1881:20 1883:8 1903:8
1936:14 1939:15
1953:1

included 1697:12
1861:3 1876:18 1897:5
1903:20 1921:16
1934:19 1943:3
1977:11 1978:22

includes 1632:2
1810:7 1829:13 1833:3

including 1756:10
1799:13,18 1800:25
1802:14 1806:14
1850:9 1903:10 1937:3

inclusion 1863:23
1877:5,11 1902:2
1943:21 1956:25

inclusive 1877:23

incomplete 1660:17
1662:1 1802:17 1803:1
1981:8

incongruence
1928:20

inconsistency
1779:22

inconsistent 1775:6
1778:20 1815:7
1861:17 1964:4 1966:8
1970:25 1973:15
1995:24

incorporate 1945:23
1951:16,20 1987:12

incorporated 1860:10
1935:17

incorporates 1868:14

incorporating 1935:19

incorporation 1866:22

incorrect 1940:18
1956:13

indefensible 1883:14

index 1632:12 1705:11

indicating 1902:23
1923:16

individual 1850:13,17
1911:18

individuals 1688:2
1871:15

induce 1789:18

industrial 1719:13
1869:15

industry 1728:1

inference 1828:19
1863:11

infighting 1668:9

influence 1694:6

inform 1809:14
1905:23

informal 1639:15
1737:17 1870:17
1882:23

information 1654:19
1656:8 1680:25 1688:3,
4,6 1690:21 1701:19
1702:17 1704:24
1705:3 1706:7,8,14,15
1714:21,24 1748:3,12
1963:12 1997:7

infraction 1683:25

infractions 1683:23
1685:11

ingraft 1884:7

ingrafted 1884:3

inherent 1902:4

initial 1767:3

initially 1997:4

initials 1713:18

initiate 1949:7

initiated 1949:13

initiating 1647:17

innocuous 1721:6

inquiry 1730:14

instance 1696:11
1730:21 1865:13
1889:17 1953:20

Instant 1762:21,23

instruct 1873:22
1900:19 1909:2

instructed 1988:7

instructing 1900:12

instruction 1641:2
1861:2,5 1866:6 1883:2
1890:25 1891:2
1900:13 1902:23
1903:7,18 1904:3
1906:12 1910:22
1912:9 1918:12
1919:25 1923:10,23
1924:8,10 1925:17
1934:23 1941:4,8,16,20
1978:22 1979:14
1981:7 1983:2 1989:13

instructions 1738:19
1760:5 1836:17 1856:4
1858:12,17,22 1859:14
1863:6 1865:14 1888:4
1919:3,16 1934:19
1977:15 1981:24
1987:21

insufficient 1974:16

insurance 1697:12
1747:2 1909:10,16,18
1910:2,6

intend 1637:22
1750:14,15 1773:14,23
1775:3 1778:6

intended 1724:23
1874:6 1917:12

intent 1726:10 1727:8
1822:13

intention 1826:20
1827:1

interacted 1681:6
1683:8

interactions 1675:21
1698:20,23 1838:23

interest 1757:13

interesting 1751:2
1846:15 1930:7,20

interference 1851:12
1937:2

internal 1737:9

Internet 1678:5 1705:3

interpret 1823:2

interpretations
1757:24 1758:3

interpreted 1912:1

interrupted 1825:11

interview 1688:2
1690:1

interviews 1691:3

intimidating 1886:1

introduce 1631:14

introduced 1667:18

introduction 1657:23
1825:23

investigation 1656:7
1675:15,17 1676:23
1677:7,15 1678:3,16
1688:1,12,23 1689:12,
17,20 1690:25 1693:7
1694:6,8,11 1851:12

investigations 1675:6
1687:16 1688:9

investigative 1677:4

investigator 1687:10

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 401 of 425   PageID 15804
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 6 July 12, 2022                      Index: involve..kindly

**involve** 1688:10
1809:9,19 1834:7
1986:23

**involved** 1659:19
1661:4 1684:17 1693:7
1702:6,8 1736:22
1748:15,18 1761:16
1769:22 1774:25
1777:10 1834:21

**involvement** 1702:3
1733:20 1734:2,11

**involves** 1716:5

**involving** 1770:7
1998:7

**irony** 1834:20

**irrelevant** 1636:19,24,
25 1637:4 1882:13
1914:17 1990:17

**issue** 1640:24 1644:23
1646:6 1647:13,20
1648:3 1649:1 1651:19
1652:23 1660:14
1682:10 1723:14
1728:24 1731:15
1752:21 1755:10
1772:14 1774:20
1807:5 1815:2 1820:15
1825:11 1826:5
1828:11 1847:6 1863:6,
12 1868:5 1871:4
1878:10,18 1883:18
1887:13 1897:3,4
1901:24 1902:18
1910:10 1916:14
1923:9,12 1924:7
1929:17 1936:5
1941:24 1942:1,21
1954:10 1957:9
1958:18 1962:11,13,25
1964:22 1966:18
1970:8,13 1974:9
1976:17,23 1977:17
1978:1 1985:6 1986:22
1987:17 1991:13

**issues** 1645:22
1646:25 1648:3 1661:3
1675:4,5 1733:24
1739:14,15 1830:2
1842:10 1851:5
1858:14,22 1859:15,18,
23 1860:4,11,19,25
1861:11,13,20,25

1862:2,10,14 1863:7,
13,20 1873:6 1875:22
1876:15 1886:6 1887:7
1888:15 1893:24
1896:8,9,14 1899:8
1905:9 1906:5,20
1907:23 1910:17
1911:10,12 1912:19
1919:2 1922:2 1924:15
1933:18 1934:9 1939:8
1940:25 1941:1 1942:4,
25 1946:5,20

**issuing** 1701:13

**items** 1909:2

---

## J

**jail** 1930:17

**James** 1855:16

**Jehovah's** 1641:24

**jerk** 1636:13 1637:10
1752:3

**job** 1648:7 1676:10
1696:23 1697:6,12,16
1710:24 1711:2
1712:12,13,14 1717:22,
23 1718:2 1719:10
1731:5,13,14 1732:1,3
1770:19 1771:25
1779:8 1812:20 1902:3
1920:13 1924:10
1954:7 1967:15
1968:21

**joint** 1959:22 1960:1
1965:22 1969:6,7,8
1970:11

**joint-employer** 1969:5

**joking** 1882:3

**Jones** 1673:4,6,19,21
1674:3,5 1683:11,16
1766:14 1767:9
1985:11

**Jones'** 1855:16

**Jones's** 1767:22

**JP** 1686:22,23 1687:1

**judge** 1633:10 1737:15
1973:20

**judgment** 1649:22,23
1847:20 1940:5 1960:4
1961:15,19,20,22
1963:6 1967:22 1969:6

**judgments** 1962:9
1971:20

**judiciously** 1865:4

**jump** 1633:20 1877:13

**jumped** 1933:5

**June** 1697:25

**juror** 1632:1 1828:7

**jurors** 1653:24 1738:20
1739:3 1742:16
1753:16,20 1759:17
1819:22,23 1820:4
1828:24 1829:23
1832:12 1836:18,23
1854:3 1856:9 1878:16

**jury** 1629:1,13,15,19
1630:7,13 1631:2,11
1632:2 1642:18
1645:17 1646:16
1647:3 1648:5,23
1652:16 1653:18
1657:15,21 1662:23
1665:12 1666:9 1667:3
1668:1 1669:1 1674:24
1676:5 1679:5 1680:1,
17 1682:2 1683:19
1696:9 1697:6 1698:18
1701:8 1704:23 1706:2
1709:7 1711:21
1718:20 1719:2,7
1721:13 1724:22
1735:1,16,17 1736:21
1739:2 1742:1,10,11
1745:10 1751:10,23
1752:21 1753:10
1757:24 1759:6,16
1760:12 1764:19
1765:17 1768:13
1769:3 1770:9,14
1782:25 1784:8 1785:8,
10 1813:1 1820:3
1828:14 1829:21
1830:9 1831:10,17,20,
22 1832:1 1836:22
1847:11 1850:11,15
1852:5 1854:25 1855:3,
6,13 1856:8 1858:1,2,3,
12,17 1864:2 1865:7
1866:4,12 1867:8

1872:23 1873:22,24
1887:18 1889:9 1895:4
1900:12 1901:4
1905:14,24 1906:11
1909:2,23 1913:20
1915:12 1916:20
1920:11 1921:24
1925:4 1926:12,18
1927:9 1931:13
1932:22,25 1938:17
1940:18 1941:23
1943:23 1950:25
1952:22 1955:8,17
1958:4 1963:12 1964:6,
13,20 1967:10 1968:10,
16 1969:13,22 1970:3,
8,14,18 1971:10
1972:12,16,21 1973:1,
8,15 1976:13 1977:10
1981:22 1987:21
1988:7 1989:20 1990:9
1997:23 1998:22

**jury's** 1739:6,9,12,22
1757:14 1857:16
1866:7 1882:12
1883:24 1912:17
1966:8 1977:24 1987:5

**Justice** 1648:15

**justified** 1846:4

---

## K

**keeping** 1735:21
1867:16 1953:8
1997:23

**Kevin** 1630:23

**kick** 1751:23 1753:13
1830:8 1831:20

**kind** 1648:3 1650:8
1656:13 1676:5 1678:3,
10,16 1679:5,6 1680:20
1681:7 1682:22,25
1687:20 1698:17
1703:22 1705:23
1719:1 1726:24 1729:4
1761:11 1867:1
1870:14 1880:21
1903:12 1912:11
1921:16 1935:1
1973:14 1981:8

**kindly** 1862:17

**kinds** 1917:9

**Kinkeade** 1973:20

**knew** 1642:2,20
1648:17 1680:13
1727:17 1746:18
1766:11,23 1767:5,6
1826:14 1841:6,11,22
1843:14 1962:16

**Knight** 1872:17

**knowing** 1663:18
1843:17 1951:9 1959:7

**knowingly** 1833:12
1884:21

**knowledge** 1640:22
1641:4 1643:9 1644:7,
16 1646:21 1664:9
1670:24 1724:1
1862:25 1902:21

**knowledgeable**
1698:14

**Konop** 1641:11,14
1643:1,11 1719:23
1720:6 1884:4

**L**

**L-E-M-O-N-S** 1740:16

**label** 1706:23 1931:20

**labeling** 1710:10

**labor** 1670:13 1674:10
1688:8 1693:6,13
1702:13 1703:7 1708:2,
7 1709:9,19 1715:6,10
1730:20 1737:7 1748:5
1838:21 1884:2,3,6,8,
25 1944:12,14,21,22
1945:1,9 1991:2,25
1992:8,9,23,25

**laborious** 1679:16

**lack** 1669:24 1670:23
1681:2,8 1758:4
1940:18 1948:11

**Lacore** 1838:22

**laid** 1714:16 1911:15

**land** 1631:4

**lands** 1740:23

**language** 1730:17
1815:21 1863:24
1865:6,20 1870:16
1874:3 1876:25 1877:3
1880:20 1882:24
1884:2,11 1885:11,18
1886:5,23 1889:14
1890:24 1891:12
1894:11 1895:17,23
1896:4,19 1897:7,20
1898:22 1900:3 1902:2
1904:11,24 1905:7,12
1906:11,15 1907:4,17
1911:12 1913:21
1915:10,12,18,20,22
1916:24 1917:15
1918:24 1919:5,9
1922:9 1923:13
1925:17 1932:4,17,20,
23 1933:3 1936:10,14
1938:16 1939:7,16,19
1947:15 1948:15,19
1952:22 1953:8,18
1956:20 1970:17
1971:24 1972:8,10,23
1973:24 1974:9
1977:10,14 1981:12
1983:19 1984:2,5,15
1987:8,16 1988:12
1989:4 1993:22

**laptop** 1633:16
1709:15

**large** 1698:7

**larger** 1866:18

**lasted** 1829:20

**lastly** 1986:7

**late** 1667:20

**latest** 1831:18 1858:2

**latitude** 1937:1

**launch** 1856:12

**law** 1646:23 1647:4
1649:11 1734:9,10
1848:21 1850:11
1871:8,14 1872:4,9
1880:21 1882:24
1889:24 1895:8
1900:12 1903:17
1904:7 1911:17
1933:11 1937:8
1967:20 1968:6
1973:16 1987:1

**laws** 1699:12 1885:5

**lawsuit** 1828:11

**lawyer** 1659:15 1734:9
1753:24 1820:11
1843:16 1853:9

**lawyers** 1686:12
1695:13,14,19 1740:13
1841:24 1855:21
1878:17

**lay** 1774:21

**layman's** 1722:15
1747:1

**lead** 1689:24 1889:9

**lead-in** 1914:11

**leader** 1658:15,20,23
1659:12 1671:16,20
1715:13 1756:12

**leaders** 1748:19

**leadership** 1658:21
1693:12 1702:1
1733:24

**leading** 1671:22
1672:9 1784:3 1833:6,
16 1835:3

**leaning** 1853:16
1951:9

**learn** 1706:16

**learned** 1633:10
1688:23

**leave** 1673:17 1749:23
1750:23 1821:5
1828:24 1836:7 1901:6,
9 1912:10 1916:7
1924:13 1954:17
1985:14 1989:5

**leaves** 1645:6

**leaving** 1750:5

**led** 1746:10 1834:5

**leeway** 1828:21

**left** 1682:25 1708:8
1719:21 1740:4
1775:13 1824:3 1849:5,
7 1855:2 1921:17
1996:23

**legal** 1723:13,23

1751:3 1807:3 1855:8
1873:20 1901:2
1912:13 1932:21
1980:21

**legally** 1937:12

**legitimate** 1725:16
1755:11 1851:16
1881:11

**Lemons** 1740:16
1741:3,14,21

**lend** 1825:22

**length** 1719:15,18
1879:25

**lengthy** 1705:25
1867:22

**leniency** 1644:24

**Lesser** 1882:25 1883:7,
11

**lesson** 1633:10

**lessons** 1633:11

**letter** 1702:22 1745:7

**letters** 1876:1

**letting** 1635:6 1867:23

**level** 1701:23,25
1702:20 1731:24
1774:19 1825:17
1885:1 1962:6

**liability** 1650:10
1837:12 1939:22
1959:22 1960:2,10
1961:7 1963:1 1964:16,
24 1965:6 1966:12
1971:13 1989:20

**liable** 1870:11,14
1920:14 1938:7 1958:5
1960:3,22 1962:6
1963:19 1965:8 1967:1,
2,7,16 1968:17 1970:9,
10 1971:11,12

**lieu** 1934:13,24

**life** 1650:20 1651:13
1661:1 1727:14 1735:2
1756:3 1763:10
1764:11 1803:10
1850:10,12,14

**light** 1749:19 1750:20

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 403 of 425   PageID 15806
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022              Index: lightning..making

1759:5 1785:4

**lightning** 1917:24

**limine** 1736:17,23
1737:25 1738:9
1772:14 1773:10
1825:12 1828:13
1997:14

**limined** 1773:25

**limit** 1822:11 1829:16

**limitation** 1824:8
1873:18

**limitations** 1824:22
1833:21

**limited** 1635:1 1645:2
1903:10

**limiting** 1861:2,4
1863:5,6

**limits** 1791:23 1812:25
1823:5

**lines** 1778:13 1939:17
1970:18

**lingering** 1630:1

**link** 1630:23 1911:9

**list** 1630:5 1631:13
1632:5 1704:24 1705:5,
16 1726:25 1919:15
1928:13 1931:24
1979:22

**listen** 1823:9

**listened** 1997:22

**listing** 1840:24

**lists** 1705:19

**literally** 1803:23

**LLC** 1882:25

**loaded** 1684:3

**Local** 1698:4,14,19,24
1699:14,23 1700:2
1701:16 1710:21
1723:22 1834:24
1837:11 1838:10
1839:25 1840:17
1841:9,14 1842:17
1843:6,14 1845:19
1846:11 1857:22
1863:19 1876:23

1881:12 1886:12
1888:19,24,25 1890:10,
15,18 1892:14 1893:15
1894:6,7,12 1895:2,12,
13 1896:20,23 1897:25
1899:13,16 1912:24
1914:5,10,19 1957:14
1958:1 1975:8 1977:4

**locate** 1679:8 1778:15

**logic** 1642:9,14

**long** 1674:6,11,21
1675:8 1679:18 1687:4
1696:5 1705:25 1714:8
1750:17 1762:7 1796:5
1797:22 1798:21
1806:23 1807:19
1808:12 1810:23
1812:6 1813:4 1831:2
1854:25 1855:15,22
1867:3,8 1877:6
1879:12 1885:9 1899:6
1911:13 1928:17
1934:6 1936:23
1982:12

**long-term** 1718:9

**longer** 1937:17 1938:1,
2

**looked** 1718:8

**lookout** 1973:13

**loose** 1831:10 1973:13,
14

**lose** 1726:12 1773:5
1848:8,21 1849:3
1870:20 1883:3,7
1885:16 1890:19
1937:25 1984:10

**loses** 1848:11 1849:10

**loss** 1719:11 1903:12

**losses** 1978:21,24
1979:2,6

**lost** 1848:18 1850:7
1880:19 1893:9 1914:8
1920:6 1957:13 1958:3
1965:10 1971:4,7
1974:15

**lot** 1629:16 1639:16
1668:8 1678:17
1679:14,15 1680:25
1720:10 1889:10

1981:24

**loud** 1779:18,20
1963:10

**love** 1712:14 1752:5
1821:24 1827:13

**luck** 1998:20

**lump** 1965:5

**lumped** 1967:17
1968:14,24

**lumping** 1966:17

**lunch** 1750:24 1811:21
1815:22 1819:20
1821:7

**Lyn** 1637:15

——————————

**M**

**machinations** 1960:12

**made** 1637:7 1652:3
1654:16 1655:15
1658:13 1660:2,19
1662:5 1676:20
1678:10 1682:6,18
1688:13 1692:6,10
1693:4 1694:12
1701:25 1702:20
1711:23 1716:3,7
1720:3 1731:5,6
1734:17 1757:12
1764:24 1766:25
1770:21 1776:3 1783:1,
16,21 1784:11,12
1790:22 1803:17
1805:20 1823:16
1824:21 1828:16
1847:19 1850:23
1876:7,13 1906:24
1912:24 1913:17
1917:1 1918:4 1925:7
1937:11 1938:10,19
1946:14 1947:10
1968:22 1975:10
1986:21

**magic** 1659:16,17
1660:23 1662:13

**main** 1637:16 1641:10
1682:11

**maintain** 1863:23

**maintained** 1763:1

**majority** 1687:13
1700:9

**make** 1630:16,24,25
1631:3,15,17 1633:3
1634:23 1636:15
1642:4 1643:7 1647:23
1651:20 1659:22
1662:19 1664:4 1668:3
1690:24 1693:1,8
1715:9 1719:4 1724:23
1725:6 1735:12
1751:10,13,17,23
1752:10,19 1756:18
1764:14 1770:15,24
1771:1 1802:22
1803:16 1804:9 1808:8,
11 1809:6 1812:4
1813:3,16 1829:9
1832:6,9 1834:6 1837:2
1839:21,22 1843:19,20
1862:9,16 1863:2
1866:23 1868:15
1874:14 1876:2
1897:24 1898:11
1911:8 1917:2 1922:22
1926:13 1927:23
1928:20 1929:15
1930:8 1931:23 1932:1
1937:2,12 1940:12
1945:3 1950:11,15
1955:8,14,17 1956:2
1958:12,13 1960:5,11
1971:22 1973:16
1980:3 1984:21 1987:7
1990:18 1992:11,25
1994:11 1996:17

**makes** 1634:4 1636:21
1668:4 1679:10
1693:11 1700:1
1735:18 1865:7
1874:17 1878:14
1892:5 1912:14 1915:4
1950:18,22 1954:15
1956:9 1982:23
1983:16,21

**making** 1644:10
1690:23 1691:8,11
1706:12 1710:17
1752:2 1806:25 1807:1
1876:9 1884:15
1928:12 1979:24
1981:20

**man** 1973:21

**manage** 1737:9

**management** 1658:24 1683:22 1693:6 1911:21

**manager** 1669:19 1670:19 1674:10,14,15, 16,19 1675:1,3,8,18 1708:3,5 1709:10 1715:12 1730:21

**managerial** 1911:19, 20,25 1912:6,8

**managers** 1911:23

**managing** 1696:12 1702:14

**manifest** 1651:1

**manifestations** 1650:23

**manner** 1767:12,14 1768:7 1782:1,16,20 1784:17 1785:6,16,24 1786:9,12,23 1787:4

**march** 1651:10 1712:2 1754:18 1763:21 1764:10,12,16,22 1765:1,10 1768:10 1769:18 1777:22 1778:5 1837:19,25 1839:14 1845:3 1911:2 1971:5,6

**mark** 1707:17 1910:4

**marked** 1631:7

**Massoni** 1628:21

**master** 1632:3

**match** 1915:12

**matches** 1945:9 1952:12

**matching** 1960:10

**material** 1692:11

**materials** 1702:24 1929:2,3 1998:21

**Matt** 1628:12 1857:19 1927:6

**matter** 1630:3 1667:2 1694:6 1743:6 1753:9

1774:6 1782:12 1799:7 1806:11,20,21,23 1809:25 1810:22 1820:23 1850:11 1880:21 1882:11 1967:20 1968:6 1973:16 1998:9

**matter-of-law** 1968:9, 13

**matters** 1867:4 1899:7 1937:4

**Matthew** 1628:11 1857:19 1875:3 1880:18

**MATTHEWS** 1933:22

**maximum** 1822:11 1956:6

**Mccall** 1844:2

**Mckeeby** 1628:15 1630:3,15 1633:24 1639:7 1652:23 1653:2, 9,13 1655:18,23 1657:17,19 1658:2 1660:16 1661:9 1662:2 1665:10 1666:1,14,25 1667:1,13,16 1668:4 1669:2,9,11,14,21 1670:2,11,21 1671:7,11 1672:1,12,21,25 1673:3,7,23 1674:2 1681:14,16,22,23 1682:20 1683:2,10,12 1685:13,18,19,25 1694:25 1695:21,22,24 1701:6 1704:19,20 1707:21,23 1708:13,18, 21 1709:4,24 1710:1 1711:8,9,15,19 1712:8, 11 1713:3,7,20,22 1714:6,7 1717:19 1718:17,19 1720:18,20 1721:10,12 1722:6,8 1723:7,8 1724:3,5,7,18, 20 1729:14,16 1735:6, 11,17 1736:2,7,9,20 1737:18 1738:1,7,15 1739:15,25 1740:1,3,6 1741:18,19,23 1742:7, 14,18,19 1744:20 1749:5,6,23 1750:1,9 1753:2,4 1757:15,17 1824:16 1830:11,18,21,

23 1831:2,6 1832:16,18 1835:24,25 1853:10 1854:18 1856:18 1857:20,21 1916:15,19 1917:6 1925:16,21 1926:14 1928:7,23 1929:8 1931:8 1959:17 1983:12,18 1985:10 1997:23,25 1998:4

**meaning** 1679:9 1716:23 1916:1 1929:21

**means** 1644:1 1679:17 1717:3 1719:7,12 1721:13,19 1722:22 1724:22 1734:5 1737:13 1762:5 1795:21 1796:16 1832:16 1854:16,23 1876:19,21 1905:2 1915:6,7 1916:5 1932:7,9 1955:4

**meant** 1688:1 1692:7, 16,17 1719:25 1720:23 1732:25 1772:4 1782:14,15 1783:20 1881:16

**meantime** 1749:20

**measure** 1970:19 1971:25 1989:17

**Mecca** 1643:18 1651:9, 10

**mechanism** 1723:3 1733:14 1737:9 1740:19

**meddling** 1844:25

**media** 1642:7 1649:3, 18 1663:23 1664:11,19, 22 1668:17 1677:14 1678:16,18 1683:23 1685:10 1725:3 1755:21 1770:1,4 1771:10,15 1774:14 1777:7,12 1782:17 1783:16,17 1784:13,14, 15 1834:13 1838:25 1841:2 1881:14,18

**meet** 1727:2 1844:8 1911:17

**meeting** 1642:2

1644:10 1655:5,13,22 1656:3,12 1657:12 1662:22 1671:20 1672:3 1675:23 1676:25 1677:6,8,9 1679:21 1680:9,18,20, 21,22 1681:3,7,12,20 1682:19,22,24 1683:9 1690:3,7,15,18,19 1697:9 1703:3,16,25 1705:6 1706:4,25 1707:7 1708:12 1727:7 1756:1,7 1767:16,18 1769:24 1839:17

**meetings** 1700:21 1704:2

**megabytes** 1631:8

**meggan** 1673:3,19 1674:5 1766:14

**Melissa** 1708:6 1709:10 1715:12 1730:22

**member** 1694:13 1698:1,3,6 1734:13,23 1761:9 1767:15 1787:10,11,19,20,22,25 1788:1,4 1789:19 1790:1,5,7 1794:6 1799:12 1802:23 1804:11,23 1805:21,23 1806:1 1808:9 1809:13 1845:14 1911:17,24

**members** 1734:14 1762:10 1788:3 1795:21,22 1805:25 1911:21

**members'** 1917:5

**membership** 1734:2 1767:16,18 1800:1,5

**memo** 1669:15,16 1670:3

**mention** 1837:23

**mentioned** 1676:2 1703:8 1709:14 1714:11,13 1724:16 1733:7 1736:10,12 1737:2,19 1825:3 1854:5 1866:25

**mentor** 1633:10

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 405 of 425   PageID 15808
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: merged..motions

merged 1724:14

meritorious 1869:24

merits 1637:12

message 1726:2
1731:21 1756:2
1763:14 1766:16
1776:19 1796:21,22
1799:13,17 1800:23
1802:13 1804:11
1814:17 1816:2
1835:12 1850:20

messages 1644:12
1646:5 1688:21 1711:4
1712:17 1713:11
1725:14 1747:6
1754:13 1755:6
1762:21,23 1770:23
1785:17,24 1786:13
1795:9 1796:3,4,25
1837:16 1838:14
1839:5 1840:5 1841:12
1845:21 1847:23
1849:5,17 1881:13
1883:13 1886:25

messed 1888:17

met 1680:13 1704:3
1707:8 1731:4 1980:22

method 1682:5
1740:23

Michael 1696:1

microphone 1634:15
1666:22 1779:3,15
1814:21

mid 1696:21

middle 1810:10

Midlothian 1734:24

midnight 1868:1

midway 1713:5

mike 1628:21 1694:25
1695:7 1727:2

mind 1629:7 1640:9
1872:23 1873:5 1881:1
1910:23 1930:1
1958:25 1987:6
1989:19

minds 1629:16 1828:24

minimis 1757:1

minimum 1676:7
1982:9

minute 1717:9 1754:16
1821:11 1829:12
1831:18 1897:16

minutes 1652:13,15
1679:19 1709:16
1714:9 1738:24,25
1739:11,17 1750:19,21
1752:6 1811:24,25
1822:6 1823:23,25
1824:3 1827:25 1828:3
1829:2,3,4 1830:7
1836:21 1867:9,11,18
1996:20 1997:3,8

miracle 1852:23

mirror 1902:7

miscarried 1678:8

mischaracterized
1665:13

mischaracterizes
1665:10 1769:6
1776:21 1797:24

mislead 1657:15

misled 1940:10

misremembering
1991:23

missed 1896:2,5
1911:6 1996:12

missing 1638:14
1961:13

mission 1716:12

misstated 1776:7

misstatement 1871:14

misstates 1911:16

mistake 1710:17
1770:20,21 1771:4,6,7,
8,9 1773:17 1774:12,13
1776:4,13,20 1777:2,6
1781:11 1782:7,8
1783:1,16,21 1784:11,
12 1815:4 1834:11,12,
13

mistakes 1771:20

misunderstanding
1964:10

misuse 1781:14

mitigate 1825:24
1923:25

mitigation 1635:2
1922:21 1923:1,10,13
1924:4,10,15 1994:24

mixed-motive 1946:11

modicum 1996:20

modified 1957:12

modifier 1878:12
1954:12

modify 1720:11
1730:16

moment 1712:6
1826:21 1941:17
1986:20

moments 1859:10

monetary 1903:12
1909:20 1920:5

monetized 1909:13,14,
25

money 1676:15
1721:25 1754:19
1777:22 1790:7,8,11
1794:10 1807:13
1965:7,9 1966:10
1975:17 1987:22

monitor 1653:5,7

monitors 1667:6

Montgomery 1637:16

month 1643:20

months 1727:13,19

morale 1758:22

Morgan 1686:22,23
1687:1

morning 1629:12
1635:6 1638:14,15
1683:16,17 1686:20
1693:25 1694:1
1708:16,24 1738:17
1855:1 1862:13
1902:20 1903:6
1996:25

morning's 1630:2

Morris 1628:16 1640:8,
14,19,20 1642:25
1643:3 1644:19
1646:20 1649:5,6,20
1650:15 1686:16,18
1689:1,4,14,15
1691:12,14 1693:21
1757:15 1857:21
1859:19,25 1860:5,13,
20 1861:1,9,22 1862:14
1863:8,14 1873:16
1874:4 1875:23 1877:5,
12,15,16 1878:9
1885:14,19,20,23
1890:23 1891:7 1894:1
1901:20,22 1902:19
1903:4,25 1904:3,14,
19,22 1905:8 1907:17,
19 1908:4,17,21
1909:9,13 1910:8
1912:20 1913:6,10,12,
22,25 1915:21 1916:9
1917:7,11,22,25
1918:1,3 1919:11
1922:4,18 1923:15
1924:6,18,25 1925:16
1932:3,6,11 1933:4,8
1939:9 1941:2,13
1942:5,12 1944:6,9
1947:1,5,19 1948:1,12
1950:6 1951:14,22
1953:17,22 1954:13
1957:6,19,22 1963:9
1966:1,3 1974:5 1975:6
1978:13,18,25 1979:3,
16 1980:9,17,24
1981:5,13 1982:23
1986:14 1987:10
1988:23 1989:12
1990:5,25 1991:8,19,22
1992:3,10 1993:2,19,22
1994:3,11 1995:1,4

Mota 1920:4

motion 1649:22
1751:10,13,17,23
1752:2,17 1753:7
1757:12 1759:3
1825:12 1828:13
1830:9 1832:1 1837:2,4
1851:18 1882:1 1935:7
1997:14

motions 1830:10
1831:21 1837:5

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 406 of 425   PageID 15809
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022                      Index: motivated..object

1851:24 1852:1
1856:14,17,22

**motivated** 1797:22
1798:21 1845:4
1876:22 1877:1
1888:22 1889:1
1890:24 1897:1 1898:4

**motivating** 1755:1
1839:6,10 1875:1,17,20
1876:19,21 1877:3
1889:7,18,21 1890:4,
10,17 1891:5 1892:4,
22,25 1893:3,5,18
1947:9,12

**motivation** 1758:5

**motivations** 1845:19

**motive** 1902:14

**move** 1634:14,18
1635:14 1637:21
1655:23 1657:19,23
1666:15 1669:22
1670:21 1707:19
1708:18,21 1725:20
1726:10 1727:10
1741:23 1742:12
1754:1,8 1764:15
1765:3 1770:5,6
1786:21 1792:5
1793:12,23 1794:17
1795:3,25 1797:9
1799:2 1801:8 1808:24
1810:10 1817:13
1819:8 1837:10 1839:8
1840:14 1858:8 1861:6
1887:8 1907:19
1945:17

**moved** 1894:16 1946:3

**moving** 1724:24
1725:7,25 1746:18
1756:5 1859:4 1974:24

**multi-defendant**
1962:21

**multiple** 1752:16
1757:23 1806:14
1936:16 1952:14
1982:24 1986:22

**multiples** 1952:5

**muscle** 1821:23,25

**mute** 1653:5,7

**muted** 1742:11

---

**N**

**nail** 1935:17

**names** 1740:21,22

**Naomi** 1670:7 1838:19

**narrow** 1909:8

**National** 1884:3,6,8,25

**native** 1928:5 1931:10

**nature** 1675:6 1682:7,
13,23

**necessarily** 1643:7
1651:15,18 1684:16
1971:10 1981:22

**needed** 1641:20
1642:21 1660:21
1662:6 1663:3 1671:25
1732:7 1746:20
1826:10 1831:1

**neglected** 1667:4

**negligence** 1962:2

**negotiated** 1762:19
1842:24

**negotiating** 1838:19,
20,25

**nerd** 1898:13

**neutral** 1888:1
1905:16,18

**Nevarez** 1838:10
1862:7

**newest** 1895:24

**news** 1985:2

**next-to-the-bottom**
1862:11

**nexus** 1677:16 1678:20
1756:22 1846:3,5
1952:4 1954:3

**night** 1629:9 1630:19
1639:1 1926:5,8

**night's** 1638:14

**nights** 1638:18,25

**Ninth** 1955:5

**NLRA** 1884:11

**NLRB** 1883:15

**nominal** 1922:11,14
1976:4,20 1987:24
1989:13,18,19,23,25

**nominals** 1976:16
1977:1 1990:3,8,9,10,
14,16,19

**non-christian**
1899:17,25 1943:3

**non-discriminatory**
1755:11 1840:2,3,8
1851:17 1881:11,17

**non-economic**
1978:16,20,24 1979:2,
6,21

**non-member** 1800:2,
7,24

**non-overnight** 1820:9

**non-responsive**
1765:3 1770:6 1786:21
1789:22 1792:5
1793:12,23 1794:17
1795:3 1796:1 1797:9
1801:8 1808:24
1810:10 1819:9

**non-union** 1693:14

**nonprofit** 1923:22

**noon** 1639:21,22

**normal** 1670:18
1793:20 1794:6,25
1867:5 1905:4

**Northern** 1844:1

**notation** 1866:25
1867:2

**note** 1630:16 1634:5
1637:25 1699:13
1722:17 1849:6 1876:9
1890:23 1892:6
1922:22

**note-taker** 1676:24
1677:2

**notebooks** 1632:12

**notes** 1634:5 1642:23
1681:12 1702:19
1708:11 1709:12,22

1924:21

**notice** 1642:10 1644:11
1645:17,19 1646:3,15,
21 1663:2 1702:15

**noting** 1636:7

**notion** 1640:21
1641:19 1757:19,23

**November** 1697:24

**NRLB** 1941:25

**nullifies** 1881:20,21

**number** 1633:23
1634:3 1635:11 1901:7
1931:12 1935:10,12,19,
23 1936:2 1941:6
1946:1 1956:6,7
1958:16,21 1959:1,19
1962:14 1967:8

**numbering** 1667:19

**numbers** 1635:25
1908:14 1927:18,21
1958:17,19 1963:19,23
1964:1,2,4

**numerous** 1704:16
1706:11,22 1827:13
1851:6 1936:17

**nurse** 1641:14

**nursing** 1641:15,16,19

---

**O**

**oath** 1654:2 1686:8
1712:5 1760:1 1779:10

**object** 1632:17 1671:22
1672:9 1734:11
1735:14,22 1757:22
1765:24 1767:24
1768:18,24 1769:6
1772:3,13,14,20
1776:7,15,21 1778:18
1779:21 1781:14,21
1783:23 1784:19
1785:9,25 1787:13
1791:2,7,9 1793:25
1795:12 1796:13
1797:24 1802:1,5,17
1803:19,21 1804:13
1805:13 1806:7,13
1807:3,17 1808:16

1811:5 1813:7,8
1814:18 1816:14
1818:20 1819:8 1864:3
1865:17 1877:5
1887:17 1911:16
1920:1 1934:12 1953:7,
8,9 1956:21,22,24
1965:2 1973:22
1980:17 1988:20,23

objected 1635:23
1636:9 1637:15
1638:22 1761:9,12

objecting 1734:1
1754:19 1768:8
1837:23 1869:13,17,22
1870:1

objection 1630:6
1633:21 1634:23
1635:3,11 1636:10,11,
12,17,21 1637:11,16
1638:11 1639:5
1655:18 1657:17,25
1658:2 1659:23
1660:16 1661:9,13
1662:2 1663:4,7,10
1665:10,16 1666:1,12,
14 1671:1 1686:14
1700:25 1701:3
1708:15 1712:21
1717:12 1723:23
1736:17,23 1737:25
1738:9,12 1745:13,17,
23,25 1764:14 1765:2
1766:1 1768:22 1770:5
1772:6,16 1781:18
1786:20 1789:21
1790:22 1792:4
1793:11,22 1794:16
1795:2,23 1797:8
1801:7,12 1802:3
1803:4 1805:6 1808:23
1810:9 1811:7,13
1812:9,10 1813:13
1817:24 1825:14
1833:5,15 1835:2,4,6
1853:21 1863:23
1865:13,18 1869:2
1870:5 1872:2 1873:14
1874:1 1880:2,3 1889:4
1897:12 1898:9 1902:2
1922:5,8 1924:14
1941:3,9,16,23 1942:7,
11,14,19,24 1943:12
1945:12 1946:11,14,19

1947:9,14 1948:6,9,10,
16,21 1951:12 1956:21
1957:4,11,15 1973:25
1974:21,23 1975:5,10,
18,25 1976:2,6,7,8,15,
21 1977:21 1978:4,15
1981:18 1986:6,8
1988:19 1990:24
1992:13 1993:11,13
1994:2,3,11,15,22
1995:1,5,9

objections 1629:8,11
1635:6,9 1636:25
1695:18 1708:23
1772:23 1773:4,5
1784:5 1792:9 1811:8
1873:8 1882:16 1921:3
1941:11 1947:4,5
1957:3 1975:1,14,15
1976:20 1977:7 1980:7,
13 1986:1 1988:20
1989:8,10 1993:20
1994:7,25 1995:15
1997:12,16

objector 1732:22,23
1734:13,15 1802:10,12
1834:1

objects 1634:8

obligation 1659:4
1665:18 1843:19
1902:25 1903:19
1905:25

obligations 1758:16
1843:14,17 1873:21

obscene 1883:9
1885:25

observance 1888:23
1889:2,6 1890:9
1893:20 1902:15
1905:3,15

observances 1843:21
1845:25 1890:4,17
1893:14 1898:7,24
1899:4 1901:8 1906:1
1907:9 1947:12 1982:5,
14,18,21 1983:4,16,20
1986:25 1988:1,4

observations 1675:4
1680:18

obvious 1646:7

occurred 1675:23
1730:12 1796:13

occurrence 1864:9

occurs 1644:9,17
1864:10 1902:21

ocean 1822:4

odd 1960:8 1970:8

off-time 1666:10

offensive 1883:5
1885:25

offer 1716:22 1731:13
1732:10 1735:12,15,24
1739:7,22 1742:1,9
1771:3 1781:12 1782:6,
9 1783:9 1822:13

offered 1635:5 1638:12
1717:6 1718:22 1745:3

offering 1719:25
1782:25

office 1698:8 1727:9
1770:22 1771:13
1777:8 1782:18
1783:13,18 1784:10,16

officer 1628:3 1652:17,
19 1698:5 1733:13
1739:19 1799:18
1800:24 1802:13
1813:17 1831:13,15
1857:9,11 1925:12,14
1998:24

officers 1733:10,16

official 1838:5 1840:17
1844:11,13 1847:10,12,
14,18 1850:22 1870:20,
21 1896:24 1897:3
1898:1 1936:13
1938:19

Officially 1800:8

officials 1838:24
1870:23 1884:22,23
1911:22

omission 1866:14

omit 1866:16,25
1871:19,23 1915:24

omitted 1952:18

omitting 1952:24

ongoing 1722:18

open 1669:4 1679:10
1736:5 1752:24
1769:21 1775:20
1815:24 1817:18

opening 1760:17
1823:6 1825:10
1826:24 1858:12

operated 1700:2

operates 1699:21

operating 1699:25
1827:7 1936:20

operations 1696:4,8
1700:5 1724:14 1727:2

opinion 1664:2 1790:9
1807:4

opinions 1781:13

opponent 1839:22

opportunity 1706:16
1741:8,11 1827:9
1830:12

oppose 1824:17

opposed 1762:17,20
1802:18 1849:19
1934:21 1944:22
1945:20 1966:17
1970:11

opposing 1754:17
1768:15 1825:8,16
1837:18,24 1845:15

opposition 1754:22
1878:3,11

opt 1734:11

opted 1769:23

optimistic 1853:17

option 1716:18,22
1717:1 1721:25
1805:21 1889:20

options 1716:15,17
1717:5 1732:9,10

order 1639:18 1827:7,9
1830:15 1860:9
1865:18 1898:23
1899:3 1982:15,16,17

org 1700:13

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 408 of 425   PageID 15811

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: organization..permit

**organization** 1699:23

**organizational**
1877:20 1878:11
1879:14

**original** 1826:9
1987:10 1988:12
1989:4

**otherwise-protected**
1883:9

**outcome** 1644:18
1691:7

**outset** 1854:5

**outstanding** 1744:16
1755:9

**overlapping** 1736:11

**overlay** 1962:3

**overlooked** 1758:15

**overrule** 1635:4
1638:11 1659:25
1670:25 1701:4
1717:13 1736:18,24
1738:5 1745:19 1765:4
1787:15 1792:10
1801:13 1869:19
1870:4 1871:25
1872:21,25 1874:12
1880:2 1882:15 1886:3
1888:13 1893:23
1901:10 1907:2,12
1918:23 1924:14
1933:2,17 1935:25
1939:6 1940:22 1942:3,
9,15,24 1943:6 1944:1
1946:23 1948:6,15
1953:15 1957:11
1974:21 1975:12,25
1989:3 1994:21
1995:10,14

**overruled** 1712:22
1717:17 1745:24
1786:2 1807:6 1882:1
1886:4 1917:6 1996:6

**overrules** 1637:11

**overruling** 1635:6
1637:11 1708:24
1781:20 1796:17
1869:2 1873:4 1921:22
1945:24

**overstatement**
1903:16

**overstates** 1903:7

**owe** 1965:8

**owes** 1870:23 1965:7

**owing** 1966:9

---

**P**

**P-A-R-K-E-R** 1704:12

**p.m.** 1998:25

**packet** 1705:7,8 1706:3

**pages** 1707:7 1729:7
1849:16 1858:12,14,21
1859:13 1860:18
1861:24 1863:20
1867:8 1880:8,22
1888:17 1934:6

**pagination** 1876:10
1908:12

**paid** 1712:2 1721:15,25
1761:15

**pain** 1859:8 1992:16

**panel** 1740:21,24,25

**paper** 1632:22 1921:6

**paragraph** 1724:8
1747:17,18 1864:8,12
1870:10 1874:21
1875:8 1876:18 1880:6
1881:2,5,8,21 1882:15,
19 1886:11 1888:18
1892:10,17 1893:17
1894:6 1895:11
1896:20 1898:19,21
1899:4,10 1904:15
1908:7 1912:25 1913:4,
7,9 1924:20 1932:7

**parallel** 1907:4

**Parenthood** 1763:21

**Parker** 1704:12
1713:18 1743:11,16,17
1744:2,12,23 1745:1

**parlance** 1732:22

**parse** 1961:3

**parsed** 1808:6

**parsing** 1809:22

**part** 1630:22 1643:18
1662:25 1666:3,5,14
1692:13 1696:13,15
1702:14,23 1703:7
1716:4 1726:19
1750:25 1754:22
1771:15 1780:5 1823:2
1844:5 1848:20
1849:19 1863:25
1864:17 1888:10
1897:5,23 1926:19,20
1942:21 1944:11
1951:11 1952:1,2

**partially** 1692:5,7,16,
17,19

**participant** 1690:10

**participated** 1740:7
1839:15

**participating** 1690:25

**parties** 1690:2 1724:9
1728:25 1822:4
1827:17 1863:18
1873:21 1931:13

**partner** 1689:25

**partnered** 1689:21

**parts** 1851:6

**party** 1737:15 1998:11,
17

**pass** 1666:18,22
1683:10 1693:21
1694:15 1742:21
1819:17

**passed** 1832:14

**passing** 1666:19
1680:14,15 1819:16

**passionate** 1712:25
1743:19 1744:3

**past** 1725:25 1825:18
1847:20 1855:24
1882:10 1997:2

**path** 1746:20

**pattern** 1862:6 1887:18
1890:25 1915:10,11,18,
20,22 1918:12,14,19
1947:15 1978:22
1981:6,10,11 1987:21

1989:1,13

**patterns** 1887:23,24
1888:13 1891:16,18,24
1916:1 1917:16
1918:24 1979:5 1990:1,
2

**patters** 1891:20

**Paulo** 1628:15 1857:21

**pay** 1719:23 1720:1,6,7
1721:14,15,17,23
1722:3 1761:4 1769:18
1908:18 1910:10,16,21,
25 1911:10 1919:19
1920:1,5,6,9,14
1921:17 1922:2
1961:17,18 1965:10,11,
15,16 1967:6,14,16,21,
24 1968:7,11 1969:16,
19 1970:11 1971:4
1974:16 1977:4,7,13
1994:5,7

**pays** 1959:20

**peace** 1833:21

**penalizing** 1950:25

**people** 1632:22,24
1650:9 1651:14
1664:10 1680:5
1697:13 1713:2
1719:14 1731:11
1734:11 1735:3
1769:17 1808:22
1834:17 1862:21
1917:4 1928:4,5 1958:6
1997:2,3

**percent** 1688:17

**perfect** 1871:2 1965:23
1967:5 1977:25 1986:9

**perfectly** 1756:6
1869:3 1997:8

**performance** 1697:17

**perfunctory** 1869:25

**period** 1674:25 1698:2
1703:17 1714:24
1715:3,4 1720:15
1722:11 1910:12

**perk** 1676:10

**permit** 1972:6

**permitted** 1723:20,21

**perplexed** 1682:25

**person** 1649:24
1679:24 1704:4
1737:19 1769:15
1793:2 1799:19 1801:2,
9 1802:15 1809:7
1812:18 1900:8 1931:5

**personal** 1651:17,18
1652:2 1661:20 1664:1
1670:24 1675:4 1678:9
1724:1 1735:1 1758:2
1763:24 1764:5
1862:25

**personal/
interpersonal** 1838:7

**personally** 1826:7

**personnel** 1738:20
1753:16 1819:24
1836:18

**persuade** 1939:3

**pertains** 1635:12

**pertinent** 1705:4
1706:7

**petition** 1762:11
1833:25 1849:20

**Phoenix** 1674:17
1684:19,20

**phone** 1946:17

**photograph** 1931:7
1954:4 1998:2,3,5,8

**photographs** 1678:21,
23 1679:12,15 1952:4

**photos** 1678:24
1679:13 1703:10
1756:22 1930:6

**phrase** 1878:21
1879:13 1898:6
1903:22 1914:3 1915:1,
7 1944:16 1951:12
1978:24 1982:4 1987:5
1992:22,24

**phrased** 1889:9 1893:1

**phraseology** 1639:4

**phrasing** 1916:4
1985:20

**physical** 1802:23
1803:7,17 1804:10,19,
20 1805:11,20 1806:2
1807:15,22 1808:7,12
1809:6,15,17 1810:7
1811:4 1812:5 1813:4

**physically** 1810:8

**pick** 1676:16 1963:22

**picked** 1963:18

**picks** 1741:1

**picture** 1678:25 1865:6
1929:21

**pictures** 1679:2,3
1692:21 1703:5
1754:21 1930:5,7,22,24

**pieces** 1850:9

**pin** 1906:6

**pivot** 1987:20

**place** 1653:17,23
1703:19,24 1746:17
1804:25 1861:6
1864:10 1893:9
1903:23 1913:24
1933:16 1937:5

**placeholder** 1917:21

**places** 1864:10 1923:8
1954:22

**placing** 1804:13
1812:10

**Plainly** 1911:20

**plaintiff** 1753:25
1854:7,10,13 1857:18
1859:16,24 1860:4,12,
19,25 1861:14,21
1862:3 1863:7,13
1869:22 1873:11
1874:25 1875:15
1877:17 1879:8 1880:5
1883:13 1886:19
1888:21 1890:2,3
1892:11 1893:10,12
1895:15 1896:10,24
1897:1 1898:2,4
1899:13,16 1901:15
1908:2,8,19 1911:23
1913:2,14 1914:14
1922:3,13 1924:17,24
1933:20 1936:12

1937:10 1941:1,12
1942:11 1944:4 1945:6,
7 1948:1 1949:24
1972:13,15 1973:25
1974:23 1980:8
1981:14 1983:19
1984:7,11 1987:25
1988:3 1989:11 1992:6

**plaintiff's** 1673:12
1750:7 1854:14
1937:15

**plaintiffs** 1825:1
1854:6 1874:20
1919:10

**plan** 1629:21 1635:6
1673:13 1750:19
1820:19,20 1952:23

**plane** 1631:4

**planned** 1763:21
1824:18

**planning** 1638:3
1728:13,15

**play** 1644:12,16 1652:5
1659:15 1826:17
1912:14 1956:18
1963:17 1966:20

**played** 1726:7 1874:25
1875:2,16,18,19,21,22
1876:8,14

**plays** 1966:21 1974:8

**plenty** 1923:8 1996:3

**plot** 1988:10

**plug** 1709:17

**plugged** 1709:18

**plural** 1704:7

**podium** 1754:9 1837:6,
8

**point** 1635:5 1643:12
1647:20 1649:10
1655:10,12,15,16
1656:8,9,25 1657:5
1663:5 1669:8,25
1675:22 1676:1
1696:13,14 1698:7
1700:14 1706:17
1707:4 1710:23 1726:8
1731:16 1733:17
1736:19 1738:11

1744:23 1747:4 1755:9
1767:8,11 1774:24
1775:10 1783:3
1784:24 1785:1
1798:19 1802:8,20
1809:12,22 1811:22
1822:5,15,16 1826:4
1829:25 1830:7 1840:9,
12 1849:10 1851:23
1852:1,8 1862:17
1864:19 1865:22
1872:25 1873:5
1890:22 1891:19
1899:6 1905:21 1914:1
1915:5 1918:11 1931:3
1933:13 1934:11
1936:4 1940:10
1954:23 1963:13
1966:19 1968:9,13,14
1969:25 1971:9 1974:2
1981:2,4 1982:11
1990:6,17

**pointed** 1779:23

**pointing** 1919:4

**points** 1722:17,18,22,
24 1770:14 1828:15
1982:2

**police** 1803:9,12
1805:11,22,24 1806:1,
3,5 1809:8,14,19
1816:9 1817:8,11
1818:4,7,13,19,24
1819:3,7,13

**policies** 1642:8 1644:5,
8,16 1648:22 1665:7
1672:7 1682:8,15
1699:12 1724:25
1755:21 1758:15,16
1840:24 1841:1,5
1842:6,23 1844:25
1881:14,18 1887:3
1905:18 1937:4,6

**policing** 1725:2

**policy** 1641:4 1642:11,
13 1643:25 1644:20,21
1646:22 1648:14
1649:3,9,12,18,25
1650:2 1658:9 1659:18
1663:24 1664:17,18,19,
23,25 1665:19,21,24
1668:18 1671:13,18
1672:4 1687:18,24

1688:7 1690:14 1691:10,22 1692:15,19, 24 1693:19 1716:12 1720:25 1722:14 1725:2,3,4 1747:2 1756:12 1758:11 1770:2 1774:14 1783:16 1902:24 1905:17

**political** 1839:17 1844:3

**pondering** 1979:24

**portion** 1770:10 1777:7 1824:3

**portrayed** 1782:21

**pose** 1640:7

**position** 1642:14,17 1658:21 1674:9,18 1683:22 1687:11 1696:5 1762:12 1802:6 1804:14,25 1813:5 1824:12,16 1826:2 1827:16 1877:8 1878:21 1891:9 1906:8 1932:17 1944:19 1953:10 1955:3

**positions** 1687:8 1824:15

**possibly** 1715:13 1845:10 1938:7

**post** 1643:7,10 1661:20 1666:7 1682:11,13,17, 23 1766:15,18 1767:4, 17 1770:20 1793:6 1835:16

**post-trial** 1912:13 1921:5

**post-verdict** 1920:18 1958:13 1960:12 1968:5 1990:10

**posted** 1654:23 1664:14 1756:25

**posterity** 1856:17

**posts** 1646:5 1652:3 1663:24 1665:25 1679:4,7 1684:8,9 1692:18 1713:9 1756:23 1757:20,23 1758:24 1767:5

1773:17 1837:22 1845:23 1846:4 1881:13

**posture** 1639:6

**potential** 1659:4 1901:4 1903:11 1960:8

**potentially** 1645:21 1687:23 1938:13,21 1961:3 1962:5 1966:18 1968:18 1970:25

**powered** 1709:16

**powerful** 1829:24

**Powerpoint** 1925:23 1926:10,14,19,21 1927:1,24 1928:4,18 1931:10

**Powerpoints** 1928:1

**practical** 1643:16

**practice** 1643:19 1650:23 1651:6 1902:15 1904:10 1905:3 1932:14 1948:2 1953:25 1954:6

**practices** 1642:8 1672:8 1758:10 1843:21 1846:1 1888:23 1889:3,7 1890:4,9,17 1893:14,20 1894:14 1898:8,12,24 1899:5 1901:9 1905:16 1906:2 1907:10 1947:12,22 1982:6,15, 18,21 1983:21 1984:12 1988:5

**pragmatist** 1987:20

**pray** 1641:15

**pre-abercrombie** 1647:10 1650:14

**pre-approval** 1663:24 1664:13 1665:25

**pre-knowledge** 1645:2

**preamble** 1973:24 1974:2,4

**precede** 1947:21

**precious** 1764:2

**precise** 1916:25

**precisely** 1878:17

**predicate** 1735:20 1774:21 1948:11 1980:21

**predominant** 1987:24

**prefer** 1740:22,23 1879:19 1918:11 1928:24 1931:14 1932:19

**preference** 1651:17,18 1867:14

**preferences** 1652:3

**preferred** 1866:6 1868:1 1885:18 1887:25

**prejudice** 1637:17 1826:5 1966:16

**prejudiced** 1827:10

**preliminarily** 1822:24

**preliminary** 1735:14 1859:14

**premised** 1757:19

**preparation** 1702:11 1703:18

**prepare** 1702:9

**prepared** 1630:18 1744:17

**preponderance** 1851:8 1859:22 1949:23

**presence** 1731:6 1739:22 1751:10 1752:21 1753:9 1857:16

**present** 1673:11 1704:14 1705:7,8 1708:11 1741:8 1759:20 1826:8

**presentation** 1824:18

**presentations** 1744:1

**presented** 1680:25 1704:16 1777:8 1815:1 1827:2 1828:11 1844:12 1847:7 1862:8

1887:20

**presenting** 1748:9 1821:21

**preservation's** 1936:9 1943:24

**preserve** 1865:18 1868:9,10,12 1939:2 1943:12

**preserved** 1856:24 1865:24 1867:13 1868:19 1871:3 1877:11 1936:1

**preserving** 1868:4

**preside** 1700:6,18

**presided** 1700:8,22

**president** 1646:7 1754:13 1761:2 1762:23 1763:20 1765:8,13,19,22 1766:20,22 1767:7 1778:3 1786:19 1789:20 1793:3 1795:1 1797:5 1799:7 1806:11, 20 1807:9,11 1808:5,14 1809:25 1810:22 1812:5 1813:4 1835:13 1838:10,12,22 1843:5 1844:5,19,22 1848:9 1912:8 1938:12 1939:19

**presidential** 1838:12

**presides** 1737:14

**presumes** 1871:8 1872:5,10

**presumption** 1844:10, 15 1871:16

**presupposes** 1951:23, 24 1952:10 1956:5

**pretrial** 1636:12,21,25 1639:6 1860:9

**pretty** 1677:13 1678:15 1682:21 1683:19 1698:14 1702:11 1706:13 1710:14 1720:11 1721:5 1723:1 1726:8 1727:25 1729:13 1730:7 1747:8 1855:15 1912:21

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 411 of 425   PageID 15814
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022        Index: prevent..Pryor

1930:22

**prevent** 1912:25
1936:17

**prevented** 1843:9

**preventing** 1850:21

**previous** 1675:24
1680:11 1683:8
1705:16,18 1725:14,24
1994:7

**previously** 1671:9
1760:11 1771:3,24
1787:14 1881:9
1936:10

**primarily** 1697:8
1930:9

**principle** 1883:23

**principles** 1746:12,13

**print** 1852:10,15 1853:3
1995:21 1996:9

**printed** 1853:6

**printing** 1832:4,7
1925:6

**prior** 1634:25 1644:2
1674:14,15 1675:15,17
1677:8,9 1681:7 1687:1
1696:23,24 1702:3,21
1703:3 1727:1 1732:20
1733:18 1765:15
1774:9 1775:4,14
1776:5 1777:15
1792:18 1902:21
1991:3 1995:18

**private** 1796:22
1835:12 1849:17
1936:20 1937:1

**privately** 1837:17
1839:5

**pro** 1735:2 1764:11
1850:10,12

**probation** 1745:7

**problem** 1632:20
1633:14 1634:14
1653:3 1750:5 1756:23
1866:11,13 1875:14
1901:2 1961:19,20,23,
24 1966:8 1970:24
1977:14 1982:12

**problems** 1675:25
1761:25 1858:6
1940:20 1959:18
1960:14,17

**procedurally** 1751:14

**procedure** 1665:24

**procedures** 1699:12
1716:12 1937:4,6

**proceed** 1654:2,6
1669:9 1670:10
1686:16 1695:21
1830:10

**proceeding** 1638:8
1770:18 1771:25
1772:8,10 1777:15
1779:8 1866:9 1867:12

**proceedings** 1636:13
1667:8 1669:4 1735:9
1736:5 1741:2 1750:2
1752:24 1773:2
1775:20 1781:7
1814:24 1815:24
1816:18 1817:18
1921:5 1934:17
1998:25

**process** 1647:21
1652:6 1663:23 1664:5,
22 1676:3,17 1677:4
1679:16 1698:8
1701:11,17 1703:16
1710:11 1714:16
1716:5 1717:4 1718:4
1726:18 1728:11
1729:22 1730:12,20
1732:7,11,12,20
1733:3,6,15,17,20
1734:16 1736:14
1737:4,5 1747:4 1847:3
1851:13

**processes** 1699:7
1834:7

**processing** 1869:25

**professional** 1698:25
1801:5,6 1931:6

**professionals**
1743:18

**project** 1881:25

**promise** 1713:5,13

**promoted** 1696:16

**promotion** 1696:20

**prompt** 1684:1

**prong** 1842:12,19
1844:1

**prongs** 1843:25 1844:7

**proof** 1735:12,15,24
1739:7,23 1742:1,9
1998:9

**prop** 1850:14

**proper** 1868:2 1874:2
1883:2 1933:12
1956:19

**properly** 1774:10
1775:2 1878:2

**proportion** 1966:23

**proportionate** 1961:8,
11,25 1962:2,19

**proposal** 1717:20
1718:14 1917:23
1987:11

**propose** 1730:16
1735:13 1887:18
1904:24 1905:7
1932:11

**proposed** 1897:7,20
1925:17 1932:20
1945:5 1947:24 1957:8
1972:10

**proposing** 1914:13

**proposition** 1641:11
1643:6 1879:18

**proselytize** 1903:20

**protect** 1758:16
1841:20 1878:18
1937:11

**protected** 1659:20
1663:17 1754:15,23
1756:10 1757:20
1767:19,21 1771:17,18
1797:18 1798:16
1810:23 1813:18
1838:3 1840:6 1842:4,
5,22 1845:12,22,24
1848:20 1849:2
1875:16 1877:25
1878:1 1883:19

1884:20 1886:21,25
1900:6,7,10,16,22
1936:16 1937:19
1938:6,18 1944:14,21,
25 1945:8 1991:1,24
1992:7,9,24

**protection** 1822:20,25
1848:19 1849:3,11
1850:7 1881:22 1883:4,
7,14 1885:1,16

**protections** 1840:10,
13 1848:22 1881:20

**protective** 1874:25
1937:7

**protest** 1845:2

**proud** 1681:3

**prove** 1869:22 1874:22
1875:9,10 1889:17,21
1892:11,24 1893:10,12,
19 1894:7 1895:11
1902:1 1924:5 1955:12
1990:3

**proved** 1936:12 1945:6
1948:1,23 1953:4
1972:13,16 1992:6

**proven** 1989:21

**proves** 1955:24

**provide** 1645:20
1646:15 1651:21
1652:1 1698:21 1706:9,
15 1748:2 1822:1
1881:16 1903:1,19

**provided** 1651:25
1704:25 1705:2
1706:21 1708:11
1723:17 1744:17
1781:10 1882:24
1903:14

**providing** 1825:25

**province** 1900:19

**proving** 1892:21

**proximity** 1849:14

**Pryor** 1628:12 1631:20
1632:11 1633:4 1634:3
1653:19 1654:3,6,8
1655:1,2,21 1656:2
1657:22 1658:7 1660:4,
22 1661:10,15 1662:9

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 412 of 425   PageID 15815
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: public..questions

1663:7,9,12,13
1665:12,17 1666:8,18,
20,21 1669:24 1670:9,
23 1671:12,22 1672:9,
17 1673:13 1685:15,16
1749:1 1750:25
1751:11,14 1752:3,19
1753:8,23,24 1765:24
1767:24 1768:18,23
1769:6 1772:3,13,20
1773:1,7,10,19
1774:10,18 1775:5,11,
17,24 1776:7,15,21
1778:9,15,18 1779:17,
21 1781:14,19,21
1783:23 1784:3,19
1785:1,9,14,25 1787:13
1788:12,22 1789:3
1791:2,7 1792:6,16,19
1793:25 1794:2
1795:12,15 1796:13
1797:10,24 1802:1,5,17
1803:1,5,19,21 1804:13
1805:6,13 1806:7,13
1807:3,17,21 1808:16
1811:1,5,9,14,17,19
1812:9 1813:7,13
1814:18 1815:6,21
1816:14,20 1817:3,23
1818:20 1819:2
1820:13,23 1821:1,9,15
1823:21 1827:4,6
1829:5,10 1831:8
1832:21,23 1833:7,10,
18 1835:8,19 1836:3
1852:17 1853:8 1854:7,
10,14 1857:19 1926:17,
22,25 1927:3,16,20
1928:9,25 1929:10,13
1962:13,16 1964:10
1967:20 1968:1 1969:3,
20 1970:1,16,22
1971:16,23 1972:3,4,20
1973:3,18 1985:5,9
1996:23,24 1997:12

**public** 1679:9,10

**publish** 1630:10
1658:4 1669:23
1670:22 1708:21
1709:1

**published** 1630:5
1668:10

**publishing** 1630:7
1671:4

**pull** 1669:21 1678:21,
23 1681:14 1689:1
1704:19 1705:17
1718:17 1741:18
1747:11 1858:9,23
1882:11 1912:17
1928:6,15 1930:14
1940:2 1949:20
1954:22 1955:21

**pulled** 1667:10 1727:21
1821:23

**pulling** 1929:2,4,5
1930:6 1952:3

**punish** 1800:7

**punishment** 1869:16

**punitive** 1661:11
1911:11,12,16,17
1912:1,19 1918:6
1919:1,3,16 1981:14,21
1986:23

**punitives** 1912:5
1913:13 1919:9,18
1975:7,10,19,20,25
1980:16,22 1981:19
1987:7

**purporting** 1904:4

**purpose** 1741:25
1746:16 1778:7 1828:4
1873:19,22 1878:15
1880:1 1934:15
1988:13,14 1990:19

**purposes** 1635:2
1784:25 1813:21

**pursue** 1723:21

**purview** 1912:17

**pussy** 1764:25

**put** 1629:17 1632:16
1633:6 1645:19
1646:14 1662:23
1663:2 1670:6 1676:13,
15 1689:3 1691:6
1722:3 1723:14
1725:22 1727:16
1731:15 1747:20
1776:24 1778:22
1812:18 1821:18
1827:19 1836:11
1849:13 1850:8 1861:6
1868:7,8,9 1895:16

1897:18 1903:24
1909:25 1917:21
1921:1 1927:6,10,24
1934:4 1935:15
1954:21 1956:11
1958:6 1959:18 1970:3
1971:24 1972:20
1977:15 1987:2 1989:4
1990:13,14 1994:16

**putting** 1664:11
1802:2,6 1811:9
1829:15 1861:5,7
1866:19 1906:6
1920:25 1921:3 1922:9
1977:14,17 1994:22

───────────

# Q

**qualities** 1744:12

**quality** 1743:14

**quantum** 1971:8

**queasy** 1678:10

**question** 1636:23
1638:20 1640:8
1645:18 1646:17
1654:22 1656:1 1657:1,
2 1659:24 1665:23
1675:7 1684:3 1695:15
1701:5 1710:19
1713:23 1738:5
1745:21,25 1746:1,2
1750:4 1754:8,10
1755:4 1756:15
1764:13 1766:3 1768:2,
12 1770:7 1771:5
1772:16 1775:13,16,23,
25 1776:22 1777:1
1780:15,21 1781:2,10,
15,22,25 1785:4,10,21
1786:7,11 1788:16
1790:21 1791:11
1792:7,11 1793:24
1794:4 1795:17 1796:8,
9,18 1797:14 1800:15,
19,22 1802:5 1804:3,17
1806:18 1807:24,25
1808:4 1810:11,15,17
1815:9,10,12,17
1816:10,12,20,23
1817:5,6,9,14,15
1818:2 1819:2 1820:6
1828:24 1831:6
1832:21 1836:2,6

1853:1 1865:12 1867:8
1868:21 1880:21
1884:4 1913:20
1915:11,12,24 1918:14
1920:21 1925:19
1926:23,24 1934:8,9
1936:5,7,11 1938:17
1939:7,8,11,14
1940:11,14,16,23
1941:10,15,21 1942:10,
17,19,22 1943:1,4,22
1944:8,11,13,17,20
1945:4,10,14 1946:4,24
1947:2,20,21,25
1948:7,8 1950:3,10,11
1951:20 1953:21
1955:1 1957:12,13,17
1959:1,19 1960:13,15,
19 1961:7 1962:19
1963:11,15 1964:7,12,
16 1965:4,5,17,18,19,
22,23 1966:11,12
1967:1 1968:8 1969:1,
21 1973:11 1974:13,14,
18,25 1975:4,14
1976:17 1977:1,9,19,23
1978:19 1979:17,22
1980:11,18 1982:10
1986:12 1987:4 1989:8,
9 1990:9 1991:11,15
1992:1,5,20 1993:18,21
1994:4 1997:25

**question-and-answer**
1929:20,23

**questions** 1632:2
1633:19 1654:3,5
1657:14 1659:3 1664:7
1671:12 1672:14,19,20,
21 1677:5 1685:14,17,
18 1686:12,13 1690:11
1694:16 1695:13
1730:11 1735:14,21
1736:8 1738:13 1739:6,
10,12 1748:23 1749:2,
4,5 1757:7,10 1768:2
1770:16 1773:12
1800:18 1810:13
1815:14 1821:24
1823:18 1825:18
1826:12,13 1827:12
1830:11 1831:9,18
1832:10,17,18 1834:5,
16 1835:25 1836:3,6
1858:3 1870:7 1874:18
1900:12 1921:11

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 413 of 425   PageID 15816

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022              Index: quibbling..recoverable

1925:4 1933:19,25
1934:2,3,5,7 1939:21
1940:3,19,23 1944:10
1957:25 1960:10,21
1964:20 1965:6 1966:7
1970:2,7,16 1971:8
1972:11 1973:6,23
1974:2,3 1976:21
1978:12 1991:10
1992:12,18 1995:18
1997:20,21 1998:18

quibbling 1876:5

quick 1667:7 1735:7
1831:16 1843:4 1913:5
1939:14

quickly 1726:24
1773:10 1938:25

quo 1719:21

quote 1818:10 1879:3

quote/unquote
1646:10

quotes 1646:10
1877:17 1879:7

─────────────

R

R-O-S-S 1704:13

Railway 1737:7 1884:2,
8 1944:12,14,21,22
1945:1,9 1991:2,24
1992:8,9,23,25

raise 1636:21 1637:12
1655:5 1660:14 1661:3
1686:7 1695:5 1820:24
1840:1 1873:14 1995:5

raised 1636:17 1640:20
1644:6 1661:8,17,18,19
1662:25 1726:1
1902:20 1903:6
1951:18 1954:2,9

raises 1646:24 1647:20
1660:13

raising 1636:14
1644:22

ran 1640:11

rational 1845:5

rationale 1844:20

re-excused 1672:22

re-form 1990:10

re-orgs 1700:15

reach 1634:12 1635:17
1659:8 1664:6,10

reached 1729:1

reaching 1689:11

reaction 1715:21,24
1731:19

read 1637:6 1658:18
1662:24 1665:1,3
1666:9,10 1669:15,17
1670:3,6 1682:2 1707:5
1711:21 1715:6 1719:4
1779:14,17,20 1780:2,
4,18,25 1781:3 1785:22
1814:15,16 1817:1
1852:11,13,23 1853:3,7
1855:1,2,14,19 1860:9
1866:10,11,20 1867:9,
16 1869:7,10 1876:20
1885:18 1891:12
1897:18 1916:21
1925:18 1926:12
1935:21 1936:12
1954:24 1955:8
1985:19 1996:15

reading 1725:22
1775:8 1786:8 1814:15
1852:22 1853:19
1855:16 1866:13
1871:1,2 1885:10
1898:16 1934:22
1937:22 1945:5

reads 1779:20 1895:13
1956:12 1961:20

ready 1660:8 1759:16
1858:10 1859:1,11
1933:25 1934:1

real 1677:12 1818:7
1939:14

realize 1946:12

reask 1769:9 1785:13
1788:16

reason 1645:4,9
1662:7 1668:16
1682:12 1716:13
1725:19 1755:11,13
1758:5,8 1790:6

1828:16 1840:2,4,7,8,9
1843:12 1851:17
1881:11,15,17 1884:10
1891:1 1892:12
1893:14,16 1894:25
1895:4 1936:22,23,24
1963:22 1964:14
1979:9

reasonable 1646:15
1647:14,24 1651:19,21
1652:1 1658:12
1706:19 1824:8,10
1833:21 1846:19
1932:11 1933:9,14
1948:18,23,24 1949:5
1951:15 1952:20
1953:4,19,23 1954:9,
12,21 1955:1,21
1956:4,17

reasonableness
1954:19

reasoning 1650:1

reasons 1718:4,7
1755:14 1828:2
1834:25 1840:3 1846:9
1852:2 1881:9 1882:1,9
1886:4 1906:10,13
1946:19

reassert 1946:18

rebut 1997:7

rebuttal 1673:12
1750:7 1823:18
1831:22,23 1852:6
1854:6,8,10 1997:5

recall 1655:8 1659:2
1664:15 1673:11
1678:25 1688:17,18
1689:9 1691:8,11
1692:18,20 1694:7,18
1704:6,9 1710:18,25
1712:19,20,24 1715:11
1733:3,6,13,16,20
1734:16 1740:15
1750:14 1760:11
1762:11,12,14 1800:16
1833:25 1837:23
1839:21 1845:16
1849:19 1909:10,20
1935:5,9

recalled 1864:23

recalling 1712:6

recap 1709:19

receive 1696:20
1719:22

received 1670:16
1676:22 1688:22
1692:11 1703:5 1756:8
1766:16

recent 1682:11,17
1856:16

receptiveness 1681:9

recess 1652:14,18
1739:18 1831:14
1857:7,10 1925:10,13
1998:23

recited 1643:4,5

recognize 1704:21
1747:14 1756:9
1934:20

recognized 1755:25

recollection 1649:7
1668:6 1691:24 1692:9
1713:8 1781:6 1782:6
1820:9 1865:9 1887:24

reconcile 1720:24
1721:3,23 1728:23

record 1635:4,18
1638:11 1650:21,25
1668:2 1674:3 1695:18,
25 1718:10 1722:10,18,
21,24 1723:2 1735:25
1739:10,21 1744:11
1751:21 1810:20
1817:23 1852:3
1856:24 1857:14
1865:16 1866:20
1867:4,6,10,17 1869:3,
8,10 1885:11,18
1889:16 1890:1 1906:9
1908:22 1909:4,10,15
1913:16,19 1920:19
1923:20 1938:24
1941:23 1957:7 1985:4
1989:1

records 1668:22
1930:17

recoverable 1965:10
1972:12

recovery 1958:14,23, 24 1959:8,14,15,24 1960:1,6,12 1962:24 1963:8 1964:3,23 1970:4,21 1971:21 1972:2,6,15,17

red 1863:2 1874:16

redactions 1630:18

redirect 1669:13 1833:7

reduced 1720:22

reduction 1745:6

reeling 1682:22

refer 1658:20 1726:9 1867:12 1927:7 1933:8 1935:2

reference 1638:18 1667:11 1765:9 1766:20,25 1767:2 1823:17 1866:9,21 1867:23,24 1868:14,18 1869:8,9 1913:12 1919:7,15 1935:18,20 1940:1 1945:23

referenced 1729:5 1766:13

references 1868:12

referred 1654:10 1839:16

referred-to 1658:5 1671:5 1709:2

referring 1718:13,15 1935:22

refers 1841:10 1911:20 1913:1 1950:20 1978:19

reflect 1641:3 1817:24

reflected 1721:8

reform 1871:20 1976:11 1991:1

reformed 1976:14 1991:3,17

refresh 1713:8 1781:6 1782:6 1857:15

refused 1641:15

refusing 1907:8

regard 1641:1 1649:11 1651:14 1655:11 1657:8 1658:11 1859:15 1911:15 1919:4 1972:21

region 1700:10,11

regional 1696:8,10,11, 25 1697:4,5,8 1700:5

regular 1765:15 1790:1 1792:24 1794:9 1805:23

regulations 1720:13

reinstate 1719:9 1722:2,20 1729:18

reinstated 1720:23

reinstatement 1727:1 1920:7

reiterate 1642:16 1870:16 1902:19 1906:25 1946:11 1947:9 1956:24 1997:11

reiterating 1922:5 1942:18

reject 1871:2 1877:10 1885:10 1887:6 1902:17 1903:3,22 1905:21 1906:3

rejecting 1856:22 1892:7

relate 1770:11

related 1651:5 1687:17,24 1688:20,21 1690:11 1691:21 1692:11,20 1903:17 1947:20 1981:25

relatedly 1891:1

relates 1983:15

relating 1894:6

relations 1670:13 1680:4 1687:9,20 1688:8,19 1689:23,25 1693:6,13,15 1702:13 1703:7 1708:2,7 1709:9 1715:6,11 1730:20 1748:5 1756:9 1758:22

1838:21 1884:3,6,8,25

relationship 1661:2 1698:18

relationships 1920:8

relative 1690:22

release 1723:13,15,19, 20 1726:16 1964:4

released 1724:10 1841:3

releasing 1729:8

relevance 1636:10 1637:16 1661:9 1662:3 1700:25 1712:21 1745:18 1795:13 1796:16

relevant 1643:10 1650:12 1674:25 1688:2,5 1807:4 1863:25 1963:14

relic 1632:21

relied 1824:24

relief 1909:3

religion 1644:11 1650:9 1651:5 1655:7, 17 1656:4,11 1662:7 1756:10 1850:8 1897:1 1898:4 1902:9,10 1982:1 1983:5

religions 1797:17 1798:15

religious 1642:8 1643:19,23 1644:23 1645:4,9 1646:6,9,24 1650:4,18,23 1651:15 1660:7,13 1661:4,21,22 1663:1 1672:3,7 1755:15,18,22,23,25 1758:1,9 1795:10 1797:23 1798:22 1833:1 1834:8 1835:15 1839:8 1840:15 1841:8, 10,13,17,24 1842:10, 13,15 1843:20 1845:25 1846:23 1848:25 1887:19 1888:22 1889:2,6 1890:3,9,16 1892:22 1893:13,19 1894:13 1898:6,7 1901:8,11 1902:15

1904:9 1905:3,15 1906:1 1907:9 1932:13 1947:11,22 1948:2 1953:24 1954:5 1981:7 1982:3,5,7 1983:8,14, 15,20 1984:7,12 1986:24 1987:2,14 1988:1,4,13,16,21,24

relinquish 1938:13

relinquishes 1850:25

remain 1985:16

remained 1910:13

remaining 1726:23

remains 1726:19

remedy 1920:9

remember 1631:7 1666:3,5 1677:22 1678:3 1683:5 1692:2 1731:20 1740:17 1744:20 1760:24,25 1777:16 1779:1,7,10 1814:2 1836:14 1909:7 1935:3,22 1939:2

remind 1668:18 1680:1

remorse 1681:2 1746:23 1767:10,23 1768:6 1769:11,14 1770:8,11 1771:20

remorseful 1711:13 1767:12 1768:8,15

remote 1685:8

remove 1756:21 1882:14 1990:5

removed 1722:24 1727:20,22,23 1746:6, 16 1953:19 1979:18

removing 1954:3

render 1741:14

rendered 1770:23

renew 1856:13,16 1975:10 1977:6 1994:6

renewed 1831:25 1856:22

rep 1628:21 1680:7

repeat 1787:18 1789:9

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 415 of 425   PageID 15818

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 6 July 12, 2022          Index: repeatedly..reviewed

1806:18 1810:17
1812:15

**repeatedly** 1642:23
1786:1 1933:9

**repeats** 1979:16

**repercussions**
1803:18

**rephrase** 1665:15
1776:11 1835:7

**replace** 1982:20

**replacing** 1762:6

**report** 1636:12,17,24
1659:4 1756:14 1799:8,
14,20 1801:2,10
1806:5,12,21 1808:6
1809:8,9 1810:1,24
1815:12 1816:5,13
1817:12 1818:5,7,13,25
1876:24 1888:25
1890:10,18 1937:13

**reported** 1808:14,17
1817:10 1818:3
1834:18 1837:15
1839:11 1840:18
1881:12 1892:15
1893:15 1896:24
1898:2

**REPORTER** 1890:12

**reporting** 1841:11
1843:6 1896:25 1898:3

**reports** 1646:8,9

**represent** 1694:2
1743:5 1748:8,20
1761:4 1790:11
1845:13 1889:23,24

**representation** 1635:2
1743:9,15 1744:14,18
1841:15,20 1842:11,18
1843:18,24 1844:16
1847:2 1863:19
1864:20 1870:8
1971:13 1976:17

**representative**
1693:14 1704:6 1708:2
1714:1 1747:25 1748:4

**representatives**
1704:3,7 1713:19
1727:9 1730:1 1770:4

**represented** 1682:15
1734:8 1743:11,21
1745:1 1841:18
1842:21 1844:4,24

**representing** 1683:18
1730:1 1768:9 1777:22
1794:10 1827:15
1844:20 1845:9,10

**represents** 1729:21
1932:24

**reprint** 1996:14

**repudiate** 1953:11

**repudiated** 1843:18

**request** 1632:11
1640:21 1642:18
1643:8,25 1658:16
1719:9 1751:7 1752:11,
14 1797:13 1821:1
1823:3,13 1824:17
1862:16 1873:17
1881:25 1882:14
1885:10 1886:4 1887:6
1888:12,14 1892:6
1893:23 1901:10
1902:17,21,22,24
1903:2 1905:21
1907:12,15 1918:23
1926:2 1933:2,16
1934:12 1935:23
1939:6 1940:21 1941:4,
8 1942:2 1943:13
1945:19,24 1946:22
1950:15 1953:15
1957:23 1985:11

**requested** 1727:23
1735:11 1758:12
1882:23 1950:14,19

**requests** 1861:2
1906:24 1907:2

**require** 1734:10
1821:19

**required** 1644:2
1651:6 1688:1 1727:1
1728:2,7 1734:2
1827:19 1939:21

**requirement** 1642:7
1648:8,17,18,19,24
1899:22 1902:3
1911:18 1923:16
1932:15 1947:23

1948:3 1953:25 1954:7

**requires** 1659:18
1737:7 1851:7 1905:17
1933:11 1938:13

**reread** 1785:18

**research** 1667:24
1738:22 1753:17
1819:24 1836:20
1856:8

**reserve** 1694:17
1749:7,15 1872:22
1873:5 1997:3

**reserved** 1850:24

**reset** 1857:2

**resolution** 1732:10

**resolve** 1699:7
1973:15

**resolved** 1649:1
1725:23 1729:12
1756:23

**resolves** 1932:12

**respect** 1730:25
1734:17 1746:14
1758:21 1914:9 1958:1

**respectfully** 1821:22

**respond** 1646:23
1864:4

**responded** 1913:2,14
1914:3,14

**responding** 1797:4

**response** 1637:20
1642:25 1645:2
1646:12 1649:4
1710:18 1757:15,17
1764:15 1815:11
1827:4 1846:13
1864:14 1897:8
1899:19 1912:4 1924:2,
7

**responsibilities**
1677:3

**responsibility** 1659:6,
7 1961:9,11 1962:1,20
1966:23

**responsibility-staked**
1962:3

**responsible** 1658:12
1681:11 1687:16
1962:7 1964:17
1967:13,21

**responsive** 1797:11

**rest** 1678:11 1683:1
1750:10 1751:1,21
1753:12 1765:15
1830:7 1836:15 1837:1
1854:22

**restart** 1722:21

**restate** 1807:25

**restates** 1729:4

**rested** 1759:19
1830:18

**resting** 1820:20

**restore** 1716:20

**restored** 1719:21

**restrictions** 1673:10,
16 1824:11

**restroom** 1652:11

**rests** 1751:9,13,15
1752:11,20 1753:5
1757:12 1759:4
1836:12

**result** 1725:5 1786:17
1884:18 1959:9 1960:9

**results** 1841:6

**retaliated** 1877:18,24
1945:7 1992:6

**retaliation** 1687:18,25
1690:14 1691:22
1692:15 1725:4 1754:7
1837:13 1849:13
1873:12 1937:16
1938:2 1991:15

**retired** 1715:14

**return** 1716:24 1721:24
1836:8

**revealed** 1839:12

**review** 1677:10,24
1701:24 1703:13
1707:7 1714:23 1716:4
1718:5 1730:23

**reviewed** 1677:20

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 416 of 425   PageID 15819
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: reviewing..seek

1678:12 1684:2,5
1701:18 1702:21,22,24
1710:4 1715:4

**reviewing** 1665:25
1684:14 1720:3 1925:8

**revisit** 1640:3 1805:17
1921:5

**rid** 1761:24

**rightful** 1653:17,23
1836:8

**rights** 1726:12,16
1755:15 1787:8 1792:3,
22 1820:12 1848:8,11,
12,13 1870:21 1871:17
1887:4 1909:11
1936:15 1937:7,11,14,
15,19 1938:6,14
1944:12,22 1981:8
1982:3,7,20 1983:4
1987:3,14 1988:13,17,
21,24 1991:3,25
1992:23 1993:23

**righty** 1859:12

**rip** 1826:15

**rise** 1628:3 1652:17,19
1739:2,19 1753:19
1820:3 1831:13,15
1836:22 1856:8 1857:9,
11 1925:12,14 1998:24

**risk** 1731:12 1877:22
1966:16

**RLA** 1737:8 1754:7,13
1755:17 1757:21
1795:21 1813:19
1837:13 1839:9
1840:13 1845:21
1847:4 1873:12,20
1878:1,15 1879:21
1883:20 1884:13

**RLA's** 1840:10 1881:20

**RLA-PROTECTED**
1754:12,14,25 1755:7
1837:19,21 1993:23

**robust** 1912:12

**Rocello** 1754:25

**role** 1674:11 1677:7
1690:6,10,12,18
1693:8,15,17 1708:9,10

1732:8,12 1738:8

**roll** 1996:15

**roof** 1789:16 1791:5,25

**room** 1730:4,5 1742:3
1964:6

**rooms** 1704:1

**rosary** 1641:15

**Ross** 1704:13 1743:10,
15,17 1744:13,23
1745:2 1748:4

**rotation** 1740:25

**rough** 1752:18

**round** 1653:21 1666:25
1668:24 1672:16
1831:1,18,20 1835:20

**rounds** 1629:21 1830:6

**routine** 1673:22

**ruined** 1678:10

**rule** 1640:24 1643:15
1686:14 1695:18
1738:3 1799:2 1821:12
1830:9 1831:25 1837:4
1928:3,4 1972:19

**ruled** 1636:7 1735:21
1995:24

**rules** 1694:9 1699:25
1721:4 1787:7 1788:9,
20 1824:19,24,25
1826:17 1827:2 1905:4
1956:15

**ruling** 1757:11 1759:2
1805:14 1825:12
1827:24 1837:3 1852:3
1856:24

**rulings** 1634:25 1637:8
1831:21

**run** 1638:6 1698:7
1832:9 1915:25

**running** 1697:19
1700:25 1701:2
1772:15 1828:13
1835:3,5 1941:3,9,16
1942:7,13 1943:12
1981:3

**runs** 1887:12

**S**

**S-I-M-S** 1696:1

**saddened** 1735:5

**safe** 1891:18

**safety-sensitive**
1728:2

**sake** 1726:22 1754:9
1936:9 1943:24
1954:18 1984:3
1992:16

**sans** 1938:7

**sat** 1731:21

**satellite** 1685:7

**satisfaction** 1960:6
1961:16 1962:5,8
1972:18

**satisfies** 1956:16

**save** 1757:11 1759:2
1997:12,16

**saves** 1876:1

**saving** 1757:13
1996:19 1997:9

**savvy** 1677:12 1683:20

**Scalia** 1648:15

**scattered** 1697:19

**Schaffer** 1715:14

**schedule** 1719:14
1720:11 1728:16

**schedules** 1719:16
1728:14

**Scheduling** 1675:4

**scheme** 1876:2 1998:7

**Schneider** 1642:22
1652:21,24 1653:16
1654:1,9 1672:22,25
1676:20 1680:3 1683:4
1689:8 1716:7 1755:5,
24 1756:8 1758:13
1766:17 1824:23

**Schneider's** 1716:10
1758:21

**scintilla** 1937:19
1938:5

**scope** 1637:9 1838:4
1921:16

**screen** 1703:11,12
1898:17,18 1945:16
1972:9 1980:4

**screens** 1742:11

**screwed** 1946:16

**scrivener's** 1995:23

**scroll** 1764:7 1780:9
1886:14 1914:7

**scrolling** 1941:18

**search** 1936:4

**searches** 1930:17

**searching** 1800:13
1923:24

**seat** 1628:4 1685:21
1695:9 1836:8

**seated** 1653:25 1686:6
1739:20 1740:24,25
1742:17 1753:21
1759:18 1832:13
1836:24 1854:4
1856:10 1857:13
1925:15

**seconds** 1972:7

**section** 1671:13
1722:13 1733:12
1858:5,7,8 1860:11,17
1862:19 1863:18
1870:7 1873:6,8,10,15,
19 1874:5 1876:15
1877:17 1878:1,24
1879:7,20 1880:4,10
1882:16,18 1883:3
1886:5,6,11,15,21
1887:7,13 1894:16,20,
21 1901:13,18,22
1907:15,24 1911:13
1918:25 1921:14

**security** 1628:3,24
1629:2 1640:16
1652:17,19 1739:19
1831:13,15 1857:9,11
1925:12,14 1998:24

**seek** 1882:22 1886:23
1934:18,24 1936:10

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 417 of 425   PageID 15820
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022          Index: seeks..similarly-situated

1939:14 1943:21,22

seeks 1943:2 1977:23

sees 1764:6

select 1740:20

selected 1740:18

send 1630:22 1631:1,
12 1633:9,11,16 1643:5
1644:25 1651:2 1664:3,
13 1668:14 1709:19
1731:11 1767:5 1777:3
1789:23,25 1795:9
1796:3,4,20,21
1799:12,17 1800:23
1802:12 1831:24
1832:2 1835:10
1852:20 1853:4,10,13,
23 1863:3 1869:7
1874:15 1891:23
1892:3 1964:5 1966:11
1973:10 1989:6
1995:20

sending 1631:21,24
1644:12 1668:7 1680:9
1709:10 1711:4
1712:16 1763:13
1770:19 1776:19
1778:3 1783:17
1784:12 1786:9,16
1794:8 1796:25 1797:2
1840:4 1990:8

sends 1717:3

senior 1674:10 1687:9
1696:4,10,16 1697:3

seniority 1719:11,15,
18,20 1909:11,21
1910:2,6

sense 1634:4 1636:22
1668:3,4,5 1735:18
1765:20 1829:9 1832:9
1865:7 1866:23
1868:15 1874:17
1892:5 1912:15 1915:4
1926:13 1932:1
1950:18,22 1954:15
1956:3,10 1959:18
1971:22 1973:17
1983:21 1984:21
1987:7 1996:17,25

sentence 1671:10
1764:18,19 1864:7,11

1869:21 1872:6
1873:17 1877:16
1879:8,10 1898:12,20,
25 1904:16 1905:1
1910:10 1914:11
1917:3 1919:8 1921:13
1944:16 1946:12
1949:22 1955:22

sentences 1865:23,25
1869:1,7,12,16 1886:15

sentiment 1995:12

separate 1699:14,19,
23 1700:2 1733:8
1781:10 1838:11
1884:24 1935:8
1943:21 1965:16
1970:21 1973:6 1974:2,
3 1979:4 1991:11

separation 1800:18
1810:13 1943:10

serve 1990:19

served 1697:24 1721:6

serves 1880:1 1988:13

service 1697:11
1719:15,18

session 1630:2

set 1630:23 1633:5
1670:1 1703:22
1707:19 1727:10
1733:10 1824:19
1826:17 1902:7 1971:1

sets 1870:13

setting 1931:6 1937:3

settled 1649:1

settlement 1716:23
1717:6,15 1729:4,7

Seventh 1820:12

severity 1678:19

sexual 1687:17,24
1690:13 1691:21
1692:14 1725:3 1793:9

shape 1882:5

share 1683:3 1713:1
1756:2 1779:15
1925:24

shared 1909:3

sharing 1846:1 1929:8,
9 1954:6

sheets 1826:15

shhhhh 1882:2

shift 1639:14 1824:14

shifted 1632:21

shifting 1755:17

shifts 1676:4

shocked 1682:21
1683:7 1731:23

shocking 1681:2,5

shop 1734:5

short 1753:14 1843:10

short-circuited
1652:6

short-handed 1700:16

shortly 1750:24

shot 1752:12 1834:14

shots 1703:11,12

show 1630:13 1645:10
1654:23 1667:5 1717:8
1756:16 1775:5,15
1778:16,25 1816:15
1832:9 1844:18,19
1845:8 1847:23 1848:4
1851:7 1898:15,18
1926:10 1927:24
1928:1,2 1929:19,20
1931:5,9 1949:14
1953:12 1955:22
1972:9 1980:4 1985:18
1995:5

showed 1668:12
1767:23 1768:6 1781:5
1782:5 1846:8

showing 1775:16
1869:23 1892:21

shown 1756:17 1815:3
1837:15 1845:6

shows 1818:8 1846:6
1847:25 1848:5
1974:17

shy 1687:6

sick 1716:3 1722:16
1764:24

side 1632:19 1633:1
1822:14 1825:4 1874:1
1926:11 1950:17
1951:1,7

sidebar 1666:17
1667:7,9 1669:3
1735:7,10 1736:4
1749:25 1750:3 1751:9
1752:23 1773:3
1775:19,23 1814:22,25
1815:23 1816:17,19
1817:17 1823:17
1997:15,17

sidebars 1666:13
1825:12

sides 1952:9

sign 1723:10,14
1730:25 1731:2
1762:14 1833:25
1834:1 1931:1

sign-posting 1934:4

signal 1858:25

signed 1723:20 1726:6,
15

significance 1714:12
1728:18

significant 1647:11
1661:22

signpost 1788:17

signs 1960:9

silently 1779:14,18,20
1814:16

silly 1656:13

Silver 1923:4

similar 1737:16
1860:24 1861:12
1886:4 1929:25
1985:10 1991:1

similarly 1648:21
1651:12 1899:22
1900:14,21,25 1901:3,
7,10

similarly-situated
1899:17,24 1943:2

**simple** 1723:1 1726:8 1785:21 1786:11 1916:2

**simplifies** 1637:24

**simplify** 1639:4

**simply** 1717:3 1758:15 1843:8

**Sims** 1635:24 1694:25 1695:2,7,11 1696:1 1698:13 1704:21 1711:21 1716:4 1722:5 1727:3 1730:24 1732:14 1734:20 1736:10 1742:20 1743:3 1747:14 1750:12,15 1755:24 1767:10 1769:2,12 1823:17 1831:7

**sincerely-healed** 1892:22

**sincerely-held** 1755:21 1888:22 1889:2,6 1890:3,8,16 1893:13 1947:11

**single** 1763:4 1846:17 1847:13 1850:16 1934:22

**sir** 1662:16 1695:10,16, 20 1697:1,7,23 1698:3, 16 1699:13 1700:8,11, 24 1702:5,8 1703:1,9, 11 1704:5,8,10,22 1705:21 1707:13 1709:6 1713:6 1715:18 1718:16,21 1723:11 1724:17 1729:6,19 1731:18 1732:8 1737:1 1743:4,7,13 1746:8 1747:19 1748:24 1749:13 1864:22 1871:6,12 1899:11 1975:24

**sit** 1665:19 1835:9 1854:24 1963:23

**sitting** 1787:3 1828:7 1829:11 1865:8 1979:23

**situated** 1899:23 1900:14,21,25 1901:3, 7,10

**situation** 1647:15 1662:16,19 1758:14 1768:17 1916:16 1917:8 1938:8 1968:20

**situations** 1883:8 1917:5

**sixth** 1913:7

**skewed** 1880:21

**skip** 1976:19

**skirting** 1805:14

**slightly** 1923:6 1930:23

**slow** 1937:21

**small** 1908:6 1996:19

**smarter** 1987:2

**social** 1642:7 1649:3, 18 1663:23 1664:11,19, 22 1668:17 1677:14 1678:16,17 1683:23 1685:10 1725:3 1755:20 1770:1,4 1771:10,15 1774:14 1777:7,12 1782:17 1783:16,17 1784:13,15 1834:13 1838:25 1841:2 1881:13,18

**solely** 1888:13 1938:9, 11

**solutions** 1960:18

**solve** 1940:20

**solved** 1946:7

**somebody's** 1678:7,8

**Sonya** 1838:22

**sort** 1632:21 1650:9 1698:21 1756:9 1839:24 1844:3 1849:9 1883:17 1892:19,23 1902:4 1917:8 1939:15 1947:19 1957:22 1960:18 1968:9,15,19, 25 1973:7 1976:12 1977:10 1982:24 1996:4

**sorts** 1691:7

**sought** 1851:3 1936:10

**sound** 1982:24 1983:16

**sounds** 1683:18 1698:13 1736:3 1768:19 1887:8 1941:7

**Southwest** 1628:14,15 1629:23 1633:22 1634:7 1635:8,13 1639:8 1640:8 1642:2, 20 1645:18,23 1649:17 1655:10,14 1656:17 1657:10,11 1658:8,21 1663:25 1664:3,23 1665:8,20 1671:16 1672:4,24 1673:3 1674:8,22 1676:3,6 1679:2 1682:14 1685:24,25 1687:3,4,8, 12,15,21 1694:23 1696:3 1697:13,22 1698:19,24 1699:5,14, 20 1700:3 1702:12 1703:25 1707:24 1712:1,17 1714:13 1716:11 1724:10,13,15 1725:1 1729:9,10 1733:7 1734:4,6 1748:14,18 1753:4 1754:2 1755:10,19 1756:4,6,16,22 1758:8, 14 1759:19 1763:5 1765:21 1787:11,20,23 1797:17 1798:16 1799:8,14,20 1801:2 1802:15 1803:12 1806:22 1809:10,20 1810:2,25 1815:13 1816:5,13 1817:12 1818:5,15 1819:1,4,12 1823:10 1824:15 1826:7,12 1837:3,4 1838:19,24 1839:18,20 1840:19,20,24 1842:6, 22 1844:24 1845:19 1846:11 1851:11,24 1854:17,18 1855:4 1857:20 1859:17,25 1860:5,13,20 1861:1,22 1862:14 1863:8,14 1870:22,24 1873:13,16 1877:18,24 1879:9,14, 17 1881:6,12 1886:12 1887:2,10 1888:19,20 1889:1 1890:24 1892:17 1893:16

1894:1,8,13 1895:6,15 1896:25 1898:3 1901:18,19,20,23 1902:13 1906:6 1908:4, 15,21 1910:8,14 1911:21 1912:24 1914:12,13,17 1918:5 1919:11 1922:15,18 1923:12 1924:18,25 1933:22 1934:5 1936:15,20 1937:13 1939:9 1941:2,13 1942:5,12 1944:6 1945:7 1947:1,5 1948:4,10,25 1949:13, 23 1950:1,20 1951:1,8 1952:2,15 1953:4,6,7 1954:25 1957:20 1958:1,23 1959:2,14,16 1960:22 1963:20 1966:1,9 1968:22 1969:15 1970:11 1971:7,11,19 1972:22, 23 1975:6 1978:11,17 1980:9,16 1983:3 1985:11 1986:13 1987:23 1992:6 1994:3, 5,9,22

**Southwest's** 1658:16 1741:12 1753:3 1755:1 1846:3 1851:14,16 1876:23 1888:21 1890:1,5 1905:10 1915:5 1947:13 1950:5 1971:15

**space** 1654:4 1686:12 1695:12,14

**span** 1727:14

**speak** 1707:3 1761:3 1773:8 1798:25 1807:8 1815:3 1826:7 1883:21

**speaking** 1645:23 1661:13 1702:2 1766:1 1768:21 1772:5,22 1773:4,5 1781:17 1784:5 1788:19 1792:8 1795:14 1801:11 1802:3 1811:8,12 1884:19 1938:24

**special** 1883:6 1934:13,18,23 1935:24 1941:4,8,15,19 1945:19

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 419 of 425   PageID 15822
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 6 July 12, 2022                    Index: specific..stones

**specific** 1643:8
    1690:13 1763:13,14
    1774:5 1802:11 1817:5,
    9,22 1818:2 1850:5
    1865:23 1945:19
    1949:5 1950:24 1951:2,
    7,16 1979:7 1981:21

**specifically** 1640:5
    1660:20 1690:12
    1764:23 1815:2
    1845:18 1868:24
    1879:1 1949:5

**specification** 1901:11

**specifics** 1701:7
    1774:7

**speculation** 1764:15

**speech** 1673:17
    1771:17,19 1792:23
    1794:15 1808:13
    1810:24 1812:6,7
    1833:2,4,9 1848:20
    1883:7 1884:20
    1885:16 1938:18

**speed** 1937:22

**spelled** 1994:19

**spelling** 1978:6

**spend** 1635:19 1637:22
    1752:5 1790:11 1822:7

**spending** 1754:19
    1794:10 1825:14

**spent** 1761:14 1790:8

**spinning** 1859:2,5

**spit-balling** 1961:2

**split** 1964:21 1969:2

**splitting** 1952:25
    1966:17 1967:19

**spoke** 1760:11

**spoken** 1771:14

**spot** 1671:8 1904:12

**spots** 1865:25

**spring** 1700:18

**squabbling** 1668:17

**squirrely** 1973:10

**staff** 1675:4

**stage** 1717:3

**stake** 1731:24

**stances** 1850:14

**stand** 1653:4 1665:6
    1673:6 1745:20 1746:2
    1752:13,20 1759:24
    1820:10 1864:18
    1997:14

**standard** 1677:14
    1678:15 1702:11
    1727:25 1729:13
    1730:7 1858:12,22
    1859:13 1889:10
    1900:4 1912:13 1956:4,
    19

**standards** 1697:10
    1801:5,6

**standing** 1795:16
    1821:5

**standpoint** 1677:16
    1678:19,20 1846:16

**Starr** 1866:16

**start** 1714:18 1752:12
    1754:6 1760:16 1775:8
    1837:13 1847:9,17
    1852:18,21,25 1860:10
    1896:15 1966:22,23
    1982:7

**started** 1728:16 1762:9
    1763:13 1826:22,23
    1840:23 1984:17
    1986:17

**starting** 1711:22
    1852:22 1874:20
    1887:11 1890:19

**starts** 1870:11 1874:22
    1875:8 1892:11
    1895:11 1896:12
    1919:20

**state** 1674:3 1695:25
    1715:8 1811:7 1852:3
    1889:5,16 1897:13
    1936:21 1941:23
    1948:22 1957:6
    1976:13

**stated** 1654:19 1902:11
    1906:10 1946:19

**staff** 1947:11 1954:5
    1956:23 1964:18

**statement** 1656:16,24
    1712:5 1727:25
    1760:18,24,25 1771:1
    1775:14 1801:17
    1825:10 1841:2
    1871:20 1872:2
    1873:19 1903:15
    1904:6 1944:20
    1998:11,17

**statements** 1861:17

**states** 1696:13,14,15,
    18 1697:19 1729:8
    1872:16

**stating** 1904:7
    1964:14,15

**status** 1636:12,17,24
    1719:21 1734:15

**statute** 1873:23 1874:3

**statutes** 1936:17
    1967:9

**statutory** 1840:10
    1894:11 1895:8 1962:1,
    21 1984:15

**stay** 1750:21 1821:4

**stayed** 1720:1

**staying** 1878:22

**stays** 1998:16

**step** 1634:8,20 1635:1
    1636:3,5 1638:2,5,8
    1690:24 1700:6,21,23
    1701:8,10,20,21,22,23
    1702:4,7,8,10 1703:23
    1704:15 1706:4,20
    1707:12,25 1708:1,9
    1710:5 1711:3,11
    1712:16 1714:8,18,22
    1715:22 1716:5,14,17
    1717:4 1718:4,7 1725:8
    1726:19 1732:20
    1733:18,22 1737:12
    1743:11 1747:4 1761:8
    1804:5 1821:10,13
    1834:4 1864:21

**step-by-step** 1706:1

**stepped** 1744:6
    1810:20

**steps** 1714:20 1732:5
    1737:4

**stick** 1634:25 1735:23
    1770:15 1855:12
    1891:13,17 1915:17
    1918:13 1947:15
    1948:15 1981:9 1989:4

**sticking** 1887:22
    1888:12 1891:21

**stills** 1703:5

**stipulate** 1967:24
    1968:2

**stipulation** 1746:7
    1860:11

**stipulations** 1860:8

**Stone** 1631:7 1646:7
    1680:9,12 1688:13,20
    1690:12,16 1692:6,10
    1711:4 1754:13 1755:7
    1758:3 1762:21
    1763:18 1764:9,16,21
    1765:11,18 1766:6
    1767:2,13 1769:4,13
    1770:20 1776:19
    1783:22 1784:10
    1785:7,17,24 1786:13
    1793:5 1797:7 1799:6
    1806:10,17,19 1809:25
    1810:22 1814:17
    1816:2 1826:14
    1830:12 1835:12
    1837:15,20 1838:1,4,
    15,16,18 1839:5,11
    1840:16 1841:1,2,6,14,
    22 1842:6,17 1843:5,13
    1844:19 1845:4
    1846:20,21,24 1847:14,
    24 1848:2,9 1849:17,20
    1850:4,10,12,23 1851:3
    1883:13 1886:25
    1895:2 1896:23 1898:1
    1912:8 1936:12
    1939:17,23 1954:3

**Stone's** 1646:21
    1690:20 1762:18
    1838:23 1841:9 1842:1
    1844:22 1848:18
    1849:7 1887:3 1937:9,
    14 1938:11,19,21

**stones** 1923:7

**stop** 1677:24 1752:2
1839:22,23 1931:25

**stops** 1939:23

**straight** 1981:4

**straightforward**
1650:4

**strategic** 1824:21

**streamline** 1633:24
1638:12

**stricken** 1881:8

**strict** 1929:13

**strike** 1655:23,25
1657:19 1666:15,17
1740:23 1764:15,18
1765:3 1770:6 1786:21
1792:5 1793:12,23
1794:17 1795:3,25
1796:8 1797:9 1801:8
1808:24 1810:10,14
1819:9 1865:4 1875:18
1917:24

**strong** 1998:22

**strongly** 1757:22

**structure** 1699:10
1700:13 1912:5
1973:23

**stuck** 1967:18

**stuff** 1782:11,17
1928:21,22 1930:20

**style** 1825:15,19

**subject** 1757:23

**subjected** 1764:10
1777:21

**submit** 1666:6 1740:22
1934:24 1941:5
1964:11,12 1969:21

**submits** 1740:21

**submitted** 1911:24
1934:14

**submitting** 1970:2

**subparts** 1979:17

**subsection** 1906:18

**subsequent** 1644:22

**subsequently** 1644:24

**subservient** 1848:14
1937:15

**substance** 1633:2

**substantial** 1824:2
1839:6 1875:1,16
1876:18,21 1877:3

**substantially** 1866:14
1923:17

**substantiate** 1692:13

**substituting** 1892:24

**succinct** 1647:8
1829:23

**succinctly** 1829:24

**sucks** 1917:15

**sued** 1833:13

**suffer** 1808:13

**sufficiency** 1645:17

**sufficient** 1645:19
1646:14 1758:20
1795:16 1891:22
1895:24 1903:23

**sufficiently** 1929:24
1938:20 1955:15

**suggest** 1650:16
1804:19 1821:22
1878:6 1904:17 1949:8
1988:11,25

**suggested** 1893:6

**suggesting** 1904:12
1913:23

**suggestion** 1913:25

**suggests** 1893:4
1917:8

**suit** 1863:11

**Sullivan** 1680:6

**sum** 1975:16 1987:22

**summarize** 1691:1
1827:23 1829:25

**summary** 1649:22,23
1691:6,20 1729:6,13
1847:20

**summer** 1696:21

**supervisor** 1675:18,20

**supplied** 1715:5

**support** 1654:12
1734:16 1762:12
1789:1,13 1790:25
1795:10 1796:5
1798:13 1847:8

**supported** 1675:2,3
1692:5,8,14,17,19,23
1762:11,13,14,15

**supporter** 1839:22

**supporting** 1845:15

**supposed** 1665:22
1780:3 1900:19
1976:10,11

**supposes** 1952:11

**Supreme** 1883:25
1885:6

**surprised** 1680:19
1732:4

**surrounding** 1702:17

**suspect** 1906:8

**suspension** 1720:23
1721:5,7

**sustain** 1663:6
1665:16 1735:22
1738:11 1764:17
1766:2 1768:25 1769:8
1770:9 1776:10
1779:24 1784:6
1785:12 1791:3
1793:13 1798:3 1802:7,
19 1805:8 1811:18
1814:20 1825:14
1835:6

**sustained** 1655:20
1657:18,20 1663:8
1666:16 1745:22
1784:22 1794:18
1795:5 1806:8 1808:25
1817:24 1958:3

**swap** 1949:1 1996:13

**swapping** 1904:18

**swear** 1686:7 1695:5
1779:10 1814:6

**switch** 1899:3

**switched** 1982:15

**sworn** 1673:19 1686:9
1695:7 1760:3 1774:9

**sympathetic** 1735:2

**synonymous** 1757:5
1907:8

**synopsis** 1642:24

**system** 1676:12

T

**table** 1703:22

**tackled** 1983:16

**tailoring** 1887:25

**tailspin** 1995:18

**taking** 1650:19 1651:13
1656:17 1657:10
1662:17 1663:16
1680:23 1681:11
1756:3 1764:25
1765:10 1777:22
1779:10 1783:17
1874:1 1878:6,11

**talented** 1855:21

**talk** 1629:7,14,23
1633:22 1634:19,21
1637:7 1639:4,5,10,18,
19,25 1640:5,10 1647:3
1660:5 1675:15
1679:23 1738:19,21
1743:8 1749:20
1753:15,16 1763:10
1787:6 1788:8,18,19
1799:2 1804:20
1819:21,22 1820:7,11
1821:6,11 1836:18,19
1847:11 1856:5,6,7
1857:3 1863:18
1868:24 1901:7 1917:4,
5 1925:4 1926:11
1931:20 1933:18,25
1934:1 1949:10 1950:9
1963:3 1974:12
1989:15

**talked** 1636:5 1668:20,
25 1744:19 1761:20
1784:10 1820:13

Case 3:17-cv-02278-X   Document 452   Filed 06/14/23   Page 421 of 425   PageID 15824

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 6 July 12, 2022              Index: talking..threatened

1828:2 1833:19
1840:22 1841:23
1856:15 1910:1 1966:4

**talking** 1629:12
1763:16,17 1771:8,20,
21,22 1772:7 1782:3,
22,23 1788:3 1790:3,12
1793:19 1804:6
1805:25 1807:19
1812:24 1819:6
1834:12,21 1837:17
1839:13 1864:8
1865:23 1866:15
1878:15 1879:2
1884:12,13 1910:1
1916:22 1918:16
1927:13 1931:16
1952:9 1959:22
1972:19 1974:1

**talks** 1914:12 1917:3

**Tammy** 1715:14

**target** 1771:10

**targeted** 1770:3
1784:15 1803:10

**targeting** 1845:14

**tasked** 1683:23
1684:14 1702:13

**tax** 1909:2

**team** 1658:11,17
1659:8,22 1661:24
1663:19 1675:2
1756:14

**tears** 1867:22

**technical** 1932:22

**technically** 1653:9
1751:17 1862:9

**technique** 1815:5
1825:22

**technologically**
1931:19

**telling** 1659:2 1660:24
1665:3 1765:17
1785:10 1885:7
1900:15 1928:13
1970:3

**tells** 1660:6 1661:2

**temporal** 1849:14

**ten** 1643:5 1687:6
1829:5

**tend** 1997:2

**tensions** 1883:10

**tentative** 1762:17
1850:3

**tenure** 1687:11,13

**term** 1721:17 1912:7
1915:3 1987:2

**terminate** 1693:1
1725:13 1755:2
1756:18 1840:21,25
1851:14 1906:13
1936:21 1968:23
1988:8,9

**terminated** 1649:25
1650:3 1716:13
1721:20,21 1729:2
1841:4 1911:1 1914:1
1971:4 1983:8

**terminating** 1843:10

**termination** 1641:24
1642:4 1644:9 1702:16,
22 1706:6,18 1710:16
1720:22 1721:1,5
1722:11 1725:5
1728:21 1729:12
1746:11 1851:9,17
1869:15 1910:14,20
1952:7,8 1967:8
1971:2,11 1974:17
1986:24

**terminology** 1933:12

**terms** 1631:20 1656:17
1697:10,14 1698:19
1699:10 1700:13
1702:11 1704:25
1707:9 1719:1 1722:15
1728:11 1744:4,16
1747:2 1757:25 1822:1
1827:11 1832:25
1852:18 1982:8

**territory** 1880:15

**test** 1893:3,18 1980:21

**testified** 1642:22
1748:13 1755:5,22
1761:12 1771:6
1772:19 1773:22
1774:12 1797:1

1798:11 1816:4
1838:10,15 1841:23
1842:3,6 1843:15
1848:7,16 1851:11

**testifies** 1817:1

**testify** 1745:10

**testifying** 1773:16
1779:1,7 1784:2,8
1793:23

**testimony** 1649:8,15,
17 1665:11 1668:11
1677:19 1694:20
1712:4 1715:15
1746:22 1749:11
1758:21 1765:3 1769:5,
7 1772:21 1773:15
1774:5,9 1775:4,6
1776:5,8,13,20,22
1777:15,24 1781:1,6,9
1782:25 1783:5
1797:25 1800:6 1801:1
1805:1,10 1809:16
1811:3 1814:3 1815:2
1820:10 1825:23
1828:7 1837:14 1846:6
1861:23 1862:8 1865:9
1926:18 1929:21,23

**Texas** 1734:24 1844:2
1920:4

**text** 1637:15 1840:11
1894:11 1895:8 1991:4

**TFP** 1721:17

**theme** 1686:24

**theories** 1986:22
1987:12

**theory** 1650:6 1987:1,6

**thickens** 1988:10

**thing** 1630:13 1633:8
1643:23 1645:13,16
1646:19 1647:11
1650:17 1657:8
1685:16 1752:9
1792:22 1817:7 1826:4
1845:7 1847:4 1853:7
1855:1 1868:22 1869:5
1874:5 1894:5 1909:9
1912:11 1917:13
1925:7 1927:23
1929:19 1946:13
1955:20 1957:19

1975:23 1980:25
1981:5 1982:25
1990:25 1996:14

**things** 1629:7 1637:25
1640:14 1645:12
1649:6 1675:6 1679:16
1687:20 1715:1,7,8
1719:17 1721:1
1725:24 1743:22
1764:10 1767:17
1786:8 1790:1 1800:7
1862:25 1876:2
1884:21 1900:18,21
1909:6 1917:9 1920:16
1925:8 1932:2 1959:13
1982:25 1996:8

**thinking** 1828:23
1852:17 1882:7 1963:9
1964:22 1966:7,22
1970:15 1975:23

**thinks** 1774:18 1989:20

**thought** 1630:4,8
1632:22 1649:17
1653:19 1668:12,21
1678:7 1692:23 1717:6
1726:14 1731:2,8,12,25
1741:7 1743:20
1744:15 1748:11
1791:8 1801:9 1864:24
1877:13 1915:8 1921:1,
16 1930:2 1931:11
1946:6,7 1950:16,20,21
1951:5 1959:6 1964:11
1980:20 1991:9,14,16,
19,23

**thoughts** 1630:1
1632:18 1706:18
1822:24 1853:7
1873:25 1877:2
1887:22 1897:6
1900:24 1914:2 1950:5

**thousands** 1684:6,7

**threat** 1803:7,17
1804:10 1805:10,20
1806:2,24 1807:1,15
1808:7,8,11 1809:6,15,
17 1810:7 1812:5
1813:3,16,19 1818:7,9

**threaten** 1762:3 1810:8
1884:22

**threatened** 1761:22

1762:1 1812:19

**threatening** 1812:19
1938:20

**threats** 1802:23
1807:22 1811:4
1834:17

**three-** 1709:17

**threw** 1908:11

**throw** 1883:23

**thumb** 1631:15,17
1640:6

**Thursday** 1639:1
1973:19

**tick** 1720:18 1721:10
1722:6

**tied** 1808:12 1810:23
1812:6 1814:3 1846:18
1849:6,9 1851:16

**ties** 1850:20,22 1897:2

**time** 1629:14 1635:5,
18,19 1637:22 1639:12
1640:11,16 1647:6
1655:10,12 1661:6
1663:24 1668:15
1669:18 1670:14
1671:19 1673:11
1674:25 1676:3
1677:14 1678:15
1696:23,24 1698:1
1700:8,21 1703:17
1707:5 1709:16
1714:24 1715:13,22
1721:20,22 1722:11
1723:3 1730:15
1732:24 1735:19
1738:15 1742:20
1751:4,5,6,18 1752:5,
14 1753:8,12,25
1757:14 1762:7,9
1765:6,9,14,19 1766:7
1768:19 1773:6
1775:24 1805:7,18
1821:2 1822:4,7,11,17,
19,21,25 1823:1,7,8,10,
13 1824:4,7,8,17,22
1825:1,9,13,14,25
1826:10,15,22,23,24,25
1827:8,21 1828:11,17
1829:14,16,19 1832:2,
5,6 1836:14 1837:10

1842:20 1848:22
1852:18,25 1858:5
1862:8 1895:17
1897:21 1907:2
1910:12,14,15,17,19
1912:11,16 1916:10
1923:25 1935:15
1937:22 1939:2
1940:17 1946:23
1951:7 1952:7,8,13
1972:1 1977:18 1982:4
1997:6,9 1998:1,3,5,13

**time-wise** 1821:20

**timekeepers** 1752:16

**timeline** 1644:13
1703:21

**timely** 1629:8

**times** 1680:14 1699:8
1715:9 1722:23 1730:5,
13,16 1776:23 1806:14
1864:19 1922:23
1940:13

**timetable** 1644:15

**timing** 1750:5 1827:2
1853:17 1866:3,8

**tip** 1716:2 1967:11

**Title** 1650:11 1754:15
1755:15,18 1840:14
1843:15 1845:22,24
1848:12 1887:20
1893:3,18 1900:3
1905:17,24 1936:18
1976:5 1978:17
1980:16 1981:16,19,23
1982:10 1983:1
1986:22 1987:7,11
1988:5,22 1989:14
1991:12,16

**today** 1628:25 1631:3
1637:23 1665:19
1682:12 1760:16
1765:17 1776:20
1778:4 1781:9,11
1782:25 1783:10
1787:3 1816:4 1834:9
1835:9 1852:20,24
1853:6 1855:12
1874:15 1930:23
1963:23

**told** 1660:25 1661:18

1662:11,21 1663:15
1665:5 1725:10
1733:25 1735:4
1748:14,17 1781:8
1868:25 1996:7

**tomorrow** 1631:3
1661:19 1852:18,21,22,
24 1853:7 1855:1,14,18
1926:10,11 1928:14
1954:24 1996:2,3,19
1998:19,22

**tonight** 1868:17
1928:11 1989:6
1995:21,22 1998:21

**top** 1689:7 1711:14
1713:16 1793:8
1872:18 1887:12
1896:13 1898:19
1911:4

**topic** 1647:2 1680:23,
24 1739:8

**topics** 1834:5

**tort** 1959:23,25 1962:18

**tortfeasors** 1959:21

**total** 1959:24

**totally** 1641:12 1642:14
1751:19 1840:11
1882:8

**touch** 1645:15

**touched** 1645:18
1648:3,4 1685:12

**touching** 1863:21

**track** 1706:24 1875:4
1984:2

**tracks** 1900:3

**trade** 1676:4,9,13,16

**trail** 1882:12 1883:24

**training** 1756:8

**transcript** 1667:10
1775:12 1778:13,19
1781:15 1897:18
1927:7 1928:6,7,8
1929:5

**transcripts** 1927:13

**transition** 1788:18

**transmits** 1632:23

**transpired** 1701:24
1839:13

**transport** 1698:3,24
1701:16 1710:20
1733:9

**transportation**
1884:17

**trauma** 1789:18

**travel** 1643:18 1651:9,
10 1673:17

**tread** 1774:24

**treat** 1694:11 1895:6
1965:14

**treated** 1646:8 1850:17
1899:13,16 1900:4,8

**treating** 1746:13
1841:16,17 1844:2

**trees** 1995:19

**trend** 1686:24

**trial** 1628:7,8 1636:20
1637:1,8 1658:6 1659:3
1671:6 1709:3 1822:1
1824:18 1826:22
1854:5 1855:2 1860:10
1862:6,7 1910:15,20
1920:11 1927:7 1928:7,
8 1929:2,3,4 1952:1,6,
13 1953:1 1971:5,6
1990:11

**trials** 1990:13

**trip** 1676:16,17

**trips** 1676:13 1721:17
1765:15

**true** 1636:6 1652:2
1655:11 1656:5,14,16,
18,20 1657:6,7,12,13
1658:9 1659:16
1662:15 1663:3 1665:9,
25 1772:18 1789:13
1798:23 1834:9
1869:14 1891:24

**trust** 1713:25 1714:2

**truth** 1779:11,12
1814:7,8

**turn** 1639:20 1653:9,12

1742:23 1747:16
1759:20 1787:11,20,23
1801:24 1802:15,24
1804:11 1805:4 1837:1,
5 1851:3 1853:8 1859:3
1914:20 1937:10

**turned** 1808:22 1841:4
1842:8 1843:1,21
1844:23 1846:21,25
1847:1 1848:5,10
1850:21 1969:14

**turning** 1841:16
1843:13 1845:11

**turns** 1714:1

**tweaking** 1862:13

**two-minute** 1652:10

**TWU** 1699:13,23
1700:2 1733:8,15
1761:24 1762:6,23
1835:12 1838:15,16
1847:24 1857:22

**type** 1670:15 1763:14
1771:7 1783:13
1821:19 1825:21
1965:20 1979:20
1984:13

**typed** 1709:12

**types** 1789:25 1965:9
1966:6,10 1979:1,5

**typical** 1706:13
1710:14 1730:20

**typically** 1691:1

────────────

**U**

────────────

**ugly** 1716:1

**Uh-huh** 1770:17
1788:11 1858:18
1891:7 1892:13 1894:9

**ultimately** 1826:9
1968:22

**un-muting** 1667:5

**uncertainty** 1934:16

**uncomfortable**
1682:18

**uncontroverted**

1846:6

**uncovered** 1725:15
1726:3

**underlying** 1848:22

**underneath** 1781:1

**understand** 1632:13
1660:12 1668:5
1677:19 1679:20
1697:2 1710:9 1715:15
1723:9 1733:23 1751:7
1752:20 1770:13
1771:5,18 1775:18
1778:21 1785:8 1790:3,
21 1791:22 1794:21
1796:15 1801:22
1803:20 1804:2,24
1805:1 1806:25 1813:1
1817:10 1818:3 1819:6
1823:14 1824:6,11
1825:16 1864:16
1878:17 1882:14
1902:16 1903:2,21
1905:20 1906:8
1916:21 1920:15
1922:8 1939:5,25
1942:2,23 1947:14
1948:14 1950:7
1953:14 1955:9
1967:12 1969:4
1972:22 1975:12
1981:25 1987:17
1995:9

**understanding**
1728:24 1733:5
1743:10 1746:5 1808:3
1865:15 1915:15
1989:22

**understands** 1698:18
1719:2 1770:14
1785:11

**understood** 1634:4
1638:9 1645:11
1646:18 1647:1
1673:15 1700:4,17
1710:11 1728:9 1759:1
1762:16 1824:13
1826:1 1862:23
1870:25 1871:24
1872:20 1874:10
1876:6 1877:7 1878:20
1881:24 1883:16
1886:2 1887:5,21

1893:22 1909:5 1912:3
1922:7 1924:1,12
1933:1 1942:8 1943:5,
25 1944:18 1946:21
1948:5 1957:10 1965:3
1974:20 1976:22
1977:12 1989:2
1995:13

**undertake** 1651:23

**undertaken** 1949:15

**undertakes** 1651:20

**undertaking** 1647:21

**underway** 1733:17

**undid** 1991:5

**undisputed** 1642:19

**undo** 1959:10 1995:17

**undue** 1756:15
1758:20 1903:5,9,15
1943:22 1944:2
1948:25 1949:17
1950:1 1953:6,13
1955:11,12,14,18,19
1956:8,19

**unfair** 1726:14 1906:14

**uniform** 1679:2

**union** 1628:18,19
1629:23 1635:10,12
1637:14 1639:9
1645:19 1646:14
1652:4 1657:8,10
1658:1 1663:14,16
1671:1 1682:4 1688:10
1693:13 1694:2,5,12
1698:1,4,5,8,10,24
1699:6 1701:16 1704:2,
6 1706:13 1710:21
1713:19 1714:1,14,20,
25 1716:17,19 1719:13
1723:22 1724:16
1727:9 1728:20,25
1729:19,21,25 1730:3,
4,14,22 1731:6
1732:22,23 1733:9,24
1734:1,4,8,11 1737:3
1740:20,21 1741:1
1743:6 1747:25 1748:4,
19 1751:19,25 1754:18,
19 1757:12,13 1758:2
1759:3 1760:13 1761:2,
3,5,9,13,17,22 1762:2

1763:19,20 1765:8,13,
19,22 1766:20,22
1767:16 1768:9
1769:22,24 1770:3,22
1771:17 1777:8,10
1778:3 1782:12
1783:12 1784:10
1786:19 1787:10,11,19,
20 1788:12 1789:20
1792:15,21 1793:2
1794:25 1795:21
1797:5 1799:7,17,22,25
1800:5,6,8,23 1801:18,
23 1802:13 1804:23
1805:3 1806:11,20
1807:9,11 1808:5,9,14
1809:7,25 1810:3,5,22,
24 1812:5,7 1813:4,17
1823:9 1824:15 1826:2
1833:2 1834:8,18,20,22
1835:13 1836:10,12
1837:2,18,19 1838:6,8,
11,16 1839:15,22
1842:5,21,22 1844:5,8,
11,12,16,18 1845:3,5,8,
15 1847:13,15 1848:9,
23 1850:2 1851:12,25
1854:19,20 1855:4
1860:7,14,21 1861:18,
25 1863:15 1869:14,23,
24 1870:8,11,14,15,19,
22,23 1872:5,7,10
1873:7 1877:8 1878:11,
21 1882:18 1884:13,14,
17 1885:1,2 1887:14
1890:8 1891:9 1896:20,
22 1897:8,9,25 1899:19
1901:13 1903:4
1906:22 1907:14,25
1908:9 1911:22 1917:3,
5 1919:13 1920:12
1921:19 1922:15,16
1923:9 1924:22
1933:24 1934:5
1937:16,18,20 1938:2,
5,6,8,9,12,13 1939:18,
22 1940:4 1942:14
1943:2 1944:2 1951:8
1952:2,15 1958:23
1959:3,14,15 1960:22
1963:20 1965:11,12,15
1966:9 1968:18
1969:14,16,17 1971:3,
12,20 1977:8 1980:5
1988:8,9 1992:19
1993:5,15 1995:11

1998:9,15

union's 1645:23
1759:20 1813:5
1837:24 1838:9 1886:4
1912:5 1971:14
1992:18

union-opposition-
and- 1877:19 1879:13

union-opposition-
and-organizational
1878:4,8

union-oppositional-
and-organizational
1882:20

union-wise 1941:15

unique 1638:4 1699:5
1731:23 1846:16

unit 1728:14

United 1696:13,14,15,
17 1697:19

universe 1969:13

University 1920:4

unjust 1710:16

unlawful 1892:12,20
1893:4 1895:11

unnecessary 1963:13

unreasonable
1827:17

unwind 1997:6

update 1831:16

upload 1630:20

upset 1682:25 1840:5

upshot 1949:2

upwards 1829:20

urge 1938:16

user 1630:21,22

user-friendly 1632:14

utilize 1676:13

utilized 1926:19

utmost 1743:18

**V**

vacation 1719:17
1721:20,22,23 1722:1,
2,4

vaginas 1692:22

vague 1660:16 1662:2
1825:18 1988:24

vagueness 1795:13

values 1712:25 1713:1

vantage 1649:10
1826:4

variant 1991:7

vein 1905:23

verbally 1867:5

verdict 1754:1 1758:6
1837:11 1846:10
1851:24 1856:14,17
1882:1 1911:3 1934:12,
13 1935:24 1945:19,20,
25 1973:8,12

verdicts 1970:25

version 1863:3
1865:16 1880:7
1887:11 1895:10,20,24
1896:4

versus 1949:11 1950:9
1951:10 1991:2,25

vice 1838:10,21

video 1654:16,24
1711:4 1763:23 1764:1,
8 1765:7 1930:11
1998:16

videos 1646:4 1651:3,
14 1677:10,20,23,24
1680:9,24 1682:23
1702:24 1703:2,5,6,14
1715:16,21,25 1731:11
1754:12,20 1755:6
1758:1 1763:18,19
1766:6 1835:11
1837:16 1839:4 1840:4
1841:12 1845:21
1850:5

view 1650:21 1651:12
1706:17 1707:4

1710:23 1726:9 1741:5
1790:10 1815:18
1816:3 1865:8 1866:1
1869:1 1885:4 1888:9
1915:15 1954:6
1959:25 1960:7

viewed 1715:16
1743:15 1764:16

views 1846:1

VII 1650:11 1754:15
1755:15,18 1840:14
1843:15 1845:22,24
1848:12 1887:20
1900:3 1905:17,24
1936:18 1976:5
1978:17 1980:16
1981:16,19,23 1982:11
1983:1 1986:22 1987:7,
11 1988:5,22 1989:14
1991:12,16

VII's 1893:3,18

violate 1649:8 1692:14
1842:17

violated 1641:4
1644:1,5,8,20 1649:12,
18,24 1650:2 1687:24
1720:25 1847:1 1887:2
1983:3,4

violates 1640:23
1642:11,12 1870:15
1902:23

violating 1841:5
1956:15 1981:7
1983:15,22 1987:11

violation 1644:2
1645:2,3 1646:22
1688:7 1692:19,23
1693:18 1725:1 1895:7
1902:20 1962:1

violations 1691:9

violative 1848:21

violence 1802:23
1803:17 1804:10,19,20
1805:11,20 1808:12
1812:5 1813:4

violent 1885:24

voice 1788:10,21,22
1789:14 1799:3 1804:7
1812:25 1855:16

1890:19

voiced 1762:12

voir 1740:5 1926:3

Volume 1778:13

voluntary 1676:17

vote 1762:20

vulgar 1791:14
1792:24 1793:1 1795:9
1796:3,4 1883:4,9

vulgarity 1789:16
1791:5,11,16,25 1793:9

**W**

waffled 1864:18

wages 1920:6 1957:13
1958:3 1974:15

wait 1653:12 1751:12
1780:10 1818:20
1895:18

waiting 1866:12
1867:10,15 1962:25

walk 1679:4,6 1706:1

wanted 1629:10
1634:22 1640:10
1668:17 1702:15
1707:3 1710:24 1713:1
1715:20 1717:25
1718:11 1725:6 1730:2
1756:2 1760:21,22
1761:13 1780:21
1791:18 1845:20
1879:18 1925:25
1930:3 1938:23 1974:3

wanting 1730:15
1748:11 1823:17,19
1834:21 1840:20
1867:21 1949:1

warrant 1720:16

warranting 1721:1

waste 1647:6

watch 1703:2,3,13
1764:7

watched 1750:8

we-all 1915:15

**wearing** 1764:25 1793:10 1931:1

**Weber** 1948:23 1949:12 1955:5

**website** 1756:24

**week** 1645:10 1709:20 1721:16

**weekend** 1638:25

**weeks** 1711:17,18,21, 23 1855:24

**weighed** 1850:15

**weighing** 1851:13

**western** 1696:15 1998:8,15

**whatnot** 1677:17

**whatsoever** 1844:12

**wheel** 1831:4,5 1859:6

**wheels** 1634:18 1859:2

**whichever** 1982:15

**whoa** 1643:22 1645:8,9

**wide** 1937:1

**wild** 1930:22

**Willis** 1684:24 1744:8 1937:24

**window** 1715:17 1899:5

**wings** 1679:1

**Wise** 1633:11

**wisely** 1829:8

**wit** 1824:23

**withdraw** 1633:25

**withdrawing** 1998:7,8, 10

**withdrawn** 1634:6 1637:25 1728:20,22 1729:2

**witness-wise** 1821:20

**witnesses** 1665:5 1695:12 1736:11 1741:9,12 1751:22 1753:3 1820:18 1821:24 1826:13

**women** 1692:21 1764:9,25 1765:10 1793:10

**Women's** 1712:1 1754:18 1837:18,25 1839:14 1845:3

**wondering** 1644:15 1811:20 1828:8 1868:22

**word** 1660:24 1662:11, 14 1753:12 1761:23 1762:5 1764:6 1775:18 1799:13,19 1800:25 1801:15 1802:14 1812:23 1834:17 1836:15 1878:2 1908:10,12 1919:7 1935:8 1950:2,9 1954:24 1996:20 1997:10

**worded** 1885:5 1889:25 1958:2 1988:17

**wording** 1879:20 1949:18 1983:25

**words** 1659:16,17 1748:17 1763:22 1782:13,19,23,24 1783:7,9,19 1862:5 1878:7 1897:15,17 1913:8 1954:23

**work** 1640:24 1645:10 1647:23 1665:8 1669:17 1675:11 1688:8 1699:6 1716:24 1719:14 1720:4,8,9,11, 13,17 1721:3,24 1728:14,16,17 1761:25 1794:7 1804:20 1838:7 1855:8 1925:6 1937:5 1961:5 1979:11 1980:4

**worked** 1641:14 1689:23 1707:14 1765:20

**workers** 1698:3,24 1701:16 1710:21 1733:9

**workforce** 1758:25 1936:18

**working** 1639:22 1687:1 1709:15 1720:2, 4,15 1793:21 1855:6 1926:7 1955:15

**workplace** 1651:1 1658:13 1682:8 1725:2 1760:23 1787:8 1788:14,24 1790:20 1793:18 1797:21 1833:19,22 1848:14 1851:1

**works** 1853:17 1974:6

**world** 1664:2 1719:12, 13

**worried** 1866:7 1972:2

**worry** 1821:15 1971:25 1981:1

**worth** 1867:19

**Wow** 1785:14

**wrapped** 1961:6

**Wright** 1891:19 1942:20,23 1946:10,18

**write** 1897:17 1976:10

**Write-line** 1755:8

**writes** 1990:9

**writing** 1629:18 1868:7,9

**written** 1654:13 1664:22 1741:14 1939:20

**wrong** 1633:6 1637:12 1760:14 1774:15 1825:20 1887:15 1898:22 1940:7,15,16 1946:13 1978:8 1982:3 1984:17 1996:7

**wrote** 1654:15,18

---

**Y**

**y'all** 1629:2,4,6,17 1631:13,15 1639:3,5,10 1641:7 1654:4 1667:5 1742:12 1753:13,21

**workforce** 1758:25

1760:5 1823:7,8 1828:16 1831:17 1836:15 1852:16 1853:1 1854:23 1856:10 1857:1,8,24 1858:2 1862:4 1863:4 1864:24 1869:6 1874:15 1876:11 1883:23 1898:18 1925:2,5,11 1926:4 1931:22 1956:20 1974:3 1980:4 1986:12 1995:20 1997:11 1998:19

**y'all's** 1629:16 1822:24 1879:5 1882:5

**year** 1665:7 1674:12 1722:23 1940:15

**years** 1674:23 1675:10, 24 1687:6,7 1743:18 1762:8 1777:17 1786:10 1814:4 1841:3 1846:5,7 1849:25

**yellow** 1631:8

**yesterday** 1629:12,15, 22 1630:2,10 1635:13 1638:19 1639:15,19,24 1640:5,10 1648:4 1654:10 1655:4 1665:6 1667:4 1748:13 1825:3

---

**Z**

**zealously** 1827:15

**zoom** 1864:6