Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 1 of 240  PageID 15829
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022

1          UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF TEXAS
2
             CASE NO. 3:17-cv-02278-X
3

4

5   -----------------------------------------x

6   CHARLENE CARTER,

7                    Plaintiff,

8   v.

9   SOUTHWEST AIRLINES CO. and
    TRANSPORT WORKERS OF AMERICA,
10  LOCAL 566,

11                   Defendants.

12

13  -----------------------------------------x

14

15

16            TRANSCRIPT OF THE TRIAL

17       BEFORE THE HONORABLE BRANTLEY STARR

18          UNITED STATES DISTRICT JUDGE

19

20            V O L U M E   7

21

22               Dallas, Texas

23               July 13, 2022

24                8:45 a.m.

25

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 2 of 240  PageID 15830
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2000

```
 1   A P P E A R A N C E S:

 2

     FOR THE PLAINTIFFS:
 3
         NATIONAL RIGHT TO WORK FOUNDATION INC.
 4           8001 Braddock Street
             Suite 600
 5           Springfield, Virginia  22160
         BY:  MATTHEW B. GILLIAM, ESQ.
 6           mgb@nrtw.org

 7

 8       PRYOR & BRUCE
             302 North San Jacinto
 9           Rockwall, Texas 75087
         BY:  BOBBY G. PRYOR, ESQ.
10           MATTHEW D. HILL, ESQ.
             bpryor@pryorandbruce.com
11           mhill@pryorandbruce.com

12

13

14

15   FOR THE DEFENDANT SOUTHWEST AIRLINES CO.:

16       REED SMITH, LLP
             2850 North Harwood
17           Suite 1500
             Dallas, Texas  75201
18       BY:  PAULO B. McKEEBY, ESQ.
             BRIAN K. MORRIS, ESQ.
19           pmckeeby@reedsmith.com
             bmorris@reedsmith.com
20

21

22

23

24

25
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 3 of 240   PageID 15831
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2001

1   For the Defendant Union 566:

2

3       CLOUTMAN & GREENFIELD, PLLC
            3301 Elm Street
4           Dallas, TX 75226
        BY:  ADAM S. GREENFIELD, ESQ.
5           EDWARD B. CLOUTMAN, III, ESQ.
            agreenfield@candglegal.com
6           crawfish11@prodigy.net

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 4 of 240   PageID 15832
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2002

1   COURT REPORTER:   MS. KELLI ANN WILLIS, RPR, CRR, CSR
                      United States Court Reporter
2                     1100 Commerce Street
                      Room 1528
3                     Dallas, Texas  75242
                      livenotecrr@gmail.com
4

5           Proceedings reported by mechanical

6   stenography and transcript produced by computer.

7

8                         *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 5 of 240   PageID 15833
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2003

1               **I N D E X**

2

3    Jury Charge ............................... 2014

4

5    Closing Statement by Mr. Pryor ........... 2071

6    Closing Statement by Mr. McKeeby ......... 2115

7    Closing Statement by Mr. Greenfield ....... 2136

8    Rebuttal Closing Statement by Mr. Pryor ... 2175

9

10   Jury Note No. 2 ........................... 2194

11   Jury Note No. 3 ........................... 2196

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1               - P R O C E E D I N G S -

 2                        -o-

 3            THE COURT:  Thank you.

 4            You can be seated.

 5            Okay.  So we should do appearances on this

 6   final day.  Let's go ahead and start with

 7   Southwest -- no -- start with Carter.

 8            MR. GILLIAM:  For Plaintiff Carter,

 9   Matthew Gilliam, Matt Hill, and Bobby Pryor.

10            THE COURT:  Thank you.

11            MR. McKEEBY:  For Southwest, Paulo McKeeby

12   and Brian Morris.

13            THE COURT:  Thank you.

14            MR. GREENFIELD:  And on behalf of the

15   Union, Adam Greenfield, Edward Cloutman III, and our

16   corporate representative, Michael Massoni.

17            THE COURT:  Thank you.

18            So eagle-eye McKeeby spotted, in

19   Questions 10 and 11, we used the three terms,

20   "religious beliefs, practices, or observances," in a

21   different order on 10 and 11.

22            I was going to ask y'all's permission to

23   maybe just saying a side comment after I read

24   Question 11.  So I'll have read 10, and then I will

25   read Question 11.
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2005

 1              And my question would be this.  Can I say,

 2    "Jury, as an aside, we used the three same words but

 3    in a different order.  None of us intend those to

 4    have a different meaning."

 5              And that is true throughout the charge,

 6    because there are probably other places too.

 7              So does anyone have an objection to me

 8    doing that, and then we don't reprint or have jury

 9    notes?

10              MR. GREENFIELD:  No objection, your Honor.

11              THE COURT:  Any concerns with that?  Or if

12    there is better phrasing, then I'm happy to --

13              MR. GILLIAM:  None, your Honor.

14              THE COURT:  Okay.  Thanks for spotting it.

15              Because, I mean, we could get a jury note

16    on that.

17              MR. GILLIAM:  Just for the record, I don't

18    think she got it.  No objection from Carter.

19              THE COURT:  Okay.  Got it.  Thank you.

20              It would be the first jury note that we

21    could actually give a satisfactory answer to, right?

22    All other jury notes get crap answers, but that one

23    we could actually knock out of the park.

24              Okay.  I'm making a note here.  These

25    three words have the same meaning throughout even if

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 8 of 240   PageID 15836
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2006

 1  in a different order.

 2          Okay.  What else should we talk about that

 3  y'all are thinking through?  I don't have to sit up

 4  here and filibuster, we've got no more exhibits to

 5  go through, but I want to make sure if y'all have

 6  anything you need to run by me before we start.

 7          So just the reminder, please don't object

 8  during someone else's closing unless it's a limine

 9  point that we've got to patrol right then, and then

10  I will call voluntarily for a sidebar at the end of

11  everyone's time and just ask if anyone has anything

12  that I need to address.

13          Mr. Pryor, I think I told your team

14  yesterday that I allow plaintiffs to save up to

15  10 minutes of their closing time for rebuttal for

16  the last word.

17          MR. PRYOR:  We're following that.  Thank

18  you, your Honor.

19          THE COURT:  So I will flag that for the

20  jury, just because if I tell them you're going to

21  close in order, they are thinking, Why is Pryor

22  getting back up?  So I just want to forecast

23  expectations for them.

24          My guess is we are going to have to take a

25  lunch break at some point.  I'm not going to break

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 9 of 240   PageID 15837
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2007

 1  in anyone's closing.  So I'm just going to be

 2  watching the clock, and if we're somewhere in the

 3  11:30 to 12:30 range and someone has sat down, then

 4  I'm going to think about it.

 5          I may call for a sidebar to figure out if

 6  it is okay to break before that next person's

 7  closing.  Does that make sense?

 8          We'll probably take a break after I read

 9  the charge if it goes on for a long time.  I just

10  don't know how long it is going to take.  It may

11  take over an hour.  But I will try to be efficient

12  without just speed-reading it.

13          Other questions, thoughts, concerns?

14          MR. PRYOR:  Your Honor, there was some

15  mention of this yesterday, I wasn't here for it.

16          In terms of once the jury is in the box in

17  the jury room, what is your rule on how we have to

18  be here?  I mean, I live 15 minutes away, but if you

19  include getting through security, it's probably 20

20  or 30.

21          So I'm happy to stay here.  We will always

22  have someone here.  But I just want to make sure we

23  do what you tell us.

24          THE COURT:  I'll say as long as you have a

25  person here, that is great.  And, obviously, even if

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 7 July 13, 2022                  Page 2008

1    there is one lawyer who needs to call back in to

2    someone else for a jury note, that is fine by me.  I

3    would say you can even have one person within

4    15 minutes of clearing security getting here.

5              And that is for today.  Tomorrow Kinkeade

6    may loosen the rules because he may want to cover

7    this from home, too.  So I will ask, we will ask him

8    today what his preference is for y'all.

9              But as long as you can have one lawyer

10   here within 15 minutes, that is good.

11             My protocol is if we get a jury note, we

12   will scan it and email it out to y'all and say, Hey,

13   can y'all come back?

14             And I will also ask y'all after we're done

15   closing and the jury goes back, I think we probably

16   have cell phone numbers, but if you can get them to

17   Mr. Frye, we can keep a phone tree, and then call

18   people if there is not a quick response to an email

19   saying there is a jury note.

20             MR. PRYOR:  One other thing.

21             THE COURT:  Yes, sir.

22             MR. PRYOR:  You mentioned yesterday it

23   might take you an hour and a half to read this.  It

24   is 60-something pages long.  It's mind-numbing at

25   some point, I'm sure, for the jury.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 11 of 240   PageID 15839
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2009

1            Is it possible to have the morning break
2    after the reading, or is it just going to depend on
3    how long it takes?
4            THE COURT:  That's my plan.  And honestly,
5    even if it takes as short as an hour, I think it's
6    probably good for the jury to get up, use the
7    bathroom, stretch their legs, before coming back to
8    refocus on closing.  So I will probably call a break
9    regardless of how long it takes.
10           MR. PRYOR:  Thank you.
11           THE COURT:  And then we will see
12   break-wise, in between closings and that lunch
13   break, I told you I'm targeting anywhere in the
14   11:30 to 12:30 range.
15           Any other questions?
16           Exhibit lists.  So I shrunk it down this
17   morning just to the exhibits that were admitted.  So
18   Mr. Frye is going to be emailing that to y'all.
19           I also have the thumb drive with the
20   version of the exhibits that were admitted.  We
21   scanned 15A.  I have the redactions that Mr. Hill
22   sent me.
23           MR. PRYOR:  I'm informed by my office that
24   the hard copy, bound hard copies are on the way
25   here.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 12 of 240   PageID 15840
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2010

```
 1              I haven't looked at it to check it, number
 2  one; and number two, I don't know what type of index
 3  there is.  That would be things that we would -- we
 4  would work with opposing counsel on to make sure it
 5  is comfortable with them.
 6              But it may not be instantaneous after
 7  closing that we could send them back.  We will have
 8  to confer a little.
 9              THE COURT:  You will have to confer.
10              And I will say the exhibit list I put
11  together should hopefully be your index.  If not,
12  then there is something wrong with my list or --
13              MR. HILL:  I've got two different versions
14  coming because I wasn't sure exactly which ones
15  were --
16              THE COURT:  Okay.
17              MR. HILL:  I'm sorry.
18              I've got two different versions coming
19  depending on which the Court prefers.
20              One has just the exhibit number and the
21  description, and then the other has the exhibit
22  number, the description, the witness, and the date
23  of admission.
24              THE COURT:  Sure.
25              MR. HILL:  Which is kind of what yours
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 13 of 240   PageID 15841
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2011

 1  has.  And I'm not sure which of those you prefer.

 2              THE COURT:  Sure.  Honestly, I'm fine with

 3  the latter one because that is the one I'm giving

 4  them.  I have no problems with you giving them a

 5  shrunk-down version, but sometimes it will jog their

 6  memory that this came in with this witness.

 7              MR. HILL:  Okay.

 8              THE COURT:  Okay.  So I will send those

 9  back once y'all have signed off that the index and

10  the hard copies are good.

11              The same thing with my electronic version.

12  We will let you see those over email and then

13  Mr. Frye will have you sign a form saying you are

14  good with the exhibit list.

15              So we try to get those back as soon as we

16  can.  We'd love to get at least the electronic

17  exhibits back to them by the time they are done

18  picking a foreperson.

19              I always find it embarrassing if a jury

20  renders a verdict before I get the exhibits back in.

21  All right?  So I just view that as on me as a

22  professional, I'm trying to do my job getting them

23  exhibits.

24              But electronic should be quick, and then

25  hard copy as soon as y'all can thumb through and

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 14 of 240   PageID 15842
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2012

 1  make sure it's an accurate set, and then we will be
 2  good to go.
 3          Any other questions?
 4          Okay.  So I will go off the bench.  Make
 5  sure y'all think about your closing.  Right at 9, if
 6  we've got everyone here, then we will come back on
 7  the bench and we'll start going.
 8          Thank y'all very much.  See you in a bit.
 9          Court is in recess.
10          THE COURT SECURITY OFFICER:  All rise.
11          (Recess.)
12          THE COURT SECURITY OFFICER:  All rise.
13          THE COURT:  They are ready.  Are y'all
14  ready?  Okay.  I'm ready.  Let's do it.
15          (The jurors entered the courtroom.)
16          THE COURT:  Okay.  You can be seated.
17          Okay.  Well, we've got a jury charge for
18  you.  So we put our work in and we worked late in
19  the day yesterday, but we are done.  The bad news is
20  it is pretty long.  So I'm sorry about that.
21          I have only got one Dr. Pepper.  We'll
22  hope we can get through it.
23          But I'll tell you -- so what we are doing
24  in reading the charge, courts are really based on an
25  oral tradition, right?  Before we ever had paper to

1  write things down, we still had a system of justice.

2          And so it is my duty to keep carrying on

3  this tradition and I'm going to read the charge to

4  you.  But I'm a visual learner.  And so if you are

5  like me, hearing things doesn't make them stick as

6  much as seeing them.

7          So what I'm going to do is try to make a

8  deal with you.  I'm going to give you a copy of the

9  jury charge so each one of you has a copy.  You will

10 also have an extra that when you select a

11 foreperson, they will have the control copy that

12 y'all will actually fill out.

13         I'm going to give you a copy, but I'm

14 going to only do that if we can agree that you are

15 going to read along with me and not get ahead of me,

16 because there is so much to read ahead that you

17 could just get lost.  I want us to all stick

18 together.  Sound good?

19         Okay.  Let's hand out the copies.

20         Volume 1 and 2.  I'm joking.  It's a lot

21 of paper, I'm sorry.  The trees are crying at me

22 right now.

23         This is why we're excited to give y'all

24 the case today.

25         Okay.  So here we go.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2014

 1            Jury instructions.

 2            Members of the jury, it's my duty and

 3    responsibility to instruct you on the law you are to

 4    apply in this case.  The law contained in these

 5    instructions is the only law you may follow.

 6            It is your duty to follow what I instruct

 7    you the law is, regardless of any opinion that you

 8    might have as to what the law ought to be.

 9            If I have given you the impression during

10    the trial that I favor either party, or any of the

11    three parties, you must disregard that impression.

12            If I have given you the impression during

13    the trial that I have an opinion about the facts of

14    this case, you must disregard that impression.  You

15    are the sole judges of the facts of this case.

16            Other than my instructions to you on the

17    law, you should disregard anything I may have said

18    or done during the trial in arriving at your

19    verdict.

20            You should consider all of the

21    instructions about the law as a whole and regard

22    each instruction in light of the others without

23    isolating a particular statement or paragraph.

24            The testimony of the witnesses and other

25    exhibits introduced by the parties constitute the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 17 of 240   PageID 15845
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2015

1  evidence.  The statements of counsel are not

2  evidence; they are only arguments.

3          It is important for you to distinguish

4  between the arguments of counsel and the evidence on

5  which those arguments rest.

6          What the lawyers say or do is not

7  evidence.  You may, however, consider their

8  arguments in light of the evidence that has been

9  admitted and determine whether the evidence admitted

10  in this trial supports the arguments.

11          You must determine the facts from all the

12  testimony that you have heard and the other evidence

13  submitted.  You are the judges of the facts, but in

14  finding those facts, you must apply the law as I

15  instruct you.

16          You are required by law to decide the case

17  in a fair, impartial, and unbiased manner based

18  entirely on the law and on the evidence presented to

19  you in the courtroom.

20          You may not be influenced by passion,

21  prejudice, or sympathy you might have for the

22  plaintiff or either defendant in arriving at your

23  verdict.  Do not let bias, prejudice, or sympathy

24  play any part in your deliberations.

25          A corporation and all other persons are

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 18 of 240  PageID 15846
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2016

 1  equal before the law and must be treated as equals

 2  in a court of justice.

 3         Preponderance of the evidence.

 4         Plaintiff Charlene Carter has the burden

 5  of proving her case by a preponderance of the

 6  evidence.  To establish by a preponderance of the

 7  evidence means to prove something is more likely so

 8  than not so.

 9         If you find that Plaintiff Charlene Carter

10  has failed to prove any element of her claim by a

11  preponderance of the evidence, then she may not

12  recover on that claim.

13         Evidence.

14         The evidence you are to consider consists

15  of the testimony of the witnesses, the documents,

16  and other exhibits admitted into evidence and any

17  fair inferences and reasonable conclusions you can

18  draw from the facts and circumstances that have been

19  proven.

20         Generally speaking, there are two types of

21  evidence.  One is direct, such as testimony of an

22  eye witness.  The other is indirect or

23  circumstantial evidence.

24         Circumstantial evidence is evidence that

25  proves a fact from which you can logically conclude

1  another fact exists.

2           As a general rule, the law makes no

3  distinction between direct and circumstantial

4  evidence, but simply requires that you find the

5  facts from a preponderance of all of the evidence,

6  both direct and circumstantial.

7           Stipulations.

8           A stipulation is an agreement.  When there

9  is no dispute about certain facts, the attorneys may

10 agree or stipulate to those facts.  You must accept

11 a stipulated fact as evidence and treat that fact as

12 having been proven here in court.

13          The parties stipulate to the below facts

14 which are set forth in individually numbered

15 paragraphs and which require no proof.

16          One, Charlene Carter is a Christian who

17 believes that abortion is the taking of a human

18 life, contrary to the teachings of the Bible and the

19 will of God.

20          Two, Carter was hired as a flight

21 attendant by Southwest in 1996.

22          Three, TWU Local 556 is the local union

23 representing flight attendants working at Southwest

24 Airlines.

25          Four, Local 556 served as Carter's

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 20 of 240   PageID 15848
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2018

 1  exclusive bargaining representative throughout her

 2  tenure with Southwest.

 3              Five, for several years, Carter objected

 4  to certain decisions by and the leadership of Local

 5  556's leadership through email messages and Facebook

 6  postings.

 7              Six, in September of 2013, Carter resigned

 8  her membership with Local 556 and was an agency

 9  fee-paying non-member objector until her termination

10  in 2017.

11              Seven, starting in early 2015, Carter

12  began sending messages to then president of Local

13  556, Audrey Stone, discussing Carter's status as a

14  union objector.  These emails and messages continued

15  through the termination of Carter's employment by

16  Southwest.

17              Eight, from 2015 through 2017, Carter

18  continued in various efforts opposing the Union and

19  the Union's then president, Audrey Stone.  Carter

20  supported a recall campaign and posted and sent

21  messages on social media expressing her disapproval

22  of the Union and Union leadership.  Carter sent many

23  direct messages to Stone to which Stone never

24  responded.

25              Nine, in January of 2017, members of Local

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 21 of 240   PageID 15849
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2019

1   556, including President Stone, attended a

2   Union-sponsored women's committee meeting in

3   Washington DC.

4              Ten, on January 21, 2017, certain members

5   of Local 556 attended the Women's March on

6   Washington DC.

7              Eleven, on February 14, 2017, Carter sent

8   Local 556 President Stone private messages via

9   Facebook Messenger.

10             Twelve, President Stone never sent Carter

11  responses to the private messages.

12             Thirteen, on February 22, 2017, President

13  Stone reported Carter's emails and Facebook messages

14  to Stone's base manager, Suzanne Stephenson, in Las

15  Vegas, Nevada.

16             Fourteen, on March 7, 2017, Southwest held

17  a fact-finding meeting with Carter as part of its

18  investigation of President Stone's complaint.

19             Fifteen, on March 14, 2017, Southwest sent

20  Carter a termination notice.

21             Witnesses.

22             You alone are to determine the questions

23  of credibility or truthfulness of the witnesses.

24             In weighing the testimony of the

25  witnesses, you may consider the witness's manner and

 1   demeanor on the witness stand, any feelings or

 2   interest in the case, any prejudice or bias about

 3   the case that he or she may have, and the

 4   consistency or inconsistency of his or her

 5   testimony, considered in light of the circumstances.

 6          Has the witness been contradicted by other

 7   credible evidence?  Has he or she made statements at

 8   other times and places contrary to those made here

 9   on the witness stand?

10          You must give the testimony of each

11   witness the credibility you think it deserves.

12          Even though a witness may be a party to

13   the action, and therefore, interested in its

14   outcome, the testimony may be accepted if it is not

15   contradicted by direct evidence or by any inference

16   that may be drawn from the evidence if you believe

17   the testimony.

18          You are not to decide this case by

19   counting the number of witnesses who have testified

20   on the opposing sides.  Witness testimony is

21   weighed, witnesses are not counted.  The test is not

22   the relative number of witnesses, but the relative

23   convincing force of the evidence.

24          The testimony of a single witness is

25   sufficient to prove any fact even if a greater

1  number of witnesses testified to the contrary, if,

2  after considering all of the evidence, you believe

3  that witness.

4          Similar acts.

5          Evidence that an act was done at one time

6  or on one occasion is not any evidence or proof

7  whatsoever that the act was done in this case.

8          Then how may you consider evidence of

9  similar acts?

10          You may consider evidence of similar acts

11  for the limited purpose of showing Carter's,

12  Southwest's, Local 556's motives, opportunities,

13  intents, knowledges, plans, identities, or absence

14  of mistakes or accidents which are at issue in this

15  case.

16          Such evidence may not be considered for

17  any other purpose whatsoever.  You may not use the

18  evidence to consider or reflect Carter's,

19  Southwest's or Local 556's character.

20          Impeachment by witnesses' inconsistent

21  statements.

22          In determining the weight to give to the

23  testimony of a witness, consider whether there was

24  evidence that at some other time the witness said or

25  did something or failed to say or do something that

1  was different from the testimony given at trial.

2          A simple mistake by a witness does not

3  necessarily mean that the witness did not tell the

4  truth as he or she remembers it.  People may forget

5  some things or remember other things inaccurately.

6          If a witness made a misstatement, consider

7  whether that misstatement was an intentional

8  falsehood or simply an innocent mistake.  The

9  significance of that may depend on whether it has to

10  do with an important fact or with only an

11  unimportant detail.

12          Deposition testimony.

13          Certain testimony has been presented to

14  you through a deposition.  A deposition is the sworn

15  recorded answers to questions a witness was asked in

16  advance of the trial.

17          Under some circumstances, if a witness

18  cannot be present to testify from the witness stand,

19  that witness's testimony may be presented under oath

20  in the form of a deposition.

21          Some time before the testimony was

22  presented here, attorneys representing the parties

23  in this case questioned the witness under oath.  A

24  court reporter was present and recorded the

25  testimony.  The questions and answers have been

 1   shown to you.

 2           This deposition testimony is entitled to

 3   the same consideration and is to be judged by you as

 4   to credibility and weighed and otherwise considered

 5   by you in the same way as if the witness had been

 6   present and had testified from the witness stand in

 7   court.

 8           Limiting instructions.

 9           When testimony or an exhibit is admitted

10   for a limited purpose, you may consider that

11   testimony or exhibit only for the specific limited

12   purpose for which it was admitted.

13           Remember the limiting instruction that I

14   told you throughout this case.  How and whether

15   Defendant Southwest treated or disciplined other

16   employees is irrelevant to Plaintiff Carter's claims

17   in this case.  To the extent you have heard

18   testimony or evidence about that topic, you should

19   disregard it.

20           No inference from filing suit.

21           The fact that a person brought a lawsuit

22   and is in court seeking damages creates no inference

23   that the person is entitled to a judgment.  Anyone

24   may make a claim and file a lawsuit.  The act of

25   making a claim in a lawsuit, by itself, does not in

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 26 of 240   PageID 15854
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2024

1    any way tend to establish that claim and is not

2    evidence.

3                Parties' claims.

4                I will now instruct you on the law that

5    you must apply to Plaintiff Carter's claims.

6                A, Plaintiff Carter's duty of fair

7    representation claim against Defendant Local 556.

8                A federal law called the Railway Labor Act

9    imposes upon unions like Defendant Local 556 what is

10   a called a duty of fair representation.

11               The duty means that a union must serve the

12   interest of all employees, whether they are union

13   members or not, without hostility or discrimination

14   toward any, must exercise its discretion with

15   complete good faith and honesty, and must avoid

16   arbitrary conduct.

17               This is especially true when a union is

18   handling a grievance based upon a termination.  The

19   industrial equivalent of capital punishment.

20               Plaintiff Charlene Carter claims that

21   Defendant Local 556 violated its duty of fair

22   representation owed to her under the Railway Labor

23   Act when former Local 556 president Audrey Stone

24   reported Plaintiff Carter to Defendant Southwest.

25               A union is liable for all acts of its

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 7 July 13, 2022                  Page 2025

1    officers and agents within the scope of their
2    official capacity, regardless of whether the union
3    specifically authorized or ratified the acts.
4            Holding elected union office is persuasive
5    and substantial evidence that the union is acting in
6    his or her official capacity -- union official is
7    acting in his or her official capacity and is
8    decisive in the absence of compelling contrary
9    evidence.
10           The union violates the duty of fair
11   representation when it takes action that is
12   arbitrary, discriminatory, or in bad faith.
13           Arbitrary means depending on individual
14   discretion, or of relating to, or involving a
15   determination made without consideration or regard
16   for facts, circumstances, fixed rules, or
17   procedures.
18           Bad faith means dishonesty of belief,
19   purpose, or motive.
20           Discriminatory means differential
21   treatment or a failure to treat all persons equally
22   when no reasonable distinction can be found between
23   those favored and those not favored.
24           To prove that Defendant Local 556 violated
25   its duty of fair representation that it owed to

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 28 of 240   PageID 15856
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                        Page 2026

1   Plaintiff Carter, Plaintiff Carter must prove by a

2   preponderance of the evidence that Defendant Local

3   556 acted arbitrarily, discriminatorily, or in bad

4   faith.

5               Plaintiff Carter can also prove a breach

6   of duty by the Union by showing that the Union was

7   arbitrarily ignoring a meritorious grievance or

8   processing it in a perfunctory fashion.

9               The law presumes a union breaches its duty

10  when it causes the discharge of an employee.  If a

11  union caused the discharge of an employee, it can

12  rebut the presumption of breach by showing by a

13  preponderance of the evidence that the action was

14  done in good faith, was based on rational

15  considerations, and was linked in some way to the

16  union's need to effectively represent its

17  constituency as a whole.

18              If you find that President Stone was

19  acting in her official capacity when she reported

20  Plaintiff Carter to Defendant Southwest, and that

21  Local 556, through Stone, caused Plaintiff Carter's

22  discharge, then you must presume that Local 556

23  breached the duty of representation.  Then you must

24  consider whether Local 556 can rebut the presumption

25  by a preponderance of the evidence.

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 29 of 240  PageID 15857
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2027

1            If you find that Stone was acting in her

2    official capacity when she reported Plaintiff Carter

3    to Defendant Southwest, but that Local 556 did not

4    cause Plaintiff Carter's discharge, then there is no

5    presumption of breach.

6            Nevertheless, you must still determine

7    whether Local 556 breached its duty by acting

8    arbitrarily, discriminatorily, or in bad faith even

9    if it did not cause Plaintiff Carter's discharge.

10           If you determine that Defendant Local 556

11   rebuts a presumption that it violated its duty of

12   fair representation, you must still nevertheless

13   determine whether Local 556 breached its duty by

14   acting arbitrarily, discriminatorily, or in bad

15   faith, even if it rebuts a presumption that it

16   breached a duty -- breached the duty.

17           B, Plaintiff Carter's Railway Labor Act

18   retaliation claim against Defendants Southwest and

19   Local 556.

20           Plaintiff Carter brings a claim against

21   Defendants Southwest and Local 556 through a federal

22   law commonly referred to as the Railway Labor Act.

23           The act forbids any limitation upon

24   freedom of association among employees and provides

25   for the complete independence of employees in the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 30 of 240   PageID 15858
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2028

1   matter of self organization.

2          The act also places certain general duties

3   upon common air carriers and their unions such as

4   Defendants Southwest and Local 556, respectively.

5          Plaintiff Carter has filed this lawsuit

6   based on her claim that Defendants Southwest and

7   Local 556 violated two provisions of this act.

8          The first provision that Plaintiff Carter

9   alleges that Defendants Southwest and Local 556

10  violated is Section 152 Third.

11         It states, "Representatives of a union

12  shall be designated by their respective parties

13  without interference, influence, or coercion by

14  either party over the designation of representatives

15  by the other; and neither party shall in any way

16  interfere with, influence, or coerce the other in

17  its choice of representatives.

18         "Representatives of employees for the

19  purposes of this chapter need not be persons in the

20  employ of the carrier, and no carrier shall, by

21  interference, influence, or coercion seek in any

22  manner to prevent the designation by its employees

23  as their representatives to or which are not

24  employees of the carrier."

25         The second provision that Plaintiff Carter

 1  alleges that Defendant Southwest and Local 556

 2  violated is Section 152 Fourth.

 3              It states in pertinent part, "Employees

 4  shall have the right to organize and bargain

 5  collectively through union representatives of their

 6  choosing.  The majority of any craft or class of

 7  employees shall have the right to determine who

 8  shall be the representative of the craft or class

 9  for the purposes of this chapter.

10              "No carrier, its officers, or agents shall

11  deny or in any way question the right of its

12  employees to join, organize, or assist in organizing

13  the labor organization of their choice; and it shall

14  be unlawful for any carrier to interfere in any way

15  with the organization of its employees, or to use

16  the funds of the carrier in maintaining or assisting

17  or contributing to any labor organization, labor

18  representative, or other agency of collective

19  bargaining, or in performing any work therefor, or

20  to influence or coerce employees in an effort to

21  induce them to join or remain or not to join or

22  remain members of any labor organization, or to

23  deduct wages -- or to deduct from the wages of

24  employees any dues, fees, assessments, or other

25  contributions payable to labor organizations, or to

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 32 of 240   PageID 15860
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2030

 1   collect or to assist in the collection of any such

 2   dues, fees, assessments, or other contributions."

 3          Plaintiff Carter claims that Defendant

 4   Southwest retaliated against her by firing her for

 5   engaging in union opposition and organizational

 6   activity protected by Section 152 Third and Fourth.

 7          Plaintiff Carter also claims that

 8   Defendant Local 556 retaliated against her by

 9   attempting to discipline her for engaging in union

10   opposition and organizational activity protected by

11   Section 152 Third and Fourth.

12          It is unlawful for a carrier employer or a

13   union to retaliate against an employee for

14   exercising rights protected by the act.

15          To prove that Defendant Southwest

16   retaliated against Plaintiff Carter, Plaintiff

17   Carter must prove by a preponderance of the evidence

18   the following elements:

19          One, that Plaintiff Carter engaged in

20   activity that is protected by Section 152 Third

21   and/or Fourth;

22          Two, that Defendant Southwest discharged

23   Plaintiff Carter;

24          And three, that Plaintiff Carter's

25   protected activity was a substantial or motivating

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 33 of 240   PageID 15861
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2031

1   factor in Defendant Southwest's decision to

2   discharge Plaintiff Carter.

3          To prove that Defendant Local 556

4   retaliated against Plaintiff Carter, Plaintiff

5   Carter must prove by a preponderance of the evidence

6   the following elements:

7          One, that Plaintiff Carter engaged in

8   activity that is protected by Section 152 Third

9   and/or Fourth;

10          Two, that former Local 556 president

11   Audrey Stone reported Plaintiff Carter to Defendant

12   Southwest for discipline;

13          Three, that Stone reported Plaintiff

14   Carter in Stone's official capacity as president of

15   Local 556;

16          And four, that Plaintiff Carter's

17   protected activity was a substantial or a motivating

18   factor in Stone's decision to report Plaintiff

19   Carter to Defendant Southwest for discipline.

20          All union oppositional and organizational

21   activity is protected under Section 152 Third and

22   Fourth unless it:

23          One, constitutes a threat of violence;

24          Or, two, is a false statement made with

25   knowledge of its falsity or with reckless disregard

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 34 of 240   PageID 15862
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2032

 1    for the truth.

 2            Activity that is intemperate, abusive,

 3    insulting, or hyperbolic is protected activity under

 4    Section 152 Third and Fourth.  Activity that

 5    expresses and opinion about someone's competence for

 6    her job is also protected.

 7            If you decide that Defendant Southwest

 8    and/or Defendant Local 556 retaliated against

 9    Plaintiff Carter in violation of the Railway Labor

10    Act, you must then consider each defendant's

11    affirmative defense.

12            Defendant Southwest asserts that Plaintiff

13    Carter would have been discharged even if she had

14    not engaged in activity protected by Section 152

15    Third and/or Fourth.

16            Defendant Local 556 asserts that then

17    President Stone would have reported Plaintiff Carter

18    to Defendant Southwest even if Plaintiff Carter had

19    not engaged in activity protected by Section 152

20    Third and/or Fourth.

21            Each defendant has to separately prove its

22    affirmative defense and must prove it by a

23    preponderance of the evidence.

24            If a defendant proves its affirmative

25    defense by a preponderance of the evidence, then

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 35 of 240  PageID 15863
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 7 July 13, 2022                  Page 2033

1    that defendant is not liable for this claim.

2              C, Plaintiff Carter's Title VII religious

3    discrimination claims against Defendants Southwest

4    and Local 556.

5              Subpart 1.  Plaintiff Carter's unlawful

6    discharge claim against Defendants Southwest and

7    Local 556.

8              Plaintiff Charlene Carter claims that

9    Defendant Southwest discharged her because of her

10   sincerely held religious observances, beliefs, or

11   practices.

12             Employer Defendant Southwest denies

13   Plaintiff Carter's claims and contends that it

14   discharged her because she violated Defendant

15   Southwest's employment policies.

16             It is unlawful for an employer to

17   discriminate against an employee because of the

18   employee's sincerely held religious observances,

19   beliefs, or practices.  An employer may, however,

20   discharge an employee for other reasons, good or

21   bad, fair or unfair.

22             To prove unlawful discrimination by

23   Defendant Southwest, Plaintiff Carter must prove by

24   a preponderance of the evidence:

25             One, that Defendant Southwest discharged

1  Carter;

2          And two, that Defendant Southwest's

3  discharge of Plaintiff Carter was motivated by her

4  sincerely held religious observances, beliefs, or

5  practices.

6          Plaintiff Carter does not have to prove

7  that unlawful discrimination was the only reason

8  Defendant Southwest discharged her.

9          If you find that the reason Defendant

10 Southwest has given for discharging Plaintiff Carter

11 is unworthy of belief, you may, but are not required

12 to, infer that Defendant Southwest was motivated by

13 Plaintiff Carter's religious observances, beliefs,

14 or practices.

15         Plaintiff Carter claims that Defendant

16 Local 556 caused and/or attempted to cause Defendant

17 Southwest to discriminate against Plaintiff Carter

18 because of her sincerely held religious observances,

19 beliefs or practices by reporting Carter's religious

20 observances, beliefs, or practices for discipline.

21         Local 556 denies Plaintiff Carter's claims

22 and contends that it had no authority to terminate

23 Plaintiff Carter.

24         It is unlawful for a union to cause or

25 attempt to cause an employer to discriminate against

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 37 of 240   PageID 15865
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2035

 1  an employee because of the employee's sincerely held

 2  religious beliefs, observances, or practices.

 3          To prove unlawful discrimination by

 4  Defendant Local 556, Plaintiff Carter must prove by

 5  a preponderance of the evidence:

 6          One, that former Local 556 president

 7  Audrey Stone was acting in her official Local 556

 8  capacity when she reported Carter for discipline to

 9  Defendant Southwest;

10          Two, that Local 556 caused or attempted to

11  cause discrimination against Plaintiff Carter by

12  Defendant Southwest;

13          And, three, that Local 556's decision to

14  report Carter to Southwest was motivated by Carter's

15  sincerely held religious observances, beliefs, or

16  practices.

17          Plaintiff Carter does not have to prove

18  that unlawful discrimination was the only reason

19  Defendant Local 556 reported her to Defendant

20  Southwest.

21          If you find that the reason Defendant

22  Local 556 has given for reporting Plaintiff Carter

23  to Defendant Southwest is unworthy of belief, you

24  may, but are not required to, infer that Defendant

25  Local 556 was motivated by Plaintiff Carter's

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1   religious observances, beliefs, or practices.

 2              Subpart two.  Plaintiff Carter's religious

 3   discrimination claim against Defendant Local 556.

 4              Plaintiff Carter claims that Defendant

 5   Local 556 discriminated against Plaintiff Carter

 6   because of her sincerely held religious observances,

 7   practices or beliefs.

 8              The Union, Local 556, denies that Audrey

 9   Stone was acting in her official capacity when she

10   reported Plaintiff Carter to Defendant Southwest, or

11   that her reporting was motivated by Plaintiff

12   Carter's religious observances, practices, or

13   beliefs.

14              It is unlawful for a union to discriminate

15   against an employee because of her sincerely held

16   religious observances, practices, or beliefs.

17              To prove unlawful discrimination by

18   Defendant Local 556, Plaintiff Carter must prove by

19   a preponderance of the evidence:

20              One, that Defendant Local 556 treated

21   Plaintiff Carter less favorably than other

22   employees;

23              And two, that such treatment was motivated

24   by Plaintiff Carter's sincerely held religious

25   beliefs, observances, or practices.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 39 of 240   PageID 15867
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2037

 1              Subpart 3.  Plaintiff Carter's failure to

 2   accommodate claim against Defendant Southwest.

 3              Plaintiff Carter claims that Defendant

 4   Southwest failed to accommodate Plaintiff Carter's

 5   sincerely held religious beliefs, observances, or

 6   practices.

 7              Defendant Southwest denies the claim and

 8   claims that it had no obligation to accommodate

 9   Plaintiff Carter, did not know or have reason to

10   suspect that Plaintiff Carter needed an

11   accommodation, and that Plaintiff Carter's religious

12   belief did not conflict with a requirement of her

13   employment.

14              It is unlawful for an employer to refuse

15   to accommodate any aspect of an employee's religious

16   observances, practices, or beliefs.

17              An accommodation means allowing the

18   employee to engage in a religious practice or

19   observance despite the employer's normal rules to

20   the contrary.

21              Discharging an employee because of her

22   religious observances, practices, or beliefs is

23   synonymous with refusing to accommodate the

24   employee's religious observances, practices, or

25   beliefs.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 40 of 240   PageID 15868
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2038

1            To prove that Defendant Southwest

2 unlawfully failed to accommodate her sincerely held

3 religious beliefs, practices, or observances,

4 Plaintiff Carter must prove by a preponderance of

5 the evidence:

6            One, that Plaintiff Carter's sincerely

7 held religious beliefs, observances, or practices

8 conflicted with a job requirement;

9            Two, that Plaintiff Carter was discharged

10 for failure to comply with a conflicting job

11 requirement;

12            And three, that Defendant Southwest

13 discharged Carter with a motive of avoiding the need

14 for accommodating a religious belief, observance, or

15 practice.

16            If you find that Plaintiff Carter has

17 established each of these elements, then to avoid

18 liability, Defendant Southwest must establish by a

19 preponderance of the evidence that it did not

20 accommodate Plaintiff Carter because any

21 accommodation would have imposed an undue hardship

22 on Defendant Southwest.

23            Undue hardship cannot be proven by merely

24 proving any cost or any disruption or inconvenience

25 to the business.  A greater degree of hardship is

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 41 of 240   PageID 15869
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2039

1    required to be shown.

2              An undue hardship means more than a

3    de minimus cost on the conduct of the employer's

4    business either in terms of financial costs or

5    disruption of the business.

6              Subpart 4.  Plaintiff's failure to

7    accommodate claim against Defendant Local 556.

8              Plaintiff Carter claims that Defendant

9    Local 556 failed to accommodate her sincerely held

10   religious observances, beliefs, or practices by

11   reporting Plaintiff Carter to Defendant Southwest

12   instead of accommodating them.

13             The Union, Local 556, denies the claim and

14   claims that Plaintiff Carter never sought a

15   religious accommodation from Defendant Local 556,

16   and that Defendant Local 556 did not exercise

17   control over the terms and conditions of Plaintiff

18   Carter's employment.

19             It is unlawful for a union to fail to

20   accommodate any aspect of an employee's sincerely

21   held religious observances, beliefs, or practices.

22             An accommodation means allowing the

23   employee to engage in her religious practice or

24   observance despite the Union's normal rules to the

25   contrary.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 42 of 240   PageID 15870
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                        Page 2040

1              It is unlawful for a union to cause or

2    attempt to cause an employer to discriminate against

3    an employee because of the employee's sincerely held

4    religious beliefs, observances, or practices.

5              To prove that Defendant Local 556

6    unlawfully failed to accommodate her sincerely held

7    religious beliefs, practices, or observances,

8    Plaintiff Carter must prove by a preponderance of

9    the evidence that former Local 556 president Audrey

10   Stone was acting in her official capacity when she

11   reported Plaintiff Carter to Defendant Southwest;

12             Two, that Defendant Local 556 caused or

13   attempted to cause Plaintiff Carter's discharge by

14   Defendant Southwest;

15             And three, that Defendant Local 556 caused

16   or attempted to cause Plaintiff Carter's discharge

17   with a motive of avoiding the need for accommodating

18   a religious belief, observance, or practice.

19             Damages.

20             If you find that Defendants Southwest

21   and/or Local 556 violated the Railway Labor Act,

22   then you must determine whether either or both

23   defendants caused Plaintiff Carter damages.

24             If so, you must determine the amount of

25   those damages attributable to the liable party.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2041

1           You should not conclude from the fact that

2    I'm instructing you on damages that I may have an

3    opinion as whether Plaintiff Carter has proved

4    liability.

5           Plaintiff Carter must prove her damages by

6    a preponderance of the evidence.  Your award must be

7    based on evidence and not on speculation or

8    guesswork.

9           On the other hand, Plaintiff Carter need

10   not prove the amount of her losses with mathematical

11   precision, but only with as much definitiveness and

12   accuracy as the circumstances permit.

13          You should consider the following elements

14   of actual damages and no others.

15          One, the amount of back pay and benefits

16   Plaintiff Carter would have earned in her employment

17   with Defendant Southwest if she had not been

18   terminated from her employment with Southwest from

19   March 14th, 2017, to the date of your verdict, minus

20   the amount of earnings and benefits that Plaintiff

21   Carter received from employment during that time.

22          Two, the amount of other damages sustained

23   by Plaintiff Carter, such as emotional distress,

24   pain and suffering, inconvenience, mental anguish,

25   and loss of enjoyment of life.

 1              However, you may not consider awarding

 2   Plaintiff Carter emotional distress or pain and

 3   suffering losses in relation to neither her Railway

 4   Labor Act retaliation claim against Defendant

 5   Southwest and Local 556, nor her duty of fair

 6   representation claim against Defendant Local 556.

 7              Actual damages.

 8              There is no exact standard for determining

 9   actual damages.  You are to determine an amount that

10   will fairly compensate Plaintiff Carter for the harm

11   she has sustained.  Do not include as actual damages

12   interest on wages or benefits.

13              Back pay.

14              Back pay includes the amounts in the

15   evidence Plaintiff Carter would have earned had she

16   remained an employee of Defendant Southwest.

17              These amounts include wages or salary, and

18   such benefits as health insurance, seniority

19   benefits, 401(k) and other retirement benefits,

20   vacation pay, ratification bonuses, profit sharing,

21   tax relief shared with employees.

22              You must subtract the amounts of earnings

23   and benefits that Southwest proves by a

24   preponderance of the evidence Plaintiff Carter

25   received during the period in question.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 45 of 240   PageID 15873
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2043

 1              Punitive damages.

 2              In addition to actual damages, you may

 3    consider whether to award punitive damages with

 4    respect to Plaintiff Carter's Title VII claims.

 5              Punitive damages are damages designed to

 6    punish a defendant and to deter similar conduct in

 7    the future.

 8              You may not consider awarding Plaintiff

 9    Carter punitive damages against Defendant Southwest

10    or Local 556 in relation to her claim of retaliation

11    under the Railway Labor Act.

12              You may not consider awarding Plaintiff

13    Carter punitive damages against Local 556 in

14    relation to her claim of violation of the duty of

15    fair representation under the Railway Labor Act.

16              You may award punitive damages if

17    Plaintiff Carter proves by a preponderance of the

18    evidence that:

19              One, the individual who engaged in the

20    discriminatory act or practice was acting in a

21    managerial capacity;

22              Two, he or she engaged in the

23    discriminatory act or practice while acting in the

24    scope of his or her employment;

25              Three, he or she acted with malice or

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 46 of 240   PageID 15874
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                       Vol 7 July 13, 2022                       Page 2044

1  reckless indifference to Plaintiff Carter's

2  federally protected right to be free from

3  discrimination.

4           If Plaintiff Carter has proved these

5  facts, then you may award punitive damages, unless

6  Defendant Southwest or Local 556 proves by a

7  preponderance of the evidence that the act was

8  contrary to its good faith efforts to prevent

9  discrimination in the workplace.

10           In determining whether the decision-maker

11  for Southwest or Local 556 was a supervisor or

12  manager for Defendant Southwest or Local 556, you

13  should consider the type of authority that person

14  had over Plaintiff Carter and the type of authority

15  for employment decisions Defendants Southwest or

16  Local 556 authorized that decision-maker to make.

17           An action is in reckless indifference to

18  Plaintiff Carter's federally protected rights if it

19  was taken in the face of a perceived risk that the

20  conduct would violate federal law.

21           Plaintiff Carter is not required to show

22  egregious or outrageous discrimination to recover

23  punitive damages.

24           Proof that Defendant Southwest or Local

25  556 engaged in intentional discrimination, however,

 1   is not enough in itself to justify an award of

 2   punitive damages.

 3          In determining whether Defendant Southwest

 4   or Local 556 made good faith efforts to prevent

 5   discrimination in the workplace, you may consider

 6   whether Defendants adopted anti-discrimination

 7   policies, whether they educated their employees on

 8   the federal anti-discrimination laws, how or whether

 9   they responded to Plaintiff Carter's complaint of

10   discrimination.

11          With respect to Defendant Local 556, you

12   may consider how Local 556 responded to other

13   complaints of discrimination.

14          If you find that Defendants Southwest or

15   Local 556 acted with malice or reckless indifference

16   to Plaintiff Carter's rights and did not make a good

17   faith effort to comply with the law, then in

18   addition to any other damages you may find Plaintiff

19   Carter is entitled to receive, you may, but are not

20   required to, award Plaintiff Carter any amount as

21   punitive damages for the purposes of punishing

22   Defendants Southwest and Local 556 for engaging in

23   such wrongful conduct in deterring Defendant

24   Southwest or Local 556 and others from engaging in

25   such conduct in the future.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 48 of 240   PageID 15876
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2046

1           You should presume that Plaintiff Carter

2   has been made whole for her injuries by any actual

3   damages you have awarded.

4           If you decide to award punitive damages,

5   you should consider the following in deciding the

6   amount:

7           One, how reprehensible Defendant

8   Southwest's or Local 556's conduct was;

9           You may consider whether the harm

10  Plaintiff Carter suffered was physical or economic

11  or both;

12          Whether there was violence, intentional

13  malice, or reckless disregard for human health or

14  safety;

15          Whether Defendant Southwest and/or Local

16  556's conduct that harmed Plaintiff Carter also

17  posed a risk of harm to others;

18          Whether there was any repetition of the

19  wrongful conduct where there was a past conduct of

20  the same sort that harmed Plaintiff Carter.

21          Two, how much harm Defendants Southwest

22  and/or Local 556's wrongful conduct caused Plaintiff

23  Carter.

24          Three, what amount of punitive damages in

25  addition to the other damages already awarded is

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 49 of 240   PageID 15877
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2047

 1   needed, considering Defendant Southwest's and/or

 2   Local 556's financial condition, to punish Defendant

 3   Southwest and/or Local 556 for its conduct toward

 4   Plaintiff Carter and to deter Defendant Southwest

 5   and/or Local 556 and others from similar wrongful

 6   conduct in the future.

 7         The amount of any punitive damages awarded

 8   should bear a reasonable relationship to the harm

 9   caused Plaintiff Carter.

10         You may assess punitive damages against

11   any or all of the defendants, or you may refuse to

12   impose punitive damages.

13         If punitive damages are imposed on more

14   than one defendant, the amount for each may be the

15   same or they may be different.

16         Front pay.

17         An award of future damages necessarily

18   requires that payment be made now for a loss that

19   the plaintiff will not actually suffer until some

20   future date.

21         If you should find that Plaintiff Carter

22   is entitled to future earnings, then you must

23   determine the present worth in dollars of such

24   earnings.

25         You must consider two particular factors.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 50 of 240   PageID 15878
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2048

1          One, you should reduce any award by the

2    amount of the expenses that the plaintiff should

3    have incurred in making those earnings.

4          Two, you should reduce any award to the

5    present value by considering the interest that the

6    plaintiff could earn on the amount of the award if

7    she had made a relatively risk-free investment.

8          The reason why you must make this

9    reduction is because an award of an amount

10   representing future loss of earnings is more

11   valuable to the plaintiff if she receives it today

12   than if she received it the future when she would

13   otherwise have earned it.

14         It is more valuable because the plaintiff

15   can earn interest on it for the period of time

16   between the date of the award and the date she would

17   have earned the money.  Thus, you should adjust the

18   amount of any award for future loss of earnings by

19   the amount of interest that the plaintiff can earn

20   on that amount in the future.

21         Any award you may make to Plaintiff Carter

22   is not subject to income tax.  Neither the state nor

23   the federal government will take it.  Therefore, you

24   should determine the amount that Plaintiff Carter is

25   entitled to receive without considering the effect

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2049

1    of taxes upon it.

2            Any determination that you make with

3    respect to this topic, front pay, will not be

4    binding upon me.  Instead, you are acting in an

5    advisory capacity.

6            Nominal damages.

7            Nominal damages are an inconsequential or

8    trifling sum awarded to a plaintiff when a technical

9    violation of her rights has occurred but the

10   plaintiff has suffered no actual loss or injury.

11           If you find from a preponderance of the

12   evidence that Plaintiff Carter sustained a technical

13   violation of the Railway Labor Act, Title VII, or

14   the duty of fair representation, but Plaintiff

15   Carter has suffered no damages as a result of these

16   violations, you may award Plaintiff Carter nominal

17   damages.

18           Mitigation.

19           Defendant Southwest and Local 556 claim

20   that Plaintiff Carter failed to mitigate her

21   damages.  Plaintiff Carter has a duty under the law

22   to mitigate her damages, that is, to exercise

23   reasonable diligence under the circumstances to

24   minimize her damages.

25           To succeed on this defense against

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 52 of 240  PageID 15880
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2050

1   damages, Defendant Southwest and Local 556 must

2   prove by a preponderance of the evidence:

3           One, that there is a -- that there was

4   substantially equivalent employment available;

5           Two, Plaintiff Carter failed to use

6   reasonable diligence in seeking those positions;

7           And three, the amount by which Plaintiff

8   Carter's damages were increased by her failure to

9   take such reasonable actions.

10          Substantially equivalent employment in

11  this context means a job that has virtually

12  identical promotional opportunities, compensation,

13  job responsibilities, working conditions, and status

14  as the job Carter lost.

15          Plaintiff does not have to accept a job

16  that is dissimilar to the one she lost, one that

17  would be a demotion, or one that would be demeaning.

18          The reasonableness of Plaintiff Carter's

19  diligence should be evaluated in light of her

20  individual characteristics and the job market.

21          Duty to deliberate.  Notes.

22          It is now your duty to deliberate and to

23  consult with one another in an effort to reach a

24  verdict.  Each of you must decide the case for

25  yourself, but only after an impartial consideration

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 53 of 240   PageID 15881
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2051

 1  of the evidence with your fellow jurors.

 2          During your deliberations, do not hesitate

 3  to re-examine your own opinions and change your mind

 4  if you are convinced that you are wrong, but do not

 5  give up on your honest beliefs because the other

 6  jurors think differently or just to finish the case.

 7          Remember, at all times, you are the judges

 8  of the facts.

 9          You have been allowed to take notes during

10  this trial.  Any notes that you took during this

11  trial are only aids to your memory.  If your memory

12  differs from your notes, you should rely on your

13  memory and not on your notes.  The notes are not

14  evidence.

15          If you did not take notes, rely on your

16  independent recollection of the evidence.  Do not be

17  unduly influenced by the notes of other jurors.

18          Notes are not entitled to greater weight

19  than the recollection or impression of each juror

20  about the testimony.

21          When you go into the jury room to

22  deliberate, you may take with you a copy of this

23  charge, the exhibits that I have admitted into

24  evidence, and your notes.

25          You must select a jury foreperson to guide

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 54 of 240   PageID 15882
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2052

1   you in your deliberations and to speak for you here

2   in the courtroom.

3           Your verdict must be unanimous.  After you

4   have reached a unanimous verdict, your jury

5   foreperson must fill out the answers to the written

6   questions on the verdict form and sign and date it.

7           After you have concluded your service and

8   I have discharged the jury, you are not required to

9   talk with anyone about the case.

10          If you need to communicate with me during

11  your deliberations, the jury foreperson should write

12  the inquiry and give it to the court security

13  officer.  After consulting with the attorneys, I

14  will respond either in writing or by meeting with

15  you in the courtroom.

16          Keep in mind, however, that you must never

17  disclose to anyone, not even to me, your numerical

18  division on any question on the verdict form.

19          Okay.  This says "You may now proceed to

20  deliberations," but the order I'm going in is I'm

21  going to read the verdict form for you, we will take

22  a break, and then we will do closing arguments.  You

23  are not deliberating just yet.

24          Okay.  Jury questions.  This is page 28.

25          One, questions about liability.

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 55 of 240  PageID 15883
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2053

1                   A, Local 556, liability questions.

2                   Question 1.  Has Plaintiff Carter proved

3     that Audrey Stone was acting in her official

4     capacity as then president of Local 556 when she

5     reported Plaintiff Carter to Defendant Southwest?

6                   Answer yes or no.

7                   Question 2.  Has Plaintiff Carter proved

8     that Defendant Local 556 violated the duty of fair

9     representation owed to Plaintiff Carter?

10                  Question 3.  Has Plaintiff Carter proved

11    that Defendant Local 556 retaliated against

12    Plaintiff Carter for engaging in any activity

13    protected by the Railway Labor Act?

14                  Answer yes or no.

15                  If you answered yes to Question 3, then

16    answer Question 4.  If you have answered no to

17    Question 3, skip to Question 5.

18                  Question 4.  Do you find that Defendant

19    Local 556 has proved that Local 556 would have

20    reported Plaintiff Carter to Defendant Southwest

21    even if Plaintiff Carter had not engaged in activity

22    protected by the Railway Labor Act?

23                  Answer yes or no.

24                  Question 5.  Has Plaintiff Carter proved

25    that Defendant Local 556 unlawfully discriminated

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 56 of 240   PageID 15884
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2054

1  against Plaintiff Carter by causing or attempting to

2  cause her discharge, and that such cause or attempt

3  was motivated by Plaintiff Carter's sincerely held

4  religious observances, beliefs, or practices?

5            Answer yes or no.

6            Question 6.  Has Plaintiff Carter proved

7  that Defendant Local 556 unlawfully discriminated

8  against Plaintiff Carter by treating her less

9  favorably than other employees, and that such

10  treatment was motivated by Plaintiff Carter's

11  sincerely held religious, observances, beliefs, or

12  practices.

13            Answer yes or no.

14            If you answered yes to Question 1, then

15  answer Question 7.  If you answered no to

16  Question 1, skip to Question 8.

17            Question 7.  Has Plaintiff Carter proved

18  that Defendant Local 556 unlawfully failed to

19  accommodate Plaintiff Carter's sincerely held

20  religious beliefs, practices, or observances?

21            Answer yes or no.

22            Part B.  Southwest liability questions.

23            Question 8.  Has Plaintiff Carter proved

24  that Defendant Southwest retaliated against

25  Plaintiff Carter for engaging in activity protected

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 57 of 240   PageID 15885
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2055

1  by the Railway Labor Act?

2          Answer yes or no.

3          If you answered yes to Question 8, then

4  answer Question 9.  If you answered no to

5  Question 8, skip to Question 10.

6          Question 9.  Do you find that Defendant

7  Southwest has proved that Southwest would have

8  discharged Plaintiff Carter even if she had not

9  engaged in activity protected by the Railway Labor

10  Act?

11          Answer yes or no.

12          Question 10.  Has Plaintiff Carter proved

13  that Defendant Southwest unlawfully discriminated

14  against Plaintiff Carter by discharging her, and

15  that such discharge was motivated by Plaintiff

16  Carter's sincerely held religious observances,

17  beliefs, or practices?

18          Answer yes or no.

19          Question 11.  Has Plaintiff Carter proved

20  that Defendant Southwest failed to accommodate

21  Plaintiff Carter's sincerely held religious beliefs,

22  practices, or observances?

23          Answer yes or no.

24          I'm going to tell you an aside right

25  quick.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 58 of 240   PageID 15886
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                 Vol 7 July 13, 2022                    Page 2056

 1            There are those words "religious beliefs,
 2   practices, or observances."  I put them in a
 3   different order, those three words, "beliefs,
 4   practices, observances," in Question 11 than
 5   Question 10.  I probably did that throughout the
 6   charge.
 7            They mean the same thing in any place no
 8   matter what the order of those three words is.  So
 9   sorry for any confusion I may have caused.  I just
10   want to clear that up.  Those three words mean the
11   same thing every time no matter what order they are
12   in.
13            Okay.  If you answered yes to Question 11,
14   then answer Question 12.  If you answered no to
15   Question 11, skip to Question 13.
16            Question 12.  Do you find that Defendant
17   Southwest has proved that any and all accommodations
18   in this case would have been imposed -- would have
19   imposed an undue hardship on Defendant Southwest?
20            Answer yes or no.
21            Part two.  Questions on damages.
22            The jury should award whatever recoverable
23   damages it finds that Plaintiff Carter proved each
24   defendant caused.  Should the jury award damages
25   against both defendants, the Court will ensure that

1  it avoids giving Plaintiff Carter more than a full

2  recovery of the damages the jury finds that she

3  proved.

4           Part A.  Local 556 damages questions.

5           If you answered yes to Question 2, then

6  answer Question 13.  If you answered yes to

7  Question 3 and no to Question 4, then answer

8  Question 13.  If you answered yes to Question 5,

9  then answer Question 13.  If you answered yes to

10  Question 6, then answer Question 13.  If you

11  answered yes to Question 7, then answer Question 13.

12           Otherwise, skip to Question 14.

13           Question 13.  Lost wages, damages against

14  Local 556.

15           What sum of money, if paid now in cash,

16  would fairly and reasonably compensate Plaintiff

17  Carter for lost wages and benefits, if any,

18  Defendant Local 556 caused Plaintiff Carter?

19           Answer in dollars and cents for the

20  following items and none other:

21           One, lost wages sustained between

22  March 14, 2017, and the date of the jury's decision.

23           Answer.

24           Two, lost benefits sustained between

25  March 14, 2017, and the date of the jury's decision.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 60 of 240   PageID 15888
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2058

```
 1              Answer in dollars and cents.
 2              If you answered yes to Question 5, then
 3    answer Question 14.  If you answered yes to Question
 4    6, then answer Question 14.  If you answered yes to
 5    Question 7, then answer Question 14.
 6              Otherwise, skip to Question 15.
 7              Question 14.  Non-economic damages against
 8    Local 556 for Title VII claims.
 9              What sum of money, if paid now in cash,
10    would fairly and reasonably compensate Plaintiff
11    Carter for her emotional distress, pain and
12    suffering, inconvenience, metal anguish, and loss of
13    enjoyment of life Defendant Local 556 caused
14    Plaintiff Carter?
15              Answer in dollars and cents for the
16    following items and none other.
17              One, past pain and suffering,
18    inconvenience, mental anguish, and loss of enjoyment
19    of life.
20              Answer in dollars and cents.
21              Two, future pain and suffering,
22    inconvenience, mental anguish, and loss of enjoyment
23    of life.
24              Answer in dollars and cents.
25              If you answered yes to Question 5, then
```

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 61 of 240  PageID 15889
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2059

1    answer Question 15.  If you answered yes to

2    Question 6, then answer Question 15.  If you

3    answered yes to Question 7, then answer Question 15.

4             Otherwise, skip to Question 17.

5             Question 15.  Punitive damages against

6    Local 556 for Title VII claims.

7             Do you find that Plaintiff Carter should

8    be awarded punitive damages against Defendant Local

9    556 for violating Plaintiff Carter's religious

10   rights under Title VII?

11            Answer yes or no.

12            If you answered yes to Question 15, then

13   answer Question 16.  If you answered no to

14   Question 15, skip to Question 17.

15            Question 16.  Punitive damages against

16   Local 556 for Title VII claims.

17            What sum of money should be assessed

18   against Defendant Local 556 as punitive damages

19   against Local 556 for violating Plaintiff Carter's

20   religious rights under Title VII?

21            Answer in dollars and cents.

22            If you answered yes to Question 5, then

23   answer Question 17.  If you answered yes to

24   Question 6, then answer Question 17.  If you

25   answered yes to Question 7, then answer Question 17.

 1              Otherwise, skip to Question 19.

 2              Question 17.  Nominal damages against

 3    Local 556 for Title VII claims.

 4              Do you find that Plaintiff Carter should

 5    be awarded nominal damages against Defendant Local

 6    556 for violating Plaintiff Carter's religious

 7    rights under Title VII?

 8              Answer, yes or no.

 9              If you answered yes to Question 17, then

10    answer Question 18.  If you answered no to

11    Question 17, skip to Question 19.

12              Question 18.  Nominal damages against

13    Local 556 for Title VII claims.  What sum of money

14    should be assessed against Defendant Local 556 as

15    nominal damages against Local 556 for violating

16    Plaintiff Carter's religious rights under Title VII.

17              Answer in dollars and cents.

18              If you answered yes to Question 2, then

19    answer Question 19.  If you answered no to

20    Question 2, skip to Question 21.

21              Question 19.  Nominal damages against

22    Local 556 for duty of fair representation claim.

23              Do you find that Plaintiff Carter should

24    be awarded nominal damages against Defendant Local

25    556 for violating its duty of fair representation

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 63 of 240   PageID 15891
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2061

1  owed to Plaintiff Carter?

2              Answer yes or no.

3              If you answered yes to Question 19, then

4  answer Question 20.  If you answered no to

5  Question 19, skip to Question 21.

6              Question 20.  Nominal damages against

7  Local 556 for duty of fair representation claim.

8              What sum of money should be assessed

9  against Defendant Local 556 as nominal damages

10 against Local 556 for violating its duty of fair

11 representation owed to Plaintiff Carter.

12             Answer in dollars and cents.

13             If you answered yes to Question 3 and no

14 to Question 4, then answer Question 21.  Otherwise,

15 skip to Question 23.

16             Nominal damages against Local 556 for

17 Railway Labor Act retaliation claim.

18             Do you find that Plaintiff Carter should

19 be awarded nominal damages against Defendant Local

20 556 for retaliating against Plaintiff Carter for

21 exercising her rights under the Railway Labor Act?

22             Answer yes or no.

23             If you answered yes to Question 21, then

24 answer Question 22.  If you answered no to

25 Question 21, skip to Question 23.

1              Question 22.  Nominal damages against

2  Local 556 for the Railway Labor Act retaliation

3  claim.

4              What sum of money should be assessed

5  against Defendant Local 556 as nominal damages

6  against Local 55 of retaliating against Plaintiff

7  Carter for exercising her rights under the Railway

8  Labor Act?

9              Answer in dollars and cents.

10              If you answered yes to Question 2, then

11  answer Question 23.  If you answered yes to

12  Question 3 and no to Question 4, then answer

13  Question 23.  If you answered yes to Question 5,

14  then answer Question 23.  If you answered yes to

15  Question 6, then answer Question 23.  If you

16  answered yes to Question 7, then answer Question 23.

17              Otherwise, skip to Question 24.

18              This is a question for the Court on which

19  the Court seeks the jury's advice.

20              Question 23.  Front pay damages against

21  Local 556.

22              What sum of money, if paid now in cash,

23  would fairly and reasonably compensate Plaintiff

24  Carter for future lost wages, if any, Defendant

25  Local 556 caused Plaintiff Carter?

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 65 of 240   PageID 15893
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2063

1              Answer in dollars and cents.

2              Now, Part B, Southwest damages questions.

3              If you answered yes to Question 8 and no

4    to Question 9, then answer Question 24.  If you

5    answered yes to Question 10, then answer

6    Question 24.  If you answered yes to Question 11 and

7    no to Question 12, then answer Question 24.

8              Otherwise, skip to Question 25.

9              Question 24.  Lost wages, damages against

10   Southwest.

11             What sum of money, if paid now in cash,

12   would fairly and reasonably compensate Plaintiff

13   Carter for lost wages and benefits, if any,

14   Defendant Southwest caused Plaintiff Carter?

15             Answer in dollars and cents for the

16   following items and none other.

17             One, lost wages sustained between

18   March 14, 2017, and the date of the jury's decision.

19             Answer in dollars and cents.

20             Two, lost benefits sustained between

21   March 14, 2017, and the date of the jury's decision.

22             Answer in dollars and cents.

23             If you answered yes to Question 10, then

24   answer Question 25.  If you answered yes to

25   Question 11 and no to Question 12, then answer

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 66 of 240   PageID 15894
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2064

 1  Question 25.

 2              Otherwise, skip to Question 26.

 3              Question 25.  Non-economic damages against

 4  Southwest for Title VII claims.

 5              What sum of money, if paid now in cash,

 6  would fairly and reasonably compensate Plaintiff

 7  Carter for her emotional distress, pain and

 8  suffering, inconvenience, mental anguish, and loss

 9  of enjoyment of life Defendant Southwest caused

10  Plaintiff Carter?

11              Answer in dollars and cents for the

12  following items and none other.

13              One, past pain and suffering,

14  inconvenience, mental anguish, and loss of enjoyment

15  of life.

16              Answer in dollars and cents.

17              Two, future pain and suffering,

18  inconvenience, mental anguish, and loss of enjoyment

19  of life.

20              If you answered yes to Question 10, then

21  answer Question 26.  If you answered yes to

22  Question 11 and no to Question 12, then answer

23  Question 26.

24              Otherwise, skip to Question 28.

25              Question 26.  Punitive damages against

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 67 of 240   PageID 15895
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2065

 1  Southwest for Title VII claims.

 2          Do you find that Plaintiff Carter should

 3  be awarded punitive damages against Defendant

 4  Southwest for violating Plaintiff Carter's religious

 5  rights under Title VII?

 6          Answer yes or no.

 7          If you answered yes to Question 26, then

 8  answer Question 27.  If you answered no to

 9  Question 26, skip to Question 28.

10          Question 27.  Punitive damages against

11  Southwest for Title VII claims.

12          What sum of money should be assessed

13  against Defendant Southwest as punitive damages

14  against Southwest for violating Plaintiff Carter's

15  religious rights under Title VII?

16          Answer in dollars and cents.

17          If you answered yes to Question 10, then

18  answer Question 28.  If you answered yes to

19  Question 11 and no to Question 12, then answer

20  Question 28.

21          Otherwise, skip to Question 30.

22          Question 28.  Nominal damages against

23  Southwest for Title VII claims.

24          Do you find that Plaintiff Carter should

25  be awarded nominal damages against Defendant

1   Southwest for violating Plaintiff Carter's religious

2   rights under Title VII?

3              Answer yes or no.

4              If you answered yes to Question 28, then

5   answer Question 29.  If you answered no to

6   Question 28, skip to Question 30.

7              Question 29.  Nominal damages against

8   Southwest for Title VII claims.

9              What sum of money should be assessed

10  against Defendant Southwest as nominal damages

11  against Southwest for violating Plaintiff Carter's

12  religious rights under Title VII?

13             Answer in dollars and cents.

14             If you answered yes to Question 8 and no

15  to Question 9, then answer Question 30.

16             Otherwise, skip to Question 32.

17             Question 30.  Do you find that Plaintiff

18  Carter should be awarded nominal damages against

19  Defendant Southwest for retaliating against

20  Plaintiff Carter for engaging in activity protected

21  by the Railway Labor Act?

22             If you answered yes to Question 30, then

23  answer Question 31.  If you answered no to

24  Question 30, skip to Question 32.

25             Question, 31.  What sum of money should be

1 assessed against Defendant Southwest as nominal

2 damages against Southwest engaging in activity

3 protected by the Railway Labor Act?

4           Answer in dollars and cents.

5           If you answered yes to Question 8 and no

6 to Question 9, then answer Question 32.  If you

7 answered yes to Question 10, then answer

8 Question 32.  If you answered yes to Question 11 and

9 no to Question 12, then answer Question 32.

10           Otherwise, skip to Question 33.

11           This is a question for the Court on which

12 the Court seeks the jury's advice.

13           Question 33 -- 32, sorry.  Front pay

14 damages against Southwest.

15           When sum of money, if paid now in cash,

16 would fairly and reasonably compensate Plaintiff

17 Carter for future lost wages, if any, Defendant

18 Southwest caused Plaintiff Carter?

19           Answer in dollars and cents.

20           Question 33.  Mitigation questions.

21           Do you find that Plaintiff Carter failed

22 to reduce her damages through the exercise of

23 reasonable diligence in seeking, obtaining, and

24 maintaining substantially equivalent employment

25 after the date of her employment termination by

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 70 of 240   PageID 15898
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2068

1  Defendant Southwest?

2           Answer yes or no.

3           Question 34.  How much would Plaintiff

4  Carter have earned had she exercised reasonable

5  diligence under the circumstances to minimize her

6  damages?

7           Answer in dollars and cents, if any.

8           And then the last page is where the jury

9  foreperson will sign and date the verdict form.

10          Y'all have earned a break.  I'm going to

11  give you one before we launch into closing.  So

12  let's do to a 10-minute break.  Let's come back at

13  10:15.

14          Because you are not deliberating yet, you

15  still can only talk to your fellow jurors, just not

16  about the case.  Don't do any research.

17          We will see you in 10 minutes at 10:15.

18          (Recess.)

19          (The jurors exited the courtroom.)

20          THE COURT:  Anything before we take our

21  break?

22          MR. McKEEBY:  I did think of one thing.

23          What are the protocols in terms of how

24  long into the evening the jury might deliberate?

25          THE COURT:  It's entirely within their

 1   discretion.

 2            So when we finish closing and I send them

 3   back, then I tell them that we now operate on their

 4   schedule instead of them on ours.

 5            But I will ask them to, after they pick a

 6   foreperson, pick a schedule, at a minimum, an end

 7   time today, so that we can know to operate on their

 8   schedule.

 9            I have never seen a jury pick oddball

10   hours.  I have seen them truncate certain parts of

11   the day when someone had a scheduling conflict and

12   deliberations went long, but I haven't seen juries

13   go into the night, for instance.  That might only

14   happen if it's like tonight and they are close.

15   That's not a normal occurrence.

16            So I will ask them to pick a foreperson,

17   pick a schedule, at a minimum, an end time today,

18   and then we will send them on.

19            I will only tell them about Judge Kinkeade

20   stepping in for deliberations when I tell them those

21   instructions at the end.  I don't want them thinking

22   about that.  I want them thinking about the case, if

23   that makes sense.  So I will tell them those three

24   things at the end.

25            Any other questions?

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 72 of 240   PageID 15900
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2070

 1                Okay.  See y'all at 10:15.

 2                (Recess.)

 3                THE COURT SECURITY OFFICER:  All rise.

 4                THE COURT:  Mr. Pryor, are you ready?

 5                MR. PRYOR:  Yes, your Honor.

 6                THE COURT:  Everyone else?  Anything else?

 7                Okay.  Let's bring them in.

 8                MR. PRYOR:  What if I said no?

 9                THE COURT:  You better be, was going to be

10    my response.

11                MR. PRYOR:  I don't think that was an

12    optional question.

13                THE COURT:  I'm trying to be nice.

14                MR. PRYOR:  You are.  I appreciate it.

15                THE COURT:  Y'all have earned niceness at

16    this point from me.

17                (The jurors entered the courtroom.)

18                THE COURT:  Okay.  You can be seated.

19                So for closing, the order of it goes, we

20    are doing Carter, Southwest, Union, and then the

21    plaintiff can always save about up to 10 minutes for

22    the final word.  We call it rebuttal.

23                So we are going to go in that order.  We

24    will break for lunch not in the middle of someone's

25    closing, so we will try to be flexible on timing for

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 73 of 240   PageID 15901
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2071

 1   a lunch break.  We may have some of that closing

 2   happen after lunch, and then early afternoon y'all

 3   will get the case.

 4            So with that, Mr. Pryor, you can close on

 5   behalf of Carter.

 6            MR. PRYOR:  Thank you, your Honor.

 7            Based on the jury instructions that the

 8   judge just read to you, if you believe Charlene

 9   Carter sent the two Facebook message posts to

10   Ms. Stone as union president to complain about the

11   Women's March, if she did that, and the Union

12   president then reports her to Southwest Airlines,

13   that violates the Railway Labor Act.  That violates

14   her rights regarding her union activity.

15            Their defense is, well, that was just

16   really offensive.  That video was just too

17   offensive.

18            We're going to talk about the jury

19   instructions a little bit later, but I want to talk

20   about one of them right now on page 13.

21            And it says, "In regard to that union

22   activity, activity that is intemperate, abusive,

23   insulting or hyperbolic" -- I don't know if I'm

24   pronouncing that right -- "is protected activity."

25            Abusive.  Abusive, according to Webster,

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 74 of 240   PageID 15902
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2072

 1   is extremely offensive.  And so the fact that that

 2   video, someone says they thought it was extremely

 3   offensive, that's protected speech and it should be.

 4               Robust speech is protected under the RLA.

 5               The same in regard to Southwest Airlines.

 6   Southwest Airlines was told this was union activity,

 7   and when Southwest Airlines fires her for that union

 8   activity, that violates her RLA rights.

 9               And it's the same thing.  Their policy

10   doesn't overcome that law.  That same robust speech

11   is protected.

12               I didn't ask questions of the Southwest

13   witnesses that got up on the stand and said, Yeah,

14   that was very offensive.  Mr. Sims said, Very

15   impactful.  Kind of the point.

16               But the fact that they were offended

17   doesn't take it out of protected speech.

18               I recall in voir dire asking about how you

19   felt about speech, and are you an 8, 9 or 10?  And I

20   think you all were.  And we asked you to follow the

21   judge's instruction, follow that law.  That's a

22   clear violation of her rights under the RLA.

23               Likewise, whenever Audrey Stone, president

24   of the Union, sent her complaint to Southwest

25   Airlines, she was complaining, in part, about

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 75 of 240   PageID 15903
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2073

 1  Ms. Carter's exercise of her religious beliefs.  She

 2  shouldn't be talking to me about religion, she

 3  didn't know what my religion is.  She shouldn't be

 4  sending this to me.

 5           That also is protected speech.  She

 6  acknowledged that one of the reasons she was

 7  reporting her was for exercising her religious

 8  beliefs.  So they violated what is called Title VII

 9  in your jury instructions.

10           The same way with Southwest Airlines.

11           So Southwest Airlines is told, I put this

12  post on my Facebook because of my religious beliefs.

13  I want to tell as many people as I can how I feel

14  about abortion, that it is killing a life, it is

15  killing a baby.  And she told them, I'm doing that

16  because of my Christian beliefs.

17           And knowing that, they said, Okay, we are

18  now going to fire you for that.

19           Now, they will say, But we didn't care

20  that she was doing it because she was a Christian.

21  That wasn't why we were doing it.

22           No, you were told, I posted that because

23  of my religious beliefs, and they fired her for

24  exercising that religious belief.  It's their

25  actions that violate the statute, not what they are

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 76 of 240   PageID 15904
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022                          Page 2074

 1    thinking in their minds.

 2              And they will tell you, well, it was --

 3    there was a nexus.  And you will be able to look at

 4    their policy.  You will be able to decide if you buy

 5    the nexus.

 6              Their policy says it has to be so related

 7    to Southwest Airlines that somebody is going to get

 8    confused and think you are speaking for Southwest

 9    Airlines.  We know that's not the case from a post

10    from five years ago.

11              So we believe that we presented you with a

12    case to demonstrate that Ms. Carter's union activity

13    rights were violated.  She was fired because of it

14    as well as her religious freedom rights under Title

15    VII.

16              I want to talk to you about the evidence,

17    and then I'll talk to you about the jury

18    instructions.  I'm going to go through the evidence.

19              I appreciated that so many of you took

20    notes.  And it is very helpful, there are a lot of

21    exhibits here, and we hope to get you a hard copy as

22    well as the flash drive.  But I want to mention some

23    exhibits to remind you of them, tell you the exhibit

24    numbers in case you want to look at them.

25              Going way back to the beginning of trial,

 1  we looked at Exhibit 6, the Collective Bargaining

 2  Agreement, and I showed it to the Union president

 3  that negotiated the contract.  And it said, All

 4  employees shall be free to engage in lawful union

 5  activities or refrain from such activities.

 6          No one is claiming anything Ms. Carter did

 7  was unlawful.  So she engaged in lawful union

 8  activity.

 9          And then the agreement in Article III goes

10  on to say that employees covered by this agreement

11  shall be governed by all company rules which are not

12  in conflict with the terms and conditions of this

13  agreement.

14          And we just read that the agreement says

15  you can't interfere with lawful union activity.

16          And so the Collective Bargaining Agreement

17  entered into by Southwest and the Union says she's

18  protected.

19          And, in fact, I asked Ms. Stone about it,

20  one of the first questions when she was on the

21  stand.

22          "So if an employee is engaged in lawful

23  union activity, Southwest policies don't apply?

24  That is your understanding, true?

25          "Yes."

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 78 of 240   PageID 15906
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2076

```
1              And yet she reports her.
2              I want to look at some emails in terms of
3    how Ms. Carter was treated.
4              You may recall from the judge reading
5    it -- I feel sorry for the judge having to read it
6    and you guys having to listen -- but the words in
7    there, it is important for you guys to be familiar
8    with it.
9              But it talks about that Ms. Carter has to
10   be treated equally and fairly as every other union
11   member, whether she's a member or not.  It covers
12   objectors, it covers any employee.
13             And if you look at Exhibit 24, I think it
14   is, yes, Exhibit 24, this is the email where
15   Ms. Carter -- this was back in 2013, I think.  Let's
16   see.  No, 2014.
17             So if you go to the beginning of
18   Exhibit 24, Exhibit 24 is where Ms. Carter finds
19   out, you know what, that COPE money I have been
20   paying, I just found out that's for political things
21   that I don't agree with.
22             And she had every right, Ms. Stone
23   acknowledged, she had every right to say, Don't use
24   my money for that.  Quit doing that.
25             And instead what you see internally as to
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 79 of 240   PageID 15907
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2077

1  how they view and treat people that disagree with

2  them.

3           If you will go on up.

4           And it says, "Ha, she's been supporting

5  the things she despises this entire time.  This just

6  made my morning."

7           And Audrey Stone, the president, is on

8  there.

9           Go to the first page.

10          "I wish you could give her a list of all

11  of the campaigns that she's donated to in the last

12  17 years.  Her head would explode.

13          So they've improperly taken money from her

14  for 17 years, and they are making fun of her.

15          Now, let's look at Exhibit 27.

16          So the reason I'm going through this is to

17  show you how the Union, their job, their obligation

18  is to treat all of their union members equally and

19  fairly, and you know that they don't.

20          Exhibit 27, if you go to the beginning of

21  this one -- you don't even have to do that.  I have

22  got limited time.  But if you read Exhibit 27 --

23          Actually, do go to the previous page.

24          Exhibit 27 is the -- an officer of the

25  Union, Brett Nevarez, is talking about getting rid

 1  of Mike Casper, who is -- I don't remember if

 2  Mr. Casper at this point was an objector or if he

 3  just didn't agree with union membership.

 4          But he did something, and they say, "It is

 5  leg-breaking time for Casper the Ghost."

 6          And if you go on up, of course, Rocky

 7  Mountain we come to learn is Mike Hafner, an

 8  executive at Southwest Airlines, who is involved in

 9  this.  And he goes, "Yeah.  He's such an ass."

10          And then if you go on up, you'll see that

11  Audrey Stone is on these emails.

12          And she's president of the Union -- she

13  was in the other one, too, of course -- and not one

14  time, not one email -- we have looked at a bunch,

15  and there are more to come, and I won't have time to

16  do them all, you will be happy to know -- but not

17  one time, not one time does she say, Hey this is

18  improper.  We are treating these employees

19  differently.  We are going after these people when

20  we shouldn't.  Not one time.

21          Let's look at Exhibit 25.

22          Exhibit 25 is an email regarding

23  Ms. Carter.  If we go to the first page -- or the

24  second page, you will see that someone in the Union,

25  I can't remember which one, monitoring what these

 1    objectors are doing has gone on to Facebook or

 2    somewhere and found a post of Ms. Carter.

 3            And Ms. Carter, among other things, is

 4    saying, You know what, I am so sick of the

 5    corruption in this union, and I'm a non-member

 6    objector, but I think it's time to get rid of TWU.

 7            Her view was decertify this, start a union

 8    that is appropriate.

 9            And so the Union leadership gets this, and

10    you will see on the first page that Brett Nevarez

11    sends this to Audrey Stone.  "Cuyler's favorite is

12    threatening to de-cert now that she's not a member

13    and cannot be charged.  I'm contacting legal counsel

14    and will keep you advised."

15            So this goes to the president.

16            She says, No, you can't do that.  I

17    understand she's an objector, but you can't take

18    action against her.

19            They treat her differently from the start.

20            Exhibit 141.

21            So in opening, I told you that you are

22    going to see communications between the Union and

23    senior executives of Southwest Airlines talking

24    about targeting union members that the Union

25    leadership doesn't like, including targeting a

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 82 of 240   PageID 15910
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2080

 1   potential African-American leader because she's
 2   African-American.
 3            Now, you had to think, come on.  That's
 4   not true.  That didn't happen.  And you know it did.
 5            Mr. Talburt is communicating with
 6   Ms. Lacore, who you know is senior at Southwest
 7   Airlines.  And they are talking about Casper as
 8   being a tumor, that Ms. Corliss particularly is
 9   someone we have not seen and is incredibly
10   dangerous.  "The attitude she spawns as Northwest
11   Airlines in the '80s.  I'm all about targeted
12   assassinations.  I'm sure her dreadful work history
13   there could be opportunity.  She will play very well
14   to the heavy inner-city minority" --
15            I mean, I can go on.  But this shows the
16   Union leadership, not just among the Union
17   leadership, but with leadership at Southwest
18   Airlines, is plotting against anybody the Union is
19   opposed to.
20            And by the way, his deposition, that was
21   such -- the sound was so terrible, and I'm sorry.
22   But if you could read the words, he talks about they
23   wanted to keep the rest of these communications off
24   record, and he testifies that, in fact, he did have
25   personal communications with Sonya Lacore about

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 83 of 240   PageID 15911
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2081

 1  targeting these people.

 2            Let's look at a couple more in this

 3  regard.  Exhibit 29.

 4            This is the CORE team.

 5            First of all, do you have the CORE team

 6  administrators that show Audrey Stone, TWU?

 7            What this post is, this is just one of

 8  many posts from the CORE team.  The CORE team, if

 9  you recall, is Audrey Stone's team that was trying

10  to help get her elected.

11     It was all supposed to be secret and it all

12  became public, and they had said a lot of really

13  nasty things.

14     But it shows that -- it's the next page?  Maybe

15  it's not this exhibit.  It's not this exhibit.

16  Maybe it's the one keeping up.

17     But it shows that they are going after

18  Mr. Click.  That was someone who had actually been

19  elected to office and kicked out.

20     Let's look at -- it's number 12 on my list,

21  Matt.  I don't know if you know where it is.  But if

22  not, you can move on to 56.

23            It's not that.

24            So let's look at Exhibit 56.

25            And this kind of brings us up to date in

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 84 of 240   PageID 15912
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2082

 1  terms of the Women's March.

 2          And in 2017, Ms. Carter, who had been

 3  complaining to her union every time something came

 4  up she didn't agree with that was serious -- you

 5  will see the communications, it's in the exhibits --

 6  she was engaging in absolutely protected union

 7  activity.

 8          And then she sees -- what have we got

 9  here?

10          MR. HILL:  12.

11          MR. PRYOR:  Okay.  So I guess I mentioned

12  to Matt I wanted -- there is an exhibit that shows

13  Audrey Stone, TWU.

14          But this is Ms. Stone's testimony where

15  she acknowledges that she had a Facebook page that

16  was TWU, and used it for her campaign.

17          She says she changed at some point, she

18  doesn't know when.  Our client testifies it was

19  Audrey Stone, TWU, when she communicated with her.

20  But, frankly, it wouldn't matter.  The communication

21  itself says she's complaining about the Union and it

22  went to her Union president.

23          Thank you for that.

24          Oh, here we go.

25          So in January of 2017, the Union starts

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 85 of 240   PageID 15913
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2083

1  posting these activities from the march.

2           Charlene wasn't aware they were spending

3  money on the march, and she sees this and she is

4  very upset.  She's upset that her union has done

5  this without seeking a vote from the membership

6  before going to a politically charged event,

7  especially one sponsored by Planned Parenthood.

8           Again, I'm not up here trying to say there

9  is anything wrong with my body, my choice, or the

10 other side, for that matter.

11          But to Charlene Carter, this was not what

12 she wanted her union to do, and she wanted to tell

13 her union that.  And she did.

14          And you have seen the posts that she sent,

15 or the Facebook messages, rather, that she sent, and

16 we will talk about those.

17          But at this time, there were other things

18 going on.  Remember the emails that we just looked

19 at where they were talking about using social media

20 policy.  Well, that plan was coming to fruition in

21 February of 2017.

22          And counsel for the Union says, Well, you

23 know, she sent all of these other messages to Audrey

24 Stone and Audrey Stone never complained before.

25          It wouldn't matter.  The message that was

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 86 of 240   PageID 15914
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                   Vol 7 July 13, 2022                   Page 2084

1  sent was still protected.  The fact that she decided

2  to send that one doesn't change the fact that that

3  was a protected communication from Charlene Carter.

4           But we think there was more going on.

5           You can see -- I'm going to just kind of

6  run through these -- the Exhibit 21-Q -- is that

7  21-Q?

8           They are talking about and, in fact,

9  turning in to Southwest Airlines Jeanna Jackson, and

10 who is on there, Audrey Stone.

11          That's the day after the complaint about

12 Ms. Carter.

13          And then if you look at Exhibit 21-R, this

14 is more complaints with Ms. Stone on it about Jeanna

15 Jackson.

16          And 21-T.

17          There is no need to show all of these.

18          21-U.

19          21-V shows complaint after complaint after

20 complaint with the Union president on it in February

21 of 2017 and after regarding Ms. Jackson.

22          Now, there is -- there is more.

23          If you look -- go to Exhibit 69.

24          It is 27 on my list.

25          These are reports, 68, 69, 70.  These

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 87 of 240  PageID 15915
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2085

 1  exhibits, 68, 69, 70, 71, those are emails with

 2  attachments half an inch thick going from this union

 3  member to Southwest Airlines complaining about

 4  social media policy.

 5            But if you look at the email below,

 6  February 9th is when the information came.

 7            You can look at another one.  Let's look

 8  at a different one.  Which one is that?

 9            Go to one of the other ones, 68, 69.

10            So here is one.

11            If you look, this -- February 22nd, 2017.

12  Brian Talburt, her inside person, sends all of these

13  complaints about people to Southwest Airlines.

14            Look when he got them.  Look down below.

15  January 31, 2014.  They have had them all of this

16  time, and they have decided on February 22nd, the

17  very day that the complaint is made against

18  Ms. Carter.  And there is not just one of these,

19  it's 68, 69, 70, 71.  You put them all together, it

20  is quite a thick little dossier.

21            So we find it hard to believe that this

22  was a coincidence.  These posts that have been

23  around for years and have been gathered for years,

24  they all coalesce on February 22, 2017.

25            And then let's look at Exhibit 38.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 88 of 240   PageID 15916
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 7 July 13, 2022                         Page 2086

 1   Exhibit 38 is the read-before-fly.

 2            So the read-before-fly, the name on there

 3   is Sonya Lacore, and it is February 22nd, 2017.

 4            It talks about two policies.  There is

 5   only one of these that does this.  But they have

 6   three where the social policy is mentioned.

 7            By the way, three and four and a half

 8   years.  That's a 3 in 1500 chance that it would just

 9   happen to be on that same day, February 22nd, 2017.

10            But it is about social media and

11   anti-bullying policies, and it's the same Sonya

12   Lacore that was in the communications with Brian

13   Talburt.

14            The same Sonya Lacore -- let's look at

15   Exhibit 68.

16            I can't remember if there was

17   instructions.  I would have to read all of the

18   exhibits.  So I don't know if that's your obligation

19   or not.

20            But in case it's not, I want to mention

21   Exhibit 21-C, Exhibit 21-D.  You'll see these.

22            In 21-D, they are actually talking about

23   should we investigate -- this is Southwest Airlines

24   saying, Should we investigate this person that is

25   trying to topple the Union?

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 89 of 240  PageID 15917
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2087

 1              But if you look at Exhibit 68 -- I think
 2    it is 68.  No, it is 66.  I'm sorry.  It's
 3    Ms. Stone's complaint.  So let's look at that.
 4              And you see the name on there is Sonya
 5    Lacore.  And I think it's pretty clear why she put
 6    Ms. Lacore on there.  And she also included
 7    Ms. Hudson, who was on the negotiating team for the
 8    Collective Bargaining Agreement, as was Audrey
 9    Stone.
10              And in this complaint, in the first
11    paragraph -- this is the next one, but I will
12    mention in the first paragraph, it talks about union
13    activity, and then it talks about religious and
14    political activity.  And she's complaining about
15    those.
16              And by the way, she doesn't complain about
17    the message with the hats, but Southwest got that
18    and included that as part of her complaint.
19              So clearly she is reporting union
20    activity, and she's reporting religious activity,
21    and she's doing it as the president of the Union.
22    She received it as president of the Union.
23              Let's look at 74.
24              Actually, let's go to the attachments.
25    Let's talk about them for a second.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

```
 1              Pages 3 and 4.
 2              Okay.  So this is the message that she's
 3    complaining about.  And it's clear when she says,
 4    "This is what you supported during your paid leave
 5    with others at the Women's March in DC.  You truly
 6    are despicable in so many ways.
 7              "By the way, the recall is going to
 8    happen, and you are limited in the days you will be
 9    living off of all the SWA flight attendants.  Can't
10    wait to see you back on line."
11              Now, she's not sending that to her
12    because, you know, I saw you at the PTA meeting and
13    I didn't like the dress you were wearing.  She
14    didn't send it to her because she's a flight
15    attendant, and said, You passed out too many peanuts
16    on that flight.  She's sending it to her as her
17    union president and complaining about her money
18    being used this way.
19              You don't have to agree with the speech
20    and you can consider it extremely offensive, but it
21    is protected by the law.  And, frankly, it should
22    be, whether you agree with it or not.  And somebody
23    else's speech in the opposite direction should
24    absolutely be protected.
25              By the way, one of the words that the law
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 91 of 240   PageID 15919
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2089

1   says is it can be insulting.  And I guess you

2   consider this a little insulting where it says

3   "you're despicable."  That seems insulting even if

4   she considers it descriptive.

5            But it's protected speech.  You can't take

6   action against someone for that protected speech.

7   And we are asking you to protect that speech.

8            Okay.  Let's look at -- the next one, too.

9   Let's go ahead and do both.

10            This is the same thing.  "And either way,

11   you should not be using our dues to have marched in

12   this despicable show of trash."

13            So once again, it's clearly union-related

14   speech, and it is protected, robust speech like this

15   is protected.

16            Okay.  Exhibit 74.

17            In fact, Mr. Schneider, when he received

18   this complaint for Southwest Airlines, the very next

19   day -- and actually, he may have received it on the

20   23rd -- either the day of or the next day, he sends

21   it to employee relations and says, Let me know your

22   thoughts on protected categories.

23            And there is not one response -- there is

24   a response from employee relations, but they don't

25   address the protected categories.

```
 1              So I asked him:
 2              "QUESTION:  Did they tell you about any
 3   protected categories that you should consider as
 4   part of your investigation prior to making your
 5   termination decision?
 6              "ANSWER:  Not that I recall.
 7              "QUESTION:  You considered no other
 8   protected categories other than genitalia and how it
 9   might violate a sexual harassment policy, that's the
10   only protected category you considered in your
11   investigation prior to making your decision?
12              "ANSWER:  Yes.
13              "QUESTION:  So is it fair to say there was
14   no consideration" -- this is Southwest Airlines --
15   "there was no consideration given to Ms. Carter's
16   religious beliefs in regard to your investigation or
17   termination decision?
18              "ANSWER:  True."
19              They didn't even consider it.
20              Let's look at Exhibit 39.
21              So they interviewed Audrey Stone,
22   Southwest Airlines, and they heard over and over
23   from Ms. Stone that this relates to union activity.
24              Let's look at some of the snippets of it.
25              You may have highlighted some of the
```

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 93 of 240  PageID 15921
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 7 July 13, 2022                  Page 2091

 1  things, Matt.

 2          So she is asked a question about

 3  Ms. Carter, and her answer is:  "Since 2008 when I

 4  was on the board, she has not been union friendly.

 5  She is anti-union."

 6          As a matter of fact, right above it,

 7  highlighted, "She's very anti-union."

 8          So clearly she's talking about this being

 9  part of union activity.

10          Let's go on.

11          There's some other things I wanted to

12  mention in here.

13          This is why I like hard copy.  This is

14  pretty handy, but I like to have the document.

15          Can you keep going on this document?

16          Okay.  So what she testified in court,

17  Ms. Stone, was that she was in the airport, and she

18  goes into her Facebook Messenger and she has this

19  message from Ms. Carter that automatically starts

20  playing the video.  And it's not the way Facebook

21  works, so I asked her about it.

22          And she eventually decides, Well, I must

23  have accidentally clicked on it, and that is what

24  made it play.  And I only watched a few seconds.

25  But I was so upset, I couldn't get on the plane.  I

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 94 of 240   PageID 15922
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2092

 1  was traveling on Union business.

 2          Well, that's not what she told them in the

 3  interview.  She said, I couldn't look at it at the

 4  airport.  She had to leave the airport.  She does

 5  testify she went back to the hotel and voluntarily,

 6  on her own, clicked, knowing what it was.

 7          She wanted to see that speech, and now she

 8  wants to complain about it.  But she has a much

 9  different story to what she told Southwest Airlines

10  than what she told you.

11          There is something else in there.  Oh,

12  that is right.

13          And then what does she want?

14          So here she told you, You know, I

15  really -- I filed this complaint because I was

16  worried that Ms. Carter might send this to some

17  other union members, and I have a girlfriend that's

18  pregnant.  And so I was worried.  I was doing this

19  to protect them.

20          Well, you know, she failed to say that

21  whenever she was being interviewed by Southwest

22  Airlines.  She's saying, Make Charlene and Chris

23  Click stop.  Tell those flight attendants not to

24  talk about me or the Union president trying to get

25  flight attendants fired.  They need to protect me.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1              She's talking about protecting me as Union
 2     president.  Keep it a secret that the Union
 3     president is trying to get union members fired.
 4              She clearly brought this complaint as
 5     Union president and she's asking for relief as Union
 6     president.
 7              And she's not doing it for a pregnant
 8     friend.
 9              Okay.  Let's look at -- I think there is
10     some Schneider testimony where he says -- he
11     certainly testified, Mr. Schneider testified he
12     agreed that all of Ms. Carter's communications were
13     protected -- well, he doesn't know what protected
14     is.  He says union related.
15              And by the way, he should know.  This is
16     when the 28-year person at Southwest Airlines that
17     is tasked with investigating this claim and making a
18     termination decision.
19              And -- let's see if this is it.
20              This was good too.  He said this several
21     times.
22              "QUESTION:  Can you recall any part of
23     your investigation that revealed a comment to
24     Ms. Stone, whether about her union that could be
25     separated and say, you know, that's talking about

 1  Audrey Stone outside her job as Union president.

 2  Can you think of anything like that?

 3              "ANSWER:  No.

 4              "QUESTION:  So the only thing you know of

 5  is complaints about Ms. Stone as Union president in

 6  that context?

 7              "ANSWER:  From only the complaints, yes."

 8              So the only thing that Southwest had

 9  was -- in Southwest's opinion, the opinion of the

10  person they say terminated her, was that all of her

11  communications, all of Ms. Carter's communications

12  were union-related.

13              And so it's protected.  It's protected

14  whether it's intemperate, abusive, insulting,

15  hyperbolic, extremely offensive, it's protected.

16  And they didn't consider that.

17              You saw it before.  They didn't consider

18  that at all.  Southwest Airlines is firing people

19  for engaging in protected activity and not even

20  considering it.

21              They are saying, Well, that -- that video

22  was just very offensive.

23              Well, you still have to consider the Union

24  activity.  That video was offensive.  You still have

25  to consider her religious beliefs.  And they did not

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 97 of 240   PageID 15925
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2095

1    even consider them.  And it's protected activity.

2            Let's look at 107, Exhibit 107.  These are

3    Mr. Schneider's notes.

4            Actually, I wanted to go over -- and maybe

5    it is not on here, Matt.  I apologize.

6            I wanted go over Charlene's notes from the

7    fact-finding meeting.  Do you have those?

8            It's Exhibit 98.  Here we go.

9            So if you review Exhibit 98, this is

10   Charlene was interviewed.  And 98 goes on and on.

11   But you will see that over and over she's telling

12   Southwest Airlines, I am doing these things, I'm

13   posting this, I'm putting this on my personal

14   Facebook page because of my Christian beliefs.

15           You can go to -- there is a bunch of

16   those.  But if you review Exhibit 98, you will see

17   her telling them this over and over.

18           And then she tells them, "It's my

19   Christian, you know, beliefs."

20           She's telling them, here is why I'm doing

21   this.  It's my Christian beliefs.

22           She also over and over tells them that it

23   is because she is complaining to her union.  Our

24   union went to the Women's March.  I know that they

25   wore inappropriate hats at this march, including our

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 98 of 240   PageID 15926
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2096

 1  president.  They supported Planned Parenthood.

 2          So she's coming in and she's telling

 3  Southwest Airlines, I'm engaged in union activity,

 4  I'm engaged in religious activity.

 5          Do they consider it?  Does employee

 6  relations say, Oh, yeah, we have got to consider

 7  that.  We should consider whether or not we should

 8  accommodate it.

 9          No.  They just said, you know, that

10  speech, to us, that video, that's -- that's too

11  offensive.

12          And, respectfully, we don't think that's

13  what the law is, we don't think that's what these

14  jury instructions say.

15          You can go on to at least page 13.  There

16  are a lot of these.  I mean, "This was done through

17  our union.  They were there next to Planned

18  Parenthood."  You will see this over and over.

19          "She doesn't represent us."

20          But I want to go to -- I don't know if you

21  marked the one where Mr. Schneider says that her

22  communications might make someone uncomfortable.

23          He's telling her, Okay, fine.  You may

24  have the right to do this, but this seems to be a

25  little aggressive.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 99 of 240   PageID 15927
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2097

1            And then he goes on to say, It might make

2    her feel uncomfortable.

3            So union-protected robust speech where you

4    are complaining to your union, if it's a little too

5    aggressive or it makes someone feel uncomfortable,

6    Southwest Airlines says, We fire you.

7            That is not the law.

8            Okay.  Let's go to Exhibit 49.

9            I just need to know how I'm doing on time.

10           I have used 10?  Okay.

11           You know, I get paid by the words, so I'm

12   using all of my time here.

13           I appreciate you staying awake and giving

14   me as much attention as you think it deserves.

15           Okay.  Let's look at Exhibit 41, the

16   termination letter.

17           So they say in the termination letter

18   itself, "You admitted you posted graphic videos of

19   aborted fetuses on Facebook."

20           By the way, let's be fair here.  She sent

21   it in a private, protected message to her union

22   president.  They don't say that.  They just say, You

23   sent it to another flight attendant, like she just

24   picked someone at random.

25           And they say, "You agreed that the

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1  pictures and video were graphic."

 2             So that's all it takes for them.

 3             Let me go on down.

 4             And then they say, "You posted graphic

 5  videos on Facebook, and you were identifiable as a

 6  Southwest employee and represented our company in a

 7  manner that is disparaging to Southwest Airlines."

 8             That is what they are saying.  You posted

 9  this video, and you did it identifiable as a

10  Southwest Airlines employee.

11             Let's look at the policy.  It's Exhibit 9,

12  I think.  The social media policy.

13             That's not it, but I like that one, too.

14  But I would like No. 9.

15             MR. HILL:  Yes.

16             MR. PRYOR:  Okay.

17             And if you look in the second paragraph,

18  it says, "Even if the social media communication

19  does not reference Southwest directly or is posted

20  anonymously, depending on the content of the

21  communication, such statements can negatively impact

22  Southwest, its employees, and/or its customers."

23             So none of that happened here, none, and

24  they are trying to apply this policy.

25             So then they argue about a nexus.  And so

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 101 of 240   PageID 15929
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2099

 1  they are worried about their brand.  And a

 2  company -- that is fine, a legitimate concern about

 3  your brand, sure.

 4          But if somebody posts something, and four

 5  and a half years ago -- by the way, every person

 6  that got up there and testified to them about the

 7  nexus, neither one of them said how long ago it was.

 8  Charlene told you.

 9          It was four -- some of it was three, some

10  of it was four, some of it was five years ago, and

11  then there is the lanyard that you can't read.

12          That's not a nexus.

13          Even if it was a nexus, you will see in

14  the jury instructions that Southwest's policy does

15  not overcome her Title VII religious beliefs and

16  rights.  She had the right to post that video.  If

17  she had been standing there in her Southwest

18  Airlines uniform, they've got an argument.  If she

19  had posted something the day before, no.

20          But Mr. Schneider asked him, So what do

21  you think?  Somebody from the general public is

22  going to look at this and think, that is Southwest

23  Airlines's position.

24          He said, Well, this is a hot-button issue.

25  They might look at that and they'll start scrolling

 1  back, looking for stuff.

 2          So they're going to scroll back five

 3  years, and then they are going to see this picture

 4  of her in her Southwest Airlines uniform, and they

 5  are going to conclude from that, that Southwest

 6  Airlines, that must be Southwest Airlines's position

 7  on abortion.

 8          Is that at all reasonable?  Is that a

 9  basis for taking away her rights to express her

10  religious beliefs?  Is that -- I mean, whether you

11  agree or disagree, pick another religious belief,

12  pick any, and put it in that place.  Is that right?

13  Is that how Southwest Airlines should be able to

14  take their social media policy and take away an

15  individual's personal religious freedom?

16          MR. GILLIAM:  Ten minutes.

17          MR. PRYOR:  Oh, you are kidding.

18          Well, good news for you, I'm almost done.

19  Bad news for me, I'm not done.

20          Let me skip to a couple of things then.  I

21  have got to get to the -- let me mention Exhibit 40,

22  the last chance agreement.  I won't call it up.

23          I wasn't able to mention that during

24  opening for legal reasons, and counsel was able to

25  talk to you about it.  And once it was raised in

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 103 of 240   PageID 15931
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2101

1  evidence, I was able to address it with Ms. Carter.

2            Ms. Carter, of course, wanted her job

3  back, absolutely.  But she wasn't willing to sign a

4  document that said she can't exercise her religious

5  freedom.

6            They can talk about that Step 2 hearing.

7  At a Step 2 hearing, they say, you know, you were

8  willing to stop doing this to get your job back.

9            Well, if you read it in context, it's a

10 Hobson's choice.  But she was willing, reluctantly,

11 to give up to her complaints to the Union.  She was

12 like, Fine, if I can get my job back.

13           But she still wasn't willing to give up

14 her religious freedom.  She wasn't willing to do

15 that.  And so she lost her job for standing up for

16 her rights.

17           All right.  Let's go to the jury

18 questions.  Gosh, there's so much good stuff.

19           A couple of things I want to mention on

20 the jury instructions.  On page -- I have to do what

21 is called a full open, which means I've got to

22 address all of this.  So I'm going to run through it

23 and make sure I get it.

24           On page 3, preponderance of the evidence.

25           Preponderance of the evidence -- it is

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 104 of 240   PageID 15932
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                Vol 7 July 13, 2022                Page 2102

1  defined really well here -- but it is basically you

2  take things that are equal, 50/50, and then you go

3  50.1 and the other one is 49.9.  The 50.1 wins.

4          Beyond a reasonable doubt, that's your

5  high 90s.  That's your criminal case.

6          Here, it's just what is more likely than

7  not.  There is no extra burden for the plaintiff

8  here other than that 50.1.

9          Okay.  Let's go to page 9.

10          Wow.  This part I did.  I did listen when

11  the judge was reading all of this.  This is -- you

12  got to read -- this is great stuff.

13          "The duty of fair representation means a

14  union must serve the interest of all employees

15  whether they are union members or not."

16          It goes on to say, "They violate that when

17  they act in bad faith or treat you differently."

18          The next page.  "The law presumes a union

19  breaches its duty when it causes the discharge of an

20  employee."

21          The law presumes it.  And that's what

22  happened here.

23          And so you can go on, you can read those.

24          But we think that there is clear violation

25  here.

```
 1              The retaliation, on page 12 it says,
 2   "Plaintiff Carter claims that Defendant Southwest
 3   retaliated against her by firing her for engaging in
 4   union opposition and organizational activity."
 5              And that's exactly what happened here.
 6   They fired her for her union activity.  They knew it
 7   was union activity and they fired her for it.  Their
 8   excuse is, Well, we thought it was offensive.  That
 9   is not an excuse under the law.
10              MR. GILLIAM:  Five.
11              MR. PRYOR:  Can't be happening.
12              Okay.  So they failed to provide an
13   accommodation.
14              I want to talk about damages.  Let's go to
15   Question 1.
16              And you can take notes on the questions
17   that the judge gave you.  You are not binding
18   yourself to it.  You can say, Oh, here is what that
19   lawyer said.  Here is what he thought.
20              You guys are going to be the ones to
21   decide.
22              "Has Carter proved that Audrey Stone was
23   acting in her official capacity as then president of
24   Local 556 when she reported Carter to Defendant
25   Southwest Airlines?"
```

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1          We think that is a clear yes.

 2          "Has plaintiff proved that Defendant Local

 3   556 violated the duty of fair representation?"

 4          We just kind of went over some of those

 5   definitions.  We believe the answer to that is yes.

 6          Question 3.  "Has Carter proved that

 7   Defendant Local 556 retaliated against Carter for

 8   engaging in activity protected by the Railway Labor

 9   Act?"

10          Absolutely.  We believe the evidence

11   strongly supports a yes answer.

12          Question 4.  "Do you find that Local 556

13   has proved that Local 556 would have reported Carter

14   to Defendant Southwest even if Carter had not

15   engaged in activity protected by the Railway Labor

16   Act?"

17          The answer to that is no, among other

18   reasons, because she didn't do anything else.  All

19   she did was engage in protected activity.  Every

20   single communication.  It was admitted by

21   Mr. Schneider, it was admitted by Ms. Stone.  I had

22   her go through it.  Read every one of these.  Show

23   me something that is not union activity.

24          Question 4 is no.

25          Question 5.  "Has Carter proved that

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2105

 1   Defendant Local 556 unlawfully discriminated against
 2   her?"
 3            Yes.  She was treated much --
 4            By the way, if Ms. Carter had received
 5   that video from Mr. Nevarez, would she have reported
 6   Mr. Nevarez?  Was she going to report Brian Talburt?
 7   Was she going to report John Parrott?
 8            She didn't report those people.  They
 9   engaged in all kinds of robust communications.
10            No.  Ms. Carter was treated differently.
11            The answer to 6, we believe, is yes.
12            The answer to 7, that they unlawfully
13   failed to accommodate, yes, they unlawfully failed
14   to accommodate.  You can read the definitions.  They
15   failed to accommodate by reporting her for her
16   religious and union activities.
17            No. 8, the same answers to Southwest
18   Airlines for the same reasons.  It's yes.
19            9, Southwest.  Southwest proved that she
20   would have been discharged anyway.  Well, the only
21   thing they discharged her for was that video and the
22   pictures with the vagina hats, both of which are
23   protected activity.
24            They fired her for -- you can agree or
25   disagree with it, but they fired her for that

1  protected activity.  So we believe the answer to 9

2  is no.  There was not -- as a matter of fact, the

3  reason they gave was they said they thought -- they

4  had every witness come up there and say it was

5  offensive so they could tell you how upset they were

6  about it.

7            Question 10, the same thing.  She was

8  treated differently because she was -- treated

9  differently because of her religious beliefs and her

10  union activity.

11            10 is yes.

12            11 is yes.

13            I have got to get to the damages.

14            12 is no.

15            What burden on Southwest Airlines to

16  accommodate her religious beliefs?  They could say,

17  you know, you are right.  Our policy doesn't apply

18  to your religious activity and that nexus is too

19  far.  That is no good.  That would be an

20  accommodation.

21            Another would be to say, Well, why don't

22  you take off those posts?

23            They could have done a lot of things that

24  cost them not a penny.  There is no undue hardship

25  to have accommodated her.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 109 of 240   PageID 15937
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2107

 1              Okay.  Damage questions.

 2              13.  The lost wages.  So her lost wages --

 3    she's been off work for over five years.  She's

 4    looked for work.

 5              There is a mitigation instruction here.

 6    And in the mitigation instruction, it says she

 7    doesn't have to take a job that is completely

 8    different than what she had.

 9              In other words, if you're a flight

10    attendant, you don't -- not that there is anything

11    wrong with it because I have done it -- but you

12    don't have to take a job flipping burgers at

13    McDonald's.

14              And so she tried, she tried with four or

15    five airlines to get jobs.  You heard her testimony.

16              Her testimony was that she was making --

17    would have made, from March 2017 forward, about

18    80,000 a year.  She had ramped up -- now it would be

19    about 100,000 now.  But 80,000 times five years, we

20    believe that Question No. 1 should be 400,000.

21              I think the money is important.  It's not

22    why Charlene is here, but she's entitled to be

23    compensated.

24              Lost benefits.  She told you that was

25    $20,000 a year in lost benefits.  That would be

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2108

 1  $100,000 for that answer.

 2          And 14, pain and suffering.

 3          I may go into my last 10 minutes because

 4  let me tell you, this has disrupted her life beyond

 5  belief.  You know, when she got fired, she's on the

 6  floor praying with her husband and crying.  From

 7  then to now, it has been a daily struggle for her

 8  not having a job.

 9          Making it worse by then having a husband

10  that has alcohol problems and raising a daughter by

11  herself and she's dealing with all of this every

12  single day.

13          As a matter of fact, this is before her

14  husband's alcohol problems.  She was so stressed out

15  she had a walking stroke.  Her life was at risk, her

16  family was at risk.

17          I said, Would you take a million dollars?

18  And she said, No.

19          And I believe it.

20          I would put a million dollars for the pain

21  and suffering and a million for -- and I'm

22  suggesting it, by the way.  It's your decision.  But

23  I've got to do a full open.  I need to make a

24  suggestion to you.

25          Okay.  Punitive damages.  If you think the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 111 of 240   PageID 15939
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2109

1  Union acted as a bad actor here, this one, you can

2  look at it and say, they have 15,000 members.  You

3  can -- fine them $20 a member.  That's $300,000 to

4  say, Don't do this anymore.

5              Frankly, the number should be a lot more.

6  And to be honest with you, it doesn't matter what

7  number you put it there, this union is not going to

8  change.  But you should try and change them.

9              Southwest Airlines.

10             Okay.  This one is where -- I'm glad we

11 have teachers on here, but I think I'm talking fifth

12 grade math.

13             So Southwest Airlines, if you look at

14 Exhibit 138, is worth $10 billion and some change.

15 That's what they are worth.  That change is pretty

16 big change.  But $10 billion.

17             So now take a millionaire and give a

18 millionaire a $200 ticket, a speeding ticket.  So

19 that's 200 over 1 million.  Make it a fraction here.

20 That equals X over 10 billion.  What is X?  X is

21 $2 million.

22             So if you think Southwest should be told,

23 consider people's union activity, consider their

24 religious beliefs.  Mr. Schneider said they didn't

25 even consider them.

1            If you think they should consider these

2     things, if they should protect these rights, you are

3     going to have to send that message.

4            $2 million is a speeding ticket.  I admit,

5     I'm a speeder.  Speeding tickets aren't terribly

6     effective with me.  I'm doing better.  But if you

7     think it should even be a speeding ticket, that is

8     what it would take.

9            Okay.  I have got to get to the rest of

10    this.

11            MR. GILLIAM:  Two minutes into your time.

12            MR. PRYOR:  Nothing on the nominal

13    damages.

14            Front pay.  Front pay is she could go back

15    to work today full-time.  And it will be up to -- I

16    think I can say this -- the judge's -- somebody else

17    will decide whether or not she gets her job back.

18    You don't get to make that decision.  But one of the

19    things you can do is suggest, okay, if she doesn't

20    get her job back, she can have front pay.  And

21    $100,000 a year for a three-year front pay, that

22    would be $300,000.

23            Listen, these attorneys are going to get

24    to talk to you.  And you were put on this jury.  We

25    didn't pick juries of lawyers, that is not the way

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 113 of 240   PageID 15941
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2111

1  our system is set up.  There's some countries it's

2  lawyers that decide.  Certainly some military

3  tribunals, it's always the judge.  Here in our

4  country, it's Americans, it's average people.  In a

5  positive way I mean that.

6           So you don't have to become lawyers

7  sitting here.  This looks like a law school exam,

8  but it's not.  It's telling you what the law is, and

9  it's then telling you, what do you think of these

10  facts and what should be done?

11           I will get to talk to you again at the

12  end.  I hope I've covered everything.  And I look

13  forward to the last 10 minutes with you in I don't

14  know how long.  Thank you.

15           THE COURT:  Okay.  Thank you, Mr. Pryor.

16           I'm going to ask for a sidebar after every

17  closing just so we can talk through any legal

18  issues.  So if we can huddle at sidebar real

19  briefly.

20           (Thereupon, the following proceedings were

21      had at sidebar:)

22           THE COURT:  Thank you for taking it off.

23  That was my first thing.

24           MR. PRYOR:  Well, I didn't actually roam

25  very much, so I didn't really need it.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 114 of 240   PageID 15942
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2112

 1                THE COURT:  Any issues you want to raise?

 2                MR. McKEEBY:  I think there was portions

 3      of the argument that went outside the scope of the

 4      instructions, particularly with respect to the

 5      communication and damages.  So I would raise that.

 6                MR. PRYOR:  Mitigation?

 7                MR. McKEEBY:  Yes, mitigation.

 8                MR. PRYOR:  What did I do on mitigation?

 9                MR. McKEEBY:  In terms of saying she

10      didn't have to accept anything outside of her --

11                MR. PRYOR:  That's what the jury

12      instruction says.

13                MR. McKEEBY:  I don't think it says it

14      quite the way you did.  And so that's really my only

15      basis for objecting.

16                MR. PRYOR:  Okay.  I'm entitled to argue

17      my interpretation of that instruction.

18                THE COURT:  I have thoughts on that.

19                But Mr. Greenfield, do you have other

20      issues to raise?

21                I end up saying this after almost every

22      closing argument is, remember, the law is what I

23      gave you at the charge.  Anything you heard from a

24      lawyer about the law may be their interpretation.

25                MR. PRYOR:  If I had had time, if I could

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 115 of 240   PageID 15943
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2113

 1   have found it, I would have read the exact words.  I

 2   wasn't trying to --

 3              MR. McKEEBY:  The other thing is a minor

 4   point.  I think he stated that the email address

 5   of -- I forget what it was -- Rocky Mountain was in

 6   evidence as Mr. Hafner's email address.  I don't

 7   think that's in evidence.

 8              MR. PRYOR:  We got it from Mr. Nevarez and

 9   Mr. Lair, and I believe I got it from one of the

10   witnesses.  I can't remember.

11              THE COURT:  Without having a transcript in

12   front of me, what I can say is the same two things I

13   normally always say.  Everything you heard was not

14   evidence and not the law.  And I'm going to say that

15   after every closing, right?

16              MR. PRYOR:  Let me say, I just now

17   remembered this too.  I will do this in my last 10

18   minutes.  I appreciate it.  That document itself --

19   I have 10 minutes left.

20              THE COURT:  Seven.  But yeah, close.

21              MR. McKEEBY:  Who's counting?

22              MR. PRYOR:  Are you going to hold me to

23   seven?

24              THE COURT:  You can do a lot in seven.

25              MR. PRYOR:  Okay.  That document itself

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2114

 1  says it's Mr. Hafner.  So I certainly haven't gone

 2  beyond the --

 3            THE COURT:  I will give my standard

 4  disclosure, and then I will let you say you're

 5  sticking to the podium.

 6            MR. PRYOR:  You can do the standard

 7  disclosure right now.

 8            THE COURT:  I can save it for the end and

 9  say --

10            MR. PRYOR:  Yes.  I don't think that

11  should be tagged to me.

12            THE COURT:  Okay.  So we will see what

13  time we are at, but we may take a lunch break after

14  you close.  Do you have any guess as to how long you

15  are going to close?

16            MR. McKEEBY:  I think it's 30 minutes.

17            THE COURT:  We may do lunch then and take

18  you up after lunch.

19            MR. GREENFIELD:  I love a sleepy jury.

20            MR. PRYOR:  I thought we were done.  I

21  apologize.

22            THE COURT:  I asked him how long he

23  thought he would need.  He said about 30 minutes.

24            I thought we would break for lunch after

25  him and then take Greenfield and your rebuttal.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 117 of 240   PageID 15945
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2115

 1             MR. PRYOR:  That is fine.  Thank you,
 2  Judge.
 3             (Thereupon, the sidebar was concluded and
 4        the following proceedings were held in open
 5        court:)
 6             THE COURT:  Okay.  Now you are going to
 7  hear closing argument from Mr. McKeeby on behalf of
 8  Southwest.
 9             MR. McKEEBY:  Thank you, ladies and
10  gentlemen.  I'm not sure if it's good news or bad
11  news, but I do not get paid by the word.  So I'll go
12  a little bit more slowly.
13             First of all, I would like to say that I
14  think I'm more proud to represent Southwest Airlines
15  than any other company I ever have represented.
16             The reason I say that is simple.  It's the
17  people, the people who I had the pleasure of meeting
18  in connection with this case, in connection with
19  preparing for this trial.
20             And it is important because a critical
21  aspect of Southwest Airlines's case is its culture,
22  its culture in the workplace that emphasizes
23  tolerance, that emphasizes respect for coworkers.
24             You saw those policies.  I showed them to
25  you at the beginning of my presentation in opening

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 118 of 240   PageID 15946
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2116

 1   statement.  The social media policy.  The bullying

 2   and hazing policy.

 3          And the policies are important.  I'm not

 4   going to show them again to you, but they are

 5   important.  But that culture of respect and

 6   tolerance comes through more so from its employees

 7   and former employees.

 8          I called to the witness stand many of

 9   those folks, and some of them were on the witness

10   stand briefly.  But I wanted you to hear them.  I

11   wanted you to hear them because they played a role

12   in the case, certainly, but also because they could

13   articulate to you the culture of Southwest Airlines.

14          Again, the culture of tolerance and

15   respect for coworkers.

16          So you heard from people like Maureen

17   Emlet, the labor relations manager who flew from

18   Denver on a Southwest flight, I'm sure.  She walked

19   through the policies that I mentioned, we talked to

20   her about that, but she also talked about the impact

21   of that -- of those videos that Ms. Carter sent to

22   Ms. Stone and how it affected her and how she had to

23   walk around the headquarter building to collect

24   herself after she saw those videos.

25          Also, on Monday, you heard from another

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1  former employee, Ms. -- if you recall, Ms. Emlet is

 2  not a current employee, she's retired, as is Naomi

 3  Hudson, who you heard from Monday afternoon.

 4           When I asked her what her reaction to

 5  seeing those videos were, she said -- she didn't

 6  say, I wanted to go look into my policy manual and

 7  see which policies were violated so that I could

 8  fire Ms. Carter.  She said she was sad.  She said it

 9  broke her heart to see those videos sent by one

10  employee to another employee.  And why is that?

11           Again, it is Southwest's culture.

12           And this is a woman who had worked for 20

13  years for Southwest Airlines in labor relations.

14  She's -- Ms. Hudson was Ms. Emlet's boss

15  essentially.  And she helped create that culture.

16  And to see another employee like Ms. Carter, who is

17  also a long-term employee, violate that culture by

18  sending those videos to a co-employee broke her

19  heart.

20           And that is what she told you.

21           Now, something that is ironic in this case

22  is that one of the best witnesses for Southwest

23  culture was Ms. Carter herself.

24           She told you repeatedly during this case

25  how much she loved the company, how much she loved

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 120 of 240   PageID 15948
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2118

 1   Southwest Airlines.

 2           And I didn't put -- this is actually from

 3   Mr. Prior's questioning of Ms. Carter.  It is

 4   unusual for me to post something that is not my

 5   question to a witness, I'm going to post some that

 6   are my questions, but this was from Mr. Pryor.

 7           Ms. Carter talked about how much she loves

 8   Southwest Airlines.  And we didn't put it all on

 9   here.  She also said, At Southwest Airlines, I

10   didn't feel like a number.

11           Well, you know why?  It's because of

12   Southwest's culture she didn't feel like a number,

13   because she was treated with respect.  She loved her

14   job, as she was repeatedly telling you, the jury in

15   this case, and as she repeatedly told Southwest

16   Airlines during the grievance process that led --

17   that happened before.

18           "Oh, my gosh, it was the best company to

19   work for."

20           You also heard from Mike Sims yesterday.

21   You heard from Mr. Sims regarding the Step 2

22   hearing, but you also saw him as, again, an

23   additional embodiment of Southwest Airlines's

24   culture.  And I will talk about that in a second.

25           Again, he presided over the Step 2

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 121 of 240   PageID 15949
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2119

1  hearing, which was essentially the appeal of the

2  decision to terminate Ms. Carter's employment.  And

3  he made it clear during that Step 2 hearing that he

4  absolutely agreed with the decision to terminate her

5  employment.  He agreed that she had violated

6  Southwest policies and that the conduct was

7  unacceptable.

8           But it was the first time during the whole

9  process that Ms. Carter started to take some

10 accountability, some responsibility for what she had

11 done.  She pleaded with him, Can I have my job back,

12 because I do love my job and my company.

13          So Mr. Sims had a decision to make.  And

14 Mr. Sims, as you heard, thought that the right thing

15 to do, the Southwest thing to do was to give

16 Ms. Carter another chance.

17          And so he said, Okay, Ms. Carter, you want

18 your job back; I'm going to give you your job back.

19 And he offered her her job back.

20          This is a case where they want $2 million

21 to punish Southwest in a case where they gave her

22 her job back, and she thumbed her nose at it.  I'm

23 sorry, that upsets me.  We told her, come back.

24 Let's let bygones be bygones.  You can have your job

25 back.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 122 of 240   PageID 15950
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2120

```
 1              And I will tell you, to this moment, I

 2    don't understand why she didn't accept that.  She

 3    should be flying on those airplanes working for the

 4    company that she says she loved.  But she didn't do

 5    that, ladies and gentlemen, and I don't know why.

 6              I know what she said.

 7              Here is the last chance agreement.

 8              She said that, well, she didn't like the

 9    fact that she wasn't going to get back pay.

10              But remember, when we went through her

11    flight schedule, she was barely flying.  She took

12    more time for vacation in 2016 than in actual

13    flights.  I think she took three or four flights in

14    2016 and none in 2017.

15              So the point here is that the notion that

16    she wasn't going to get back pay, she wasn't

17    sacrificing anything with respect to that.

18              Her termination was going to be reduced to

19    a suspension.  That was going to be time served.

20    The date of this last chance agreement was after the

21    30-day period.  So that can't be an explanation as

22    to why she didn't take the job.

23              She had to sign a settlement agreement.

24    She was going to give up her rights.

25              Well, she was getting her job back.  And
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 123 of 240   PageID 15951
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2121

1  Mr. Sims testified that this was a standard part of

2  these types of agreements.  And it also, if you

3  recall, Mr. Sims testified that had she signed this

4  agreement, she was still free to pursue any claims

5  she might have against the Union.

6            She was required to comply with company

7  policies and procedures, like any other employee.

8            And then the final thing, the agreement

9  would remain in her file for 24 months from the date

10 that it was signed.

11           I asked her if -- well, there was some

12 discussion about, well, the Collective Bargaining

13 Agreement talks about 18 months.  And I asked her,

14 well, if it had been 18 months, would you have

15 signed it?  She said, oh, no.

16           So I don't know why she didn't sign that

17 agreement.  I don't know why she didn't accept the

18 opportunity to go back to the company that she said

19 that she loved.

20           What I do know is what I told you during

21 opening statement regarding Southwest policies.  She

22 violated those policies by sending those videos to a

23 co-employee.

24           I didn't like showing those videos to

25 Ms. Stone.  I didn't like showing them to you.  I

 1   felt like I had to so that you could understand why
 2   Southwest made the decision that it did.  I felt
 3   like you needed to see it.
 4           Southwest had every right to take the
 5   action that it did to protect its culture of respect
 6   and tolerance for co-employees, to enforce its
 7   policies that are designed to protect that culture.
 8   And that is what happened in this case.
 9           And Ms. Carter disagrees with that.  When
10   I questioned her, her position was -- I asked her,
11   Should Southwest have just ignored Ms. Stone's
12   complaints?  Is that your position?
13           And she said, yes.  You should just ignore
14   it.
15           Well, a couple of things.  First of all,
16   Southwest has these policies in place to protect its
17   employees.  It can't just ignore a complaint, and it
18   is not inclined to do so.
19           Southwest has a duty to protect its
20   employees, that is what those policies are about.
21           It is a commitment to its workforce that
22   you don't have to be subjected to this kind of
23   treatment.
24           And you can read the instructions.  The
25   messages, the videos, they are not protected

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 125 of 240   PageID 15953
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2123

1  conduct.  You are going to need to read the

2  instructions and make that decision yourself.

3           But Southwest's position is while there

4  certainly is some language in some of the messages

5  that might be protected, the videos, sending videos

6  of an aborted baby to a coworker is not protected

7  activity under any law.

8           Now, Ms. Carter had explanations as to

9  why -- well, first of all, she had what I would

10 regard as excuses.  Well, Ms. Stone, she didn't have

11 to open the videos, she had to -- she had to click

12 on those videos to watch them.

13          And she didn't maybe watch the whole

14 video, or she didn't watch it at the airport but she

15 watched it at the hotel.

16          None of that matters.  Ms. Carter sent

17 those videos to Ms. Stone.  And let's be clear about

18 it.  Let's be clear about her motivation.

19          She didn't send those videos to Ms. Stone

20 to try to convert her, to try to explain to her the

21 horrors of abortion, to get the word out, as she

22 said.  She sent those videos to one person, Audrey

23 Stone.  She didn't send it other employees at

24 Southwest Airlines; she sent it Audrey Stone,

25 because she was mad.  She was mad at Audrey Stone

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1  because the Union had gone on this march, and she

2  was upset about it, and she wanted to cause

3  Ms. Stone the type of pain and suffering that you

4  saw in the witness stand when she had to watch those

5  videos for a second time.

6          She didn't want to create a dialogue with

7  Ms. Stone about Ms. Stone's views on abortion.

8  Ms. Stone had not responded to video -- or excuse

9  me, to other messages over the course of the last

10 three years.  She didn't think by sending that

11 video, Audrey Stone was all of a sudden going to

12 pick up the phone and say, Hey, let's talk about the

13 Union's position regarding abortion and women's

14 rights.  That wasn't going to happen, and she knew

15 it.

16         She sent it to hurt Ms. Stone.  And that

17 is precisely what Southwest policies are designed to

18 protect.  Protect employees from images and messages

19 like those videos of aborted babies.

20         And it is not protected conduct.

21         One of the good things about this trial

22 coming to a close is that I will never have to say

23 the words "pink pussy hat" again, but this was part

24 of it too.  This was improper under Southwest's

25 policies.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 127 of 240   PageID 15955
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2125

1            She sent this message to Ms. Stone as

2    well.  And, okay, there is some language in here

3    about union activity, but the picture itself

4    violates Southwest policies.

5            And then when we -- when Ms. Carter had

6    the opportunity to talk about it in her fact-finding

7    meeting, she said -- there was some discussion about

8    the -- what the hat looks like, and her position

9    was, well, it's a vagina hat.  It's no different

10   than what I sent to her.  They are talking about the

11   pictures of the hats in the Women's March.

12           But of course it is different.  It looks

13   nothing like the hats that these women wore.

14           I also told you during opening that

15   Ms. Carter was not terminated because of her

16   religious beliefs, and we believe the evidence

17   manifests that completely.

18           First and foremost, the people who made

19   the decision to terminate her employment, first,

20   Mr. Schneider, and then he consulted with Ms. Emlet,

21   the labor relations manager, and then Mr. Sims who,

22   again, offered her her position back, but

23   nonetheless, subject to the last chance agreement,

24   all of these folks are Christian, and moreover, they

25   are all pro life.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 128 of 240   PageID 15956
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2126

 1             In Ms. Carter's counsel's opening

 2    statement, it was suggested, at least to me, I heard

 3    that you were going to see in the course of this

 4    case photographs of Southwest flight attendants at

 5    this Women's March carrying signs and maybe in

 6    Southwest flight attendant uniforms saying "I'm pro

 7    choice."

 8             We didn't see any of that.  What we saw --

 9    their picture was better than mine -- but we saw one

10    photograph posted on the Union's website of someone

11    holding what appears to be a cardboard sign that in

12    one of three blocks talks about "my body, my

13    choice."

14             And the suggestion is that, well,

15    Southwest disciplined Ms. Carter for expressing her

16    religious views, but Southwest didn't discipline the

17    attendees at the Women's March for expressing, I

18    guess, their religious views.

19             But that's not comparable.  These women

20    were participating in a women's march, not a

21    pro-choice march.

22             But even apart from that, we don't know

23    whose sign this is.  We don't know that -- you can't

24    even tell who is holding it.  There is no evidence

25    before you that this was a Southwest employee that

1   Southwest could have investigated and disciplined

2   had it -- if it chose to.

3              And moreover, the speech is not the same

4   as the videos that Ms. Carter sent to Ms. Stone.

5              So you will be asked, in Jury Question 10,

6   did Southwest unlawfully discriminate against

7   Ms. Carter by discharging her based on her religious

8   views, and the answer is an emphatic no.  Southwest

9   did not.

10             There was also discussion of Ms. Carter's

11  claim for religious accommodation.  Again, she never

12  asked for an accommodation.  Southwest had no reason

13  to know what accommodation she was requesting, even

14  in this case.

15             What is the accommodation that she's

16  requesting?  I'm not even sure I know.  I guess the

17  only thing it could be is that Southwest shouldn't

18  apply its policies to her.

19             But that is -- if you look at the law and

20  the instructions, that is not something that an

21  employer is required to do, to just suspend its

22  policies and allow Ms. Carter to send messages and

23  videos like she did, apparently to anyone in

24  Southwest's workforce.  She sent them to Ms. Stone,

25  but why couldn't she send them to anyone else?  That

 1  is not what the law requires.

 2          So as to Question 11, has Carter proved

 3  that Defendant Southwest failed to accommodate her;

 4  again, the answer is an emphatic no.

 5          The other thing I told you was that Carter

 6  was not terminated because she opposed the Union.

 7          We don't dispute that she had a beef with

 8  the Union, Southwest does not dispute that, that it

 9  was long-running and that she had disagreed with how

10  the Union spent its members' dues, that she

11  supported this recall effort, and that she generally

12  opposed Southwest's union leadership.

13          Southwest didn't know any of this until

14  Ms. Stone's complaint.  Mr. Schneider had barely

15  met, I don't think -- had spoke to her on one

16  occasion, Ms. Stone.  Southwest didn't have any

17  particular allegiance to the incumbent Union

18  leadership, particularly not the people who were

19  involved in the decision to terminate Ms. Carter's

20  employment.

21          Mr. Schneider, Mr. Sims, Ms. Emlet, none

22  of those folks are on all of these emails back in

23  2013 that they want to show you from Union members

24  that complain about other employees' social media

25  activity from, again, from back in 2013, that

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 131 of 240   PageID 15959
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2129

1  doesn't involve Ms. Carter, and certainly doesn't

2  involve any of the decision-makers in this case.

3          I'm not sure what connection, maybe those

4  claims are -- maybe that evidence is relevant more

5  to the Union's claims than to Southwest, but I can't

6  connect the dots, and I think the reason is that

7  there is just no way to connect them to support the

8  notion that these -- that Mr. Schneider, who you

9  heard from, that Ms. Emlet who you heard from, would

10 in any way be motivated by Carter's opposition to

11 the Union in reaching the decision to terminate her.

12         If you look at the termination letter, I

13 believe it's Exhibit 41, I mean, it's very clear why

14 she was terminated.  And if you hear the testimony,

15 it's very clear why she was terminated.  She was

16 terminated first and foremost because she sent those

17 videos to Ms. Stone.

18         And they want to talk about, well,

19 Ms. Stone is a president.  She's the president of

20 the Union.  She had a right to do that.

21         Well, I told you in opening statement,

22 Ms. Stone was also an employee of Southwest

23 Airlines, every bit entitled to the protection of

24 those policies that I showed you as any other

25 employee, including Ms. Carter.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 132 of 240   PageID 15960
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2130

 1              Southwest couldn't just say, Oh, sorry,
 2    Ms. Stone.  I see here that you are the Union
 3    president as well as an employee.  We are not going
 4    to apply our policies to you.
 5              That is not the way it works, ladies and
 6    gentlemen.
 7              I asked -- they talked about Ms. Lacore,
 8    Sonya Lacore, who was on some of these emails, the
 9    senior Southwest executive, and that is true.
10              And I asked her -- I think I asked her two
11    questions during her testimony.  And the big one was
12    you know, okay, you were on these emails from these
13    other employees in 2013.  Did you have anything to
14    do with Ms. Carter's termination.
15              And her answer was no.
16              So that is a complete red herring.  It is
17    completely irrelevant.  And what they have not done
18    is shown any evidence whatsoever to suggest that the
19    decision-makers in this case, Mr. Schneider,
20    Ms. Emlet or Mr. Sims, had any motivation associated
21    with her oppositional activity.
22              So the answer with respect to Southwest
23    Airlines in Question 8 is again a resounding and
24    emphatic no.  Southwest did not retaliate against
25    Ms. Carter for engaging in activity protected by the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 133 of 240   PageID 15961
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                      Vol 7 July 13, 2022                      Page 2131

1    RLA.

2             And Ms. Carter has all along -- this is

3    just a snippet and an example of what her position

4    has been all along, that this was union business.

5             Remember the analogy that she made that,

6    you know, if I -- rather than send this out on

7    social media and violate Southwest's social media

8    policy, if I had just gone to the Union offices and

9    made these complaints, none of this -- none of this

10   would happen.

11            She says here, "It had nothing to do with

12   Southwest until Ms. Stone made a complaint to

13   Southwest, is that fair?  Correct?"

14            She responds, "And then Southwest Airlines

15   got into Union business."

16            Well, we got into union business because

17   we had to.  We had a complaint from an employee and

18   we were obligated under our policies to respond to

19   that complaint, to investigate that complaint and to

20   respond to that complaint, and that is what

21   Southwest Airlines did.

22            The fourth thing I told you during opening

23   was that Southwest conducted a fair and thorough

24   investigation.  And the evidence confirmed that.

25   This was a three-week process led by Mr. Schneider.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 134 of 240   PageID 15962
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2132

1    It involved others.  It wasn't just one person.  It

2    involved Ms. Emlet, Ms. Jones, who you have heard

3    from, Ms. Gutierrez, and then Mr. Sims.

4                And Carter was represented by the Union during

5    the process.  There was a fact-finding meeting and

6    then the Step 2 grievance hearing that Mr. Sims

7    presided over.

8                And both of those meetings gave Ms. Carter

9    the opportunity to be heard, to tell her side of the

10   story.

11               And as I indicated, at the second meeting,

12   the Step 2 hearing, she not only acknowledged -- I

13   asked her, "Would you agree with me that he was

14   fair?"  Talking about Mr. Sims.  "He was fair to you

15   during the hearing, was he not?"

16               And her response was, "They were all fair

17   to me."  Mr. Sims and everyone at Southwest was fair

18   to her.

19               And he gave her a chance to tell her story

20   during the second -- during the Step 2 hearing.

21               So there is no question about the fairness

22   of the process.  It's a process that is borne of

23   Southwest's policies, as well as the Collective

24   Bargaining Agreement.  It gave Ms. Carter the chance

25   to be represented and the chance to be heard in

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 135 of 240   PageID 15963
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2133

 1  connection with this.

 2              And, again, I come back to this to close

 3  out.  But at the Step 2 hearing, she acknowledged,

 4  you know what, I could have made a better choice

 5  regarding Audrey.  I shouldn't have sent those

 6  videos.

 7              And later on she's asked, "Will you

 8  promise not to send them again?"

 9              And she says, "Yes, I promise not to send

10  them again."

11              This is Exhibit 119.  You can go back and

12  look at those pages.

13              She said, "I'm not going to send those

14  types of video again."

15              Because at that point she recognized --

16  either she recognized that what she had done was

17  wrong and that it violated Southwest's policies, or

18  that she just wanted her job back, because she also

19  said that during the meeting.

20              "QUESTION:  That was your goal at the Step

21  2 hearing, it was to get your job back?

22              "ANSWER:  Yes, sir."

23              It has been a privilege to be able to try

24  this case.  It's what I enjoy doing.  I suspect I

25  have maybe enjoyed it more than you guys have

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 136 of 240   PageID 15964
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2134

```
 1  sitting in the jury box for the last seven days.
 2            But what is frustrating at some level is
 3  the reality is that we should never be here.  We
 4  wouldn't be here if Ms. Carter had done the right
 5  thing and signed that last chance agreement and
 6  accepted that offer of reinstatement.
 7            She could be flying on those planes,
 8  working for the company that she has repeatedly told
 9  you and that she repeatedly told Southwest Airlines
10  that she loved.
11            She didn't do it.  I don't know why.  But
12  I do appreciate your service and I appreciate your
13  time and your attentiveness.  Thank you on behalf of
14  Southwest Airlines.
15            THE COURT:  Thank you, Mr. McKeeby.
16            Okay.  Quick sidebar.
17            (Thereupon, the following proceedings were
18       had at sidebar:)
19            THE COURT:  Anything we need to bring up?
20            MR. PRYOR:  He misstated the evidence
21  numerous times, but it's nothing your instruction
22  can't cure.
23            THE COURT:  Anything you want to bring up?
24            Let me ask y'all, if we can wrap up by
25  around 12:30, I think we'd all have a sense of
```

 1  relief.

 2          MR. PRYOR:  I only have seven minutes.

 3          THE COURT:  I give you eight because my

 4  check of the testimony was that there is evidence

 5  that Rocky Mountain is Mike Hafner.  So if you want

 6  a minute, you got a minute.

 7          So how long, Mr. Greenfield, do you think

 8  you're going to be?

 9          MR. GREENFIELD:  30, 45 minutes, I think.

10  I'm a little tired, so I might be talking slowly.

11          THE COURT:  That's fine.  How about let's

12  go for it.  I sense the jury wants the case.  And we

13  can certainly break for lunch; I don't want them to

14  be mad at us and take it out on us.

15          So are you ready?

16          MR. GREENFIELD:  Sure, yes.

17          (Thereupon, the sidebar was concluded and

18      the following proceedings were held in open

19      court:)

20          THE COURT:  Okay.  Folks, with your

21  indulgence, we are going to try to go for it and see

22  if we can add Mr. Greenfield's close on behalf of

23  the Union, and have the last word from Mr. Pryor.

24  We will break for lunch, and then it is all you.  So

25  let's try to give you the case.

 1              So, Mr. Greenfield, I'm going to ask if
 2    you can go head and close on behalf of the Union.
 3              MR. GREENFIELD:  Yes, your Honor.
 4              Good afternoon, everyone.  I would like to
 5    thank you all.  It's been a long week.  It's been a
 6    long week for all of us, I think.
 7              But you are here doing your civic duty.
 8    Everyone deserves their day in court.  Ms. Carter
 9    has received that and she's been heard.
10              Proudly represent TWU Local 556, with
11    co-counsel Edward Cloutman, III, and our corporate
12    representative, Michael Massoni.  We do want to
13    thank you for your service today.
14              Before I get too far into things, I want
15    to just directly address what Ms. Carter's counsel
16    presented to you during his closing argument.
17              It was a partial picture.  Bits and
18    pieces, dates from 2013, emails from 2015, comments
19    from 2017.  Why?  Why would someone do that?
20              It is to promote conspiracy.  That is what
21    you have to believe for Ms. Carter's claims to be
22    true here.
23              So let's walk through that conspiracy.
24    Ms. Carter believes she was discriminated against
25    and retaliated against when Audrey Stone turned her

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2137

1  in to the company for sending her videos of aborted

2  fetuses.

3           Okay?

4           Now, let's follow that conspiracy trail

5  down the line.

6           That goes to Southwest Airlines.  As part

7  of the collectively bargained agreement between the

8  parties, Ms. Carter gets to have a fact-finding

9  meeting.  And at that fact-finding meeting, the

10  Union, the one she is suing, provides her

11  representation.  We even let Ms. Carter pick whoever

12  she wants to represent her at the meeting.

13           So, of course, she feels it was done well.

14  She said Mr. Chris Sullivan was amazing in her

15  representation.

16           Okay.

17           At that point, Southwest Airlines makes

18  the decision to terminate her, fire her.  As part of

19  the collectively bargained agreement, Ms. Carter

20  gets another bite at the apple.  She gets a Step 2

21  hearing.

22           Again, the Union steps in and represents

23  her vigorously to get her job back.

24           You heard what Mr. McKeeby said.  You saw

25  the evidence.  Ms. Carter thought it was fair.  You

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                           Vol 7 July 13, 2022                           Page 2138

1    heard Mr. Sims on the stand.  He said Beth Ross and

2    Becky Parker from the Union did a fantastic job

3    representing Ms. Carter.

4             So good of a job, that they got her her

5    job back.  Thirty-day suspension, time served.

6             So now let's follow that conspiracy.

7             Now, Ms. Stone had to have known that she

8    was going to turn Ms. Carter in, she was going to

9    get her fired, but then the Union was going to get

10   her job back.

11            But then Ms. Carter was going to deny

12   that.  So this whole thing was to get her fired, but

13   we got her her job back and she got another bite at

14   the apple.  She kept going.

15            Now, Mr. McKeeby asked you a question --

16   or he presented a question.  He wanted to know why.

17            Why would she not take her job back?  She

18   said it is because of the probationary period, that

19   24-month probationary period.

20            And what did I tell you at the very

21   beginning of this trial?  Ms. Carter wants to be

22   able to say whatever she wants, however she wants,

23   in whatever manner she wants.

24            And she knew she had crossed the line.

25   And she knew if she continued doing what she was

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 141 of 240   PageID 15969
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2139

 1  doing, she would be fired again.  She wanted to be

 2  able to say whatever she wanted to.

 3              Let's touch back on a couple of other

 4  pieces of evidence that counsel brought up.

 5              They have thrown lots of emails in front

 6  of you from a gentleman named Brian Talburt.  Who is

 7  Brian Talburt?  He is not a union executive board

 8  member.  He's not a union agent.  He's not a shop

 9  steward.  Just a member of the union.

10              And you know what, Mr. Talburt probably

11  had a little bit of verbal diarrhea.  He wouldn't

12  stop emailing people.  He wouldn't stop calling

13  people.  You heard from Ms. Stone that she had to

14  ignore him.  Do you see many -- any responses from

15  Audrey Stone to Brian Talburt?  No.

16              What did you hear from Ms. Stone?  That

17  she gets hundreds of emails a day. Hundreds.

18              What did you hear from Ms. Lacore, who

19  they attach on those emails?  Ms. Lacore testified

20  that she had to block Brian Talburt's number from

21  her phone.  Partial pictures.

22              There is an old saying that I know of,

23  just because you are paranoid, doesn't mean they are

24  not after you.  Right?

25              Now, Brian Talburt is the bogey man.  Look

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 142 of 240   PageID 15970
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2140

 1   at the two emails that they put up to present before

 2   you.  Look who he was turning in.  He was turning in

 3   a woman named Jeanna Jackson.

 4              How do we know that name?  How do we know

 5   the name Jeanna Jackson?  Jeanna Jackson started and

 6   pushed forward the recall petition that tried to

 7   throw out the entire executive board office in 2015.

 8              Audrey Stone and everybody but three

 9   people:  Donna Keith, John DiPippa, and Jessica

10   Parker.

11              Why are those three people important?

12   They weren't named in the recall petition.  They

13   opposed the first tentative agreement that Ms. Stone

14   had negotiated.  That is exactly what Ms. Carter was

15   doing.

16              But Ms. Carter got up on the stand and

17   told you that the findings that those three people

18   had when they reviewed the recall petition was a

19   fraud.  But what was the real fraud?  Exhibit 134.

20   Look for it.

21              Look through it.  This is what -- this is

22   what Ms. Carter supported, this is what Jeanna

23   Jackson supported.  This is what Brian Talburt had

24   issue with.

25              You know what was on the recall petition

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 143 of 240   PageID 15971
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2141

 1   that was turned in by Jeanna Jackson?  Signatures of

 2   dead people.  Whited-out names.  Changed names.

 3   Names with the same penmanship.  Down the line.

 4   Changed dates.

 5              That is where the fraud is.

 6              Another one, C. Click.  Who is C. Click?

 7   Where do we know that name?  That is Chris Click.

 8              Chris Click was thrown out of office in

 9   2013, along with Stacy Martin and Jerry Lindemann.

10              Ms. Carter tells you that that is a coupe,

11   that they threw everybody out.  That is because

12   facts don't matter to Ms. Carter.

13              What do we know for a fact?  And she

14   testified that she knew about it, that there is

15   judgment against Stacy Martin for misappropriating

16   funds and stealing from the Union to the tune of

17   $17,000.  A judge and a jury in a courtroom just

18   like this found him guilty of those charges.

19              But it is a coupe.  We should just trust

20   Charlene Carter.  Just ignore the facts.

21              So we talked about the whatever.  We

22   talked the whenever.  And we talked about the

23   however.  But it is more than just that, this case.

24              The plaintiff believes that special rules

25   should be enforced on her behalf, rules that limit

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 144 of 240  PageID 15972
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2142

1  the rights of other employees so that hers can

2  expand without restriction.

3            What do I mean by that?

4            The plaintiff beliefs that Audrey Stone

5  should have known that no matter what message the

6  plaintiff sent, no matter how traumatic or

7  disturbing, that Ms. Stone was never allowed to

8  report it to Southwest Airlines.

9            That is what she said.

10            She could say anything to Ms. Stone, the

11  president.  She could say anything.  As long as it

12  was tied to her religious beliefs, as long as it was

13  tied to her anti-union sentiment.  Which is not in

14  dispute.  It is not.

15            She was an objector since 2013.  She had

16  been objecting to the Stone administration the

17  entire time she was there.  I will come back to

18  that.

19            According to plaintiff, a right to say

20  whatever, whenever, and however should extend to the

21  point of completely eliminating Ms. Stone's rights

22  to be free from traumatic harassment at work.

23            We have -- we have combating rights,

24  combating rights in the workplace, and that is what

25  you are going to decide today.

 1                  The plaintiff believes that once the

 2    graphic video she sent had become the subject of a

 3    coworker complaint, Southwest Airlines then should

 4    have known that they were supposed to ignore

 5    Ms. Stone's complaint, ignore their duty to

 6    investigate.  That is what they are presenting to

 7    you.

 8                  Why?  Because Charlene Carter believes her

 9    rights are more important than other employees',

10    more important than Ms. Stone's to be free from

11    harassment.

12                  Ultimately, according to the plaintiff,

13    even if Ms. Stone complained of the graphic videos,

14    like she should have known not to, and even if

15    Southwest Airlines didn't ignore the complaint, like

16    she thought they were supposed to, Southwest

17    Airlines should not be allowed to discipline her for

18    any speech that she defines as expression of her

19    Christian faith or in dissent of the Union.  No

20    restrictions.  That is what she's told you.

21                  Ladies and gentlemen of the jury, make no

22    mistake, Ms. Carter has no claims to First Amendment

23    speech in this case.  We are not dealing with

24    government regulation.  This is -- this is

25    different.  We are dealing with speech in the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 146 of 240   PageID 15974
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2144

 1   workplace.  Southwest Airlines has the right to

 2   govern their workplace with policies and procedures

 3   to create that culture that you heard so much about.

 4            That is capitalism.  That is what this

 5   country is about.  They have that right.  How you

 6   speak to folks in the workplace matters.  It does.

 7   What you say to them, or about them, it matters.

 8   How you say it matters.

 9            Now, I told you about these conflicting

10   employee rights.  This case is about employee rights

11   in the workplace and how those rights intersect, how

12   they must be balanced.  Unfortunately, plaintiff's

13   approach to this balance is to cyber bully her way

14   past any lines of decency.  That is what Ms. Carter

15   is, a cyber bully.

16            And then when her targeted harassment

17   results in consequence, she claims conspiracy.  They

18   are all out to get me.

19            Ms. Carter is a cyber bully who expresses

20   no remorse, except for when it suits her.  You heard

21   her when she was on the stand yesterday.  She wasn't

22   sad.  She wasn't remorseful about what she said to

23   Audrey Stone.  She was sad at the results, that we

24   were here, that all of this was going on.

25            Now, when she's trying to get her job

1  back, when she thought that was available, you heard

2  the testimony that Mr. McKeeby presented, that is

3  when she showed contrition.

4          Now, social media might be the downfall of

5  us all.  I really believe this.  Social media like

6  Facebook, though, has become the new water cooler.

7  And industries like the airlines, where flight

8  attendants don't have a home office, they are

9  traveling on planes, they are staying in hotels and

10 so where do they gather?  They gather at the water

11 cooler on Facebook.

12         And, man, I will tell you what, they were

13 fighting like mean girls trying to make the drill

14 team.  You heard Ms. Jones take the stand.  Hundreds

15 of social media violations.  This isn't just about

16 Ms. Carter.  The flight attendants were going after

17 each other, all over the place.

18         She's not special.

19         But one of the problems with the digital

20 water cooler is we don't see how our speech affects

21 folks.  Those visual cues of body language and

22 emotional responses, they are absent.  We don't get

23 to see that.  We don't have to deal with how bad it

24 feels to say something hurtful to someone's face, or

25 hurt someone's feelings, or even traumatize them.

1   You don't have to deal with that, so you feel like

2   you can say whatever you want.

3              But the effect on the reader or the effect

4   on the listener is the same.  The person on the

5   end -- the other end of the cyberbullying, the pain

6   is felt in real life.  Not just Facebook.

7              Ms. Carter -- Ms. Carter experienced an

8   abortion firsthand.  Something I would hope no one

9   has to go through.  She suffered, after seeing her

10  aborted fetus in a jar.  And her experience, it

11  haunted her.

12             Ms. Carter experienced pain.  But in that

13  pain, according to Ms. Carter, she also found

14  rebirth.  She found a new path.  Ms. Carter knew the

15  videos she sent to Audrey Stone were graphic.  She

16  wanted Ms. Stone to see what she saw.

17             She wanted Ms. Stone to feel that same

18  pain she did.  Why?

19             Well, Mr. Pryor will tell you, because it

20  was effective.  It was an effective way to convince

21  somebody that they were wrong.  Make them feel pain.

22             But in the workplace, that is harassment.

23  Those videos that Ms. Carter sent Ms. Stone are not

24  protected speech.  They are intended to cause pain,

25  they are intended to harass.

1              All right.  We have this long jury charge

2    that has been presented to us that we all worked

3    very hard on, so I apologize for it being about 60

4    pages, because I did play a part in making it that

5    long.

6              I want to walk through some of the key

7    points in that jury charge, okay?  Before we dive

8    into the specific claims and the elements because I

9    want to give you tidbits, I want to give you some

10   key evidence to consider while you are looking at

11   that charge.

12             But I want to start with jury question

13   No. 1.  It asks about Local 556 and their liability.

14   And it asks, Has Plaintiff Carter proved that Audrey

15   Stone was acting in her official capacity as then

16   president of Local 556 when she reported Plaintiff

17   Carter to Defendant Southwest Airlines?

18             Ms. Stone was an employee of Southwest

19   Airlines, first and foremost.  That never stops.

20   You heard witness after witness, Ms. Stone didn't

21   sign something relinquishing her rights as an

22   employee when she became union president.  You heard

23   every Southwest management person come up there and

24   say No, she retains her rights, she's an employee of

25   Southwest Airlines, she's a flight attendant who

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 150 of 240  PageID 15978
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2148

 1  also happens to be the Union president.

 2          Now, if you believe that Ms. Stone's

 3  intentions were true, and you believe she was really

 4  offended and that those tears on the stand weren't

 5  fake, that she doesn't have some ability to just

 6  magically turn on the water spigot, that she felt

 7  threatened in the workplace, and she made her

 8  complaints as an employee.  As an employee.

 9          The Union president can't make -- the

10  Union can't come and say, "I'm being harassed."  Who

11  can make that complaint?  An employee can.  And she

12  made it as an employee.

13          But let's dig deeper, and let's look at

14  how Ms. Stone made her complaint to Southwest

15  Airlines and those mechanisms.

16          Can you pull up Exhibit 66?

17          We pulled up Ms. Stone and the complaint

18  she made to her base manager, Suzanne Stephenson.

19  You heard throughout the process that if someone has

20  a complaint, where do they take it in?  Where does

21  an employee take their complaint?  To the base

22  manager.

23          That is what Ms. Stone did.  Standard

24  employee protocol.

25          And she informed her base manager,

1  Ms. Stephenson, that -- and if we look into the

2  middle paragraph here -- it says, "While I hold."

3            "While I hold a current position with my

4  Union, I'm a Southwest employee first and foremost."

5            And if you can scroll all the way down to

6  the very bottom, Ms. Stone signs the agreement --

7  all the way down.  Ms. Stone signs the agreement.

8  Audrey Stone, number 74952.

9            That is her employee number.

10            Now, Ms. Stone was also called into a

11  fact-finding meeting by Southwest Airlines, just

12  like all other employees.

13            That meeting took place at the Denver

14  in-flight base because that is where Charlene was

15  based, in Denver.

16            The Union wasn't -- the meeting wasn't set

17  as a special place because she was the Union

18  president.  It didn't take place at the union hall.

19  The meeting didn't place at Southwest headquarters.

20  No.  Just like every other employee, it took place

21  in the base of where you were making the complaint.

22            And what was the company investigating?

23  Harassment and retaliation.  Those are employee

24  rights.  That is what she was complaining of, a

25  violation of her employee rights.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2150

```
 1              Now, let's keep digging a little bit
 2   deeper.  Let's look at how Ms. Carter communicated
 3   with Stone, the messages we are talking about.
 4              Can you pull up Exhibit 65 for me?
 5              Charlene Carter sent her messages through
 6   Instant Messenger to the account of Audrey Stone,
 7   personal Facebook page, Audrey Stone.  We are
 8   looking at it right here.  Period.
 9              Ms. Carter wants to tell you that she sent
10   it to Audrey Stone TWU.  Should we just trust
11   Ms. Carter?  Or should we trust the evidence that
12   Ms. Carter submitted?  These are her documents.
13              If can you pull up Exhibit 103, page 1.
14              All right.  Here we have -- this is the
15   information that Charlene brought into the meeting
16   to present to us showing the Union is one-sided and
17   don't share her beliefs.
18              If you can scroll down to page 32.
19              Same deal.  Here is the hat picture.  Who
20   is it sent to?  Audrey Stone, to her private,
21   personal Facebook page.
22              All right.  Now we also know that
23   Ms. Stone had a union president email address during
24   her tenure, astone@twu556.org.  She usually attached
25   it to the end of her communications, to the end of
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 153 of 240   PageID 15981
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                        Page 2151

 1  her publications.  And we have seen some of those

 2  throughout the trial.

 3          Ms. Carter told you she didn't have that

 4  email address.  I don't find that credible.

 5          She said she had emailed her about other

 6  things.  But not this, not these aborted fetuses.

 7  She didn't send this to the Union office.

 8          Both sides of the communications that we

 9  are looking at show that neither the harassment, nor

10  the subsequent actions of Ms. Stone, were done in

11  her official capacity.  You do not give up your

12  rights as an employee, you do not give up your

13  rights to be free from harassment in the workplace

14  because you are a union president.

15          Now, let's turn to some key language in

16  the claims that affect the Union.

17          The first claim that Ms. Stone -- that

18  Ms. Carter has against the Union is a duty of fair

19  representation claims, and what does that mean?  In

20  the charge, it says that, "Plaintiff Charlene Carter

21  claims that Defendant Local 556 violated the duty of

22  fair representation owed to her under the Railway

23  Labor Act when former Local 556 Union President,

24  Audrey Stone, reported Plaintiff Carter to Defendant

25  Southwest."

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1    That is what she's saying is the breach,

2    turning her in.  That is it.  She believes that

3    under no circumstances could Ms. Stone turn her in

4    to the company.  You heard her, wouldn't have

5    mattered what she said, as long it was tied to her

6    anti-union sentiment.

7            That, agreed, protected.  She did that.

8    She did it for years.  No repercussion, no

9    complaints.  Only one complaint, after she sent a

10   video of aborted fetuses; just one.

11           Now, if we look down to the standard of

12   proof, it says, "A union violates their duty of fair

13   representation when it takes action that is

14   arbitrary, discriminatory, or in bad faith."

15           Let's look at arbitrary.  There is nothing

16   arbitrary here.  It is more likely than not that

17   Ms. Stone truly labored over the decision to report

18   Ms. Carter.  It is something she stewed on.  She

19   went back and forth.  It wasn't an arbitrary

20   decision to turn her in.

21           Can you pull up Exhibit 67, please?

22           If we scroll down to the middle of the

23   page, it says, "Suzanne, part of my message was cut.

24   It should have said, 'I'm personally pro life, but I

25   support others' right to pro choice and don't

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2153

1  believe I have the right to tell them what to do

2  with their body.' And to be sent messages that

3  reference me as a murderer couldn't be further than

4  the truth.  My apologies.  I have edited and cut and

5  pasted and agonized for days."

6              There is nothing arbitrary about this

7  decision.

8              Let's look at bad faith.

9              There is no bad faith here.  It is more

10  likely than not that the videos Ms. Carter sent to

11  Ms. Stone actually traumatized her.  You saw

12  Ms. Stone on the stand.  Those weren't crocodile

13  tears, those were real tears.

14              Ms. Stone had the courage to get up on

15  that stand and tell you why aborted fetus videos

16  affected her so much.

17              Let's remember the testimony.  Ms. Stone

18  worked at a clinic for at-risk youth.  While she was

19  working there, she had to advise two young women on

20  their birth rights and what they should do with

21  those babies and those women were a product of

22  incestuous rape.

23              And Ms. Stone cried her eyes out because

24  she told you she is pro life, she wanted to do

25  everything she could for people to be able to keep

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 156 of 240   PageID 15984
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                        Page 2154

 1  their babies.  But she knew at that point that she
 2  didn't feel comfortable telling those women what
 3  they should do with it.
 4          So that is what Ms. Stone means when
 5  she's -- says she's personally pro life, politically
 6  pro choice.  That was her experience.
 7          Again, not saying right or wrong on
 8  however you want to feel on that.  That is just
 9  Ms. Stone's experience.
10          So is it more likely than not that she
11  made this in bad faith or because it really did
12  traumatize her because of her past experiences?
13          We all carry that around with us, we all
14  carry around our past trauma and past experiences,
15  and it affects us differently.
16          Third prong, discriminatory.  Again,
17  nothing here.  It is more likely than not that
18  Ms. Carter was not treated differently.  Plaintiffs
19  have offered nobody to compare her to.  And
20  certainly nobody else sent Ms. Stone videos of
21  aborted fetuses and was not reported to the company.
22          It is more likely than not that Audrey
23  Stone did not act arbitrarily, in bad faith or
24  discriminatorily when she made the decision to
25  report Charlene Carter.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 157 of 240   PageID 15985
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2155

1              So you will see that question on page 29,

2      right here, Question 2.  We ask you to answer no to

3      that question.

4              Let's move on to the next claim, the

5      Railway Labor Act Retaliation.

6              I'm on page 12.  And it says, "Plaintiff

7      Carter also claims that Defendant Local 556

8      retaliated against her by attempting to discipline

9      her for engaging in union opposition and

10     organizational activity protected by Section 152,

11     Third and Fourth."

12             And then there are some paragraphs in

13     there talking about it.  And it makes my eyes glaze

14     over and bleed a little bit, so I'll make that part

15     easy for you in regard to us.

16             There is no dispute that Ms. Carter

17     engaged in union opposition for years.  But that is

18     the point.  Since 2013, she's been an objector of

19     the Union.  2015, she opposed the tentative

20     agreement on the first contract.

21             She was a vocal recall supporter.  She

22     sent Audrey Stone hundreds of messages that we all

23     agreed were just union dissent.  And at no point was

24     she ever turned in.  By anybody.

25             She wasn't turned into the company until

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1   she crossed the line.

2            All right.  And we are going to work

3   backwards a little bit.  Because the Union has what

4   is called an affirmative defense.  Which means if we

5   can prove that then President Stone would have

6   reported Plaintiff Carter to Southwest Airlines,

7   even if Plaintiff Carter had not engaged in activity

8   protected by the RLA statutes that you have been

9   provided, that we are not liable.  I'm going to show

10  you a question that I want you to answer "no" to on

11  that.

12           So what does that mean?  We believe that

13  the aborted fetus videos, in and of themselves, are

14  not, by definition, religious, nor do they contain

15  protected union dissenting speech.  The video

16  themselves are simply videos of aborted fetuses,

17  okay?

18           It gets mixed in with language, and that

19  is what matters.  If Ms. Stone would have received

20  the harassing videos with no protected commentary by

21  Ms. Carter, she still would have turned her in.  If

22  there was no language with the videos, she would

23  have got the videos, she would have watched them,

24  she still would have been harassed, she still would

25  have felt pain, she still would have turned them in.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 159 of 240   PageID 15987
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2157

 1          Can you pull up Exhibit 89?

 2          And these are the notes from the

 3   fact-finding meeting.  And if we scroll down to

 4   page 2, we can look in here, in the bottom part

 5   here, and it says, "I went on Facebook to check, and

 6   there was a message from her."  Referring to

 7   Charlene Carter.

 8          "I opened the message.  And it had a video

 9   that I couldn't look at because I was in Denver

10   airport.  I read the text.  I read the text and I

11   closed it out."

12          At no point after that does Ms. Stone

13   express that she was traumatized or that she was

14   reporting someone.  Because what is in that message?

15          You can scroll down on 89.  Let's look at

16   that message.  Continue down, it will be underneath

17   the notes.

18          I apologize.  Pull up Exhibit 66.  I get

19   them -- they are very similar documents.

20          If you can go down to the messages below

21   that.  There it is.  This is what we are looking at.

22   Here is the text that she read.

23          "This is what you supported during your

24   paid leave with others at the Women's March in DC."

25          Right?  There is your anti-union speech,

1    protected.

2             "You truly are despicable in so many

3    ways."

4             Not nice, but not illegal.

5             "By the way, the recall is going to

6    happen."  More union-protected speech, dissent.

7             "And you are limited in the days you will

8    be living off all the SWA FAs."  Southwest Airlines'

9    Flight Attendants.

10            "Can't wait to see you back on line."

11            She didn't report her at that point.

12            The text discusses the Women's March.  The

13   text discusses the recall petition.  It mentions

14   abortion is murder.  We have the trifecta, right?

15   We have some religious speech, we have some

16   anti-union speech.  The text itself is kind of

17   nasty.  That is what I'm talking about when I say

18   Ms. Carter is a cyber bully.

19            Just because it is protected speech,

20   doesn't mean it is nice.  It doesn't mean it is a

21   respectful way to talk to your coworkers.

22            And on that issue, is Question 4.  That

23   is, do you find that the Defendant Local 556 has

24   proved that Local 556 would have reported Plaintiff

25   Carter to Defendant Southwest even between Plaintiff

 1   Carter had not engaged in activity protected by the
 2   Railway Labor Act?
 3            Yes.  We have.  He read the text.  That is
 4   not where the outrage lies.  The outrage lies in
 5   videos of aborted fetuses.  It was meant to harm
 6   her, it was meant to harass her, it was meant to
 7   cause pain.  That is not protected.
 8            All right.  So now we are going to look --
 9   we are going to work back into the Railway Labor Act
10   now that we have talked about our affirmative
11   defense.  I believe we do meet that.
12            But just in case, let's go back.  The
13   plaintiff must prove, in regard to this claim,
14   beyond a preponderance of the evidence, that
15   Ms. Stone reported Plaintiff Carter in Stone's
16   official capacity as president of Local 556.
17            But we have already covered that.  So I'm
18   not going to beat you over the head again with my
19   argument, even though I think it is great.
20            If you agree that she did act in her
21   official capacity, you go straight to Question No. 3
22   and you answer no.  Move on.  That is it.
23            If wasn't made in official capacity, you
24   are done with that one.
25            All right.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                  Vol 7 July 13, 2022                    Page 2160

```
 1                    Back to the top.
 2                    Again, we go back to that element No. 1,
 3   "That Plaintiff Carter engaged in activity that is
 4   protected by Section 152."  We don't dispute that.
 5   I don't think anyone in the room disputes that
 6   Ms. Carter had union opposition.
 7                    No. 2.  "Plaintiff must prove, beyond a
 8   preponderance of the evidence, that former Local 556
 9   President Stone reported Plaintiff Carter to
10   Defendant for discipline."
11                    Well, turning somebody in, it seems pretty
12   natural that it would be for discipline.  But they
13   have to prove beyond a preponderance of the evidence
14   that is what it was for.
15                    Let's pull up the Exhibit 89, page 4 at
16   the top.
17                    DG, I believe is Denise Gutierrez, who you
18   heard from, "What do you want Southwest to do?"
19                    Audrey Stone responds, "Make Charlene and
20   Chris Click stop."  She doesn't ask for anyone to be
21   terminated.  She doesn't ask for anyone to be
22   disciplined.  She asks for intervention for help to
23   be free from harassment.
24                    What Southwest does with that report, that
25   is up to them.  That is their decision.
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 163 of 240   PageID 15991
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2161

1              You can pull that down.

2              So if you agree with that interpretation,

3    you turn to Question 3 on page 30, and again, you

4    answer "no."

5              Then we move on to the last element of

6    their RLA claim.

7              "That Plaintiff Carter's protected

8    activity was a substantial or motivating factor in

9    Audrey Stone's decision to report Plaintiff Carter

10   to Defendant Southwest for discipline."

11             All right.  Was it a motivating factor in

12   her decision to report her?  Let's talk about that.

13   And I don't want to go into a lot of depth on this,

14   because we have belabored the point on it.

15             Ms. Carter had been opposing the Union for

16   decades.  2013, while attending a union meeting, she

17   threatened to decertify the Union.  She didn't like

18   what she heard.

19             A serious threat in a union -- in a union

20   shop.  We are going to dismantle you, we are going

21   to tear you down.

22             No complaints were ever made against

23   Ms. Carter, to the company.  She became a vocal

24   union objector later that year.

25             In 2015, she opposed the first TA

 1   contract.  Still no complaints against Ms. Carter.

 2            After the first contract failed,

 3   Ms. Carter became a vocal supporter of Jeanna

 4   Jackson's recall petition.

 5            She tried to recall the entire executive

 6   board with a fraudulent document.

 7            From there, Ms. Carter proceeded to send

 8   dozens and dozens and dozens of rude messages to

 9   Ms. Stone, all the way through 2017.  Calling her

10   morally bankrupt, corrupt.

11            Now, protected.  She's all talking about

12   it in terms of her union dissent.  Still, no

13   complaints.

14            Ms. Carter engaged in intense and vocal

15   anti-union speech and activity for at least a

16   four-year period, all the way through the entire

17   presidency of Ms. Stone, through a reelection that

18   she won.  No complaints.

19            So I ask you, is it more likely that

20   Ms. Stone reported Ms. Carter for sending her videos

21   of aborted fetuses?  Or that after years of

22   opposition, Plaintiff Carter's protected activity

23   was a substantial or motivating factor in the

24   decision to report her to Southwest Airlines?

25            If you agree that the report was more

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 165 of 240   PageID 15993
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2163

1    likely than not about the videos, turn to question

2    number 3, answer "no."

3              Let's talk about Title VII claims.

4              What is Title VII claims?  Title VII

5    protects employees -- all employees from

6    discrimination and harassment in the workplace for

7    your race, for your gender, for your national

8    origin, amongst other things.

9              It is an employee-rights statute, one of

10   the ones that Ms. Carter doesn't believe applies to

11   Ms. Stone anymore because she's the union president.

12   That is stripped from her.  She couldn't make a

13   complaint about that.

14             So Ms. Carter believes that the act of

15   Ms. Stone turning her in to the company was because

16   of the sincerely-held religious beliefs that were

17   included in her Facebook messages.

18             Okay.  I get that.  I mean, frankly, I

19   don't think it comports much with the other part of

20   her story, because all I have heard about for most

21   of this is that -- that Ms. Stone had a beef with

22   her because she was a union objector, because she

23   was a union dissenter.  And now we built in

24   religion.  Let's look at that, though.

25             Similar to most of the individuals in

 1   this -- that you have heard from in this case,

 2   Ms. Stone testified that she was pro life.

 3   Politically pro choice, to be fair, but pro life.

 4              So she's asking you to believe that Audrey

 5   Stone, someone who shared her religious views on

 6   abortion, was going to discriminate against her for

 7   her beliefs supporting abortion?

 8              I don't see the connection there.

 9              What else can we have?  We don't have a

10   single derogatory comment by Ms. Stone about

11   Ms. Carter's religion.

12              Who knows, we don't what religion

13   Ms. Stone is.  Nobody has asked her.

14              And they are also asking you in this claim

15   to ignore that she can't tell you about any other

16   employees who are treated more favorably because of

17   their religion.

18              Were there other non-Christians that

19   weren't turned in?  No evidence of that.  In fact,

20   there is no evidence of anybody being treated more

21   favorably than Ms. Stone.

22              Let's talk about reasonable accommodation.

23   I don't exactly understand the reasonable

24   accommodation claim against the Union, to be frank

25   with you.  She's urging today -- she's arguing today

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 167 of 240   PageID 15995
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2165

1  that she wanted a reasonable accommodation to send

2  the messages she sent to Ms. Stone.  Because she

3  wanted to say whatever she wanted to her coworkers

4  as long as it is a sincerely-held, religious

5  observance, belief or practice.  With no limits.

6           The Union doesn't have any conditions over

7  the terms of and conditions of Ms. Stone's

8  employment.  We can't say what she can or can't do

9  on social media.  Southwest can.

10          What accommodation could we provide?  The

11  only accommodation that we could possibly provide

12  would be to request that Ms. Stone not turn her in

13  to the company, to strip her of her employee rights.

14          That is what Ms. Carter is asking you to

15  do with her religious accommodation claims.  She

16  doesn't believe Ms. Stone, no matter how bad she

17  felt harassed or discriminated against, should be

18  able to turn her in.

19          Let's talk about some other practical

20  matters.  She never asked the Union for any sort of

21  religious accommodation.  No, she just sent nasty

22  videos; hope for the best.

23          So how -- and let's talk about notice.

24  Ms. Carter is all over the place.  How could we know

25  what she wanted?  She told Becky Parker, in the

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 168 of 240   PageID 15996
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2166

1   exhibits that Mr. McKeeby showed you, that she

2   wouldn't do it again.

3           Okay.  So if you are not going to do it

4   again, what accommodation do you need?  I don't

5   know.

6           She told Mike Sims that she would stop.

7   Okay.  So what accommodation do you need?  I don't

8   know.

9           Because of that, we ask you to answer "no"

10  on all of the religious discrimination claims.

11          I would like to talk to you about damages.

12  One of the first sections that is going to come up,

13  and it is an important one, it is on page 21, it

14  says, "Local five" -- it says, "You may not consider

15  awarding Plaintiff Carter punitive damages against

16  Local 556 in relation to her claim of violation to

17  her claim of violation of the duty of fair

18  representation under the Railway Labor Act."

19          Okay?

20          Take it off the table.  If you were

21  thinking about it, the judge is telling you right

22  here, you cannot consider it.

23          It is for legal reasons we are not going

24  to get into.

25          You may award punitive damages if

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 169 of 240   PageID 15997
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2167

1   Plaintiff Carter proves by a preponderance of the

2   evidence that the individual who engaged in the

3   discriminatory act or practice was acting in a

4   managerial capacity.

5           That is not us.  That is not talking about

6   us.  That doesn't apply to us.  Ms. Stone is not a

7   manager.

8           And the third prong of it is that he or

9   she acted with malice or reckless indifference to

10  Plaintiff Carter's federally protected right to be

11  free from discrimination.

12          Malice or reckless indifference.

13          Is it malice or reckless indifference if

14  Ms. Stone turned in Ms. Carter because she felt she

15  was being harassed?  Is that malice or reckless

16  indifference?

17          The answer to that is no.

18          Now, they give us a little more

19  instructions if we go down the page.  It says, "In

20  determining whether the decision-maker for Southwest

21  or Local 556 was a supervisor or manager for Local

22  556, you should consider the type of authority that

23  person had over Plaintiff Carter and the type of

24  authority for employment decisions."

25          Ms. Carter was not a member of the union.

 1  The Union had no authority over Ms. Carter.

 2  Clearly.  She did whatever she wanted.

 3          It says, "Or Local 556 authorized that

 4  decision-maker to make."  Again, 556 has no

 5  authority over employment decisions at Southwest

 6  Airlines.

 7          When you come to a question on punitive

 8  damages, if you should make it that far, the answer

 9  is zero against the Union.

10          The first question you are going to answer

11  on damages is lost wages.

12          It says, "What sum of money, if paid now

13  in cash, would fairly and reasonably compensate

14  Plaintiff Carter for lost wages and benefits, if

15  any, if Defendant Local 556 caused Plaintiff

16  Carter."

17          Let's look at the cause language.

18          We don't make decisions at Southwest

19  Airlines.  They made the decision to terminate her.

20  I would agree rightly so.  I really do believe that.

21          And just as a kind of breaking point, the

22  Union and Southwest Airlines, while we have a good

23  relationship, we are generally on the other side of

24  the table negotiating, get heated.  We are not

25  buddy-buddy in that regard.

 1              And you heard from Southwest manager after

 2   Southwest manager after Southwest manager, because I

 3   tried to get in and out of there real quick.  And

 4   generally only asked them a couple of questions, and

 5   that was, "Did the Union unduly influence your

 6   investigation?"  "No."  Every one of them.

 7              "Did the Union unduly exert any undue

 8   influence or pressure on your decision to terminate

 9   Ms. Carter?"

10              Every last one of them, "No."

11              We didn't cause Ms. Carter's termination.

12   In fact, it is on the other side of it.  We tried to

13   get her her job back, and we did.

14              If it comes to the issue of back pay, it

15   says, "Lost wages sustained between March 14, 2017,

16   and the date of the jury decision," the answer to

17   that is "zero" to the Union.

18              "Lost benefits sustained between March 14,

19   2017.  And the date of the jury's decision," that

20   should also be "zero."

21              No matter how you feel about Audrey Stone,

22   we have a checks-and-balances system built in, and

23   that checks-and-balances system got her her job

24   back.

25              The fact that she didn't take it, we

 1   should not be held financially responsible for that.

 2            Non-economic damages against Local 556 for

 3   Title VII claims.

 4            "What sum of money, if any, if paid now in

 5   cash, would fairly and reasonably compensate

 6   Plaintiff Carter for her emotional distress, pain

 7   and suffering, inconvenience, metal anguish, loss of

 8   enjoyment of life that Defendant Local 556 caused

 9   Carter?"

10            Ms. Carter testified that she experienced

11   these types of damages after she was terminated.

12   After.

13            Not after she was turned in by Ms. Stone.

14   After she was terminated.  Again, we have no -- we

15   have no influence on Southwest Airlines's decision

16   to terminate Charlene Carter.

17            If it comes that far, the answer of

18   apportionment to the Union should be "zero."

19            Questions 17 through 21 are going to talk

20   about nominal damages.

21            And what that is, is if you believe there

22   is some sort of technical violation in this matter,

23   and Ms. Carter didn't actually suffer any injury,

24   what might you toss her?  We still say "zero" for

25   that as well.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 173 of 240   PageID 16001
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                    Page 2171

1              Finally, last portion of damages, front

2  pay.

3              "What sum of money, if paid now in cash,

4  would fairly and reasonably compensate Plaintiff

5  Carter for future lost wages, if any, defendant

6  Local 556 caused Plaintiff Carter?"

7              Front pay.  Into the future.

8              Again, the Union has no control over the

9  terms and conditions of Charlene Carter's

10 employment.  Front pay is in lieu of Ms. Carter not

11 going back to work because Southwest wouldn't let

12 her back to work.

13             That is their decision.  The Union

14 shouldn't be held liable for an amount of money

15 because Charlene and Southwest Airlines figure it

16 out.

17             That number should be zero if it comes to

18 it.

19             Mitigation questions.

20             "What did Ms. Carter do to mitigate her

21 losses in this case?"

22             I'm not going to belabor the point, but

23 you heard Ms. Carter applied for a few airlines.

24 One of them didn't get back to her, and she didn't

25 really follow up.  She still doesn't know why she

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1  didn't get any of those positions.

 2          But what was Ms. Carter doing before her

 3  termination?  She was working full time trying to

 4  get her school up and running.  Okay?  I commend

 5  that.  A lot of educators in my family.  I respect

 6  education.  I respect teachers.

 7          But Ms. Carter was trying to be the

 8  academic coordinator for a new school, line up

 9  curriculum, she doesn't have a teaching certificate,

10  she doesn't have a -- she doesn't even have a

11  bachelor's in education.

12          I respect her moxie, but she was not

13  qualified to be doing what she was doing.  She

14  wasn't.  The Union and Southwest shouldn't be held

15  responsible economically for those decisions.  I

16  respect them, but that is her choice.

17          You have heard all of the evidence today.

18  You have been instructed on the law now.  And you

19  have heard all of the parties' arguments.

20          Now comes the time when the community, our

21  community, my community -- born and raised in

22  Dallas, Texas, I live down the street from this

23  courthouse -- your decisions affect everybody in

24  this room.  The good folks like y'all, who have

25  answered the call to this civil jury service, you

1    get to have a say in what is right and wrong.  This

2    is your day.  This is important.

3            You should be excited about that.  You get

4    a say in what is fair and what is just.  And the

5    questions raised by this case regarding employee

6    rights, both the right to expression -- very

7    important, I don't ever want to downplay that -- and

8    the right to be free from harassment at work.  That

9    is what you have presented before you.  Because both

10   of those are integral to everyone's lives.  We all

11   work -- well, some of us might be retired, if we are

12   lucky enough; we will get there one day.

13           But your verdict can stand as the proper

14   balancing of those interests.  Your verdict.  It can

15   make clear that while the law is meant to encourage

16   conversation in a thriving marketplace of ideas,

17   that does not extend a blanket protection over

18   workplace attempts to cause pain and trauma and

19   harassment to other employees.

20           It doesn't go that far.  No matter how

21   effective plaintiff and her lawyers think the tactic

22   is.

23           This is a case about someone who demands

24   that she be allowed to say whatever, whenever, and

25   however she wants to.  No matter the context it is

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 176 of 240   PageID 16004
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2174

 1  in.  No matter the pain it causes.

 2           Your verdict can make clear that is not

 3  how it is.  That is not how it should be.  And that

 4  everybody's rights deserve respect in the workplace.

 5  Not just Charlene Carter's.

 6           I look forward to hearing back from y'all,

 7  and thank you for my time.

 8           THE COURT:  Okay.  Quick sidebar.

 9           (Thereupon, the following proceedings were

10      had at sidebar:)

11           MR. PRYOR:  Do you have a question for me?

12           THE COURT:  Yeah.

13           MR. PRYOR:  Can I have an objection as

14  long as --

15           THE COURT:  Does anyone have an objection

16  that a standard disclosure won't solve?

17           MR. PRYOR:  I do not.

18           THE COURT:  Okay.  I'm going to give you

19  10 minutes --

20           MR. PRYOR:  Thank you.

21           THE COURT:  -- because you went up to an

22  hour.  I think that is equitable.  So go for your

23  10 minutes and I'll let you -- do you want the

24  clip-on mic?

25           (Thereupon, the sidebar was concluded and

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 177 of 240   PageID 16005
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2175

1            the following proceedings were held in open

2       court:)

3                 MR. PRYOR:  I will stay up here.  It

4   turned out I don't --

5                 THE COURT:  Okay.  He's got his last

6   10 minutes for the rebuttal.

7                 So you may proceed, Mr. Pryor.

8                 MR. PRYOR:  I'm going to have to read from

9   my notes, so I will stand here.

10                Okay.  Let me respond to some of this.

11                First of all, the arguments about the

12  affirmative defense, that if you just look at the

13  video and forget the language -- I trust you are

14  going to read this.  The affirmative defense is

15  talking if you have got some other reason to report

16  Ms. Carter that you would have reported for and the

17  same thing would have happened, and then that is

18  fine.

19                But you can't separate this communication.

20  This communication was her religious activity and

21  her Union activity.  If there was something else, if

22  she -- like they want to accuse everyone else -- if

23  she embezzled money from the Union, go for it.  Make

24  whatever charges you want.

25                That is not what the affirmative defense

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

 1  is about, that you can separate this communication.

 2              But in fact, the video itself was still

 3  religious.

 4              And by the way, she didn't report just the

 5  video.  And she reported the video as being part of

 6  the religious activity, and she admitted the

 7  anti-union activity.

 8              So you can't separate it.  I know you will

 9  read the instructions.

10              The damages.  I forgot to mention, when

11  you read these instructions, you will see that --

12  you are asked the damage questions on the Union, you

13  are asked the damage questions about Southwest

14  Airlines, and you are supposed to give the full

15  measure of damages each time.

16              The judge is telling you, when you read

17  the instruction, he will take care of it.  You don't

18  have to worry about double recovery.  Just say what

19  her damages were each time.

20              Now, counsel says, Well, the Union can't

21  be responsible for that.

22              First of all, we are not the manager.  Oh,

23  my gosh.  The instruction says "manager of the

24  Union."  She was the president; of course, she's the

25  manager.

1              Then he says, well, Southwest Airlines

2    made the termination decision.

3              But for the report by the president of the

4    Union, she would not have been fired.  That means

5    they were a causing effect, that means they are also

6    responsible for the damages.

7              Oh -- these are just random points, I took

8    a few notes.

9              She's not following up with the airlines.

10   She interviewed with every airline she could.  Most

11   weren't hiring.  She did get an interview or two --

12   and by the way, she's still got her resumes on file,

13   she's always -- she got a couple of emails back, but

14   once again, didn't get the job.

15             She got stymied at the interview phase.

16   What do they ask you at your interview?  Why did you

17   leave your last job?

18             You got fired for workplace bullying?  You

19   are a cyber bully?

20             Tough to get a job.

21             And I hear a lot about protections at

22   work.  They didn't even ask if the communications

23   were at work.  But you know, you have heard the

24   evidence, it wasn't at work.  It was part of her

25   union activity.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Page 2178

```
 1              The last chance agreement.
 2              Counsel says he still doesn't know why she
 3  doesn't want to sign that agreement.
 4              The agreement says you will be terminated
 5  if anything else happens.
 6              And you have got to keep following these
 7  same policies that we just fired you for.  So when
 8  you engage in a complaint to your union, when you
 9  want to post something about your religious beliefs,
10  you are going to get fired.
11              And do you know what else the agreement
12  says?  There is nothing you can do about it.  You
13  agree.  If you get fired in the future for whatever
14  reason, you will take no action against Southwest
15  Airlines.
16              But he doesn't -- he's telling you he
17  doesn't know why she didn't sign it.
18              He's talking about how upset the Southwest
19  Airlines employees were about looking at this video.
20              I'm going to talk about the video at the
21  end.  But the -- she didn't send them to the
22  Southwest Airlines's employees.  She sent it to her
23  union president to complain about her dues, how her
24  dues were being used.
25              And counsel for the union actually said
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 181 of 240   PageID 16009
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2179

1   she sent it to be mean, to hurt her.

2            She sent -- she told you why she sent the

3   video.  She doesn't want her money going for that.

4   And she -- whenever she gets a chance, wants tos to

5   tell someone that this is taking a life.  That is

6   the reason she does it, to save babies, not to hurt

7   people.

8            That is offensive.

9            Oh, that we are selling a conspiracy.  No,

10  we are selling facts.  We don't have to sell a

11  conspiracy.

12           When Ms. Carter sent her communications to

13  her Union president, she was engaged in union

14  activity.  And when she got reported, she got

15  reported for engaging in protected union activity.

16           If it had just occurred one time and there

17  had never been another communication, it wouldn't

18  matter.

19           But we did think you might like a little

20  context.  And it shows that, wow, they were going

21  against a bunch of other people.  And every single

22  one of the people they were complaining about, every

23  single person that they talked with Southwest about

24  going after, was someone that was opposed to the

25  current union leadership.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 182 of 240   PageID 16010
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2180

1              And by the way, they didn't put a single

2    union person on the stand to refute.  Charlene,

3    she's just making facts up.

4              They could have put someone on and said,

5    no, that -- what she is saying is not true.

6              She told you about Mr. Click; she told you

7    about Melissa Smith getting a $300,000 verdict or

8    whatever.

9              They were welcome to come in and refute

10   that as to why she's upset with her union.  Not one

11   witness.

12             Exhibit 134, I think he said that's the

13   recall petition.  He said there are whiteouts and

14   there are dead people.  And when you get the report,

15   the report of the people appointed by the people who

16   are to be recalled and not a single document

17   attached to it.

18             Regardless, it doesn't even matter if

19   Charlene is right or wrong about her union -- I

20   think she's right -- but she's entitled to complain

21   about it.

22             Okay.  Let's make sure there weren't any

23   couple of minor points.

24             All right.

25             They have thrown down the gauntlet to you.

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

1    And it is really odd that the Union is saying that

2    the company should be able to get involved in union

3    activity, and apply Southwest's policy to union

4    activity.

5            The jury instruction on page 13 tells you,

6    "All union oppositional and organizational activity

7    is protected unless it, one, constitutes a threat."

8            Nobody found a threat here.  Even

9    Southwest, when they did their investigation, "I

10   will see you on line," which is her saying, I will

11   be glad when the Union is not paying for you

12   anymore, there is no threat.

13           "Or, is a false statement made with

14   knowledge of falsity."

15           No one has gone to Ms. Carter and said,

16   you are intentionally making up facts here.  This

17   isn't true.  So those don't apply.

18           So now, if it is union activity, it is

19   activity -- it is protected if it is intemperate,

20   abusive, insulting, or hyperbolic.  That is

21   protected.

22           And what Southwest has told you, is that,

23   that doesn't matter, that you are still an employee.

24   And if someone complains, then we are going to apply

25   our policies, and our policies require you to be

1  nice to each other.  That is exactly what it says.

2            I'm sorry, was there an objection?

3            MR. GILLIAM:  Eight minutes.

4            MR. HILL:  No objection.

5            MR. PRYOR:  Sorry.

6            I'm ready to rumble on this issue.  I'm

7  sorry.

8            This is -- they are throwing down the

9  gauntlet to you.  They are telling you that their

10 policies trump this law.  And it does not.  You are

11 entitled to complain to your union.

12           And in the same manner, their policies do

13 not trump her desire to express her religious

14 beliefs.  And they tell you, if you want to do that

15 and you do it in an intemperate manner, our policies

16 allow you to be fired.

17           They didn't even consider it, though.  And

18 they certainly are standing here telling you that is

19 what they are going to do.

20           And when he said, I'm here asking for

21 $2 million, that is not what I said.

22           I said that is not enough.

23           That is a speeding ticket.

24           That will not get their attention to

25 follow what the law requires and to protect people.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 185 of 240   PageID 16013
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2183

1  And quit using it to, as Ms. Carter talked about in

2  her president's message -- or Ms. Stone, the

3  president of the Union, says that social media

4  policy is being used to take away our rights.

5              Of course, that was until the Union

6  decided to start using themself -- using that policy

7  themselves to take away rights.

8              But no doubt about it, she -- one of their

9  witnesses said they have hundreds of complaints

10  about social media policy.

11             They are applying this however they want,

12  to whatever employee they want.

13             And everything is workplace.  You are down

14  in Cabo and you are on the beach, that is workplace.

15  They have sat here and told you, we are going to

16  apply these workplace policies.  We are asking you

17  to read these instructions.  Follow the law.  Follow

18  these facts.

19             Ms. Carter's rights are entitled to be

20  protected.

21             She engaged in union activity.  It is

22  protected.

23             She engaged in religious speech.  It is

24  protected.

25             Was it abusive?  That is opinion.  But

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 186 of 240   PageID 16014
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2184

 1  even if it is abusive, even if it is -- whatever the
 2  definition from Webster I looked at -- it is as over
 3  the top as you can come up with abusive, it is
 4  protected unless it is a threat of physical
 5  violence, unless it is illegal, unless it is
 6  defamatory.
 7            And she engaged in that.  We ask you to
 8  protect that.  This is her chance for that.
 9            And I am glad for you, too, that you,
10  first of all, don't have to listen to us anymore.
11  And that you can finally talk to each other.  And we
12  do all appreciate your service.  Thank you.
13            THE COURT:  Thank you, Mr. Pryor.
14            Any need for a sidebar?
15            MR. McKEEBY:  Yes.
16            (Thereupon, the following proceedings were
17      had at sidebar:)
18            MR. McKEEBY:  It's specifically to the
19  comment about communications to subsequent employers
20  and having to tell them about the reason she was
21  terminated, there is nothing in the record about
22  that.  And I think that warrants a specific --
23            MR. PRYOR:  I didn't say she did.  I said,
24  "Tell me what happens when you go for a new job."
25            Everybody knows they ask you that

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2185

1  question.  That is a comment on the evidence.

2            MR. McKEEBY:  That was making up evidence,

3  is what it is, and I think it warrants a specific

4  instruction.

5            THE COURT:  Okay.  So I will make a

6  reference to it.  I'm not going to dwell on it.

7            MR. PRYOR:  To that?

8            THE COURT:  Well, but it is still in the

9  record.  Right?

10            MR. PRYOR:  It is a comment on the

11  evidence, your Honor.  If we are going to that, then

12  I have got a list of their comments on the evidence.

13            MR. McKEEBY:  That is not a comment on the

14  evidence.

15            MR. PRYOR:  I did not say she went to it.

16  I said, when you go to look for a job and they

17  interview you, what do they ask you?

18            That is really -- I don't think I have

19  stepped over a line.  And to tell the jury that I

20  stepped over the line on that?  It is a comment.

21            THE COURT:  I'm not going to dwell on it,

22  but I'm going to vaguely reference it.

23            MR. PRYOR:  Dwell on it, you're gonna

24  mention -- it is dwelling by being the only thing

25  you mention.

1            THE COURT:  Dwelling is spending an hour.

2   Right?

3            MR. McKEEBY:  And I'm not asking you to

4   tell them that he stepped over the line.

5            THE COURT:  So I will say this, it is the

6   one thing in your closing that I wrote down.

7            MR. PRYOR:  It was so effective, Judge.

8            MR. McKEEBY:  That's the only thing I

9   wrote down too.

10            MR. PRYOR:  All right.  I get -- I object.

11            THE COURT:  And again, I'm not --

12            MR. PRYOR:  That's all I can do.

13            THE COURT:  I get that.  I'm not going to

14   beat you up over it.  I will overrule your

15   objection.  I will mention it as briefly as I can.

16   And I will send them back to deliberate.

17            MR. McKEEBY:  That's fine, Your Honor.

18            (Thereupon, the sidebar was concluded and

19       the following proceedings were held in open

20       court:)

21            THE COURT:  You are getting the case.  We

22   are so excited.  Okay.  So I'm going to give you my

23   standard disclaimer.  This is something I said after

24   opening argument from the lawyers.

25            Remember, lawyer argument isn't law or

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 189 of 240   PageID 16017
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2187

 1  evidence.  Right?  The law is what I read to you

 2  this morning in the jury instructions.  You have a

 3  copy with you.

 4            It is also not evidence.  There was a

 5  comment that someone brought up about interviewing

 6  for other jobs, and so, you have got to go back and

 7  check those comments against the record and figure

 8  out what is evidence from what witnesses said, what

 9  documents showed.

10            What I will say is, tomorrow and Friday,

11  assuming y'all are deliberating then, we are going

12  to have another judge -- not me -- who is presiding

13  over this case.  I have got a conference that I am

14  previously booked at that I am supposed to speak at

15  out of state.

16            But Judge Kinkeade has graciously agreed

17  to preside over this case.  He is older than I am,

18  wiser I am.  I have got a picture of him here for

19  you.  You can see this is Judge Kinkeade I've got in

20  a headlock.  He is awesome.

21            So you will see Judge Kinkeade if you come

22  back into the courtroom on Thursday or Friday.

23            If you are deliberating into Monday, I'm

24  back in action and I'm your judge again then.

25            Your first thing when you go back before

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 190 of 240   PageID 16018
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2188

1  you go to lunch, pick a foreperson and a schedule at

2  least for today.  The only reason I ask you about

3  picking a schedule is, remember, we operate on your

4  timetable now.  And I need to tell them when they

5  need to be near the courtroom.  And that is any time

6  that you are not at lunch or haven't left for the

7  day.  Right?

8              So if you say you want to stay till 6,

9  fine by us.  Just tell us what you want to do.  And

10  I will also make sure the air conditioners are on

11  and the lights are on.  Because in government

12  buildings, sometimes they turn off between 5 and 6.

13             One side note on deliberations.  You have

14  got to all be deliberating.  So if one of you has to

15  go to the bathroom, pause those deliberations and

16  just take a break.

17             Okay.  So you will get your exhibits soon;

18  in electronic form pretty quickly, and hard copy a

19  little bit after that.

20             We wish you the best.  We thank you for

21  paying such careful attention to this case.  It is

22  important to everyone involved.

23             So now I'm going to modify my last

24  instructions to you.

25             You can talk to your fellow jurors about

1  this case now.  You can't talk to anyone else about

2  the case.  And you can do as much research on the

3  evidence as you want, you just can't do any outside

4  research.

5          With that, let's all rise for the jury.

6          (The jurors exited the courtroom.)

7          THE COURT:  Okay.  Now, see, I was trying

8  to be soft.  I didn't even say it was Pryor and what

9  he said was not evidence.

10          MR. PRYOR:  Hey, your Honor, I didn't even

11  hear what you said.  I thought you forgot, but

12  apparently you didn't.

13          THE COURT:  I was trying to be nice,

14  right?

15          MR. PRYOR:  What did you say?

16          THE COURT:  I said that lawyer argument is

17  not evidence.  So for example, it came up that

18  someone said "interviews with others," and you have

19  got to go back and compare that against the

20  evidence.

21          MR. PRYOR:  Fair enough.

22          THE COURT:  Okay.  So remember to get your

23  cell phone numbers to Mr. Frye if you haven't

24  already.  We had talked about if you have got a

25  lawyer within 15 minutes of the courthouse, that is

 1   good enough for today.

 2           As soon as we get a jury note that they

 3   have picked a foreperson or a schedule for today, we

 4   will email that to y'all, but we will see if anyone

 5   is in the courtroom.  If you are here, we will just

 6   give it to you right then and there.

 7           And if we get a jury note or verdict back

 8   in later on today, obviously we would scan and email

 9   the jury note so you can see it on your way back

10   here.  We will call you if no one from your team has

11   showed up.

12           If it is a verdict, we don't scan it and

13   email it.  I have got to publish it in open court

14   once the foreperson gives it to me.

15           As far as the last thing I have on my

16   list, jurors talking to y'all.  I ask y'all to not

17   contact them, but I am going to tell them if they

18   want to talk to y'all, they can after their

19   deliberations are over and I have accepted a verdict

20   from them.

21           I think y'all have been professional

22   throughout this case and have earned that right.  I

23   don't always give that right in my cases, but I

24   think y'all have earned it.

25           I think y'all have done a great job trying

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 193 of 240   PageID 16021
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2191

 1  this case.  The jury trial is a dying art.  And

 2  y'all have done an excellent job the last two weeks

 3  of preserving that.  We have got a lot of folks in

 4  the courthouse who are here for the summer who are

 5  interning who have been watching this trial, and so

 6  you are doing a good job helping show them what an

 7  effective trial is like.

 8              So thank you.  Give us five stars on Yelp

 9  for the Dallas courthouse, if you can.

10              Any other questions, thoughts, concerns?

11              MR. PRYOR:  Do you meet with counsel and

12  discuss the verdict before it is read in open court?

13              THE COURT:  So I don't, but here is what I

14  will say on this one -- and I will suggest this to

15  Judge Kinkeade too -- is normally I just check it to

16  make sure that it is legally compliant before I

17  publish it.  And then I publish it, then I accept it

18  and discharge them.

19              This one could be tricky, right, depending

20  on what some of the answers are.  So if it is me who

21  is taking the verdict, I'm still going to check it

22  to see if I think it is legally compliant.  I will

23  publish it either way.

24              Before then, before I excuse them, I might

25  call a sidebar and see if y'all agree with me that

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2192

1  we have a legally compliant verdict.  Because we

2  have all talked about in the charge conference

3  yesterday several ways in which there might be

4  issues we can't unravel as a matter of law in

5  post-verdict brief.

6            MR. PRYOR:  And that is really why I was

7  asking.  I kind of like just finding out in the

8  courtroom.

9            But with this verdict form, you know, I

10 guess if you look at it and you decide on its face

11 you don't see any problem, just wait and hear in

12 court.

13           But I was concerned that I might not get

14 so involved, that by the time you have read it and

15 we are done, I see a problem.

16           THE COURT:  Yeah.  And I will say this, my

17 view is that if I publish the verdict, and even if I

18 accept it, that is not the same as entering judgment

19 on it.

20           The thing I don't want to do is excuse the

21 jury if we think there is more work that they need

22 to do based on a conflict in answer or something

23 thing like that.

24           So, you know, I'm inclined to publish

25 it -- well, I might not accept it.  I might talk to

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2193

```
 1  y'all before I accept it.
 2            MR. PRYOR:  Okay.
 3            THE COURT:  Does that make sense?
 4            MR. PRYOR:  Thank you.
 5            THE COURT:  So publish but not accept or
 6  excuse until we have had a chance to talk at a
 7  sidebar.
 8            If it is a really long conversation, we
 9  will either send them back to the deliberation room
10  or we would go back to the conference room.
11            All right.  I will pass this tip on to
12  Judge Kinkeade, assuming we don't have a verdict in
13  today.
14            Any other questions?
15            This was great.  Thank y'all.  Y'all are
16  phenomenal lawyers.  So thanks for putting on a good
17  case for the jury.  It is important to everyone and
18  important to them, too.
19            All right.  Thank you.  Court is in
20  recess.
21            (Recess.)
22            THE COURT SECURITY OFFICER:  All rise.
23            THE COURT:  Thank you.
24            You can be seated.
25            Mr. Pryor, you are all alone.
```

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 196 of 240   PageID 16024
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2194

1              Can we do appearances and make sure we

2    have one lawyer for each side?

3              For the plaintiff, can you go?

4              MR. PRYOR:  I couldn't hear you.  I'm

5    Bobby Pryor, if you are asking who is here for

6    plaintiff.

7              THE COURT:  Yes.  You nailed it.  That was

8    a great guess.

9              And for Southwest?

10             MR. McKEEBY:  Paulo McKeeby and Brian

11   Morris for Southwest.

12             THE COURT:  And the Union?

13             MR. GREENFIELD:  Adam Greenfield and

14   Edward Cloutman, III on behalf of TWU Local 556.

15             THE COURT:  We have got our Juror Note No.

16   1 [sic].  Y'all have a copy physically or email.

17             This may be the only jury note that we can

18   actually give a concrete answer to satisfy them and

19   us.

20             "Missing Exhibit 41, termination letter."

21             I think, Mr. McKeeby, you and I were

22   thinking the same thing.  It came in as 115, not as

23   41.

24             MR. McKEEBY:  Right.  41 is in my

25   notebook.  This is a product of us doing joint

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 197 of 240   PageID 16025
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2195

1  exhibits and having some overlap.  I just misspoke

2  and said 41, instead of 115.

3                So it should be there.

4                THE COURT:  And it is.

5                So I checked the drive.  I haven't seen

6  the hard copies, or laid eyes on them.  But if it

7  matches up to the exhibits we gave them on the

8  drive, and 115 is there, and it is on the exhibit

9  list.

10               So should I say along the lines of the

11 termination letter came into evidence as Exhibit

12 115, even though it was referenced at one point in

13 trial as Exhibit 41?

14               Fair enough?

15               We are going to give them a good answer,

16 and they will like it.

17               That's awesome.  Okay.

18               So I will say that and we will email y'all

19 a copy of my note that says that going back to them.

20 And then thanks for being close to the court house.

21               They will keep plugging away and we will

22 be on standby.

23               Anything else that we need to talk about?

24               MR. PRYOR:  No.  Thank you, Judge.

25               THE COURT:  Thank y'all.  Court is in

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 198 of 240   PageID 16026
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2196

 1  recess.

 2          (Recess.)

 3          THE COURT SECURITY OFFICER:  All rise.

 4          THE COURT:  Thank you.

 5          You can be seated.

 6          Okay.  So we have got Juror Note No. 2,

 7  that I have scratched through and wrote Juror Note

 8  No. 3, because our first note was really the

 9  foreperson.

10          Let's just do appearances right quick to

11  show who all is here.

12          Mr. Gilliam.

13          MR. GILLIAM:  For plaintiff, Matthew

14  Gilliam and Matt Hill.

15          MR. McKEEBY:  For Southwest, Paulo McKeeby

16  and Brian Morris.

17          THE COURT:  Thank you.

18          MR. GREENFIELD:  For the Union, Adam

19  Greenfield and Edward Cloutman, III.

20          THE COURT:  Thank you.

21          Okay.  So their question says, "Question

22  7, No. 1, the word "accommodate."  We are looking at

23  Exhibit 10, Southwest Airlines, and the jury charge

24  page 16.  We are needing further clarification of

25  accommodation from the Union.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 199 of 240   PageID 16027
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2197

1            Two, is listening to a complaint

2   considered an accommodation?"

3            Thoughts?

4            MR. GREENFIELD:  I'm not sure I can make

5   much sense of it, your Honor.

6            THE COURT:  So I had a head start.  I'm

7   not sure I'm much ahead of y'all.  But let me what I

8   think.  So I can't tell if No. 1 is a statement or a

9   question.

10           But from what I can tell, so we have, page

11  16 of the charge is the in-depth definition of the

12  accommodation claim as to Southwest.

13           The related instruction for the

14  accommodation claim as to the Union is on page 18

15  and just a couple of lines on 19.  It is not as

16  long.

17           It is not as long and surprisingly, we

18  don't really have any accommodation claims against

19  the Union to draw a lot of case law from, surprise,

20  surprise.  But there are plenty of accommodation

21  claims against employers, which is why we had a

22  couple of pages of content on Southwest and not as

23  much as to the Union.

24           I think the closest thing we get to on

25  actually defining what an accommodation might be in

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2198

 1  the Union context comes at page 18, in the second
 2  full paragraph on 18, where the second sentence and
 3  it says:  "An accommodation means allowing the
 4  employee to engage in her religious practice or
 5  observance despite the Union's normal rules to the
 6  contrary."
 7              And that is as close as we get to defining
 8  what an accommodation is as to the Union.
 9              So if the jury is really wondering is
10  listening to a complaint an accommodation, the short
11  answer is we don't have a case or a pattern that
12  says that, or that says that is not true.  All we
13  have is the sentence that I just said, in the
14  section that I just said.
15              I will say one more bit.  Going back to my
16  earlier statement on is 1 a statement or a question.
17  We know they were looking at Exhibit 10.
18              Exhibit 10 is the Southwest exhibit that
19  talks about disability accommodations and at the end
20  it talks about the ACT team, right?  You send a
21  workplace accommodation request to the ACT team.
22              I can't tell if they are trying to figure
23  out if there is a similar exhibit for the Union.
24              The short answer would be, we put all of
25  the evidence in, if it is there, it is there.  I

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 201 of 240   PageID 16029
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2199

1  don't think there is a similar thing for the Union,

2  nor do I think there has to be.

3           But I think, in my mind, my 30,000-foot

4  view thinking is all of the evidence is in.  And we

5  have given them every bit of information that the

6  law allows to give on Unions and accommodation in

7  Part C-4 on pages 18 and 19.

8           I don't know what else we could do.  But I

9  would love to hear any fresh thoughts from y'all on

10  this.

11          Any thoughts from -- I guess, it is a

12  Union question first.  So instead of asking Carter

13  first, Mr. Greenfield, have you got any ideas on

14  that?

15          MR. GREENFIELD:  I don't have any bright

16  ideas at the moment, other than I would be inclined

17  to agree with your Honor, that they have what they

18  have.

19          But if you give me a few more minutes, I

20  might come up with something smart.

21          THE COURT:  Sure.  Well, I'm going to ask

22  everyone.  And then I'm going to take a crack to

23  putting pen to paper on something and show it to

24  y'all.

25          So let me ask, does anyone else have

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 202 of 240   PageID 16030
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2200

1    thoughts or interpretations on what is going on?

2              MR. GILLIAM:  I think we tend to agree,

3    your Honor.  I think that maybe it would -- I think

4    falling back on the charge and the instructions is

5    probably -- that is our inclination, having them

6    read the charge and pointing them back to the charge

7    and the instruction.

8              THE COURT:  And it is where we always end

9    up unless we forgot something in the charge, right?

10             And the jury always finds this

11   unsatisfying because they have a question because

12   the charge didn't have a level of detail that they

13   were hoping for.  I always feel bad in a

14   circumstance where they are asking a question and

15   there is sort of hole in the law.  We have given

16   them all that we can.

17             So what I would I try to do, if I'm

18   wordsmithing this, is try to tell them that we have

19   given the maximum amount of definition that the law

20   allows us to give.  There are times where I've just

21   said, hey, it is on pages 18 and 19.  But they

22   wanted more.

23             If we tell them 18 and 19 is all we can

24   give you, it may leave them unsatisfied but at least

25   they know we have given them all we could.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 203 of 240   PageID 16031
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2201

1              Let me ask if Southwest if they any

2     thoughts?  I know it is as to the Union, not

3     Southwest.  I'm all ears for what anybody has to

4     say.

5              MR. McKEEBY:  Sorry to disappoint.  I

6     don't have any thoughts.

7              MR. GILLIAM:  Your Honor, do you see any

8     concerns with pointing them to the definition of

9     accommodation on -- what page is that?

10             MR. HILL:  Sixteen.

11             MR. GILLIAM:  Sixteen.

12             THE COURT:  Eighteen.  Sorry.

13             Yes, on 16.  But that is the Southwest

14    definition.  But I don't have a problem zeroing in

15    on the definition that I read earlier, as long as we

16    make sure that the definition comes from the charge

17    itself saying Section C-4, page 18.

18             If we want to guide them, that is the most

19    we can guide them.  That is what a definition is.

20             I don't know.  I'm open to thoughts and

21    considerations on it.

22             MR. GREENFIELD:  I mean, paragraph 2 says

23    what it is.  Paragraph 3 says how you get there.

24             THE COURT:  Yes.  I think that is right.

25             MR. HILL:  I have just noticed a

 1    discrepancy here.  They say they are trying to

 2    figure out -- in paragraph 1, they say, they are

 3    looking at page 16 for the definition of

 4    accommodation, and then they say they are talking

 5    about the Union.

 6              The page 16 definition is, of course,

 7    Southwest.  If we give them the direct definition

 8    that -- if we point them to 18 as the accommodation

 9    definition for the Union, even though it looks real

10    similar, I think that may solve their problem for

11    them.

12              THE COURT:  I'm hoping that is true.

13              That is the easiest solution to the

14    problem.

15              I guess what we could do is we are short

16    answering it that way.  And if they come back with

17    another question, we know we weren't right in our

18    interpretation, if there is a follow-up on that.

19              THE COURT:  Okay.

20              Okay.  The sentence I have got so far is,

21    the most guidance the law allows me to give you on

22    accommodation from the Union is Part C-4 on pages 18

23    and 19 of the instructions.

24              The question is, do we do more than that?

25              MR. HILL:  I would go one with that

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS

3:17-cv-02278-X                    Vol 7 July 13, 2022                    Page 2203

 1  definition you read earlier.  It is very

 2  enlightening as what an "accommodation" means.

 3          MR. GREENFIELD:  I think they need the

 4  whole thing, your Honor.  I don't think it would be

 5  appropriate.

 6          THE COURT:  And I started to put in that

 7  sentence, then I started to put in the third

 8  paragraph.  I realized I was copying and pasting

 9  from the whole section.  So that led me back to

10  pages 18 and 19.

11          My inclination would be to do that, if we

12  get a follow-up question.  If it is more

13  complicated than that -- I think if they really do

14  have a question on evidence, hey, is there anything

15  similar to Southwest 10 or the Union?  I think maybe

16  we cross that bridge once we make sure we direct

17  them to the right place, pages 18 and 19.

18          Does that sound okay?

19          So I think I'm backing to my first

20  sentence, and I will read that again.  The most

21  guidance the law allows me to give you on an

22  accommodation from the Union is on Part C-4 on pages

23  18 and 19 of the instructions.

24          Does anyone want to object to that?

25          I am fine, if y'all do.

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 206 of 240   PageID 16034
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                    Page 2204

1            MR. McKEEBY:  No objection from Southwest.

2            MR. GREENFIELD:  No objection.

3            MR. GILLIAM:  No objection from plaintiff.

4            THE COURT:  Okay.  So I will send this.

5            And you may want to be close by, because

6    there may be another question on its heels, right?

7    I'm getting this language off to Mr. Frye.

8            We are going to format it and get it on to

9    Question No. 3.  And we all stay tuned, if my

10   computer stops cycling.

11           Sent.  Okay.  Now I'm going back into

12   recess and we will stay tuned.

13           Thank you for staying and having such

14   quick access to the courthouse.  I'm sorry to say

15   that we have needed it for today, but we may need it

16   for the rest of the day.

17           All right.  Court is in recess.

18           THE COURT SECURITY OFFICER:  All rise.

19           (Recess.)

20           (Proceedings adjourned at 6:00 p.m.)

21

22

23

24

25

1              C E R T I F I C A T E

2

3              I, Kelli Ann Willis, RPR, CRR, CSR

4    certify that the foregoing is a transcript from the

5    record of the proceedings in the foregoing entitled

6    matter.

7              I further certify that the transcript

8    fees format comply with those prescribed by the

9    Court and the Judicial Conference of the United

10   States.

11              This 14th day of July 2022.

12

13              s/ Kelli Ann Willis
                Official Court Reporters
14              Northern District of Texas
                Dallas Division

15

16

17

18

19

20

21

22

23

24

25

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 208 of 240   PageID 16036
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Index: $10..33

**$**

**$10** 2109:14,16

**$100,000** 2108:1
2110:21

**$17,000** 2141:17

**$2** 2109:21 2110:4
2119:20 2182:21

**$20** 2109:3

**$20,000** 2107:25

**$200** 2109:18

**$300,000** 2109:3
2110:22 2180:7

**-**

**-o-** 2004:2

**1**

**1** 2013:20 2033:5
2053:2 2054:14,16
2103:15 2107:20
2109:19 2147:13
2150:13 2160:2
2194:16 2196:22
2197:8 2198:16 2202:2

**10** 2004:19,21,24
2006:15 2055:5,12
2056:5 2063:5,23
2064:20 2065:17
2067:7 2068:17
2070:21 2072:19
2097:10 2106:7,11
2108:3 2109:20
2111:13 2113:17,19
2127:5 2174:19,23
2175:6 2196:23
2198:17,18 2203:15

**10-minute** 2068:12

**100,000** 2107:19

**103** 2150:13

**107** 2095:2

**10:15** 2068:13,17
2070:1

**11** 2004:19,21,24,25
2055:19 2056:4,13,15
2063:6,25 2064:22
2065:19 2067:8
2106:12 2128:2

**115** 2194:22 2195:2,8,
12

**119** 2133:11

**11:30** 2007:3 2009:14

**12** 2056:14,16 2063:7,
25 2064:22 2065:19
2067:9 2081:20
2082:10 2103:1
2106:14 2155:6

**12:30** 2007:3 2009:14
2134:25

**13** 2056:15 2057:6,8,9,
10,11,13 2071:20
2096:15 2107:2 2181:5

**134** 2140:19 2180:12

**138** 2109:14

**14** 2019:7,19 2057:12,
22,25 2058:3,4,5,7
2063:18,21 2108:2
2169:15,18

**141** 2079:20

**14th** 2041:19

**15** 2007:18 2008:4,10
2058:6 2059:1,2,3,5,12,
14 2189:25

**15,000** 2109:2

**1500** 2086:8

**152** 2028:10 2029:2
2030:6,11,20 2031:8,21
2032:4,14,19 2155:10
2160:4

**15A** 2009:21

**16** 2059:13,15 2196:24
2197:11 2201:13
2202:3,6

**17** 2059:4,14,23,24,25
2060:2,9,11 2077:12,14
2170:19

**18** 2060:10,12 2121:13,
14 2197:14 2198:1,2
2199:7 2200:21,23

2201:17 2202:8,22
2203:10,17,23

**19** 2060:1,11,19,21
2061:3,5 2197:15
2199:7 2200:21,23
2202:23 2203:10,17,23

**1996** 2017:21

**2**

**2** 2013:20 2053:7
2057:5 2060:18,20
2062:10 2101:6,7
2118:21,25 2119:3
2132:6,12,20 2133:3,21
2137:20 2155:2 2157:4
2160:7 2196:6 2201:22

**20** 2007:19 2061:4,6
2117:12

**200** 2109:19

**2008** 2091:3

**2013** 2018:7 2076:15
2128:23,25 2130:13
2136:18 2141:9
2142:15 2155:18
2161:16

**2014** 2076:16 2085:15

**2015** 2018:11,17
2136:18 2140:7
2155:19 2161:25

**2016** 2120:12,14

**2017** 2018:10,17,25
2019:4,7,12,16,19
2041:19 2057:22,25
2063:18,21 2082:2,25
2083:21 2084:21
2085:11,24 2086:3,9
2107:17 2120:14
2136:19 2162:9
2169:15,19

**21** 2019:4 2060:20
2061:5,14,23,25
2166:13 2170:19

**21-C** 2086:21

**21-D** 2086:21,22

**21-Q** 2084:6,7

**21-R** 2084:13

**21-T** 2084:16

**21-U** 2084:18

**21-V** 2084:19

**22** 2019:12 2061:24
2062:1 2085:24

**22nd** 2085:11,16
2086:3,9

**23** 2061:15,25 2062:11,
13,14,15,16,20

**23rd** 2089:20

**24** 2062:17 2063:4,6,7,9
2076:13,14,18 2121:9

**24-month** 2138:19

**25** 2063:8,24 2064:1,3
2078:21,22

**26** 2064:2,21,23,25
2065:7,9

**27** 2065:8,10 2077:15,
20,22,24 2084:24

**28** 2052:24 2064:24
2065:9,18,20,22
2066:4,6

**28-year** 2093:16

**29** 2066:5,7 2081:3
2155:1

**3**

**3** 2037:1 2053:10,15,17
2057:7 2061:13
2062:12 2086:8 2088:1
2101:24 2104:6
2159:21 2161:3 2163:2
2196:8 2201:23 2204:9

**30** 2007:20 2065:21
2066:6,15,17,22,24
2114:16,23 2135:9
2161:3

**30,000-foot** 2199:3

**30-day** 2120:21

**31** 2066:23,25 2085:15

**32** 2066:16,24 2067:6,8,
9,13 2150:18

**33** 2067:10,13,20

**34** 2068:3

**38** 2085:25 2086:1

**39** 2090:20

---

**4**

**4** 2039:6 2053:16,18
2057:7 2061:14
2062:12 2088:1
2104:12,24 2158:22
2160:15

**40** 2100:21

**400,000** 2107:20

**401(k)** 2042:19

**41** 2097:15 2129:13
2194:20,23,24 2195:2,
13

**45** 2135:9

**49** 2097:8

**49.9** 2102:3

---

**5**

**5** 2053:17,24 2057:8
2058:2,25 2059:22
2062:13 2104:25
2188:12

**50.1** 2102:3,8

**50/50** 2102:2

**55** 2062:6

**556** 2017:22,25 2018:8,
13 2019:1,5,8 2024:7,9,
21,23 2025:24 2026:3,
21,22,24 2027:3,7,10,
13,19,21 2028:4,7,9
2029:1 2030:8 2031:3,
10,15 2032:8,16
2033:4,7 2034:16,21
2035:4,6,7,10,19,22,25
2036:3,5,8,18,20
2039:7,9,13,15,16
2040:5,9,12,15,21
2042:5,6 2043:10,13
2044:6,11,12,16,25
2045:4,11,12,15,22,24
2047:3,5 2049:19
2050:1 2053:1,4,8,11,
19,25 2054:7,18

2057:4,14,18 2058:8,13
2059:6,9,16,18,19
2060:3,6,13,14,15,22,
25 2061:7,9,10,16,20
2062:2,5,21,25 2103:24
2104:3,7,12,13 2105:1
2136:10 2147:13,16
2151:21,23 2155:7
2158:23,24 2159:16
2160:8 2166:16
2167:21,22 2168:3,4,15
2170:2,8 2171:6
2194:14

**556's** 2018:5 2021:12,
19 2035:13 2046:8,16,
22 2047:2

**56** 2081:22,24

---

**6**

**6** 2054:6 2057:10
2058:4 2059:2,24
2062:15 2075:1
2105:11 2188:8,12

**60** 2147:3

**60-something**
2008:24

**65** 2150:4

**66** 2087:2 2148:16
2157:18

**67** 2152:21

**68** 2084:25 2085:1,9,19
2086:15 2087:1,2

**69** 2084:23,25 2085:1,9,
19

**6:00** 2204:20

---

**7**

**7** 2019:16 2054:15,17
2057:11 2058:5 2059:3,
25 2062:16 2105:12
2196:22

**70** 2084:25 2085:1,19

**71** 2085:1,19

**74** 2087:23 2089:16

**74952** 2149:8

---

**8**

**8** 2054:16,23 2055:3,5
2063:3 2066:14 2067:5
2072:19 2105:17
2130:23

**80,000** 2107:18,19

**80s** 2080:11

**89** 2157:1,15 2160:15

---

**9**

**9** 2012:5 2055:4,6
2063:4 2066:15 2067:6
2072:19 2098:11,14
2102:9 2105:19 2106:1

**90s** 2102:5

**98** 2095:8,9,10,16

**9th** 2085:6

---

**A**

**ability** 2148:5

**aborted** 2097:19
2123:6 2124:19 2137:1
2146:10 2151:6
2152:10 2153:15
2154:21 2156:13,16
2159:5 2162:21

**abortion** 2017:17
2073:14 2100:7
2123:21 2124:7,13
2146:8 2158:14 2164:6,
7

**absence** 2021:13
2025:8

**absent** 2145:22

**absolutely** 2082:6
2088:24 2101:3
2104:10 2119:4

**abusive** 2032:2
2071:22,25 2094:14
2181:20 2183:25
2184:1,3

**academic** 2172:8

**accept** 2017:10
2050:15 2112:10
2120:2 2121:17
2191:17 2192:18,25
2193:1,5

**accepted** 2020:14
2134:6 2190:19

**access** 2204:14

**accidentally** 2091:23

**accidents** 2021:14

**accommodate** 2037:2,
4,8,15,23 2038:2,20
2039:7,9,20 2040:6
2054:19 2055:20
2096:8 2105:13,14,15
2106:16 2128:3
2196:22

**accommodated**
2106:25

**accommodating**
2038:14 2039:12
2040:17

**accommodation**
2037:11,17 2038:21
2039:15,22 2103:13
2106:20 2127:11,12,13,
15 2164:22,24 2165:1,
10,11,15,21 2166:4,7
2196:25 2197:2,12,14,
18,20,25 2198:3,8,10,
21 2199:6 2201:9
2202:4,8,22 2203:2,22

**accommodations**
2056:17 2198:19

**account** 2150:6

**accountability**
2119:10

**accuracy** 2041:12

**accurate** 2012:1

**accuse** 2175:22

**acknowledged** 2073:6
2076:23 2132:12
2133:3

**acknowledges**
2082:15

**act** 2021:5,7 2023:24
2024:8,23 2027:17,22,

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 210 of 240   PageID 16038
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022                     Index: acted..answering

23 2028:2,7 2030:14
2032:10 2040:21
2042:4 2043:11,15,20,
23 2044:7 2049:13
2053:13,22 2055:1,10
2061:17,21 2062:2,8
2066:21 2067:3
2071:13 2102:17
2104:9,16 2151:23
2154:23 2155:5 2159:2,
9,20 2163:14 2166:18
2167:3 2198:20,21

**acted** 2026:3 2043:25
2045:15 2109:1 2167:9

**acting** 2025:5,7
2026:19 2027:1,7,14
2035:7 2036:9 2040:10
2043:20,23 2049:4
2053:3 2103:23
2147:15 2167:3

**action** 2020:13 2025:11
2026:13 2044:17
2079:18 2089:6 2122:5
2152:13 2178:14
2187:24

**actions** 2050:9
2073:25 2151:10

**activities** 2075:5
2083:1 2105:16

**activity** 2030:6,10,20,
25 2031:8,17,21
2032:2,3,4,14,19
2053:12,21 2054:25
2055:9 2066:20 2067:2
2071:14,22,24 2072:6,8
2074:12 2075:8,15,23
2082:7 2087:13,14,20
2090:23 2091:9
2094:19,24 2095:1
2096:3,4 2103:4,6,7
2104:8,15,19,23
2105:23 2106:1,10,18
2109:23 2123:7 2125:3
2128:25 2130:21,25
2155:10 2156:7 2159:1
2160:3 2161:8 2162:15,
22 2175:20,21 2176:6,7
2177:25 2179:14,15
2181:3,4,6,18,19
2183:21

**actor** 2109:1

**acts** 2021:4,9,10
2024:25 2025:3

**actual** 2041:14 2042:7,
9,11 2043:2 2046:2
2049:10 2120:12

**Adam** 2004:15 2194:13
2196:18

**add** 2135:22

**addition** 2043:2
2045:18 2046:25

**additional** 2118:23

**address** 2006:12
2089:25 2101:1,22
2113:4,6 2136:15
2150:23 2151:4

**adjourned** 2204:20

**adjust** 2048:17

**administration**
2142:16

**administrators** 2081:6

**admission** 2010:23

**admit** 2110:4

**admitted** 2009:17,20
2015:9 2016:16 2023:9,
12 2051:23 2097:18
2104:20,21 2176:6

**adopted** 2045:6

**advance** 2022:16

**advice** 2062:19
2067:12

**advise** 2153:19

**advised** 2079:14

**advisory** 2049:5

**affect** 2151:16 2172:23

**affected** 2116:22
2153:16

**affects** 2145:20
2154:15

**affirmative** 2032:11,
22,24 2156:4 2159:10
2175:12,14,25

**African-american**
2080:1,2

**afternoon** 2071:2
2117:3 2136:4

**agency** 2018:8 2029:18

**agent** 2139:8

**agents** 2025:1 2029:10

**aggressive** 2096:25
2097:5

**agonized** 2153:5

**agree** 2013:14 2017:10
2076:21 2078:3 2082:4
2088:19,22 2100:11
2105:24 2132:13
2159:20 2161:2
2162:25 2168:20
2178:13 2191:25
2199:17 2200:2

**agreed** 2093:12
2097:25 2119:4,5
2152:7 2155:23
2187:16

**agreement** 2017:8
2075:2,9,10,13,14,16
2087:8 2100:22 2120:7,
20,23 2121:4,8,13,17
2125:23 2132:24
2134:5 2137:7,19
2140:13 2149:6,7
2155:20 2178:1,3,4,11

**agreements** 2121:2

**ahead** 2004:6 2013:15,
16 2089:9 2197:7

**aids** 2051:11

**air** 2028:3 2188:10

**airline** 2177:10

**airlines** 2017:24
2071:12 2072:5,6,7,25
2073:10,11 2074:7,9
2078:8 2079:23 2080:7,
11,18 2084:9 2085:3,13
2086:23 2089:18
2090:14,22 2092:9,22
2093:16 2094:18
2095:12 2096:3 2097:6
2098:7,10 2099:18
2100:4,6,13 2103:25
2105:18 2106:15
2107:15 2109:9,13
2115:14 2116:13
2117:13 2118:1,8,9,16

2123:24 2129:23
2130:23 2131:14,21
2134:9,14 2137:6,17
2142:8 2143:3,15,17
2144:1 2145:7 2147:17,
19,25 2148:15 2149:11
2156:6 2162:24 2168:6,
19,22 2171:15,23
2176:14 2177:1,9
2178:15,19 2196:23

**Airlines'** 2158:8

**Airlines's** 2099:23
2100:6 2115:21
2118:23 2170:15
2178:22

**airplanes** 2120:3

**airport** 2091:17 2092:4
2123:14 2157:10

**alcohol** 2108:10,14

**alleges** 2028:9 2029:1

**allegiance** 2128:17

**allowed** 2051:9 2142:7
2143:17 2173:24

**allowing** 2037:17
2039:22 2198:3

**amazing** 2137:14

**Amendment** 2143:22

**Americans** 2111:4

**amount** 2040:24
2041:10,15,20,22
2042:9 2045:20 2046:6,
24 2047:7,14 2048:2,6,
9,18,19,20,24 2050:7
2171:14 2200:19

**amounts** 2042:14,17,
22

**analogy** 2131:5

**and/or** 2030:21 2031:9
2032:8,15,20 2034:16
2040:21 2046:15,22
2047:1,3,5 2098:22

**anguish** 2041:24
2058:12,18,22 2064:8,
14,18 2170:7

**anonymously** 2098:20

**answering** 2202:16

**answers** 2005:22 2022:15,25 2052:5 2105:17 2191:20

**anti-bullying** 2086:11

**anti-discrimination** 2045:6,8

**anti-union** 2091:5,7 2142:13 2152:6 2157:25 2158:16 2162:15 2176:7

**anymore** 2109:4 2163:11 2181:12 2184:10

**anyone's** 2007:1

**apologies** 2153:4

**apologize** 2095:5 2114:21 2147:3 2157:18

**apparently** 2127:23 2189:12

**appeal** 2119:1

**appearances** 2004:5 2194:1 2196:10

**appears** 2126:11

**apple** 2137:20 2138:14

**applied** 2171:23

**applies** 2163:10

**apply** 2014:4 2015:14 2024:5 2075:23 2098:24 2106:17 2127:18 2130:4 2167:6 2181:3,17,24 2183:16

**applying** 2183:11

**appointed** 2180:15

**apportionment** 2170:18

**appreciated** 2074:19

**approach** 2144:13

**arbitrarily** 2026:3,7 2027:8,14 2154:23

**arbitrary** 2024:16 2025:12,13 2152:14,15, 16,19 2153:6

**argue** 2098:25 2112:16

**arguing** 2164:25

**argument** 2099:18 2112:3,22 2115:7 2136:16 2159:19 2186:24,25 2189:16

**arguments** 2015:2,4,5, 8,10 2052:22 2172:19 2175:11

**arriving** 2014:18 2015:22

**art** 2191:1

**Article** 2075:9

**articulate** 2116:13

**asks** 2147:13,14 2160:22

**aspect** 2037:15 2039:20 2115:21

**ass** 2078:9

**assassinations** 2080:12

**asserts** 2032:12,16

**assess** 2047:10

**assessed** 2059:17 2060:14 2061:8 2062:4 2065:12 2066:9 2067:1

**assessments** 2029:24 2030:2

**assist** 2029:12 2030:1

**assisting** 2029:16

**association** 2027:24

**assuming** 2187:11 2193:12

**astone@twu556.org.** 2150:24

**at-risk** 2153:18

**attach** 2139:19

**attached** 2150:24 2180:17

**attachments** 2085:2 2087:24

**attempt** 2034:25 2040:2 2054:2

**attempted** 2034:16 2035:10 2040:13,16

**attempting** 2030:9 2054:1 2155:8

**attempts** 2173:18

**attendant** 2017:21 2088:15 2097:23 2107:10 2126:6 2147:25

**attendants** 2017:23 2088:9 2092:23,25 2126:4 2145:8,16 2158:9

**attended** 2019:1,5

**attendees** 2126:17

**attending** 2161:16

**attention** 2097:14 2182:24 2188:21

**attentiveness** 2134:13

**attitude** 2080:10

**attorneys** 2017:9 2022:22 2052:13 2110:23

**attributable** 2040:25

**Audrey** 2018:13,19 2024:23 2031:11 2035:7 2036:8 2040:9 2053:3 2072:23 2077:7 2078:11 2079:11 2081:6,9 2082:13,19 2083:23,24 2084:10 2087:8 2090:21 2094:1 2103:22 2123:22,24,25 2124:11 2133:5 2136:25 2139:15 2140:8 2142:4 2144:23 2146:15 2147:14 2149:8 2150:6,7,10,20 2151:24 2154:22 2155:22 2160:19 2161:9 2164:4 2169:21

**authority** 2034:22 2044:13,14 2167:22,24 2168:1,5

**authorized** 2025:3 2044:16 2168:3

**automatically** 2091:19

**average** 2111:4

**avoid** 2024:15 2038:17

**avoiding** 2038:13 2040:17

**avoids** 2057:1

**awake** 2097:13

**award** 2041:6 2043:3, 16 2044:5 2045:1,20 2046:4 2047:17 2048:1, 4,6,9,16,18,21 2049:16 2056:22,24 2166:25

**awarded** 2046:3,25 2047:7 2049:8 2059:8 2060:5,24 2061:19 2065:3,25 2066:18

**awarding** 2042:1 2043:8,12 2166:15

**aware** 2083:2

**awesome** 2187:20 2195:17

**B**

**babies** 2124:19 2153:21 2154:1 2179:6

**baby** 2073:15 2123:6

**bachelor's** 2172:11

**back** 2006:22 2008:1, 13,15 2009:7 2010:7 2011:9,15,17,20 2012:6 2041:15 2042:13,14 2068:12 2069:3 2074:25 2076:15 2088:10 2092:5 2100:1, 2 2101:3,8,12 2110:14, 17,20 2119:11,18,19, 22,23,25 2120:9,16,25 2121:18 2125:22 2128:22,25 2133:2,11, 18,21 2137:23 2138:5, 10,13,17 2139:3 2142:17 2145:1 2152:19 2158:10 2159:9,12 2160:1,2 2169:13,14,24 2171:11, 12,24 2174:6 2177:13 2186:16 2187:6,22,24, 25 2189:19 2190:7,9 2193:9,10 2195:19

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 212 of 240   PageID 16040
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                 Index: backing..call

2198:15 2200:4,6
2202:16 2203:9
2204:11

**backing** 2203:19

**backwards** 2156:3

**bad** 2012:19 2025:12,
18 2026:3 2027:8,14
2033:21 2100:19
2102:17 2109:1
2115:10 2145:23
2152:14 2153:8,9
2154:11,23 2165:16
2200:13

**balance** 2144:13

**balanced** 2144:12

**balancing** 2173:14

**bankrupt** 2162:10

**barely** 2120:11 2128:14

**bargain** 2029:4

**bargained** 2137:7,19

**bargaining** 2018:1
2029:19 2075:1,16
2087:8 2121:12
2132:24

**base** 2019:14 2148:18,
21,25 2149:14,21

**based** 2012:24 2015:17
2024:18 2026:14
2028:6 2041:7 2071:7
2127:7 2149:15
2192:22

**basically** 2102:1

**basis** 2100:9 2112:15

**bathroom** 2009:7
2188:15

**beach** 2183:14

**bear** 2047:8

**beat** 2159:18 2186:14

**Becky** 2138:2 2165:25

**beef** 2128:7 2163:21

**began** 2018:12

**beginning** 2074:25
2076:17 2077:20
2115:25 2138:21

**behalf** 2004:14 2071:5
2115:7 2134:13
2135:22 2136:2
2141:25 2194:14

**belabor** 2171:22

**belabored** 2161:14

**belief** 2025:18 2034:11
2035:23 2037:12
2038:14 2040:18
2073:24 2100:11
2108:5 2165:5

**beliefs** 2004:20
2033:10,19 2034:4,13,
19,20 2035:2,15
2036:1,7,13,16,25
2037:5,16,22,25
2038:3,7 2039:10,21
2040:4,7 2051:5
2054:4,11,20 2055:17,
21 2056:1,3 2073:1,8,
12,16,23 2090:16
2094:25 2095:14,19,21
2099:15 2100:10
2106:9,16 2109:24
2125:16 2142:4,12
2150:17 2163:16
2164:7 2178:9 2182:14

**believes** 2017:17
2136:24 2141:24
2143:1,8 2152:2
2163:14

**bench** 2012:4,7

**benefits** 2041:15,20
2042:12,18,19,23
2057:17,24 2063:13,20
2107:24,25 2168:14
2169:18

**Beth** 2138:1

**bias** 2015:23 2020:2

**Bible** 2017:18

**big** 2109:16 2130:11

**billion** 2109:14,16,20

**binding** 2049:4
2103:17

**birth** 2153:20

**bit** 2012:8 2071:19
2115:12 2129:23
2139:11 2150:1

2155:14 2156:3
2188:19 2198:15
2199:5

**bite** 2137:20 2138:13

**Bits** 2136:17

**blanket** 2173:17

**bleed** 2155:14

**block** 2139:20

**blocks** 2126:12

**board** 2091:4 2139:7
2140:7 2162:6

**Bobby** 2004:9 2194:5

**body** 2083:9 2126:12
2145:21

**body.'** 2153:2

**bogey** 2139:25

**bonuses** 2042:20

**booked** 2187:14

**born** 2172:21

**borne** 2132:22

**boss** 2117:14

**bottom** 2149:6 2157:4

**bound** 2009:24

**box** 2007:16 2134:1

**brand** 2099:1,3

**breach** 2026:5,12
2027:5 2152:1

**breached** 2026:23
2027:7,13,16

**breaches** 2026:9
2102:19

**break** 2006:25 2007:6,8
2009:1,8,13 2052:22
2068:10,12,21 2070:24
2071:1 2114:13,24
2135:13,24 2188:16

**break-wise** 2009:12

**breaking** 2168:21

**Brett** 2077:25 2079:10

**Brian** 2004:12 2085:12
2086:12 2105:6 2139:6,

7,15,20,25 2140:23
2194:10 2196:16

**bridge** 2203:16

**briefly** 2111:19
2116:10 2186:15

**bright** 2199:15

**bring** 2070:7 2134:19,
23

**brings** 2027:20
2081:25

**broke** 2117:9,18

**brought** 2023:21
2093:4 2139:4 2150:15
2187:5

**buddy-buddy** 2168:25

**building** 2116:23

**buildings** 2188:12

**built** 2163:23 2169:22

**bully** 2144:13,15,19
2158:18 2177:19

**bullying** 2116:1
2177:18

**bunch** 2078:14
2095:15 2179:21

**burden** 2016:4 2102:7
2106:15

**burgers** 2107:12

**business** 2038:25
2039:4,5 2092:1
2131:4,15,16

**buy** 2074:4

**bygones** 2119:24

---

**C**

**C-4** 2199:7 2201:17
2202:22 2203:22

**Cabo** 2183:14

**call** 2006:10 2007:5
2008:1,17 2009:8
2070:22 2100:22
2172:25 2190:10
2191:25

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X          Vol 7 July 13, 2022          Index: called..Charlene

**called** 2024:8,10
2073:8 2101:21 2116:8
2149:10 2156:4

**calling** 2139:12 2162:9

**campaign** 2018:20
2082:16

**campaigns** 2077:11

**capacity** 2025:2,6,7
2026:19 2027:2
2031:14 2035:8 2036:9
2040:10 2043:21
2049:5 2053:4 2103:23
2147:15 2151:11
2159:16,21,23 2167:4

**capital** 2024:19

**capitalism** 2144:4

**cardboard** 2126:11

**care** 2073:19 2176:17

**careful** 2188:21

**carrier** 2028:20,24
2029:10,14,16 2030:12

**carriers** 2028:3

**carry** 2154:13,14

**carrying** 2013:2 2126:5

**Carter** 2004:7,8
2005:18 2016:4,9
2017:16,20 2018:3,7,
11,17,19,22 2019:7,10,
17,20 2024:20,24
2026:1,5,20 2027:2,20
2028:5,8,25 2030:3,7,
16,17,19,23 2031:2,4,5,
7,11,14,19 2032:9,13,
17,18 2033:8,23
2034:1,3,6,10,15,17,23
2035:4,8,11,14,17,22
2036:4,5,10,18,21
2037:3,9,10 2038:4,9,
13,16,20 2039:8,11,14
2040:8,11,23 2041:3,5,
9,16,21,23 2042:2,10,
15,24 2043:9,13,17
2044:4,14,21 2045:19,
20 2046:1,10,16,20,23
2047:4,9,21 2048:21,24
2049:12,15,16,20,21
2050:5,14 2053:2,5,7,9,
10,12,20,21,24 2054:1,
6,8,17,23,25 2055:8,12,

14,19 2056:23 2057:1,
17,18 2058:11,14
2059:7 2060:4,23
2061:1,11,18,20
2062:7,24,25 2063:13,
14 2064:7,10 2065:2,24
2066:18,20 2067:17,18,
21 2068:4 2070:20
2071:5,9 2075:6
2076:3,9,15,18 2078:23
2079:2,3 2082:2
2083:11 2084:3,12
2085:18 2091:3,19
2092:16 2101:1,2
2103:2,22,24 2104:6,7,
13,14,25 2105:4,10
2116:21 2117:8,16,23
2118:3,7 2119:9,16,17
2122:9 2123:8,16
2125:5,15 2126:15
2127:4,7,22 2128:2,5
2129:1,25 2130:25
2131:2 2132:4,8,24
2134:4 2136:8,24
2137:8,11,19,25
2138:3,8,11,21
2140:14,16,22 2141:10,
12,20 2143:8,22
2144:14,19 2145:16
2146:7,12,13,14,23
2147:14,17 2150:2,5,9,
11,12 2151:3,18,20,24
2152:18 2153:10
2154:18,25 2155:7,16
2156:6,7,21 2157:7
2158:18,25 2159:1,15
2160:3,6,9 2161:9,15,
23 2162:1,3,7,14,20
2163:10,14 2165:14,24
2166:15 2167:1,14,23,
25 2168:1,14,16 2169:9
2170:6,9,10,16,23
2171:5,6,10,20,23
2172:2,7 2175:16
2179:12 2181:15
2183:1 2199:12

**Carter's** 2017:25
2018:13,15 2019:13
2021:11,18 2023:16
2024:5,6 2026:21
2027:4,9,17 2030:24
2031:16 2033:2,5,13
2034:13,19,21 2035:14,
25 2036:2,12,24
2037:1,4,11 2038:6
2039:18 2040:13,16

2043:4 2044:1,18
2045:9,16 2050:8,18
2054:3,10,19 2055:16,
21 2059:9,19 2060:6,16
2065:4,14 2066:1,11
2073:1 2074:12
2090:15 2093:12
2094:11 2119:2 2126:1
2127:10 2128:19
2129:10 2130:14
2136:15,21 2161:7
2162:22 2164:11
2167:10 2169:11
2171:9 2174:5 2183:19

**case** 2013:24 2014:4,
14,15 2015:16 2016:5
2020:2,3,18 2021:7,15
2022:23 2023:14,17
2050:24 2051:6 2052:9
2056:18 2068:16
2069:22 2071:3 2074:9,
12,24 2086:20 2102:5
2115:18,21 2116:12
2117:21,24 2118:15
2119:20,21 2122:8
2126:4 2127:14 2129:2
2130:19 2133:24
2135:12,25 2141:23
2143:23 2144:10
2159:12 2164:1
2171:21 2173:5,23
2186:21 2187:13,17
2188:21 2189:1,2
2190:22 2191:1
2193:17 2197:19
2198:11

**cases** 2190:23

**cash** 2057:15 2058:9
2062:22 2063:11
2064:5 2067:15
2168:13 2170:5 2171:3

**Casper** 2078:1,2,5
2080:7

**categories** 2089:22,25
2090:3,8

**category** 2090:10

**caused** 2026:11,21
2034:16 2035:10
2040:12,15,23 2046:22
2047:9 2056:9,24
2057:18 2058:13
2062:25 2063:14

2064:9 2067:13
2168:15 2170:8 2171:6

**causing** 2054:1 2177:5

**cell** 2008:16 2189:23

**cents** 2057:19 2058:1,
15,20,24 2059:21
2060:17 2061:12
2062:9 2063:1,15,19,22
2064:11,16 2065:16
2066:13 2067:4,19
2068:7

**certificate** 2172:9

**chance** 2086:8 2100:22
2119:16 2120:7,20
2125:23 2132:19,24,25
2134:5 2178:1 2179:4
2184:8 2193:6

**change** 2051:3 2084:2
2109:8,14,15,16

**changed** 2082:17
2141:2,4

**chapter** 2028:19
2029:9

**character** 2021:19

**characteristics**
2050:20

**charge** 2005:5 2007:9
2012:17,24 2013:3,9
2051:23 2056:6
2112:23 2147:1,7,11
2151:20 2192:2
2196:23 2197:11
2200:4,6,9,12 2201:16

**charged** 2079:13
2083:6

**charges** 2141:18
2175:24

**Charlene** 2016:4,9
2017:16 2024:20
2033:8 2071:8 2083:2,
11 2084:3 2092:22
2095:10 2099:8
2107:22 2141:20
2143:8 2149:14 2150:5,
15 2151:20 2154:25
2157:7 2160:19
2170:16 2171:9,15
2174:5 2180:2,19

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 214 of 240   PageID 16042
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 7 July 13, 2022              Index: Charlene's..complaint

**Charlene's** 2095:6

**check** 2010:1 2135:4
2157:5 2187:7 2191:15,
21

**checked** 2195:5

**checks-and-balances**
2169:22,23

**choice** 2028:17
2029:13 2083:9
2101:10 2126:7,13
2133:4 2152:25 2154:6
2164:3 2172:16

**choosing** 2029:6

**chose** 2127:2

**Chris** 2092:22 2137:14
2141:7,8 2160:20

**Christian** 2017:16
2073:16,20 2095:14,19,
21 2125:24 2143:19

**circumstance** 2200:14

**circumstances**
2016:18 2020:5
2022:17 2025:16
2041:12 2049:23
2068:5 2152:3

**circumstantial**
2016:23,24 2017:3,6

**civic** 2136:7

**civil** 2172:25

**claim** 2016:10,12
2023:24,25 2024:1,7
2027:18,20 2028:6
2033:1,6 2036:3
2037:2,7 2039:7,13
2042:4,6 2043:10,14
2049:19 2060:22
2061:7,17 2062:3
2093:17 2127:11
2151:17 2155:4
2159:13 2161:6
2164:14,24 2166:16,17
2197:12,14

**claiming** 2075:6

**claims** 2023:16 2024:3,
5,20 2030:3,7 2033:8,
13 2034:15,21 2036:4
2037:3,8 2039:8,14
2043:4 2058:8 2059:6,

16 2060:3,13 2064:4
2065:1,11,23 2066:8
2103:2 2121:4 2129:4,5
2136:21 2143:22
2144:17 2147:8
2151:16,19,21 2155:7
2163:3,4 2165:15
2166:10 2170:3
2197:18,21

**clarification** 2196:24

**class** 2029:6,8

**clear** 2056:10 2072:22
2087:5 2088:3 2102:24
2104:1 2119:3 2123:17,
18 2129:13,15 2173:15
2174:2

**clearing** 2008:4

**click** 2081:18 2092:23
2123:11 2141:6,7,8
2160:20 2180:6

**clicked** 2091:23 2092:6

**client** 2082:18

**clinic** 2153:18

**clip-on** 2174:24

**clock** 2007:2

**close** 2006:21 2069:14
2071:4 2113:20
2114:14,15 2124:22
2133:2 2135:22 2136:2
2195:20 2198:7 2204:5

**closed** 2157:11

**closest** 2197:24

**closing** 2006:8,15
2007:1,7 2008:15
2009:8 2010:7 2012:5
2052:22 2068:11
2069:2 2070:19,25
2071:1 2111:17
2112:22 2113:15
2115:7 2136:16 2186:6

**closings** 2009:12

**Cloutman** 2004:15
2136:11 2194:14
2196:19

**co-counsel** 2136:11

**co-employee** 2117:18
2121:23

**co-employees** 2122:6

**coalesce** 2085:24

**coerce** 2028:16
2029:20

**coercion** 2028:13,21

**coincidence** 2085:22

**collect** 2030:1 2116:23

**collection** 2030:1

**collective** 2029:18
2075:1,16 2087:8
2121:12 2132:23

**collectively** 2029:5
2137:7,19

**combating** 2142:23,24

**comfortable** 2010:5
2154:2

**commend** 2172:4

**comment** 2004:23
2093:23 2164:10
2184:19 2185:1,10,13,
20 2187:5

**commentary** 2156:20

**comments** 2136:18
2185:12 2187:7

**commitment** 2122:21

**committee** 2019:2

**common** 2028:3

**commonly** 2027:22

**communicate** 2052:10

**communicated**
2082:19 2150:2

**communicating**
2080:5

**communication**
2082:20 2084:3
2098:18,21 2104:20
2112:5 2175:19,20
2176:1 2179:17

**communications**
2079:22 2080:23,25
2082:5 2086:12
2093:12 2094:11
2096:22 2105:9
2150:25 2151:8

**co-employees** 2122:6

2177:22 2179:12
2184:19

**community** 2172:20,
21

**company** 2075:11
2098:6 2099:2 2115:15
2117:25 2118:18
2119:12 2120:4 2121:6,
18 2134:8 2137:1
2149:22 2152:4
2154:21 2155:25
2161:23 2163:15
2165:13 2181:2

**comparable** 2126:19

**compare** 2154:19
2189:19

**compelling** 2025:8

**compensate** 2042:10
2057:16 2058:10
2062:23 2063:12
2064:6 2067:16
2168:13 2170:5 2171:4

**compensated** 2107:23

**compensation**
2050:12

**competence** 2032:5

**complain** 2071:10
2087:16 2092:8
2128:24 2178:23
2180:20 2182:11

**complained** 2083:24
2143:13

**complaining** 2072:25
2082:3,21 2085:3
2087:14 2088:3,17
2095:23 2097:4
2149:24 2179:22

**complains** 2181:24

**complaint** 2019:18
2045:9 2072:24
2084:11,19,20 2085:17
2087:3,10,18 2089:18
2092:15 2093:4
2122:17 2128:14
2131:12,17,19,20
2143:3,5,15 2148:11,
14,17,20,21 2149:21
2152:9 2163:13 2178:8
2197:1 2198:10

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 215 of 240   PageID 16043

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 7 July 13, 2022                    Index: complaints..court

**complaints** 2045:13
2084:14 2085:13
2094:5,7 2101:11
2122:12 2131:9 2148:8
2152:9 2161:22 2162:1,
13,18 2183:9

**complete** 2024:15
2027:25 2130:16

**completely** 2107:7
2125:17 2130:17
2142:21

**compliant** 2191:16,22
2192:1

**complicated** 2203:13

**comply** 2038:10
2045:17 2121:6

**comports** 2163:19

**computer** 2204:10

**concern** 2099:2

**concerned** 2192:13

**concerns** 2005:11
2007:13 2191:10
2201:8

**conclude** 2016:25
2041:1 2100:5

**concluded** 2052:7
2115:3 2135:17
2174:25 2186:18

**conclusions** 2016:17

**concrete** 2194:18

**condition** 2047:2

**conditioners** 2188:10

**conditions** 2039:17
2050:13 2075:12
2165:6,7 2171:9

**conduct** 2024:16
2039:3 2043:6 2044:20
2045:23,25 2046:8,16,
19,22 2047:3,6 2119:6
2123:1 2124:20

**conducted** 2131:23

**confer** 2010:8,9

**conference** 2187:13
2192:2 2193:10

**confirmed** 2131:24

**conflict** 2037:12
2069:11 2075:12
2192:22

**conflicted** 2038:8

**conflicting** 2038:10
2144:9

**confused** 2074:8

**confusion** 2056:9

**connect** 2129:6,7

**connection** 2115:18
2129:3 2133:1 2164:8

**consequence** 2144:17

**consideration** 2023:3
2025:15 2050:25
2090:14,15

**considerations**
2026:15 2201:21

**considered** 2020:5
2021:16 2023:4 2090:7,
10 2197:2

**considers** 2089:4

**consistency** 2020:4

**consists** 2016:14

**conspiracy** 2136:20,
23 2137:4 2138:6
2144:17 2179:9,11

**constituency** 2026:17

**constitute** 2014:25

**constitutes** 2031:23
2181:7

**consult** 2050:23

**consulted** 2125:20

**consulting** 2052:13

**contact** 2190:17

**contacting** 2079:13

**contained** 2014:4

**contends** 2033:13
2034:22

**content** 2098:20
2197:22

**context** 2050:11
2094:6 2101:9 2173:25
2179:20 2198:1

**Continue** 2157:16

**continued** 2018:14,18
2138:25

**contract** 2075:3
2155:20 2162:1,2

**contradicted** 2020:6,
15

**contrary** 2017:18
2020:8 2021:1 2025:8
2037:20 2039:25
2044:8 2198:6

**contributing** 2029:17

**contributions** 2029:25
2030:2

**contrition** 2145:3

**control** 2013:11
2039:17 2171:8

**conversation** 2173:16
2193:8

**convert** 2123:20

**convince** 2146:20

**convinced** 2051:4

**convincing** 2020:23

**cooler** 2145:6,11,20

**coordinator** 2172:8

**COPE** 2076:19

**copies** 2009:24
2011:10 2013:19
2195:6

**copy** 2009:24 2011:25
2013:8,9,11,13 2051:22
2074:21 2091:13
2187:3 2188:18
2194:16 2195:19

**copying** 2203:8

**CORE** 2081:4,5,8

**Corliss** 2080:8

**corporate** 2004:16
2136:11

**corporation** 2015:25

**Correct** 2131:13

**corrupt** 2162:10

**corruption** 2079:5

**cost** 2038:24 2039:3
2106:24

**costs** 2039:4

**counsel** 2010:4
2015:1,4 2079:13
2083:22 2100:24
2136:15 2139:4
2176:20 2178:2,25
2191:11

**counsel's** 2126:1

**counted** 2020:21

**counting** 2020:19
2113:21

**countries** 2111:1

**country** 2111:4 2144:5

**coupe** 2141:10,19

**couple** 2081:2 2100:20
2101:19 2122:15
2139:3 2169:4 2177:13
2180:23 2197:15,22

**courage** 2153:14

**court** 2004:3,10,13,17
2005:11,14,19 2006:19
2007:24 2008:21
2009:4,11 2010:9,16,
19,24 2011:2,8 2012:9,
10,12,13,16 2016:2
2017:12 2022:24
2023:7,22 2052:12
2056:25 2062:18,19
2067:11,12 2068:20,25
2070:3,4,6,9,13,15,18
2091:16 2111:15,22
2112:1,18 2113:11,20,
24 2114:3,8,12,17,22
2115:5,6 2134:15,19,23
2135:3,11,19,20 2136:8
2174:8,12,15,18,21
2175:2,5 2184:13
2185:5,8,21 2186:1,5,
11,13,20,21 2189:7,13,
16,22 2190:13 2191:12,
13 2192:12,16 2193:3,
5,19,22,23 2194:7,12,
15 2195:4,20,25
2196:3,4,17,20 2197:6

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 216 of 240   PageID 16044

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022               Index: courthouse..defendants

2199:21 2200:8
2201:12,24 2202:12,19
2203:6 2204:4,17,18

**courthouse** 2172:23
2189:25 2191:4,9
2204:14

**courtroom** 2012:15
2015:19 2052:2,15
2068:19 2070:17
2141:17 2187:22
2188:5 2189:6 2190:5
2192:8

**courts** 2012:24

**cover** 2008:6

**covered** 2075:10
2111:12 2159:17

**covers** 2076:11,12

**coworker** 2123:6
2143:3

**coworkers** 2115:23
2116:15 2158:21
2165:3

**crack** 2199:22

**craft** 2029:6,8

**crap** 2005:22

**create** 2117:15 2124:6
2144:3

**creates** 2023:22

**credibility** 2019:23
2020:11 2023:4

**credible** 2020:7 2151:4

**cried** 2153:23

**criminal** 2102:5

**critical** 2115:20

**crocodile** 2153:12

**cross** 2203:16

**crossed** 2138:24
2156:1

**crying** 2013:21 2108:6

**cues** 2145:21

**culture** 2115:21,22
2116:5,13,14 2117:11,
15,17,23 2118:12,24

2122:5,7 2144:3

**cure** 2134:22

**current** 2117:2 2149:3
2179:25

**curriculum** 2172:9

**customers** 2098:22

**cut** 2152:23 2153:4

**Cuyler's** 2079:11

**cyber** 2144:13,15,19
2158:18 2177:19

**cyberbullying** 2146:5

**cycling** 2204:10

                D

**daily** 2108:7

**Dallas** 2172:22 2191:9

**damage** 2107:1
2176:12,13

**damages** 2023:22
2040:19,23,25 2041:2,
5,14,22 2042:7,9,11
2043:1,2,3,5,9,13,16
2044:5,23 2045:2,18,21
2046:3,4,24,25 2047:7,
10,12,13,17 2049:6,7,
15,17,21,22,24 2050:1,
8 2056:21,23,24
2057:2,4,13 2058:7
2059:5,8,15,18 2060:2,
5,12,15,21,24 2061:6,9,
16,19 2062:1,5,20
2063:2,9 2064:3,25
2065:3,10,13,22,25
2066:7,10,18 2067:2,
14,22 2068:6 2103:14
2106:13 2108:25
2110:13 2112:5
2166:11,15,25 2168:8,
11 2170:2,11,20 2171:1
2176:10,15,19 2177:6

**dangerous** 2080:10

**date** 2010:22 2041:19
2047:20 2048:16
2052:6 2057:22,25
2063:18,21 2067:25
2068:9 2081:25
2120:20 2121:9

2169:16,19

**dates** 2136:18 2141:4

**daughter** 2108:10

**day** 2004:6 2012:19
2069:11 2084:11
2085:17 2086:9
2089:19,20 2099:19
2108:12 2136:8
2139:17 2173:2,12
2188:7 2204:16

**days** 2088:8 2134:1
2153:5 2158:7

**DC** 2019:3,6 2088:5
2157:24

**de** 2039:3

**de-cert** 2079:12

**dead** 2141:2 2180:14

**deal** 2013:8 2145:23
2146:1 2150:19

**dealing** 2108:11
2143:23,25

**decades** 2161:16

**decency** 2144:14

**decertify** 2079:7
2161:17

**decide** 2015:16
2020:18 2032:7 2046:4
2050:24 2074:4
2103:21 2110:17
2111:2 2142:25
2192:10

**decided** 2084:1
2085:16 2183:6

**decides** 2091:22

**deciding** 2046:5

**decision** 2031:1,18
2035:13 2057:22,25
2063:18,21 2090:5,11,
17 2093:18 2108:22
2110:18 2119:2,4,13
2122:2 2123:2 2125:19
2128:19 2129:11
2137:18 2152:17,20
2153:7 2154:24
2160:25 2161:9,12
2162:24 2168:19
2169:8,16,19 2170:15

2171:13 2177:2

**decision-maker**
2044:10,16 2167:20
2168:4

**decision-makers**
2129:2 2130:19

**decisions** 2018:4
2044:15 2167:24
2168:5,18 2172:15,23

**decisive** 2025:8

**deduct** 2029:23

**deeper** 2148:13 2150:2

**defamatory** 2184:6

**defendant** 2015:22
2023:15 2024:7,9,21,24
2025:24 2026:2,20
2027:3,10 2029:1
2030:3,8,15,22 2031:1,
3,11,19 2032:7,8,12,16,
18,21,24 2033:1,9,12,
14,23,25 2034:2,8,9,12,
15,16 2035:4,9,12,19,
21,23,24 2036:3,4,10,
18,20 2037:2,3,7
2038:1,12,18,22
2039:7,8,11,15,16
2040:5,11,12,14,15
2041:17 2042:4,6,16
2043:6,9 2044:6,12,24
2045:3,11,23 2046:7,15
2047:1,2,4,14 2049:19
2050:1 2053:5,8,11,18,
20,25 2054:7,18,24
2055:6,13,20 2056:16,
19,24 2057:18 2058:13
2059:8,18 2060:5,14,24
2061:9,19 2062:5,24
2063:14 2064:9 2065:3,
13,25 2066:10,19
2067:1,17 2068:1
2103:2,24 2104:2,7,14
2105:1 2128:3 2147:17
2151:21,24 2155:7
2158:23,25 2160:10
2161:10 2168:15
2170:8 2171:5

**defendant's** 2032:10

**defendants** 2027:18,
21 2028:4,6,9 2033:3,6
2040:20,23 2044:15
2045:6,14,22 2046:21

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 217 of 240   PageID 16045
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022              Index: defense..dissent

2047:11 2056:25

**defense** 2032:11,22,25
2049:25 2071:15
2156:4 2159:11
2175:12,14,25

**defined** 2102:1

**defines** 2143:18

**defining** 2197:25
2198:7

**definition** 2156:14
2184:2 2197:11
2200:19 2201:8,14,15,
16,19 2202:3,6,7,9
2203:1

**definitions** 2104:5
2105:14

**definitiveness**
2041:11

**degree** 2038:25

**deliberate** 2050:21,22
2051:22 2068:24
2186:16

**deliberating** 2052:23
2068:14 2187:11,23
2188:14

**deliberation** 2193:9

**deliberations** 2015:24
2051:2 2052:1,11,20
2069:12,20 2188:13,15
2190:19

**demands** 2173:23

**demeaning** 2050:17

**demeanor** 2020:1

**demonstrate** 2074:12

**demotion** 2050:17

**denies** 2033:12
2034:21 2036:8 2037:7
2039:13

**Denise** 2160:17

**Denver** 2116:18
2149:13,15 2157:9

**deny** 2029:11 2138:11

**depend** 2009:2 2022:9

**depending** 2010:19
2025:13 2098:20
2191:19

**deposition** 2022:12,
14,20 2023:2 2080:20

**depth** 2161:13

**derogatory** 2164:10

**description** 2010:21,
22

**descriptive** 2089:4

**deserve** 2174:4

**deserves** 2020:11
2097:14 2136:8

**designated** 2028:12

**designation** 2028:14,
22

**designed** 2043:5
2122:7 2124:17

**desire** 2182:13

**despicable** 2088:6
2089:3,12 2158:2

**despises** 2077:5

**detail** 2022:11 2200:12

**deter** 2043:6 2047:4

**determination**
2025:15 2049:2

**determine** 2015:9,11
2019:22 2027:6,10,13
2029:7 2040:22,24
2042:9 2047:23
2048:24

**determining** 2021:22
2042:8 2044:10 2045:3
2167:20

**deterring** 2045:23

**DG** 2160:17

**dialogue** 2124:6

**diarrhea** 2139:11

**differential** 2025:20

**differently** 2051:6
2078:19 2079:19
2102:17 2105:10
2106:8,9 2154:15,18

**differs** 2051:12

**dig** 2148:13

**digging** 2150:1

**digital** 2145:19

**diligence** 2049:23
2050:6,19 2067:23
2068:5

**Dipippa** 2140:9

**dire** 2072:18

**direct** 2016:21 2017:3,6
2018:23 2020:15
2202:7 2203:16

**direction** 2088:23

**directly** 2098:19
2136:15

**disability** 2198:19

**disagree** 2077:1
2100:11 2105:25

**disagreed** 2128:9

**disagrees** 2122:9

**disappoint** 2201:5

**disapproval** 2018:21

**discharge** 2026:10,11,
22 2027:4,9 2031:2
2033:6,20 2034:3
2040:13,16 2054:2
2055:15 2102:19
2191:18

**discharged** 2030:22
2032:13 2033:9,14,25
2034:8 2038:9,13
2052:8 2055:8 2105:20,
21

**discharging** 2034:10
2037:21 2055:14
2127:7

**discipline** 2030:9
2031:12,19 2034:20
2035:8 2126:16
2143:17 2155:8
2160:10,12 2161:10

**disciplined** 2023:15
2126:15 2127:1
2160:22

**disclaimer** 2186:23

**disclose** 2052:17

**disclosure** 2114:4,7
2174:16

**discrepancy** 2202:1

**discretion** 2024:14
2025:14 2069:1

**discriminate** 2033:17
2034:17,25 2036:14
2040:2 2127:6 2164:6

**discriminated** 2036:5
2053:25 2054:7
2055:13 2105:1
2136:24 2165:17

**discrimination**
2024:13 2033:3,22
2034:7 2035:3,11,18
2036:3,17 2044:3,9,22,
25 2045:5,10,13 2163:6
2166:10 2167:11

**discriminatorily**
2026:3 2027:8,14
2154:24

**discriminatory**
2025:12,20 2043:20,23
2152:14 2154:16
2167:3

**discuss** 2191:12

**discusses** 2158:12,13

**discussing** 2018:13

**discussion** 2121:12
2125:7 2127:10

**dishonesty** 2025:18

**dismantle** 2161:20

**disparaging** 2098:7

**dispute** 2017:9 2128:7,
8 2142:14 2155:16
2160:4

**disputes** 2160:5

**disregard** 2014:11,14,
17 2023:19 2031:25
2046:13

**disrupted** 2108:4

**disruption** 2038:24
2039:5

**dissent** 2143:19

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 218 of 240  PageID 16046

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                         Vol 7 July 13, 2022              Index: dissenter..employees

2155:23 2158:6
2162:12

**dissenter** 2163:23

**dissenting** 2156:15

**dissimilar** 2050:16

**distinction** 2017:3
2025:22

**distinguish** 2015:3

**distress** 2041:23
2042:2 2058:11 2064:7
2170:6

**disturbing** 2142:7

**dive** 2147:7

**division** 2052:18

**document** 2091:14,15
2101:4 2113:18,25
2162:6 2180:16

**documents** 2016:15
2150:12 2157:19
2187:9

**dollars** 2047:23
2057:19 2058:1,15,20,
24 2059:21 2060:17
2061:12 2062:9 2063:1,
15,19,22 2064:11,16
2065:16 2066:13
2067:4,19 2068:7
2108:17,20

**donated** 2077:11

**Donna** 2140:9

**dossier** 2085:20

**dots** 2129:6

**double** 2176:18

**doubt** 2102:4 2183:8

**downfall** 2145:4

**downplay** 2173:7

**dozens** 2162:8

**draw** 2016:18 2197:19

**drawn** 2020:16

**dreadful** 2080:12

**dress** 2088:13

**drill** 2145:13

**drive** 2009:19 2074:22
2195:5,8

**dues** 2029:24 2030:2
2089:11 2128:10
2178:23,24

**duties** 2028:2

**duty** 2013:2 2014:2,6
2024:6,10,11,21
2025:10,25 2026:6,9,23
2027:7,11,13,16 2042:5
2043:14 2049:14,21
2050:21,22 2053:8
2060:22,25 2061:7,10
2102:13,19 2104:3
2122:19 2136:7 2143:5
2151:18,21 2152:12
2166:17

**dwell** 2185:6,21,23

**dwelling** 2185:24
2186:1

**dying** 2191:1

---

## E

**eagle-eye** 2004:18

**earlier** 2198:16
2201:15 2203:1

**early** 2018:11 2071:2

**earn** 2048:6,15,19

**earned** 2041:16
2042:15 2048:13,17
2068:4,10 2070:15
2190:22,24

**earnings** 2041:20
2042:22 2047:22,24
2048:3,10,18

**ears** 2201:3

**easiest** 2202:13

**easy** 2155:15

**economic** 2046:10

**economically** 2172:15

**edited** 2153:4

**educated** 2045:7

**education** 2172:6,11

**educators** 2172:5

**Edward** 2004:15
2136:11 2194:14
2196:19

**effect** 2048:25 2146:3
2177:5

**effective** 2110:6
2146:20 2173:21
2186:7 2191:7

**effectively** 2026:16

**efficient** 2007:11

**effort** 2029:20 2045:17
2050:23 2128:11

**efforts** 2018:18 2044:8
2045:4

**egregious** 2044:22

**Eighteen** 2201:12

**elected** 2025:4
2081:10,19

**electronic** 2011:11,16,
24 2188:18

**element** 2016:10
2160:2 2161:5

**elements** 2030:18
2031:6 2038:17
2041:13 2147:8

**Eleven** 2019:7

**eliminating** 2142:21

**else's** 2006:8 2088:23

**email** 2008:12,18
2011:12 2018:5
2076:14 2078:14,22
2085:5 2113:4,6
2150:23 2151:4 2190:4,
8,13 2194:16 2195:18

**emailed** 2151:5

**emailing** 2009:18
2139:12

**emails** 2018:14
2019:13 2076:2
2078:11 2083:18
2085:1 2128:22 2130:8,
12 2136:18 2139:5,17,
19 2140:1 2177:13

**embarrassing**

2011:19

**embezzled** 2175:23

**embodiment** 2118:23

**Emlet** 2116:17 2117:1
2125:20 2128:21
2129:9 2130:20 2132:2

**Emlet's** 2117:14

**emotional** 2041:23
2042:2 2058:11 2064:7
2145:22 2170:6

**emphasizes** 2115:22,
23

**emphatic** 2127:8
2128:4 2130:24

**employ** 2028:20

**employee** 2026:10,11
2030:13 2033:17,20
2035:1 2036:15
2037:18,21 2039:23
2040:3 2042:16
2075:22 2076:12
2089:21,24 2096:5
2098:6,10 2102:20
2117:1,2,10,16,17
2121:7 2126:25
2129:22,25 2130:3
2131:17 2144:10
2147:18,22,24 2148:8,
11,12,21,24 2149:4,9,
20,23,25 2151:12
2165:13 2173:5
2181:23 2183:12
2198:4

**employee's** 2033:18
2035:1 2037:15,24
2039:20 2040:3

**employee-rights**
2163:9

**employees** 2023:16
2024:12 2027:24,25
2028:18,22,24 2029:3,
7,12,15,20,24 2036:22
2042:21 2045:7 2054:9
2075:4,10 2078:18
2098:22 2102:14
2116:6,7 2122:17,20
2123:23 2124:18
2130:13 2142:1
2149:12 2163:5
2164:16 2173:19

Case 3:17-cv-02278-X  Document 453  Filed 06/14/23  Page 219 of 240  PageID 16047
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022           Index: employees'..extra

2178:19,22

**employees'** 2128:24
2143:9

**employer** 2030:12
2033:12,16,19 2034:25
2037:14 2040:2
2127:21

**employer's** 2037:19
2039:3

**employers** 2184:19
2197:21

**employment** 2018:15
2033:15 2037:13
2039:18 2041:16,18,21
2043:24 2044:15
2050:4,10 2067:24,25
2119:2,5 2125:19
2128:20 2165:8
2167:24 2168:5
2171:10

**encourage** 2173:15

**end** 2006:10 2069:6,17,
21,24 2111:12 2112:21
2114:8 2146:5 2150:25
2178:21 2198:19
2200:8

**enforce** 2122:6

**enforced** 2141:25

**engage** 2037:18
2039:23 2075:4
2104:19 2178:8 2198:4

**engaged** 2030:19
2031:7 2032:14,19
2043:19,22 2044:25
2053:21 2055:9 2075:7,
22 2096:3,4 2104:15
2105:9 2155:17 2156:7
2159:1 2160:3 2162:14
2167:2 2179:13
2183:21,23 2184:7

**engaging** 2030:5,9
2045:22,24 2053:12
2054:25 2066:20
2067:2 2082:6 2094:19
2103:3 2104:8 2130:25
2155:9 2179:15

**enjoy** 2133:24

**enjoyed** 2133:25

**enjoyment** 2041:19
2058:13,18,22 2064:9,
14,18 2170:8

**enlightening** 2203:2

**ensure** 2056:25

**entered** 2012:15
2070:17 2075:17

**entering** 2192:18

**entire** 2077:5 2140:7
2142:17 2162:5,16

**entitled** 2023:2,23
2045:19 2047:22
2048:25 2051:18
2107:22 2112:16
2129:23 2180:20
2182:11 2183:19

**equal** 2016:1 2102:2

**equally** 2025:21
2076:10 2077:18

**equals** 2016:1 2109:20

**equitable** 2174:22

**equivalent** 2024:19
2050:4,10 2067:24

**essentially** 2117:15
2119:1

**establish** 2016:6
2024:1 2038:18

**established** 2038:17

**evaluated** 2050:19

**evening** 2068:24

**event** 2083:6

**eventually** 2091:22

**everybody's** 2174:4

**everyone's** 2006:11
2173:10

**evidence** 2015:1,2,4,7,
8,9,12,18 2016:3,6,7,
11,13,14,16,21,23,24
2017:4,5,11 2020:7,15,
16,23 2021:2,5,6,8,10,
16,18,24 2023:18
2024:2 2025:5,9
2026:2,13,25 2030:17
2031:5 2032:23,25
2033:24 2035:5

2036:19 2038:5,19
2040:9 2041:6,7
2042:15,24 2043:18
2044:7 2049:12 2050:2
2051:1,14,16,24
2074:16,18 2101:1,24,
25 2104:10 2113:6,7,14
2125:16 2126:24
2129:4 2130:18
2131:24 2134:20
2135:4 2137:25 2139:4
2147:10 2150:11
2159:14 2160:8,13
2164:19,20 2167:2
2172:17 2177:24
2185:1,2,11,12,14
2187:1,4,8 2189:3,9,17,
20 2195:11 2198:25
2199:4 2203:14

**exact** 2042:8 2113:1

**exam** 2111:7

**excellent** 2191:2

**excited** 2013:23 2173:3
2186:22

**exclusive** 2018:1

**excuse** 2103:8,9
2124:8 2191:24
2192:20 2193:6

**excuses** 2123:10

**executive** 2078:8
2130:9 2139:7 2140:7
2162:5

**executives** 2079:23

**exercise** 2024:14
2039:16 2049:22
2067:22 2073:1 2101:4

**exercised** 2068:4

**exercising** 2030:14
2061:21 2062:7 2073:7,
24

**exert** 2169:7

**exhibit** 2009:16
2010:10,20,21 2011:14
2023:9,11 2074:23
2075:1 2076:13,14,18
2077:15,20,22,24
2078:21,22 2079:20
2081:3,15,24 2082:12
2084:6,13,23 2085:25

2086:1,15,21 2087:1
2089:16 2090:20
2095:2,8,9,16 2097:8,
15 2098:11 2100:21
2109:14 2129:13
2133:11 2140:19
2148:16 2150:4,13
2152:21 2157:1,18
2160:15 2180:12
2194:20 2195:8,11,13
2196:23 2198:17,18,23

**exhibits** 2006:4
2009:17,20 2011:17,20,
23 2014:25 2016:16
2051:23 2074:21,23
2082:5 2085:1 2086:18
2166:1 2188:17 2195:1,
7

**exists** 2017:1

**exited** 2068:19 2189:6

**expand** 2142:2

**expectations** 2006:23

**expenses** 2048:2

**experience** 2146:10
2154:6,9

**experienced** 2146:7,
12 2170:10

**experiences** 2154:12,
14

**explain** 2123:20

**explanation** 2120:21

**explanations** 2123:8

**explode** 2077:12

**express** 2100:9
2157:13 2182:13

**expresses** 2032:5
2144:19

**expressing** 2018:21
2126:15,17

**expression** 2143:18
2173:6

**extend** 2142:20
2173:17

**extent** 2023:17

**extra** 2013:10 2102:7

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 220 of 240   PageID 16048
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022                    Index: extremely..flights

**extremely** 2072:1,2
2088:20 2094:15

**eye** 2016:22

**eyes** 2153:23 2155:13
2195:6

---

**F**

---

**face** 2044:19 2145:24
2192:10

**Facebook** 2018:5
2019:9,13 2071:9
2073:12 2079:1
2082:15 2083:15
2091:18,20 2095:14
2097:19 2098:5 2145:6,
11 2146:6 2150:7,21
2157:5 2163:17

**fact** 2016:25 2017:1,11
2020:25 2022:10
2023:21 2041:1 2072:1,
16 2075:19 2080:24
2084:1,2,8 2089:17
2091:6 2106:2 2108:13
2120:9 2141:13
2164:19 2169:12,25
2176:2

**fact-finding** 2019:17
2095:7 2125:6 2132:5
2137:8,9 2149:11
2157:3

**factor** 2031:1,18
2161:8,11 2162:23

**factors** 2047:25

**facts** 2014:13,15
2015:11,13,14 2016:18
2017:5,9,10,13 2025:16
2044:5 2051:8 2111:10
2141:12,20 2179:10
2180:3 2181:16
2183:18

**fail** 2039:19

**failed** 2016:10 2021:25
2037:4 2038:2 2039:9
2040:6 2049:20 2050:5
2054:18 2055:20
2067:21 2092:20
2103:12 2105:13,15
2128:3 2162:2

**failure** 2025:21 2037:1
2038:10 2039:6 2050:8

**fair** 2015:17 2016:17
2024:6,10,21 2025:10,
25 2027:12 2033:21
2042:5 2043:15
2049:14 2053:8
2060:22,25 2061:7,10
2090:13 2097:20
2102:13 2104:3
2131:13,23 2132:14,16,
17 2137:25 2151:18,22
2152:12 2164:3
2166:17 2173:4
2189:21 2195:14

**fairly** 2042:10 2057:16
2058:10 2062:23
2063:12 2064:6
2067:16 2076:10
2077:19 2168:13
2170:5 2171:4

**fairness** 2132:21

**faith** 2024:15 2025:12,
18 2026:4,14 2027:8,15
2044:8 2045:4,17
2102:17 2143:19
2152:14 2153:8,9
2154:11,23

**fake** 2148:5

**falling** 2200:4

**false** 2031:24 2181:13

**falsehood** 2022:8

**falsity** 2031:25 2181:14

**familiar** 2076:7

**family** 2108:16 2172:5

**fantastic** 2138:2

**FAS** 2158:8

**fashion** 2026:8

**favor** 2014:10

**favorably** 2036:21
2054:9 2164:16,21

**favored** 2025:23

**favorite** 2079:11

**February** 2019:7,12
2083:21 2084:20
2085:6,11,16,24

2086:3,9

**federal** 2024:8 2027:21
2044:20 2045:8
2048:23

**federally** 2044:2,18
2167:10

**fee-paying** 2018:9

**feel** 2073:13 2076:5
2097:2,5 2118:10,12
2146:1,17,21 2154:2,8
2169:21 2200:13

**feelings** 2020:1
2145:25

**feels** 2137:13 2145:24

**fees** 2029:24 2030:2

**fellow** 2051:1 2068:15
2188:25

**felt** 2072:19 2122:1,2
2146:6 2148:6 2156:25
2165:17 2167:14

**fetus** 2146:10 2153:15
2156:13

**fetuses** 2097:19
2137:2 2151:6 2152:10
2154:21 2156:16
2159:5 2162:21

**Fifteen** 2019:19

**fighting** 2145:13

**figure** 2007:5 2171:15
2187:7 2198:22 2202:2

**file** 2023:24 2121:9
2177:12

**filed** 2028:5 2092:15

**filibuster** 2006:4

**filing** 2023:20

**fill** 2013:12 2052:5

**final** 2004:6 2070:22
2121:8

**finally** 2171:1 2184:11

**financial** 2039:4
2047:2

**financially** 2170:1

**find** 2011:19 2016:9

2017:4 2026:18 2027:1
2034:9 2035:21
2038:16 2040:20
2045:14,18 2047:21
2049:11 2053:18
2055:6 2056:16 2059:7
2060:4,23 2061:18
2065:2,24 2066:17
2067:21 2085:21
2104:12 2151:4
2158:23

**finding** 2015:14 2192:7

**findings** 2140:17

**finds** 2056:23 2057:2
2076:18 2200:10

**fine** 2008:2 2011:2
2096:23 2099:2
2101:12 2109:3 2115:1
2135:11 2175:18
2186:17 2188:9
2203:25

**finish** 2051:6 2069:2

**fire** 2073:18 2097:6
2117:8 2137:18

**fired** 2073:23 2074:13
2092:25 2093:3 2103:6,
7 2105:24,25 2108:5
2138:9,12 2139:1
2177:4,18 2178:7,10,13
2182:16

**fires** 2072:7

**firing** 2030:4 2094:18
2103:3

**firsthand** 2146:8

**fixed** 2025:16

**flag** 2006:19

**flash** 2074:22

**flew** 2116:17

**flexible** 2070:25

**flight** 2017:20,23
2088:9,14,16 2092:23,
25 2097:23 2107:9
2116:18 2120:11
2126:4,6 2145:7,16
2147:25 2158:9

**flights** 2120:13

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 221 of 240   PageID 16049

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Index: flipping..Gutierrez

**flipping** 2107:12

**floor** 2108:6

**flying** 2120:3,11 2134:7

**folks** 2116:9 2125:24 2128:22 2135:20 2144:6 2145:21 2172:24 2191:3

**follow** 2014:5,6 2072:20,21 2137:4 2138:6 2171:25 2182:25 2183:17

**follow-up** 2202:18 2203:12

**forbids** 2027:23

**force** 2020:23

**forecast** 2006:22

**foremost** 2125:18 2129:16 2147:19 2149:4

**foreperson** 2011:18 2013:11 2051:25 2052:5,11 2068:9 2069:6,16 2188:1 2190:3,14 2196:9

**forget** 2022:4 2113:5 2175:13

**forgot** 2176:10 2189:11 2200:9

**form** 2011:13 2022:20 2052:6,18,21 2068:9 2188:18 2192:9

**format** 2204:8

**forward** 2107:17 2111:13 2140:6 2174:6

**found** 2025:22 2076:20 2079:2 2113:1 2141:18 2146:13,14 2181:8

**four-year** 2162:16

**Fourteen** 2019:16

**fourth** 2029:2 2030:6, 11,21 2031:9,22 2032:4,15,20 2131:22 2155:11

**fraction** 2109:19

**frank** 2164:24

**frankly** 2082:12 2088:21 2109:5 2163:18

**fraud** 2140:19 2141:5

**fraudulent** 2162:6

**free** 2044:2 2075:4 2121:4 2142:22 2143:10 2151:13 2160:23 2167:11 2173:8

**freedom** 2027:24 2074:14 2100:15 2101:5,14

**fresh** 2199:9

**Friday** 2187:10,22

**friend** 2093:8

**friendly** 2091:4

**front** 2047:16 2049:3 2062:20 2067:13 2110:14,20,21 2113:12 2139:5 2171:1,7,10

**fruition** 2083:20

**frustrating** 2134:2

**Frye** 2008:17 2009:18 2011:13 2189:23 2204:7

**full** 2057:1 2101:21 2108:23 2172:3 2176:14 2198:2

**full-time** 2110:15

**fun** 2077:14

**funds** 2029:16 2141:16

**future** 2043:7 2045:25 2047:6,17,20,22 2048:10,12,18,20 2058:21 2062:24 2064:17 2067:17 2171:5,7 2178:13

---

## G

**gather** 2145:10

**gathered** 2085:23

**gauntlet** 2180:25 2182:9

**gave** 2103:17 2106:3 2112:23 2119:21 2132:8,19,24 2195:7

**gender** 2163:7

**general** 2017:2 2028:2 2099:21

**generally** 2016:20 2128:11 2168:23 2169:4

**genitalia** 2090:8

**gentleman** 2139:6

**gentlemen** 2115:10 2120:5 2130:6 2143:21

**Ghost** 2078:5

**Gilliam** 2004:8,9 2005:13,17 2100:16 2103:10 2110:11 2182:3 2196:12,13,14 2200:2 2201:7,11 2204:3

**girlfriend** 2092:17

**girls** 2145:13

**give** 2005:21 2013:8, 13,23 2020:10 2021:22 2051:5 2052:12 2068:11 2077:10 2101:11,13 2109:17 2114:3 2119:15,18 2120:24 2135:3,25 2147:9 2151:11,12 2167:18 2174:18 2176:14 2186:22 2190:6,23 2191:8 2194:18 2195:15 2199:6,19 2200:20,24 2202:7,21 2203:21

**giving** 2011:3,4 2057:1 2097:13

**glad** 2109:10 2181:11 2184:9

**glaze** 2155:13

**goal** 2133:20

**God** 2017:19

**good** 2008:10 2009:6 2011:10,14 2012:2 2013:18 2024:15 2026:14 2033:20

2044:8 2045:4,16 2093:20 2100:18 2101:18 2106:19 2115:10 2124:21 2136:4 2138:4 2168:22 2172:24 2190:1 2191:6 2193:16 2195:15

**gosh** 2101:18 2118:18 2176:23

**govern** 2144:2

**governed** 2075:11

**government** 2048:23 2143:24 2188:11

**graciously** 2187:16

**grade** 2109:12

**graphic** 2097:18 2098:1,4 2143:2,13 2146:15

**great** 2007:25 2102:12 2159:19 2190:25 2193:15 2194:8

**greater** 2020:25 2038:25 2051:18

**Greenfield** 2004:14,15 2005:10 2112:19 2114:19,25 2135:7,9,16 2136:1,3 2194:13 2196:18,19 2197:4 2199:13,15 2201:22 2203:3 2204:2

**Greenfield's** 2135:22

**grievance** 2024:18 2026:7 2118:16 2132:6

**guess** 2006:24 2082:11 2089:1 2114:14 2126:18 2127:16 2192:10 2194:8 2199:11 2202:15

**guesswork** 2041:8

**guidance** 2202:21 2203:21

**guide** 2051:25 2201:18, 19

**guilty** 2141:18

**Gutierrez** 2132:3 2160:17

**guys** 2076:6,7 2103:20 2133:25

---

**H**

---

**Ha** 2077:4

**Hafner** 2078:7 2114:1 2135:5

**Hafner's** 2113:6

**half** 2008:23 2085:2 2086:7 2099:5

**hall** 2149:18

**hand** 2013:19 2041:9

**handling** 2024:18

**handy** 2091:14

**happen** 2069:14 2071:2 2080:4 2086:9 2088:8 2124:14 2131:10 2158:6

**happened** 2098:23 2102:22 2103:5 2118:17 2122:8 2175:17

**happening** 2103:11

**happy** 2005:12 2007:21 2078:16

**harass** 2146:25 2159:6

**harassed** 2148:10 2156:24 2165:17 2167:15

**harassing** 2156:20

**harassment** 2090:9 2142:22 2143:11 2144:16 2146:22 2149:23 2151:9,13 2160:23 2163:6 2173:8, 19

**hard** 2009:24 2011:10, 25 2074:21 2085:21 2091:13 2147:3 2188:18 2195:6

**hardship** 2038:21,23, 25 2039:2 2056:19 2106:24

**harm** 2042:10 2046:9, 17,21 2047:8 2159:5

**harmed** 2046:16,20

**hat** 2124:23 2125:8,9 2150:19

**hats** 2087:17 2095:25 2105:22 2125:11,13

**haunted** 2146:11

**hazing** 2116:2

**head** 2077:12 2136:2 2159:18 2197:6

**headlock** 2187:20

**headquarter** 2116:23

**headquarters** 2149:19

**health** 2042:18 2046:13

**hear** 2115:7 2116:10,11 2129:14 2139:16,18 2177:21 2189:11 2192:11 2194:4 2199:9

**heard** 2015:12 2023:17 2090:22 2107:15 2112:23 2113:13 2116:16,25 2117:3 2118:20,21 2119:14 2126:2 2129:9 2132:2, 9,25 2136:9 2137:24 2138:1 2139:13 2144:3, 20 2145:1,14 2147:20, 22 2148:19 2152:4 2160:18 2161:18 2163:20 2164:1 2169:1 2171:23 2172:17,19 2177:23

**hearing** 2013:5 2101:6, 7 2118:22 2119:1,3 2132:6,12,15,20 2133:3,21 2137:21 2174:6

**heart** 2117:9,19

**heated** 2168:24

**heavy** 2080:14

**heels** 2204:6

**held** 2019:16 2033:10, 18 2034:4,18 2035:1,15 2036:6,15,24 2037:5 2038:2,7 2039:9,21 2040:3,6 2054:3,11,19 2055:16,21 2115:4 2135:18 2170:1

**2171:14 2172:14 2175:1 2186:19**

**helped** 2117:15

**helpful** 2074:20

**helping** 2191:6

**herring** 2130:16

**hesitate** 2051:2

**hey** 2008:12 2078:17 2124:12 2189:10 2200:21 2203:14

**high** 2102:5

**highlighted** 2090:25 2091:7

**Hill** 2004:9 2009:21 2010:13,17,25 2011:7 2082:10 2098:15 2182:4 2196:14 2201:10,25 2202:25

**hired** 2017:20

**hiring** 2177:11

**history** 2080:12

**Hobson's** 2101:10

**hold** 2113:22 2149:2,3

**holding** 2025:4 2126:11,24

**hole** 2200:15

**home** 2008:7 2145:8

**honest** 2051:5 2109:6

**honestly** 2009:4 2011:2

**honesty** 2024:15

**Honor** 2005:10,13 2006:18 2007:14 2070:5 2071:6 2136:3 2185:11 2186:17 2189:10 2197:5 2199:17 2200:3 2201:7 2203:4

**hope** 2012:22 2074:21 2111:12 2146:8 2165:22

**hoping** 2200:13 2202:12

**horrors** 2123:21

**hostility** 2024:13

**hot-button** 2099:24

**hotel** 2092:5 2123:15

**hotels** 2145:9

**hour** 2007:11 2008:23 2009:5 2174:22 2186:1

**hours** 2069:10

**house** 2195:20

**huddle** 2111:18

**Hudson** 2087:7 2117:3, 14

**human** 2017:17 2046:13

**hundreds** 2139:17 2145:14 2155:22 2183:9

**hurt** 2124:16 2145:25 2179:1,6

**hurtful** 2145:24

**husband** 2108:6,9

**husband's** 2108:14

**hyperbolic** 2032:3 2071:23 2094:15 2181:20

---

**I**

---

**ideas** 2173:16 2199:13, 16

**identical** 2050:12

**identifiable** 2098:5,9

**identities** 2021:13

**ignore** 2122:13,17 2139:14 2141:20 2143:4,5,15 2164:15

**ignoring** 2026:7

**Ill** 2004:15 2075:9 2136:11 2194:14 2196:19

**illegal** 2158:4 2184:5

**images** 2124:18

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 223 of 240   PageID 16051
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Index: impact..involved

**impact** 2098:21 2116:20

**impactful** 2072:15

**impartial** 2015:17 2050:25

**Impeachment** 2021:20

**important** 2015:3 2022:10 2076:7 2107:21 2115:20 2116:3,5 2140:11 2143:9,10 2166:13 2173:2,7 2188:22 2193:17,18

**impose** 2047:12

**imposed** 2038:21 2047:13 2056:18,19

**imposes** 2024:9

**impression** 2014:9,11, 12,14 2051:19

**improper** 2078:18 2124:24

**improperly** 2077:13

**in-depth** 2197:11

**in-flight** 2149:14

**inaccurately** 2022:5

**inappropriate** 2095:25

**incestuous** 2153:22

**inch** 2085:2

**inclination** 2200:5 2203:11

**inclined** 2122:18 2192:24 2199:16

**include** 2007:19 2042:11,17

**included** 2087:6,18 2163:17

**includes** 2042:14

**including** 2019:1 2079:25 2095:25 2129:25

**income** 2048:22

**inconsequential** 2049:7

**inconsistency** 2020:4

**inconsistent** 2021:20

**inconvenience** 2038:24 2041:24 2058:12,18,22 2064:8, 14,18 2170:7

**increased** 2050:8

**incredibly** 2080:9

**incumbent** 2128:17

**incurred** 2048:3

**independence** 2027:25

**independent** 2051:16

**index** 2010:2,11 2011:9

**indifference** 2044:1,17 2045:15 2167:9,12,13, 16

**indirect** 2016:22

**individual** 2025:13 2043:19 2050:20 2167:2

**individual's** 2100:15

**individually** 2017:14

**individuals** 2163:25

**induce** 2029:21

**indulgence** 2135:21

**industrial** 2024:19

**industries** 2145:7

**infer** 2034:12 2035:24

**inference** 2020:15 2023:20,22

**inferences** 2016:17

**influence** 2028:13,16, 21 2029:20 2169:5,8 2170:15

**influenced** 2015:20 2051:17

**information** 2085:6 2150:15 2199:5

**informed** 2009:23 2148:25

**injuries** 2046:2

**injury** 2049:10 2170:23

**inner-city** 2080:14

**innocent** 2022:8

**inquiry** 2052:12

**inside** 2085:12

**instance** 2069:13

**Instant** 2150:6

**instantaneous** 2010:6

**instruct** 2014:3,6 2015:15 2024:4

**instructed** 2172:18

**instructing** 2041:2

**instruction** 2014:22 2023:13 2072:21 2107:5,6 2112:12,17 2134:21 2176:17,23 2181:5 2185:4 2197:13 2200:7

**instructions** 2014:1,5, 16,21 2023:8 2069:21 2071:7,19 2073:9 2074:18 2086:17 2096:14 2099:14 2101:20 2112:4 2122:24 2123:2 2127:20 2167:19 2176:9,11 2183:17 2187:2 2188:24 2200:4 2202:23 2203:23

**insulting** 2032:3 2071:23 2089:1,2,3 2094:14 2181:20

**insurance** 2042:18

**integral** 2173:10

**intemperate** 2032:2 2071:22 2094:14 2181:19 2182:15

**intend** 2005:3

**intended** 2146:24,25

**intense** 2162:14

**intentional** 2022:7 2044:25 2046:12

**intentionally** 2181:16

**intentions** 2148:3

**intents** 2021:13

**interest** 2020:2 2024:12 2042:12 2048:5,15,19 2102:14

**interested** 2020:13

**interests** 2173:14

**interfere** 2028:16 2029:14 2075:15

**interference** 2028:13, 21

**internally** 2076:25

**interning** 2191:5

**interpretation** 2112:17,24 2161:2 2202:18

**interpretations** 2200:1

**intersect** 2144:11

**intervention** 2160:22

**interview** 2092:3 2177:11,15,16 2185:17

**interviewed** 2090:21 2092:21 2095:10 2177:10

**interviewing** 2187:5

**interviews** 2189:18

**introduced** 2014:25

**investigate** 2086:23,24 2131:19 2143:6

**investigated** 2127:1

**investigating** 2093:17 2149:22

**investigation** 2019:18 2090:4,11,16 2093:23 2131:24 2169:6 2181:9

**investment** 2048:7

**involve** 2129:1,2

**involved** 2078:8 2128:19 2132:1,2 2181:2 2188:22 2192:14

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 224 of 240   PageID 16052

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022          Index: involving..leadership

**involving** 2025:14

**ironic** 2117:21

**irrelevant** 2023:16
2130:17

**isolating** 2014:23

**issue** 2021:14 2099:24
2140:24 2158:22
2169:14 2182:6

**issues** 2111:18 2112:1,
20 2192:4

**items** 2057:20 2058:16
2063:16 2064:12

**J**

**Jackson** 2084:9,15,21
2140:3,5,23 2141:1

**Jackson's** 2162:4

**January** 2018:25
2019:4 2082:25
2085:15

**jar** 2146:10

**Jeanna** 2084:9,14
2140:3,5,22 2141:1
2162:3

**Jerry** 2141:9

**Jessica** 2140:9

**job** 2011:22 2032:6
2038:8,10 2050:11,13,
14,15,20 2077:17
2094:1 2101:2,8,12,15
2107:7,12 2108:8
2110:17,20 2118:14
2119:11,12,18,19,22,24
2120:22,25 2133:18,21
2137:23 2138:2,4,5,10,
13,17 2144:25 2169:13,
23 2177:14,17,20
2184:24 2185:16
2190:25 2191:2,6

**jobs** 2107:15 2187:6

**jog** 2011:5

**John** 2105:7 2140:9

**join** 2029:12,21

**joint** 2194:25

**joking** 2013:20

**Jones** 2132:2 2145:14

**judge** 2069:19 2071:8
2076:4,5 2102:11
2103:17 2111:3 2115:2
2141:17 2166:21
2176:16 2186:7
2187:12,16,19,21,24
2191:15 2193:12
2195:24

**judge's** 2072:21
2110:16

**judged** 2023:3

**judges** 2014:15
2015:13 2051:7

**judgment** 2023:23
2141:15 2192:18

**juries** 2069:12 2110:25

**juror** 2051:19 2194:15
2196:6,7

**jurors** 2012:15 2051:1,
6,17 2068:15,19
2070:17 2188:25
2189:6 2190:16

**jury** 2005:2,8,15,20,22
2006:20 2007:16,17
2008:2,11,15,19,25
2009:6 2011:19
2012:17 2013:9 2014:1,
2 2051:21,25 2052:4,8,
11,24 2056:22,24
2057:2 2068:8,24
2069:9 2071:7,18
2073:9 2074:17
2096:14 2099:14
2101:17,20 2110:24
2112:11 2114:19
2118:14 2127:5 2134:1
2135:12 2141:17
2143:21 2147:1,7,12
2169:16 2172:25
2181:5 2185:19 2187:2
2189:5 2190:2,7,9
2191:1 2192:21
2193:17 2194:17
2196:23 2198:9
2200:10

**jury's** 2057:22,25
2062:19 2063:18,21
2067:12 2169:19

**justice** 2013:1 2016:2

**justify** 2045:1

**K**

**keeping** 2081:16

**Keith** 2140:9

**key** 2147:6,10 2151:15

**kicked** 2081:19

**kidding** 2100:17

**killing** 2073:14,15

**kind** 2010:25 2072:15
2081:25 2084:5 2104:4
2122:22 2158:16
2168:21 2192:7

**kinds** 2105:9

**Kinkeade** 2008:5
2069:19 2187:16,19,21
2191:15 2193:12

**knew** 2103:6 2124:14
2138:24,25 2141:14
2146:14 2154:1

**knock** 2005:23

**knowing** 2073:17
2092:6

**knowledge** 2031:25
2181:14

**knowledges** 2021:13

**L**

**labor** 2024:8,22
2027:17,22 2029:13,17,
22,25 2032:9 2040:21
2042:4 2043:11,15
2049:13 2053:13,22
2055:1,9 2061:17,21
2062:2,8 2066:21
2067:3 2071:13 2104:8,
15 2116:17 2117:13
2125:21 2151:23
2155:5 2159:2,9
2166:18

**labored** 2152:17

**Lacore** 2080:6,25
2086:3,12,14 2087:5,6

2130:7,8 2139:18,19

**ladies** 2115:9 2120:5
2130:5 2143:21

**laid** 2195:6

**Lair** 2113:9

**language** 2123:4
2125:2 2145:21
2151:15 2156:18,22
2168:17 2175:13
2204:7

**lanyard** 2099:11

**Las** 2019:14

**late** 2012:18

**launch** 2068:11

**law** 2014:3,4,5,7,8,17,
21 2015:14,16,18
2016:1 2017:2 2024:4,8
2026:9 2027:22
2044:20 2045:17
2049:21 2072:10,21
2088:21,25 2096:13
2097:7 2102:18,21
2103:9 2111:7,8
2112:22,24 2113:14
2123:7 2127:19 2128:1
2172:18 2173:15
2182:10,25 2183:17
2186:25 2187:1 2192:4
2197:19 2199:6
2200:15,19 2202:21
2203:21

**lawful** 2075:4,7,15,22

**laws** 2045:8

**lawsuit** 2023:21,24,25
2028:5

**lawyer** 2008:1,9
2103:19 2112:24
2186:25 2189:16,25
2194:2

**lawyers** 2015:6
2110:25 2111:2,6
2173:21 2186:24
2193:16

**leader** 2080:1

**leadership** 2018:4,5,
22 2079:9,25 2080:16,
17 2128:12,18 2179:25

**learn** 2078:7

**learner** 2013:4

**leave** 2088:4 2092:4 2157:24 2177:17 2200:24

**led** 2118:16 2131:25 2203:9

**left** 2113:19 2188:6

**leg-breaking** 2078:5

**legal** 2079:13 2100:24 2111:17 2166:23

**legally** 2191:16,22 2192:1

**legitimate** 2099:2

**legs** 2009:7

**letter** 2097:16,17 2129:12 2194:20 2195:11

**level** 2134:2 2200:12

**liability** 2038:18 2041:4 2052:25 2053:1 2054:22 2147:13

**liable** 2024:25 2033:1 2040:25 2156:9 2171:14

**lies** 2159:4

**lieu** 2171:10

**life** 2017:18 2041:25 2058:13,19,23 2064:9, 15,19 2073:14 2108:4, 15 2125:25 2146:6 2152:24 2153:24 2154:5 2164:2,3 2170:8 2179:5

**light** 2014:22 2015:8 2020:5 2050:19

**lights** 2188:11

**Likewise** 2072:23

**limine** 2006:8

**limit** 2141:25

**limitation** 2027:23

**limited** 2021:11 2023:10,11 2077:22 2088:8 2158:7

**limiting** 2023:8,13

**limits** 2165:5

**Lindemann** 2141:9

**lines** 2144:14 2195:10 2197:15

**linked** 2026:15

**list** 2010:10,12 2011:14 2077:10 2081:20 2084:24 2185:12 2190:16 2195:9

**listen** 2076:6 2102:10 2110:23 2184:10

**listener** 2146:4

**listening** 2197:1 2198:10

**lists** 2009:16

**live** 2007:18 2172:22

**lives** 2173:10

**living** 2088:9 2158:8

**local** 2017:22,25 2018:4,8,12,25 2019:5, 8 2021:12,19 2024:7,9, 21,23 2025:24 2026:2, 21,22,24 2027:3,7,10, 13,19,21 2028:4,7,9 2029:1 2030:8 2031:3, 10,15 2032:8,16 2033:4,7 2034:16,21 2035:4,6,7,10,13,19,22, 25 2036:3,5,8,18,20 2039:7,9,13,15,16 2040:5,9,12,15,21 2042:5,6 2043:10,13 2044:6,11,12,16,24 2045:4,11,12,15,22,24 2046:8,15,22 2047:2,3, 5 2049:19 2050:1 2053:1,4,8,11,19,25 2054:7,18 2057:4,14,18 2058:8,13 2059:6,8,16, 18,19 2060:3,5,13,14, 15,22,24 2061:7,9,10, 16,19 2062:2,5,6,21,25 2103:24 2104:2,7,12,13 2105:1 2136:10 2147:13,16 2151:21,23 2155:7 2158:23,24 2159:16 2160:8 2166:14,16 2167:21

2168:3,15 2170:2,8 2171:6 2194:14

**logically** 2016:25

**long** 2007:9,10,24 2008:9,24 2009:3,9 2012:20 2068:24 2069:12 2099:7 2111:14 2114:14,22 2135:7 2136:5,6 2142:11,12 2147:1,5 2152:5 2165:4 2174:14 2193:8 2197:16,17 2201:15

**long-running** 2128:9

**long-term** 2117:17

**looked** 2010:1 2075:1 2078:14 2083:18 2107:4 2184:2

**loosen** 2008:6

**loss** 2041:25 2047:18 2048:10,18 2049:10 2058:12,18,22 2064:8, 14,18 2170:7

**losses** 2041:10 2042:3 2171:21

**lost** 2013:17 2050:14, 16 2057:13,17,21,24 2062:24 2063:9,13,17, 20 2067:17 2101:15 2107:2,24,25 2168:11, 14 2169:15,18 2171:5

**lot** 2013:20 2074:20 2081:12 2096:16 2106:23 2109:5 2113:24 2161:13 2172:5 2177:21 2191:3 2197:19

**lots** 2139:5

**love** 2011:16 2114:19 2119:12 2199:9

**loved** 2117:25 2118:13 2120:4 2121:19 2134:10

**loves** 2118:7

**lucky** 2173:12

**lunch** 2006:25 2009:12 2070:24 2071:1,2 2114:13,17,18,24

2135:13,24 2188:1,6

---

## M

**mad** 2123:25 2135:14

**made** 2020:7,8 2022:6 2025:15 2031:24 2045:4 2046:2 2047:18 2048:7 2077:6 2085:17 2091:24 2107:17 2119:3 2122:2 2125:18 2131:5,9,12 2133:4 2148:7,12,14,18 2154:11,24 2159:23 2161:22 2168:19 2177:2 2181:13

**magically** 2148:6

**maintaining** 2029:16 2067:24

**majority** 2029:6

**make** 2006:5 2007:7,22 2010:4 2012:1,4 2013:5,7 2023:24 2044:16 2045:16 2048:8,21 2049:2 2092:22 2096:22 2097:1 2101:23 2108:23 2109:19 2110:18 2119:13 2123:2 2143:21 2145:13 2146:21 2148:9,11 2155:14 2160:19 2163:12 2168:4,8,18 2173:15 2174:2 2175:23 2180:22 2185:5 2188:10 2191:16 2193:3 2194:1 2197:4 2201:16 2203:16

**makes** 2017:2 2069:23 2097:5 2137:17 2155:13

**making** 2005:24 2023:25 2048:3 2077:14 2090:4,11 2093:17 2107:16 2108:9 2147:4 2149:21 2180:3 2181:16 2185:2

**malice** 2043:25 2045:15 2046:13 2167:9,12,13,15

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 226 of 240   PageID 16054
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022                    Index: man..mitigate

**man** 2139:25 2145:12

**management** 2147:23

**manager** 2019:14
2044:12 2116:17
2125:21 2148:18,22,25
2167:7,21 2169:1,2
2176:22,23,25

**managerial** 2043:21
2167:4

**manifests** 2125:17

**manner** 2015:17
2019:25 2028:22
2098:7 2138:23
2182:12,15

**manual** 2117:6

**march** 2019:5,16,19
2041:19 2057:22,25
2063:18,21 2071:11
2082:1 2083:1,3 2088:5
2095:24,25 2107:17
2124:1 2125:11 2126:5,
17,20,21 2157:24
2158:12 2169:15,18

**marched** 2089:11

**marked** 2096:21

**market** 2050:20

**marketplace** 2173:16

**Martin** 2141:9,15

**Massoni** 2004:16
2136:12

**matches** 2195:7

**math** 2109:12

**mathematical** 2041:10

**Matt** 2004:9 2081:21
2082:12 2091:1 2095:5
2196:14

**matter** 2028:1 2056:8,
11 2082:20 2083:10,25
2091:6 2106:2 2108:13
2109:6 2141:12 2142:5,
6 2165:16 2169:21
2170:22 2173:20,25
2174:1 2179:18
2180:18 2181:23
2192:4

**mattered** 2152:5

**matters** 2123:16
2144:6,7,8 2156:19
2165:20

**Matthew** 2004:9
2196:13

**Maureen** 2116:16

**maximum** 2200:19

**Mcdonald's** 2107:13

**Mckeeby** 2004:11,18
2068:22 2112:2,7,9,13
2113:3,21 2114:16
2115:7,9 2134:15
2137:24 2138:15
2145:2 2166:1 2184:15,
18 2185:2,13 2186:3,8,
17 2194:10,21,24
2196:15 2201:5 2204:1

**meaning** 2005:4,25

**means** 2016:7 2024:11
2025:13,18,20 2037:17
2039:2,22 2050:11
2101:21 2102:13
2154:4 2156:4 2177:4,5
2198:3 2203:2

**meant** 2159:5,6
2173:15

**measure** 2176:15

**mechanisms** 2148:15

**media** 2018:21 2083:19
2085:4 2086:10
2098:12,18 2100:14
2116:1 2128:24 2131:7
2145:4,5,15 2165:9
2183:3,10

**meet** 2159:11 2191:11

**meeting** 2019:2,17
2052:14 2088:12
2095:7 2115:17 2125:7
2132:5,11 2133:19
2137:9,12 2149:11,13,
16,19 2150:15 2157:3
2161:16

**meetings** 2132:8

**Melissa** 2180:7

**member** 2076:11
2079:12 2085:3 2109:3
2139:8,9 2167:25

**members** 2014:2
2018:25 2019:4
2024:13 2029:22
2077:18 2079:24
2092:17 2093:3
2102:15 2109:2
2128:23

**members'** 2128:10

**membership** 2018:8
2078:3 2083:5

**memory** 2011:6
2051:11,13

**mental** 2041:24
2058:18,22 2064:8,14,
18

**mention** 2007:15
2074:22 2086:20
2087:12 2091:12
2100:21,23 2101:19
2176:10 2185:24,25
2186:15

**mentioned** 2008:22
2082:11 2086:6
2116:19

**mentions** 2158:13

**meritorious** 2026:7

**message** 2071:9
2083:25 2087:17
2088:2 2091:19
2097:21 2110:3 2125:1
2142:5 2152:23 2157:6,
8,14,16 2183:2

**messages** 2018:5,12,
14,21,23 2019:8,11,13
2083:15,23 2122:25
2123:4 2124:9,18
2127:22 2150:3,5
2153:2 2155:22
2157:20 2162:8
2163:17 2165:2

**Messenger** 2019:9
2091:18 2150:6

**met** 2128:15

**metal** 2058:12 2170:7

**mic** 2174:24

**Michael** 2004:16
2136:12

**middle** 2070:24 2149:2
2152:22

**Mike** 2078:1,7 2118:20
2135:5 2166:6

**military** 2111:2

**million** 2108:17,20,21
2109:19,21 2110:4
2119:20 2182:21

**millionaire** 2109:17,18

**mind** 2051:3 2052:16
2199:3

**mind-numbing**
2008:24

**minds** 2074:1

**mine** 2126:9

**minimize** 2049:24
2068:5

**minimum** 2069:6,17

**minimus** 2039:3

**minor** 2113:3 2180:23

**minority** 2080:14

**minus** 2041:19

**minute** 2135:6

**minutes** 2006:15
2007:18 2008:4,10
2068:17 2070:21
2100:16 2108:3
2110:11 2111:13
2113:18,19 2114:16,23
2135:2,9 2174:19,23
2175:6 2182:3 2189:25
2199:19

**misappropriating**
2141:15

**Missing** 2194:20

**misspoke** 2195:1

**misstated** 2134:20

**misstatement** 2022:6,
7

**mistake** 2022:2,8
2143:22

**mistakes** 2021:14

**mitigate** 2049:20,22

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 227 of 240   PageID 16055
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Index: mitigation..officer

2171:20

**mitigation** 2049:18 2067:20 2107:5,6 2112:6,7,8 2171:19

**mixed** 2156:18

**modify** 2188:23

**moment** 2120:1 2199:16

**Monday** 2116:25 2117:3 2187:23

**money** 2048:17 2057:15 2058:9 2059:17 2060:13 2061:8 2062:4,22 2063:11 2064:5 2065:12 2066:9,25 2067:15 2076:19,24 2077:13 2083:3 2088:17 2107:21 2168:12 2170:4 2171:3, 14 2175:23 2179:3

**monitoring** 2078:25

**months** 2121:9,13,14

**morally** 2162:10

**morning** 2009:1,17 2077:6 2187:2

**Morris** 2004:12 2194:11 2196:16

**motivated** 2034:3,12 2035:14,25 2036:11,23 2054:3,10 2055:15 2129:10

**motivating** 2030:25 2031:17 2161:8,11 2162:23

**motivation** 2123:18 2130:20

**motive** 2025:19 2038:13 2040:17

**motives** 2021:12

**Mountain** 2078:7 2113:5 2135:5

**move** 2081:22 2155:4 2159:22 2161:5

**moxie** 2172:12

**murder** 2158:14

**murderer** 2153:3

### N

**nailed** 2194:7

**named** 2139:6 2140:3, 12

**names** 2141:2,3

**Naomi** 2117:2

**nasty** 2081:13 2158:17 2165:21

**national** 2163:7

**natural** 2160:12

**necessarily** 2022:3 2047:17

**needed** 2037:10 2047:1 2122:3 2204:15

**needing** 2196:24

**negatively** 2098:21

**negotiated** 2075:3 2140:14

**negotiating** 2087:7 2168:24

**Nevada** 2019:15

**Nevarez** 2077:25 2079:10 2105:5,6 2113:8

**news** 2012:19 2100:18, 19 2115:10,11

**nexus** 2074:3,5 2098:25 2099:7,12,13 2106:18

**nice** 2070:13 2158:4,20 2182:1 2189:13

**niceness** 2070:15

**night** 2069:13

**nominal** 2049:6,7,16 2060:2,5,12,15,21,24 2061:6,9,16,19 2062:1, 5 2065:22,25 2066:7, 10,18 2067:1 2110:12 2170:20

**murder** 2158:14

**non-christians** 2164:18

**Non-economic** 2058:7 2064:3 2170:2

**non-member** 2018:9 2079:5

**nonetheless** 2125:23

**normal** 2037:19 2039:24 2069:15 2198:5

**Northwest** 2080:10

**nose** 2119:22

**note** 2005:15,20,24 2008:2,11,19 2188:13 2190:2,7,9 2194:15,17 2195:19 2196:6,7,8

**notebook** 2194:25

**notes** 2005:9,22 2050:21 2051:9,10,12, 13,15,17,18,24 2074:20 2095:3,6 2103:16 2157:2,17 2175:9 2177:8

**notice** 2019:20 2165:23

**noticed** 2201:25

**notion** 2120:15 2129:8

**number** 2010:1,2,20,22 2020:19,22 2021:1 2081:20 2109:5,7 2118:10,12 2139:20 2149:8,9 2163:2 2171:17

**numbered** 2017:14

**numbers** 2008:16 2074:24 2189:23

**numerical** 2052:17

**numerous** 2134:21

### O

**oath** 2022:19,23

**object** 2006:7 2186:10 2203:24

**objected** 2018:3

**objecting** 2112:15 2142:16

**objection** 2005:7,10,18 2174:13,15 2182:2,4 2186:15 2204:1,2,3

**objector** 2018:9,14 2078:2 2079:6,17 2142:15 2155:18 2161:24 2163:22

**objectors** 2076:12 2079:1

**obligated** 2131:18

**obligation** 2037:8 2077:17 2086:18

**observance** 2037:19 2038:14 2039:24 2040:18 2165:5 2198:5

**observances** 2004:20 2033:10,18 2034:4,13, 18,20 2035:2,15 2036:1,6,12,16,25 2037:5,16,22,24 2038:3,7 2039:10,21 2040:4,7 2054:4,11,20 2055:16,22 2056:2,4

**obtaining** 2067:23

**occasion** 2021:6 2128:16

**occurred** 2049:9 2179:16

**occurrence** 2069:15

**odd** 2181:1

**oddball** 2069:9

**offended** 2072:16 2148:4

**offensive** 2071:16,17 2072:1,3,14 2088:20 2094:15,22,24 2096:11 2103:8 2106:5 2179:8

**offer** 2134:6

**offered** 2119:19 2125:22 2154:19

**office** 2009:23 2025:4 2081:19 2140:7 2141:8 2145:8 2151:7

**officer** 2012:10,12

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 228 of 240   PageID 16056
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                           Vol 7 July 13, 2022                    Index: officers..permission

2052:13 2070:3
2077:24 2193:22
2196:3 2204:18

**officers** 2025:1
2029:10

**offices** 2131:8

**official** 2025:2,6,7
2026:19 2027:2
2031:14 2035:7 2036:9
2040:10 2053:3
2103:23 2147:15
2151:11 2159:16,21,23

**older** 2187:17

**one-sided** 2150:16

**open** 2101:21 2108:23
2115:4 2123:11
2135:18 2175:1
2186:19 2190:13
2191:12 2201:20

**opened** 2157:8

**opening** 2079:21
2100:24 2115:25
2121:21 2125:14
2126:1 2129:21
2131:22 2186:24

**operate** 2069:3,7
2188:3

**opinion** 2014:7,13
2032:5 2041:3 2094:9
2183:25

**opinions** 2051:3

**opportunities** 2021:12
2050:12

**opportunity** 2080:13
2121:18 2125:6 2132:9

**opposed** 2080:19
2128:6,12 2140:13
2155:19 2161:25
2179:24

**opposing** 2010:4
2018:18 2020:20
2161:15

**opposite** 2088:23

**opposition** 2030:5,10
2103:4 2129:10 2155:9,
17 2160:6 2162:22

**oppositional** 2031:20
2130:21 2181:6

**optional** 2070:12

**oral** 2012:25

**order** 2004:21 2005:3
2006:1,21 2052:20
2056:3,8,11 2070:19,23

**organization** 2028:1
2029:13,15,17,22

**organizational**
2030:5,10 2031:20
2103:4 2155:10 2181:6

**organizations**
2029:25

**organize** 2029:4,12

**organizing** 2029:12

**origin** 2163:8

**others'** 2152:25

**outcome** 2020:14

**outrage** 2159:4

**outrageous** 2044:22

**overcome** 2072:10
2099:15

**overlap** 2195:1

**overrule** 2186:14

**owed** 2024:22 2025:25
2053:9 2061:1,11
2151:22

——————————————

**P**

**p.m.** 2204:20

**pages** 2008:24 2088:1
2133:12 2147:4
2197:22 2199:7
2200:21 2202:22
2203:10,17,22

**paid** 2057:15 2058:9
2062:22 2063:11
2064:5 2067:15 2088:4
2097:11 2115:11
2157:24 2168:12
2170:4 2171:3

**pain** 2041:24 2042:2
2058:11,17,21 2064:7,

13,17 2108:2,20 2124:3
2146:5,12,13,18,21,24
2156:25 2159:7 2170:6
2173:18 2174:1

**paper** 2012:25 2013:21
2199:23

**paragraph** 2014:23
2087:11,12 2098:17
2149:2 2198:2 2201:22,
23 2202:2 2203:8

**paragraphs** 2017:15
2155:12

**paranoid** 2139:23

**Parenthood** 2083:7
2096:1,18

**park** 2005:23

**Parker** 2138:2 2140:10
2165:25

**Parrott** 2105:7

**part** 2015:24 2019:17
2029:3 2054:22
2056:21 2057:4 2063:2
2072:25 2087:18
2090:4 2091:9 2093:22
2102:10 2121:1
2124:23 2137:6,18
2147:4 2152:23
2155:14 2157:4
2163:19 2176:5
2177:24 2199:7
2202:22 2203:22

**partial** 2136:17
2139:21

**participating** 2126:20

**parties** 2014:11,25
2017:13 2022:22
2028:12 2137:8

**parties'** 2024:3
2172:19

**parts** 2069:10

**party** 2014:10 2020:12
2028:14,15 2040:25

**pass** 2193:11

**passed** 2088:15

**passion** 2015:20

**past** 2046:19 2058:17

2064:13 2144:14
2154:12,14

**pasted** 2153:5

**pasting** 2203:8

**path** 2146:14

**patrol** 2006:9

**pattern** 2198:11

**Paulo** 2004:11 2194:10
2196:15

**pause** 2188:15

**pay** 2041:15 2042:13,
14,20 2047:16 2049:3
2062:20 2067:13
2110:14,20,21 2120:9,
16 2169:14 2171:2,7,10

**payable** 2029:25

**paying** 2076:20
2181:11 2188:21

**payment** 2047:18

**peanuts** 2088:15

**pen** 2199:23

**penmanship** 2141:3

**penny** 2106:24

**people** 2008:18 2022:4
2073:13 2077:1
2078:19 2081:1
2085:13 2094:18
2105:8 2111:4 2115:17
2116:16 2125:18
2128:18 2139:12,13
2140:9,11,17 2141:2
2153:25 2179:7,21,22
2180:14,15 2182:25

**people's** 2109:23

**Pepper** 2012:21

**perceived** 2044:19

**performing** 2029:19

**perfunctory** 2026:8

**period** 2042:25
2048:15 2120:21
2138:18,19 2150:8
2162:16

**permission** 2004:22

**permit** 2041:12

**person** 2007:25 2008:3
2023:21,23 2044:13
2085:12 2086:24
2093:16 2094:10
2099:5 2123:22 2132:1
2146:4 2147:23
2167:23 2179:23
2180:2

**person's** 2007:6

**personal** 2080:25
2095:13 2100:15
2150:7,21

**personally** 2152:24
2154:5

**persons** 2015:25
2025:21 2028:19

**persuasive** 2025:4

**pertinent** 2029:3

**petition** 2140:6,12,18,
25 2158:13 2162:4
2180:13

**phase** 2177:15

**phenomenal** 2193:16

**phone** 2008:16,17
2124:12 2139:21
2189:23

**photograph** 2126:10

**photographs** 2126:4

**phrasing** 2005:12

**physical** 2046:10
2184:4

**physically** 2194:16

**pick** 2069:5,6,9,16,17
2100:11,12 2110:25
2124:12 2137:11
2188:1

**picked** 2097:24 2190:3

**picking** 2011:18
2188:3

**picture** 2100:3 2125:3
2126:9 2136:17
2150:19 2187:18

**pictures** 2098:1
2105:22 2125:11

2139:21

**pieces** 2136:18 2139:4

**pink** 2124:23

**place** 2056:7 2100:12
2122:16 2145:17
2149:13,17,18,19,20
2165:24 2203:17

**places** 2005:6 2020:8
2028:2

**plaintiff** 2004:8
2015:22 2016:4,9
2023:16 2024:5,6,20,24
2026:1,5,20,21 2027:2,
4,9,17,20 2028:5,8,25
2030:3,7,16,19,23,24
2031:2,4,7,11,13,16,18
2032:9,12,17,18
2033:2,5,8,13,23
2034:3,6,10,13,15,17,
21,23 2035:4,11,17,22,
25 2036:2,4,5,10,11,18,
21,24 2037:1,3,4,9,10,
11 2038:4,6,9,16,20
2039:8,11,14,17
2040:8,11,13,16,23
2041:3,5,9,16,20,23
2042:2,10,15,24
2043:4,8,12,17 2044:1,
4,14,18,21 2045:9,16,
18,20 2046:1,10,16,20,
22 2047:4,9,19,21
2048:2,6,11,14,19,21,
24 2049:8,10,12,14,16,
20,21 2050:5,7,15,18
2053:2,5,7,9,10,12,20,
21,24 2054:1,3,6,8,10,
17,19,23,25 2055:8,12,
14,15,19,21 2056:23
2057:1,16,18 2058:10,
14 2059:7,9,19 2060:4,
6,16,23 2061:1,11,18,
20 2062:6,23,25
2063:12,14 2064:6,10
2065:2,4,14,24 2066:1,
11,17,20 2067:16,18,21
2068:3 2070:21 2102:7
2103:2 2104:2 2141:24
2142:4,6,19 2143:1,12
2147:14,16 2151:20,24
2155:6 2156:6,7
2158:24,25 2159:13,15
2160:3,7,9 2161:7,9
2162:22 2166:15

2167:1,10,23 2168:14,
15 2170:6 2171:4,6
2173:21 2194:3,6
2196:13 2204:3

**plaintiff's** 2039:6
2144:12

**plaintiffs** 2006:14
2154:18

**plan** 2009:4 2083:20

**plane** 2091:25

**planes** 2134:7 2145:9

**Planned** 2083:7
2096:1,17

**plans** 2021:13

**play** 2015:24 2080:13
2091:24 2147:4

**played** 2116:11

**playing** 2091:20

**pleaded** 2119:11

**pleasure** 2115:17

**plenty** 2197:20

**plotting** 2080:18

**plugging** 2195:21

**podium** 2114:5

**point** 2006:9,25
2008:25 2070:16
2072:15 2078:2
2082:17 2113:4
2120:15 2133:15
2137:17 2142:21
2154:1 2155:18,23
2157:12 2158:11
2161:14 2168:21
2171:22 2195:12
2202:8

**pointing** 2200:6 2201:8

**points** 2147:7 2177:7
2180:23

**policies** 2033:15
2045:7 2075:23 2086:4,
11 2115:24 2116:3,19
2117:7 2119:6 2121:7,
21,22 2122:7,16,20
2124:17,25 2125:4
2127:18,22 2129:24
2130:4 2131:18

2132:23 2133:17
2144:2 2178:7 2181:25
2182:10,12,15 2183:16

**policy** 2072:9 2074:4,6
2083:20 2085:4 2086:6
2090:9 2098:11,12,24
2099:14 2100:14
2106:17 2116:1,2
2117:6 2131:8 2181:3
2183:4,6,10

**political** 2076:20
2087:14

**politically** 2083:6
2154:5 2164:3

**portion** 2171:1

**portions** 2112:2

**posed** 2046:17

**position** 2099:23
2100:6 2122:10,12
2123:3 2124:13 2125:8,
22 2131:3 2149:3

**positions** 2050:6
2172:1

**positive** 2111:5

**possibly** 2165:11

**post** 2073:12 2074:9
2079:2 2081:7 2099:16
2118:4,5 2178:9

**post-verdict** 2192:5

**posted** 2018:20
2073:22 2097:18
2098:4,8,19 2099:19
2126:10

**posting** 2083:1
2095:13

**postings** 2018:6

**posts** 2071:9 2081:8
2083:14 2085:22
2099:4 2106:22

**potential** 2080:1

**practical** 2165:19

**practice** 2037:18
2038:15 2039:23
2040:18 2043:20,23
2165:5 2167:3 2198:4

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 230 of 240   PageID 16058

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                              Vol 7 July 13, 2022                    Index: practices..proving

**practices** 2004:20 2033:11,19 2034:5,14, 19,20 2035:2,16 2036:1,7,12,16,25 2037:6,16,22,24 2038:3,7 2039:10,21 2040:4,7 2054:4,12,20 2055:17,22 2056:2,4

**praying** 2108:6

**precisely** 2124:17

**precision** 2041:11

**prefer** 2011:1

**preference** 2008:8

**prefers** 2010:19

**pregnant** 2092:18 2093:7

**prejudice** 2015:21,23 2020:2

**preparing** 2115:19

**preponderance** 2016:3,5,6,11 2017:5 2026:2,13,25 2030:17 2031:5 2032:23,25 2033:24 2035:5 2036:19 2038:4,19 2040:8 2041:6 2042:24 2043:17 2044:7 2049:11 2050:2 2101:24,25 2159:14 2160:8,13 2167:1

**present** 2022:18,24 2023:6 2047:23 2048:5 2140:1 2150:16

**presentation** 2115:25

**presented** 2015:18 2022:13,19,22 2074:11 2136:16 2138:16 2145:2 2147:2 2173:9

**presenting** 2143:6

**preserving** 2191:3

**preside** 2187:17

**presided** 2118:25 2132:7

**presidency** 2162:17

**president** 2018:12,19 2019:1,8,10,12,18

2024:23 2026:18 2031:10,14 2032:17 2035:6 2040:9 2053:4 2071:10,12 2072:23 2075:2 2077:7 2078:12 2079:15 2082:22 2084:20 2087:21,22 2088:17 2092:24 2093:2,3,5,6 2094:1,5 2096:1 2097:22 2103:23 2129:19 2130:3 2142:11 2147:16,22 2148:1,9 2149:18 2150:23 2151:14,23 2156:5 2159:16 2160:9 2163:11 2176:24 2177:3 2178:23 2179:13 2183:3

**president's** 2183:2

**presiding** 2187:12

**pressure** 2169:8

**presume** 2026:22 2046:1

**presumes** 2026:9 2102:18,21

**presumption** 2026:12, 24 2027:5,11,15

**pretty** 2012:20 2087:5 2091:14 2109:15 2160:11 2188:18

**prevent** 2028:22 2044:8 2045:4

**previous** 2077:23

**previously** 2187:14

**prior** 2090:4,11

**Prior's** 2118:3

**private** 2019:8,11 2097:21 2150:20

**privilege** 2133:23

**pro** 2125:25 2126:6 2152:24,25 2153:24 2154:5,6 2164:2,3

**pro-choice** 2126:21

**probationary** 2138:18, 19

**problem** 2192:11,15 2201:14 2202:10,14

**problems** 2011:4 2108:10,14 2145:19

**procedures** 2025:17 2121:7 2144:2

**proceed** 2052:19 2175:7

**proceeded** 2162:7

**proceedings** 2111:20 2115:4 2134:17 2135:18 2174:9 2175:1 2184:16 2186:19 2204:20

**process** 2118:16 2119:9 2131:25 2132:5, 22 2148:19

**processing** 2026:8

**product** 2153:21 2194:25

**professional** 2011:22 2190:21

**profit** 2042:20

**promise** 2133:8,9

**promote** 2136:20

**promotional** 2050:12

**prong** 2154:16 2167:8

**pronouncing** 2071:24

**proof** 2017:15 2021:6 2044:24 2152:12

**proper** 2173:13

**protect** 2089:7 2092:19,25 2110:2 2122:5,7,16,19 2124:18 2182:25 2184:8

**protected** 2030:6,10, 14,20,25 2031:8,17,21 2032:3,6,14,19 2044:2, 18 2053:13,22 2054:25 2055:9 2066:20 2067:3 2071:24 2072:3,4,11,17 2073:5 2075:18 2082:6 2084:1,3 2088:21,24 2089:5,6,14,15,22,25 2090:3,8,10 2093:13 2094:13,15,19 2095:1

2097:21 2104:8,15,19 2105:23 2106:1 2122:25 2123:5,6 2124:20 2130:25 2146:24 2152:7 2155:10 2156:8,15,20 2158:1,19 2159:1,7 2160:4 2161:7 2162:11, 22 2167:10 2179:15 2181:7,19,21 2183:20, 22,24 2184:4

**protecting** 2093:1

**protection** 2129:23 2173:17

**protections** 2177:21

**protects** 2163:5

**protocol** 2008:11 2148:24

**protocols** 2068:23

**proud** 2115:14

**Proudly** 2136:10

**prove** 2016:7,10 2020:25 2025:24 2026:1,5 2030:15,17 2031:3,5 2032:21,22 2033:22,23 2034:6 2035:3,4,17 2036:17,18 2038:1,4 2040:5,8 2041:5,10 2050:2 2156:5 2159:13 2160:7, 13

**proved** 2041:3 2044:4 2053:2,7,10,19,24 2054:6,17,23 2055:7, 12,19 2056:17,23 2057:3 2103:22 2104:2, 6,13,25 2105:19 2128:2 2147:14 2158:24

**proven** 2016:19 2017:12 2038:23

**proves** 2016:25 2032:24 2042:23 2043:17 2044:6 2167:1

**provide** 2103:12 2165:10,11

**provided** 2156:9

**proving** 2016:5 2038:24

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 231 of 240   PageID 16059
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022                          Index: provision..reasonable

provision 2028:8,25

provisions 2028:7

Pryor 2004:9 2006:13, 17,21 2007:14 2008:20, 22 2009:10,23 2070:4, 5,8,11,14 2071:4,6 2082:11 2098:16 2100:17 2103:11 2110:12 2111:15,24 2112:6,8,11,16,25 2113:8,16,22,25 2114:6,10,20 2115:1 2118:6 2134:20 2135:2, 23 2146:19 2174:11,13, 17,20 2175:3,7,8 2182:5 2184:13,23 2185:7,10,15,23 2186:7,10,12 2189:8, 10,15,21 2191:11 2192:6 2193:2,4,25 2194:4,5 2195:24

PTA 2088:12

public 2081:12 2099:21

publications 2151:1

publish 2190:13 2191:17,23 2192:17,24 2193:5

pull 2148:16 2150:4,13 2152:21 2157:1,18 2160:15 2161:1

pulled 2148:17

punish 2043:6 2047:2 2119:21

punishing 2045:21

punishment 2024:19

punitive 2043:1,3,5,9, 13,16 2044:5,23 2045:2,21 2046:4,24 2047:7,10,12,13 2059:5,8,15,18 2064:25 2065:3,10,13 2108:25 2166:15,25 2168:7

purpose 2021:11,17 2023:10,12 2025:19

purposes 2028:19 2029:9 2045:21

pursue 2121:4

pushed 2140:6

pussy 2124:23

put 2010:10 2012:18 2056:2 2073:11 2085:19 2087:5 2100:12 2108:20 2109:7 2110:24 2118:2, 8 2140:1 2180:1,4 2198:24 2203:6,7

putting 2095:13 2193:16 2199:23

Q

qualified 2172:13

question 2004:24,25 2005:1 2029:11 2042:25 2052:18 2053:2,7,10,15,16,17, 18,24 2054:6,14,15,16, 17,23 2055:3,4,5,6,12, 19 2056:4,5,13,14,15, 16 2057:5,6,7,8,9,10, 11,12,13 2058:2,3,4,5, 6,7,25 2059:1,2,3,4,5, 12,13,14,15,22,23,24, 25 2060:1,2,9,10,11,12, 18,19,20,21 2061:3,4,5, 6,13,14,15,23,24,25 2062:1,10,11,12,13,14, 15,16,17,18,20 2063:3, 4,5,6,7,8,9,23,24,25 2064:1,2,3,20,21,22,23, 24,25 2065:7,8,9,10,17, 18,19,20,21,22 2066:4, 5,6,7,14,15,16,17,22, 23,24,25 2067:5,6,7,8, 9,10,11,13,20 2068:3 2070:12 2090:2,7,13 2091:2 2093:22 2094:4 2103:15 2104:6,12,24, 25 2106:7 2107:20 2118:5 2127:5 2128:2 2130:23 2132:21 2133:20 2138:15,16 2147:12 2155:1,2,3 2156:10 2158:22 2159:21 2161:3 2163:1 2168:7,10 2174:11 2185:1 2196:21 2197:9 2198:16 2199:12 2200:11,14 2202:17,24 2203:12,14 2204:6,9

questioned 2022:23 2122:10

questioning 2118:3

questions 2004:19 2007:13 2009:15 2012:3 2019:22 2022:15,25 2052:6,24, 25 2053:1 2054:22 2056:21 2057:4 2063:2 2067:20 2069:25 2072:12 2075:20 2101:18 2103:16 2107:1 2118:6 2130:11 2169:4 2170:19 2171:19 2173:5 2176:12,13 2191:10 2193:14

quick 2008:18 2011:24 2055:25 2134:16 2169:3 2174:8 2196:10 2204:14

quickly 2188:18

quit 2076:24 2183:1

R

race 2163:7

Railway 2024:8,22 2027:17,22 2032:9 2040:21 2042:3 2043:11,15 2049:13 2053:13,22 2055:1,9 2061:17,21 2062:2,7 2066:21 2067:3 2071:13 2104:8,15 2151:22 2155:5 2159:2, 9 2166:18

raise 2112:1,5,20

raised 2100:25 2172:21 2173:5

raising 2108:10

ramped 2107:18

random 2097:24 2177:7

range 2007:3 2009:14

rape 2153:22

ratification 2042:20

ratified 2025:3

rational 2026:14

re-examine 2051:3

reach 2050:23

reached 2052:4

reaching 2129:11

reaction 2117:4

read 2004:23,24,25 2007:8 2008:23 2013:3, 15,16 2052:21 2071:8 2075:14 2076:5 2077:22 2080:22 2086:17 2099:11 2101:9 2102:12,23 2104:22 2105:14 2113:1 2122:24 2123:1 2157:10,22 2159:3 2175:8,14 2176:9,11,16 2183:17 2187:1 2191:12 2192:14 2200:6 2201:15 2203:1, 20

read-before-fly 2086:1,2

reader 2146:3

reading 2009:2 2012:24 2076:4 2102:11

ready 2012:13,14 2070:4 2135:15 2182:6

real 2111:18 2140:19 2146:6 2153:13 2169:3 2202:9

reality 2134:3

realized 2203:8

reason 2034:7,9 2035:18,21 2037:9 2048:8 2077:16 2106:3 2115:16 2127:12 2129:6 2175:15 2178:14 2179:6 2184:20 2188:2

reasonable 2016:17 2025:22 2047:8 2049:23 2050:6,9 2067:23 2068:4 2100:8 2102:4 2164:22,23 2165:1

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 232 of 240   PageID 16060

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022      Index: reasonableness..representative

reasonableness 2050:18

reasons 2033:20 2073:6 2100:24 2104:18 2105:18 2166:23

rebirth 2146:14

rebut 2026:12,24

rebuts 2027:11,15

rebuttal 2006:15 2070:22 2114:25 2175:6

recall 2018:20 2072:18 2076:4 2081:9 2088:7 2090:6 2093:22 2117:1 2121:3 2128:11 2140:6, 12,18,25 2155:21 2158:5,13 2162:4,5 2180:13

recalled 2180:16

receive 2045:19 2048:25

received 2041:21 2042:25 2048:12 2087:22 2089:17,19 2105:4 2136:9 2156:19

receives 2048:11

recess 2012:9,11 2068:18 2070:2 2193:20,21 2196:1,2 2204:12,17,19

reckless 2031:25 2044:1,17 2045:15 2046:13 2167:9,12,13, 15

recognized 2133:15, 16

recollection 2051:16, 19

record 2005:17 2080:24 2184:21 2185:9 2187:7

recorded 2022:15,24

recover 2016:12 2044:22

recoverable 2056:22

recovery 2057:2 2176:18

red 2130:16

redactions 2009:21

reduce 2048:1,4 2067:22

reduced 2120:18

reduction 2048:9

reelection 2162:17

reference 2098:19 2153:3 2185:6,22

referenced 2195:12

referred 2027:22

Referring 2157:6

reflect 2021:18

refocus 2009:8

refrain 2075:5

refuse 2037:14 2047:11

refusing 2037:23

refute 2180:2,9

regard 2014:21 2025:15 2071:21 2072:5 2081:3 2090:16 2123:10 2155:15 2159:13 2168:25

regulation 2143:24

reinstatement 2134:6

related 2074:6 2093:14 2197:13

relates 2090:23

relating 2025:14

relation 2042:3 2043:10,14 2166:16

relations 2089:21,24 2096:6 2116:17 2117:13 2125:21

relationship 2047:8 2168:23

relative 2020:22

relevant 2129:4

relief 2042:21 2093:5 2135:1

religion 2073:2,3 2163:24 2164:11,12,17

religious 2004:20 2033:2,10,18 2034:4, 13,18,19 2035:2,15 2036:1,2,6,12,16,24 2037:5,11,15,18,22,24 2038:3,7,14 2039:10, 15,21,23 2040:4,7,18 2054:4,11,20 2055:16, 21 2056:1 2059:9,20 2060:6,16 2065:4,15 2066:1,12 2073:1,7,12, 23,24 2074:14 2087:13, 20 2090:16 2094:25 2096:4 2099:15 2100:10,11,15 2101:4, 14 2105:16 2106:9,16, 18 2109:24 2125:16 2126:16,18 2127:7,11 2142:12 2156:14 2158:15 2163:16 2164:5 2165:4,15,21 2166:10 2175:20 2176:3,6 2178:9 2182:13 2183:23 2198:4

relinquishing 2147:21

reluctantly 2101:10

rely 2051:12,15

remain 2029:21,22 2121:9

remained 2042:16

remember 2022:5 2023:13 2051:7 2078:1, 25 2083:18 2086:16 2112:22 2113:10 2120:10 2131:5 2153:17 2186:25 2188:3 2189:22

remembered 2113:17

remembers 2022:4

remind 2074:23

reminder 2006:7

remorse 2144:20

remorseful 2144:22

renders 2011:20

repeatedly 2117:24 2118:14,15 2134:8,9

repercussion 2152:8

repetition 2046:18

report 2031:18 2035:14 2105:6,7,8 2142:8 2152:17 2154:25 2158:11 2160:24 2161:9,12 2162:24,25 2175:15 2176:4 2177:3 2180:14,15

reported 2019:13 2024:24 2026:19 2027:2 2031:11,13 2032:17 2035:8,19 2036:10 2040:11 2053:5,20 2103:24 2104:13 2105:5 2147:16 2151:24 2154:21 2156:6 2158:24 2159:15 2160:9 2162:20 2175:16 2176:5 2179:14,15

reporter 2022:24

reporting 2034:19 2035:22 2036:11 2039:11 2073:7 2087:19,20 2105:15 2157:14

reports 2071:12 2076:1 2084:25

reprehensible 2046:7

represent 2026:16 2096:19 2115:14 2136:10 2137:12

representation 2024:7,10,22 2025:11, 25 2026:23 2027:12 2042:6 2043:15 2049:14 2053:9 2060:22,25 2061:7,11 2102:13 2104:3 2137:11,15 2151:19,22 2152:13 2166:18

representative 2004:16 2018:1 2029:8, 18 2136:12

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 233 of 240   PageID 16061

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                     Vol 7 July 13, 2022              Index: representatives..seek

**representatives** 2028:11,14,17,18,23 2029:5

**represented** 2098:6 2115:15 2132:4,25

**representing** 2017:23 2022:22 2048:10 2138:3

**represents** 2137:22

**reprint** 2005:8

**request** 2165:12 2198:21

**requesting** 2127:13,16

**require** 2017:15 2181:25

**required** 2015:16 2034:11 2035:24 2039:1 2044:21 2045:20 2052:8 2121:6 2127:21

**requirement** 2037:12 2038:8,11

**requires** 2017:4 2047:18 2128:1 2182:25

**research** 2068:16 2189:2,4

**resigned** 2018:7

**resounding** 2130:23

**respect** 2043:4 2045:11 2049:3 2112:4 2115:23 2116:5,15 2118:13 2120:17 2122:5 2130:22 2172:5, 6,12,16 2174:4

**respectful** 2158:21

**respectfully** 2096:12

**respective** 2028:12

**respond** 2052:14 2131:18,20 2175:10

**responded** 2018:24 2045:9,12 2124:8

**responds** 2131:14 2160:19

**response** 2008:18

2070:10 2089:23,24 2132:16

**responses** 2019:11 2139:14 2145:22

**responsibilities** 2050:13

**responsibility** 2014:3 2119:10

**responsible** 2170:1 2172:15 2176:21 2177:6

**rest** 2015:5 2080:23 2110:9 2204:16

**restriction** 2142:2

**restrictions** 2143:20

**result** 2049:15

**results** 2144:17,23

**resumes** 2177:12

**retains** 2147:24

**retaliate** 2030:13 2130:24

**retaliated** 2030:4,8,16 2031:4 2032:8 2053:11 2054:24 2103:3 2104:7 2136:25 2155:8

**retaliating** 2061:20 2062:6 2066:19

**retaliation** 2027:18 2042:4 2043:10 2061:17 2062:2 2103:1 2149:23 2155:5

**retired** 2117:2 2173:11

**retirement** 2042:19

**revealed** 2093:23

**review** 2095:9,16

**reviewed** 2140:18

**rid** 2077:25 2079:6

**rightly** 2168:20

**rights** 2030:14 2044:18 2045:16 2049:9 2059:10,20 2060:7,16 2061:21 2062:7 2065:5, 15 2066:2,12 2071:14 2072:8,22 2074:13,14

2099:16 2100:9 2101:16 2110:2 2120:24 2124:14 2142:1,21,23,24 2143:9 2144:10,11 2147:21,24 2149:24,25 2151:12,13 2153:20 2165:13 2173:6 2174:4 2183:4, 7,19

**rise** 2012:10,12 2070:3 2189:5 2193:22 2196:3 2204:18

**risk** 2044:19 2046:17 2108:15,16

**risk-free** 2048:7

**RLA** 2072:4,8,22 2131:1 2156:8 2161:6

**roam** 2111:24

**robust** 2072:4,10 2089:14 2097:3 2105:9

**Rocky** 2078:6 2113:5 2135:5

**role** 2116:11

**room** 2007:17 2051:21 2160:5 2172:24 2193:9, 10

**Ross** 2138:1

**rude** 2162:8

**rule** 2007:17 2017:2

**rules** 2008:6 2025:16 2037:19 2039:24 2075:11 2141:24,25 2198:5

**rumble** 2182:6

**run** 2006:6 2084:6 2101:22

**running** 2172:4

---

**S**

**sacrificing** 2120:17

**sad** 2117:8 2144:22,23

**safety** 2046:14

**salary** 2042:17

**sat** 2007:3 2183:15

**satisfactory** 2005:21

**satisfy** 2194:18

**save** 2006:14 2070:21 2114:8 2179:6

**scan** 2008:12 2190:8, 12

**scanned** 2009:21

**schedule** 2069:4,6,8, 17 2120:11 2188:1,3 2190:3

**scheduling** 2069:11

**Schneider** 2089:17 2093:10,11 2096:21 2099:20 2104:21 2109:24 2125:20 2128:14,21 2129:8 2130:19 2131:25

**Schneider's** 2095:3

**school** 2111:7 2172:4,8

**scope** 2025:1 2043:24 2112:3

**scratched** 2196:7

**scroll** 2100:2 2149:5 2150:18 2152:22 2157:3,15

**scrolling** 2099:25

**seated** 2004:4 2012:16 2070:18 2193:24 2196:5

**seconds** 2091:24

**secret** 2081:11 2093:2

**section** 2028:10 2029:2 2030:6,11,20 2031:8,21 2032:4,14,19 2155:10 2160:4 2198:14 2201:17 2203:9

**sections** 2166:12

**security** 2007:19 2008:4 2012:10,12 2052:12 2070:3 2193:22 2196:3 2204:18

**seek** 2028:21

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 234 of 240   PageID 16062

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                          Vol 7 July 13, 2022                          Index: seeking..Southwest

**seeking** 2023:22
2050:6 2067:23 2083:5

**seeks** 2062:19 2067:12

**sees** 2082:8 2083:3

**select** 2013:10 2051:25

**sell** 2179:10

**selling** 2179:9,10

**send** 2010:7 2011:8
2069:2,18 2084:2
2088:14 2092:16
2110:3 2123:19,23
2127:22,25 2131:6
2133:8,9,13 2151:7
2162:7 2165:1 2178:21
2186:16 2193:9
2198:20 2204:4

**sending** 2018:12
2073:4 2088:11,16
2117:18 2121:22
2123:5 2124:10 2137:1
2162:20

**sends** 2079:11 2085:12
2089:20

**senior** 2079:23 2080:6
2130:9

**seniority** 2042:18

**sense** 2007:7 2069:23
2134:25 2135:12
2193:3 2197:5

**sentence** 2198:2,13
2202:20 2203:7,20

**sentiment** 2142:13
2152:6

**separate** 2175:19
2176:1,8

**separated** 2093:25

**separately** 2032:21

**September** 2018:7

**serve** 2024:11 2102:14

**served** 2017:25
2120:19 2138:5

**service** 2052:7 2134:12
2136:13 2172:25
2184:12

**set** 2012:1 2017:14

2111:1 2149:16

**settlement** 2120:23

**sexual** 2090:9

**share** 2150:17

**shared** 2042:21 2164:5

**sharing** 2042:20

**shop** 2139:8 2161:20

**short** 2009:5 2198:10,
24 2202:15

**show** 2044:21 2077:17
2081:6 2084:17
2089:12 2104:22
2116:4 2128:23 2151:9
2156:9 2191:6 2196:11
2199:23

**showed** 2075:2
2115:24 2129:24
2145:3 2166:1 2187:9
2190:11

**showing** 2021:11
2026:6,12 2121:24,25
2150:16

**shown** 2023:1 2039:1
2130:18

**shows** 2080:15
2081:14,17 2082:12
2084:19 2179:20

**shrunk** 2009:16

**shrunk-down** 2011:5

**sic** 2194:16

**sick** 2079:4

**side** 2004:23 2083:10
2132:9 2168:23
2169:12 2188:13
2194:2

**sidebar** 2006:10
2007:5 2111:16,18,21
2115:3 2134:16,18
2135:17 2174:8,10,25
2184:14,17 2186:18
2191:25 2193:7

**sides** 2020:20 2151:8

**sign** 2011:13 2052:6
2068:9 2101:3 2120:23
2121:16 2126:11,23
2147:21 2178:3,17

**Signatures** 2141:1

**signed** 2011:9 2121:3,
10,15 2134:5

**significance** 2022:9

**signs** 2126:5 2149:6,7

**similar** 2021:4,9,10
2043:6 2047:5 2157:19
2163:25 2198:23
2199:1 2202:10
2203:15

**simple** 2022:2 2115:16

**simply** 2017:4 2022:8
2156:16

**Sims** 2072:14 2118:20,
21 2119:13,14 2121:1,3
2125:21 2128:21
2130:20 2132:3,6,14,17
2138:1 2166:6

**sincerely** 2033:10,18
2034:4,18 2035:1,15
2036:6,15,24 2037:5
2038:2,6 2039:9,20
2040:3,6 2054:3,11,19
2055:16,21

**sincerely-held**
2163:16 2165:4

**single** 2020:24 2104:20
2108:12 2164:10
2179:21,23 2180:1,16

**sir** 2008:21 2133:22

**sit** 2006:3

**sitting** 2111:7 2134:1

**Sixteen** 2201:10,11

**skip** 2053:17 2054:16
2055:5 2056:15
2057:12 2058:6 2059:4,
14 2060:1,11,20
2061:5,15,25 2062:17
2063:8 2064:2,24
2065:9,21 2066:6,16,24
2067:10 2100:20

**sleepy** 2114:19

**slowly** 2115:12
2135:10

**smart** 2199:20

**Smith** 2180:7

**snippet** 2131:3

**snippets** 2090:24

**social** 2018:21 2083:19
2085:4 2086:6,10
2098:12,18 2100:14
2116:1 2128:24 2131:7
2145:4,5,15 2165:9
2183:3,10

**soft** 2189:8

**sole** 2014:15

**solution** 2202:13

**solve** 2174:16 2202:10

**someone's** 2032:5
2070:24 2145:24,25

**Sonya** 2080:25 2086:3,
11,14 2087:4 2130:8

**sort** 2046:20 2165:20
2170:22 2200:15

**sought** 2039:14

**sound** 2013:18
2080:21 2203:18

**Southwest** 2004:7,11
2017:21,23 2018:2,16
2019:16,19 2023:15
2024:24 2026:20
2027:3,18,21 2028:4,6,
9 2029:1 2030:4,15,22
2031:12,19 2032:7,12,
18 2033:3,6,9,12,23,25
2034:8,10,12,17
2035:9,12,14,20,23
2036:10 2037:2,4,7
2038:1,12,18,22
2039:11 2040:11,14,20
2041:17,18 2042:5,16,
23 2043:9 2044:6,11,
12,15,24 2045:3,14,22,
24 2046:15,21 2047:3,4
2049:19 2050:1 2053:5,
20 2054:22,24 2055:7,
13,20 2056:17,19
2063:2,10,14 2064:4,9
2065:1,4,11,13,14,23
2066:1,8,10,11,19
2067:1,2,14,18 2068:1
2070:20 2071:12
2072:5,6,7,12,24
2073:10,11 2074:7,8
2075:17,23 2078:8
2079:23 2080:6,17

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 235 of 240   PageID 16063

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022          Index: Southwest's..street

2084:9 2085:3,13
2086:23 2087:17
2089:18 2090:14,22
2092:9,21 2093:16
2094:8,18 2095:12
2096:3 2097:6 2098:6,
7,10,19,22 2099:17,22
2100:4,5,6,13 2103:2,
25 2104:14 2105:17,19
2106:15 2109:9,13,22
2115:8,14,21 2116:13,
18 2117:13,22 2118:1,
8,9,15,23 2119:6,15,21
2121:21 2122:2,4,11,
16,19 2123:24 2124:17
2125:4 2126:4,6,15,16,
25 2127:1,6,8,12,17
2128:3,8,13,16 2129:5,
22 2130:1,9,22,24
2131:12,13,14,21,23
2132:17 2134:9,14
2137:6,17 2142:8
2143:3,15,16 2144:1
2147:17,18,23,25
2148:14 2149:4,11,19
2151:25 2156:6 2158:8,
25 2160:18,24 2161:10
2162:24 2165:9
2167:20 2168:5,18,22
2169:1,2 2170:15
2171:11,15 2172:14
2176:13 2177:1
2178:14,18,22 2179:23
2181:9,22 2194:9,11
2196:15,23 2197:12,22
2198:18 2201:1,3,13
2202:7 2203:15 2204:1

**Southwest's** 2021:12,
19 2031:1 2033:15
2034:2 2046:8 2047:1
2094:9 2099:14
2117:11 2118:12
2123:3 2124:24
2127:24 2128:12
2131:7 2132:23
2133:17 2181:3

**spawns** 2080:10

**speak** 2052:1 2144:6
2187:14

**speaking** 2016:20
2074:8

**special** 2141:24
2145:18 2149:17

**specific** 2023:11
2147:8 2184:22 2185:3

**specifically** 2025:3
2184:18

**speculation** 2041:7

**speech** 2072:3,4,10,17,
19 2073:5 2088:19,23
2089:5,6,7,14 2092:7
2096:10 2097:3 2127:3
2143:18,23,25 2145:20
2146:24 2156:15
2157:25 2158:6,15,16,
19 2162:15 2183:23

**speed-reading**
2007:12

**speeder** 2110:5

**speeding** 2109:18
2110:4,5,7 2182:23

**spending** 2083:2
2186:1

**spent** 2128:10

**spigot** 2148:6

**spoke** 2128:15

**sponsored** 2083:7

**spotted** 2004:18

**spotting** 2005:14

**Stacy** 2141:9,15

**stand** 2020:1,9 2022:18
2023:6 2072:13
2075:21 2116:8,10
2124:4 2138:1 2140:16
2144:21 2145:14
2148:4 2153:12,15
2173:13 2175:9 2180:2

**standard** 2042:8
2114:3,6 2121:1
2148:23 2152:11
2174:16 2186:23

**standby** 2195:22

**standing** 2099:17
2101:15 2182:18

**stars** 2191:8

**start** 2004:6,7 2006:6
2012:7 2079:7,19
2099:25 2147:12
2183:6 2197:6

**started** 2119:9 2140:5
2203:6,7

**starting** 2018:11

**starts** 2082:25 2091:19

**state** 2048:22 2187:15

**stated** 2113:4

**statement** 2014:23
2031:24 2116:1
2121:21 2126:2
2129:21 2181:13
2197:8 2198:16

**statements** 2015:1
2020:7 2021:21
2098:21

**states** 2028:11 2029:3

**status** 2018:13 2050:13

**statute** 2073:25 2163:9

**statutes** 2156:8

**stay** 2007:21 2175:3
2188:8 2204:9,12

**staying** 2097:13
2145:9 2204:13

**stealing** 2141:16

**Step** 2101:6,7 2118:21,
25 2119:3 2132:6,12,20
2133:3,20 2137:20

**Stephenson** 2019:14
2148:18 2149:1

**stepped** 2185:19,20
2186:4

**stepping** 2069:20

**steps** 2137:22

**steward** 2139:9

**stewed** 2152:18

**stick** 2013:5,17

**sticking** 2114:5

**stipulate** 2017:10,13

**stipulated** 2017:11

**stipulation** 2017:8

**Stipulations** 2017:7

**Stone** 2018:13,19,23
2019:1,8,10,13 2024:23

2026:18,21 2027:1
2031:11,13 2032:17
2035:7 2036:9 2040:10
2053:3 2071:10
2072:23 2075:19
2076:22 2077:7
2078:11 2079:11
2081:6 2082:13,19
2083:24 2084:10,14
2087:9 2090:21,23
2091:17 2093:24
2094:1,5 2103:22
2104:21 2116:22
2121:25 2123:10,17,19,
23,24,25 2124:3,7,8,11,
16 2125:1 2127:4,24
2128:16 2129:17,19,22
2130:2 2131:12
2136:25 2138:7
2139:13,15,16 2140:8,
13 2142:4,7,10,16
2143:13 2144:23
2146:15,16,17,23
2147:15,18,20 2148:14,
17,23 2149:6,7,8,10
2150:3,6,7,10,20,23
2151:10,17,24 2152:3,
17 2153:11,12,14,17,23
2154:4,20,23 2155:22
2156:5,19 2157:12
2159:15 2160:9,19
2162:9,17,20 2163:11,
15,21 2164:2,5,10,13,
21 2165:2,12,16
2167:6,14 2169:21
2170:13 2183:2

**Stone's** 2019:14,18
2031:14,18 2081:9
2082:14 2087:3
2122:11 2124:7
2128:14 2142:21
2143:5,10 2148:2
2154:9 2159:15 2161:9
2165:7

**stop** 2092:23 2101:8
2139:12 2160:20
2166:6

**stops** 2147:19 2204:10

**story** 2092:9 2132:10,
19 2163:20

**straight** 2159:21

**street** 2172:22

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 236 of 240   PageID 16064

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022              Index: stressed..terminated

**stressed** 2108:14

**stretch** 2009:7

**strip** 2165:13

**stripped** 2163:12

**stroke** 2108:15

**strongly** 2104:11

**struggle** 2108:7

**stuff** 2100:1 2101:18
2102:12

**stymied** 2177:15

**subject** 2048:22
2125:23 2143:2

**subjected** 2122:22

**submitted** 2015:13
2150:12

**Subpart** 2033:5 2036:2
2037:1 2039:6

**subsequent** 2151:10
2184:19

**substantial** 2025:5
2030:25 2031:17
2161:8 2162:23

**substantially** 2050:4,
10 2067:24

**subtract** 2042:22

**succeed** 2049:25

**sudden** 2124:11

**suffer** 2047:19 2170:23

**suffered** 2046:10
2049:10,15 2146:9

**suffering** 2041:24
2042:3 2058:12,17,21
2064:8,13,17 2108:2,21
2124:3 2170:7

**sufficient** 2020:25

**suggest** 2110:19
2130:18 2191:14

**suggested** 2126:2

**suggesting** 2108:22

**suggestion** 2108:24
2126:14

**suing** 2137:10

**suit** 2023:20

**suits** 2144:20

**Sullivan** 2137:14

**sum** 2049:8 2057:15
2058:9 2059:17
2060:13 2061:8 2062:4,
22 2063:11 2064:5
2065:12 2066:9,25
2067:15 2168:12
2170:4 2171:3

**summer** 2191:4

**supervisor** 2044:11
2167:21

**support** 2129:7
2152:25

**supported** 2018:20
2088:4 2096:1 2128:11
2140:22,23 2157:23

**supporter** 2155:21
2162:3

**supporting** 2077:4
2164:7

**supports** 2015:10
2104:11

**supposed** 2081:11
2143:4,16 2176:14
2187:14

**surprise** 2197:19,20

**surprisingly** 2197:17

**suspect** 2037:10
2133:24

**suspend** 2127:21

**suspension** 2120:19
2138:5

**sustained** 2041:22
2042:11 2049:12
2057:21,24 2063:17,20
2169:15,18

**Suzanne** 2019:14
2148:18 2152:23

**SWA** 2088:9 2158:8

**sworn** 2022:14

**sympathy** 2015:21,23

**synonymous** 2037:23

**system** 2013:1 2111:1
2169:22,23

---

**T**

**TA** 2161:25

**table** 2166:20 2168:24

**tactic** 2173:21

**tagged** 2114:11

**takes** 2009:3,5,9
2025:11 2098:2
2152:13

**taking** 2017:17 2100:9
2111:22 2179:5
2191:21

**Talburt** 2080:5 2085:12
2086:13 2105:6 2139:6,
7,10,15,25 2140:23

**Talburt's** 2139:20

**talk** 2006:2 2052:9
2068:15 2071:18,19
2074:16,17 2083:16
2087:25 2092:24
2100:25 2101:6
2103:14 2110:24
2111:11,17 2118:24
2124:12 2125:6
2129:18 2158:21
2161:12 2163:3
2164:22 2165:19,23
2166:11 2170:19
2178:20 2184:11
2188:25 2189:1
2190:18 2192:25
2193:6 2195:23

**talked** 2116:19,20
2118:7 2130:7 2141:21,
22 2159:10 2179:23
2183:1 2189:24 2192:2

**talking** 2073:2 2077:25
2079:23 2080:7
2083:19 2084:8
2086:22 2091:8 2093:1,
25 2109:11 2125:10
2132:14 2135:10
2150:3 2155:13
2158:17 2162:11
2167:5 2175:15
2178:18 2190:16

2202:4

**talks** 2076:9 2080:22
2086:4 2087:12,13
2121:13 2126:12
2198:19,20

**targeted** 2080:11
2144:16

**targeting** 2009:13
2079:24,25 2081:1

**tasked** 2093:17

**tax** 2042:21 2048:22

**taxes** 2049:1

**teachers** 2109:11
2172:6

**teaching** 2172:9

**teachings** 2017:18

**team** 2006:13 2081:4,5,
8,9 2087:7 2145:14
2190:10 2198:20,21

**tear** 2161:21

**tears** 2148:4 2153:13

**technical** 2049:8,12
2170:22

**telling** 2095:11,17,20
2096:2,23 2111:8,9
2118:14 2154:2
2166:21 2176:16
2178:16 2182:9,18

**tells** 2095:18,22
2141:10 2181:5

**Ten** 2019:4 2100:16

**tend** 2024:1 2200:2

**tentative** 2140:13
2155:19

**tenure** 2018:2 2150:24

**terminate** 2034:22
2119:2,4 2125:19
2128:19 2129:11
2137:18 2168:19
2169:8 2170:16

**terminated** 2041:18
2094:10 2125:15
2128:6 2129:14,15,16
2160:21 2170:11,14
2178:4 2184:21

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 237 of 240   PageID 16065

CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                        Vol 7 July 13, 2022                Index: termination..treating

**termination** 2018:9,15
2019:20 2024:18
2067:25 2090:5,17
2093:18 2097:16,17
2120:18 2129:12
2130:14 2169:11
2172:3 2177:2 2194:20
2195:11

**terms** 2004:19 2007:16
2039:4,17 2068:23
2075:12 2076:2 2082:1
2112:9 2162:12 2165:7
2171:9

**terrible** 2080:21

**terribly** 2110:5

**test** 2020:21

**testified** 2020:19
2021:1 2023:6 2091:16
2093:11 2099:6 2121:1,
3 2139:19 2141:14
2164:2 2170:10

**testifies** 2080:24
2082:18

**testify** 2022:18 2092:5

**testimony** 2014:24
2015:12 2016:15,21
2019:24 2020:5,10,14,
17,20,24 2021:23
2022:1,12,13,19,21,25
2023:2,9,11,18 2051:20
2082:14 2093:10
2107:15,16 2129:14
2130:11 2135:4 2145:2
2153:17

**Texas** 2172:22

**text** 2157:10,22
2158:12,13,16 2159:3

**themself** 2183:6

**therefor** 2029:19

**thick** 2085:2,20

**thing** 2008:20 2011:11
2056:7,11 2068:22
2072:9 2089:10 2094:4,
8 2105:21 2106:7
2111:23 2113:3
2119:14,15 2121:8
2127:17 2128:5
2131:22 2134:5
2138:12 2175:17

2185:24 2186:6,8
2187:25 2190:15
2192:20,23 2194:22
2197:24 2199:1 2203:4

**things** 2010:3 2013:1,5
2022:5 2069:24
2076:20 2077:5 2079:3
2081:13 2083:17
2091:1,11 2095:12
2100:20 2101:19
2102:2 2106:23 2110:2,
19 2113:12 2122:15
2124:21 2136:14
2151:6 2163:8

**thinking** 2006:3,21
2069:21,22 2074:1
2166:21 2194:22
2199:4

**Thirteen** 2019:12

**Thirty-day** 2138:5

**thought** 2072:2 2103:8,
19 2106:3 2114:20,23,
24 2119:14 2137:25
2143:16 2145:1
2189:11

**thoughts** 2007:13
2089:22 2112:18
2191:10 2197:3 2199:9,
11 2200:1 2201:2,6,20

**threat** 2031:23 2161:19
2181:7,8,12 2184:4

**threatened** 2148:7
2161:17

**threatening** 2079:12

**three-week** 2131:25

**three-year** 2110:21

**threw** 2141:11

**thriving** 2173:16

**throw** 2140:7

**throwing** 2182:8

**thrown** 2139:5 2141:8
2180:25

**thumb** 2009:19
2011:25

**thumbed** 2119:22

**Thursday** 2187:22

**ticket** 2109:18 2110:4,7
2182:23

**tickets** 2110:5

**tidbits** 2147:9

**tied** 2142:12,13 2152:5

**till** 2188:8

**time** 2006:11,15 2007:9
2011:17 2021:5,24
2022:21 2041:21
2048:15 2056:11
2069:7,17 2077:5,22
2078:5,14,15,17,20
2079:6 2082:3 2083:17
2085:16 2097:9,12
2110:11 2112:25
2114:13 2119:8
2120:12,19 2124:5
2134:13 2138:5
2142:17 2172:3,20
2174:7 2176:15,19
2179:16 2188:5
2192:14

**times** 2020:8 2051:7
2093:21 2107:19
2134:21 2200:20

**timetable** 2188:4

**timing** 2070:25

**tip** 2193:11

**tired** 2135:10

**Title** 2033:2 2043:4
2049:13 2058:8 2059:6,
10,16,20 2060:3,7,13,
16 2064:4 2065:1,5,11,
15,23 2066:2,8,12
2073:8 2074:14
2099:15 2163:3,4
2170:3

**today** 2008:5,8 2013:24
2048:11 2069:7,17
2110:15 2136:13
2142:25 2164:25
2172:17 2188:2 2190:1,
3,8 2193:13 2204:15

**told** 2006:13 2009:13
2023:14 2072:6
2073:11,15,22 2079:21
2092:2,9,10,14 2099:8
2107:24 2109:22
2117:20,24 2118:15

2119:23 2121:20
2125:14 2128:5
2129:21 2131:22
2134:8,9 2140:17
2143:20 2144:9 2151:3
2153:24 2165:25
2166:6 2179:2 2180:6
2181:22 2183:15

**tolerance** 2115:23
2116:6,14 2122:6

**tomorrow** 2008:5
2187:10

**tonight** 2069:14

**top** 2160:1,16 2184:3

**topic** 2023:18 2049:3

**topple** 2086:25

**tos** 2179:4

**toss** 2170:24

**touch** 2139:3

**Tough** 2177:20

**tradition** 2012:25
2013:3

**trail** 2137:4

**transcript** 2113:11

**trash** 2089:12

**trauma** 2154:14
2173:18

**traumatic** 2142:6,22

**traumatize** 2145:25
2154:12

**traumatized** 2153:11
2157:13

**traveling** 2092:1
2145:9

**treat** 2017:11 2025:21
2077:1,18 2079:19
2102:17

**treated** 2016:1 2023:15
2036:20 2076:3,10
2105:3,10 2106:8
2118:13 2154:18
2164:16,20

**treating** 2054:8
2078:18

**treatment** 2025:21 2036:23 2054:10 2122:23

**tree** 2008:17

**trees** 2013:21

**trial** 2014:10,13,18 2015:10 2022:1,16 2051:10,11 2074:25 2115:19 2124:21 2138:21 2151:2 2191:1, 5,7 2195:13

**tribunals** 2111:3

**tricky** 2191:19

**trifecta** 2158:14

**trifling** 2049:8

**true** 2005:5 2024:17 2075:24 2080:4 2090:18 2130:9 2136:22 2148:3 2180:5 2181:17 2198:12 2202:12

**trump** 2182:10,13

**truncate** 2069:10

**trust** 2141:19 2150:10, 11 2175:13

**truth** 2022:4 2032:1 2153:4

**truthfulness** 2019:23

**tumor** 2080:8

**tune** 2141:16

**tuned** 2204:9,12

**turn** 2138:8 2148:6 2151:15 2152:3,20 2161:3 2163:1 2165:12, 18 2188:12

**turned** 2136:25 2141:1 2155:24,25 2156:21,25 2164:19 2167:14 2170:13 2175:4

**turning** 2084:9 2140:2 2152:2 2160:11 2163:15

**Twelve** 2019:10

**TWU** 2017:22 2079:6 2081:6 2082:13,16,19

2136:10 2150:10 2194:14

**type** 2010:2 2044:13,14 2124:3 2167:22,23

**types** 2016:20 2121:2 2133:14 2170:11

---

**U**

**Ultimately** 2143:12

**unacceptable** 2119:7

**unanimous** 2052:3,4

**unbiased** 2015:17

**uncomfortable** 2096:22 2097:2,5

**underneath** 2157:16

**understand** 2079:17 2120:2 2122:1 2164:23

**understanding** 2075:24

**undue** 2038:21,23 2039:2 2056:19 2106:24 2169:7

**unduly** 2051:17 2169:5,7

**unfair** 2033:21

**uniform** 2099:18 2100:4

**uniforms** 2126:6

**unimportant** 2022:11

**union** 2004:15 2017:22 2018:14,18,22 2024:11, 12,17,25 2025:2,4,5,6, 10 2026:6,9,11 2028:11 2029:5 2030:5,9,13 2031:20 2034:24 2036:8,14 2039:13,19 2040:1 2070:20 2071:10,11,14,21 2072:6,7,24 2074:12 2075:2,4,7,15,17,23 2076:10 2077:17,18,25 2078:3,12,24 2079:5,7, 9,22,24 2080:16,18 2082:3,6,21,22,25 2083:4,12,13,22 2084:20 2085:2

2086:25 2087:12,19,21, 22 2088:17 2090:23 2091:4,9 2092:1,17,24 2093:1,2,3,5,14,24 2094:1,5,23 2095:23,24 2096:3,17 2097:4,21 2101:11 2102:14,15,18 2103:4,6,7 2104:23 2105:16 2106:10 2109:1,7,23 2121:5 2124:1 2125:3 2128:6, 8,10,12,17,23 2129:11, 20 2130:2 2131:4,8,15, 16 2132:4 2135:23 2136:2 2137:10,22 2138:2,9 2139:7,8,9 2141:16 2143:19 2147:22 2148:1,9,10 2149:4,16,17,18 2150:16,23 2151:7,14, 16,18,23 2152:12 2155:9,17,19,23 2156:3,15 2160:6 2161:15,16,17,19,24 2162:12 2163:11,22,23 2164:24 2165:6,20 2167:25 2168:1,9,22 2169:5,7,17 2170:18 2171:8,13 2172:14 2175:21,23 2176:12,20, 24 2177:4,25 2178:8, 23,25 2179:13,15,25 2180:2,10,19 2181:1,2, 3,6,11,18 2182:11 2183:3,5,21 2194:12 2196:18,25 2197:14,19, 23 2198:1,8,23 2199:1, 12 2201:2 2202:5,9,22 2203:15,22

**union's** 2018:19 2026:16 2039:24 2124:13 2126:10 2129:5 2198:5

**union-protected** 2097:3 2158:6

**union-related** 2089:13 2094:12

**Union-sponsored** 2019:2

**unions** 2024:9 2028:3 2199:6

**unlawful** 2029:14 2030:12 2033:5,16,22

2034:7,24 2035:3,18 2036:14,17 2037:14 2039:19 2040:1 2075:7

**unlawfully** 2038:2 2040:6 2053:25 2054:7, 18 2055:13 2105:1,12, 13 2127:6

**unravel** 2192:4

**unsatisfied** 2200:24

**unsatisfying** 2200:11

**unusual** 2118:4

**unworthy** 2034:11 2035:23

**upset** 2083:4 2091:25 2106:5 2124:2 2178:18 2180:10

**upsets** 2119:23

**urging** 2164:25

---

**V**

**vacation** 2042:20 2120:12

**vagina** 2105:22 2125:9

**vaguely** 2185:22

**valuable** 2048:11,14

**Vegas** 2019:15

**verbal** 2139:11

**verdict** 2011:20 2014:19 2015:23 2041:19 2050:24 2052:3,4,6,18,21 2068:9 2173:13,14 2174:2 2180:7 2190:7, 12,19 2191:12,21 2192:1,9,17 2193:12

**version** 2009:20 2011:5,11

**versions** 2010:13,18

**video** 2071:16 2072:2 2091:20 2094:21,24 2096:10 2098:1,9 2099:16 2105:5,21 2123:14 2124:8,11 2133:14 2143:2 2152:10 2156:15

Case 3:17-cv-02278-X   Document 453   Filed 06/14/23   Page 239 of 240   PageID 16067
CHARLENE CARTER vs SOUTHWEST AIRLINES and TRANSPORT WORKERS
3:17-cv-02278-X                    Vol 7 July 13, 2022                    Index: videos..wrong

2157:8 2175:13 2176:2,
5 2178:19,20 2179:3

**videos** 2097:18 2098:5
2116:21,24 2117:5,9,18
2121:22,24 2122:25
2123:5,11,12,17,19,22
2124:5,19 2127:4,23
2129:17 2133:6 2137:1
2143:13 2146:15,23
2153:10,15 2154:20
2156:13,16,20,22,23
2159:5 2162:20 2163:1
2165:22

**view** 2011:21 2077:1
2079:7 2192:17 2199:4

**views** 2124:7 2126:16,
18 2127:8 2164:5

**vigorously** 2137:23

**VII** 2033:2 2043:4
2049:13 2058:8 2059:6,
10,16,20 2060:3,7,13,
16 2064:4 2065:1,5,11,
15,23 2066:2,8,12
2073:8 2074:15
2099:15 2163:3,4
2170:3

**violate** 2044:20
2073:25 2090:9
2102:16 2117:17
2131:7

**violated** 2024:21
2025:24 2027:11
2028:7,10 2029:2
2033:14 2040:21
2053:8 2073:8 2074:13
2104:3 2117:7 2119:5
2121:22 2133:17
2151:21

**violates** 2025:10
2071:13 2072:8 2125:4
2152:12

**violating** 2059:9,19
2060:6,15,25 2061:10
2065:4,14 2066:1,11

**violation** 2032:9
2043:14 2049:9,13
2072:22 2102:24
2149:25 2166:16,17
2170:22

**violations** 2049:16

**2145:15**

**violence** 2031:23
2046:12 2184:5

**virtually** 2050:11

**visual** 2013:4 2145:21

**vocal** 2155:21 2161:23
2162:3,14

**voir** 2072:18

**Volume** 2013:20

**voluntarily** 2006:10
2092:5

**vote** 2083:5

_____

**W**

_____

**wages** 2029:23
2042:12,17 2057:13,17,
21 2062:24 2063:9,13,
17 2067:17 2107:2
2168:11,14 2169:15
2171:5

**wait** 2088:10 2158:10
2192:11

**walk** 2116:23 2136:23
2147:6

**walked** 2116:18

**walking** 2108:15

**wanted** 2080:23
2082:12 2083:12
2091:11 2092:7 2095:4,
6 2101:2 2116:10,11
2117:6 2124:2 2133:18
2138:16 2139:1,2
2146:16,17 2153:24
2165:1,3,25 2168:2
2200:22

**warrants** 2184:22
2185:3

**Washington** 2019:3,6

**watch** 2123:12,13,14
2124:4

**watched** 2091:24
2123:15 2156:23

**watching** 2007:2
2191:5

**water** 2145:6,10,20
2148:6

**ways** 2088:6 2158:3
2192:3

**wearing** 2088:13

**website** 2126:10

**Webster** 2071:25
2184:2

**week** 2136:5,6

**weeks** 2191:2

**weighed** 2020:21
2023:4

**weighing** 2019:24

**weight** 2021:22
2051:18

**whatsoever** 2021:7,17
2130:18

**Whited-out** 2141:2

**whiteouts** 2180:13

**wins** 2102:3

**wiser** 2187:18

**witness's** 2019:25
2022:19

**witnesses** 2014:24
2016:15 2019:21,23,25
2020:19,21,22 2021:1
2072:13 2113:10
2117:22 2183:9 2187:8

**witnesses'** 2021:20

**woman** 2117:12 2140:3

**women** 2125:13
2126:19 2153:19,21
2154:2

**women's** 2019:2,5
2071:11 2082:1 2088:5
2095:24 2124:13
2125:11 2126:5,17,20
2157:24 2158:12

**won** 2162:18

**wondering** 2198:9

**word** 2006:16 2070:22
2115:11 2123:21
2135:23 2196:22

**words** 2005:2,25
2056:1,3,8,10 2076:6
2080:22 2088:25
2097:11 2107:9 2113:1
2124:23

**wordsmithing**
2200:18

**wore** 2095:25 2125:13

**work** 2010:4 2012:18
2029:19 2080:12
2107:3,4 2110:15
2118:19 2142:22
2156:2 2159:9 2171:11,
12 2173:8,11 2177:22,
23,24 2192:21

**worked** 2012:18
2117:12 2147:2
2153:18

**workforce** 2122:21
2127:24

**working** 2017:23
2050:13 2120:3 2134:8
2153:19 2172:3

**workplace** 2044:9
2045:5 2115:22
2142:24 2144:1,2,6,11
2146:22 2148:7
2151:13 2163:6
2173:18 2174:4
2177:18 2183:13,14,16
2198:21

**works** 2091:21 2130:5

**worried** 2092:16,18
2099:1

**worry** 2176:18

**worse** 2108:9

**worth** 2047:23 2109:14,
15

**wow** 2102:10 2179:20

**wrap** 2134:24

**write** 2013:1 2052:11

**writing** 2052:14

**written** 2052:5

**wrong** 2010:12 2051:4
2083:9 2107:11
2133:17 2146:21
2154:7 2173:1 2180:19

**wrongful**  2045:23
2046:19,22 2047:5

**wrote**  2186:6,9 2196:7

─────────────────
                Y
─────────────────

**y'all**  2006:3,5 2008:8,
12,13,14 2009:18
2011:9,25 2012:5,8,13
2013:12,23 2068:10
2070:1,15 2071:2
2134:24 2172:24
2174:6 2187:11 2190:4,
16,18,21,24,25 2191:2,
25 2193:1,15 2194:16
2195:18,25 2197:7
2199:9,24 2203:25

**y'all's**  2004:22

**year**  2107:18,25
2110:21 2161:24

**years**  2018:3 2074:10
2077:12,14 2085:23
2086:8 2099:5,10
2100:3 2107:3,19
2117:13 2124:10
2152:8 2155:17
2162:21

**Yelp**  2191:8

**yesterday**  2006:14
2007:15 2008:22
2012:19 2118:20
2144:21 2192:3

**young**  2153:19

**youth**  2153:18

─────────────────
                Z
─────────────────

**zeroing**  2201:14