UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| CHARLENE CARTER, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES CO. and TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, <br><br> Defendants. | CASE NO.: 3:17-CV-02278-X <br><br> **SOUTHWEST AIRLINES CO.'S BRIEF IN SUPPORT OF ITS UNOPPOSED EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND OPPOSED MOTION TO STAY THE COURT'S CONTEMPT ORDER PENDING APPEAL** |

PAULO B. MCKEEBY
State Bar No. 00784571
pmckeeby@reedsmith.com
BRIAN K. MORRIS
State Bar No. 24108707
bmorris@reedsmith.com
REED SMITH LLP
2850 N Harwood St., Ste. 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile:  (469) 680-4299

ANDREW B. RYAN
State Bar No. 24054464
andy@ryanlawpartners.com
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219
Dallas, TX 75219
Telephone: (214) 347-7360
Facsimile: (888) 594-6240

SHAY DVORETZKY
Admitted *pro hac vice*
shay.dvoretzky@skadden.com
PARKER ANDREW RIDER-LONGMAID
Admitted *pro hac vice*
parker.rider-longmaid@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Defendant Southwest Airlines Co..*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

UNOPPOSED REQUEST FOR IMMEDIATE ADMINISTRATIVE STAY .............................. 1

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 5

      A.    The jury found that Southwest terminated Carter in violation of Title VII. ............ 5

      B.    Southwest implements the judgment, but Carter moves to hold Southwest in contempt and the Court conducts a hearing and holds Southwest in contempt even after Southwest has agreed to issue a corrected statement. ............ 6

ARGUMENT .................................................................................................................. 8

I.    Southwest is likely to succeed in challenging the Contempt Order and the underlying finding of Title VII liability. ........................................................... 10

      A.    Southwest complied with the judgment, so contempt was unwarranted. ............. 10

      B.    Mandatory religious-liberty training exceeds the civil-contempt power and punishes Southwest for exercising its First Amendment rights. ........................... 10

            1.    Civil contempt sanctions must serve remedial purposes—ensuring compliance with the Court's orders—not punitive purposes................... 11

            2.    Religious-liberty training exceeds the Court's civil-contempt power................................................................................................ 12

            3.    The Contempt Order punishes Southwest for exercising its First Amendment rights................................................................................ 13

            4.    This Court's contrary reasoning is incorrect.............................................. 16

      C.    Southwest is likely to succeed on the merits of its Title VII appeal. .................... 19

            1.    An employee claiming discrimination because of religious belief must show that the employer treated similarly situated employees without that belief more favorably, and religious practice is not protected if accommodating it would impose an undue hardship on the employer............................................................................................. 20

i

**TABLE OF CONTENTS**
**(continued)**

Page

2.  Southwest is likely to succeed in challenging Title VII liability because Carter produced no evidence that Southwest terminated her because of her religious belief. ...........................................................21

3.  Southwest is entitled to a remand on Carter's religious-practice claim because the Supreme Court's recent decision in *Groff v. DeJoy* changed the undue-hardship standard..............................................22

II.   Southwest will suffer irreparable harm without a stay pending appeal. ...........................24

III.   A stay would not substantially harm Carter, and the public interest supports a stay. ....................................................................................................................................25

CONCLUSION.................................................................................................................................25

CERTIFICATE OF CONFERENCE.............................................................................................27

CERTIFICATE OF SERVICE .......................................................................................................28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alexander v. United States*,
  509 U.S. 544 (1993) ........................................................................... 14

*Alkhawaldeh v. Dow Chemical Co.*,
  851 F.3d 422 (5th Cir. 2017) .......................................................... 21, 22

*American Airlines, Inc. v. Allied Pilots Association*,
  228 F.3d 574 (5th Cir. 2000) ............................................................. 11

*American Postal Workers Union v. United States Postal Service*,
  766 F.2d 715 (2d Cir. 1985) .............................................................. 24

*Apple, Inc. v. Samsung Electronics, Co.*,
  809 F.3d 633 (Fed. Cir. 2015) .......................................................... 24

*Ball v. LeBlanc*,
  300 F.R.D. 270 (M.D. La. 2013) ....................................................... 16

*Balthazar v. Atlantic City Medical Center*,
  137 F. App'x 482 (3d Cir. 2005) ....................................................... 16

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) ............................................................................. 14

*Bodenheimer v. PPG Industries, Inc.*,
  5 F.3d 955 (5th Cir. 1993) ................................................................. 20

*Boylan v. Detrio*,
  187 F.2d 375 (5th Cir. 1951) ............................................................. 12

*Brener v. Diagnostic Center Hospital*,
  671 F.2d 141 (5th Cir. 1982) ........................................................ 20, 23

*Bullard v. Chrysler Corp.*,
  925 F. Supp. 1180 (E.D. Tex. 1996) .............................................. 15, 16

*Burgess v. FDIC*,
  871 F.3d 297 (5th Cir. 2017) ............................................................. 24

*Clark v. Champion National Security, Inc.*,
  952 F.3d 570 (5th Cir. 2020) ........................................................ 19, 21

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*,
  188 F.3d 278 (5th Cir. 1999) ........................................................ 22, 23

*Earl v. Boeing Co.*,
  21 F.4th 895 (5th Cir. 2021) ............................................................. 25

*Edmonds v. Seavey*,
  379 F. App'x 62 (2d Cir. 2010) ......................................................... 16

## TABLE OF AUTHORITIES
### (continued)

PAGE(S)

*Elrod v. Burns*,
   427 U.S. 347 (1976) ........................................................................................ 4, 24

*Eversley v. MBank Dallas*,
   843 F.2d 172 (5th Cir. 1988) .......................................................................... 22, 23

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ............................................................................................. 18

*First National Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) ............................................................................................. 15

*Florida Businessmen for Free Enterprise v. City of Hollywood*,
   648 F.2d 956 (5th Cir. 1981) ............................................................................... 25

*Gentile v. State Bar of Nevada*,
   501 U.S. 1030 (1991) ..................................................................................... 11, 15

*Geraci v. Moody-Tottrup, International, Inc.*,
   82 F.3d 578 (3d Cir. 1996) .................................................................................. 19

*Goforth v. Owens*,
   766 F.2d 1533 (11th Cir. 1985) ........................................................................... 17

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017) ...................................................................................... 12, 13

*Groff v. DeJoy*,
   143 S. Ct. 2279 (2023) ....................................... 4, 14, 15, 19, 22, 23, 24

*Hardy v. Asture*,
   No. 1:11-CV-299 (MR), 2013 WL 566020
   (W.D.N.C. Feb. 13, 2013) .................................................................................... 17

*Hawkins v. Kroger Co.*,
   No. 15-CV-2320 (JM), 2020 WL 6150040 (S.D. Cal. Oct. 20, 2020) ................... 13

*Herster v. Board of Supervisors*,
   887 F.3d 177 (5th Cir. 2018) .......................................................................... 20, 21

*In re Baum*,
   606 F.2d 592 (5th Cir. 1979) ............................................................................... 10

*In re Deepwater Horizon*,
   32 F.3d 326 (5th Cir. 2013) ................................................................................... 9

*In re Murphy-Brown, LLC*,
   907 F.3d 788 (4th Cir. 2018) .......................................................................... 15, 24

*In re Oliver*,
   333 U.S. 257 (1948) ...................................................................................... 12, 13

## TABLE OF AUTHORITIES
### (continued)

PAGE(S)

*In re Stewart*,
571 F.2d 958 (5th Cir. 1978) ................................................................. 11, 12

*In re United States Bureau of Prisons*,
918 F.3d 431 (5th Cir. 2019) ..................................................................... 11

*Jackson v. Motel 6 Multipurpose, Inc.*,
130 F.3d 999 (11th Cir. 1997) ................................................................... 25

*Knox v. Service Employees International Union, Local 1000*,
567 U.S. 298 (2012) .................................................................................. 14

*Lakedreams v. Taylor*,
932 F.2d 1103 (5th Cir. 1991) ....................................................... 4, 24, 25

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
No. 09 60351, 2011 WL 4433570 (S.D. Fla. Sept. 21, 2011) .................... 16

*Massaro v. Palladino*,
19 F.4th 197 (2d Cir. 2021) ....................................................................... 19

*McCoy v. City of Shreveport*,
492 F.3d 551 (5th Cir. 2007) ..................................................................... 20

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ...................................................................... 20, 21, 22

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
934 F.3d 447 (5th Cir. 2019) ..................................................................... 20

*Moser v. Bret Harte Union High School. District*,
366 F. Supp. 2d 944 (E.D. Cal. 2005) ....................................................... 16

*National Institute of Family & Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018) ......................................................................... 11, 14

*Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*,
86 F.3d 464 (5th Cir. 1996) ....................................................................... 12

*Nobach v. Woodland Village Nursing Center, Inc.*,
799 F.3d 374 (5th Cir. 2015) ..................................................................... 20

*Norman Bridge Drug Co. v. Banner*,
529 F.2d 822 (5th Cir. 1976) ..................................................................... 11

*Olcott v. Delaware Flood Co.*,
76 F.3d 1538 (10th Cir. 1996) ............................................................. 16, 17

*Pacific Gas & Electric Co. v. Public Utilities Commission*,
475 U.S. 1 (1986) ...................................................................................... 14

*Petrisch v. JP Morgan Chase*,
789 F. Supp. 2d 437 (S.D.N.Y. 2011) ........................................................ 16

## TABLE OF AUTHORITIES
### (continued)

PAGE(S)

*Portland v. City of Portland*,
  No. 3:20-CV-917 (HZ), 2021 WL 982613
  (D. Or. March 16, 2021) ................................................................................ 17

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
  487 U.S. 781 (1988) ........................................................................................ 14

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980) ........................................................................................ 17

*SEIU, Local 5 v. City of Houston*,
  595 F.3d 588 (5th Cir. 2010) .......................................................................... 16

*Shodeen v. Petit (In re Burghoff)*,
  374 B.R. 681 (Bankr. N.D. Iowa 2007) .......................................................... 16

*Texas v. Biden*,
  554 F. Supp. 3d 818 (N.D. Tex. 2021) .............................................................. 1

*Thomason v. Norman E. Lehrer, P.C.*,
  182 F.R.D. 121 (D.N.J. 1998) ................................................................... 15, 16

*United States v. Rizzo*,
  539 F.2d 458 (5th Cir. 1976) ..................................................................... 12, 13

*United States v. Straub*,
  508 F.3d 1003 (11th Cir. 2007) ...................................................................... 17

*Valley v. Rapides Paris School Board*,
  118 F.3d 1047 (5th Cir. 1997) ........................................................................ 24

*Vaughn v. Woodforest Bank*,
  665 F.3d 632 (5th Cir. 2011) ..................................................................... 20, 21

*Waste Management of Washington, Inc. v. Kattler*,
  776 F.3d 336 (5th Cir. 2015) ............................................................................ 3

*Weber v. Roadway Express, Inc.*,
  199 F.3d 270 (5th Cir. 2000) ......................................................... 2, 5, 22, 23

*Whitfield v. Pennington*,
  832 F.2d 909 (5th Cir. 1987) .......................................................................... 10

*Willy v. Coastal Corp.*,
  503 U.S. 131 (1992) ........................................................................................ 17

*Wooley v. Maynard*,
  430 U.S. 705 (1977) ........................................................................................ 14

*Young Conservatives of Texas. Foundation v.
  University of North Texas*,
  609 F. Supp. 3d 504 (E.D. Tex. 2022) .......................................................... 8, 9

## TABLE OF AUTHORITIES
### (continued)

PAGE(S)

CONSTITUTION AND STATUTES

U.S. Const. amend. I ........................................................... 1, 3, 4, 8, 9, 10, 11, 13, 14, 15, 18, 19, 24

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e *et seq.* ................................................. 2, 4, 5, 6, 8, 10, 15, 16, 18, 19, 20, 22

42 U.S.C. § 2000e(j) ......................................................................................................... 2, 4, 6, 20

42 U.S.C. § 2000e-2(a)(1) ....................................................................................................... 20

RULES

Federal Rule of Appellate Procedure 8(a)(2) ............................................................................ 8, 9

Federal Rule of Civil Procedure 11 ................................................................................... 9, 16, 17

Federal Rule of Civil Procedure 16 ......................................................................................... 16

    Federal Rule of Civil Procedure 16(f) .................................................................................. 17

Federal Rule of Civil Procedure 37 .................................................................................... 16, 17

Federal Rule of Civil Procedure 50 ...................................................................................... 6, 21

OTHER AUTHORITIES

Alliance Defending Freedom, *Legal Academy*,
    https://adflegal.org/training/legal-academy ............................................................................ 2, 3

Alliance Defending Freedom, *What is Freedom of Speech?*,
    https://adflegal.org/article/what-freedom-speech ............................................................. 15, 16

## UNOPPOSED REQUEST FOR IMMEDIATE ADMINISTRATIVE STAY

Southwest seeks a stay pending appeal of the Court's Memorandum Opinion and Order Granting Sanctions (ECF 467) ("Contempt Order" or "Op.") because Southwest and its attorneys will suffer irreparable harm absent a stay and are likely to prevail on appeal. To give this Court and, if necessary, the Fifth Circuit, time to rule on that request, Southwest seeks, unopposed, an immediate administrative stay of the Contempt Order. Southwest respectfully asks that the administrative stay last until the Court rules on a stay pending appeal or, if the Court denies a stay pending appeal, until the Fifth Circuit rules on a request for a stay pending appeal so long as Southwest files that request within 7 days of this Court's denial. *See Texas v. Biden*, 554 F. Supp. 3d 818, 858 (N.D. Tex. 2021) (granting 7-day stay to pursue appellate relief). Carter does not oppose Southwest's request for an administrative stay provided the Court allows her at least 7 days to respond to Southwest's motion for a stay pending appeal. Given the looming August 28, 2023, deadline, Southwest respectfully advises the Court that it will ask the Fifth Circuit for a stay on August 22, 2023, if this Court has not granted a stay or an administrative stay by August 21, 2023.

## INTRODUCTION

Southwest Airlines seeks a stay pending appeal of the Contempt Order because it exceeds the Court's civil-contempt power, violates the First Amendment, and rests on a jury verdict that the Fifth Circuit is likely to overturn on appeal. The Contempt Order will irreparably harm Southwest and its attorneys without a stay, which is in the public interest and will not harm Carter.

Southwest fired Carter because she sent graphic and disturbing messages to her coworker. Those messages included a photo of a bloody aborted fetus surrounded by tissue in the palm of a hand, with the text, "This is what you supported during your Paid Leave with others at the Women's MARCH in DC …. You truly are Despicable in so many ways." Tr. Ex. 65.2. They also included a photo, linked to a video, of a bloody fetus in a metal bowl, with a message stating that

the union was "supporting this Murder," Tr. Ex. 65.1. That conduct violated Southwest policies designed to ensure that employees treat each other with civility and respect and, in Southwest's view, imposed an undue hardship on employee morale and the conduct of Southwest's business. Yet Carter sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming religious discrimination, and the jury found in her favor even though she produced no evidence that Southwest fired her for her religious beliefs. The jury also concluded that Southwest violated Title VII by failing to accommodate Carter's conduct after the Court declined to instruct the jury, despite then-controlling Fifth Circuit precedent on which Southwest relied at trial, that "[t]he mere possibility of an adverse impact on co-workers" from an employee's religious practice, with nothing more, was an "undue hardship" making that practice fall outside of Title VII's protections. *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 274 (5th Cir. 2000); *see* 42 U.S.C. § 2000e(j) (definition of religion). Southwest has appealed. ECF 432.

Southwest complied with the Court's judgment by reinstating Carter and posting company-wide notices about the judgment. Southwest also sent a notice to all flight attendants with the verdict form and judgment. Even so, Carter moved to hold Southwest in contempt because Southwest's circulation of the decision—the "Decision Notice"—said that Southwest "does not discriminate" rather than that it "may not discriminate." ECF 383-2. Carter also argued that a separate statement that Southwest published for flight attendants, an "Inflight on the Go" Memo (ECF 383-3), undermined the "may not discriminate" order. The Court ordered discovery and set a hearing. ECF 408. Although Southwest agreed to issue a corrected notice stating that Southwest "may not discriminate," ECF 419, at 4-5, the Court held Southwest in contempt. The Court ordered Southwest to issue a corrective statement verbatim and ordered three of its attorneys to attend religious-liberty training conducted by the Alliance Defending Freedom ("ADF"), whose "Legal Academy

seamlessly combines outstanding legal training with an unwavering commitment to Christian principles." https://adflegal.org/training/legal-academy. Southwest appealed. ECF 470.

All the factors favor a stay pending appeal. *First*, the Fifth Circuit is likely to overturn the Contempt Order and the judgment on which it rests. Southwest complied with the judgment by issuing a notice that, read as a whole, conveyed the Court's required message. The Contempt Order exceeds the Court's civil-contempt power: Southwest already agreed to issue a corrected notice and is prepared to issue verbatim the statement ordered by the Court. Mandating religious-liberty training does nothing to ensure compliance with the judgment and does not compensate Carter for Southwest's noncompliance—and the Court did not identify any order, let alone a "definite and specific" order, *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015), that Southwest violated and for which religious-liberty training would be necessary.

Instead, the Court found that Southwest's IIOTG Memo undermined the Court's judgment. But the IIOTG Memo simply expressed Southwest's disagreement with Carter's conduct and the jury and the Court's view of the law, and noted Southwest's commitment to appeal, even while promising to "implement the [Court's] judgment." ECF 383-3. That statement does not undermine the Court's judgment. Nor does it assert, contrary to the Court's view, that Southwest thinks its policies trump federal law. And Southwest's statement is itself protected by the First Amendment. By ordering religious-liberty training—with the unprecedented requirement that the ADF, a group with a professed religious viewpoint, conduct the training—the Court is sanctioning Southwest for its own protected activity of expressing its viewpoint. And rather than tell Southwest what it may or may not say in the future, the Court promises a "continued partnership" with Southwest, Op. 4, apparently so it can continue to superintend Southwest's speech and whether it violates the ADF's training. Neither the civil-contempt power nor the First Amendment permits that approach.

Still more, the Fifth Circuit is likely to overturn the jury verdict on which the Contempt Order rests. Carter failed to produce legally sufficient evidence that Southwest fired her for her religious beliefs, so the verdict cannot stand on that basis. Instead, she argued that she was fired for her graphic messages. But Southwest "is unable to reasonably accommodate" that "religious … practice without undue hardship on the conduct of [its] business," 42 U.S.C. § 2000e(j), so Title VII does not protect that conduct. The Court failed to properly instruct the jury on that element given then-controlling Fifth Circuit precedent under which Southwest tried the case, and the Supreme Court's recent change in the law in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), warrants a new trial with correct jury instructions applying the new standard.

*Second*, without a stay, the Contempt Order will irreparably harm Southwest's First Amendment rights and its and its lawyers' reputations. The Order not only punishes Southwest's speech in the IIOTG Memo, but it also chills Southwest's protected right to speak about this litigation in the future because it threatens sanctions if Southwest expresses its disagreement with the Court's decision or, perhaps, the ADF's view of the law. (Southwest cannot know for sure, because the order does not say what is or is not permitted speech, adding vagueness to the constitutional problems.) Southwest's loss of its First Amendment right to disagree is irreparable. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). The Contempt Order also irreparably damages Southwest's and its lawyers' reputations by causing harm that is difficult, if not impossible, to quantify. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).

*Finally*, Carter will suffer no harm from a stay, which serves the public interest. Religious-liberty training for Southwest's in-house lawyers, who were not involved in Carter's termination, will not benefit Carter. And the public has no interest in the enforcement of an order that is likely to be overturned and that chills Southwest's speech and violates Southwest's constitutional rights.

4

But the public does have a strong interest in appellate review of the important issues this case raises before the Contempt Order inflicts irreparable harm on Southwest.

## BACKGROUND

### A.    The jury found that Southwest terminated Carter in violation of Title VII.

**1.**    Carter sued Southwest, arguing that Southwest fired her because of her religion, in violation of Title VII of the Civil Rights Act of 1964. At trial, Carter relied on Facebook posts and messages, her termination letter, and notes from the factfinding hearing that Southwest conducted before terminating her. *See* Tr. Exs. 64, 65, 98, 103, 107, 115. Carter argued that this evidence proved that Southwest terminated her because of her pro-life religious beliefs and her religious practice of sending and posting on Facebook pro-life messages. Carter testified that she was "expressing [her] religious beliefs" when she sent the videos to Stone. Tr. 1262-63.

Southwest responded that Carter's religious beliefs had nothing to do with its decision to fire Carter. *See, e.g.*, Tr. 1603. The manager who approved Carter's termination did so because he concluded that Carter violated the "workplace bully and hazing policy and the social media policy." Tr. 1606; *see also* Tr. Ex 115. At the time of trial, Fifth Circuit precedent was clear that "[t]he mere possibility of an adverse impact on co-workers" from accommodating an employee's religious practice, with nothing more, was an "undue hardship" making that practice fall outside of Title VII's protections. *Weber*, 199 F.3d at 274. Southwest thus called senior supervisors to testify about the burdens to Southwest and the harm to employee morale that Carter's conduct could cause. For instance, a senior supervisor explained that Carter's conduct would cause employees to "lose respect for each other" and the company to "lose the family-type feel that Southwest Airlines has always been a proponent of in how we treat each other. And it would have an adverse affect on how we work together and how we interact[] as a group of employees." Tr. 1602.

**2.**    The Court instructed the jury that it could find that Southwest violated Title VII if

Southwest's "discharge of Plaintiff Carter was motivated by her sincerely held religious obser-vances, beliefs, or practices," Tr. 2034, or if it "discharged Carter with a motive of avoiding the need for accommodating a religious belief, observance, or practice." Tr. 2038. In Carter's view, Title VII protected her Facebook posts and messages and required Southwest to accommodate them as protected "religious observance or practice" under Title VII. 42 U.S.C. § 2000e(j).

Citing Fifth Circuit precedent, Southwest requested an undue-hardship instruction. Under Title VII, "religious observance or practice" is protected only if it does not impose "undue hardship on the conduct of the employer's business." *Id.* Southwest explained that "[a]n 'undue hardship' is an action that imposes more than a de minimis burden on the employer or the co-workers of the individual seeking an accommodation." ECF 250-3, at 15. But the Court refused to include in its instructions the cost of a religious accommodation on Carter's coworkers, instructing the jury that "[a]n undue hardship means more than a de minim[i]s cost on the conduct of the employer's busi-ness either in terms of financial costs or disruption of the business." Tr. 2039.

3.      The jury found for Carter on both counts. ECF 348, at 37, 39. The Court entered judgment for Carter, ordering Southwest to reinstate her with backpay; post on company bulletin boards and email to all flight attendants the verdict and judgment; and inform all flight attendants "that, under Title VII, they may not discriminate against Southwest flight attendants for their reli-gious practices and beliefs." ECF 375, at 3. Southwest filed a Rule 50(b) motion for a new trial, ECF 386, which the Court denied, ECF 409. Southwest appealed. ECF 432.

**B.      Southwest implements the judgment, but Carter moves to hold Southwest in contempt and the Court conducts a hearing and holds Southwest in contempt even after Southwest has agreed to issue a corrected statement.**

1.      After the Court's judgment, Southwest promptly reinstated Carter, posted the judg-ment and verdict form in the breakrooms at all of its airport bases, and emailed the Court's judg-ment and verdict form to every active Southwest flight attendant. ECF 394, at 3. That email also

contained a notice to flight attendants that read: "On December 5, 2022, a federal court in Dallas entered a judgment against Southwest…. The court [] ordered us to inform you that Southwest does not discriminate against our Employees for their religious practices and beliefs." ECF 383-2.

Southwest also published an internal IIOTG Memo to flight attendants. It explained the procedural posture of the litigation, communicated Southwest's side of the story, conveyed Southwest's disagreement with the verdict and judgment and its plan to seek review before the Fifth Circuit, and reminded employees to treat each other with kindness and to follow Southwest's updated policies while awaiting appellate review. Specifically, the memo explained that an employee had sued Southwest after engaging in conduct that Southwest "believed [was] inappropriate, harassing, and offensive." ECF 383-3. Southwest explained that a court had entered judgment against Southwest, requiring it to "pay monetary damages, distribute communication to Flight Attendants about the ruling, and reinstate [the employee's] employment with the Company." *Id.* Southwest promised to "implement the judgment." *Id.* Southwest also explained that it is "extremely disappointed with the court's ruling and [is] appealing the decision to the Fifth Circuit Court of Appeals." *Id.* Southwest explained that it believed Carter's behavior created tension in the workplace and reiterated its position, which it advanced at trial, *see, e.g.*, Tr. 1602, that her conduct "crossed the boundaries of acceptable behavior," ECF 383-3. The memo reiterated that, while Southwest "work[s] through the appeal process and await[s] a final ruling," employees should adhere to Southwest policies (which, Southwest noted, were being amended in response to the litigation) and display "Civility, Care and Unity at all times, regardless of our differing opinions." *Id.*

    **2.**    Carter moved for contempt, alleging that Southwest violated the Court's order by stating that it "does not discriminate," instead of "may not discriminate," in the Decision Notice, and issuing the IIOTG Memo. ECF 382, at 5-9. Southwest agreed to issue an email with the "may

not discriminate" language and to pay Carter's attorneys' fees for the contempt proceedings. ECF 419, at 4-5. But Southwest explained that the Court had not prohibited it from issuing the memo and that the IIOTG Memo was expression protected by the First Amendment. ECF 394, at 6-11.

The Court ordered discovery into Southwest's internal communications related to the Decision Notice and the IIOTG Memo, ECF 408, and held a two-day show-cause hearing. Despite Southwest's agreement to issue a corrected notice, on August 7, 2023, the Court held Southwest in contempt. The Court concluded that Southwest violated the judgment because its Notice did not inform Southwest's flight attendants that "under Title VII, [Southwest] may not discriminate against Southwest flight attendants for their religious practices and beliefs," ECF 375, at 3. Op. 8-13. While the Court did not hold that Southwest's IIOTG Memo violated the Court's order, Op. 8 n.25, it described the IIOTG Memo as "the antithesis of the Court-ordered notice," Op. 11.

As sanctions, the Court ordered Southwest pay Carter's attorneys' fees and costs and issue verbatim a new notice to its flight attendants. Op. 14-19. The Court also ordered three of Southwest's in-house lawyers to complete, by August 28, 2023, eight hours of "religious-liberty training" conducted by the Alliance Defending Freedom. Op. 27. The Court viewed training as necessary to prevent Southwest from issuing "a second IIOTG memo" in the future: "Because Southwest maintains the right to speak, the Court needs to impose some sanction that will help ensure that Southwest will not again attempt to undermine the Court-ordered notice with another citation to its policies." Op. 22; *see* ECF 468, at 10-11. The Court ordered Southwest to complete the training before sending the proscribed notice. Op. 28. Southwest appealed. ECF 470.

## ARGUMENT

The Court should stay its contempt order pending appeal. The Court considers four criteria to decide whether to grant a stay, *see* Fed. R. App. P. 8(a)(2): (1) the likelihood of success on appeal, (2) whether the movant would suffer irreparable harm without a stay, (3) whether a stay

would substantially harm other parties, and (4) whether a stay would serve the public interest. *Young Conservatives of Tex. Found. v. Univ. of N. Texas*, 609 F. Supp. 3d 504, 508-09 (E.D. Tex. 2022). A movant need not satisfy all four prongs. Rather, "when there is a serious legal question involved and the balance of the equities heavily favors a stay … the movant only needs to present a substantial case on the merits." *In re Deepwater Horizon*, 32 F.3d 326, 345 (5th Cir. 2013).

All four factors support a stay pending appeal. *First*, Southwest is likely to succeed in vacating the Contempt Order. Southwest complied with the Court's order. And even if Southwest did not comply, the Court's sanction exceeds its authority: The civil-contempt power extends only to remedies that coerce compliance with a court order or compensate a party for noncompliance. Religious-liberty training does neither. The Court's contrary conclusion rests on inapposite cases and misapprehends the IIOTG Memo. The cases the Court cited apply only to contexts, like Federal Rule of Civil Procedure 11, where sanctions can serve punitive purposes—an impermissible end for civil contempt. And the IIOTG Memo expresses Southwest's permissible disagreement with the jury verdict and the Court's judgment, and its intent to pursue its opposing view on appeal, even while "implementing the judgment as we work through the appeal process and await a final ruling." ECF 383-3. That disagreement reflects another reason Southwest is likely to succeed in vacating the Contempt Order: Southwest is likely to succeed in vacating the underlying judgment, because there was insufficient evidence for a jury to find that Southwest fired Carter for her religious beliefs, and the case must be retried under correct instructions to determine whether accommodating Carter's religious practice would impose an undue hardship on the company.

*Second*, without a stay, Southwest and its attorneys will suffer irreparable First Amendment and reputational harm from having to attend religious-liberty training. *Third*, a stay will not harm Carter, who will not benefit from the training of three attorneys who do not supervise her and were

9

not involved in her termination. *Finally*, the public interest does not support the rushed execution of an unlawful Contempt Order. To the contrary, the public interest supports appellate review of the underlying Title VII law before requiring training and statements about that very law.

**I.      Southwest is likely to succeed in challenging the Contempt Order and the underlying finding of Title VII liability.**

Southwest is likely to succeed in challenging the Contempt Order. Southwest complied with the Court's order, so it cannot be held in contempt. Regardless, requiring Southwest's lawyers to attend religious-liberty training exceeds the Court's civil-contempt power and violates the First Amendment, and the Fifth Circuit is likely to overturn the jury verdict on the merits.

**A.      Southwest complied with the judgment, so contempt was unwarranted.**

Civil contempt is warranted only when a party "violates an order of a court requiring in specific and definite language that person do or refrain from doing an act." *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979). Contempt is not warranted when a party demonstrates "substantial compliance" with a court order. *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987). Southwest's Decision Notice substantially complied with the judgment requiring Southwest to inform flight attendants that Title VII prohibits discrimination on the basis of religion. ECF 375, at 3. The Notice informed employees that the court had entered judgment against Southwest in a case alleging religious discrimination, and it attached the judgment and verdict form to the email. While the Court seizes on the difference between "may not" and "does not," Op. 8-13, the Notice as a whole, together with its attachments, substantially complied with the judgment, and Carter adduced no evidence that any Southwest employee was confused by the Notice.

**B.      Mandatory religious-liberty training exceeds the civil-contempt power and punishes Southwest for exercising its First Amendment rights.**

Southwest is likely to succeed in showing that the Court-mandated religious-liberty training exceeds the Court's civil-contempt power, which extends only to ensuring Southwest's

compliance with the Court's judgment or compensating Carter for Southwest's noncompliance. When Southwest voluntarily agreed to issue a corrected statement and to pay Carter's attorneys' fees for the contempt proceedings, it satisfied the remedial purposes of contempt, and there was no need for a contempt finding, much less authority to order further sanctions.

The Court justified religious-liberty training by reasoning that the IIOTG Memo contradicted the notice the Court ordered Southwest to issue. That is wrong, because the IIOTG Memo merely expressed Southwest's disagreement with the Court's order and its plan to appeal, while noting that it would comply with the Court's judgment while seeking appellate review. *Supra* p. 7. Moreover, the First Amendment protects Southwest's right to express that disagreement, and requiring training in response is a content-based punishment striking at the heart of the First Amendment. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (*NIFLA*). Worse still, because the Court issued no written order prohibiting Southwest from speaking but maintains that it may further sanction Southwest for its speech, Southwest must "guess at [the] contours" of the Court's prohibition—rendering the prohibition unconstitutionally vague, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1048 (1991).

### 1. Civil contempt sanctions must serve remedial purposes—ensuring compliance with the Court's orders—not punitive purposes.

A court's civil-contempt power "is not a broad reservoir of power, ready at an imperial hand"—instead, it is "a limited source; an implied power squeezed from the need to make the court function." *In re U.S. Bureau of Prisons*, 918 F.3d 431, 438 (5th Cir. 2019). Civil contempt sanctions are permissible only to secure a party's compliance with a court order or compensate for losses from noncompliance. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000). The only permissible beneficiary of civil contempt sanctions is the individual litigant. *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976). A civil contempt sanction

cannot be used to "punish defiance of the court and deter similar actions," because punishment and deterrence are hallmarks of criminal sanctions. *In re Stewart*, 571 F.2d 958, 964 (5th Cir. 1978). Unlike criminal contempt proceedings, "[c]ivil contempt proceedings are remedial and coercive, not punitive, in their nature, they look only to the future. They are not instituted as punishment for past offenses, but to compel" obedience with the court's orders. *Boylan v. Detrio*, 187 F.2d 375, 378 (5th Cir. 1951). And a "sanction counts as compensatory only if it is calibrate[d] to [the] damages caused by the bad-faith acts on which it is based." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (quotation marks omitted). A court thus exceeds its civil-contempt power when "a lesser sanction" would do. *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). Civil contempt gives a court only the "least possible power adequate to the end proposed." *In re Oliver*, 333 U.S. 257, 274 (1948). When the justifications for contempt reach beyond compliance and compensation, a court must invoke its criminal-contempt power, triggering additional procedural protections. *See, e.g.*, *United States v. Rizzo*, 539 F.2d 458, 463-65 (5th Cir. 1976) (specific notice of criminal contempt required).

### 2. Religious-liberty training exceeds the Court's civil-contempt power.

The Court exceeded its civil-contempt power by imposing religious-liberty training on three Southwest attorneys, because that training does not enforce compliance with a definite and specific court order or compensate Carter for Southwest's noncompliance. The Court held Southwest in contempt because it found that Southwest's Decision Notice did not comply with the judgment. Op. 8-13. The Court made clear that it was "only sanction[ing] Southwest for its failure to issue the Court-ordered notice." Op. 8 n.25. As a result, the only proper sanctions were requiring Southwest to issue a corrected Decision Notice and awarding Carter attorneys' fees (both of which Southwest agreed to even before the show-cause hearing, ECF 419, at 5), because those are the least-restrictive means of ensuring compliance with the judgment and compensating Carter. *See*

12

*Oliver*, 333 U.S. at 274; *Goodyear*, 581 U.S. at 108. The Court dictated a verbatim statement for Southwest to issue to its flight attendants, and Southwest is prepared to issue that statement. Once it does so and pays Carter's attorneys' fees, it will have fully complied with the Court's order. Religious-liberty training, in contrast, will do nothing to compel obedience with the Court's judgment and will not benefit Carter. *See, e.g.*, *Hawkins v. Kroger Co.*, No. 15-CV-2320 (JM), 2020 WL 6150040, at *9 (S.D. Cal. Oct. 20, 2020) (overruling a Magistrate Judge's order that counsel attend CLEs because the "CLE sanction was intended to vindicate the court's authority and the integrity of the judicial process [and] was not made to compensate Plaintiff").

Put another way, the Court erred by failing to connect the remedy (religious-liberty training) to the only noncompliance found by the Court (the Decision Notice). A remedy for civil contempt must be "'calibrated to the damages caused by' the bad-faith acts on which it is based." *Goodyear*, 581 U.S. at 108. Imposing sanctions like religious-liberty training that go beyond remedying noncompliance or compensating Carter would require criminal contempt proceedings accompanied by certain protections, including notice of criminal proceedings. *See Rizzo*, 539 F.2d at 463-65. But as the Court recognized, "[t]his is a civil contempt proceeding," so the contempt power allowed only "sanctions that would coerce compliance with its orders and compensate the moving party for any losses sustained." Op. 7-8. The Court exceeded its authority by ordering sanctions that do not serve the purposes of civil contempt.

### 3.  The Contempt Order punishes Southwest for exercising its First Amendment rights.

The Contempt Order violates Southwest's First Amendment rights by punishing Southwest for protected speech and conditioning the propriety of Southwest's future speech on religious-liberty training. In targeting the IIOTG Memo, the Contempt Order reads the Court's judgment as an unconstitutional prior restraint on Southwest's future speech and sanctions Southwest for

13

expressing its view of the verdict and judgment, and its intent to seek appellate relief. What's more, the Contempt Order itself acts as a prior restraint against future protected speech.

      **a.**      The First Amendment guarantees the right to speak and the right not to. *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The right not to speak, which extends to corporations, *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n*, 475 U.S. 1, 8 (1986), includes the right to refrain from compelled statements of opinion or fact, *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 782 (1988). Content-based restrictions on a corporation's right to speak are subject to strict scrutiny, *NIFLA*, 138 S. Ct. at 2371, which "reflects the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content," *id.* (quotation marks omitted). A restriction fails strict scrutiny unless it is "narrowly tailored to serve compelling state interests." *Id.* Similarly, a "court order[] that actually forbid[s] speech activities," *Alexander v. United States*, 509 U.S. 544, 550 (1993), is presumptively unconstitutional as a prior restraint, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). A court "may not prohibit the dissemination of ideas that it disfavors, nor compel the endorsement of ideas that it approves." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 309 (2012).

      **b.**      The Contempt Order violates Southwest's First Amendment rights because it punishes Southwest for speaking on a matter of fundamental importance: its disagreement with, and its right to appeal, a decision that it believes to be wrong in an area of law that is in flux. *See* ECF 383-3; *Groff*, 143 S. Ct. 2279. The Contempt Order justifies religious-liberty training on the ground that the IIOTG Memo undermined the required Decision Notice and created the need to police any possible "second IIOTG memo." Op. 21-22. But as explained below (at 18), the IIOTG Memo does not contradict the Decision Notice or the new script the Court has ordered Southwest to issue. Instead, it expresses Southwest's view of Carter's conduct, the jury's verdict, and the

14

Court's holdings in the context of promising to "implement the judgment" while seeking on appeal to vindicate its differing view of the law. Southwest's position does not reflect the view that its policies trump federal law, *contra* Op. 22, but rather the view, still unresolved on appeal, that Title VII did not protect Carter's conduct. As the Court has recognized, *see* ECF 409, at 9-11, the undue-hardship standard has been a topic of much debate recently, which the Supreme Court recently clarified. *See Groff*, 143 S. Ct. 2279. Southwest has a First Amendment right to voice its views on the law. *See First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778-81 (1978).

In requiring religious-liberty training given the possibility of a "second IIOTG memo," Op. 22, the Court is promising to superintend Southwest's speech. That is not a "continued part-nership," Op. 4, but a content-based prior restraint on Southwest's speech that is doubly unconstitutional. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018). Compounding the problem, the Court's ongoing prohibition of Southwest's speech is vague, chilling Southwest's First Amendment right to speak. Because the Court issued no written order prohibiting Southwest from speaking, Southwest must "guess at [the] contours" of the prohibition, making the prior re-straint unconstitutionally vague. *Gentile*, 501 U.S. at 1048.

Appointing the Alliance Defending Freedom as Court-ordered trainer—and on "religious liberty" rather than Title VII—only exacerbates these problems. The Court's reasoning is that Southwest should speak only after it is "armed with a better understanding of the legal area at issue," Op. 26, so it seems that the Court intends for the ADF to tell Southwest what it can and cannot say. But it is appellate review of the Title VII issues, not ADF training on religious liberty, that will provide the final word on what the law requires—and even then, while it must comply with Title VII, Southwest is entitled to hold a view that the courts have misinterpreted Title VII. Requiring religious-liberty training from an ideological organization with a particular viewpoint

on what the law requires, *see* https://adflegal.org/article/what-freedom-speech (describing ADF's legal positions), is unprecedented; counsel have identified no comparable decision. *Compare Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 132 & n.4 (D.N.J. 1998) (training "by a law school accredited by the American Bar Association or a reputable provider of continuing legal education"); *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996) ("complete ten hours of continuing legal education in the area of ethics"). And inserting the ADF into this case also compounds the vagueness problems. "Regulation of speech" can take place, if at all, only when "prohibitions are clear," *SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010), but Southwest cannot know which portions of the 8-hour training, which apparently is not even confined to Title VII, contain the key to avoiding future sanctions for its speech.

### 4.    This Court's contrary reasoning is incorrect.

The Court's reasoning is unpersuasive and does not support the Contempt Order.

**a.**    In ordering training, the Court contravened the rule that civil-contempt sanctions must be the least-restrictive measures necessary to ensure compliance with a court order or compensate the movant for noncompliance. The decisions the Court cited (Op. 20 nn. 66-67) do not suggest otherwise. Several of the decisions that the Court said treat training as "a commonplace sanction," Op. 20 & n.66, analyze sanctions under Federal Rules of Civil Procedure 11, 16, or 37—standards fundamentally different from civil contempt and that plainly do not apply here.[*]

---

[*] *See, e.g.*, *Balthazar v. Atl. City Med. Ctr.*, 137 F. App'x 482, 490 (3d Cir. 2005) (Rule 11); *Edmonds v. Seavey*, 379 F. App'x 62, 63-64 (2d Cir. 2010) (Rule 11); *Shodeen v. Petit (In re Burghoff)*, 374 B.R. 681, 686 (Bankr. N.D. Iowa 2007) (Rule 11); *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 988 (E.D. Cal. 2005) (Rule 11); *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 454-55 (S.D.N.Y. 2011) (Rule 16); *Ball v. LeBlanc*, 300 F.R.D. 270, 288 (M.D. La. 2013) (Rule 37). *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09 60351, 2011 WL 4433570, at *6 (S.D. Fla. Sept. 21, 2011), did not order training for civil contempt but made a disciplinary referral to the state bar association recommending training.

*See generally Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1554 (10th Cir. 1996). "A civil contempt order has much different purposes than a Rule 11 sanction. Civil contempt is designed to force the contemnor to comply with an order of the court; Rule 11 is designed to punish a party who has already violated the court's rules." *Willy v. Coastal Corp.*, 503 U.S. 131, 138-39 (1992); *see United States v. Straub*, 508 F.3d 1003, 1009 (11th Cir. 2007). Likewise, "[t]he sanctions contained in Rule 16(f) were designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). And Rule 37 sanctions "penalize those whose conduct may be deemed to warrant such a sanction." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980). Punishment is not a permissible justification for civil contempt, *Straub*, 508 F.3d at 1009, and relying on Rule 11, 16, and 37 caselaw to impose training sanctions was error.

The Court cited only two decisions imposing training in the civil-contempt context, but both justified training as necessary to secure compliance with a court order or remedy an ongoing injury, unlike here. In *Portland v. City of Portland*, No. 3:20-CV-917 (HZ), 2021 WL 982613 (D. Or. March 16, 2021), the Court held that use-of-force training for police was the least restrictive means to ensure compliance with a TRO governing use-of-force at protests. And in *Hardy v. Asture*, No. 1:11-CV-299, 2013 WL 566020 (MR), at *8 (W.D.N.C. Feb. 13, 2013), the court concluded that training on social security litigation was "necessary to remedy [a] current injury to the Court" because the sanctioned counsel repeatedly filed motions and memoranda without any legal support. The lawyer was a frequent litigant before the court, and training was necessary to ensure that he followed the court's rules. *Id.* at *6. This case is closed, and the sanctioned attorneys are not counsel in any other cases before this Court for which religious-liberty training is relevant. And here (unlike in *Portland* and *Hardy*), the sanction is not directly related to noncompliance.

17

**b.**     The Court also reasoned that "training will coerce compliance with (instead of the continued undermining of) the Court's orders in this case." Op. 22. But the Court does not identify any orders for which Southwest's compliance must be guaranteed. Religious-liberty training is not necessary to issue the Court's verbatim statement or pay Carter's attorneys' fees. By contrast, no order prohibited the IIOTG Memo or any future statement by Southwest about the case.

**c.**     The Court erred in relying on the IIOTG Memo to impose religious-liberty training. The Court mischaracterized the memo as the "antithesis" of its order that Southwest notify flight attendants that it may not discriminate. Op. 11. The memo simply expressed Southwest's disagreement with the jury's verdict and the Court's judgment, and Southwest's intent to appeal while "implement[ing] the judgment." ECF 383-3. Southwest did not claim it could discriminate against employees, only that it "felt" that certain conduct "crossed the boundaries of acceptable behavior" and that it would "await a final ruling" on its legal position that Title VII did not protect Carter's activity. *Id.* Those expressions of opinion do not conflict with the Court's required notice.

Moreover, the Court's training approach raises serious First Amendment concerns. *See supra* pp. 13-16. Rather than tell Southwest specifically what it cannot say and justify that command under strict scrutiny, the Court promises continued superintendence over Southwest's speech. But "[w]hen speech is involved, rigorous adherence to [avoiding vagueness and unlimited enforcement discretion] is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). Here, the only guidance will be from ADF. That guidance is insufficient to guide or protect Southwest's speech rights, especially if Southwest disagrees with ADF's view of the law.

The Court justified religious-liberty training because "Southwest has never disclaimed its view in the IIOTG Memo that its discrimination against Carter was justified by Southwest's

policies," so Southwest continues not to understand "that federal law trumps Southwest's policies." Op. 23. That reasoning is itself viewpoint discrimination. Southwest's view, which it intends to press on appeal, is that it did not discriminate against Carter, and the jury and Court erred in concluding otherwise. *Infra* pp. 19-24. That view is not the same as refusing to "implement the [Court's] judgment" or refusing to obey Title VII as authoritatively construed by the courts. ECF 383-3. Southwest agrees that federal law trumps corporate policies, but the question is what federal law requires, and Southwest is exercising its right to obtain appellate resolution of that question. Forcing Southwest to abandon its view or face contempt sanctions violates the First Amendment.

**C.     Southwest is likely to succeed on the merits of its Title VII appeal.**

Southwest is also likely to succeed in challenging the Title VII liability on which the Contempt Order rests. *See Massaro v. Palladino*, 19 F.4th 197, 216 (2d Cir. 2021) (contempt invalid if underlying order invalid). The jury found that Southwest violated Title VII by terminating Carter for her religious belief and for her religious practice of disseminating anti-abortion messages and posts. But neither finding can stand under blackletter law. *First*, Carter introduced no evidence that Southwest discriminated against her because of her religious *beliefs*. Carter's evidence showed only that Southwest was aware that she was a pro-life Christian and that Southwest terminated her for violating company policies by sending graphic material to a colleague. But awareness of a protected characteristic and termination are insufficient for Title VII liability as a matter of law. *See, e.g.*, *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 580-81 (5th Cir. 2020); *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). *Second*, Southwest is entitled to a new trial on Carter's reasonable accommodation claim because the law governing that claim changed significantly after judgment and before appeal, *see Groff*, 143 S. Ct. 2279, and the Fifth Circuit generally requires a remand for a new trial to give parties the benefit of trying the case under the correct legal standard. In short, neither of Carter's Title VII claims is likely to survive appeal.

1. **An employee claiming discrimination because of religious belief must show that the employer treated similarly situated employees without that belief more favorably, and religious practice is not protected if accommodating it would impose an undue hardship on the employer.**

Title VII makes it unlawful for a covered employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). "Religion" includes both religious "belief" and "all aspects of religious observance and practice, … unless an employer demonstrates that he is unable to reasonably accommodate to an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). Thus, an employer violates Title VII by firing an employee because of her religious beliefs. *See Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d 374, 378 (5th Cir. 2015). But an employer can fire an employee because it is unable to accommodate a religious practice that imposes an undue hardship on the business and thus isn't protected under Title VII. *See Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146-47 (5th Cir. 1982).

A Title VII plaintiff can use direct or indirect evidence to show that an employer discriminated against her because of her religion. *Herster v. Bd. of Supervisors*, 887 F.3d 177, 184 (5th Cir. 2018). Direct evidence "shows 'on its face that an improper criterion served as a basis … for the adverse employment action,'" and cases relying on direct evidence are "rare." *Id.* at 184-85. Most evidence is indirect, requiring "inferences or presumptions" to show unlawful motive. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). "When confronting indirect evidence, courts use the burden-shifting framework from *McDonnell Douglas*." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). Under that framework, a plaintiff must show that the employer's nondiscriminatory explanations for the adverse action are pretextual, *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), by showing

that the employer did not take that action against "'other similarly' situated employees for 'nearly identical' conduct," *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). The plaintiff cannot prevail if she fails to produce such comparator evidence. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426-27 (5th Cir. 2017). Thus, when an employer offers a legitimate reason for firing an employee who alleges discrimination based on religious belief, the employee must show that the employer did not fire similarly situated employees without that belief. *Id.* at 426.

### 2. Southwest is likely to succeed in challenging Title VII liability because Carter produced no evidence that Southwest terminated her because of her religious belief.

Southwest is likely to prevail on appeal because Carter introduced no evidence that Southwest fired her because of her religious beliefs. Carter recognized that she did not produce any direct evidence—no "hostile comments regarding Christians… or Carter's religious beliefs." ECF 404, at 2. Rather, she relied only on evidence that Southwest was aware that she is a pro-life Christian, *see, e.g.*, Tr. 1289, and that Southwest terminated her for sending graphic materials to her coworkers and on Facebook, *see, e.g.*, Tr. Ex. 115. Such "generalized knowledge about [the protected condition] and the termination itself" is "not direct evidence" of discrimination. *Clark*, 952 F.3d at 580-81. Nor, as a matter of law, can it carry Carter's burden under *McDonnell Douglas*, which requires the plaintiff to produce comparator evidence. *E.g.*, *Herster*, 887 F.3d at 186. Carter's evidence does not contradict Southwest's evidence that it terminated Carter because she violated at least two company policies, harming her coworkers' morale. *See* Tr. Ex. 115; Tr. 1602.

The Court erred in denying Southwest's Rule 50(b) motion. For one thing, it disregarded Carter's repeated disavowal of and inability to satisfy the *McDonnell Douglas* framework. *See* ECF 250-2, at 9; ECF 404, at 2. For another, the Court erred in suggesting that Carter introduced comparator evidence. The Court reasoned that Southwest did not punish employees who posted pictures of the Women's March on Facebook, while it did punish Carter for her posts. *See* ECF

409, at 14. But there is zero evidence that employees who went to the Women's March were "similarly situated" to Carter but were "treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh*, 851 F.3d at 426. Carter's messages to her coworker and public posts were offensive, hostile, and, she admitted, "GRAFIC." Tr. Ex. 64.2. The group picture of union members at the Women's March, Tr. Ex. 56, was none of those things. Nor is there any evidence that the employees who posted that picture held the "same job responsibilities" as Carter and "share[d] the same supervisor" or the same work location as required for them to be comparators. *Alkhawaldeh*, 851 F.3d at 426. Carter needed to satisfy the *McDonnell Douglas* framework, but she failed.

### 3.   Southwest is entitled to a remand on Carter's religious-practice claim because the Supreme Court's recent decision in *Groff v. DeJoy* changed the undue-hardship standard.

Southwest is also likely to prevail in seeking a remand for a new trial on Carter's accommodation count under the Supreme Court's decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023). When the law changes after judgment, but before appellate resolution, the Fifth Circuit "will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard." *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). *Groff* changed the standard for determining whether an accommodation poses an undue hardship to an employer. Before *Groff*, an employer in the Fifth Circuit could establish an undue hardship based solely on burdens to co-workers, without regard for any quantifiable economic effect on the business. *See Weber*, 199 F.3d at 274. *Groff* now requires an employer to show "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." 143 S. Ct. at 2295. The Fifth Circuit is thus likely to remand for a new trial on the accommodation claim.

Southwest tried this case relying on Fifth Circuit caselaw holding that possible harm to employee morale, with nothing more, was an undue hardship sufficient to avoid Title VII liability.

*See Weber*, 199 F.3d at 274; *Brener*, 671 F.2d at 147 ("lowering of morale among" coworkers sufficient to establish undue hardship); *Eversley v. MBank Dallas*, 843 F.2d 172, 176 (5th Cir. 1988) (undue hardship where coworkers "would be upset" from accommodation). Accordingly, Southwest called several company employees to testify that if Southwest accommodated Carter's conduct, employees "would lose respect for each other, we would lose the family-type feel that Southwest Airlines has always been a proponent of in how we treat each other." Tr. 1602. Southwest did not introduce evidence tying employee morale to business cost because Fifth Circuit precedent did not require that showing. Having relied on binding Fifth Circuit precedent at trial, Southwest argued at the final charge conference, after the close of its case, for an instruction warranted under that precedent. *See* Tr. 1903 (requesting instruction that undue hardship include "burden to other employees" and that "it doesn't actually have to be any kind of monetary loss").

While the Court's instruction—that undue hardship is limited to "financial costs" and "disruption of the business," Tr. 2039—anticipated *Groff*, *Groff* changed the governing law in the Fifth Circuit. *Groff* now requires an employer to show that accommodating the plaintiff's religious practice "would result in substantial increased costs in relation to the conduct of [the employer's] particular business," 143 S. Ct. at 2295. That is a significant change from pre-*Groff* Fifth Circuit caselaw holding that burdening coworkers represents an undue hardship, and that "hardship need not be quantifiable in economic terms." *Weber*, 199 F.3d at 274.

That change in law requires a "remand for a new trial to give [the] parties the benefit of the new law and the opportunity to present evidence relevant to that new standard." *Deffenbaugh-Williams*, 188 F.3d at 282. A new trial is particularly warranted here given the "injustice to a party who had no reason to expect a changed rule at the time of trial." *Id.* Southwest did not know that *Groff* would require evidence connecting harm to employee morale with increased business costs.

Although Southwest put on ample evidence that accommodating Carter would harm employee morale, and was entitled to a morale-specific instruction under the de minimis standard before *Groff*, Southwest did not focus on evidence connecting that harm to increased business costs. Evidence of costs could have included testimony from Southwest executives in the Inflight Department, the Labor Administration Department, and the People Department, who would have testified about the risks that flight attendants would refuse to work with others, and the flight cancellations and poor customer experiences that would result and have resulted in the past. Southwest also could have put on expert testimony to connect the harm to flight attendant morale to lost revenue.

## II.  Southwest will suffer irreparable harm without a stay pending appeal.

Without a stay, Southwest and its counsel will suffer irreparable injuries. *First*, like all First Amendment harms, the Contempt Order's First Amendment violations, *see supra* pp. 13-16, are per se irreparable injuries. *Murphy-Brown*, 907 F.3d at 801. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373-74. The Contempt Order is particularly harmful because it imposes "vague restrictions" on speech, *Murphy-Brown*, 907 F.3d at 800, forcing Southwest to guess whether anything it says will trigger future sanctions, even if it is expressing reasonable disagreement with the judgment or ADF. This "chilling of [F]irst [A]mendment rights … constitute[s] irreparable injury." *Am. Postal Workers Union v. U.S. Postal Serv.*, 766 F.2d 715, 721 (2d Cir. 1985).

Southwest's reputational injuries are also irreparable. "An injury is 'irreparable' only if it cannot be undone through monetary remedies.'" *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017). Reputational injuries can be irreparable because they can cause economic harm that is difficult to quantify. *See, e.g.*, *id.*; *Lakedreams*, 932 F.2d at 1109 (citing cases); *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997); *accord Apple, Inc. v. Samsung Elecs., Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015). Indeed, *Lakedreams* held that "any attempt to calculate

damages" as a result of unnecessary reputational harm "could be considered too speculative." 932 F.2d at 1109. Here, the religious-liberty training sanction suggests to the public that Southwest, its employees, and its counsel are hostile to religion. That false message, *supra* pp. 19-24, may cause the traveling public or any future employers of Southwest's counsel to take their business else-where. *See, e.g.*, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997). The reputational injury is impossible to quantify and is thus irreparable.

## III.    A stay would not substantially harm Carter, and the public interest supports a stay.

While Southwest will suffer irreparable injuries without a stay, a stay will not harm Carter. When the movant shows a substantial likelihood of success on the merits, delay alone does not weigh against a stay. *See Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981). Just so here. Carter has no personal interest in Southwest's attorneys' attend-ing religious-liberty training; she has not shown that any of them harbors animosity towards her based on her religion. Carter seeks "only … money damages," so "it is not apparent why [she] would be prejudiced" by a stay. *Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021).

A stay is also in the public interest. The public has no interest in "expenditure of time, money, and effort" in complying with an order "that may well" be overturned, *Fla. Businessmen*, 648 F.2d at 959, and Southwest has shown that it is likely to succeed on the merits of its challenges to both the Contempt Order and the underlying jury verdict and judgment, *supra* pp. 10-24. In fact, the public has a strong interest in not punishing Southwest, its employees, or its counsel for de-fending themselves in court and on appeal, and in allowing the appellate process to play out, es-pecially in a case raising important questions of public interest about how federal law balances religious accommodation with legitimate employer interests. The public interest supports a stay.

## CONCLUSION

Southwest respectfully requests an administrative stay and a stay of the Contempt Order.

DATED: August 16, 2023

*/s Paulo B. McKeeby*
PAULO B. MCKEEBY
State Bar No. 00784571
pmckeeby@reedsmith.com
*/s Brian K. Morris*
BRIAN K. MORRIS
State Bar No. 24108707
bmorris@reedsmith.com
REED SMITH LLP
2850 N Harwood St., Ste. 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile:  (469) 680-4299

*/s Andrew B. Ryan*
ANDREW B. RYAN
State Bar No. 24054464
andy@ryanlawpartners.com
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219
Telephone: (214) 347-7360
Facsimile: (888) 594-6240

Respectfully submitted,

*/s Shay Dvoretzky*
SHAY DVORETZKY
Admitted *pro hac vice*
shay.dvoretzky@skadden.com
*/s Parker Rider-Longmaid*
PARKER RIDER-LONGMAID
Admitted *pro hac vice*
parker.rider-longmaid@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Defendant Southwest Airlines Co.*

26

**CERTIFICATE OF CONFERENCE**

On August 15, 2023, an attorney for Southwest, Parker Rider-Longmaid, conferred by email and phone with an attorney for Carter, Matthew Gilliam, about the requests for relief in this Motion. Mr. Gilliam represented that Ms. Carter is unopposed to Southwest's motion for an administrative stay for the sole purpose of allowing this Court any time it deems warranted to consider and rule on Southwest's motion for a stay pending appeal. Mr. Gilliam further represented that Ms. Carter will not oppose Southwest's request for an administrative stay that, if the Court denies a stay pending appeal, continues until the Fifth Circuit decides Southwest's motion for a stay pending appeal, so long as Southwest moves in the Fifth Circuit for a stay pending appeal within 7 days of this Court's denial of a stay pending appeal. Mr. Gilliam also asked that Southwest convey that Carter and her counsel "think that it is important to resolve these motions quickly as Ms. Carter and the other Southwest flight attendants continue to suffer harm caused by Southwest's contempt, and any delay in Southwest complying with the Court's order extends that harm." Mr. Gilliam also conveyed that Carter is opposed to Southwest's request for a stay pending appeal.

DATED: August 16, 2023                          Respectfully submitted,

                                                */s Parker A. Rider-Longmaid*
                                                PARKER A. RIDER-LONGMAID
                                                Admitted *pro hac vice*
                                                parker.rider-longmaid@skadden.com
                                                SKADDEN, ARPS, SLATE, MEAGHER &
                                                FLOM LLP
                                                1440 New York Ave., NW
                                                Washington, DC 20005
                                                Telephone: (202) 371-7000
                                                Facsimile:  (202) 393-5760

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 16 day of August, 2023.

DATED: August 16, 2023                    Respectfully submitted,

*/s Shay Dvoretzky*
SHAY DVORETZKY
Admitted *pro hac vice*
shay.dvoretzky@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

28