# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>               Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND<br>TRANSPORT WORKERS UNION OF AMERICA,<br>LOCAL 556,<br><br>               Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES FOR MOTION-FOR-CONTEMPT AND MOTION-TO-COMPEL PROCEEDINGS AND INCORPORATED BRIEF**

Pursuant to the Court's August 7, 2023 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this motion for attorneys' fees, costs, and expenses for the motion-for-contempt and motion-to-compel proceedings ("Contempt Proceedings"). Carter also files her bill of costs contemporaneously with this motion.

Carter requests that the Court award her $180,316.55 in reasonable attorneys' fees, costs, and expenses[2] against Southwest Airlines Co. ("Southwest"), and order Southwest to pay those amounts to the National Right to Work Legal Defense Foundation, Inc. ("Foundation"), which has underwritten all of Carter's attorneys' fees, costs, and expenses as part of its legal aid program.[3]

---

[1] Doc. 467 at 4 n.5, 14, 29.
[2] This amount includes $176,363.00 in attorneys' fees, $3,335.40 in expenses, and $618.15 in costs as reflected in Carter's Bill of Costs filed contemporaneously with this motion.
[3] App.6, Declaration of Matthew Gilliam ("Gilliam Declaration"), ¶11. Pursuant to Carter's Retainer Authorization, the Foundation is entitled to any attorneys' fees, expenses, or costs that opposing parties are ordered to pay. *Id*.

1

## THE CONTEMPT PROCEEDINGS AND REASONABLENESS OF THE FEES

The Court awarded—and Southwest agreed to pay—Carter's reasonable attorney fees, costs, and expenses as a sanction for Southwest's violation of the Court's December 5, 2022 Order.[4] Under *Johnson v. Georgia Highway Express, Inc.*, Carter's requested fees, costs, and expenses for the Contempt Proceedings were reasonable and necessary to coerce Southwest's compliance.[5]

On December 20, 2022, Southwest emailed all flight attendants the "Recent Court Decision" notice and "Inflight Info On The Go" ("IIOTG") Memo, the communications that violated the Court's orders and gave rise to the Contempt Proceedings.[6] On December 22, 2022, Carter's attorney, Matthew Gilliam, emailed a letter to Southwest's counsel, explaining how its communications violated the Court's December 5 order, and asking Southwest to revise them to conform with the Court's requirements.[7] Carter's December 22 letter stated that if Southwest did not respond and issue corrective notices, Carter would file a contempt motion and seek relief, including sanctions, a show cause evidentiary hearing, identification of all persons involved in the creation and approval of the communications, production of all related communications, and a privilege log for privilege assertions.[8] On December 28, 2022, Southwest responded, "strongly disagree[ing]" with the suggestion it had not complied,[9] asserting that its use of "does not" versus

---

[4] Doc. 467 at 4 n.5, 14, 29; Doc. 419 at 5.
[5] *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The twelve factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to the acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717-19.
[6] Docs. 383-2 and 383-3.
[7] Doc. 383-1.
[8] Doc. 383-1 at 6.
[9] Doc. 383-6 at 2.

"may not" was a "distinction without a difference,"[10] and "[t]he Judgment did not say that Southwest had to exactly follow the language used by Judge Starr[.]"[11] Southwest's refusal to comply forced Carter to file her motion to find Southwest in contempt on December 30, 2022.[12]

On April 18, 2023, the Court issued an Amended Show Cause Hearing order,[13] scheduling a show-cause hearing for May 23, 2023 to determine whether Southwest, its employees, or its counsel should be held in contempt and sanctioned for violating Court orders.[14] The Court ordered Southwest to produce, by April 28, 2023, substantially the same discovery Carter had requested from Southwest in her December 22 pre-contempt motion communication to Southwest.[15] The Court also allowed Carter to file a brief describing the impact of any evidence that Southwest produced on Carter's motion for contempt by May 5, 2023 (which she did),[16] and allowed Southwest to provide a response brief by May 12, 2023 (which it did on May 9).[17]

When Southwest's May 5 production deadline arrived, Southwest asserted attorney-client privilege and withheld nearly all of its communications, heavily redacting the few it did produce.[18] Following Carter's conference with Southwest's counsel regarding its privilege assertions, Southwest retracted privilege assertions for some documents.[19] Southwest's communications and its actions (including its willful violations) were cloaked in privilege, which increased the

---

[10] Doc. 383-6 at 3.
[11] *Id.*
[12] Doc. 382; (App.7-9, 48).
[13] Doc. 408. The Court issued its original show cause hearing order on April 10, 2023 (Doc. 407), which was different only in that it had scheduled the show cause hearing for one week earlier. Doc. 408 at 1 n.1.
[14] Doc. 408 at 1.
[15] Doc. 408 at 2 ¶¶1-3; Doc. 383-1 at 6.
[16] Doc. 408 at 2; Doc. 411 (Brief); Doc. 412 (Appendix); (App.12-13, 48).
[17] Doc. 408 at 2; Doc. 414.
[18] Doc. 411 at 5-7; Doc. 412-1; Doc. 412-4.
[19] Doc. 411 at 24-26. Compare Doc. 412-1 (revised privilege log) *with* Doc. 412-3 (initial privilege log); Doc. 412-2 at 2; (App.13-14, 48-49).

3

complexity of the Contempt Proceedings, and the time and labor needed to ascertain pivotal witnesses and testimony.[20] It also forced Carter to file a motion to compel disclosure, wherein she requested *in camera* review of the Court-ordered documents.[21] Southwest's failure to produce all responsive documents, as revealed at the hearing, made Carter's task more difficult.[22]

Despite the Court's April 18 order, Southwest also refused to coordinate and accept service of subpoenas for its employees to appear as witnesses at the May 23 show cause hearing,[23] incorrectly arguing that the Court's show cause hearing order did not contemplate witnesses' live testimony.[24] Southwest's refusal to work with Carter on securing witnesses forced Carter to file a May 10 motion requesting that the Court order Southwest to produce the witnesses for the May 23 hearing.[25] Thus, Southwest's refusal necessitated the Court's May 16 order for Southwest to explain why Carter's requested witnesses were not responsible for the communication at issue and why they should not be required to attend the hearing.[26]

On May 12, Southwest filed an out-of-order brief[27] not contemplated by the Court's April 18 order, wherein it argued for different sanctions remedies falling short of Carter's requested relief, requests for *ex parte* proceedings, and making additional contested arguments, all of which necessitated Carter's response.[28] Pursuant to the Court's May 16 order,[29] the parties also filed briefs to address why religious liberty training was an appropriate sanction.[30]

---

[20] (App.12-14, 48-49).
[21] Doc. 411 at 5-6; (App.12-14, 48-49).
[22] Show Cause Hearing Vol. 2 Trans. 260:4-265:14 (McKeeby Testimony); Hearing Ex. 16.
[23] Doc. 416 at 6; (App.12-14, 48-49).
[24] Doc. 417 at 2-5; Doc. 414 at 2.
[25] Doc. 416; Doc. 414 at 2; (App.12-14, 48-49).
[26] Doc. 423 at 3.
[27] Docs. 419, 408, 414.
[28] Docs. 419, 420, 428; (App.14-15, 48-49).
[29] Doc. 423.
[30] Docs. 424, 429, 431; (App.15, 49, 50).

The Court conducted show cause hearings on May 23 and July 20 where Carter examined Southwest witnesses, presenting evidence, testimony, and arguments that demonstrated Southwest's Court order violations and the appropriate sanctions.[31] Each of the three attorneys was necessary during the show cause hearings for an effective presentation of evidence to the Court.[32] Mr. Pryor prepared for and examined the witnesses.[33] Mr. Hill was necessary to the presentation of trial exhibits (without which Mr. Pryor could not have effectively examined the hearing witnesses) and hearing strategy.[34] Likewise, Mr. Gilliam was indispensable at the hearing given his knowledge of the case, documents and the evidence produced, as well as his knowledge of the specific legal issues and arguments.[35] Mr. Gilliam also handled the closing arguments.[36] Carter's team could not have presented her evidence as effectively without the participation of each of these attorneys.[37] The Court granted sanctions on August 7, requiring Southwest to issue a corrective notice, attend religious liberty training, and pay Carter's attorneys' fees, expenses, and costs.[38] Carter gave Southwest a chance to avoid the Contempt Proceedings on December 22. Southwest could have saved itself from sanctions and the parties from expending time, money, and resources if it would have agreed to issue corrective notices at the outset. But Southwest refused to back down from its position on "does not" until two weeks before the show cause hearing (and only then half-heartedly), and never backed down from its justifications for the IIOTG Memo.[39]

---

[31] Docs. 434, 464; (App.15-18, 49-51).
[32] App.28, Declaration of Bobby G. Pryor ("Pryor Declaration"), ¶13.
[33] *Id.*; (App.49-51).
[34] App.28, Pryor Declaration, ¶13; (App.49-51).
[35] App.28, Pryor Declaration, ¶13; (App.14-18).
[36] Show Cause Hearing Vol. 2 Trans. 520:18-532:16; (App.14-18).
[37] App.28, Pryor Declaration, ¶13.
[38] Doc. 467.
[39] Doc. 383-6; Doc. 419; Doc. 428 at 1; Doc. 467 at 6, 7, 23-24.

## ATTORNEYS' FEES AND COSTS

The Court must use the lodestar method to determine the appropriate amount of attorneys' fees it should award.[40] Under the lodestar method, the Court must first "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys, and then multiply the two figures together to arrive at the lodestar."[41]

### A. The Reasonable Hourly Rate

The Court should adopt hourly rates of $350 for attorney Matthew Gilliam, $395 for attorney Matthew Hill, and $495 for attorney Bobby Pryor. To determine the reasonable hourly rate, the Court must use the prevailing market rate in Dallas, Texas.[42] The relevant legal community is the Northern District of Texas in Dallas, Texas, "the community in which the district court sits."[43] For Hill and Pryor, those are the hourly rates actually charged and paid on Carter's behalf for work performed.[44] For Gilliam, the $350 hourly rate sought for work he performed is below the customary rate charged by attorneys of his skill and experience in the Dallas market.[45] Likewise, for attorneys with Pryor and Hill's qualifications and experience, the standard hourly rates in

---

[40] *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997).

[41] *See Hensley*, 461 U.S. at 433; *Wegner*, 129 F.3d at 822 (citations omitted)). *See also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam) (describing the lodestar method as "[m]ultiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work").

[42] *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("Attorneys' fees are to be calculated at the prevailing market rates in the relevant community.") (cleaned up).

[43] *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *R.K.C.J., LLC v. Texas Cap. Bank, N.A.*, No. 3:20-cv-533-K, 2020 WL 5552153, *7 (N.D. Tex. Aug. 24, 2020) (citation omitted).

[44] App.26-27, Pryor Declaration, ¶9-10.

[45] *Id.,* App.28, ¶12.

Dallas, Texas are well above the respective hourly rates they charged for the work performed for Carter, and for which the Foundation seeks to recover.[46]

Gilliam is a 2011 Georgetown University Law Center graduate who was first licensed in New York in 2012.[47] Pryor is a 1983 *summa cum laude* graduate of the University of Arkansas who was first licensed in Oklahoma in 1983.[48] Hill is a 2001 graduate of the University of Chicago Law School who was first licensed in 2001.[49] All three have significant experience litigating employment cases such as this one, and Pryor and Hill are experienced trial attorneys, with Pryor having tried over 100 cases and Hill having been lead trial attorney in multiple trials.[50] Notably, Southwest did not contest Gilliam's, Pryor's, Hill's, and Garcia's rates in prior sanctions fees or attorneys' fees petition briefing.[51] "When that rate is not contested it is *prima facie reasonable*."[52]

Carter encourages this Court to rely upon its own expertise and knowledge of the prevailing rates in Dallas in making its determination. "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services."[53] Counsel's hourly rates are reasonable based on this Court's findings in recent cases.[54] For paralegal

---

[46] *Id.,* App.26-27, ¶9-10.
[47] App.1, 3, Gilliam Declaration, ¶2, 6.
[48] App.27, Pryor Declaration, ¶9.
[49] *Id.,* ¶10.
[50] *Id.,* ¶9-10; App.1-3, Gilliam Declaration, ¶3-6.
[51] Doc. 373 at 2 ("Defendants do not contest the reasonableness of those hourly rates."); Doc. 396.
[52] *See Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:11-CV-870-D, 2016 WL 6330429, *8 (N.D. Tex. Oct. 27, 2016) (quoting *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (emphasis in *Thermotek*); *Tollett*, 285 F.3d at 369 (affirming requested hourly rate that was uncontested); *Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995).
[53] *SortiumUSA, LLC v. Hunger,* No.3:11-CV-1656-M, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.); *Janvey v. Alguire*, Case No. 3:09-CV-724-N-BQ, 2019 WL 13075953, *2 (N.D. Tex. Feb. 6, 2019); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004*); Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, *2 (N.D. Tex. Apr. 24, 2014) (noting that the court is an expert on the reasonableness of attorneys' fees).
[54] *See e.g.*, *Miller v. Raytheon Co.*, 716 F.3d 138, 149 (5th Cir. 2013) (affirming $577.50, $542.50, and $280 in age discrimination case); *Hardy v. SDM Hosp., LLC*, 20-CV-3157-S-BK, 2022 WL

7

Cristina Garcia, her hourly rate of $110 is also reasonable based on her qualifications, and is well within the rates approved for similarly experienced paralegals in the Dallas legal community.[55]

### B. The Hours Expended, Reductions, and Reasonableness

Carter attaches the declarations of her counsel, Matthew Gilliam (App.1-23) and Bobby G. Pryor (App.24-52), which attest to their qualifications and respective amounts of hours, expenses, and costs incurred for the Contempt Proceedings.[56] Carter has only included those fees and expenses reasonably and necessarily related to the Contempt Proceedings.[57] Counsel document the hours they expended in exhibits to their declarations.[58] These attachments are accurate and derived from routinely prepared compilations of the daily contemporaneous time sheets that counsel maintains in the normal course of business.[59]

---

272718, *6 (N.D. Tex. Jan. 10, 2022) (finding $525 reasonable for an employment law attorney and recognizing approval for hourly rates of $400-$500 where all three attorneys had practiced for at least nine years, including in employment litigation) (other citations omitted); *Veach v. State Farm Lloyds*, No. 3:19-cv-02312-BT, 2021 WL 5920903, *3 (N.D. Tex. Dec. 15, 2021) (finding that $500 is a reasonable rate for trial attorneys); *Vaughn v. Neb. Furniture Mart, LLC*, Case No. 3:19-CV-1220-C-BK, 2020 WL 1695695, *6 (N.D. Tex. Mar. 12, 2020) (finding $500 reasonable for plaintiff's counsel in Title VII case); *Kostic v. Tex. A&M Univ.-Commerce*, No. 3:10-CV-2265-M, 2015 WL 9997211, at *3 (N.D. Tex. Dec. 28, 2015), report and recommendation adopted, No. 3:10-CV-2265-M, 2016 WL 407357 (N.D. Tex. Feb. 3, 2016) (approving a $650 rate for a 29-year attorney and a $450 rate for 17- and 20-year attorneys); *In re Taco Bueno Rests., Inc.*, No. 18-33678, Doc. No. 308 (Bankr. N.D. Tex. Feb. 14, 2019) (billing rates for Partners ($945-$1,280), Counsel ($830-$915), and Associates ($450-$945); *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding attorney rates of $537 to $862 per hour to be reasonable in the Dallas market) (Rutherford, J.).
[55] App.27, Pryor Declaration, ¶11. *See, e.g., Veach*, 2021 WL 5920903, *3 ($150 per hour is a reasonable rate for paralegal time); *First Commonwealth Bank v. Auto Res. of Texas LLC*, Civ. Act. No. 3:22-cv-374-L, 2022 WL 16964754, *3 (N.D. Tex. Nov. 16, 2022) (Lindsay, J.) (finding a $200 hourly rate for a paralegal within the range of usual and customary hourly rates for a paralegal in the Dallas legal community).
[56] *See supra* 2-5.
[57] App.26, Pryor Declaration, ¶8; App.5, Gilliam Declaration, ¶8; *see also supra* at 2 n.5.
[58] App.48-51, Exhibit 2 to Pryor Declaration; App.7-21, Exhibit 1 to Gilliam Declaration.
[59] App.25, Pryor Declaration, ¶4; App.4-5, Gilliam Declaration, ¶7.

Carter calculated an initial "lodestar amount" of $190,258.00 in attorneys' fees based on the attorneys' total hours incurred with the Contempt Proceedings:

| Attorney | Hourly Rate | Total Hours | Initial Lodestar | Hours Claimed | Fee Claimed |
|---|---|---|---|---|---|
| Matthew B. Gilliam | $350 | 381.8 | $133,630.00 | 342.1 | $119,735.00 |
| Matthew Hill | $395 | 58.3 | $23,028.50 | 58.3 | $23,028.50 |
| Bobby Pryor | $495 | 66.3 | $32,818.50 | 66.3 | $32,818.50 |
| Cristina Garcia | $110 | 7.1 | $781.00 | 7.1 | $781.00 |
| TOTALS | - | 513.5 | $190,258.00 | 473.7 | $176,363.00 |

Carter excluded attorney time expenditures that are arguably duplicative and eliminated time not reasonably necessary to the Contempt Proceedings.[60] Carter excluded approximately 40 hours of Mr. Gilliam's time in the exercise of billing judgment.[61] Gilliam excluded 11.1 hours for time spent addressing reinstatement concerns that, ultimately, were not addressed in the Contempt Proceedings.[62] Gilliam also excluded 28.6 hours of travel time for show cause hearings.[63] Based on the nature of the Contempt Proceedings (described above) and these reductions, Carter's requested fees are commensurate with the *Johnson* reasonableness factors. Accordingly, Carter requests that the Court order Southwest to pay the Foundation the total amount of $176,363.00 as reasonable attorneys' fees.[64]

---

[60] App.7-21, Exhibit 1 to Gilliam Declaration; App.48-51, Exhibit 2 to Pryor Declaration.
[61] App.5, Gilliam Declaration, ¶8.
[62] (App.7-8) (12/22, 12/26-12/30 entries).
[63] App.15 (5/21, 5/24 entries); App.18 (7/18, 7/21 entries).
[64] All fees charged by Pryor and Bruce have been paid by the Foundation on Carter's behalf except those for work performed in August 2023. App.29, Pryor Declaration, ¶16; App.6, Gilliam Declaration, ¶10.

### C. Reasonable Out-of-Pocket Expenses and Costs

The Court should order Southwest to pay the Foundation a total of $3,335.40 in reasonable out-of-pocket expenses incurred for travel, lodging, meals, and other litigation expenses related to the Contempt Proceedings. The Foundation incurred $3,194.72 in out-of-pocket expenditures on Carter's behalf, which are detailed in the exhibit to Mr. Gilliam's declaration.[65] Pryor & Bruce incurred $140.68 in out-of-pocket expenditures on Carter's behalf, which are detailed in the exhibit to Mr. Pryor's declaration,[66] and which the Foundation paid to Pryor & Bruce on Carter's behalf.[67]

Counsel's summaries are derived from accurate and routinely prepared compilations of the daily contemporaneous records of necessary expenditures maintained in the ordinary course of business.[68] While the declarations of Carter's counsel contain all of the out-of-pocket expenses and costs incurred, including those recoverable under 28 U.S.C. § 1920, Carter also files a Bill of Costs contemporaneously with this motion. The Bill of Costs details costs of $618.15.

### CONCLUSION

For the foregoing reasons, the Court should award Carter the requested attorneys' fees and order Southwest to pay the Foundation a total of $180,316.55, which includes $176,363.00 in attorneys' fees, $3,335.40 in expenses, and $618.15 in costs, as set forth herein and the documents contemporaneously filed herewith.

Dated: August 21, 2023                                     Respectfully submitted,

/s/ Matthew B. Gilliam
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense

---

[65] App.22-23, Exhibit 2 to Gilliam Declaration.
[66] App.52, Exhibit 3 to Pryor Declaration.
[67] App.28-29, Pryor Declaration, ¶15.
[68] App.25, Pryor Declaration, ¶4; App.4-5, Gilliam Declaration, ¶7.

10

Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

<u>By</u><u>: /s/ Matthew B. Gilliam</u>