# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER,<br><br>                Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>                Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S RESPONSE TO SOUTHWEST'S MOTION TO STAY THE COURT'S CONTEMPT ORDER PENDING APPEAL AND INCORPORATED BRIEF**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

ARGUMENT ........................................................................................................3

    I.   Southwest did not show a strong likelihood of success on the merits ........................4

        A. Title VII training coerces Southwest's compliance with Court's notice order ........4

            1.   Southwest violated the Court's definite and specific order to inform flight attendants, that, under Title VII, it may not discriminate ................................7

            2.   Title VI training is necessary to coerce and ensure Southwest's compliance based on its violation of the Court's notice order and continuing failure to comprehend Title VII's protection of employees' religious liberties ..............8

            3.   There is no lesser sanction than Title VII training that could effectively coerce Southwest's compliance ...................................................................9

        B. The Contempt Order does not affect Southwest's First Amendment speech rights ..............................................................................................................11

            1.   The Contempt Order sanctioned Southwest for violating the Court's December 5 notice order, not for disagreeing with and appealing the judgment ............................................................................................11

            2.   The Contempt Order's Title VII training requirement does not raise any First Amendment concerns ..........................................................................13

        C.  Southwest's failed arguments on the religious discrimination judgment against it do not show that it is likely to succeed on the merits of its request to stay the Contempt Order or Title VII training .................................................................16

    II.  Southwest will not suffer irreparable harm without a stay .........................................19

    III. Carter and Southwest flight attendants will continue suffering substantial harm from Southwest IIOTG Memo's misrepresentations if a stay is granted ..................20

    IV. The public interest favors denying the stay .............................................................22

    V.  Southwest cannot satisfy the *Ruiz* standard ...........................................................23

CONCLUSION      ...................................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Alliance for Hippocratic Med. v. Food & Drug Admin.*

  No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) .............................3, 19, 20, 22

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*

  228 F.3d 574 (5th Cir. 2000) ............................................................................5

*Charitable DAF Fund LP v. Highland Cap. Mgmt. LP,*

  No. 3:21-CV-01974-X, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022) ...........................5

*Chicago Teachers Union v. Hudson,*

  475 U.S. 292 (1986).........................................................................................5

*Clark v. Champion Nat'l Sec., Inc.,*

  952 F.3d 570 (5th Cir. 2021) ...........................................................................17

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,*

  575 U.S. 768 (2015)........................................................................................17

*E.E.O.C. v. Boh Bros. Const., LLC,*

  No. Civ. A. 09-6460, 2011 WL 3585599 (E.D. La. Aug. 16 2011) ...............................5

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.*

  177 F.3d 448 (6th Cir. 1999) .............................................................................5

*Edmonds v. Seavey*

  379 F. App'x 62 (2d Cir. 2010) .........................................................................9

*Fla. Steel. Corp. v. NLRB,*

  648 F.2d 233 (5th Cir. 1981) ........................................................................5, 10

*Giboney v. Empire Storage & Ice Co.,*

  336 U.S. 490 (1949)........................................................................................13

*Groff v. DeJoy*

  143 S. Ct. 2279 (2023)............................................................................17, 18, 19

*Hardy v. Asture,*

  No. 1:11CV299, 2013 WL 566020 (W.D.N.C. Feb. 13, 2013).....................................6

*Hernandez v. Erazo*

  No. 23-50281, 2023 WL 3175471 (5th Cir. May 1, 2023)....................................3, 4, 23

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Hornbeck Offshore Servs., L.L.C. v. Salazar*
    713 F.3d 787 (5th Cir. 2013) .......................................................................5, 22

*In re Bradley,*
    588 F.3d 254 (5th Cir. 2009) .......................................................................5, 11

*In re Raborn,*
    No. 15-10938, 2017 WL 4536090 (Bankr. M.D. La. May 9, 2017)...................22

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
    512 U.S. 821 (1994).......................................................................................4, 21

*Lamar Fin. Corp. v. Adams,*
    918 F.2d 564 (5th Cir. 1990) ..............................................................................6

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ...........................................................................22

*McDaniel v. Paty,*
    435 U.S. 618 (1978).........................................................................................15

*Masterpiece Cakeshop, Ltd. v. Co. Civ. Rights Comm'n,*
    138 S. Ct. 1719 (2018).....................................................................................15

*Nken v. Holder,*
    556 U.S. 418 (2009).............................................................................3, 19, 22

*Obergefell v. Hodges,*
    576 U.S. 644 (2015).........................................................................................15

*Petrisch v. JP Morgan Chase,*
    789 F. Supp. 2d 437 (S.D.N.Y. 2011)................................................................6

*Portland v. City of Portland,*
    No. 3:20-cv-917 (HZ), 2021 WL 982613 (D. Or. Mar. 16, 2021) ....................6

*R.A.V. v. City of St. Paul*
    505 U.S. 377 (1992)........................................................................................13

*Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986)..........................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Roy v. Am. Pro. Mktg.*,
    117 F.R.D. 687 (W.D. Okla. 1987) ................................................................. 6

*Ruiz v. Estelle (Ruiz I)*,
    650 F.2d 555 (5th Cir. 1981) ............................................................... 3, 4, 23

*Ruiz v. Estelle (Ruiz II)*,
    666 F.2d 854 (5th Cir. 1982) ................................................................. 4, 23

*Seven Arts Filmed Ent. v. Jonesfilm*,
    538 F. App'x 444 (5th Cir. 2013) ................................................................ 16

*Spencer v. Gen. Elec. Co.*,
    894 F.2d 651 (4th Cir. 1990) ...................................................................... 5

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ........................................................... 4-5, 13

*Topalian v. Ehrman*,
    3 F.3d 931 (5th Cir. 1993) ......................................................................... 9

*United States v. Baylor Univ. Med. Ctr.*,
    711 F.2d 38 (5th Cir. 1983) ..................................................................... 23

*United States v. Lynd*,
    349 F.2d 790 (5th Cir. 1965) ..................................................................... 4

*United States Steel Corp. v. United Mine Workers of Am., Dist. 20*,
    598 F.2d 363 (5th Cir. 1979) ................................................................... 16

*Veasey v. Perry*,
    769 F.3d 890 (5th Cir. 2014) ..................................................................... 3

*Villar v. Crowley Mar. Corp.*,
    990 F.2d 1489 (5th Cir. 1993) ................................................................. 23

*Virginian Ry. Co. v. United States*,
    272 U.S. 658, 672 (1926) ......................................................................... 3

*Wildmon v. Berwick Universal Pictures*
    983 F.2d 21 (5th Cir. 1992) ................................................................. 3, 23

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Williams v. Zbaraz*,

    442 U.S. 1309 (1979)............................................................................................3

**Constitution, Statutes, Other**

United States Const., Amend. I................................................................................ *passim*

Civil Rights Act of 1964, Title VII
    42 U.S.C. § 2000e *et seq.*.......................................................................... *passim*
    42 U.S.C. § 2000e-2.......................................................................................13
    42 U.S.C. § 2000e-5(g)(1) ...............................................................................5

**PLAINTIFF CHARLENE CARTER'S RESPONSE TO SOUTHWEST'S MOTION TO
STAY THE COURT'S CONTEMPT ORDER PENDING APPEAL AND
INCORPORATED BRIEF**

Pursuant to the Court's August 17, 2023 order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this Response to Southwest Airlines Co.'s ("Southwest") Motion to Stay the Court's Contempt Order Pending Appeal and Incorporated Brief.[2] The Court should deny, in its entirety, Southwest's request to stay the August 7, 2023 contempt order ("Contempt Order").[3]

The Court should deny Southwest's stay request because it cannot show that it is likely to succeed on the merits. Southwest's objections are based on phantom First Amendment prohibitions, and the Court fashioned the Title VII religious liberty training sanction to coerce and ensure Southwest's compliance with the Court's underlying December 5, 2022 notice order, which Southwest did not seek to stay and does not contest. Reading Southwest's emergency request to stay the Contempt Order, one would think that the jury never reached a verdict on the merits that Southwest engaged in unlawful religious discrimination against Carter, or that the Court entered judgment against it. Nevertheless, Southwest's likelihood of success in overturning the Contempt Order depends upon the success of overturning that order, not the underlying judgment or the underlying notice order. While Southwest will suffer no irreparable harm from the Contempt Order or Title VII religious liberty training absent a stay, its contempt continues to harm Carter and Southwest's 17,000 flight attendants with restraints and restrictions on their Title VII religious liberties, all caused by Southwest's willful misrepresentations regarding those rights. The public

---

[1] Doc. 473.
[2] Docs. 471, 472.
[3] Doc. 467.

interest favors denying the stay so that Southwest will finally purge the persistent effects of its ongoing contempt.

While Southwest's motion requests a stay of the entire Contempt Order, Southwest only contests that order's Title VII religious liberty training requirement. Southwest does not oppose the validity of the Court's August 7, 2023 Remedial Statement, saying "Southwest already agreed to issue a corrected notice and is prepared to issue verbatim the statement ordered by the Court."[4] Nor did Southwest attempt to stay the Court's December 5, 2022 notice order.[5]

Southwest's willful violations of the Court's notice order—detailed in *ex parte* testimony and documents—is also material to Southwest's efforts to stay the Court's sanctions.[6] Southwest's willful conduct bears heavily on arguments that it has put at issue, including its likelihood of prevailing on the merits, substantial harm to others, and the public interest. Accordingly, the *ex parte* evidence should be disclosed, at least on an attorneys-eyes only basis, to Carter's counsel. Such disclosure is particularly important if Southwest seeks to stay the Court's Contempt Order at the Fifth Circuit Court of Appeals, which Southwest has stated it will do. Southwest should not be allowed to seek a stay at the Court of Appeals without substantive, adversarial confrontation on the evidence bearing on its request.[7]

---

[4] Doc. 472 at 11. Southwest has also agreed to pay Carter's reasonable attorney fees. Doc. 419 at 4-5; Doc. 472 at 15-16, 19.

[5] "The Court **ORDERS** Southwest and Local 556 to inform Southwest flight attendants that, under Title VII, the Defendants may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion." Doc. 375 at 3, ¶10.

[6] Doc. 467 at 11, 16, 22.

[7] Carter may raise this matter in a future motion following conferral with Southwest counsel and absent agreement.

## ARGUMENT

The Court should deny Southwest's motion.  To stay an order pending appeal the movant must show (1) a strong likelihood of success on the merits of the order appealed; (2) irreparable injury absent a stay; (3) that the stay will not substantially injure other parties interested in the proceeding; and (4) that the public interest favors his stay.[8] "[A] stay is not a matter of right, even if irreparable injury might otherwise result."[9] "It is instead an exercise of judicial discretion[.]"[10] Moreover, a Court's "'decree creates a strong presumption of its own correctness,' which often counsels against a stay."[11] Courts grant stays pending an appeal "only in extraordinary circumstances."[12] "As the stay applicant[], [Southwest] bear[s] the burden of showing why 'extraordinary circumstances' demand that [the court] exercise discretion in [its] favor."[13] No extraordinary circumstance exists here, nor has Southwest demonstrated any.

Contrary to Southwest's characterizations,[14] movants must show that the last three factors—irreparable harm, substantial harm to others, and the public interest (i.e., "the balance of the equities")—are "*heavily* tilted in the movant's favor"[15] If the movant shows they heavily tilt in his favor, then, where a "'serious legal question is involved,' a[] [movant] 'need only present a

---

[8] *See Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014); *Nken v. Holder*, 556 U.S. 418, 426 (2009).

[9] *Alliance for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. Apr. 12, 2023) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[10] *Nken*, 556 U.S. at 433 (citation omitted).

[11] *Id*. at *3 (quoting *Virginian Ry. Co.*, 272 U.S. at 673).

[12] *Alliance*, 2023 WL 2913725, at *3 (quoting *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979)) (Stevens, J., in chambers) (other citations omitted).

[13] *Alliance*, 2023 WL 2913725, at *21.

[14] Doc. 472 at 17. Southwest inaccurately states, "A movant need not satisfy all four prongs." *Id*. But that misstates Southwest's threshold burden of showing the latter three factors heavily tilt in favor of a stay, which is required for the *Ruiz* alternate inquiry to apply. *See e.g.*, *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992); *Ruiz v. Estelle*, 650 F.2d 555, 565-66 (5th Cir. Unit A June 26, 1981) (per curiam) (other citations omitted) ("*Ruiz I*").

[15] *Hernandez v. Erazo*, No. 23-50281, 2023 WL 3175471, at *2 (5th Cir. May 1, 2023) (emphasis added) (quoting *Ruiz I*, 650 F.2d at 565-66 (other citations omitted).

substantial case on the merits'" (instead of likelihood of success on the merits).[16] "'[L]ikelihood of success remains a prerequisite in the usual case' and '[o]nly if the balance of equities (i.e., consideration of the other three factors) is … *heavily tilted* in the movant's favor' will [the court] issue a stay in its absence, and, even then, the issue must be one with patent substantial merit.[17] While Southwest's stay request fails under either standard, the Court should apply the traditional four factor standard requiring Southwest to show a likelihood of success on the merits, irreparable harm, no substantial harm to others, and that a public interest favors its stay, and deny Southwest's motion.

## I.  Southwest did not show a strong likelihood of success on the merits.

Southwest fails to show a strong likelihood of success on the merits with any of its three arguments because (A) Title VII training coerces Southwest's compliance with the Court's notice order; (B) the Contempt Order does not affect Southwest's First Amendment speech rights; and (C) Southwest's failed arguments on the religious discrimination judgment against it do not show that it is likely to succeed on the merits of its request to stay the Contempt Order.

### A.  Title VII training coerces Southwest's compliance with the Court's notice order.

Southwest is unlikely to succeed on the merits because Title VII training is a civil contempt sanction coercing Southwest's compliance with the Court's December 5 notice order.[18] The Court has broad discretionary powers to fashion civil contempt sanctions that coerce or ensure present and future compliance with court orders.[19] The Court's civil contempt power "is broad and

---

[16] *Hernandez v. Erazo,* No. 23-50281, 2023 WL 3175471, at *2 (5th Cir. May 1, 2023) (quoting *Ruiz I*, 650 F.2d at 565-66 (other citations omitted).

[17] *Ruiz v. Estelle*, 666 F.2d 854, 856-57 (5th Cir. 1982) (cleaned up) ("*Ruiz II*").

[18] *See* Doc. 472 at 21.

[19] *See, e.g., United States v. Lynd*, 349 F.2d 790, 793 (5th Cir. 1965); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions[] [are] those penalties designed to compel future compliance with a court order, [and] are considered to be coercive and avoidable through obedience[.]"); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d

pragmatic, reaching where it must—consistent with prudent court management and due process—to prevent insults, oppression, and experimentation with disobedience of the law."[20] Courts are "entitled to a degree of flexibility in vindicating [their] authority against actions that … violate the reasonably understood terms of the order."[21] "[S]anctions should be 'adapted to the particular circumstances of each case[.]'"[22] The public rights that a court order seeks to protect are important measures of the remedy.[23] Under Title VII, "the court may enjoin the respondent from engaging in … unlawful employment practice[s], and order such affirmative action as may be appropriate, … or any other equitable relief as the court deems appropriate."[24] Title VII also gives the district court broad discretion in granting post-trial injunctive relief.[25] Importantly, the "district court must … exercise its [Title VII] discretion … to ensure that discrimination does not recur."[26]

   The Court properly exercised its broad discretionary powers here because Title VII training coerces Southwest's compliance with the Court's notice requirement and prevents it from continuing to undermine court orders.[27] As the Court recognized, CLE training ordered to address

---

559, 582 (5th Cir. 2005) ("Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process.") (citation omitted). *See Chicago Teachers Union v. Hudson*, 475 U.S. 292, 309 n.22 (1986) ("The judicial remedy for a proven violation of law will often include commands that the law does not impose on the community at large.") (citations omitted).

[20] *In re Bradley*, 588 F.3d 254, 265-66 (5th Cir. 2009) (recognizing that "courts have inherent power to enforce compliance with their lawful orders through civil contempt") (cleaned up).

[21] *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013); *Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*, No. 3:21-CV-01974-X, 2022 WL 4538466, at *3 (N.D. Tex. Sept. 28, 2022).

[22] *Fla. Steel. Corp. v. NLRB*, 648 F.2d 233, 239 (5th Cir. 1981) (citations omitted).

[23] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citations omitted).

[24] 42 U.S.C. § 2000e-5(g)(1).

[25] *E.E.O.C. v. Boh Bros. Const., LLC*, No. Civ. A. 09-6460, 2011 WL 3585599, at *3 (E.D. La. Aug. 16, 2011) (citing *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999)).

[26] *Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 660 (4th Cir. 1990) (citations omitted).

[27] Doc. 467 at 10-11, 17, 22; Doc. 472 at 20.

a contemptuous action is a commonplace civil sanction.[28] Specifically, the Court may order attorneys to attend specific legal training and determine which training is most appropriate for the attorneys attend.[29]

Contrary to Southwest's characterizations, Title VII training ensures Southwest's full compliance with the Courts' notice requirement and is not punitive.[30] The Title VII legal training here is a civil contempt sanction because it coerces and ensures Southwest's and its attorneys' full and continuing compliance with and acceptance of the Court's definite and specific order that Southwest inform flight attendants the company may not discriminate against them, including under its social media policies.[31]

---

[28] Doc. 467 at 20, 26, 27 (and cases cited therein); *see also Portland v. City of Portland*, No. 3:20-cv-917 (HZ), 2021 WL 982613, at *2 (D. Or. Mar. 16, 2021) (exercising inherent power to coerce compliance); *Hardy v. Asture*, No. 1:11CV299, 2013 WL 566020, at *8 (W.D.N.C. Feb. 13, 2013) (requiring an attorney "to attend eight hours of continuing legal education courses on the subject of the practice of social security litigation in federal court pursuant to the court's inherent powers to remedy current injury and possible future injury").While Southwest attempts to distinguish *Portland* and *Hardy*, by saying they involved ongoing violations and harms, that *is* the case here. Doc. 472 at 25. The Court recognized that Southwest's contempt caused substantial harm to Carter and Southwest flight attendants, which will continue until purged. Doc. 467 at 13, 15.

[29] *See Roy v. Am. Pro. Mktg.*, 117 F.R.D. 687, 693 (W.D. Okla. 1987) ("[S]ubstitution of another seminar in [] place [of designated 'Practicing in the Western District' seminar], will not be permitted absent further Order of this Court."); *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 456 (S.D.N.Y. 2011) (ordering an attorney "to attend four hours of continuing legal education courses on the subject of federal practice and procedure)

[30] Doc. 472 at 19, 20, 24, 25.

[31] Southwest continues to assert that its *willful* misrepresentations (stating "does not" when the Court ordered "may not") substantially complied with the order, when it did the opposite of what the Court ordered. Doc. 472 at 18. As the Court showed and Carter argued, Southwest's Recent Court Decision notice did not substantially comply. Doc. 467 at 1-3 (recognizing that "[i]t's hard to see how Southwest could have violated the notice requirement more" and "Southwest's notice didn't come close to complying with the Court's order"); Doc. 399 at 4-5. Regarding substantial compliance, Southwest also argues that there was no evidence that the notice confused any employee. Doc. 472 at 18. But that is irrelevant because Southwest violated the Court's definite and specific order. Harm is relevant to what sanction would be appropriate, not whether Southwest violated a court order (which it did) or substantially complied (which it did not). *See Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). And the Court recognized that Southwest's contempt harmed Carter and other flight attendants. Doc. 467 at 15.

**1. Southwest violated the Court's definite and specific order to inform flight attendants that, under Title VII, it may not discriminate.**

Contrary to Southwest's arguments,[32] Southwest violated the Court's definite and specific order to inform flight attendants that, under Title VII, it may not discriminate.[33] The Court correctly concluded that "there's a compelling governmental interest in informing flight attendants of their [Title VII] rights[.]"[34] For the Court to vindicate Title VII's policies, the Court's notice order "sought to inform flight attendants of Southwest's prior discrimination [] by having Southwest … inform flight attendants of Title VII's prohibition on Southwest's future discrimination."[35] Southwest "did effectively the opposite" by conveying "in the IIOTG memo that it may, in fact, discriminate against its flight attendants in the future if they are uncivil in its opinion."[36]

Southwest's IIOTG Memo conveyed that there was no "legal prohibition on Southwest's discriminatory conduct vis-à-vis flight attendants' online interactions."[37] The IIOTG Memo conveyed that Southwest's flight attendants may not act as Carter did online[,]"obfuscated the fact of Southwest's prior discrimination[,] and utterly failed to convey Title VII's prohibition."[38] Thus, Southwest's IIOTG Memo "stymied Title VII's policies with Carter and continues to do so now."[39] Southwest never sought to stay the Court's December 5 notice order that the IIOTG Memo violated, and, in fact, it says it will comply with issuing the Court's August 7 Remedial Statement.

---

[32] Doc. 472 at 20, 21, 26.

[33] Doc. 375 at 3, ¶10; Doc. 467 at 1, 13; Doc. 382 at 6; Doc. 399 at 24. Thus, Southwest is wrong that the Court does not identify any orders for which Southwest's compliance must be guaranteed, and failed to connect Title VII training to its noncompliance. Doc. 472 at 21, 26.

[34] Doc. 467 at 17.

[35] *Id*.

[36] *Id*.

[37] *Id*. at 10.

[38] *Id*. For those reasons, Southwest is wrong that the IIOTG Memo does not contradict what the Court ordered it *should have said* in its Recent Court Decision notice, and what it *must now say* in the verbatim Remedial Statement. Doc. 472 at 22.

[39] *Id*.

Despite its assertions,[40] Southwest cannot (and does not) show that the Court erred in finding that the IIOTG Memo violated the Court's notice requirement. The Court found that Southwest's violation of the notice order with the IIOTG Memo harmed Carter and Southwest flight attendants, and that those harms are continuing.[41]

Contrary to Southwest's characterizations,[42] Title VII training is necessary to secure continued compliance and end ongoing harms. As the district court explained, it "had to devise its remedies in this case 'to vindicate the policies of' Title VII[,]" and "it was important for Southwest flight attendants to be aware that Title VII prohibits Southwest's religious discrimination,"[43] including through its social media policies as it had done with Carter. Southwest's contempt "suggested that there's no such thing as Southwest's religious discrimination" and "that Southwest may, in fact, unabashedly curtail flight attendants' religious beliefs and practices expressed in their online interactions in the name of civility."[44] The Court found that "Southwest's speech and actions toward employees demonstrate a chronic failure to understand the role of federal protections for religious freedom[.]"[45]

**2. Title VII training is necessary to coerce and ensure Southwest's compliance based on its violation of the Court's notice order and continuing failure to comprehend Title VII's protection of employees' religious liberties.**

The Court recognized that Title VII training "has significant probable effectiveness," finding that Southwest and its attorneys "'do[] not appear to comprehend [the] legal concept'" of employees' Title VII religious freedoms and liberties.[46] The Court further recognized that

---

[40] Doc. 472 at 26.
[41] Doc. 467 at 15.
[42] Doc. 472 at
[43] Doc. 467 at 15 (citation omitted).
[44]*Id.*
[45] Doc. 467 at 4.
[46] *Id.* at 22.

"Southwest habitually points to its policies as a pretext for discrimination[,]" and how, specifically in the IIOTG Memo, "Southwest maintained its belief that firing Carter was justified because she 'did not adhere to Southwest policies.'"[47] When a party "does not appear to comprehend" an area of the law, training "in the relevant subject area" is an appropriate remedy.[48] Southwest has continually missed the point, and continues to do so in the instant motion and briefing, that whether or not Southwest followed its policies, it violated federal law.[49] Title VII training is necessary to help Southwest and its attorneys, who have been violating the Court's orders, comprehend Title VII's protection of employees' religious liberties vis-à-vis Southwest's social media policies.[50] Title VII training comes in here as "a particularly apropos sanction" because Southwest does not appear to comprehend the legal concept/relevant subject area as demonstrated by its "citation to its policies in an apparent attempt to end-run legal protections against religious discrimination based on online activities[.]"[51]

### 3.  There is no lesser sanction than Title VII training that could effectively coerce Southwest's compliance.

Contrary to Southwest's arguments,[52] there is no lesser sanction than Title VII training that could coerce Southwest's future compliance, and Southwest fails to show otherwise. Southwest has repeatedly violated Court orders and conveyed that its policies trump federal law.[53] To be sure, Courts impose the least severe sanction adequate to correcting the violation.[54] Still, "the proper

---

[47] *Id*. at 21 (quoting Southwest's IIOTG Memo at Doc. 383-3 at 2).
[48] *Id*. at 20; *Edmonds v. Seavey*, 379 F. App'x 62, 64-65 (2d Cir. 2010) ("[C]ounsel does not appear to comprehend the function of the civil RICO statute. Thus, the district court's chosen sanction is particularly apropos: requiring that counsel attend CLE courses in a relevant subject area.").
[49] Doc. 467 at 21, 21 nn.72-73.
[50] *Id*. at 22.
[51] Doc. 467 at 23.
[52] Doc. 472 at 20-21, 24.
[53] Doc. 467 at 23-24; Doc. 373.
[54] *See e.g., Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).

aim of judicial sanctions for civil contempt is 'full remedial relief,'"[55] The Court ordered Title VII training to ensure Southwest's future compliance because, in the future, Southwest could follow its new Court-ordered notice with another IIOTG Memo again targeting Carter's Title VII-protected religious freedoms in the crosshairs of its policies and "mandating that all flight attendants 'adhere to' Southwest's 'established policies.'"[56] Thus, the Court found, based on the IIOTG Memo and Southwest's repeated violations, the Court needs to impose some sanction that will help ensure Southwest will not again attempt to undermine the Court-ordered notice with another citation to its policies.[57] The Court concluded that, because of Southwest's "chronic failure" to understand federal protections for employees' religious liberties, having Southwest's three responsible attorneys attend Title VII training was "the least restrictive means of achieving compliance with the Court's order."[58]

Southwest argues that Title VII training is not the least severe sanction because it is willing to send the verbatim Remedial Statement.[59] But the Court showed why merely issuing the statement (as Southwest should have done in the first place) is not enough to ensure Southwest's future compliance.[60] Southwest's continuing failure to comprehend Title VII's protection of employees' religious liberties, evidenced by the IIOTG Memo's violations of the Court's notice order,[61] Southwest attorneys willful violations of the court order, and its habitual tendency to elevate its

---

[55] *Fla. Steel. Corp.*, 648 F.2d at 239 (internal citations omitted).

[56] Doc. 467 at 20-22.

[57] Doc. 467 at 22.

[58] Doc. 467 at 4. Notably, Southwest failed to identify any other "less severe" sanction.

[59] Doc. 472 at 20-21.

[60] Doc. 472 at 20. Contrary to Southwest's arguments, its pre-sanction agreement to re-issue a notice stating "may not" instead of "does not"—what it should have done in the first place—did not repair the harms it caused—the misrepresentations to flight attendants with "does not" compounded by the IIOTG Memo. Doc. 467 at 20-22. Still, "the proper aim of judicial sanctions for civil contempt is 'full remedial relief.'" *Fla. Steel. Corp.*, 648 F.2d at 239 (internal citations omitted).

[61] Doc. 467 at 10-11, 17-18, 20-23.

policies above federal law, all show that merely re-issuing the notice is not enough. Furthermore, Southwest has never disclaimed the IIOTG Memo's violation of the Court's notice order.[62] As the Court observed, Southwest's conduct here was "worse than the mine-run contempt easily 'cured' by a remedial notice: Southwest did not *evade* the Court's order; Southwest *inverted* the Court's order."[63]

### B. The Contempt Order does not affect Southwest's First Amendment speech rights.

#### 1. The Contempt Order sanctioned Southwest for violating the Court's December 5 notice order, not for disagreeing with and appealing the judgment.

Southwest has no likelihood of prevailing on the merits of its request because the Court's contempt order does not punish Southwest for exercising First Amendment speech rights. Contrary to Southwest's characterizations, the Contempt Order does not sanction Southwest for "disagree[ing] with, and [asserting] its right to appeal, [the] decision[.]"[64] What *is* at issue is the Southwest IIOTG Memo's violation of the Court's notice order to inform flight attendants it may not discriminate against them for their religious practices and beliefs—including but not limited to—those expressed on social media concerning abortion.[65] The Contempt Order's sanctions arise specifically from Southwest's violation of the Court's December 5 notice requirement. And the First Amendment does not protect Southwest's contempt for court orders.[66]

The Contempt Order sanctioned Southwest and ordered Title VII training because, Southwest's IIOTG Memo, issued contemporaneously with the willfully faulty "does not discriminate" notice, violated the Court's notice order by conveying to flight attendants that

---

[62] *Id*. at 23.
[63] *Id*. at 22.
[64] Doc. 472 at 22, 23. As Southwest knows, the Court did not sanction Southwest for its statements regarding its plans to appeal
[65] Doc. 375 at 3 ¶10.
[66] *See e.g., In re Bradley*, 588 F.3d at 265 (recognizing that "courts have inherent power to enforce compliance with their lawful orders through civil contempt") (cleaned up).

Southwest can use its social media policies to restrict employees' Title VII-protected religious liberties.[67] The Contempt Order requires Southwest attorneys to attend legal training because they were at the root of the IIOTG Memo problem,[68] and violated the Court's notice order to inform flight attendants, under Title VII, Southwest may not discriminate against their religious beliefs or use its social media policies to do so.[69] While the Court's original notice order required Southwest to communicate a message, Southwest did not attempt to stay that requirement, and now agrees to issue the Contempt Order's verbatim remedial statement.[70] Since Southwest no longer contests the Court-ordered notice requirements, there is no longer any discernible objection involving Southwest's speech.

Sanctioning Southwest for the IIOTG Memo's violation of the Court's December 5 notice order does not impermissibly restrict or interfere with Southwest's First Amendment speech rights because the sanctions for violating the Court's notice requirement aimed at Southwest's violation of the notice order (which Southwest does not challenge), and its apparent inability to comprehend employees' Title VII-protected religious liberties.[71] Southwest's First Amendment speech objections here are nonsensical.[72] Southwest complains that the Contempt Order's prohibitions are unclear at the same time it admits that the order contains no written prohibitions.[73]

---

[67] Doc. 467 at 10-11, 17-18, 20-23.

[68] *Id.* at 22.

[69] *Id.* at 10-11, 17-18, 20-23.

[70] The Court and Carter have both shown why the Court's December 5 notice order does not restrict speech. Doc. 467 at 16-19; Doc. 382 at 12-13; Doc. 399 at 6-8. While recognizing that lesser scrutiny likely applies in this context, the Court applied strict scrutiny in evaluating Southwest's objection to issuing a new remedial statement, which Southwest does not contest. Doc. 467 at 16-17, 17 n.56.

[71] Doc. 467 at 16-19.

[72] Doc. 472 at 21-23, 26, 32.

[73] Doc. 472 at 19, 23, 32.

Even while asserting that the Contempt Order's ongoing speech prohibition is vague and chilling, Southwest overlooks its own critical admission: The Contempt Order contains no order prohibiting Southwest from speaking.[74] Southwest should rest assured that the Contempt Order does not contain a phantom prohibition, and stop tilting at windmills. Nothing in the Contempt Order "superintends" or takes aim at Southwest's speech in any way.[75] The Contempt Order is neither a prior restraint nor unlawful content-based or viewpoint discrimination. Nor does the Contempt Order condition the propriety of Southwest's future speech on Title VII training.

Even if "restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech."[76] Courts may enjoin and proscribe messages "associated with particular 'secondary effects' of the speech," such that the injunction is "*justified* without reference to the content of the … speech."[77] As the Supreme Court has recognized, communications can "violate laws directed not against speech but against conduct"[78] Thus, communications "may produce a violation of Title VII's general prohibition against [] discrimination in employment practices."[79]

### 2. The Contempt Order's Title VII training requirement does not raise any First Amendment concerns.

Contrary to Southwest's arguments,[80] the Contempt Order's Title VII training requirement does not raise any First Amendment concerns. The legal training requirement does not mandate or

---

[74] Doc. 472 at 23, 26.

[75] Doc. 472 at 11, 21-23, 26.

[76] *Test Masters Educ. Servs., Inc.*, 428 F.3d at 580 (citations omitted).

[77] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) quoting *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)) (emphasis in *Renton*) (other citations omitted); *see also Test Masters Educ. Servs., Inc.*, 428 F.3d at 580 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

[78] *R.A.V.*, 505 U.S. at 389 (citations omitted).

[79] *Id.* (citing 42 U.S.C. § 2000e-2) (other citations omitted).

[80] Doc. 472 at 21-24, 26.

restrict Southwest's speech. The Court-ordered training's purpose is to ensure that Southwest and its attorneys comprehend Title VII's legal protections of employees' religious liberties, particularly in the legal area involving the interplay between those protections and company policies that threaten to "end-run legal protections against religious discrimination based on online activities[,]"[81] and that they conform to, continue to comply with, and do not undermine the Court's notice order in the future.

Despite Southwest's objections, there is no "vagueness" problem since the legal training requirement is only to attend. While Southwest objects that it does not know which portions of the 8-hour training contain the key to avoiding future sanctions,[82] the Contempt Order makes clear that Southwest only needs to send its three attorneys to the training as "the key" to purging its contempt.[83]

While Southwest objects to sending its attorneys to ADF for legal training (who it dubiously refers to as "an ideological organization with a particular viewpoint"),[84] the Contempt Order calls for training on what the law is regarding employees' Title VII-protected rights (i.e., employees' religious liberties), not normative training on what the law should be.[85] Nothing in the order contemplates Alliance Defending Freedom ("ADF") telling Southwest "what it can and cannot say." [86] The Court recognized that ADF, who has extensive Title VII litigation experience at all levels in the federal court system, including the Supreme Court, had experience conducting Title

---

[81] Doc. 467 at 23.

[82] Doc. 472 at 24.

[83] For the same reasons, Southwest's objection that guidance from ADF will be insufficient to guide or protect Southwest from future sanctions, especially if Southwest disagrees with ADF's view of the law, is misplaced. Doc. 472 at 26.

[84] Doc. 472 at 23-24. While Southwest provides a link to ADF's legal training academy, that is not the training the Contempt Order contemplated. Doc. 467 at 3-4, 20-24.

[85] Doc. 472 at 10-11, 17-18, 23, 24. The Court's reasoning is that Southwest should speak only after it is armed with a better understanding of the legal area of the issue. Doc. 467 at 26.

[86] Doc. 472 at 23.

VII employee religious liberty training (i.e., on "the role of federal protections for religious freedom").[87] Thus, ADF is as well suited to conducting Title VII training sessions for Southwest's attorneys as it would be to conducting CLE training for lawyers.

Yet, Southwest apparently expects courts to treat ADF as a pariah because the legal aid organization also happens to espouse religious views.[88] Southwest suggests that the courts must exclude ADF from performing Title VII training based on its attorneys' and clients' religious views. But courts cannot exclude law firms, persons, or organizations from providing legal training or services based on their religious views.[89] Would Southwest have the courts or state bars exclude organizations or persons as officers of the court simply because they have religious views?

Title VII training is designed to help Southwest's attorneys appreciate Title VII's legal protection of employees' religious liberties and address legal issues with Southwest using its policies. Southwest's failure to grasp the point of religious liberty training (i.e., training for comprehension of employees' Title VII-protected rights) only underscores its need.

---

[87] Doc. 467 at 4, 20-24.

[88] Southwest objects to ADF's "ideological" nature, which only further reflects its religious discriminatory animus and a pervasive hostility to religious organizations even though Title VII religious liberty training does not contemplate any normative religious instruction.

[89] *See e.g., Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) (holding that state department's policy of denying church an otherwise public benefit on account of its religious status violated the church's First Amendment Free Exercise rights); *McDaniel v. Paty*, 435 U.S. 618 (1978); *Obergefell v. Hodges*, 576 U.S. (2015) ("The First Amendment ensures that religious organizations and persons are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths."). Southwest essentially "endors[es] the view that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome in [its] business community." *Masterpiece Cakeshop, Ltd. v. Co. Civ. Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018).

**C. Southwest's failed arguments on the religious discrimination judgment against it do not show that it is likely to succeed on the merits of its request to stay the Contempt Order or Title VII training.**

For all of Southwest's complaints regarding the religious discrimination verdict and decision in its motion, Southwest never sought a stay of the Court's orders back in December.[90] Having failed to stay the Court notice order it violated, Southwest is required to obey those orders, and is subject to sanctions that coerce its compliance. "An order issued by the Court with jurisdiction over the subject matter and person must be obeyed until it is reversed."[91]

Southwest's untimely attempts to dredge up failed arguments on the underlying merits of the religious discrimination decision get it nowhere on whether it is likely to succeed on the merits of its appeal of the contempt order and Court-ordered sanctions. While it is true that a contemnors' contempt falls away if the court order violated is overturned, parties must promptly comply with those orders until they are overturned.[92] Simply put, Southwest must prove the likelihood of succeeding on the merits of the contempt appeal, not the merits of its appeal of the underlying notice order and the judgment that it violated Carter's Title VII rights through enforcement of its social media policies. Nevertheless, Southwest cannot prevail on the underlying merits of its religious discrimination arguments—those arguments have already failed. The Court rejected

---

[90] Doc. 472 at 9-10, 13-14, 27-32.

[91] *United States Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979)**;** *Seven Arts Filmed Ent. v. Jonesfilm***,** 538 F. App'x 444, 446 (5th Cir. 2013) ("[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, *but, absent a stay, he must comply promptly with the order pending appeal*. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.") (emphasis in original).

[92] *Id.*

Southwest's dredged-up arguments when it denied Southwest's motion for new trial,[93] and Carter has also showed they are meritless and cannot succeed.[94]

Southwest's argument that it is likely to win a new trial based on *Groff* fails on multiple levels. First, the Court's jury instructions were consistent with both *Groff* and pre-*Groff* Fifth Circuit precedent. The Court's jury instructions provided that "[a]n undue hardship means more than a *de mnimis* cost on the conduct of the employer's business either in terms of financial costs or disruption of the business."[95] Contrary to Southwest's arguments,[96] the jury instructions "plainly encompasse[d] the totality of Southwest's business and did not prevent the jury from considering potential burdens on Carter's co-workers."[97] Accordingly, the jury's instructions were fully consistent with Southwest's cited-to Fifth Circuit caselaw holding that undue monetary or scheduling burdens on co-workers might suffice to outweigh an employee's right to religious expression in the workplace.[98] That same precedent put Southwest on notice that it could put on

---

[93] Doc. 409.

[94] *See* Doc. 404; *id.* at 8-9 (showing why Southwest's insufficiency of evidence arguments are wrong). Notably, Southwest *continues* to rely on *Clark v. Champion National Security, Inc.*, 952 F.3d 570, 580-81 (5th Cir. 2021) regarding the employer's knowledge of a protected characteristic for Title VII liability as a matter of law. Doc. 472 at 27; Doc. 167 at 51; Doc. 429, p.6 (citing App.2, ¶7). The Supreme Court rejected that argument in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-74 (2015). As Carter has previously pointed out, *Clark* addresses a knowledge standard under the Americans with Disabilities Act (ADA), not Title VII. Carter also notes that, despite all its crowing about its religious discrimination policy revisions, Southwest imports ADA knowledge standards into those policies that do not apply in the Title VII context. Doc. 429, p.6 (citing Doc. 429-1, App.2, ¶7). This is yet another example of Southwest's failure to comprehend Title VII and further justification for why Southwest's attorneys should attend Title VII training.

[95] Doc. 343 at 17-18.

[96] Doc. 472 at 31-32.

[97] Doc. 409 at 9. Carter also showed that the undue hardship case instructions did not prevent Southwest from making its arguments. Doc. 404 at 14-17. While Southwest could have produced evidence regarding workplace or business disruption, it did not. Or, at least, it did not present any evidence that the jury found convincing. .

[98] Doc. 409 at 9.

evidence of increased business costs, but Southwest chose not to do so.[99] Second, Southwest's problem is that those cases do not stand for the proposition for which it asserts them (i.e., "elevat[ing] a co-worker's potential offended feelings above an employee's right to religious expression)."[100]

Third, the Supreme Court's *Groff* decision does not help Southwest. While the Court's jury instructions were consistent with *Groff* in allowing the jury to consider "the cost on the conduct of the employer's business either in terms of financial costs or disruption to the business," those instructions (consistent with *Hardison*) set Southwest's evidentiary bar *lower* than *Groff* now requires. It set it at the lower more than *de minimis* threshold.[101] Under *Groff*, Southwest would now have to meet the higher standard of showing a substantial burden in the overall context of an employer's business.[102] Not only has Carter made arguments showing why Southwest should not be entitled to an undue hardship defense under these circumstances, the evidence at trial showed that Southwest failed to present evidence showing undue hardship under either the pre or post-*Groff* standards.[103]

---

[99] Doc. 472 at 32.

[100] Doc. 472 at 30-31; Doc. 409 at 11 (citation omitted). The Court also responded to Southwest's arguments and explained why these are meritless. Doc. 404 at 14-17.

[101] *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023). *Id.* at 2296 ("only 'coworker impacts' that go on to 'affect the conduct of the business.'") (cleaned up); *id.* ("Specifically, a coworker's dislike of 'religious practice and expression in the workplace' … is not 'cognizable to factor into the undue hardship inquiry.") (cleaned up); *id.* ("To the extent that this was not previously clear, we agree. An employer who fails to provide an accommodation has a defense only if the hardship is 'undue,' and a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.' If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself.") (citations omitted).

[102] *Groff*, 143 S. Ct. 2279 at 2294.

[103] Carter has shown that, for a variety of different reasons, Southwest cannot prevail on an undue hardship argument. *See. e.g.*, Doc. 404 at 14-17.

Having admitted that Carter's Facebook communications imposed *no* financial harm on the company prior to her termination,[104] Southwest cannot meet *Groff*'s standard of showing *substantial* burden in the overall context of an employer's business. Thus, there is no basis for a new trial when the intervening Supreme Court decision in *Groff* raised the bar for Southwest, which it has already admitted it cannot meet.

## II.  Southwest will not suffer irreparable harm without a stay.

The Court should deny Southwest's stay because Southwest will not be irreparably harmed by the Court's order for three attorneys—who willfully violated a court order—to attend Title VII legal training. "[T]he irreparable injury factor asks whether 'the [stay] applicant will be irreparably injured' absent a stay[.]"[105] Southwest has not identified any harm it will suffer absent a stay. Not wanting to comply with the Court's orders will not suffice.[106] Southwest is not "irreparably harmed by the [] court's order, because [it] has no interest in continuing to violate the law."[107]

Southwest failed to show irreparable harm to its First Amendment speech rights, and, as shown, the Contempt Order and Title VII legal training do not harm those rights.[108] Contrary to its assertions, Southwest also failed to show that legal training (the only component of the order it contests) will cause it to suffer *irreparable* reputational harms, let alone any reputational harm.[109]

---

[104] Doc. 404 at 16.

[105] *Alliance*, 2023 WL 2913725, at *18 (quoting *Nken*, 556 U.S at 434) (emphasis in *Alliance*).

[106] Southwest cannot argue that it will suffer an irreparable injury by losing its right to vindicate an interest on appeal, but fail to enlighten the court as to what that interest is. *Nken*, 556 U.S at 433-34.

[107] *Alliance*, 2023 WL 2913725, at *20.

[108] *See supra* at 11-15; Doc. 472 at 32. While Southwest asserts vague notions of restrictions on speech, Doc. 472 at 32. that is not extraordinary, particularized irreparable harm that warrants a stay.

[109] Doc. 472 at 32.

Even if difficult to quantify, Southwest presented no evidence that it would incur catastrophic financial losses that might constitute an irreparable reputational injury.[110]

Southwest asserts, "[T]he religious-liberty training sanction suggests to the public that Southwest, its employees, and its counsel are hostile to religion."[111] Not so. Southwest's IIOTG Memo and a unanimous jury's determination that Southwest discriminated against Carter's religion *have already shown* Southwest's hostility to religion. Southwest's complaints are self-inflicted. Legal training will not make Southwest's reputation any worse. On the contrary, training ordinarily enhances one's reputation and credibility. Thus, Southwest's claim that training will harm its attorneys is illogical. Moreover, Southwest's reputational harm claims are speculative and baseless, lacking any evidentiary support. Finally, Southwest's irreparable harm arguments ring hollow because it did not seek a stay of the Court's December 5 notice order to avoid the Court-ordered communication, *and* it agrees to issue the Court's remedial statement requirement. Title VII legal training, by contrast, does not require or affect any speech.

### III. Carter and Southwest flight attendants will continue suffering substantial harm from Southwest IIOTG Memo's misrepresentations if a stay is granted.

The Court should also deny the stay because Southwest's IIOTG Memo (the reason for Title VII religious liberty training) harmed Carter and Southwest's employees.[112] To succeed on this factor, the movant must show that the requested stay will not substantially harm the opposing party or other interested parties.[113] The Court recognized that Southwest's IIOTG Memo and its noncompliance "significant[ly]" harmed Carter and Southwest's flight attendants.[114] Importantly,

---

[110] *Alliance*, 2023 WL 2913725, at *18.
[111] Doc. 472 at 33.
[112] Doc. 472 at 33.
[113] *Alliance*, 2023 WL 2913725, at *19.
[114] The Court recognized "there's been significant harm from Southwest's noncompliance [with its order]." Doc. 467 at 20.

the Court entered injunctive relief to protect Carter and other Southwest flight attendants from religious discrimination, finding that "the policies of Title VII require the Court to prohibit [Defendants' unlawful] conduct more broadly, especially when Defendants appear poised to repeat it with other flight attendants."[115] Carter's contempt motion and the Court's order protects those flight attendants as much as her Title VII litigation and the underlying orders did.

Staying the religious-liberty training requirement will extend Carter's and Southwest flight attendants' substantial harm from Southwest's restraint on and deprivation of flight attendants' notice of their protected Title VII rights vis-à-vis Southwest's policies, stemming from its IIOTG Memo and its attorneys' willful misrepresentation of their rights. There is an ongoing discriminatory restraint on the exercise of their religious freedoms, which the underlying notice— nullified by Southwest's Memo—was designed by the Court to remedy. Without Southwest's prompt compliance with the Court's Title VII training requirement, the Court cannot ensure future compliance with the order giving employees' notice of their Title VII rights.[116] For the same reasons, and contrary to Southwest's arguments,[117] Carter and Southwest flight attendants have an ongoing personal interest in Southwest's attorneys attending religious liberty training. Civil contempt sanctions are "remedial, and for the benefit of the complainant."[118]

---

[115] Doc. 374 at 28-29; Doc. 375 at 2, ¶5 (enjoining "Defendants from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion").

[116] "[I]t was important for Southwest flight attendants to be aware that Title VII prohibits Southwest's religious discrimination." Doc. 467 at 15 (citation omitted). Southwest's contempt "suggested that there's no such thing as Southwest's religious discrimination" and "that Southwest may, in fact, unabashedly curtail flight attendants' religious beliefs and practices expressed in their online interactions in the name of civility." Doc. 467 at 15.

[117] Doc. 472 at 33.

[118] *Bagwell*, 512 U.S. at 827.

## IV. The public interest favors denying the stay.

Contrary to Southwest's arguments,[119] the public interest weighs heavily in favor of denying the stay and coercing Southwest's compliance with the Court's notice order. "[T]here is no public interest in the perpetuation of illegality."[120] The public interest weighs against parties who subvert court orders. Preventing Southwest from continued court order violations in the future "is an important public interest."[121] Furthermore, the public interest supports all means to ensure compliance, including legal training, and to avoid continuing violations of the law and an existing non-stayed order and injunction.

While Southwest argues that the public has no interest in the expenditure of time, money, and effort in complying with an order that may well be overturned, and in allowing the appeals process to play out, those are Southwest's *private* interests, not public interests.[122] The public interest weighs in favor of enforcing court orders until they are overturned, and the appeals process will likely drag on into the next year. The public has a much greater interest in the prompt execution of court orders, even if that involves time, money, and effort (so does litigating a stay that is unlikely to prevail).[123] Furthermore, Southwest has not demonstrated that the Court's order will likely be overturned.

---

[119] Doc. 472 at 33.

[120] *Alliance*, 2023 WL 2913725, at *20 (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022). While Southwest argues that the public has a strong interest in not punishing Southwest, its employees, or its counsel for defending its intent to appeal, that argument is inapposite because that is not why the Court sanctioned Southwest. *See supra* at 11-12.

[121] *cf. In Re Raborn*, No. 15-10938, 2017 WL 4536090, at *4 (Bankr. M.D. La. May 9, 2017) ("[S]taying the order would serve only one interest: that of the debtor in attempting to further protract the bankruptcy to the detriment of her creditors."). Nor would it be equitable to grant Southwest's requested stay where "[its] disregard of the Court's order was willful." Doc. 467 at 20.

[122] Doc. 472 at 33.

[123] *Nken*, 556 U.S. at 427. Federal courts' inherent contempt power "promotes the due and orderly administration of justice and safeguards the court's authority." *Hornbeck*, 713 F.3d at 792. "[F]ederal courts have the power to enjoin [litigants] who abuse the court system and harass their

## V.  Southwest cannot satisfy the *Ruiz* standard.

The Court should not apply the *Ruiz v. Estelle* standard because Southwest's failure to show irreparable harm, along with Southwest's substantial harm to Carter and flight attendants, and the public interest in coercing Southwest's compliance with the Court's orders, are all "*heavily* tilted" *against* Southwest.[124] Even if these three factors did heavily tilt in Southwest's favor, Southwest's Title VII training objection does not present a "substantial case on the merits" or a "serious legal question" (*both* of which are required under the standard).[125] First, Southwest's training objection does not present a substantial case on the merits (i.e., "one with patent substantial merit"[126]) for the same reasons that it has no likelihood of success on the merits.[127] Second, Southwest's training objection does not present "a serious legal question." "Serious legal questions have 'far-reaching effects' or are matters of 'public concern[]' that go well beyond the interests of the parties."[128]

Sanctioning Southwest for violating a court order does not raise "a serious legal question" with far-reaching effects. There is no "serious legal question" in a "dispute … [that] concerns whether the court below correctly applied established legal standards to the facts of [the] case."[129]  As this

---

opponents. Indeed, federal courts have broad powers to protect their judgments and the integrity of the courts as a whole[.]" *Villar v. Crowley Mar. Corp.*, 990 F.2d 1489, 1499 (5th Cir. 1993) (citations omitted).

[124] *See supra* at 4-22.

[125] *Ruiz I*, 650 F.2d at 565-66

[126] *Ruiz II*, 666 F.2d at 856-57 (cleaned up).

[127] *See supra* at 4-19.

[128] *Hernandez*, 2023 WL 3175471, at *5 (quoting *Wildmon*, 983 F.2d at 24). To the extent that *the underlying religious discrimination case on the merits* might present a serious legal question, that is irrelevant to staying the Court's sanction. Southwest did not seek a stay of the underlying orders, including the notice requirement.

[129] *See Hernandez*, 2023 WL 3175471, at *5. Unlike other Fifth Circuit cases, the resolution of Southwest's sanction appeal would not have, for example, "a broad legal impact upon federal/state relations." *See e.g., United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983) ("Whether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act is a serious legal question that could have a broad impact upon federal/state relations.").

Court recognized, sending willful contemnors to legal training on a specific federal statute and in a specific area of the law is common. Requiring Southwest to send three attorneys to Title VII training with highly-experienced litigators for causing the IIOTG's violation of the Court's order to notify employees that Southwest may not discriminate against their Title VII-protected religious liberties does not impact anyone beyond those directly affected by the order in this particular case.

**CONCLUSION**

For the foregoing reasons, the Court should deny Southwest's stay request.

Dated: August 24, 2023                    Respectfully submitted,


<u>/s/ Matthew B. Gilliam</u>
Mathew B. Gilliam (*admitted pro hac vice*)
New York Bar No. 5005996
*mbg@nrtw.org*
c/o National Right to Work Legal Defense
Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: 703-321-8510
Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

*Attorneys for Plaintiff Charlene Carter*

## **Certificate of Service**

I hereby certify that on August 24, 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/ Matthew B. Gilliam