UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | |
|---|---|
| CHARLENE CARTER,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO. and TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556,<br><br>　　　　　　　　　　Defendants. | CASE NO.: 3:17-CV-02278-X<br><br>**SOUTHWEST AIRLINES CO.'S REPLY BRIEF IN SUPPORT OF ITS OPPOSED MOTION TO STAY THE COURT'S CONTEMPT ORDER PENDING APPEAL** |

PAULO B. MCKEEBY
State Bar No. 00784571
pmckeeby@reedsmith.com
BRIAN K. MORRIS
State Bar No. 24108707
bmorris@reedsmith.com
REED SMITH LLP
2850 N Harwood St., Ste. 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile:  (469) 680-4299

ANDREW B. RYAN
State Bar No. 24054464
andy@ryanlawpartners.com
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219
Dallas, TX 75219
Telephone: (214) 347-7360
Facsimile: (888) 594-6240

SHAY DVORETZKY
Admitted *pro hac vice*
shay.dvoretzky@skadden.com
PARKER ANDREW RIDER-LONGMAID
Admitted *pro hac vice*
parker.rider-longmaid@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Defendant Southwest Airlines Co..*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

I.      Southwest is likely to succeed on the merits of its consolidated appeal.............................1

          A.      Southwest is likely to succeed on the merits of its contempt appeal. ......................1

                  1.      Southwest complied with the Court's order..................................................1

                  2.      Religious-liberty training is not the least-restrictive means to enforce compliance with the judgment's notice requirement. .....................2

          B.      The Contempt Order violates the First Amendment................................................5

          C.      Southwest is likely to prevail in challenging the verdict and judgment, so it is necessarily likely to succeed in challenging the Contempt Order. ...................6

II.     Southwest and its attorneys will suffer irreparable harm without a stay. ...........................9

III.    Carter suffers no harm from a stay, and the public interest supports a stay. .....................10

CONCLUSION ........................................................................................................................10

CERTIFICATE OF SERVICE .................................................................................................12

# TABLE OF AUTHORITIES

**P**AGE(S)

**C**ASES

*Clark v. Champion National Security, Inc.*,
   952 F.3d 570 (5th Cir. 2020) ........................................................................................ 7

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*,
   188 F.3d 278 (5th Cir. 1999) ................................................................................. 7, 8, 9

*Elrod v. Burns*,
   427 U.S. 347 (1976) ....................................................................................................... 9

*Evance v. Trumann Health Services, LLC*,
   719 F.3d 673 (8th Cir. 2013) ........................................................................................ 7

*First National Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) ....................................................................................................... 4

*Gooding v. Wilson*,
   405 U.S. 518 (1972) ....................................................................................................... 5

*Groff v. DeJoy*,
   143 S. Ct. 2279 (2023) ....................................................................................... 1, 7, 8, 9

*Hardy v. Asture*,
   No. 1:11-CV-299 (MR), 2013 WL 566020
   (W.D.N.C. Feb. 13, 2013) ............................................................................................. 4

*Hassen v. Ruston Louisiana Hospital Co., L.L.C.*,
   932 F.3d 353 (5th Cir. 2019) ........................................................................................ 7

*In re Deepwater Horizon*,
   732 F.3d 326 (5th Cir. 2013) ........................................................................................ 9

*Karaha Bodas Co. v. Perusahaan Pertambangan
   Minyak Dan Gas Bumi Negara*,
   335 F.3d 357 (5th Cir. 2003) ........................................................................................ 6

*Portland v. City of Portland*,
   No. 3:20-CV-917 (HZ), 2021 WL 982613
   (D. Or. March 16, 2021) ............................................................................................... 4

*Recovery Group, LLC v. BP America, Inc.*,
   278 F.R.D. 162 (E.D. La. 2012) .................................................................................. 10

*SEIU, Local 5 v. City of Houston*,
   595 F.3d 588 (5th Cir. 2010) ........................................................................................ 5

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ..................................................................................................... 10

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985) ....................................................................................................... 3

## TABLE OF AUTHORITIES
(continued)

**PAGE(S)**

*Weber v. Roadway Express, Inc.*,
   199 F.3d 270 (5th Cir. 2000) .................................................................................. 8, 9

*Whitfield v. Pennington*,
   832 F.2d 909 (5th Cir. 1987) ..................................................................................... 1

**CONSTITUTION AND STATUTES**

U.S. Const. amend. I ................................................................................... 1, 3, 4, 5, 9, 10

28 U.S.C. § 1291 ................................................................................................................ 4

Religious Freedom Restoration Act of 1993,
   42 U.S.C. § 2000bb *et seq.* ......................................................................................... 4

Title VII of the Civil Rights Act of 1964,
   42 U.S.C. § 2000e *et seq.* .......................................................................... 1, 3, 4, 6, 7, 9, 10

   42 U.S.C. § 2000e(j) .................................................................................................. 7

   42 U.S.C. § 2000e-2(a)(1) .......................................................................................... 6

**RULES**

Federal Rule of Civil Procedure 11 ................................................................................... 2

Federal Rule of Civil Procedure 16 ................................................................................... 2

Federal Rule of Civil Procedure 23 ................................................................................. 10

Federal Rule of Civil Procedure 37 ................................................................................... 2

**OTHER AUTHORITIES**

Christian Post, *New Alliance Defending Freedom Head Identifies
   3 Big Threats to Religious Liberty in America*,
   https://www.christianpost.com/news/adf-
   leader-lists-three-big-threats-to-religious
   -liberty-in-the-united-states.html ............................................................................... 4

CNN, *Federal Judge Orders Southwest Airilnes Attorneys to Attend
   'Religious-Liberty Training' from Conservative Group*,
   https://www.cnn.com/2023/08/08/politics/southwest-
   airlines-sanctions-alliance-defending-freedom ......................................................... 9

Dallan F. Flake, *Bearing Burdens: Religious Accommodations
   That Adversely Affect Coworker Morale*,
   76 Ohio St. L.J. 169 (2015) ........................................................................................ 8

Practising Law Institute, *Employment Discrimination Law
   & Litigation 2023*, https://www.pli.edu/programs/
   employment-discrimination-law--litigation ............................................................... 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

SHRM, *Court Levels Large Verdict Against FedEx for Retaliation*,
    https://www.shrm.org/resourcesandtools/legal-and-compliance/
    employment-law/pages/verdict-against-fedex-for-retaliation.aspx ........................................... 3

**INTRODUCTION**

Southwest has met all four stay factors. *First*, it is likely to succeed on the merits of its contempt appeal because it substantially complied with the Court's order, and, as Carter agrees, the Court's civil-contempt power extends only as far as necessary to remedy noncompliance. The least-restrictive means to secure compliance is sending the verbatim statement—Title VII training (let alone "religious-liberty" training) is not. And the Contempt Order violates Southwest's First Amendment rights by punishing it for and chilling its protected speech. Southwest is also likely to succeed in appealing the underlying judgment because Carter put on *no* evidence of religious belief–based discrimination, and the new *Groff* undue-hardship standard warrants a new trial on religious accommodation. *Second*, Southwest will suffer irreparable harm absent a stay. Carter does not dispute that First Amendment harms are irreparable, and Southwest and its attorneys will suffer unquantifiable reputational harms absent a stay. *Finally*, Carter will suffer no harm from staying the training order until the Fifth Circuit resolves the consolidated appeals, and the public has no interest in the putting the cart (religious-liberty training) before the horse (appellate resolution).

**ARGUMENT**

**I.   Southwest is likely to succeed on the merits of its consolidated appeal.**

    **A.   Southwest is likely to succeed on the merits of its contempt appeal.**

        **1.   Southwest complied with the Court's order.**

A court may not hold a party in contempt if it substantially complies with a court order. *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987). Here, the Court ordered Southwest to inform all flight attendants that under Title VII Southwest may not discriminate against them for their religious practices and beliefs. ECF 375, at 2-3. Southwest substantially complied with that requirement by attaching the judgment and the verdict form in an email to flight attendants, making clear that a jury found Southwest liable for violating Title VII. Taken in context, the "may

1

not"/"does not" distinction does not materially change the overall message of Southwest's email, which communicated that federal law does not allow Southwest to discriminate against flight attendants. Indeed, no flight attendant reported any confusion about the message.

Carter's only response is that the lack of confusion goes to the appropriate sanction, not substantial compliance. ECF 480 (Resp.), at 6 n.31. Not so. A reasonable reader would not understand "does not" to contradict the message, contained in the same email, that a jury and court had just found that Southwest violated federal law. The lack of confusion confirms that point, showing that the notice as a whole communicated the Court's message.

### 2. Religious-liberty training is not the least-restrictive means to enforce compliance with the judgment's notice requirement.

Even if Southwest did not substantially comply with the notice requirement, the religious-liberty training sanction exceeds the Court's authority because it is not the least-restrictive means to cure noncompliance. Carter agrees (Resp. 9-10) that civil-contempt sanctions cannot go beyond ensuring compliance with court orders and compensating parties for noncompliance, or else they become criminal-contempt sanctions. ECF 472 (Mot.), at 11-12. And she does not defend the Court's invocation of inapposite decisions under Rule 11, 16, and 37, which permit punitive sanctions. Mot. 16-17. Although the Court says it ordered religious-liberty training "to coerce compliance with its orders," ECF 467 (Op.), at 24, religious-liberty training is not the least-restrictive means to ensure that Southwest complies with the notice requirement. The least severe sanction is simply an order—which the Court issued, Op. 28—to make the verbatim statement, as Southwest has been, and is, willing to do, *see* Mot. 3. Religious-liberty training will not make it any more likely that Southwest will issue the verbatim statement.

a.  Carter complains that "merely re-issuing the notice is not enough," because Southwest "could follow its new Court-ordered notice with another IIOTG Memo." Resp. 10-11. But

2

Carter fails to engage with the IIOTG Memo, and never quotes its language. The Memo does not contravene the notice requirement. Rather, the Memo explains Southwest's position before trial: Southwest "believed" Carter's actions were inappropriate, it "determined" that she violated policies and thus was terminated, and Southwest "felt" that Carter crossed the line. ECF 383-3. The Memo then expresses Southwest's disagreement with the jury's verdict and its intent to appeal, while "implement[ing] the judgment." *Id*. These statements are common after jury verdicts in employment cases, *see, e.g.*, https://www.shrm.org/resourcesandtools/legal-and-compliance/employment-law/pages/verdict-against-fedex-for-retaliation.aspx (FedEx after Title VII verdict: "We strongly disagree with the judgment entered, and we have filed our notice of appeal. We remain confident that we acted properly regarding [the plaintiff's] termination."), and are protected First Amendment speech, *see infra* pp. 5-6. Nor does the memo's encouragement to "adhere to" Southwest's policies undercut the judgment. ECF 383-3. Carter did not facially challenge Southwest's policies, *compare Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120-22 (1985) (discriminatory policy), or bring a class action, *see infra* p. 10, and the judgment did not invalidate, or enjoin Southwest from encouraging compliance with, its neutral policies.

Contrary to Carter's argument, the IIOTG Memo, read as a whole, rebuts the Court's "*modus ponens* syllogism," Op. 10, because the Memo's explanation that Carter "did not adhere to Southwest policies and guidelines" refers to Southwest's conclusion after its pretrial investigation of Carter's conduct; the Memo then explains that a "court entered a judgment in [Carter]'s favor after a jury trial," ECF No. 383-3. Encouraging policy compliance did not offend the judgment, and, in any event, Southwest can continue to believe that Carter's conduct violated its policies and was not protected by Title VII, and state that belief, so long as it conveys (as the IIOTG Memo does) that a court disagreed with that position and Southwest will abide by the court ruling.

3

Carter claims that religious-liberty training is necessary because Southwest "fail[s] to comprehend Title VII's protection of employees' religious liberties," Resp. 10, Southwest "never disclaimed the IIOTG Memo[]," Resp. 11, and Southwest continues to argue that it did not "violate[] federal law," Resp. 9. But Southwest has a statutory right to appeal the verdict and judgment, *see* 28 U.S.C. § 1291, and a First Amendment right to express its disagreement with the verdict and judgment. *See infra* pp. 5-6; Mot. 15 (citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 778-81 (1978)). Southwest does not believe that it violated federal law when it fired Carter, and it is taking the issue up with the Fifth Circuit. Carter cites no precedent to support her alarming theory that district courts can sanction in-house attorneys when the company expresses disagreement with the district court, and order training to force them to abandon their arguments on appeal.

**b.** Even if legal training were the least-restrictive means of achieving compliance, "religious-liberty" training is not. This case is about Title VII, but religious liberty may encompass the Free Exercise Clause, the Religious Freedom Restoration Act, and other topics that have nothing to do with this case—although Southwest has not seen the ADF training syllabus. Last year, the ADF's president identified as the most pressing religious-liberty issues: (1) the government's threat to "redefine what it means to be a man and a woman"; (2) "the right to speak freely," especially about student life on campus and in cases involving artists; and (3) "parental rights." https://www.christianpost.com/news/adf-leader-lists-three-big-threats-to-religious-liberty-in-the-united-states.html. Tellingly, Carter, unlike the Court, repeatedly refers to the sanction as "Title VII training," Resp. 4-11, 13, 15-17, 21, 23-24, but that is not what the Court ordered.

Carter defends the Court's reliance on *Portland* and *Hardy* as decisions ordering training for civil contempt. But those cases are not relevant. *Portland* involved an ongoing TRO and *Hardy* involved several ongoing cases. Here, in contrast, training serves no civil-contempt purpose

4

because Southwest has agreed to send the Court's verbatim statement, and Southwest has a First Amendment right to speak about this case.

### B. The Contempt Order violates the First Amendment.

The First Amendment protects a corporation's right to speak or refrain from speaking. Mot. 14. The Contempt Order violates the First Amendment twice over. *First*, it punishes Southwest for the content of its speech in the IIOTG Memo. Although the Court did not find that the IIOTG Memo itself was contemptuous, *see* Op. 8 n.25, the Court justified sanctions because Southwest issued the IIOTG Memo, *see* Op. 10-11, in violation of the First Amendment, Mot. 13-14; *see Gooding v. Wilson*, 405 U.S. 518, 522-23 (1972). *Second*, the Contempt Order imposes on Southwest's speech a content-based prior restraint that triggers and fails strict scrutiny. The Court reasoned that contempt was necessary to prevent Southwest from issuing a "second IIOTG memo." Op. 22. The Order did not specify what future speech might be deemed contemptuous, leaving Southwest to "guess at [the] contours" of prohibited speech. Mot. 15. That vague prohibition unconstitutionally chills Southwest's speech. Ordering Southwest to attend "religious-liberty training" by the ADF, Op. 27, compounds the problem. Mot. 15-16. Rather than narrowly tailor speech restrictions to ensure compliance with the judgment, the Court has appointed the ADF arbiter of what speech Southwest must silence to avoid sanction. That is far from the "clear" prohibition necessary to regulate speech. *SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010).

Carter says the Contempt Order does not punish Southwest's prior speech because the IIOTG Memo "violated the Court's notice order." Resp. 11. That is false. The Memo described Southwest's investigation and termination of Carter, culminating in the jury's verdict in her favor, and promised to appeal while implementing the judgment in the interim. *See* ECF 383-3; *supra* p. 3. Carter does not dispute that Southwest has a First Amendment right to speak. *See* Mot. 15.

Carter next contends that "the Contempt Order does not contain a phantom prohibition" on

5

future speech. Resp. 13. But she admits that the Order says that "Southwest should speak only after it is armed with a better understanding" of Title VII. Resp. 14 n.85. That is a gag order. Southwest cannot speak about this case without fear of triggering more contempt sanctions. Indeed, the Court has promised "a continued partnership" to police Southwest's "right to speak," Op. 4, and nothing in the Contempt Order indicates when the Court's superintendency might end.

Finally, Carter misses the point when she says that the ADF "happens to espouse religious views." Resp. 15. The problem with the Court's unprecedented order is that the ADF is an advocacy organization with a well-defined *ideology* about religious liberty. Appointing the ADF differentiates this order from others requiring training (albeit under rules permitting punitive sanction, *see supra* p. 2) by *educational* organizations, like a state bar. Indeed, such organizations provide Title VII and religious-liberty training. *See, e.g.*, https://www.pli.edu/programs/employment-discrimination-law--litigation (Practising Law Institute training on "Reasonable Accommodations for Disabilities, Religious Beliefs, and Pregnancy, Childbirth, and Related Medical Conditions").

**C.   Southwest is likely to prevail in challenging the verdict and judgment, so it is necessarily likely to succeed in challenging the Contempt Order.**

If Southwest succeeds in challenging the Court's judgment on appeal, it will necessarily win vacatur of the Contempt Order. That is because "the right to remedial relief [through a civil contempt order] falls with an injunction which events prove was erroneously issued." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 374 (5th Cir. 2003). Thus, Carter's claim that the underlying merits are irrelevant (Resp. 16) is wrong. And Southwest's challenge to the judgment is likely to succeed, because Carter did not prove that Southwest fired her "because of" her religious belief or practice. 42 U.S.C. § 2000e-2(a)(1).

**1.**   As to religious belief, Carter offered an unprecedented theory of Title VII liability that, left to stand, would blow the doors open for plaintiffs to prevail in race, sexual, national

6

origin, and religion cases without introducing any evidence of animus. Simply put, Carter offered *no* evidence that any Southwest employee held *any* discriminatory animus towards pro-life (or any) Christians. Carter's theory was that Southwest was aware that she was a pro-life Christian, and fired her because she sent graphic videos about abortion to coworkers. But courts have uniformly rejected the notion that an employer violates Title VII solely by terminating an employee it knows to belong to a protected class, with no additional evidence of animus. *See, e.g.*, *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677-78 (8th Cir. 2013). No rational jury could have found that Southwest fired Carter for her Christian *beliefs* based on the evidence she presented.

Carter barely responds to these points. In a footnote (Resp. 17 n.94), she tries to distinguish *Clark v. Champion National Security, Inc.*, 952 F.3d 570 (5th Cir. 2020), as an ADA case. But she does not dispute that *Clark* held that mere knowledge of a protected characteristic plus termination is insufficient for ADA liability, *id.* at 580-81, and the same rule applies to Title VII cases, *see Evance*, 719 F.3d at 677-78. Indeed, *Clark* itself relies on Title VII to explain that "generalized knowledge about [a protected characteristic] and the termination itself… [is] not direct evidence." 952 F.3d at 580-81. Similarly, an indirect evidence case fails without evidence of animus or differential treatment. *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 357-58 (5th Cir. 2019).

**2.**     That leaves religious practice—which Carter says encompasses her graphic videos and hostile messages. It does not, because religious practice does not cover conduct if accommodating it would impose an undue hardship on an employer. *See* 42 U.S.C. § 2000e(j). Southwest is likely to win a remand to try this case based on the new undue hardship standard announced in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), under the Fifth Circuit's rule that a new trial is warranted when the governing law changes after judgment but before an appeal becomes final. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999).

7

Before *Groff*, Fifth Circuit precedent held that even "the *mere possibility* of an adverse impact on co-workers as a result of [the proposed accommodation] is sufficient to constitute an undue hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 274 (5th Cir. 2000) (emphasis added). Indeed, scholars observed that "the Fifth and Sixth Circuits apply the least demanding standard" in "evaluating an accommodation's impact on coworker morale." Dallan F. Flake, *Bearing Burdens: Religious Accommodations That Adversely Affect Coworker Morale*, 76 Ohio St. L.J. 169, 210-11 (2015). Southwest thus tried this case by calling Southwest supervisors to testify about the harm to morale that would result from accommodating Carter. *See, e.g.*, Tr. 1602. But the Court's instruction did not follow Fifth Circuit precedent, because it required Southwest to show "cost on the conduct of the employer's business either in terms of financial costs or disruption of the business," Tr. 2039, rather than telling the jury that the mere possibility of an adverse impact on coworker morale was an undue hardship.

*Groff* changed the governing law after this Court's judgment. While *Groff* reaffirmed that harm to employee morale can give rise to an undue hardship, 143 S. Ct. at 2296, it also rejected *Weber*'s "mere possibility" requirement, instead requiring an employer to show "substantial increased costs in relation to the conduct of its particular business," *id.* at 2295. Under *Weber*, Southwest had no reason to expect that it needed to connect employee morale with business cost, and thus did not call any witnesses or notice any experts that could draw that connection. Fairness requires a new trial to give Southwest the chance to do so. *Deffenbaugh-Williams*, 188 F.3d at 282.

Carter counters that the Court's undue hardship instruction was consistent with both pre- and post-*Groff* law. Resp. 18. That is wrong. Before *Groff*, the Court's instruction that Southwest must show "financial cost or disruption of the business," Tr. 2039, contravened *Weber*'s rule, which Southwest relied on to try the case, that the *mere possibility* of harm to employee morale

8

was an undue hardship. And whether the Court's instruction happens to comply with *Groff* after the fact is irrelevant. What justifies a new trial is that Southwest "had no reason to expect a changed rule at the time of trial," *Deffenbaugh-Williams*, 188 F.3d at 282, and therefore did not introduce the kind of evidence (including expert testimony) that would have supplied the now-required connection between morale and cost. Fifth Circuit precedent requires an opportunity to do so.

## II.     Southwest and its attorneys will suffer irreparable harm without a stay.

Southwest has shown irreparable harm in two independent ways. *First*, the Contempt Order violates Southwest's First Amendment rights by punishing it for past speech and chilling its future speech. *Second*, the Contempt Order will harm Southwest's and its lawyers' reputations.

Carter does not dispute that Southwest's First Amendment injuries are irreparable. As Southwest explained, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); Mot. 24. Thus, the chilling effects on Southwest's speech alone, together with the serious legal issues raised by the Contempt Order and the underlying judgment, warrant a stay. *See In re Deepwater Horizon*, 732 F.3d 326, 345 (5th Cir. 2013). And Carter's arguments about reputation—that Southwest's reputation is already damaged, and that training will "enhance[]" that reputation, Resp. 20—are wrong. Carter's own filings make clear that Southwest's reputation continues to suffer. *See, e.g.*, Resp. 10 (pointing to "Southwest's continuing failure to comprehend Title VII"); ECF 428, at 2 (criticizing Southwest for "still insist[ing] that it did nothing wrong with the IIOTG Memo"). Rather than improve Southwest's or its attorneys' reputations, refusing to stay Court-ordered training sends the message that Southwest's lawyers are deficient and need remedial support. The extensive media coverage of this case confirms that point. *See, e.g.*, https://www.cnn.com/2023/08/08/politics/southwest-airlines-sanctions-alliance-defending-freedom/index.html (characterizing legal training "as punishment").

9

**III.     Carter suffers no harm from a stay, and the public interest supports a stay.**

Carter cannot show that she will suffer any harm from a stay. The Southwest attorneys ordered to attend training were not involved in her termination, and she has supplied no evidence that she continues to suffer any adverse employment actions. Southwest, on the other hand, has shown that it suffers First Amendment harms from its chilled speech, and that the public has no interest in the enforcement of an order "that may well" be overturned. *See* Mot. 24-25.

Carter nonetheless asserts, without evidence, that there "is an ongoing discriminatory restraint" against "Carter and Southwest flight attendants" that justifies the immediate need for training. Resp. 21. But she has offered *no* evidence that she or any other Southwest employee suffers ongoing harm, much less evidence that the three Southwest attorneys ordered to attend training are responsible for that harm. Further, Carter's effort to include possible harm to other flight attendants is legally baseless: Carter brought suit in an individual employment action and never alleged any harms to other flight attendants. She cannot claim, particularly without any evidence of ongoing harm, to represent other flight attendants. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) (only through a "class action approved under Rule 23" can a litigant represent a nonparty).

Finally, as to the public interest, Carter does not dispute that the public interest does not support rushing to punish Southwest until the Fifth Circuit decides important questions about Title VII. Instead, Carter recharacterizes Southwest's interests as "*private* interests, not public interests." Resp. 22. But the public interest here is in promoting judicial economy. It would be inefficient, and unfair, to mandate training now only to later vacate the Contempt Order if Southwest prevails in its consolidated appeal of the Contempt Order and the underlying judgment. *See, e.g.*, *Se. Recovery Grp., LLC v. BP Am., Inc.*, 278 F.R.D. 162, 169 (E.D. La. 2012).

## CONCLUSION

Southwest respectfully requests a stay of the Contempt Order.

| | |
|---|---|
| DATED: August 28, 2023 | Respectfully submitted, |
| */s Paulo B. McKeeby* | */s Shay Dvoretzky* |
| PAULO B. MCKEEBY | SHAY DVORETZKY |
| State Bar No. 00784571 | Admitted *pro hac vice* |
| pmckeeby@reedsmith.com | shay.dvoretzky@skadden.com |
| */s Brian K. Morris* | */s Parker Rider-Longmaid* |
| BRIAN K. MORRIS | PARKER RIDER-LONGMAID |
| State Bar No. 24108707 | Admitted *pro hac vice* |
| bmorris@reedsmith.com | parker.rider-longmaid@skadden.com |
| REED SMITH LLP | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP |
| 2850 N Harwood St., Ste. 1500 | 1440 New York Ave., NW |
| Dallas, TX 75201 | Washington, DC 20005 |
| Telephone: (469) 680-4200 | Telephone: (202) 371-7000 |
| Facsimile:  (469) 680-4299 | Facsimile:  (202) 393-5760 |

*/s Andrew B. Ryan*
ANDREW B. RYAN
State Bar No. 24054464
andy@ryanlawpartners.com
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219
Telephone: (214) 347-7360
Facsimile: (888) 594-6240

*Attorneys for Defendant Southwest Airlines Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been filed via the Court's ECF system and all counsel of record have been served on this 28 day of August, 2023.

DATED: August 28, 2023                   Respectfully submitted,

*/s Shay Dvoretzky*
SHAY DVORETZKY
Admitted *pro hac vice*
shay.dvoretzky@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: (202) 371-7000
Facsimile:  (202) 393-5760