UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLENE CARTER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:17-CV-2278-X |
| TRANSPORT WORKERS UNION | § | |
| OF AMERICA, LOCAL 556, and | § | |
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING STAY OF SANCTIONS ORDER**

Before the Court is a motion to stay a sanctions order. [Doc. 471] The Supreme Court has made clear that "all orders and judgments of courts must be complied with promptly."[1] And if a party like Southwest disagrees with an injunction, that party is free "to appeal, but, absent a stay, [it] [has to] comply promptly with the order pending appeal."[2] Parties that "make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect."[3] In other words, parties with an unstayed injunction can complain—but they must comply.

Here, a jury found that Southwest Airlines Co. (Southwest) violated Title VII when it fired flight attendant Charlene Carter over religious messages she sent to

---

[1] *Maness v. Meyers*, 419 U.S. 449, 458 (1975).

[2] *Id.*

[3] *Id.*

1

her union president.  The Court's judgment ordered Southwest to reinstate Carter, enjoined Southwest from discriminating against the religious beliefs and practices of its flight attendants, and ordered Southwest to inform its flights attendants that, under Title VII, Southwest may not discriminate against them for their religious beliefs and practices.  Importantly, Southwest appealed but never sought to stay those injunctive portions of the judgment.  So under Supreme Court precedent, Southwest was obligated to comply with the unstayed order.

Instead of complying, Southwest choose to gut the Court's notice requirement, telling its flight attendants that Southwest does not discriminate against religion and that employees must abide by the civility policies Southwest fired Carter under.

Now, Southwest tries to undo the damage it has done since the final judgment. It seeks to stay the Court's prior order requiring the Southwest in-house counsel who drafted the communications to attend religious liberty training and issue a new, correct notice.  But Southwest flouted both this Court's notice requirement and Supreme Court precedent.  Training and a corrected notice are the way to get back on track.  Religious liberty training won't harm Southwest.  But staying it will harm the flight attendants who still don't know the truth about the injunction that protects them.  Accordingly, the Court **DENIES** Southwest's motion for a stay pending appeal.[4]

---

[4] As explained in the conclusion, this order leaves in place the 30-day administrative stay the Court previously ordered to allow this stay motion to be briefed and decided here and in the Fifth Circuit.

## I. Background

The Court recounted in detail the background of this case in the sanctions order at Doc. 467.  A jury found that Southwest violated Title VII when it fired Carter for expressing her religious views.  The Court ordered Carter reinstated, enjoined Southwest from such discrimination against its flight attendants, and ordered Southwest to inform its flight attendants that, under Title VII, Southwest "may not discriminate" against them for their religious beliefs and practices.

Southwest didn't seek a stay of that notice requirement (or reinstating Carter or the injunction), so it bound itself to comply with the Court-ordered notice.  Instead of complying, on December 20, 2022, Southwest gutted the Court-ordered notice with two communications.  First, Southwest informed its flight attendants that "[t]he court [] ordered us to inform you that Southwest ***does not*** discriminate against our Employees for their religious practices and beliefs."[5]   Second, Southwest contemporaneously circulated a memorandum to its flight attendants indicating that Carter's firing was justified because Carter did "not adhere to Southwest policies" and mandating that, unlike Carter, all flight attendants "must all adhere to" Southwest's "policies."[6]   In short, on December 20, 2022, instead of learning about Title VII's protections, Southwest flight attendants learned that Southwest may treat its flight attendants as it did Carter, that that treatment doesn't even constitute

---

[5] Doc. 383-2 at 2 (emphasis added).

[6] Doc. 383-3 at 2.

3

discrimination, and that Southwest's mandatory civility policies justified such treatment—Title VII be damned.

Unsurprisingly, the Court sanctioned Southwest for violating the Court-ordered notice requirement.  Now, Southwest seeks a stay of that ruling, claiming that it's likely to win on appeal to the Fifth Circuit.

## II. Legal Standard

To stay an order pending appeal, a movant must show (1) a strong likelihood of success on the merits of the order appealed; (2) irreparable injury absent a stay; (3) that the stay will not substantially injure other parties interested in the proceeding; and (4) that the public interest favors the stay.[7]  No one factor is dispositive, but the likelihood of success and irreparable injury are "the most critical" factors.[8]

A court order "creates a strong presumption of its own correctness," which often warrants denying a stay.[9]  Accordingly, stays are only for "extraordinary circumstances."[10]  So it is no surprise that stays are "not a matter of right, even if irreparable injury might otherwise result."[11]  Once a party (like Carter) wins an

---

[7] *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014).

[8] *Nken v. Holder*, 556 U.S. 418, 426 (2009).

[9] *Virginian Ry. Co. v. United States*, 272 U.S. 658, 673 (1926).

[10] *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers); *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. Apr. 12, 2023) (same).

[11] *Virginian Ry. Co.*, 272 U.S. at 672.

injunction, the burden of proof reverses and requires the movant (Southwest) to carry the burden of proving that the four factors command a stay.[12]

## III. Analysis

The Court considers the factors for issuing a stay: (A) likelihood of success, (B) irreparable harm, (C) harm to other parties, and (D) the public interest.

### A.  Likelihood of Success

Southwest contends it's likely to succeed on appeal in overturning (1) the contempt order and (2) its Title VII liability.  The Court considers each in turn.

### 1.  The Contempt Order

Southwest is not likely to succeed in overturning the Court's contempt order. Here's why: In its judgment, the Court ordered Southwest to make multiple communications.  Southwest had to post the verdict and judgment on company bulletin boards.  Southwest had to email the verdict and judgment to all flight attendants. And, lastly, the Court ordered "Southwest . . . to inform Southwest flight attendants that, under Title VII, [Southwest] may not discriminate against Southwest flight attendants for their religious practices and beliefs."[13]  Critically, Southwest declined to seek a stay of those injunctions.[14]

---

[12] *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *All. for Hippocratic Med.*, 2023 WL 2913725, at *4 (same).

[13] Doc. 375 at 3.  The Court includes only the portion of that order that is relevant to Carter's contempt motion.

[14] Doc. 381 at 1 ("Southwest does not request a . . . stay[] in connection with the injunctive relief components of the Court's judgment.").

By declining to seek a stay of those orders, Southwest bound itself to promptly comply with them.[15]  If Southwest disagreed with the Court's injunctions, it was free "to appeal, but, absent a stay, [it] [had to] comply promptly with the order pending appeal."[16]  Parties that "make private determinations of the law and refuse to obey an order generally risk [] contempt even if the order is ultimately ruled incorrect."[17]  Because the Court ordered Southwest to make several communications and because Southwest did not seek a stay, Southwest limited what it could and couldn't say.  Southwest may wanna get away from that Court-ordered notice but, because it didn't seek a stay, it can't leave the gate.

Consider the following hypothetical.  Suppose—contrary to reality—that on December 20, 2022, Southwest sent its flight attendants a perfect reproduction of the Court-ordered language:

> Under Title VII, Southwest may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion.

Suppose further that, without seeking a stay, one minute later, Southwest sent the following communication to its flight attendants:

> One minute ago, you received an e-mail from us saying "Under Title VII, Southwest may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to— those expressed on social media and those concerning abortion."  A court ordered us to send you that e-mail.  But that e-mail was wrong.  We totally can and will discriminate against you for your religious practices

---

[15] *Maness*, 419 U.S. at 458 ("[A]ll orders and judgments of courts must be complied with promptly[.]").

[16] *Id.*

[17] *Id.*

and beliefs—especially for those expressed on social media and those concerning abortion.

The Court could rightly hold Southwest in contempt for such a statement.

That is effectively what happened here. Instead of conveying Title VII's protection, Southwest—in its own words—gave the "impression that this Court ruled that Southwest had not discriminated against an employee because of her religious beliefs,"[18] and Southwest contemporaneously told its flight attendants that, unlike Carter, they "must all adhere to" Southwest's "policies."[19]

By not seeking a stay of the Court's injunctions, Southwest bound itself to comply with them and not to substitute its private determinations of the law. Southwest was free to express its disagreement with the verdict. It was free to express its plans to appeal. But it still had to comply with the Court's injunction and notice. Instead, Southwest did nearly everything in its power to gut the Court's notice—an order it agreed to follow by not seeking a stay. Accordingly, Southwest is not likely to succeed on appeal.

Southwest cites six more specific grounds, which, it contends, are likely to secure a reversal on appeal. The Court considers each.

### a. Compliance

Southwest parrots its argument from the contempt phase that it substantially complied with the Court's order. A contemnor can show substantial compliance by showing "reasonably diligent and energetic [] attempt[s] to accomplish what was

---

[18] Doc. 419 at 2.

[19] Doc. 383-3 at 2.

7

ordered."[20]   But, as the Court's *ex parte* addendum shows, Southwest devoted diligence and energy only to circumvent the Court's order—not to comply with it. Southwest hasn't provided any *ex parte* response showing why the Court's *ex parte* rationale was wrong.   Instead, Southwest noted its compliance with ***other*** Court orders.   Specifically, Southwest notes that it did, in fact, send its flight attendants "the judgment and verdict."[21]   Apparently, Southwest seeks a gold star for complying with one of this Court's order with one hand while eviscerating another of this Court's orders with the other.[22]   Unlike Rapid Rewards points, Southwest's points for complying with one court order aren't transferable to atone for its willful violation of another order.

Southwest also says it substantially complied by "inform[ing] employees that the court had entered judgment against Southwest in a case alleging religious discrimination."[23]   That's not true.   The Court-ordered notice required Southwest to convey that (1) Title VII, (2) prohibited, (3) Southwest, (4) from discriminating, (5) based on religious practices or beliefs.   Southwest's notice didn't mention Title VII. It didn't mention a prohibition.   It didn't even explain what the Court (or jury) found.

---

[20] *Bisous Bisous LLC v. Cle Grp., LLC*, No. 3:21-CV-1614-B, 2021 WL 4219707, at *3 (N.D. Tex. Sept. 16, 2021) (Boyle, J.) (cleaned up).   As noted, that's the more lenient standard that the Court examines for the sake of argument.

[21] Doc. 472 at 18.

[22] Further, Southwest argues it can finagle compliance by attaching the judgment.   That's myopic.   The Court wanted to provide Southwest's flight attendants with access to the judgment.   But there's no guarantee they'd open the judgment.   And there's no guarantee they'd read the parts that talked about Title VII's prohibitions.   That's why, in addition to circulating the judgment, the Court required Southwest to provide notice of Title VII's prohibition.   Southwest's attaching the judgment isn't an escape hatch.

[23] Doc. 472 at 18.

Flight attendants can't glean anything meaningfully close to the Court-ordered notice from Southwest's statement. And even assuming Southwest's statement did *any* good (the Court believes it didn't), Southwest immediately undermined any possible good with its IIOTG memo. There was no substantial compliance.

### b. Criminal Contempt

Southwest contends that the Court-ordered training constitutes an impermissible criminal contempt sanction for five reasons. First, Southwest contends that it already fully "satisfied the remedial purposes of contempt" when it "voluntarily agreed to issue a corrected statement and to pay Carter's attorneys' fees."[24] Anything beyond that, like training—the argument goes—can't coerce compliance with the Court's orders. That's wrong. Southwest's failure to seek a stay of the Court's injunction imposed an affirmative and a negative duty. Affirmatively, Southwest had to convey the Court-ordered notice—which it didn't. Negatively, Southwest couldn't issue a communication undermining the Court-ordered notice with its private determination of the law—which it did. The new statement will satisfy the affirmative duty. But it does nothing to ensure compliance with the negative duty. Religious-liberty training helps coerce compliance by helping Southwest understand that its policies do not trump federal law. Without it, the only evidence the Court has shows that Southwest will continue to infringe on its employees' Title VII protections.

---

[24] *Id.* at 19.

Similarly, Southwest says that, unlike the cases the Court cited, the Court did not "justif[y] training as necessary to secure compliance."[25]  That's incorrect. Southwest missed the part of the order it now challenges where the Court expressly "direct[ed] Southwest to send those individuals to religious-liberty training" to "coerce compliance with (instead of the continued undermining of) the Court's orders in this case."[26]  Rather than placing Southwest under a gag order, the Court is opting for the lesser remedy of religious-liberty training.

Second, Southwest avers that "the Court does not identify any orders for which Southwest's compliance must be guaranteed."[27]  That's weird.  Southwest elsewhere in that very same motion recognizes that the Court was "clear" that it "sanction[ed] Southwest for its failure to issue the Court-ordered notice" and because "the IIOTG Memo undermined the required Decision Notice."[28]  Southwest knows what it did: Southwest failed to provide the required notice and substituted its "private determinations of the law" in the IIOTG memo for the required notice.[29]

Third, Southwest argues that the Court's rationale for religious-liberty training (that Southwest might speak again as it did with the IIOTG memo) was "wrong, because the IIOTG Memo merely expressed Southwest's disagreement with

---

[25] *Id.* at 25.

[26] Doc. 467 at 22.  Oddly enough, Southwest cites that language on the next page of its brief, so it's unclear why it was confused about the Court's coercive justification.  *See* Doc. 472 at 26 (quoting the Court's language about coercion).

[27] Doc. 472 at 26.

[28] *Id.* at 22.

[29] *Id.*

the Court's order and its plan to appeal."[30]  The Court isn't blind to Southwest's tactics.  The IIOTG memo did not **_merely_** express disagreement and appellate ambitions.  It said that Carter "did not adhere to Southwest policies" and that Southwest flight attendants "must all adhere to" Southwest's "policies."[31] Unsurprisingly, then, the Court didn't sanction Southwest for expressing disagreement with the verdict or its appellate ambitions in the IIOTG memo—the Court's sanctions analysis **_never mentioned Southwest's expression of disagreement or appellate plans_**.[32]  Instead, the Court sanctioned Southwest over the IIOTG memo because it "strongly impl[ied] that Southwest may permissibly discriminate against flight attendants if they violate Southwest's policies."[33]

Fourth, Southwest cites one California district court that found that a magistrate judge's CLE sanction "was intended to vindicate the court's authority" instead of coercing compliance.[34]  To begin, Southwest omits the fact that the California court came to that conclusion only "[u]nder the unique factual backdrop of this case," so it didn't provide a blanket holding.[35]  Worse, Southwest ignores the in-circuit precedent reaching the opposite conclusion: CLE training is "a remedial and

---

[30] _Id._ at 19; _see also, e.g._, _id._ at 26 ("The memo simply expressed Southwest's disagreement with the jury's verdict and the Court's judgment, and Southwest's intent to appeal while implementing the judgment." (cleaned up)).  By the Court's count, Southwest recycles that misrepresentation seven times in its opening brief.

[31] Doc. 383-3 at 2; _see also id._ (arguing that Carter's "online conversation . . . created unnecessary tension among a workgroup" and contained "extremely graphic and disturbing visuals").

[32] The statements only appeared in the factual background of the Court's opinion.

[33] Doc. 467 at 21–22.

[34] _Hawkins v. Kroger Co._, No. 15-CV-2320 JM(AHG), 2020 WL 6150040, at *9 (S.D. Cal. Oct. 20, 2020).

[35] _Id._

prophylactic measure more than a sanction[.]"[36]  The Court declines to follow an expressly cabined, out-of-circuit precedent.

Southwest also notes that the Court cited cases that used Federal Rules of Civil Procedure 11, 16, and 37 as bases for training sanctions.  It claims that "relying on Rule 11, 16, and 37 caselaw to impose training sanctions was error" because those Rules allow punitive sanctions.[37]  But Southwest omits to mention what, exactly, the Court "rel[ied]" on those cases to show.  The Court cited those cases to show (1) that training "is a commonplace sanction" and (2) the rationale behind training.[38]  When it came time to address Southwest's objection that training is a punitive sanction, the Court cited caselaw describing training as a coercive civil sanction.[39]

Even setting that aside, the fact the training appears in cases where a Court **could** impose punitive sanctions is inapposite.  In criminal-contempt proceedings, a court can still impose civil sanctions (like attorney fees or conditional jail time).  Criminal-contempt proceedings aren't cabined to exclusively punitive sanctions.  Accordingly, the presence of CLE training in cases where a court could impose punitive damages alone shows nothing about the character of training sanctions.

---

[36] *Torres v. City of Houston*, No. H 12-2323, 2013 WL 2408056, at *10 (S.D. Tex. May 31, 2013).  *See also In re Hsu*, 451 F. App'x 37, 39 (2d Cir. 2011) (recognizing that CLE training is "remedial and prophylactic, not punitive").

[37] Doc. 472 at 25.

[38] Doc. 467 at 20.

[39] *Id.* at 26 ("[T]raining is an intrinsically coercive sanction that helps obtain compliance with a court's order" (cleaned up and quoting *Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2021 WL 982613, at *2 (D. Or. Mar. 16, 2021))).

Fifth, Southwest says, "the Court erred by failing to connect the remedy (religious-liberty training) to the only noncompliance found by the Court (the Decision Notice)."[40]  Maybe Southwest was reading some other order other than the one it is challenging.  In the order Southwest seeks to stay, the Court said Southwest "failed to comply with [the Court-ordered notice] in four ways," and the fourth way was that "the IIOTG memo . . . implies a dearth of legal prohibition on Southwest's discriminatory conduct."[41]  Further, the Court expressly connected religious-liberty training to that noncompliance by indicating that religious-liberty training would "help ensure that Southwest will not again attempt to undermine the Court-ordered notice with another citation to its policies" like that in the IIOTG memo.[42]

### c.  First Amendment

Southwest contends that the contempt order violates the First Amendment in five ways.  First, it contends that the contempt order "punishes Southwest for speaking [about] . . . its disagreement with, and its right to appeal, a decision that it believes to be wrong."[43]  That's the same false statement as before.  The Court held Southwest in contempt because the IIOTG memo indicated Southwest may punish flight attendants if they violate Southwest's civility policies.[44]  The Court never

---

[40] Doc. 472 at 21.

[41] Doc. 467 at 8, 10.

[42] *Id.* at 22.

[43] Doc. 472 at 22; *see also id.* at 23 (arguing that the IIOTG memo actually expresses "the view, still unresolved on appeal, that Title VII did not protect Carter's conduct"); *id.* ("Southwest has a First Amendment right to voice its views on the law.").

[44] Doc. 467 at 21–22 (recognizing that the problem with the IIOTG memo was that it "strongly impl[ied] that Southwest may permissibly discriminate against flight attendants if they violate Southwest's policies").

mentioned holding Southwest in contempt for expressing disagreement with the Court's decision.

Second, Southwest contends that the Court imposed "a content-based prior restraint" because it "promis[ed] to superintend Southwest's speech."[45]   Although prior restraint was one method by which the Court could have enforced its injunction, the Court determined that a Saturday's worth of training was a less severe sanction. Accordingly, the Court agreed that "Southwest has the right to speak" and expressly clarified that, in light of its contempt order, "Southwest maintains the right to speak."[46]   In fact, the entire purpose of religious-liberty training is to *avoid* a prior restraint by ensuring that Southwest can "comprehend . . . the relevant subject area" when it speaks sans Court approval.[47]   The Court hopes that, once Southwest is armed with a better understanding of religious liberty, no further Court intervention will be necessary.

Third, because there's "no written order prohibiting Southwest from speaking," Southwest contends that the Court's "prohibition of Southwest's speech is [an unconstitutionally] vague" prior restraint.[48]   Southwest's prior-restraint objection is a paper tiger.   The Court earlier justified the training because "Southwest could follow its Court-ordered remedial statement with a second IIOTG memo"[49] and "again

---

[45] Doc. 472 at 23.

[46] Doc. 467 at 3, 22.

[47] *Id.* at 22.

[48] Doc. 472 at 23.

[49] Doc. 467 at 22.

attempt to undermine the Court-ordered notice with another citation to its policies."[50] So there's nothing ambiguous about the Court-ordered notice or the Court's contempt order.  Southwest must do the training and issue the remedial notice.  In doing so, it remains free to speak.  But Southwest agreed to abide by the Court's injunction pending appeal (by not seeking a stay), so it cannot issue a new memo that again indicates the injunction is unenforceable.

In fact, the instant briefing shows that religious-liberty training is more necessary now than ever before.  Thus far, Southwest still hasn't acknowledged that the IIOTG memo's mandated adherence to Southwest policies (the same ones over which Southwest fired Carter) undermined the Court-ordered notice.  In fact, in its instant briefing, Southwest still seems to believe that the Court sanctioned it because it expressed its appellate plans—not because it mandated adherence to its policies irrespective of Title VII.  Southwest's lawyers misunderstand the relationship between their policies and Title VII.  They direly need religious-liberty training.

Fourth, Southwest surmises that "the Court intends for [] ADF to tell Southwest what it can and cannot say."[51]  That's way off course.  Southwest's previous notice and IIOTG memo rest on a fundamental misunderstanding of how federal law protects employees' religious liberties.  The Court is confident ADF will offer educational background on religious liberties and the workplace—a concept Southwest has failed to grasp at any stage of this six-year-old case.

---

[50] *Id.*

[51] Doc. 472 at 23.

As for Southwest's contention that the Court is intending for ADF to tell Southwest some sort of *specific* message,[52] that's again, far from true. The Court will not be attending the training. The Court will not otherwise receive knowledge of what will be discussed in Southwest's training. And to the Court's knowledge, Southwest hasn't invited Carter to the training either (so she won't be able to report to the Court if Southwest flouts some aspect of the training). All that the Court will receive is Southwest's certification that it received its training.

Fifth, Southwest contends that the Court's view that Southwest fails to appreciate that federal law trumps its policies "is itself viewpoint discrimination" because Southwest thinks that "it did not discriminate against Carter."[53] That argument divulges Southwest's fundamental failure to appreciate the nature of injunctive relief. By not seeking a stay of the injunction, Southwest bound itself to comply with the injunction.[54]

Lastly, Southwest complains that "[r]equiring religious-liberty training from an ideological organization with a particular viewpoint on what the law requires" is "unprecedented."[55] That appears to be more of a gripe than a legal objection, because Southwest doesn't make any legal argument for why training with an "ideological organization" is unconstitutional or otherwise contrary to law.[56]

---

[52] *Id.*

[53] *Id.* at 27.

[54] *Maness*, 419 U.S. at 458.

[55] Doc. 472 at 23–24.

[56] This doesn't appear to be a First Amendment argument, as Southwest doesn't cite the First Amendment or any First Amendment caselaw, so it appears that Southwest forfeited any First Amendment arguments concerning ADF's viewpoint. *See OOGC Am., L.L.C. v. Chesapeake Expl.,*

In any event, the Court selected ADF for the following reason: Southwest does not appear to understand how federal law operates to protect its employees' religious liberties.  ADF has won multiple Supreme Court cases in recent years on the topic of religious liberties, evidencing an understanding of religious liberties.[57]  And because ADF has agreed to conduct topical trainings in the past, ADF appears well-suited to train Southwest's lawyers on a topic with which the lawyers evidently struggle.

## 2.  The Jury Verdict

Southwest is also not likely to overturn the underlying jury verdict and judgment against it.  But as the Fifth Circuit explained, absent a stay, "[a]n order issued by the Court . . . must be obeyed until it is reversed."[58]  Southwest, for reasons unknown, did not seek a stay of the Court's injunction implementing the verdict.  Now, Southwest wants to back-door a stay of the Court's injunctions by staying the contempt order.  It's too late for that.  Carter has long been back at work.  The flight attendants are protected by an injunction.  But they don't know the effect of the injunction (and haven't for most of a year) because Southwest inverted the notice.  Staying any further portion of the judgment only serves to continue the confusion Southwest has sown.

---

*L.L.C.*, 975 F.3d 449, 456 n.10 (5th Cir. 2020) ("And arguments raised in a perfunctory manner, such as in a footnote, are waived." (cleaned up)).  In any event, training on religious liberties is not training on how to be religious.  It's training on how to abide by laws that tolerate religion.  Likewise, the Foundation for Individual Rights and Expression (FIRE) is an ideological organization in that it favors free speech.  FIRE litigates but also does outstanding training in the free-speech space.  FIRE's free speech training is not training on how to speak loudly.  It's training on how to abide by laws that tolerate free speech.

[57] *See, e.g.,* Doc 467 at 23 n.77 (noting one of ADF's prominent Supreme Court victories).

[58] *U.S. Steel Corp. v. United Mine Workers of Am., Dist. 20,* 598 F.2d 363, 368 (5th Cir. 1979).

17

Even assuming Southwest's argument is timely, it fails on the merits anyway. Southwest claims it is likely to win on appeal because (1) the new undue hardship standard announced in *Groff v. DeJoy*[59] requires that Southwest receive a new trial and (2) Carter presented no evidence of discrimination based on her religious beliefs. Both arguments fail.

Southwest's undue hardship argument fails for the same reasons the Court rejected it in its previous order denying Southwest's motion for a new trial, and the elevated standard in *Groff* does not revive it. In a nutshell, Southwest says it did not anticipate the new standard announced in *Groff*, and that is why it did not advance evidence of the costs Southwest would incur by accommodating Carter.[60] But at the time of trial, Fifth Circuit precedent on undue hardship indicated that a co-worker's hurt feelings alone were insufficient to establish undue hardship on the employer.[61] The only evidence Southwest presented was the type of evidence that can't show an undue burden: evidence of the emotional burden on Carter's co-workers.[62] A change in the law making it harder on Southwest will not help Southwest.[63]

---

[59] 143 S. Ct. 2279 (2023).

[60] *See* Doc. 472 at 31–32.

[61] *See Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982)

[62] *See also Antoine*, 713 F.3d at 839.

[63] Another perplexing aspect of Southwest's argument is that Southwest failed to convince the jury that it would suffer an undue hardship under the lower, pre-*Groff*, standard. And now Southwest believes it is entitled to a new trial because the Supreme Court made that standard *more* difficult for employers like Southwest. *See Groff*, 143 S. Ct. at 2295. A new trial in light of the higher standard would impede judicial economy, and there is no indication that the Supreme Court intended *Groff* to apply retroactively to allow a second trial for employers who tripped over a lower hurdle in the first trial.

Southwest's lack-of-evidence argument is also unconvincing.  It claims that Carter failed to offer evidence that any Southwest employee had animus toward pro-life (or any) Christians because Carter's only evidence was that Southwest knew she belonged to a protected class, and it terminated her.[64]  According to Southwest, no rational jury could find that it fired Carter for her Christian beliefs.  That is an inaccurate representation of the evidence.  Southwest fired Carter because of anti-abortion messages she sent to her union president.  The notes recount that Carter told Ed Schneider (who made the termination decision) that she was a pro-life Christian and as a Christian, she believes she must get the word out to anyone possible who touches the issue of abortion.[65]  Schneider testified that these notes demonstrated that Carter told him she was exercising her religious beliefs in sending the messages.[66]  And Schneider's own testimony supports that conclusion that Southwest terminated Carter for exercising her religious beliefs.  This was a direct evidence discrimination case, and Carter brought direct evidence.[67]

---

[64] Southwest also inaccurately states that Carter recognized that she did not produce direct evidence of discrimination.  But Carter actually stated that she presented direct evidence of discrimination, which she did, and therefore did not need to rely on pretext or indirect evidence.  Doc. 404 at 9 (citing Tr. Ex. 64, 65, 98, 103, 107, 115; Tr. Trans. 1289:8–24, 958:7–959:9, 1105:3–22, 1106:23–1107:3, 1131:3–1132:11, 1595:9–16, 1660:5–1662:8).

[65] Tr. Trans. 1105: 11–22.  Schneider testified that the notes were accurate.  Tr. Trans. 1101: 3–5.

[66] Tr. Trans. 1105: 11–22; Tr. Trans. 1106: 23–25 to 1107: 1–3.

[67] *See Fierros v. Tex. Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001) ("If, on the other hand, the plaintiff presents direct evidence that the employer's motivation for the adverse action was at least in part retaliatory, then the *McDonnell Douglas* framework does not apply."), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

## B. Irreparable Harm

Southwest next argues it will be irreparably harmed by the loss of First Amendment freedoms because it will be left guessing "whether anything it says will trigger future sanctions, even if it is expressing reasonable disagreement with the judgment or ADF."[68]  This argument fails.

As addressed above, the Court's sanctions order expressly agreed that Southwest "Southwest maintains the right to speak" but has used speech to unlawfully invert the Court's ruling.[69]  Southwest fears its speech might run afoul of ADF's training or the Court's judgment.  As to ADF, the Court stated earlier that it won't know what ADF said.  So that argument falls flat.  Would Southwest not speak for fear of repercussions for "expressing reasonable disagreement with the judgment[?]"[70]  Southwest has shown no such deference to the Court before.  And as expressed above, Southwest has and can continue to explain that it disagrees with the judgment and is appealing it.  What the Supreme Court has made clear Southwest cannot do (because it didn't seek or obtain a stay) is to express its view that the judgment isn't enforceable.  It is enforceable unless reversed on appeal.  The Supreme Court's line is one Southwest's prior communications crossed in the past.  Those communications told flight attendants that Southwest's civility policies are the enforceable thing, and Southwest does not discriminate against religion.  Any harm

---

[68] Doc. 472 at 32.

[69] Doc. 467 at 22.

[70] Doc. 472 at 32.

that comes to Southwest for not lying about the enforceability of the injunction is due to Southwest not obtaining a stay of that ruling.

## C. Harm and Public Interest

Southwest next argues that (1) a stay will not harm Carter as she has no personal interest in the three Southwest lawyers attending religious-liberty training, and (2) the public interest is disserved by complying with an order that may well get flipped on appeal and would chill speech.  Carter counters that (1) staying the sanctions order will continue the harm Southwest did by communicating it does not discriminate and that the civility policies it fired Carter for are enforceable, and (2) there is no public interest in subverting court orders.  The Court agrees with Carter.

On harm to others, the flight attendants the injunction protects will benefit from religious-liberty training for the attorneys who draft the relevant communications.  Without that training, Southwest has intentionally subverted the Court's notice.  Of course the flight attendants would benefit from a group that is trained to respect Title VII instead of undermine it.  That training benefits Carter as well, and not just because she is a flight attendant.  When imposing the injunction, the Court repeated Fifth Circuit language indicating that a plaintiff like Carter "takes on the mant[le] of the sovereign" with the purpose of "eliminat[ing] discrimination and recompens[ing] those who have suffered from it."[71]   But

---

[71] Doc. 374 at 2 (*quoting Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (cleaned up)).

Southwest has thwarted Carter for taking on that mantle.  In short, Carter and the flight attendants would benefit from the Court ordered religious-liberty training; and that training would also serve the public interest.

## IV. Conclusion

The Court **DENIES** Southwest's motion for a stay of the sanctions order pending appeal because (1) Southwest is unlikely to flip the verdict or sanctions order on appeal, (2) Southwest won't be irreparably harmed by religious liberty training, (3) religious liberty training won't harm others, and (4) the public interest is served with religious liberty training.

The Court's sanctions order initially set a deadline of August 28, 2023, for the training and September 5, 2023, for the certification that the training is complete and the notification sent.[72]  Per the parties' request, the Court administratively stayed those deadlines for 30 days, resulting in a training deadline of September 26, 2023, and a certification deadline of October 5, 2023.  The Court reminds the parties that it granted that administrative stay based on the representation that Southwest would file for a stay in the Fifth Circuit within 7 days of the date of this order.[73]

---

[72] Doc. 467 at 27–28.

[73] Doc. 471 at 1, 27.

**IT IS SO ORDERED** this 31st day of August, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE