# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### Dallas Division

| | |
|---|---|
| CHARLENE CARTER, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHWEST AIRLINES CO., AND TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, <br><br> Defendants. | Civil Case No. 3:17-cv-02278-X |

**PLAINTIFF CHARLENE CARTER'S REPLY TO SOUTHWEST AIRLINES CO.'S OPPOSITION TO HER MOTION FOR ATTORNEYS' FEES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

REPLY ARGUMENT AND AUTHORITIES ...............................................................1

     I.     Counsel's entries show their compensable time related to contempt proceedings..1

     II.    Carter's time preparing for and attending the hearing is not excessive or duplicative ................................................................................................2

     III.   Carter's contempt motion work was integral to the contempt proceedings............4

     IV.   Carter's time spent preparing the fees petition is reasonable ..................................9

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

Case                                                                                          Page(s)

*Agredano v. State Farms Lloyds*,

    Case No. 5:15-cv-1067-RCL, 2021 WL 4228340 (W.D. Tex. Sept. 16, 2021) .................5

*Alex v. KHG of San Antonio, L.L.C.*,

    125 F. Supp.3d 619 (W.D. Tex. 2015)...............................................................................10

*Black v. SettlePou P.C.*,

    No. 3:10-CV-1418-K, 2014 WL 3534991 (N.D. Tex. July, 17 2014)..............................10

*Chalmers v. City of Los Angeles*,

    796 F.2d 1205 (9th Cir. 1986) ...........................................................................................4

*City of Riverside v. Rivera*,

    477 U.S. 561 (1986).............................................................................................................9

*Cruz v. Hauck*,

    762 F.2d 1230 (5th Cir. 1985) .........................................................................................10

*DP Solutions, Inc. v. Rollins, Inc.*,

    353 F.3d 421 (5th Cir. 2003) .............................................................................................5

*Democratic Party of Wash. State v. Reed*,

    388 F.3d 1281 (9th Cir. 2004) ...........................................................................................4

*F.T.C. v. Gladstone*,

    450 F.2d 913 (5th Cir. 1971) .............................................................................................6

*Hollowell v. Orleans Reg'l Hosp., LLC*,

    217 F.3d 379 (5th Cir. 2000) .............................................................................................1

*Int'l Union, United Mine Workers of Am. v. Bagwell*,

    512 U.S. 821 (1994).............................................................................................................6

*James v. City of Dallas*,

    No. Civ. A. 3:98-CV-0436R, 2005 WL 954999 (N.D. Tex. Apr. 25, 2005)......................2

# TABLE OF AUTHORITIES

Case                                                                                          Page(s)

*Miller v. Raytheon*,

    Civil Action No. 3:09-CV-440-O, 2011 WL 13234115 (N.D. Tex. Sept. 15, 2011) ..........5

*Perkins v. New Orleans Athletic Club*,

    429 F. Supp. 661 (E.D. La. 1976) ........................................................................9

*Prater v. Com. Equities Mgmt. Co.*,

    No. H-07-2349, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008) .........................................10

*Turner v. Oxford Mgmt. Servs., Inc.*,

    552 F. Supp. 2d (S.D. Tex. 2008) ........................................................................3

*United States v. United Mine Workers of Am.*,

    330 U.S. 258 (1947) ........................................................................................6

*Valdepena v. Nuestro Sagardo Corazon Primary Home Care, Inc.*,

    Civil Action No. 5:19-CV-94, 2022 WL 12399309 (S.D. Tex. Sept. 15, 2022) ..............10

*Veasey v. Abbott*,

    Civil Action No. 2:13-CV-193, 2020 WL 988360 (S.D. Tex. May 27, 2020).................10

*Wolf v. Frank*,

    555 F.2d 1213 (5th Cir. 1977) ...........................................................................9


**Rules, Statutes, Other**

Fed. R. Crim. P. 42(a)(1)-(3) ...........................................................................6

Fed. R. Crim. P. 42(b)...................................................................................6

## REPLY ARGUMENT AND AUTHORITIES

Pursuant to the Court's August 7, 2023 Order,[1] Plaintiff Charlene Carter ("Carter"), by and through her undersigned attorneys, hereby files this Reply to Southwest Airlines Co.'s ("Southwest") partial opposition[2] to her attorneys' fees motion. The Court should deny Southwest's reductions because (I) Counsel's entries show their compensable time related to contempt proceedings; (II) Carter's time preparing for and attending the hearing is not excessive or duplicative; (III) Carter's contempt motion work was integral to the contempt proceedings; and (IV) Carter's time spent preparing the fees petition is reasonable.

## I.   Counsel's entries show their compensable time related to contempt proceedings.

The Court should not reduce by 30% Pryor's and Hill's 64.7 hours for block billing because the Court can review their time related to Contempt Proceedings.[3] When Southwest previously made block-billing objections in the Nevarez deposition matter, the Court concluded that a 30% reduction was appropriate for block-billed entries that "contain[ed] a significant number of *unrelated* tasks."[4] But the Court did not include entries *only* containing time related to the Nevarez matter in the block-billed entries it reduced.[5] Nearly all of Pryor's and Hill's entries contain *only* related tasks.[6] For the five entries containing both related and unrelated tasks, they already excluded all the time for unrelated tasks (entries not in bold).[7]

---

[1] Doc. 467 at 4 n.5, 14, 29, ¶4.
[2] Doc. 485. Southwest does not oppose Carter's expenses.
[3] Doc. 485 at 7-9, 19.
[4] Doc. 373 at 4 (emphasis added). *See also Hollowell v. Orleans Reg'l Hosp., LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (affirming an attorneys' fees award even though the billing records "lumped together" the time entries).
[5] Doc. 373 at 3 (citing Doc. 369-1 at 8; Doc. 369-2 at 7-10).
[6] Doc. 476-2 at 2 ¶5 (App.25) ("Time records on days in which no time was spent on contempt-related issues are not included in the Exhibit 2 chart."); Doc. 485 at 7-8.
[7] Doc. 476-2 at 2 ¶5 (App.25); Doc. 476-2 at 27-30 (App.48-51) (Pryor's 12/20 entry and Hill's 12/20, 12/28, 12/30, and 6/4 entries).

**II. Carter's time preparing for and attending the hearing is not excessive or duplicative.**

The Court should deny Southwest's demanded 50% reduction to Carter's 144.4 hours preparing for and attending the hearing because Southwest does not explain how Pryor's (48.2), Gilliam's (72.2) and Hill's (24.0)[8] time—mostly spent preparing—is excessive or duplicative.[9] First, Southwest did not object to Pryor's 48.2 hours preparing for and attending the hearing, so the Court should not reduce that time.[10]

Second, Southwest failed to support a 50% reduction to Gilliam's (72.2) and Hill's (24.0) hours mostly spent *preparing for* the hearing (96.2 total, not 144.4) because Southwest only explains an objection to the reasonableness of Gilliam's and Hill's 9 hours each *attending* the hearing.[11] "[T]he objecting party must explain how an entry is excessive or duplicative with 'detailed information explaining why or how the total number of hours or the rates are unreasonable.'"[12] Southwest does not give "detailed information explaining why or how" the "number of witnesses" and "duration of the hearing" make Gilliam's and Hill's time in their pre-hearing entries duplicative or excessive (i.e., Gilliam's time preparing arguments on the legal impact of evidence elicited at the hearing, Hill's time preparing hearing exhibits and document presentation, or their time spent on other tasks preparing for the hearing).[13] That only leaves Southwest's objection to the 9 hours that Gilliam and Hill each spent attending the hearing.[14]

---

[8] Contrary to Southwest's calculations, its exhibit reflects 24.0 hours for Hill's preparation for and attendance at the hearing, not 30.8 as Southwest claims. Doc. 485 at 10, 19; Doc. 486-7 at 2-6 (SWA App.14-18).

[9] Doc. 485 at 9-10.

[10] *Id*. at 9-10, 19; Doc. 486-7 at pp.2-6 (SWA App.14-18).

[11] Doc. 485 at 9-10.

[12] Doc. 373, p.4, 4 n.19 (quoting *James v. City of Dallas*, No. Civ. A. 3:98-CV- 0436R, 2005 WL 954999, at *2 (N.D. Tex. Apr. 25, 2005) (Buchmeyer, J.)).

[13] *James*, 2005 WL 954999, at *2; Doc. 486 at 2-6 (SWA App.14-18); Doc. 485 at 10.

[14] Doc. 485 at 10; Doc. 434, 464.

Third, the Court should not reduce Gilliam's and Hill's 9 hours attending the hearing because each of Carter's counsel performed distinct roles at the hearing, which were all necessary given the nature and seriousness of contempt proceedings.[15] While Pryor examined witnesses, Gilliam had to be present for the entire hearing in order to evaluate the legal impact of the evidence elicited to make closing arguments.[16] Gilliam, as lead counsel from the case's inception, was also necessary given his knowledge of case history, evidence produced, and his preparation for specific contempt-related legal arguments and issues.[17] Hill was also necessary during all of the proceedings for an effective presentation of evidence and exhibits, which required knowledge of the case and legal issues involved. Hill was also tasked with hearing strategy and evaluating the evidence from an appellate standpoint.[18]

Billing for multiple attorneys' involvement is permissible for work and matters in which their "input [i]s important and … appropriate for efficient and effective prosecution of th[e] litigation."[19] Despite Southwest's complaint that Carter brought three attorneys to the Show Cause hearing, it brought *five* attorneys,[20] including two appellate attorneys with extensive experience (both have argued before the United States Supreme Court in the last year), despite Andrew Ryan having the only significant speaking role.[21] Southwest cannot object to Carter claiming fees for three attorneys when it needed an even larger team and appellate attorneys for the hearing. While Southwest's evidence of hours expended by its five attorneys would be highly enlightening in revealing the reasonableness of the Carter attorneys' time attending trial, Southwest does not present any such

---

[15] Doc. 485 at 10.
[16] Doc. 456; Doc. 475 at 5.
[17] Doc. 475 at 5; Doc. 476-2 at 5, ¶13 (App.28).
[18] Doc. 475 at 5; Doc. 476-2 at 5, ¶17 (App.28).
[19] *See Turner v. Oxford Mgmt. Servs., Inc.*, 552 F. Supp. 2d 648, 652-53 (S.D. Tex. 2008).
[20] Show Cause Hearing (Vol. 2, July 20, 2023) Tr. 213:18-22.
[21] Docs. 458, 459.

evidence.[22] Carter needed the attendance of its small litigation team at each hearing both for efficacy at the hearings and the overall efficient handling of the case.

### III. Carter's contempt motion work was integral to the contempt proceedings.

Carter does not contest Southwest's request to reduce by 50% Carter's 42.8 hours spent on the contempt motion reply brief, and agrees to modify her request accordingly.[23] But the Court should deny Southwest's reductions to Carter's motion to compel documents (70%),[24] response to May 12 brief (50%),[25] and motion to compel witnesses/subpoena work (75%) ("Contempt Motion work").[26] Southwest agreed to "reimburse [Carter] for *all* her reasonable attorneys' fees connected to the Motion for Contempt and Motion to Compel proceedings."[27] That included Carter's motion to compel documents,[28] her response to the May 12 brief, and her motion to compel witnesses/subpoena work, which are all "connected to the Motion for Contempt … proceedings."[29]

The Court should deny Southwest's attempt to parse, segregate, and subtract time spent on particular issues or motions that it incorrectly characterizes as unsuccessful because Carter succeeded on the contempt motion.[30] Courts are not required to segregate and subtract the time

---

[22] *Cf. Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986) (describing such counter affidavits regarding the amount of time expended as "helpful"); *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

[23] Doc. 485 at 15, 19.

[24] *Id*. at 10-13.

[25] *Id*. at 14-15.

[26] *Id*. at 16-18.

[27] Doc. 419 at 5 (emphasis added). The Court also "granted the motion to compel" and "awarded Carter sanction fees related to motion to compel proceedings. Doc. 467 at 14.

[28] As this Court observed, "[t]he motion to compel involves Carter's request to compel Southwest to produce documents regarding the sanctions motion." Doc. 467 at 14 n.48.

[29] Doc. 419 at 5.

[30] Doc. 467. Southwest fails to explain with detailed information that Carter's time spent on Contempt Motion work was excessive. Instead, Southwest, notwithstanding its agreement, now backtracks, arguing mainly that the Contempt Motion work is excessive because Carter obtained "minimal success" or devoted time to "meritless arguments." Doc. 485 at 10, 13, 17.

spent on each issue or motion even if unsuccessful.[31] "[A] party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim."[32]

Carter succeeded on her contempt motion and request for a Show Cause Hearing Order and pre-hearing discovery.[33] The Court issued a Contempt Order finding willful violations,[34] *Ex Parte* Addendum Orders,[35] and sanctions against Southwest to coerce its compliance.[36] While Southwest asserts that courts may refuse to award attorneys' fees for unsuccessful motions, those cases show courts denying fees for "unnecessary" unsuccessful motions, including some that were voluntarily withdrawn.[37] The Contempt Motion work was a necessary part of the success on Carter's contempt motion, and she was entitled to make those arguments.[38] Carter's Contempt Motion work was necessary to elicit evidence of Southwest's contempt, and secure the Contempt Order.

*First, Carter's motion to compel documents was integral to the contempt proceedings' success, showing Southwest's willful violations of the notice order, and determining appropriate sanctions.* Southwest cloaked its contempt-related communications in privilege.[39] Without Carter's motion, Southwest would not have voluntarily offered to submit its privileged documents *in camera*.[40] The

---

[31] *See Miller v. Raytheon*, Civil Action No. 3:09-CV-440-O, 2011 WL 13234115, at *4 (N.D. Tex. Sept. 15, 2011) (citing *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003)).

[32] *DP Solutions, Inc.*, 353 F.3d at 434.

[33] Doc. 467; Doc. 382 at 17, 17 ¶¶1-3; Doc. 408 at 1-2, 2 ¶¶1-3.

[34] Doc. 467 at 11, 16, 20, 22.

[35] Doc. 468, 469.

[36] Doc. 467.

[37] Doc. 485 at 7 (citing *Agredano v. State Farms Lloyds*, Case No. 5:15-cv-1067-RCL, 2021 WL 4228340, at *8 (W.D. Tex. Sept. 16, 2021).

[38] *See Miller*, 2011 WL 13234115, at *4.

[39] Doc. 412-1 at 2-4.

[40] Contrary to Southwest's characterizations, Southwest's *in camera* production was not "pointless." Doc. 485 at 12. Carter did not utilize privileged materials at the contempt hearing because Southwest asserted privilege, and Carter could not access them. *Id.* But the Court considered these documents with all of the other evidence as part of determining that Southwest willfully violated the court order. *See e.g.*, Doc. 467 at 11.

5

Court considered the *in camera* evidence, and ultimately concluded that Southwest willfully violated the Court's order.[41]

Carter's crime-fraud exception arguments were integral to showing Southwest's *willful* violation of the notice order and the appropriate of sanctions.[42] Southwest's Recent Court Decision notice, IIOTG Memo, and other evidence required that Carter address Southwest's willful and intentional violation of the Court's order, its misrepresentations to flight attendants, and the likelihood that its privileged communications contained more of such evidence.[43] Willful and intentional violations can support punitive fines.[44] "[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved."[45] Even if the Court did not fine Southwest, Carter's motion resulted in a decision that Southwest willfully violated the notice order, advanced contempt proceedings' investigation of Southwest's contempt, elicited evidence, and determined appropriate sanctions.[46]

Southwest also complains about Gilliam's motion to compel research and preparation prior to Southwest's April 28 production, but its privilege assertions, privilege log revisions, and the need

---

[41] Doc. 467 at 11 ("The *in camera* documents with privileged information indicate [the] decision was willful—not accidental.").

[42] Doc. 467 at 11, 16, 20, 22; Doc. 411 at 15-21.

[43] Doc. 411 at 15-21.

[44] *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947).

[45] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

[46] Doc. 467 at 13 (considering "the willfulness of the contemnor in disregarding the court's order" to determine the appropriate sanction). Courts may initiate criminal contempt proceedings when they observe criminal contempt, and Southwest overstates what is necessary for criminal contempt proceedings. *See United Mine Workers of Am.*, 330 U.S. at 296-301; *F.T.C. v. Gladstone*, 450 F.2d 913, 916 (5th Cir. 1971); Doc. 485 at 11-12. Nothing prevented the Court from initiating proceedings for the purposes of imposing a punitive fine on Southwest if it observed evidence (including *ex parte* evidence) of willful or intentional violations that it concluded warranted a punitive remedy. Fed. R. Crim. P. 42(a)(1)-(3); Fed. R. Crim. P. 42(b) ("Notwithstanding any other provision of these rules, the court … may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies[.]").

to focus evidentiary issues prior to the Court's May 5 deadline to address the impact of Southwest's evidence, confirmed that advance work was necessary.[47]

*Second, Carter's response to Southwest's May 12 brief was also integral to the contempt proceedings' success and necessary because Southwest filed its May 12 brief without the Court's leave and required Carter to address Southwest's arguments for different remedies short of Carter's requested relief, its gallows conversion, and its non-impact on appropriate sanctions and willful violations.*[48] Carter's arguments regarding civil and punitive fines for Southwest's willful violations related to the appropriateness of sanctions.[49] Southwest also objects to Carter's arguments regarding *ex parte* questioning, which only comprised a third of one page.[50] As shown, the Court should not parse out every single argument where Carter ultimately prevailed with a Contempt Order against Southwest, who also agreed to pay contempt-related fees.[51]

The Court should also deny Southwest's request to reduce by 75% Carter's 16.5 hours spent on her unopposed motion for leave to file her brief in response to Southwest's May 12 brief.[52] Gilliam's 5/14 entry (9.7 hours) and Pryor's 5/14 and 5/15 entries include time spent on the motion for leave to file as well as the substantive response brief itself, both of which are recoverable.[53]

---

[47] Doc. 408 at 2; Doc. 411 at 24-26; Doc. 485 at 11; Docs. 412-3; 412-2 at 2-3; 412-1. Southwest notes that Gilliam "spent 7.8 hours [on 4/28] analyzing Southwest's production and privilege log and *researching and drafting a motion to compel production*," and suggests that Gilliam's time was incorrect because there was not enough time to do the things he said he was doing after Southwest's 5:24 p.m. EST production. Doc. 485 at 11. What Gilliam's log actually shows on 4/28 is that he spent 10.4 hours doing numerous different activities that day, but only 2.0 hours "reviewing Southwest show cause document production and analyzing SWA privilege log" (Doc. 476-1 at 13 (App.12), which Gilliam did (and had plenty of time to do) after Southwest's 5:24 p.m. production.

[48] Doc. 420 at 1-3; Doc. 428.

[49] Doc. 428 at 5-10; *see also supra* at 6, 6 n.46.

[50] Doc. 428 at 4.

[51] *Supra* at 4-5.

[52] Doc. No. 485 at 13-14.

[53] Doc. 476-1 at 15-16 (App.14-15); Doc. 476-2 at 28 (App.49).

Southwest did not otherwise argue that Carter's time for the response brief was excessive.[54]

    *Third, Carter's motion to compel witnesses and preparation of subpoenas for the Show Cause evidentiary hearing was integral to the contempt proceedings' success because Southwest refused to make available[55] the employees it identified as "involved in preparing the notices."*[56] Before Carter filed her contempt motion, she informed Southwest that she would request a show cause hearing at which witnesses would testify,[57] which the Court ordered.[58] To avoid producing witnesses, Southwest argued that the Show Cause hearing order did not contemplate them, but the order clearly *did* contemplate examining the employees "involved."[59] The Court should award Carter's fees for subpoena work because she attempted to subpoena Southwest's identified employees before seeking court intervention.[60] When Southwest refused to make those employees' available for service and refused to accept service, Carter sought court intervention,[61] and the Court ordered Southwest to respond to Carter's motion.[62] While the Court only granted Carter's motion in part,[63] the motion narrowed the necessary witnesses, all of which confirms the necessity of Carter's motion.[64] Southwest also argues that Carter's motion and subpoenas were unnecessary

---

[54] Doc. 485 at 14-15.

[55] Doc. 416 at 6; Doc. 417-1 at 3 (App.2).

[56] Doc. 410 at 1-2; Doc. 408 at 2 ¶1; Doc. 416 at 6; Doc. 485 at 16.

[57] Doc. 383-1 at 6. Carter's contempt motion requested that the Court "hold a show cause evidentiary hearing at which all persons [who Southwest identified] must be present, regarding why those Southwest officials and counsel who intentionally caused the company's violations of the Court's order should not be subject to monetary and other sanctions for intentionally violating the Court's order." Doc. 382 at 17.

[58] Doc. 408 at 2.

[59] Doc. 382 at 17; Doc. 408 at 1-2; Doc. 416 at 3; Doc. 414 at 2.

[60] Doc. 416 at 3-4, 6.

[61] *Id.*

[62] Doc. 423 at 3.

[63] Doc. 427.

[64] *Id.* Contrary to Southwest's suggestions, the Court did not order witnesses to appear until after Carter's motion. Doc. 416; Doc. 423 at 3; Doc. 485 at 16; Doc. 427.

because Carter should have relied unquestioningly on its representation that McKeeby and Maberry were the only necessary witnesses, and they would appear at the hearing.[65] But the evidence showed that was far from the truth. The Court found that Kevin Minchey (the author of the "does not" discriminate notice)[66] and Kerrie Forbes, also willfully violated the Court's notice order.[67] Without Carter's motion, Southwest would not have produced Minchey or Forbes.

While Southwest now complains about Carter's Contempt Motion work, its willful conduct made the work necessary. Southwest cannot willfully violate a court order and then complain about the work it forced Carter's attorneys to perform in order to enforce it,[68] especially where Carter told Southwest everything she would be seeking to enforce compliance with the Court's orders and gave Southwest an opportunity to voluntarily comply.[69] Southwest refused to correct its notices, ignored Carter's concerns, and insisted on militantly defending its willful violations.[70]

## IV. Carter's time spent preparing the fees petition is reasonable.

The Court should deny Southwest's 50% reduction to Carter's 38.5 hours for preparing the fees petition.[71] "When a plaintiff is awarded reasonable attorneys' fees, the plaintiff is also entitled to an award of reasonable attorneys' fees in connection with the time spent to prepare the fee

---

[65] Doc. 485 at 16.

[66] Show Cause Hearing (Vol 2) Tr. 232, 234; Doc. 467 at 5, 5 n.9.

[67] Doc. 467 at 22. Astonishingly, Southwest suggests that no Southwest attorney witnesses were relevant to contempt proceedings: "In holding Southwest in contempt, the Court based its ruling *not on the musings of counsel regarding the internal deliberations with respect to the Notices.* Rather, the Court made its contempt order based on the written arguments and the content of the disputed Notices." Doc. 485 at 17 (emphasis added). Southwest seems to forget that the Court issued an *ex parte* addendum order addressing *ex parte* evidence and testimony about how Southwest and its attorneys willfully violated the Court's order. Doc. 467 at 16-22; Docs. 468-69.

[68] *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (citation omitted).

[69] Doc. 383-1.

[70] *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required" by the other side); Doc. 383-6.

[71] Doc. 485 at 18, 19.

application."[72] While preparing fees petitions may not require "over two weeks of time from []

experienced attorneys[,]"[73] Carter's 38.5 hours, which is not "over two weeks," is comparable to

other such fee awards.[74] Although Carter is entitled to do so, she is not requesting fees for the

additional time expended after Southwest's response, including preparing this reply.[75]

## CONCLUSION

For the foregoing reasons, the Court should award Carter, and order Southwest to pay the

National Right to Work Legal Defense Foundation, Inc., a reduced[76] total of $172,745.55, which

includes $168,792.00 in further discounted attorneys' fees. Southwest did not contest Carter's

request for $3,335.40 in expenses, and $618.15 in costs.

Dated: September 25, 2023                    Respectfully submitted,


                                             /s/ Matthew B. Gilliam
                                             Mathew B. Gilliam (*admitted pro hac vice*)
                                             New York Bar No. 5005996
                                             *mbg@nrtw.org*
                                             c/o National Right to Work Legal Defense
                                             Foundation, Inc.
                                             8001 Braddock Road, Suite 600
                                             Springfield, Virginia 22160
                                             Tel: 703-321-8510

---

[72] *See Prater v. Com. Equities Mgmt. Co.*, No. H-07-2349, 2008 WL 5140045, at *7 (S.D. Tex. Dec. 8, 2008); *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985).

[73] *Black v. SettlePou P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *8 (N.D. Tex. July, 17 2014) (citations omitted).

[74] *See Prater*, 2008 WL 5140045, at *3 (reducing a 46.8 hour request to 30 hours); *Valdepena v. Nuestro Sagardo Corazon Primary Home Care, Inc.*, Civil Action No. 5:19-CV-94, 2022 WL 12399309, at *7 (S.D. Tex. Sept. 15, 2022) (declining to reduce a 28.5 hour request); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp.3d 619, 628 (W.D. Tex. 2015) ("[Defendant's] insistence on fighting plaintiffs tooth and nail in this litigation and in this fee motion … including [] with incredulous arguments … leaves the Court unsympathetic to its argument that plaintiffs spent too much time preparing their fee application.") (finding 21.6 hours reasonable).

[75] *See Veasey v. Abbott*, Civil Action No. 2:13-CV-193, 2020 WL 988360, at *21 (S.D. Tex. May 27, 2020) ("Ordinarily, this is compensable time." (citing *Cruz*, 762 F.2d at 1234 )).

[76] As stated, Carter modifies the fees request in accordance with Southwest's request to reduce by 50% ($7,571.00) Carter's 42.8 hours spent on the contempt motion reply brief. *Supra* at 4; Doc. 485 at 15.

Fax: 703-321-9319

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343


*Attorneys for Plaintiff Charlene Carter*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023 I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF System, which will send notification of such filing to all appearing parties and counsel using the Court's electronic system.

**By: /s/ Matthew B. Gilliam**
