# United States Court of Appeals
# for the Fifth Circuit

---

No. 23-10008
CONSOLIDATED WITH
No. 23-10536

---

United States Court of Appeals
Fifth Circuit
**FILED**
June 7, 2024
Lyle W. Cayce
Clerk

CHARLENE CARTER,

*Plaintiff—Appellee/Cross-Appellant*,

versus

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA; SOUTHWEST AIRLINES COMPANY,

*Defendants—Appellants/Cross-Appellees*,

---

CONSOLIDATED WITH

---

No. 23-10836

---

CHARLENE CARTER,

*Plaintiff—Appellee*,

versus

SOUTHWEST AIRLINES COMPANY,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:17-CV-2278, 3:17-CV-2278,
3:17-CV-2278

_____

UNPUBLISHED ORDER

Before CLEMENT, ENGELHARDT, and WILSON, *Circuit Judges*.

PER CURIAM:

On August 7, 2023, the district court held Southwest Airlines in contempt for failing to comply with a Title VII judgment and ordered company lawyers to attend "religious-liberty training" as a sanction. Southwest moved for a stay pending appeal on September 6, 2023. We granted Southwest a temporary administrative stay on September 25, 2023, and carried the motion for a stay pending appeal with the cases. Today, we GRANT Southwest's motion for a stay pending appeal because the order likely exceeded the district court's civil contempt authority.

I.

A jury found that Southwest Airlines violated Title VII and the Railway Labor Act by firing flight attendant Charlene Carter because of her religion; specifically, for publicly posting and privately messaging to another Southwest flight attendant images of aborted fetuses in furtherance of her religious beliefs. As part of its judgment, the district court ordered Southwest to, among other things, post the verdict and judgment on company bulletin boards and to email the same to all flight attendants, informing them of their Title VII and RLA rights (the "notice requirement").[1]

---

[1] The district court also enjoined Southwest "from discriminating against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion" and "from

23-10008
c/w Nos. 23-10536, 23-10836

To comply with the judgment, Southwest reinstated Carter, posted the verdict and judgment in all flight-attendant breakrooms, and emailed all flight attendants the verdict and judgment. The email stated that "a federal court in Dallas entered a judgment against Southwest" and "ordered us to inform you that Southwest does not discriminate against our Employees for their religious practices and beliefs." Southwest also published an internal memo stating that Southwest believed Carter's messages were "inappropriate, harassing, and offensive," "extremely graphic," and "in violation of several Company policies." The memo further stated that, although Southwest would implement the judgment, Southwest was "extremely disappointed with the court's ruling and [was] appealing the decision to the Fifth Circuit Court of Appeals."

Carter moved the district court to hold Southwest in contempt, arguing that these communications—the email and memo—violated the judgment. Carter contended that the email violated the judgment because it said that Southwest "does not discriminate" rather than "may not discriminate," which was the language the court's order required. As for the memo, Carter claimed that it demonstrated that Southwest could continue to discriminate against flight attendants' religious beliefs and practices. The district court agreed that Southwest had violated the notice requirement and therefore held Southwest in contempt. As contempt sanctions, the district court directed Southwest to circulate a statement—verbatim—to its flight attendants "to set the record straight" and ordered three of Southwest's in-

_____

failing to reasonably accommodate Southwest flight attendants' sincerely held religious beliefs, practices, and observances."

house lawyers to attend religious-liberty training with the Alliance Defending Freedom.[2]

## II.

The court "consider[s] four factors in deciding a motion to stay pending appeal: (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 566 (5th Cir. 2020) (per curiam) (quoting *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014)). "The first two factors . . . are the most critical." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

As for the first factor, Southwest is likely to succeed on the merits in at least one respect:[3] there is a strong likelihood that the contempt order exceeded the district court's civil contempt authority.

There are two types of contempt: criminal and civil. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994). "The first duty of an appellate court in reviewing a contempt judgment is to

---

[2] The Alliance Defending Freedom is "a nonprofit, public-interest legal organization that provides litigation services, funding, and training to protect First Amendment freedoms and other fundamental rights."

[3] Southwest also attacks the judgment underlying the contempt order. *See Cliett v. Hammonds*, 305 F.2d 565, 570 (5th Cir. 1962) ("[C]ivil contempt falls with the order if [the order] turns out to have been erroneously or wrongfully issued."); *accord In re Ramirez,* 605 F. App'x 361, 363 (5th Cir. 2015) ("[I]t is a well established principle that an order of civil contempt cannot stand if the underlying order on which it is based is invalid."). Because we find that the district court likely exceeded its civil contempt authority in sanctioning Southwest, we need not address the merits of the underlying judgment today. We also need not reach whether the district court abused its discretion in finding that Southwest failed to comply with the notice requirement.

Case: 23-10008   Document: 232-1   Page: 5   Date Filed: 06/07/2024
Case 3:17-cv-02278-X   Document 489   Filed 06/07/24   Page 5 of 9   PageID 16830

23-10008
c/w Nos. 23-10536, 23-10836

determine whether the nature of the contempt proceeding was civil or criminal." *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980).

A court's civil contempt power "is not a broad reservoir of power, ready at an imperial hand"—instead, it is "a limited source; an implied power squeezed from the need to make the court function." *In re U.S. Bureau of Prisons*, 918 F.3d 431, 438 (5th Cir. 2019). Civil contempt sanctions are "remedial" and "designed to compel future compliance with a court order" by either "coerc[ing] the defendant into compliance with the court's order" or "compensat[ing] the complainant for losses sustained" as a result of the noncompliance. *Bagwell*, 512 U.S. at 827, 829; *Boylan v. Detrio*, 187 F.2d 375, 378 (5th Cir. 1951) ("Civil contempt proceedings are remedial and coercive, not punitive, in their nature, they look only to the future. They are not instituted as punishment for past offenses[.]"). Criminal contempt sanctions, by contrast, are used to "punish defiance of the court and deter similar actions." *In re Stewart*, 571 F.2d 958, 964 (5th Cir. 1978). Generally, "criminal [contempt] penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Bagwell*, 512 U.S. at 826. Whether a contempt order is civil or criminal turns on the "character and purpose" of the sanction involved. *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911).

Southwest argues that the district court abused its civil contempt power in requiring Southwest's in-house lawyers to attend "religious-liberty training, which neither secures compliance with an order nor compensates Carter for any noncompliance." Per Southwest, "the only permissible sanctions [after a civil-contempt finding] were requiring a new 'may not discriminate' email and awarding Carter contempt-related attorneys' fees, because those are the least-restrictive means of ensuring compliance with the judgment and compensating Carter." *See Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) ("If there is a reasonable

5

23-10008
c/w Nos. 23-10536, 23-10836

probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.").

We agree with Southwest that "religious-liberty training" will not compel compliance with the order nor compensate Carter. To start, "[c]ivil contempt differs from criminal contempt in that it seeks only to coerc[e] the defendant to do what a court had previously ordered [it] to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011) (internal quotation marks and citation omitted). Because the court did not previously order Southwest's lawyers to attend religious-liberty training, we are skeptical that it can do so in the civil contempt context.

Moreover, "the beneficiary of civil contempt is the *individual litigant*." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) (emphasis added). But here, Carter receives no apparent benefit from the training requirement. The three attorneys ordered to attend training were not involved in the decision to terminate Carter and do not supervise Carter, and there was no evidence adduced at trial that they, personally, hold animus against Carter or her beliefs. *See In re Stewart*, 571 F.3d at 964 n.4 ("[A] contempt [sanction] is considered civil only when the punishment is wholly remedial."). Additionally, the training was not limited to *Title VII* training but rather encompassed *all* religious-liberty training, which could include topics like the First Amendment and the Religious Freedom Restoration Act that are irrelevant to securing compliance with a Title VII judgment. So, the mandatory training plainly is not the least restrictive means of remedying Southwest's non-compliance. *See Nat. Gas Pipeline*, 86 F.3d at 467.

Carter argues that courts regularly require legal training "in the relevant subject area" to support her claim that "Title VII training" secures Southwest's compliance with the order. This is true, but such mandatory training is at least in part a *punitive remedy* and therefore not a civil contempt

23-10008
c/w Nos. 23-10536, 23-10836

sanction. Specifically, the cases that Carter cites concern punishments under Federal Rules of Civil Procedure 11 and 16(f), which serve a "much different purpose" than civil contempt—"to punish." *Edmonds v. Seavey*, 379 F. App'x 62 (2d Cir. 2010); *Roy v. Am. Pro. Mktg.*, 117 F.R.D. 687 (W.D. Okla. 1987))**.**; *see also Willy v. Coastal Corp.*, 503 U.S. 131, 138–39 (1992).

Indeed, looking to the "character and purpose" of the district court's contempt order, it is at least partially "punitive" in that it could be read as seeking to punish Southwest for flouting the judgment. *See Bagwell*, 512 U.S. at 831 ("[T]he contempt power . . . uniquely is liable to abuse." (internal quotation marks and citation omitted)). For instance, the district court repeatedly emphasized that Southwest's conduct was "willful." But while "criminal contempt requires [a] willful, contumacious, or reckless state of mind," intent is "unimportant to civil contempt." *Sullivan*, 611 F.2d at 1052 (internal quotation marks and citation omitted). Additionally, the district court announced that it was seeking to "devise its remedies in this case to vindicate the policies of Title VII." Again, while this sort of "public interest" consideration is permissible in the criminal-contempt context, *see United States v. United Mine Workers of America*, 330 U.S. 258, 303 (1947), it is inappropriate in the context of civil contempt.

At bottom, it appears that the district court sought, at least in part, to punish Southwest for what the district court viewed as conduct flouting its holding that Southwest had violated Title VII. But its punitive sanctions likely exceed the scope of the court's civil-contempt authority.

The other factors we consider in assessing whether a stay pending appeal is appropriate also weigh in Southwest's favor. Southwest would likely suffer an irreparable harm "in the form of a criminal [punishment] imposed without the necessary due-process protections." *See M.D. v. Abbot*, No. 24-40248, 2024 WL 2309123, at *5 (5th Cir. May 20, 2024). The training likely

7

23-10008
c/w Nos. 23-10536, 23-10836

burdens their liberty interests too, as the injury of being forced into the training could not be undone. *See BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*, 17 F.4th 604, 618 (5th Cir. 2021). "It is the likely unconstitutional nature of the [punishment] that renders the harm it causes to [Southwest] irreparable." *M.D.*, 2024 WL 2309123, at *5.

As to the public interest factors, "[t]he equities favor a stay if it would benefit the defendants more than it would harm the nonmovants." *Robinson v. Ardoin*, 37 F.4th 208, 228 (5th Cir. 2022). Whether the training would benefit Carter is rather speculative. The Southwest attorneys, on the other hand, would likely suffer a violation of their constitutional rights. The equities therefore weigh in Southwest's favor.

For the foregoing reasons, we GRANT Southwest's request for a stay of the religious-liberty-training contempt sanction pending appeal.

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 07, 2024

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

```
No. 23-10008    Carter v. Local 556
                USDC No. 3:17-CV-2278
                USDC No. 3:17-CV-2278
                USDC No. 3:17-CV-2278
```

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Casey A. Sullivan, Deputy Clerk
504-310-7642

Mr. Ryan L. Bangert
Mr. John J. Bursch
James A. Campbell
Mr. Gregory Logan Chafuen
Mr. Milton L. Chappell
Mr. Shay Dvoretzky
Mr. Matthew Brandon Gilliam
Mr. Adam S. Greenfield
Mr. Samuel Troxell Grover
Mr. Matthew D. Hill
Mr. Steven Marcus
Mr. Paulo B. McKeeby
Mr. Anton Metlitsky
Ms. Karen S. Mitchell
Mr. Brian K. Morris
Mr. Bobby G. Pryor
Mr. Parker Andrew Rider-Longmaid
David Watkins