**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| CHARLENE CARTER, | § § § § § | |
| Plaintiff, | | |
| vs. | § | Civil Action No. 3:17-cv-2278-x |
| | § | |
| TRANSPORT WORKERS UNION OF AMERICA, LOCAL 556, and SOUTHWEST AIRLINES CO., | § § § § | |
| Defendants. | § § | |

**SOUTHWEST'S SECOND BRIEF IN RESPONSE TO
THE POST-REMAND CALL FOR BRIEFING**

Southwest hereby files its second brief required by the Court's Post-Remand Call for Briefing (ECF No. 503) (the "Order"). This brief rebuts the Response to the Post-Remand Call for Briefing (ECF No. 508) ("Response") filed by Ms. Carter.

**A. Ms. Carter Ignores Southwest's Apology and New Compliance Process for Future Injunctions.**

The Order advised Southwest that it "would give the Court the assurance it needs" that a "decision to undermine a court order will not occur again" if the airline would "acknowledge its mistake, apologize, and explain concrete steps to ensure such a mistake does not happen again." ECF No. 503 at 3-4. Southwest did exactly as the Court asked. It admitted and acknowledged its mistake. *See* ECF No. 504 at 1-2. It "apologize[d] to the Court, Ms. Carter, and all involved for its failure to fully comply with the injunction." *Id*. at 2. And Southwest explained a new three-step process to comply with any future injunctions, including seeking its lead counsel's advice

and, if necessary, direction from "an independent third party (whether another law firm or retired judge)." *Id*. at 3-4.

As to Southwest's apology, Ms. Carter's Response neither accepts nor acknowledges it. Still, Southwest stands by its apology. As to future compliance, the Response does not dispute that Southwest's new compliance process will ensure that "undermin[ing] a court order will not occur again." ECF No. 503 at 3-4. The Order's stated need for Ms. Carter's additional input therefore no longer exists. After all, the Order states that the three "questions" addressed in Ms. Carter's Response will "arise" only "[i]f Southwest fails to give the Court the assurance it needs." *Id*. at 4. Her Response elides this plain language by twice mischaracterizing the assurance Southwest was asked to provide.

*First*, Ms. Carter declares that Southwest must allay her fear that it "will engage in future religious discrimination." ECF No. 508 at 10. Not so. The Order expressly describes the Court sought "assurance" that Southwest would not again "undermine a court order." ECF No. 503 at 4. To make this point, the Order cited the Fifth Circuit analysis of Southwest's noncompliance with the injunction. *Id*. at n.11 (citing *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 503 (5th Cir. 2025)). The Fifth Circuit did not hold that Southwest could avoid additional sanctions only by preventing "future religious discrimination." ECF No. 508 at 10. Instead, the Fifth Circuit directed that any "new sanction must be" both "narrowly tailored" in this case and "the least restrictive means of achieving substantial compliance with the district court's order." *Carter*, 156 F.4th at 505. Because Southwest has both apologized and implemented a plan to ensure future compliance, Southwest has taken the steps outlined in the Order and given the Court the assurance it requested.

*Second*, Ms. Carter states that she "was unconvinced" and "unpersuaded by Southwest's assurances." ECF No. 508 at 2. But the Order listed the assurances the Court required of Southwest: "acknowledge it mistake, apologize, and explain concrete steps to ensure such a mistake does not happen again." ECF No. 503 at 3-4. Southwest provided those assurances. Besides citing the Court's prior contempt ruling, the Response does not explain why Southwest's apology and new compliance process are inadequate. In any case, it is the Court—and not Ms. Carter—that must decide whether Southwest has assured the Court that it will not again "deci[de] to undermine a court order." ECF No. 503 at 4. The Order makes plain what the Court required, and Southwest did what the Court asked. Thus, all that remains is what "new sanction," if any, is necessary to ensure "substantial compliance with the district court's order." *Carter*, 156 F.4th at 505.

> **B.    The Court Should Not Order Southwest to Submit a Video Notice with Commentary, an Apology, and Statements that Were Not Part of the Prior Judgment.**

In its original contempt ruling, this Court crafted a new Email Notice for Southwest to send:

> The United States District Court for the Northern District of Texas ordered Southwest to issue the following statement to you:
>
> On December 20, 2022, Southwest's Legal Department issued an e-mail to all flight attendants entitled "Recent Court Decision" regarding a federal court judgment against Southwest and Transport Workers Union, Local 556. That e-mail said, "[t]he court...ordered us to inform you that Southwest does not discriminate against our Employees for their religious practices and beliefs." The United States District Court for the Northern District of Texas subsequently found that the statement's use of "does not discriminate" was incorrect.
>
> Accordingly, the Court has ordered Southwest's Legal Department to issue the following amended statement:

> Under Title VII, Southwest may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion.

*Carter v. Transp. Workers Union of Am., Local 556*, 686 F. Supp. 3d 503, 510 (N.D. Tex. 2023); *see also id*. at 519. Southwest agrees to send this exact notice.[1]

This Court must adopt the "least restrictive" and most "narrowly tailored" sanction to "remed[y]" Southwest's civil contempt. *Carter*, 156 F.4th at 505. The Court's corrected notice would "remedy" its holding of "Southwest in civil contempt." *Carter*, 686 F. Supp. 3d at 510. Thus, there is no basis for Ms. Carter to suggest any modifications to the Court's statement. Even so, her Response asks for a notice different in four main respects. None is justified.

*First*, she wants Mr. Minchey to create and "distribute a video to Southwest's flight attendants" along with a corrected Email Notice. ECF No. 508 at 2 & 10. That is plainly not the least restrictive remedial sanction. Because a written statement will work, a video is unnecessary. And the Court has already determined that is will not "mandat[e] that Minchey publicly proclaim the errors of his ways." *Carter*, 686 F. Supp. 3d at 518. There is no reason for the Court to backtrack on its ruling.[2]

*Second*, Ms. Carter wants the revised notice to include language from other Court orders, including the characterization that Southwest believes that its "mandatory civility policies justified" religious discrimination, "Title VII be damned." ECF No. 508 at 9 (citing *Carter v.*

---

[1]    The Court expressed concern that Southwest would send another In-Flight On-the-Go Memo to accompany the corrected Email Notice. It will not. The corrected notice will be sent out as a standalone message.

[2]    The Response notes that Mr. Minchey was promoted "around the time that Southwest defied this Court's order," implying that the company rewarded him for Southwest's noncompliance. ECF No. 508 at 4. That is not accurate. Mr. Minchey was promoted to Southwest's Vice President of Legal, Labor & Litigation, on December 1, 2022, before the Email Notice was sent. In fact, if he had not already been promoted, he would have had no role in the drafting or transmission of the Email Notice. When Mr. Minchey was promoted to Southwest's Vice President, Deputy General Counsel in April 2025, the Court's contempt ruling had been stayed, the underlying judgment was on appeal, and Southwest had a good-faith basis to believe it would prevail (in whole or in part).

*Transp. Workers Union of Am., Local 556*, No. 3:17-CV-2278-X, 2023 WL 7273739, at \*1 (N.D. Tex. Aug. 31, 2023)).  Again, this is not the least restrictive remedial sanction.  The Court's prior order of a corrected notice approved stating simply that Southwest's "use of 'does not discriminate' was incorrect."  *Carter*, 686 F. Supp. at 510.  Ms. Carter did not appeal this order. Nor does she contest that this corrected notice would remedy Southwest's civil contempt.  Because it would, Ms. Carter's proposed language is "plainly not the least-restrictive means of remedying Southwest's non-compliance."  *Carter*, 156 F.4th at 504 (citing *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) ("If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.")).

*Third*, Ms. Carter asks that any "admission" that Southwest's prior Email Notice was incorrect must include "an apology for sending the statements."  ECF No. 508 at 9.  But the Court already rejected Ms. Carter's "request[ ]" that "a compelled communication" must "include[ ] an apology," expressly stating: "the Court is not requiring Southwest to apologize."  *Carter*, 686 F. Supp. at 518.  There is no need for the Court to revisit its ruling.  That is especially true since Southwest has already publicly "apologize[d] to the Court, Ms. Carter, and all involved for its failure to comply fully with the injunction."  ECF No. 504 at 2.

*Fourth*, Ms. Carter asks the statement include three components: "(1) a jury found Carter's firing to be unjustified; (2) Southwest's mandatory civility policies did not justify a violation of Title VII; and (3) Title VII forbids Southwest from discriminating against Southwest flight attendants for their religious practices and beliefs."  ECF No. 508 at 9.  Because the Court's corrected notice already includes the third component, Southwest does not object to it.  But the first two components are again not the least restrictive means of ensuring Southwest's compliance with the judgment.  Southwest was never ordered to make statements that Ms. Carter's firing was

unjustified or about the airline's civility policies.  Ms. Carter's requested additions to the Court's statement thus "exceed the scope of a federal court's civil contempt authority" because they do not "coerce the airline's compliance with the district court's judgment."  *Carter*, 156 F.4th at 505.

For all these reasons, the Court should order Southwest to issue the corrected Email Notice from its original contempt order, not the video statement and additional commentary that Ms. Carter requests.

### C.    A Criminal Contempt Proceeding is Not Warranted.

A criminal contempt proceeding against Mr. Minchey, Ms. Forbes, and Mr. Maberry, is not warranted for at least five reasons.

*First*, the Order stated that whether "a criminal contempt proceeding [is] the appropriate path" would be explored only "[i]f Southwest fails to give the Court the assurance it needs." ECF No. 503 at 4.  Southwest has given the Court the assurance it requested and remains willing to consider the Court's input on additional assurances.  As a result, there is no basis to pursue further punitive action.

*Second*, initiating a contempt proceeding exceeds the scope of the Fifth Court's remand order.  The Fifth Circuit directed "the district court to issue a new sanction" that "must be remedial in nature" and "the least restrictive means of achieving substantial compliance with the district court's order."  *Carter*, 156 F.4th at 505.  A remedial sanction, aimed at ensuring compliance with a court order, is a quintessential civil contempt remedy.  *Id*. at 503 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1994)).  Converting the prior civil contempt proceeding to a criminal one therefore goes far beyond the Fifth Circuit's remand directive for the Court to simply "issue a new sanction."  *Id*. at 505.

*Third*, there is no basis in the record—sealed or unsealed—to find any of Southwest's lawyers guilty of contempt.    Criminal contempt requires proof of *mens rea*: "a willful, contumacious, or reckless state of mind." *Carter*, 156 F.4th at 504 (citing *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980)).  This proof must be beyond a reasonable doubt. *Bagwell*, 512 U.S. at 834.  In other words, there must be no "doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case" that Southwest's conduct was willful.  FIFTH CIRCUIT PATTERN JURY INSTR. (CRIMINAL) § 1.05 (2019).  After weighing all the evidence (including the sealed and ex parte submissions), the Court described Southwest's actions as "a mistake."  ECF No. 503 at 3-4.  Even Ms. Carter's Response describes Southwest's "failure to comply with the Court's order" as a "mistake."  ECF No. 508 at 10.  And when a defendant's actions were a "mistake," willful intent cannot be proven beyond a reasonable doubt. *United States v. Kay*, 513 F.3d 432, 447 (5th Cir. 2007) ("Under [any definition of willful], a defendant must have acted intentionally—not by accident or mistake."); *accord* FIFTH CIRCUIT PATTERN JURY INSTR. (CRIMINAL) § 1.43 (2019).

*Fourth*, the Court cannot rely on the sealed evidence to pursue criminal contempt against Southwest or its attorneys.    Southwest disclosed attorney-client privileged information—its communications with outside counsel and testimony by four lawyers—on the condition that its disclosure would not waive the privilege in any other context. *See* 7/20/23 Hrg. Tr. at 389:22-390:14 (Sealed); *accord* ECF No. 412 at 5, n.2.  The Court agreed to Southwest's conditional waiver.  Southwest's "disclosure" was therefore "also not a waiver in any other federal or state proceeding," including any criminal contempt case.  FED. R. EVID. 502(d).[3]

---

[3]        Despite the Court's agreement that Southwest's voluntary disclosure of its privileged communications would not constitute waiver, the Response now contends the Court could invoke the crime-fraud exception to force disclosure of ex parte testimony and exhibits. *See* ECF No. 508 at 7.  But the "crime-fraud exception" applies when "communication or work product is intended to further continuing or future criminal or fraudulent activity," not when

*Fifth*, the Court's conversion of the prior civil contempt proceeding into one for criminal contempt presents grave due process concerns. As the Court itself noted, it "held a civil contempt proceeding" where Southwest's attorneys testified. *Carter*, 686 F. Supp. 3d at 521. The civil versus criminal distinction matters because due process protections—including notice of any charges and the accompanying right against self-incrimination—attach to criminal contempt proceedings. *See* FED. R. CRIM. P. 42(a); *accord* ECF No. 508 at 7-8.

Yet Ms. Carter is asking that three people be charged with criminal contempt, even though they voluntarily gave testimony precisely because they were not advised of their rights as criminal defendants. This fact pattern violates the due process rights of targets of criminal investigations. Under the Justice Manual, prosecutors must advise the "target" (or "putative defendant") that their "conduct is being investigated for possible violation of federal criminal law." Dep't of Justice, JUSTICE MANUAL § 9-11.151 (Jan. 2020), *available at* https://www.justice.gov/jm/jm-9-11000-grand-jury#9-11.151 (last accessed 4/21/26). The DOJ requires this warning so the target "may refuse to answer any question" and avoid the self-incrimination that "[a]nything" said "may be used against" them "in a subsequent legal proceeding." *Id*.

Here, Southwest's lawyers were not advised of these rights, or even that they were being investigated for criminal conduct. Southwest raised this issue with the Court years ago. *See* 7/20/23 Hrg. Tr. at 533:17-20 ("This is not a criminal contempt proceeding. It is not. There has been no notice that this will be a criminal contempt proceeding as required here by Rule 42 of the Rules of Criminal Procedure."). And the Court agreed, confirming after Southwest's lawyers

---

a party is "merely defending himself against civil actions alleging past wrongdoing." *United States v. Edwards*, 303 F.3d 606, 618–19 (5th Cir. 2002). And if the Court ordered the waiver of privileged documents or testimony, Southwest would be required to seek a stay of any such order to pursue interlocutory or other appellate relief. *See, e.g.*, *In re Itron, Inc.*, 883 F.3d 553, 567 (5th Cir. 2018) ("[A]ppeal after final judgment will come too late because the privileged communications will already have been disclosed pursuant to the district court's order." (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760-61 (D.C. Cir. 2014)).

testified that it had "held a civil contempt proceeding—not a criminal contempt proceeding." *Carter*, 686 F. Supp. 3d at 521. Converting this civil case into a criminal investigation now would deprive Southwest's lawyers of due process rights they would have been entitled to if warned years ago of potential criminal prosecution. For this reason and many others, there is no justification for any sanction other than those required to complete this civil contempt proceeding.

D.    **Conclusion.**

It is time for this case to end. Ms. Carter has been compensated in full for the harms she suffered. *See* ECF No. 514. Southwest has agreed to reasonable permanent injunctions that protect her past statements and prevent future monitoring of her social media. *See* ECF No. 507. Ms. Carter's attorneys will soon be paid their reasonable and necessary attorneys' fees and costs. *See* ECF No. 505 at 2. In response to the jury's verdict, Southwest enhanced its policies protecting its employees' religious beliefs and practices, including reasonably accommodating those practices. *See* ECF No. 504 at 2. And in the several years since, no other "employee has claimed that Southwest violated their right to engage in sincerely held religious practices, including those related to social media posts about abortion." *Id*.

Southwest admitted it failed to comply with the Court's injunction, apologized to Ms. Carter and the Court, and adopted a new process to prevent future non-compliance. *See* ECF No. 504. Southwest has offered (and offers again) to appear in person to discuss any additional assurances, compliance measures, or injunctions needed to put to rest any lingering concerns the Court may have. *See, e.g.*, ECF No. 507 at 5. On top of all that, Mr. Minchey will voluntarily take roughly a half-day of continuing legal education on accommodating religious beliefs, practices, and speech under Title VII, and to certify by May 29, 2026, that he has done so.[4]

---

[4]    Mr. Minchey intends to take these four CLE classes: (a) *Employee Speech and Protest: What is Protected and What is Not?*, https://www.pli.edu/programs/employment-law-institute/450785, 1 hour; (b) *Religious*

Because this is the sole relief Ms. Carter seeks even for alleged criminal contempt (ECF No. 508 at 8), there is no need to prolong this matter further by pursuing Mr. Minchey (or the two lawyers who have since left Southwest) in a misguided criminal investigation.

The parties are back from the Fifth Circuit on a limited mission: to determine which "least restrictive" and "narrowly tailored" "remedial" sanction should be imposed for Southwest's civil contempt violation. *Carter*, 156 F.4th at 505. Three years ago, Southwest agreed to the two most obvious remedies—issuance of a corrected notice and payment of Ms. Carter's reasonable attorneys' fees and costs for the contempt proceeding. Not only did Southwest voluntarily agree to these remedies, but it promised to do them even if it was not found in contempt. After remand, the Court advised that if Southwest would "acknowledge its mistake, apologize, and explain concrete steps to ensure such a mistake does not happen again," then the airline "would give the Court the assurance it needs." ECF No. 503 at 3-4. Southwest did what the Court asked. And, as just detailed, Southwest supported its apology with action: prompt payment of Ms. Carter's damages, good-faith agreement to limited injunctions, voluntary Title VII training for Mr. Minchey, and a continued willingness to consider any other input the Court wishes to provide.

Despite all of this, Ms. Carter asks that three lawyers be turned over to a federal prosecutor—the person with "more control over life, liberty, and reputation than any other person in America." Justice Robert H. Jackson, *The Federal Prosecutor*, 24 J. AM. JUDICATURE SOC. 18, 18 (June 1940). This remedy could not be more at odds with the Fifth Circuit's cautionary

---

*Accommodations: A Conflict of Rights*, https://utcle.org/studio/ZAS23/, 0.75 hours; (c) *Understanding Religious Accommodations After the Groff Supreme Court Decision*, https://www.unitedcle.com/CLE/Courses/Understanding-Religious-Accommodations-After-The-Groff-Supreme-Court-Decision-2585, 1 hour; (d) *Religious Accommodations for Employees Religious Beliefs Under Title VII*, https://www.nacle.com/CLE/Courses/Reasonable-Accommodations-for-Employees-Religious-Beliefs-Under-Title-VII-2169, 1 hour.

statement that, in pursuing "undoubtedly punitive" contempt proceedings, "the judiciary risks appearing contemptuous like the contemnor." *Carter*, 156 F.4th at 505.

These lawyers have no prior history of contempt or sanctionable conduct. They "were not involved in the decision to terminate Carter" and "demonstrated" no "animus against Carter or her religious beliefs." *Carter*, 156 F.4th at 504. And it is "beyond peradventure" that each has suffered harm to their "most important and valuable asset"—their "professional reputation"—because the Court found Southwest in contempt. *Walker v. City of Mesquite, Tex.*, 129 F.3d 831, 832 (5th Cir. 1997). On the other hand, Southwest is working cooperatively with Ms. Carter to bring this case to an end. And Southwest's sole remaining lawyer on her case, Mr. Minchey, will voluntarily take Title VII training on religious accommodations. These good faith efforts to recognize and correct Southwest's mistake are more than sufficient to justify the "exercise[ ]" of "restraint and discretion" needed to reject Ms. Carter's flawed request that three lawyers be investigated for criminal contempt. *Carter*, 156 F.4th at 503 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

Rather than unnecessarily broaden and prolong this contempt proceeding, the Court should instead order Southwest to: (1) issue the corrected Email Notice from the Court's August 7, 2023 order; and (2) pay Ms. Carter's reasonable and necessary attorneys' fees and costs from the contempt proceeding.

This 23rd day of April 2026.

Respectfully submitted,

/s/ Andrew B. Ryan
Andrew B. Ryan
Texas Bar No. 24054464
**RYAN LAW PARTNERS LLP**
3811 Turtle Creek Blvd., Suite 1450
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com

*Counsel for Defendant*
*Southwest Airlines Co.*

Jay Dewald
Texas Bar No. 24001990
jay.dewald@nortonrosefulbright.com
Christopher R. Cooke
Texas Bar No. 24129241
christopher.cooke@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone:     (214) 855-8180
Facsimile:     (214) 855-8200

*Counsel for Defendant Southwest Airlines Co.*
*and Non-Party Kevin Minchey*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2026, a true and correct copy of this document was served on counsel for all parties using the Court's PACER/ECF system.

/s/ Andrew B. Ryan
Andrew B. Ryan